James I. Stang, Esq. (SBN 94435)
Shirley S. Cho, Esq. (SBN 192616)
Werner Disse, Esq. (SBN 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
       scho@pszjlaw.com
       wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702/382.1170
Facsimile: 702/382.1169
Email: zlarson@lslawnv.com

[Proposed] Attorneys for Debtors and
Debtors in Possession

E-Filed: April 1, 2009

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

SOUTHERN DIVISION

In re:

HERITAGE LAND COMPANY, LLC, a
Nevada limited liability company, et al.,[1]

Debtors.

Affects:

☒ All Debtors
☐ Affects the following Debtor(s)

Case No. 09-14778-LBR
(Jointly Administered)

Chapter 11

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363, and 507(a) FOR AN ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS, AND OTHER COMPENSATION; (II) REMIT WITHHOLDING OBLIGATIONS; (III) MAINTAIN EMPLOYEE**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

73203-001\DOCS_LA:198455.6

1

**COMPENSATION AND BENEFITS PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS; AND (IV) HAVE APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS RECEIVE, PROCESS, HONOR, AND PAY CERTAIN CHECKS PRESENTED FOR PAYMENT AND HONOR CERTAIN FUND TRANSFER REQUESTS; MEMORANDUM OF POINTS AND AUTHORITIES**

The above-captioned debtors and debtors in possession (the "Debtors") hereby move this Court (the "Motion") for the entry of an order (the "Order"), pursuant to sections 105(a), 363 and 507(a) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors to (i) pay and/or honor prepetition wages, salaries, employee benefits, and other compensation or reimbursements; (ii) remit withholding obligations; (iii) maintain employee compensation and benefits programs and pay related administrative obligations; and (iv) have applicable banks and other financial institutions receive, process, honor, and pay certain checks presented for payment and honor certain fund transfer requests.

The Debtors' employees are vital to the orderly administration of the Debtors' chapter 11 estates. Payment of, and otherwise honoring, the employee obligations is necessary to maintain the employees' morale through the administration of the Debtors' chapter 11 cases and to prevent many of the employees from suffering extreme personal hardship or from leaving the Debtors during the pendency of these cases. Moreover, the Debtors' payment of, and otherwise honoring, the prepetition employee obligations in the ordinary course of business will not prejudice general unsecured creditors or materially affect the Estates because these claims are entitled to priority under sections 507(a)(4) and (a)(8)(D) of the Bankruptcy Code and must be paid ahead of general unsecured claims.

This Motion is made and based upon these moving papers, the following Memorandum of Points and Authorities, the accompanying *Declaration of James M. Rhodes in Support of First Day Motions*, the record in these cases, including the pleadings and documents filed on behalf of the parties, the arguments and representations of counsel, and any oral or documentary evidence presented at or prior to the time of the hearing.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the relief set forth above and granting such other relief as is just and proper.

Dated: April 1, 2009                LARSON & STEPHENS

/s/Zachariah Larson
Zachariah Larson, Esq. (NV Bar No. 7787)
810 S. Casino Center Blvd., Ste. 104
Las Vegas, Nevada  89101

[Proposed] Counsel for Debtors and
Debtors in Possession

# I.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. General Background

On March 31, 2009, the above-captioned Debtors (the "Primary Filers") except Tuscany Golf Country Club, LLC, Pinnacle Grading, LLC, and Rhodes Homes Arizona, LLC (the "Secondary Filers") filed voluntary petitions for relief under chapter 11 of title 11, United States Bankruptcy Code (the "Bankruptcy Code"). On April 1, 2009, the Secondary Filers filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. All references to Petition Date herein shall mean March 31, 2009 for the Primary Filers or April 1, 2009 for the Secondary Filers, as applicable. The Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

The factual background relating to the Debtors' commencement of these Cases is set forth in detail in the *Declaration of James M. Rhodes in Support of First Day Motions* filed contemporaneously with this Motion or shortly thereafter and incorporated herein by reference.

Simultaneously with the filing of this Motion, the Debtors have filed a motion with this Court pursuant to Bankruptcy Rule 1015(b) seeking joint administration of the Debtors' estates.

### B. Background Related to Wages and Benefits

The Debtors have 124 full-time employees (the "Employees"). Six of the Debtors have employees and payrolls, as follows: (i) Rhodes Design and Development Corp. has thirty-eight Employees; (ii) Rhodes Realty, Inc. has eight Employees, five of whom are sales people who are compensated exclusively by means of commissions consisting of 1% of the value of the homes they sell; (iii) C&J Holdings, Inc. has seven Employees; (iv) Tuscany Golf Country Club, LLC has forty-four Employees; (v) Rhodes Homes Arizona, LLC has two Employees; and (vi) Pinnacle Grading, LLC has twenty-five Employees. James M. Rhodes is employed by The Rhodes Companies, LLC and his salary is approximately $400,000 per year. The wife and brother of Mr. Rhodes are no longer employees effective March 31, 2009, but were previously employees.

#### 1. Wages and Salaries and Associated Withholding

Employees are paid their compensation (the "Wages") weekly in arrears through direct

deposit or check, with the exception of the Employees at Tuscany Golf Country Club, LLC, who are paid every second week in arrears. The Debtors' postpetition weekly payroll will be approximately $211,000, which figure includes wages and salaries, taxes (including withholding taxes paid by Employees), and withholdings for various Employee benefits (described more fully below). The Debtors estimate that average postpetition monthly payroll will be approximately $850,000.

The last date on which the Debtors' Employees were paid was March 27, 2009. Because of the uncertainty of when the Debtors may be heard on this Motion and the importance of paying the Wages, the Debtors have prepaid the Wages through March 31, 2009, thereby paying all outstanding prepetition Wages. As a result, the Debtors do not owe the Employees any Wages as of the Petition Date.

The Debtors' payroll is handled internally, with the exception of the payroll of Tuscany Golf Country Club, LLC which is disbursed by Priority Payroll, an outside third-party vendor. As of the Petition Date, the Debtors do not owe any administration fees (the "Administration Fees") to Priority Payroll.

In the ordinary course of its business, the Debtors routinely withhold from Wages certain amounts that the Debtors are required to transmit to third parties for purposes such as Social Security and Medicare, federal and state or local income taxes, contributions to the Debtors' benefit plans described more fully below, garnishment, child support or similar obligations pursuant to court order or law (collectively, the "Withholding Obligations"). The Withholding Obligations are encompassed within the Wages, and the Debtors have paid all prepetition Wages. The Debtors have made their best efforts to remit the prepetition Withholding Obligations (the "Withholding Obligations Payments") to the proper authorities prior to the Petition Date. It is possible; however, that the Debtors were unable to pay all the Withholding Obligations Payments before the Petition Date. Accordingly, the Debtors are requesting authority to make any outstanding Withholding Obligations Payments.

### 2.  Commissions

Five Employees of Rhodes Realty, Inc. are compensated exclusively by means of commissions (the "Commissions"), which are calculated based on 1% of the value of the homes they

sell. The Debtors do not believe that any Commissions are owing as of the Petition Date. Rhodes Realty, Inc. seeks authority to continue to pay Commissions postpetition in the ordinary case of business.

### 3. Business Expense Reimbursements

The Debtors customarily reimburse Employees who incur business expenses in the ordinary course of performing their duties on behalf of the Debtors. Such expenses typically include, but are not limited to, business-related travel expenses, including air travel, auto travel and car rental, lodging, meal charges, business lunches and entertainment expenses, telephone charges, and miscellaneous other allowed travel expenses (the "General Reimbursement Obligations").

It is difficult for the Debtors to determine the exact amounts of General Reimbursement Obligations that are due and owing for any particular time period since the expenses incurred by Employees on behalf of the Debtors throughout the year vary on a monthly basis and because there may be some delay between when an Employee incurs an expense and submits the corresponding expense report for processing. Based on historical experience, the Debtors anticipate that, as of the Petition Date, the Debtors owe an estimated $2,000 in General Reimbursement Obligations for all Employees. The Debtors seek authority to pay any prepetition General Reimbursement Obligations up to a total amount of $2,000, and to continue to honor General Reimbursement Obligations incurred postpetition in the ordinary course of the Debtors' business.

### 4. Health and Related Benefits

The Debtors provide several health and related benefit plans to their Employees, including medical insurance, health care reimbursement account, dental and vision insurance, counseling, paid time off and workers' compensation insurance (collectively, the "Benefits").

#### a. Medical Plan

The Debtors offer Employees medical insurance plans through Health Plan of Nevada (the "Medical Plans"). The Debtors' contribution to premiums due under the Medical Plans amounts to approximately 60% of the cost of the Medical Plans and totals approximately $23,000 per month. Each pay period Employees make contributions through the Debtors to the Medical Plans for themselves and their eligible dependents and the Debtors pay the balance of the contributions to the

Medical Plans, in advance, on a monthly basis (together, the "Medical Plan Contributions"). Because the Debtors pay their medical premium amounts in advance, they do not believe any prepetition Medical Plan Contributions are owed as of the Petition Date. The Debtors seek authority to continue to offer their Medical Plans postpetition in the ordinary case of business in their discretion.

### b. Dental and Vision Plan

The Debtors also provide their Employees with dental and vision insurance under a plan with The Guardian Life Insurance Company (the "Dental Plan"). The Debtors pay 50% of the premium costs, while the Employees pay the remainder of the premium costs. The Debtors' contribution to the premiums of the Dental Plans is $1,000 per month. Because the Debtors pay their dental premiums in advance they do not believe any Dental Plan contributions are owed as of the Petition Date. The Debtors seek authority to continue to offer the Dental Plan postpetition in the ordinary course of business in their discretion.

### c. Counseling

The Debtors offer Employees a counseling program (the "Counseling Program") through Health Plan of Nevada. The Debtors pay all of the premiums, which total approximately $100 per month. Because the Debtors pay their counseling premiums in advance they do not believe any Counseling Program contributions are owed as of the Petition Date. The Debtors seek authority to continue to offer the Counseling Program postpetition in the ordinary course of business in their discretion.

### d. Flexible Spending Accounts

The Debtors also offer their Employees access to flexible spending accounts ("FSAs") to set aside pre-tax dollars to pay for eligible medical and dependent care costs. The FSAs are administered for the Debtors by AFLAC at accounts maintained at Mutual of Omaha Bank ("Mutual of Omaha"). An eligible Employee's FSA deduction is taken out of his or her paycheck each pay period and put in an account in AFLAC's name held in trust for the Employees to be used for eligible expenses throughout the year. Mutual of Omaha receives claims for benefits and disburses payments on such claims, and the Debtors pay Mutual of Omaha a monthly fee based upon the

number of participants and certain associated expenses. Because FSA contributions from Employees are part of payroll, which has been paid through March 31, 2009, there are no accrued FSA contributions from Employees that remain unremitted as of the Petition Date. Similarly, no sums remain owing to Mutual of Omaha on the Petition Date. The Debtors seek authority to honor the FSA Contributions in connection with satisfaction of the Wages and to continue to provide the FSA program postpetition in the ordinary course of the Debtors' business.

### e.    Holidays, Vacation, and Leave

The Debtors provide their Employees with three forms of regular paid time off ("PTO") consisting of holidays, vacation and sick leave time. Employees receive seven holidays per year, all of which are fixed. Employees also receive between two and three weeks of vacation and sick leave time (collectively, the "Vacation Time") per calendar year, depending on seniority. Unused Vacation Time is not paid out upon year-end and may not be carried over to the next year. The timing of the Vacation Time is at the Employees discretion and many Employees have not used their proportionate amount of Vacation Time as of the Petition Date. The Debtors request authority to honor the PTO policies regarding holidays and Vacation Time for the calendar year 2009, and continue to implement the PTO policy on a postpetition basis and in the ordinary course of the Debtors' business.

### f.    Workers' Compensation Insurance

Under the laws of various states, the Debtors are required to maintain workers' compensation insurance to provide their Employees with coverage for claims arising from or related to their employment with the Debtors. The Debtors currently maintain an annual workers' compensation policy (the "Workers' Compensation Insurance Policy") with the Builder Association of Western Nevada Self Insured Group ("BAWNSIG") pursuant to which BAWNSIG provides workers' compensation insurance coverage up to the statutory limits and up to $1,000,000 per occurrence for employer liability.

The current term of the Workers' Compensation Policy runs through January 10, 2010, and costs approximately $12,000 on an annual basis, with $1,000 payable monthly. No amounts are owing as of the Petition Date. The Debtors hereby seek authority to maintain their Workers'

1  Compensation Insurance Policy in accordance with applicable law postpetition and to pay all
2  premium installments as they come due in the ordinary course of business.

3  **C.   Basis for Relief**

4  Courts often have permitted debtors to pay prepetition wage claims in the ordinary course of
5  business in response to a motion filed by the debtor in possession at the very outset of the case. *See*
6  COLLIER ON BANKRUPTCY ¶ 507.05[1], at 507-26 (15th ed. rev. 2006). The relief requested
7  herein is routinely granted in similar chapter 11 cases that involve a work force that is critical to the
8  debtor's chapter 11 efforts. *See, e.g., Burchinal v. Central Washington Bank (In re Adams Apple,*
9  *Inc.),* 829 F.2d 1484, 1490 (9th Cir. 1987) ("Cases have permitted unequal treatment of pre-petition
10 debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees .
11 . . and (iv) peripheral benefits under labor contracts"); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175
12 (Bankr. S.D.N.Y. 1989) (holding that sound business reason exists for paying employee prepetition
13 claims where payment is necessary "to preserve and protect its business and ultimately reorganize,
14 retain its currently working employees and maintain positive employee morale"). Honoring these
15 benefits recognizes that a debtor's employees are critical to the continued operation of a debtor's
16 business, and thus satisfaction of these obligations will ultimately benefit all creditors. *See LTV*
17 *Corp. v. Aetna Casualty & Surety Co. (In re Chateaugay Corp.),* 116 B.R. 887, 898 (Bankr.
18 S.D.N.Y. 1990); *In re Gulf Air, Inc.,* 112 B.R. 152, 154 (Bankr. W.D. La. 1989) ("[R]etention of
19 skills, organization, and reputation . . . must be considered valuable assets contributing to going
20 concern value and aiding rehabilitation").

21 The payment of the prepetition Wages and Benefits is justified because such wages and
22 benefits are entitled to a priority under section 507(a)(4) of the Bankruptcy Code. Under section
23 507(a)(4), each employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $10,950 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for
>
> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or

> (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the Debtor.

11 U.S.C. § 507(a)(4).

Inasmuch as the Wages for which the Debtors seek authority to pay were earned within 180 days of the commencement of the Petition Date, Employees' claims for payment of such compensation are entitled to priority pursuant to section 507(a)(4). The Debtors' request for authority to pay these claims now therefore merely constitutes a request to accelerate payment in order to avoid the devastation of Employee morale and the operation of the Debtors' business. Moreover, maintaining Employee morale and adequate staffing preserves the going concern value of the businesses which inures to the benefit of the Debtors' creditors.

The Debtors' relationships with Employees, including the terms and conditions of their employment, are matters subject to the Debtors' business judgment and may be managed by the Debtors in the "ordinary course of business." *See In re All Seasons Industries, Inc.*, 121 B.R. 822, 825-26 (Bankr. N.D. Ind. 1990); *In re Pac. Forest Indus., Inc.*, 95 B.R. 740, 743 (Bank. C.D. Cal. 1989) ("Employees do not need court permissions to be paid and are usually paid as a part of the ongoing operation of the business."). This doctrine also applies to accrued employee benefits such as vacation and leave policies. *See In re Canton Castings, Inc.*, 103 B.R. 874, 876 (Bankr. N.D. Ohio 1989). The maintenance of the Debtors' Benefit programs is an important part of the Debtors' relationships with their Employees that is within the Debtors' business judgment.

Finally, the Employee Withholding Obligations and certain of the Employee Benefits represent funds that the Debtors are not entitled to hold for any protracted period, since the Debtors effectively hold these amounts in trust and the Employees themselves hold a direct claim against such funds.

A blow to employee morale could clearly lead to disruptions to the Debtors' operations to the detriment of the Debtors' going concern value. In particular, due to unavoidable timing issues associated with the commencement of these Cases, certain payroll obligations have accrued, but

gone unpaid, prior to the filing of these Cases. If the Debtors are not permitted to meet all payroll-related obligations in the ordinary course of business, the Debtors could suffer unmanageable employee outrage or turnover to the detriment of all parties to the Estates. Any significant number of Employee departures or deterioration in morale at this time will substantially and adversely impact the Debtors' businesses and result in immediate and irreparable harm to the Estates.

The Debtors submit that the amounts to be paid pursuant to this Motion are comparatively small in light of the importance and necessity of preserving the Employees' services and morale and the difficulties and losses the Debtors will suffer if Employees leave in significant numbers. The Debtors further submit that there is ample justification for their belief that even the slightest delay in providing this relief to the Employees will hamper operations and damage the Debtors' estates and as a consequence the Debtors are anxious to reassure their Employees. None of the Debtors' Employees shall receive more than $10,950.

**D.    No Assumption or Assignment of Employee Benefits**

To the extent any Employee Benefit or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, at this time, seek to assume any such contract. Accordingly, if the Court authorizes the payments described above, such payments should not be deemed to constitute a postpetition assumption or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code. Moreover, authorization to pay all amounts on account of Wages and Benefits shall not affect the Debtors' right to contest the amount or validity of these obligations.

**E.    Request for Authority for Banks and Other Financial Institutions to Honor Checks Issued to Pay Wages and Benefits, to Honor All Fund Transfer Requests Relating to the Foregoing, and to Pay All Processing Fees Associated with Payment of Employee Wages and Benefits**

The Debtors request that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors to Employees, and by the Debtors to third parties on account of the Withholding Obligations or Benefits, whether such checks were presented or fund transfer requests

were submitted prior to, on, or after the Petition Date. The Debtors represent that they have (or will have) sufficient postpetition funding to pay promptly all Employee Wages and Benefits, to the extent described herein, on an ongoing basis and in the ordinary course of business. Nothing contained in this Motion, however, shall constitute a request for authority to assume any agreements, policies, or procedures relating to Employee Wages and Benefits. Further, the Debtors seek to retain the discretion to decide which Employee Wages and Benefits it will pay and honor, and nothing in this Motion shall be deemed an admission by the Debtors that any Employee Wages and Benefits will in fact be paid or honored.

Finally, the Debtors request authority to pay all of the processing fees associated with payment of the Employee Wages and Benefits including, but not limited to, any fees owed to any third party administrators of Employee Benefits as described in the Motion.

### F.    Compliance with Fed. R. Bank. P. 6003(b)

Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 20 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). For the reasons described herein and as supported by the Rhodes Declaration, the Debtors submit that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

*[signature on following page]*

**WHEREFORE**, the Debtors respectfully request entry of an order (i) authorizing, but not directing, the Debtors to pay or otherwise honor its employee obligations, described above, in accordance with the Debtors' ordinary course of business and stated policies; (ii) authorizing and directing the applicable banks and other financial institutions to receive, process, honor and pay all checks presented for payment and to honor all electronic payment requests made by the Debtors related to the foregoing; and (iii) granting such other and further relief as is just and proper under the circumstances.

Dated:   April 1, 2009         LARSON & STEPHENS

*/s/Zachariah Larson*
Zachariah Larson, Esq. (NV Bar No. 7787)
810 S. Casino Center Blvd., Ste. 104
Las Vegas, Nevada  89101

[Proposed] Counsel for Debtors and
Debtors in Possession