James I. Stang, Esq. (SBN 94435)
Shirley S. Cho, Esq. (SBN 192616)
Werner Disse, Esq. (SBN 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: jstang@pszjlaw.com
       scho@pszjlaw.com
       wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com

E-Filed on April 1, 2009

[Proposed] Attorneys for Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>HERITAGE LAND COMPANY, LLC, a Nevada limited liability company, et al.,[1]<br><br>    Debtors.<br><br>Affects:<br><br>☒ All Debtors<br>☐ Affects the following Debtor(s): | Case No.: Case No. 09-14778-LBR<br>  (Jointly Administered)<br><br>Chapter 11<br><br>**DEBTORS' MOTION FOR AN ORDER UNDER SECTION 366 OF THE BANKRUPTCY CODE (A) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, (B) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (C) ESTABLISHING PROCEDURES** |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

**FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

The above-captioned debtors and debtors in possession (the "Debtors") hereby move this Court for entry of an order (a) prohibiting the Debtors' utility providers that the Debtors intend to use postpetition (the "Utility Providers") from altering, refusing or discontinuing service; (b) deeming the Utility Providers adequately assured of future performance; and (c) establishing procedures for determining additional adequate assurance of future payment (the "Motion").

The Debtors receive essential utility services (the "Utility Services") from several Utility Providers. A list of the Utility Providers, the type of utility service received, the Debtors' utility accounts and the estimated monthly postpetition payments is attached hereto as Exhibit A.[2] At this critical time, uninterrupted electricity, gas, water, garbage, telephone, and similar services are essential to the Debtors' ongoing operations. Any interruption, however brief, in Utility Services to the Debtors' properties and to the Debtors' employees will irreparably disrupt the Debtors' business operations and thus their reorganization. It is therefore critical that the Court prohibit the Utility Providers from altering, refusing, or discontinuing service to the Debtors. The proposed utility deposit for each of the Utility Providers, coupled with the streamlined mechanism for requesting further adequate assurance described in the Memorandum, provide adequate assurance of payment to the Utility Providers while safeguarding the Debtors' continuing business operations. The Debtors respectfully submit that the Court should therefore grant the relief requested in the Motion in its entirety.

This Motion is made and based upon these moving papers, the following Memorandum of Points and Authorities, the accompanying *Declaration of James M. Rhodes in Support of First day Motions*, the record in these cases, including the pleadings and documents filed on behalf of the parties, the arguments and representations of counsel, and any oral or documentary evidence presented at or prior to the time of the hearing.

---

[2] Although the Debtors believe that the list of Utility Providers set forth in Exhibit A hereto is complete, the Debtors reserve the right to supplement the list if they determine that any utility company has been omitted. The Debtors further reserve all rights to challenge the status of any entity listed therein as a "utility" falling within the scope of section 366 of the Bankruptcy Code.

WHEREFORE, the Debtors respectfully request that this Court enter interim and final Orders, substantially in the form attached hereto as <u>Exhibit B</u>, granting the relief requested herein and such other and further relief as this Court deems appropriate.

Dated:   April 1, 2009           LARSON & STEPHENS

*/s/Zachariah Larson*
Zachariah Larson, Esq. (NV Bar No. 7787)
810 S. Casino Center Blvd., Ste. 104
Las Vegas, Nevada  89101

[Proposed] Counsel for Debtors and Debtors in Possession

I.

**MEMORANDUM OF POINTS AND AUTHORITIES**

A. **General Background**

On March 31, 2009, the above-captioned Debtors (the "Primary Filers") except Tuscany Golf Country Club, LLC, Pinnacle Grading, LLC, and Rhodes Homes Arizona, LLC (the "Secondary Filers") filed voluntary petitions for relief under chapter 11 of title 11, United States Bankruptcy Code (the "Bankruptcy Code"). On April 1, 2009, the Secondary Filers filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. All references to Petition Date herein shall mean March 31, 2009 for the Primary Filers or April 1, 2009 for the Secondary Filers, as applicable. The Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

The factual background relating to the Debtors' commencement of these Cases is set forth in detail in the *Declaration of James M. Rhodes in Support of First Day Motions* (the "Rhodes Declaration") filed contemporaneously with this Motion or shortly thereafter and incorporated herein by reference.

Simultaneously with the filing of this Motion, the Debtors have filed a motion with this Court pursuant to Bankruptcy Rule 1015(b) seeking joint administration of the Debtors' estates.

B. **Background Related to Utilities**

In the normal course of business, the Debtors have relationships with various utility companies and other providers for the provision of telephone, telecommunications, and related or other services (the "Utility Services"). The utility companies and providers the Debtors intend to use after the Petition Date (each a "Utility Provider" and, collectively, the "Utility Providers") are set

forth on the list attached hereto as <u>Exhibit A</u>.[3]  The Debtors estimate that their average monthly postpetition payments to the Utility Providers will aggregate approximately $172,000.

Because uninterrupted Utility Services are critical to the Debtors' ongoing operations, the Debtors, by this Motion and pursuant to sections 105(a) and 366 of the Bankruptcy Code, seek the entry of an order:  (a) prohibiting the Utility Providers from altering, refusing, or discontinuing services; (b) deeming Utility Providers adequately assured of future payment; and (c) establishing procedures for determining adequate assurance of future payment.

In order to provide adequate assurance of payment for future services to the Utility Providers, the Debtors propose to make a deposit (a "Utility Deposit") equal to 50% of the Debtors' estimated cost of their monthly utility consumption less any deposit held by the Utility Providers, as provided in <u>Exhibit A</u>, to each Utility Provider that the Debtors intend to continue to utilize during the course of these Cases.[4]  The Debtors estimate that the Utility Deposits, in the aggregate, will total approximately $86,000.  The Debtors propose to make Utility Deposits to each of the Utility Providers specified on <u>Exhibit A</u> hereto within ten (10) days after the entry of an interim order granting this Motion, pending further order of the Court, for the purpose of providing each Utility Provider with adequate assurance of payment of its postpetition services to the Debtors.

At this critical time, and given the nature of the Debtors' business, uninterrupted electricity, gas, water, garbage service and local and long distance telephone services are essential to the ongoing operations of the Debtors' business and to the preservation of the value thereof.  Any interruption, however brief, in Utility Services to the Debtors will irreparably disrupt the Debtors' operations and ability to liquidate their assets in an orderly manner.

---

[3]  The listing of any entity on <u>Exhibit A</u> hereto is not an admission that any listed entity is a utility within the meaning of section 366 of the Bankruptcy Code.  The Debtors reserve the right to assert at any time that any entity listed on <u>Exhibit A</u> is not entitled to adequate assurance pursuant to Bankruptcy Code section 366.  The Debtors further reserve the right to terminate the services of any Utility Provider at any time and to seek an immediate refund of any Utility Deposit without giving effect to any right of setoff or claim asserted by a Utility Provider against the Debtors.

The Debtors have and will have adequate cash to meet all of their necessary postpetition operating expenses on a current basis, including payments to the Utility Providers. The Debtors have specifically included in their budget amounts for payments to Utility Providers, including the payment of the Utility Deposits.

**C.    The Debtors' Proposed Adequate Assurance Procedures**

In addition, the Debtors seek to establish reasonable procedures (the "Procedures") by which a Utility Provider may request additional adequate assurance of future payment, in the event that such Utility Provider believes that its Utility Deposit does not provide it with satisfactory adequate assurance. Such Procedures, in particular, would provide that:

a.  If a Utility Provider is not satisfied with the assurance of future payment provided by the Debtors pursuant to the proposed Utility Deposit, the Utility Provider must serve a written request (the "Request") upon the Debtors setting forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), the outstanding balance for each account, a summary of the Debtors' monthly historical utility use over the past six months on each account, and an explanation of why the Utility Deposit is inadequate assurance of payment;

b.  The Request must be actually received by the Debtors and Debtors' counsel, Shirley S. Cho, Esquire, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., Suite 1100, Los Angeles, California 90067, within forty-five (45) days of the date of the interim order granting this Motion (the "Request Deadline");

c.  Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving a timely Request, if the Debtors, in their discretion, determine that the Request is reasonable;

d.  If the Debtors believe that a Request is unreasonable, then the Debtors shall, within thirty (30) days after the Request Deadline date, file a motion pursuant to section 366(c)(2) of the Bankruptcy Code (a

---

[4] As noted, the listing of any entity on Exhibit A hereto is not an admission that such entity is a utility within the meaning of section 366. Accordingly, the Debtors reserve the right to assert at any time that any entity listed on Exhibit A is not entitled to any deposit or other adequate assurance under section 366.

73203-001\DOCS_LA:198452.5

"Determination Motion"), seeking a determination from the Court that the Utility Deposit, plus any additional consideration offered by the Debtors, constitute adequate assurance of payment. Pending notice and a hearing on the Determination Motion, the Utility Provider that is the subject of the unresolved Request may not alter, refuse, or discontinue services to the Debtors nor recover or setoff against a pre-petition date deposit; and

e. Any Utility Provider that fails to make a timely Request shall be deemed to be satisfied that the Utility Deposit provided to it constitutes adequate assurance of payment.

If the Debtors supplement the list in Exhibit A hereto subsequent to the filing of this Motion, the Debtors will serve a copy of this Motion and the signed order granting the Motion (the "Order") on any Utility Provider that is added to the list by such a supplement (the "Supplemental Service"). In addition, the Debtors will also provide a Utility Deposit in the amount of 50% of the estimated cost of monthly utility consumption for the added Utility Provider less any deposit already held by the Utility Provider. Concurrently with the Supplemental Service, the Debtors will file with the Court a supplement to Exhibit A adding the name of the Utility Provider so served. The added Utility Provider shall have thirty (30) days from the date of service of this Motion and the Order to make a Request.

Finally, the Order provides that the Debtors may terminate the services of any Utility Provider by providing written notice (a "Termination Notice"). Upon receipt of a Termination Notice by a Utility Provider, pursuant to the relief requested by the Debtors herein, the Utility Provider shall immediately refund any Utility Deposit to the Debtors, without giving effect to any rights of setoff or any claims the Utility Provider may assert against the Debtors. The Debtors believe that the immediate refund of a Utility Deposit by a Utility Provider whose services are terminated is fair and appropriate under the circumstances because the Utility Provider would no longer require adequate assurance of future payment by the Debtors.

**D.     Basis For Relief**

73203-001\DOCS_LA:198452.5

Under section 366(b) of the Bankruptcy Code, utilities may alter, refuse, or discontinue service if a debtor has not furnished adequate assurance of payment within 20 days of the Petition Date. 11 U.S.C. § 366(b). Also, section 366(c) provides that a utility may alter, refuse or discontinue service if the utility does not receive, within 30 days of a chapter 11 filing, adequate assurance of payment for utility service that is satisfactory to the utility. 11 U.S.C. § 366(c)(2).

This Court, however, has the power to modify the form and amount of an assurance of payment after notice and a hearing. 11 U.S.C. § 366(c)(2), (3)(A).

The policy underlying section 366 of the Bankruptcy Code is to protect a debtor from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate assurance that a debtor will in fact pay for postpetition services. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306.

Section 366 of the Bankruptcy Code provides as follows:

> (a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
>
> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.
>
> (c)(1)(A) For purposes of this subsection, the term "assurance of payment" means--
>
> > (i) a cash deposit;
> >
> > (ii) a letter of credit;
> >
> > (iii) a certificate of deposit;
> >
> > (iv) a surety bond;
> >
> > (v) a prepayment of utility consumption; or
> >
> > (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee.

73203-001\DOCS_LA:198452.5

> (B) For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.
>
> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.
>
> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).
>
>> (B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider--
>>> (i) the absence of security before the date of the filing of the petition;
>>>
>>> (ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
>>>
>>> (iii) the availability of an administrative expense priority.
>
> (4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

11 U.S.C. § 366.

The Bankruptcy Code does not define "adequate assurance of payment," but, under case law, it is not an absolute guaranty of payment. Prior to the recent amendments to the Bankruptcy Code, courts in different circuits had varying views of the *form* of assurance of payment that was adequate. *Compare, e.g., Adelphia Business Solutions*, 280 B.R. 63, 89 (Bankr. S.D. N.Y. 2002) (following *Virginia Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997) in deciding that under a fact-driven analysis, adequate assurance need not take the form of a deposit) *with, e.g., In re Best Products Co.*, 203 B.R. 51, 54 (Bankr. E.D. Va. 1996) ("I hold, therefore, that adequate assurance under § 366 requires more than administrative priority."). Section 366 as amended, however, clarifies that, as a form of adequate assurance of payment, administrative priority is not enough. 11 U.S.C. §§ 366(c)(1)(B) and 3(B)(iii). Amended section 366 now requires a cash deposit or other enumerated form of security that is "adequate," but the Bankruptcy Code, even after the recent amendments, still does not define "adequate."

While the *form* of adequate assurance of payment may be limited under new subsection 366(c) to the types of security enumerated in subsection 366(c)(1)(A), the *amount* of the deposit or other form of security, however, remains fully within the reasonable discretion of the Court,[5] subject only to three specific factors that may not be considered by the Court, as listed in subsection 366(c)(3)(B). Under such subsection, when determining "whether an assurance of payment is adequate," the Bankruptcy Court may not consider: (1) whether the debtor had a prepetition deposit; (2) whether the debtor paid its utility bills on time prepetition; or (3) the administrative expense priority afforded utilities postpetition. 11 U.S.C. § 366(c)(3)(B). Nothing in section 366(c), however, precludes the Bankruptcy Court from considering other factors that could minimize the amount of the deposit, including (without limitation): (a) the right of the utility to terminate service upon nonpayment;[6] (b) the chapter 11 estate's liquidity;[7] and (c) the estate's net worth and ability to pay its postpetition obligations.[8]

Even prior to the enactment of the amendments, the Bankruptcy Court in *Best Products* took an approach that appears to parallel amended section 366:

> A question remains, however, as to its form and amount in this case. The objecting utilities each have demanded a deposit equal to the debtor's bill for two months of service. Under section 366, the utilities have a right to the deposit as demanded unless the debtor can show cause to reduce it. Once the debtor proffers a sufficient objection, the court must fix a reasonable security after notice and a hearing. In doing so, the court should consider the debtor's payment history, the debtor's net worth, and the debtor's present and future ability to pay post-petition obligations.

---

[5] *See* 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."); 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2)."). *Accord In re Pacific Gas & Elec. Co.*, 271 B.R. 626, 644 (N.D. Cal. 2002) ("The use of the word 'may' in the second sentence [of section 366(b)] contemplates that the decision of whether to order security lies within the discretion of the Bankruptcy Court."); *In re Steinbach*, 303 B.R. 634, 641 (Bankr. D. Az. 20040 ("Bankruptcy courts are afforded reasonable discretion in determining what constitutes adequate protection. . . .").

[6] *See In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987) ("We note, in this regard, as we did in [*In re*] *Allen*, 69 B.R. [867] at 876 [(Bankr. E.D. Pa. 1987)], that the Court of Appeals has stated, in *Begley v. Philadelphia Electric Company*, 760 F.2d 46, 51 (3d Cir.1985), that a utility is well-protected, after establishment of adequate assurance, by its remedy "to disconnect service as its remedy for non-payment without recourse to the bankruptcy court, even though, as *Begley* specifically holds, the debtor is provided with an additional layer of protection arising from any available state utility commission Regulations limiting a utility's termination rights.") (quotations omitted).

[7] S*ee In re Agrifos Fertilizer, L.P.*, 2002 WL 32054779, at *5 (Bankr. S.D. Tex. Nov. 25, 2002) ("If a debtor demonstrates . . . *evidence of postpetition liquidity*, a deposit may not be necessary.") (emphasis added).

[8] S*ee Best Products*, 203 B.R. at 54 ("the court should consider the debtor's payment history, *the debtor's net worth, and the debtor's present and future ability to pay post-petition obligations*.") (emphasis added).

*Best Products,* 203 B.R. at 54. The *Best Products* court approved a deposit of *one-half* the average monthly bill for the past 12 months for each of the debtor's facilities because of factors such as the debtor's net worth and present and future ability to pay postpetition obligations. *Id.*[9]

The amount of the deposit or other security could be even lower than one-half month's bill amount.[10] By its terms, section 366 as amended *does not require* that the deposit or other security be more than a nominal amount. It could even be zero, where appropriate. In *Caldor*, the United States Court of Appeals for the Second Circuit considered cases such as *Best Products* that required a deposit or similar form of security for utilities. The court stated that: "Even assuming that 'other security' should be interpreted narrowly [as in *Best Products*], we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment." *See Caldor*, 117 F.3d at 650. In support of its view that a deposit or other security requirement could be interpreted to require no funds actually be provided, the Second Circuit court of appeals cited, for comparison, *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961), in which it determined that a district court "has discretion to require no security under [a] Fed.R.Civ.P. 65(c) provision that applicant post security for preliminary injunction 'in such a sum as the court deems proper.'" *Id.*

Although the Debtors believe that they have a credible argument for a lower deposit, they nevertheless propose to make a cash deposit to each of the Utility Providers equal to one half of a month's average historical invoice amount, determined using the monthly invoice amounts for the previous six months. The Debtors submit that one-half month's billing, based on the historical

---

[9] The *Best Products* court permitted the debtor to apply prepetition deposits and prepayments to the postpetition deposits required by the court's ruling. *Id.*, at 54 n.2. The Bankruptcy Appellate Panel for the First Circuit approved an apparently one-month deposit that the utility argued would not cover 13 day period between billing and payment of each month's rent – " even excluding the administrative expense priority from consideration." *Massachusetts Electric Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (1st Cir. BAP 1981) (citation and footnote omitted).

[10] Bankruptcy courts should be conservative in providing deposits or other security to utilities to conserve the estate's scarce financial resources. *See In re Magnesium Corp. of America*, 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002) ("In deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.") (emphasis in original) (citations and quotations omitted); *Penn Jersey*, 72 B.R. at 985 (Bankr. E.D. Pa. 1987) ("We believe that, in analysis of what 'adequate assurance' is required of any particular debtor to retain utility service, it is significant to focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.").

average of the previous six months, is more than adequate under the totality of the facts and circumstances.[11] Here, the Debtors satisfy the criteria considered by courts in finding that adequate assurance of payment has been shown, as the Utility Providers will not suffer an unreasonable risk of nonpayment with half a month's deposit. Moreover, the Debtors propose to protect the Utility Providers further by establishing the Procedures provided for herein, whereby any Utility Provider can request additional adequate assurance in the event that it believes there are facts and circumstances with respect to its providing postpetition services to the Debtors that would merit greater protection.

The Debtors cannot continue to operate without continued Utility Services. If any of the Utility Providers alter, refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted and the Debtors would be unable to maintain their real property, which are both the Debtors' primary assets and the collateral of the Debtors' secured lenders.

In contrast, the Utility Providers will not be prejudiced by the continuation of their services and will be paid all post-petition utility charges. In addition, the rights of the Utility Providers will not be prejudiced should the relief requested in this Motion be granted because the Utility Companies are permitted to come before this Court and seek relief according to the Procedures proposed. Hence, the Debtors request an Order prohibiting the Utility Providers from altering, refusing, or discontinuing service to the Debtors conditioned solely upon the Debtors' providing each of the Utility Providers with a one-half month's deposit (or such other amount as determined in accordance with the Procedures). Once the Debtors pay the Deposits, the Debtors submit that they will have furnished the requisite adequate assurance of payment to the Utility Providers.

WHEREFORE the Debtors respectfully request that the Court enter an Order providing the following relief: (a) a determination that a deposit of one-half month's average invoice amount and ability to obtain an expedited hearing upon 20 days' notice after default and the other Procedures

---

[11] *See Adelphia Business Solutions*, 280 B.R. at 82-83 and 86 n. 127 (adequate assurance of payment is a fact-driven analysis based on the totality of the facts and circumstances of the case).

1  constitutes adequate assurance of payment for future utility services as contemplated by sections
2  366(b) and (c)(3)(A) of the Bankruptcy Code; (b) a prohibition barring each of the Utility Providers
3  from altering, refusing, or discontinuing services to the Debtors; and (c) such other and further relief
4  as the Court deems just and proper.

Dated:   March 31, 2009                LARSON & STEPHENS

                                       /s/Zachariah Larson
                                       Zachariah Larson, Esq. (NV Bar No. 7787)
                                       810 S. Casino Center Blvd., Ste. 104
                                       Las Vegas, Nevada  89101

                                       [Proposed] Counsel for Debtors and
                                       Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

73203-001\DOCS_LA:198452.5