James I. Stang, Esq. (CA Bar No. 94435)  E-Filed: April 1, 2009
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
        scho@pszjlaw.com
        wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702/382.1170
Facsimile: 702/382.1169
Email: zlarson@lslawnv.com

[Proposed] Attorneys for Debtors and
Debtors in Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 (Jointly Administered) |
| HERITAGE LAND COMPANY, LLC, a Nevada limited liability company, et al.,[1] | Case No. 09-14778-LBR_____ |
| Debtors. | **MOTION FOR ENTRY OF ORDER (I) AUTHORIZING THE DEBTORS TO SELL HOMES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (II) ESTABLISHING PROCEDURES FOR THE RESOLUTION AND PAYMENT OF LIENS AND CLAIMS,** |
| Affects: | |
| ☒ All Debtors ☐ Affects the following Debtor(s) | |

Attorneys for Debtors
At Law
Los Angeles, California
PACHULSKI STANG ZIEHL & JONES LLP

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

**AND (III) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL OBLIGATIONS RELATED THERETO**

The above-captioned debtors and debtors-in-possession (the "Debtors"), hereby move (the "Motion") this Court for entry of an order, pursuant to sections 105(a), 363, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), (a) authorizing the Debtors to continue the construction, sale and closing of homes to customers in the ordinary course of business, (b) authorizing the Debtors to honor certain prepetition contract obligations to homebuyers, including, where appropriate in the Debtors' business judgment and not inconsistent with past business practices, to refund deposits or provide other customer incentives, (c) providing that the sale of homes to the Debtors' customers shall be free and clear of all liens, claims, encumbrances and other interests, (d) authorizing, but not directing, the Debtors, in their sole discretion or as otherwise ordered by the Court pursuant to the established procedures, to pay claims secured by liens out of the proceeds of home sales, (e) establishing procedures for resolving disputed lien claims, and (f) authorizing the Debtors to proceed immediately with the sale of homes and establishment of the lien procedures notwithstanding the possible applicability of Rules 6004(g) or 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and (g) authorizing financial institutions to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing (the "Motion"). In support of this Motion, the Debtors respectfully represents as follows:

### Preliminary Statement

1. The Debtors are one of the largest private home builders in the Las Vegas area and are principally engaged in the marketing, construction and sale of single-family and multi-family homes prior to the Petition Date. In order to ensure the continuity of their business operations, to sell their remaining inventory of "work-in-progress" homes, and to assure customers and other parties in interest of the Debtors' ability to continue uninterrupted construction and sales of homes in the ordinary course of business, the Debtors seek approval of this Motion to provide them with the ability to meet their current obligations under the Contracts

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(defined below) and allow them with the ability to continue the construction and sale of homes in the ordinary course of their business.

2.      The Debtors' continuing ability to sell homes to customers requires an order authorizing such sales "free and clear" of liens, in order to satisfy title insurers as well as potential buyers.    The ability to satisfy liens of vendors and subcontractors, and to honor obligations to customers under sales contracts, is integral to the Debtors' business operations and necessary to maintain the confidence and goodwill of customers, contractors and suppliers.   Any interruption in the Debtors' ability to continue to develop and sell homes will result in immediate and irreparable harm to the value of the Debtors' businesses and reputation, to the detriment of the Debtors' estates and creditors.    Thus, approval of the relief requested in this Motion is necessary to preserve the value of the Debtors' estates for all parties in interest.

### Jurisdiction and Venue

3.      This Court has jurisdiction to consider the matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. § 1409.

4.      The statutory bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code.

### Background

5.      On March 31, 2009, the above-captioned Debtors (the "Primary Filers") except Tuscany Golf Country Club, LLC, Pinnacle Grading, LLC, and Rhodes Homes Arizona, LLC (the "Secondary Filers") filed voluntary petitions for relief under chapter 11 of title 11, United States Bankruptcy Code (the "Bankruptcy Code").  On April 1, 2009, the Secondary Filers filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  All references to Petition Date herein shall mean March 31, 2009 for the Primary Filers or April 1, 2009 for the Secondary Filers, as applicable.  The Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6.    The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of James M. Rhodes in Support of First Day Motions* (the "Rhodes Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

### The Debtors' Prepetition Sales of Homes

7.    Rhodes Homes and its affiliated entities are engaged primarily in the business of detached home building and sales in Nevada and Arizona.  Rhodes Homes is a leading Nevada home builder and has developed 40 communities since its founding in 1988, generating over $2.4 billion in total revenues.  Rhodes Homes has built more than 6,000 homes in the Las Vegas Valley during the past two decades.  In 2008, Rhodes Homes sold 390 homes, generating revenue of $118.3 million, or $54.6 million net of expenses.  The Debtors have two premier projects, which are master-planned residential communities – Rhodes Ranch and Tuscany.

8.    Rhodes Ranch is located in southwestern Las Vegas and opened in 1997. It has a gated entry and 24-hour security detail with patrols.  The development is built around a Ted Robinson-designed 18-hole championship golf course.  The development features a multi-million dollar community center with swimming pool, gymnasium, multiple basketball courts, fitness center, and card/club rooms.  The community also has a nearly completed community park and sports complex.  There are 316 available finished lots remaining to be sold as of March 1, 2009, and approximately 1,983 lots to be developed.

9.    Tuscany Residential Village is located in southeast Las Vegas and opened in 2005.  The development is also built around a Ted-Robinson designed 18-hole championship golf course.  It has gated entry and 24-hour security detail (with patrols), an existing 35,000 square foot community center similar to Rhodes Ranch, and a planned Tuscan-themed retail center.  As of March 1, 2009, Tuscany had 353 finished lots remaining to be sold and 556 partially developed lots.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10.     As of the Petition Date, the Debtors have 16 homes that they are in the process of selling for the month of April, including 6 during the first two weeks of April.  In total, for the month of April, the Debtors are scheduled to close 16 homes in the ordinary course of business for a total of approximately $3.6 million.  The Debtors also have a total of 26 home sales scheduled to close in May and June for which they are projecting revenues of $6.9 million.

**B.     Contracts**

11.     In the ordinary course of their business, the Debtors routinely contract with their customers to build and close on the sale of homes (the "Sale Contracts").  The terms of the Sale Contracts vary, but generally provide for, among other things, the payment of a deposit, the purchase price, selection of options for the property, payment of closing costs, inspection rights and numerous disclosures.  As of the date hereof, the Debtors remain parties to several Sale Contracts.

12.     In addition, the Debtors also enter into numerous contracts with craftsmen and suppliers who build, or supply materials to build, homes for the Debtors (the "Construction Contracts" and collectively with the Sale Contracts, the "Contracts").  The Construction Contracts include both individual purchase orders that are tailored to supply materials or labor for the construction of a single home and larger contracts with a single supplier to provide resources to construct multiple homes in a single development.  As of the Petition Date, the Debtors are parties to several Construction Contracts for the construction of certain homes.

13.     The Debtors believe that they are authorized to continue to honor existing Contracts and enter into new Contracts to build and sell homes in the ordinary course of business without the need for a court order.  Nonetheless, in an abundance of caution and to provide assurances to the Debtors' customers and title insurers, the Debtors seek authority to (a) continue to close on sales of homes currently under contract and to continue to contract for and complete the construction and sale of homes to customers in the ordinary course of business and (b) continue to enter into Sale Contracts for the construction of homes on a going forward basis, enter into Construction Contracts with their suppliers and craftsman to arrange for the construction of

homes pursuant to the Sales Contracts, and to close on the sale of homes, including pursuant to the Contracts, once construction is finished and other conditions for closing are satisfied.

**C.    Deposits**

14.    While the terms of the Sale Contract may vary by region, the Sales Contracts always require a prospective homebuyer to provide the Debtors with a deposit on the purchase price (a "Deposit").  The Debtors require an earnest-money deposit of 3% of the purchase price of the home, which is typically equivalent to $5,000 or less per home.  The Debtors also require a deposit for a percentage of the costs (usually 3-5%) associated with any selected options or upgrades.  At the closing on each of the homes, the Deposits are handled in one of two ways.  If the Deposits were placed in an escrow account, the Deposit is delivered at closing to a title company as part of the buyer's cash to close and then remitted to the appropriate party as part of the sales proceeds.  If the Deposit was used by the Debtors for construction costs on the buyer's optional upgrades, the Debtors credit the amount of the Deposit against the remaining cash required to be funded by the buyer at closing and the cash remitted to the Debtors as seller is reduced by the same amount.

15.    As of March 26, 2009, approximately $160,000 in Deposits are in escrow accounts held by title companies and approximately $91,000 in Deposits are in the Debtors' general account.

16.    Typically, if the Debtors breach a Sale Contract, the Deposit is owed back to the purchaser.  The Debtors seek authority, but not direction, to refund the Deposits in accordance with the Sale Contracts and in the ordinary course of their business in their sole discretion.  Additionally, with respect to new Sale Contracts the Debtors enter into post-petition, the Debtors intend to continue their ordinary course practices with respect to Deposits received on account of the sale of homes.  Accordingly, through this Motion, the Debtors specifically seek authority, but not direction, to refund prepetition and postpetition customer Deposits if warranted by the terms of the Sale Contracts and consistent with the Debtors' ordinary business practices in their sole discretion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

17.      Through this Motion, the Debtors also seek the ability to apply Deposits at closing consistent with and subject to the terms and conditions of the existing Contracts.  If the Debtors are unable to apply Deposits pursuant to the terms of the Contracts, their reputation will be damaged, they may not be able to close pending sales and they likely will be unable to continue to attract customers to maintain the going concern value of their businesses.  Accordingly, the Debtors believe that the only value to be obtained from seeking to avoid the application of the Deposits will be outweighed by the harm that may befall their businesses and reputation.

**D.      Closing Costs**

18.      As sellers of homes, the Debtors must often satisfy certain costs associated with the sale and conveyance of such property (the "Closing Costs").  The Closing Costs include the payment of the homeowners' previous mortgage loans, ad valorem taxes, documentary stamp taxes, sales taxes, broker commissions and fees associated with title, recording and development of the property.

19.      Absent authority to pay Closing Costs, the Debtors will be unable to close on the sale of homes pursuant to their Sale Contracts.  Failure to close will deprive the Debtors, their estates and creditors with substantial revenues that otherwise would be collected.  Further, in the absence of such payments, prepetition buyers still under contract may be entitled to rescind their Sale Contracts or assert other remedies that could deprive the estate of revenue or lead to additional, unnecessary claims.  Accordingly, the Debtors seek the ability to pay Closing Costs in the ordinary course of business for existing Sale Contracts.  The Debtors also seek the authority, in their sole business judgment, to enter into post-petition contracts that require the Debtors to pay certain Closing Costs.

**E.      Contract Modifications**

20.      In the ordinary course of their businesses, the Debtors will from time to time agree to modify the terms of a Contract to facilitate the construction and closing of a sale of a Home.  The Contract modifications may include the payment of certain Closing Costs as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

described above, an agreement by the Debtors to provide additional customer incentives, or an agreement to permit assignment of the Sale Contract to a new buyer.  Without the ability to continue to make such Contract Modifications post-petition in the ordinary course, the Debtors may fail in their efforts to complete construction and close on the sales of homes and lose significant revenues for the estates.  Accordingly, to continue closing on the sales of homes, and to preserve the revenues anticipated from such sales, the Debtors require the ability to modify the Contracts as set forth herein and otherwise in the exercise of their sole business judgment.

**F.**      **The Lien Claimants**

21.      Construction Liens.  As part of their homebuilding operations, the Debtors rely on, and routinely contract with, a number of third parties (the "Construction Lien Claimants") that may be able to assert liens under applicable state law against the Debtors' property to secure payment for certain prepetition goods and services delivered to the Debtors or for other prepetition claims ("Construction Lien Claims").  Although the Debtors generally make timely payments to Construction Lien Claimants, as of the Petition Date, some Construction Lien Claimants may not have received payment for certain goods and services.  As a result, they may have a right under applicable state law to assert and perfect construction, material man's, mechanics' or other liens (the "Construction Liens"),  which could attach to the Debtors' unsold homes and would be a cloud on title when the Home is sold to a customer.

22.      Furthermore, the Debtors believe that their title insurance agents and underwriters (collectively, the "Title Insurers") will not proceed with home closings unless the Debtors provide assurance that the Construction Liens will not cloud title to the homes.  The Debtors also anticipate that their customers and lenders would have similar concerns.  Accordingly, the Debtors request an order from the Court authorizing them to sell homes in the ordinary course of business free and clear of all Construction Liens, with such liens attaching to the proceeds of each sale, and establishing procedures for the satisfaction of all valid Construction Lien Claims, as proposed below.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

23.     Lender Liens.  In addition to the Construction Liens, the Debtors' secured lenders (the "Lender Lien Claimants") have attached liens (the "Lender Liens") to homes in construction by the Debtors.  The Debtors believe that their customers will not proceed with home closings unless the Debtors provide assurance that the Lender Liens will not cloud title to the homes by obtaining a "free and clear" order.  Accordingly, the Debtors require an order from the Court authorizing them to sell homes in the ordinary course of business free and clear of all Lender Liens, with proceeds of any such sales to be used consistent with the budget and the terms of any cash collateral order approved by the Court.

**G.     The Proposed Lien Procedures**

24.     To protect the rights of parties asserting Liens on the Debtors' homes sold pursuant to the Motion, the Debtors propose the following procedures for the expedited resolution and payment of liens arising from such liens (as described in more detail below, the "Lien Procedures").     Specifically, the Debtors propose that the following Lien Procedures be implemented:

a.     The Debtors shall be authorized to sell homes to customers, which sales shall be free and clear of all liens, claims, encumbrances and other interests, including Construction Liens and Lender Liens (collectively, the "Liens").

b.     All valid and enforceable Liens on a subject property shall transfer to and shall attach to the proceeds of the sale of such property at the time of closing (the "Closing Date").  Claims secured by valid and enforceable Liens shall be deemed secured claims against the Debtors to the extent of the proceeds with the same priority such claims would be entitled to under applicable law as of the Closing Date.  The Debtors shall be authorized to hold and use the sale proceeds, subject to the procedures set forth herein and consistent with any cash collateral order and budget entered in these cases.  No Lien Claimant shall have any claim against the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-9-

Debtors' Title Insurers or any purchaser of a home with respect to any asserted Lien or other claim arising from services performed for or goods delivered to the Debtors.

c.    The Debtors reserve all rights under Section 506(c) of the Bankruptcy Code to surcharge the applicable Lender(s), including a right to seek recovery of the Debtors' costs of securing or disposing of the homes secured by any Lender Lien Claim from the proceeds of the sale of such Home.

d.    A Construction Lien Claimant will not be required to take any steps under applicable non-bankruptcy law after the Petition Date to obtain, record, or perfect its lien and the lien will not be determined to be invalid solely as a result of the Construction Lien Claimant's failure to take such steps.  With respect to each individual Construction Lien Claim, the Debtors will conduct an analysis of the Construction Lien Claimants' compliance with notice and perfection requirements. The Debtors will not satisfy any Construction Lien Claim unless the Construction Lien Claimant has a valid Construction Lien Claim or in the Debtors' business judgment, is capable of perfecting, the Construction Lien as of the date of entry of the order approving the Motion or thereafter.

e.    For Construction Lien Claims reflected on the Debtors' books and records and as to which the Debtors determine that a valid Construction Lien exists, the Debtors shall be authorized to satisfy the Construction Lien Claims to the extent of the Lien by making payment out of the proceeds after the Closing Date.  The Debtors shall maintain a summary list of all payments to Construction Lien Claimants and shall provide updated copies of such list to any committee appointed in these cases on a monthly basis.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

f. Any Construction Lien Claimant who believes it has a valid Construction Lien that arose prior to the Petition Date against a particular property sold by the Debtors and who has not been paid by the Debtors may send to the Debtors a written demand for payment (i) setting forth the location(s) of the property sold, (ii) stating the amount of its asserted claim(s), (iii) describing, with particularity, the reason(s) the Construction Lien Claimant believes it has a valid Construction Lien against the individual property sold, and (iv) attaching documentation (i.e., invoices or purchase orders) or other information sufficient to demonstrate that a valid Construction Lien claim existed as of the Closing Date with respect to such property (a "Demand").

g. The Demand must be mailed to (a) the Debtors at the following addresses: (i) Rhodes Homes, 4730 S. Fort Apache Road, Ste. 300, Las Vegas, Nevada 89147, Attn: Chief Financial Officer, (ii) Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 11th Floor, Los Angeles, California 90067, Attn: Shirley S. Cho; and (iii) counsel for any committee appointed in these cases.

h. The Debtors must respond to each Demand within twenty (20) business days after receipt of a Demand.  If the Debtors determine, upon consultation with any committee appointed in these cases, that a Demand is valid or that litigating resolution of the dispute will be more costly than honoring the Demand, the Debtors may pay the Construction Lien Claim reflected in the Demand without further order of the Court.

i. If the Debtors dispute the validity or extent of the claim asserted in the Demand, the parties shall negotiate in good faith to resolve the dispute.  If the Debtors resolve the dispute at a lower value than the amount reflected in the Demand, the Debtors may pay such

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

amount without further order of the Court.  If the dispute is not resolved within thirty (30) days after receipt of the Demand (the "Resolution Period"), either party may file a motion (a "Demand Resolution Motion") seeking a determination from the Court as to the validity and extent of the underlying Construction Lien.  Any Demand Resolution Motion shall be heard at the Court's next regularly scheduled hearing date in the cases or as soon thereafter as the Court's schedule will allow; provided, however, that if the Debtors determine during the Resolution Period that the Demand is not likely to be resolved, the Debtors may file a Demand Resolution Motion at any time before the expiration of the Resolution Period and may seek an expedited hearing with respect thereto.

j.      Upon a determination by the Court that the Debtors are required to satisfy a Construction Lien, the Debtors shall pay such Construction Lien within ten (10) business days of the date of the order resolving the Demand Resolution Motion.

k.      The Debtors are authorized to use proceeds from the sale of homes in the ordinary course of business without being required to escrow such proceeds consistent with the terms of any cash collateral order and budget approved in these cases; provided, however, that the Debtors maintain cash proceeds on hand in an aggregate amount sufficient to satisfy all Demands from Construction Lien Claimants against sold properties that have been received but that remain unresolved; provided, further, however, that (i) in no event shall the Debtors be required to maintain cash on hand for unresolved Demands asserted by Construction Lien Claimants in an amount greater than the purchase price for a particular property and (ii) with respect to any Demand that asserts a Construction Lien applicable to more than one property, the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-12-

Debtors shall be required to reserve only for the portion of the Construction Lien Claim allocable to the particular property or properties sold pursuant to this Motion.

25. Lien procedures similar to those sought herein have been adopted and approved by Bankruptcy Courts in several recent home-builder cases. *See, e.g., In re WL Homes LLC, et al.,* Case No. 09-10571 (BLS) pending in the United States Bankruptcy Court, District of Delaware [Docket 246, entered March 23, 2009]; *In re WCI Communities, Inc.*, Case No. 08-11643 pending in the District of Delaware [Docket No. 61, entered August 5, 2008 ]; *In re Woodside Group, LLC*, Case No. 08-20682 pending in the United States Bankruptcy Court for the Central District of California [Docket No. 73, entered September 22, 2008]; *In re Kimball Hill, Inc.*, Case No. 08-10095 pending in the United States Bankruptcy Court for the Northern District of Illinois [Docket No. 166, entered May 13, 2008]; and *In re TOUSA, Inc*., Case No. 08-10928 pending in the United States Bankruptcy Court for the Southern District of Florida [Docket No. 455, entered February 28, 2008].

### **Relief Requested**

26. By this Motion, the Debtors request entry of an order (a) authorizing, but not directing, the Debtors to continue the construction, sale and closing of homes to customers in the ordinary course of business, (b) authorizing, but not directing, the Debtors to honor obligations to homebuyers under Contracts, including, where appropriate, to refund Deposits or implement customer incentives consistent with their prior business practices and necessary to remain competitive, (c) providing that the sale of homes to the Debtors' customers shall be free and clear of all liens, claims, encumbrances and other interests, (d) authorizing, but not directing, the Debtors, in their discretion or as ordered by the Court pursuant to the established procedures, to satisfy Construction Lien Claims out of the proceeds of home sales, (e) establishing the Lien Procedures (f) authorizing the Debtors to use proceeds of the home sales subject to the Lien Procedures and (g) authorizing, but not directing, the Debtors to proceed immediately with the sale of homes and establishment of the Lien Procedures notwithstanding Bankruptcy Rule 6004(i) or 6003(b).

57527-001\DOCS_LA:198740.3

27.     In addition, the Debtors request that financial institutions be authorized to receive, process, honor and pay all checks presented for payment and electronic payment requests related to the Contracts or Lien Procedures, whether such checks were presented or electronic requests were submitted prior to or after the Relief Date.  The Debtors further request that all such financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion.

### **Basis for Relief Requested**

### A.     **The Debtors Are Authorized to Continue to Sell Homes**

28.     Continuation of the Debtors' home-selling activities is critical to maintaining the going concern value of the Debtors' businesses and consistent with sections 363(c) and 1108 of the Bankruptcy Code which, together, authorize the continued operation of a business in the ordinary course by chapter 11 debtors.  *See* 11 U.S.C. § 363(c)(1) (providing that, so long as "the business of the debtor is authorized to be operated under [section 1108 of the Bankruptcy Code] and unless the Court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice and a hearing, and may use property of the estate in the ordinary course of business, without notice or a hearing. . . ."); 11 U.S.C. § 1108 (debtor in possession, as trustee, may operate the debtor's business unless the Court orders otherwise).

29.     Even to the extent the Debtors' continued sale of homes could possibly be construed as being outside the ordinary course of their business (which the Debtors in no way concede), the Court has the authority to grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. §363(b)(1).  Courts interpret section 363 to require only that such sale or use of property be within the sound business judgment of the debtor. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *The Official Comm. of Unsecured Creditors v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992);

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-14-

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 71 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del. 1991).

30.     Indeed, the court in Del. & Hudson Railway rejected the pre Bankruptcy Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under Lionel, observing:

> A non exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include:  the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value.

124 B.R. at 176.  The court in Delaware & Hudson Railway further held that:

> [o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the proposed Successful Bidder is proceeding in good faith.

*Id.*

31.     Furthermore, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos Related Litigants and/or Creditors v. Johns Manville Corp. (In re Johns Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company."  *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  Accordingly, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1).

32.     In these cases, there is sufficient business justification for the Debtors to close sales of homes, pay the associated costs and continue to contract for the construction and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-15-

sale of homes in the ordinary course.  The continued development and sale of the homes pursuant to the existing Contracts and future sales would provide the Debtors' estates with the best opportunity to realize value from the homes, and would provide immediate cash recovery to the Debtors' creditors.  Conversely, failure of the Debtors to meet their obligations under existing Contracts would cause immediate and substantial damage to the Debtors reputation in the marketplace, and destroy the going concern value of the Debtors' businesses.  Also, the Debtors should be authorized to continue to enter into new Contracts in order to maximize the value of their businesses for the benefit of all of their stakeholders.

**B.**    **The Debtors Should Be Authorized to Sell Homes Free and Clear of Liens, Claims, Encumbrances and Other Interests**

33.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of liens, claims, encumbrances and other interests if one of the following conditions is satisfied:

> (1) applicable nonbankruptcy law permits sale of such Property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such Property is to be sold is greater than the aggregate value of all liens on such Property;
>
> (4) such interest is in a bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest

11 U.S.C. § 363(f).  Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale of homes.  *In re Gulf States*, 285 B.R. 497 (Bankr. N.D. Ala. 2002); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).

34.    The Debtors can satisfy at least one of the five conditions set forth in section 363(f) as to each lien, claim, encumbrance or other interest in the Debtors' homes.  As they have always done, the Debtors intend to sell all homes on a going forward basis at fair market value and in excess of the value of any Liens on the Home thereby satisfying section

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-16-

363(f)(3).    In addition, section 363(f)(5) may be satisfied under the rationale accepted by many authorities.    In some cases, section 363(f)(4) may also apply.  Finally, unless an Lien Claimant opposes this Motion, the consent requirement section 363(f)(2) will be satisfied.    Accordingly, the Debtors request that the Court authorize the transfers of homes to customers in the ordinary course free and clear of all liens, claims, encumbrances and other interests, with such liens and interests to attach to the cash proceeds of such sales in the Debtors' possession to the extent required by the Lien Procedures.

**C.**    **Any Interest of Lien Claimants in Sale Proceeds is Adequately Protected**

35.    The Lien Procedures afford adequate protection to any interest of Lien Claimants in sale proceeds, and thus the Debtors should be authorized to use the cash collateral of the Lien Claimants.  Although section 363(c)(1) of the Bankruptcy Code provides broad authority to the Debtors to operate their businesses and enter into ordinary course transactions, section 363(c)(2) of the Bankruptcy Code restricts the Debtors' ability to use cash collateral.  "Cash Collateral" is defined in the Bankruptcy Code as, "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest.,"  11 U.S.C. § 363(a).  Pursuant to section 363(c)(2) of the Bankrupt Code, the Court may authorize the Debtors to use cash collateral as long as the applicable secured creditors consent or are adequately protected.  *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984).

36.    Appropriate adequate protection is decided on a case-by-case basis.  *See e.g., In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Mosello*, 195 B.R. 277- 289 (Bankr. S.D.N.Y. 1996); *In re Beker Indus. Corp.*, 58 B.R. 725 (Bankr. S.D.N.Y. 1986); *see also In re JKJ Chevrolet, Inc.*, 190 B.R. 542, 545 (Bankr. E.D. Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case) (citing *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987)).  Section 361 of the Bankruptcy Code provides that adequate protection may be afforded through a replacement lien or by "such other relief . . . as

will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."

37.     The proposed Lien Procedures provide adequate protection to the Lien Claimants by giving them a replacement lien in the sale proceeds.  With respect to the Construction Lien Claimants, because the Lien Procedures require the Debtors to reserve or "block" cash in an amount equal to all unresolved Demands, the Lien Procedures effectively bar the Debtors from using cash collateral of the Lien Claimants to the extent a Demand has been asserted and remains unresolved.  With respect to Demands reflecting Construction Lien Claims spanning multiple lots, the Lien Procedures require that the Debtors reserve only that portion of the asserted Construction Lien Claim allocable to the lot sold, but the Construction Lien Claimants remain adequately protected by virtue of their Construction Liens on the unsold lots.

## D.     The Court May Authorize the Payment of Liens

38.     It is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances.  In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in sections 1107(a), 1108, 363(b) and 105(a) of the Bankruptcy Code.

39.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.*  Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*  The CoServ court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate. . . ." *Id.*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-18-

40.     Consistent with the debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under sections 363(b) and 105(a) of the Bankruptcy Code where a sound business purpose exists for doing so.  *See, e.g., In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 17 18 (Bankr. M.D. Fla. 2005) (authorizing payment to critical vendors for prepetition amounts and finding that a sound business justification existed for payment because the vendors would not do business with the debtors absent the critical vendor status, and the disfavored creditors were not any worse off due to the critical vendor order); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential Construction Lien Claimants because the payments were necessary for general contractors to release funds owed to debtors).

41.     The legal inevitability of payment is another rationale for payment in these circumstances.  *See, e.g., In re Equalnet Commc'ns*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("exceptions [to general rule of nonpayment] arise primarily out of common sense and the presence of a legal or factual inevitability of payment").  It is a long-standing rule that a bankruptcy court has broad discretion over the timing of payment of administrative claims.  *In re Continental Airlines*, 146 B.R. 520, 529-30 (Bankr. D. Del. 1992).

42.     The relief sought herein is well within these recognized standards.  Many of the Lien Claimants are critical to the Debtors' operations and failure to pay their claims may lead such vendors to refuse to provide building materials and services going forward, which would substantially impede the Debtors' ability to construct homes, or at minimum would cause significant expense and delay while the Debtors scramble to find alternate goods and service providers.

43.     Moreover, the Lien Claimants have secured claims that will entitle them to be paid in full in any event.  Consequently, approval of the Lien Procedures, which provide a mechanism for the Debtors to pay certain secured prepetition obligations, will provide the Lien

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Claimants with no more than that which they otherwise would be entitled to under a plan and will save the Debtors the interest costs that otherwise might accrue on the Lien Claims during these chapter 11 cases.

44.     Similarly, to the extent there is any question as to the Debtors' legal authority to continue to honor obligations to their customers, including, where appropriate, to return Customer Deposits, such payments are authorized pursuant to the legal authority set forth herein.  The individual claims are small, and collectively they are crucial to maintaining the Debtors' reputation and avoiding losing customers to the Debtors' competitors, which might be viewed as more trustworthy and viable than the defaulting Debtors.  Hence, the Debtors request an Order authorizing them to honor their obligations to their customers, in the ordinary course of business.

45.     Selling houses in the ordinary course of business free and clear of liens and honoring Contract obligations are essential to the continuation of the Debtors' business.  The Lien Procedures provide a mechanism for addressing the various legal rights of all interested parties, and provide for a negotiation period designed to avoid burdening the Court with disputed issues unless circumstances require otherwise.  To the extent any of these actions require Court approval as outside of the ordinary course of business, ample authority supports granting all of the relief requested herein.

**E.     Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers**

46.     The Debtors represent that they have sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of cash reserves, and expected cash flows from ongoing business operations.  Also, under the Debtors' existing cash management system, the Debtors represent that checks or wire transfer requests can be readily identified as relating to an authorized payment in respect of Construction Liens.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions should be

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of Lien Claims that are prior to the Petition Date.

**F.    The Debtors Meet the Requirements of  Bankruptcy Rules 6003(b) and 6004(g)**

47.    Pursuant to new Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, which became effective December 1, 2007, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 20 days after the filing of the petition "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003 (b).  The Debtors submit that the instant facts satisfy the requirements of the rule, in order to avoid a cash management crisis and disruption to operations that would result in the absence of immediate relief.  For the same reason, the Debtors request that the Court waive Bankruptcy Rule 6004(g), which provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." *Id.* (emphasis added).

48.    As described above, the ability to continue to sell homes to customers "free and clear," including, where appropriate, to satisfy valid and enforceable Liens, is integral to the Debtors' business operations and necessary to maintain the confidence and goodwill of customers, which is critical to facilitate a successful reorganization.  Any failure by the Debtors to close sales on schedule and in the ordinary course of business and satisfy obligations to customers during the first twenty days of these cases will jeopardize the Debtors' ability to reorganize by potentially breaching contracts and destroying customer confidence.  Absent entry of the order requested herein, current customers may be unwilling to close home purchases and prospective customers may be unwilling to sign contracts to buy homes, and the Debtors' Title Insurers may refuse to continue with home sale closings.  The substantial risk of negative publicity if the Debtors do not have the requested authorization, or if they are unable to honor obligations under existing Sale Contracts, is a further threat to the Debtors' ability to reorganize.  Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 for immediate relief.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

**Notice**

2    49.  Notice of this Motion has been given to the following parties or, in lieu

3 thereof, to their counsel, if known: (i) the United States Trustee; (ii) the administrative agents for

4 the Debtors' prepetition secured lenders and their respective counsel to the extent known, (iii) the

5 Debtors' top 25 unsecured creditors on a consolidated basis as disclosed in their petitions; and

6 (iv) all parties in interest requesting notice under Bankruptcy Rule 2002.  After entry of the

7 Order, the Debtors will serve a copy of the Order on all known Lien claimants.  In light of the

8 nature of the relief requested herein, the Debtors submit that no other or further notice is required.

9    WHEREFORE, Debtors respectfully request that the Court enter an order substantially in

10 the form attached hereto (a) granting the relief requested herein, and (b) granting to Debtors such

11 other and further relief as the Court may deem proper.

12

13 Dated:  April 1, 2009    LARSON & STEPHENS

14

15         _/s/Zachariah Larson_
          Zachariah Larson, Esq. (NV Bar No. 7787)

16         810 S. Casino Center Blvd., Ste. 104
          Las Vegas, Nevada  89101

17         [Proposed] Counsel for Debtors and
          Debtors in Possession

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-22-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA