James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
        scho@pszjlaw.com
        wdisse@pszjlaw.com

E-File: 4-13-09

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702.382.1170
Facsimile: 702.382.1169
Email: zlarson@lslawnv.com
[Proposed] Attorneys for Debtors and
Debtors in Possession

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka<br>"Rhodes Homes, et al.,[1] | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11 |
| Debtors. | |

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

Affects:
☒    All Debtors
☐    Affects the following Debtor(s)

Hearing Date:
Hearing Time:
Courtroom 1

### NOTICE OF ENTRY OF ORDER

**TO: ALL INTERESTED PARTIES:**

YOU ARE HEREBY NOTICED that the *Stipulated Interim Order (I) Authorizing Limited Use of Cash Collateral Pursuant to Sections 105, 361, 362, and 363 of the Bankruptcy Code, (II) Granting Adequate Protection and Super Priority Administrative Expense Priority to Prepetition Secured Lenders, and (III) Scheduling a Final Hearing,* was entered on April 10, 2009 in related Case No. 09-14778-LBR, Heritage Land Company, LLC. A copy of the Order is attached hereto.

**DATED** this 13 day of April, 2009.

**LARSON & STEPHENS**

/s/ Zachariah Larson, Esq.
Zachariah Larson, Bar No. 7787
Kyle O. Stephens, Bar No. 7928
810 S. Casino Center Blvd., Suite 104
Las Vegas, NV 89101
Attorneys for Debtor

LARSON & STEPHENS
810 S. Casino Center Blvd, Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Notice of the hearing shall also be given to those entities claiming liens on collateral in which the First Lien Lenders have a security interest.

**Entered on Docket**
**April 10, 2009**

Hon. Linda B. Riegle
United States Bankruptcy Judge

James I. Stang, Esq. (SBN 94435)
Shirley S. Cho, Esq. (SBN 192616)
Werner Disse, Esq. (SBN 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
       scho@pszjlaw.com
       wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702/382.1170
Facsimile: 702/382.1169
Email: zlarson@lslawnv.com

[Proposed] Attorneys for Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 09-14814-LBR |
| | (Jointly Administered) |
| THE RHODES COMPANIES, LLC, aka "Rhodes Homes", et al.,[1] | Chapter 11 |
| Debtors. | DATE: 4-8-2009<br>TIME: 3:00 PM<br>Courtroom No. 1 |

[1] The Debtors in these cases, along with their case numbers are: Apache Framing, LLC (Case No. 09-14818); Batcave, LP (Case No. 09-14861); Bravo, Inc. (Case No. 09-14825); C & J Holdings, Inc. (Case No. 09-14843); Chalkline, LP

Affects:

☒    All Debtors
☐    Affects the following Debtor(s):

**STIPULATED INTERIM ORDER (I) AUTHORIZING LIMITED
USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362 AND 363 OF
THE BANKRUPTCY CODE, (II) GRANTING ADEQUATE PROTECTION AND
SUPER PRIORITY ADMINISTRATIVE EXPENSE PRIORITY TO PREPETITION
SECURED LENDERS, AND (III) SCHEDULING A FINAL HEARING**

Upon the motion dated April 1, 2009 of the above captioned debtors and debtors in

possession (collectively, the "*Debtors*") for Interim and Final Orders Pursuant to Sections 105, 361,

362, 363 and 364 of the Bankruptcy Code (A) Authorizing Debtors to Use Cash Collateral, (B)

Granting Adequate Protection to the Debtors' Prepetition Secured Parties and (C) Scheduling a Final

Hearing (the "*Motion*"); and the Court having considered the Motion; and an interim hearing to

consider approval of the Motion having been held and concluded on April 7, 2009 (the "*Interim

Hearing*"); and after due deliberation and consideration and good and sufficient cause appearing

therefore:

THE COURT HEREBY FINDS:

A.    Petition Date.  On March 31, 2009 or April 1, 2009 (as applicable, the "*Petition

Date*"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the

United States Code (the "*Bankruptcy Code*").  Each Debtor is continuing in the management and

possession of its business and properties as a debtor in possession pursuant to sections 1107

(Case No. 09-14862); Elkhorn Investments, Inc. (Case No. 09-14837); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Geronimo Plumbing LLC (Case No. 09-14820); Glynda, LP (Case No. 09-14865); Gung-Ho Concrete LLC (Case No. 09-14822); Heritage Land Company, LLC (Case No. 09-14778); Jackknife, LP (Case No. 09-14860); Jarupa, LLC (Case No. 09-14839); Overflow, LP (Case No. 09-14856); Parcel 20, LLC (Case No. 09-14848); Pinnacle Grading, LLC (Case No. 09-14887); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Rhodes Design and Development Corporation (Case No. 09-14846); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Rhodes Realty, Inc. (Case No. 09-14841); The Rhodes Companies, LLC (Case No. 09-14814); Six Feathers Holdings, LLC (Case No. 09-14833); Tick, LP (Case No. 09-14866); Tribes Holdings, LLC (Case No. 09-14817); Tuscany Acquisitions, LLC (Case No. 09-14853); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Golf Country Club, LLC (Case No. 09-14884) and Wallboard, LP (Case No. 09-14858)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    and 1108 of the Bankruptcy Code.

2        B.    Jurisdiction. Consideration of the Motion constitutes a "core proceeding" as defined

3    in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O). This Court has jurisdiction over this

4    proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

5    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6

7        C.    First Priority Secured Obligations. The First Lien Lenders and the Agent, defined

8    below, allege as follows:

9        (1)    Pursuant to that certain Credit Agreement dated as of November 21, 2005 (as

10    may have been amended from time to time, the "First Lien Credit Agreement") among Heritage

11    Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the

12    Borrowers, the Lenders Listed Therein as the Lenders (the "First Lien Lenders"), and Credit Suisse,

13    Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole

14    Bookrunner and Sole Lead Arranger (the "Agent") and together with all guarantees, subordination

15    agreements, intercreditor agreements, blocked account or deposit control agreements, indentures,

16    notes, mortgages, pledges, guarantees, instruments and any other agreements and documents

17    delivered pursuant thereto or in connection therewith (collectively, and as amended, restated,

18    supplemented or otherwise modified from time to time, the "First Lien Loan Documents"); the

19    Agent and the First Lien Lenders made certain senior loans, advances and other financial

20    accommodations to the Debtors to fund, among other things, the operations of the Debtors.

21

22

23        (2)    Pursuant to the First Lien Loan Documents, the Debtors were, as of the

24    Petition Date, indebted to the Agent and the First Lien Lenders in the approximate amount of

25    $307,000,000 exclusive of accrued but unpaid interest, costs, fees and expenses. For purposes of

26    this Order, the term "First Priority Indebtedness" shall mean and include, without duplication, any

27    and all amounts owing or outstanding under the First Lien Loan Documents (including, without

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    limitation, all Obligations as defined in the First Lien Loan Documents) or any other interest on, fees

2    and other costs, expenses and charges owing in respect of, such amounts (including, without

3    limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses

4    that are chargeable or reimbursable under the First Lien Credit Agreement), and any and all

5    obligations and liabilities, contingent or otherwise, owed in respect of the Obligations outstanding

6    thereunder.

7

8            (3)      Pursuant to certain security agreements, pledge agreements, blocked account

9    and deposit control agreements, mortgages, deeds of trust, assignments and other documents and

10   agreements (as amended, restated, supplemented or otherwise modified from time to time,

11   collectively, the *"First Lien Security Documents"*), and the other First Lien Loan Documents, the

12   Debtors granted to and/or for the benefit of the Agent and the First Lien Lenders first priority and

13   continuing pledges, liens and security interests (collectively, the *"First Priority Liens"*) to secure the

14   First Priority Indebtedness and any guarantees thereof, in and upon the Debtors' property and assets,

15   whether real or personal, tangible or intangible and wherever located, whether now or hereafter

16   existing or acquired, including any state and federal tax refunds or rebates, and all of the proceeds,

17   products, offspring, rents and profits thereof, all as described in the First Lien Security Documents.

18   All collateral provided under any First Lien Loan Document, including that described in this

19   subparagraph C(3), that existed as of the Petition Date and all prepetition and, subject to section 552

20   of the Bankruptcy Code, postpetition proceeds, products, offspring, rents and profits thereof shall

21   hereafter be referred to as the *"Prepetition Collateral."*

22

23

24           (4)      (a) The First Lien Loan Documents are valid and binding agreements of the

25   Debtors, (b) the Agent (on its own behalf and on behalf of the First Lien Lenders) properly perfected

26   their security interests and liens in and on the Prepetition Collateral, and (c) the First Priority Liens

27   (i) constitute valid, binding, enforceable and perfected first priority security interests and liens on the

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Prepetition Collateral and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination by the Debtors pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(5)   (a) The First Priority Indebtedness constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms, (b) the Debtors have no objection, offset, defense or counterclaim of any kind or nature to the First Priority Indebtedness and (c) the First Priority Indebtedness, and any amounts previously paid to or on behalf of the Agent or any First Lien Lender on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

During the Cash Collateral Period, the Debtors agree not to challenge any of the above allegations of the First Lien Steering Committee or the Agent set forth in this Recital C.

D.     Cash Collateral. The Debtors have requested the use "cash collateral", as defined by section 363(a) of the Bankruptcy Code and including any and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds of the Prepetition Collateral ("*Cash Collateral*") in accordance with the Budget (as defined below), in order to continue the operation of their businesses and their reorganization under chapter 11 of the Bankruptcy Code. Accordingly, the relief granted is being provided with the consent of the First Lien Lenders for the continued operation of the Debtors' businesses for the Cash Collateral Period (as defined below). Good, adequate and sufficient cause has been shown to justify the granting of the relief provided herein and the immediate entry of this Order.

E.     Good Faith. Based upon the record before the Court, the terms of the use of the Cash Collateral as provided in this Order have been negotiated at arms' length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors. The Agent and the First Lien Lenders are permitting the use of their Cash

1    Collateral in good faith.

2    F.    No Secured Lender Objections.    The Agent and the First Lien Lenders have

3    consented to the use of their Cash Collateral solely for the Cash Collateral Period and such consent

4    is expressly conditioned upon the consideration as provided in this Order. The adequate protection

5    provided herein and other benefits and privileges contained herein are consistent with and authorized

6    by the Bankruptcy Code and are necessary in order to obtain such consent or non-objection of such

7    parties.

8

9    G.    Notice.    Notice of the interim hearing to approve the Motion was delivered on or

10    before April 2, 2009 via United States mail, first class postage prepaid, to the following parties in

11    interest: (i) the United States Trustee for the District of Nevada (the "*U.S. Trustee*"); (ii) those

12    parties listed on the Consolidated List of Creditors Holding Largest Twenty Unsecured Claims

13    Against the Debtors, as identified in the Debtors' chapter 11 petitions; (iii) counsel to the Agent;

14    (iv) counsel to a steering committee of First Lien Lenders (the "*First Lien Steering Committee*"); and

15    (v) all parties requesting service papers pursuant to Bankruptcy Rule 2002; Given the nature of the

16    relief sought in the Motion, such notice constitutes sufficient and adequate notice of this Order

17    pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the

18    Bankruptcy Code, as required by sections 363(b) and (c) of the Bankruptcy Code.

21    NOW, THEREFORE, IT IS HEREBY ORDERED, STIPULATED AND AGREED:

22    1. Relief Granted. The relief granted herein is granted on a interim basis subject to the

23    express provisions hereof. Any objections to the relief sought to the interim approval of the relief

24    granted herein that have not been previously resolved or withdrawn are hereby adjourned to the final

25    hearing.

27    2.    Use of Cash Collateral.    Except as otherwise set forth herein, for as long as the

28    Debtors comply with the terms and conditions of this Order, the Debtors are hereby authorized to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

use Cash Collateral consistent with the budget (the *"Budget"*) annexed hereto as Exhibit "A", subject to a variance of 15%, *provided*, that the Agent and First Lien Lenders are granted adequate protection as hereinafter set forth, and *provided, further*, that, absent the written consent of the First Lien Steering Committee (in consultation with the Agent), the Debtors shall cease to be authorized to use Cash Collateral  pursuant to this Order upon the occurrence of the Cash Collateral Termination Date.

      3.    Budgets and Covenants.

      (a)    The annexed Budget contains weekly forecasts covering the period beginning April 3, 2009 through the week ending April 17, 2009 (the *"Budget Period"*). The Debtors are hereby authorized to use Cash Collateral in a manner that is entirely consistent with the Budget; provided, however, that the Debtors shall be authorized to pay an aggregate of $1,254,546 for Aspen at Sawmill and Mohave Detention Center as per the Pinnacle Grading, LLC Cash Flow Projection attached hereto as Exhibit B only to the extent that Pinnacle Grading revenue of $1,198,403 is received during the Budget Period. The rent otherwise payable to Mrs. Glynda Rhodes under the Budget in the amount of $2,500 shall be paid to the client trust account of the Debtors' bankruptcy attorneys, Pachulski Stang Ziehl & Jones LLP pending further court order. The Debtors are authorized, without further order of the Court, to make modifications to the Budget with the written consent of the First Lien Steering Committee (in consultation with the Agent), which  consent shall be granted or withheld in the First Lien Steering Committee's sole discretion.  The Debtors' authorization to use Cash Collateral hereunder shall terminate upon the earlier to occur of (i) the Cash Collateral Termination Date or (ii) expiration of the Budget Period unless the Debtors shall have proposed and the First Lien Steering Committee, in its sole discretion (but in consultation with the Agent), shall have approved, an extension of the Cash Collateral Period.

      (b)    The Debtors shall provide to the Agent and First Lien Steering Committee weekly

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   variance reports by 5:00 p.m. (prevailing Pacific Time) on Tuesday of each week during the Budget

2   Period (or the next business day if such day is not a business day). Such variance reports shall (i)

3   include prior week actual and cumulative financial results compared to the budgeted amounts for

4   each such week and a detailed explanation of any variances and (ii) certify the Debtors' compliance

5   

6   with the Budget.

7       4.      Ordinary Course of Business. The Debtors shall only engage in transactions in

8   the Debtors' ordinary course of business during the Budget Period.

9       5.      Adequate Protection. The Agent and the First Lien Lenders are hereby granted

10  the following as adequate protection:

11          (a)  Adequate Protection Liens. As adequate protection of the respective interests of the

12  Agent and First Lien Lenders in the Prepetition Collateral, to the extent of any diminution in the

13  value of the Prepetition Collateral (including Cash Collateral) from and after the Petition Date,

14  whether as a result of the imposition of the automatic stay, or the use, sale or lease of the Prepetition

15  Collateral, including the use of the Cash Collateral, the Agent is hereby granted for its benefit and

16  the benefit of the First Lien Lenders, replacement liens (the "*Adequate Protection Liens*"), subject

17  only to such other liens, if any, as may be senior, under applicable law, to the First Priority Liens in

18  the relevant Collateral (as hereinafter defined), on all of the Debtors' rights, title and interest in, to

19  and under all personal and real property and other assets, whether now existing or at any time

20  

21  hereafter acquired and regardless of where located, including, but not limited to, all contracts of sale,

22  pledged equity interests, tax refunds, general intangibles, copyrights, patents, trademarks, books and

23  records, customer lists, credit files, computer files, programs, printouts, other computer materials and

24  records related thereto, commercial tort claims, documents, letters of credit issued in favor of the

25  Debtors, excess proceeds returned to the Debtors from letter of credit beneficiaries, equipment,

26  fixtures, goods, inventory, machinery, pledged deposits, chattel paper, securities accounts, deposit

27  

28  

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   accounts and all other demand, time, savings and cash management, passbook and similar accounts,

2   and all monies, securities, instruments and other investments deposited or required to be deposited in

3   such accounts, but excluding all claims for relief under chapter 5 of the Bankruptcy Code

4   (collectively, including the Prepetition Collateral, the "*Collateral*").  Except as provided in this

5   Order, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien on the

6   Collateral by any order subsequently entered in the Chapter 11 Cases and shall be granted the

7   benefits of paragraph 6 hereof as applicable.

8

9            (b)  Adequate Protection Claims.  As additional adequate protection of the interests of the

10  Agent and the First Lien Lenders in the Prepetition Collateral, the Agent and the First Lien Lenders

11  are hereby granted allowed administrative priority claims under section 507(b) of the Bankruptcy

12  Code (the "*Adequate Protection Claims*") for any diminution in value of the Prepetition Collateral

13  (including Cash Collateral) from and after the Petition Date, whether as a result of the imposition of

14  the automatic stay, or the use, sale or lease of Prepetition Collateral, including the use of Cash

15  Collateral.  The Adequate Protection Claims shall have priority over all administrative expenses of

16  the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including,

17  without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b),

18  506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise (whether

19  incurred in the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the

20  Bankruptcy Code or any other proceeding related hereto or thereto).  Notwithstanding the foregoing,

21  the Adequate Protection Claims shall not have priority over the administrative claims incurred by the

22  Debtors as and to the extent contemplated in the Budget, the administrative claims of any third party

23  who received retainers from the Debtors to the extent of such retainers and a reasonable carveout for

24  professionals of a creditors committee (if and when appointed)for the purpose of investigating the

25  acknowledgements, admissions and confirmations of the Debtors contained herein.  Solely for the

1   Cash Collateral Period, the Adequate Protection Claims shall be subordinated to (i) the retainers

2   held, as of the Petition Date, by professionals to the Debtors that are retained pursuant to an order of

3   the Court and only to the extent of fees and expenses (a) incurred prior to a Cash Collateral

4   Termination Event and (b) allowed by further order of the Court; and (ii) the allowed administrative

5   claims of non-insider employees that provide actual services to the Debtors during the Cash

6   Collateral Period and allowed administrative claims of entities that provide services to the Debtors

7   (other than any affiliates of the Debtors or Jim Rhodes), in each case only to the extent provided for

8   in the Budget.  Notwithstanding the foregoing, Spirit Underground shall have the benefit of the

9   foregoing sentence but only to the extent of $30,000 for allowed administrative claims in respect of

10  services actually rendered during the Cash Collateral Period.  In addition, any amounts due Pinnacle

11  Grading, LLC shall be subject to the provisions of paragraph 3 hereof.

12          (c)  Fees and Expenses.  As further adequate protection for the use of the Cash Collateral

13  during the Budget Period, the Debtors shall, no later than one business day after entry of this Order,

14  pay in cash the following to the professionals retained by the First Lien Steering Committee on

15  account of fees and expenses incurred and to be incurred on behalf of the First Lien Steering

16  Committee, without a right of setoff, recoupment, avoidance or disgorgement: (i) $160,000 to

17  Winchester Carlisle Partners LLC; (ii) $105,000 to Akin Gump Strauss Hauer & Feld LLP; and (iii)

18  $10,000 to Kolesar & Leatham, in each case in accordance with wire instructions provided by the

19  applicable professional to the Debtors; the Debtors having acknowledged that wire instructions for

20  Akin Gump Strauss Hauer & Feld LLP have already been provided to the Debtors.  The foregoing

21  payments shall be subject to recharacterization under Bankruptcy Code section 506(b).  Nothing

22  herein shall prejudice the Agent or First Lien Steering Committee from seeking payment of

23  additional fees and expenses in connection with any further or final order regarding cash collateral or

24  otherwise and such rights are expressly reserved.

(d) <u>Reporting Requirements</u>. The Debtors shall furnish to the Agent and the First Lien Steering Committee the following:

(I) <u>Weekly Cash Flow Budget</u>. On the third day of each calendar week (or, if such Monday is not a business day, on the next succeeding business day), (i) a report setting forth in reasonable detail any variances from the Weekly Cash Flow Budget on the basis of the actual prior week, (ii) a report setting forth a list of all asset sales since the date of the last Weekly Cash Flow Budget and the respective sales price, and (iii) a report of cumulative net cash proceeds received by the Debtors with respect to asset sales since the date of the last such report.

(II) <u>Cash Collateral Termination Event Notices</u>. As soon as practicable, and in any event within one business day after a responsible officer has actual knowledge of the existence of any Cash Collateral Termination Event, the Debtors shall give the Agent and the First Lien Steering Committee notice specifying the nature of the Cash Collateral Termination Even, which notice, if given by telephone, shall be promptly confirmed in writing on the next business day.

(III) <u>Provision of Specific Information</u>. The Debtors shall furnish all of the information set forth on Exhibit C hereto to the First Lien Steering Committee no later than Friday, April 10, 2009 at 5:00 p.m. (prevailing Pacific Time). The First Lien Steering Committee is authorized to share information and documents it receives from the Debtors with the Agent and the First Lien Steering Committee shall share such information and documents with the Agent upon the Agent's request.

(e) <u>Disbursement Authority</u>. During the Cash Collateral Period, all amounts paid by the Debtors must be approved by two of the following (with checks drawn on any Debtor's bank accounts to be signed by two of the following): (i) the Debtors' general counsel; (ii) the Debtors' chief financial officer; and (iii) the Debtors' controller; provided, that neither Jim Rhodes nor any relative or affiliate of Jim Rhodes shall serve in any of the foregoing capacities.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6. _Perfection of Adequate Protection Liens._ The Adequate Protection Liens granted pursuant to this Order shall be deemed to be perfected automatically as of the Petition Date, without the necessity of the filing of any UCC-1 financing statement, state or federal notice, mortgage or other similar instrument or document in any state or public record or office and without the necessity of taking possession or "control" (within the meaning of the Uniform Commercial Code) of any Collateral, _provided, however,_ that if the Agent shall, in its sole discretion, chooses to require the execution of and/or file (as applicable) such mortgages, financing statements, notices of liens and other similar instruments and documents, all such mortgages, financing statements, notices of liens or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded _nunc pro tunc_ at the time and on the date of the later of the Petition Date or the date upon which the Debtors acquired the property subject to the mortgages, financing statements, notices of liens and other similar instruments and documents at issue. Each and every federal, state and local government agency or department is hereby directed to accept a copy of this Order as evidence of the validity, enforceability and perfection as of the Petition Date of the liens granted or authorized pursuant to this Order to or for the benefit of the Agent and the First Lien Lenders.

7. _Limitation on Charging Expenses Against Collateral._ During the Cash Collateral Period defined herein, no administrative claims, including fees and expenses of professionals, shall be assessed against or attributed to any of the Agent or First Lien Lenders with respect to their interests in the Prepetition Collateral for the period of consensual use of Cash Collateral (the "_Cash Collateral Period_") or any subsequent period in which the Debtors are permitted to use Cash Collateral pursuant to the terms of this Order, as applicable, pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtors, without the prior written consent of the Agent and the First Lien Steering Committee, as applicable, and no such consent shall be implied from any action, inaction or acquiescence by, either with or without

1  notice to, the Agent or First Lien Steering Committee, or otherwise.

2        8. Priority of Obligations. Except as otherwise set forth herein, pursuant to Bankruptcy

3  Code section 507(b), all of the Debtors' obligations arising under this Order in respect of the First

4  Priority Indebtedness, the Prepetition Collateral, or the Adequate Protection Liens shall constitute

5  obligations of the Debtors with priority over any and all administrative expenses or other claims

6  arising or granted under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a),

7  546(c) or 726.

8        9.    Reservation of Rights of Prepetition Secured Parties.    Notwithstanding anything

9  herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a

10  waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of any of the Agent or the

11  First Lien Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without

12  limitation, the right of such parties to (i) request modification of the automatic stay of section 362 of

13  the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the

14  Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11

15  trustee or examiner (including with expanded powers);, or (iii) propose, subject to the provisions of

16  section 1121 of the Bankruptcy Code, a chapter 11 plan or plans for any of the Debtors; (b) any of

17  the rights of the Agent and the First Lien Lenders to seek modification of the grant of adequate

18  protection provided hereby so as to provide different or additional adequate protection at any time,

19  including prior to a Cash Collateral Termination Event, and nothing herein shall affect the rights of

20  any other party or entity to seek or oppose such modification of the grant of the adequate protection

21  provided hereby; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise)

22  of any of the Agent or the First Lien Lenders. Nothing herein shall prejudice the rights of any party

23  to oppose any of the foregoing forms of relief (other than the Debtors with respect to paragraph C

24  herein) that may be sought by any of the Agent or the First Lien Lenders.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10. Cash Collateral Termination.

(a)  Notwithstanding anything herein or in the First Lien Financing Documents to the contrary, the Debtors shall no longer be authorized to use Cash Collateral pursuant to this Order, the First Lien Financing Documents, or otherwise, and consent to the use of Cash Collateral shall be terminated (the "*Cash Collateral Termination Date*") upon the earlier of (i) April 17, 2009 at 11:59 p.m. (prevailing Pacific Time) (unless such date is extended in the sole discretion of the First Lien Steering Committee (in consultation with the Agent)) and (ii) absent further order of the Court, the date that is one (1) business day after the delivery by the Agent or the First Lien Steering Committee of written notice to the Debtors of the occurrence of any of the following events (any event shall be referred to as a "*Cash Collateral Termination Event*"):

(I)  non-compliance by the Debtors with any term, line item or provision in this Order or the Budget;

(II)  the occurrence after the date hereof of a material adverse effect on any of the business, prospects, performance, assets, operations, condition (financial or otherwise), contingent and other liabilities or material agreements of the Debtors, taken as a whole;

(III)  the incurrence by the Debtors of any expenses or the entry into any transaction not specifically contemplated by the Budget, absent the prior written consent if the First Lien Steering Committee, which consent shall be provided or withheld in the First Lien Steering Committee's sole discretion (in consultation with the Agent);

(IV)  the entry of an order pursuant to Bankruptcy Code section 363 approving the sale of all or substantially all of the Debtors' assets (but only in the event that the First Lien Steering Committee (in consultation with the Agent) has not first consented to such sale, *provided, however,* that to the extent that the net proceeds of such sale are sufficient to satisfy all of the First Priority Indebtedness, then such sale shall not constitute a Cash Collateral Termination Event until the

1   closing of the sale;

2          (V) conversion or dismissal of the Chapter 11 Cases, *provided, however,* that if

3   an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or

4   otherwise is at any time entered, such order shall provide (in accordance with sections 105 and

5   349(b) of the Bankruptcy Code) that (i) the claims and liens granted pursuant to this Order to or for

6   the benefit of the Agent and the First Lien Lenders shall continue in full force and effect and shall

7   maintain their priorities as provided in and subject to the express limitations contained in this Order

8   until all obligations in respect thereof shall have been paid in full in cash and satisfied in the manner

9   provided in the First Lien Loan Documents (and that such claims and liens shall, notwithstanding

10   such dismissal, remain binding on all parties in interest); (ii) prior to dismissal, the applicable

11   Debtors shall deliver to the Agent and record, at the Debtors' cost, financing statements, mortgages

12   and other documentation evidencing perfected liens in the Collateral and (iii) this Court shall retain

13   jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens;

14          (VI) entry of any order pursuant to sections 364(c)(1) and (d)(1) of the

15   Bankruptcy Code authorizing the Debtors to obtain credit that is payable on a senior priority, junior

16   priority or pari passu basis with the First Priority Indebtedness without the written consent of the

17   First Lien Steering Committee (in consultation with the Agent);

18          (VII) failure of the Debtors to make the payments specified in paragraph 5 to

19   the professionals for the First Lien Steering Committee by 5:00 p.m. (prevailing Pacific Time) on

20   April 9, 2009;

21          (VIII) failure of the Debtors to provide the information set forth on Exhibit C to

22   the First Lien Steering Committee by 5:00 p.m. (prevailing Pacific Time) on April 10, 2009;

23          (IX) failure of the Debtors to provide representatives of the First Lien Steering

24   Committee with reasonable access to the individuals set forth on Exhibit C as set forth herein; or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(X)    this Order ceases to be in full force and effect.

(b)    First Lien Steering Committee Access.

On April 8, 2009 at 2:30 pm (PST), the Debtors shall provide Winchester Carlyle Partners LLC ("Winchester") access to the Debtors' conference room at the corporate offices as workspace. Winchester personnel shall not initiate any substantive conversation with any of the Debtor's employees except as set forth herein. Commencing April 9, 2009 at 9:00 a.m. and ending 5:00 p.m. (PST) and continuing on April 10, April 13, April 14 and until 12:01 p.m. April 15, Winchester may commence employee interviews provided that no such interview shall exceed three (3) hours without the written consent of the Debtors or court order and a representative of the Debtors, other than Jim Rhodes, may attend such interviews. If Winchester requests additional documents or information other than those described on Exhibit C, the Debtors shall make a good faith effort to provide the documents or information on a timely basis. Winchester will vacate the Debtors' business premises by April 15, 2009 at 5:00 p.m. (PST).

(c)    Prepetition Secured Party Remedies.

(I)    Upon the occurrence of a Cash Collateral Termination Event, any the Agent or any First Lien Lender shall provide two (2) business days written notice (by facsimile, telecopy, electronic mail or otherwise) to the U.S. Trustee, counsel to the Debtors and counsel to any official committee prior to terminating the Debtors' use of cash collateral under this Order. Notwithstanding anything herein to the contrary, the First Lien Steering Committee retains the right, in its sole discretion (but in consultation with the Agent), to waive any such Cash Collateral Termination Event permanently or temporarily. The Debtors, the U.S. Trustee, and any official committee may seek within the two (2) business day notice period an expedited hearing before this Court solely for the purpose of considering whether, in fact, a Cash Collateral Termination Event

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   has occurred and is continuing. At the expiration of such two (2) business day period, the Agent

2   and any First Lien Lender shall be authorized, and the automatic stay provisions of section 362 of

3   the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit them to

4   take whatever actions necessary to terminate the Debtors' use of Cash Collateral, including freezing

5

6   any deposit or securities accounts.

7           (II) The failure or delay by the Agent or any First Lien Lender to seek relief or

8   otherwise exercise its rights and remedies under this Order or any of the First Lien Loan

9   Documents shall not constitute a waiver of any of the rights of such parties hereunder, thereunder

10  or otherwise, and any single or partial exercise of such rights and remedies against any party or

11  Collateral shall not be construed to limit any further exercise of such rights and remedies against

12  any or all of the other party and/or Collateral. No holder of a lien that is subject to this Order or

13  granted by the Debtors as adequate protection shall be entitled to object on the basis of the

14  existence of any such lien to the exercise by the Agent or any First Lien Lender of their respective

15  rights and remedies hereunder, under the First Lien Loan Documents or under applicable law to

16  effect satisfaction of the First Priority Indebtedness or to receive any amounts or remittances due

17  hereunder or under the First Lien Loan Documents. Notwithstanding the occurrence of the Cash

18  Collateral Termination Date or anything herein to the contrary, all of the rights, remedies and

19  benefits and protections provided to the Agent, the First Lien Lenders and the First Lien Steering

20  Committee under this Order shall survive the Cash Collateral Termination Date.

21

22

23          11. No Granting of Liens. Except as expressly provided in this Order, the Debtors shall

24  be enjoined and prohibited at any time during the Chapter 11 Cases from granting claims or liens in

25  the Prepetition Collateral or any portion thereof to any other parties pursuant to sections 364(d),

26  503(b) or 507(b) of the Bankruptcy Code or otherwise

27

28          12. Successors and Assigns. The provisions of this Order shall be binding upon and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

inure to the benefit of each of the Agent, the First Lien Lenders, the First Lien Steering Committee and Debtors and their respective successors and assigns (including any chapter 7 trustee or other trustee or fiduciary hereafter appointed as a legal representative of any Debtor or with respect to the property of the estates of any Debtor).

13.   No Discharge.   The obligations of the Debtors under this Order shall not be discharged (and the Debtors waive the right to seek or obtain a discharge of such obligations under section 1141 of the Bankruptcy Code or otherwise) until all obligations arising or payable under this Order are indefeasibly paid in full in cash by the Debtors.

14.   No Modification.   Based upon the findings set forth in this Order, in the event that any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any lien or claim authorized or created hereby or thereby or any First Priority Indebtedness incurred hereunder. Notwithstanding any such modification, amendment or vacation, any First Priority Indebtedness incurred and any claim granted to the Agent or First Lien Lenders hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Order, and the Agent and First Lien Lenders shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein and therein, with respect to any such First Priority Indebtedness and claims.

15.   No Setoff.   Notwithstanding anything herein to the contrary, this Order shall not require the Agent or any First Lien Lender to turn over or release to any party any Cash Collateral in its possession as of the Petition Date that is subject to setoff under the Bankruptcy Code; *provided* that, until the occurrence of a Cash Collateral Termination Event, none of the or any First Lien Lender shall exercise, or seek to exercise, any such setoff rights; *provided further* that all parties

LV 418,762,738v1 4-8-09

18

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    hereby reserve all of their rights as to whether any such setoff is valid and enforceable under the

2    Bankruptcy Code and applicable nonbankruptcy law.

3    16.  This Order is hereby deemed effective immediately pursuant to Federal Bankruptcy

4    Rules of Procedure §6004(h).

5

6    17.  The provisions of this Order, including the grant of claims and liens to or for the

7    benefit of the Agent and the First Lien Lenders, and any actions taken pursuant hereto shall survive

8    the entry of any order converting any of the Chapter 11 Cases to a case under chapter 7 of the

9    Bankruptcy Code.

10    18.  A final hearing on the Debtors' authority to use Cash Collateral shall be held before

11    this Court on April 17, 2009.  The Debtors shall prior to the final hearing make Paul Huygens and

12    Jim Rhodes available for deposition to be taken by the First Lien Steering Committee at a time and

13    place to be agreed upon. Notice of the final hearing to approve the Debtors' use of Cash Collateral

14    shall be delivered on or before April 9, 2009 via United States mail, first class postage prepaid, on

15    the following parties in interest: (i) the United States Trustee for the District of Nevada (the

16    "*U.S. Trustee*"); (ii) those parties listed on the Consolidated List of Creditors Holding Largest

17    Twenty-Five Unsecured Claims Against the Debtors, as identified in the Debtors' chapter 11

18    petitions; (iii) counsel to the Agent for the First Lien Creditors; (iv) counsel to the First Lien

19    Steering Committee; (v) all creditors of Debtor Pinnacle Grading LLC and (v) all parties requesting

20    service papers pursuant to Bankruptcy Rule 2002.

21

22

23    . . .

24    . . .

25    . . .

26    . . .

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   19. This Order shall constitute findings of fact and conclusions of law.

2   DATED: April 9, 2009

3   **APPROVED**                                    **APPROVED**

4
    By: /s/Brett Axelrod                           By: _____
5       GREENBERG TRAURIG                               United States Trustee
        Brett Axelrod                                   300 Las Vegas Blvd. S., Ste. 4300
6       3773 Howard Hughes Parkway                      Las Vegas, NV 89101
        Suite 400 North
7       Las Vegas, NV 89169
8       *Counsel for Sagebrush Enterprises Inc.*

9   **APPROVED**                                    **APPROVED**

10
    By: /s/Ira S. Dizengoff                        By: __/s/Ramon M. Naguiat_____
11      AKIN GUMP STRAUSS                               SKADDEN, ARPS, SLATE,
        HAUER & FELD LLP                                MEAGHER & FLOM LLP
12      Ira S. Dizengoff (NY Bar No. 2565687)          Ramon M. Naguiat
        Philip C. Dublin (NY Bar No. 2959344)          300 S. Grand Ave., #3400
13      Abid Qureshi (NY Bar No. 268437)               Los Angeles, CA 90071
        One Bryant Park                                *Co-Counsel for Credit Suisse, Cayman*
14      New York, NY 10036                             *Islands Branch, as Agent for First Lien*
15      *Counsel for the First Lien Steering Committee*  *Lenders*

16  Submitted by:

17  LARSON & STEPHENS

18  By: _/s/ Zachariah Larson, Esq._____
19      Zachariah Larson, Esq. (NV Bar No 7787)
        Kyle O. Stephens, Esq. (NV Bar No. 7928)
20      810 S. Casino Center Blvd., Ste. 104
        Las Vegas, NV 89101
21      (702) 382-1170 (Telephone)
        (702) 382-1169
22      *Proposed Attorney for Debtor*
23                                          # # #

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT C

- Copies of information supporting park development & reimbursement agreement with county
- Copy of outstanding $315,000 and $1,342,000 park reimbursement invoices
- Outstanding bond list, expiration dates, annual maintenance fees, work remaining to complete for bond release, estimated cost and timing of such work.
- Detailed general ledger of all entitles at 3/31/09.
- Bank statements and reconciliations at 3/31/09
- Payroll detail by employee for all entities (Pinnacle, Tuscany, etc).
- Check registers YTD thru 3/31/09
- Copies of Pinnacle agreements relative to current projects
- Copy of Option Agreement with Commerce re: Tuscany
- Copies of all agreements re: management & maintenance of Rhodes & Tuscany golf courses
- Schedule detailing due to/from related party entities.
- YTD Internal Financial Statements thru 3/31/09
- Fixed Asset Subledger at 3/31/09
- *Detail of Fixed Asset Sales and Purchases for 2008 and YTD for 2009*
- Land Development Budgets as of 3/31/09
- Lot Costing Calculations as of 3/31/09
- Plats for all communities
- Master House Cost Budgets for all active plans and access to contracts
- Copy of development agreements with city/county for Rhodes, Tuscany, Arizona Project
- Pricing sheets, option pricing, sales parameters for each community
- Marketing budgets
- Detail of land owned cross referenced to owner entity
- Model and office leases
- CC&Rs for each community and detail on HOA board structure with members and terms
- HOA budgets
- Copy of customer backlog at 3/31/09
- Detail on cycle times & building process by plan.
- Detail on outstanding /pending litigation
- Detail of current warranty claims and any pending Ch. 40 issues
- Schedule detailing any homes currently owned as a result of repurchase from homeowners
- *Access to land development files for soils, environmental reports, etc.*

Access to key managers to understand their operations including but not limited to (Paul Huygens, Jeff Barcy, Dan Tarwater, Joe Schramme, Brent Simpson, Jim Rhodes, Scott Prokopchuk, Jonathan Stafford, all construction personnel, Ryan Wells, Anil Melnick, Ryan Sourcie, HOA Contacts as necessary) – access pending continued settlement negotiations.