James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
        scho@pszjlaw.com
        wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702/382.1170
Facsimile: 702/382.1169
Email: zlarson@lslawnv.com

[Proposed] Attorneys for Debtors and
Debtors in Possession

E-Filed: April 13, 2009

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

SOUTHERN DIVISION

In re:

THE RHODES COMPANIES, LLC, aka
"Rhodes Homes," et al.,[1]

        Debtors.

Affects:

☒  All Debtors
☐  Affects the following Debtor(s)

Case No.: BK-S-09-14814-LBR
(Jointly Administered)

Chapter 11

**APPLICATION OF DEBTORS AND
DEBTORS IN POSSESSION TO EMPLOY
PACHULSKI STANG ZIEHL & JONES
LLP AS GENERAL BANKRUPTCY
COUNSEL *NUNC PRO TUNC* TO THE
PETITION DATE**

Date: May 15, 2009
Time: 10:00 a.m.
Courtroom 1

[Declaration of James I. Stang filed concurrently
herewith]

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778);
The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC
(Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822);
Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers
Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-
14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General
Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The above-captioned debtors and debtors in possession (the "Debtors") hereby file this application (the "Application") to employ Pachulski Stang Ziehl & Jones LLP (the "Firm" or "PSZ&J"), whose business offices are located at 10100 Santa Monica Blvd., 11th Floor, Los Angeles, California 90067, as Debtors' general bankruptcy counsel. This Application is brought pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 2014. In support of the Application, the Debtors respectfully represent as follows:

On March 31, 2009, the above-captioned Debtors (the "Primary Filers") except Tuscany Golf Country Club, LLC, Pinnacle Grading, LLC, and Rhodes Homes Arizona, LLC (the "Secondary Filers") each filed a voluntary petition for relief under chapter 11 of title 11, United States Bankruptcy Code (the "Bankruptcy Code"). On April 1, 2009, the Secondary Filers filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. All references to Petition Date herein shall mean March 31, 2009 for the Primary Filers or April 1, 2009 for the Secondary Filers, as applicable. The Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

The factual background relating to the Debtors' commencement of these Cases is set forth in detail in the *Declaration of James M. Rhodes in Support of First Day Motions* filed contemporaneously with this Motion or shortly thereafter and incorporated herein by reference.

In support of the Application, the Debtors rely on (i) the *Statement Under Rule 2016 of the Federal Rules of Bankruptcy Procedure and Section 329 of the Bankruptcy Code*, and (ii) the *Declaration of James I. Stang in Support of Application of Debtors and Debtors in Possession to*

(Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    *Employ Pachulski Stang Ziehl & Jones LLP as General Bankruptcy Nunc Pro Tunc to the Petition*

2    *Date* (the "Stang Declaration"), which are being submitted concurrently with the Application.

3        The Firm was retained by the Debtors prior to the Petition Date. A copy of the Retention

4    Agreement is attached hereto as Exhibit A. PSZ&J began providing services to the Debtors on

5    December 12, 2008, including, but not limited to, negotiating an out of court workout agreement

6    with creditors of the Debtors and affiliated entities, preparing for the filing of the chapter 11 Cases

7    and advising the Debtors regarding the formulation of a plan of reorganization.

8        The Debtors seek Court approval to retain the Firm, effective as of the Petition Date, at the

9    expense of the Debtors' estates, to provide the legal services that will be required to prosecute these

10    Cases. The Debtors desire to retain the Firm because of its particular expertise in the areas of

11    insolvency, business reorganization, and other debtor/creditor matters. The Firm has served as

12    general bankruptcy counsel to debtors in a great number of chapter 11 cases and to a wide range of

13    debtors in various industries. In addition, the Firm has served as counsel to unsecured creditors'

14    committees in numerous chapter 11 cases. The Firm also has extensive experience in representing

15    individual creditors, special interest committees, asset purchasers, and investors in both in and out of

16    court restructurings. A copy of the resume of the Firm's attorneys expected to provide services in

17    this matter is attached hereto as Exhibit B. The Firm's depth of experience in bankruptcy makes it

18    particularly qualified to represent the Debtors. The Firm is also general bankruptcy counsel to

19    homebuilders in the following chapter 11 cases: *In re Empire Land, LLC, et al.*, 6:08-14592

20    (MJ)(Central District of California); *In re WL Homes LLC, et al.*, DE 09-10571 (BLS); *In re*

21    *Dunmore Homes*, CA 08-20569 (TH); and *In re Woodside Homes*, TN 08-07254 (GP); and

22    bankruptcy counsel to the unsecured creditors' committee in *In re Landsource Communities*

23    *Development*, DE 08-11111 (KJC). Accordingly, the Firm has extensive experience in the Debtors'

24    business area. In preparing for its representation of the Debtors in these Cases, the Firm has become

25    familiar with the Debtors' business and affairs and many of the potential legal issues which may

26    arise in the context of these Cases. Therefore, the Debtors believe that the Firm's retention is in the

27    best interest of the estates.

28    . . .

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Firm's services for the Debtors are necessary to enable the Debtors to execute duties as debtors in possession, including maximizing value to their creditors. Subject to further order of this Court, and without being exclusive, the Firm proposes to render the following types of legal services to the Debtors:

a.    Advise the Debtors on the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and the requirements of the United States Trustee pertaining to the administration of the Debtors' estates;

b.    Prepare motions, applications, answers, orders, memoranda, reports, and papers, etc., in connection with the administration of the estates;

c.    Protect and preserve the estates by prosecuting and defending actions commenced by or against the Debtors and analyzing, and preparing necessary objections to, proofs of claim filed against the estates;

d.    Advise and represent the Debtors in connection with investigation of potential causes of action against persons or entities, including, but not limited to, avoidance actions, and the litigation thereof if warranted;

e.    Represent the Debtors in any proceeding or hearing in the Bankruptcy Court, and in any action in other courts where the rights of the estates may be litigated or affected;

f.    Prepare and pursue confirmation of a plan and approval of a disclosure statement; and

g.    Render such other advice and services as the Debtors may require in connection with these Cases.

PSZ&J has received advance payments from the Debtors during the year prior to the Petition Date in the amount of $1,149,893, including the Debtors' aggregate filing fees for these Cases, in connection with its prepetition representation of the Debtors (the "Advance Payment Retainer"). PSZ&J is current as of the Petition Date and $925,719 remains under the Advance Payment Retainer as of the Petition Date. The Advance Payment Retainer is not a fixed price for counsel's services, and the Firm reserves the right to seek additional compensation beyond the amounts covered by the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Advance Payment Retainer in accordance with applicable provisions of the Bankruptcy Code and

2    Bankruptcy Rules.

3         Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local

4    Bankruptcy Rules, the United States Trustee Guidelines, and this Court's rules, the Debtors propose

5    to pay the Firm its customary hourly rates in effect from time to time and to reimburse the Firm

6    according to its customary reimbursement policies.    The attorneys currently expected to be

7    principally responsible for the Cases, and their respective hourly rates effective as of March 1, 2009,

8    are as follows:  James I. Stang ($795), Shirley S. Cho ($595) and Werner Disse ($495). The hourly

9    rate for Michael Matteo, the paralegal assigned to the Cases, is $195. A copy of the backgrounds of

10   the Firm's attorneys currently assigned to the Cases is attached to this Application as Exhibit B.

11   Other attorneys and paralegals may from time to time serve the Debtors in connection with the

12   matters herein described.

13        The hourly rates set forth above are PSZ&J's standard hourly rates for work of this nature.

14   These rates are set at a level designed to fairly compensate PSZ&J for the work of its attorneys and

15   paralegals and to cover fixed and routine overhead expenses.  It is PSZ&J's policy to charge its

16   clients in all areas of practice for all other expenses incurred in connection with the client's case.

17   The expenses charged to clients include, among other things, conference call and telecopier toll and

18   other charges, mail and express mail charges, special or hand delivery charges, document retrieval,

19   photocopying charges, charges for mailing supplies (including, without limitation, envelopes and

20   labels) provided by PSZ&J to outside copying services for use in mass mailings, travel expenses,

21   expenses for "working meals," computerized research, transcription costs, as well as non-ordinary

22   overhead expenses such as secretarial and other overtime. PSZ&J will charge the Debtors for these

23   expenses in a manner and at rates consistent with charges made generally to PSZ&J's other clients.

24   PSZ&J believes that it is fairer to charge these expenses to the clients incurring them than to increase

25   the hourly rates and spread the expenses among all clients.

26        It is contemplated that the Firm will seek interim compensation during the Cases as permitted

27   by sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016.  The Firm understands

28   that its compensation in the Cases is subject to the prior approval of this Court.  No compensation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  will be paid except upon application to and approval by this Court after notice and a hearing in
2  accordance with sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016.

3      The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the
4  Local Rules and further orders of this Court, propose to pay PSZ&J its customary hourly rates for
5  services rendered that are in effect from time to time, as set forth in the Stang Declaration, and to
6  reimburse PSZ&J according to its customary reimbursement policies, and submit that such rates are
7  reasonable.

8      There are no arrangements between the Firm and any other entity for the sharing of
9  compensation received or to be received in connection with the Cases, except insofar as such
10  compensation may be shared among the partners, of counsel, and associates of the Firm.

11      To the best of the Debtors' knowledge, except as otherwise disclosed in the Stang
12  Declaration submitted concurrently herewith, PSZ&J has not represented the Debtors, their creditors,
13  equity security holders, or any other parties in interest, or their respective attorneys, in any matter
14  relating to the Debtors or their estates.

15      To the best of the Debtors' knowledge and based upon the Stang Declaration, neither the
16  Firm nor any of its partners, of counsel, or associates is a creditor, equity security holder, or an
17  "insider" of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.

18      To the best of the Debtors' knowledge and based upon the Stang Declaration, neither the
19  Firm nor any of its partners, of counsel, or associates is or was, within two years before the date of
20  the filing of the petition, a director, officer, or employee of the Debtors.

21      To the best of the Debtors' knowledge and based upon the Stang Declaration, neither the
22  Firm nor any of its partners, of counsel, or associates has any interest materially adverse to the
23  interest of the estates or of any class of creditors or equity security holders, by reason of any direct or
24  indirect relationship to, connection with, or interest in, the Debtors or for any other reason.
25  Accordingly, the Firm and its partners, of counsel, and associates are "disinterested persons" as that
26  term is defined and used in sections 101(14) and 327 of the Bankruptcy Code.

27  . . .
28  . . .

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    **WHEREFORE**, the Debtors request that this Court approve the employment of Pachulski

2    Stang Ziehl & Jones LLP as general bankruptcy counsel, as of the commencement of the Cases, to

3    render services as described above, with compensation to be paid by the Estates as an administrative

4    expense in such amounts as this Court may hereafter determine and allow.

5    Dated: April 10, 2009

6

7    By _____
                         James M. Rhodes
                         Chief Executive Officer

8

9    Dated:    April 10, 2009          LARSON & STEPHENS

10                                     /s/Zachariah Larson
                                       Zachariah Larson, Esq. (NV Bar No. 7787)
11                                     810 S. Casino Center Blvd., Ste. 104
                                       Las Vegas, Nevada  89101
12
                                       [Proposed] Counsel for Debtors and
13                                     Debtors in Possession

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**RHODES HOMES**
**RETENTION AGREEMENT**

This Agreement sets forth the terms of the retention of Pachulski Stang Ziehl & Jones LLP (the "Firm") to represent and advise the other undersigned party or parties set forth on Exhibit "A" (hereinafter referred to as the "Client").

A.  General Nature of the Legal Services to be Provided to the Client.

The Firm is to represent  and advise the Client with particular respect to the financial relationships, rights, and remedies of Client and in contemplation of a consensual financial reorganization or the filing under a chapter of the Bankruptcy Code by Client. Subject to payment of any retainers identified below, the Firm accepts its proposed employment and agrees to take such steps as are reasonably advisable to achieve Client's goals consistent with this agreement.  Client acknowledges that the Firm has made no guarantee or promise regarding the results of the Firm's representation of Client and all expressions relative thereto are the Firm's opinions only.

In the event the Client elects to become a debtor in a case under chapter 11 and the Court approves the Firm's employment, it is contemplated that, unless otherwise agreed, the Firm would serve as general bankruptcy counsel therein, would represent and appear for the Client concerning all matters concerning the administration of the case, would represent and appear for the Client with respect to motions to assume, assign or reject leases and other executory contracts, and would consult with the Client concerning the bankruptcy issues with respect to specific lawsuits, adversary proceedings or contested matters in the case, including contested objections to claims, disputes over the amounts owed in respect to executory contracts or leases and the obligations thereunder, and proceedings in which the Client is seeking the recovery of damages or avoidance of transfers.  The Firm is not hereby agreeing to represent, appear for, or consult the Client in respect to other legal proceedings, cases, or matters other than as expressly set forth above, although the Firm may elect to do so hereunder if requested by the Client. By example only, the Firm will not provide advice or representation regarding matters of taxation, labor, securities, ERISA, probate/estate planning, criminal, or other non-bankruptcy or non-debtor/creditor specialties of the law.  Client has informed the Firm that tax considerations are a material factor in consideration of reorganization strategies and Client acknowledges that the Firm will not provide tax advice that underlies those considerations.

The Client acknowledges that it did not first contact the Firm to discuss the facts concerning this matter until December 3, 2008 and did not engage the Firm before December 12, 2008.  The Firm shall bill Client for services commencing December 13, 2008.

B.  Respective Responsibilities of the Firm and the Client.

The respective responsibilities of the Firm and the Client are described throughout this Agreement.  The primary responsibility of the Firm shall be to represent the Client as set forth above.  The primary responsibilities of the Client shall be to cooperate with the Firm in its efforts to represent the Client and to pay the Firm as set forth below.  Cooperation of the Client shall include, without limitation, Client's attendance at meetings and hearings and Client's provision of information or declarations, as required or reasonable requested in connection with the Firm's representation of the Client.

C.  Applicable Fees and Charges.

The fees and expenses of the Firm are not set by law, but are negotiable between the Client and the Firm.  Thus, this written Agreement shall bind the parties, subject to the law.

The Firm will bill the Client, typically monthly, for fees (calculated by multiplying billing rates by hours) and for expenses.  The Client is to pay such bills upon receipt and, if the Client does so, the Firm

73203-001\DOCS_LA:193944.2                              1

would not intend to seek legal entitlement to anything more. In the event of late or non-payment, the Firm has reserved the right to charge interest at the lower of 10% per annum or the maximum nonusurious rate which could be charged under applicable law, as well as to resign, subject to court approval where necessary. If at any time the Client asks the Firm to discontinue its work for the Client, the Firm will do so and provide the Client with a final billing as rapidly as possible.

The Firm's current hourly rates for personnel are as reflected on the attached exhibit; however, Richard M. Pachulski's hourly rate will be $815. Hourly rates will not be increased during the course of the representation. Attorney hourly rates vary depending upon the age, experience and specialized skills of the attorney involved. Travel time will be charged at ½ of the stated hourly rates. The attached exhibit also reflects current charges for in-house photocopying, mileage, word processing, secretarial overtime, and facsimile transmissions. The Firm's other costs, such as filing fees, outside photocopy charges, overnight mail expense, messenger charges, postage charges, telephone charges, legal research and travel expenses (other than parking and mileage), will be passed through to the Client at cost, provided that flat fee or other collective charges by third parties may be fairly allocated by the Firm among billable clients. Notwithstanding the foregoing, the Firm will not charge for secretarial overtime unless necessitated by circumstances caused by the Client.

The time for which Client will be billed includes not only time spent directly on research or the preparation and review of documents or at court or other hearings, but also travel time and time spent in conference (in telephone or in person) with representatives of the Client or others in respect to the matter of representation.

If, as a result of the Firm's involvement with or representation of the Client, the Firm incurs expenses or its personnel spend time relating to any formal or informal production of documents, any written or oral discovery, an arbitration, a court or administrative proceeding, or any interview of or consultation with personnel of the Firm, Client also shall be liable to, and will be billed by, the Firm for expenses incurred and time spent at the regular hourly rates then in effect for involved Firm personnel. Such obligation shall accrue even if such expenses are incurred or time spent after the termination of the Firm's employment by Client unless incurred or spent as part of a successful suit or action by Client against the Firm.

The personnel assigned by the Firm to this matter may confer among themselves about the matter, as required. When they do confer, each person will charge for the time expended. Likewise, when more than one of the Firm's personnel attends a meeting or other proceeding, each will charge the time spent. The Firm will charge for waiting time and for travel time, both local and out of town.

The Firm contemplates, understands, and accepts that in the event the Client becomes a debtor in a proceeding under chapter 11 that is not dismissed, the obligation of the Client to pay the fees and expenses of the Firm accruing during the chapter 11 would be subject to court approval. In the event of the Client becoming a debtor in a bankruptcy or reorganization proceeding, if the Firm agrees to represent the Client in connection therewith, the Client agrees to timely execute such documents as the Firm may reasonably request for court approval of the Firm's employment on the terms set forth herein.

If reimbursement of legal or other expenses are sought from an opposing party, Client acknowledges that the denial of such request or the amount awarded shall not limit the compensation to which the Firm is entitled hereunder.

D.  Client's Limited Waiver of Any Confidentiality of this Retention Agreement and of the Firm's Time and Expense Records.

To the extent that the Firm's ability to be employed or compensated requires it to permit a court or arbitrator to review this Agreement or its time and expenses records, the Client agrees that, in addition to any other disclosures of confidences or secrets permitted with the Client's consent, the Firm may file with the court or arbitrator and serve on appropriate parties copies of this Agreement and its time and expense records and may provide a narrative description of its services.  In connection therewith, the Firm will endeavor, in good faith, to avoid unnecessary disclosures.

E.  Retainer and Security Interest.

In order to represent the Client, the Firm has required a retainer in the amount of $50,000.00.

When the Firm bills the Client, however, the Client will be obligated to immediately remit the full amount of the bill and the Firm shall not be required to apply the retainer against the bill.  Thus, throughout the representation the Firm would be expected to hold the amount of the retainer as set forth above.  (Nonetheless, the Firm may in its sole and unfettered discretion apply the retainer against billed costs and services and upon billing by the Firm, the Client is hereby authorizing the Firm to pay itself for billed costs or services from a retainer in a client trust account by drawing down against the account after providing Client with a copy of the bill.)  This "evergreen" retainer is intended to provide the Firm a "cushion" against future defaults by the Client (including, without limitation, for any otherwise unpaid legal fees or expenses that may be incurred in the event the Client becomes a debtor in a case under chapter 7 of the Bankruptcy Code).  After 60 days from the date the Firm's representation of the Client has terminated, the Firm will refund to the Client the retainer amount minus the amount of unpaid costs and services.  (If the amount of unpaid costs and services is the same or more than the retainer amount, nothing would be refunded.)

Upon billing by the Firm, the Client is hereby authorizing the Firm to pay itself for billed costs or services from a retainer in a client trust account by drawing down against the account.

Still, even when the Firm's representation of the Client has terminated, the Firm may withhold and not refund such portion of its remaining retainer as corresponds to the amount of estimated costs incurred and services rendered, but not yet billed.  Also, when the Firm's representation of the Client has terminated, if the Firm believes in good faith that payments it received for costs and services may be subject to a claim for defeasance or avoidance, the Firm may withhold such amounts until it believes, in good faith, that the risk has been eliminated.  Further, the Firm may apply or credit against the withheld portion of the retainer the amount of payments actually avoided or recovered.

TO SECURE ALL OF CLIENT'S OBLIGATIONS TO THE FIRM ARISING NOW OR IN THE FUTURE, CLIENT HEREBY GRANTS THE FIRM A SECURITY INTEREST AND LIEN IN: (1) THE RETAINER AND ANY OTHER AMOUNTS PROVIDED TO THE FIRM IN RESPECT OF FEES OR COSTS; AND (2) EXCEPT TO THE EXTENT THAT SUCH GRANT VIOLATES ANY OF THE CLIENT'S LOAN AGREEMENTS, ANY CLIENT'S PROPERTY OR PROCEEDS (WHICH WOULD INCLUDE ANY FORM OF RECOVERY) RESULTING FROM PROCEEDINGS OR SETTLEMENTS IN CONNECTION WITH WHICH THE FIRM REPRESENTS OR REPRESENTED THE CLIENT.  ALTHOUGH THE FIRM BELIEVES THIS SECURITY INTEREST AND LIEN TO BE AUTOMATICALLY PERFECTED, CLIENT AGREES PROMPTLY TO PROCURE OR EXECUTE AND DELIVER OR FILE ANY DOCUMENT, INCLUDING WITHOUT LIMITATION A FINANCING STATEMENT, GIVE ANY NOTICES, AND TAKE ANY OTHER ACTIONS THAT THE FIRM REASONABLY REQUESTS TO PERFECT OR CONTINUE THE PERFECTION AND PRIORITY OF THE FIRM'S SECURITY INTEREST OR LIEN.

CLIENT'S GRANTING TO THE FIRM OF A SECURITY INTEREST AND LIEN MAY RESULT IN THE ASSETS SUBJECT TO THE SECURITY INTEREST OR LIEN NO LONGER BEING AVAILABLE TO THE CLIENT.  SUCH ASSETS MAY BE, BY EXAMPLE, FORECLOSED UPON OR TAKEN BY THE FIRM TO APPLY TOWARD ANY UNSATISFIED OBLIGATIONS OF CLIENT UNDER THIS AGREEMENT.  BECAUSE THE GRANTING OF A LIEN OR SECURITY INTEREST CAN

<u>ADVERSELY AFFECT CLIENT, THE FIRM STRONGLY SUGGESTS THAT THE CLIENT SEEK INDEPENDENT COUNSEL TO ADVISE IT CONCERNING THIS AGREEMENT.</u>

The Firm contemplates that it may require an additional retainer if the matter involves more time and expense than presently estimated or if the Firm were asked to accept additional representations for the Client. The Firm might consider, in determining whether to accept any additional representation, the extent of its then outstanding unpaid fees and expenses or the ability of the Client to pay the additional fees and expenses expected to be incurred.

The Firm contemplates that it will require an additional retainer were it asked to represent or appear for the Client in a reorganization case or in any other legal proceeding. The Firm might consider, in determining whether to accept any additional representation, the extent of its then outstanding unpaid fees and expenses or the ability of the Client to pay the additional fees and expenses expected to be incurred.

F.  <u>Conclusion of Services; Termination of Representation Prior To Conclusion of Matters For Which Employed.</u>

The Client may discharge the Firm at any time. The Firm may withdraw as the Client's counsel with the Client's consent or for good cause. Good cause includes the Client's breach of this Agreement, the Client's refusal to cooperate with the Firm or to follow the Firm's advice on a material matter or any fact or circumstance that would render the Firm's continuing representation unlawful or unethical. In any event, the Firm may withdraw from representation of the Client upon the Firm's determination of the existence of a conflict of interest.

When the Firm's services conclude, all unpaid charges will immediately become due and payable. After the Firm's services conclude, the Firm will, upon the Client's request, deliver to the Client, subject to the terms of any protective order or non-disclosure agreement, a copy of files, documents and electronic records (including email messages) related to this matter, including the firm's administrative, conflict of interest and billing records and any original documents which have a legal effect, such as deeds or promissory notes (collectively, "Client Files"), along with any funds or property of the Client in the Firm's possession. If the Client so requests from the Firm, or at any time requests, a copy or the original of its Client Files or any portion thereof, the Firm may charge Client for a copy thereof and such fee shall constitute part of the payment due to the Firm hereunder for services already rendered. The Client agrees that the Firm may retain either such copy. Whether or not the Client obtains a set of the Client Files, Client Files retained by the Firm after its services conclude may be destroyed by the Firm after a reasonable period of time, which reasonable period shall be deemed to be no longer than eighteen (18) months from the time services conclude. While the foregoing sets forth the Firm's obligations, please note that the Firm presently has a records retention policy pursuant to which the Firm actually will endeavor to retain for a period of five years from the date services conclude Client Files that are not transferred to Client and are no longer needed for legal and/or business purposes, pursuant to which the Firm may absorb certain of the copy charges incurred to permit the Firm's retention of a copy of the Client File, and pursuant to which such Client Files would be destroyed after the 5-year period. Although the Firm presently has such a policy, and, as a courtesy, may endeavor to reiterate this policy at the time services conclude, failure to adhere to the policy or give subsequent notice thereof to Client shall not alter, extend or expand the obligations to Client hereunder with respect to Client Files.

G. Permission to Represent Adverse Parties In Allowed Adverse Representations.

Client acknowledges that the Firm has represented, now represents, and will continue to represent numerous clients (which may include, without limitation, Client's or its affiliates' debtors, creditors, and direct competitors) over a wide range of industries and businesses and in a wide variety of matters. Given this, without a binding conflicts waiver, conflicts of interest might arise that could deprive Client or other clients of the right to select the Firm as their counsel. Thus, as an integral part of the engagement, Client agrees that the Firm may, now or in the future, represent other entities or persons, including in litigation, adversely to Client or any affiliate on matters that are not substantially related to (a) the legal services that the Firm has rendered, is rendering, or in the future will render to Client under the engagement and (b) other legal services that the Firm has rendered, is rendering, or in the future will render to Client or any affiliate (an "Allowed Adverse Representation"). Client also agrees that it will not, for itself or any other entity or person, assert that either (a) the Firm's representation of Client or any affiliate in any past, present, or future matter or (b) the Firm's actual, or possible, possession of confidential information belonging to Client or any affiliate is a basis to disqualify the Firm from representing another entity or person in any Allowed Adverse Representation. Client further agrees that any Allowed Adverse Representation does not breach any duty that the Firm owes to Client or any affiliate, including the Firm's duty of loyalty to Client. Client also agrees that an Allowed Adverse Representation will not undermine or impair the relationship between the Client and the Firm with respect to the Firm's representation of Client.

H. Arbitration.

CLIENT MAY BE ENTITLED TO ARBITRATE CERTAIN MATTERS PURSUANT TO CHAPTER 4, ARTICLE 13 OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE. OTHERWISE, IF ANY DISPUTE ARISES OUT OF, OR RELATES TO, A CLAIMED BREACH OF THIS AGREEMENT, THE PROFESSIONAL SERVICES RENDERED BY THE FIRM, OR CLIENT'S FAILURE TO PAY FEES FOR PROFESSIONAL SERVICES AND OTHER EXPENSES SPECIFIED, OR ANY OTHER DISAGREEMENT OF ANY NATURE, TYPE OR DESCRIPTION REGARDLESS OF THE FACTS OR THE LEGAL THEORIES WHICH MAY BE INVOLVED, SUCH DISPUTE SHALL BE RESOLVED BY ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION BY A SINGLE ARBITRATOR IN ACCORDANCE WITH THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION IN EFFECT AT THE TIME THE PROCEEDING IS INITIATED. THE HEARINGS SHALL BE HELD IN THE LOS ANGELES OFFICES OF THE AMERICAN ARBITRATION ASSOCIATION AND EACH SIDE SHALL BEAR HIS/HER/ITS OWN COSTS AND ATTORNEY FEES. UNDER THIS PROVISION, CLIENT WOULD NOT HAVE THE RIGHT TO, AND IS WAIVING ANY RIGHT TO, A JURY TRIAL IN RESPECT TO A MALPRACTICE CLAIM AGAINST THE FIRM. IF THE CLIENT OR FIRM OPPOSE ARBITRATION BASED ON CAL. CIV. PROC. CODE §1281.2(c) OR ANY LAW OF SIMILAR SUBSTANCE OR EFFECT (i.e., BASED ON THE PENDENCY OF A PROCEEDING INVOLVING A THIRD PARTY THAT COULD RESULT IN CONFLICTING RULING), THE PARTY OPPOSING ARBITRATION HEREUNDER SHALL BE DEEMED TO CONSENT TO A JOINT ARBITRATION HEREUNDER OF SUCH OTHER DISPUTE.

[THE FIRM OFTEN REPRESENTS CONSTITUENCIES IN BANKRUPTCY AND IN MANY OF THOSE CASES ITS FEES AND EXPENSES AND THEIR PAYMENT ARE SUBJECT TO COURT APPROVAL. IN SUCH CASES, THE FIRM'S ENTITLEMENT TO FEES OR EXPENSES, DETERMINATION OF THEIR AMOUNT, AND COMPULSION OR PERMISSION FOR THEIR PAYMENT SHALL NOT BE SUBJECT TO ARBITRATION TO THE EXTENT THAT THE COURT WITH JURISDICTION OVER THE BANKRUPTCY CASE IS AN AVAILABLE FORUM IN WHICH TO RESOLVE SUCH ISSUES.]

I. Miscellaneous Matters.

The Firm is being engaged by the Client, being the entities for which appear in Exhibit "A" (other than the signature block for the Firm). Unless reflected by a separate agreement, the Firm's employment

73203-001\DOCS_LA:193944.2                    5

JR

of the Client does not include the representation of others, including individual officers, directors, partners, shareholders or employees of the Client. The Firm shall take instructions from Jim Rhodes in his managerial capacities for such entities.

The Firm employs a number of attorneys and paralegals (legal assistants). Any of them or legal consultants employed by the Firm may perform services for the Client under this Agreement.

Several attorneys or members of the staff of the Firm have or may have spouses, parents, children, siblings, significant others or in-laws who are attorneys at other law firms and companies. Upon your request, the Firm will endeavor to obtain for you more specific information about the connections of the attorneys and staff members of the Firm. The Firm's staff members and attorneys are aware of the Firm's strict policy against disclosing confidential information to anyone outside the Firm, which would include disclosures to spouses, parents, children, siblings, significant others or in-laws. The Client acknowledges that relationships as described above do exist, but nonetheless does not consider the Firm's representation of the Client inappropriate.

The Firm maintains a policy that it does not provide opinion letters to its clients or to others who might wish to rely on such letters. If the Firm elects to vary from or alter this policy, it may require a further written agreement, as approved by the management of the Firm, which provides compensation to the Firm for the special risks attendant to the furnishing of such opinions.

The validity of this Agreement, its construction, interpretation, and enforcement, and the rights of the parties hereto shall be determined under, governed by, and construed in accordance with the internal laws of the State of California, without regard to principles of conflicts of law.

This Agreement may be executed by the signatories through use of multiple copies of the signature pages.

Client acknowledges having received a signed duplicate copy hereof for Client to keep for its own records.

CLIENT SHOULD SEEK INDEPENDENT COUNSEL TO ADVISE IT CONCERNING THIS AGREEMENT.

Dated:  December 19, 2008

PACHULSKI STANG ZIEHL & JONES LLP          Rhodes Homes

By:_____          By:_____
     James I. Stang                              Jim Rhodes
     A Member and Principal

Rhodes Homes

**Exhibit A**

Rhodes Companies, LLC "D"

Heritage Land Company, LLC "R"

Tick, LP "R" (Parcel 17)

Glynda, LP "R" (Parcel 20)

Chalkline, LP "R" (Vistana II/Jarupa)

Batcave, LP (Freeway Property)

Jackknife, LP "R" (Commercial Parcels 12, 33, 43)

Wallboard, LP "R" (2 Tavern Sites)

Overflow, LP "R" (Spanish Hills 5B)

Rhodes Ranch GP "R" (Parcels 8, 10, 11, 12, 14)

Rhodes Ranch Golf and Country Club "D"

Tuscany Acquisitions, LLC

Tuscany Acquisitions II, LLC

Tuscany Acquisitions III, LLC

Tuscany Acquisitions IV, LLC

Parcel 20, LLC

Rhodes Design and Development Corp. (S-Corp.) "D"

C&J Holdings, Inc. "D"

Rhodes Realty, Inc. "D"

Janupa, LLC "D"

Elkhorn Investments, Inc. "D"

Tuscany Golf Country Club, LLC "D"

Rhodes Homes Arizona, LLC "D"

Rhodes Arizona Properties, LLC "D"

Tribes Holdings, LLC "D"

Six Feathers, LLC "D"

Elkhorn Partners, LP

Pinnacle Grading, LLP "D"

Bravo, Inc. "D"

Gung-Ho Concrete, LLC "D"

Geronimo Plumbing, LLC "D"

Arapahoe Cleaning, LLC "D"

Apache Framing, LLC

# EXHIBIT B

## BIOGRAPHICAL SKETCHES OF ATTORNEYS OF
## PACHULSKI, STANG, ZIEHL & JONES, LLC

### ATTORNEYS

### JAMES I. STANG

Mr. Stang, a founding partner of the firm, has broad experience in bankruptcy reorganization and has acted as a chapter 11 trustee and receiver in numerous cases. Mr. Stang has lectured and written extensively on both bankruptcy and receivership issues. He is a graduate of UC Berkeley and received his J.D. from Hastings College of Law, where he was editor in chief of *Hastings International and Comparative Law Review*. He holds an AV Peer Rating, Martindale-Hubbell's highest peer recognition for ethical standards and legal ability. Mr. Stang is admitted to practice in California, and is a resident in our Los Angeles office.

**Professional Affiliations**

Member, Los Angeles Bankruptcy Forum Board of Directors and Executive Committee.

**Publications**

"Assumption of Contracts and Leases: The Obstacle of the Historical Default," *24 California Bankruptcy Journal* 39 (1998).

**Representations**

Subcommittee of employee organizations in Orange County chapter 9 case.

Chapter 11 debtors in Gateway Educational Products, manufacturer of "Hooked on Phonics"; American Tissue; Chippendales; Inacom Corporation, Lau Capital Funding; Sizzler Restaurants International; Superior Telecommunications.

Tort litigants' committee in the Spokane, Washington and Davenport, Iowa Catholic Diocese chapter 11 cases; creditors' committee in Roman Catholic Bishop of San Diego chapter 11 case.

Creditors' committee in Tom's Foods, Inc.

Bankruptcy counsel for the Tobacco Committee of the National Association of Attorneys General.

**News**

Pachulski Stang Selected as Committee Counsel in Jesuit Chapter 11

Twelve Southern California Super Lawyers

Nine Southern California Super Lawyers at Pachulski

How Plaintiffs Attorneys Successfully Challenged the San Diego Diocese

Bankruptcy Judge Rules on Ownership of Property in Catholic Diocese Bankruptcy Case

**Events**

2005 NAPEO Legal & Legislative Conference

17th Annual California Bankruptcy Forum Conference

## BIOGRAPHICAL SKETCHES OF ATTORNEYS OF
## PACHULSKI, STANG, ZIEHL & JONES, LLC

## ATTORNEYS

### SHIRLEY S. CHO

Ms. Cho specializes in representing companies in financial distress; secured and unsecured creditors; bondholders; and purchasers of assets, including stalking-horse bidders, in chapter 11 proceedings as well as out-of-court negotiations.

Ms. Cho has represented some of the largest companies in America in connection with their corporate restructuring efforts in industries including manufacturing, wholesale distribution, mortgage, finance, and healthcare, and has counseled companies dealing with mass tort liabilities. She is a graduate of UC Berkeley and received her J.D. from Hastings College of the Law. Ms. Cho is a member of the California and New York bars, and a resident of our Los Angeles office.

**Professional Affiliations**

Board Member, Asian Pacific American Legal Center.

**Publications**

"The Intersection of Critical Vendor Orders and Bankruptcy Code Section 503(b)(9)," 29 *California Bankruptcy Journal* 1 (2007).

"The Southern District of New York Adds Its Two Cents to the *Catapult* Debate," 4 *ABI Technology & Telecommunications Committee Newsletter* (No. 2 June 2007).

"A Closer Look at Critical Trade; Exclusivity; and Dismissal/Conversion," published in materials for American Bar Association Annual Meeting (2006).

"The Danger Zone: Fiduciary Duty Issues Impacting Directors and Officers in the Zone of Insolvency and Beyond," published in materials for Strategies for Distressed Companies Conference (CLE Int'l Nov. 2001).

"What To Do When Your Payor Goes Under," published in materials for American Hospitals & Health Systems Law Institute Conference (2000).

"Continuing Economic Reform in the People's Republic of China: Bankruptcy Legislation Leads the Way," 19 *Hastings International & Comparative Law Review* 739 (1996).

Coauthor, "*Clear Channel* Muddies the Waters of Section 363(m) Mootness Protection," 22 *Bankruptcy Strategist* 1 (No. 2 Dec. 2008).

Coauthor, "U.S.-Canadian Cross-Border Insolvencies -- A Survey of Recent Ancillary Proceedings," published in materials for Canadian-American Symposium on Cross-Border Insolvency Law (ABI Feb. 2005).

Coauthor, "A Model for Canadian Cross-Border Insolvency: *Core-Mark International, Inc.*," 22 *Bankruptcy Strategist* 1 (No. 6 Apr. 2005).

Coauthor, "The Zone of Insolvency: When Has a Company Entered Into It and, Once There, What Are the Board's Duties?" published in materials for Bankruptcy 2002: Views From the Bench (ABI 2002).

## BIOGRAPHICAL SKETCHES OF ATTORNEYS OF
## PACHULSKI, STANG, ZIEHL & JONES, LLC

## ATTORNEYS

**Representations**

Asset purchasers in chapter 11 cases: Delphi; New Century Financial Corporation.

Chapter 11 debtors in asset sales: Conseco Finance Corp; Fleming Companies; W.R. Grace & Co.; Pryor Resources.

Secured and unsecured creditors in chapter 11 cases: New Century Financial Corporation; Verifone; KPC Global Care; Rampage Retailing; Sterling Healthcare; SunHealthcare; Tri-Union; Total Tires; Charger, Inc.; Diet of Workshop of Boston; Answer Financial.

## BIOGRAPHICAL SKETCHES OF ATTORNEYS OF
## PACHULSKI, STANG, ZIEHL & JONES, LLC

### ATTORNEYS

### WERNER DISSE

Mr. Disse has extensive experience representing debtors, committees and examiners in chapter 11 cases. Successfully reorganized clients include Breed Technologies, Fleming Companies, Smith & Sons Enterprises, Peregrine Systems, numerous real estate partnerships and Zsa Zsa Gabor. He is a graduate of Stanford University, Oxford University's law school, where he was a Rhodes Scholar, and Stanford Business School, where he earned his MBA. Mr. Disse is a member of the bars of California and New York (inactive).