| | |
|---|---|
| BRETT A. AXELROD, ESQ.<br>Nevada Bar No. 5859<br>GREENBERG TRAURIG, LLP<br>3773 Howard Hughes Pkwy, Suite 400 North<br>Las Vegas, Nevada 89169<br>Telephone: (702) 792-3773<br>Facsimile: (702) 792-9002<br>Email: axelrodb@gtlaw.com<br>           loraditcha@gtlaw.com<br>*Counsel for Sagebrush Enterprises, Inc. and James Rhodes* | Electronically Filed April 14, 2009 |

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>THE RHODES COMPANIES, LLC.,<br>a Nevada limited liability company, et al.,[1]<br><br>                    Debtors.<br><br>Affects:<br>☒ All Debtors<br>☐ Affects the following Debtor(s): | Case No. BK-S-09-14814-LBR, *et. seq.*<br><br>(Jointly Administered Under BK-S-09-14814)<br><br>Chapter 11<br><br>**MOTION TO STRIKE INADMISSIBLE HEARSAY IN OBJECTION OF THE FIRST LIEN STEERING COMMITTEE TO THE DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO THE DEBTORS' PREPETITION SECURED PARTIES AND (C) SCHEDULING A FINAL HEARING**<br><br>Hearing Date:    April 17, 2009<br>Hearing Time:    9:30 a.m. |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, a Nevada Limited Partnership (9654); Bravo, Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

James Rhodes ("Rhodes") hereby submits this motion (the "Motion") to strike portions of the Objection of the First Lien Steering Committee to the Debtors' Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to the Debtors' Prepetition Secured Parties and (C) Scheduling a Final Hearing (the "Objection") as inadmissible hearsay. This Motion is made and based upon Federal Rules of Evidence ("FRE") 602, 801, 803, and 804, the points and authorities attached hereto, the Declaration of Brett Axelrod (the "Axelrod Declaration"), the papers and pleadings on file in the above-captioned bankruptcy cases and any oral arguments the Court may entertain at the hearing on the Motion at the date and time noted above.

DATED this 14th day of April 2009.

**GREENBERG TRAURIG, LLP**

By_____/s/ Brett Axelrod_____
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
ANNE M. LORADITCH, ESQ.
Nevada Bar No. 8164
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773

*Counsel for Sagebrush Enterprises, Inc.
and James Rhodes*

# MEMORANDUM OF LAW
# POINTS AND AUTHORITIES

## I.
## FACTUAL BACKGROUND

1. On or around April 7, 2009, the First Lien Steering Committee filed a Motion on Shortened Notice of the First Lien Steering Committee for an Order Directing the Appointment of a Trustee Pursuant to 11 U.S.C. § 1104(A) or, in the Alternative, Dismissing the Debtors' Chapter 11 Cases Pursuant to 11 U.S.C. § 1112(b) [Docket No. 85][2] (the "Trustee Motion"), which contained numerous inflammatory and derogatory statements about Mr. Rhodes and members of his immediate family levelling serious charges including, among other things, "fraud, mismanagement and misappropriation of the Debtors' assets" based upon an unsigned, unsubstantiated report (the "Alix Report") purportedly prepared by Alix Partners at the request of Credit Suisse, Cayman Islands Branch ("Agent") and containing statements attributable to three (3) anonymous individuals purported to have worked in Mr. Rhodes' organization; although it is unclear whether any of them worked for any of the Debtors since their identity is unknown. Trustee Motion, ¶ 5.

2. A hearing on the Trustee Motion was initially set for April 17, 2009, at 10:00 a.m. See ECF Notice of Hearing dated April 10, 2009 [Docket No. 120].

3. On or around April 7, 2009, the First Lien Steering Committee filed an Objection to the Debtors' Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to the Debtors' Prepetition Secured Parties and (C) Scheduling a Final Hearing [Docket No. 83] (the "Cash Collateral Motion"). The Objection was also made and based, at least in part, upon the Alix Report as well as unsubstantiated newspaper reports (the "Newspaper Reports"). Objection, ¶¶ 20-22.

4. A hearing on the Cash Collateral Motion is set for April 17, 2009, at 9:30 a.m. [Docket No. 119].

---

[2] All references to docket numbers herein refer to the document numbers on the docket for the case styled, Heritage Land Company, LLC, BK-S-09-14778-LBR, which was the *de facto* lead case in these proceedings prior to the entry of the Court's order for joint administration.

5. During and after the hearing held on April 8, 2009, at 3:00 p.m., counsel for the First Lien Steering Committee, counsel for the Debtors, counsel for the Second Lien Creditors, counsel for Credit Suisse and counsel for Rhodes agreed to conduct discovery with respect to the hearings set for April 17, 2009. Axelrod Declaration, ¶ 3.

6. Among other things, counsel for the Debtors and counsel for Rhodes demanded that the First Lien Steering Committee make the author of the Alix Report and the three anonymous employees available for deposition in order to explore the validity and the veracity of the allegations contained in the Trustee Motion prior to the hearings set for April 17, 2009. Axelrod Declaration, ¶ 4.

7. Sua sponte, upon information and belief, the First Lien Steering Committee subsequently decided to request postponement of the hearing on the Trustee Motion to April 28, 2009.[3] Axelrod Declaration, ¶ 5.

8. Counsel for the First Lien Steering Committee proposed the Stipulation to counsel for Rhodes that would postpone the hearing on the Trustee Motion. Counsel for Rhodes informed counsel for the First Lien Steering Committee that Rhodes would not agree to the Stipulation unless the First Lien Steering Committee agreed that it would not attempt to introduce evidence relative to the Alix Report or the Newspaper Reports at the hearings on matters set for April 17, including the Cash Collateral Motion. In the alternative, demand was made for the depositions of Alix Partners and the three anonymous employees to go forward prior to the April 17 hearing date.

9. On April 14, 2009, counsel for Rhodes received an email from counsel for the First Lien Committee stating that the First Lien Steering Committee did not intend to present testimony from Alix Partners in connection with the Cash Collateral Motion. When counsel for Rhodes requested clarification that the First Lien Steering Committee did not intend to present testimony or other evidence relative to the Alix Report or the anonymous employee statements contained in the Alix Report at other matters set for hearing on April 17 and also requested that include language to that

---

[3] Counsel for Rhodes received from counsel for the First Lien Steering Committee a draft Stipulated Order Continuing the Hearing on the First Lien Steering Committee's Motion for an Order Directing the Appointment of a Trustee Pursuant to 11 U.S.C. § 1104(A) or, in the alternative, Dismiss the Debtors' Chapter 11 Cases Pursuant to 11 U.S.C. § 1112(b) (the "Stipulation").

effect be included in the draft Stipulation, counsel for the First Lien Committee refused to do so thereby necessitating this Motion. Axelrod Declaration, ¶ 7; see Email dated April 14, 2009, from counsel for First Lien Committee to counsel for Rhodes attached as Exhibit A to the Axelrod Declaration and incorporated for all purposes herein by this reference.

## II.

## LEGAL ARGUMENT

The Federal Rules of Evidence prohibit the admission into evidence of out-of-court statements offered for the truth of the matter asserted. FRE 801(c). Rules 803[4] and 804[5] enumerate several exceptions to the hearsay rule. The party asserting the out-of-court statement for the truth of the matter asserted may avail itself of the exceptions set forth in Rule 803 only when the declarant is available to testify as a witness. Conversely, the exceptions found in Rule 804 apply only when the declarant is unavailable to testify.

Additionally, FRE 602 requires a showing sufficient to support a finding that the witness has personal knowledge of the matters asserted, based on what the witness saw, heard, or otherwise experienced through his or her own senses. FRE 602, Adv. Comm. Notes (1972). The witness must have first-hand knowledge acquired by directly perceiving the event that is the subject of his or her testimony. Latman v. Burdette, 366 F.3d 774, 787 (9th Cir. 2004) (citations omitted).

In the instant case, the Objection contains unsupported, unsubstantiated statements contained in the unsigned Alix Report that are anonymous and, as of the date of this Motion, cannot be attributed to any witness. Furthermore, the Objection relies on unsubstantiated Newspaper Reports for their truth in

---

[4] FRE 803 sets forth 23 exceptions to the hearsay rule, which include present sense impression, excited utterance, then existing mental, emotional, or physical condition, statements for purposes of medical diagnosis or treatment, recorded recollection, records of regularly conducted activity, absence of entry in records kept in accordance with the previous provision, public records and reports, records of vital statistics, absence of public record or entry, records of religious organizations, marriage, baptismal, and similar certificates, family records, records of documents affecting an interest in property, statements in documents affecting an interest in property, statements in ancient documents, market reports, commercial publications, learned treatises, reputation concerning personal or family history, reputation concerning boundaries or general history, reputation as to character, judgment of previous conviction, and judgment as to personal, family, or general history, or boundaries.

[5] FRE 804(b) describes statements that are not excluded by the hearsay rule, which include former testimony, statement under belief of impending death, statement against interest, statement of personal or family history, and forfeiture by wrongdoing.

an effort to smear Mr. Rhodes and cast him in the role of villain with the Court. Those portions of the Objection, paragraphs 20 through 22, inclusive, that refer to or rely upon the Alix Report and the Newspaper Reports should be stricken as impermissible hearsay.

### A. The Alix Report and the Anonymous Statements Contained in the Alix Report Should Be Stricken as Inadmissible Hearsay Within Hearsay.

"Hearsay contained within hearsay is not excluded under the hearsay prohibition as long as each layer of the hearsay fits into an exception to the general hearsay rule." FRE 805. see also McDowell Welding & Pipefitting, Inc. v. U.S. Gypsum Co., 285 B.R. 460, 467 (D. Or. 2002) (exhibits attached to affidavit, which included a *New York Times* article, were stricken as they constituted unauthenticated hearsay within hearsay); see also Mishler v. McNally, 102 Nev. 625, 628 (1986) (physician's statements contained in a report were hearsay within hearsay because the physician was not available for cross examination as to the basis of his opinions); In re New Breed Realty Enters., 278 B.R. 314, 323 (Bankr. E.D.N.Y. 2002) (affidavit of president of real estate agency, that repeated what unidentified person or persons in his office had been told by representative of village, was hearsay within hearsay, did not fall within any applicable exception to the hearsay rule, and was inadmissible in a motion hearing.)

The Ninth Circuit Court of Appeals excluded an accounting firm's audit report because the report was based, in part, on inadmissible hearsay. Paddock v. Dave Christensen, Inc., 745 F.2d 1254, 1260 (9th Cir. 1984). "The proponent of the summary of both admissible and inadmissible hearsay is entitled to admission of only those portions that he can demonstrate are entirely admissible." Id. (quoting United States v. Johnson, 594 F.2d 1253, 1255 (9th Cir. 1979)). In Paddock, the court excluded the entire report because the firm was unable to separate the admissible parts of the report from the inadmissible parts. See id. at 1260-61. The inadmissible hearsay contained in the report included statements from "information from union sources that indicate [an] employee [had] worked for the employer but was not reported [on the Employer's records]." Id. at 1259. The court stated that the "[u]nion sources, who were not subject to cross examination, fall within no exception to the hearsay rule. The use of the union sources to establish the existence of deficiencies, the truth of that which was asserted, implicates the traditional 'hearsay dangers.'" Id.

The facts in the case before the Court are almost identical to those in Paddock. The First Lien Steering Committee offered the anonymous statements by purportedly former employees contained in the Alix Report in support of the Objection to prove the truth of the matters asserted in those out-of-court statements. Because the individuals making these statements wish to remain anonymous, as stated in the Alix Report, they cannot be subject to proper cross examination by Mr. Rhodes. Furthermore, these anonymous statements do not fall within any of the exceptions to the hearsay rule identified above. Accordingly, these statements and the Alix Report itself implicate the traditional "hearsay dangers" and must be excluded from the Court's consideration of the Objection.

### B. The Newspaper Reports Referred to in the Objection Should Also be Stricken as Inadmissible Hearsay.

Generally, newspaper articles are inadmissible hearsay as to their content. See Larez v. City of Los Angeles, 946 F.2d 630, 642 (9th Cir. 1991). Newspaper reports attributing statements to unknown declarants have also been excluded as double hearsay, both as insufficiently trustworthy and less probative than "other evidence which the proponent [could] procure through reasonable efforts." U.S. Football League v. National Football League, 1986 WL 5803 (S.D.N.Y.); see also In re Fischer, 259 B.R. 23 (Bankr. E.D. N.Y. 2001) (newspaper article about a statement allegedly made by the debtor was inadmissible hearsay).

The Newspaper Reports referred to in the Objection are classic examples of inadmissible hearsay. The Objection merely refers to several unsubstantiated newspaper reports offered for the truth of the matters asserted -- namely, Jim Rhodes' personal and professional misconduct over the years -- and does not attach copies of the full reports but only certain snippets framed for the most damning effect. However, the Newspaper Reports referred to by the Objection are written assertions made by someone other than Mr. Rhodes, and such authors are not available for cross examination by Mr. Rhodes. Moreover, even if the Objection had attached copies of the Newspaper Reports referred to, those articles would still constitute unauthenticated hearsay within hearsay. McDowell Welding & Pipefitting, Inc. v. U.S. Gypsum Co., 285 B.R. 460, 467 (D. Or. 2002) (exhibits attached to affidavit,

which included a *New York Times* article, were stricken as they constituted unauthenticated hearsay within hearsay).

The First Lien Steering Committee offered references to Newspaper Reports as evidence to prove the factual allegations contained in the Objection. Although otherwise inadmissible hearsay may be admissible if it falls within an exception to the hearsay rule, the Newspaper Reports in this case clearly do not fall within any exception. Accordingly, the Newspaper Reports referred to in the Objection also implicate traditional "hearsay dangers" and must be excluded from the Court's consideration of the Objection.

## III.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Mr. Rhodes respectfully requests that the Court eclipse the First Lien Steering Committee's attempts to litigate by ambush and strike the Alix Report and those portions of the Objection, paragraphs 20 through 22, inclusive, that refer to or rely upon the Alix Report and the Newspaper Reports as impermissible hearsay so that they are not included in the Court's consideration of the Objection.

DATED this 14th day of April 2009.

**GREENBERG TRAURIG, LLP**

By  */s/ Brett Axelrod*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
ANNE M. LORADITCH, ESQ.
Nevada Bar No. 8164
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773

*Counsel for Sagebrush Enterprises, Inc. and James Rhodes*