James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: jstang@pszjlaw.com
        scho@pszjlaw.com
        wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com

E-Filed: April 15, 2009

[Proposed] Attorneys for Debtors and
Debtors in Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered) |
| THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1] | Chapter 11 |
|     Debtors. | |
| Affects: | DATE:  April 17, 2009<br>TIME:     9:30 a.m.<br>PLACE: Courtroom 1 |
| ⊠    All Debtors<br>☐    Affects the following Debtor(s) | |

---

[1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2

3

4

**DEBTORS' REPLY TO THE "OBJECTION OF THE FIRST LIEN STEERING COMMITTEE TO THE DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO THE DEBTORS PREPETITION SECURED PARTIES AND (C) SCHEDULING A FINAL HEARING"**

5

6

7

8

9

10

11

The above-captioned debtors and debtors in possession (the "Debtors") hereby file this reply (the "Reply") to the *Objection Of The First Lien Steering Committee To The Debtors' Motion For Interim And Final Orders Pursuant To Sections 105, 361, 362, 363 And 364 Of The Bankruptcy Code (A) Authorizing Debtors To Use Cash Collateral, (B) Granting Adequate Protection To The Debtors Prepetition Secured Parties And (C) Scheduling A Final Hearing* (the "Objection") filed by the First Lien Steering Committee (the "First Lien Lenders"). In support of the Reply, the Debtors respectfully represent as follows:[2]

12

**1.      Preliminary Statement**

13

14

15

16

The negotiations with the First Lien Lenders over the interim cash collateral order were protracted. Those negotiations culminated in the consensual interim order that was presented to and entered by the Court. That interim order granted the Debtors use of cash collateral through April 17, 2009 only.

17

18

19

20

21

22

23

24

Since entry of that order, the Debtors have provided the First Lien Lenders with extensive due diligence. The Debtors hosted the First Lien Lenders' financial advisors, Winchester Carlisle Partners ("WCP"), at their company and provided WCP with over 4,000 pages of data and 11 interviews with company personnel totaling over 20 hours of interviews. The Debtors have also answered questions and have met extensively with WCP in addition to the formal interviews. In addition, the First Lien Lenders have already deposed the Debtors' former CFO for several hours and will depose the Debtors' President and CEO and continue the deposition of the former CFO on April 16. Accordingly, the Debtors have granted reasonable access to the First Lien Lenders.

25

26

As of the date and time of filing of this Reply, there is no agreement on the continued usage of Cash Collateral. The Debtors are hopeful that an agreement may be reached before the

27

28

09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

[2] Capitalized terms not defined herein shall have the same meaning as in the Motion or Stipulated Order.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    hearing on April 17, 2009.  In the event that no agreement can be reached, the Debtors will seek to

2    go forward on a contested basis for final approval of use of Cash Collateral based on the form of

3    the interim cash collateral order.  The Debtors simply cannot operate on a 7-day review period or

4    any other interim usage of Cash Collateral that puts a stranglehold on the ability to enter into

5    contracts to build homes.  The Debtors require certainty of use of Cash Collateral for the budgeted

6    period, and beyond if the parties can agree, so that they can employ personnel and commit to

7    paying their contractors who are building homes.  Contractors will not start projects for which they

8    may only be paid for 7 or 10 days or however long the First Lien Lenders are willing to provide.

9           **2.**       **The Debtors Have Complied With The Demands For "Lender Protections"**

10   In the Objection, the First Lien Lenders state that they would consent to the use of cash

11   collateral if certain specified "lender protections" (the "Lender Protections") were met.  *See* Obj.,

12   par. 3.  As demonstrated in the *Stipulated Interim Order (1) Authorizing Limited Use Of Cash*

13   *Collateral Pursuant To Sections 105, 361, 362, 363 And 364 Of The Bankruptcy Code, (2)*

14   *Granting Adequate Protection And Super Priority Administrative Expense Priority To Prepetition*

15   *Secured Lenders, And (3) Scheduling A Final Hearing* [docket number 125] (the "Stipulated

16   Order"), the Debtors have complied with the Lender Protections.

17   Specifically, the First Lien Lenders requested the following Lender Protections, all of

18   which the Debtors have provided in the Stipulated Order:

19   •       Weekly reports of variances between operations and the Debtors' 13 week

20         budget (<u>see</u> Stipulated Order, par. 3b);

21   •       Reasonable access to the Debtors' books and records (<u>see</u> Stipulated Order,

22         par. 10b);

23   •       Payment of reasonable fees and expenses of the First Lien Lenders' advisors

24         (<u>see</u> Stipulated Order, par. 5c);

25   •       Superpriority administrative expense claims for diminution in the value of

26         collateral (<u>see</u> Stipulated Order, par. 5b);

27   •       A waiver of the Debtors' ability to prime or surcharge the First Lien

28         Lenders' Collateral (<u>see</u> Stipulated Order, par. 7).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Accordingly, the Debtors have provided all the above Lender Protections requested by the First

2    Lien Lenders and are prepared to submit a final cash collateral order with the same Lender

3    Protections as those set forth in the Stipulated Order.  The Debtors have not provided the following

4    Lender Protections:  (i) agreeing to the appointment of a Chief Restructuring Officer and (ii)

5    acknowledgement of the validity of the lenders' liens at the direction of this Court at the prior

6    hearing on April 8, 2009.

7    Though the Debtors agreed to pay certain fees and expenses of the First Lien Lenders'

8    professionals, it should be noted that the lenders do not have any independent legal right to such

9    fees and expenses.  The lenders have not provided any evidence of valuation of their prepetition

10    collateral and, therefore, have not provided evidence that they are oversecured creditors.  It is well-

11    established that only oversecured creditors are entitled to postpetition fees.  *See, e.g., United Sav.*

12    *Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd*., 484 U.S. 365, 108 S. Ct. 626, 98 L.

13    Ed. 2d 740 (1988); *Global Indus. Techs. v. J.P. Morgan Trust Co., N.A.(In re Global Indus.*

14    *Techs.)*, 344 B.R. 382, 386 (Bankr. W.D. Pa. 2006); *Global Indus. Techs. v. J.P. Morgan Trust*

15    *Co., N.A.(In re Global Indus. Techs.)*, 344 B.R. 382, 386 (Bankr. W.D. Pa. 2006).  Accordingly,

16    although the Stipulated Order provides for payment of such fees, the Debtors propose to reserve

17    the right to review and examine the propriety of such fee in the final cash collateral order.

18    **3.      The Debtors Have Offered Additional Adequate Protection By Granting**

19    **Replacement Liens On All Unencumbered Assets To The Extent Of Any Diminution In**

20    **Value**

21    Although the Debtors have not conducted an extensive investigation, the Debtors believe

22    that the First Lien Lenders are secured in substantially all of the Debtors' property.  However, as

23    the Debtors will be prepared to attest to at the hearing, Tuscany Acquisitions IV, LLC owns a

24    parcel (the "Parcel") of land that is unencumbered with the exception of $2 million in disputed

25    liens.[3]    The Parcel is located in the Tuscany master plan community located in Henderson,

26    Nevada, and consists of approximately 26 acres that the Debtors purchased for over $13 million in

27

28    [3]   The liens were placed on the Parcel by a subcontractor who did not perform work on the Parcel. The subcontractor is
attempting to collect on a claim against a party that is unaffiliated with the Debtors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2007.   While Tuscany Acquisitions IV, LLC is a guarantor under the Prepetition Credit Agreements, the Parcel is not encumbered to secure the guarantee.   As adequate protection additional to that offered in the Motion, pursuant to section 361(2) of the Bankruptcy Code, the Debtors have already agreed to provide the First Lien Lenders with replacement liens (the "Replacement Liens") on all their unencumbered assets to the extent that the Debtors' use of the Cash Collateral results in a decrease in the value of  the Prepetition Lender Collateral.   *See* Stipulated Order, at par. 5a.

**4.       Pacific Lifestyle Homes Is Inapplicable To The Facts Of This Case**

In the Objection, the First Lien Lenders rely heavily on *In re Pacific Lifestyle Homes, Inc*. for the proposition that the Debtors cannot provide adequate protection in this case.   2009 WL 688908 (Bankr. W.D. Wash., March 18, 2009) ("*Pacific Lifestyle*").   *Pacific Lifestyle*; however, is entirely distinguishable from the present case.   For example, in *Pacific Lifestyle* the debtor had incurred a loss of over $1.3 million during the first three months of postpetition operation.   By contrast, the Debtors' 13 Week Budget indicates that the Debtors will generate over $5 million in positive cash flow during the initial three months of their cases.   Unlike the debtor in *Pacific Lifestyle* that was losing significant money during its chapter 11, the Debtors will operate postpetition on a cash flow positive basis.   *See* Exhibit B [Docket no. 81].   Perhaps the most dramatic difference between the two cases is that the *Pacific Lifestyle* debtor did not have any unencumbered property, like the Debtors do in this case.   As discussed above, the Debtors have already provided Replacement Liens on the Parcel to the extent of any diminution in value of the First Lien Lenders' prepetition collateral.

**5.   The  Allegations  of  Dishonesty  and  Malfeasance  Against  the  Debtors'  Management are Baseless**

To a large extent, the Objection mirrors the First Lien Lenders' motion to appoint a trustee, which motion has been continued to April 28, 2009.   The allegations of dishonesty and malfeasance against the Debtors' management (like those in the motion to appoint a trustee), are based solely on hearsay and are inadmissible.   Moreover, the evidence will show that there is no truth to any of those allegations.

1    WHEREFORE, the Debtors respectfully request entry of an order authorizing the use of

2   Cash Collateral on a final basis as provided in the 13 Week Budget, and granting such other and

3   further relief as is just and proper under the circumstances.

4

    Dated:    April 15, 2009                    LARSON & STEPHENS

5

6                                               /s/Zachariah Larson
                                                Zachariah Larson, Esq. (NV Bar No. 7787)
7                                               810 S. Casino Center Blvd., Ste. 104
                                                Las Vegas, Nevada  89101
8
                                                [Proposed] Counsel for Debtors and
9                                               Debtors in Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

73203-001\DOCS_LA:200549.7                              6