**Entered on Docket**
**April 17, 2009**

_____
**Hon. Linda B. Riegle**
**United States Bankruptcy Judge**

James I. Stang, Esq. (SBN 94435)
Shirley S. Cho, Esq. (SBN 192616)
Werner Disse, Esq. (SBN 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: jstang@pszjlaw.com
          scho@pszjlaw.com
          wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com

[Proposed] Attorneys for Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 09-14814-LBR |
| | (Jointly Administered) |
| THE RHODES COMPANIES, LLC, | |
| aka "Rhodes Homes," et al.,[1] | Chapter 11 |
| | |
| Debtors. | DATE: 4-17-2009 |
| | TIME:  10:00 AM |
| | Courtroom No. 1 |

---

[1] The Debtors in these cases, along with their case numbers are:  Apache Framing, LLC (Case No. 09-14818); Batcave, LP (Case No. 09-14861); Bravo, Inc. (Case No. 09-14825); C & J Holdings, Inc. (Case No. 09-14843); Chalkline, LP (Case No. 09-14862); Elkhorn Investments, Inc. (Case No. 09-14837); Elkhorn Partners, A Nevada Limited Partnership

1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Affects:

☒      All Debtors
       Affects the following Debtor(s):

**SECOND STIPULATED ORDER (I) AUTHORIZING
USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362 AND 363 OF
THE BANKRUPTCY CODE, (II) GRANTING ADEQUATE PROTECTION AND
SUPER PRIORITY ADMINISTRATIVE EXPENSE PRIORITY TO PREPETITION
SECURED LENDERS, AND (III) SCHEDULING A FINAL HEARING**

Upon the motion dated April 1, 2009 of the above captioned debtors and debtors in possession (collectively, the "*Debtors*") for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to the Debtors' Prepetition Secured Parties and (C) Scheduling a Final Hearing (the "*Motion*"); and the Court having considered the Motion; and an interim hearing to consider approval of the Motion having been held and concluded on April 7, 2009 (the "*Interim Hearing*"); and that certain *Stipulated Interim Order (I) Authorizing Limited Use of Cash Collateral Pursuant to Sections 105, 361, 362 and 363 of the Bankruptcy Code, (II) Granting Adequate Protection and Super Priority Administrative Expenses Priority to Prepetition Secured Lenders, and (III) Scheduling a Final Hearing* having been entered by the Court on April 10, 2009 (the "First Interim Cash Collateral Stipulation"); and notice of a further hearing on the Motion having been provided in accordance with the terms of the First Interim Cash Collateral Stipulation on April 9, 2009; and after due deliberation and consideration and good and sufficient cause appearing therefore:

(Case No. 09-14828); Geronimo Plumbing LLC (Case No. 09-14820); Glynda, LP (Case No. 09-14865); Gung-Ho Concrete LLC (Case No. 09-14822); Heritage Land Company, LLC (Case No. 09-14778); Jackknife, LP (Case No. 09-14860); Jarupa, LLC (Case No. 09-14839); Overflow, LP (Case No. 09-14856); Parcel 20, LLC (Case No. 09-14848); Pinnacle Grading, LLC (Case No. 09-14887); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Rhodes Design and Development Corporation (Case No. 09-14846); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Rhodes Realty, Inc. (Case No. 09-14841); The Rhodes Companies, LLC (Case No. 09-14814); Six Feathers Holdings, LLC (Case No. 09-14833); Tick, LP (Case No. 09-14866); Tribes Holdings, LLC (Case No. 09-14817); Tuscany Acquisitions, LLC (Case No. 09-14853); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Golf Country Club, LLC (Case No. 09-14884) and Wallboard, LP (Case No. 09-14858)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

THE COURT HEREBY FINDS:

A.   <u>Petition Date</u>.  On March 31, 2009 or April 1, 2009 (as applicable, the "*Petition Date*"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*").  Each Debtor is continuing in the management and possession of its business and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.   <u>Jurisdiction</u>.  Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.   <u>First Priority Secured Obligations</u>.  The First Lien Lenders and the Agent, defined below, allege as follows:

(1)   Pursuant to that certain Credit Agreement dated as of November 21, 2005 (as may have been amended from time to time, the "*First Lien Credit Agreement*") among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein as the Lenders (and all other holders of Obligations (as defined in the First Lien Credit Agreement) (collectively, the "*First Lien Lenders*"), and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger (the "*Agent*") and together with all guarantees, subordination agreements, intercreditor agreements (including the intercreditor agreement dated November 21, 2005 among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers and Credit Suisse, Cayman Islands Branch, as First Lien Collateral Agent and Second Lien Collateral Agent (the "Intercreditor Agreement")), blocked account or deposit control agreements, indentures, notes,

mortgages, pledges, guarantees, instruments and any other agreements and documents delivered pursuant thereto or in connection therewith (collectively, and as amended, restated, supplemented or otherwise modified from time to time, the "*First Lien Loan Documents*"); the Agent and the First Lien Lenders made certain senior loans, advances and other financial accommodations to the Debtors to fund, among other things, the operations of the Debtors.

(2)    Pursuant to the First Lien Loan Documents, the Debtors were, as of the Petition Date, indebted to the Agent and the First Lien Lenders in the approximate amount of $307,000,000 exclusive of accrued but unpaid interest, costs, fees and expenses.  For purposes of this Order, the term "*First Priority Indebtedness*" shall mean and include, without duplication, any and all amounts owing or outstanding under the First Lien Loan Documents (including, without limitation, all Obligations as defined in the First Lien Loan Documents) or any other interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the First Lien Credit Agreement), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the Obligations outstanding thereunder.

(3)    Pursuant to certain security agreements, pledge agreements, blocked account and deposit control agreements, mortgages, deeds of trust, assignments and other documents and agreements (as amended, restated, supplemented or otherwise modified from time to time, collectively, the "*First Lien Security Documents*"), and the other First Lien Loan Documents, the Debtors granted to and/or for the benefit of the Agent and the First Lien Lenders first priority and continuing pledges, liens and security interests (collectively, the "*First Priority Liens*") to secure the First Priority Indebtedness and any guarantees thereof, in and upon all of the Debtors' property and assets, whether real or personal, tangible or intangible and wherever located, whether now or

hereafter existing or acquired, including any state and federal tax refunds or rebates, and all of the proceeds, products, offspring, rents and profits thereof, all as described in the First Lien Security Documents.  All collateral provided under any First Lien Loan Document, including that described in this subparagraph C(3), that existed as of the Petition Date and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents and profits thereof shall hereafter be referred to as the "*Prepetition Collateral.*"

(4)  (a) The First Lien Loan Documents are valid and binding agreements of the Debtors, (b) the Agent (on its own behalf and on behalf of the First Lien Lenders) properly perfected their security interests and liens in and on the Prepetition Collateral, and (c) the First Priority Liens (i) constitute valid, binding, enforceable and perfected first priority security interests and liens on the Prepetition Collateral and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination by the Debtors pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(5)  (a) The First Priority Indebtedness constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms, (b) the Debtors have no objection, offset, defense or counterclaim of any kind or nature to the First Priority Indebtedness and (c) the First Priority Indebtedness, and any amounts previously paid to or on behalf of the Agent or any First Lien Lender on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

During the Cash Collateral Period, the Debtors agree not to challenge any of the above allegations of the First Lien Steering Committee or the Agent set forth in this Recital C.

D.  <u>Second Lien Secured Obligations</u>.  The Second Lien Lenders and the Second Lien Agent, defined below, allege as follows:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(1)    Pursuant to that certain Credit Agreement dated as of November 21, 2005 (as may have been amended from time to time, the "Second Lien Credit Agreement") among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein as the Lenders and all other holders of Obligations (as defined in the Second Lien Credit Agreement) (collectively, the "Second Lien Lenders"), and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger and together with all guarantees, subordination agreements, intercreditor agreements (including the Intercreditor Agreement), blocked account or deposit control agreements, indentures, notes, mortgages, pledges, guarantees, instruments and any other agreements and documents delivered pursuant thereto or in connection therewith (collectively, and as amended, restated, supplemented or otherwise modified from time to time, the "Second Lien Loan Documents"), the Second Lien Agent and the Second Lien Lenders made certain loans, advances and other financial accommodations to the Debtors to fund, among other things, the operations of the Debtors.

(2)    Pursuant to that Successor Agent Agreement, dated as of April 7, 2009, Wells Fargo Bank, National Association (the "Second Lien Agent") succeeded to the interests of Credit Suisse, Cayman Islands Branch as Administrative and Collateral Agent under the Second Lien Loan Documents.

(3)    Pursuant to the Second Lien Loan Documents, the Debtors were, as of the Petition Date, indebted to the Second Lien Agent and the Second Lien Lenders in the approximate amount of $70,700,000 exclusive of accrued but unpaid interest, costs, fees and expenses.  For purposes of this Order, the term "Second Lien Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Second Lien Loan Documents (including, without limitation, all Obligations as defined in the Second Lien Loan Documents) or any other interest on,

fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the Second Lien Credit Agreement), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the Obligations outstanding thereunder.

(4)    Pursuant to certain security agreements, pledge agreements, blocked account and deposit control agreements, mortgages, deeds of trust, assignments and other documents and agreements (as amended, restated, supplemented or otherwise modified from time to time, collectively, the "Second Lien Security Documents"), and the other Second Lien Loan Documents, the Debtors granted to and/or for the benefit of the Second Lien Agent and the Second Lien Lenders second priority and continuing pledges, liens and security interests (collectively, the "Second Priority Liens"), contractually subordinated to the First Priority Liens, to secure the Second Priority Indebtedness and any guarantees thereof, in and upon the Debtors' property and assets, whether real or personal, tangible or intangible and wherever located, whether now or hereafter existing or acquired, including any state and federal tax refunds or rebates, and all of the proceeds, products, offspring, rents and profits thereof, all as described in the Second Lien Security Documents.  All collateral provided under any Second Lien Loan Document, including that described in this subparagraph D(4), that existed as of the Petition Date and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents and profits thereof is the same collateral referred to in subparagraph C(3) as the Prepetition Collateral.

(5)    (a) The Second Lien Loan Documents are valid and binding agreements of the Debtors, (b) the Second Lien Agent (on its own behalf and on behalf of the Second Lien Lenders) properly perfected their security interests and liens in and on the Prepetition Collateral, and (c) the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Second Priority Liens (i) constitute valid, binding, enforceable and perfected second priority security interests and liens on the Prepetition Collateral and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination by the Debtors pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(6)    (a) The Second Priority Indebtedness constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms, (b) the Debtors have no objection, offset, defense or counterclaim of any kind or nature to the Second Priority Indebtedness and (c) the Second Priority Indebtedness, and any amounts previously paid to or on behalf of the Second Lien Agent or any Second Lien Lender on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

During the Cash Collateral Period, the Debtors agree not to challenge any of the above allegations of the Second Lien or the Second Lien Agent set forth in this Recital D.

E.    Cash Collateral.  The Debtors have requested the use "cash collateral", as defined by section 363(a) of the Bankruptcy Code and including any and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds of the Prepetition Collateral ("*Cash Collateral*") in accordance with the Budget (as defined below), in order to continue the operation of their businesses and their reorganization under chapter 11 of the Bankruptcy Code. Accordingly, the relief granted is being provided with the consent of the First Lien Lenders and Second Lien Lenders for the continued operation of the Debtors' businesses for the Cash Collateral Period (as defined below).  Good, adequate and sufficient cause has been shown to justify the granting of the relief provided herein and the immediate entry of this Order.

F.    Good Faith.  Based upon the record before the Court, the terms of the use of the Cash Collateral as provided in this Order have been negotiated at arms' length and in "good faith,"

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors. The Agent, the First Lien Lenders, the Second Lien Agent, and the Second Lien Lenders (collectively, the "Lender Parties") are permitting the use of their Cash Collateral in good faith.

G. <u>No Secured Lender Objections</u>. The Lender Parties have consented to the use of their Cash Collateral solely for the Cash Collateral Period and such consent is expressly conditioned upon the consideration as provided in this Order. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or non-objection of such parties.

H. <u>Notice</u>. Notice of the further hearing to approve the Motion was delivered on or before April 9, 2009 via United States mail, first class postage prepaid, to the following parties in interest: (i) the United States Trustee for the District of Nevada (the "*U.S. Trustee*"); (ii) those parties listed on the Consolidated List of Creditors Holding Largest Twenty Unsecured Claims Against the Debtors, as identified in the Debtors' chapter 11 petitions; (iii) the administrative agent for the First Lien Lenders and Second Lien Lenders; (iv) counsel to the First Lien Agent; (v) counsel to a steering committee of First Lien Lenders (the "*First Lien Steering Committee*"); (vi) counsel to the Second Lien Agent; and (vii) all parties requesting service papers pursuant to Bankruptcy Rule 2002. Given the nature of the relief sought in the Motion, such notice constitutes sufficient and adequate notice of this Order pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by sections 363(b) and (c) of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED, STIPULATED AND AGREED:

1. <u>Relief Granted</u>. The relief granted herein is granted on a interim basis subject to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

express provisions hereof.  Any objections to the relief sought to the interim approval of the relief granted herein that have not been previously resolved or withdrawn are hereby adjourned to the final hearing.

2.     Use of Cash Collateral.  Except as otherwise set forth herein, for as long as the Debtors comply with the terms and conditions of this Order, the Debtors are hereby authorized to use Cash Collateral consistent with the budget (the "*Budget*") annexed hereto as Exhibit "A", subject to a variance of 15%, *provided*, that the Lender Parties are granted adequate protection as hereinafter set forth, and *provided, further*, that, absent the written consent of the First Lien Steering Committee (in consultation with the Agent), the Debtors shall cease to be authorized to use Cash Collateral  pursuant to this Order upon the occurrence of the Cash Collateral Termination Date.

3.     Budgets and Covenants.

(a)     The annexed Budget contains weekly forecasts covering the period beginning April 3, 2009 through the week ending May 1, 2009.  Except as otherwise set forth herein, the Debtors are hereby authorized to use Cash Collateral in a manner that is entirely consistent with the Budget for the period from April 3, 2009 through 11:59 p.m. (pt) on April 28, 2009 (the "Budget Period").

(b)     The Debtors may enter into and pay any expenses associated with constructing or regarding the construction of a home, including, but not limited to sales contracts, home construction contracts, or purchase order requests for the completion of entire homes (the "Home Construction Contracts") with payment or completion timeframes beyond April 28, 2009 subject to the prior written approval of the First Lien Steering Committee through WCP with notice to the First Lien Agent and Second Lien Agent (collectively, the "Agents").  The approval or denial of each such request shall occur within 24 hours of presentation by the Debtors of such request to WCP.  Any expenses incurred during the Budget Period or beyond in connection with any such

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Home Construction Contract approved in accordance with this Paragraph 3(b), shall be paid by the Debtors out of the First Lien Lenders' Cash Collateral regardless of the occurrence of a Cash Collateral Termination Event.  Notwithstanding anything to the contrary herein, the Adequate Protection Liens and Adequate Protection Claims granted to the Lender Parties herein shall be subordinate to the Debtors' obligations under the Home Construction Contracts.

(c)      The Debtors are authorized to disburse job cost expenses of Pinnacle Grading LLC ("Pinnacle") through April 28, 2009 provided that the cumulative job cost expenses of Pinnacle from April 1, 2009 through April 28, 2009 do not exceed the cumulative receipt of Pinnacle revenues received from April 1, 2008 through April 28, 2009 by more than $60,000.   (For example, if the Debtors receive $250,000 in cumulative Pinnacle revenues on a day prior to April 28, 2009, then the Debtors shall be authorized to disburse up to $310,000 in cumulative Pinnacle job cost expenses through such date.)

(d)      Other than as described above, the balance of the line items set forth in the Budget may be disbursed in accordance with Budget, with the exception of the following line items for the week ending May 1, 2009 which shall not permitted to be disbursed during the Budget Period or thereafter, unless approved in writing by the First Lien Steering Committee through WCP with notice to the Agents:

- Line 11 - Insurance Financing
- Line 12 - IT Services/Equip
- Line 13 – Storage
- Line 14 – Rent
- Line 15 – Brokerage License
- Line 16 – HOA Fees
- Line 17 – Model Homes Leases
- Line 21 – Rhodes Homes Consultants

- Line 40 – Builder Subsidies to Tuscany HOA

- Line 41 – Sales and Use Tax

- Line 44 - $2,500 of Employee & Consultant Housing and Travel Expenses (for rent due on May 1)

(e)     Upon consent of WCP of Line 44 of the Budget, the Debtors are authorized to disburse to Mrs. Glynda Rhodes $5,000, which consists of $2,500 for April 2009 rent, which amount is being held in the client trust account of the Debtors' bankruptcy counsel and $2,500 for May 2009 rent.

(f)     Any expenditures in the ordinary course of business that are not otherwise identified on the Budget that the Debtors deem necessary or important prior to April 28, 2009 shall be recommended in writing by the Debtors to the First Lien Steering Committee, through WCP, with notice to the Agents and WCP shall respond within 48 hours of its receipt of such notice with an approval or denial in WCP's sole discretion.

(g)     The Debtors are authorized, without further order of the Court, to make modifications to the Budget with the written consent of the First Lien Steering Committee (in consultation with the Agent), which consent shall be granted or withheld in the First Lien Steering Committee's sole discretion.  The Debtors' authorization to use Cash Collateral hereunder shall terminate upon the earlier to occur of (i) the Cash Collateral Termination Date or (ii) expiration of the Budget Period unless the Debtors shall have proposed and the First Lien Steering Committee, in its sole discretion (but in consultation with the Agent), shall have approved, an extension of the Cash Collateral Period.

(h)     The Debtors shall provide to the Lender Parties and First Lien Steering Committee weekly variance reports by 5:00 p.m. (prevailing Pacific Time) on Tuesday of each week during the Budget Period (or the next business day if such day is not a business day).  Such variance reports shall (i) include prior week actual and cumulative financial results compared to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

budgeted amounts for each such week and a detailed explanation of any variances and (ii) certify the Debtors' compliance with the Budget.

4.    Ordinary Course of Business.  The Debtors shall only engage in transactions in the Debtors' ordinary course of business during the Budget Period.

5.    Adequate Protection.  The Lender Parties are hereby granted the following as adequate protection, (i) solely to the extent of any diminution in the value of the Prepetition Collateral (including Cash Collateral) and (ii) solely to the extent of the value of their interest in the Prepetition Collateral:

(a)    Adequate Protection Liens.  As adequate protection of the respective interests of the Lender Parties, to the extent of any diminution in the value of the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, whether as a result of the imposition of the automatic stay, or the use, sale or lease of the Prepetition Collateral, including the use of the Cash Collateral, the Agent and the Second Lien Agent are hereby granted for their benefit and the benefit of the First Lien Lenders and Second Lien Lenders replacement liens in the same relative priority as their respective liens in the Prepetition Collateral, provided that the adequate protection liens provided hereunder to the Second Lien Agent shall also be junior in priority to the Agent's prepetition liens in the Prepetition Collateral (the "*Adequate Protection Liens*"), subject only to such other liens, if any, as may be senior, under applicable law, to the First Priority Liens and Second Priority Liens in the relevant Collateral (as hereinafter defined), on all of the Debtors' rights, title and interest in, to and under all personal and real property and other assets, whether now existing or at any time hereafter acquired and regardless of where located, including, but not limited to, all contracts of sale, pledged equity interests, tax refunds, general intangibles, copyrights, patents, trademarks, books and records, customer lists, credit files, computer files, programs, printouts, other computer materials and records related thereto, commercial tort claims,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*LV 418,762,738v1 4-8-09*
DOCS_LA:200606.6

documents, letters of credit issued in favor of the Debtors, excess proceeds returned to the Debtors from letter of credit beneficiaries, equipment, fixtures, goods, inventory, machinery, pledged deposits, chattel paper, securities accounts, deposit accounts and all other demand, time, savings and cash management, passbook and similar accounts, and all monies, securities, instruments and other investments deposited or required to be deposited in such accounts, but excluding all claims for relief under chapter 5 of the Bankruptcy Code (collectively, including the Prepetition Collateral, the "*Collateral*").  Except as provided in this Order, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien on the Collateral by any order subsequently entered in the Chapter 11 Cases and shall be granted the benefits of paragraph 6 hereof as applicable.

(b)  Adequate Protection Claims.  As additional adequate protection of the interests of the Lender Parties in the Prepetition Collateral, the Lender Parties are hereby granted allowed administrative priority claims under section 507(b) of the Bankruptcy Code in the same relative priority as the First Priority Liens and Second Priority Liens in the Prepetition Collateral (the "*Adequate Protection Claims*") for any diminution in value of the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, whether as a result of the imposition of the automatic stay, or the use, sale or lease of Prepetition Collateral, including the use of Cash Collateral, provided that any recoveries to the Second Lien Agent or Second Lien Lenders in respect of the Adequate Protection Claims granted hereunder to the Second Lien Agent and Second Lien Lenders shall be first used to satisfy the prepetition claims of the Agent and the First Lien Lenders and only in the event such prepetition claims are paid in full shall the Second Lien Agent and Second Lien Lenders receive any amounts in respect of such Adequate Protection Claims.  The Adequate Protection Claims shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise (whether incurred in the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto).  Notwithstanding the foregoing, the Adequate Protection Claims shall not have priority over the administrative claims incurred by the Debtors as and to the extent contemplated in the Budget, the administrative claims of any third party who received retainers from the Debtors to the extent of such retainers and a reasonable carveout for professionals of a creditors committee (if and when appointed) for the purpose of investigating the assertions in Paragraphs C and D contained herein.  Solely for the Cash Collateral Period, the Adequate Protection Claims shall be subordinated to (i) the retainers held, as of the Petition Date, by professionals to the Debtors that are retained pursuant to an order of the Court and only to the extent of fees and expenses (a) incurred prior to and during the continuation of a Cash Collateral Termination Event and (b) allowed by further order of the Court; and (ii) the allowed administrative claims of non-insider employees that provide actual services to the Debtors during the Cash Collateral Period and allowed administrative claims of entities that provide services to the Debtors (other than any affiliates of the Debtors or Jim Rhodes, but excluding Spirit Underground or Freedom Underground), in each case only to the extent provided for in the Budget.  Notwithstanding the foregoing, Spirit Underground and Freedom Underground shall have the benefit of the foregoing sentence for allowed administrative claims in respect of services actually rendered during the Cash Collateral Period to the extent provided for in the Budget or otherwise authorized pursuant to this Order.

(c)    Fees and Expenses.  As further adequate protection for the use of the Cash Collateral during the Budget Period, the Debtors shall, no later than one business day after entry of this Order, pay in cash the following to the professionals retained by the First Lien Steering

Committee on account of fees and expenses incurred and to be incurred on behalf of the First Lien Steering Committee and the Agent, without a right of setoff, recoupment, avoidance or disgorgement: (i) $75,000 to Winchester Carlisle Real Estate Partners LLC ("WCP"); (ii) $75,000 to Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"); (iii) $5,000 to Kolesar & Leatham ("K&L"); and (iv) $30,000 to Skadden, Arps, Slate, Meagher & Flom, LLP, in each case in accordance with wire instructions provided by the applicable professional to the Debtors; the Debtors having acknowledged that wire instructions for WCP, Akin Gump, and K&L have already been provided to the Debtors.  The foregoing payments shall be subject to recharacterization under Bankruptcy Code section 506(b).  Nothing herein shall prejudice the Agents or First Lien Steering Committee from seeking payment of additional fees and expenses in connection with any further or final order regarding cash collateral or otherwise and such rights are expressly reserved.

(d)  <u>Reporting Requirements</u>.  The Debtors shall furnish to the Lender Parties and First Lien Steering Committee the following:

(I)  <u>Weekly Cash Flow Budget</u>.  On the third day of each calendar week (or, if such day is not a business day, on the next succeeding business day), (i)  a report setting forth in reasonable detail any variances from the Weekly Cash Flow Budget on the basis of the actual prior week, (ii) a report setting forth a list of all asset sales since the date of the last Weekly Cash Flow Budget and the respective sales price, and (iii) a report of cumulative net cash proceeds received by the Debtors with respect to asset sales since the date of the last such report.

(II)  <u>Cash Collateral Termination Event Notices</u>.  As soon as practicable, and in any event within one business day after a responsible officer has actual knowledge of the existence of any Cash Collateral Termination Event, the Debtors shall give the Lender Parties and First Lien Steering Committee notice specifying the nature of the Cash Collateral Termination Event, which notice, if given by telephone, shall be promptly confirmed in writing on the next

business day.

(III)    <u>Provision of Information</u>.    The First Lien Steering Committee is authorized to share information and documents it receives from the Debtors with the Agent and the Second Lien Agent and the First Lien Steering Committee shall share such information and documents with the Agent and the Second Lien Agent upon the Agent or Second Lien Agent's request.

(e)    <u>Disbursement Authority</u>.    During the Cash Collateral Period, all amounts paid by the Debtors must be approved by two of the following (with checks drawn on any Debtor's bank accounts to be signed by two of the following):  (i) the Debtors' general counsel; (ii) the Debtors' chief financial officer; and (iii) the Debtors' controller; provided, that neither Jim Rhodes nor any relative or affiliate of Jim Rhodes shall serve in any of the foregoing capacities.

6.    <u>Perfection of Adequate Protection Liens</u>.    The Adequate Protection Liens granted pursuant to this Order shall be deemed to be perfected automatically as of the Petition Date, without the necessity of the filing of any UCC-1 financing statement, state or federal notice, mortgage or other similar instrument or document in any state or public record or office and without the necessity of taking possession or "control" (within the meaning of the Uniform Commercial Code) of any Collateral, *provided, however,* that if the Agent or Second Lien Agent shall, in their sole individual discretion, choose to require the execution of and/or file (as applicable) such mortgages, financing statements, notices of liens and other similar instruments and documents, all such mortgages, financing statements, notices of liens or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded *nunc pro tunc* at the time and on the date of the later of the Petition Date or the date upon which the Debtors acquired the property subject to the mortgages, financing statements, notices of liens and other similar instruments and documents at issue.  Each and every federal, state and local government

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

agency or department is hereby directed to accept a copy of this Order as evidence of the validity, enforceability and perfection as of the Petition Date of the liens granted or authorized pursuant to this Order to or for the benefit of the Lender Parties.

7.    <u>Limitation on Charging Expenses Against Collateral</u>.  During the Cash Collateral Period defined herein, no administrative claims, including fees and expenses of professionals, shall be assessed against or attributed to any of Lender Parties with respect to their interests in the Prepetition Collateral for the period of consensual use of Cash Collateral (the "*Cash Collateral Period*") or any subsequent period in which the Debtors are permitted to use Cash Collateral pursuant to the terms of this Order, as applicable, pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtors, without the prior written consent of the Lender Parties and First Lien Steering Committee, as applicable, and no such consent shall be implied from any action, inaction or acquiescence by, either with or without notice to, the Lender Parties and the First Lien Steering Committee, or otherwise.

8.    <u>Priority of Obligations</u>.    Except as otherwise set forth herein, pursuant to Bankruptcy Code section 507(b), all of the Debtors' obligations arising under this Order in respect of the First Priority Indebtedness, the Second Priority Indebtedness, the Prepetition Collateral, or the Adequate Protection Liens shall constitute obligations of the Debtors with priority over any and all administrative expenses or other claims arising or granted under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 546(c) or 726.

9.    <u>Reservation of Rights of Prepetition Secured Parties</u>.  Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of any of the Lender Parties or the First Lien Steering Committee under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of such parties to (i) request modification of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers); or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans for any of the Debtors; (b) any of the rights of the Lender Parties or First Lien Steering Committee to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection at any time, including prior to a Cash Collateral Termination Event, and nothing herein shall affect the rights of any other party or entity to seek or oppose such modification of the grant of the adequate protection provided hereby; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the Lender Parties or First Lien Steering Committee.  Nothing herein shall prejudice the rights of any party to oppose any of the foregoing forms of relief (other than the Debtors with respect to paragraphs C and D herein) that may be sought by any of the Lender Parties or First Lien Steering Committee.

10.  <u>Cash Collateral Termination</u>.

(a)  Notwithstanding anything herein or in the First Lien Financing Documents or the Second Lien Financing Documents to the contrary, the Debtors shall no longer be authorized to use Cash Collateral pursuant to this Order, the First Lien Financing Documents the Second Lien Financing Documents, or otherwise, and consent to the use of Cash Collateral shall be terminated (the "*Cash Collateral Termination Date*") upon the earlier of (i) April 28, 2009 at 11:59 p.m. (prevailing Pacific Time) (unless such date is extended in the sole discretion of the First Lien Steering Committee (in consultation with the Agent and the Second Lien Agent)) and (ii) absent further order of the Court, the date that is one (1) business day after the delivery by the Agent or the First Lien Steering Committee  of written notice to the Debtors of the occurrence of any of the following events (any event shall be referred to as a "*Cash Collateral Termination Event*"):

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(I)  non-compliance by the Debtors with any term or provision in this Order;

(II)  the occurrence after the date hereof of a material adverse effect on any of the business, prospects, performance, assets, operations, condition (financial or otherwise), contingent and other liabilities or material agreements of the Debtors, taken as a whole;

(III) the incurrence by the Debtors of any expenses or the entry into any transaction not specifically contemplated by the Budget, absent the prior written consent if the First Lien Steering Committee, which consent shall be provided or withheld in the First Lien Steering Committee's sole discretion (in consultation with the Agent);

(IV)  the entry of an order pursuant to Bankruptcy Code section 363 approving the sale of all or substantially all of the Debtors' assets (but only in the event that the First Lien Steering Committee (in consultation with the Agent) has not first consented to such sale), *provided, however*, that to the extent that the net proceeds of such sale are sufficient to satisfy all of the First Priority Indebtedness, subject to the provisions of the Intercreditor Agreement, then such sale shall not constitute a Cash Collateral Termination Event until the closing of the sale;

(V)  conversion or dismissal of the Chapter 11 Cases, *provided, however*, that if an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that (i) the claims and liens granted pursuant to this Order to or for the benefit of the Lender Parties shall continue in full force and effect and shall maintain their priorities as provided in and subject to the express limitations contained in this Order until all obligations in respect thereof shall have been paid in full in cash and satisfied in the manner provided in the First Lien Loan Documents or Second Lien Loan Documents (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) prior to dismissal, the applicable Debtors shall deliver to the Agent and Second Lien Agent and record,

LV 418,762,738v1 4-8-09
DOCS_LA:200606.6

at the Debtors' cost, financing statements, mortgages and other documentation evidencing perfected liens in the Collateral and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens;

(VI)  entry of any order pursuant to sections 364(c)(1) and (d)(1) of the Bankruptcy Code authorizing the Debtors to obtain credit that is payable on a senior priority, junior priority or pari passu basis with the First Priority Indebtedness, without the written consent of the First Lien Steering Committee (in consultation with the Agent and the Second Lien Agent);

(VII)  failure of the Debtors to make the payments specified in paragraph 5 to the professionals for the First Lien Steering Committee and the Agent by 5:00 p.m. (prevailing Pacific Time) on the business day following entry of this Order;

(VIII)   failure of the Debtors to provide representatives of the First Lien Steering Committee with the access or information as set forth in Paragraph 10(b) hereof; or

(IX)     this Order ceases to be in full force and effect.

(b)     **First Lien Steering Committee Access.**  Commencing April 20, 2009 at 9:00 a.m. and ending 5:00 p.m. (PT), the Debtors shall provide WCP access to the Debtors' conference room at the corporate offices as workspace.  WCP personnel shall not initiate any substantive conversation with any of the Debtors' employees except as set forth herein.  WCP may commence employee interviews provided that such interview is scheduled in advance and no such interview shall exceed three (3) hours without the written consent of the Debtors or Court order and a representative of the Debtors, other than Jim Rhodes, may attend such interviews.  If WCP requests documents or information from the Debtors, the Debtors shall make a good faith effort to provide the documents or information on a timely basis.  WCP will vacate the Debtors' business premises by April 27, 2009 at 5:00 p.m.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(c)    Prepetition Secured Party Remedies.

(I)  Upon the occurrence of a Cash Collateral Termination Event, the Agent or any First Lien Lender shall provide two (2) business days written notice (by facsimile, telecopy, electronic mail or otherwise) to the U.S. Trustee, the Second Lien Agent, counsel to the Debtors and counsel to any official committee prior to terminating the Debtors' use of cash collateral under this Order.  Notwithstanding anything herein to the contrary, the First Lien Steering Committee retains the right, in its sole discretion (but in consultation with the Agent), to waive any such Cash Collateral Termination Event permanently or temporarily.  The Debtors, the U.S. Trustee, and any official committee may seek within the two (2) business day notice period an expedited hearing before this Court solely for the purpose of considering whether, in fact, a Cash Collateral Termination Event has occurred and is continuing.  At the expiration of such two (2) business day period, the Agent and any First Lien Lender shall be authorized, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit them to take whatever actions necessary to terminate the Debtors' use of Cash Collateral, including freezing any deposit or securities accounts.

(II)  The failure or delay by the Agent or any First Lien Lender to seek relief or otherwise exercise its rights and remedies under this Order or any of the First Lien Loan Documents shall not constitute a waiver of any of the rights of such parties hereunder, thereunder or otherwise, and any single or partial exercise of such rights and remedies against any party or Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other party and/or Collateral.  No holder of a lien that is subject to this Order or granted by the Debtors as adequate protection shall be entitled to object on the basis of the existence of any such lien to the exercise by the Agent or any First Lien Lender of their respective rights and remedies hereunder, under the First Lien Loan Documents, or under

applicable law to effect satisfaction of the First Priority Indebtedness or to receive any amounts or remittances due hereunder or under the First Lien Loan Documents. Notwithstanding the occurrence of the Cash Collateral Termination Date or anything herein to the contrary, all of the rights, remedies and benefits and protections provided to the Lender Parties or the First Lien Steering Committee under this Order shall survive the Cash Collateral Termination Date.

11. <u>No Granting of Liens</u>. Except as expressly provided in this Order, the Debtors shall be enjoined and prohibited at any time during the Chapter 11 Cases from granting claims or liens in the Prepetition Collateral or any portion thereof to any other parties pursuant to sections 364(d), 503(b) or 507(b) of the Bankruptcy Code or otherwise

12. <u>Successors and Assigns</u>. The provisions of this Order shall be binding upon and inure to the benefit of each of the Lender Parties, the First Lien Steering Committee and Debtors and their respective successors and assigns (including any chapter 7 trustee or other trustee or fiduciary hereafter appointed as a legal representative of any Debtor or with respect to the property of the estates of any Debtor).

13. <u>No Discharge</u>. The obligations of the Debtors under this Order shall not be discharged (and the Debtors waive the right to seek or obtain a discharge of such obligations under section 1141 of the Bankruptcy Code or otherwise) until all obligations arising or payable under this Order are indefeasibly paid in full in cash by the Debtors.

14. <u>No Modification</u>. Based upon the findings set forth in this Order, in the event that any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any lien or claim authorized or created hereby or thereby or any First Priority Indebtedness or Second Priority Indebtedness incurred hereunder. Notwithstanding any such modification, amendment or vacation, any First Priority Indebtedness or

Second Priority Indebtedness incurred and any claim granted to the Lender Parties hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Order, and the Lender Parties and First Lien Steering Committee shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein and therein, with respect to any such First Priority Indebtedness and claims.

15. <u>No Setoff</u>.  Notwithstanding anything herein to the contrary, this Order shall not require Lender Parties to turn over or release to any party any Cash Collateral in its possession as of the Petition Date that is subject to setoff under the Bankruptcy Code; *provided* that, until the occurrence of a Cash Collateral Termination Event, none of the Lender Parties shall exercise, or seek to exercise, any such setoff rights; *provided further* that all parties hereby reserve all of their rights as to whether any such setoff is valid and enforceable under the Bankruptcy Code and applicable nonbankruptcy law.

16.    This Order is hereby deemed effective immediately pursuant to Federal Bankruptcy Rules of Procedure §6004(h).

17.    The provisions of this Order, including the grant of claims and liens to or for the benefit of the Lender Parties, and any actions taken pursuant hereto shall survive the entry of any order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

18.    Notwithstanding anything contained to the contrary herein, none of the provisions in this Order shall apply to the Second Lien Lenders if it is determined that the Second Priority Liens are wholly unsecured obligations of the Debtors pursuant to section 506 of the Bankruptcy Code pursuant to Court order.

19.    Any notice required to be provided to the Lender Parties under this Order shall be deemed effective if provided to counsel to the Agent and Second Lien Agent, as applicable, and

any notice required to be provided to the First Lien Committee under this Order shall be deemed effective if provided to Akin Gump.

20. A final hearing on the Debtors' authority to use Cash Collateral shall be held before this Court on April 28, 2009. As notice of a final hearing was previously provided to all parties in interest on April 9, 2009, no further notice of the continuance of the final hearing shall be necessary.

21. This Order shall constitute findings of fact and conclusions of law.

DATED: April 17, 2009

APPROVED

By: /s/Brett Axelrod
GREENBERG TRAURIG
Brett Axelrod
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169
*Counsel for Sagebrush Enterprises Inc.*

APPROVED

By: /s/Philip C. Dublin
AKIN GUMP STRAUSS
HAUER & FELD LLP
Ira S. Dizengoff (NY Bar No. 2565687)
Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 268437)
One Bryant Park
New York, NY 10036
*Counsel for the First Lien Steering Committee*

APPROVED

By: /s/ Don S. De Amicis
ROPES & GRAY LLP
Don S. De Amicis
Mark R. Somerstein
Benjamin L. Schneider
1211 Avenue of the Americas
New York, NY 10036-8704

APPROVED

By: [signature]
United States Trustee
300 Las Vegas Blvd. S., Ste. 4300
Las Vegas, NV 89101

APPROVED

By: /s/Ramon M. Naguiat
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Ramon M. Naguiat
300 S. Grand Ave., #3400
Los Angeles, CA 90071
*Co-Counsel for Credit Suisse, Cayman Islands Branch, as Agent for First Lien Lenders*

LV 418,762,738v1 4-8-09
DOCS_LA 208680 6

*Counsel for Wells Fargo, N.A., as Agent for
the Second Lien Lenders*

Submitted by:

LARSON & STEPHENS

By:  /s/ Zachariah Larson, Esq.
　　　Zachariah Larson, Esq. (NV Bar No 7787)
　　　Kyle O. Stephens, Esq. (NV Bar No. 7928)
　　　810 S. Casino Center Blvd., Ste. 104
　　　Las Vegas, NV  89101
　　　(702) 382-1170 (Telephone)
　　　(702) 382-1169
　　　*Proposed Attorney for Debtor*

# # #

# EXHIBIT A

Rhodes Homes 13 Week Cash Flow Forecast
Prepared 4/8/2009

**Lines 8,46:**

**Tuscany Golf Course Schedule A - Detailed Revenue and Cost Assumptions**

**Prepared 4/5/2009**

| Week Ending | 1 4/3/2009 | 2 4/10/2009 | 3 4/17/2009 | 4 4/24/2009 | 5 5/1/2009 | 6 5/8/2009 | 7 5/15/2009 | 8 5/22/2009 | 9 5/29/2009 | 10 6/5/2009 | 11 6/12/2009 | 12 6/19/2009 | 13 6/26/2009 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | $ 21,000 | $ 85,000 | $ 70,200 | $ 68,000 | $ 68,000 | $ 65,000 | $ 62,000 | $ 73,000 | $ 65,000 | $ 60,000 | $ 50,000 | $ 51,000 | $ 54,000 |
| **Expenses** | | | | | | | | | | | | | |
| Payroll | - | - | 49,560 | - | 49,560 | - | 49,560 | - | 49,560 | - | 43,660 | - | 43,660 |
| Golf Course | - | - | 33,400 | 20,000 | 15,000 | 13,000 | 15,000 | 20,000 | 13,000 | 13,000 | 13,000 | 20,000 | 13,000 |
| Water | - | - | 35,000 | - | 50,000 | - | - | - | - | 80,000 | - | - | - |
| Health Insurance | - | - | - | - | 9,450 | - | - | - | - | 9,450 | - | - | - |
| Equipment Leases | - | - | 18,199 | - | - | - | 18,199 | - | - | - | - | 18,199 | - |
| Utilities | - | - | 7,000 | - | 8,000 | - | - | - | - | 9,000 | - | - | - |
| **Total Expenses** | $ - | $ - | $ 143,159 | $ 20,000 | $ 132,010 | $ 13,000 | $ 82,759 | $ 20,000 | $ 62,560 | $ 111,450 | $ 56,660 | $ 38,199 | $ 56,660 |