James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: jstang@pszjlaw.com
        scho@pszjlaw.com
        wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com

[Proposed] Attorneys for Debtors and Debtors in Possession

E-File: April 23, 2009

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes, et al.,[1] | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11 |

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

73203-001\DOCS_LA:200768.9

|  |  |
|---|---|
| Debtors. | |
| Affects:<br>☒   All Debtors<br>☐   Affects the following Debtor(s) | Hearing Date:  May 15, 2009<br>Hearing Time:  1:30 p.m.<br>Courtroom 1 |

### MOTION FOR AUTHORIZATION TO PAY SALARY TO JAMES M. RHODES

The above-captioned debtors and debtors in possession (the "Debtors") hereby move this court for an order authorizing the Debtors to pay the salary of the Debtors' president, James M. Rhodes, through June 26, 2009, the time period of the Debtors' 13 week budget (*see* docket number 81), or any such further time period as authorized by this Court or agreed upon by the Debtors' senior secured first lien lenders pursuant to any cash collateral order entered in these cases.  This motion is based upon the attached points and authorities and records on file with this Court.

**DATED** this 23rd day of April, 2009.

**LARSON & STEPHENS**

  /s/ Zachariah Larson, Esq.
Zachariah Larson, Bar No. 7787
Kyle O. Stephens, Bar No. 7928
810 S. Casino Center Blvd., Suite 104
Las Vegas, NV  89101
702/382-1170
[Proposed] Attorneys for Debtors and
Debtors in Possession

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

73203-001\DOCS_LA:200768.9

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## PRELIMINARY STATEMENT

Through this motion (the "Motion") the Debtors are seeking authority to pay the $400,000 salary of the Debtors' founder and president, James M. Rhodes, through June 26, 2009, the time period of the Debtors' 13 week budget [docket number 81] (the "13 Week Budget"), or any such further time period as authorized by this Court or agreed upon by the Debtors' senior secured first lien lenders pursuant to any cash collateral order entered in these cases.[2]  As demonstrated below, Mr. Rhodes' skills, knowledge and relationships are essential to the Debtors' ability to implement the 13 Week Budget.  During this time period, Mr. Rhodes also will be instrumental in enabling the Debtors to remove $30 million in performance bonds.  Mr. Rhodes' salary is commensurate to the services he will render to the estates and comparable to the salary of other leaders of homebuilders.  Accordingly, the Debtors respectfully submit that Mr. Rhodes' salary is reasonable and should be authorized by the Court.

## II.

## FACTUAL BACKGROUND

**A.    General Background**

1.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and this Motion is properly in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    On March 31, 2009, the above-captioned Debtors (the "Primary Filers") except Tuscany Golf Country Club, LLC, Pinnacle Grading, LLC, and Rhodes Homes Arizona, LLC (the "Secondary Filers") filed voluntary petitions for relief under chapter 11 of title 11 of the

---

[2]  While the Debtors are seeking approval to pay Mr. Rhodes' salary for the 13 week period, the Debtors currently have authority to use cash collateral only through the next April 28 hearing date, absent further order of the Court or consent of the first lien lenders.

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Bankruptcy Code. On April 1, 2009, the Secondary Filers filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. All references to Petition Date herein shall mean March 31, 2009 for the Primary Filers or April 1, 2009 for the Secondary Filers, as applicable. The Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.  The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of James M. Rhodes in Support of First Day Motions* [docket number 34] filed previously with the Court.

**B.    Procedural Background**

4.  On April 1, 2009, the Debtors filed their *Motion Pursuant To Bankruptcy Code Sections 105(A), 363, And 507(A) For An Order Authorizing The Debtors To (I) Pay Prepetition Wages, Salaries, Employee Benefits, And Other Compensation; (II) Remit Withholding Obligations; (III) Maintain Employee Compensation And Benefit Programs And Pay Related Administrative Obligations; And (IV) Have Applicable Banks And Other Financial Institutions Receive, Process, Honor And Pay Certain Checks Presented For Payment And Honor Certain Fund Transfer Benefits* [docket number 16] (the "Wages Motion"). In response to the Wages Motion, the Office of the United States Trustee (the "UST") requested that the salary of Mr. Rhodes not be paid through the Wages Motion and any order thereon, but rather be the subject of a separate motion for insider compensation. The Debtors agreed to the UST's request.

5.  As a result, the *Order Granting Debtors' Motion Pursuant To Bankruptcy Code Sections 105(a), 363, And 507(a) For An Order Authorizing The Debtors To (I) Pay Prepetition Wages, Salaries, Employee Benefits, And Other Compensation; (II) Remit Withholding Obligations; (III) Maintain Employee Compensation And Benefits* [docket number 19] (the "Wages Order") provides that the Debtors are authorized to pay wages on a postpetition basis; however, "any compensation for post-petition [w]ages for James M. Rhodes . . . shall be made by separate application of the Debtors by way of motion for insider compensation." This Motion is being filed in response to the procedure created by the Wages Order.

### C. The Debtors' President.

6. Mr. Rhodes is the founder and president of The Rhodes Companies, LLC and its affiliated Debtors. He has been in the Las Vegas home building industry for 32 years and, as a result, has an exhaustive knowledge of the Las Vegas real estate and construction market. Mr. Rhodes, who began his career as a carpenter, also has a thorough expertise in construction. He has the unique ability to build homes in 30-60 days rather than the industry average of 90-120 days. He has planned, designed, constructed and sold over 7,000 homes in Las Vegas with revenues of over $2.4 billion. Mr. Rhodes is a hands-on manager and is involved in every facet of the Debtors' business.

7. Mr. Rhodes was primarily responsible for the design of the Debtors' master plans and for each standalone project. His responsibilities included the design and construction of homes. In addition, he was responsible for infrastructure design and construction, including, but not limited to, major road infrastructure, street intersections, schools, fire stations, water capacity and sewage treatment. Mr. Rhodes is the only person employed by the Debtors that knows the hundreds of process points that were and are necessary to create each development from scratch. He also has the relationships with the municipalities, utility providers, engineering companies and other constituencies necessary to bring a development to fruition.

8. As demonstrated in the Debtors' 13 week budget [docket number 81] (the "13 Week Budget"), during the initial 13 weeks of these cases the Debtors are a) building 13 homes that have been sold but construction had not yet started, b) closing the sales of 17 homes that have been built and sold, and c) selling 13 homes that have been built, but not yet sold.

9. The services of Mr. Rhodes are essential to implementing the 13 Week Budget. Mr. Rhodes' duties will include:

- overseeing construction efforts;
- setting the construction schedules;
- reviewing bid schedules;
- reviewing marketing analyses and pricing;
- making decisions regarding product design;

- leveraging his relationships to obtain optimal input pricing;
- managing relationships with subcontractors;
- overseeing the Debtors' salesmen and determining optimal pricing of the homes being sold, supervising advertising campaigns;
- determining necessary entitlement and bond remediation work; and
- reviewing contracts for appropriate pricing and monitoring construction on a daily basis.

10. Moreover, all of the Debtors' executives report directly to Mr. Rhodes, including the sales manager, the director of land development, the heads of vertical and horizontal operations, the chief financial officer, the head of grading and the general counsel. Without Mr. Rhodes and his knowledge of all aspects of the business there would be a void in the coordination of the Debtors' high-level decision making.

11. The Debtors also anticipate removing approximately $30 million (out of a total of approximately $42 million) in completion bonds during the time period of the 13 Week Budget. The Debtors are informed and believe that Mr. Rhodes has guaranteed some or all of these bonds. In order to remove these bonds, Mr. Rhodes will supervise approximately $4.5 million in grading work (to complete approximately $23 million in grading contracts), as well as oversee the costing of this work. Mr. Rhodes has the knowledge and skill to make sure that the long list of items necessary to remove the bonds is implemented. Mr. Rhodes' services are essential to removing this $30 million contingent liability from the Debtors' balance sheets.

12. Mr. Rhodes' skills and knowledge are irreplaceable. Without his services, the ability of the Debtors to implement and execute their business plan will be jeopardized. Mr. Rhodes' leadership, industry knowledge and contacts are essential to the Debtors' reorganization.

13. Mr. Rhodes' pre-petition salary was $400,000 per year, which is commensurate with the salaries of other leaders of homebuilders. For example, the CEO of the private homebuilder in the *In re Woodside Homes*, TN 08-07254 (GP), bankruptcy case, filed on

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

September 24, 2008, earned a salary of $20,626 semi-monthly, or $486,384 annually.[3]  In the *Tousas, Inc. et al*. bankruptcy cases, where the parent, Tousas, Inc., filing on behalf of its subsidiaries is a public company, the President of Preferred Builders Realty, Inc. earned an annual salary of $1,288,408; the President of Engle Homes Delaware, Inc. earned an annual salary of $500,000; and the Executive Vice President of Engle Homes Residential Construction, LLC earned an annual salary of $625,000.[4]  In 2008, the CEOs of various public homebuilders not in chapter 11 were as follows:

| Name | Title | Company | Market Cap | Base Salary[5] |
|---|---|---|---|---|
| Jeff Orleans | CEO | Orleans Homebuilders | 46.8m | $1,100,000 |
| Ian McCarthy | CEO | Beazer Homes | 56.1m | $1,200,000 |
| Ian Cockwell | CEO | Brookfield Homes | 107.3m | $350,000 |
| Robert Schottenstein | CEO | M/I Homes | 137m | $750,000 |
| Steve Hilton | CEO | Meritage Homes | 454.1m | $1,017,500 |
| Chad Dreier | CEO | Ryland Group | 807.7m | $1,000,000 |
| Stuart Miller | CEO | Lennar Corp. | 1.2b | $1,000,000 |
| Jeff Mezger | CEO | KB Homes | 1.2b | $1,000,000 |
| Robert Toll | CEO | Toll Brothers | 3.0b | $1,300,000 |
| D.R. Horton | Board Chairman | DR Horton | 3.5b | $400,000 |

14. Pursuant to the Wages Order, Mr. Rhodes has not yet been paid for his postpetition services to the Debtors' estates, which have totaled approximately 40 hours per week.  The Debtors, in their business judgment, believe it is in the best interests of their estates and their creditors to continue to employ Mr. Rhodes at his salary at $400,000 per year, subject to Bankruptcy Court approval, through June 26, 2009, the time period of the Debtors' 13 Week Budget.  Losing the services of Mr. Rhodes at this time, during these crucial early stages of

---

[3]  See *Notice of Setting/Increasing Insider Compensation*, a copy of which is attached hereto as Exhibit A.  The Debtors are filing a separate request for judicial notice.

[4]  See *Consolidated Chapter 11 Case Management Summary*, a copy of which is attached hereto as Exhibit B.  The Debtors are filing a separate request for judicial notice.

[5]  See publicly filed proxy statements attached hereto as Exhibit C.  The Debtors are filing a separate request for judicial notice.

bankruptcy, will be detrimental to the Debtors, their estates, and their creditors and will hurt the Debtors' efforts to successfully reorganize.

15.     Mr. Rhodes is not a personal guarantor of the First Lien or Second Lien or Swap Agreement indebtedness.

## III.

## LEGAL ARGUMENT

**A.     The Proposed Salary to Mr. Rhodes, Which Is the Same Salary as Prepetition, Is Reasonable and Benefits the Estates.**

In *In re All Seasons Industries, Inc.*, 121 B.R. 822, 826-7 (Bankr. N.D.Ind. 1990), the debtor sought to employ its prepetition management at the same compensation as prior to the case. The Court stated that unlike the prior Bankruptcy Act, neither the Bankruptcy Code nor the Rules of Procedure require court approval of the compensation of insiders; rather, such compensation need only be disclosed. 121 B.R. at 826. Although the court may, upon request, review the reasonableness of the compensation being paid to a chapter 11 debtor's insider management, the debtor in possession is entitled to a presumption that the prepetition level of compensation is reasonable. *Id.* Where insider compensation is being continued on the same terms and conditions as existed prior to the date of the petition, the party objecting to that compensation has the initial burden of presenting evidence that it is unreasonable or somehow improper. *Id.* At a minimum the objecting party must introduce evidence of the prima facie appearance of abuse, or of exigent circumstances beyond the fact of bankruptcy or financial troubles. *Id.* Once this is done, the debtor bears the ultimate burden of proving that its insider compensation is reasonable. 121 B.R. at 827. As the objecting creditor failed to rebut the presumption, the Court approved the motion to continue compensating insider management in the same manner as prior to the filing of the chapter 11 case. *Id.*

As Mr. Rhodes' salary presented above is the same as his prepetition salary, there is the presumption that his salary is reasonable. Furthermore, the Debtors have provided evidence that demonstrates that Mr. Rhodes' salary is commensurate with the salaries of other leaders of homebuilders. His salary represents a fraction of the gross proceeds of the Debtors' business.

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

73203-001\DOCS_LA:200768.9

6

The loss of Mr. Rhodes' services would substantially harm the Debtors' ability to reorganize. Because of his extensive institutional knowledge and 32 years of experience in the Las Vegas housing market, Mr. Rhodes is irreplaceable, even by outside consultants who would be more expensive than Mr. Rhodes' proposed salary. Accordingly, it is reasonable for the Debtors to pay Mr. Rhodes' salary as requested herein. *See* 11 U.S.C. § 1129(a)(4) (applying reasonableness standard).

## IV.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court authorize the payment of Mr. Rhodes' salary.

**DATED** this 23rd day of April, 2009.

**LARSON & STEPHENS**

 /s/ Zachariah Larson, Esq.
Zachariah Larson, Bar No. 7787
Kyle O. Stephens, Bar No. 7928
810 S. Casino Center Blvd., Suite 104
Las Vegas, NV  89101
702/382-1170
[Proposed] Attorneys for Debtors and
Debtors in Possession

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

73203-001\DOCS_LA:200768.9

7