James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
       scho@pszjlaw.com
       wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702/382.1170
Facsimile: 702/382.1169
Email: zlarson@lslawnv.com

[Proposed] Attorneys for Debtors and
Debtors in Possession

E-File: April 22, 2009

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-S-09-14814-LBR (Jointly Administered) |
| THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1] | Chapter 11 |
| Debtors. | DATE: May 15, 2009<br>TIME: 1:30 p.m.<br>PLACE: Courtroom 1 |
| Affects:<br>☒ All Debtors<br>☐ Affects the following Debtor(s) | |

---

[1] The Debtors in these cases, along with their case numbers are: Apache Framing, LLC (Case No. 09-14818); Batcave, LP (Case No. 09-14861); Bravo, Inc. (Case No. 09-14825); C & J Holdings, Inc. (Case No. 09-14843); Chalkline, LP (Case No. 09-14862); Elkhorn Investments, Inc. (Case No. 09-14837); Elkhorn Partners, A

## DECLARATION OF JAMES M. RHODES IN SUPPORT OF MOTION FOR AUTHORIZATION TO PAY SALARY TO JAMES M. RHODES

I, James M. Rhodes, declare as follows:

1. I am the founder and president of The Rhodes Companies, LLC and its affiliated companies (together with its affiliates, "Rhodes Homes" or "Company" or the "Debtors"). The facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto. I submit this declaration in support of the Debtors' *Motion For Authorization To Pay Salary To James M. Rhodes*, which is being submitted concurrently herewith.

2. On March 31, 2009, the Debtors (the "Primary Filers") except Tuscany Golf Country Club, LLC, Pinnacle Grading, LLC, and Rhodes Homes Arizona, LLC (the "Secondary Filers") filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code. On April 1, 2009, the Secondary Filers filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. All references to Petition Date herein shall mean March 31, 2009 for the Primary Filers or April 1, 2009 for the Secondary Filers, as applicable. The Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. In response to the Debtors' *Motion Pursuant To Bankruptcy Code Sections 105(A), 363, And 507(A) For An Order Authorizing The Debtors To (I) Pay Prepetition Wages, Salaries, Employee Benefits, And Other Compensation; (II) Remit Withholding Obligations; (III)*

---

Nevada Limited Partnership (Case No. 09-14828); Geronimo Plumbing LLC (Case No. 09-14820); Glynda, LP (Case No. 09-14865); Gung-Ho Concrete LLC (Case No. 09-14822); Heritage Land Company, LLC (Case No. 09-14778); Jackknife, LP (Case No. 09-14860); Jarupa, LLC (Case No. 09-14839); Overflow, LP (Case No. 09-14856); Parcel 20, LLC (Case No. 09-14848); Pinnacle Grading, LLC (Case No. 09-14887); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Rhodes Design and Development Corporation (Case No. 09-14846); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Rhodes Realty, Inc. (Case No. 09-14841); The Rhodes Companies, LLC (Case No. 09-14814); Six Feathers Holdings, LLC (Case No. 09-14833); Tick, LP (Case No. 09-14866); Tribes Holdings, LLC (Case No. 09-14817); Tuscany Acquisitions, LLC (Case No. 09-14853); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Golf Country Club, LLC (*Case No. 09-14884*) and Wallboard, LP (Case No. 09-14858).

*Maintain Employee Compensation And Benefit Programs And Pay Related Administrative Obligations; And (IV) Have Applicable Banks And Other Financial Institutions Receive, Process, Honor And Pay Certain Checks Presented For Payment And Honor Certain Fund Transfer Benefits* [docket number 16] (the "Wages Motion"), the Office of the United States Trustee (the "UST") requested that my salary not be paid through the Wages Motion and any order thereon, but rather be the subject of a separate motion for insider compensation. The Debtors agreed to the UST's request.

4.     I am the founder and president of The Rhodes Companies, LLC and its affiliated Debtors. I have been in the Las Vegas home building industry for 32 years and, as a result, have an exhaustive knowledge of the Las Vegas real estate and construction market. I began my career as a carpenter, and have a thorough expertise in construction. I have the ability to build homes in 30-60 days rather than the industry average of 90-120 days. I have planned, designed, constructed and sold over 7,000 homes in Las Vegas with revenues of over $2.4 billion. I am involved in every facet of the Debtors' business.

5.     I was primarily responsible for the design of the Debtors' master plans and for each standalone project. My responsibilities included the design and construction of homes. In addition, I was responsible for infrastructure design and construction, including, but not limited to, major road infrastructure, street intersections, schools, fire stations, water capacity and sewage treatment.

6.     As demonstrated in the Debtors' 13 week budget [docket number 81] (the "13 Week Budget"), during the initial 13 weeks of these cases the Debtors are a) building 13 homes that have been sold but construction had not yet started, b) closing the sales of 17 homes that have been built and sold, and c) selling 13 homes that have been built, but not yet sold.

7.     My duties in implementing the 13 Week Budget include:
- overseeing construction efforts;
- setting the construction schedules;
- reviewing bid schedules;
- reviewing marketing analyses and pricing;

- making decisions regarding product design;
- leveraging his relationships to obtain optimal input pricing;
- managing relationships with subcontractors;
- overseeing the Debtors' salesmen and determining optimal pricing of the homes being sold, supervising advertising campaigns;
- determining necessary entitlement and bond remediation work; and
- reviewing contracts for appropriate pricing and monitoring construction on a daily basis.

8. All of the Debtors' executives report directly to me, including the sales manager, the director of land development, the heads of vertical and horizontal operations, the chief financial officer, the head of grading and the general counsel.

9. The Debtors also anticipate removing approximately $30 million (out of a total of approximately $42 million) in completion bonds during the time period of the 13 Week Budget. In order to achieve this, I will supervise approximately $4.5 million in grading work (to complete approximately $23 million in grading contracts), as well as oversee the costing of this work. I have the knowledge and skill to make sure that the long list of items necessary to remove the bonds is implemented.

10. My pre-petition salary was $400,000 per year, which is commensurate with the salaries of other leaders of homebuilders.

11. Pursuant to the Wages Order, I have not yet been paid for my postpetition services to the Debtors' estates, which have totaled approximately 40 hours per week.

12. My salary represents a fraction of the gross proceeds of the Debtors' business.

13. I am not a personal guarantor of the First Lien or Second Lien or Swap Agreement indebtedness.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 22nd day of April, 2009, at Las Vegas, Nevada.

_____
James M. Rhodes