James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
       scho@pszjlaw.com
       wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702/382.1170
Facsimile: 702/382.1169
Email: zlarson@lslawnv.com

E-File: April 22, 2009

[Proposed] Attorneys for Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]

    Debtors.

Affects:

☒ All Debtors
☐ Affects the following Debtor(s)

Case No.: BK-S-09-14814-LBR
(Jointly Administered)

Chapter 11

DATE: May 15, 2009
TIME: 1:30 p.m.
PLACE: Courtroom 1

---

[1] The Debtors in these cases, along with their case numbers are: Apache Framing, LLC (Case No. 09-14818); Batcave, LP (Case No. 09-14861); Bravo, Inc. (Case No. 09-14825); C & J Holdings, Inc. (Case No. 09-14843); Chalkline, LP (Case No. 09-14862); Elkhorn Investments, Inc. (Case No. 09-14837); Elkhorn Partners, A

## DECLARATION OF PAUL DAVID HUYGENS IN SUPPORT OF MOTION FOR AUTHORIZATION TO PAY SALARY TO JAMES M. RHODES

I, Paul David Huygens, declare as follows:

1.  I am a Principal of Province Real Estate Advisors LLP ("Province"), which is acting as work-out consultant to the Debtors. The facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto.

2.  Province provides real estate advisory services, investments, portfolio workouts and asset management for real estate companies located primarily in Southern Nevada.

3.  Prior to founding Province, I was the Debtors' chief financial officer for three years from 2004 through 2007. I was responsible for all areas of finance, accounting and treasury, including cash management, sourcing and closing debt transactions. I also worked extensively with managing equity partner relationships and oversaw the areas of sales, marketing, escrow, financial analysis and golf course and trade subsidiary performance.

4.  This declaration is submitted in support of the Debtors' *Motion For Authorization To Pay Salary To James M. Rhodes* (the "Motion"), which is being submitted concurrently herewith.

5.  James M. Rhodes is the only person employed by the Debtors that knows the hundreds of process points that were and are necessary to create each development from scratch. He also has the relationships with the municipalities, utility providers, engineering companies and other constituencies necessary to bring a development to fruition.

---

Nevada Limited Partnership (Case No. 09-14828); Geronimo Plumbing LLC (Case No. 09-14820); Glynda, LP (Case No. 09-14865); Gung-Ho Concrete LLC (Case No. 09-14822); Heritage Land Company, LLC (Case No. 09-14778); Jackknife, LP (Case No. 09-14860); Jarupa, LLC (Case No. 09-14839); Overflow, LP (Case No. 09-14856); Parcel 20, LLC (Case No. 09-14848); Pinnacle Grading, LLC (Case No. 09-14887); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Rhodes Design and Development Corporation (Case No. 09-14846); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Rhodes Realty, Inc. (Case No. 09-14841); The Rhodes Companies, LLC (Case No. 09-14814); Six Feathers Holdings, LLC (Case No. 09-14833); Tick, LP (Case No. 09-14866); Tribes Holdings, LLC (Case No. 09-14817); Tuscany Acquisitions, LLC (Case No. 09-14853); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Golf Country Club, LLC *(Case No. 09-14884)* and Wallboard, LP (Case No. 09-14858).

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

6.     As demonstrated in the Debtors' 13 week budget [docket number 81] (the "13 Week Budget"), during the initial 13 weeks of these cases the Debtors are a) building 13 homes that have been sold but construction had not yet started, b) closing the sales of 17 homes that have been built and sold, and c) selling 13 homes that have been built, but not yet sold.

7.     The services of Mr. Rhodes, as described in his Declaration in support of the Motion, are essential to implementing the 13 Week Budget. His duties in implementing the 13 Week Budget include:

- overseeing construction efforts;
- setting the construction schedules;
- reviewing bid schedules;
- reviewing marketing analyses and pricing;
- making decisions regarding product design;
- leveraging his relationships to obtain optimal input pricing;
- managing relationships with subcontractors;
- overseeing the Debtors' salesmen and determining optimal pricing of the homes being sold, supervising advertising campaigns;
- determining necessary entitlement and bond remediation work; and
- reviewing contracts for appropriate pricing and monitoring construction on a daily basis.

14.     All of the Debtors' executives report directly to Mr. Rhodes, including the sales manager, the director of land development, the heads of vertical and horizontal operations, the chief financial officer, the head of grading and the general counsel. Without Mr. Rhodes and his knowledge of all aspects of the business there would be a void in the coordination of the Debtors' high-level decision making.

15.     The Debtors also anticipate removing approximately $30 million (out of a total of approximately $42 million) in completion bonds during the time period of the 13 Week Budget. In order to achieve this, Mr. Rhodes will supervise approximately $4.5 million in grading work (to complete approximately $23 million in grading contracts), as well as oversee the costing of

this work. Mr. Rhodes has the knowledge and skill to make sure that the long list of items necessary to remove the bonds is implemented. Mr. Rhodes' services are essential to removing this $30 million contingent liability from the Debtors' balance sheets.

16. Mr. Rhodes' skills are irreplaceable. Without his services, the ability of the Debtors to implement and execute their business plan will be jeopardized. Mr. Rhodes' leadership, industry knowledge and contacts are essential to the Debtors' reorganization. Because of his extensive institutional knowledge and 32 years of experience in the Las Vegas housing market, Mr. Rhodes is irreplaceable, even by outside consultants who would be more expensive than Mr. Rhodes' proposed salary.

17. It is in the best interests of the Debtors' estates to continue to employ Mr. Rhodes at his salary at $400,000 per year, subject to Bankruptcy Court approval, through June 26, 2009, the time period of the Debtors' 13 Week Budget. Losing the services of Mr. Rhodes at this time, during these crucial early stages of bankruptcy, will be detrimental to the Debtors, their estates, and their creditors and will hurt the Debtors' efforts to successfully reorganize.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 22nd day of April, 2009, at Las Vegas, Nevada.

Paul Huygens

73203-001\DOCS_LA:200768.8

4