James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
       scho@pszjlaw.com
       wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702/382.1170
Facsimile: 702/382.1169
Email: zlarson@lslawnv.com

[Proposed] Attorneys for Debtors and
Debtors in Possession

E-File: April 23, 2009

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br><br>Debtors.<br><br>Affects: | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>Hearing Date: May 15, 2009 |

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); .Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

73203-002\DOCS_LA:201166.1

| ☒ All Debtors<br>☐ Affects the following Debtor(s) | Hearing Time: 1:30 p.m.<br>Courtroom 1 |

**APPLICATION FOR ORDER UNDER SECTION 327(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF ACCELERON GROUP, LLC AS VALUATION ADVISOR TO THE DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (the "Debtors") hereby submit this application (the "Application") pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors' retention and employment of Acceleron Group, LLC ("Acceleron") as valuation advisor *nunc pro tunc* to the date of the filing of these chapter 11 cases. In support of the Application, the Debtors respectfully represent as follows:

## I.

### Background

The Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Application is properly in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought herein are section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a).

On March 31, 2009, the above-captioned Debtors (the "Primary Filers") except Tuscany Golf Country Club, LLC, Pinnacle Grading, LLC, and Rhodes Homes Arizona, LLC (the "Secondary Filers") filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code. On April 1, 2009, the Secondary Filers filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. All references to Petition Date herein shall mean March 31, 2009 for the Primary Filers or April 1, 2009 for the Secondary Filers, as applicable. The Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

The factual background relating to the Debtors' commencement of these cases is set forth in detail in the Declaration *of James M. Rhodes in Support of First Day Motions* [docket number 34] filed previously with the Court.

## II.

## Relief Requested

By this Application, the Debtors seek to employ and retain Acceleron as their valuation advisor in connection with these chapter 11 cases pursuant to Bankruptcy Code § 327(a) and Bankruptcy Rules 2014 and 2016, and to obtain approval of the terms under which Acceleron will be compensated, at the expense of the Debtors' estates and on the terms set forth in the Engagement Letter (as defined below), Application and the Townsend Declaration, pursuant to § 327(a) of the Bankruptcy Code *nunc pro tunc* to the Petition Date.

## III.

## Basis for Relief

Under § 327 of the Bankruptcy Code, a trustee, debtor in possession and committee appointed under § 1102 of the Bankruptcy Code may employ one or more professionals, that do not hold or represent an interest adverse to the estate and that are disinterested persons, to assist such parties in carrying out their duties under the Bankruptcy Code.

Specifically, § 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a). Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. Proc. 2014.

### A. Engagement Letter

Acceleron was employed by the Debtors pursuant to an engagement letter dated March 31, 2009 (as attached to the Townsend Declaration as <u>Exhibit 1</u>, the "Engagement Letter").[2] Pursuant to the Engagement Letter, the Debtors have engaged Acceleron to provide valuation services to the Debtors during these chapter 11 cases as further described below.

### B. Qualifications

Acceleron is a financial restructuring firm headquartered in Las Vegas, Nevada. The company provides a range of services to enhance corporate performance, implement corporate turnarounds, and assist companies proceeding through both chapter 11 and chapter 7 processes. Acceleron's professionals also, when appropriate, serve as Chief Restructuring Officers or interim managers. Since the beginning of 2008, Acceleron has managed the restructuring activities for residential and commercial real estate companies with notional principal values of more than one billion dollars. Acceleron has, for example, served as restructuring advisors to large regional home builders in Nevada and Arizona, and has provided expert testimony and valuation services for single-family, multi-family and mixed use projects in Las Vegas. Acceleron has also been hired by the following chapter 11 debtors: Vantage Lofts, LLC – financial advisor; Millennium Properties, LLC and related entities – financial advisor; and Namwest, LLC and related entities - financial advisor.

### C. Services To Be Rendered

The Debtors have determined in their business judgment that it is necessary and in the best interests of the Debtors' estates to retain Acceleron as valuation advisor effective as of the Petition Date to provide the following services, which Acceleron will perform at the direction and discretion of the Debtors:

    (a) Prepare valuation of Debtors that own real property to support their reorganization;

---

[2] The summary descriptions provided herein are qualified in their entirety by the terms of the attached Engagement Letter.

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

    (b)    Assist the Debtors and counsel on the coordination of resources related to the Debtors' cases;

    (c)    Assist the Debtors in preparing valuation and/or financial information for distribution to stakeholders and other related parties;

    (d)    Analyze assets and liabilities, and analyze proposed transactions for which court approval is sought; and

    (e)    Attend meetings and assist in discussions with Debtors, lenders and other related parties.

The backgrounds of the professionals at Acceleron that will provide services in these cases are attached to the Townsend Declaration as <u>Exhibit 2</u>.

The Debtors believe, pursuant to their business judgment, that Acceleron is well situated to act as valuation advisor in the most efficient and cost-effective manner available to the Debtors, and that its retention of Acceleron as valuation advisor will provide efficiency that will directly inure to the benefit of the Debtors' estates and creditors. Acceleron's services for the Debtors are necessary to enable the Debtors to execute their duties as debtors in possession, including maximizing value to their creditors.

### D. **Compensation**

Acceleron intends to apply for compensation for professional services rendered in connection with these chapter 11 cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the District of Nevada and this Court's Orders, based upon its normal and usual billing rates. Acceleron will charge the Debtors rates consistent with the rates it charges its clients and in other bankruptcy and non-bankruptcy cases.

The professionals primarily working on these cases have the following hourly billing rates: Ken Wiles - $475; Mandy Townsend - $350; David Housey - $250; Matt Avery - $250; and Richard Humphrey - $250. Acceleron will also receive reimbursement of expenses, including travel, lodging, photocopying, witness fees, long distance telephone calls, postage, express mail and messenger charges, expenses for working meals and telecopier charges.

Acceleron will charge the Debtors for these expenses in a manner and at rates consistent with those it generally charges its other clients; provided, however, Acceleron will comply with the guidelines for charging bankruptcy estates for such expenses that are applicable in this District.

Prior to the Petition Date, Acceleron received a retainer (the "Retainer") in these cases in the amount of $20,000. During the twelve months prior to the Petition Date, Acceleron received $20,000 from the Debtors, including the Retainer. The Debtors do not owe Acceleron any monies as of the Petition Date. Acceleron is currently holding a Retainer in the amount of $20,000.

It is contemplated that Acceleron will seek interim compensation during these cases as permitted by sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016. Acceleron understands that its compensation in these cases is subject to the prior approval of this Court. No compensation will be paid except upon application to and approval by this Court after notice and a hearing in accordance with sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016.

**E.    Conflicts**

To the best of the Debtors' knowledge, and except as disclosed in the declaration of Mandy M. Townsend (the "Townsend Declaration") filed in support of this Application, Acceleron has no connection or relationship with any employee at the Office of the U.S. Trustee.

To the best of the Debtors' knowledge, except as otherwise disclosed in the Townsend Declaration submitted concurrently herewith, Acceleron has not represented the Debtors, their creditors, equity security holders, or any other parties in interest, or their respective attorneys, in any matter relating to the Debtors or their estates.

To the best of the Debtors' knowledge and based upon the Townsend Declaration, neither Acceleron nor any of its partners or other professionals is a creditor, equity security holder, or an "insider" of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.

To the best of the Debtors' knowledge and based upon the Townsend Declaration, neither Acceleron nor any of its partners or other professionals is or was, within two years before the date of the filing of the petition, a director, officer, or employee of the Debtors.

To the best of the Debtors' knowledge and based upon the Townsend Declaration, neither Acceleron nor any of its partners or other professionals has any interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason. Accordingly, Acceleron and its partners and other professionals are "disinterested persons" as that term is defined and used in sections 101(14) and 327 of the Bankruptcy Code.

Due to the nature of the services to be performed and the qualifications of Acceleron, the Debtors believe that it is appropriate and in the best interest of the estates that the Court approve Acceleron's employment as set forth in this Application.

WHEREFORE, the Debtors respectfully request that the Court enter an order (a) authorizing the Debtors to employ and retain Acceleron as the Debtors' valuation advisors *nunc pro tunc* to the Petition Date, and (b) granting such further relief as the Court deems appropriate.

Dated:   April 23, 2009

By _____
James M. Rhodes
Chief Executive Officer

# EXHIBIT 1



# ENGAGEMENT AGREEMENT

This Engagement Agreement (the "Agreement") is made this 31st of March, 2009, by and between Heritage Land Company, LLC; The Rhodes Company, LLC; Rhodes Ranch General Partnership; Rhodes Design and Development Corporation; and Pinnacle Grading, LLC, all Nevada companies (collectively the "Client"), whose corporate address is 4730 S. Fort Apache Road #300, Las Vegas, Nevada and Acceleron Group, LLC, a Nevada Limited Liability Company ("AG"), whose address is 2791 Soft Horizon Way, Las Vegas, NV 89135 (each a "Party" and collectively the "Parties").

AG is in the business of consulting with companies regarding financial restructuring, liquidation and investment banking. Client has requested that AG provide certain advisory services specified below and AG has agreed to render said services in accordance with the terms and conditions of this Agreement. Now, therefore, in consideration of the mutual covenants and agreements contained herein, the Parties agree as follows:

I. **Engagement**
AG will render valuation services for the Client's real estate entities. Specifically, AG's services will include:
- Prepare valuation of real estate entities to support bankruptcy proceedings;
- Assist the client and counsel on the coordination of resources related to the bankruptcy proceedings;
- Assist the client in preparing valuation and/or financial information for distribution to stakeholders and other related parties;
- Analysis of various assets and liabilities, and analysis of proposed transactions for which court approval is sought;
- Attend meetings and assist in discussions with client, banks and other related parties.

**Representative Firm Qualifications**
- Led restructuring efforts on more than $1 billion in real estate related liabilities since January 2008;
- Expert testimony experience in real restate related litigation and bankruptcy proceedings;
- More than fifty years of valuation experience;
- PhD in Finance;

1 of 7

_____     _____
AG              Client



- CFA – Charter Financial Analyst;
- Assistant Professor of Finance at the University of North Carolina, 1990 – 1995, Adjunct Professor of Finance at the University of North Carolina, 1999 – 2007; and
- Fixed Income Portfolio Management, 1990 to present;
- Wall Street Analyst experience.

2. **Term of Engagement**
The retention of AG by Client shall commence on 31st of March, 2009 and, if not terminated, shall continue for a period of 6 months ("Term"). This Agreement shall not be renewed or extended unless consented to in writing by both the Client and AG. With written notice, this agreement can be terminated at any time by either Party. If the Client terminates the agreement prior to the end of the term, all payments to AG will be considered earned and paid in full without offset or deduction.

3. **Compensation/Expenses**
Client agrees to pay AG an initial retainer in the amount of twenty thousand dollars ($20,000) for the services described in Section 1 and any out of pocket expenses incurred. Work will be performed on an hourly basis in accordance with the rates provided below. Invoices will be provided on weekly basis for the previous week's work and will be due immediately upon receipt. The retainer will be applied to the final invoice.

| | |
|---|---|
| Managing Directors | $350 to $500 |
| Directors | $250 to $400 |
| Associate / Analyst | $150 to $300 |

4. **Relationship of the Parties**
AG shall act solely as an independent contractor, and nothing contained in this Agreement shall at any time be construed or interpreted as creating the relationship between the Client and AG, or between Client and any employees or agents of AG, of employer and employee, partners, principal and agent, or joint ventures.

All taxes applicable to amounts received by AG pursuant to this Agreement shall be the liability of AG. The Client shall not withhold or pay any amounts for federal, state, or municipal income taxes, FICA, unemployment, or workers' compensation insurance. AG agrees to pay and hold Client harmless from any and all state, federal or local taxes or state, federal or local insurance premiums resulting from the payments made by Client to AG.

2 of 7

_____    _____
AG                                              Client



The Client recognizes that AG is in the business of advising and consulting with other businesses, some of which businesses may be in competition with the Client. The Client acknowledges and agrees that AG may advise and consult with other businesses including those which may be in competition with the Client, and shall not be required to devote its full time and resources to performing services on behalf of the Client under this Agreement. AG shall only be required to expend such time and resources as are reasonably appropriate to advise and assist the Client as provided herein.

5. **Binding Effect; Benefit**
This Agreement shall inure to the benefit of and be binding upon the Client, its successors and assigns, and AG, its successors and assigns. AG may not assign this Agreement without the written consent of the Client.

6. **Entire Agreement**
This Agreement contains the entire agreement among the Parties and may not be amended, modified, or supplemented in any respect except by subsequent written agreement entered into by both Parties.

7. **Governing Law and Jurisdiction**
This Agreement shall be construed in accordance with and governed by the laws of Nevada. The Parties agree that the appropriate courts of Clark County, Nevada shall have jurisdiction over any litigation or dispute brought with respect to this Agreement, and each party hereby waives any objection to such jurisdiction or venue that it may otherwise have.

8. **Waiver**
Failure to enforce one or more breaches of any provision of this Agreement shall not be deemed a waiver of the right to enforce any such provision with respect to any other instance.

9. **Severability**
Each of the provisions of this Agreement is severable. In the event that any provision shall be found invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired; and all such provisions shall be enforced to the full extent permitted by law.

10. **Legal Fees**
In the event that at any time during the term of this Engagement Agreement, AG shall institute any action or proceeding against the Client, the Client agrees to reimburse AG for the reasonable expenses of attorney's fees and disbursements

3 of 7

_____    _____
AG                  Client



incurred therein. Such reimbursement shall include all legal expenses incurred prior to trial, at trial and at all levels of appeal and post-judgment proceedings.

11. **Notices**

Any notice or other communication under this Agreement shall be in writing and shall be sufficient if hand-delivered or sent by overnight express service to the Parties, at the addresses set forth at the beginning of this agreement, or at such other addresses as Client or AG may from time to time request in writing.

**If to the Client:**
James I. Stang
Partner
Pachulski, Stang, Ziehl & Jones
Los Angeles Office
10100 Santa Monica Boulevard
11th Floor
Los Angeles, California 90067
(310)-277-6910

**If to AG:**
Bryan R. Clark, Esq.
Cane Clark LLP
3273 E. Warm Springs Rd.
Las Vegas, NV 89120
702-312-6255 (phone)
702-944-7100 (fax)

13. **Counterparts/Facsimile**

This Agreement may be simultaneously executed in several counterparts, each of which so executed shall be deemed to be an original, and such counterparts together shall constitute but one and the same instrument. For purposes of execution of this Agreement, faxed signature pages shall be deemed the same as original signature pages.

14. **Confidential Information**

The Party receiving confidential information ("Recipient") agrees to hold the confidential information of the other Party ("Owner") in confidence and not to, directly or indirectly, copy, reproduce, distribute, transmit, duplicate, reveal, report, publish, disclose, cause to be disclosed, or otherwise transfer the Confidential Information to any third party, or utilize the confidential information

4 of 7

_____     _____
AG                  Client



for any purpose whatsoever other than as expressly contemplated by this Agreement. The Recipient may disclose the confidential information to its employees, contractors, attorneys, accountants, or financial advisors provided that such representatives are bound by written confidentiality obligations, or similarly bound by professional canons of ethics, with respect to such confidential information that are at least as protective of such information as the terms provided herein. The provisions of this Section shall not apply if and to the extent that: (i) the information communicated was already known to Recipient, without obligations to keep such information confidential, at the time of Recipient's receipt from Owner; (ii) the information communicated was received by Recipient in good faith from a third party lawfully in possession thereof and having no obligation to keep such information confidential; (iii) the information communicated was publicly known at the time of Recipient's receipt from Owner or has become publicly known other than by a breach of this Agreement; (iv) Recipient is ordered by an administrative agency or other governmental body of competent jurisdiction to disclose the confidential information, provided, however, that Recipient shall first notify the Owner prior to disclosure in order to give the Owner a reasonable opportunity to seek an appropriate protective order and shall disclose only that part of the confidential information which Recipient is required to disclose; or (v) the information was independently developed without reference to the confidential information. This obligation shall continue for the term of this Agreement and for a period of one (1) year thereafter

15. **Indemnification**

Each Party agrees to indemnify and hold harmless the other Party and its agents, and advisors, and their respective directors, officers, employees, agents and controlling persons (each such person is hereinafter referred to as an "Indemnified Party") from and against any and all losses, claims, damages, liabilities and expenses whatsoever, joint or several, to which any such Indemnified Party may become subject under any applicable federal or state law of the United States of America or otherwise, caused by, relating to or arising out of the engagement evidenced hereby. Each Party will reimburse Indemnified Party for any expenses (including reasonable counsel fees and expenses) as they are incurred by an Indemnified Party in connection with the investigation of, preparation for or defense of any pending or threatened claim or any action or proceeding arising therefrom, whether or not resulting in liability; provided, however, that at the time of such reimbursement the Indemnified Party shall have entered into an agreement with responsible Party whereby the Indemnified Party agrees to repay all such reimburse amounts if it is determined in a final judgment by a court of competent jurisdiction that the Indemnified Party is not entitled to indemnity from the responsible Party. Notwithstanding the foregoing, each Party shall not be liable to any Indemnified Party under the foregoing indemnification

5 of 7

AG            Client



provision to the extent that any loss, claim, damage, liability or expense results directly from any such Indemnified Party's willful misconduct or from gross negligence.

If for any reason (other than the final non-appealable judgment finding any Indemnified Party liable for losses, claims, damages, liabilities or expenses from its gross negligence or willful misconduct) the foregoing indemnity is unavailable to an Indemnified Party or insufficient to hold an Indemnified Party harmless, the responsible Party shall contribute to the amount paid or payable by an Indemnified Party. As a result of such loss, claim, damage, liability or expense in such proportion as is appropriate to reflect not only the relative benefits received each Party, but also the relative fault by each Party, as well as any relevant equitable considerations, subject to the limitation that in no event shall the total contribution of all Indemnified Parties to all such losses, claims, damages, liabilities or expenses exceed the amount of fees actually received and retained by each Party under this agreement.

16. **Final Agreement**
This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Agreement may be modified only by a further writing that is duly executed by both Parties.

17. **Authority to Sign**
Each of the persons signing on behalf of a Party and each Party hereto represents and warrants that the execution, delivery, and performance of this Agreement has been duly authorized and signed by a person who meets statutory or other binding approval to sign on behalf of its business organization as named in this Agreement and that this Agreement is binding and enforceable according to its terms.

_____
AG

_____
Client



IN WITNESS WHEREOF, the Parties have executed this Agreement.

| Heritage Land Company, LLC; The Rhodes Company, LLC; Rhodes Ranch General Partnership; Rhodes Design and Development Corporation; and Pinnacle Grading, LLC | Acceleron Group, LLC |

By: _____
Client  *Joseph H. Schramm Jr.*

By: _____
Mandy W. Townsend, Director

7 of 7

AG _____   Client _____

# EXHIBIT 2

## **BACKGROUND OF PROFESSIONALS**

Ken Wiles, Managing Director
Ken Wiles is an experienced entrepreneur, investment banker, asset manager and analyst. He has raised more than $125 million in equity and debt financing for rapidly growing companies and has been active in corporate control transactions valued at more than $1 billion. Dr. Wiles also has more than 20 years of experience leading operations, MIS, business development, and finance and accounting groups in private and public companies. He is the founder and partner of a money management firm that was established in 1990. Dr. Wiles holds a PhD in finance from The University of Texas at Austin and was a finance professor at The University of North Carolina at Chapel Hill, where he continues to serve as an Adjunct Professor of Finance. His research has been published in major finance journals. Dr. Wiles is a Magna Cum Laude graduate of The American University and is a Chartered Financial Analyst (CFA).

Mandy Townsend, Director
Mandy Townsend has over 10 years of experience providing restructuring, financial analysis, strategic planning, and negotiation services for operating companies. She has managed distressed corporate situations and assisted companies through Chapter 11 reorganization and Chapter 7 liquidations. Ms. Townsend has held interim executive management positions including Chief Restructuring Officer, Divisional Vice President, Vice President of Treasury and Chief Operating Officer. In prior roles, Ms. Townsend was previously with the restructuring organizations of Conway, MacKenzie Inc. and Plante & Moran. Ms. Townsend earned her Master of Business Administration degree from the Kenan-Flagler Business School at the University of North Carolina - Chapel Hill and her Bachelor of Science degree in Business Administration from the University of Nebraska - Lincoln.

Matt Avery, CPA, Vice President
Matt Avery is a seasoned accounting professional. He began his career in public accounting and worked at PricewaterhouseCoopers, Piercy Bowler Taylor & Kern and RMS McGladrey (formerly McGladrey & Pullen). Matt has also been the Controller of several companies in a range of industries. Matt is a Certified Public Accountant and earned his undergraduate degree from Brigham Young University.

David Housey, CPA
David Housey has worked as a public accountant, commercial banker, investment banker, equity research analyst and corporate advisor. Mr. Houséy is currently the president of a listed company, where he has led a restructuring and turnaround effort since mid 2007. He has worked with companies across myriad industries ranging from early stage technology to global finance. He has lived and worked in Buenos Aires, Caracas, London and New York and has done project work in China. Housey earned a bachelor of arts in accounting with High Honors from Michigan State University and a Master of Arts with Distinction in International Relations from the Johns Hopkins University.