**Entered on Docket**
**April 30, 2009**

_____
**Hon. Linda B. Riegle**
**United States Bankruptcy Judge**

James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
 scho@pszjlaw.com
 wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702/382.1170
Facsimile: 702/382.1169
Email: zlarson@lslawnv.com

[Proposed] Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: BK-S-09-14814-LBR |
| | (Jointly Administered) |
| THE RHODES COMPANIES, LLC, aka | Chapter 11 |
| "Rhodes Homes," et al.,[1] | |

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

Debtors.

Affects:

2  ☒  All Debtors

3  ☐  Affects the following Debtor(s)

DATE: 4-28-2009
TIME: 1:30 PM
Courtroom No. 1

4

### FINAL STIPULATED ORDER (I) AUTHORIZING

5  USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362 AND 363 OF
THE BANKRUPTCY CODE AND (II) GRANTING ADEQUATE PROTECTION AND

6  SUPER PRIORITY ADMINISTRATIVE EXPENSE PRIORITY TO PREPETITION
SECURED LENDERS RE DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS

7  PURSUANT TO SECTIONS 105, 361, 362, 363, AND 364 OF DEBTORS' MOTION FOR
INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364

8  OF THE BANKRUPTCY CODE (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL, (B) GRANTING  ADEQUATE PROTECTION TO THE DEBTORS'

9  PREPETITION SECURED PARTIES AND (C) SCHEDULING A FINAL HEARING;

10  MEMORANDUM OF POINTS AND AUTHORITIES FILED BY ZACHARIAH LARSON
ON BEHALF OF HERITAGE LAND COMPANY, LLC [RELATES TO HERITAGE

11  DOCKET NO. 35]

12  Upon the motion dated April 1, 2009 of the above captioned debtors and debtors in possession

13  (collectively, the "*Debtors*") for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363

14  and 364 of the Bankruptcy Code (A) Authorizing Debtors to Use Cash Collateral, (B) Granting

15  Adequate Protection to the Debtors' Prepetition Secured Parties and (C) Scheduling a Final

16  Hearing (the "*Motion*") [Heritage Docket No. 35]; and the Court having considered the Motion;

17

18  and an interim hearing to consider approval of the Motion having been held and concluded on

19  April 7, 2009 (the "*First Interim Hearing*"); and that certain *Stipulated Interim Order (I)*

20  *Authorizing Limited Use of Cash Collateral Pursuant to Sections 105, 361, 362 and 363 of the*

21  *Bankruptcy Code, (II) Granting Adequate Protection and Super Priority Administrative Expenses*

22  *Priority to Prepetition Secured Lenders, and (III) Scheduling a Final Hearing* having been entered

23

24  by the Court on April 10, 2009 (the "*First Interim Cash Collateral Stipulation*"); and notice of the

25

26  No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   final hearing on the Motion having been provided in accordance with the terms of the First Interim

2   Cash Collateral Stipulation on April 9, 2009; and a further interim hearing to consider approval of

3   the Motion having been held and concluded on April 17, 2009 (the *"Second Interim Hearing"*);

4   
5   and that certain *Second Stipulated Order (I) Authorizing Use of Cash Collateral Pursuant to*

6   *Sections 105, 361, 362 and 363 of the Bankruptcy Code, (II) Granting Adequate Protection and*

7   *Super Priority Administrative Expenses Priority to Prepetition Secured Lenders, and (III)*

8   *Scheduling a Final Hearing* (the *"Second Interim Cash Collateral Stipulation"*) having been

9   entered by the Court on April 17, 2009; and after due deliberation and consideration and good and

10  sufficient cause appearing therefore:

11  THE COURT HEREBY FINDS:

12      A.      Petition Date.  On March 31, 2009 or April 1, 2009 (as applicable, the *"Petition*

13  *Date"*), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the

14  United States Code (the *"Bankruptcy Code"*).  Each Debtor is continuing in the management and

15  possession of its business and properties as a debtor in possession pursuant to sections 1107

16  
17  and 1108 of the Bankruptcy Code.

18      B.      Jurisdiction.  Consideration of the Motion constitutes a "core proceeding" as

19  defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O).  This Court has jurisdiction over

20  
21  this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and

22  1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

23      C.      First Priority Secured Obligations.  The First Lien Lenders and the First Lien

24  Agent, defined below, allege as follows:

25          (1)      Pursuant to that certain Credit Agreement dated as of November 21, 2005

26  (as may have been amended from time to time, the *"First Lien Credit Agreement"*) among

27  Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General

28  

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Partnership, as the Borrowers, the Lenders Listed Therein as the Lenders (and all other holders of Obligations as defined in the First Lien Credit Agreement) (collectively, the "*First Lien Lenders*"), and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger (the "*First Lien Agent*") and together with all guarantees, subordination agreements, intercreditor agreements (including the intercreditor agreement dated November 21, 2005 among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers and Credit Suisse, Cayman Islands Branch, as First Lien Collateral Agent and Second Lien Collateral Agent (the "*Intercreditor Agreement*")), blocked account or deposit control agreements, indentures, notes, mortgages, pledges, guarantees, instruments and any other agreements and documents delivered pursuant thereto or in connection therewith (collectively, and as amended, restated, supplemented or otherwise modified from time to time, the "*First Lien Loan Documents*"); the First Lien Agent and the First Lien Lenders made certain senior loans, advances and other financial accommodations to the Debtors to fund, among other things, the operations of the Debtors.

(2)       Pursuant to the First Lien Loan Documents, the Debtors were, as of the Petition Date, indebted to the First Lien Agent and the First Lien Lenders on account of the First Priority Indebtedness (defined below) in the approximate amount of at least $322,200,000 in respect of the outstanding principal amount of the loans and certain swap obligations, exclusive of accrued but unpaid interest, costs, fees, and expenses and exclusive of other amounts that may be owing or outstanding under or in connection with the First Lien Loan Documents. For purposes of this Order, the term "First Priority Indebtedness" shall mean and include, without duplication, the Obligations (as defined in the First Lien Credit Agreement) and any and all other amounts owing or outstanding under the First Lien Loan Documents or any other interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any

reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the First Lien Credit Agreement), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the Obligations outstanding thereunder.

(3)    Pursuant to certain security agreements, pledge agreements, blocked account and deposit control agreements, mortgages, deeds of trust, assignments and other documents and agreements (as amended, restated, supplemented or otherwise modified from time to time, collectively, the "*First Lien Security Documents*"), and the other First Lien Loan Documents, the Debtors granted to and/or for the benefit of the First Lien Agent and the First Lien Lenders first priority and continuing pledges, liens and security interests (collectively, the "*First Priority Liens*") to secure the First Priority Indebtedness and any guarantees thereof, in and upon all of the Debtors' property and assets, whether real or personal, tangible or intangible and wherever located, whether now or hereafter existing or acquired, including any state and federal tax refunds or rebates, and all of the proceeds, products, offspring, rents and profits thereof, all as described in the First Lien Security Documents. All collateral provided under any First Lien Loan Document, including that described in this subparagraph C(3), that existed as of the Petition Date and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents and profits thereof shall hereafter be referred to as the "*Prepetition Collateral*."

(4)    (a) The First Lien Loan Documents are valid and binding agreements of the Debtors, (b) the First Lien Agent (on its own behalf and on behalf of the First Lien Lenders) properly perfected their security interests and liens in and on the Prepetition Collateral, and (c) the First Priority Liens (i) constitute valid, binding, enforceable and perfected first priority security interests and liens on the Prepetition Collateral and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination by the Debtors pursuant to the Bankruptcy Code or

1  applicable non-bankruptcy law.

2          (5)      (a) The First Priority Indebtedness constitutes the legal, valid and binding

3  obligation of the Debtors, enforceable in accordance with its terms, (b) the Debtors have no

4
   objection, offset, defense or counterclaim of any kind or nature to the First Priority Indebtedness
5
6  and (c) the First Priority Indebtedness, and any amounts previously paid to or on behalf of the First

7  Lien Agent or any First Lien Lender on account thereof or with respect thereto, are not subject to

8  avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code

9  or applicable non-bankruptcy law.

10         During the Cash Collateral Period, the Debtors agree not to challenge any of the above

11 allegations of the First Lien Lenders or the First Lien Agent set forth in this Recital C.

12     D.     Second Lien Secured Obligations.  The Second Lien Lenders and the Second Lien

13
14 Agent, defined below, allege as follows:

15     (1)     Pursuant to that certain Credit Agreement dated as of November 21, 2005 (as may

16 have been amended from time to time, the "Second Lien Credit Agreement") among Heritage Land

17 Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the

18 Borrowers, the Lenders Listed Therein as the Lenders and all other holders of Obligations (as

19
   defined in the Second Lien Credit Agreement) (collectively, the "Second Lien Lenders"), and
20
21 Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication

22 Agent, Sole Bookrunner and Sole Lead Arranger and together with all guarantees, subordination

23 agreements, intercreditor agreements (including the Intercreditor Agreement), blocked account or

24 deposit control agreements, indentures, notes, mortgages, pledges, guarantees, instruments and any

25 other agreements and documents delivered pursuant thereto or in connection therewith

26 (collectively, and as amended, restated, supplemented or otherwise modified from time to time, the

27 "Second Lien Loan Documents"), the Second Lien Agent and the Second Lien Lenders made

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  certain loans, advances and other financial accommodations to the Debtors to fund, among other

2  things, the operations of the Debtors.

3       (2)    Pursuant to that Successor Agent Agreement, dated as of April 7, 2009, Wells

4  Fargo Bank, National Association (the "*Second Lien Agent*") succeeded to the interests of Credit

5

6  Suisse, Cayman Islands Branch as Administrative and Collateral Agent under the Second Lien

7  Loan Documents.

8       (3)    Pursuant to the Second Lien Loan Documents, the Debtors were, as of the Petition

9  Date, indebted to the Second Lien Agent and the Second Lien Lenders in the approximate amount

10  of at least $70,700,000 exclusive of accrued but unpaid interest, costs, fees and expenses.  For

11  purposes of this Order, the term "*Second Priority Indebtedness*" shall mean and include, without

12  duplication, any and all amounts owing or outstanding under the Second Lien Loan Documents

13  (including, without limitation, all Obligations as defined in the Second Lien Loan Documents) or

14

15  any other interest on, fees and other costs, expenses and charges owing in respect of, such amounts

16  (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other

17  fees and expenses that are chargeable or reimbursable under the Second Lien Credit Agreement),

18  and any and all obligations and liabilities, contingent or otherwise, owed in respect of the

19  Obligations outstanding thereunder.

20

21       (4)    Pursuant to certain security agreements, pledge agreements, blocked account and

22  deposit control agreements, mortgages, deeds of trust, assignments and other documents and

23  agreements (as amended, restated, supplemented or otherwise modified from time to time,

24  collectively, the "*Second Lien Security Documents*"), and the other Second Lien Loan Documents,

25  the Debtors granted to and/or for the benefit of the Second Lien Agent and the Second Lien

26  Lenders second priority and continuing pledges, liens and security interests (collectively, the

27  "*Second Priority Liens*"), contractually subordinated to the First Priority Liens, to secure the

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Second Priority Indebtedness and any guarantees thereof, in and upon all of the Debtors' property

2    and assets, whether real or personal, tangible or intangible and wherever located, whether now or

3    hereafter existing or acquired, including any state and federal tax refunds or rebates, and all of the

4    proceeds, products, offspring, rents and profits thereof, all as described in the Second Lien

5    Security Documents. All collateral provided under any Second Lien Loan Document, including

6    that described in this subparagraph D(4), that existed as of the Petition Date and all prepetition

7    and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring,

8    rents and profits thereof is the same collateral referred to in subparagraph C(3) as the Prepetition

9

10    Collateral.

11            (5)       (a) The Second Lien Loan Documents are valid and binding agreements of the

12    Debtors, (b) the Second Lien Agent (on its own behalf and on behalf of the Second Lien Lenders)

13    properly perfected their security interests and liens in and on the Prepetition Collateral, and (c) the

14    Second Priority Liens (i) constitute valid, binding, enforceable and perfected second priority

15    security interests and liens on the Prepetition Collateral and (ii) are not subject to avoidance,

16

17    reduction, disallowance, impairment or subordination by the Debtors pursuant to the Bankruptcy

18    Code or applicable non-bankruptcy law.

19            (6)       (a) The Second Priority Indebtedness constitutes the legal, valid and binding

20    obligation of the Debtors, enforceable in accordance with its terms, (b) the Debtors have no

21    objection, offset, defense or counterclaim of any kind or nature to the Second Priority Indebtedness

22

23    and (c) the Second Priority Indebtedness, and any amounts previously paid to or on behalf of the

24    Second Lien Agent or any Second Lien Lender on account thereof or with respect thereto, are not

25    subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the

26    Bankruptcy Code or applicable non-bankruptcy law.

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  During the Cash Collateral Period, the Debtors agree not to challenge any of the above

2  allegations of the Second Lien Lenders or the Second Lien Agent set forth in this Recital D.

3      E.    <u>Cash Collateral</u>.  The Debtors have requested the use "cash collateral", as defined

4
5  by section 363(a) of the Bankruptcy Code and including any and all prepetition and, subject to

6  section 552 of the Bankruptcy Code, postpetition proceeds of the Prepetition Collateral ("*Cash*

7  *Collateral*") in accordance with the Budget (as defined below), in order to continue the operation

8  of their businesses and their reorganization under chapter 11 of the Bankruptcy Code.

9  Accordingly, the relief granted is being provided with the consent of the First Lien Lenders and

10  Second Lien Lenders for the continued operation of the Debtors' businesses for the Cash Collateral

11  Period (as defined below).  Good, adequate and sufficient cause has been shown to justify the

12  granting of the relief provided herein and the immediate entry of this Order.

13
14      F.    <u>Good Faith</u>.  Based upon the record before the Court, the terms of the use of the

15  Cash Collateral as provided in this Order have been negotiated at arms' length and in "good faith,"

16  as that term is used in section 363(m) of the Bankruptcy Code, and are in the best interests of the

17  Debtors, their estates and creditors.  The First Lien Agent, the First Lien Lenders, the Second Lien

18  Agent, and the Second Lien Lenders (collectively, the "*Lender Parties*") are permitting the use of

19  their Cash Collateral in good faith.

20
21      G.    <u>No Secured Lender Objections</u>.  The Lender Parties have consented to the use of

22  their Cash Collateral solely for the Cash Collateral Period and such consent is expressly

23  conditioned upon the consideration as provided in this Order.  The adequate protection provided

24  herein and other benefits and privileges contained herein are consistent with and authorized by the

25  Bankruptcy Code and are necessary in order to obtain such consent or non-objection of such

26  parties.

27      H.    <u>Notice</u>.  Notice of the final hearing to approve the Motion was delivered on or
28

PACHULSKI STANG ZIEHL & JONES LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES, CALIFORNIA

1  before April 9, 2009 via United States mail, first class postage prepaid, to the following parties in

2  interest: (i) the United States Trustee for the District of Nevada (the "*U.S. Trustee*"); (ii) those

3  parties listed on the Consolidated List of Creditors Holding Largest Twenty Five Unsecured

4
   Claims Against the Debtors, as identified in the Debtors' chapter 11 petitions; (iii) the

5
   administrative agent for the First Lien Lenders and Second Lien Lenders; (iv) counsel to the First
6

7  Lien Agent; (v) counsel to a steering committee of First Lien Lenders (the "*First Lien Steering*

8  *Committee*"); (vi) counsel to the Second Lien Agent; (vii) all parties requesting service papers

9  pursuant to Bankruptcy Rule 2002; (viii) creditors of Pinnacle Grading as of the Petition Date; and

10 (ix) known lien holders of the Debtors as of the Petition Date.  Given the nature of the relief sought

11 in the Motion, such notice constitutes sufficient and adequate notice of this Order pursuant to

12 Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code,
13
   as required by sections 363(b) and (c) of the Bankruptcy Code.
14

15 NOW, THEREFORE, IT IS HEREBY ORDERED, STIPULATED AND AGREED:

16     1.     Relief Granted.  The relief granted herein is granted subject to the express provisions
17 hereof.  Any objections to the relief granted herein that have not been previously resolved or
18 withdrawn are hereby overruled.
19

20     2.     Use of Cash Collateral.  Except as otherwise set forth herein, for as long as the

21 Debtors comply with the terms and conditions of this Order, the Debtors are hereby authorized to

22 use Cash Collateral consistent with the budget (the "*Budget*") annexed hereto as Exhibit "A", subject

23 to a variance of 15%, provided, that the Lender Parties are granted adequate protection as hereinafter

24 set forth, and provided, further, that, absent the written consent of the First Lien Steering Committee

25 (in consultation with the First Lien Agent), the Debtors shall cease to be authorized to use Cash

26 Collateral  pursuant to this Order upon the occurrence of the Cash Collateral Termination Date.

27     3.     Budgets and Covenants.  The annexed Budget contains weekly forecasts covering
28 the period beginning April 1, 2009 through the week ending June 28, 2009.  Except as otherwise set

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

forth herein, the Debtors are hereby authorized to use Cash Collateral in a manner that is entirely consistent with the Budget for the period from April 1, 2009 through 11:59 p.m. (pt) on June 28, 2009 (the "*Budget Period*").

(a) The Debtors may enter into and pay any expenses associated with constructing or regarding the construction of a home, including, but not limited to sales contracts, home construction contracts, or purchase order requests for the completion of entire homes (the "*Home Construction Contracts*") with payment or completion timeframes beyond June 28, 2009 subject to the prior written approval of the First Lien Steering Committee through WCP (as defined below) with notice to the First Lien Agent and Second Lien Agent (collectively, the "*Agents*"). The approval or denial of each such request shall occur within 24 hours of presentation by the Debtors of such request to WCP. Any expenses incurred during the Budget Period or beyond in connection with any such Home Construction Contract approved in accordance with this Paragraph, shall be paid by the Debtors out of the Cash Collateral regardless of the occurrence of a Cash Collateral Termination Event. Notwithstanding anything to the contrary herein, the Adequate Protection Liens and Adequate Protection Claims granted to the Lender Parties herein shall be subordinate to the Debtors' obligations under the Home Construction Contracts.

(b) The Debtors are authorized to disburse job cost expenses of Pinnacle Grading LLC ("*Pinnacle*") through June 28, 2009 provided that the cumulative job cost expenses of Pinnacle from April 1, 2009 through June 28, 2009 do not exceed the cumulative receipt of Pinnacle revenues received from April 1, 2008 through June 28, 2009 by more than $60,000. (For example, if the Debtors receive $250,000 in cumulative Pinnacle revenues on a day prior to June 28, 2009, then the Debtors shall be authorized to disburse up to $310,000 in cumulative Pinnacle job cost expenses through such date.)

(c) The Debtors are authorized to disburse to Mrs. Glynda Rhodes the rent

contemplated in the Budget on a monthly basis for use as a residence for their employees or consultants, including any amounts held in the client trust account of the Debtors' bankruptcy counsel, while such home is being used by any of the Debtors' employees or consultants. The Debtors shall reject and/or terminate the lease of the residence if the Debtors' employees or consultants are not occupying the residence on a regular basis.

(d)      Any expenditures in the ordinary course of business that are not otherwise identified on the Budget that the Debtors deem necessary or important prior to June 28, 2009 shall be recommended in writing by the Debtors to the First Lien Steering Committee (through WCP), with notice to the Agents, and WCP shall respond within 48 hours of its receipt of such notice with an approval or denial in WCP's sole discretion.

(e)      Notwithstanding anything contained in the Budget to the contrary, no expenses of administration, wages or other amounts shall be paid to any employee or third party that has not provided a direct, cognizable benefit to the Debtors' estates commensurate to the amount to be paid. The Debtors shall have the employees who are performing work for both Debtor and non-debtor affiliate entities provide a certification at the end of each month as to the amount of time spent working for the Debtors and the non-Debtors on a percentage basis. Based on the gross compensation (including benefits) of such employee, the Debtors will compute the dollar value of the amount of time spent on matters relating to the Debtors and the non-Debtors. The Debtors and non-Debtors shall reconcile any payroll amounts owed one to another (including in such reconciliation the foregoing computations) and shall pay such reconciled payroll amounts on or before the tenth (10th) day of the following calendar month. The First Lien Steering Committee (through WCP) shall have rights to review such certification and supporting documentation as necessary and share such information with the Agents, who shall then have until the seventh (7th) day of the calendar month to object to such certification in writing. If an objection is asserted, no

1  amounts shall be payable pursuant to this paragraph until such objection is resolved either between

2  the parties or by this Court.

3          (f)      The Debtors have included amounts in the Budget totaling approximately $1.2

4
   million for amounts owed to various contractors but unpaid as of the Petition Date, some of which
5
   amounts may be unsecured claims in these Chapter 11 Cases or may be mechanics liens.  During
6
   the Cash Collateral Period, the Debtors can pay such amounts pursuant to the Budget upon either
7
8  (i) Court Order or (ii) consent of the First Lien Steering Committee (through WCP) in its sole

9  discretion without the need for further Court Order; provided, that with respect to (ii) above, five

10 business days advance of any proposed payments shall be provided to the Agents, the U.S.

11 Trustee, any counsel to any official committee of unsecured creditors appointed in these cases,

12 which notice shall include the identities of the parties that will receive such payments, the specific

13
   nature of the claims to be paid, the amounts to be paid and the extraordinary circumstances
14
15 underpinning the proposed payments.  To the extent no objection is received from the Agents, the

16 U.S. Trustee, or the official committee of unsecured creditors following such five business day

17 period, the Debtors shall be authorized to make such payments.  The fact of payment on such

18 claims under this paragraph shall not waive the rights of any party in interest to later challenge the

19 priority of payments made pursuant to this paragraph.

20
          (g)      The Debtors have included amounts in the Budget on lines 30 and 31 relative to
21
22 various ongoing land development projects.  The First Lien Steering Committee (through WCP)

23 is hereby granted the right to approve work on any such contract related to such land

24 development projects.  Once a contract is approved by the First Lien Steering Committee, it shall

25 only have consent rights as to the timing of payment of any amounts due under such contract.

26 Furthermore, the First Lien Steering Committee through WCP shall be granted the right to review

27
   payments in excess of $1,000 per invoice for any vendor (not to exceed $10,000 in any week)
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

related to any land development or similar activities on items where WCP has not approved a contract prior to payment thereof. Such amounts, along with invoices and summaries of the total requested payment shall be submitted to the First Lien Steering Committee (through WCP) by 5:00 p.m. (prevailing Pacific Time) on Friday of each week for review; including disclosure of all checks of less than $1000 made to each vendor since the last weekly report. WCP shall respond in a timely manner to the Debtors in writing as to which amounts are approved for payment and which amounts are declined for payment. Declination for payment of an invoice in no way shall prevent the First Lien Steering Committee (through WCP) from later approving payment of such invoice.

(h)     Both the Debtors and the First Lien Steering Committee acknowledge that they may desire the Debtors to utilize Cash Collateral over what is provided for in the Budget to pay for vertical construction costs to build additional homes not contemplated as of the date of this Order. Should the Debtors determine that they have a business reason for utilizing Cash Collateral beyond the level allocated on line 29 of the Budget for vertical home construction, the Debtors shall make a written request to the First Lien Steering Committee (through WCP) for approval of such additional use of Cash Collateral. The First Lien Steering Committee (through WCP) may reasonably request additional supporting information to allow it to make a determination as to the Debtors' benefit of starting such new vertical home construction, which information the Debtors shall provide timely. Following WCP's receipt of requested information, the First Lien Steering Committee (through WCP) shall respond in a timely manner to the Debtors in writing with a listing of homes on which the First Lien Steering Committee agrees to allow for commencement of vertical construction. WCP shall be authorized to share any information received under this paragraph with the Agents.

(i)     The Debtors are authorized, without further order of the Court, to make

1  modifications to the Budget, not to exceed the 15% variance referenced at Paragraph 2 above, with

2  the written consent of the First Lien Steering Committee (in consultation with the Agent), which

3  consent shall be granted or withheld in the First Lien Steering Committee's sole discretion. The

4
5  Debtors' authorization to use Cash Collateral hereunder shall terminate upon the earlier to occur of

6  (i) the Cash Collateral Termination Date or (ii) expiration of the Budget Period unless the Debtors

7  shall have proposed and the First Lien Steering Committee, in its sole discretion (but in

8  consultation with the Agent), shall have approved, an extension of the Cash Collateral Period.

9  WCP shall be authorized to share any information received under this paragraph with the Agents.

10          (j)          The Debtors shall provide to the Lender Parties and First Lien Steering Committee

11  weekly variance reports by 5:00 p.m. (prevailing Pacific Time) on Tuesday of each week during

12  the Budget Period (or the next business day if such day is not a business day). Such variance

13
14  reports shall (i) include prior week actual and cumulative financial results compared to the

15  budgeted amounts for each such week and a detailed explanation of any variances and (ii) certify

16  the Debtors' compliance with the Budget.

17      4.      Ordinary Course of Business. The Debtors shall only engage in transactions in the

18  Debtors' ordinary course of business during the Budget Period.

19      5.      Adequate Protection. The Lender Parties are hereby granted the following as

20  adequate protection, (i) solely to the extent of any diminution in the value of the Prepetition

21  Collateral (including Cash Collateral) and (ii) solely to the extent of the value of their interest in

22  
23  the Prepetition Collateral:

24          (a) Adequate Protection Liens. As adequate protection of the respective interests of the

25  Lender Parties, to the extent of any diminution in the value of the Prepetition Collateral (including

26  Cash Collateral) from and after the Petition Date, whether as a result of the imposition of the

27  automatic stay, or the use, sale or lease of the Prepetition Collateral, including the use of the Cash

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Collateral, the First Lien Agent and the Second Lien Agent are hereby granted for their benefit and the benefit of the First Lien Lenders and Second Lien Lenders replacement liens in the same relative priority as their respective liens in the Prepetition Collateral, provided that the adequate protection liens provided hereunder to the Second Lien Agent shall also be junior in priority to the First Lien Agent's prepetition liens in the Prepetition Collateral (the "*Adequate Protection Liens*"), subject only to such other liens, if any, as may be senior, under applicable law, to the First Priority Liens and Second Priority Liens in the relevant Collateral (as hereinafter defined) and the Carve-Out (as defined below), on all of the Debtors' rights, title and interest in, to and under all personal and real property and other assets, whether now existing or at any time hereafter acquired and regardless of where located, including, but not limited to, all contracts of sale, pledged equity interests, tax refunds, general intangibles, copyrights, patents, trademarks, books and records, customer lists, credit files, computer files, programs, printouts, other computer materials and records related thereto, commercial tort claims, documents, letters of credit issued in favor of the Debtors, excess proceeds returned to the Debtors from letter of credit beneficiaries, equipment, fixtures, goods, inventory, machinery, pledged deposits, chattel paper, securities accounts, deposit accounts and all other demand, time, savings and cash management, passbook and similar accounts, and all monies, securities, instruments and other investments deposited or required to be deposited in such accounts, but excluding all claims for relief under chapter 5 of the Bankruptcy Code ("*Avoidance Actions*") (collectively, including the Prepetition Collateral, the "*Collateral*"). Except as provided in this Order, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien on the Collateral by any order subsequently entered in the Chapter 11 Cases and shall be granted the benefits of Paragraph 6 hereof as applicable.

(b)  Adequate Protection Claims.  As additional adequate protection of the interests of the Lender Parties in the Prepetition Collateral, the Lender Parties are hereby granted allowed

administrative priority claims under section 507(b) of the Bankruptcy Code in the same relative priority as the First Priority Liens and Second Priority Liens in the Prepetition Collateral (the "*Adequate Protection Claims*") for any diminution in value of the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, whether as a result of the imposition of the automatic stay, or the use, sale or lease of Prepetition Collateral, including the use of Cash Collateral, provided that any recoveries to the Second Lien Agent or Second Lien Lenders in respect of the Adequate Protection Claims granted hereunder to the Second Lien Agent and Second Lien Lenders shall be first used to satisfy the prepetition claims of the First Lien Agent and the First Lien Lenders and only in the event such prepetition claims are paid in full shall the Second Lien Agent and Second Lien Lenders receive any amounts in respect of such Adequate Protection Claims. The Adequate Protection Claims shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise (whether incurred in the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto). Notwithstanding the foregoing, the Adequate Protection Claims shall not have priority over the allowed administrative claims incurred by the Debtors, including but not limited to the allowed administrative claims of any of the Debtors' professionals and the professionals for a creditors' committee (if appointed), in each case, to the extent of fees and expenses that are incurred prior to the Cash Collateral Termination Date, and any unused retainers (the "Carve-Out") and up to $35,000 for professionals of a creditors committee (if and when appointed) for the purpose of investigating the assertions in Paragraphs C and D contained herein. Solely for the Cash Collateral Period, the Adequate Protection Claims shall be subordinated to (i) the retainers held, as of the Petition Date, by

professionals to the Debtors that are retained pursuant to an order of the Court and only to the extent of fees and expenses (a) incurred prior to and during the continuation of a Cash Collateral Termination Event and (b) allowed by further order of the Court; and (ii) the allowed administrative claims of non-insider employees that provide actual services to the Debtors during the Cash Collateral Period and allowed administrative claims of entities that provide services to the Debtors (other than any affiliates of the Debtors or Jim Rhodes, but excluding Spirit Underground or Freedom Underground), in each case only to the extent of the benefit of such services and provided for in the Budget. Notwithstanding the foregoing, Spirit Underground and Freedom Underground shall have the benefit of the foregoing sentence for allowed administrative claims in respect of services actually rendered during the Cash Collateral Period to the extent provided for in the Budget or otherwise authorized pursuant to this Order.

(c) Fees and Expenses. As further adequate protection for the use of the Cash Collateral during the Budget Period, the Debtors shall, after receipt of an applicable invoice, pay in full, in cash by wire transfer, the fees and expenses incurred by the professionals for the First Lien Steering Committee (including Akin Gump Strauss Hauer & Feld LLP, Winchester Carlisle Partners LLC ("WCP") and Kolesar & Leatham) and the First Lien Agent (including Skadden, Arps, Slate, Meagher & Flom, LLP and the First Lien Agent's local counsel), for the period from the Petition Date through the Cash Collateral Period, without a right of setoff, recoupment, avoidance or disgorgement, and regardless of whether an invoice is delivered before or after a Cash Collateral Termination Event or the expiration of the Cash Collateral Period, provided, however that each First Lien Steering Committee professional and First Lien Agent professional shall submit its monthly invoice for review to the Debtors and the U.S. Trustee each of which shall have 10 days from the receipt of such invoice to review such invoice for reasonableness. If no objection is interposed in writing to such applicable professional within the 10-day time period, the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Debtors shall be authorized to pay such amount to which no objection has been raised within 2

2  business days. If an objection is interposed in writing to such applicable professional within the

3  10-day time period and the parties are unable to resolve such objection, the amount subject to such

4
5  objection shall be resolved by the Bankruptcy Court and, any amounts not subject to such

6  objection shall be paid by the Debtors in accordance with the provisions hereof. The payments

7  contemplated hereby shall be subject to recharacterization and a review for reasonableness under

8  Bankruptcy Code section 506(b). Nothing herein shall prejudice the Agents or First Lien Steering

9  Committee from seeking payment of additional fees and expenses in connection with any further

10  or final order regarding cash collateral or otherwise and such rights are expressly reserved.

11        (d)  Reporting Requirements. The Debtors shall furnish to the Lender Parties and First

12  Lien Steering Committee the following:

13
14        (I)  Weekly Cash Flow Budget. On the third day of each calendar week (or, if

15  such day is not a business day, on the next succeeding business day), (i) a report setting forth in

16  reasonable detail any variances from the Weekly Cash Flow Budget on the basis of the actual prior

17  week, (ii) a report setting forth a list of all asset sales since the date of the last Weekly Cash Flow

18  Budget and the respective sales price, and (iii) a report of cumulative net cash proceeds received

19  by the Debtors with respect to asset sales since the date of the last such report.

20
21        (II)  Cash Collateral Termination Event Notices. As soon as practicable, and in

22  any event within one business day after a responsible officer has actual knowledge of the existence

23  of any Cash Collateral Termination Event, the Debtors shall give the Lender Parties and First Lien

24  Steering Committee notice specifying the nature of the Cash Collateral Termination Event, which

25  notice, if given by telephone, shall be promptly confirmed in writing on the next business day.

26        (III)  Provision of Information. The First Lien Steering Committee is

27  authorized to share information and documents it receives from the Debtors with the Agents and

28

the First Lien Steering Committee shall share such information and documents with the Agents upon the First Lien Agent's or Second Lien Agent's request, as applicable.

(e) Disbursement Authority. During the Cash Collateral Period, all amounts paid by the Debtors must be approved by two of the following (with checks drawn on any Debtor's bank accounts to be signed by two of the following): (i) the Debtors' general counsel; (ii) the Debtors' chief financial officer; and (iii) the Debtors' controller; provided, that neither Jim Rhodes nor any relative or affiliate of Jim Rhodes shall serve in any of the foregoing capacities.

6.    Perfection of Adequate Protection Liens. The Adequate Protection Liens granted pursuant to this Order shall be deemed to be perfected automatically as of the Petition Date, without the necessity of the filing of any UCC-1 financing statement, state or federal notice, mortgage or other similar instrument or document in any state or public record or office and without the necessity of taking possession or "control" (within the meaning of the Uniform Commercial Code) of any Collateral, *provided, however,* that if the First Lien Agent or Second Lien Agent shall, in their sole individual discretion, choose to require the execution of and/or file (as applicable) such mortgages, financing statements, notices of liens and other similar instruments and documents, all such mortgages, financing statements, notices of liens or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded *nunc pro tunc* at the time and on the date of the later of the Petition Date or the date upon which the Debtors acquired the property subject to the mortgages, financing statements, notices of liens and other similar instruments and documents at issue. Each and every federal, state and local government agency or department is hereby directed to accept a copy of this Order as evidence of the validity, enforceability and perfection as of the Petition Date of the liens granted or authorized pursuant to this Order to or for the benefit of the Lender Parties.

7.    Limitation on Charging Expenses Against Collateral. Except as contemplated in this Order, during the Cash Collateral Period, no administrative claims, including fees and expenses of professionals, shall be assessed against or attributed to any of Lender Parties with respect to their

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

interests in the Prepetition Collateral for the period of consensual use of Cash Collateral (the "*Cash Collateral Period*") or any subsequent period in which the Debtors are permitted to use Cash Collateral pursuant to the terms of this Order, as applicable, pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtors, without the prior written consent of the Lender Parties and First Lien Steering Committee, as applicable, and no such consent shall be implied from any action, inaction or acquiescence by, either with or without notice to, the Lender Parties and the First Lien Steering Committee, or otherwise.

8.    Priority of Obligations.    Except as otherwise set forth herein, pursuant to Bankruptcy Code section 507(b), all of the Debtors' obligations arising under this Order in respect of the First Priority Indebtedness, the Second Priority Indebtedness, the Prepetition Collateral, or the Adequate Protection Liens shall constitute obligations of the Debtors with priority over any and all administrative expenses or other claims arising or granted under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 546(c) or 726.

9.    Reservation of Rights of Prepetition Secured Parties.    Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of any of the Lender Parties or the First Lien Steering Committee under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of such parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers); or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans for any of the Debtors; (b) any of the rights of the Lender Parties or First Lien Steering Committee to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection at any time, including prior to a Cash Collateral Termination Event, and nothing herein shall affect the rights of any other party or entity to seek or oppose such modification of the grant of the adequate protection provided hereby; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the Lender Parties or

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

First Lien Steering Committee.  Nothing herein shall prejudice the rights of any party to oppose any of the foregoing forms of relief (other than the Debtors with respect to Paragraphs C and D herein) that may be sought by any of the Agents, the Lender Parties or First Lien Steering Committee.

10.    Challenges.  Notwithstanding anything contained herein to the contrary, the extent, validity, priority, perfection and enforceability of the First Priority Indebtedness, First Priority Liens, Second Priority Indebtedness and Second Priority Liens are for all purposes subject to the rights of any party in interest (including an official committee appointed in these cases as representative of the Debtors' estates), other than any Debtor, to (1) file a complaint pursuant to Bankruptcy Rule 7001, (2) object to the allowability of any of, or any portion of, the Lender Parties' liens or claims in accordance with Bankruptcy Code sections 502 and 1109 and Bankruptcy Rule 3007, or (3) take such other action or seek another mechanism seeking to invalidate, avoid, subordinate or otherwise challenge the First Priority Indebtedness, First Priority Liens, Second Priority Indebtedness, Second Priority Liens, or any liens, claims or other obligations incurred in connection with any of the foregoing or pursue claims or causes of action against the First Lien Agent, First Lien Lenders, Second Lien Agent and/or Second Lien Lenders, applicable (each of (1)-(3) above, a "*Challenge*"); *provided, however,* that any such Challenge(s) must be filed in this Court by no later than the earlier of (i) 90 days after the appointment of an official committee of unsecured creditor or (ii) the deadline for objection to confirmation of a plan of reorganization filed by the Debtors and/or the First Lien Steering Committee (the "*Challenge Period*"); *provided, further, however*, that the Challenge Period may be extended either (i) by the Court pursuant to an order after notice and a hearing and for cause shown, or (ii) as may be agreed to in writing by the First Lien Steering Committee (in consultation with the First Lien Agent) with the respect to the First Priority Indebtedness and First Priority Liens, and the Second Lien Agent with respect to the Second Priority Indebtedness and Second Priority Liens, with respect to the time to file any such complaint relating to the liens and claims arising under the First Lien Loan Documents or Second Lien Loan Documents, as applicable.  If no such Challenge(s) are filed within such time period, then any and all Challenges shall be, without further notice to or order of the Court, deemed to have been forever relinquished, released and waived as to any such official committee and any other person or entity.  If such Challenge(s) are timely filed on

or before the date upon which the Challenge Period expires, any and all Challenges shall be deemed, immediately and without further action, to have been forever relinquished, released and waived as to any official committee and other person or entity, except with respect to Challenges that are timely asserted. Nothing herein shall be deemed to provide any party with standing to pursue a Challenge, such relief only to be provided by a further order of this Court, after notice and a hearing, and such party having met the applicable legal standard to obtain such standing. Notwithstanding the foregoing, nothing herein shall be deemed to limit the rights of any party, including the Debtors, to assert that the value of the Prepetition Collateral is less than the value of the First Priority Indebtedness or Second Priority Indebtedness.

11.    If no such Challenge is filed within such time period, then (i) the First Priority Indebtedness, First Priority Liens, Second Priority Indebtedness, Second Priority Liens shall each constitute allowed, secured claims (subject to Challenge, if any, that the value of the Prepetition Collateral is less than the value of the First Priority Indebtedness or Second Priority Indebtedness, which may be filed by any party in interest, including any of the Debtors), for all purposes in the Chapter 11 Cases and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceedings if any Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code (each, a "*Successor Case*"), (ii) the First Priority Liens and Second Priority Liens, as applicable, shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination or avoidance for all purposes in the Chapter 11 Cases and any Successor Case, (iii) the release of the Challenges against the Lender Parties shall be binding on all parties in interest in the Chapter 11 Cases and any Successor Case, and (iv) First Priority Indebtedness, First Priority Liens, Second Priority Indebtedness and Second Priority Liens, releases of the Challenges against the Lender Parties, and prior payments on account of or with respect to the First Priority Indebtedness and Second Priority Indebtedness, respectively, shall not be subject to any other or further claims, cause of action, objection, contest, setoff, defense or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor. Nothing in this Order shall confer or deny standing upon any official committee or any other person or entity to bring, assert, commence, continue, prosecute, litigate, or assert Challenges against any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Lender Parties. Nothing in this paragraph is intended to or shall affect the right, validity or extent of a Permitted Encumbrance as defined under the First Lien Loan Documents or Second Lien Loan Documents or other statutory liens.

12.    Cash Collateral Termination. (a) Notwithstanding anything herein or in the First Lien Loan Documents or the Second Lien Loan Documents to the contrary, the Debtors shall no longer be authorized to use Cash Collateral pursuant to this Order, the First Lien Loan Documents, the Second Lien Loan Documents, or otherwise, and consent to the use of Cash Collateral shall be terminated (the "*Cash Collateral Termination Date*") upon the earlier of (i) June 28, 2009 at 11:59 p.m. (prevailing Pacific Time) (unless such date is extended in the sole discretion of the First Lien Steering Committee (in consultation with the Agents)) and (ii) absent further order of the Court, the date that is one (1) business day after the delivery by the First Lien Agent or the First Lien Steering Committee of written notice to the Debtors of the occurrence of any of the following events (any event shall be referred to as a "*Cash Collateral Termination Event*"):

(I)    non-compliance by the Debtors with any term or provision in this Order;

(II)    the occurrence after the date hereof of a material adverse effect on any of the business, prospects, performance, assets, operations, condition (financial or otherwise), contingent and other liabilities or material agreements of the Debtors, taken as a whole;

(III)    the incurrence by the Debtors of any expenses or the entry into any transaction not specifically contemplated by the Budget, absent the prior written consent if the First Lien Steering Committee, which consent shall be provided or withheld in the First Lien Steering Committee's sole discretion (in consultation with the First Lien Agent);

(IV)    the entry of an order pursuant to Bankruptcy Code section 363 approving the sale of all or substantially all of the Debtors' assets (but only in the event that the First Lien Steering Committee (in consultation with the First Lien Agent) has not first consented to such sale), *provided, however*, that to the extent that the net proceeds of such sale are sufficient to

satisfy all of the First Priority Indebtedness, subject to the provisions of the Intercreditor Agreement, then such sale shall not constitute a Cash Collateral Termination Event until the closing of the sale;

(V)     conversion or dismissal of the Chapter 11 Cases, *provided, however*, that if an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that (i) the claims and liens granted pursuant to this Order to or for the benefit of the Lender Parties shall continue in full force and effect and shall maintain their priorities as provided in and subject to the express limitations contained in this Order until all obligations in respect thereof shall have been paid in full in cash and satisfied in the manner provided in the First Lien Loan Documents or Second Lien Loan Documents (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) prior to dismissal, the applicable Debtors shall deliver to the First Lien Agent and Second Lien Agent and record, at the Debtors' cost, financing statements, mortgages and other documentation evidencing perfected liens in the Collateral and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens;

(VI)     entry of any order pursuant to sections 364(c)(1) and (d)(1) of the Bankruptcy Code authorizing the Debtors to obtain credit that is payable on a senior priority, junior priority or pari passu basis with the First Priority Indebtedness, without the written consent of the First Lien Steering Committee (in consultation with the Agents);

(VII)     failure of the Debtors to make the payments specified in Paragraph 5 to the professionals for the First Lien Steering Committee and the First Lien Agent by 5:00 p.m. (prevailing Pacific Time) in accordance with the terms of this Order;

(VIII)     failure of the Debtors to provide representatives of the First Lien Steering

1  Committee with the access or information as set forth in Paragraph 11(b) hereof;

2  (IX) the entry of an order appointing a chapter 11 trustee or examiner with expanded
3  powers (unless granted upon the request of the First Lien Steering Committee); or

4  (X)       this Order ceases to be in full force and effect.
5

6  (b)       First Lien Steering Committee Access.  Commencing April 29, 2009 at 8:00
7  a.m. and ending 6:00 p.m. (PT), the Debtors shall provide WCP access to the Debtors' conference
8  room at the corporate offices as workspace.  WCP personnel shall not initiate any substantive
9  conversation with any of the Debtors' employees unless prior consent of the Debtors has been
10 obtained through their CFO or Province Real Estate Advisors, Paul Huygens, which shall be
11 granted by the Debtors in their reasonable discretion such that reasonable access to Debtors'
12 employees will be provided.  If WCP requests documents or information from the Debtors, the
13 Debtors shall make a good faith effort to provide the documents or information on a timely basis.
14 WCP will vacate the Debtors' business premises by June 27, 2009 at 6:00 p.m.  As reasonably
15 requested by WCP, the Debtors' managers shall participate in a weekly operational review to allow
16
17 the First Lien Steering Committee (through WCP) visibility into the Debtors' ongoing operations
18 during the Cash Collateral Period.  Such meeting shall be scheduled with the Debtors at a mutually
19 agreeable time, while complying with the requirements of this Paragraph 11(b).  WCP and the
20
21 First Lien Steering Committee shall be authorized to share such information or documents
22 received under this paragraph with the Agents.

23 (c)       Prepetition Secured Party Remedies.

24 (I)  Upon the occurrence of a Cash Collateral Termination Event, the First Lien
25 Agent or any First Lien Lender shall provide two (2) business days written notice (by facsimile,
26 telecopy, electronic mail or otherwise) to the U.S. Trustee, counsel to the First Lien Steering
27 Committee, counsel to the Second Lien Agent, counsel to the Debtors and counsel to any official
28

committee prior to terminating the Debtors' use of Cash Collateral under this Order. Notwithstanding anything herein to the contrary, the First Lien Steering Committee retains the right, in its sole discretion (but in consultation with the First Lien Agent), to waive any such Cash Collateral Termination Event permanently or temporarily. The Debtors, the U.S. Trustee, and any official committee may seek within the two (2) business day notice period an expedited hearing before this Court solely for the purpose of considering whether, in fact, a Cash Collateral Termination Event has occurred and is continuing. At the expiration of such two (2) business day period, unless otherwise ordered by the Court, the First Lien Agent and any First Lien Lender shall be authorized, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit them to take whatever actions necessary to terminate the Debtors' use of Cash Collateral, including freezing any deposit or securities accounts.

(II) The failure or delay by the First Lien Agent or any First Lien Lender to seek relief or otherwise exercise its rights and remedies under this Order or any of the First Lien Loan Documents shall not constitute a waiver of any of the rights of such parties hereunder, thereunder or otherwise, and any single or partial exercise of such rights and remedies against any party or Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other party and/or Collateral. No holder of a lien that is subject to this Order or granted by the Debtors as adequate protection shall be entitled to object on the basis of the existence of any such lien to the exercise by the First Lien Agent or any First Lien Lender of their respective rights and remedies hereunder, under the First Lien Loan Documents, or under applicable law to effect satisfaction of the First Priority Indebtedness or to receive any amounts or remittances due hereunder or under the First Lien Loan Documents. Notwithstanding the occurrence of the Cash Collateral Termination Date or anything herein to the contrary, all of the rights, remedies and benefits and protections provided to the Lender Parties or the First Lien

1    Steering Committee under this Order shall survive the Cash Collateral Termination Date.

2
3       13.    No Granting of Liens.  Except as expressly provided in this Order, the Debtors shall
       be enjoined and prohibited at any time during the Chapter 11 Cases from granting claims or liens in
4
       the Prepetition Collateral or any portion thereof to any other parties pursuant to sections 364(d),
5
       503(b) or 507(b) of the Bankruptcy Code or otherwise.
6
7       14.    Successors and Assigns.  The provisions of this Order shall be binding upon and
       inure to the benefit of each of the Lender Parties, the First Lien Steering Committee and the Debtors
8
       and their respective successors and assigns (including any chapter 7 trustee or other trustee or
9
       fiduciary hereafter appointed as a legal representative of any Debtor or with respect to the property
10
       of the estates of any Debtor).
11
       15.    No Discharge.  The obligations of the Debtors under this Order shall not be
12
       discharged (and the Debtors waive the right to seek or obtain a discharge of such obligations under
13
       section 1141 of the Bankruptcy Code or otherwise) until all obligations arising or payable under this
14
       Order are indefeasibly paid in full in cash by the Debtors.
15
       16.    No Modification.  Based upon the findings set forth in this Order, in the event that
16
       any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent
17
       order of this or any other Court, no such modification, amendment or vacation shall affect the
18
       validity, enforceability or priority of any lien or claim authorized or created hereby or thereby or any
19
       First Priority Indebtedness or Second Priority Indebtedness incurred hereunder.  Notwithstanding
20
       any such modification, amendment or vacation, any First Priority Indebtedness or Second Priority
21
       Indebtedness incurred and any claim granted to the Lender Parties hereunder arising prior to the
22
       effective date of such modification, amendment or vacation shall be governed in all respects by the
23
       original provisions of this Order, and the Lender Parties and First Lien Steering Committee shall be
24
       entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities
25
       granted herein and therein, with respect to any such First Priority Indebtedness and claims.
26
       17.    No Setoff.  Notwithstanding anything herein to the contrary, this Order shall not
27
       require Lender Parties to turn over or release to any party any Cash Collateral in its possession as of
28

the Petition Date that is subject to setoff under the Bankruptcy Code; *provided* that, until the occurrence of a Cash Collateral Termination Event, none of the Lender Parties shall exercise, or seek to exercise, any such setoff rights; *provided further* that all parties hereby reserve all of their rights as to whether any such setoff is valid and enforceable under the Bankruptcy Code and applicable nonbankruptcy law.

18.    This Order is hereby deemed effective immediately pursuant to Federal Bankruptcy Rules of Procedure §6004(h).

19.    The provisions of this Order, including the grant of claims and liens to or for the benefit of the Lender Parties, and any actions taken pursuant hereto shall survive the entry of any order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

20.    Notwithstanding anything contained to the contrary herein, none of the provisions in this Order shall apply to the Second Lien Lenders if it is determined that the Second Priority Liens are wholly unsecured obligations of the Debtors pursuant to section 506 of the Bankruptcy Code pursuant to Court order.

21.    Any notice required to be provided to the Lender Parties under this Order shall be deemed effective if provided to counsel to the First Lien Agent and Second Lien Agent, as applicable, and any notice required to be provided to the First Lien Committee under this Order shall be deemed effective if provided to Akin Gump Strauss Hauer & Feld LLP and WCP.

22.    This Order shall constitute findings of fact and conclusions of law.


**APPROVED**

By: /s/ Brett Axelrod
    GREENBERG TRAURIG
Brett Axelrod
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169
*Counsel for Sagebrush Enterprises Inc.*

**APPROVED**

**APPROVED**

By: _____
United States Trustee
300 Las Vegas Blvd. S., Ste. 4300
Las Vegas, NV 89101

**APPROVED**

PACHULSKI STANG ZIEHL & JONES LLP
LOS ANGELES, CALIFORNIA

1  | By: /s/ Philip C. Dublin

AKIN GUMP STRAUSS

2  | HAUER & FELD LLP

Ira S. Dizengoff (NY Bar No. 2565687)

3  | Philip C. Dublin (NY Bar No. 2959344)

Abid Qureshi (NY Bar No. 268437)

4  | One Bryant Park

New York, NY 10036

5  | *Counsel for the First Lien Steering Committee*

6

7  | **APPROVED**

8  | By: /s/ Don S. De Amicis

ROPES & GRAY LLP

9  | Don S. De Amicis

Mark R. Somerstein

10  | Benjamin L. Schneider

1211 Avenue of the Americas

11  | New York, NY 10036-8704

12  | *Counsel for Wells Fargo, N.A., as Agent for the Second Lien Lenders*

13

14

15  | Submitted by:

16  | LARSON & STEPHENS

17  | By: /s/Zachariah Larson

Zachariah Larson, Esq. (NV Bar No 7787)

18  | Kyle O. Stephens, Esq. (NV Bar No. 7928)

810 S. Casino Center Blvd., Ste. 104

19  | Las Vegas, NV 89101

(702) 382-1170 (Telephone)

20  | (702) 382-1169

21  | *Proposed Attorney for Debtor*

22

By: /s/ Ramon Naguiat

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Ramon M. Naguiat
300 S. Grand Ave., #3400
Los Angeles, CA 90071
*Co-Counsel for Credit Suisse, Cayman
Islands Branch, as Agent for First Lien
Lenders*

# # #

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

Rhodes Homes 13 Week Cash Flow Forecast
Prepared 4/27/2009