1   AUGUST B. LANDIS, Assistant United States Trustee
    State Bar # IA PK9228                                    E-Filed on May 8, 2009
2   EDWARD M. MCDONALD JR., Attorney
    State Bar # NY EM2209
3   edward.m.mcdonald@usdoj.gov
    UNITED STATES DEPARTMENT OF JUSTICE
4   Office of the United States Trustee
    300 Las Vegas Boulevard, So., Suite 4300
5   Las Vegas, Nevada 89101
    Telephone: (702) 388-6600 Attorney Ext. 234
6   Facsimile:  (702) 388-6658

7   Attorneys for the Acting United States Trustee
            SARA L. KISTLER
8
                    UNITED STATES BANKRUPTCY COURT
9
                          DISTRICT OF NEVADA
10

11  In re:

12  THE RHODES COMPANIES,                    CASE NOS: BK-S-09-14814-LBR
    aka "Rhodes Homes, et al.,"[1]           (Jointly Administered)
13
                                             Chapter 11
14
                                             Date:  May 15, 2009
15                                           Time:  10:00 a.m.
                                             Location:  Foley Courtroom 1
16                          Debtor(s).

17
        THE ACTING UNITED STATES TRUSTEE'S OPPOSITION TO DEBTORS'
18
            MOTION TO PAY SALARY TO JAMES M. RHODES
19
        The Acting United States Trustee opposes the debtors' motion to pay a salary to James
20

21  ───────────────────

22      [1]     The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC
    (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC  (Case No. 09-
23  14817);  Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing, LLC  (Case No. 09-14820);  Gung-ho
    Concrete, LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners (Case No. 09-14828); Six
24  Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case
    No. 09-14839);  Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc., (Case No. 09-14843); Rhodes
25  Ranch GP  (Case No. 09-14844);  Rhodes Design & Dev. (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848);
    Tuscany Acquisitions, IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850);  Tuscany
26  Acquisitions II LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf
    (Case No. 09-14854); Overflow, LP  (Case No. 09-14856); Wallboard, LP (Case No. 09-14858);  Jackkknife, LP (Case
27  No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-
    14865); Tick, LP  (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes
28  Arizona, LLC (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and, Pinnacle Grading,
    LLC (Case No. 09-14887).

M. Rhodes ("Motion").  The Motion seeks authorization to pay James M. Rhodes, the Debtors'

president and an insider, his annual prepetition salary of $400,000.  Because Mr. Rhodes is an

insider, 11 U.S.C. § 503( c) is implicated.  The Acting United States Trustee requests that the

Court deny the relief requested in the Motion, limiting any post-petition salary for Mr. Rhodes to

an amount that is actually and reasonably necessary to preserve the Debtors' estates.  This

opposition is supported by the following Memorandum of Points and Authorities, the file and

pleadings in this case.

### MEMORANDUM OF POINTS AND AUTHORITIES

1.  Pursuant to 28 U.S.C. § 586(a)(3), the Acting United States Trustee is charged with

responsibility for supervising the administration of cases under Chapters 7, 11, 12 and 13 of the

Code.  The Acting United States Trustee has standing to raise and to "appear and be heard on

any issue in any case or proceeding" brought under the United States Bankruptcy Code

("Code"). [2]  11 U.S.C. § 307.

2.  All debtors commenced their individual cases by filing voluntary petitions under the

Code on March 31, 2009, with the exception of Rhodes Homes Arizona, LLC, Tuscany Golf

Country Club, LLC and Pinnacle Grading, LLC, which filed  voluntary petitions under the Code

on April 1, 2009.

3.  No Chapter 11 trustee has been appointed in these cases and the debtors operate as

debtors-in-possession.

4. These cases are jointly administered under the lead case styled, In re The Rhodes

Companies, Case No. 09-14814-LBR.  [Docket Entry # 18]

5. On April 1, 2009, Debtors filed a Motion for Order Under 11 U.S.C. §§ 105, 363,

503(b), 1107 and 1108 Authorizing (I) Maintenance of Certain Existing Bank Accounts, (II)

Continued Use of Business Forms, (III) Continued Use of Existing Cash Management System,

(IV) Providing Administrative Priority Status to Postpetition Intercompany Claims, and (V)

Waiver of Section 345(b) Deposit and Investment Requirements [Docket Entry # 10].

---

[2]    11 U.S.C. § 101 *et seq*.

6. Pursuant to an agreement between the Acting United States Trustee and the Debtors, the order approving post-petition payment of the employees of the Debtors provided that any "compensation for post-petition Wages for James M. Rhodes or any of his relatives shall be made by separate application of the Debtors by way of motion for insider compensation." [Docket # 19, p. 4 of 5]

7. In 2005, long after the 1990 case cited by the Motion, the Code was amended through the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). One of the changes made was the addition of Section 503 ( c) to the Code, which was enacted "to limit a debtor's ability to favor powerful insiders economically and at estate expense during a chapter 11 case." In re Pilgrim's Pride Corp., 401 B.R. 229, 234 (Bankr. N.D. Tex. 2009), *citing* In re Airway Industries, Inc., 354 B.R. 82, 87 n. 12 (Bankr. W.D. Pa. 2006).

8. Section 503 ( c) addresses several types of insider compensation which is not permitted absent certain court findings. *See* 11 U.S.C. § 503 ( c)(1) and (2). Section 503( c)(3) is a general provision that prohibits "other transfers and obligations that are outside the ordinary course of business and are not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the foiling of the petition." 11 U.S.C. § 503( c)(3). Recent court decisions have held that a standard higher than the simple business judgement test applies when analyzing transfers implicated by Section 503 ( c)(3). *See, e.g.*, In re Pilgrim's Pride Corp., 401 B.R. 229, 236-37 (Bankr. N.D. Tex. 2009) (citations omitted); *but see, e.g.*, In re Dana Corp., 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006).

9. Because the Code does not provide guidance as to what constitutes the "ordinary course of business," courts use a horizontal and vertical test to make that determination:

> The inquiry deemed horizontal is whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry. The inquiry deemed vertical analyzes the transactions 'from the vantage point of a hypothetical creditor and [the inquiry is] whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit.

 In re Dana Corp., 358 B.R. 567, 580 (Bankr. S.D.N.Y. 2006)(citations omitted).

1   10. Debtors seek the Court's approval to pay their president, James M. Rhodes, the same

2   exact salary he was paid before the commencement of these bankruptcies when the Debtors'

3   business operations were of a much greater magnitude than they are presently.

4   11. At the meeting of creditors, the Debtors' consultant and former chief financial officer

5   Paul Huygens testified that the Debtors have been doing extensive cost cutting for the last two

6   years, making reference to 11 of the 32 jointly administered debtors that are either not operating

7   or in wind-down mode.  Based on Mr. Huygens' testimony at the 341 meeting of creditors, the

8   Debtors had approximately 1500 employees at the peak of the real estate development market

9   and "by way of comparison it's less than a hundred now."  Mr. Huygens also acknowledged that

10  the Debtors have "cut and cut and cut and cut and cut," by shutting down offices in Las Vegas

11  and Arizona, shutting down model complexes, laying off employees, selling equipment and

12  noting "it's screeching to a halt as quickly as it can possibly be done." [Testimony of Paul D.

13  Huygens, 341 meeting of creditors, May 7, 2009, at 1:09:04 through 1:09:50; see also Docket #

14  64 at p. 5 of 44]

15  12. Paying Mr. Rhodes the same amount of compensation he received pre-petition in

16  light of the extensive cost cutting measures testified to by Mr. Huygens at the 341 meeting of

17  creditors appears to be outside the ordinary course of the Debtor's business, in view of the

18  decline in the Las Vegas real estate market.   A hypothetical investor could also be reasonably

19  expected to view as extraordinary the Debtors paying the same wage to Mr. Rhodes while

20  making drastic cuts everywhere else in the run up to bankruptcy and considering the present state

21  of the Debtor entities.  The Debtors have not provided evidence that Mr. Rhodes had reduced his

22  salary as part of the Debtors' extensive cost cutting measures in the period before they filed

23  bankruptcy.  It would be reasonable for a hypothetical investor to expect such measures to be a

24  part of the cost cutting measures in order to avoid draining the Debtors of assets through

25  administrative fees post-petition.  Therefore, it appears that the proposed payment at pre-petition

26  levels may be outside the ordinary course of business and therefore subject to scrutiny under

27

28

Section 503( c)(3).[3]

13.  Under section 503( c)(3) the payment of a salary to Mr. Rhodes at the pre-petition level does not appear to be appropriate.  Eleven of the debtors are non-operating wind-down companies, and an additional eight companies are simply holding companies.  In addition, based a review of the summary of schedules filed in the 32 individual bankruptcy cases, the Debtor entities have assets that appear to be comprised of approximately $120 million in real estate and $300 million in inter-Debtor receivables, while facing liabilities that appear to exceed $500 million.  Paying the Debtors' insider at his prepetition salary level does not appear to be in line with the Debtors' extensive cost cutting measures, and will drain additional assets from the Debtors' already strapped estates in the form of significant administrative expenses.

**WHEREFORE**, the Acting United States Trustee requests that the Motion be denied to the extent that the amount of compensation requested is not actually and reasonably necessary to preserve the Debtors' estates or to the extent that Debtors do not show that the pre-petition salary the Debtors seek to pay Mr. Rhodes is commensurate with the extensive cost cutting measures that the Debtors have undertaken in the two years before filing these Chapter 11 cases.

Dated:  May 8, 2009

Respectfully submitted,

**THE UNITED STATES TRUSTEE**

By:  _/s/ Edward M. McDonald Jr._
Edward M. McDonald Jr., Esq.
Attorney for the United States Trustee

---

[3]     It is also important to note that both the Motion and supporting Declaration of Paul David Huygens assert that loss of Mr. Rhodes' services would hurt the Debtors' operations, which could be read as implicating coverage of 11 U.S.C. § 503 (c)(1) and its requirements. [See Docket # 94, p. 9 of 9; Docket # 96, p. 4 of 4, para. 16].

1

# CERTIFICATE OF MAILING

2

I, the undersigned, hereby certify and declare that I deposited a true and correct copy of

3

this opposition in first class United States mail, postage fully prepaid, and, if a facsimile number

4

is listed, by facsimile, on this date to each of the parties listed below:

5

6  Zachariah Larson, Esq.                          James Stang, Esq.
   Larson & Stephens, LLC                          Pachulski Stang Ziehl & Jones LLP
7  810 S. Casino Center Blvd., Suite 104           10100 Santa Monica Blvd., 11th Floor
   Las Vegas, NV 89101                             Los Angeles, CA 90067-4100

8

9

Dated: May 8, 2009

10

## OFFICE OF THE UNITED STATES TRUSTEE

11

By: _/s/ Edward M. McDonald Jr._

12

An Authorized Employee of the United States Trustee

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page -6-