James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
       scho@pszjlaw.com
       wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702/382.1170
Facsimile: 702/382.1169
Email: zlarson@lslawnv.com
[Proposed] Attorneys for Debtors and
Debtors in Possession

E-Filed: May 11, 2009

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br><br>Debtors.<br><br>Affects:<br><br>☒ All Debtors<br>☐ Affects the following Debtor(s) | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>DATE:   June 5, 2009<br>TIME:   1:30 p.m.<br>PLACE:  Courtroom 1 |

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No.

# DECLARATION OF NOEL BEJARANO IN SUPPORT OF APPLICATION FOR ORDER UNDER SECTION 327(a) OF THE BANKRUPTCY CODE AUTHORIZING THE LIMITED EMPLOYMENT AND RETENTION OF NOEL BEJARANO AS BUSINESS OPERATIONS CONSULTANT TO THE DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE

I, Noel Bejarano, declare as follows:

1. This Declaration is submitted in support of the *Application For Order Under Section 327(a) Of The Bankruptcy Code Authorizing The Limited Employment And Retention Of Noel Bejarano As Business Operations Consultant To The Debtors And Debtors In Possession Nunc Pro Tunc To The Petition Date* (the "Application"), which is being submitted concurrently herewith.

2. I am a Vice President of Ridgeback Partners, a real estate firm founded by Jeff Barcy in 2007 that provides turnaround advisory and consulting services to help distressed homebuilders, banks and institutional investors work through their problems. I was previously Acquisitions Originator for Hearthstone, where I was responsible for deal origination and relationship management for investments. While at Hearthstone, I originated and closed over $269 million of residential projects. Before focusing on real estate, I worked in several management roles at Goldman Sachs and as an officer of the United States Army. Over the course of 8 years, I was responsible for building, managing, and motivating diverse teams of people (ranging from several individuals to over 50 people) to accomplish challenging goals under often-difficult circumstances. My previous management experience and training provide an effective edge in helping teams at distressed companies to successfully navigate the challenging conditions surrounding a bankruptcy filing.

3. I was employed by the Debtors beginning January 28, 2009 as an outside consultant at the agreed upon rate of $125,000 per year. During this prepetition work period, I developed a significant level of institutional knowledge relating to the Debtors' operations, systems and personnel. I was tasked with leading the Debtors' efforts to prepare for their chapter 11 filing (the "Filings"), including the numerous "first day" motions, and served as the primary point of contact between the Debtors and their bankruptcy counsel. In this effort, I interfaced with various

---

09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

1  departments of the Debtors to collect and organize the information needed for the Filings. My last
2  day of work with the Debtors was April 17, 2009.

3      4.    I do not, insofar as I have been able to ascertain, have any connection with the above-
4  captioned debtors (collectively, the "Debtors"), their creditors, equity security holders, or any other
5  parties in interest, or their respective attorneys, in any matter relating to the Debtors or their estates,
6  except as set forth below.

7      5.    Though I am a Vice President of Ridgeback Partners, the Debtors engaged me as an
8  independent consultant, and not as a member of Ridgeback Partners. All compensation the Debtors
9  paid to me during my entire engagement was paid to me personally. Furthermore, though I am an
10 "employee" of Ridgeback Partners, I have never received a salary or any other compensation or
11 benefits (except reimbursement for documented expenses) from Ridgeback Partners or Jeff Barcy.

12     6.    Jeff Barcy is the chief executive officer of Ridgeback Partners. I am informed and
13 believe that Mr. Barcy spent over 12 years working as an investment banker at Credit Suisse First
14 Boston, which is one of the Debtors' secured lenders and also the Administrative Agent to the
15 lending group for the $430,000,000 Senior Secured Credit Facility (First Lien) and the $70,000,000
16 Second Secured Credit Facility (Second Lien) (collectively, the "Secured Loans"). I am informed
17 and believe that Mr. Barcy helped negotiate the Secured Loans on behalf of Credit Suisse First
18 Boston, though he no longer worked for Credit Suisse First Boston at the time the Secured Loans
19 were closed.

20     7.    I am a "disinterested person" as that term is defined in section 101(14) of title 11 of
21 the United States Code (the "Bankruptcy Code") in that I:

22         a.    am not a creditor, equity security holder or insider of the Debtors;

23         b.    am not and was not, within 2 years before the date of the filing of the
24 petitions, a director, officer or employee of the Debtors; and

25         c.    do not have an interest materially adverse to the interest of the estates or of
26 any class of creditors or equity security holders, by reason of any direct or indirect relationship to,
27 connection with, or interest in, the Debtors, or for any other reason.

28

1  8. I may have in the past represented, and may currently represent and may in the future represent creditors of the Debtors in connection with matters unrelated to the Debtors and these cases. At this time, I am not aware of such representations.

9. I am not aware of any relationship as a "relative" with any U.S. Bankruptcy Judge in this District or with the United States Trustee for Region 17 that would be subject to the requirements of Bankruptcy Rule 5002(b).

10. I intend to apply for compensation for professional services rendered in connection with these chapter 11 cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the District of Nevada and this Court's Orders, based upon its normal and usual billing rates. I charged the Debtors rates consistent with the rates I charge other clients. Prior to the Petition Date, I was paid monthly at the rate of $125,000 per year. My compensation was $100 per hour during the post-petition period.

11. I will receive reimbursement of expenses, including travel, lodging, cell phone service, photocopying, witness fees, long distance telephone calls, postage, express mail and messenger charges, expenses for working meals and telecopier charges. I charge the Debtors for these expenses in a manner and at rates consistent with those I generally charge my other clients; provided, however, I will comply with the guidelines for charging bankruptcy estates for such expenses that are applicable in this District.

12. Prior to the Petition Date, I received a retainer (the "Retainer") in these cases in the amount of $7,500. During the twelve months prior to the Petition Date, I received $35,013.12 in the aggregate from the Debtors, including the Retainer and reimbursed expenses. The Debtors do not owe me any monies as of the Petition Date. I am currently holding a Retainer in the amount of $7,500.

13. If the Application is approved, I will submit a first and final fee application. I understand that my compensation in these cases is subject to the prior approval of this Court. No compensation will be paid except upon application to and approval by this Court after notice and a

1 | hearing in accordance with sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule
2 | 2016.
3 |     I declare under penalty of perjury under the laws of the state of California that the foregoing
4 | is true and correct. Executed this 2nd day of May, 2009, in San Francisco, California.

*/s/ Noel Bejarano*
Noel Bejarano