1  JANICE J. BROWN
   Nevada Bar No. 001118
2      E-Mail: jbrown@lbbslaw.com
   JEFFREY D. OLSTER
3  Nevada Bar No. 008864
       E-Mail: olster@lbbslaw.com
4  LEWIS BRISBOIS BISGAARD & SMITH LLP
   400 South Fourth Street, Suite 500
5  Las Vegas, Nevada  89101
   Telephone: (702) 893-3383
6  Fax: (702) 893-3789
   Attorneys for Defendant
7  *Harsch Investment Properties - Nevada, LLC*

8                 **UNITED STATES BANKRUPTCY COURT**

9                        **DISTRICT OF NEVADA**

10  In re:                              | Chapter 11

11                                      | Case No. BK-S-09-14814-LBR
12  THE RHODES COMPANIES, LLC. aka      | (Jointly Administered)
    "RHODES HOMES" et al.
13                                      | Chapter 11
                    Debtor.
14  Affects the Following Debtor:       | Hearing Date:  July 17, 2009
    Rhodes Design and Development Corp.(1963) | Hearing Time: 1:30 p.m.
15  Bravo, Inc. aka Rhodes Framing (2642)  | Courtroom 1
16

17                  **MOTION FOR RELIEF FROM STAY**

18       **REFILED PURSUANT TO ORDER OF THE COURT AND UPDATED.**

19       Pursuant to this Honorable Court's minute order entered June 26, 2009, Unsecured creditor,

20  HARSCH INVESTMENT PROPERTIES - NEVADA LLC, (hereinafter, "Creditor") by and through

21  its attorneys, LEWIS BRISBOIS BISGAARD & SMITH, LLP., respectfully represents to this

22  Honorable Court as follows:

23                    Memorandum of Points and Authorities

24       1.      On or about March 31, 2009, BRAVO, INC., aka RHODES FRAMING (hereinafter,

25  "Debtor") filed a voluntary petition for reorganization under Chapter 11 of the United States

26  Bankruptcy Code and updates the petition to account for further orders by the State Court and

27  representations as to insurance coverage by the representative of the Debtor Rhodes Companies as to

28



4832-4529-2291.1

1 terms of liability insurance coverage.

2      2.      In the supporting papers for its filings, Document No. 13, filed April 30, 2009, at page

3 2, Item 4, Debtor notified the Court that there is an existing state court suit entitled *Rosen v. Bravo,*

4 *Inc., et al.*, case no. 08-A-570558-C, assigned to Hon. Timothy Williams.  The defendants in the suit

5 are Debtor Bravo, Inc., dba Rhodes Framing; Tenant and Creditor Harsch Investment Properties-

6 Nevada LLC, Landlord.  (The Ch. 11 papers show that the true name is Bravo, Inc. aka Rhodes

7 Framing).

8      3.      Undersigned attorneys represent the defendant/crossclaimant Creditor Harsch

9 Investment Properties - Nevada LLC in that lawsuit.  Lloyd W. Baker represents Creditor Ian Rosen.

10 Debtor Bravo, Inc. aka Rhodes Framing is in default on Plaintiff's Complaint and has not responded

11 to the Harsch Crossclaim, both of which were served pre-petition.

12      4.      As shown by Exhibit "A" to this Motion, Debtor's counsel filed a notice of stay

13 pending bankruptcy in that action on April 9, 2009, amended April 29, 2009. This application to lift

14 the bankruptcy stay in this action is necessitated by the needs of the Rosen state court lawsuit only

15 insofar as there is or may be insurance applicable and/or any proceedings needed to identify and

16 pursue claims for defense and tender under Debtor's insurance policies.

17      5.      The Certificate of Insurance applicable to this Motion was issued by Debtor Bravo's

18 insurance broker to Creditor Harsch at or about the time the Lease was entered into between Bravo,

19 Inc. dba Rhodes Framing and Harsch Investment Properties-Nevada LLC. (Hereinafter, "the Lease.")

20 A copy of the  Certificate of Insurance marked as  Exhibit "B" attached to this Motion and

21 incorporated at this point by reference as though fully set forth.  The Certificate of Insurance has no

22 limitations on defense.  It sets forth no limitations to coverage or defense by self-insured retention

23 amounts.   The companies identified in the Certificate are hereinafter designated in this Motion as

24 "London Underwriters.)

25      6.      As to the claim that led to the Rosen lawsuit, on September 16, 2006, Creditor is

26 informed and believes that Creditor Ian Rosen was an employee of Debtor Tribes Holdings, Inc., and

27 on the leased premises with permission of the tenant, when he allegedly turned off a light switch

28 receiving a shock to his hand and alleged permanent injuries to his upper extremity at the left elbow.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Mr. Rosen seeks damages from Creditor and the Debtor.

2       7.     Creditor filed an Amended Answer to the Rosen Complaint along with a cross claim

3  against co-defendant Bravo, Inc. dba Rhodes Framing in the Eighth Judicial District Court. Bravo has

4  filed no appearance in the case. Before Creditor Harsch could default Bravo, Inc., it filed bankruptcy

5  proceedings triggering the automatic stay. Creditor would agree to hold default in abeyance and

6  permit an answer to be filed is the stay is lifted.

7       8.     As to the basis for the Cross Claim Creditor brought against Debtor, on or about on or

8  about February 1, 2005, Creditor leased to Debtor office-warehouse space and loading docks at 470

9  Mirror Court, Henderson, Nevada, on an "AS-IS" basis, all as set out in paragraphs 2.2 and 7.1.1 of

10 the Lease Agreement.   (Note: A copy of the lease is included as part of the letters marked Exhibit

11 "D" attached to this Motion.)

12      9.     Pursuant to paragraph 7.2.2 of the Lease, Bravo was required to maintain the "electrical

13 and lighting systems" of the leased premises.

14      10.    In addition, in Paragraph 11.3 of the Lease Bravo expressly agreed to indemnify

15 Creditor Harsch against all claims and, losses as described in the paragraph, including but not limited

16 to injury to persons relating to the tenant's use and occupancy of the premises. Bravo also agreed to p

17 purchase liability insurance for Creditor Harsch's benefit on stated terms, which Bravo failed to do.

18      11.    Since the original Motion to Lift Stay was filed in the Bravo bankruptcy, the State

19 Court has vacated the  jury date of November 2, 2009, but the Discover Commissioner has also

20 ordered that the action proceed as between Rosen and Credit Harsch, staying the action only as to

21 Bravo, Inc.

22      12.    Creditor Harsch submits that the two underwriting groups that issued certificates of

23 insurance to Creditor Harsch should be required to defend their additional insured regardless of

24 whether the Debtor's SIR is not exhausted by payments. The reported self insured retention is "US$

25 2,000,000 per occurrence, subject to an aggregate of US $6,000,000 and a trail Self-Insured Retention

26 of US$ 250,000 per occurrence. (Dec Page for Police A4/7504/134) (Collectively, herein, "SIR.")

27 (See, Exhibit "C" attached hereto. Creditor understands it to be an accurate summary of the policy

28 terms.)  There is no "primary carrier" apparently.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

13.    For purposes of evaluating the relative interests in assessing the need for lifting the automatic stay in this case, Creditor asserts that a liability insurance policy purchased prior to the filing of a bankruptcy estate is "property of the estate" within the meaning of section 541(a) of the Bankruptcy Code, 11 U.S.C. Section 541(a). *See*, for example, *In re Minoco Group of Cos. Ltd.* 799 F.2d 519 (9 Cir. 1986). Accord, *In re Computer Communications, Inc. v. Codex Corp.*, 824 F.2d 725 (9th Cir. 1987). Insurance policies are covered by the automatic stay provision of the Bankruptcy Code. *See Macarthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988). Although Section 362(a) stays generally apply to bar proceedings against the debtor they may be extended when "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. V. Nuygard Int'l*, 321 F.3d 282, 287 (2dCir. 2003). Examples of such instances include a claim against the debtor's insurer. *Id*.

14. In the Illinois bankruptcy case entitled *Home Insurance Co. v. Hooper*, 691 N.E.2d 65 (Ill. App.Ct. 1998)(applying Illinois Bankruptcy Law Section 215 ILCS 5/388, ruling that provisions aimed at preventing drop down in policies are invalid.) The Court wrote that there is nothing in the public policy underlying the bankruptcy law evidencing that payments for indemnity claims and payments for defense costs should be treated differently than other claims against the debtor. The public policy implemented by (Illinois) bankruptcy statutes is that injured parties shall be compensated whether or not a bankrupt debtor pays its self-insured retention. *See In re Keck, Mahin & Cate*, 241 Bankr. 583 (N.D. Ill. 1999). The *Home Insurance Court* held that the plain language of the applicable section showed the legislative intent to prevent insurers from using the insured's bankrupt condition and resulting inability to make actual payment to satisfy a judgment or any portion thereof as grounds to avoid payment on a policy. *Id*. The court held that even in the absence of an applicable statutory provision such as the cited Illinois statute, the failure of a bankrupt insured to fund a self-insured retention does not relieve the insurer of the obligation to pay claims under the policy. Where, as here, an insured debtor has paid the policy premium in full, and the policy term has ended, the insurance policy is not an executory contract for purposes of section 365 of the Bankruptcy Code, even where the debtor has continuing obligations, such as the payment of a self-insured retention should covered claims be made.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4831-3407-7443.1                                                    4

1    15. Failure of the debtor to perform these continuing obligations does not excuse an excess

2   insurer from performance under the contract, but gives rise to an unsecured claim by the insurer for

3   any damages incurred by reason of the debtor's breach of the policy.  The debtor's payment of the

4   policy premium constitutes substantial compliance with its contractual obligations.  See *Argonaut Ins.*

5   *Co. v. Ames Dept Stores (In re Ames Dep't Stores)* (S.D.N.Y. 1995).

6    16. In the New York case of *In re Vanderveer Estates Holding LLC*, 328 B.R. 18, 24-26,

7   (Bankr. E.D.N.Y. 2005) the Court held that the insurer could not compel the debtor to meet its pre-

8   petition obligation to send the first $25,000 per occurrence to defend claims as required under the

9   insurance policy.  These continuing SIR obligations would not excuse the insurer from being required

10   to perform.  The debtor's payment of the deductible amount was not a pre-condition to the insurer's

11   performance.  Post petition breach of a contact executed pre petition, such as Harsch's Lease and the

12   excess policies, give rises only to pre petition liability.  Equity requires that the London Underwriters

13   be ordered to "drop down" to indemnify Harsch and pay all of its defense costs, despite the unpaid

14   SIR.  The London Underwriters have obligations to the Creditor that are amenable to this Court's

15   orders and determinations.   Based on the law and the facts, Creditor Harsch is entitled to an order

16   lifting the stay for purposes of the state court action that Rosen filed and is entitled to defense by the

17   London Underwriters.

18    17. By failing to purchase insurance without a deductible amount as required by the Lease,

19   Bravo Inc is guilty of a lack of good faith in the performance of a contract.  That conduct  is the

20   subject of the cross claim in the pending state court action at issue.   Debtor Bravo failed to secure

21   insurance in the manner required by the Contract, to-wit, liability insurance covering the risk without

22   a self retained amount and commensurate with other provisions of the Lease.  (Note that there is no

23   claim advanced in the Harsch Crossclaim in the Rosen case for monies owed under the Lease itself.

24   Creditor Harsch's claims are limited to the violations of and/or enforcement of the insurance

25   obligations and hold harmless/indemnification provisions of the Lease.  There is no such contract

26   damage claim at issue in this Motion.  Although Bravo could also be liable to Harsch as the active

27   joint tortfeasor, such an action would be premature.)

28    18. Creditor is informed and believes and thereupon alleges  that all conditions of the CGL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4831-3407-7443.1                                                5

1  coverage part contained in the Rhodes excess policies are met:  (1) there is a suit; (2)  Harsch, the

2  indemnitee of the insured (Bravo) is also named as a party to that suit; (3)  there is an applicable

3  insured contract (i.e., the insured Lease); (4) Any sums owed Rosen by Harsch are  sums  owed as

4  supplemental payments under the CGL coverage terms; and (5) Bankruptcy of the primary insured

5  does not relieve the London Underwriters of their obligations under the CGL coverage part to the

6  additional insured.  See, for example CG form 00 01 01 96, attached as Exhibit C to this Motion.

7      19.    Creditor believes and thereupon alleges that the excess policies (Exhibit "C") name

8  Bravo, Inc. dba Rhodes Framing is an insured subcontractor under the policy (Named Insured

9  Endorsement); that defense costs will erode the Self-Insured Retention amount; and that the risk of

10  insolvency as to defense and indemnity was retained by the named insured (Rhodes Design &

11  Development Corp., ) and not by the London Underwriters.

12      20.    Although Harsch made written demand for defense and indemnity to Debtor Bravo on

13  July 12, 2007, and to the London Underwriters' United States representative, neither the Rhodes, nor

14  Bravo, nor  the London Underwriters  have responded to Harsch's demands.    Efforts to have this

15  claim defended since the first demand in 2007 have been to no avail.  See the letters and the

16  attachments, including the Lease, which are marked collectively as Exhibit "D" and attached hereto.

17      21.    The bankruptcy courts are courts of equity.  Principles of equity should estop the

18  London Underwriters from denying defense and  indemnity  to creditor Harsch.  Harsch relied upon

19  the broker to issue for Bravo coverage which comported with the Lease.  London Underwriters are

20  bound by the coverage which their U. S. representative placed to conform to the Harsch Lease.

21      22.    Creditor Harsch has a right under these policies to be defended separate and apart from

22  the debtor's legal obligations to the London underwriters under the policy.   Harsch undertook no

23  obligation to satisfy the Bravo SIR before defense and indemnity were afforded.  There is a difference

24  between owning a policy and owning the proceeds of the policy and owning  the right to be defended

25  under a policy.  While Rhodes owned the policy, Harsch is entitled to the proceeds of the policy to pay

26  covered claims and Harsch owns the right to be defended under the policy irregardless of the SIR.

27  Even if Harsch were bound by the debtors agreement as to the SIR,  the London Underwriters which

28  issued the excess policies  to Bravo, and whose agent issued the Certificate of Insurance to Harsch,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  cannot reasonable enforce the limitations of the SIR provisions against an additional insured.

2       23.    The Debtor is now an estate in bankruptcy under the control of the bankruptcy court

3  and the bankruptcy trustee and, therefore, the decision as to defense of the Creditor Harsch is for the

4  Court, not the Debtor and not the Insurer to make.  The policy is an asset of the bankruptcy estate.

5  Decisions as to that policy are for this Court and the Trustee to make, not the London underwriters,

6  not the Debtors, and not their attorneys.

7       24.    Technically, the Debtor insured's duty under the policy to exhaust the SIR has been

8  extinguished by the filing of this action unless reorganization occurs while there are still claims to be

9  made against Bravo.  As a matter of law, it no longer has the ability to pay its SIR amounts.  Anything

10  that the London Underwriters are required to pay to or on behalf of the Rosen litigation that should

11  have been paid under the SIR will be an appropriate subject of an unsecured creditor's claim in this

12  action.  *See*, for example, *American Safety, supra, at 25-26* (denying American Safety declaratory

13  judgment based on the premise that as a matter of law an excess insurance carrier was not required to

14  "drop down" to defend or indemnify a bankrupt insured when the excess insurance coverage is

15  contingent upon payment of a self-insured retention by the insured.)

16       25. In face of objections which might be raised by the Debtor to this Motion to Lift Automatic

17  Stay, another resolution for this Creditor might be for the Debtor to agree, and the Creditors and the

18  Trustee and this Court to permit, the Debtors to give the London Underwriters a promissory note for

19  the sums expended in the Rosen action in defending Harsch.  The note would be payable upon

20  discharge from Ch. 11 reorganization and/or if no reorganization occurs, payable as an administrative

21  expense if this matter is converted to regular bankruptcy under another provision of the Bankruptcy

22  Code.

23       26.    The Rosen case filed in state court appears to be the only tort action actively in

24  litigation, but there could well be other claims or suits that materialize during the reorganization

25  period which would face the same insurance issue.  Therefore, a ruling as to Harsch on this Motion is

26  not dispositive as to similar motions that could be forthcoming.  The last effective date of the policy

27  was 2007, but timely causes of action could be brought against the debtor.  Denying the Creditor relief

28  will not end the issue.   Entering any of the alternative orders that Creditor Harsch requests in this

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Motion will benefit all other parties similarly situated.

2      27. While the Debtor or other Creditors may well believe themselves to be properly informed

3  as to policy terms and conditions and may well be correctly anticipating what the London

4  Underwriters' position on defense and indemnity will be, in fact the underwriters can waive coverage

5  defenses and drop down if they wish to, as a matter of self interest and economics, and, if they do not

6  properly deny or reserve their rights, they may have other legal issues confronting them. Therefore,

7  this Court cannot reasonably infer that the London underwriters will or legally could deny Harsch

8  defense and indemnity against the Rosen claims. All unsecured creditors would have to be paid in full

9  in order for the $2,000,000 SIR to be paid in full. That is an unreasonable burden to place on third

10  parties who are entitled to be defended and indemnified.

11      28. The London Underwriters who must defend Harsch and others in personal injury suits

12  stand on no different footing than other general unsecured creditors.   Requiring the London

13  Underwriters to defend and indemnify Harsch and then allowing the London underwriters to file  an

14  unsecured claim for its losses due to its named insured's failure to meet its contractual obligations is a

15  reasonable accommodation to all interested parties' interests.  That way, Creditor Harsch (and others

16  potentially) will obtain the defense each is contractually bound to receive from Bravo, Inc., and the

17  London underwriters, but there is no immediate administrative charge against the cash on hand which

18  will reduce monies available to pay other debtors during the reorganization period.

19      29. As shown by the document marked Exhibit "E" and attached hereto, Creditor Rosen has

20  filed a creditor's claim in the sum of Two Hundred Thousand Dollars ($200,000.00).  Creditor Harsch

21  believes that an appropriate recovery in fact would be less.  Nonetheless, it also cannot be said as a

22  matter of law that Rosen cannot recover in excess of the   $250,000 per case which is necessary t

23  trigger the excess coverage.  There is no acceptable reason to use the unpaid SIR as a vehicle to avoid

24  the London Underwriter's absolute duty to defend their additional insured consistent with the terms

25  and conditions of the certificate of insurance provided to them, in combination with the unambiguous

26  provisions of the excess policies. Unless the Court lifts the stay against the Debtor and the debtor's

27  property, i.e., the listed excess policies, Harsch cannot move forward with these claims for defense

28  and indemnity against Bravo and the London underwriters while it is of value to Harsch to do so.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

30. This creditor's right to indemnity and defense will be demonstrably and immediately jeopardized if the stay is not lifted so that discovery can be done as to Bravo, Inc.'s managers and its documents and the basis for claims against the London underwriters and brokers, if any are required.

31. It is a waste of judicial time and court and party resources for the state court to try the Rosen claim against the creditor Harsch without also trying the case against the Debtor Bravo. It would be wasteful and inefficient to do so under present circumstances.

32. At the least, Creditor Harsch is entitled to an order that the stay be lifted to the extent that the excess insurers can be required to defend Harsch against Rosen's claims at the expense of the bankruptcy estate using the services of Mr. Lee, or their choice of counsel and/or pursue claims against London insurers. This case can be defended with appropriate vigor and at reasonable cost by Bravo who is currently in default. The court has already received applications for employment of attorneys and other special consultants to represent the interests of the Debtor(s) on an ongoing basis. Employment of counsel to defend the Rosen claims and the Harsch claims should also be approved.

33. In the alternative, as a matter of fairness and equity, Creditor Harsch is entitled to an order lifting the stay for purposes of conducting discovery as to Bravo, Inc. and Bravo, Inc.'s so that Harsch will have testimony from Bravo's corporate witnesses and employees and can obtain its documentary and tangible evidence for purposes of the Rosen v. Harsch jury trial, even if the Court concludes there is no liability insurance available which would justify sending the Rosen claims against Bravo or the crossclaim against Bravo to the jury for decision.

34. If Creditor Harsch is not permitted its remedies against the Debtor and the London Underwriters, it will suffer irreparable injury, loss and damage.

35. The United States representative for the London Underwriters stands silent in the face of Harsch's pre suit and post bankruptcy demands. (See, Exhibit C.) It is fair for a bankruptcy court to find that the London Underwriters have waived any right they might otherwise have had to refuse to defend Rosen's action for Creditor Harsch, or pay its attorneys' fees and indemnity obligations until the SIR was paid. Harsch undertook no promise wait until Rhodes/Bravo had exhausted the SIR before seeking the defense and indemnity it is owed under the Lease. (Exhibit "D".)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4831-3407-7443.1                                         9

1      Conclusion

2      WHEREFORE, HARSCH INVESTMENT PROPERTIES - NEVADA LLC, prays that upon

3  the hearing of the Motion,

4      1. The Court enter appropriate orders to lift the stay afforded the Debtor pursuant to 11 U.S.

5  Code 362 as permitted by law  to permit Creditor to make its claims against Bravo, Inc., and its

6  defenses in the Rosen claims in the state court action as well as all its claims against the policy issued

7  by the London Underwriters.

8      2. In the alternative, the Creditor requests that this Honorable Court determine and order that

9  the London Underwriters  provide a defense to Creditor Harsch in Creditor Rosen's state court action

10  and repay the defense costs incurred to date with utmost dispatch so that Harsch can defend the Rosen

11  claims in the absence of Bravo, Inc.

12      3. Independent of either order, Creditor Harsch requests that this Honorable Court order that

13  Bravo, Inc. make its witnesses and documents available in the state court action, authorizing the

14  Debtor to utilize the services of previously approved defense counsel (if necessary to do so) so that the

15  evidence on the issues peculiar to Bravo will not be lost to Creditor Harsch.

16      4. Creditor Harsch requests such other and further relief as the Court may deem proper.

17      Respectfully submitted this 2nd day of  July, 2009.

18                LEWIS BRISBOIS BISGAARD & SMITH LLP

19

20      By   _Jeffrey D. Olster /s/_
        JANICE J. BROWN
21      Nevada Bar No. 001118
        JEFFREY D. OLSTER
22      Nevada Bar No. 008864
        400 South Fourth Street, Suite 500
23      Las Vegas, Nevada 89101
        Attorneys for Defendant
24      *Harsch Investment Properties- Nevada, LLC*

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4831-3407-7443.1                10

1

## CERTIFICATE OF SERVICE

Pursuant to N.R.C.P 5(b), I certify that I am an employee of LEWIS BRISBOIS BISGAARD

2

& SMITH LLP and that on this 2nd day of July, 2009, I did cause a true copy of **MOTION FOR**

3

**RELIEF FROM STAY AS REFILED AND UPDATED** to be forwarded via United States Mail,

4

5

with first class postage prepaid thereon, and addressed as follows:

6

Office of the U.S. Trustee
300 S. Las Vegas Blvd., Ste. 4300

7

Las Vegas, NV 89101

8

Lloyd W. Baker, Esq.
Jason W. Barrus, Esq.

9

BAKER LAW OFFICES
500 South Eighth Street

10

Las Vegas, NV 89101
Facsimile: 702-360-3234

11

*Attorneys for Plaintiff*

12

Richard S. Staub, Esq.
P.O. Box 392

13

Carson City, NV 89702
*Attorneys for Builders Association Western Nevada*

14

Zachariah Larson, Esq.

15

Kyle O. Stephens, Esq.
LARSON & STEPHENS

16

810 S. Casino Center Blvd., Suite 104
Las Vegas, NV 89101

17

Facsimile: 702-382-1169
*Attorneys for Defendant, Bravo, Inc.*

18

19

20

BY:   Carol Rojas
An Employee of

21

LEWIS BRISBOIS BISGAARD & SMITH LLP

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4831-3407-7443.1                                    11