NILE LEATHAM, ESQ.
Nevada Bar No. 002838
TIMOTHY P. THOMAS, ESQ.
Nevada Bar No. 005148
**KOLESAR & LEATHAM, CHTD.**
3320 West Sahara Avenue, Suite 380
Las Vegas, Nevada 89102-3202
Telephone No. (702) 362-7800
Facsimile No. (702) 362-9472
E-Mail:    nleatham@klnevada.com
           tthomas@klnevada.com

IRA S. DIZENGOFF (NY Bar No. 2565687)
PHILIP C. DUBLIN (NY Bar No, 2959344)
ABID QURESHI (NY Bar No. 2684637)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: 212.872.1000
Facsimile: 212.872.1002
E-Mail:    idizengoff@akingump.com
           pdublin@akingump.com
           aqureshi@akingump.com

Counsel for **First Lien Steering Committee**

*Electronically Filed*
*July 9, 2009*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br><br>            Debtors. | CASE NO. BK-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>**Hearing Date:  July 17, 2009**<br>**Hearing Time:  1:30 p.m.** |

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850): Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860): Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club. LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

| | |
|---|---|
| Affects:<br>☒ All Debtors<br>☐ The Following Debtor(s): | OBJECTION OF THE FIRST LIEN STEERING COMMITTEE TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER EXTENDING THEIR EXCLUSIVITY PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE AND (II) EMERGENCY MOTION TO EXTEND THE 90-DAY TIME PERIOD TO FILE A PLAN UNDER SECTION 362(d)(3) OF THE BANKRUPTCY CODE |

The First Lien Steering Committee (the "First Lien Steering Committee"), consisting of certain unaffiliated lenders under the Credit Agreement dated as of November 21, 2005 among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein as the Lenders (collectively, the "First Lien Lenders"), and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, by and through its undersigned counsel, hereby files this objection (the "Objection") to (i) the Motion of Debtors for Entry of an Order Extending their Exclusivity Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121(d) of the Bankruptcy Code (the "Exclusivity Motion") and (ii) Emergency Motion to Extend the 90-Day Time Period to File a Plan Under Section 362(d)(3) of the Bankruptcy Code (the "SARE Extension Motion and, together with the Exclusivity Motion, the "Motions"). In support of this Objection, the First Lien Steering Committee respectfully represents as follows:

## PRELIMINARY STATEMENT[2]

1.      By the Motions, the Debtors seek to extend their exclusive plan filing and solicitation periods in an attempt to control a plan process that, thus far, has been largely driven by the First Lien Steering Committee. As the First Lien Steering Committee advised the Court in its recent statement regarding the Debtors' use of cash collateral (Docket No. 285), the First Lien

_____

[2] Terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motions, as applicable.

Steering Committee determined in late June that negotiating a fully consensual transaction with the Debtors and James Rhodes, in his individual capacity, could not be achieved. Accordingly, the First Lien Steering Committee focused its efforts on negotiating a consensual restructuring with the Committee and has made substantial progress in this regard over the past few weeks.

2. The First Lien Steering Committee fully expects to be in a position to file a plan of reorganization that will have the support of the Committee in the coming weeks. The First Lien Steering Committee will not be permitted to file such plan if the Debtors' exclusivity periods are extended. Thus, while the First Lien Steering Committee remains committed to obtaining the Debtors' support for a plan, the First Lien Steering Committee believes that continuing the Debtors' exclusive control over the plan process is not conducive to achieving a near-term resolution of these chapter 11 cases. Based on the foregoing and for the reasons set forth below, the First Lien Steering Committee does not believe that cause exists to grant the relief requested in the Motions.

## BACKGROUND

3. On either March 31, 2009 or April, 1, 2009 (collectively, the "Petition Date"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. Certain of the Debtors certified on their voluntary petitions that they are single asset real estate debtors (the "SARE Debtors").

4. Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are currently authorized to operate their businesses and manage their properties as debtors in possession. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only. No trustee or examiner has been appointed in these chapter 11 cases.

5. On May 26, 2009, pursuant to Bankruptcy Code section 1102, the United States Trustee for the District of Nevada appointed the Committee. The Committee currently consists of four members: G.C. Wallace, Inc.; Interstate Plumbing & Air Conditioning; M & M Electric, Inc.; and Southwest Iron Works, LLC.

. . .

. . .

6. On June 16, the Debtors filed the SARE Extension Motion seeking to extend the 90-day period within which the SARE Debtors must file a plan of reorganization under Bankruptcy Code 362(d)(3) through October 2, 2009.

7. Pursuant to Bankruptcy Code sections 1121(b) and (c), the Debtors' exclusive period to file a plan currently expires on July 29, 2009 or July 30, 2009, as applicable, and their exclusive period to solicit acceptances of a plan currently expires on September 29, 2009 or September 30, 2009, as applicable.

8. On June 19, 2009, the Debtors filed the Exclusivity Motion seeking to extend their Exclusivity Periods through October 28, 2009 and December 27, 2009, respectively.

## OBJECTION

### I. The Debtors Have Not Satisfied Their Burden for an Extension of their Exclusivity Periods

9. Bankruptcy Code section 1121 limits the amount of time a debtor may have to file a plan of reorganization and solicit acceptances thereof. Specifically, section 1121 provides that, subject to certain exceptions, the debtor has the exclusive right to file a plan for only the first 120 days of the bankruptcy proceeding. 11 U.S.C. §1121(b). If the debtor files a plan within that 120-day period, the debtor's exclusivity periods are extended to 180 days in order to provide the debtor with an opportunity to solicit acceptances of its proposed plan. 11 U.S.C. §1121(c). After these initial periods expire, however, a debtor may only extend its exclusive periods upon a showing of "cause" up to a maximum of 18 months after the petition date with respect to filing a plan, and up to 20 months after the petition date with respect to soliciting and obtaining acceptance of any such plan. 11 U.S.C. § 1121(d). For the reasons set forth below, the First Lien Steering Committee respectfully submits that the Debtors have not made the requisite showing of cause for an extension of their Exclusivity Periods.

### A. The Debtors Have Failed to Establish that "Cause" Exists to Support an Extension of Their Exclusivity Periods

10. As noted, after a debtor's initial exclusive periods expire, they can only be extended upon a showing of "cause." 11 U.S.C. § 1121(d). A debtor seeking to extend its exclusive periods

bears the burden of proving that there is "cause" for such extension. See <u>In re Wash.-St. Tamany Elec. Coop., Inc.</u>, 97 B.R. 852, 854 (E.D. La. 1989); <u>In re Cent. Jersey Airport Servs., LLC</u>, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); <u>In re Serv. Merch. Co., Inc.</u>, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000); <u>In re McLean Indus., Inc.</u>, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).

11.  While the Bankruptcy Code does not define what constitutes "cause" for purposes of section 1121, courts in this jurisdiction and elsewhere generally consider the following factors when determining whether cause exists:

  a. the size and complexity of the case;

  b. the necessity of sufficient time to negotiate and prepare adequate information;

  c. the existence of good faith progress toward reorganization;

  d. whether the debtor is paying its debts as they come due;

  e. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

  f. whether the debtor has made progress in negotiating with creditors;

  g. the length of time the case has been pending;

  h. whether the debtor is seeking the extension to pressure creditors; and

  i. whether unresolved contingencies exist.

See <u>In re Henry Mayo Newhall Mem'l Hosp.</u>, 282 B.R. 444, 452 (9th Cir. BAP 2002); <u>In re Cent. Jersey Airport Servs., LLC</u>, 282 B.R. at 184; <u>In re Serv. Merch. Co., Inc.</u>, 256 B.R. at 751; <u>In re Express One Int'l, Inc.</u>, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996). When considering whether to extend a debtor's exclusive periods, courts do not merely tally the above factors, but instead recognize that certain factors are more relevant or important than others. See <u>In re Dow Corning Corp.</u>, 208 B.R. 661, 669 (Bankr. E.D. Mich. 1997). In addition, "[e]xtensions are not to be granted neither routinely nor cavalierly." <u>In re McLean Indus., Inc.</u>, 87 B.R. at 834 (citing In re Swatara Coal Co., 49 B.R. 898, 899-900) (Bankr. E.D. Pa. 1985)).

12.  Application of the foregoing factors to the Debtors' chapter 11 cases evidences that cause does not exist to justify an extension of the Debtors' Exclusivity Periods.

. . .

**B.     The Debtors Have Failed to Progress the Reorganization**

13.    In support of the requested extension of their Exclusivity Periods, the Debtors assert that they have made "significant progress towards a plan of reorganization . . . and have spent time reviewing, analyzing, and negotiating the plan term sheet that will hopefully serve as the basis for the Debtors' plan." Motion at ¶9. The Debtors' representations regarding the status of plan negotiations are misleading. The plan term sheet referenced by the Debtors is no longer being considered by the parties. Indeed, on July 8, the First Lien Steering Committee sent the Debtors a draft term sheet that it believes will form the basis of a consensual plan of reorganization with the Committee. To date, the Debtors have not been actively involved in negotiating the current iteration of the plan term sheet.

14.    While the First Lien Steering Committee believes that the Debtors acted in good faith in connection with prior plan negotiations, the First Lien Steering Committee disputes the Debtors' assertion that they have made "significant progress towards a plan of reorganization." Indeed, the First Lien Steering Committee, not the Debtors, has taken the lead in efforts to formulate a confirmable plan of reorganization in these cases. Given these facts, an extension of the Debtors' Exclusivity Periods is not justified and, if granted, would be an impediment to the First Lien Steering Committee's efforts to effectuate a swift restructuring of the Debtors' businesses.

**C.     The Debtors Cannot Demonstrate Reasonable Prospects for Filing a Viable Plan**

15.    The Debtors cannot propose a plan that complies with Bankruptcy Code Section 1129 without the support of the First Lien Lenders. It is undisputed that the Debtors do not have the ability to repay the First Lien Lenders in full, in cash. Thus, absent the affirmative vote of the First Lien Lender class, the Debtors would have to propose a "cram-down" plan. A plan of reorganization may not be confirmed, or "crammed-down," over the objection of a secured creditor unless the plan provides for the secured creditor to (i) retain its liens on its collateral (or on the sale proceeds of its collateral) and receive deferred cash payments equaling the present value of the creditor's allowed secured claim, or (ii) realize the "indubitable equivalent" of its allowed secured

claim. 11 U.S.C. § 1129(b)(2)(A). Based on the value of the Debtors' estates and the Debtors' projected operating performance, the Debtors will be unable to propose a plan that provides for the First Lien Lenders to (i) retain their liens and (ii) receive deferred cash payments equaling the present value of their secured claims. Accordingly, the only viable plan that can be proposed in these cases must provide for the First Lien Lenders to receive equity in the reorganized Debtors in at least partial satisfaction of their claims. The Debtors cannot, however, confirm a plan that provides for such an equity distribution over the objection of the First Lien Lenders. Indeed, courts that have considered whether a secured creditor can be crammed down with equity have generally held that equity securities in a reorganized debtor do not constitute the "indubitable equivalent" of the secured creditor's claim. See, e.g., In re TM Monroe Manor, 140 B.R. 298 (M.D. Fla. 1992) (holding that a debtor's proposed plan of reorganization that provided a secured creditor with limited partnership interests in the reorganized debtor did not provide the secured creditor with the indubitable equivalent of such creditor's claim). Accordingly, the Debtors cannot demonstrate reasonable prospects for filing a plan without the support of the First Lien Lenders.

### D.  The Debtors Have Not Made Progress Negotiating With Their Creditors

16. "One of the most important reasons for extending the debtor's period of exclusivity is to give the Chapter 11 process of negotiation and compromise an opportunity to be fulfilled, so that a consensual plan can be proposed and confirmed without opposition." In re All Seasons Indus., Inc., 121 B.R. 1002, 1006 (Bankr. N.D. Ind. 1990); see also In re Mid-State Raceway, Inc., 323 B.R. 63, 67-68 (Bankr. N.D.N.Y. 2005) ("Exclusivity is intended to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated. However, undue extension can result in excessively prolonged and costly delay, to the detriment of the creditors.") (quoting H.R.Rep. No. 103-835, at 36 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3344).

17. When plan negotiations fail to render a consensus, it is therefore appropriate to terminate exclusivity to rebalance the negotiating process. See, e.g., In re Mid-State Raceway, Inc., 323 B.R. at 70 ("[Terminating exclusivity] simply returns the parties to a level playing field after the period of debtor control intended by Congress has expired." (quoting In re Pub. Serv. Co.

-7-

553708 (7540-1)

of New Hampshire, 88 B.R. 521, 540 (Bankr. D.N.H. 1988)); In re All Seasons Indus., Inc., 121 B.R at 1002 (recognizing the same principle). Terminating a debtor's exclusive periods permits parties with a more objective view of the debtor's circumstances to file a plan. See, e.g., In re Lehigh Valley Professional Sports Club, Inc., No. 00-11296DWS, 2000 WL 290187, at *4 (Bankr. E.D. Pa. Mar. 14, 2000) ("Shortening the debtor's exclusive period for filing a plan will permit any party in interest, including parties with perhaps a more objective view of the debtor's circumstances, to file a plan." (quoting In re Crescent Beach Inn, Inc., 22 B.R. 155, 160-61 (Bankr. Me. 1982)).

18. As noted above, to date, the Debtors have been unable to achieve consensus with their various creditor constituencies and Mr. Rhodes over the terms of a plan of reorganization. At this juncture, the First Lien Steering Committee is skeptical of the Debtors' ability to achieve consensus and, thus, should be given an opportunity to pursue its current course of action including, if necessary, filing a plan of reorganization. Accordingly, the Debtors' request for an extension of their Exclusivity Periods should be denied and the playing field leveled to rebalance the negotiating process.

### E. The Size and Complexity of the Debtors' Cases Do Not Justify Extending the Exclusivity Periods

19. The Debtors argue that the size and complexity of their chapter 11 cases warrant an extension of the Exclusivity Periods. See Motion at ¶¶10-11. Courts, however, have recognized that large and complex cases do not necessarily require extended periods of exclusivity. See In re Henry Mayo Newhall Mem'l Hosp., 282 B.R. at 452-53 (recognizing that the view that complex cases require extended exclusivity had been debunked). Moreover, "[s]ize and complexity alone cannot suffice as cause" to extend exclusivity. In re Pub. Serv. Co. of New Hampshire, 88 B.R. at 537. If size and complexity alone were enough, a debtor in a large and complex case would automatically have a right to plan exclusivity throughout the proceedings, contrary to the rationale of Bankruptcy Code section 1121. See id. Size and complexity must be accompanied by other factors pertinent to the particular debtor to justify extension of plan exclusivity. See id.

. . .

20. The First Lien Steering Committee concedes that the Debtors' cases are large given the aggregate amount of secured debt outstanding. Notwithstanding the Debtors' assertions, however, these cases are not complex. Although the Debtors cite to multiple classes of potential creditors, a plan of reorganization that complies with the Bankruptcy Code's priority scheme can easily be crafted that will provide an appropriate distribution, if any, to each class. In addition, the Debtors' businesses themselves are not overly complex and, thus, cause does not exist to grant the Debtors' requested extension on this basis.

### F. Extending the Exclusive Periods May Pressure Creditors

21. 13. The law is well settled that debtors are not permitted to use exclusivity as a tactical device to pressure parties to consent to a plan they consider unsatisfactory. See, e.g., In re Kun, 15 B.R. 852, 853 (Bankr. D. Ariz. 1981) (recognizing that Bankruptcy Code section 1121 was designed to prevent debtors from exercising excessive leverage in negotiations); Century Glove, Inc. v. First American Bank, 860 F.2d 94, 102 (3rd Cir. 1988); In re Hoffinger Indus., Inc., 292 B.R. 639, 643 (8th Cir. BAP 2003) (citations omitted); In re General Bearing Corp., 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992); In re Texaco Inc., 81 B.R. 806, 812 (Bankr. S.D.N.Y. 1988). Accordingly, courts have denied the requests of debtors to extend exclusivity in order to prevent the debtor from employing such tactics. See, e.g., In re Media Ctr., Inc., 89 B.R. 685, 687 (Bankr. E.D. Tenn. 1988) ("The Court announced it would not further extend the exclusivity period for purposes of allowing [the debtor and its affiliates] to cram down major creditors who had not accepted the debtors' plans.").

22. While, to date, the First Lien Steering Committee believes that the Debtors have worked in good faith towards achieving a consensual plan of reorganization, those discussions occurred in connection with plan proposals that would have resulted in consideration going to Mr. Rhodes and his non-Debtor affiliates in exchange for, among other things, continued cooperation in matters where the Debtors' operations and Mr. Rhodes' non-Debtor affiliates overlap. As a result of the breakdown in these negotiations, the current construct of the First Lien Steering Committee's plan term sheet is neutral as to Mr. Rhodes' personal interests. The First Lien Steering Committee is concerned, therefore, that extending the Debtors' Exclusivity Periods may

allow Mr. Rhodes to exert excessive leverage over the plan process. Although the First Lien Steering Committee is hopeful that this will not occur in light of Mr. Rhodes' fiduciary obligations to maximize the value of the Debtors' estates for its creditor constituencies, exclusivity should not be extended to ensure that progress continues to be made towards a consensual plan.

### G. Allowing the Exclusivity Periods to Lapse Will Not Prejudice the Debtors

23. The Debtors will not be harmed if exclusivity lapses. Courts have consistently rejected the notion that exclusivity should be extended solely to give debtors more time to file a plan. See, e.g., In re Yellowstone Mountain Club, LLC, Case No. 08-61570-11, 2009 WL 982233, at *6 (Bankr. D. Mont. Feb. 18, 2009) (finding that termination of the exclusivity would do nothing more than allow other parties to propose plans and give creditors choice about the treatment and payment of their claims); In re R.G. Pharmacy, Inc., 374 B.R. 484, 488 (Bankr. D. Conn. 2007) ("The fact that the debtor no longer has the exclusive right to file a plan does not affect its concurrent right to file a plan. Denying the motion only affords creditors their right to file a plan; there is no negative affect [sic] upon the debtor's coexisting right to file its plan.") (citations omitted) (emphasis in original); In re Grossinger's Assoc., 116 B.R. 34, 36 (Bankr. S.D.N.Y. 1990); In re Mother Hubbard, Inc., 152 B.R. 189, 195 (Bankr. W.D. Mich. 1993) (holding that termination of exclusivity is not prejudicial to the debtor); In re Southwest Oil Co. of Jourdanton, Inc., 84 B.R. 448, 454 (Bankr. W.D. Tex. 1987). The risk that another party may file a plan while the debtors are developing their plan is a risk that Congress intended. See, e.g., In re All Seasons Indus., 121 B.R. at 1005 ("The risk is, of course, that while it is developing its plan, another party in interest will file a plan. However, that is as Congress intended.") (citations omitted); In re Southwest Oil Co. of Jourdanton, Inc., 84 B.R. at 454.

24. Denying the relief requested in the Motion will not have a negative impact on the Debtors' ability to continue good faith negotiations with the First Lien Steering Committee and the Committee. Allowing exclusivity to expire will merely serve as a check on the Debtors' control over the plan process by allowing the First Lien Steering Committee to propose a plan of reorganization in the event that negotiations with the Debtors ultimately prove unsuccessful. The First Lien Steering Committee remains hopeful that a consensual transaction will ultimately be

consummated in these cases but, for the reasons discussed herein, opposes an extension of the Debtors' Exclusivity Periods.

## II. The Debtors Have Failed to Establish that Cause Exists to Extend the 90-Day Time Period to File a Plan Under Bankruptcy Code Section 362(d)(3).

25. Bankruptcy Code section 362(d)(3) provides that relief from the automatic stay shall be granted against a single-asset real estate debtor to a creditor whose claim is secured by an interest in such real estate, unless, within 90 days after the entry of the order for relief, the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time. 11 U.S.C. § 362(d)(3). The 90-day period within which the debtor must file a plan of reorganization may be extended "for cause." Id.

26. While the Bankruptcy Code does not define "cause," the First Lien Steering Committee agrees with the Debtors that the Court should consider the purpose of the requirements imposed by Bankruptcy Code section 365(d)(3) in determining whether cause exists to extend the time within which the Debtors must file a plan of reorganization. See Motion at ¶7; see, also In re Heather Apartments LP, 366 B.R. 45, 47 (Bankr. D. Minn. 2007). Bankruptcy Code 362(d)(3) reflects Congressional concern about the delay in the bankruptcy process and unfairness to secured creditors that often accompanies single asset real estate cases. See Nationsbank, N.A. v. LDN Corp. (In re LDN Corp.), 191 B.R. 320, 326 (Bankr. E.D. Va. 1996). Bankruptcy Code section 362(d)(3) was specifically designed to compel debtors in single asset real estate cases to act quickly to move their cases forward. In re Oceanside Mission Assocs., 192 B.R. 232, 235 (Bankr. S.D. Cal. 1996). Moreover, "one of [Bankruptcy Code section 362(d)(3)'s] goals aims to expedite the proposal of meritorious plans of reorganization." In re Heather Apartments, 366 B.R. at 49; see also In re Kkemko, Inc., 181 B.R. 47, 49 (Bankr. S.D. Ohio 1995). The consequence of failing to act quickly to propose a plan of reorganization is the possibility that the automatic stay will be lifted. In re Oceanside Mission Assocs., 192 B.R. at 235.

27. For the same reasons set forth above regarding the lack of cause to extend the Debtors' Exclusivity Periods under Bankruptcy Code section 1121, the Debtors have failed to

. . .

553708 (7540-1)

- 11 -

establish that cause exists to grant the Debtors the requested extension under Bankruptcy Code section 362(d)(3).

## CONCLUSION

WHEREFORE, for the reasons set forth above, the First Lien Steering Committee respectfully requests the Court (i) deny the Motions and (ii) grant the First Lien Steering Committee such other and further relief as is just and proper under the circumstances.

Dated this 9th day of July, 2009.

By: _____
NILE LEATHAM, ESQ.
Nevada Bar No. 002838
TIMOTHY P. THOMAS, ESQ.
Nevada Bar No. 005148
**KOLESAR & LEATHAM, CHTD.**
3320 West Sahara Avenue, Suite 380
Las Vegas, Nevada 89102-3202
Telephone No. (702) 362-7800
Facsimile No. (702) 362-9472
E-Mail:   nleatham@klnevada.com
              tthomas@klnevada.com
              and
IRA S. DIZENGOFF (NY Bar No. 2565687)
PHILIP C. DUBLIN (NY Bar No, 2959344)
ABID QURESHI (NY Bar No. 2684637)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone: 212.872.1000
Facsimile: 212.872.1002
E-Mail:   idizengoff@akingump.com
              pdublin@akingump.com
              aqureshi@akingump.com

*Counsel for First Lien Steering Committee*