James I. Stang, Esq. (CA Bar No. 94435)
Alan J. Kornfeld, Esq. (CA Bar No. 130063)
Shirley S. Cho, Esq. (CA Bar No. 192616)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: jstang@pszjlaw.com
        akornfeld@pszjlaw.com
        scho@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com

Attorneys for Debtors and
Debtors in Possession

E-File: July 15, 2009

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br><br>Debtors. | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>Hearing Date: July 17, 2009<br>Hearing Time: 1:30 p.m. |

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

73203-002\DOCS_LA:204829.4

|  | Courtroom 1 |
|---|---|
| Affects:<br>☒ All Debtors<br>☐ Affects the following Debtor(s) | |

**DEBTORS' REPLY TO OBJECTION OF THE FIRST LIEN STEERING COMMITTEE TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER EXTENDING THEIR EXCLUSIVITY PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE AND (II) EMERGENCY MOTION TO EXTEND THE 90-DAY TIME PERIOD TO FILE A PLAN UNDER SECTION 362(d)(3) OF THE BANKRUPTCY CODE [RELATES TO DOCKET NOS. 233 AND 261]**

The underlying theme in the Objection by the First Lien Steering Committee ("FLSC") is that the Debtors' exclusivity period should be terminated although the Debtors have negotiated in good faith with the FLSC and all key constituents for a consensual plan of reorganization. Under the plan negotiations purportedly "led" by the FLSC, the FLSC has managed to completely alienate a key constituency, has continuously delayed in turning plan term sheets around to the Debtors, and has yet to reach a deal with the Official Committee of Unsecured Creditors. The Debtors gave the FLSC the benefit of the doubt and, as the FLSC states multiple times in its Objection, negotiated in good faith with the FLSC for a consensual plan. However, on June 22, 2009, the FLSC unilaterally decided to terminate consensual negotiations with the Debtors' equity and certain non-Debtor affiliates (the "Non-Debtor Affiliates"). The Debtors are informed and believe that the FLSC has refused to talk with the Non-Debtor Affiliates since that time.

In the meantime, the Debtors have negotiated and received on July 8, 2009 a plan term sheet from the Non-Debtor Affiliates that provides for significant recovery for creditors, including the contribution of non-estate assets for the plan. On that same date, the Debtors received a further revised term sheet from the FLSC. The Debtors are currently evaluating and considering both plan term sheets and consulting with the Official Committee of Unsecured Creditors. While conceivably, the Debtors could propound the plan that the FLSC suggests that leaves behind the Non-Debtor Affiliates, the Debtors do not believe that protracted litigation or two competing plans is in the best interest of creditors in these cases. Rather, a consensual deal amongst all key constituencies, including the Non-Debtor Affiliates, will maximize value for all parties. Among other things, certain of the Non-Debtor Affiliates are guarantors on several

construction bonds for ongoing projects. One of the Non-Debtor Affiliates owns and operates Rhodes Ranch golf course, which is the centerpiece of the Rhodes Ranch development around which are several of the Debtors' inventories of homes remaining to be built and sold. Certain other of the Non-Debtor Affiliates own easements that are necessary to build out certain of the Debtors' developments.

To accomplish a consensual plan that deals with these issues (and which are not dealt with in the FLSC's term sheet), the Debtors have requested a formal plan mediation with all parties – the Debtors, the FLSC, the Committee, and the Non-Debtor Affiliates. *See* attached Exhibit A. As of the date and time of filing this Reply, the Debtors are pleased to report that all parties have consented to mediation. However, the FLSC has placed conditions to their consent to mediate, which the Debtors are considering.

The plan exclusivity period was designed to provide the Debtors with the time to develop and propound a plan of reorganization that, in the Debtors' business judgment, provides the highest and best results for all constituencies. Ample cause exists here to extend the Exclusivity Periods to allow the Debtors the opportunity to proceed with plan mediation, or short of an agreement with all parties, to confirm the plan that the Debtors believe will maximize value to all classes of claims.

**The Debtors Have Made Incredible Progress Despite The Fact That One Of Its Key Constituencies Is Recalcitrant**

As discussed above, after the FLSC broke off discussions on June 22, 2009, the Debtors began discussions with the Non-Debtor Affiliates and in fact have received a term sheet for a plan that includes the gifting of non-Debtor assets for the plan (the "Equity-Sponsored Plan").

A recurrent theme in the Objection is that the Debtors have not been proactive with respect to plan negotiations. To the contrary, it is the FLSC that has consistently delayed turning drafts of the plan term sheet around. In one instance, it took the FLSC six weeks from the Debtors' turn of the term sheet to produce a revised term sheet. To accuse the Debtors of standing idly by is belied by the timeline of the plan negotiations, which have been as follows:

April 16: FLSC sends its first draft of term sheet

April 20: (4 days later) Debtors send mark-up of term sheet including comments from Non-Debtor Affiliates

April 22: (2 days later) FLSC sends second draft of plan term sheet

May 5: (8 days later) Debtors send mark-up of second draft of term sheet including comments from Non-Debtor Affiliates

June 12: (42 days later) FLSC sends third draft of revised term sheet

June 21: (9 days later) Non-Debtor Affiliates send markup of third draft of term sheet

June 22: FLSC ceases negotiations with Non-Debtor Affiliates and draft fourth revised term sheet carving out Non-Debtor Affiliates

July 8: (16 days later) FLSC sends the Debtors the fourth revised term sheet

Most recently, the Debtors requested a copy of the "revised" term sheet that would carve out the Non-Debtor Affiliates on no less than four occasions beginning on June 26, but was only provided the term sheet on July 8, 2009. So, when the FLSC states in its Objection that the Debtors have not been actively involved in negotiating this fourth revised plan term sheet, this statement is true because despite multiple requests by counsel and representatives for the Debtors for a copy of it, the FLSC only gave the Debtors the plan term sheet on July 8, 2009 (a day before they filed their Objection).

The FLSC accuses the Debtors of making "misleading" misrepresentations regarding the status of plan negotiations. (See Obj., ¶ 13) To be clear, at the time of the filing of the Debtors' exclusivity extension motion on June 19, 2009, the FLSC had not yet unilaterally decided to terminate negotiations with the Debtors' equity, which they subsequently did on June 22, 2009. Ultimately, what the FLSC complains about in their Objection is that the Debtors have failed to make progress with the FLSC based on the fourth revised term sheet that they have only provided to the Debtors on July 8.

### These Cases are Complex

The FLSC argues that although this case is large, it is not complex. Perhaps this case is not as complex as some that members of the FLSC are involved with, but with all due respect, it is complex. These 32 Debtors constitute a single operating company that is the third largest

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1 homebuilder in the state of Nevada.  That these cases are complex is evidenced by the significant issues that are not addressed in the FSLC term sheet and the FLSC's difficulty in reaching a consensus on a plan term sheet with key constituencies.

### The Debtors Have Demonstrated Ample Cause to Support an Extension of the Exclusivity Periods

Extending the Exclusivity Periods will provide the Debtors, who, as the FLSC admit have acted in good faith with respect to the plan negotiations, the opportunity to consider another plan alternative.  The FLSC concludes that the Debtors will not be able to confirm a plan without the support of the FLSC.  That conclusion is facially incorrect and ultimately for the Court to decide at the confirmation hearing.

On these facts, under the familiar standards governing extensions of exclusivity, the Debtors' exclusivity extension motions should be granted:  (1) the size and complexity of these cases is admittedly large; (2) sufficient time is needed to negotiate and finalize a plan; (3) good faith progress has been made toward reorganization; (4) the Debtors are paying debts as they come due; (5) the Debtors are making progress in negotiating with creditors, even those who have refused to talk with other constituents; (7) the Debtors' cases have not been pending for a long time; and (8) the Debtors are not seeking the extension to pressure creditors.

The primary policy reason of exclusivity is to allow the Debtors a fair chance to propose a plan.  As one court aptly opined:

> Finally, it must be recognized in applying the statutory standard that some delay for senior classes in realizing their rights may be justified by the attempt in reorganization to realize the maximum value out of the entity in the reorganization.  Reasonable delay to foster a successful reorganization in that sense, even at the temporary expense of senior classes, is an integral part of the reorganizational process in the federal courts.

*In re Public Serv. Co.*, 88 B.R. 521, 536-37 (Bankr. D.N.H. 1988).  Here, where the Debtors can propose a plan that will reorganize the company, continue jobs, continue building homes, and

continue to contribute to the overall economy of the Las Vegas area, the Debtors respectfully submit that they should be afforded the opportunity to do just that.

WHEREFORE, for the reasons set forth in the exclusivity extension motions and this reply, the Debtors respectfully request that the motions be granted.

**DATED** this 15th day of July, 2009.

> **LARSON & STEPHENS**
>
>  /s/ Zachariah Larson, Esq.
> Zachariah Larson, Bar No. 7787
> Kyle O. Stephens, Bar No. 7928
> 810 S. Casino Center Blvd., Suite 104
> Las Vegas, NV  89101
> 702/382-1170
> Attorneys for Debtors and Debtors in Possession

# EXHIBIT A



**PACHULSKI STANG ZIEHL & JONES**

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
NEW YORK, NY

10100 SANTA MONICA BLVD.
11th FLOOR
LOS ANGELES
CALIFORNIA 90067-4100

**TELEPHONE: 310/277 6910**
FACSIMILE: 310/201 0760

**SAN FRANCISCO**
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

TELEPHONE: **415/263 7000**
FACSIMILE: 415/263 7010

**DELAWARE**
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

TELEPHONE: **302/652 4100**
FACSIMILE: 302/652 4400

**NEW YORK**
780 THIRD AVENUE
36th FLOOR
NEW YORK
NEW YORK 10017-2024

TELEPHONE: **212/561 7700**
FACSIMILE: 212/561 7777

WEB: www.pszjlaw.com

Shirley S. Cho

July 13, 2009

scho@pszjlaw.com
310.772.2364

## VIA EMAIL

**email: pdublin@akingump.com**
Philip C. Dublin, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
United States of America

**email: axelrodb@gtlaw.com**
Brett A. Axelrod, Esq.
Greenberg Traurig, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169

**Email: tbeckett@parsonsbehle.com**
Thomas J. Beckett, Esq.
Parsons Behle & Latimer
201 S. Main St., Ste. 1800
Salt Lake City, UT 84111

      **Re:**    <u>**In re: Rhodes Homes, et al.**</u>

Dear Counsel:

      The Debtors are in receipt of two competing plan term sheets-- one from the First Lien Steering Committee, and the other from certain of the Debtors' non-Debtor affiliates. At this juncture, the Debtors believe that non-binding plan mediation (including principals authorized to bind your client) would be in the best interests of all constituencies.

      Accordingly, the Debtors respectfully propose any of the sitting Bankruptcy Judges for the District of Nevada (Judge Zive, Judge Markell, or Judge Nakagawa) or Judge Neiter (Central District of California) as the mediator. Please let me know whether your clients would be interested in such a mediation if possible, by July 15, 2009 at 12 p.m. pacific time. Please also respond with your

73203-002\DOCS_LA:204704.1



Phil Dublin
Brett Axelrod
Tom Beckett
July 13, 2009
Page 2

mediator choices in order of preference so that we may approach the agreed-upon mediator.  Thank you.

                Very truly yours,

                */s/ Shirley S. Cho*

                Shirley S. Cho


cc:  James I. Stang