James I. Stang, Esq. (CA Bar No. 94435)
Alan J. Kornfeld, Esq. (CA Bar No. 130063)
Shirley S. Cho, Esq. (CA Bar No. 192616)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: jstang@pszjlaw.com
           akornfeld@pszjlaw.com
           scho@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com

Attorneys for Debtors and
Debtors in Possession

E-File: July 15, 2009

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br><br>                    Debtors.<br>Affects: | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>Hearing Date:  July 17, 2009<br>Hearing Time:  1:30 p.m. |

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

73203-002\DOCS_LA:204922.2

☒ All Debtors
☐ Affects the following Debtor(s)          Courtroom 1

**REPLY TO OBJECTION OF THE FIRST LIEN STEERING COMMITTEE TO DEBTORS' EMERGENCY MOTION FOR AN ORDER EXTENDING CASH COLLATERAL TERMINATION DATE [RE: DOCKET NUMBER 236]**

In their Objection, the First Lien Steering Committee ("FLSC") holds consent to use of cash collateral hostage in exchange for the Debtors' agreement to terminate plan exclusivity. And, what is worse, the FLSC's offer is only for 30 days use of cash collateral, or through August 17, 2009. At that time, presumably, the FLSC could extract further demands of the Debtors.

The FLSC's arguments in opposing cash collateral on the merits fall flat. First, the FLSC argues that continued use of cash collateral does not provide adequate protection, but its actions contradict this assertion. Winchester Carlisle Partners ("WCP"), acting as agent for the FLSC, has approved the start of construction of 29 new homes by the Debtors on a regular basis, including most recently, today, July 15, 2009. The Debtors are incurring administrative expenses on home construction that, by virtue of the Final Cash Collateral Order, have priority over the claims of the FLSC.

Second, the FLSC accuses the Debtors of being behind on projected cash and in breach of the Final Cash Collateral Order. As discussed at length below, despite continuing difficult market conditions, the Debtors are ahead of cash projections. The Debtors have sold 32 homes of existing inventory, resulting in over $7 million in revenue just from homebuilding activities during the pendency of these cases. In addition to generating cash, the Debtors have also significantly reduced the estates' liabilities by obtaining releases of over $9 million in bonds. The Debtors project that they will be able to eliminate $22 million more of contingent bond liability during these cases by building homes and completing certain development obligations.

The Debtors cannot operate a home-building business on an abbreviated cash collateral approval period. The Debtors require use of cash through October 2, 2009 on a final basis to be able to operate their business and to successfully bring their companies out of Chapter 11. Such a result is the best resolution for all creditor classes, not just the FLSC. Accordingly, the Motion

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

should be granted.

## The Debtors Are Ahead On Projections Of Cash

The Debtors' cash balance for this week ending July 17, 2009 is $4,511,713, which is $1,971,787 or 78% higher than the $2,539,925 forecast in the current budget [Docket No. 284] (the "Budget").  Similarly, the Debtors have also been ahead of cash projections for the weeks ending July 10, 2009, July 3, 2009, June 19, 2009, June 12, 2009, June 5, 2009, May 22, 2009, May 15, 2009, May 8, 2009, and May 1, 2009 (the first reporting week).

In the Objection, the FLSC complains that the Debtors were off on cash projections for the week ending June 26, 2009.  On June 24, 2009, however, the FLSC approved a revised Budget to replace the initial version from April 2009, which was outdated.  The revised Budget was filed on June 25, 2009 and showed that cash for the week ending June 26, 2009 was projected to be $3 million [Docket No. 284].  When looking at that current Budget, the $3.5 million actual cash balance on June 26 was $0.5 million or 17% higher than the $3 million of projected cash as agreed to by WCP on June 24.  In other words, in the Objection, the FLSC conveniently picks the only week since the Petition Date that showed an unfavorable variance in ending weekly cash balance and only by virtue of referencing the initial thirteen week budget that was replaced by the updated Budget approved by WCP on June 24.  Notably, for the week following June 26, home closing revenues boosted cash to $4.5 million, which was well in excess of the $4.3 million initially projected for June 26.

1.  Revenue / Expenses

The Debtors' home sale revenues have been lower than initially projected almost three months ago at the commencement of bankruptcy because of continuing difficult market conditions.  In proactively managing its cash position, the Debtors have been able to reduce expenses, which has resulted in favorable variances to overall weekly cash balances as described above.  Overall, the Debtors' continuing homebuilding operations have generated approximately $7.2 million in net revenue post-petition on the closing of 32 homes through July 10, 2009.

2.  Pinnacle Grading

Under the Final Cash Collateral Order, the Debtors are authorized to pay "job costs" of

Pinnacle Grading so long as cumulative job cost expenses do not exceed cumulative revenue by more than $60,000 for the period from April 1, 2009 through June 28, 2009. The Debtors acknowledge that cumulative expenses for Pinnacle Grading are currently in excess of cumulative revenue, which fact was reflected in the Budget that WCP approved on June 24, 2009. Based on recent developments, the Debtors believe that receipts of revenue from the City of Flagstaff and Kingman for two governmental improvement projects could be delayed. Accordingly, the Debtors have proposed a revised budget concurrently with the filing of this Reply in an abundance of caution and to be conservative with respect to future projections. The Debtors still believe that completing work on these two improvement projects is in the best interests of these estates because the projects will generate positive cash flow through the remainder of the budgeted period of over $600,000 (net of job costs), reduce claims against the estate by these two governmental entities for breach of contract claims for non-completion of the work, and will reduce contingent bond liabilities against the estates. The Debtors would be willing to consider any additional reasonable oversight on Pinnacle expenditures that the FLSC suggests.

**The FLSC Is Adequately Protected**

Continuing to operate is in the best interests of all constituents, including the FLSC. That the FLSC recognizes this fact is evidenced not only by the new home start approvals, but also by the FLSC's own financial modeling, which shows that continuing operations of the Debtors is significantly better than any liquidation scenario.

The FLSC has also been provided with virtually unfettered access to the Debtors and its records. The Debtors' entire accounting department consists of only five people, excluding the Chief Financial Officer. WCP has had almost the same number of people on site regularly at the Debtors' corporate headquarters for the past several months. In addition to new home starts, the FLSC has also approved new pricing for the sale of homes and has had approval right over every home sale conducted. Simply put, as required by the Final Cash Collateral Order, the FLSC through WCP has been involved in, if not directly approved, every aspect of the Debtors' home-building operations.

Additionally, under paragraph 5 of the Final Cash Collateral Order, entitled "Adequate Protection", the FLSC was provided with the following adequate protection:

- Replacement liens on all of the Debtors' property, including unencumbered property, but excluding avoidance actions, for any diminution in value of their collateral;
- An allowed superpriority administrative priority claim for any diminution in value of their collateral;
- Payment of the FLSC's professionals' invoices, including counsel and WCP, for which the Debtors have paid out over $1,000,000 during these cases as of the week ending June 26, 2009 (subject to recharacterization under section 506(b) of the Bankruptcy Code); and
- Weekly reporting that includes a variance report, a report of asset sales, and a report of cumulative net cash proceeds.

The FLSC relies heavily on *In re Pacific Lifestyle Homes, Inc.* for the proposition that the Debtors cannot provide adequate protection. 2009 WL 688908 (Bankr. W.D. Wash., March 18, 2009). *Pacific Lifestyle*, however, is entirely distinguishable from the present case. For example, in *Pacific Lifestyle* the debtor had incurred a loss of over $1.3 million during the first three months of postpetition operation. By contrast, the Debtors have generated over $2.3 million in net positive cash flow during the initial three months of these cases, increasing cash from $2.2 million at the Petition Dates to $4.5 million as of the week ending July 10, and are ahead of cash projections in the Budget. Another difference between the two cases is that the *Pacific Lifestyle* debtor did not have any unencumbered property, like the Debtors do in this case as previously set forth in April in the Debtors' reply brief to the FLSC's initial objection to cash collateral. [*See* Docket No. 58; Reply at p. 4.] The Debtors have already provided replacement liens on all unencumbered property to the extent of any diminution in value of the First Lien Lenders' prepetition collateral.

Finally, in *Pacific Lifestyle*, the lenders did not support continuing the operations of that debtor, whereas here, the FLSC has approved the construction of 29 new homes since the Petition Date for which the Debtors are incurring administrative expenses that, by virtue of the

Final Cash Collateral Order, have priority over the claims of the FLSC. It is solely through the responsible use of cash by the Debtors that these estates have generated positive net cash flow from continuing operations. Such a result has prevented the burden of bankruptcy costs from exhausting the remaining cash resources of the Debtors. Ultimately, there is no dispute between the parties that use of cash should continue. The real question that the FLSC poses is when the FLSC should be permitted to file its own plan, which the Debtors address separately in the reply in support of the exclusivity motions [Docket No. 320].

WHEREFORE, for the foregoing reasons, the Debtors respectfully request that the Motion be approved and that the Debtors be permitted to use Cash Collateral through the week ending October 2, 2009.

**DATED** this 15th day of July, 2009.

**LARSON & STEPHENS**

 /s/ Zachariah Larson, Esq.
Zachariah Larson, Bar No. 7787
Kyle O. Stephens, Bar No. 7928
810 S. Casino Center Blvd., Suite 104
Las Vegas, NV  89101
702/382-1170
Attorneys for Debtors and Debtors in Possession