James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: jstang@pszjlaw.com
       scho@pszjlaw.com
       wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com

Attorneys for Debtors and
Debtors in Possession

E-File: July 24, 2009

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br>    Debtors. | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11 |
| Affects:<br>☒ All Debtors<br>☐ Affects the following Debtor(s) | Hearing Date:  August 28, 2009<br>Hearing Time:  1:30 p.m.<br>Courtroom 1 |

---

[1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

73203-001\DOCS_LA:205372.4

## DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM STAY FILED BY HARSCH INVESTMENT PROPERTIES – NEVADA LLC [Relates to Docket No. 302]

Bravo, Inc. (the "Debtor"), one of the above-captioned debtors and debtors in possession (the "Debtors"), hereby opposes the Motion for Relief from Stay Refiled Pursuant to Order of the Court and Updated [Docket Number 302] (the "Motion") filed by Harsch Investment Properties – Nevada LLC (the "Movant") and respectfully states as follows:

### Preliminary Statement

Movant is seeking to obtain relief from the automatic stay in order to recover against the Self Insured Retention ("SIR") insurance policy, which provides coverage to all of the Debtors. Movant relies on cases whose holdings are based on an Illinois insurance statute for which there is no equivalent in Nevada, the relevant jurisdiction. Furthermore, the cases have different holdings than Movant states in the Motion. While it would be advantageous to the Debtors for the insurer to have liability to Movant, the cases cited in the Motion do not provide support for this result. The Debtors are still in the process of performing an analysis of the insurer's liability under the SIR policy, but on its face the policy appears to provide that the insurer is liable only for amounts over the SIR limit.

Most importantly, the current circumstances represent precisely the reason why there is an automatic stay. Treatment of SIR insurance claims is an issue for the plan of reorganization, where the Debtors can ensure that all similarly situated claimants are treated equally. The Debtors are still formulating the plan. Rather than the race to the courthouse that Movant seeks, the Debtors require the proper time to determine the best and fairest SIR insurance strategy for the benefit of all creditors. Accordingly, the Debtors should not be deprived of the automatic stay, which is a fundamental protection the Bankruptcy Code affords debtors.

### Background

1. On March 31, 2009, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code. The Debtor is continuing in possession of its property and is operating and managing its businesses, as debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

73203-001\DOCS_LA:205372.4                        2

2.      On March 31, 2009 and April 1, 2009, the thirty-one other affiliated Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code. The Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      On July 2, 2009, Movant filed the Motion pursuant to which Movant seeks relief from the automatic stay so that Movant can make its claims (the "Claims") against the Debtor's insurer with respect to a state court lawsuit (the "State Court Action") and compel the Debtor's insurer to appear and defend the Debtor.

**The Insurance Policy**

4.      The Debtor has an insurance policy with Lloyd's of London (the "Insurer"), policy number A4/7504/134 (the "Insurance Policy"), for the time period October 1, 2004 through October 1, 2007, which is the relevant time period regarding the State Court Action. A copy of the Insurance Policy is attached to the Motion.

5.      An endorsement (the "Endorsement") to the Insurance Policy, bearing number IL 12 01 07 97, provides that the Insurance Policy is an SIR policy. The SIR amount is $2,000,000 per occurrence, subject to an aggregate of $6,000,000. Paragraph 2 of the Endorsement provides that the Insurer is responsible only for amounts in excess of the SIR amounts.

6.      Movant appears to believe that the SIR amount per occurrence is $250,000, not $2,000,000. *See* Motion par. 29. This is incorrect. The Insurance Policy provides for a trail SIR of $250,000 per occurrence. The trail means that once the aggregate $6,000,000 amount is exhausted, then for any new occurrence thereafter there is an SIR of $250,000 per occurrence.

7.      Under Paragraph 7 of the Endorsement: "The Insured agrees to provide defense costs until the Self-Insured Retention amount, limit of liability or aggregate limit is paid. Defense Costs will erode the Self-Insured Retention amount."

8.      Under Paragraph 9 of the Endorsement, "this insurance shall not take the place of any SIR which is or becomes invalid, uncollectible or otherwise unavailable due to the insolvency of any Insured. The risk of such insolvency is retained by the Named Insured and not by us."

9. There have been no claims thus far against the Insurance Policy. Accordingly, under the terms of the Insurance Policy the Insurer has no duty either to defend or indemnify the Debtor up to and until Debtor has incurred costs of defense and/or paid damages in excess of $2,000,000.

10. Movant admits that the amount sought in the State Court Action is $200,000, or 10% of the $2,000,000 SIR amount. *See* Motion, par. 29. Movant further admits that the real amount in dispute is "less." *Id.* Accordingly, under the terms of the Insurance Policy, the Insurer appears to have no duty either to defend the Debtor in the State Court Action or indemnify the Debtor for any award under the State Court Action.

11. While Paragraph 5 of the Endorsement mentions that there was a possibility that the Insurer may have required the Debtor to obtain a letter of credit with respect to the SIR, in actuality the Insurer never required the Debtor to obtain such a letter of credit and the Debtor never obtained a letter of credit to pay any portion of the SIR amount. *See* Robinson Declaration, par. 9.

## **The Debtor is Entitled to the Breathing Spell Provided by the Automatic Stay**

12. "The automatic stay provision of the Bankruptcy Code, § 362(a), has been described as one of the most fundamental debtor protections provided by the bankruptcy laws." *In re Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir. 1991) (quoting *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503, 106 S. Ct. 755, 760, 88 L. Ed. 2d 859 (1986) (footnote and internal quotations omitted)). The purpose of the automatic stay is to "prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Industries, Inc.,* 946 F.2d 1031, 1036 (3d Cir. 1991) (internal citation omitted). The stay should "'give the debtor a breathing spell from his creditors.'" *Id.*

13. The continuation of the automatic stay of the State Court Action provides the Debtor, and the other thirty-one affiliated Debtors, with exactly the kind of breathing spell anticipated by the Bankruptcy Code so that the Debtors can move forward on the chapter 11

73203-001\DOCS_LA:205372.4                  4

cases free from the costs, rigors and demands required by non-stayed litigation. The Debtors are entitled to, and request that this Court permit, the breathing spell afforded by the automatic stay.

14. Lifting the stay will significantly and irreparably prejudice the Debtors and their estates. Under Paragraph 7 of the Endorsement, the Debtors must provide all defense costs until the Self-Insured retention amount is paid; such amounts are not reimbursable by the Insurer. Thus, if the stay were lifted, the Debtors would be responsible for all defense costs, which would be out-of-pocket costs.

15. The expenditure of estate funds would not be the only material prejudice that would be suffered by the Debtors if the Motion is granted. The Debtors have very limited staff available. That limited staff would be required to assist the Debtors in handling the tasks that would be required of the Debtors in relation to the State Court Action because those few individuals are currently engaged in other more pressing activities, some of which are as follows:

(i) formulating and negotiating the plans of reorganization and disclosure statements for all thirty-two Debtors;

(ii) preparing 32 sets of Monthly Operating Reports for the Debtors for submission to the United States Trustee;

(iii) responding to diligence requests and reporting requirements of their senior secured lenders including preparing several weekly financial reports required by the cash collateral order; and

(iv) complying with the operational challenges of a debtor in possession.

16. In addition, as the Insurance Policy covers other Debtors, the treatment of claims under the Insurance Policy affects the other Debtors. The Debtors are still formulating their plan of reorganization and have not yet determined how claims against SIR insurance policies will be treated under the plan. Indeed, the bar date has not yet passed and, as a result, the Debtors cannot yet know the extent of such SIR insurance claims. The need to deal with SIR insurance claims on a fair and consistent basis through a plan, rather than on the *ad hoc* basis sought by Movant, is highlighted by Movant's request that the Debtors give the Insurer a promissory note for the sums the Insurer would expend in defending Movant. *See* Motion, par. 25. This request is precisely why relief from stay should not be granted; the proper treatment of claims is a plan issue that involves the equitable treatment of not just the Movant's claim, but also the claims of

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

all similarly situated creditors.  The Debtors require the proper time to determine the best and fairest SIR insurance strategy for the benefit of all creditors.

17.     By contrast, Movant has not demonstrated any prejudice by the continued imposition of the automatic stay.  Under the terms of the Self-Insured Retention policy, Movant does not have a claim against the Insurer.

**The Illinois Insurance Statute, the Foundation of Movant's Argument, is a Red Herring**

18.     Most of the holdings in the three cases Movant cites (the "Three Cases") are based on section 388 of the Illinois Insurance Code (the "Illinois Insurance Statute").  The governing law for the Insurance Policy is Nevada because the Insurance Policy was issued pursuant to the Nevada insurance laws, and the accident giving rise to the State Court Action occurred in Nevada.  Movant has not cited any Nevada legislation comparable to the Illinois Insurance Statute.  Accordingly, the Motion relies on inapplicable legal authority.

19.     Furthermore, even if the Three Cases were relevant to Nevada, their holdings go to whether an insurer may avoid its contractual obligation to pay amounts over the SIR limit (the "Over the SIR Limit Obligations") when the insured did not make an actual payment regarding its obligation to pay amounts under the SIR limit (the "Under the SIR Limit Obligations").  The Three Cases all held that under the Illinois Insurance Statute, an insurer may not use the insured's failure actually to pay its Under the SIR Limit Obligations as a justification to avoid paying its own Over the SIR Limit Obligations.  Thus, though Movant bases its entire argument on the Illinois Insurance Statute, this statute is a red herring.  The Illinois Insurance Statute concerns an insurer's ability to avoid its Over the SIR Limit Obligations, yet the Insurer's Over the SIR Limit Obligations are not at issue here.

**Movant's Argument that the Insurer is Liable under the Insurance Policy is Contradicted by the Cases Movant Cites**

20.     Movant also argues that pursuant to the Illinois Insurance Statute the Insurer is liable not only for the Insurer's obligations for the Over the SIR Limit Obligations, but is also

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

liable for the Under the SIR Limit Obligations.[2] The Three Cases, however, hold to the contrary: *Home Insurance Co. v. Hooper*, 294 Ill. App. 3d 626, 633 (Ill.App.Ct. 1998) ("the excess insurer is not responsible for liability below limits contained in the excess policy"); *In re Keck, Mahin & Cate*, 241 B.R. 583, 596 (Bankr. N.D.Ill. 1999) (same); *In re Vanderveer Estates Holding LLC*, 328 B.R. 18, 23 (Bankr. E.D.N.Y. 2005) (same). The Three Cases, therefore, are of no help to Movant.

**Movant Wants to Avail Itself of Equity While at the Same Time Failing to Serve Notice to the Insurer**

21.     Movant next seeks to avail itself of equity. Yet the Insurer is not listed on the Motion's Proof of Service. This means that Movant's idea of "equity" is to attempt to seek a court order affecting the Insurer without serving notice to the Insurer. The Debtor respectfully disagrees that this constitutes equity.

WHEREFORE, for all of the foregoing reasons the Debtor requests that the Court deny the Motion.

**DATED** this 24th day of July, 2009.

**LARSON & STEPHENS**

 /s/ Zachariah Larson, Esq.
Zachariah Larson, Bar No. 7787
Kyle O. Stephens, Bar No. 7928
810 S. Casino Center Blvd., Suite 104
Las Vegas, NV  89101
702/382-1170
Attorneys for Debtors and
Debtors in Possession

---

[2] The result Movant seeks is sometimes referred to as a "drop-down" because the insurer "drops down" to the insured's level of obligation below the SIR limit.