```
JANICE J. BROWN
Nevada Bar No. 001118
    E-Mail: jbrown@lbbslaw.com
JEFFREY D. OLSTER
Nevada Bar No. 008864
    E-Mail: olster@lbbslaw.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
400 South Fourth Street, Suite 500
Las Vegas, Nevada 89101
Telephone: (702) 893-3383
Fax: (702) 893-3789
Attorneys for Defendant
Harsch Investment Properties - Nevada, LLC
```

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>BRAVO, INC.<br>THE RHODES COMPANIES, LLC. aka<br>"RHODES HOMES" et al.<br><br>Debtor. | Chapter 11<br><br>Case No. BK-S-09-14825-LBR<br>(Jointly Administered)<br><br>Chapter 11 |
| Affects the Following Debtor:<br>Rhodes Design and Development Corp.(1963)<br>Bravo, Inc. aka Rhodes Framing (2642) | Hearing Date:<br>Hearing Time:<br>Courtroom 1 |

## HARSCH INVESTMENT PROPERTIES, NEVADA LLC'S REPLY TO DEBTOR'S OPPOSITION TO THE MOTION TO LIFT AUTOMATIC STAY AND IN SUPPORT OF MOTION AS REFILED (DOCUMENT 302)

I. **Introduction**:

Although some time remains in the filing period, it appears that the Rosen case is the only bodily injury claim asserted against any of the Rhodes Debtors' Companies. Opposition suggestions that entering requested orders will somehow siphon off inordinate sums of bankruptcy monies needed to satisfy other creditors' claims are simply overstated. The dollars needed for defense and indemnity for the Rosen personal injury claim are but a fraction of the economic losses represented in just the secured creditors' claims filed to date. Any orders that the Rosen case be permitted to go forward in a Nevada court with Bravo participating in the

discovery and jury trial represents no impermissible use of bankruptcy assets.

There is also little dispute that a policy of insurance is an asset of the debtor's bankruptcy estate and that an insurance policy is not an executory contract. Therefore, this Court has jurisdiction to entertain appropriate requests for rulings as to matters relating to the bankruptcy estate's liability "excess" policies[1] as well as the motion to lift the automatic stay in bankruptcy so that the jury trial among Rosen, Bravo, Inc. and Harsch Investment Properties – Nevada LLC (hereinafter "Harsch Investment Properties) can occur.

Documents contained in Exhibit A are true and correct copies of the documents they purport to be and are incorporated by reference as though fully set forth in this Reply whenever referenced herein.

1. **An Order Lifting the Automatic Stay for Purposes of the Jury Trial of the Rosen Case Is Appropriate, Warranted by the Known Facts and Legally Permissible**.

Within months after Rosen filed suit against Bravo, Inc. and Harsch Investment Properties in Nevada State Court, Rhodes Companies including Bravo, Inc. filed for bankruptcy protection under Ch. 11.[2]

The situation before the Court is not as simple as reading the debtor's opposition might suggest. This motion to lift stay is not being brought by a party who has only a contingent claim for contribution and/or indemnity against Bravo Inc., a contingent claim which could be brought

---

[1] Apparently there are instances in which an eligible surplus lines carrier such as Lloyds Underwriters who have sufficient resources to issue a primary policy to a self insured to a stated limit and still call the coverage "excess" rather than primary, as discussed later in this Reply. In a related context, a self-insured employer under the workers compensation law was deemed not to be an "insurer" for the purposes of the Nevada Insurance Guaranty Act. *MGM Mirage v. Nevada Ins. Guaranty Assoc*, 125 Nev. Adv Op. 22, June 25, 2009. The Certificate of Insurance (Exhibit B) does not specify that Lloyds of London/Aspen Insurance UK, LTD are furnishing only "Excess" coverage or that there is a $2,000,000 SIR to be exhausted by payment. Indeed the summary of insurance describes the policy as "General Liability Insurance." It is also designated "Primary Insurance" for designated projects. The excess Insurance Clause ". . . applies to entities not included as insured under this policy." I.e., entities such as Harsch. (See Document 302, filed 7/2/09, Exhibit C, pages 1-2).

[2] Rosen filed his creditor's claim soon thereafter. (See Exhibit E attached to Document no. 302.) Harsch's creditors' claim for defense and indemnity payments, as set out in this motion, will be filed timely.

after the Rosen case has been resolved as between Rosen and Harsch.[3]

Instead, Harsch brought the state court cross claim upon an independent basis for relief under state law theories upon breach of certain provisions of the lease and breach of the duty of good faith and fair dealing owed by Bravo, Inc. under the lease. Harsch principally brought the cross claim to recover its defense costs and other damages caused by Bravo Inc.'s failure to either defend and indemnify Harsch itself or its failure to secure coverage that complied with the Harsch lease requirements and for its breach of the covenant of good faith and fair dealing in the contract.[4]

The Rosen state court suit presents relatively complex state law liability issues that can be tried in the Nevada state court action without materially affecting proceedings in this Court. Bravo having elected to go with no counsel in the proceeding can hardly complain if it has no counsel after the stay is lifted. If the best interests of the bankrupt and other creditors require that counsel be appointed and paid, appropriate orders can be entered. Defense counsel is already on board.

Denying the motion at issue, thereby leaving the automatic stay in effect, would preclude the Nevada State court from trying the issues of the complaint and the cross claim together, a result which unfairly prejudicial to Harsch. The Rosen claims against Harsch and Bravo are themselves inextricably intertwined. As a matter of fundamental fairness, the automatic stay should be lifted so that all three can litigate the Rosen claims. The Rosen claim inevitably raises questions of ownership, management, possession and control of 470 Mirror Court and the condition of the electrical panel being used by Bravo, Inc. at the time of the Rosen accident. Even if in default, evidence could be presented that would not be received with a bankruptcy stay in

---

[3] The possibility that the resolution of the State case could also result in Harsch acquiring the right to make a contribution or indemnity claim against debtor Bravo, Inc. certainly does exist, but is not pertinent at this time..

[4] See Exhibit D to the refiled motion.

4834-7331-0724.1                                3

place. The subjects of the complaint and cross claim are matters which a Nevada jury can understand. Bankruptcy law will have no place in the evidence at the Rosen State trial, although it may affect matters presented to the trial court.

Requiring Harsch to try the case against Rosen in a vacuum without being able to present evidence against Bravo, Inc., will increase the risk that Harsch will be required to pay a judgment for which it is not liable. The state court has declined to stay the action against Rosen while it is stayed against Bravo, Inc. Unavailability of Bravo's documents and witnesses is a huge adverse factor affecting Harsch's ability to successfully defend Rosen's claim with a stay in place. Even if Bravo, Inc., remains in default, but for the bankruptcy stay, such evidence could be secured for purposes of the State trial.

Absent a prior settlement between Rosen and Harsch, a state court jury trial will be necessary for the Rosen case and that the case can be readied for trial for a trial in late 2010 or early 2011 without the active supervision of the Bankruptcy Court and without undue legal expense to Bravo, Inc.'s creditors.

The legal defense expense and liability for Bravo's use and changes to the 470 Mirror court warehouse adapted to Bravo's own heavy equipment use is precisely the risk that Harsch transferred to Bravo, Inc. and its liability insurers in entering into the lease. Bravo, Inc. had notice of the cross claims before the bankruptcy petitions were filed.[5] When served with summons and complaint and summons and cross claim, Bravo, Inc. did nothing to respond to either Rosen or Harsch's pleadings pre-petition. A demand letter to Bravo, Inc. dated July 15, 2007, tendering defense and indemnity went unanswered. The equities do not lie with Bravo or its liability insurers. The equities lie with Rosen and Harsch.

---

[5] Bravo, Inc. is in default on Rosen's complaint. Default was taken before the March 2009 bankruptcy filing. Bravo has filed no answer to the Harsch cross claim although served before the filing.

4834-7331-0724.1

4

2. **Orders Requiring London Underwriters to Defend and Indemnify the Additional Insured Are Appropriate, Warranted by the Known Facts and Legally Permissible**.

In executing the lease for 470 Mirror Court, Bravo, Inc. agreed with Harsch that the general liability policy it would place would have an occurrence limit of at least $2,000,000 and an aggregate limit of at least $3,000,000, covering bodily injury occurring in or about the Premises or arising out of the use and occupancy of the Premises and/or the obligations under the Lease. Further that the landlord be specified as an additional insured, with deductible amounts of <u>no more than $25,000 per occurrence</u>.[6] The United States Broker issued Harsch a Certificate of Insurance to Harsch Investment Properties which Harsch could reasonably believe met Bravo's commitments in the Lease. Until the Rosen injury and resulting claim, Harsch Investments did not know that CGL coverage was not placed for Bravo, Inc., and Harsch, on terms required.

When Rosen brought suit, Harsch's representatives tendered defense and indemnification to Bravo, Inc., and to Guaranty California Insurance Services, Inc., Lloyd's authorized United States broker in July and October 2007, respectively. Once the bankruptcy filing became known, another letter was sent to Harsch's United States broker in May 2009.[7] No response has been received.[8]

Harsch Investment Properties is informed and believes that "Lloyds of London" and "Aspen Insurance UK Ltd."[9] (hereinafter, "London Underwriters") were at times material eligible

---

[6] Paraphrasing from Exhibit B to the Lease, which is part of Exhibit D to the refiled motion. (Doc. 302).

[7] See the three letters included in Exhibit D to Doc. 302.

[8] Attorneys for debtors recently identified the previously known United States broker in California and a different legal representative in New York in a certificate of mailing. A copy of this opposition and the amended motion to stay will be sent to the New York representative listed by debtor as well as the United States broker listed via mailing.

[9] Certificate of Insurance, Exhibit B to Doc. 302.

surplus lines insurers[10] in Nevada.  "Eligible insurer" means an insurer which does not hold a certificate of authority to transact the business of insurance in this State but has qualified to write surplus lines insurance in this State pursuant to Chapter 685A of NRS.[11]

As a condition of allowing an eligible surplus lines insurer to write surplus lines policies for sale in Nevada, the Nevada Legislature enacted NRS 685A.200 which reads:

NRS 685A.200  Suit against surplus lines insurers; venue; process.

> 1. An unauthorized insurer effecting insurance under the provisions of the Surplus Lines Law shall be deemed to be transacting insurance in this state as an unlicensed insurer and may be sued in a district court of this state upon any cause of action arising against it in this state under any insurance contract entered into by it under this chapter.
>
> * * *
>
> 4. An unauthorized insurer entering into such an insurance contract shall be deemed thereby to have authorized service of process against it in the manner and to the effect provided in this section. Any such contract, if issued, must contain a provision stating the substance of this section and designating the person to whom the Commissioner or his authorized representative shall mail process as provided in subsection 2.

Therefore, a Nevada District court would have jurisdiction over the London Underwriters if served with summons and complaint concerning the Rosen suit or any dispute concerning the coverage under the Bravo policy. And, since Bravo is in bankruptcy, this court would have jurisdiction to rule upon matters relating to the Bravo bankruptcy asset, the London Underwriters' policy and the Certificate of Insurance issued thereunder.

In the opposition, debtor was dismissive of the creditor's request that London

---

[10] NAC 685A.140  "Eligible insurer" defined. ( NRS 679B.130, 685A.210 ) That is, "Eligible insurer" means an insurer which does not hold a certificate of authority to transact the business of insurance in this State but has qualified to write surplus lines insurance in this State pursuant to chapter 685A of NRS.

[11] As to the kinds of policies which an eligible insurer may furnish, see NAC 685A.215  Conditions for placement: 1. Insurance which is not readily obtainable from admitted insurers after a diligent effort has been made to obtain the insurance may be obtained from eligible brokers.  * * *  [T]he broker shall affirm that the coverage is unavailable from admitted insurers and provide evidence that at least three insurers which are marketing that line or class of insurance in this State have declined to provide that coverage. It is unknown whether that was done for this policy. See also, other sections of the Statute, NRS 679B.130, and 685A.040 , 685A.210 specifying penalties for violation of the Chapter.

4834-7331-0724.1               6

Underwriters drop down and defend and indemnify Harsch Investment Properties.[12]

One would expect such an order to be embraced by the Debtor in this case. It likely will reduce the size of Harsch's ultimate creditor's claim against Bravo, Inc, for one thing. Despite the absence of a precise Nevada statute such as the Illinois statute considered in the *Home Insurance* line of cases cited in the refiled motion[13], the judge deciding the *Home Insurance case* unequivocally held that <u>even in the absence of an applicable statutory provision such as the cited Illinois statute, the failure of a bankrupt insured to fund a self-insured retention did not relieve the insurer of the obligation to pay claims owed</u>.

As in those cases cited in the refiled motion, Bravo's failure to perform these continuing obligations re the SIR pre-petition does not excuse London Underwriters from performing duties owed Harsch. At best, Bravo's failure to satisfy the $2M retention gives rise to an unsecured claim by London Underwriters for any damages incurred by reason of the unsatisfied SIR. As the courts have held in the cited cases, the debtor's payment of the policy premium pre-petition constitutes substantial compliance with its contractual obligations to London Underwriters.[14]

As one Judge writes, the legislative history of the Bankruptcy Code reveals that in enacting § 101(4) Congress intended that virtually all obligations to pay money be amenable to treatment in bankruptcy proceedings. *See In re Robinson,* 776 F.2d 30, 34 (2d Cir. 1985) Damages which are considered unmatured, unliquidated and contingent, clearly fall within [that] definition of a claim. See, *In re Johns-Manville Corp.,* 57 B.R. 680, 687 (Bankr. S.D.N.Y. 1986). In the New York case styled *In re Ames Department Stores, Inc., Eastern Retailers Service Corporation, et al.,*

---

[12] Given debtor's representations as to the policy's self insured requirements and particularly the use of the $250,000 amounts, Paragraph 29 of the refiled motion is withdrawn without prejudice to renew it at a later time if necessary.

[13] *Home Insurance Co. v. Hooper,* 691 N.E.2d 65 (Ill. App.Ct. 1998)(applying Illinois Bankruptcy Law Section 215 ILCS 5/388.)

[14] See the discussion of *Argonaut Ins. Co. v. Ames Dept Stores (In re Ames Dep't Stores) infra.* Please also note that there is a partially omitted citation in the refiled motion for the case of "*American Safety*" to-wit, *American Safety Indemnity Co. v. Vanderveer Estate Holdings LLC,* 328 B.R. 18.

4834-7331-0724.1                                    7

*Debtors. Argonaut Insurance Company, Appellant, - against- Ames Department Stores, Inc.,*[15] the bankruptcy court held that it lacked jurisdiction to determine the insurer's obligation to pay amounts within the deductible and that claims the insurer had as a result of having to pay amounts within the deductible were pre-petition unsecured claims subject to the bankruptcy plan. The court disagreed that the bankruptcy court was attempting to rewrite the parties' contract or impose extra-contractual obligations on the insurer. The insurer in the Ames action at best had a pre-petition claim for its defense costs because a post-petition breach of a contract executed pre-petition gave rise only to pre-petition liability. The court also disagreed that the policy, executed pre-petition, could be deemed an executory contract. The court also held that the insurer's defense costs could not be afforded administrative priority.

Harsch's status as an additional insured under the Rhodes Companies' policy with London Underwriters (which is now a bankruptcy asset) distinguishes Harsch from the other unsecured creditors who might assert claims for payment against Bravo, Inc. This distinction in Harsch's status cannot be ignored. Affording the London Underwriters the status of unsecured creditors in exchange for London Underwriters honoring the commitment to defend and indemnify Harsch Investment Properties on behalf of Bravo, Inc. under specific terms of the Bravo pre-petition lease, is a reasonable accommodation of Harsch Investment Properties' interests and, in the end, in the best interests of the bankrupt parties and their other creditors.[16] The loss will fall, as it should, on the London Underwriters, or arguably the United States Broker, that issued the Certificate of Insurance to Harsch Investment Company.

As clearly enunciated by the cases creditor Harsch has cited, in entering the orders

---

[15] 93 Civ. 4014, KMW (S.D. N.Y. 1995) (1995 U.S. Dist. LEXIS 6704).

[16] As pointed out in the refiled motion, Harsch is making no separate claim for breach of contract damages for such things as rent or overhead expense. It seeks from Bravo, Inc., specific performance of the lease obligations relating to insurance, defense and indemnity, and, if anything, damages resulting from Bravo's alleged breach of the covenant of good faith and fair dealing that is part of every Nevada contract.

4834-7331-0724.1       8

herein requested, this Court would neither be rewriting the parties' contract nor imposing extra contractual obligations on the London Underwriters. London Underwriters instead would be fulfilling their obligations to the solvent additional insured. Bravo will not be harmed by such an order. At best, London Underwriters would have an unsecured creditor's claim for sums it spent that Bravo was unable to spend to defray the SIR against the bankrupt estate.

None of the secured creditors are adversely affected by such an order. This is would likely not be deemed either an administrative expense or a post-petition claim. The unsecured creditors will all be treated the same with regard to available assets. Therefore, the Court's order lifting the stay and clearing the way for Bravo, inc. to defend the Rosen litigation would affect only unsecured creditors, if any at all. If properly defended, Bravo, Inc. might well defeat Rosen's liability claims to the benefit of all creditors.

Entry of the requested orders will put the risk of loss on the party where it belongs – with Lloyds Underwriters and/or their United States Broker. The risk of loss should not be upon the person entitled to be defended and indemnified, Harsch Investment Properties.

<div style="text-align:center">Conclusion</div>

1. Harsch Investment Properties respectfully request that the automatic bankruptcy stay for the express purpose of allowing the Rosen to proceed as to both Harsch Investment Properties and Bravo, Inc. If Bravo, Inc. chooses to continue the case in default position, at least their employees and documents will be available in discovery and Harsch can fairly introduce evidence material to the cross claim at the jury trial in which Bravo, Inc., to date, has declined to participate but is nonetheless a party.

2. Harsch Investment Properties respectfully requests that the issuers of the bankruptcy estate's policy identified in the Certificate of Insurance issued to Harsch Investment Properties, to-wit, "Lloyds of London and Aspen Insurance UK Ltd., and/or their United States broker, be

4834-7331-0724.1

9

required to defend and indemnify Harsch as an additional insured against all claims by Rosen against Harsch Investment Properties in the Rosen in the state court action and that said insurers/brokers hold Harsch Investment Properties harmless from any payment the state court jury deems is owed to Rosen or as determined by other orders or settlement. Further, that this Honorable Court permit the party paying the defense costs and Rosen's payment to file an unsecured creditor's claim to recoup any monies that Bravo should have paid instead.

3. In the alternative, that this Honorable Court order that despite the automatic stay, that Bravo, Inc. be required to produce documents pertaining to the Rosen claim and Bravo Inc witnesses, whether currently employed or not, at either deposition or jury trial.

4. In the alternative, should Bravo Inc.'s bankruptcy trustee choose to have approved defense counsel set aside the plaintiff's default and/or answer Harsch's cross claim and defend the Rosen case on the merits in order to protect the creditor's interests, that the automatic stay be lifted for that particular purpose through the conclusion of the case. That limited order for lifting the stay would affect no other claimants.

5. For such other and further orders as this Honorable Court may deem just and proper.

Respectfully submitted this 29 day of July, 2009.

LEWIS BRISBOIS BISGAARD & SMITH LLP


By _____
JANICE J. BROWN
Nevada Bar No. 001118
JEFFREY D. OLSTER
Nevada Bar No. 008864
400 South Fourth Street, Suite 500
Las Vegas, Nevada 89101
Attorneys for Defendant
*Harsch Investment Properties- Nevada, LLC*

4834-7331-0724.1

10

Case 09-14814-gwz    Doc 371    Entered 07/31/09 15:09:57    Page 11 of 11

## CERTIFICATE OF SERVICE

Pursuant to N.R.C.P 5(b), I certify that I am an employee of LEWIS BRISBOIS BISGAARD & SMITH LLP and that on this 29th day of July, 2009, I did cause a true copy of **HARSCH INVESTMENT PROPERTIES, NEVADA LLC'S REPLY TO DEBTOR'S OPPOSITION TO THE MOTION TO LIFT AUTOMATIC STAY AND IN SUPPORT OF MOTION AS REFILED (DOCUMENT 302)** to be forwarded via United States Mail, with first class postage prepaid thereon, and addressed as follows:

Office of the U.S. Trustee
300 S. Las Vegas Blvd., Ste. 4300
Las Vegas, NV 89101

Lloyd W. Baker, Esq.
Jason W. Barrus, Esq.
BAKER LAW OFFICES
500 South Eighth Street
Las Vegas, NV 89101
Facsimile: 702-360-3234
*Attorneys for Plaintiff*

Richard S. Staub, Esq.
P.O. Box 392
Carson City, NV 89702
*Attorneys for Builders Association Western Nevada*

Zachariah Larson, Esq.
Kyle O. Stephens, Esq.
LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, NV 89101
Facsimile: 702-382-1169
*Attorneys for Defendant, Bravo, Inc.*

BY: Annemarie Gourley
An Employee of
LEWIS BRISBOIS BISGAARD & SMITH LLP



4834-7331-0724.1

11