Jeff Barcy
Ridgeback Partners, LLC
97 Round Hill Rd.
Tiburon, CA 94920
Telephone: 415/435-3201
Facsimile: 415/789-5274
Email: jbarcy@ridgeback-partners.com

E-Filed: August 14, 2009

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re:

THE RHODES COMPANIES, LLC, aka
"Rhodes Homes," et al.,[1]

Debtors.

Affects:

☒ All Debtors
☐ Affects the following Debtor(s)

Case No.: BK-S-09-14814-LBR

(Jointly Administered)

Chapter 11

DATE:  October 2, 2009
TIME:  1:30 p.m.

FINAL APPLICATION OF JEFF BARCY, FINANCIAL
ADVISOR TO DEBTORS IN POSSESSION

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

# FINAL APPLICATION OF JEFF BARCY, FINANCIAL ADVISOR TO DEBTORS IN POSSESSION

Jeff Barcy hereby submits this final application (the "Final Application") pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") regarding the Debtors' retention and employment of Jeff Barcy as financial consultant for the time period from March 31, 2009 through April 10, 2009, his last day of work. In support of this Application, Jeff Barcy provides the *Declaration Of Jeff Barcy* (the "Barcy Declaration"), which is being submitted concurrently with the Application. In support of the Application, Jeff Barcy respectfully represents as follows:

## SUMMARY OF JEFF BARCY'S ENGAGEMENT

Mr. Barcy owns Ridgeback Partners, LLC, a boutique advisory firm that focuses on providing strategic and financial advice to distressed homebuilders, including those evaluating their options with respect to bankruptcy. Mr. Barcy worked on-site at the Debtor's operations full-time as a consultant.

### A. Employment Agreement

Mr. Barcy was employed by the Debtors pursuant to an engagement letter dated December 8, 2009. Pursuant to the Engagement Letter, the Debtors engaged Mr. Barcy as a financial consultant to the Debtors as further described below.

Mr. Barcy was employed by the Debtors beginning December 8, 2009 as an outside consultant at the agreed upon salary of $250,000 per year plus a bonus of $250,000 per year, which bonus was payable on a prorated basis every month. During this prepetition work period, Mr. Barcy developed a significant level of knowledge relating to the Debtors' operations and finances. In light of this knowledge, and the urgent need to generate financial information and projections in connection with the Debtors' "first day" motions, including the motion to use cash collateral (the "Cash Collateral Motion"), it was in the best interests of the Debtors to continue to engage Mr. Barcy on a short-term basis post-petition to assist with the processing of financial information during

the beginning period of the Debtors' cases. For example, Mr. Barcy helped create the Debtors' 13 week budget that was attached to the Cash Collateral Motion.

**B.   Qualifications**

Mr. Barcy is the founder and Chief Executive Officer of Ridgeback Partners, a real estate firm created in 2007 that provides turnaround advisory and consulting services to help distressed homebuilders, banks and institutional investors work through their problems. Before founding Ridgeback Partners, Mr. Barcy was Chief Executive Officer, Chief Strategic Officer and Executive Vice President for Hearthstone, a leading institutional investor in for-sale residential real estate, with approximately $4 billion in equity commitments from investors. Prior to joining Hearthstone, Mr. Barcy spent over 12 years at Credit Suisse First Boston, most recently as a Director in the West Coast real estate investment banking practice, where he worked on over $15 billion of financings for all types of real estate companies, including homebuilders, developers, multi-family REITs and hotel companies. Mr. Barcy is a graduate of Harvard College and has an MBA from the Harvard Business School.

**C.   Services Rendered**

It was necessary and in the best interests of the Debtors' estates to retain Mr. Barcy for a short period of time post-petition as a financial consultant to provide the following services:

(a)   Assist the Debtors in preparing detailed financial analyses and cash flow projections;

(b)   Work directly with the Debtors' management to develop and implement strategic and working capital plans to maximize recovery for creditors;

(c)   Advise the Debtors in evaluating their post-petition financial alternatives;

(d)   Interact with lenders' due diligence firms to provide information related to the Debtors and their operations; and

(e)   Provide other appropriate general consulting advice.

Mr. Barcy was well situated to act as financial consultant in the most efficient and cost-effective manner available to the Debtors, and the retention of Mr. Barcy as financial consultant provided efficiency that directly inured to the benefit of the Debtors' estates and creditors. Mr.

Barcy's services for the Debtors were necessary to enable the Debtors to execute their duties as debtors in possession, including maximizing value to their creditors.

### D. <u>Summary of Compensation Request</u>

Mr. Barcy hereby submits a first and final fee application pursuant to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the District of Nevada and this Court's Orders. Mr. Barcy charged the Debtors rates consistent with the rates he charges other clients for short-term consulting engagements. Mr. Barcy's compensation was at the rate of $41,667 per month, or approximately $212 per hour.

As part of the agreement with the Debtors, Mr. Barcy will receive reimbursement of post-petition expenses, including travel, parking, cell phone service, and conference call telephone charges. Mr. Barcy charges the Debtors for these expenses in a manner and at rates consistent with those he generally charges his other clients.

Prior to the Petition Date, Mr. Barcy received a retainer (the "Retainer") in these cases in the amount of $30,000. During the twelve months prior to the Petition Date, Mr. Barcy received $206,236.29 in the aggregate from the Debtors, including the Retainer and reimbursed expenses. The Debtors do not owe Mr. Barcy any monies as of the Petition Date. Mr. Barcy is currently holding a Retainer in the amount of $30,000, which he will apply against the $16,589.57 of fees and expenses he is awarded pursuant to his first and final fee application when approved by this Court, with the remainder to be returned to the Debtors.

Mr. Barcy's employment application was previously approved by this Court. No compensation will be paid except upon approval of this final application by this Court. The Debtor has reviewed Ridgeback Partner's fees and expenses and has approved them in writing, per the Debtor's Chief Financial Officer, Joe Schramm. It has been less than 120 days since the order allowing the application. Mr. Barcy's detailed timesheets and summary expense sheet have been attached herewith as an addendum. Exhibit A is the summary time sheet and Exhibit B contains the detailed timesheets.

E.  **Summary of Services Rendered**

In accordance with the Fee Guidelines, Mr. Barcy classified all services performed for which compensation is being sought into categories. Mr. Barcy attempted to place to services performed in the category that best relates to the service provided. However, because certain services may relate to one or more categories, services pertaining to one category may, in fact, be included in another category. Mr. Barcy has established the following categories:

**SUMMARY BY PROJECT CATEGORY**

| Project Categories | | Total Hours | Total Fees |
|---|---|---|---|
| 10 | Business Operations | 2.15 | $ 455.80 |
| 20 | Case Administration | 6.90 | 1,462.80 |
| 30 | Employee Benfits/Pensions | 2.80 | 593.60 |
| | Fee/Employment | | |
| 40 | Applicants | 5.95 | 1,261.40 |
| 50 | Financing | 2.95 | 625.40 |
| 60 | Meetings of Creditors | 8.90 | 1,886.80 |
| 70 | Accounting / Auditing | 7.25 | 1,537.00 |
| 80 | Business Analysis | 18.30 | 3,879.60 |
| 90 | Corporate Finance | 1.35 | 286.20 |
| 100 | Data Analysis | 11.40 | 2,416.80 |
| 110 | Valuation | 0.80 | 169.60 |
| | | 68.75 | $ 14,575.00 |

Over the course of the first ten days subsequent to the Debtor's Chapter 11 filing, Mr. Barcy performed a wide variety of services in various categories, but particularly Business Analysis, Data Analysis and Meetings of Creditors.

**Meetings of Creditors (60).** A substantial portion of Mr. Barcy's time was spent on communicating with first and second lien lenders and creditors and attempting to negotiate a settlement, providing the Creditors with updates on the Debtor's business and operations, and keeping them apprised of the Debtor's financial situation. These involved extensive phone and conference calls with Highland Capital Management, which took a lead role in the steering committee of the first lien creditors. In the course of the first 10 days of April Mr. Barcy spent approximately 8.9 hours in discussions with creditors, resulting in fees of $1,886.80

**Business Analysis (80).** In the first week of the Debtor's Chapter 11 filing, there was a substantial need for large amount of Business Analysis, particularly as it related to the preparation of the Company's 13-week forecast. Mr. Barcy was integral in tracking down the data to complete the 13 week forecast, along with running sensitivity analysis with the Debtor's finance staff to ensure the Debtors would have adequate funds the run their business. This was the largest category, with approximately 18.3 hours spent modeling the Debtor's cash flows, resulting in fees of $3,879.60.

**Data Analysis (100).** Data Analysis was the second largest category of hours for Mr. Barcy. Again, given the familiarity of Mr. Barcy with the Debtor's business having worked with them since December of 2008, he was integral in finding and generating data required by the Chapter 11 filings. In addition, Mr. Barcy was tasked with leading the response to the data request of Richard Dix of Winchester Carlisle, a consulting firm retained by the creditors. In the category of Data Analysis Mr. Barcy spent approximately 11.4 hours, resulting in a fee of approximately $2,416.80.

**Business Operations (10).** In the role of a general manager, Mr. Barcy spent some time with marketing and sales professionals at the Debtor, ensuring that the marketing and sales effort was able to effectively deal with the news surrounding the bankruptcy. In the category of Business Operations Mr. Barcy spent approximately 2.15 hours, resulting in a fee of $455.80.

**Case Administration (20).** In the early days of the bankruptcy, Mr. Barcy communicated and coordinated with the Debtor's bankruptcy counsel, Pachulski, Stang, Ziehl and Jones. A substantial amount of interfacing was done between the Debtor's bankruptcy counsel and the Debtors to determine the information and data requirements for motions and filings in the early days of the bankruptcy, along with preparing Debtor's management with financial information in advance of their depositions. In the category of Case Administration Mr. Barcy spent 6.9 hours, resulting in a fee of approximately $1,462.80.

**Employee Benefits (30).** Mr Barcy spent 2.8 hours conferring with Dan Tarwater, head of human resources for the Debtor, to discuss strategies in retaining employees and communicating with employees about the bankruptcy. In the category of Employee Benefits Mr. Barcy earned a fee of approximately $593.60.

**Fee / Employment Applications (40)**. Mr Barcy spent approximately 6 hours over the course of two days preparing this final fee application, resulting in a fee of $1,261.40.

**Financing (50)**.  Mr. Barcy spent 2.95 hours communicating with the Debtor's chief financial officer and Paul Huygins regarding the cash collateral, resulting in fees of $625.40

**Accounting / Auditing (70)**. Mr. Barcy spent approximately 7.25 hours retrieving accounting data with the Debtor's controller, Mary Ann Hubbard, in response to data requests from the creditors. Such data included accounts payable schedules and data relating to the utilities motion. Mr. Barcy earned a fee of $1,537.00 in connection with these activities.

**Corporate Finance (90)**.  Mr. Barcy spent approximately 1.35 hours discussing the bankruptcy and its implications with the rating agency Standard & Poors, along with Credit Suisse, resulting in a fee of $286.20.

**Valuation (110)**. Mr. Barcy spent approximately one hour interacting with Cushman & Wakefield regarding appraisals for the company's properties, resulting in a fee of $169.60.

F.  **Summary of Costs and Expenses**

The Fee Guidelines require that an application seeking reimbursement of expenses include a summary listing of all expenses by category and month. Accordingly, the following summary table is provided:

| Summary of Expenses by Category | |
|---|---|
| Travel | $ 1,066.60 |
| Parking | $ 391.00 |
| Conferencing/Telephone | $ 556.97 |
| | $ 2,014.57 |

Mr. Barcy resides in San Francisco, and traveled to and from Las Vegas in coach class via discount airlines (to Las Vegas on Mondays, and returning to San Francisco on Fridays). The travel expense of $1,066.60 consists solely of this roundtrip airfare between the two cities. The parking expense of $391.00 mainly reflects parking expense at the San Francisco Airport, but also includes several days at the Las Vegas airport. Mr. Barcy was able to keep other expenses low by utilizing

housing and a company car provided by the Debtor while he lived in Las Vegas during the week. A more detailed breakdown of expenses is as follows:

**Expenses (Week of March 23rd to March 27th)**

| | | |
|---|---|---|
| Flight to and from SF to Las Vegas | $ | 329.20 |
| Parking at SF Airport | $ | 100.00 |
| | $ | 429.20 |

**Expenses (Week of March 30th to April 3rd)**

| | | |
|---|---|---|
| Flight to and from SF to Las Vegas | $ | 278.20 |
| Parking at SF Airport | $ | 100.00 |
| Spiderphone Conferencing (4/2/09) | $ | 189.03 |
| | $ | 567.23 |

**Expenses (Week of April 6th to April 10th)**

| | | |
|---|---|---|
| Flight to and from SF to Las Vegas | $ | 459.20 |
| Parking at SF Airport | $ | 100.00 |
| Las Vegas Airport Parking (4/7) | $ | 91.00 |
| Verizon Wireless (4/10) | $ | 367.94 |
| | $ | 1,018.14 |

| | | |
|---|---|---|
| Total Expenses | $ | 2,014.57 |

G.    **Request for Final Reimbursement of Compensation and Expenses**

Mr. Barcy believes that the services rendered for which compensation is sought in this Application have been beneficial to the Debtor's estate, that the costs incurred have been necessary and proper, and that the sums requested for the services are fair and reasonable.

Dated:   August 14, 2009

By _____
Jeff Barey

LARSON & STEVENS
810 S. CASINO CENTER BLVD., SUITE 104
LAS VEGAS, NEVADA 89101

## DECLARATION OF JEFF BARCY

I, Jeff Barcy, declare:

a)     I am a principal of Ridgeback Partners, LLC.

b)     I am familiar with the services rendered by Ridgeback Partners, LLC as real estate consultant for the Debtors and Debtors in Possession.

c)     I have reviewed the foregoing Application and Exhibits and the facts set forth therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of August, 2009 at Tiburon, California.

_____
Jeff Barcy

## EXHIBIT A: SUMMARY SHEET FOR RIDGEBACK PARTNERS

In re:  
**THE RHODES COMPANIES, LLC**  
aka "Rhodes Homes," et al     CHAPTER 11

Case No.  
BK-S-09-14814-LBR

NAME OF APPLICANT: Ridgeback Partners, LLC

| | |
|---|---|
| Fees Previously Requested | $0 |
| Fees Previously Awarded | $0 |
| Expenses Previously Requested | $0 |
| Expenses Previously Awarded | $0 |
| Retainer Paid: | $ 30,000 |

ROLE IN THE CASE:  
Provided the debtor with financial advice and analysis, helped generate and organize data requests from creditors

CURRENT APPLICATION  
Fees Requested:                $ 14,575.00  
Expenses Requested:         $ 2,014.57  
Total                                    $ 16,589.57

FEE APPLICATION

| NAMES OF PROFESSIONALS/ PARAPROFESSIONALS | HOURS BILLED FINAL APPLICATION | RATE | TOTAL FOR APPLICATION |
|---|---|---|---|
| **PARTNERS**  JEFF BARCY | 68.75 | $ 212.00 | $ 14,575.00 |

8/13/2009
2:36 PM

## EXHIBIT B - TIMETRACKER

**Jeff Barcy**
**Week Endin** 4/5/2009
**Hourly Rate:** $ 212.00

| Actvity Task Code | Description | Hours |
|---|---|---|
| | **Wednesday, April 1** | |
| 20 | Meeting with Ed Kim and Noel Bejarano to discuss creditor requests | 1.05 |
| 20 | Meeting with Noel Bejarano to discuss org. chart | 0.25 |
| 60 | Call with Kurt Daum at Highland to discuss settlement with first lien | 0.35 |
| 60 | Email exchange with Kurt Daum at Highland | 0.20 |
| 20 | Meeting with Jim Rhodes to discuss Ch. 11 timetable | 0.45 |
| 60 | Conference call with first lien lenders | 0.55 |
| 50 | Email follow up with Credit Suisse | 0.10 |
| 10 | Meeting with Dan Tarwater re: employee retention | 0.45 |
| 10 | Discussion with Clayton Rice re: legal strategy | 0.40 |
| 20 | Phone call with Pachulski Stang re: forbearance | 0.20 |
| 60 | Email exchange with Phil Dublin re: forbearance | 0.10 |
| 60 | Email exchange with Ira Dizengoff re: forbearance | 0.10 |
| 60 | Phone call with Highland to inform them of Ch. 11 filing | 0.35 |
| 20 | Email exchange with Shirley Cho re: filing remaining cos. | 0.10 |
| 20 | Phone call with Shirley Cho regarding timing of filing | 0.30 |
| 60 | Email exchange with Kurt Daum re: timing of filing | 0.15 |
| 20 | Conf. call with Pach. Stang and Jim Rhodes re: strategy | 0.55 |
| 70 | Instruct Noel to notify banks of filing: | 0.15 |
| 70 | Email exhange with PSJZ re: notifying banks of filing | 0.10 |
| 90 | Email exchange with S&P confirming filing | 0.10 |

Ridgeback Partners

| Actvity Task Code | Description | Hours |
|---|---|---|
| 90 | Call with Jim Fielding of S&P regarding filing | 0.20 |
| 90 | Email J. Schramm re: disclosure to rating agencies | 0.10 |
| 90 | Conf. call with Paul Furhman of Colony Capital regarding DIP financing | 0.45 |
| 90 | Email exchange with Fuhrman regarding DIP financing possiblities | 0.15 |
| 40 | Providing PSZJ with info for fee filing | 0.20 |
| 20 | Call with A. Kornfeld re: security for Rhodes assets | 0.15 |
| 20 | Call with J. Stang and A. Kornfeld re: deposition prep. | 0.35 |
| 20 | Email exchange with A. Kornfeld on depositions | 0.10 |
| 100 | Meeting with P. Huygen re: dep. Materials | 0.35 |
| | Total | 8.05 |

| Actvity Task Code | Thursday, April 2nd Description | Hours |
|---|---|---|
| 110 | Email exchange w. Kaye Cuba on appraisal | 0.15 |
| 70 | Meeting with Ed Kim to review model | 1.20 |
| | Conf. call with A. Kornfeld re: deposition | |
| 100 | materials | 1.35 |
| 100 | Meeting with Paul Huygins re: fin. Info | 0.45 |
| 20 | Email A. Kornfeld re: depo notices | 0.10 |
| 100 | Meeting with J. Schramm to discuss depo materials | 0.50 |
| 110 | Phone call with K. Cuba re: appraisal | 0.25 |
| 70 | Prepare financial schedules for Fri. meeting | 1.45 |
| 80 | Phone call with PSZJ re: financial info | 0.25 |
| 70 | Meeting with N. Bejarano re: org. chart | 0.40 |
| 80 | Review financial model with Ed Kim | 0.45 |
| 60 | Call with first lien lenders re: negotations | 0.35 |
| 60 | Update call with second lien lenders | 0.40 |
| 60 | Phone call with first lien admin agent (CS) | 0.10 |

8/13/2009
2:36 PM

| Actvity Task Code | | Description | Hours |
|---|---|---|---|
| 50 | | Meeting with J. Schramm on liquidity | 0.45 |
| 30 | | Meeting with D. Tarwater re: employee retention | 0.25 |
| | | | 8.10 |

**Friday April 3rd**

| Actvity Task Code | | Description | Hours |
|---|---|---|---|
| 100 | | Conf. call with A. Kornfeld reg. depo materials | 1.20 |
| 20 | | Email A. Kornfeld re: deposition schedule | 0.10 |
| 60 | | Conf. call with K. Daum re: first lien demands | 0.45 |
| 60 | | Review creditor presentations with Ed Kim | 0.25 |
| 60 | | Email Ed Kim re: creditor presentations | 0.10 |
| 60 | | Leave voicemail for Kurt Daum | 0.05 |
| 60 | | Follow up call with Kurt Daum: re CRO | 0.30 |
| 80 | | Review 13 week forecast with J. Schramm | 0.25 |
| 80 | | Meeting with Ed Kim re: revision of 13 wk forecast | 1.30 |
| 80 | | Meeting with N. Bejarano re: 13 wk revisions | 0.45 |
| 80 | | Meeting with J. Glystrom re: 13 wk inputs and budget | 0.15 |
| 20 | | Review of motions in deposition preparation | 1.00 |
| 80 | | Meeting with E. Kim, N Bejarano re: budget revisions | 0.45 |
| 70 | | Discussion with Noel re: utilities numbers | 0.15 |
| 80 | | Read emails from W. Disse re: 13 wk | 0.05 |
| 50 | | Meeting w M. Hubbard re: cash reconciliation | 1.15 |
| 50 | | Meeting w J. Schramm re: cash reconciliation | 0.25 |
| 50 | | Meeting with P. Huygens re: cash disbursements | 0.45 |
| | | | 8.10 |

Ridgeback Partners

8/13/2009
2:36 PM

**Week Ending 4/12/09**

**Actvity   Monday, April 6th**

| Task Code | Description | Hours |
|---|---|---|
| 80 | Conf. Call with Jim Rhodes re: strategy | 1.30 |
| 70 | Meeting w. M. Hubbard to discuss month end review | 0.25 |
| 80 | Email J. Schramm re: Alix Report | 0.10 |
| 80 | Call with J. Schramm to discuss Alix Report | 1.15 |
| 70 | Email exchange w N. Bejarano re: utilities motion | 0.25 |
| 70 | Conf. call with Bej. & Hubbard re: utilities expense | 0.30 |
| 80 | Call with A. Kornfeld to discuss cash collateral | 0.45 |
| 80 | Conf. call w. N. Bej. / E. Kim to review 13 wk changes | 1.30 |
| 110 | Call with K. Cuba re: Rhodes appraisal process | 0.45 |
| 110 | Email exchange with K. Cuba | 0.10 |
| 80 | Conf. call  with Paul Huygens re: cash collateral | 1.25 |
| 70 | Email exch. With W. Disse re: utilities amounts | 0.10 |
| 80 | Review revised 13 wk forecast w P. Huygens | 0.45 |
| 80 | Email N. Bejarano re: 13 week revisions | 0.10 |
| 70 | Review accounts payable with Ed Kim | 0.45 |

8.00

**Actvity   Tuesday April 7th**

| Task Code | Description | Hours |
|---|---|---|
| 60 | Call with P. Dublin to set up conf. call | 0.10 |
| 60 | Conf. call with P. Dublin and PSZJ | 1.15 |
| 60 | Call B. Axelrod re: call with first lien | 0.10 |
| 20 | Call w. S. Cho re: CS objection | 0.25 |
| 20 | Email exch. W S. Cho re: cash collateral | 0.25 |
| 30 | Meeting w C. Rice re: legal strategy | 1.30 |
| 100 | Meeting with N. Bejarano re: document requests | 0.45 |
| 100 | Meeting with M. Hubbard re: Winchester prep | 0.50 |
| 80 | Call with Jim Rhodes re: financial liquidity | 0.25 |
| 80 | Meeting with Ed Kim to review latest model | 0.45 |
| 20 | Call with PSZJ re: update on court events | 0.30 |

Ridgeback Partners

### Actvity Wednesday April 8th

| Task Code | Description | Hours |
|---|---|---|
| 70 | Work with Acceleron re: debtor summary | 0.45 |
| 20 | Discuss data requests from court w. N Bejarano | 1.10 |
| 60 | Call with B. Legg and K. Daum at Highland re: demands | 0.45 |
| 30 | Meeting with D. Tanwater to review HR policies | 0.55 |
| 80 | Discussion with Jim Rhodes re: plan | 0.45 |
|   |   | 8.10 |
| 20 | Conf. Call w. W. Disse regarding conflicts | 0.25 |
| 50 | Review of cash collateral changes | 0.30 |
|    | Read emails and attachments from Jim |   |
| 50 | Stang re: cash collateral | 0.25 |
| 70 | Meeting re: R. Dix data request w. M. Hubbard | 1.10 |
| 80 | Meeting w N. Bejarano and E Kim re: data request | 1.30 |
| 80 | Email finance staff re: R. Dix data request | 0.10 |
| 100 | Conf. call w. Richard Dix re: data request | 0.45 |
| 100 | Review bate stamp/data request w. E. Kim | 0.50 |
| 100 | Update J. Rhodes on data request preparation | 0.35 |
| 100 | Meeting w. J Schramm re: Winchester request | 1.10 |
| 100 | Meeting w. J. Glystrom re: financial data for Dix | 0.45 |
| 60 | Email K. Daum at Highland Capital re: negotations | 0.10 |
| 60 | Call w. B Legg at Highland re: first lien position | 0.45 |
| 100 | Meeting with N. Bejarano re: Dix data request | 0.45 |
| 20 | Call with J. Stang re: next steps on strategy | 0.25 |
| 80 | Review emails re: data request / fin. Info | 0.25 |
| 10 | Meeting w. R. Soucie re: marketing data request | 0.50 |
|   |   | 8.15 |

### Actvity Thursday April 9th

| Task Code | Description | Hours |
|---|---|---|
| 100 | Preparation for meeting with Richard Dix | 0.45 |
| 80 | Meeting w. P. Huygins re: financials | 0.50 |
| 80 | Meeting with Jim Rhodes to review IRR analysis | 1.30 |
| 100 | Email N. Bejarano re: additional data request | 0.15 |

**Actvity   Friday April 9th**

| Task Code | Description | Hours |
|---|---|---|
| 30 | Meeting with D. Tarwater to discuss emp. pay plan | 0.25 |
| 80 | Meeting with J. Rhodes to review liabilities | 0.45 |
| 10 | Meet w. A. Melnick to discuss home pricing | 0.35 |
| 10 | Meet w. R. Soucie to discuss Tusc. product mix | 0.45 |
| 100 | Call with J. Schram and C. Rice re: Dix meeting | 0.30 |
| 100 | Finance team meeting re: Dix document request | 1.25 |
| 90 | Meeting with P. Huygins re: financial files | 0.45 |
| 60 | Phone call with several first lien lenders | 0.50 |
| 20 | Call with J. Stang re: update on process | 0.35 |
| 80 | Meeting with J. Rhodes regarding financial model | 1.25 |
| 100 | Email N. Bejarano re: additional data request | 0.20 |
|  |  | 8.20 |
| 80 | Meeting with Jim Rhodes re: financial strategy | 1.25 |
| 70 | Meeting w. M. Hubbard to discuss month end review | 0.55 |
| 60 | Email follow up with Credit Suisse | 0.10 |
| 60 | Call with Kurt Daum re: settlement | 0.25 |
| 60 | Email Kurt Daum re: follow up | 0.10 |

**Actvity   Tuesday, Aug 12th**

| | | |
|---|---|---|
| 60 | Call with B. Legg and K. Daum re: settlement | 1.30 |
| 60 | Phone call with several first lien lenders | 0.50 |
| 30 | Meeting with Dan Tarwater re: employee ret. | 0.45 |
| 100 | Email N. Bejarano re: additional data request | 0.10 |
| 100 | Email finance staff re: R. Dix data request | 0.15 |
| 100 | Meeting with N. Bejarano re: document requests | 1.30 |
| 70 | Review accounts payable with M. Hubbard | 0.45 |
| 20 | Conference call w PSJZ re: conflicts | 1.00 |
| 80 | Meeting with Jim Rhodes re: consultant strategy | 1.30 |
|  |  | 8.80 |

| Task Code Description | Hours |
|---|---|
| **Actvity   Wednesday Aug 12th** | |
| 40 Preparation of final fee application | 3.25 |

| Task Code Description | Hours |
|---|---|
| 40 Preparation of final fee application | 2.50 |

TOTAL HOURS 4-1 to 4-15: 68.75