AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

7.    Fractional, De Minimis, Undeliverable, and Unclaimed Distributions:

a.    Fractional Distributions:  Notwithstanding any other provision of the Plan to the contrary, payments of fractions of shares of Newco Equity Interests or fractions of Litigation Trust Interests shall not be made.  The Distribution Agent shall not be required to make distributions or payments of fractions of Newco Equity Interests, Litigation Trust Interests or dollars.  Whenever any payment of Cash or a fraction of a dollar or payment of a fraction of Newco Equity Interests or fraction of Litigation Trust Interests pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars, half Newco Equity Interests or half Litigation Trust Interests or less being rounded down.

b.    Undeliverable Distributions:  If any distribution to a Holder of an Allowed Claim is returned to a Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until such Distribution Agent is notified in writing of such Holder's then-current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date.  Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors pursuant to Article VII.D.7.c, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

c.    Reversion:  Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Reorganized Debtors and, to the extent such Unclaimed Distribution is a distribution of Newco Equity Interests, such Newco Equity Interests shall be deemed cancelled.  Upon such revesting, the Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.  The provisions of the Plan regarding undeliverable distributions and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Debtors, made pursuant to any indenture or Certificate (but only with respect to the initial distribution by the Servicer to Holders that are entitled to be recognized under the relevant indenture or Certificate and not with respect to Entities to whom those recognized Holders distribute), notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property law.

8.    Manner of Payment Pursuant to the Plan:  Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Reorganized Debtors by check or by wire transfer.  Checks issued by the Distribution Agent or applicable Servicer on account of Allowed Claims shall be null and void if not presented within 120 days after issuance, but may be requested to be reissued until the distribution revests in the Reorganized Debtors pursuant to Article VII.D.7.c.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

9.    <u>Surrender of Cancelled Instruments or Securities</u>:  On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a Certificate shall surrender such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer).  Such Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.  No distribution of property pursuant to the Plan shall be made to or on behalf of any such Holder that is a Holder of a Claim unless and until such Certificate is received by the Distribution Agent or the Servicer or the unavailability of such Certificate is reasonably established to the satisfaction of the Distribution Agent or the Servicer.  Any Holder of a Claim who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity acceptable to the Distribution Agent or the Servicer prior to the first anniversary of the Effective Date, shall have its Claim discharged with no further action, be forever barred from asserting any such Claim against the relevant Reorganized Debtor or its property, be deemed to have forfeited all rights and Claims with respect to such Certificate, and not participate in any distribution under the Plan;  furthermore, all property with respect to such forfeited distributions, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors, notwithstanding any federal or state escheat, abandoned, or unclaimed property law to the contrary.

E.    <u>Claims Paid or Payable by Third Parties</u>.

1.    <u>Claims Paid by Third Parties</u>:  The Claims and Solicitation Agent shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  Further, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.    <u>Claims Payable by Insurance</u>:  Holders of Insured Claims that are covered by the Debtors' insurance policies shall seek payment of such Claims from applicable insurance policies, provided that the Reorganized Debtors shall have no obligation to pay any amounts in respect of pre-petition deductibles or self insured retention amounts.  Allowed Insured Claim amounts in excess of available insurance shall be treated as General Unsecured Claims.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the

1  extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the
2  extent adjudicated by a court of competent jurisdiction), then immediately upon such
   insurers' agreement, such Claim may be expunged to the extent of any agreed upon
3  satisfaction on the Claims Register by the Claims and Solicitation Agent without a Claims
   objection having to be Filed and without any further notice to or action, order, or approval of
4  the Bankruptcy Court.

5       3.    Applicability of Insurance Policies:  Distributions to Holders of Allowed
6  Claims shall be in accordance with the provisions of any applicable insurance policy.
   Except for Claims and Causes of Action released under the Plan to the Released Parties and
7  Exculpated Parties, nothing contained in the Plan shall constitute or be deemed a waiver of
   any Cause of Action that the Debtors or any Entity may hold against any other Entity,
8  including insurers under any policies of insurance, nor shall anything contained herein
   constitute or be deemed a waiver by such insurers of any defenses, including coverage
9  defenses, held by such insurers.

10                        **ARTICLE VIII.**
11            EFFECT OF CONFIRMATION OF THE PLAN

12  A.    Discharge of Claims and Termination of Interests:  Pursuant to section 1141(d) of
13  the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the
   distributions, rights, and treatment that are provided in the Plan shall be in complete
14  satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests,
   and Causes of Action of any nature whatsoever, including any interest accrued on Claims or
15  Interests from and after the Petition Date, whether known or unknown, against, liabilities of,
16  Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or
   properties, regardless of whether any property shall have been distributed or retained
17  pursuant to the Plan on account of such Claims and Interests, including demands, liabilities,
   and Causes of Action that arose before the Effective Date, any liability (including
18  withdrawal liability) to the extent such Claims or Interests relate to services performed by
19  employees of the Debtors prior to the Effective Date and that arise from a termination of any
   employee, regardless of whether such termination occurred prior to or after the Effective
20  Date, any contingent or non-contingent liability on account of representations or warranties
   issued on or before the Effective Date, and all debts of the kind specified in sections 502(g),
21  502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim
22  or Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to
   section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or
23  Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of
   such a Claim or Interest has accepted the Plan.  Any default by the Debtors with respect to
24  any Claim or Interest that existed immediately prior to or on account of the filing of the
25  Chapter 11 Cases shall be deemed Cured on the Effective Date.  The Confirmation Order
   shall be a judicial determination of the discharge of all Claims and Interests subject to
26  Effective Date occurring.

27  B.    Subordinated Claims:  The allowance, classification, and treatment of all Allowed
28  Claims and Interests and the respective distributions and treatments under the Plan take into
   account and conform to the relative priority and rights of the Claims and Interests in each

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Plan Proponent or Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

C.    Compromise and Settlement of Claims and Controversies: Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such an Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities.

D.    **Releases by the Debtors of the Released Parties: Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtors, taking place on or before the Effective Date, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any of the Released Parties, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

E.    **Releases by the Debtors of the Rhodes Entities:**  The Rhodes Entities shall be deemed released from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever arising under chapter 5 of the Bankruptcy Code with respect to transfers made by the Debtors to the Rhodes Entities during the 2 years prior to the Petition Date; provided, however, that such release shall only apply to transfers expressly set forth in the Schedules as Filed with the Bankruptcy Court as of August 1, 2009 or as disclosed in Attachment B to the Mediation Term Sheet.

F.    **Releases by First Lien Lenders of First Lien Lenders**  Pursuant to Bankruptcy Rule 9019, and except as otherwise specifically provided in the Plan or the Plan Supplement, to the extent a First Lien Lender elects on its Ballot to release the First Lien Lenders in accordance with this Section VIII.F., for good and valuable consideration, on and after the Effective Date, each of the First Lien Lenders electing to grant this release, shall be deemed to release each of the other First Lien Lenders that has elected to grant this release and each of their Affiliates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such First Lien Lender would have been legally entitled to assert against any other First Lien Lender that elected to grant this release, based on or relating to, or in any manner arising from, in whole or in part, the First Lien Credit Agreement, the First Lien Lender Claims, any other claims arising under or related to the First Lien Credit Agreement, the Debtors, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to any First Lien Lender Claim, the restructuring of the First Lien Lender Claims prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; with such releases constituting an express waiver and relinquishment by each First Lien Lender electing to grant this release of any claims, whether known or unknown that such First Lien Lender may have under Section 1542 of the California Civil code or other analogous state or federal law related to the matters being released; provided, however, that Claims or liabilities arising out of or relating to any act or omission of any First Lien Lender or any of its Affiliates that constitutes gross negligence or willful misconduct shall not be released.

G.    **Exculpation:**  Except as otherwise specifically provided in the Plan or Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Claim, obligation, Cause of Action, or liability to one another or to any Exculpating Party for any Exculpated Claim, except for gross negligence, willful misconduct or fraud, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Debtors, the First Lien Steering Committee and the Reorganized Debtors (and each of their respective agents, members, directors, officers, employees, advisors, and attorneys) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of the Securities pursuant to the Plan, and therefore are not, and on

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1    account of such distributions shall not be, liable at any time for the violation of any
2    applicable law, rule, or regulation governing the solicitation of acceptances or
     rejections of the Plan or such distributions made pursuant to the Plan.

3    **H.    Injunction**   Except as otherwise expressly provided in the Plan or for
4    obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold
     Claims against the Debtors, and all Entities holding Interests, are permanently
5    enjoined, from and after the Effective Date, from: (1) commencing or continuing in any
6    manner any action or other proceeding of any kind against the Debtors or Reorganized
     Debtors on account of or in connection with or with respect to any such Claims or
7    Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means
     any judgment, award, decree or order against the Debtors or Reorganized Debtors
8    account of or in connection with or with respect to any such Claims or Interests;
9    (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors
     or Reorganized Debtors or the property or estates of the Debtors or Reorganized
10   Debtors on account of or in connection with or with respect to any such Claims or
     Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind
11   against any obligation due from the Debtors or Reorganized Debtors or against the
12   property or Estates of the Debtors or Reorganized Debtors on account of or in
     connection with or with respect to any such Claims or Interests unless such Holder has
13   Filed a motion requesting the right to perform such setoff on or before the
     Confirmation Date, and notwithstanding an indication in a Proof of Claim or Interest
14   or otherwise that such Holder asserts, has, or intends to preserve any right of setoff
15   pursuant to section 553 of the Bankruptcy Code or otherwise (provided, that, to the
     extent the Rhodes Entities Claims are Allowed, the Rhodes Entities, without the need
16   to file any such motion, shall retain the right to assert a setoff against any Claims or
17   Causes of Action that the Reorganized Debtors or Litigation Trust may assert against
     the Rhodes Entities, with the Reorganized Debtors and Litigation Trust, as applicable,
18   reserving the right to challenge the propriety of any such attempted setoff, with any
     such challenge to be resolved by the Bankruptcy Court; and (5) commencing or
19   continuing in any manner any action or other proceeding of any kind on account of or
20   in connection with or with respect to any such Claims or Interests released or settled
     pursuant to the Plan.

21   I.      Protection Against Discriminatory Treatment:  Consistent with section 525 of the
22   Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including
     Governmental Units, shall not discriminate against the Reorganized Debtors or deny,
23   revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar
24   grant to, condition such a grant to, discriminate with respect to such a grant against, the
     Reorganized Debtors, or another Entity with whom such Reorganized Debtors have been
25   associated, solely because one of the Debtors has been a debtor under chapter 11, has been
     insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11
26   Cases but before the Debtor is granted or denied a discharge) or has not paid a debt that is
27   dischargeable in the Chapter 11 Cases.

28   J.      Setoffs:  Except as otherwise expressly provided for in the Plan, each Reorganized
     Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code),

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor, Reorganized Debtor or the Litigation Trust, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor or the Litigation Trust of any such Claims, rights, and Causes of Action that such Reorganized Debtor or the Litigation Trust may possess against such Holder.  In no event shall any Holder of Claims be entitled to setoff any Claim against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise; provided, however, that, to the extent the Rhodes Entities Claims are Allowed, the Rhodes Entities, without the need to file any such motion, shall retain the right to assert a setoff against any Claims or Causes of Action that the Reorganized Debtors or Litigation Trust may assert against the Rhodes Entities, with the Reorganized Debtors and Litigation Trust, as applicable, reserving the right to challenge the propriety of any such attempted setoff, with any such challenge to be resolved by the Bankruptcy Court.

K.    Recoupment:  In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors and the First Lien Steering Committee on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

L.    Release of Liens:  Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.

M.    Document Retention:  On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their current document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors in the ordinary course of business.  Copies of all Debtors' books and records shall be delivered to the Rhodes Entities at no cost to the Rhodes Entities on or prior to the Effective Date.

N.    Reimbursement or Contribution:  If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date: (1) such Claim has been adjudicated as noncontingent or (2) the relevant Holder of a Claim has Filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## ARTICLE IX.
## ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

A.    Professional Claims:

1.    Final Fee Applications:  All final requests for payment of Claims of a Professional shall be Filed no later than forty-five days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

2.    Payment of Interim Amounts:  Except as otherwise provided in the Plan, Professionals shall be paid pursuant to the Interim Compensation Order.

3.    Reimbursable Expenses:  The reasonable fees and expenses incurred by (i) the First Lien Agent, including its professionals, to the extent provided by the First Lien Credit Agreement, (ii) the Second Lien Agent, including its professionals, to the extent provided by the Second Lien Credit Agreement (only to the extent the Class of Second Lien Lender Claims votes in favor of the Plan), and (iii) the First Lien Steering Committee, including its professionals, in connection with the Chapter 11 Cases shall be paid by the Debtors or Reorganized Debtors, as applicable, within 15 days of receipt of an invoice from such parties or their advisors.

4.    Post-Effective Date Fees and Expenses:  Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation incurred by the Reorganized Debtors and First Lien Steering Committee.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

5.    Substantial Contribution Compensation and Expenses:  Except as otherwise specifically provided in the Plan, any Entity who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must File an application and serve

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

51

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  such application on counsel for the Debtors or Reorganized Debtors, as applicable, and the
2  First Lien Steering Committee and the Creditors' Committee, and as otherwise required by
   the Bankruptcy Court and the Bankruptcy Code on or before the Administrative Claim Bar
3  Date or be forever barred from seeking such compensation or expense reimbursement.

4  B.    Other Administrative Claims:  All requests for payment of an Administrative Claim
   must be Filed with the Claims and Solicitation Agent and served upon counsel to the
5  Debtors or Reorganized Debtors, as applicable, and the First Lien Steering Committee on or
6  before the Administrative Claim Bar Date.  Any request for payment of an Administrative
   Claim that is not timely Filed and served shall be disallowed automatically without the need
7  for any objection by the Debtors, Reorganized Debtors, or the First Lien Steering
   Committee.  The Reorganized Debtors may settle and pay any Administrative Claim in the
8  ordinary course of business without any further notice to or action, order, or approval of the
9  Bankruptcy Court.  In the event that any party with standing objects to an Administrative
   Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative
10 Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Claim
   need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

11
12                          **ARTICLE X.**
13            CONDITIONS PRECEDENT TO CONFIRMATION
                AND CONSUMMATION OF THE PLAN

14 A.    Conditions to Confirmation:    The following are conditions precedent to
15 Confirmation that must be satisfied or waived in accordance with Article X.C:

16      1.    The Bankruptcy Court shall have approved the Disclosure Statement, in a
   manner acceptable to the Plan Proponent, as containing adequate information with respect to
17 the Plan within the meaning of section 1125 of the Bankruptcy Code.

18      2.    The Confirmation Order shall be in form and substance acceptable to the Plan
19 Proponent.

20      3.    The terms and conditions of employment or retention of any Persons
   proposed to serve as officers or directors of Newco, including, without limitation, as to
21 compensation, shall be acceptable to the Plan Proponent and be set forth in the Plan
22 Supplement.

23      4.    Any disclosures made pursuant to 11 U.S.C. § 1129(a)(5) shall be acceptable
   to the Plan Proponent.
24
25      5.    The most current version of the Plan Supplement and all of the schedules,
   documents, and exhibits contained therein (including the Newco Bylaws and the Newco
26 Charter) shall have been Filed in form and substance acceptable to the Plan Proponent.

27 B.    Conditions Precedent to the Effective Date:  The following are conditions precedent
   to Consummation that must be satisfied or waived in accordance with Article X.C:
28

52

1         1.     The Bankruptcy Court shall have authorized the assumption and rejection of
2    executory contracts and unexpired leases by the Debtors as contemplated by Article V.

3         2.     The Confirmation Order shall have become a Final Order in form and
4    substance acceptable to the Plan Proponent.

5         3.     The most current version of the Plan Supplement and all of the schedules,
6    documents, and exhibits contained therein shall have been Filed in form and substance
acceptable to the Plan Proponent.

7         4.     The documents governing the New First Lien Notes, the Newco Charter, the
8    Newco Bylaws and the Stockholders Agreement shall be in form and substance acceptable
to the Plan Proponent.

9         5.     The Confirmation Date shall have occurred.

10        6.     The First Lien Steering Committee shall have designated and replaced each
11   existing Qualified Employee of the Debtors with a new Qualified Employee for the
Reorganized Debtors.

12        7.     The debt outstanding on the Rhodes Ranch Golf Course shall be refinanced
13   on terms and conditions acceptable to Rhodes and the First Lien Steering Committee.

14        8.     Copies of all Debtors' books and records shall have been delivered to the
15   Rhodes Entities at no cost to the Rhodes Entities.

16        9.     The Arizona Assets shall have been transferred to the Rhodes Entities (or
17   their designee) free and clear of all liens and claims pursuant to section 363(f) of the
Bankruptcy Code on the Effective Date; provided, that the non-First Lien Lender/Second
18   Lien Lender liens do not exceed $60,000.

19        10.     The Debtors shall have assumed and assigned all executory contracts and
20   unexpired leases related solely to the Arizona Assets to the Rhodes Entities (or their
designee), at no cost to the Debtors or the Reorganized Debtors, with all Cure costs
21   associated therewith to be borne by the Rhodes Entities.

22        11.     The tax structure set forth in Article IV.F shall be implemented.

23        12.     The Rhodes Entities and First Lien Steering Committee shall have agreed on
24   the Golf Course Security Property.

25        13.     The Rhodes Entities shall have performed all of their obligations under the
Plan including, without limitation, depositing $3.5 million in Cash in an account designated
26   by the Debtors, with the consent of the First Lien Steering Committee, and transferred the
Rhodes Ranch Golf Course and related contracts and assets as required by Article IV.S. to
27   the Reorganized Debtors.

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

C.    Waiver of Conditions Precedent:  The First Lien Steering Committee may waive any of the conditions to the Effective Date at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan; provided, that the First Lien Steering Committee will not waive the conditions precedent in items X.B.6 through 12 above if the Rhodes Entities shall have complied with all of their obligations hereunder and in the Plan by the Effective Date (or such earlier date specifically set forth herein).  In the event the Rhodes Entities fail to comply with any of their obligations under the Mediation Term Sheet or under the Plan by the Effective Date (or such earlier date specifically set forth herein) and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, then the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their right to object to such motion; (ii) modify the Plan to remove any provisions hereof that were included for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as modified.  Upon entry of an order of the Bankruptcy Court finding a breach by the Rhodes Entities and authorizing the modifications to the Plan to remove any provisions that were included for the benefit of the Rhodes Entities, the First Lien Steering shall be authorized to make such modifications and consummate the Plan.

D.    Effect of Non-Occurrence of Conditions to Consummation:  Each of the conditions to Consummation must be satisfied or duly waived pursuant to Article X.C, and Consummation must occur within 180 days of Confirmation, or by such later date established by Bankruptcy Court order.  If Consummation has not occurred within 180 days of Confirmation, then upon motion by a party in interest made before Consummation and a hearing, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the Filing of such motion to vacate, the Confirmation Order may not be vacated if Consummation occurs before the Bankruptcy Court enters an order granting such motion.  If the Confirmation Order is vacated pursuant to Article X.D. or otherwise, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, including the discharge of Claims and termination of Interests pursuant to the Plan and section 1141 of the Bankruptcy Code and the assumptions, assignments, or rejections of executory contracts or unexpired leases pursuant to Article V, and nothing contained in the Plan or Disclosure Statement shall: (1) constitute a waiver or release of any Claims, Interests, or Causes of Action; (2) prejudice in any manner the rights of the Debtors, the First Lien Steering Committee or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors, the First Lien Steering Committee or any other Entity.

E.    Satisfaction of Conditions Precedent to Confirmation:    Upon entry of a Confirmation Order acceptable to the Plan Proponent, each of the conditions precedent to Confirmation, as set forth in Article X.A, shall be deemed to have been satisfied or waived in accordance with the Plan.

**ARTICLE XI.**

MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    Modification and Amendments:  The First Lien Steering Committee shall not modify materially the terms of the Plan without the prior consent of the parties to the Mediation Term Sheet; provided, that in the event the Rhodes Entities fail to comply with any of their obligations under the Mediation Term Sheet or the Plan by the Effective Date (or such other date set forth herein) and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, then the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their right to object to such motion; (ii) modify the Plan to remove any provisions hereof that were included for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as modified.  Upon entry of an order of the Bankruptcy Court finding a breach by the Rhodes Entities and authorizing the modifications to the Plan to remove any provisions that were included for the benefit of the Rhodes Entities, the First Lien Steering shall be authorized to make such modifications and consummate the Plan.  Except as otherwise specifically provided in the Plan, the Plan Proponent reserves the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponent expressly reserves its rights to revoke, withdraw, alter, amend, or modify materially the Plan with respect to any Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI.A.  Upon its Filing, the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours, at the Bankruptcy Court's website at http://www.nvb.uscourts.gov.  The documents contained in the Plan Supplement are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

B.    Effect of Confirmation on Modifications:  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    Revocation or Withdrawal of Plan:  The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization; provided, that, any subsequently filed plan shall be consistent with the Mediation Settlement unless the Rhodes Entities fail to comply with any of their obligations under the Mediation Term Sheet or the Plan by the Effective Date (or such other date set

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  forth herein) and fail to cure such alleged breach within ten (10) days' written notice to the
2  Rhodes Entities, in which case the First Lien Steering Committee shall be entitled to file a
   motion on at least seven (7) days notice to (i) determine that a breach has occurred (except
3  that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course
4  solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith
   shall not be deemed a failure of the Rhodes Entities to comply with their obligations
5  hereunder or under the Plan), and the Rhodes Entities reserve their right to object to such
6  motion; (ii) revoke or withdraw the Plan as a result of such breach; and (iii) file a subsequent
   plan that removes the benefits provided to the Rhodes Entities pursuant to the Mediation
7  Term Sheet.  If the Plan Proponent revokes or withdraws the Plan, or if Confirmation or
8  Consummation does not occur, then: (1) the Plan shall be null and void in all respects;
   (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to
9  an amount certain of any Claim or Class of Claims), assumption or rejection of executory
10 contracts or unexpired leases effected by the Plan, and any document or agreement executed
   pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan
11 shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any
   manner the rights of the Plan Proponent or any other Entity; or (c) constitute an admission,
12 acknowledgement, offer, or undertaking of any sort by the Plan Proponent or any other
   Entity.

13                                   **ARTICLE XII.**
14                           RETENTION OF JURISDICTION

15       Notwithstanding the entry of the Confirmation Order and the occurrence of the
   Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters
16 arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a)
17 and 1142 of the Bankruptcy Code, including jurisdiction to:

18       1.     Allow, disallow, determine, liquidate, classify, estimate, or establish the
   priority, Secured or unsecured status, or amount of any Claim or Interest, including the
19 resolution of any request for payment of any Administrative Claim and the resolution of any
   and all objections to the Secured or unsecured status, priority, amount, or allowance of
20 Claims or Interests;

21       2.     Decide and resolve all matters related to the granting and denying, in whole
22 or in part, of any applications for allowance of compensation or reimbursement of expenses
   to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

23       3.     Resolve any matters related to: (a) the assumption, assumption and
24 assignment, or rejection of any executory contract or unexpired lease to which a Debtor is
   party or with respect to which a Debtor may be liable and to hear, determine, and, if
25 necessary, liquidate, any Cure or Claims arising therefrom, including Cure or Claims
26 pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation
   under any executory contract or unexpired lease that is assumed; (c) the Reorganized
27 Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to
28 Article V, any executory contracts or unexpired leases to the list of executory contracts and

unexpired leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.    Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.    Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.    Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.    Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.    Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.    Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.    Resolve any disputes with respect to the Debtors or Reorganized Debtors performance bonds guaranteed by the Rhodes Entities or other matters contemplated by Article IV.W.

12.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

13.    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VII.E;

15.    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16. Determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17. Enter an order or Final Decree concluding or closing the Chapter 11 Cases;

18. Adjudicate any and all disputes arising from or relating to distributions under the Plan;

19. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20. Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

21. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

22. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23. Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment of any employee, regardless of whether such termination occurred prior to or after the Effective Date;

24. Resolve any dispute among the Debtors, the Creditors Committee and/or the First Lien Steering Committee regarding which Claims shall be classified as Trade Claims or (ii) the procedure for the reconciliation of Trade Claims;

25. Enforce all orders previously entered by the Bankruptcy Court; and

26. Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII.
### MISCELLANEOUS PROVISIONS

A. Immediate Binding Effect: Subject to Article X.B. and notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1   Entity acquiring property under the Plan, and any and all non-Debtor parties to executory
2   contracts and unexpired leases with the Debtors.

3   B.      Additional Documents:  On or before the Effective Date, the Plan Proponent may
    file with the Bankruptcy Court such agreements and other documents as may be necessary
4   or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The
    Debtors or the Reorganized Debtors, as applicable, the First Lien Steering Committee and
5   all Holders of Claims receiving distributions pursuant to the Plan and all other parties in
6   interest shall, from time to time, prepare, execute, and deliver any agreements or documents
    and take any other actions as may be necessary or advisable to effectuate the provisions and
7   intent of the Plan.

8   C.      Payment of Statutory Fees:  All fees payable pursuant to section 1930(a) of the
9   Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128
    of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until
10  the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

11  D.      Dissolution of Creditors' Committee:  Upon the Effective Date, the Creditors'
    Committee shall dissolve automatically (except with respect to the resolution of applications
12  for Professional Claims), and members thereof shall be released and discharged from all
13  rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases
    and under the Bankruptcy Code.  Notwithstanding the foregoing, the Creditors' Committee
14  may remain in existence for matters related to the reconciliation of Trade Claims to the
    extent provided for the in the Trade Claims Reconciliation Procedures, with its reasonable
15  and necessary expenses reimbursed by the Reorganized Debtors.

16  E.      Reservation of Rights:  Except as expressly set forth in the Plan, the Plan shall have
17  no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of
    the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any
18  action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan
19  Supplement shall be or shall be deemed to be an admission or waiver of any rights of any
    Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

20
21  F.      Successors and Assigns:  The rights, benefits, and obligations of any Entity named
    or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir,
22  executor, administrator, successor or assign, affiliate, officer, director, agent, representative,
    attorney, beneficiaries, or guardian, if any, of each Entity.

23  G.      Service of Documents:

24
25  1.      After the Effective Date, any pleading, notice, or other document required by
    the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

26
27
28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

59

| Debtors | Counsel to the Debtors |
|---|---|
| The Rhodes Companies, LLC<br>4730 South Fort Apache Road<br>Suite 300<br>Las Vegas, NV  89147 | Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Boulevard #1100<br>Los Angeles, CA 90067<br>Attn:   James I. Stang<br>          Shirley S. Cho<br>          Werner S. Disse<br><br>Larson & Stephens<br>810 S. Casino Center Boulevard<br>Suite 104<br>Las Vegas, NV 89101<br>Attn:   Zachariah Larson |
| United States Trustee | Counsel to the First Lien Steering Committee |
| United States Trustee – LV-11<br>300 Las Vegas Boulevard S.<br>Suite 4300<br>Las Vegas, NV 89101<br>Attn:   Edward M. McDonald | Akin Gump Strauss Hauer & Feld<br>One Bryant Park<br>New York, NY 10036<br>Attn:   Philip C. Dublin<br>          Abid Qureshi<br><br>Kolesar & Leatham, Chtd.<br>3320 West Sahara Avenue<br>Suite 380<br>Las Vegas, NV 89102<br>Attn:   Nile Leatham |
| Counsel to the Creditors' Committee | Counsel to First Lien Agent |
| Parsons Behle & Latimer<br>201 S. Main St., Suite 1800<br>Salt Lake City, Utah 84111<br>Attn:   J. Thomas Beckett<br><br>Parsons Behle & Latimer<br>50 West Liberty Street, Suite 750<br>Reno, Nevada 89501<br>Attn: Rew Goodenow | Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue, Suite 3500<br>Los Angeles, CA 90071<br>Attn:   Van C. Durrer II<br>          Ramon M. Naguiat |

2.      After the Effective Date, the Reorganized Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

3.      In accordance with Bankruptcy Rules 2002 and 3020(c), within ten business days of the date of entry of the Confirmation Order, the Plan Proponent shall serve  the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with the Confirmation Hearing Notice; provided, however, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Plan Proponent mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Plan Proponent has been informed in writing by such Entity, or is otherwise aware, of that Entity's new address. To supplement the notice described in the preceding sentence, within twenty days of the date of the Confirmation Order, the First Lien Steering Committee shall publish the Notice of Confirmation once in the Vegas Sun.  Mailing and publication of the Notice of Confirmation in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

H.      Term of Injunctions or Stays:  Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      Entire Agreement:  Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      Governing Law:  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Nevada, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; provided, however, that corporate governance matters relating to the Debtors or Reorganized Debtors, as applicable, not incorporated or organized in Nevada shall be governed by the laws of the state of incorporation or organization of the applicable Debtor or Reorganized Debtor, as applicable.

K.      Exhibits:  All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall be Filed with the Bankruptcy Court on or before the Plan Supplement Filing Date.  After the exhibits and documents are Filed, copies of such exhibits and documents shall have been available upon written request to the First Lien Steering

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1   Committee's counsel at the address above or by downloading such exhibits and documents
2   from the Bankruptcy Court's website at http://www.nvb.uscourts.gov. To the extent any
    exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by
3   the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

4       L.      Nonseverability of Plan Provisions: If, prior to Confirmation, any term or provision
    of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the
5   Bankruptcy Court shall have the power to alter and interpret such term or provision to make
    it valid or enforceable to the maximum extent practicable, consistent with the original
6   purpose of the term or provision held to be invalid, void, or unenforceable, and such term or
7   provision shall then be applicable as altered or interpreted. Notwithstanding any such
    holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan
8   will remain in full force and effect and will in no way be affected, impaired, or invalidated
9   by such holding, alteration, or interpretation. The Confirmation Order shall constitute a
    judicial determination and shall provide that each term and provision of the Plan, as it may
10  have been altered or interpreted in accordance with the foregoing, is: (1) valid and
    enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified
11  without the Plan Proponent's consent; and (3) nonseverable and mutually dependent.

12      M.      Closing of the Chapter 11 Cases: The Reorganized Debtors shall, promptly after the
13  full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents
    required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to
14  close the Chapter 11 Cases.

15      N.      Waiver or Estoppel: Each Holder of a Claim or an Interest shall be deemed to have
    waived any right to assert any argument, including the right to argue that its Claim or
16  Interest should be Allowed in a certain amount, in a certain priority, Secured or not
17  subordinated by virtue of an agreement made with the Debtors or their counsel, the First
    Lien Steering Committee or its counsel, or any other Entity, if such agreement was not
18  disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court
19  prior to the Confirmation Date.

20      O.      Conflicts: Except as set forth in the Plan, to the extent that any provision of the
    Disclosure Statement, the Plan Supplement, the Mediation Term Sheet or any order (other
21  than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices,
22  supplements, or amendments to any of the foregoing), conflict with or are in any way
    inconsistent with any provision of the Plan, the Plan shall govern and control.

23

24

25

26

27

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Las Vegas, Nevada
Dated:  September 25, 2009

FIRST LIEN STEERING COMMITTEE

By:    /s/ Philip C. Dublin
       Nile Leatham (NV Bar No. 002838)
       KOLESAR & LEATHAM
       Wells Fargo Financial Center
       3320 W. Sahara Ave.
       Las Vegas, NV 89102
       (702) 979-2357 (Telephone)
       (702) 362-9472 (Facsimile)
       Nleatham@klnevada.com

       AKIN GUMP STRAUSS HAUER & FELD LLP
       Philip C. Dublin (NY Bar No, 2959344)
       Abid Qureshi (NY Bar No. 2684637)
       One Bryant Park
       New York, New York 10036
       (212) 872-1000 (Telephone)
       (212) 872-1002 (Facsimile)
       pdublin@akingump.com
       aqureshi@akingump.com

       *Counsel for the First Lien Steering Committee*

LIST OF EXHIBITS

| Exhibit | | Description |
|---------|---|-------------|
| 1 | ..................................................... | Mediation Term Sheet |
| 2 | ..................................................... | Term Sheet for New First Lien Notes |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel.: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1

## Exhibit 1

**Mediation Term Sheet**

**EXECUTION COPY**

RHODES ENTITIES' MEDIATION SETTLEMENT PROPOSAL

| | |
|---|---|
| **Releases for Rhodes Entities:** | The Rhodes Entities (as set forth on Attachment A) shall receive a full release for chapter 5 causes of action with respect to transfers made by the Debtors to the Rhodes Entities during the 2 years prior to the Petition Date, provided, that, such release shall only apply to transfers expressly set forth in the Debtors' statements of financial affairs as filed with the Bankruptcy Court as of August 1, 2009 or as disclosed in Attachment B. |
| **Releases for Debtors' officers, employees and professionals** | To the extent permitted by applicable law, the Plan shall provide that, but for (i) the Rhodes Entities and their affiliates; (ii) insiders of any of the Rhodes Entities (except as to Thomas Robinson and Joseph Schramm who were also employees of the Debtors); (iii) relatives of James Rhodes, the Debtors' officers, employees (including Thomas Robinson and Joseph Schramm), and professionals, as of the Petition Date, and Paul Huygens shall receive a general release from the Debtors' estates. |
| **Exculpation:** | The Plan shall contain standard exculpation provisions. |
| **Bond Replacement or Indemnification:** | The Plan shall provide for one of the following: (i) those performance bonds guaranteed by the Rhodes Entities in favor of the Debtors to be replaced on a renewal date by new performance bonds or, in the alternative, (ii) subject to the Rhodes Entities being reasonably satisfied with the creditworthiness of the Reorganized Debtors, which shall be satisfied solely as of the Effective Date by the Court finding that the Plan is feasible, the existing performance bonds guaranteed by the Rhodes Entities and such guarantees to remain in place. The applicable Rhodes Entity's agreement to remain a guarantor under the existing performance bonds as such performance bonds may be renewed shall be at no cost to the Rhodes Entities (including, but not limited to, the payment of bond premiums). In the event the Reorganized Debtors fail to perform their obligations underlying such renewed performance bonds after the Effective Date, the Reorganized Debtors will indemnify the Rhodes Entities under such outstanding performance bonds for damages incurred by the Rhodes Entities on account of their guarantee of such performance bonds solely as a result of the Reorganized Debtors' failure to perform such obligations subsequent to the Effective Date. The Reorganized Debtors shall use commercially reasonable efforts to replace all outstanding performance bonds backstopped by Rhodes Entities within 30 months of the Effective Date. The Bankruptcy Court shall retain jurisdiction to resolve any disputes arising out of this paragraph. |
| **HOA Board Seats:** | The Rhodes Entities shall ensure that designees identified by the Reorganized Debtors shall replace the Rhodes Entities on any HOA Boards that in any way are related to the Debtors, Reorganized Debtors or their businesses and Declarant rights or the like shall be transferred to the Reorganized Debtors or their designee(s). |
| **Licensing:** | The Rhodes Entities shall take commercially reasonable steps and/or enter into any agreements or similar documentation reasonably necessary to ensure the Reorganized Debtors' continued use of all of the Debtors' applicable professional licenses at no cost to the Rhodes Entities for a period of up to twelve months following the Effective Date. Additionally, provided that the parties have executed this Mediation Settlement Term Sheet, Sagebrush Enterprises, Inc. shall rescind by September 25, 2009 its revocation of its indemnity of the Nevada Contractors' license held by Rhodes Design & Development Corporation to the extent such rescission does not negatively |

*8200277 v.13*

1

**EXECUTION COPY**

| | |
|---|---|
| | affect the general contractor's license held by Rhodes Design & Development Corporation provided that Sagebrush shall be entitled to file an administrative claim on behalf of any and all claims asserted against Sagebrush as a result of Sagebrush being the indemnitor that arose from and after the effectiveness of Sagebrush's recission of its indemnity through the Effective Date, provided that the allowance of such administrative claim shall be subject to resolution by the Bankruptcy Court and/or such other court(s) of competent jurisdiction. The Reorganized Debtors shall indemnify Sagebrush for any and all claims asserted against Sagebrush as a result of Sagebrush being the indemnitor that arise from and after the Effective Date. Professional licenses include, but are not limited to the Nevada State Contractor's Board license, and any other general business or similar licenses in any county, state, municipality or other jurisdiction in which the Reorganized Debtors conduct business or own assets as of the Effective Date. The Rhodes Entities shall use commercially reasonable efforts to maintain third party agreements with their real estate brokers and sales agents. |
| **Rhodes Entities' Claim Treatment:** | To the extent allowed, the Rhodes Entities' Claims shall be treated in the same class as and treated *pari passu* with General Unsecured Claims, excluding Trade Claims. The First Lien Steering Committee, any First Lien Lender and/or the Reorganized Debtors shall have until sixty days following the Effective Date to object to the proofs of claim filed by the Rhodes Entities in the Debtors' chapter 11 cases (provided, that, such objection shall not seek to subordinate the Rhodes Entities Claims, if allowed). Neither the Litigation Trust nor the Reorganized Debtors shall commence any litigation against the Rhodes Entities until the Bankruptcy Court rules on the allowance of the Rhodes Entities Claims set forth in such proofs of claim (for the avoidance of doubt, the First Lien Lenders are not bound by this provision). To the extent any statute of limitations to pursue any claims belonging to the Debtors against the Rhodes Entities would lapse, from execution of this term sheet and prior to the Bankruptcy Court's resolution of the allowance of the Rhodes Entities Claims, as set forth in filed proofs of claim, the Rhodes Entities shall be deemed to have consented to a tolling of the applicable statute of limitations until sixty days following the Bankruptcy Court's ruling on the allowance of the Rhodes Entities Claims. |
| **Tax Treatment:** | The Plan shall be structured in a tax efficient manner to the Rhodes Entities to effectuate the benefits set forth in item 4 on Attachment C; provided, that there shall be no adverse impact on the Reorganized Debtors or the First Lien Lenders. The Rhodes Entities and the First Lien Steering Committee shall agree on the structure necessary to implement the tax treatment on or before September 25, 2009. |
| **Effective Date:** | The Plan Effective Date shall occur no earlier than January 4, 2010. |
| **Rhodes Ranch Golf Course:** | The term Rhodes Ranch Golf Course, as referred to herein, shall mean the golf course situated within the Rhodes Ranch master-planned community located in the southwestern Las Vegas valley. |
| **Conditions Precedent to Effective Date:** | 1. The Bankruptcy Court shall have authorized the assumption and rejection of executory contracts and unexpired leases by the Debtors.<br><br>2. The Confirmation Order shall have become a Final Order in form and substance acceptable to the First Lien Steering Committee.<br><br>3. The most current version of the Plan Supplement and all of the schedules, |

EXECUTION COPY

documents, and exhibits contained therein shall have been Filed in form and substance acceptable to the First Lien Steering Committee.

4. The documents governing the New First Lien Notes, the Newco Charter, the Newco Bylaws and the Stockholders Agreement shall be in form and substance acceptable to the First Lien Steering Committee.

5. The Confirmation Date shall have occurred.

6. The First Lien Steering Committee shall have designated and replaced each existing Qualified Employee with a new Qualified Employee.

7. The current debt outstanding on the Rhodes Ranch Golf Course shall be refinanced on terms and conditions acceptable to Rhodes and the First Lien Steering Committee.

8. Copies of all Debtors' books and records shall have been delivered to the Rhodes Entities at no cost to the Rhodes Entities.

9. The Arizona Assets shall have been transferred to the Rhodes Entities (or their designee) free and clear of all liens and claims pursuant to section 363(f) of the Bankruptcy Code on the Effective Date provided, that the non-First Lien Lender/Second Lien Lender liens do not exceed $60,000.

10. The Debtors shall have assumed and assigned all executory contracts and unexpired leases related solely to the Arizona Assets to the Rhodes Entities (or their designee), at no cost to the Debtors or the Reorganized Debtors, with all Cure costs associated therewith to be borne by the Rhodes Entities

11. The Rhodes Entities and the First Lien Steering Committee shall have agreed on the structure necessary to implement the tax structure benefits set forth in Exhibit C.

12. The Rhodes Entities and First Lien Steering Committee shall have agreed on the Golf Course Security Property.

13. The Rhodes Entities shall have ensured that designees identified by the Reorganized Debtors shall have replaced the Rhodes Entities on any HOA Boards that in any way are related to the Debtors, Reorganized Debtors or their businesses and Declarant rights or the like shall be transferred to the Reorganized Debtors or their designee(s)

14. The Rhodes Entities shall have performed all of their obligations under the Plan including, without limitation, depositing $3.5 million in Cash in an account designated by the Debtors, with the consent of the First Lien Steering Committee and transferring the equity in the entity that owns the Rhodes Ranch Golf Course and related contracts and assets to the Reorganized Debtors pursuant to the terms of a stock transfer agreement in form and substance acceptable to the Rhodes Entities and the First Lien Steering Committee.

15. All other customary Conditions Precedent to the Effective Date as determined by and acceptable to the First Lien Steering Committee, in its sole discretion.

| | |
|---|---|
| **Waiver of Conditions Precedent** | The First Lien Steering Committee may waive any of the conditions to the |

EXECUTION COPY

| | |
|---|---|
| to the Effective Date | Effective Date at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan; provided, that the First Lien Steering Committee will not waive the conditions precedent in items 6 through 12 above if the Rhodes Entities shall have complied with all of their obligations hereunder and in the Plan by the Effective Date (or such earlier date specifically set forth herein). In the event the Rhodes Entities fail to comply with any of their obligations hereunder or under the Plan by the Effective Date and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, then the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their right to object to such motion; (ii) modify the Plan to remove any provisions hereof that were included for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as modified.  Upon entry of an order of the Bankruptcy Court finding a breach by the Rhodes Entities and authorizing the modifications to the Plan to remove any provisions that were included for the benefit of the Rhodes Entities, the First Lien Steering shall be authorized to make such modifications and consummate the Plan. |
| Modification of the Plan | The First Lien Steering Committee shall not modify materially the terms of the Plan without the prior consent of the parties to this term sheet so long as such parties have complied with all of their obligations hereunder and under the Plan by January 4, 2010 (or such other date specifically set forth herein). |
| Plan Support: | The Debtors and Rhodes Entities shall only support a plan of reorganization filed by the First Lien Steering Committee containing all of the provisions of this Mediation Settlement Term Sheet and consistent with the Plan to which this term sheet is an exhibit and will not file a competing plan of reorganization or support any other plan of reorganization filed in the Debtors' chapter 11 cases. |
| Golf Course Transfer: | On the Effective Date, the applicable Rhodes Entities shall transfer their equity interests in the entity that owns the Rhodes Ranch Golf Course to the Reorganized Debtors (together with any equipment, golf carts, contracts or other assets determined by the First Lien Steering Committee to be necessary for the operation of the Rhodes Ranch Golf Course) pursuant to the terms of a stock transfer agreement in form and substance acceptable to the First Lien Steering Committee and Rhodes, subject to any outstanding debt on the Rhodes Ranch Golf Course.  The stock transfer agreement shall contain representations by the Rhodes Entities that the entity that owns the Rhodes Ranch Golf Course does not have any liabilities other than ordinary course liabilities related to the Rhodes Ranch Golf Course and indemnification provisions in favor of the Reorganized Debtors by the Rhodes Entities for any non-ordinary course liabilities. In addition, prior to the deadline for filing objections to the Disclosure Statement, the Rhodes Entities shall provide the First Lien Steering Committee with a list of all liabilities of the entity that owns the Rhodes Ranch Golf Course, a lien analysis and copies of all contracts related to the Rhodes Ranch Golf Course and to which the entity that owns the Rhodes Ranch Golf Course is a party, each of which must be acceptable to the First Lien Steering Committee.

The existing debt outstanding on the Rhodes Ranch Golf Course shall be |

**EXECUTION COPY**

refinanced on or before the Effective Date, for a period of no less than twelve (12) months from the Effective Date, on terms and conditions acceptable to Rhodes and the First Lien Steering Committee. The parties will work together in good faith to refinance the existing debt. The Reorganized Debtors shall pay the reasonable costs and expenses associated with the refinancing; provided, that the terms of such refinancing are acceptable to the First Lien Steering Committee. The First Lien Steering Committee acknowledges that the loan documentation may provide that, upon the transfer of the Rhodes Ranch Golf Course to the Reorganized Debtors on the Effective Date, additional collateral from the Reorganized Debtors may be required. The Rhodes Entities shall transfer to the Reorganized Debtors on the Effective Debt any contracts related to the operation of and revenue generated by any cell towers located on the property of the Rhodes Ranch Golf Course. Any funds received after July 31, 2009 from the Las Vegas Valley Water District or other similar entity as an incentive for converting the golf course from a green course to a desert course shall be used for operating expenses associated with the Rhodes Ranch Golf Course, with any excess to become property of the Reorganized Debtors on the Effective Date.

Rhodes and/or his designee shall have the absolute right to repurchase the Rhodes Ranch Golf Course from the Reorganized Debtors at eight (8) years from the Effective Date for $5.9 million in cash. The Reorganized Debtors may require Rhodes to purchase the Rhodes Ranch Golf Course any time between four (4) and eight (8) years from the Effective Date for $5.9 million in cash provided that the Reorganized Debtors shall provide Rhodes with at least one year advance notice of its intent to sell the Rhodes Ranch Golf Course back to Rhodes. Such transfer shall occur on the applicable anniversary date of the Effective Date. For the avoidance of doubt, if the Reorganized Debtors put the Rhodes Ranch Golf Course to Rhodes in accordance with the terms hereof and Rhodes fails to comply with his obligation to purchase the Rhodes Ranch Golf Course, Rhodes shall be deemed to have forfeited his option to purchase the Rhodes Ranch Golf Course.

On the Effective Date, Rhodes's obligations to comply with the repurchase shall be secured by either (i) $500,000 in cash in an escrow account or (ii) property worth at least $2 million (the "Golf Course Security Property"), with the value of such property to be agreed to by Rhodes and the First Lien Steering Committee or otherwise valued by an independent third party appraisal firm acceptable to both Rhodes and the First Lien Steering Committee (except Cushman Wakefield). In the event that Rhodes does not meet the repurchase request, provided that the Rhodes Ranch Golf Course is in the standard condition (defined below), then the Reorganized Debtors shall be entitled to liquidated damages in the form of security pledged (i.e., the $500,000 or the Golf Course Security Property).

So long as Rhodes has not defaulted on his obligation to repurchase the Rhodes Ranch Golf Course, Rhodes shall have the absolute and sole discretion to replace the Golf Course Security Property with $500,000 in cash on 30 days written notice to the Reorganized Debtors. Upon deposit of the $500,000 in cash, the Golf Course Security Property shall be released to Rhodes or his designee. Notwithstanding anything to the contrary contained herein, if the Rhodes Ranch Golf Course is not maintained with substantially the same performance and rating criteria at the time of the repurchase request as verified by an independent third party rating agency as it was on the Effective Date ("Standard Condition"), James Rhodes can (i) require the

**EXECUTION COPY**

| | |
|---|---|
| | Reorganized Debtors to cure any conditions to return the Rhodes Ranch Golf Course to its Standard Condition (provided, that the cost of such cure does not exceed $500,000), or (ii) choose not to purchase the Rhodes Ranch Golf Course. Upon either the repurchase of the Rhodes Ranch Golf Course or the written decision to not repurchase the Rhodes Ranch Golf Course (in accordance with the preceding sentence), the Golf Course Security Property or the $500,000 Cash (if not applied to the repurchase of the Rhodes Ranch Golf Course) shall be returned to Rhodes within 30 days.<br><br>On the Effective Date, the Reorganized Debtors shall record a memorandum of agreement against the Rhodes Ranch Golf Course to evidence the above. |
| **Golf Course Audit:** | During the period from September 1, 2009 through September 23, 2009, the Rhodes Entities shall provide access to the First Lien Steering Committee or its designee to undertake a financial and operational audit of the Rhodes Ranch Golf Course. The results of such audit must be acceptable to the First Lien Steering Committee in its sole discretion and evidence, among other things, that the financial performance of the Rhodes Ranch Golf Course is sufficient to pay operating expenses and service the debt on the Rhodes Ranch Golf Course without the need for additional liquidity. |
| **Cash Payment:** | The Rhodes Entities shall make a cash payment to the Reorganized Debtors of $3.5 million in cash on the Effective Date. |
| **Arizona:** | On the Effective Date, pursuant to an asset transfer agreement in form and substance acceptable to the First Lien Steering Committee and the Rhodes Entities, the Debtors shall transfer Pravada and the other Arizona assets set forth on Attachment D hereto, plus the Golden Valley Ranch tradename to the Rhodes Entities free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code; provided, that the non-First Lien Lender/Second Lien Lender liens do not exceed $60,000; provided that such assets shall not include assets owned by Pinnacle Grading located in Arizona and related contracts associated with the assets,. Debtors shall provide James Rhodes notice of any proposed sale of the Pinnacle assets, and James Rhodes shall be granted a right to bid on the sale of such assets within 10 days of such notice. Rhodes Entities shall permit storage of Pinnacle Grading equipment at current locations at no cost to the Reorganized Debtors for a period through six months following the Effective Date.<br><br>All executory contracts and unexpired leases associated solely with Arizona shall be assumed and assigned to the Rhodes Entities (or their designee), at no cost to the Debtors or the Reorganized Debtors and all cure costs associated therewith shall be borne by the Rhodes Entities. |
| **Plan Filing:** | The Debtors, the Rhodes Entities, the First Lien Steering Committee, the First Lien Agent, the Second Lien Agent and the Creditors Committee shall agree not to file a plan of reorganization until the earlier of (i) the date the parties agree on the terms of a plan of reorganization (and accompanying disclosure statement) or (ii) September 25, 2009. |
| **Cash Collateral:** | The First Lien Steering Committee, First Lien Agent and Second Lien Agent will agree to the continued use of cash collateral on existing terms and subject to an agreed upon budget, through January 11, 2010. |

EXECUTION COPY

| | |
|---|---|
| Trademarks and Trade Names | Within the earlier of thirty (30) days following: (i) upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E. |
| Trade Claims Analysis | The First Lien Steering Committee, the Debtors and the Creditors Committee will agree, prior to the hearing on the Disclosure Statement, (i) which filed or scheduled claims shall be classified as Trade Claims and (ii) on a procedure for the reconciliation of Trade Claims. If the parties are unable to agree on (i) or (ii) above in advance of the Disclosure Statement hearing, the Bankruptcy Court shall resolve any disputes at the Disclosure Statement hearing. |
| Preference Claims Against Holders of Allowed Trade Claims | The Reorganized Debtors shall not seek to avoid prepetition transfers to holders of allowed Trade Claims under Bankruptcy Code section 547 to the extent the resulting claim from the avoidance of such a preferential transfer would likewise be an allowed Trade Claim. |
| Stanley Engineering | In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent shall engage in good faith negotiations to ensure that the Second Lien Lenders receive consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration. In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation) |

Dated: September 25, 2009

APPROVED

By: _____
Name: Phillip Dublin
Title: Partner, Akin Gump Strauss Hauer & Feld LLP
Counsel to the First Lien Steering Committee, with
authority from each of the members thereof

APPROVED

By: _____
Name:
Title:
Counsel to Wells Fargo, N.A., as Agent for the Second
Lien Lenders

APPROVED

By: _____
Name: James M. Rhodes
Title: President
The Rhodes Entities

APPROVED

By: _____
Name:
Title:
Counsel to the Official Committee of
Unsecured Creditors

APPROVED

By: _____
Name: James M. Rhodes
Title: President
Debtors and Debtors-in-Possession

8260277 v.13

7

EXECUTION COPY

| Trademarks and Trade Names | Within the earlier of thirty (30) days following: (i) upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E. |
|---|---|
| Trade Claims Analysis | The First Lien Steering Committee, the Debtors and the Creditors Committee will agree, prior to the hearing on the Disclosure Statement, (i) which filed or scheduled claims shall be classified as Trade Claims and (ii) on a procedure for the reconciliation of Trade Claims. If the parties are unable to agree on (i) or (ii) above in advance of the Disclosure Statement hearing, the Bankruptcy Court shall resolve any disputes at the Disclosure Statement hearing. |
| Preference Claims Against Holders of Allowed Trade Claims | The Reorganized Debtors shall not seek to avoid prepetition transfers to holders of allowed Trade Claims under Bankruptcy Code section 547 to the extent the resulting claim from the avoidance of such a preferential transfer would likewise be an allowed Trade Claim. |
| Stanley Engineering | In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent shall engage in good faith negotiations to ensure that the Second Lien Lenders receive consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration. In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation) |

Dated:  September 25, 2009

APPROVED

By: _____
Name:
Title:
*Counsel to the First Lien Steering Committee, with
authority from each of the members thereof*

APPROVED

By: _____
Name:
Title:  Counsel
*Counsel to Wells Fargo, N.A., as Agent for the Second
Lien Lenders*

APPROVED

By: _____
Name: James M. Rhodes
Title:  President
*The Rhodes Entities*

APPROVED

By: _____
Name:
Title:
*Counsel to the Official Committee of
Unsecured Creditors*

APPROVED

By: _____
Name:  James M. Rhodes
Title:  President
*Debtors and Debtors-in-Possession*

8200277 v.13

7

EXECUTION COPY

| Trademarks and Trade Names | Within the earlier of thirty (30) days following: (i) upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E. |
|---|---|
| Trade Claims Analysis | The First Lien Steering Committee, the Debtors and the Creditors Committee will agree, prior to the hearing on the Disclosure Statement, (i) which filed or scheduled claims shall be classified as Trade Claims and (ii) on a procedure for the reconciliation of Trade Claims. If the parties are unable to agree on (i) or (ii) above in advance of the Disclosure Statement hearing, the Bankruptcy Court shall resolve any disputes at the Disclosure Statement hearing. |
| Preference Claims Against Holders of Allowed Trade Claims | The Reorganized Debtors shall not seek to avoid prepetition transfers to holders of allowed Trade Claims under Bankruptcy Code section 547 to the extent the resulting claim from the avoidance of such a preferential transfer would likewise be an allowed Trade Claim. |
| Stanley Engineering | In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent shall engage in good faith negotiations to ensure that the Second Lien Lenders receive consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration. In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation) |

Dated: September 25, 2009

APPROVED

By: _____
Name: Phil P. Dubin
Title: Partner, Akin Gump Strauss Hair & Feld LLP
Counsel to the First Lien Steering Committee, with
authority from each of the members thereof

APPROVED

By: _____
Name:
Title:
Counsel to Wells Fargo, N.A., as Agent for the Second
Lien Lenders

APPROVED

By: _____
Name: James M. Rhodes
Title: President
The Rhodes Entities

APPROVED

By: _____
Name: Thomas Beckett
Title: Shareholder, Parsons Behle & Latimer
Counsel to the Official Committee of
Unsecured Creditors

APPROVED

By: _____
Name: James M. Rhodes
Title: President
Debtors and Debtors-in-Possession

8200277 v.13

7

**EXECUTION COPY**

## ATTACHMENT A - RHODES ENTITIES

James M. Rhodes

Glynda Rhodes

John Rhodes

James M. Rhodes Dynasty Trust I

James M. Rhodes Dynasty Trust II

JMR Children's Irrevocable Educational Trust

Truckee Springs Holdings, Inc.

Sedora Holdings LLC

Gypsum Resources, LLC

Tulare Springs Holdings, Inc.

Escalante-Zion Investments, LLC

HH Trust

Harmony Homes, LLC

Tock, LP

Tapemeasure, LP

Joshua Choya, LLC

American Land Management, LLC

South Dakota Conservancy, LLC

Meridian Land Company, LLC

Yucca Land Company, LLC

Sagebrush Enterprises, Inc.

Rhodes Ranch, LLC

Westward Crossing, LLC

Pinnacle Equipment Rental, LLC

Desert Communities, Inc.

Spirit Underground, LLC

8200277 v.13

8

**EXECUTION COPY**

Tropicana Durango Investments, Inc.

Tropicana Durango, Ltd. I

Dirt Investments, LLC

Underground Technologies, LLC

South Dakota Aggregate and Engineering, LLC

Freedom Underground, LLC

Jerico Trust

Canberra Holdings, LLC

Custom Quality Homes, LLC

Rhodes Ranch Golf, Inc.

ID Interior Design, LLC

*8200277 v.13*

**EXECUTION COPY**

**ATTACHMENT B**

1. The following distributions were made and permitted pursuant to terms of Credit Agreement:

| Date | Amount | Distribution Comments |
|------|--------|----------------------|
| 4/17/2007 | $42,705 | Heritage → Sedora |
| 4/17/2007 | $707,295 | Heritage → Sagebrush |
| 5/4/2007 | $56,939 | Heritage → Sedora |
| 5/4/2007 | $943,061 | Heritage → Sagebrush |
| TOTAL | $1,750,000 | |

2. Transactions with Spirit Underground and Freedom Underground (as set forth below):

[ATTACHED]

*8200277 v.13*

10

Payments to Spirit Underground
April 1, 2007 through March 31, 2009

| Invoice | Invoice Date | Accounting Date | Job | PO | CostCode | Expense Account | Description | Amount Paid | Division Requiring Work | Bank Acct | Check Number | Check Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RATE1000-054 | 3/9/2007 | 3/21/2007 | RATE-1000 | RATE1000-054 | 2-06-0500 | rrf-0000-00-1400.rrte | Backcharge | (577.50) | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4469 | 4/11/2007 |
| 11854 | 1/4/2007 | 4/11/2007 | TS15-0077 | | 17323 7-02-0100 | tsx-0000-00-1450.ts25 | SC La Luna Lot 72 | (1,176.20) | Tuscany Acquisitions | Rhodes Companies | 7343 | 4/11/2007 |
| CWA3107 | 3/19/2007 | 4/11/2007 | RA12-1000 | RA121000-762 | 3-08-0100 | rd-0000-00-1400.rr12 | Bond Work | 6,686.95 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3484 | 4/11/2007 |
| EWA3043 | 3/16/2007 | 4/11/2007 | RR11-1000 | RR111000-080 | 3-06-0100 | rrf-rr11-01-5100.0000 | Labor for Concrete ALS | 800.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3469 | 4/11/2007 |
| 1373-02 | 2/1/2007 | 4/13/2007 | TS10-1000 | TS101000-013 | 2-09-0400 | tsx-0000-00-1400.ts10 | Wet Utilities | 222,331.75 | Tuscany Acquisitions IV | Rhodes Companies | 7249 | 4/13/2007 |
| 1324-06 | 3/1/2007 | 4/13/2007 | RR20-100A | RR201000-080 | 2-10-0500 | rd4-0000-00-1400.rr20 | Dry Utility Contract | 4,020.70 | Parcel 20 | Rhodes Companies | 7344 | 4/13/2007 |
| 1324-06 | 3/1/2007 | 4/13/2007 | RR20-100A | RR201000-060 | 2-10-0500 | rd4-0000-00-1400.rr20 | Dry Utility Contract | 3,953.44 | Parcel 20 | Rhodes Companies | 7344 | 4/13/2007 |
| 1346-03 | 7/1/2006 | 4/12/2007 | RR20-100B | RR201008-023 | 2-10-0300 | rdd-0000-00-1400.rr20 | Dry Utilities | 64,342.57 | Parcel 20 | Rhodes Companies | 7348 | 4/13/2007 |
| EWA1811 | 1/23/2007 | 4/18/2007 | RR20-100A | RR201000-052 | 2-05-0300 | rd4-0000-00-1400.rr20 | Wet Utilities Contract | 7,962.40 | Parcel 20 | Rhodes Companies | 7808 | 4/26/2007 |
| CWA2390 | 1/12/2007 | 4/16/2007 | RR12-1000 | RR12-170 | 3-10-0400 | rd-0000-00-1400.rr12 | Dry Utilities Contract Phase 2 | 2,289.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3636 | 4/26/2007 |
| EWA3043 | 3/22/2007 | 4/13/2007 | RR12-1000 | RR12-048 | 2-10-0600 | rrf-0000-00-1400.rr12 | Bond Work | 22,357.92 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3639 | 4/26/2007 |
| EWA3560 | 3/21/2007 | 4/16/2007 | TS15-1000 | TS151000-20 | 2-10-0400 | tsl-0000-00-1400.ts15 | Dry Utility | 10,446.00 | Tuscany Acquisitions II | Rhodes Companies | 7808 | 4/18/2007 |
| EWA3156 | 3/28/2007 | 4/26/2007 | RR11-1000 | RR111000-012 | 3-06-0100 | rrf-rr11-01-5100.0000 | EWA # 0664 3156 | 8,475.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3636 | 4/26/2007 |
| 1324-07 | 4/2/2007 | 4/19/2007 | RR20-100A | RR201000-060 | 2-10-0500 | rdd-0000-00-1400.rr20 | Dry Utility Contract | 50,738.44 | Parcel 20 | Rhodes Companies | 7808 | 4/26/2007 |
| 1324-07 | 4/2/2007 | 4/19/2007 | RR20-100A | RR201000-080 | 2-10-0700 | rdd-0000-00-1400.rr20 | Dry Utility Contract | 2,540.04 | Parcel 20 | Rhodes Companies | 7808 | 4/26/2007 |
| 1345-04 | 4/7/2007 | 4/18/2007 | SW11-1000 | SW111000-071 | 2-10-0200 | rrf-0000-00-1400.swmj | Dry Utility Contract | 35,889.66 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3636 | 4/26/2007 |
| 1341-04 | 4/1/2007 | 4/18/2007 | SW11-1000 | SW111000-091 | 2-10-0500 | rrf-0000-00-1400.swmj | Dry Utility Contract | 5,670.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3658 | 4/26/2007 |
| 1343-04 | 4/2/2007 | 4/24/2007 | SW11-1000 | SW111000-091 | 2-10-0400 | rrf-0000-00-1400.swmj | Dry Utility Contract | 1,020.80 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3636 | 4/26/2007 |
| 1346-05 | 3/1/2007 | 4/23/2007 | SW11-1000 | SW111000-081 | 2-10-0500 | rrf-0000-00-1400.swmj | Dry Utility Contract | 288.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3636 | 4/26/2007 |
| EWA2418 | 1/1/2007 | 5/4/2007 | RR43-1000 | RR431000-017 2 | 2/2/5100 | rxx-0000-00-1380.0000 | Hydrant Repair | 417.81 | Jacktoify | Heritage | 67 | 5/8/2007 |
| EWA3083 | 2/6/2007 | 5/14/2007 | RR14-0154 | | 18621 7-19-0600 | rrf-rr14-01-5100.0000 | Palms Bay Lot 154 | 685.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3717 | 5/18/2007 |
| 1358-02 | 5/1/2007 | 5/22/2007 | 13MU-ETD | TSMUSEED-001 | 2-20-0500 | rdd-0000-00-1400.tsmf | Dry Utility - 3rd Feeder | 166,874.41 | Rhodes Design & Development | Rhodes Companies | 8168 | 5/22/2007 |
| 07-0021-01 | 5/1/2007 | 5/22/2007 | RR5-1004 | RR51004-008 | 2-10-0900 | rrf-0000-00-1400.rr5 | Power Walk & East Side | 35,853.35 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3751 | 5/22/2007 |
| 07-0021-02 | 5/1/2007 | 5/22/2007 | RR6-1004 | RR61004-008 | 2-10-0500 | rrf-0000-00-1400.rr6 | Power Walk & East Side | 15,432.85 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3751 | 5/21/2007 |
| 07-0021-02 | 5/1/2007 | 5/22/2007 | RR5-1004 | RR51004-008 | 2-10-0500 | rrf-0000-00-1400.rr5 | Power Walk & East Side | 5,705.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3779 | 5/23/2007 |
| 07-0021-01 | 4/2/2007 | 5/21/2007 | RR5-1004 | RR51004-011 | 2-10-0200 | rrf-0000-00-1400.rr5 | Traffic signal install drainage | 22,540.52 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3779 | 5/23/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/21/2007 | RR5-1004 | RR51004-011 | 3-10-0300 | rrf-0000-00-1400.rr5 | Traffic signal install drainage | 181,800.72 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3779 | 5/23/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/21/2007 | RR6-1005 | RR61004-012 | 2-10-0200 | rrf-0000-00-1400.rr6 | Traffic signal install drainage | 3,536.12 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3774 | 5/23/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/21/2007 | RR5-1004 | RR51004-013 | 2-10-0200 | rrf-0000-00-1400.rr5 | Traffic signal install drainage | 22,101.75 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3779 | 5/23/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/21/2007 | RR5-1004 | RR51004-013 | 2-10-0300 | rrf-0000-00-1400.rr5 | Traffic signal install drainage | 123,424.58 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3778 | 5/23/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/23/2007 | RR5-1004 | RR51004-013 | 2-10-0200 | rrf-0000-00-1400.rr5 | Traffic signal install drainage | 7,108.20 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3779 | 5/23/2007 |
| 07-0021-03-1 | 5/4/2007 | 5/23/2007 | RR6-1004 | RR61004-012 | 2-10-0200 | rrf-0000-00-1400.rr6 | Traffic signal install drainage | 10,264.77 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3778 | 5/23/2007 |
| 1342-04 | 3/1/2007 | 5/30/2007 | RR53-1000 | RR531000-025 | 2-10-0800 | rrf-0000-00-1400.rrf | Dry Utility Contract | 13,426.46 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3830 | 5/31/2007 |
| 1347-04 | 3/1/2007 | 5/30/2007 | RR56-1000 | RR561000-025 | 2-10-0800 | rrf-0000-00-1400.rrmj | Dry Utility Contract | 18,021.24 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3830 | 5/31/2007 |
| 07-0053-1 | 5/2/2007 | 5/2/2007 | | | | | Cart Path Repairs | 16,542.30 | Rhodes Ranch Golf Country Club | Rhodes Ranch Golf Country Club | 16713 | 5/4/2007 |
| EWA1975 | 4/1/2006 | 5/31/2007 | RR14-0154 | | 18604 7-19-0100 | rrf-rr14-01-5100.0000 | Palms Bay Lot 154 | 875.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3843 | 6/13/2007 |
| | 6/15/2007 | 6/15/2007 | | | | rcx-0000-00-2210.0026 | Receivable | 700,000.00 | Rhodes Companies | Rhodes Companies | 8528 | 6/15/2007 |
| | 7/17/2007 | 7/17/2007 | | | | rcx-0000-00-1210.0026 | repayment of Spirit Loan | (700,000.00) | Rhodes Companies | Rhodes Companies | | |
| EWA3335 | 3/8/2007 | 6/5/2007 | TS25-0092 | | 18875 7-07-0800 | tsl-ts25-30-5100.0000 | La Luna Lot 33 | 445.00 | Tuscany Acquisitions | Rhodes Companies | 8644 | 6/20/2007 |
| 36605 | 6/12/2007 | 6/25/2007 | TS15-0078 | | 18148 7-12-0200 | tsl-ts12-30-5100.0000 | SC MAZAV Lot 38 | (202.94) | Tuscany Acquisitions | Rhodes Companies | 8684 | 6/20/2007 |
| 33340086-148 | 6/15/2007 | 6/15/2007 | TS34-0066 | TS340086-146 | 3-02-0700 | rdd-ts34-10-5100.0000 | 492 Via Palermo Drive | 3,300.00 | Rhodes Design & Development | Rhodes Companies | 8644 | 6/25/2007 |
| 1324-08 | 8/1/2007 | 6/28/2007 | RR20-100A | RR201000-060 | 2-10-0500 | rd4-0000-00-1400.rr20 | Dry Utility Contract | 11,828.46 | Parcel 20 | Rhodes Companies | 8404 | 6/27/2007 |
| 1227-02 | 5/10/2007 | 6/26/2007 | SHMF-1000 | SHMF1000-098 | 2-10-0500 | rd4-0000-00-1400.shmf | Dry Utilities Contract | 13,577.20 | Rhodes Design & Development | Rhodes Companies | 8404 | 6/27/2007 |
| 1227-02 | 5/10/2007 | 6/28/2007 | SHMF-1000 | SHMF1000-098 | 2-10-0400 | rdd-0000-00-1400.shmf | Dry Utilities Contract | 18,348.30 | Rhodes Design & Development | Rhodes Companies | 8404 | 6/27/2007 |
| 1227-02 | 5/10/2007 | 6/28/2007 | SHMF-1000 | SHMF1000-098 | 2-10-0200 | rdd-0000-00-1400.shmf | Dry Utilities Contract | 2,798.05 | Rhodes Design & Development | Rhodes Companies | 8404 | 6/27/2007 |
| 1314-EWA3040 | 5/15/2007 | 6/26/2007 | RR20-1008 | RR201008-033 | 2-09-0500 | rd4-0000-00-1400.rr20 | Dry Utilities | 5,580.00 | Parcel 20 | Rhodes Companies | 8404 | 6/27/2007 |
| 1343-03 | 3/1/2007 | 6/26/2007 | RRTE-2000 | RATE1000-053 | 2-10-0400 | rrf-0000-00-1400.rrte | Rhodes Ranch Unit 10 Change | 13,758.20 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3994 | 6/28/2007 |
| 1345EWA3270 | 4/2/2007 | 6/26/2007 | SW11-1000 | SW111000-091 | 2-10-0200 | rrf-0000-00-1400.swmj | Dry Utility Contract | 6,341.08 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3994 | 6/28/2007 |
| 1339EWA2944 | 5/2/2007 | 6/26/2007 | SW13-1000 | SW111000-134 | 2-08-0200 | rrf-0000-00-1400.swmj | Haul off Existing spoils | 5,752.65 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3994 | 6/28/2007 |
| CO-04 | 5/29/2007 | 6/26/2007 | RRTE-1000 | YOALCPHI-001 2 | 2/2/6300 | rrf-0000-00-1400.rrec | Wet Utilities | 1,056.46 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3994 | 6/28/2007 |
| 1355-01 | 5/14/2007 | 6/29/2007 | RRMU-PARK | RRMUPARK-01A 2 | 2/2/6300 | rrf-0000-00-1400.rrmj | Wet/Dry Utilities | 226,851.80 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4011 | 7/5/2007 |
| 1314-04 | 10/30/2006 | 11/6/2006 | RR20-100A | RR201000-053 | 2-09-0400 | rd4-0000-00-1400.rr20 | Wet Utilities Contract | 28,818.20 | Parcel 20 | Rhodes Companies | 9045 | 7/12/2007 |
| 1314-04 | 10/30/2006 | 11/6/2006 | RR20-100A | RR201000-053 | 2-08-0400 | rd4-0000-00-1400.rr20 | Wet Utilities Contract | 4,725.25 | Parcel 20 | Rhodes Companies | 9045 | 7/12/2007 |
| 1314-04 | 10/30/2006 | 11/6/2006 | RR20-100A | RR201000-053 | 2-08-0300 | rd4-0000-00-1400.rr20 | Wet Utilities Contract | 10,123.31 | Parcel 20 | Rhodes Companies | 9041 | 7/12/2007 |
| 1314-04 | 10/30/2006 | 11/6/2006 | RR20-100A | RR201000-054 | 2-09-0800 | rd4-0000-00-1400.rr20 | Wet Utilities Contract | 8,808.18 | Parcel 20 | Rhodes Companies | 9045 | 7/12/2007 |
| 1339-03 | 11/1/2006 | 11/6/2006 | SW11-1000 | SW111000-044 | 2-09-0400 | rrf-0000-00-1400.swmj | Wet Utility Contract | 4,437.28 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| EWA2935 | 10/24/2006 | 11/9/2006 | RR12-1000 | RR121000-396 | 2-09-0300 | rrf-0000-00-1400.rr12 | Repair Water Service | 20.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1340-01 | 11/1/2006 | 11/9/2006 | RRTE-1000 | RRTE1000-018 | 2-08-0400 | rrf-0000-00-1400.rrte | Wet Utility | 4,954.40 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1340-01 | 11/1/2006 | 11/9/2006 | RRTE-1000 | RRTE1000-018 | 2-08-0200 | rrf-0000-00-1400.rrte | Wet Utility | 2,858.90 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1007-CO-02 | 11/1/2006 | 11/13/2006 | RREC-1000 | RRECPHII-001 2 | 2/2/5310 | rrf-0000-00-1400.rrec | Wet Utilities | 3,813.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1007-CO-03 | 11/1/2006 | 11/13/2006 | RREC-1000 | RRECPHII-001 2 | 2/2/5310 | rrf-0000-00-1400.rrec | Wet Utilities | 210.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4064 | 7/12/2007 |
| 1007-CO-03 | 11/1/2006 | 11/13/2006 | RREC-1000 | RRECPHII-001 2 | 2/2/5300 | rrf-0000-00-1400.rrec | Wet Utilities | 606.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1007-CO-03 | 11/1/2006 | 11/13/2006 | RREC-1000 | RRECPHII-001 2 | 2/2/6800 | rrf-0000-00-1400.rrec | Wet Utilities | 107.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4064 | 7/12/2007 |
| 1007-CO-03 | 11/1/2006 | 11/13/2006 | RREC-1000 | RRECPHII-001 2 | 2/2/3130 | rrf-0000-00-1400.rrec | Wet Utilities | 1,710.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1345-CO-01 | 10/24/2006 | 12/28/2006 | SW11-1000 | SW111000-044 | 2-09-0900 | rrf-0000-00-1400.swmj | Wet Utility Contract | 318.42 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1340-CO-001-01 | 11/9/2006 | 12/11/2006 | RRTE-1000 | RRTE1000-018 | 2-08-0800 | rrf-0000-00-1400.rrte | Wet Utility Contract | 1,498.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1354-05 | 12/1/2006 | 12/12/2006 | RR20-100A | RR201000-053 | 2-09-0300 | rd4-0000-00-1400.rr20 | Wet Utility Contract | 18,221.49 | Parcel 20 | Rhodes Companies | 9045 | 7/12/2007 |
| 1339-04 | 12/1/2006 | 12/27/2006 | SW11-1000 | SW111000-044 | 2-08-0400 | rrf-0000-00-1400.swmj | Wet Utility Contract | 4,238.94 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1339-04 | 12/1/2006 | 12/27/2006 | SW11-1000 | SW111000-044 | 2-09-0300 | rrf-0000-00-1400.swmj | Wet Utility Contract | 1,820.12 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1339-CO-03 | 12/7/2006 | 12/27/2006 | SW11-1000 | SW111000-044 | 2-09-0500 | rrf-0000-00-1400.swmj | Wet Utility Contract | 339.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1390-01 | 12/18/2006 | 1/10/2007 | RRMA-1000 | RRMA1000-147 | 2-09-0500 | rrf-0000-00-1400.rrma | Rise to Grade Existing Hydrant | 600.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1339-06 | 1/1/2007 | 1/24/2007 | SW11-1000 | SW111000-044 | 2-09-0400 | rrf-0000-00-1400.swmj | Wet Utility Contract | 7,101.12 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1339-05 | 1/1/2007 | 1/24/2007 | SW11-1000 | SW111000-044 | 2-09-0300 | rrf-0000-00-1400.swmj | Wet Utility Contract | 1,410.17 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| EWA2992 | 1/29/2007 | 3/5/2007 | RR01-1000 | RR011000-043 | 3-08-0100 | rrf-rr01-01-5100.0000 | Bond Work Phase 1 RR Unit 5 | 722.56 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1339-06 | 2/1/2007 | 2/18/2007 | SW11-1000 | SW111000-044 | 2-09-0300 | rrf-0000-00-1400.swmj | Wet Utility Contract | 1,410.12 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1314-08 | 2/1/2007 | 2/26/2007 | RR20-100A | RR201000-053 | 2-09-0500 | rd4-0000-00-1400.rr20 | Wet Utilities Contract | 8,098.44 | Parcel 20 | Rhodes Companies | 9045 | 7/12/2007 |
| EWA3156 | 3/28/2007 | 4/18/2007 | RR11-1000 | RR111000-032 | 3-09-0100 | rrf-rr11-01-5100.0000 | CWA # 0664 3156 | 941.72 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1355-02 | 6/11/2007 | 7/9/2007 | RRMU-PARK | RRMUPARK-014 2 | 2/2/3400 | rrf-0000-00-1400.rrmj | Wet/Dry Utilities | 141,266.89 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1355-02 | 6/11/2007 | 7/9/2007 | RRMU-PARK | RRMUPARK-014 2 | 2/2/8300 | rrf-0000-00-1400.rrmj | Wet/Dry Utilities | 312,117.76 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1355-02 | 6/11/2007 | 7/9/2007 | RRMU-PARK | RRMUPARK-014 2 | 2/2/3190 | rrf-0000-00-1400.rrmj | Wet/Dry Utilities | 18,590.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/17/2007 |
| EWA2774 | 1/22/2007 | 7/12/2007 | RR11-1000 | RR111000-163 | 3-08-0100 | rrf-rr11-01-5100.0000 | Bond Work A, B, C, D | 43,553.18 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/17/2007 |
| 1289-EWA3052 | 3/15/2007 | 7/12/2007 | SH04-1000 | SH041000-007 | 3-06-0100 | sdi-sh01-01-5100.0000 | Spanish Hill 04 Bond Work | 3,570.74 | Rhodes Design & Development | Rhodes Companies | 945 | 7/13/2007 |
| EWA3223 | 7/1/2007 | 7/12/2007 | RRTE-1000 | RRTE1000-097 | 2-10-0500 | rrf-0000-00-1400.rrte | Dry Utility Contract | 3,181.69 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1345-06 | 7/1/2007 | 7/12/2007 | SW11-1000 | SW111000-092 | 2-10-0300 | rrf-0000-00-1400.swmj | Dry Utility Contract | 2,317.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1339EWA2951 | 5/2/2007 | 7/13/2007 | SW11-1000 | SW111000-044 | 2-09-0300 | rrf-0000-00-1400.swmj | Wet Utility Contract | 9,160.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4090 | 7/13/2007 |
| 70029-EWA3172 | 4/12/2007 | 7/23/2007 | RR01-1000 | RR011000-049 | 3-09-0500 | rrf-rr01-01-5100.0000 | Wet Utilities | 5,516.97 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4186 | 7/23/2007 |
| 1324-EWA2859 | 4/13/2007 | 7/25/2007 | RR20-100A | RR201000-060 | 2-10-0500 | rd4-0000-00-1400.rr20 | Dry Utility Contract | 12,307.23 | Parcel 20 | Rhodes Companies | 8298 | 7/25/2007 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1379/WA3230 | 5/2/2007 | 5/25/2007 | SW11-1000 | SW111000-044 | 2-09-0400 | rt-0000-00-1400.swmj | Wet Utility Contract | 484.10 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4136 | 7/25/2007 |
| EWA3354 | 5/29/2007 | 7/31/2007 | RR20-100A | RR201000-053 | 2-09-0700 | rdd-0000-00-1400.rr20 | Wet Utilities Contract | 6,426.00 | Parcel 20 | Rhodes Companies | 9444 | 8/1/2007 |
| EWA3374 | 5/29/2007 | 7/31/2007 | RR01-1000 | RR011000-107 | 3-09-0400 | rt-rr01-01-5100.0000 | Raise (2) water cans @ Loop Rd | 2,677.20 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4172 | 8/1/2007 |
| 1124-08 | 6/1/2007 | 7/31/2007 | RR20-100A | RR201000-060 | 2-10-0400 | rdd-0000-00-1400.rr20 | Dry Utilities Contract | 41,512.21 | Parcel 20 | Rhodes Companies | 9444 | 8/1/2007 |
| 1124-05 | 6/1/2007 | 7/31/2007 | RR20-100A | RR201000-060 | 2-10-0200 | rdd-0000-00-1400.rr20 | Dry Utilities Contract | 45,227.64 | Parcel 20 | Rhodes Companies | 9444 | 8/1/2007 |
| 1145-05 | 6/1/2007 | 7/31/2007 | SW11-1000 | SW111000-091 | 2-10-0500 | rt-0000-00-1400.swmj | Dry Utility Contract | 2,415.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4172 | 8/1/2007 |
| 1145-05 | 6/1/2007 | 7/31/2007 | SW11-1000 | SW111000-091 | 2-10-0400 | rt-0000-00-1400.swmj | Dry Utility Contract | 510.30 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4172 | 8/1/2007 |
| EWA2659 | 6/21/2006 | 8/14/2007 | RR11-1000 | RR111000-153 | 3-08-0000 | rt-rr11-01-5100.0000 | Repair meter box lot 30 | 228.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA2840 | 7/25/2006 | 8/14/2007 | SHMF-1000 | SHMF1000-433 | 2-10-0200 | rdd-0000-00-1400.shmf | Wire damaged by others | 454.49 | Rhodes Design & Development | Rhodes Companies | 9660 | 8/14/2007 |
| EWA2777 | 8/4/2006 | 8/14/2007 | SHMF-1000 | SHMF1000-434 | 2-10-0600 | rdd-0000-00-1400.shmf | Repair 3" conduits damaged | 1,051.02 | Rhodes Design & Development | Rhodes Companies | 9660 | 8/14/2007 |
| EWA2764 | 4/17/2006 | 8/14/2007 | SW11-1000 | SW111000-044 | 2-09-0400 | rt-0000-00-1400.swmj | Wet Utility Contract | 16,468.60 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA2845 | 9/25/2006 | 8/14/2007 | TS21-1000 | TS211000-081 | 2-10-0400 | tsl-0000-00-1400.ts21 | Dry Utilities-Power | 13,540.10 | Tuscany Acquisitions III | Rhodes Companies | 9660 | 8/14/2007 |
| EWA3152 | 10/11/2006 | 8/14/2007 | SW11-1000 | SW111000-044 | 2-09-0400 | rt-0000-00-1400.swmj | Wet Utility Contract | 2,069.76 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA2822 | 11/2/2006 | 8/14/2007 | SW11-1000 | SW111000-044 | 2-09-0300 | rt-0000-00-1400.swmj | Wet Utility Contract | 34,050.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA2881 | 11/7/2006 | 8/14/2007 | SW11-1000 | SW111000-044 | 2-09-0500 | rt-0000-00-1400.swmj | Wet Utility Contract | 4,266.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA2983 | 12/7/2006 | 8/14/2007 | SHMF-1000 | SHMF1000-432 | 2-10-0600 | rdd-0000-00-1400.shmf | Replace wire damaged | 136.31 | Rhodes Design & Development | Rhodes Companies | 9660 | 8/14/2007 |
| EWA3086 | 1/30/2007 | 8/14/2007 | SHMF-1000 | SHMF1000-451 | 2-10-0100 | rdd-0000-00-1400.shmf | Run Gas Services | 7,445.00 | Rhodes Design & Development | Rhodes Companies | 9660 | 8/14/2007 |
| EWA3106 | 2/6/2007 | 8/14/2007 | SW11-1000 | SW111000-044 | 2-09-0500 | rt-0000-00-1400.swmj | Wet Ut/Dry Contract | 275.07 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA3141 | 2/12/2007 | 8/14/2007 | TS15-1000 | TS151000-004 | 2-10-0600 | tsl-0000-00-1400.ts15 | Dry Utility Contract | 234.00 | Tuscany Acquisitions IV | Rhodes Companies | 9660 | 8/14/2007 |
| EWA3153 | 2/23/2007 | 8/14/2007 | SHMF-1000 | SHMF1000-450 | 2-10-0600 | rdd-0000-00-1400.shmf | Install Conduit for guard gate | 924.00 | Rhodes Design & Development | Rhodes Companies | 9660 | 8/14/2007 |
| EWA3152 | 3/1/2007 | 8/14/2007 | RR12-1000 | RR121000-795 | 3-04-0100 | rt-0000-00-1400.rr12 | Bond work sidewalk R&R | 29,206.42 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA3223 | 3/22/2007 | 8/14/2007 | SHMF-1000 | SHMF1000-455 | 2-10-0600 | rdd-0000-00-1400.shmf | Remove concrete/pav | 579.76 | Rhodes Design & Development | Rhodes Companies | 9660 | 8/14/2007 |
| EWA3448 | 7/2/2007 | 8/14/2007 | RR20-100A | RR20-00A-071 | 2-10-0100 | rdd-0000-00-1400.rr20 | Move two gas risers | 936.00 | Parcel 20 | Rhodes Companies | 9660 | 8/14/2007 |
| EWA3649 | 7/2/2007 | 8/14/2007 | TS19-1000 | TS191000-201 | 2-10-0100 | rdd-0000-00-1400.ts19 | Move gas riser | 2,347.07 | Rhodes Design & Development | Rhodes Companies | 9660 | 8/14/2007 |
| EWA3494 | 7/18/2007 | 8/14/2007 | RRP64-1000 | RRP641000-183 | 2-10-0800 | rt-0000-00-1400.rrpm | Gas power phone | 3,773.71 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA3501 | 7/23/2007 | 8/14/2007 | TS14-1000 | TS141000-012 | 2-10-0200 | tsl-0000-00-1400.ts14 | Dry Utilities Contract | 521.00 | Tuscany Acquisitions IV | Rhodes Companies | 9660 | 8/14/2007 |
| 8/14/2007 | 4/18/2007 | 4/16/2007 | | | | rco-0000-00-1210.0026 | Advance against payables (see advance offset tab) | 200,000.00 | Rhodes Companies | Rhodes Companies | 9744 | 8/16/2007 |
| 07-0001-02 | 5/1/2007 | 5/22/2007 | RR05-1004 | RR051004-008 | 2-10-0500 | rt-0000-00-1400.rr05 | Power West & East Side | 2,368.15 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4284 | 8/21/2007 |
| 07-0001-02 | 5/2/2007 | 5/21/2007 | RR05-1004 | RR051004-008 | 2-10-0500 | rt-0000-00-1400.rr05 | Power West & East Side | 1,758.65 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4284 | 8/22/2007 |
| 070006-01 | 7/23/2007 | 7/31/2007 | A207-1001 | 06-00007 | 54-1-1240 | 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.0000 | Tapping sleeve, gate valve, ll | 9,809.00 | Pinnacle Grading | Pinnacle | 2441 | 8/21/2007 |
| 070006-01 | 7/23/2007 | 7/31/2007 | A207-1001 | 06-00008 | 53-1-2160 | 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.0000 | Mobilization, Item 826 | 141,409.12 | Pinnacle Grading | Pinnacle | 2441 | 8/22/2007 |
| 1124-10 | 7/1/2007 | 8/21/2007 | RR20-100A | RR201000-060 | 2-10-0200 | p20-0000-00-1400.rr20 | Dry Utility Contract | 106,054.59 | Parcel 20 | Rhodes Companies | 9875 | 8/22/2007 |
| 1363-03 | 7/1/2007 | 8/21/2007 | RR20-100B | RR201000-023 | 2-10-0500 | p20-0000-00-1400.rr20 | Dry Utilities | 26,649.42 | Parcel 20 | Rhodes Companies | 9875 | 8/27/2007 |
| 2707 | 7/23/2007 | 8/22/2007 | TSCH-1000 | TSCH1000-18 | 2-10-0800 | rdd-0000-00-1400.tsch | Power | 987.74 | Rhodes Design & Development | Rhodes Companies | 9875 | 8/21/2007 |
| 1361-05 | 7/31/2007 | 8/22/2007 | RR5-1000 | RR51000-025 | 2-10-0900 | rt-0000-00-1400.rrmj | Dry utility contract | 1,598.40 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4285 | 8/21/2007 |
| 1114-EWA3040 | 5/15/2007 | 8/26/2007 | RR20-100B | RR201008-025 | 2-09-0500 | rdd-0000-00-1400.rr20 | Dry Utilities | 620.00 | Parcel 20 | Rhodes Companies | 10024 | 9/4/2007 |
| 1111-2 | 8/10/2007 | 9/4/2007 | SHSA-1000 | SHSA1000-008 | 2-09-0200 | rdd-0000-00-1400.shsa | Wet Utilities | 124,421.20 | Rhodes Design & Development | Rhodes Companies | 10021 | 9/4/2007 |
| 1111-2 | 8/30/2007 | 9/4/2007 | SHSA-1000 | SHSA1000-008 | 2-09-0400 | rdd-0000-00-1400.shsa | Wet Utilities | 34,836.50 | Rhodes Design & Development | Rhodes Companies | 10021 | 9/4/2007 |
| 1225-03 | 7/25/2007 | 9/4/2007 | TREC-1000 | TREC1000-57 2 | 2/7/8300 | rdd-0000-00-1400.trec | Storm Drain Contract | 27,220.00 | Rhodes Design & Development | Rhodes Companies | 10021 | 9/4/2007 |
| 1363-02 | 7/31/2007 | 9/4/2007 | RR20-100B | RR201008-023 | 2-10-0900 | p20-0000-00-1400.rr20 | Dry Utilities | 54,478.75 | Parcel 20 | Rhodes Companies | 10024 | 9/4/2007 |
| 1258-08 | 8/1/2007 | 9/4/2007 | RR20-100B | RR201008-025 | 2-10-0600 | p20-0000-00-1400.rr20 | Dry Utilities | 23,808.00 | Parcel 20 | Rhodes Companies | 10074 | 9/4/2007 |
| 1363-04 | 8/1/2007 | 9/4/2007 | RR20-100B | RR201008-023 | 2-10-0600 | p20-0000-00-1400.rr20 | Dry Utilities | 113,762.56 | Parcel 20 | Rhodes Companies | 10074 | 9/4/2007 |
| 1355-03 | 8/1/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 1 | 2/2/5300 | rt-0000-00-1400.rrmj | Wet/Dry Utilities | 134,817.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4325 | 9/4/2007 |
| 1359-05 | 8/1/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 2 | 2/2/5300 | rt-0000-00-1400.rrmj | Wet/Dry Utilities | 3,210.90 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4325 | 9/4/2007 |
| 1366-06 | 8/1/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 1 | 2/2/5300 | rt-0000-00-1400.rrmj | Wet/Dry Utilities | 8,514.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4325 | 9/4/2007 |
| 1355-05 | 8/1/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 2 | 2/2/5300 | rt-0000-00-1400.rrmj | Wet/Dry Utilities | 7,188.19 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4325 | 9/4/2007 |
| 1353-03 | 8/1/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 2 | 2/2/6300 | rt-0000-00-1400.rrmj | Wet/Dry Utilities | 13,542.12 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4325 | 9/4/2007 |
| 1365-03 | 8/1/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 1 | 2/2/5300 | rt-0000-00-1400.rrmj | Wet/Dry Utilities | 1,318.18 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4325 | 9/4/2007 |
| 1355-04 | 8/20/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 2 | 2/2/5300 | rt-0000-00-1400.rrmj | Wet/Dry Utilities | 7,167.42 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4325 | 9/4/2007 |
| 1355-04 | 8/20/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 1 | 2/2/5300 | rt-0000-00-1400.rrmj | Wet/Dry Utilities | 20,847.82 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4325 | 9/4/2007 |
| 1343-01 | 10/30/2006 | 12/11/2006 | RR01-1000 | RR011000-029 | 3-08-0400 | rt-rr01-01-5100.0000 | Streetlight Install-Paint Grey | 1,006.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| EWA3222 | 7/1/2007 | 7/12/2007 | RRTC-1000 | RRTC1000-037 | 2-10-0500 | rt-0000-00-1400.rrtc | Dry Utility Contract | 351.90 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| EWA3417 | 7/13/2007 | 9/6/2007 | RR01-1000 | RR011000-033 | 3-08-0600 | rt-rr05-01-5100.0000 | EWA # 3417 | 3,179.11 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| EWA3381 | 7/17/2007 | 9/6/2007 | SW11-1000 | SW111000-044 | 2-09-0600 | rt-0000-00-1400.swmj | Wet Utility Contract | 1,261.92 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| 2066-RET | 7/23/2007 | 9/6/2007 | TS24-1000 | TS241000-18 | 2-10-0300 | tsl-0000-00-1400.ts24 | Dry Utility Contract | 122.33 | Rhodes Design & Development | Rhodes Companies | 10106 | 9/6/2007 |
| EWA3098 | 7/31/2007 | 9/6/2007 | RR24-1000 | RR241000-027 | 3-08-0200 | rt-rr24-01-5100.0000 | EWA # 3098 Villas | 3,408.40 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| EWA3829 | 8/1/2007 | 9/6/2007 | SHSA-1000 | SHSA1000-172 | 2-13-0800 | rdd-0000-00-1400.shsa | Repour Caps | 1,221.03 | Rhodes Design & Development | Rhodes Companies | 10106 | 9/6/2007 |
| EWA2776 | 8/1/2007 | 9/6/2007 | RR10-1000 | RR101000-167 | 3-08-0100 | rt-0000-00-1400.rr10 | Bond Release | 6,771.56 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| EWA3436 | 8/1/2007 | 9/6/2007 | RR14-1000 | RR141000-383 | 2-10-0400 | rt-0000-00-1400.rr14 | Repair 1" damaged phone lines | 622.08 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| EWA3282 | 8/1/2007 | 9/6/2007 | RR60-1000 | RR601000-172 | 3-08-0800 | rt-0000-00-1400.rrmj | EWA # 3282 | 5,260.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| 1258-04 | 8/6/2007 | 9/6/2007 | TSMU-FEED | TSMUF10-003 | 2-10-0500 | rdd-0000-00-1400.tsmj | Proposal # 049-1006 | 29,086.17 | Rhodes Design & Development | Rhodes Companies | 10106 | 9/6/2007 |
| EWA3415 | 8/10/2007 | 9/18/2007 | RR20-100A | RR201004-069 | 2-08-0300 | p20-0000-00-1400.rr20 | Repair fire hydrant | 827.76 | Parcel 20 | Rhodes Companies | 10362 | 9/19/2007 |
| EWA3496 | 8/10/2007 | 9/18/2007 | RR20-100B | RR201008-065 | 2-08-0200 | p20-0000-00-1400.rr20 | Clean up type II | 3,522.38 | Parcel 20 | Rhodes Companies | 10362 | 9/19/2007 |
| EWA3400 | 8/10/2007 | 9/18/2007 | SHMF-1000 | SHMF1000-443 | 2-09-0200 | rdd-0000-00-1400.shmf | Repair Sewer | 2,546.99 | Rhodes Design & Development | Rhodes Companies | 10363 | 9/15/2007 |
| EWA3488 | 8/10/2007 | 9/18/2007 | SW11-1000 | SW111000-091 | 2-10-0300 | rt-0000-00-1400.swmj | Dry Utility Contract | 1,658.24 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4412 | 9/14/2007 |
| EWA3442 | 8/15/2007 | 9/18/2007 | RR20-100A | RR201000-058 | 2-10-0300 | p20-0000-00-1400.rr20 | Wet Utilities Contract | 648.00 | Parcel 20 | Rhodes Companies | 10362 | 9/18/2007 |
| 070066-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00090 | 53-1-3000 | 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.0000 | PAY AP. NO 2 INVOICE 070066-0 | 18,008.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070066-01 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 56-1-3180 | 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.0000 | PIPE AND VALVES, 4"-9" | 18,900.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070066-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 57-1-3340 | 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.0000 | PIPE AND VALVES, 4"-5" | 4,482.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070066-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 55-1-3180 | 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.0000 | PIPE AND VALVES, 8"-9" | 2,880.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070066-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00097 | 54-1-3180 | 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.0000 | PIPE AND VALVES, 8"-4" | 1,808.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070066-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00098 | 56-1-3180 | 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.0000 | PIPE AND VALVES, 8"-9" | 2,058.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070066-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 56-1-3180 | 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.0000 | PIPE AND VALVES, 4"-9" | 1,224.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070066-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 57-1-3180 | 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.0000 | PIPE AND VALVES, 8"-9" | 1,078.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070066-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 60-1-3180 | 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.0000 | PIPE AND VALVES, 3"-8" | 342.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| EWA3364 | 8/10/2007 | 9/24/2007 | SHMF-1000 | SHMF1000-445 | 2-09-0400 | rdd-0000-00-1400.shmf | Repair 2" PVC | 980.78 | Rhodes Design & Development | Rhodes Companies | 10414 | 9/26/2007 |
| EWA2724 | 3/22/2007 | 7/31/2007 | RR11-1000 | RR111000-143 | 3-04-0100 | rt-rr11-01-5100.0000 | Bond Work A, B, C, D | 3,506.14 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 6480 | 10/3/2007 |
| 1315-01 | 12/1/2006 | 12/27/2006 | RR20-100B | RR201008-024 | 2-09-0400 | rdd-0000-00-1400.rr20 | Wet Utilities | 4,857.15 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| 1313-01 | 12/1/2006 | 12/27/2006 | RR20-100B | RR201008-024 | 2-09-0200 | rdd-0000-00-1400.rr20 | Wet Utilities | 14,290.98 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| 1315-01 | 12/1/2006 | 12/27/2006 | RR20-100B | RR201008-024 | 2-08-0400 | rdd-0000-00-1400.rr20 | Wet Utilities | 15,785.00 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| 1315-01 | 1/1/2007 | 1/24/2007 | RR20-100B | RR201008-024 | 2-09-0200 | rdd-0000-00-1400.rr20 | Wet Utilities | 21,456.44 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| 1313-02 | 1/1/2007 | 1/24/2007 | RR20-100B | RR201008-024 | 2-09-0800 | rdd-0000-00-1400.rr20 | Wet Utilities | 14,449.35 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| 1315-02 | 1/1/2007 | 1/24/2007 | RR20-100B | RR201008-024 | 2-04-0400 | rdd-0000-00-1400.rr20 | Wet Utilities | 12,915.00 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| 1415-03 | 2/1/2007 | 2/21/2007 | RR20-100B | RR201008-024 | 2-09-0400 | rdd-0000-00-1400.rr20 | Wet Utilities | 41,316.97 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| 1315-03 | 2/1/2007 | 2/21/2007 | RR20-100B | RR201008-024 | 2-09-0900 | rdd-0000-00-1400.rr20 | Wet Utilities | 2,765.55 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| EWA3516 | 8/1/2007 | 10/10/2007 | TSSC-1000 | TSSC1000-244 | 2-09-0500 | rdd-0000-00-1400.tssc | Potholing | 4,500.00 | Rhodes Design & Development | Rhodes Companies | 10705 | 10/10/2007 |
| 10/10/2007 | 10/10/2007 | 10/10/2007 | | | | rco-0000-30-7180.0000 | Home Chee-RCBS | 3,118.64 | Rhodes Design & Development | Rhodes Companies | 10676 | 10/10/2007 |
| 07066-01 | 9/24/2007 | 9/24/2007 | A207-1001 | 06-00015 | 55-1-3220 | 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.0000 | Pipes & Valves | 92,953.80 | Pinnacle Grading | Pinnacle | 2714 | 10/11/2007 |
| 07066-01 | 9/28/2007 | 9/21/2007 | A207-1001 | 06-00015 | 55-1-3240 | 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.0000 | Pipes & Valves | 12,960.00 | Pinnacle Grading | Pinnacle | 2714 | 10/11/2007 |
| 07066-01 | 9/24/2007 | 9/21/2007 | A207-1001 | 06-00015 | 55-1-3500 | 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.0000 | Pipes & Valves | 1,971.00 | Pinnacle Grading | Pinnacle | 2714 | 10/11/2007 |
| 07066-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 57-1-3140 | 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.0000 | Pipes & Valves | 12,733.00 | Pinnacle Grading | Pinnacle | 2714 | 10/11/2007 |
| 07066-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 57-1-3180 | 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.0000 | Pipes & Valves | 21,920.00 | Pinnacle Grading | Pinnacle | 2714 | 10/11/2007 |
| 07066-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 57-1-3180 | 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.0000 | Pipes & Valves | 96,124.50 | Pinnacle Grading | Pinnacle | 2714 | 10/11/2007 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07066-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 57-1-3520 | 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.0000 | Pipes & Valves | 207.00 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07066-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 60-1-2240 | 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.0000 | Pipes & Valves | 12,358.80 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07066-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 60-1-2280 | 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.0000 | Pipes & Valves | 14,097.40 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07066-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 60-1-2300 | 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.0000 | Pipes & Valves | 30,164.40 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07066-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 60-1-2320 | 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.0000 | Pipes & Valves | 7,374.00 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07066-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 60-1-2380 | 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.0000 | Pipes & Valves | 40,022.10 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07066-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 60-1-2400 | 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.0000 | Fire Hydrant, Other | 9,720.00 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07066-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 55-1-2580 | 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.0000 | Concrete Walls | 10,584.00 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07066-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 55-1-3120 | 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.0000 | Trenching | 1,044.00 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07066-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 55-1-3180 | 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.0000 | Pipes & Valves | 20,433.00 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| EWA2550 | 10/24/2006 | 11/6/2006 | SH10-1000 | SHMF1000-074 | 2-08-0200 | rdd-0000-00-1400.shmf | Haul Off | 527.81 | Rhodes Design & Development | Rhodes Companies | 10957 | 10/26/2007 |
| EWA2875 | 10/31/2006 | 11/15/2006 | RR12-1000 | RR121000-351 | 3-08-0100 | rrl-0000-00-1400.rr12 | R&R Bond Work | 721.76 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| EWA2801 | 12/5/2006 | 12/11/2006 | SHSF-1000 | SHSF1000-044 | 2-10-0800 | rdd-0000-00-1400.shsf | Assembly/Stand Pole/Pull | 42.66 | Rhodes Design & Development | Rhodes Companies | 10957 | 10/26/2007 |
| EWA2990 | 1/29/2007 | 2/13/2007 | SW11-1000 | SW111000-091 | 2-10-0600 | rrl-0000-00-1400.swmj | Dry Utility Contract | 300.84 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| EWA2911 | 3/22/2007 | 4/13/2007 | RR00-100A | RR201000-053 | 2-08-0300 | rdd-0000-00-1400.rr20 | Wet Utilities Contract | 315.00 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| 1343E-WA3070 | 4/2/2007 | 5/29/2007 | SW12-1000 | SW111000-091 | 2-10-0200 | rrl-0000-00-1400.swmj | Dry Utility Contract | 704.57 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| 1320EWA2901 | 5/7/2007 | 7/13/2007 | SW13-1000 | SW111000-044 | 2-09-0200 | rrl-0000-00-1400.swmj | Wet Utility Contract | 1,040.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| 1324-EWA3059 | 4/19/2007 | 7/25/2007 | RR20-100A | RR201000-060 | 2-10-0600 | rdd-0000-00-1400.rr20 | Dry Utility Contract | 1,567.47 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| 1339EWA3340 | 5/2/2007 | 7/25/2007 | SW11-1000 | SW111000-044 | 2-08-0400 | rrl-0000-00-1400.swmj | Wet Utility Contract | 54.90 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| EWA3156 | 5/29/2007 | 7/11/2007 | RR20-100A | RR201000-053 | 2-09-0200 | rdd-0000-00-1400.rr20 | Wet Utilities Contract | 214.00 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| EWA3152 | 10/11/2006 | 8/14/2007 | SW11-1000 | SW111000-044 | 2-09-0400 | rrl-0000-00-1400.swmj | Wet Utility Contract | 318.42 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| EWA3152 | 8/1/2007 | 8/24/2007 | RR12-1000 | RR121000-756 | 3-08-0100 | rrl-0000-00-1400.rr12 | Bond work [illegible] R&R | 1,245.52 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| EWA3241 | 7/12/2007 | 9/6/2007 | SW11-1000 | SW111000-044 | 2-09-0600 | rrl-0000-00-1400.swmj | Wet Utility Contract | 140.14 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| EWA3480 | 8/20/2007 | 9/18/2007 | SW11-1000 | SW111000-091 | 2-10-0100 | rrl-0000-00-1400.swmj | Dry Utility Contract | 163.80 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| 1362-05 | 9/1/2007 | 10/26/2007 | RR20-100B | RR201008-023 | 2-10-0500 | p20-0000-00-1400.rr20 | Dry Utilities | 60,885.36 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| 1363-05 | 9/1/2007 | 10/26/2007 | RR20-100B | RR201008-023 | 2-10-0200 | p20-0000-00-1400.rr20 | Dry Utilities | 31,296.84 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| 1363-05 | 9/1/2007 | 10/26/2007 | RR20-100B | RR201008-023 | 2-10-0400 | p20-0000-00-1400.rr20 | Dry Utilities | 19,955.17 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| 1314-C043 | 9/10/2007 | 10/26/2007 | RR20-100A | RR201000-053 | 2-09-0400 | p20-0000-00-1400.rr20 | Wet Utilities contract | 22,847.71 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| 1324-C043 | 9/20/2007 | 10/26/2007 | RR20-100A | RR201000-053 | 2-09-0400 | p20-0000-00-1400.rr20 | Wet Utilities contract | 2,534.84 | Parcel 20 | Rhodes Companies | 10958 | 10/26/2007 |
| EWA3583 | 9/20/2007 | 10/26/2007 | RR20-100A | RR201008-078 | 2-10-0300 | p20-0000-00-1400.rr20 | R&R phone & Power boxes | 2,348.45 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| EWA2827R07 | 10/20/2007 | 10/26/2007 | RR11-1000 | RR111000-761 | 3-08-0100 | rrl-0000-00-1400.rr12 | Concrete R&R | 908.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| 10/13/2007 | 10/13/2007 | 10/20/2007 | | | | rdd-0000-30-7280.0000 | Kohner Chev-BCBS | 379.88 | Rhodes Design & Development | Rhodes Companies | 11043 | 11/1/2007 |
| 1345-7 | 10/1/2007 | 11/6/2007 | SW11-1000 | SW111000-091 | 2-10-0000 | rrl-0000-00-1400.swmj | Dry Utility Contract | 2,317.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4720 | 11/7/2007 |
| 07-0021-3 | 6/1/2007 | 11/13/2007 | RR05-1004 | RR051004-012 | 2-10-0200 | rrl-0000-00-1400.rrls | RR Entry Power | 10,684.18 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4738 | 11/13/2007 |
| 07-0021-3 | 6/1/2007 | 11/13/2007 | RR05-1004 | RR051004-012 | 2-10-0200 | rrl-0000-00-1400.rrls | RR Entry Power | 1,163.26 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4738 | 11/13/2007 |
| 07-0021-3 | 6/1/2007 | 11/13/2007 | RR05-1004 | RR051004-012 | 2-10-0200 | rrl-0000-00-1400.rrls | RR Entry Power | 540.32 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4738 | 11/13/2007 |
| 07-0021-3 | 6/1/2007 | 11/13/2007 | RR05-1004 | RR051004-015 | 2-10-0300 | rrl-0000-00-1400.rrls | RR Entry Power | 18,995.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4738 | 11/13/2007 |
| 07-0021-3 | 6/1/2007 | 11/13/2007 | RR05-1004 | RR051004-017 | 2-15-0400 | rrl-0000-00-1400.rrls | RR Entry Power | 3,505.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4738 | 11/13/2007 |
| 07-0021-03A | 6/15/2007 | 11/13/2007 | RR05-1004 | RR051004-012 | 3-10-0200 | rrl-0000-00-1400.rrls | RR Entry Power | 291.37 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4738 | 11/13/2007 |
| 07-0021-03A | 6/15/2007 | 11/13/2007 | RR05-1004 | RR051004-012 | 2-10-0200 | rrl-0000-00-1400.rrls | RR Entry Power | 6,496.02 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4754 | 11/13/2007 |
| EWA3207 | 9/1/2007 | 11/13/2007 | RR14-1000 | RR141000-287 | 3-08-0100 | rrl-0000-00-1400.rr14 | R&R for Water Release | 4,078.58 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4768 | 11/14/2007 |
| 1361-06 | 9/1/2007 | 11/13/2007 | RR51-1000 | RR511000-025 | 2-10-0500 | rrl-0000-00-1400.rrsl | Dry Utility Contract | 18,031.24 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| 1364-06 | 9/1/2007 | 11/13/2007 | RR51-1000 | RR511000-025 | 2-10-0300 | rrl-0000-00-1400.rrsl | Dry Utility Contract | 1,002.04 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| EWA3118 | 9/10/2007 | 11/15/2007 | RR51-1000 | RR511000-041 | 3-10-0400 | rrl-0000-00-1400.rrsl | Extra additional pipes | 7,470.87 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| EWA3119 | 9/10/2007 | 11/13/2007 | RR51-1000 | RR511000-041 | 2-10-0500 | rrl-0000-00-1400.rrsl | Extra to contract [illegible] | 4,572.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| EWA3150 | 9/10/2007 | 11/13/2007 | RR51-1000 | RR511000-044 | 2-10-0900 | rrl-0000-00-1400.rrsl | Extra Hoe Ramming | 7,716.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| EWA3151 | 9/10/2007 | 11/13/2007 | RR51-1000 | RR511000-040 | 3-10-0400 | rrl-0000-00-1400.rrsl | Extra to Contract lower boxes | 1,679.40 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| EWA3215 | 9/10/2007 | 11/15/2007 | RR51-1000 | RR511000-042 | 2-10-0600 | rrl-0000-00-1400.rrsl | Extra add Fire Sprinkler Pump | 5,302.47 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| EWA3524 | 9/26/2007 | 11/13/2007 | RR20-100B | RR201008-078 | 2-08-0300 | p20-0000-00-1400.rr20 | Remove dirt off lots 3 Feb-25 | 1,302.00 | Parcel 20 | Rhodes Companies | 11177 | 11/13/2007 |
| 1345-01 | 12/1/2006 | 1/10/2007 | SW11-1000 | SW111000-091 | 2-10-0200 | rrl-0000-00-1400.swmj | Dry Utility Contract | 518.70 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-01 | 12/1/2006 | 1/10/2007 | SW11-1000 | SW111000-091 | 2-10-0500 | rrl-0000-00-1400.swmj | Dry Utility Contract | 3,643.90 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-01 | 12/1/2006 | 1/10/2007 | SW11-1000 | SW111000-091 | 2-10-0400 | rrl-0000-00-1400.swmj | Dry Utility Contract | 1,120.10 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-02 | 2/1/2007 | 2/19/2007 | SW11-1000 | SW111000-091 | 2-10-0000 | rrl-0000-00-1400.swmj | Dry Utility Contract | 514.80 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-02 | 2/1/2007 | 2/19/2007 | SW11-1000 | SW111000-091 | 2-10-0300 | rrl-0000-00-1400.swmj | Dry Utility Contract | 2,124.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-02 | 2/1/2007 | 2/19/2007 | SW11-1000 | SW111000-091 | 2-10-0400 | rrl-0000-00-1400.swmj | Dry Utility Contract | 1,307.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-04 | 4/2/2007 | 4/18/2007 | SW11-1000 | SW111000-091 | 2-10-0300 | rrl-0000-00-1400.swmj | Dry Utility Contract | 1,887.74 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-04 | 4/2/2007 | 4/18/2007 | SW11-1000 | SW111000-091 | 2-10-0300 | rrl-0000-00-1400.swmj | Dry Utility Contract | 630.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 1345-04 | 4/2/2007 | 4/18/2007 | SW11-1000 | SW111000-091 | 2-10-0400 | rrl-0000-00-1400.swmj | Dry Utility Contract | 313.80 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-02 | 4/2/2007 | 4/18/2007 | SW11-1000 | SW111000-091 | 2-10-0300 | rrl-0000-00-1400.swmj | Dry Utility Contract | 62.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 07-0021-03 | 4/2/2007 | 5/23/2007 | RR05-1004 | RR051004-012 | 2-10-0200 | rrl-0000-00-1400.rrls | Traffic signal install damage | 2,376.44 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4764 | 11/14/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/23/2007 | RR05-1004 | RR051004-012 | 2-10-0000 | rrl-0000-00-1400.rrls | Traffic signal install damage | 20,200.04 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-00-1 | 5/4/2007 | 5/24/2007 | RR05-1004 | RR051004-012 | 2-10-0200 | rrl-0000-00-1400.rrls | Traffic signal install damage | 615.11 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/21/2007 | RR05-1004 | RR051004-012 | 2-10-0300 | rrl-0000-00-1400.rrls | Traffic signal install damage | 2,455.75 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/23/2007 | RR05-1004 | RR051004-012 | 3-10-0200 | rrl-0000-00-1400.rrls | Traffic signal install damage | 18,713.82 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/23/2007 | RR05-1004 | RR051004-012 | 2-10-0300 | rrl-0000-00-1400.rrls | Traffic signal install damage | 789.80 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/23/2007 | RR05-1004 | RR051004-012 | 2-10-0000 | rrl-0000-00-1400.rrls | Traffic signal install damage | 1,140.48 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 1345-06 | 7/1/2007 | 7/12/2007 | SW11-1000 | SW111000-091 | 2-10-0300 | rrl-0000-00-1400.swmj | Dry Utility Contract | 257.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 1345-05 | 6/1/2007 | 7/31/2007 | SW11-1000 | SW111000-091 | 2-10-0500 | rrl-0000-00-1400.swmj | Dry Utility Contract | 315.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4768 | 11/14/2007 |
| 1345-05 | 6/1/2007 | 7/31/2007 | SW11-1000 | SW111000-091 | 2-10-0400 | rrl-0000-00-1400.swmj | Dry Utility Contract | 56.70 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| EWA2933 | 11/7/2006 | 8/14/2007 | SW11-1000 | SW111000-044 | 2-08-0400 | rrl-0000-00-1400.swmj | Wet Utility Contract | 918.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| EWA3109 | 2/6/2007 | 8/14/2007 | SW11-1000 | SW111000-044 | 2-08-0500 | rrl-0000-00-1400.swmj | Wet Utility Contract | 41.68 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4767 | 11/14/2007 |
| 07-0021-3 | 6/1/2007 | 11/13/2007 | RR05-1004 | RR051004-012 | 2-10-0200 | rrl-0000-00-1400.rrls | RR Entry Power | 1,344.24 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4767 | 11/14/2007 |
| 07-0021-3 | 8/1/2007 | 11/13/2007 | RR05-1004 | RR051004-012 | 2-10-0200 | rrl-0000-00-1400.rrls | RR Entry Power | 329.25 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-3 | 6/1/2007 | 11/13/2007 | RR05-1004 | RR051004-012 | 2-10-0200 | rrl-0000-00-1400.rrls | RR Entry Power | 40.08 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-3 | 6/1/2007 | 11/13/2007 | RR05-1004 | RR051004-015 | 2-10-0200 | rrl-0000-00-1400.rrls | RR Entry Power | 1,335.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-4 | 6/1/2007 | 11/13/2007 | RR05-1004 | RR051004-017 | 2-15-0400 | rrl-0000-00-1400.rrls | RR Entry Power | 349.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-03A | 6/15/2007 | 11/13/2007 | RR05-1004 | RR051004-012 | 2-10-0200 | rrl-0000-00-1400.rrls | RR Entry Power | 87.34 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 07-0021-03A | 6/15/2007 | 11/13/2007 | RR05-1004 | RR051004-012 | 2-10-0200 | rrl-0000-00-1400.rrls | RR Entry Power | 723.76 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 60-1-1840 | 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.0000 | Line Item 227 | 43,258.45 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 60-1-1840 | 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.0000 | Line Item 226 | 20,211.05 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 60-1-2220 | 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.0000 | Line Item 225 | 1,930.50 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 60-1-2320 | 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.0000 | Line Item 219 | 3,852.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 60-1-2300 | 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.0000 | Line Item 216 | 14,235.48 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 60-1-2280 | 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.0000 | Line Item 217 | 7,755.70 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 60-1-2260 | 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.0000 | Line Item 215 | 18,737.07 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 57-1-3540 | 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.0000 | Line Item 174 | 3,305.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 57-1-3520 | 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.0000 | Line Item 172 | 207.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 57-1-3180 | 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.0000 | Line Item 169 | 3,809.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 57-1-3160 | 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.0000 | Line Item 173 | 3,440.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 57-1-3140 | 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.0000 | Line Item 170 | 2,361.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 56-1-3180 | 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.0000 | Line Item 164 | 306.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 56-1-3180 | 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.0000 | Line Item 162 | 342.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 56-1-3180 | 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.0000 | Line Item 161 | 24,755.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 56-1-3180 | 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.0000 | Line Item 559 | 814.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 54-1-3180 | 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.0000 | Line Item 234 | 954.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 50-1-3180 | 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.0000 | Line Item 157 | 33,537.20 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 56-1-3120 | 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.0000 | Line Item 145 | 6,210.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 55-1-4000 | 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.0000 | Line Item 149 | 1,827.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 55-1-3220 | 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.0000 | Line Item 122 | 4,473.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 55-1-3720 | 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.0000 | Line Item 118 | 17,846.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 56-2-3180 | 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.0000 | Line Item 141 | 797.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 55-1-3180 | 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.0000 | Line Item 124 | 1,710.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 55-1-3180 | 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.0000 | Line Item 121 | 15,255.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 55-1-3170 | 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.0000 | Line Item 127 | 2,321.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 56-1-1580 | 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.0000 | Line Item 131 | 2,394.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3720 | 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.0000 | Line Item 54 | 945.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3260 | 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.0000 | Line Item 42 | 7,181.10 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3260 | 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.0000 | Line Item 76 | 31,188.50 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3360 | 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.0000 | Line Item 41 | 5,185.50 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3740 | 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.0000 | Line Item 59 | 405.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3240 | 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.0000 | Line Item 40 | 28,608.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3220 | 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.0000 | Line Item 75 | 5,562.40 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-2920 | 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.0000 | Line Item 41 | 17,897.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-2160 | 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.0000 | Line Item 52 | 17,744.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3120 | 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.0000 | Line Item 51 | 31,757.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-2120 | 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.0000 | Line Item 49 | 28,644.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 16605 | 8/11/2007 | 10/17/2007 | TS12-0088 | | 15163 | 7-12-0200 | tel-tc12-10-5100.0000 | BC Mezzuine lot 38 | (202.10) | Tuscany Acquisitions | Rhodes Companies | 11506 | 12/5/2007 |
| EWA4528 | 9/26/2007 | 11/29/2007 | RR20-1006 | RR201008-076 | | 2-08-0300 | p20-0000-00-1400.rr20 | Remove dirt pit lots 3 Feb 15 | 1,532.00 | Parcel 20 | Rhodes Companies | 11506 | 12/5/2007 |
| 1324-13 | 10/1/2007 | 11/29/2007 | RR20-100A | RR201000-080 | | 2-10-0200 | p20-0000-00-1400.rr20 | Dry Utility Contract | 4,832.01 | Parcel 20 | Rhodes Companies | 11506 | 12/5/2007 |
| 1149-04 | 10/1/2007 | 11/29/2007 | RRTE-1000 | RRTE1000-057 | | 2-10-0600 | r16-0000-00-1400.rrte | Dry Utility Contract | 1,955.45 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4849 | 12/5/2007 |
| EWA3660 | 10/22/2007 | 11/30/2007 | TS11-3000 | TS121000-121 | | 3-08-0100 | tal-0000-00-1400.ts12 | Sidewalk panels and water box | 2,216.59 | Tuscany Acquisitions | Rhodes Companies | 11506 | 12/5/2007 |
| EWA3121 | 2/19/2007 | 12/5/2007 | RR12-8000 | RR128000-430 | | 6-10-0410 | rr-rr12-80-6930.0000 | Flag Pole Fabrication | 6,324.45 | Rhodes Realty | Rhodes Companies | 11593 | 12/12/2007 |
| 061256-08 | 10/1/2007 | 12/5/2007 | TSAD-FFED | TSAUFEED-001 | | 2-10-0500 | rd4-0000-00-1400.tsmf | Dry Utility-3rd Feeder | 23,886.17 | Rhodes Design & Development | Rhodes Companies | 11593 | 12/11/2007 |
| EWA3575 | 10/22/2007 | 12/5/2007 | TSAU-FEED | TSAUFEED-003 | | 2-10-0500 | rd4-0000-00-1400.tsmf | Repair damaged NVP conduit | 4,500.00 | Rhodes Design & Development | Rhodes Companies | 11593 | 12/12/2007 |
| EWA3882 | 11/20/2007 | 12/13/2007 | RR11-0064 | | 21081 | 7-19-0600 | rrt-rr11-01-5100.0000 | Trenching Lot 86 | 3,118.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4910 | 12/20/2007 |
| 1324-03 | 10/1/2007 | 12/12/2007 | RRAM-FAEG | RRAMFAEG-018 | | 2-09-0400 | rrl-0000-00-1400.rrmj | Wet Utilities | 44,083.80 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4910 | 12/20/2007 |
| EWA2766 | 6/17/2006 | 8/14/2007 | 5W13-1000 | 5W211000-044 | | 2-09-0400 | rrl-0000-00-1400.swmj | Wet Utility Contract | 4,274.40 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4915 | 12/21/2007 |
| EWA2502 | 11/2/2006 | 8/14/2007 | 5W13-1000 | 5W211000-044 | | 2-09-0200 | rrl-0000-00-1400.swmj | Wet Utility Contract | 2,450.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4915 | 12/21/2007 |
| 070066-05 | 11/22/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 58-1-3240 | 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.0000 | PAY AP #8, DUE DATE 12/20/07, | 14,387.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 53-1-3030 | 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.0000 | Pipes & Valves, 36" & Larger | 7,465.50 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 53-1-2900 | 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.0000 | MANHOLE AND BASE, 4' | 4,187.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 53-1-2100 | 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.0000 | CATCH BASIN, TYPE 8 | 40,824.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 53-1-2100 | 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.0000 | CATH BASIN TYPE 8 | 4,862.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 53-1-2720 | 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.0000 | STORM DRAIN, OTHER | 630.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 56-1-3180 | 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.0000 | PIPE AND BALVES, 6"-8" | 1,812.50 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 53-1-3240 | 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.0000 | PIPE AND VALVES, 18"-21" | 405.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 53-1-3180 | 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.0000 | PIPE AND VALVES, 6"-8" | 316.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 55-1-3180 | 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.0000 | PIPE AND VALVES 8"-8" | 4,092.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 55-1-3220 | 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.0000 | PIPE AND VALVES 1"-12" | 1,926.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 55-1-2580 | 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.0000 | FIRE HYDRANT, OTHER | 3,578.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 55-1-3220 | 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.0000 | PIPE AND VALVES, 12"-17" | 22,181.80 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 55-1-3220 | 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.0000 | PIPE AND VALVES, 12"-17" | 12,942.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 55-1-3220 | 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.0000 | PIPE AON VALVES, 12"-17" | 848.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 55-1-3180 | 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.0000 | PIPE AND VALVES, 6"-8" | 342.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 55-1-3120 | 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.0000 | PIPE AND VALVES, 2"-3" | 12,925.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 55-1-3300 | 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.0000 | PIPE AND VALVES, OTHER | 3,314.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 56-1-3180 | 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.0000 | PIPE AND VALVS 6"-8" | 17,448.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 56-1-3180 | 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.0000 | PIPE AND VALVES, 6"-8" | 13,382.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 56-1-3180 | 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.0000 | PIPE AND VALVES, 6"-8" | 1,908.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 56-1-3180 | 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.0000 | PIPE AND VALVES 8"-8" | 10,811.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 58-1-3180 | 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.0000 | PIPE AND VALVES, 6"-8" | 812.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 56-1-3180 | 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.0000 | PIPE AND VALVES, 2"-3" | 508.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 56-1-3120 | 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.0000 | PIPE AND VALVES, 2"-3" | 1,242.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/22/2007 | A207-1001 | 07-01156 | | 60-1-2180 | 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.0000 | CONDUIT, 2"-3" | 1,180.04 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | | | | 60-1-2640 | 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.0000 | GAS, OTHER | 8,822.87 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/28/2007 | 12/28/2007 | | | | | 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.0000 | Underground Work | (36,982.99) | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/28/2007 | 12/28/2007 | | | | | 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.0000 | Construction Work | 36,983.04 | Pinnacle Grading | Pinnacle | 3255 | 12/28/2007 |
| 1363-06 | 11/2/2007 | 12/28/2007 | RR20-100B | RR201008-023 | | 2-10-0500 | p20-0000-00-1400.rr20 | Dry Utilities | 12,447.30 | Parcel 20 | Rhodes Companies | 11852 | 1/8/2008 |
| 1363-06 | 11/2/2007 | 12/26/2007 | RR20-100B | RR201008-013 | | 2-10-0200 | p20-0000-00-1400.rr20 | Dry Utilities | 5,498.34 | Parcel 20 | Rhodes Companies | 11852 | 1/8/2008 |
| 1363-06 | 11/2/2007 | 12/28/2007 | RR20-100B | RR201008-021 | | 2-10-0400 | p20-0000-00-1400.rr20 | Dry Utilities | 1,631.30 | Parcel 20 | Rhodes Companies | 11852 | 1/8/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01442 | | 53-1-3240 | 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.0000 | INVOICE 070066-06, PERIOD COVE | 11,803.50 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/28/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 53-1-2900 | 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.0000 | MAN HOLE AND BASE, 5' | 13,419.00 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01449 | | 53-1-2900 | 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.0000 | MANHOLE AND BASE 4' | 4,167.00 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01442 | | 53-1-3720 | 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.0000 | STORM DRAIN, OTHER | 14,760.00 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/21/2007 | 1/30/2008 | A207-1001 | 07-01442 | | 53-1-3720 | 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.0000 | STORM DRAIN, OTHER | 188,640.00 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01448 | | 55-1-3180 | 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.0000 | PIPE AND VALVES, 6"-8" | 5,600.00 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/29/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 55-1-2580 | 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.0000 | FIRE HYDRANT, OTHER | 3,828.00 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 55-1-3220 | 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.0000 | PIPE AND VALVES, 12"-17" | 1,512.00 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 55-1-4000 | 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.0000 | WATER, OTHER | 2,160.00 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/13/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 56-1-3180 | 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.0000 | PIPE AND VALVES, 8"-8" | 14,168.00 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01445 | | 58-1-7240 | 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.0000 | GLAVANIZED STEEL, END SECTION | 2,338.00 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 60-1-2160 | 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.0000 | CONDUIT, 2"-3" | 11,632.18 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 60-1-2500 | 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.0000 | CONDUIT, 5" AND ABOVE | 3,717.61 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 60-1-3880 | 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.0000 | TRENCHING | 49,641.73 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 60-1-2640 | 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.0000 | GAS, OTHER | 2,616.17 | Pinnacle Grading | Pinnacle | 3434 | 1/31/2008 |
| 070066-06 | 11/21/2007 | 1/30/2008 | | | | | 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.0000 | Work & Materials | (83,854.29) | Pinnacle Grading | Pinnacle | 3444 | 1/31/2008 |
| EWA3649 | 11/1/2007 | 1/21/2008 | TS17-1000 | TS121000-015 | | 3-08-0100 | tal-0000-00-1400.ts17 | New Pull Boxes | 975.05 | Tuscany Acquisitions IV | Rhodes Companies | 12298 | 2/1/2008 |
| EWA3715 | 11/20/2007 | 1/11/2008 | SH54-1000 | SH5A1000-118 | | 2-09-0200 | rd4-0000-00-1400.sh5a | Sewer Repair | 4,183.67 | Rhodes Design & Development | Rhodes Companies | 12298 | 2/1/2008 |
| EWA3654 | 11/20/2007 | 1/23/2008 | RR11-1000 | RR111000-157 | | 3-06-0900 | rrt-rr11-01-5100.0000 | Road work for Gnal | 4,410.45 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 5098 | 2/1/2008 |
| 1324-12 | 8/1/2007 | 1/30/2008 | RR20-100A | RR202000-050 | | 2-10-0200 | p20-0000-00-1400.rr20 | Dry Utility Contract | 10,834.50 | Parcel 20 | Rhodes Companies | 12298 | 2/1/2008 |
| 1824-12 | 9/1/2007 | 1/30/2008 | RR30-100A | RR201000-090 | | 2-10-0400 | p20-0000-00-1400.rr20 | Dry Utility Contract | 7,059.20 | Parcel 20 | Rhodes Companies | 12258 | 2/1/2008 |
| EWA3656 | 11/2/2007 | 1/30/2008 | RRPH-1000 | RRPH1000-107 | | 3-08-0600 | rd-0000-00-1400.rrpm | Replace collar lot | 1,369.78 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 5098 | 2/1/2008 |
| 1314-14 | 11/2/2007 | 12/21/2007 | RR20-100A | RR201000-050 | | 2-10-0200 | p20-0000-00-1400.rr20 | Dry Utilities Contract | 14,792.06 | Parcel 20 | Rhodes Companies | 12447 | 2/18/2008 |
| 1324-14 | 11/2/2007 | 12/21/2007 | RR20-100A | RR201000-080 | | 2-10-0400 | p20-0000-00-1400.rr20 | Dry Utilities Contract | 3,078.60 | Parcel 20 | Rhodes Companies | 12447 | 2/16/2008 |
| 1324-14 | 11/2/2007 | 12/21/2007 | RR30-100A | RR201000-060 | | 2-10-0400 | p20-0000-00-1400.rr20 | Dry Utilities Contract | 7,020.00 | Parcel 20 | Rhodes Companies | 12447 | 2/18/2008 |
| 1374-04 | 11/2/2007 | 1/31/2008 | RRAM-FAEG | RRAMFAEG-018 | | 2-09-0400 | rl-0000-00-1400.rmj | Wet Utilities | 3,121.90 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 5175 | 2/21/2008 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1324 15 | 12/1/2007 | 2/12/2008 | RR30 100A | RR301000-000 | 7-10-0400 | 930 0000-00-1400 m?C | Dry Utility Contract | 4,024.80 | Parcel 20 | Rhodes Companies | 11555 | 2/21/2008 |
| 070064-06 | 1/30/2008 | 1/30/2008 | | | | 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.0000 | Construction Work | 93,954.28 | Pinnacle Grading | Pinnacle | 3565 | 3/1/2008 |
| 070068-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 53-1-3240 | 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.0000 | INVOICE 070064-07, PAY APP #7, | 1,188.00 | Pinnacle Grading | Pinnacle | 3621 | 3/18/2008 |
| 070068-07 | 1/20/2008 | 2/18/2008 | A207-1001 | 07-01961 | 53-1-3140 | 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.0000 | PIPES & VALVES, 36" & LARGER | 12,442.50 | Pinnacle Grading | Pinnacle | 3621 | 3/18/2008 |
| 070064 07 | 1/20/2008 | 2/18/2008 | A207-1001 | 07-01961 | 53-1-3720 | 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.0000 | STORM DRAIN, OTHER | 18,800.00 | Pinnacle Grading | Pinnacle | 3621 | 3/18/2008 |
| 072064-07 | 1/20/2008 | 2/14/2008 | A207-1001 | 07-01963 | 53-1-3720 | 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.0000 | STORM DREAN, OTHER | 37,560.50 | Pinnacle Grading | Pinnacle | 3621 | 3/18/2008 |
| 070006-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 53-1-3240 | 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.0000 | INVOICE 070064-07, PAY APP #7, | 132.00 | Pinnacle Grading | Pinnacle | 3621 | 3/18/2008 |
| 070066-07 | 1/20/2008 | 2/18/2008 | A207-1001 | 07-01961 | 53-1-5180 | 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.0000 | PIPES & VALVES, 36" & LARGER | 1,382.50 | Pinnacle Grading | Pinnacle | 3624 | 3/20/2008 |
| 070066-07 | 1/20/2008 | 2/11/2008 | A207-1001 | 07-01961 | 53-1-3720 | 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.0000 | STORM DRAIN, OTHER | 3,200.00 | Pinnacle Grading | Pinnacle | 3624 | 3/20/2008 |
| 070088-07 | 1/20/2008 | 2/14/2008 | A207-1001 | 07-01961 | 55-1-3720 | 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.0000 | STORM DREAIN, OTHER | 71,238.00 | Pinnacle Grading | Pinnacle | 3624 | 3/20/2008 |
| 070068-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 56-2-5140 | 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.0000 | PIPE AND VALVES, 8"-9" | 66,384.00 | Pinnacle Grading | Pinnacle | 3624 | 3/20/2008 |
| 070066-07 | 1/20/2008 | 2/18/2008 | A207-1001 | 07-01961 | 55-1-5220 | 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.0000 | PIPE AND VALVEX, 12"-17" | 55,506.80 | Pinnacle Grading | Pinnacle | 3614 | 3/20/2008 |
| 030064-07 | 1/20/2008 | 2/14/2008 | A207-1001 | 07-01961 | 55-1-2120 | 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.0000 | PIP AND VALVES, 2"-3" | 7,527.00 | Pinnacle Grading | Pinnacle | 3624 | 3/22/2008 |
| 070058-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 55-1-2540 | 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.0000 | FIRE HYDRANT, OTHER | 1,597.00 | Pinnacle Grading | Pinnacle | 3624 | 3/22/2008 |
| 070066-07 | 1/20/2008 | 2/18/2008 | A207-1001 | 07-01961 | 56-1-3180 | 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.0000 | PIPE AND VLAVES, 8"-9" | 4,842.50 | Pinnacle Grading | Pinnacle | 3624 | 3/20/2008 |
| 070064-07 | 1/20/2008 | 2/18/2008 | A207-1001 | 07-01961 | 57-1-3180 | 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.0000 | PPE AND VALVES, 8"-9" | 4,282.20 | Pinnacle Grading | Pinnacle | 3614 | 3/20/2008 |
| 070066-08 | 2/20/2008 | 3/21/2008 | A207-1001 | 07-02135 | 53-1-8720 | 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.0000 | CONNECTION TO RETAINAGE PAID O | (4,714.50) | Pinnacle Grading | Pinnacle | 3624 | 3/20/2008 |
| 070064-08 | 2/20/2008 | 3/21/2008 | A207-1001 | 07-02135 | 57-1-8180 | 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.0000 | PAY APP #8, 3/20/08, DUCRTPCH | 721.70 | Pinnacle Grading | Pinnacle | 3670 | 3/21/2008 |
| 070080-08 | 2/20/2008 | 3/21/2008 | A207-1001 | 07-02135 | 57-1-3140 | 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.0000 | PIPE AND VALVES, 4"-5" | 2,983.00 | Pinnacle Grading | Pinnacle | 3670 | 3/21/2008 |
| 070066-08 | 2/20/2008 | 3/21/2008 | A207-1001 | 07-02135 | 60-1-2260 | 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.0000 | CONDUIT, 2"-3" | 7,616.85 | Pinnacle Grading | Pinnacle | 3670 | 3/21/2008 |
| 070086-08 | 2/20/2008 | 3/21/2008 | A207-1001 | 07-02135 | 60-1-3880 | 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.0000 | TRENCHING | 7,411.50 | Pinnacle Grading | Pinnacle | 3670 | 3/21/2008 |
| | | | | | | | Total Payments | 5,710,041.47 | | | | |

**EXECUTION COPY**

### ATTACHMENT C

1.      The lenders would form a new entity ("Newco"). Newco would be either a corporation or a limited liability company. The First Lien loans would be deemed contributed to Newco.

2.      Newco would purchase all of the interests in Heritage from its members for $10.00.

3.      Revenue Ruling 99-6 provides that on a sale of all of the interests of a partnership for tax purposes (which would include a limited liability company), the sellers are treated as selling "partnership interests". On the other hand, the buyer is deemed to be buying the assets of the partnership. As a result, from the Heritage members' perspective they would be treated as selling all of the interests in Heritage. Newco would be treated for federal income tax purposes as purchasing the 99% partnership interests in each of the limited partnerships held by Heritage and the 1% partnership interest held by Truckee Springs. Further, assuming that the general partner of each of the limited partnerships in turn sells its general partnership interests to Newco, Newco would be deemed to have owned the real estate owned by the limited partnerships (since each of the partnerships would have terminated for federal income tax purposes). At that point Newco would own all of the real estate.

4.      For federal income tax purposes, each Heritage member would have a gain equal to the excess of the liabilities of Heritage allocable to such member (which the transaction relieves the member of) minus the member's tax basis in its Heritage interest. This gain would be treated as long-term capital gain (except to the extent Heritage holds, directly or indirectly, assets subject to Section 751 of the Code, generally inventory or receivables arising from the sale of inventory).

5.      Therefore, contemporaneous with or subsequent to Newco's purchase of the Heritage membership interests, The Rhodes Companies, LLC - the general partner of each of Tick, LP; Glynda, LP; Jackknife, LP; LP; Batcave, LP; Overflow, LP; Wallboard, LP; and Chalkline, LP, -- shall sell its general partnership interests in such entities to Newco for $1.00. Alternatively, the membership interest in The Rhodes Companies, LLC may be acquired from its sole member – Sagebrush Enterprises, Inc. – in consideration for release of its obligations under the First Lien Lender Claims.

6.      Newco's members may agree to continue Newco as an LLC, file a check the box election effective the day after the Effective Date to treat Newco as a corporation for tax purposes, or convert into a corporation as of the day after the Effective Date.

7.      The holders of the Heritage membership interests and Newco will report the sale and purchase of the Heritage membership interests in accordance with Revenue Ruling 99-6, 1999-1 CB 432.

**EXECUTION COPY**

ATTACHMENT D – ARIZONA

## RHODES ARIZONA PROPERTIES

| OWNER | APN NUMBER | ACRES | ADDRESS | TYPE |
|---|---|---|---|---|
| RHODES ARIZONA PROPERTIES LLC | 306-24-115 | 20.25 | 1825 S AZTEC RD | Model Home |
| RHODES ARIZONA PROPERTIES LLC | 306-24-116 | 20.24 | 1807 AZTEC RD | Model Home |
| RHODES ARIZONA PROPERTIES LLC | 306-63-017 | 7.35 | 4536 W DORA DR | Model Home |
| RHODES ARIZONA PROPERTIES LLC | 306-63-018 | 6.83 | 4528 W DORA DR | Model Home |
| RHODES ARIZONA PROPERTIES LLC | 306-42-008A | 19.92 | 1156 S AZTEC RD | Dirt |
| RHODES ARIZONA PROPERTIES LLC | 306-42-001 | 40 | 1094 S AZTEC RD | Dirt |
| | **Total Acreage** | **114.59** | | |

| Inside Pravada |
|---|
| Pravada and all parts of Pravada lying within Sections 2, 3, 4, 9 and 10, all in Township 20 North, Range 18 West of the Gila and Salt River Base and Meridian, Mohave County, Arizona and within the following APN numbers: |

| OWNER | APN NUMBER | ACRES | ADDRESS | TYPE |
|---|---|---|---|---|
| Rhodes Arizona Properties | 215-01-116 | | | Partially Graded |
| Rhodes Arizona Properties | 215-01-113 | | | Partially Graded |
| Rhodes Arizona Properties | 215-01-114 | | | Partially Graded |
| Rhodes Arizona Properties | 215-01-111 | | | Partially Graded |
| | **Total Acreage** | **1,306±** | | |

## Arizona Personal Property

| Computers | Serial Number |
|---|---|
| HP 5150 | 2UA6030J6N |
| HP 5150 | MXL615027R |
| HP 5150 | 2UA6030J57 |
| HP WX4400 | 2UA70608F7 |
| HP WX4400 | 2UA70608HV |
| HP XW4200 | 2UA54215GL |
| Dell | GZOGR61 |

**Laptops**

*8200277 v.13*

12

**EXECUTION COPY**

HPNX6125
HPNX9600

CND54803LY
CNF6071GBR

**Printers**
HPLaser Jet 4250
HPLaser Jet 4101
HPLaser Jet 4100
HPLaser Jet 1320
HP color Laser Jet 2600
HP color Laser Jet 2804
HP color Laser Jet 5550
HP office jet 6310
HP Photosmart D5160
Lexmark 7001-001
Lexmark 7001-001
Super G3 Printer-Scanner

CNBXD06564
USLGY26030
USLGY42771
CNHC620168
CNGC64C1KC
JPBG532058
JPDC4D2072
CN639BGOYK
MY67G110DC
890CSTB
890CD3N
J8141101150

**Fax Machines**

2 - HP office jets 7310

6 of the printers and the fax machines have copier capabilities

**Miscellaneous Equipment**
Dell Power Edge Server 2850
HP Design Jet 1055CM Plus Plotter
10 Battery Surge boxes and 10 power strips
11 -computer monitors 20" flat screen
4 calculators
14 telephone owned by Rhodes

85172579422

**Office Furniture**
2 - drafting tables
3 - work tables with open shelves for plans
12 – file cabinets
    2 - 5 drawer 63 x 18
    1 - 3 drawer 36 x 20
    7 – 4 drawer 18 x 48
    2 - 4 drawer 20 x 48
2 - 3 shelf wood bookcases
4 - 4 shelf bookcases: (2) metal (2) wood
1 - hanging file for plans
1 - metal storage cabinet, 2-door, 4 shelves
2- wooden storage cabinets 2-door, 1 shelf
11 - desks: (1) metal (10) wood
12 - desk chairs
12 - guest chairs
5 - stacking chairs
1 - 4 x 6 rotating white board
1 - garbage can

13

**EXECUTION COPY**

10 - waste baskets
3 - 6 foot tables
2 - metal storage shelves- dimensions 5'h x 3'w x 18.5"d
2 - plastic storage shelves- dimensions 6'h x 3'W x 18" d

**Executory Contracts and Unexpired Leases**
To be provided by Plan Supplement Date but shall include, but not be
limited to all development agreements and subcontractor
agreements

**Trademarks and Tradenames**
Rhodes Arizona Properties
Rhodes Arizona
Golden Valley Ranch
Pravada

**Intangibles**
All architectural and engineering drawings, plus work product associated
with Pravada and Golden Valley Ranch.
All agreements with municipalities and utilities with respect to Pravada and Golden Valley Ranch.
Arizona general contractor's license.

EXECUTION COPY

## ATTACHMENT E – TRADENAMES/TRADEMARKS

All Rhodes Lead Home!
Rhodes Homes
R (logo)
R (logo) Rhodes Homes (owned by Rhodes Homes, Inc.)
RhodeMaster

15

## Exhibit 2

**New First Lien Notes Term Sheet**

**EXHIBIT 2**

**Summary of Terms and Conditions ("Term Sheet") for
$50 Million New First Lien Notes ("New First Lien Notes")**

**TERMS**

| | |
|---|---|
| **Borrowers:** | Newco, Heritage Land Company, LLC; The Rhodes Companies, LLC; Rhodes Ranch General Partnership; Tick, LP; Glynda, LP; Chalkline, LP; Batcave, LP; Jackknife, LP; Wallboard, LP; Overflow, LP; Rhodes Ranch Golf and Country Club; Tuscany Acquisitions, LLC; Tuscany Acquisitions II, LLC; Tuscany Acquisitions III, LLC; Tuscany Acquisitions IV, LLC; Parcel 20 LLC; Rhodes Design and Development Corp.; C&J Holdings, Inc.; Rhodes Realty, Inc.; Jarupa LLC; Elkhorn Investments, Inc.; Rhodes Homes Arizona, LLC; Rhodes Arizona Properties, LLC; Tribes Holdings LLC; Six Feathers Holdings, LLC; Elkhorn Partners, A Nevada Limited Partnership; Bravo Inc.; Gung-Ho Concrete, LLC; Geronimo Plumbing, LLC; Apache Framing, LLC; Tuscany Golf Country Club, LLC; and Pinnacle Grading, LLC, each as may be reorganized pursuant to a joint plan of reorganization to be proposed by the First Lien Steering Committee. |
| **New First Lien Notes:** | $50 million in first lien secured notes. Once repaid, the New First Lien Notes may not be reborrowed. |
| **Guarantors:** | All of the Borrowers. |
| **Agent:** | To be determined ("Agent"). |
| **Lenders:** | The lenders ("Lenders") under the first lien Credit Agreement dated as of November 21, 2005 (as may have been amended from time to time) among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein as Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, and the other loan documents (as defined in the First Lien Credit Agreement) (as may have been amended from time to time, the "Existing Credit Facility"). |
| **Maturity Date:** | The date that is the sixth anniversary of the Effective Date ("Maturity Date"). |
| **Purpose:** | To refinance a portion of the Existing Credit Facility and satisfy a portion of the Lenders' claims under the Existing Credit Facility. |
| **Security:** | The New First Lien Notes and all guarantees thereof will be secured by first priority perfected liens on substantially all existing and after acquired property of the Borrowers. |
| **Interest Rate:** | "Cash Pay Rate": LIBOR plus 2.00% per annum; or |

"PIK Rate": LIBOR plus 5.00% per annum.

**Interest Payments:** Interest on the New First Lien Notes shall be payable in Cash quarterly in arrears at the Cash pay rate of LIBOR +2%; provided that if the average of the Reorganized Debtors' unrestricted consolidated Cash as of the last day of each of the two immediately preceding consecutive quarters is less than $15 million or if the unrestricted consolidated Cash as of the last day of the immediately preceding quarter is less than $15 million (collectively, the "Cash Interest Threshold"), then the Reorganized Debtors shall have the option to capitalize the amount of interest due in excess of LIBOR for the immediately preceding quarter, with such capitalized interest to be capitalized on such interest payment date, and all such capitalized interest shall be due on the next interest payment date to the extent the Cash Interest Threshold is met after giving effect to the payment of interest and capitalized interest or as the Reorganized Debtors otherwise elect. All capitalized interest not previously paid shall be paid on the Maturity Date. LIBOR shall be subject to a cap of 2%.

**Mandatory Prepayments:** Mandatory prepayments of principal shall be made by the Reorganized Debtors if the average of the Reorganized Debtors' unrestricted consolidated Cash as of the last day of each of the two immediately preceding consecutive quarters is greater than $15 million or if the unrestricted consolidated Cash as of the last day of the immediately preceding quarter is greater than $15 million, in each case, after the payment of interest due on the New First Lien Notes.

**Covenants:** Customary affirmative and negative covenants for facilities of this type, including but not limited to financial covenants and covenants limiting other indebtedness, off-balance sheet financing, liens, investments, guaranties, restricted junior payments (dividends, redemptions, and payments on subordinated debt), mergers and acquisitions, sales of assets, capital expenditures, transactions with affiliates and conduct of business, subject to exceptions and baskets to be mutually agreed by the parties.

**Senior Revolving Loan and Letter of Credit Facility:** The New First Lien Notes shall contain provisions permitting the Borrowers to incur up to $10 million in secured indebtedness senior to the New First Lien Notes in the form of a working capital revolving loan and letter of credit facility, subject to the satisfaction of the terms and conditions set forth in the New First Lien Notes Documentation.

**Events of Default:** Customary for facilities of this type, including but not limited to failure to make payments when due, defaults under other agreements or instruments of indebtedness, noncompliance with covenants, breaches of representations and warranties, bankruptcy, judgments, invalidity of guaranties, impairment of security interests, and change of ownership.

**Other Terms:**      The New First lien Notes shall include without limitation a default rate of interest, optional, increased costs or reduced returns, conditions precedent to closing, representations and warranties, assignments/participations, amendment, waiver, and required lender provisions, in each case, customary for facilities of this type.

**Documentation:**    The New First Lien Notes Documentation shall be in form and substance acceptable to the First Lien Steering Committee.