James I. Stang, Esq. (CA Bar No. 94435)                          E-File:  <u>August 14, 2009</u>
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@PSZJlaw.com
        scho@PSZJlaw.com
        wdisse@PSZJlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com

Attorneys for Debtors and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered) |
| THE RHODES COMPANIES, LLC, aka<br>"Rhodes Homes," et al.,[1] | Chapter 11 |
| Debtors. | |
| Affects:<br>☒      All Debtors<br>☐      Affects the following Debtor(s) | Hearing Date:  October 2, 2009<br>Hearing Time:  1:30 p.m.<br>Courtroom 1 |

---

[1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

**FIRST INTERIM APPLICATION OF PACHULSKI STANG ZIEHL & JONES LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS CO-COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD MARCH 31, 2009 THROUGH JUNE 30, 2009; DECLARATION IN SUPPORT THEREOF**

**TO THE HONORABLE LINDA B. RIEGLE, UNITED STATES BANKRUPTCY JUDGE:**

By this Application, Pachulski Stang Ziehl & Jones LLP ("PSZJ" or the "Firm"), as co-counsel for the debtors and debtors in possession in the above-captioned cases (the "Debtors"), respectfully applies for an order of this Court: (i) allowing interim compensation to PSZJ for services rendered and expenses incurred in its representation of the Debtors during the period from March 31, 2009 through June 30, 2009 (the "Interim Period"), in the total amount of $903,777.76 (which amount reflects a voluntary write-off of professional fees and costs in the amount of $24,660.15), comprising services rendered in the amount of $865,249.50 and expenses incurred in the amount of $38,528.26; (ii) authorizing the Debtors to pay PSZJ the unpaid balance of that amount or $129,705.13; and (iii) granting any other relief that this Court deems necessary and appropriate (the "Application").

PSZJ submits this Application in accordance with the "Order Granting Debtors' Motion for Administrative Order Pursuant to Sections 105(A) and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016 Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals", entered May 18, 2009 (the "Interim Compensation Order"), 11 U.S.C. §331, Rules 2002(a)(6) and 2016 of the Federal Rules of Bankruptcy Procedure, LR 2016, and the Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses Filed Under 11 U.S.C. §330 (the "Fee Guidelines"). In support of this Application, PSZJ respectfully represents and shows as follows:

**I.**

**SUMMARY OF PSZJ ENGAGEMENT**

1.    PSZJ is a national firm that specializes in business reorganizations, corporate insolvency matters, commercial litigation, bankruptcy-related asset acquisitions, real estate matters in the bankruptcy context, bankruptcy litigation and appellate advocacy-all of which are areas in which PSZJ attorneys have extensive experience. In the insolvency area, PSZJ represents debtors,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

creditors, equity holders, committees, trustees, landlords, potential acquirers of assets, and other parties with interests in financially distressed businesses.  PSZJ has offices in Los Angeles, San Francisco, Delaware and New York, and handles matters throughout the United States.

2.      Pursuant to the "Order Granting Application of Debtors and Debtors in Possession to Employ Pachulski Stang Ziehl & Jones LLP as General Bankruptcy Counsel *Nunc Pro Tunc* to the Petition Date" (the "<u>Retention Order</u>"), entered on May 21, 2009, this Court authorized the Debtors to employ PSZJ as co-counsel in these proceedings.  The terms and conditions of employment and compensation, source of compensation are all set forth in the engagement letter previously filed and approved by the Retention Order.

3.      Except as otherwise set forth in this Application, no payments have been made or promised to PSZJ for services rendered or to be rendered in any capacity whatsoever in connection with these cases other than as may be authorized upon application to and order of this Court.  Neither PSZJ nor any shareholders or associates of the Firm has any agreement or any understanding of any kind or nature to divide, pay over, or share any portion of the fees to be awarded with any other person or attorney except among partners and associates of the Firm.

4.      The PSZJ attorneys who have been principally responsible for rendering services to the Debtors during this Interim Period have been James I. Stang, Alan J. Kornfeld, Shirley S. Cho, and Werner Disse.  Other PSZJ attorneys and staff have rendered services as needed.  In general, tasks have been allocated among PSZJ's attorneys based upon the comparative expertise of a particular attorney in various aspects of these cases.  Whenever feasible, work was allocated to attorneys with lower hourly rates.  PSZJ believes that it provided services were provided in an efficient and economic manner.  Nevertheless, in the exercise of it billing discretion, PSZJ has written off $24,660.15 in professionals fees and costs incurred by PSZJ during the Interim Period.

5.      The following exhibits covering the Interim Period are annexed to this Application:

<u>Exhibit 1</u> lists the billing rates for all PSZJ professionals who rendered services to the Debtors, and a summary of the hours billed and fees incurred on behalf of the Debtors by each of those persons.

Exhibit 2 contains a summary of the total fees incurred for each activity category on a monthly basis.

Exhibit 3 contains a summary of the total expenses incurred for each of the expense categories on a monthly basis.

Exhibit 4 contains a summary of the total fees incurred for each activity on a Debtor-by-Debtor basis.

Exhibit 5 contains copies of invoices.

**II.**

**SUMMARY OF COMPENSATION REQUEST**

6.        As set forth in Exhibit 5, during the Interim Period, PSZJ incurred $865,249.50 in fees, representing 1,774.80 hours of service, and $38,528.26 in costs and expenses.  PSZJ served monthly fee statements for the months of April, May and June, 2009 on all required parties pursuant to the Interim Compensation Order.  No party objected to the monthly fee statements, and the Debtors paid PSZJ eighty-five percent (85%) of the requested fees and one-hundred percent (100%) of the requested expenses in accordance with the Interim Compensation Order.  The Debtors have also been provided the monthly fee statements and have approved the monthly fee statements.  As of the date hereof, the balance owed to PSZJ for services rendered during the Interim Period is $129,705.13.

7.        The following table summarizes the monthly fees and expenses incurred and payments made to PSZJ during the Interim Period:

| Period | Fees and Expenses Incurred | Payment Received | Date Payment Received | Amount Owed (15% Holdback) |
|---|---|---|---|---|
| April 1, 2009 – April 30, 2009 | $482,410.00     (fees)<br>$   21,810.73 (expenses) | $410,048.50     (fees)<br>$   21,810.73 (expenses)<br><br>($391,695.83 + $40,163.40 drawn down from retainer) | 06/15/09 | $72,361.50 |
| May 1, 2009 – May 31, 2009 | $211,954.00     (fees)<br>$   11,278.27 (expenses) | $180,159.90     (fees)<br>$   11,278.27 (expenses) | 07/07/09 | $31,793.10 |
| June 1, 2009 – June 30, 2009 | $170,885.50     (fees)<br>$     5,439.87 (expenses) | $145,252.67     (fees)<br>$     5,439.87 (expenses) | 08/04/09 | $25,632.83 |
| **Totals** | $865,249.50     (fees)<br>$   38,528.87 (expenses) | $735,462.07     (fees)<br>$   38,528.87 (expenses) | | **$129,787.43** |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | Less Credit for Air Fare | <$82.30 > |
|---|---|---|
| **Total Due** | | **$129,705.13** |

8.     A portion of PSZJ's retainer ($40,163.40) has been applied against the April monthly fee statement as indicated above.  The remaining balance of PSZJ's retainer is $886,224.78.

9.     This Application is timely filed pursuant to the Interim Compensation Order, which required that the first interim fee application for all professionals be filed within 45 days of the last day of the interim period for which reimbursement is sought, or August 15, 2009.

### III.

### GENERAL BACKGROUND AND NARRATIVE HISTORY OF CASE

A.     **General Background**

10.     Rhodes Homes and its affiliated entities are engaged primarily in the business of home building and sales in Nevada and Arizona.  Rhodes Homes is a leading Nevada home builder and has developed 40 communities since its founding in 1988, generating over $2.4 billion in total revenues.  Rhodes Homes has built more than 6,000 homes in the Las Vegas Valley during the past two decades.  In addition, the Debtors operate ancillary businesses.  Tuscany Golf Country Club, LLC, one of the Debtors, owns and operates an 18-hole golf course, which is the center of the Tuscany Residential Village development.  Pinnacle Grading, LLC, another Debtor, provides grading and excavation services to the Debtors and third parties.

11.     Although the Debtors had made significant cost reductions in general overhead and other areas, including employee layoffs, the severe downturn of the Las Vegas market, significant supply overhang, and general economic malaise have combined to create an environment where the Debtors were unable to meet their March 2009 debt and amortization payments.  Despite several months of pre-petition negotiation efforts with senior secured lenders, a forbearance deal was not timely reached.

12.     On March 31, 2009, the above-captioned Debtors (the "Primary Filers") except Tuscany Golf Country Club, LLC, Pinnacle Grading, LLC, and Rhodes Homes Arizona, LLC (the "Secondary Filers") filed a voluntary petition for relief under the Bankruptcy Code.  On April 1,

2009, the Secondary Filers filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. All references to Petition Date herein shall mean March 31, 2009 for the Primary Filers or April 1, 2009 for the Secondary Filers, as applicable. The Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtors have paid all invoices received to the United States Trustee and have filed all monthly operating reports for 32 entities.

13.     On April 13, 2009, the Court granted the Debtors' Motion for Joint Administration of Related Chapter 11 Cases and Setting Single Bar Date and Meeting of Creditors (the "Joint Administration Motion"). Pursuant to the Joint Administration Motion, these cases are being jointly administered for procedural purposes only.

14.     On May 26, 2009 the Court appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code in the Debtors' jointly administered cases.

### B.     The Chapter 11 Cases

15.     The Debtors had somewhat of a crash landing into Chapter 11. The first month of these cases involved heavy litigation with the First Lien Steering Committee ("FLSC"). On April 7, 2009, the FLSC moved for an order directing the appointment of a chapter 11 trustee in the Debtors' cases pursuant to section 1104 of the Bankruptcy Code or alternatively sought dismissal of the Debtors' bankruptcy cases to allow the First Lien Lenders to exercise available remedies under state law (the "Trustee Motion") [Docket No. 68]. The Debtors vigorously opposed the Trustee Motion. The parties commenced litigation, during which time a deposition was taken of the Debtors' representative and voluminous documents (tens of thousands of pages) were produced. Ultimately, on May 6, 2009, the FLSC filed a notice to vacate the hearing on the Trustee Motion and the motion was moved off calendar [Docket No. 136].

16.     The Debtors have also had an uphill battle on use of cash collateral. The Debtors filed a motion seeking entry of interim and final orders (i) authorizing the Debtors to use cash collateral, (ii) granting adequate protection to the Debtors' prepetition secured creditors, and (iii) scheduling a final hearing on the Motion [Heritage Docket No. 15]. The Motion was contested by

the FLSC. In addition, the United States Trustee filed an objection to the Motion. Ultimately, the parties were able to agree on the form of a stipulated order. On April 10, 2009, the Court entered a stipulated order (the "First Stipulated Cash Collateral Order") that granted the Debtors the use of cash collateral through April 17, 2009 pursuant to a budget, contained certain payment restrictions and reporting requirements to the Debtors' lenders, and granted the Debtors' lenders certain adequate protection. [Heritage Docket Number 125]. On April 17, 2009, the Court entered a second stipulated order that granted the Debtors the use of cash collateral through April 28, 2009 [Docket No. 73] on similar terms to the First Stipulated Cash Collateral Order. On April 30, 2009, the Court entered a final order approving the Debtors' use of cash collateral through the week ending June 28, 2009 or longer upon the consent of the FLSC, subject to certain modifications to the interim stipulated orders [Docket No. 126].

17.    On June 16, 2009, the Debtors filed an emergency motion for use of cash collateral beyond the June 28, 2009 date because the FLSC did not consent to further use of cash collateral prior to the deadline for filing such emergency motion. The Debtors ultimately negotiated a stipulation with the FLSC for further interim usages of cash collateral. Currently, the Debtors have use of cash collateral through the omnibus hearing on August 28, 2009.

### C.    First Day Motions

18.    The Debtors received approval of approximately 25 motions during the Interim Period presented at over seven hearings. During the Interim Period, PSZJ spent time preparing and obtaining approval of these first day motions necessary for operating these companies in chapter 11, including:

19.    Cash Management. The Debtors filed a motion seeking entry of interim and final orders authorizing the Debtors to continue to use their existing, centralized cash management system, bank accounts and business forms and related relief [Docket No. 13]. On April 17, 2009, the Bankruptcy Court granted this motion on an interim basis with certain modifications as agreed to by the Debtors to address an objection raised by the United States Trustee. [Docket No. 78]. On April 30, 2009, the Bankruptcy Court entered a final order granting this motion on a final basis pursuant to the terms of that order [Docket No. 123].

20.  <u>Home Sales</u>.  The Debtors moved for authority (the "<u>Home Sale Motion</u>") to, among other things, (i) continue the construction, sale and closing of homes to customers in the ordinary course of business, (ii) honor certain prepetition contract obligations to homebuyers, including, where appropriate in the Debtors' business judgment and not inconsistent with past business practices, to refund deposits or provide other customer incentives, and (iii) provide that the sale of homes to the Debtors' customers shall be free and clear of all liens, claims, encumbrances and other interests [Docket No. 14].  The core of the Debtors' businesses is the sale of new homes.  As set forth in the Home Sale Motion, the Debtors' ability to, among other things, satisfy their contractual obligations to their customers and continue to contract for and complete the construction and sale of homes, free and clear of liens, is critical to the Debtors' operations and these cases.  Given the critical importance of the relief sought in this motion, on April 10, 2009 the Bankruptcy Court entered an interim order granting the Home Sale Motion [Docket No. 20], and subsequently entered a final order, with certain modifications as requested by the FLSC, on April 17, 2009 (the "<u>Home Sale Order</u>") [Docket No. 77].

21.  <u>Customer Programs</u>.  The Debtors filed a motion seeking entry of an order authorizing the Debtors to honor prepetition obligations to customers and to otherwise continue customer practices and programs in the ordinary course of business [Docket No. 12].  The customer practices and programs included the one year limited warranty offered to all homebuyers, customer sale incentives, the payment of homeowner association dues and programs related to the Tuscany golf pro shop.  On April 17, 2009, the Court entered an order approving the motion [Docket No. 75].

22.  <u>Utilities</u>.  To comply with the requirements of section 366 of the Bankruptcy Code, the Debtors filed a motion seeking an order authorizing them to provide, within 20 days of the Petition Date, a deposit equal to one-half of the Debtors' estimated monthly charges, subject to certain provisions as set forth in the motion [Docket No. 11].  If any of the utility companies providing utility services to the Debtors believed additional assurance is required, it could request such assurance, pursuant to specific procedures.  On April 30, 2009, the Bankruptcy Court granted this motion on an interim basis with certain modifications [Docket No. 122].  On May 18, 2009, the Bankruptcy Court entered a final order granting this motion on a final basis [Docket No. 181].  PSZJ

also spent time negotiating and finalizing two adequate assurance stipulations with objecting utility providers.

23.    <u>Employee Wages/ Benefits</u>.  As of the Petition Date, the Debtors' workforce consisted of approximately 124 employees.  Given the employees' critical functions and importance to the Debtors' businesses and cases, the Debtors sought entry of an order authorizing them, in accordance with their ordinary course policies and practices and in the Debtors' discretion, to pay and/or honor prepetition wages, salaries, employee benefits, and other compensation or reimbursements.  [Docket No. 10].  An interim order approving the motion was entered on April 10, 2009 [Docket No. 19], and a final order approving the motion was entered on April 17, 2009 [Docket No. 74] (the "<u>Wages Orders</u>").  The United States Trustee objected to this motion on various grounds.  The form of the final order required that any compensation for postpetition wages regarding James M. Rhodes, the Debtors' President, be made by separate motion for insider compensation.

**D.    Progress Towards Reorganization**

24.    The Debtors have also made significant progress on their reorganization.  During the Interim Period, the Debtors have been actively negotiating with the FLSC, the Committee, and the Non-Debtor Affiliates for a plan of reorganization.  The parties exchanged several rounds of term sheets.  PSZJ also drafted a disclosure statement based on the term sheets and also conducted analysis into various issues concerning the proposed plan structures.

25.    PSZJ also drafted the Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and/or Disclosure Statement [Docket No. 261].  After negotiations had broken down, the FLSC filed an objection to the Debtors' exclusivity motion.  PSZJ drafted a reply to the motion. To accomplish a consensual plan, the Debtors proposed and received the consent of all key parties to mediate before a neutral Judge.  In exchange for the mediation, the Debtors agreed to terminate exclusivity.  The stipulation was approved by Order of this Court.  [Docket No. 336]  The mediation is scheduled to commence on August 17, 2009, August 24, 2009 and August 25, 2009 before the Honorable Richard Neiter, Central District of California.  All parties have agreed to a moratorium on the filing of competing plans until the termination of the mediation, or August 28, 2009.

#### IV.

#### SUMMARY OF SERVICES RENDERED

**A.**    **Project Billing and Narrative Statement of Services**

26.    In accordance with the Fee Guidelines, PSZJ classified all services performed for which compensation is being sought into categories.  PSZJ attempted to place the services performed for which compensation in the category that best relates to the service provided.  However, because certain services may relate to one or more categories, services pertaining to one category may, in fact, be included in another category.  PSZJ has established the following billing categories and used such categories in these cases:

- Asset Analysis

- Asset Disposition

- Bankruptcy Litigation

- Case Administration

- Claims Analysis/Objection

- Compensation of Professionals

- Compensation of Professionals/Others

- Employee Benefit/Pension

- Executory Contracts

- Fee/Employment Applications

- First Day

- Financial Filings

- Financing

- General Creditors' Committee

- General Business Advice

- Hearings

- Insurance Coverage

- Litigation (Non-Bankruptcy)

- Meeting of Creditors

- Operations
- Plan and Disclosure Statement
- Retention of Professionals
- Retention of Professionals/Other
- Stay Litigation
- Tax Issues
- Travel

27.    Of the various categories above, PSZJ spent the most time during the Interim Period for work under the Financial Filings category, or $143,791.00.  PSZJ worked closely with the Debtors to prepare and physically generate the Debtors' 32 sets of schedules of assets and liabilities ("Schedules") and statement of financial affairs ("Statements").  During the Interim Period, PSZJ worked with the Debtors to identify discrepancies in the initially filed Schedules and Statements and to prepare amended Schedules/Statements, which amendments were filed shortly after the Interim Period.  In addition, time spent in this category also involves working with the Debtors on the monthly operating reports.

28.    PSZJ spent the second most amount of time during the Interim Period for work under the Plan and Disclosure Statement category, or $127,439.  The nature of work generally performed is as discussed above.

29.    PSZJ spent the third most amount of time during the Interim Period for work under the Bankruptcy Litigation category, or $89,236.  As discussed above, the majority of the work primarily involved responding to and defending against the Trustee Motion and supporting use of cash collateral and preparing for several contested cash collateral hearings.

30.    PSZJ spent the fourth most amount of time during the Interim Period for work under the Financing category, or $80,848.50.  Work under this category involved receiving approval of four cash collateral orders, among other things, as described above.

31.    Finally, PSZJ spent the fifth most amount of time during the Interim Period for work under the Operations category, of $74,093.50.  This work primarily involved implementing the First Day Motions described above and assisting the Debtors with their transition into chapter 11.

A more detailed summary of work performed under each category is below.

**B.**    **Asset Analysis:**                    Fees:  $1,555.00        Hours:  9.90

32.    This category relates to issues regarding asset analysis.  During the Interim Period, PSZJ, among other things:  (1) performed work regarding the analysis of lien claims; and (2) attended to trust deed issues.

**C.**    **Asset Disposition:**                 Fees:  $9,149.00        Hours:  13.00

33.    This category relates to issues regarding asset disposition.  During the Interim Period, PSZJ, among other things:  (1) attended to home sale closing issues; (2) performed work regarding the Home Sales Motion; (3) negotiated and finalized the Home Sales Order; (4) attended to land sale issues; and (5) corresponded and conferred regarding asset disposition issues.

**D.**    **Bankruptcy Litigation:**             Fees:  $89,236.00       Hours:  130.80

34.    This category relates to issues regarding bankruptcy litigation.  During the Interim Period, PSZJ, among other things:  (1) defended a deposition of the Debtors' witness; (2) reviewed and analyzed a request for production of documents; (3) prepared for four cash collateral hearings, three of which were at some point to be contested; (4) prepared a discovery plan in response to the Trustee Motion, including coordinating document production to the FLSC; (5) prepared for depositions and for the hearing on the Trustee Motion; (6) analyzed litigation cases for removal; (7) performed research regarding automatic stay issues; and (8) corresponded and conferred regarding bankruptcy litigation issues.

**E.**    **Case Administration:**               Fees:  $19,407.50       Hours:  49.20

35.    This category relates to issues regarding case administration.  To streamline administration of these cases, the Debtors filed the Joint Administration Motion seeking entry of an order authorizing and directing the joint administration of Debtors' related chapter 11 cases for procedural purposes only and setting a single bar date and meeting of creditors date [Docket No. 9], which motion was granted by Order entered on April 13, 2009 [Docket No. 22].  The Debtors also filed a Motion to Limit Notice Procedures for the purpose of limiting and streamlining notice because the Debtors have over 10,000 potential creditors [Docket No. 91].  Pursuant to an order entered on May 21, 2009, the Court granted the Debtors' motion to limit the scope of notice required

as to general and specific bankruptcy case matters [Docket No. 194].  PSZJ also performed other case management functions including, among other things:  (1) maintaining the master service list; (2) maintaining a memorandum of critical dates; and (3) maintaining a case task list.

**F.**    **Claims Administration and Objection:**    Fees:  $32,229.00    Hours:  96.10

36.    This category relates to issues regarding claims administration and objection.  During the Interim Period, PSZJ, among other things:  (1) responded to inquiries from creditors; (2) drafted the Application of Debtors for Entry of an Order Authorizing the Debtors to Publish Notice of the Bar Dates and Approving the Form of the Publication Notice Pursuant to FRBP 2002(l) [Docket No. 202], which motion was approved by Order dated July 9, 2009 [Docket No. 305]; (3) reviewed and analyzed asserted mechanics' lien claims, tax claims, administrative claims; (4) reached out to claimants to withdraw claims; (5) prepared objections to claims asserted for amounts that were not owed by the Debtors; and (6) analyzed potential additional claims objections.

**G.**    **Compensation of Professionals:**    Fees:  $13,204.00    Hours:  26.40

37.    This category relates to issues regarding the compensation of PSZJ.  During the Interim Period, PSZJ, among other things:  (1) drafted and received approval of the Interim Compensation Procedures Order; and (2) performed work regarding preparation and service of monthly fee statements.

**H.**    **Compensation of Professionals-Others:**  Fees:  $22,577.50    Hours:  42.50

38.    This category relates to issues regarding the compensation of professionals other than PSZJ.  As required by the Wages Orders, the Debtors filed a separate Application for Authorization to Pay Salary to James M. Rhodes [Docket No. 94].  In connection with the motion, the Debtors also drafted a supplemental statement in support of the motion, drafted a response to the United States Trustee's opposition, and negotiated with the United States Trustee for a consensual resolution of the motion, which Order was entered on July 9, 2009.  [Docket No. 335]  During the Interim Period, PSZJ also reviewed fee statements from other professionals for reasonableness.

**I.**    **Employee Benefits:**    Fees:  $12,683.50    Hours:  23.20

39.    This category relates to issues regarding employee benefits and general employee issues.  During the Interim Period, PSZJ, among other things:  (1) prepared a wages motion; (2)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

performed research regarding wage issues; (3) drafted two interim wage orders and a final wage order; (4) researched and analyzed payment to various classes of employees pursuant to the wages order; and (5) corresponded and conferred regarding employee issues.

**J.**   **Executory Contracts:**              Fees:  $2,946.00       Hours:  7.80

40.   This category relates to issues regarding executory contracts and unexpired leases of real property.  During the Interim Period, PSZJ, among other things:  (1) drafted a Motion to Extend Time Within Which Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Proper [Docket No. 264], which motion was granted by Order entered on July 21, 2009 [Docket No. 334]; and (2) corresponded regarding lease and executory contract issues.

**K.**   **Fee/Employment Application:**       Fees:  $5,920.50       Hours:  11.10

41.   This category relates to issues regarding fee application and employment issues. During the Interim Period, PSZJ, among other things:  (1) reviewed and analyzed April and May 2009 statements in anticipation of preparation of fee applications; (2) performed work regarding fee statement letters; and (3) corresponded and conferred regarding fee issues.

**L.**   **Financial Filings:**               Fees:  $143,791.00     Hours:  428.50

42.   This category relates to issues regarding compliance with reporting requirements. During the Interim Period, PSZJ, among other things:  (1) performed work regarding the Debtors' Motion for an Order Granting an Extension of Time to File Schedules of Assets and Liabilities and Statement of Financial Affairs [Docket No. 21]; (2) drafted the Schedules and Statements; (3) performed work regarding the Monthly Operating Reports; (4) performed research relating to Schedules and Statements; (5) conferred with company personnel regarding the preparation of Schedules and Statements; (6) reviewed and revised the Schedules and Statements; (7) prepared amended Schedules and Statements.

**M.**   **Financing:**                       Fees:  $80,848.50      Hours:  138.90

43.   This category relates to issues regarding use of cash collateral.  During the Interim Period, PSZJ, among other things:  (1) prepared the cash collateral motion; (2) reviewed and responded to objections to the same; (3) negotiated and received approval of four cash collateral

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

orders; (4)  reviewed and commented on several budgets; (5) drafted an emergency cash collateral motion; and (6) corresponded and conferred regarding financing issues.

**N.    First Day Motions:**                              Fees: $24,126.00      Hours: 40.80

44.    This category relates to issues regarding First Day Motions.  During the Interim Period, PSZJ, among other things:  (1) performed work regarding First Day Motions; (2) resolved objections and prepared all necessary documentation for approval of the First Day Motions, including declarations and orders; (3) drafted ex parte applications and received approval to have the First Day Motions heard on an expedited basis; and (4) responded to requests from the Court for additional information on the Debtors after the first day hearings, including coordinating the creation of an organizational chart and debtor-by-debtor disclosures.

**O.    General Business Advice:**                        Fees: $654.50        Hours: 1.10

45.    This category relates to issues regarding general business advice.  During the Interim Period, PSZJ, among other things, reviewed and analyzed an agreement for final payment of funds to one of the Debtors for work on a completed park project.

**P.    General Creditors Committee:**                    Fees: $4,226.50      Hours: 8.70

46.    This category relates to general Committee issues.  During the Interim Period, PSZJ, among other things:  (1) drafted a confidentiality agreement with the Committee; (2) produced requested documents to the Committee; and (3) corresponded and conferred regarding general creditors Committee issues.

**Q.    Hearing:**                                         Fees: $52,901.50     Hours: 98.70

47.    This category relates to issues regarding hearings.  During the Interim Period, PSZJ, among other things:  (1) prepared for and attended Court hearings on various matters before the Court; (2) prepared hearing agendas for the hearings; (3) prepared exhibits and other necessary documents for the hearings; and (4) performed follow-up tasks following the hearings.

**R.    Insurance Coverage:**                             Fees: $1,552.50      Hours: 2.30

48.    This category relates to issues regarding insurance issues.  During the Interim Period, PSZJ, among other things analyzed insurance issues as they relate to the Debtors' operations.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**S.**    **Litigation (Non-Bankruptcy):**    Fees: $238.50    Hours: .30

49.    This category relates to issues regarding litigation in non-bankruptcy courts.  During the Interim Period, PSZJ, among other things, reviewed and analyzed removal issues.

**T.**    **Meeting of Creditors:**    Fees: $11,553.50    Hours: 22.30

50.    This category relates to issues regarding meetings of creditors.  During the Interim Period, PSZJ, among other things:  (1) reviewed and analyzed a request for documents from the United States Trustee for the initial debtor interview and coordinated the Debtors' response to such request; (2) prepared for and attended the initial debtor interview on April 17, 2009; (3) prepared for and attended the section 341(a) meeting of creditors on May 7, 2009; and (4) corresponded and conferred regarding meeting of creditors issues.

**U.**    **Operations:**    Fees: $74,093.50    Hours: 134.60

51.    This category relates to issues regarding business operations.  During the Interim Period, PSZJ, among other things:  (1) performed work regarding a cash management motion; (2) performed work regarding a customer programs motion; (3) performed work regarding insurance issues; (4) attended to issues regarding bank accounts; (5) attended to budget issues; (6) attended to set-off issues; (7) attended to critical vendors issues; (8) responding to an inquiry from the Nevada State Contractor's Board regarding one of the Debtor's contractor's license; and (9) negotiated with Clark County for payment on a completed park project, including release of bonds.  PSZJ also spent time attending to issues regarding the utilities motion including coordination payments of the adequate assurance deposits, reviewing and analyzing objections to the utility motion, and drafting two stipulations for adequate protection to utility providers.

**V.**    **Plan and Disclosure Statement:**    Fees: $127,439.00    Hours: 233.00

This category relates to issues regarding a Plan of Reorganization ("Plan") and Disclosure Statement.  During the Interim Period, PSZJ, among other things:  (1) negotiated and analyzed several Plan term sheets; (2) analyzed Plan-related claim issues; (3) performed research re the Plan; (4) analyzed valuation issues; (5) attended to Plan-related tax issues; (6) performed research regarding substantive consolidation issues; (7) drafted, reviewed and revised a Disclosure Statement; (8) performed work regarding solicitation and voting procedures issues; (9) attended to Plan-related

issues of best interests of creditors' test and valuation requirements; and (11) performed work regarding a liquidation analysis. Under this category, PSZJ also drafted the Emergency Motion to Extend Time on the 90-Day Time Period to File a Plan under Section 362(d)(3) of the Bankruptcy Code for Certain of the Debtors, which was resolved by stipulation. [Docket No. 275]

**W.    Retention of Professionals:**          Fees: $21,663.50     Hours: 43.10

52.    This category relates to issues regarding retention of the Firm. During the Interim Period, PSZJ, among other things: (1) performed work regarding the Firm's retention application; (2) reviewed and analyzed an objection to its application from the United States Trustee; (3) performed research; (4) drafted a reply to the objection; (5) researched issues regarding representation of affiliated debtors; and (6) negotiated a resolution to the objection.

**X.    Retention of Professionals—Others:**     Fees: $71,197.00     Hours: 134.80

53.    This category relates to issues regarding the retention of professionals, other than the Firm. During the Interim Period, PSZJ, among other things: (1) performed work on the ordinary course professionals ("OCP") motion; (2) coordinate the retention of various OCPs; (3) drafted the retention application and coordinated the retention of the Debtors' claims agent, Omni Management, on an expedited basis; (4) drafted the retention application of several other professionals including the Debtors' plan experts, The Sullivan Group and Acceleron; (5) drafted the retention application of those consultants for which the Debtors determined that services were no longer necessary, including Ridgeback Partners, Noel Bejerano, and Province Advisors; and (6) responded to objections/ responses from the United States Trustee regarding the same. As well, the Debtors prepared retention applications for certain professionals, which, for various reasons, were not filed, such as Deloitte & Touche and Deloitte Tax.

**Y.    Stay Litigation:**          Fees: $10,643.50     Hours: 21.30

54.    This category relates to issues regarding stay litigation. During the Interim Period, PSZJ, among other things: (1) performed work regarding notices of stay; (2) performed work regarding relief from stay motions; (3) reviewed and analyzed the Harsch relief from stay motion and prepared an opposition to such motion; (4) performed research; and (5) corresponded and conferred regarding stay litigation matters.

17

**Z.**    **Tax Issues:**                                    Fees:  $4,041.00        Hours:  7.10

55.    This category relates to issues regarding tax issues.  During the Interim Period, PSZJ, among other things, filed the Debtors' Motion Pursuant to Sections 105(A), 363(B), and 507(a)(8) of the Bankruptcy Code Authorizing Payment of Certain Prepetition Sales and Use Taxes.  [Docket No. 99].  The Bankruptcy Court granted this motion, with certain modifications, pursuant to an order entered on May 18, 2009.  [Docket No. 179].

**AA.**    **Travel:**                                    Fees:  $27,326.00        Hours:  49.20

56.    During the Interim Period, PSZJ attorneys incurred non-working time while traveling on case matters.  Such time is billed at one-half the normal rate.

**V.**

**SUMMARY OF COSTS AND EXPENSES**

57.    The Fee Guidelines require that an application seeking reimbursement of expense include a summary listing of all expenses by category and month.  Accordingly, annexed hereto as Exhibit 4 is a summary of the total reimbursable expenses incurred by PSZJ on a monthly basis during the Interim Period broken down by expense category.  The total costs and expenses incurred during the Interim Period for which PSZJ seeks reimbursement is $38,528.26.

58.    To assist the Court in reviewing PSZJ's request for reimbursement of the expenses incurred in connection with its representation of the Debtors during the Interim Period, PSZJ's accounting procedures for the general categories of costs and expenses for which it seeks reimbursement by this Application are described below.  The majority of the requested expenses are charged at rates customarily applied to PSZJ's non-debtor clients**.**

**B.**    **Air Fare**

59.    The total expenses in this expense category for the Interim Period were $3,029.80.

**C.**    **Airport Parking**

60.    The total expenses in this expense category for the Interim Period were $90.00.

**D.**    **Auto Travel Expense**

61.    The total expenses in this expense category for the Interim Period were $1,166.77.

**E.**    **Working Meals**

62.    The total expenses in this expense category for the Interim Period were $576.42.

**F.**    **Conference Call**

63.    The Firm bills the actual cost of conference call services directly to its clients, without any surcharge.  The total expenses in this expense category for the Interim Period were $476.58.

**G.**    **Court Call**

64.    The Firm bills the actual cost of court call services directly to its clients, without any surcharge.  The total expenses in this expense category for the Interim Period were $133.50.

**H.**    **Fax Transmittal**

65.    The total expenses in this expense category for the Interim Period were $31.00.

**I.**    **Federal Express**

66.    When the exigencies require, the Firm used messenger and overnight courier services, such as Federal Express, to deliver documents.  The Firm charges its clients for the actual costs of such services.  The total expenses in this expense category for the Interim Period were $1,317.90.

**J.**    **Guest Parking**

67.    This category includes costs incurred by the Firm for parking fees at various meetings. The total expenses in this expense category for the Interim Period were $48.00.

**K.**    **Hotel Expense**

68.    The total expenses in this expense category for the Interim Period were $3,172.20.

**L.**    **Incoming Faxes**

69.    The total expenses in this expense category for the Interim Period were $4.80.

**M.**    **In-House Messenger Service**

70.    The total expenses in this expense category for the Interim Period were $178.00.

**N.**    **Lexis/Nexis –Legal Research**

71.    The total expenses in this expense category for the Interim Period were $3,224.88.

**O.**    **Outside Services**

72.    The total expenses in this expense category for the Interim Period were $2,009.27.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**P.**    **Pacer – Court Research**

73.    The total expenses in this expense category for the Interim Period were $1,125.68.

**Q.**    **Postage**

74.    The Firm bills the actual postage costs without surcharge.  The total expenses in this expense category for the Interim Period were $734.61.

**R.**    **Reproduction Expense**

75.    The Firm's internal photocopying projects are billed at the rate of $.20 per page.  This rate is comparable to the rate charged by a substantial number of other law firms in the community in both bankruptcy and non-bankruptcy engagements.  However, for this engagement, the Debtors wrote down their copy costs to $.10 per page.  The total expenses in this expense category for the Interim Period were $14,791.20.

**S.**    **Reproduction/Scan Copy**

76.    Items in this category are billed at the rate of $.10 per page.  The total expenses in this expense category for the Interim Period were $1,864.10.

**T.**    **Travel Expense**

77.    The total expenses in this expense category for the Interim Period were $1,18.18.

**U.**    **Transcript**

78.    This expense category includes costs incurred by the Firm for copies of transcripts of hearing.  The total expenses in this expense category for the Interim Period were $1,156.75.

**V.**    **Westlaw – Legal Research**

79.    The total expenses in this expense category for the Interim Period were $1,658.62.

**VI.**

**THE FEES AND EXPENSES REQUESTED SHOULD BE AWARDED**

**BASED UPON APPLICABLE LAW**

The fees and expenses requested by this Application are an appropriate award for PSZJ's services in acting as counsel to the Debtors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**A.    Factors in Evaluating Requests for Compensation**

Pursuant to section 330 of the Bankruptcy Code, the Court may award to a professional person, reasonable compensation for actual, necessary services rendered, and reimbursement for actual, necessary expenses incurred.  11 U.S.C. § 330.  As set forth above, the fees for which the Firm requests compensation and the costs incurred for which the Firm requests reimbursement are for actual and necessary services rendered and costs incurred.

The professional services rendered by the Firm have required an expenditure of substantial time and effort.  During the Interim Period, in excess of 1,774.80 hours have been recorded by members of the Firm, and additional hours of work were incurred and was written off.  The Firm's blended hourly rate in this case for the Interim Period, including paraprofessionals, is $487.52.

Moreover, time and labor devoted is only one of many pertinent factors in determining an award of fees and costs.  Based on the skills brought to bear in this case by the Firm and the results obtained and in light of the accepted lodestar approach, the Firm submits that the compensation requested herein is reasonable and appropriate.

**B.    The Lodestar Award Should Be Calculated by Multiplying a Reasonable Hourly Rate by the Hours Expended**

In determining the amount of allowable fees under section 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *Burgess v. Klenske (In re Manoa Finance Co.)*, 853 F.2d 687, 691 (9th Cir. 1988); *see also In re Schaeffer*, 71 B.R. 559, 563 (Bankr. S.D. Ohio 1987).  Twelve factors relevant to determining such fees were identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) (a Title VII class action case under the Civil Rights Act of 1964), and *Kerr v. Screen Extras Guild, Inc.*, 526 F. 2d 67, 70 (9th Cir. 1975):  (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the

client, and (12) awards in similar cases. *See American Benefit Life v. Baddock (In re First Colonial Corp.)*, 544 F.2d 1291 (5th Cir. 1977), (*Johnson* criteria applicable in bankruptcy cases).

While the *Johnson* and *Kerr* courts only offered guidelines as to relevant factors, in 1984, the Supreme Court, in enunciating guidelines to determine reasonable fees under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, held:

> The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. Adjustments to that fee then may be made as necessary in the particular case.

*Blum vs. Stenson*, 465 U.S. 886 (1984) (citation omitted). This is the so-called "lodestar" calculation.

While the lodestar approach is the primary basis for determining fee awards under the federal fee-shifting statutes and under the Bankruptcy Code, the other factors still apply in calculating the appropriate hourly rate to use under the lodestar approach. For example, when, in *Boddy v. Bankruptcy Court (In re Boddy)*, 950 F.2d 334, 337 (6th Cir. 1991), the Sixth Circuit Court of Appeals rejected an approach to fees (in chapter 13 cases) that dictated only a "normal and customary" fee should be awarded absent exceptional results, the Sixth Circuit nonetheless acknowledged that:

> The court can legitimately take into account the typical compensation that is adequate for attorney's fees in Chapter 13 cases, as long as it expressly discusses these factors in light of the reasonable hours worked and a reasonable hourly rate. The bankruptcy court also may exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area.

950 F.2d at 338. Thus, the twelve oft-cited *Johnson* and *Kerr* factors remain relevant:

1.     <u>The Time and Labor Required</u>: The time for which compensation is sought is set forth in detail in the exhibits hereto. In light of the scope of services rendered and the results achieved during the Interim Period, the Firm's services and time expenditures are reasonable.

2.    <u>The Novelty and Difficulty of the Questions Involved:</u>  The case included a number of matters and issues requiring a high degree of knowledge and skill.

3.    <u>The Skill Requisite to Perform the Legal Services Properly</u>:  The Firm believes its professionals have exhibited a high level of skill in representing the Debtors and dealing with issues and disputes regarding investigation of assets and claims, and litigation.

4.    <u>The Preclusion of Other Employment by the Attorney Due to the Acceptance of the Case</u>:  The case involved a number of matters and issues that required substantial amounts of time clearly precluding the acceptance of alternative employment as to the many hours worked.

5.    <u>The Customary Fee</u>:  The compensation the Firm seeks by way of this Application is the customary compensation sought by the Firm and other professionals representing trustees, committees, and debtors in similar circumstances.  In addition to write offs of charges typically billed by the Firm to private clients but not typically permitted by this Court and in addition to time for which attorneys and paralegals of the Firm elected not to bill, the Firm has additionally voluntarily reduced its total fee request by $24,660.15.

6.    <u>Whether the Fee Is Fixed or Contingent</u>:  The Firm seeks fixed compensation based on the lodestar formula, which it believes is appropriate in this case.

7.    <u>Time Limitations Imposed by the Circumstances</u>:  The time demands on the Firm have varied during the Fee Period, and have included some periods of time where the Firm's attorneys had to work very extensive hours for a number of the matters that arose during the Fee Period.

8.    <u>The Amount Involved and the Results Obtained</u>:  The Firm obtained demonstrable results for its work and the amounts incurred were reasonable and appropriate.

9.    <u>The Experience, Reputation and Abilities of the Firm</u>:  The experience, reputation, and abilities of the Firm's attorneys are well known and respected in this community.

10.    <u>The Undesirability of This Case</u>:  This case was not undesirable.

11.    <u>The Nature and Length of the Professional Relationship with the Client</u>:  Applicant has represented the Debtors since December 2008.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

12.    <u>Awards in Similar Cases</u>:   The award Applicant seeks in this case is similar to awards that counsel has received in similar cases.  Exhibit 5 is a copy of the Firm's time reports and records kept in the regular course of business reflecting the services rendered and the expenses incurred by the Firm during the Interim Period.  The time reports are organized on a daily basis.  The Firm is sensitive to issues of "lumping" and, unless time was spent in one time-frame on a variety of different matters for a particular client, separate time entries are set forth in the time reports.  The Firm's charges for its professional services are based upon the time, nature, extent and value of such services, and the cost of comparable services in this area, other than in a case under the Bankruptcy Code.

The Firm's charges for its professional services are based upon the time, nature, extent and value of such services, and the cost of comparable services in the Los Angeles area other than in a case under the Bankruptcy Code.  The Firm customarily charges its clients only for copying charges, facsimile transmissions, postage, and unusual expenses, i.e., travel, court costs, electronic research and special delivery services, including Federal Express.  In-house photocopying for this case is charged at $.10 per copy; for voluminous photocopying projects, the Firm uses an outside service, and passes through the actual charge.  Similarly, electronic research, court costs, and messenger, mail and other delivery charges are passed through at actual charge.  Facsimile transmission for this case is charged at $1.00 per page for outgoing faxes, and $.10 cents per page for incoming faxes.

The requested fees and expenses shall be paid from the estate only as and when available.  As of the date of this Application, PSZJ is informed that the Debtors are holding in their trust accounts in excess of $5 million.

**VII.**

**<u>CONCLUSION</u>**

PSZJ believes that the services rendered for which compensation is sought by this Application have been beneficial to the estates, that the costs incurred have been necessary and proper, and that the sums requested for the services rendered and costs incurred are fair and reasonable.

The interim compensation sought in this Application is not final. Upon the conclusion of this case, PSZJ will seek final approval of fees and costs for the totality of the services rendered in this case. Any interim fees approved by the Court and received by PSZJ will be credited against such final fees and costs as this Court may allow.

WHEREFORE, PSZJ respectfully requests that this Court, issues an order:  (i) allowing PSZJ interim compensation for services rendered and expenses incurred during the Interim Period in the amount of $903,777.76 representing services rendered in the amount of $865,249.50 and expenses incurred in the amount of $38,528.26 (ii) authorizing and directing the Debtors to pay the unpaid balance of that amount, $129,705.13 to PSZJ; and (iii) granting such other relief as the Court deems necessary and appropriate.

**DATED** this <u>14th</u> day of August, 2009.

**PACHULSKI STANG ZIEHL & JONES LLP**

James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho., Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone:  310/277-6910
Facsimile:  310/201-0760
Email:  jstang@PSZJlaw.com
        scho@PSZJlaw.com
        wdisse@PSZJlaw.com

Attorneys for Debtors and Debtors in Possession

**DECLARATION OF JAMES I. STANG**

I, James I. Stang, declare:

1.     I am a principal of Pachulski, Stang, Ziehl, & Jones LLP ("PSZJ" or the "Firm").  I submit this Declaration in support of the First Interim Application of Pachulski Stang Ziehl & Jones LLP for Allowance and Payment of Compensation and Reimbursement of Expenses as Co-Counsel to the Debtors and Debtors in Possession for the Period March 31, 2009 through June 30, 2009 (the "Application").

2.     I am familiar with the services rendered by the Firm as counsel for the Debtors and Debtors in Possession.

3.     I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of August, 2009 at Los Angeles, California.

James I. Stang

EXHIBIT 1

FEE SUMMARY BY PROFESSIONAL

| PROFESSIONAL / PARAPROFESSIONAL | DATE OF BAR ADMISSION | HOURLY RATE | HOURS BILLED | TOTAL FEES |
|---|---|---|---|---|
| James I. Stang | CA Bar No. 94435 (1980) | 795.00 | 102.00 | $ 81,090.00 |
| Alan J. Kornfeld | CA Bar No. 130063 (1987)<br>DC Bar No. 478826 (2002)<br>NY Bar No. 640029 (2004) | 725.00 | 135.80 | $ 98,455.00 |
| James A. Mahoney | CA Bar No. 39750 (1967) | 695.00 | 2.00 | $ 1,390.00 |
| Andrew W. Caine | CA Bar No. 110345 (1983) | 675.00 | 1.30 | $ 877.50 |
| Iain A.W. Nasatir | CA Bar No. 148977 (1990) | 675.00 | 3.40 | $ 2,295.00 |
| Stanley E. Goldich | CA Bar No. 92659 (1980) | 675.00 | 9.00 | $ 6,075.00 |
| Linda F. Cantor | CA Bar No. 153762 (1991) | 650.00 | 0.50 | $ 325.00 |
| Daryl G. Parker | CA Bar No. 47048 (1970) | 625.00 | 2.00 | $ 1,250.00 |
| Ellen M. Bender | CA Bar No. 100221 (1981) | 625.00 | 1.10 | $ 687.50 |
| Shirley S Cho | CA Bar No. 192616 (1997)<br>NY Bar No. 4061628 (2002) | 595.00 | 505.30 | $300,653.50 |
| Jeffrey L. Kandel | CA Bar No. 115832 (1984) | 525.00 | 7.80 | $ 4,095.00 |
| Jason S. Pomerantz | CA Bar No. 157216 (1991) | 495.00 | 83.00 | $ 41,085.00 |
| Robert M. Saunders | CA Bar No. 226172 (2003)<br>FL Bar No. 50695 (1995)<br>NY Bar No. RS 9999 (1984) | 495.00 | 0.50 | $ 247.50 |
| Werner Disse | CA Bar No. 143458 (1989) | 495.00 | 396.70 | $196,366.50 |
| Gillian N. Brown | CA Bar No. 205132 (1999)<br>DC Bar No. 979289 (2008) | 475.00 | 7.20 | $ 3,420.00 |
| William L. Ramseyer | CA Bar No. 94268 (1980) | 475.00 | 22.90 | $ 10,877.50 |
| David A. Abadir | MA Bar No. 669543 (2007) | 350.00 | 75.60 | $ 26,460.00 |
| Leslie Anne Forrester | | 250.00 | 4.80 | $ 1,200.00 |
| Patricia J. Jeffries | | 225.00 | 256.30 | $ 57,667.50 |
| Jorge E. Rojas | | 195.00 | 1.50 | $ 292.50 |
| Michael A. Matteo | | 195.00 | 156.10 | $ 30,439.50 |
| **Totals** | | | **1,774.80** | **$865,249.50** |
| **Blended Hourly Rate** | | **487.52** | | |
| **Blended Hourly Rate Excluding Paraprofessionals** | | **571.97** | | |

# EXHIBIT 2

## FEE SUMMARY BY CATEGORY BY MONTH

| CATEGORY | APRIL | MAY | JUNE | TOTAL |
|---|---|---|---|---|
| Asset Analysis | $      0.00 | $    975.50 | $    579.50 | $    1,555.00 |
| Asset Disposition | $  5,516.00 | $ 3,678.50 | $      0.00 | $    9,194.50 |
| Bankruptcy Litigation | $ 80,177.00 | $ 4,724.00 | $ 4,335.00 | $ 89,236.00 |
| Case Administration | $ 12,452.00 | $ 4,926.50 | $ 2,029.00 | $ 19,407.50 |
| Claims Analysis/Objection | $  1,517.50 | $11,942.50 | $18,769.00 | $ 32,229.00 |
| Compensation of Professionals | $      0.00 | $12,758.50 | $    445.50 | $ 13,204.00 |
| Compensation of Professionals/Others | $ 17,194.50 | $ 2,393.50 | $ 2,989.50 | $ 22,577.50 |
| Employee Benefit/Pension | $  5,733.50 | $ 6,444.50 | $    505.50 | $ 12,683.50 |
| Executory Contracts | $      0.00 | $      0.00 | $ 2,946.00 | $    2,946.00 |
| Fee/Employment Applications | $      0.00 | $      0.00 | $ 5,920.50 | $    5,920.50 |
| First Day | $ 23,769.00 | $    357.00 | $      0.00 | $ 24,126.00 |
| Financial Filings | $111,993.50 | $ 8,059.50 | $23,738.00 | $143,791.00 |
| Financing | $ 62,861.50 | $ 5,126.00 | $12,861.00 | $ 80,848.50 |
| General Creditors' Committee | $      0.00 | $    560.50 | $ 3,666.00 | $    4,226.50 |
| General Business Advice | $    654.50 | $      0.00 | $      0.00 | $    654.50 |
| Hearings | $ 37,458.00 | $10,784.50 | $ 4,659.00 | $ 52,901.50 |
| Insurance Coverage | $      0.00 | $      0.00 | $ 1,552.50 | $    1,552.50 |
| Litigation (Non-Bankruptcy) | $      0.00 | $      0.00 | $    238.50 | $    238.50 |
| Meeting of Creditors | $  6,554.00 | $ 4,999.50 | $      0.00 | $ 11,553.50 |
| Operations | $ 28,778.00 | $28,507.00 | $16,808.50 | $ 74,093.50 |
| Plan and Disclosure Statement | $ 12,427.00 | $64,217.00 | $50,795.00 | $127,439.00 |
| Retention of Professionals | $  6,371.00 | $15,292.50 | $      0.00 | $ 21,663.50 |
| Retention of Professionals/Other | $ 45,391.50 | $21,794.50 | $ 4,011.00 | $ 71,197.00 |
| Stay Litigation | $  1,486.00 | $      0.00 | $ 9,157.50 | $ 10,643.50 |
| Tax Issues | $  3,020.00 | $ 1,021.00 | $      0.00 | $    4,041.00 |
| Travel | $ 19,055.50 | $ 3,391.50 | $ 4,879.00 | $ 27,326.00 |
| **TOTAL** | **$482,410.00** | **$211,954.00** | **$170,885.50** | **$865,249.50** |

# EXHIBIT 3

## EXPENSES SUMMARY

| CATEGORY | APRIL | MAY | JUNE | TOTAL |
|---|---|---|---|---|
| Air Fare | $ 1,370.80 | $1,659.00 | $    0.00 | $ 3,029.80 |
| Airport Parking | $    0.00 | $   90.00 | $    0.00 | $    90.00 |
| Auto Travel Expense | $  600.77 | $   39.00 | $  527.00 | $ 1,166.77 |
| Working Meals | $  263.50 | $  146.01 | $  166.91 | $   576.42 |
| Conference Call | $    0.00 | $  328.68 | $  147.90 | $   476.58 |
| Court Call | $    0.00 | $  133.50 | $    0.00 | $   133.50 |
| Outgoing Facsimile | $    0.00 | $   31.00 | $    0.00 | $    31.00 |
| FedEx | $ 1,082.56 | $    0.00 | $  235.34 | $ 1,317.90 |
| Guest Parking | $   48.00 | $    0.00 | $    0.00 | $    48.00 |
| Hotel Expense | $  733.80 | $2,438.40 | $    0.00 | $ 3,172.20 |
| Incoming Facsimile | $    .20 | $    4.20 | $    .40 | $    4.80 |
| In-House Messenger Service | $  127.00 | $    0.00 | $   51.00 | $   178.00 |
| Lexis/Nexis Legal Research | $ 2,062.64 | $1,090.44 | $   91.80 | $ 3,244.88 |
| Outside Services | $ 1,019.27 | $  990.00 | $    0.00 | $ 2,009.27 |
| Pacer | $  483.12 | $  390.16 | $  252.40 | $ 1,125.68 |
| Postage | $  539.22 | $  195.39 | $    0.00 | $   734.61 |
| Reproduction Expense | $11,849.80 | $2,276.80 | $  664.60 | $14,791.20 |
| Reproduction / Scan Copy | $ 1,109.20 | $  514.50 | $  240.40 | $ 1,864.10 |
| Travel Expense | $  231.23 | $  544.55 | $  942.40 | $ 1,718.18 |
| Transcript | $    0.00 | $    0.00 | $1,156.75 | $ 1,156.75 |
| Westlaw Legal Research | $  289.62 | $  406.04 | $  962.96 | $ 1,658.62 |
| **TOTAL** | **$21,810.73** | **$11,277.67** | **$5,439.86** | **$38,528.26** |

# EXHIBIT 4

## DEBTOR BY DEBTOR SUMMARY

Jointly Administered (All Debtors)

| Category | |
|---|---|
| Asset Analysis | $930.50 |
| Asset Disposition | $7,655.00 |
| Bankruptcy Litigation | $86,707.00 |
| Case Administration | $19,407.50 |
| Claims Analysis/ Objection | $26,367.50 |
| Compensation of Professionals | $13,204.00 |
| Compensation of Professionals (Other) | $22,577.50 |
| Employee Benefits/ Pension | $12,683.50 |
| Executory Contracts | $2,946.00 |
| Fee/ Employment Application | $5,920.50 |
| First Day | $23,769.00 |
| Financial Filings | $80,640.00 |
| Financing | $80,848.50 |
| General Creditors' Committee | $4,226.50 |
| General Business Advice | |
| Hearing | $52,901.50 |
| Insurance Coverage | $1,552.50 |
| Litigation (Non-Bankruptcy) | |
| Meeting of Creditors | $11,553.50 |
| Operations | $56,654.00 |
| Plan and Disclosure Statement | $127,121.00 |
| Retention of Professionals | $21,663.50 |
| Reetention of Professionals (Other) | $71,197.00 |
| Stay Litigation | $1,486.00 |
| Tax Issues | $4,041.00 |
| Travel | $27,326.00 |
| **TOTAL** | **$763,379.00** |

Individual Debtors

| Debtor | Category | Asset Analysis | Asset Disposition | Bankruptcy Litigation | Claims Analysis/ Objection | First Day | Financial Filings | General Business Advice | Insurance Coverage | Litigation (Non-Bankruptcy) | Operations | Plan and Disclosure Statement | Stay Litigation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LC | | | | | 213.00 | | 1,977.50 | | | | | | |
| | | | | | 135.00 | | 1,274.50 | | | | | | 1,57... |
| | | | | 1,194.00 | 180.00 | | 1,998.50 | | | | | | |
| | | | | | 180.00 | | 1,983.50 | | | | | | |
| s. | | | | | 135.00 | | 1,344.50 | | | | | | |
| s, Inc. | | | | | 135.00 | | 2,007.50 | | | | | | |
| Nevada Limited Partnership | | | | | 135.00 | | 1,334.00 | | | | | | |
| g, LLC | | | | | 180.00 | | 1,838.50 | | | | | | |
| | | | | | 135.00 | | 2,164.00 | | | | | | |
| LLC | | | | | 180.00 | | 1,811.50 | | | | | | |
| pany, LLC | | | | | 135.00 | | 2,840.50 | | | | | 318.00 | |
| | | | | | 135.00 | | 1,241.00 | | | | | | |
| | | | | | 135.00 | | 1,890.50 | | | | | | |
| | | | | | 135.00 | | 1,896.50 | | | | | | |
| | | | | | 180.00 | | 2,390.00 | | | | | | |
| LC | | | | | 238.50 | 357.00 | 2,123.00 | | | | 297.50 | | |
| perties, LLC | | | | | 180.00 | | 2,304.50 | | | | | | |
| Development Corporation | | | | 902.50 | 372.50 | | 2,996.00 | | | 238.50 | | | |
| zona, LLC | | | | 432.50 | 373.50 | | 3,810.50 | 654.50 | | | 8,930.00 | | |
| eral Partnership | | 45.00 | 1,539.50 | | 180.00 | | 2,547.50 | | | | 7,339.00 | | |
| and Country Club | | | | | 180.00 | | 2,048.00 | | | | | | |
| | | | | | 180.00 | | 1,752.50 | | | | | | |
| gs, LLC | | | | | 180.00 | | 2,558.50 | | | | | | |
| nies, LLC | | | | | 180.00 | | 1,060.00 | | | | | | |
| | | | | | 135.00 | | 1,099.00 | | | | | | |
| LC | | | | | 180.00 | | 1,794.50 | | | | | | |
| ns II, LLC | | | | | 180.00 | | 2,208.50 | | | | | | |
| ns III, LLC | | | | | 180.00 | | 1,765.00 | | | | | | |
| ns IV, LLC | | | | | 180.00 | | 1,874.50 | | | | | | |
| ns, LLC | | 579.50 | | | 180.00 | | 2,069.00 | | | | | | |
| try Club, LLC | | | | | 299.00 | | 2,157.50 | | | | 873.00 | | |
| | | | | | 135.00 | | 990.00 | | | | | | |
| | | 624.50 | 1,539.50 | 2,529.00 | 5,861.50 | 357.00 | 63,151.00 | 654.50 | 0.00 | 238.50 | 17,439.50 | 318.00 | 9,177.50 |

S_LA20660 7v1