Sullivan Group Real Estate Advisors, LLC  
c/o Tim Sullivan  
12555 High Bluff Drive Suite #210  
San Diego, CA 92130  
Telephone: 858-523-1443  
Facsimile: 858-523-1454  
Email: t.sullivan@sgrea.com  

E-File: <u>August 14</u>, 2009

Market Research Consultants for Debtors and
Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br><br>Debtors. | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11 |
| Affects:<br>☒    All Debtors<br>☐    Affects the following Debtor(s) | Hearing Date:  October 2, 2009<br>Hearing Time:  1:30 p.m.<br>Courtroom 1 |

**FIRST INTERIM APPLICATION OF SULLIVAN GROUP REAL ESTATE ADVISORS FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS MARKET RESEARCH CONSULTANTS TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD MARCH 31, 2009 THROUGH JUNE 30, 2009**

---

[1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

**TO THE HONORABLE LINDA B. RIEGLE, UNITED STATES BANKRUPTCY JUDGE:**

By this Application, Sullivan Real Estate Advisors ("SGREA" of the "Firm"), as market research consultants for the debtors and debtors in possession in the above-captioned cases (the "Debtors"), respectfully applies for an order of this Court: (1) allowing interim compensation to SGREA for services rendered and expenses incurred in its representation of the Debtors during the period from March 31, 2009 through June 30, 2009 (the "Interim Period"), in the total amount of $67,343.19, comprising services rendered in the amount of $66,025.00 and expenses incurred in the amount of $1318.19; (ii) authorizing the Debtors to pay SGREA the unpaid balance of that amount, $67,343.19; and (iii) granting any other relief that this Court deems necessary and appropriate (the "Application").

SGREA submits this Application in accordance with the "Order Granting Debtors' Motion for Administrative Order Pursuant to Sections 105(A) and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016 Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals", entered May 18, 2009 (the "Administrative Order"), 11 U.S.C. §331, Rules 2002(a)(6) and 2016 of the Federal Rules of Bankruptcy Procedure, LR 2016, and the Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses Filed Under 11 U.S.C. §330 (the "Fee Guidelines"). In support of this Application, SGREA respectfully represents and shows as follows:

**I.**

**SUMMARY OF SGREA ENGAGEMENT.**

SGREA is a national firm that specializes in real estate market feasibility, revenue projections, strategic planning and in-depth analysis for the nations housing industry —all of which are areas in which SGREA consultants have extensive experience. In the insolvency area, SGREA represents debtors, creditors, equity holders, committees, trustees, landlords, potential acquirers of assets, and other parties with interests in financially distressed real estate assets and businesses. SGREA has offices in San Diego and Sacramento, and handles matters throughout the United States.

1    Pursuant to the "Order Granting Application of Debtors and Debtors in Possession to

2  Employ Sullivan Group Real Estate Advisors as Market Research Consultants *Nunc Pro Tunc* to

3  the Petition Date, ", entered on May 11, 2009, this Court authorized the Debtors to employ

4  SGREA as consultants in these proceedings.

5    As set forth herein, the SGREA consultants who have been principally responsible for

6  rendering services to the Debtors during the Interim Period have been Timothy Sullivan, Ken

7  Perlman, Shaun McCutcheon, Jeff Edinger and  Jonathan Schwartz.  Other SGREA consultants

8  and staff rendered services as needed.  In general, tasks have been allocated among SGREA's

9  consultants based upon the comparative expertise of a particular consultant in various aspects of

10  these cases.  Whenever feasible, work was allocated to consultants with lower hourly rates.

11  SGREA believes that it provided services were provided in an efficient and economic manner.

12    The following exhibits covering the Interim Period are annexed to this Application:

13    Exhibit 1 is a summary of the background and qualifications of the key SGREA

14  consultants who rendered services to the Debtors.

15    Exhibit 2 lists the billing rates for all SGREA professionals who rendered services to the

16  Debtors, and a summary of the hours billed and fees incurred on behalf of the Debtors by each

17  of those persons.

18    Exhibit 3 contains a summary of the total fees incurred for each activity category on a

19  monthly basis.

20    Exhibit 4 contains a summary of the total expenses incurred for each of the expense

21  categories on a monthly basis.

22    Exhibit 5 contains copies of invoices and a recap of payments made to-date.

23                                II.

24              **SUMMARY OF COMPENSATION REQUEST**

25    As set forth in Exhibit 5, during the Interim Period, SGREA incurred $66,025.00 in fees,

26  representing 376 hours of service, and $1,318.19 in costs and expenses.  SGREA served

27  Monthly Statement for the months of April, May and June, 2009.  No party objected to the

28  Monthly Statements  and the Debtors are processing payment to  SGREA for the eighty-five

1  percent (85%) of fees and one-hundred (100%) of costs, in the amount of $57,439.44, in

2  accordance with the Administrative Order, though it has not been received as of the filing date.

3  Debtor has had an opportunity to review our interim billing summary and has provided

4  approval. As of the date hereof, the accumulative balance owed to SGREA for services rendered

5  and costs incurred during the Interim Period is $67,343.19. A retainer of $47,500.00 will

6  continue to be held subject to future invoicing and approvals per the court.

7      The following table summarizes the monthly fees and expenses incurred and payments

8  made to SGREA during the Interim Period:

| Period | Fees and Expenses Incurred | Invoice Payment Received | Amount Owed |
|---|---|---|---|
| April | Fees: $17,425.00 Exp: $1,318.19 | $0.00 | $18,743.19 |
| May | Fees: $14,725.00 | $0.00 | $14,725.00 |
| June | Fees: $33,875.00 | $0.00 | $33,875.00 |
| Totals: | $67,343.19 | $0.00 | $67,343.19 |

23      Except as otherwise set forth in this Application, no payments have been made or

24  promised to SGREA for services rendered or to be rendered in any capacity whatsoever in

25  connection with these cases other than as may be authorized upon application to and order of

26  this Court. Neither SGREA nor any shareholders or associates of the Firm has any agreement or

27  any understanding of any kind or nature to divide, pay over, or share any portion of the fees to

28  be awarded with any other person or firm.

### III.

### GENERAL BACKGROUND AND NARRATIVE HISTORY OF CASE

A.    **General Background.**

Sullivan Group was engaged by Debtor March 31, 2009 to serve as a independent third party market research consultant working in collaboration with a valuation expert. Because of its market research and real estate expertise, SGREA, was engaged to determine which homes and lots would be built out and sold over what time period and at what price. SGREA's primary role was in the projection of revenues for Debtor's real estate holdings. Sullivan's services for the Debtors were essential to the valuation process, which is crucial to providing the financial information and evidence necessary for plan confirmation. As a result, Sullivan's retention by the estates was necessary to enable the Debtors to execute their duties as debtors in possession, including maximizing value to their creditors.

### V.

### SUMMARY OF SERVICES RENDERED

A.    **Project Billing and Narrative Statement of Services**

In accordance with the Fee Guidelines, SGREA classified all services performed for which compensation is being sought into categories. SGREA attempted to place the services performed for which compensation in the category that best relates to the service provided. However, because certain services may relate to one or more categories, services pertaining to one category may, in fact, be included in another category. SGREA has established the following billing categories and used such categories in these cases:

| Categories | Hours | Fees |
|---|---|---|
| Asset Analysis | 359 | $62,200.00 |
| Compensation of Professional | 12 | $2,700.00 |
| Retention of Professional | 5 | $1,125.00 |
| | | |
| Total Fees:[2] | 376 | $66,025.00 |

**B.     Asset Analysis**

This category related to issues regarding asset analysis.  During the Interim Period, SGREA, performed among other things:  (1) market research and comparable data review, (2) analysis of home price trends and historic appreciation, (3) testing and adjusting proforma assumptions, (4) model creation and adjustment (5) product recommendations and conclusions, (6) fieldwork, travel and property site visits, and (7) litigation support and document review

For the Interim Period SGREA is requesting:

Fees:  $62,200.00              Hours: 359

**C.     Compensation of Professionals**

This category related to issues regarding the compensation of SGREA. During the Interim Period, SGREA, among other things:  (1) performed work regarding preparation and service of monthly fee statements for April, May and June 2009.

For the Interim Period SGREA is requesting:

Fees:  $      2,7000.00     Hours: 12

**D.     Retention of Professionals**

1    This category related to issues regarding retention of the Firm. During the Interim

2  Period, SGREA, among other things:  (1) performed work regarding the Firm's retention

3  application; (2) reviewed and analyzed objections to its application; (3) performed research;.

4    For the Interim Period SGREA is requesting:

5    Fees:  $1,125.00            Hours: 5

6    **V.**

7    **SUMMARY OF COSTS AND EXPENSES**

8    The Fee Guidelines require that an application seeking reimbursement of expense include

9  a summary listing of all expenses by category and month.  Accordingly, annexed hereto as

10  Exhibit 4 is a summary of the total reimbursable expenses incurred by SGREA on a monthly

11  basis during the Interim Period broken down by expense category.  The total costs and expenses

12  incurred during the Interim Period for which SGREA seeks reimbursement is $1,318.19.

13    To assist the Court in reviewing SGREA's request for reimbursement of the expenses

14  incurred in connection with its representation of the Debtors during the Interim Period, SGREA's

15  accounting procedures for the general categories of costs and expenses for which it seeks

16  reimbursement by this Application are described below.  The majority of the requested expenses

17  are charged at rates customarily applied to SGREA's non-debtor clients

18    **A.    Air Fare**
      The Firm attempts to travel at coach rates when possible.  The total expenses in this
19  expense category for the Interim Period were $915.60.

20    **B.    Parking & Tolls**
      The total expenses in this expense category for the Interim Period were $21.00.
21

22    **C.    Auto Travel Expense**
      The total expenses in this expense category for the Interim Period were $327.11.
23

      **D.    Working Meals**
24      The total expenses in this expense category for the Interim Period were $34.06.

25    **E.    Federal Express**
      When the exigencies require, the Firm used messenger and overnight courier services,
26  such as Federal Express, to deliver documents.  The Firm charges its clients for the actual costs
    of such services.  The total expenses in this expense category for the Interim Period were $20.42.
27

28

**VI.**

**THE FEES AND EXPENSES REQUESTED SHOULD BE AWARDED**

**BASED UPON APPLICABLE LAW**

The fees and expenses requested by this Application are an appropriate award for SGREA's services in acting as consultant to the Debtors.

**A.    Factors in Evaluating Requests for Compensation**

Pursuant to section 330 of the Bankruptcy Code, the Court may award to a professional person, reasonable compensation for actual, necessary services rendered, and reimbursement for actual, necessary expenses incurred.  11 U.S.C. § 330.  As set forth above, the fees for which the Firm requests compensation and the costs incurred for which the Firm requests reimbursement are for actual and necessary services rendered and costs incurred.

The professional services rendered by the Firm have required an expenditure of substantial time and effort.  During the Fee Period, in excess of 376 hours have been recorded by members of the Firm, and additional hours of work were incurred and was written off.  The Firm's blended hourly rate in this case for the Fee Period, excluding write-offs but including administrative support is $176.00.

Moreover, time and labor devoted is only one of many pertinent factors in determining an award of fees and costs.  Based on the skills brought to bear in this case by the Firm and the results obtained and in light of the accepted lodestar approach, the Firm submits that the compensation requested herein is reasonable and appropriate.

**B.    The Lodestar Award Should Be Calculated by**
**Multiplying a Reasonable Hourly Rate by the Hours Expended**

In determining the amount of allowable fees under section 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters."  *Burgess v. Klenske (In re Manoa Finance Co.)*, 853 F.2d 687, 691 (9th Cir. 1988); *see also* In re Schaeffer, 71 B.R. 559, 563 (Bankr. S.D. Ohio 1987).

1    Twelve factors relevant to determining such fees were identified in Johnson v. Georgia

2    Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974) (a Title VII class action case

3    under the Civil Rights Act of 1964), and Kerr v. Screen Extras Guild, Inc., 526 F. 2d 67, 70 (9th

4    Cir. 1975):  (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the

5    skill requisite to perform the service properly, (4) the preclusion of other employment by the

6    professional due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or

7    contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount

8    involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10)

9    the undesirability of the case, (11) the nature and length of the professional relationship with the

10   client, and (12) awards in similar cases.  *See American Benefit Life v. Baddock (In re First*

11   *Colonial Corp.)*, 544 F.2d 1291 (5th Cir. 1977) (Johnson criteria applicable in bankruptcy cases).

12   While the Johnson and Kerr courts only offered guidelines as to relevant factors, in 1984,

13   the Supreme Court, in enunciating guidelines to determine reasonable fees under the Civil Rights

14   Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, held:

15         The initial estimate of a reasonable attorney's fee is properly
16         calculated by multiplying the number of hours reasonably
           expended on the litigation times a reasonable hourly rate.
17         Adjustments to that fee then may be made as necessary in the
           particular case.
18

19   *Blum vs. Stenson*, 465 U.S. 886 (1984) (citation omitted)..  This is the so-called "lodestar"

20   calculation.  We believe similar methodology can be justified in calculating professional fees tied

21   to market research consultation.

22   In 1986, the Supreme Court more explicitly indicated that the factors relevant to

23   determining fees should be applied using the lodestar approach, rather than an ad hoc approach.

24   While holding that the attorneys' fee provision of the Clean Air Act, 42 U.S.C. § 7401 et seq.,

25   should be interpreted like that of the Civil Rights Act, the Court expressly rejected the ad hoc

26   application of the factors set forth in *Johnson* and thus *Kerr*, stating that, "the lodestar figure

27   includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee  . . ."

28   *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-66 (1986).

9

1    While the lodestar approach is the primary basis for determining fee awards under the

2  federal fee-shifting statutes and under the Bankruptcy Code, the other factors, previously applied

3  in an ad hoc fashion, still apply in calculating the appropriate hourly rate to use under the

4  lodestar approach.  For example, when, in *Boddy v. Bankruptcy Court (In re Boddy)*, 950 F.2d

5  334, 337 (6th Cir. 1991), the Sixth Circuit Court of Appeals rejected an approach to fees (in

6  chapter 13 cases) that dictated only a "normal and customary" fee should be awarded absent

7  exceptional results, the Sixth Circuit nonetheless acknowledged that:

> The court can legitimately take into account the typical compensation that is adequate for attorney's fees in Chapter 13 cases, as long as it expressly discusses these factors in light of the reasonable hours worked and a reasonable hourly rate.  The bankruptcy court also may exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area.

14  950 F.2d at 338.  Thus, the twelve oft-cited Johnson and Kerr factors remain relevant for

15  determination of professional fees in a bankruptcy.

16  **C.    The Time and Labor Required**

17    The time for which compensation is sought is set forth, in detail, in the Firm's

18  professional fee statements contained in the exhibits hereto.  In light of the scope of services

19  rendered and the results achieved during the Fee Period, the Firm's services and time

20  expenditures are reasonable.

21  **D.    The Novelty and Difficulty of the Questions Involved**

22    The case included a number of matters and issues requiring a high degree of knowledge

23  and skill.

24  **E.    The Skill Requisite to Perform the Legal Services Properly**

25    The Firm believes its professionals have exhibited a high level of skill in representing the

26  Debtors and dealing with issues and disputes regarding investigation of assets.

**F.      The Preclusion of Other Employment by the
         Professional Due to the Acceptance of the Case**

      The case involved a number of matters and issues that required substantial amounts of time clearly precluding the acceptance of alternative employment as to the many hours worked.

**G.      The Customary Fee**

      The compensation the Firm seeks by way of this Application is the customary compensation sought by the Firm and other professionals representing trustees, committees, and debtors in similar circumstances.

**H.      Whether the Fee Is Fixed or Contingent**

      The Firm seeks fixed compensation based on the lodestar formula, which it believes is appropriate in this case.

**I.      Time Limitations Imposed by the Circumstances**

      The time demands on the Firm have varied during the Fee Period, and have included some periods of time where the Firm's attorneys had to work very extensive hours for a number of the matters that arose during the Fee Period.

**J.      The Amount Involved and the Results Obtained**

      The Firm obtained excellent results for its work and the amounts incurred were reasonable and appropriate.

**K.      The Experience, Reputation and Abilities of the Firm**

      The experience, reputation, and abilities of the Firm's professionals are well known and respected in this community.

**L.      The Undesirability of This Case**

      This case was not undesirable.

**M.      The Nature and Length of the Professional Relationship with the Client**

      Applicant has provided real estate consulting services to the Debtors since 2007.

**N.      Awards in Similar Cases**

      The award Applicant seeks in this case is similar to awards that professional has received in similar cases.  Exhibit 5 is a copy of the Firm's time reports and records kept in the regular course of business reflecting the services rendered and the expenses incurred by the Applicant

1  during the Fee Period.  The Applicant's time reports are initially handwritten or recorded on tape

2  by the consultant performing the described services.  The time reports are organized on a daily

3  basis.  The Applicant's charges for its professional services are based upon the time, nature,

4  extent and value of such services, and the cost of comparable services in this area, other than in a

5  case under the Bankruptcy Code.

6          The Firm's charges for its professional services are based upon the time, nature, extent

7  and value of such services, and the cost of comparable services in the San Diego and Las Vegas

8  area other than in a case under the Bankruptcy Code.  The requested fees and expenses shall be

9  paid from the estate only as and when funds are available.

10                                              **VII**

11                                      **CONCLUSION**

12          SGREA believes that the services rendered for which compensation is sought by this

13  Application have been beneficial to the estate, that the costs incurred have been necessary and

14  proper, and that the sums requested for the services rendered and costs incurred are fair and

15  reasonable.

16          The interim compensation sought in this Application is not final.  Upon the conclusion of

17  this case, SGREA will seek final approval of fees and costs for the totality of the services

18  rendered in this case.  Any interim fees approved by the Court and received by SGREA will be

19  credited against such final fees and costs as this Court may allow.

20

21

22

23

24

25

26

27

28

1    WHEREFORE, SGREA respectfully requests that this Court, issues an order: (i)

2  allowing SGREA interim compensation for services rendered and expenses incurred during the

3  Interim Period in the amount of $67,343.19, representing services rendered in the amount of

4  $66,025.00 and expenses incurred in the amount of $1,318.19; (ii) authorizing and directing the

5  Debtors to pay the unpaid balance of that amount, $67,343.19 to SGREA; and (iii) granting such

6  other relief as the Court deems necessary and appropriate.

7

8  **DATED** this 12 day of Aug , 2009.

9

10                                             **Sullivan Group Real Estate Advisors**

11

12                                             Timothy Sullivan
                                               President
13                                             12555 Highbluff Drive Suite 210
                                               San Diego, CA 92130
14                                             Telephone: 858-523-1443
                                               Facsimile: 858-523-1445
15                                             Email: t.sullivan@sgrea.com

16
                                               Consultants for Debtors and Debtors in
17                                             Possession

18

19

20

21

22

23

24

25

26

27

28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**
**SGREA CONSULTANTS SUMMARY OF QUALIFICATIONS**



# EXHIBIT 1
## SGREA CONSULTANTS SUMMARY OF QUALIFICATIONS

**Tim Sullivan, President**
As President of Sullivan Group Real Estate Advisors, Tim Sullivan has more than 25 years experience in developing growth strategies for the residential real estate market. Whether defining geographic market opportunities, conceptualizing community design or honing product, pricing and absorption potential, Tim has guided financial partners and major homebuilding companies from inception to completion with unparalleled success.

Tim has developed the ability to interpret diverse statistics and trends and translate them into actionable plans. As the founder of Sullivan Group, Tim's personal commitment to his clients is to constantly assess the economy, housing market and consumer trends to identify the newest and best ways to build great places.

Over the past 15 years, Tim has become a frequent speaker at major industry events. From Pacific Coast Builders Conference (PCBC) to Urban Land Institute's many venues to his company's own Sullivan Seminars, Tim shares his breadth of industry knowledge with the nation's housing market on an ongoing basis. He is the Chair of ULI's Residential Neighborhood Development Council and the Moderator of PCBC's annual Leader to Leader program. He is also the PCBC Program Committee Chair for 2008 and 2009 and has served as Master of Ceremonies for PCBC's Gold Nugget Awards and NAHB Nationals since 2007.

During his career, Tim was senior manager with KPMG Peat Marwick's National Real Estate Consulting Group before serving as principal of Hanley Wood Market Intelligence's (formerly The Meyers Group) Real Estate Consulting Practice for a decade. He earned an MBA with a concentration in marketing and finance from San Diego State University, and a bachelor's degree in economics from University of California, San Diego. He also holds a MIRM (Member of the Institute of Residential Marketing) from the National Association of Home Builders.

**Ken Perlman, Vice President**



As a seasoned analyst with over 15 years of experience, Ken Perlman, Vice President of Sullivan Group Real Estate Advisors, has traveled extensively throughout the United States assessing the nation's housing industry. While he has contributed to analyses in multiple states and has consulted with builders regarding strategic expansion opportunities over the years, his particular expertise lies with compiling and analyzing market, economic, and financial data for project feasibility and valuation studies.

Having grown up surrounded by real estate, with a father who was a city planner and who was later involved in acquisitions and entitlement work, Ken had a natural inclination toward the real estate field. Today, he enjoys taking disparate statistics and making them all come together in a way that leads to an interesting, and unique, conclusion for his clients. With his exceptional analytical skills, Ken ensures that clients walk away from an assignment confident that he added value to their project and that the conclusions he draws make their products better.

Having started his career at Grubb & Ellis Commercial Real Estate, Ken later moved to Hanley Wood Market Intelligence's (formerly The Meyers Group) Real Estate Consulting Practice prior

to joining Sullivan Group. He received his MBA from the University of San Diego, and a BA in Urban Studies & Planning from the University of California, San Diego.

**Scott Martin, Vice President**

As Vice President of Sullivan Group Real Estate Advisors, Scott Martin brings his vast know-how in analyzing market data, combined with over 14 years experience in real estate finance and management, to lead the firm in its client engagements and operations alike. He has a knack for taking a myriad of data sources and synthesizing them to draw meaningful conclusions.  In addition to directing analyses of residential projects, Scott leads the firm's economic analysis efforts, providing insight into local, regional, and national market conditions.

Because real estate has always been a part of Scott's life – with a family who has been involved in commercial and residential real estate sales and development since the 1950s – he has, by default, always been a student of the many facets of real estate. From Senior Loan Officer for Bank of America to Vice President of Research for Hanley Wood Market Intelligence (formerly The Meyers Group) in previous roles, Scott's market research efforts and the cities he has studied span the country.

Scott's commitment to his clients is to share accurate, insightful market knowledge to assist them in adding value to their companies and to the communities they serve. He graduated from the University of California, Santa Barbara with a BA in Business Economics.

**Dean Wehrli, Vice President**

Dean Wehrli, as Vice President of Sullivan Group Real Estate Advisors, heads up the firm's Sacramento office, where he handles all client engagements in the Bay Area, Sacramento, the Central Valley, and Northern Nevada. His work has spanned 20 states and over 50 markets, and his experience as a seasoned analyst is just as widespread. From a few lots of multi-million dollar custom homes to a 7,000 unit multi-product master plan and everything in between, Dean has consulted on all product types. With his many assignments, his analysis has included pricing, absorption, buyer profiles, product segmentation, economic and demographic impacts, aggregate housing market data, and product recommendations.

After a long history in academia, as a PhD and educator, Dean gravitated toward real estate consulting because it gave him an opportunity to carry over his research, writing and analytic skills to a new and exciting industry. Since then, he continues to enjoy problem solving – assessing a situation and figuring out what works and what may not – and applying that to real life. He is committed to bringing his clients an honest evaluation of a proposed project, without letting outside influences or "conventional wisdom" dictate what he believes to be the right course.

Like his colleagues, Dean spent many years at Hanley Wood Market Intelligence (formerly The Meyers Group) first as a senior consultant and then Managing Director of their Sacramento office. After a brief stint with Metro Study as Director of Northern California operations, he joined Sullivan Group Advisors just after its inception. He received his PhD from UCLA and his BA from Cal State Fullerton.

**Peter Dennehy, Senior Vice President**

Peter Dennehy is Senior Vice President of Sullivan Group Real Estate Advisors and spearheads the firm's client engagements, whether managing market research efforts, conducting public policy research and analysis, or relating market positioning and strategy recommendations. With over 16 years experience in the real estate advisory field, he has consulted on a wide array of residential and commercial properties, from condominiums and single-family dwellings to master planned communities and resorts.

Peter's interest in the real estate process began when he interned with the City of Pasadena doing research on historic sites. There, he was exposed to the community planning and redevelopment process – which later became the initial stages of the Old Town Pasadena redevelopment area. This experience, among others, has contributed to Peter's penchant for seeing communities develop and redevelop. And with his vast experience in the area, Peter is committed to bringing lessons learned of the past to bear positively on client projects of today.

Previously, Peter worked for The Meyers Group and Robert Charles Lesser & Co. His consulting activities have spanned most major real estate markets in California, Arizona and the Pacific Northwest, with a particular expertise in the areas of urban development, in analyzing and projecting the build-out of large scale residential and commercial projects, and issuing land-secured special tax financing.

As a member of the San Diego Chapter of Urban Land Institute and Treasurer of BIA's Cares For Kids Board, Peter is also actively involved in his community. He earned his Juris Doctorate from University of San Diego's School of Law, and his BA in Government/Public Policy from Pomona College.

**Adam McAbee, Vice President**



With more than 13 years experience in the real estate industry, Adam McAbee, Vice President of Sullivan Group Real Estate Advisors, oversees the group's client engagements on a day to day basis. Having worked in over 25 states nationwide, he has a particular expertise in analyzing urban development (such as high-rise and infill housing) as well as directing analyses in resort markets such as Hawaii, Florida, Utah, Mexico, and Costa Rica.

When Adam first set his sights on real estate, it was during the housing boom in the late 1980s. Although the market bottomed out by the time he got out of college, Adam's career has since spanned the strongest run-up of market activity in recent history. With the unique perspective of seeing both ends of a market cycle, Adam strives to bring clients the most accurate and insightful information as possible, and has a keen eye toward the true nature of the market.

At the beginning of his career, Adam was a consultant with KPMG Peat Marwick's real estate consulting practice where he met Tim Sullivan. He later moved on to Hanley Wood Market Intelligence (formerly The Meyers Group) where he conducted real estate market research for nearly nine years (also with Tim). He received his BS in Business Administration (Real Estate) from San Diego State University, and has earned the designation of Certified New Home Marketing Professional from the National Association of Home Builders.

**<u>Jeff Edinger</u>**

Jeff is a senior analyst who has had extensive real estate experience and has been in the industry for over six years.

**Shaun McCutcheon**

Shaun is a senior analyst who has worked in the industry for over seven years.

**Jonathan Schwartz**

Jonathan, a senior analyst, has been serving the real estate industry for over seven years.

**Lisa Wells**

Lisa Wells has been an Executive Assistant with the team for over 15 years.

**EXHIBIT 2**

SGREA Billing Rates and Detail Time Recap

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**EXHIBIT #2**
SGREA Billing Rates

**PROFESSIONALS:**

| NAME | ABBREV | POSITION | RATE |
|------|--------|----------|------|
| Timothy Sullivan | TPS | President | $ 425.00 |
| Peter Dennehy | PFD | Senior Vice President | $ 225.00 |
| Kenneth Perlman | KP | Vice President | $ 225.00 |
| Adam McAbee | ATM | Vice President | $ 225.00 |
| Scott Martin | SRM | Vice President | $ 225.00 |
| Jonathan Schwartz | JTS | Senior Analyst | $ 150.00 |
| Jeffrey Edinger | JE | Senior Analyst | $ 150.00 |
| Dennis Cisterna | DC | Senior Analyst | $ 150.00 |
| Shaun McCutcheon | Shaun | Senior Analyst | $ 150.00 |
| Lisa Wells | LW | Executive Assistant | $  50.00 |

**Exhibit #2**
SGREA Time Detail

| Date | TPS (hrs) | KP (hrs) | JTS (hrs) | JE (hrs) | Shaun (hrs) | LW (hrs) | SRM (hrs) | TOTAL (hrs) | TPS ($) | KP ($) | JTS ($) | JE ($) | Shaun ($) | LW ($) | SRM ($) | TOTAL ($) | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (rate) | $425 | $225 | $150 | $150 | $150 | $50 | $225 | | | | | | | | | | |
| 4/3/09 | 1.0 | 1.0 | | | | | | 2.0 | $425 | $225 | | | | | | $650 | Conference call with project team |
| 4/9/09 | | 2.0 | | | | | | 2.0 | | $450 | | | | | | $450 | Meeting in Rhodes office to review documentation |
| 4/14/09 | 2.0 | 1.0 | | | | | | 3.0 | $850 | $225 | | | | | | $1,075 | Review of litigation support documents (send docs to Ken Wiles) |
| 4/20/09 | 1.0 | | 8.0 | | | | | 9.0 | $425 | | $1,200 | | | | | $1,625 | File review, data compilation; start work product |
| 4/21/09 | | | 2.0 | | | | | 2.0 | | | $300 | | | | | $300 | Data compilation; work product |
| 4/26/09 | | 3.0 | | | | | | 3.0 | | $675 | | | | | | $675 | Assess comparables (pull comps for each asset) |
| 4/27/09 | | | | 8.0 | | 4.0 | | 12.0 | | | | $1,200 | | $200 | | $1,400 | Assess Comps data/evaluating comps |
| 4/28/09 | 1.0 | 1.0 | | 8.0 | | | | 10.0 | $425 | $225 | | $1,200 | | | | $1,850 | Comps data/evaluating comps |
| 4/29/09 | 8.0 | 8.0 | | 8.0 | | | | 24.0 | $3,400 | $1,800 | | $1,200 | | | | $6,400 | Comps data/evaluating comps/Field Work (does not include travel time) |
| 4/30/09 | | 8.0 | | 8.0 | | | | 16.0 | | $1,800 | | $1,200 | | | | $3,000 | Fieldwork/subject property visits (does not include travel) |
| 5/1/09 | | 1.0 | | | | | | 1.0 | | $225 | | | | | | $225 | Interacting with attorney/comps data |
| 5/5/09 | | | | 8.0 | | | | 8.0 | | | | $1,200 | | | | $1,200 | Comps data/evaluating comps; RR and TS |
| 5/6/09 | 2.0 | 4.0 | | | | | | 6.0 | $850 | $900 | | | | | | $1,750 | Comps data/evaluating comps; RR and TS |
| 5/7/09 | 1.0 | | | 7.0 | | | 2.0 | 10.0 | $425 | | | $1,050 | | | $450 | $1,925 | Data downloads for market analysis |
| 5/8/09 | 1.0 | 1.0 | | 7.5 | | | | 9.5 | $425 | $225 | | $1,125 | | | | $1,775 | Comps data/evaluating comps; Preparation TPS Retention agreement |
| 5/11/09 | 1.0 | 1.0 | | 4.0 | | | | 6.0 | $425 | $225 | | $600 | | | | $1,250 | Comps data/evaluating comps |
| 5/12/09 | | | | 7.0 | | | | 7.0 | | | | $1,050 | | | | $1,050 | Update competitive market data/comps |
| 5/13/09 | | | | 7.0 | | | | 7.0 | | | | $1,050 | | | | $1,050 | Comps data/evaluating comps: RR, TS, other |
| 5/14/09 | | | | 8.0 | | | | 8.0 | | | | $1,200 | | | | $1,200 | Comps data/evaluating comps: RR, TS, other |
| 5/18/09 | | 2.0 | | 8.0 | | | | 10.0 | | $450 | | $1,200 | | | | $1,650 | Comps data/evaluating comps: Kingman |
| 5/19/09 | | 2.0 | | | | | | 2.0 | | $450 | | | | | | $450 | Comparables research |
| 5/20/09 | | 2.0 | | 5.0 | | | | 7.0 | | $450 | | $750 | | | | $1,200 | Comparables research |
| 6/3/09 | | | 1.0 | 6.5 | | | | 7.5 | | | $150 | $975 | | | | $1,125 | Comps research/data |
| 6/5/09 | | | | 1.5 | | | | 1.5 | | | | $225 | | | | $225 | Comparables research |
| 6/8/09 | | 3.0 | | 8.5 | 8.0 | | | 19.5 | | $675 | | $1,275 | $1,200 | | | $3,150 | Recs/build-out RR, Tuscany, MF Parcels, Kingman Data |
| 6/9/09 | | 8.0 | | 9.0 | 8.0 | | | 25.0 | | $1,800 | | $1,350 | $1,200 | | | $4,350 | Recs/build-out RR, Tuscany, MF Parcels, Kingman Data |
| 6/10/09 | | 8.0 | | 8.5 | 4.0 | | | 20.5 | | $1,800 | | $1,275 | $600 | | | $3,675 | Recs/build-out RR, Tuscany, MF Parcels, Kingman Data |
| 6/11/09 | | | | 9.0 | | | | 9.0 | | | | $1,350 | | | | $1,350 | Recs/build-out RR, Tuscany, MF Parcels |
| 6/12/09 | | | | 2.5 | | | | 2.5 | | | | $375 | | | | $375 | Recs/build-out RR, Tuscany, MF Parcels |
| 6/15/09 | | 5.0 | | 8.0 | 8.0 | | | 21.0 | | $1,125 | | $1,200 | $1,200 | | | $3,525 | Revised RR/TS product recs. Multi-family product recs |
| 6/16/09 | | | 3.5 | 7.0 | 6.0 | | | 16.5 | | | $525 | $1,050 | $900 | | | $2,475 | Revised RR/TS product recs. Multi-family product recs |
| 6/17/09 | | 6.0 | | 4.0 | 8.0 | | | 18.0 | | $1,350 | | $600 | $1,200 | | | $3,150 | Revised RR/TS product recs. Multi-family product recs |
| 6/18/09 | | 9.0 | 5.0 | 3.5 | 4.0 | | | 21.5 | | $2,025 | $750 | $525 | $600 | | | $3,900 | Revised RR/TS product recs. Multi-family product recs |
| 6/22/09 | | 8.0 | 8.0 | | | | | 16.0 | | $1,800 | $1,200 | | | | | $3,000 | Revised RR/TS product recs. Multi-family product recs |
| 6/23/09 | | 8.0 | | | | | | 8.0 | | $1,800 | | | | | | $1,800 | Revised RR/TS product recs. Multi-family product recs |
| 6/30/09 | 1.0 | 6.0 | | | | | | 7.0 | $425 | $1,350 | | | | | | $1,775 | Comps, data check, revision |
| **TOTAL** | 19.0 | 108.0 | 27.5 | 169.5 | 46.0 | 4.0 | 2.0 | 378.0 | $8,075 | $22,050 | $4,125 | $24,225 | $6,900 | $200 | $450 | $66,025 | |

1

## EXHIBIT 3

2

SGREA Fee Recap by Category

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**EXHIBIT #3**

SGREA Fees by Category

| CATEGORY | HRS | FEE |
|---|---|---|
| Asset Analysis | 359 | $ 62,200.00 |
| Retention of Professional | 5 | $ 1,125.00 |
| Compensation of Professional | 12 | $ 2,700.00 |
| Travel - non-working time | | |
| **TOTAL** | **376** | $ **66,025.00** |

**EXHIBIT 4**

SGREA Expense Recap by Category

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Exhibit 4**
SGREA Expense Recap

| Expense Date | Category1 | Notes | Vendor | Amount |
|---|---|---|---|---|
| 4/14/2009 | FedEx | Ken Wiles | FedEx | 21.50 |
| 4/18/2009 | FedEx | FedEx Ken Wiles | FedEx | (1.08) |
| | **FedEx Total** | | | **20.42** |
| 4/9/2009 | Travel - Airfare | airfare for fieldwork (KP) | Airline: Southwest | 305.20 |
| 4/22/2009 | Travel - Airfare | Rhodes | Southwest Airlines | 273.20 |
| 4/28/2009 | Travel - Airfare | Rhodes flight change | Southwest Airlines | 32.00 |
| 4/29/2009 | Travel - Airfare | airfare for Rhodes Homes fieldwork | Airline: Southwest | 305.20 |
| | **Travel - Airfare Total** | | | **915.60** |
| 4/29/2009 | Travel - Meal | Rhodes | Red Rock Café | 34.06 |
| | **Travel - Meal Total** | | | **34.06** |
| 4/29/2009 | Travel - Parking & Tolls | Rhodes | San Diego Airport | 21.00 |
| | **Travel - Parking & Tolls Total** | | | **21.00** |
| 4/2/2009 | Travel - Rental Car & Taxi | taxi from airport (KP) | Airport Taxi | 12.00 |
| 4/2/2009 | Travel - Rental Car & Taxi | rental car in field | Hertz | 140.61 |
| 4/29/2009 | Travel - Rental Car & Taxi | rental car in field: Rhodes fieldwork | Hertz | 174.50 |
| | **Travel - Rental Car & Taxi Total** | | | **327.11** |
| | Grand Total | | | **1,318.19** |



**EXHIBIT 5**

SGREA Billing Recap and Invoices

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT #5**
SGREA Billing and Payment Summary

| | |
|---|---|
| Name of Applicant: | Sullivan Group Real Estate Advisors |
| Role in Case: | Debtors Market Research Consultant |
| Case No: | BK-S-09-14814-LBR |
| Chapter | 11 |
| Debtor | The Rhodes Companies |
| Hearing Date: | October 2, 2009 at 1:30pm |
| Retainer Received | $47,500.00 |

**FEE RECAP**

**PAYMENT & BILLING RECONCILIATION**

| DESCRIPTION | PERIOD | BILLING | | | INITIAL (85% of fees & 100% of expenses - DUE 15 days after statement receipt & NO Notice of Objection) | | | | SECONDARY (Remaining Fees -DUE upon receipt of court order approving Interim Billing Application) | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | FEES INCURRED | EXPENSES INCURRED | TOTAL FEES AND EXPENSES INCURRED | INITIAL AMOUNT DUE | DUE DATE | PAYMENT RECEIVED | INITIAL BALANCE OUTSTANDING | DUE DATE | SECONDARY BALANCE OUTSTANDING | PAYMENT RECEIVED | TOTAL BALANCE OUTSTANDING |
| Monthly Statement | April 2009 | $ 17,425.00 | $ 1,318.19 | $ 18,743.19 | $ 16,129.44 | 6/4/2009 | $ - | $ 16,129.44 | 10/10/2009 | $ 2,613.75 | $ - | $ 18,743.19 |
| Monthly Statement | May 2009 | $ 14,725.00 | | $ 14,725.00 | $ 12,516.25 | 7/6/2009 | $ - | $ 12,516.25 | 10/10/2009 | $ 2,208.75 | $ - | $ 14,725.00 |
| Monthly Statement | June 2009 | $ 33,875.00 | | $ 33,875.00 | $ 28,793.75 | 8/4/2009 | $ - | $ 28,793.75 | 10/10/2009 | $ 5,081.25 | $ - | $ 33,875.00 |
| CURRENT APPLICATION REQUEST | | $ 66,025.00 | $ 1,318.19 | $ 67,343.19 | $ 57,439.44 | | $ - | $ 57,439.44 | | $ 9,903.75 | $ - | $ 67,343.19 |



**The Sullivan Group, LLC**
**12555 High Bluff Drive, Suite 210**
**San Diego, CA 92130**
**Phone: 858.523.1443**

**INVOICE**

| Invoice | LV103-09-001 |
|---|---|
| Date | 4/30/2009 |
| Page | 1 |

**Bill To:**

Rhodes Homes
Joe Schramm
4739 S. Fort Apache Springs, Suite 300
Las Vegas, NV  89147

| Study Number | Customer ID | Project Manager | Payment Terms | Phone | (702) 873-5338 |
|---|---|---|---|---|---|
| LV103-09 | Rhod605 | Ken Perlman | Upon Receipt | Fax | (702) 873-5129 |

| Description | Ext. Price |
|---|---|
| 1ST BILLING - MARKET OVERVIEW - APRIL BILLING - LAS VEGAS, NV | $17,425.00 |
| REIMBURSABLE EXPENSES | $1,318.19 |
| | |
| **Total** | $18,743.19 |

*Thank you for your business.*
*For billing questions, please contact Lisa Wells at (858) 523-1443, extension 114.*
*EIN 20-8221488*



**The Sullivan Group, LLC**
**12555 High Bluff Drive, Suite 210**
**San Diego, CA 92130**
**Phone: 858.523.1443**

## INVOICE

| Invoice | LV103-09-002 |
|---|---|
| Date | 5/29/2009 |
| Page | 2 |

**Bill To:**

Rhodes Homes
Joe Schramm
4739 S. Fort Apache Springs, Suite 300
Las Vegas, NV 89147

| Study Number | Customer ID | Project Manager | Payment Terms | Phone | (702) 873-5338 |
|---|---|---|---|---|---|
| LV103-09 | Rhod605 | Ken Perlman | Upon Receipt | Fax | (702) 873-5129 |

| Description | Ext. Price |
|---|---|
| 2ND BILLING - MARKET OVERVIEW - MAY BILLING - LAS VEGAS, NV | $14,725.00 |
| | |
| **Total** | $14,725.00 |

*Thank you for your business.*
*For billing questions, please contact Lisa Wells at (858) 523-1443, extension 114.*
*EIN 20-8221488*



### The Sullivan Group, LLC
**12555 High Bluff Drive, Suite 210**
**San Diego, CA 92130**
**Phone: 858.523.1443**

## INVOICE

| Invoice | LV179-09-002 |
| --- | --- |
| Date | 6/30/2009 |
| Page | 1 |

**Bill To:**

Rhodes Homes
Joe Schramm
4739 S. Fort Apache Springs, Suite 300
Las Vegas, NV  89147

| Study Number | Customer ID | Project Manager | Payment Terms | Phone | (702) 873-5338 |
| --- | --- | --- | --- | --- | --- |
| LV179-09 | Rhod605 | Ken Perlman | Upon Receipt | Fax | (702) 873-5129 |

| Description | Ext. Price |
| --- | --- |
| SINGLE BILLING - MARKET OVERVIEW - LAS VEGAS, NV | $33,875.00 |
| | |
| **Total** | **$33,875.00** |

*Thank you for your business.*
*For billing questions, please contact Lisa Wells at (858) 523-1443, extension 114.*
*EIN 20-8221488*

## DECLARATION OF TIMOTHY P. SULLIVAN

I, Timothy P. Sullivan, declare:

a)      I am a principal of Sullivan Group Real Estate Advisors.

b)      I am familiar with the services rendered by Sullivan Group Real Estate Advisors as real estate consultant for the Debtors and Debtors in Possession.

c)      I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of August, 2009 at San Diego, California.