1  Nile Leatham (NV Bar No. 002838)
2  KOLESAR & LEATHAM
   Wells Fargo Financial Center
3  3320 W. Sahara Ave.
   Las Vegas, NV 89102
4  Telephone: 702.979.2357
   Facsimile: 702.362.9472
5  E-Mail:       nleatham@klnevada.com

6
   Philip C. Dublin (NY Bar No. 2959344)
7  Abid Qureshi (NY Bar No. 2684637)
   AKIN GUMP STRAUSS HAUER & FELD LLP
8  One Bryant Park
   New York, NY 10036
9  Telephone: 212.872.1000
   Facsimile: 212.872.1002
10
11 E-Mail:      pdublin@akingump.com
                aqureshi@akingump.com
12
13 *Counsel for the First Lien Steering Committee*

14

15                UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF NEVADA
16                        SOUTHERN DIVISION

17 IN RE:                          §
                                   §
18 THE RHODES COMPANIES, LLC,      §   Case No. 09-14814-LBR
19   aka "Rhodes Homes," *et al.*, §   Jointly Administered
                                   §
20      Debtors.[1]                §
                                   §
21                                 §
                                   §
22                                 §

---

23      [1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
   number, if applicable, are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060);
24 Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave,
   LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country
25 Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions
   III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and
26 Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090);
   Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC
27 (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited
   Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897);
28 Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

*Electronically Filed*
*October 27, 2009*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Affects:

☒ All Debtors
☐ Affects the following
   Debtor(s)

§
§
§
§
§
§

FIRST AMENDED PLAN OF
REORGANIZATION PURSUANT
TO CHAPTER 11 OF THE
BANKRUPTCY CODE FOR THE RHODES
COMPANIES, LLC, ET AL.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW ............................ 1
    A.    Defined Terms ................................................................................ 1
    B.    Rules of Interpretation ................................................................. 15
    C.    Reference to Monetary Figures..................................................... 16

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS............................ 16
    A.    Administrative Claims .................................................................. 17
    B.    Priority Tax Claims....................................................................... 17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS ............................................................................................. 17
    A.    Classification of Claims and Interests.......................................... 17
    B.    Treatment of Classes of Claims and Interests.............................. 18
    C.    Class Voting Rights ...................................................................... 21
    D.    Acceptance or Rejection of the Plan ............................................ 22

ARTICLE IV. PROVISIONS FOR IMPLEMENTATION OF THE PLAN ...................... 22
    A.    Substantive Consolidation ............................................................ 22
    B.    Sources of Consideration for Plan Distributions .......................... 23
    C.    Corporate Existence ...................................................................... 24
    D.    Vesting of Assets in the Reorganized Debtors ............................. 24
    E.    Cancellation of Equity Securities and Related Obligations.......... 25
    F.    Restructuring Steps and Transfer of Certain Interests to Newco.................. 25
    G.    Restructuring Transactions ........................................................... 26
    H.    Corporate Action........................................................................... 27
    I.    Post-Confirmation Property Sales.................................................. 27
    J.    Certificate of Incorporation and Bylaws....................................... 27
    K.    Effectuating Documents, Further Transactions ............................ 27
    L.    Exemption from Certain Transfer Taxes and Recording Fees....................... 28
    M.    Directors and Officers of the Reorganized Debtors...................... 28
    N.    Management and Director Equity Incentive Plan.......................... 28
    O.    The Litigation Trust ...................................................................... 28
    P.    Preservation of Causes of Action.................................................. 29
    Q.    HOA Board Seats........................................................................... 30
    R.    Licensing....................................................................................... 30
    S.    Transfer of Rhodes Ranch Golf Course........................................ 30
    T.    Cash Payment................................................................................ 32
    U.    Transfer of Arizona Assets ........................................................... 32

iii

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

V.      Trademarks and Trade Names ...................................................................... 32
W.      Self Insured Retention Obligations ............................................................. 33
X.      Bond Replacement or Indemnification ........................................................ 33
Y.      Stanley Engineering Litigation ................................................................... 33

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
            LEASES ....................................................................................................... 33
A.      Assumption and Rejection of Executory Contracts and Unexpired
        Leases .......................................................................................................... 33
B.      Cure of Defaults for Assumed Executory Contracts and Unexpired
        Leases .......................................................................................................... 34
C.      Preexisting Obligations to the Debtors Under Executory Contracts and
        Unexpired Leases ........................................................................................ 35
D.      Claims Based on Rejection or Repudiation of Executory Contracts and
        Unexpired Leases ........................................................................................ 36
E.      Intercompany Contracts, Contracts, and Leases Entered Into After the
        Petition Date: ............................................................................................. 36
F.      Home Sales .................................................................................................. 36
G.      Warranties ................................................................................................... 36
H.      Modification of Executory Contracts and Unexpired Leases Containing
        Equity Ownership Restrictions .................................................................. 36
I.      Modifications, Amendments, Supplements, Restatements, or Other
        Agreements ................................................................................................. 37
J.      Reservation of Rights .................................................................................. 37
K.      Nonoccurrence of Effective Date ................................................................ 37

ARTICLE VI. PROCEDURES FOR RESOLVING DISPUTED CLAIMS ........................ 37
A.      Allowance of Claims ................................................................................... 37
B.      Claims Administration Responsibilities .................................................... 37
C.      Estimation of Claims ................................................................................... 37
D.      Adjustment to Claims Without Objection ................................................. 38
E.      Time to File Objections to Claims .............................................................. 38
F.      Disallowance of Claims .............................................................................. 38
G.      Offer of Judgment ....................................................................................... 39
H.      Amendments to Claims ............................................................................... 39

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ....................................... 39
A.      Total Enterprise Value for Purposes of Distributions Under the Plan ........... 39
B.      Distributions on Account of Claims Allowed as of the Effective Date ......... 39
C.      Distributions on Account of Claims Allowed After the Effective Date: ....... 39
D.      Delivery of Distributions ............................................................................ 41
E.      Claims Paid or Payable by Third Parties. .................................................. 44
F.      Payment of $1.5 Million to First Lien Lenders .......................................... 44
G.      General Unsecured Claims Purchase .......................................................... 45

ARTICLE VIII. EFFECT OF CONFIRMATION OF THE PLAN ....................................... 46
A.      Discharge of Claims and Termination of Interests .................................... 46

B.    Subordinated Claims ................................................................. 47
C.    Compromise and Settlement of Claims and Controversies ............ 47
D.    **Releases by the Debtors of the Released Parties** ...................... 47
E.    **Releases by the Debtors of the Rhodes Entities** ....................... 48
F.    **Releases by First Lien Lenders of First Lien Lenders** ............... 48
G.    **Exculpation** ........................................................................... 48
H.    **Injunction** ............................................................................. 49
I.    Protection Against Discriminatory Treatment ............................. 49
J.    Setoffs .................................................................................... 50
K.    Recoupment ............................................................................ 50
L.    Release of Liens ...................................................................... 50
M.    Document Retention ................................................................. 51
N.    Reimbursement or Contribution ................................................ 51

ARTICLE IX. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE
          CLAIMS ............................................................................ 51
A.    Professional Claims: ................................................................ 51
B.    Other Administrative Claims .................................................... 52

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND
          CONSUMMATION OF THE PLAN ........................................ 52
A.    Conditions to Confirmation ...................................................... 52
B.    Conditions Precedent to the Effective Date ................................ 53
C.    Waiver of Conditions Precedent ............................................... 54
D.    Effect of Non-Occurrence of Conditions to Consummation ......... 54
E.    Satisfaction of Conditions Precedent to Confirmation ................. 55

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE
          PLAN ................................................................................ 55
A.    Modification and Amendments ................................................. 55
B.    Effect of Confirmation on Modifications ................................... 56
C.    Revocation or Withdrawal of Plan ............................................ 56

ARTICLE XII. RETENTION OF JURISDICTION ............................................. 56

ARTICLE XIII. MISCELLANEOUS PROVISIONS ........................................... 59
A.    Immediate Binding Effect ........................................................ 59
B.    Additional Documents .............................................................. 59
C.    Payment of Statutory Fees ....................................................... 59
D.    Dissolution of Creditors' Committee ......................................... 59
E.    Reservation of Rights ............................................................... 59
F.    Successors and Assigns ............................................................ 59
G.    Service of Documents: ............................................................. 59
H.    Term of Injunctions or Stays .................................................... 61
I.    Entire Agreement .................................................................... 61
J.    Governing Law ....................................................................... 61
K.    Exhibits .................................................................................. 62

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

L.      Nonseverability of Plan Provisions.................................................... 62
M.      Closing of the Chapter 11 Cases..................................................... 62
N.      Waiver or Estoppel ........................................................................ 62
O.      Conflicts........................................................................................... 62

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

# INTRODUCTION

The First Lien Steering Committee proposes the following first amended plan of reorganization for the resolution of outstanding Claims against, and Interests in, The Rhodes Companies, LLC and the other debtors in the above-referenced chapter 11 cases pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101–1532. Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A. of the Plan. Reference is made to the Disclosure Statement, Filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, assets, results of operations, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The First Lien Steering Committee is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN PROVIDES FOR THE SUBSTANTIVE CONSOLIDATION OF ALL OF THE ESTATES FOR ALL PURPOSES ASSOCIATED WITH CONFIRMATION AND DISTRIBUTIONS UNDER THE PLAN.

## ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION,
### COMPUTATION OF TIME, AND GOVERNING LAW

A.    Defined Terms:  As used in the Plan, the capitalized terms below have the following meanings, except as expressly provided or unless the context otherwise requires. Any term used but not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.    Accrued Professional Compensation:  At any given moment, all accrued fees and expenses for services rendered by all Professionals through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been Filed for such fees and expenses.  To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

2.    Administrative Claim:  A Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (c) all fees and charges assessed against the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1   Estates pursuant to chapter 123 of the Judicial Code and 28 U.S.C. § 1930; and (d) all
2   requests for compensation or expense reimbursement for making a substantial contribution
    in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.
3
4       3.    Administrative Claim Bar Date:  The deadline for filing requests for payment
    of Administrative Claims, which shall be thirty days after the Effective Date for all other
5   Administrative Claims incurred after the Petition Date through the Effective Date, except
    with respect to Professional Claims, which shall be subject to the provisions of Article IX.
6
7       4.    Affidavit of Publication:  An affidavit of a representative or agent of a
    publisher of a periodical certifying that notice has been served through publication in the
8   publisher's periodical.

9       5.    Affiliate:  (a) An Entity that directly or indirectly owns, controls, or holds
10  with power to vote, twenty percent or more of the outstanding voting securities of any of the
    Debtors, other than an Entity that holds such securities (i) in a fiduciary or agency capacity
11  without sole discretionary power to vote such securities or (ii) solely to secure a debt, if such
    Entity has not in fact exercised such power to vote; (b) a corporation twenty percent or more
12  of whose outstanding voting securities are directly or indirectly owned, controlled, or held
13  with power to vote, by any of the Debtors, or by an Entity that directly or indirectly owns,
    controls, or holds with power to vote, twenty percent or more of the outstanding voting
14  securities of any of the Debtors, other than an Entity that holds such securities (i) in a
    fiduciary or agency capacity without sole discretionary power to vote such securities or (ii)
15  solely to secure a debt, if such Entity has not in fact exercised such power to vote; (c) an
    Entity whose business is operated under a lease or operating agreement by any of the
16  Debtors, or an Entity substantially all of whose property is operated under an operating
    agreement with any of the Debtors; (d) an Entity that operates the business or substantially
17  all of the property of any of the Debtors under a lease or operating agreement; or (e) the
18  Debtors' domestic, wholly-owned, direct and indirect subsidiaries that have not commenced
    cases under chapter 11 of the Bankruptcy Code.
19
20      6.    Allowed:  With respect to Claims and Interests:  (a) any Claim or Interest,
    proof of which is timely Filed by the applicable Bar Date (or that by the Bankruptcy Code or
21  Final Order is not or shall not be required to be Filed); (b) any Claim or Interest that is listed
    in the Schedules as of the Effective Date as not disputed, not contingent, and not
22  unliquidated, and for which no Proof of Claim or Interest has been timely Filed; or (c) any
    Claim Allowed pursuant to the Plan; provided, however, that with respect to any Claim or
23  Interest described in clauses (a) or (b) above, such Claim or Interest shall be considered
24  Allowed only if and to the extent that (x) no objection to the allowance thereof has been
    interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the
25  Bankruptcy Rules, or the Bankruptcy Court, (y) such an objection is so interposed and the
    Claim or Interest shall have been Allowed for distribution purposes only by a Final Order, or
26  (z) the Debtors allow such Claim prior to the Effective Date with the consent of the First
27  Lien Steering Committee and the Creditors' Committee or the Reorganized Debtors allow
    such Claim after the Effective Date in their sole and absolute discretion.  Except as
28  otherwise specified in the Plan or a Bankruptcy Court order, the amount of an Allowed
    Claim shall not include interest on such Claim from and after the Petition Date.  For

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim or Interest that has been or is hereafter listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely Filed, is not considered Allowed and shall be expunged without further action by the Reorganized Debtors and without any further notice to or action, order, or approval of the Bankruptcy Court.

7.    Arizona Assets:    The Debtors' homebuilding business in Arizona ("Arizona") that will be transferred to the Rhodes Entities on the Effective Date, including the real and personal property (including general intangibles, contracts, and unexpired leases) of the following three Debtors: Rhodes Homes Arizona Properties, LLC, Rhodes Homes Arizona, LLC, and Elkhorn Investments, Inc., to the extent set forth on Attachment D to the Mediation Term Sheet.

8.    Ballot or Ballots:    The ballots upon which Holders of Impaired Claims entitled to vote shall cast their vote to accept or reject the Plan.

9.    Bankruptcy Code:    Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Cases.

10.    Bankruptcy Court:    The United States Bankruptcy Court for the District of Nevada or any other court having jurisdiction over the Chapter 11 Cases.

11.    Bankruptcy Rules:    The Federal Rules of Bankruptcy Procedure as applicable to the Chapter 11 Cases, promulgated pursuant to section 2075 of the Judicial Code and the general, local, and chambers rules and orders of the Bankruptcy Court.

12.    Bar Date:    August 5, 2009, except as otherwise provided in the Plan or by Bankruptcy Court order.

13.    Beneficial Holder:    The Entity holding the beneficial interest in a Claim or Interest.

14.    Business Day:    Any day, other than a Saturday, Sunday, or Legal Holiday.

15.    Cash:    Cash and cash equivalents.

16.    Cash Collateral Order:    The Bankruptcy Court order entitled, "Final Stipulated Order (I) Authorizing Use of Cash Collateral Pursuant to Sections 105, 361, 362, and 363 of the Bankruptcy Code and (II) Granting Adequate Protection and Super Priority Administrative Expense Priority to Prepetition Secured Lenders Re Debtors' Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, and 364 of Debtors' Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to the Debtors' Prepetition Secured Parties and (C) Scheduling a Final Hearing; Memorandum of Points and Authorities Filed by Zachariah Larson on Behalf of Heritage

1    Land Company, LLC [Relates to Heritage Docket No. 35]," entered in the Chapter 11 Cases
2    on April 30, 2009 [Rhodes Docket No. 126], as amended or extended with the consent of the
     First Lien Steering Committee, from time to time and in accordance with the terms thereof.

3        17.    Cause of Action:  Any claim, cause of action, controversy, demand, right,
4    action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account,
     defense, offset, power, privilege, license, and franchise of any kind or character whatsoever,
5    known, unknown, contingent or non-contingent, matured or unmatured, suspected or
6    unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured,
     assertable directly or derivatively, whether arising before, on or after the Petition Date, in
7    contract or in tort, in law or in equity, or pursuant to any other theory of law.  Cause of
     Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on
8    contracts or for breaches of duties imposed by law or in equity; (b) the right to object to
9    Claims or Interests; (c) any claim pursuant to sections 362, 510, 542, 543, 544 through 550,
     or 553 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress,
10   and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any
11   state law fraudulent transfer claim; (f) any claim or cause of action of any kind against any
     Released Party or Exculpated Party based in whole or in part upon acts or omissions
12   occurring prior to or after the Petition Date; and (g) any claim listed in the Plan Supplement.

13       18.    Certificate:  Any instrument evidencing a Claim or an Interest.

14       19.    Chapter 11 Cases:  The chapter 11 bankruptcy cases filed by the Debtors on
     the Petition Date in the Bankruptcy Court, with case numbers 09-14778-LBR, 09-14861-
15   LBR, 09-14825-LBR, 09-14843-LBR, 09-14862-LBR, 09-14837-LBR, 09-14828-LBR, 09-
16   14820-LBR, 09-14865-LBR, 09-14822-LBR, 09-14818-LBR, 09-14860-LBR, 09-14839-
     LBR, 09-14856-LBR, 09-14848-LBR, 09-14868-LBR, 09-14882-LBR, 09-14846-LBR, 09-
17   14844-LBR, 09-14854-LBR, 09-14841-LBR, 09-14814-LBR, 09-14833-LBR, 09-14866-
     LBR, 09-14817-LBR, 09-14853-LBR, 09-14852-LBR, 09-14850-LBR, 09-14849-LBR, 09-
18   14858-LBR, 09-14884-LBR, 09-14887-LBR.

19       20.    Claim:  As defined in section 101(5) of the Bankruptcy Code.
20
         21.    Claims and Solicitation Agent:  Omni Management Group, LLC.
21
         22.    Claims Objection Deadline:  (i) One year from the Effective Date for all
22   Claims other than the Rhodes Entities Claims; and (ii) sixty days from the Effective Date for
     the Rhodes Entities Claims.
23
         23.    Claims Register:  The official register of Claims and Interests maintained by
24   the Claims and Solicitation Agent.
25
         24.    Class:  A class of Holders of Claims or Interests as set forth in the Plan.
26
         25.    CM/ECF:  The Bankruptcy Court's Case Management and Electronic Case
27   Filing system, which can be accessed at https://ecf.nvb.uscourts.gov/.
28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

26. <u>Confirmation</u>:  The entry of the Confirmation Order, subject to all conditions specified in Article X.A having been satisfied or waived pursuant to Article X.C.

27. <u>Confirmation Date</u>:  The date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

28. <u>Confirmation Hearing</u>:  The hearing at which the Confirmation Order is first considered by the Bankruptcy Court.

29. <u>Confirmation Hearing Notice</u>:  The notice approved in the Solicitation Procedures Order that sets forth in detail the voting and objection deadlines with respect to the Plan.

30. <u>Confirmation Order</u>:  The order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

31. <u>Contingent Bond Indemnity Claim</u>:  Any Claim asserted by a bonding company due to a bond being called.

32. <u>Consummation</u>:  The occurrence of the Effective Date.

33. <u>Creditor</u>:  A Holder of a Claim.

34. <u>Creditors' Committee</u>:  The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

35. <u>Cure</u>:  The distribution in the ordinary course of business as soon as reasonably practicable following the Effective Date of Cash, or such other property as may be ordered by the Bankruptcy Court or agreed upon by the contracting party and (i) the Debtors and the First Lien Steering Committee, or (ii) the Reorganized Debtors in an amount equal to all unpaid monetary obligations under applicable law or such lesser amount as may be agreed upon by the parties, under an executory contract or unexpired lease assumed pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

36. <u>Cure Bar Date</u>:  The deadline for filing requests for payment of Cure, which shall be the later of: (a) thirty days after the Effective Date or (b) thirty days after the assumption of the applicable executory contract or unexpired lease, unless otherwise ordered by the Bankruptcy Court or agreed to by the First Lien Steering Committee and the counterparty to the applicable executory contract or unexpired lease.

37. <u>Debtors</u>:  The following Entities:  Heritage Land Company, LLC; The Rhodes Companies, LLC; Rhodes Ranch General Partnership; Tick, LP; Glynda, LP; Chalkline, LP; Batcave, LP; Jackknife, LP; Wallboard, LP; Overflow, LP; Rhodes Ranch Golf and Country Club, LLC; Tuscany Acquisitions, LLC; Tuscany Acquisitions II, LLC; Tuscany Acquisitions III, LLC; Tuscany Acquisitions IV, LLC; Parcel 20 LLC; Rhodes Design and Development Corp.; C&J Holdings Inc.; Rhodes Realty, Inc.; Jarupa LLC;

Elkhorn Investments, Inc.; Rhodes Homes Arizona, LLC; Rhodes Arizona Properties, LLC; Tribes Holdings LLC; Six Feathers Holdings, LLC; Elkhorn Partners, A Nevada Limited Partnership; Bravo Inc.; Gung-Ho Concrete, LLC; Geronimo Plumbing, LLC; Apache Framing, LLC; Tuscany Golf Country Club, LLC; and Pinnacle Grading, LLC.

38.    Debtors in Possession:    The Debtors, as debtors in possession in the Chapter 11 Cases, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

39.    Disclosure Statement:    The disclosure statement for the Plan describing the Plan, including all exhibits and schedules thereto, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law, as may be amended from time to time.

40.    Disputed:    With respect to any Claim or Interest, (i) any Claim or Interest on the Claims Register that is not yet Allowed, (ii) any Claim or Interest that is not yet Allowed pursuant to the terms of the Plan; (iii) any Claim that is not set forth on the Debtors' Schedules and (iv) any Claim objected to by the applicable Claims Objection Deadline.

41.    Disputed Claims Reserve:    The Litigation Trust Interests and distributions in respect thereof held in reserve pursuant to Article VII.

42.    Distribution Agent:    The Reorganized Debtors, or the Entity or Entities chosen by the First Lien Steering Committee, to make or to facilitate distributions pursuant to the Plan.

43.    Distribution Date:    The date occurring as soon as reasonably practicable after the Effective Date when distributions under the Plan shall commence, but not later than thirty days after the Effective Date, without further Bankruptcy Court order.

44.    Distribution Record Date:    The date for determining which Holders of Allowed Claims are eligible to receive distributions pursuant to the Plan, which shall be the Confirmation Date or such other date as designated in the Plan or a Bankruptcy Court order.

45.    Effective Date:    The date in a notice Filed by the First Lien Steering Committee on or after the eleventh day following entry of an order, in form and substance acceptable to the First Lien Steering Committee, by the Bankruptcy Court confirming the Plan and satisfaction of all conditions set forth in Article X.B. of the Plan having been satisfied or waived in accordance with the terms of the Plan; provided, however, that the Effective Date shall occur no earlier than January 1, 2010.

46.    Entity:    As defined in section 101(15) of the Bankruptcy Code.

47.    Equity Security:    Any equity security as defined in section 101(16) of the Bankruptcy Code in a Debtor.

48.    Equity Security Holder:    A Holder of an Interest.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

49.  Estate:  The bankruptcy estate of any Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

50.  Exculpated Claim:  Any claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan, in each case other than claims for gross negligence, willful misconduct or fraud.

51.  Exculpated Party:  Each of: (i) the Creditors' Committee, the First Lien Steering Committee, the First Lien Lenders and the Second Lien Lenders, and all of their respective current and former officers, directors, members, employees, advisors, attorneys, professionals, consultants, agents, or other representatives, and (ii) the Debtors' current officers, employees, advisors, attorneys, professionals, consultants, agents, or other representatives.

52.  Federal Judgment Rate:  The federal judgment rate of .59%, which was in effect as of the Petition Date.

53.  File:  To file with the Bankruptcy Court in the Chapter 11 Cases, or in the case of Proofs of Claim or Interest, to file with the Claims and Solicitation Agent.

54.  Final Decree:  The decree contemplated under Bankruptcy Rule 3022.

55.  Final Order:  As applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the First Lien Steering Committee or Reorganized Debtors, as appropriate, reserve the right to waive any such appeal or similar conditions of a Final Order.

56.  First Lien Agent:  The current and former agents, arranger, and bookrunner with respect to, or under, the First Lien Credit Agreement.

57.  First Lien Credit Agreement:  The first lien Credit Agreement dated as of November 21, 2005 (as may have been amended from time to time) among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein as Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, and the other Loan Documents (as defined in the First Lien Credit Agreement).

58.  First Lien Lender Claim:  Any Claim for principal or interest under the First Lien Credit Agreement or the SWAP Transaction.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

59.     First Lien Lenders:  (i) The First Lien Agent, (ii) the entities that hold debt under the First Lien Credit Agreement and (iii) the holders of Claims relating to under the SWAP Transaction.

60.     First Lien Steering Committee:   Credit Suisse Asset Management, Candlewood Special Situations Master Fund, Credit Suisse Loan Funding LLC, CypressTree Investment Management, LLP, General Electric Capital Corporation, Highland Capital Management, L.P., and Sorin Capital Management.

61.     General Unsecured Claims:  Any Claim against any of the Debtors that is not a/an (a) Administrative Claim, (b) Priority Tax Claim, (c) Priority Non-Tax Claim, (d) First Lien Lender Claim, (e) Second Lien Lender Claim, (f) Other Secured Claim, (g) Subordinated Claim, or (h) Intercompany Claim.

62.     Government Bar Date:   September 28, 2009 or, with respect to Rhodes Homes Arizona, LLC, Tuscany Golf Country Club, LLC and Pinnacle Grading, LLC, September 29, 2009.

63.     Heritage Equity Securities:  Members' interests and/or the interests as a noneconomic member in Heritage Land Company, LLC, a Nevada limited liability company.

64.     Holder:  An Entity holding a Claim or Interest, as applicable.

65.     HOA:  A homeowners' association.

66.     Impaired:  With respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

67.     Indemnification Obligation:   A Debtor's obligation under an executory contract or otherwise to indemnify directors, officers, or employees of the Debtors who served in such capacity at any time, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by the Debtors' respective articles of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date, which shall be deemed rejected under the Plan.

68.     Insider:  As defined in section 101(31) of the Bankruptcy Code.

69.     Insured Claim:  A Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy applicable to the Debtors or their businesses.

70.     Intercompany Claim:  A Claim held by a Debtor against another Debtor.

71.     Intercompany Contract:  A contract between two or more Debtors.

72.     Intercompany Interest:  An Interest held by a Debtor.

73.    <u>Interest</u>:  Any: (a) Equity Security, including all issued, unissued, authorized, or outstanding shares of stock together with any warrants, options, or contractual rights to purchase or acquire such Equity Securities at any time and all rights arising with respect thereto and (b) partnership, limited liability company or similar interest.

74.    <u>Interim Compensation Order</u>:  The Bankruptcy Court order entitled, "Order Granting Debtors' Motion for Administrative Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016 Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Re: Docket No. 62]," entered in the Chapter 11 Cases on May 18, 2009 [Rhodes Docket No. 180], as may have been modified by a Bankruptcy Court order approving the retention of the Professionals.

75.    <u>Internal Revenue Code</u>:  Title 26 of the United States Code, 26 U.S.C. §§ 1–9833.

76.    <u>Judicial Code</u>:  Title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

77.    <u>Lien</u>:  As defined in section 101(37) of the Bankruptcy Code.

78.    <u>Litigation Trust</u>:  That certain litigation trust to be created on the Effective Date in accordance with the provisions of Article IV of the Plan and the Litigation Trust Agreement.

79.    <u>Litigation Trust Advisory Board</u>:  The advisory board formed pursuant to the Litigation Trust Agreement.

80.    <u>Litigation Trustee</u>:  The Person designated by the First Lien Steering Committee in consultation with the First Lien Agent, the Second Lien Agent and the Creditors' Committee on or before the Confirmation Date and retained as of the Effective Date to administer the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement, and any successor appointed in accordance with the Litigation Trust Agreement. The identity of the Litigation Trustee shall be disclosed in the Plan Supplement by the First Lien Steering Committee at or prior to the Confirmation Hearing.

81.    <u>Litigation Trust Agreement</u>:  That certain trust agreement, substantially on the terms set forth in the Plan Supplement and in form and substance acceptable to the First Lien Steering Committee, in consultation with the First Lien Agent, Second Lien Agent, Creditors' Committee and the Debtors, that, among other among other things: (a) establishes and governs the Litigation Trust (including any Litigation Trust Advisory Board or similar oversight committee); and (b) describes the powers, duties, and responsibilities of the Litigation Trustee, the Liquidation Trust Assets, and the distribution of the proceeds thereof.

82.    <u>Litigation Trust Assets</u>:  All Claims and Causes of Action on which the First Lien Lenders do not have a lien and that have not been released pursuant to the Plan or order of the Bankruptcy Court.  The Litigation Trust Assets shall be as set forth in the Plan Supplement.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

83.  <u>Litigation Trust Beneficiaries</u>:  The Holders of Claims that are to be satisfied, in whole or in part, by post-Effective Date distributions that are to be made by the Litigation Trust.

84.  <u>Litigation Trust Funding Amount</u>:  The amount of $100,000 to be used to initially fund the Litigation Trust, which shall be repaid to the Reorganized Debtors from the first proceeds received by the Litigation Trust.

85.  <u>Litigation Trust Interests</u>:  The beneficial interests in the Litigation Trust to be distributed to certain Holders of Claims in accordance with the terms of the Plan.

86.  <u>Management and Director Equity Incentive Plan</u>:  A post-Effective Date management and director compensation incentive plan intended for certain management, employees, consultants and directors of certain of the Reorganized Debtors.

87.  <u>Master Ballots</u>:  The master ballots upon which the applicable Nominee or other holder of record shall submit on behalf of the Beneficial Holders it represents the votes cast by such Beneficial Holders to accept or reject the Plan.

88.  <u>Mediation Settlement</u>:  The agreement in principle on a comprehensive settlement reached among the Debtors, the First Lien Steering Committee, the Creditors Committee and the Second Lien Agent during a mediation held in Los Angeles, California on August 17, 24 and 25 of 2009 before the Honorable Richard Neiter.

89.  <u>Mediation Term Sheet</u>:  The document attached as Exhibit 1 to the Plan, which sets forth the terms of the Mediation Settlement.

91.  <u>Newco</u>:  An entity to be newly formed which will be the ultimate holding company of the Reorganized Debtors.

92.  <u>Newco Bylaws</u>:  The bylaws of Newco, which shall be in form and substance acceptable to the First Lien Steering Committee, substantially in the form contained in the Plan Supplement to be in effect upon the Effective Date.

93.  <u>Newco Charter</u>:  The certificate of incorporation of Newco or other governing documents, which shall be in form and substance acceptable to the First Lien Steering Committee, substantially in the form contained in the Plan Supplement to be in effect upon the Effective Date.

94.  <u>Newco Equity Interests</u>:  The shares of common stock in Newco or limited liability company interests in Newco initially issued and outstanding pursuant to the Plan as of the Effective Date. The Newco Equity Interests may consist of a class of full-voting equity interests (the "<u>Class A-1 Equity Interests</u>") and a separate class of limited-voting equity interests (the "<u>Class A-2 Equity Interests</u>").  To the extent applicable, each First Lien Lender shall have the option to choose to take its New Equity Interests in the form of Class A-1 Equity Interests or Class A-2 Equity Interests.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

95.    Newco Total Enterprise Value:  $99.6 million, which is the midpoint range of the total enterprise value of the Reorganized Debtors set forth in the Disclosure Statement or such amount provided in the Confirmation Order as the total enterprise value of the Reorganized Debtors.

96.    New First Lien Notes:  The term notes issued pursuant to Article IV.B hereof in partial satisfaction of the First Lien Lender Claims, which shall have the terms and conditions described on Exhibit 2 and which shall be in substantially the form designated in the Plan Supplement.

97.    New First Lien Notes Maturity Date:  The sixth anniversary of the Effective Date.

98.    Nominee:  Any broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other party in whose name securities are registered or held of record on behalf of a Beneficial Holder.

99.    Notice of Confirmation:  That certain notice pursuant to Bankruptcy Rule 3020(c)(2) notifying Holders of Claims and Interests and parties in interest that the Bankruptcy Court has confirmed the Plan.

100.   Old Equity Interests:  All of the Interests in any of the Debtors and any rights, options, warrants, calls, subscriptions or other similar rights or agreements, commitments or outstanding securities obligating the Debtors to issue, transfer or sell any Interests.

101.   Other Secured Claim:  Any Secured Claim, other than a: (i) First Lien Lender Claim; or (ii) Second Lien Lender Claim.

102.   Periodic Distribution Date:  The first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the immediately preceding Periodic Distribution Date.

103.   Permitted Nominee:  Any nominee of a First Lien Lender or Second Lien Lender that such lender has confirmed in writing to the Debtors and the First Lien Agent or Second Lien Agent (as applicable) that it is such lender's nominee for the purpose of distribution of some or all of such lender's distribution hereunder, provided that such nominee shall be an affiliate of such lender.

104.   Person:  As defined in section 101(41) of the Bankruptcy Code.

105.   Petition Date:  March 31, 2009 or, for Tuscany Golf Club, LLC, Pinnacle Grading, LLC and Rhodes Homes Arizona, LLC, April 1, 2009.

106.   Plan:  This First Amended Plan of Reorganization for each of the Debtors pursuant to chapter 11 of the Bankruptcy Code, together with the Plan Supplement, either in its present form or as it may be altered, amended, modified, or supplemented from time to

1    time in accordance with the terms of the Plan, the Bankruptcy Code, and the Bankruptcy
2    Rules.

3        107.    Plan Proponent:  The First Lien Steering Committee.

4        108.    Plan Supplement:  The compilation of documents and forms of documents,
     schedules, and exhibits to the Plan, which shall be in form and substance acceptable to the
5    First Lien Steering Committee and filed no later than the Plan Supplement Filing Date.

6        109.    Plan Supplement Filing Date:  [November 16, 2009] or such later date as may
7    be approved by the Bankruptcy Court on notice to parties in interest.

8        110.    Pravada:  A Rhodes Homes development located in Mohave County (vicinity
     of Kingman, Arizona) on approximately 1,312 acres.
9

10       111.    Priority Non-Tax Claim:  Any Claim accorded priority in right of payment
     pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an
11   Administrative Claim.

12       112.    Priority Tax Claim:  Any Claim of the kind specified in section 507(a)(8) of
     the Bankruptcy Code.
13

14       113.    Professional:  An Entity: (a) employed pursuant to a Bankruptcy Court order
     in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated
15   for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328,
     329, 330, and 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement
16   by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

17       114.    Proof of Claim:  A proof of Claim Filed against any of the Debtors in the
18   Chapter 11 Cases.

19       115.    Proof of Interest:  A proof of Interest Filed against any of the Debtors in the
20   Chapter 11 Cases.

21       116.    Qualified Employee:  An employee that satisfies the requirements of Chapter
     624.260 of the Nevada Revised Statutes.
22

23       117.    Record Date:  [October 30, 2009]

24       118.    Reinstated:  (a) Leaving unaltered the legal, equitable, and contractual rights
     to which a Claim entitles the Holder of such Claim or Interest so as to leave such Claim
25   Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles
     the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or
26   Interest after the occurrence of a default: (i) curing any such default that occurred before or
     after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the
27   Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured;
     (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the
28   passage of time) of such Claim as such maturity existed before such default; (iii)

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Interest (other than the Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder.

119.    Rejection Damages Claim:  Any Claim on account of the rejection of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

120.    Rejection Damages Claim Deadline:   The deadline to file a Rejection Damages Claim which shall be thirty days after the later of the Effective Date or the effective date of rejection or repudiation of an executory contract or unexpired lease.

121.    Released Party:  Each of: (a) the First Lien Lenders in their capacity as such; (b) the First Lien Steering Committee; (c) the Second Lien Lenders in their capacity as such; (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entities' predecessors, successors and assigns; (e) the Creditors' Committee and the members thereof in their capacity as such; (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' subsidiaries, affiliates, officers, members, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals; (g) the Debtors' officers, employees (including Thomas Robinson and Joseph Schramm) and Professionals, as of the Petition Date; and (h) Paul Huygens; provided, however, that clause (g) shall not include (i) the Rhodes Entities or their affiliates; (ii) insiders of any of the Rhodes Entities (except as to Thomas Robinson and Joseph Schramm); or (iii) relatives of Rhodes.

122.    Reorganized Debtors:  The Debtors, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

123.    Rhodes:   James M. Rhodes, in his individual capacity and any capacity related to any of the Debtors including, without limitation, as shareholder, general partner, limited partner, agent, officer or principal.

124.    Rhodes Entities:   The following Entities:  Rhodes; Glynda Rhodes; John Rhodes; James M. Rhodes Dynasty Trust I; James M. Rhodes Dynasty Trust II; JMR Children's Irrevocable Educational Trust; Truckee Springs Holdings, Inc.; Sedora Holdings LLC; Gypsum Resources, LLC; Tulare Springs Holdings, Inc.; Escalante-Zion Investments, LLC; HH Trust; Harmony Homes, LLC; Tock, LP; Tapemeasure, LP; Joshua Choya, LLC; American Land Management, LLC; South Dakota Conservancy, LLC; Meridian Land Company, LLC; Yucca Land Company, LLC; Sagebrush Enterprises, Inc.; Rhodes Ranch, LLC; Westward Crossing, LLC; Pinnacle Equipment Rental, LLC; Desert Communities, Inc.; Spirit Underground, LLC; Tropicana Durango Investments, Inc.; Tropicana Durango, Ltd. I; Dirt Investments, LLC; Underground Technologies, LLC; South Dakota Aggregate

and Engineering, LLC; Freedom Underground, LLC; Jerico Trust; Canberra Holdings, LLC; Custom Quality Homes, LLC; and Rhodes Ranch Golf, Inc.; and ID Interior Design, LLC.

125. _Rhodes Entities Claims_: Claims asserted by the Rhodes Entities.

126. _Rhodes Entities Release_: As set forth in Article VIII.E hereof.

127. _Rhodes Ranch Golf Course_: The golf course situated within the Rhodes Ranch master-planned community located in the southwestern Las Vegas valley.

128. _Roll-Up Transaction_: A dissolution or winding up of the corporate existence of a Debtor or Reorganized Debtor under applicable state law or the consolidation, merger, contribution of assets, or other transaction in which a Debtor or Reorganized Debtor merges with or transfers substantially all of its assets and liabilities to another Debtor or Reorganized Debtor, on or after the Effective Date.

129. _Schedules_: The schedules of assets and liabilities, schedules of executory contracts, and statement of financial affairs, as amended from time to time, Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

130. _Second Lien Agent_: The current and former agents, arranger, and bookrunner with respect to, or under, the Second Lien Credit Agreement.

131. _Second Lien Credit Agreement_: The Credit Agreement (as may have been amended from time to time) dated as of November 21, 2005 among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein, as the Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, and the other Loan Documents (as defined in the Second Lien Credit Agreement).

132. _Second Lien Lender Claim_: Any Claim on account of the Second Lien Credit Agreement.

133. _Second Lien Lenders_: The Second Lien Agent and the entities that hold debt under the Second Lien Credit Agreement.

134. _Secured_: When referring to a Claim: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan as a Secured Claim.

135. _Securities Act_: The Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

14

1    136.    Security: As defined in section 2(a)(1) of the Securities Act.

2    137.    Servicer: An agent, servicer, or other authorized representative of Holders of
3    Claims or Interests recognized by the Plan Proponent.

4    138.    Solicitation Procedures Order: That certain order entered by the Bankruptcy
     Court on [October 30], 2009, approving certain solicitation procedures for solicitation of
5    votes on the Plan [Rhodes Docket No. [XX]].

6    139.    Stanley Engineering Litigation: The litigation styled Rhodes Homes
7    Arizona, LLC v. Stanley Consultants, Inc., No. CV2006-011358, currently pending in the
     Superior Court of Arizona, Maricopa County.

8    140.    Stockholders Agreement: The stockholders agreement to be included in the
9    Plan Supplement that shall be in form and substance acceptable to the First Lien Steering
10   Committee in its sole discretion to be in effect on the Effective Date.

11   141.    Subordinated Claim: Any Claim that is subordinated pursuant to section 510
     of the Bankruptcy Code.

12
     142.    Supremacy Clause: Paragraph 2 of Article VI of the U.S. Constitution.
13
14   144.    SWAP Transaction: That certain transaction between Credit Suisse
     International and Heritage Land Company, LLC with Trade Date of December 9, 2005 and
15   CSIN External ID 53095828.

16   145.    Unclaimed Distribution: Any distribution under the Plan on account of an
17   Allowed Claim or Interest to a Holder that has not: (a) accepted a particular distribution or,
     in the case of distributions made by check, presented such check for payment within 120
18   days of the date of the check; (b) given notice to the Reorganized Debtors of an intent to
     accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors'
19   requests for information necessary to facilitate a particular distribution; or (d) taken any
     other action necessary to facilitate such distribution.
20
21   146.    Uniform Commercial Code: The Uniform Commercial Code as in effect on
     the Effective Date, as enacted in the applicable state.
22
23   147.    Unimpaired: With respect to a Class of Claims or Interests, a Class of Claims
     or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

24   148.    Unsecured Claim: Any Claim that is not secured by a Lien on property in
25   which the Debtor's Estate has an interest.

26   149.    U.S. Constitution: The Constitution of the United States of America.

27   151.    Voting Deadline: [December 3], 2009.

28   B.    Rules of Interpretation:

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

15

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1.    For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references in the Plan to Articles are references to Articles of the Plan or to the Plan; (f) unless otherwise specified, all references in the Plan to exhibits are references to exhibits in the Plan Supplement; (g) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (h) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (j) unless otherwise set forth in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (k) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (l) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (m) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (n) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

2.    Computation of Time:  In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

C.    Reference to Monetary Figures:  All references in the Plan to monetary figures shall refer to currency of the United States of America.

## ARTICLE II.
### ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

A.    Administrative Claims:  Each Allowed Administrative Claim shall be paid in full, in Cash, (i) on the later of (a) the Effective Date, (b) the date on which the Bankruptcy Court enters an order allowing such Allowed Administrative Claim or (c) the date on which the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent) and the Holder of such Allowed Administrative Claim otherwise agree, and (ii) in such amounts as (a) are incurred in the ordinary course of business by the Debtors, (b) are Allowed by the Bankruptcy Court, (c) may be agreed upon between the Holder of such Allowed Administrative Claim and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), or (d) may otherwise be required under applicable law.  Such Allowed Administrative Claims shall include costs incurred in the operation of the Debtors' businesses after the Petition Date, the allowed fees and expenses of Professionals retained by the Debtors and the Creditors' Committee and the fees due to the United States Trustee pursuant to 28 U.S.C. § 1930.

B.    Priority Tax Claims:  Allowed Priority Tax Claims shall be paid in full, in Cash, upon the later of (a) the Effective Date, (b) the date upon which there is a Final Order allowing such Claim as an Allowed Priority Tax Claim, (c) the date that such Allowed Priority Tax Claim would have been due if the Chapter 11 Cases had not been commenced, or (d) upon such other terms as may be agreed to between the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), and any Holder of an Allowed Priority Tax Claim; provided, however, that the Reorganized Debtors or Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), in lieu of payment in full of Allowed Priority Tax Claims on the Effective Date, may make Cash payments respecting Allowed Priority Tax Claims deferred to the extent permitted by Section 1129(a)(9) of the Bankruptcy Code and, in such event, unless otherwise provided herein, interest shall be paid on the unpaid portion of such Allowed Priority Tax Claim at the Federal statutory rate; provided, further, that deferred Cash payments on account of an Allowed Priority Tax Claim shall be paid quarterly over a period of six years commencing with the quarter after which such Priority Tax Claim has been Allowed.

**ARTICLE III.**
CLASSIFICATION AND TREATMENT
OF CLAIMS AND INTERESTS

A.    Classification of Claims and Interests:   All Claims and Interests, except Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1.    Class Identification:  Below is a chart assigning each Class a letter and, in some cases, a number for purposes of identifying each separate Class.

| Class | Claim or Interest Type |
|---|---|
| A-1 | First Lien Lender Claims |
| A-2 | Second Lien Lender Claims |
| A-3 | Other Secured Claims |
| B | Priority Non-Tax Claim |
| C-1 | General Unsecured Claims |
| C-2 | Subordinated Claims |
| D | Old Equity Interests |
| E | Intercompany Claims |

B.    Treatment of Classes of Claims and Interests:  To the extent a Class contains Allowed Claims or Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below.

1.    Class A-1—First Lien Lender Claims

a.    Classification:  Class A-1 consists of all First Lien Lender Claims.

b.    Impairment and Voting:  Class A-1 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class A-1 is entitled to vote to accept or reject the Plan.

c.    Treatment:  On the Effective Date or such other date as set forth herein, each of the First Lien Lenders (or its Permitted Nominee) shall receive on account of its Claims, (w) its pro rata share of $1.5 million in Cash, (x) its pro rata share of 100% of the New First Lien Notes, (y) its pro rata share of 100% of the Newco Equity Interests (subject to dilution for any Newco Equity Interests issued pursuant to a Management and Director Equity Incentive Plan); and (z) its pro rata share of the Litigation Trust Interests allocable to the Holders of the First Lien Lender Claims.  The $1.5 million payment to the First Lien Lenders shall be allocated and deemed paid to the First Lien Lenders in accordance with Article VII.F. of the Plan.

2.    Class A-2—Second Lien Lender Claims

a.    Classification:  Class A-2 consists of all Second Lien Lender Claims.

b.    Impairment and Voting:  Class A-2 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class A-2 is entitled to vote to accept or reject the Plan.

c.      Treatment:  On the Effective Date, only if the Class of Second Lien Lender Claims votes in favor of the Plan, each of the Second Lien Lenders (or its Permitted Nominee) shall receive (x) its pro rata share of 50% of the net proceeds of the Stanley Engineering Litigation; and (y) its pro rata share of the Litigation Trust Interests allocable to the Holders of the Second Lien Lender Claims on account of its deficiency claims, without a reduction on account of the reasonable fees and expenses of Ropes & Gray LLP and local counsel for the Second Lien Agent, subject to an aggregate cap of $500,000.  If the Class of Second Lien Lender Claims votes against the Plan, each of the Second Lien Lenders shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of the Second Lien Lender Claims on account of its deficiency claims, subject to payment of the reasonable fees and expenses of Ropes & Gray LLP and local counsel for the Second Lien Agent.

3.      Class A-3—Other Secured Claims

a.      Classification:  Class A-3 consists of all Other Secured Claims.

b.      Impairment and Voting:  Class A-3 is Unimpaired by the Plan.  Each Holder of an Allowed Claim in Class A-3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c.      Treatment:  To the extent not satisfied by the Debtors, pursuant to Bankruptcy Court order, in the ordinary course of business prior to the Effective Date, at the option of the Reorganized Debtors on or after the Effective Date (i) an Allowed Other Secured Claim shall be Reinstated and rendered Unimpaired in accordance with section 1124(2) of the Bankruptcy Code, (ii) a Holder of an Allowed Other Secured Claim shall receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable, (iii) a Holder of an Allowed Other Secured Claim shall receive the Collateral securing both its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (iv) a Holder of an Allowed Other Secured Claim shall receive such treatment as to which such holder and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), otherwise agree.

4.      Class B—Priority Non-Tax Claims

a.      Classification:  Class B consists of all Priority Non-Tax Claims.

b.      Impairment and Voting:  Class B is Unimpaired by the Plan.  Each Holder of an Allowed Claim in Class B is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

c.      Treatment:  Each Holder of an Allowed Priority Non-Tax Claim shall receive Cash in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, unless the Holder of an Allowed Priority Non-Tax Claim and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), otherwise agree.

5.      Class C-1—General Unsecured Claims (including any Allowed Rhodes Entities Claims)

a.      Classification:  Class C-1 consists of all General Unsecured Claims including any Allowed Rhodes Entities Claims.

b.      Impairment and Voting:  Class C-1 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-1 is entitled to vote to accept or reject the Plan.

c.      Treatment:  On the Effective Date, each Holder of an Allowed General Unsecured Claim (including any Allowed Rhodes Entities Claims) shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of General Unsecured Claims on account of its Allowed Claim.

6.      Class C-2—Subordinated Claims

a.      Classification:  Class C-2 consists of all Subordinated Claims.

b.      Impairment and Voting:  Class C-2 is Impaired by the Plan.  Each Holder of an Interest in Class C-2 is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.      Treatment:  Claims subordinated under applicable law (including any Rhodes Entities Claims that are subordinated) shall not receive any recovery on account of their Claims.

7.      Class D—Old Equity Interests

a.      Classification:  Class D consists of all Old Equity Interests.

b.      Impairment and Voting:  Class D is Impaired by the Plan.  Each Holder of an Interest in Class D is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.      Treatment:  Each holder of an Old Equity Interest shall not be entitled to, and shall not receive or retain any property or interest in property on account of such Old Equity Interest.

8.      Class E—Intercompany Claims

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

a.  <u>Classification</u>:  Class E consists of all Intercompany Claims.

b.  <u>Impairment and Voting</u>: Class E is Impaired by the Plan.  Each Holder of a Claim in Class E is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.  <u>Treatment</u>:  At the election of the Reorganized Debtors, Intercompany Claims will be (i) reinstated, in full or in part, (ii) resolved through set-off, distribution, or contribution, in full or in part, or (iii) cancelled and discharged, in full or in part, in which case such discharged and satisfied portion shall be eliminated and the Holders thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such portion under the Plan.

C.  <u>Class Voting Rights</u>:  The voting rights of each Class are as follows.

1.  <u>Classes Entitled to Vote</u>:  The following Classes are Impaired and thus entitled to vote to accept or reject the Plan.

| Classes |
|---------|
| A-1 |
| A-2 |
| C-1 |

2.  <u>Presumed Acceptance of Plan</u>:  The following Classes are Unimpaired and deemed to accept the Plan.  Therefore, such Classes are not entitled to vote to accept or reject the Plan and the vote of such Holders of Claims and Interests shall not be solicited.

| Classes |
|---------|
| A-3 |
| B |

3.  <u>Presumed Rejection of Plan</u>:  The following Classes are Impaired and conclusively presumed to reject the Plan.  Therefore, such Classes are not entitled to vote to accept or reject the Plan and the vote of such Holders of Claims or Interests shall not be solicited.

| Class |
|-------|
| C-2 |
| D |
| E |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

D.    Acceptance or Rejection of the Plan

1.    Acceptance by Impaired Classes of Claims:  Pursuant to Bankruptcy Code section 1126(c) and except as otherwise provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

2.    Tabulation of Votes on a Consolidated Basis:  The Claims and Solicitation Agent will tabulate all votes on the Plan on a consolidated basis for the purpose of determining whether the Plan satisfies Bankruptcy Code section 1129(a)(8) and (10).

3.    Cramdown:  The Plan Proponent requests Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The First Lien Steering Committee reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

4.    Controversy Concerning Impairment:  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE IV.**
PROVISIONS FOR IMPLEMENTATION OF THE PLAN

A.    Substantive Consolidation:  The Plan shall serve as a motion by the First Lien Steering Committee seeking entry of a Bankruptcy Court order substantively consolidating all of the Estates into a single consolidated Estate for all purposes associated with Confirmation and distributions to be made under the Plan.

If substantive consolidation of all of the Estates is ordered, then on and after the Effective Date, all assets and liabilities of the Debtors shall be treated as though they were merged into the Estate of The Rhodes Companies, LLC for all purposes associated with Confirmation and Consummation, and all guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor shall be treated as one collective obligation of the Debtors. Substantive consolidation shall not affect the legal and organizational structure of the Reorganized Debtors or their separate corporate existences or any prepetition or postpetition guarantees, Liens, or security interests that are required to be maintained under the Bankruptcy Code, under the Plan, or in connection with contracts or leases that were assumed or entered into during the Chapter 11 Cases.  All duplicative Claims (identical in both amount and subject matter) Filed against more than one of the Debtors shall be automatically expunged so that only one Claim survives against the consolidated Debtors (but in no way shall such surviving Claim be deemed Allowed by reason of this Section). Any alleged defaults under any applicable agreement with the Debtors or the Reorganized

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Debtors arising from substantive consolidation shall be deemed Cured as of the Effective Date.

B.    Sources of Consideration for Plan Distributions:  The Reorganized Debtors shall fund distributions under the Plan with Cash on hand, existing assets, and the issuance of the New First Lien Notes and Newco Equity Interests.

1.    Newco Equity Interests:  On the Effective Date, but not more than thirty days after the Effective Date for initial distributions on account of Allowed Claims, Newco shall issue Newco Equity Interests (based upon the Newco Total Enterprise Value) to the Holders of First Lien Lender Claims.  Each share of Class A-2 Equity Interest will be convertible at the option of the holder, exercisable at any time, into one Class A-1 Equity Interest.

The economic rights of the Class A-1 Equity Interests and Class A-2 Equity Interests shall be identical.  The Class A-2 Equity Interests will not be entitled to general voting rights, but will be entitled to vote on an "as converted" basis (together with the holders of the Class A-1 Equity Interests, as a single class) on certain non-ordinary course transactions, including (i) any authorization of, or increase in the number of authorized shares of, any class of capital stock ranking equal or senior to the Newco Equity Interests as to dividends or liquidation preference, including additional Newco Equity Interests, (ii) any amendment to the Newco's certificate of incorporation or by-laws, (iii) any amendment to any shareholders agreement, (iv) any sale, lease or other disposition of all or substantially all of the assets of the Reorganized Debtors through one or more transactions, (v) any recapitalization, reorganization, consolidation or merger of the Reorganized Debtors, (vi) to the extent that holders of Class A-1 Equity Interests have the right to vote thereon, any issuance or entry into an agreement for the issuance of capital stock (or any options or other securities convertible into capital stock) of the Reorganized Debtors, except as may be provided for under any management incentive plan, and (vii) to the extent that holders of Class A-1 Equity Interests have the right to vote thereon, any redemption, purchase or other acquisition by the Newco of any of its capital stock (except for purchases from employees upon termination of employment).

The Class A-2 Equity Interests will be entitled to a separate class vote on any amendment or modification of any rights or privileges of the Class A-2 Equity Interests that does not equally affect the Class A-1 Equity Interests.  In any liquidation, dissolution or winding up of the Reorganized Debtors, all assets will be distributed to holders of the Newco Equity Interests on a pro rata basis.

a.    Section 1145 Exemption:  Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any Securities contemplated by the Plan and any and all settlement agreements incorporated therein, including the Newco Equity Interests, shall, to the fullest extent permitted by applicable law, be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities.  In addition, under section 1145 of the Bankruptcy Code any Securities contemplated by the Plan, including the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

Newco Equity Interests and New First Lien Notes, will be freely tradable and transferable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (ii) the restrictions, if any, on the transferability of such Securities and instruments set forth in the Stockholders Agreement; and (iii) applicable regulatory approval.

    b.    Issuance and Distribution of the Newco Equity Interests: The Newco Equity Interests, when issued or distributed as provided in the Plan, will be duly authorized, validly issued, and, if applicable, fully paid and nonassessable. Each distribution and issuance shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

    2.    New First Lien Notes: On the Effective Date or as soon as reasonably practicable thereafter, Newco shall issue the New First Lien Notes. The Reorganized Debtors shall be co-borrowers and guarantors under the New First Lien Notes. The New First Lien Notes shall have the terms set forth on Exhibit 2 hereto and as otherwise provided in the terms of the documents governing the New First Lien Notes which shall be included in the Plan Supplement.

    3.    Exit Financing: To the extent the board of directors of Newco (or such other governing body) determines that additional financing is necessary for the operation of the Reorganized Debtors' businesses, Newco and/or the Reorganized Debtors may obtain additional financing. The First Lien Steering Committee does not anticipate that additional sources of funding in addition to Cash on hand, the Newco Equity Interests and the New First Lien Notes will be necessary to fund distributions under the Plan on the Effective Date.

C.    Corporate Existence: Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval.

D.    Vesting of Assets in the Reorganized Debtors: Except for any Claims or Causes of Action transferred to the Litigation Trust and unless otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear

24

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.      Cancellation of Equity Securities and Related Obligations:  On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the Old Equity Interests and any other Certificate, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such Certificates, notes, other instruments or documents evidencing indebtedness or obligations of the Debtors that are Reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Old Equity Interests and any other Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements or Certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; provided, however, that notwithstanding Confirmation, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of: (w) allowing Holders to receive distributions under the Plan; (x) allowing a Servicer to make distributions on account of such Claims as provided in the applicable governing agreement; (y) permitting such Servicer to maintain any rights and Liens it may have against property other than the Reorganized Debtors' property for fees, costs, and expenses pursuant to such indenture or other agreement; and (z) governing the rights and obligations of non-Debtor parties to such agreements vis-à-vis each other (including, without limitation, the rights and obligations of non-Debtor parties under the First Lien Credit Agreement and the Second Lien Credit Agreement, which, for the avoidance of doubt, shall not be affected by the Plan except as otherwise expressly provided in the Plan); provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors.  The Reorganized Debtors shall not have any obligations to any Servicer for any fees, costs, or expenses, except as expressly otherwise provided in the Plan.

F.      Restructuring Steps and Transfer of Certain Interests to Newco:  In the event the Rhodes Entities comply with all of their obligations pursuant to the Mediation Settlement and the Plan, on the Effective Date or, in the case of step (4) below, effective the next day, the following transactions shall be deemed to have occurred in the order set forth below.

1.      Newco shall be formed as a new limited liability company.  The First Lien Lender Claims shall be deemed to have been exchanged for the membership interests in Newco.  Newco shall be deemed to hold all of the First Lien Lender Claims.  At the option

of a holder, membership interests in Newco may be transferred to a corporation prior to Step 2.

       2.     Newco shall purchase all of the Heritage Equity Securities for $10.00.

       3.     Contemporaneous with or subsequent to Newco's purchase of the Heritage Equity Securities, The Rhodes Companies, LLC - the general partner of each of Tick, LP; Glynda, LP; Jackknife, LP; LP; Batcave, LP; Overflow, LP; Wallboard, LP; and Chalkline, LP, --shall sell its general partnership interests in such entities to Newco for $1.00. Alternatively, the membership interest in The Rhodes Companies, LLC may be acquired from its sole member – Sagebrush Enterprises, Inc. – in consideration for release of its obligations under the First Lien Lender Claims.

       4.     Newco's members may agree to continue Newco as an LLC, file a check the box election effective the day after the Effective Date to treat Newco as a corporation for tax purposes, or convert into a corporation as of the day after the Effective Date.

In any event, to the extent any cancellation of indebtedness is derived from the foregoing transactions under the Internal Revenue Code, it shall be allocable to the holders of the Old Equity Interests as required by the Internal Revenue Code. To be clear, Newco's purchase of the Heritage Equity Securities shall occur (a) contemporaneously with or immediately before the membership interests of those entities described in Article IV.B.3, immediately above, are acquired; (b) before any debt or obligations of the Debtors are canceled or forgiven; (d) before any new notes are issued or existing debt is modified by the Reorganized Debtors; and (e) before any of the other acts or events contemplated in Article III.B, et seq., of the Plan. The holders of the Heritage Equity Securities and Newco will report the sale and purchase of the Heritage Equity Securities in accordance with revenue ruling 99-6, 1991-1 CB 432.

G.    <u>Restructuring Transactions</u>:  On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; (4) the Roll-Up Transactions; (5) the establishment of a liquidation trust or other appropriate vehicle to hold assets for sale that will not be utilized in the business of the Reorganized Debtors; and (6) all other actions that the Reorganized Debtors determine are necessary or appropriate, including the making of filings or recordings in connection with the relevant Roll-Up Transactions. The form of each Roll-Up Transaction shall be determined by the Reorganized Debtor that is party to such Roll-Up Transaction. Implementation of the Roll-Up Transactions shall not affect any distributions, discharges, exculpations, releases, or injunctions set forth in the Plan.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

H.     Corporate Action:   Each of the matters provided for by the Plan involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of the Reorganized Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Holders of Claims or Interests, directors of the Debtors, or any other Entity.  Without limiting the foregoing, such actions may include: the adoption and filing of the Newco Charter and Newco Bylaws; the adoption and filing of amended organization documents of the other Reorganized Debtors; the appointment of directors and officers for the Reorganized Debtors; the execution of the Stockholders Agreement; and the adoption, implementation, and amendment of the Management and Director Equity Incentive Plan.

I.     Post-Confirmation Property Sales:   To the extent the Reorganized Debtors sell any of their property prior to or including the date that is one year after Confirmation, the Reorganized Debtors may elect to sell such property pursuant to sections 363, 1123, and 1146(a) of the Bankruptcy Code.

J.     Certificate of Incorporation and Bylaws:   The certificates of incorporation and bylaws (or other formation documents relating to limited liability companies, limited partnerships or other forms of Entity) of the Debtors shall be amended, in form and substance acceptable to the First Lien Steering Committee, as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code.  The Newco Charter and Newco Bylaws shall be in form and substance acceptable to the First Lien Steering Committee and shall be included in the Plan Supplement, which will be Filed on the Plan Supplement Filing Date.  The certificate of incorporation of Newco shall, among other things: (1) authorize issuance of the Newco Equity Interests; and (2) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting Equity Securities.  On or as soon as reasonably practicable after the Effective Date, to the extent required, each of the Reorganized Debtors shall file new certificates of incorporation (or other formation documents relating to limited liability companies limited partnerships, or other forms of Entity) in form and substance acceptable to First Lien Steering Committee, with the secretary (or equivalent state officer or Entity) of the state under which each such Reorganized Debtor is or is to be incorporated or organized.  On or as soon as reasonably practicable after the Effective Date, to the extent required, Newco shall file the Newco Charter with the secretary (or equivalent state officer or Entity) of the state under which Newco is to be incorporated or organized.  After the Effective Date, each Reorganized Debtor may amend and restate its new certificate of incorporation and other constituent documents as permitted by the relevant state corporate law.

K.     Effectuating Documents, Further Transactions:   On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors (or other governing bodies) thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  in the name of and on behalf of the Reorganized Debtors, without the need for any
2  approvals, authorizations, or consents except for those expressly required pursuant to the
   Plan.
3
4  L.      Exemption from Certain Transfer Taxes and Recording Fees:  Pursuant to section
   1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to
5  any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to:
6  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other
   interest in the Debtors or the Reorganized Debtors; (2) the creation, modification,
7  consolidation, or recording of any mortgage, deed of trust, or other security interest, or the
   securing of additional indebtedness by such or other means; (3) the making, assignment, or
8  recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or
   other instrument of transfer under, in furtherance of, or in connection with, the Plan,
9  including any deeds, bills of sale, assignments, or other instrument of transfer executed in
10 connection with any transaction arising out of, contemplated by, or in any way related to the
   Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee,
11 intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax,
   Uniform Commercial Code filing or recording fee, or recording fee, or other similar tax or
12 governmental assessment, and the appropriate state or local governmental officials or agents
13 shall forego the collection of any such tax or governmental assessment and to accept for
   filing and recordation any of the foregoing instruments or other documents without the
14 payment of any such tax or governmental assessment.

15 M.      Directors and Officers of the Reorganized Debtors:   On the Effective Date, the
   board of directors of the Reorganized Debtors or similar governing entities shall be
16 composed of one or more members appointed by the First Lien Steering Committee.  On the
   Effective Date, a chief executive officer or similar officer selected by the board of directors
17 of the Reorganized Debtors shall be appointed.  The identity of such officers and directors
18 shall be disclosed prior to the Confirmation Hearing.

19 N.      Management and Director Equity Incentive Plan:  The Reorganized Debtors reserve
   the right to implement a Management and Director Equity Incentive Plan.  The terms and
20 conditions of any Management and Director Equity Incentive Plan shall be determined by
   the Board of Directors of Newco.
21
22 O.      The Litigation Trust:   On the Effective Date, the Litigation Trust will be
   implemented pursuant to the terms of the Litigation Trust Agreement.  On the Effective
23 Date, pursuant to the terms of the Litigation Trust Agreement, the Debtors will transfer the
   Litigation Trust Assets for and on behalf of the Litigation Trust Beneficiaries, which will be
24 the Holders of Allowed Claims in Classes A-1, A-2 and C-1.  For all federal income tax
   purposes, the beneficiaries of the Litigation Trust shall be treated as grantors and owners
25 thereof and it is intended that the Litigation Trust be classified as a liquidating trust under
26 Section 301.7701-4 of the Treasury Regulations and that such trust is owned by its
   beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Litigation
27 Trust Beneficiaries be treated as if they had received a distribution of an undivided interest
28 in the Litigation Trust Assets and then contributed such interests to the Litigation Trust.  The
   Litigation Trust will initially be funded by the Litigation Trust Funding Amount, which will

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  be transferred to the Litigation Trust on the Effective Date and which will be repaid to the
2  Reorganized Debtors from the first proceeds received by the Litigation Trust.

3      The Litigation Trust shall issue non-transferable interests to Holders of Allowed First
   Lien Lender Claims, Allowed Second Lien Lender Claims, and Allowed General Unsecured
4  Claims (including any Allowed Rhodes Entities Claims) with each Holder of an Allowed
   Claim in each of the foregoing Classes of Claims receiving its pro rata share of the
5  Litigation Trust Interests allocable to each such Class of Claims.

6  P.      Preservation of Causes of Action:   In accordance with section 1123(b) of the
7  Bankruptcy Code, except as otherwise provided in the Plan, the Reorganized Debtors and
   the Litigation Trust shall retain and may enforce all rights to commence and pursue, as
8  appropriate, any and all Causes of Action, whether arising before or after the Petition Date,
   including any actions specifically enumerated in the Plan Supplement, and the Reorganized
9  Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved
10 notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors and the
   Litigation Trust, as applicable, may pursue such Causes of Action, as appropriate, in
11 accordance with the best interests of the Reorganized Debtors and the Litigation Trust, as
   applicable.  No Entity may rely on the absence of a specific reference in the Plan, the Plan
12 Supplement, or the Disclosure Statement to any Cause of Action against them as any
13 indication that the Debtors, Reorganized Debtors or the Litigation Trust, as applicable, will
   not pursue any and all available Causes of Action against them.  The Reorganized Debtors
14 expressly reserve all rights to prosecute any and all Causes of Action against any Entity,
   except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an
15 Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in
16 the Plan or a Bankruptcy Court order, the Reorganized Debtors and the Litigation Trust, as
   applicable, expressly reserve all Causes of Action for later adjudication and, therefore, no
17 preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue
   preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall
18 apply to such Causes of Action upon, after, or as a consequence of Confirmation or the
19 occurrence of the Effective Date.

20     The Reorganized Debtors and the Litigation Trust, as applicable, reserve and shall
21 retain the foregoing Causes of Action notwithstanding the rejection or repudiation of any
   executory contract or unexpired lease during the Chapter 11 Cases or pursuant to the Plan.
22 In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a
   Debtor may hold against any Entity shall vest in the Reorganized Debtors and the Litigation
23 Trust, as the case may be, on the Effective Date.  The applicable Reorganized Debtor and
   the Litigation Trust, as applicable, through its authorized agents or representatives, shall
24 retain and may exclusively enforce any and all such Causes of Action belonging to it.  The
25 Reorganized Debtors and the Litigation Trust, as applicable, shall have the exclusive right,
   authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle,
26 compromise, release, withdraw, or litigate to judgment any such Causes of Action and to
   decline to do any of the foregoing without the consent or approval of any third party or
27 further notice to or action, order, or approval of the Bankruptcy Court.   Neither the
28 Litigation Trust nor the Reorganized Debtors shall commence any litigation against the
   Rhodes Entities until the Bankruptcy Court rules on the allowance of the Rhodes Entities

Claims set forth in Proofs of Claim, included in the Debtors' Schedules or otherwise set forth in the Mediation Term Sheet. To the extent any statute of limitations to pursue any claims belonging to the Debtors against the Rhodes Entities would lapse from the execution date of the Mediation Term Sheet through the pending the Bankruptcy Court's resolution of the allowance of the Rhodes Entities Claims, the Rhodes Entities shall be deemed to have consented to an extension of the applicable statute of limitations until sixty days following the Bankruptcy Court's ruling on the allowance of the Rhodes Entities Claims. The Litigation Trust shall have no liability to any entity for any Claims or Causes of Action it determines not to pursue.

Q.    HOA Board Seats:  The Rhodes Entities shall ensure that designees identified by the Reorganized Debtors shall replace the Rhodes Entities on any HOA boards that in any way are related to the Debtors, Reorganized Debtors or their businesses and Declarant rights or the like shall be transferred to the Reorganized Debtors or their designee(s).

R.    Licensing:  The Rhodes Entities shall take commercially reasonable steps and/or enter into any agreements or similar documentation reasonably necessary to ensure the Reorganized Debtors' continued use of all of the Debtors' applicable professional licenses at no cost to the Rhodes Entities for a period of up to twelve months following the Effective Date. To the extent, Sagebrush Enterprises, Inc. shall have rescinded by September 25, 2009 its revocation of its indemnity of the Nevada contractors' license held by Rhodes Design & Development Corporation and such rescission did not negatively affect the general contractor's license held by Rhodes Design & Development Corporation, Sagebrush shall be entitled to file an Administrative Claim on behalf of any and all claims asserted against Sagebrush as a result of Sagebrush being the indemnitor that arose from and after the effectiveness of Sagebrush's recission of its indemnity through the Effective Date, provided that the allowance of such Administrative Claim shall be subject to resolution by the Bankruptcy Court and/or such other court(s) of competent jurisdiction. The Reorganized Debtors shall indemnify Sagebrush for any and all claims asserted against Sagebrush as a result of Sagebrush being the indemnitor that arise from and after the Effective Date. Professional licenses include, but are not limited to the Nevada State Contractor's Board license, and any other general business or similar licenses in any county, state, municipality or other jurisdiction in which the Reorganized Debtors conduct business or own assets as of the Effective Date. The Rhodes Entities shall use commercially reasonable efforts to maintain third party agreements with their real estate brokers and sales agents.

S.    Transfer of Rhodes Ranch Golf Course:  On the Effective Date, the applicable Rhodes Entities shall transfer their equity interests in the entity that owns the Rhodes Ranch Golf Course to the Reorganized Debtors (together with any equipment, golf carts, contracts or other assets determined by the First Lien Steering Committee to be necessary for the operation of the Rhodes Ranch Golf Course) pursuant to the terms of a stock transfer agreement in form and substance acceptable to the First Lien Steering Committee and Rhodes, subject to any outstanding debt on the Rhodes Ranch Golf Course. The stock transfer agreement shall contain representations by the Rhodes Entities that the entity that owns the Rhodes Ranch Golf Course does not have any liabilities other than ordinary course liabilities related to the Rhodes Ranch Golf Course and indemnification provisions in favor of the Reorganized Debtors by the Rhodes Entities for any non-ordinary course liabilities.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

In addition, prior to the deadline for filing objections to the Disclosure Statement, the Rhodes Entities shall provide the First Lien Steering Committee with a list of all liabilities of the entity that owns the Rhodes Ranch Golf Course, a lien analysis and copies of all contracts related to the Rhodes Ranch Golf Course and to which the entity that owns the Rhodes Ranch Golf Course is a party, each of which must be acceptable to the First Lien Steering Committee.

The existing debt outstanding on the Rhodes Ranch Golf Course shall be refinanced on or before the Effective Date, for a period of no less than twelve (12) months from the Effective Date, on terms and conditions acceptable to Rhodes and the First Lien Steering Committee. The parties will work together in good faith to refinance the existing debt. The Reorganized Debtors shall pay the reasonable costs and expenses associated with the refinancing; provided, that the terms of such refinancing are acceptable to the First Lien Steering Committee. The First Lien Steering Committee acknowledges that the loan documentation may provide that, upon the transfer of the Rhodes Ranch Golf Course to the Reorganized Debtors on the Effective Date, additional collateral from the Reorganized Debtors may be required. The Rhodes Entities shall transfer to the Reorganized Debtors on the Effective Debt any contracts related to the operation of and revenue generated by any cell towers located on the property of the Rhodes Ranch Golf Course. Any funds received after July 31, 2009 from the Las Vegas Valley Water District or other similar entity as an incentive for converting the golf course from a green course to a desert course shall be used for operating expenses associated with the Rhodes Ranch Golf Course, with any excess to become property of the Reorganized Debtors on the Effective Date.

Rhodes and/or his designee shall have the absolute right to repurchase the Rhodes Ranch Golf Course from the Reorganized Debtors at eight (8) years from the Effective Date for $5.9 million in cash. The Reorganized Debtors may require Rhodes to purchase the Rhodes Ranch Golf Course any time between four (4) and eight (8) years from the Effective Date for $5.9 million in cash provided that the Reorganized Debtors shall provide Rhodes with at least one year advance notice of its intent to sell the Rhodes Ranch Golf Course back to Rhodes. Such transfer shall occur on the applicable anniversary date of the Effective Date. For the avoidance of doubt, if the Reorganized Debtors put the Rhodes Ranch Golf Course to Rhodes in accordance with the terms hereof and Rhodes fails to comply with his obligation to purchase the Rhodes Ranch Golf Course, Rhodes shall be deemed to have forfeited his option to purchase the Rhodes Ranch Golf Course.

On the Effective Date, Rhodes's obligations to comply with the repurchase shall be secured by either (i) $500,000 in cash in an escrow account or (ii) property worth at least $2 million (the "Golf Course Security Property"), with the value of such property to be agreed to by Rhodes and the First Lien Steering Committee or otherwise valued by an independent third party appraisal firm acceptable to both Rhodes and the First Lien Steering Committee (except Cushman Wakefield). In the event that Rhodes does not meet the repurchase request, provided that the Rhodes Ranch Golf Course is in the standard condition (defined below), then the Reorganized Debtors shall be entitled to liquidated damages in the form of security pledged (i.e., the $500,000 or the Golf Course Security Property).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

So long as Rhodes has not defaulted on his obligation to repurchase the Rhodes Ranch Golf Course, Rhodes shall have the absolute and sole discretion to replace the Golf Course Security Property with $500,000 in cash on 30 days written notice to the Reorganized Debtors. Upon deposit of the $500,000 in cash, the Golf Course Security Property shall be released to Rhodes or his designee. Notwithstanding anything to the contrary contained herein, if the Rhodes Ranch Golf Course is not maintained with substantially the same performance and rating criteria at the time of the repurchase request as verified by an independent third party rating agency as it was on the Effective Date ("Standard Condition"), James Rhodes can (i) require the Reorganized Debtors to cure any conditions to return the Rhodes Ranch Golf Course to its Standard Condition (provided, that the cost of such cure does not exceed $500,000), or (ii) choose not to purchase the Rhodes Ranch Golf Course. Upon either the repurchase of the Rhodes Ranch Golf Course or the written decision to not repurchase the Rhodes Ranch Golf Course (in accordance with the preceding sentence), the Golf Course Security Property or the $500,000 Cash (if not applied to the repurchase of the Rhodes Ranch Golf Course) shall be returned to Rhodes within 30 days.

On the Effective Date, the Reorganized Debtors shall record a memorandum of agreement against the Rhodes Ranch Golf Course to evidence the above.

T.     Cash Payment:  The Rhodes Entities shall make a payment to the Reorganized Debtors of $3.5 million in Cash on the Effective Date.

U.     Transfer of Arizona Assets:  On the Effective Date, pursuant to an asset transfer agreement in form and substance acceptable to the First Lien Steering Committee and the Rhodes Entities, the Debtors shall transfer Pravada and the other Arizona assets set forth on Attachment D to the Mediation Term Sheet, plus the Golden Valley Ranch tradename to the Rhodes Entities free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code; provided, that the non-First Lien Lender/Second Lien Lender liens do not exceed $60,000; provided that such assets shall not include assets owned by Pinnacle Grading located in Arizona and related contracts associated with the assets. The Debtors shall provide James Rhodes notice of any proposed sale of the Pinnacle assets, and James Rhodes shall be granted a right to bid on the sale of such assets within 10 days of such notice. The Rhodes Entities shall permit storage of Pinnacle Grading equipment at current locations at no cost to the Reorganized Debtors for a period through six months following the Effective Date.

All executory contracts and unexpired leases associated solely with Arizona shall be assumed and assigned to the Rhodes Entities (or their designee), at no cost to the Debtors or the Reorganized Debtors and all cure costs associated therewith shall be borne by the Rhodes Entities.

V.     Trademarks and Trade Names:  Within the earlier of thirty (30) days following: (i) upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E to the Mediation Term Sheet.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

W.    Self Insured Retention Obligations:    The Reorganized Debtors shall indemnify subcontractors that are obligated under any of the Reorganized Debtors' existing insurance policies for any post-Effective Date self insured retention obligations paid and/or to be paid by such subcontractors pursuant to such existing insurance policies.

X.    Bond Replacement or Indemnification:    Those performance bonds guaranteed by the Rhodes Entities in favor of the Debtors shall be replaced on a renewal date by new performance bonds.   In the alternative, subject to the Rhodes Entities being reasonably satisfied with the creditworthiness of the Reorganized Debtors, which shall be satisfied solely as of the Effective Date by the Court finding that the Plan is feasible, the existing performance bonds guaranteed by the Rhodes Entities and such guarantees shall remain in place. The applicable Rhodes Entity's agreement to remain a guarantor under the existing performance bonds as such performance bonds may be renewed shall be at no cost to the Rhodes Entities (including, but not limited to, the payment of bond premiums).   In the event the Reorganized Debtors fail to perform their obligations underlying such renewed performance bonds after the Effective Date, the Reorganized Debtors will indemnify the Rhodes Entities under such outstanding performance bonds for damages incurred by the Rhodes Entities on account of their guarantee of such performance bonds solely as a result of the Reorganized Debtors' failure to perform such obligations subsequent to the Effective Date.   The Reorganized Debtors shall use commercially reasonable efforts to replace all outstanding performance bonds backstopped by Rhodes Entities within 30 months of the Effective Date.   The Bankruptcy Court shall retain jurisdiction to resolve any disputes arising out of this paragraph.

Contingent Bond Indemnity Claims will be released in the ordinary course of business as time passes or as work on the underlying project is completed.   To the extent that a Contingent Bond Indemnity Claim becomes an Allowed or estimated Claim, such Contingent Bond Indemnity Claim shall be treated as a General Unsecured Claim.

Y.    Stanley Engineering Litigation    In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent shall engage in good faith negotiations to ensure that the Second Lien Lenders receive consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration.   In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation).

## ARTICLE V.
TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases:    Except as otherwise provided in the Plan, the Debtors' executory contracts or unexpired leases not

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1    assumed or rejected pursuant to a Bankruptcy Court order prior to the Effective Date shall
2    be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, except for
     those executory contracts or unexpired leases: (1) listed on the schedule of "Assumed
3    Executory Contracts and Unexpired Leases" in the Plan Supplement; (2) that are
4    Intercompany Contracts, in which case such Intercompany Contracts are deemed
     automatically assumed by the applicable Debtor as of the Effective Date, unless such
5    Intercompany Contract previously was rejected by the Debtors pursuant to a Bankruptcy
     Court order, is the subject of a motion to reject pending on the Effective Date; (3) that are
6    the subject of a motion to assume or reject pending on the Effective Date (in which case
     such assumption or rejection and the effective date thereof shall remain subject to a
7    Bankruptcy Court order); (4) that are subject to a motion to reject with a requested effective
8    date of rejection after the Effective Date; or (5) that are otherwise expressly assumed or
     rejected pursuant to the Plan.  Entry of the Confirmation Order shall constitute a Bankruptcy
9    Court order approving the assumptions or rejections of such executory contracts or
10   unexpired leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the
     Bankruptcy Code.    Unless otherwise indicated, all assumptions or rejections of such
11   executory contracts and unexpired leases in the Plan are effective as of the Effective Date.
     Each such executory contract and unexpired lease assumed pursuant to the Plan or by
12   Bankruptcy Court order but not assigned to a third party prior to the Effective Date shall
13   revest in and be fully enforceable by the applicable contracting Reorganized Debtor in
     accordance with its terms, except as such terms may have been modified by such order.
14   Notwithstanding anything to the contrary in the Plan, the Plan Proponent and the
     Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement
15   the schedules of executory contracts or unexpired leases identified in the Plan Supplement at
16   any time through and including fifteen days after the Effective Date.  All executory contracts
     and unexpired leases associated solely with the Arizona Assets shall be assumed and
17   assigned to the Rhodes Entities (or their designee) to the extent set forth on the schedule of
18   Assumed Executory Contracts and Unexpired Leases in the Plan Supplement, at no cost to
     the Debtors or the Reorganized Debtors and all Cure costs associated with such scheduled
19   Arizona contracts or leases shall be borne by the Rhodes Entities.

20        B.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases:  With
     respect to each of the Debtors' executory contracts or unexpired leases listed on the schedule
21   of "Assumed Executory Contracts and Unexpired Leases," the Plan Proponent shall have
     designated a proposed Cure, and the assumption of such executory contract or unexpired
22   lease may be conditioned upon the disposition of all issues with respect to Cure.  Any
     provisions or terms of the Debtors' executory contracts or unexpired leases to be assumed
23   pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by
24   Cure, or by an agreed-upon waiver of Cure.  Except with respect to executory contracts and
     unexpired leases in which the Plan Proponent or the Debtors, with the consent of the First
25   Lien Steering Committee, and the applicable counterparties have stipulated in writing to
26   payment of Cure, all requests for payment of Cure that differ from the amounts proposed by
     the Debtors must be Filed with the Court on or before the Cure Bar Date.  Any request for
27   payment of Cure that is not timely Filed shall be disallowed automatically and forever
     barred from assertion and shall not be enforceable against any Reorganized Debtor, without
28   the need for any objection by the Reorganized Debtors or further notice to or action, order,
     or approval of the Bankruptcy Court, and any Claim for Cure shall be deemed fully satisfied,

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  released, and discharged upon payment by the Debtors of the amounts listed on the proposed
2  Cure schedule, notwithstanding anything included in the Schedules or in any Proof of Claim
   to the contrary; provided, however, that nothing shall prevent the Reorganized Debtors from
3  paying any Cure despite the failure of the relevant counterparty to File such request for
4  payment of such Cure.  The Reorganized Debtors also may settle any Cure without further
   notice to or action, order, or approval of the Bankruptcy Court.

5          If the Debtors or Reorganized Debtors, as applicable, or First Lien Steering
6  Committee object to any Cure or any other matter related to assumption, the Bankruptcy
   Court shall determine the Allowed amount of such Cure and any related issues.  If there is a
7  dispute regarding such Cure, the ability of the Reorganized Debtors or any assignee to
8  provide "adequate assurance of future performance" within the meaning of section 365 of
   the Bankruptcy Code, or any other matter pertaining to assumption, then Cure shall occur as
9  soon as reasonably practicable after entry of a Final Order resolving such dispute, approving
10 such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors
   with the consent of the First Lien Steering Committee, or the Reorganized Debtors and the
11 counterparty to the executory contract or unexpired lease.  Any counterparty to an executory
12 contract and unexpired lease that fails to object timely to the proposed assumption of any
   executory contract or unexpired lease will be deemed to have consented to such assumption.
13 The Debtors, with the consent of the First Lien Steering Committee, or the Reorganized
14 Debtors, as applicable, reserve the right either to reject or nullify the assumption of any
   executory contract or unexpired lease no later than thirty days after a Final Order
15 determining the Cure or any request for adequate assurance of future performance required
   to assume such executory contract or unexpired lease.

16         Assumption of any executory contract or unexpired lease pursuant to the Plan or
17 otherwise shall result in the full release and satisfaction of any Claims or defaults, whether
   monetary or nonmonetary, including defaults of provisions restricting the change in control
18 or ownership interest composition or other bankruptcy-related defaults, arising under any
19 assumed executory contract or unexpired lease at any time prior to the effective date of
   assumption.  Any Proofs of Claim Filed with respect to an executory contract or unexpired
20 lease that has been assumed shall be deemed disallowed and expunged, without further
   notice to or action, order, or approval of the Bankruptcy Court.

21         All Cure costs associated with Executory Contracts related to the Arizona Assets
22 shall be borne by the Rhodes Entities.

23 C.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired
   Leases:  Rejection or repudiation of any executory contract or unexpired lease pursuant to
24 the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to
   the Debtors under such contracts or leases.    In particular, notwithstanding any
25 nonbankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not
26 waive any right to receive, or any continuing obligation of a counterparty to provide,
   insurance coverage, utilitiy services, warranties, indemnity, guarantee of workmanship, or
27 continued maintenance obligations on goods or services previously purchased by the
   contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected
28 or repudiated executory contracts.  The Reorganized Debtors expressly reserve and do not

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  waive the right to receive coverage under any past insurance policy to extent that coverage
2  has not expired under the terms of the insurance policy, regardless of whether such
   insurance policy is listed as an assumed contract.  Similarly, the Reorganized Debtors
3  expressly reserve and do not waive the right to receive services under any contract with a
   utility provider, regardless of whether such agreement with a utility provider is listed as an
4  assumed contract.

5      D.    Claims Based on Rejection or Repudiation of Executory Contracts and Unexpired
6  Leases:  Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim
   asserting Claims arising from the rejection or repudiation of the Debtors' executory
7  contracts and unexpired leases pursuant to the Plan or otherwise must be Filed with the
   Claims and Solicitation Agent no later than the Rejection Damages Claim Deadline.  Any
8  Proofs of Claim arising from the rejection or repudiation of the Debtors' executory contracts
9  or unexpired leases that are not timely Filed by the Rejection Damages Claim Deadline shall
   be disallowed automatically, forever barred from assertion, and shall not be enforceable
10 against any Reorganized Debtor without the need for any objection by the Reorganized
   Debtors or further notice to or action, order, or approval of the Bankruptcy Court, and any
11 Claim arising out of the rejection or repudiation of the executory contract or unexpired lease
12 shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the
   Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the
13 rejection or repudiation of the Debtors' executory contracts and unexpired leases shall be
14 classified as General Unsecured Claims.

15     E.    Intercompany Contracts, Contracts, and Leases Entered Into After the Petition Date:
   Intercompany Contracts, contracts, and leases entered into after the Petition Date by any
16 Debtor, and any executory contracts and unexpired leases assumed by any Debtor, may be
   performed by the applicable Reorganized Debtor in the ordinary course of business.
17

18     F.    Home Sales:  All pending home sale contracts shall be assumed by the applicable
   Reorganized Debtor.

19     G.    Warranties:  All eligible prepetition home sale contracts with one-year warranty
20 obligations shall be performed in the ordinary course of business of the Reorganized
   Debtors.  Upon the Effective Date, any remaining warranty obligations that are to be
21 assumed by the Reorganized Debtors, which shall only be assumed with the consent of the
   First Lien Steering Committee, shall be transferred to the Reorganized Debtors.  Warranty
22 obligations that are not expressly assumed shall be rejected and treated as General
   Unsecured Claims.
23
   H.    Modification of Executory Contracts and Unexpired Leases Containing Equity
24 Ownership Restrictions:  All executory contracts and unexpired leases to be assumed, or
   conditionally assumed, under the Plan pursuant to sections 365 and 1123 of the Bankruptcy
25 Code shall be deemed so assumed, or so conditionally assumed, without giving effect to any
26 provisions contained in such executory contracts or unexpired leases restricting the change
   in control or ownership interest composition of any or all of the Debtors, and upon the
27 Effective Date (1) any such restrictions shall be deemed of no further force and effect and
   (2) any breaches that may arise thereunder as a result of Confirmation or Consummation
28 shall be deemed waived by the applicable non-Debtor counterparty.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

I.      Modifications, Amendments, Supplements, Restatements, or Other Agreements: Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts and unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

J.      Reservation of Rights:  Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors or the First Lien Steering Committee that any such contract or lease is in fact an executory contract or unexpired lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, with the consent of the First Lien Steering Committee, or Reorganized Debtors shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

K.      Nonoccurrence of Effective Date:  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VI.**
PROCEDURES FOR RESOLVING DISPUTED CLAIMS

A.      Allowance of Claims:  After the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had with respect to any Claim immediately prior to the Effective Date, including the Causes of Action referenced in Article IV.

B.      Claims Administration Responsibilities:  Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.      Estimation of Claims:  Before or after the Effective Date, the First Lien Steering Committee or the Reorganized Debtors, as applicable, may (but are not required to) at any

time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty days after the date on which such Claim is estimated.

D.    Adjustment to Claims Without Objection:    Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. Beginning on the end of the first full calendar quarter that is at least ninety days after the Effective Date, the Reorganized Debtors shall publish and File every calendar quarter a list of all Claims that have been paid, satisfied, amended, or superseded during such prior calendar quarter.

E.    Time to File Objections to Claims:    Any objections to Claims shall be Filed on or before the later of (1) the applicable Claims Objection Deadline and (2) such date as may be fixed by the Bankruptcy Court, after notice and a hearing, whether fixed before or after the date that is one year after the Effective Date. Notwithstanding the foregoing, the First Lien Steering Committee, any First Lien Lender and/or the Reorganized Debtors shall have until sixty days following the Effective Date to object to the Proofs of Claim filed by the Rhodes Entities in the Debtors' chapter 11 cases (provided, that, such objections shall not seek to subordinate the Rhodes Entities Claims, if Allowed).

F.    Disallowance of Claims:    Except as set forth herein, any Claims held by an Entity from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors or the Litigation Trust, as applicable.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER.

G.     Offer of Judgment:  The Reorganized Debtors shall be authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the Holder of a Claim must pay the costs incurred by the Reorganized Debtors after the making of such offer, the Reorganized Debtors shall be entitled to setoff such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

H.     Amendments to Claims:  On or after the Effective Date, except as expressly authorized in the Plan, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

### ARTICLE VII.
PROVISIONS GOVERNING DISTRIBUTIONS

A.     Total Enterprise Value for Purposes of Distributions Under the Plan:  Distributions of Newco Equity Interests to Holders of Allowed First Lien Lender Claims shall be based upon, among other things, the Newco Total Enterprise Value.  For purposes of distribution, the Newco Equity Interests shall be deemed to have the value assigned to them based upon, among other things, the Newco Total Enterprise Value, regardless of the date of distribution.

B.     Distributions on Account of Claims Allowed as of the Effective Date:  Except as otherwise provided in the Plan, a Final Order, or as agreed to by the First Lien Steering Committee, initial distributions under the Plan on account of Claims Allowed on or before the Effective Date shall be made on the Distribution Date; provided, however, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (2) Allowed Priority Tax Claims, unless otherwise agreed, shall be paid in full in Cash on the Distribution Date or over a five-year period as provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by applicable non-bankruptcy law.

C.     Distributions on Account of Claims Allowed After the Effective Date:

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1. <u>Payments and Distributions on Disputed Claims</u>:  Except as otherwise provided in the Plan, a Final Order, or as agreed to by the First Lien Steering Committee prior to the Effective Date or the Reorganized Debtors after the Effective Date, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the Periodic Distribution Date that is at least thirty days after the Disputed Claim becomes an Allowed Claim; <u>provided</u>, <u>however</u>, that (a) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date, unless otherwise agreed, shall be paid in full in Cash on the Periodic Distribution Date that is at least thirty days after the Disputed Claim becomes an Allowed Claim or over a five-year period as provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by applicable non-bankruptcy law.

2. <u>Special Rules for Distributions to Holders of Disputed Claims</u>: Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Claim has been Allowed.  In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtors shall establish appropriate reserves for potential payment of such Claims or Interests pursuant to Article VII.C.3. Subject to Article IX.A.5, all distributions made pursuant to the Plan on account of an Allowed Claim shall be made together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to Holders of Allowed Claims included in the applicable Class.

3. <u>Reserve of Litigation Trust Interests</u>:  On the Effective Date, the Reorganized Debtors shall maintain in reserve Litigation Trust Interests for distribution to Holders of Disputed Claims that become Allowed after the Effective Date.  As Disputed Claims are Allowed, the Distribution Agent shall distribute, in accordance with the terms of the Plan, Litigation Trust Interests to Holders of Allowed Claims, and the Disputed Claims Reserve shall be adjusted.  The Distribution Agent shall withhold in the Disputed Claims Reserve any payments or other distributions made on account of, as well as any obligations arising from, the Litigation Trust Interests initially withheld in the Disputed Claims Reserve, to the extent that such Litigation Trust Interests continue to be withheld in the Disputed Claims Reserve at the time such distributions are made or such obligations arise, and such payments or other distributions shall be held for the benefit of Holders of Disputed Claims whose Claims, if Allowed, are entitled to distributions under the Plan.  The Reorganized Debtors may (but are not required to) request estimation for any Disputed Claim that is contingent or unliquidated.

Notwithstanding anything in the applicable Holder's Proof of Claim or otherwise to the contrary, the Holder of a Claim shall not be entitled to receive or recover a distribution under the Plan on account of a Claim in excess of the lesser of the amount: (a) stated in the Holder's Proof of Claim, if any, as of the Distribution Record Date, plus interest thereon to the extent provided for by the Plan; (b) if the Claim is denominated as contingent or unliquidated as of the Distribution Record Date, the amount that the Reorganized Debtors elect to withhold on account of such Claim in the Disputed Claims Reserve and set forth in the Plan Supplement, or such other amount as may be estimated by the Bankruptcy Court prior to the Confirmation Hearing; or (c) if a Claim has been estimated, the amount deposited in the Disputed Claim Reserve to satisfy such Claim after such estimation.

D.      Delivery of Distributions

1.      Record Date for Distributions:  On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, if a Claim is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      Distribution Agent:  The Distribution Agent shall make all distributions required under the Plan, except that distributions to Holders of Allowed Claims governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement.

3.      Delivery of Distributions in General:  Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Distribution Agent or a Servicer, as appropriate: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related Proof of Claim; (d) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Distribution Agent has not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf.  Except as otherwise provided in the Plan, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors, the First Lien Steering Committee, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

4.    <u>Accrual of Distributions and Other Rights</u>:  For purposes of determining the accrual of distributions or other rights after the Effective Date, the Newco Equity Interests and the Litigation Trust Interests, as applicable, shall be deemed distributed as of the Effective Date regardless of the date on which they are actually issued, dated, authenticated, or distributed even though the Reorganized Debtors shall not make any such distributions or distribute such other rights until distributions of the Newco Equity Interests and the Litigation Trust Interests, as applicable, actually take place.

5.    <u>Allocation Between Principal and Accrued Interest</u>:  Except as otherwise provided in the Plan, distributions on account of Allowed Claims shall be treated as allocated first to principal and thereafter to any interest.

6.    <u>Compliance Matters</u>:  In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

7.    <u>Fractional, De Minimis, Undeliverable, and Unclaimed Distributions</u>:

a.    <u>Fractional Distributions</u>:  Notwithstanding any other provision of the Plan to the contrary, payments of fractions of shares of Newco Equity Interests or fractions of Litigation Trust Interests shall not be made.  The Distribution Agent shall not be required to make distributions or payments of fractions of Newco Equity Interests, Litigation Trust Interests or dollars.  Whenever any payment of Cash of a fraction of a dollar or payment of a fraction of Newco Equity Interests or fraction of Litigation Trust Interests pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars, half Newco Equity Interests or half Litigation Trust Interests or less being rounded down.

b.    <u>Undeliverable Distributions</u>:  If any distribution to a Holder of an Allowed Claim is returned to a Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until such Distribution Agent is notified in writing of such Holder's then-current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date.  Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

distribution reverts to the Reorganized Debtors pursuant to Article VII.D.7.c, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

c.    Reversion:    Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Reorganized Debtors and, to the extent such Unclaimed Distribution is a distribution of Newco Equity Interests, such Newco Equity Interests shall be deemed cancelled. Upon such revesting, the Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary. The provisions of the Plan regarding undeliverable distributions and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Debtors, made pursuant to any indenture or Certificate (but only with respect to the initial distribution by the Servicer to Holders that are entitled to be recognized under the relevant indenture or Certificate and not with respect to Entities to whom those recognized Holders distribute), notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property law.

8.    Manner of Payment Pursuant to the Plan:    Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Reorganized Debtors by check or by wire transfer. Checks issued by the Distribution Agent or applicable Servicer on account of Allowed Claims shall be null and void if not presented within 120 days after issuance, but may be requested to be reissued until the distribution revests in the Reorganized Debtors pursuant to Article VII.D.7.c.

9.    Surrender of Cancelled Instruments or Securities:    On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a Certificate shall surrender such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer). Such Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate. No distribution of property pursuant to the Plan shall be made to or on behalf of any such Holder that is a Holder of a Claim unless and until such Certificate is received by the Distribution Agent or the Servicer or the unavailability of such Certificate is reasonably established to the satisfaction of the Distribution Agent or the Servicer. Any Holder of a Claim who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity acceptable to the Distribution Agent or the Servicer prior to the first anniversary of the Effective Date, shall have its Claim discharged with no further action, be forever barred from asserting any such Claim against the relevant Reorganized Debtor or its property, be deemed to have forfeited all rights and Claims with respect to such Certificate, and not participate in any distribution under the Plan; furthermore, all property with respect to such forfeited distributions, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors,

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

notwithstanding any federal or state escheat, abandoned, or unclaimed property law to the contrary.

E.    Claims Paid or Payable by Third Parties.

1.    <u>Claims Paid by Third Parties</u>:  The Claims and Solicitation Agent shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  Further, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.    <u>Claims Payable by Insurance</u>:  Holders of Insured Claims that are covered by the Debtors' insurance policies shall seek payment of such Claims from applicable insurance policies, provided that the Reorganized Debtors shall have no obligation to pay any amounts in respect of pre-petition deductibles or self insured retention amounts.  Allowed Insured Claim amounts in excess of available insurance shall be treated as General Unsecured Claims.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Claims and Solicitation Agent without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    <u>Applicability of Insurance Policies</u>:  Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Except for Claims and Causes of Action released under the Plan to the Released Parties and Exculpated Parties, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

F.    <u>Payment of $1.5 Million to First Lien Lenders</u>:  The $1,500,000 in Cash payable to the Holders of First Lien Lender Claims pursuant to Article III.B.1. shall be paid as follows:

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  (i) $400,000 on the Effective Date and (ii) the remaining up to $1,100,000 in five quarterly
2  installments of $220,000 beginning on the first day of the fourth month following the
3  Effective Date; provided, that the Reorganized Debtors shall have the right to defer up to
   two quarterly payments, with such deferred amount(s) to be paid on the next quarterly
4  payment date (and the amount scheduled to be paid on such quarterly payment date deferred
   for another quarter; provided that the full $1.5 million payment shall be made to the Holders
5  of First Lien Lender Claims within eighteen months of the Effective Date). Notwithstanding
6  the foregoing, in the event that, as of the Effective Date, the debt on the Rhodes Ranch Golf
   Course has been refinanced on terms and conditions acceptable to the First Lien Steering
7  Committee and the Reorganized Debtors have unrestricted cash of at least $3.5 million (after
   taking into account any amounts required to be paid to reduce the amount of debt on the
8  Rhodes Ranch Golf Course below $5.9 million and without taking into consideration
   amounts that may have been borrowed under any exit facility unless such amounts were
9  used to pay-down debt on the Rhodes Ranch Golf Course, in which case any amounts used
10 to pay-down debt on the Rhodes Ranch Golf Course will be deemed to reduce unrestricted
   cash on a dollar for dollar basis), then the initial $400,000 payment to the First Lien Lenders
11 will be increased as follows: (i) if unrestricted cash (as calculated above) is equal to or
   greater than $3.5 million but less than $4.5 million, the $400,000 payment shall be increased
12 to $700,000; (ii) if unrestricted cash (as calculated above) is equal to or greater than $4.5
   million but less than $5.5 million, the $400,000 payment shall be increased to $1,000,000;
13 and (iii) if unrestricted cash (as calculated above) is equal to or greater than $5.5 million, the
14 $400,000 payment shall be increased to $1.5 million, in each case with the subsequent
   quarterly installments reduced by a corresponding amount to provide for equal payments
15 over the payout periods discussed above. In no event shall the aggregate Cash payments to
16 the First Lien Lenders exceed $1.5 million.

17      G.      General Unsecured Claims Purchase: The First Lien Lenders have agreed to use the
   aggregate $1.5 million Cash payment provided to them under the Plan to acquire those
18 General Unsecured Claims of the Creditors to be listed in a schedule to be included in the
   Plan Supplement (the "Claim Purchase Schedule") to the extent such Claims remain
19 outstanding as of the Effective Date; provided that (i) each Holder of a Claim so listed is the
   original Holder of such Claim and (ii) such Claim(s) is ultimately Allowed. The Claim
20 Purchase Schedule shall delineate whether such Claims are Allowed or Disputed and Claims
21 may be purchased only to the extent ultimately Allowed. Payments on account of the
   purchased Allowed Claims listed on the Claim Purchase Schedule shall be made on the
22 same time frame as the First Lien Lenders receive their allocable Cash payments under
23 Article VII.F of the Plan, with the First Lien Steering Committee determining the order in
   which Claims are purchased (which, in the first instance, shall be the order in which they are
24 listed on the Claim Purchase Schedule). The First Lien Lenders reserve the right to modify
   the Claim Purchase Schedule prior to or subsequent to the Effective Date without further
25 Court order; provided, that a Creditor may be removed from the Claim Purchase Schedule
26 only to the extent that (i) its Claims are not ultimately Allowed, (ii) its Claims are subject to
   setoff; (iii) such Creditor sells its Claim to a party other than the First Lien Lenders pursuant
27 to this Article VII.G of the Plan or (iv) the full $1.5 million has been used to purchase other
   Allowed Claims on the Claim Purchase Schedule before such Creditor's Claim is Allowed.
28 The First Lien Lenders shall be subrogated to the rights of Creditors whose Claims are
   purchased hereunder and any distributions otherwise allocable to the Holders of Claims