AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1    Notwithstanding anything in the applicable Holder's Proof of Claim or otherwise to
2  the contrary, the Holder of a Claim shall not be entitled to receive or recover a distribution
   under the Plan on account of a Claim in excess of the lesser of the amount: (a) stated in the
3  Holder's Proof of Claim, if any, as of the Distribution Record Date, plus interest thereon to
4  the extent provided for by the Plan; (b) if the Claim is denominated as contingent or
   unliquidated as of the Distribution Record Date, the amount that the Reorganized Debtors
5  elect to withhold on account of such Claim in the Disputed Claims Reserve and set forth in
6  the Plan Supplement, or such other amount as may be estimated by the Bankruptcy Court
   prior to the Confirmation Hearing; or (c) if a Claim has been estimated, the amount
7  deposited in the Disputed Claim Reserve to satisfy such Claim after such estimation.

8    D.    Delivery of Distributions

9        1.    Record Date for Distributions:  On the Distribution Record Date, the Claims
   Register shall be closed and any party responsible for making distributions shall be
10 authorized and entitled to recognize only those record Holders listed on the Claims Register
11 as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing,
   if a Claim is transferred twenty or fewer days before the Distribution Record Date, the
12 Distribution Agent shall make distributions to the transferee only to the extent practical and
13 in any event only if the relevant transfer form contains an unconditional and explicit
   certification and waiver of any objection to the transfer by the transferor.

14       2.    Distribution Agent:   The Distribution Agent shall make all distributions
15 required under the Plan, except that distributions to Holders of Allowed Claims governed by
   a separate agreement and administered by a Servicer shall be deposited with the appropriate
16 Servicer, at which time such distributions shall be deemed complete, and the Servicer shall
17 deliver such distributions in accordance with the Plan and the terms of the governing
   agreement.

18       3.    Delivery of Distributions in General:   Except as otherwise provided in the
19 Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed
   Claims shall be made to Holders of record as of the Distribution Record Date by the
20 Distribution Agent or a Servicer, as appropriate: (a) in accordance with Federal Rule of Civil
21 Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory
   set forth on any of the Proofs of Claim Filed by such Holder or other representative
22 identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed
23 or if the Debtors have been notified in writing of a change of address); (c) at the addresses
   set forth in any written notices of address changes delivered to the Distribution Agent after
24 the date of any related Proof of Claim; (d) at the addresses reflected in the Schedules if no
25 Proof of Claim has been Filed and the Distribution Agent has not received a written notice
   of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Cases on
26 the Holder's behalf.  Except as otherwise provided in the Plan, distributions under the Plan
   on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like
27 legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of
   the distributions in the manner set forth in the Plan.  The Debtors, the First Lien Steering
28 Committee, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not
   incur any liability whatsoever on account of any distributions under the Plan.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

4.    Accrual of Distributions and Other Rights:  For purposes of determining the accrual of distributions or other rights after the Effective Date, the Newco Equity Interests and the Litigation Trust Interests, as applicable, shall be deemed distributed as of the Effective Date regardless of the date on which they are actually issued, dated, authenticated, or distributed even though the Reorganized Debtors shall not make any such distributions or distribute such other rights until distributions of the Newco Equity Interests and the Litigation Trust Interests, as applicable, actually take place.

5.    Allocation Between Principal and Accrued Interest:  Except as otherwise provided in the Plan, distributions on account of Allowed Claims shall be treated as allocated first to principal and thereafter to any interest.

6.    Compliance Matters:  In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

7.    Fractional, De Minimis, Undeliverable, and Unclaimed Distributions:

a.    Fractional Distributions:  Notwithstanding any other provision of the Plan to the contrary, payments of fractions of shares of Newco Equity Interests or fractions of Litigation Trust Interests shall not be made.  The Distribution Agent shall not be required to make distributions or payments of fractions of Newco Equity Interests, Litigation Trust Interests or dollars.  Whenever any payment of Cash of a fraction of a dollar or payment of a fraction of Newco Equity Interests or fraction of Litigation Trust Interests pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars, half Newco Equity Interests or half Litigation Trust Interests or less being rounded down.

b.    Undeliverable Distributions:  If any distribution to a Holder of an Allowed Claim is returned to a Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until such Distribution Agent is notified in writing of such Holder's then-current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date.  Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

distribution reverts to the Reorganized Debtors pursuant to Article VII.D.7.c, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

c.    Reversion:    Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Reorganized Debtors and, to the extent such Unclaimed Distribution is a distribution of Newco Equity Interests, such Newco Equity Interests shall be deemed cancelled.    Upon such revesting, the Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.    The provisions of the Plan regarding undeliverable distributions and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Debtors, made pursuant to any indenture or Certificate (but only with respect to the initial distribution by the Servicer to Holders that are entitled to be recognized under the relevant indenture or Certificate and not with respect to Entities to whom those recognized Holders distribute), notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property law.

8.    Manner of Payment Pursuant to the Plan:    Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Reorganized Debtors by check or by wire transfer.  Checks issued by the Distribution Agent or applicable Servicer on account of Allowed Claims shall be null and void if not presented within 120 days after issuance, but may be requested to be reissued until the distribution revests in the Reorganized Debtors pursuant to Article VII.D.7.c.

9.    Surrender of Cancelled Instruments or Securities:    On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a Certificate shall surrender such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer).  Such Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.  No distribution of property pursuant to the Plan shall be made to or on behalf of any such Holder that is a Holder of a Claim unless and until such Certificate is received by the Distribution Agent or the Servicer or the unavailability of such Certificate is reasonably established to the satisfaction of the Distribution Agent or the Servicer.  Any Holder of a Claim who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity acceptable to the Distribution Agent or the Servicer prior to the first anniversary of the Effective Date, shall have its Claim discharged with no further action, be forever barred from asserting any such Claim against the relevant Reorganized Debtor or its property, be deemed to have forfeited all rights and Claims with respect to such Certificate, and not participate in any distribution under the Plan;  furthermore, all property with respect to such forfeited distributions, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors,

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  notwithstanding any federal or state escheat, abandoned, or unclaimed property law to the
2  contrary.

3  E.    Claims Paid or Payable by Third Parties.

4        1.    Claims Paid by Third Parties:    The Claims and Solicitation Agent shall
reduce in full a Claim, and such Claim shall be disallowed without a Claims objection
5  having to be Filed and without any further notice to or action, order, or approval of the
6  Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on
account of such Claim from a party that is not a Debtor or Reorganized Debtor.  Further, to
7  the extent a Holder of a Claim receives a distribution on account of such Claim and receives
8  payment from a party that is not a Debtor or a Reorganized Debtor on account of such
Claim, such Holder shall, within two weeks of receipt thereof, repay or return the
9  distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery
on account of such Claim from the third party and under the Plan exceeds the amount of
10  such Claim as of the date of any such distribution under the Plan.  The failure of such Holder
to timely repay or return such distribution shall result in the Holder owing the applicable
11  Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed
12  for each Business Day after the two-week grace period specified above until the amount is
repaid.

13        2.    Claims Payable by Insurance:  Holders of Insured Claims that are covered by
14  the Debtors' insurance policies shall seek payment of such Claims from applicable insurance
policies, provided that the Reorganized Debtors shall have no obligation to pay any amounts
15  in respect of pre-petition deductibles or self insured retention amounts.  Allowed Insured
16  Claim amounts in excess of available insurance shall be treated as General Unsecured
Claims.  No distributions under the Plan shall be made on account of an Allowed Claim that
17  is payable pursuant to one of the Debtors' insurance policies until the Holder of such
18  Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the
extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the
19  extent adjudicated by a court of competent jurisdiction), then immediately upon such
20  insurers' agreement, such Claim may be expunged to the extent of any agreed upon
satisfaction on the Claims Register by the Claims and Solicitation Agent without a Claims
21  objection having to be Filed and without any further notice to or action, order, or approval of
the Bankruptcy Court.

22        3.    Applicability of Insurance Policies:  Distributions to Holders of Allowed
23  Claims shall be in accordance with the provisions of any applicable insurance policy.
Except for Claims and Causes of Action released under the Plan to the Released Parties and
24  Exculpated Parties, nothing contained in the Plan shall constitute or be deemed a waiver of
25  any Cause of Action that the Debtors or any Entity may hold against any other Entity,
including insurers under any policies of insurance, nor shall anything contained herein
26  constitute or be deemed a waiver by such insurers of any defenses, including coverage
defenses, held by such insurers.

27
28  F.    Payment of $1.5 Million to First Lien Lenders:  The $1,500,000 in Cash payable to
the Holders of First Lien Lender Claims pursuant to Article III.B.1. shall be paid as follows:

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

(i) $400,000 on the Effective Date and (ii) the remaining up to $1,100,000 in five quarterly installments of $220,000 beginning on the first day of the fourth month following the Effective Date; provided, that the Reorganized Debtors shall have the right to defer up to two quarterly payments, with such deferred amount(s) to be paid on the next quarterly payment date (and the amount scheduled to be paid on such quarterly payment date deferred for another quarter; provided that the full $1.5 million payment shall be made to the Holders of First Lien Lender Claims within eighteen months of the Effective Date). Notwithstanding the foregoing, in the event that, as of the Effective Date, the debt on the Rhodes Ranch Golf Course has been refinanced on terms and conditions acceptable to the First Lien Steering Committee and the Reorganized Debtors have unrestricted cash of at least $3.5 million (after taking into account any amounts required to be paid to reduce the amount of debt on the Rhodes Ranch Golf Course below $5.9 million and without taking into consideration amounts that may have been borrowed under any exit facility unless such amounts were used to pay-down debt on the Rhodes Ranch Golf Course, in which case any amounts used to pay-down debt on the Rhodes Ranch Golf Course will be deemed to reduce unrestricted cash on a dollar for dollar basis), then the initial $400,000 payment to the First Lien Lenders will be increased as follows: (i) if unrestricted cash (as calculated above) is equal to or greater than $3.5 million but less than $4.5 million, the $400,000 payment shall be increased to $700,000; (ii) if unrestricted cash (as calculated above) is equal to or greater than $4.5 million but less than $5.5 million, the $400,000 payment shall be increased to $1,000,000; and (iii) if unrestricted cash (as calculated above) is equal to or greater than $5.5 million, the $400,000 payment shall be increased to $1.5 million, in each case with the subsequent quarterly installments reduced by a corresponding amount to provide for equal payments over the payout periods discussed above. In no event shall the aggregate Cash payments to the First Lien Lenders exceed $1.5 million.

G.    General Unsecured Claims Purchase: The First Lien Lenders have agreed to use the aggregate $1.5 million Cash payment provided to them under the Plan to acquire those General Unsecured Claims of the Creditors to be listed in a schedule to be included in the Plan Supplement (the "Claim Purchase Schedule") to the extent such Claims remain outstanding as of the Effective Date; provided that (i) each Holder of a Claim so listed is the original Holder of such Claim and (ii) such Claim(s) is ultimately Allowed. The Claim Purchase Schedule shall delineate whether such Claims are Allowed or Disputed and Claims may be purchased only to the extent ultimately Allowed. Payments on account of the purchased Allowed Claims listed on the Claim Purchase Schedule shall be made on the same time frame as the First Lien Lenders receive their allocable Cash payments under Article VII.F of the Plan, with the First Lien Steering Committee determining the order in which Claims are purchased (which, in the first instance, shall be the order in which they are listed on the Claim Purchase Schedule). The First Lien Lenders reserve the right to modify the Claim Purchase Schedule prior to or subsequent to the Effective Date without further Court order; provided, that a Creditor may be removed from the Claim Purchase Schedule only to the extent that (i) its Claims are not ultimately Allowed, (ii) its Claims are subject to setoff; (iii) such Creditor sells its Claim to a party other than the First Lien Lenders pursuant to this Article VII.G of the Plan or (iv) the full $1.5 million has been used to purchase other Allowed Claims on the Claim Purchase Schedule before such Creditor's Claim is Allowed. The First Lien Lenders shall be subrogated to the rights of Creditors whose Claims are purchased hereunder and any distributions otherwise allocable to the Holders of Claims

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  purchased by the First Lien Lenders shall be distributed pro rata to the Holders of First Lien
2  Lender Claims.  The Reorganized Debtors shall be authorized to make the foregoing
   payments to the Creditors on the Claim Purchase Schedule on behalf of the First Lien
3  Lenders with a corresponding reduction in the $1.5 million payable to the First Lien
4  Lenders.  Under no circumstances shall the First Lien Lenders (either directly or through the
   Reorganized Debtors) pay in excess of $1.5 million in the aggregate for the Claims on the
5  Claim Purchase Schedule.  The First Lien Steering Committee may, in its sole discretion
   (but after consultation with the Debtors and the Creditors' Committee), add Claims to the
6  Claim Purchase Schedule at any time; provided that the amount to be paid for all such
7  Claims listed on the Claim Purchase Schedule does not exceed $1.5 million in the aggregate
   regardless of the total amount of Allowed Claims reflected on the Claim Purchase Schedule.
8  In the event that Allowed Claims in excess of $1.5 million are listed on the Claim Purchase
   Schedule, Holders of Claims listed on the Claim Purchase Schedule shall have the right to
9  accept or decline payment of less than 100 cents on account of their Claims from the First
10 Lien Lenders.  No Creditor listed on the Claim Purchase Schedule shall receive in excess of
   100 cents on the dollar for its Claim, and the Reorganized Debtors shall not pursue Claims
11 under Bankruptcy Code section 547 against any Creditor whose Claim is purchased in
12 accordance with this Article VII.G.  The Plan shall serve as the notice of transfer of Claim
   required under Bankruptcy Rule 3001(e).    If no objections are received by the Voting
13 Deadline, the First Lien Lenders shall be authorized upon the Effective Date to effectuate
14 the foregoing Claim purchase transactions.

15                              **ARTICLE VIII.**
                      EFFECT OF CONFIRMATION OF THE PLAN

16     A.    Discharge of Claims and Termination of Interests:  Pursuant to section 1141(d) of
17 the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the
   distributions, rights, and treatment that are provided in the Plan shall be in complete
18 satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests,
19 and Causes of Action of any nature whatsoever, including any interest accrued on Claims or
   Interests from and after the Petition Date, whether known or unknown, against, liabilities of,
20 Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or
   properties, regardless of whether any property shall have been distributed or retained
21 pursuant to the Plan on account of such Claims and Interests, including demands, liabilities,
22 and Causes of Action that arose before the Effective Date, any liability (including
   withdrawal liability) to the extent such Claims or Interests relate to services performed by
23 employees of the Debtors prior to the Effective Date and that arise from a termination of any
24 employee, regardless of whether such termination occurred prior to or after the Effective
   Date, any contingent or non-contingent liability on account of representations or warranties
25 issued on or before the Effective Date, and all debts of the kind specified in sections 502(g),
   502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim
26 or Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to
27 section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or
   Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of
28 such a Claim or Interest has accepted the Plan.  Any default by the Debtors with respect to
   any Claim or Interest that existed immediately prior to or on account of the filing of the
   Chapter 11 Cases shall be deemed Cured on the Effective Date.  The Confirmation Order

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1    shall be a judicial determination of the discharge of all Claims and Interests subject to the
2    Effective Date occurring.

3    B.    Subordinated Claims:  The allowance, classification, and treatment of all Allowed
     Claims and Interests and the respective distributions and treatments under the Plan take into
4    account and conform to the relative priority and rights of the Claims and Interests in each
     Class in connection with any contractual, legal, and equitable subordination rights relating
5    thereto, whether arising under general principles of equitable subordination,
     section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the
6    Bankruptcy Code, the Plan Proponent or Reorganized Debtors, as applicable, reserve the
7    right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal,
     or equitable subordination relating thereto.
8
9    C.    Compromise and Settlement of Claims and Controversies:  Pursuant to section 363
     of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions
10   and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a
     good faith compromise of all Claims, Interests, and controversies relating to the contractual,
11   legal, and subordination rights that a Holder of a Claim may have with respect to any
     Allowed Claim or Interest, or any distribution to be made on account of such an Allowed
12   Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy
13   Court's approval of the compromise or settlement of all such Claims, Interests, and
     controversies, as well as a finding by the Bankruptcy Court that such compromise or
14   settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and
     Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the
15   Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without
16   any further notice to or action, order, or approval of the Bankruptcy Court, after the
     Effective Date, the Reorganized Debtors may compromise and settle Claims against them
17   and Causes of Action against other Entities.

18   **D.    Releases by the Debtors of the Released Parties:  Pursuant to section 1123(b) of
19   the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the
     Plan Supplement, for good and valuable consideration, including the service of the
20   Released Parties to facilitate the expeditious reorganization of the Debtors and the
     implementation of the restructuring contemplated by the Plan, on and after the
21   Effective Date, the Released Parties are deemed released by the Debtors, the
     Reorganized Debtors, and the Estates from any and all Claims, obligations, rights,
22   suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any
23   derivative Claims asserted on behalf of the Debtors, taking place on or before the
     Effective Date, whether known or unknown, foreseen or unforeseen, existing or
24   hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized
     Debtors or the Estates would have been legally entitled to assert in their own right
25   (whether individually or collectively) or on behalf of the Holder of any Claim or
26   Interest or other Entity, based on or relating to, or in any manner arising from, in
     whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of
27   the purchase or sale of any Security of the Debtors, the subject matter of, or the
     transactions or events giving rise to, any Claim or Interest that is treated in the Plan,
28   the business or contractual arrangements between any Debtor and any of the Released**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  Parties, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases,
2  the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or
   related agreements, instruments, or other documents, upon any other act or omission,
3  transaction, agreement, event, or other occurrence taking place on or before the
4  Effective Date.

5  E.    **Releases by the Debtors of the Rhodes Entities**:  The Rhodes Entities shall be
   deemed released from any and all Claims, obligations, rights, suits, damages, Causes of
6  Action, remedies, and liabilities whatsoever arising under chapter 5 of the Bankruptcy
   Code with respect to transfers made by the Debtors to the Rhodes Entities during the 2
7  years prior to the Petition Date; provided, however, that such release shall only apply
8  to transfers expressly set forth in the Schedules as Filed with the Bankruptcy Court as
   of August 1, 2009 or as disclosed in Attachment B to the Mediation Term Sheet.

9  F.    **Releases by First Lien Lenders of First Lien Lenders**  Pursuant to Bankruptcy
10 Rule 9019, and except as otherwise specifically provided in the Plan or the Plan
   Supplement, to the extent a First Lien Lender elects on its Ballot to release the First
11 Lien Lenders in accordance with this Section VIII.F., for good and valuable
12 consideration, on and after the Effective Date, each of the First Lien Lenders electing
   to grant this release, shall be deemed to release each of the other First Lien Lenders
13 that has elected to grant this release and each of their affiliates from any and all
14 Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities
   whatsoever, whether known or unknown, foreseen or unforeseen, existing or
15 hereinafter arising, in law, equity, or otherwise, that such First Lien Lender would
   have been legally entitled to assert against any other First Lien Lender that elected to
16 grant this release, based on or relating to, or in any manner arising from, in whole or
17 in part, the First Lien Credit Agreement, the First Lien Lender Claims, any other
   claims arising under or related to the First Lien Credit Agreement, the Debtors, the
18 Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to any
19 First Lien Lender Claim, the restructuring of the First Lien Lender Claims prior to or
   during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan
20 and Disclosure Statement, or related agreements, instruments, or other documents,
   upon any other act or omission, transaction, agreement, event, or other occurrence
21 taking place on or before the Effective Date; with such releases constituting an express
22 waiver and relinquishment by each First Lien Lender electing to grant this release of
   any claims, whether known or unknown that such First Lien Lender may have under
23 Section 1542 of the California Civil code or other analogous state or federal law related
   to the matters being released; provided, however, that Claims or liabilities arising out
24 of or relating to any act or omission of any First Lien Lender or any of its affiliates that
   constitutes gross negligence or willful misconduct shall not be released.

25 G.    **Exculpation**:  Except as otherwise specifically provided in the Plan or Plan
26 Supplement, no Exculpated Party shall have or incur, and each Exculpated Party is
   hereby released and exculpated from any Claim, obligation, Cause of Action, or
27 liability to one another or to any Exculpating Party for any Exculpated Claim, except
   for gross negligence, willful misconduct or fraud, but in all respects such Entities shall
28 be entitled to reasonably rely upon the advice of counsel with respect to their duties

and responsibilities pursuant to the Plan.  The Debtors, the First Lien Steering Committee and the Reorganized Debtors (and each of their respective agents, members, directors, officers, employees, advisors, and attorneys) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of the Securities pursuant to the Plan, and therefore are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**H.    Injunction**    Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims against the Debtors, and all Entities holding Interests, are permanently enjoined, from and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the Debtors or Reorganized Debtors account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors or the property or estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors or against the property or Estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding an indication in a Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise (provided, that, to the extent the Rhodes Entities Claims are Allowed, the Rhodes Entities, without the need to file any such motion, shall retain the right to assert a setoff against any Claims or Causes of Action that the Reorganized Debtors or Litigation Trust may assert against the Rhodes Entities, with the Reorganized Debtors and Litigation Trust, as applicable, reserving the right to challenge the propriety of any such attempted setoff, with any such challenge to be resolved by the Bankruptcy Court); and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

I.    Protection Against Discriminatory Treatment:  Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom such Reorganized Debtors have been associated, solely because one of the Debtors has been a debtor under chapter 11, has been

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11
2  Cases but before the Debtor is granted or denied a discharge) or has not paid a debt that is
   dischargeable in the Chapter 11 Cases.

3
4  J.    Setoffs:  Except as otherwise expressly provided for in the Plan, each Reorganized
   Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code),
5  applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may setoff
   against any Allowed Claim and the distributions to be made pursuant to the Plan on account
6  of such Allowed Claim (before any distribution is made on account of such Allowed Claim),
   any Claims, rights, and Causes of Action of any nature that such Debtor, Reorganized
7  Debtor or the Litigation Trust, as applicable, may hold against the Holder of such Allowed
8  Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not
   been otherwise compromised or settled on or prior to the Effective Date (whether pursuant
9  to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff
   nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by
10 such Reorganized Debtor or the Litigation Trust of any such Claims, rights, and Causes of
   Action that such Reorganized Debtor or the Litigation Trust may possess against such
11 Holder.  In no event shall any Holder of Claims be entitled to setoff any Claim against any
   Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless
12 such Holder has Filed a motion with the Bankruptcy Court requesting the authority to
13 perform such setoff on or before the Confirmation Date, and notwithstanding any indication
   in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any
14 right of setoff pursuant to section 553 or otherwise; provided, however, that, to the extent
   the Rhodes Entities Claims are Allowed, the Rhodes Entities, without the need to file any
15 such motion, shall retain the right to assert a setoff against any Claims or Causes of Action
16 that the Reorganized Debtors or Litigation Trust may assert against the Rhodes Entities,
   with the Reorganized Debtors and Litigation Trust, as applicable, reserving the right to
17 challenge the propriety of any such attempted setoff, with any such challenge to be resolved
18 by the Bankruptcy Court.

19 K.    Recoupment:  In no event shall any Holder of Claims or Interests be entitled to
   recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or
20 the Reorganized Debtors, as applicable, unless such Holder actually has performed such
   recoupment and provided notice thereof in writing to the Debtors and the First Lien Steering
21 Committee on or before the Confirmation Date, notwithstanding any indication in any Proof
22 of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any
   right of recoupment.

23
24 L.    Release of Liens:  Except as otherwise provided in the Plan or in any contract,
   instrument, release, or other agreement or document created pursuant to the Plan, on the
25 Effective Date and concurrently with the applicable distributions made pursuant to the Plan,
   all mortgages, deeds of trust, Liens, pledges, or other security interests against any property
26 of the Estates shall be fully released, and discharged, and all of the right, title, and interest of
   any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall
27 revert to the Reorganized Debtors and their successors and assigns.  Upon the Effective
   Date, the Confirmation Order shall be binding upon and govern the acts of all entities,
28 including, without limitation, all filing agents, filing officers, title agents, title companies,

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to release any mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates; and each of the foregoing persons and entities is hereby directed to accept for filing the Confirmation Order any and all of the documents and instruments necessary and appropriate to effectuate the discharge.

M.    Document Retention:  On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their current document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors in the ordinary course of business.  Copies of all Debtors' books and records shall be delivered to the Rhodes Entities at no cost to the Rhodes Entities on or prior to the Effective Date.

N.    Reimbursement or Contribution:  If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date: (1) such Claim has been adjudicated as noncontingent or (2) the relevant Holder of a Claim has Filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

**ARTICLE IX.**
ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

A.    Professional Claims:

1.    Final Fee Applications:  All final requests for payment of Claims of a Professional shall be Filed no later than forty-five days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

2.    Payment of Interim Amounts:  Except as otherwise provided in the Plan, Professionals shall be paid pursuant to the Interim Compensation Order.

3.    Reimbursable Expenses:  The reasonable fees and expenses incurred by (i) the First Lien Agent, including its professionals, to the extent provided by the First Lien Credit Agreement, (ii) the Second Lien Agent, including its professionals, to the extent provided by the Second Lien Credit Agreement (only to the extent the Class of Second Lien Lender Claims votes in favor of the Plan), and (iii) the First Lien Steering Committee, including its professionals, in connection with the Chapter 11 Cases shall be paid by the Debtors or Reorganized Debtors, as applicable, within 15 days of receipt of an invoice from such parties or their advisors.

4.    Post-Effective Date Fees and Expenses:  Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  ordinary course of business and without any further notice to or action, order, or approval of
2  the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and
   expenses related to implementation and Consummation incurred by the Reorganized
3  Debtors and First Lien Steering Committee.  Upon the Effective Date, any requirement that
4  Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in
   seeking retention or compensation for services rendered after such date shall terminate, and
5  the Reorganized Debtors may employ and pay any Professional in the ordinary course of
   business without any further notice to or action, order, or approval of the Bankruptcy Court.

6
7        5.      Substantial Contribution Compensation and Expenses:  Except as otherwise
   specifically provided in the Plan, any Entity who requests compensation or expense
8  reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to
   sections 503(b)(3), (4), and (5) of the Bankruptcy Code must File an application and serve
9  such application on counsel for the Debtors or Reorganized Debtors, as applicable, and the
10 First Lien Steering Committee and the Creditors' Committee, and as otherwise required by
   the Bankruptcy Court and the Bankruptcy Code on or before the Administrative Claim Bar
11 Date or be forever barred from seeking such compensation or expense reimbursement.

12 B.       Other Administrative Claims:  All requests for payment of an Administrative Claim
   must be Filed with the Claims and Solicitation Agent and served upon counsel to the
13 Debtors or Reorganized Debtors, as applicable, and the First Lien Steering Committee on or
14 before the Administrative Claim Bar Date.  Any request for payment of an Administrative
   Claim that is not timely Filed and served shall be disallowed automatically without the need
15 for any objection by the Debtors, Reorganized Debtors, or the First Lien Steering
   Committee.  The Reorganized Debtors may settle and pay any Administrative Claim in the
16 ordinary course of business without any further notice to or action, order, or approval of the
17 Bankruptcy Court.  In the event that any party with standing objects to an Administrative
   Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative
18 Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Claim
   need be Filed with respect to an Administrative Claim previously Allowed by Final Order.
19

20                                    ARTICLE X.
                        CONDITIONS PRECEDENT TO CONFIRMATION
21                      AND CONSUMMATION OF THE PLAN

22 A.       Conditions to Confirmation:    The following are conditions precedent to
   Confirmation that must be satisfied or waived in accordance with Article X.C:
23
24       1.      The Bankruptcy Court shall have approved the Disclosure Statement, in a
   manner acceptable to the Plan Proponent, as containing adequate information with respect to
25 the Plan within the meaning of section 1125 of the Bankruptcy Code.

26       2.      The Confirmation Order shall be in form and substance acceptable to the Plan
   Proponent.
27
28       3.      The terms and conditions of employment or retention of any Persons
   proposed to serve as officers or directors of Newco, including, without limitation, as to

52

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

compensation, shall be acceptable to the Plan Proponent and be set forth in the Plan Supplement.

4.      Any disclosures made pursuant to 11 U.S.C. § 1129(a)(5) shall be acceptable to the Plan Proponent.

5.      The most current version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein (including the Newco Bylaws and the Newco Charter) shall have been Filed in form and substance acceptable to the Plan Proponent.

B.      Conditions Precedent to the Effective Date:  The following are conditions precedent to Consummation that must be satisfied or waived in accordance with Article X.C:

1.      The Bankruptcy Court shall have authorized the assumption and rejection of executory contracts and unexpired leases by the Debtors as contemplated by Article V.

2.      The Confirmation Order shall have become a Final Order in form and substance acceptable to the Plan Proponent.

3.      The most current version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in form and substance acceptable to the Plan Proponent.

4.      The documents governing the New First Lien Notes, the Newco Charter, the Newco Bylaws and the Stockholders Agreement shall be in form and substance acceptable to the Plan Proponent.

5.      The Confirmation Date shall have occurred.

6.      The First Lien Steering Committee shall have designated and replaced each existing Qualified Employee of the Debtors with a new Qualified Employee for the Reorganized Debtors.

7.      The debt outstanding on the Rhodes Ranch Golf Course shall be refinanced on terms and conditions acceptable to Rhodes and the First Lien Steering Committee.

8.      Copies of all Debtors' books and records shall have been delivered to the Rhodes Entities at no cost to the Rhodes Entities.

9.      The Arizona Assets shall have been transferred to the Rhodes Entities (or their designee) free and clear of all liens and claims pursuant to section 363(f) of the Bankruptcy Code on the Effective Date; provided, that the non-First Lien Lender/Second Lien Lender liens do not exceed $60,000.

10.     The Debtors shall have assumed and assigned all executory contracts and unexpired leases related solely to the Arizona Assets to the Rhodes Entities (or their designee), at no cost to the Debtors or the Reorganized Debtors, with all Cure costs associated therewith to be borne by the Rhodes Entities.

11.    The tax structure set forth in Article IV.F shall be implemented.

12.    The Rhodes Entities and First Lien Steering Committee shall have agreed on the Golf Course Security Property.

13.    The Rhodes Entities shall have performed all of their obligations under the Plan including, without limitation, depositing $3.5 million in Cash in an account designated by the Debtors, with the consent of the First Lien Steering Committee, and transferred the Rhodes Ranch Golf Course and related contracts and assets as required by Article IV.S. to the Reorganized Debtors.

C.    Waiver of Conditions Precedent:  The First Lien Steering Committee may waive any of the conditions to the Effective Date at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan; provided, that the First Lien Steering Committee will not waive the conditions precedent in items X.B.6 through 12 above if the Rhodes Entities shall have complied with all of their obligations hereunder and in the Plan by the Effective Date (or such earlier date specifically set forth herein).  In the event the Rhodes Entities fail to comply with any of their obligations under the Mediation Term Sheet or under the Plan by the Effective Date (or such earlier date specifically set forth herein) and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, then the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their right to object to such motion; (ii) modify the Plan to remove any provisions hereof that were included for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as modified.  Upon entry of an order of the Bankruptcy Court finding a breach by the Rhodes Entities and authorizing the modifications to the Plan to remove any provisions that were included for the benefit of the Rhodes Entities, the First Lien Steering shall be authorized to make such modifications and consummate the Plan.

D.    Effect of Non-Occurrence of Conditions to Consummation:  Each of the conditions to Consummation must be satisfied or duly waived pursuant to Article X.C, and Consummation must occur within 180 days of Confirmation, or by such later date established by Bankruptcy Court order. If Consummation has not occurred within 180 days of Confirmation, then upon motion by a party in interest made before Consummation and a hearing, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the Filing of such motion to vacate, the Confirmation Order may not be vacated if Consummation occurs before the Bankruptcy Court enters an order granting such motion.  If the Confirmation Order is vacated pursuant to Article X.D. or otherwise, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, including the discharge of Claims and termination of Interests pursuant to the Plan and section 1141 of the Bankruptcy Code and the assumptions, assignments, or rejections of executory contracts or unexpired

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  leases pursuant to Article V, and nothing contained in the Plan or Disclosure Statement
2  shall: (1) constitute a waiver or release of any Claims, Interests, or Causes of Action; (2)
   prejudice in any manner the rights of the Debtors, the First Lien Steering Committee or any
3  other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking of any
4  sort by the Debtors, the First Lien Steering Committee or any other Entity.

5       E.      Satisfaction of Conditions Precedent to Confirmation:    Upon entry of a
   Confirmation Order acceptable to the Plan Proponent, each of the conditions precedent to
6  Confirmation, as set forth in Article X.A, shall be deemed to have been satisfied or waived
   in accordance with the Plan.
7

8                                    **ARTICLE XI.**
              MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

9       A.      Modification and Amendments:    The First Lien Steering Committee shall not
10 modify materially the terms of the Plan without the prior consent of the parties to the
   Mediation Term Sheet; provided, that in the event the Rhodes Entities fail to comply with
11 any of their obligations under the Mediation Term Sheet or the Plan by the Effective Date
12 (or such other date set forth herein) and fail to cure such alleged breach within ten (10) days'
   written notice to the Rhodes Entities, then the First Lien Steering Committee shall be
13 entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has
14 occurred (except that the failure of the parties to agree on the refinancing of the Rhodes
   Ranch Golf Course solely as a result of the First Lien Steering Committee acting
15 unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply
16 with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their
   right to object to such motion; (ii) modify the Plan to remove any provisions hereof that
17 were included for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as
   modified.   Upon entry of an order of the Bankruptcy Court finding a breach by the Rhodes
18 Entities and authorizing the modifications to the Plan to remove any provisions that were
19 included for the benefit of the Rhodes Entities, the First Lien Steering shall be authorized to
   make such modifications and consummate the Plan.   Except as otherwise specifically
20 provided in the Plan, the Plan Proponent reserves the right to modify the Plan and seek
   Confirmation consistent with the Bankruptcy Code.   Subject to certain restrictions and
21 requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019
22 and those restrictions on modifications set forth in the Plan, the Plan Proponent expressly
   reserves its rights to revoke, withdraw, alter, amend, or modify materially the Plan with
23 respect to any Debtor, one or more times, after Confirmation, and, to the extent necessary,
   may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or
24 remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure
   Statement, or the Confirmation Order, in such matters as may be necessary to carry out the
25 purposes and intent of the Plan. Any such modification or supplement shall be considered a
   modification of the Plan and shall be made in accordance with Article XI.A.   Upon its
26 Filing, the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy
   Court or its designee during normal business hours, at the Bankruptcy Court's website at
27 http://www.nvb.uscourts.gov.   The documents contained in the Plan Supplement are an
28 integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the
   Confirmation Order.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

B.     Effect of Confirmation on Modifications:  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.     Revocation or Withdrawal of Plan:  The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization; provided, that, any subsequently filed plan shall be consistent with the Mediation Settlement unless the Rhodes Entities fail to comply with any of their obligations under the Mediation Term Sheet or the Plan by the Effective Date (or such other date set forth herein) and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, in which case the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their right to object to such motion; (ii) revoke or withdraw the Plan as a result of such breach; and (iii) file a subsequent plan that removes the benefits provided to the Rhodes Entities pursuant to the Mediation Term Sheet.  If the Plan Proponent revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Plan Proponent or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Plan Proponent or any other Entity.

## ARTICLE XII.
RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including Cure or Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any executory contract or unexpired lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.    Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.    Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.    Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.    Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.    Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.    Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.    Resolve any disputes with respect to the Debtors or Reorganized Debtors performance bonds guaranteed by the Rhodes Entities or other matters contemplated by Article IV.W.

12.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

13.   Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.   Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VII.E;

15.   Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.   Determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.   Enter an order or Final Decree concluding or closing the Chapter 11 Cases;

18.   Adjudicate any and all disputes arising from or relating to distributions under the Plan;

19.   Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20.   Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

21.   Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

22.   Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.   Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment of any employee, regardless of whether such termination occurred prior to or after the Effective Date;

24.   Enforce all orders previously entered by the Bankruptcy Court; and

25.   Hear any other matter not inconsistent with the Bankruptcy Code.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

**ARTICLE XIII.**
MISCELLANEOUS PROVISIONS

A.    <u>Immediate Binding Effect</u>:  Subject to Article X.B. and notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

B.    <u>Additional Documents</u>:  On or before the Effective Date, the Plan Proponent may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, the First Lien Steering Committee and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    <u>Payment of Statutory Fees</u>:  All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.    <u>Dissolution of Creditors' Committee</u>:  Upon the Effective Date, the Creditors' Committee shall dissolve automatically (except with respect to the resolution of applications for Professional Claims), and members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code.

E.    <u>Reservation of Rights</u>:  Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.    <u>Successors and Assigns</u>:  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.    <u>Service of Documents</u>:

1.    After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| Debtors | Counsel to the Debtors |
|---|---|
| The Rhodes Companies, LLC<br>4730 South Fort Apache Road<br>Suite 300<br>Las Vegas, NV  89147 | Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Boulevard #1100<br>Los Angeles, CA 90067<br>Attn:    James I. Stang<br>          Shirley S. Cho<br>          Werner S. Disse<br><br>Larson & Stephens<br>810 S. Casino Center Boulevard<br>Suite 104<br>Las Vegas, NV 89101<br>Attn:   Zachariah Larson |
| United States Trustee | Counsel to the First Lien Steering Committee |
| United States Trustee – LV-11<br>300 Las Vegas Boulevard S.<br>Suite 4300<br>Las Vegas, NV 89101<br>Attn:   Edward M. McDonald | Akin Gump Strauss Hauer & Feld<br>One Bryant Park<br>New York, NY 10036<br>Attn:    Philip C. Dublin<br>          Abid Qureshi<br><br>Kolesar & Leatham, Chtd.<br>3320 West Sahara Avenue<br>Suite 380<br>Las Vegas, NV 89102<br>Attn:   Nile Leatham |
| Counsel to the Creditors' Committee | Counsel to First Lien Agent |
| Parsons Behle & Latimer<br>201 S. Main St., Suite 1800<br>Salt Lake City, Utah 84111<br>Attn:   J. Thomas Beckett<br><br>Parsons Behle & Latimer<br>50 West Liberty Street, Suite 750<br>Reno, Nevada 89501<br>Attn: Rew Goodenow | Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue, Suite 3500<br>Los Angeles, CA 90071<br>Attn:   Van C. Durrer II<br>          Ramon M. Naguiat |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1

2          2.      After the Effective Date, the Reorganized Debtors have authority to send a
notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002,
3    they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.
After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities
4    receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed
such renewed requests.
5

6          3.      In accordance with Bankruptcy Rules 2002 and 3020(c), within ten business
days of the date of entry of the Confirmation Order, the Plan Proponent shall serve  the
7    Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by
overnight courier service to all parties having been served with the Confirmation Hearing
8    Notice; provided, however, that no notice or service of any kind shall be required to be
mailed or made upon any Entity to whom the Plan Proponent mailed a Confirmation
9    Hearing Notice, but received such notice returned marked "undeliverable as addressed,"
10   "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless
the Plan Proponent has been informed in writing by such Entity, or is otherwise aware, of
11   that Entity's new address. To supplement the notice described in the preceding sentence,
within twenty days of the date of the Confirmation Order, the First Lien Steering Committee
12   shall publish the Notice of Confirmation once in the Vegas Sun.  Mailing and publication of
13   the Notice of Confirmation in the time and manner set forth in the this paragraph shall be
good and sufficient notice under the particular circumstances and in accordance with the
14   requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

15   H.     Term of Injunctions or Stays:  Unless otherwise provided in the Plan or in the
16   Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to
sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and
17   extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or
the Confirmation Order) shall remain in full force and effect until the Effective Date.  All
18   injunctions or stays contained in the Plan or the Confirmation Order shall remain in full
19   force and effect in accordance with their terms.

20   I.     Entire Agreement:  Except as otherwise indicated, the Plan and the Plan Supplement
supersede all previous and contemporaneous negotiations, promises, covenants, agreements,
21   understandings, and representations on such subjects, all of which have become merged and
22   integrated into the Plan.

23   J.     Governing Law:  Unless a rule of law or procedure is supplied by federal law
(including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically
24   stated, the laws of the State of Nevada, without giving effect to the principles of conflict of
25   laws, shall govern the rights, obligations, construction, and implementation of the Plan, any
agreements, documents, instruments, or contracts executed or entered into in connection
26   with the Plan (except as otherwise set forth in those agreements, in which case the governing
law of such agreement shall control), and corporate governance matters; provided, however,
27   that corporate governance matters relating to the Debtors or Reorganized Debtors, as
28   applicable, not incorporated or organized in Nevada shall be governed by the laws of the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

state of incorporation or organization of the applicable Debtor or Reorganized Debtor, as applicable.

K.    Exhibits:    All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall be Filed with the Bankruptcy Court on or before the Plan Supplement Filing Date.  After the exhibits and documents are Filed, copies of such exhibits and documents shall have been available upon written request to the First Lien Steering Committee's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.nvb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

L.    Nonseverability of Plan Provisions:  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Plan Proponent's consent; and (3) nonseverable and mutually dependent.

M.    Closing of the Chapter 11 Cases:  The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.    Waiver or Estoppel:  Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, the First Lien Steering Committee or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.    Conflicts:  Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, the Mediation Term Sheet or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  Las Vegas, Nevada
2  Dated:  October 27, 2009

3

4                                    FIRST LIEN STEERING COMMITTEE

5                        By:    /s/ Philip C. Dublin
6                               Nile Leatham (NV Bar No. 002838)
                               KOLESAR & LEATHAM
7                               Wells Fargo Financial Center
                               3320 W. Sahara Ave.
8                               Las Vegas, NV 89102
                               (702) 979-2357 (Telephone)
9                               (702) 362-9472 (Facsimile)
10                              Nleatham@klnevada.com

11                              AKIN GUMP STRAUSS HAUER & FELD LLP
                               Philip C. Dublin (NY Bar No, 2959344)
12                              Abid Qureshi (NY Bar No. 2684637)
13                              One Bryant Park
                               New York, New York 10036
14                              (212) 872-1000 (Telephone)
15                              (212) 872-1002 (Facsimile)
                               pdublin@akingump.com
16                              aqureshi@akingump.com

17                              *Counsel for the First Lien Steering Committee*

18

19

20

21

22

23

24

25

26

27

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

LIST OF EXHIBITS

| Exhibit | | Description |
|---------|---|-------------|
| 1 | ...................................................... | Mediation Term Sheet |
| 2 | ...................................................... | Term Sheet for New First Lien Notes |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

# EXHIBIT 1

EXECUTION COPY

RHODES ENTITIES' MEDIATION SETTLEMENT PROPOSAL

| | |
|---|---|
| **Releases for Rhodes Entities:** | The Rhodes Entities (as set forth on Attachment A) shall receive a full release for chapter 5 causes of action with respect to transfers made by the Debtors to the Rhodes Entities during the 2 years prior to the Petition Date provided, that, such release shall only apply to transfers expressly set forth in the Debtors' statements of financial affairs as filed with the Bankruptcy Court as of August 1, 2009 or as disclosed in Attachment B. |
| **Releases for Debtors' officers, employees and professionals** | To the extent permitted by applicable law, the Plan shall provide that, but for (i) the Rhodes Entities and their affiliates; (ii) insiders of any of the Rhodes Entities (except as to Thomas Robinson and Joseph Schramm who were also employees of the Debtors), (iii) relatives of James Rhodes, the Debtors' officers, employees (including Thomas Robinson and Joseph Schramm), and professionals, as of the Petition Date, and Paul Huygens shall receive a general release from the Debtors' estates. |
| **Exculpation:** | The Plan shall contain standard exculpation provisions. |
| **Bond Replacement or Indemnification:** | The Plan shall provide for one of the following: (i) those performance bonds guaranteed by the Rhodes Entities in favor of the Debtors to be replaced on a renewal date by new performance bonds or, in the alternative, (ii) subject to the Rhodes Entities being reasonably satisfied with the creditworthiness of the Reorganized Debtors, which shall be satisfied solely as of the Effective Date by the Court finding that the Plan is feasible, the existing performance bonds guaranteed by the Rhodes Entities and such guarantees to remain in place. The applicable Rhodes Entity's agreement to remain a guarantor under the existing performance bonds as such performance bonds may be renewed shall be at no cost to the Rhodes Entities (including, but not limited to, the payment of bond premiums). In the event the Reorganized Debtors fail to perform their obligations underlying such renewed performance bonds after the Effective Date, the Reorganized Debtors will indemnify the Rhodes Entities under such outstanding performance bonds for damages incurred by the Rhodes Entities on account of their guarantee of such performance bonds solely as a result of the Reorganized Debtors' failure to perform such obligations subsequent to the Effective Date. The Reorganized Debtors shall use commercially reasonable efforts to replace all outstanding performance bonds backstopped by Rhodes Entities within 30 months of the Effective Date. The Bankruptcy Court shall retain jurisdiction to resolve any disputes arising out of this paragraph. |
| **HOA Board Seats:** | The Rhodes Entities shall ensure that designees identified by the Reorganized Debtors shall replace the Rhodes Entities on any HOA Boards that in any way are related to the Debtors, Reorganized Debtors or their businesses and Declarant rights or the like shall be transferred to the Reorganized Debtors or their designee(s). |
| **Licensing:** | The Rhodes Entities shall take commercially reasonable steps and/or enter into any agreements or similar documentation reasonably necessary to ensure the Reorganized Debtors' continued use of all of the Debtors' applicable professional licenses at no cost to the Rhodes Entities for a period of up to twelve months following the Effective Date. Additionally, provided that the parties have executed this Mediation Settlement Term Sheet, Sagebrush Enterprises, Inc. shall rescind by September 25, 2009 its revocation of its indemnity of the Nevada Contractors' license held by Rhodes Design & Development Corporation to the extent such rescission does not negatively |

**EXECUTION COPY**

| | |
|---|---|
| | affect the general contractor's license held by Rhodes Design & Development Corporation provided that Sagebrush shall be entitled to file an administrative claim on behalf of any and all claims asserted against Sagebrush as a result of Sagebrush being the indemnitor that arose from and after the effectiveness of Sagebrush's recission of its indemnity through the Effective Date, provided that the allowance of such administrative claim shall be subject to resolution by the Bankruptcy Court and/or such other court(s) of competent jurisdiction. The Reorganized Debtors shall indemnify Sagebrush for any and all claims asserted against Sagebrush as a result of Sagebrush being the indemnitor that arise from and after the Effective Date. Professional licenses include, but are not limited to the Nevada State Contractor's Board license, and any other general business or similar licenses in any county, state, municipality or other jurisdiction in which the Reorganized Debtors conduct business or own assets as of the Effective Date. The Rhodes Entities shall use commercially reasonable efforts to maintain third party agreements with their real estate brokers and sales agents. |
| **Rhodes Entities' Claim Treatment:** | To the extent allowed, the Rhodes Entities' Claims shall be treated in the same class as and treated *pari passu* with General Unsecured Claims, excluding Trade Claims. The First Lien Steering Committee, any First Lien Lender and/or the Reorganized Debtors shall have until sixty days following the Effective Date to object to the proofs of claim filed by the Rhodes Entities in the Debtors' chapter 11 cases (provided, that, such objection shall not seek to subordinate the Rhodes Entities Claims, if allowed). Neither the Litigation Trust nor the Reorganized Debtors shall commence any litigation against the Rhodes Entities until the Bankruptcy Court rules on the allowance of the Rhodes Entities Claims set forth in such proofs of claim (for the avoidance of doubt, the First Lien Lenders are not bound by this provision). To the extent any statute of limitations to pursue any claims belonging to the Debtors against the Rhodes Entities would lapse, from execution of this term sheet and prior to the Bankruptcy Court's resolution of the allowance of the Rhodes Entities Claims, as set forth in filed proofs of claim, the Rhodes Entities shall be deemed to have consented to a tolling of the applicable statute of limitations until sixty days following the Bankruptcy Court's ruling on the allowance of the Rhodes Entities Claims. |
| **Tax Treatment:** | The Plan shall be structured in a tax efficient manner to the Rhodes Entities to effectuate the benefits set forth in item 4 on Attachment C; provided, that there shall be no adverse impact on the Reorganized Debtors or the First Lien Lenders. The Rhodes Entities and the First Lien Steering Committee shall agree on the structure necessary to implement the tax treatment on or before September 25, 2009. |
| **Effective Date:** | The Plan Effective Date shall occur no earlier than January 4, 2010. |
| **Rhodes Ranch Golf Course:** | The term Rhodes Ranch Golf Course, as referred to herein, shall mean the golf course situated within the Rhodes Ranch master-planned community located in the southwestern Las Vegas valley. |
| **Conditions Precedent to Effective Date:** | 1. The Bankruptcy Court shall have authorized the assumption and rejection of executory contracts and unexpired leases by the Debtors.<br><br>2. The Confirmation Order shall have become a Final Order in form and substance acceptable to the First Lien Steering Committee.<br><br>3. The most current version of the Plan Supplement and all of the schedules, |

EXECUTION COPY

| | |
|---|---|
| | documents, and exhibits contained therein shall have been Filed in form and substance acceptable to the First Lien Steering Committee.<br><br>4. The documents governing the New First Lien Notes, the Newco Charter, the Newco Bylaws and the Stockholders Agreement shall be in form and substance acceptable to the First Lien Steering Committee.<br><br>5. The Confirmation Date shall have occurred.<br><br>6. The First Lien Steering Committee shall have designated and replaced each existing Qualified Employee with a new Qualified Employee.<br><br>7. The current debt outstanding on the Rhodes Ranch Golf Course shall be refinanced on terms and conditions acceptable to Rhodes and the First Lien Steering Committee.<br><br>8. Copies of all Debtors' books and records shall have been delivered to the Rhodes Entities at no cost to the Rhodes Entities.<br><br>9. The Arizona Assets shall have been transferred to the Rhodes Entities (or their designee) free and clear of all liens and claims pursuant to section 363(f) of the Bankruptcy Code on the Effective Date provided, that the non-First Lien Lender/Second Lien Lender liens do not exceed $60,000.<br><br>10. The Debtors shall have assumed and assigned all executory contracts and unexpired leases related solely to the Arizona Assets to the Rhodes Entities (or their designee), at no cost to the Debtors or the Reorganized Debtors, with all Cure costs associated therewith to be borne by the Rhodes Entities<br><br>11. The Rhodes Entities and the First Lien Steering Committee shall have agreed on the structure necessary to implement the tax structure benefits set forth in Exhibit C.<br><br>12. The Rhodes Entities and First Lien Steering Committee shall have agreed on the Golf Course Security Property.<br><br>13. The Rhodes Entities shall have ensured that designees identified by the Reorganized Debtors shall have replaced the Rhodes Entities on any HOA Boards that in any way are related to the Debtors, Reorganized Debtors or their businesses and Declarant rights or the like shall be transferred to the Reorganized Debtors or their designee(s)<br><br>14. The Rhodes Entities shall have performed all of their obligations under the Plan including, without limitation, depositing $3.5 million in Cash in an account designated by the Debtors, with the consent of the First Lien Steering Committee and transferring the equity in the entity that owns the Rhodes Ranch Golf Course and related contracts and assets to the Reorganized Debtors pursuant to the terms of a stock transfer agreement in form and substance acceptable to the Rhodes Entities and the First Lien Steering Committee.<br><br>15. All other customary Conditions Precedent to the Effective Date as determined by and acceptable to the First Lien Steering Committee, in its sole discretion. |
| **Waiver of Conditions Precedent** | The First Lien Steering Committee may waive any of the conditions to the |

EXECUTION COPY

| | |
|---|---|
| to the Effective Date | Effective Date at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan; provided, that the First Lien Steering Committee will not waive the conditions precedent in items 6 through 12 above if the Rhodes Entities shall have complied with all of their obligations hereunder and in the Plan by the Effective Date (or such earlier date specifically set forth herein). In the event the Rhodes Entities fail to comply with any of their obligations hereunder or under the Plan by the Effective Date and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, then the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their right to object to such motion; (ii) modify the Plan to remove any provisions hereof that were included for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as modified.   Upon entry of an order of the Bankruptcy Court finding a breach by the Rhodes Entities and authorizing the modifications to the Plan to remove any provisions that were included for the benefit of the Rhodes Entities, the First Lien Steering shall be authorized to make such modifications and consummate the Plan. |
| Modification of the Plan | The First Lien Steering Committee shall not modify materially the terms of the Plan without the prior consent of the parties to this term sheet so long as such parties have complied with all of their obligations hereunder and under the Plan by January 4, 2010 (or such other date specifically set forth herein). |
| Plan Support: | The Debtors and Rhodes Entities shall only support a plan of reorganization filed by the First Lien Steering Committee containing all of the provisions of this Mediation Settlement Term Sheet and consistent with the Plan to which this term sheet is an exhibit and will not file a competing plan of reorganization or support any other plan of reorganization filed in the Debtors' chapter 11 cases. |
| Golf Course Transfer: | On the Effective Date, the applicable Rhodes Entities shall transfer their equity interests in the entity that owns the Rhodes Ranch Golf Course to the Reorganized Debtors (together with any equipment, golf carts, contracts or other assets determined by the First Lien Steering Committee to be necessary for the operation of the Rhodes Ranch Golf Course) pursuant to the terms of a stock transfer agreement in form and substance acceptable to the First Lien Steering Committee and Rhodes, subject to any outstanding debt on the Rhodes Ranch Golf Course.  The stock transfer agreement shall contain representations by the Rhodes Entities that the entity that owns the Rhodes Ranch Golf Course does not have any liabilities other than ordinary course liabilities related to the Rhodes Ranch Golf Course and indemnification provisions in favor of the Reorganized Debtors by the Rhodes Entities for any non-ordinary course liabilities.  In addition, prior to the deadline for filing objections to the Disclosure Statement, the Rhodes Entities shall provide the First Lien Steering Committee with a list of all liabilities of the entity that owns the Rhodes Ranch Golf Course, a lien analysis and copies of all contracts related to the Rhodes Ranch Golf Course and to which the entity that owns the Rhodes Ranch Golf Course is a party, each of which must be acceptable to the First Lien Steering Committee.<br><br>The existing debt outstanding on the Rhodes Ranch Golf Course shall be |

**EXECUTION COPY**

refinanced on or before the Effective Date, for a period of no less than twelve (12) months from the Effective Date, on terms and conditions acceptable to Rhodes and the First Lien Steering Committee. The parties will work together in good faith to refinance the existing debt. The Reorganized Debtors shall pay the reasonable costs and expenses associated with the refinancing; provided, that the terms of such refinancing are acceptable to the First Lien Steering Committee. The First Lien Steering Committee acknowledges that the loan documentation may provide that, upon the transfer of the Rhodes Ranch Golf Course to the Reorganized Debtors on the Effective Date, additional collateral from the Reorganized Debtors may be required. The Rhodes Entities shall transfer to the Reorganized Debtors on the Effective Debt any contracts related to the operation of and revenue generated by any cell towers located on the property of the Rhodes Ranch Golf Course. Any funds received after July 31, 2009 from the Las Vegas Valley Water District or other similar entity as an incentive for converting the golf course from a green course to a desert course shall be used for operating expenses associated with the Rhodes Ranch Golf Course, with any excess to become property of the Reorganized Debtors on the Effective Date.

Rhodes and/or his designee shall have the absolute right to repurchase the Rhodes Ranch Golf Course from the Reorganized Debtors at eight (8) years from the Effective Date for $5.9 million in cash. The Reorganized Debtors may require Rhodes to purchase the Rhodes Ranch Golf Course any time between four (4) and eight (8) years from the Effective Date for $5.9 million in cash provided that the Reorganized Debtors shall provide Rhodes with at least one year advance notice of its intent to sell the Rhodes Ranch Golf Course back to Rhodes. Such transfer shall occur on the applicable anniversary date of the Effective Date. For the avoidance of doubt, if the Reorganized Debtors put the Rhodes Ranch Golf Course to Rhodes in accordance with the terms hereof and Rhodes fails to comply with his obligation to purchase the Rhodes Ranch Golf Course, Rhodes shall be deemed to have forfeited his option to purchase the Rhodes Ranch Golf Course.

On the Effective Date, Rhodes's obligations to comply with the repurchase shall be secured by either (i) $500,000 in cash in an escrow account or (ii) property worth at least $2 million (the "Golf Course Security Property"), with the value of such property to be agreed to by Rhodes and the First Lien Steering Committee or otherwise valued by an independent third party appraisal firm acceptable to both Rhodes and the First Lien Steering Committee (except Cushman Wakefield). In the event that Rhodes does not meet the repurchase request, provided that the Rhodes Ranch Golf Course is in the standard condition (defined below), then the Reorganized Debtors shall be entitled to liquidated damages in the form of security pledged (i.e., the $500,000 or the Golf Course Security Property).

So long as Rhodes has not defaulted on his obligation to repurchase the Rhodes Ranch Golf Course, Rhodes shall have the absolute and sole discretion to replace the Golf Course Security Property with $500,000 in cash on 30 days written notice to the Reorganized Debtors. Upon deposit of the $500,000 in cash, the Golf Course Security Property shall be released to Rhodes or his designee. Notwithstanding anything to the contrary contained herein, if the Rhodes Ranch Golf Course is not maintained with substantially the same performance and rating criteria at the time of the repurchase request as verified by an independent third party rating agency as it was on the Effective Date ("Standard Condition"), James Rhodes can (i) require the

| | |
|---|---|
| | Reorganized Debtors to cure any conditions to return the Rhodes Ranch Golf Course to its Standard Condition (provided, that the cost of such cure does not exceed $500,000), or (ii) choose not to purchase the Rhodes Ranch Golf Course. Upon either the repurchase of the Rhodes Ranch Golf Course or the written decision to not repurchase the Rhodes Ranch Golf Course (in accordance with the preceding sentence), the Golf Course Security Property or the $500,000 Cash (if not applied to the repurchase of the Rhodes Ranch Golf Course) shall be returned to Rhodes within 30 days.<br><br>On the Effective Date, the Reorganized Debtors shall record a memorandum of agreement against the Rhodes Ranch Golf Course to evidence the above. |
| **Golf Course Audit:** | During the period from September 1, 2009 through September 23, 2009, the Rhodes Entities shall provide access to the First Lien Steering Committee or its designee to undertake a financial and operational audit of the Rhodes Ranch Golf Course. The results of such audit must be acceptable to the First Lien Steering Committee in its sole discretion and evidence, among other things, that the financial performance of the Rhodes Ranch Golf Course is sufficient to pay operating expenses and service the debt on the Rhodes Ranch Golf Course without the need for additional liquidity. |
| **Cash Payment:** | The Rhodes Entities shall make a cash payment to the Reorganized Debtors of $3.5 million in cash on the Effective Date. |
| **Arizona:** | On the Effective Date, pursuant to an asset transfer agreement in form and substance acceptable to the First Lien Steering Committee and the Rhodes Entities, the Debtors shall transfer Pravada and the other Arizona assets set forth on Attachment D hereto, plus the Golden Valley Ranch tradename to the Rhodes Entities free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code; provided, that the non-First Lien Lender/Second Lien Lender liens do not exceed $60,000; provided that such assets shall not include assets owned by Pinnacle Grading located in Arizona and related contracts associated with the assets,. Debtors shall provide James Rhodes notice of any proposed sale of the Pinnacle assets, and James Rhodes shall be granted a right to bid on the sale of such assets within 10 days of such notice. Rhodes Entities shall permit storage of Pinnacle Grading equipment at current locations at no cost to the Reorganized Debtors for a period through six months following the Effective Date.<br><br>All executory contracts and unexpired leases associated solely with Arizona shall be assumed and assigned to the Rhodes Entities (or their designee), at no cost to the Debtors or the Reorganized Debtors and all cure costs associated therewith shall be borne by the Rhodes Entities. |
| **Plan Filing:** | The Debtors, the Rhodes Entities, the First Lien Steering Committee, the First Lien Agent, the Second Lien Agent and the Creditors Committee shall agree not to file a plan of reorganization until the earlier of (i) the date the parties agree on the terms of a plan of reorganization (and accompanying disclosure statement) or (ii) September 25, 2009. |
| **Cash Collateral:** | The First Lien Steering Committee, First Lien Agent and Second Lien Agent will agree to the continued use of cash collateral on existing terms and subject to an agreed upon budget, through January 11, 2010. |

**EXECUTION COPY**

| Trademarks and Trade Names | Within the earlier of thirty (30) days following: (i) upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E. |
|---|---|
| Trade Claims Analysis | The First Lien Steering Committee, the Debtors and the Creditors Committee will agree, prior to the hearing on the Disclosure Statement, (i) which filed or scheduled claims shall be classified as Trade Claims and (ii) on a procedure for the reconciliation of Trade Claims. If the parties are unable to agree on (i) or (ii) above in advance of the Disclosure Statement hearing, the Bankruptcy Court shall resolve any disputes at the Disclosure Statement hearing. |
| Preference Claims Against Holders of Allowed Trade Claims | The Reorganized Debtors shall not seek to avoid prepetition transfers to holders of allowed Trade Claims under Bankruptcy Code section 547 to the extent the resulting claim from the avoidance of such a preferential transfer would likewise be an allowed Trade Claim. |
| Stanley Engineering | In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent shall engage in good faith negotiations to ensure that the Second Lien Lenders receive consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration. In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation) |

Dated:  September 25, 2009

APPROVED

By: _____
Name: _____
Title: Partner, Akin Gump Straus Hauer & Feld LLP
Counsel to the First Lien Steering Committee, with
 authority from each of the members thereof

APPROVED

By: _____
Name:
Title:
Counsel to Wells Fargo, N.A., as Agent for the Second
Lien Lenders

APPROVED

By: _____
Name: James M. Rhodes
Title: President
The Rhodes Entities

APPROVED

By: _____
Name:
Title:
Counsel to the Official Committee of
Unsecured Creditors

APPROVED

By: _____
Name: James M. Rhodes
Title: President
Debtors and Debtors-in-Possession

8200277 v.13                              7

**EXECUTION COPY**

| | |
|---|---|
| **Trademarks and Trade Names** | Within the earlier of thirty (30) days following: (i) upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E. |
| **Trade Claims Analysis** | The First Lien Steering Committee, the Debtors and the Creditors Committee will agree, prior to the hearing on the Disclosure Statement, (i) which filed or scheduled claims shall be classified as Trade Claims and (ii) on a procedure for the reconciliation of Trade Claims. If the parties are unable to agree on (i) or (ii) above in advance of the Disclosure Statement hearing, the Bankruptcy Court shall resolve any disputes at the Disclosure Statement hearing. |
| **Preference Claims Against Holders of Allowed Trade Claims** | The Reorganized Debtors shall not seek to avoid prepetition transfers to holders of allowed Trade Claims under Bankruptcy Code section 547 to the extent the resulting claim from the avoidance of such a preferential transfer would likewise be an allowed Trade Claim. |
| **Stanley Engineering** | In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent shall engage in good faith negotiations to ensure that the Second Lien Lenders receive consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration. In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation) |

Dated:  September 25, 2009

APPROVED

By: _____
Name:
Title:
*Counsel to the First Lien Steering Committee, with
  authority from each of the members thereof*

APPROVED

By: _____
Name: *Mal Sinturt*
Title: *Counsel*
*Counsel to Wells Fargo, N.A., as Agent for the Second
  Lien Lenders*

APPROVED

By: _____
Name: James M. Rhodes
Title:  President
*The Rhodes Entities*

APPROVED

By: _____
Name:
Title:
*Counsel to the Official Committee of
  Unsecured Creditors*

APPROVED

By: _____
Name:  James M. Rhodes
Title:  President
*Debtors and Debtors-in-Possession*

8200277 v.13

7

**EXECUTION COPY**

| | |
|---|---|
| **Trademarks and Trade Names** | Within the earlier of thirty (30) days following: (i) upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E. |
| **Trade Claims Analysis** | The First Lien Steering Committee, the Debtors and the Creditors Committee will agree, prior to the hearing on the Disclosure Statement, (i) which filed or scheduled claims shall be classified as Trade Claims and (ii) on a procedure for the reconciliation of Trade Claims. If the parties are unable to agree on (i) or (ii) above in advance of the Disclosure Statement hearing, the Bankruptcy Court shall resolve any disputes at the Disclosure Statement hearing. |
| **Preference Claims Against Holders of Allowed Trade Claims** | The Reorganized Debtors shall not seek to avoid prepetition transfers to holders of allowed Trade Claims under Bankruptcy Code section 547 to the extent the resulting claim from the avoidance of such a preferential transfer would likewise be an allowed Trade Claim. |
| **Stanley Engineering** | In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent shall engage in good faith negotiations to ensure that the Second Lien Lenders receive consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration. In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation) |

Dated: September 25, 2009

APPROVED

By: _____
Name: Ph. P. Vd.
Title: Parson Akingyonp Strass Heir & Fell LLP
Counsel to the First Lien Steering Committee, with
authority from each of the members thereof

APPROVED

By: _____
Name:
Title:
Counsel to Wells Fargo, N.A., as Agent for the Second
Lien Lenders

APPROVED

By: _____
Name: James M. Rhodes
Title: President
*The Rhodes Entities*

APPROVED

By: _____
Name: J. Thomas Beckett Pursas Beble & Johur
Title: Shareholder
Counsel to the Official Committee of
Unsecured Creditors

APPROVED

By: _____
Name: James M. Rhodes
Title: President
*Debtors and Debtors-in-Possession*

820027 v.13

7

EXECUTION COPY

## ATTACHMENT A - RHODES ENTITIES

James M. Rhodes

Glynda Rhodes

John Rhodes

James M. Rhodes Dynasty Trust I

James M. Rhodes Dynasty Trust II

JMR Children's Irrevocable Educational Trust

Truckee Springs Holdings, Inc.

Sedora Holdings LLC

Gypsum Resources, LLC

Tulare Springs Holdings, Inc.

Escalante-Zion Investments, LLC

HH Trust

Harmony Homes, LLC

Tock, LP

Tapemeasure, LP

Joshua Choya, LLC

American Land Management, LLC

South Dakota Conservancy, LLC

Meridian Land Company, LLC

Yucca Land Company, LLC

Sagebrush Enterprises, Inc.

Rhodes Ranch, LLC

Westward Crossing, LLC

Pinnacle Equipment Rental, LLC

Desert Communities, Inc.

Spirit Underground, LLC

8200277 v.13

**EXECUTION COPY**

Tropicana Durango Investments, Inc.

Tropicana Durango, Ltd. I

Dirt Investments, LLC

Underground Technologies, LLC

South Dakota Aggregate and Engineering, LLC

Freedom Underground, LLC

Jerico Trust

Canberra Holdings, LLC

Custom Quality Homes, LLC

Rhodes Ranch Golf, Inc.

ID Interior Design, LLC

*8200277 v.13*

EXECUTION COPY

**ATTACHMENT B**

1. The following distributions were made and permitted pursuant to terms of Credit Agreement:

| Date | Amount | Distribution Comments |
|------|--------|----------------------|
| 4/17/2007 | $42,705 | Heritage → Sedora |
| 4/17/2007 | $707,295 | Heritage → Sagebrush |
| 5/4/2007 | $56,939 | Heritage → Sedora |
| 5/4/2007 | $943,061 | Heritage → Sagebrush |
| TOTAL | $1,750,000 | |

2. Transactions with Spirit Underground and Freedom Underground (as set forth below):

{ATTACHED}

Payments to Spirit Underground
April 1, 2007 through March 31, 2008

| Invoice | Invoice Date | Accounting Date | Job | PO | | CostCode | Expense Account | Description | Amount Paid | Division Requiring Work | Bank Acct | Check Number | Check Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FATE3000-054 | 3/9/2007 | 3/21/2007 | RRTE-1000 | RRTE1000-054 | | 7-06-0500 | rrt-0000-00-1400.rrte | Backcharge | (577.50) | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3461 | 4/11/2007 |
| 11364 | 1/4/2007 | 4/11/2007 | TS25-0079 | | 17931 | 7-02-0100 | ba-0000-00-1410.ba25 | SC La Luna Lot 22 | (1,176.20) | Tuscany Acquisitions | Rhodes Companies | 7349 | 4/11/2007 |
| EWA3107 | 3/14/2007 | 4/11/2007 | RR12-1000 | RR121000-761 | | 3-06-0100 | rd-0000-00-1400.rr12 | Bond Work | 6,646.99 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3465 | 4/11/2007 |
| EWA3043 | 3/16/2007 | 4/11/2007 | RR11-1000 | RR111000-040 | | 3-06-0100 | rrt-rr11-01-5100.0000 | Labor for Cemetery R&P | 300.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3465 | 4/11/2007 |
| 1373-03 | 3/1/2007 | 4/11/2007 | TS10-1000 | TS101000-013 | | 2-09-0400 | ts-0000-00-1400.ts10 | Wet Utilities | 122,391.75 | Tuscany Acquisitions IV | Rhodes Companies | 7348 | 4/11/2007 |
| 1324-06 | 3/1/2007 | 4/13/2007 | RR20-100A | RR201000-060 | | 2-10-0500 | rd4-0000-00-1400.rr20 | Dry Utility Contract | 4,070.70 | Parcel 20 | Rhodes Companies | 7342 | 4/11/2007 |
| 1114-06 | 3/1/2007 | 4/13/2007 | RR20-100A | RR201000-060 | | 2-10-0800 | rd4-0000-00-1400.rr20 | Dry Utility Contract | 2,955.41 | Parcel 20 | Rhodes Companies | 7349 | 4/11/2007 |
| 1346-05 | 3/1/2007 | 4/12/2007 | RR20-100A | RR201008-073 | | 2-10-0500 | rd4-0000-00-1400.rr20 | Dry Utilities | 65,342.37 | Parcel 20 | Rhodes Companies | 7349 | 4/11/2007 |
| EWA2811 | 3/12/2007 | 4/18/2007 | RR20-100A | RR201000-063 | | 2-09-0800 | rd4-0000-00-1400.rr20 | Wet Utilities Contract | 7,262.40 | Parcel 20 | Rhodes Companies | 7808 | 4/26/2007 |
| EWA2980 | 3/12/2007 | 4/18/2007 | RR12-1000 | RR12-170 | | 2-10-0400 | rrt-0000-00-1400.rr12 | Dry Utilities Contract Phase 2 | 3,249.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3656 | 4/26/2007 |
| EWA3047 | 3/21/2007 | 4/18/2007 | RR12-1000 | RR12-044 | | 2-10-0800 | rrt-0000-00-1400.rr12 | Bond Work | 28,357.52 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4036 | 4/16/2007 |
| EWA2580 | 3/21/2007 | 4/18/2007 | TS18-3000 | TS181000-70 | | 2-10-0400 | ts4-0000-00-1400.ts18 | Dry Utility | 10,446.40 | Tuscany Acquisitions II | Rhodes Companies | 7808 | 4/16/2007 |
| EWA3154 | 3/28/2007 | 4/24/2007 | RR11-1000 | RR111000-013 | | 3-06-0100 | rrt-rr11-01-5100.0000 | EWA # 064A 3156 | 6,475.53 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3656 | 4/26/2007 |
| 1324-07 | 4/2/2007 | 4/16/2007 | RR20-100A | RR201000-060 | | 2-10-0500 | rd4-0000-00-1400.rr20 | Dry Utility Contract | 50,738.46 | Parcel 20 | Rhodes Companies | 7808 | 4/19/2007 |
| 1324-07 | 4/2/2007 | 4/16/2007 | RR20-100A | RR201000-060 | | 2-10-0700 | rd4-0000-00-1400.rr20 | Dry Utility Contract | 2,540.04 | Parcel 20 | Rhodes Companies | 7874 | 4/26/2007 |
| 1345-04 | 4/2/2007 | 4/18/2007 | SW11-1000 | SW111000-091 | | 2-10-0300 | rrt-0000-00-1400.swml | Dry Utility Contract | 33,468.86 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3636 | 4/26/2007 |
| 1345-04 | 4/2/2007 | 4/14/2007 | SW11-1000 | SW111000-091 | | 2-10-0500 | rrt-0000-00-1400.swml | Dry Utility Contract | 5,870.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3636 | 4/26/2007 |
| 1345-04 | 4/2/2007 | 4/14/2007 | SW11-1000 | SW111000-091 | | 2-10-0400 | rrt-0000-00-1400.swml | Dry Utility Contract | 1,030.40 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4436 | 4/26/2007 |
| 1345-03 | 4/1/2007 | 4/13/2007 | SW11-1000 | SW111000-091 | | 1-10-0500 | rrt-0000-00-1400.swml | Dry Utility Contract | 768.05 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3636 | 4/16/2007 |
| EWA2449 | 5/1/2007 | 5/4/2007 | RR45-3000 | RR451000-017 2 | | 2/2/5100 | jac-0000-00-1380.3000 | Hydrant Repair | 417.61 | Jaxtivity | Heritage | 63 | 5/9/2007 |
| EWA3082 | 2/8/2007 | 5/14/2007 | RR14-0134 | | 18621 | 7-19-0600 | rrt-rr14-01-5100.0000 | Palma Bay Lot 19 | 465.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3737 | 5/16/2007 |
| 1258-03 | 5/1/2007 | 5/22/2007 | T1AG-HTTD | T0440-1810-001 | | 2-10-0900 | rrd-0000-00-1400.tsm | Dry Utility - 3rd Feeder | 166,874.43 | Rhodes Design & Development | Rhodes Companies | 4184 | 5/22/2007 |
| 07-0025-01 | 5/1/2007 | 5/21/2007 | RR45-1004 | RR451004-004 | | 2-10-0900 | rrt-0000-00-1400.rrte | Power West & East Side | 35,453.85 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3751 | 5/22/2007 |
| 07-0021-02 | 5/1/2007 | 5/22/2007 | RR45-1004 | RR451004-008 | | 2-10-0500 | rrt-0000-00-1400.rrte | Power West & East Side | 15,472.85 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3751 | 5/22/2007 |
| 07-0021-02 | 5/1/2007 | 5/22/2007 | RR45-1004 | RR451004-006 | | 2-10-0500 | rrt-0000-00-1400.rrte | Power West & East Side | 1,708.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3779 | 5/22/2007 |
| 07-0021-01 | 4/2/2007 | 5/21/2007 | RR45-1004 | RR451004-017 | | 2-10-0200 | rrt-0000-00-1400.rrte | Traffic signal install drainage | 13,540.32 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3779 | 5/21/2007 |
| 07-0021-03-1 | 5/4/2007 | 5/21/2007 | RR45-1004 | RR451004-012 | | 2-10-0200 | rrt-0000-00-1400.rrte | Traffic signal install drainage | 141,800.72 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3779 | 5/21/2007 |
| 07-0071-03-1 | 5/4/2007 | 5/21/2007 | RR45-1004 | RR451004-012 | | 2-10-0200 | rrt-0000-00-1400.rrte | Traffic signal install drainage | 5,546.12 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3774 | 5/21/2007 |
| 07-0071-04-1 | 5/4/2007 | 5/11/2007 | RR45-1004 | RR451004-017 | | 2-10-0200 | rrt-0000-00-1400.rrte | Traffic signal install drainage | 72,101.75 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3779 | 5/21/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/11/2007 | RR45-1004 | RR451004-017 | | 2-10-0200 | rrt-0000-00-1400.rrte | Traffic signal install drainage | 123,426.38 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3779 | 5/21/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/25/2007 | RR45-1004 | RR451004-012 | | 2-10-0200 | rrt-0000-00-1400.rrte | Traffic signal install drainage | 7,108.20 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3779 | 5/15/2007 |
| 07-0071-08-1 | 5/4/2007 | 5/18/2007 | RR45-1004 | RR451004-012 | | 2-10-0700 | rrt-0000-00-1400.rrte | Traffic signal install drainage | 10,744.77 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3779 | 5/18/2007 |
| 1363-04 | 5/1/2007 | 5/30/2007 | RR59-1000 | RR591000-023 | | 2-10-0400 | rrt-0000-00-1400.rrml | Dry Utility Contract | 13,476.44 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4830 | 5/31/2007 |
| 1362-04 | 5/1/2007 | 5/30/2007 | RR58-1000 | RR581000-021 | | 2-10-0200 | rd-0000-00-1400.rrml | Dry Utility Contract | 18,021.34 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4830 | 5/31/2007 |
| 07-0053-1 | 5/2/2007 | 5/2/2007 | | | | | | Cart Path Repairs | 18,542.30 | Rhodes Ranch Golf Country Club | Rhodes Ranch Golf Country Club | 19713 | 6/6/2007 |
| EWA3175 | 4/1/2006 | 5/11/2007 | RR14-0134 | | 18804 | 7-19-0100 | rrt-rr14-01-4180.0000 | Palma Bay Lot 15 | 875.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 1868 | 6/13/2007 |
| | 6/15/2007 | 4/25/2007 | | | | | rca-0000-00-1010.0018 | Receivable | 200,000.00 | Rhodes Companies | Rhodes Companies | 6818 | 6/15/2007 |
| | 7/12/2007 | 7/17/2007 | | | | | rca-0000-00-1210.0016 | repayment of Spirit Loan | (200,000.00) | Rhodes Companies | Rhodes Companies | | |
| EWA2025 | 5/8/2007 | 6/6/2007 | TS25-0052 | | 14475 | 7-07-0400 | tal-ts13-10-5100.0000 | La Cuna Lot 31 | 445.00 | Tuscany Acquisitions | Rhodes Companies | 6684 | 6/20/2007 |
| 36005 | 4/11/2007 | 6/15/2007 | TS12-0008 | | 18161 | 7-12-0200 | tal-ts12-10-5100.0000 | BC Maggiore Lot 34 | (202.39) | Tuscany Acquisitions | Rhodes Companies | 6684 | 6/20/2007 |
| T3340084-148 | 6/13/2007 | 4/25/2007 | T334-0066 | T3340084-148 | | 3-03-0700 | rdd-ts14-10-5100.0000 | 482 Via Palermo Drive | 3,300.00 | Rhodes Design & Development | Rhodes Companies | 6684 | 6/20/2007 |
| 1324-06 | 6/1/2007 | 6/26/2007 | RR20-100A | RR201000-060 | | 2-10-0500 | rd4-0000-00-1400.rr20 | Dry Utility Contract | 11,818.44 | Parcel 20 | Rhodes Companies | 6404 | 6/27/2007 |
| 1227-02 | 5/10/2007 | 6/26/2007 | SH4W-1000 | SH4W1000-098 | | 2-10-0500 | rd4-0000-00-1400.shwd | Dry Utilities Contract | 11,577.20 | Rhodes Design & Development | Rhodes Companies | 6404 | 6/27/2007 |
| 1227-02 | 5/10/2007 | 6/26/2007 | SH4W-1000 | SH4W1000-098 | | 2-10-0400 | rdd-0000-00-1400.shwd | Dry Utilities Contract | 18,348.30 | Rhodes Design & Development | Rhodes Companies | 6404 | 6/27/2007 |
| 1223-02 | 5/10/2007 | 6/26/2007 | SH4W-1000 | SH4W1000-098 | | 2-10-0300 | rdd-0000-00-1400.shwd | Dry Utilities Contract | 2,706.05 | Rhodes Design & Development | Rhodes Companies | 6404 | 6/27/2007 |
| 1314-EWA3040 | 5/23/2007 | 6/26/2007 | RR20-100B | RR201008-073 | | 2-09-0500 | rd4-0000-00-1400.rr20 | Dry Utilities | 5,580.00 | Parcel 20 | Rhodes Companies | 6404 | 6/27/2007 |
| 1340-03 | 3/1/2007 | 6/28/2007 | RRTE-3000 | RRTE3000-053 | | 3-10-0400 | rrt-0000-00-1400.rrte | Rhodes Ranch Unit 10 Change | 33,759.20 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3994 | 6/28/2007 |
| 1345EWA3070 | 4/2/2007 | 6/28/2007 | SW11-1000 | SW111000-091 | | 2-10-0200 | rrt-0000-00-1400.swml | Dry Utility Contract | 4,541.08 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3994 | 6/28/2007 |
| 1339EWA2961 | 3/2/2007 | 6/28/2007 | SW13-1000 | SW131000-134 | | 3-06-0200 | rrt-0000-00-1400.swml | Haul off Existing spoils | 5,712.85 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 3994 | 6/28/2007 |
| CO-04 | 3/29/2007 | 6/28/2007 | RRLC-1000 | RRLCPM1-001 2 | | 2/2/6300 | rrt-0000-00-1400.rrlc | Wet Utilities | 8,058.45 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4011 | 7/5/2007 |
| 1395-04 | 3/14/2007 | 4/11/2007 | RRLU-PAAK | RRLUPAAK-014 1 | | 2/2/6300 | rrt-0000-00-1400.rrml | Wet/Dry Utilities | 276,851.30 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4045 | 7/12/2007 |
| 1314-04 | 12/30/2006 | 11/8/2006 | RR20-100A | RR201000-053 | | 2-09-0400 | rd4-0000-00-1400.rr20 | Wet Utilities Contract | 24,816.30 | Parcel 20 | Rhodes Companies | 9045 | 7/12/2007 |
| 1314-04 | 10/30/2006 | 11/8/2006 | RR20-100A | RR201000-053 | | 2-09-0400 | rd4-0000-00-1400.rr20 | Wet Utilities Contract | 4,755.22 | Parcel 20 | Rhodes Companies | 9045 | 7/12/2007 |
| 1314-04 | 10/30/2006 | 11/6/2006 | RR20-100A | RR201000-053 | | 2-09-0400 | rd4-0000-00-1400.rr20 | Wet Utilities Contract | 10,123.31 | Parcel 20 | Rhodes Companies | 9045 | 7/12/2007 |
| 1314-04 | 10/30/2006 | 11/6/2006 | RR20-100A | RR201000-054 | | 2-09-0400 | rd4-0000-00-1400.rr20 | Wet Utilities Contract | 8,305.16 | Parcel 20 | Rhodes Companies | 9045 | 7/12/2007 |
| 1338-02 | 11/1/2006 | 11/8/2006 | SW11-1000 | SW111000-044 | | 1-09-0400 | rrt-0000-00-1400.swml | Wet Utility Contract | 4,437.28 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| EWA2935 | 10/24/2006 | 11/9/2006 | RR12-3000 | RR121000-796 | | 1-09-0500 | rrt-0000-00-1400.rr12 | Repair Water Service | 20.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1340-01 | 11/1/2006 | 11/9/2006 | RRTE-3000 | RRTE3000-018 | | 1-09-0400 | rrt-0000-00-1400.rrte | Wet Utility | 4,854.40 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1340-01 | 11/1/2006 | 11/8/2006 | RRTE-3000 | RRTE1000-018 | | 2-09-0300 | rrt-0000-00-1400.rrte | Wet Utilities | 2,858.90 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 2007-CO-02 | 11/1/2006 | 11/13/2006 | RRTC-3000 | RRTCPM1-001 2 | | 2/2/5310 | rrt-0000-00-1400.rrtc | Wet Utilities | 3,813.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 2007-CO-03 | 11/1/2006 | 11/13/2006 | RRTC-1000 | RRTCPM1-001 2 | | 2/2/5310 | rrt-0000-00-1400.rrtc | Wet Utilities | 710.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 2007-CO-03 | 11/1/2006 | 11/13/2006 | RRLC-1400 | RRLCPM1-001 3 | | 2/2/5100 | rrt-0000-00-1400.rrlc | Wet Utilities | 606.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 2007-CO-01 | 11/1/2006 | 11/13/2006 | RRTC-3000 | RRTCPM1-001 2 | | 2/2/6300 | rrt-0000-00-1400.rrtc | Wet Utilities | 107.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/13/2007 |
| 2007-CO-03 | 11/1/2006 | 11/13/2006 | RRLC-3000 | RRLCPM1-001 2 | | 2/2/3130 | rrt-0000-00-1400.rrlc | Wet Utilities | 1,710.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1345-CO-01 | 10/24/2006 | 11/28/2006 | SW11-1000 | SW111000-044 | | 2-09-0800 | rrt-0000-00-1400.swml | Wet Utility Contract | 318.41 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1340-CO-001-01 | 11/9/2006 | 12/11/2006 | RRTE-3000 | RRTE3000-018 | | 3-08-0800 | rrt-0000-00-1400.rrte | Wet Utility contract | 1,488.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1314-03 | 12/1/2006 | 12/27/2006 | RR20-300A | RR201000-053 | | 2-09-0400 | rd4-0000-00-1400.rr20 | Wet Utility Contract | 14,221.98 | Parcel 20 | Rhodes Companies | 9045 | 7/12/2007 |
| 1349-04 | 12/1/2006 | 12/27/2006 | SW11-1000 | SW111000-044 | | 2-06-0400 | rrt-0000-00-1400.swml | Wet Utility Contract | 4,218.44 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1339-04 | 12/1/2006 | 12/27/2006 | SW11-1000 | SW111000-044 | | 2-09-0300 | rrt-0000-00-1400.swml | Wet Utility Contract | 1,810.12 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/13/2007 |
| 1319-CO-03 | 12/7/2006 | 12/27/2006 | SW11-1000 | SW111000-044 | | 1-09-0500 | rrt-0000-00-1400.swml | Wet Utility Contract | 337.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1340-01 | 12/18/2006 | 1/10/2007 | RRPM6-1000 | RRPM1000-147 | | 1-09-0500 | rrt-0000-00-1400.rrpm | Rise to Grade Existing Hydrant | 620.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1338-03 | 1/1/2007 | 1/24/2007 | SW11-1000 | SW111000-044 | | 3-09-0400 | rrt-0000-00-1400.swml | Wet Utility Contract | 3,109.82 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1339-05 | 1/1/2007 | 1/24/2007 | SW11-1000 | SW111000-044 | | 2-09-0300 | rrt-0000-00-1400.swml | Wet Utility Contract | 1,810.17 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/13/2007 |
| EWA2992 | 1/30/2007 | 3/5/2007 | RR01-3000 | RR011000-043 | | 3-06-0100 | rrt-rr01-01-5100.0000 | Bond Work Phase 1 RR Unit 5 | 722.56 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4064 | 7/12/2007 |
| 1339-06 | 2/1/2007 | 2/13/2007 | SW11-1000 | SW111000-044 | | 2-09-0500 | rrt-0000-00-1400.swml | Wet Utility Contract | 1,310.22 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1314-08 | 2/1/2007 | 2/28/2007 | RR20-300A | RR201000-013 | | 1-09-0900 | rd4-0000-00-1400.rr20 | Wet Utilities Contract | 8,098.44 | Parcel 20 | Rhodes Companies | 9045 | 7/12/2007 |
| EWA3156 | 3/26/2007 | 4/11/2007 | RR11-1000 | RR111000-013 | | 3-08-0100 | rrt-rr11-01-5100.0000 | EWA # 064A 3156 | 841.72 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/17/2007 |
| 1355-02 | 6/11/2007 | 7/9/2007 | RRLU-PAAK | RRLUPAAK-014 2 | | 2/2/5400 | rrt-0000-00-1400.rrml | Wet/Dry utilities | 161,283.95 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1353-02 | 6/11/2007 | 7/9/2007 | RRLU-PAAK | RRLUPAAK-014 1 | | 2/7/6300 | rrt-0000-00-1400.rrml | Wet/Dry Utilities | 212,112.76 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1356-02 | 6/11/2007 | 7/9/2007 | RRLU-PAAK | RRLUPAAK-014 2 | | 2/2/3150 | rrt-0000-00-1400.rrml | Wet/Dry Utilities | 13,590.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| EWA2774 | 3/23/2007 | 7/12/2007 | RR15-3000 | RR151000-163 | | 3-08-0100 | rrt-rr15-01-5100.0000 | Bond Work A, B, C, D | 45,553.78 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1799-EWA3052 | 5/15/2007 | 7/12/2007 | SH04-1000 | SH041000-007 | | 3-06-0100 | sdi-sh01-01-5100.0000 | Spanish Hills Bond Work | 3,570.74 | Rhodes Design & Development | Rhodes Companies | 965 | 7/12/2007 |
| EWA3271 | 7/1/2007 | 7/12/2007 | RRTE-3000 | RRTE1000-097 | | 1-10-0500 | rrt-0000-00-1400.rrte | Dry Utility Contract | 3,161.69 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1345-06 | 7/1/2007 | 7/12/2007 | SW11-1000 | SW111000-091 | | 2-10-0400 | rrt-0000-00-1400.swml | Dry Utility Contract | 2,317.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4054 | 7/12/2007 |
| 1339EWA3911 | 5/1/2007 | 7/19/2007 | SW11-1000 | SW131000-044 | | 1-09-0900 | rrt-0000-00-1400.swml | Wet Utility Contract | 9,560.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4090 | 7/19/2007 |
| 7003-EWA3171 | 4/11/2007 | 7/25/2007 | RR01-1000 | RR011000-049 | | 7-09-0500 | rrt-rr01-01-5100.0000 | Wet Utilities | 5,514.97 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4156 | 7/25/2007 |
| 1114-EWA3069 | 4/10/2007 | 7/25/2007 | RR20-1004 | RR201000-060 | | 3-10-0500 | rd4-0000-00-1400.rr20 | Dry Utility Contract | 12,807.23 | Parcel 20 | Rhodes Companies | 9298 | 7/25/2007 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1375-WA3310 | 5/1/2007 | 7/25/2007 | SW11-1000 | SW111000-044 | 2-09-0400 | rd-0000-00-1400.swm | Wet Utility Contract | 494.10 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4136 | 7/25/2007 |
| EWA3356 | 5/18/2007 | 7/31/2007 | RR70-100A | RR201000-051 | 2-09-0700 | rd6-0000-00-1400.rr20 | Wet Utilities Contract | 6,416.00 | Parcel 20 | Rhodes Companies | 9444 | 8/1/2007 |
| EWA3374 | 5/23/2007 | 7/31/2007 | RR01-1000 | RR011000-307 | 2-09-0400 | rd-rr01-01-5100.0000 | Raise (2) water cans @ Loop Rd | 2,572.70 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4173 | 8/1/2007 |
| 1324-08 | 6/1/2007 | 7/31/2007 | RR20-100A | RR201000-060 | 2-10-0900 | rd6-0000-00-1400.rr20 | Dry Utilities Contract | 41,512.23 | Parcel 20 | Rhodes Companies | 9444 | 8/1/2007 |
| 1324-05 | 6/1/2007 | 7/31/2007 | RR20-100A | RR201000-060 | 2-10-0200 | rd6-0000-00-1400.rr20 | Dry Utilities Contract | 45,227.64 | Parcel 20 | Rhodes Companies | 9444 | 8/1/2007 |
| 1345-05 | 6/1/2007 | 7/31/2007 | SW11-1000 | SW111000-091 | 2-10-0500 | rd-0000-00-1400.swm | Dry Utility Contract | 2,435.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4172 | 8/1/2007 |
| 1345-05 | 6/1/2007 | 7/31/2007 | SW11-1000 | SW111000-091 | 2-10-0400 | rd-0000-00-1400.swm | Dry Utility Contract | 520.30 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4172 | 8/1/2007 |
| EWA2659 | 6/21/2006 | 8/14/2007 | RR11-1000 | RR111000-157 | 2-08-0500 | rd-rr11-01-5100.0000 | Repair meter box lot 30 | 234.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA2640 | 7/25/2006 | 8/14/2007 | SHMF-1000 | SHMF1000-434 | 2-10-0600 | rd6-0000-00-1400.shmf | Wire damaged by others | 454.41 | Rhodes Design & Development | Rhodes Companies | 9640 | 8/14/2007 |
| EWA2737 | 8/4/2006 | 8/14/2007 | SHMF-1000 | SHMF1000-434 | 2-10-0600 | rd6-0000-00-1400.shmf | Repair 2" conduits damaged | 1,053.32 | Rhodes Design & Development | Rhodes Companies | 9640 | 8/14/2007 |
| EWA2788 | 8/17/2006 | 8/14/2007 | SW11-1000 | SW111000-014 | 2-09-0400 | rd-0000-00-1400.swm | Wet Utility Contract | 12,409.60 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA2843 | 9/25/2006 | 8/14/2007 | T125-1000 | T1251000-061 | 2-10-0400 | tu-0000-00-1400.t125 | Dry Utilities-Power | 13,580.10 | Tuscany Acquisitions III | Rhodes Companies | 9640 | 8/14/2007 |
| EWA3151 | 10/11/2006 | 8/14/2007 | SW11-1000 | SW111000-044 | 2-09-0400 | rd-0000-00-1400.swm | Wet Utility Contract | 7,005.78 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA2832 | 11/2/2006 | 8/14/2007 | SW11-3000 | SW111000-044 | 2-09-0200 | rd-0000-00-1400.swm | Wet Utility Contract | 34,050.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA2531 | 11/7/2006 | 8/14/2007 | SW11-3000 | SW111000-044 | 2-09-0100 | rd-0000-00-1400.swm | Wet Utility Contract | 8,246.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4135 | 8/14/2007 |
| EWA2983 | 12/7/2006 | 8/14/2007 | SHMF-1000 | SHMF1000-432 | 2-10-0600 | rd6-0000-00-1400.shmf | Replace wire damaged | 758.11 | Rhodes Design & Development | Rhodes Companies | 9640 | 8/14/2007 |
| EWA3066 | 1/30/2007 | 8/14/2007 | SHMF-1000 | SHMF1000-431 | 2-10-0100 | rd6-0000-00-1400.shmf | Run Gas Services | 7,645.00 | Rhodes Design & Development | Rhodes Companies | 9640 | 8/14/2007 |
| EWA3108 | 2/6/2007 | 8/14/2007 | SW11-1000 | SW111000-044 | 2-09-0500 | rd-0000-00-1400.swm | Wet Utility Contract | 275.02 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA3141 | 2/14/2007 | 8/14/2007 | T515-1000 | T5151000-004 | 2-10-0000 | tu-0000-00-1400.t515 | Dry Utility Contracts | 334.00 | Tuscany Acquisitions IV | Rhodes Companies | 9640 | 8/14/2007 |
| EWA3153 | 2/23/2007 | 8/14/2007 | SHMF-1000 | SHMF1000-450 | 2-10-0600 | rd6-0000-00-1400.shmf | Install Conduit for guard gate | 974.00 | Rhodes Design & Development | Rhodes Companies | 9640 | 8/14/2007 |
| EWA3152 | 3/1/2007 | 8/14/2007 | RR13-1000 | RR131000-795 | 2-04-0100 | rd-0000-00-1400.rr13 | Bond work sidewalks R&R | 39,206.42 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA3233 | 4/23/2007 | 8/14/2007 | SHMF-1000 | SHMF1000-435 | 2-10-0600 | rd6-0000-00-1400.shmf | Remove concrete/line | 579.78 | Rhodes Design & Development | Rhodes Companies | 9640 | 8/14/2007 |
| EWA3448 | 7/1/2007 | 8/14/2007 | RR20-100A | RR201004-071 | 2-10-0100 | rd6-0000-00-1400.rr20 | Move two gas mains | 916.00 | Parcel 20 | Rhodes Companies | 9640 | 8/14/2007 |
| EWA3449 | 7/1/2007 | 8/14/2007 | T519-1000 | T5191000-101 | 2-10-0100 | rd4-0000-00-1400.t519 | Move gas riser | 2,347.07 | Rhodes Design & Development | Rhodes Companies | 9640 | 8/14/2007 |
| EWA3494 | 7/18/2007 | 8/14/2007 | RRPM-1000 | RRPM1000-183 | 2-10-0800 | rd-0000-00-1400.rrpm | Gas sewer sleeve | 3,773.75 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4235 | 8/14/2007 |
| EWA3502 | 7/23/2007 | 8/15/2007 | T518-1000 | T5181000-011 | 2-10-0200 | tu-0000-00-1400.t518 | Dry Utilities Contract | 535.00 | Tuscany Acquisitions IV | Rhodes Companies | 9640 | 8/15/2007 |
| 8/16/2007 | 8/16/2007 | 8/16/2007 | | | | rrs-0000-00-1110.0075 | Advance against payables (see advance offset tab) | 200,000.00 | Rhodes Companies | Rhodes Companies | 9764 | 8/16/2007 |
| 03-0022-02 | 5/1/2007 | 5/22/2007 | RR05-1004 | RR051004-008 | 2-10-0500 | rd-0000-00-1400.rr5 | Power West & East Side | 3,306.15 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4266 | 8/22/2007 |
| 03-0022-02 | 5/1/2007 | 5/21/2007 | RR05-1004 | RR051004-008 | 2-10-0500 | rd-0000-00-1400.rr5 | Power West & East Side | 1,719.66 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4266 | 8/22/2007 |
| 070066-01 | 7/31/2007 | 7/31/2007 | A207-1001 | 06-00033 | 56-3-2240 | 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.0000 | Tapping sleeve, gate valve, tt | 9,809.00 | Pinnacle Grading | Pinnacle | 2443 | 8/23/2007 |
| 070048-01 | 7/23/2007 | 7/31/2007 | A207-1001 | 06-00008 | 53-1-2300 | 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.0000 | Modification, form 874 | 141,409.17 | Pinnacle Grading | Pinnacle | 2443 | 8/23/2007 |
| 1304-30 | 7/1/2007 | 8/21/2007 | RR20-100A | RR201000-040 | 2-10-0200 | p20-0000-00-1400.rr20 | Dry Utility Contract | 104,056.59 | Parcel 20 | Rhodes Companies | 9875 | 8/23/2007 |
| 1363-03 | 7/1/2007 | 8/21/2007 | RR20-1008 | RR201008-029 | 2-10-0500 | p20-0000-00-1400.rr20 | Dry Utilities | 10,649.82 | Parcel 20 | Rhodes Companies | 9875 | 8/27/2007 |
| 2767 | 7/11/2007 | 8/21/2007 | TSCH-1000 | TSCH1000-18 | 2-10-0800 | rd6-0000-00-1400.tsch | Power | 867.34 | Rhodes Design & Development | Rhodes Companies | 9875 | 8/23/2007 |
| 1361-06 | 7/31/2007 | 8/21/2007 | RR5-1000 | RR51000-035 | 2-10-0200 | rr-0000-00-1400.rrmj | Dry Utility contract | 1,598.40 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4285 | 8/23/2007 |
| (T)-6-7WA3040 | 5/15/2007 | 8/26/2007 | RR20-1008 | RR201008-035 | 2-08-0500 | rd6-0000-00-1400.rr20 | Dry Utilities | 420.00 | Parcel 20 | Rhodes Companies | 10024 | 9/4/2007 |
| 3711-2 | 6/16/2007 | 9/4/2007 | SHSA-1000 | SHSA1000-008 | 2-09-0200 | rd6-0000-00-1400.shsa | Wet Utilities | 124,401.26 | Rhodes Design & Development | Rhodes Companies | 10031 | 9/4/2007 |
| 3711-2 | 4/30/2007 | 9/4/2007 | SHSA-1000 | SHSA1000-008 | 2-09-0400 | rd6-0000-00-1400.shsa | Wet Utilities | 33,836.50 | Rhodes Design & Development | Rhodes Companies | 10023 | 9/4/2007 |
| 1225-03 | 7/25/2007 | 9/4/2007 | TRUC-1000 | TRUC1000-57 2 | 2/2/5300 | rd6-0000-00-1400.truc | Storm Drain Contract | 27,230.00 | Rhodes Design & Development | Rhodes Companies | 10031 | 9/4/2007 |
| 1363-02 | 7/31/2007 | 9/4/2007 | RR20-1008 | RR201008-073 | 2-10-0900 | p20-0000-00-1400.rr20 | Dry Utilities | 54,474.75 | Parcel 20 | Rhodes Companies | 10024 | 9/4/2007 |
| 1258-03 | 8/1/2007 | 9/4/2007 | RR20-1008 | RR201008-075 | 2-10-0600 | p20-0000-00-1400.rr20 | Dry Utilities | 17,808.93 | Parcel 20 | Rhodes Companies | 10024 | 9/4/2007 |
| 1340-04 | 8/1/2007 | 9/4/2007 | RR20-1008 | RR201008-031 | 2-10-0600 | p20-0000-00-1400.rr20 | Dry Utilities | 111,767.56 | Parcel 20 | Rhodes Companies | 10024 | 9/4/2007 |
| 1165-02 | 4/1/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 2 | 2/2/5300 | rr-0000-00-1400.rrmj | Wet/Dry Utilities | 184,817.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4373 | 9/6/2007 |
| 1335-05 | 8/1/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 2 | 2/2/5300 | rr-0000-00-1400.rrmj | Wet/Dry Utilities | 3,210.30 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4335 | 9/4/2007 |
| 1355-03 | 8/1/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 2 | 2/2/5300 | rr-0000-00-1400.rrmj | Wet/Dry Utilities | 2,514.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4335 | 9/4/2007 |
| 1155-03 | 8/1/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 2 | 2/2/5300 | rr-0000-00-1400.rrmj | Wet/Dry Utilities | 7,180.19 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4335 | 9/4/2007 |
| 1255-03 | 8/1/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 3 | 2/2/5300 | rr-0000-00-1400.rrmj | Wet/Dry Utilities | 13,340.11 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4325 | 9/4/2007 |
| 1355-03 | 8/1/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 2 | 2/2/5300 | rr-0000-00-1400.rrmj | Wet/Dry Utilities | 5,316.16 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4335 | 9/4/2007 |
| 1365-04 | 4/20/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 3 | 2/2/5300 | rr-0000-00-1400.rrmj | Wet/Dry Utilities | 7,167.41 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4335 | 9/4/2007 |
| 1375-04 | 4/20/2007 | 9/4/2007 | RRMJ-PARK | RRMJPARK-014 1 | 2/2/5300 | rr-0000-00-1400.rrmj | Wet/Dry Utilities | 30,847.32 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4335 | 9/4/2007 |
| 1343-01 | 10/20/2006 | 12/11/2006 | RR01-1000 | RR011000-029 | 2-08-0400 | rd-rr01-01-5100.0000 | Streetlight install-Paint Grey | 1,806.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| EWA3212 | 7/1/2007 | 7/12/2007 | RRTC-1000 | RRTC1000-037 | 2-10-0500 | rd-0000-00-1400.rrtc | Dry Utility Contract | 551.30 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| EWA3417 | 7/12/2007 | 9/6/2007 | RR01-1000 | RR011000-053 | 2-08-0600 | rd-rr01-01-5100.0000 | EWA # 3417 | 1,375.41 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| EWA3341 | 7/17/2007 | 9/6/2007 | SW11-1000 | SW111000-044 | 2-09-0500 | rd-0000-00-1400.swm | Wet Utility Contract | 3,261.92 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| 3064-817 | 7/23/2007 | 9/6/2007 | T524-1000 | T5241000-16 | 2-10-0300 | rd4-0000-00-1400.t524 | Dry Utility Contract | 132.33 | Rhodes Design & Development | Rhodes Companies | 10106 | 9/6/2007 |
| EWA3054 | 7/31/2007 | 9/6/2007 | AR24-1000 | AR241000-037 | 2-08-0700 | rd-ar24-01-5100.0000 | EWA # 3054 Wiles | 3,458.40 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| EWA3325 | 8/1/2007 | 9/6/2007 | SHSA-1000 | SHSA1000-133 | 2-11-0600 | rd6-0000-00-1400.shsa | Repair Caps | 1,131.69 | Rhodes Design & Development | Rhodes Companies | 10106 | 9/6/2007 |
| EWA2776 | 8/1/2007 | 9/6/2007 | RR16-1000 | RR161000-167 | 2-08-0100 | rd-0000-00-1400.rr16 | Bond Release | 6,771.38 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| EWA3036 | 8/1/2007 | 9/6/2007 | RR14-1000 | RR141000-385 | 2-10-0400 | rd-0000-00-1400.rr14 | Repair 1" damaged phone line | 622.05 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| EWA3182 | 8/1/2007 | 9/6/2007 | RRWW-1000 | RRWW1000-177 | 2-08-0600 | rd-0000-00-1400.rrwi | EWA # 3182 | 1,380.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4343 | 9/6/2007 |
| 1258-04 | 8/8/2007 | 9/6/2007 | TSMU-1000 | TSMU1000-001 | 2-10-0500 | rd4-0000-00-1400.tsmu | Proposal # 044-2006 | 29,066.17 | Rhodes Design & Development | Rhodes Companies | 10106 | 9/6/2007 |
| EWA3435 | 8/10/2007 | 9/18/2007 | RR20-100A | RR201004-068 | 2-08-0900 | p20-0000-00-1400.rr20 | Repair fire hydrant | 827.76 | Parcel 20 | Rhodes Companies | 10343 | 9/13/2007 |
| EWA3436 | 8/10/2007 | 9/18/2007 | RR20-1008 | RR201008-085 | 2-08-0300 | p20-0000-00-1400.rr20 | Clean up lot 11 | 3,302.39 | Parcel 20 | Rhodes Companies | 10347 | 9/13/2007 |
| EWA3450 | 8/10/2007 | 9/18/2007 | SHMF-1000 | SHMF1000-443 | 2-09-8200 | rd6-0000-00-1400.shmf | Repair Sewer | 2,544.99 | Rhodes Design & Development | Rhodes Companies | 10343 | 9/13/2007 |
| EWA3468 | 8/10/2007 | 9/18/2007 | SW11-1000 | SW111000-081 | 2-10-0300 | rd-0000-00-1400.swm | Dry Utility Contract | 1,658.34 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4411 | 9/14/2007 |
| EWA3402 | 8/15/2007 | 9/18/2007 | RR20-100A | RR201000-054 | 2-10-0000 | p20-0000-00-1400.rr20 | Wet Utilities Contract | 648.00 | Parcel 20 | Rhodes Companies | 10343 | 9/18/2007 |
| 070068-02 | 8/11/2007 | 8/31/2007 | A207-1001 | 07-00099 | 55-1-3200 | 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.0000 | PAY AP. NO 1 INVOICE 070068-0 | 18,098.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070064-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 56-1-3180 | 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.0000 | PIPE AND VALVES, 8"-9" | 14,800.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070068-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 57-1-3340 | 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.0000 | PIPE AND VALVES, 4"-5" | 4,442.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070064-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 55-1-3180 | 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.0000 | PIPE AND VALVES, 8"-9" | 7,840.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070068-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 56-1-3180 | 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.0000 | PIPE AND VALVES, 8"-9" | 1,908.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070066-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 56-1-3180 | 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.0000 | PIPE AND VALVES, 8"-9" | 1,858.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070068-01 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 56-1-3180 | 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.0000 | PIPE AND VALVES, 8"-9" | 1,274.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070068-01 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 57-1-3180 | 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.0000 | PIPE AND VALVES, 6"-9" | 1,078.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| 070064-02 | 8/31/2007 | 8/31/2007 | A207-1001 | 07-00099 | 56-1-3180 | 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.0000 | PIPE AND VALVES, 3"-9" | 342.00 | Pinnacle Grading | Pinnacle | 2604 | 9/20/2007 |
| EWA3364 | 8/10/2007 | 9/24/2007 | SHMF-1000 | SHMF1000-445 | 2-09-0400 | rd6-0000-00-1400.shmf | Repair 2" PVC | 390.74 | Rhodes Design & Development | Rhodes Companies | 10414 | 9/24/2007 |
| EWA2774 | 8/22/2007 | 7/13/2007 | RR11-1000 | RR111000-183 | 2-06-0100 | rd-rr11-01-5100.0000 | Bond Work A, B, C, D | 5,506.14 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4480 | 10/3/2007 |
| 1315-01 | 11/1/2006 | 11/27/2006 | RR20-100A | RR201008-024 | 2-09-0400 | rd6-0000-00-1400.rr20 | Wet Utilities | 4,657.33 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| 1315-01 | 12/1/2006 | 12/27/2006 | RR20-1008 | RR201008-024 | 2-08-0200 | rd6-0000-00-1400.rr20 | Wet Utilities | 14,290.88 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| 1315-01 | 12/1/2006 | 12/27/2006 | RR20-1008 | RR201008-024 | 2-08-0400 | rd6-0000-00-1400.rr20 | Wet Utilities | 15,785.00 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| 1315-02 | 1/1/2007 | 1/24/2007 | RR20-1008 | RR201008-024 | 2-08-0200 | rd6-0000-00-1400.rr20 | Wet Utilities | 23,444.44 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| 1315-02 | 1/1/2007 | 1/24/2007 | RR20-1008 | RR201008-024 | 2-09-0300 | rd6-0000-00-1400.rr20 | Wet Utilities | 19,898.85 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| 1315-02 | 1/1/2007 | 1/24/2007 | RR20-1008 | RR201008-024 | 2-06-0400 | rd6-0000-00-1400.rr20 | Wet Utilities | 12,915.00 | Parcel 20 | Rhodes Companies | 10708 | 10/10/2007 |
| 1415-03 | 1/1/2007 | 2/26/2007 | RR20-1008 | RR201008-024 | 2-09-0400 | rd6-0000-00-1400.rr20 | Wet Utilities | 41,916.97 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| 1315-03 | 2/1/2007 | 2/26/2007 | RR20-1008 | RR201008-024 | 2-07-0900 | rd6-0000-00-1400.rr20 | Wet Utilities | 2,765.33 | Parcel 20 | Rhodes Companies | 10705 | 10/10/2007 |
| EWA3318 | 8/1/2007 | 10/10/2007 | TS6C-1000 | TS6C1000-234 | 2-09-0500 | rd6-0000-00-1400.ts6c | Patching | 4,900.00 | Rhodes Design & Development | Rhodes Companies | 10705 | 10/10/2007 |
| 10/10/2007 | 10/10/2007 | 10/10/2007 | | | | rd6-0000-30-7180.0000 | Home Check-6785 | 3,119.60 | Rhodes Design & Development | Rhodes Companies | 10676 | 10/10/2007 |
| 07066-01 | 9/14/2007 | 9/28/2007 | A207-1001 | 06-00015 | 55-1-3270 | 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.0000 | Pipes & Valves | 72,353.80 | Pinnacle Grading | Pinnacle | 2714 | 10/11/2007 |
| 07066-01 | 9/14/2007 | 9/28/2007 | A207-1001 | 06-00015 | 55-1-3240 | 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.0000 | Pipes & Valves | 12,960.00 | Pinnacle Grading | Pinnacle | 2714 | 10/11/2007 |
| 07066-01 | 9/18/2007 | 9/28/2007 | A207-1001 | 06-00015 | 55-1-3300 | 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.0000 | Pipes & Valves | 1,371.00 | Pinnacle Grading | Pinnacle | 2714 | 10/11/2007 |
| 07066-01 | 9/18/2007 | 9/28/2007 | A202-1001 | 06-00015 | 57-1-3140 | 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.0000 | Pipes & Valves | 22,735.00 | Pinnacle Grading | Pinnacle | 2714 | 10/11/2007 |
| 07066-01 | 9/24/2007 | 9/28/2007 | A201-1001 | 06-00015 | 57-1-3180 | 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.0000 | Pipes & Valves | 23,910.00 | Pinnacle Grading | Pinnacle | 2714 | 10/11/2007 |
| 07066-01 | 9/18/2007 | 9/28/2007 | A207-1001 | 06-00015 | 57-1-3100 | 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.0000 | Pipes & Valves | 94,126.50 | Pinnacle Grading | Pinnacle | 2714 | 10/11/2007 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07064-01 | 9/24/2007 | 9/18/2007 | A207-1001 | 06-00015 | 57-1-5520 | 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.0000 | Pipes & Valves | 207.00 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07060-01 | 9/18/2007 | 9/21/2007 | A207-1001 | 06-00015 | 60-1-7740 | 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.0000 | Pipes & Valves | 12,378.40 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07060-01 | 9/18/2007 | 9/24/2007 | A207-1001 | 06-00015 | 60-1-2780 | 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.0000 | Pipes & Valves | 14,097.90 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07064-01 | 9/18/2007 | 9/24/2007 | A207-1001 | 06-00015 | 60-1-2600 | 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.0000 | Pipes & Valves | 30,164.40 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07064-01 | 9/24/2007 | 9/24/2007 | A207-1001 | 06-00015 | 60-1-2320 | 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.0000 | Pipes & Valves | 7,574.00 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07064-01 | 9/24/2007 | 9/24/2007 | A207-1001 | 06-00015 | 60-1-2880 | 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.0000 | Pipes & Valves | 40,002.10 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07064-01 | 9/24/2007 | 9/18/2007 | A207-1001 | 06-00015 | 60-1-1470 | 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.0000 | Fire Hydrant, Other | 3,720.00 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07064-01 | 9/24/2007 | 9/24/2007 | A207-1001 | 06-00015 | 55-1-2560 | 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.0000 | Concrete Walls | 10,584.00 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07064-01 | 9/28/2007 | 9/18/2007 | A207-1001 | 06-00015 | 55-1-3120 | 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.0000 | Trenching | 7,083.00 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| 07064-01 | 9/28/2007 | 9/28/2007 | A207-1001 | 06-00015 | 55-1-4180 | 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.0000 | Pipes & Valves | 20,455.00 | Pinnacle Grading | Pinnacle | 2714 | 10/31/2007 |
| CWA2557 | 10/24/2006 | 11/6/2006 | SHMU-1000 | SHMU1000-374 | 3-08-0200 | r66-0000-00-1400.shm | Haul Off | 537.13 | Rhodes Design & Development | Rhodes Companies | 10957 | 10/26/2007 |
| CWA2971 | 10/31/2006 | 11/18/2006 | RR13-1000 | RR131000-331 | 3-08-0100 | r-0000-00-1400.rr13 | R&R Sound Walls | 719.76 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| CWA2601 | 11/6/2006 | 11/11/2006 | SHSF-1000 | SHSF1000-044 | 7-10-0400 | r66-0000-00-1400.sm | Assembly/Stand Pole/Pull | 43.56 | Rhodes Design & Development | Rhodes Companies | 10957 | 10/24/2007 |
| CWA2999 | 1/29/2007 | 2/13/2007 | SW11-1000 | SW111000-041 | 2-10-0600 | m-0000-00-1400.swm | Dry Utility Contract | 300.54 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/16/2007 |
| CWA2911 | 3/22/2007 | 4/23/2007 | RR20-100A | RR201000-053 | 3-09-0300 | r66-0000-00-1400.r20 | Wet Utilities Contract | 315.60 | Parcel 20 | Rhodes Companies | 10957 | 10/19/2007 |
| 18454 WA3270 | 4/2/2007 | 6/06/2007 | SW11-1000 | SW111000-091 | 7-10-0300 | m-0000-00-1400.swm | Dry Utility Contract | 704.57 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/24/2007 |
| 15298 WA2901 | 5/7/2007 | 7/13/2007 | SW11-1000 | SW111000-041 | 2-09-0300 | m-0000-00-1400.swm | Wet Utility Contract | 1,040.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/19/2007 |
| 1324 CWA1959 | 4/19/2007 | 7/25/2007 | RR20-100A | RR201000-060 | 2-10-0600 | r66-0000-00-1400.r20 | Dry Utility Contract | 1,967.47 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| 15298 WA3100 | 5/1/2007 | 7/25/2007 | SW11-1000 | SW111000-044 | 3-09-0400 | m-0000-00-1400.swm | Wet Utility Contract | 54.90 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| CWA3358 | 5/25/2007 | 7/31/2007 | RR20-100A | RR201000-063 | 2-09-0300 | r66-0000-00-1400.r20 | Wet Utilities Contract | 754.00 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| CWA3161 | 10/11/2006 | 8/14/2007 | SW11-1000 | SW111000-044 | 2-09-0400 | m-0000-00-1400.swm | Wet Utility Contract | 718.42 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| CWA3152 | 8/1/2007 | 8/24/2007 | RR12-1000 | RR121000-795 | 3-08-0100 | r-0000-00-1400.rr12 | Bench work sidewalk R&R | 5,245.58 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| CWA3181 | 7/17/2007 | 9/6/2007 | SW11-1000 | SW111000-044 | 2-09-0600 | m-0000-00-1400.swm | Wet Utility Contract | 140.14 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| CWA3488 | 8/20/2007 | 9/18/2007 | SW11-1000 | SW111000-091 | 7-10-0500 | m-0000-00-1400.swm | Dry Utility Contract | 165.80 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/24/2007 |
| 1363-05 | 8/1/2007 | 10/25/2007 | RR20-1008 | RR201008-023 | 2-10-0500 | a20-0000-00-1400.r20 | Dry Utilities | 40,085.36 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| 1363-06 | 8/1/2007 | 10/25/2007 | RR20-1008 | RR201008-021 | 2-10-0200 | a20-0000-00-1400.r20 | Dry Utilities | 21,296.86 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| 1363-06 | 8/1/2007 | 10/24/2007 | RR20-1008 | RR201008-022 | 2-10-0400 | a20-0000-00-1400.r20 | Dry Utilities | 18,995.12 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| 1114-C043 | 8/10/2007 | 10/24/2007 | RR20-100A | RR201000-095 | 2-09-0400 | a20-0000-00-1400.r20 | Wet Utilities contract | 23,847.71 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| 1114-C049 | 8/20/2007 | 10/24/2007 | RR20-100A | RR201000-053 | 2-09-0400 | a20-0000-00-1400.r20 | Wet Utilities contract | 3,538.84 | Parcel 20 | Rhodes Companies | 10958 | 10/26/2007 |
| CWA3583 | 8/20/2007 | 10/26/2007 | RR20-100A | RR201000-079 | 2-10-0200 | a20-0000-00-1400.r20 | R&R pipeline & Power boxes | 2,148.45 | Parcel 20 | Rhodes Companies | 10957 | 10/26/2007 |
| CWA2A27R57 | 10/18/2007 | 10/24/2007 | RR12-1000 | RR121000-743 | 4-04-0100 | r-0000-00-1400.rr12 | Concrete F&R | 568.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4648 | 10/26/2007 |
| 10/25/2007 | 10/15/2007 | 10/30/2007 | | | | r66-0000-30-7200.0000 | Homes Over BCAS | 375.88 | Rhodes Design & Development | Rhodes Companies | 11043 | 11/1/2007 |
| 1345-7 | 10/1/2007 | 11/6/2007 | SW11-1000 | SW111000-091 | 2-10-0300 | m-0000-00-1400.swm | Dry Utility Contract | 2,417.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4730 | 11/7/2007 |
| 07-0021-3 | 6/1/2007 | 11/11/2007 | RR65-1004 | RR651004-012 | 7-10-0200 | m-0000-00-1400.rr6 | RR Entry Power | 10,444.16 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4738 | 11/12/2007 |
| 07-0021-3 | 6/1/2007 | 11/13/2007 | RR65-1004 | RR651004-012 | 7-10-0200 | m-0000-00-1400.rr6 | RR Entry Power | 1,163.25 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4738 | 11/13/2007 |
| 07-0021-3 | 6/1/2007 | 11/14/2007 | RR65-1004 | RR651004-012 | 9-10-0200 | m-0000-00-1400.rr6 | RR Entry Power | 140.72 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| 07-0021-3 | 6/1/2007 | 11/13/2007 | RR65-1004 | RR651004-015 | 7-10-0300 | m-0000-00-1400.rr6 | RR Entry Power | 10,985.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| 07-0021-3 | 6/1/2007 | 11/13/2007 | RR65-1004 | RR651004-013 | 2-15-0400 | m-0000-00-1400.rr6 | RR Entry Power | 3,505.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| 07-0021-03A | 6/15/2007 | 11/11/2007 | RR65-1004 | RR651004-013 | 3-10-0200 | m-0000-00-1400.rr6 | RR Entry Power | 781.37 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| 07-0021-03A | 6/15/2007 | 11/11/2007 | RR65-1004 | RR651004-013 | 3-10-0200 | m-0000-00-1400.rr6 | RR Entry Power | 5,496.02 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| CWA2007 | 8/2/2007 | 11/11/2007 | RR14-1000 | RR141000-247 | 3-08-0100 | m-0000-00-1400.r14 | R&R for Water Release | 6,071.48 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| 1363-06 | 9/1/2007 | 11/12/2007 | RR20-1000 | RR201000-025 | 2-10-0600 | m-0000-00-1400.rr | Dry Utility Contract | 18,051.34 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| 1363-06 | 9/1/2007 | 11/11/2007 | RR65-1000 | RR651000-025 | 2-10-0300 | m-0000-00-1400.rr | Dry Utility Contract | 1,002.58 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| CWA3118 | 8/10/2007 | 11/11/2007 | RR14-1000 | RR141000-043 | 2-10-0400 | m-0000-00-1400.rr | Extra additional shims | 7,470.87 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| CWA3119 | 8/10/2007 | 11/13/2007 | RR63-1000 | RR631000-044 | 2-10-0500 | m-0000-00-1400.rr | Extra to contract hoe renting | 4,572.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| CWA3150 | 8/10/2007 | 11/11/2007 | RR63-1000 | RR631000-044 | 2-10-0900 | m-0000-00-1400.rr | Extra Hoe Renting | 7,716.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| CWA3151 | 8/10/2007 | 11/13/2007 | RR63-1000 | RR631000-040 | 2-10-0400 | m-0000-00-1400.rr | Extra to Contract lower boxes | 1,675.40 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| CWA3215 | 8/20/2007 | 11/13/2007 | RR63-1000 | RR631000-042 | 2-10-0600 | m-0000-00-1400.rr | Extra Add Fire Sprinkler Pump | 5,102.49 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4734 | 11/13/2007 |
| CWA3524 | 8/26/2007 | 11/13/2007 | RR20-1008 | RR201008-079 | 3-08-0300 | a20-0000-00-1400.r20 | Remove dirt off lots [illegible] | 1,303.00 | Parcel 20 | Rhodes Companies | 11177 | 11/13/2007 |
| 1345-01 | 12/1/2006 | 1/10/2007 | SW11-1000 | SW111000-081 | 3-10-0300 | m-0000-00-1400.swm | Dry Utility Contract | 518.70 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-01 | 12/1/2006 | 1/10/2007 | SW11-1000 | SW111000-081 | 2-10-0900 | m-0000-00-1400.swm | Dry Utility Contract | 1,648.90 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-01 | 12/1/2006 | 1/10/2007 | SW11-1000 | SW111000-081 | 2-10-0400 | m-0000-00-1400.swm | Dry Utility Contract | 1,130.10 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-02 | 2/1/2007 | 2/19/2007 | SW11-1000 | SW111000-081 | 2-10-0300 | m-0000-00-1400.swm | Dry Utility Contract | 518.80 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-03 | 2/1/2007 | 2/19/2007 | SW11-1000 | SW111000-081 | 2-10-0500 | m-0000-00-1400.swm | Dry Utility Contract | 2,124.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4768 | 11/14/2007 |
| 1345-03 | 2/1/2007 | 2/19/2007 | SW11-1000 | SW111000-091 | 2-10-0400 | m-0000-00-1400.swm | Dry Utility Contract | 1,507.30 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-04 | 4/2/2007 | 4/18/2007 | SW11-1000 | SW111000-091 | 2-10-0300 | m-0000-00-1400.swm | Dry Utility Contract | 3,587.74 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-04 | 4/2/2007 | 4/18/2007 | SW11-1000 | SW111000-091 | 2-10-0900 | m-0000-00-1400.swm | Dry Utility Contract | 630.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-04 | 4/2/2007 | 4/18/2007 | SW11-1000 | SW111000-091 | 2-10-0400 | m-0000-00-1400.swm | Dry Utility Contract | 313.40 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-02 | 3/1/2007 | 4/18/2007 | SW11-1000 | SW111000-080 | 2-10-0500 | m-0000-00-1400.swm | Dry Utility Contract | 42.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 07-0021-01 | 4/7/2007 | 5/21/2007 | RR65-1004 | RR651004-012 | 2-10-0200 | m-0000-00-1400.rr6 | Traffic signal install damage | 2,276.48 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/22/2007 | RR65-1004 | RR651004-012 | 2-10-0300 | m-0000-00-1400.rr6 | Traffic signal install damage | 20,200.08 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-02-1 | 5/4/2007 | 5/22/2007 | RR65-1004 | RR651004-012 | 2-10-0200 | m-0000-00-1400.rr6 | Traffic signal install damage | 815.33 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-03-1 | 5/4/2007 | 5/21/2007 | RR65-1004 | RR651004-012 | 2-10-0300 | m-0000-00-1400.rr6 | Traffic signal install damage | 2,455.71 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-03-2 | 5/4/2007 | 5/21/2007 | RR65-1004 | RR651004-012 | 3-10-0300 | m-0000-00-1400.rr6 | Traffic signal install damage | 12,712.82 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-04-1 | 5/4/2007 | 5/22/2007 | RR65-1004 | RR651004-012 | 3-10-0400 | m-0000-00-1400.rr6 | Traffic signal install damage | 789.80 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-02-1 | 6/4/2007 | 5/25/2007 | RR65-1004 | RR651004-012 | 2-10-0900 | m-0000-00-1400.rr6 | Traffic signal install damage | 1,740.46 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 1345-05 | 7/1/2007 | 7/12/2007 | SW11-1000 | SW111000-091 | 2-10-0200 | m-0000-00-1400.swm | Dry Utility Contract | 257.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-05 | 6/1/2007 | 7/31/2007 | SW11-1000 | SW111000-091 | 3-10-0500 | m-0000-00-1400.swm | Dry Utility Contract | 315.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4766 | 11/14/2007 |
| 1345-05 | 6/1/2007 | 7/31/2007 | SW11-1000 | SW111000-091 | 3-10-0400 | m-0000-00-1400.swm | Dry Utility Contract | 56.70 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4760 | 11/14/2007 |
| CWA2603 | 11/7/2006 | 8/14/2007 | SW11-1000 | SW111000-044 | 2-09-0400 | m-0000-00-1400.swm | Wet Utility Contract | 928.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4767 | 11/14/2007 |
| CWA3106 | 2/6/2007 | 8/14/2007 | SW11-1000 | SW111000-044 | 3-09-0300 | m-0000-00-1400.swm | Wet Utility Contract | 41.60 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4767 | 11/14/2007 |
| 07-0021-8 | 4/1/2007 | 11/13/2007 | RR65-1004 | RR651004-013 | 7-10-0300 | m-0000-00-1400.rr6 | RR Entry Power | 1,248.24 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-3 | 8/1/2007 | 11/11/2007 | RR65-1004 | RR651004-012 | 2-10-0200 | m-0000-00-1400.rr6 | RR Entry Power | 178.25 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-3 | 6/1/2007 | 11/13/2007 | RR65-1004 | RR651004-012 | 3-10-0200 | m-0000-00-1400.rr6 | RR Entry Power | 60.03 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-3 | 8/1/2007 | 11/13/2007 | RR65-1004 | RR651004-015 | 7-10-0500 | m-0000-00-1400.rr6 | RR Entry Power | 2,330.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-8 | 8/1/2007 | 11/13/2007 | RR65-1004 | RR651004-017 | 7-15-0400 | m-0000-00-1400.rr6 | RR Entry Power | 348.50 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-03A | 6/15/2007 | 11/11/2007 | RR65-1004 | RR651004-012 | 7-10-0200 | m-0000-00-1400.rr6 | RR Entry Power | 37.34 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 07-0021-03A | 6/15/2007 | 11/13/2007 | RR65-1004 | RR651004-012 | 7-10-0700 | m-0000-00-1400.rr6 | RR Entry Power | 723.73 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4765 | 11/14/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00013 | 80-1-1440 | 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.0000 | Line Item 227 | 47,258.43 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00013 | 80-1-2640 | 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.0000 | Line Item 228 | 10,231.05 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 60-1-2320 | 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.0000 | Line Item 223 | 1,930.50 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 60-1-2320 | 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.0000 | Line Item 219 | 3,362.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 60-1-2300 | 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.0000 | Line Item 218 | 14,215.48 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 60-1-2240 | 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.0000 | Line Item 217 | 7,765.70 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 60-1-2260 | 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.0000 | Line Item 215 | 18,717.07 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 57-1-3540 | 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.0000 | Line Item 174 | 5,309.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 57-1-3520 | 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.0000 | Line Item 173 | 347.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 57-1-3180 | 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.0000 | Line Item 109 | 1,809.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 57-1-3160 | 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.0000 | Line Item 172 | 1,440.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 57-1-3140 | 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.0000 | Line Item 170 | 2,961.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 50-1-3160 | 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.0000 | Line Item 164 | 306.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 50-1-3180 | 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.0000 | Line Item 163 | 142.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | 50-1-3180 | 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.0000 | Line Item 161 | 24,739.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | 10/31/2007 | 12/31/2007 | A207-1001 | 06-00019 | | 56-1-3180 | 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.0000 | Line Item 133 | 611.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 56-1-3180 | 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.0000 | Line Item 134 | 954.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 56-1-3180 | 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.0000 | Line Item 137 | 11,932.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 56-1-3120 | 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.0000 | Line Item 165 | 6,310.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 55-1-4000 | 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.0000 | Line Item 149 | 1,977.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 55-1-7220 | 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.0000 | Line Item 232 | 4,471.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 75-1-3230 | 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.0000 | Line Item 119 | 17,936.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 56-1-3180 | 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.0000 | Line Item 141 | 787.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 55-1-3180 | 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.0000 | Line Item 124 | 1,710.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 55-1-3180 | 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.0000 | Line Item 131 | 15,255.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 55-1-3120 | 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.0000 | Line Item 127 | 2,322.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 56-1-2580 | 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.0000 | Line Item 144 | 2,794.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 51-1-1720 | 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.0000 | Line Item 34 | 845.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3180 | 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.0000 | Line Item 42 | 7,185.10 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-4200 | 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.0000 | Line Item 76 | 15,186.50 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3260 | 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.0000 | Line Item 61 | 5,365.50 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 51-1-3740 | 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.0000 | Line Item 59 | 409.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3240 | 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.0000 | Line Item 40 | 18,408.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3220 | 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.0000 | Line Item 75 | 1,342.40 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 51-1-2900 | 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.0000 | Line Item 47 | 17,097.20 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 51-1-3180 | 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.0000 | Line Item 52 | 17,744.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3120 | 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.0000 | Line Item 51 | 11,792.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| 4 | 10/31/2007 | 10/31/2007 | A207-1001 | 06-00019 | | 53-1-3130 | 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.0000 | Line Item 49 | 16,644.00 | Pinnacle Grading | Pinnacle | 2928 | 11/15/2007 |
| M-605 | 8/11/2007 | 10/12/2007 | Y513-0058 | | 13063 | 7-12-0700 | 1a4-fe13-10-5100.0000 | BC Masonry lot 38 | (200.20) | Tuscany Acquisitions | Rhodes Companies | 11506 | 12/5/2007 |
| CWA0521 | 4/26/2007 | 11/29/2007 | R820-1006 | R8201008-076 | | 2-09-0300 | p20-0000-00-1400.rr20 | Remove dirt off lots 3 Feb-15 | 1,311.00 | Parcel 20 | Rhodes Companies | 11506 | 12/5/2007 |
| 3224-13 | 10/1/2007 | 11/29/2007 | R820-1004 | R8201000-060 | | 2-10-0200 | p20-0000-00-1400.rr20 | Dry Utility Contract | 6,632.01 | Parcel 20 | Rhodes Companies | 11506 | 12/5/2007 |
| 3149-04 | 10/1/2007 | 11/29/2007 | RRTT-1000 | RRTT1000-037 | | 2-10-0600 | r6-0000-00-1400.rrtt | Dry Utility Contract | 3,951.49 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4849 | 12/5/2007 |
| CWA3650 | 10/21/2007 | 11/30/2007 | TS21-3000 | TS21000-321 | | 3-08-0100 | t4-0000-00-1400.ts17 | Sidewalk panels and water box | 1,214.93 | Tuscany Acquisitions | Rhodes Companies | 11506 | 12/5/2007 |
| CWA1121 | 2/14/2007 | 12/5/2007 | R812-4000 | R8118000-433 | | 8-10-4410 | r6-rr13-80-4400.0000 | Flag Pole Fabrication | 3,324.45 | Rhodes Realty | Rhodes Companies | 11593 | 12/11/2007 |
| 08-1256-05 | 10/2/2007 | 12/5/2007 | TS40-FRTD | TS40FRTD-005 | | 3-10-0500 | t44-0000-00-1400.tsrnj | Dry Utility 3rd Tender | 31,886.17 | Rhodes Design & Development | Rhodes Companies | 11595 | 12/11/2007 |
| CWA3075 | 10/22/2007 | 12/5/2007 | TS44-FEED | TS44FEED-008 | | 3-10-0500 | r46-0000-00-1400.tsrnj | Repair damaged HVP conduit | 4,500.00 | Rhodes Design & Development | Rhodes Companies | 11595 | 12/12/2007 |
| CWA3882 | 11/20/2007 | 12/13/2007 | RR11-0064 | | 21091 | 7-19-0900 | r5-rr11-01-5100.0000 | Trenching Lot 99 | 3,318.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4910 | 12/20/2007 |
| 1924-01 | 10/2/2007 | 12/17/2007 | RRMP-FA10 | RRMPAFG-018 | | 2-09-0400 | rr-0000-00-1400.rrmj | Wet Utilities | 46,065.80 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4910 | 12/20/2007 |
| CWA2196 | 4/17/2008 | 8/14/2007 | SW13-1000 | SW311000-044 | | 2-09-0400 | rr-0000-00-1400.swrm | Wet Utility Contract | 4,274.80 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4915 | 12/21/2007 |
| CWA2007 | 1/1/2008 | 8/14/2009 | SW13-1000 | SW311000-044 | | 2-09-0200 | rr-0000-00-1400.swrm | Wet Utility Contract | 2,250.00 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 4915 | 12/21/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 55-1-3040 | 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.0000 | PAY AP #8, DUE DATE 12/20/07. | 14,347.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/21/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 53-1-3080 | 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.0000 | Pipes & Valves, 36" & Larger | 7,465.50 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/22/2007 | 12/24/2007 | A207-1001 | 07-01154 | | 53-1-2400 | 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.0000 | MANHOLE AND BASE, 4' | 4,167.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 50-1-2100 | 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.0000 | CATCH BASIN, TYPE B | 40,024.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/22/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 56-1-2100 | 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.0000 | CATCH BASIN TYPE 4 | 4,443.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/21/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 53-1-3720 | 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.0000 | STORM DRAIN, OTHER | 630.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 58-1-3180 | 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.0000 | PIPE AND VALVES, 8"-8" | 1,802.50 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 53-1-3240 | 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.0000 | PIPE AND VALVES, 10"-15" | 406.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 53-1-3180 | 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.0000 | PIPE AND VALVES, 8"-8" | 316.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/26/2007 | A207-1001 | 07-01154 | | 55-1-3180 | 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.0000 | PIPE AND VALVES 8"-8" | 4,092.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/21/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 55-1-3270 | 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.0000 | PIPE AND VALVES 12"-12" | 1,926.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/21/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 55-1-2580 | 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.0000 | FIRE HYDRANT, OTHER | 3,576.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/21/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 55-1-3220 | 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.0000 | PIPE AND VALVES, 12"-17" | 11,261.40 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/24/2007 | A207-1001 | 07-01156 | | 50-1-3220 | 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.0000 | PIPE AND VALVES, 12"-17" | 17,340.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/26/2007 | A207-1001 | 07-01156 | | 55-1-3220 | 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.0000 | PIPE AND VALVES, 12"-17" | 346.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 55-1-3180 | 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.0000 | PIPE AND VALVES, 8"-8" | 547.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/13/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 55-1-3120 | 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.0000 | PIPE AND VALVES, 3"-5" | 12,533.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 55-1-3000 | 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.0000 | PIPE AND VALVES, OTHER | 1,314.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/28/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 56-1-3180 | 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.0000 | PIPE AND VALVES 8"-8" | 17,786.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01156 | | 56-1-3780 | 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.0000 | PIPE AND VALVES, 8"-8" | 15,341.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 56-1-3180 | 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.0000 | PIPE AND VALVES, 8"-8" | 1,906.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 56-1-3180 | 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.0000 | PIPE AND VALVES 8"-8" | 10,911.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 58-1-3180 | 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.0000 | PIPE AND VALVES, 8"-8" | 831.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/16/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 58-1-3180 | 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.0000 | PIPE AND VALVES, 8"-8" | 506.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 56-1-3120 | 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.0000 | PIPE AND VALVES, 2"-3" | 1,242.00 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 60-1-2180 | 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.0000 | CONDUIT, 2"-3" | 1,130.84 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | A207-1001 | 07-01154 | | 60-1-7640 | 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.0000 | GAS, OTHER | 9,822.41 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/23/2007 | 12/28/2007 | | | | | 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.0000 | Underground Work | (36,982.99) | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 070066-05 | 11/28/2007 | 12/28/2007 | | | | | 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.0000 | Construction Work | 36,982.99 | Pinnacle Grading | Pinnacle | 3254 | 12/28/2007 |
| 1363-08 | 11/2/2007 | 12/21/2007 | RR20-1006 | RR201006-025 | | 2-10-0500 | p20-0000-00-1400.rr20 | Dry Utilities | 17,487.80 | Parcel 20 | Rhodes Companies | 11852 | 1/8/2008 |
| 1363-08 | 11/2/2007 | 12/21/2007 | RR20-1006 | RR201008-023 | | 2-10-0300 | p20-0000-00-1400.rr20 | Dry Utilities | 6,498.36 | Parcel 20 | Rhodes Companies | 11852 | 1/8/2008 |
| 1363-08 | 11/2/2007 | 12/21/2007 | RR20-1006 | RR201008-028 | | 2-10-0400 | p20-0000-00-1400.rr20 | Dry Utilities | 1,831.30 | Parcel 20 | Rhodes Companies | 11852 | 1/8/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 53-1-3240 | 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.0000 | INVOICE 070066-06, PENCO CONT | 31,923.30 | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 53-1-2400 | 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.0000 | MANHOLE AND BASE, 5' | 13,419.00 | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| 070066-06 | 11/24/2007 | 1/30/2008 | A207-1001 | 07-01441 | | 53-1-2400 | 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.0000 | MANHOLE AND BASE 4' | 4,167.00 | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 53-1-3720 | 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.0000 | STORM DRAIN, OTHER | 14,760.00 | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 53-1-3720 | 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.0000 | STORM DRAIN, OTHER | 103,640.00 | Pinnacle Grading | Pinnacle | 3438 | 1/30/2008 |
| 070066-06 | 11/21/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 55-1-3180 | 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.0000 | PIPE AND VALVES, 8"-8" | 8,500.00 | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| 070066-06 | 11/21/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 55-1-2580 | 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.0000 | FIRE HYDRANT, OTHER | 5,339.00 | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 55-1-3220 | 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.0000 | PIPE AND VALVES, 12"-17" | 1,512.00 | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 55-1-4000 | 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.0000 | WATER, OTHER | 2,510.00 | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 56-1-3180 | 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.0000 | PIPE AND VALVES, 8"-8" | 14,168.00 | Pinnacle Grading | Pinnacle | 3438 | 1/30/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 59-1-2740 | 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.0000 | GALVANIZED STEEL, END SECTION | 2,534.00 | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 60-1-2260 | 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.0000 | CONDUIT, 2"-3" | 33,632.18 | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 60-1-2300 | 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.0000 | CONDUIT, 8" AND ABOVE | 1,717.65 | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| 070066-06 | 11/24/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 60-1-1860 | 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.0000 | TRENCHING | 44,641.75 | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | A207-1001 | 07-01443 | | 60-1-7640 | 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.0000 | GAS, OTHER | 2,816.17 | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| 070066-06 | 11/23/2007 | 1/30/2008 | | | | | 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.0000 | Work & Materials | (163,454.29) | Pinnacle Grading | Pinnacle | 3438 | 1/31/2008 |
| CWA3649 | 11/1/2007 | 1/31/2008 | TS17-1000 | TS171000-015 | | 3-03-0100 | t4-0000-00-1400.ts17 | New Pull Boxes | 975.05 | Tuscany Acquisitions IV | Rhodes Companies | 12258 | 2/1/2008 |
| CWA3715 | 11/20/2007 | 1/21/2008 | SH5A-1000 | SH5A1000-144 | | 2-09-0700 | r66-0000-00-1400.sh5a | Sewer Repair | 4,243.67 | Rhodes Design & Development | Rhodes Companies | 12258 | 2/1/2008 |
| CWA3454 | 11/29/2007 | 1/11/2008 | RR11-1000 | RR111000-187 | | 5-04-0000 | r6-rr11-01-5100.0000 | Bond work for Final | 4,410.45 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 5094 | 2/1/2008 |
| 1224-12 | 9/1/2007 | 1/30/2008 | RR20-100A | RR202000-050 | | 2-10-0200 | p20-0000-00-1400.rr20 | Dry Utility Contract | 10,314.50 | Parcel 20 | Rhodes Companies | 12298 | 2/1/2008 |
| 1824-12 | 9/1/2007 | 1/30/2008 | RR20-100A | RR201000-060 | | 2-10-0400 | p20-0000-00-1400.rr20 | Dry Utility Contract | 2,059.70 | Parcel 20 | Rhodes Companies | 12298 | 2/1/2008 |
| CWA3656 | 11/2/2007 | 1/30/2008 | RRPM-1000 | RRPM1000-307 | | 3-08-0600 | r6-0000-00-1400.rrpm | Rainbow sales lot | 1,269.78 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 5098 | 2/1/2008 |
| 1374-14 | 11/2/2007 | 12/24/2007 | RR20-100A | RR201000-060 | | 2-10-0200 | p20-0000-00-1400.rr20 | Dry Utilities Contract | 13,792.06 | Parcel 20 | Rhodes Companies | 12447 | 2/18/2008 |
| 1824-14 | 11/2/2007 | 12/24/2007 | RR20-100A | RR201000-060 | | 2-10-0400 | p20-0000-00-1400.rr20 | Dry Utilities Contract | 1,079.60 | Parcel 20 | Rhodes Companies | 12447 | 2/18/2008 |
| 1324-14 | 11/2/2007 | 12/24/2007 | RR20-100A | RR201000-060 | | 2-10-0400 | p20-0000-00-1400.rr20 | Dry Utilities Contract | 9,010.00 | Parcel 20 | Rhodes Companies | 12447 | 2/18/2008 |
| 1374-04 | 11/2/2007 | 1/11/2008 | RAMP-AFEG | RAMPAFEG-018 | | 2-09-0400 | r1-0000-00-1400.rrmj | Wet utilities | 3,121.90 | Rhodes Ranch General Partnership | Rhodes Ranch GP | 5175 | 2/21/2008 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 133415 | 12/1/2007 | 2/12/2008 | B350-1004 | 88201000-080 | 2-10-0400 | 310-0000-00-1400 HC | Dry Utility Contract | 4,024.80 | Parcel 20 | Anedes Companies | 13555 | 2/11/2009 |
| 070064-06 | 1/30/2008 | 1/30/2008 | | | | 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.0000 | Construction Work | 81,454.24 | Pinnacle Grading | Pinnacle | 3549 | 3/5/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 53-1-3100 | 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.0000 | INVOICE 070064-07, PAY APP #7, | 1,169.00 | Pinnacle Grading | Pinnacle | 3421 | 3/11/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 53-1-9100 | 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.0000 | PIPES & VALVES, 36" & LARGER | 17,441.50 | Pinnacle Grading | Pinnacle | 3421 | 3/12/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 53-1-3720 | 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.0000 | STORM DRAIN, OTHER | 18,800.00 | Pinnacle Grading | Pinnacle | 3421 | 3/14/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 53-1-3720 | 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.0000 | STORM DRAIN, OTHER | 57,569.50 | Pinnacle Grading | Pinnacle | 3411 | 3/18/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 53-1-3360 | 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.0000 | INVOICE 070064-07, PAY APP #7, | 132.00 | Pinnacle Grading | Pinnacle | 3424 | 3/20/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 53-1-3180 | 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.0000 | PIPES & VALVES, 36" & LARGER | 1,163.50 | Pinnacle Grading | Pinnacle | 3424 | 3/20/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 53-1-3720 | 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.0000 | STORM DRAIN, OTHER | 3,200.00 | Pinnacle Grading | Pinnacle | 3424 | 3/20/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 53-1-3720 | 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.0000 | STORM DRAIN, OTHER | 71,288.00 | Pinnacle Grading | Pinnacle | 3424 | 3/21/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 55-1-3140 | 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.0000 | PIPE AND VALVES, 6"-8" | 16,384.00 | Pinnacle Grading | Pinnacle | 3424 | 3/20/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 55-1-3220 | 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.0000 | PIPE AND VALVES, 12"-17" | 55,506.80 | Pinnacle Grading | Pinnacle | 3424 | 3/20/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 55-1-3120 | 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.0000 | PIPE AND VALVES, 2"-3" | 2,332.00 | Pinnacle Grading | Pinnacle | 3424 | 3/20/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 55-1-2500 | 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.0000 | FIRE HYDRANT, OTHER | 1,197.00 | Pinnacle Grading | Pinnacle | 3424 | 3/20/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 58-1-3190 | 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.0000 | PIPE AND VALVES, 8"-9" | 4,442.50 | Pinnacle Grading | Pinnacle | 3424 | 3/20/2008 |
| 070064-07 | 1/20/2008 | 2/19/2008 | A207-1001 | 07-01961 | 57-1-3180 | 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.0000 | PIPE AND VALVES, 8"-9" | 4,182.20 | Pinnacle Grading | Pinnacle | 3424 | 3/20/2008 |
| 070064-08 | 2/20/2008 | 3/21/2008 | A207-1001 | 07-02135 | 53-1-3770 | 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.0000 | CORRECTION TO RETAINAGE PAID O | (4,714.92) | Pinnacle Grading | Pinnacle | 3470 | 3/21/2008 |
| 070064-08 | 2/20/2008 | 3/21/2008 | A207-1001 | 07-02135 | 57-1-3180 | 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.0000 | PAY APP #8, 3/20/08, DISCREPEN | 713.70 | Pinnacle Grading | Pinnacle | 3470 | 3/21/2008 |
| 070064-08 | 2/20/2008 | 3/21/2008 | A207-1001 | 07-02135 | 57-1-3140 | 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.0000 | PIPE AND VALVES, 4"-5" | 2,961.00 | Pinnacle Grading | Pinnacle | 3470 | 3/21/2008 |
| 070064-08 | 2/20/2008 | 3/21/2008 | A207-1001 | 07-02135 | 60-1-2260 | 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.0000 | CONDUIT, 2"-3" | 7,434.15 | Pinnacle Grading | Pinnacle | 3470 | 3/21/2008 |
| 070064-08 | 2/20/2008 | 3/21/2008 | A207-1001 | 07-02135 | 60-1-2880 | 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.0000 | TRENCHING | 7,411.50 | Pinnacle Grading | Pinnacle | 3470 | 3/21/2008 |
| | | | | | | | Total Payments | 3,710,041.47 | | | | |

EXECUTION COPY

**ATTACHMENT C**

1.      The lenders would form a new entity ("Newco"). Newco would be either a corporation or a limited liability company. The First Lien loans would be deemed contributed to Newco.

2.      Newco would purchase all of the interests in Heritage from its members for $10.00.

3.      Revenue Ruling 99-6 provides that on a sale of all of the interests of a partnership for tax purposes (which would include a limited liability company), the sellers are treated as selling "partnership interests". On the other hand, the buyer is deemed to be buying the assets of the partnership. As a result, from the Heritage members' perspective they would be treated as selling all of the interests in Heritage. Newco would be treated for federal income tax purposes as purchasing the 99% partnership interests in each of the limited partnerships held by Heritage and the 1% partnership interest held by Truckee Springs. Further, assuming that the general partner of each of the limited partnerships in turn sells its general partnership interests to Newco, Newco would be deemed to have owned the real estate owned by the limited partnerships (since each of the partnerships would have terminated for federal income tax purposes). At that point Newco would own all of the real estate.

4.      For federal income tax purposes, each Heritage member would have a gain equal to the excess of the liabilities of Heritage allocable to such member (which the transaction relieves the member of) minus the member's tax basis in its Heritage interest. This gain would be treated as long-term capital gain (except to the extent Heritage holds, directly or indirectly, assets subject to Section 751 of the Code, generally inventory or receivables arising from the sale of inventory).

5.      Therefore, contemporaneous with or subsequent to Newco's purchase of the Heritage membership interests, The Rhodes Companies, LLC - the general partner of each of Tick, LP; Glynda, LP; Jackknife, LP; LP; Batcave, LP; Overflow, LP; Wallboard, LP; and Chalkline, LP, -- shall sell its general partnership interests in such entities to Newco for $1.00. Alternatively, the membership interest in The Rhodes Companies, LLC may be acquired from its sole member – Sagebrush Enterprises, Inc. – in consideration for release of its obligations under the First Lien Lender Claims.

6.      Newco's members may agree to continue Newco as an LLC, file a check the box election effective the day after the Effective Date to treat Newco as a corporation for tax purposes, or convert into a corporation as of the day after the Effective Date.

7.      The holders of the Heritage membership interests and Newco will report the sale and purchase of the Heritage membership interests in accordance with Revenue Ruling 99-6, 1999-1 CB 432.

EXECUTION COPY

ATTACHMENT D – ARIZONA

# RHODES ARIZONA PROPERTIES

| OWNER | APN NUMBERS | Acres | ADDRESS | Type |
|---|---|---|---|---|
| RHODES ARIZONA PROPERTIES LLC | 306-24-115 | 20.25 | 1825 S AZTEC RD | Model Home |
| RHODES ARIZONA PROPERTIES LLC | 306-24-116 | 20.24 | 1807 AZTEC RD | Model Home |
| RHODES ARIZONA PROPERTIES LLC | 306-63-017 | 7.35 | 4536 W DORA DR | Model Home |
| RHODES ARIZONA PROPERTIES LLC | 306-63-018 | 6.83 | 4528 W DORA DR | Model Home |
| RHODES ARIZONA PROPERTIES LLC | 306-42-008A | 19.92 | 1156 S AZTEC RD | Dirt |
| RHODES ARIZONA PROPERTIES LLC | 306-42-001 | 40 | 1094 S AZTEC RD | Dirt |

**Total Acreage    114.59**

| Inside Pravada |
|---|
| Pravada and all parts of Pravada lying within Sections 2, 3, 4, 9 and 10, all in Township 20 North, Range 18 West of the Gila and Salt River Base and Meridian, Mohave County, Arizona and within the following APN numbers: |

| OWNER | APN NUMBERS | Acres | ADDRESS | Type |
|---|---|---|---|---|
| Rhodes Arizona Properties | 215-01-116 | | | Partially Graded |
| Rhodes Arizona Properties | 215-01-113 | | | Partially Graded |
| Rhodes Arizona Properties | 215-01-114 | | | Partially Graded |
| Rhodes Arizona Properties | 215-01-111 | | | Partially Graded |

**Total Acreage    1,306±**

## Arizona Personal Property

**Computers**
HP 5150
HP 5150
HP 5150
HP WX4400
HP WX4400
HP XW4200
Dell

**Laptops**

**Serial Number**
2UA6030J6N
MXL615027R
2UA6030J57
2UA70608F7
2UA70608HV
2UA54215GL
GZOGR61

HPNX6125
HPNX9600

CND54803LY
CNF6071GBR

**Printers**
HPLaser Jet 4250
HPLaser Jet 4101
HPLaser Jet 4100
HPLaser Jet 1320
HP color Laser Jet 2600
HP color Laser Jet 2804
HP color Laser Jet 5550
HP office jet 6310
HP Photosmart D5160
Lexmark 7001-001
Lexmark 7001-001
Super G3 Printer-Scanner

CNBXD06564
USLGY26030
USLGY42771
CNHC620168
CNGC64C1KC
JPBG532058
JPDC4D2072
CN639BGOYK
MY67G110DC
890CSTB
890CD3N
J8141101150

**Fax Machines**

2 - HP office jets 7310

6 of the printers and the fax machines have copier capabilities

**Miscellaneous Equipment**
Dell Power Edge Server 2850
HP Design Jet 1055CM Plus Plotter
10 Battery Surge boxes and 10 power strips
11 -computer monitors 20" flat screen
4 calculators
14 telephone owned by Rhodes

85172579422

**Office Furniture**
2 - drafting tables
3 - work tables with open shelves for plans
12 - file cabinets
    2 - 5 drawer 63 x 18
    1 - 3 drawer 36 x 20
    7 - 4 drawer 18 x 48
    2 - 4 drawer 20 x 48
2 - 3 shelf wood bookcases
4 - 4 shelf bookcases: (2) metal (2) wood
1 - hanging file for plans
1 - metal storage cabinet,  2-door, 4 shelves
2- wooden storage cabinets 2-door, 1 shelf
11 - desks:  (1) metal (10) wood
12 - desk chairs
12 - guest chairs
5 - stacking chairs
1 - 4 x 6 rotating white board
1 - garbage can

13

**EXECUTION COPY**

10 - waste baskets
3 - 6 foot tables
2 - metal storage shelves- dimensions 5'h x 3'w x 18.5"d
2 - plastic storage shelves- dimensions 6'h x 3'W x 18" d

**Executory Contracts and Unexpired Leases**
To be provided by Plan Supplement Date but shall include, but not be
limited to all development agreements and subcontractor agreements

**Trademarks and Tradenames**
Rhodes Arizona Properties
Rhodes Arizona
Golden Valley Ranch
Pravada

**Intangibles**
All architectural and engineering drawings, plus work product associated
with Pravada and Golden Valley Ranch.
All agreements with municipalities and utilities with respect to Pravada and Golden Valley Ranch.
Arizona general contractor's license.

**EXECUTION COPY**

## ATTACHMENT E – TRADENAMES/TRADEMARKS

All Rhodes Lead Home!
Rhodes Homes
R (logo)
R (logo) Rhodes Homes (owned by Rhodes Homes, Inc.)
RhodeMaster

# EXHIBIT 2

# EXHIBIT 2

**EXHIBIT 2**

**Summary of Terms and Conditions ("Term Sheet") for
$50 Million New First Lien Notes ("New First Lien Notes")**

**TERMS**

| | |
|---|---|
| **Borrowers:** | Newco, Heritage Land Company, LLC; The Rhodes Companies, LLC; Rhodes Ranch General Partnership; Tick, LP; Glynda, LP; Chalkline, LP; Batcave, LP; Jackknife, LP; Wallboard, LP; Overflow, LP; Rhodes Ranch Golf and Country Club; Tuscany Acquisitions, LLC; Tuscany Acquisitions II, LLC; Tuscany Acquisitions III, LLC; Tuscany Acquisitions IV, LLC; Parcel 20 LLC; Rhodes Design and Development Corp.; C&J Holdings, Inc.; Rhodes Realty, Inc.; Jarupa LLC; Elkhorn Investments, Inc.; Rhodes Homes Arizona, LLC; Rhodes Arizona Properties, LLC; Tribes Holdings LLC; Six Feathers Holdings, LLC; Elkhorn Partners, A Nevada Limited Partnership; Bravo Inc.; Gung-Ho Concrete, LLC; Geronimo Plumbing, LLC; Apache Framing, LLC; Tuscany Golf Country Club, LLC; and Pinnacle Grading, LLC, each as may be reorganized pursuant to a joint plan of reorganization to be proposed by the First Lien Steering Committee. |
| **New First Lien Notes:** | $50 million in first lien secured notes.  Once repaid, the New First Lien Notes may not be reborrowed. |
| **Guarantors:** | All of the Borrowers. |
| **Agent:** | To be determined ("Agent"). |
| **Lenders:** | The lenders ("Lenders") under the first lien Credit Agreement dated as of November 21, 2005 (as may have been amended from time to time) among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein as Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, and the other loan documents (as defined in the First Lien Credit Agreement) (as may have been amended from time to time, the "Existing Credit Facility"). |
| **Maturity Date:** | The date that is the sixth anniversary of the Effective Date ("Maturity Date"). |
| **Purpose:** | To refinance a portion of the Existing Credit Facility and satisfy a portion of the Lenders' claims under the Existing Credit Facility. |
| **Security:** | The New First Lien Notes and all guarantees thereof will be secured by first priority perfected liens on substantially all existing and after acquired property of the Borrowers. |
| **Interest Rate:** | "Cash Pay Rate": LIBOR plus 2.00% per annum; or |

"PIK Rate": LIBOR plus 5.00% per annum.

**Interest Payments:** Interest on the New First Lien Notes shall be payable in Cash quarterly in arrears at the Cash pay rate of LIBOR +2%; provided that if the average of the Reorganized Debtors' unrestricted consolidated Cash as of the last day of each of the two immediately preceding consecutive quarters is less than $15 million or if the unrestricted consolidated Cash as of the last day of the immediately preceding quarter is less than $15 million (collectively, the "Cash Interest Threshold"), then the Reorganized Debtors shall have the option to capitalize the amount of interest due in excess of LIBOR for the immediately preceding quarter, with such capitalized interest to be capitalized on such interest payment date, and all such capitalized interest shall be due on the next interest payment date to the extent the Cash Interest Threshold is met after giving effect to the payment of interest and capitalized interest or as the Reorganized Debtors otherwise elect. All capitalized interest not previously paid shall be paid on the Maturity Date. LIBOR shall be subject to a cap of 2%.

**Mandatory Prepayments:** Mandatory prepayments of principal shall be made by the Reorganized Debtors if the average of the Reorganized Debtors' unrestricted consolidated Cash as of the last day of each of the two immediately preceding consecutive quarters is greater than $15 million or if the unrestricted consolidated Cash as of the last day of the immediately preceding quarter is greater than $15 million, in each case, after the payment of interest due on the New First Lien Notes.

**Covenants:** Customary affirmative and negative covenants for facilities of this type, including but not limited to financial covenants and covenants limiting other indebtedness, off-balance sheet financing, liens, investments, guaranties, restricted junior payments (dividends, redemptions, and payments on subordinated debt), mergers and acquisitions, sales of assets, capital expenditures, transactions with affiliates and conduct of business, subject to exceptions and baskets to be mutually agreed by the parties.

**Senior Revolving Loan and Letter of Credit Facility:** The New First Lien Notes shall contain provisions permitting the Borrowers to incur up to $10 million in secured indebtedness senior to the New First Lien Notes in the form of a working capital revolving loan and letter of credit facility, subject to the satisfaction of the terms and conditions set forth in the New First Lien Notes Documentation.

**Events of Default:** Customary for facilities of this type, including but not limited to failure to make payments when due, defaults under other agreements or instruments of indebtedness, noncompliance with covenants, breaches of representations and warranties, bankruptcy, judgments, invalidity of guaranties, impairment of security interests, and change of ownership.

2

**Other Terms:**     The New First lien Notes shall include without limitation a default rate of interest, optional, increased costs or reduced returns, conditions precedent to closing, representations and warranties, assignments/participations, amendment, waiver, and required lender provisions, in each case, customary for facilities of this type.

**Documentation:**     The New First Lien Notes Documentation shall be in form and substance acceptable to the First Lien Steering Committee.