# EXHIBIT B

# EXHIBIT B



Rhodes Homes - Organizational Structure

8:46:36 AM 4/15/2009

# EXHIBIT C

# EXHIBIT C

Case 09-14814-lbr    Doc 359    Entered 07/28/09 17:42:06    Page 4 of 4

Rhodes Homes 13 Week Cash Flow Forecast
Revised 7/21/2009

# EXHIBIT D

`

# EXHIBIT D

## EXHIBIT D

### Going Concern Analysis

The First Lien Steering Committee believes that the Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code, as confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors or any successor under the Plan. In connection with the development of the Plan and for the purposes of determining whether the Plan satisfies this feasibility standard, the First Lien Steering Committee analyzed the Debtors' ability to satisfy their financial obligations while maintaining sufficient liquidity and capital resources. The First Lien Steering Committee, through its financial advisor, Winchester Carlisle Partners ("WCP"), and its valuation consultant, Robert Charles Lesser & Company ("RCLCO"), developed a business plan and prepared financial projections (the "Projections") for the fiscal years 2010 to 2014 (the "Projection Period"). The Going Concern Analysis relies principally upon the application of the discounted cash flow methodology (as further explained below), to arrive at a total enterprise value range of the Reorganized Debtors as of January 1, 2010, of $89.2 million to $111.5 million.

The Debtors do not, as a matter of course, publish their business plans or strategies, projections or anticipated financial position. Accordingly, the First Lien Steering Committee does not anticipate that the Debtors will, and disclaims any obligation to, furnish updated business plans or projections to Holders of Claims or other parties in interest after the Confirmation Date, or to include such information in documents required to be filed with any governmental or regulatory entity or otherwise make such information public.

In connection with the development of the Plan, the Projections were prepared by the First Lien Steering Committee to present the anticipated impact of the Plan. The Projections assume that the Plan will be implemented in accordance with its stated terms. The Projections are based on forecasts of key economic variables and may be significantly impacted by, among other factors, changes in the competitive environment, regulatory changes and/or a variety of other factors, including those factors listed in the Plan and Disclosure Statement. Accordingly, the estimates and assumptions underlying the Projections are inherently uncertain and are subject to significant business, economic and competitive uncertainties. Therefore, such Projections, estimates and assumptions are not necessarily indicative of current values or future performance, which may be significantly less or more favorable than set forth herein. The Projections included herein were prepared in September 2009. The First Lien Steering Committee and its professionals are unaware of any circumstances as of the date of this Disclosure Statement that would require the re-forecasting of the Projections due to a material change in the Debtors' prospects.

The Projections consist of the following unaudited pro forma financial statements: a balance sheet (the "Opening Balance Sheet") projected as of an assumed Effective Date of January 1, 2010; a projected balance sheet (the "Balance Sheet") as of each year end from December 31, 2010 through December 31, 2014; a projected income statement (the "Income Statement") for January 1, 2010 through December 31, 2014; and a projected cash flow statement (the "Cash Flow Statement") for January 1, 2010 through December 31, 2014. The Projections should be read in conjunction with the significant assumptions and qualifications set forth in the notes below, and elsewhere in the Disclosure Statement, which comprise an integral part of the Projections and should be referenced in connection with any review of the Projections.

THE FIRST LIEN STEERING COMMITTEE PREPARED THE PROJECTIONS WITH THE ASSISTANCE OF ITS PROFESSIONALS. THE FIRST LIEN STEERING COMMITTEE DID NOT PREPARE SUCH PROJECTIONS TO COMPLY, OR ALLOW THE DEBTORS TO COMPLY, WITH THE GUIDELINES FOR PROSPECTIVE FINANCIAL STATEMENTS PUBLISHED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS OR THE RULES AND REGULATIONS OF THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION. THE DEBTORS' INDEPENDENT ACCOUNTANTS HAVE NEITHER EXAMINED NOR COMPILED THE PROJECTIONS THAT ACCOMPANY THE DISCLOSURE STATEMENT AND, ACCORDINGLY, DO NOT EXPRESS ANY OPINION OR ANY OTHER FORM OF ASSURANCE WITH RESPECT TO THE PROJECTIONS, ASSUME NO RESPONSIBILITY FOR THE PROJECTIONS, AND DISCLAIM ANY ASSOCIATION WITH THE PROJECTIONS. EXCEPT FOR PURPOSES OF THE DISCLOSURE STATEMENT, THE DEBTORS DO NOT PUBLISH PROJECTIONS OF THEIR ANTICIPATED FINANCIAL POSITION OR RESULTS OF OPERATIONS. THE PROJECTIONS ARE QUALIFIED IN THEIR ENTIRETY BY THE DESCRIPTION THEREOF CONTAINED IN ARTICLE V OF THE DISCLOSURE STATEMENT.

MOREOVER, THE PROJECTIONS CONTAIN CERTAIN STATEMENTS THAT ARE "FORWARD-LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. THESE STATEMENTS ARE SUBJECT TO A NUMBER OF ASSUMPTIONS, RISKS, AND UNCERTAINTIES, MANY OF WHICH ARE BEYOND THE CONTROL OF THE DEBTORS AND THE FIRST LIEN STEERING COMMITTEE, INCLUDING THE CONSUMMATION AND IMPLEMENTATION OF THE PLAN, THE CONTINUING AVAILABILITY OF SUFFICIENT BORROWING CAPACITY OR OTHER FINANCING TO FUND OPERATIONS, ACHIEVING OPERATING EFFICIENCIES, COMMODITY PRICE FLUCTUATIONS, CURRENCY EXCHANGE RATE FLUCTUATIONS, MAINTENANCE OF GOOD EMPLOYEE RELATIONS, EXISTING AND FUTURE GOVERNMENTAL REGULATIONS AND ACTIONS OF GOVERNMENT BODIES, NATURAL DISASTERS AND UNUSUAL WEATHER CONDITIONS, ACTS OF TERRORISM OR WAR, INDUSTRY-SPECIFIC RISK FACTORS (AS DETAILED IN ARTICLE VI OF THE DISCLOSURE STATEMENT ENTITLED "CERTAIN FACTORS TO BE CONSIDERED PRIOR TO VOTING"), AND OTHER MARKET AND COMPETITIVE CONDITIONS. HOLDERS OF CLAIMS ARE CAUTIONED THAT THE FORWARD-LOOKING STATEMENTS SPEAK AS OF THE DATE MADE AND ARE NOT GUARANTEES OF FUTURE PERFORMANCE. ACTUAL RESULTS OR DEVELOPMENTS MAY DIFFER MATERIALLY FROM THE EXPECTATIONS EXPRESSED OR IMPLIED IN THE FORWARD-LOOKING STATEMENTS, AND THE DEBTORS UNDERTAKE NO OBLIGATION TO UPDATE ANY SUCH STATEMENTS.

THE PROJECTIONS, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS WHICH, THOUGH CONSIDERED REASONABLE BY THE FIRST LIEN STEERING COMMITTEE, MAY NOT BE REALIZED AND ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, COMPETITIVE, INDUSTRY, REGULATORY, MARKET, AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE REORGANIZED DEBTORS' CONTROL. THE FIRST LIEN STEERING COMMITTEE CAUTIONS THAT NO REPRESENTATIONS CAN BE MADE OR ARE MADE AS TO THE ACCURACY OF THE PROJECTIONS OR TO THE REORGANIZED DEBTORS' ABILITY TO ACHIEVE THE PROJECTED RESULTS. SOME ASSUMPTIONS INEVITABLY WILL BE INCORRECT. MOREOVER, EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THE FIRST LIEN STEERING COMMITTEE PREPARED THESE PROJECTIONS MAY BE DIFFERENT FROM THOSE ASSUMED, OR, ALTERNATIVELY, MAY HAVE BEEN UNANTICIPATED, AND THUS THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER. THE FIRST LIEN STEERING COMMITTEE, DEBTORS AND REORGANIZED DEBTORS, AS APPLICABLE, DO NOT INTEND AND UNDERTAKE NO OBLIGATION TO UPDATE OR OTHERWISE REVISE THE PROJECTIONS TO REFLECT EVENTS OR CIRCUMSTANCES EXISTING OR ARISING AFTER THE DATE THE DISCLOSURE STATEMENT IS INITIALLY FILED OR TO REFLECT THE OCCURRENCE OF UNANTICIPATED EVENTS. THEREFORE, THE PROJECTIONS MAY NOT BE RELIED UPON AS A GUARANTY OR OTHER

2

ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.  IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN MUST MAKE THEIR OWN DETERMINATIONS AS TO THE REASONABLENESS OF SUCH ASSUMPTIONS AND THE RELIABILITY OF THE PROJECTIONS AND SHOULD CONSULT WITH THEIR OWN ADVISORS.

## Pro Forma Balance Sheet

| | Estimated Pre-Effective Date (12/31/09) Balance Sheet | Effective Date Accounting Adjustments | | Pro Forma Balance Sheet of Reorganized Debtors |
|---|---|---|---|---|
| **ASSETS** | | | | |
| Cash | 823,099 | 1,625,000 | (a) | 2,448,099 |
| Accounts receivable—net | 160,368 | (160,368) | (b) | - |
| Due from related parties | 678,697 | (678,697) | (c) | - |
| Inventories | 162,449,747 | (53,745,109) | (d) | 108,704,638 |
| Land Held for Investment | 13,764,478 | 73,488,575 | (d) | 87,253,053 |
| Property, plant, and equipment—net | 3,707,997 | | | 3,707,997 |
| Deposits and other assets—net | 9,584,063 | (6,301,039) | (e) | 3,283,024 |
| **TOTAL ASSETS** | 191,168,449 | 14,228,362 | | 205,396,811 |
| | | | | |
| **LIABILITIES** | | | | |
| Notes payable - Wells Fargo | 72,868,346 | (72,868,346) | (f) | - |
| Notes payable - Credit Suisse | 305,752,225 | (305,752,225) | (f) | - |
| Interest rate hedge - Credit Suisse | 20,195,341 | (20,195,341) | (f) | - |
| Notes payable - Pre-effective date | - | | | |
| Notes payable - New First Lien | - | 50,000,000 | (g) | 50,000,000 |
| Accounts payable and accrued liabilities | 5,256,547 | (1,580,061) | (h) | 3,676,486 |
| Due to related parties | 10,753,010 | (10,753,010) | (c) | - |
| Customer deposits | 231,439 | | | 231,439 |
| **TOTAL LIABILITIES** | 415,056,908 | (361,148,983) | | 53,907,925 |
| | | | | |
| Minority Partners | 240,690 | (240,690) | (c) | - |
| Equity | (224,129,149) | 375,618,035 | (i) | 151,488,886 |
| **TOTAL LIABLILITIES AND EQUITY** | 191,168,449 | 14,228,362 | | 205,396,811 |

## NOTES TO PRO FORMA PROJECTED BALANCE SHEET

(a) Reflects cash disbursements made pursuant to the Plan at closing and includes $400,000 payment on emergence to Holders of First Lien Lender Claims consistent with the terms of the Plan (with additional payments anticipated in the amount of $220,000 per quarter for the next five quarters), $600,000 payment on emergence to Secured Creditors holding Other Secured Claims, and $3.5 million to be received from the Rhodes Entities consistent with the terms of the Mediation Settlement.  Additionally, this balance reflects $875,000 paid to satisfy Administrative and Priority Claims related to the Chapter 11 cases.

(b) Reflects the elimination of remaining miscellaneous accounts receivable balances determined to be uncollectible.  No accounts receivable balances were assumed going forward as the nature of the Reorganized Debtors' business will be exclusively homebuilding and will generate only short term (typically less than 5 days) receivables from title companies on home closings.  As such, these funds were included in cash in future years.

(c) Reflects the elimination of all pre-Effective Date related party receivable and payable balances (intercompany). These amounts may be disputed by the Reorganized Debtors, but solely for purposes of this analysis are presumed to have been paid.

(d) Reflects the "fresh start" accounting adjustment to revalue the inventory assets to market value at the Effective Date.

(e) Represents adjustments to the Deposits and Other Assets to (1) eliminate $5.7 million in unamortized loan fees on the pre-Effective Date debt that is being restructured, and (2) eliminate $645,000 in capitalized costs on land held for investment, which is being revalued at the Effective Date and included in Inventory (see d).

(f) This amount reflects restructuring and/or forgiveness of debt of (i) $305.8 million of first lien debt, (ii) $20.2 million interest rate hedge on first lien debt, and (iii) $72.9 million of second lien debt.

(g) Represents the New First Lien Notes of $50 million.

(h) Reflects the adjustment to reduce warranty accrual to $360,000 based on recent historical warranty expenses and number of homes under warranty at the Effective Date.

(i) Reflects the net effect of the above changes, which are adjustments to the equity value of the Reorganized Debtors.

**PROJECTIONS**

The First Lien Steering Committee prepared the Projections for the Projection Period. The Projections are based on a number of assumptions made by the First Lien Steering Committee with respect to the future performance of the Reorganized Debtors' operations. Although the First Lien Steering Committee has prepared the Projections in good faith and believes the assumptions to be reasonable, it is important to note that the First Lien Steering Committee can provide no assurance that such assumptions will be realized. As described in detail in the Disclosure Statement, a variety of risk factors could affect the Reorganized Debtors' financial results and must be considered. The Projections should be reviewed in conjunction with a review of these assumptions, including the qualifications and footnotes set forth herein.

## Projected Balance Sheet

| | 2010 Plan | 2011 Plan | 2012 Plan | 2013 Plan | 2014 Plan |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
| Cash | 9,626,434 | 15,000,000 | 15,000,000 | 15,000,000 | 66,386,990 |
| Inventories and land | 186,731,254 | 175,751,785 | 160,982,566 | 144,940,865 | 103,910,082 |
| Property, plant, and equipment—net | 963,945 | - | - | - | - |
| Deposits and other assets—net | 4,221,092 | 3,470,638 | 2,720,183 | 4,221,092 | 3,470,638 |
| **TOTAL ASSETS** | 201,542,724 | 194,222,423 | 178,702,748 | 164,161,957 | 173,767,709 |
| **LIABILITIES** | | | | | |
| Notes payable - New First Lien | 53,199,008 | 48,692,572 | 30,284,168 | 2,228,098 | - |
| Accounts payable and accrued liabilities | 4,582,904 | 3,749,369 | 2,862,425 | 4,280,253 | 3,430,893 |
| Customer deposits | 263,089 | 346,169 | 482,659 | 565,740 | 664,645 |
| **TOTAL LIABILITIES** | 58,045,001 | 52,788,111 | 33,629,252 | 7,074,092 | 4,095,539 |
| Equity | 143,497,723 | 141,434,312 | 145,073,496 | 157,087,865 | 169,672,171 |
| **TOTAL LIABLILITIES AND EQUITY** | 201,542,724 | 194,222,423 | 178,702,748 | 164,161,957 | 173,767,709 |

**Projected Statement of Cash Flows**

| | 2010 Plan | 2011 Plan | 2012 Plan | 2013 Plan | 2014 Plan |
|---|---|---|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES: | | | | | |
| Net income | (7,111,163) | (1,843,411) | 3,639,184 | 12,014,369 | 12,584,306 |
| Adjustments to reconcile net income to net cash provided by (used in) operating activities: | | | | | |
| Depreciation and amortization | 2,744,052 | 963,946 | - | - | - |
| Interest expense | 3,199,008 | 2,118,630 | 1,374,161 | 638,274 | 18,103 |
| Changes in operating assets and liabilities: | | | | | |
| Inventories and land | 9,226,437 | 10,979,469 | 14,769,220 | 16,041,700 | 41,030,783 |
| Net cash provided (used) by operating activities | 8,058,335 | 12,218,633 | 19,782,565 | 28,694,344 | 53,633,192 |
| CASH FLOWS FROM INVESTING ACTIVITIES: | | | | | |
| Net cash provided (used) by investing activities | - | - | - | - | - |
| CASH FLOWS FROM FINANCING ACTIVITIES: | | | | | |
| Debt payments | - | (6,624,966) | (19,782,565) | (28,694,344) | (2,246,202) |
| Payments to General Unsecured Creditors | (880,000) | (220,000) | - | - | - |
| Net cash provided (used) by financing activities | (880,000) | (6,844,966) | (19,782,565) | (28,694,344) | (2,246,202) |
| NET INCREASE/(DECREASE) IN CASH | 7,178,335 | 5,373,666 | - | - | 51,386,990 |
| CASH - Beginning of Period | 2,448,099 | 9,626,434 | 15,000,000 | 15,000,000 | 15,000,000 |
| CASH - End of Period | 9,626,434 | 15,000,000 | 15,000,000 | 15,000,000 | 66,386,990 |

6

**Pro Forma Statement of Operations**

|  | 2010 Plan | 2011 Plan | 2012 Plan | 2013 Plan | 2014 Plan |
|---|---|---|---|---|---|
| Home Closings | 133 | 175 | 244 | 285 | 336 |
| **Revenues** | | | | | |
| Sales of inventory | 28,655,038 | 41,378,058 | 62,000,761 | 82,815,340 | 104,006,797 |
| Sales of land | - | - | 1,365,909 | - | 14,783,628 |
| Green fees and other golf revenues | 8,221,404 | 8,472,839 | 8,732,154 | 8,999,610 | 9,275,261 |
| Contract sales | | | | | |
| Total revenues | 36,876,442 | 49,850,897 | 72,098,824 | 91,814,950 | 128,065,686 |
| **Costs and expenses:** | | | | | |
| Cost of sales - inventory (homes) | 14,588,377 | 19,758,075 | 27,548,029 | 33,968,084 | 41,189,976 |
| Land cost of sales - inventory (homes) | 8,541,260 | 11,238,500 | 15,669,680 | 18,366,920 | 21,577,920 |
| Cost of sales - land development | 3,837,774 | 4,718,096 | 7,118,557 | 8,269,260 | 9,963,259 |
| Cost of sales - land sales | - | - | 1,037,337 | - | 21,273,300 |
| Selling, general and administrative | 3,581,880 | 5,172,257 | 7,750,095 | 10,351,918 | 13,000,850 |
| Depreciation and amortization | 2,744,052 | 963,945 | - | - | - |
| Golf course costs and expenses | 7,495,254 | 7,724,904 | 7,961,781 | 8,206,126 | 8,457,973 |
| Total costs and expenses | 40,788,596 | 49,575,778 | 67,085,479 | 79,162,307 | 115,463,277 |
| Operating Income (Loss) | (3,912,155) | 275,119 | 5,013,345 | 12,652,643 | 12,602,409 |
| **Other (income) expense** | | | | | |
| Interest expense | 3,199,008 | 2,118,530 | 1,374,161 | 638,274 | 18,103 |
| Net Income/(Loss) | (7,111,163) | (1,843,411) | 3,639,184 | 12,014,369 | 12,584,306 |

7

**KEY ASSUMPTIONS**

**A.  General**

       1.  Methodology:  The Projections were developed based on inputs from the Debtors, WCP, and RCLCO.  The Projections are based on assumptions and initiatives, including expectations on market stabilization.   The key drivers are: (1) average sales price; (2) average cost of construction; (3) average lot cost and; (4) annual home sales and closings.  These key drivers were utilized to forecast the operational plan reflected in the income statement, balance sheet, and statement of cash flows.  Furthermore, a discounted cash flow ("DCF") methodology was utilized to arrive at a value for the Debtors' real estate assets by discounting unlevered projected free cash flows to a net present value as of the Effective Date.  Revenue is derived from the construction and sale of single family homes on all single family lots currently in inventory, as well as certain multi-family lots and commercial parcels where it was determine that single family homes were the highest and best use.  Pricing and sales velocity for these homes were projected to recover from their currently depressed levels as determined by an analysis of recent and historical sales data, to more sustainable levels of growth by 2011.  Additional revenue is derived from the sale of certain land parcels at prices and dates supportable by market conditions, as well as operation and sale of the Tuscany Golf Course and the Rhodes Ranch Golf Course.

       A discount rate range of 20%-25% was used in the Going Concern Analysis, reflecting the prevailing capital market requirements of similar transactions.  Based on the methodologies described above and further review, discussions, considerations and assumptions, the value of the Debtors' real estate assets as of January 1, 2010 under a Going Concern analysis ranges from $89.2 million to $111.5 million with a midpoint of $99.6 million.

       2.  Plan Consummation:  The operating assumptions assume that the Plan will have an Effective Date of January 1, 2010.

       3.  Projected Subsidiaries:  The Projections include the assets of all the Debtor entities. Pinnacle Grading, LLC and the entities under Tribes Holdings, LLC will be phased out and operations ended by the Effective Date.

**B.  Projected Balance Sheets and Statements of Cash Flow**

       1.  Cash:  The Projections assume the Reorganized Debtors will maintain a minimum cash balance of $15 million after debt service in 2011 and forward, in accordance with the anticipated New First Lien Notes.

       2.  Working Capital:  Capital expenditures for inventory were forecast based on the assumptions for sales absorptions.  Inventory days are projected to remain static throughout the Projection Period.

       3.  Property, Plant, and Equipment:  The equipment and fixed assets of the company are forecast to be fully depreciated by the end of 2011.  As the Debtors currently have

excess PP&E for the go forward operation, it is not anticipated that any substantial purchases in the future will be required.

4. Deposits and Other Assets: As insurance policies are renewed, premiums are prepaid and amortized over the life of the policy periods.

5. Borrowing (Repayment) of Debt: The first lien debt at the Effective Date is projected to be $50 million. Interest on the New First Lien Notes shall be payable in Cash quarterly in arrears at the Cash pay rate of LIBOR +2%; provided that if the average of the Reorganized Debtors' unrestricted consolidated Cash as of the last day of each of the two immediately preceding consecutive quarters is less than $15 million or if the unrestricted consolidated Cash as of the last day of the immediately preceding quarter is less than $15 million (collectively, the "Cash Interest Threshold"), then the Reorganized Debtors shall have the option to capitalize the amount of interest due in excess of LIBOR for the immediately preceding quarter, with such capitalized interest to be capitalized on such interest payment date, and all such capitalized interest shall be due on the next interest payment date to the extent the Cash Interest Threshold is met after giving effect to the payment of interest and capitalized interest or as the Reorganized Debtors otherwise elect. All capitalized interest not previously paid shall be paid on the Maturity Date. LIBOR shall be subject to a cap of 2%.

## C. Projected Statements of Operations

1. Total Revenue: Consolidated Revenues consist of Homebuilding Revenue, Land Sales, and Golf Course Revenue. Home sales absorptions are projected to remain static in 2010 and 2011 and increase slowly throughout the remaining forecast period. Average sales price is expected to decrease 9.3% in 2010 and then increase 9.8%, 9.1%, 11.3%, and 4.0% in years 2011 through 2014, respectively. The Company's land assets are forecast to be monetized at prices and dates supportable by market conditions. The revenues of the Tuscany Golf Course and the Rhodes Ranch Golf Course are forecast based on historical sales and operations.

2. Cost of Sales: The Company's vertical construction costs are estimated to remain flat on average throughout the projection period. Lot costs are based on the allocation of the land basis, valued at the Effective Date, to the individual lots, and the projected land development costs to be incurred throughout the projection period. While it is anticipated that costs will generally rise toward the latter half of the Projection Period, the Reorganized Debtors anticipate that they can achieve design and other cost efficiencies to offset any market increases.

3. Selling, General, and Administrative Expenses: Overhead operating expenses are projected based on historical averages as a percentage of home sales revenue, which percentages are projected to remain static throughout the Projection Period.

4. Golf Course Expenses: The Tuscany Golf Course and Rhodes Ranch Golf Course expenses are forecast based on historical profit margins and operations.

5.  Interest Expense:  Interest expense is based on the New First Lien Notes of $50 million. Interest on the New First Lien Notes shall be payable in Cash quarterly in arrears at the Cash pay rate of LIBOR +2%; provided that if the average of the Reorganized Debtors' unrestricted consolidated Cash as of the last day of each of the two immediately preceding consecutive quarters is less than $15 million or if the unrestricted consolidated Cash as of the last day of the immediately preceding quarter is less than $15 million (collectively, the "Cash Interest Threshold"), then the Reorganized Debtors shall have the option to capitalize the amount of interest due in excess of LIBOR for the immediately preceding quarter, with such capitalized interest to be capitalized on such interest payment date, and all such capitalized interest shall be due on the next interest payment date to the extent the Cash Interest Threshold is met after giving effect to the payment of interest and capitalized interest or as the Reorganized Debtors otherwise elect.  All capitalized interest not previously paid shall be paid on the Maturity Date. LIBOR shall be subject to a cap of 2%.

6.  Taxes: The Projections assume the Reorganized Debtor will not have income tax liability throughout the projection period based on the utilization of net operating losses. Property taxes are capitalized and are included in the lot cost of sales.  Sales taxes on the golf course operations are included in the Tuscany Golf Course and Rhodes Ranch Golf Course expenses.

# EXHIBIT E

# EXHIBIT E

## EXHIBIT E

## Liquidation Analysis

Under the "best interests" of creditors test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of a claim or interest who does not otherwise vote in favor of the plan with property of value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code. To demonstrate that the Plan satisfies the "best interests" of creditors test, the First Lien Steering Committee has prepared the following hypothetical Liquidation Analysis, which is based upon certain assumptions discussed in the Disclosure Statement, and in the accompanying Liquidation Analysis notes. The conclusion of the Liquidation Analysis, as set forth below, is a value range of $44.2 million to $55.0 million.

The Liquidation Analysis was prepared by the First Lien Steering Committee through its financial advisors, Winchester Carlisle Partners ("WCP"), and its valuation consultants, Robert Charles Lesser & Company ("RCLCO"). The Liquidation Analysis estimates the potential cash distributions available to Holders of Allowed Claims in a hypothetical chapter 7 liquidation of the Debtors' assets.   The preparation of this Liquidation Analysis involved extensive use of estimates and assumptions that, although considered reasonable by the First Lien Steering Committee and its professionals, are inherently subject to significant business, economic and competitive uncertainties beyond the control of the Debtors and the First Lien Steering Committee. The First Lien Steering Committee and its professionals undertake no obligation to update or revise the Liquidation Analysis.

The following notes present the general assumptions that were relied upon in preparing the Liquidation Analysis, comprise an integral part of the Liquidation Analysis, and should be referenced in connection with any review of the Liquidation Analysis.

THE FIRST LIEN STEERING COMMITTEE AND ITS ADVISORS MAKE NO REPRESENTATION OR WARRANTY THAT, IF THE DEBTORS WERE IN FACT TO UNDERGO A CHAPTER 7 LIQUIDATION, THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

## NOTES

Basis of Presentation

(1) The Liquidation Analysis presents high, low, and average recovery scenarios, based upon a range of assumptions relating to the costs incurred during a liquidation and the proceeds realized therefrom. It is assumed that under a liquidation scenario, certain distinctive factors would limit recoveries from the sale of the Debtors' operations and other land assets. The Liquidation Analysis assumes that a chapter 7 trustee will attempt to maximize recoveries by selling the Debtors' assets on an orderly basis over a period of twelve months commencing on January 1, 2010. It is assumed that homes under construction as of this commencement date will be sold as is in their then current state of construction. Given the current depressed state of the homebuilding and real estate markets, as well as the limited availability of credit, this expedited sale process could materially reduce recoveries from the Debtors' assets.

(2) Recovery values are estimated on a consolidated basis for all of the Debtors' entities.

(3) Asset liquidation ranges are assumed to be estimated recovery amounts before deduction of any commissions or chapter 7 trustee fees, but net of property taxes, association dues, bond fees, and other operating costs specific to each asset.

## Assets

(1) Cash.   The cash balance is the actual cash balance as of June 30, 2009, with certain roll-forward adjustments to estimate the cash balance as of 12/31/09.

(2) Accounts Receivable – Pinnacle Grading.   This accounts receivable balance represents receivables from grading contract work completed, and is assumed to have cash recovery ranging from 80% to 100% of book value.

(3) Accounts Receivable – Other.   This account represents miscellaneous receivables in the ordinary course of business and is assumed to have a cash recovery ranging from 0% to 20% of book value.

(4) Due from Related Parties.   This account represents related party receivables and is assumed to have zero value in liquidation.

(5) Inventories.   This account represents all real estate holdings, including homes under construction, completed homes and model homes, and developed and undeveloped land and is net of overhead costs incurred to operate the Debtors during the liquidation phase.   The cash recovery for these assets ranges from 20.5% to 25.7% of book value.

(6) Property, Plant & Equipment.   This includes furniture and fixtures, leasehold improvements, office equipment, vehicles, and the construction equipment of the grading company, Pinnacle Grading, LLC.   The grading equipment is assumed to have a liquidation value, net of the notes on the equipment, of approximately $450,000.   Inclusive of the remaining assets, the total liquidation value is assumed to range from 16.2% to 31.4% of book value.

(7) Deposits and Other Assets.   This category of assets includes various prepaid expenses, utility deposits, and debt issuance costs, and is assumed to have zero value in a chapter 7 liquidation.

## Liabilities and Wind-down Expenses

(1) Bond Release Costs.   During the prepetition period, the Debtors routinely used performance and improvement bonds to provide assurance to municipalities that certain infrastructure work would be completed in conjunction with development orders tied to the Debtors' real estate developments.   The projects associated with these bonds include projects for "onsite" improvements (i.e., within the Debtors' developments) and "offsite" improvements (i.e., within the municipality but outside of the Debtors' development).   In a hypothetical liquidation, it is assumed that the Debtors proceed only with onsite improvements that have a direct impact on the value of the real estate assets and the ability to sell such real estate assets.   It is assumed that the cost to complete such onsite projects is treated as an Administrative Claim (by expending cash to complete) and that no prepetition Claims from the bond issuers arise given that these projects are completed.   It is assumed the offsite projects are not completed by the

Debtors and therefore give rise to General Unsecured Claims from the bond issuers against the Debtors.  Any costs to be incurred are expected to be minimal as most assets will be sold in an "as is" state.

(2) <u>Wind-down Expenses.</u>    In addition to Administrative and Priority Claims, the wind-down expenses include expenses directly related to liquidation of the assets, such as commissions to real estate brokers of an average of 4% of estimated liquidation proceeds, and fees paid to a chapter 7 trustee and its professionals totaling approximately 2% of liquidation proceeds.

(3) <u>Secured Claims – Prepetition Secured Debt.</u>  These liabilities include the first and second lien outstanding debt, accrued interest and certain fees, as well as secured hedging agreements.

(4) <u>Other Secured Claims.</u>  This group of liabilities represents mechanics lien claims and claims by equipment lenders.

(5) <u>General Unsecured Claims.</u>    This group of liabilities includes prepetition claims by vendors and subcontractors, in addition to other unsecured claims, including anticipated claims by issuers of performance bonds due to the anticipated non-performance of the related work.

Rhodes Homes
Liquidation Analysis
Asset Schedule

| | Book Value 6/30/09 (1) | Adjustments (2) | Adjusted Book Value | Recovery Factor | | | Recovery Value | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Low | High | Average | Low | High | Average |
| Cash | 4,751,307 | (428,208) | 4,323,099 | 100.0% | 100.0% | 100.0% | 4,323,099 | 4,323,099 | 4,323,099 |
| Accounts Receivable - Pinnacle Grading | 2,777,951 | | 2,777,951 | 80.0% | 100.0% | 90.0% | 2,222,361 | 2,777,951 | 2,500,156 |
| Accounts Receivable - Other | 159,417 | | 159,417 | 0.0% | 20.0% | 10.0% | - | 31,883 | 15,942 |
| Due from Related Parties | 678,697 | | 678,697 | 0.0% | 0.0% | 0.0% | - | - | - |
| Inventories | 177,715,545 | | 177,715,545 | 20.5% | 25.7% | 22.9% | 36,506,169 | 45,606,923 | 40,731,669 |
| Property, Plant & Equipment | 7,336,958 | | 7,336,958 | 16.2% | 31.4% | 23.8% | 1,191,599 | 2,303,999 | 1,747,799 |
| Deposits and Other Assets | 10,359,383 | | 10,359,383 | 0.0% | 0.0% | 0.0% | - | - | - |
| Total Assets | 203,779,258 | (428,208) | 203,351,050 | 31.0% | 39.6% | 35.2% | 44,243,228 | 55,043,855 | 49,318,665 |
| Total Assets Available to Creditors | | | | | | | 44,243,228 | 55,043,855 | 49,318,665 |

Notes:
1. Book values are per Rhodes Homes 6/30/09 consolidated financial statements
2. Amount reflects the adjustments to roll-forward the estimated cash balance to 12/31/09, including $3.5 million to be received from Rhodes Entities at the effective date

**Rhodes Homes**
**Liquidation Analysis**
**Claims Recovery Schedule**

|  | Amount |
|---|---|
| **Total Assets Available to Creditors** | 49,318,665 |
|  |  |
| Total Wind Down Expenses | 2,450,000 |
| Total Administrative Claims | 750,000 |
| Total Priority Claims | 125,000 |
|  |  |
| Estimated Recovery (Administrative and Priority Claims) | 3,325,000 |
| Net Estimated Recovery | 100.0% |
|  |  |
| **Assets Available to Creditors Holding Other Secured Claims** | 45,993,665 |
|  |  |
| Total Other Secured Claims | 2,300,000 |
|  |  |
| Estimated Recovery (Other Secured Claims) | 2,300,000 |
| Net Estimated Recovery | 100.0% |
|  |  |
| **Assets Available to Secured Creditors** | 43,693,665 |
|  |  |
| Secured Claims - First Lien | 325,947,566 |
|  |  |
| Estimated Recovery (Secured Claims - First Lien) | 43,693,665 |
| Net Estimated Recovery | 13.4% |
|  |  |
| **Assets Available to Secured Creditors** | - |
|  |  |
| Secured Claims - Second Lien | 72,868,347 |
|  |  |
| Estimated Recovery (Secured Claims - Second Lien) | - |
| Net Estimated Recovery | 0.0% |
|  |  |
| **Assets Available to Unsecured Creditors** | - |
|  |  |
| Total Unsecured Claims | 15,000,000 |
|  |  |
| Estimated Recovery (Unsecured Claims) | - |
| Net Estimated Recovery | 0.0% |

4

# EXHIBIT F

# EXHIBIT F

CLAIMS AND ALL PENDING CASES
SEPTEMBER 18, 2009

| PENDING CASES | CASE NUMBER | COURT | Plaintiff's attorney | ADDRESS | NATURE OF THE CASE | STATUS |
|---|---|---|---|---|---|---|
| G. C. WALLACE, INC. VS. RHODES DESIGN AND DEVELOPMENT CORPORATION | 08-A-562220 | Nevada District Court | Robert Avila, Esq. | 50 South Jones Blvd., #203 Las Vegas, NV 89107 | CONTRACT CLAIM | DISCOVERY STAGE |
| AIR METHODS CORP. VS. RHODES DESIGN AND DEVELOPMENT | 09-A-585548 | Nevada District Court | Craig Ihara, Esq. | 600 East Charleston Blvd. Las Vegas, NV 89104 | BREACH OF LEASE | CASE FILED 3/18/08 & SERVED 4/10/09.  NO POST COMPLAINT PLEADINGS OR DISCOVERY. |
| INTEGRITY MASONRY, INC. VS. TUSCANY ACQUISITIONS IV, LLC et al | 09-A-582005 | Nevada District Court | Richard Dreitzer, Esq. | Bullivant, Houser & Bailey, P.C. 3383 Howard Hughes Pkwy, #500 Las Vegas, NV 89109 | LIEN  FORCLOSURE | CASE FILED JUST PRIOR TO STAY ORDER.  NO RESPONSIVE PLEADINGS FILED. |
| T.I. RESIDENTIAL, INC. VS. RHODES DESIGN AND DEVELOPMENT & RHODES RANCH GENERAL PARTNERSHIP | 09-A-585844 | Nevada District Court | Dana J. Nitz, Esq. | aw Offices of Rawlings, Olson, Cannon, Gormley & Desruisseaux 9950 W. Cheyenne Ave. Las Vegas, NV 89129 | CONTRACT CLAIM | CASE SERVED POST PETITION AND NO RESPONSIVE PLEADINGS ON FILE |

| PENDING CASES | CASE NUMBER | | | | NATURE OF THE CASE | STATUS |
|---|---|---|---|---|---|---|
| LESLIE BLASCO, NEIL SCELSA, NANCY WILSON-SCELSA, EMILIE C. LUIO, VIRGILIO BERTIO, JOHN | 06-A-578060 | Nevada District Court | Shinnick, Ryan & Ransavage P.C. | 2851 Business Park Court, Ste 210 Las Vegas, NV 89120 | CONSTRUCTION DEFECT | SUIT FILED  BUT NOT SERVED |

**CLAIMS AND ALL PENDING CASES**
**SEPTEMBER 18, 2009**

| | | | CONSTRUCTION DEFECT | IN INITIAL CHAPTER 40 NOTICE PERIOD |
|---|---|---|---|---|
| JIMMY L. BOONE, HAZEL M. BOONE, YVETTE DANG, JOSE ARMANDO ELIQUE, JOHN A. HERMAN, PIA FLORES HERMANN, ALI JORIDON, KEN MUMBI Y., PEARL H NEAL, BENJAMIN ONYYOUNG, CLARENCE J. RICHMAU SKHAMY Y., CHENG, GREGORIO CORTEZ, DONNA ONYYONG VIOLETA CORTEZ, DEVORES, PRASHANT GUPTE, RUPALI GUPTE, ANDREW TAXIARCHOS, ALEXANDRA TAXIARCHOS JAMES HADFELL LESLIE HADFELL WAALD YOUSIF, FAIZA YOUSIF, ROMAN E. GARZON, YVONNE SKRZECZYNA, JAMES E. EXHMBERT, ROLOWO GARCIA, HANK MAZE VS. RHODES RANCH LIMITED PARTNERSHIP, RHODES DESIGN AND DEVELOPMENT | NONE-NEVADA CHAP 40 NOTICE OF CONSTRUCTION DEFECT NO SUIT FILED | | | |
| PALM HILLS FIVE HOME CONSTRUCTION DEFECT VS. DESERT COMMUNITIES, INC. | NONE-NEVADA CHAP. 40 NOTICE OF CONSTRUCITON DEFECT CLAIMS RECEIVED NO SUIT FILED | | CONSTRUCTION DEFECT | IN INITIAL CHAPTER 40 NOTICE PERIOD |
| IN RE KITEC FITTING LITIGATION (CLASS ACTION "IN RE KITEC") | 6-A-453302 | Nevada District Court | CONSTRUCTION DEFECT | SETTLED AND PENDING SETTLEMENT BANKRUPTCY APPROVAL RE 25 HOMES; REMAINING PORTION OF CASE STAYED |

| PENDING CASES | CASE NUMBER | | NATURE OF THE CASE | STATUS |
|---|---|---|---|---|

DOCS_LA 208208v1

CLAIMS AND ALL PENDING CASES
SEPTEMBER 16, 2009

| | NONE-NEVADA CHAP. 40 NOTICE OF CONSTRUCTION DEFECT CLAIMS RECEIVED NO SUIT FILED | | | | CONSTRUCTION DEFECT | Not Active |
|---|---|---|---|---|---|---|
| KEISER VS. RHODES HOMES (Timothy Aveiino) | NONE-NEVADA CHAP. 40 NOTICE OF CONSTRUCTION DEFECT CLAIMS RECEIVED NO SUIT FILED | | | | | |
| CASIMIRO VS. RHODES HOMES | NONE-NEVADA CHAP. 40 NOTICE CONSTRUCTION DEFECT CLAIMS RECEIVED NO SUIT FILED | | Robert Maddox, Esq. | 3811 W. Charleston Blvd. #110 Las Vegas, NV 89521 | CONSTRUCTION DEFECT | Not Active |
| RHODES HOMES ARIZONA, LLC VS. STANLEY CONSULTANT VS. RHODES RANCH GENERAL PARTNERSHIP &RHODES DESIGN AND DEVELOPMENT AND DESERT COMMUNITIES, LLC D/B/A CUSTOM QUALITY HOMES, LLC | MARICOPA COUNTY, AZ SUPERIOR COURT NO. CV2006-009025 | Maricopa County, Arizona Superior Court | | | RHODES COMPLAINT FOR PROFESSIONAL NEGLIGENCE AND COUNTER CLAIM FOR BREACH OF CONTRACT | Extensive Discovery prior to stay |
| MARTINEZ & TUREK, INC. VS. RHODES HOMES ARIZONA, LLC, THE RHODES COMPANIES, LLC, & DESERT COMMUNITIES, LLC D/B/A CUSTOM QUALITY HOMES, LLC | SAN BERNARDINO COUNTY, CALIFORNIA NO. CVRS3 500949 | San Bernardino County | | | BREACH OF CONTRACT | Debtors are not the real defendants and matter is being defended by Custom Quality Homes. |

| PENDING CASES | CASE NUMBER | | | | NATURE OF THE CASE | STATUS |
|---|---|---|---|---|---|---|
| VIRGINIA SPRINGALL-SMITH and SHANE SMITH VS. ROBERTO GUZMAN-LAIGUINAS, GUNG-HO CONCRETE, LLC | 09-A-593034 | Nevada Clark County | | | AUTO ACCIDENT PERSONAL INJURY | CASE FILED 4/22/2009. CASE STAYED. NO RESPONSIVE PLEADINGS ON FILE. |
| DEBORA GENATO VS. NIGEL PARFITT, THOMAS ROBINSON, JAMES RHODES AND D&J HOLDINGS, INC. | 09-A-596025 | Nevada Clark County | | | EMPLOYEE MATTER SEXUAL HARASSMENT, HOSTILE WORK ENVIRONMENT GENDER DISCRIMINATION SLANDER PER SE | FILED POST PETITION. PLAINTIFF'S INJUNCTION RELIEF DENIED. NO DISCOVERY OR RESPONSIVE PLEADING TO THE UNDERLYING COMPLAINT. CASE IS SUBJECT TO STAY. |

CLAIMS AND ALL PENDING CASES
SEPTEMBER 18, 2009

| | | | | | PERSONAL INJURY | |
|---|---|---|---|---|---|---|
| IAN ROSEN VS. HARSCH INVESTMENTS/ 7 BRAVO, INC. AND HARSCH INVESTMENTS VS. BRAVO, INC. | 08-A-570558 | Nevada Clark County | | | | ROSEN FORMER TRIBE EMPLOYEE SUIT FOR PERSONAL INJURY ON BRAVO PREMISES. HARSCH LANDLORD SUIT FOR INDEMNIFICATION IN PLEADING STAGE. STAYED. MOTION TO LIFT STAY PENDING ON 10/2/09 TO LIFT STAY TO PURSUE INSURANCE POLICY ONLY |

**PENDING SETTLED CASES WITH INSURANCE**

| | | | | | | |
|---|---|---|---|---|---|---|
| FULKS VS. ELKHORN (34 HOMES)--$4,000,000 INSURED SETTLEMENT | 5-A-528906 | Nevada District Court | | | CONSTRUCTION DEFECT | |
| PRESERVES AT ELKHORN HOA VS. RHODES HOMES (COMMON ELEMENTS) $167,000 INSURED SETTLEMENT | 5-A-536339 | Nevada District Court | | | CONSTRUCTION DEFECT | |
| In Re Xbec (25 Homes in Preserves $200,000 INSURED SETTLEMENT | 6-A-493302 | Nevada District Court | | | CONSTRUCTION DEFECT | |

**NOTICE OF CLAIMS NO SUIT FILED**

| NATURE OF CLAIM | INSURED | | CLAIMANT | AMOUNT CLAIMED |
|---|---|---|---|---|
| CONTRACT CLAIM ARISING FROM TUSCANY OPTION AGREEMENT | UNISURED | | Commerce Associates, LLC | UNKOWN |
| BRACH OF CONTRACT FAILURE TO COMPLETE POST CLOSING CONSTRUCTION IN SPANISH HILLS | UNISURED | | Xanadu SJ&C Family Trust vs. Rhodes Design and Development Corporation | APPROXIMATELY $18,000 |

DOCS_LA-208208v1

**CLAIMS AND ALL PENDING CASES**
**SEPTEMBER 18, 2009**

| | | | |
|---|---|---|---|
| BREACH OF CONTRACT FAILURE TO COMPLETE POST CLOSING CONSTRUCTION IN SPANISH HILLS | UNINSURED | The Robert Baldwin Trust vs. Rhodes Design and Development Corporation | UNKNOWN |
| 8/18/2009 NOTICE OF MOLD CLAIM NO CASE PENDING | INSURED | Curtis A. and Susan Bunce and Family | UNKNOWN |