Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
Telephone:  702.979.2357
Facsimile:  702.362.9472
E-Mail:     nleatham@klnevada.com

Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone:  212.872.1000
Facsimile:  212.872.1002
E-Mail:     pdublin@akingump.com
            aqureshi@akingump.com

*Counsel for the First Lien Steering Committee*

*Electronically Filed*
*October 28, 2009*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: | Case No. 09-14814-LBR |
| | (JointlyAdministered) |
| THE RHODES COMPANIES, LLC, | |
| aka "Rhodes Homes," *et al.*, | Chapter 11 |
| Debtors.[1] | |
| | Hearing Date: October 30, 2009 |
| | Hearing Time: 1:30 p.m. |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

| | |
|---|---|
| Affects:<br>☒ All Debtors<br>☐ Affects the following Debtor(s) | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ REPLY OF THE FIRST LIEN STEERING COMMITTEE TO (I) CERTAIN ISSUES RAISED *SUA SPONTE* BY THE BANKRUPTCY COURT WITH RESPECT TO SUFFICIENCY OF DISCLOSURE STATEMENT AND (II) STANLEY CONSULTANTS, INC.'S OBJECTION TO SUFFICIENCY OF DISCLOSURE STATEMENT |

The First Lien Steering Committee (the "First Lien Steering Committee"), consisting of certain unaffiliated lenders under the Credit Agreement dated as of November 21, 2005 among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein as the Lenders (collectively, the "First Lien Lenders"), and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, by and through its undersigned counsel, hereby files this reply (the "Reply") to (i) certain issues raised *sua sponte* by the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") with respect to the adequacy of information contained in the Initial Disclosure Statement (as defined below), and (ii) Stanley Consultants, Inc.'s ("Stanley") Objection to Sufficiency of Disclosure Statement (the "Stanley Objection"). In support of this Reply, the First Lien Steering Committee respectfully represents as follows:

## BACKGROUND[2]

1. On either March 31, 2009 or April, 1, 2009 (collectively, the "Petition Date"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.

2. Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are currently authorized to operate their businesses and manage their properties as debtors in possession. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only. No trustee or examiner has been appointed in these chapter 11 cases.

3. On May 26, 2009, pursuant to Bankruptcy Code section 1102, the United States Trustee for the District of Nevada appointed an Official Committee of Unsecured Creditors (the "Committee"). The Committee currently consists of four members: G.C. Wallace, Inc.; Interstate Plumbing & Air Conditioning; M & M Electric, Inc.; and Southwest Iron Works, LLC.

4. On September 25, 2009, the First Lien Steering Committee filed the Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al. (the "Initial Plan") and the accompanying Disclosure Statement for the Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al. (the "Initial Disclosure Statement").

5. On October 19, 2009, the Bankruptcy Court raised certain issues with respect to the adequacy of the information contained in the Initial Disclosure Statement. Specifically, the Bankruptcy Court requested that the Initial Disclosure Statement be

---

[2] Terms not otherwise defined herein shall have the meanings ascribed to such terms in the Stanley Objection or the First Amended Plan.

amended to include additional information regarding (i) whether, under the law of this jurisdiction, the applicable standards for approval of the Mediation Settlement had been satisfied, (ii) which Claims constitute General Unsecured Claims, and which constitute Trade Claims, (iii) why General Unsecured Claims and Trade Claims were separately classified and whether such classification is permitted under applicable provisions of the Bankruptcy Code, (iv) the rights and preferences of the various Litigation Trust Interest series and (v) the assets being transferred to the Litigation Trust.

6.  On October 20, 2009, Stanley filed the Stanley Objection. Among other things, the Stanley Objection asserts that the Initial Disclosure Statement should not be approved because the Initial Disclosure Statement does not provide adequate information regarding the treatment of claims asserted by Stanley against Debtors Rhodes Homes Arizona, LLC, Rhodes Design and Development Corporation, and Rhodes Ranch General Partnership. The Stanley Objection further asserts that the Initial Disclosure Statement and the Initial Plan improperly attempt to transfer rights in Stanley's intellectual property to the Rhodes Entities or to James Rhodes.

7.  On October 27, 2009, the First Lien Steering Committee filed the First Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al. (the "First Amended Plan") and the accompanying First Amended Disclosure Statement for the First Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al. (the "First Amended Disclosure Statement"). In addition, the First Lien Steering Committee filed exhibits D and E to the First Amended Disclosure Statement, which exhibits compare the proceeds to be realized if the Debtors were to be liquidated in hypothetical cases under

chapter 7 of the Bankruptcy Code against the proceeds to be realized under the First Amended Plan as a going concern.

## REPLY

**I. The Disclosure Statement has been Amended to Address the Concerns Raised by this Court.**

8. The First Amended Disclosure Statement provides additional information and clarification with respect to the five issues raised by the Bankruptcy Court at the hearing held on October 19, 2009.

**A. Mediation Settlement and Related Release Provisions**

9. The First Amended Disclosure Statement includes additional information regarding the Mediation Settlement entered into between, among others, the First Lien Steering Committee, the Rhodes Entities, and the Debtors. See First Amended Disclosure Statement, Art. III.F. Specifically, the First Amended Disclosure Statement provides that, pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, the First Amended Plan constitutes a good faith compromise of all Claims, Interests and controversies relating to the subject matter of the Mediation Settlement. Id.

10. The First Amended Disclosure Statement describes the standard applied by courts in the Ninth Circuit in determining whether to approve such a compromise as fair and equitable. Id. In determining whether a proposed settlement is fair and equitable, courts in this District consider: (i) the probability of success of the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. See id.; see also In re A&C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986). As

5

set forth in detail below, the First Amended Disclosure Statement describes the basis for the First Lien Steering Committee's belief that the compromise embodied in the First Amended Plan and the Mediation Settlement is fair and equitable under the applicable test articulated by the Ninth Circuit.

11.     The First Amended Disclosure provides detailed information regarding potential preference actions settled pursuant to the Mediation Settlement and the First Amended Plan. As stated in the First Amended Disclosure Statement, the First Lien Steering Committee estimates that the amount of all payments made to the Rhodes Entities within the year prior to the Petition Date exceeds $9 million. Id. With respect to the first factor articulated by the A&C Properties Court, the First Amended Disclosure Statement notes that litigation over the potential preferential payments identified in the First Amended Disclosure Statement would have been contentious and hard fought. Id. The First Amended Disclosure Statement explains that the Rhodes Entities would likely have asserted a number of defenses to the preference claims, including that such payments were received in the ordinary course of business. Moreover, the First Amended Disclosure Statement informs that, based on the First Lien Steering Committee's review of all payments made to insiders within the one year period prior to the Petition Date as reflected in the Debtors' Schedules and Schedule B to the Mediation Term Sheet, and on subsequent conversations with Debtors' counsel, the First Lien Steering Committee believes that the Rhodes Entities may have had valid defenses to certain of the transfers. Id.

12.     As stated in the First Amended Disclosure Statement, the Mediation Settlement also reflects a resolution of potential fraudulent conveyance actions held by the Estates against the Rhodes Entities. The First Amended Disclosure Statement notes,

however, that the First Lien Steering Committee believes that such claims would also have been heavily litigated in the absence of a settlement and, while the First Lien Steering Committee believes that it would have ultimately prevailed on the fraudulent transfer claims, there can be no guarantee that a successful result would have been obtained for the Estates. Id. In addition, the First Amended Disclosure Statement explains that the prosecution of both the fraudulent conveyance claims and the preference claims would have resulted in substantial expense for the Estates, while at the same time delaying the Debtors' emergence from chapter 11. Id. The First Amended Disclosure Statement thus explains the First Lien Steering Committee's conclusion that the third factor of the A&C Properties test also weighs in favor of the approval of the Mediation Settlement.[3] Id.

13.    With respect to the fourth factor of the A&C Properties test, the First Amended Disclosure Statement describes the benefit to the Debtors' creditors of the compromise embodied in the First Amended Plan and the Mediation Settlement. Specifically, the First Amended Disclosure Statement explains that Creditors of the Estates will derive a material benefit from the approval of the Mediation Settlement because, among other things, the Mediation Settlement (i) contemplates a $3.5 million Cash payment from the Rhodes Entities to the Reorganized Debtors, which payment will be used to fund working capital needs and distributions contemplated by the First Amended Plan, (ii) provides for the transfer of the Arizona Assets, which were non-core assets of the

---

[3] Regarding the second factor of the A&C Properties test, the First Amended Disclosure Statement explains that the First Lien Steering Committee has not completed a detailed review of the financial information of each Rhodes Entity that may have been liable in connection with the Claims released under the First Amended Plan, and cannot therefore make a determination as to whether each such entity could have satisfied its obligations in connection with any judgment entered by the Bankruptcy Court, but believes that the Rhodes Entities may not have been able to comply financially with the terms of judgments received in connection with successful litigation regarding the Claims being released under the First Amended Plan.

7

Reorganized Debtors that likely would have required significant additional funding for development, to the Rhodes Entities, (iii) provides for the transfer of the Rhodes Ranch Golf Course, the maintenance and continued operation of which is paramount to maximizing the value of the Reorganized Debtors' assets, to the Reorganized Debtors, (iv) avoids the significant expense and time delay associated with litigating the Claims released under the First Amended Plan, which would have yielded uncertain results, and (v) enables the Debtors to emerge from bankruptcy expeditiously and consensually, without any unnecessary eradication of value through a prolonged stay in chapter 11. Id. In addition, the First Amended Disclosure Statement notes that all Claims and Causes of Action against the Rhodes Entities that are not covered by the limited release provided for in the Mediation Settlement will be transferred to the Litigation Trust for the benefit of all Creditors, to be analyzed and, as appropriate, prosecuted and/or settled post-emergence. Id.

14.     In addition to the material benefits listed above, the First Amended Disclosure Statement informs Creditors that the First Lien Steering Committee believes that the Mediation Settlement will also ensure a smooth transition to new ownership under the First Amended Plan. The First Amended Disclosure Statement explains that the Mediation Settlement will allow the Reorganized Debtors to continue operations without interruption upon emergence because stringent bond and licensing requirements will be maintained through the cooperation of the Rhodes Entities, and that the Mediation Settlement also contemplates that new Qualified Employees and HOA board representatives will be elected by the Reorganized Debtors to ensure a unified and organized post-Effective Date management team. Finally, the First Amended Disclosure Statement explains that, on balance, the First Lien Steering Committee believes that the Estates and their Creditors will

be obtaining value in excess of the consideration to be given to the Rhodes Entities if the Mediation Settlement is approved. Id.

### B. Definition of General Unsecured Claims

15. In order to avoid the uncertainty and potential confusion identified by the Bankruptcy Court regarding General Unsecured Claims and Trade Claims, the definition of Trade Claims has been deleted from both the First Amended Disclosure Statement and the First Amended Plan. While the Initial Disclosure Statement and the Initial Plan defined General Unsecured Claims separately from Trade Claims, the definition of General Unsecured Claims has been broadened to encompass all Unsecured Claims (subject to the exceptions noted in the First Amended Plan).[4] See First Amended Plan, Art. I.61. Because Trade Claims are now subsumed within the definition of General Unsecured Claims, and because (as discussed below) Trade Claims and General Unsecured Claims are no longer separately classified, the First Lien Steering Committee submits that the lack of clarity identified by the Bankruptcy Court has been adequately addressed.

### C. Treatment of General Unsecured Claims and Trade Claims

16. In response to the Bankruptcy Court's concern regarding the separate treatment of General Unsecured Claims and Trade Claims under the Initial Plan, the First Amended Disclosure Statement has been modified (as discussed above) to reflect that General Unsecured Claims now include Trade Claims, and that General Unsecured Claims and Trade Claims will therefore receive the same treatment under the First Amended Plan. Specifically, the First Amended Disclosure Statement explains that each Holder of an

---

[4] The First Amended Plan defines General Unsecured Claims as follows: Any Claim against any of the Debtors that is not a/an (a) Administrative Claim, (b) Priority Tax Claim, (c) Priority Non-Tax Claim, (d) First Lien Lender Claim, (e) Second Lien Lender Claim, (f) Other Secured Claim, (g) Subordinated Claim, or (h) Intercompany Claim.

Allowed General Unsecured Claim (including any Allowed Rhodes Entities Claims) shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of General Unsecured Claims on account of its Allowed Claim. See First Amended Disclosure Statement, Art. IV.C.5.

17. The First Amended Disclosure Statement also provides that the First Lien Lenders may purchase certain General Unsecured Claims. As described in the First Amended Disclosure Statement, each of the First Lien Lenders will now receive its pro rata share of $1.5 million in Cash. See First Amended Disclosure Statement, Art. IV.C.1. The First Lien Lenders have agreed to use the aggregate $1.5 million Cash payment provided to them under the First Amended Plan to acquire those Claims listed on a Claim Purchase Schedule to be included in the Plan Supplement. See First Amended Disclosure Statement, Art. IV.H.7.

18. As the Initial Plan and Initial Disclosure Statement have been amended to provide that Holders of General Unsecured Claims and Trade Claims will receive the same treatment, the First Lien Steering Committee believes that the issues raised by the Bankruptcy Court with respect to the potentially disparate treatment of unsecured creditors have been resolved.

**D.    The Litigation Trust Interests and the Litigation Trust Assets**

19. The Bankruptcy Court's concerns regarding the Litigation Trust Interests and the lack of specificity regarding the Litigation Trust Assets have also been addressed by the First Amended Disclosure Statement and the First Amended Plan. First, the First Amended Disclosure Statement and First Amended Plan reflect an overall simplification of the Litigation Trust Interests to be issued under the First Amended Plan. In contrast to the

separate series of Litigation Trust Interests provided for in the Initial Plan, the First Amended Plan includes only a single series of Litigation Trust Interests. See First Amended Plan, Art. I.85. Accordingly, any discussion of separate series of Litigation Trust Interests has been removed from the First Amended Disclosure Statement and the First Amended Plan. Second, with respect to the Litigation Trust Assets, the First Amended Plan has been modified to clearly indicate that the Litigation Trust Assets will be as set forth in an exhibit to the Plan Supplement. See First Amended Plan, Art.I.82. The First Lien Steering Committee therefore submits that the modifications reflected in the First Amended Disclosure Statement and the First Amended Plan have resolved the issues raised by the Bankruptcy Court.

## II. The First Amended Disclosure Statement Addresses the Stanley Objection

20. In response to the Stanley Objection, the First Amended Disclosure Statement reflects modifications that provide adequate information regarding the treatment of Stanley's Claims. That portion of the Stanley Objection relating to Stanley's intellectual property is, however, without merit and must be overruled.

### A. Treatment of Stanley's Claims

21. The First Amended Disclosure Statement contains adequate information regarding the treatment of the claims asserted by Stanley against the Debtors. In order to address the issues raised by the Stanley Objection, the First Amended Disclosure Statement provides additional information regarding the treatment of Stanley's Claims. The First Amended Disclosure Statement expressly acknowledges that Stanley filed Proofs of Claim against Rhodes Homes Arizona, LLC, Rhodes Design and Development Corporation, and Rhodes Ranch General Partnership asserting Claims in the total aggregate amount of

$4,609,249.00 on account of prepetition services allegedly rendered pursuant to agreements with (i) Rhodes Homes Arizona, LLC and (ii) Rhodes Design and Development Corporation and Rhodes Ranch General Partnership. See First Amended Disclosure Statement, Art. II.B. The First Amended Disclosure Statement also specifically provides that the Reorganized Debtors will evaluate and, if appropriate, file objections to such Claims prior to the Claims Objection Deadline. Id. In addition, the First Amended Disclosure Statement states that the Reorganized Debtors intend to pursue the Stanley Engineering Litigation after emerging from bankruptcy.[5] Id. Finally, the First Lien Steering Committee believes that the elimination of the separate classification of Trade Claims will similarly eliminate any confusion regarding the classification of the Claims asserted by Stanley.

**B.    Transfer of Stanley's Intellectual Property**

22.    Stanley's assertion that the First Amended Disclosure Statement and the First Amended Plan seek to improperly transfer rights in Stanley's intellectual property to the Rhodes Entities or Rhodes is without merit. Stanley argues that the Debtors have no legal right to transfer rights to Stanley's intellectual property because the Debtors have neither paid Stanley for the work it performed nor obtained Stanley's written permission to transfer such intellectual property. See Stanley Objection, pgs. 6-7. While the First Lien Steering Committee maintains that the respective rights of Stanley and the Debtors to such intellectual property have not yet been resolved, it is well settled that a debtor can only transfer property to the extent that the debtor has an interest in such property. See 11 U.S.C. § 541; see also In re AgriBioTech, Inc., 319 B.R. 207, 211 (D. Nev. 2004) (recognizing that a debtor's estate consists solely of property in which the debtor has a legal or equitable

---

[5] Upon information and belief, the Debtors dispute that Stanley has fully complied with the terms of all agreements related thereto.

12

interest). Accordingly, in the event that it is determined that the Debtors do not have an interest in the intellectual property discussed in the Stanley Objection, the First Amended Plan cannot transfer an interest in such intellectual property to the Rhodes Entities or any other party.[6] The First Lien Steering Committee therefore submits that Stanley's objection with respect to the Debtors' proposed use of its intellectual property does not go to the sufficiency of the First Amended Disclosure Statement and should only be considered, if at all, in connection with confirmation.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the First Lien Steering Committee respectfully requests that the Court (i) approve the First Amended Disclosure Statement, (ii)

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

---

[6] The First Lien Steering Committee is waiting on confirmation from the Rhodes Entities as to whether the Rhodes Entities will seek the transfer of any contracts or intellectual property related to Stanley.

13

overrule the Stanley Objection, and (iii) grant the First Lien Steering Committee such other and further relief as is just and proper under the circumstances.

Dated this 28th day of October, 2009.

                        By:   /s/ Philip C. Dublin
                                 Nile Leatham (NV Bar No. 002838)
                                 KOLESAR & LEATHAM
                                 Wells Fargo Financial Center
                                 3320 W. Sahara Ave.
                                 Las Vegas, NV 89102
                                 (702) 979-2357 (Telephone)
                                 (702) 362-9472 (Facsimile)
                                 Nleatham@klnevada.com

                                 AKIN GUMP STRAUSS HAUER & FELD LLP
                                 Philip C. Dublin (NY Bar No. 2959344)
                                 Abid Qureshi (NY Bar No. 2684637)
                                 One Bryant Park
                                 New York, New York 10036
                                 (212) 872-1000 (Telephone)
                                 (212) 872-1002 (Facsimile)
                                 pdublin@akingump.com
                                 aqureshi@akingump.com

                                 *Counsel for the First Lien Steering Committee*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com