1  BRETT A. AXELROD, ESQ.
   Nevada Bar No. 5859
2  GREENBERG TRAURIG, LLP
   3773 Howard Hughes Pkwy, Suite 400 North
3  Las Vegas, Nevada  89169
   Telephone:  (702) 792-3773
4  Facsimile:  (702) 792-9002
   Email: axelrodb@gtlaw.com
5  *Counsel for Sagebrush Enterprises, Inc. and James Rhodes*

| Electronically Filed November 13, 2009 |

6                    **UNITED STATES BANKRUPTCY COURT**

7                          **DISTRICT OF NEVADA**

8  In re                                  Case Nos.  BK-S-09-14814-LBR, *et. seq.*

9                                         (Jointly Administered Under BK-S-09-14814)

10 THE RHODES COMPANIES, LLC.,
    a Nevada limited liability company, et al.,[1]    Chapter 11

11

12                          Debtors.       **DECLARATION OF JAMES M. RHODES
                                           REGARDING SECOND AMENDED
13                                         DISCLOSURE STATEMENT FOR THE
                                           SECOND AMENDED PLAN OF
14                                         REORGANIZATION PURSUANT TO
                                           CHAPTER 11 OF THE UNITED STATES
15                                         BANKRUPTCY CODE FOR THE RHODES
                                           COMPANIES, LLC, ET AL.**
16

17 Affects:
    ☒ All Debtors                          Hearing Date:   November 16, 2009
18  ☐ Affects the following Debtor(s):     Hearing Time:   1:30 p.m.

19

20

21

22

23      [1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if
    applicable are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partner-
24  ship (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wall-
    board, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206);
25  Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel
    20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716);
26  Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties,
    LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, a Nevada *Limited Partner-*
27  ship (9654); Bravo, Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC
    (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).
28

I, James M. Rhodes, hereby declare as follows:

1.      I am over the age of eighteen years and, if called as a witness, could and would testify competently to the matters set forth herein from my own personal knowledge, except for those matters attested to upon information and belief.

2.      I am the founder and president of The Rhodes Companies, LLC and its affiliated companies (together with its affiliates, "Rhodes Homes" or "Company" or the "Debtors"). The facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto. I submit this declaration regarding the Second Amended Disclosure Statement for the Second Amended Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code for the Rhodes Companies, LLC, et al., which is set for hearing on November 16, 2009 at 1:30 p.m. in response to the letter submitted by the First Lien Steering Committee's counsel to the Court on November 13, 2009.

3.      Previously, Rhodes Ranch Golf and Country Club was the owner and operator of the golf course and club house in the Rhodes Ranch development, but on December 22, 2008, as required by the First Lien Credit Agreement, its assets were sold to non-Debtor Rhodes Ranch Golf, Inc. ("RRGI"). I am the majority stockholder of RRGI. RRGI's purchase of the Rhodes Ranch Golf and Country Club was consummated through the procurement of a $5,900,000 loan from Vestin and $2,430,000 which I paid in cash in my individual capacity. Until late October, I had no idea that the $2,430,000 I paid personally was being booked as a loan to RRGI until I received a copy of the tax returns. A redacted copy of the 2008 tax returns for RRGI is attached hereto as **Exhibit "1"**. Once I realized that the $2,430,000 was being booked as a loan, I informed my general counsel, Clayton Rice, and requested that Mr. Rice locate a copy of the loan agreement and verify with my accountant that the entry as a loan in the tax return is accurate. On November 12, 2009, we advised my attorneys at Greenberg Traurig, LLP of the issue and knew we had an obligation to disclose the issue of the $2,430,000 to the First Lien Steering Committee, under the terms of the mediation as well as the consensual plan of reorganization.

4.   On November 12, 2009, Anne Loraditch of Greenberg Traurig, LLP sent an email to counsel for the First Lien Steering Committee advising them of the issue regarding the $2,430,000 and expressing concerns that it was not included in the Debtors' disclosure statement and plan.

5.   My general counsel has not been able to locate the note that purports to memorialize a loan for the $2,430,000. I have not ever seen such a note.

6.   While I do not believe that my payment of the $2,430,000 constituted a "loan" to RRGI, I need to speak with the professional that prepared RRGI's tax return, Bob Evans, to confirm. Unfortunately, Mr. Evans cannot be reached as he is on vacation until Monday, November 16, 2009.

7.   In the event that the $2,430,000 is confirmed to be a loan, I am either willing to forgive that debt or convert the $2,430,000 to equity. I believe that the mechanical way the $2,430,000 will be treated is a confirmation issue and there is time to resolve this with the First Lien Steering Committee in advance of the confirmation hearing currently set for January 5, 2010.

8.   It has been and continues to be my intention to transfer the Rhodes Ranch Golf and Country Club back to the Debtors with no more than $5.9 million in secured debt.

9.   The disclosure of the $2,430,000 issue was made as an act of good faith. To not disclose the issue would have been bad faith.

10.   On my request for the stock transfer for the Arizona entities in lieu of an asset transfer, I believe it is the only way we can effectuate a transfer of the Arizona assets as there are different versions of the ownership of the real estate in the accounting books, the county recorders office and the assessors office in Mohave County. In many cases, all three sources show different ownership. There are also deeds of trust from Credit Suisse recorded in some areas of the Credit Suisse collateral, but not others. Incidentally, the deeds of trust were done off legal descriptions, not legal parcels, so that creates uncertainty as to whether the Arizona assets will be transferred in their entirety or whether slivers will be left behind. In order to minimize issues over the future of the Arizona real property, the Arizona entities should be transferred through a stock transfer. I believe that the Arizona entities contain nothing other than the assets intended to be transferred.

1    11.    I acknowledge the First Lien Steering Committee's concerns with regards to my requests
2   for a stock transfer of the Arizona entities and indemnification for any personal guarantees with respect
3   to Rhodes Ranch Golf and Country Club.  The First Lien Steering Committee is entitled to time to
4   consider and analyze the requests.  I believe that the mechanics pertaining to these requests are
5   confirmation issues and there is time for the First Lien Steering Committee to review the requests in
6   advance of the confirmation hearing currently set for January 5, 2010.

7    12.    I have been and remain committed to participating in these bankruptcy proceedings and
8   working with the First Lien Steering Committee to achieve consensual resolution in good faith to usher
9   the successful reorganization of the Debtors for the benefit of their creditors.  I apologize to the Court
10  and all parties-in-interest for any inconvenience or resulting delay in the disclosure of the $2,430,000
11  issue but that certainly was not my intention.  Instead, the issue was disclosed in good faith and as part
12  of my obligations to the First Lien Steering Committee under the mediation and the plan of
13  reorganization.

14    I declare under penalty of perjury under the laws of the United States of America that the
15  foregoing is true and correct to the best of my knowledge, information and belief.

16    Executed this 13th day of November 2009.

17                                            /s/James M. Rhodes
18                                            James M. Rhodes

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

REEVES EVANS MCBRIDE & ZHANG LLP
2285 RENAISSANCE DRIVE
LAS VEGAS, NEVADA 89119
(702) 597-0010

CLIENT: 67824
OCTOBER 7, 2009

RHODES RANCH GOLF, INC.
7220 S. CIMARRON ROAD, SUITE 100
LAS VEGAS, NV   89113

PROFESSIONAL SERVICES RENDERED IN THE PREPARATION OF YOUR 2008
CORPORATION RETURNS, INCLUDING:

FORM 1120, U.S. CORPORATION INCOME TAX RETURN
FORM 4562, DEPRECIATION AND AMORTIZATION

TAX PREPARATION FEE

Form 1120 (2008)  RHODES RANCH GOLF, INC.                    26-3885182  Page 5

## Schedule L | Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | | | ▇▇▇▇ |
| 2a Trade notes and accounts receivable | | | ▇▇▇▇ | |
| b Less allowance for bad debts | ( | ) | ( | ) ▇▇▇ |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (att. sch.) STMT 3 | | | | ▇▇▇▇ |
| 7 Loans to shareholders | | | | |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (att. sch.) | | | | |
| 10a Buildings and other depreciable assets | | | ▇▇▇ | |
| b Less accumulated depreciation | ( | ) | ( ▇▇▇ ) | 5,563,534. |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | ( | ) | ( | ) |
| 12 Land (net of any amortization) | | | | 2,724,301. |
| 13a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | ( | ) | ( | ) |
| 14 Other assets (att. sch.) | | | | |
| 15 Total assets | | 0. | | 8,442,068. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | | | ▇▇▇▇ |
| 17 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 Other current liabilities (att. sch.) STMT 4 | | | | ▇▇▇▇ |
| 19 Loans from shareholders | | | | 2,430,500. |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 Other liabilities (att. sch.) STMT 5 | | | | 5,900,000. |
| 22 Capital stock:  a Preferred stock | | | | |
| b Common stock | | | | |
| 23 Additional paid-in capital | | | | |
| 24 Retained earnings - Appropriated (attach schedule) | | | | |
| 25 Retained earnings - Unappropriated | | | | ▇▇▇▇ |
| 26 Adjustments to shareholders' equity (attach schedule) | | | | |
| 27 Less cost of treasury stock | | | ( | ) |
| 28 Total liabilities' and shareholders' equity | | 0. | | 8,442,068. |

## Schedule M-1 | Reconciliation of Income (Loss) per Books With Income per Return
Note: Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more - see instructions

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | ▇▇▇ | 7 Income recorded on books this year not included on this return (itemize): | |
| 2 Federal income tax per books | | Tax-exempt interest  $ _____ | |
| 3 Excess of capital losses over capital gains | | | |
| 4 Income subject to tax not recorded on books this year (itemize): _____ | | | |
| | | 8 Deductions on this return not charged against book income this year (itemize): | |
| 5 Expenses recorded on books this year not deducted on this return (itemize): | | a Depreciation  $ _____ | |
| a Depreciation  $ _____ | | b Charitable contributions  $ _____ | |
| b Charitable contributions  $ _____ | | | |
| c Travel and entertainment  $ _____ | | 9 Add lines 7 and 8 | |
| 6 Add lines 1 through 5 | ▇▇▇ | 10 Income (page 1, line 28) - line 6 less line 9 | ▇▇▇ |

## Schedule M-2 | Analysis of Unappropriated Retained Earnings per Books (Line 25, Schedule L)

| | | | |
|---|---|---|---|
| 1 Balance at beginning of year | | 5 Distributions:  a Cash | |
| 2 Net income (loss) per books | ▇▇▇ | b Stock | |
| 3 Other increases (itemize): _____ | | c Property | |
| _____ | | 6 Other decreases (itemize): _____ | |
| _____ | | 7 Add lines 5 and 6 | |
| 4 Add lines 1, 2, and 3 | ▇▇▇ | 8 Balance at end of year (line 4 less line 7) | ▇▇▇ |

811031
12-31-08  JWA

5

Form **1120** (2008)