1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

**LARSON & STEPHENS**
**810 S. Casino Center Blvd., Suite 104**
**Las Vegas, Nevada 89101**
Tel: (702) 382-1170  Fax: (702) 382-1169

73203-001\DOCS_SF:68616.1

9

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|

| Name of Debtor: RHODES HOMES | Case Number: 09-14814-LBR |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent: CAPITOL NORTH AMERICAN 1780 S. MOJAVE RD LAS VEGAS, NV 89104 Telephone number: 702-457-5353 | Court Claim Number:_____ (if known) <br><br> Filed on:_____ |
| Name and address where payment should be sent (if different from above): SAME AS ABOVE <br><br> Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. <br><br> ☐ Check this box if you are the debtor or trustee in this case. |

**1. Amount of Claim as of Date Case Filed:** $ 2664.73

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** STORAGE OWED
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

　　**3a. Debtor may have scheduled account as:** _____
　　(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:　☐ Real Estate　☐ Motor Vehicle　☐ Other
Describe:

Value of Property:$_____　Annual Interest Rate_____ %

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____　Basis for perfection: _____

Amount of Secured Claim: $_____　Amount Unsecured: $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 10/16/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY <br> **FILED** <br><br> OCT 2 7 2009 <br><br> By Omni Management Group Claims Agent <br> for U.S. Bankruptcy Court <br> District of Nevada |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

```
AR300                        CAPITOL                        10/16/09
Rev  5.00.00              Customer/Order Inquiry              Page    1
                        Order Summary (Open A/R only)
Cust: RHODES HO       Name: RHODES HOMES            Open A/R: Y
Ord:                  Shpr:                         Earliest:
Inv:                  P/O:                 Brch:    Latest: 10/16/09
 # Order/Ref   Shipper          Br   Oldest Days   Ord Bal CR  Cust Bal
 1 C39104      RHODES HOMES      1  9/01/09   45      840.00      840.00
               Cust ref#: 90955N-SPL
 2 C40375A     RHODES HOMES      1  3/31/09  199     1824.73     2664.73
                                          Customer total:        2664.73
```

B 10 (Official Form 10) (12/08)

RECEIVED
AND FILED

| UNITED STATES BANKRUPTCY COURT | District of Nevada | 2009 MAY 18 PM 1:14 | PROOF OF CLAIM |
|---|---|---|---|

Name of Debtor:
The Rhodes Companies, LLC, aka Rhodes Homes, et al.

Case Number:
09-14814-LBR

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Kyle Moyer & Company | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br>Janet Betts<br>Holme Roberts & Owen, LLP 16427 N. Scottsdale Rd, Ste 300, Scottsdale AZ 85254<br><br>Telephone number:<br>(480) 624-4520 | **Court Claim Number:** _____<br>*(If known)*<br><br>Filed on: _____ |
| Name and address where payment should be sent (if different from above):<br>Kyle Moyer & Company<br>7525 E. Camelback Road, Ste 104, Scottsdale, AZ 85251<br><br>Telephone number:<br>(480) 941-0781 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed:   $ 34,104.74 | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

2. Basis for Claim:   Services Rendered
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____

   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:

Value of Property:$ _____   Annual Interest Rate ___%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ _____   Basis for perfection: _____

Amount of Secured Claim: $ _____   Amount Unsecured: $ _____

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)( ).

Amount entitled to priority:

$ _____

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

FOR COURT USE ONLY

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

*Kyle G. Moyer*   KYLE G. MOYER   04/___   Omni Management Group, Claims Agent

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

FILED

MAY 22 2009

U.S. Bankruptcy Court
District of Nevada

22

## CONSULTING AND PROFESSIONAL SERVICES
## AGREEMENT

### EXHIBIT A

1.      Company is: Rhodes Homes Arizona, L.L.C..

2.      Contractor will perform the following Services under this Agreement:

See attached Scope of Work dated June 16, 2006. Unless specifically stated otherwise in writing, in no event shall the fee for the Services exceed the amount of the monthly retainer fee set forth in Section 3 below.

3.      Schedule of Charges and Address for Submission of Invoices:

Contractor shall be paid a monthly retainer fee of $18,000.00 per month.

The client agrees to reimburse the company for the following campaign related expenses: 1) rental expense for a furnished apartment or condominium at a rate to be negotiated between client and company which shall include all additional expenses related to maintaining the domicile (ie: telephone hookup and expense, electricity, internet access, etc.); 2) mileage reimbursement for all travel between Mohave County and Maricopa County at the Internal Revenue Service rate of $0.445/mile; 3) travel expense related to off-site meetings (Las Vegas, Nevada) which shall include airfare and hotel accommodations as necessary; 4) meal expense and related incidental expenses related directly to the consultation of key community leaders in Mohave County. At no time, without written approval from the Company, shall the above expenses exceed $2,500.00 per month.

All other expenses related to the operation and implementation of the grassroots campaign shall be paid by Kyle Moyer & Company including but not limited to 1) meals and incidental personal expenses; 2) computers, fax machines, cellular telephones, and other communications and equipment devises including any and all expenses associated with such use, operation and maintenance; 3) automobile fuel and maintenance within Mohave County; and 4) copy, printing and facsimile services related to the daily operation of campaign activities.

## CONSULTING AND PROFESSIONAL SERVICES AGREEMENT

This CONSULTING AND PROFESSIONAL SERVICES AGREEMENT (this "Agreement"), dated as of May ____, 2006, is by and between Rhodes Homes Arizona, L.L.C. ("Company"), with its principal place of business at 4730 South Fort Apache Road, Suite 300, Las Vegas, Nevada 89147, and Kyle Moyer & Company Public Affairs L.L.C. ("Contractor"), with its principal place of business at 7525 East Camelback Road, Suite 104, Scottsdale, Arizona 85251.

Company and Contractor agree as follows:

## 1.    SERVICES

**1.1    Description of Services.**    Contractor agrees to furnish all supervision, labor, materials, transportation and warranties necessary to perform the services described in Exhibit A (the "Services") and deliver the Work Product (as defined in Section 5.1) pursuant to Work Orders issued, from time to time, by an officer of Company, ("Authorized Person"). Each Work Order will be subject to the terms and conditions of the Contract Documents (as defined in Section 1.3).

**1.2    Change Orders.**    Company may, from time to time, initiate changes in the Services, including alterations, additions and deductions, by issuing Change Orders in the form of Exhibit B. Contractor will comply promptly with the terms of all Change Orders signed by an Authorized Person and Contractor, each of which will be subject to the terms and conditions of the Contract Documents.

**1.3    Limitations.**    CONTRACTOR AGREES, AND WILL CAUSE EACH OF ITS SUBCONTRACTORS TO AGREE, THAT IT WILL PERFORM NO SERVICES OTHER THAN THE SERVICES DESCRIBED IN THIS AGREEMENT, THE ATTACHED EXHIBITS, ANY CHANGE ORDER(S) EXECUTED BY THE PARTIES AND ANY WORK ORDER(S) ISSUED BY COMPANY (COLLECTIVELY, THE "CONTRACT DOCUMENTS"). CONTRACTOR UNDERSTANDS AND AGREES, AND WILL CAUSE EACH OF ITS SUBCONTRACTORS TO UNDERSTAND AND AGREE, THAT IT WILL NOT BE PAID FOR ANY SERVICES NOT DESCRIBED IN THIS AGREEMENT UNLESS THE ADDITIONAL OR DIFFERENT SERVICES ARE AUTHORIZED BY A WRITTEN CHANGE ORDER EXECUTED, OR WORK ORDER ISSUED, BEFORE SUCH SERVICES ARE PERFORMED. CONTRACTOR EXPRESSLY WAIVES, AND WILL CAUSE EACH OF ITS SUBCONTRACTORS TO AGREE TO WAIVE, ANY CLAIM TO PAYMENT FOR ANY ADDITIONAL OR DIFFERENT SERVICES PERFORMED IN VIOLATION OF THIS SECTION 1.3.

## 2.    CONTRACTOR'S RESPONSIBILITIES

**2.1    Standards; Submissions and Approvals.**    Contractor will perform the Services in a thorough and professional manner and produce and deliver the Work Product, all to the satisfaction of Company. If requested by Company, Contractor will submit any plans, schedules, designs, drawings and portions of the Services and Work Product for Company's prior review and approval. Approval of or consent to plans, schedules, designs, drawings or portions of the Services and Work Product by Company will not constitute a waiver, discharge or lessening of Contractor's responsibilities under this Agreement.

**2.2    Progress Reports.**  Contractor will prepare progress reports in form, detail and media approved by Company.

**2.3    Invoicing.**  Contractor will submit invoices for the amounts and at the times set forth in Exhibit A.  Company will not be obligated to make any payments for any additional or different services that have not been approved, in advance, in writing.

**2.4    Contractor Property.**  In order for Company to utilize the Work Product, it may be useful or necessary to use technology, information, computer programs and documentation owned by or licensed to Contractor (the "Contractor Property").  Prior to commencement of the Services, Contractor will disclose and provide to Company, to the extent available, any such Contractor Property and will disclose and provide to Company, from time to time as requested by Company, complete copies of all then-current Contractor Property.  With respect to any Contractor Property that is not owned by Contractor, Contractor will secure for Company the right and license to use such Contractor Property.  The provision of all Contractor Property to Company will be at no additional cost to Company except as may be set forth in the Schedule of Charges in Exhibit A.

**2.5    Indemnity.**

(a)    Contractor will defend, protect, indemnify and hold harmless Company, its directors, officers, employees and agents, and each of them, for, from and against any and all Losses (as defined below), except to the extent that any Loss is caused by or results from the negligent acts or willful misconduct of Company, its officers, employees or agents.  "Loss" means any liability, claim, demand, damage, loss, fine, penalty, cause of action, suit or cost, of any kind or description, including, but not limited to, judgments, liens, expenses (including, but not limited to, court costs, attorneys' fees, costs of investigation, removal and remediation and governmental oversight costs) and amounts agreed upon in settlement, caused by, arising out of, resulting from, attributable to or in any way incidental to the performance of the Services, the Contract Documents, or both, including, but not limited to, any and all claims that Company's use of the Work Product or Contractor Property, or any portion of the Work Product or Contractor Property, infringes or violates any patent, copyright, trade secret, trademark or other third-party intellectual property right.  Contractor's indemnification obligations pursuant to this Section 2.5 will not be construed to negate, abridge or otherwise reduce any other right or obligation of indemnity that would otherwise exist as to any person or entity described in this Section 2.5.

(b)    If any action or proceeding is brought against Company arising out of any matter for which Company is or may be entitled to indemnification, Contractor will, upon notice from Company, retain counsel approved by Company to resist and defend such action or proceeding on Company's behalf; provided, however, that failure of Company to give such notice will not relieve Contractor from any of its obligations pursuant to this Section 2.5 unless such failure prejudices the defense of such action or proceeding by Contractor.  At its own expense, Company may employ separate counsel and participate in the defense.  If employment of separate counsel is required because of a conflict of interest between Contractor and Company, as determined in Company's reasonable discretion, or the failure of Contractor after receipt of notice to assume the defense, then Company may employ separate counsel at Contractor's expense.

- 2 -

**2.6**    **Insurance.**

(a)    Contractor will procure and maintain, from an insurer acceptable to Company, the insurance coverage described in this Section 2.6, as such coverage requirements may be modified by any additional or different coverage set forth in Exhibit A. Such insurance is to be primary with respect to any other similar insurance available to Company, regardless of the provisions of such insurance, and is to name Company and as additional insureds; provided, however, that any insured coverage, including, but not limited to, any additional insured coverage, will not include coverage to the extent that it constitutes a prohibited indemnity agreement under applicable Law. All policies on which Company is an additional insured must include waivers of subrogation by the insurers in favor of Company. Any self-insured retentions and deductibles must be declared to, and approved by, Company. Prior to commencement of the Services, Contractor will furnish to Company certificates and additional insured endorsements evidencing the specified insurance. If requested by Company, Contractor will furnish to Company certified copies of the insurance policies themselves. Such certificates must provide that at least 30 days' prior written notice of any policy cancellation or material change be given to Company. All insurance must be obtained from insurance carriers with an A.M. Best's rating of at least "A-X" and that are otherwise acceptable to Company. Contractor will require each of its subcontractors to procure and maintain the insurance coverage described in this Section 2.6, and as may be modified by any additional or different coverage set forth in Exhibit A, and to provide to Company such certificates of insurance, additional insured endorsements and, if requested by Company, copies of the policies themselves. Any Losses, whether or not covered by the insurance described in this Section 2.6 or within the deductible of such insurance, will be the responsibility of Contractor to the extent that such Losses are covered by the indemnity provisions of Section 2.5 or any other provision of this Agreement.

(b)    Contractor will procure and maintain: (i) Employer's Liability insurance, with a limit of liability not less than $1,000,000 per accident; (ii) Commercial General Liability insurance covering personal injury, bodily injury and property damage arising from operations and premises involved in performance of the Services, with a combined single limit of liability not less than $2,000,000 per occurrence; (iii) Automobile Liability insurance covering all owned, leased, non-owned and hired licensed vehicles used by or on behalf of Contractor in connection with the Services, with combined bodily injury and property damage liability limits of not less than $1,000,000 per accident; and (iv) any other insurance required by Law.

(c)    Company and Contractor intend that Contractor's obligations pursuant to this Section 2.6 be enforceable to the fullest extent permitted by applicable Law. If Contractor's obligations are void or unenforceable in any respect by reason of any provision of applicable Law, then Contractor will be relieved of its obligations only in that respect and its obligations will survive in all other respects. No limitation on the enforceability of Contractor's indemnification obligations pursuant to Section 2.5 will affect in any way Contractor's obligation to procure and maintain the insurance coverage described in this Section 2.6. Company in no way represents or warrants that the minimum coverage limits specified in this Agreement are sufficient to protect Contractor from liabilities that may arise out of the performance of the Services by Contractor, its agents, representatives, employees

and subcontractors, and it is Contractor's responsibility to procure any such additional insurance that Contractor may determine to be necessary or advisable.

**2.7    Liability for Losses.**  Contractor will be liable for any and all Losses, except to the extent that any Loss is caused by or results from the negligent acts or willful misconduct of Company, its officers, employees or agents.

**2.8    Damaged, Destroyed or Removed Property.**  Contractor will, at its sole cost and expense, repair, restore or replace any real or personal property belonging to Company or any other person or entity that Contractor, its employees, agents or subcontractors may damage, destroy or remove while performing, in order to perform or resulting from performance of the Services.

**2.9    Recruitment of Personnel.**  During the term of this Agreement and for a period of one year thereafter, Contractor will not, except with the prior written approval of Company, solicit the employment of any Company employees with whom Contractor has had contact in connection with the performance of any Services.

**2.10    Compliance with Laws.**  Contractor will perform and complete the Services and deliver the Work Product in a manner that complies with all applicable federal, state and local laws, rules, regulations, codes and ordinances (each, a "Law") including, but not limited to, (i) all those relating to labor, employment, safety and the environment, and (ii) any applicable technical code or standard.  Company is an Equal Employment Opportunity/Affirmative Action employer subject to Executive Order 11246.  Contractor agrees not to discriminate on the basis of race, color, sex, national origin, religion, age, disability, Veteran status or any other basis covered by applicable Law.

**2.11    Loss Prevention.**  Contractor will take, and will cause each of its subcontractors to take, all precautions necessary for the prevention of accidents, fire, theft, vandalism, injury or other damage on or to any property owned by, leased to or otherwise under the direct or indirect control of Company ("Company Property").

**2.12    Personnel.**

(a)    Contractor will provide only competent and experienced personnel, all of whom will be satisfactory to Company, to perform the Services.  The number and qualifications of such persons will be sufficient for job progress satisfactory to Company.  Prior to commencement of the Services, Contractor will provide Company with the names of all Contractor personnel and their then-current hourly rates, if applicable, who are to perform any of the Services.

(b)    Company may, in its discretion, require Contractor to dismiss from performance of the Services any personnel of Contractor or any of its subcontractors for any reason, effective upon written notice from Company of such dismissal.  Company will not be required to pay salary or any other costs associated with dismissed personnel effective upon Contractor's receipt of notice to dismiss from Company.

(c)    Contractor agrees to ensure the continuity of its personnel assigned to perform the Services.  Any removal or reassignment of such personnel will be with

- 4 -

replacement(s) who have substantially equivalent or better qualifications than the person(s) being replaced. There will be no charge to Company while such replacement(s) acquire the necessary training and familiarity with the Services to be performed.

(d)     Contractor agrees to employ key personnel satisfactory to Company. Once selected, key personnel may not be changed without Company's prior written consent.

(e)     Contractor will permit employees of Company to be present as observers while various tasks are being conducted and to consult with Contractor personnel regarding the Services.

**2.13    Employee Relations.** Company reserves the right to control and regulate access to the Company Property where any Services are to be performed (the "Project Site"). Contractor will plan and conduct its operations so that its employees, agents and subcontractors work in harmonious relationship with other groups of workers at the Project Site and so that they do not delay, endanger or avoidably interfere with the operations of others.

**2.14    Disclosure of Information and Maintenance of and Access to Records.**

(a)     Contractor will promptly disclose to Company any and all information Contractor may learn that may have a material adverse impact on Company, the Services, the Work Product or Company's ability to utilize the Work Product in the manner and for the purpose for which the Work Product is intended.

(b)     Contractor will maintain detailed records of all matters that relate in any way to the Contract Documents, the Services and the Work Product, all in form, format and media acceptable to Company (the "Records"). During the term of this Agreement and for a minimum period of 36 months after its expiration or termination, Company will have the right to copy and audit the Records during Contractor's regular business hours, regardless of whether such Records are created before or after the expiration or termination of this Agreement.

(c)     Company is authorized to confer directly with Contractor's suppliers of labor and materials regarding their charges. If any such audit reveals that Contractor has not paid all wages and other costs incurred by Contractor, or reveals any charges to Company in excess of the charges Contractor is entitled to receive under the Contract Documents, such wages, costs and excessive charges, and the cost to Company of the audit, will be deducted from amounts due to Contractor under the Contract Documents, or will be refunded by Contractor to Company, regardless of whether Company may have previously paid such wages, costs or excessive charges or accepted the Work Product.

**2.15    Subcontractors.** Contractor may not, without Company's prior written consent in each instance, engage any person or entity as a subcontractor to perform all or any part of the Services. Any approved subcontractor must: (i) comply with the terms and conditions of the Contract Documents to the extent applicable to the Services performed by the subcontractor; (ii) acknowledge and agree that it may look only to Contractor for payment for labor and materials provided in connection with the Services; and (iii) waive any and all claims for payment against Company. Contractor is and will remain liable for any and all Services performed by, and any and

all omissions of, its subcontractors to the same degree that Contractor is liable for its own performance and omissions.

**2.16    Conflicts of Interest.** Before performing any Services, and at any time such matters arise during the term of this Agreement, Contractor will disclose to Company in writing any existing or contemplated transactions or litigation of which Contractor has, or reasonably should have, knowledge (i) in which Contractor's interests are adverse to the interests of Company or, or (ii) in connection with which Contractor represents a party whose interests are adverse to the interests of Company.

**2.17    Time of the Essence.** TIME IS OF THE ESSENCE WITH REGARD TO CONTRACTOR'S PERFORMANCE UNDER THE CONTRACT DOCUMENTS. Contractor will begin performing the Services in accordance with Exhibit A and proceed diligently to complete the Services within the term of this Agreement. Contractor (i) acknowledges and agrees that the term of this Agreement is adequate for performance of the Services, and (ii) understands that Contractor's failure to complete the Services within the term of this Agreement will occasion loss and damage to Company.

## 3.    CONFIDENTIAL INFORMATION

**3.1    Non-Disclosure.** Contractor acknowledges that Company and James Rhodes own valuable trade secrets and other confidential information and possess such similar information that is licensed from third parties. Contractor will treat as strictly confidential and will not use for its own purpose or for third parties, or divulge or permit to be divulged to or examined or copied by others, any information and data obtained by Contractor in connection with this Agreement or otherwise that: (i) are confidential or proprietary to Company or James Rhodes including, but not limited to, the Work Product; (ii) relate to the operations, policies, procedures, techniques, accounts or personnel of Company or James Rhodes; or (iii) are confidential or proprietary to a third party and are in the possession, custody or control of Company or James Rhodes. In addition, Contractor will keep confidential the existence and contents of the Contract Documents.

**3.2    Use of Name and Publicity.** Contractor agrees that it will not, without the prior written consent of Company, as applicable, in each instance: (i) use in advertising, publicity or otherwise the name of Company or James Rhodes, the names of any personnel of Company or any trade name, trademark or logo owned by Company; (ii) represent, directly or indirectly, that any product provided or any Services performed by Contractor have been approved or endorsed by Company; or (iii) take or use photographs of Company Property or any personnel of Company.

**3.3    Injunctive Relief.** In the event of a breach or threatened breach of any of the provisions of this Section 3, Company will be entitled to an injunction restraining such breach or threatened breach without having to prove actual damages or threatened irreparable harm. Such injunctive relief as Company may obtain will be in addition to any other rights and remedies available at law, in equity or under the Contract Documents.

## 4.    TERM; TERMINATION; DEFAULT

**4.1    Term; Right to Terminate.** Subject to earlier termination in accordance with this Section 6, the term of this Agreement will be as set forth in Exhibit A. Company will have the

right, immediately upon notice to Contractor, to terminate this Agreement or any Work Order regardless of whether Contractor is in default. Contractor will be entitled to payment pursuant to Section 4 with respect to provable charges earned and reimbursable expenses incurred through the effective date of termination, provided that Contractor agrees to stop performing the Services to the extent specified in such notice and incurs no further expenses beyond those authorized in such notice. Termination of any specific Work Order will have no effect upon any other Work Order. Contractor shall have the right upon 30 day notice to terminate this agreement; provided, however, that Contractor shall fully co-operate with Company with regard to transitioning the Scope of Services and will not represent any third parties which are adverse to the Company with respect to the Company's projects or any aspects thereof in Mohave County, Arizona. Upon any such termination by Contractor, no expenses or fees shall be incurred beyond said termination date.

    **4.2**    <u>**Submission of Invoices.**</u>  Contractor will submit to Company, within 30 days after the effective date of termination, Contractor's invoice for amounts due in accordance with Section 4. Failure to submit such an invoice within the time allowed will relieve Company from paying any amount beyond that which Company may verify from its records as due and payable and such determination will be final. Payment of all amounts due will be made in accordance with Section 4 and the applicable Work Order.

    **4.3**    <u>**Remedy.**</u>  Contractor waives any and all claims for compensation or charges (including any claim for lost profits), beyond that to which it may be entitled under Section 6.1, as a result of any termination. Contractor agrees that its sole remedy in connection with any termination will be to receive compensation in accordance with Section 6.1.

    **4.4**    <u>**Default.**</u>

    (a)    Contractor will (i) at its expense, correct any defect or deficiency in the Services or Work Product that arises from the failure of Contractor to perform the Services or deliver the Work Product in accordance with the Contract Documents (each, a "Defect"), and (ii) to the extent incurred by Company, pay or reimburse Company for all labor and the actual delivered cost of all materials, equipment and machinery required to correct the Defect unless the Services or Work Product are defective or deficient to the extent that it is not technically or economically feasible to correct the Defect, in which case Contractor will be liable to Company for all losses, damages, costs and expenses arising directly or indirectly from the Defect. If Contractor fails to correct any Defect within 48 hours after receipt of written notice from Company, Company may, without prejudice to any other remedies Company may have, perform or reperform the Services, with Company's costs to perform or reperform the Services to be deducted from amounts otherwise payable to Contractor. If payments then or thereafter due to Contractor are insufficient to cover such costs, Contractor will pay the difference to Company.

    (b)    Notwithstanding anything to the contrary set forth in the Contract Documents, if Contractor fails to perform any of its obligations under the Contract Documents, Company may, at its option, immediately exercise any one or more of the following remedies:

(i)     terminate the applicable Work Order or this Agreement, effective immediately upon written notice to Contractor;

(ii)    withhold any further payments otherwise due to Contractor;

(iii)   complete the Services or, if the Work Product fails to accomplish the purposes for which Company has engaged Contractor, reperform the Services itself or engage any other person or entity to complete or reperform the Services, in which case Contractor will be liable for all costs and expenses to complete or reperform the Services and any damages incurred by Company as a result of, or arising from, the completion or reperformance of the Services; and/or

(iv)    exercise any other rights and remedies available to Company at law, in equity or under the Contract Documents.

## 5.     PROPERTY AND PROPRIETARY RIGHTS

### 5.1     <u>Work for Hire.</u>

(a)     Work Product, as defined in this Section 5.1, will be deemed work made for hire and made in the course of Services performed under this Agreement and will be the exclusive property of Company. Company will have the sole and unlimited right to make, have made, use, reconstruct, reproduce, publish, distribute and sell the Work Product, in whole or in part, or combine the Work Product with other matter or not use the Work Product at all, as it sees fit. "Work Product" means any and all reports, evaluations, diagrams, designs, inventions, creations, expressions, improvements, computer programs, specifications and all other documentation, whether or not patentable or copyrightable, that are first conceived, made or actually or constructively reduced to practice during the performance of the Services or within 6 months following the expiration or termination of this Agreement, and that relate in any way to the Contract Documents or are based in whole or in part on or derived from information supplied by Company, whether preliminary or final, and on whatever media rendered.

(b)     Contractor warrants that it has enforceable written agreements with all of its personnel and each of its subcontractors to be involved in performing any Services (i) assigning to Contractor ownership of all patents, copyrights and other proprietary rights created in the course of their employment or engagement, and (ii) obligating such personnel or subcontractors, as the case may be, upon terms and conditions no less restrictive than are set forth in Section 5, not to use or disclose any proprietary rights or information learned or acquired during the course of such employment or engagement including, but not limited to, any Work Product or Contractor Property.

### 5.2     <u>Assignment of Ownership; License.</u>  To the extent that title to any Work Product may not, by operation of law, vest in Company, or such Work Product may not be considered to be work made for hire, Contractor hereby (i) irrevocably transfers and assigns to Company in perpetuity all worldwide right, title and interest in and to the patent rights, copyrights, trade secrets and other proprietary rights (including, but not limited to, applications for registration of such rights and all priority rights under applicable international conventions for the protection of such

- 8 -

rights) in, and ownership of, the Work Product that Contractor may have, as and when such rights arise, and (ii) grants to Company an unrestricted, irrevocable, nonexclusive, fully paid-up, perpetual license, with the right to sublicense, in and to Contractor's proprietary rights to the Contractor Property required for use in connection with the Work Product.

5.3    **Cooperation.**    Contractor will cooperate fully in: (i) disclosing to Company all Work Product; (ii) vesting in Company the ownership of all proprietary rights to the Work Product; and (iii) maintaining and protecting Company's proprietary rights to the Work Product including, but not limited to, executing any documents that Company reasonably deems necessary for such purpose.

5.4    **Title; Return of Documents.**    Title to all materials and documentation furnished by Company to Contractor will remain in Company.  Contractor will deliver to Company any and all Work Product (including all copies) and Contractor Property, on whatever media rendered, upon the first to occur of: (i) Company's request; (ii) the completion of any Work Order; and (iii) the expiration or termination of this Agreement.

## 6.    RESOLUTION OF DISPUTES

### 6.1    Mediation.

(a)    Except as provided in Section 6.2, neither party will initiate litigation with respect to any dispute, claim, question or disagreement (each, a "Dispute") arising from or related to: (i) the Contract Documents; (ii) a breach or default by either party under the Contract Documents; or (iii) either party's rights or obligations under the Contract Documents, unless (i) the Dispute has first been submitted to mediation in accordance with the provisions of this Section 6.1, and (ii) the Dispute has not been successfully resolved at the mediation or by good-faith negotiations between the Executives in accordance with Section 6.1(d).  Notwithstanding the Dispute, Contractor will, if and to the extent required by Company, proceed with the Services pending resolution of the Dispute.  Payment for any disputed portion of the Services will be withheld until the Dispute is resolved, but payment for any Services not in dispute, or for Services performed during resolution of the Dispute, will be made in accordance with the procedures set forth in the Contract Documents.

(b)    Either party may submit the Dispute to mediation pursuant to this Section 6.1 by giving the other party written notice (the "Mediation Notice") of its desire to proceed with the mediation.  The mediation will be conducted in accordance with the American Arbitration Association ("AAA") Commercial Mediation Rules then in effect, as modified by this Section 6.1.  The parties will attempt to agree on the identity of the mediator, but if they cannot agree within 10 days after the Mediation Notice is given, either party may request that AAA select the mediator.  However selected, the mediator will be unaffiliated with either party and disinterested in the Dispute, but knowledgeable concerning the general subject matter of the Dispute.  The parties will evenly split any fees charged by the mediator or AAA, regardless of the outcome of the mediation.  Each party will bear its own attorneys' fees in connection with the mediation.

(c)    The mediation will take place in Phoenix, Arizona within 30 days after the selection of the mediator (subject only to the availability of the selected mediator). Each party will prepare and distribute to the mediator, at least 3 days before the mediation, a written summary of its position, which will not exceed 10 double-spaced pages (subject only to individual mediator preference). At the mediation, the parties will attempt in good faith and with the aid of the mediator to resolve the Dispute. The written summary, all compromise and settlement materials and all statements, whether oral or written, made by any Person at the mediation: (i) will be treated as confidential by both parties and the mediator; (ii) may be disclosed by a party only to legal counsel representing such party in connection with the Dispute; and (iii) will not be admissible in any litigation pursuant to Section 6.2.

(d)    If the Dispute is not successfully resolved at the mediation, the parties will attempt in good faith and with the aid of the mediator to resolve the Dispute for at least 15 days following the mediation by negotiations between senior-level executives of the parties (the "Executives") (i) who are at least one level of authority above the project personnel who have previously been involved in the Dispute, and (ii) who have authority to resolve the Dispute.

(e)    If the Dispute is not successfully resolved by good-faith negotiations between the Executives within 15 days after the mediation, either party may submit the Dispute for resolution by litigation in a court of law with jurisdiction to hear it.

7.    **MISCELLANEOUS**

7.1    **Governing Law; Jurisdiction and Venue; Service of Process.** The Contract Documents will be deemed to have been executed and delivered in Arizona, and the Laws of the State of Arizona will govern the enforcement and interpretation of the Contract Documents. Contractor agrees that, at Company's election and subject to the provisions of Section 8, all actions and proceedings arising from or related to the Contract Documents or either party's rights, obligations or performance under the Contract Documents will be litigated in local, state or federal courts located within the City of Phoenix, Arizona. Contractor consents and submits to the personal jurisdiction and venue of any local, state or federal court located within the City of Phoenix, Arizona. Within 10 days after executing this Agreement, Contractor will (i) designate a person or entity having or maintaining a place of business in Arizona as its duly authorized agent for the acceptance of service of legal process, and (ii) notify Company of such agent's name and its address for service of legal process. Contractor agrees that if it fails to comply with the requirements of the preceding sentence, service of process upon the Secretary of State of Arizona will constitute personal service of legal process upon Contractor.

7.2    **Modification of Contract Documents.** Neither this Agreement nor any other Contract Document may be modified or amended except by a writing signed by both parties.

7.3    **Invalidity; Unenforceability.** If any portion of the Contract Documents is declared to be invalid or unenforceable, such declaration will not affect the validity or enforceability of the remainder of the Contract Documents, which will be construed as nearly as possible as if such invalidity or unenforceability had not been declared. If the scope of any restriction or obligation is

too broad to permit enforcement to its full extent, then such restriction or obligation will be enforced to the maximum extent permitted by applicable Law, and Contractor consents and agrees that the scope and reach of such restrictions and obligations may be judicially modified in any proceedings brought to enforce them.

     **7.4**    <u>**Remedies Cumulative.**</u>   The duties and obligations imposed by the Contract Documents, and the rights and remedies available under the Contract Documents, are in addition to, and not a limitation of, any other duties and obligations imposed, and rights and remedies available, at law or in equity.

     **7.5**    <u>**Waivers.**</u>  No waiver of any provision of the Contract Documents, waiver of any default under the Contract Documents or failure to insist on strict performance under the Contract Documents will affect the right of Company or Contractor, as the case may be, thereafter to enforce such provision or to exercise any right or remedy in the event of any other default, whether or not similar.

     **7.6**    <u>**Notices and Invoices.**</u>  All notices provided for or required under the Contract Documents will be in writing and delivered personally, mailed or sent via express delivery service to the applicable party at the address specified above. All notices sent to Company will be addressed to the attention of "Contracts Administrator." All invoices submitted to Company will be delivered personally, mailed or sent via express delivery service to the address specified in Exhibit A. All invoices and notices will be deemed given when received. Either party may, from time to time and in accordance with the procedures set forth in this Section 9.9, specify a different address for receipt of notices or invoices.

ACKNOWLEDGED AND AGREED:

COMPANY

By: _J. _____ Pres._____

Print Name: _Jim Rhodes_____

Title: _President_____

Date: _8-14-06_____

CONTRACTOR

By: _Kyle G. M_____

Print Name: _KYLE G. MOYER_____

Title: _PRESIDENT_____

Date: _8/14/06_____

04/20/2009 10:49 FAX                                                      ☑003

# Kyle Moyer & Company, LLC

## Credit Memo

Kyle Moyer & Company, LLC
7525 East Camelback Road
Suite 104
Scottsdale, AZ 85251

(480)941-0781
kyle@kylemoyer.com

| DATE | CREDIT # |
|------|----------|
| 01/01/2008 | 1561 |

**CREDIT TO**

Rhodes Homes, Inc.
4730 South Fort Apache Road
Suite 300
Las Vegas, NV 89147

| Activity | Amount |
|----------|--------|
| Uncollectible Debt | 34,104.74 |
| **TOTAL CREDIT** | **$34,104.74** |

# Kyle Moyer & Company, LLC

Kyle Moyer & Company, LLC
7525 East Camelback Road
Suite 104
Scottsdale, AZ 85251

(480)941-0781
kyle@kylemoyer.com

## Invoice

| DATE | INVOICE # |
|---|---|
| 05/07/2007 | 1419 |
| **TERMS** | **DUE DATE** |
| Due on receipt | 05/07/2007 |

**BILL TO**

Rhodes Homes, Inc.
4730 South Fort Apache Road
Suite 300
Las Vegas, NV 89147

| AMOUNT DUE | ENCLOSED |
|---|---|
| $14,796.58 | |

| Activity | Amount |
|---|---|
| • Client Expenses: February 1, 2007 - April 30, 2007 | 6,000.00 |
| • Rental House: February, March, April and May | 2,000.00 |
| • 01/30/2007- Golden Valley Chamber of Commerce - Advertising for Golden Valley Car Show - Tony Johnson | 98.59 |
| • 01/03/2007 - Hampton Inn - TJ | 115.65 |
| • 01/16/2007 - Hampton Inn - TJ | 128.71 |
| • 01/23/2007 - Brunswick Hotel - Dinner with Phil and Julie Moon, Brent Frazier - TJ | 53.61 |
| • 01/23/2007 - Vista Printing - Report Binding - TJ | 213.64 |
| • 01/30/2007 - Mileage Reimbursement - 480 miles - TJ | 1,309.20 |
| • 02/06/2007 - Brunswick Hotel - ACC Meeting Mixer for Supporters - TJ | 222.38 |
| • 02/14/2007 - A-1 Leasing - Rental Van for ACC Hearing - Mark McPhilimy | 26.40 |
| • 02/23/2007 - Kingman Daily Miner - Brent Frazier | 110.00 |
| • 02/24/2007 - Republican Party Lincoln Day Dinner - BF | 1,862.00 |
| • 02/09/2007 - Great Lakes Airlines - 14 Passenger to attend ACC Hearing - MM | 252.80 |
| • 04/16/2007 - Airfare to Las Vegas - TJ | 504.60 |
| • 04/19/2007 - Airfare to Las Vegas - TJ and Kyle Moyer | 191.00 |
| • 04/20/2007 - Kingman Rotary #1204 - Due for Brent Frazier - BF | 544.90 |
| • 04/17/2007 - Mandalay Bay - Lodging (2 rooms/1 night) - KM | 252.30 |
| • 04/26/2007 - Airfare to Las Vegas - KM | 252.30 |
| • 04/26/2007 - Airfare to Las Vegas - TJ | 20.00 |
| • 04/26/2007 - Airport Parking in Phoenix - KM | 256.30 |
| • 05/01/2007 - Airfare to Las Vegas - KM | 256.30 |
| • 05/01/2007 - Airfare to Las Vegas - TJ | 125.90 |
| • 04/16/2007 - Airfare to Las Vegas - KM | |
| **TOTAL** | **$14,796.58** |

04/20/2009 10:50 FAX ☑004

# Kyle Moyer & Company, LLC

Kyle Moyer & Company, LLC
7525 East Camelback Road
Suite 104
Scottsdale, AZ 85251

(480)941-0781
kyle@kylemoyer.com

## Invoice

| DATE | INVOICE # |
|---|---|
| 01/04/2008 | 1472 |
| TERMS | DUE DATE |
| Due on receipt | 01/04/2008 |

**BILL TO**

Rhodes Homes, Inc.
4730 South Fort Apache Road
Suite 300
Las Vegas, NV 89147

| AMOUNT DUE | ENCLOSED |
|---|---|
| $7,950.00 | |

| Activity | Amount |
|---|---|
| • Monthly Professional Service Fee | 6,000.00 |
| • December 1, 2007 – December 31, 2007 | 1,200.00 |
| • Monthly Housing Expense Reimbursement | 250.00 |
| • 12/04/2007 - Strategy meeting with Stephens, Diaz, Urias to discuss submittal - 1 hour @ $250.00/hour | 125.00 |
| • 12/11/2007 - Telephone call with Stephens - 0.5 hours @ $250.00/hour | 250.00 |
| • 12/17/2007 - Conference call with Stephens, Diaz, Urias to discuss community meeting - 1 hour @ $250.00/hour | |
| • 12/21/2007 - Telephone call with Stephens - 0.5 hours @ $250.00/hour | 125.00 |

| | TOTAL | $7,950.00 |
|---|---|---|

*Rec'd Partial Payment 01/30/08*
*Invoice #1472 - Received $7,200.00*
*Balance $750.00*

*Paid $7,200.00*

04/20/2009 10:50 FAX                                                      ☑005

# Kyle Moyer & Company, LLC

Kyle Moyer & Company, LLC
7525 East Camelback Road
Suite 104
Scottsdale, AZ 85251

(480)941-0781
kyle@kylemoyer.com

## Invoice

| DATE | INVOICE # |
|------|-----------|
| 01/31/2008 | 1478 |
| **TERMS** | **DUE DATE** |
| Due on receipt | 01/31/2008 |

**BILL TO**

Rhodes Homes, Inc.
4730 South Fort Apache Road
Suite 300
Las Vegas, NV 89147

| AMOUNT DUE | ENCLOSED |
|------------|----------|
| $12,558.16 | |

| Activity | Amount |
|----------|--------|
| • Monthly Professional Service Fee | |
| • January 1, 2008 - January 31, 2008 | 6,000.00 |
| • Monthly Housing Expense Reimbursement | 1,200.00 |
| • 01/08/2008 - Telephone call with Brent Frazier to discuss community meeting - 0.5 hours @ $250.00/hour | 125.00 |
| • 01/16/2008 - Telephone call with Chrirs Stephens to discuss community meeting - 0.5 hours @ $250.00/hour | 125.00 |
| • 01/18/2008 - Conference call with consulting team to discuss community meeting - 1 hour @ $250.00/hour | 250.00 |
| • 01/21/2008 - Telephone call with Chrirs Stephens to discuss community meeting - 0.5 hours @ $250.00/hour | 125.00 |
| • 01/22/2008 - Conference call with consulting team to discuss community meeting - 1 hour @ $250.00/hour | 250.00 |
| • 01/24/2008 - Rhodes Homes community meeting - travel, meeting set up, event participation - 15 hours @ $250.00/hour | 3,750.00 |
| • 01/15/2008 - Reimbursement for Teleconferencing Fees | 201.66 |
| • 01/24/2008 - Reimbursement for Hotel Accomodations for Kyle Moyer and Tony Johnson | 261.28 |
| • 01/24/2008 - Reimbursement for Dinner for Consulting Team following Community Meeting | 145.22 |
| • 01/31/2008 - Telephone call with Chris Stephen to discuss strategy for upcoming Kingman City Council Meeting - 0.5 hours @ $250.00/hour | 125.00 |

| | TOTAL | $12,558.16 |
|--|-------|------------|

*Rec'd Partial Payment 02/13/08*
*Invoice #1478   Received $7200.00*

*Paid $7200.00*

*Balance $5,358.16*

# Kyle Moyer & Company, LLC

## Invoice

Kyle Moyer & Company, LLC
7525 East Camelback Road
Suite 104
Scottsdale, AZ 85251

(480)941-0781
kyle@kylemoyer.com

| DATE | INVOICE # |
|------|-----------|
| 12/31/2007 | 1490 |

| TERMS | DUE DATE |
|-------|----------|
| Due on receipt | 12/31/2007 |

**BILL TO**

Rhodes Homes, Inc.
4730 South Fort Apache Road
Suite 300
Las Vegas, NV  89147

| AMOUNT DUE | ENCLOSED |
|------------|----------|
| $4,800.00 | |

| Activity | Amount |
|----------|--------|
| Housing Expense | |
| Rent for September 2007 | 1,200.00 |
| Rent for October 2007 | 1,200.00 |
| Rent for November 2007 | 1,200.00 |
| Rent for December 2007 | 1,200.00 |
| | |
| **TOTAL** | **$4,800.00** |

04/20/2009 10:51 FAX                                                      ☑007

# Kyle Moyer & Company, LLC

Kyle Moyer & Company, LLC
7525 East Camelback Road
Suite 104
Scottsdale, AZ 85251

(480)941-0781
kyle@kylemoyer.com

## Invoice

| DATE | INVOICE # |
|------|-----------|
| 02/29/2008 | 1491 |

| TERMS | DUE DATE |
|-------|----------|
| Due on receipt | 02/29/2008 |

**BILL TO**

Rhodes Homes, Inc.
4730 South Fort Apache Road
Suite 300
Las Vegas, NV 89147

| AMOUNT DUE | ENCLOSED |
|------------|----------|
| $7,200.00 | |

| Activity | Amount |
|----------|--------|
| • Monthly Professional Service Fee | 6,000.00 |
| • February 1, 2008 - February 29, 2008 | 1,200.00 |
| • Monthly Housing Expense Reimbursement | |
| **TOTAL** | **$7,200.00** |

04/20/2009 10:51 FAX                                                    ☑008

# Kyle Moyer & Company, LLC

Kyle Moyer & Company, LLC
7525 East Camelback Road
Suite 104
Scottsdale, AZ 85251

(480)941-0781
kyle@kylemoyer.com

## Invoice

| DATE | INVOICE # |
|------|-----------|
| 02/25/2008 | 1492 |
| TERMS | DUE DATE |
| Due on receipt | 02/25/2008 |

**BILL TO**

Rhodes Homes, Inc.
4730 South Fort Apache Road
Suite 300
Las Vegas, NV 89147

| AMOUNT DUE | ENCLOSED |
|------------|----------|
| $1,200.00 | |

| Activity | Amount |
|----------|--------|
| • Rental Expense | |
| • Rent for March 2008 | 1,200.00 |

| | TOTAL | $1,200.00 |
|--|-------|-----------|

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA
UNITED STATES COURTHOUSE
300 LAS VEGAS BLVD. SOUTH
P.O. BOX 16018
LAS VEGAS, NEVADA 89101

OFFICIAL BUSINESS

RHODES COMPANIES, LLC
C/O OMNI MANAGEMENT GRP, LLC
16161 VENTURA BLVD. STE C
PMB477
ENCINO, CA 91436



RECEIVED
OCT 27 2009
BY:

H-SLER
$0.440
US POSTAGE

B 10 (Official Form 10) (04/07)

| UNITED STATES BANKRUPTCY COURT _____ DISTRICT OF NEVADA | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>**RHODES HOMES** | Case Number<br>**09-14814** | *RECEIVED*<br>*APR 20   2006 FM '09* |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>**Office Depot** | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and address where notices should be sent:<br>**Office Depot**<br>6600 N. Military Trail –S413G<br>Boca Raton, FL 33496  (800) 650-1222<br>Telephone number: | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
| Last four digits of account or other number by which creditor identifies debtor:  **39418265** | Check here ☐ replaces<br>if this claim ☐ amends    a previously filed claim, dated:_____ | |

| 1. **Basis for Claim**<br>✓ Goods sold<br><br>☐ Services performed<br><br>☐ Money loaned | ☐ Personal injury/wrongful death<br><br>☐ Taxes<br><br>☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br><br>☐ Other_____ | ☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of your SS #:____<br>Unpaid compensation for services performed<br>From _____ to _____<br>    (date)         (date) |
|---|---|---|

| 2. **Date debt was incurred:** | 3. **If court judgment, date obtained:** |
|---|---|

4. **Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time the case was filed.
See reverse side for important explanations.

| Unsecured Nonpriority Claim $   **3,270.88**<br><br>☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or c) none or only part of your claim is entitled to priority. | **Secured Claim**<br>☐ Check this box if your claim is secured by collateral (including a right of setoff).<br><br>Brief Description of Collateral:<br>☐ Real Estate     ☐ Other_____<br>☐ Motor Vehicle<br><br>    Value of Collateral:   $_____ |
|---|---|
| **Unsecured Priority Claim**<br>☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.<br><br>Amount entitled to priority   $_____ | Amount of arrearage and other charges <u>at time case filed</u> included in secured claim, if any:  $_____ |

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| 5. **Total Amount of Claim at Time Case Filed:** | $   **3,270.88** _____ _____ **3,270.88** |
|---|---|
| | (unsecured)   (secured)    (priority)    (total) |

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

6. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

7. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

All copies should be submitted on single sided 8 1/2 by 11 paper.

| Date<br>04/13/2009 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Kathleen Laramore      *[signature]* | **FILED**<br>APR 3 0 2009 |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

By Omni Management Group, Claims Agent
For U.S. Bankruptcy Court
District of Nevada

Statement Date  APR-13-2009

Office Depot
2100 Old Germantown Road
Delray Beach
Florida
33445

Tel. 800-937-3600

Page    1

Customer Details

Account Number 39418265
RHODES HOMES
4730 S FORT APACHE RD
STE 300
LAS VEGAS
NV          89147-7947

Payment Terms Net 30 Days

| Date | Invoice Number | Type | P.O. Number/Remarks | Original Amt | Balance Outst | Due Date | Past | Dispute or Query Detail |
|---|---|---|---|---|---|---|---|---|
| NOV-07-2007 | 4074572800001 | INV | | 597.96 | 593.14 | DEC-07-2007 | 493 | |
| AUG-27-2008 | 4417074520001 | INV | | 813.71 | 331.88 | SEP-26-2008 | 199 | |
| NOV-05-2008 | 4498282600001 | INV | | 262.14 | 262.14 | DEC-05-2008 | 129 | |
| MAR-11-2009 | 4668012650001 | INV | | 199.10 | 199.10 | APR-10-2009 | 3 | |
| MAR-11-2009 | 4668018410001 | INV | | 134.40 | 134.40 | APR-10-2009 | 3 | |
| MAR-18-2009 | 4676067780001 | INV | | 224.84 | 224.84 | APR-17-2009 | -4 | |
| MAR-18-2009 | 4676167780001 | INV | | 46.54 | 46.54 | APR-17-2009 | -4 | |
| MAR-18-2009 | 4681164650001 | INV | | 40.93 | 40.93 | APR-17-2009 | -4 | |
| MAR-18-2009 | 4681164650001 | INV | | 40.93 | 40.93 | APR-17-2009 | -4 | |
| MAR-25-2009 | 4683702880001 | INV | | 194.89 | 194.89 | APR-24-2009 | -11 | |
| MAR-25-2009 | 4685488840001 | INV | | 169.44 | 169.44 | APR-24-2009 | -11 | |
| MAR-25-2009 | 4689310160001 | INV | | 81.07 | 81.07 | APR-24-2009 | -11 | |
| MAR-25-2009 | 4689346870001 | INV | | 10.21 | 10.21 | APR-24-2009 | -11 | |
| MAR-25-2009 | 4690146140001 | CRN | | -34.79 | -34.79 | APR-24-2009 | -11 | |
| APR-01-2009 | 4695458520001 | INV | | 459.66 | 459.66 | MAY-01-2009 | -18 | |
| APR-01-2009 | 4695458520001 | INV | | 459.66 | 459.66 | MAY-01-2009 | -18 | |
| APR-01-2009 | 4695903230001 | INV | | 557.43 | 557.43 | MAY-01-2009 | -18 | |

Total Balance    3,270.88

| Overdue Amounts | 1-30 days | 31-60 days | 61-90 days | 91-180 days | 181-364 days | 365+ days |
|---|---|---|---|---|---|---|
| | 333.50 | 0.00 | 0.00 | 262.14 | 331.88 | 593.14 |