Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
Telephone: 702.979.2357
Facsimile: 702.362.9472
E-Mail:    nleatham@klnevada.com

Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: 212.872.1000
Facsimile: 212.872.1002
E-Mail:    pdublin@akingump.com
           aqureshi@akingump.com

*Electronically Filed*
*November 23, 2009*

*Counsel for the First Lien Steering Committee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br>        Debtors. | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11 |
| Affects:<br>☐ All Debtors<br>☐ Affects the following Debtor(s) | Hearing Date: November ~~16,~~ 24, 2009<br>Hearing Time: 1:30 p.m.<br>Courtroom 1<br>**SECOND AMENDED MODIFIED** |

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

**DISCLOSURE STATEMENT FOR THE SECOND AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE FOR THE RHODES COMPANIES, LLC, ET AL.**

THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE SECOND AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE FOR THE RHODES COMPANIES, LLC, ET AL. (THE "PLAN"), CERTAIN STATUTORY PROVISIONS, CERTAIN DOCUMENTS RELATED TO THE PLAN, CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES AND CERTAIN FINANCIAL INFORMATION. ALTHOUGH THE FIRST LIEN STEERING COMMITTEE BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. THE INFORMATION INCLUDED HEREIN IS FOR PURPOSES OF SOLICITING ACCEPTANCE OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER AND HOW TO VOTE ON THE PLAN. THE SUMMARIES OF THE FINANCIAL INFORMATION AND THE DOCUMENTS THAT ARE ATTACHED HERETO OR INCORPORATED BY REFERENCE HEREIN ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO SUCH INFORMATION AND DOCUMENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THE DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR THE OTHER DOCUMENTS AND FINANCIAL INFORMATION INCORPORATED HEREIN BY REFERENCE, THE PLAN OR THE OTHER DOCUMENTS AND FINANCIAL INFORMATION, AS THE CASE MAY BE, SHALL GOVERN FOR ALL PURPOSES. FACTUAL INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. THE FIRST LIEN STEERING COMMITTEE DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THE STATEMENTS AND FINANCIAL INFORMATION CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THE DISCLOSURE STATEMENT SHOULD NOT INFER THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH HEREIN BETWEEN THE DATE HEREOF AND THE TIME OF SUCH REVIEW. EACH HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN SHOULD CAREFULLY REVIEW THE PLAN, THE DISCLOSURE STATEMENT, AND EXHIBITS TO THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE CASTING A BALLOT. THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. ANY PERSONS

PROJECTIONS WERE PREPARED MAY BE DIFFERENT FROM THOSE ASSUMED OR, ALTERNATIVELY, MAY HAVE BEEN UNANTICIPATED, AND THUS THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER.  THE PROJECTIONS, THEREFORE, MAY NOT BE RELIED UPON AS A GUARANTY OR OTHER ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.

SEE ARTICLE VI OF THE DISCLOSURE STATEMENT, ENTITLED "CERTAIN FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT OR REJECT THE PLAN.

THE DISCLOSURE STATEMENT HAS BEEN DETERMINED BY THE BANKRUPTCY COURT TO CONTAIN ADEQUATE INFORMATION AS REQUIRED BY SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, 11 U.S.C. §§ 101 - 1532 (THE "BANKRUPTCY CODE"), WHICH DETERMINATION DOES NOT CONSTITUTE A RECOMMENDATION OR APPROVAL OF THE PLAN.

UNLESS OTHERWISE STATED, ANY CAPITALIZED TERM USED HEREIN SHALL HAVE THE MEANING ASSIGNED TO SUCH TERM HEREIN OR, IF NO MEANING IS SO ASSIGNED, THE MEANING ASSIGNED TO SUCH TERM IN THE PLAN.

**THE BANKRUPTCY COURT HAS SCHEDULED THE CONFIRMATION HEARING TO COMMENCE ON [JANUARY 5̶14], 2010 AT [9:00 a̶A.m̶M.] PREVAILING PACIFIC TIME BEFORE THE HONORABLE LINDA B. RIEGLE, UNITED STATES BANKRUPTCY JUDGE, IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA, IN COURTROOM 1 IN THE FOLEY FEDERAL BUILDING LOCATED AT 300 LAS VEGAS BOULEVARD SOUTH, LAS VEGAS, NEVADA 89101. THE CONFIRMATION HEARING MAY BE ADJOURNED FROM TIME TO TIME BY THE BANKRUPTCY COURT WITHOUT FURTHER NOTICE OTHER THAN AN ANNOUNCEMENT OF THE ADJOURNED DATE MADE AT THE CONFIRMATION HEARING OR ANY ADJOURNMENT THEREOF.**

**OBJECTIONS TO CONFIRMATION OF THE PLAN MUST BE FILED AND SERVED ON OR BEFORE [D̶E̶C̶E̶M̶B̶E̶R̶ ̶1̶8̶JANUARY 4], 2̶0̶0̶9̶,2010, IN ACCORDANCE WITH THE SOLICITATION NOTICE THAT THE FIRST LIEN STEERING COMMITTEE FILED AND SERVED ON HOLDERS OF CLAIMS, HOLDERS OF INTERESTS AND OTHER PARTIES IN INTEREST.  IF OBJECTIONS TO CONFIRMATION ARE NOT TIMELY SERVED AND FILED IN COMPLIANCE WITH THE SOLICITATION NOTICE, THEY MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

# TABLE OF CONTENTS

Article I. SUMMARY ........................................................................................................... 1
    A.     Plan Overview ............................................................................................. 1
    B.     Settlement Overview .................................................................................. 2
    C.     Potential Claims Against the Rhodes Entities ............................................ 4
    D.     The Debtors' Principal Assets and Indebtedness ....................................... 5
    E.     Treatment of Claims and Interests .............................................................. ~~5~~6
    F.     Claims Estimates ........................................................................................ 9
    G.     Questions and Answers Regarding this Disclosure Statement and the Plan ... 10
    H.     Voting and Confirmation ............................................................................ 18
    I.     Consummation of the Plan .......................................................................... 19

Article II. BACKGROUND ................................................................................................. 20
    A.     Description of the Debtors' Business Operations ...................................... 20
    B.     Pending Significant Litigation .................................................................... 24

Article III. THE CHAPTER 11 CASES .............................................................................. 25
    A.     Events Leading to the Chapter 11 Cases ................................................... 25
    B.     Initiation of the Chapter 11 Cases .............................................................. 26
    C.     Stabilization of Operations ......................................................................... 26
    D.     Appointment of the Creditors' Committee ................................................ 28
    E.     Claims Bar Dates ........................................................................................ 28

Article IV. SUMMARY OF THE PLAN ........................................................................... 29
    A.     Overview of a Chapter 11 Plan .................................................................. ~~29~~30
    B.     Administrative and Priority Claims ........................................................... 30
    C.     Classification and Treatment of Claims .................................................... 31
    D.     Bankruptcy Code Section 1111(b) Election .............................................. 34
    E.     Cramdown ................................................................................................... 35
    F.     Means for Implementation of the Plan ...................................................... 35
    G.     Treatment of Executory Contracts and Unexpired Leases ....................... ~~50~~51
    H.     Procedures for Resolving Disputed Claims ............................................... ~~54~~55
    I.     Provisions Governing Distributions ........................................................... ~~56~~57
    J.     Effect of Confirmation of the Plan ............................................................ 66
    K.     Allowance and Payment of Certain Administrative Claims ..................... 74
    L.     Conditions Precedent to Confirmation and Consummation of the Plan ... ~~75~~76
    M.     Modification, Revocation, Or Withdrawal of the Plan ............................. ~~78~~79
    N.     Retention of Jurisdiction ............................................................................ 80

Article V. STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN ... ~~80~~81
    A.     The Confirmation Hearing ......................................................................... ~~80~~81
    B.     Confirmation Standards ............................................................................. ~~80~~81
    C.     Financial Feasibility ................................................................................... 82
    D.     Best Interests of Creditors Test .................................................................. ~~82~~83
    E.     Acceptance by Impaired Classes ............................................................... ~~84~~85
    F.     Confirmation Without Acceptance by All Impaired Classes ................... ~~85~~86

| | | | |
|---|---|---|---|
| Article VI. | CERTAIN FACTORS TO BE CONSIDERED PRIOR TO VOTING | | ~~86~~87 |
| | A. | Certain Bankruptcy Considerations | 87 |
| | B. | Other Considerations | 89 |
| | C. | Plan Risk Factors | ~~90~~91 |
| Article VII. | CERTAIN FEDERAL INCOME TAX CONSEQUENCES | | 93 |
| | A. | Certain U.S. Federal Income Tax Consequences to Reorganized Debtors | 94 |
| | B. | Certain Federal Income Tax Consequences to Holders of Claims | 97 |
| | C. | Other Tax Matters | ~~106~~107 |
| Article VIII. | RECOMMENDATION | | 107 |
| Article IX. | CONCLUSION | | ~~108~~109 |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

# Article I.
## SUMMARY

The following summary is qualified in its entirety by the more detailed information contained in the Plan and elsewhere in the Disclosure Statement.

On either March 31, 2009 or April, 1, 2009 (collectively, the "Petition Date"), The Rhodes Companies, LLC and certain of its affiliates and subsidiaries (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. Prior to and after the Petition Date, the Debtors operated one of the largest independent homebuilding businesses in Las Vegas and Nevada.

The Disclosure Statement is being furnished by the First Lien Steering Committee pursuant to section 1125 of the Bankruptcy Code in connection with: (a) the solicitation of votes for the acceptance or rejection of the Plan and (b) the confirmation hearing (the "Confirmation Hearing"), which is scheduled for [January 5̶14], 2010 at [9:00 a.m.] Pacific Time (the "Confirmation Hearing Date"). A copy of the Plan is annexed hereto as Exhibit A and incorporated by reference herein.

The Disclosure Statement describes certain aspects of the Plan, including the treatment of Claims and Interests, and describes certain aspects of the Debtors' operations, projections and other related matters.

A. Plan Overview

The Plan is the product of extensive negotiations and a settlement reached among the First Lien Steering Committee, the Debtors, James Rhodes and his non-Debtor affiliates (collectively, with James Rhodes, the "Rhodes Entities"), the Creditors' Committee and the Second Lien Agent. The settlement was reached following a three day mediation session held on August 17, 24 and 25, 2009 before the Honorable Richard Neiter, United States Bankruptcy Court, Central District of California (the "Mediation Settlement"). The First Lien Agent also attended the mediation session but is not a party to the Mediation Settlement. As a result of this Mediation Settlement, the Plan contemplates that, upon the Debtors' emergence from chapter 11, the Debtors will continue to operate as a going concern homebuilder primarily in the Las Vegas market. The owners of the Debtors after they emerge from chapter 11 will be the First Lien Lenders. Holders of general unsecured claims (including the First Lien Lenders and Second Lien Lenders on account of their deficiency claims) will receive interests in a litigation trust unless their claims are listed on Exhibit H to the Disclosure Statement, in which case their claims may be purchased for up to 100 cents on the dollar for a full cash recovery to the extent those claims are not disputed and become Allowed. The litigation trust will analyze and, if appropriate, pursue claims and causes of action belonging to the Debtors that were not part of the collateral securing the Debtors' prepetition secured debt, which claims and causes of action shall be transferred to the litigation trust on the effective date of the Plan. The First Lien Steering Committee believes that these claims and causes of action include claims against the Rhodes Entities that are not

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

expressly released under the Plan. A list of the Rhodes Entities is set forth on Attachment A to the Mediation Settlement Term Sheet.

The Plan contemplates and is predicated upon the substantive consolidation of the Debtors' chapter 11 cases into a single proceeding solely for the purposes of the chapter 11 cases and all actions with respect to confirmation, consummation and implementation of the Plan as set forth in more detail in Article IV below. The First Lien Steering Committee believes that the Plan provides the basis for the maximum recoveries possible for all constituents and that if the Plan is not confirmed, unsecured creditors will receive little to no recovery on account of their claims.

B.   Settlement Overview

The primary terms of the Mediation Settlement include the following (the terms of the settlement are set forth in greater detail on the Mediation Term Sheet attached as Exhibit 1 to the Plan):

- Upon the Debtors' emergence from chapter 11, the Debtors, as reorganized (the "Reorganized Debtors"), will be owned by the First Lien Lenders. In addition to receiving the equity of the Reorganized Debtors, the First Lien Lenders will receive their pro rata share of (i) $50 million in new secured notes, (ii) $1.5 million in cash from the proceeds of their collateral and (iii) interests in the litigation trust on account of their unsecured deficiency claims.

- The Debtors' Second Lien Lenders will receive their pro rata share of the following on account of their claims if they vote in favor of the Plan: (i) 50% of the net proceeds of the Stanley Engineering Litigation and (ii) litigation trust interests on account of their unsecured deficiency claims. In addition, if the Second Lien Lenders vote in favor of the Plan, the Reorganized Debtors will pay the reasonable fees and expenses of counsel to the agent for the Second Lien Lenders in an amount not to exceed $500,000. If the Second Lien Lenders do not vote in favor of the Plan, they will receive only litigation trust interests on account of their unsecured deficiency claims.

- The First Lien Lenders will use the $1.5 million cash payment referenced above to purchase the claims of the unsecured creditors listed on Exhibit H to this Disclosure Statement to the extent that such claims are not disputed and are Allowed, which will result in such creditors receiving a cash payment of 100 cents on account of their allowed claims against the Debtors. If the Plan is not confirmed, the claim purchases will not happen and unsecured creditors listed on Exhibit H to this Disclosure Statement will likely receive little to no recovery on account of their claims.

- Unsecured creditors whose claims are not purchased by the First Lien Lenders will receive interests in the litigation trust on account of their allowed claims. The terms of the litigation trust are set forth in the draft Litigation Trust Agreement which is attached as Exhibit I to this Disclosure Statement.

- The number of interests in the litigation trust to be received by unsecured creditors, First Lien Lenders and Second Lien Lenders will be determined by the amount of each

applicable creditor's unsecured claim as compared to the total amount of unsecured claims.

- The litigation trust will be funded initially with $100,000 by the Reorganized Debtors. The litigation trust will analyze and, if deemed appropriate by the Litigation Trustee, pursue claims and causes of action that have been transferred to the litigation trust under the Plan. These potential claims and causes of action include those claims and causes of action belonging to the Debtors against any third party not specifically released under the Plan and that are not part of the First Lien Lenders' collateral. For a list of categories of claims and potential causes of action, see Article I.C. of this Disclosure Statement regarding potential claims and causes of action against the Rhodes Entities and Exhibit G to the Disclosure Statement for a list of potential claims and causes of action against third parties, including service providers and vendors. If a claim is purchased by the First Lien Lenders pursuant to the Plan, however, the Debtors will waive any claims for preference recovery under section 547 of the Bankruptcy Code on account of those claims that are purchased at the request of the Creditors Committee. As stated in more detail below, the recovery on account of these potential claims and causes of action are highly speculative. The First Lien Lenders estimate that recovery by the General Unsecured Claims will be approximately 3.2% under the Plan, but there can be no guarantee that the recovery will be that high.

- The Rhodes Entities will transfer the Rhodes Ranch Golf Course (through the equity of the non-Debtor Rhodes Entities that own the Rhodes Ranch Golf Course) to the Reorganized Debtors. The most recent appraisal for the Rhodes Ranch Golf Course valued the Golf Course at approximately $7.9 million. The Reorganized Debtors will assume any third party debt on the Rhodes Ranch Golf Course, up to a maximum amount of $5.9 million. The Reorganized Debtors may, under certain circumstances, require Rhodes to purchase the Rhodes Ranch Golf Course any time between four (4) and eight (8) years from the Effective Date for $5.9 million in cash. The Rhodes Entities will have the right to repurchase the Rhodes Ranch Golf Course for $5.9 million after eight (8) years subject to certain terms and conditions. James Rhodes will contribute his asserted $2.4 million loan to the entity that owns the Rhodes Ranch Golf Course and indemnify the Debtors, the Reorganized Debtors, Newco and the entity that owns the Rhodes Ranch Golf Course from any liability arising from the contribution of such loan.

- The Rhodes Entities will pay $3.5 million in cash to the Reorganized Debtors, which will be used to fund distributions under the Plan and provide working capital to the extent of any excess.

- The Rhodes Entities will cooperate with the Reorganized Debtors in connection with certain matters related to the Reorganized Debtors' continued home-building operations including, without limitation, matters pertinent to (i) HOA boards, (ii) contractor licenses, and (iii) the maintenance of performance bonds.

- The Rhodes Entities will receive a limited release under the Plan. The release will be limited to claims and causes of action arising under chapter 5 of the Bankruptcy Code

3

(i.e., preferential transfers and fraudulent transfers) solely to the extent that the transactions to which such claims and causes of action relate have been expressly disclosed in either the statements of financial affairs filed by the Debtors with the Bankruptcy Court or Schedule B to the settlement term sheet which is attached as Exhibit 1 to the Plan. Any claims or causes of action against the Rhodes Entities that belong to the Debtors' estates that are not expressly released under the Plan will be transferred to the litigation trust.

- Any allowed claims that the Rhodes Entities have against the Debtors' Estates will be treated as general unsecured claims and will not be subject to subordination. The Rhodes Entities will also be permitted to assert that they have the right to setoff any allowed claims they have against the Debtors' Estates against any claims that the Debtors' Estates have against the Rhodes Entities.

- The Rhodes Entities will also receive the Debtors' non-core assets located in Arizona ~~solely to the extent~~ as set forth on Attachment D to Exhibit 1 to the Plan <ins>or otherwise set forth in the stock and asset purchase agreement pursuant to which such transfer shall be effectuated</ins>, which assets are not necessary for the Debtors' reorganization plan and are completely landlocked by holdings of the Rhodes Entities. These assets will be transferred free and clear of any third party creditor claims (which third party creditor claims will remain assertable against the Debtors' Estates). All of these Arizona assets constitute collateral securing the Debtors' obligations to the First Lien Lenders and Second Lien Lenders. The First Lien Steering Committee believes that these assets are worth approximately $1 million. <ins>The Arizona Assets shall be transferred through the Rhodes Entities' acquisition of the stock of Rhodes Arizona Properties LLC and Elkhorn Investments, Inc., as reorganized, and certain assets of Rhodes Homes Arizona LLC. Any non-real property assets or assets not listed on Attachment D to the Mediation Term Sheet that are titled in Rhodes Arizona Properties LLC or Elkhorn Investments, Inc. shall be transferred to Newco pursuant to the stock and asset transfer agreement. To the extent any real property assets located in Arizona are titled in any Debtor other than Rhodes Arizona Properties LLC, Elkhorn Investments, Inc. or Rhodes Homes Arizona, such real property assets shall be transferred to the Rhodes Entities pursuant to the stock and asset transfer agreement.</ins>

- The First Lien Steering Committee and the Rhodes Entities will structure the Plan in a manner that is tax advantageous for the Rhodes Entities; provided, that, such structure does not create any tax liabilities for the Debtors or the First Lien Lenders.

C.  Potential Claims Against the Rhodes Entities

On April 7, 2009, the First Lien Steering Committee moved for the appointment of a chapter 11 trustee (the "Trustee Motion"). The Trustee Motion was based, in part, on allegations of questionable and unlawful business dealings, and suspicions concerning the propriety of Mr. Rhodes' conduct as the Debtors' President, as detailed in a report prepared by a nationally recognized firm retained by the First Lien Agent to conduct an investigation into the Debtors' business operations (the "Rhodes Report"). In light of the allegations

2. **Why is the First Lien Steering Committee sending me this Disclosure Statement?**

The Disclosure Statement is being furnished by the First Lien Steering Committee in connection with: (a) the solicitation of votes for the acceptance or rejection of the Plan; and (b) the confirmation hearing (the "Confirmation Hearing"), which is scheduled for [January 5, 2009 14, 2010 at 9:00 a.m.] Pacific Time (the "Confirmation Hearing Date").

Before soliciting votes for the acceptance or rejection of the Plan, Bankruptcy Code section 1125 requires the First Lien Steering Committee to prepare a Disclosure Statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the Plan.

3. **Am I entitled to vote on the Plan? What will I receive from the Debtors if the Plan is consummated?**

Your ability to vote and your distribution under the Plan, if any, depend on what kind of Claim or Interest you hold. A summary of the Classes of Claims and Interests (each, a category of Holders of Claims or Interests as set forth in Article IV of this Disclosure Statement and Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code, which we refer to as a "Class") and their respective voting statuses is set forth below.

You should refer to this entire Disclosure Statement and the Plan for a complete description of the classification and treatment of Allowed Claims and Interests in each of the Classes below.

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| A-1 | First Lien Lender Secured Claims | Impaired | Entitled to Vote |
| A-2 | Second Lien Lender Secured Claims | Impaired | Entitled to Vote |
| A-3 | Other Secured Claims | Unimpaired | Deemed to Accept |
| B | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| C-1 | General Unsecured Claims | Impaired | Entitled to Vote |
| C-2 | First Lien Lender Deficiency Claims | Impaired | Entitled to Vote |
| C-3 | Second Lien Lender Deficiency Claims | Impaired | Entitled to Vote |
| C-4 | Subordinated Claims | Impaired | Deemed to Reject |
| D | Old Equity Interests | Impaired | Deemed to Reject |
| E | Intercompany Claims | Impaired | Deemed to Reject |

For more information about the treatment of Claims and Interests see "Classification and Treatment of Claims," which begins on page 31 of this Disclosure Statement.

4. **What happens to my recovery if the Plan is not confirmed, or does not go effective?**

In the event that the Plan is not confirmed, there is no assurance that the Debtors will be able to reorganize their business. If the Plan is not confirmed in a timely manner, it is unclear whether the transactions contemplated by the Plan and the Mediation Settlement could be implemented and what Holders of Claims would ultimately receive in respect of their

investment bankers, consultants, representatives, and other Professionals, (g) the Debtors' officers, employees (including Thomas Robinson and Joseph Schramm) and Professionals, as of the Petition Date, and (h) Paul Huygens; provided, however, that clause (g) shall not include (i) the Rhodes Entities or their affiliates, (ii) insiders of any of the Rhodes Entities (except as to Thomas Robinson and Joseph Schramm), or (iii) relatives of Rhodes.

In addition, the Plan provides that the Rhodes Entities shall be deemed released from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever arising under chapter 5 of the Bankruptcy Code with respect to transfers made by the Debtors to the Rhodes Entities during the 2 years prior to the Petition Date; provided, however, that such release shall only apply to transfers expressly set forth in the Schedules as Filed with the Bankruptcy Court as of August 1, 2009 or as disclosed in Attachment B to the Mediation Term Sheet.

Finally, the Plan provides that, pursuant to Bankruptcy Rule 9019, and except as otherwise specifically provided in the Plan, to the extent a First Lien Lender elects on its Ballot to release the First Lien Lenders in accordance with this Section VIII.F. of the Plan, each of the First Lien Lenders electing to grant such a release, shall be deemed to release each of the other First Lien Lenders that has elected to grant such a release; provided, however, that Claims or liabilities arising out of or relating to any act or omission of any First Lien Lender or any of its affiliates that constitutes gross negligence or willful misconduct shall not be released.

13. **What is the deadline to vote on the Plan?**

**[4:00 p.m.]** (prevailing Pacific Time) on [~~December 18], 2009~~ January 4], 2010.

14. **How do I vote for or against the Plan?**

This Disclosure Statement, accompanied by a Ballot or Ballots to be used for voting on the Plan, is being distributed to the Holders of Claims entitled to vote on the Plan. If you are a Holder of a Claim in the following Classes, you may vote for or against the Plan by completing the Ballot and returning in the manner provided on the Ballot:

- **Class A-1 (First Lien Lender Secured Claims)**
- **Class A-2 (Second Lien Lender Secured Claims)**
- **Class C-1 (General Unsecured Claims)**
- **Class C-2 (First Lien Lender Deficiency Claims)**
- **Class C-3 (Second Lien Lender Deficiency Claims)**

The Debtors, with the approval of the Bankruptcy Court, have engaged Omni Management Group, LLC, Attn: Brian Osborne, 16161 Ventura Blvd. Suite C, PMB 477, Encino, CA 91436, to serve as the Claims and Solicitation Agent. The Claims and

Solicitation Agent will process and tabulate Ballots for each Class entitled to vote to accept or reject the Plan.

The deadline to vote on the Plan is **[4:00 p.m.]**, (prevailing Pacific Time), on [~~December 18], 2009.~~January 4], 2010.

| **BALLOTS** |
|---|
| Ballots must be actually received by the Claims and Solicitation Agent by **[4:00 p.m.]** (prevailing Pacific Time) on [~~December 18~~January 4], ~~2009~~ 2010. Ballots can be sent by hand delivery, mail, fax or email to the following addresses:<br><br>Hand Delivery/Mail:<br>The Rhodes Companies, LLC<br>Omni Management Group<br>Attn: Brian Osborne<br>16161 Ventura Blvd.<br>Suite C, PMB 477<br>Encino, CA 91436<br><br>Fax:<br>(818) 783-2737<br><br>Email:<br>Nova@omnimgt.com<br><br>If you have any questions on the procedure for voting on the Plan, please contact the Claims and Solicitation Agent by telephone at (866) 989-6144 or contact Brian Osborne at bosborne@omnimgmt.com. |

More detailed instructions regarding how to vote on the Plan are contained on the Ballots distributed to Holders of Claims that are entitled to vote on the Plan. For your vote to be counted, your ballot must be completed, signed and received by **[4:00 p.m.]** (prevailing Pacific Time), on [~~December 18~~January 4], ~~2009~~ 2010.

It is important to follow the specific instructions provided on each Ballot. Each Ballot must be completed and returned in the manner indicated on the Ballot.

16
~~16~~