1  Nile Leatham (NV Bar No. 002838)
2  KOLESAR & LEATHAM
   Wells Fargo Financial Center
3  3320 W. Sahara Ave.
   Las Vegas, NV 89102
4  Telephone: 702.979.2357
   Facsimile: 702.362.9472
5  E-Mail:        nleatham@klnevada.com

6
   Philip C. Dublin (NY Bar No. 2959344)
7  Abid Qureshi (NY Bar No. 2684637)
   AKIN GUMP STRAUSS HAUER & FELD LLP
8  One Bryant Park
   New York, NY 10036
9  Telephone: 212.872.1000
10 Facsimile: 212.872.1002

11 E-Mail:    pdublin@akingump.com
              aqureshi@akingump.com
12

13 *Counsel for the First Lien Steering Committee*

14
                UNITED STATES BANKRUPTCY COURT
15                     DISTRICT OF NEVADA
                       SOUTHERN DIVISION
16

17 IN RE:                              §
                                       §
18 THE RHODES COMPANIES, LLC,          §   Case No. 09-14814-LBR
      aka "Rhodes Homes," *et al.*,    §   Jointly Administered
19                                     §
                                       §
20         Debtors.[1]                 §
                                       §
21                                     §
                                       §
22                                     §

---

23      [1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
   number, if applicable, are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060);
24 Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave,
   LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country
25 Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions
   III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and
26 Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090);
   Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC
27 (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited
   Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897);
28 Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

*Electronically Filed*
*December 1, 2009*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

| | |
|---|---|
| Affects: | § |
| ☒ All Debtors | § |
| ☐ Affects the following | § |
| Debtor(s) | § |
| | § |
| | § |

SECOND AMENDED MODIFIED PLAN OF
REORGANIZATION PURSUANT
TO CHAPTER 11 OF THE
BANKRUPTCY CODE FOR THE RHODES
COMPANIES, LLC, ET AL.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................. 1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,
           COMPUTATION OF TIME, AND GOVERNING LAW ............................ 1
    A.    Defined Terms ......................................................................... 1
    B.    Rules of Interpretation ........................................................ 15
    C.    Reference to Monetary Figures ........................................... 16

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS ........................... 16
    A.    Administrative Claims ........................................................ 16
    B.    Priority Tax Claims ............................................................. 17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND
           INTERESTS ......................................................................... 17
    A.    Classification of Claims and Interests ................................. 17
    B.    Treatment of Classes of Claims and Interests ..................... 18
    C.    Class Voting Rights ............................................................ 22
    D.    Bankruptcy Code Section 1111(b) Election ........................ 22
    E.    Acceptance or Rejection of the Plan ................................... 23

ARTICLE IV. PROVISIONS FOR IMPLEMENTATION OF THE PLAN ........... 23
    A.    Substantive Consolidation .................................................. 23
    B.    Sources of Consideration for Plan Distributions ................. 24
    C.    Corporate Existence ............................................................ 25
    D.    Vesting of Assets in the Reorganized Debtors ................... 26
    E.    Cancellation of Equity Securities and Related Obligations ........... 26
    F.    Restructuring Steps and Transfer of Certain Interests to Newco ........... 26
    G.    Restructuring Transactions .................................................. 27
    H.    Corporate Action ................................................................ 28
    I.    Post-Confirmation Property Sales ....................................... 28
    J.    Organizational Documents .................................................. 28
    K.    Effectuating Documents, Further Transactions ................... 28
    L.    Exemption from Certain Transfer Taxes and Recording Fees ........... 29
    M.    Directors and Officers of the Reorganized Debtors ............ 29
    N.    Management and Director Equity Incentive Plan ................ 29
    O.    The Litigation Trust ............................................................ 29
    P.    Preservation of Causes of Action ........................................ 30
    Q.    HOA Board Seats ............................................................... 31
    R.    Licensing ............................................................................ 31
    S.    Transfer of Rhodes Ranch Golf Course ............................. 31
    T.    Cash Payment ..................................................................... 33

iii

U.      Transfer of Arizona Assets ........................................................... 33
V.      Trademarks and Trade Names ..................................................... 34
W.      Self Insured Retention Obligations .............................................. 34
X.      Bond Replacement or Indemnification .......................................... 34
Y.      Stanley Engineering Litigation .................................................... 35

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
         LEASES ............................................................................... 35
A.      Assumption and Rejection of Executory Contracts and Unexpired
        Leases .................................................................................... 35
B.      Cure of Defaults for Assumed Executory Contracts and Unexpired
        Leases .................................................................................... 36
C.      Preexisting Obligations to the Debtors Under Executory Contracts and
        Unexpired Leases ..................................................................... 37
D.      Claims Based on Rejection or Repudiation of Executory Contracts and
        Unexpired Leases ..................................................................... 38
E.      Intercompany Contracts, Contracts, and Leases Entered Into After the
        Petition Date: .......................................................................... 38
F.      Home Sales ............................................................................. 38
G.      Warranties .............................................................................. 38
H.      Modification of Executory Contracts and Unexpired Leases Containing
        Equity Ownership Restrictions ................................................... 38
I.      Modifications, Amendments, Supplements, Restatements, or Other
        Agreements ............................................................................. 38
J.      Reservation of Rights ................................................................ 39
K.      Nonoccurrence of Effective Date ................................................. 39

ARTICLE VI. PROCEDURES FOR RESOLVING DISPUTED CLAIMS ...................... 39
A.      Allowance of Claims .................................................................. 39
B.      Claims Administration Responsibilities ......................................... 39
C.      Estimation of Claims ................................................................. 39
D.      Adjustment to Claims Without Objection ....................................... 40
E.      Time to File Objections to Claims ................................................ 40
F.      Disallowance of Claims .............................................................. 40
G.      Offer of Judgment .................................................................... 41
H.      Amendments to Claims .............................................................. 41

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ................................ 41
A.      Total Enterprise Value for Purposes of Distributions Under the Plan ........... 41
B.      Distributions on Account of Claims Allowed as of the Effective Date ......... 41
C.      Distributions on Account of Claims Allowed After the Effective Date: ....... 41
D.      Delivery of Distributions ............................................................ 43
E.      Claims Paid or Payable by Third Parties. ....................................... 45
F.      Payment of $1.5 Million to First Lien Lenders ................................. 46
G.      General Unsecured Claims Purchase ............................................. 47

ARTICLE VIII. EFFECT OF CONFIRMATION OF THE PLAN ............................... 48

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

A.    Discharge of Claims and Termination of Interests ......................................... 48
B.    Subordinated Claims .................................................................................... 49
C.    Compromise and Settlement of Claims and Controversies ........................... 49
D.    Releases by the Debtors of the Released Parties .......................................... 49
E.    Releases by the Debtors of the Rhodes Entities ........................................... 50
F.    Releases by First Lien Lenders of First Lien Lenders .................................. 50
G.    Exculpation ................................................................................................. 51
H.    Injunction ................................................................................................... 51
I.    Protection Against Discriminatory Treatment .............................................. 52
J.    Setoffs ........................................................................................................ 52
K.    Recoupment ................................................................................................ 52
L.    Release of Liens .......................................................................................... 53
M.    Document Retention .................................................................................... 53
N.    Reimbursement or Contribution .................................................................. 53

ARTICLE IX. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE
            CLAIMS ...................................................................................................... 53
A.    Professional Claims: ................................................................................... 53
B.    Other Administrative Claims ....................................................................... 54

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND
            CONSUMMATION OF THE PLAN .............................................................. 55
A.    Conditions to Confirmation ......................................................................... 55
B.    Conditions Precedent to the Effective Date ................................................. 55
C.    Waiver of Conditions Precedent .................................................................. 56
D.    Effect of Non-Occurrence of Conditions to Consummation ........................ 57
E.    Satisfaction of Conditions Precedent to Confirmation ................................. 57

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE
            PLAN ........................................................................................................... 57
A.    Modification and Amendments .................................................................... 57
B.    Effect of Confirmation on Modifications ..................................................... 58
C.    Revocation or Withdrawal of Plan ............................................................... 58

ARTICLE XII. RETENTION OF JURISDICTION ........................................................... 59

ARTICLE XIII. MISCELLANEOUS PROVISIONS ......................................................... 61
A.    Immediate Binding Effect ........................................................................... 61
B.    Additional Documents ................................................................................. 61
C.    Payment of Statutory Fees .......................................................................... 61
D.    Dissolution of Creditors' Committee ........................................................... 62
E.    Reservation of Rights .................................................................................. 62
F.    Successors and Assigns ............................................................................... 62
G.    Service of Documents: ................................................................................ 62
H.    Term of Injunctions or Stays ....................................................................... 64
I.    Entire Agreement ........................................................................................ 64
J.    Governing Law ............................................................................................ 64

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

v

K.      Exhibits ................................................................................................ 64
L.      Nonseverability of Plan Provisions................................................... 64
M.      Closing of the Chapter 11 Cases ...................................................... 65
N.      Waiver or Estoppel ........................................................................... 65
O.      Conflicts............................................................................................ 65

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

The First Lien Steering Committee proposes the following second amended plan of reorganization for the resolution of outstanding Claims against, and Interests in, The Rhodes Companies, LLC and the other debtors in the above-referenced chapter 11 cases pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101–1532. Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A. of the Plan. Reference is made to the Disclosure Statement, Filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, assets, results of operations, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The First Lien Steering Committee is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN PROVIDES FOR THE SUBSTANTIVE CONSOLIDATION OF ALL OF THE ESTATES FOR ALL PURPOSES ASSOCIATED WITH CONFIRMATION AND DISTRIBUTIONS UNDER THE PLAN.

**ARTICLE I.**
DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW

A.    Defined Terms: As used in the Plan, the capitalized terms below have the following meanings, except as expressly provided or unless the context otherwise requires. Any term used but not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.    Accrued Professional Compensation: At any given moment, all accrued fees and expenses for services rendered by all Professionals through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been Filed for such fees and expenses. To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

2.    Administrative Claim: A Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (c) all fees and charges assessed against the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  Estates pursuant to chapter 123 of the Judicial Code and 28 U.S.C. § 1930; and (d) all
2  requests for compensation or expense reimbursement for making a substantial contribution
in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

3
4      3.    Administrative Claim Bar Date:  The deadline for filing requests for payment
of Administrative Claims, which shall be thirty days after the Effective Date for all other
5  Administrative Claims incurred after the Petition Date through the Effective Date, except
with respect to Professional Claims, which shall be subject to the provisions of Article IX.

6
7      4.    Affidavit of Publication:  An affidavit of a representative or agent of a
publisher of a periodical certifying that notice has been served through publication in the
8  publisher's periodical.

9      5.    Affiliate:  (a) An Entity that directly or indirectly owns, controls, or holds
with power to vote, twenty percent or more of the outstanding voting securities of any of the
10  Debtors, other than an Entity that holds such securities (i) in a fiduciary or agency capacity
without sole discretionary power to vote such securities or (ii) solely to secure a debt, if such
11  Entity has not in fact exercised such power to vote; (b) a corporation twenty percent or more
of whose outstanding voting securities are directly or indirectly owned, controlled, or held
12  with power to vote, by any of the Debtors, or by an Entity that directly or indirectly owns,
13  controls, or holds with power to vote, twenty percent or more of the outstanding voting
securities of any of the Debtors, other than an Entity that holds such securities (i) in a
14  fiduciary or agency capacity without sole discretionary power to vote such securities or (ii)
solely to secure a debt, if such Entity has not in fact exercised such power to vote; (c) an
15  Entity whose business is operated under a lease or operating agreement by any of the
16  Debtors, or an Entity substantially all of whose property is operated under an operating
agreement with any of the Debtors; (d) an Entity that operates the business or substantially
17  all of the property of any of the Debtors under a lease or operating agreement; or (e) the
Debtors' domestic, wholly-owned, direct and indirect subsidiaries that have not commenced
18  cases under chapter 11 of the Bankruptcy Code.

19      6.    Allowed:  With respect to Claims and Interests: (a) any Claim or Interest,
20  proof of which is timely Filed by the applicable Bar Date (or that by the Bankruptcy Code or
Final Order is not or shall not be required to be Filed); (b) any Claim or Interest that is listed
21  in the Schedules as of the Effective Date as not disputed, not contingent, and not
22  unliquidated, and for which no Proof of Claim or Interest has been timely Filed; or (c) any
Claim Allowed pursuant to the Plan; provided, however, that with respect to any Claim or
23  Interest described in clauses (a) or (b) above, such Claim or Interest shall be considered
Allowed only if and to the extent that (x) no objection to the allowance thereof has been
24  interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the
Bankruptcy Rules, or the Bankruptcy Court, (y) such an objection is so interposed and the
25  Claim or Interest shall have been Allowed for distribution purposes only by a Final Order, or
26  (z) the Debtors allow such Claim prior to the Effective Date with the consent of the First
Lien Steering Committee and the Creditors' Committee or the Reorganized Debtors allow
27  such Claim after the Effective Date in their sole and absolute discretion.  Except as
otherwise specified in the Plan or a Bankruptcy Court order, the amount of an Allowed
28  Claim shall not include interest on such Claim from and after the Petition Date.  For

2

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom
2  an amount equal to the amount of any Claim that the Debtors may hold against the Holder
   thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under
3  applicable law.  Any Claim or Interest that has been or is hereafter listed in the Schedules as
4  disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been
   timely Filed, is not considered Allowed and shall be expunged without further action by the
5  Reorganized Debtors and without any further notice to or action, order, or approval of the
   Bankruptcy Court.

6
       7.    Arizona Assets:  The Debtors' homebuilding business in Arizona ("Arizona")
7  that will be transferred to the Rhodes Entities on the Effective Date, through the Rhodes
   Entities' acquisition of the stock of Rhodes Arizona Properties LLC and Elkhorn
8  Investments, Inc., in each case, as reorganized, and certain assets of Rhodes Homes Arizona
9  LLC.

10       8.    Ballot or Ballots:  The ballots upon which Holders of Impaired Claims
   entitled to vote shall cast their vote to accept or reject the Plan.
11
12       9.    Bankruptcy Code:  Title 11 of the United States Code, 11 U.S.C. §§ 101-
   1532, as applicable to the Chapter 11 Cases.
13
14       10.   Bankruptcy Court:  The United States Bankruptcy Court for the District of
   Nevada or any other court having jurisdiction over the Chapter 11 Cases.
15
       11.   Bankruptcy Rules:  The Federal Rules of Bankruptcy Procedure as applicable
16  to the Chapter 11 Cases, promulgated pursuant to section 2075 of the Judicial Code and the
   general, local, and chambers rules and orders of the Bankruptcy Court.
17
18       12.   Bar Date:  August 5, 2009, except as otherwise provided in the Plan or by
   Bankruptcy Court order.
19
20       13.   Beneficial Holder:  The Entity holding the beneficial interest in a Claim or
   Interest.
21
       14.   Business Day:  Any day, other than a Saturday, Sunday, or Legal Holiday.
22
       15.   Cash:  Cash and cash equivalents.
23
       16.   Cash Collateral Order:    The Bankruptcy Court order entitled, "Final
24  Stipulated Order (I) Authorizing Use of Cash Collateral Pursuant to Sections 105, 361, 362,
   and 363 of the Bankruptcy Code and (II) Granting Adequate Protection and Super Priority
25  Administrative Expense Priority to Prepetition Secured Lenders Re Debtors' Motion for
   Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, and 364 of Debtors'
26  Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363 and 364 of the
   Bankruptcy Code (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate
27  Protection to the Debtors' Prepetition Secured Parties and (C) Scheduling a Final Hearing;
   Memorandum of Points and Authorities Filed by Zachariah Larson on Behalf of Heritage
28  Land Company, LLC [Relates to Heritage Docket No. 35]," entered in the Chapter 11 Cases

3

1    on April 30, 2009 [Rhodes Docket No. 126], as amended or extended with the consent of the

2    First Lien Steering Committee, from time to time and in accordance with the terms thereof.

3        17.    Cause of Action:  Any claim, cause of action, controversy, demand, right,

    action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account,

4    defense, offset, power, privilege, license, and franchise of any kind or character whatsoever,

5    known, unknown, contingent or non-contingent, matured or unmatured, suspected or

    unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured,

6    assertable directly or derivatively, whether arising before, on or after the Petition Date, in

7    contract or in tort, in law or in equity, or pursuant to any other theory of law.  Cause of

    Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on

8    contracts or for breaches of duties imposed by law or in equity; (b) the right to object to

9    Claims or Interests; (c) any claim pursuant to sections 362, 510, 542, 543, 544 through 550,

    or 553 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress,

10   and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any

11   state law fraudulent transfer claim; (f) any claim or cause of action of any kind against any

    Released Party or Exculpated Party based in whole or in part upon acts or omissions

12   occurring prior to or after the Petition Date; and (g) any claim listed in Exhibit L to the

    Disclosure Statement.

13       18.    Certificate:  Any instrument evidencing a Claim or an Interest.

14       19.    Chapter 11 Cases:  The chapter 11 bankruptcy cases filed by the Debtors on

15   the Petition Date in the Bankruptcy Court, with case numbers 09-14778-LBR, 09-14861-

    LBR, 09-14825-LBR, 09-14843-LBR, 09-14862-LBR, 09-14837-LBR, 09-14828-LBR, 09-

16   14820-LBR, 09-14865-LBR, 09-14822-LBR, 09-14818-LBR, 09-14860-LBR, 09-14839-

17   LBR, 09-14856-LBR, 09-14848-LBR, 09-14868-LBR, 09-14882-LBR, 09-14846-LBR, 09-

    14844-LBR, 09-14854-LBR, 09-14841-LBR, 09-14814-LBR, 09-14833-LBR, 09-14866-

18   LBR, 09-14817-LBR, 09-14853-LBR, 09-14852-LBR, 09-14850-LBR, 09-14849-LBR, 09-

    14858-LBR, 09-14884-LBR, 09-14887-LBR.

19       20.    Claim:  As defined in section 101(5) of the Bankruptcy Code.

20       21.    Claims and Solicitation Agent:  Omni Management Group, LLC.

21       22.    Claims Objection Deadline:  (i) One year from the Effective Date for all

22   Claims other than the Rhodes Entities Claims; and (ii) sixty days from the Effective Date for

23   the Rhodes Entities Claims.

24       23.    Claims Register:  The official register of Claims and Interests maintained by

    the Claims and Solicitation Agent.

25       24.    Class:  A class of Holders of Claims or Interests as set forth in the Plan.

26       25.    CM/ECF:  The Bankruptcy Court's Case Management and Electronic Case

27   Filing system, which can be accessed at https://ecf.nvb.uscourts.gov/.

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

26.    Confirmation:  The entry of the Confirmation Order, subject to all conditions specified in Article X.A having been satisfied or waived pursuant to Article X.C.

27.    Confirmation Date:  The date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

28.    Confirmation Hearing:  The hearing at which the Confirmation Order is first considered by the Bankruptcy Court.

29.    Confirmation Hearing Notice:  The notice approved in the Solicitation Procedures Order that sets forth in detail the voting and objection deadlines with respect to the Plan.

30.    Confirmation Order:  The order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

31.    Contingent Bond Indemnity Claim:  Any Claim asserted by a bonding company due to a bond being called.

32.    Consummation:  The occurrence of the Effective Date.

33.    Creditor:  A Holder of a Claim.

34.    Creditors' Committee:  The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

35.    Cure:  The distribution in the ordinary course of business as soon as reasonably practicable following the Effective Date of Cash, or such other property as may be ordered by the Bankruptcy Court or agreed upon by the contracting party and (i) the Debtors and the First Lien Steering Committee, or (ii) the Reorganized Debtors in an amount equal to all unpaid monetary obligations under applicable law or such lesser amount as may be agreed upon by the parties, under an executory contract or unexpired lease assumed pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

36.    Cure Bar Date:  The deadline for filing requests for payment of Cure, which shall be the later of: (a) thirty days after the Effective Date or (b) thirty days after the assumption of the applicable executory contract or unexpired lease, unless otherwise ordered by the Bankruptcy Court or agreed to by the First Lien Steering Committee and the counterparty to the applicable executory contract or unexpired lease.

37.    Debtors:  The following Entities:  Heritage Land Company, LLC; The Rhodes Companies, LLC; Rhodes Ranch General Partnership; Tick, LP; Glynda, LP; Chalkline, LP; Batcave, LP; Jackknife, LP; Wallboard, LP; Overflow, LP; Rhodes Ranch Golf and Country Club, LLC; Tuscany Acquisitions, LLC; Tuscany Acquisitions II, LLC; Tuscany Acquisitions III, LLC; Tuscany Acquisitions IV, LLC; Parcel 20 LLC; Rhodes Design and Development Corp.; C&J Holdings Inc.; Rhodes Realty, Inc.; Jarupa LLC;

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

5

1    Elkhorn Investments, Inc.; Rhodes Homes Arizona, LLC; Rhodes Arizona Properties, LLC;
2    Tribes Holdings LLC; Six Feathers Holdings, LLC; Elkhorn Partners, A Nevada Limited
     Partnership; Bravo Inc.; Gung-Ho Concrete, LLC; Geronimo Plumbing, LLC; Apache
3    Framing, LLC; Tuscany Golf Country Club, LLC; and Pinnacle Grading, LLC.

4         38.    Debtors in Possession:   The Debtors, as debtors in possession in the
5    Chapter 11 Cases, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6         39.    Disclosure Statement:  The disclosure statement for the Plan describing the
     Plan, including all exhibits and schedules thereto, that is prepared and distributed in
7    accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy
     Rule 3018, and other applicable law, as may be amended from time to time.
8
9         40.    Disputed:  With respect to any Claim or Interest, (i) any Claim or Interest on
     the Claims Register that is not yet Allowed, (ii) any Claim or Interest that is not yet Allowed
10   pursuant to the terms of the Plan; (iii) any Claim that is not set forth on the Debtors'
     Schedules or (iv) any Claim objected to by the applicable Claims Objection Deadline.
11
12        41.    Disputed Claims Reserve:  The Litigation Trust Interests and distributions in
     respect thereof held in reserve pursuant to Article VII.
13
14        42.    Distribution Agent:   The Reorganized Debtors, or the Entity or Entities
     chosen by the First Lien Steering Committee, to make or to facilitate distributions pursuant
     to the Plan.
15
16        43.    Distribution Date:  The date occurring as soon as reasonably practicable after
     the Effective Date when distributions under the Plan shall commence, but not later than
17   thirty days after the Effective Date, without further Bankruptcy Court order.

18        44.    Distribution Record Date:   The date for determining which Holders of
     Allowed Claims are eligible to receive distributions pursuant to the Plan, which shall be the
19   Confirmation Date or such other date as designated in the Plan or a Bankruptcy Court order.

20        45.    Effective Date:   The date in a notice Filed by the First Lien Steering
21   Committee on or after the eleventh day following entry of an order, in form and substance
     acceptable to the First Lien Steering Committee, by the Bankruptcy Court confirming the
22   Plan and satisfaction of all conditions set forth in Article X.B. of the Plan having been
     satisfied or waived in accordance with the terms of the Plan; provided, however, that the
23   Effective Date shall occur no earlier than January 1, 2010.

24        46.    Entity: As defined in section 101(15) of the Bankruptcy Code.

25        47.    Equity Security:  Any equity security as defined in section 101(16) of the
26   Bankruptcy Code in a Debtor.

27        48.    Equity Security Holder: A Holder of an Interest.

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

49.   Estate:  The bankruptcy estate of any Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

50.   Exculpated Claim:  Any claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan, in each case other than claims for gross negligence, willful misconduct or fraud.

51.   Exculpated Party:  Each of: (i) the Creditors' Committee, the First Lien Steering Committee, the First Lien Lenders and the Second Lien Lenders, and all of their respective current and former officers, directors, members, employees, advisors, attorneys, professionals, consultants, agents, or other representatives, and (ii) the Debtors' current officers, employees, advisors, attorneys, professionals, consultants, agents, or other representatives.

52.   Federal Judgment Rate:  The federal judgment rate of .59%, which was in effect as of the Petition Date.

53.   File:  To file with the Bankruptcy Court in the Chapter 11 Cases, or in the case of Proofs of Claim or Interest, to file with the Claims and Solicitation Agent.

54.   Final Decree:  The decree contemplated under Bankruptcy Rule 3022.

55.   Final Order:  As applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the First Lien Steering Committee or Reorganized Debtors, as appropriate, reserve the right to waive any such appeal or similar conditions of a Final Order.

56.   First Lien Agent:  The current and former agents, arranger, and bookrunner with respect to, or under, the First Lien Credit Agreement.

57.   First Lien Credit Agreement:  The first lien Credit Agreement dated as of November 21, 2005 (as may have been amended from time to time) among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein as Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, and the other Loan Documents (as defined in the First Lien Credit Agreement).

58.   First Lien Lender Claims:  All First Lien Lender Secured Claims and First Lien Lender Deficiency Claims.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

59.    First Lien Lender Secured Claim:  Any Secured Claim for principal or interest under the First Lien Credit Agreement or the SWAP Transaction.

60.    First Lien Lender Deficiency Claim:  Any deficiency Claim arising under the First Lien Credit Agreement.

61.    First Lien Lenders:  (i) The First Lien Agent, (ii) the entities that hold debt under the First Lien Credit Agreement and (iii) the holders of Claims relating to under the SWAP Transaction.

62.    First Lien Steering Committee:    Credit Suisse Asset Management, Candlewood Special Situations Master Fund, Credit Suisse Loan Funding LLC, CypressTree Investment Management, LLP, General Electric Capital Corporation, Highland Capital Management, L.P., and Sorin Capital Management.

63.    General Unsecured Claims:  Any Claim (including any Allowed Rhodes Entities Claims) against any of the Debtors that is not a/n (a) Administrative Claim, (b) Priority Tax Claim, (c) Priority Non-Tax Claim, (d) First Lien Lender Secured Claim, (e) Second Lien Lender Secured Claim, (f) Other Secured Claim, (g) First Lien Lender Deficiency Claim, (h) Second Lien Lender Deficiency Claim, (i) Subordinated Claim, or (j) Intercompany Claim.

64.    Government Bar Date:  September 28, 2009 or, with respect to Rhodes Homes Arizona, LLC, Tuscany Golf Country Club, LLC and Pinnacle Grading, LLC, September 29, 2009.

65.    Heritage Equity Securities:  Members' interests and/or the interests as a noneconomic member in Heritage Land Company, LLC, a Nevada limited liability company.

66.    Holder:  An Entity holding a Claim or Interest, as applicable.

67.    HOA:  A homeowners' association.

68.    Impaired:  With respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

69.    Indemnification Obligation:    A Debtor's obligation under an executory contract or otherwise to indemnify directors, officers, or employees of the Debtors who served in such capacity at any time, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by the Debtors' respective articles of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date, which shall be deemed rejected under the Plan.

70.    Insider:  As defined in section 101(31) of the Bankruptcy Code.

71. **Insured Claim:** A Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy applicable to the Debtors or their businesses.

72. **Intercompany Claim:** A Claim held by a Debtor against another Debtor.

73. **Intercompany Contract:** A contract between two or more Debtors.

74. **Intercompany Interest:** An Interest held by a Debtor.

75. **Interest:** Any: (a) Equity Security, including all issued, unissued, authorized, or outstanding shares of stock together with any warrants, options, or contractual rights to purchase or acquire such Equity Securities at any time and all rights arising with respect thereto and (b) partnership, limited liability company or similar interest.

76. **Interim Compensation Order:** The Bankruptcy Court order entitled, "Order Granting Debtors' Motion for Administrative Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016 Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Re: Docket No. 62]," entered in the Chapter 11 Cases on May 18, 2009 [Rhodes Docket No. 180], as may have been modified by a Bankruptcy Court order approving the retention of the Professionals.

77. **Internal Revenue Code:** Title 26 of the United States Code, 26 U.S.C. §§ 1–9833.

78. **Judicial Code:** Title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

79. **Lien:** As defined in section 101(37) of the Bankruptcy Code.

80. **Litigation Trust:** That certain litigation trust to be created on the Effective Date in accordance with the provisions of Article IV of the Plan and the Litigation Trust Agreement.

81. **Litigation Trust Advisory Board:** The advisory board formed pursuant to the Litigation Trust Agreement.

82. **Litigation Trustee:** The Person designated by the First Lien Steering Committee in consultation with the First Lien Agent, the Second Lien Agent and the Creditors' Committee on or before the Confirmation Date and retained as of the Effective Date to administer the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement, and any successor appointed in accordance with the Litigation Trust Agreement. The identity of the Litigation Trustee shall be disclosed by the First Lien Steering Committee at or prior to the Confirmation Hearing.

83. **Litigation Trust Agreement:** That certain trust agreement, substantially on the terms set forth on Exhibit I to the Disclosure Statement and in form and substance acceptable to the First Lien Steering Committee, in consultation with the First Lien Agent,

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Second Lien Agent, Creditors' Committee and the Debtors, that, among other among other things: (a) establishes and governs the Litigation Trust (including any Litigation Trust Advisory Board or similar oversight committee); and (b) describes the powers, duties, and responsibilities of the Litigation Trustee, the Liquidation Trust Assets, and the distribution of the proceeds thereof.

84.    Litigation Trust Assets:  All Claims and Causes of Action on which the First Lien Lenders do not have a lien and that have not been released pursuant to the Plan or order of the Bankruptcy Court.  The Litigation Trust Assets shall include those set forth on Exhibit G to the Disclosure Statement.

85.    Litigation Trust Beneficiaries:  The Holders of Claims that are to be satisfied, in whole or in part, by post-Effective Date distributions that are to be made by the Litigation Trust.

86.    Litigation Trust Funding Amount:  The amount of $100,000 to be used to initially fund the Litigation Trust, which shall be repaid to the Reorganized Debtors from the first proceeds received by the Litigation Trust.

87.    Litigation Trust Interests:  The beneficial interests in the Litigation Trust to be distributed to certain Holders of Claims in accordance with the terms of the Plan.

88.    Management and Director Equity Incentive Plan:  A post-Effective Date management and director compensation incentive plan intended for certain management, employees, consultants and directors of certain of the Reorganized Debtors.

89.    Master Ballots:  The master ballots upon which the applicable Nominee or other holder of record shall submit on behalf of the Beneficial Holders it represents the votes cast by such Beneficial Holders to accept or reject the Plan.

90.    Mediation Settlement:  The agreement in principle on a comprehensive settlement reached among the Debtors, the First Lien Steering Committee, the Creditors' Committee and the Second Lien Agent during a mediation held in Los Angeles, California on August 17, 24 and 25 of 2009 before the Honorable Richard Neiter.

91.    Mediation Term Sheet:  The document attached as Exhibit 1 to the Plan, which sets forth the terms of the Mediation Settlement.

93.    Newco:  An entity to be newly formed which will be the ultimate holding company of the Reorganized Debtors.

94.    Newco Equity Interests:  The shares of common stock in Newco or limited liability company interests in Newco initially issued and outstanding pursuant to the Plan as of the Effective Date. The Newco Equity Interests may consist of a class of full-voting equity interests (the "Class A-1 Equity Interests") and a separate class of limited-voting equity interests (the "Class A-2 Equity Interests").  To the extent applicable, each First Lien Lender shall have the option to choose to take its New Equity Interests in the form of Class A-1 Equity Interests or Class A-2 Equity Interests.

10

95. **Newco LLC Operating Agreement:** That certain limited liability company operating agreement which will govern Newco and shall be in form and substance acceptable to the First Lien Steering Committee. A draft of the Newco LLC Operating Agreement is attached as Exhibit J to the Disclosure Statement.

96. **Newco Total Enterprise Value:** $99.6 million, which is the midpoint range of the total enterprise value of the Reorganized Debtors set forth in the Disclosure Statement or such amount provided in the Confirmation Order as the total enterprise value of the Reorganized Debtors.

97. **New First Lien Notes:** The term notes issued pursuant to Article IV.B hereof in partial satisfaction of the First Lien Lender Secured Claims, which shall have the terms and conditions described on Exhibit 2 to the Plan.

98. **New First Lien Notes Maturity Date:** The sixth anniversary of the Effective Date.

99. **Nominee:** Any broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other party in whose name securities are registered or held of record on behalf of a Beneficial Holder.

100. **Notice of Confirmation:** That certain notice pursuant to Bankruptcy Rule 3020(c)(2) notifying Holders of Claims and Interests and parties in interest that the Bankruptcy Court has confirmed the Plan.

101. **Old Equity Interests:** All of the Interests in any of the Debtors and any rights, options, warrants, calls, subscriptions or other similar rights or agreements, commitments or outstanding securities obligating the Debtors to issue, transfer or sell any Interests.

102. **Other Secured Claim:** Any Secured Claim, other than a: (i) First Lien Lender Secured Claim; or (ii) Second Lien Lender Secured Claim.

103. **Periodic Distribution Date:** The first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the immediately preceding Periodic Distribution Date.

104. **Permitted Nominee:** Any nominee of a First Lien Lender or Second Lien Lender that such lender has confirmed in writing to the Debtors and the First Lien Agent or Second Lien Agent (as applicable) that it is such lender's nominee for the purpose of distribution of some or all of such lender's distribution hereunder, provided that such nominee shall be an affiliate of such lender.

105. **Person:** As defined in section 101(41) of the Bankruptcy Code.

106. **Petition Date:** March 31, 2009 or, for Tuscany Golf Club, LLC, Pinnacle Grading, LLC and Rhodes Homes Arizona, LLC, April 1, 2009.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

107.    Plan:  This Second Amended Plan of Reorganization for each of the Debtors pursuant to chapter 11 of the Bankruptcy Code either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms of the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

108.    Plan Proponent:  The First Lien Steering Committee.

109.    Pravada:  A Rhodes Homes development located in Mohave County (vicinity of Kingman, Arizona) on approximately 1,312 acres.

110.    Priority Non-Tax Claim:  Any Claim accorded priority in right of payment pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

111.    Priority Tax Claim:  Any Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

112.    Professional:  An Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

113.    Proof of Claim:  A proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

114.    Proof of Interest:  A proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

115.    Qualified Employee:  An employee that satisfies the requirements of Chapter 624.260 of the Nevada Revised Statutes.

116.    Record Date:  November 24, 2009

117.    Reinstated:  (a) Leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Interest so as to leave such Claim Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such

Claim or Interest (other than the Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder.

118.    Rejection Damages Claim:  Any Claim on account of the rejection of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

119.    Rejection Damages Claim Deadline:   The deadline to file a Rejection Damages Claim which shall be thirty days after the later of the Effective Date or the effective date of rejection or repudiation of an executory contract or unexpired lease.

120.    Released Party:  Each of: (a) the First Lien Lenders in their capacity as such; (b) the First Lien Steering Committee; (c) the Second Lien Lenders in their capacity as such; (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entities' predecessors, successors and assigns; (e) the Creditors' Committee and the members thereof in their capacity as such; (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' subsidiaries, affiliates, officers, members, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals; (g) the Debtors' officers, employees (including Thomas Robinson and Joseph Schramm) and Professionals, as of the Petition Date; and (h) Paul Huygens; provided, however, that clause (g) shall not include (i) the Rhodes Entities or their affiliates; (ii) insiders of any of the Rhodes Entities (except as to Thomas Robinson and Joseph Schramm); or (iii) relatives of Rhodes.

121.    Reorganized Debtors:  The Debtors, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

122.    Rhodes:   James M. Rhodes, in his individual capacity and any capacity related to any of the Debtors including, without limitation, as shareholder, general partner, limited partner, agent, officer or principal.

123.    Rhodes Entities:   The following Entities:  Rhodes; Glynda Rhodes; John Rhodes; James M. Rhodes Dynasty Trust I; James M. Rhodes Dynasty Trust II; JMR Children's Irrevocable Educational Trust; Truckee Springs Holdings, Inc.; Sedora Holdings LLC; Gypsum Resources, LLC; Tulare Springs Holdings, Inc.; Escalante-Zion Investments, LLC; HH Trust; Harmony Homes, LLC; Tock, LP; Tapemeasure, LP; Joshua Choya, LLC; American Land Management, LLC; South Dakota Conservancy, LLC; Meridian Land Company, LLC; Yucca Land Company, LLC; Sagebrush Enterprises, Inc.; Rhodes Ranch, LLC; Westward Crossing, LLC; Pinnacle Equipment Rental, LLC; Desert Communities, Inc.; Spirit Underground, LLC; Tropicana Durango Investments, Inc.; Tropicana Durango, Ltd. I; Dirt Investments, LLC; Underground Technologies, LLC; South Dakota Aggregate and Engineering, LLC; Freedom Underground, LLC; Jerico Trust; Canberra Holdings, LLC; Custom Quality Homes, LLC; and Rhodes Ranch Golf, Inc.; and ID Interior Design, LLC.

124.    Rhodes Entities Claims:  Claims asserted by the Rhodes Entities.

125.    Rhodes Entities Release:  As set forth in Article VIII.E hereof.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

126.     Rhodes Ranch Golf Course:   The golf course situated within the Rhodes Ranch master-planned community located in the southwestern Las Vegas valley.

127.     Roll-Up Transaction:   A dissolution or winding up of the corporate existence of a Debtor or Reorganized Debtor under applicable state law or the consolidation, merger, contribution of assets, or other transaction in which a Debtor or Reorganized Debtor merges with or transfers substantially all of its assets and liabilities to another Debtor or Reorganized Debtor, on or after the Effective Date.

128.     Schedules:   The schedules of assets and liabilities, schedules of executory contracts, and statement of financial affairs, as amended from time to time, Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

129.     Second Lien Agent:   The current and former agents, arranger, and bookrunner with respect to, or under, the Second Lien Credit Agreement.

130.     Second Lien Credit Agreement:   The Credit Agreement (as may have been amended from time to time) dated as of November 21, 2005 among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein, as the Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, and the other Loan Documents (as defined in the Second Lien Credit Agreement).

131.     Second Lien Lender Claims:   All Second Lien Lender Secured Claims and Second Lien Lender Deficiency Claims.

132.     Second Lien Lender Secured Claim:   Any Secured Claim on account of the Second Lien Credit Agreement.

133.     Second Lien Lender Deficiency Claim:   Any deficiency Claim arising under the Second Lien Credit Agreement.

134.     Second Lien Lenders:   The Second Lien Agent and the entities that hold debt under the Second Lien Credit Agreement.

135.     Secured:   When referring to a Claim: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan as a Secured Claim.

136.     Securities Act:   The Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law.

137.   Security:  As defined in section 2(a)(1) of the Securities Act.

138.   Servicer:  An agent, servicer, or other authorized representative of Holders of Claims or Interests recognized by the Plan Proponent.

139.   Solicitation Procedures Order:  That certain order entered by the Bankruptcy Court on  approving certain solicitation procedures for solicitation of votes on the Plan.

140.   Stanley Engineering Litigation:   The litigation styled Rhodes Homes Arizona, LLC v. Stanley Consultants, Inc., No. CV2006-011358, currently pending in the Superior Court of Arizona, Maricopa County.

141.   Subordinated Claim:  Any Claim that is subordinated pursuant to section 510 of the Bankruptcy Code.

142.   Supremacy Clause: Paragraph 2 of Article VI of the U.S. Constitution.

144.   SWAP Transaction:  That certain transaction between Credit Suisse International and Heritage Land Company, LLC with Trade Date of December 9, 2005 and CSIN External ID 53095828.

145.   Unclaimed Distribution:  Any distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, presented such check for payment within 120 days of the date of the check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

146.   Uniform Commercial Code:  The Uniform Commercial Code as in effect on the Effective Date, as enacted in the applicable state.

147.   Unimpaired:  With respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

148.   Unsecured Claim:  Any Claim that is not secured by a Lien on property in which the Debtor's Estate has an interest.

149.   U.S. Constitution:  The Constitution of the United States of America.

151.   Voting Deadline:  January 4, 2010.

B.   Rules of Interpretation:

1.   For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference in

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references in the Plan to Articles are references to Articles of the Plan or to the Plan; (f) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) unless otherwise set forth in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (k) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (l) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (m) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

2.    Computation of Time:  In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

C.    Reference to Monetary Figures:  All references in the Plan to monetary figures shall refer to currency of the United States of America.

## ARTICLE II.
### ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.

A.    Administrative Claims:  Each Allowed Administrative Claim shall be paid in full, in Cash, (i) on the later of (a) the Effective Date, (b) the date on which the Bankruptcy Court enters an order allowing such Allowed Administrative Claim or (c) the date on which the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee

16

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

(and in consultation with the First Lien Agent and Second Lien Agent) and the Holder of such Allowed Administrative Claim otherwise agree, and (ii) in such amounts as (a) are incurred in the ordinary course of business by the Debtors, (b) are Allowed by the Bankruptcy Court, (c) may be agreed upon between the Holder of such Allowed Administrative Claim and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), or (d) may otherwise be required under applicable law.   Such Allowed Administrative Claims shall include costs incurred in the operation of the Debtors' businesses after the Petition Date, the allowed fees and expenses of Professionals retained by the Debtors and the Creditors' Committee and the fees due to the United States Trustee pursuant to 28 U.S.C. § 1930.

B.      Priority Tax Claims:  Allowed Priority Tax Claims shall be paid in full, in Cash, upon the later of (a) the Effective Date, (b) the date upon which there is a Final Order allowing such Claim as an Allowed Priority Tax Claim, (c) the date that such Allowed Priority Tax Claim would have been due if the Chapter 11 Cases had not been commenced, or (d) upon such other terms as may be agreed to between the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), and any Holder of an Allowed Priority Tax Claim; provided, however, that the Reorganized Debtors or Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), in lieu of payment in full of Allowed Priority Tax Claims on the Effective Date, may make Cash payments respecting Allowed Priority Tax Claims deferred to the extent permitted by Section 1129(a)(9) of the Bankruptcy Code and, in such event, unless otherwise provided herein, interest shall be paid on the unpaid portion of such Allowed Priority Tax Claim at the Federal statutory rate; provided, further, that deferred Cash payments on account of an Allowed Priority Tax Claim shall be paid quarterly over a period of six years commencing with the quarter after which such Priority Tax Claim has been Allowed.

## ARTICLE III.
### CLASSIFICATION AND TREATMENT
### OF CLAIMS AND INTERESTS

A.      Classification of Claims and Interests:    All Claims and Interests, except Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1.    Class Identification:  Below is a chart assigning each Class a letter and, in some cases, a number for purposes of identifying each separate Class.

| Class | Claim or Interest Type |
|---|---|
| A-1 | First Lien Lender Secured Claims |
| A-2 | Second Lien Lender Secured Claims |
| A-3 | Other Secured Claims |
| B | Priority Non-Tax Claim |
| C-1 | General Unsecured Claims |
| C-2 | First Lien Lender Deficiency Claims |
| C-3 | Second Lien Lender Deficiency Claims |
| C-4 | Subordinated Claims |
| D | Old Equity Interests |
| E | Intercompany Claims |

B.    Treatment of Classes of Claims and Interests:  To the extent a Class contains Allowed Claims or Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below.

1.    Class A-1—First Lien Lender Secured Claims

a.    Classification:  Class A-1 consists of all First Lien Lender Secured Claims.

b.    Impairment and Voting:  Class A-1 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class A-1 is entitled to vote to accept or reject the Plan.

c.    Treatment:  On the Effective Date or such other date as set forth herein, each of the First Lien Lenders (or its Permitted Nominee) shall receive on account of its Secured Claims, (w) its pro rata share of $1.5 million in Cash from the proceeds of the First Lien Lenders' Collateral, (x) its pro rata share of 100% of the New First Lien Notes, and (y) its pro rata share of 100% of the Newco Equity Interests (subject to dilution for any Newco Equity Interests issued pursuant to a Management and Director Equity Incentive Plan).  The $1.5 million payment to the First Lien Lenders shall be allocated and deemed paid to the First Lien Lenders in accordance with Article VII.F. of the Plan.

2.    Class A-2—Second Lien Lender Secured Claims

a.    Classification:  Class A-2 consists of all Second Lien Lender Secured Claims.

18

b. <u>Impairment and Voting</u>: Class A-2 is Impaired by the Plan. Each Holder of an Allowed Claim in Class A-2 is entitled to vote to accept or reject the Plan.

c. <u>Treatment</u>: On the Effective Date, only if the Class of Second Lien Lender Secured Claims votes in favor of the Plan, each of the Second Lien Lenders (or its Permitted Nominee) shall receive its pro rata share of a 50% interest in the Stanley Engineering Litigation, without a reduction on account of the reasonable fees and expenses of Ropes & Gray LLP and local counsel for the Second Lien Agent, subject to an aggregate cap of $500,000, each of which such fees shall be paid in Cash to the Second Lien Agent on the Effective Date. If the Class of Second Lien Lender Secured Claims votes in favor of the Plan, upon final resolution of the Stanley Engineering Litigation, each holder of an Allowed Second Lien Lender Claim will receive its pro rata share of the net proceeds of the Stanley Engineering Litigation. If the Class of Second Lien Lender Secured Claims votes against the Plan, each of the Second Lien Lenders shall receive no recovery on account of such Secured Claims.

3. <u>Class A-3—Other Secured Claims</u>

a. <u>Classification</u>: Class A-3 consists of all Other Secured Claims.

b. <u>Impairment and Voting</u>: Class A-3 is Unimpaired by the Plan. Each Holder of an Allowed Claim in Class A-3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c. <u>Treatment</u>: To the extent not satisfied by the Debtors, pursuant to Bankruptcy Court order, in the ordinary course of business prior to the Effective Date, at the option of the Reorganized Debtors on or after the Effective Date (i) an Allowed Other Secured Claim shall be Reinstated and rendered Unimpaired in accordance with section 1124(2) of the Bankruptcy Code, (ii) a Holder of an Allowed Other Secured Claim shall receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable, (iii) a Holder of an Allowed Other Secured Claim shall receive the Collateral securing both its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (iv) a Holder of an Allowed Other Secured Claim shall receive such treatment as to which such holder and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), otherwise agree.

4. <u>Class B—Priority Non-Tax Claims</u>

a. <u>Classification</u>: Class B consists of all Priority Non-Tax Claims.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

b.      Impairment and Voting: Class B is Unimpaired by the Plan. Each Holder of an Allowed Claim in Class B is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c.      Treatment: Each Holder of an Allowed Priority Non-Tax Claim shall receive Cash in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, unless the Holder of an Allowed Priority Non-Tax Claim and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), otherwise agree.

5.      Class C-1—General Unsecured Claims (including any Allowed Rhodes Entities Claims)

a.      Classification: Class C-1 consists of all General Unsecured Claims including any Allowed Rhodes Entities Claims.

b.      Impairment and Voting: Class C-1 is Impaired by the Plan. Each Holder of an Allowed Claim in Class C-1 is entitled to vote to accept or reject the Plan.

c.      Treatment: On the Effective Date, each Holder of an Allowed General Unsecured Claim (including any Allowed Rhodes Entities Claims) shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of General Unsecured Claims on account of its Allowed Claim.

6.      Class C-2—First Lien Lender Deficiency Claims

a.      Classification: Class C-2 consists of all First Lien Lender Deficiency Claims.

b.      Impairment and Voting: Class C-2 is Impaired by the Plan. Each Holder of an Allowed Claim in Class C-2 is entitled to vote to accept or reject the Plan.

c.      Treatment: On the Effective Date, each Holder of a First Lien Lender Deficiency Claim shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of First Lien Lender Deficiency Claims on account of its Allowed Claim.

7.      Class C-3—Second Lien Lender Deficiency Claims

a.      Classification: Class C-3 consists of all Second Lien Lender Deficiency Claims.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

b.      Impairment and Voting:  Class C-3 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-3 is entitled to vote to accept or reject the Plan.

c.      Treatment:  On the Effective Date, each Holder of an Allowed Second Lien Lender Deficiency Claim shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of Second Lien Lender Deficiency Claims on account of its Allowed Claim.  If the Class of Second Lien Lender Secured Claims votes against the Plan, the distribution of Litigation Trust Interests allocable to the Holders of Second Lien Lender Deficiency Claims shall be subject to the reasonable fees and expenses of Ropes & Gray LLP and local counsel for the Second Lien Agent.

8.      Class C-4—Subordinated Claims

a.      Classification:  Class C-4 consists of all Subordinated Claims.  The First Lien Steering Committee does not believe there are any Subordinated Claims but has created Class C-4 out of an abundance of caution.

b.      Impairment and Voting:  Class C-4 is Impaired by the Plan.  Each Holder of an Interest in Class C-4 is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.      Treatment:   Claims subordinated under applicable law shall not receive any recovery on account of their Claims.

9.      Class D—Old Equity Interests

a.      Classification:  Class D consists of all Old Equity Interests.

b.      Impairment and Voting:  Class D is Impaired by the Plan.  Each Holder of an Interest in Class D is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.      Treatment:  Each holder of an Old Equity Interest shall not be entitled to, and shall not receive or retain any property or interest in property on account of such Old Equity Interest.

10.     Class E—Intercompany Claims

a.      Classification:  Class E consists of all Intercompany Claims.

b.      Impairment and Voting: Class E is Impaired by the Plan.  Each Holder of a Claim in Class E is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.      Treatment:  At the election of the Reorganized Debtors, Intercompany Claims will be (i) reinstated, in full or in part, (ii) resolved through set-off,

distribution, or contribution, in full or in part, or (iii) cancelled and discharged, in full or in part, in which case such discharged and satisfied portion shall be eliminated and the Holders thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such portion under the Plan.

C.    Class Voting Rights:  The voting rights of each Class are as follows.

1.    Classes Entitled to Vote:   The following Classes are Impaired and thus entitled to vote to accept or reject the Plan.

| Classes |
| --- |
| A-1 |
| A-2 |
| C-1 |
| C-2 |
| C-3 |

2.    Presumed Acceptance of Plan:  The following Classes are Unimpaired and deemed to accept the Plan.  Therefore, such Classes are not entitled to vote to accept or reject the Plan and the vote of such Holders of Claims and Interests shall not be solicited.

| Classes |
| --- |
| A-3 |
| B |

3.    Presumed Rejection of Plan:   The following Classes are Impaired and conclusively presumed to reject the Plan.  Therefore, such Classes are not entitled to accept or reject the Plan and the vote of such Holders of Claims or Interests shall not be solicited.

| Class |
| --- |
| C-4 |
| D |
| E |

D.    Bankruptcy Code Section 1111(b) Election:    Bankruptcy Code section 1111(b)(1)(A) authorizes a class of secured claims to elect, by at least two-thirds in amount and more than half in number, to waive any deficiency claim otherwise assertable against the debtor and instead require the debtor to make payments equal to the total amount of the claims, with such payment obligation having a present value equal to the current value of the creditors' collateral.   A section 1111(b) election must be made by a class of secured creditors at or prior to the conclusion of the hearing on the Disclosure Statement.  No class

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1    of Secured Claims made a section 1111(b) election at or prior to the conclusion of the
2    hearing on the Disclosure Statement. Accordingly, Bankruptcy Code section 1111(b) is not
     applicable to the Plan.

3    E.    Acceptance or Rejection of the Plan

4
           1.    Acceptance by Impaired Classes of Claims:  Pursuant to Bankruptcy Code
5    section 1126(c) and except as otherwise provided in Bankruptcy Code section 1126(e), an
     Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar
6    amount and more than one-half in number of the Allowed Claims in such Class actually
7    voting have voted to accept the Plan.

8          2.    Tabulation of Votes on a Consolidated Basis:  The Claims and Solicitation
     Agent will tabulate all votes on the Plan on a consolidated basis for the purpose of
9    determining whether the Plan satisfies Bankruptcy Code section 1129(a)(8) and (10).

10         3.    Cramdown:  The First Lien Steering Committee requests Confirmation of the
11   Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that
     does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The First Lien
12   Steering Committee reserves the right to modify the Plan to the extent, if any, that
13   Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

14         4.    Controversy Concerning Impairment:  If a controversy arises as to whether any
     Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court
15   shall, after notice and a hearing, determine such controversy on or before the Confirmation
16   Date.

17                                  **ARTICLE IV.**
                     PROVISIONS FOR IMPLEMENTATION OF THE PLAN
18
     A.    Substantive Consolidation:  The Plan shall serve as a motion by the First Lien
19   Steering Committee seeking entry of a Bankruptcy Court order substantively consolidating
20   all of the Estates into a single consolidated Estate for all purposes associated with
     Confirmation and distributions to be made under the Plan.

21         If substantive consolidation of all of the Estates is ordered, then on and after the
22   Effective Date, all assets and liabilities of the Debtors shall be treated as though they were
     merged into the Estate of The Rhodes Companies, LLC for all purposes associated with
23   Confirmation and Consummation, and all guarantees by any Debtor of the obligations of any
24   other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee
     thereof by any other Debtor, as well as any joint and several liability of any Debtor with
25   respect to any other Debtor shall be treated as one collective obligation of the Debtors.
     Substantive consolidation shall not affect the legal and organizational structure of the
26   Reorganized Debtors or their separate corporate existences or any prepetition or postpetition
27   guarantees, Liens, or security interests that are required to be maintained under the
     Bankruptcy Code, under the Plan, or in connection with contracts or leases that were
28   assumed or entered into during the Chapter 11 Cases.  All duplicative Claims (identical in
     both amount and subject matter) Filed against more than one of the Debtors shall be

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  automatically expunged so that only one Claim survives against the consolidated Debtors
2  (but in no way shall such surviving Claim be deemed Allowed by reason of this Section).
   Any alleged defaults under any applicable agreement with the Debtors or the Reorganized
3  Debtors arising from substantive consolidation shall be deemed Cured as of the Effective
   Date.
4

5  B.    Sources of Consideration for Plan Distributions:  The Reorganized Debtors shall
6  fund distributions under the Plan with Cash on hand, proceeds from the Mediation
   Settlement, existing assets, and the issuance of the New First Lien Notes and Newco Equity
7  Interests.

8      1.    Newco Equity Interests:  On the Effective Date, but not more than thirty days
9  after the Effective Date for initial distributions on account of Allowed Claims, Newco shall
   issue Newco Equity Interests (based upon the Newco Total Enterprise Value) to the Holders
10 of First Lien Lender Secured Claims.  Each share of Class A-2 Equity Interest will be
   convertible at the option of the holder, exercisable at any time, into one Class A-1 Equity
11 Interest.

12 The economic rights of the Class A-1 Equity Interests and Class A-2 Equity Interests shall
13 be identical.  The Class A-2 Equity Interests will not be entitled to general voting rights, but
   will be entitled to vote on an "as converted" basis (together with the holders of the Class A-1
14 Equity Interests, as a single class) on certain non-ordinary course transactions, including
15 (i) any authorization of, or increase in the number of authorized shares of, any class of
   capital stock ranking equal or senior to the Newco Equity Interests as to dividends or
16 liquidation preference, including additional Newco Equity Interests,  (ii) any amendment to
   the Newco's certificate of incorporation or by-laws, (iii) any amendment to any shareholders
17 agreement, (iv) any sale, lease or other disposition of all or substantially all of the assets of
18 the Reorganized Debtors through one or more transactions, (v) any recapitalization,
   reorganization, consolidation or merger of the Reorganized Debtors, (vi) to the extent that
19 holders of Class A-1 Equity Interests have the right to vote thereon, any issuance or entry
   into an agreement for the issuance of capital stock (or any options or other securities
20 convertible into capital stock) of the Reorganized Debtors, except as may be provided for
21 under any management incentive plan, and (vii) to the extent that holders of Class A-1
   Equity Interests have the right to vote thereon, any redemption, purchase or other acquisition
22 by the Newco of any of its capital stock (except for purchases from employees upon
   termination of employment).
23

24     The Class A-2 Equity Interests will be entitled to a separate class vote on any
   amendment or modification of any rights or privileges of the Class A-2 Equity Interests that
25 does not equally affect the Class A-1 Equity Interests.  In any liquidation, dissolution or
   winding up of the Reorganized Debtors, all assets will be distributed to holders of the
26 Newco Equity Interests on a pro rata basis.

27     a.    Section 1145 Exemption:  Pursuant to section 1145 of the Bankruptcy
   Code, the offering, issuance, and distribution of any Securities contemplated by the
28 Plan and any and all settlement agreements incorporated therein, including the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Newco Equity Interests, shall, to the fullest extent permitted by applicable law, be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities. In addition, under section 1145 of the Bankruptcy Code any Securities contemplated by the Plan, including the Newco Equity Interests and New First Lien Notes, will be freely tradable and transferable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (ii) the restrictions, if any, on the transferability of such Securities and instruments set forth in the Newco LLC Operating Agreement, a draft of which is attached to the Disclosure Statement as Exhibit J; and (iii) applicable regulatory approval.

b.    Issuance and Distribution of the Newco Equity Interests: The Newco Equity Interests, when issued or distributed as provided in the Plan, will be duly authorized, validly issued, and, if applicable, fully paid and nonassessable. Each distribution and issuance shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

2.    New First Lien Notes:  On the Effective Date or as soon as reasonably practicable thereafter, Newco shall issue the New First Lien Notes.  The Reorganized Debtors shall be co-borrowers and guarantors under the New First Lien Notes.  The New First Lien Notes shall have the terms set forth on Exhibit 2 to the Plan and as otherwise provided in the terms of the documents governing the New First Lien Notes.  A draft of the New First Lien Notes credit agreement is attached to the Disclosure Statement as Exhibit K.

3.    Exit Financing: To the extent the board of directors of Newco (or such other governing body) determines that additional financing is necessary for the operation of the Reorganized Debtors' businesses, Newco and/or the Reorganized Debtors may obtain additional financing. The First Lien Steering Committee does not anticipate that additional sources of funding in addition to Cash on hand, the Newco Equity Interests and the New First Lien Notes will be necessary to fund distributions under the Plan on the Effective Date.

C.    Corporate Existence:  Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D.    Vesting of Assets in the Reorganized Debtors:  Except for any Claims or Causes of Action transferred to the Litigation Trust and unless otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.    Cancellation of Equity Securities and Related Obligations:  On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the Old Equity Interests and any other Certificate, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such Certificates, notes, other instruments or documents evidencing indebtedness or obligations of the Debtors that are Reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Old Equity Interests and any other Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements or Certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; provided, however, that notwithstanding Confirmation, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of: (w) allowing Holders to receive distributions under the Plan; (x) allowing a Servicer to make distributions on account of such Claims as provided in the applicable governing agreement; (y) permitting such Servicer to maintain any rights and Liens it may have against property other than the Reorganized Debtors' property for fees, costs, and expenses pursuant to such indenture or other agreement; and (z) governing the rights and obligations of non-Debtor parties to such agreements vis-à-vis each other (including, without limitation, the rights and obligations of non-Debtor parties under the First Lien Credit Agreement and the Second Lien Credit Agreement, which, for the avoidance of doubt, shall not be affected by the Plan except as otherwise expressly provided in the Plan); provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors.  The Reorganized Debtors shall not have any obligations to any Servicer for any fees, costs, or expenses, except as expressly otherwise provided in the Plan.

F.    Restructuring Steps and Transfer of Certain Interests to Newco:  In the event the Rhodes Entities comply with all of their obligations pursuant to the Mediation Settlement and the Plan, on the Effective Date or, in the case of step (4) below, effective the next day, the following transactions shall be deemed to have occurred in the order set forth below.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1      <u>1.</u>      Newco shall be formed as a new limited liability company.  The First Lien
2  Lender Secured Claims shall be deemed to have been exchanged for the membership
   interests in Newco.  Newco shall be deemed to hold all of the First Lien Lender Secured
3  Claims.  At the option of a holder, membership interests in Newco may be transferred to a
   corporation prior to Step 2.
4
5      <u>2.</u>      Newco shall purchase all of the Heritage Equity Securities for $10.00.
6      <u>3.</u>      Contemporaneous with or subsequent to Newco's purchase of the Heritage
   Equity Securities, The Rhodes Companies, LLC - the general partner of each of Tick, LP;
7  Glynda, LP; Jackknife, LP; LP; Batcave, LP; Overflow, LP; Wallboard, LP; and Chalkline,
   LP, --shall sell its general partnership interests in such entities to Newco for $1.00.
8  Alternatively, the membership interest in The Rhodes Companies, LLC may be acquired
   from its sole member – Sagebrush Enterprises, Inc. – in consideration for release of its
9  obligations under the First Lien Lender Secured Claims.
10
11     <u>4.</u>      Newco's members may agree to continue Newco as an LLC,  file a check the
   box election effective the day after the Effective Date to treat Newco as a corporation for tax
12 purposes, or convert into a corporation as of the day after the Effective Date.
13     In any event, to the extent any cancellation of indebtedness is derived from the
   foregoing transactions under the Internal Revenue Code, it shall be allocable to the holders
14 of the Old Equity Interests as required by the Internal Revenue Code.  To be clear, Newco's
   purchase of the Heritage Equity Securities shall occur (a) contemporaneously with or
15 immediately before the membership interests of those entities described in Article IV.F.3,
   immediately above, are acquired; (b) before any debt or obligations of the Debtors are
16 canceled or forgiven; (d) before any new notes are issued or existing debt is modified by the
   Reorganized Debtors; and (e) before any of the other acts or events contemplated in Article
17 III.B, et seq., of the Plan.  The holders of the Heritage Equity Securities and Newco will
   report the sale and purchase of the Heritage Equity Securities in accordance with revenue
18 ruling 99-6, 1991-1 CB 432.
19
20 G.      <u>Restructuring Transactions</u>:    On the Effective Date or as soon as reasonably
   practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or
21 appropriate to effect any transaction described in, approved by, contemplated by, or
   necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate
22 agreements or other documents of merger, consolidation, or reorganization containing terms
   that are consistent with the terms of the Plan and that satisfy the requirements of applicable
23 law; (2) the execution and delivery of appropriate instruments of transfer, assignment,
   assumption, or delegation of any property, right, liability, duty, or obligation on terms
24 consistent with the terms of the Plan; (3) the filing of appropriate certificates of
   incorporation, merger, or consolidation with the appropriate governmental authorities
25 pursuant to applicable law; (4) the Roll-Up Transactions; (5) the establishment of a
   liquidation trust or other appropriate vehicle to hold assets for sale that will not be utilized in
26 the business of the Reorganized Debtors; and (6) all other actions that the Reorganized
27 Debtors determine are necessary or appropriate, including the making of filings or
28 recordings in connection with the relevant Roll-Up Transactions.  The form of each Roll-Up

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  Transaction shall be determined by the Reorganized Debtor that is party to such Roll-Up
2  Transaction. Implementation of the Roll-Up Transactions shall not affect any distributions, discharges, exculpations, releases, or injunctions set forth in the Plan.

3  H.     Corporate Action: Each of the matters provided for by the Plan involving the
4  corporate structure of the Debtors or corporate or related actions to be taken by or required of the Reorganized Debtors shall, as of the Effective Date, be deemed to have occurred and
5  be effective as provided in the Plan (except to the extent otherwise indicated), and shall be
6  authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Holders of Claims or Interests,
7  directors of the Debtors, or any other Entity. Without limiting the foregoing, such actions
8  may include: the adoption and filing of the Newco LLC Operating Agreement; the adoption and filing of organization documents of the other Reorganized Debtors; the appointment of
9  directors and officers for the Reorganized Debtors; and the adoption, implementation, and amendment of the Management and Director Equity Incentive Plan.

10
11  I.     Post-Confirmation Property Sales: To the extent the Reorganized Debtors sell any of their property prior to or including the date that is one year after Confirmation, the
12  Reorganized Debtors may elect to sell such property pursuant to sections 363, 1123, and 1146(a) of the Bankruptcy Code.

13
14  J.     Organizational Documents: The certificates of incorporation and bylaws (or other formation documents relating to limited liability companies, limited partnerships or other
15  forms of Entity) of the Debtors shall be in form and substance acceptable to the First Lien Steering Committee and shall be consistent with the provisions of the Plan and the
16  Bankruptcy Code. The Newco LLC Operating Agreement shall be in form and substance acceptable to the First Lien Steering Committee. The organizational documents for Newco
17  shall, among other things: (1) authorize issuance of the Newco Equity Interests; and (2)
18  pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting Equity Securities. On or as soon
19  as reasonably practicable after the Effective Date, to the extent required, each of the Reorganized Debtors shall file new certificates of incorporation (or other formation
20  documents relating to limited liability companies limited partnerships, or other forms of Entity) in form and substance acceptable to First Lien Steering Committee, with the
21  secretary (or equivalent state officer or Entity) of the state under which each such
22  Reorganized Debtor is or is to be incorporated or organized. On or as soon as reasonably practicable after the Effective Date, to the extent required, Newco shall file the applicable
23  organizational documents with the secretary (or equivalent state officer or Entity) of the
24  state under which Newco is to be incorporated or organized. After the Effective Date, each Reorganized Debtor may amend and restate its new certificate of incorporation and other
25  constituent documents as permitted by the relevant state corporate law.

26  K.     Effectuating Documents, Further Transactions: On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors (or other
27  governing bodies) thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and
28  take such actions as may be necessary or appropriate to effectuate, implement, and further

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan
2  in the name of and on behalf of the Reorganized Debtors, without the need for any
   approvals, authorizations, or consents except for those expressly required pursuant to the
3  Plan.

4  L.      Exemption from Certain Transfer Taxes and Recording Fees: Pursuant to section
   1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to
5  any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to:
6  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other
   interest in the Debtors or the Reorganized Debtors; (2) the creation, modification,
7  consolidation, or recording of any mortgage, deed of trust, or other security interest, or the
   securing of additional indebtedness by such or other means; (3) the making, assignment, or
8  recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or
   other instrument of transfer under, in furtherance of, or in connection with, the Plan,
9  including any deeds, bills of sale, assignments, or other instrument of transfer executed in
10 connection with any transaction arising out of, contemplated by, or in any way related to the
   Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee,
11 intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax,
   Uniform Commercial Code filing or recording fee, or recording fee, or other similar tax or
12 governmental assessment, and the appropriate state or local governmental officials or agents
13 shall forego the collection of any such tax or governmental assessment and to accept for
   filing and recordation any of the foregoing instruments or other documents without the
14 payment of any such tax or governmental assessment.

15 M.      Directors and Officers of the Reorganized Debtors: On the Effective Date, the
16 board of directors of the Reorganized Debtors or similar governing entities shall be
   composed of one or more members appointed by the First Lien Steering Committee. On the
17 Effective Date, a chief executive officer or similar officer selected by the board of directors
   of the Reorganized Debtors shall be appointed. The identity of such officers and directors
18 shall be disclosed at or prior to the Confirmation Hearing.

19 N.      Management and Director Equity Incentive Plan: The Reorganized Debtors reserve
20 the right to implement a Management and Director Equity Incentive Plan. The terms and
   conditions of any Management and Director Equity Incentive Plan shall be determined by
21 the Board of Directors of Newco.

22 O.      The Litigation Trust: On the Effective Date, the Litigation Trust will be
23 implemented pursuant to the terms of the Litigation Trust Agreement. A draft of the
   Litigation Trust Agreement is attached to the Disclosure Statement as Exhibit I. On the
24 Effective Date, pursuant to the terms of the Litigation Trust Agreement, the Debtors will
   transfer the Litigation Trust Assets for and on behalf of the Litigation Trust Beneficiaries,
25 which will be the Holders of Allowed Claims in Classes C-1, C-2 and C-3. For all federal
26 income tax purposes, the beneficiaries of the Litigation Trust shall be treated as grantors and
   owners thereof and it is intended that the Litigation Trust be classified as a liquidating trust
27 under Section 301.7701-4 of the Treasury Regulations and that such trust is owned by its
   beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Litigation
28 Trust Beneficiaries be treated as if they had received a distribution of an undivided interest