AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1   in the Litigation Trust Assets and then contributed such interests to the Litigation Trust.  The
2   Litigation Trust will initially be funded with $100,000, which amount will be transferred to
    the Litigation Trust on the Effective Date and which will be repaid to the Reorganized
3   Debtors from the first proceeds received by the Litigation Trust.

4          The Litigation Trust shall issue non-transferable interests to Holders of Allowed First
    Lien Lender Deficiency Claims, Allowed Second Lien Lender Deficiency Claims, and
5   Allowed General Unsecured Claims (including any Allowed Rhodes Entities Claims) with
    each Holder of an Allowed Claim in each of the foregoing Classes of Claims receiving its
6   pro rata share of the Litigation Trust Interests allocable to each such Class of Claims.

7          A list of Litigation Trust Assets is attached to the Disclosure Statement as Exhibit G.
8   The Litigation Trust Assets shall include all Claims existing against the Rhodes Entities that
    are not expressly released under the Plan.
9
10  P.     Preservation of Causes of Action:  In accordance with section 1123(b) of the
    Bankruptcy Code, except as otherwise provided in the Plan, the Reorganized Debtors and
11  the Litigation Trust shall retain and may enforce all rights to commence and pursue, as
    appropriate, any and all Causes of Action, whether arising before or after the Petition Date,
12  including any actions specifically enumerated on Exhibit L to the Disclosure Statement, and
13  the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action
    shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized
14  Debtors and the Litigation Trust, as applicable, may pursue such Causes of Action, as
    appropriate, in accordance with the best interests of the Reorganized Debtors and the
15  Litigation Trust, as applicable.  **No Entity may rely on the absence of a specific reference
16  in the Plan or the Disclosure Statement to any Cause of Action against them as any
    indication that the Debtors, Reorganized Debtors or the Litigation Trust, as applicable,
17  will not pursue any and all available Causes of Action against them.  The Reorganized
    Debtors and the Litigation Trust, as applicable, expressly reserve all rights to
18  prosecute any and all Causes of Action against any Entity, except as otherwise
19  expressly provided in the Plan.**  Unless any Causes of Action against an Entity are
    expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or
20  a Bankruptcy Court order, the Reorganized Debtors and the Litigation Trust, as applicable,
    expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion
21  doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim
22  preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes
    of Action upon, after, or as a consequence of Confirmation or the occurrence of the
23  Effective Date.

24         The Reorganized Debtors and the Litigation Trust, as applicable, reserve and shall
25  retain the foregoing Causes of Action notwithstanding the rejection or repudiation of any
    executory contract or unexpired lease during the Chapter 11 Cases or pursuant to the Plan.
26  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a
    Debtor may hold against any Entity shall vest in the Reorganized Debtors and the Litigation
27  Trust, as the case may be, on the Effective Date.  The applicable Reorganized Debtor and
    the Litigation Trust, as applicable, through its authorized agents or representatives, shall
28  retain and may exclusively enforce any and all such Causes of Action belonging to it.  The

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1   Reorganized Debtors and the Litigation Trust, as applicable, shall have the exclusive right,
2   authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle,
    compromise, release, withdraw, or litigate to judgment any such Causes of Action and to
3   decline to do any of the foregoing without the consent or approval of any third party or
    further notice to or action, order, or approval of the Bankruptcy Court.   Neither the
4   Litigation Trust nor the Reorganized Debtors shall commence any litigation against the
    Rhodes Entities until the Bankruptcy Court rules on the allowance of the Rhodes Entities
5   Claims set forth in Proofs of Claim, included in the Debtors' Schedules or otherwise set
6   forth in the Mediation Term Sheet.  To the extent any statute of limitations to pursue any
    claims belonging to the Debtors against the Rhodes Entities would lapse from the execution
7   date of the Mediation Term Sheet through the Bankruptcy Court's resolution of the
    allowance of the Rhodes Entities Claims, the Rhodes Entities shall be deemed to have
8   consented to an extension of the applicable statute of limitations until sixty days following
9   the Bankruptcy Court's ruling on the allowance of the Rhodes Entities Claims.   The
    Litigation Trust shall have no liability to any entity for any Claims or Causes of Action it
10  determines not to pursue.

11  Q.      HOA Board Seats:  The Rhodes Entities shall ensure that designees identified by the
12  Reorganized Debtors shall replace the Rhodes Entities on any HOA boards that in any way
    are related to the Debtors, Reorganized Debtors or their businesses and Declarant rights or
13  the like shall be transferred to the Reorganized Debtors or their designee(s).

14  R.      Licensing:  The Rhodes Entities shall take commercially reasonable steps and/or
15  enter into any agreements or similar documentation reasonably necessary to ensure the
    Reorganized Debtors' continued use of all of the Debtors' applicable professional licenses at
16  no cost to the Rhodes Entities for a period of up to twelve months following the Effective
    Date.    To the extent, Sagebrush Enterprises, Inc. shall have rescinded by September 25,
17  2009 its revocation of its indemnity of the Nevada contractors' license held by Rhodes
18  Design & Development Corporation and such rescission did not negatively affect the
    general contractor's license held by Rhodes Design & Development Corporation, Sagebrush
19  shall be entitled to file an Administrative Claim on behalf of any and all claims asserted
20  against Sagebrush as a result of Sagebrush being the indemnitor that arose from and after the
    effectiveness of Sagebrush's recission of its indemnity through the Effective Date, provided
21  that the allowance of such Administrative Claim shall be subject to resolution by the
22  Bankruptcy Court and/or such other court(s) of competent jurisdiction.  The Reorganized
    Debtors shall indemnify Sagebrush for any and all claims asserted against Sagebrush as a
23  result of Sagebrush being the indemnitor that arise from and after the Effective Date.
    Professional licenses include, but are not limited to the Nevada State Contractor's Board
24  license, and any other general business or similar licenses in any county, state, municipality
    or other jurisdiction in which the Reorganized Debtors conduct business or own assets as of
25  the Effective Date.  The Rhodes Entities shall use commercially reasonable efforts to
26  maintain third party agreements with their real estate brokers and sales agents.

27  S.      Transfer of Rhodes Ranch Golf Course:  On the Effective Date, the applicable
    Rhodes Entities shall transfer their equity interests in the entity that owns the Rhodes Ranch
28  Golf Course to the Reorganized Debtors (together with any equipment, golf carts, contracts
    or other assets determined by the First Lien Steering Committee to be necessary for the

operation of the Rhodes Ranch Golf Course) pursuant to the terms of a stock transfer agreement in form and substance acceptable to the First Lien Steering Committee and Rhodes, subject to any outstanding third party debt on the Rhodes Ranch Golf Course. The stock transfer agreement shall contain representations by the Rhodes Entities that the entity that owns the Rhodes Ranch Golf Course does not have any liabilities other than ordinary course liabilities related to the Rhodes Ranch Golf Course and indemnification provisions in favor of the Reorganized Debtors by the Rhodes Entities for any non-ordinary course liabilities. In addition, prior to the deadline for filing objections to the Disclosure Statement, the Rhodes Entities shall provide the First Lien Steering Committee with a list of all liabilities of the entity that owns the Rhodes Ranch Golf Course, a lien analysis and copies of all contracts related to the Rhodes Ranch Golf Course and to which the entity that owns the Rhodes Ranch Golf Course is a party, each of which must be acceptable to the First Lien Steering Committee. Pursuant to the stock and asset transfer agreement governing the transfer of the equity in the entity that owns the Rhodes Ranch Golf Course to the Reorganized Debtors, the entity that owns the Rhodes Ranch Golf Course post-Effective Date shall agree to indemnify James Rhodes for any ordinary course liability first incurred post-Effective Date by such entity under any contract related to the operation of the Rhodes Ranch Golf Course for which James Rhodes has provided a personal guaranty.

The existing $5.9 million third party debt outstanding on the Rhodes Ranch Golf Course shall be refinanced on or before the Effective Date, for a period of no less than twelve (12) months from the Effective Date, on terms and conditions acceptable to Rhodes and the First Lien Steering Committee. The parties will work together in good faith to refinance the existing third party debt. Upon obtaining a final commitment for refinancing for the Rhodes Ranch Golf Course, the First Lien Steering Committee will disclose such terms in a filing with the Bankruptcy Court. The $2.4 million loan by James Rhodes to the entity that owns the Rhodes Ranch Golf Course will be contributed by James Rhodes to the entity that owns the Rhodes Ranch Golf Course and he will indemnify the Debtors, the Reorganized Debtors, Newco and the entity that owns the Rhodes Ranch Golf Course from any liability arising from the contribution of such loan.

The Reorganized Debtors shall pay the reasonable costs and expenses associated with the refinancing; provided, that the terms of such refinancing are acceptable to the First Lien Steering Committee. The First Lien Steering Committee acknowledges that the loan documentation may provide that, upon the transfer of the Rhodes Ranch Golf Course to the Reorganized Debtors on the Effective Date, additional collateral from the Reorganized Debtors may be required. The Rhodes Entities shall transfer to the Reorganized Debtors on the Effective Debt any contracts related to the operation of and revenue generated by any cell towers located on the property of the Rhodes Ranch Golf Course. Any funds received after July 31, 2009 from the Las Vegas Valley Water District or other similar entity as an incentive for converting the golf course from a green course to a desert course shall be used for operating expenses associated with the Rhodes Ranch Golf Course, with any excess to become property of the Reorganized Debtors on the Effective Date.

Rhodes and/or his designee shall have the absolute right to repurchase the Rhodes Ranch Golf Course from the Reorganized Debtors at eight (8) years from the Effective Date for $5.9 million in cash. The Reorganized Debtors may require Rhodes to purchase the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Rhodes Ranch Golf Course any time between four (4) and eight (8) years from the Effective Date for $5.9 million in cash provided that the Reorganized Debtors shall provide Rhodes with at least one year advance notice of its intent to sell the Rhodes Ranch Golf Course back to Rhodes. Such transfer shall occur on the applicable anniversary date of the Effective Date. For the avoidance of doubt, if the Reorganized Debtors put the Rhodes Ranch Golf Course to Rhodes in accordance with the terms hereof and Rhodes fails to comply with his obligation to purchase the Rhodes Ranch Golf Course, Rhodes shall be deemed to have forfeited his option to purchase the Rhodes Ranch Golf Course.

On the Effective Date, Rhodes's obligations to comply with the repurchase shall be secured by either (i) $500,000 in cash in an escrow account or (ii) property worth at least $2 million (the "Golf Course Security Property"), with the value of such property to be agreed to by Rhodes and the First Lien Steering Committee or otherwise valued by an independent third party appraisal firm acceptable to both Rhodes and the First Lien Steering Committee (except Cushman Wakefield). In the event that Rhodes does not meet the repurchase request, provided that the Rhodes Ranch Golf Course is in the standard condition (defined below), then the Reorganized Debtors shall be entitled to liquidated damages in the form of security pledged (i.e., the $500,000 or the Golf Course Security Property).

So long as Rhodes has not defaulted on his obligation to repurchase the Rhodes Ranch Golf Course, Rhodes shall have the absolute and sole discretion to replace the Golf Course Security Property with $500,000 in cash on 30 days written notice to the Reorganized Debtors. Upon deposit of the $500,000 in cash, the Golf Course Security Property shall be released to Rhodes or his designee. Notwithstanding anything to the contrary contained herein, if the Rhodes Ranch Golf Course is not maintained with substantially the same performance and rating criteria at the time of the repurchase request as verified by an independent third party rating agency as it was on the Effective Date ("Standard Condition"), James Rhodes can (i) require the Reorganized Debtors to cure any conditions to return the Rhodes Ranch Golf Course to its Standard Condition (provided, that the cost of such cure does not exceed $500,000), or (ii) choose not to purchase the Rhodes Ranch Golf Course. Upon either the repurchase of the Rhodes Ranch Golf Course or the written decision to not repurchase the Rhodes Ranch Golf Course (in accordance with the preceding sentence), the Golf Course Security Property or the $500,000 Cash (if not applied to the repurchase of the Rhodes Ranch Golf Course) shall be returned to Rhodes within 30 days.

On the Effective Date, the Reorganized Debtors shall record a memorandum of agreement against the Rhodes Ranch Golf Course to evidence the above.

T.    Cash Payment: The Rhodes Entities shall make a cash payment to the Reorganized Debtors of $3.5 million in Cash on the Effective Date. The $3.5 million cash payment shall be used to fund distributions under the Plan and provide working capital to the extent of any excess.

U.    Transfer of Arizona Assets: On the Effective Date, pursuant to a stock and asset transfer agreement, a draft of which is attached to the Disclosure Statement as Exhibit M, the Debtors shall transfer Pravada and the other Arizona Assets set forth on Attachment D to

the Mediation Term Sheet, plus the Golden Valley Ranch tradename to the Rhodes Entities free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code; provided, that the non-First Lien Lender/Second Lien Lender liens do not exceed $60,000; provided, further, that such assets shall not include assets owned by Pinnacle Grading located in Arizona and related contracts associated with the assets. **All Claims asserted against the Arizona Assets shall be deemed asserted against the Estates and shall be classified in accordance with Article III hereof for distribution purposes.** The Arizona Assets shall be transferred through the Rhodes Entities' acquisition of the stock of Rhodes Arizona Properties LLC and Elkhorn Investments, Inc., in each case, as reorganized, and certain assets of Rhodes Homes Arizona LLC. Any non-real property assets or assets not listed on Attachment D to the Mediation Term Sheet that are titled in Rhodes Arizona Properties LLC or Elkhorn Investments, Inc. shall be transferred to Newco pursuant to the stock and asset transfer agreement. To the extent any real property assets located in Arizona are titled in any Debtor other than Rhodes Arizona Properties LLC, Elkhorn Investments, Inc. or Rhodes Homes Arizona, such real property assets shall be transferred to the Rhodes Entities pursuant to the stock and asset transfer agreement. All intercompany claims assertable by Rhodes Arizona Properties LLC or Elkhorn Investments, Inc. against any other Debtor shall be deemed cancelled.

The Debtors shall provide James Rhodes notice of any proposed sale of the Pinnacle assets, and James Rhodes shall be granted a right to bid on the sale of such assets within 10 days of such notice. The Rhodes Entities shall permit storage of Pinnacle Grading equipment at current locations at no cost to the Reorganized Debtors for a period through six months following the Effective Date.

All executory contracts and unexpired leases associated solely with Arizona shall be assumed and assigned to the Rhodes Entities (or their designee), at no cost to the Debtors or the Reorganized Debtors and all cure costs associated therewith shall be borne by the Rhodes Entities.

V.    Trademarks and Trade Names:  Within the earlier of thirty (30) days following: (i) upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E to the Mediation Term Sheet.

W.    Self Insured Retention Obligations:  The Reorganized Debtors shall indemnify subcontractors that are obligated under any of the Reorganized Debtors' existing insurance policies for any post-Effective Date self insured retention obligations paid and/or to be paid by such subcontractors pursuant to such existing insurance policies.

X.    Bond Replacement or Indemnification:  Those performance bonds guaranteed by the Rhodes Entities in favor of the Debtors shall be replaced on a renewal date by new performance bonds. In the alternative, subject to the Rhodes Entities being reasonably satisfied with the creditworthiness of the Reorganized Debtors, which shall be satisfied solely as of the Effective Date by the Court finding that the Plan is feasible, the existing

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

performance bonds guaranteed by the Rhodes Entities and such guarantees shall remain in place. The applicable Rhodes Entity's agreement to remain a guarantor under the existing performance bonds as such performance bonds may be renewed shall be at no cost to the Rhodes Entities (including, but not limited to, the payment of bond premiums). In the event the Reorganized Debtors fail to perform their obligations underlying such renewed performance bonds after the Effective Date, the Reorganized Debtors will indemnify the Rhodes Entities under such outstanding performance bonds for damages incurred by the Rhodes Entities on account of their guarantee of such performance bonds solely as a result of the Reorganized Debtors' failure to perform such obligations subsequent to the Effective Date. The Reorganized Debtors shall use commercially reasonable efforts to replace all outstanding performance bonds backstopped by Rhodes Entities within 30 months of the Effective Date. The Bankruptcy Court shall retain jurisdiction to resolve any disputes arising out of this paragraph.

Contingent Bond Indemnity Claims will be released in the ordinary course of business as time passes or as work on the underlying project is completed. To the extent that a Contingent Bond Indemnity Claim becomes an Allowed or estimated Claim, such Contingent Bond Indemnity Claim shall be treated as a General Unsecured Claim.

Y.    Stanley Engineering Litigation   In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent, assuming the Class of Second Lien Lender Secured Claims votes in favor of the Plan, shall engage in good faith negotiations to ensure that the Second Lien Lenders receive consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration. In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation).

## ARTICLE V.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases:  Except as otherwise provided in the Plan, the Debtors' executory contracts or unexpired leases not assumed or rejected pursuant to a Bankruptcy Court order prior to the Effective Date shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, except for those executory contracts or unexpired leases: (1) listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" attached to the Disclosure Statement as Exhibit N; (2) that are Intercompany Contracts, in which case such Intercompany Contracts are deemed automatically assumed by the applicable Debtor as of the Effective Date, unless such Intercompany Contract previously was rejected by the Debtors pursuant to a Bankruptcy Court order, is the subject of a motion to reject pending on the Effective Date; (3) that are the subject of a motion to assume or reject pending on the Effective Date (in

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  which case such assumption or rejection and the effective date thereof shall remain subject
2  to a Bankruptcy Court order); (4) that are subject to a motion to reject with a requested
3  effective date of rejection after the Effective Date; or (5) that are otherwise expressly
   assumed or rejected pursuant to the Plan. Entry of the Confirmation Order shall constitute a
   Bankruptcy Court order approving the assumptions or rejections of such executory contracts
4  or unexpired leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the
5  Bankruptcy Code. Unless otherwise indicated, all assumptions or rejections of such
   executory contracts and unexpired leases in the Plan are effective as of the Effective Date.
6  Each such executory contract and unexpired lease assumed pursuant to the Plan or by
7  Bankruptcy Court order but not assigned to a third party prior to the Effective Date shall
   revest in and be fully enforceable by the applicable contracting Reorganized Debtor in
8  accordance with its terms, except as such terms may have been modified by such order.
9  Notwithstanding anything to the contrary in the Plan, the Plan Proponent and the
   Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement
10 the schedules of executory contracts or unexpired leases identified in Exhibit N to the
   Disclosure Statement at any time through and including fifteen days after the Effective Date.
11 All executory contracts and unexpired leases associated solely with the Arizona Assets shall
   be assumed and assigned to the Rhodes Entities (or their designee) to the extent set forth on
12 the schedule of Assumed Executory Contracts and Unexpired Leases attached to the
13 Disclosure Statement as Exhibit N, at no cost to the Debtors or the Reorganized Debtors and
   all Cure costs associated with such scheduled Arizona contracts or leases shall be borne by
14 the Rhodes Entities.

15    B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases:  With
   respect to each of the Debtors' executory contracts or unexpired leases listed on the schedule
16 of "Assumed Executory Contracts and Unexpired Leases," the Plan Proponent shall have
   designated a proposed Cure, and the assumption of such executory contract or unexpired
17 lease may be conditioned upon the disposition of all issues with respect to Cure. Any
18 provisions or terms of the Debtors' executory contracts or unexpired leases to be assumed
   pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by
19 Cure, or by an agreed-upon waiver of Cure. Except with respect to executory contracts and
   unexpired leases in which the Plan Proponent or the Debtors, with the consent of the First
20 Lien Steering Committee, and the applicable counterparties have stipulated in writing to
21 payment of Cure, all requests for payment of Cure that differ from the amounts proposed by
   the Debtors must be Filed with the Court on or before the Cure Bar Date. Any request for
22 payment of Cure that is not timely Filed shall be disallowed automatically and forever
23 barred from assertion and shall not be enforceable against any Reorganized Debtor, without
   the need for any objection by the Reorganized Debtors or further notice to or action, order,
24 or approval of the Bankruptcy Court, and any Claim for Cure shall be deemed fully satisfied,
   released, and discharged upon payment by the Debtors of the amounts listed on the proposed
25 Cure schedule, notwithstanding anything included in the Schedules or in any Proof of Claim
26 to the contrary; provided, however, that nothing shall prevent the Reorganized Debtors from
   paying any Cure despite the failure of the relevant counterparty to File such request for
27 payment of such Cure. The Reorganized Debtors also may settle any Cure without further
   notice to or action, order, or approval of the Bankruptcy Court.

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1       If the Debtors or Reorganized Debtors, as applicable, or First Lien Steering
2   Committee object to any Cure or any other matter related to assumption, the Bankruptcy
3   Court shall determine the Allowed amount of such Cure and any related issues. If there is a
    dispute regarding such Cure, the ability of the Reorganized Debtors or any assignee to
4   provide "adequate assurance of future performance" within the meaning of section 365 of
    the Bankruptcy Code, or any other matter pertaining to assumption, then Cure shall occur as
5   soon as reasonably practicable after entry of a Final Order resolving such dispute, approving
    such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors
6   with the consent of the First Lien Steering Committee, or the Reorganized Debtors and the
    counterparty to the executory contract or unexpired lease. Any counterparty to an executory
7   contract and unexpired lease that fails to object timely to the proposed assumption of any
    executory contract or unexpired lease will be deemed to have consented to such assumption.
8   The Debtors, with the consent of the First Lien Steering Committee, or the Reorganized
9   Debtors, as applicable, reserve the right either to reject or nullify the assumption of any
    executory contract or unexpired lease no later than thirty days after a Final Order
10  determining the Cure or any request for adequate assurance of future performance required
11  to assume such executory contract or unexpired lease.

12      Assumption of any executory contract or unexpired lease pursuant to the Plan or
    otherwise shall result in the full release and satisfaction of any Claims or defaults, whether
13  monetary or nonmonetary, including defaults of provisions restricting the change in control
    or ownership interest composition or other bankruptcy-related defaults, arising under any
14  assumed executory contract or unexpired lease at any time prior to the effective date of
15  assumption. Any Proofs of Claim Filed with respect to an executory contract or unexpired
    lease that has been assumed shall be deemed disallowed and expunged, without further
16  notice to or action, order, or approval of the Bankruptcy Court.

17      All Cure costs associated with Executory Contracts related to the Arizona Assets
18  shall be borne by the Rhodes Entities.

19  C.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired
    Leases: Rejection or repudiation of any executory contract or unexpired lease pursuant to
20  the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to
    the Debtors under such contracts or leases.    In particular, notwithstanding any
21  nonbankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not
22  waive any right to receive, or any continuing obligation of a counterparty to provide,
    insurance coverage, utilitiy services, warranties, indemnity, guarantee of workmanship, or
23  continued maintenance obligations on goods or services previously purchased by the
    contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected
24  or repudiated executory contracts. The Reorganized Debtors expressly reserve and do not
25  waive the right to receive coverage under any past insurance policy to extent that coverage
    has not expired under the terms of the insurance policy, regardless of whether such
26  insurance policy is listed as an assumed contract.    Similarly, the Reorganized Debtors
    expressly reserve and do not waive the right to receive services under any contract with a
27  utility provider, regardless of whether such agreement with a utility provider is listed as an
28  assumed contract.

D.      Claims Based on Rejection or Repudiation of Executory Contracts and Unexpired Leases:  Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection or repudiation of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be Filed with the Claims and Solicitation Agent no later than the Rejection Damages Claim Deadline.  Any Proofs of Claim arising from the rejection or repudiation of the Debtors' executory contracts or unexpired leases that are not timely Filed by the Rejection Damages Claim Deadline shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Reorganized Debtor without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection or repudiation of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection or repudiation of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims.

E.      Intercompany Contracts, Contracts, and Leases Entered Into After the Petition Date:  Intercompany Contracts, contracts, and leases entered into after the Petition Date by any Debtor, and any executory contracts and unexpired leases assumed by any Debtor, may be performed by the applicable Reorganized Debtor in the ordinary course of business.

F.      Home Sales:  All pending home sale contracts shall be assumed by the applicable Reorganized Debtor.

G.      Warranties:  All eligible prepetition home sale contracts with one-year warranty obligations shall be performed in the ordinary course of business of the Reorganized Debtors.  Upon the Effective Date, any remaining warranty obligations that are to be assumed by the Reorganized Debtors, which shall only be assumed with the consent of the First Lien Steering Committee, shall be transferred to the Reorganized Debtors.  Warranty obligations that are not expressly assumed shall be rejected and treated as General Unsecured Claims.

H.      Modification of Executory Contracts and Unexpired Leases Containing Equity Ownership Restrictions:  All executory contracts and unexpired leases to be assumed, or conditionally assumed, under the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code shall be deemed so assumed, or so conditionally assumed, without giving effect to any provisions contained in such executory contracts or unexpired leases restricting the change in control or ownership interest composition of any or all of the Debtors, and upon the Effective Date (1) any such restrictions shall be deemed of no further force and effect and (2) any breaches that may arise thereunder as a result of Confirmation or Consummation shall be deemed waived by the applicable non-Debtor counterparty.

I.      Modifications, Amendments, Supplements, Restatements, or Other Agreements:  Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts and unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

J.      Reservation of Rights:  Neither the exclusion nor inclusion of any contract or lease on Exhibit N to the Disclosure Statement, nor anything contained in the Plan, shall constitute an admission by the Debtors or the First Lien Steering Committee that any such contract or lease is in fact an executory contract or unexpired lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, with the consent of the First Lien Steering Committee, or Reorganized Debtors shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

K.      Nonoccurrence of Effective Date:  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VI.**
PROCEDURES FOR RESOLVING DISPUTED CLAIMS

A.      Allowance of Claims:  After the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had with respect to any Claim immediately prior to the Effective Date, including the Causes of Action referenced in Article IV.

B.      Claims Administration Responsibilities:  Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.      Estimation of Claims:  Before or after the Effective Date, the First Lien Steering Committee or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty days after the date on which such Claim is estimated.

D.    Adjustment to Claims Without Objection:   Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. Beginning on the end of the first full calendar quarter that is at least ninety days after the Effective Date, the Reorganized Debtors shall publish and File every calendar quarter a list of all Claims that have been paid, satisfied, amended, or superseded during such prior calendar quarter.

E.    Time to File Objections to Claims:   Any objections to Claims shall be Filed on or before the later of (1) the applicable Claims Objection Deadline and (2) such date as may be fixed by the Bankruptcy Court, after notice and a hearing, whether fixed before or after the date that is one year after the Effective Date. Notwithstanding the foregoing, the First Lien Steering Committee, any First Lien Lender and/or the Reorganized Debtors shall have until sixty days following the Effective Date to object to the Proofs of Claim filed by the Rhodes Entities in the Debtors' chapter 11 cases (provided, that, such objections shall not seek to subordinate the Rhodes Entities Claims, if Allowed).

F.    Disallowance of Claims:   Except as set forth herein, any Claims held by an Entity from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors or the Litigation Trust, as applicable.

EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1 CLAIMS, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE
2 CLAIM HAS BEEN DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER.

3 G.    Offer of Judgment:  The Reorganized Debtors shall be authorized to serve upon a
Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and,
4 pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall
apply to such offer of judgment.  To the extent the Holder of a Claim must pay the costs
5 incurred by the Reorganized Debtors after the making of such offer, the Reorganized
Debtors shall be entitled to setoff such amounts against the amount of any distribution to be
6 paid to such Holder without any further notice to or action, order, or approval of the
7 Bankruptcy Court.

8 H.    Amendments to Claims:  On or after the Effective Date, except as expressly
authorized in the Plan, a Claim may not be Filed or amended without the prior authorization
9 of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim
10 Filed shall be deemed disallowed in full and expunged without any further action.

11 **ARTICLE VII.**
PROVISIONS GOVERNING DISTRIBUTIONS
12

13 A.    Total Enterprise Value for Purposes of Distributions Under the Plan:  Distributions
of Newco Equity Interests to Holders of Allowed First Lien Lender Secured Claims shall be
14 based upon, among other things, the Newco Total Enterprise Value of $99.6 million.  For
purposes of distribution, the Newco Equity Interests shall be deemed to have the value
15 assigned to them based upon, among other things, the Newco Total Enterprise Value,
regardless of the date of distribution.
16

17 B.    Distributions on Account of Claims Allowed as of the Effective Date:  Except as
otherwise provided in the Plan, a Final Order, or as agreed to by the First Lien Steering
18 Committee, initial distributions under the Plan on account of Claims Allowed on or before
the Effective Date shall be made on the Distribution Date; provided, however, that (1)
19 Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the
20 ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to
the Effective Date shall be paid or performed in the ordinary course of business in
21 accordance with the terms and conditions of any controlling agreements, course of dealing,
course of business, or industry practice and (2) Allowed Priority Tax Claims, unless
22 otherwise agreed, shall be paid in full in Cash on the Distribution Date or over a five-year
23 period as provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest
provided by applicable non-bankruptcy law.
24

25 C.    Distributions on Account of Claims Allowed After the Effective Date:

26 1.    Payments and Distributions on Disputed Claims:  Except as otherwise
provided in the Plan, a Final Order, or as agreed to by the First Lien Steering Committee
27 prior to the Effective Date or the Reorganized Debtors after the Effective Date, distributions
under the Plan on account of Disputed Claims that become Allowed after the Effective Date
28 shall be made on the Periodic Distribution Date that is at least thirty days after the Disputed

Claim becomes an Allowed Claim; provided, however, that (a) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date, unless otherwise agreed, shall be paid in full in Cash on the Periodic Distribution Date that is at least thirty days after the Disputed Claim becomes an Allowed Claim or over a five-year period as provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by applicable non-bankruptcy law.

    2.    Special Rules for Distributions to Holders of Disputed Claims: Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Claim has been Allowed. In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtors shall establish appropriate reserves for potential payment of such Claims or Interests pursuant to Article VII.C.3. Subject to Article IX.A.5, all distributions made pursuant to the Plan on account of an Allowed Claim shall be made together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to Holders of Allowed Claims included in the applicable Class.

    3.    Reserve of Litigation Trust Interests: On the Effective Date, the Reorganized Debtors shall maintain in reserve Litigation Trust Interests for distribution to Holders of Disputed Claims that become Allowed after the Effective Date. As Disputed Claims are Allowed, the Distribution Agent shall distribute, in accordance with the terms of the Plan, Litigation Trust Interests to Holders of Allowed Claims, and the Disputed Claims Reserve shall be adjusted. The Distribution Agent shall withhold in the Disputed Claims Reserve any payments or other distributions made on account of, as well as any obligations arising from, the Litigation Trust Interests initially withheld in the Disputed Claims Reserve, to the extent that such Litigation Trust Interests continue to be withheld in the Disputed Claims Reserve at the time such distributions are made or such obligations arise, and such payments or other distributions shall be held for the benefit of Holders of Disputed Claims whose Claims, if Allowed, are entitled to distributions under the Plan. The Reorganized Debtors may (but are not required to) request estimation for any Disputed Claim that is contingent or unliquidated.

    Notwithstanding anything in the applicable Holder's Proof of Claim or otherwise to the contrary, the Holder of a Claim shall not be entitled to receive or recover a distribution under the Plan on account of a Claim in excess of the lesser of the amount: (a) stated in the Holder's Proof of Claim, if any, as of the Distribution Record Date, plus interest thereon to

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

the extent provided for by the Plan; (b) if the Claim is denominated as contingent or unliquidated as of the Distribution Record Date, the amount that the Reorganized Debtors elect to withhold on account of such Claim in the Disputed Claims Reserve, or such other amount as may be estimated by the Bankruptcy Court prior to the Confirmation Hearing; or (c) if a Claim has been estimated, the amount deposited in the Disputed Claim Reserve to satisfy such Claim after such estimation.

D.    Delivery of Distributions

1.    Record Date for Distributions: On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    Distribution Agent: The Distribution Agent shall make all distributions required under the Plan, except that distributions to Holders of Allowed Claims governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement.

3.    Delivery of Distributions in General: Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Distribution Agent or a Servicer, as appropriate: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related Proof of Claim; (d) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Distribution Agent has not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Except as otherwise provided in the Plan, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the First Lien Steering Committee, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

4.    Accrual of Distributions and Other Rights: For purposes of determining the accrual of distributions or other rights after the Effective Date, the Newco Equity Interests and the Litigation Trust Interests, as applicable, shall be deemed distributed as of the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Effective Date regardless of the date on which they are actually issued, dated, authenticated, or distributed even though the Reorganized Debtors shall not make any such distributions or distribute such other rights until distributions of the Newco Equity Interests and the Litigation Trust Interests, as applicable, actually take place.

5.    Allocation Between Principal and Accrued Interest:   Except as otherwise provided in the Plan, distributions on account of Allowed Claims shall be treated as allocated first to principal and thereafter to any interest.

6.    Compliance Matters:   In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

7.    Fractional, De Minimis, Undeliverable, and Unclaimed Distributions:

a.    Fractional Distributions:   Notwithstanding any other provision of the Plan to the contrary, payments of fractions of shares of Newco Equity Interests or fractions of Litigation Trust Interests shall not be made.  The Distribution Agent shall not be required to make distributions or payments of fractions of Newco Equity Interests, Litigation Trust Interests or dollars.  Whenever any payment of Cash of a fraction of a dollar or payment of a fraction of Newco Equity Interests or fraction of Litigation Trust Interests pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars, half Newco Equity Interests or half Litigation Trust Interests or less being rounded down.

b.    Undeliverable Distributions:   If any distribution to a Holder of an Allowed Claim is returned to a Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until such Distribution Agent is notified in writing of such Holder's then-current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date.  Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors pursuant to Article VII.D.7.c, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     c.   <u>Reversion</u>:  Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Reorganized Debtors and, to the extent such Unclaimed Distribution is a distribution of Newco Equity Interests, such Newco Equity Interests shall be deemed cancelled.  Upon such revesting, the Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.  The provisions of the Plan regarding undeliverable distributions and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Debtors, made pursuant to any indenture or Certificate (but only with respect to the initial distribution by the Servicer to Holders that are entitled to be recognized under the relevant indenture or Certificate and not with respect to Entities to whom those recognized Holders distribute), notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property law.

    **8.**   <u>Manner of Payment Pursuant to the Plan</u>:  Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Reorganized Debtors by check or by wire transfer.  Checks issued by the Distribution Agent or applicable Servicer on account of Allowed Claims shall be null and void if not presented within 120 days after issuance, but may be requested to be reissued until the distribution revests in the Reorganized Debtors pursuant to Article VII.D.7.c.

    **9.**   <u>Surrender of Cancelled Instruments or Securities</u>:  On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a Certificate shall surrender such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer).  Such Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.  No distribution of property pursuant to the Plan shall be made to or on behalf of any such Holder that is a Holder of a Claim unless and until such Certificate is received by the Distribution Agent or the Servicer or the unavailability of such Certificate is reasonably established to the satisfaction of the Distribution Agent or the Servicer.  Any Holder of a Claim who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity acceptable to the Distribution Agent or the Servicer prior to the first anniversary of the Effective Date, shall have its Claim discharged with no further action, be forever barred from asserting any such Claim against the relevant Reorganized Debtor or its property, be deemed to have forfeited all rights and Claims with respect to such Certificate, and not participate in any distribution under the Plan;  furthermore, all property with respect to such forfeited distributions, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors, notwithstanding any federal or state escheat, abandoned, or unclaimed property law to the contrary.

E.    <u>Claims Paid or Payable by Third Parties.</u>

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1.    <u>Claims Paid by Third Parties</u>:  The Claims and Solicitation Agent shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  Further, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.    <u>Claims Payable by Insurance</u>:  Holders of Insured Claims that are covered by the Debtors' insurance policies shall seek payment of such Claims from applicable insurance policies, provided that the Reorganized Debtors shall have no obligation to pay any amounts in respect of pre-petition deductibles or self insured retention amounts.  Allowed Insured Claim amounts in excess of available insurance shall be treated as General Unsecured Claims.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Claims and Solicitation Agent without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    <u>Applicability of Insurance Policies</u>:  Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Except for Claims and Causes of Action released under the Plan to the Released Parties and Exculpated Parties, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

F.    <u>Payment of $1.5 Million to First Lien Lenders</u>:  The $1,500,000 in Cash payable to the Holders of First Lien Lender Secured Claims from the proceeds of their Collateral pursuant to Article III.B.1. shall be paid as follows: (i) $400,000 on the Effective Date and (ii) the remaining up to $1,100,000 in five quarterly installments of $220,000 beginning on the first day of the fourth month following the Effective Date; provided, that the Reorganized Debtors shall have the right to defer up to two quarterly payments, with such deferred amount(s) to be paid on the next quarterly payment date (and the amount scheduled

to be paid on such quarterly payment date deferred for another quarter; provided that the full $1.5 million payment shall be made to the Holders of First Lien Lender Secured Claims within eighteen months of the Effective Date.  Notwithstanding the foregoing, in the event that, as of the Effective Date, the third party debt on the Rhodes Ranch Golf Course has been refinanced on terms and conditions acceptable to the First Lien Steering Committee and the Reorganized Debtors have unrestricted cash of at least $3.5 million (after taking into account any amounts required to be paid to reduce the amount of third party debt on the Rhodes Ranch Golf Course below $5.9 million and without taking into consideration amounts that may have been borrowed under any exit facility unless such amounts were used to pay-down debt on the Rhodes Ranch Golf Course, in which case any amounts used to pay-down debt on the Rhodes Ranch Golf Course will be deemed to reduce unrestricted cash on a dollar for dollar basis), then the initial $400,000 payment to the First Lien Lenders will be increased as follows: (i) if unrestricted cash (as calculated above) is equal to or greater than $3.5 million but less than $4.5 million, the $400,000 payment shall be increased to $700,000; (ii) if unrestricted cash (as calculated above) is equal to or greater than $4.5 million but less than $5.5 million, the $400,000 payment shall be increased to $1,000,000; and (iii) if unrestricted cash (as calculated above) is equal to or greater than $5.5 million, the $400,000 payment shall be increased to $1.5 million, in each case with the subsequent quarterly installments reduced by a corresponding amount to provide for equal payments over the payout periods discussed above.  In no event shall the aggregate Cash payments to the First Lien Lenders exceed $1.5 million.

G.    General Unsecured Claims Purchase:  The First Lien Lenders have agreed to use the aggregate $1.5 million Cash payment provided to them under the Plan to acquire those General Unsecured Claims of the Creditors listed on the schedule attached to the Disclosure Statement as Exhibit H (the "Claim Purchase Schedule") to the extent such Claims remain outstanding as of the Effective Date; provided that (i) each Holder of a Claim so listed is the original Holder of such Claim and (ii) such Claim(s) is ultimately Allowed.

The Claim Purchase Schedule shall delineate whether such Claims are Allowed or Disputed and Claims may be purchased only to the extent ultimately Allowed.  **Claims included on the Claim Purchase Schedule shall be purchased (subject to the conditions contained in Article VII.G of the Plan) for the amounts listed for such Claims under the heading "Allowed Amount (Claim Purchase Amount)" on the Claim Purchase Schedule.  Payments on account of the purchased Allowed Claims listed on the Claim Purchase Schedule shall be made on the same time frame as the First Lien Lenders receive their allocable Cash payments under Article VII.F of the Plan, with the First Lien Steering Committee determining the order in which Claims are purchased (which, in the first instance, shall be the order in which they are listed on the Claim Purchase Schedule).**  For the avoidance of doubt, any claim listed on the Claim Purchase Schedule that is disputed, will not be purchased until allowed and only to the extent the aggregate purchase price for all claims purchased inclusive of such newly allowed claims are equal to or less than $1.5 million.  Claims subsequently allowed will be purchased in the order in which they are allowed.  The First Lien Lenders reserve the right to modify the Claim Purchase Schedule prior to or subsequent to the Effective Date without further Court order; provided, that a Creditor may be removed from the Claim Purchase Schedule only to the extent that (i) its Claims are not ultimately Allowed, (ii) its Claims are subject to setoff

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

47

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1 (other than under section 547 of the Bankruptcy Code); (iii) such Creditor sells its Claim to
2 a party other than the First Lien Lenders pursuant to Article VII.G of the Plan or (iv) the full
   $1.5 million has been used to purchase other Allowed Claims on the Claim Purchase
3 Schedule before such Creditor's Claim is Allowed.

4        The First Lien Lenders shall be subrogated to the rights of Creditors whose Claims
   are purchased hereunder and any distributions otherwise allocable to the Holders of Claims
5 purchased by the First Lien Lenders shall be distributed pro rata to the Holders of First Lien
   Lender Secured Claims.   The Reorganized Debtors shall be authorized to make the
6 foregoing payments to the Creditors on the Claim Purchase Schedule on behalf of the First
7 Lien Lenders with a corresponding reduction in the $1.5 million payable to the First Lien
   Lenders. Under no circumstances shall the First Lien Lenders (either directly or through the
8 Reorganized Debtors) pay in excess of $1.5 million in the aggregate for the Claims on the
9 Claim Purchase Schedule.   The First Lien Steering Committee may, in its sole discretion
   (but after consultation with the Debtors and the Creditors' Committee), add Claims to the
10 Claim Purchase Schedule at any time; provided that the amount to be paid for all such
   Claims listed on the Claim Purchase Schedule does not exceed $1.5 million in the aggregate
11 regardless of the total amount of Allowed Claims reflected on the Claim Purchase Schedule.
12 In the event that Allowed Claims in excess of $1.5 million are listed on the Claim Purchase
   Schedule, Holders of Claims listed on the Claim Purchase Schedule shall have the right to
13 accept or decline payment of less than 100 cents on account of their Claims from the First
14 Lien Lenders. No Creditor listed on the Claim Purchase Schedule shall receive in excess of
   100 cents on the dollar for its Claim, and the Reorganized Debtors shall not pursue Claims
15 under Bankruptcy Code section 547 against any Creditor whose Claim is purchased in
   accordance with this Article VII.G.  The Plan shall serve as the notice of transfer of Claim
16 required under Bankruptcy Rule 3001(e).   If no objections are received by the Voting
   Deadline, the First Lien Lenders shall be authorized upon the Effective Date to effectuate
17 the foregoing Claim purchase transactions.

18                                **ARTICLE VIII.**
19                    EFFECT OF CONFIRMATION OF THE PLAN

20 A.       Discharge of Claims and Termination of Interests:  Pursuant to section 1141(d) of
   the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the
21 distributions, rights, and treatment that are provided in the Plan shall be in complete
22 satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests,
   and Causes of Action of any nature whatsoever, including any interest accrued on Claims or
23 Interests from and after the Petition Date, whether known or unknown, against, liabilities of,
   Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or
24 properties, regardless of whether any property shall have been distributed or retained
25 pursuant to the Plan on account of such Claims and Interests, including demands, liabilities,
   and Causes of Action that arose before the Effective Date, any liability (including
26 withdrawal liability) to the extent such Claims or Interests relate to services performed by
   employees of the Debtors prior to the Effective Date and that arise from a termination of any
27 employee, regardless of whether such termination occurred prior to or after the Effective
   Date, any contingent or non-contingent liability on account of representations or warranties
28 issued on or before the Effective Date, and all debts of the kind specified in sections 502(g),

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Any default by the Debtors with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed Cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

B.    Subordinated Claims: The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Plan Proponent or Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

C.    Compromise and Settlement of Claims and Controversies: Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such an Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities.

D.    **Releases by the Debtors of the Released Parties:**

**Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, and as part of the global settlement described in Article I.B. of the Disclosure Statement, on and after the Effective Date, the Released Parties are deemed released by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtors, taking place on or before the**

49

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Effective Date, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any of the Released Parties, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

E.    **Releases by the Debtors of the Rhodes Entities**:  The Rhodes Entities shall be deemed released from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever arising under chapter 5 of the Bankruptcy Code with respect to transfers made by the Debtors to the Rhodes Entities during the 2 years prior to the Petition Date; provided, however, that such release shall only apply to transfers expressly set forth in the Schedules as Filed with the Bankruptcy Court as of August 1, 2009 or as disclosed in Attachment B to the Mediation Term Sheet.

F.    **Releases by First Lien Lenders of First Lien Lenders**:  Pursuant to Bankruptcy Rule 9019, and except as otherwise specifically provided in the Plan, to the extent a First Lien Lender elects on its Ballot to release the First Lien Lenders in accordance with this Section VIII.F., for good and valuable consideration, on and after the Effective Date, each of the First Lien Lenders electing to grant this release, shall be deemed to release each of the other First Lien Lenders that has elected to grant this release and each of their affiliates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such First Lien Lender would have been legally entitled to assert against any other First Lien Lender that elected to grant this release, based on or relating to, or in any manner arising from, in whole or in part, the First Lien Credit Agreement, the First Lien Lender Claims, any other claims arising under or related to the First Lien Credit Agreement, the Debtors, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to any First Lien Lender Claim, the restructuring of the First Lien Lender Claims prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; with such releases constituting an express waiver and relinquishment by each First Lien Lender electing to grant this release of any claims, whether known or unknown that such First Lien Lender may have under Section 1542 of the California Civil code or other analogous state or federal law related to the matters being released; provided, however, that Claims or liabilities arising out of or relating to

any act or omission of any First Lien Lender or any of its affiliates that constitutes gross negligence or willful misconduct shall not be released.

G.    **Exculpation:**    Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Claim, obligation, Cause of Action, or liability to one another or to any Exculpating Party for any Exculpated Claim, except for gross negligence, willful misconduct or fraud, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Debtors, the First Lien Steering Committee and the Reorganized Debtors (and each of their respective agents, members, directors, officers, employees, advisors, and attorneys) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of the Securities pursuant to the Plan, and therefore are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

H.    **Injunction**  Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims against the Debtors, and all Entities holding Interests, are permanently enjoined, from and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors or the property or estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors or against the property or Estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding an indication in a Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise (provided, that, to the extent the Rhodes Entities Claims are Allowed, the Rhodes Entities, without the need to file any such motion, shall retain the right to assert a setoff against any Claims or Causes of Action that the Reorganized Debtors or Litigation Trust may assert against the Rhodes Entities, with the Reorganized Debtors and Litigation Trust, as applicable, reserving the right to challenge the propriety of any such attempted setoff, with any such challenge to be resolved by the Bankruptcy Court); and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

51

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

I.    Protection Against Discriminatory Treatment:  Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom such Reorganized Debtors have been associated, solely because one of the Debtors has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.    **Setoffs:    Except as otherwise expressly provided for in the Plan, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor, Reorganized Debtor or the Litigation Trust, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor or the Litigation Trust of any such Claims, rights, and Causes of Action that such Reorganized Debtor or the Litigation Trust may possess against such Holder.  In no event shall any Holder of Claims be entitled to setoff any Claim against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise; provided, however, that, to the extent the Rhodes Entities Claims are Allowed, the Rhodes Entities, without the need to file any such motion, shall retain the right to assert a setoff against any Claims or Causes of Action that the Reorganized Debtors or Litigation Trust may assert against the Rhodes Entities, with the Reorganized Debtors and Litigation Trust, as applicable, reserving the right to challenge the propriety of any such attempted setoff, with any such challenge to be resolved by the Bankruptcy Court.**

K.    **Recoupment:  In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors and the First Lien Steering Committee on or before the Confirmation Date,**

notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

L.    Release of Liens:  Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.  Upon the Effective Date, the Confirmation Order shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to  release any  mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates; and each of the foregoing persons and entities is hereby directed to accept for filing the Confirmation Order any and all of the documents and instruments necessary and appropriate to  effectuate the discharge.

M.    Document Retention:  On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their current document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors in the ordinary course of business.  Copies of all Debtors' books and records shall be delivered to the Rhodes Entities at no cost to the Rhodes Entities on or prior to the Effective Date.

N.    Reimbursement or Contribution:  If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date:  (1) such Claim has been adjudicated as noncontingent or (2) the relevant Holder of a Claim has Filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

### ARTICLE IX.
### ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

A.    Professional Claims:

1.    Final Fee Applications:  All final requests for payment of Claims of a Professional shall be Filed no later than forty-five days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

2.    Payment of Interim Amounts:  Except as otherwise provided in the Plan, Professionals shall be paid pursuant to the Interim Compensation Order.

3.    Reimbursable Expenses:  The reasonable fees and expenses incurred by (i) the First Lien Agent, including its professionals, to the extent provided by the First Lien Credit Agreement, (ii) the Second Lien Agent, including its professionals, to the extent provided by the Second Lien Credit Agreement (only to the extent the Class of Second Lien Lender Secured Claims votes in favor of the Plan), and (iii) the First Lien Steering Committee, including its professionals, in connection with the Chapter 11 Cases shall be paid by the Debtors or Reorganized Debtors, as applicable, within 15 days of receipt of an invoice from such parties or their advisors.

4.    Post-Effective Date Fees and Expenses:  Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation incurred by the Reorganized Debtors and First Lien Steering Committee.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

5.    Substantial Contribution Compensation and Expenses:  Except as otherwise specifically provided in the Plan, any Entity who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, and the First Lien Steering Committee and the Creditors' Committee, and as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the Administrative Claim Bar Date or be forever barred from seeking such compensation or expense reimbursement.

B.    Other Administrative Claims:  All requests for payment of an Administrative Claim must be Filed with the Claims and Solicitation Agent and served upon counsel to the Debtors or Reorganized Debtors, as applicable, and the First Lien Steering Committee on or before the Administrative Claim Bar Date.  Any request for payment of an Administrative Claim that is not timely Filed and served shall be disallowed automatically without the need for any objection by the Debtors, Reorganized Debtors, or the First Lien Steering Committee.  The Reorganized Debtors may settle and pay any Administrative Claim in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.  In the event that any party with standing objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

**ARTICLE X.**
CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN

A. <u>Conditions to Confirmation</u>:    The following are conditions precedent to Confirmation that must be satisfied or waived in accordance with Article X.C:

<u>1.</u>    The Bankruptcy Court shall have approved the Disclosure Statement, in a manner acceptable to the Plan Proponent, as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

<u>2.</u>    The Confirmation Order shall be in form and substance acceptable to the Plan Proponent.

<u>3.</u>    The terms and conditions of employment or retention of any Persons proposed to serve as officers or directors of Newco, including, without limitation, as to compensation, shall be acceptable to the Plan Proponent and shall be disclosed at or prior to the Confirmation Hearing.

<u>4.</u>    Any disclosures made pursuant to 11 U.S.C. § 1129(a)(5) shall be acceptable to the Plan Proponent.

<u>5.</u>    All of the schedules, documents, and exhibits ancillary to the Plan and Disclosure Statement including, but not limited to, (i) the Claim Purchase Schedule, (ii) the Litigation Trust Agreement, (iii) the Newco LLC Operating Agreement, (iv) the New First Lien Notes credit agreement, (v) the Schedule of Causes of Action, (vi) the Asset and Stock Transfer Agreement, and (vii) the Schedule of Assumed Executory Contracts and Unexpired Leases shall be in form and substance acceptable to the Plan Proponent.

B. <u>Conditions Precedent to the Effective Date</u>: The following are conditions precedent to Consummation that must be satisfied or waived in accordance with Article X.C:

<u>1.</u>    The Bankruptcy Court shall have authorized the assumption and rejection of executory contracts and unexpired leases by the Debtors as contemplated by Article V.

<u>2.</u>    The Confirmation Order shall have become a Final Order in form and substance acceptable to the Plan Proponent.

<u>3.</u>    All of the schedules, documents, and exhibits ancillary to the Plan and Disclosure Statement including, but not limited to, (i) the Claim Purchase Schedule, (ii) the Litigation Trust Agreement, (iii) the Newco LLC Operating Agreement, (iv) the New First Lien Notes credit agreement, (v) the Schedule of Causes of Action, (vi) the Asset and Stock Transfer Agreement, and (vii) the Schedule of Assumed Executory Contracts and Unexpired Leases shall be in form and substance acceptable to the Plan Proponent.

<u>4.</u>    The documents governing the New First Lien Notes and the Newco LLC Operating Agreement shall be in form and substance acceptable to the Plan Proponent.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

5. The Confirmation Date shall have occurred.

6. The First Lien Steering Committee shall have designated and replaced each existing Qualified Employee of the Debtors with a new Qualified Employee for the Reorganized Debtors.

7. The third party debt outstanding on the Rhodes Ranch Golf Course shall be refinanced on terms and conditions acceptable to Rhodes and the First Lien Steering Committee and the personal loan of James Rhodes to the entity that owns the Rhodes Ranch Golf Course shall have been contributed as equity without any new equity being issued to James Rhodes and James Rhodes shall have provided the Debtors, the Reorganized Debtors, Newco and the entity that owns the Rhodes Ranch Golf Course an indemnity for any liability arising from the contribution of such loan.

8. Copies of all Debtors' books and records shall have been delivered to the Rhodes Entities at no cost to the Rhodes Entities.

9. The Arizona Assets shall have been transferred to the Rhodes Entities (or their designee) free and clear of all liens and claims pursuant to section 363(f) of the Bankruptcy Code on the Effective Date; provided, that the non-First Lien Lender/Second Lien Lender liens do not exceed $60,000.

10. The Debtors shall have assumed and assigned all executory contracts and unexpired leases related solely to the Arizona Assets to the Rhodes Entities (or their designee), at no cost to the Debtors or the Reorganized Debtors, with all Cure costs associated therewith to be borne by the Rhodes Entities.

11. The tax structure set forth in Article IV.F shall be implemented.

12. The Rhodes Entities and First Lien Steering Committee shall have agreed on the Golf Course Security Property.

13. The Rhodes Entities shall have performed all of their obligations under the Plan including, without limitation, depositing $3.5 million in Cash in an account designated by the Debtors, with the consent of the First Lien Steering Committee, and transferred the Rhodes Ranch Golf Course and related contracts and assets as required by Article IV.S. to the Reorganized Debtors.

C. Waiver of Conditions Precedent: The First Lien Steering Committee may waive any of the conditions to the Effective Date at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan; provided, that the First Lien Steering Committee will not waive the conditions precedent in items X.B.6 through 12 above if the Rhodes Entities shall have complied with all of their obligations hereunder and in the Plan by the Effective Date (or such earlier date specifically set forth herein). In the event the Rhodes Entities fail to comply with any of their obligations under the Mediation Term Sheet or under the Plan by the Effective Date (or such earlier date specifically set forth herein) and fail to cure such alleged breach within ten

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  (10) days' written notice to the Rhodes Entities, then the First Lien Steering Committee shall
2  be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has
   occurred (except that the failure of the parties to agree on the refinancing of the Rhodes
3  Ranch Golf Course solely as a result of the First Lien Steering Committee acting
   unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply
4  with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their
   right to object to such motion; (ii) modify the Plan to remove any provisions hereof that
5  were included for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as
6  modified.  Upon entry of an order of the Bankruptcy Court finding a breach by the Rhodes
   Entities and authorizing the modifications to the Plan to remove any provisions that were
7  included for the benefit of the Rhodes Entities, the First Lien Steering shall be authorized to
8  make such modifications and consummate the Plan.

9      D.    Effect of Non-Occurrence of Conditions to Consummation:  Each of the conditions
   to Consummation must be satisfied or duly waived pursuant to Article X.C, and
10  Consummation must occur within 180 days of Confirmation, or by such later date
   established by Bankruptcy Court order.  If Consummation has not occurred within 180 days
11  of Confirmation, then upon motion by a party in interest made before Consummation and a
12  hearing, the Confirmation Order may be vacated by the Bankruptcy Court; provided,
   however, that notwithstanding the Filing of such motion to vacate, the Confirmation Order
13  may not be vacated if Consummation occurs before the Bankruptcy Court enters an order
   granting such motion.  If the Confirmation Order is vacated pursuant to Article X.D. or
14  otherwise, then except as provided in any order of the Bankruptcy Court vacating the
15  Confirmation Order, the Plan will be null and void in all respects, including the discharge of
   Claims and termination of Interests pursuant to the Plan and section 1141 of the Bankruptcy
16  Code and the assumptions, assignments, or rejections of executory contracts or unexpired
17  leases pursuant to Article V, and nothing contained in the Plan or Disclosure Statement
   shall: (1) constitute a waiver or release of any Claims, Interests, or Causes of Action; (2)
18  prejudice in any manner the rights of the Debtors, the First Lien Steering Committee or any
19  other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking of any
   sort by the Debtors, the First Lien Steering Committee or any other Entity.

20  E.    Satisfaction of Conditions Precedent to Confirmation:    Upon entry of a
   Confirmation Order acceptable to the Plan Proponent, each of the conditions precedent to
21  Confirmation, as set forth in Article X.A, shall be deemed to have been satisfied or waived
22  in accordance with the Plan.

23                              **ARTICLE XI.**
24          MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

25      A.    Modification and Amendments:   The First Lien Steering Committee shall not
   modify materially the terms of the Plan without the prior consent of the parties to the
26  Mediation Term Sheet; provided, that in the event the Rhodes Entities fail to comply with
   any of their obligations under the Mediation Term Sheet or the Plan by the Effective Date
27  (or such other date set forth herein) and fail to cure such alleged breach within ten (10) days'
28  written notice to the Rhodes Entities, then the First Lien Steering Committee shall be
   entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their right to object to such motion; (ii) modify the Plan to remove any provisions hereof that were included for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as modified. Upon entry of an order of the Bankruptcy Court finding a breach by the Rhodes Entities and authorizing the modifications to the Plan to remove any provisions that were included for the benefit of the Rhodes Entities, the First Lien Steering shall be authorized to make such modifications and consummate the Plan. Except as otherwise specifically provided in the Plan, the Plan Proponent reserves the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponent expressly reserves its rights to revoke, withdraw, alter, amend, or modify materially the Plan with respect to any Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI.A. The Plan, Disclosure Statement and all ancillary documents may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours, at the Bankruptcy Court's website at http://www.nvb.uscourts.gov. All documents to be entered into in connection with the consummation of the Plan as described in the Plan and/or Disclosure Statement are integral to the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

B.     Effect of Confirmation on Modifications: Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.     Revocation or Withdrawal of Plan: The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization; provided, that, any subsequently filed plan shall be consistent with the Mediation Settlement unless the Rhodes Entities fail to comply with any of their obligations under the Mediation Term Sheet or the Plan by the Effective Date (or such other date set forth herein) and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, in which case the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their right to object to such motion; (ii) revoke or withdraw the Plan as a result of such breach; and (iii) file a subsequent plan that removes the benefits provided to the Rhodes Entities pursuant to the Mediation

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

Term Sheet. If the Plan Proponent revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Plan Proponent or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Plan Proponent or any other Entity.

## ARTICLE XII.
### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including Cure or Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any executory contract or unexpired lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     Resolve any disputes with respect to the Debtors or Reorganized Debtors performance bonds guaranteed by the Rhodes Entities or other matters contemplated by Article IV.X.

12.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

13.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VII.E;

15.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.     Determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.     Enter an order or Final Decree concluding or closing the Chapter 11 Cases;

18.     Adjudicate any and all disputes arising from or relating to distributions under the Plan;

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

19. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20. Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

21. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

22. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23. Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment of any employee, regardless of whether such termination occurred prior to or after the Effective Date;

24. Enforce all orders previously entered by the Bankruptcy Court; and

25. Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII.
### MISCELLANEOUS PROVISIONS

A.    Immediate Binding Effect:  Subject to Article X.B. and notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

B.    Additional Documents:  On or before the Effective Date, the Plan Proponent may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, the First Lien Steering Committee and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    Payment of Statutory Fees:  All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128

of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.    <u>Dissolution of Creditors' Committee</u>:    Upon the Effective Date, the Creditors' Committee shall dissolve automatically (except with respect to the resolution of applications for Professional Claims), and members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code.

E.    <u>Reservation of Rights</u>:    Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or any documents ancillary to either the Plan or the Disclosure Statement, shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.    <u>Successors and Assigns</u>:    The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.    <u>Service of Documents</u>:

    <u>1.</u>    After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| Debtors | Counsel to the Debtors |
|---|---|
| The Rhodes Companies, LLC<br>4730 South Fort Apache Road<br>Suite 300<br>Las Vegas, NV 89147 | Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Boulevard #1100<br>Los Angeles, CA 90067<br>Attn:  James I. Stang<br>          Shirley S. Cho<br>          Werner S. Disse<br><br>Larson & Stephens<br>810 S. Casino Center Boulevard<br>Suite 104<br>Las Vegas, NV 89101<br>Attn:  Zachariah Larson |
| **United States Trustee** | **Counsel to the First Lien Steering Committee** |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

| United States Trustee – LV-11 300 Las Vegas Boulevard S. Suite 4300 Las Vegas, NV 89101 Attn:   Edward M. McDonald | Akin Gump Strauss Hauer & Feld One Bryant Park New York, NY 10036 Attn:   Philip C. Dublin         Abid Qureshi  Kolesar & Leatham, Chtd. 3320 West Sahara Avenue Suite 380 Las Vegas, NV 89102 Attn:   Nile Leatham |
|---|---|
| **Counsel to the Creditors' Committee** | **Counsel to First Lien Agent** |
| Parsons Behle & Latimer 201 S. Main St., Suite 1800 Salt Lake City, Utah 84111 Attn:   J. Thomas Beckett  Parsons Behle & Latimer 50 West Liberty Street, Suite 750 Reno, Nevada 89501 Attn: Rew Goodenow | Skadden, Arps, Slate, Meagher & Flom LLP 300 South Grand Avenue, Suite 3500 Los Angeles, CA 90071 Attn:   Van C. Durrer II         Ramon M. Naguiat |

2.      After the Effective Date, the Reorganized Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

3.      In accordance with Bankruptcy Rules 2002 and 3020(c), within ten business days of the date of entry of the Confirmation Order, the Plan Proponent shall serve  the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with the Confirmation Hearing Notice; provided, however, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Plan Proponent mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Plan Proponent has been informed in writing by such Entity, or is otherwise aware, of that Entity's new address. To supplement the notice described in the preceding sentence, within twenty days of the date of the Confirmation Order, the First Lien Steering Committee shall publish the Notice of Confirmation once in the Vegas Sun. Mailing and publication of the Notice of Confirmation in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  **H.    Term of Injunctions or Stays**:  Unless otherwise provided in the Plan or in the
2  Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to
   sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and
3  extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or
   the Confirmation Order) shall remain in full force and effect until the Effective Date.  All
4  injunctions or stays contained in the Plan or the Confirmation Order shall remain in full
5  force and effect in accordance with their terms.

6  **I.    Entire Agreement**:  Except as otherwise indicated, the Plan supersedes all previous
   and contemporaneous negotiations, promises, covenants, agreements, understandings, and
7  representations on such subjects, all of which have become merged and integrated into the
8  Plan.

9  **J.    Governing Law**:  Unless a rule of law or procedure is supplied by federal law
   (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically
10 stated, the laws of the State of Nevada, without giving effect to the principles of conflict of
   laws, shall govern the rights, obligations, construction, and implementation of the Plan, any
11 agreements, documents, instruments, or contracts executed or entered into in connection
12 with the Plan (except as otherwise set forth in those agreements, in which case the governing
   law of such agreement shall control), and corporate governance matters; provided, however,
13 that corporate governance matters relating to the Debtors or Reorganized Debtors, as
   applicable, not incorporated or organized in Nevada shall be governed by the laws of the
14 state of incorporation or organization of the applicable Debtor or Reorganized Debtor, as
15 applicable.

16 **K.    Exhibits**:  All exhibits and documents ancillary to the Plan and/or the Disclosure
   Statement are incorporated into and are a part of the Plan as if set forth in full in the Plan.
17 Copies of such exhibits and documents are available upon written request to the First Lien
18 Steering Committee's counsel at the address above or by downloading such exhibits and
   documents from the Bankruptcy Court's website at http://www.nvb.uscourts.gov.  To the
19 extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise
   ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall
20 control.

21 **L.    Nonseverability of Plan Provisions**:  If, prior to Confirmation, any term or provision
22 of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the
   Bankruptcy Court shall have the power to alter and interpret such term or provision to make
23 it valid or enforceable to the maximum extent practicable, consistent with the original
24 purpose of the term or provision held to be invalid, void, or unenforceable, and such term or
   provision shall then be applicable as altered or interpreted.  Notwithstanding any such
25 holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan
   will remain in full force and effect and will in no way be affected, impaired, or invalidated
26 by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a
   judicial determination and shall provide that each term and provision of the Plan, as it may
27 have been altered or interpreted in accordance with the foregoing, is: (1) valid and
28 enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified
   without the Plan Proponent's consent; and (3) nonseverable and mutually dependent.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

M.    <u>Closing of the Chapter 11 Cases</u>:  The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.    <u>Waiver or Estoppel</u>:  Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, the First Lien Steering Committee or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.    <u>Conflicts</u>:  Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Mediation Term Sheet or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

Las Vegas, Nevada
Dated: November 23, 2009

FIRST LIEN STEERING COMMITTEE

By:    /s/ Philip C. Dublin
        Nile Leatham (NV Bar No. 002838)
        KOLESAR & LEATHAM
        Wells Fargo Financial Center
        3320 W. Sahara Ave.
        Las Vegas, NV 89102
        (702) 979-2357 (Telephone)
        (702) 362-9472 (Facsimile)
        Nleatham@klnevada.com

        AKIN GUMP STRAUSS HAUER & FELD LLP
        Philip C. Dublin (NY Bar No, 2959344)
        Abid Qureshi (NY Bar No. 2684637)
        One Bryant Park
        New York, New York 10036
        (212) 872-1000 (Telephone)
        (212) 872-1002 (Facsimile)
        pdublin@akingump.com
        aqureshi@akingump.com

        *Counsel for the First Lien Steering Committee*

LIST OF EXHIBITS

Exhibit | | Description
--- | --- | ---
1 | ............................................... | Mediation Term Sheet
2 | ............................................... | Term Sheet for New First Lien Notes

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com