# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

*Electronically Filed*
*January 15, 2010*

| | |
|---|---|
| In re:<br><br>**THE RHODES COMPANIES, LLC,** aka<br>"Rhodes Homes, et al..¹<br><br><br><div align="center">Debtor.</div> | Chapter 11<br><br>Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11 |

[X] Affects All Debtors

[ ] Affects the following Debtors

## AMENDED CERTIFICATE OF SERVICE

I, Nova George, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 16501 Ventura Boulevard, Suite 440, Encino, California 91436.

On December 4, 2009, I served the following documents:

**Cover Letter** (attached hereto as Exhibit A)

**Order (A) Approving the Adequacy of the First Lien Steering Committee's Disclosure Statement; (B) Approving Solicitation and Notice Procedures with Respect to Confirmation of the First Lien Steering Committee's Proposed Plan of Reorganization; (C) Approving the Form of Various Ballots and Notices in Connection Therewith; and (D) Scheduling Certain Dates With Respect Thereto** (attached hereto as Exhibit B)

**Solicitation Procedures** (attached hereto as Exhibit C)

**Notice of (I) Confirmation Hearing and Objection Deadline with Respect to the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al., and (II) Solicitation and Voting Procedures** (attached hereto as Exhibit D)

---

¹ The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Rhodes Ranch General Partnership (Case No.09-14844); Tick, LP (Case No. 09-14866); Glynda, LP (Case No. 09-14865); Chalkline, LP (Case No. 09-14862); Batcave, LP (Case No.09-14861); Jackknife, LP (Case No. 09-14860); Wallboard, LP (Case No. 09-14858); Overflow, LP (Case No. 09-14856); Rhodes Ranch Golf and Country Club (Case No. 09-14854); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Parcel 20 LLC(Case No. 09-14848); Rhodes Design and Development Corp. (Case No. 09-14846); C&J Holdings, Inc. (Case No. 09-14843); Rhodes Realty, Inc. (Case No. 09-14841); Jarupa LLC (Case No. 09-1439); Elkhorn Investments, Inc. (Case No. 09-14837); Rhodes Homes Arizona, LLC (Case No. 09-14882); Rhodes Arizona Properties, LLC (Case No. 09-14868); Tribes Holdings LLC (Case No.09-14817); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Partners, a Nevada Limited Partnership (Case No. 09-14828); Bravo, Inc. (Case No. 09-14825) Gung-Ho Concrete LLC (Case No. 09-14822); Geronimo Plumbing, LLC (Case No. 09-14820); Apache Framing, LLC (Case No. 09-14818); Tuscany Golf Country Club, LLC (Case No. 09-14884); Pinnacle Grading, LLC (Case No. 09-14887); Tuscany Acquisitions III, LLC (Case No. 09-09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); and Tuscany Acquisitions, LLC(Case No. 09-14853).

Document2

Letter signed by the First Lien Steering Committee, the Debtors, the Creditors' Committee and the Second Lien Agent (collectively, the "<u>Recommending Parties</u>") in support of the Plan (attached hereto as Exhibit E)

Letter signed by the Creditors' Committee in support of the Plan (attached hereto as Exhibit F)

Second Amended Modified Disclosure Statement for the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code for the Rhodes Companies, LLC, <u>et al</u> , including exhibits on CD-ROM Format (attached hereto as Exhibit G is the served Disclosure Statement including exhibits as it appeared on CD-ROM)

By supervising placement of the Plan Solicitation Documents above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Encino, California.

Attached hereto as Exhibit H is the list of Parties served with the Plan Solicitation Documents. The row entitled "Ballot" sets forth a reference to the individual ballot served upon each party.

    Executed on January 14, 2010, at Encino, California

 

                                      _____
                                    Nova George

# Exhibit A

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

Attorneys at Law

December 4, 2009

**To the Creditors of The Rhodes Companies, LLC and Its Affiliated Debtors:**

You have received this letter and the enclosed materials because you are entitled to vote on the *Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al.* (as amended from time to time and including all exhibits and supplements, the "Plan").[1]

The enclosed materials constitute the First Lien Steering Committee's "Solicitation Package" and consist of:

(a)    this letter;

(b)    the *Order (A) Approving the Adequacy of the First Lien Steering Committee's Disclosure Statement; (B) Approving Solicitation and Notice Procedures with Respect to Confirmation of the First Lien Steering Committee's Proposed Plan of Reorganization; (C) Approving the Form of Various Ballots and Notices in Connection Therewith; and (D) Scheduling Certain Dates With Respect Thereto* (the "Solicitation Procedures Order");

(c)    the Solicitation Procedures;

(d)    the appropriate Ballot(s);

(e)    the *Notice of (I) Confirmation Hearing and Objection Deadline with Respect to the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al., and (II) Solicitation and Voting Procedures* (the "Confirmation Hearing Notice");

(f)    a copy of a letter signed by the First Lien Steering Committee, the Debtors, the Creditors' Committee and the Second Lien Agent (collectively, the "Recommending Parties") in support of the Plan;

(g)    a copy of a letter signed by the Creditors' Committee in support of the Plan; and

(h)    the approved form of the Disclosure Statement (together with the Plan, which is Exhibit A thereto) in CD-ROM format.

---

[1]    Capitalized terms not defined in this letter have the meaning given them in the Plan.

The First Lien Steering Committee has approved the filing and solicitation of the Plan, and believes that the Plan is in the best interests of creditors. Moreover, the First Lien Steering Committee believes any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to creditors.

**THE FIRST LIEN STEERING COMMITTEE THEREFORE RECOMMENDS THAT ALL ENTITIES ENTITLED TO VOTE SUBMIT A TIMELY BALLOT VOTING TO ACCEPT THE PLAN.**

The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions, however, please feel free to contact the Claims and Solicitation Agent by writing to The Rhodes Companies, LLC, c/o Omni Management Group, LLC, 16161 Ventura Blvd., Suite C, PMB 477, Encino, California 91436, or by calling (866) 989-6144. Question may also be sent by email to Nova@omnimgt.com.

# Exhibit B

**Entered on Docket**
**December 01, 2009**

Hon. Linda B. Riegle
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**
**SOUTHERN DIVISION**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

| | |
|---|---|
| IN RE: | Case No. 09-14814-LBR |
| | (Jointly Administered) |
| THE RHODES | |
| COMPANIES, LLC, | |
| aka "Rhodes Homes," *et al.*, | Chapter 11 |
| | |
| Debtors.[1] | Hearing Date: November 24, 2009 |
| | Hearing Time: 1:30 p.m (PST) |
| | Courtroom 1 |
| | |
| Affects: | |
| ☒ All Debtors | |
| ☐ Affects the following | |
| Debtor(s) | |

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

1

1
2
3
4
5

**ORDER (A) APPROVING THE ADEQUACY OF THE FIRST LIEN STEERING COMMITTEE'S DISCLOSURE STATEMENT; (B) APPROVING SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE FIRST LIEN STEERING COMMITTEE'S PROPOSED PLAN OF REORGANIZATION; (C) APPROVING THE FORM OF VARIOUS BALLOTS AND NOTICES IN CONNECTION THEREWITH; AND (D) SCHEDULING CERTAIN DATES WITH RESPECT THERETO [RE: DOCKET NO. 503]**

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

Upon consideration of the Second Amended Modified Disclosure Statement for the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, et al. (the "Disclosure Statement") filed by the First Lien Steering Committee and the Motion of the First Lien Steering Committee for Entry of an Order (A) Approving the Adequacy of the First Lien Steering Committee's Disclosure Statement; (B) Approving Solicitation and Notice Materials with Respect to the Plan of Reorganization; (C) Approving the Form of Various of Ballots and Notices in Connection Therewith, and (D) Scheduling Certain Dates with Respect Thereto (the "Motion");[2] and it appearing that adequate and sufficient notice of the Motion has been given under the circumstances; and it further appearing that adequate and sufficient notice, pursuant to Bankruptcy Rule 2002(b), of the hearing to approve the Disclosure Statement has been given; and after due deliberation and upon the Court's determination that the relief requested in the Motion is in the best interests of the above-captioned Debtors, their estates, creditors and other parties in interest; and sufficient cause appearing therefor, it is hereby:

ORDERED that:

21
22

1.      The Motion is granted.

23
24

2.      The Disclosure Statement contains "adequate information" as defined in Bankruptcy Code section 1125(a), and is hereby APPROVED in all respects pursuant to Bankruptcy Code section 1125(a).

25
26
27
28

---

[2] Any capitalized term not defined herein shall have the meaning ascribed to such term in the Motion or the Disclosure Statement, as applicable.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1      3.     A hearing to consider confirmation of the Second Amended Plan of

2  Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies,

3  LLC, et al. (as may be amended or modified, the "Plan") will be held on **January 14, 2010**

4  at 9:00 a.m. (prevailing Pacific Time), or as soon thereafter as counsel can be heard, before

5  the Honorable Linda B. Riegle, United States Bankruptcy Judge, at the United States

6  Bankruptcy Court for the District of Nevada, Foley Federal Building, 300 S. Las Vegas

7  Blvd., Las Vegas, Nevada 89101 (the "Confirmation Hearing"). The Confirmation Hearing

8  may be adjourned from time to time without further notice other than the announcement at

9  the Confirmation Hearing of the date or dates of any adjourned hearing.

10     4.     The record date for purposes of voting to accept or reject the Plan is the date

11  of entry of this order (the "Record Date").

12     5.     The deadline for the receipt of Ballots accepting or rejecting the Plan shall be

13  **4:00 p.m. (Pacific Time) on January 4, 2010** (the "Voting Deadline"). For a Ballot to be

14  counted, it must be actually received prior to the Voting Deadline at the applicable address

15  indicated in the voting instructions that accompany the Ballot.

16     6.     **January 4, 2010** is fixed as the last day for filing and serving written

17  objections, comments or responses, including any supporting memoranda, to confirmation of

18  the Plan. Any such objections must (a) be in writing; (b) conform to the Bankruptcy Rules

19  and Local Rules; (c) state the name and address of the objecting party and the amount and

20  nature of the claim or interest of such party; (c) state with particularity the basis and nature

21  of any objection and, if practicable, a proposed modification to the Plan that would resolve

22  such objection; and (d) be filed, together with proof of service, with the Court, and be served

23  so that they are actually received by: (i) the Clerk of the Court; (ii) counsel for the First

24  Lien Steering Committee; (iii) the United States Trustee; (iv) counsel to the Debtors; and (v)

25  counsel to the Creditors' Committee, each at the addresses set forth in the Confirmation

26  Hearing Notice, no later than 4:00 p.m. (prevailing Pacific Time) on **January 4, 2010**

27  (which is at least twenty-five (25) days after the proposed distribution of the Confirmation

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1    Hearing Notice).

2    7.    The First Lien Steering Committee shall file its memorandum in support of

3    Plan confirmation, and any other party supporting the Plan shall file with the Court and

4    serve on the applicable objecting party any response to a timely filed objection to

5    confirmation of the Plan by **January 11, 2010.**

6    8.    The First Lien Steering Committee shall not be required to solicit votes from

7    the Holders of General Unsecured Claims whose Claims have been paid prior to the

8    Disclosure Statement Hearing, to the extent such Claims would have otherwise been entitled

9    to vote on the Plan.

10    9.    The Claims and Solicitation Agent shall file the Voting Report no later than

11    **January 11, 2010.**

12    10.    The First Lien Steering Committee may serve solicitation packages to holders

13    of claims entitled to vote on the Plan in either CD-Rom form or paper copies.  To the extent

14    a creditor receives a solicitation package in CD-Rom form, such creditor can request a paper

15    version by contacting the Claims and Solicitation Agent by telephone at (866) 989-6144 or

16    contact Brian Osborne at bosborne@omnimgmt.com and the Claims and Solicitation Agent

17    shall send a paper copy of the solicitation package to any such creditor at no charge to such

18    creditor.

19    11.    Any party in interest may seek further clarification from the Court on vote

20    tabulation and the solicitation process, and retain the right to object or raise any issue with

21    respect to any Ballot.

22    APPROVED/ DISAPPROVED:

23    Dated this 27ᵗʰ day of November 2009.

24    By: _Edward M. McDonald_

25

26    August Landis
     Office of the United States Trustee
27    300 Las Vegas Blvd. S., Ste. 4300
28    Las Vegas, NV  89101

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

4

Submitted by:

Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
(702) 979-2357 (Telephone)
(702) 362-9472 (Facsimile)
Nleatham@klnevada.com

Dated: November 24, 2009

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

5

### LR 9021 Certification

In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

____ The court has waived the requirement of approval under LR 9021.

____No parties appeared or filed written objections, and there is no trustee appointed in the case.

 X  I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and any trustee appointed in this case, and each has approved or disapproved the order, or failed to respond, as indicated below.

| Party | Approved | Disapproved | No Response |
|---|---|---|---|
| Debtors' Counsel<br>Pachulski Stang, Ziehl & Jones LLP<br>Larson & Stephens | X | | |
| Counsel to the First Lien Agent<br>Skadden Arps Slate Meagher & Flom LLP | | | X |
| Counsel to the Second Lien Agent<br>Ropes & Gray LLP | X | | |
| Counsel to the Rhodes Entities<br>Greenburg Traurig LLP | X | | |
| Counsel to the Creditors' Committee<br>Parsons Behle & Latimer | X | | |
| Office of the United States Trustee | X | | |
| Counsel to Stanley Engineering<br>Anderson, McPharlin & Conners LLP | | | X |
| Counsel to Clark County<br>Olson, Cannon, Gormley & Desruisseaux | X | | |

Submitted by:

DATED this 1st day of December 2009.

By: /s/ Nile Leatham
Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
(702) 979-2357 (Telephone)
(702) 362-9472 (Facsimile)
Nleatham@klnevada.com

Exhibit C

## SOLICITATION PROCEDURES

### A.    The Record Date

The Bankruptcy Court has approved the date that an order is entered approving the Disclosure Statement as the Record Date for purposes of determining, among other things, which Holders of Claims are entitled to vote on the Plan.[1]

### B.    The Voting Deadline

The Bankruptcy Court has approved 4:00 p.m. (prevailing Pacific time) on **January 4, 2010** as the Voting Deadline. To be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered by using the return envelope provided or by delivery by: (a) first class mail; (b) overnight courier; (c) personal delivery; (d) email; or (e) fax, so that they are actually <u>received</u>, no later than the Voting Deadline by the Claims and Solicitation Agent. The Ballots will clearly indicate the appropriate mailing address, email address and fax number to which your Ballot may be sent.

### C.    Solicitation Procedures

1. <u>The Solicitation Package</u>:  The following materials shall constitute the Solicitation Package:

   a.    a cover letter: (i) describing the contents of the Solicitation Package and instructions on how paper copies of any materials that may be provided in CD-ROM format can be obtained at no charge and (ii) urging the Holders in each of the Voting Classes (as defined below) to vote to accept the Plan;

   b.    the Solicitation Procedures Order;

   c.    a copy of the Solicitation Procedures;

   d.    an appropriate form of Ballot;

   e.    the Confirmation Hearing Notice (as defined below);

   f.    a copy of a letter signed by the First Lien Steering Committee, the Debtors, the Creditors' Committee and the Second Lien Agent (collectively, the "<u>Recommending Parties</u>") in support of the Plan;

   g.    a copy of a letter signed by the Creditors' Committee in support of the Plan; and

   h.    the approved form of the Disclosure Statement (together with the Plan, which is <u>Exhibit A</u> thereto) in CD-ROM format.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Disclosure Statement, or Solicitation Procedures Order, as applicable.

2.  <u>Distribution of the Solicitation Packages</u>:  The Solicitation Packages shall be served on:

> a.  Holders of Claims for which Proofs of Claim have been timely-filed, as reflected on the Claims Register as of the Record Date, which have not been withdrawn or disallowed, <u>provided</u>, <u>however</u>, that Holders of Claims to which an objection is pending at least fifteen days prior to the Confirmation Hearing shall not be entitled to vote unless they become eligible to vote through a Resolution Event in section C.3 herein;

> b.  Holders of Claims that are listed in the Debtors' Schedules, with the exception of those Claims that have been paid in full or are scheduled as contingent, unliquidated, or disputed (excluding such scheduled Claims that have been superseded by a timely-filed Proof of Claim); and

> c.  Holders whose Claims arise pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Bankruptcy Court, in an order of the Bankruptcy Court, or in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court, in each case regardless of whether a Proof of Claim has been Filed; and

> d.  the United States Trustee for the District of Nevada.

3.  <u>Temporary Allowance of Claims for Voting Purposes</u>:  If a Holder's Claim is subject to an objection as of the Record Date, the Holder of such Claim cannot vote any disputed portion of its Claim unless one or more of the following events have taken place at least five business days before the Voting Deadline: (i) an order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing; (ii) an order of the Bankruptcy Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing; (iii) an order of the Bankruptcy Court approving a stipulation or other agreement by the Holder of such Claim and the Debtors, with the consent of the First Lien Steering Committee, resolving the objection and allowing such Claim in an agreed upon amount; (iv) a stipulation or other agreement is executed by the Holder of such Claim with the Debtors, with the consent of the First Lien Steering Committee, temporarily allowing the Holder of such Claim to vote its Claim in an agreed upon amount; or (v) the pending objection to such Claim is voluntarily withdrawn by the objecting party (each, a "<u>Resolution Event</u>").  No later than two business days after a Resolution Event, the Claims and Solicitation Agent shall distribute a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant Holder of such temporarily allowed Claim that has been allowed for voting purposes only by such Resolution Event, which must be returned according to the instructions on the Ballot by no later than the Voting Deadline.

If the Holder of a Claim receives a Solicitation Package, but the First Lien Steering Committee or the Debtors (with the consent of the First Lien Steering Committee) object to such Claim <u>after</u> the Record Date but before fifteen days prior to the Confirmation Hearing, the notice of objection will inform such Holder of the rules applicable to Claims subject to a pending

objection, and the procedures for temporary allowance for voting purposes. Furthermore, if the Holder of a Claim receives a Solicitation Package, but the First Lien Steering Committee or the Debtors (with the consent of the First Lien Steering Committee) object to such Claim after fifteen days prior to the Confirmation Hearing, the Holder's Claim shall be deemed temporarily allowed for voting purposes only without further action by the Holder of such Claim and without further order of the Bankruptcy Court.

4.  Form of Notice to Unclassified Claims and Unimpaired Classes:  The First Lien Steering Committee will not solicit votes from unclassified Claims or Claims in Unimpaired Classes that are deemed to accept the Plan. The First Lien Steering Committee will, however, send a Notice of Non-Voting Status, in lieu of the Solicitation Package to the Holders of such Claims. This notice will explain to the Holder of an unclassified Claim or a Claim in an Unimpaired Class of such Holders' non-voting status and that such Holders may obtain certain materials in the Solicitation Package from the Claims and Solicitation Agent.

5.  Publication of Confirmation Hearing Notice:  The First Lien Steering Committee, through the Debtors, shall, one time after the Disclosure Statement Hearing, publish the Confirmation Hearing Notice, which will contain, among other things, the Plan Objection Deadline, the Voting Deadline, and date of the Confirmation Hearing, in *The Las Vegas Sun* to provide notification to those persons who may not receive notice by mail. Such publication of the Confirmation Hearing Notice shall occur on a date no less than fifteen days prior to the Voting Deadline.

**D.  Voting and General Tabulation Procedures**

1.  Holders of Claims Entitled to Vote:  Only the following Holders of Claims in Voting Classes shall be entitled to vote with regard to such Claims:

  a.  Holders of Claims for which Proofs of Claim have been timely-filed, as reflected on the Claims Register as of the Record Date, which have not been withdrawn or disallowed, provided, however, that Holders of Claims to which an objection is pending at least fifteen days prior to the Confirmation Hearing shall not be entitled to vote unless they become eligible to vote through a Resolution Event in section C.3 herein;

  b.  Holders of Claims that are listed in the Debtors' Schedules, with the exception of those Claims that have been paid in full or are scheduled as contingent, unliquidated, or disputed (excluding such scheduled Claims that have been superseded by a timely-filed Proof of Claim); and

  c.  Holders whose Claims arise pursuant to an agreement or settlement with the Debtors (with the consent of the First Lien Steering Committee), as reflected in a document filed with the Bankruptcy Court, in an order of the Bankruptcy Court, or in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court, in each case regardless of whether a Proof of Claim has been Filed.

2. <u>Establishing Claim Amounts</u>: In tabulating votes, the following hierarchy shall be used to determine the Claim amount associated with each Holder's vote regardless of the amount that the Claim Holder may write in on the Ballot:

      a.     the Claim amount as Allowed by an order of the Bankruptcy Court;

      b.     the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event under the procedures set forth in section C.3 herein;

      c.     the Claim amount settled and/or agreed upon by the Debtors with the consent of the First Lien Steering Committee prior to the Record Date;

      d.     the Claim amount contained in a Proof of Claim that has been timely-filed by the Bar Date (or deemed timely-filed by the Bankruptcy Court under applicable law) that is not the subject of an objection or has not been withdrawn; <u>provided, however</u>, that Ballots cast by Holders whose Claims are listed in unliquidated or unknown amounts that are not the subject of an objection will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code, and will count as Ballots for Claims in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code;

      e.     the Claim amount listed in the Debtors' Schedules, provided that such Claim is not scheduled as contingent, disputed, or unliquidated and has not been paid; and

      f.     in the absence of any of the foregoing, zero.

The Claim amount established herein shall control for voting purposes only, and shall not constitute the Allowed amount of any Claim.

3. <u>General Ballot Tabulation</u>: The following voting procedures and standard assumptions shall be used in tabulating ballots:

      a.     except as otherwise provided herein, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the First Lien Steering Committee shall reject such Ballot as invalid and, therefore, decline to count it in connection with Confirmation;

      b.     the Claims and Solicitation Agent will date and time-stamp all Ballots when received. The Claims and Solicitation Agent shall retain the original Ballots and an electronic copy of the same for a period of one year after the Effective Date of the Plan, unless otherwise ordered by the Bankruptcy Court;

      c.     the Claims and Solicitation Agent will file a voting report (the "<u>Voting Report</u>") with the Bankruptcy Court by January 11, 2010. The Voting Report shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity

including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or lacking necessary information, or damaged ("Irregular Ballots");

d.    the method of delivery of Ballots to be sent to the Claims and Solicitation Agent is at the election and risk of each Holder, and except as otherwise provided, a Ballot or Master Ballot will be deemed delivered only when the Claims and Solicitation Agent actually receives an executed Ballot;

e.    an executed Ballot is required to be submitted by the Entity submitting such Ballot;

f.    no Ballot should be sent to any of the Debtors, the Debtors' agents (other than the Claims and Solicitation Agent), the Debtors' financial or legal advisors, the First Lien Agent or its legal advisors, the Second Lien Agent or its legal advisors, or the First Lien Steering Committee's financial or legal advisors, and if so sent will not be counted;

g.    the First Lien Steering Committee expressly reserves the right to amend from time to time the terms of the Plan in accordance with the terms thereof (subject to compliance with the requirements of section 1127 of the Bankruptcy Code and the terms of the Plan regarding modification);

h.    if multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting Deadline, the last Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior Ballot;

i.    Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted. Further, to the extent there are multiple Claims within the same Class, the First Lien Steering Committee may, in its discretion, aggregate the Claims of any particular Holder within a Class for the purpose of counting votes;

j.    a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity must indicate such capacity when signing and, if required or requested by the Claims and Solicitation Agent, the First Lien Steering Committee, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder;

k.    the First Lien Steering Committee, subject to contrary order of the Bankruptcy Court, may waive any defects or irregularities as to any particular Ballot or Master Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report;

l.     neither the First Lien Steering Committee, nor any other Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will any of them incur any liability for failure to provide such notification;

m.    unless waived or as ordered by the Bankruptcy Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

n.    in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Bankruptcy Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

o.    subject to any order of the Bankruptcy Court, the First Lien Steering Committee reserves the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the First Lien Steering Committee, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; provided, however, that any such rejections will be documented in the Voting Report;

p.    if a Claim has been estimated or otherwise Allowed for voting purposes only by order of the Bankruptcy Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Bankruptcy Court for voting purposes only, and not for purposes of allowance or distribution; and

q.    if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth in section C.3 herein.

4.  Special Provisions Related to Proposed Substantive Consolidation:  The Plan is predicated on the substantive consolidation of the Estates into a single consolidated Estate for all purposes associated with confirmation and consummation of the Plan.  Consequently, when tabulating voting results, assuming substantive consolidation, all Ballots shall be counted as if filed against a single consolidated Estate, and any obligation of any of the Debtors and all guaranties thereof by or enforceable against any other Debtors and any joint and several liability of the Debtors will be treated as a single obligation in the amount of the obligation of the primary obligor.

**E.    Third Party Release, Exculpation, and Injunction Language in Plan**

The third party release, exculpation, and injunction language in Article VIII of the Plan is included in the Disclosure Statement and further notice will be provided in the Confirmation Hearing Notice.

# Exhibit D

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 09-14814-LBR |
| | § | (Jointly Administered) |
| THE RHODES COMPANIES, LLC, | § | |
| aka "Rhodes Homes," *et al.*, | § | Chapter 11 |
| | § | |
| Debtors.[1] | § | |
| | § | |
| | § | NOTICE OF (I) CONFIRMATION HEARING AND |
| Affects: | § | OBJECTION DEADLINE WITH RESPECT TO |
| ☒   All Debtors | § | THE SECOND AMENDED MODIFIED PLAN OF |
| ☐   Affects the following | § | REORGANIZATION PURSUANT TO |
| Debtor(s) | § | CHAPTER 11 OF THE BANKRUPTCY CODE FOR |
| | § | THE RHODES COMPANIES, LLC, ET AL., AND |
| | § | (II) SOLICITATION AND VOTING PROCEDURES |

TO ALL CREDITORS AND PARTIES IN INTEREST:

     **1.**     **Approval of Disclosure Statement and Solicitation Procedures.**  On **December 1, 2009,** the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") entered an order (the "Solicitation Procedures Order") (i) approving the *Second Amended Modified Disclosure Statement for the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al.* (as amended from time to time and including all exhibits and supplements, the "Disclosure Statement") for the *Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al.* (as amended from time to time and including all exhibits and supplements, the "Plan"), as containing adequate information, as required under section 1125(a) of title 11 of the United States Code (the "Bankruptcy Code"), and (ii) authorizing the First Lien Steering Committee to solicit votes with regard to the acceptance or rejection of the Plan. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

     **2.**     **Confirmation Hearing.**  A hearing to confirm the Plan (the "Confirmation Hearing") will commence at 9:00 a.m. prevailing Pacific Time on **January 14, 2010,** before the Honorable Linda B. Riegle, United States Bankruptcy Judge, located at 300 Las Vegas Boulevard South, Las Vegas, Nevada 89101. The Confirmation Hearing may be continued from time to time by announcing such continuance in open court or otherwise, without further notice

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

to parties in interest. The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to interested parties.

3. **Record Date.** The Record Date for purposes of determining which Holders of Claims and Interests are entitled to vote on the Plan is **December 1, 2009**.

4. **Voting Deadline.** If you hold a Claim against one of the Debtors as of the Record Date, and are entitled to vote to accept or reject the Plan, you have received a Ballot and voting instructions appropriate for your Claim(s). For your vote to accept or reject the Plan to be counted, you must complete all required information on the Ballot, execute and return the completed Ballot in the manner indicated on the Ballot by 4:00 p.m. prevailing Pacific Time on **January 4, 2010** (the "Voting Deadline"). Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.

5. **Objections to the Plan.** The Bankruptcy Court has established **January 4, 2010**, at 4:00 p.m. prevailing Pacific Time, as the last date and time for filing and serving objections to the Confirmation of the Plan (the "Plan Objection Deadline"). Any objections to the confirmation of the Plan must: (a) be in writing; (b) conform to the Bankruptcy Rules and Local Rules; (c) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state with particularity the basis and nature of any objection and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed, together with proof of service, with the Court, and be served so that they are actually received by: (i) the Clerk of the Bankruptcy Court, Judge Linda B. Riegle's Chambers, Courtroom 1, 300 Las Vegas Boulevard South, Las Vegas, Nevada 89101; (ii) counsel to the First Lien Steering Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn.: Philip C. Dublin, Abid Qureshi; (iii) co-counsel to the First Lien Steering Committee, Kolesar & Leatham, Wells Fargo Financial Center, 3320 West Sahara Avenue, Las Vegas, Nevada 89102, Attn.: Nile Leatham; (iv) the United States Trustee, 300 Las Vegas Boulevard South, Suite 4300, Las Vegas, Nevada 89101, Attn.: Edward M. McDonald; (v) counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, Suite 1100, Los Angeles, California 90067-4100, Attn.: James I. Stang, Shirley S. Cho; (vi) co-counsel to the Debtors, Larson & Stephens, 810 S. Casino Center Boulevard, Suite 104, Las Vegas, Nevada 89101, Attn.: Zachariah Larson; and (vii) counsel to the Creditors' Committee, Parsons Behle & Latimer, 50 West Liberty Street, Suite 750, Reno, Nevada 89501, Attn.: Rew R. Goodenow, Karl Y. Olsen, and One Utah Center, 201 South Main Street, Suite 1800, P.O. Box 45898, Salt Lake City, Utah 84145-0898, Attn.: J. Thomas Beckett, David P. Billings (collectively, the "Noticed Parties").

6. **Inquiries.** The First Lien Steering Committee will serve, through the Debtors, paper copies of, and/or a CD-ROM containing, the Solicitation Procedures Order, the Disclosure Statement, and all exhibits to the Disclosure Statement, including the Plan, on the Noticed Parties. Holders of Claims who are entitled to vote to accept or reject the Plan shall receive a Solicitation Package containing paper copies of this Confirmation Hearing Notice, applicable Ballot(s), and the Solicitation Procedures. The Solicitation Package (except the Ballots) may also be obtained from Omni Management Group, LLC's (the "Claims and Solicitation Agent") website at www.omnimgt.com/rhodes, by writing to The Rhodes Companies, LLC, c/o Omni Management Group, LLC, 16161 Ventura Blvd., Suite C, PMB 477, Encino, California 91436, by calling (866) 989-6144, or by sending an email to Nova@omnimgt.com. For Holders of

Claims, the Claims and Solicitation Agent will answer questions regarding the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, provide additional copies of all materials, and oversee the voting tabulation. The Claims and Solicitation Agent can be contacted by writing to The Rhodes Companies, LLC, c/o Omni Management Group, LLC, 16161 Ventura Blvd., Suite C, PMB 477, Encino, California 91436, by calling (866) 989-6144, or by sending an email to Nova@omnimgt.com.

**7. Temporary Allowance of Claims for Voting Purposes.** If a Holder's Claim is subject to an objection as of the Record Date, the Holder of such Claim cannot vote any disputed portion of its Claim unless one or more of the following events have taken place at least five business days before the Voting Deadline: (i) an order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing; (ii) an order of the Bankruptcy Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing; (iii) an order of the Bankruptcy Court approving a stipulation or other agreement by the Holder of such Claim and the Debtors, with the consent of the First Lien Steering Committee, resolving the objection and allowing such Claim in an agreed upon amount; (iv) a stipulation or other agreement is executed by the Holder of such Claim with the Debtors, with the consent of the First Lien Steering Committee, temporarily allowing the Holder of such Claim to vote its Claim in an agreed upon amount; or (v) the pending objection to such Claim is voluntarily withdrawn by the objecting party (each, a "Resolution Event"). No later than two business days after a Resolution Event, the Claims and Solicitation Agent shall distribute a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant Holder of such temporarily allowed Claim that has been allowed for voting purposes only by such Resolution Event, which must be returned according to the instructions on the Ballot by no later than the Voting Deadline.

If the Holder of a Claim receives a Solicitation Package, but the First Lien Steering Committee or the Debtors (with the consent of the First Lien Steering Committee) object to such Claim after the Record Date but before fifteen days prior to the Confirmation Hearing, the notice of objection will inform such Holder of the rules applicable to Claims subject to a pending objection, and the procedures for temporary allowance for voting purposes. Furthermore, if the Holder of a Claim receives a Solicitation Package, but the First Lien Steering Committee or the Debtors (with the consent of the First Lien Steering Committee) object to such Claim after fifteen days prior to the Confirmation Hearing, the Holder's Claim shall be deemed temporarily allowed for voting purposes only without further action by the Holder of such Claim and without further order of the Bankruptcy Court.

**8. Distribution Record Date.** The Bankruptcy Court has approved the date that the Confirmation Order is entered on the docket in these Chapter 11 Cases as the Distribution Record Date for purposes of determining which Creditors are entitled to receive distributions under the Plan.

**9. Release, Exculpation, and Injunction Language in the Plan.** Please be advised that the Plan contains certain release and exculpation provisions. Moreover, Article VIII.H of the Plan proposes an injunction and provides as follows: except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims against the Debtors, and all Entities holding Interests, are permanently enjoined, from and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching,

collecting, or recovering by any manner or means any judgment, award, decree or order against the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors or the property or estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors or against the property or Estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding an indication in a Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise (provided, that, to the extent the Rhodes Entities Claims are Allowed, the Rhodes Entities, without the need to file any such motion, shall retain the right to assert a setoff against any Claims or Causes of Action that the Reorganized Debtors or Litigation Trust may assert against the Rhodes Entities, with the Reorganized Debtors and Litigation Trust, as applicable, reserving the right to challenge the propriety of any such attempted setoff, with any such challenge to be resolved by the Bankruptcy Court); and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Dated:    December 4, 2009
          Las Vegas, Nevada


By:   /s/ Philip C. Dublin
      Nile Leatham (NV Bar No. 002838)
      KOLESAR & LEATHAM
      Wells Fargo Financial Center
      3320 W. Sahara Ave.
      Las Vegas, NV 89102
      (702) 979-2357 (Telephone)
      (702) 362-9472 (Facsimile)
      Nleatham@klnevada.com

      and

      Philip C. Dublin (NY Bar No, 2959344)
      Abid Qureshi (NY Bar No. 2684637)
      AKIN GUMP STRAUSS HAUER & FELD LLP
      One Bryant Park
      New York, New York 10036
      (212) 872-1000 (Telephone)
      (212) 872-1002 (Facsimile)
      pdublin@akingump.com
      aqureshi@akingump.com

      Counsel for the First Lien Steering Committee

Exhibit E

December 4, 2009

**To the Creditors of The Rhodes Companies, LLC and Its Affiliated Debtors:**

The First Lien Steering Committee,[1] the Debtors, the Creditors' Committee and the Second Lien Agent (collectively, the "Recommending Parties"), as parties to the settlement (the "Mediation Settlement") that is embodied in the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.* (the "Plan"), write this letter to creditors to recommend that each creditor entitled to vote on the Plan vote in favor of the Plan.

The Plan is the product of extensive negotiations among the Recommending Parties and certain other parties to the Mediation Settlement and incorporates the terms of the Mediation Settlement. The Mediation Settlement was reached following a three day mediation session held on August 17, 24 and 25, 2009 before the Honorable Richard Neiter, United States Bankruptcy Court, Central District of California. The Mediation Settlement provides the framework for the treatment of claims under the Plan and a material increase in the projected recoveries for the majority of the Debtors' creditors absent such settlement.

Pursuant to the Mediation Settlement and the Plan, the First Lien Lenders will assume ownership of the Debtors and will continue to operate the Debtors as a going concern homebuilder primarily in the Las Vegas, Nevada market. In addition, the First Lien Lenders will receive, on account of their secured claims, $1.5 million in cash from their collateral and their pro rata share of $50 million in new secured notes. The First Lien Lenders will use the $1.5 million of the cash they receive from their collateral to purchase the claims of many of the Debtors' general unsecured creditors for the allowed amount of such claim. A list of claims being purchased by the First Lien Lenders is attached to the Disclosure Statement as Exhibit H. The Second Lien Lenders will receive 50% of the net proceeds of certain pending litigation on account of their secured claims, assuming the class of Second Lien Lenders votes in favor of the Plan. The non-Debtor Rhodes Entities will, among other things, pay $3.5 million in cash to the Reorganized Debtors and will receive, among other things, (i) a limited release as described in the Plan and (ii) certain assets located in Arizona. The Plan also provides for the establishment of a Litigation Trust that will pursue certain claims and causes belonging to the Debtors' estates for the benefit of those unsecured creditors whose claims are not purchased by the First Lien Lenders. The First Lien Lenders and the Second Lien Lenders will also receive distributions from the Litigation Trust as unsecured creditors on account of their deficiency claims.

Please be advised that Article VIII of the Plan contemplates releases for numerous parties. The Recommending Parties recommend that, prior to voting on the Plan, each creditor review closely the releases contained in Article VIII.

As discussed more fully in Article IV.J.3 of the Disclosure Statement, the Recommending Parties believe that the Mediation Settlement is fair and equitable. Moreover, given the current facts and circumstances of the Debtors' chapter 11 cases, the Recommending Parties believe that the Plan provides the best alternative for creditors and, therefore, recommends that the Debtors' creditors vote in favor of the Plan.

If you have any questions with respect to the treatment for your class, please contact Meredith Lahaie at (212) 872-1000 (mlahaie@akingump.com).

Very truly yours,

The Recommending Parties

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

Exhibit F

## RHODES COMPANIES OFFICIAL CREDITORS COMMITTEE

December 1, 2009

    Re:   Rhodes Companies Reorganization

To the Unsecured Creditors of the Rhodes Companies:

The purpose of this letter is to tell you that the Official Committee (the "Committee") of Unsecured Creditors of the Rhodes Companies supports the proposed plan (the "Plan") that is described in and attached to the enclosed disclosure statement (the "Disclosure Statement"). A ballot is also enclosed if you have a claim and may be entitled to vote.

The Disclosure Statement has been approved by the Bankruptcy Court as containing adequate information about the Plan. Please read the disclosure statement carefully before casting your ballot. **THE DISCLOSURE STATEMENT AND ITS EXHIBITS, INCLUDING THE PLAN, IS THE ONLY SOURCE OF INFORMATION YOU CAN RELY ON IN DECIDING HOW TO VOTE.**

The Committee recommends that, after you read the Disclosure Statement carefully, you should vote in favor of the Plan.

The Plan, in very general terms, provides that the ownership of the Rhodes Companies will be transferred to the existing senior secured first lien lenders (the "Lenders"). The Lenders will also receive cash from their collateral, cash from certain non-debtor Rhodes entities, and other consideration.

Pursuant to a settlement that was negotiated among practically all the interested parties, including the Committee, the Lenders have agreed, among other things, to use up to $1.5 million of the cash they receive from their collateral to purchase, for face value (i.e., 100%), the claims of many of the Rhodes Companies' unsecured creditors. In addition, the Lenders have agreed to waive certain bankruptcy claims they may have against such creditors. The unsecured creditors that have already qualified to have their claims purchased in this manner are listed on Exhibit H to the Disclosure Statement. The details of the Lenders' claims purchase program are described on pages 63 through 66 of the Disclosure Statement.

Without this settlement – or without expensive and uncertain litigation – none of the Rhodes Companies' unsecured creditors would receive anything more than a few pennies on the dollar on their claims. With this settlement, the Committee believes that the vast majority of those creditors holding undisputed claims will be paid in full. Consequently, the Committee supports the Plan and recommends that you should vote in favor of the Plan.

**PLEASE NOTE THE BALLOT SUBMISSION DEADLINE OF JANUARY 4 AT 4:00 PM, Pacific Time.** Ballots that are received after that time on that date will not be counted. After the

votes are counted, the Plan will then be presented to the Bankruptcy Court for confirmation on January 14, 2009.

If you have questions, please feel free to contact me, or any of the Committee members listed below, or the Committee's legal counsel.

Thank you very much.

Sincerely,

Beverly Wolf, Interstate Plumbing and Air Conditioning
As Chairwoman of the Official Committee of Unsecured Creditors of the Rhodes Companies

Other Members of the Committee:

Helen Buchanan, Southwest Iron Works, LLC
Jim VanWoerkom, C.G. Wallace, Inc.
S. Bradley Wadsworth, M&M Electric, Inc.

Counsel to the Committee:

J. Thomas Beckett, Parsons Behle & Latimer, tbeckett@pblutah.com, 801-536-6603.

Exhibit G

Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
Telephone: 702.979.2357
Facsimile: 702.362.9472
E-Mail:    nleatham@klnevada.com

Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: 212.872.1000
Facsimile: 212.872.1002
E-Mail:    pdublin@akingump.com
           aqureshi@akingump.com

*Counsel for the First Lien Steering Committee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered) |
| THE RHODES COMPANIES, LLC, aka<br>"Rhodes Homes," et al.,[1]<br>            Debtors. | Chapter 11 |
| Affects:<br>☒    All Debtors | Hearing Date:  November 24, 2009<br>Hearing Time:  1:30 p.m. |

[1]The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

| ☐ Affects the following Debtor(s) | Courtroom 1 |
|---|---|
| | **SECOND AMENDED MODIFIED DISCLOSURE STATEMENT FOR THE SECOND AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE FOR THE RHODES COMPANIES, LLC, ET AL.** |

THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE SECOND AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE FOR THE RHODES COMPANIES, LLC, ET AL. (THE "PLAN"), CERTAIN STATUTORY PROVISIONS, CERTAIN DOCUMENTS RELATED TO THE PLAN, CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES AND CERTAIN FINANCIAL INFORMATION. ALTHOUGH THE FIRST LIEN STEERING COMMITTEE BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. THE INFORMATION INCLUDED HEREIN IS FOR PURPOSES OF SOLICITING ACCEPTANCE OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER AND HOW TO VOTE ON THE PLAN. THE SUMMARIES OF THE FINANCIAL INFORMATION AND THE DOCUMENTS THAT ARE ATTACHED HERETO OR INCORPORATED BY REFERENCE HEREIN ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO SUCH INFORMATION AND DOCUMENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THE DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR THE OTHER DOCUMENTS AND FINANCIAL INFORMATION INCORPORATED HEREIN BY REFERENCE, THE PLAN OR THE OTHER DOCUMENTS AND FINANCIAL INFORMATION, AS THE CASE MAY BE, SHALL GOVERN FOR ALL PURPOSES. FACTUAL INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. THE FIRST LIEN STEERING COMMITTEE DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THE STATEMENTS AND FINANCIAL INFORMATION CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THE DISCLOSURE STATEMENT SHOULD NOT INFER THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH HEREIN BETWEEN THE DATE HEREOF AND THE TIME OF SUCH REVIEW. EACH HOLDER OF A CLAIM ENTITLED TO VOTE ON THE

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

1  PLAN SHOULD CAREFULLY REVIEW THE PLAN, THE DISCLOSURE STATEMENT,
2  AND EXHIBITS TO THE PLAN AND DISCLOSURE STATEMENT IN THEIR
   ENTIRETY BEFORE CASTING A BALLOT.  THE DISCLOSURE STATEMENT DOES
3  NOT CONSTITUTE LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.  ANY
   PERSONS DESIRING ANY SUCH ADVICE OR OTHER ADVICE SHOULD CONSULT
4  WITH THEIR OWN ADVISORS.

5      NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT
6  TO THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THE DISCLOSURE
   STATEMENT.  NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE
7  VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE FIRST LIEN
   STEERING COMMITTEE OTHER THAN AS SET FORTH IN THE DISCLOSURE
8  STATEMENT.  ANY INFORMATION, REPRESENTATIONS OR INDUCEMENTS
   MADE TO OBTAIN AN ACCEPTANCE OF THE PLAN THAT ARE OTHER THAN, OR
9  INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN AND IN THE
10 PLAN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR
   INTEREST.
11

12      WITH RESPECT TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS
   AND OTHER PENDING, THREATENED OR POTENTIAL LITIGATION OR ACTIONS,
13 THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE AND MAY NOT BE
   CONSTRUED AS AN ADMISSION OF FACT, LIABILITY, STIPULATION OR
14 WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT
15 NEGOTIATIONS AND PROTECTED BY RULE 408 OF THE FEDERAL RULES OF
   EVIDENCE.
16

17      THE DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR
   DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE
18 COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY
   OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.
19

20      ALTHOUGH THE FIRST LIEN STEERING COMMITTEE HAS USED ITS BEST
   EFFORTS TO ENSURE THE ACCURACY OF THE FINANCIAL INFORMATION
21 PROVIDED IN THE DISCLOSURE STATEMENT, THE FINANCIAL INFORMATION
   CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THE DISCLOSURE
22 STATEMENT HAS NOT BEEN AUDITED.

23      THE PROJECTIONS CONTAINED IN EXHIBITS D AND E TO THE
24 DISCLOSURE STATEMENT AND REFERENCED IN ARTICLE V OF THE
   DISCLOSURE STATEMENT HAVE BEEN PREPARED BY THE FIRST LIEN
25 STEERING COMMITTEE WITH THE ASSISTANCE OF ITS ADVISORS.  THESE
   PROJECTIONS, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE
26 NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT,
   THOUGH CONSIDERED REASONABLE BY THE FIRST LIEN STEERING
27 COMMITTEE, MAY NOT BE REALIZED AND ARE INHERENTLY SUBJECT TO
28 SIGNIFICANT BUSINESS, ECONOMIC, COMPETITIVE, INDUSTRY, REGULATORY,

MARKET AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE FIRST LIEN STEERING COMMITTEE'S CONTROL. THE FIRST LIEN STEERING COMMITTEE CAUTIONS THAT NO REPRESENTATIONS CAN BE MADE AS TO THE ACCURACY OF THESE PROJECTIONS OR TO THE ABILITY TO ACHIEVE THE PROJECTED RESULTS. SOME ASSUMPTIONS INEVITABLY WILL NOT MATERIALIZE. FURTHER, EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THESE PROJECTIONS WERE PREPARED MAY BE DIFFERENT FROM THOSE ASSUMED OR, ALTERNATIVELY, MAY HAVE BEEN UNANTICIPATED, AND THUS THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER. THE PROJECTIONS, THEREFORE, MAY NOT BE RELIED UPON AS A GUARANTY OR OTHER ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.

SEE ARTICLE VI OF THE DISCLOSURE STATEMENT, ENTITLED "CERTAIN FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT OR REJECT THE PLAN.

THE DISCLOSURE STATEMENT HAS BEEN DETERMINED BY THE BANKRUPTCY COURT TO CONTAIN ADEQUATE INFORMATION AS REQUIRED BY SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, 11 U.S.C. §§ 101 - 1532 (THE "BANKRUPTCY CODE"), WHICH DETERMINATION DOES NOT CONSTITUTE A RECOMMENDATION OR APPROVAL OF THE PLAN.

UNLESS OTHERWISE STATED, ANY CAPITALIZED TERM USED HEREIN SHALL HAVE THE MEANING ASSIGNED TO SUCH TERM HEREIN OR, IF NO MEANING IS SO ASSIGNED, THE MEANING ASSIGNED TO SUCH TERM IN THE PLAN.

**THE BANKRUPTCY COURT HAS SCHEDULED THE CONFIRMATION HEARING TO COMMENCE ON JANUARY 14, 2010 AT 9:00 A.M. PREVAILING PACIFIC TIME BEFORE THE HONORABLE LINDA B. RIEGLE, UNITED STATES BANKRUPTCY JUDGE, IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA, IN COURTROOM 1 IN THE FOLEY FEDERAL BUILDING LOCATED AT 300 LAS VEGAS BOULEVARD SOUTH, LAS VEGAS, NEVADA 89101. THE CONFIRMATION HEARING MAY BE ADJOURNED FROM TIME TO TIME BY THE BANKRUPTCY COURT WITHOUT FURTHER NOTICE OTHER THAN AN ANNOUNCEMENT OF THE ADJOURNED DATE MADE AT THE CONFIRMATION HEARING OR ANY ADJOURNMENT THEREOF.**

**OBJECTIONS TO CONFIRMATION OF THE PLAN MUST BE FILED AND SERVED ON OR BEFORE JANUARY 4, 2010, IN ACCORDANCE WITH THE SOLICITATION NOTICE THAT THE FIRST LIEN STEERING COMMITTEE FILED AND SERVED ON HOLDERS OF CLAIMS, HOLDERS OF INTERESTS AND OTHER PARTIES IN INTEREST. IF OBJECTIONS TO CONFIRMATION ARE**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

iv

**NOT TIMELY SERVED AND FILED IN COMPLIANCE WITH THE SOLICITATION NOTICE, THEY MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

v

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

# TABLE OF CONTENTS

Article I. SUMMARY I

    A.    Plan Overview.................................................................................................1

    B.    Settlement Overview.......................................................................................2

    C.    Potential Claims Against the Rhodes Entities................................................4

    D.    The Debtors' Principal Assets and Indebtedness ...........................................5

    E.    Treatment of Claims and Interests .................................................................6

    F.    Claims Estimates............................................................................................9

    G.    Questions and Answers Regarding this Disclosure Statement and the Plan..........10

    H.    Voting and Confirmation..............................................................................18

    I.    Consummation of the Plan...........................................................................19

Article II. BACKGROUND.........................................................................................20

    A.    Description of the Debtors' Business Operations .........................................20

    B.    Pending Significant Litigation .....................................................................24

Article III. THE CHAPTER 11 CASES........................................................................25

    A.    Events Leading to the Chapter 11 Cases......................................................25

    B.    Initiation of the Chapter 11 Cases................................................................26

    C.    Stabilization of Operations ..........................................................................26

    D.    Appointment of the Creditors' Committee ..................................................28

    E.    Claims Bar Dates.........................................................................................28

Article IV. SUMMARY OF THE PLAN .......................................................................29

    A.    Overview of a Chapter 11 Plan ...................................................................30

    B.    Administrative and Priority Claims .............................................................31

    C.    Classification and Treatment of Claims.......................................................32

    D.    Bankruptcy Code Section 1111(b) Election.................................................35

    E.    Cramdown....................................................................................................35

    F.    Means for Implementation of the Plan.........................................................35

    G.    Treatment of Executory Contracts and Unexpired Leases...........................51

    H.    Procedures for Resolving Disputed Claims .................................................55

    I.    Provisions Governing Distributions.............................................................57

    J.    Effect of Confirmation of the Plan...............................................................66

    K.    Allowance and Payment of Certain Administrative Claims .........................75

    L.    Conditions Precedent to Confirmation and Consummation of the Plan ...............76

    M.    Modification, Revocation, Or Withdrawal of the Plan ................................79

    N.    Retention of Jurisdiction .............................................................................81

Article V. STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN .............81

    A.    The Confirmation Hearing...........................................................................81

    B.    Confirmation Standards ...............................................................................82

    C.    Financial Feasibility....................................................................................83

    D.    Best Interests of Creditors Test ...................................................................83

    E.    Acceptance by Impaired Classes .................................................................85

    F.    Confirmation Without Acceptance by All Impaired Classes ........................86

vi

Article VI. CERTAIN FACTORS TO BE CONSIDERED PRIOR TO VOTING .........................87
    A.     Certain Bankruptcy Considerations ........................................................88
    B.     Other Considerations ..............................................................................90
    C.     Plan Risk Factors ...................................................................................91

Article VII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES .....................................94
    A.     Certain U.S. Federal Income Tax Consequences to Reorganized Debtors ...........95
    B.     Certain Federal Income Tax Consequences to Holders of Claims .........................98
    C.     Other Tax Matters ................................................................................107

Article VIII. RECOMMENDATION .........................................................................................108

Article IX. CONCLUSION .......................................................................................................109

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Article I.
## SUMMARY

The following summary is qualified in its entirety by the more detailed information contained in the Plan and elsewhere in the Disclosure Statement.

On either March 31, 2009 or April, 1, 2009 (collectively, the "Petition Date"), The Rhodes Companies, LLC and certain of its affiliates and subsidiaries (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. Prior to and after the Petition Date, the Debtors operated one of the largest independent homebuilding businesses in Las Vegas and Nevada.

The Disclosure Statement is being furnished by the First Lien Steering Committee pursuant to section 1125 of the Bankruptcy Code in connection with: (a) the solicitation of votes for the acceptance or rejection of the Plan and (b) the confirmation hearing (the "Confirmation Hearing"), which is scheduled for January 14, 2010 at 9:00 a.m. Pacific Time (the "Confirmation Hearing Date"). A copy of the Plan is annexed hereto as Exhibit A and incorporated by reference herein.

The Disclosure Statement describes certain aspects of the Plan, including the treatment of Claims and Interests, and describes certain aspects of the Debtors' operations, projections and other related matters.

A.    Plan Overview

The Plan is the product of extensive negotiations and a settlement reached among the First Lien Steering Committee, the Debtors, James Rhodes and his non-Debtor affiliates (collectively, with James Rhodes, the "Rhodes Entities"), the Creditors' Committee and the Second Lien Agent. The settlement was reached following a three day mediation session held on August 17, 24 and 25, 2009 before the Honorable Richard Neiter, United States Bankruptcy Court, Central District of California (the "Mediation Settlement"). The First Lien Agent also attended the mediation session but is not a party to the Mediation Settlement. As a result of this Mediation Settlement, the Plan contemplates that, upon the Debtors' emergence from chapter 11, the Debtors will continue to operate as a going concern homebuilder primarily in the Las Vegas market. The owners of the Debtors after they emerge from chapter 11 will be the First Lien Lenders. Holders of general unsecured claims (including the First Lien Lenders and Second Lien Lenders on account of their deficiency claims) will receive interests in a litigation trust unless their claims are listed on Exhibit H to the Disclosure Statement, in which case their claims may be purchased for up to 100 cents on the dollar for a full cash recovery to the extent those claims are not disputed and become Allowed. The litigation trust will analyze and, if appropriate, pursue claims and causes of action belonging to the Debtors that were not part of the collateral securing the Debtors' prepetition secured debt, which claims and causes of action shall be transferred to the litigation trust on the effective date of the Plan. The First Lien Steering Committee believes that these claims and causes of action include claims against the Rhodes Entities that are not expressly released under the Plan. A list of the Rhodes Entities is set forth on Attachment A to the Mediation Settlement Term Sheet.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1

The Plan contemplates and is predicated upon the substantive consolidation of the Debtors' chapter 11 cases into a single proceeding solely for the purposes of the chapter 11 cases and all actions with respect to confirmation, consummation and implementation of the Plan as set forth in more detail in Article IV below. The First Lien Steering Committee believes that the Plan provides the basis for the maximum recoveries possible for all constituents and that if the Plan is not confirmed, unsecured creditors will receive little to no recovery on account of their claims.

B.    Settlement Overview

The primary terms of the Mediation Settlement include the following (the terms of the settlement are set forth in greater detail on the Mediation Term Sheet attached as Exhibit 1 to the Plan):

- Upon the Debtors' emergence from chapter 11, the Debtors, as reorganized (the "Reorganized Debtors"), will be owned by the First Lien Lenders. In addition to receiving the equity of the Reorganized Debtors, the First Lien Lenders will receive their pro rata share of (i) $50 million in new secured notes, (ii) $1.5 million in cash from the proceeds of their collateral and (iii) interests in the litigation trust on account of their unsecured deficiency claims.

- The Debtors' Second Lien Lenders will receive their pro rata share of the following on account of their claims if they vote in favor of the Plan: (i) 50% of the net proceeds of the Stanley Engineering Litigation and (ii) litigation trust interests on account of their unsecured deficiency claims. In addition, if the Second Lien Lenders vote in favor of the Plan, the Reorganized Debtors will pay the reasonable fees and expenses of counsel to the agent for the Second Lien Lenders in an amount not to exceed $500,000. If the Second Lien Lenders do not vote in favor of the Plan, they will receive only litigation trust interests on account of their unsecured deficiency claims.

- The First Lien Lenders will use the $1.5 million cash payment referenced above to purchase the claims of the unsecured creditors listed on Exhibit H to this Disclosure Statement to the extent that such claims are not disputed and are Allowed, which will result in such creditors receiving a cash payment of 100 cents on account of their allowed claims against the Debtors. If the Plan is not confirmed, the claim purchases will not happen and unsecured creditors listed on Exhibit H to this Disclosure Statement will likely receive little to no recovery on account of their claims.

- Unsecured creditors whose claims are not purchased by the First Lien Lenders will receive interests in the litigation trust on account of their allowed claims. The terms of the litigation trust are set forth in the draft Litigation Trust Agreement which is attached as Exhibit I to this Disclosure Statement.

- The number of interests in the litigation trust to be received by unsecured creditors, First Lien Lenders and Second Lien Lenders will be determined by the amount of each applicable creditor's unsecured claim as compared to the total amount of unsecured claims.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

2

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

- The litigation trust will be funded initially with $100,000 by the Reorganized Debtors. The litigation trust will analyze and, if deemed appropriate by the Litigation Trustee, pursue claims and causes of action that have been transferred to the litigation trust under the Plan. These potential claims and causes of action include those claims and causes of action belonging to the Debtors against any third party not specifically released under the Plan and that are not part of the First Lien Lenders' collateral. For a list of categories of claims and potential causes of action, see Article I.C. of this Disclosure Statement regarding potential claims and causes of action against the Rhodes Entities and Exhibit G to the Disclosure Statement for a list of potential claims and causes of action against third parties, including service providers and vendors. If a claim is purchased by the First Lien Lenders pursuant to the Plan, however, the Debtors will waive any claims for preference recovery under section 547 of the Bankruptcy Code on account of those claims that are purchased at the request of the Creditors Committee. As stated in more detail below, the recovery on account of these potential claims and causes of action are highly speculative. The First Lien Lenders estimate that recovery by the General Unsecured Claims will be approximately 3.2% under the Plan, but there can be no guarantee that the recovery will be that high.

- The Rhodes Entities will transfer the Rhodes Ranch Golf Course (through the equity of the non-Debtor Rhodes Entities that own the Rhodes Ranch Golf Course) to the Reorganized Debtors. The most recent appraisal for the Rhodes Ranch Golf Course valued the Golf Course at approximately $7.9 million. The Reorganized Debtors will assume any third party debt on the Rhodes Ranch Golf Course, up to a maximum amount of $5.9 million. The Reorganized Debtors may, under certain circumstances, require Rhodes to purchase the Rhodes Ranch Golf Course any time between four (4) and eight (8) years from the Effective Date for $5.9 million in cash. The Rhodes Entities will have the right to repurchase the Rhodes Ranch Golf Course for $5.9 million after eight (8) years subject to certain terms and conditions. James Rhodes will contribute his asserted $2.4 million loan to the entity that owns the Rhodes Ranch Golf Course and indemnify the Debtors, the Reorganized Debtors, Newco and the entity that owns the Rhodes Ranch Golf Course from any liability arising from the contribution of such loan.

- The Rhodes Entities will pay $3.5 million in cash to the Reorganized Debtors, which will be used to fund distributions under the Plan and provide working capital to the extent of any excess.

- The Rhodes Entities will cooperate with the Reorganized Debtors in connection with certain matters related to the Reorganized Debtors' continued home-building operations including, without limitation, matters pertinent to (i) HOA boards, (ii) contractor licenses, and (iii) the maintenance of performance bonds.

- The Rhodes Entities will receive a limited release under the Plan. The release will be limited to claims and causes of action arising under chapter 5 of the Bankruptcy Code (i.e., preferential transfers and fraudulent transfers) solely to the extent that the transactions to which such claims and causes of action relate have been expressly disclosed in either the statements of financial affairs filed by the Debtors with the

3

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Bankruptcy Court or Schedule B to the settlement term sheet which is attached as Exhibit I to the Plan. Any claims or causes of action against the Rhodes Entities that belong to the Debtors' estates that are not expressly released under the Plan will be transferred to the litigation trust.

- Any allowed claims that the Rhodes Entities have against the Debtors' Estates will be treated as general unsecured claims and will not be subject to subordination. The Rhodes Entities will also be permitted to assert that they have the right to setoff any allowed claims they have against the Debtors' Estates against any claims that the Debtors' Estates have against the Rhodes Entities.

- The Rhodes Entities will also receive the Debtors' non-core assets located in Arizona as set forth on Attachment D to Exhibit I to the Plan or otherwise set forth in the stock and asset purchase agreement pursuant to which such transfer shall be effectuated, which assets are not necessary for the Debtors' reorganization plan and are completely landlocked by holdings of the Rhodes Entities. These assets will be transferred free and clear of any third party creditor claims (which third party creditor claims will remain assertable against the Debtors' Estates). All of these Arizona assets constitute collateral securing the Debtors' obligations to the First Lien Lenders and Second Lien Lenders. The First Lien Steering Committee believes that these assets are worth approximately $1 million. The Arizona Assets shall be transferred through the Rhodes Entities' acquisition of the stock of Rhodes Arizona Properties LLC and Elkhorn Investments, Inc., as reorganized, and certain assets of Rhodes Homes Arizona LLC. Any non-real property assets or assets not listed on Attachment D to the Mediation Term Sheet that are titled in Rhodes Arizona Properties LLC or Elkhorn Investments, Inc. shall be transferred to Newco pursuant to the stock and asset transfer agreement. To the extent any real property assets located in Arizona are titled in any Debtor other than Rhodes Arizona Properties LLC, Elkhorn Investments, Inc. or Rhodes Homes Arizona, such real property assets shall be transferred to the Rhodes Entities pursuant to the stock and asset transfer agreement.

- The First Lien Steering Committee and the Rhodes Entities will structure the Plan in a manner that is tax advantageous for the Rhodes Entities; provided, that, such structure does not create any tax liabilities for the Debtors or the First Lien Lenders.

C.    Potential Claims Against the Rhodes Entities

On April 7, 2009, the First Lien Steering Committee moved for the appointment of a chapter 11 trustee (the "Trustee Motion"). The Trustee Motion was based, in part, on allegations of questionable and unlawful business dealings, and suspicions concerning the propriety of Mr. Rhodes' conduct as the Debtors' President, as detailed in a report prepared by a nationally recognized firm retained by the First Lien Agent to conduct an investigation into the Debtors' business operations (the "Rhodes Report"). In light of the allegations contained in the Rhodes Report, and as a result of Mr. Rhodes' conduct during the prepetition negotiations, the First Lien Steering Committee did not believe that Mr. Rhodes had been acting in accordance with his fiduciary duties. Thus, the First Lien Steering Committee Filed the Trustee Motion.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

The Rhodes Entities and the Debtors opposed the Trustee Motion and objected to the Rhodes Report as containing unsubstantiated allegations and hearsay. The Debtors provided extensive discovery and a deposition at the request of the First Lien Steering Committee. Prior to the hearing on this matter, the First Lien Steering Committee took the Trustee Motion off calendar in light of the discovery produced and the progress the parties were making on negotiations over the plan of reorganization.

The allegations contained in the Trustee and Rhodes Report form the basis of potential claims against the Rhodes Entities. Among the potential claims are the following:

- Claims for breach of fiduciary duty;

- Claims for misappropriation of Debtor assets for personal use;

- Claims for usurping corporate opportunity for the benefit of competing interests;

- Claims for mismanagement of the Debtors' operations;

- Claims for fraudulent transfers (to the extent not expressly released under the Plan);

- Claims for the diversion of corporate resources for the benefit of competing interests.

Additional discovery and analysis will be required to be performed by the Litigation Trustee before any determination can be made whether the foregoing claims or any other claims are colorable and should be pursued by the litigation trust against the Rhodes Entities. The litigation trust will undertake a detailed analysis of any potential claims before making a determination on whether to pursue any litigation against the Rhodes Entities. While it is impossible at this time to predict with any certainty whether the foregoing claims or any other claims will be prosecuted and, if they are prosecuted, whether they will be successful, the First Lien Steering Committee believes that prosecution of claims against the Rhodes Entities may yield up to $10 million or more in judgments in favor of the litigation trust. However, such claims could also yield no proceeds if they are unsuccessful, or if the Rhodes Entities' approximately $10.6 million in asserted claims are determined to be valid claims and are permitted to be used as offsets against any liabilities that the Rhodes Entities may be determined to have against the Debtors.

The Rhodes Entities do not believe that viable claims or causes of action exist against them and they will vigorously defend any litigation based on the allegations contained in the Trustee Motion or otherwise, which allegations the Rhodes Entities assert are baseless and premised on inadmissible hearsay.

D.   The Debtors' Principal Assets and Indebtedness

The principal assets of the Debtors include their homebuilding assets, which include inventory of undeveloped land and developed lots, and constructed homes (sold and unsold). The Debtors' principal indebtedness includes: (1) First Lien Lender Secured Claims; (2)

1  Second Lien Lender Secured Claims; (3) Other Secured Claims; (4) Priority Non-Tax Claims;
2  (5) General Unsecured Claims; (6) Rhodes Entities Claims; (7) First Lien Lender Deficiency
3  Claims; (8) Second Lien Lender Deficiency Claims; (9) Insured Claims; (10) Subordinated
   Claims; and (11) Intercompany Claims.

4  E.    Treatment of Claims and Interests

5        Except for unclassified Administrative Claims and Priority Tax Claims, the Plan
6  divides all Claims against the Debtors into various Classes. The table set forth below
   summarizes the Classes of Claims and Interests under the Plan, the treatment of Claims and
7  Interests and projected recovery for Holders of Allowed Claims in such Classes and the
   entitlement of Holders of Claims in such Classes to vote to accept or reject the Plan.

8
9        The allowance, classification and treatment of all Allowed Claims and Interests and
   the respective distributions and treatments under the Plan take into account and conform to the
10 relative priority and rights of the Claims and Interests in each Class in connection with any
   contractual, legal and equitable subordination rights relating thereto, whether arising under
11 general principles of equitable subordination, section 510 of the Bankruptcy Code or
   otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve
12 the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal
13 or equitable subordination relating thereto.

14    1.    Summary and Treatment of Allowed Unclassified Claims

| DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS (CONSOLIDATED BASIS) | TREATMENT FOR ALLOWED CLAIMS |
|---|---|---|
| Administrative Claims | $750,000 | Each Allowed Administrative Claim shall be paid in full, in Cash. Allowed Administrative Claims include costs incurred in the operation of the Debtors' businesses after the Petition Date, the allowed fees and expenses of Professionals retained by the Debtors and the Creditors' Committee and the fees due to the United States Trustee pursuant to 28 U.S.C. § 1930. |
| Priority Tax Claims | $125,000 | Allowed Priority Tax Claims shall be paid in full, in Cash. |

24    2.    Summary and Treatment of Allowed Classified Claims

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS (CONSOLIDATED BASIS) | TREATMENT FOR ALLOWED CLAIMS/PROJECTED RECOVERY/STATUS/VOTING RIGHTS |
|---|---|---|---|
| A-1 | First Lien Lender | $325,947,566 | Each of the First Lien Lenders (or its Permitted |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

6

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS (CONSOLIDATED BASIS) | TREATMENT FOR ALLOWED CLAIMS/PROJECTED RECOVERY/STATUS/VOTING RIGHTS |
|---|---|---|---|
| | Secured Claims | | Nominee) shall receive on account of its Secured Claims, (w) its pro rata share of $1.5 million in Cash from the proceeds of the First Lien Lenders' Collateral, (x) its pro rata share of 100% of the New First Lien Notes, and (y) its pro rata share of 100% of the Newco Equity Interests (subject to dilution for any Newco Equity Interests issued pursuant to a Management and Director Equity Incentive Plan). The $1.5 million payment to the First Lien Lenders shall be allocated and deemed paid to the First Lien Lenders in accordance with Article VII.F. of the Plan. |
| | | | Projected Recovery on Account of Secured Claims: 28.9% |
| | | | Status: Impaired |
| | | | Voting: Entitled to Vote |
| A-2 | Second Lien Lender Secured Claims | $72,848,357.65 | If the Class of Second Lien Lender Secured Claims votes in favor of the Plan, each of the Second Lien Lenders (or its Permitted Nominee) shall receive its pro rata share of 50% of the net proceeds of the Stanley Engineering Litigation on account of its Secured Claims without a reduction on account of the reasonable fees and expenses of Ropes & Gray LLP and local counsel for the Second Lien Agent, subject to an aggregate cap of $500,000, each of which such fees shall be paid in Cash to the Second Lien Agent on the Effective Date. If the Class of Second Lien Lender Secured Claims votes against the Plan, each of the Second Lien Lenders shall receive no recovery on account of such Secured Claims. |
| | | | Projected Recovery on Account of Secured Claims: 2.8% |
| | | | Status: Impaired |
| | | | Voting: Entitled to Vote |
| A-3 | Other Secured Claims | $2.3 million | To the extent not satisfied by the Debtors prior to the Effective Date, Holders of Other Secured Claims shall either (i) have such Claims reinstated and rendered Unimpaired, (ii) receive Cash in an amount equal to such Claims, including any interest required to be paid, (iii) receive the Collateral securing such Claim and any interest required to be paid, or (iv) receive such treatment as to which such Holder and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second |

7

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS (CONSOLIDATED BASIS) | TREATMENT FOR ALLOWED CLAIMS/PROJECTED RECOVERY/STATUS/VOTING RIGHTS |
|---|---|---|---|
| | | | Lien Agent), otherwise agree. |
| | | | Projected Recovery: 100% Status: Unimpaired Voting: Deemed to Accept |
| B | Priority Non-Tax Claims | $0 | Each Holder of an Allowed Priority Non-Tax Claim shall be paid in full, in Cash unless the Holder of an Allowed Priority Non-Tax Claim and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), otherwise agree. |
| | | | Projected Recovery: N/A Status: Unimpaired Voting: Deemed to Accept |
| C-1 | General Unsecured Claims | Estimated asserted amount $15 million + | On the Effective Date, each Holder of an Allowed General Unsecured Claim (including any Allowed Rhodes Entities Claims) shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of General Unsecured Claims on account of its Allowed Claim. |
| | | | Projected Recovery: 3.2% Status: Impaired Voting: Entitled to Vote |
| C-2 | First Lien Lender Deficiency Claims | $231,649,680 | On the Effective Date, each Holder of an Allowed First Lien Lender Deficiency Claim shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of First Lien Lender Deficiency Claims on account of its Allowed Claim. |
| | | | Projected Recovery 3.2% Status: Impaired Voting: Entitled to Vote |
| C-3 | Second Lien Lender Deficiency Claims | $70,348,357.65 | On the Effective Date, each Holder of an Allowed Second Lien Lender Deficiency Claim shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of Second Lien Lender Deficiency Claims on account of its Allowed Claim. If the Class of Second Lien Lender Secured Claims votes against the Plan, the distribution of Litigation Trust Interests allocable to the Holders of Second Lien Lender Deficiency Claims shall be subject to the reasonable fees and expenses of Ropes & Gray LLP and local counsel for the Second Lien Agent. |

8

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIMS (CONSOLIDATED BASIS) | TREATMENT FOR ALLOWED CLAIMS/PROJECTED RECOVERY/STATUS/VOTING RIGHTS |
|---|---|---|---|
| | | | Projected Recovery: 3.2% Status: Impaired Voting: Entitled to Vote |
| C-4 | Subordinated Claims | $0 | Claims subordinated under applicable law shall not receive any recovery on account of their Claims. |
| | | | Projected Recovery: N/A Status: Impaired Voting: Deemed to Reject |
| D | Old Equity Interests | | Each holder of an Old Equity Interest shall not be entitled to, and shall not receive or retain any property or interest in property on account of such Old Equity Interest. |
| | | | Projected Recovery: 0% Status: Impaired Voting: Deemed to Reject |
| E | Intercompany Claims | $500,000,000 | At the election of the Reorganized Debtors, Intercompany Claims will be (i) reinstated, in full or in part, (ii) resolved through set-off, distribution, or contribution, in full or in part, or (iii) cancelled and discharged, in full or in part, in which case such discharged and satisfied portion shall be eliminated and the Holders thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such portion under the Plan. |
| | | | Projected Recovery: 0% Status: Impaired Voting: Deemed to Reject |

F.    Claims Estimates

Upon information and belief, as of September 18, 2009, the Claims and Solicitation Agent had received approximately 461 Proofs of Claim and the total amount of Claims Filed against one or more of the Debtors was over $12.7 billion, of which $12 billion are duplicate Claims that will be automatically deemed to be eliminated upon the Effective Date. Additionally, the First Lien Steering Committee believes that many of the Filed Proofs of Claim are invalid, untimely, and/or overstated. Therefore, the Debtors, the Reorganized Debtors and/or the First Lien Steering Committee will object to such Claims.