AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Interests equal to the tax basis of the Secured Claims deemed exchanged therefor. A Holder's holding period for the Newco Equity Interests should include the holding period of the Secured Claims deemed exchanged therefor.

If the proposed regulations do not apply and the exchange is treated as a taxable exchange, a Holder who receives Newco Equity Interests with respect to an Allowed First Lien Lender Secured Claim will generally recognize income, gain or loss for U.S. federal income tax purposes in an amount equal to the difference between (a) the fair value of the consideration received and (b) the Holder's adjusted basis in its Allowed First Lien Lender Secured Claim. Such gain or loss may be capital in nature (subject to the "market discount" rules described below) and may be long-term capital gain or loss if the First Lien Lender Secured Claims were held for more than one year. To the extent that a portion of the consideration received represents accrued but unpaid interest that the Holder has not already taken into income, the Holder may recognize ordinary interest income (see discussion below). A Holder's tax basis in Newco Equity Interests received should equal the fair market value of the Newco Equity Interests as of the date distributed to the Holder, and a Holder's holding period for such instruments should begin on the day following the exchange.

(ii)    Certain Tax Aspects of Holding and Disposing Newco Equity Interests

Upon the transfer of the Newco Equity Interests to the First Lien Lenders, Newco will be treated for federal income tax purposes as a partnership on the Effective Date, and a holder of Newco Equity Interests will be treated as a partner on that day. Each holder of Newco Equity Interests will generally be considered a partner in Newco for federal income tax purposes. Each such holder will be required to include its distributive share of the income, gains, losses, deductions and credits of Newco on its own returns, whether or not any distributions are made, and will not be taxable on distributions when received except to the extent such distributions are in excess of the distributee's adjusted basis in the Newco Equity Interests. In general, a holder's adjusted basis in Newco Equity Interests will be increased by its additional capital contributions, if any, to Newco and by such holder's distributive share of income or gains of Newco, and the holder's adjusted basis in Newco Equity Interests will be decreased by the amount of distributions to such holder and such holder's distributive share of losses or deductions of Newco.

Since the deemed purchase of the Heritage Land Company LLC assets will occur on that date, Newco might recognize a loss equal to the difference between its basis in the First Lien Lender Secured Claims and the value of the property received. If it does, such loss would be allocable to the holders of the Newco Equity Interests. Such allocation might not be pro rata, but could vary depending on the basis of each such holders' interest, which will in turn depend on each First Lien Lender's basis in its First Lien Lender Secured Claims. Moreover, since Newco will have engaged in a trade or business while treated as a partnership for tax purposes, its members will have a filing requirement to report such income of a U.S. federal income tax return. If a First Lien Lender is itself treated as a partnership for U.S. tax purposes, its members or partners -- including foreign partners or U.S. exempt organizations -- could be required to file a U.S. return.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Once the election is made to treat Newco as a corporation, the holders of the Newco Equity Interests generally carry forward their basis in their interests (or shares, if Newco is converted to a corporation), and Newco generally carries forward its basis in its assets. To the extent Newco's basis in its assets is greater than their value as of the election/conversion, it will be required to reduce its basis in its shares to their fair market value or it may elect instead to have the holders of the Newco Equity Interests reduce their basis in such interests by such amount.

Any distributions made on the Newco Equity Interests will constitute dividends for U.S. federal income tax purposes to the extent of the current or accumulated earnings and profits of Newco, as determined under U.S. federal income tax principles. To the extent that a U.S. Holder receives distributions that would otherwise constitute dividends for U.S. federal income tax purposes but that exceed such current and accumulated earnings and profits, such distributions will be treated first as a non-taxable return of capital reducing the U.S. Holder's basis in its shares. Any such distributions in excess of the U.S. Holder's basis in its shares (determined on a share-by-share basis) generally will be treated as capital gain. Subject to certain exceptions, dividends received by non-corporate U.S. Holders prior to 2011 will be taxed under current law at a maximum rate of 15%, provided that certain holding period requirements and other requirements are met. Any such dividends received after 2010 will be taxed at the rate applicable to ordinary income.

Dividends paid to a U.S. Holder that is a corporation generally will be eligible for the dividends-received deduction so long as there are sufficient earnings and profits. However, the dividends received deduction is only available if certain holding period requirements are satisfied. The length of time that a shareholder has held its stock is reduced for any period during which the shareholder's risk of loss with respect to the stock is diminished by reason of the existence of certain options, contracts to sell, short sales or similar transactions. In addition, to the extent that a corporation incurs indebtedness that is directly attributable to an investment in the stock on which the dividend is paid, all or a portion of the dividends received deduction may be disallowed.

The benefit of the dividends-received deduction to a corporate shareholder may be effectively reduced or eliminated by operation of the "extraordinary dividend" provisions of Section 1059 of the IRC, which may require the corporate recipient to reduce its adjusted tax basis in its shares by the amount excluded from income as a result of the dividends-received deduction. The excess of the excluded amount over adjusted tax basis may be treated as gain. A dividend may be treated as "extraordinary" if (1) it equals or exceeds 10% of the holder's adjusted tax basis in the stock (reduced for this purpose by the non-taxed portion of any prior extraordinary dividend), treating all dividends having ex-dividend dates within an 85-day period as one dividend, or (2) it exceeds 20% of the holder's adjusted tax basis in the stock, treating all dividends having ex dividend dates within a 365-day period as one dividend.

Dividends paid to a Non-U.S. Holder (to the extent paid out of our current or accumulated earnings and profits, as determined for U.S. federal income tax purposes) generally will be subject to withholding of U.S. federal income tax at a 30% rate or such lower rate as may be specified by an applicable income tax treaty.

To claim the benefit of a tax treaty a Non-U.S. Holder must provide a properly executed IRS Form W-8BEN (or such successor form as the IRS designates), in the manner described above, prior to the payment of the dividends. A Non-U.S. Holder that is eligible for a reduced rate of U.S. withholding tax pursuant to an income tax treaty may obtain a refund from the IRS of any excess amounts withheld by filing timely an appropriate claim for refund with the IRS.

A holder will recognize gain or loss upon disposition of its Newco Equity Interests equal to the difference between the amount such holder realizes in connection with the disposition and such holder's adjusted tax basis for such Newco Equity Interests. Any gain or loss will generally be capital gain or loss (which will be long-term capital gain or loss if the Newco Equity Interest has been held in excess of 12 months), subject to the application of certain "recapture" provisions that convert capital gain into ordinary income in certain circumstances. The deductibility of capital loses is subject to limitations.

2. Consequences to Holders of Allowed Class A-2 Second Lien Lender Secured Claims

If the Second Lien Lenders vote in favor of the Plan, each of the Second Lien Lenders shall receive its pro rata share of 50% of the net proceeds of the Stanley Engineering Litigation on account of its Allowed Secured Claim.

A Holder who receives Cash with respect to an Allowed Second Lien Lender Secured Claim will generally recognize income, gain or loss for U.S. federal income tax purposes in an amount equal to the difference between (a) the amount of Cash received and (b) the Holder's adjusted basis in its Allowed Second Lien Lender Secured Claim. Such gain or loss may be capital in nature (subject to the "market discount" rules described below) and may be long-term capital gain or loss if the Class A-2 Claims were held for more than one year. To the extent that a portion of the Cash received represents accrued but unpaid interest that the Holder has not already included in income, the Holder may recognize ordinary interest income.

3. Consequences to Holders of Allowed Class A-3 Other Secured Claims

The following discussion assumes that each Holder of an Allowed Other Secured Claim holds such claim as a "capital asset" within the meaning of Section 1221 of the IRC. Pursuant to the Plan, each Allowed Other Secured Claim, at the election of the Reorganized Debtors, may be (i) Reinstated, (ii) paid in full in Cash, (iii) satisfied by the delivery of the collateral securing such Claim and paying any interest required to be paid, or (iv) otherwise rendered unimpaired. If an Allowed Other Secured Claim is Reinstated, the Holder of such Claim should not recognize gain or loss except to the extent that collateral securing such Claim is changed, and the change in collateral constitutes a "significant modification" of the Allowed Other Secured Claim within the meaning of the Treasury Regulations promulgated under Section 1001 of the IRC. If an Allowed Other Secured Claim is paid in full in Cash, the Holder should recognize capital gain or loss (which capital gain or loss would be long-term capital gain or loss to the extent that the Holder has held the debt instrument underlying its claim for more than one year) in an amount equal to the amount of Cash received over the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

Holder's adjusted basis in the debt instruments underlying its Allowed Other Secured Claim. To the extent that a portion of the Cash received represents accrued but unpaid interest that the Holder has not already taken into income, the Holder should recognize ordinary interest income (as described below).

If a Holder of an Allowed Other Secured Claim exchanges its Claim for the collateral securing such Claim, or for Cash in an amount equal to the proceeds actually realized from the sale of such collateral, the exchange should be treated as a taxable exchange under Section 1001 of the IRC. The Holder should recognize capital gain or loss (which capital gain or loss would be long-term capital gain or loss if the Holder has held the debt instrument underlying its Claim for more than one year) equal to the difference between (i) the fair market value of the collateral received (or, as the case may be, the amount of Cash received from the sale of such collateral), and (ii) the Holder's adjusted tax basis in the debt instrument constituting its Claim. To the extent that a portion of the collateral received (or, as the case may be, the amount of Cash received from the sale of such collateral) in the exchange is allocable to accrued interest that has not already been taken into income by the Holder, the Holder should recognize ordinary interest income (as described below). If, on the Effective Date, the Holder receives the collateral (rather than Cash) in exchange for its Claim, the Holder's tax basis in the collateral should be equal to the fair market value of the collateral on the Effective Date, and the Holder's holding period in the collateral should begin on the day following the Effective Date.

4.   Consequences to Holders of Class C-1 General Unsecured Claims, Class C-2 First Lien Lender Deficiency Claims, and Class C-3 Second Lien Lender Deficiency Claims

On the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of General Unsecured Claims on account of its Allowed Claim.

The amount received, if any, from the Litigation Trust is contingent on the value obtained from the unencumbered assets and the outcome of the causes of action held by the Litigation Trust. The Holder should recognize gain or loss equal to the difference between (i) the fair market value as of the Effective Date of the Litigation Trust Interests received (to the extent it is not allocable to accrued interest) and (ii) the Holder's tax basis in the Claims surrendered by the Holder. Such gain or loss should be capital in nature (subject to the "market discount" rules described below) and should be long term capital gain or loss if the Claims were held for more than one year by the Holder. To the extent that any portion of the Litigation Trust Interests received in the exchange is allocable to accrued interest, the Holder may recognize ordinary income, which is addressed in the discussion below regarding accrued interest. A Holder's tax basis in the Litigation Trust Interests received should equal their fair market value as of the Effective Date. A Holder's holding period for the Litigation Trust Interests should begin on the day following the Effective Date.

It is plausible that a Holder could treat the transaction as an 'open' transaction for tax purposes, in which case the recognition of any gain or loss on the transaction might be deferred pending the determination of the amount of the Litigation Trust Interests received.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

103

The federal income tax consequences of an open transaction are uncertain and highly complex and a Holder should consult with its own tax advisor if it believes that open transaction treatment might be appropriate.

   5.    Receipt of Litigation Trust Interests

On the Effective Date, the Litigation Trust will be settled and is currently anticipated to exist as either a grantor trust or partnership for the benefit of certain creditors. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee), pursuant to Treasury Regulation Section 301.7701-4(d) and related Treasury Regulations, the Litigation Trustee may designate and file returns for the Litigation Trust as a "grantor trust" and/or "liquidating trust" and therefore, for federal income tax purposes, the Litigation Trust's taxable income (or loss) should be allocated pro rata to its beneficiaries.

The Litigation Trustee intends to take a position on the Litigation Trust's tax return that the Litigation Trust should be treated as a grantor trust set up for the benefit of creditors.

Holders of Claims that receive Litigation Trust Interests will be required to report on their U.S. federal income tax returns their share of the Litigation Trust's items of income, gain, loss, deduction and credit in the year recognized by the Litigation Trust whether or not the Litigation Trust is taxed as a partnership or a grantor trust. This requirement may result in Holders being subject to tax on their allocable share of the Litigation Trust's taxable income prior to receiving any cash distributions from the Litigation Trust. In general, Holders of Litigation Trust Interests will not be subject to tax on their receipt of distributions from the trust.

Any Litigation Trust Assets held by the Litigation Trust on account of Disputed Claims shall be treated as held in trust by the Litigation Trust as fiduciary for the benefit of the Holders of Disputed Claims (each a "Disputed Claims Reserve").

Under IRC Section 468B(g), amounts earned by an escrow account, settlement fund or similar fund must be subject to current tax. Although certain Treasury Regulations have been issued under this section, no Treasury Regulations have as yet been promulgated to address the tax treatment of such accounts in a bankruptcy setting. Thus, depending on the facts of a particular situation, such an account could be treated as a separately taxable trust, as a grantor trust treated as owned by the Holders of Disputed Claims or by the Debtor (or, if applicable, any of its successors), or otherwise. On February 1, 1999, the IRS issued proposed Treasury Regulations that, if finalized in their current form, would specify the tax treatment of reserves of the type here involved that are established after the date such Treasury Regulations become final. In general, such Treasury Regulations would tax such a reserve as a "qualified settlement fund" under Regulation Sections 1.468B-1 et seq. and thus subject to a separate entity level tax. As to previously established escrows and the like, such Treasury Regulations would provide that the IRS would not challenge any reasonably, consistently applied method of taxation for income earned by the escrow or account, and any reasonably, consistently applied method for reporting such income.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Absent definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Litigation Trust will (i) treat each Disputed Claims Reserve as a discrete trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim in the Class of Claims to which such reserve relates, in accordance with the trust provisions of Code, and (ii) to the extent permitted by applicable law, report consistently for state and local income tax purposes. In addition, pursuant to the Plan, all parties shall report consistently with such treatment.

Accordingly, subject to issuance of definitive guidance, the Litigation Trust, in each case as fiduciary for Holders of Disputed Claims, will report as subject to a separate entity level tax any amounts earned by its respective Disputed Claims Reserves, except to the extent such earnings are distributed by such fiduciary during the same taxable year. In such event, any amount earned by a Disputed Claims Reserve that is distributed to a Holder during the same taxable year will be includible in such Holder's gross income.

6.    Consequences to Holders of Allowed Class D Old Equity Interests

Pursuant to the Plan, on the Effective Date, all Old Equity Interests shall be deemed canceled and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and there shall be no distribution to the Holders of Old Equity Interests.

For U.S. federal income tax purposes, the tax consequences arising from the cancellation of a Old Equity Interest are complex, and may give rise to a deemed distribution to such Holder and/or an allocation of COD income, as described in more detail above under "Certain U.S. Federal Income Tax Consequences to Reorganized Debtors." Holders of Old Equity Interests are urged to consult with their own tax advisers regarding such consequences.

7.    Accrued but Unpaid Interest

A portion of the consideration received by Holders of Claims may be attributable to accrued but unpaid interest on such Claims. Such amount should be taxable to that Holder as interest income if such accrued interest has not been previously included in the Holder's gross income for United States federal income tax purposes. Conversely, it is possible that a Holder of Claims may be able to recognize a deductible loss (or, possibly, a write-off against a reserve for worthless debts) to the extent that any accrued interest on the Claims was previously included in the U.S. holder's gross income but was not paid in full by Debtors. The character of such loss may be ordinary rather than capital, but the tax law is unclear on this issue.

If the fair value of the consideration is not sufficient to fully satisfy all principal and interest on Allowed Claims, the extent to which such consideration will be attributable to accrued but unpaid interest is unclear. Under the Plan, the aggregate consideration to be distributed to Holders of Allowed Claims in each Class will be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims, if any. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan of reorganization is binding for United States federal income tax purposes. The IRS could take the position, however, that the consideration received by the Holder should be allocated in some way other than as provided

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile 212.872.1002 / akingump.com

in the Plan.  Holders of Claims should consult their own tax advisors regarding the proper allocation of the consideration received by them under the Plan.

### 8.   Market Discount

Holders who exchange Allowed Claims for their pro rata share of each of (a) the New First Lien Notes, (b) Newco Equity Interests, and (c) Cash may be affected by the "market discount" provisions of sections 1276 through 1278 of the IRC.  Under these provisions, some or all of the gain realized by a Holder may be treated as ordinary income (instead of capital gain), to the extent of the amount of accrued "market discount" on such Allowed Claims.

In general, a debt obligation with a fixed maturity of more than one year that is acquired by a holder on the secondary market (or, in certain circumstances, upon original issuance) is considered to be acquired with "market discount" as to that holder if the debt obligation's stated redemption price at maturity (or revised issue price as defined in section 1278 of the IRC, in the case of a debt obligation issued with original issue discount) exceeds the tax basis of the debt obligation in the holder's hands immediately after its acquisition.  However, a debt obligation is not a "market discount bond" if the excess is less than a statutory de minimis amount (equal to 0.25% of the debt obligation's stated redemption price at maturity or revised issue price, in the case of a debt obligation issued with original issue discount, multiplied by the number of complete years remaining until maturity at the time of the acquisition).

Any gain recognized by a Holder on the taxable disposition of Allowed Claims (determined as described above) that were acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while the Allowed Claims were considered to be held by the Holder (unless the Holder elected to include market discount in income as it accrued).  To the extent that the Allowed Claims that were acquired with market discount are exchanged in a tax-free transaction for other property (as may occur here), any market discount that accrued on the Allowed Claims (*i.e.*, up to the time of the exchange) but was not recognized by the Holder is carried over to the property received therefor and any gain recognized on the subsequent sale, exchange, redemption or other disposition of such property is treated as ordinary income to the extent of such accrued market discount.

### 9.   Issue Price

For U.S. federal income tax purposes, the "issue price" of a debt instrument depends on whether such instrument is deemed to be "publicly traded."  If, at any time during the 60-day period ending 30 days after the issue date of a debt instrument, a substantial amount of the debt instruments in an issue is "traded on an established market" within the meaning of the applicable Regulations, then the debt instrument will be treated as publicly traded and the issue price of the debt instrument will equal the fair market value of that debt instrument on the date of issuance.  In general, a debt instrument will be treated as traded on an established securities market if it is listed on a major securities exchange, appears on a system of general circulation that provides a reasonable basis to determine fair market value or otherwise is,

among other things, readily quotable by dealers, brokers or traders. For purposes of applying these rules, each tranche of new debt instruments is treated as a separate issue.

If a tranche of new debt instrument is not publicly traded and the old Claim exchanged for such new debt instrument in such tranche is also not publicly traded, then the issue price of that new debt instrument generally would equal the stated principal amount of such debt instrument. Holders of Claims should consult their tax advisors regarding the issue prices for New First Lien Notes.

    10.    <u>Claim Purchase</u>

For U.S. federal income tax purposes, the sale of an Allowed Class C-1 Claim for Cash should be a taxable exchange under section 1001 of the IRC. A Holder who receives Cash in exchange for its Allowed Class C-1 Claim will generally recognize income, gain or loss for U.S. federal income tax purposes in an amount equal to the difference between (a) the amount of Cash received and (b) the Holder's adjusted basis in its Allowed Class C-1 Claim. Such gain or loss may be ordinary or capital in nature (subject to the "market discount" rules described above) and may be long-term capital gain or loss if the Class C-1 Claim was held for more than one year. To the extent that a portion of the Cash received represents accrued but unpaid interest that the Holder has not already taken into income, the Holder may recognized ordinary interest income (as described herein).

**C.**    <u>Other Tax Matters</u>

    1.    <u>Information Reporting and Backup Withholding</u>

In general, information reporting requirements may apply to distributions or payments under the Plan. Additionally, under the backup withholding rules, a Holder of a Claim may be subject to backup withholding (currently at a rate of 28%) with respect to distributions or payments made pursuant to the Plan unless that Holder:  (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact; or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional tax but is, instead, an advance payment that may be refunded to the extent it results in an overpayment of tax; provided, however, that the required information is provided to the IRS.

The Debtors will withhold all amounts required by law to be withheld from payments of interest. The Debtors will comply with all applicable reporting requirements of the IRS.

The Plan may impose additional U.S. federal income tax filing requirements on indirect holders of the Newco Equity Interests reflecting the activities on the Effective Date, as discussed above in Section B.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

2.    Importance of Obtaining Professional Tax Assistance

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE, AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

**Article VIII.**
**RECOMMENDATION**

In the opinion of the First Lien Steering Committee, the Plan is preferable to the alternatives described herein because it provides for a larger distribution to the Holders of Claims than would otherwise result in a liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than Confirmation could result in extensive delays and increased Administrative Claims resulting in smaller distributions to the Holders of Claims. **Accordingly, the First Lien Steering Committee recommends that Holders of Claims entitled to vote on the Plan support Confirmation and vote to accept the Plan.**

*[Remainder of Page Intentionally Left Blank]*

108

**Article IX.**
**CONCLUSION**

The First Lien Steering Committee believes that the Plan is in the best interests of Creditors and urges such parties to vote to accept the Plan.

Dated: November 23, 2009                    THE FIRST LIEN STEERING COMMITTEE


                                        By: Its Counsel


                        By:    /s/ Philip C. Dublin
                               Nile Leatham (NV Bar No. 002838)
                               KOLESAR & LEATHAM
                               Wells Fargo Financial Center
                               3320 W. Sahara Ave.
                               Las Vegas, NV 89102
                               (702) 979-2357 (Telephone)
                               (702) 362-9472 (Facsimile)
                               Nleatham@klnevada.com

                               AKIN GUMP STRAUSS HAUER & FELD LLP
                               Philip C. Dublin (NY Bar No, 2959344)
                               Abid Qureshi (NY Bar No. 2684637)
                               One Bryant Park
                               New York, New York 10036
                               (212) 872-1000 (Telephone)
                               (212) 872-1002 (Facsimile)
                               pdublin@akingump.com
                               aqureshi@akingump.com

                               *Counsel for the First Lien Steering Committee*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## LIST OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Plan of Reorganization |
| B | Debtors' Organizational Chart |
| C | Current Cash Collateral Budget |
| D | Going Concern Analysis |
| E | Liquidation Analysis |
| F | Pending Litigation |
| G | Litigation Trust Assets |
| H | Claim Purchase Schedule |
| I | Litigation Trust Agreement |
| J | Newco LLC Operating Agreement |
| K | New First Lien Credit Agreement |
| L | Schedule of Causes of Action |
| M | Asset and Stock Transfer Agreement |
| N | Schedule of Assumed Executory Contracts and Unexpired Leases |

<u>Exhibit A</u>

**Plan of Reorganization**

1  Nile Leatham (NV Bar No. 002838)
2  KOLESAR & LEATHAM
   Wells Fargo Financial Center
3  3320 W. Sahara Ave.
   Las Vegas, NV 89102
4  Telephone: 702.979.2357
   Facsimile: 702.362.9472
5  E-Mail:      nleatham@klnevada.com
6
7  Philip C. Dublin (NY Bar No. 2959344)
   Abid Qureshi (NY Bar No. 2684637)
8  AKIN GUMP STRAUSS HAUER & FELD LLP
   One Bryant Park
9  New York, NY 10036
   Telephone: 212.872.1000
10 Facsimile: 212.872.1002
11 E-Mail:     pdublin@akingump.com
               aqureshi@akingump.com
12
13 *Counsel for the First Lien Steering Committee*
14
15            UNITED STATES BANKRUPTCY COURT
                   DISTRICT OF NEVADA
16                  SOUTHERN DIVISION
17 IN RE:                          §
                                   §
18 THE RHODES COMPANIES, LLC,      §  Case No. 09-14814-LBR
      aka "Rhodes Homes," *et al.*,§  Jointly Administered
19                                 §
20        Debtors.[1]              §
                                   §
21                                 §
                                   §
22                                 §

*Left margin (vertical text):* AKIN GUMP STRAUSS HAUER & FELD LLP · One Bryant Park · New York, New York 10036 · Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

23     [1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
24 number, if applicable, are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060);
   Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave,
25 LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country
   Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions
26 III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and
   Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090);
27 Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC
   (8738); Tribes Holdings, LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited
28 Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897);
   Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

Affects:
☒ All Debtors
☐ Affects the following
    Debtor(s)

§
§
§
§
§
§

SECOND AMENDED MODIFIED PLAN OF
REORGANIZATION PURSUANT
TO CHAPTER 11 OF THE
BANKRUPTCY CODE FOR THE RHODES
COMPANIES, LLC, ET AL.

TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,
          COMPUTATION OF TIME, AND GOVERNING LAW .............................. 1
    A.    Defined Terms ................................................................................. 1
    B.    Rules of Interpretation .................................................................... 15
    C.    Reference to Monetary Figures ....................................................... 16

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS .............................. 16
    A.    Administrative Claims .................................................................... 16
    B.    Priority Tax Claims ......................................................................... 17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND
          INTERESTS ............................................................................. 17
    A.    Classification of Claims and Interests ............................................ 17
    B.    Treatment of Classes of Claims and Interests ................................. 18
    C.    Class Voting Rights ........................................................................ 22
    D.    Bankruptcy Code Section 1111(b) Election .................................... 22
    E.    Acceptance or Rejection of the Plan ............................................... 23

ARTICLE IV. PROVISIONS FOR IMPLEMENTATION OF THE PLAN ............... 23
    A.    Substantive Consolidation .............................................................. 23
    B.    Sources of Consideration for Plan Distributions ............................. 24
    C.    Corporate Existence ........................................................................ 25
    D.    Vesting of Assets in the Reorganized Debtors ................................ 26
    E.    Cancellation of Equity Securities and Related Obligations .............. 26
    F.    Restructuring Steps and Transfer of Certain Interests to Newco ..... 26
    G.    Restructuring Transactions .............................................................. 27
    H.    Corporate Action ............................................................................. 28
    I.    Post-Confirmation Property Sales ................................................... 28
    J.    Organizational Documents .............................................................. 28
    K.    Effectuating Documents, Further Transactions ............................... 28
    L.    Exemption from Certain Transfer Taxes and Recording Fees .......... 29
    M.    Directors and Officers of the Reorganized Debtors ........................ 29
    N.    Management and Director Equity Incentive Plan ............................ 29
    O.    The Litigation Trust ........................................................................ 29
    P.    Preservation of Causes of Action .................................................... 30
    Q.    HOA Board Seats ............................................................................ 31
    R.    Licensing ........................................................................................ 31
    S.    Transfer of Rhodes Ranch Golf Course .......................................... 31
    T.    Cash Payment ................................................................................. 33

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York  10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

iii

U.      Transfer of Arizona Assets .......................................................................33
V.      Trademarks and Trade Names ...................................................................34
W.      Self Insured Retention Obligations............................................................34
X.      Bond Replacement or Indemnification ......................................................34
Y.      Stanley Engineering Litigation .................................................................35

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
          LEASES...............................................................................................35
A.      Assumption and Rejection of Executory Contracts and Unexpired
        Leases..................................................................................................35
B.      Cure of Defaults for Assumed Executory Contracts and Unexpired
        Leases..................................................................................................36
C.      Preexisting Obligations to the Debtors Under Executory Contracts and
        Unexpired Leases ..................................................................................37
D.      Claims Based on Rejection or Repudiation of Executory Contracts and
        Unexpired Leases ..................................................................................38
E.      Intercompany Contracts, Contracts, and Leases Entered Into After the
        Petition Date: ........................................................................................38
F.      Home Sales ...........................................................................................38
G.      Warranties.............................................................................................38
H.      Modification of Executory Contracts and Unexpired Leases Containing
        Equity Ownership Restrictions ................................................................38
I.      Modifications, Amendments, Supplements, Restatements, or Other
        Agreements ...........................................................................................38
J.      Reservation of Rights.............................................................................39
K.      Nonoccurrence of Effective Date.............................................................39

ARTICLE VI. PROCEDURES FOR RESOLVING DISPUTED CLAIMS........................39
A.      Allowance of Claims..............................................................................39
B.      Claims Administration Responsibilities ...................................................39
C.      Estimation of Claims..............................................................................39
D.      Adjustment to Claims Without Objection..................................................40
E.      Time to File Objections to Claims ...........................................................40
F.      Disallowance of Claims ..........................................................................40
G.      Offer of Judgment .................................................................................41
H.      Amendments to Claims...........................................................................41

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS....................................41
A.      Total Enterprise Value for Purposes of Distributions Under the Plan...........41
B.      Distributions on Account of Claims Allowed as of the Effective Date .........41
C.      Distributions on Account of Claims Allowed After the Effective Date: .......41
D.      Delivery of Distributions ........................................................................43
E.      Claims Paid or Payable by Third Parties. ..................................................45
F.      Payment of $1.5 Million to First Lien Lenders...........................................46
G.      General Unsecured Claims Purchase ........................................................47

ARTICLE VIII. EFFECT OF CONFIRMATION OF THE PLAN ...................................48

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

iv

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

A.    Discharge of Claims and Termination of Interests ........................................ 48
B.    Subordinated Claims ........................................................................................ 49
C.    Compromise and Settlement of Claims and Controversies ........................... 49
D.    Releases by the Debtors of the Released Parties ............................................ 49
E.    Releases by the Debtors of the Rhodes Entities ............................................. 50
F.    Releases by First Lien Lenders of First Lien Lenders ................................... 50
G.    Exculpation ....................................................................................................... 51
H.    Injunction ......................................................................................................... 51
I.    Protection Against Discriminatory Treatment ............................................... 52
J.    Setoffs ............................................................................................................... 52
K.    Recoupment ...................................................................................................... 52
L.    Release of Liens ............................................................................................... 53
M.    Document Retention ........................................................................................ 53
N.    Reimbursement or Contribution ..................................................................... 53

ARTICLE IX. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE
          CLAIMS ........................................................................................................ 53
A.    Professional Claims: ........................................................................................ 53
B.    Other Administrative Claims .......................................................................... 54

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND
          CONSUMMATION OF THE PLAN ........................................................... 55
A.    Conditions to Confirmation ............................................................................ 55
B.    Conditions Precedent to the Effective Date ................................................... 55
C.    Waiver of Conditions Precedent ..................................................................... 56
D.    Effect of Non-Occurrence of Conditions to Consummation ........................ 57
E.    Satisfaction of Conditions Precedent to Confirmation ................................. 57

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE
          PLAN .............................................................................................................. 57
A.    Modification and Amendments ....................................................................... 57
B.    Effect of Confirmation on Modifications ....................................................... 58
C.    Revocation or Withdrawal of Plan ................................................................. 58

ARTICLE XII. RETENTION OF JURISDICTION ............................................................. 59

ARTICLE XIII. MISCELLANEOUS PROVISIONS ............................................................ 61
A.    Immediate Binding Effect ............................................................................... 61
B.    Additional Documents ..................................................................................... 61
C.    Payment of Statutory Fees .............................................................................. 61
D.    Dissolution of Creditors' Committee .............................................................. 62
E.    Reservation of Rights ....................................................................................... 62
F.    Successors and Assigns .................................................................................... 62
G.    Service of Documents: ..................................................................................... 62
H.    Term of Injunctions or Stays .......................................................................... 64
I.    Entire Agreement ............................................................................................. 64
J.    Governing Law ................................................................................................. 64

K.    Exhibits ........................................................................................................... 64
L.    Nonseverability of Plan Provisions.............................................................. 64
M.    Closing of the Chapter 11 Cases.................................................................. 65
N.    Waiver or Estoppel ....................................................................................... 65
O.    Conflicts......................................................................................................... 65

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

The First Lien Steering Committee proposes the following second amended plan of reorganization for the resolution of outstanding Claims against, and Interests in, The Rhodes Companies, LLC and the other debtors in the above-referenced chapter 11 cases pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101–1532. Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A. of the Plan. Reference is made to the Disclosure Statement, Filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, assets, results of operations, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The First Lien Steering Committee is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN PROVIDES FOR THE SUBSTANTIVE CONSOLIDATION OF ALL OF THE ESTATES FOR ALL PURPOSES ASSOCIATED WITH CONFIRMATION AND DISTRIBUTIONS UNDER THE PLAN.

**ARTICLE I.**
DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW

A.    Defined Terms: As used in the Plan, the capitalized terms below have the following meanings, except as expressly provided or unless the context otherwise requires. Any term used but not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.    Accrued Professional Compensation: At any given moment, all accrued fees and expenses for services rendered by all Professionals through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been Filed for such fees and expenses. To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

2.    Administrative Claim: A Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (c) all fees and charges assessed against the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

Estates pursuant to chapter 123 of the Judicial Code and 28 U.S.C. § 1930; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

3.    Administrative Claim Bar Date:  The deadline for filing requests for payment of Administrative Claims, which shall be thirty days after the Effective Date for all other Administrative Claims incurred after the Petition Date through the Effective Date, except with respect to Professional Claims, which shall be subject to the provisions of Article IX.

4.    Affidavit of Publication:  An affidavit of a representative or agent of a publisher of a periodical certifying that notice has been served through publication in the publisher's periodical.

5.    Affiliate:  (a) An Entity that directly or indirectly owns, controls, or holds with power to vote, twenty percent or more of the outstanding voting securities of any of the Debtors, other than an Entity that holds such securities (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities or (ii) solely to secure a debt, if such Entity has not in fact exercised such power to vote; (b) a corporation twenty percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by any of the Debtors, or by an Entity that directly or indirectly owns, controls, or holds with power to vote, twenty percent or more of the outstanding voting securities of any of the Debtors, other than an Entity that holds such securities (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities or (ii) solely to secure a debt, if such Entity has not in fact exercised such power to vote; (c) an Entity whose business is operated under a lease or operating agreement by any of the Debtors, or an Entity substantially all of whose property is operated under an operating agreement with any of the Debtors; (d) an Entity that operates the business or substantially all of the property of any of the Debtors under a lease or operating agreement; or (e) the Debtors' domestic, wholly-owned, direct and indirect subsidiaries that have not commenced cases under chapter 11 of the Bankruptcy Code.

6.    Allowed:  With respect to Claims and Interests: (a) any Claim or Interest, proof of which is timely Filed by the applicable Bar Date (or that by the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim or Interest that is listed in the Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated, and for which no Proof of Claim or Interest has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; provided, however, that with respect to any Claim or Interest described in clauses (a) or (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that (x) no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (y) such an objection is so interposed and the Claim or Interest shall have been Allowed for distribution purposes only by a Final Order, or (z) the Debtors allow such Claim prior to the Effective Date with the consent of the First Lien Steering Committee and the Creditors' Committee or the Reorganized Debtors allow such Claim after the Effective Date in their sole and absolute discretion.  Except as otherwise specified in the Plan or a Bankruptcy Court order, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim or Interest that has been or is hereafter listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely Filed, is not considered Allowed and shall be expunged without further action by the Reorganized Debtors and without any further notice to or action, order, or approval of the Bankruptcy Court.

7.    Arizona Assets: The Debtors' homebuilding business in Arizona ("Arizona") that will be transferred to the Rhodes Entities on the Effective Date, through the Rhodes Entities' acquisition of the stock of Rhodes Arizona Properties LLC and Elkhorn Investments, Inc., in each case, as reorganized, and certain assets of Rhodes Homes Arizona LLC.

8.    Ballot or Ballots: The ballots upon which Holders of Impaired Claims entitled to vote shall cast their vote to accept or reject the Plan.

9.    Bankruptcy Code: Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Cases.

10.    Bankruptcy Court: The United States Bankruptcy Court for the District of Nevada or any other court having jurisdiction over the Chapter 11 Cases.

11.    Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure as applicable to the Chapter 11 Cases, promulgated pursuant to section 2075 of the Judicial Code and the general, local, and chambers rules and orders of the Bankruptcy Court.

12.    Bar Date: August 5, 2009, except as otherwise provided in the Plan or by Bankruptcy Court order.

13.    Beneficial Holder: The Entity holding the beneficial interest in a Claim or Interest.

14.    Business Day: Any day, other than a Saturday, Sunday, or Legal Holiday.

15.    Cash: Cash and cash equivalents.

16.    Cash Collateral Order:   The Bankruptcy Court order entitled, "Final Stipulated Order (I) Authorizing Use of Cash Collateral Pursuant to Sections 105, 361, 362, and 363 of the Bankruptcy Code and (II) Granting Adequate Protection and Super Priority Administrative Expense Priority to Prepetition Secured Lenders Re Debtors' Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, and 364 of Debtors' Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to the Debtors' Prepetition Secured Parties and (C) Scheduling a Final Hearing; Memorandum of Points and Authorities Filed by Zachariah Larson on Behalf of Heritage Land Company, LLC [Relates to Heritage Docket No. 35]," entered in the Chapter 11 Cases

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1   on April 30, 2009 [Rhodes Docket No. 126], as amended or extended with the consent of the

2   First Lien Steering Committee, from time to time and in accordance with the terms thereof.

3       17.   Cause of Action:  Any claim, cause of action, controversy, demand, right,

4   action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever,

5   known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured,

6   assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Cause of

7   Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to

8   Claims or Interests; (c) any claim pursuant to sections 362, 510, 542, 543, 544 through 550,

9   or 553 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any

10  state law fraudulent transfer claim; (f) any claim or cause of action of any kind against any Released Party or Exculpated Party based in whole or in part upon acts or omissions

11  occurring prior to or after the Petition Date; and (g) any claim listed in Exhibit L to the

12  Disclosure Statement.

13      18.   Certificate:  Any instrument evidencing a Claim or an Interest.

14      19.   Chapter 11 Cases:  The chapter 11 bankruptcy cases filed by the Debtors on

15  the Petition Date in the Bankruptcy Court, with case numbers 09-14778-LBR, 09-14861-LBR, 09-14825-LBR, 09-14843-LBR, 09-14862-LBR, 09-14837-LBR, 09-14828-LBR, 09-

16  14820-LBR, 09-14865-LBR, 09-14822-LBR, 09-14818-LBR, 09-14860-LBR, 09-14839-LBR, 09-14856-LBR, 09-14848-LBR, 09-14868-LBR, 09-14882-LBR, 09-14846-LBR, 09-

17  14844-LBR, 09-14854-LBR, 09-14841-LBR, 09-14814-LBR, 09-14833-LBR, 09-14866-LBR, 09-14817-LBR, 09-14853-LBR, 09-14852-LBR, 09-14850-LBR, 09-14849-LBR, 09-

18  14858-LBR, 09-14884-LBR, 09-14887-LBR.

19      20.   Claim:  As defined in section 101(5) of the Bankruptcy Code.

20

21      21.   Claims and Solicitation Agent:  Omni Management Group, LLC.

22      22.   Claims Objection Deadline:  (i) One year from the Effective Date for all Claims other than the Rhodes Entities Claims; and (ii) sixty days from the Effective Date for

23  the Rhodes Entities Claims.

24      23.   Claims Register:  The official register of Claims and Interests maintained by

25  the Claims and Solicitation Agent.

26      24.   Class:  A class of Holders of Claims or Interests as set forth in the Plan.

27      25.   CM/ECF:  The Bankruptcy Court's Case Management and Electronic Case Filing system, which can be accessed at https://ecf.nvb.uscourts.gov/.

28

4

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

26.    Confirmation: The entry of the Confirmation Order, subject to all conditions specified in Article X.A having been satisfied or waived pursuant to Article X.C.

27.    Confirmation Date: The date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

28.    Confirmation Hearing: The hearing at which the Confirmation Order is first considered by the Bankruptcy Court.

29.    Confirmation Hearing Notice: The notice approved in the Solicitation Procedures Order that sets forth in detail the voting and objection deadlines with respect to the Plan.

30.    Confirmation Order: The order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

31.    Contingent Bond Indemnity Claim: Any Claim asserted by a bonding company due to a bond being called.

32.    Consummation: The occurrence of the Effective Date.

33.    Creditor: A Holder of a Claim.

34.    Creditors' Committee: The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

35.    Cure: The distribution in the ordinary course of business as soon as reasonably practicable following the Effective Date of Cash, or such other property as may be ordered by the Bankruptcy Court or agreed upon by the contracting party and (i) the Debtors and the First Lien Steering Committee, or (ii) the Reorganized Debtors in an amount equal to all unpaid monetary obligations under applicable law or such lesser amount as may be agreed upon by the parties, under an executory contract or unexpired lease assumed pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

36.    Cure Bar Date: The deadline for filing requests for payment of Cure, which shall be the later of: (a) thirty days after the Effective Date or (b) thirty days after the assumption of the applicable executory contract or unexpired lease, unless otherwise ordered by the Bankruptcy Court or agreed to by the First Lien Steering Committee and the counterparty to the applicable executory contract or unexpired lease.

37.    Debtors: The following Entities: Heritage Land Company, LLC; The Rhodes Companies, LLC; Rhodes Ranch General Partnership; Tick, LP; Glynda, LP; Chalkline, LP; Batcave, LP; Jackknife, LP; Wallboard, LP; Overflow, LP; Rhodes Ranch Golf and Country Club, LLC; Tuscany Acquisitions, LLC; Tuscany Acquisitions II, LLC; Tuscany Acquisitions III, LLC; Tuscany Acquisitions IV, LLC; Parcel 20 LLC; Rhodes Design and Development Corp.; C&J Holdings Inc.; Rhodes Realty, Inc.; Jarupa LLC;

1  Elkhorn Investments, Inc.; Rhodes Homes Arizona, LLC; Rhodes Arizona Properties, LLC;
2  Tribes Holdings LLC; Six Feathers Holdings, LLC; Elkhorn Partners, A Nevada Limited
   Partnership; Bravo Inc.; Gung-Ho Concrete, LLC; Geronimo Plumbing, LLC; Apache
3  Framing, LLC; Tuscany Golf Country Club, LLC; and Pinnacle Grading, LLC.

4      38.    Debtors in Possession:    The Debtors, as debtors in possession in the
5  Chapter 11 Cases, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6      39.    Disclosure Statement:  The disclosure statement for the Plan describing the
   Plan, including all exhibits and schedules thereto, that is prepared and distributed in
7  accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy
   Rule 3018, and other applicable law, as may be amended from time to time.
8
9      40.    Disputed:  With respect to any Claim or Interest, (i) any Claim or Interest on
   the Claims Register that is not yet Allowed, (ii) any Claim or Interest that is not yet Allowed
10 pursuant to the terms of the Plan; (iii) any Claim that is not set forth on the Debtors'
   Schedules or (iv) any Claim objected to by the applicable Claims Objection Deadline.
11
12     41.    Disputed Claims Reserve:  The Litigation Trust Interests and distributions in
   respect thereof held in reserve pursuant to Article VII.
13
14     42.    Distribution Agent:    The Reorganized Debtors, or the Entity or Entities
   chosen by the First Lien Steering Committee, to make or to facilitate distributions pursuant
   to the Plan.
15
16     43.    Distribution Date:  The date occurring as soon as reasonably practicable after
   the Effective Date when distributions under the Plan shall commence, but not later than
17 thirty days after the Effective Date, without further Bankruptcy Court order.

18     44.    Distribution Record Date:    The date for determining which Holders of
   Allowed Claims are eligible to receive distributions pursuant to the Plan, which shall be the
19 Confirmation Date or such other date as designated in the Plan or a Bankruptcy Court order.

20     45.    Effective Date:    The date in a notice Filed by the First Lien Steering
21 Committee on or after the eleventh day following entry of an order, in form and substance
   acceptable to the First Lien Steering Committee, by the Bankruptcy Court confirming the
22 Plan and satisfaction of all conditions set forth in Article X.B. of the Plan having been
   satisfied or waived in accordance with the terms of the Plan; provided, however, that the
23 Effective Date shall occur no earlier than January 1, 2010.

24     46.    Entity:  As defined in section 101(15) of the Bankruptcy Code.

25     47.    Equity Security:  Any equity security as defined in section 101(16) of the
26 Bankruptcy Code in a Debtor.

27     48.    Equity Security Holder:  A Holder of an Interest.

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

6

49.     Estate:  The bankruptcy estate of any Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

50.     Exculpated Claim:  Any claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan, in each case other than claims for gross negligence, willful misconduct or fraud.

51.     Exculpated Party:  Each of: (i) the Creditors' Committee, the First Lien Steering Committee, the First Lien Lenders and the Second Lien Lenders, and all of their respective current and former officers, directors, members, employees, advisors, attorneys, professionals, consultants, agents, or other representatives, and (ii) the Debtors' current officers, employees, advisors, attorneys, professionals, consultants, agents, or other representatives.

52.     Federal Judgment Rate:  The federal judgment rate of .59%, which was in effect as of the Petition Date.

53.     File:  To file with the Bankruptcy Court in the Chapter 11 Cases, or in the case of Proofs of Claim or Interest, to file with the Claims and Solicitation Agent.

54.     Final Decree:  The decree contemplated under Bankruptcy Rule 3022.

55.     Final Order:  As applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the First Lien Steering Committee or Reorganized Debtors, as appropriate, reserve the right to waive any such appeal or similar conditions of a Final Order.

56.     First Lien Agent:  The current and former agents, arranger, and bookrunner with respect to, or under, the First Lien Credit Agreement.

57.     First Lien Credit Agreement:  The first lien Credit Agreement dated as of November 21, 2005 (as may have been amended from time to time) among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein as Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, and the other Loan Documents (as defined in the First Lien Credit Agreement).

58.     First Lien Lender Claims:  All First Lien Lender Secured Claims and First Lien Lender Deficiency Claims.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

7

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

59.    First Lien Lender Secured Claim:    Any Secured Claim for principal or interest under the First Lien Credit Agreement or the SWAP Transaction.

60.    First Lien Lender Deficiency Claim:  Any deficiency Claim arising under the First Lien Credit Agreement.

61.    First Lien Lenders:  (i) The First Lien Agent, (ii) the entities that hold debt under the First Lien Credit Agreement and (iii) the holders of Claims relating to under the SWAP Transaction.

62.    First Lien Steering Committee:    Credit Suisse Asset Management, Candlewood Special Situations Master Fund, Credit Suisse Loan Funding LLC, CypressTree Investment Management, LLP, General Electric Capital Corporation, Highland Capital Management, L.P., and Sorin Capital Management.

63.    General Unsecured Claims:  Any Claim (including any Allowed Rhodes Entities Claims) against any of the Debtors that is not a/n (a) Administrative Claim, (b) Priority Tax Claim, (c) Priority Non-Tax Claim, (d) First Lien Lender Secured Claim, (e) Second Lien Lender Secured Claim, (f) Other Secured Claim, (g) First Lien Lender Deficiency Claim, (h) Second Lien Lender Deficiency Claim, (i) Subordinated Claim, or (j) Intercompany Claim.

64.    Government Bar Date:  September 28, 2009 or, with respect to Rhodes Homes Arizona, LLC, Tuscany Golf Country Club, LLC and Pinnacle Grading, LLC, September 29, 2009.

65.    Heritage Equity Securities:  Members' interests and/or the interests as a noneconomic member in Heritage Land Company, LLC, a Nevada limited liability company.

66.    Holder:  An Entity holding a Claim or Interest, as applicable.

67.    HOA:  A homeowners' association.

68.    Impaired:  With respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

69.    Indemnification Obligation:    A Debtor's obligation under an executory contract or otherwise to indemnify directors, officers, or employees of the Debtors who served in such capacity at any time, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by the Debtors' respective articles of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date, which shall be deemed rejected under the Plan.

70.    Insider:  As defined in section 101(31) of the Bankruptcy Code.

8

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

71. **Insured Claim**: A Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy applicable to the Debtors or their businesses.

72. **Intercompany Claim**: A Claim held by a Debtor against another Debtor.

73. **Intercompany Contract**: A contract between two or more Debtors.

74. **Intercompany Interest**: An Interest held by a Debtor.

75. **Interest**: Any: (a) Equity Security, including all issued, unissued, authorized, or outstanding shares of stock together with any warrants, options, or contractual rights to purchase or acquire such Equity Securities at any time and all rights arising with respect thereto and (b) partnership, limited liability company or similar interest.

76. **Interim Compensation Order**: The Bankruptcy Court order entitled, "Order Granting Debtors' Motion for Administrative Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016 Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Re: Docket No. 62]," entered in the Chapter 11 Cases on May 18, 2009 [Rhodes Docket No. 180], as may have been modified by a Bankruptcy Court order approving the retention of the Professionals.

77. **Internal Revenue Code**: Title 26 of the United States Code, 26 U.S.C. §§ 1–9833.

78. **Judicial Code**: Title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

79. **Lien**: As defined in section 101(37) of the Bankruptcy Code.

80. **Litigation Trust**: That certain litigation trust to be created on the Effective Date in accordance with the provisions of Article IV of the Plan and the Litigation Trust Agreement.

81. **Litigation Trust Advisory Board**: The advisory board formed pursuant to the Litigation Trust Agreement.

82. **Litigation Trustee**: The Person designated by the First Lien Steering Committee in consultation with the First Lien Agent, the Second Lien Agent and the Creditors' Committee on or before the Confirmation Date and retained as of the Effective Date to administer the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement, and any successor appointed in accordance with the Litigation Trust Agreement. The identity of the Litigation Trustee shall be disclosed by the First Lien Steering Committee at or prior to the Confirmation Hearing.

83. **Litigation Trust Agreement**: That certain trust agreement, substantially on the terms set forth on Exhibit I to the Disclosure Statement and in form and substance acceptable to the First Lien Steering Committee, in consultation with the First Lien Agent,

Second Lien Agent, Creditors' Committee and the Debtors, that, among other among other things: (a) establishes and governs the Litigation Trust (including any Litigation Trust Advisory Board or similar oversight committee); and (b) describes the powers, duties, and responsibilities of the Litigation Trustee, the Liquidation Trust Assets, and the distribution of the proceeds thereof.

84.    Litigation Trust Assets: All Claims and Causes of Action on which the First Lien Lenders do not have a lien and that have not been released pursuant to the Plan or order of the Bankruptcy Court. The Litigation Trust Assets shall include those set forth on Exhibit G to the Disclosure Statement.

85.    Litigation Trust Beneficiaries: The Holders of Claims that are to be satisfied, in whole or in part, by post-Effective Date distributions that are to be made by the Litigation Trust.

86.    Litigation Trust Funding Amount: The amount of $100,000 to be used to initially fund the Litigation Trust, which shall be repaid to the Reorganized Debtors from the first proceeds received by the Litigation Trust.

87.    Litigation Trust Interests: The beneficial interests in the Litigation Trust to be distributed to certain Holders of Claims in accordance with the terms of the Plan.

88.    Management and Director Equity Incentive Plan: A post-Effective Date management and director compensation incentive plan intended for certain management, employees, consultants and directors of certain of the Reorganized Debtors.

89.    Master Ballots: The master ballots upon which the applicable Nominee or other holder of record shall submit on behalf of the Beneficial Holders it represents the votes cast by such Beneficial Holders to accept or reject the Plan.

90.    Mediation Settlement: The agreement in principle on a comprehensive settlement reached among the Debtors, the First Lien Steering Committee, the Creditors' Committee and the Second Lien Agent during a mediation held in Los Angeles, California on August 17, 24 and 25 of 2009 before the Honorable Richard Neiter.

91.    Mediation Term Sheet: The document attached as Exhibit 1 to the Plan, which sets forth the terms of the Mediation Settlement.

93.    Newco: An entity to be newly formed which will be the ultimate holding company of the Reorganized Debtors.

94.    Newco Equity Interests: The shares of common stock in Newco or limited liability company interests in Newco initially issued and outstanding pursuant to the Plan as of the Effective Date. The Newco Equity Interests may consist of a class of full-voting equity interests (the "Class A-1 Equity Interests") and a separate class of limited-voting equity interests (the "Class A-2 Equity Interests"). To the extent applicable, each First Lien Lender shall have the option to choose to take its New Equity Interests in the form of Class A-1 Equity Interests or Class A-2 Equity Interests.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

95.    Newco LLC Operating Agreement:  That certain limited liability company operating agreement which will govern Newco and shall be in form and substance acceptable to the First Lien Steering Committee.  A draft of the Newco LLC Operating Agreement is attached as Exhibit J to the Disclosure Statement.

96.    Newco Total Enterprise Value: $99.6 million, which is the midpoint range of the total enterprise value of the Reorganized Debtors set forth in the Disclosure Statement or such amount provided in the Confirmation Order as the total enterprise value of the Reorganized Debtors.

97.    New First Lien Notes:  The term notes issued pursuant to Article IV.B hereof in partial satisfaction of the First Lien Lender Secured Claims, which shall have the terms and conditions described on Exhibit 2 to the Plan.

98.    New First Lien Notes Maturity Date:  The sixth anniversary of the Effective Date.

99.    Nominee:  Any broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other party in whose name securities are registered or held of record on behalf of a Beneficial Holder.

100.    Notice of Confirmation:  That certain notice pursuant to Bankruptcy Rule 3020(c)(2) notifying Holders of Claims and Interests and parties in interest that the Bankruptcy Court has confirmed the Plan.

101.    Old Equity Interests:  All of the Interests in any of the Debtors and any rights, options, warrants, calls, subscriptions or other similar rights or agreements, commitments or outstanding securities obligating the Debtors to issue, transfer or sell any Interests.

102.    Other Secured Claim:  Any Secured Claim, other than a: (i) First Lien Lender Secured Claim; or (ii) Second Lien Lender Secured Claim.

103.    Periodic Distribution Date:  The first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the immediately preceding Periodic Distribution Date.

104.    Permitted Nominee:  Any nominee of a First Lien Lender or Second Lien Lender that such lender has confirmed in writing to the Debtors and the First Lien Agent or Second Lien Agent (as applicable) that it is such lender's nominee for the purpose of distribution of some or all of such lender's distribution hereunder, provided that such nominee shall be an affiliate of such lender.

105.    Person:  As defined in section 101(41) of the Bankruptcy Code.

106.    Petition Date:  March 31, 2009 or, for Tuscany Golf Club, LLC, Pinnacle Grading, LLC and Rhodes Homes Arizona, LLC, April 1, 2009.

107.    Plan: This Second Amended Plan of Reorganization for each of the Debtors pursuant to chapter 11 of the Bankruptcy Code either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms of the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

108.    Plan Proponent: The First Lien Steering Committee.

109.    Pravada: A Rhodes Homes development located in Mohave County (vicinity of Kingman, Arizona) on approximately 1,312 acres.

110.    Priority Non-Tax Claim: Any Claim accorded priority in right of payment pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

111.    Priority Tax Claim: Any Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

112.    Professional: An Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

113.    Proof of Claim: A proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

114.    Proof of Interest: A proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

115.    Qualified Employee: An employee that satisfies the requirements of Chapter 624.260 of the Nevada Revised Statutes.

116.    Record Date: November 24, 2009

117.    Reinstated: (a) Leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Interest so as to leave such Claim Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

Claim or Interest (other than the Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder.

118.   Rejection Damages Claim:  Any Claim on account of the rejection of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

119.   Rejection Damages Claim Deadline:  The deadline to file a Rejection Damages Claim which shall be thirty days after the later of the Effective Date or the effective date of rejection or repudiation of an executory contract or unexpired lease.

120.   Released Party:  Each of: (a) the First Lien Lenders in their capacity as such; (b) the First Lien Steering Committee; (c) the Second Lien Lenders in their capacity as such; (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entities' predecessors, successors and assigns; (e) the Creditors' Committee and the members thereof in their capacity as such; (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' subsidiaries, affiliates, officers, members, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals; (g) the Debtors' officers, employees (including Thomas Robinson and Joseph Schramm) and Professionals, as of the Petition Date; and (h) Paul Huygens; provided, however, that clause (g) shall not include (i) the Rhodes Entities or their affiliates; (ii) insiders of any of the Rhodes Entities (except as to Thomas Robinson and Joseph Schramm); or (iii) relatives of Rhodes.

121.   Reorganized Debtors:  The Debtors, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

122.   Rhodes:  James M. Rhodes, in his individual capacity and any capacity related to any of the Debtors including, without limitation, as shareholder, general partner, limited partner, agent, officer or principal.

123.   Rhodes Entities:  The following Entities:  Rhodes; Glynda Rhodes; John Rhodes; James M. Rhodes Dynasty Trust I; James M. Rhodes Dynasty Trust II; JMR Children's Irrevocable Educational Trust; Truckee Springs Holdings, Inc.; Sedora Holdings LLC; Gypsum Resources, LLC; Tulare Springs Holdings, Inc.; Escalante-Zion Investments, LLC; HH Trust; Harmony Homes, LLC; Tick, LP; Tapemeasure, LP; Joshua Choya, LLC; American Land Management, LLC; South Dakota Conservancy, LLC; Meridian Land Company, LLC; Yucca Land Company, LLC; Sagebrush Enterprises, Inc.; Rhodes Ranch, LLC; Westward Crossing, LLC; Pinnacle Equipment Rental, LLC; Desert Communities, Inc.; Spirit Underground, LLC; Tropicana Durango Investments, Inc.; Tropicana Durango, Ltd. I; Dirt Investments, LLC; Underground Technologies, LLC; South Dakota Aggregate and Engineering, LLC; Freedom Underground, LLC; Jerico Trust; Canberra Holdings, LLC; Custom Quality Homes, LLC; and Rhodes Ranch Golf, Inc.; and ID Interior Design, LLC.

124.   Rhodes Entities Claims:  Claims asserted by the Rhodes Entities.   ·

125.   Rhodes Entities Release:  As set forth in Article VIII.E hereof.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

13

126. **Rhodes Ranch Golf Course:** The golf course situated within the Rhodes Ranch master-planned community located in the southwestern Las Vegas valley.

127. **Roll-Up Transaction:** A dissolution or winding up of the corporate existence of a Debtor or Reorganized Debtor under applicable state law or the consolidation, merger, contribution of assets, or other transaction in which a Debtor or Reorganized Debtor merges with or transfers substantially all of its assets and liabilities to another Debtor or Reorganized Debtor, on or after the Effective Date.

128. **Schedules:** The schedules of assets and liabilities, schedules of executory contracts, and statement of financial affairs, as amended from time to time, Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

129. **Second Lien Agent:** The current and former agents, arranger, and bookrunner with respect to, or under, the Second Lien Credit Agreement.

130. **Second Lien Credit Agreement:** The Credit Agreement (as may have been amended from time to time) dated as of November 21, 2005 among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein, as the Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, and the other Loan Documents (as defined in the Second Lien Credit Agreement).

131. **Second Lien Lender Claims:** All Second Lien Lender Secured Claims and Second Lien Lender Deficiency Claims.

132. **Second Lien Lender Secured Claim:** Any Secured Claim on account of the Second Lien Credit Agreement.

133. **Second Lien Lender Deficiency Claim:** Any deficiency Claim arising under the Second Lien Credit Agreement.

134. **Second Lien Lenders:** The Second Lien Agent and the entities that hold debt under the Second Lien Credit Agreement.

135. **Secured:** When referring to a Claim: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan as a Secured Claim.

136. **Securities Act:** The Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1    137.    Security:  As defined in section 2(a)(1) of the Securities Act.

2    138.    Servicer:  An agent, servicer, or other authorized representative of Holders of
3    Claims or Interests recognized by the Plan Proponent.

4    139.    Solicitation Procedures Order:  That certain order entered by the Bankruptcy
     Court on  approving certain solicitation procedures for solicitation of votes on the Plan.
5

6    140.    Stanley Engineering Litigation:    The litigation styled Rhodes Homes
     Arizona, LLC v. Stanley Consultants, Inc., No. CV2006-011358, currently pending in the
7    Superior Court of Arizona, Maricopa County.

8    141.    Subordinated Claim:  Any Claim that is subordinated pursuant to section 510
     of the Bankruptcy Code.
9

10   142.    Supremacy Clause: Paragraph 2 of Article VI of the U.S. Constitution.

11   144.    SWAP Transaction:  That certain transaction between Credit Suisse
     International and Heritage Land Company, LLC with Trade Date of December 9, 2005 and
12   CSIN External ID 53095828.

13   145.    Unclaimed Distribution:  Any distribution under the Plan on account of an
     Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case
14   of distributions made by check, presented such check for payment within 120 days of the
15   date of the check; (b) given notice to the Reorganized Debtors of an intent to accept a
     particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for
16   information necessary to facilitate a particular distribution; or (d) taken any other action
     necessary to facilitate such distribution.
17

18   146.    Uniform Commercial Code:  The Uniform Commercial Code as in effect on
     the Effective Date, as enacted in the applicable state.
19

20   147.    Unimpaired:  With respect to a Class of Claims or Interests, a Class of Claims
     or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

21   148.    Unsecured Claim:  Any Claim that is not secured by a Lien on property in
22   which the Debtor's Estate has an interest.

23   149.    U.S. Constitution:  The Constitution of the United States of America.

24   151.    Voting Deadline:  January 4, 2010.

25   B.    Rules of Interpretation:

26   1.    For purposes of the Plan:  (a) whenever from the context it is appropriate,
27   each term, whether stated in the singular or the plural, shall include both the singular and the
     plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the
28   masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference in

15

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references in the Plan to Articles are references to Articles of the Plan or to the Plan; (f) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) unless otherwise set forth in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (k) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (l) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (m) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

2.   Computation of Time: In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

C.   Reference to Monetary Figures: All references in the Plan to monetary figures shall refer to currency of the United States of America.

## ARTICLE II.
### ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.

A.   Administrative Claims: Each Allowed Administrative Claim shall be paid in full, in Cash, (i) on the later of (a) the Effective Date, (b) the date on which the Bankruptcy Court enters an order allowing such Allowed Administrative Claim or (c) the date on which the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee

16

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1   (and in consultation with the First Lien Agent and Second Lien Agent) and the Holder of
2   such Allowed Administrative Claim otherwise agree, and (ii) in such amounts as (a) are
    incurred in the ordinary course of business by the Debtors, (b) are Allowed by the
3   Bankruptcy Court, (c) may be agreed upon between the Holder of such Allowed
    Administrative Claim and the Reorganized Debtors or the Debtors, with the consent of the
4   First Lien Steering Committee (and in consultation with the First Lien Agent and Second
    Lien Agent), or (d) may otherwise be required under applicable law.  Such Allowed
5   Administrative Claims shall include costs incurred in the operation of the Debtors'
6   businesses after the Petition Date, the allowed fees and expenses of Professionals retained
    by the Debtors and the Creditors' Committee and the fees due to the United States Trustee
7   pursuant to 28 U.S.C. § 1930.

8   B.      Priority Tax Claims:  Allowed Priority Tax Claims shall be paid in full, in Cash,
9   upon the later of (a) the Effective Date, (b) the date upon which there is a Final Order
    allowing such Claim as an Allowed Priority Tax Claim, (c) the date that such Allowed
10  Priority Tax Claim would have been due if the Chapter 11 Cases had not been commenced,
    or (d) upon such other terms as may be agreed to between the Reorganized Debtors or the
11  Debtors, with the consent of the First Lien Steering Committee (and in consultation with the
12  First Lien Agent and Second Lien Agent), and any Holder of an Allowed Priority Tax
    Claim; provided, however, that the Reorganized Debtors or Debtors, with the consent of the
13  First Lien Steering Committee (and in consultation with the First Lien Agent and Second
14  Lien Agent), in lieu of payment in full of Allowed Priority Tax Claims on the Effective
    Date, may make Cash payments respecting Allowed Priority Tax Claims deferred to the
15  extent permitted by Section 1129(a)(9) of the Bankruptcy Code and, in such event, unless
16  otherwise provided herein, interest shall be paid on the unpaid portion of such Allowed
    Priority Tax Claim at the Federal statutory rate; provided, further, that deferred Cash
17  payments on account of an Allowed Priority Tax Claim shall be paid quarterly over a period
    of six years commencing with the quarter after which such Priority Tax Claim has been
18  Allowed.

19

20                              **ARTICLE III.**
                       CLASSIFICATION AND TREATMENT
21                          OF CLAIMS AND INTERESTS

22  A.      Classification of Claims and Interests:      All Claims and Interests, except
23  Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in
    Article III.  A Claim or Interest is classified in a particular Class only to the extent that the
24  Claim or Interest qualifies within the description of that Class and is classified in other
25  Classes to the extent that any portion of the Claim or Interest qualifies within the description
    of such other Classes.  A Claim is also classified in a particular Class for the purpose of
26  receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed
    Claim in that Class and has not been paid, released, or otherwise satisfied prior to the
27  Effective Date.

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1.    Class Identification:  Below is a chart assigning each Class a letter and, in some cases, a number for purposes of identifying each separate Class.

| Class | Claim or Interest Type |
|---|---|
| A-1 | First Lien Lender Secured Claims |
| A-2 | Second Lien Lender Secured Claims |
| A-3 | Other Secured Claims |
| B | Priority Non-Tax Claim |
| C-1 | General Unsecured Claims |
| C-2 | First Lien Lender Deficiency Claims |
| C-3 | Second Lien Lender Deficiency Claims |
| C-4 | Subordinated Claims |
| D | Old Equity Interests |
| E | Intercompany Claims |

B.    Treatment of Classes of Claims and Interests:  To the extent a Class contains Allowed Claims or Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below.

1.    Class A-1—First Lien Lender Secured Claims

a.    Classification:  Class A-1 consists of all First Lien Lender Secured Claims.

b.    Impairment and Voting:  Class A-1 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class A-1 is entitled to vote to accept or reject the Plan.

c.    Treatment:  On the Effective Date or such other date as set forth herein, each of the First Lien Lenders (or its Permitted Nominee) shall receive on account of its Secured Claims, (w) its pro rata share of $1.5 million in Cash from the proceeds of the First Lien Lenders' Collateral, (x) its pro rata share of 100% of the New First Lien Notes, and (y) its pro rata share of 100% of the Newco Equity Interests (subject to dilution for any Newco Equity Interests issued pursuant to a Management and Director Equity Incentive Plan).  The $1.5 million payment to the First Lien Lenders shall be allocated and deemed paid to the First Lien Lenders in accordance with Article VII.F. of the Plan.

2.    Class A-2—Second Lien Lender Secured Claims

a.    Classification:  Class A-2 consists of all Second Lien Lender Secured Claims.

18

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

b.      Impairment and Voting:  Class A-2 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class A-2 is entitled to vote to accept or reject the Plan.

c.      Treatment:  On the Effective Date, only if the Class of Second Lien Lender Secured Claims votes in favor of the Plan, each of the Second Lien Lenders (or its Permitted Nominee) shall receive its pro rata share of a 50% interest in the Stanley Engineering Litigation, without a reduction on account of the reasonable fees and expenses of Ropes & Gray LLP and local counsel for the Second Lien Agent, subject to an aggregate cap of $500,000, each of which such fees shall be paid in Cash to the Second Lien Agent on the Effective Date.  If the Class of Second Lien Lender Secured Claims votes in favor of the Plan, upon final resolution of the Stanley Engineering Litigation, each holder of an Allowed Second Lien Lender Claim will receive its pro rata share of the net proceeds of the Stanley Engineering Litigation.  If the Class of Second Lien Lender Secured Claims votes against the Plan, each of the Second Lien Lenders shall receive no recovery on account of such Secured Claims.

3.      Class A-3—Other Secured Claims

a.      Classification:  Class A-3 consists of all Other Secured Claims.

b.      Impairment and Voting:  Class A-3 is Unimpaired by the Plan.  Each Holder of an Allowed Claim in Class A-3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c.      Treatment:  To the extent not satisfied by the Debtors, pursuant to Bankruptcy Court order, in the ordinary course of business prior to the Effective Date, at the option of the Reorganized Debtors on or after the Effective Date (i) an Allowed Other Secured Claim shall be Reinstated and rendered Unimpaired in accordance with section 1124(2) of the Bankruptcy Code, (ii) a Holder of an Allowed Other Secured Claim shall receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable, (iii) a Holder of an Allowed Other Secured Claim shall receive the Collateral securing both its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (iv) a Holder of an Allowed Other Secured Claim shall receive such treatment as to which such holder and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), otherwise agree.

4.      Class B—Priority Non-Tax Claims

a.      Classification:  Class B consists of all Priority Non-Tax Claims.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

b.    Impairment and Voting:  Class B is Unimpaired by the Plan.  Each Holder of an Allowed Claim in Class B is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c.    Treatment:  Each Holder of an Allowed Priority Non-Tax Claim shall receive Cash in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, unless the Holder of an Allowed Priority Non-Tax Claim and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), otherwise agree.

5.    Class C-1—General Unsecured Claims (including any Allowed Rhodes Entities Claims)

a.    Classification:  Class C-1 consists of all General Unsecured Claims including any Allowed Rhodes Entities Claims.

b.    Impairment and Voting:  Class C-1 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-1 is entitled to vote to accept or reject the Plan.

c.    Treatment:  On the Effective Date, each Holder of an Allowed General Unsecured Claim (including any Allowed Rhodes Entities Claims) shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of General Unsecured Claims on account of its Allowed Claim.

6.    Class C-2—First Lien Lender Deficiency Claims

a.    Classification:  Class C-2 consists of all First Lien Lender Deficiency Claims.

b.    Impairment and Voting:  Class C-2 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-2 is entitled to vote to accept or reject the Plan.

c.    Treatment:  On the Effective Date, each Holder of a First Lien Lender Deficiency Claim shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of First Lien Lender Deficiency Claims on account of its Allowed Claim.

7.    Class C-3—Second Lien Lender Deficiency Claims

a.    Classification:  Class C-3 consists of all Second Lien Lender Deficiency Claims.

20

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

b.    Impairment and Voting:  Class C-3 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-3 is entitled to vote to accept or reject the Plan.

c.    Treatment:  On the Effective Date, each Holder of an Allowed Second Lien Lender Deficiency Claim shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of Second Lien Lender Deficiency Claims on account of its Allowed Claim.  If the Class of Second Lien Lender Secured Claims votes against the Plan, the distribution of Litigation Trust Interests allocable to the Holders of Second Lien Lender Deficiency Claims shall be subject to the reasonable fees and expenses of Ropes & Gray LLP and local counsel for the Second Lien Agent.

8.    Class C-4—Subordinated Claims

a.    Classification:  Class C-4 consists of all Subordinated Claims.  The First Lien Steering Committee does not believe there are any Subordinated Claims but has created Class C-4 out of an abundance of caution.

b.    Impairment and Voting:  Class C-4 is Impaired by the Plan.  Each Holder of an Interest in Class C-4 is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.    Treatment:  Claims subordinated under applicable law shall not receive any recovery on account of their Claims.

9.    Class D—Old Equity Interests

a.    Classification:  Class D consists of all Old Equity Interests.

b.    Impairment and Voting:  Class D is Impaired by the Plan.  Each Holder of an Interest in Class D is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.    Treatment:  Each holder of an Old Equity Interest shall not be entitled to, and shall not receive or retain any property or interest in property on account of such Old Equity Interest.

10.    Class E—Intercompany Claims

a.    Classification:  Class E consists of all Intercompany Claims.

b.    Impairment and Voting:  Class E is Impaired by the Plan.  Each Holder of a Claim in Class E is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.    Treatment:  At the election of the Reorganized Debtors, Intercompany Claims will be (i) reinstated, in full or in part, (ii) resolved through set-off,

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  distribution, or contribution, in full or in part, or (iii) cancelled and discharged, in
2  full or in part, in which case such discharged and satisfied portion shall be eliminated
   and the Holders thereof shall not be entitled to, and shall not receive or retain, any
3  property or interest in property on account of such portion under the Plan.

4  C.    Class Voting Rights: The voting rights of each Class are as follows.

5        1.    Classes Entitled to Vote:   The following Classes are Impaired and thus
   entitled to vote to accept or reject the Plan.

6

| Classes |
| --- |
| A-1 |
| A-2 |
| C-1 |
| C-2 |
| C-3 |

12       2.    Presumed Acceptance of Plan: The following Classes are Unimpaired and
13  deemed to accept the Plan.  Therefore, such Classes are not entitled to vote to accept or
   reject the Plan and the vote of such Holders of Claims and Interests shall not be solicited.

| Classes |
| --- |
| A-3 |
| B |

18       3.    Presumed Rejection of Plan:  The following Classes are Impaired and
19  conclusively presumed to reject the Plan.  Therefore, such Classes are not entitled to vote to
   accept or reject the Plan and the vote of such Holders of Claims or Interests shall not be
20  solicited.

| Class |
| --- |
| C-4 |
| D |
| E |

25  D.    Bankruptcy Code Section 1111(b) Election:    Bankruptcy Code section
   1111(b)(1)(A) authorizes a class of secured claims to elect, by at least two-thirds in amount
26  and more than half in number, to waive any deficiency claim otherwise assertable against
   the debtor and instead require the debtor to make payments equal to the total amount of the
27  claims, with such payment obligation having a present value equal to the current value of the
   creditors' collateral.  A section 1111(b) election must be made by a class of secured
28  creditors at or prior to the conclusion of the hearing on the Disclosure Statement.  No class

of Secured Claims made a section 1111(b) election at or prior to the conclusion of the hearing on the Disclosure Statement. Accordingly, Bankruptcy Code section 1111(b) is not applicable to the Plan.

E.    Acceptance or Rejection of the Plan

1.    Acceptance by Impaired Classes of Claims: Pursuant to Bankruptcy Code section 1126(c) and except as otherwise provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

2.    Tabulation of Votes on a Consolidated Basis: The Claims and Solicitation Agent will tabulate all votes on the Plan on a consolidated basis for the purpose of determining whether the Plan satisfies Bankruptcy Code section 1129(a)(8) and (10).

3.    Cramdown: The First Lien Steering Committee requests Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The First Lien Steering Committee reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

4.    Controversy Concerning Impairment: If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE IV.**
PROVISIONS FOR IMPLEMENTATION OF THE PLAN

A.    Substantive Consolidation: The Plan shall serve as a motion by the First Lien Steering Committee seeking entry of a Bankruptcy Court order substantively consolidating all of the Estates into a single consolidated Estate for all purposes associated with Confirmation and distributions to be made under the Plan.

If substantive consolidation of all of the Estates is ordered, then on and after the Effective Date, all assets and liabilities of the Debtors shall be treated as though they were merged into the Estate of The Rhodes Companies, LLC for all purposes associated with Confirmation and Consummation, and all guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor shall be treated as one collective obligation of the Debtors. Substantive consolidation shall not affect the legal and organizational structure of the Reorganized Debtors or their separate corporate existences or any prepetition or postpetition guarantees, Liens, or security interests that are required to be maintained under the Bankruptcy Code, under the Plan, or in connection with contracts or leases that were assumed or entered into during the Chapter 11 Cases. All duplicative Claims (identical in both amount and subject matter) Filed against more than one of the Debtors shall be

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  automatically expunged so that only one Claim survives against the consolidated Debtors
2  (but in no way shall such surviving Claim be deemed Allowed by reason of this Section).
   Any alleged defaults under any applicable agreement with the Debtors or the Reorganized
3  Debtors arising from substantive consolidation shall be deemed Cured as of the Effective
   Date.
4

5  B.      Sources of Consideration for Plan Distributions:  The Reorganized Debtors shall
   fund distributions under the Plan with Cash on hand, proceeds from the Mediation
6  Settlement, existing assets, and the issuance of the New First Lien Notes and Newco Equity
7  Interests.

8       1.      Newco Equity Interests:  On the Effective Date, but not more than thirty days
   after the Effective Date for initial distributions on account of Allowed Claims, Newco shall
9  issue Newco Equity Interests (based upon the Newco Total Enterprise Value) to the Holders
10 of First Lien Lender Secured Claims.  Each share of Class A-2 Equity Interest will be
   convertible at the option of the holder, exercisable at any time, into one Class A-1 Equity
11 Interest.

12 The economic rights of the Class A-1 Equity Interests and Class A-2 Equity Interests shall
   be identical.  The Class A-2 Equity Interests will not be entitled to general voting rights, but
13 will be entitled to vote on an "as converted" basis (together with the holders of the Class A-1
14 Equity Interests, as a single class) on certain non-ordinary course transactions, including
   (i) any authorization of, or increase in the number of authorized shares of, any class of
15 capital stock ranking equal or senior to the Newco Equity Interests as to dividends or
16 liquidation preference, including additional Newco Equity Interests, (ii) any amendment to
   the Newco's certificate of incorporation or by-laws, (iii) any amendment to any shareholders
17 agreement, (iv) any sale, lease or other disposition of all or substantially all of the assets of
   the Reorganized Debtors through one or more transactions, (v) any recapitalization,
18 reorganization, consolidation or merger of the Reorganized Debtors, (vi) to the extent that
19 holders of Class A-1 Equity Interests have the right to vote thereon, any issuance or entry
   into an agreement for the issuance of capital stock (or any options or other securities
20 convertible into capital stock) of the Reorganized Debtors, except as may be provided for
   under any management incentive plan, and (vii) to the extent that holders of Class A-1
21 Equity Interests have the right to vote thereon, any redemption, purchase or other acquisition
22 by the Newco of any of its capital stock (except for purchases from employees upon
   termination of employment).
23

24 The Class A-2 Equity Interests will be entitled to a separate class vote on any
   amendment or modification of any rights or privileges of the Class A-2 Equity Interests that
25 does not equally affect the Class A-1 Equity Interests.  In any liquidation, dissolution or
   winding up of the Reorganized Debtors, all assets will be distributed to holders of the
26 Newco Equity Interests on a pro rata basis.

27       a.      Section 1145 Exemption:  Pursuant to section 1145 of the Bankruptcy
   Code, the offering, issuance, and distribution of any Securities contemplated by the
28 Plan and any and all settlement agreements incorporated therein, including the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

Newco Equity Interests, shall, to the fullest extent permitted by applicable law, be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities. In addition, under section 1145 of the Bankruptcy Code any Securities contemplated by the Plan, including the Newco Equity Interests and New First Lien Notes, will be freely tradable and transferable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (ii) the restrictions, if any, on the transferability of such Securities and instruments set forth in the Newco LLC Operating Agreement, a draft of which is attached to the Disclosure Statement as Exhibit J; and (iii) applicable regulatory approval.

b.    Issuance and Distribution of the Newco Equity Interests: The Newco Equity Interests, when issued or distributed as provided in the Plan, will be duly authorized, validly issued, and, if applicable, fully paid and nonassessable. Each distribution and issuance shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

2.    New First Lien Notes: On the Effective Date or as soon as reasonably practicable thereafter, Newco shall issue the New First Lien Notes. The Reorganized Debtors shall be co-borrowers and guarantors under the New First Lien Notes. The New First Lien Notes shall have the terms set forth on Exhibit 2 to the Plan and as otherwise provided in the terms of the documents governing the New First Lien Notes. A draft of the New First Lien Notes credit agreement is attached to the Disclosure Statement as Exhibit K.

3.    Exit Financing: To the extent the board of directors of Newco (or such other governing body) determines that additional financing is necessary for the operation of the Reorganized Debtors' businesses, Newco and/or the Reorganized Debtors may obtain additional financing. The First Lien Steering Committee does not anticipate that additional sources of funding in addition to Cash on hand, the Newco Equity Interests and the New First Lien Notes will be necessary to fund distributions under the Plan on the Effective Date.

C.    Corporate Existence: Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval.

D. <u>Vesting of Assets in the Reorganized Debtors</u>: Except for any Claims or Causes of Action transferred to the Litigation Trust and unless otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E. <u>Cancellation of Equity Securities and Related Obligations</u>: On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the Old Equity Interests and any other Certificate, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such Certificates, notes, other instruments or documents evidencing indebtedness or obligations of the Debtors that are Reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Old Equity Interests and any other Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements or Certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; <u>provided</u>, <u>however</u>, that notwithstanding Confirmation, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of: (w) allowing Holders to receive distributions under the Plan; (x) allowing a Servicer to make distributions on account of such Claims as provided in the applicable governing agreement; (y) permitting such Servicer to maintain any rights and Liens it may have against property other than the Reorganized Debtors' property for fees, costs, and expenses pursuant to such indenture or other agreement; and (z) governing the rights and obligations of non-Debtor parties to such agreements vis-à-vis each other (including, without limitation, the rights and obligations of non-Debtor parties under the First Lien Credit Agreement and the Second Lien Credit Agreement, which, for the avoidance of doubt, shall not be affected by the Plan except as otherwise expressly provided in the Plan); <u>provided</u>, <u>further</u>, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors. The Reorganized Debtors shall not have any obligations to any Servicer for any fees, costs, or expenses, except as expressly otherwise provided in the Plan.

F. <u>Restructuring Steps and Transfer of Certain Interests to Newco</u>: In the event the Rhodes Entities comply with all of their obligations pursuant to the Mediation Settlement and the Plan, on the Effective Date or, in the case of step (4) below, effective the next day, the following transactions shall be deemed to have occurred in the order set forth below.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1          <u>1.</u>     Newco shall be formed as a new limited liability company. The First Lien Lender Secured Claims shall be deemed to have been exchanged for the membership interests in Newco. Newco shall be deemed to hold all of the First Lien Lender Secured Claims. At the option of a holder, membership interests in Newco may be transferred to a corporation prior to Step 2.

2          <u>2.</u>     Newco shall purchase all of the Heritage Equity Securities for $10.00.

          <u>3.</u>     Contemporaneous with or subsequent to Newco's purchase of the Heritage Equity Securities, The Rhodes Companies, LLC - the general partner of each of Tick, LP; Glynda, LP; Jackknife, LP; LP; Batcave, LP; Overflow, LP; Wallboard, LP; and Chalkline, LP, --shall sell its general partnership interests in such entities to Newco for $1.00. Alternatively, the membership interest in The Rhodes Companies, LLC may be acquired from its sole member – Sagebrush Enterprises, Inc. – in consideration for release of its obligations under the First Lien Lender Secured Claims.

          <u>4.</u>     Newco's members may agree to continue Newco as an LLC, file a check the box election effective the day after the Effective Date to treat Newco as a corporation for tax purposes, or convert into a corporation as of the day after the Effective Date.

          In any event, to the extent any cancellation of indebtedness is derived from the foregoing transactions under the Internal Revenue Code, it shall be allocable to the holders of the Old Equity Interests as required by the Internal Revenue Code. To be clear, Newco's purchase of the Heritage Equity Securities shall occur (a) contemporaneously with or immediately before the membership interests of those entities described in Article IV.F.3, immediately above, are acquired; (b) before any debt or obligations of the Debtors are canceled or forgiven; (d) before any new notes are issued or existing debt is modified by the Reorganized Debtors; and (e) before any of the other acts or events contemplated in Article III.B, et seq., of the Plan. The holders of the Heritage Equity Securities and Newco will report the sale and purchase of the Heritage Equity Securities in accordance with revenue ruling 99-6, 1991-1 CB 432.

G.     <u>Restructuring Transactions</u>:  On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; (4) the Roll-Up Transactions; (5) the establishment of a liquidation trust or other appropriate vehicle to hold assets for sale that will not be utilized in the business of the Reorganized Debtors; and (6) all other actions that the Reorganized Debtors determine are necessary or appropriate, including the making of filings or recordings in connection with the relevant Roll-Up Transactions. The form of each Roll-Up

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1　Transaction shall be determined by the Reorganized Debtor that is party to such Roll-Up
2　Transaction.  Implementation of the Roll-Up Transactions shall not affect any distributions,
　　discharges, exculpations, releases, or injunctions set forth in the Plan.

3
4　H.      Corporate Action:  Each of the matters provided for by the Plan involving the
　　corporate structure of the Debtors or corporate or related actions to be taken by or required
5　of the Reorganized Debtors shall, as of the Effective Date, be deemed to have occurred and
6　be effective as provided in the Plan (except to the extent otherwise indicated), and shall be
　　authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all
7　respects without any requirement of further action by Holders of Claims or Interests,
　　directors of the Debtors, or any other Entity.  Without limiting the foregoing, such actions
8　may include:  the adoption and filing of the Newco LLC Operating Agreement; the adoption
　　and filing of organization documents of the other Reorganized Debtors; the appointment of
9　directors and officers for the Reorganized Debtors; and the adoption, implementation, and
　　amendment of the Management and Director Equity Incentive Plan.
10
11　I.      Post-Confirmation Property Sales:  To the extent the Reorganized Debtors sell any
　　of their property prior to or including the date that is one year after Confirmation, the
12　Reorganized Debtors may elect to sell such property pursuant to sections 363, 1123, and
　　1146(a) of the Bankruptcy Code.
13
14　J.      Organizational Documents:  The certificates of incorporation and bylaws (or other
　　formation documents relating to limited liability companies, limited partnerships or other
15　forms of Entity) of the Debtors shall be in form and substance acceptable to the First Lien
　　Steering Committee and shall be consistent with the provisions of the Plan and the
16　Bankruptcy Code.  The Newco LLC Operating Agreement shall be in form and substance
　　acceptable to the First Lien Steering Committee.  The organizational documents for Newco
17　shall, among other things:  (1) authorize issuance of the Newco Equity Interests; and (2)
　　pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code,
18　include a provision prohibiting the issuance of non-voting Equity Securities.  On or as soon
19　as reasonably practicable after the Effective Date, to the extent required, each of the
　　Reorganized Debtors shall file new certificates of incorporation (or other formation
20　documents relating to limited liability companies limited partnerships, or other forms of
　　Entity) in form and substance acceptable to First Lien Steering Committee, with the
21　secretary (or equivalent state officer or Entity) of the state under which each such
22　Reorganized Debtor is or is to be incorporated or organized.  On or as soon as reasonably
　　practicable after the Effective Date, to the extent required, Newco shall file the applicable
23　organizational documents with the secretary (or equivalent state officer or Entity) of the
　　state under which Newco is to be incorporated or organized.  After the Effective Date, each
24　Reorganized Debtor may amend and restate its new certificate of incorporation and other
25　constituent documents as permitted by the relevant state corporate law.

26　K.      Effectuating Documents, Further Transactions:  On and after the Effective Date, the
　　Reorganized Debtors, and the officers and members of the boards of directors (or other
27　governing bodies) thereof, are authorized to and may issue, execute, deliver, file, or record
28　such contracts, Securities, instruments, releases, and other agreements or documents and
　　take such actions as may be necessary or appropriate to effectuate, implement, and further

1   evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan
2   in the name of and on behalf of the Reorganized Debtors, without the need for any
    approvals, authorizations, or consents except for those expressly required pursuant to the
3   Plan.

4   L.      Exemption from Certain Transfer Taxes and Recording Fees:  Pursuant to section
    1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to
5   any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to:
6   (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other
    interest in the Debtors or the Reorganized Debtors; (2) the creation, modification,
7   consolidation, or recording of any mortgage, deed of trust, or other security interest, or the
    securing of additional indebtedness by such or other means; (3) the making, assignment, or
8   recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or
9   other instrument of transfer under, in furtherance of, or in connection with, the Plan,
    including any deeds, bills of sale, assignments, or other instrument of transfer executed in
10  connection with any transaction arising out of, contemplated by, or in any way related to the
    Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee,
11  intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax,
12  Uniform Commercial Code filing or recording fee, or recording fee, or other similar tax or
    governmental assessment, and the appropriate state or local governmental officials or agents
13  shall forego the collection of any such tax or governmental assessment and to accept for
    filing and recordation any of the foregoing instruments or other documents without the
14  payment of any such tax or governmental assessment.

15  M.      Directors and Officers of the Reorganized Debtors:  On the Effective Date, the
16  board of directors of the Reorganized Debtors or similar governing entities shall be
    composed of one or more members appointed by the First Lien Steering Committee. On the
17  Effective Date, a chief executive officer or similar officer selected by the board of directors
    of the Reorganized Debtors shall be appointed. The identity of such officers and directors
18  shall be disclosed at or prior to the Confirmation Hearing.

19
    N.      Management and Director Equity Incentive Plan:  The Reorganized Debtors reserve
20  the right to implement a Management and Director Equity Incentive Plan. The terms and
    conditions of any Management and Director Equity Incentive Plan shall be determined by
21  the Board of Directors of Newco.

22
    O.      The Litigation Trust:  On the Effective Date, the Litigation Trust will be
23  implemented pursuant to the terms of the Litigation Trust Agreement. A draft of the
    Litigation Trust Agreement is attached to the Disclosure Statement as Exhibit I. On the
24  Effective Date, pursuant to the terms of the Litigation Trust Agreement, the Debtors will
25  transfer the Litigation Trust Assets for and on behalf of the Litigation Trust Beneficiaries,
    which will be the Holders of Allowed Claims in Classes C-1, C-2 and C-3. For all federal
26  income tax purposes, the beneficiaries of the Litigation Trust shall be treated as grantors and
    owners thereof and it is intended that the Litigation Trust be classified as a liquidating trust
27  under Section 301.7701-4 of the Treasury Regulations and that such trust is owned by its
28  beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Litigation
    Trust Beneficiaries be treated as if they had received a distribution of an undivided interest

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

29

in the Litigation Trust Assets and then contributed such interests to the Litigation Trust. The Litigation Trust will initially be funded with $100,000, which amount will be transferred to the Litigation Trust on the Effective Date and which will be repaid to the Reorganized Debtors from the first proceeds received by the Litigation Trust.

The Litigation Trust shall issue non-transferable interests to Holders of Allowed First Lien Lender Deficiency Claims, Allowed Second Lien Lender Deficiency Claims, and Allowed General Unsecured Claims (including any Allowed Rhodes Entities Claims) with each Holder of an Allowed Claim in each of the foregoing Classes of Claims receiving its pro rata share of the Litigation Trust Interests allocable to each such Class of Claims.

A list of Litigation Trust Assets is attached to the Disclosure Statement as Exhibit G. The Litigation Trust Assets shall include all Claims existing against the Rhodes Entities that are not expressly released under the Plan.

P.    Preservation of Causes of Action:    In accordance with section 1123(b) of the Bankruptcy Code, except as otherwise provided in the Plan, the Reorganized Debtors and the Litigation Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated on Exhibit L to the Disclosure Statement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors and the Litigation Trust, as applicable, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors and the Litigation Trust, as applicable. **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, Reorganized Debtors or the Litigation Trust, as applicable, will not pursue any and all available Causes of Action against them. The Reorganized Debtors and the Litigation Trust, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors and the Litigation Trust, as applicable, expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

The Reorganized Debtors and the Litigation Trust, as applicable, reserve and shall retain the foregoing Causes of Action notwithstanding the rejection or repudiation of any executory contract or unexpired lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors and the Litigation Trust, as the case may be, on the Effective Date. The applicable Reorganized Debtor and the Litigation Trust, as applicable, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action belonging to it. The

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

30

1  Reorganized Debtors and the Litigation Trust, as applicable, shall have the exclusive right,
2  authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle,
   compromise, release, withdraw, or litigate to judgment any such Causes of Action and to
3  decline to do any of the foregoing without the consent or approval of any third party or
4  further notice to or action, order, or approval of the Bankruptcy Court.  Neither the
   Litigation Trust nor the Reorganized Debtors shall commence any litigation against the
5  Rhodes Entities until the Bankruptcy Court rules on the allowance of the Rhodes Entities
6  Claims set forth in Proofs of Claim, included in the Debtors' Schedules or otherwise set
   forth in the Mediation Term Sheet.  To the extent any statute of limitations to pursue any
7  claims belonging to the Debtors against the Rhodes Entities would lapse from the execution
8  date of the Mediation Term Sheet through the Bankruptcy Court's resolution of the
   allowance of the Rhodes Entities Claims, the Rhodes Entities shall be deemed to have
9  consented to an extension of the applicable statute of limitations until sixty days following
10 the Bankruptcy Court's ruling on the allowance of the Rhodes Entities Claims.  The
   Litigation Trust shall have no liability to any entity for any Claims or Causes of Action it
   determines not to pursue.

11 Q.    HOA Board Seats:  The Rhodes Entities shall ensure that designees identified by the
12 Reorganized Debtors shall replace the Rhodes Entities on any HOA boards that in any way
   are related to the Debtors, Reorganized Debtors or their businesses and Declarant rights or
13 the like shall be transferred to the Reorganized Debtors or their designee(s).

14 R.    Licensing:  The Rhodes Entities shall take commercially reasonable steps and/or
15 enter into any agreements or similar documentation reasonably necessary to ensure the
   Reorganized Debtors' continued use of all of the Debtors' applicable professional licenses at
16 no cost to the Rhodes Entities for a period of up to twelve months following the Effective
17 Date.    To the extent, Sagebrush Enterprises, Inc. shall have rescinded by September 25,
   2009 its revocation of its indemnity of the Nevada contractors' license held by Rhodes
18 Design & Development Corporation and such rescission did not negatively affect the
   general contractor's license held by Rhodes Design & Development Corporation, Sagebrush
19 shall be entitled to file an Administrative Claim on behalf of any and all claims asserted
20 against Sagebrush as a result of Sagebrush being the indemnitor that arose from and after the
   effectiveness of Sagebrush's recission of its indemnity through the Effective Date, provided
21 that the allowance of such Administrative Claim shall be subject to resolution by the
   Bankruptcy Court and/or such other court(s) of competent jurisdiction.  The Reorganized
22 Debtors shall indemnify Sagebrush for any and all claims asserted against Sagebrush as a
23 result of Sagebrush being the indemnitor that arise from and after the Effective Date.
   Professional licenses include, but are not limited to the Nevada State Contractor's Board
24 license, and any other general business or similar licenses in any county, state, municipality
25 or other jurisdiction in which the Reorganized Debtors conduct business or own assets as of
   the Effective Date.   The Rhodes Entities shall use commercially reasonable efforts to
26 maintain third party agreements with their real estate brokers and sales agents.

27 S.    Transfer of Rhodes Ranch Golf Course:  On the Effective Date, the applicable
   Rhodes Entities shall transfer their equity interests in the entity that owns the Rhodes Ranch
28 Golf Course to the Reorganized Debtors (together with any equipment, golf carts, contracts
   or other assets determined by the First Lien Steering Committee to be necessary for the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

31

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  operation of the Rhodes Ranch Golf Course) pursuant to the terms of a stock transfer
2  agreement in form and substance acceptable to the First Lien Steering Committee and
   Rhodes, subject to any outstanding third party debt on the Rhodes Ranch Golf Course. The
3  stock transfer agreement shall contain representations by the Rhodes Entities that the entity
   that owns the Rhodes Ranch Golf Course does not have any liabilities other than ordinary
4  course liabilities related to the Rhodes Ranch Golf Course and indemnification provisions in
   favor of the Reorganized Debtors by the Rhodes Entities for any non-ordinary course
5  liabilities. In addition, prior to the deadline for filing objections to the Disclosure Statement,
6  the Rhodes Entities shall provide the First Lien Steering Committee with a list of all
   liabilities of the entity that owns the Rhodes Ranch Golf Course, a lien analysis and copies
7  of all contracts related to the Rhodes Ranch Golf Course and to which the entity that owns
   the Rhodes Ranch Golf Course is a party, each of which must be acceptable to the First Lien
8  Steering Committee. Pursuant to the stock and asset transfer agreement governing the
9  transfer of the equity in the entity that owns the Rhodes Ranch Golf Course to the
   Reorganized Debtors, the entity that owns the Rhodes Ranch Golf Course post-Effective
10 Date shall agree to indemnify James Rhodes for any ordinary course liability first incurred
11 post-Effective Date by such entity under any contract related to the operation of the Rhodes
   Ranch Golf Course for which James Rhodes has provided a personal guaranty.

12
13 The existing $5.9 million third party debt outstanding on the Rhodes Ranch Golf
   Course shall be refinanced on or before the Effective Date, for a period of no less than
14 twelve (12) months from the Effective Date, on terms and conditions acceptable to Rhodes
   and the First Lien Steering Committee. The parties will work together in good faith to
15 refinance the existing third party debt. Upon obtaining a final commitment for refinancing
16 for the Rhodes Ranch Golf Course, the First Lien Steering Committee will disclose such
   terms in a filing with the Bankruptcy Court. The $2.4 million loan by James Rhodes to the
17 entity that owns the Rhodes Ranch Golf Course will be contributed by James Rhodes to the
   entity that owns the Rhodes Ranch Golf Course and he will indemnify the Debtors, the
18 Reorganized Debtors, Newco and the entity that owns the Rhodes Ranch Golf Course from
19 any liability arising from the contribution of such loan.

20 The Reorganized Debtors shall pay the reasonable costs and expenses associated
   with the refinancing; provided, that the terms of such refinancing are acceptable to the First
21 Lien Steering Committee. The First Lien Steering Committee acknowledges that the loan
   documentation may provide that, upon the transfer of the Rhodes Ranch Golf Course to the
22 Reorganized Debtors on the Effective Date, additional collateral from the Reorganized
23 Debtors may be required. The Rhodes Entities shall transfer to the Reorganized Debtors on
   the Effective Debt any contracts related to the operation of and revenue generated by any
24 cell towers located on the property of the Rhodes Ranch Golf Course. Any funds received
   after July 31, 2009 from the Las Vegas Valley Water District or other similar entity as an
25 incentive for converting the golf course from a green course to a desert course shall be used
   for operating expenses associated with the Rhodes Ranch Golf Course, with any excess to
26 become property of the Reorganized Debtors on the Effective Date.

27 Rhodes and/or his designee shall have the absolute right to repurchase the Rhodes
28 Ranch Golf Course from the Reorganized Debtors at eight (8) years from the Effective Date
   for $5.9 million in cash. The Reorganized Debtors may require Rhodes to purchase the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  Rhodes Ranch Golf Course any time between four (4) and eight (8) years from the Effective
2  Date for $5.9 million in cash provided that the Reorganized Debtors shall provide Rhodes
   with at least one year advance notice of its intent to sell the Rhodes Ranch Golf Course back
3  to Rhodes. Such transfer shall occur on the applicable anniversary date of the Effective
4  Date. For the avoidance of doubt, if the Reorganized Debtors put the Rhodes Ranch Golf
   Course to Rhodes in accordance with the terms hereof and Rhodes fails to comply with his
5  obligation to purchase the Rhodes Ranch Golf Course, Rhodes shall be deemed to have
   forfeited his option to purchase the Rhodes Ranch Golf Course.

6
7      On the Effective Date, Rhodes's obligations to comply with the repurchase shall be
   secured by either (i) $500,000 in cash in an escrow account or (ii) property worth at least $2
8  million (the "Golf Course Security Property"), with the value of such property to be agreed
   to by Rhodes and the First Lien Steering Committee or otherwise valued by an independent
9  third party appraisal firm acceptable to both Rhodes and the First Lien Steering Committee
10 (except Cushman Wakefield). In the event that Rhodes does not meet the repurchase
   request, provided that the Rhodes Ranch Golf Course is in the standard condition (defined
11 below), then the Reorganized Debtors shall be entitled to liquidated damages in the form of
   security pledged (i.e., the $500,000 or the Golf Course Security Property).

12
13     So long as Rhodes has not defaulted on his obligation to repurchase the Rhodes
   Ranch Golf Course, Rhodes shall have the absolute and sole discretion to replace the Golf
14 Course Security Property with $500,000 in cash on 30 days written notice to the
   Reorganized Debtors. Upon deposit of the $500,000 in cash, the Golf Course Security
15 Property shall be released to Rhodes or his designee. Notwithstanding anything to the
   contrary contained herein, if the Rhodes Ranch Golf Course is not maintained with
16 substantially the same performance and rating criteria at the time of the repurchase request
   as verified by an independent third party rating agency as it was on the Effective Date
17 ("Standard Condition"), James Rhodes can (i) require the Reorganized Debtors to cure any
18 conditions to return the Rhodes Ranch Golf Course to its Standard Condition (provided, that
   the cost of such cure does not exceed $500,000), or (ii) choose not to purchase the Rhodes
19 Ranch Golf Course. Upon either the repurchase of the Rhodes Ranch Golf Course or the
   written decision to not repurchase the Rhodes Ranch Golf Course (in accordance with the
20 preceding sentence), the Golf Course Security Property or the $500,000 Cash (if not applied
   to the repurchase of the Rhodes Ranch Golf Course) shall be returned to Rhodes within 30
21 days.

22
23     On the Effective Date, the Reorganized Debtors shall record a memorandum of
   agreement against the Rhodes Ranch Golf Course to evidence the above.

24 T.    Cash Payment: The Rhodes Entities shall make a cash payment to the Reorganized
25 Debtors of $3.5 million in Cash on the Effective Date. The $3.5 million cash payment shall
   be used to fund distributions under the Plan and provide working capital to the extent of any
26 excess.

27 U.    Transfer of Arizona Assets: On the Effective Date, pursuant to a stock and asset
28 transfer agreement, a draft of which is attached to the Disclosure Statement as Exhibit M,
   the Debtors shall transfer Pravada and the other Arizona Assets set forth on Attachment D to

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  the Mediation Term Sheet, plus the Golden Valley Ranch tradename to the Rhodes Entities
2  free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the
   Bankruptcy Code; provided, that the non-First Lien Lender/Second Lien Lender liens do not
3  exceed $60,000; provided, further, that such assets shall not include assets owned by
4  Pinnacle Grading located in Arizona and related contracts associated with the assets. **All
   Claims asserted against the Arizona Assets shall be deemed asserted against the
5  Estates and shall be classified in accordance with Article III hereof for distribution
   purposes.** The Arizona Assets shall be transferred through the Rhodes Entities' acquisition
6  of the stock of Rhodes Arizona Properties LLC and Elkhorn Investments, Inc., in each case,
7  as reorganized, and certain assets of Rhodes Homes Arizona LLC. Any non-real property
   assets or assets not listed on Attachment D to the Mediation Term Sheet that are titled in
8  Rhodes Arizona Properties LLC or Elkhorn Investments, Inc. shall be transferred to Newco
9  pursuant to the stock and asset transfer agreement. To the extent any real property assets
   located in Arizona are titled in any Debtor other than Rhodes Arizona Properties LLC,
10 Elkhorn Investments, Inc. or Rhodes Homes Arizona, such real property assets shall be
11 transferred to the Rhodes Entities pursuant to the stock and asset transfer agreement. All
   intercompany claims assertable by Rhodes Arizona Properties LLC or Elkhorn Investments,
12 Inc. against any other Debtor shall be deemed cancelled.

13      The Debtors shall provide James Rhodes notice of any proposed sale of the Pinnacle
14 assets, and James Rhodes shall be granted a right to bid on the sale of such assets within 10
   days of such notice. The Rhodes Entities shall permit storage of Pinnacle Grading
15 equipment at current locations at no cost to the Reorganized Debtors for a period through six
   months following the Effective Date.

16      All executory contracts and unexpired leases associated solely with Arizona shall be
17 assumed and assigned to the Rhodes Entities (or their designee), at no cost to the Debtors or
   the Reorganized Debtors and all cure costs associated therewith shall be borne by the
18 Rhodes Entities.

19 V.     Trademarks and Trade Names: Within the earlier of thirty (30) days following: (i)
20 upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and
   inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of
21 the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer
22 to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E
   to the Mediation Term Sheet.

23 W.     Self Insured Retention Obligations: The Reorganized Debtors shall indemnify
24 subcontractors that are obligated under any of the Reorganized Debtors' existing insurance
   policies for any post-Effective Date self insured retention obligations paid and/or to be paid
25 by such subcontractors pursuant to such existing insurance policies.

26 X.     Bond Replacement or Indemnification: Those performance bonds guaranteed by
27 the Rhodes Entities in favor of the Debtors shall be replaced on a renewal date by new
   performance bonds. In the alternative, subject to the Rhodes Entities being reasonably
28 satisfied with the creditworthiness of the Reorganized Debtors, which shall be satisfied
   solely as of the Effective Date by the Court finding that the Plan is feasible, the existing

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

performance bonds guaranteed by the Rhodes Entities and such guarantees shall remain in place. The applicable Rhodes Entity's agreement to remain a guarantor under the existing performance bonds as such performance bonds may be renewed shall be at no cost to the Rhodes Entities (including, but not limited to, the payment of bond premiums). In the event the Reorganized Debtors fail to perform their obligations underlying such renewed performance bonds after the Effective Date, the Reorganized Debtors will indemnify the Rhodes Entities under such outstanding performance bonds for damages incurred by the Rhodes Entities on account of their guarantee of such performance bonds solely as a result of the Reorganized Debtors' failure to perform such obligations subsequent to the Effective Date. The Reorganized Debtors shall use commercially reasonable efforts to replace all outstanding performance bonds backstopped by Rhodes Entities within 30 months of the Effective Date. The Bankruptcy Court shall retain jurisdiction to resolve any disputes arising out of this paragraph.

Contingent Bond Indemnity Claims will be released in the ordinary course of business as time passes or as work on the underlying project is completed. To the extent that a Contingent Bond Indemnity Claim becomes an Allowed or estimated Claim, such Contingent Bond Indemnity Claim shall be treated as a General Unsecured Claim.

Y.     Stanley Engineering Litigation  In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent, assuming the Class of Second Lien Lender Secured Claims votes in favor of the Plan, shall engage in good faith negotiations to ensure that the Second Lien Lenders receive consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration. In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation).

**ARTICLE V.**
TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     Assumption and Rejection of Executory Contracts and Unexpired Leases:  Except as otherwise provided in the Plan, the Debtors' executory contracts or unexpired leases not assumed or rejected pursuant to a Bankruptcy Court order prior to the Effective Date shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, except for those executory contracts or unexpired leases: (1) listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" attached to the Disclosure Statement as Exhibit N; (2) that are Intercompany Contracts, in which case such Intercompany Contracts are deemed automatically assumed by the applicable Debtor as of the Effective Date, unless such Intercompany Contract previously was rejected by the Debtors pursuant to a Bankruptcy Court order, is the subject of a motion to reject pending on the Effective Date; (3) that are the subject of a motion to assume or reject pending on the Effective Date (in

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  which case such assumption or rejection and the effective date thereof shall remain subject
2  to a Bankruptcy Court order); (4) that are subject to a motion to reject with a requested
3  effective date of rejection after the Effective Date; or (5) that are otherwise expressly
   assumed or rejected pursuant to the Plan.  Entry of the Confirmation Order shall constitute a
4  Bankruptcy Court order approving the assumptions or rejections of such executory contracts
   or unexpired leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the
5  Bankruptcy Code.   Unless otherwise indicated, all assumptions or rejections of such
   executory contracts and unexpired leases in the Plan are effective as of the Effective Date.
6  Each such executory contract and unexpired lease assumed pursuant to the Plan or by
   Bankruptcy Court order but not assigned to a third party prior to the Effective Date shall
7  revest in and be fully enforceable by the applicable contracting Reorganized Debtor in
   accordance with its terms, except as such terms may have been modified by such order.
8  Notwithstanding anything to the contrary in the Plan, the Plan Proponent and the
9  Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement
   the schedules of executory contracts or unexpired leases identified in Exhibit N to the
10 Disclosure Statement at any time through and including fifteen days after the Effective Date.
   All executory contracts and unexpired leases associated solely with the Arizona Assets shall
11 be assumed and assigned to the Rhodes Entities (or their designee) to the extent set forth on
12 the schedule of Assumed Executory Contracts and Unexpired Leases attached to the
   Disclosure Statement as Exhibit N, at no cost to the Debtors or the Reorganized Debtors and
13 all Cure costs associated with such scheduled Arizona contracts or leases shall be borne by
14 the Rhodes Entities.

15  B.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases:  With
    respect to each of the Debtors' executory contracts or unexpired leases listed on the schedule
16  of "Assumed Executory Contracts and Unexpired Leases," the Plan Proponent shall have
    designated a proposed Cure, and the assumption of such executory contract or unexpired
17  lease may be conditioned upon the disposition of all issues with respect to Cure.  Any
18  provisions or terms of the Debtors' executory contracts or unexpired leases to be assumed
    pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by
19  Cure, or by an agreed-upon waiver of Cure.  Except with respect to executory contracts and
    unexpired leases in which the Plan Proponent or the Debtors, with the consent of the First
20  Lien Steering Committee, and the applicable counterparties have stipulated in writing to
21  payment of Cure, all requests for payment of Cure that differ from the amounts proposed by
    the Debtors must be Filed with the Court on or before the Cure Bar Date.  Any request for
22  payment of Cure that is not timely Filed shall be disallowed automatically and forever
    barred from assertion and shall not be enforceable against any Reorganized Debtor, without
23  the need for any objection by the Reorganized Debtors or further notice to or action, order,
24  or approval of the Bankruptcy Court, and any Claim for Cure shall be deemed fully satisfied,
    released, and discharged upon payment by the Debtors of the amounts listed on the proposed
25  Cure schedule, notwithstanding anything included in the Schedules or in any Proof of Claim
    to the contrary; provided, however, that nothing shall prevent the Reorganized Debtors from
26  paying any Cure despite the failure of the relevant counterparty to File such request for
27  payment of such Cure.  The Reorganized Debtors also may settle any Cure without further
    notice to or action, order, or approval of the Bankruptcy Court.
28

36

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1    If the Debtors or Reorganized Debtors, as applicable, or First Lien Steering
2 Committee object to any Cure or any other matter related to assumption, the Bankruptcy
Court shall determine the Allowed amount of such Cure and any related issues. If there is a
3 dispute regarding such Cure, the ability of the Reorganized Debtors or any assignee to
provide "adequate assurance of future performance" within the meaning of section 365 of
4 the Bankruptcy Code, or any other matter pertaining to assumption, then Cure shall occur as
5 soon as reasonably practicable after entry of a Final Order resolving such dispute, approving
such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors
6 with the consent of the First Lien Steering Committee, or the Reorganized Debtors and the
counterparty to the executory contract or unexpired lease. Any counterparty to an executory
7 contract and unexpired lease that fails to object timely to the proposed assumption of any
8 executory contract or unexpired lease will be deemed to have consented to such assumption.
The Debtors, with the consent of the First Lien Steering Committee, or the Reorganized
9 Debtors, as applicable, reserve the right either to reject or nullify the assumption of any
10 executory contract or unexpired lease no later than thirty days after a Final Order
determining the Cure or any request for adequate assurance of future performance required
11 to assume such executory contract or unexpired lease.

12    Assumption of any executory contract or unexpired lease pursuant to the Plan or
otherwise shall result in the full release and satisfaction of any Claims or defaults, whether
13 monetary or nonmonetary, including defaults of provisions restricting the change in control
or ownership interest composition or other bankruptcy-related defaults, arising under any
14 assumed executory contract or unexpired lease at any time prior to the effective date of
15 assumption. Any Proofs of Claim Filed with respect to an executory contract or unexpired
lease that has been assumed shall be deemed disallowed and expunged, without further
16 notice to or action, order, or approval of the Bankruptcy Court.

17    All Cure costs associated with Executory Contracts related to the Arizona Assets
18 shall be borne by the Rhodes Entities.

19 C.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired
Leases: Rejection or repudiation of any executory contract or unexpired lease pursuant to
20 the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to
the Debtors under such contracts or leases.    In particular, notwithstanding any
21 nonbankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not
22 waive any right to receive, or any continuing obligation of a counterparty to provide,
insurance coverage, utilitiy services, warranties, indemnity, guarantee of workmanship, or
23 continued maintenance obligations on goods or services previously purchased by the
contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected
24 or repudiated executory contracts. The Reorganized Debtors expressly reserve and do not
25 waive the right to receive coverage under any past insurance policy to extent that coverage
has not expired under the terms of the insurance policy, regardless of whether such
26 insurance policy is listed as an assumed contract.    Similarly, the Reorganized Debtors
expressly reserve and do not waive the right to receive services under any contract with a
27 utility provider, regardless of whether such agreement with a utility provider is listed as an
28 assumed contract.

D.    Claims Based on Rejection or Repudiation of Executory Contracts and Unexpired Leases:  Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection or repudiation of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be Filed with the Claims and Solicitation Agent no later than the Rejection Damages Claim Deadline.  Any Proofs of Claim arising from the rejection or repudiation of the Debtors' executory contracts or unexpired leases that are not timely Filed by the Rejection Damages Claim Deadline shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Reorganized Debtor without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection or repudiation of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection or repudiation of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims.

E.    Intercompany Contracts, Contracts, and Leases Entered Into After the Petition Date: Intercompany Contracts, contracts, and leases entered into after the Petition Date by any Debtor, and any executory contracts and unexpired leases assumed by any Debtor, may be performed by the applicable Reorganized Debtor in the ordinary course of business.

F.    Home Sales:  All pending home sale contracts shall be assumed by the applicable Reorganized Debtor.

G.    Warranties:  All eligible prepetition home sale contracts with one-year warranty obligations shall be performed in the ordinary course of business of the Reorganized Debtors.  Upon the Effective Date, any remaining warranty obligations that are to be assumed by the Reorganized Debtors, which shall only be assumed with the consent of the First Lien Steering Committee, shall be transferred to the Reorganized Debtors.  Warranty obligations that are not expressly assumed shall be rejected and treated as General Unsecured Claims.

H.    Modification of Executory Contracts and Unexpired Leases Containing Equity Ownership Restrictions:  All executory contracts and unexpired leases to be assumed, or conditionally assumed, under the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code shall be deemed so assumed, or so conditionally assumed, without giving effect to any provisions contained in such executory contracts or unexpired leases restricting the change in control or ownership interest composition of any or all of the Debtors, and upon the Effective Date (1) any such restrictions shall be deemed of no further force and effect and (2) any breaches that may arise thereunder as a result of Confirmation or Consummation shall be deemed waived by the applicable non-Debtor counterparty.

I.    Modifications, Amendments, Supplements, Restatements, or Other Agreements: Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts and unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

38

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  interests, unless any of the foregoing agreements has been previously rejected or repudiated
2  or is rejected or repudiated under the Plan.

3      Modifications, amendments, supplements, and restatements to prepetition executory
4  contracts and unexpired leases that have been executed by the Debtors during the Chapter 11
   Cases shall not be deemed to alter the prepetition nature of the executory contract or
5  unexpired lease, or the validity, priority, or amount of any Claims that may arise in
   connection therewith.

6  J.      Reservation of Rights:  Neither the exclusion nor inclusion of any contract or lease
7  on Exhibit N to the Disclosure Statement, nor anything contained in the Plan, shall
   constitute an admission by the Debtors or the First Lien Steering Committee that any such
8  contract or lease is in fact an executory contract or unexpired lease or that any Reorganized
9  Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or
   lease is or was executory or unexpired at the time of assumption or rejection, the Debtors,
10 with the consent of the First Lien Steering Committee, or Reorganized Debtors shall have
11 thirty days following entry of a Final Order resolving such dispute to alter their treatment of
   such contract or lease.

12 K.      Nonoccurrence of Effective Date:  In the event that the Effective Date does not
13 occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request
14 to extend the deadline for assuming or rejecting unexpired leases pursuant to section
   365(d)(4) of the Bankruptcy Code.

15                              **ARTICLE VI.**
16                 PROCEDURES FOR RESOLVING DISPUTED CLAIMS

17 A.      Allowance of Claims:  After the Effective Date, each Reorganized Debtor shall
   have and retain any and all rights and defenses such Debtor had with respect to any Claim
18 immediately prior to the Effective Date, including the Causes of Action referenced in Article
19 IV.

20 B.      Claims Administration Responsibilities:  Except as otherwise specifically provided
   in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority:
21 (1) to File, withdraw, or litigate to judgment, objections to Claims; (2) to settle or
22 compromise any Disputed Claim without any further notice to or action, order, or approval
   by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any
23 such settlements or compromises without any further notice to or action, order, or approval
   by the Bankruptcy Court.
24
25 C.      Estimation of Claims:  Before or after the Effective Date, the First Lien Steering
   Committee or the Reorganized Debtors, as applicable, may (but are not required to) at any
26 time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or
   unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of
27 whether any party previously has objected to such Claim or whether the Bankruptcy Court
   has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to
28 estimate any such Claim, including during the litigation of any objection to any Claim or

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  during the appeal relating to such objection. Notwithstanding any provision otherwise in the
2  Plan, a Claim that has been expunged from the Claims Register, but that either is subject to
   appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero
3  dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy
   Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute
4  a maximum limitation on such Claim for all purposes under the Plan (including for purposes
   of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental
5  proceedings to object to any ultimate distribution on such Claim. Notwithstanding section
6  502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been
   estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek
7  reconsideration of such estimation unless such Holder has Filed a motion requesting the
   right to seek such reconsideration on or before twenty days after the date on which such
8  Claim is estimated.

9
10  D.      Adjustment to Claims Without Objection:  Any Claim that has been paid or
    satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged
11  on the Claims Register by the Reorganized Debtors without a Claims objection having to be
    Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.
12  Beginning on the end of the first full calendar quarter that is at least ninety days after the
    Effective Date, the Reorganized Debtors shall publish and File every calendar quarter a list
13  of all Claims that have been paid, satisfied, amended, or superseded during such prior
14  calendar quarter.

15  E.      Time to File Objections to Claims:  Any objections to Claims shall be Filed on or
    before the later of (1) the applicable Claims Objection Deadline and (2) such date as may be
16  fixed by the Bankruptcy Court, after notice and a hearing, whether fixed before or after the
17  date that is one year after the Effective Date. Notwithstanding the foregoing, the First Lien
    Steering Committee, any First Lien Lender and/or the Reorganized Debtors shall have until
18  sixty days following the Effective Date to object to the Proofs of Claim filed by the Rhodes
    Entities in the Debtors' chapter 11 cases (provided, that, such objections shall not seek to
19  subordinate the Rhodes Entities Claims, if Allowed).

20  F.      Disallowance of Claims:  Except as set forth herein, any Claims held by an Entity
    from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy
21  Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545,
22  547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to
    section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any
23  distributions on account of such Claims until such time as such Causes of Action against that
    Entity have been settled or a Bankruptcy Court order with respect thereto has been entered
24  and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the
25  Reorganized Debtors or the Litigation Trust, as applicable.

26  EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED
    AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS
27  OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION,
    ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH
28  CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  CLAIMS, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE
2  CLAIM HAS BEEN DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER.

3  G.    Offer of Judgment:  The Reorganized Debtors shall be authorized to serve upon a
   Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and,
4  pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall
   apply to such offer of judgment.  To the extent the Holder of a Claim must pay the costs
5  incurred by the Reorganized Debtors after the making of such offer, the Reorganized
   Debtors shall be entitled to setoff such amounts against the amount of any distribution to be
6  paid to such Holder without any further notice to or action, order, or approval of the
7  Bankruptcy Court.

8  H.    Amendments to Claims:  On or after the Effective Date, except as expressly
   authorized in the Plan, a Claim may not be Filed or amended without the prior authorization
9  of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim
10 Filed shall be deemed disallowed in full and expunged without any further action.

11 **ARTICLE VII.**
   PROVISIONS GOVERNING DISTRIBUTIONS
12

13 A.    Total Enterprise Value for Purposes of Distributions Under the Plan:  Distributions
   of Newco Equity Interests to Holders of Allowed First Lien Lender Secured Claims shall be
14 based upon, among other things, the Newco Total Enterprise Value of $99.6 million.  For
   purposes of distribution, the Newco Equity Interests shall be deemed to have the value
15 assigned to them based upon, among other things, the Newco Total Enterprise Value,
16 regardless of the date of distribution.

17 B.    Distributions on Account of Claims Allowed as of the Effective Date:  Except as
   otherwise provided in the Plan, a Final Order, or as agreed to by the First Lien Steering
18 Committee, initial distributions under the Plan on account of Claims Allowed on or before
   the Effective Date shall be made on the Distribution Date; provided, however, that (1)
19 Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the
20 ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to
   the Effective Date shall be paid or performed in the ordinary course of business in
21 accordance with the terms and conditions of any controlling agreements, course of dealing,
   course of business, or industry practice and (2) Allowed Priority Tax Claims, unless
22 otherwise agreed, shall be paid in full in Cash on the Distribution Date or over a five-year
23 period as provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest
   provided by applicable non-bankruptcy law.
24

25 C.    Distributions on Account of Claims Allowed After the Effective Date:

26 1.    Payments and Distributions on Disputed Claims:  Except as otherwise
   provided in the Plan, a Final Order, or as agreed to by the First Lien Steering Committee
27 prior to the Effective Date or the Reorganized Debtors after the Effective Date, distributions
   under the Plan on account of Disputed Claims that become Allowed after the Effective Date
28 shall be made on the Periodic Distribution Date that is at least thirty days after the Disputed

41

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  Claim becomes an Allowed Claim; provided, however, that (a) Disputed Administrative
2  Claims with respect to liabilities incurred by the Debtors in the ordinary course of business
during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that
3  become Allowed after the Effective Date shall be paid or performed in the ordinary course
of business in accordance with the terms and conditions of any controlling agreements,
4  course of dealing, course of business, or industry practice and (b) Disputed Priority Tax
Claims that become Allowed Priority Tax Claims after the Effective Date, unless otherwise
5  agreed, shall be paid in full in Cash on the Periodic Distribution Date that is at least thirty
6  days after the Disputed Claim becomes an Allowed Claim or over a five-year period as
provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by
7  applicable non-bankruptcy law.

8      2.    Special Rules for Distributions to Holders of Disputed Claims:
9  Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the
relevant parties: (a) no partial payments and no partial distributions shall be made with
10  respect to a Disputed Claim until all such disputes in connection with such Disputed Claim
have been resolved by settlement or Final Order and (b) any Entity that holds both an
11  Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed
12  Claim unless and until all objections to the Disputed Claim have been resolved by settlement
or Final Order and the Claim has been Allowed. In the event that there are Disputed Claims
13  requiring adjudication and resolution, the Reorganized Debtors shall establish appropriate
reserves for potential payment of such Claims or Interests pursuant to Article VII.C.3.
14  Subject to Article IX.A.5, all distributions made pursuant to the Plan on account of an
15  Allowed Claim shall be made together with any dividends, payments, or other distributions
made on account of, as well as any obligations arising from, the distributed property as if
16  such Allowed Claim had been an Allowed Claim on the dates distributions were previously
made to Holders of Allowed Claims included in the applicable Class.
17

18      3.    Reserve of Litigation Trust Interests: On the Effective Date, the Reorganized
Debtors shall maintain in reserve Litigation Trust Interests for distribution to Holders of
19  Disputed Claims that become Allowed after the Effective Date. As Disputed Claims are
Allowed, the Distribution Agent shall distribute, in accordance with the terms of the Plan,
20  Litigation Trust Interests to Holders of Allowed Claims, and the Disputed Claims Reserve
21  shall be adjusted. The Distribution Agent shall withhold in the Disputed Claims Reserve
any payments or other distributions made on account of, as well as any obligations arising
22  from, the Litigation Trust Interests initially withheld in the Disputed Claims Reserve, to the
extent that such Litigation Trust Interests continue to be withheld in the Disputed Claims
23  Reserve at the time such distributions are made or such obligations arise, and such payments
24  or other distributions shall be held for the benefit of Holders of Disputed Claims whose
Claims, if Allowed, are entitled to distributions under the Plan. The Reorganized Debtors
25  may (but are not required to) request estimation for any Disputed Claim that is contingent or
unliquidated.
26
      Notwithstanding anything in the applicable Holder's Proof of Claim or otherwise to
27  the contrary, the Holder of a Claim shall not be entitled to receive or recover a distribution
28  under the Plan on account of a Claim in excess of the lesser of the amount: (a) stated in the
Holder's Proof of Claim, if any, as of the Distribution Record Date, plus interest thereon to

the extent provided for by the Plan; (b) if the Claim is denominated as contingent or unliquidated as of the Distribution Record Date, the amount that the Reorganized Debtors elect to withhold on account of such Claim in the Disputed Claims Reserve, or such other amount as may be estimated by the Bankruptcy Court prior to the Confirmation Hearing; or (c) if a Claim has been estimated, the amount deposited in the Disputed Claim Reserve to satisfy such Claim after such estimation.

D.     Delivery of Distributions

1.     Record Date for Distributions:  On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, if a Claim is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.     Distribution Agent:  The Distribution Agent shall make all distributions required under the Plan, except that distributions to Holders of Allowed Claims governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement.

3.     Delivery of Distributions in General:  Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Distribution Agent or a Servicer, as appropriate: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related Proof of Claim; (d) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Distribution Agent has not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf.  Except as otherwise provided in the Plan, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors, the First Lien Steering Committee, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

4.     Accrual of Distributions and Other Rights:  For purposes of determining the accrual of distributions or other rights after the Effective Date, the Newco Equity Interests and the Litigation Trust Interests, as applicable, shall be deemed distributed as of the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1   Effective Date regardless of the date on which they are actually issued, dated, authenticated,
2   or distributed even though the Reorganized Debtors shall not make any such distributions or
    distribute such other rights until distributions of the Newco Equity Interests and the
3   Litigation Trust Interests, as applicable, actually take place.

4       5.    Allocation Between Principal and Accrued Interest: Except as otherwise
    provided in the Plan, distributions on account of Allowed Claims shall be treated as
5   allocated first to principal and thereafter to any interest.

6       6.    Compliance Matters: In connection with the Plan, to the extent applicable,
7   the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding
    and reporting requirements imposed on them by any Governmental Unit, and all
8   distributions pursuant to the Plan shall be subject to such withholding and reporting
    requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized
9   Debtors and the Distribution Agent shall be authorized to take all actions necessary or
10  appropriate to comply with such withholding and reporting requirements, including
    liquidating a portion of the distribution to be made under the Plan to generate sufficient
11  funds to pay applicable withholding taxes, withholding distributions pending receipt of
    information necessary to facilitate such distributions, or establishing any other mechanisms
12  they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to
13  allocate all distributions made under the Plan in compliance with all applicable wage
    garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.
14
15      7.    Fractional, De Minimis, Undeliverable, and Unclaimed Distributions:

16          a.    Fractional Distributions: Notwithstanding any other provision of the
    Plan to the contrary, payments of fractions of shares of Newco Equity Interests or
17  fractions of Litigation Trust Interests shall not be made. The Distribution Agent
18  shall not be required to make distributions or payments of fractions of Newco Equity
    Interests, Litigation Trust Interests or dollars. Whenever any payment of Cash of a
19  fraction of a dollar or payment of a fraction of Newco Equity Interests or fraction of
    Litigation Trust Interests pursuant to the Plan would otherwise be required, the actual
20  payment shall reflect a rounding of such fraction to the nearest whole dollar (up or
    down), with half dollars, half Newco Equity Interests or half Litigation Trust
21  Interests or less being rounded down.

22          b.    Undeliverable Distributions: If any distribution to a Holder of an
23  Allowed Claim is returned to a Distribution Agent as undeliverable, no further
    distributions shall be made to such Holder unless and until such Distribution Agent is
24  notified in writing of such Holder's then-current address, at which time all currently
    due missed distributions shall be made to such Holder on the next Periodic
25  Distribution Date. Undeliverable distributions shall remain in the possession of the
26  Reorganized Debtors until such time as a distribution becomes deliverable, or such
    distribution reverts to the Reorganized Debtors pursuant to Article VII.D.7.c, and
27  shall not be supplemented with any interest, dividends, or other accruals of any kind.
28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

44

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

c.    Reversion:  Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Reorganized Debtors and, to the extent such Unclaimed Distribution is a distribution of Newco Equity Interests, such Newco Equity Interests shall be deemed cancelled.  Upon such revesting, the Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.  The provisions of the Plan regarding undeliverable distributions and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Debtors, made pursuant to any indenture or Certificate (but only with respect to the initial distribution by the Servicer to Holders that are entitled to be recognized under the relevant indenture or Certificate and not with respect to Entities to whom those recognized Holders distribute), notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property law.

**8.**    Manner of Payment Pursuant to the Plan:  Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Reorganized Debtors by check or by wire transfer.  Checks issued by the Distribution Agent or applicable Servicer on account of Allowed Claims shall be null and void if not presented within 120 days after issuance, but may be requested to be reissued until the distribution revests in the Reorganized Debtors pursuant to Article VII.D.7.c.

**9.**    Surrender of Cancelled Instruments or Securities:  On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a Certificate shall surrender such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer).  Such Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.  No distribution of property pursuant to the Plan shall be made to or on behalf of any such Holder that is a Holder of a Claim unless and until such Certificate is received by the Distribution Agent or the Servicer or the unavailability of such Certificate is reasonably established to the satisfaction of the Distribution Agent or the Servicer.  Any Holder of a Claim who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity acceptable to the Distribution Agent or the Servicer prior to the first anniversary of the Effective Date, shall have its Claim discharged with no further action, be forever barred from asserting any such Claim against the relevant Reorganized Debtor or its property, be deemed to have forfeited all rights and Claims with respect to such Certificate, and not participate in any distribution under the Plan;  furthermore, all property with respect to such forfeited distributions, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors, notwithstanding any federal or state escheat, abandoned, or unclaimed property law to the contrary.

E.    Claims Paid or Payable by Third Parties.

45

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1.    **Claims Paid by Third Parties**: The Claims and Solicitation Agent shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. Further, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.    **Claims Payable by Insurance**: Holders of Insured Claims that are covered by the Debtors' insurance policies shall seek payment of such Claims from applicable insurance policies, provided that the Reorganized Debtors shall have no obligation to pay any amounts in respect of pre-petition deductibles or self insured retention amounts. Allowed Insured Claim amounts in excess of available insurance shall be treated as General Unsecured Claims. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Claims and Solicitation Agent without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    **Applicability of Insurance Policies**: Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Except for Claims and Causes of Action released under the Plan to the Released Parties and Exculpated Parties, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

F.    **Payment of $1.5 Million to First Lien Lenders**: The $1,500,000 in Cash payable to the Holders of First Lien Lender Secured Claims from the proceeds of their Collateral pursuant to Article III.B.1. shall be paid as follows: (i) $400,000 on the Effective Date and (ii) the remaining up to $1,100,000 in five quarterly installments of $220,000 beginning on the first day of the fourth month following the Effective Date; provided, that the Reorganized Debtors shall have the right to defer up to two quarterly payments, with such deferred amount(s) to be paid on the next quarterly payment date (and the amount scheduled