PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

6.7    **Restriction on Fundamental Changes**.

Neither any of the Borrowers nor any of their Subsidiaries shall, directly or indirectly, (a) enter into any merger, consolidation, reorganization or recapitalization, or liquidate, wind up or dissolve, or cause or consent to any other Borrower or Subsidiary to enter into any merger, consolidation, reorganization or recapitalization, or to liquidate, wind up or dissolve, or (b) sell all or substantially all of the assets of the Borrowers and their Subsidiaries, on a consolidated basis, in a single transaction or series of related transactions; provided that, notwithstanding the foregoing, (i) any Subsidiary may sell all or substantially all of its assets to a Subsidiary Guarantor or any Borrower, (ii) any Subsidiary Guarantor may merge or consolidate with and into a Borrower; provided such Borrower shall be the continuing or surviving Person, (iii) any Subsidiary Guarantor may merge or consolidate with and into or another Subsidiary Guarantor; provided that a Subsidiary Guarantor that is wholly-owned (directly or indirectly) by the Borrowers shall be the continuing or surviving Person, (iv) any Borrower may merge or consolidate with and into another Borrower, (v) any Subsidiary Guarantor may be liquidated, wound up or dissolved if the continued existence of such Subsidiary Guarantor is not necessary to the continued conduct of the business of the Borrowers and their Subsidiaries as evidenced by an Officer's Certificate delivered to the Administrative Agent, and the assets of such Subsidiary Guarantor are distributed to the Loan Parties, and (vi) a Borrower or a Subsidiary may consummate any merger if such merger is in furtherance of an Investment permitted by subsection 6.3(vi) and, if such transaction involves a Borrower, such Borrower shall be the continuing or surviving Person.

6.8    **Sale or Discount of Receivables**.

The Borrowers shall not, and shall not permit any of their Subsidiaries to, directly or indirectly, sell with recourse, or discount or otherwise sell for less than the face value thereof, any of its notes or accounts receivable.

6.9    **Asset Sales**.

The Borrowers shall not, and shall not permit any of their Subsidiaries to, engage in any Asset Sales, except as follows:

(i)    With respect to Real Property Collateral, a Permitted Collateral Asset Sale, provided that each of the following conditions has been satisfied:

(a)    the Real Property Collateral subject to such Asset Sale, and the remaining Real Property Collateral after giving effect to such Asset Sale, shall constitute a legal subdivision in accordance with all Applicable Laws and Governmental Authorizations;

(b)    to the extent required by the Collateral Agent, the Collateral Agent shall have received such title endorsements, date downs or other evidence reasonably satisfactory to the Collateral Agent that (i) the priority of the Liens

evidenced by the Mortgages with respect to the remaining Real Property Collateral after giving effect to such Asset Sale shall be maintained following such Asset Sale and (ii) the remaining Real Property Collateral is not subject to any Liens other than Liens permitted by subsection 6.2;

(c)    the consideration received from such Asset Sale shall be paid solely in Cash, Restricted Seller Carry-Back Notes (provided that not more than $7,000,000 in aggregate principal amount of Restricted Seller Carry-Back Notes may be outstanding at any time);

(d)    the Borrowers shall have paid all reasonable out-of-pocket costs and expenses incurred by the Collateral Agent and all reasonable fees and expenses paid to third party consultants (including reasonable attorneys' fees and expenses) by the Collateral Agent in connection with the release of the applicable portion of the Real Property Collateral from the Lien of the Mortgages, to the extent invoices therefor have been presented; and

(e)    the Borrowers shall have obtained all applicable consents required by the LLC Agreement relating to such Permitted Collateral Asset Sale.

(ii)    With respect to Real Property Collateral, a Major Collateral Asset Sale, provided that each of the following conditions has been satisfied (as certified by a Responsible Officer):

(a)    no Default or Event of Default shall have occurred and be continuing (other than a Default or Event of Default that will be cured through the consummation of the proposed Asset Sale) or would result therefrom;

(b)    not less than thirty (30) days' (or such shorter period as is acceptable to the Collateral Agent) prior written notice of the closing of such sale has been provided to the Collateral Agent, together with a true, correct and complete copy of the relevant Qualified Sales Agreement;

(c)    the Real Property Collateral subject to such Asset Sale, and the remaining Real Property Collateral after giving effect to such Asset Sale, shall constitute a legal subdivision in accordance with all Applicable Laws and Governmental Authorizations;

(d)    to the extent required by the Collateral Agent, the Collateral Agent shall have received such title endorsements, date downs or other evidence reasonably satisfactory to the Collateral Agent that (i) the priority of the liens evidenced by the Mortgages with respect to the remaining Real Property Collateral after giving effect to such Asset Sale shall be maintained following such Asset Sale, and (ii) the remaining Real Property Collateral is not subject to any Liens other than Liens permitted by subsection 6.2;

(e)    the Borrowers shall have paid all reasonable out-of-pocket costs and expenses incurred by the Collateral Agent and all reasonable fees and expenses paid to third party consultants (including reasonable attorneys' fees and expenses) by the Collateral Agent in connection with the release of the applicable portion of the Real Property Collateral from the Lien of the Mortgages, to the extent invoices therefor have been presented;

(f)    the consideration received from such Asset Sale shall be paid solely in Cash, Restricted Seller Carry-Back Notes (provided that not more than $7,000,000 in aggregate principal amount of Restricted Seller Carry-Back Notes may be outstanding at any time);

(g)    the Collateral Agent shall have received an Acceptable Appraisal demonstrating the Appraised Value of the remaining Real Property Collateral assuming such Major Collateral Asset Sale is consummated, together with calculations based on the Appraised Value contained in such Acceptable Appraisal, demonstrating compliance, on a pro forma basis to give effect to the Major Collateral Asset Sale, with the financial covenants set forth in subsection 6.6; provided that the Requisite Lenders may instruct the Collateral Agent to waive the requirements of this subsection 6.9(ii)(g); and

(h)    the Borrowers shall have obtained all applicable consents required by the LLC Agreement relating to such Major Collateral Asset Sale.

(iii)    With respect to Real Property Collateral, a Required Dedication, provided that each of the following conditions has been satisfied (as certified by a Responsible Officer):

(a)    no Default or Event of Default shall have occurred and be continuing (other than a Default or an Event of Default that will be cured through the consummation of the proposed Asset Sale) or would result therefrom;

(b)    not less than thirty (30) days' (or such shorter period as is acceptable to the Collateral Agent) prior written notice of the closing of such Required Dedication has been provided to the Collateral Agent, together with a true, correct and complete copy of the documentation proposed to consummate the Required Dedication;

(c)    the Real Property Collateral subject to such Asset Sale, and the remaining Real Property Collateral after giving effect to such Asset Sale, shall constitute a legal subdivision in accordance with all Applicable Laws and Governmental Authorizations;

(d)    to the extent required by the Collateral Agent, the Collateral Agent shall have received a title endorsements or other evidence reasonably satisfactory

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

to the Collateral Agent that the priority of the Liens evidenced by the Mortgages with respect to the remaining Real Property Collateral after giving effect to such Required Dedication shall be maintained following such Required Dedication; and

(e)    the Borrowers shall have paid all reasonable out-of-pocket costs and expenses incurred by the Collateral Agent and all reasonable fees and expenses paid to third party consultants (including reasonable attorneys' fees and expenses) by the Collateral Agent in connection with the release of the applicable portion of the Real Property Collateral from the Lien of the Mortgages, to the extent invoices therefor have been presented.

## 6.10    Transactions with Shareholders and Affiliates.

The Borrowers shall not, and shall not permit any of their Subsidiaries to, directly or indirectly, enter into or permit to exist any transaction (including, without limitation, the purchase, sale, lease or exchange of any property or the rendering of any service or the payment of any management fees, consulting fees or the making of other disbursements) with any holder of 10% more of any class of equity Securities of the Borrowers or their Subsidiaries or with any Affiliate of the Borrowers or of any such Subsidiaries or holder (each, an "**Affiliate Transaction**"), on terms that are less favorable to the Borrowers or the Subsidiaries, as the case may be, than those that might be obtained reasonably at the time from Persons who are not such a holder or Affiliate; provided that the foregoing restriction shall not apply to (i) transactions between or among the Borrowers and any wholly-owned Subsidiary Guarantor or between or among any wholly-owned Subsidiary Guarantors, (ii) reasonable and customary fees paid to, and customary indemnification of, members of the boards of directors (or other governing bodies) of the Borrowers and their Subsidiaries, (iii) Restricted Payments permitted under this Agreement, (iv) transactions effected pursuant to this Agreement, and (v) transactions described on Schedule 6.10; and provided, further, that (a) with respect to any Affiliate Transaction or series of related Affiliate Transactions for aggregate consideration in excess of $5,000,000 solely involving the purchase and/or sale of interests in real property or the Capital Stock of a Person whose principal assets are comprised of interests in real property, prior to the consummation of such Affiliate Transaction or series of related Affiliate Transactions an appraisal of the interests in real property to be acquired (which shall be an "as is" appraisal) or other consideration to be provided in such Affiliate Transaction shall be provided to the Administrative Agent, together with an Officer's Certificate from the Borrowers certifying that the terms of such Affiliate Transaction are no less favorable to the Borrowers and their Subsidiaries than those that might be obtained reasonably at that time from Persons that are not holders of 10% or more of any class of equity securities of the Borrowers or their Subsidiaries or an Affiliate of the Borrowers or of any such Subsidiaries or holder and (b) with respect to any Affiliate Transaction or series of related Affiliate Transactions for aggregate consideration in excess of $5,000,000 (other than any Affiliate Transaction described in the preceding clause (a) of this proviso), prior to the consummation of such Affiliate Transaction or series of related Affiliate Transactions the Borrowers shall provide to the Administrative Agent a fairness opinion in form and substance reasonably satisfactory to the

**PRELIMINARY DRAFT**
**SUBJECT TO MODIFICATION**
**FINAL VERSION MUST BE ACCEPTABLE**
**TO FIRST LIEN STEERING COMMITTEE**

Administrative Agent that provides, and an Officer's Certificate from the Borrowers certifying, that the terms of such Affiliate Transaction are no less favorable to the Borrowers and their Subsidiaries than those that might be obtained reasonably at that time from Persons that are not holders of 10% or more of any class of equity securities of the Borrowers or their Subsidiaries or an Affiliate of the Borrowers or of any such Subsidiaries or holder.

### 6.11    Conduct of Business.

The Borrowers shall not, and shall not permit any of their Subsidiaries to, engage in any business other than (i) the businesses engaged in by the Borrowers and their Subsidiaries on the Effective Date and (ii) such other lines of business as may be reasonably related thereto.

### 6.12    [Intentionally Omitted].

### 6.13    Amendments or Waivers of Certain Agreements.

None of the Borrowers nor their Subsidiaries shall terminate or agree to any Modification to, or waive any of its rights under, any (i) Material Contract or (ii) Organizational Certificates or other Organizational Documents of any of the Borrowers or their Subsidiaries, if such termination, Modification or waiver would reasonably be expected to be materially adverse to the Borrowers and their Subsidiaries, taken as a whole, or any Agent, Lender or other Secured Party.

### 6.14    Fiscal Year.

Neither any Borrower nor any Subsidiary shall change its Fiscal Year-end from December 31.

### 6.15    Hedge Agreements.

Neither any of the Borrowers nor any Subsidiary shall enter into any Hedge Agreement, except Hedge Agreements entered into in order to effectively cap, collar or exchange interest rates (from floating to fixed rates) with respect to any interest-bearing liability or investment of any Borrower or any Subsidiary.

### 6.16    [Intentionally Omitted].

### 6.17    Limitation on Unentitled Properties.

Neither any of the Borrowers nor any Subsidiary shall expend more than $5,000,000 in any Fiscal Year (on an aggregate combined basis for the Borrowers and their Subsidiaries collectively) toward the purchase of Real Property Assets which (i) require any Entitlements (other than customary mapping and subdivision approvals to be obtained in the Ordinary Course of Business pursuant to existing zoning or Development Agreements) for the development and sale of residential single family housing or multi-family housing thereon which have not yet been obtained at the time of purchase by or for the benefit of any Borrower or any of their Subsidiaries

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

and (ii) are located further than five miles from any real property development that has all Major Entitlements and that has an existing use (such existing use to be in accordance with Applicable Law and as permitted by all necessary Governmental Authorizations) similar to the intended use of the Real Property Assets proposed to be purchased.

**6.18    Limitation on Purchase of Real Property Assets**.

Neither any of the Borrowers nor any Subsidiary shall purchase any Real Property Asset that is not located in Arizona, California, Colorado, Idaho, Nevada, New Mexico or Utah.

## SECTION 7.
## EVENTS OF DEFAULT

IF any of the following conditions or events ("**Events of Default**") shall occur:

**7.1    Payment of Obligations**.

The Borrowers shall fail to pay any of the Obligations on the due date thereof (whether due at stated maturity, on demand, upon acceleration or otherwise) and, in the case of the failure to pay accrued interest (subject to the permitted capitalization of interest pursuant to subsection 2.2C), such amount remains unpaid for five (5) Business Days thereafter; or

**7.2    Misrepresentations**.

Any representation, warranty or other written statement to any Agent or any Lender by or on behalf of any Loan Party, whether made in or furnished in compliance with or in reference to any of the Loan Documents, proves to have been false or misleading in any material respect when made or furnished; or

**7.3    Breach of Certain Covenants**.

The Borrowers shall fail or neglect to perform, keep or observe any covenant contained in subsections 5.1, 5.3(xi), 5.4 (but solely to the extent of a Borrower's continued existence, subject to subsection 6.7), 5.15, 5.18 or Section 6 hereof; or

**7.4    Breach of Other Covenants**.

A Borrower shall fail or neglect to perform, keep or observe any covenant contained in this Agreement not otherwise addressed in this Section 7 and the breach of such other covenant is not cured to the Administrative Agent's satisfaction within thirty (30) days after the sooner to occur of any Responsible Officer's receipt of notice of such breach from the Administrative Agent or the date on which such failure or neglect first becomes actually known to any Responsible Officer; provided that such notice and opportunity to cure shall not apply in the case

of any failure to perform, keep or observe any covenant which is not capable of being cured at all or within such 30-day period; or

### 7.5    Default Under Loan Documents.

Any Borrower or any other Loan Party shall default in the due and punctual observance or performance (taking into account any applicable grace periods) of any liability or obligation to be observed or performed by it under any of the Loan Documents (except as provided in subsections 7.1,7.2, 7.3 or 7.4); and the breach of such other covenant is not cured to the Administrative Agent's satisfaction within thirty (30) days after the sooner to occur of any Responsible Officer's receipt of notice of such breach from the Administrative Agent or the date on which such failure or neglect first becomes actually known to any Responsible Officer; provided that such notice and opportunity to cure shall not apply in the case of any failure to perform, keep or observe any covenant which is not capable of being cured at all or within such 30-day period; or

### 7.6    Other Defaults.

A.    [Intentionally Omitted]; or

B.    Any Borrower or any other Loan Party shall (i) default in making any payment of any principal of any Indebtedness (including, without limitation, any Contingent Obligation in respect of Indebtedness, but excluding Obligations of the Borrowers under the Loan Documents) on the scheduled or original due date with respect thereto, or (ii) default in making any payment of any interest on any such Indebtedness beyond the period of grace, if any, provided in the instrument or agreement under which such Indebtedness was created, or (iii) default in the observance or performance of any other agreement or condition relating to any such Indebtedness or contained in any instrument or agreement evidencing, securing or relating thereto, or any other event shall occur or condition exist, the effect of which default or other event or condition is to cause, or to permit the holder or beneficiary of such Indebtedness (or a trustee or agent on behalf of such holder or beneficiary) to cause, with the giving of notice if required, such Indebtedness to be demanded or to become due, or to be required to be repurchased, prepaid, defeased or redeemed (automatically or otherwise), or an offer to repurchase, prepay, defease or redeem such Indebtedness to be made, prior to its stated maturity or (in the case of any such Indebtedness constituting a Contingent Obligation) to become payable or cash collateral in respect thereof to be demanded; provided, that a default, event or condition described in clauses (i), (ii) or (iii) of this subsection 7.6B shall not at any time constitute an Event of Default unless, at such time, one or more defaults, events or conditions of the type described in clauses (i), (ii) and (iii) of this subsection 7.6B shall have occurred and be continuing with respect to Indebtedness the outstanding principal amount of which exceeds in the aggregate $5,000,000; or

**PRELIMINARY DRAFT**
**SUBJECT TO MODIFICATION**
**FINAL VERSION MUST BE ACCEPTABLE**
**TO FIRST LIEN STEERING COMMITTEE**

**7.7    Insolvency Proceedings.**

Any Insolvency Proceeding shall be commenced by any Loan Party; an Insolvency Proceeding is commenced against any Loan Party and any of the following events occur:  such Loan Party consents to the institution of the Insolvency Proceeding against it; the petition commencing the Insolvency Proceeding is not timely controverted by such Loan Party; the petition commencing the Insolvency Proceeding is not dismissed within sixty (60) days after the date of the filing thereof (provided that, in any event, during the pendency of any such period, Lenders shall be relieved from their obligation to make Loans or otherwise extend credit to or for the benefit of the Borrowers hereunder); an interim trustee is appointed to take possession of all or a substantial portion of the properties of such Loan Party or to operate all or any substantial portion of the business of such Loan Party or an order for relief shall have been issued or entered in connection with such Insolvency Proceeding; or any Loan Party shall make an offer of settlement extension or composition to its unsecured creditors generally; or

**7.8    Business Disruption; Condemnation.**

Any Loan Party shall be enjoined, restrained or in any way prevented by court, governmental or administrative order from conducting all or any material part of its business affairs; or any material part of the Collateral shall be taken through condemnation or a Required Dedication or the Appraised Value of such property shall be materially impaired through condemnation or a Required Dedication; or

**7.9    ERISA.**

An ERISA Event shall occur which could reasonably be expected to result in a Material Adverse Effect or which the Administrative Agent, in its reasonable discretion, shall determine constitutes grounds for the termination by the PBGC of any Pension Plan or for the appointment by the appropriate United States district court of a trustee for any Pension Plan; or if any Pension Plan shall be terminated or any such trustee shall be requested or appointed; or if a Borrower or any Subsidiary is in "default" (as defined in Section 4219(c)(5) of ERISA) with respect to payments to a Multiemployer Plan resulting from a Borrower's or such Subsidiary's complete or partial withdrawal from such Pension Plan; or

**7.10    Challenge to Loan Documents; Invalidity.**

Any Loan Party or any of its Affiliates shall challenge or contest in any action, suit or proceeding the validity or enforceability of any of the Loan Documents, the legality or enforceability of any of the Obligations or the perfection or priority of any Lien granted to the Collateral Agent, or any Lien created by any of the Collateral Documents shall cease to be enforceable and of the same effect and priority, in each case, to the extent purported to be created thereby, or any of the Loan Documents ceases to be in full force or effect for any reason other than a full or partial waiver or release by the applicable Agent and Lenders in accordance with the terms thereof; or

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

## 7.11   Judgment.

One or more judgments or orders for the payment of money (not covered by insurance as to which an insurance company has acknowledged coverage) in an amount that exceeds, individually or in the aggregate, $5,000,000 shall be entered against a Borrower or any other Loan Party and there shall be any period of thirty (30) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect; or

## 7.12   Repudiation of or Default Under Guaranty.

Any Subsidiary Guarantor shall revoke or attempt to revoke the Guaranty signed by such Subsidiary Guarantor, shall repudiate such Subsidiary Guarantor's liability thereunder, or shall be in default under the terms thereof, or shall fail to confirm in writing, promptly after receipt of the Administrative Agent's written request therefor, such Subsidiary Guarantor's ongoing liability under the Guaranty in accordance with the terms thereof; or

## 7.13   Criminal Forfeiture.

Any Loan Party shall be convicted under any criminal law that could lead to a forfeiture of any property of such Loan Party; or

## 7.14   Change of Control.

A Change of Control shall occur.

**THEN** (i) upon the occurrence of any Event of Default described in subsection 7.7, each of (a) the unpaid principal amount of and accrued interest on the Loans, and (b) all other Obligations shall automatically become immediately due and payable, without presentment, demand, protest or other requirements of any kind, all of which are hereby expressly waived by the Borrowers, and the Commitments, if not previously terminated, shall terminate, and (ii) upon the occurrence and during the continuation of any other Event of Default, the Administrative Agent may, or shall upon the written request of the Requisite Lenders, by written notice to the Borrowers, declare the unpaid principal amount of and accrued interest on the Loans, and all other Obligations, to be, and the same shall forthwith become, immediately due and payable, and the Commitments, if not previously terminated, shall terminate. Upon the occurrence and during the continuance of any Event of Default, the Administrative Agent or the Collateral Agent may (and shall as directed by the Requisite Lenders) (A) exercise, on behalf of the Lenders, any and all rights and remedies under any Loan Documents; and/or (B) exercise any and all rights, powers and remedies available to the Administrative Agent, the Collateral Agent or the Lenders at law, in equity or otherwise, all of which rights, powers and remedies are cumulative and not exclusive.

**PRELIMINARY DRAFT**
**SUBJECT TO MODIFICATION**
**FINAL VERSION MUST BE ACCEPTABLE**
**TO FIRST LIEN STEERING COMMITTEE**

## SECTION 8.
## AGENTS

### 8.1 Appointment.

A.    **Appointment Authority.** Each of the Lenders hereby appoints [_____] as the Administrative Agent and the Collateral Agent hereunder and under the other Loan Documents and authorizes [_____], in such capacities, to take such actions on its behalf and to exercise such powers as are delegated to [_____], in such capacities by the terms hereof or thereof, together with such actions and powers as are reasonably incidental thereto. Each Agent agrees to act upon the express conditions contained in this Agreement and the other Loan Documents, as applicable. In performing its functions and duties under this Agreement, each Agent shall act solely as an agent of the Lenders and does not assume and shall not be deemed to have assumed any obligation towards or relationship of agency or trust with or for the Borrowers or any of their Subsidiaries. The provisions of this Section 8 are solely for the benefit of the Agents and the Lenders, and the Borrowers shall not have rights as third party beneficiaries of any of such provisions; provided that the Borrowers shall be obligated to perform their obligations under this Section 8.

B.    **Appointment of Supplemental Collateral Agents.** It is the purpose of this Agreement and the other Loan Documents that there shall be no violation of any law of any jurisdiction denying or restricting the right of banking corporations or associations to transact business as agent or trustee in such jurisdiction. It is recognized that in case of litigation under this Agreement or any of the other Loan Documents, and in particular in case of the enforcement of any of the Loan Documents, or in case the Administrative Agent or the Collateral Agent deems that by reason of any present or future law of any jurisdiction the Administrative Agent or the Collateral Agent may not exercise any of the rights, powers or remedies granted herein or in any of the other Loan Documents or take any other action which may be desirable or necessary in connection therewith, it may be necessary that the Administrative Agent or the Collateral Agent appoint an additional individual or institution as a separate trustee, co-trustee, collateral agent or collateral co-agent (any such additional individual or institution being referred to herein individually as a "**Supplemental Collateral Agent**" and collectively as "**Supplemental Collateral Agents**").

In the event that the Administrative Agent or the Collateral Agent appoints a Supplemental Collateral Agent with respect to any Collateral, (i) each and every right, power, privilege or duty expressed or intended by this Agreement or any of the other Loan Documents to be exercised by or vested in or conveyed to the Administrative Agent or the Collateral Agent with respect to such Collateral shall be exercisable by and vest in such Supplemental Collateral Agent to the extent, and only to the extent, necessary to enable such Supplemental Collateral Agent to exercise such rights, powers and privileges with respect to such Collateral and to perform such duties with respect to such Collateral, and every covenant and obligation contained in the Loan Documents and necessary to the exercise or performance thereof by such Supplemental Collateral Agent shall run to and be enforceable by either the Administrative Agent or the Collateral Agent or such Supplemental Collateral Agent and (ii) the provisions of this

Section 8 and of subsection 9.2 that refer to the Administrative Agent or the Collateral Agent shall inure to the benefit of such Supplemental Collateral Agent and all references therein to the Administrative Agent or the Collateral Agent shall be deemed to be references to the Administrative Agent or the Collateral Agent and/or such Supplemental Collateral Agent, as the context may require.

Should any instrument in writing from the Borrowers or any other Loan Party be required by any Supplemental Collateral Agent so appointed by the Administrative Agent or the Collateral Agent for more fully and certainly vesting in and confirming to him or it such rights, powers, privileges and duties, the Borrowers shall, or shall cause such Loan Party to, execute, acknowledge and deliver any and all such instruments promptly upon request by the Administrative Agent or the Collateral Agent. In case any Supplemental Collateral Agent, or a successor thereto, shall dissolve, die, become incapable of acting, resign or be removed, all the rights, powers, privileges and duties of such Supplemental Collateral Agent, to the extent permitted by law, shall vest in and be exercised by the Administrative Agent or the Collateral Agent until the appointment of a new Supplemental Collateral Agent.

## 8.2    Rights as a Lender.

The Persons serving as the Agents hereunder shall have the same rights and powers in its capacity as a Lender as any other Lender and may exercise the same as though it were not an Agent and the term "Lender" or "Lenders" shall, unless otherwise expressly indicated or unless the context otherwise requires, include the Persons serving as the Agents hereunder in their individual capacity. Such Persons and their Affiliates may accept deposits from, lend money to, act as the financial advisor or in any other advisory capacity for and generally engage in any kind of business with the Borrowers or any Subsidiary or other Affiliate thereof as if such Persons were not Agents hereunder and without any duty to account therefor to the Lenders.

## 8.3    Exculpatory Provisions.

The Agents shall not have any duties or obligations except those expressly set forth herein and in the other Loan Documents. Without limiting the generality of the foregoing, the Agents (i) shall not be subject to any fiduciary or other implied duties, regardless of whether a Default or an Event of Default has occurred and is continuing, (ii) shall not have any duty to take any discretionary action or exercise any discretionary powers, except discretionary rights and powers expressly contemplated hereby or by the other Loan Documents that the Agents are required to exercise as directed in writing by the Requisite Lenders (or such other number or percentage of the relevant Lenders as shall be necessary under the circumstances as provided in subsection 9.5), provided that no Agent shall be required to take any action that, in its opinion or the opinion of its counsel, may expose such Agent to liability or that is contrary to any Loan Document or applicable law and (iii) shall not, except as expressly set forth herein and in the other Loan Documents have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to the Borrowers or any of their Affiliates that is communicated to or obtained by the Person serving as an Agent or any of its Affiliates in any capacity. No Agent shall be liable to the Lenders for any action taken or not taken by it with the

consent or at the request of the Requisite Lenders (or such other number or percentage of the Lenders as shall be necessary under the circumstances as provided in subsection 9.5) or in the absence of its own gross negligence or willful misconduct. No Agent shall be deemed to have knowledge of any Default or Event of Default unless and until notice thereof is given in writing to such Agent by the Borrowers or a Lender. The Agents shall not be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with this Agreement or any other Loan Document, (ii) the contents of any certificate, report or other document delivered hereunder or thereunder or in connection herewith or therewith, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth herein or therein or the occurrence of any Default or Event of Default, (iv) the validity, enforceability, effectiveness or genuineness of this Agreement or any other Loan Document or any other agreement, instrument or document or (v) the satisfaction of any condition set forth in Section 3 or elsewhere herein, other than to confirm receipt of items expressly required to be delivered to the Agents.

**8.4    Reliance by the Agents**.

The Agents shall be entitled to rely upon, and shall not incur any liability for relying upon, any notice, request, certificate, consent, statement, instrument, document or other writing (including any electronic message, posting or other distribution) believed by it in good faith to be genuine and to have been signed, sent or otherwise authenticated by the proper Person. The Agents also may rely upon any statement made to it orally or by telephone and believed by it in good faith to have been made by the proper Person, and shall not incur any liability for relying thereon. In determining compliance with any condition hereunder to the making of such Loan that by its terms must be fulfilled to the satisfaction of a Lender, the Agents may presume that such condition is satisfactory to such Lender unless the Agents shall have received notice to the contrary from such Lender prior to the making of such Loan. The Agents may consult with legal counsel (who may be counsel for the Borrowers), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts.

**8.5    Delegation of Duties**.

Each Agent may perform any and all of its duties and exercise its rights and powers hereunder or under any other Loan Document by or through any one or more sub-agents appointed by such Agent. The Agents and any such sub-agent may perform any and all of its duties and exercise its rights and powers by or through their respective Related Parties. The exculpatory provisions of subsection 8.3 shall apply to any such sub-agent and to the Related Parties of such Agent and any such sub-agent, and shall apply to their respective activities in connection with the syndication of the credit facilities provided for herein as well as activities as such Agent.

**PRELIMINARY DRAFT**
**SUBJECT TO MODIFICATION**
**FINAL VERSION MUST BE ACCEPTABLE**
**TO FIRST LIEN STEERING COMMITTEE**

8.6    Resignation of Administrative Agent and/or Collateral Agent.

The Administrative Agent and/or Collateral Agent may at any time give notice of its resignation to the Lenders and the Borrowers, and the Administrative Agent and/or Collateral Agent may be removed at any time with or without cause by the Requisite Lenders. Upon receipt of any such notice of resignation or upon any such removal, the Requisite Lenders shall have the right, with the written consent of the Borrowers if no Default or Event of Default shall have occurred and be continuing (such consent not to be unreasonably withheld or delayed), to appoint a successor Administrative Agent and/or Collateral Agent, as applicable, which shall be a bank with an office in New York, or an Affiliate of any such bank with an office in New York. If no such successor shall have been so appointed by the Requisite Lenders and shall have accepted such appointment within ten (10) days after (i) the retiring Administrative Agent and/or Collateral Agent as the case may be, gives notice of its resignation, or (ii) after the removal of the Administrative Agent and/or Collateral Agent, as the case may be, then such resignation or removal shall nonetheless become effective in accordance with such resignation notice or removal instructions by the Requisite Lenders and (1) the retiring Administrative Agent and/or Collateral Agent, as applicable, shall be discharged from its duties and obligations hereunder and under the other Loan Documents (except that in the case of any Collateral held by the Administrative Agent and/or Collateral Agent, as applicable, on behalf of the Secured Parties under any of the Loan Documents, the retiring Administrative Agent and/or Collateral Agent, as applicable, may continue to hold such Collateral until such time as a successor Administrative Agent and/or Collateral Agent, as applicable, is appointed and such Collateral is assigned to such successor Administrative Agent and/or Collateral Agent, as applicable) and (2) all payments, communications and determinations provided to be made by, to or through the Administrative Agent and/or Collateral Agent, as applicable, shall instead be made by or to each Lender directly, until such time as the Requisite Lenders appoint a successor Administrative Agent and/or Collateral Agent, as applicable, as provided for above in this paragraph (provided that the retiring Administrative Agent and/or Collateral Agent, as applicable, may elect to receive and distribute payment as paying agent for the Lenders (in such capacity, the "**Paying Agent**") until such time as a successor Administrative Agent and/or Collateral Agent, as applicable, is so appointed). Upon the acceptance of a successor's appointment as Administrative Agent and/or Collateral Agent, as applicable hereunder, such successor shall succeed to and become vested with all of the rights, powers, privileges and duties of the retiring (or retired) Administrative Agent and/or Collateral Agent, as applicable, and the retiring Administrative Agent and/or Collateral Agent, as applicable shall be discharged from all of its duties and obligations hereunder or under the Loan Documents (if such rights and obligations were not earlier discharged as provided in the proviso to the preceding sentence). The fees payable by the Borrowers to a successor Administrative Agent and/or Collateral Agent, as applicable, shall be the same as those payable to its predecessor unless otherwise agreed between the Borrowers and such successor. After the retiring Administrative Agent's and/or Collateral Agent's resignation or removal hereunder and under the other Loan Documents, the provisions of this Section 8 and subsection 9.2 shall continue in effect for the benefit of such retiring Administrative Agent and/or Collateral Agent, as applicable, its sub-agents and their respective Related Parties in respect of any actions taken or

**PRELIMINARY DRAFT**
**SUBJECT TO MODIFICATION**
**FINAL VERSION MUST BE ACCEPTABLE**
**TO FIRST LIEN STEERING COMMITTEE**

omitted to be taken by any of them while the retiring Administrative Agent and/or Collateral Agent, as applicable was acting in such capacity or as Paying Agent.

**8.7    Collateral Documents.**

Each Lender hereby further authorizes the Collateral Agent to enter into each Collateral Document, as secured party on behalf of and for the benefit of the Lenders and the other beneficiaries named therein and agrees to be bound by the terms of each Collateral Document; provided that the Collateral Agent shall not enter into or consent to any Modification, termination or waiver of any provision contained in any Collateral Document without the prior consent of the Requisite Lenders (or, if required pursuant to subsection 9.5, all the Lenders); provided further, however, that, without further written consent or authorization from any Lender, the Collateral Agent may execute any documents or instruments necessary to (a) effect the subordination of the Lien of the applicable Collateral Document to an interest in any Real Property Collateral if required under this Agreement or any Collateral Document or (b) effect the release of any asset constituting Collateral from the Lien of the applicable Collateral Document in the event that such asset is sold or otherwise disposed of in a transaction effected in accordance with subsection 6.9 or to the extent otherwise required by any Collateral Document. Anything contained in any of the Loan Documents to the contrary notwithstanding (other than Section 9.3), the Borrowers, the Administrative Agent, the Collateral Agent and each Lender agrees that (i) no Secured Party other than the Collateral Agent shall have any right individually to realize upon any of the Collateral or to enforce any Collateral Document, it being understood and agreed that all powers, rights and remedies under the Collateral Documents may be exercised solely by the Collateral Agent for the benefit of the Secured Parties named therein in accordance with the terms thereof, and (ii) in the event of any exercise of remedies by the Collateral Agent upon an Event of Default, the Collateral Agent or any Lender may be the purchaser of any or all of the Collateral at any private sale, public sale, or other disposition and the Collateral Agent, as agent for and representative of the Secured Parties (or any other Person if the Requisite Lenders shall agree in writing that such Person, and not the Collateral Agent, shall act as agent and representative of the Secured Parties for the purposes of such sale or disposition) shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold at any such sale or disposition, to use and apply any of the Obligations as a credit on account of the purchase price for any Collateral payable by the Collateral Agent (or such other Person, if so designated by the Requisite Lenders) at such sale.

**8.8    Non-Reliance on Agents and Other Lenders.**

Each Lender acknowledges that it has, independently and without reliance upon any Agent or any other Lender or any of their Related Parties and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement. Each Lender also acknowledges that it will, independently and without reliance upon any Agent or any other Lender or any of their Related Parties and based on such documents and information as it shall from time to time deem appropriate, continue to make its own

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

decisions in taking or not taking action under or based upon this Agreement, any other Loan Document or any related agreement or any document furnished hereunder or thereunder.

## SECTION 9.
## MISCELLANEOUS

**9.1**   **Assignments and Participations in Loans.**

  **A.** **Successors and Assigns Generally.**  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that the Borrowers may not assign or otherwise transfer any of their rights or obligations hereunder without the prior written consent of each Lender and the Administrative Agent and no Lender may assign or otherwise transfer any of its rights or obligations hereunder except (i) to an Eligible Assignee in accordance with the provisions of subsection 9.1B, (ii) by way of participation in accordance with the provisions of subsection 9.1D or (iii) by way of pledge or assignment of a security interest subject to the restrictions of subsection 9.1F (and any other attempted assignment or transfer by any party hereto shall be null and void).  Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto, their respective successors and assigns permitted hereby, Participants to the extent provided in subsection 9.1D and, to the extent expressly contemplated hereby, the Related Parties of each of the Administrative Agent and the Lenders) any legal or equitable right, remedy or claim under or by reason of this Agreement.

  **B.** **Assignments by Lenders.**

   (i) Any Lender may at any time assign to one or more Eligible Assignees all or a portion of its rights and obligations under this Agreement (including all or a portion of its Commitment and the Loans at the time owing to it) with the prior written consent of the Administrative Agent and notice to the Borrowers; provided that (x) no consent of the Administrative Agent shall be required for an assignment to a Lender or an Affiliate of a Lender or an Approved Fund with respect to a Lender and (y) failure to deliver notice to the Borrowers shall not affect the validity of any assignment; and provided, further, that

    (a) except in the case of an assignment of entire remaining amount of the assigning Lender's Loans or in the case of an assignment to a Lender or an Affiliate of a Lender or an Approved Fund with respect to a Lender, the aggregate amount of the Loans subject to each such assignment (determined as of the date of the Assignment Agreement with respect to such assignment is delivered to the Administrative Agent) shall not be less than $1,000,000 or an integral multiple of $1,000,000 in excess thereof, unless the Administrative Agent otherwise consents;

    (b) each partial assignment shall be made as an assignment of a proportionate part of all the assigning Lender's rights and obligations under this Agreement with respect to the Commitments or Loans assigned; and

**PRELIMINARY DRAFT**
**SUBJECT TO MODIFICATION**
**FINAL VERSION MUST BE ACCEPTABLE**
**TO FIRST LIEN STEERING COMMITTEE**

(c)     the parties to each assignment shall execute and deliver to the Administrative Agent an Assignment Agreement via an electronic settlement system acceptable to the Administrative Agent (or, if previously agreed with the Administrative Agent, manually), and shall pay to the Administrative Agent a processing and recordation fee of $3,500 (which fee may be waived or reduced in the sole discretion of the Administrative Agent and provided that only one such fee shall be payable in connection with simultaneous assignments to or by two or more Approved Funds), and the Eligible Assignee, if it shall not be a Lender, shall deliver to the Administrative Agent an Administrative Questionnaire and if required, applicable tax forms.

(ii)     Subject to acceptance and recording thereof by the Administrative Agent pursuant to subsection 9.1C, from and after the effective date specified in each Assignment Agreement, the Eligible Assignee thereunder shall be a party to this Agreement and, to the extent of the interest assigned by such Assignment Agreement, have the rights and obligations of a Lender under this Agreement, and the assigning Lender thereunder shall, to the extent of the interest assigned by such Assignment Agreement, be released from its obligations under this Agreement (and, in the case of an Assignment Agreement covering all of the assigning Lender's rights and obligations under this Agreement, such Lender shall cease to be a party hereto) but shall continue to be entitled to the benefits of subsections 2.7 and 9.2 with respect to facts and circumstances occurring prior to the effective date of such assignment. An Eligible Assignee shall not be entitled to receive any greater payment under subsection 2.7 than the assigning Lender would have been entitled to receive with respect to the Loan or portion of the Loan assigned to such Eligible Assignee, unless the grant to such Eligible Assignee is made with the Borrowers' prior written consent. Except in the case of an assignment to a Lender, an Affiliate of a Lender, or an Approved Fund with respect to a Lender, any assignment or transfer by a Lender of rights or obligations under this Agreement that does not comply with this paragraph shall be treated for purposes of this Agreement as a sale by such Lender of a participation in such rights and obligations in accordance with subsection 9.1D.

C.     **The Register.** The Administrative Agent, acting solely for this purpose as an agent of the Borrowers, shall maintain at one of its offices in New York a copy of each Assignment Agreement delivered to it and a register for the recordation of the names and addresses of the Lenders and principal amounts of the Loans (each, a "**Registered Loan**") owing to, each Lender pursuant to the terms hereof from time to time (the "**Register**"). The entries in the Register shall be conclusive, and the Borrowers, the Administrative Agent and the Lenders may treat each Person whose name is recorded in the Register pursuant to the terms hereof as a Lender hereunder for all purposes of this Agreement, notwithstanding notice to the contrary. The Register shall be available for inspection by the Borrowers at any reasonable time and from time to time upon reasonable prior notice.

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

**D.** **Participations.** Any Lender may at any time, without the consent of, or notice to, the Borrowers or the Administrative Agent, sell participations to any Person (other than a natural person or a Borrower or any of the Affiliates or Subsidiaries of a Borrower) (each, a "**Participant**") in all or a portion of such Lender's rights and/or obligations under this Agreement (including all or a portion of the Loans owing to it); provided that

     (i)    such Lender's obligations under this Agreement shall remain unchanged,

     (ii)    such Lender shall remain solely responsible to the other parties hereto for the performance of such obligations,

     (iii)    the Borrowers, the Administrative Agent and the other Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement, and

     (iv)    in the event that any Lender sells participations in a Registered Loan, such Lender shall maintain a register on which it enters the name of all participants in the Registered Loans held by it (the "**Participant Register**"). A Registered Loan (and the registered note, if any, evidencing the same) may be participated in whole or in part only by registration of such participation on the Participant Register (and each registered note shall expressly so provide). Any participation of such Registered Loan (and the registered note, if any, evidencing the same) may be effected only by the registration of such participation on the Participant Register.

Any agreement or instrument pursuant to which a Lender sells such a participation shall provide that such Lender shall retain the sole right to enforce this Agreement and to approve any Modification or waiver of any provision of this Agreement; provided that such agreement or instrument may provide that such Lender will not, without the consent of the Participant, agree to any Modification or waiver with respect to any action (i) increasing the Commitments, (ii) effecting the extension of the final maturity of the Loan allocated to such participation, (iii) effecting a reduction of the principal amount of or affecting the rate of interest payable on any Loan or any fee allocated to such participation, (iv) releasing all or substantially all of the Collateral or (v) releasing all or substantially all of the Subsidiary Guarantors from their obligations under the Guaranties. Subject to subsection 9.1E, the Borrowers agree that each Participant shall be entitled to the benefits of subsection 2.6D and subsection 2.7 to the same extent as if it were a Lender and had acquired its interest by assignment pursuant to subsection 9.1B; provided that such Participant agrees to be subject to subsection 2.8 as though it were a Lender. To the extent permitted by law, each Participant also shall be entitled to the benefits of subsection 9.3 as though it were a Lender, provided such Participant agrees to be subject to subsection 9.4 as though it were a Lender.

**E.** **Limitations Upon Participant Rights.** A Participant shall not be entitled to receive any greater payment under subsection 2.7 than the applicable Lender would have been entitled to receive with respect to the participation sold to such Participant, unless the sale of the participation to such Participant is made with the Borrowers' prior written consent. Without

**PRELIMINARY DRAFT**
**SUBJECT TO MODIFICATION**
**FINAL VERSION MUST BE ACCEPTABLE**
**TO FIRST LIEN STEERING COMMITTEE**

limiting the generality of the foregoing, a Participant that would be a Foreign Lender if it were a Lender shall not be entitled to the benefits of subsection 2.7E unless the Borrowers are notified of the participation sold to such Participant and such Participant agrees, for the benefit of the Borrowers, to comply with subsection 2.7E(v) as though it were a Lender.

F.     **Certain Pledges.** Any Lender may, without the consent of the Borrowers or the Administrative Agent, at any time pledge or assign a security interest in all or any portion of its rights under this Agreement to secure obligations of such Lender, including without limitation any pledge or assignment to secure obligations to a Federal Reserve Bank; provided that no such pledge or assignment shall release such Lender from any of its obligations hereunder or substitute any such pledgee or assignee for such Lender as a party hereto.  Notwithstanding anything to the contrary contained herein, any Lender that is a Fund may, without the consent of the Borrowers or the Administrative Agent, create a security interest in all or any portion of the Loans owing to it and the Notes, if any, held by it to the trustee for holders of obligations owed, or Securities issued, by such Fund as security for such obligations or Securities; provided that unless and until such trustee actually becomes a Lender in compliance with the other provisions of this subsection 9.1, (i) no such pledge shall release the pledging Lender from any of its obligations under this Agreement and (ii) such trustee shall not be entitled to exercise any of the rights of a Lender under this Agreement and the Notes even though such trustee may have acquired ownership rights with respect to the pledged interest through foreclosure or otherwise.

G.     **SPV Lender.**  Notwithstanding anything to the contrary contained herein, any Lender (a "**Granting Lender**") may grant to a special purpose funding vehicle (a "**SPV**"), identified as such in writing from time to time by the Granting Lender to the Administrative Agent and the Borrowers, the option to provide to the Borrowers all or any part of any Loan that such Granting Lender would otherwise be obligated to make the Borrowers pursuant to this Agreement; provided that (i) nothing herein shall constitute a commitment by any SPV to make any Loan, (ii) if an SPV elects not to exercise such option or otherwise fails to provide all or any part of such Loan, the Granting Lender shall be obligated to make such Loan pursuant to the terms hereof.  The making of a Loan by an SPV hereunder shall utilize the Commitment of the Granting Lender to the same extent, and as if, such Loan were made by such Granting Lender. Each party hereto hereby agrees that no SPV shall be liable for any indemnity or similar payment obligation under this Agreement (all liability for which shall remain with the Granting Lender). An SPV shall not be entitled to receive any greater payment under subsection 2.7 than the Granting Lender would have been entitled to receive with respect to the Loan or portion of the Loan granted to such SPV, unless the grant to such SPV is made with the Borrowers' prior written consent.  In furtherance of the foregoing, each party hereto hereby agrees (which agreement shall survive the termination of this Agreement) that, prior to the date that is one year and one day after the payment in full of all outstanding commercial paper or other senior indebtedness of any SPV, it will not institute against, or join any other Person in instituting against, such SPV any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings under the laws of the United States or any State thereof.  In addition, notwithstanding anything to the contrary contained in this subsection 9.1, any SPV may (i) with notice to, but without the prior written consent of, the Borrowers and the Administrative Agent

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

and without paying any processing fee therefore, assign all or a portion of its interests in any Loans to the Granting Lender or to any financial institutions (consented to by the Borrowers and Administrative Agent) providing liquidity and/or credit support to or for the account of such SPV to support the funding or maintenance of Loans and (ii) disclose on a confidential basis any non-public information relating to its Loans to any rating agency, commercial paper dealer or provider of any surety, guarantee or credit or liquidity enhancement to such SPV. This subsection 9.1 may not be Modified without the written consent of the SPV.

9.2     **Expenses; Indemnity; Damage Waiver.**

A.     **Costs and Expenses.** Each of the Borrowers shall pay all actual and documented out-of-pocket expenses incurred by each Agent and its Affiliates (and any Person designated by the Requisite Lenders to act on behalf of the Secured Parties in accordance with Section 8.7 hereof), including the reasonable and documented fees, charges and disbursements of its appraiser, counsel (including, without limitation, special and local counsel) for each Agent and its Affiliates (or any such Person) (and fees and time charges for attorneys who may be employees of such Agent or Affiliates or any such Person) and filing and recording fees and expenses, in connection with any syndication of the credit facilities provided for herein, the development, preparation, negotiation, execution, delivery, closing, funding, and administration of this Agreement and the other Loan Documents, any Modifications or waivers of the provisions hereof or thereof (whether or not the transactions contemplated hereby or thereby shall be consummated), or in connection with the enforcement or protection of its rights in connection with this Agreement and the other Loan Documents, including its rights under this subsection 9.2A, or in connection with the Loans made hereunder, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Loans.

B.     **Indemnification by the Borrowers.** Each of the Borrowers shall indemnify each Agent (and any sub-Agent thereof and any Person designated by the Requisite Lenders to act on behalf of the Secured Parties in accordance with Section 8.7 hereof), each Lender, their respective successors and assigns and each Related Party of any of the foregoing Persons (each such Person being called an "**Indemnitee**") against, and hold each Indemnitee harmless from, any and all costs, losses, claims, damages, liabilities and expenses (including, without limitation, the reasonable fees, charges and disbursements of any counsel and consultants for any Indemnitee (and fees and time charges for attorneys who may be employees of any Indemnitee)) of any kind or nature whatsoever, incurred by or asserted against any Indemnitee arising out of, in connection with, or as a result of (i) the execution, delivery, enforcement or administration of this Agreement, any other Loan Document or any agreement or instrument contemplated hereby or thereby, the performance by the parties hereto of their respective obligations hereunder or the consummation of the transactions contemplated hereby or thereby, (ii) any Loan or the use of the proceeds therefrom, (iii) any actual or alleged presence or Release of Hazardous Materials on or from any property, any Environmental Claim or any Environmental Liabilities related in any way to any Borrower or any of its Subsidiaries, (iv) any claim, demand or liability for any brokerage commissions, or broker's or finder's fees or investment banking or similar fees incurred or

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

alleged to have been incurred in connection with the transaction contemplated hereby, and any claim, demand or liability relating thereto or (v) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory and regardless of whether any Indemnitee is a party thereto (and regardless of whether such matter is initiated by a third party or by the Borrowers or any of their respective Affiliates); provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such costs, losses, claims, damages, liabilities and expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted primarily from the gross negligence or willful misconduct of such Indemnitee.

     **C.**    **Reimbursement by the Lenders.**  To the extent that a Borrower fails to pay any amount required under subsection 9.2A or 9.2B to be paid by it to any Agent (or any sub-Agent thereof and any Person designated by the Requisite Lenders to act on behalf of the Secured Parties in accordance with Section 8.7 hereof) or any Related Party of any of the foregoing, each Lender severally agrees to pay to the Agent (or any such sub-Agent or such Person) or such Related Party, as the case may be, such Lender's Pro Rata Share (determined as of the time that the applicable unreimbursed expense or indemnity payment is sought) of such unpaid amount, provided that the unreimbursed expense or indemnified loss, claim, damage, liability or related expense, as the case may be, was incurred by or asserted against such Agent (or any such sub-Agent) in its capacity as such, or against any Related Party of any of the foregoing acting for such Agent (or any such sub-Agent) in connection with such capacity. The obligations of the Lenders under this subsection 9.2C are subject to the provisions of subsection 9.12.

     **D.**    **Waiver of Consequential Damages.**  To the fullest extent permitted by Applicable Law, each of the Borrowers shall not assert, and hereby waives, any claim against any Indemnitee, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, any other Loan Document or any agreement or instrument contemplated hereby, the transactions contemplated hereby or thereby, any Loan or the use of the proceeds thereof. No Indemnitee referred to in subsection 9.2B above shall be liable for any damages arising from the use by unintended recipients of any information or other materials distributed by it through telecommunications, electronic or other information transmission systems in connection with this Agreement or the other Loan Documents or the transactions contemplated hereby or thereby, unless such damages are directly caused solely by the gross negligence or willful misconduct of such Indemnitee as determined by a court of competent jurisdiction by final and nonappealable judgment.

     **E.**    **Payments.**  All amounts due under this subsection 9.2 shall be payable promptly after demand therefor.

**9.3**    <u>**Right of Set-Off**</u>.

     Without limitation of any other rights of the Agents or Lenders, if an Event of Default shall have occurred and be continuing, each Agent, Lender and each of their respective Affiliates is hereby authorized at any time and from time to time, to the fullest extent permitted by

**PRELIMINARY DRAFT**
**SUBJECT TO MODIFICATION**
**FINAL VERSION MUST BE ACCEPTABLE**
**TO FIRST LIEN STEERING COMMITTEE**

Applicable Law, to set off and apply any and all deposits (general or special, time or demand, provisional or final, in whatever currency) at any time held and other obligations (in whatever currency) at any time owing by such Agent, Lender, or any such Affiliate to or for the credit or the account of a Borrower against any and all of the Obligations of the Borrowers now or hereafter existing under this Agreement or any other Loan Document to such Agent or Lender, irrespective of whether or not such Lender shall have made any demand under this Agreement or any other Loan Document and although such Obligations of the Borrowers may be contingent or unmatured or are owed to a branch or office of such Lender different from the branch or office holding such deposit or obligated on such indebtedness. The rights of each Agent, Lender and their respective Affiliates under this subsection 9.3 are in addition to other rights and remedies (including other rights of setoff) which such Agent, Lender or their respective Affiliates may have. Each Agent and Lender agrees promptly to notify the Borrowers and the Administrative Agent after any such setoff and application; provided that the failure to give such notice shall not affect the validity of such setoff and application.

### 9.4    Sharing of Payments by Lenders.

If any Lender shall, by exercising any right of setoff or counterclaim or otherwise, obtain payment in respect of any principal of or interest on any of its Loans or other obligations hereunder resulting in such Lender's receiving payment of a proportion of the aggregate amount of its Loans and accrued interest thereon or other such obligations greater than its Pro Rata Share thereof as provided herein, then the Lender receiving such greater proportion shall (a) notify the Administrative Agent of such fact and (b) purchase (for Cash at face value) participations in the Loans and such other obligations of the other Lenders, or make such other adjustments as shall be equitable, to the end that the benefit of all such payments shall be shared by the Lenders ratably in accordance with the aggregate amount of principal of and accrued interest on their respective Loans and other amounts owing them; provided that (i) if any such participations are purchased and all or any portion of the payment giving rise thereto is recovered, such participations shall be rescinded and the purchase price restored to the extent of such recovery, without interest and (ii) the provisions of this paragraph shall not be construed to apply to (x) any payment made by the Borrowers pursuant to and in accordance with the express terms of this Agreement or (y) any payment obtained by a Lender as consideration for the assignment of or sale of a participation in any of its Loans to any assignee or participant, other than to a Borrower or any Subsidiary thereof (as to which the provisions of this paragraph shall apply). Each of the Borrowers consents to the foregoing and agrees, to the extent it may effectively do so under applicable law, that any Lender acquiring a participation pursuant to the foregoing arrangements may exercise against any Borrower rights of setoff and counterclaim with respect to such participation as fully as if such Lender were a direct creditor of such Borrower in the amount of such participation.

### 9.5    Amendments and Waivers.

**A.    Amendment and Waivers.** No Modification, termination or waiver of any provision of this Agreement, of the Notes or of any other Loan Document, or consent to any departure by any Borrower or any other Loan Party therefrom, shall in any event be effective

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

without the written concurrence of the Requisite Lenders and each Loan Party that is party to the relevant Loan Document; provided that any such Modification, termination, waiver or consent which: (a) reduces or forgives the principal amount of any of the Loans; (b) reduces the percentage specified in the definition of the "Requisite Lenders" (it being understood that, with the consent of the Requisite Lenders, additional extensions of credit pursuant to this Agreement may be included in the definition of the "Requisite Lenders" on substantially the same basis as the Loans are included on the Effective Date); (c) changes in any manner any provision of this Agreement which, by its terms, expressly requires the approval or concurrence of all the Lenders; (d) postpones the scheduled final maturity date of any of the Loans; (e) postpones the date or reduces the amount of any scheduled payment (but not prepayment) of principal of any of the Loans; (f) postpones the date on which any interest, any fees or any amounts due under subsections 2.4B(i)(b), 2.4B(ii)(d) or 2.4B(ii)(f) are payable; (g) decreases the interest rate borne by any of the Loans (other than any waiver of any increase in the interest rate applicable to any of the Loans pursuant to subsection 2.2E) or the amount of any fees payable hereunder or any amounts payable under subsections 2.4B(i)(b), 2.4B(ii)(d) or 2.4B(ii)(f); (h) increases the maximum duration of Interest Periods permitted hereunder; (i) releases all or substantially all of the Collateral; (j) except as provided in any applicable Guaranty or in connection with Asset Sales to the extent permitted under subsection 6.9, releases all or substantially all of the Subsidiary Guarantors from their obligations under the Guaranties; (k) changes subsections 2.4D(iii) or 9.4 or Modifies the definition of "Pro Rata Share" in a manner that would alter the pro rata sharing of payments required thereby; or (l) changes in any manner the provisions contained in this subsection 9.5, shall be effective only if evidenced by a writing signed by or on behalf of all the Lenders to whom Obligations are owed being directly affected by such Modification, termination, waiver or consent (the consent of the Requisite Lenders not being required for any such change); provided, further, that any Modification, termination, waiver or consent which Modifies the definition of "Approved Fund," "Eligible Assignee," or "Fund," shall be effective only if evidenced by a written concurrence of the Requisite Lenders and the Administrative Agent. In addition, (i) no Modification, termination or waiver of any provision of any Note shall be effective without the written concurrence of the Lender which is the holder of that Note and (ii) no Modification, termination or waiver of any provision of Section 8 or of any other provision of this Agreement which, by its terms, expressly requires the approval or concurrence of the Administrative Agent or the Collateral Agent shall be effective without the written concurrence of the Administrative Agent or the Collateral Agent, as applicable. Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given. No notice to or demand on any Borrower in any case shall entitle the Borrowers to any other or further notice or demand in similar or other circumstances. Any Modification, termination, waiver or consent effected in accordance with this subsection 9.5 shall be binding upon each Lender at the time outstanding, each future Lender and, if signed by the Borrowers, on the Borrowers. Notwithstanding the foregoing, this Agreement may be Modified (or amended and restated) with the written consent of the Requisite Lenders, the Administrative Agent and the Borrowers (a) to add one or more additional credit facilities to this Agreement and to permit the extensions of credit from time to time outstanding thereunder and the accrued interest and fees in respect thereof to share ratably in the benefits of this Agreement and the other Loan Documents with the Loans and the accrued interest and fees in respect thereof and (b) to

include appropriately the Lenders holding such credit facilities in any determination of the Requisite Lenders.

**B.    Non-Consenting Lenders.**  Each Lender grants to the Borrowers the right to cause an assignment of all (but not less than all) of such Lender's Loans owing to it, its participations in the Notes held by it and all of its rights and obligations hereunder and under the other Loan Documents to Eligible Assignees, which right may be exercised by the Administrative Agent or the Borrowers, as the case may be, if such Lender (a "**Non-Consenting Lender**") refuses to execute any Modification, waiver or consent which requires the written consent of Lenders other than Requisite Lenders and to which the Requisite Lenders, the Administrative Agent and the Borrowers have otherwise agreed; provided that (i) such Non-Consenting Lender (a "**Terminated Lender**") shall receive, in connection with such assignments, payment equal to the aggregate amount of outstanding Loans owed to such Terminated Lender (together with all accrued and unpaid interest, fees and other amounts (other than indemnities) owed to such Terminated Lender), plus an amount equal to the prepayment premium, if any, that would be payable in respect of the Loans of such Terminated Lender upon prepayment thereof pursuant to subsection 2.4B(i), (ii) the Borrowers shall have exercised such right in respect of each such Non-Consenting Lender and (iii) each such Eligible Assignee shall consent, at the time of such assignment, to each matter in respect of which such Terminated Lender was a Non-Consenting Lender.  Each Lender agrees that if the Administrative Agent or the Borrowers, as the case may be, exercises their option hereunder, it shall promptly execute and deliver all agreements and documentation necessary to effectuate such assignment as set forth in subsection 9.1.  The Borrowers shall be entitled (but not obligated) to execute and deliver such agreement and documentation on behalf of such Non-Consenting Lender and any such agreement and/or documentation so executed by the Borrowers shall be effective for purposes of documenting an assignment pursuant to subsection 9.1.

**9.6    Independence of Covenants.**

All covenants hereunder shall be given independent effect so that if a particular action or condition is not permitted by any of such covenants, the fact that it would be permitted by an exception to, or would otherwise be within the limitations of, another such covenant shall not avoid the occurrence of a Default or Event of Default if such action is taken or condition exists.

**9.7    Notices.**

**A.    Notices Generally.**  Except in the case of notices and other communications expressly permitted to be given by telephone (and except as provided in subsection 9.7B below), all notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by telecopier as follows: (i) if to the Borrowers, [_____]; (ii) if to the Administrative Agent, the Collateral Agent, or to [_____] at [_____]; and (iii) if to a Lender, to it at its address (or telecopier number) set forth in its Administrative Questionnaire.  Notices sent by hand or overnight courier service, or mailed by certified or registered mail, shall be deemed to have been given when received; notices sent by telecopier shall be deemed to have been given

**PRELIMINARY DRAFT**
**SUBJECT TO MODIFICATION**
**FINAL VERSION MUST BE ACCEPTABLE**
**TO FIRST LIEN STEERING COMMITTEE**

when sent (except that, if not given during normal business hours for the recipient, shall be deemed to have been given at the opening of business on the next business day for the recipient). Notices delivered through electronic communications to the extent provided in subsection 9.7B below, shall be effective as provided in said subsection 9.7B.

**B.    Electronic Communications.**

(i)    Notices and other communications to the Lenders hereunder may be delivered or furnished by electronic communication (including e-mail and Internet or intranet websites) pursuant to procedures approved by the Administrative Agent, provided that the foregoing shall not apply to notices to any Lender pursuant to subsection 2.1, if such Lender has notified the Administrative Agent that it is incapable of receiving notices under such subsection by electronic communication. Each of the Administrative Agent and the Borrowers may, in their respective discretion, agree to accept notices and other communications hereunder via electronic communications pursuant to procedures approved by the Administrative Agent or the Borrowers, respectively; provided that approval of such procedures may be limited to particular notices or communications. Unless the Administrative Agent otherwise prescribes, (i) notices and other communications sent to an e-mail address shall be deemed received upon the sender's receipt of an acknowledgment from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgment), provided that if such notice or other communication is not sent during the normal business hours of the recipient, such notice or communication shall be deemed to have been sent at the opening of business on the next Business Day for the recipient and (ii) notices or communications posted to an Internet or intranet website shall be deemed received upon the deemed receipt by the intended recipient at its e-mail address as described in the foregoing clause (i) of notification that such notice or communication is available and identifying the website address therefor.

(ii)    Each of the Borrowers hereby agrees, unless directed otherwise by the Administrative Agent or unless the electronic mail address referred to below has not been provided by the Administrative Agent to the Borrowers, that it will, or will cause its Subsidiaries to, provide to the Administrative Agent all information, documents and other materials that it is obligated to furnish to the Administrative Agent pursuant to the Loan Documents, or to the Lenders under subsection 5.2, including all notices, requests, financial statements, financial and other reports, certificates and other information materials, but excluding any such communication that (i) relates to the payment of any principal or other amount due under this Agreement, (ii) provides notice of any Default or Event of Default under this Agreement or any other Loan Document, (iii) is required to be delivered to satisfy any condition precedent to the effectiveness of this Agreement and/or the incurrence of the Loans or (iv) relates to Specified Encumbrances (all such non-excluded communications being referred to herein collectively as "**Communications**"), by transmitting the Communications in an electronic/soft medium that is properly identified in a format acceptable to the Administrative Agent to

[_____] (or at such other electronic mail address as directed by the Administrative Agent). In addition, each of the Borrowers agrees, and agrees to cause its Subsidiaries, to continue to provide the Communications to the Administrative Agent or the Lenders, as the case may be, in the manner specified in the Loan Documents but only to the extent requested by the Administrative Agent. Each of the Borrowers further agrees that the Administrative Agent may make the Communications available to the Lenders by posting the Communications on Intralinks or a substantially similar electronic transmission system.

C.    **Change of Address.** Any party hereto may change its address or telecopier number for notices and other communications hereunder by notice to the other parties hereto.

**9.8    Survival of Representations, Warranties and Agreements.**

A.    All representations, warranties and agreements made herein shall survive the execution and delivery of this Agreement and the making of the Loans hereunder.

B.    Notwithstanding anything in this Agreement or implied by law to the contrary, the agreements of the Borrowers set forth in subsections 2.6D, 2.7, 9.2, 9.3 and 9.18 and the agreements of the Lenders set forth in subsections 8.2, 8.3, 8.4, 9.2C, 9.3, 9.4 and 9.19 shall survive the payment of the Loans and the reimbursement of any amounts drawn or paid thereunder, and the termination of this Agreement.

**9.9    Failure or Indulgence Not Waiver; Remedies Cumulative.**

No failure or delay on the part of any Agent or any Lender in the exercise of any power, right or privilege hereunder or under any other Loan Document shall impair such power, right or privilege or be construed to be a waiver of any default or acquiescence therein, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other power, right or privilege. All rights and remedies existing under this Agreement and the other Loan Documents are cumulative to, and not exclusive of, any rights or remedies otherwise available.

**9.10    Marshalling; Payments Set Aside.**

Neither any Agent nor any Lender shall be under any obligation to marshal any assets in favor of the Borrowers or any other party or against or in payment of any or all of the Obligations.    To the extent that any Borrower makes a payment or payments to the Administrative Agent or the Lenders (or to the Administrative Agent or Collateral Agent for the benefit of the Lenders), or any Agent or the Lenders enforce any security interests or exercise their rights of setoff, and such payment or payments or the proceeds of such enforcement or setoff or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, any other state or federal law, common law or any equitable cause, then, to the extent of such recovery, the obligation or part thereof originally intended to be satisfied, and all

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

Liens, rights and remedies therefor or related thereto, shall be revived and continued in full force and effect as if such payment or payments had not been made or such enforcement or setoff had not occurred.

### 9.11    Severability.

In case any provision in or obligation under this Agreement or the Notes shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

### 9.12    Obligations Several; Independent Nature of the Lenders' Rights.

The obligations of the Lenders hereunder are several and no Lender shall be responsible for the obligations or Commitments of any other Lender hereunder. Nothing contained herein or in any other Loan Document, and no action taken by the Lenders pursuant hereto or thereto, shall be deemed to constitute the Lenders as a partnership, an association, a joint venture or any other kind of entity. The amounts payable at any time hereunder to each Lender shall be a separate and independent debt, and each Lender shall be entitled to protect and enforce its rights arising out of this Agreement and it shall not be necessary for any other Lender to be joined as an additional party in any proceeding for such purpose.

### 9.13    Maximum Amount.

A.    It is the intention of the Borrowers and the Lenders to conform strictly to the usury and similar laws relating to interest from time to time in force, and all agreements between the Loan Parties and their respective Subsidiaries and the Lenders, whether now existing or hereafter arising and whether oral or written, are hereby expressly limited so that in no contingency or event whatsoever, whether by acceleration of maturity hereof or otherwise, shall the amount paid or agreed to be paid in the aggregate to the Lenders as interest (whether or not designated as interest, and including any amount otherwise designated but deemed to constitute interest by a court of competent jurisdiction) hereunder or under the other Loan Documents or in any other agreement given to secure the Indebtedness or obligations of the Borrowers to the Lenders, or in any other document evidencing, securing or pertaining to the Indebtedness evidenced hereby, exceed the maximum amount permissible under applicable usury or such other laws (the "Maximum Amount"). If under any circumstances whatsoever fulfillment of any provision hereof, or any of the other Loan Documents, at the time performance of such provision shall be due, shall involve exceeding the Maximum Amount, then, ipso facto, the obligation to be fulfilled shall be reduced to the Maximum Amount. For the purposes of calculating the actual amount of interest paid and/or payable hereunder in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to the holder hereof for the use, forbearance or detention of the Indebtedness of the Borrowers evidenced hereby, outstanding from time to time shall, to the extent permitted by Applicable Law, be amortized, pro-rated, allocated and spread from the date of disbursement of the proceeds of the Notes until payment in full of all of such Indebtedness, so that the actual rate of interest on account of such Indebtedness is uniform

114

through the term hereof. The terms and provisions of this subsection shall control and supersede every other provision of all agreements between the Borrowers or any endorser of the Notes and the Lenders.

**B.**    If under any circumstances any Lender shall ever receive an amount which would exceed the Maximum Amount, such amount shall be deemed a payment in reduction of the principal amount of the Loans and shall be treated as a voluntary prepayment under subsection 2.4B(i) and shall be so applied in accordance with subsection 2.4 hereof or if such excessive interest exceeds the unpaid balance of the Loans and any other Indebtedness of the Borrowers in favor of such Lender, the excess shall be deemed to have been a payment made by mistake and shall be refunded to the Borrowers.

## 9.14    Headings.

Section and subsection headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose or be given any substantive effect.

## 9.15    Applicable Law.

**THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.**

## 9.16    Successors and Assigns.

This Agreement shall be binding upon the parties hereto and their respective successors and assigns and shall inure to the benefit of the parties hereto and the successors and assigns of the Lenders (it being understood that the Lenders' rights of assignment are subject to subsection 9.1). Neither the Borrowers' rights or obligations hereunder nor any interest therein may be assigned or delegated by any Borrower without the prior written consent of all Lenders.

## 9.17    Consent to Jurisdiction and Service of Process.

**A.    SUBMISSION TO JURISDICTION. EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY SUBMITS, FOR ITSELF AND ITS PROPERTY, TO THE EXCLUSIVE JURISDICTION OF (i) THE COURTS OF THE STATE OF NEW YORK SITTING IN NEW YORK CITY AND OF THE UNITED STATES DISTRICT COURT SITTING IN NEW YORK CITY, (ii) THE COURTS OF THE STATE OF NEVADA SITTING IN CLARK COUNTY AND OF THE UNITED STATES DISTRICT COURT SITTING IN CLARK COUNTY, (iii) THE COURTS OF THE STATE OF ARIZONA SITTING IN KINGMAN AND OF THE UNITED STATES DISTRICT COURT SITTING IN PHOENIX AND (iv) ANY APPELLATE COURT FROM ANY THEREOF, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT TO THE**

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

EXTENT SUCH COURTS WOULD HAVE SUBJECT MATTER JURISDICTION WITH RESPECT THERETO, AND EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH NEW YORK STATE COURT OR SUCH NEVADA STATE COURT OR SUCH ARIZONA STATE COURT OR, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN ANY SUCH FEDERAL COURT. EACH OF THE PARTIES HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. NOTHING IN THIS AGREEMENT OR IN ANY OTHER LOAN DOCUMENT SHALL AFFECT ANY RIGHT THAT THE ADMINISTRATIVE AGENT, THE COLLATERAL AGENT OR ANY LENDER MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT AGAINST A BORROWER OR ITS PROPERTIES IN THE COURTS OF THE STATE OF NEW YORK OR THE STATE OF NEVADA OR THE STATE OF ARIZONA OR TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN ANY OF THE UNITED STATES DISTRICT COURT SITTING IN NEW YORK CITY OR ANY UNITED STATES DISTRICT COURT SITTING IN CLARK COUNTY OR ANY UNITED STATES DISTRICT COURT SITTING IN PHOENIX. EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY CLAIM THAT IT IS NOT SUBJECT PERSONALLY TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK OR THE STATE OF NEVADA OR THE STATE OF ARIZONA, OR THAT ITS PROPERTY IS EXEMPT OR IMMUNE FROM ATTACHMENT OR EXECUTION.

B.    WAIVER OF VENUE.    EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT IN ANY COURT REFERRED TO IN SUBSECTION 9.17A. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING IN ANY SUCH COURT.

C.    Service of Process. Each party hereto irrevocably consents to service of process in the manner provided for notices in subsection 9.7. Nothing in this Agreement will affect the right of any party hereto to serve process in any other manner permitted by applicable law.

9.18    Waiver of Jury Trial.

EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE

**PRELIMINARY DRAFT**
**SUBJECT TO MODIFICATION**
**FINAL VERSION MUST BE ACCEPTABLE**
**TO FIRST LIEN STEERING COMMITTEE**

**TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE LOAN DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.**

**9.19    Confidentiality.**

Each of the Agents and the Lenders agrees to maintain the confidentiality of the Information (as defined below), except that Information may be disclosed (a) to it, its Affiliates' and their respective partners, directors, officers, employees, advisors and representatives (it being understood that the Persons to whom such disclosure is made will be informed of the confidential nature of such Information and instructed to keep such Information confidential as provided herein), (b) to the extent requested by any Governmental Authority (including, without limitation, any self-regulatory authority, such as the National Association of Insurance Commissioners), (c) to the extent required by Applicable Laws or regulations or by any subpoena or similar legal process, (d) to any other party hereto, (e) in connection with the exercise of any remedies hereunder or under any other Loan Document or any action or proceeding relating to this Agreement or any other Loan Document or the enforcement of rights hereunder or thereunder, (f) subject to an agreement containing provisions substantially the same as those of this subsection 9.19, to (i) any assignee or pledgee of or Participant in, or any prospective assignee or pledgee of or Participant in, any of its rights or obligations under this Agreement or (ii) any actual or prospective counterparty (or its advisors) to any swap or derivative transaction relating to the Borrowers and their obligations, (g) with the consent of the Borrowers or (h) to the extent such Information (x) becomes publicly available other than as a result of a breach of this subsection or (y) becomes available to the Administrative Agent or any Lender on a nonconfidential basis from a source other than a Borrower or any of its Subsidiaries or Affiliates.

For purposes of this subsection 9.19, "**Information**" means all written information received from a Borrower or any of its Subsidiaries or Affiliates relating to a Borrower or any of its Subsidiaries or any of their respective businesses, other than any such information that is available to the Administrative Agent or any Lender on a nonconfidential basis prior to disclosure by a Borrower, which to the extent received on or after the date hereof, is identified as confidential by the Borrowers. Any Person required to maintain the confidentiality of Information as provided in this subsection 9.19 shall be considered to have complied with its obligation to do so if such Person has exercised the same degree of care to maintain the

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

confidentiality of such Information as such Person would accord to its own confidential information.

## 9.20    Borrowers' Responsibility For Compliance With Environmental Laws.

Nothing in this agreement is intended, or shall be deemed, to relieve the Borrowers or any Subsidiary of their obligations under Environmental Laws, or to condone or encourage any disregard of such obligations, or to make any Agent or any of the Lenders in any way responsible under Environmental Laws or otherwise for the ownership or operation of the Real Property Assets. The Borrowers shall retain all responsibility for compliance with Environmental Laws, including proper management of all Hazardous Materials.

## 9.21    Joint and Several Liability.

The Borrowers shall be jointly and severally liable for all amounts due to the Agents and Lenders under this Agreement and the other Loan Documents, regardless of which Borrower actually receives the proceeds of the Loans or the manner in which any Agent or Lender accounts for the Loans on its books and records. Each Borrower's Obligations, and each Borrower's Obligations arising as a result of the joint and several liabilities of the Borrowers hereunder, shall be separate and distinct obligations, but all such Obligations shall be primary obligations of each Borrower. Each Borrower's Obligations arising as a result of the joint and several liability of the Borrowers hereunder shall, to the fullest extent permitted by law, be continuing, absolute and unconditional irrespective of (a) the validity, regularity or enforceability, avoidance or subordination of the Obligations of the other Borrowers or of any Loan Document evidencing all or any part of the Obligations of the other Borrowers, or of any other collateral security therefor or guaranty or right of offset with respect thereto at any time or from time to time held by the Collateral Agent or any other Secured Party, (b) any defense, set-off or counterclaim (other than a defense of payment or performance) which may at any time be available to or be asserted by any of the other Borrowers against the Collateral Agent or any other Secured Party (c) the absence of notice of the creation, renewal, extension or accrual of any of the Obligations, (d) the absence of any attempt to collect the Obligations from the other Borrowers or any other security therefor, or the absence of any other action to enforce the same or to exercise any right of offset, (c) the waiver, consent, extension, forbearance or granting of any indulgence by the Agents and the Requisite Lenders with respect to any provision of any instrument evidencing the Obligations of the other Borrowers, or any part thereof, or any other agreement now or hereafter executed by the other Borrowers and delivered to the Agents and the Lenders, (f) the failure by Collateral Agent to take any steps to perfect and maintain its security interest in, or to preserve its rights to, any security or Collateral of the other Borrowers, (g) any election in any proceeding instituted under the Bankruptcy Code of the application of Section-1111(b)(2) of the Bankruptcy Code, (h) any borrowing or grant of a security interest by the other Borrowers, as debtors-in-possession under Section 364 of the Bankruptcy Code, (i) the disallowance of all or any portion of any claim by any Agent or Lender for the repayment of the Obligations of the other Borrowers under Section 502 of the Bankruptcy Code or (j) any other circumstances whatsoever (with or without notice to or knowledge of any of the Borrowers) which might constitute a legal or equitable discharge or defense of the other Borrowers in bankruptcy or in any other instance. With respect

to each Borrower's Obligations arising as a result of the joint and several liability of the Borrowers under this Agreement and the other Loan Documents, each Borrower waives diligence, presentment, protest, demand for payment and notice of default or nonpayment to or upon any of the Borrowers with respect to the Obligations. With respect to each Borrower's Obligations arising as a result of the joint and several liability of the Borrowers under this Agreement and the other Loan Documents, each Borrower waives, until the Obligations shall have been paid in full in immediately available funds and the Agreement shall have been terminated, any right to enforce any right of subrogation or any remedy which any Agent or Lender now has or may hereafter have against such Borrower, any endorser or any guarantor of all or any part of the Obligations, and any benefit of, and any right to participate in, any security or collateral given to any Agent or Lender to secure payment of the Obligations or any other liability of the Borrowers to any Agent or Lender. Upon and during the continuance of any Event of Default, the Agents or any other Secured Party may proceed directly and at once, without notice, to pursue its rights and remedies against any Borrower to collect and recover the full amount, or any portion of the Obligations, without first proceeding against, or making a similar demand on, any other Borrower or any other Person, or against any security or collateral for the Obligations (or exercising any right of offset with respect thereto), and any failure by the Agents or any other Secured Party to make a similar demand on, or to pursue its rights and remedies or to collect and recover the Obligations from, any other Borrower or any other Person, or against any security or collateral for the Obligations or right of offset, shall not relieve any Borrower of any obligation or liability hereunder, and shall not impair or effect the rights and remedies, whether express, implied or available as a matter of law, of the Agents or any other Secured Party against any Borrower. Without limiting the generality of any other waiver contained herein, each Borrower waives any right to require any Agent or any other Secured Party to: (i) proceed against any other Borrower or any other Person; (ii) proceed against or exhaust any collateral including, without limitation, the Collateral; or (iii) pursue any other right or remedy for such Borrower's benefit. Each Borrower agrees that each Agent and each other Secured Party may proceed against such Borrower with respect to the Obligations without taking any actions against any other Borrower or any other Person and without proceeding against or exhausting any collateral including, without limitation, the Collateral. Each Borrower agrees that each of the Agents and the other Secured Parties may unqualifiedly exercise in its sole discretion any or all rights and remedies available to it against any other Borrower without impairing such Agent's or such other Secured Party's rights and remedies in enforcing the Loan Documents, under which such Borrower's liabilities shall remain independent and unconditional. Each Borrower agrees and acknowledges that any Agent's or any other Secured Party's exercise of certain of such rights or remedies may affect or eliminate such Borrower's right of subrogation or recovery against any other Borrower and that such Borrower may incur a partially or totally nonreimbursable liability in performing under the Loan Documents. Without limiting the generality of any other waivers hereunder, each Borrower expressly waives any statutory or other right that such Borrower might otherwise have to: (A) limit such Borrower's liability after a nonjudicial foreclosure sale to the difference between the Obligations and the fair market value of the property or interests sold at such nonjudicial foreclosure sale or to any other extent; (B) otherwise limit any Agent's or any other Secured Party's right to recover a deficiency judgment after any foreclosure sale; or (C) require any Agent or any other Secured Party to

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

exhaust its collateral before any Agent or any Secured Party may obtain a personal judgment for any deficiency. Without limiting the generality of any other waiver contained herein, each Borrower waives all rights and defenses that such Borrower may have because any other Borrower's Obligations are (or may be) secured by real property. This means, among other things, (i) any Agent or any other Secured Party may collect from such Borrower without first foreclosing on any real or personal property collateral pledged by any other Borrower, and (ii) if any Agent forecloses on any real property collateral pledged by any Borrower, (A) the amount of the Obligations may be reduced only by that portion of the price for which that collateral is sold at a foreclosure sale, even if the collateral is worth more than the sale price and (B) the Agents and the other Secured Parties may collect from such Borrower even if the Agents, by foreclosing on the real property collateral, has destroyed any right such Borrower may have to collect from any other Borrower. The foregoing waiver is an unconditional and irrevocable waiver of any rights and defenses any Borrower may have because any other Borrower's Obligations are secured by real property. Without limiting the generality of any other waiver contained herein, each Borrower waives all rights and defenses arising out of an election of remedies by any Agent or any other Secured Party, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for any Obligation has destroyed such Borrower's rights of subrogation and reimbursement against any other Borrower by operation of applicable law or otherwise. Without limiting the generality of the foregoing, each Borrower expressly and irrevocably waives, to the fullest extent permitted by applicable law, any and all rights and defenses including, without limitation, any rights of indemnification and contribution which might otherwise be available to such Borrower under applicable law or otherwise; provided that notwithstanding the foregoing, any such rights of indemnification and contribution shall be waived only until the Obligations shall have been paid in full in immediately available funds and the Agreement shall have been terminated. Each Borrower consents and agrees that the Agents shall be under no obligation to marshal any assets in favor of such Borrower or against or in payment of any or all of the Obligations. **NOTWITHSTANDING ANYTHING IN ANY OF THE LOAN DOCUMENTS TO THE CONTRARY, NO PARTNER, MEMBER, SHAREHOLDER OR OTHER BENEFICIAL OWNER OF THE BORROWERS (OTHER THAN ANY LOAN PARTY) SHALL BE LIABLE FOR THE PAYMENT OR PERFORMANCE OF THE OBLIGATIONS.**

**9.22    Counterparts; Integration; Effectiveness; Electronic Execution.**

**A.    Counterparts; Integration; Effectiveness.** This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Agreement and any separate letter agreements with respect to fees payable to [_____] and the Administrative Agent constitute the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof. This Agreement shall become effective when it shall have been executed by the Administrative Agent and when the Administrative Agent shall have received counterparts hereof which, when taken together, bear the signatures of each of the other parties hereto required pursuant to Section 3, and thereafter shall be binding upon and inure

120

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

to the benefit of the parties hereto and their respective successors and assigns. Delivery of an executed counterpart of a signature page of this Agreement or any document or instrument delivered in connection herewith by telecopy shall be effective as delivery of a manually executed counterpart of this Agreement or such other document or instrument, as applicable.

**B.     Electronic Execution of Assignments.**   The words "execution," "signed," "signature," and words of like import in any Assignment Agreement shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

### 9.23   USA Patriot Act Notification.

The following notification is provided to the Borrowers pursuant to Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318:

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT.

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each Person or entity that opens an account, including any deposit account, treasury management account, loan, other extension of credit, or other financial services product.

What this means for each Borrower:  When a Borrower opens an account, if the Borrower is an individual, the Administrative Agent and the Lenders will ask for the Borrower's name, residential address, tax identification number, date of birth, and other information that will allow the Administrative Agent and the Lenders to identify the Borrower, and, if the Borrower is not an individual, the Administrative Agent and the Lenders will ask for the Borrower's name, tax identification number, business address, and other information that will allow the Administrative Agent and the Lenders to identify the Borrower. The Administrative Agent and the Lenders may also ask, if the Borrower is an individual, to see the Borrower's driver's license or other identifying documents, and, if the Borrower is not an individual, to see the Borrower's legal Organizational Documents or other identifying documents.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**PRELIMINARY DRAFT**
**SUBJECT TO MODIFICATION**
**FINAL VERSION MUST BE ACCEPTABLE**
**TO FIRST LIEN STEERING COMMITTEE**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

**THE BORROWERS:**                  [NEWCO]

By: _____
    Name:
    Title:

**THE RHODES COMPANIES, LLC**

By: _____
    Name:
    Title:

**RHODES RANCH GENERAL PARTNERSHIP**

By: _____
    Name:
    Title:

**RHODES RANCH GOLF AND COUNTRY CLUB, LLC**

By: _____
    Name:
    Title:

**PRELIMINARY DRAFT**
**SUBJECT TO MODIFICATION**
**FINAL VERSION MUST BE ACCEPTABLE**
**TO FIRST LIEN STEERING COMMITTEE**

**HERITAGE LAND COMPANY, LLC**

By: _____
    Name:
    Title:

**TICK, LP**

By: _____
    Name:
    Title:

**GLYNDA, LP**

By: _____
    Name:
    Title:

**CHALKLINE, LP**

By: _____
    Name:
    Title:

**BATCAVE, LP**

By: _____
    Name:
    Title:

**JACKKNIFE, LP**

By: _____
    Name:
    Title:

**WALLBOARD, LP**

By: _____
    Name:
    Title:

**OVERFLOW, LP**

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

By: _____
      Name:
      Title:

**TUSCANY ACQUISITIONS, LLC**

By: _____
      Name:
      Title:

**TUSCANY ACQUISITIONS II, LLC**

By: _____
      Name:
      Title:

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

**TUSCANY ACQUISITIONS III, LLC**

By: _____
    Name:
    Title:


**TUSCANY ACQUISITIONS IV, LLC**

By: _____
    Name:
    Title:

**RHODES DESIGN AND DEVELOPMENT
CORPORATION**

By: _____
    Name:
    Title:


**C&J HOLDINGS INC.**

By: _____
    Name:
    Title:

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

**RHODES REALTY, INC.**

By: _____
    Name:
    Title:

**ELKHORN INVESTMENTS, INC.**

By: _____
    Name:
    Title:

**BRAVO INC.**

By: _____
    Name:
    Title:

**RHODES HOMES ARIZONA, LLC**

By: _____
    Name:
    Title:

**TRIBES HOLDINGS LLC**

By: _____
    Name:
    Title:

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

**PINNACLE GRADING, LLC**

By: _____
    Name:
    Title:

**TUSCANY GOLF COUNTRY CLUB, LLC**

By: _____
    Name:
    Title:

**GUNG-HO CONCRETE, LLC**

By: _____
    Name:
    Title:

**GERONIMO PLUMBING, LLC**

By: _____
    Name:
    Title:

**RHODES ARIZONA PROPERTIES,    LLC**

By: _____
    Name:
    Title:

**JARUPA LLC**

By: _____
    Name:
    Title:

**PARCEL 20 LLC**

By: _____
    Name:
    Title:

**SIX FEATHERS HOLDINGS, LLC**

By: _____

[First Lien Credit Agreement]

6

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

Name:
Title:

## ELKHORN PARTNERS

By: _____
    Name:
    Title:

## APACHE FRAMING, LLC

By: _____
    Name:
    Title:

PRELIMINARY DRAFT
SUBJECT TO MODIFICATION
FINAL VERSION MUST BE ACCEPTABLE
TO FIRST LIEN STEERING COMMITTEE

**AGENTS AND LENDERS:**                [_____]

By:    _____
       Name:
       Title:

By:    _____
       Name:
       Title:

## Exhibit L

**Schedule of Causes of Action**

## NON-EXCLUSIVE LIST OF RETAINED CAUSES OF ACTION

---

ARTICLE IV(P) OF THE PLAN PRESERVES **ALL** CAUSES OF ACTION NOT EXPRESSLY WAIVED, RELINQUISHED, EXCULPATED, RELEASED, COMPROMISED, OR SETTLED IN THE PLAN OR A BANKRUPTCY COURT ORDER. THE ATTACHED LIST IS A NONEXCLUSIVE LIST OF ENTITIES AGAINST WHOM THE DEBTORS, OR THE LITIGATION TRUST OR REORGANIZED DEBTORS, AS APPLICABLE, SHALL RETAIN CAUSES OF ACTION.  FAILURE TO INCLUDE AN ENTITY ON THE ATTACHED LIST SHALL NOT CONSTITUTE A RELEASE OF SUCH ENTITY AND SHALL NOT INDICATE THAT CAUSES OF ACTION AGAINST SUCH ENTITY HAVE NOT BEEN RETAINED.

THE DEBTORS AND THE LITIGATION TRUST OR REORGANIZED DEBTORS, AS APPLICABLE, RETAIN ALL CAUSES OF ACTION OF ANY KIND WHATSOEVER AGAINST ALL ENTITIES NOT EXPRESSLY RELEASED PURSUANT TO THE PLAN OR A FINAL ORDER IN THEIR CAPACITIES AS SUCH.

FOR AVOIDANCE OF DOUBT, UNLESS EXPRESSLY RELEASED PURSUANT TO THE PLAN OR A FINAL ORDER <u>IN THEIR CAPACITIES AS SUCH</u>, ENTITIES NOT LISTED ON THE ATTACHED LIST ARE NOT RELEASED AND THE DEBTORS AND THE LITIGATION RUST OR REORGANIZED DEBTORS, AS APPLICABLE, EXPRESSLY RETAIN ALL CAUSES OF ACTION OF ANY KIND WHATSOEVER AGAINST ALL SUCH ENTITIES, INCLUDING <u>WITHOUT LIMITATION</u> THE CATEGORIES OF CAUSES OF ACTION SET FORTH BELOW.

FAILURE TO ATTRIBUTE ANY SPECIFIC CAUSE OF ACTION TO A PARTICULAR ENTITY ON THE ATTACHED LIST SHALL NOT UNDER ANY CIRCUMSTANCE BE INTERPRETED TO MEAN THAT SUCH CAUSE OF ACTION IS NOT RETAINED AGAINST SUCH ENTITY.  ALL POSSIBLE CAUSES OF ACTION, INCLUDING CAUSES OF ACTION NOT LISTED BELOW, ARE RETAINED AGAINST ALL ENTITIES NOT EXPRESSLY RELEASED PURSUANT TO THE PLAN OR A FINAL ORDER IN THEIR CAPACITIES AS SUCH.

IN THE EVENT OF ANY APPARENT INCONSISTENCY BETWEEN THE RELEASES OF ENTITIES IN THEIR CAPACITIES AS SUCH PURSUANT TO THE PLAN OR A BANKRUPTCY COURT ORDER AND THE ATTACHED LIST, SUCH RELEASES GRANTED PURSUANT TO THE PLAN OR FINAL ORDER SHALL GOVERN.

<u>Categories</u> (in each case except as otherwise provided in the Plan):

1.   Causes of Action against vendors, suppliers of goods or services, or other parties for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities or setoff;

2.    Causes of Action against utilities, vendors, suppliers of services or goods, or other parties for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations;

3.    Causes of Action against vendors, suppliers of goods or services, or other parties for failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors before the assumption of rejection of the subject contracts;

4.    Causes of Action relating to any liens, including mechanic's, artisan's, materialmen's, possessory or statutory liens filed by any contractor or third party against the Debtors' estates;

5.    Claims related to or arising from any warranty or indemnification against any supplier or subcontractor or such supplier or subcontractor's insurance carriers;

6.    Causes of Action against any current or former director, officer, employee or agent of the Debtors arising out of employment related matters, except the Released Parties for the Claims released against them under the Plan;

7.    Causes of Action against insurance carriers, reinsurance carriers, underwriters or surety bond issuers relating to coverage, indemnity, contribution, reimbursement or other matters;

8.    Counterclaims and defenses relating to notes, bonds or other contract obligations;

9.    Counterclaims in connection with any warranty claims or deposit return claims asserted against any of the Debtors;

10.    Causes of Action against local, state, federal and foreign taxing authorities for refunds of overpayments or other payments;

11.    Causes of Action against attorneys, accountants, consultants or other professional service providers relating to services rendered, except the Released Parties for the Claims released against them under the Plan;

12.    Contract, tort or equitable Causes of Action that may exist or subsequently arise;

13.    Causes of Action of the Debtors arising under section 362 of the Bankruptcy Code;

14.    Equitable subordination Causes of Action arising under section 510 of the Bankruptcy Code or other applicable law;

15.    Turnover Causes of Action arising under section 542 or 543 of the Bankruptcy Code;

16.   Causes of Action arising under chapter 5 of the Bankruptcy Code, including preferences under section 547 of the Bankruptcy Code, except as set forth in the Plan;

17.   Causes of Action for unfair competition, interference with contract or potential business advantage, conversion, infringement of intellectual property or other business tort claims.

CURRENT AND POTENTIAL THIRD-PARTY CLAIMS

| Debtor Entity | Case Caption, if applicable | Claim Against | Description of Claim |
|---|---|---|---|
| Rhodes Homes Arizona, LLC | Rhodes Homes Arizona, LLC v Stanley Consultants, Inc; Ken Yamada; Steve Hagel and Jane Doe Hagel; Dennis Brown and Jane Doe Brown; Denis Atwood and Jane Doe Atwood; David Frohnen and Jane Doe Frohen | Stanley Consultants | Breach of contract, defective design, professional negligence and other claims |
| Rhodes Design and Development/Rhodes Homes | GC Wallace Inc. v Rhodes Design and Development Corp; O'Neil Construction Co of California | GC Wallace Inc | Breach of contract, defective design, professional negligence and other claims |
| Pinnacle Grading, LLC | | Sunland Asphalt | Dispute relating to amounts due under contract |
| Rhodes Design and Development/Rhodes Homes | | Commerce Associates, LLC; Isaac Building and Design. | Breach of contract--unfinished common areas, mechanics liens, defective workmanship, claims under the Purchase Agreement and Grant of Options between Commerce Associates, LLC and Rhodes Design and Development Corporation dated November 14, 2003 and related agreements |
| Rhodes Design and Development/Rhodes Homes | | Southwest Iron | Breach of contract, defective workmanship |
| Rhodes Design and Development/Rhodes Homes | | Commerce Associates, LLC; Integrity Masonry; Isaac Building and Design | Third-party work not paid for resulting in liens on debtor's property |
| Rhodes Design and Development/Rhodes Homes | | Commerce Associates, LLC; Isaac Building and Design; Performance Ready Mix | Third-party work not paid for resulting in liens on debtor's property |
| Rhodes Design and Development/Rhodes Homes | | Commerce Associates, LLC; Isaac Building and Design; MS Concrete | Third-party work not paid for resulting in liens on debtor's property |
| Rhodes Design and Development/Rhodes Homes | | Triton Grading | Debtor's subcontractor failed to pay Las Vegas Paving resulting in liens on debtor's property |
| Rhodes Design and Development/Rhodes Homes | | Direct Paving | Debtor's subcontractor failed to pay Wilmar Contracting resulting in liens on debtor's property |
| Rhodes Design and Development/Rhodes Homes | | Alternative Lawns | Defective workmanship--tot lot, Rhodes Ranch parcel 14 |