1               UNITED STATES BANKRUPTCY COURT

2                     DISTRICT OF NEVADA

3                     LAS VEGAS, NEVADA

4    In re:  THE RHODES COMPANIES,    )  E-Filed:  01/25/10
     LLC,                            )
5                                    )
                Debtor.              )  Case No.
6                                    )  BK-S-09-14814-LBR
     _____)  Chapter 11
7

8

9

10

11              TRANSCRIPT OF PROCEEDINGS
                           OF
12              HEARING RE: MOTIONS
                        VOLUME 1
13         BEFORE THE HONORABLE LINDA B. RIEGLE
              UNITED STATES BANKRUPTCY JUDGE
14
              Thursday, January 14, 2010
15
                     9:00 a.m.
16

17

18

19

20

21

22

23    Court Recorder:       Liberty Ringor

24

25    Proceedings recorded by electronic sound recording;
      transcript produced by transcription service.

2

```
1    APPEARANCES:

2    For the Debtor:          JAMES I. STANG, ESQ.
                              SHIRLEY S. CHO, ESQ.
3                             Pachulski, Stang, Ziehl & Jones
                              10100 Santa Monica Boulevard
4                             Eleventh Floor
                              Los Angeles, California 90067
5
                              ZACHARIAH LARSON, ESQ.
6                             Larson & Stephens, LLC
                              810 South Casino Center Boulevard
7                             Suite 104
                              Las Vegas, Nevada 89101
8
     For the First Lien       PHILIP C. DUBLIN, ESQ.
9    Steering Committee:      MEREDITH A. LAHAIE, ESQ.
                              Akin, Gump, Strauss, Hauer & Feld, LLP
10                            One Bryant Park
                              New York, New York 10036
11
                              NILE LEATHAM, ESQ.
12                            Kolesar & Leatham, Chtd.
                              3320 West Sahara Avenue
13                            Suite 380
                              Las Vegas, Nevada 89102
14
     For James Rhodes:        BRETT A. AXELROD, ESQ.
15                            Greenberg Traurig, LLP
                              3773 Howard Hughes Parkway
16                            Suite 500
                              Las Vegas, Nevada 89169
17
     For the Unsecured        J. THOMAS BECKETT, ESQ.
18   Creditors Committee:     Parsons, Behle & Latimer, PLC
                              201 South Main Street
19                            Suite 1800
                              Salt Lake City, Utah 84111
20
     For Credit Suisse,       JAMES MacROBBIE, ESQ.
21   Cayman Islands Branch:   Sylvester & Polednak, Ltd.
                              7371 Prairie Falcon Road
22                            Suite 120
                              Las Vegas, Nevada 89128
23

24

25
```

3

```
1    APPEARANCES (Cont.):

2    For Credit Suisse,      RAMON M. NAGUIAT, ESQ.
     Cayman Islands Branch:  Skadden, Arps, Slate, Meagher
3                              & Flom, LLP
                             300 South Grand Avenue
4                            Suite 3400
                             Los Angeles, California 90071
5
     For Stanley             JANIECE S. MARSHALL, ESQ.
6    Consultants, Inc.:      Anderson, McPharlin & Conners, LLP
                             777 North Rainbow Boulevard
7                            Suite 145
                             Las Vegas, Nevada 89107
8
     For the United States   VIRGINIA CRONAN LOWE, ESQ.
9    Internal Revenue        Department of Justice
     Service:                Tax Division
10                           Ben Franklin Station
                             P.O. Box 683
11                           Washington, D.C. 20044
                             (Telephonic)
12
     Also Present:           JAMES RHODES
13                           Creditor

14                           BRIAN OSBORNE
                             Solicitation Agent
15                           (Telephonic)

16

17

18

19

20

21

22

23

24

25
```

4

```
1              (Court convened at 09:05:53 a.m.)

2                  THE CLERK:  All rise.

3          (Colloquy not on the record.)

4                  THE CLERK:  Bankruptcy court is now in session.

5          (Colloquy not on the record.)

6                  THE COURT:  Excuse me.

7          Be seated.

8          (Colloquy not on the record.)

9                  THE COURT:  All right.  Rhodes Companies.

10         Appearances, please.

11         (Colloquy not on the record.)

12                 MR. STANG:  Good morning, your Honor.  James Stang

13     and Shirley Cho, Pachulski, Stang, Ziehl & Jones, appearing for

14     the debtors, and Mr. Rhodes is in court today.

15                 MR. DUBLIN:  Good morning, your Honor.  Phil Dublin

16     and Meredith Lahaie from Akin, Gump, Strauss, Hauer & Feld on

17     behalf of the First Lien Steering Committee.

18                 MR. LEATHAM:  Good morning, your Honor.  Nile Leatham

19     also for the First Lien Steering Committee.

20                 MR. LARSON:  Good morning, your Honor.  Zach Larson,

21     local counsel on behalf of the Rhodes Companies.

22                 MR. AXELROD:  Good morning, your Honor.

23     Brett Axelrod, Greenberg Traurig, for Mr. Rhodes.

24                 MR. BECKETT:  Good morning, your Honor.  Tom Beckett,

25     Parsons, Behle & Latimer in Salt Lake, for the
```

1    Unsecured Creditors Committee.

2            MR. MacROBBIE:  Good morning, your Honor.

3    James MacRobbie of Sylvester & Polednak and Ray Naguiat of

4    Skadden, Arps, Slate, Meagher & Flom on behalf of the

5    Credit Suisse, Cayman Islands Branch as agent for the first

6    lien lenders.

7            THE COURT:  Okay.

8        (Colloquy not on the record.)

9            THE COURT:  All right.  Before we start on the

10   agenda, as far as the planning goes, I think we have an

11   insurmountable problem that will prevent us from going forward

12   today.  The exhibits were not attached to the disclosure

13   statement on file.

14           MR. DUBLIN:  Phil Dublin, Akin, Gump, for the

15   First Lien Steering Committee.  We filed all of the exhibits to

16   the disclosure statement, your Honor.

17           THE COURT:  When?

18           MR. DUBLIN:  I'm not sure --

19           THE COURT:  They weren't attached to the disclosure.

20   And if I'm wrong, go on the docket sheet and show me.

21       (Colloquy not on the record.)

22           MR. DUBLIN:  Your Honor, following the

23   disclosure-statement hearing, we had a couple of minor

24   modifications that were made to the disclosure statement, so

25   there were no changes to the previously-filed exhibits which

1    were filed with the prior version of the disclosure statement.

2        All of the exhibits were served with the disclosure

3    statement when we sent it out for voting.  So to ease the

4    burden on the clerk and on the docket, we did not refile all of

5    the documents that had previously been filed.

6            THE COURT:  Shouldn't you have referenced that in the

7    amended disclosure statement?

8            MR. DUBLIN:  Well, they are referenced as exhibits to

9    the disclosure statement that was served on all of the voting

10   parties, so all of the exhibits were actually attached to the

11   disclosure statement when it was served --

12           THE COURT:  All right.

13           MR. DUBLIN:  -- for voting, so it was included with

14   all of this.  All of the exhibits were included with the

15   solicitation materials, so I didn't think that --

16           THE COURT:  All right.

17           MR. DUBLIN:  -- at that point it was (indiscernible).

18       All of the creditors entitled to vote on the plan received

19   the disclosure statement, received the plan, received all of

20   the exhibits.  That there wasn't anything necessarily to

21   annotate on what was actually circulated since everything was

22   there.

23           THE COURT:  Well, the problem is you say in your

24   disclosure statement to look on Omni's Web site.  And when you

25   go to Omni's Web site, you look at the disclosure statement

1    that was the last disclosure statement approved, and there's no

2    exhibits attached, and it says they are.

3              MR. DUBLIN:  Well, your Honor, they are.  They were

4    on file with the disclosure statement that was filed, but I

5    don't have the exact date.  Probably, a week before.

6              THE COURT:  But it says they're attached.  That's

7    what your disclosure statement says.

8              MR. DUBLIN:  I understand, your Honor.  They were

9    attached to -- when people received their copies of the

10   disclosure statement, they were attached.  They had copies of

11   the exhibits with the solicitation materials.

12       So everything that went out to those creditors voting on

13   the plan, they had all of the exhibits that say they are

14   attached.  They were attached when that document went out.

15             THE COURT:  Okay.

16             MR. DUBLIN:  And Brian Osborne who was the

17   solicitation agent is on the phone and can verify that,

18   your Honor.

19             MR. OSBORNE:  This is Mr. Osborne.  Yes.  That I can

20   verify that they were served with the declaration and with the

21   exhibits that were attached to the disclosure statement.

22             THE COURT:  All right.  Now, where would I find those

23   exhibits?

24             MR. DUBLIN:  They're all on the docket.

25             THE COURT:  I want to know the docket entry --

1          MR. DUBLIN:  Okay.

2          THE COURT:  -- so that I can find them, and so I can

3    assess that other people were able to find them, too.

4          MR. DUBLIN:  Okay.  Can I have a moment --

5          THE COURT:  Yes.

6          MR. DUBLIN:  -- your Honor?

7          THE COURT:  Please.

8          MR. DUBLIN:  Thank you.

9       (Pause at 09:10:19 a.m.)

10      (Colloquy not on the record.)

11      (Pause concluded at 09:10:47 a.m.)

12         THE COURT:  They are not attached to the second

13    amended which was 774.

14      (Colloquy not on the record.)

15         MR. DUBLIN:  Your Honor, it is likely with 713, but

16    we are just confirming.

17      (Pause at 09:11:06 a.m.)

18      (Colloquy not on the record.)

19      (Pause concluded at 09:12:08 a.m.)

20         MR. DUBLIN:  Your Honor, while we're confirming that

21    information, would you like to go forward with the

22    claims-objections portions of the dockets --

23         THE COURT:  No.

24         MR. DUBLIN:  -- so that --

25         THE COURT:  Let's --

1          MR. DUBLIN:  Okay.  I'm sorry.

2          THE COURT:  But thank you.  Now, there are exhibits

3   attached to that, but I have no way of knowing if those were

4   the final exhibits.

5          MR. DUBLIN:  Those are the exhibits, your Honor --

6          THE COURT:  All right.

7          MR. DUBLIN:  -- I can represent to the Court.

8          THE COURT:  So no names were added.  Now, let's see.

9   When we did the first hearing -- let's see -- I think they were

10  blank.  What did I say, 713?

11      (Colloquy not on the record.)

12          THE COURT:  They're certainly not in a very

13  user-friendly format because you can't go to one exhibit.

14      (Colloquy not on the record.)

15          THE COURT:  And it appears -- well, was there

16  anything attached to 713?  Who's looking?

17          MR. DUBLIN:  I --

18          THE COURT:  Is anybody looking?

19          MR. DUBLIN:  I asked my colleague, Ms. Lahaie, to go

20  back out outside the courtroom to make a phone call to confirm

21  that, your Honor.

22          THE COURT:  Don't any of you have your wireless here?

23          MR. DUBLIN:  We're not allowed to turn them on in the

24  courtroom --

25          THE COURT:  Yeah, you are.

1           MR. DUBLIN:  -- is all.

2           THE COURT:  Nobody's ever said you couldn't.

3           MR. DUBLIN:  I had my --

4           THE COURT:  Did you ever tell them they couldn't turn

5    on their wireless?

6           THE CLERK:  Tell them what?

7           THE COURT:  Their wireless computers?

8           MR. DUBLIN:  Oh, wireless computer.

9           THE CLERK:  No.

10           MR. DUBLIN:  Oh, I'm sorry.

11           THE CLERK:  (Indiscernible).

12           THE COURT:  Yeah.

13           MR. DUBLIN:  Okay.  Excuse me.

14           THE CLERK:  (Indiscernible).

15        (Colloquy not on the record.)

16           THE COURT:  Yeah.  Right.  You can't have your phones

17    on, but you can have your computer on.  I mean, I do see a

18    number of exhibits as No. 713.

19        But, you know, you did your later disclosure statements

20    reporting to have them attached, and they never were attached,

21    and there's no reference to them.  It says without exhibits.

22           MR. DUBLIN:  Right.  We apologize, your Honor.  In

23    that there were no changes to the exhibits, we filed it without

24    exhibits, but then, again, when we solicited we included all of

25    the exhibits.

```
1            THE COURT:  Well, when you did your final order

2    approving, you should include your exhibits there, the 798, and

3    it doesn't say without exhibits on the one you filed

4    December 1.

5        And your document refers to all these exhibits.  So if I

6    was a creditor and wanted to go on-line and look at these

7    exhibits, where would I know to look?

8            MR. DUBLIN:  I understand the concern, your Honor.

9    People would -- or, obviously, all of our contact information

10   and the claims agent's contact information are in the

11   disclosure statement.

12       And if all creditors were entitled to vote on the plan,

13   they received all of the exhibits themselves.  They were

14   actually delivered to them in connection with their voting

15   materials.

16           THE COURT:  Okay.

17           MR. DUBLIN:  So there was no need --

18           THE COURT:  So --

19           MR. DUBLIN:  -- for that ever to go onto the docket.

20           THE COURT:  The certificate of service on file

21   doesn't say which document was served I don't believe.

22           MR. DUBLIN:  Your Honor, the document that was served

23   is 798.  That's the second amended modified disclosure

24   statement.

25       And then all of the exhibits to that document, the second
```

1    amended modified plan, the credit agreement, the operating

2    agreement, the going-concern analysis, the liquidation

3    analysis, the -- and I'm just rattling off.

4        All of those documents were included with that disclosure

5    statement when it was served on creditors with their

6    solicitation packages, the disclosure-statement order, all of

7    the applicable ballots --

8            THE COURT:  Well, I understand that.

9            MR. DUBLIN:  -- and notices.

10           THE COURT:  But it's the problem with the exhibits,

11   and where does the certificate say -- and it may.  Where does

12   the certificate say that it served all the exhibits?

13           MR. DUBLIN:  It may not specifically say that the

14   exhibits were included, your Honor, but I'm representing to the

15   Court that they were included.

16           THE COURT:  But did you mail them?

17           MR. DUBLIN:  No.  Omni did, and Mr. Osborne --

18           THE COURT:  So you don't know.

19           MR. DUBLIN:  -- just --

20           THE COURT:  Did you ever look to see whether anybody

21   got mail?

22           MR. DUBLIN:  I spoke to Mr. Osborne --

23           THE COURT:  Did you --

24           MR. DUBLIN:  -- who is our --

25           THE COURT:  -- ever look --

```
 1              MR. DUBLIN:  Well, I --
 2              THE COURT:  -- at --
 3              MR. DUBLIN:  I didn't --
 4              THE COURT:  -- any package --
 5              MR. DUBLIN:  I --
 6              THE COURT:  -- to see what --
 7              MR. DUBLIN:  I did not --
 8              THE COURT:  -- was included?
 9              MR. DUBLIN:  -- your Honor, as we're located in
10   New York.
11              THE COURT:  Well, then how can you tell me --
12              MR. DUBLIN:  Because Mr. Osborne has certified that
13   he has done so.
14              THE COURT:  Okay.
15              MR. DUBLIN:  And he is representing to the Court --
16              THE COURT:  But you --
17              MR. DUBLIN:  -- as well.
18              THE COURT:  -- can't tell me that.
19              MR. DUBLIN:  That is correct, your Honor.  Based on
20   representations made to me, I'm advising you that it was --
21              THE COURT:  I think --
22              MR. DUBLIN:  It was included.
23              THE COURT:  -- the word "hearsay" is what comes to
24   mind.
25              MR. DUBLIN:  Well, and Mr. Osborne again is on the
```

1    phone and can --

2                THE COURT:  Okay.

3                MR. DUBLIN:  -- clarify that, your Honor.

4                THE COURT:  So, Mr. Osborne, what evidence do I have

5    that the exhibits were served?

6                MR. OSBORNE:  Your Honor, the only evidence on file

7    is the certificate of service.  That, however, I can put into

8    the record that the documents -- the disclosure statement was

9    served with the exhibits.

10    I do have the declarant of the affidavit of service here

11    with me, and she could there testify to and also put into the

12    record that the disclosure statement was served with all of the

13    exhibits attached.

14                THE COURT:  All right.  Well, you're going to have to

15    amend your certificate, and it says it was done on a CD-ROM

16    format, so do we have the CD-ROM in evidence?

17                MR. OSBORNE:  I'm not sure if the CD -- I'm not sure

18    if the CD-ROM isn't attached, but we will include it as an

19    attachment, and we will hard-file service the document with a

20    CD-ROM.

21                THE COURT:  Okay.  All right.  I'll rely on that

22    declaration, and it better be the case.

23                MR. DUBLIN:  Thank you, your Honor.

24                THE COURT:  All right.  I guess we'll do objections

25    first and then go to the plan.

```
 1              MR. DUBLIN:  I'm sorry.  On the claim objections?

 2              THE COURT:  Yes.

 3              MR. DUBLIN:  Oh, I'll accede the podium to Ms. Cho.

 4        (Colloquy not on the record.)

 5              MS. CHO:  Good morning, your Honor.  Shirley Cho of

 6    the Pachulski, Stang firm for the debtors --

 7              THE COURT:  Okay.

 8              MS. CHO:  -- with respect to matter No. 2 on the

 9    agenda --

10        (Colloquy not on the record.)

11              MS. CHO:  -- the debtor's omnibus objection to the

12    Cabinetech claims.

13              THE COURT:  Um-h'm.

14              MS. CHO:  With respect to these claims, your Honor,

15    we are merely seeking to reclassify the secured claims to

16    general unsecured claims and to disallow a duplicate third

17    claim which combined the previous two claims.

18              THE COURT:  And you've had no response, correct?

19              MS. CHO:  Correct, your Honor.

20              THE COURT:  All right.  So that's sustained.

21              MS. CHO:  Thank you --

22              THE COURT:  Next --

23              MS. CHO:  -- your Honor.

24              THE COURT:  -- we have the Water District claims.

25              MS. CHO:  With respect to these claims, your Honor,
```

1   we're seeking to disallow two duplicate claims and to allow a

2   third claim which contained the invoices for the two duplicate

3   claims, but to reduce that third claim as indicated in the

4   exhibit.

5            THE COURT:  Okay.  And you have not had a response.

6            MS. CHO:  Correct, your Honor.

7            THE COURT:  All right.  So that's sustained.

8            MS. CHO:  Thank you.

9            THE COURT:  And the next is the IRS claims, and I

10  understand that's being continued.

11           MS. CHO:  Correct, your Honor.  We would request that

12  this be continued to the February 18th hearing at 1:30 p.m.

13  This is the trailing objection, your Honor, and we're --

14           THE COURT:  Okay.

15           MS. CHO:  There's really nothing to do except to wait

16  for a return to be processed.

17           THE COURT:  Okay.  So we had a new date on that

18  stipulation, correct?

19           MS. CHO:  Correct.

20           THE COURT:  Okay.  All right.  So it's continued to

21  that date.

22           MS. CHO:  Thank you --

23           THE COURT:  And we'll skip --

24           MS. CHO:  -- your Honor.

25           THE COURT:  -- the compensation for a moment.

1          Now let's go to No. 7.

2               MS. CHO:  What --

3               THE COURT:  These are books and records.

4               MS. CHO:  That's --

5               THE COURT:  The fifth objection to claims.

6               MS. CHO:  Oh, with respect to this claim, your Honor,

7     this was continued with respect to three claims I believe to

8     allow the debtors to supplement the basis for the objection.

9     We did file the supplement on January 4th, and we have received

10    no response.

11              THE COURT:  Well, why is the supplement so late?

12              MS. CHO:  Pardon?

13              THE COURT:  Why is the supplement so late?

14              MS. CHO:  I guess we could continue it out to

15    February 18th to allow the 30 days, but we did file the

16    original objection in November.

17         And we had received no response to the objection in

18    November, so your Honor directed at the December 17th hearing

19    that we file the supplemental.  With the intervening holidays,

20    we did file it immediately after the new year.

21              THE COURT:  Well, let's continue this one out.

22              MS. CHO:  Okay.

23              THE COURT:  Let's go 30 days or the next hearing.

24              THE CLERK:  (Indiscernible) February 18th at 1:30.

25              MS. CHO:  Thank you --

1          THE COURT:  Okay.

2          MS. CHO:  -- your Honor.

3          THE COURT:  Thank you.

4      Then we have the IRS.  This relates to the other one,

5  correct --

6          MS. CHO:  Correct.

7          THE COURT:  -- No. 8?

8          MS. CHO:  The second omnibus.

9          THE COURT:  Okay.

10          MS. CHO:  With respect to this omnibus, your Honor,

11  you had requested that we use today as a status conference.

12  The parties in the meantime had been able to enter into a

13  request for a waiver of filing of discovery plan which was

14  filed at Docket No. 910.

15          THE COURT:  Okay.

16          MS. CHO:  And we would request that February 18th at

17  1:30 be used as the final pretrial conference.  In the

18  meantime, the parties are engaged in discussion to resolve the

19  objection.

20          THE COURT:  So you just want the 18th again as a

21  scheduling conference.

22          MS. CHO:  Correct.

23          THE COURT:  Okay.  All right.

24          MS. LOWE:  I just wanted to let the Court know this

25  is Virginia Lowe from the Department of Justice representing

1    the IRS, and I'm on the telephone.

2              THE COURT:  All right.  Thank you.

3              MS. LOWE:  Thank you.

4              THE COURT:  So February 18th will just be a

5    scheduling conference, correct?

6              MS. LOWE:  Yes, it will.

7              THE COURT:  Do you want us to give you a trial date

8    now or do you think that you'll --

9              MS. LOWE:  Actually, we would like to wait 'til

10   February because by then we'll have narrowed down the issues

11   with particularly to let the Court know how much time we'll

12   need.

13             THE COURT:  Okay.  All right.  Thank you.

14        Then we had the motion to extend time.  We should probably

15   wait 'til we see what we do on plan confirmation.

16        And item No. 10, that follows plan confirmation as well,

17   doesn't it, and 11?  All right.

18        So let's go to plan confirmation.

19        (Colloquy not on the record.)

20             MR. DUBLIN:  Thank you.  Again, for the record,

21   Phil Dublin, Akin, Gump, on behalf of the First Lien Steering

22   Committee.

23             THE COURT:  Let me tell you what my problem is, and I

24   may have you do additional briefing.  And when we had our

25   conference call, I don't think I was aware that the unsecured

1    class had rejected the plan.

2         You have given lip service in your brief as to cram-down

3    because you said no junior class is receiving anything.  But in

4    reality, the Rhodes entities are receiving all the assets of

5    the Arizona entities.

6         Now, since I hadn't been blessed with knowing the

7    organizational chart and the liquidation analysis, since I

8    didn't realize it was the one that was filed three times

9    before, I wasn't really able to do an independent analysis, but

10   I don't understand why this isn't really just a LaSalle

11   problem.

12        In other words, what you've done is you've only given the

13   insiders the opportunity to buy those assets.  Why isn't that a

14   cram-down problem?

15             MR. DUBLIN:  Thank you, your Honor.  The insiders are

16   not -- the nondebtor Rhodes entities are not receiving any

17   consideration in respect of their old equity interests.

18        As you're aware and as we've discussed at a number of

19   hearings, based on the Court-ordered mediation that was held in

20   August in front of Judge Neider that we had in Los Angeles -- I

21   believe the dates were the 17th, 18th, and 25th of August --

22   attendance at attending the mediation were the debtors, the

23   nondebtor Rhodes entities, the creditors committee, the first

24   lien agent, the second lien agent, and the First Lien Steering

25   Committee.

1        We had extensive negotiations in accordance with the

2   Court's order to have a good-faith mediation process to see if

3   we could resolve the issues that we all saw that were

4   preventing this company from emerging from Chapter 11 both

5   primarily of our operational nature in that Mr. Rhodes held so

6   many positions with the debtors that we needed his cooperation

7   in order to emerge from Chapter 11 with respect to qualified

8   employees, bonding issues, homeowners-association issues, all

9   of the issues material to operating a homebuilder in

10  Las Vegas County (sic).

11       Mr. Rhodes was the person that had all or still continues

12  to have all of the necessary licenses and operational authority

13  to operate the debtor entities and their homebuilding

14  operations.

15       The terms of the mediation which we go to in-depth in the

16  disclosure statement which provide for limited consideration

17  going to the nondebtor Rhodes entities in respect of the

18  contributions that they are going to make going forward to the

19  reorganized debtor, so that we can continue to have or hope to

20  have a prosperous homebuilding enterprise in the county are he

21  will be contributing three-and-a-half-million dollars in cash.

22       He will be providing the necessary services, so that we

23  can transition our qualified employees.  He will remain on the

24  bonds that the company needs to continue to operate with

25  respect to building homes in the county.

1          He will assist in connection with the
2     homeowners-association seats and the transfer of those seats to
3     new employees at the reorganized debtors and all of the other
4     items that are set forth in the disclosure statement.
5          That in exchange as you may recall the Arizona assets that
6     he's receiving that are commonly referred to as Pravada among
7     the group that's on this side of the bench is the middle of the
8     doughnut hole at a location in Arizona where there is no --
9     there are a couple of spec homes that have been built or model
10    homes, but there's just not a sprawling metropolis of
11    residential communities.
12         It had a value, a negligible value, as far as the
13    reorganized debtor's ongoing operations as we've set forth in
14    the disclosure statement.
15         And Mr. Rhodes owns all of the surrounding area and the
16    infrastructure for the surrounding area around this little
17    doughnut hole.
18         It was not an asset that the reorganized debtors wanted to
19    retain going forward, viewed it more as a liability with
20    respect to some spec rating that had been performed in the
21    Pravada area as well as some other construction.
22         It was something that we would have likely sought to
23    either abandon or sell to some other party, though there would
24    be no other buyer for the doughnut hole considering that
25    Mr. Rhodes owns everything surrounding it.

1        Therefore, as part of the Court-ordered mediation

2    settlement, among the consideration that we agree to sell to

3    Mr. Rhodes for the three-and-a-half-million dollars of

4    consideration and all of the other benefits he was going to

5    provide to the reorganized debtors on a go-forward basis,

6    including the transfer to the debtors or the reorganized

7    debtors of the Rhodes Ranch Golf Course which is at the center

8    of one of the debtor's two primary communities, Tuscany which

9    has its own golf course and Rhodes Ranch, there was substantial

10   value given by Mr. Rhodes separate and apart from his old

11   equity interest for which he is receiving no recovery

12   whatsoever.

13       Therefore, there is nobody receiving on account of any

14   claim or interest that they hold in the debtors, any recovery

15   on account of those claims or interests junior to a class that

16   has voted not to accept the plan.

17            THE COURT:  Well, but you're only giving them the

18   opportunity to buy that Pravada asset.

19            MR. DUBLIN:  Well, in --

20            THE COURT:  And they're getting their --

21            MR. DUBLIN:  As --

22            THE COURT:  It doesn't make any difference what -- I

23   mean, the first step, I don't understand why you say they're

24   not receiving or retaining on account of the plan.  They are.

25   Now the question is you may have to do a new-value analysis,

1    and I don't think you've done that.

2              MR. DUBLIN:  I'm sorry, your Honor.  I didn't hear --

3              THE COURT:  You didn't --

4              MR. DUBLIN:  -- your last comment.

5              THE COURT:  -- go through your new-value analysis in

6    your pleading.  I mean, on account of -- the point is -- and

7    let me -- they're receiving an opportunity because they held

8    that property that nobody else is getting.

9              MR. DUBLIN:  Well, just like any debtor that files

10   for bankruptcy, bankruptcy is a public forum.  And,

11   automatically, when a debtor files for bankruptcy, the debtor

12   is in play.  It's the information is out there that people are

13   trying to restructure this business.  They're trying to

14   maximize --

15             THE COURT:  But nobody else got the opportunity to

16   engage in this stock transfer of the Arizona assets.  The

17   exclusivity never expired.  The option wasn't open, and they're

18   receiving the assets of the -- what was the name of the Arizona

19   debtor?

20             MR. DUBLIN:  There are three Arizona debtors,

21   your Honor.

22             THE COURT:  So they're receiving all of the assets of

23   the Arizona debtors.

24             MR. DUBLIN:  Not all of the assets.  The homebuilding

25   assets --

1          THE COURT:  The homebuilding assets.

2          MR. DUBLIN:  -- and some additional dogs-and-cat

3    type.

4          THE COURT:  Okay.  So why doesn't that trigger, A,

5    whether or not there is a new-value exemption -- there probably

6    is in the Ninth Circuit -- and then, secondly, the analysis

7    based upon that.

8          MR. DUBLIN:  Again, your Honor, the valuation that

9    was placed on Pravada were the Arizona assets by the First Lien

10   Steering Committee.

11       And I just have to just check with Winchester Carlisle

12   here, but I think it was something around $100,000.  It was not

13   something that we had prescribed any value to.

14       Also -- I'm sorry -- the plan exclusivity did expire.  It

15   expired by stipulation among the parties upon the initial

16   120-day period.

17         THE COURT:  Oh, so it did expire.

18         MR. DUBLIN:  Yes.

19         THE COURT:  You did not extend it.

20         MR. DUBLIN:  I'm sorry.

21         THE COURT:  Okay.

22         MR. DUBLIN:  So that did expire.  While there was a

23   stipulation among the debtors, the First Lien Steering

24   Committee, the creditors committee, the first lien agent, and

25   the second lien agent that none of us would file a plan that

1   would impede with the mediation, that was not binding on any

2   third party.

3       So if anybody else wanted to come in and propose a plan

4   for the debtor or make a bid for the debtor's assets, people

5   were permitted to do so, and we did.

6       There were times where unsolicited interest did come in

7   for some of the debtor's assets at values that were

8   significantly below even the deflated market value that we

9   currently have in Las Vegas.

10      So those requests were declined because value was going to

11  be maximized through the plan and the mediation settlement that

12  is in front of you today.

13          THE COURT:  But you could see they are -- I mean,

14  there is a sale to them of the Arizona assets.  They're getting

15  the Arizona assets back.

16          MR. DUBLIN:  They will be receiving the Arizona

17  assets, correct, as part of a consideration in connection with

18  the mediation settlement, but which has been all of those terms

19  public for many months now.

20          THE COURT:  Right.  But your problem is you've got a

21  class that's rejected.  It doesn't make any difference whether

22  it's public or nonpublic.  You now have a rejecting class.

23      You have to prove that you can meet the confirmation

24  standards of cram-down, so it doesn't make any difference it's

25  been out there forever or not.  You've got to prove you meet

1    cram-down.

2          MR. DUBLIN:  Correct, your Honor.  And, again, the

3    Arizona assets that are going to Mr. Rhodes are not on account

4    of his old equity interests.

5        He doesn't have the right to -- he's not buying those

6    assets because he was old equity.  He's buying those assets

7    because of -- he's paying the purchase price that he's paying

8    plus providing additional consideration to the reorganized

9    debtors on a go-forward basis as I mentioned, so that they can

10    continue their homebuilding assets.

11          THE COURT:  Well, why wasn't this 3.5 million in

12    consideration for the alleged fraudulent transfers,

13    preferences, et cetera, that happened within those two years

14    that are now being released?

15          MR. DUBLIN:  Right.  Well, it's a global settlement,

16    so it's the aggregate consideration going among the parties is

17    it was incorporated into the settlement.

18        There's no specific dollar number per se that you can

19    assign to any one item.  When you have a global settlement,

20    there is give-and-take in order to reach the settlement --

21          THE COURT:  Well, what was --

22          MR. DUBLIN:  -- that you have --

23          THE COURT:  -- the total value --

24          MR. DUBLIN:  -- among the parties.

25          THE COURT:  -- of the alleged fraudulent -- the

1   actions that were released --

2           MR. DUBLIN:  Well, when --

3           THE COURT:  -- under --

4           MR. DUBLIN:  When you --

5           THE COURT:  -- the plan?

6           MR. DUBLIN:  When you say, the "aggregate" dollar

7   amount of the transactions --

8           THE COURT:  Excuse me.  And that's a better word,

9   yes.

10          MR. DUBLIN:  -- equates to approximately I believe

11  $9,000,000.

12      However, as we did an analysis of those transactions to

13  see if they were valid defenses, ordinary-course-of-business

14  defense, new-value defense, and taking all of that into

15  consideration based on a review of the company's books and

16  records, it was determined by the parties that we have a fair

17  and reasonable settlement to waive those specific claims.

18      Now, if there's something that's undisclosed, those are

19  not being waived.  It is only the transfers --

20          THE COURT:  I --

21          MR. DUBLIN:  -- that we have the ability to go back

22  and review which we did to make sure that we were comfortable

23  when you take into account litigation costs, collectability,

24  and defenses that the aggregate consideration that was being

25  provided by the nondebtor Rhodes entities to the reorganized

1    debtors is fair and equitable and in the best interest to

2    maximize creditor recoveries in connection with this

3    restructuring.

4            THE COURT:  Okay.  All right.  Well, I think you

5    better call your witnesses, then.

6            MR. DUBLIN:  Okay.  We submitted, your Honor,

7    declarations, two declarations, in support of confirmation.

8            THE COURT:  Well, Mr. Dixson's (sic) affidavit isn't

9    worth a lot.  Let me pull that.  Just because somebody told him

10   that cram-down is met isn't exactly -- Mr. Dix.  All right.  So

11   do you have any witnesses other than these declarations?

12           MR. DUBLIN:  We do not, your Honor.

13           THE COURT:  Okay.  Does anyone else have any other

14   witnesses?

15           MR. DUBLIN:  Your Honor, I would like to note for the

16   record that both of the pleadings that were filed in opposition

17   there was a conditional objection filed by Caterpillar as well

18   as the CS limited response.  Yesterday evening, CS withdrew

19   that response, so that is no longer before your Honor.

20           THE COURT:  Well --

21           MR. DUBLIN:  And --

22           THE COURT:  -- what was given to Credit Suisse in the

23   meantime?  What are you doing?

24           MR. DUBLIN:  Nothing.

25           THE COURT:  Are you --

1           MR. DUBLIN:  Nothing, your Honor.

2           THE COURT:  All right.

3           MR. DUBLIN:  No changes.

4           THE COURT:  So you're not going to keep the reserve.

5           MR. DUBLIN:  Nothing.

6           THE COURT:  Okay.

7           MR. DUBLIN:  Correct.  And Caterpillar was

8    comfortable with the resolution that I referenced on the call

9    that we had last week as well as we noted in our brief which is

10   that they will either receive their equipment or another

11   arrangement that's acceptable to them will be made whether we

12   want to purchase it --

13          THE COURT:  Okay.

14          MR. DUBLIN:  -- or the like, so they no longer have

15   an objection to the plan.

16          THE COURT:  Okay.  Now, since the unsecured creditors

17   have voted against the plan, is the committee still in support

18   of the plan?

19          MR. BECKETT:  The committee is still in support of

20   the plan, your Honor, yes.

21          THE COURT:  Is the committee the members whose claims

22   are being bought?  How many of the members of the committee are

23   those people whose claims are being bought in accordance with

24   that agreement?

25          MR. BECKETT:  Two of four.

1                    THE COURT:  Two of four.  Okay.

2                    MR. BECKETT:  And the committee is in its entirety

3       supportive of the plan.

4                    THE COURT:  Okay.

5                    MR. DUBLIN:  Your Honor, I would like to note for the

6       record that in connection with the voting on the plan the

7       reason -- we did satisfy with respect to the unsecured-creditor

8       class the numerosity requirement.  We do have two-thirds that

9       voted in favor.

10          The two objectors or the two claims that voted to reject

11      that resulted in us not reaching the dollar-number threshold

12      are two contingent litigation claims for which the company

13      believes it has no liability.

14          The dollar numbers that were asserted by

15      Stanley Engineering and a class, a noncertified class of

16      homebuilders, are just numbers that those parties have put down

17      an amount on a piece of paper as to what they believe the

18      estate's liability is.  Those are not liquidated claims.  They

19      are far from it, and --

20                    THE COURT:  But there were no objections filed.

21                    MR. DUBLIN:  Well, the Stanley Engineering claim is

22      the subject of a pending litigation.

23                    THE COURT:  But do you agree or disagree they're

24      entitled to vote?

25                    MR. DUBLIN:  They are entitled to vote, your Honor.

```
 1              THE COURT:  Okay.
 2              MR. DUBLIN:  I was just advising you as to the
 3     limited number of unsecured creditors --
 4              THE COURT:  Okay.
 5              MR. DUBLIN:  -- that voted.  There were only 15 valid
 6     ballots.
 7         There was an additional one which was voted to accept, but
 8     it was a claim that had previously been withdrawn.  So, of
 9     course, we did not count that claim.
10              THE COURT:  Okay.  Now, in the Kitec filing, you
11     haven't objected to their claim?
12         (Colloquy not on the record.)
13              MR. DUBLIN:  Excuse me, your Honor.
14              THE COURT:  Um-h'm.
15         (Colloquy not on the record.)
16              MR. DUBLIN:  Your Honor, the debtors have been
17     primarily responsible for the claims reconciliation, so I'm
18     going to ask --
19              THE COURT:  Okay.
20              MR. DUBLIN:  -- Ms. Cho to address that.
21              THE COURT:  Um-h'm.
22              MS. CHO:  Your Honor, with respect to the Kitec
23     claim, there was a relief-from-stay motion or it might have
24     been a 9019 motion which at some point modified and reduced
25     that claim down by about $300,000 with respect to the settling
```

1    homeowners.

2        With respect to the remainder of the homeowner claims, we

3    are in discussions with the insurance company and with outside

4    counsel to resolve the claims, so we have not filed the

5    objection or resolution --

6            THE COURT:  Okay.

7            MS. CHO:  -- because it's not ripe, yet.

8            THE COURT:  So everybody agrees that we have a valid

9    rejecting class, though.

10           MR. DUBLIN:  Your Honor, with the specific procedures

11   that were approved by the Court in connection with the

12   disclosure statement, we could have taken the position that

13   since those claims are not allowed claims, but disputed claims,

14   and the creditors did not come forth to seek to vote their

15   claims in a specific dollar amount that we could have reduced

16   their dollar numbers to $1, counted their ballot, but reduced

17   the claim number to $1.

18       We did not see the need to go through that process as we

19   did have the four other classes that overwhelming voted to

20   accept the plan and in our view still satisfy the requirements

21   of 1129(b) to confirm the plan today.

22           THE COURT:  All right.  Well, that's your view.  I

23   want some additional briefing and on your ability of cram-down

24   and incorporate it with the evidence that I have in the record.

25       And on one hand, I guess this may be a curve ball in light

1    of our conference last week, but, A, I wasn't advised that at

2    that time I don't believe that there was a rejecting class.

3        And then, secondly, the Court can't confirm a plan if

4    there's a rejecting class unless the debtor meets certain

5    requirements, so it doesn't require an objection, a filed

6    objection, to bring that to a head, and you may well be right.

7        But I'm just reticent especially since I didn't have the

8    benefit of any of these exhibits because I didn't I guess have

9    enough sense just to look back five disclosure statements ago.

10        MR. DUBLIN:  And I apologize, your Honor.

11    Your Honor, is it possible if we take a few minutes, and I go

12    back to the specific provisions of the disclosure statement

13    to --

14        THE COURT:  No.  I want you to lay it out in the

15    brief, and I want you to address it, rather than it's just this

16    half-hand, oh, well, we haven't provided anything to the -- we

17    said in there that no junior class gets anything.  That doesn't

18    cut it.

19        You know, just to say that no junior class gets anything

20    is form over substance, and I want you to look at the

21    substance.

22        So I'll do this as quickly as you want, but I want some

23    authority on this in light of the specific -- I mean, this is a

24    serious issue.

25        We've got a situation in which a debtor which your client

```
 1    accused of all kinds of skullduggery is contributing

 2    3.5 million and getting all of these assets back.

 3              MR. DUBLIN:  There, again, your Honor, they're not --

 4              THE COURT:  And I --

 5              MR. DUBLIN:  -- getting --

 6              THE COURT:  And it may well -- and, you know, you

 7    have a settlement component, too.  I believe you've probably

 8    satisfied the A&C Properties test.

 9         But it was hard to tell which elements were part of the

10    settlement, and I guess it was all a part of the settlement as

11    opposed to the asset and purchase agreement.

12         That was what was unclear to me because on one hand you

13    had the settlement which dealt with the homeowners associations

14    and the release of claims, but the bonds, and then you have the

15    stock-transfer agreement which I was unclear to what extent

16    that's a part of the settlement or a separate --

17              MR. DUBLIN:  It's just --

18              THE COURT:  -- negotiation.

19              MR. DUBLIN:  -- the document that's going to

20    implement the settlement, your Honor.

21              THE COURT:  Oh, okay.  Okay.  Well --

22              MR. DUBLIN:  And, your Honor, we do have the

23    provisions in the disclosure statement that allow us to

24    requantify those disputed claims at $1.

25         If I may, can I have a few minutes to look back over those
```

1    provisions and make that argument in front of you this morning

2    to see if we can confirm the plan today?

3            THE COURT:  All right.

4            MR. DUBLIN:  And then we --

5            THE COURT:  I'll let you look --

6            MR. DUBLIN:  -- would have --

7            THE COURT:  -- at that.

8            MR. DUBLIN:  And we will have an -- all of our

9    classes will accept at that point.

10           THE COURT:  Okay.  I'll let you look at that.

11           MR. DUBLIN:  Thank you, your Honor.

12           THE COURT:  All right.

13       (Colloquy not on the record.)

14           THE CLERK:  All rise.

15       (Recess at 09:43:10 a.m.)

16       (Court reconvened at 10:12:24 a.m.)

17           THE CLERK:  All rise.

18       (Colloquy not on the record.)

19           THE CLERK:  Bankruptcy court is back in session.

20       (Colloquy not on the record.)

21           THE COURT:  Be seated.

22           MR. DUBLIN:  For the record, Phil Dublin, Akin, Gump,

23   on behalf of the First Lien Steering Committee.  Your Honor,

24   thank you for giving us a few moments to go back and look over

25   some of the items that have been entered on the docket,

1    previously, so that we can try to address your concern with

2    respect to what appears to be a class that may not have voted

3    in favor of the plan.

4         Your Honor, I'd like to direct your attention to Docket

5    No. 503.  Docket No. 503 is the motion filed by the First Lien

6    Steering Committee for approval of the disclosure statement and

7    the solicitation procedures in connection with soliciting votes

8    to accept or reject the plan.

9              THE COURT:  Okay.

10             MR. DUBLIN:  That motion was approved, your Honor, by

11   Docket No. 809.  That is the order approving the solicitation

12   procedures requested by the First Lien Steering Committee in

13   the motion, again, that motion Docket 503.

14        Now, in Docket No. 503, the solicitation-procedures

15   motion, I'd like to direct your attention to paragraph 51 on

16   page 22.

17             THE COURT:  All right.  Hold on one --

18             MR. DUBLIN:  It is under this --

19             THE COURT:  Wait.  That can't be right because the

20   solicitation motion didn't come -- oh, you're saying the motion

21   and then the order was adopted later.

22             MR. DUBLIN:  Correct, your Honor.

23             THE COURT:  So this is the motion.

24             MR. DUBLIN:  The motion --

25             THE COURT:  Okay.

1          MR. DUBLIN:  -- for approval of the procedures.

2          THE COURT:  Okay.  506.  503.  Okay.  Okay.  And I'm

3     looking at the main document or the exhibit?

4          MR. DUBLIN:  The main document, your Honor.

5          THE COURT:  Okay.

6          MR. DUBLIN:  It's paragraph 51 on page 22.

7          THE COURT:  Okay.  51.  Okay.

8          MR. DUBLIN:  Okay.  And if I just may read the

9     lead-in on paragraph 51, your Honor, which provides, "In

10    tabulating votes, the First Lien Steering Committee proposes

11    that the following hierarchy shall be used to determine the

12    claim amount associated with each holder's vote regardless of

13    the amount the claim holder may write in on the ballot."

14         I would then like to direct your attention, your Honor, on

15    page 23 --

16         THE COURT:  Okay.

17         MR. DUBLIN:  -- to paragraph D --

18         THE COURT:  Um-h'm.

19         MR. DUBLIN:  -- as in dog.  And if I may read,

20    your Honor?

21         THE COURT:  Okay.

22         MR. DUBLIN:  "The claim amount contained in a proof

23    of claim that has been timely filed by the bar date or deemed

24    timely filed by the bankruptcy court under applicable law that

25    is not the subject of an objection or has not been withdrawn

```
 1    provided, however, that ballots cast by holders whose claims
 2    are listed in unliquidated or unknown amounts that are not the
 3    subject of an objection will count for satisfying the
 4    numerosity requirement of Section 1126(c) of the bankruptcy
 5    code and will count as ballots for claims in the amount of $1
 6    solely for purposes of satisfying the dollar-amount provisions
 7    of Section 1126(c) of the bankruptcy code."
 8              THE COURT:  Okay.
 9              MR. DUBLIN:  Your Honor, the two claims that we have
10    at issue or the two votes that we have at issue this morning in
11    connection with considering whether we will be able to confirm
12    the debtor's plan of reorganization are two litigation claims,
13    one filed by an uncertified class of homeowners that have not
14    as required by applicable bankruptcy rules sought prior
15    permission of the bankruptcy court to file --
16              THE COURT:  Well --
17              MR. DUBLIN:  -- a certified --
18              THE COURT:  -- let's go back for a second --
19              MR. DUBLIN:  Okay.
20              THE COURT:  -- because I'm just trying to read
21    through the actual language.  I know what --
22              MR. DUBLIN:  Okay.
23              THE COURT:  -- you're getting at bottom line.
24              MR. DUBLIN:  Sure.
25              THE COURT:  The language says, "A claim of amount
```

1  contained in the proof of claim," so, first, did either of

2  those -- and I'm going beyond what you even asked, but let's

3  just parse our way through the sentence.  Did either of those

4  file a proof of claim?

5        MR. DUBLIN:  Yes.

6        THE COURT:  They both did because when I -- and

7  Stanley did?

8        MR. DUBLIN:  Yes, your Honor.

9        THE COURT:  Okay.

10        MR. DUBLIN:  Stanley filed --

11        THE COURT:  So they both --

12        MR. DUBLIN:  Stanley filed two proofs of claim.

13        THE COURT:  Okay.  So they both filed proof of

14  claims, so the claim amount contained in the proof of claim had

15  been timely filed.  Was it timely filed?

16        MR. DUBLIN:  I believe so, your Honor.

17        THE COURT:  And it wasn't the subject of an objection

18  or withdrawn.

19        MR. DUBLIN:  It is not the subject of a pending filed

20  objection.

21        THE COURT:  Okay.  "Provided, however" -- were the

22  claims listed in unliquidated or unknown amounts?

23        MR. DUBLIN:  Yes, your Honor.

24        THE COURT:  They were listed in unliquidated and

25  unknown.

1            MR. DUBLIN:  Yes, your Honor.

2            THE COURT:  Okay.  I know you said they were

3    litigation, but I didn't know if they were listed --

4            MR. DUBLIN:  Yes.

5            THE COURT:  -- on the schedules.

6            MR. DUBLIN:  They were listed --

7            THE COURT:  Okay.

8            MR. DUBLIN:  -- on the schedules at litigation

9    claims.  The --

10            THE COURT:  Okay.

11            MR. DUBLIN:  Now, there's a discrepancy between the

12    two Stanley has filed two claims --

13            THE COURT:  Um-h'm.

14            MR. DUBLIN:  -- which aggregate the dollar amount on

15    their ballot.  However, in the debtor's schedules of

16    liabilities for Rhodes Design & Development and

17    Rhodes Ranch GP, those claims are listed as contingent, unknown

18    litigation claims with no dollar amount.

19            THE COURT:  Okay.  So they were listed in

20    unliquidated or unknown amounts.

21            MR. DUBLIN:  Correct, your Honor.

22            THE COURT:  Okay.

23            MR. DUBLIN:  Again, with respect to the class ballot,

24    we have an uncertified class that did not seek leave of the

25    Court to file a class proof of claim which is required in order

1     to have a proper timely-filed proof of claim.  That was not

2     done.

3          I will note, however, that the homeowners that purport to

4     be members of that class have been listed on the debtor's

5     schedules.  All of the debtor's homeowners are listed.  They

6     are all listed with contingent, unknown, unliquidated claims.

7                THE COURT:  Okay.  So they'd fall within paragraph D.

8                MR. DUBLIN:  Correct, your Honor.

9                THE COURT:  Okay.

10               MR. DUBLIN:  Therefore, it is the First Lien Steering

11    Committee's view and position, your Honor, that notwithstanding

12    the dollar amount set forth on the ballots that were voted by

13    the uncertified class and Stanley that those claim numbers

14    should be recalculated at $1 for purposes of satisfying the

15    dollar threshold under Section 1126 of the bankruptcy code, but

16    their votes will count for numerosity requirements.

17               THE COURT:  Okay.

18               MR. DUBLIN:  That said, your Honor, as we note in the

19    declaration of Brian Osborne, the numerosity requirement has

20    been satisfied even with the inclusion of those two votes as

21    votes to reject.

22         When we reduce the dollar amounts of the proofs of the

23    claim -- I'm sorry -- of the ballots that have been file by the

24    class as well as by Stanley to $1, we also satisfy the dollar

25    threshold for Class C-1, general unsecured claims.

1          THE COURT:  Okay.  All right.  Is there anyone here

2     on behalf of Stanley or their class?

3          MS. MARSHALL:  I'm here, your Honor.

4     Janiece Marshall on behalf of Stanley Consultants.

5          THE COURT:  Okay.  Any comments in regard with

6     respect to allowing the ballot to count at anything more than

7     $1?

8          MS. MARSHALL:  Your Honor, we object.  I mean, you

9     approved the procedure, but Stanley objects.  It obviously has

10    incurred great losses and hundreds --

11         THE COURT:  Well --

12         MS. MARSHALL:  -- of thousands --

13         THE COURT:  -- what basis --

14         MS. MARSHALL:  -- of dollars.

15         THE COURT:  -- is there?  In light of this order,

16    what basis is there to object to classifying your vote as

17    anything more than $1 in light of this order?

18         MS. MARSHALL:  In light of this order, your Honor, I

19    don't believe --

20         THE COURT:  Okay.

21         MS. MARSHALL:  -- that I have any basis for

22    objection.  Stanley would just reassert its prior objections

23    with respect to the valuation of the Arizona assets.

24      We don't think that they were properly considered, and

25    it's our understanding based on our expertise that the property

1   is actually a part of the property that's not in the flood

2   zone, and that the surrounding property involved -- and I guess

3   the doughnut as opposed to the doughnut hole, a lot of it can't

4   be developed.

5        So the arguments were made about respect to the valuation

6   of those assets, and we agree with the Court that we don't

7   think a proper valuation was made as to the Arizona assets.

8             THE COURT:  Okay.  But, now, just so I'm clear, you

9   didn't file a written objection to the plan.

10            MS. MARSHALL:  We did not, your Honor.

11            THE COURT:  Okay.  All right.  Thank you.

12        So if we disallow the Stanley claim down to $1, where are

13   we on dollars?  Do we still have --

14            MR. DUBLIN:  Well, we still have the class,

15   your Honor --

16            THE COURT:  Okay.

17            MR. DUBLIN:  -- which --

18            THE COURT:  The only thing that concerns me is --

19        (Colloquy not on the record.)

20            THE COURT:  -- once you file the ballot summary

21   showing that class had rejected --

22            MR. DUBLIN:  We would propose to file a new

23   declaration showing that that class has, in fact, accepted,

24   your Honor.

25            THE COURT:  Does this order -- and you've had a

1    chance to digest it more than I have.  Does this order permit

2    you to do that at confirmation?  In other words, you had the

3    right to count them as rejecting --

4              MR. DUBLIN:  Correct, your Honor.

5              THE COURT:  -- before.

6         But now that you have filed something indicating that you

7    have a rejecting class, do we have a problem of people

8    presuming that they have rejected, and that we still have to

9    meet those?

10             MR. DUBLIN:  If I may address that point, your Honor?

11             THE COURT:  Um-h'm.

12             MR. DUBLIN:  I believe that notwithstanding the

13   filing of the declaration that it would be within the purview

14   of a Court to authorize us to file a supplemental declaration

15   based on the prior order that you have entered approving the

16   solicitation procedures to correct that declaration.

17        Notwithstanding that fact and the issue that you raise,

18   your Honor, and that as to whether if that class rejected we

19   have satisfied the absolute-priority rule and the

20   best-interest-of-creditors test -- I apologize -- nobody has

21   objected to the plan on those grounds.

22        Nobody has sought to challenge the valuation contained in

23   the plan as to any of the assets or the declarations or the

24   going-concern valuation or liquidation analysis contained in

25   the disclosure statement which the Court approved by the

1    solicitation-procedures order entered on December 1st.

2         Therefore, I do not believe there will be an impediment to

3    modifying that report as if somebody had came in this morning,

4    and it was within your authority to authorize somebody to

5    change their vote.

6         So I don't believe there's any provision of the bankruptcy

7    code or other law that I'm aware of that would prevent you from

8    authorizing us to submit a corrected declaration that satisfies

9    that we have, in fact, all five classes that voted that were

10   entitled to vote on the plan in accordance with the approved

11   disclosure statement.

12        And based on the specific terms contained in the order

13   approving the disclosure statement at Docket No. 809, that we

14   have satisfied 1126(c) with respect to each of those five

15   classes.

16             THE COURT:  Okay.  All right.  Well, since under the

17   order these votes were entitled to be valued at $1, and,

18   indeed, they would have been subject to objection -- in other

19   words, I assume that objections weren't filed because why go

20   through that process when you're just going to value them at

21   $1.  They were listed as contingent, and you said in the

22   class-action proof of claim --

23             MR. DUBLIN:  Each of the individual homeowners have

24   been listed as unknown, unliquidated --

25             THE COURT:  Okay.

```
1                MR. DUBLIN:  -- contingent claims.

2                THE COURT:  And how much was the class action?  Did

3       they actually file a claim in that amount?

4                MR. DUBLIN:  I believe they have filed a proof of

5       claim in that amount, an uncertified class.

6                THE COURT:  Okay.  But it is an uncertified class.

7                MR. DUBLIN:  And, your Honor, I'm not sure if the

8       class is here today.  We did ask if Stanley was.  We may want

9       to check and see if anybody --

10               THE COURT:  I did.

11               MR. DUBLIN:  -- from the class --

12               THE COURT:  Is anybody here --

13               MR. DUBLIN:  -- is, actually.

14               THE COURT:  -- on behalf of the class --

15               MR. DUBLIN:  So --

16               THE COURT:  -- on behalf of Kitec homeowners?

17               MR. DUBLIN:  And, of course, they had notice of the

18      objection-deadline opportunity to oppose the plan.

19               THE COURT:  Well, I am just concerned.  In my mind --

20      and you may -- I'm not disagreeing that even if you had a

21      rejecting class that your analysis is not correct --

22               MR. DUBLIN:  Understood, your Honor.

23               THE COURT:  -- under (a)(8).  I just raise the

24      concern, and I think if I had a rejecting class it's my job to

25      make sure you meet those requirements.
```

1           Maybe it makes sense to recess this for a very short time,

2      one week, to notify the class to file an amended ballot

3      summary, so that they are on notice that their ballots have

4      been treated in this manner.

5           That means (a)(8) is not raised at all.  That means that

6      whether I'm right or wrong there's no appealable issue as to

7      whether or not you have met cram-down requirements.

8           (Colloquy not on the record.)

9                THE COURT:  So like I said, I'm just concerned about

10     the notice aspect.

11               MR. DUBLIN:  I understand that concern, your Honor.

12               THE COURT:  Do you want to confer for a few minutes

13     knowing -- and I would be prepared to confirm the plan, but for

14     that amendment because while I'm -- you know, that I wasn't

15     totally pleased with the affidavit in the sense that I had been

16     told we meet the cram-down requirements.

17          The point is I don't need to get there.  You do have an

18     overall settlement that meets the A&C Properties test.  The

19     only issue in my mind was whether or not because cram-down is a

20     whole different requirement.

21               MR. DUBLIN:  I understand your concerns, your Honor.

22          (Colloquy not on the record.)

23               THE COURT:  So my thought is that, perhaps, we should

24     recess this for one week.  You immediately amend your statement

25     and a notice that they have got to -- if they object to -- if

1    they have some legal reason to object to that

2    recharacterization, they would have 24 hours to file something.

3            MR. DUBLIN:  Your Honor, I appreciate that.  What I

4    would propose if possible if this is the way you're ruling, I

5    would request that the Court take notice of the provisions of

6    the order that have been approved and permit us to submit a

7    revised declaration this afternoon and confirm the plan based

8    on the revised declaration, so that we do not need to come back

9    as I believe that based on the plain letter of the order

10   approving the disclosure statement that if the class has

11   already been on notice as to what the Court will be reviewing

12   in connection with confirmation of the plan and how the voting

13   procedures are to be tabulated that we do satisfy 1129(a)(8),

14   and that's all of the factors of 1129 to confirm the plan

15   today.

16        However, if the Court is not willing to do that absent the

17   submission of an amended declaration and specifically serving

18   that declaration on the class, I would hope that would be

19   possible that we essentially have a contingently-confirmed

20   plan.  And absent the class filing a pleading with the court by

21   a date certain, that the confirmation order --

22            THE COURT:  I could do that --

23            MR. DUBLIN:  -- could be entered without a hearing.

24            THE COURT:  -- because the only issue is whether or

25   not -- and, perhaps, I am being -- you know, perhaps, in light

1    of the order, we don't have a problem.

2        But since you filed the -- the report was filed showing a

3    rejection and not even -- I don't think the ballot summary even

4    (indiscernible) to say that you reserve the right to reclassify

5    at confirmation in connection with that order, and maybe that's

6    contained someplace else, that specific language.

7                MR. DUBLIN:  I --

8                THE COURT:  But I would --

9                MR. DUBLIN:  I would have to go back --

10               THE COURT:  -- be prepared --

11               MR. DUBLIN:  -- and check.

12               THE COURT:  -- to contingently confirm under that

13    basis.

14        My concern is the notice because someone could have

15    been -- the class could have been misled.  I don't understand

16    what their good-faith argument would be to oppose that.

17        (Colloquy not on the record.)

18               MR. DUBLIN:  And I would like to note, your Honor,

19    that the voting report was filed subsequent to the objection

20    deadline, so that if the class was seeking to affirmatively

21    prevent the plan from being confirmed --

22               THE COURT:  But that's different.  See, the problem

23    is I have to go through an (a)(8) analysis --

24               MR. DUBLIN:  I understand, your Honor.

25               THE COURT:  -- you know, so you're right, the

1   objections.  But (a)(8), it is your affirmative job to show

2   that you meet cram-down.

3       So if I have a rejecting class, they could have presumed

4   that we go through that analysis, and they could have thought,

5   well, you know, based upon those two declarations I see and

6   based upon the fact that Rhodes is getting something I'm going

7   to assume the Court won't approve it.  I'm sure they didn't go

8   through that analysis, but --

9           MR. DUBLIN:  Yeah.

10          THE COURT:  -- it's a due-process issue.

11      They could have relied on your ballot summary showing a

12  rejection unless you had specifically reserved someplace in the

13  disclosure statement and plan in that order that at

14  confirmation you can modify your ballot summary.

15      This is not a situation where somebody can come in and

16  modify.  This is a situation where you're saying, I'm sorry, we

17  said you rejected, but you didn't really have that opportunity

18  because you weren't qualified.

19      And you may have reserved that someplace, but, again, I'm

20  not going to go through all those pleadings.  Do you want a few

21  more minutes to think about these various options?

22          MR. DUBLIN:  Please, your Honor.

23          THE COURT:  Okay.  Because, again, this affects

24  appealability.

25          MR. DUBLIN:  I understand.

```
 1              THE COURT:  So I have no time constraints except I
 2      have the 1:30 confirmation, so --
 3              MR. DUBLIN:  And I'm hopeful this will take
 4      ten minutes --
 5              THE COURT:  Yeah.
 6              MR. DUBLIN:  -- your Honor.
 7              THE COURT:  I don't think so, either.  I just want to
 8      let you know.
 9         Thank you.
10              MS. CHO:  And, your Honor, we do have -- pardon me
11      for the interruption.  We do still have a few matters on
12      calendar left.
13              THE COURT:  Yeah.  But they won't take long.
14              MS. CHO:  Correct.
15              THE COURT:  They're just the fee applications.
16              MR. CHO:  Right.
17              THE COURT:  Correct?
18              MR. CHO:  Correct.
19              THE COURT:  Thank you.
20         (Recess at 10:30:04 a.m.)
21         (Court reconvened at 10:37:07 a.m.)
22              THE CLERK:  Bankruptcy court is back in session.
23         (Colloquy not on the record.)
24              THE COURT:  Be seated.
25              MR. DUBLIN:  Thank you again, your Honor.  Focussing
```

1     again on your concerns, I think they are twofold.  One is with

2     respect to the voting report and the reliance that somebody may

3     have on the voting report and then an analysis that may be

4     undertaken by the Court under 1129(a)(8) or 1129(b)

5     notwithstanding the absence of actually filing an objection.

6          The disclosure statement which was approved by the Court

7     does not permit anybody to undertake that reliance.  On page --

8               THE COURT:  Let me --

9               MR. DUBLIN:  I'm sorry.  Do --

10               THE COURT:  Give me a docket number first.

11               MR. DUBLIN:  It's --

12          (Colloquy not on the record.)

13               THE COURT:  Is it where we were?

14               MR. DUBLIN:  It's the second amended disclosure

15     statement.  It's 98 (sic).

16               THE COURT:  Well, as far as the disclosure statement

17     itself goes, we're going to have to rely on the one that was

18     actually the final one.

19               MR. DUBLIN:  798, your Honor.

20               THE COURT:  798.  Okay.  Oh, I have a hard copy here.

21     Yes.  Okay.

22               MR. DUBLIN:  And it's on Romanette (iv) to (v), so

23     it's just in the first couple of pages in in bold --

24               THE COURT:  Okay.

25               MR. DUBLIN:  -- all caps.

54

```
 1                THE COURT:  Okay.  Let's see.  What page?  I have a
 2      hard copy here.  Oh, IV.  Okay.
 3                MR. DUBLIN:  Roman Numeral IV on the bottom --
 4                THE COURT:  All right.
 5                MR. DUBLIN:  -- to Roman Numeral V.  It's before you
 6      get to the table of contents.
 7                THE COURT:  Okay.
 8                MR. DUBLIN:  May I approach, your Honor?
 9                THE COURT:  Is it --
10           (Colloquy not on the record.)
11                THE COURT:  Tell me what page it is.  I have a hard
12      copy.
13                MR. DUBLIN:  It's Romanette (iv) --
14                THE COURT:  Oh --
15                MR. DUBLIN:  -- I-V.
16                THE COURT:  -- I'm sorry.  I'm thinking you mean once
17      we get inside that report.
18                MR. DUBLIN:  Yes.
19                THE COURT:  Excuse me.
20                MR. DUBLIN:  Before you --
21                THE COURT:  Okay.  Yes.
22                MR. DUBLIN:  Before you --
23                THE COURT:  Thank you.
24                MR. DUBLIN:  -- even get there --
25                THE COURT:  Um-h'm.
```

1          MR. DUBLIN:  -- the pages that people usually read --

2          THE COURT:  Right.

3          MR. DUBLIN:  -- on Romanette (iv) to Romanette (v),

4     bold, all caps, if I may read, your Honor?

5          THE COURT:  Um-h'm.

6          MR. DUBLIN:  "Objections to confirmation of the plan

7     must be filed and served on or before January 4th, 2010, in

8     accordance with the solicitation notice that the First Lien

9     Steering Committee filed and served on holders of claims,

10    holders of interests, and other parties in interest.

11         If objections to confirmation are not timely served and

12    filed in compliance with the solicitation notice, they may not

13    be considered by the bankruptcy court."

14         THE COURT:  So --

15    (Colloquy not on the record.)

16         THE COURT:  -- are you saying that --

17         MR. DUBLIN:  I'm saying, your Honor, that the absence

18    by the class to file an objection to the plan under 11 --

19         THE COURT:  No.  That can't be right.  I'll tell you

20    why is because the objection period is due before the ballots

21    are due, so, therefore, an unsecured creditor wouldn't know

22    beforehand that they had to file an objection.

23         MR. DUBLIN:  I understand that, your Honor.  However,

24    to the extent that Mr. Rhodes would have been receiving a

25    recovery on account of his equity interests, the plan would

1    have been violating the absolute-priority rule.

2        And since the plan contemplated that unsecured creditors

3    were not going to receive a full recovery on account of their

4    claims, it is the same argument that he would not be able to

5    retain a recovery on account of his equity interests --

6              THE COURT:  No.

7              MR. DUBLIN:  -- by --

8              THE COURT:  That only comes into play if the plan is

9    rejected.

10        (Telephone ringing at 10:40:35 a.m.)

11              MR. DUBLIN:  I apologize for the ringing phone,

12    your Honor.  People were -- while we were in recess.  Under --

13              THE COURT:  I don't think a failure to vote in favor

14    of the plan requires an objection.  It's not an objection to

15    the plan.

16              MR. DUBLIN:  The issue that you're reserving, that

17    we're talking about now with 1129(a)(8) --

18              THE COURT:  Correct.

19              MR. DUBLIN:  -- would be an objection to the plan.

20    That we could not satisfy that requirement.

21              THE COURT:  I don't think so.  In other words,

22    it's --

23              MR. DUBLIN:  Moreover, your Honor, all of the

24    individual homeowners, none of which were in this class, this

25    uncertified class, they also received the

1    solicitation-procedures notice and were aware that if they had

2    voted which none of them did -- if they had voted, that their

3    claims would have been $1, but none of those homeowners who

4    purport to be represented by this class even voted on the plan.

5         THE COURT:  Well, and let's go back.  It says, "Not

6    withstanding 510" -- let's see.  "If all the requirements" --

7    I'm looking at (b), 1129(b).

8         (Colloquy not on the record.)

9         THE COURT:  "If all the requirements are met other

10   than paragraph 8, the Court on request of the proponent shall

11   confirm if the plan does not," so your problem is they don't

12   have to object, but you haven't met that.

13   It's your job.  If they reject, then it goes into the

14   alternative which was you can confirm by showing you've met new

15   value.

16   Your problem here is that you have led them to believe --

17   I mean, I can go through the (a)(8) analysis, but I'm not going

18   to do it today.  I'm going to make you --

19        MR. DUBLIN:  I --

20        THE COURT:  -- brief it.

21        MR. DUBLIN:  I understand that, your Honor, and so I

22   would rely on the order approving the disclosure statement that

23   those claims are counted for voting purposes or that claim of

24   the class at $1 just like Stanley's claim is at $1.

25        They are not here today at the confirmation hearing which

1    they were noticed of, so they did receive, obviously, the

2    voting report which I believe based on a review of the order

3    needs to be corrected.  I think you can take judicial notice of

4    the order that you entered, and that the proper --

5              THE COURT:  Yeah.  But you're the ones.

6              MR. DUBLIN:  I understand that.

7              THE COURT:  I mean, arguably, you could waive that.

8              MR. DUBLIN:  I understand, your Honor, and we will

9    submit this --

10             THE COURT:  You can do one of two things.  You can

11   submit your briefs on the briefing and assume they have the

12   right to vote or you can adjourn this for one week, amend your

13   ballot, give them 24 hours to object to the reclassification --

14   the amendment of the ballot summary, and I'll confirm it if

15   they don't.  That's your choice.

16             MR. DUBLIN:  Okay.  Your Honor, we will take option

17   No. 2.

18             THE COURT:  Okay.  Door No. 2.

19             MR. DUBLIN:  We will submit if not later today

20   tomorrow a revised declaration of Mr. Osborne with respect to

21   the votes.  We will send that out on notice.

22        When would you like the -- if anybody has an objection to

23   the new ballot or the new ballot tabulation, when would you

24   like those to be interposed by, so that we can come back and

25   address that issue before the Court?

```
 1              THE COURT:  Let's see.  So you get that out tomorrow.
 2    They've got to file it within 24 hours.  Well, let's do
 3    48 hours, so they would have to file it.  You'll get it out
 4    by --
 5              MR. DUBLIN:  I would --
 6              THE COURT:  You're going to --
 7              MR. DUBLIN:  Hopefully, we'd be able to get it out by
 8    tomorrow, though I'll ask Mr. Osborne to confirm that we'd be
 9    able to get that notice --
10              THE COURT:  And who --
11              MR. DUBLIN:  -- out --
12              THE COURT:  -- filed that --
13              MR. DUBLIN:  -- tomorrow.
14              THE COURT:  -- on their behalf?  Is it somebody on
15    ECF?
16              MR. DUBLIN:  The individual that filed the ballot?
17              THE COURT:  The proof of claim, um-h'm --
18              MR. DUBLIN:  The proof of claim?
19              THE COURT:  -- or the ballot.
20              MR. DUBLIN:  I don't know offhand who signed it.  I
21    believe it was one of the homeowners.
22              THE COURT:  Well, you probably have lots of grounds
23    to object to it, but you didn't, so all right.  So they'll have
24    48 hours to object to the amendment of the ballot, and that
25    means you'll get it out to them -- when is today?  Ooh, today
```

1    is the 14th.

2         (Colloquy not on the record.)

3              THE COURT:  So they'll have 'til -- I'm afraid to use

4    holidays, so they'll have by the 19th by 5:00 p.m.  That's more

5    than 48 hours, but I'm concerned with the business days.  As

6    long as I'm being persnickety, let's not create any more

7    problems.

8         (Colloquy not on the record.)

9              THE COURT:  And then we can come back on Thursday or

10   Friday if necessary.

11             MR. DUBLIN:  I'd prefer Thursday, your Honor.

12             THE COURT:  Okay.  Thursday at 9:30 if necessary?

13             MR. DUBLIN:  Sure.

14        (Colloquy not on the record.)

15             MR. DUBLIN:  (Indiscernible) asked a good question.

16   The amended voting report that we're going to file and serve,

17   you want that served on --

18             THE COURT:  Just the two parties that you're seeking

19   to reclassify based upon the order.

20             MR. DUBLIN:  Okay.

21             THE COURT:  And the only grounds to file a response

22   is -- yeah.  You need to put in there that their votes are

23   being --

24             MR. DUBLIN:  In accordance with the

25   disclosure-statement --

```
 1              THE COURT:  That's right.

 2              MR. DUBLIN:  -- order.

 3              THE COURT:  That's right, and that's the only basis

 4    for objecting to that amendment.  This is not opening up

 5    anything new.  This is just, no, you can't do this because

 6    under this paragraph you don't fit.

 7              MR. DUBLIN:  Understood, your Honor.

 8              THE COURT:  Okay.

 9              MS. MARSHALL:  Your Honor, I just want to confirm

10    that Stanley had the right to lodge an objection if upon

11    reflection it decided to do so.

12              THE COURT:  It --

13              MS. MARSHALL:  We're one of the classes that you --

14              THE COURT:  It came to you quickly, so I'll allow

15    you, but, again, this is only on the grounds that, you know, it

16    has to be some basis that under (d) they're not entitled to

17    treat you as $1.

18              MS. MARSHALL:  Thank you, your Honor.

19              MR. DUBLIN:  And we will make sure that the cover

20    notice of the amended declaration provides that.

21              THE COURT:  Correct.  And then we can come back the

22    21st at 9:30.  If there is nothing filed -- well, what I'd like

23    you to do is on the 20th file something that indicates that

24    either there was or was not --

25              MR. DUBLIN:  We will --
```

```
1              THE COURT:  -- a response.

2              MR. DUBLIN:  If there is nothing filed, we will file

3    a certification of no objection.

4              THE COURT:  Great.

5              MR. DUBLIN:  And if there is something filed, we will

6    contact chambers.

7              THE COURT:  Okay.  And I would also suggest that you

8    amend your -- cleaning up the other problem, amend your

9    certificate of service to specify that those -- if this is the

10   case -- and I assume it was --

11             MR. DUBLIN:  That the exhibits are the same.

12             THE COURT:  -- the exhibits --

13             MR. DUBLIN:  Yes, your Honor.

14             THE COURT:  -- were attached.

15         And by the way, these recesses have given me the

16   opportunity to go back and review those exhibits which I had

17   looked at, initially, but, obviously --

18             MR. DUBLIN:  Understood, your Honor.

19             THE COURT:  So it's given me --

20             MR. DUBLIN:  It's been a while.

21             THE COURT:  -- the opportunity to review those

22   exhibits such that assuming that we don't have to address the

23   new-value issue I find that the plan meets the requirements of

24   1129, and the plan can be confirmed.

25         And I'm not even suggesting that if there is a rejecting
```

1    class you don't meet the cram-down requirements, just my

2    analysis didn't go to that length --

3                MR. DUBLIN:  Understood, your Honor.

4                THE COURT:  -- for the very reasons I have told you,

5    okay, so --

6                MR. DUBLIN:  Understood.

7                THE COURT:  So if you have met (a)(8), that is you

8    have all accepting -- if you do not have a rejecting class,

9    then you've met the requirements of 1129, and the plan can be

10   confirmed.

11               MR. DUBLIN:  And just so I'm clear, your Honor, we

12   will not need a hearing, then, on the 21st if there are no --

13               THE COURT:  That's correct.

14               MR. DUBLIN:  -- objections or responses to the

15   amended voting report.

16               THE COURT:  That's correct.  That's correct.

17               MR. DUBLIN:  And then the only issue that we'll be

18   addressing on the 21st will be the responses to the voting

19   report.

20               THE COURT:  That's correct.

21               MR. DUBLIN:  Okay.

22          (Colloquy not on the record.)

23               THE COURT:  All right.  Did you have a proposed set

24   of findings that we should go through with respect to the plan?

25               MR. DUBLIN:  We did, your Honor.  We uploaded that on

1    the 11th --

2            THE COURT:  Okay.

3            MR. DUBLIN:  -- and served it on the parties.

4            THE COURT:  H'mm.

5            MR. DUBLIN:  I think, your Honor --

6            THE COURT:  Was it --

7            MR. DUBLIN:  -- it will need --

8            THE COURT:  -- uploaded?

9            MR. DUBLIN:  It will need some modification based on

10   the issues that we've discussed today, so --

11           THE COURT:  Did you upload it as an order as opposed

12   to in the docket?

13       (Colloquy not on the record.)

14           THE COURT:  I think you must have.

15           MR. DUBLIN:  I think it was uploaded as an order.

16           THE CLERK:  (Indiscernible) --

17           THE COURT:  See, don't --

18           THE CLERK:  -- (indiscernible).

19           THE COURT:  You can't do that.  You can't upload

20   those as proposed orders in the order box because I don't sign

21   orders before -- you have to upload a proposed order ECF, so

22   that everybody could see what your proposed order is, and I get

23   it, but don't put it in the order box because we don't get it.

24           MR. DUBLIN:  Okay, your Honor.

25           THE COURT:  And it wasn't on the docket, either.

```
 1            (Colloquy not on the record.)
 2            MR. DUBLIN:  Your Honor, then I propose that we
 3    upload it onto the docket --
 4            THE COURT:  Yes.
 5            MR. DUBLIN:  -- today.
 6            THE COURT:  Yes.
 7            MR. DUBLIN:  And then we can address any issues with
 8    the order that you may have on the 21st assuming if you have
 9    any -- we'll have to make some modifications based on --
10            THE COURT:  Okay.  So upload --
11            MR. DUBLIN:  -- the cram-down.
12            THE COURT:  -- the proposed findings, and I will --
13        (Colloquy not on the record.)
14            THE COURT:  Maybe it makes sense that we go ahead and
15    on the 21st, so we can finish up those findings.  We will have
16    a hearing on the 21st which will do one or both things, one
17    just finally approve the findings and if there's any objections
18    by anybody discuss those, and then, two, if we have to go
19    through new value, then we'll discuss that.
20            MR. DUBLIN:  Okay.
21            THE COURT:  If you have an objection based upon your
22    reballoting -- well, the first step I think is to address
23    whether or not they're entitled to a ballot.
24        If the votes aren't -- if they're not in accordance with
25    that order entitled to have their claims sought at $1, then
```

1    that takes care of that.

2              MR. DUBLIN:  Thank you, your Honor.

3              THE COURT:  All right?  All right.  So thank you on

4    that, and let's finish up.

5         Next, finally, we have the motion No. 9, the motion to

6    extend time.

7              MS. CHO:  Your Honor, Shirley Cho again for the

8    debtors.  This is a protective motion to extend the

9    January 31st 365(d)(4) extension --

10             THE COURT:  All right.  That's granted.

11             MS. CHO:  -- order.

12        Thank you.

13             THE COURT:  And I'm sorry, Mr. Larson.  I skipped

14   No. 5.

15        (Colloquy not on the record.)

16             MR. LARSON:  Good morning, your Honor.  This is our

17   second fee application.  It is reset for today's hearing.

18   There has been no opposition.

19             THE COURT:  All right.  And that's approved.

20             MR. LARSON:  Thank you.

21             THE COURT:  And then we have No. 10, the global

22   settlement.

23        (Colloquy not on the record.)

24             MS. CHO:  For the record, Shirley Cho again,

25   your Honor, for the debtors.  With respect to this motion, it's

1    really a follow-on motion to a motion that your Honor has

2    previously approved to pick up three other debtors that we

3    omitted to include the first time around.

4              THE COURT:  All right.  So that's granted.

5              MS. CHO:  Thank you, your Honor.

6              THE COURT:  And then we had the Parsons, Behle.

7         (Colloquy not on the record.)

8              MR. BECKETT:  Thank you, your Honor.  Tom Beckett for

9    -- it's Parsons, Behle.  Your Honor, the presentation of this

10   second fee application has not been entirely neat.

11        I was advised by the court clerk yesterday afternoon that

12   the hearing on this had been vacated.  I wasn't certain if the

13   hearing that had been set for 1:30 had been vacated --

14             THE COURT:  Oh --

15             MR. BECKETT:  -- or the one set for this morning had

16   been vacated.

17             THE COURT:  -- I think the point is that somehow it

18   may have got set for 1:30 and shouldn't have been, so, yes,

19   we'll go ahead, and I think there's no problem.  It's an

20   amended notice at 9:00 o'clock, and we have an amended notice,

21   so we'll go ahead --

22             MR. BECKETT:  Yes.

23             THE COURT:  -- and consider that.

24             MR. BECKETT:  I appreciate that, your Honor.  That

25   was my fault.  I set it at 1:30 and then saw that it had been

1    put on the schedule for today, and so I had it moved to 9:00.

2    I would be perfectly happy to come back at 1:30.  I did not

3    want to inconvenience the Court.

4                THE COURT:  No.  That's fine --

5                MR. BECKETT:  We're here --

6                THE COURT:  -- because I think anybody who would have

7    an interest would be here this morning, so I have no problem

8    with proceeding early.

9                MR. BECKETT:  Thank you.  I appreciate that.  There

10   have been no objections --

11               THE COURT:  All right.

12               MR. BECKETT:  -- to this.

13               THE COURT:  And that's granted.

14               MR. BECKETT:  I appreciate it.

15               THE COURT:  I guess, arguably, what I might do at

16   1:30 is just, quote, "call the case" just to see if somebody

17   happens to show up.  But --

18               MR. BECKETT:  Yeah.  I --

19               THE COURT:  And if I do --

20               MR. BECKETT:  I will be --

21               THE COURT:  -- I'll let you know.

22               MR. BECKETT:  Would you like me to be here for that?

23               THE COURT:  If it doesn't inconvenience you --

24               MR. BECKETT:  It --

25               THE COURT:  -- you might want --

```
 1            MR. BECKETT:  I have no place else --
 2            THE COURT:  -- to do that.
 3            MR. BECKETT:  -- to be.
 4            THE COURT:  Okay.
 5            MR. BECKETT:  I have no place else I'd rather be,
 6   so --
 7       (Colloquy not on the record.)
 8            THE COURT:  Oh, yeah.
 9            MR. BECKETT:  Thank you.
10            THE COURT:  Well, it's Chapter 13 day.  I don't know.
11   You may want to --
12       (Colloquy not on the record.)
13            THE COURT:  There was only 1,000 --
14       (Colloquy not on the record.)
15            THE COURT:  There's literally 1,000 matters on
16   calendar, so I don't know.
17       (Colloquy not on the record.)
18            MS. CHO:  Your Honor, Shirley Cho again for the
19   record.  With respect to next Thursday's hearing at 9:30 a.m.,
20   would it be possible for parties who wish to appear
21   telephonically --
22            THE COURT:  Yes.  Court Call will be allowed.
23            MS. CHO:  Thank you.
24            THE COURT:  And assuming -- well, let me have a
25   caveat.  If it turns out we need argument, those parties who
```

1    need to argue the matter should be present.

2         If there is no argument, if it's just a matter of

3    pro forma going through findings in brief, you know,

4    wordsmithing, then anybody and everybody can be on Court Call.

5              MS. CHO:  Thank you, your Honor.

6              THE COURT:  All right?  All right.  On one hand, I

7    guess I'm sorry for being so persnickety, but I guess that's

8    why I get the big bucks, and, more importantly, I never want to

9    see things remanded to me, so all right.

10        Thank you very much.

11        (Colloquy not on the record.)

12             UNIDENTIFIED SPEAKER:  Thank you, your Honor.

13             MR. BECKETT:  Thank you, your Honor.

14             THE CLERK:  All rise.

15        (Court concluded at 10:54:17 a.m.)

16        (Court reconvened at 01:45:44 a.m.

17        with J. Thomas Beckett, Esq., only present.)

18             THE CLERK:  All rise.

19        (Colloquy not on the record.)

20             THE CLERK:  Bankruptcy court is now in session.

21        (Colloquy not on the record.)

22             THE COURT:  Be seated.

23        (Colloquy not on the record.)

24             THE COURT:  All right.  Before we start, anyone here

25    on Rhodes?

```
 1          (Colloquy not on the record.)

 2               MR. BECKETT:  Tom Beckett, Parsons, Behle & Latimer,

 3     Salt Lake City.

 4               THE COURT:  Okay.  And no one else is here.  All

 5     right.  So that was approved.

 6               MR. BECKETT:  Thank you.

 7               THE COURT RECORDER:  Is your telephone on silent?

 8               MR. BECKETT:  Yes.

 9               THE COURT RECORDER:  I just heard something over the

10     PA system.  Sorry.

11               MR. BECKETT:  Thank you, your Honor, and thank you to

12     your staff --

13               THE COURT:  Okay.

14               MR. BECKETT:  -- for accommodating us.  I appreciate

15     it.

16               THE COURT:  All right.  Thank you.

17               MR. BECKETT:  Your Honor, may I be excused?

18               THE COURT:  Yes, please.  Thank you.  I'm sure you

19     don't want to stay for this.

20          (Court concluded at 01:46:23 p.m.)

21

22

23

24

25
```

1        I certify that the foregoing is a correct transcript

2    from the electronic sound recording of the proceedings in

3    the above-entitled matter.

4

5

6    /s/ Lisa L. Cline                    01/25/10

7    _____        _____
     Lisa L. Cline, Transcriptionist          Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25