JANIECE S. MARSHALL, ESQ., Nevada Bar No. 4686
jm@amclaw.com
ANDERSON, McPHARLIN & CONNERS LLP
777 North Rainbow Boulevard, Suite 145
Las Vegas, Nevada 89107
Telephone: (702) 479-1010 ♦ Facsimile: (702) 479-1025

Attorneys for Creditor,
*Stanley Consultants, Inc.*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>THE RHODES COMPANIES, LLC,<br><br>Debtor.<br><br>Affects:<br>☒ All Debtors<br>☐ Affects the following Debtor(s),<br>Apache Framing, LLC<br>Batcave, LP<br>Bravo, Inc.<br>Chalkline, LP<br>Elkhorn Partners, a Nevada LP<br>Geronimo Plumbing, LLC<br>Glynda, LP<br>Gung-Ho Concrete, LLC<br>Heritage Land Company LLC<br>Jackknife, LP<br>Overflow, LP<br>Parcel 20, LLC<br>Pinnacle Grading, LLC<br>Rhodes Homes Arizona, LLC<br>Rhodes Arizona Properties, LLC<br>The Rhodes Companies, LLC<br>Rhodes Ranch Golf Country Club, LLC<br>Rhodes Ranch General Partnership<br>Six Feathers Holdings, LLC<br>Tribes Holdings, LLC<br>Tick, LP<br>Tuscany Golf Country Club, LLC<br>Wallboard, LP | Case No. BK-S-09-14814-LBR<br><br>Chapter 11<br><br>**STANLEY CONSULTANTS, INC'S OPPOSITION TO FIRST LIEN STEERING COMMITTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE SECOND AMENDED MODIFIED PLAN (DOC. #962)** |

775181.1 5835.005

Stanley Consultants, Inc. ("Stanley") opposes the First Lien Steering Committee's Supplemental Memorandum in support of Plan Confirmation of the Second Amended Modified Plan of Reorganization ("Plan") (Doc #962) on the following grounds:

1. **STEERING COMMITTEE HAS FAILED TO MEET BURDEN OF PROOF THAT THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND THAT THE PLAN IS FAIR AND EQUITABLE**

   A. **Plan Discriminates Unfairly and Is Not Fair and Equitable**

      1. **Arizona Assets Not Properly Valued**

         (a) **Water Rights Not Considered**

The First Lien Steering Committee, as the Plan proponent, bears the burden of proof to establish that the Plan does not discriminate unfairly and that the Plan is "fair and equitable" with respect to each class of impaired claims that rejected the Plan, in this case Class C-1, the unsecured creditors class, pursuant to 11 USC § 1129(b)(1). Pursuant to FRBP 3020(b), once a plan is rejected by a class, the good faith presumption disappears. *See In re Eitemiller* 149 BR 626, 629 (BC D ID 1993). Unfair discrimination exists when a plan gives more favorable treatment to a junior creditor. *See In re Dilts* 100 BR 759, 761 (1989).

In this case, the Plan provides favorable treatment to a junior creditor, Jim Rhodes and his nondebtor Arizona entities to the detriment of Stanley. *See Exhibit 1, Frohnen Declaration.* Rhodes and his Arizona entities seek to purchase the Arizona Assets pursuant to the Mediation Settlement that occurred on August 17, 24 and 25, 2009. *See Supplement.* Stanley was not invited and, therefore, did not participate in the Mediation.

In its Supplemental Brief, the Steering Committee extensively relies upon the Mediation for its contention that the Plan does not discriminate unfairly and is fair and equitable. *See Supplement, 5-20.* The Committee provides no evidence, however, that the full value of the Arizona Assets were actually considered, either during the August 2009 Mediation or at anytime since then. Without question, the Mediation did not properly value the Arizona Assets and, therefore, Mr. Rhodes, a junior creditor, is benefiting unfairly under the Plan to the detriment of Stanley as a member of the class of the unsecured creditors that rejected the Plan.

Significantly, and even though Stanley has raised the issue of the water rights on several occasions during this Bankruptcy, the Steering Committee failed during the Mediation (and continues to fail in its Supplement Brief) to consider the waters rights of the Arizona Assets. *Exhibit 1, Frohnen Declaration.* For instance, the Committee relies upon the Declaration of Charles Hewlett to establish the "Valuation of the Arizona Assets". *See Supplement, Hewlett Declaration (page 46 of 49).* In his declaration, Mr. Hewlett fails to discuss or consider the water rights that the Debtor entities spent millions to obtain, but now are going to be sold for less than the cost of incurred for developing the water rights. Water rights in the middle of a desert have incalculable value yet Mr. Hewlett never discusses in his Declaration. *See Exhibit 1, Frohnen Declaration.* Mr. Hewlett failed to consider the value of the 1300 acres with water rights. Consequently, Mr. Hewlett's opinion is fatally flawed and, therefore, the Committee is unable to support its contention that it properly valued the Arizona Assets, whether at the Mediation or anytime since.

Based upon Stanley's knowledge and having performed millions of dollars of engineering services for water and land development in Arizona (a considerable amount of which Stanley was not paid for and is the subject matter of Stanley's proofs of claim), property in Arizona with a licensed water/sewer utility is substantially more valuable than raw desert land. *Exhibit 1, Frohnen Declaration.* Stanley has knowledge of the money spent by Rhodes in obtaining the water rights for the Arizona Assets given that Stanley provided services pursuant to written agreements that are attached to Stanley's Proofs of Claims in this case (POC 48, 49 and 52).

Stanley provided extensive planning, engineering and surveying services to Rhodes Homes Arizona LLC ("Rhodes Arizona") for various projects in Arizona and Las Vegas, Nevada. *Exhibit 1, Frohnen Declaration.* A true and correct copy of the Agreement entered into with Debtors and Stanley as well as itemized statement of unpaid invoices are attached to Stanley's Proof of Claim #52 filed in this action and are incorporated by reference as if set forth fully herein. By Stanley's estimation, Rhodes and his Arizona entities have spent millions of dollars developing the water rights associated with the Arizona Assets.

The services provided by Stanley at the direction of the Debtors for the improvement of

property located in Arizona included work on five proposed Master Planned Communities in Mohave County. *Exhibit 1, Frohnen Declaration.* Four of the five Master Planned Communities received "Area Plan" approvals from Mohave County. *Exhibit 1, Frohnen Declaration.* These Area Plan approvals are valuable land entitlement improvements to the Arizona properties. *Id.*

Stanley's services (that are the subject of its three proofs of claims against three of the Debtors) also include the work for the completion of master plans for water and sewer systems as well preparation of detailed construction documents ("Water and Sewer Plans and Construction Documents"). *Exhibit 1, Frohnen Declaration.* Debtors, Jim Rhodes and other nondebtor Rhodes entities used Water and Sewer Plans and the Construction Documents prepared by Stanley to entitle property not owned by Debtors but owned by Jim Rhodes and his other nondebtor Rhodes entities *Exhibit 1, Frohnen Declaration.* These improvements permitted Rhodes entities to gain approvals for water and sewer systems. *Id.*

In the case of Golden Valley, Stanley provided engineering services that were used to build deep groundwater well pumping systems, water storage systems and water delivery pipelines to the future community. *Exhibit 1, Frohnen Declaration.* This work is part of the services provided by Stanley that is the subject of Stanley's proofs of claim filed against the Debtors. Additionally, these plans and related technical support documents prepared by Stanley were specifically used to seek Certificates of Need and Necessity ("CCN") from the ACC. *Id.* In fact, the technical documents prepared by Stanley were the basis of the eventual approval of CCN's for the Rhodes properties. *Id.*

Additionally, Stanley performed preliminary water rights work for Rhodes in Arizona and arranged for a specialty co-consultant to be engaged by Rhodes to perform more detailed work to secure water rights for the various projects in Arizona. *Exhibit 1, Frohnen Declaration.* The work by Stanley and the specialty co-consultant resulted in Rhodes obtaining Letters of Water Adequacy from ADWR for up to 50,000 AF of water. *Id.* Stanley provided these services pursuant to representations made by Rhodes that the land ownership and development companies were all part of the same group of entities and all were controlled and owned at some common level, namely Jim Rhodes. *Exhibit 1, Frohnen Declaration.* Stanley was never informed of the

775181.1 5835.005

use of separate entities to hold the land versus design and develop the land. *Id.* When Stanley inquired about Rhodes' source of funds to purchase land and design and develop the properties, Rhodes specifically told Stanley that it had $500 million of funding from Credit Suisse to prosecute the program in Arizona as he saw fit and that there was no credit risk to Stanley Consultants. *Exhibit 1, Frohnen Declaration.*

Stanley also performed preliminary work on two additional tracks of land for Rhodes: Red Lake and Hafley Ranch. *Exhibit 1, Frohnen Declaration.* The Red Lake and Hafley Ranch acreage was in excess of 20,000 acres and is valuable land in the burgeoning solar energy areas of the Hualapai Valley. *Id.* Stanley performed the work on Red Lake and Hafley Ranch based upon representations by Rhodes that Rhodes' ongoing development and homebuilding companies controlled and owned the properties and that Stanley's contracts for the work improved the value of the land. *Id.* The property identified in the Mediation agreement as "RHA" is property for which Stanley provided services and are included in Stanley's proofs of claim. *Exhibit 1, Frohnen Declaration.* This land is in the GVR development and formed the core of Phase 1. *Id.* Stanley's work for this land increased its value. *Id.*

Additionally, Stanley performed services for the development of the master plan or the entire region of Golden Valley as stated in the Frohnen Declaration. *Exhibit 1, Frohnen Declaration.* Based upon representations from the Rhodes entities, Stanley's work in this area was partially funded from proceeds of the Credit Suisse financing. *Id.* Rhodes also directed Stanley to perform services on the Aztec Park and the Well site adjacent, services that form part of the basis of Stanley's proof of claims. *Exhibit 1, Frohnen Declaration.* The ownership of these improvements is not mentioned or identified in the mediation documents. *Id.*

2.  **Assets Not Fully Accounted For or Valued in the Plan**

    A.  **Parcels Not Identified in Mediation that Are Owned by Debtors**

    The Mediation and the Plan fail to value all of the Arizona Assets and, therefore, the Plan unfairly discriminates in favor of junior creditor Jim Rhodes and is not "fair and equitable". For instance, Stanley has determined by a review of the public property records that the Mediation and the Plan fails to identify all of the property owned in Arizona by the Debtors and that Rhodes will

acquire as part of the Plan. There appear to be at least 18 parcels of land in Arizona owned by the Debtors entities have not been identified and, therefore, not given proper value in the Plan. *Exhibit 2, List of Unaccounted for Parcels.*

As such, the Plan cannot be accepted. The Committee cannot meet its burden that it does not unfairly discriminate or that it is fair and equitable. The Arizona Assets have not been properly valued and Rhodes and his nondebtor entities should be required to pay the proper value.

### B.   Well Sites Purchased by Rhodes Homes Arizona Not Identified as Asset

The Plan (and the Mediation documents) fail to disclose that Debtor Rhodes Home Arizona purchased well sites that are not accounted for in the Mediation and in the Plan. The failure to include these assets calls into question whether the Plan unfairly discriminates and is fair and equitable under §1129. Attached are bids regarding these well sites that were accepted and now are believed to be owned by Rhodes Homes Arizona LLC. *Exhibit 3, Well Site Bids.* As set forth above, the water rights to the Arizona property are extremely valuable. *Exhibit 1, Frohnen Declaration.* These water rights appear not to have been considered in valuing the Arizona Assets. As such, the Plan cannot be crammed down.

### 3.   Absolute Priority Rule Not Satisfied

The Plan is not "fair and equitable" for purposes of the "cram down" under 11 USC 1229(b) because the Plan does not satisfy the "absolute priority" rule. The Absolute Priority rule requires that the rejecting Class be provided for in full before any junior class can receive or retain property under a plan. In this case, the Plan provides favorable treatment and unfairly benefits junior creditor Jim Rhodes and his nondebtor Arizona entities because (as set forth above) the Steering Committee failed to properly value the Arizona Assets, giving no value for the water rights associated with the Arizona Assets that were developed by the services provided by Stanley pursuant to the documentation attached to Stanley three proofs of claim (48, 49 and 52). *See Exhibit 1, Frohnen Declaration.* Consequently, Jim Rhodes and his nondebtor Arizona entities are not paying sufficient value for the Arizona Assets. The Declaration of Charles Hewlett attached to the Supplemental Brief as the basis for the Valuation of the Arizona Assets fails to take into account the water rights associated with the Arizona property. Property with water rights is

significantly more value than property without water rights. As such, the valuation of the Arizona Assets is not accurate.

Second, Jim Rhodes and his nondebtor Arizona entities used the assets of the Arizona Debtor entities to improve Rhodes nondebtor Arizona property, including but not limited using the services of Stanley to improve property and obtain water rights. *Exhibit 1, Frohnen Declaration.* These services were provided pursuant to Stanley's three proofs of claim (POC 48, 49 and 52) and supporting documentation.[1] *Id.* As such, Rhodes and the Arizona entities are not providing new value for the Arizona Assets.

As set forth at page 25 of the First Lien Steering Committee's Supplemental Brief in pertinent part:

> "Pursuant to the "new value exception", an existing equity holder may receive a distribution of the property . . . if the equity holder offers value to the debtor that is (i) new, (ii) substantial, (iii) money or money's worth, (iv) necessary for a successful reorganization and (v) reasonable equivalent to the value or interest received. *In re Bonner Mall*, 2 F.3d at 908; *Oxford Life Ins. Co. v. Tucson Self-Storage, Inc. (In re Tucson Self-Storage, Inc.)*, 166 B.R. 892, 899 (B.A.P. 9th Cir. 1994).

*See Supplement, at 25, ¶ 34.*

In this case, the Plan is not entitled to the "new value exception" because Rhodes and the Arizona entities are not providing "new value" for their equity interest. Rhodes and his nondebtor entities used the assets of the Debtor entities to improve real property owned by Rhodes and his nondebtor Arizona entities, including but not limited the loan proceeds from Credit Suisse and the engineering services provided by Stanley and that form part of Stanley's proofs of claims. *Exhibit 1, Frohnen Declaration.* As such, Rhodes and companies are not entitled to the new value exception and, therefore, the Plan unfairly discriminates and is not fair and equitable.

/ / /

/ / /

---

[1] Stanley incorporates by reference, as if fully set forth herein, its three proofs of claim (POC 48, 59 and 52), including the supporting documents attached thereto, providing the written contracts and accounting statements for the work provided but not paid for by Debtors.

7

3. **Treatment to Stanley Fundamentally Unfair**

Stanley is owed millions of dollars by the Debtors for engineering services Stanley provided pursuant to written agreements that are the subject of Stanley's proofs of claims. The Debtors have never objected to Stanley's proofs of claim. The work provided by Stanley to Debtors was for the improvement of real property that is owned by Debtors and Rhodes nondebtor Arizona entities. Rhodes and the nondebtor entities now seek to purchase the Arizona Assets without fully disclosure the full value of the Arizona Assets and without paying the proper value of the Arizona Assets. This Court cannot approve the Plan that gives Rhodes and his nondebtor Arizona entities preferential treatment with respect to the purchase of the Arizona Assets.

**Conclusion**

For the reasons set forth above, Stanley opposes the cram down of the Plan. The First Lien Steering Committee has failed to meet its burden to establish that the Plan does not discriminate unfairly and establish that the Plan is fair and equitable.

February 2nd, 2010

Respectfully submitted,

ANDERSON, McPHARLIN & CONNERS LLP

By _____
Janiece S. Marshall, Esq.
777 North Rainbow Boulevard, Suite 145
Las Vegas, Nevada 89107
Tel. (702) 479-1010
Attorneys for Creditor, Stanley Consultants, Inc.

**CERTIFICATE OF SERVICE VIA ELECTRONIC MAIL**

I am employed in Clark County. I am over the age of 18 years and not a party to this action. My business address is Anderson, McPharlin & Conners LLP, 777 North Rainbow Boulevard, Suite 145, Las Vegas, Nevada 89107.

I hereby certify that on this 2nd day February 2010, I did serve, via Electronic Mail by the ECF system a copy of the above and foregoing **STANLEY CONSULTANTS, INC'S OPPOSITION TO FIRST LIEN STEERING COMMITTEE'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE SECOND AMENDED MODIFIED PLAN (DOC. #962)** as follows:

Pachulski Stang Ziehl & Jones LLP
Attn: James I. Stang
10100 Santa Monica Boulevard #1100
Los Angeles, CA 90067

Larson & Stephens
Attn: Zachariah Larson
810 S. Casino Center Boulevard, Suite 104
Las Vegas, NV 89101

Akin Gump Strauss Hauer & Feld LLP
Attn: Philip C. Dublin
One Bryant Park
New York, NY 10036

Kolesar & Leatham, Chtd.
3320 West Sahara Avenue, Suite 380
Las Vegas, NV 89102

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of February 2010.

JULIE A. GARCIA
Employee of
ANDERSON, McPHARLIN & CONNERS LLP

775181.1 5835.005

9