# Exhibit 1

## DECLARATION OF DAVID FROHNEN

I, David Frohnen, hereby declare as follows:

1. I am over the age of eighteen years and, if called as a witness, could and would testify competently to the matters set forth herein from my own personal knowledge. Except as otherwise indicated herein, all facts set forth in this declaration are based on my personal knowledge, my discussions with other employees of Stanley Consultants, Inc. my review of relevant documents, and/or my opinions, relying on my experience in the industry and my knowledge of work performed by Stanley Consultants pursuant to written agreements with Debtors Rhodes Homes Arizona LLC, Rhodes Ranch General Partnership and Rhodes Design and Development Corporation in The Rhodes Homes, Bankruptcy Case No. 09-14814-LBR. I am authorized by Stanley Consultants, Inc. to submit this declaration.

2. I was the Vice President for Stanley Consultants, Inc. and the Manager of the Las Vegas office with over twenty-five years of professional work experience in engineering design and utility construction/operations, consulting, as well as a Utility Company Operations Executive and Engineering/Construction Manager. I have worked as a Consulting Engineer on land development and utility infrastructure projects in several states including Nevada, Arizona and California. I have also worked as the Engineering and Construction Manager for American Water Works Company in California, and as the Statewide Operations Director for Arizona-American Water Company.

3. I am a licensed engineer in five states: California, Nevada, Washington, Arizona, and Oregon. I also obtained a Certificate in Real Estate Studies from the University of Nevada at Las Vegas and have continuing education in Utility Finance and Accounting, residential land development and construction management.

4. Stanley entered into an agreement to provide planning, engineering and surveying services to Rhodes Homes Arizona LLC ("Rhodes Arizona") for various projects in Arizona and Las Vegas, Nevada. A true and correct copy of that Agreement and itemized statement of unpaid invoices are attached to Stanley's Proof of Claim #52 filed in this action.

5. Stanley fully performed its obligations to Rhodes Arizona pursuant to the terms

1. of the Agreement.

2. 6. Rhodes Homes Arizona failed to pay Stanley for those services.

3. 7. Stanley filed a Proof of Claim (#52) against Rhodes Homes Arizona in the amount of $3,467,733.00. Attached to Proof of Claim #52 is an itemized statement of invoices for which Stanley has not received payment for Rhodes Arizona.

4. 8. Stanley also entered into a contract with Rhodes Design and Development Corporation ("Rhodes Design") and Rhodes Ranch General Partnership ("Rhodes Ranch") to provide planning, engineering and surveying services for various projects. A true and correct copy of that Agreement is attached to Stanley's Proofs of Claim #48 and 49.

5. 9. Rhodes Design and Rhodes Ranch failed to pay Stanley for those services.

6. 10. Stanley filed Proofs of Claim against Rhodes Design (#48) and Rhodes Ranch (#49) in the amount of $575,768.00.

7. 11. Stanley's Proofs of Claims (#48, #49 and #52) against these Debtors are for unsecured trade claims for services provided to Debtors prepetition.

8. 12. Upon information and belief and to date, Debtors have not filed objections to any of Stanley's three Proofs of Claim.

9. 13. Pursuant to the terms of the above-referenced Agreements as well as pursuant to Certificate(s) of Registration from the United States Copyright Office, all work performed by Stanley for Debtors remains the intellectual property of Stanley. True and correct copies of the Certificates of Registration for Stanley's work are attached as exhibits to Stanley's Objection to the Disclosure Statement (Doc. #617).

10. 14. As Debtors never paid Stanley for the work provided pursuant to the Agreements, Debtors have not obtained a license to use Stanley's work.

11. 15. Even if Debtors had paid Stanley for its work, Debtors are required to obtain Stanley's written permission before transferring any of Stanley's work.

12. 16. The license to use Stanley's copyrighted work is not transferable without Stanley's written permission.

13. 17. Stanley has not granted Debtors permission to transfer any license for the work it

775501.1 5835.005

2

1 performed.

2  18. Stanley, Debtors, Affiant, Jim Rhodes, Glenda Rhodes as well as other individuals and entities are in litigation over Debtors' failure to pay Stanley for the engineering services provided pursuant to the Agreement in the Superior Court of Arizona, Maricopa County, Case No. CV2006-001358.

 19. The services provided by Stanley at the direction of the Debtors to property located in Arizona and include the following:

> A. Detailed work on five (5) proposed Master Planned Communities in Mohave County. Four of the five Master Planned Communities received "Area Plan" approvals from Mohave County. These Area Plan approvals are valuable land entitlement improvements to the Arizona properties.
>
> B. Completion of master plans for water and sewer systems as well as detailed construction documents. Debtors, Jim Rhodes and other nondebtor Rhodes entities used the Plans and Documents prepared by Stanley to entitle property owned not only by Debtors but also by Jim Rhodes and his other nondebtor Rhodes. These improvements permitted Rhodes entities to gain approvals for water and sewer systems. In the case of Golden Valley, the services provided by Stanley was used to build deep groundwater well pumping systems, water storage systems and water delivery pipelines to the future community. Additionally, these plans and related technical support documents were specifically used to seek Certificates of Convenience and Necessity from the ACC. In fact, the technical documents prepared by Stanley were the basis of the eventual approval of CCN's for the Rhodes properties.

 20. Land in Arizona with a licensed water/sewer utility is substantially more valuable than raw desert land.

3

21. Stanley performed services pursuant to representations made by Rhodes that land ownership and development companies were all part of the same group of entities and all were controlled and owned at some common level, namely, Jim Rhodes.

22. Stanley was never informed of the use of separate entities to hold the land versus design and develop the land.

23. When Stanley inquired about Rhodes' source of funds to purchase land and design and develop the properties, Stanley was specifically told by Rhodes that it had $500 million of funding from Credit Suisse to prosecute the program in Arizona as he saw fit and that there was no credit risk to Stanley Consultants.

24. Stanley performed preliminary water rights work for Rhodes in Arizona and arranged for a specialty co-consultant to be engaged by Rhodes to perform more detailed work to secure water rights for the various projects in Arizona.

25. The work by Stanley and the specialty co-consultant resulted in Rhodes obtaining Letters of Water Adequacy from ADWR for up to 50,000 AF of water.

26. Based upon Affiant's years of experience and work on these projects and familiarity with water projects in five states, water for development in Arizona is extremely valuable.

27. Stanley also performed preliminary work on two additional tracks of land for Rhodes: Red Lake and Hafley Ranch.

28. The Red Lake and Hafley Ranch acreage was in excess of 20,000 acres and is valuable land in the burgeoning solar energy areas of the Hualapai Valley.

29. Stanley performed the work on Red Lake and Hafley Ranch on the belief the Rhodes' ongoing development and homebuilding companies controlled and owned the properties and that Stanley's contracts for the work improved the value of the land.

30. The land listed in the Mediation agreement as "RHA" is depicted in exhibit zzz. This land is in the GVR development and formed the core of Phase 1. Stanley's work for this land increased its value.

31. Stanley also performed services for the development of the master plan for the

1  entire region of Golden Valley.

2      32.    Upon information and belief based upon Stanley's work in this area, Affiant
3  believes that this work was partially financed with proceeds of the Credit Suisse financing.

4      33.    Jim Rhodes also had Stanley perform services on the Aztec Park and the Well site
5  adjacent, services that form part of the basis of Stanley's proof of claims. The ownership of these
6  improvements is not mentioned or identified in the mediation agreement.

7  I declare under penalty of perjury under the laws of the United States of America that the
8  foregoing is true and correct to the best of my knowledge, information and belief.

9  Executed this 2nd day of February 2010.

By: /s/ David Frohnen
David Frohnen