1

1          UNITED STATES BANKRUPTCY COURT

2               DISTRICT OF NEVADA

3               LAS VEGAS, NEVADA

4    In re:  THE RHODES COMPANIES,    )  E-Filed:  02/03/10
     LLC,                             )
5                                     )
                 Debtor.              )  Case No.
6                                     )  BK-S-09-14814-LBR
     _____)  Chapter 11
7

8

9

10

11             TRANSCRIPT OF PROCEEDINGS
                          OF
12     HEARING RE: SECOND AMENDED MODIFIED PLAN, NO. 930
                         AND
13        HEARING RE: OBJECTION, NO. 930
                         AND
14        MOTION FOR RELIEF FROM STAY,
                 GLOBAL SETTLEMENT,
15   AND DECLARATION OF PAUL D. HUYGENS IN SUPPORT THEREOF
              WITH PROPOSED ORDER, NO. 945
16                    VOLUME 1
          BEFORE THE HONORABLE LINDA B. RIEGLE
17           UNITED STATES BANKRUPTCY JUDGE

18            Thursday, January 21, 2010

19                  9:30 a.m.

20

21

22

23   Court Recorder:       Liberty Ringor

24

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

2

```
 1    APPEARANCES:

 2    For the Debtor:        ZACHARIAH LARSON, ESQ.
                             Larson & Stephens, LLC
 3                           810 South Casino Center Boulevard
                             Suite 104
 4                           Las Vegas, Nevada 89101

 5                           SHIRLEY S. CHO, ESQ.
                             Pachulski, Stang, Ziehl & Jones
 6                           10100 Santa Monica Boulevard
                             Eleventh Floor
 7                           Los Angeles, California 90067
                             (Telephonic)
 8
       For the First Lien    PHILIP C. DUBLIN, ESQ.
 9     Steering Committee:   MEREDITH A. LAHAIE, ESQ.
                             Akin, Gump, Strauss, Hauer & Feld, LLP
10                           One Bryant Park
                             New York, New York 10036
11
                             NILE LEATHAM, ESQ.
12                           Kolesar & Leatham, Chtd.
                             3320 West Sahara Avenue
13                           Suite 380
                             Las Vegas, Nevada 89102
14
       For Stanley           JANIECE S. MARSHALL, ESQ.
15     Consultants, Inc.:    Anderson, McPharlin & Conners, LLP
                             777 North Rainbow Boulevard
16                           Suite 145
                             Las Vegas, Nevada 89107
17
       For Credit Suisse,    JAMES MacROBBIE, ESQ.
18     Cayman Islands Branch: Sylvester & Polednak, Ltd.
                             7371 Prairie Falcon Road
19                           Suite 120
                             Las Vegas, Nevada 89128
20
                             RAMON M. NAGUIAT, ESQ.
21                           Skadden, Arps, Slate, Meagher
                               & Flom, LLP
22                           300 South Grand Avenue
                             Suite 3400
23                           Los Angeles, California 90071

24     For Clark County:     PHILIP S. GERSON, ESQ.
                             Olson, Cannon, Gormley & Desruisseaux
25                           9950 West Cheyenne Avenue
```

3

```
1    APPEARANCES (Cont.):

2    T.I. Residential,      DANA JONATHON NITZ, ESQ.
     Inc.:                  Olson, Cannon, Gormley & Desruisseaux
3                           9950 West Cheyenne Avenue
                            Las Vegas, Nevada 89129
4
     In re Kitec Fitting    CAROL L. HARRIS, ESQ.
5    Litigation Class       Kemp, Jones & Coulthard, LLP
     Plaintiffs:            3800 Howard Hughes Parkway
6                           Seventeenth Floor
                            Las Vegas, Nevada 89169
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

```
 1            (Court convened at 09:37:57 a.m.)

 2                THE CLERK:  Bankruptcy court is now in session.

 3                THE COURT:  Be seated.

 4          (Colloquy not on the record.)

 5                THE COURT:  Rhodes Companies.

 6          Appearances, please.

 7                MR. LARSON:  Good morning, your Honor.  Zach Larson

 8      on behalf of Rhodes Companies.

 9                MR. DUBLIN:  Good morning, your Honor.  Phil Dublin

10      and Meredith Lahaie, Akin, Gump, Strauss, Hauer & Feld, on

11      behalf of the First Lien Steering Committee.

12                MS. MARSHALL:  Janiece Marshall on behalf of

13      Stanley Consultants.

14                MR. LEATHAM:  Nile Leatham also for the

15      First Lien Steering Committee.

16                MR. MacROBBIE:  Good morning, your Honor.

17      James MacRobbie of Sylvester & Polednak for the Credit Suisse,

18      Cayman Islands Branch, and also present with me in the

19      courtroom is Ray Naguiat of Skadden, Arps, Slate, Meagher

20      & Flom.

21                MR. GERSON:  Good morning, your Honor.  Philip Gerson

22      on behalf of Clark County.

23                THE COURT:  Okay.

24                MR. NITZ:  Good morning, your Honor.  Dana Nitz on

25      behalf of T.I. Residential.
```

1          MR. HARRIS:  Carol Harris on behalf of

2   in re Kitec Fitting Class Plaintiffs.

3          THE COURT:  All right.  Thank you.  Okay.

4      I guess Mr. Derry (sic).

5      (Colloquy not on the record.)

6          MR. DUBLIN:  Good morning, your Honor.  Again, for

7   the record, Phil Dublin, Akin, Gump, on behalf of the

8   First Lien Steering Committee.

9      Your Honor, we're here today on the continued hearing to

10  consider confirmation of the First Lien Steering Committee's

11  proposed plan of reorganization for the debtors.

12          THE COURT:  I apologize for messing up your name.  I

13  got the wrong city.

14          MR. DUBLIN:  As directed by the Court at the last

15  hearing, on last Friday, January 15th, the First Lien Steering

16  Committee served on among other parties Stanley Consultants and

17  counsel for the Kitec class plaintiffs a proposed amended

18  voting report together with an amended declaration in support

19  of the tabulation of votes in connection with the plan.

20      As the Court may recall, the First Lien Steering Committee

21  is seeking to enforce paragraph 51 and a related provision that

22  was Exhibit 2 to the motion, the solicitation-procedures

23  motion, which are the solicitation and tabulation procedures.

24      Pursuant to that provision, your Honor, the First Lien

25  Steering Committee reserved the right with respect to any

1    unliquidated or unknown claim to be able to notwithstanding the

2    amounts of a vote that was set forth in any ballot to

3    retabulate and recalculate that vote at $1 for purposes of

4    calculating the dollar threshold necessary under 1126(c) for

5    purposes of tabulating votes to accept or reject a plan of

6    reorganization.

7         Your Honor, we obviously did in accordance with your order

8    provide that necessary service.  Two pleadings were filed in

9    connection with the notice, one by the counsel for the class

10   plaintiffs which stated that they have no objection and support

11   confirmation of the plan and one by Stanley Consultants which

12   as your Honor may recall was present at the hearing last week.

13        Stanley Consultants has taken issue with the proposed

14   voting and tabulation report on two primary grounds.  The first

15   is that pursuant to Bankruptcy Rule 3018 an additional hearing

16   is necessary in order to determine what amount their claim

17   should be considered at for purposes of tabulating votes to

18   accept or reject the plan.  Your Honor, the First Lien Steering

19   Committee disagrees with that assertion.

20        As the Court may recall, the motion that was filed by the

21   First Lien Steering Committee for approval of the disclosure

22   statement was brought under Bankruptcy Rule 3018 and in

23   connection with those procedures made clear to the parties that

24   to the extent a claim was unliquidated or unknown the claim

25   would be subject to tabulation and calculation in the amount --

```
1              THE COURT:  Well, no.  Wait.  Let's --
2              MR. DUBLIN:  -- of 1 --
3              THE COURT:  Let's read the exact language and tell me
4    again --
5              MR. DUBLIN:  Sure.
6              THE COURT:  -- where I can find this and just I
7    happen to have the amended certificate which attaches
8    everything, so point me to the page and the exhibit number in
9    that.
10             MR. DUBLIN:  Okay.  Sure.  It's Docket No. 503 is the
11   solicitation-procedures motion.
12             THE COURT:  So it's not in this exhibit, then.
13             MR. DUBLIN:  There was Exhibit 2 to the motion is
14   entitled --
15             THE COURT:  No.  I'm --
16             MR. DUBLIN:  -- solicitation --
17             THE COURT:  I'm --
18             MR. DUBLIN:  -- procedures.
19             THE COURT:  I'm trying to so that I don't have to
20   look at everything.  I'm looking at, what, Docket 931 which is
21   the purported certificate of service.  Oh, solicitation
22   procedures, Exhibit C.  Okay.  Here we go.  So we're looking
23   at --
24             MR. DUBLIN:  It's paragraph 51 of the
25   solicitation-procedures motion, your Honor.
```

```
1              THE COURT:  All right.  But what about in the actual
2     order --
3              MR. DUBLIN:  Well, the order --
4              THE COURT:  -- and the procedures.
5              MR. DUBLIN:  The order approves the motion, and the
6     exhibit --
7              THE COURT:  Okay.
8              MR. DUBLIN:  -- that was attached --
9              THE COURT:  But you attached solicitation procedures.
10             MR. DUBLIN:  Okay.  So that --
11             THE COURT:  All right.
12             MR. DUBLIN:  -- would be --
13             THE COURT:  And that's what was approved.  Okay?
14             MR. DUBLIN:  Those were approved, yes, your Honor.
15             THE COURT:  All right.  And it would look like it
16    would be paragraph --
17             MR. DUBLIN:  It's (d)(2).
18             THE COURT:  There we go.  D, right?
19             MR. DUBLIN:  D.
20             THE COURT:  Okay.  Tell me.  All right.  The claim
21    was timely filed --
22             MR. DUBLIN:  Correct, your Honor.
23             THE COURT:  -- not subject to objection provided,
24    however, the claims are listed in an unliquidated or known
25    amount.
```

1          MR. DUBLIN:  Correct, your Honor.

2          THE COURT:  I can't find in your schedules and

3     statements where these claims were listed.

4          MR. DUBLIN:  Okay.

5          THE COURT:  So if you could point that out to me, it

6     may well just be I couldn't find it.

7        (Colloquy not on the record.)

8          MR. DUBLIN:  In Case No. 09-14844 --

9          THE COURT:  Okay.  Hold on one second.  09- --

10         MR. DUBLIN:  14844.

11         THE COURT:  And that's --

12         MR. DUBLIN:  It's Docket No. --

13         THE COURT:  -- the --

14         MR. DUBLIN:  Docket Entry No. 16.

15         THE COURT:  All right.  Hold on.  No.  That's the

16    general partnership.

17         MR. DUBLIN:  That's correct.

18         THE COURT:  Their claim --

19         MR. DUBLIN:  And then we have another --

20         THE COURT:  -- is in Arizona.

21         MR. DUBLIN:  We also have one in Rhodes Design

22    & Development, your Honor.

23         THE COURT:  Okay.  But this is the general

24    partnership, 14844.

25         MR. DUBLIN:  Correct.  And Stanley is listed in there

1    with an unliquidated claim.

2              THE COURT:  But it wasn't listed as unliquidated in

3    the Rhodes Arizona case.

4         (Colloquy not on the record.)

5              MR. DUBLIN:  Excuse me, your Honor.

6              THE COURT:  Well, let me take a recess.  Let me tell

7    you what my concern is, and you can tell me if I'm wrong or

8    right.  I know --

9              MR. DUBLIN:  Sure.

10             THE COURT:  -- you've ended up substantively

11   consolidating at the end.

12             MR. DUBLIN:  Correct.

13             THE COURT:  I know they're jointly administered.

14             MR. DUBLIN:  Correct.

15             THE COURT:  But they're not yet substantively

16   consolidated.  Stanley filed their claim in Rhodes Arizona,

17   and, indeed, that's the entity whose assets you're spinning off

18   and releasing all the claims, and they also filed a claim in

19   one other case.

20        In order to fit within (2)(D), they have to have been

21   listed in unliquidated or unknown amounts.  So the first

22   question, were they listed in those two cases I mentioned.

23             MR. DUBLIN:  Um-h'm.

24             THE COURT:  Were they listed unknown or unqualified?

25   And if they weren't, if you claim they were listed in some

1    other case, how does that meet the requirements of this?

2           MR. DUBLIN:  Right.  They also filed an unliquidated

3    claim, your Honor.

4           THE COURT:  But it doesn't say that.  It says are

5    listed in an unliquidated or unknown amount.

6           MR. DUBLIN:  Correct.

7           THE COURT:  Okay.  So they put a specific amount in

8    their claim.

9           MR. DUBLIN:  They put a specific dollar amount on the

10   cover page, your Honor.  But into the attachments to support

11   their claim, they set forth claims for breach of contract,

12   unjust enrichment, and quantum meruit.

13     Claims for unjust enrichment and quantum meruit in and

14   of themselves pursuant to applicable law are unliquidated

15   claims.

16          THE COURT:  Well --

17          MR. DUBLIN:  In --

18          THE COURT:  -- but --

19          MR. DUBLIN:  In addition, your Honor --

20          THE COURT:  -- that's not what it says.  You've got

21   to live and die by your solicitation procedures.  Okay?  So I

22   want you to tell me where they fit within your solicitation

23   procedures such that we can tabulate in a dollar by a reference

24   to exactly what you've said.

25     I understand what you're saying, but that's not what your

1    solicitation procedures said.  You guys chose them.  You wrote

2    them.

3              MR. DUBLIN:  Correct, your Honor.

4              THE COURT:  So do you want a chance to look at the

5    schedules to double-check all that?

6              MR. DUBLIN:  Yes, please.

7              THE COURT:  Okay.

8              MR. DUBLIN:  Thank you.

9              THE COURT:  Sure.

10        (Colloquy not on the record.)

11              THE CLERK:  All rise.

12        (Recess at 09:46:46 a.m.)

13        (Court reconvened at 10:38:40 a.m.)

14              THE CLERK:  Bankruptcy court is back in session.

15        (Colloquy not on the record.)

16              THE COURT:  Be seated.  Okay.

17        (Colloquy not on the record.)

18              MR. DUBLIN:  For the record, Phil Dublin, Akin, Gump,

19    on behalf of the First Lien Steering Committee.  Your Honor,

20    thank you for the opportunity for a recess to address your

21    concerns.  I have a response to your concerns.

22              THE COURT:  Okay.

23              MR. DUBLIN:  As you noted pending today is the plan

24    which is premised on the substantive consolidation of the

25    debtor's estates.

```
1          Included in the exhibit which sets forth the solicitation

2     procedures is paragraph 4.  If I may direct your attention to

3     paragraph 4?

4              THE COURT:  4 of the solicitation procedures?

5              MR. DUBLIN:  Yes, sir (sic) -- ma'am.

6              THE COURT:  Okay.

7              MR. DUBLIN:  Yes, ma'am.

8              THE COURT:  All righty.

9              MR. DUBLIN:  It is entitled special provisions

10    related to substantive consolidation.

11             THE COURT:  Um-h'm.

12             MR. DUBLIN:  That provision if I may read it,

13    your Honor, "The plan is predicated on the substantive

14    consolidation of the estates into a single consolidated estate

15    for all purposes associated with confirmation and consummation

16    of the plan.

17         Consequently, when tabulating voting results assuming

18    substantive consolidation, all ballots shall be counted as if

19    filed against a single consolidated estate.

20         And any obligation of any of the debtors and all

21    guarantees thereof by or enforceable against any other debtors

22    and any joint and several liability of the debtors will be

23    treated as a single obligation in the amount of the obligation

24    of the primary obligor."

25         Your Honor, the First Lien Steering Committee's position
```

1   is that since you are considering the plan on a

2   substantively-consolidated basis and the votes of any creditors

3   on a substantively-consolidated basis one would look at the

4   schedules and the liabilities on a consolidated basis and

5   because we have listed Stanley or the -- sorry.

6        Since the debtors have listed Stanley Consultants in their

7   schedules not once, but twice in connection with what would be

8   a consolidated estate as unliquidated claims, that that then

9   takes us back to the provisions of the solicitation procedures

10  that we discussed, previously, at (2)(D).  Sorry.

11          THE COURT:  So to be clear, you did not list them in

12  the Arizona case or the other case.

13          MR. DUBLIN:  They are set forth in the statement of

14  financial affairs as a pending litigation in Arizona because

15  they have sued us in Arizona, but they are not --

16          THE COURT:  No.  Listed.

17          MR. DUBLIN:  -- in the exact schedules --

18          THE COURT:  Right.

19          MR. DUBLIN:  -- of Arizona.

20          THE COURT:  Okay.

21          MR. DUBLIN:  Correct.  But when we view this as a

22  consolidated estate and the schedules on a consolidated basis,

23  we have an unliquidated claim as set forth in those --

24          THE COURT:  Well --

25          MR. DUBLIN:  -- consolidated schedules.

```
 1              THE COURT:  -- I need to see where.  So now that
 2    we're back to Rhodes General Ranch (sic), give me what number.
 3    What docket number?
 4              MR. DUBLIN:  I believe that was 16, your Honor.
 5              THE COURT:  Docket 16.  Okay.
 6              MR. DUBLIN:  I just have a bunch of paper here now,
 7    so I just have to flip back through.
 8              THE COURT:  Okay.
 9              MR. DUBLIN:  It's a little complicated, the
10    schedules, your Honor, so they are set forth on a schedule.
11    It's attachment (f)(1).  It's page 25 of 116.
12              THE COURT:  Oh, 25?
13              MR. DUBLIN:  It's on page 25 of 116.  It's Docket
14    Entry No. 16 --
15              THE COURT:  Okay.
16              MR. DUBLIN:  -- in Case No. 09- --
17              THE COURT:  25.
18              MR. DUBLIN:  -- 14844.
19              THE COURT:  Okay.
20              MR. DUBLIN:  And then they are the last --
21              THE COURT:  Okay.
22              MR. DUBLIN:  -- creditor listed.
23              THE COURT:  So you've listed them in there as --
24              MR. DUBLIN:  Contingent --
25              THE COURT:  -- contingent, unliquidated, and
```

1    disputed --

2              MR. DUBLIN:  -- and disputed.

3              THE COURT:  -- okay --

4              MR. DUBLIN:  And the same, your Honor --

5              THE COURT:  -- and unknown.  Okay.

6              MR. DUBLIN:  And the same, your Honor, in

7    Case No. 09-14846.  That's Rhodes Design & Development

8    Corporation, Docket No. 17.

9              THE COURT:  And they did file a claim in

10   Rhodes Design, correct?

11             MR. DUBLIN:  They filed a claim in both Rhodes Ranch

12   General Partnership and Rhodes Design, your Honor.

13             THE COURT:  No.  I thought they filed it in Arizona.

14             MR. DUBLIN:  That too, three, three claims.

15             THE COURT:  Oh, three claims.

16             MR. DUBLIN:  Yeah.

17             THE COURT:  Okay.  So they filed one in Rhodes Ranch,

18   and they filed one -- now, wasn't the order -- okay.  And you

19   listed them in -- I'm sorry.  They filed a claim in

20   Rhodes Ranch General Partnership.

21             MR. DUBLIN:  Yeah.  They filed claims in Rhodes Ranch

22   General Partnership, Rhodes Arizona, and Rhodes Design

23   & Development Corporation.

24             THE COURT:  Okay.  And you clearly have them listed,

25   and they're listed as --

17

1          MR. DUBLIN:  Contingent --

2          THE COURT:  -- and unliquidated --

3          MR. DUBLIN:  -- unliquidated.

4          THE COURT:  -- or unknown, so you clearly

5    (indiscernible) on that one, so it certainly is $1 in with

6    respect to the claim filed in the general-partnership case.

7    I'm just going through this a step at a time.  I'm not --

8          MR. DUBLIN:  Sure.

9          THE COURT:  I'm not deciding the other issue, yet,

10   and the other case --

11         MR. DUBLIN:  I understand --

12         THE COURT:  -- is --

13         MR. DUBLIN:  -- your Honor.

14         THE COURT:  What's Design's number?

15         MR. DUBLIN:  Rhodes Design & Development Corporation

16   is Case No. 09- --

17         THE COURT:  Um-h'm.

18         MR. DUBLIN:  -- 14846.

19         THE COURT:  I'm sorry.  14846?

20         MR. DUBLIN:  Yes, ma'am.

21         THE COURT:  Okay.  And --

22         MR. DUBLIN:  Docket No. 17.

23         THE COURT:  Okay.  Okay.

24      (Colloquy not on the record.)

25         MR. DUBLIN:  And it is page 26 of 149 --

1          THE COURT:  Okay.  Hold on.

2          MR. DUBLIN:  -- the third creditor listed --

3          THE COURT:  Okay.

4          MR. DUBLIN:  -- on the chart.

5          THE COURT:  26.

6      (Colloquy not on the record.)

7          THE COURT:  Okay.  And it's definitely there, so they

8  have this $1 claim in Design, and that only leaves -- how much

9  was their fraud claim in Arizona Properties?

10          MR. DUBLIN:  About 3.4 mil, your Honor.

11          THE COURT:  Okay.  So that is the only issue, then.

12  All right.  So go ahead and finish your argument --

13          MR. DUBLIN:  So --

14          THE COURT:  -- as to --

15          MR. DUBLIN:  So my argument, your Honor, is that when

16  you view -- since the tabulation and the plan is being viewed

17  out on a consolidated basis, you would view the liabilities of

18  the estates on a consolidated basis.

19      And since we have in the consolidated -- if you look at

20  the schedules on a consolidated basis, it listed Stanley

21  Consultants with an unliquidated claim that we were able to

22  then apply the provisions of the solicitation and tabulation

23  procedures in paragraph -- I'm sorry -- (d)(2)(D) to calculate

24  their claim on a consolidated basis at $1 for purposes of

25  voting on a plan premised on substantive consolidation when you

1    combine paragraph 4 and paragraph (d)(2)(D).

2            THE COURT:  Why in the world didn't the debtor list

3    this claim as a creditor to Rhodes Homes Arizona?

4            MR. DUBLIN:  Because they are pursuing claims against

5    them at Rhodes Homes Arizona.

6            THE COURT:  But there was a counterclaim --

7            MR. DUBLIN:  It's --

8            THE COURT:  -- April --

9            MR. DUBLIN:  No.  The debtors sued them, sued --

10            THE COURT:  I understand, but there was a

11    counterclaim --

12            MR. DUBLIN:  I understand.

13            THE COURT:  -- Defendant/Counterplaintiff

14    Stanley Consultants for its counterclaim against --

15            MR. DUBLIN:  I understand, your Honor.  I would have

16    to defer to debtor's counsel who prepared the schedules --

17            THE COURT:  Okay.

18            MR. DUBLIN:  -- and who's on the phone.

19            THE COURT:  But they were clearly listed as a

20    creditor.  I mean, they were clearly sued as a -- Rhodes Homes

21    Arizona was clearly sued by Stanley litigation,

22    Stanley Engineering.

23            MR. DUBLIN:  And that's another issue, your Honor, is

24    that Stanley Engineering is the entity, and Stanley Consultants

25    is the creditor, so it's not actually the right entity.

1          THE COURT:  Okay.  You're right.  Stanley Consultants

2     filed the counterclaim, and the claim was filed by

3     Stanley Engineering?  I think that's right.  No.  Excuse me.

4     The claim was filed by Stanley -- excuse me --

5     Stanley Consultants.

6          MR. DUBLIN:  I'm sorry, your Honor.

7          THE COURT:  Oh, okay.  You've listed

8     Stanley Consultant and Stanley -- you listed

9     Stanley Consultant.  That's right.

10          MR. DUBLIN:  Correct.

11          THE COURT:  No.  The claim was filed by

12     Stanley Consultants.

13          MR. DUBLIN:  Yes.  I believe I misspoke.

14          THE COURT:  Okay.  All right.  Go ahead.  I apologize

15     for interrupting.

16          MR. DUBLIN:  No.  That --

17          THE COURT:  But I --

18          MR. DUBLIN:  No.  That's okay.  I --

19          THE COURT:  -- keep --

20          MR. DUBLIN:  I appreciate the opportunity to try to

21     explain.  So based on our view that we must look at everything

22     on a consolidated basis, and we have what would be a

23     consolidated schedules listed them with unliquidated claims and

24     because the claims are unliquidated just based on the face of

25     the attachments to Stanley's objection today.  If you review,

1    if you turn to page 32 of their objection which is Docket Entry

2    No. 942 --

3            THE COURT:  Um-h'm.

4            MR. DUBLIN:  I'm sorry, your Honor.  You can actually

5    turn to page -- it's the same language on page 30 --

6            THE COURT:  Of what?

7            MR. DUBLIN:  -- of their objection.  If you want, on

8    the bottom of the pages, there is the handwritten.  It looks

9    like handwritten-in numbers.

10           THE COURT:  Oh, all right.  Well, no.  That's the

11   complaint.

12           MR. DUBLIN:  This is --

13           THE COURT:  Page 30 is the complaint.

14           MR. DUBLIN:  -- their answer and counterclaim which

15   they attach as an exhibit.

16           THE COURT:  Right.

17           MR. DUBLIN:  And this is --

18           THE COURT:  Uh-huh.

19           MR. DUBLIN:  I'm going to use this to prove to

20   your Honor that their claims are -- even they acknowledge that

21   their claims are unliquidated because they seek as I mentioned

22   earlier this morning three counts, breach of contract as

23   referenced on page 30 --

24           THE COURT:  Well --

25           MR. DUBLIN:  -- of their --

1          THE COURT:  -- where does that fit within the

2     solicitation procedures?

3          MR. DUBLIN:  The issue is whether -- we've listed

4     them as unliquidated.  They're asserting that notwithstanding

5     the fact that we've listed them as unliquidated they do not

6     have unliquidated claims in their objection.

7          THE COURT:  Okay.

8          MR. DUBLIN:  So I am showing you how they had

9     actually attached documentation evidencing or admitting that

10    they have unliquidated claims --

11         THE COURT:  Okay.

12         MR. DUBLIN:  -- notwithstanding what they assert.

13         THE COURT:  I see.

14         MR. DUBLIN:  And that is they have asserted three

15    counts in their counterclaim in the pending state court

16    litigation and no set dollar amount.

17         THE COURT:  Well, how about paragraph 12 of Count I?

18         MR. DUBLIN:  I'm sorry?

19         THE COURT:  How about paragraph 12 of Count I on

20    page 30?

21         MR. DUBLIN:  Right.  That they say that the Defense

22    are in default of their obligations under the contracts.

23         THE COURT:  Well, paragraph 12, for damages in excess

24    of two-million- --

25         MR. DUBLIN:  Right.  That's --

```
 1              THE COURT:  -- five-hundred- --
 2              MR. DUBLIN:  Right.
 3              THE COURT:  -- eighty-four-thousand-
 4   nine-hundred-and-ninety-four-dollars-and-eighty-one cents.
 5              MR. DUBLIN:  Right.  But what I'm saying is they're
 6   saying in excess of that amount.
 7              THE COURT:  Oh --
 8              MR. DUBLIN:  The exact amount --
 9              THE COURT:  -- come on, Counsel.  When somebody puts
10   that 81 cents --
11              MR. DUBLIN:  The exact amount of which will be proved
12   at trial, and they've also sought unjust enrichment and
13   quantum meruit claims which pursuant to applicable law --
14              THE COURT:  I can appreciate that.
15              MR. DUBLIN:  -- are defined --
16              THE COURT:  But don't sit here --
17              MR. DUBLIN:  -- as unliquidated claims.
18              THE COURT:  -- with a straight face and telling me
19   that when you seek damages of 2,584,994.81 plus prejudgment
20   interest calculated out plus postjudgment interest is an
21   unknown amount.
22              MR. DUBLIN:  Well, that's the amount that they have
23   asserted, your Honor, on their invoices as to what is owed, but
24   they are asserting that even if they're wrong on what the
25   amount is that they put on their invoices they are seeking
```

1    quantum meruit and unjust-enrichment claims for what the actual

2    amount may be, an actual amount that cannot be determined until

3    there is a trial on the merits of these claims.  We have

4    pending litigation brought by the debtor entities against

5    Stanley and then Stanley in counterclaims.

6            THE COURT:  I guess what's so frustrating it would

7    have been so easy for you all to have amended your schedules to

8    include the Arizona, Rhodes Arizona.  It would have been so

9    easy for you to file an objection to claim, and you didn't do

10   any of that.

11           MR. DUBLIN:  I understand that issue, your Honor.

12   But based on the arguments today, I believe that there is

13   sufficient support that we have on a consolidated basis,

14   scheduled unliquidated claims, and, therefore, Stanley's vote

15   on a consolidated basis is properly counted for at $1.

16           THE COURT:  Is claim defined in this procedure

17   section?

18           MR. DUBLIN:  I --

19           THE COURT:  Oh, it's --

20           MR. DUBLIN:  Claim is defined in the plan as defined

21   in the bankruptcy code, your Honor.

22           THE COURT:  Okay.  So claim means any right to

23   payment contained (indiscernible).  Doesn't the original

24   case-management order require everybody to file their proofs of

25   claim in the case in which they allege it to be the person

1    against whom it alleges to be?

2            MR. DUBLIN:  The proofs of claim, yes.  That's

3    correct.

4            THE COURT:  So how does 4 get you around the problem

5    that --

6            MR. DUBLIN:  Because we are doing everything for

7    purposes of plan -- everything for plan purposes is being done

8    on a consolidated basis as referenced in paragraph 4.

9        Therefore, we look at all of the liabilities on a

10   consolidated basis and the schedules on a consolidated basis.

11   And a consolidated basis, the schedules set forth the claims of

12   Stanley --

13           THE COURT:  Well --

14           MR. DUBLIN:  -- in unliquidated amounts.

15           THE COURT:  -- why wouldn't the converse be true?

16   Because you didn't list them as unknown or litigated in the

17   Arizona case, why shouldn't claim count in all three cases,

18   then?

19           MR. DUBLIN:  Because we are looking at a single

20   state.  And when you consolidate the schedules on a

21   consolidated basis, we have them scheduled in the consolidated

22   schedules --

23           THE COURT:  But you don't conversely.

24           MR. DUBLIN:  -- as an unliquidated.

25           THE COURT:  You don't in the Arizona case.

```
 1              MR. DUBLIN:  But we are not looking at the plan --
 2              THE COURT:  I understand.
 3              MR. DUBLIN:  -- on an entity-by-entity --
 4              THE COURT:  But my point is --
 5              MR. DUBLIN:  -- basis.
 6              THE COURT:  -- why is it --
 7              MR. DUBLIN:  Because --
 8              THE COURT:  Well --
 9              MR. DUBLIN:  Because the procedures contemplate
10    everything being done on a substantively-consolidated basis.
11              THE COURT:  Right.  But the converse is they weren't
12    listed in the Arizona case, so why don't you look to that one
13    to say where it's consolidated, so, ergo, it all counts as
14    opposed to excising out the general partnership and the other
15    claim?
16              MR. DUBLIN:  Well, I am not removing -- if I take all
17    of the schedules together and if I do it on a consolidated
18    basis, I would take all of the liabilities of each entity.
19         And I would take one -- if I filed one consolidated
20    schedule, then Stanley would be listed on that consolidated
21    schedule --
22              THE COURT:  But it wasn't.
23              MR. DUBLIN:  -- on a -- if I may finish, your Honor?
24    Because they are scheduled in two of the debtor entities with
25    unliquidated claims on a consolidated-schedule basis, they
```

```
 1        would be listed with an unliquidated claim.

 2                 THE COURT:  But why isn't --

 3                 MR. DUBLIN:  We would not be able --

 4                 THE COURT:  -- the converse true?

 5                 MR. DUBLIN:  Because we would not be able -- if you

 6        know that unliquidated claims exist at certain entities, you

 7        cannot pursuant to applicable bankruptcy law exclude them from

 8        the schedules.  You can't.  If you know that you have an

 9        unliquidated liability with respect to an entity --

10                 THE COURT:  Right.

11                 MR. DUBLIN:  -- you can't just leave them off.

12                 THE COURT:  But you did.  You did in the

13        Arizona Properties case.

14                 MR. DUBLIN:  Yes.  That would be a fair point,

15        your Honor.

16                 THE COURT:  You did.  Okay.  Any other?  I've been

17        interrupting you, and I apologize.  Any other argument in this

18        regard?

19                 MR. DUBLIN:  I would just note that with respect to

20        the first portion of their objection with respect to

21        Bankruptcy Rule 3018 that the solicitation procedures itself

22        was a 3018 motion filed by the First Lien Steering Committee.

23            In the statutory predicate and legal predicates, it is

24        Bankruptcy Rule 3018 is included.  Stanley was, therefore, on

25        notice that its claim could be calculated in the amount of $1.
```

1    That the creditor itself never filed its own 3018 motion in

2    advance of the confirmation hearing.

3            THE COURT:  Okay.  All right.  Ms. Marshall.

4        (Colloquy not on the record.)

5            MS. MARSHALL:  Thank you, your Honor.

6    Janiece Marshall on behalf of Stanley Consultants.  Your Honor,

7    we would incorporate the arguments that you've made questioning

8    the problems with the solicitation procedures, the disclosure

9    statement.

10       We filed three proofs of claim.  We filed it against

11   Rhodes Arizona.  We also filed against Rhodes Design and

12   Rhodes General Partnership.

13       The Rhodes Arizona claim is over 3.4 million.  The

14   documents that we attached to our objection to this recount of

15   the tabulation, our answer, and our counterclaims, we had

16   services that we performed pursuant to written agreements with

17   these three entities, and we were not paid for those services.

18       Mr. Rhodes filed a preemptory lawsuit in Arizona when he

19   didn't pay, and we started requesting collection and collection

20   of the amounts owed.  He then crafted this litigation against

21   us.

22       And the basis of our litigation is just to collect the

23   money that we are owed from the services that we provided

24   pursuant to the contracts.

25       Our claims are not unliquidated.  We filed the amounts

1    of our claims calculated as its time of the proofs of the

2    claims.

3        We note that the documents that we attached are in

4    addition to listing the dollar amount up to the 81 cents that

5    was owed at that time I believe is from 2008.

6        We are now into 2010, plus the fact that we listed at that

7    time that we were owed two-and-a-half-million dollars for the

8    services provided.

9        And, in fact, the contracts, the original contracts, were

10   12,000,000.  They paid us some of the money, but not all the

11   money, and that's the basis of the Arizona litigation.

12       Our claims are not unliquidated.  They're not contingent.

13   We have specific contracts amount that they have not paid, and

14   we attached to and referenced in the declaration attached to

15   our objection.

16       In our objection to the disclosure statement, we attached

17   the declaration of Dave Fronan (phonetic) who goes through and

18   provides what the services were performed for and the amounts

19   that were owed which is proof of the amount of our claim.

20       We also object, your Honor, to the recounting of the

21   tabulation.  The First Lien Steering Committee made the

22   decision of this is how we're going to tabulate it the first

23   time.

24       They made the choice to count the dollar amounts.  Now

25   they want to recount, and Stanley doesn't think their claims

1    should be reduced for any purposes.

2         We did perform the services in good faith pursuant to

3    written agreements.  We filed our proofs of claim.  They were

4    never objected to.

5         We raised the fact that they were never objected to when

6    we filed our objection to the disclosure statement months ago

7    and pointed out then that they had never objected to any of our

8    claims and brought it to their attention at that time, and they

9    still haven't done it.

10        The cases haven't been substantively consolidated, and

11   they didn't list the Rhodes Arizona claim as unliquidated;

12   therefore, their procedures that they set forth have not been

13   complied with.

14        And Stanley requests that the original tabulation and even

15   this new tabulation shows that the C-1 class rejected this

16   plan, and we request that Stanley's claims and its votes be

17   counted.

18             THE COURT:  Okay.

19             MS. MARSHALL:  Thank you, your Honor.

20             THE COURT:  All right.  Reply.

21             MR. DUBLIN:  Your Honor, I'll just restate my

22   arguments before that the procedures specifically set forth

23   that the whole solicitation process is being done on a

24   substantively-consolidated basis.

25        And, therefore, the liability should be viewed on the

 1    substantively-consolidated basis with reference back to the

 2    schedules.

 3        I would also like to note that the Rhodes Arizona entity

 4    is not a -- even if you take the 3.4-million-dollar number that

 5    they assert, it is not the amount that they put on their

 6    ballot.

 7        They put in excess of 4.6 million dollars on the ballot

 8    which is not the amount that's assertable against or that they

 9    assert is even owed by the Rhodes Homes Arizona entity.

10        Rather, that amount based on the only information that we

11    have seen would be either 2.5 as they reference in their

12    amended complaint or without support the 3.4 million.

13            THE COURT:  Well, it doesn't make any difference

14    whether it's 2.8 (sic) or 3 point whatever.  That doesn't get

15    you --

16            MR. DUBLIN:  Well, at 2.5, your Honor, Kitec today

17    would vote in favor of the plan, and we would then seek to

18    allow their claim for voting purposes in the amount of their

19    proof of claim as opposed to reducing it to $1.

20            THE COURT:  But how does that comport with your

21    procedures?  It doesn't, right?

22            MR. DUBLIN:  To allow it if they vote in -- if they

23    switch their vote to vote --

24            THE COURT:  No.  How does --

25            MR. DUBLIN:  -- in favor?

1          THE COURT:  How can you reduce -- let's assume you

2     didn't have the problem of the listing whatever.  Let's assume

3     it was just a straight you didn't like this amount.  How under

4     your procedures could you do that?  You can't, right?

5          MR. DUBLIN:  Well, I believe, your Honor -- and I'm

6     waiting on confirmation -- that the procedure provides that in

7     paragraph D that it's the amount on a proof of claim.  Now, the

8     question --

9          THE COURT:  Right.

10         MR. DUBLIN:  The amount on the proof of claim that

11    was filed in the Arizona entity is 3.4; however, the documents

12    attached to it include different numbers.

13         THE COURT:  And --

14         MR. DUBLIN:  So it's actually determined what the

15    amount is that's included in the proof of claim is not readily

16    discernible.

17         THE COURT:  But it says the amount contained in a

18    proof of claim.

19         MR. DUBLIN:  Right.  But the proof of claim includes

20    not just the form, but everything that's filed with it.

21         THE COURT:  Right.  But 2.8 million plus interest

22    probably equals 3 point whatever.

23         MR. DUBLIN:  If they're entitled to interest,

24    your Honor.

25         THE COURT:  Why wouldn't they be?

1           MR. DUBLIN:  It's a state court litigation issue to

2   the extent --

3           THE COURT:  Oh --

4           MR. DUBLIN:  -- they're owed anything --

5           THE COURT:  -- I can't imagine --

6           MR. DUBLIN:  -- subject --

7           THE COURT:  -- any state court --

8           MR. DUBLIN:  -- to the --

9           THE COURT:  -- wouldn't allow you post the

10  contract --

11          MR. DUBLIN:  Subject to the terms --

12          THE COURT:  -- because it would be --

13          MR. DUBLIN:  -- of the contract --

14          THE COURT:  Yeah.

15          MR. DUBLIN:  -- wherein there's nothing there --

16          THE COURT:  I'm sure there's interest --

17          MR. DUBLIN:  -- that it would be federal --

18          THE COURT:  -- in the contract.

19          MR. DUBLIN:  They're seeking a statutory-judgment

20  rate.

21          THE COURT:  Okay.

22          MR. DUBLIN:  And the question is whether that would

23  be the right rate or it would be a federal-judgment rate which

24  is something closer to half a percent.

25          THE COURT:  And point me again to the provision --

```
 1              MR. DUBLIN:  Paragraph --
 2              THE COURT:  -- and I'm not disagreeing -- the
 3    provision that says that you can retabulate after you've
 4    tabulated --
 5              MR. DUBLIN:  Well, the --
 6              THE COURT:  -- that --
 7              MR. DUBLIN:  The --
 8              THE COURT:  -- you can amend that.
 9              MR. DUBLIN:  The procedures provide -- we were
10    authorized by the Court to send out a new retabulation --
11              THE COURT:  I understand that.
12              MR. DUBLIN:  -- at --
13              THE COURT:  And I --
14              MR. DUBLIN:  -- the last hearing.
15              THE COURT:  I said to do that, and I believe you told
16    me the authority you could do that before.  Just tell me again,
17    so that I've got one complete record what that authority was
18    for allowing you to retabulate after you had tabulated or is it
19    just the --
20              MR. DUBLIN:  Well, I don't believe it -- it's
21    reliance on (d)(2)(D) --
22              THE COURT:  Just reliance on (d)(2).
23              MR. DUBLIN:  -- and nothing that prohibits it.
24              THE COURT:  Okay.
25              MR. DUBLIN:  Correct, your Honor.
```

35

1           THE COURT:  I see.  Okay.  All right.

2      Well, I find that you have not met the requirements for

3  accepting class of unsecured creditors because the

4  Stanley Consultants claim in the amount asserted in the Arizona

5  entity must be counted in accordance with the procedures.

6      First of all, I do agree with the secured lenders that the

7  3018 procedure which normally would follow which would be the

8  objection to claim followed by allowance or temporary allowance

9  has been supplanted by these procedures, so we live and die by

10 those procedures.

11     If somebody had brought these to my attention in the

12 beginning, would I have adopted them?  M'mm, maybe, maybe not,

13 but that's beside the point.  We live and die by these

14 procedures, so that cuts both ways.

15     I do find it appropriate to retabulate in accordance with

16 those procedures because, in essence, if the procedures say the

17 claims should be established as X, and the valid agent didn't

18 do that, then, obviously, it's appropriate to retabulate, but

19 the question is do we retabulate this case.

20     And (d)(2) says, "In tabulating votes, the following

21 hierarchy shall be used to determine the claim amount

22 associated with each holder's vote regardless of the amount

23 that the holder may write in on the ballot."  All right.

24     A is not applicable.  We don't have an allowed claim,

25 capital A.  We don't have a temporary allowance.  We don't have

1    a settlement amount relying on D.

2        And then that says, "The claim amount contained in a proof

3    of claim that has been timely filed by the bar date" --

4    nobody's suggesting it wasn't timely filed by the bar date --

5    "that is not the subject of objection or has not been withdrawn

6    provided" -- and I find that you must count each of the

7    entities in which the claimant has filed a proof of claim, and

8    I'll relate that back to your argument in just a minute --

9    "provided, however, the ballots cast by holders whose claims

10   are listed in unliquidated or unknown amounts that are not the

11   subject of objection will count for satisfying numerosity and

12   will count as claims in the amount of $1 for purposes of

13   satisfying the dollar amount."

14       So Stanley Consultants claimed that it filed in the

15   Partnership case and the Design case the schedules.  They were

16   listed as unliquidated or unknown, and so those claims must

17   each be reduced to $1.

18       However, the problem with the Arizona case was that they

19   were never listed in the schedules at all let alone listed as

20   unknown, contingent, or unliquidated.

21       I don't think you're -- I find that you are not saved by

22   the substantive-consolidation provision because on one hand

23   while that sounds appealing my argument is, wait a minute, why

24   is it you can when you're doing substantive consolidation count

25   the ones that count as $1 and don't count the ones that the

1    creditor or debtor didn't do right.

2         And the problem is as I said the debtor slash creditors

3    had all these things in their power, and you chose not to do

4    them, and we are talking here about cram-down.

5         We are talking about taking away a creditor's rights to

6    payments, and the issue we now face is whether or not you can

7    still cram down.

8         And as I indicated before, I am not willing to say that

9    despite your assertion that no junior creditor or class is

10   receiving or retaining anything on account of the plan that --

11   while you say that, that is true in the context of cram-down

12   because Rhodes entities are receiving all of the Arizona assets

13   free and clear of all claims, and the debtor takes the claims.

14        Conversely, I'm not willing to say you don't meet

15   cram-down because you may be able to demonstrate to me that,

16   yes, it is not on account of -- they're not receiving this on

17   account of their claim.  They're receiving it either through a

18   new-value exception, a settlement, whatever.

19        My point is you now need to go to step two.  I find that

20   you haven't met the acceptance provisions because of the vote

21   of Stanley still -- even when we count Kitec, it doesn't meet

22   the test.  We have a claim of $3,000,000 that was filed.  Let

23   me go back.

24        This argument about whether it truly is unknown or known

25   to me is beside the point.  We're living again, living and

1    dying, by what you said in your procedures.  That's kind of

2    beside the point whether or not it's known or unknown.  Because

3    they filed a proof of claim, you've got to count that in the

4    amount they filed in the proof of claim.

5        Your way to avoid that was to file an objection at least

6    to, you know, an objection to disallow it to some lower amount,

7    for example.  That wasn't done.  I know you worked hard on this

8    plan, but that's we all live and die by the provisions of 1129.

9        Now, tell me what you want to do, how long you would like

10   to have, and then I guess, of course, your other option is to

11   now file an objection and go through an estimation claim I

12   suppose, I assume.  You tell me how long you want to brief

13   these issues, and when do you want to come back on this?

14           MR. DUBLIN:  I would like to as soon as possible,

15   your Honor.  If we could file a brief by next Wednesday and

16   have responses due sometime the following week and then in the

17   middle of the following week and then have a hearing at the end

18   of it, so that would be either the 11th or the 12th of

19   February.

20           THE COURT:  Okay.  I could let you have

21   February 11th.

22           MR. DUBLIN:  That will be fine with us, your Honor.

23           THE COURT:  Okay.  So February 11th for argument on

24   cram-down and evidence if evidence is required.

25           MR. DUBLIN:  Correct, your Honor.

```
 1                 THE COURT:  So we --

 2                 MR. DUBLIN:  Understood.

 3                 THE COURT:  We would leave that whole day.  I think

 4        you should indicate in your pleading if you intend to use

 5        evidence any declarations that you intend to use.

 6            And then in the opposition, if any, Ms. Marshall would

 7        have to let you know whether or not she seeks to have that

 8        witness available for cross-examination.

 9                 MR. DUBLIN:  Okay, your Honor.  When would you -- if

10        we file our brief on this issue by next Wednesday with

11        responses due the following Tuesday be sufficient, so that we'd

12        be able to prepare for a hearing --

13                 THE COURT:  Yes.

14                 MR. DUBLIN:  -- Wednesday for a hearing on Thursday?

15                 THE COURT:  Um-h'm.  Well, wait.  Let's see.  Next

16        week is the -- ooh, I'd like a little longer because I need to

17        do some research.  I'm sorry.  I've lost a whole week here.  My

18        month went faster than I thought it did.

19            Your brief is Wednesday.  Oh, if I have your brief, that

20        gets me -- because that's the main thing is seeing how you tee

21        up --

22                 MR. DUBLIN:  Understood --

23                 THE COURT:  -- the issue.

24                 MR. DUBLIN:  -- your Honor.

25                 THE COURT:  And I understand the defects, so that's
```

1    fine.  That gives me -- if you file it by next Wednesday, that

2    gives me enough time to be ready for the hearing on Thursday.

3    Hopefully, I'll give you an answer that day.

4            MR. DUBLIN:  Oh, hopefully.

5            THE COURT:  But, of course, I reserve the right that

6    if it's more complicated --

7            MR. DUBLIN:  Understood, your Honor.

8            THE COURT:  -- to consider it.  All right.

9            MR. DUBLIN:  So it would be the brief, our brief,

10    filed by next Wednesday.

11            THE COURT:  Correct.

12            MR. DUBLIN:  Responses due by the following Tuesday.

13            THE COURT:  Yes.

14            MR. DUBLIN:  And we'll send out the appropriate

15    notice.

16            THE COURT:  Okay.

17            MR. DUBLIN:  Thank you, your Honor.

18            THE COURT:  Thank you very much.

19            MS. CHO:  Your Honor, what time is --

20            MR. DUBLIN:  Oh.

21            MS. CHO:  Pardon me.  It's Shirley Cho on behalf of

22    the debtors on the phone.

23            THE COURT:  9:30.

24            MS. CHO:  Thank you.

25            MR. DUBLIN:  Thank you, your Honor.

1          THE COURT:  And you have all day.

2          MR. DUBLIN:  Thank you.

3          THE COURT:  All right.  Thank you.

4     (Colloquy not on the record.)

5          THE CLERK:  All rise.

6     (Court concluded at 11:10:12 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        I certify that the foregoing is a correct transcript

2    from the electronic sound recording of the proceedings in

3    the above-entitled matter.

4

5

6    /s/ Lisa L. Cline                        02/03/10

7    _____              _____
     Lisa L. Cline, Transcriptionist            Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25