1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**
**SOUTHERN DIVISION**

**IN RE:**

**THE RHODES**
**COMPANIES, LLC,**
aka "Rhodes Homes," *et al.*,

    **Debtors.**[1]

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**Case No. 09-14814-LBR**
**(Jointly Administered)**


**Chapter 11**


**Hearing Date: February 11, 2010**
**Hearing Time:  9:30 a.m. (PST)**
**Courtroom 1**

**Affects:**
☒ **All Debtors**
☐ **Affects the following**
   **Debtor(s)**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

**PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE FIRST LIEN STEERING COMMITTEE'S SECOND AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE RHODES COMPANIES, LLC, ET AL.**

## RECITALS[2]

A.      On either March 31, 2009 or April 1, 2009 (collectively, the "Petition Date"), each of the Debtors commenced with the Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

B.      Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are currently authorized to operate their businesses and manage their properties as debtors in possession. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only. No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      On May 26, 2009, pursuant to Bankruptcy Code section 1102, the United States Trustee for the District of Nevada appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee"). The Creditors' Committee currently consists of four members: G.C. Wallace, Inc.; Interstate Plumbing & Air Conditioning; M & M Electric, Inc.; and Southwest Iron Works, LLC.

D.      On November 23, 2009, the First Lien Steering Committee filed (i) the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al. (the "Plan") and (ii) the accompanying Second Amended Modified Disclosure Statement for the Plan of

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan (as defined herein) or the Disclosure Statement (as defined herein), as applicable.

1  Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies,

2  LLC, *et al.* (the "Disclosure Statement").

3        E.      On December 1, 2009, the Court entered the Order (A) Approving the

4  Adequacy of the First Lien Steering Committee's Disclosure Statement; (B) Approving

5  Solicitation and Notice Procedures with Respect to Confirmation of the First Lien Steering

6  Committee's Proposed Plan of Reorganization; (C) Approving the Form of Various Ballots

7  and Notices in Connection Therewith; and (D) Scheduling Certain Dates with Respect

8  Thereto (Docket No. 809) (the "Solicitation Procedures Order"). The Solicitation

9  Procedures Order (i) approved the Disclosure Statement as containing adequate information

10 within the meaning of Bankruptcy Code section 1125(a), (ii) fixed December 1, 2009, as the

11 record date for purposes of determining eligibility to vote to accept or reject the Plan,

12 (iii) fixed January 4, 2010, at 4:00 p.m. (Pacific Time) as the deadline for submitting ballots

13 accepting or rejecting the Plan, (iv) fixed January 4, 2010 at 4:00 p.m. (Pacific Time) as the

14 deadline for filing objections to the Plan, (v) fixed January 11, 2010, as the deadline for

15 filing the Memorandum (as defined below), (vi) fixed January 11, 2010 as the deadline by

16 which Omni Management Group, LLC (the "Claims and Solicitation Agent") must file its

17 report summarizing the results of voting on the Plan (the "Voting Report"), and (vii) fixed

18 January 14, 2010, at 9:00 a.m. as the date and time for the commencement of the hearing of

19 the confirmation hearing (the "Confirmation Hearing") on the Plan. The Solicitation

20 Procedures Order also approved certain procedures for soliciting votes to accept or reject the

21 Plan (the "Solicitation Procedures").

22        F.      In accordance with the Solicitation Procedures Order, the solicitation

23 materials described in the Solicitation Procedures were transmitted to and served on all

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1 | Holders of Claims that were entitled to vote to accept or reject the Plan, as well as certain

2 | other parties in interest in the Debtors' Chapter 11 Cases.

3 |       G.      Adequate and sufficient notice of the Confirmation Hearing and other

4 | requirements and deadlines, hearings and matters described in the Solicitation Procedures

5 | Order was provided in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the

6 | Solicitation Procedures Order. As evidenced by the Osborne Declarations (as defined

7 | below) and various certificates of service filed by Nova George (*see* Docket Nos. 819, 822,

8 | 823, 824, 825, 826, 931 and 932), the Confirmation Hearing Notice, the Plan, the Disclosure

9 | Statement and all exhibits thereto were mailed on or about December 4, 2009 to Holders of

10 | Claims against and Interests in the Debtors and other parties in interest. A notice of

11 | continuation on the Confirmation Hearing was served on appropriate parties on January 22,

12 | 2010 (*See* Docket No. 954).

13 |       H.      On January 11, 2010, the First Lien Steering Committee filed the Declaration

14 | of Brian Osborne Certifying the Tabulation of Ballots Regarding Vote on Second Amended

15 | Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The

16 | Rhodes Companies, LLC, *et al.*, dated and sworn to on January 11, 2010, attesting to and

17 | certifying the methods and results of the ballot tabulation for the Classes of Claims entitled

18 | to vote to accept or reject the Plan (the "Osborne Declaration"). The Voting Report was

19 | attached as Exhibit A to the Osborne Declaration.

20 |       I.      On January 15, 2010, the First Lien Steering Committee filed the Amended

21 | Declaration of Brian Osborne Certifying the Tabulation of Ballots Regarding Vote on

22 | Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the

23 | Bankruptcy Code for The Rhodes Companies, LLC, *et al.*, dated and sworn to on January

24 | 15, 2010, attesting to and certifying the methods and results of the ballot tabulation for the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

Classes of Claims entitled to vote to accept or reject the Plan (the "Amended Osborne Declaration"). An amended Voting Report (the "Amended Voting Report") reflecting a retabulation of certain ballots pursuant to the Solicitation Procedures was attached to the Amended Osborne Declaration as Exhibit A.

J.    On January 27, 2010, the First Lien Steering Committee filed the Second Amended Declaration of Brian Osborne Certifying the Tabulation of Ballots Regarding Vote on Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.*, dated and sworn to on January 26, 2010, attesting to and certifying the methods and results of the ballot tabulation for the Classes of Claims entitled to vote to accept or reject the Plan (the "Second Amended Osborne Declaration" and, together with the Osborne Declaration and the Amended Osborne Declaration, the "Osborne Declarations"). An amended Voting Report (the "Second Amended Voting Report" and, together with the Voting Report and the Amended Voting Report, the "Voting Reports") reflecting the further retabulation of certain ballots pursuant to the Solicitation Procedures and the direction of the Court was attached to the Second Amended Osborne Declaration as Exhibit A. As evidenced by the Osborne Declarations, the ballots were tabulated in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Procedures Order.

K.    The following pleadings were filed prior to the deadline for filing objections to the Plan: (i) the Conditional Objection to Chapter 11 Plan filed by Caterpillar Financial Services Corporation on January 4, 2010 (Docket No. 895); and (ii) the Limited Response to Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.* filed by Credit Suisse AG, Cayman Islands Branch on January 5, 2010 (Docket No. 899). No other objections to

5

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  confirmation of the Plan were filed. The filed conditional objection and limited response to

2  confirmation of the Plan are collectively referred to herein as the "Objections." The

3  Objections were either withdrawn or resolved on a consensual basis.

4      L.      On January 11, 2010, the First Lien Steering Committee filed (a) the First

5  Lien Steering Committee's Memorandum of Law (I) in Support of Confirmation of the

6  Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the

7  Bankruptcy Code for The Rhodes Companies, LLC, *et al.* and (II) in Response to Objections

8

9  Thereto, (b) the Declaration of Richard Dix in Support of Confirmation of the Second

10 Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code

11 for The Rhodes Companies, LLC, *et al.*, and (c) the Osborne Declaration (collectively, and

12 including the Amended Osborne Declaration, the "Initial Confirmation Papers").

13     M.      On January 27, 2010, the First Lien Steering Committee filed (a) the First

14 Lien Steering Committee's Supplemental Memorandum of Law in Support of Confirmation

15 of the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the

16 Bankruptcy Code for The Rhodes Companies, LLC, *et al.*, (b) the Declaration of Justin

17 Bono in Support of Confirmation of the Second Amended Modified Plan of Reorganization

18 Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, *et al.*, (c)

19 the Declaration of Charles Hewlett in Support of Confirmation of the Second Amended

20 Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the

21

22 Rhodes Companies, LLC, *et al.*, and (d) the Second Amended Osborne Declaration

23 (collectively, the "Supplemental Confirmation Papers").

24

25     N.      On February 2, 2010, Stanley Consultants, Inc. filed its Opposition (the

26 "Stanley Opposition") to First Lien Steering Committee's Supplemental Memorandum of

27 Law in Support of Confirmation of Second Amended Modified Plan (Docket No. 975).

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1    O.    On February 8, 2010, the First Lien Steering Committee filed (a) its Reply to

2    Stanley Consultants, Inc.'s Opposition to First Lien Steering Committee's Supplemental

3    Memorandum of Law in Support of Confirmation of Second Amended Modified Plan, (b)

4    the Supplemental Declaration of Justin Bono in Support of Confirmation of Confirmation of

5    Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the

6    Bankruptcy Code for The Rhodes Companies, LLC, *et al.*, (c) the Supplemental Declaration

7    of Charles Hewlett in Support of Confirmation of Second Amended Modified Plan of

8    Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies,

9    LLC, *et al.*, and (d) the Declaration of Gregory Wallace in Support of Confirmation of the

10    Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the

11    Bankruptcy Code for The Rhodes Companies, LLC, *et al.* (collectively, the "Reply Papers").

12    P.    The Confirmation Hearing was held before the Court on January 14, 2010,

13    January 21, 2010 and February 11, 2010.

14    NOW, THEREFORE, the Court having reviewed and considered the Disclosure

15    Statement, the Plan and all documents contained therein, the Voting Reports, the Objections,

16    the Initial Confirmation Papers, the Supplemental Confirmation Papers, the Stanley

17    Opposition and the Reply Papers (collectively, the "Confirmation Papers"); the Court having

18    heard statements of counsel in support of and in opposition to confirmation of the Plan at the

19    Confirmation Hearing; the Court having considered all testimony presented and evidence

20    admitted at the Confirmation Hearing; the Court having taken judicial notice of the papers

21    and pleadings on file in the Chapter 11 Cases; it appearing to the Court that (i) notice of the

22    Confirmation Hearing was adequate and appropriate as to all parties to be affected by the

23    Plan and the transactions contemplated thereby and (ii) the legal and factual bases set forth

24    in the Confirmation Papers and presented at the Confirmation Hearing establish just cause

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  for the relief granted herein; and after due deliberation thereon, good cause appearing

2  therefor, and for the reasons stated herein, it is hereby DETERMINED, FOUND,

3  ADJUDGED, DECREED, AND ORDERED THAT:

4  
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

5  

6  1.  <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157, 1334(a),</u>

7  <u>1408, and 1409)</u>.  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28

8  U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core proceeding under 28 U.S.C. §

9  157(b)(2), and the Court has exclusive jurisdiction to determine whether the Plan complies

10  with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue is

11  proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Venue in the District of

12  Nevada was proper as of the Petition Date and continues to be proper.

13  2.  <u>Commencement and Joint Administration of the Chapter 11 Cases</u>.

14  Beginning on the Petition Date, each of the above-captioned Debtors commenced a case

15  under chapter 11 of the Bankruptcy Code.  By prior order of the Court, the Chapter 11 Cases

16  have been consolidated for procedural purposes only and are being jointly administered

17  pursuant to Bankruptcy Rule 1015.  The Debtors have operated their businesses and

18  managed their properties as debtors in possession pursuant to Bankruptcy Code sections

19  1107(a) and 1108.  No trustee or examiner has been appointed in the Chapter 11 Cases.

20  3.  <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Chapter

21  11 Cases maintained by the Clerk of the Court or its duly appointed agent, including,

22  without limitation, all pleadings and other documents filed, all orders entered, and all

23  evidence and arguments made, proffered, or adduced at, the hearings held before the Court

24  during the pendency of the Chapter 11 Cases.

25  4.  <u>Transmittal and Mailing of Materials; Notice; Solicitation</u>.  The Solicitation

26  

27  

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Packages were transmitted and served in compliance with the Bankruptcy Code, the

Bankruptcy Rules, applicable nonbankruptcy law, and the Solicitation Procedures Order.

Such transmittal and service of the Solicitation Packages were adequate and sufficient.

Adequate and sufficient notice of the Confirmation Hearing was given in compliance with

the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Procedures Order, and no

further notice is or shall be required. Votes for acceptance and rejection of the Plan were

solicited in good faith and such solicitation complied with Bankruptcy Code sections 1125

and 1126, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the

Bankruptcy Code, the Solicitation Procedures Order, and all other applicable rules, laws and

regulations.

5.     <u>Burden of Proof</u>. The First Lien Steering Committee, as the proponent of the

Plan, has met its burden of proving the elements of Bankruptcy Code sections 1129(a) and

(b) by a preponderance of evidence.

6.     <u>Voting</u>. Votes on the Plan were solicited after the disclosure of "adequate

information" as defined in Bankruptcy Code section 1125. As evidenced by the Osborne

Declarations, votes to accept the Plan have been solicited and tabulated fairly, in good faith

and in a manner consistent with the Solicitation Procedures Order, the Bankruptcy Code and

the Bankruptcy Rules.

7.     <u>Plan Compliance with the Applicable Provisions of the Bankruptcy Code (11</u>

<u>U.S.C. § 1129(a)(1))</u>. As set forth below, the Plan complies with the applicable provisions

of the Bankruptcy Code, thereby satisfying Bankruptcy Code section 1129(a)(1).

(a)     <u>Proper Classification of Claims and Interests (11 U.S.C. §§ 1122 and</u>

<u>1123(a)(1))</u>. In addition to Administrative Claims and Priority Tax Claims, which need not

be classified, Article III.A of the Plan designates nine Classes of Claims and one Class of

1  Interests. The Claims or Interests placed in each Class are substantially similar to other

2  Claims or Interests, as the case may be, in such Class. Valid business, factual, and legal

3  reasons exist for separately classifying the various Classes of Claims and Interests created

4  under the Plan, and such Classes do not unfairly discriminate among Holders of Claims or

5  Interests. The Plan satisfies Bankruptcy Code sections 1122 and 1123(a)(1).

6

7              (b)    Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).

8  Article III.B of the Plan specifies that each of Classes A-3 and B are Unimpaired under the

9  Plan, thereby satisfying Bankruptcy Code section 1123(a)(2).

10              (c)    Specification of Treatment of Impaired Classes (11 U.S.C.

11  § 1123(a)(3)). Article III.B of the Plan designates each of Classes A-1, A-2, C-1, C-2, C-3,

12  C-4, D and E as Impaired and specifies the treatment of Claims and Interests in those

13  Classes, thereby satisfying Bankruptcy Code section 1123(a)(3).

14              (d)    Equal Treatment Within Classes (11 U.S.C. § 1123(a)(4)). Article

15  III.B of the Plan provides for the same treatment for each Claim or Interest in a particular

16  Class, thereby satisfying Bankruptcy Code section 1123(a)(4).

17

18              (e)    Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan provides

19  adequate and proper means for implementation of the Plan, including, but not limited to,

20  among other things: (i) the substantive consolidation of the Estates into a single Estate for all

21  purposes associated with Confirmation and distributions to be made under the Plan (*See* Plan

22  Art. IV.A); (ii) the issuance of Newco Equity Interests (based upon the Newco Total

23  Enterprise Value) to the Holders of First Lien Lender Secured Claims (*See* Plan Art.

24  IV.B.1); (iii) the issuance of $50 million in New First Lien Notes to the Holders of First

25  Lien Lender Secured Claims (*See* Plan Art. IV.B.2); (iv) the cancellation of Old Equity

26  Interests and certain other existing securities (*See* Plan Art. IV.E); (v) any restructuring

27

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  transaction deemed necessary or appropriate to effectuate the Plan (*See* Plan Art. IV.G); (vi)

2  the selection of the initial board of managers and officers of the Reorganized Debtors (*See*

3  Plan Art. IV.M); (vii) the establishment of a Litigation Trust for the benefit of Holders of

4  Allowed Claims in Classes C-1, C-2 and C-3 (*See* Plan Art. IV.O); (viii) the transfer of the

5  Rhodes Ranch Golf Course to the Reorganized Debtors pursuant to the terms of a stock and

6  asset transfer agreement (*See* Plan Art. IV.S); (ix) the payment of $3.5 million in Cash to the

7  Reorganized Debtors by the Rhodes Entities on the Effective Date (*See* Plan Art. IV.T); and

8  (x) the transfer of the Arizona Assets set forth on Attachment D to the Mediation Term

9  Sheet to the Rhodes Entities (*See* Plan Art. IV.U).  In addition, the Plan provides that the

10  Holders of First Lien Lender Secured Claims will receive $1.5 million in Cash from the

11  proceeds of the First Lien Lenders' Collateral for the purpose of purchasing the General

12  Unsecured Claims set forth on Exhibit H to the Disclosure Statement.  *See* Plan Art. VII.F-

13  G.  Therefore, the Plan satisfies Bankruptcy Code section 1123(a)(5).

16        (f)     Charter Provisions (11 U.S.C. § 1123(a)(6)).  Article IV.J of the Plan

17  provides that the organizational documents for Newco and the Reorganized Debtors, among

18  other things, shall (i) authorize the issuance of the new equity interests, and (ii) pursuant to

19  and only to the extent required by Bankruptcy Code section 1123(a)(6), include a provision

20  prohibiting the issuance of non-voting Equity Securities, thereby satisfying Bankruptcy

21  Code section 1123(a)(6).

23        (g)     Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).  Article

24  IV.M of the Plan provides that (i) the board of directors of the Reorganized Debtors or

25  similar governing entities will be composed of one or more members appointed by the First

26  Lien Steering Committee, (ii) on or after the Effective Date, a chief executive officer or

27  similar person in control shall be appointed, and (iii) the identity of such officers and

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  directors shall be disclosed at or prior to the Confirmation Hearing.  The provisions of the

2  Plan for the selection of directors and officers are consistent with the interests of creditors

3  and with public policy as to the manner and selection of any officer or director and any

4  successor thereto, thereby satisfying Bankruptcy Code section 1123(a)(7).  Pursuant to

5  Bankruptcy Code section 1129(a)(5), the First Lien Steering Committee has disclosed, on or

6  prior to the Confirmation Date, the identity and affiliations of any Person proposed to serve

7  on the initial boards of directors of the Reorganized Debtors and, to the extent such Person is

8  an insider, the nature of any compensation to be paid to such Person.

9

10          (h)     Future Income (11 U.S.C. § 1123(a)(8)).  Each of the Debtors is a

11  business entity, and not an individual.  Accordingly, Bankruptcy Code section 1123(a)(8) is

12  not implicated by the Plan.

13          8.     Plan Compliance with Bankruptcy Code Section 1123(b).  The Plan contains

14  other permissive provisions that are consistent with the applicable provisions of the

15  Bankruptcy Code and, thus, the Plan satisfies the requirements of Bankruptcy Code section

16  1123(b).

17

18          9.     Bankruptcy Rule 3016.  The Plan is dated and identifies the entities

19  submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure

20  Statement with the Clerk of the Court satisfies Bankruptcy Rule 3016(b).

21

22          10.     Bankruptcy Rule 3017.  The First Lien Steering Committee has given notice

23  of the Confirmation Hearing as required by Bankruptcy Rule 3017(d), the Solicitation

24  Procedures Order or as otherwise required.  The transmittal and service of the Solicitation

25  Packages were (i) in compliance with the Solicitation Procedures Order, the Bankruptcy

26  Code and the Bankruptcy Rules and (ii) adequate and sufficient under the Bankruptcy Rules

27  and the circumstances surrounding the Chapter 11 Cases.

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

11. <u>Bankruptcy Rule 3018</u>. The solicitation of votes to accept or reject the Plan solely from Holders of Allowed Claims in Classes entitled to vote to accept or reject the Plan, as of the Record Date, satisfies Bankruptcy Rule 3018. Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Procedures Order.

12. <u>First Lien Steering Committee's Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The First Lien Steering Committee has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code section 1129(a)(2). Specifically:

(a)    the Debtors are proper debtors under Bankruptcy Code section 109 and the First Lien Steering Committee is a proper proponent of the Plan under Bankruptcy Code section 1121(a);

(b)    the First Lien Steering Committee has complied with applicable provisions of the Bankruptcy Code; and

(c)    the First Lien Steering Committee has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Solicitation Package and in soliciting and tabulating votes on the Plan.

13. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The First Lien Steering Committee has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying the requirements of Bankruptcy Code section 1129(a)(3). The First Lien Steering Committee's good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement and the hearing thereon, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases. The Plan is the product of extensive negotiations and embodies the terms of the Mediation Settlement. The Plan itself and the process leading to its formulation provide independent evidence of the First Lien Steering Committee's good faith, and that the Plan serves the public interest and assures fair

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  treatment of Holders of Claims and Interests. The Plan was proposed with the legitimate

2  and honest purpose of maximizing the value of the Debtors' estates and to effectuate a

3  successful reorganization of the Debtors.

4      14.    Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any

5  payment made or to be made by the Debtors for services or for costs and expenses in

6  connection with the Chapter 11 Cases, or in connection with the Plan and incident to the

7

8  Chapter 11 Cases, has been approved by, or is subject to approval of, the Court as

9  reasonable, thereby satisfying Bankruptcy Code section 1129(a)(4).

10      15.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The First Lien

11 Steering Committee has complied with Bankruptcy Code section 1129(a)(5). On January

12 11, 2010, the First Lien Steering Committee filed the Notice of Disclosure of Directors and

13
   Officers Pursuant to 11 U.S.C. § 1129(a)(5) for Second Amended Modified Plan of
14
   Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies,
15
16 LLC, *et al.* (the "Notice of Disclosure") (Docket No. 911) disclosing that as of the Effective

17 Date, Dunhill Homes will provide management services to the Reorganized Debtors and

18 disclosing the terms of compensation to be paid for such management services. The Notice

19 of Disclosure also discloses (i) the identity of the members of the initial board of directors of

20
   the Reorganized Debtors, (ii) the identity of the Litigation Trustee, and (iii) the
21
22 compensation to be provided to each of the foregoing.

23      16.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for a

24 change in any rates subject to regulatory approval. Thus, Bankruptcy Code section

25 1129(a)(6) is not applicable in the Chapter 11 Cases.

26      17.    Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)). The Plan satisfies

27 Bankruptcy Code section 1129(a)(7). The Liquidation Analysis attached to the Disclosure

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1   Statement as Exhibit E and other evidence proffered or adduced at the Confirmation Hearing

2   (i) are persuasive and credible, (ii) have not been successfully challenged or controverted by

3   other evidence, (iii) establish that each Holder of a Claim or Interest in an Impaired Class

4   either (x) has accepted the Plan or (y) will receive or retain under the Plan, on account of

5

6   such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not

7   less than the amount that it would have received if the Debtors were liquidated under chapter

8   7 of the Bankruptcy Code.

9       18.    Acceptance or Rejection by Certain Classes (11 U.S.C. § 1129(a)(8)).

10  Classes A-3 and B are each Classes of Unimpaired Claims that are conclusively presumed to

11  have accepted the Plan under Bankruptcy Code section 1126(f). Classes A-1, A-2, C-2 and

12  C-3 have each voted to accept the Plan in accordance with Bankruptcy Code section

13  1126(c). Class C-1 voted to reject the Plan. Classes C-4, D and E are not entitled to receive

14  or retain any property under the Plan and, therefore, are deemed to have rejected the Plan

15

16  pursuant to Bankruptcy Code section 1126(g). Although Bankruptcy Code section

17  1129(a)(8) has not been satisfied with respect to Classes C-1, C-4, D and E (collectively, the

18  "Rejecting Classes"), the Plan is confirmable because the Plan does not discriminate unfairly

19  and is fair and equitable with respect to the Rejecting Classes and therefore satisfies

20  Bankruptcy Code section 1129(b) with respect to the Rejecting Classes.

21

22      19.    Treatment of Administrative Claims and Priority Tax Claims (11 U.S.C.

23  1129(a)(9)). The treatment of Administrative Claims pursuant to Article II.A of the Plan

24  satisfies the requirements of Bankruptcy Code sections 1129(a)(9)(A) and (B). The

25  treatment of Priority Tax Claims pursuant to Article II.B of the Plan satisfies the

26  requirements of Bankruptcy Code section 1129(a)(9)(C).

27      20.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)). As set forth in

28

15

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  the Second Amended Osborne Declaration, each of Classes A-1, A-2, C-1, C-2 and C-3 are

2  Impaired Classes that have voted to accept the Plan, without including any acceptance of the

3  Plan by any insider.  As such, there is at least one Class of Claims against the Debtors that is

4  Impaired under the Plan and has accepted the Plan, determined without including any

5  acceptance by any insider, thus satisfying the requirements of Bankruptcy Code section

6  1129(a)(10).

7

8    21.    Feasibility (11 U.S.C. § 1129(a)(11)).  The evidence submitted regarding

9  feasibility, including the Going Concern Analysis attached to the Disclosure Statement as

10  Exhibit D, (i) is persuasive and credible, (ii) has not been controverted by other evidence

11  and (iii) establishes that confirmation of the Plan is not likely to be followed by the

12  liquidation, or the need for further financial reorganization, of the Reorganized Debtors, thus

13  satisfying the requirements of Bankruptcy Code section 1129(a)(11).

14

15    22.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  All fees payable under 28

16  U.S.C. § 1930 either have been paid or will be paid pursuant to Article II.A of the Plan.

17  Accordingly, the Plan satisfies Bankruptcy Code section 1129(a)(12).

18    23.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The Debtors

19  have no retiree benefit obligations and, thus, Bankruptcy Code section 1129(a)(13) is

20  inapplicable.

21

22    24.    Postpetition Domestic Support Obligations and Disposable Income (11

23  U.S.C. § 1129(a)(14) and (15)).  Bankruptcy Code sections 1129(a)(14) and (15) impose

24  certain requirements on individual chapter 11 debtors.  Each of the Debtors is a business

25  entity, and not an individual.  Accordingly, Bankruptcy Code sections 1129(a)(14) and (15)

26  are not implicated by the Plan.

27    25.    Transfers of Property by Nonprofit Entities (11 U.S.C. § 1129(a)(16)).

28

1  Bankruptcy Code section 1129(a)(16) imposes certain requirements on corporations or trusts

2  that are not a moneyed, business or commercial corporation or trust.  Each of the Debtors is

3  a moneyed, business or commercial corporation, partnership or limited liability company.

4  Accordingly, Bankruptcy Code section 1129(a)(16) is not implicated by the Plan.

5      26.     Confirmation of Plan Over Nonacceptance of Impaired Classes (11 U.S.C. §

6  1129(b)).  Notwithstanding the fact that the Rejecting Classes have not accepted the Plan,

7

8  the Plan may be confirmed pursuant to Bankruptcy Code section 1129(b)(1) because (i) at

9  least one Impaired Class has voted to accept the Plan, and (ii) the Plan does not discriminate

10 unfairly and is fair and equitable with respect to the Rejecting Classes.  Thus, the Plan may

11 be confirmed notwithstanding the First Lien Steering Committee's failure to satisfy

12 Bankruptcy Code section 1129(a)(8).  After entry of the Confirmation Order and upon the

13
   occurrence of the Effective Date, the Plan shall be binding upon the members of the
14
   Rejecting Classes.
15

16      27.     The Plan does not unfairly discriminate because (i) Classes C-4 and D are

17 comprised of Claims and Interests that are dissimilar in their legal nature from, and

18 subordinate to, the Secured and Unsecured Claims receiving distributions under the Plan,

19 and (ii) there is a reasonable basis for the disparate treatment of the Claims in Class E.

20 Moreover, the Plan does not discriminate unfairly with respect to Class C-1 because Class

21
   C-1 is comprised of Claims that differ in their legal nature from other Classes of Claims, and
22
   the purchase of certain General Unsecured Claims by the Holders of First Lien Lender
23
24 Secured Claims does not constitute unfair discrimination with respect to Holders of Claims

25 in Class C-1.

26      28.     In addition, the Plan is "fair and equitable" under Bankruptcy Code section

27 1129(b)(2) because the Holders of (i) Interests in Class D and (ii) Claims in Classes C-1, C-

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1    4 and E are not entitled to any recovery under the Plan, and no Holder of Claims or Interests

2    in a Class junior to Classes C-1, C-4, D and E will receive any distributions or retain any

3    property under the Plan on account of such junior Claim or Interest.

4        29.    Notwithstanding the fact that the Rhodes Entities will receive certain forms

5    of consideration under the Plan, the Plan does not violate the absolute priority rule because

6    the consideration to be received by the Rhodes Entities under the Plan is not on account of

7    any prepetition equity interests one or more of the Rhodes Entities may hold but solely on

8    account of the Rhodes Entities' provision of substantial consideration and cooperation in

9    connection with the Mediation Settlement.  Moreover, the value of the consideration and

10   cooperation to be provided to the Debtors by the Rhodes Entities is greater than the cost of

11   the consideration to be provided to the Rhodes Entities.

12       30.    In addition, the Court finds that the consideration to be provided by the

13   Rhodes Entities to the Reorganized Debtors constitutes "new value" satisfying the standards

14   articulated by the Ninth Circuit with respect to the new value exception to the absolute

15   priority rule.  Pursuant to the new value exception, an existing equity holder may receive a

16   distribution of property under a plan of reorganization if such equity holder offers value to

17   the debtor that is (i) new, (ii) substantial, (iii) money or money's worth, (iv) necessary for a

18   successful reorganization and (v) reasonably equivalent to the value or interest received.  *In*

19   *re Bonner Mall*, 2 F.3d at 908; *Oxford Life Ins. Co. v. Tucson Self-Storage, Inc. (In re*

20   *Tucson Self-Storage, Inc.)*, 166 B.R. 892, 899 (B.A.P. 9th Cir. 1994).  As set forth below,

21   each of these requirements has been satisfied.

22       31.    First, the Court finds that the value that will be contributed by the Rhodes

23   Entities to the Reorganized Debtors pursuant to the Plan is "new."  In order to be new for

24   purposes of the new value exception, the value contributed to the debtor must come from an

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

outside source and may not consist of property that already belongs to the debtor. *In re Saleha*, Case No. 93-00638, 1995 WL 128495, at *3 (Bankr. D. Idaho Mar. 10, 1995) ("[T]he 'new value' must come from outside of the debtor's business."); *Berkeley Fed. Bank & Trust v. Sea Garden Motel and Apartments. (In re Sea Garden Motel & Apartments.)*, 195 B.R. 294, 302 (D. N.J. 1996) (noting that the infusion of capital must come from an outside source); *In re S.A.B.T.C. Townhouse Ass'n, Inc.*, 152 B.R. 1005, 1010 (Bankr. M.D. Fla. 1993) ("[T]he existing equity holders must contribute something to the [d]ebtor that does not already belong to the [d]ebtor or to which the [d]ebtor is already entitled").

32.     Based on the foregoing, all of the value that will be contributed to the Debtors by the Rhodes Entities is new because it comes from an outside source and does not consist of property that already belongs to the Debtors.  The $3.5 million Cash payment to be made by the Rhodes Entities will consist entirely of funds belonging to the Rhodes Entities in which the Debtors hold no interests.  In addition, the Rhodes Entities assumed ownership of the Rhodes Ranch Golf Course in December 2008, and the Rhodes Ranch Golf Course is not currently owned by the Debtors.  Finally, the Rhodes Entities will (i) continue to guarantee existing performance bonds for the benefit of the Debtors, (ii) ensure that the Reorganized Debtors have the continued use of professional licenses and (iii) ensure that designees of the Reorganized Debtors replace the designees of the Rhodes Entities on any HOA Boards related to the Debtors or Reorganized Debtors.  Absent the Rhodes Entities' voluntary cooperation with respect to the foregoing, the Debtors would face a significant hurdle in attempting to reorganize their businesses.

33.     Second, the Court finds that the new value that will be contributed by the Rhodes Entities to the Debtors pursuant to the Plan is "substantial."  While no mathematical

relationship exists for determining whether a contribution of new value is substantial, courts

in the Ninth Circuit have held that a contribution of new value must be "real and necessary

to the successful implementation of a feasible plan." *State Street Bank and Trust Co. v.*

*Elmwood, Inc. (In re Elmwood, Inc.)*, 182 B.R. 845, 852-53 (D. Nev. 1995) (quoting *In re*

*Woodbrook Assocs.*, 19 F.3d 312, 320 (7th Cir. 1994)). New value that is nominal,

gratuitous or token is not substantial. *Id.* Under this standard, the new value to be

contributed to the Debtors by the Rhodes Entities is substantial because even if only the

value of the $3.5 million Cash payment and the transfer of the Rhodes Ranch Golf Course to

the Debtors are taken into account, the Debtors will receive over $11.5 million in value

($5.6 million net of funded debt obligations on the Rhodes Ranch Golf Course) from the

Rhodes Entities. In addition, if the value of (i) the maintenance of performance bonds

through the guarantees provided by the Rhodes Entities, (ii) the continued use of

professional licenses and (iii) the replacement of the Rhodes Entities by designees of the

Debtors on HOA Board seats are taken into account, the value received by the Debtors may

exceed $20.2 million ($14.3 million net of funded debt obligations on the Rhodes Ranch

Golf Course).

       34.     The Court also finds that the new value that will be provided by the Rhodes

Entities is necessary to the successful implementation of the Plan. Without the $3.5 million

cash payment, there would be less capital available to (i) fund distributions under the Plan

and (ii) finance the Debtors' ongoing business operations. Further, in addition to providing

the Debtors with approximately $8 million of value ($2.1 million net of debt obligations) on

the Effective Date, the transfer of the Rhodes Ranch Golf Course to the Debtors will ensure

that (i) the centerpiece of the Rhodes Ranch community is adequately maintained and (ii)

the Debtors' operations will not be harmed by diminished home sales or home prices as a

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1    result of a decline in the quality of the amenities available to the Rhodes Ranch community.

2    Similarly, replacing the Rhodes Entities' designees on the HOA Boards with designees of

3    the Reorganized Debtors will ensure that the Reorganized Debtors have continued control

4    over building standards in their communities and help to avoid disruptions or increases in

5
     costs in the Reorganized Debtors' operations.  Finally, the maintenance of performance
6
7    bonds through the guarantees provided by the Rhodes Entities and the assistance of the

8    Rhodes Entities with respect to the use of professional licenses will allow the Debtors to

9    transition to new ownership without disruption in their business activities and avoid

10   substantial costs related to replacing existing performance bonds or posting cash deposits.

11   In the absence of any of the foregoing forms of consideration to be contributed to the

12   Debtors by the Rhodes Entities, the successful implementation of the Plan would be
13
     significantly jeopardized.
14

15       35.    Third, the Court finds that the new value to be contributed to the Debtors by

16   the Rhodes Entities pursuant to the Plan is in the form of "money or money's worth."  In

17   order to satisfy this requirement, the new value contributed to a debtor (i) "must consist of

18   money or property which is freely traded in the economy" and (ii) "must be a present

19   contribution, taking place on the effective date of the [p]lan rather than a future

20   contribution."  *In re Ambanc La Mesa Ltd. P'Ship*, 115 F.3d 650, 655 (9th Cir. 1997).

21
     While certain forms of the new value to be contributed by the Rhodes Entities to the
22
23   Reorganized Debtors may fall outside of the scope of a strict application of this standard, the

24   Debtors will indisputably receive new value in form of money or money's worth in the

25   minimum amount of $11.5 million on the Effective Date of the Plan comprised of (i) the

26   $3.5 million cash payment and (ii) approximately $8 million in respect of the transfer of the

27   Rhodes Ranch Golf Course ($2.1 million net of funded debt obligations on the Rhodes
28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  Ranch Golf Course). The amount of new value to be received by the Reorganized Debtors

2  may, in fact, exceed $20.2 million. The Rhodes Entities have therefore contributed new

3  value in the form of money or money's worth to the Debtors.

4      36.    Fourth, the Court finds that the new value to be contributed to the Debtors by

5  the Rhodes Entities pursuant to the Plan is necessary for a successful reorganization. This

6  requirement demands that the new value contributed to the Debtors be necessary to the

7  success of the reorganization. *See In re Bonner Mall P'Ship*, 2 F.3d at 911; *In re Brotby*,

8

9  303 B.R. at 197 (finding an abuse of discretion where there was no finding that a plan could

10  not succeed without a contribution of new value). As previously discussed, the new value to

11  be contributed to the Debtors by the Rhodes Entities is necessary for the implementation of

12  the Plan and the reorganization of the Debtors. In the absence of the $3.5 million cash

13  payment, the Debtors would have less cash available to fund distributions under the Plan and

14  to finance their operations, and without the transfer of the Rhodes Ranch Golf Course to the

15  Debtors, the value of one of the Debtors' most valuable assets (Rhodes Ranch community)

16  would be jeopardized. Moreover, without the assistance of the Rhodes Entities with respect

17

18  to the maintenance of performance bonds, continued use of licenses and the composition of

19  HOA Board seats, the transition to new ownership under the Plan and the smooth operation

20  of the Reorganized Debtors' businesses would be virtually impossible. The new value

21  contributed by the Rhodes Entities to the Debtors is therefore necessary for a successful

22

23  reorganization.

24      37.    Fifth, the Court finds that the new value to be contributed to the Debtors by

25  the Rhodes Entities pursuant to the Plan is reasonably equivalent in value to (and is, in fact,

26  substantially greater in value than) the consideration to be provided to the Rhodes Entities.

27  In determining whether the Debtors have received reasonably equivalent value, courts must

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  consider whether there will be a "genuine and fair exchange" of new value for a distribution

2  under a plan of reorganization. *See In re Tucson Self-Storage*, 166 B.R. at 899. Here, the

3  Debtors have received more than reasonably equivalent value in exchange for consideration

4  to be paid to the Rhodes Entities. The Rhodes Entities will contribute new value to the

5  Debtors in money or money's worth in the amount of $11.6 million to $20.2 million (or $5.7

6  
7  million to $14.3 million net of funded debt obligations on the Rhodes Ranch Golf Course).

8  In exchange for such new value, the Rhodes Entities will receive consideration worth

9  approximately $2.7 million. Thus, the Debtors will receive more than reasonably equivalent

10  value in exchange for the consideration to be paid to the Rhodes Entities.

11  38.    Finally, to the extent that a "market test" requirement applies, the Court finds

12  that such requirement has been satisfied because (i) the Debtors' exclusive plan filing and

13  solicitation periods were terminated, and (ii) the First Lien Steering Committee (rather than

14  
15  the Debtors) is the plan proponent.

16  39.    Because the Rhodes Entities are not receiving a distribution under the Plan on

17  account of any prepetition equity interests in the Debtors, and the requirements of the new

18  value exception to the absolute priority rule are satisfied, the Plan is fair and equitable with

19  respect to all Classes of Claims or Interests under the Plan for purposes of Bankruptcy Code

20  section 1129(b).

21  
22  40.    Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan of

23  reorganization filed in the Chapter 11 Cases. Accordingly, Bankruptcy Code section

24  1129(c) is inapplicable.

25  41.    Principal Purpose of Plan (11 U.S.C. § 1129(d)). The principal purpose of

26  the Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities

27  Act, and no governmental unit has objected to the confirmation of the Plan on such grounds.

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  The Plan, therefore, satisfies the requirements of Bankruptcy Code section 1129(d).

2      42.      Good Faith Solicitation (11 U.S.C. § 1129(e)). Based on the record before

3  the Court in the Chapter 11 Cases, the First Lien Steering Committee is deemed to have

4  solicited acceptances of the Plan in good faith and in compliance with the applicable

5
   provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections
6
7  1125(a) and (e), and any applicable nonbankruptcy law, rule or regulation governing the

8  adequacy of disclosure in connection with such solicitation.

9      43.      Satisfaction of Confirmation Requirements. For all of the foregoing reasons,

10 the Plan satisfies the requirements for confirmation set forth in Bankruptcy Code section

11 1129.

12     44.      Good Faith. The First Lien Steering Committee, the Debtors, the Creditors'

13 Committee, the Rhodes Entities, the Second Lien Agent and all other parties (and all of their

14 respective members, officers, directors, agents, financial advisers, attorneys, employees,

15 equity holders, partners, affiliates and representatives) will be acting in good faith if they

16
17 proceed to (i) consummate the Plan and the agreements, settlements, transactions and

18 transfers contemplated thereby and (ii) take the actions authorized and directed by this

19 Confirmation Order.

20     45.      Substantive Consolidation. A preponderance of the evidence presented to the

21 Court demonstrates that (i) no Creditor will be harmed by the proposed substantive

22 consolidation of the Debtors' Estates into a single consolidated Estate for purposes of

23 confirmation and distributions to be made under the Plan and (ii) the proposed substantive

24 confirmation and distributions to be made under the Plan and (ii) the proposed substantive

25 consolidation of the Debtors' Estates is appropriate in light of the fact that the Debtors: (a)

26 operate as a single business enterprise under a single name; (b) operate on a centralized basis

27 with a centralized cash management system; (c) share common parent companies; (d) rely

28

24

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  on a single corporate office for operational and other support services; (e) regularly conduct

2  business with each other such that the flow of funds and transactions would be difficult to

3  entangle; and (f) are all obligated on the First Lien Lender Claims and the Second Lien

4  Lender Claims.  In addition, substantial Intercompany Claims existed between the various

5
6  Debtors as of the Petition Date, and numerous Proofs of Claim were filed against the

7  incorrect Debtor entity.  The substantive consolidation of the Debtors' Estates into a single

8  Estate for purposes of confirmation and distributions under the Plan will also provide

9  significant advantages that benefit all of the Debtors' creditors.

10       46.    Mediation Settlement.  As described in Article I.A of the Disclosure

11  Statement, the Plan embodies the terms of the Mediation Settlement.  In order to determine

12  whether a compromise may be approved under Bankruptcy Rule 9019, the Bankruptcy

13  Court must consider four factors: (i) the probability of success of the litigation; (ii) the

14  difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the

15  litigation involved, and the expense, inconvenience and delay necessarily attending it; and

16
17  (iv) the paramount interest of the creditors and a proper deference to their reasonable views.

18  *See, e.g., Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986).  A

19  compromise may be approved even if all four of the factors do not favor the compromise so

20  long as the factors weigh in favor of the compromise when taken as a whole.  *See In re Pac.*

21  *Gas and Elec. Co.*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004).  In addition, a compromise

22  does not have to be the best compromise that could have possibly been obtained but, instead,

23
24  must only fall within a reasonable range of possible outcomes.  *In re WCI Cable, Inc.*, 282

25  B.R. 457, 473-74 (Bankr. D. Or. 2002).

26       47.    Based on the foregoing standard, the Court hereby finds that the Mediation

27  Settlement is fair, equitable and reasonable because, among other things, the Mediation

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  Settlement allows for the resolution of (i) potential preference actions relating to transfers in

2  excess of $9 million to certain of the Rhodes Entities within the one year period prior to the

3  Petition Date that (a) would have been heavily contested by the Rhodes Entities and (b) may

4  not have produced substantial recoveries for the Debtors' Estates in light of the fact that

5  diligence performed over the course of the Debtors' Chapter 11 Cases indicates that all but

6
   $1,125,134 of the total amount transferred was transferred in the ordinary course of business
7

8  between the Debtors and the non-Debtor Rhodes Entities, and (ii) potential fraudulent

9  conveyance actions held by the Debtors' Estates against the Rhodes Entities that likewise

10  would have been heavily contested by the Rhodes Entities.  In addition, the creditors of the

11  Estates will derive a material benefit from the approval of the Mediation Settlement because,

12  among other things, the Mediation Settlement (i) contemplates a $3.5 million cash payment

13  from the Rhodes Entities to the Reorganized Debtors, which payment will be used to fund

14  working capital needs and distributions contemplated by the Plan, (ii) provides for the

15
   transfer of the Arizona Assets, which were non-core assets to the Reorganized Debtors that
16

17  likely would have required significant additional funding for development, to the Rhodes

18  Entities, (iii) provides for the transfer of the Rhodes Ranch Golf Course, the maintenance

19  and continued operation of which is paramount to maximizing the value of the Reorganized

20  Debtors' assets, to the Reorganized Debtors, (iv) avoids the significant expense and time

21
   delay associated with litigating the Claims released under the Plan, which would have
22

23  yielded uncertain results, and (v) enables the Debtors to emerge from bankruptcy

24  expeditiously and consensually, without any unnecessary eradication of value through a

25  prolonged stay in chapter 11.  In addition, all Claims and Causes of Action against the

26  Rhodes Entities that are not covered by the limited release provided for in the Mediation

27  Settlement will be transferred to the Litigation Trust for the benefit of all creditors, to be

28

prosecuted and/or settled post-emergence, as deemed appropriate by the Litigation Trust, and the Mediation Settlement will ensure a smooth transition to new ownership under the Plan.

48.    <u>Assumption of Executory Contracts and Unexpired Leases</u>.  The Plan satisfies all requirements for the assumption of executory contracts and unexpired leases contained in the Bankruptcy Code, including, without limitation, the requirement to cure all outstanding defaults, if any, and to provide adequate assurance of performance under such contracts and leases.

49.    <u>Releases, Exculpations and Injunctions</u>.  Pursuant to Bankruptcy Code section 1123(b) and Bankruptcy Rule 9019, the settlements, compromises, releases, discharges, exculpations and injunctions set forth in Article VIII of the Plan are fair, equitable, reasonable, in good faith, and are in the best interests of the Debtors, the Reorganized Debtors, the Estates and the Holders of Claims and Interests.  In addition, the releases, injunctions and exculpations set forth in Article VIII of the Plan are integral components of the Mediation Settlement that is embodied in the Plan.  The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the releases, exculpations and injunctions provided for in Article VIII of the Plan.

50.    <u>Conditions to Confirmation</u>.  Entry of this Confirmation Order shall satisfy the conditions to Confirmation set forth in Article X.A of the Plan.

## **DECREES**

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

51.    <u>Confirmation</u>.  For the reasons set forth herein, all requirements for confirmation of the Plan have been satisfied.  Accordingly, the Plan is confirmed under

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  Bankruptcy Code section 1129.

2      52.    Objections.  All Objections that have not been withdrawn, waived or settled,

3  and all reservations of rights pertaining to the confirmation of the Plan, are overruled on the

4  merits.

5      53.    Stanley Opposition.  The Stanley Opposition is overruled on the merits.

6

7      54.    Plan Documents.  The documents attached as exhibits to the Disclosure

8  Statement (collectively, the "Plan Documents"), and any amendments, modifications, and

9  supplements thereto, and all documents and agreements introduced into evidence by the

10  First Lien Steering Committee at the Confirmation Hearing (including all exhibits and

11  attachments thereto and documents referred to therein), and the execution, delivery and

12  performance thereof by the Reorganized Debtors, are authorized and approved.  Without

13  further order or authorization of the Court, the First Lien Steering Committee or the

14  Reorganized Debtors, as applicable, and their respective successors are authorized and

15

16  empowered to make all modifications to all documents included as part of the Plan

17  Documents that are consistent with the Plan.  Execution versions of the documents

18  comprising the Plan Documents shall constitute legal, valid, binding, and authorized

19  obligations of the respective parties thereto, enforceable in accordance with their terms and,

20  to the extent applicable, shall create, as of the Effective Date, all liens and other security

21  interests purported to be created thereby.

22

23      55.    Plan Classification Controlling.  The classification of Claims and Interests for

24  purposes of the distributions to be made under the Plan shall be governed solely by the terms

25  of the Plan.  The classification and amounts of Claims, if any, set forth on the ballots

26  returned by the Debtors' creditors in connection with voting on the Plan (i) were set forth on

27  the ballots solely for purposes of voting to accept or reject the Plan, (ii) do not necessarily

28

1  represent, and in no event shall be deemed to modify or otherwise affect, the actual amount

2  or classification of such Claims under the Plan for distribution purposes and (iii) shall not be

3  binding on the First Lien Steering Committee, the Debtors or the Reorganized Debtors

4  except with respect to voting on the Plan.

5

6  56.    Mediation Settlement. As described in Article I.A of the Disclosure

7  Statement, the Plan embodies the terms of the Mediation Settlement. The entry of the

8  Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule

9  9019, of the compromise and settlement of the matters subject to the Mediation Settlement.

10  57.    The Court's approval of the Mediation Settlement is appropriate in light of

11  the fact that the Court has found that the Mediation Settlement is fair, equitable and

12  reasonable because, among other things, the Mediation Settlement allows for the resolution

13  of (i) potential preference actions relating to transfers in excess of $9 million to certain of

14  the Rhodes Entities within the one year period prior to the Petition Date that (a) would have

15  been heavily contested by the Rhodes Entities and (b) may not have produced substantial

16  recoveries for the Debtors' Estates in light of the fact that diligence performed over the

17  course of the Debtors' Chapter 11 Cases indicates that all but $1,125,134 of the total amount

18  transferred was transferred in the ordinary course of business between the Debtors and the

19  non-Debtor Rhodes Entities, and (ii) potential fraudulent conveyance actions held by the

20  Debtors' Estates against the Rhodes Entities that likewise would have been heavily

21  contested by the Rhodes Entities.

22

23  58.    In addition, the Court has found that creditors of the Estates will derive a

24  material benefit from the approval of the Mediation Settlement because, among other things,

25  the Mediation Settlement (i) contemplates a $3.5 million cash payment from the Rhodes

26  Entities to the Reorganized Debtors, which payment will be used to fund working capital

27

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1   needs and distributions contemplated by the Plan, (ii) provides for the transfer of the

2   Arizona Assets, which were non-core assets to the Reorganized Debtors that likely would

3   have required significant additional funding for development, to the Rhodes Entities, (iii)

4   provides for the transfer of the Rhodes Ranch Golf Course, the maintenance and continued

5   operation of which is paramount to maximizing the value of the Reorganized Debtors'

6   
7   assets, to the Reorganized Debtors, (iv) avoids the significant expense and time delay

8   associated with litigating the Claims released under the Plan, which would have yielded

9   uncertain results, and (v) enables the Debtors to emerge from bankruptcy expeditiously and

10  consensually, without any unnecessary eradication of value through a prolonged stay in

11  chapter 11. Moreover, the Court has found that all Claims and Causes of Action against the

12  Rhodes Entities that are not covered by the limited release provided for in the Mediation

13  
14  Settlement will be transferred to the Litigation Trust for the benefit of all creditors, to be

15  prosecuted and/or settled post-emergence (as deemed appropriate by the Litigation Trust),

16  and that the Mediation Settlement will ensure a smooth transition to new ownership under

17  the Plan.

18      59.    Substantive Consolidation. The substantive consolidation of the Debtors'

19  
20  Estates into a single consolidated Estate for purposes of confirmation and distributions under

21  the Plan is approved.

22      60.    Continued Corporate Existence. Except as otherwise provided in the Plan,

23  each Debtor shall continue to exist after the Effective Date as a separate corporate entity,

24  limited liability company, partnership, or other form, as the case may be, with all the powers

25  of a corporation, limited liability company, partnership, or other form, as the case may be,

26  pursuant to the applicable law in the jurisdiction in which each applicable Debtor is

27  incorporated or formed and pursuant to the respective certificate of incorporation and

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  bylaws (or other formation documents) in effect prior to the Effective Date, except to the

2  extent such certificate of incorporation and bylaws (or other formation documents) are

3  amended by the Plan or otherwise, and to the extent such documents are amended, such

4  documents are deemed to be pursuant to the Plan and require no further action or approval.

5

6      61.    Vesting of Assets in the Reorganized Debtors.  Except for any Claims or

7  Causes of Action transferred to the Litigation Trust and unless otherwise provided in the

8  Plan or any agreement, instrument, or other document incorporated therein, on the Effective

9  Date, all property in each Estate, all Causes of Action, and any property acquired by any of

10  the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and

11  clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date,

12  except as otherwise provided in the Plan, each Reorganized Debtor may operate its business

13  and may use, acquire, or dispose of property and compromise or settle any Claims, Interests,

14  or Causes of Action without supervision or approval by the Court and free of any restrictions

15  of the Bankruptcy Code or Bankruptcy Rules.

16

17      62.    Cancellation of Equity Securities and Related Obligations.  On the Effective

18  Date, except as otherwise specifically provided for in the Plan: (1) the Old Equity Interests

19  and any other Certificate, note, bond, indenture, purchase right, option, warrant, or other

20  instrument or document directly or indirectly evidencing or creating any indebtedness or

21  obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except

22  such Certificates, notes, other instruments or documents evidencing indebtedness or

23  obligations of the Debtors that are reinstated pursuant to the Plan), shall be cancelled solely

24  as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations

25  thereunder and (2) the obligations of the Debtors pursuant, relating, or pertaining to any

26  agreements, indentures, certificates of designation, bylaws, or certificate or articles of

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  incorporation or similar documents governing the Old Equity Interests and any other

2  Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other

3  instruments or documents evidencing or creating any indebtedness or obligation of the

4  Debtors (except such agreements or certificates, notes or other instruments evidencing

5  indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the

6  Plan) shall be released and discharged; provided, however, that notwithstanding

7

8  Confirmation, any such indenture or agreement that governs the rights of the Holder of a

9  Claim shall continue in effect solely for purposes of: (w) allowing Holders to receive

10  distributions under the Plan; (x) allowing a Servicer to make distributions on account of

11  such Claims as provided in the applicable governing agreement; (y) permitting such Servicer

12  to maintain any rights and Liens it may have against property other than the Reorganized

13  Debtors' property for fees, costs, and expenses pursuant to such indenture or other

14  agreement; and (z) governing the rights and obligations of non-Debtor parties to such

15

16  agreements vis-à-vis each other (including, without limitation, the rights and obligations of

17  non-Debtor parties under the First Lien Credit Agreement and the Second Lien Credit

18  Agreement, which, for the avoidance of doubt, shall not be affected by the Plan except as

19  otherwise expressly provided in the Plan); provided, further, however, that the preceding

20  proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy

21

22  Code, the Confirmation Order, or the Plan, or result in any expense or liability to the

23  Reorganized Debtors.  The Reorganized Debtors shall not have any obligations to any

24  Servicer for any fees, costs, or expenses, except as expressly otherwise provided in the Plan.

25      63.      Section 1145 Exemption.  Pursuant to Bankruptcy Code section 1145, the

26  offering, issuance, and distribution of any Securities contemplated by the Plan and any and

27  all settlement agreements incorporated therein, including the Newco Equity Interests, shall,

28

32

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1 to the fullest extent permitted by applicable law, be exempt from, among other things, the

2 registration requirements of section 5 of the Securities Act and any other applicable law

3 requiring registration prior to the offering, issuance, distribution, or sale of Securities.  In

4 addition, under Bankruptcy Code section 1145 any Securities contemplated by the Plan,

5

6 including the Newco Equity Interests and New First Lien Notes, will be freely tradable and

7 transferable by the recipients thereof, subject to (i) the provisions of Bankruptcy Code

8 section 1145(b)(1) relating to the definition of an underwriter in section 2(a)(11) of the

9 Securities Act, and compliance with any rules and regulations of the Securities and

10 Exchange Commission, if any, applicable at the time of any future transfer of such

11 Securities or instruments; (ii) the restrictions, if any, on the transferability of such Securities

12 and instruments set forth in the Newco LLC Operating Agreement, a draft of which is

13 attached to the Disclosure Statement as Exhibit J; and (iii) applicable regulatory approval.

14

15   64. Exemption from Certain Transfer Taxes and Recording Fees.  Pursuant to

16 Bankruptcy Code section 1146(a), any transfer from a Debtor to a Reorganized Debtor or to

17 any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to:

18 (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other

19 interest in the Debtors or the Reorganized Debtors; (2) the creation, modification,

20 consolidation, or recording of any mortgage, deed of trust, or other security interest, or the

21 securing of additional indebtedness by such or other means; (3) the making, assignment, or

22

23 recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or

24 other instrument of transfer under, in furtherance of, or in connection with, the Plan,

25 including any deeds, bills of sale, assignments, or other instrument of transfer executed in

26 connection with any transaction arising out of, contemplated by, or in any way related to the

27 Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee,

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1    intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax,

2    Uniform Commercial Code filing or recording fee or other similar tax or governmental

3    assessment, and the appropriate state or local governmental officials or agents shall forego

4    the collection of any such tax or governmental assessment and to accept for filing and

5    recordation any of the foregoing instruments or other documents without the payment of any

6    such tax or governmental assessment.

7

8         65.    Restructuring Transactions.  On the Effective Date or as soon as reasonably

9    practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or

10   appropriate to effect any transaction described in, approved by, contemplated by, or

11   necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate

12   agreements or other documents of merger, consolidation, or reorganization containing terms

13   that are consistent with the terms of the Plan and that satisfy the requirements of applicable

14   law; (2) the execution and delivery of appropriate instruments of transfer, assignment,

15   assumption, or delegation of any property, right, liability, duty, or obligation on terms

16   consistent with the terms of the Plan; (3) the filing of appropriate certificates of

17   incorporation, merger, or consolidation with the appropriate governmental authorities

18   pursuant to applicable law; (4) the Roll-Up Transactions; (5) the establishment of a

19   liquidation trust or other appropriate vehicle to hold assets for sale that will not be utilized in

20   the business of the Reorganized Debtors; and (6) all other actions that the Reorganized

21   Debtors determine are necessary or appropriate, including the making of filings or

22   recordings in connection with the relevant Roll-Up Transactions.  The form of each Roll-Up

23

24   Transaction shall be determined by the Reorganized Debtor that is party to such Roll-Up

25

26   Transaction.  Implementation of the Roll-Up Transactions shall not affect any distributions,

27   discharges, exculpations, releases, or injunctions set forth in the Plan.

28

1    66.    Effectuating Documents, Further Transactions. On and after the Effective

2    Date, the Reorganized Debtors, and the officers and members of the boards of directors (or

3    other governing bodies) thereof, are authorized to and may issue, execute, deliver, file, or

4    record such contracts, Securities, instruments, releases, and other agreements or documents

5    and take such actions as may be necessary or appropriate to effectuate, implement, and

6    further evidence the terms and conditions of the Plan and the Securities issued pursuant to

7    the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any

8    approvals, authorizations, or consents except for those expressly required pursuant to the

9

10   Plan.

11   67.    Preservation of Causes of Action. In accordance with Bankruptcy Code

12   section 1123(b), except as otherwise provided in the Plan, the Reorganized Debtors and the

13   Litigation Trust shall retain and may enforce all rights to commence and pursue, as

14   appropriate, any and all Causes of Action, whether arising before or after the Petition Date,

15   including any actions specifically enumerated on Exhibit L to the Disclosure Statement, and

16

17   the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action

18   shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized

19   Debtors and the Litigation Trust, as applicable, may pursue such Causes of Action, as

20   appropriate, in accordance with the best interests of the Reorganized Debtors and the

21   Litigation Trust, as applicable. No Entity may rely on the absence of a specific reference in

22   the Plan or the Disclosure Statement to any Cause of Action against them as any indication

23

24   that the Debtors, Reorganized Debtors or the Litigation Trust, as applicable, will not pursue

25   any and all available Causes of Action against them. The Reorganized Debtors and the

26   Litigation Trust, as applicable, shall be deemed to have expressly reserved all rights to

27   prosecute any and all Causes of Action against any Entity, except as otherwise expressly

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived,

2  relinquished, exculpated, released, compromised, or settled in the Plan or an order of the

3  Court, the Reorganized Debtors and the Litigation Trust, as applicable, shall be deemed to

4  expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion

5
6  doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim

7  preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes

8  of Action upon, after, or as a consequence of Confirmation or the occurrence of the

9  Effective Date.

10      68.      The Reorganized Debtors and the Litigation Trust, as applicable, shall be

11  deemed to reserve and shall retain the foregoing Causes of Action notwithstanding the

12  rejection or repudiation of any executory contract or unexpired lease during the Chapter 11

13
14  Cases or pursuant to the Plan.  In accordance with Bankruptcy Code section 1123(b)(3), any

15  Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized

16  Debtors and the Litigation Trust, as the case may be, on the Effective Date.  The applicable

17  Reorganized Debtor and the Litigation Trust, as applicable, through its authorized agents or

18  representatives, shall retain and may exclusively enforce any and all such Causes of Action

19  belonging to it.  The Reorganized Debtors and the Litigation Trust, as applicable, shall have

20  the exclusive right, authority, and discretion to determine and to initiate, file, prosecute,

21
22  enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such

23  Causes of Action and to decline to do any of the foregoing without the consent or approval

24  of any third party or further notice to or action, order, or approval of the Court.  Neither the

25  Litigation Trust nor the Reorganized Debtors shall commence any litigation against the

26  Rhodes Entities until the Court rules on the allowance of the Rhodes Entities Claims set

27  forth in Proofs of Claim, included in the Debtors' Schedules or otherwise set forth in the

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1   Mediation Term Sheet.  To the extent any statute of limitations to pursue any claims

2   belonging to the Debtors against the Rhodes Entities would lapse from the execution date of

3   the Mediation Term Sheet through the Court's resolution of the allowance of the Rhodes

4   Entities Claims, the Rhodes Entities shall be deemed to have consented to an extension of

5
    the applicable statute of limitations until sixty days following the Court's ruling on the
6
    allowance of the Rhodes Entities Claims.  The Litigation Trust shall have no liability to any
7
8   entity for any Claims or Causes of Action it determines not to pursue.

9          69.    Assumption and Rejection of Executory Contracts and Unexpired Leases.

10  Except as otherwise provided in the Plan, the Debtors' executory contracts or unexpired

11  leases not assumed or rejected pursuant to an order of the Court prior to the Effective Date

12  shall be deemed rejected pursuant to Bankruptcy Code sections 365 and 1123, except for

13  those executory contracts or unexpired leases: (1) listed on the schedule of Assumed

14
    Executory Contracts and Unexpired Leases attached to the Disclosure Statement as Exhibit
15
16  N; (2) that are Intercompany Contracts, in which case such Intercompany Contracts are

17  deemed automatically assumed by the applicable Debtor as of the Effective Date, unless

18  such Intercompany Contract previously was rejected by the Debtors pursuant to an order of

19
    the Court or is the subject of a motion to reject pending on the Effective Date; (3) that are
20
21  the subject of a motion to assume or reject pending on the Effective Date (in which case

22  such assumption or rejection and the effective date thereof shall remain subject to an order

23  of the Court); (4) that are subject to a motion to reject with a requested effective date of

24  rejection after the Effective Date; or (5) that are otherwise expressly assumed or rejected

25  pursuant to the Plan.  Entry of the Confirmation Order shall constitute an order of the Court

26  approving the assumptions or rejections of such executory contracts or unexpired leases as

27  set forth in the Plan, all pursuant to Bankruptcy Code sections 365(a) and 1123.  Unless

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  otherwise indicated, all assumptions or rejections of such executory contracts and unexpired

2  leases in the Plan are effective as of the Effective Date.  Each such executory contract and

3  unexpired lease assumed pursuant to the Plan or by Court order but not assigned to a third

4  party prior to the Effective Date shall revest in and be fully enforceable by the applicable

5  contracting Reorganized Debtor in accordance with its terms, except as such terms may have

6  been modified by such order.  Notwithstanding anything to the contrary in the Plan, the First

7  Lien Steering Committee and the Reorganized Debtors, as applicable, reserve the right to

8  alter, amend, modify, or supplement the schedules of executory contracts or unexpired

9  leases identified in Exhibit N to the Disclosure Statement at any time through and including

10  fifteen days after the Effective Date.  All executory contracts and unexpired leases

11  associated solely with the Arizona Assets shall be assumed and assigned to the Rhodes

12  Entities (or their designee) to the extent set forth on the schedule of Assumed Executory

13  Contracts and Unexpired Leases attached to the Disclosure Statement as Exhibit N, at no

14  cost to the Debtors or the Reorganized Debtors and all Cure costs associated with such

15  scheduled Arizona contracts or leases shall be borne by the Rhodes Entities.

18       70.    Claims Based on Rejection or Repudiation of Executory Contracts and

19  Unexpired Leases.  Unless otherwise provided by an order of the Court, any Proofs of Claim

20  asserting Claims arising from the rejection or repudiation of the Debtors' executory

21  contracts and unexpired leases pursuant to the Plan or otherwise must be filed with the

22  Claims and Solicitation Agent no later than the Rejection Damages Claim Deadline.  Any

23  Proofs of Claim arising from the rejection or repudiation of the Debtors' executory contracts

24  or unexpired leases that are not timely filed by the Rejection Damages Claim Deadline shall

25  be disallowed automatically, forever barred from assertion, and shall not be enforceable

26  against any Reorganized Debtor without the need for any objection by the Reorganized

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  Debtors or further notice to or action, order, or approval of the Court, and any Claim arising

2  out of the rejection or repudiation of the executory contract or unexpired lease shall be

3  deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules

4  or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection or

5
   repudiation of the Debtors' executory contracts and unexpired leases shall be classified as
6

7  General Unsecured Claims.

8      71.    Home Sales. All pending home sale contracts shall be assumed by the

9  applicable Reorganized Debtor.

10     72.    Warranties. All eligible prepetition home sale contracts with one-year

11 warranty obligations shall be performed in the ordinary course of business of the

12 Reorganized Debtors. Upon the Effective Date, any remaining warranty obligations that are

13
   to be assumed by the Reorganized Debtors, which shall only be assumed with the consent of
14

15 the First Lien Steering Committee, shall be transferred to the Reorganized Debtors.

16 Warranty obligations that are not expressly assumed shall be rejected and treated as General

17 Unsecured Claims.

18     73.    Procedures for Resolving Disputed Claims. The provisions contained in

19 Article VI of the Plan are found to be reasonable and are hereby approved.

20     74.    Provisions Governing Distributions. The provisions contained in Article VII

21
   of the Plan, including, without limitation, (i) the provisions governing the payment of $1.5
22

23 million to the First Lien Lenders and (ii) the provisions regarding the purchase of certain

24 General Unsecured Claims, are found to be reasonable and are hereby approved.

25     75.    Discharge of Claims and Termination of Interests. Pursuant to Bankruptcy

26 Code section 1141(d), and except as otherwise specifically provided in the Plan, the

27
   distributions, rights, and treatment that are provided in the Plan shall be in complete
28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests,

2  and Causes of Action of any nature whatsoever, including any interest accrued on Claims or

3  Interests from and after the Petition Date, whether known or unknown, against, liabilities of,

4  Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or

5  properties, regardless of whether any property shall have been distributed or retained

6  pursuant to the Plan on account of such Claims and Interests, including demands, liabilities,

7  and Causes of Action that arose before the Effective Date, any liability (including

8

9  withdrawal liability) to the extent such Claims or Interests relate to services performed by

10  employees of the Debtors prior to the Effective Date and that arise from a termination of any

11  employee, regardless of whether such termination occurred prior to or after the Effective

12  Date, any contingent or non-contingent liability on account of representations or warranties

13  issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy

14  Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim

15

16  based upon such debt or right is filed or deemed filed pursuant to Bankruptcy Code section

17  501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to

18  Bankruptcy Code section 502; or (3) the Holder of such a Claim has accepted the Plan.  Any

19  default by the Debtors with respect to any Claim or Interest that existed immediately prior to

20  or on account of the filing of the Chapter 11 Cases shall be deemed Cured on the Effective

21

22  Date.  The Confirmation Order shall be a judicial determination of the discharge of all

23  Claims and Interests subject to the Effective Date occurring.

24       76.    Releases by the Debtors of the Released Parties.  Pursuant to Bankruptcy

25  Code section 1123(b) and except as otherwise specifically provided in the Plan, for good and

26  valuable consideration, including the service of the Released Parties to facilitate the

27  expeditious reorganization of the Debtors and the implementation of the restructuring

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

contemplated by the Plan, and as part of the global settlement described in Article I.B of the Disclosure Statement, on and after the Effective Date, the Released Parties are deemed released by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtors, taking place on or before the Effective Date, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any of the Released Parties, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

77.    Releases by the Debtors of the Rhodes Entities.  The Rhodes Entities shall be deemed released from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever arising under chapter 5 of the Bankruptcy Code with respect to transfers made by the Debtors to the Rhodes Entities during the 2 years prior to the Petition Date; provided, however, that such release shall only apply to transfers expressly set forth in the Schedules as filed with the Court as of August 1, 2009 or as

1  disclosed in Attachment B to the Mediation Term Sheet.

2       78.    Releases by First Lien Lenders of First Lien Lenders.  Pursuant to

3  Bankruptcy Rule 9019, and except as otherwise specifically provided in the Plan, to the

4  extent a First Lien Lender elected on its ballot to release the First Lien Lenders in

5  accordance with Article VIII.F of the Plan, for good and valuable consideration, on and after

6  the Effective Date, each of the First Lien Lenders that elected to grant a release, shall be

7

8  deemed to release each of the other First Lien Lenders that elected to grant a release and

9  each of their affiliates from any and all Claims, obligations, rights, suits, damages, Causes of

10 Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or

11 unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such First Lien

12 Lender would have been legally entitled to assert against any other First Lien Lender that

13 elected to grant a release, based on or relating to, or in any manner arising from, in whole or

14 in part, the First Lien Credit Agreement, the First Lien Lender Claims, any other claims

15 arising under or related to the First Lien Credit Agreement, the Debtors, the Chapter 11

16

17 Cases, the subject matter of, or the transactions or events giving rise to any First Lien

18 Lender Claim, the restructuring of the First Lien Lender Claims prior to or during the

19 Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure

20 Statement, or related agreements, instruments, or other documents, upon any other act or

21 omission, transaction, agreement, event, or other occurrence taking place on or before the

22

23 Effective Date; with such releases constituting an express waiver and relinquishment by

24 each First Lien Lender electing to grant a release of any claims, whether known or unknown

25 that such First Lien Lender may have under Section 1542 of the California Civil Code or

26 other analogous state or federal law related to the matters being released; provided, however,

27 that Claims or liabilities arising out of or relating to any act or omission of any First Lien

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  Lender or any of its affiliates that constitutes gross negligence or willful misconduct shall

2  not be released.

3      79.    Exculpation.  Except as otherwise specifically provided in the Plan, no

4  Exculpated Party shall have or incur, and each Exculpated Party is hereby released and

5  exculpated from, any Claim, obligation, Cause of Action, or liability to one another or to any

6

7  Exculpating Party for any Exculpated Claim, except for gross negligence, willful

8  misconduct or fraud, but in all respects such Entities shall be entitled to reasonably rely

9  upon the advice of counsel with respect to their duties and responsibilities pursuant to the

10  Plan.  The Debtors, the First Lien Steering Committee and the Reorganized Debtors (and

11  each of their respective agents, members, directors, officers, employees, advisors, and

12  attorneys) have, and upon confirmation of the Plan shall be deemed to have, participated in

13

14  good faith and in compliance with the applicable provisions of the Bankruptcy Code with

15  regard to the distributions of the Securities pursuant to the Plan, and therefore are not, and

16  on account of such distributions shall not be, liable at any time for the violation of any

17  applicable law, rule, or regulation governing the solicitation of acceptances or rejections of

18  the Plan or such distributions made pursuant to the Plan.

19      80.    Injunction.  Except as otherwise expressly provided in the Plan or for

20  obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims

21  against the Debtors, and all Entities holding Interests, are permanently enjoined, from and

22  after the Effective Date, from: (1) commencing or continuing in any manner any action or

23

24  other proceeding of any kind against the Debtors or Reorganized Debtors on account of or in

25  connection with or with respect to any such Claims or Interests; (2) enforcing, attaching,

26  collecting, or recovering by any manner or means any judgment, award, decree or order

27  against the Debtors or Reorganized Debtors on account of or in connection with or with

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any

2  encumbrance of any kind against the Debtors or Reorganized Debtors or the property or

3  Estates of the Debtors or Reorganized Debtors on account of or in connection with or with

4  respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or

5
6  recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors

7  or against the property or Estates of the Debtors or Reorganized Debtors on account of or in

8  connection with or with respect to any such Claims or Interests unless such Holder has filed

9  a motion requesting the right to perform such setoff on or before the Confirmation Date, and

10  notwithstanding an indication in a Proof of Claim or Interest or otherwise that such Holder

11  asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code section

12  553 or otherwise (provided, that, to the extent the Rhodes Entities Claims are Allowed, the

13
14  Rhodes Entities, without the need to file any such motion, shall retain the right to assert a

15  setoff against any Claims or Causes of Action that the Reorganized Debtors or Litigation

16  Trust may assert against the Rhodes Entities, with the Reorganized Debtors and Litigation

17  Trust, as applicable, reserving the right to challenge the propriety of any such attempted

18  setoff, with any such challenge to be resolved by the Court); and (5) commencing or

19  continuing in any manner any action or other proceeding of any kind on account of or in

20  connection with or with respect to any such Claims or Interests released or settled pursuant

21
22  to the Plan.

23       81.    Setoffs.  Except as otherwise expressly provided for in the Plan, each

24  Reorganized Debtor, pursuant to the Bankruptcy Code (including Bankruptcy Code section

25  553), applicable non bankruptcy law, or as may be agreed to by the Holder of a Claim, may

26  setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on

27  account of such Allowed Claim (before any distribution is made on account of such Allowed

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1    Claim), any Claims, rights, and Causes of Action of any nature that such Debtor,

2    Reorganized Debtor or the Litigation Trust, as applicable, may hold against the Holder of

3    such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such

4    Holder have not been otherwise compromised or settled on or prior to the Effective Date

5    (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to

6    effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a

7

8    waiver or release by such Reorganized Debtor or the Litigation Trust of any such Claims,

9    rights, and Causes of Action that such Reorganized Debtor or the Litigation Trust may

10   possess against such Holder.  In no event shall any Holder of Claims be entitled to setoff any

11   Claim against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as

12   applicable, unless such Holder had filed a motion with the Court requesting the authority to

13   perform such setoff on or before the Confirmation Date, and notwithstanding any indication

14   in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any

15   right of setoff pursuant to section 553 or otherwise; provided, however, that, to the extent

16

17   the Rhodes Entities Claims are Allowed, the Rhodes Entities, without the need to file any

18   such motion, shall retain the right to assert a setoff against any Claims or Causes of Action

19   that the Reorganized Debtors or Litigation Trust may assert against the Rhodes Entities,

20   with the Reorganized Debtors and Litigation Trust, as applicable, reserving the right to

21   challenge the propriety of any such attempted setoff, with any such challenge to be resolved

22   by the Court.

23

24       82.    Professional Claims.  The provisions contained in Article IX.A of the Plan

25   relating to Claims for fees and expenses incurred in connection with the Chapter 11 Cases

26   are found to be reasonable and are hereby approved.

27       83.    Other Administrative Claims.  All requests for payment of an Administrative

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1    Claim must be filed with the Claims and Solicitation Agent and served upon counsel to the

2    Debtors or Reorganized Debtors, as applicable, and the First Lien Steering Committee on or

3    before the Administrative Claim Bar Date.  Any request for payment of an Administrative

4    Claim that is not timely filed and served shall be disallowed automatically without the need

5

6    for any objection by the Debtors, Reorganized Debtors, or the First Lien Steering

7    Committee. The Reorganized Debtors may settle and pay any Administrative Claim in the

8    ordinary course of business without any further notice to or action, order, or approval of the

9    Court. In the event that any party with standing objects to an Administrative Claim, the

10    Court shall determine the Allowed amount of such Administrative Claim.  Notwithstanding

11    the foregoing, no request for payment of an Administrative Claim need be filed with respect

12    to an Administrative Claim previously Allowed by Final Order.

13

14         84.    Immediate Binding Effect.  Subject to Article X.B of the Plan and

15 notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the

16 occurrence of the Effective Date, the terms of the Plan shall be immediately effective and

17 enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all

18 Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed

19 to have accepted the Plan), all Entities that are parties to or are subject to the settlements,

20 compromises, releases, discharges, and injunctions described in the Plan or herein, each

21 Entity acquiring property under the Plan, and any and all non-Debtor parties to executory

22 contracts and unexpired leases with the Debtors.

23

24         85.    Notice of Entry of Confirmation Order.  In accordance with Bankruptcy

25 Rules 2002 and 3020(c), within ten business days of the date of entry of the Confirmation

26 Order, the First Lien Steering Committee shall serve the Notice of Confirmation by United

27 States mail, first class postage prepaid, by hand, or by overnight courier service to all parties

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1   having been served with the Confirmation Hearing Notice; provided, however, that no

2   notice or service of any kind shall be required to be mailed or made upon any Entity to

3   whom the First Lien Steering Committee mailed a Confirmation Hearing Notice, but

4   received such notice returned marked "undeliverable as addressed," "moved, left no

5   forwarding address" or "forwarding order expired," or similar reason, unless the First Lien

6   Steering Committee has been informed in writing by such Entity, or is otherwise aware, of

7   that Entity's new address. To supplement the notice described in the preceding sentence,

8   within twenty days of the date of the Confirmation Order, the First Lien Steering Committee

9   shall publish the Notice of Confirmation once in the Vegas Sun.  Mailing and publication of

10  the Notice of Confirmation in the time and manner set forth in the this paragraph shall be

11  good and sufficient notice under the particular circumstances and in accordance with the

12  requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

13      86.    Additional Documents.  On or before the Effective Date, the First Lien

14  Steering Committee may file with the Court such agreements and other documents as may

15  be necessary or appropriate to effectuate and further evidence the terms and conditions of

16  the Plan.  The Debtors or the Reorganized Debtors, as applicable, the First Lien Steering

17  Committee and all Holders of Claims receiving distributions pursuant to the Plan and all

18  other parties in interest shall, from time to time, prepare, execute, and deliver any

19  agreements or documents and take any other actions as may be necessary or advisable to

20  effectuate the provisions and intent of the Plan, in each case as may be determined by the

21  First Lien Steering Committee.

22      87.    Payment of Statutory Fees.  All fees payable pursuant to section 1930(a) of

23  the Judicial Code, as determined by the Court at a hearing pursuant to Bankruptcy Code

24  section 1128, shall be paid for each quarter (including any fraction thereof) until the Chapter

1  11 Cases are converted, dismissed, or closed, whichever occurs first.

2      88.    Dissolution of Creditors' Committee.  Upon the Effective Date, the

3  Creditors' Committee shall dissolve automatically (except with respect to the resolution of

4  applications for Professional Claims), and members thereof shall be released and discharged

5  from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter

6  11 Cases and under the Bankruptcy Code.

7

8      89.    Reservation of Rights.  Except as expressly provided by the Plan, none of the

9  filing of the Plan, any statement or provision contained in the Plan, or the taking of any

10  action by any Debtor or the First Lien Steering Committee with respect to the Plan, the

11  Disclosure Statement, or any documents ancillary to either the Plan or the Disclosure

12  Statement, shall be deemed to be an admission or waiver of any rights of any Debtor or the

13  First Lien Steering Committee with respect to the Holders of Claims or Interests prior to the

14  Effective Date.

15

16      90.    Successors and Assigns.  The rights, benefits, and obligations of any Entity

17  named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any

18  heir, executor, administrator, successor or assign, affiliate, officer, director, agent,

19  representative, attorney, beneficiaries, or guardian, if any, of each Entity.

20      91.    Term of Injunctions or Stays.  Unless otherwise provided in the Plan or in the

21  Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to

22  Bankruptcy Code sections 105, 362, or 525 or otherwise, or any order of the Court, and

23  extant on the date of the Confirmation Order (excluding any injunctions or stays contained

24  in the Plan or this Confirmation Order) shall remain in full force and effect until the

25  Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order

26  shall remain in full force and effect in accordance with their terms.  The Confirmation Order

27

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

48

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  will permanently enjoin the commencement or prosecution by any Person, whether directly,

2  derivatively or otherwise, of any Claims, Causes of Action, obligations, suits, judgments,

3  damages, demands, debts, rights or liabilities released pursuant to the Plan.

4      92.    Governing Law.  Unless a rule of law or procedure is supplied by federal law

5  (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically

6  stated, the laws of the State of Nevada, without giving effect to the principles of conflict of

7  laws, shall govern the rights, obligations, construction, and implementation of the Plan, any

8  agreements, documents, instruments, or contracts executed or entered into in connection

9  with the Plan (except as otherwise set forth in those agreements, in which case the governing

10  law of such agreement shall control), and corporate governance matters; provided, however,

11  that corporate governance matters relating to the Debtors or Reorganized Debtors, as

12  applicable, not incorporated or organized in Nevada shall be governed by the laws of the

13  state of incorporation or organization of the applicable Debtor or Reorganized Debtor, as

14  applicable.

15      93.    Modifications and Amendments to Plan.  The First Lien Steering Committee

16  shall not modify materially the terms of the Plan without the prior consent of the parties to

17  the Mediation Term Sheet; provided, that in the event the Rhodes Entities fail to comply

18  with any of their obligations under the Mediation Term Sheet or the Plan by the Effective

19  Date (or such other date set forth in the Plan) and fail to cure such alleged breach within ten

20  (10) days' written notice to the Rhodes Entities, then the First Lien Steering Committee shall

21  be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has

22  occurred (except that the failure of the parties to agree on the refinancing of the Rhodes

23  Ranch Golf Course solely as a result of the First Lien Steering Committee acting

24  unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  with their obligations under the Plan), and the Rhodes Entities reserve their right to object to

2  such motion; (ii) modify the Plan to remove any provisions of the Plan that were included

3  for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as modified.  Upon

4  entry of an order of the Court finding a breach by the Rhodes Entities and authorizing the

5
6  modifications to the Plan to remove any provisions that were included for the benefit of the

7  Rhodes Entities, the First Lien Steering shall be authorized to make such modifications and

8  consummate the Plan.  Subject to certain restrictions and requirements set forth in

9  Bankruptcy Code section 1127 and Bankruptcy Rule 3019 and those restrictions on

10  modifications set forth in the Plan, the First Lien Steering Committee expressly reserves its

11  rights to revoke, withdraw, alter, amend, or modify materially the Plan with respect to any

12  Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate

13  proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or

14  omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the

15  Confirmation Order, in such matters as may be necessary to carry out the purposes and

17  intent of the Plan.  Any such modification or supplement shall be considered a modification

18  of the Plan and shall be made in accordance with Article XI.A of the Plan.

19          94.    Nonseverability of Plan Provisions.  The provisions of the Confirmation

20  Order shall constitute a judicial determination and shall provide that each term and provision

21
22  of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:

23  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be

24  deleted or modified without the First Lien Steering Committee's consent; and (3)

25  nonseverable and mutually dependent.

26          95.    References to Plan Provisions.  Captions and headings to Articles of the Plan

27  are inserted for convenience of reference only and are not intended to be part of or to affect

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

the interpretation of the Plan. The failure specifically to include or to refer to any particular provision of the Plan in the Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

96.    Conflicts Between Confirmation Order and Plan. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provisions of this Confirmation Order that cannot so be reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall control.

97.    Findings of Fact. The determinations, findings, judgments, decrees and orders set forth and incorporated herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated herein, to the extent that it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

98.    Substantial Consummation. Substantial consummation of the Plan shall be deemed to occur on the Effective Date.

99.    Final Order. The Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon entry hereof.

100.    Retention of Jurisdiction. Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction

1  over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to

2  Bankruptcy Code sections 105(a) and 1142 and Article XII of the Plan.

3  Submitted by:

4

5  _____

Nile Leatham (NV Bar No. 002838)
6  KOLESAR & LEATHAM
Wells Fargo Financial Center
7  3320 W. Sahara Ave.
Las Vegas, NV 89102
8  (702) 979-2357 (Telephone)
(702) 362-9472 (Facsimile)
9  Nleatham@klnevada.com

10

11  Dated:  February 8, 2010

12                                    # # #

13

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com