Sullivan Group Real Estate Advisors, LLC          E-File: February 16, 2010
c/o Tim Sullivan
12555 High Bluff Drive Suite #210
San Diego, CA 92130
Telephone: 858-523-1443
Facsimile: 858-523-1454
Email: t.sullivan@sgrea.com


Market Research Consultants for Debtors and
Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka<br>"Rhodes Homes," et al.,[1]<br><br>Debtors. | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11 |
| Affects:<br>☒ All Debtors<br>☐ Affects the following Debtor(s) | Hearing Date: March 17, 2010<br>Hearing Time: 1:30 p.m.<br>Courtroom 1 |

**FINAL APPLICATION OF SULLIVAN GROUP REAL ESTATE ADVISORS FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS MARKET RESEARCH CONSULTANTS TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD MARCH 31, 2009 THROUGH DECEMBER 31, 2009**

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

DOCS_LA:210078.1

**TO THE HONORABLE LINDA B. RIEGLE, UNITED STATES BANKRUPTCY JUDGE:**

By this Application, Sullivan Real Estate Advisors ("SGREA" of the "Firm"), as market research consultants for the debtors and debtors in possession in the above-captioned cases (the "Debtors"), respectfully applies for an order of this Court:  (1) allowing final compensation to SGREA for services rendered and expenses incurred in its representation of the Debtors during the period from March 31, 2009 through December 31, 2009 (the "Fee Period"), in the total amount of $126,063.14, comprising services rendered in the amount of $122,275.00 and expenses incurred in the amount of $3,788.14; and (ii) granting any other relief that this Court deems necessary and appropriate (the "Application").

SGREA submits this Application in accordance with the "Order Granting Debtors' Motion for Administrative Order Pursuant to Sections 105(A) and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016 Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals", entered May 18, 2009 (the "Administrative Order"), 11 U.S.C. §331, Rules 2002(a)(6) and 2016 of the Federal Rules of Bankruptcy Procedure, LR 2016, and the Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses Filed Under 11 U.S.C. §330 (the "Fee Guidelines").  In support of this Application, SGREA respectfully represents and shows as follows:

## I.

## SUMMARY OF SGREA ENGAGEMENT.

SGREA is a national firm that specializes in real estate market feasibility, revenue projections, strategic planning and in-depth analysis for the nations housing industry — all of which are areas in which SGREA consultants have extensive experience.  In the insolvency area, SGREA represents debtors, creditors, equity holders, committees, trustees, landlords, potential acquirers of assets, and other parties with interests in financially distressed real estate assets and businesses.  SGREA has offices in San Diego and Sacramento, and handles matters throughout the United States.

1    Pursuant to the "Order Granting Application of Debtors and Debtors in Possession to

2  Employ Sullivan Group Real Estate Advisors as Market Research Consultants *Nunc Pro Tunc* to

3  the Petition Date", entered on May 11, 2009, this Court authorized the Debtors to employ

4  SGREA as consultants in these proceedings.

5    As set forth herein, the SGREA consultants who have been principally responsible for

6  rendering services to the Debtors during the Fee Period have been Timothy Sullivan, Ken

7  Perlman, Shaun McCutcheon, Jeff Edinger and Jonathan Schwartz.  Other SGREA consultants

8  and staff rendered services as needed.  In general, tasks have been allocated among SGREA's

9  consultants based upon the comparative expertise of a particular consultant in various aspects of

10  these cases.  Whenever feasible, work was allocated to consultants with lower hourly rates.

11  SGREA believes that it provided services in an efficient and economic manner.

12    The following exhibits covering the Fee Period are annexed to this Application:

13    Exhibit 1 is a summary of the background and qualifications of the key SGREA

14  consultants who rendered services to the Debtors.

15    Exhibit 2 lists the billing rates for all SGREA professionals who rendered services to the

16  Debtors, and a summary of the hours billed and fees incurred on behalf of the Debtors by each

17  of those persons.

18    Exhibit 3 contains a summary of the total fees incurred for each activity category on a

19  monthly basis.

20    Exhibit 4 contains a summary of the total expenses incurred for each of the expense

21  categories on a monthly basis.

22    Exhibit 5 contains a summary of billings and payments to-date.

23    Exhibit 6  contains the First Interim Application including copies of invoices

24    Exhibit 7 contains the Second Interim Application including copies of invoices.

25  II.

26  **SUMMARY OF COMPENSATION REQUEST**

27    As set forth in Exhibit 5, during the Fee Period, SGREA incurred $122,750.00 in fees,

28  representing 435 hours of service, and $3,788.14 in costs and expenses.  SGREA served

DOCS_LA:210078.1

Monthly Statement for the months of April, May, June, July, Aug and Sept, 2009.  No party

objected to the Monthly Statements and the Debtors have processed payment to  SGREA for

one-hundred  percent (100%) of fees and expenses in accordance with the Administrative Order.

The Debtors have had an opportunity to review our fee billing summary and have provided

approval. As of the date hereof, the cumulative balance owed to SGREA for services rendered

and costs incurred during the Fee Period is $0. There is a remaining retainer balance of $0

(originally $47,500.00).

The following table summarizes the monthly fees and expenses incurred and payments

made to SGREA during the Fee Period:

| Period | Fees and Expenses Incurred | Invoice Payment Received | Amount Owed |
|---|---|---|---|
| April | Fees: $17,425.00 Exp:   $1,318.19 | $18,743.19 | $0 |
| May | Fees: $14,725.00 | $14,725.00 | $0 |
| June | Fees: $33,875.00 | $33,875.00 | $0 |
| July | Fees: $21,450.00 | $21,450.00 | $0 |
| Aug | Fees: $30,575.00 Exp: $969.95 | $31,544.95 | $0 |
| Sept | Fees: $4,225.00 Exp: $1,500.00 | $5,725.00 | $0 |
| Totals: | $126,063.14 | $126,063.14 | $0 |

Except as otherwise set forth in this Application, no payments have been made or

promised to SGREA for services rendered or to be rendered in any capacity whatsoever in

connection with these cases other than as may be authorized upon application to and order of

this Court. Neither SGREA nor any shareholders or associates of the Firm has any agreement or

any understanding of any kind or nature to divide, pay over, or share any portion of the fees to be awarded with any other person or firm.

### III.

### GENERAL BACKGROUND AND NARRATIVE HISTORY OF CASE

**A.    General Background.**

Sullivan Group was engaged by Debtor March 31, 2009 to serve as a independent third party market research consultant working in collaboration with a valuation expert. Because of its market research and real estate expertise, SGREA, was engaged to determine which homes and lots would be built out and sold over what time period and at what price. SGREA's primary role was in the projection of revenues for Debtors' real estate holdings.  Sullivan's services for the Debtors were essential to the valuation process, which is crucial to providing the financial information and evidence necessary for plan confirmation.  As a result, Sullivan's retention by the estates was necessary to enable the Debtors to execute their duties as debtors in possession, including maximizing value to their creditors.

### IV.

### SUMMARY OF SERVICES RENDERED

**A.    Project Billing and Narrative Statement of Services**

In accordance with the Fee Guidelines, SGREA classified all services performed for which compensation is being sought into categories.  SGREA attempted to place the services performed for which compensation in the category that best relates to the service provided.  However, because certain services may relate to one or more categories, services pertaining to one category may, in fact, be included in another category.  SGREA has established the following billing categories and used such categories in these cases:

DOCS_LA:210078.1

5

| Categories | Hours | Fees |
|---|---|---|
| Asset Analysis | 398 | $113,950.00 |
| Compensation of Professional | 32 | $7,200.00 |
| Retention of Professional | 5 | $1125.00 |
| | | |
| Total Fees:[2] | 435 | $122,750.00 |

**B.     Asset Analysis**

This category related to issues regarding asset analysis.  During the Fee Period, SGREA, performed among other things:  (1) market research and comparable data review, (2) analysis of home price trends and historic appreciation, (3) testing and adjusting proforma assumptions, (4) model creation and adjustment (5) product recommendations, conclusions and report generation (6) fieldwork, travel and property site visits, and (7) litigation support and document review

For the Fee Period SGREA is requesting:

Fees:  $113,950.00          Hours: 398

**C.     Compensation of Professionals**

This category related to issues regarding the compensation of SGREA. During the Fee Period, SGREA, among other things:  (1) performed work regarding preparation and service of monthly fee statements for April, May, June, July, August and September, 2009.

For the Fee Period SGREA is requesting:

Fees:  $        7,200.00          Hours: 32

**D.     Retention of Professionals**

This category related to issues regarding retention of the Firm. During the Fee Period, SGREA, among other things:  (1) performed work regarding the Firm's retention application; (2) reviewed and analyzed objections to its application; (3) performed research;.

For the Fee Period SGREA is requesting:

Fees:  $1,125.00              Hours: 5

## V.

## SUMMARY OF COSTS AND EXPENSES

The Fee Guidelines require that an application seeking reimbursement of expense include a summary listing of all expenses by category and month.  Accordingly, annexed hereto as Exhibit 4 is a summary of the total reimbursable expenses incurred by SGREA on a monthly basis during the Fee Period broken down by expense category.  The total costs and expenses incurred during the Fee Period for which SGREA seeks reimbursement is $3,788.14, which represents the cost of acquiring external data in creation of assumptions and overall analysis as well as travel expenses.

To assist the Court in reviewing SGREA's request for reimbursement of the expenses incurred in connection with its representation of the Debtors during the Fee Period, SGREA's accounting procedures for the general categories of costs and expenses for which it seeks reimbursement by this Application are described below.  The majority of the requested expenses are charged at rates customarily applied to SGREA's non-debtor clients.

## VI.

## THE FEES AND EXPENSES REQUESTED SHOULD BE AWARDED
## BASED UPON APPLICABLE LAW

The fees and expenses requested by this Application are an appropriate award for SGREA's services in acting as consultant to the Debtors.

**A.      Factors in Evaluating Requests for Compensation**

Pursuant to section 330 of the Bankruptcy Code, the Court may award to a professional person, reasonable compensation for actual, necessary services rendered, and reimbursement for actual, necessary expenses incurred.  11 U.S.C. § 330.  As set forth above, the fees for which the Firm requests compensation and the costs incurred for which the Firm requests reimbursement are for actual and necessary services rendered and costs incurred.

The professional services rendered by the Firm have required an expenditure of substantial time and effort.  During the Fee Period, in excess of 435 hours have been recorded by

DOCS_LA:210078.1

1    members of the Firm, and additional hours of work were incurred and was written off.  The

2    Firm's blended hourly rate in this case for the Fee Period, excluding write-offs but including

3    administrative support is $281.00.

4        Moreover, time and labor devoted is only one of many pertinent factors in determining an

5    award of fees and costs.  Based on the skills brought to bear in this case by the Firm and the

6    results obtained and in light of the accepted lodestar approach, the Firm submits that the

7    compensation requested herein is reasonable and appropriate.

8    **B.    The Lodestar Award Should Be Calculated by**
         **Multiplying a Reasonable Hourly Rate by the Hours Expended**
9

10       In determining the amount of allowable fees under section 330(a), courts are to be guided

11   by the same "general principles" as are to be applied in determining awards under the federal

12   fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters."

13   *Burgess v. Klenske (In re Manoa Finance Co.)*, 853 F.2d 687, 691 (9th Cir. 1988); *see also* In re

14   Schaeffer, 71 B.R. 559, 563 (Bankr. S.D. Ohio 1987).

15       Twelve factors relevant to determining such fees were identified in Johnson v. Georgia

16   Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974) (a Title VII class action case

17   under the Civil Rights Act of 1964), and Kerr v. Screen Extras Guild, Inc., 526 F. 2d 67, 70 (9th

18   Cir. 1975):  (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the

19   skill requisite to perform the service properly, (4) the preclusion of other employment by the

20   professional due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or

21   contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount

22   involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10)

23   the undesirability of the case, (11) the nature and length of the professional relationship with the

24   client, and (12) awards in similar cases.  *See American Benefit Life v. Baddock (In re First*

25   *Colonial Corp.)*, 544 F.2d 1291 (5th Cir. 1977) (Johnson criteria applicable in bankruptcy cases).

26       While the Johnson and Kerr courts only offered guidelines as to relevant factors, in 1984,

27   the Supreme Court, in enunciating guidelines to determine reasonable fees under the Civil Rights

28   Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, held:

> The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. Adjustments to that fee then may be made as necessary in the particular case.

*Blum vs. Stenson*, 465 U.S. 886 (1984) (citation omitted)..  This is the so-called "lodestar" calculation.  We believe similar methodology can be justified in calculating professional fees tied to market research consultation.

In 1986, the Supreme Court more explicitly indicated that the factors relevant to determining fees should be applied using the lodestar approach, rather than an ad hoc approach. While holding that the attorneys' fee provision of the Clean Air Act, 42 U.S.C. § 7401 et seq., should be interpreted like that of the Civil Rights Act, the Court expressly rejected the ad hoc application of the factors set forth in *Johnson* and thus *Kerr*, stating that, "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee  . . ." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-66 (1986).

While the lodestar approach is the primary basis for determining fee awards under the federal fee-shifting statutes and under the Bankruptcy Code, the other factors, previously applied in an ad hoc fashion, still apply in calculating the appropriate hourly rate to use under the lodestar approach.  For example, when, in *Boddy v. Bankruptcy Court (In re Boddy)*, 950 F.2d 334, 337 (6th Cir. 1991), the Sixth Circuit Court of Appeals rejected an approach to fees (in chapter 13 cases) that dictated only a "normal and customary" fee should be awarded absent exceptional results, the Sixth Circuit nonetheless acknowledged that:

> The court can legitimately take into account the typical compensation that is adequate for attorney's fees in Chapter 13 cases, as long as it expressly discusses these factors in light of the reasonable hours worked and a reasonable hourly rate.  The bankruptcy court also may exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area.

950 F.2d at 338.  Thus, the twelve oft-cited <u>Johnson</u> and <u>Kerr</u> factors remain relevant for determination of professional fees in a bankruptcy.

**C.    The Time and Labor Required**

The time for which compensation is sought is set forth, in detail, in the Firm's professional fee statements contained in the exhibits hereto.  In light of the scope of services rendered and the results achieved during the Fee Period, the Firm's services and time expenditures are reasonable.

**D.    The Novelty and Difficulty of the Questions Involved**

The case included a number of matters and issues requiring a high degree of knowledge and skill.

**E.    The Skill Requisite to Perform the Legal Services Properly**

The Firm believes its professionals have exhibited a high level of skill in representing the Debtors and dealing with issues and disputes regarding investigation of assets.

**F.    The Preclusion of Other Employment by the Professional Due to the Acceptance of the Case**

The case involved a number of matters and issues that required substantial amounts of time clearly precluding the acceptance of alternative employment as to the many hours worked.

**G.    The Customary Fee**

The compensation the Firm seeks by way of this Application is the customary compensation sought by the Firm and other professionals representing trustees, committees, and debtors in similar circumstances.

**H.    Whether the Fee Is Fixed or Contingent**

The Firm seeks fixed compensation based on the lodestar formula, which it believes is appropriate in this case.

**I.    Time Limitations Imposed by the Circumstances**

The time demands on the Firm have varied during the Fee Period, and have included some periods of time where the Firm's attorneys had to work very extensive hours for a number of the matters that arose during the Fee Period.

**J.      The Amount Involved and the Results Obtained**

The Firm obtained excellent results for its work and the amounts incurred were reasonable and appropriate.

**K.      The Experience, Reputation and Abilities of the Firm**

The experience, reputation, and abilities of the Firm's professionals are well known and respected in this community.

**L.      The Undesirability of This Case**

This case was not undesirable.

**M.      The Nature and Length of the Professional Relationship with the Client**

Applicant has provided real estate consulting services to the Debtors since 2007.

**N.      Awards in Similar Cases**

The award Applicant seeks in this case is similar to awards that professional has received in similar cases.  Exhibit 2 is  a copy of the Firm's time reports and records kept in the regular course of business reflecting the services rendered and the expenses incurred by the Applicant during the Fee Period.  The Applicant's time reports are initially handwritten or recorded on tape by the consultant performing the described services.  The time reports are organized on a daily basis.  The Applicant's charges for its professional services are based upon the time, nature, extent and value of such services, and the cost of comparable services in this area, other than in a case under the Bankruptcy Code.

The Firm's charges for its professional services are based upon the time, nature, extent and value of such services, and the cost of comparable services in the San Diego and Las Vegas area other than in a case under the Bankruptcy Code.  The requested fees and expenses shall be paid from the estate only as and when funds are available.

VII

<u>CONCLUSION</u>

SGREA believes that the services rendered for which compensation is sought by this Application have been beneficial to the estate, that the costs incurred have been necessary and proper, and that the sums requested for the services rendered and costs incurred are fair and reasonable.

WHEREFORE, SGREA respectfully requests that this Court, issues an order:  (i) allowing SGREA final compensation for services rendered and expenses incurred during the Fee Period in the amount of $126,063.14, representing services rendered in the amount of $122,750.00 and expenses incurred in the amount of $3,788.14; and (ii) granting such other relief as the Court deems necessary and appropriate.

**DATED** this 6TH day of February 2010.

Sullivan Group Real Estate Advisors

Timothy Sullivan
President
12555 Highbluff Drive Suite 210
San Diego, CA  92130
Telephone:  858-523-1443
Facsimile:  858-523-1445
Email:  t.sullivan@sgrea.com

Consultants for Debtors and Debtors in Possession

DOCS_LA:210078.1

12

## DECLARATION OF TIMOTHY SULLIVAN

I, Timothy Sullivan, declare:

a)      I am familiar with the services rendered by Timothy Sullivan as real estate consultant for the Debtors and Debtors in Possession.

b)      I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6TH day of FEBRUARY 2010 at San Diego, California.