Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
Telephone:  702.979.2357
Facsimile:  702.362.9472
E-Mail:        nleatham@klnevada.com

Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone:  212.872.1000
Facsimile:  212.872.1002

E-Mail:     pdublin@akingump.com
                aqureshi@akingump.com

*Counsel for the First Lien Steering Committee*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THE RHODES COMPANIES, LLC, | § | Case No. 09-14814-LBR |
| aka "Rhodes Homes," *et al.*, | § | Jointly Administered |
| | § | |
| Debtors.[1] | § | |
| | § | |
| | § | |
| | § | |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

*(sidebar, left margin)* AKIN GUMP STRAUSS HAUER & FELD LLP  One Bryant Park  New York, New York 10036  Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

| Affects: | § | ~~SECOND~~THIRD AMENDED ~~MODIFIED~~ PLAN OF |
| ☐ All Debtors | § | |
| ☐ Affects the following Debtor(s) | § | REORGANIZATION PURSUANT |
| | § | TO CHAPTER 11 OF THE |
| | § | BANKRUPTCY CODE FOR THE RHODES |
| | § | COMPANIES, LLC, ET AL. |

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,
      COMPUTATION OF TIME, AND GOVERNING LAW .............................. 1
  A.  Defined Terms ................................................................................ 1
  B.  Rules of Interpretation ................................................................. 15
  C.  Reference to Monetary Figures ................................................... 16

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS ........................................ 16
  A.  Administrative Claims .................................................................. 16
  B.  Priority Tax Claims ....................................................................... 17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND
      INTERESTS ................................................................................. 17
  A.  Classification of Claims and Interests .......................................... 17
  B.  Treatment of Classes of Claims and Interests .............................. 18
  C.  Class Voting Rights ..................................................................... ~~21~~22
  D.  Bankruptcy Code Section 1111(b) Election ................................ ~~23~~22
  E.  Acceptance or Rejection of the Plan ........................................... 23

ARTICLE IV. PROVISIONS FOR IMPLEMENTATION OF THE PLAN ...................... 23
  A.  Substantive Consolidation ........................................................... 23
  B.  Sources of Consideration for Plan Distributions .......................... 24
  C.  Corporate Existence ..................................................................... 25
  D.  Vesting of Assets in the Reorganized Debtors ............................. 26
  E.  Cancellation of Equity Securities and Related Obligations ......... 26
  F.  Restructuring Steps and Transfer of Certain Interests to Newco .............. ~~27~~26
  G.  Restructuring Transactions ........................................................... 27
  H.  Corporate Action .......................................................................... 28
  I.  Post-Confirmation Property Sales ................................................ 28
  J.  Organizational Documents ........................................................... 28
  K.  Effectuating Documents, Further Transactions ........................... ~~29~~28
  L.  Exemption from Certain Transfer Taxes and Recording Fees ...... 29
  M.  Directors and Officers of the Reorganized Debtors ...................... 29
  N.  Management and Director Equity Incentive Plan .......................... 29
  O.  The Litigation Trust ...................................................................... 29
  P.  Preservation of Causes of Action .................................................. 30
  Q.  HOA Board Seats .......................................................................... 31
  R.  Licensing ...................................................................................... 31
  S.  Transfer of Rhodes Ranch Golf Course ....................................... ~~32~~31
  T.  Cash Payment ............................................................................... 33

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

U.      Transfer of Arizona Assets ...................................................... 33
V.      Trademarks and Trade Names ................................................ 34
W.      Self Insured Retention Obligations ....................................... 34
X.      Bond Replacement or Indemnification ................................. 34
Y.      Stanley Engineering Litigation ............................................. 35

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
              LEASES ................................................................................... 35
A.      Assumption and Rejection of Executory Contracts and Unexpired
              Leases ..................................................................................... 35
B.      Cure of Defaults for Assumed Executory Contracts and Unexpired
              Leases ..................................................................................... 36
C.      Preexisting Obligations to the Debtors Under Executory Contracts and
              Unexpired Leases .................................................................... 37
D.      Claims Based on Rejection or Repudiation of Executory Contracts and
              Unexpired Leases .................................................................... 37
E.      Intercompany Contracts, Contracts, and Leases Entered Into After the
              Petition Date: .......................................................................... 38
F.      Home Sales .............................................................................. 38
G.      Warranties ............................................................................... 38
H.      Modification of Executory Contracts and Unexpired Leases Containing
              Equity Ownership Restrictions ............................................... 38
I.      Modifications, Amendments, Supplements, Restatements, or Other
              Agreements ............................................................................. 38
J.      Reservation of Rights.......................................................... 3839
K.      Nonoccurrence of Effective Date .......................................... 39

ARTICLE VI. PROCEDURES FOR RESOLVING DISPUTED CLAIMS.................... 39
A.      Allowance of Claims............................................................... 39
B.      Claims Administration Responsibilities ................................ 39
C.      Estimation of Claims .............................................................. 39
D.      Adjustment to Claims Without Objection................................. 3940
E.      Time to File Objections to Claims ......................................... 40
F.      Disallowance of Claims ......................................................... 40
G.      Offer of Judgment .................................................................. 40
H.      Amendments to Claims .......................................................... 4041

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS................................. 41
A.      Total Enterprise Value for Purposes of Distributions Under the Plan........... 41
B.      Distributions on Account of Claims Allowed as of the Effective Date........ 41
C.      Distributions on Account of Claims Allowed After the Effective Date: ....... 41
D.      Delivery of Distributions ........................................................ 42
E.      Claims Paid or Payable by Third Parties................................ 45
F.      Payment of $1.5 Million to First Lien Lenders...................... 46
G.      General Unsecured Claims Purchase ..................................... 47

ARTICLE VIII. EFFECT OF CONFIRMATION OF THE PLAN ...................................... 48

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

iv

|     |                                                                                      |     |
| --- | ------------------------------------------------------------------------------------ | --- |
| A.  | Discharge of Claims and Termination of Interests ..................................... | 48  |
| B.  | Subordinated Claims ............................................................. 4849 |     |
| C.  | Compromise and Settlement of Claims and Controversies ....................... | 49  |
| D.  | Releases by the Debtors of the Released Parties ....................................  | 49  |
| E.  | Releases by the Debtors of the Rhodes Entities.................................... | 50  |
| F.  | Releases by First Lien Lenders of First Lien Lenders ............................ | 50  |
| G.  | Exculpation ......................................................................... | 50  |
| H.  | Injunction ........................................................................... | 51  |
| I.  | Protection Against Discriminatory Treatment ..................................... | 51  |
| J.  | Setoffs .......................................................................... 5152 |     |
| K.  | Recoupment ........................................................................ | 52  |
| L.  | Release of Liens................................................................... | 52  |
| M.  | Document Retention .............................................................. | 53  |
| N.  | Reimbursement or Contribution ................................................. | 53  |

ARTICLE IX. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE
CLAIMS ........................................................................ 53

| A.  | Professional Claims: ............................................................ | 53 |
| B.  | Other Administrative Claims ................................................... | 54 |

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN .................................... 54

| A.  | Conditions to Confirmation .................................................... | 54 |
| B.  | Conditions Precedent to the Effective Date ................................. | 55 |
| C.  | Waiver of Conditions Precedent .............................................. | 56 |
| D.  | Effect of Non-Occurrence of Conditions to Consummation ............. | 56 |
| E.  | Satisfaction of Conditions Precedent to Confirmation ................... | 57 |

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE
PLAN ......................................................................... 57

| A.  | Modification and Amendments................................................. | 57 |
| B.  | Effect of Confirmation on Modifications .................................... | 58 |
| C.  | Revocation or Withdrawal of Plan............................................ | 58 |

ARTICLE XII. RETENTION OF JURISDICTION ....................................... 58

ARTICLE XIII. MISCELLANEOUS PROVISIONS ...................................... 61

| A.  | Immediate Binding Effect ...................................................... | 61 |
| B.  | Additional Documents .......................................................... | 61 |
| C.  | Payment of Statutory Fees ..................................................... | 61 |
| D.  | Dissolution of Creditors' Committee......................................... | 61 |
| E.  | Reservation of Rights........................................................... | 61 |
| F.  | Successors and Assigns......................................................... | 61 |
| G.  | Service of Documents:.......................................................... | 62 |
| H.  | Term of Injunctions or Stays.................................................. | 63 |
| I.  | Entire Agreement ................................................................ | 63 |
| J.  | Governing Law ................................................................... | 63 |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

K.      Exhibits ................................................................................................. 63
L.      Nonseverability of Plan Provisions.................................................... 64
M.      Closing of the Chapter 11 Cases ....................................................... 64
N.      Waiver or Estoppel .............................................................................. 64
O.      Conflicts................................................................................................ 64

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**AKIN GUMP STRAUSS HAUER & FELD LLP**
**One Bryant Park**
**New York, New York 10036**
**Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com**

## INTRODUCTION

The First Lien Steering Committee proposes the following ~~second~~third amended plan of reorganization for the resolution of outstanding Claims against, and Interests in, The Rhodes Companies, LLC and the other debtors in the above-referenced chapter 11 cases pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101–1532.  Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A. of the Plan.   Reference is made to the Disclosure Statement, Filed contemporaneously with the Plan, for a discussion of the Debtors~~'~~'_ history, businesses, assets, results of operations, and projections of future operations, as well as a summary and description of the Plan and certain related matters.  The First Lien Steering Committee is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  THE PLAN PROVIDES FOR THE SUBSTANTIVE CONSOLIDATION OF ALL OF THE ESTATES FOR ALL PURPOSES ASSOCIATED WITH CONFIRMATION AND DISTRIBUTIONS UNDER THE PLAN.

## ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

 A.    Defined Terms:  As used in the Plan, the capitalized terms below have the following meanings, except as expressly provided or unless the context otherwise requires.  Any term used but not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.    Accrued Professional Compensation:  At any given moment, all accrued fees and expenses for services rendered by all Professionals through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been Filed for such fees and expenses.  To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

2.    Administrative Claim:  A Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (c) all fees and charges assessed against the

Estates pursuant to chapter 123 of the Judicial Code and 28 U.S.C. § 1930; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

3.     <u>Administrative Claim Bar Date</u>:  The deadline for filing requests for payment of Administrative Claims, which shall be thirty days after the Effective Date for all other Administrative Claims incurred after the Petition Date through the Effective Date, except with respect to Professional Claims, which shall be subject to the provisions of Article IX.

4.     <u>Affidavit of Publication</u>:  An affidavit of a representative or agent of a publisher of a periodical certifying that notice has been served through publication in the publisher's periodical.

5.     <u>Affiliate</u>:  (a) An Entity that directly or indirectly owns, controls, or holds with power to vote, twenty percent or more of the outstanding voting securities of any of the Debtors, other than an Entity that holds such securities (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities or (ii) solely to secure a debt, if such Entity has not in fact exercised such power to vote; (b) a corporation twenty percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by any of the Debtors, or by an Entity that directly or indirectly owns, controls, or holds with power to vote, twenty percent or more of the outstanding voting securities of any of the Debtors, other than an Entity that holds such securities (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities or (ii) solely to secure a debt, if such Entity has not in fact exercised such power to vote; (c) an Entity whose business is operated under a lease or operating agreement by any of the Debtors, or an Entity substantially all of whose property is operated under an operating agreement with any of the Debtors; (d) an Entity that operates the business or substantially all of the property of any of the Debtors under a lease or operating agreement; or (e) the Debtors' domestic, wholly-owned, direct and indirect subsidiaries that have not commenced cases under chapter 11 of the Bankruptcy Code.

6.     <u>Allowed</u>:  With respect to Claims and Interests:  (a) any Claim or Interest, proof of which is timely Filed by the applicable Bar Date (or that by the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim or Interest that is listed in the Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated, and for which no Proof of Claim or Interest has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; <u>provided</u>, <u>however</u>, that with respect to any Claim or Interest described in clauses (a) or (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that (x) no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (y) such an objection is so interposed and the Claim or Interest shall have been Allowed for distribution purposes only by a Final Order, or (z) the Debtors allow such Claim prior to the Effective Date with the consent of the First Lien Steering Committee and the Creditors' Committee or the Reorganized Debtors allow such Claim after the Effective Date in their sole and absolute discretion.  Except as otherwise specified in the Plan or a Bankruptcy Court order, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For

purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  Any Claim or Interest that has been or is hereafter listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely Filed, is not considered Allowed and shall be expunged without further action by the Reorganized Debtors and without any further notice to or action, order, or approval of the Bankruptcy Court.

7.    Arizona Assets:  ~~The Debtors' homebuilding business in Arizona ("Arizona") that will be transferred to the Rhodes Entities on the Effective Date, through the Rhodes Entities' acquisition of the stock of Rhodes Arizona Properties LLC and Elkhorn Investments, Inc., in each case, as reorganized, and certain assets of Rhodes Homes Arizona LLC.~~ Approximately 1,400 acres of land in Arizona, including four model homes, four partially-completed homes, and miscellaneous office equipment and other items of personal property including certain intellectual property.

8.    Ballot or Ballots:  The ballots upon which Holders of Impaired Claims entitled to vote shall cast their vote to accept or reject the Plan.

9.    Bankruptcy Code:  Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Cases.

10.    Bankruptcy Court:  The United States Bankruptcy Court for the District of Nevada or any other court having jurisdiction over the Chapter 11 Cases.

11.    Bankruptcy Rules:  The Federal Rules of Bankruptcy Procedure as applicable to the Chapter 11 Cases, promulgated pursuant to section 2075 of the Judicial Code and the general, local, and chambers rules and orders of the Bankruptcy Court.

12.    Bar Date:  August 5, 2009, except as otherwise provided in the Plan or by Bankruptcy Court order.

13.    Beneficial Holder:  The Entity holding the beneficial interest in a Claim or Interest.

14.    Business Day:  Any day, other than a Saturday, Sunday, or Legal Holiday.

15.    Cash:  Cash and cash equivalents.

16.    Cash Collateral Order:  The Bankruptcy Court order entitled, "Final Stipulated Order (I) Authorizing Use of Cash Collateral Pursuant to Sections 105, 361, 362, and 363 of the Bankruptcy Code and (II) Granting Adequate Protection and Super Priority Administrative Expense Priority to Prepetition Secured Lenders Re Debtors' Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, and 364 of Debtors' Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to the Debtors' Prepetition Secured Parties and (C) Scheduling a Final Hearing;

3

Memorandum of Points and Authorities Filed by Zachariah Larson on Behalf of Heritage Land Company, LLC [Relates to Heritage Docket No. 35]," entered in the Chapter 11 Cases on April 30, 2009 [Rhodes Docket No. 126], as amended or extended with the consent of the First Lien Steering Committee, from time to time and in accordance with the terms thereof.

17.    <u>Cause of Action</u>:  Any claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; (f) any claim or cause of action of any kind against any Released Party or Exculpated Party based in whole or in part upon acts or omissions occurring prior to or after the Petition Date; and (g) any claim listed in Exhibit L to the Disclosure Statement.

18.    <u>Certificate</u>:  Any instrument evidencing a Claim or an Interest.

19.    <u>Chapter 11 Cases</u>:  The chapter 11 bankruptcy cases filed by the Debtors on the Petition Date in the Bankruptcy Court, with case numbers 09-14778-LBR, 09-14861-LBR, 09-14825-LBR, 09-14843-LBR, 09-14862-LBR, 09-14837-LBR, 09-14828-LBR, 09-14820-LBR, 09-14865-LBR, 09-14822-LBR, 09-14818-LBR, 09-14860-LBR, 09-14839-LBR, 09-14856-LBR, 09-14848-LBR, 09-14868-LBR, 09-14882-LBR, 09-14846-LBR, 09-14844-LBR, 09-14854-LBR, 09-14841-LBR, 09-14814-LBR, 09-14833-LBR, 09-14866-LBR, 09-14817-LBR, 09-14853-LBR, 09-14852-LBR, 09-14850-LBR, 09-14849-LBR, 09-14858-LBR, 09-14884-LBR, 09-14887-LBR.

20.    <u>Claim</u>:  As defined in section 101(5) of the Bankruptcy Code.

21.    <u>Claims and Solicitation Agent</u>:  Omni Management Group, LLC.

22.    <u>Claims Objection Deadline</u>:  (i) One year from the Effective Date for all Claims other than the Rhodes Entities Claims; and (ii) sixty days from the Effective Date for the Rhodes Entities Claims.

23.    <u>Claims Register</u>:  The official register of Claims and Interests maintained by the Claims and Solicitation Agent.

24.    <u>Class</u>:  A class of Holders of Claims or Interests as set forth in the Plan.

25.    <u>CM/ECF</u>:  The Bankruptcy Court's Case Management and Electronic Case Filing system, which can be accessed at https://ecf.nvb.uscourts.gov/.

26.    Confirmation:  The entry of the Confirmation Order, subject to all conditions specified in Article X.A having been satisfied or waived pursuant to Article X.C.

27.    Confirmation Date:  The date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

28.    Confirmation Hearing:  The hearing at which the Confirmation Order is first considered by the Bankruptcy Court.

29.    Confirmation Hearing Notice:  The notice approved in the Solicitation Procedures Order that sets forth in detail the voting and objection deadlines with respect to the Plan.

30.    Confirmation Order:  The order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

31.    Contingent Bond Indemnity Claim:  Any Claim asserted by a bonding company due to a bond being called.

32.    Consummation:  The occurrence of the Effective Date.

33.    Creditor:  A Holder of a Claim.

34.    Creditors' Committee:  The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

35.    Cure:  The distribution in the ordinary course of business as soon as reasonably practicable following the Effective Date of Cash, or such other property as may be ordered by the Bankruptcy Court or agreed upon by the contracting party and (i) the Debtors and the First Lien Steering Committee, or (ii) the Reorganized Debtors in an amount equal to all unpaid monetary obligations under applicable law or such lesser amount as may be agreed upon by the parties, under an executory contract or unexpired lease assumed pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

36.    Cure Bar Date:  The deadline for filing requests for payment of Cure, which shall be the later of: (a) thirty days after the Effective Date or (b) thirty days after the assumption of the applicable executory contract or unexpired lease, unless otherwise ordered by the Bankruptcy Court or agreed to by the First Lien Steering Committee and the counterparty to the applicable executory contract or unexpired lease.

37.    Debtors:  The following Entities:  Heritage Land Company, LLC; The Rhodes Companies, LLC; Rhodes Ranch General Partnership; Tick, LP; Glynda, LP; Chalkline, LP; Batcave, LP; Jackknife, LP; Wallboard, LP; Overflow, LP; Rhodes Ranch Golf and Country Club, LLC; Tuscany Acquisitions, LLC; Tuscany Acquisitions II, LLC; Tuscany Acquisitions III, LLC; Tuscany Acquisitions IV, LLC; Parcel 20 LLC; Rhodes Design and Development Corp.; C&J Holdings Inc.; Rhodes Realty, Inc.; Jarupa LLC;

Elkhorn Investments, Inc.; Rhodes Homes Arizona, LLC; Rhodes Arizona Properties, LLC; Tribes Holdings LLC; Six Feathers Holdings, LLC; Elkhorn Partners, A Nevada Limited Partnership; Bravo Inc.; Gung-Ho Concrete, LLC; Geronimo Plumbing, LLC; Apache Framing, LLC; Tuscany Golf Country Club, LLC; and Pinnacle Grading, LLC.

38.    Debtors in Possession:  The Debtors, as debtors in possession in the Chapter 11 Cases, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

39.    Disclosure Statement:  The disclosure statement for the Plan describing the Plan, including all exhibits and schedules thereto, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law, as may be amended from time to time.

40.    Disputed:  With respect to any Claim or Interest, (i) any Claim or Interest on the Claims Register that is not yet Allowed, (ii) any Claim or Interest that is not yet Allowed pursuant to the terms of the Plan; (iii) any Claim that is not set forth on the Debtors' Schedules or (iv) any Claim objected to by the applicable Claims Objection Deadline.

41.    Disputed Claims Reserve:  The Litigation Trust Interests and distributions in respect thereof held in reserve pursuant to Article VII.

42.    Distribution Agent:  The Reorganized Debtors, or the Entity or Entities chosen by the First Lien Steering Committee, to make or to facilitate distributions pursuant to the Plan.

43.    Distribution Date:  The date occurring as soon as reasonably practicable after the Effective Date when distributions under the Plan shall commence, but not later than thirty days after the Effective Date, without further Bankruptcy Court order.

44.    Distribution Record Date:  The date for determining which Holders of Allowed Claims are eligible to receive distributions pursuant to the Plan, which shall be the Confirmation Date or such other date as designated in the Plan or a Bankruptcy Court order.

45.    Effective Date:  The date in a notice Filed by the First Lien Steering Committee on or after the eleventh day following entry of an order, in form and substance acceptable to the First Lien Steering Committee, by the Bankruptcy Court confirming the Plan and satisfaction of all conditions set forth in Article X.B. of the Plan having been satisfied or waived in accordance with the terms of the Plan; provided, however, that the Effective Date shall occur no earlier than January 1, 2010.

46.    Entity:  As defined in section 101(15) of the Bankruptcy Code.

47.    Equity Security:  Any equity security as defined in section 101(16) of the Bankruptcy Code in a Debtor.

48.    Equity Security Holder:  A Holder of an Interest.

49.     Estate:  The bankruptcy estate of any Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

50.     Exculpated Claim:  Any claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan, in each case other than claims for gross negligence, willful misconduct or fraud.

51.     Exculpated Party:  Each of: (i) the Creditors' Committee, the First Lien Steering Committee, the First Lien Lenders and the Second Lien Lenders, and all of their respective current and former officers, directors, members, employees, advisors, attorneys, professionals, consultants, agents, or other representatives, and (ii) the Debtors' current officers, employees, advisors, attorneys, professionals, consultants, agents, or other representatives.

52.     Federal Judgment Rate:  The federal judgment rate of .59%, which was in effect as of the Petition Date.

53.     File:  To file with the Bankruptcy Court in the Chapter 11 Cases, or in the case of Proofs of Claim or Interest, to file with the Claims and Solicitation Agent.

54.     Final Decree:  The decree contemplated under Bankruptcy Rule 3022.

55.     Final Order:  As applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the First Lien Steering Committee or Reorganized Debtors, as appropriate, reserve the right to waive any such appeal or similar conditions of a Final Order.

56.     First Lien Agent:  The current and former agents, arranger, and bookrunner with respect to, or under, the First Lien Credit Agreement.

57.     First Lien Credit Agreement:  The first lien Credit Agreement dated as of November 21, 2005 (as may have been amended from time to time) among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein as Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, and the other Loan Documents (as defined in the First Lien Credit Agreement).

58.     First Lien Lender Claims:  All First Lien Lender Secured Claims and First Lien Lender Deficiency Claims.

59.    <u>First Lien Lender Secured Claim</u>:  Any Secured Claim for principal or interest under the First Lien Credit Agreement or the SWAP Transaction.

60.    <u>First Lien Lender Deficiency Claim</u>:  Any deficiency Claim arising under the First Lien Credit Agreement.

61.    <u>First Lien Lenders</u>:  (i) The First Lien Agent, (ii) the entities that hold debt under the First Lien Credit Agreement and (iii) the holders of Claims relating to under the SWAP Transaction.

62.    <u>First Lien Steering Committee</u>:  Credit Suisse Asset Management, Candlewood Special Situations Master Fund, Credit Suisse Loan Funding LLC, CypressTree Investment Management, LLP, General Electric Capital Corporation, Highland Capital Management, L.P., and Sorin Capital Management.

63.    <u>General Unsecured Claims</u>:  Any Claim (including any Allowed Rhodes Entities Claims) against any of the Debtors that is not a/n (a) Administrative Claim, (b) Priority Tax Claim, (c) Priority Non-Tax Claim, (d) First Lien Lender Secured Claim, (e) Second Lien Lender Secured Claim, (f) Other Secured Claim, (g) First Lien Lender Deficiency Claim, (h) Second Lien Lender Deficiency Claim, (i) Subordinated Claim, or (j) Intercompany Claim.

64.    <u>Government Bar Date</u>:  September 28, 2009 or, with respect to Rhodes Homes Arizona, LLC, Tuscany Golf Country Club, LLC and Pinnacle Grading, LLC, September 29, 2009.

65.    <u>Heritage Equity Securities</u>:  Members' interests and/or the interests as a noneconomic member in Heritage Land Company, LLC, a Nevada limited liability company.

66.    <u>Holder</u>:  An Entity holding a Claim or Interest, as applicable.

67.    <u>HOA</u>:  A homeowners' association.

68.    <u>Impaired</u>:  With respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

69.    <u>Indemnification Obligation</u>:  A Debtor's obligation under an executory contract or otherwise to indemnify directors, officers, or employees of the Debtors who served in such capacity at any time, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by the Debtors' respective articles of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date, which shall be deemed rejected under the Plan.

70.    <u>Insider</u>:  As defined in section 101(31) of the Bankruptcy Code.

71. <u>Insured Claim</u>:  A Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy applicable to the Debtors or their businesses.

72. <u>Intercompany Claim</u>:  A Claim held by a Debtor against another Debtor.

73. <u>Intercompany Contract</u>:  A contract between two or more Debtors.

74. <u>Intercompany Interest</u>:  An Interest held by a Debtor.

75. <u>Interest</u>:  Any: (a) Equity Security, including all issued, unissued, authorized, or outstanding shares of stock together with any warrants, options, or contractual rights to purchase or acquire such Equity Securities at any time and all rights arising with respect thereto and (b) partnership, limited liability company or similar interest.

76. <u>Interim Compensation Order</u>:  The Bankruptcy Court order entitled, "Order Granting Debtors' Motion for Administrative Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016 Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Re: Docket No. 62]," entered in the Chapter 11 Cases on May 18, 2009 [Rhodes Docket No. 180], as may have been modified by a Bankruptcy Court order approving the retention of the Professionals.

77. <u>Internal Revenue Code</u>:  Title 26 of the United States Code, 26 U.S.C. §§ 1–9833.

78. <u>Judicial Code</u>:  Title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

79. <u>Lien</u>:  As defined in section 101(37) of the Bankruptcy Code.

80. <u>Litigation Trust</u>:  That certain litigation trust to be created on the Effective Date in accordance with the provisions of Article IV of the Plan and the Litigation Trust Agreement.

81. <u>Litigation Trust Advisory Board</u>:  The advisory board formed pursuant to the Litigation Trust Agreement.

82. <u>Litigation Trustee</u>:  The Person designated by the First Lien Steering Committee in consultation with the First Lien Agent, the Second Lien Agent and the Creditors' Committee on or before the Confirmation Date and retained as of the Effective Date to administer the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement, and any successor appointed in accordance with the Litigation Trust Agreement. The identity of the Litigation Trustee shall be disclosed by the First Lien Steering Committee at or prior to the Confirmation Hearing.

83. <u>Litigation Trust Agreement</u>:  That certain trust agreement, substantially on the terms set forth on Exhibit I to the Disclosure Statement and in form and substance acceptable to the First Lien Steering Committee, in consultation with the First Lien Agent,

Second Lien Agent, Creditors' Committee and the Debtors, that, among other among other things: (a) establishes and governs the Litigation Trust (including any Litigation Trust Advisory Board or similar oversight committee); and (b) describes the powers, duties, and responsibilities of the Litigation Trustee, the Liquidation Trust Assets, and the distribution of the proceeds thereof.

84.    <u>Litigation Trust Assets</u>:  All Claims and Causes of Action on which the First Lien Lenders do not have a lien and that have not been released pursuant to the Plan or order of the Bankruptcy Court.  The Litigation Trust Assets shall include those set forth on Exhibit G to the Disclosure Statement.

85.    <u>Litigation Trust Beneficiaries</u>:  The Holders of Claims that are to be satisfied, in whole or in part, by post-Effective Date distributions that are to be made by the Litigation Trust.

86.    <u>Litigation Trust Funding Amount</u>: The amount of $100,000 to be used to initially fund the Litigation Trust, which shall be repaid to the Reorganized Debtors from the first proceeds received by the Litigation Trust.

87.    <u>Litigation Trust Interests</u>:  The beneficial interests in the Litigation Trust to be distributed to certain Holders of Claims in accordance with the terms of the Plan.

88.    <u>Management and Director Equity Incentive Plan</u>:  A post-Effective Date management and director compensation incentive plan intended for certain management, employees, consultants and directors of certain of the Reorganized Debtors.

89.    <u>Master Ballots</u>:  The master ballots upon which the applicable Nominee or other holder of record shall submit on behalf of the Beneficial Holders it represents the votes cast by such Beneficial Holders to accept or reject the Plan.

90.    <u>Mediation Settlement</u>:  The agreement in principle on a comprehensive settlement reached among the Debtors, the First Lien Steering Committee, the Creditors' Committee and the Second Lien Agent during a mediation held in Los Angeles, California on August 17, 24 and 25 of 2009 before the Honorable Richard Neiter.

91.    <u>Mediation Term Sheet</u>:  The document attached as Exhibit 1 to the Plan, which sets forth the terms of the Mediation Settlement.

93.    <u>Newco</u>:  An entity to be newly formed which will be the ultimate holding company of the Reorganized Debtors.

94.    <u>Newco Equity Interests</u>:  The shares of common stock in Newco or limited liability company interests in Newco initially issued and outstanding pursuant to the Plan as of the Effective Date. The Newco Equity Interests may consist of a class of full-voting equity interests (the "<u>Class A-1 Equity Interests</u>") and a separate class of limited-voting equity interests (the "<u>Class A-2 Equity Interests</u>").  To the extent applicable, each First Lien Lender shall have the option to choose to take its New Equity Interests in the form of Class A-1 Equity Interests or Class A-2 Equity Interests.

95.    Newco LLC Operating Agreement:  That certain limited liability company operating agreement which will govern Newco and shall be in form and substance acceptable to the First Lien Steering Committee.  A draft of the Newco LLC Operating Agreement is attached as Exhibit J to the Disclosure Statement.

96.    Newco Total Enterprise Value:  $99.6 million, which is the midpoint range of the total enterprise value of the Reorganized Debtors set forth in the Disclosure Statement or such amount provided in the Confirmation Order as the total enterprise value of the Reorganized Debtors.

97.    New First Lien Notes:  The term notes issued pursuant to Article IV.B hereof in partial satisfaction of the First Lien Lender Secured Claims, which shall have the terms and conditions described on Exhibit 2 to the Plan.

98.    New First Lien Notes Maturity Date:  The sixth anniversary of the Effective Date.

99.    Nominee:  Any broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other party in whose name securities are registered or held of record on behalf of a Beneficial Holder.

100.    Notice of Confirmation:  That certain notice pursuant to Bankruptcy Rule 3020(c)(2) notifying Holders of Claims and Interests and parties in interest that the Bankruptcy Court has confirmed the Plan.

101.    Old Equity Interests:  All of the Interests in any of the Debtors and any rights, options, warrants, calls, subscriptions or other similar rights or agreements, commitments or outstanding securities obligating the Debtors to issue, transfer or sell any Interests.

102.    Other Secured Claim:  Any Secured Claim, other than a: (i) First Lien Lender Secured Claim; or (ii) Second Lien Lender Secured Claim.

103.    Periodic Distribution Date:  The first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the immediately preceding Periodic Distribution Date.

104.    Permitted Nominee:  Any nominee of a First Lien Lender or Second Lien Lender that such lender has confirmed in writing to the Debtors and the First Lien Agent or Second Lien Agent (as applicable) that it is such lender's nominee for the purpose of distribution of some or all of such lender's distribution hereunder, provided that such nominee shall be an affiliate of such lender.

105.    Person:  As defined in section 101(41) of the Bankruptcy Code.

106.    Petition Date:  March 31, 2009 or, for Tuscany Golf Club, LLC, Pinnacle Grading, LLC and Rhodes Homes Arizona, LLC, April 1, 2009.

107.    <u>Plan</u>:  This Second Amended Plan of Reorganization for each of the Debtors pursuant to chapter 11 of the Bankruptcy Code either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms of the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

108.    <u>Plan Proponent</u>:  The First Lien Steering Committee.

109.    <u>Pravada</u>:  A Rhodes Homes development located in Mohave County (vicinity of Kingman, Arizona) on approximately 1,312 acres.

110.    <u>Priority Non-Tax Claim</u>:  Any Claim accorded priority in right of payment pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

111.    <u>Priority Tax Claim</u>:  Any Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

112.    <u>Professional</u>:  An Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

113.    <u>Proof of Claim</u>:  A proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

114.    <u>Proof of Interest</u>:  A proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

115.    <u>Qualified Employee</u>:  An employee that satisfies the requirements of Chapter 624.260 of the Nevada Revised Statutes.

116.    <u>Record Date</u>:  November 24, 2009

117.    <u>Reinstated</u>:  (a) Leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Interest so as to leave such Claim Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such

Claim or Interest (other than the Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder.

118.    <u>Rejection Damages Claim</u>:  Any Claim on account of the rejection of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

119.    <u>Rejection Damages Claim Deadline</u>:  The deadline to file a Rejection Damages Claim which shall be thirty days after the later of the Effective Date or the effective date of rejection or repudiation of an executory contract or unexpired lease.

120.    <u>Released Party</u>:  Each of: (a) the First Lien Lenders in their capacity as such; (b) the First Lien Steering Committee; (c) the Second Lien Lenders in their capacity as such; (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entities' predecessors, successors and assigns; (e) the Creditors' Committee and the members thereof in their capacity as such; (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' subsidiaries, affiliates, officers, members, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals; (g) the Debtors' officers, employees (including Thomas Robinson and Joseph Schramm) and Professionals, as of the Petition Date; and (h) Paul Huygens; <u>provided</u>, <u>however</u>, that clause (g) shall not include (i) the Rhodes Entities or their affiliates; (ii) insiders of any of the Rhodes Entities (except as to Thomas Robinson and Joseph Schramm); or (iii) relatives of Rhodes.

121.    <u>Reorganized Debtors</u>:  The Debtors, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

122.    <u>Rhodes</u>:  James M. Rhodes, in his individual capacity and any capacity related to any of the Debtors including, without limitation, as shareholder, general partner, limited partner, agent, officer or principal.

123.    <u>Rhodes Entities</u>:  The following Entities:  Rhodes; Glynda Rhodes; John Rhodes; James M. Rhodes Dynasty Trust I; James M. Rhodes Dynasty Trust II; JMR Children's Irrevocable Educational Trust; Truckee Springs Holdings, Inc.; Sedora Holdings LLC; Gypsum Resources, LLC; Tulare Springs Holdings, Inc.; Escalante-Zion Investments, LLC; HH Trust; Harmony Homes, LLC; Tock, LP; Tapemeasure, LP; Joshua Choya, LLC; American Land Management, LLC; South Dakota Conservancy, LLC; Meridian Land Company, LLC; Yucca Land Company, LLC; Sagebrush Enterprises, Inc.; Rhodes Ranch, LLC; Westward Crossing, LLC; Pinnacle Equipment Rental, LLC; Desert Communities, Inc.; Spirit Underground, LLC; Tropicana Durango Investments, Inc.; Tropicana Durango, Ltd. I; Dirt Investments, LLC; Underground Technologies, LLC; South Dakota Aggregate and Engineering, LLC; Freedom Underground, LLC; Jerico Trust; Canberra Holdings, LLC; Custom Quality Homes, LLC; and Rhodes Ranch Golf, Inc.; and ID Interior Design, LLC.

124.    <u>Rhodes Entities Claims</u>:  Claims asserted by the Rhodes Entities.

125.    <u>Rhodes Entities Release</u>:  As set forth in Article VIII.E hereof.

126.    <u>Rhodes Ranch Golf Course</u>:  The golf course situated within the Rhodes Ranch master-planned community located in the southwestern Las Vegas valley.

127.    <u>Roll-Up Transaction</u>:  A dissolution or winding up of the corporate existence of a Debtor or Reorganized Debtor under applicable state law or the consolidation, merger, contribution of assets, or other transaction in which a Debtor or Reorganized Debtor merges with or transfers substantially all of its assets and liabilities to another Debtor or Reorganized Debtor, on or after the Effective Date.

128.    <u>Schedules</u>:  The schedules of assets and liabilities, schedules of executory contracts, and statement of financial affairs, as amended from time to time, Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

129.    <u>Second Lien Agent</u>:    The current and former agents, arranger, and bookrunner with respect to, or under, the Second Lien Credit Agreement.

130.    <u>Second Lien Credit Agreement</u>:  The Credit Agreement (as may have been amended from time to time) dated as of November 21, 2005 among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein, as the Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, and the other Loan Documents (as defined in the Second Lien Credit Agreement).

131.    <u>Second Lien Lender Claims</u>:  All Second Lien Lender Secured Claims and Second Lien Lender Deficiency Claims.

132.    <u>Second Lien Lender Secured Claim</u>:  Any Secured Claim on account of the Second Lien Credit Agreement.

133.    <u>Second Lien Lender Deficiency Claim</u>:  Any deficiency Claim arising under the Second Lien Credit Agreement.

134.    <u>Second Lien Lenders</u>:  The Second Lien Agent and the entities that hold debt under the Second Lien Credit Agreement.

135.    <u>Secured</u>:  When referring to a Claim: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan as a Secured Claim.

136.    <u>Securities Act</u>:  The Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law.

137. <u>Security</u>:  As defined in section 2(a)(1) of the Securities Act.

138. <u>Servicer</u>:  An agent, servicer, or other authorized representative of Holders of Claims or Interests recognized by the Plan Proponent.

139. <u>Solicitation Procedures Order</u>:  That certain order entered by the Bankruptcy Court on  approving certain solicitation procedures for solicitation of votes on the Plan.

140. <u>Stanley Engineering Litigation</u>:  The litigation styled Rhodes Homes Arizona, LLC v. Stanley Consultants, Inc., No. CV2006-011358, currently pending in the Superior Court of Arizona, Maricopa County.

141. <u>Subordinated Claim</u>:  Any Claim that is subordinated pursuant to section 510 of the Bankruptcy Code.

142. <u>Supremacy Clause:</u> Paragraph 2 of Article VI of the U.S. Constitution.

144. <u>SWAP Transaction</u>:  That certain transaction between Credit Suisse International and Heritage Land Company, LLC with Trade Date of December 9, 2005 and CSIN External ID 53095828.

145. <u>Unclaimed Distribution</u>:  Any distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, presented such check for payment within 120 days of the date of the check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

146. <u>Uniform Commercial Code</u>:  The Uniform Commercial Code as in effect on the Effective Date, as enacted in the applicable state.

147. <u>Unimpaired</u>:  With respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

148. <u>Unsecured Claim</u>:  Any Claim that is not secured by a Lien on property in which the Debtor's Estate has an interest.

149. <u>U.S. Constitution</u>:  The Constitution of the United States of America.

151. <u>Voting Deadline</u>:  January 4, 2010.

<u>B.</u>    <u>Rules of Interpretation</u>:

1. <u>For purposes of the Plan</u>:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference in

15

the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references in the Plan to Articles are references to Articles of the Plan or to the Plan; (f) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) unless otherwise set forth in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (k) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (l) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (m) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

   2. Computation of Time: In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

 C. Reference to Monetary Figures:  All references in the Plan to monetary figures shall refer to currency of the United States of America.

**ARTICLE II.**
ADMINISTRATIVE AND PRIORITY CLAIMS

   In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.

 A. Administrative Claims:  Each Allowed Administrative Claim shall be paid in full, in Cash, (i) on the later of (a) the Effective Date, (b) the date on which the Bankruptcy Court enters an order allowing such Allowed Administrative Claim or (c) the date on which the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee

16

(and in consultation with the First Lien Agent and Second Lien Agent) and the Holder of such Allowed Administrative Claim otherwise agree, and (ii) in such amounts as (a) are incurred in the ordinary course of business by the Debtors, (b) are Allowed by the Bankruptcy Court, (c) may be agreed upon between the Holder of such Allowed Administrative Claim and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), or (d) may otherwise be required under applicable law.  Such Allowed Administrative Claims shall include costs incurred in the operation of the Debtors' businesses after the Petition Date, the allowed fees and expenses of Professionals retained by the Debtors and the Creditors' Committee and the fees due to the United States Trustee pursuant to 28 U.S.C. § 1930.

B.    Priority Tax Claims:  Allowed Priority Tax Claims shall be paid in full, in Cash, upon the later of (a) the Effective Date, (b) the date upon which there is a Final Order allowing such Claim as an Allowed Priority Tax Claim, (c) the date that such Allowed Priority Tax Claim would have been due if the Chapter 11 Cases had not been commenced, or (d) upon such other terms as may be agreed to between the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), and any Holder of an Allowed Priority Tax Claim; provided, however, that the Reorganized Debtors or Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), in lieu of payment in full of Allowed Priority Tax Claims on the Effective Date, may make Cash payments respecting Allowed Priority Tax Claims deferred to the extent permitted by Section 1129(a)(9) of the Bankruptcy Code and, in such event, unless otherwise provided herein, interest shall be paid on the unpaid portion of such Allowed Priority Tax Claim at the Federal statutory rate; provided, further, that deferred Cash payments on account of an Allowed Priority Tax Claim shall be paid quarterly over a period of six years commencing with the quarter after which such Priority Tax Claim has been Allowed.

### ARTICLE III.
CLASSIFICATION AND TREATMENT
OF CLAIMS AND INTERESTS

A.    Classification of Claims and Interests:    All Claims and Interests, except Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

17

1.    Class Identification:  Below is a chart assigning each Class a letter and, in some cases, a number for purposes of identifying each separate Class.

| Class | Claim or Interest Type |
|-------|------------------------|
| A-1 | First Lien Lender Secured Claims |
| A-2 | Second Lien Lender Secured Claims |
| A-3 | Other Secured Claims |
| B | Priority Non-Tax Claim |
| C-1 | General Unsecured Claims |
| C-2 | First Lien Lender Deficiency Claims |
| C-3 | Second Lien Lender Deficiency Claims |
| C-4 | Subordinated Claims |
| D | Old Equity Interests |
| E | Intercompany Claims |

B.    Treatment of Classes of Claims and Interests:  To the extent a Class contains Allowed Claims or Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below.

1.    Class A-1—First Lien Lender Secured Claims

a.    Classification:  Class A-1 consists of all First Lien Lender Secured Claims.

b.    Impairment and Voting:  Class A-1 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class A-1 is entitled to vote to accept or reject the Plan.

c.    Treatment:  On the Effective Date or such other date as set forth herein, each of the First Lien Lenders (or its Permitted Nominee) shall receive on account of its Secured Claims, (w) its pro rata share of $1.5 million in Cash from the proceeds of the First Lien Lenders' Collateral, (x) its pro rata share of 100% of the New First Lien Notes, and (y) its pro rata share of 100% of the Newco Equity Interests (subject to dilution for any Newco Equity Interests issued pursuant to a Management and Director Equity Incentive Plan).  The $1.5 million payment to the First Lien Lenders shall be allocated and deemed paid to the First Lien Lenders in accordance with Article VII.F. of the Plan.

2.    Class A-2—Second Lien Lender Secured Claims

a.    Classification:  Class A-2 consists of all Second Lien Lender Secured Claims.

18

b.      Impairment and Voting:  Class A-2 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class A-2 is entitled to vote to accept or reject the Plan.

c.      Treatment:  On the Effective Date, only if the Class of Second Lien Lender Secured Claims votes in favor of the Plan, each of the Second Lien Lenders (or its Permitted Nominee) shall receive its pro rata share of a 50% interest in the Stanley Engineering Litigation, without a reduction on account of the reasonable fees and expenses of Ropes & Gray LLP and local counsel for the Second Lien Agent, subject to an aggregate cap of $500,000, each of which such fees shall be paid in Cash to the Second Lien Agent on the Effective Date.  If the Class of Second Lien Lender Secured Claims votes in favor of the Plan, upon final resolution of the Stanley Engineering Litigation, each holder of an Allowed Second Lien Lender Claim will receive its pro rata share of the net proceeds of the Stanley Engineering Litigation.  If the Class of Second Lien Lender Secured Claims votes against the Plan, each of the Second Lien Lenders shall receive no recovery on account of such Secured Claims.

3.      Class A-3—Other Secured Claims

a.      Classification:  Class A-3 consists of all Other Secured Claims.

b.      Impairment and Voting:  Class A-3 is Unimpaired by the Plan.  Each Holder of an Allowed Claim in Class A-3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c.      Treatment:  To the extent not satisfied by the Debtors, pursuant to Bankruptcy Court order, in the ordinary course of business prior to the Effective Date, at the option of the Reorganized Debtors on or after the Effective Date (i) an Allowed Other Secured Claim shall be Reinstated and rendered Unimpaired in accordance with section 1124(2) of the Bankruptcy Code, (ii) a Holder of an Allowed Other Secured Claim shall receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable, (iii) a Holder of an Allowed Other Secured Claim shall receive the Collateral securing both its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (iv) a Holder of an Allowed Other Secured Claim shall receive such treatment as to which such holder and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), otherwise agree.

4.      Class B—Priority Non-Tax Claims

a.      Classification:  Class B consists of all Priority Non-Tax Claims.

b.      Impairment and Voting:  Class B is Unimpaired by the Plan.  Each Holder of an Allowed Claim in Class B is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c.      Treatment:  Each Holder of an Allowed Priority Non-Tax Claim shall receive Cash in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, unless the Holder of an Allowed Priority Non-Tax Claim and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), otherwise agree.

5.      Class C-1—General Unsecured Claims (including any Allowed Rhodes Entities Claims)

a.      Classification:  Class C-1 consists of all General Unsecured Claims including any Allowed Rhodes Entities Claims.

b.      Impairment and Voting:  Class C-1 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-1 is entitled to vote to accept or reject the Plan.

c.      Treatment:  On the Effective Date, each Holder of an Allowed General Unsecured Claim (including any Allowed Rhodes Entities Claims) shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of General Unsecured Claims on account of its Allowed Claim.

6.      Class C-2—First Lien Lender Deficiency Claims

a.      Classification:  Class C-2 consists of all First Lien Lender Deficiency Claims.

b.      Impairment and Voting:  Class C-2 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-2 is entitled to vote to accept or reject the Plan.

c.      Treatment:  On the Effective Date, each Holder of a First Lien Lender Deficiency Claim shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of First Lien Lender Deficiency Claims on account of its Allowed Claim.

7.      Class C-3—Second Lien Lender Deficiency Claims

a.      Classification:   Class C-3 consists of all Second Lien Lender Deficiency Claims.

b.      <u>Impairment and Voting</u>:  Class C-3 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-3 is entitled to vote to accept or reject the Plan.

c.      <u>Treatment</u>:  On the Effective Date, each Holder of an Allowed Second Lien Lender Deficiency Claim shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of Second Lien Lender Deficiency Claims on account of its Allowed Claim.  If the Class of Second Lien Lender Secured Claims votes against the Plan, the distribution of Litigation Trust Interests allocable to the Holders of Second Lien Lender Deficiency Claims shall be subject to the reasonable fees and expenses of Ropes & Gray LLP and local counsel for the Second Lien Agent.

8.      <u>Class C-4—Subordinated Claims</u>

a.      <u>Classification</u>:  Class C-4 consists of all Subordinated Claims.  The First Lien Steering Committee does not believe there are any Subordinated Claims but has created Class C-4 out of an abundance of caution.

b.      <u>Impairment and Voting</u>:  Class C-4 is Impaired by the Plan.  Each Holder of an Interest in Class C-4 is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.      <u>Treatment</u>:  Claims subordinated under applicable law shall not receive any recovery on account of their Claims.

9.      <u>Class D—Old Equity Interests</u>

a.      <u>Classification</u>:  Class D consists of all Old Equity Interests.

b.      <u>Impairment and Voting</u>:  Class D is Impaired by the Plan.  Each Holder of an Interest in Class D is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.      <u>Treatment</u>:  Each holder of an Old Equity Interest shall not be entitled to, and shall not receive or retain any property or interest in property on account of such Old Equity Interest.

10.      <u>Class E—Intercompany Claims</u>

a.      <u>Classification</u>:  Class E consists of all Intercompany Claims.

b.      <u>Impairment and Voting</u>:  Class E is Impaired by the Plan.  Each Holder of a Claim in Class E is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.      <u>Treatment</u>:  At the election of the Reorganized Debtors, Intercompany Claims will be (i) reinstated, in full or in part, (ii) resolved through set-off,

distribution, or contribution, in full or in part, or (iii) cancelled and discharged, in full or in part, in which case such discharged and satisfied portion shall be eliminated and the Holders thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such portion under the Plan.

C.    Class Voting Rights:  The voting rights of each Class are as follows.

1.    Classes Entitled to Vote:   The following Classes are Impaired and thus entitled to vote to accept or reject the Plan.

| Classes |
| --- |
| A-1 |
| A-2 |
| C-1 |
| C-2 |
| C-3 |

2.    Presumed Acceptance of Plan:  The following Classes are Unimpaired and deemed to accept the Plan.  Therefore, such Classes are not entitled to vote to accept or reject the Plan and the vote of such Holders of Claims and Interests shall not be solicited.

| Classes |
| --- |
| A-3 |
| B |

3.    Presumed Rejection of Plan:   The following Classes are Impaired and conclusively presumed to reject the Plan.  Therefore, such Classes are not entitled to accept or reject the Plan and the vote of such Holders of Claims or Interests shall not be solicited.

| Class |
| --- |
| C-4 |
| D |
| E |

D.    Bankruptcy Code Section 1111(b) Election:    Bankruptcy Code section 1111(b)(1)(A) authorizes a class of secured claims to elect, by at least two-thirds in amount and more than half in number, to waive any deficiency claim otherwise assertable against the debtor and instead require the debtor to make payments equal to the total amount of the claims, with such payment obligation having a present value equal to the current value of the creditors' collateral.  A section 1111(b) election must be made by a class of secured creditors at or prior to the conclusion of the hearing on the Disclosure Statement.  No class

of Secured Claims made a section 1111(b) election at or prior to the conclusion of the hearing on the Disclosure Statement.  Accordingly, Bankruptcy Code section 1111(b) is not applicable to the Plan.

   E.    Acceptance or Rejection of the Plan

      1.    Acceptance by Impaired Classes of Claims:  Pursuant to Bankruptcy Code section 1126(c) and except as otherwise provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

      2.    Tabulation of Votes on a Consolidated Basis:  The Claims and Solicitation Agent will tabulate all votes on the Plan on a consolidated basis for the purpose of determining whether the Plan satisfies Bankruptcy Code section 1129(a)(8) and (10).

      3.    Cramdown:  The First Lien Steering Committee requests Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The First Lien Steering Committee reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

      4.    Controversy Concerning Impairment:  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

   A.    Substantive Consolidation:  The Plan shall serve as a motion by the First Lien Steering Committee seeking entry of a Bankruptcy Court order substantively consolidating all of the Estates into a single consolidated Estate for all purposes associated with Confirmation and distributions to be made under the Plan.

      If substantive consolidation of all of the Estates is ordered, then on and after the Effective Date, all assets and liabilities of the Debtors shall be treated as though they were merged into the Estate of The Rhodes Companies, LLC for all purposes associated with Confirmation and Consummation, and all guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor shall be treated as one collective obligation of the Debtors.  Substantive consolidation shall not affect the legal and organizational structure of the Reorganized Debtors or their separate corporate existences or any prepetition or postpetition guarantees, Liens, or security interests that are required to be maintained under the Bankruptcy Code, under the Plan, or in connection with contracts or leases that were assumed or entered into during the Chapter 11 Cases.  All duplicative Claims (identical in both amount and subject matter) Filed against more than one of the Debtors shall be

automatically expunged so that only one Claim survives against the consolidated Debtors (but in no way shall such surviving Claim be deemed Allowed by reason of this Section). Any alleged defaults under any applicable agreement with the Debtors or the Reorganized Debtors arising from substantive consolidation shall be deemed Cured as of the Effective Date.

B.      Sources of Consideration for Plan Distributions:  The Reorganized Debtors shall fund distributions under the Plan with Cash on hand, proceeds from the Mediation Settlement, existing assets, and the issuance of the New First Lien Notes and Newco Equity Interests.

1.      Newco Equity Interests:  On the Effective Date, but not more than thirty days after the Effective Date for initial distributions on account of Allowed Claims, Newco shall issue Newco Equity Interests (based upon the Newco Total Enterprise Value) to the Holders of First Lien Lender Secured Claims.  Each share of Class A-2 Equity Interest will be convertible at the option of the holder, exercisable at any time, into one Class A-1 Equity Interest.

The economic rights of the Class A-1 Equity Interests and Class A-2 Equity Interests shall be identical.  The Class A-2 Equity Interests will not be entitled to general voting rights, but will be entitled to vote on an "as converted" basis (together with the holders of the Class A-1 Equity Interests, as a single class) on certain non-ordinary course transactions, including (i) any authorization of, or increase in the number of authorized shares of, any class of capital stock ranking equal or senior to the Newco Equity Interests as to dividends or liquidation preference, including additional Newco Equity Interests,  (ii) any amendment to the Newco's certificate of incorporation or by-laws, (iii) any amendment to any shareholders agreement, (iv) any sale, lease or other disposition of all or substantially all of the assets of the Reorganized Debtors through one or more transactions, (v) any recapitalization, reorganization, consolidation or merger of the Reorganized Debtors, (vi) to the extent that holders of Class A-1 Equity Interests have the right to vote thereon, any issuance or entry into an agreement for the issuance of capital stock (or any options or other securities convertible into capital stock) of the Reorganized Debtors, except as may be provided for under any management incentive plan, and (vii) to the extent that holders of Class A-1 Equity Interests have the right to vote thereon, any redemption, purchase or other acquisition by the Newco of any of its capital stock (except for purchases from employees upon termination of employment).

The Class A-2 Equity Interests will be entitled to a separate class vote on any amendment or modification of any rights or privileges of the Class A-2 Equity Interests that does not equally affect the Class A-1 Equity Interests.  In any liquidation, dissolution or winding up of the Reorganized Debtors, all assets will be distributed to holders of the Newco Equity Interests on a pro rata basis.

a.      Section 1145 Exemption:  Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any Securities contemplated by the Plan and any and all settlement agreements incorporated therein, including the

Newco Equity Interests, shall, to the fullest extent permitted by applicable law, be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities. In addition, under section 1145 of the Bankruptcy Code any Securities contemplated by the Plan, including the Newco Equity Interests and New First Lien Notes, will be freely tradable and transferable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (ii) the restrictions, if any, on the transferability of such Securities and instruments set forth in the Newco LLC Operating Agreement, a draft of which is attached to the Disclosure Statement as Exhibit J; and (iii) applicable regulatory approval.

        b.    <u>Issuance and Distribution of the Newco Equity Interests</u>: The Newco Equity Interests, when issued or distributed as provided in the Plan, will be duly authorized, validly issued, and, if applicable, fully paid and nonassessable. Each distribution and issuance shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

        <u>2.</u>    <u>New First Lien Notes</u>: On the Effective Date or as soon as reasonably practicable thereafter, Newco shall issue the New First Lien Notes. The Reorganized Debtors shall be co-borrowers and guarantors under the New First Lien Notes. The New First Lien Notes shall have the terms set forth on Exhibit 2 to the Plan and as otherwise provided in the terms of the documents governing the New First Lien Notes. A draft of the New First Lien Notes credit agreement is attached to the Disclosure Statement as Exhibit K.

        <u>3.</u>    <u>Exit Financing:</u> To the extent the board of directors of Newco (or such other governing body) determines that additional financing is necessary for the operation of the Reorganized Debtors' businesses, Newco and/or the Reorganized Debtors may obtain additional financing. The First Lien Steering Committee does not anticipate that additional sources of funding in addition to Cash on hand, the Newco Equity Interests and the New First Lien Notes will be necessary to fund distributions under the Plan on the Effective Date.

 <u>C.</u>    <u>Corporate Existence</u>: Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval.

D.    Vesting of Assets in the Reorganized Debtors:  Except for any Claims or Causes of Action transferred to the Litigation Trust and unless otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.   On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.    Cancellation of Equity Securities and Related Obligations:  On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the Old Equity Interests and any other Certificate, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such Certificates, notes, other instruments or documents evidencing indebtedness or obligations of the Debtors that are Reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Old Equity Interests and any other Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements or Certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; provided, however, that notwithstanding Confirmation, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of: (w) allowing Holders to receive distributions under the Plan; (x) allowing a Servicer to make distributions on account of such Claims as provided in the applicable governing agreement; (y) permitting such Servicer to maintain any rights and Liens it may have against property other than the Reorganized Debtors' property for fees, costs, and expenses pursuant to such indenture or other agreement; and (z) governing the rights and obligations of non-Debtor parties to such agreements vis-à-vis each other (including, without limitation, the rights and obligations of non-Debtor parties under the First Lien Credit Agreement and the Second Lien Credit Agreement, which, for the avoidance of doubt, shall not be affected by the Plan except as otherwise expressly provided in the Plan); provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors.  The Reorganized Debtors shall not have any obligations to any Servicer for any fees, costs, or expenses, except as expressly otherwise provided in the Plan.

F.    Restructuring Steps and Transfer of Certain Interests to Newco:  In the event the Rhodes Entities comply with all of their obligations pursuant to the Mediation Settlement and the Plan, on the Effective Date or, in the case of step (4) below, effective the next day, the following transactions shall be deemed to have occurred in the order set forth below.

1.    Newco shall be formed as a new limited liability company.  The First Lien Lender Secured Claims shall be deemed to have been exchanged for the membership interests in Newco.  Newco shall be deemed to hold all of the First Lien Lender Secured Claims.  At the option of a holder, membership interests in Newco may be transferred to a corporation prior to Step 2.

2.    Newco shall purchase all of the Heritage Equity Securities for $10.00.

3.    Contemporaneous with or subsequent to Newco's purchase of the Heritage Equity Securities, The Rhodes Companies, LLC - the general partner of each of Tick, LP; Glynda, LP; Jackknife, LP; LP; Batcave, LP; Overflow, LP; Wallboard, LP; and Chalkline, LP, --shall sell its general partnership interests in such entities to Newco for $1.00. Alternatively, the membership interest in The Rhodes Companies, LLC may be acquired from its sole member – Sagebrush Enterprises, Inc. – in consideration for release of its obligations under the First Lien Lender Secured Claims.

4.    Newco's members may agree to continue Newco as an LLC,  file a check the box election effective the day after the Effective Date to treat Newco as a corporation for tax purposes, or convert into a corporation as of the day after the Effective Date.

In any event, to the extent any cancellation of indebtedness is derived from the foregoing transactions under the Internal Revenue Code, it shall be allocable to the holders of the Old Equity Interests as required by the Internal Revenue Code.  To be clear, Newco's purchase of the Heritage Equity Securities shall occur (a) contemporaneously with or immediately before the membership interests of those entities described in Article IV.F.3, immediately above, are acquired; (b) before any debt or obligations of the Debtors are canceled or forgiven; (d) before any new notes are issued or existing debt is modified by the Reorganized Debtors; and (e) before any of the other acts or events contemplated in Article III.B, et seq., of the Plan.  The holders of the Heritage Equity Securities and Newco will report the sale and purchase of the Heritage Equity Securities in accordance with revenue ruling 99-6, 1991-1 CB 432.

G.    Restructuring Transactions:  On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; (4) the Roll-Up Transactions; (5) the establishment of a liquidation trust or other appropriate vehicle to hold assets for sale that will not be utilized in the business of the Reorganized Debtors; and (6) all other actions that the Reorganized Debtors determine are necessary or appropriate, including the making of filings or recordings in connection with the relevant Roll-Up Transactions.  The form of each Roll-Up

Transaction shall be determined by the Reorganized Debtor that is party to such Roll-Up Transaction. Implementation of the Roll-Up Transactions shall not affect any distributions, discharges, exculpations, releases, or injunctions set forth in the Plan.

H.      Corporate Action: Each of the matters provided for by the Plan involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of the Reorganized Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Holders of Claims or Interests, directors of the Debtors, or any other Entity. Without limiting the foregoing, such actions may include: the adoption and filing of the Newco LLC Operating Agreement; the adoption and filing of organization documents of the other Reorganized Debtors; the appointment of directors and officers for the Reorganized Debtors; and the adoption, implementation, and amendment of the Management and Director Equity Incentive Plan.

I.      Post-Confirmation Property Sales: To the extent the Reorganized Debtors sell any of their property prior to or including the date that is one year after Confirmation, including, without limitation, the Arizona Assets, the Reorganized Debtors may elect to sell such property pursuant to sections 363, 1123, and 1146(a) of the Bankruptcy Code.

 J.      Organizational Documents: The certificates of incorporation and bylaws (or other formation documents relating to limited liability companies, limited partnerships or other forms of Entity) of the Debtors shall be in form and substance acceptable to the First Lien Steering Committee and shall be consistent with the provisions of the Plan and the Bankruptcy Code. The Newco LLC Operating Agreement shall be in form and substance acceptable to the First Lien Steering Committee. The organizational documents for Newco shall, among other things: (1) authorize issuance of the Newco Equity Interests; and (2) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting Equity Securities. On or as soon as reasonably practicable after the Effective Date, to the extent required, each of the Reorganized Debtors shall file new certificates of incorporation (or other formation documents relating to limited liability companies limited partnerships, or other forms of Entity) in form and substance acceptable to First Lien Steering Committee, with the secretary (or equivalent state officer or Entity) of the state under which each such Reorganized Debtor is or is to be incorporated or organized. On or as soon as reasonably practicable after the Effective Date, to the extent required, Newco shall file the applicable organizational documents with the secretary (or equivalent state officer or Entity) of the state under which Newco is to be incorporated or organized. After the Effective Date, each Reorganized Debtor may amend and restate its new certificate of incorporation and other constituent documents as permitted by the relevant state corporate law.

K.      Effectuating Documents, Further Transactions: On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors (or other governing bodies) thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further

evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

L.    Exemption from Certain Transfer Taxes and Recording Fees:  Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

M.    Directors and Officers of the Reorganized Debtors:  On the Effective Date, the board of directors of the Reorganized Debtors or similar governing entities shall be composed of one or more members appointed by the First Lien Steering Committee.  On the Effective Date, a chief executive officer or similar officer selected by the board of directors of the Reorganized Debtors shall be appointed.  The identity of such officers and directors shall be disclosed at or prior to the Confirmation Hearing.

N.    Management and Director Equity Incentive Plan:  The Reorganized Debtors reserve the right to implement a Management and Director Equity Incentive Plan.  The terms and conditions of any Management and Director Equity Incentive Plan shall be determined by the Board of Directors of Newco.

O.    The Litigation Trust:  On the Effective Date, the Litigation Trust will be implemented pursuant to the terms of the Litigation Trust Agreement.  A draft of the Litigation Trust Agreement is attached to the Disclosure Statement as Exhibit I.  On the Effective Date, pursuant to the terms of the Litigation Trust Agreement, the Debtors will transfer the Litigation Trust Assets for and on behalf of the Litigation Trust Beneficiaries, which will be the Holders of Allowed Claims in Classes C-1, C-2 and C-3.  For all federal income tax purposes, the beneficiaries of the Litigation Trust shall be treated as grantors and owners thereof and it is intended that the Litigation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations and that such trust is owned by its beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Litigation Trust Beneficiaries be treated as if they had received a distribution of an undivided interest

29

in the Litigation Trust Assets and then contributed such interests to the Litigation Trust. The Litigation Trust will initially be funded with $100,000, which amount will be transferred to the Litigation Trust on the Effective Date and which will be repaid to the Reorganized Debtors from the first proceeds received by the Litigation Trust.

The Litigation Trust shall issue non-transferable interests to Holders of Allowed First Lien Lender Deficiency Claims, Allowed Second Lien Lender Deficiency Claims, and Allowed General Unsecured Claims (including any Allowed Rhodes Entities Claims) with each Holder of an Allowed Claim in each of the foregoing Classes of Claims receiving its pro rata share of the Litigation Trust Interests allocable to each such Class of Claims.

A list of Litigation Trust Assets is attached to the Disclosure Statement as Exhibit G. The Litigation Trust Assets shall include all Claims existing against the Rhodes Entities that are not expressly released under the Plan.

P.    Preservation of Causes of Action:  In accordance with section 1123(b) of the Bankruptcy Code, except as otherwise provided in the Plan, the Reorganized Debtors and the Litigation Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated on Exhibit L to the Disclosure Statement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors and the Litigation Trust, as applicable, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors and the Litigation Trust, as applicable. **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, Reorganized Debtors or the Litigation Trust, as applicable, will not pursue any and all available Causes of Action against them. The Reorganized Debtors and the Litigation Trust, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors and the Litigation Trust, as applicable, expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

The Reorganized Debtors and the Litigation Trust, as applicable, reserve and shall retain the foregoing Causes of Action notwithstanding the rejection or repudiation of any executory contract or unexpired lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors and the Litigation Trust, as the case may be, on the Effective Date. The applicable Reorganized Debtor and the Litigation Trust, as applicable, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action belonging to it. The

Reorganized Debtors and the Litigation Trust, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Neither the Litigation Trust nor the Reorganized Debtors shall commence any litigation against the Rhodes Entities until the Bankruptcy Court rules on the allowance of the Rhodes Entities Claims set forth in Proofs of Claim, included in the Debtors' Schedules or otherwise set forth in the Mediation Term Sheet. To the extent any statute of limitations to pursue any claims belonging to the Debtors against the Rhodes Entities would lapse from the execution date of the Mediation Term Sheet through the Bankruptcy Court's resolution of the allowance of the Rhodes Entities Claims, the Rhodes Entities shall be deemed to have consented to an extension of the applicable statute of limitations until sixty days following the Bankruptcy Court's ruling on the allowance of the Rhodes Entities Claims. The Litigation Trust shall have no liability to any entity for any Claims or Causes of Action it determines not to pursue.

Q.    HOA Board Seats: The Rhodes Entities shall ensure that designees identified by the Reorganized Debtors shall replace the Rhodes Entities on any HOA boards that in any way are related to the Debtors, Reorganized Debtors or their businesses and Declarant rights or the like shall be transferred to the Reorganized Debtors or their designee(s).

R.    Licensing: The Rhodes Entities shall take commercially reasonable steps and/or enter into any agreements or similar documentation reasonably necessary to ensure the Reorganized Debtors' continued use of all of the Debtors' applicable professional licenses at no cost to the Rhodes Entities for a period of up to twelve months following the Effective Date. To the extent, Sagebrush Enterprises, Inc. shall have rescinded by September 25, 2009 its revocation of its indemnity of the Nevada contractors' license held by Rhodes Design & Development Corporation and such rescission did not negatively affect the general contractor's license held by Rhodes Design & Development Corporation, Sagebrush shall be entitled to file an Administrative Claim on behalf of any and all claims asserted against Sagebrush as a result of Sagebrush being the indemnitor that arose from and after the effectiveness of Sagebrush's recission of its indemnity through the Effective Date, provided that the allowance of such Administrative Claim shall be subject to resolution by the Bankruptcy Court and/or such other court(s) of competent jurisdiction. The Reorganized Debtors shall indemnify Sagebrush for any and all claims asserted against Sagebrush as a result of Sagebrush being the indemnitor that arise from and after the Effective Date. Professional licenses include, but are not limited to the Nevada State Contractor's Board license, and any other general business or similar licenses in any county, state, municipality or other jurisdiction in which the Reorganized Debtors conduct business or own assets as of the Effective Date. The Rhodes Entities shall use commercially reasonable efforts to maintain third party agreements with their real estate brokers and sales agents.

S.    Transfer of Rhodes Ranch Golf Course: On the Effective Date, the applicable Rhodes Entities shall transfer their equity interests in the entity that owns the Rhodes Ranch Golf Course to the Reorganized Debtors (together with any equipment, golf carts, contracts or other assets determined by the First Lien Steering Committee to be necessary for the

operation of the Rhodes Ranch Golf Course) pursuant to the terms of a stock transfer agreement (the "Stock Transfer Agreement") in form and substance acceptable to the First Lien Steering Committee and Rhodes, subject to any outstanding third party debt on the Rhodes Ranch Golf Course.  The stock transfer agreementStock Transfer Agreement shall contain representations by the Rhodes Entities that the entity that owns the Rhodes Ranch Golf Course does not have any liabilities other than ordinary course liabilities related to the Rhodes Ranch Golf Course and indemnification provisions in favor of the Reorganized Debtors by the Rhodes Entities for any non-ordinary course liabilities.  In addition, prior to the deadline for filing objections to the Disclosure Statement, the Rhodes Entities shall provide the First Lien Steering Committee with a list of all liabilities of the entity that owns the Rhodes Ranch Golf Course, a lien analysis and copies of all contracts related to the Rhodes Ranch Golf Course and to which the entity that owns the Rhodes Ranch Golf Course is a party, each of which must be acceptable to the First Lien Steering Committee.  Pursuant to the stock and asset transfer agreementStock Transfer Agreement governing the transfer of the equity in the entity that owns the Rhodes Ranch Golf Course to the Reorganized Debtors, the entity that owns the Rhodes Ranch Golf Course post-Effective Date shall agree to indemnify James Rhodes for any ordinary course liability first incurred post-Effective Date by such entity under any contract related to the operation of the Rhodes Ranch Golf Course for which James Rhodes has provided a personal guaranty.

The existing $5.9 million third party debt outstanding on the Rhodes Ranch Golf Course shall be refinanced on or before the Effective Date, for a period of no less than twelve (12) months from the Effective Date, on terms and conditions acceptable to Rhodes and the First Lien Steering Committee.  The parties will work together in good faith to refinance the existing third party debt.  Upon obtaining a final commitment for refinancing for the Rhodes Ranch Golf Course, the First Lien Steering Committee will disclose such terms in a filing with the Bankruptcy Court.  The $2.4 million loan by James Rhodes to the entity that owns the Rhodes Ranch Golf Course will be contributed by James Rhodes to the entity that owns the Rhodes Ranch Golf Course and he will indemnify the Debtors, the Reorganized Debtors, Newco and the entity that owns the Rhodes Ranch Golf Course from any liability arising from the contribution of such loan.

The Reorganized Debtors shall pay the reasonable costs and expenses associated with the refinancing; provided, that the terms of such refinancing are acceptable to the First Lien Steering Committee.  The First Lien Steering Committee acknowledges that the loan documentation may provide that, upon the transfer of the Rhodes Ranch Golf Course to the Reorganized Debtors on the Effective Date, additional collateral from the Reorganized Debtors may be required.  The Rhodes Entities shall transfer to the Reorganized Debtors on the Effective Debt any contracts related to the operation of and revenue generated by any cell towers located on the property of the Rhodes Ranch Golf Course.  Any funds received after July 31, 2009 from the Las Vegas Valley Water District or other similar entity as an incentive for converting the golf course from a green course to a desert course shall be used for operating expenses associated with the Rhodes Ranch Golf Course, with any excess to become property of the Reorganized Debtors on the Effective Date.

Rhodes and/or his designee shall have the absolute right to repurchase the Rhodes Ranch Golf Course from the Reorganized Debtors at eight (8) years from the Effective Date

for $5.9 million in cash. The Reorganized Debtors may require Rhodes to purchase the Rhodes Ranch Golf Course any time between four (4) and eight (8) years from the Effective Date for $5.9 million in cash provided that the Reorganized Debtors shall provide Rhodes with at least one year advance notice of its intent to sell the Rhodes Ranch Golf Course back to Rhodes. Such transfer shall occur on the applicable anniversary date of the Effective Date. For the avoidance of doubt, if the Reorganized Debtors put the Rhodes Ranch Golf Course to Rhodes in accordance with the terms hereof and Rhodes fails to comply with his obligation to purchase the Rhodes Ranch Golf Course, Rhodes shall be deemed to have forfeited his option to purchase the Rhodes Ranch Golf Course.

~~On the Effective Date, Rhodes's obligations to comply with the repurchase shall be secured by either (i) $500,000 in cash in an escrow account or (ii) property worth at least $2 million (the "Golf Course Security Property"), with the value of such property to be agreed to by Rhodes and the First Lien Steering Committee or otherwise valued by an independent third party appraisal firm acceptable to both Rhodes and the First Lien Steering Committee (except Cushman Wakefield). In the event that Rhodes does not meet the repurchase request, provided that the Rhodes Ranch Golf Course is in the standard condition (defined below), then the Reorganized Debtors shall be entitled to liquidated damages in the form of security pledged (i.e., the $500,000 or the Golf Course Security Property). So long as Rhodes has not defaulted on his obligation to repurchase the Rhodes Ranch Golf Course, Rhodes shall have the absolute and sole discretion to replace the Golf Course Security Property with $500,000 in cash on 30 days written notice to the Reorganized Debtors. Upon deposit of the $500,000 in cash, the Golf Course Security Property shall be released to Rhodes or his designee.~~ Notwithstanding anything to the contrary contained herein, if the Rhodes Ranch Golf Course is not maintained with substantially the same performance and rating criteria at the time of the repurchase request as verified by an independent third party rating agency as it was on the Effective Date ("Standard Condition"), James Rhodes can (i) require the Reorganized Debtors to cure any conditions to return the Rhodes Ranch Golf Course to its Standard Condition (provided, that the cost of such cure does not exceed $500,000), or (ii) choose not to purchase the Rhodes Ranch Golf Course. ~~Upon either the repurchase of the Rhodes Ranch Golf Course or the written decision to not repurchase the Rhodes Ranch Golf Course (in accordance with the preceding sentence), the Golf Course Security Property or the $500,000 Cash (if not applied to the repurchase of the Rhodes Ranch Golf Course) shall be returned to Rhodes within 30 days.~~

On the Effective Date, the Reorganized Debtors shall record a memorandum of agreement against the Rhodes Ranch Golf Course to evidence the above.

T.     Cash Payment: The Rhodes Entities shall make a cash payment to the Reorganized Debtors of $~~3.5~~2.3 million in Cash on the Effective Date. The $~~3.5~~2.3 million cash payment shall be placed into an escrow account with a financial institution mutually acceptable to the First Lien Steering Committee and the Rhodes Entities within two business days after entry of the Confirmation Order and on terms mutually acceptable to the First Lien Steering Committee and the Rhodes Entities. The $2.3 million cash payment shall be used to fund distributions under the Plan and provide working capital to the extent of any excess.

U.      Transfer of Arizona Assets:  ~~On~~Prior to the Effective Date, the Debtors shall obtain entry of an order of the Bankruptcy Court pursuant to ~~a stock and asset transfer agreement, a draft of which is attached to the Disclosure Statement as Exhibit M, the Debtors shall transfer~~which an entity selected by the Rhodes Entities shall be approved as the stalking horse bidder to acquire Pravada and the other Arizona Assets ~~set forth on Attachment D to the Mediation Term Sheet~~(the "Arizona Assets Bid Procedures Order"), plus the Golden Valley Ranch tradename ~~to the Rhodes Entities~~ free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code for $1,222,999 in cash (the "Arizona Assets Sale"); provided, that the non-First Lien Lender/Second Lien Lender liens do not exceed $60,000; provided, further, that such assets shall not include assets owned by Pinnacle Grading located in Arizona and related contracts associated with the assets.  The bid procedures submitted to the Bankruptcy Court for approval pursuant to the Arizona Assets Bid Procedures Order shall be acceptable to the First Lien Steering Committee, the Debtors and the Rhodes Entities and provide procedures for (i) competing bids to be submitted by qualified buyers for the Arizona Assets and (ii) the conducting of an auction, if necessary, to select the winning bidder for the Arizona Assets.  **All Claims asserted against the Arizona Assets shall be deemed asserted against the Estates and shall be classified in accordance with Article III hereof for distribution purposes.**  The Arizona Assets shall be transferred ~~through the Rhodes Entities'~~to the winning bidder for such assets pursuant to an order of the Bankruptcy Court (the "Arizona Assets Sale Order").  The terms of the Arizona Assets Sale Order shall be acceptable to the First Lien Steering Committee, the Reorganized Debtors and the winning bidder for the Arizona Assets.  The Arizona Assets may be transferred through the winning bidder's acquisition of the stock of Rhodes Arizona Properties LLC and Elkhorn Investments, Inc., in each case, as reorganized, and certain assets of Rhodes Homes Arizona LLC.  Any non-real property assets or assets not ~~listed on Attachment D to the Mediation Term Sheet~~included in the Arizona Assets that are titled in Rhodes Arizona Properties LLC or Elkhorn Investments, Inc. shall be transferred to Newco ~~pursuant to the stock and asset transfer agreement~~or one of the other Reorganized Debtors on the Effective Date.  To the extent any real property assets located in Arizona are titled in any Debtor other than Rhodes Arizona Properties LLC, Elkhorn Investments, Inc. or Rhodes Homes Arizona, such real property assets shall be transferred to the ~~Rhodes Entities pursuant to the stock and asset transfer agreement~~winning bidder in connection with the Arizona Assets Sale.  All intercompany claims assertable by Rhodes Arizona Properties LLC or Elkhorn Investments, Inc. against any other Debtor shall be deemed cancelled.

The Debtors shall provide James Rhodes notice of any proposed sale of the Pinnacle assets, and James Rhodes shall be granted a right to bid on the sale of such assets within 10 days of such notice.  The ~~Rhodes Entities~~winning bidder of the Arizona Assets Sale shall permit storage of Pinnacle Grading equipment at current locations at no cost to the Reorganized Debtors for a period through six months following the Effective Date.

All executory contracts and unexpired leases associated solely with Arizona shall be assumed and assigned to the ~~Rhodes Entities (or their designee)~~winning bidder of the Arizona Assets Sale, at no cost to the Debtors or the Reorganized Debtors and all cure costs associated therewith shall be borne by the ~~Rhodes Entities~~winning bidder.

The Arizona Assets include certain intellectual property in which Stanley Consultants, Inc. has alleged a property interest. Notwithstanding the fact that the Arizona Assets include such intellectual property, the Debtors shall not be permitted to transfer or sell any intellectual property in which they do not have an ownership interest.

V.    Trademarks and Trade Names:  Within the earlier of thirty (30) days following:  (i) upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E to the Mediation Term Sheet.

W.    Self Insured Retention Obligations:  The Reorganized Debtors shall indemnify subcontractors that are obligated under any of the Reorganized Debtors' existing insurance policies for any post-Effective Date self insured retention obligations paid and/or to be paid by such subcontractors pursuant to such existing insurance policies.

X.    Bond Replacement or Indemnification:  Those performance bonds guaranteed by the Rhodes Entities in favor of the Debtors shall be replaced on a renewal date by new performance bonds.  In the alternative, subject to the Rhodes Entities being reasonably satisfied with the creditworthiness of the Reorganized Debtors, which shall be satisfied solely as of the Effective Date by the Court finding that the Plan is feasible, the existing performance bonds guaranteed by the Rhodes Entities and such guarantees shall remain in place. The applicable Rhodes Entity's agreement to remain a guarantor under the existing performance bonds as such performance bonds may be renewed shall be at no cost to the Rhodes Entities (including, but not limited to, the payment of bond premiums).  In the event the Reorganized Debtors fail to perform their obligations underlying such renewed performance bonds after the Effective Date, the Reorganized Debtors will indemnify the Rhodes Entities under such outstanding performance bonds for damages incurred by the Rhodes Entities on account of their guarantee of such performance bonds solely as a result of the Reorganized Debtors' failure to perform such obligations subsequent to the Effective Date.  The Reorganized Debtors shall use commercially reasonable efforts to replace all outstanding performance bonds backstopped by Rhodes Entities within 3042 months of the Effective Date.  The Bankruptcy Court shall retain jurisdiction to resolve any disputes arising out of this paragraph.

Contingent Bond Indemnity Claims will be released in the ordinary course of business as time passes or as work on the underlying project is completed.  To the extent that a Contingent Bond Indemnity Claim becomes an Allowed or estimated Claim, such Contingent Bond Indemnity Claim shall be treated as a General Unsecured Claim.

Y.    Stanley Engineering Litigation  In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent, assuming the Class of Second Lien Lender Secured Claims votes in favor of the Plan, shall engage in good faith negotiations to ensure that the Second Lien Lenders receive

35

consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration.  In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation).

## ARTICLE V.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases:  Except as otherwise provided in the Plan, the Debtors' executory contracts or unexpired leases not assumed or rejected pursuant to a Bankruptcy Court order prior to the Effective Date shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, except for those executory contracts or unexpired leases: (1) listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" attached to the Disclosure Statement as Exhibit N; (2) that are Intercompany Contracts, in which case such Intercompany Contracts are deemed automatically assumed by the applicable Debtor as of the Effective Date, unless such Intercompany Contract previously was rejected by the Debtors pursuant to a Bankruptcy Court order, is the subject of a motion to reject pending on the Effective Date; (3) that are the subject of a motion to assume or reject pending on the Effective Date (in which case such assumption or rejection and the effective date thereof shall remain subject to a Bankruptcy Court order); (4) that are subject to a motion to reject with a requested effective date of rejection after the Effective Date; or (5) that are otherwise expressly assumed or rejected pursuant to the Plan.  Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such executory contracts or unexpired leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.   Unless otherwise indicated, all assumptions or rejections of such executory contracts and unexpired leases in the Plan are effective as of the Effective Date. Each such executory contract and unexpired lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party prior to the Effective Date shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order. Notwithstanding anything to the contrary in the Plan, the Plan Proponent and the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the schedules of executory contracts or unexpired leases identified in Exhibit N to the Disclosure Statement at any time through and including fifteen days after the Effective Date. All executory contracts and unexpired leases associated solely with the Arizona Assets shall be assumed and assigned to the ~~Rhodes Entities~~winning bidder (or ~~their~~its designee) to the extent set forth on the schedule of Assumed Executory Contracts and Unexpired Leases attached to the Disclosure Statement as Exhibit N, at no cost to the Debtors or the Reorganized Debtors and all Cure costs associated with such scheduled Arizona contracts or leases shall be borne by the ~~Rhodes Entities~~winning bidder.

B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases:  With respect to each of the Debtors' executory contracts or unexpired leases listed on the schedule

of "Assumed Executory Contracts and Unexpired Leases," the Plan Proponent shall have designated a proposed Cure, and the assumption of such executory contract or unexpired lease may be conditioned upon the disposition of all issues with respect to Cure. Any provisions or terms of the Debtors' executory contracts or unexpired leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by Cure, or by an agreed-upon waiver of Cure. Except with respect to executory contracts and unexpired leases in which the Plan Proponent or the Debtors, with the consent of the First Lien Steering Committee, and the applicable counterparties have stipulated in writing to payment of Cure, all requests for payment of Cure that differ from the amounts proposed by the Debtors must be Filed with the Court on or before the Cure Bar Date. Any request for payment of Cure that is not timely Filed shall be disallowed automatically and forever barred from assertion and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim for Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors of the amounts listed on the proposed Cure schedule, notwithstanding anything included in the Schedules or in any Proof of Claim to the contrary; provided, however, that nothing shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to File such request for payment of such Cure. The Reorganized Debtors also may settle any Cure without further notice to or action, order, or approval of the Bankruptcy Court.

If the Debtors or Reorganized Debtors, as applicable, or First Lien Steering Committee object to any Cure or any other matter related to assumption, the Bankruptcy Court shall determine the Allowed amount of such Cure and any related issues. If there is a dispute regarding such Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors with the consent of the First Lien Steering Committee, or the Reorganized Debtors and the counterparty to the executory contract or unexpired lease. Any counterparty to an executory contract and unexpired lease that fails to object timely to the proposed assumption of any executory contract or unexpired lease will be deemed to have consented to such assumption. The Debtors, with the consent of the First Lien Steering Committee, or the Reorganized Debtors, as applicable, reserve the right either to reject or nullify the assumption of any executory contract or unexpired lease no later than thirty days after a Final Order determining the Cure or any request for adequate assurance of future performance required to assume such executory contract or unexpired lease.

Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption. Any Proofs of Claim Filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

All Cure costs associated with Executory Contracts related to the Arizona Assets shall be borne by the ~~Rhodes Entities~~winning bidder of the Arizona Assets Sale.

C.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases:  Rejection or repudiation of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any nonbankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, insurance coverage, utilitiy services, warranties, indemnity, guarantee of workmanship, or continued maintenance obligations on goods or services previously purchased by the contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected or repudiated executory contracts.  The Reorganized Debtors expressly reserve and do not waive the right to receive coverage under any past insurance policy to extent that coverage has not expired under the terms of the insurance policy, regardless of whether such insurance policy is listed as an assumed contract.  Similarly, the Reorganized Debtors expressly reserve and do not waive the right to receive services under any contract with a utility provider, regardless of whether such agreement with a utility provider is listed as an assumed contract.

D.      Claims Based on Rejection or Repudiation of Executory Contracts and Unexpired Leases:  Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection or repudiation of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be Filed with the Claims and Solicitation Agent no later than the Rejection Damages Claim Deadline.  Any Proofs of Claim arising from the rejection or repudiation of the Debtors' executory contracts or unexpired leases that are not timely Filed by the Rejection Damages Claim Deadline shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Reorganized Debtor without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection or repudiation of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection or repudiation of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims.

E.      Intercompany Contracts, Contracts, and Leases Entered Into After the Petition Date:  Intercompany Contracts, contracts, and leases entered into after the Petition Date by any Debtor, and any executory contracts and unexpired leases assumed by any Debtor, may be performed by the applicable Reorganized Debtor in the ordinary course of business.

F.      Home Sales:  All pending home sale contracts shall be assumed by the applicable Reorganized Debtor.

G.      Warranties:  All eligible prepetition home sale contracts with one-year warranty obligations shall be performed in the ordinary course of business of the Reorganized Debtors.  Upon the Effective Date, any remaining warranty obligations that are to be assumed by the Reorganized Debtors, which shall only be assumed with the consent of the

First Lien Steering Committee, shall be transferred to the Reorganized Debtors.  Warranty obligations that are not expressly assumed shall be rejected and treated as General Unsecured Claims.

H.    Modification of Executory Contracts and Unexpired Leases Containing Equity Ownership Restrictions:  All executory contracts and unexpired leases to be assumed, or conditionally assumed, under the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code shall be deemed so assumed, or so conditionally assumed, without giving effect to any provisions contained in such executory contracts or unexpired leases restricting the change in control or ownership interest composition of any or all of the Debtors, and upon the Effective Date (1) any such restrictions shall be deemed of no further force and effect and (2) any breaches that may arise thereunder as a result of Confirmation or Consummation shall be deemed waived by the applicable non-Debtor counterparty.

I.    Modifications, Amendments, Supplements, Restatements, or Other Agreements: Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts and unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

J.    Reservation of Rights:  Neither the exclusion nor inclusion of any contract or lease on Exhibit N to the Disclosure Statement, nor anything contained in the Plan, shall constitute an admission by the Debtors or the First Lien Steering Committee that any such contract or lease is in fact an executory contract or unexpired lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, with the consent of the First Lien Steering Committee, or Reorganized Debtors shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

K.    Nonoccurrence of Effective Date:  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
### PROCEDURES FOR RESOLVING DISPUTED CLAIMS

A.    Allowance of Claims:  After the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had with respect to any Claim immediately prior to the Effective Date, including the Causes of Action referenced in Article IV.

B.    Claims Administration Responsibilities:  Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.    Estimation of Claims:  Before or after the Effective Date, the First Lien Steering Committee or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty days after the date on which such Claim is estimated.

D.    Adjustment to Claims Without Objection:  Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. Beginning on the end of the first full calendar quarter that is at least ninety days after the Effective Date, the Reorganized Debtors shall publish and File every calendar quarter a list of all Claims that have been paid, satisfied, amended, or superseded during such prior calendar quarter.

E.    Time to File Objections to Claims:  Any objections to Claims shall be Filed on or before the later of (1) the applicable Claims Objection Deadline and (2) such date as may be fixed by the Bankruptcy Court, after notice and a hearing, whether fixed before or after the date that is one year after the Effective Date.  Notwithstanding the foregoing, the First Lien

Steering Committee, any First Lien Lender and/or the Reorganized Debtors shall have until sixty days following the Effective Date to object to the Proofs of Claim filed by the Rhodes Entities in the Debtors' chapter 11 cases (provided, that, such objections shall not seek to subordinate the Rhodes Entities Claims, if Allowed).

 F.    Disallowance of Claims:  Except as set forth herein, any Claims held by an Entity from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors or the Litigation Trust, as applicable.

EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER.

 G.    Offer of Judgment:  The Reorganized Debtors shall be authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the Holder of a Claim must pay the costs incurred by the Reorganized Debtors after the making of such offer, the Reorganized Debtors shall be entitled to setoff such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

 H.    Amendments to Claims:  On or after the Effective Date, except as expressly authorized in the Plan, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

## ARTICLE VII.
PROVISIONS GOVERNING DISTRIBUTIONS

 A.    Total Enterprise Value for Purposes of Distributions Under the Plan:  Distributions of Newco Equity Interests to Holders of Allowed First Lien Lender Secured Claims shall be based upon, among other things, the Newco Total Enterprise Value of $99.6 million.  For purposes of distribution, the Newco Equity Interests shall be deemed to have the value assigned to them based upon, among other things, the Newco Total Enterprise Value, regardless of the date of distribution.

B.    Distributions on Account of Claims Allowed as of the Effective Date:  Except as otherwise provided in the Plan, a Final Order, or as agreed to by the First Lien Steering Committee, initial distributions under the Plan on account of Claims Allowed on or before the Effective Date shall be made on the Distribution Date; provided, however, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (2) Allowed Priority Tax Claims, unless otherwise agreed, shall be paid in full in Cash on the Distribution Date or over a five-year period as provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by applicable non-bankruptcy law.

C.    Distributions on Account of Claims Allowed After the Effective Date:

1.    Payments and Distributions on Disputed Claims:  Except as otherwise provided in the Plan, a Final Order, or as agreed to by the First Lien Steering Committee prior to the Effective Date or the Reorganized Debtors after the Effective Date, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the Periodic Distribution Date that is at least thirty days after the Disputed Claim becomes an Allowed Claim; provided, however, that (a) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date, unless otherwise agreed, shall be paid in full in Cash on the Periodic Distribution Date that is at least thirty days after the Disputed Claim becomes an Allowed Claim or over a five-year period as provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by applicable non-bankruptcy law.

2.    Special Rules for Distributions to Holders of Disputed Claims:  Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Claim has been Allowed.  In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtors shall establish appropriate reserves for potential payment of such Claims or Interests pursuant to Article VII.C.3.  Subject to Article IX.A.5, all distributions made pursuant to the Plan on account of an Allowed Claim shall be made together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to Holders of Allowed Claims included in the applicable Class.

3.      Reserve of Litigation Trust Interests:  On the Effective Date, the Reorganized Debtors shall maintain in reserve Litigation Trust Interests for distribution to Holders of Disputed Claims that become Allowed after the Effective Date.  As Disputed Claims are Allowed, the Distribution Agent shall distribute, in accordance with the terms of the Plan, Litigation Trust Interests to Holders of Allowed Claims, and the Disputed Claims Reserve shall be adjusted.  The Distribution Agent shall withhold in the Disputed Claims Reserve any payments or other distributions made on account of, as well as any obligations arising from, the Litigation Trust Interests initially withheld in the Disputed Claims Reserve, to the extent that such Litigation Trust Interests continue to be withheld in the Disputed Claims Reserve at the time such distributions are made or such obligations arise, and such payments or other distributions shall be held for the benefit of Holders of Disputed Claims whose Claims, if Allowed, are entitled to distributions under the Plan.  The Reorganized Debtors may (but are not required to) request estimation for any Disputed Claim that is contingent or unliquidated.

Notwithstanding anything in the applicable Holder's Proof of Claim or otherwise to the contrary, the Holder of a Claim shall not be entitled to receive or recover a distribution under the Plan on account of a Claim in excess of the lesser of the amount: (a) stated in the Holder's Proof of Claim, if any, as of the Distribution Record Date, plus interest thereon to the extent provided for by the Plan; (b) if the Claim is denominated as contingent or unliquidated as of the Distribution Record Date, the amount that the Reorganized Debtors elect to withhold on account of such Claim in the Disputed Claims Reserve, or such other amount as may be estimated by the Bankruptcy Court prior to the Confirmation Hearing; or (c) if a Claim has been estimated, the amount deposited in the Disputed Claim Reserve to satisfy such Claim after such estimation.

D.      Delivery of Distributions

1.      Record Date for Distributions:  On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, if a Claim is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      Distribution Agent:  The Distribution Agent shall make all distributions required under the Plan, except that distributions to Holders of Allowed Claims governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement.

3.      Delivery of Distributions in General:  Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the

Distribution Agent or a Servicer, as appropriate: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related Proof of Claim; (d) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Distribution Agent has not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf.  Except as otherwise provided in the Plan, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors, the First Lien Steering Committee, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

   4. Accrual of Distributions and Other Rights:  For purposes of determining the accrual of distributions or other rights after the Effective Date, the Newco Equity Interests and the Litigation Trust Interests, as applicable, shall be deemed distributed as of the Effective Date regardless of the date on which they are actually issued, dated, authenticated, or distributed even though the Reorganized Debtors shall not make any such distributions or distribute such other rights until distributions of the Newco Equity Interests and the Litigation Trust Interests, as applicable, actually take place.

   5. Allocation Between Principal and Accrued Interest:  Except as otherwise provided in the Plan, distributions on account of Allowed Claims shall be treated as allocated first to principal and thereafter to any interest.

   6. Compliance Matters:  In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

   7. Fractional, De Minimis, Undeliverable, and Unclaimed Distributions:

    a. Fractional Distributions:  Notwithstanding any other provision of the Plan to the contrary, payments of fractions of shares of Newco Equity Interests or fractions of Litigation Trust Interests shall not be made.  The Distribution Agent

shall not be required to make distributions or payments of fractions of Newco Equity Interests, Litigation Trust Interests or dollars. Whenever any payment of Cash of a fraction of a dollar or payment of a fraction of Newco Equity Interests or fraction of Litigation Trust Interests pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars, half Newco Equity Interests or half Litigation Trust Interests or less being rounded down.

b.    Undeliverable Distributions: If any distribution to a Holder of an Allowed Claim is returned to a Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until such Distribution Agent is notified in writing of such Holder's then-current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors pursuant to Article VII.D.7.c, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

c.    Reversion: Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Reorganized Debtors and, to the extent such Unclaimed Distribution is a distribution of Newco Equity Interests, such Newco Equity Interests shall be deemed cancelled. Upon such revesting, the Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary. The provisions of the Plan regarding undeliverable distributions and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Debtors, made pursuant to any indenture or Certificate (but only with respect to the initial distribution by the Servicer to Holders that are entitled to be recognized under the relevant indenture or Certificate and not with respect to Entities to whom those recognized Holders distribute), notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property law.

8.    Manner of Payment Pursuant to the Plan: Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Reorganized Debtors by check or by wire transfer. Checks issued by the Distribution Agent or applicable Servicer on account of Allowed Claims shall be null and void if not presented within 120 days after issuance, but may be requested to be reissued until the distribution revests in the Reorganized Debtors pursuant to Article VII.D.7.c.

9.    Surrender of Cancelled Instruments or Securities: On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a Certificate shall surrender such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer). Such Certificate shall

be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate. No distribution of property pursuant to the Plan shall be made to or on behalf of any such Holder that is a Holder of a Claim unless and until such Certificate is received by the Distribution Agent or the Servicer or the unavailability of such Certificate is reasonably established to the satisfaction of the Distribution Agent or the Servicer. Any Holder of a Claim who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity acceptable to the Distribution Agent or the Servicer prior to the first anniversary of the Effective Date, shall have its Claim discharged with no further action, be forever barred from asserting any such Claim against the relevant Reorganized Debtor or its property, be deemed to have forfeited all rights and Claims with respect to such Certificate, and not participate in any distribution under the Plan; furthermore, all property with respect to such forfeited distributions, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors, notwithstanding any federal or state escheat, abandoned, or unclaimed property law to the contrary.

E.      Claims Paid or Payable by Third Parties.

1.      Claims Paid by Third Parties: The Claims and Solicitation Agent shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. Further, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.      Claims Payable by Insurance: Holders of Insured Claims that are covered by the Debtors' insurance policies shall seek payment of such Claims from applicable insurance policies, provided that the Reorganized Debtors shall have no obligation to pay any amounts in respect of pre-petition deductibles or self insured retention amounts. Allowed Insured Claim amounts in excess of available insurance shall be treated as General Unsecured Claims. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Claims and Solicitation Agent without a Claims

objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

    3.    Applicability of Insurance Policies:  Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Except for Claims and Causes of Action released under the Plan to the Released Parties and Exculpated Parties, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

 F.    Payment of $1.5 Million to First Lien Lenders:  The $1,500,000 in Cash payable to the Holders of First Lien Lender Secured Claims from the proceeds of their Collateral pursuant to Article III.B.1. shall be paid as follows: (i) $400,000 on the Effective Date and (ii) the remaining up to $1,100,000 in five quarterly installments of $220,000 beginning on the first day of the fourth month following the Effective Date; provided, that the Reorganized Debtors shall have the right to defer up to two quarterly payments, with such deferred amount(s) to be paid on the next quarterly payment date (and the amount scheduled to be paid on such quarterly payment date deferred for another quarter; provided that the full $1.5 million payment shall be made to the Holders of First Lien Lender Secured Claims within eighteen months of the Effective Date).  Notwithstanding the foregoing, in the event that, as of the Effective Date, the third party debt on the Rhodes Ranch Golf Course has been refinanced on terms and conditions acceptable to the First Lien Steering Committee and the Reorganized Debtors have unrestricted cash of at least $3.5 million (after taking into account any amounts required to be paid to reduce the amount of third party debt on the Rhodes Ranch Golf Course below $5.9 million and without taking into consideration amounts that may have been borrowed under any exit facility unless such amounts were used to pay-down debt on the Rhodes Ranch Golf Course, in which case any amounts used to pay-down debt on the Rhodes Ranch Golf Course will be deemed to reduce unrestricted cash on a dollar for dollar basis), then the initial $400,000 payment to the First Lien Lenders will be increased as follows: (i) if unrestricted cash (as calculated above) is equal to or greater than $3.5 million but less than $4.5 million, the $400,000 payment shall be increased to $700,000; (ii) if unrestricted cash (as calculated above) is equal to or greater than $4.5 million but less than $5.5 million, the $400,000 payment shall be increased to $1,000,000; and (iii) if unrestricted cash (as calculated above) is equal to or greater than $5.5 million, the $400,000 payment shall be increased to $1.5 million, in each case with the subsequent quarterly installments reduced by a corresponding amount to provide for equal payments over the payout periods discussed above.  In no event shall the aggregate Cash payments to the First Lien Lenders exceed $1.5 million. Notwithstanding the foregoing, upon the receipt of the proceeds of the Arizona Assets Sale, the amount received will be deemed to have been received on the Effective Date for purposes of determining the amount to be paid to the Holders of First Lien Lender Secured Claims on the next quarterly installment payment date.

 G.    General Unsecured Claims Purchase:  The First Lien Lenders have agreed to use the aggregate $1.5 million Cash payment provided to them under the Plan to acquire those General Unsecured Claims of the Creditors listed on the schedule attached to the Disclosure

Statement as Exhibit H (the "Claim Purchase Schedule") to the extent such Claims remain outstanding as of the Effective Date; provided that (i) each Holder of a Claim so listed is the original Holder of such Claim and (ii) such Claim(s) is ultimately Allowed.

The Claim Purchase Schedule shall delineate whether such Claims are Allowed or Disputed and Claims may be purchased only to the extent ultimately Allowed. **Claims included on the Claim Purchase Schedule shall be purchased (subject to the conditions contained in Article VII.G of the Plan) for the amounts listed for such Claims under the heading "Allowed Amount (Claim Purchase Amount)" on the Claim Purchase Schedule. Payments on account of the purchased Allowed Claims listed on the Claim Purchase Schedule shall be made on the same time frame as the First Lien Lenders receive their allocable Cash payments under Article VII.F of the Plan, with the First Lien Steering Committee determining the order in which Claims are purchased (which, in the first instance, shall be the order in which they are listed on the Claim Purchase Schedule)**. For the avoidance of doubt, any claim listed on the Claim Purchase Schedule that is disputed, will not be purchased until allowed and only to the extent the aggregate purchase price for all claims purchased inclusive of such newly allowed claims are equal to or less than $1.5 million. Claims subsequently allowed will be purchased in the order in which they are allowed. The First Lien Lenders reserve the right to modify the Claim Purchase Schedule prior to or subsequent to the Effective Date without further Court order; provided, that a Creditor may be removed from the Claim Purchase Schedule only to the extent that (i) its Claims are not ultimately Allowed, (ii) its Claims are subject to setoff (other than under section 547 of the Bankruptcy Code); (iii) such Creditor sells its Claim to a party other than the First Lien Lenders pursuant to Article VII.G of the Plan or (iv) the full $1.5 million has been used to purchase other Allowed Claims on the Claim Purchase Schedule before such Creditor's Claim is Allowed.

The First Lien Lenders shall be subrogated to the rights of Creditors whose Claims are purchased hereunder and any distributions otherwise allocable to the Holders of Claims purchased by the First Lien Lenders shall be distributed pro rata to the Holders of First Lien Lender Secured Claims. The Reorganized Debtors shall be authorized to make the foregoing payments to the Creditors on the Claim Purchase Schedule on behalf of the First Lien Lenders with a corresponding reduction in the $1.5 million payable to the First Lien Lenders. Under no circumstances shall the First Lien Lenders (either directly or through the Reorganized Debtors) pay in excess of $1.5 million in the aggregate for the Claims on the Claim Purchase Schedule. The First Lien Steering Committee may, in its sole discretion (but after consultation with the Debtors and the Creditors' Committee), add Claims to the Claim Purchase Schedule at any time; provided that the amount to be paid for all such Claims listed on the Claim Purchase Schedule does not exceed $1.5 million in the aggregate regardless of the total amount of Allowed Claims reflected on the Claim Purchase Schedule. In the event that Allowed Claims in excess of $1.5 million are listed on the Claim Purchase Schedule, Holders of Claims listed on the Claim Purchase Schedule shall have the right to accept or decline payment of less than 100 cents on account of their Claims from the First Lien Lenders. No Creditor listed on the Claim Purchase Schedule shall receive in excess of 100 cents on the dollar for its Claim, and the Reorganized Debtors shall not pursue Claims under Bankruptcy Code section 547 against any Creditor whose Claim is purchased in accordance with this Article VII.G. The Plan shall serve as the notice of transfer of Claim

required under Bankruptcy Rule 3001(e).  If no objections are received by the Voting Deadline, the First Lien Lenders shall be authorized upon the Effective Date to effectuate the foregoing Claim purchase transactions.

## ARTICLE VIII.
### EFFECT OF CONFIRMATION OF THE PLAN

A.    Discharge of Claims and Termination of Interests:  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of any employee, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed Cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

B.    Subordinated Claims:  The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Plan Proponent or Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

C.    Compromise and Settlement of Claims and Controversies:  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any

Allowed Claim or Interest, or any distribution to be made on account of such an Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities.

### D.    Releases by the Debtors of the Released Parties:

**Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, and as part of the global settlement described in Article I.B. of the Disclosure Statement, on and after the Effective Date, the Released Parties are deemed released by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtors, taking place on or before the Effective Date, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any of the Released Parties, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

### E.    Releases by the Debtors of the Rhodes Entities:  The Rhodes Entities shall be deemed released from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever arising under chapter 5 of the Bankruptcy Code with respect to transfers made by the Debtors to the Rhodes Entities during the 2 years prior to the Petition Date; provided, however, that such release shall only apply to transfers expressly set forth in the Schedules as Filed with the Bankruptcy Court as of August 1, 2009 or as disclosed in Attachment B to the Mediation Term Sheet.

### F.    Releases by First Lien Lenders of First Lien Lenders:  Pursuant to Bankruptcy Rule 9019, and except as otherwise specifically provided in the Plan, to the extent a

First Lien Lender elects on its Ballot to release the First Lien Lenders in accordance with this Section VIII.F., for good and valuable consideration, on and after the Effective Date, each of the First Lien Lenders electing to grant this release, shall be deemed to release each of the other First Lien Lenders that has elected to grant this release and each of their affiliates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such First Lien Lender would have been legally entitled to assert against any other First Lien Lender that elected to grant this release, based on or relating to, or in any manner arising from, in whole or in part, the First Lien Credit Agreement, the First Lien Lender Claims, any other claims arising under or related to the First Lien Credit Agreement, the Debtors, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to any First Lien Lender Claim, the restructuring of the First Lien Lender Claims prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; with such releases constituting an express waiver and relinquishment by each First Lien Lender electing to grant this release of any claims, whether known or unknown that such First Lien Lender may have under Section 1542 of the California Civil code or other analogous state or federal law related to the matters being released; provided, however, that Claims or liabilities arising out of or relating to any act or omission of any First Lien Lender or any of its affiliates that constitutes gross negligence or willful misconduct shall not be released.

G.    **Exculpation:**    Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Claim, obligation, Cause of Action, or liability to one another or to any Exculpating Party for any Exculpated Claim, except for gross negligence, willful misconduct or fraud, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Debtors, the First Lien Steering Committee and the Reorganized Debtors (and each of their respective agents, members, directors, officers, employees, advisors, and attorneys) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of the Securities pursuant to the Plan, and therefore are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

H.    **Injunction**    Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims against the Debtors, and all Entities holding Interests, are permanently enjoined, from and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or

**Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors or the property or estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors or against the property or Estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding an indication in a Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise (provided, that, to the extent the Rhodes Entities Claims are Allowed, the Rhodes Entities, without the need to file any such motion, shall retain the right to assert a setoff against any Claims or Causes of Action that the Reorganized Debtors or Litigation Trust may assert against the Rhodes Entities, with the Reorganized Debtors and Litigation Trust, as applicable, reserving the right to challenge the propriety of any such attempted setoff, with any such challenge to be resolved by the Bankruptcy Court); and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

I.    Protection Against Discriminatory Treatment:  Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom such Reorganized Debtors have been associated, solely because one of the Debtors has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.    **Setoffs:    Except as otherwise expressly provided for in the Plan, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor, Reorganized Debtor or the Litigation Trust, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor or the Litigation Trust of any such Claims, rights, and**

**Causes of Action that such Reorganized Debtor or the Litigation Trust may possess against such Holder. In no event shall any Holder of Claims be entitled to setoff any Claim against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise; <u>provided</u>, <u>however</u>, that, to the extent the Rhodes Entities Claims are Allowed, the Rhodes Entities, without the need to file any such motion, shall retain the right to assert a setoff against any Claims or Causes of Action that the Reorganized Debtors or Litigation Trust may assert against the Rhodes Entities, with the Reorganized Debtors and Litigation Trust, as applicable, reserving the right to challenge the propriety of any such attempted setoff, with any such challenge to be resolved by the Bankruptcy Court.**

**K.    Recoupment: In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors and the First Lien Steering Committee on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.**

L.    Release of Liens:  Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.  Upon the Effective Date, the Confirmation Order shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to  release any  mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates; and each of the foregoing persons and entities is hereby directed to accept for filing the Confirmation Order any and all of the documents and instruments necessary and appropriate to  effectuate the discharge.

M.    Document Retention:  On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their current document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors in the ordinary course of business.  ~~Copies of all~~On the Effective Date, the Reorganized Debtors and the Rhodes Entities shall enter into an access agreement on terms mutually acceptable to such parties that shall provide for the Rhodes Entities to have reasonable access to all of the

Debtors' books and records ~~shall be delivered to the Rhodes Entities at no cost to the Rhodes Entities on or prior to~~in existence as of the Effective Date.

N.      Reimbursement or Contribution:  If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date:  (1) such Claim has been adjudicated as noncontingent or (2) the relevant Holder of a Claim has Filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## ARTICLE IX.
### ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

A.      Professional Claims:

1.      Final Fee Applications:  All final requests for payment of Claims of a Professional shall be Filed no later than forty-five days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

2.      Payment of Interim Amounts:  Except as otherwise provided in the Plan, Professionals shall be paid pursuant to the Interim Compensation Order.

3.      Reimbursable Expenses:  The reasonable fees and expenses incurred by (i) the First Lien Agent, including its professionals, to the extent provided by the First Lien Credit Agreement, (ii) the Second Lien Agent, including its professionals, to the extent provided by the Second Lien Credit Agreement (only to the extent the Class of Second Lien Lender Secured Claims votes in favor of the Plan), and (iii) the First Lien Steering Committee, including its professionals, in connection with the Chapter 11 Cases shall be paid by the Debtors or Reorganized Debtors, as applicable, within 15 days of receipt of an invoice from such parties or their advisors.

4.      Post-Effective Date Fees and Expenses:  Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation incurred by the Reorganized Debtors and the First Lien Steering Committee.  The Reorganized Debtors shall also pay in Cash the reasonable legal, professional, or other fees and expenses of the Creditors' Committee incurred in connection with (i) the resolution of applications for Professional Claims and (ii) all matters related to the auction and sale of the Arizona Assets.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any

Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

       5.    <u>Substantial Contribution Compensation and Expenses</u>:  Except as otherwise specifically provided in the Plan, any Entity who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, and the First Lien Steering Committee and the Creditors' Committee, and as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the Administrative Claim Bar Date or be forever barred from seeking such compensation or expense reimbursement.

  B.    <u>Other Administrative Claims</u>:  All requests for payment of an Administrative Claim must be Filed with the Claims and Solicitation Agent and served upon counsel to the Debtors or Reorganized Debtors, as applicable, and the First Lien Steering Committee on or before the Administrative Claim Bar Date.  Any request for payment of an Administrative Claim that is not timely Filed and served shall be disallowed automatically without the need for any objection by the Debtors, Reorganized Debtors, or the First Lien Steering Committee.  The Reorganized Debtors may settle and pay any Administrative Claim in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.  In the event that any party with standing objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

## ARTICLE X.
### CONDITIONS PRECEDENT TO CONFIRMATION
### AND CONSUMMATION OF THE PLAN

  A.    <u>Conditions to Confirmation</u>:    The following are conditions precedent to Confirmation that must be satisfied or waived in accordance with Article X.C:

      <u>1.</u>    The Bankruptcy Court shall have approved the Disclosure Statement, in a manner acceptable to the Plan Proponent, as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

      <u>2.</u>    The Confirmation Order shall be in form and substance acceptable to the Plan Proponent.

      <u>3.</u>    The terms and conditions of employment or retention of any Persons proposed to serve as officers or directors of Newco, including, without limitation, as to compensation, shall be acceptable to the Plan Proponent and shall be disclosed at or prior to the Confirmation Hearing.

      <u>4.</u>    Any disclosures made pursuant to 11 U.S.C. § 1129(a)(5) shall be acceptable to the Plan Proponent.

5.    All of the schedules, documents, and exhibits ancillary to the Plan and Disclosure Statement including, but not limited to, (i) the Claim Purchase Schedule, (ii) the Litigation Trust Agreement, (iii) the Newco LLC Operating Agreement, (iv) the New First Lien Notes credit agreement, (v) the Schedule of Causes of Action, (vi) the ~~Asset and~~ Stock Transfer Agreement, and (vii) the Schedule of Assumed Executory Contracts and Unexpired Leases shall be in form and substance acceptable to the Plan Proponent.

B.    Conditions Precedent to the Effective Date:  The following are conditions precedent to Consummation that must be satisfied or waived in accordance with Article X.C:

1.    The Bankruptcy Court shall have authorized the assumption and rejection of executory contracts and unexpired leases by the Debtors as contemplated by Article V.

2.    The Confirmation Order shall have become a Final Order in form and substance acceptable to the Plan Proponent.

3.    All of the schedules, documents, and exhibits ancillary to the Plan and Disclosure Statement including, but not limited to, (i) the Claim Purchase Schedule, (ii) the Litigation Trust Agreement, (iii) the Newco LLC Operating Agreement, (iv) the New First Lien Notes credit agreement, (v) the Schedule of Causes of Action, (vi) the ~~Asset and~~ Stock Transfer Agreement, and (vii) the Schedule of Assumed Executory Contracts and Unexpired Leases shall be in form and substance acceptable to the Plan Proponent.

4.    The documents governing the New First Lien Notes and the Newco LLC Operating Agreement shall be in form and substance acceptable to the Plan Proponent.

5.    The Confirmation Date shall have occurred.

6.    The First Lien Steering Committee shall have designated and replaced each existing Qualified Employee of the Debtors with a new Qualified Employee for the Reorganized Debtors.

7.    The third party debt outstanding on the Rhodes Ranch Golf Course shall be refinanced on terms and conditions acceptable to Rhodes and the First Lien Steering Committee and the personal loan of James Rhodes to the entity that owns the Rhodes Ranch Golf Course shall have been contributed as equity without any new equity being issued to James Rhodes and James Rhodes shall have provided the Debtors, the Reorganized Debtors, Newco and the entity that owns the Rhodes Ranch Golf Course an indemnity for any liability arising from the contribution of such loan.

~~8.    Copies of all Debtors' books and records shall have been delivered to the Rhodes Entities at no cost to the Rhodes Entities.~~

8.    ~~9.~~ The Arizona Assets Bid Procedures Order shall have been ~~transferred to the Rhodes Entities (or their designee) free and clear of all liens and claims pursuant to section 363(f) of the Bankruptcy Code on the Effective Date; provided, that the non First Lien Lender/Second Lien Lender liens do not exceed $60,000.~~entered by the Bankruptcy Court and not been stayed, reversed or appealed.

~~10.      The Debtors shall have assumed and assigned all executory contracts and unexpired leases related solely to the Arizona Assets to the Rhodes Entities (or their designee), at no cost to the Debtors or the Reorganized Debtors, with all Cure costs associated therewith to be borne by the Rhodes Entities.~~

9.        ~~11.~~ The tax structure set forth in Article IV.F shall be implemented.

~~12.      The Rhodes Entities and First Lien Steering Committee shall have agreed on the Golf Course Security Property.~~

10.        ~~13.~~ The Rhodes Entities shall have performed all of their obligations under the Plan including, without limitation, depositing $~~3.5~~2.3 million in Cash in an account designated by the Debtors, with the consent of the First Lien Steering Committee, and transferred the equity in the entity that owns the Rhodes Ranch Golf Course and related contracts and assets as required by Article IV.S. to the Reorganized Debtors.

C.      Waiver of Conditions Precedent:  The First Lien Steering Committee may waive any of the conditions to the Effective Date at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan; provided, that the First Lien Steering Committee will not waive the conditions precedent in items X.B.6 through 12 above if the Rhodes Entities shall have complied with all of their obligations hereunder ~~and in the Plan~~ by the Effective Date (or such earlier date specifically set forth herein).  In the event the Rhodes Entities fail to comply with any of their obligations under the Mediation Term Sheet (as modified by the Plan) or under the Plan by the Effective Date (or such earlier date specifically set forth herein) and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, then the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder ~~or under the Plan~~), and the Rhodes Entities reserve their right to object to such motion; (ii) modify the Plan to remove any provisions hereof that were included for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as modified.   Upon entry of an order of the Bankruptcy Court finding a breach by the Rhodes Entities and authorizing the modifications to the Plan to remove any provisions that were included for the benefit of the Rhodes Entities, the First Lien Steering shall be authorized to make such modifications and consummate the Plan.

D.      Effect of Non-Occurrence of Conditions to Consummation:  Each of the conditions to Consummation must be satisfied or duly waived pursuant to Article X.C, and Consummation must occur within 180 days of Confirmation, or by such later date established by Bankruptcy Court order.  If Consummation has not occurred within 180 days of Confirmation, then upon motion by a party in interest made before Consummation and a hearing, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the Filing of such motion to vacate, the Confirmation Order may not be vacated if Consummation occurs before the Bankruptcy Court enters an order

granting such motion.  If the Confirmation Order is vacated pursuant to Article X.D. or otherwise, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, including the discharge of Claims and termination of Interests pursuant to the Plan and section 1141 of the Bankruptcy Code and the assumptions, assignments, or rejections of executory contracts or unexpired leases pursuant to Article V, and nothing contained in the Plan or Disclosure Statement shall: (1) constitute a waiver or release of any Claims, Interests, or Causes of Action; (2) prejudice in any manner the rights of the Debtors, the First Lien Steering Committee or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors, the First Lien Steering Committee or any other Entity.

E.    Satisfaction of Conditions Precedent to Confirmation:    Upon entry of a Confirmation Order acceptable to the Plan Proponent, each of the conditions precedent to Confirmation, as set forth in Article X.A, shall be deemed to have been satisfied or waived in accordance with the Plan.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    Modification and Amendments:    The First Lien Steering Committee shall not modify materially the terms of the Plan without the prior consent of the parties to the Mediation Term Sheet; provided, that in the event the Rhodes Entities fail to comply with any of their obligations under the Mediation Term Sheet (as modified by the Plan) or the Plan by the Effective Date (or such other date set forth herein) and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, then the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their right to object to such motion; (ii) modify the Plan to remove any provisions hereof that were included for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as modified.   Upon entry of an order of the Bankruptcy Court finding a breach by the Rhodes Entities and authorizing the modifications to the Plan to remove any provisions that were included for the benefit of the Rhodes Entities, the First Lien Steering shall be authorized to make such modifications and consummate the Plan.   Except as otherwise specifically provided in the Plan, the Plan Proponent reserves the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code.   Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponent expressly reserves its rights to revoke, withdraw, alter, amend, or modify materially the Plan with respect to any Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.   Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance

with Article XI.A.  The Plan, Disclosure Statement and all ancillary documents may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours, at the Bankruptcy Court's website at http://www.nvb.uscourts.gov.  All documents to be entered into in connection with the consummation of the Plan as described in the Plan and/or Disclosure Statement are integral to the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

    **B.**    <u>Effect of Confirmation on Modifications</u>:  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

    **C.**    <u>Revocation or Withdrawal of Plan</u>:  The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization; provided, that, any subsequently filed plan shall be consistent with the Mediation Settlement unless the Rhodes Entities fail to comply with any of their obligations under the Mediation Term Sheet (as modified by the Plan) or the Plan by the Effective Date (or such other date set forth herein) and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, in which case the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their right to object to such motion; (ii) revoke or withdraw the Plan as a result of such breach; and (iii) file a subsequent plan that removes the benefits provided to the Rhodes Entities pursuant to the Mediation ~~Term Sheet~~Settlement.  If the Plan Proponent revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Plan Proponent or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Plan Proponent or any other Entity.

## ARTICLE XII.
### RETENTION OF JURISDICTION

    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

    <u>1.</u>    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the

resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including Cure or Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any executory contract or unexpired lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7. Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9. Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code including, without limitation, the Arizona Assets Sale Order;

10. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11. Resolve any disputes with respect to the Debtors or Reorganized Debtors performance bonds guaranteed by the Rhodes Entities or other matters contemplated by Article IV.X.

12.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

13.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VII.E;

15.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.     Determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.     Enter an order or Final Decree concluding or closing the Chapter 11 Cases;

18.     Adjudicate any and all disputes arising from or relating to distributions under the Plan;

19.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20.     Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

21.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

22.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment of any employee, regardless of whether such termination occurred prior to or after the Effective Date;

24.     Enforce all orders previously entered by the Bankruptcy Court; and

25.     Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

  A.      Immediate Binding Effect:  Subject to Article X.B. and notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

  B.      Additional Documents:  On or before the Effective Date, the Plan Proponent may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, the First Lien Steering Committee and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

  C.      Payment of Statutory Fees:  All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

  D.      Dissolution of Creditors' Committee:  Upon the Effective Date, the Creditors' Committee shall dissolve automatically (except with respect to (i) the resolution of applications for Professional Claims and (ii) all matters related to the auction and sale of the Arizona Assets), and members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code.

  E.      Reservation of Rights:  Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or any documents ancillary to either the Plan or the Disclosure Statement, shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

  F.      Successors and Assigns:  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.    Service of Documents:

1.    After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| Debtors | Counsel to the Debtors |
|---|---|
| The Rhodes Companies, LLC<br>4730 South Fort Apache Road<br>Suite 300<br>Las Vegas, NV  89147 | Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Boulevard #1100<br>Los Angeles, CA 90067<br>Attn:   James I. Stang<br>        Shirley S. Cho<br>        Werner S. Disse<br><br>Larson & Stephens<br>810 S. Casino Center Boulevard<br>Suite 104<br>Las Vegas, NV 89101<br>Attn:   Zachariah Larson |
| **United States Trustee** | **Counsel to the First Lien Steering Committee** |
| United States Trustee – LV-11<br>300 Las Vegas Boulevard S.<br>Suite 4300<br>Las Vegas, NV 89101<br>Attn:   Edward M. McDonald | Akin Gump Strauss Hauer & Feld<br>One Bryant Park<br>New York, NY 10036<br>Attn:   Philip C. Dublin<br>        Abid Qureshi<br><br>Kolesar & Leatham, Chtd.<br>3320 West Sahara Avenue<br>Suite 380<br>Las Vegas, NV 89102<br>Attn:   Nile Leatham |
| **Counsel to the Creditors' Committee** | **Counsel to First Lien Agent** |
| Parsons Behle & Latimer<br>201 S. Main St., Suite 1800<br>Salt Lake City, Utah 84111<br>Attn:   J. Thomas Beckett<br><br>Parsons Behle & Latimer<br>50 West Liberty Street, Suite 750<br>Reno, Nevada 89501<br>Attn: Rew Goodenow | Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue, Suite 3500<br>Los Angeles, CA 90071<br>Attn:   Van C. Durrer II<br>        Ramon M. Naguiat |

2.    After the Effective Date, the Reorganized Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.

After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

      <u>3.</u>     In accordance with Bankruptcy Rules 2002 and 3020(c), within ten business days of the date of entry of the Confirmation Order, the Plan Proponent shall serve  the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with the Confirmation Hearing Notice; <u>provided</u>, <u>however</u>, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Plan Proponent mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Plan Proponent has been informed in writing by such Entity, or is otherwise aware, of that Entity's new address. To supplement the notice described in the preceding sentence, within twenty days of the date of the Confirmation Order, the First Lien Steering Committee shall publish the Notice of Confirmation once in the Vegas Sun.  Mailing and publication of the Notice of Confirmation in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

  <u>H.</u>    <u>Term of Injunctions or Stays</u>:  Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

  <u>I.</u>    <u>Entire Agreement</u>:  Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

  <u>J.</u>    <u>Governing Law</u>:  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Nevada, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; <u>provided</u>, <u>however</u>, that corporate governance matters relating to the Debtors or Reorganized Debtors, as applicable, not incorporated or organized in Nevada shall be governed by the laws of the state of incorporation or organization of the applicable Debtor or Reorganized Debtor, as applicable.

  <u>K.</u>    <u>Exhibits</u>:  All exhibits and documents ancillary to the Plan and/or the Disclosure Statement are incorporated into and are a part of the Plan as if set forth in full in the Plan.

Copies of such exhibits and documents are available upon written request to the First Lien Steering Committee's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.nvb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

 L. Nonseverability of Plan Provisions:  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Plan Proponent's consent; and (3) nonseverable and mutually dependent.

 M. Closing of the Chapter 11 Cases:  The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

 N. Waiver or Estoppel:  Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, the First Lien Steering Committee or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

 O. Conflicts:  Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Mediation Term Sheet or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

Las Vegas, Nevada
Dated:  ~~November 23, 2009~~February 18, 2010

FIRST LIEN STEERING COMMITTEE

65

By:    /s/  Philip C. Dublin

Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
(702) 979-2357 (Telephone)
(702) 362-9472 (Facsimile)
Nleatham@klnevada.com

AKIN GUMP STRAUSS HAUER & FELD LLP
Philip C. Dublin (NY Bar No, 2959344)
Abid Qureshi (NY Bar No. 2684637)
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
pdublin@akingump.com
aqureshi@akingump.com

*Counsel for the First Lien Steering Committee*

## LIST OF EXHIBITS

| Exhibit | | Description |
|---|---|---|
| 1 | ...................................................... | Mediation Term Sheet |
| 2 | ...................................................... | Term Sheet for New First Lien Notes |

Document comparison by Workshare Professional on Thursday, February 18, 2010 7:09:54 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://EAST/8194334/45 |
| Description | EAST-#8194334-v45-Rhodes_Joint_Plan_of_Reorganization_8-17-09 |
| Document 2 ID | PowerDocs://EAST/8264204/3 |
| Description | EAST-#8264204-v3-Rhodes_-_Third_Amended_Plan |
| Rendering set | standard01 |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 85 |
| Deletions | 59 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 144 |