1  James I. Stang, Esq. (CA Bar No. 94435)                    E-File:  <u>February 22, 2010</u>
   Shirley S. Cho, Esq. (CA Bar No. 192616)
2  Werner Disse, Esq. (CA Bar No. 143458)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 11th Floor
   Los Angeles, California 90067-4100
4  Telephone: 310/277-6910
   Facsimile:  310/201-0760
5  Email: jstang@pszjlaw.com
         scho@pszjlaw.com
6        wdisse@pszjlaw.

7

8  Zachariah Larson, Esq. (NV Bar No. 7787)
   LARSON & STEPHENS
9  810 S. Casino Center Blvd., Ste. 104
   Las Vegas, NV  89101
10 Telephone:  702/382.1170
   Facsimile:  702/382.1169
11 Email: zlarson@lslawnv.com

12

13 Attorneys for Debtors and
   Debtors in Possession

14              **UNITED STATES BANKRUPTCY COURT**

15                     **DISTRICT OF NEVADA**

16 In re:                                    Case No.: BK-S-09-14814-LBR
                                             (Jointly Administered)
17 THE RHODES COMPANIES, LLC, aka
   "Rhodes Homes," et al.,[1]                Chapter 11
18
                          Debtors.
19
   Affects:                                  Hearing Date:  March 11, 2010
20   ☐    All Debtors                        Hearing Time:  9:30 a.m.
     ☒    Affects the following Debtor(s)    Courtroom 1
21

22 ───────────────────────────────

23 [1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-
   14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache
24 Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case
   No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-
25 14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa,
   LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843);
26 Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No.
   09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany
27 Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany
   Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow,
28 LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP
   (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No.
   09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-
   14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

73203-002\DOCS_LA:215807.4

Rhodes Homes Arizona, LLC; Rhodes Arizona Properties, LLC; and Elkhorn Investments, Inc.

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN OF THE DEBTORS' ARIZONA ASSETS; (B) APPROVING FORM OF PUBLICATION NOTICE; AND (C) SCHEDULING SALE HEARING DATE; DECLARATION OF PAUL D. HUYGENS IN SUPPORT THEREOF**

Rhodes Homes Arizona, LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc. (collectively, the "Arizona Debtors") hereby submit this motion ("the "Motion") pursuant to sections 105, 363, 365, 503, 1107 and 1108 of chapter 11 of title 11, United States Code (the "Bankruptcy Code") for an order (i) approving the bidding procedures attached as Exhibit 1 to this Motion (the "Bidding Procedures") for the sale (the "Transaction") of certain of the assets of the Arizona Debtors (the "Arizona Assets"), and (ii) scheduling related sale hearing dates.

In support of the Motion, the Arizona Debtors respectfully represent as follows:

## I.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Arizona Debtors' chapter 11 cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.    The statutory predicates for the relief sought herein are Section 363 of the Bankruptcy Code and Rules 2002(a)(2), 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.    On March 31, 2009, the above-captioned Debtors (the "Primary Filers") except Tuscany Golf Country Club, LLC, Pinnacle Grading, LLC, and Rhodes Homes Arizona, LLC (the "Secondary Filers") filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code.  On April 1, 2009, the Secondary Filers filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  All references to Petition Date herein shall mean March 31, 2009 for the Primary Filers or April 1, 2009 for the Secondary Filers, as applicable.

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

4.      The Arizona Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

## II.

## ARIZONA ASSETS & STALKING HORSE BID

5.      On February 12, 2010, the Bankruptcy Court approved the plan of reorganization (the "Plan") of the First Lien Steering Committee.  Although the order confirming the Plan has not yet been entered as of the date and time of filing of this Motion, it is the Debtors' expectation that the ultimate sale of the Arizona Assets will occur after the Plan has been confirmed and the Effective Date under the Plan has occurred.

6.      The Plan embodies a settlement with the Debtors' non-debtor affiliates (the "Rhodes Entities"), which initially contemplated that the Debtors would sell the Arizona Assets to the Rhodes Entities.   In conjunction with the Bankruptcy Court's approval of the Plan, the Debtors have agreed to market the Arizona Assets.  Pending a higher and better offer received through these Bidding Procedures, the Arizona Debtors have agreed to sell the Arizona Assets to the Rhodes Entities for $1,222,999 plus the assumption or posting of a $250,000 grading/street realignment bond (the "Stalking Horse Bid").  The Rhodes Entities will not be receiving a break-up fee or expense reimbursement on account of their efforts as the Stalking Horse Bidder.

7.      The Arizona Assets consists primarily of raw land in Arizona, four model homes, four partially-completed homes, miscellaneous office equipment, and other items of personal property including certain intellectual property.  The Arizona Assets do not include the Arizona Debtors' general contractor's license.  Of note, there are certain parcels of land owned by the Arizona Debtors that are not duly reflected as owned by the Arizona Debtors based on the County of Mohave Recorder's, but rather as being owned by the Rhodes Entities, and vice versa.  Pursuant to the terms of the parties' settlement as set forth in the Plan, the transfer of these assets was to occur by a stock purchase by the Rhodes Entities, which would have resolved any title issues.  However, now that the Debtors intend to market these assets for sale

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

to third parties, as set forth at the Plan confirmation hearing, the parties have agreed to enter into a stipulation to resolve these title issues, which will be duly noticed for hearing before this Court as soon as possible.

8.    The Arizona Assets are being sold on an "as is, where is" basis without any representations or warranties.

### III.

### RELIEF REQUESTED

5.    The Arizona Debtors request entry of an order pursuant to sections 363 and 365 of the Bankruptcy Code (i) approving the Bidding Procedures for the sale of the Arizona Assets; and (ii) scheduling related sale hearing dates.

### IV.

### BIDDING PROCEDURES

6.    The Arizona Debtors shall:  (i) with the consent of the First Lien Steering Committee, determine whether a potential bidder is a Qualified Bidder (defined below); (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; (iv) together with the First Lien Steering Committee, negotiate any offers made to purchase the Arizona Assets (collectively, the "Bidding Process").  The Arizona Debtors, with the consent of the First Lien Steering Committee, shall have the right to adopt such other rules for the Bidding Process that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

7.    The Bidding Procedures are set forth in more detail at **Exhibit A** hereto.  To be eligible to participate in the Auction, each Bid must be submitted by the Bid Deadline (April 26, 2010 at 4:00 p.m. pacific time) and be accompanied by the following:

a.    Executed Asset Purchase Agreement.  Each bid must be accompanied by an executed asset purchase agreement (and which must be acceptable to the First Lien Steering Committee), which will be provided by the Debtors no later than 30 days prior to the Sale Hearing, without any changes to the form of the agreement.

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

1

2

3

   b. <u>Minimum Bid</u>.  The consideration proposed by the Bid may include only cash.  The aggregate consideration must equal or exceed the sum of the Purchase Price ($1,222,999) plus $200,000 ("<u>Initial Minimum Overbid Increment</u>").

4

5

6

7

   c. <u>Good Faith Deposit</u>.  Each Bid must be accompanied by the full amount of the Purchase Price and Initial Minimum Overbid Increment, or $1,422,999, whether in the form of a certified check or cash payable to the order of Nevada Title Company or by wire transfer (which account information will be made available upon request).

8

9

10

11

   d. <u>Performance Bond</u>.  Each Bid must be accompanied by a commitment letter from a reputable bond underwriter (as determined by the Debtors and the First Lien Steering Committee) for the issuance of a performance bond that can be posted within three (3) business days of the Bidder being selected as the Successful Bidder.

12

13

   e. <u>Irrevocable</u>.  A bid must be irrevocable until the closing of the transaction with the Successful Bidder (the "<u>Termination Date</u>").

14

15

   f. <u>Contingencies</u>.  A Bid may not be conditioned on obtaining financing or any internal approval or otherwise be subject to contingencies.

16

17

   g. <u>Due Diligence Package</u>.  A Bid must be accompanied by an acknowledgement that the Bidder has received the Due Diligence Package.

18

19

   h. <u>Proof of Funds</u>.  A Bid must contain written evidence of proof of funds in a financial institution for any amount in the Bid that is in excess of the Minimum Bid.

20

21

22

23

24

   i. <u>No Fees Payable to Qualified Bidder</u>.  A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bidding Procedures.

25

26

27

28

   j. <u>Identification of Potential Bidder</u>.  Concurrently with its Bid, identification of the Potential Bidder and any Principals (defined below), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

k.      Corporate Authority.  Concurrently with its bid, written evidence satisfactory to the Arizona Debtors and the First Lien Steering Committee of the Potential Bidder's board of directors or other similar approval, as applicable, of the contemplated transaction.

8.      A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified Bid" and the bidder a "Qualified Bidder" if the Arizona Debtors, with the consent of the First Lien Steering Committee, believe that such Bid would be consummated if selected as the Successful Bid.

9.      The bid submitted by the Rhodes Entities shall be a Qualified Bid, provided that the Purchase Price is received by the Bid Deadline in cash.

**B.      Auction**

10.      If a Qualified Bid (other than that of the Stalking Horse Bid) is received prior to the Bid Deadline, the Arizona Debtors shall conduct an auction on May 10, 2010 at 9:00 a.m. pacific time (the "Auction") to determine the highest and best bid with respect to the Arizona Assets.

11.      If no higher and better offer is obtained at the Auction, then the Stalking Horse Bid will be deemed the Successful Bid, and, at the Sale Hearing, the Arizona Debtors will seek approval of and authority to consummate the Transaction with the Rhodes Entities.

12.      Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction.  Only the authorized representatives of each of the Qualified Bidders, the Arizona Debtors, and the First Lien Steering Committee shall be permitted to attend.

**C.      Terms Of Overbids**

13.      An "Overbid" is any bid made at the Auction subsequent to the Arizona Debtors' announcement of the Baseline Bid.  Any Overbid after the Baseline Bid shall be made in increments of at least $10,000.

14.      Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Arizona Debtors, with the consent

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

of the First Lien Steering Committee, accept a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).

15.    The Arizona Debtors shall announce at the Auction each Overbid.  The Arizona Debtors shall thereafter provide the Buyer and each Qualified Bidder an opportunity to make subsequent Overbids.

16.    The Arizona Debtors, with the consent of the First Lien Steering Committee in each instance, may (a) determine which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interest of the Arizona Debtors, their estates and creditors.

17.    Upon conclusion of the bidding, the Auction shall be closed, and the Arizona Debtors and the First Lien Steering Committee shall immediately identify the highest and best offer for the Arizona Assets (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest and best offer will provide the greatest amount of net value to the Arizona Debtors, and the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid") and the entity submitting the Back-up Bid (the "Back-up Bidder"), and advise the Qualified Bidders of such determination.  Upon five (5) business days' prior notice by the Arizona Debtors, the Back-up Bidder selected by the Arizona Debtors and the First Lien Steering Committee must immediately proceed with the closing of the transaction contemplated by the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason.

18.    The Arizona Debtors shall sell the Arizona Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing.  The Arizona Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Arizona Debtors' or First Lien Steering Committee's acceptance of such Qualified Bid.  The Arizona Debtors will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

Sale Hearing. All interested parties reserve their right to object to the Arizona Debtors' and First Lien Steering Committee's selection of the Successful Bidder.

19.    If the Successful Bidder fails to consummate an approved sale by the date that is five business (5) days after the Sale Order has been entered (the "Termination Date"), the Arizona Debtors shall be authorized (with the consent of the First Lien Steering Committee), but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Arizona Debtors shall be authorized (with the consent of the First Lien Steering Committee), but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

**D.    Return Of Good Faith Deposit**

20.    Any Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at Closing. Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until five (5) days after Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders with all accumulated interest thereon. If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Arizona Debtors shall be entitled to retain the Successful Bidder's Good Faith Deposit as part of its damages resulting from such Successful Bidder's breach or failure to perform, in addition to all other remedies at law or in equity which may be available to the Arizona Debtors.

## V. PROPOSED PUBLICATION NOTICE

In addition to marketing the Arizona Assets through local listing agents and contacting strategic buyers, which will commence immediately upon approval of the Bidding Procedures, the Arizona Debtors propose that notice of the Bid Deadline, Auction, and sale of the Arizona Assets be published within five (5) business days of entry of these Bidding Procedures Order and run again the following week in the *Kingman Daily Miner* and the *Las Vegas Review Journal*. A proposed form of the publication notice is attached as Exhibit B.

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

# VI.

## PROPOSED SALE HEARING DATE

21.    The Debtors have conferred with the Official Committee of Unsecured Creditors and the First Lien Steering Committee on the general timing of a sale process.  Given that any delay in sale of these assets will result in a delay of the sale proceeds being received into these estates, which will thereby cause a delay on the timing of the claims being purchased, it is the unanimous consensus of these parties that the sale process be conducted as expeditiously as possible.  Accordingly, the Debtors propose the following dates be set in connection with the sale of the Arizona Assets:

| Event | Deadline |
|---|---|
| File Sale Approval Motion | 4/12/10 |
| Bid Deadline/ Deposit Deadline | 4/26/10 |
| Objection Deadline for Sale Approval Motion | 4/27/10 |
| Notify Bidders of Qualified Bidder Status & Auction | 5/6/10 |
| Auction | 5/10/10 |
| Sale Approval Hearing | 5/11/10 at 1:30 p.m. |
| Sale Order Entered | 5/13/10 |
| Close Sale | 5/17/10 |

The Federal Rules of Bankruptcy Procedure requires 20 days notice to parties in interest of a sale of assets outside of the ordinary course of business unless the court shortens the time period. Fed. R. Bankr. P. 2002(a).  Here, the Debtors propose providing 31 days notice of the sale approval motion, and given that the Debtors will begin marketing their assets immediately upon

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

1   approval of these Bidding Procedures, the Debtors will have marketed their assets for 45 days

2   prior to the Bid Deadline, the Debtors submit that the above timeline is reasonable.

3                                                    **VII.**

4                **GOOD CAUSE EXISTS TO APPROVE THE BIDDING PROCEDURES**

5          22.      The Bidding Procedures are fair and reasonable under the circumstances and will

6   encourage competitive bidding and the highest and best price for the Arizona Assets, which is a

7   clear benefit to the Debtors' estates.  Historically, bankruptcy courts have approved bidding

8   procedures similar to the Bidding Procedures under the "business judgment rule," which

9   proscribes judicial second-guessing of the actions of a corporation's board of directors taken in

10  good faith and in the exercise of honest judgment.  See, e.g., In re 995 Fifth Ave. Assocs., L.P.,

11  96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).  In determining whether the debtor-in-possession has

12  complied with the sound business judgment rule, the court must consider whether:  (a) there has

13  been "[a]ny improper or bad motive," (b) the "price is fair and the negotiations or bidding has

14  occurred at arm's length," and (c) the sale followed "[a]dequate procedures, including proper

15  exposure to the market and accurate and reasonable notice to all parties in interest."  In re

16  Castre, 312 B.R. 426, 428 (Bankr. D. Colo. 2004).  When applying the rule, "the bankruptcy

17  court should presume that the debtor-in-possession acted prudently, on an informed basis, in

18  good faith, and in the honest belief that the action taken was in the best interests of the

19  bankruptcy estate."  In re Pomona Valley Med. Group, Inc., 476 F.3d 665, 670 (9th Cir. 2007)

20  (considering the rule in the context of the debtor's decision to reject a contract).  In the context

21  of this rule, courts often approve overbid procedures.  See, e.g., In re Crown Corp., 679 F.2d

22  774, 777 (9th Cir. 1982).  This court enjoys broad powers to approve such measures.  "the court

23  may issue any order, process or judgment that is necessary or appropriate to carry out the

24  provisions of [the bankruptcy code]."  11 U.S.C. § 105(a); In re Chinichian, 784 F.2d 1440,

25  1443 (9th Cir. 1986); accord In re Geothermal Resources Int'l, 93 F.3d 648, 651 (9th Cir.

26  1996); In re Lionel Corp., 722 F.2d 1063, 1069 (2d Cir. 1983) (noting a bankruptcy judge's

27  "broad administrative power" and "substantial freedom to tailor his orders" to a case at hand).

28  Here, the proposed Bidding Procedures comport with Debtors' sound business judgment.

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

Principally, the Bidding Procedures permit qualified bidders to submit topping bids. In this way, the Bidding Procedures embody an arm's-length process and ensure competitive bidding over the Stalking Horse Bid. This, in turn, will maximize the sale price of the assets for the benefit of all creditors and the bankruptcy estate. In addition, the bidding procedures require qualified bidders to deposit a sum into escrow and to reveal their financial information, thus ensuring only earnest and fiscally capable buyers bid on the properties. Finally, the Bidding Procedures provide reasonable notice of the sale to all parties in interest.

23.     For the reasons set forth above, the Debtors respectfully request approval of: (a) the Bidding Procedures, and (b) the proposed sale-related dates above.

## VI.

## NOTICE

24.     Notice of this Motion and the Motion will be given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtors' prepetition and postpetition secured lenders; (iii) counsel for the Official Committee of Unsecured Creditors; (iv) any party who has expressed an interest in purchasing the Arizona Assets; and (v) all parties who have requested notice in these cases. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VIII.

## CONCLUSION

25.     For the foregoing reasons, the Debtors respectfully request that the Court grant the Motion.

**DATED** this 22nd day of February 2010.

LARSON & STEPHENS

 _/s/ Zachariah Larson, Esq._
Zachariah Larson, Bar No. 7787
Kyle O. Stephens, Bar No. 7928
810 S. Casino Center Blvd., Suite 104
Las Vegas, NV  89101
702/382-1170
Attorneys for Debtors and Debtors in
Possession

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

### DECLARATION OF PAUL D. HUYGENS

I, Paul D. Huygens, declare as follows:

1.      I am the Senior Vice President of Special Projects for the above-captioned debtors and debtors in possession (the "Debtors").  I submit this declaration in support of the Motion.

2.      Except as otherwise stated, all facts contained within this Declaration are based upon personal knowledge (my own or that gathered from others within the Debtors' organization), my review of relevant documents, or my opinion based upon my experience concerning the operations of the Debtors.  If called upon to testify, I would testify to the facts set forth in this Declaration.

3.      The facts set forth in the Motion are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 22nd day of February, 2010, at Las Vegas, Nevada.


                                                                    /s/
                                                          Paul D. Huygens

**LARSON & STEPHENS**
**810 S. Casino Center Blvd., Suite 104**
**Las Vegas, Nevada 89101**

James I. Stang, Esq. (SBN 94435)
Shirley S. Cho, Esq. (SBN 192616)
Werner Disse, Esq. (SBN 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: jstang@pszjlaw.com
        scho@pszjlaw.com
        wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com

Attorneys for Debtors and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka<br>"Rhodes Homes," et al.,[1]<br><br>        Debtors.<br>_____<br>Affects:<br>☐       All Debtors<br>☒       Affects the following Debtor(s)<br>Rhodes Homes Arizona, LLC; Rhodes<br>Arizona Properties, LLC; and Elkhorn<br>Investments, Inc. | Case No.: 09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11 |

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09- 14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20 LLC (Case No. 09-14848); Tuscany Acquisitions IV LLC (Case No. 09-14849); Tuscany Acquisitions III LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, LLC (Case No. 09- 14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

1

2    **ORDER APPROVING DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A)**
     **APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN OF THE**
3    **DEBTORS' ARIZONA ASSETS; (B) APPROVING FORM OF PUBLICATION NOTICE;**
     **AND (C) SCHEDULING SALE HEARING DATE [RE DOCKET NO. _____]**

4

5           Upon consideration of the *Debtors' Motion for Entry of an Order (A) Approving Bidding*

6    *Procedures for the Sale of Certain of the Debtors' Arizona Assets; (B) Approving Form of*

7    *Publication Notice; and (C) Scheduling Sale Hearing Date* [Docket No. ____] (the "Motion") and

8    good cause appearing, it is hereby

9           ORDERED that the Motion is approved; and it is further

10          ORDERED that the Arizona Debtors**2** are authorized to sell the Arizona Assets pursuant to

11   Bidding Procedures as set forth in the Motion.

12

13   APPROVED/DISAPPROVED:

14   DATED this _____ day of March 2010.

15
     By: _____
16   UNITED STATES TRUSTEE
     August Landis
17   Office of the United States Trustee
     300 Las Vegas Blvd. S., Ste. 4300
18   Las Vegas, NV  89101

19

20   Submitted by:
     DATED this 11th day of March 2010.
21
     By: ___*/s/Zachariah Larson*_____
22   LARSON & STEPHENS
     Zachariah Larson, Esq. (NV Bar No 7787)
23   Kyle O. Stephens, Esq. (NV Bar No. 7928)
     810 S. Casino Center Blvd., Ste. 104
24   Las Vegas, NV  89101
     (702) 382-1170 (Telephone)
25   (702) 382-1169
     zlarson@lslawnv.com
26   *Attorney for Debtors and Debtors in Possession*

27

28   _____
     **2** Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

73203-002\DOCS_LA:215914.1

**LR 9021 Certification**

In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

_____ The court has waived the requirement of approval under LR 9021.

_____ This is a chapter 7 or 13 case, and either with the motion, or at the hearing, I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

_____ This is a chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

_____ I certify that I have served a copy of this order with the motion, and no parties appeared or filed written objections.

Submitted by:

DATED this 11th day of March, 2010.

By: /s/ Zachariah Larson
    LARSON & STEPHENS
    Zachariah Larson, Esq. (NV Bar No 7787)
    Kyle O. Stephens, Esq. (NV Bar No. 7928)
    810 S. Casino Center Blvd., Ste. 104
    Las Vegas, NV  89101
    (702) 382-1170 (Telephone)
    (702) 382-1169
    zlarson@lslawnv.com
    Attorneys for Debtors

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: BK-S-09-14814-LBR |
| | (Jointly Administered) |
| THE RHODES COMPANIES, LLC, aka | |
| "Rhodes Homes," et al., | Chapter 11 |
| Debtors. | |

**BIDDING PROCEDURES**

Rhodes Homes Arizona, LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc. (the "Arizona Debtors") each filed a chapter 11 case, which cases are pending in the Bankruptcy Court[1] and administered under Case No. 09-14814 (LBR).  By motion dated February 19, 2010 (the "Motion"), the Arizona Debtors sought, among other things, approval of the process and procedures set forth below (the "Bidding Procedures") through which they will determine the highest and best offer for certain of their assets, which consists primarily of raw land in Arizona, four model homes, four partially-completed homes, miscellaneous office equipment, and other items of personal property including certain intellectual property (the "Arizona Assets").  On March [__], 2010, the Bankruptcy Court entered its order (the "Bidding Procedures Order"), which, among other things, approved these Bidding Procedures.

Pending a higher and better offer received through these Bidding Procedures, the Arizona Debtors have agreed to sell to certain of their non-Debtor affiliates, the "Rhodes Entities", the Arizona Assets for $1,222,999 plus the assumption or posting of a $250,000 grading/street realignment bond (the "Stalking Horse Bid").  The Rhodes Entities will not be receiving a break-up fee or expense reimbursement on account of their efforts as the Stalking Horse Bidder.

There are certain parcels of land owned by the Arizona Debtors that are not duly reflected as owned by the Arizona Debtors based on the County of Mohave Recorder's Office records, but rather as being owned by the Rhodes Entities, and vice versa.  The parties have agreed to enter into a stipulation to resolve these title issues, which will be duly noticed for hearing before the Bankruptcy Court as soon as possible.

On [May 17, 2010], as further described below, in the Motion and in the Bidding Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Arizona Debtors shall seek entry of the Sale Order authorizing and approving the sale of the Arizona Assets (the "Transaction") to the Qualified Bidder (defined below) that the Arizona Debtors, with the consent of the First Lien Steering Committee, determine to have made the highest and/or best offer, subject to Bankruptcy Court approval.

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

## PURCHASE PRICE

The minimum purchase price for the Arizona Assets shall be $1,222,999 (the "Purchase Price").  The Transaction is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code §§ 363 and 365.  The Successful Bidder shall also be responsible for posting an early grading/street alignment bond in the amount of $250,000 within three (3) Business Days of being selected as the Successful Bidder.  The Successful Bidder shall also be responsible for all cure costs associated with assuming any contracts associated with any of the Arizona Assets, which the Arizona Debtors estimate to be $0.00.

## PARTICIPATION REQUIREMENTS

In addition to the Bid requirements set forth below, in order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in the Arizona Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Arizona Debtors and the Notice Parties (defined below) an executed confidentiality agreement in form and substance acceptable to the Arizona Debtors and the First Lien Steering Committee (a "Confidentiality Agreement").

## ACCESS TO DUE DILIGENCE MATERIALS

Only Potential Bidders that execute and deliver a Confidentiality Agreement are eligible to receive due diligence access or additional non-public information.  The Arizona Debtors will prepare a due diligence package that discloses, among other things, issues related to current zoning, set-back requirements, water, gas, telephone and other utility availability (the "Due Diligence Package").  The Arizona Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders.  The Arizona Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined).  The Arizona Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Bidders in connection with the sale of the Arizona Assets, whether provided as part of the due diligence by the Debtors or otherwise.

## DUE DILIGENCE FROM BIDDERS

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Arizona Debtors or its advisors or the First Lien Steering Committee or its advisors regarding such Bidder and its contemplated transaction.  Failure by a Bidder to comply with requests for additional information and due diligence access will be a basis for the Arizona Debtors to determine, with the consent of the First Lien Steering Committee, that the Bidder is not a Qualified Bidder.  Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Arizona Debtors, with the consent of the First Lien Steering Committee, to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

**BIDDING PROCESS**

The Arizona Debtors shall, prior to the Bid Deadline:  (i) with the consent of the First Lien Steering Committee, determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Potential Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; (iv) together with the First Lien Steering Committee, negotiate any offers made to purchase the Arizona Assets (collectively, the "Bidding Process").  The Arizona Debtors, with the consent of the First Lien Steering Committee, shall have the right to adopt such other rules for the Bidding Process that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

**BID DEADLINE**

**The deadline for submitting bids by a Qualified Bidder shall be [April 26, 2010], at 4:00 p.m. (Pacific Time) (the "Bid Deadline").**

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its Bid by electronic mail to the following Notice Parties by the Bid Deadline:  (i)  the Arizona Debtors, 4730 S. Fort Apache Rd., Ste. 300, Las Vegas, NV  89147, Attn: Bruce Jorgensen, General Counsel, bjorgensen@rhodeshomes.com and Paul Huygens, phuygens@provinceadvisors.com; (ii) counsel for the First Lien Steering Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY  10036, Attn: Philip C. Dublin, Esq., pdublin@akingump.com; (iii) counsel for the Rhodes Entities, Greenberg Traurig, LLP, 3773 Howard Hughes Parkway, Suite 400 North, Las Vegas, NV 89169, Attn:  Brett Axelrod, axelrodb@gtlaw.com; (iv) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th Fl., Los Angeles, CA  90067, Attn: Shirley S. Cho, scho@pszjlaw.com; and (v) counsel for the Committee of Unsecured Creditors, Parsons Behle & Latimer, One Utah Center, 201 S. Main St., Ste. 1800, PO Box 45898, Salt Lake City, UT  84145-0898, Attn: J. Thomas Beckett, jbeckett@parsonsbehle.com; (v) counsel to Agent for First Lien Lenders, Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Ste. 3400, Los Angeles, CA  90071, Attn: Ramon M. Naguiat, ramon.naguiat@skadden.com; and (vi) counsel to Agent for Second Lien Lenders, Ropes & Gray, 1211 Avenue of the Americas, New York, New York  10036-8704, Attn: Mark R. Somerstein, mark.somerstein@ropesgray.com.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

**BID REQUIREMENTS**

To be eligible to participate in the Auction, each Bid and each Bidder submitting such a Bid must be determined by the Arizona Debtors, with the consent of the First Lien Steering Committee, to satisfy each of the following conditions:

> Executed Asset Purchase Agreement.  Each bid must be accompanied by an executed asset purchase agreement (and which must be acceptable to the First Lien Steering Committee), which will be provided by the Debtors no later

than 30 days prior to the Sale Hearing, without any changes to the form of the agreement.

Executory Contracts.  Each bid must identify any executory contracts that the Potential Bidder wishes to be assigned to it, with a commitment to pay any and all cure costs.  The Arizona Debtors reserve the right not to assign the executory contract to the Potential Bidder in their sole and absolute discretion.

Minimum Bid.  The consideration proposed by the Bid may include only cash.  The aggregate consideration must equal or exceed the sum of the Purchase Price ($1,222,999) plus $200,000 ("Initial Minimum Overbid Increment").

Good Faith Deposit.  Each Bid must be accompanied by the full amount of the Purchase Price and Initial Minimum Overbid Increment, or $1,422,999, whether in the form of a certified check or cash payable to the order of Nevada Title Company or by wire transfer (which account information will be made available upon request).

Performance Bond.  Each Bid must be accompanied by a commitment letter from a reputable bond underwriter (as determined by the Debtors and the First Lien Steering Committee) for the issuance of a performance bond that can be posted within three (3) business days of the Qualified Bidder being selected as the Successful Bidder.

Irrevocable.  A bid must be irrevocable until the closing of the transaction with the Successful Bidder (the "Termination Date").

Contingencies.  A Bid may not be conditioned on obtaining financing or any internal approval or otherwise be subject to contingencies.

Due Diligence Package.  A Bid must be accompanied by an acknowledgement that the Bidder has received the Due Diligence Package.

Proof of Funds.  A Bid must contain written evidence of proof of funds in a financial institution for any amount in the Bid that is in excess of the Minimum Bid.

No Fees Payable to Qualified Bidder or Broker.  A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of

4

payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bidding Procedures.  The Arizona Debtors shall not be responsible for the cost of any fees, commissions, referral fees, etc. for advice, consultation, brokerage, due diligence or other services commissioned or used by a Bidder.

Identification of Potential Bidder.  Concurrently with its Bid, identification of the Potential Bidder and any principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

Corporate Authority.  Concurrently with its bid, written evidence satisfactory to the Arizona Debtors and the First Lien Steering Committee of the Potential Bidder's board of directors or other similar approval, as applicable, of the contemplated Transaction.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified Bid" and the bidder a "Qualified Bidder" if the Arizona Debtors, with the consent of the First Lien Steering Committee, believe that such Bid would be consummated if selected as the Successful Bid.

In the event that any Potential Bidder is determined by the Arizona Debtors and the First Lien Steering Committee not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit with interest thereon, if any has accrued, on or before the date that is five (5) days after Closing of the Sale.

The Arizona Debtors, with the consent of the First Lien Steering Committee, shall have the right to reject any and all bids that they believe do not comply with the Bidding Procedures.

The Stalking Horse Bid shall be a Qualified Bid, provided that the Purchase Price is received by the Bid Deadline in cash.

## AUCTION

If a Qualified Bid (other than the Stalking Horse Bid) is received prior to the Bid Deadline, the Arizona Debtors shall conduct an auction (the "Auction") to determine the highest and best bid with respect to the Arizona Assets.  The Auction shall commence at 9:00 a.m. (Pacific Time) on **[May 10, 2010]**, at the offices of Greenberg Traurig LLP, 3773 Howard Hughes Parkway, Suite 400 North, Las Vegas, NV  89169.

No later than [May 6, 2010], the Arizona Debtors will notify all Qualified Bidders of (i) the highest and best Qualified Bid, as determined by the Arizona Debtors and the First Lien

Steering Committee (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders.

If no higher and better offer is obtained at the Auction, then the Stalking Horse Bid will be deemed the Successful Bid, and, at the Sale Hearing, the Arizona Debtors will seek approval of and authority to consummate the Transaction with the Rhodes Entities.

The Auction shall be conducted according to the following procedures:

## PARTICIPATION AT THE AUCTION

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. Only the authorized representatives of each of the Qualified Bidders, the Arizona Debtors, and the First Lien Steering Committee shall be permitted to attend.

## THE ARIZONA DEBTORS SHALL CONDUCT THE AUCTION

The Arizona Debtors and its professionals shall direct and preside over the Auction. At the start of the Auction, the Arizona Debtors shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Arizona Debtors, with the consent of the First Lien Steering Committee, reasonably deem relevant to the value of the Qualified Bid to the estate (the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Arizona Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. The Arizona Debtors reserve the right to conduct the auction in the manner acceptable to the First Lien Steering Committee and designed to maximize value based upon the nature and extent of the Qualified Bids received.

## TERMS OF OVERBIDS

An "Overbid" is any bid made at the Auction subsequent to the Arizona Debtors' announcement of the Baseline Bid. Any Overbid after the Baseline Bid shall be made in increments of at least $10,000.

Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Arizona Debtors, with the consent of the First Lien Steering Committee, accept a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).

(a)    Announcing Overbids

The Arizona Debtors shall announce at the Auction each Overbid. The Arizona Debtors shall thereafter provide the Buyer and each Qualified Bidder an opportunity to make subsequent Overbids.

The Arizona Debtors, with the consent of the First Lien Steering Committee in each instance, may (a) determine which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interest of the Arizona Debtors, its estate and creditors.

## CONSENT TO JURISDICTION AS CONDITION TO BIDDING

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

## CLOSING THE AUCTION

Upon conclusion of the bidding, the Auction shall be closed, and the Arizona Debtors and the First Lien Steering Committee shall immediately identify the highest and best offer for the Arizona Assets (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest and best offer will provide the greatest amount of net value to the Arizona Debtors, and the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid") and the entity submitting the Back-up Bid (the "Back-up Bidder"), and advise the Qualified Bidders of such determination.  Upon five (5) business days' prior notice by the Arizona Debtors, the Back-up Bidder selected by the Arizona Debtors and the First Lien Steering Committee must immediately proceed with the closing of the transaction contemplated by the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason.

## ACCEPTANCE OF SUCCESSFUL BID

The Arizona Debtors shall sell the Arizona Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing.  The Arizona Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Arizona Debtors' or First Lien Steering Committee's acceptance of such Qualified Bid.  The Arizona Debtors will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.  All interested parties reserve their right to object to the Arizona Debtors' and First Lien Steering Committee's selection of the Successful Bidder.

## "AS IS, WHERE IS"

The sale of the Arizona Assets shall be on an "as is, where is", "with all faults" basis and without representations or warranties of any kind, nature, or description by the Arizona Debtors, its agents or its estate or the First Lien Steering Committee, including without limitation representations and warranties as to physical condition, title, ownership, authorization to sell, acreage, leases, rents, revenues, income, expenses, operation, zoning or other regulation, compliance with state or federal law, compliance with environmental or hazardous materials law, suitability for particular purposes or any other matter whatsoever, except to the extent set forth in the Agreement or the purchase agreement of another Successful Bidder.  The Buyer and each

7

Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Arizona Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Arizona Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Arizona Assets, or the completeness or accuracy of any information provided in connection therewith, or the Auction.

## FREE OF ANY AND ALL INTERESTS

Except as otherwise set forth above, all of the Arizona Debtors' right, title and interest in and to the Arizona Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with Bankruptcy Code § 363(f), with such Interests to attach to the net proceeds of the sale of the Arizona Assets.

## SALE HEARING

The Sale Hearing shall be conducted by the Bankruptcy Court on **[May 11, 2010 at 1:30 p.m.]**, or on such other date as may be established by the Bankruptcy Court.

If the Successful Bidder fails to consummate an approved sale by the date that is five business (5) days after the Sale Order has been entered (the "Termination Date"), the Arizona Debtors shall be authorized (with the consent of the First Lien Steering Committee), but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Arizona Debtors shall be authorized (with the consent of the First Lien Steering Committee), but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

## RETURN OF GOOD FAITH DEPOSIT

Any Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at Closing. Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until five (5) days after Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders with all accumulated interest thereon. If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Arizona Debtors shall be entitled to retain the Successful Bidder's Good Faith Deposit as part of its damages resulting from such Successful Bidder's breach or failure to perform, in addition to all other remedies at law or in equity which may be available to the Arizona Debtors.

# Exhibit B

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA

IN RE THE RHODES COMPANIES, LLC, et al.,   )     Case No. 09-14814-LBR
                                   )
                     Debtors.     )     Jointly Administered Chapter 11 Cases
                                   )

**NOTICE OF PROPOSED SALE OF ASSETS FREE AND CLEAR OF ANY LIENS OR INTERESTS, AND
ESTABLISHMENT OF BID DEADLINE, AUCTION, AND SALE HEARING DATES**

**TO ALL CREDITORS, EQUITY INTEREST HOLDERS AND OTHER PARTIES IN INTEREST:**

On March 31, 2009 or April 1, 2009, Rhodes Homes Arizona, LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc. (collectively, the "Arizona Debtors") filed bankruptcy under Chapter 11 of the Bankruptcy Code, and are presently operating their businesses as debtors in possession.

**PLEASE TAKE NOTICE** that the Arizona Debtors are intending to sell certain of their Arizona Assets, which include generally raw land in the vicinity of Kingman, Arizona, four model homes, four partially-completed homes, miscellaneous office equipment, and other items of personal property including certain intellectual property. For a complete listing of the assets, including description, please contact the below attorneys.  The Arizona Debtors have received a bid of $1,222,999 for the Arizona Assets.

**PLEASE TAKE NOTICE** that the sale of the Arizona Assets will be conducted pursuant to Bidding Procedures that were approved by the Bankruptcy Court for anyone who may wish to present a competing bid.  The Bidding Procedures are available online at no charge at www.omnimgt.com/rhodes [Docket No. __] or by contacting the below attorneys.

**PLEASE TAKE NOTICE THAT** <u>any competing bid must be received by the Notice Parties (as set forth in the Bidding Procedures) on or before **[April 26, 2010] at 4:00 p.m.** pacific time (the "Bid Deadline").  Persons wishing to present a competing bid or who desire further information on the Arizona Assets should contact the attorneys for the Debtors identified below.</u>

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures approved by the Court, if competing bids that qualify under the Bidding Procedures are received by the Bid Deadline, an auction will be held commencing May 10, 2010 at 9:00 a.m. (Pacific Time).

**PLEASE TAKE NOTICE** that at a sale hearing on May 11, 2010 at 1:30 p.m. in the United States Bankruptcy Court, District of Nevada, 300 S. Las Vegas Blvd., Las Vegas, Nevada, Courtroom 1, the Arizona Debtors will seek to sell the Arizona Assets to the highest and best bid received pursuant to the Bidding Procedures, free and clear of all liens and encumbrances.  Any oppositions to the sale must be received on or before April 27, 2010.

PACHULSKI STANG ZIEHL & JONES LLP
(310) 277-6910
/s/ Shirley S. Cho
Counsel for Debtors and Debtors in Possession

DOCS_LA:215950.1