James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: jstang@pszjlaw.com
       scho@pszjlaw.com
       wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com

Attorneys for Reorganized Debtors

E-File: May 12, 2010

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

In re:

THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]

Debtors.

Affects:
☐ All Debtors

Case No.: BK-S-09-14814-LBR
(Jointly Administered)

Chapter 11

Hearing Date:   June 21, 2010
Hearing Time:   9:30 a.m.

---

[1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

73203-002\DOCS_LA:216539.4

☒   Affects the following Debtor(s)    Courtroom 1

Rhodes Homes Arizona, LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc.

**MOTION OF REORGANIZED DEBTORS FOR ORDER APPROVING STIPULATION RE QUITCLAIMING CERTAIN ARIZONA ASSETS TO CLARIFY TITLE; DECLARATION OF PAUL D. HUYGENS IN SUPPORT THEREOF**

By this Motion (the "Motion"), Rhodes Homes Arizona, LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc., as reorganized (the "Arizona Debtors"), respectfully request that the Court approve the stipulation (the "Swap Stipulation"), attached as **Exhibit 1** hereto, between the Arizona Debtors, the First Lien Steering Committee (the "FLSC"), and certain of the Debtors' non-Debtor affiliates (the "Rhodes Entities" together with the Debtors and FLSC, the "Parties"). For the reasons set forth below, the Swap Stipulation is in the best interests of the Arizona Debtors and will facilitate that sale of the Arizona Assets. A copy of the proposed order approving this Motion is attached hereto.

I.

**STATEMENT OF FACTS**

A.   **General Background**

1. On March 12, 2010, the Bankruptcy Court entered the Order confirming the plan of reorganization (the "Plan") of the First Lien Steering Committee [Docket No. 1053]. The Effective Date of the Plan occurred on April 1, 2010, at which time the Plan became effective and binding on all parties in interest. [Docket No. 1079] This Bankruptcy Court's jurisdiction over the Arizona Asset sale was expressly reserved under the Plan, and as this Motion is in aid of the Arizona Asset sale, the Bankruptcy Court has jurisdiction over the relief requested in this Motion. *See* Plan, Article XII.9 [Docket No. 1053].

2. At the final Plan confirmation hearing, and as reflected in the Plan, the Parties agreed that the Arizona Debtors would sell the Arizona Assets to the Rhodes Entities subject to a marketing process to allow for overbids. As set forth at the final Plan confirmation hearing on the record and in the motion for order approving the bidding procedures (Docket No. 1031), the Parties agreed to enter into this stipulation to clarify title to certain parcels of land.

73203-002\DOCS_LA:216539.4

2

**B.    The Swap Stipulation**

3.    Of the approximate 1,600 acres of land available for sale in connection with the Arizona Assets, approximately 130.57 acres of land is listed by the County of Mohave Recorder's office as not being owned by one of the Arizona Debtors, but instead by one of the Rhodes Entities (the "Debtor Mistitled Property").  Conversely, the Arizona Debtors are listed as record owners of 155.68 acres of land not owned by them, but rather owned by the Rhodes Entities (the "Rhodes Entities Mistitled Property").  Based on the Arizona Debtors and Rhodes Entities' books and records, the Arizona Debtors are the equitable owners of the Debtor Mistitled Property listed on **Exhibit A** to the Stipulation and the Rhodes Entities the equitable owners of the Rhodes Entities Mistitled Property listed on **Exhibit B** to the Stipulation.

4.    The Arizona Debtors have received approval from the necessary Arizona governmental agencies for a master-planned community ("Pravada"), which may be of value to a third party purchaser.  As part of that governmental approval, the map for Pravada contains pre-approved subdivision boundaries, roadway locations, utility locations, house plot lines where homes may be built, and related grading and other physical work product.  The Debtor Mistitled Property consists of parcels of land on the boundaries of Pravada that are necessary for any third-party bidder interested in completing the Pravada master plan because the pre-approved subdivision boundaries, roadway locations, utility locations, house plot lines where homes may be built, and related grading and other physical work product cross both the properly-titled Debtor land and the Debtor Mistitled Property.

5.    In preparing for this Motion, the Arizona Debtors commissioned an appraisal of the Debtor Mistitled Property and the Rhodes Entities Mistitled Property.  A true and correct copy of the executive summary of the appraisal is attached hereto as **Exhibit 2**.  That appraisal shows that, on a stand alone basis, the Rhodes Entities Mistitled Property is approximately $88,500 higher in value than the Debtor Mistitled Property.  The appraisal values each parcel of land to be swapped on an individual and standalone basis, and further assumes that larger parcels of land sell at a lower per acre amount and smaller acreage sells at a higher per acre amount.  The Reorganized Debtors do not disagree with this appraisal approach in principal provided that each parcel was to be sold on an

individual basis and neither the Rhodes Entities Mistitled Property or the Debtor Mistitled Property had any relationship to a larger parcel assemblage. Here, however, where the mistitled land is necessary to complete the contiguous masterplan layout, grading, and other physical work, the Reorganized Debtors assume that a third-party purchaser would pay at least the same amount per acre for the parcels of land needed to complete the masterplan layout as they would a random scattered site parcel (if not significantly more). Applying that logic, by the Reorganized Debtors' estimation, the Rhodes Entities Mistitled Property is either equivalent to, or at worst an inconsequential amount higher, in value than the Debtor Mistitled Property.

6. In the Reorganized Debtors' judgment, the failure of the Debtor Mistitled Property to be properly titled in the name of the Arizona Debtors would negatively impact the value of the Arizona Assets that are for sale under the Bidding Procedures. The Debtor Mistitled Property is necessary to complete the boundaries of the governmentally-approved master plan and is necessary to complete both major and subdivision level land development improvements and homes along the pre-approved plot lines if a third-party purchaser intends to complete the Pravada development. Therefore, in order to maximize the value of the Arizona Assets, the Parties have agreed to enter into the Swap Stipulation, subject to approval of the Bankruptcy Court. If this Motion is granted, a third-party purchaser would not need to institute quiet title actions and the like to affirm the true ownership of the Debtor Mistitled Property.

7. Based on the Reorganized Debtors' feedback from at least one interested third party purchaser, Stanley Consultants, Inc., the entry of an order approving this Swap Stipulation is necessary.

## II.

## THE PROPOSED SWAP STIPULATION IS IN THE BEST INTEREST OF THE AZ DEBTORS

A. **Standard for Approval of Settlements**

The Parties believe that the Swap Stipulation is reasonable and should be approved under Bankruptcy Rule 9019. In order to determine whether a compromise may be approved under Bankruptcy Rule 9019, the Bankruptcy Court must consider four factors: (i) the probability of

success of the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *See, e.g., In re A&C Properties,* 784 F.2d 1377, 1381 (9th Cir. 1986). A compromise may be approved even if all four of the factors do not favor the compromise so long as the factors weigh in favor of the compromise when taken as a whole. *See In re Pac. Gas and Elec. Co.*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004). In addition, a compromise does not have to be the best compromise that could have possibly been obtained but, instead, must only fall within a reasonable range of possible outcomes. *In re WCI Cable, Inc.,* 282 B.R. 457, 473-74 (Bankr. D. Or. 2002). Based on the foregoing, the Debtors believe that the compromise embodied in the Swap Stipulation is fair and equitable.

With respect to the first factor articulated by the *A&C Properties* court, all of the parties are in accord, including the First Lien Steering Committee, that the Debtor Mistitled Property properly belongs to the Debtors and that the Rhodes Entities Mistitled Property belongs to the Rhodes Entities. If there were litigation over title, each of the parties would be successful at quieting title on their respectively owned properties.

With respect to the second factor, the difficulties of collection, this factor is inapplicable.

With respect to the third factor, which weighs the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, litigation over the title of the land described herein would be costly, time consuming, and would delay the Arizona Debtors' sale of their Arizona Assets thereby forestalling the flow of proceeds into the Arizona Debtors' estates.

Finally, application of the fourth factor of the *A&C Properties* test, which requires the Bankruptcy Court to consider the paramount interest of creditors, favors approval of the Swap Stipulation. The Swap Stipulation represents a resolution of potential quiet title actions held by the Debtors' Estates and the Rhodes Entities relating to the manner in which title on certain of their land is held. The Swap Stipulation will permit the Arizona Debtors to be able to market and sell the Debtor Mistitled Property for the highest and best bid. In addition, approval of the Swap Stipulation

will ensure a smooth transition for the sale of the Arizona Assets and erase any doubts in a potential purchaser's mind of the quality and nature of title being sold by the Arizona Debtors.

Accordingly, the Bankruptcy Court should approve the Swap Stipulation as a compromise and settlement that is in the best interests of the Debtors, their Estates, and holders of claims and interests.

## NOTICE

Notice of this Motion has been given to (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the secured lenders; (iv) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; (v) counsel to the First Lien Steering Committee; (vi) Counsel to the Rhodes Entities; (vii) the County of Mohave Recorder's Office; (viii) the Arizona Department of Real Estate; and (ix) any interested bidders for these assets, including Stanley Consultants, Inc.  The Arizona Debtors submit that in light of the nature of the relief requested, no other or further notice need be given.

## III.

## CONCLUSION

**WHEREFORE**, the Arizona Debtors respectfully request that the Court approve the Swap Stipulation, authorize the Arizona Debtors and its advisors, agents and representatives to take all actions necessary to implement the Swap Stipulation, and grant such other and further relief as is just and proper under the circumstances.

**DATED** this 12th day of May, 2010.

                          LARSON & STEPHENS

                           */s/ Zachariah Larson, Esq.*
                          Zachariah Larson, Bar No. 7787
                          Kyle O. Stephens, Bar No. 7928
                          810 S. Casino Center Blvd., Suite 104
                          Las Vegas, NV  89101
                          702/382-1170
                          Attorneys for Reorganized Debtors

## DECLARATION OF PAUL D. HUYGENS

I, Paul D. Huygens, being duly sworn, hereby depose and declare under penalty of perjury:

1. I am the Senior Vice President of Special Projects for the Reorganized Debtors.

2. Except as otherwise stated, all facts contained within this Declaration are based upon my personal knowledge (albeit my own or that gathered from others within the Debtors' organization), my review of relevant documents, or my opinion based upon my experience concerning the operations of Rhodes Homes Arizona , LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc., (the "<u>Arizona Debtors</u>"). If called upon to testify, I would testify to the facts set forth in this Declaration.

3. Of the approximate 1,600 acres of land available for sale in connection with the Arizona Assets, approximately 130.57 acres of land is listed by the County of Mohave Recorder's office as not being owned by one of the Arizona Debtors, but instead by one of the Rhodes Entities (the "Debtor Mistitled Property"). Conversely, the Arizona Debtors are listed as record owners of 155.68 acres of land not owned by them, but rather owned by the Rhodes Entities (the "Rhodes Entities Mistitled Property"). Based on the Arizona Debtors and Rhodes Entities' books and records, the Arizona Debtors are the equitable owners of the Debtor Mistitled Property listed on Exhibit A to the Stipulation and the Rhodes Entities the equitable owners of the Rhodes Entities Mistitled Property listed on Exhibit B to the Stipulation.

4. The Arizona Debtors have received approval from the necessary Arizona governmental agencies for a master-planned community ("Pravada"), which may be of value to a third party purchaser. As part of that governmental approval, the map for Pravada contains pre-approved subdivision boundaries, roadway locations, utility locations, house plot lines where homes may be built, and related grading and other physical work product. The Debtor Mistitled Property consists of parcels of land on the boundaries of Pravada that are necessary for any third-party bidder interested in completing the Pravada master plan because the pre-approved subdivision boundaries, roadway locations, utility locations, house plot lines where homes may be built, and related grading and other physical work product cross both the properly-titled Debtor land and the Debtor Mistitled Property.

5. In preparing for this Motion, the Arizona Debtors commissioned an appraisal of the Debtor Mistitled Property and the Rhodes Entities Mistitled Property. A true and correct copy of the executive summary of the appraisal is attached hereto as Exhibit 2. That appraisal shows that, on a stand alone basis, the Rhodes Entities Mistitled Property is approximately $88,500 higher in value than the Debtor Mistitled Property. The appraisal values each parcel of land to be swapped on an individual and standalone basis, and further assumes that larger parcels of land sell at a lower per acre amount and smaller acreage sells at a higher per acre amount. The Reorganized Debtors do not disagree with this appraisal approach in principal provided that each parcel was to be sold on an individual basis and neither the Rhodes Entities Mistitled Property or the Debtor Mistitled Property had any relationship to a larger parcel assemblage. Here, however, where the mistitled land is necessary to complete the contiguous masterplan layout, grading, and other physical work, the Reorganized Debtors assume that a third-party purchaser would pay at least the same amount per acre for the parcels of land needed to complete the masterplan layout as they would a random scattered site parcel (if not significantly more). Applying that logic, by the Reorganized Debtors' estimation, the Rhodes Entities Mistitled Property is either equivalent to, or at worst an inconsequential amount higher, in value than the Debtor Mistitled Property.

6. In the Reorganized Debtors' judgment, the failure of the Debtor Mistitled Property to be properly titled in the name of the Arizona Debtors would negatively impact the value of the Arizona Assets that are for sale under the Bidding Procedures. The Debtor Mistitled Property is necessary to complete the boundaries of the governmentally-approved master plan and is necessary to complete both major and subdivision level land development improvements and homes along the pre-approved plot lines if a third-party purchaser intends to complete the Pravada development. Therefore, in order to maximize the value of the Arizona Assets, the Parties have agreed to enter into the Swap Stipulation, subject to approval of the Bankruptcy Court. If this Motion is granted, a third-party purchaser would not need to institute quiet title actions and the like to affirm the true ownership of the Debtor Mistitled Property.

73203-002\DOCS_LA:216539.4

7. I believe that the proposed Swap Settlement results in a fair and equitable compromise for the estates and is necessary to maximize the value of the Arizona Assets for sale to a third party purchaser.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 12th day of May, 2010, at Las Vegas, Nevada.

                                                  */s/Paul D. Huygens*
                                                    Paul D. Huygens

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[2]<br><br>Debtors.<br><br>_____<br><br>Affects:<br>☐ All Debtors<br>☒ Affects the following Debtor(s)<br><br>Rhodes Homes Arizona , LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc. | Case No.: 09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>Hearing Date:<br>Hearing Time:<br>Courtroom 1 |

**ORDER GRANTING MOTION OF REORGANIZED DEBTORS FOR ORDER APPROVING STIPULATION RE QUITCLAIMING CERTAIN ARIZONA ASSETS TO CLARIFY TITLE [DOCKET NO. ____]**

---

[2] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09- 14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20 LLC (Case No. 09-14848); Tuscany Acquisitions IV LLC (Case No. 09-14849); Tuscany Acquisitions III LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, LLC (Case No. 09- 14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

73203-002\DOCS_LA:216539.4

10

Upon consideration of the *Motion of Reorganized Debtors for Order Approving Stipulation re Quitclaiming Certain Arizona Assets to Clarify Title* [Docket No. ___] (the "Motion")[3] and good cause appearing, it is hereby ORDERED that

1. The Motion is granted.

2. The Stipulation attached hereto as Exhibit "1" is approved.

3. The Debtors are authorized to quitclaim the Rhodes Entities Mistitled Property to the Rhodes Entities in exchange for the Rhodes Entities quitclaiming the Debtor Mistitled Property to the Debtors. The Debtors are authorized to file this Order or a form of quitclaim deed with the County of Mohave Recorder's office to effectuate such transfer.

Submitted by:
DATED this 21st day of June, 2010.

By:  */s/Zachariah Larson*
LARSON & STEPHENS
Zachariah Larson, Esq. (NV Bar No 7787)
Kyle O. Stephens, Esq. (NV Bar No. 7928)
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
(702) 382-1170 (Telephone)
(702) 382-1169
zlarson@lslawnv.com
*Attorney for Debtors and Debtors in Possession*

---

[3] All defined terms not defined herein shall have the same meaning as in the Motion.

73203-002\DOCS_LA:216539.4

## **LR 9021 Certification**

In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

___ The court has waived the requirement of approval under LR 9021.

___ This is a chapter 7 or 13 case, and either with the motion, or at the hearing, I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

___ This is a chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

___ I certify that I have served a copy of this order with the motion, and no parties appeared or filed written objections.

* * *

73203-002\DOCS_LA:216539.4

# EXHIBIT 1

# EXHIBIT A – DEBTOR MISTITLED PROPERTY

**LIST OF ALL PARCELS TO BE QUITCLAIMED TO DEBTORS FROM RHODES ENTITIES (NON-DEBTOR)**

| | | |
|---|---|---:|
| PRAVADA | AREA 1 | 60.64 |
| PRAVADA | AREA 2 | 13.39 |
| PRAVADA | AREA 3 | 33.25 |
| PRAVADA | AREA 4 | 23.29 |
| | TOTAL: | 130.57 |

# EXHIBIT B – RHODES ENTITIES MISTITLED PROPERTY

LIST OF ALL PARCELS TO BE QUITCLAIMED TO RHODES ENTITIES (NON-DEBTOR) FROM DEBTORS

| APN | Acres |
|---|---|
| 306-63-009 | -8.0 |
| 306-63-010 | -8.0 |
| 306-63-011 | -8.0 |
| 306-63-012 | -8.0 |
| 306-63-013 | -8.0 |
| 306-24-091 | -20.57 |
| 354-34-045a | -30.01 |
| AREA "A" | -1.17 |
| AREA "B" | -44.13 |
| AREA "C" | -10.42 |
| AREA "D" | -9.36 |
| TOTAL: | -155.7 |





T 022 N
R 018 W
022N018W
T 022 N
R 017 W
022N017W
T 022 N
R 016 W
022N016W
022N015W
T 022 N
R 015 W
354-34-045A
MORROW AVE
KINGMAN
LOUISE AVE
PINTO RD
T 021 N
R 018 W
021N018W
021N017W
T 021 N
R 017 W
BEALE ST
021N016W
T 021 N
R 016 W
021N015W
T 021 N
R 015 W
PRAVADA
T 020 N
R 018 W
020N018W
020N017W
T 020 N
R 017 W
020N016W
T 020 N
R 016 W
020N015W
T 020 N
R 015 W
019N018W
019N017W
019N016W
019N015W

# EXHIBIT 2

**Woods Appraisal Services**
Real Estate Appraising
Molly Woods, SRA

1880 Lucille Ave., Ste 1
Kingman, AZ 86401
Phone: (928) 753-2282   Fax: (928) 753-2420
Email: woods2@citlink.net

Date: April 7, 2010
To: Winchester Carlisle on behalf of Rhodes Homes Arizona, LLC
Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc in March 2010
4730 Fort Apache Rd., Suite 300
Las Vegas, NV 81947

RE:  Executive Summary

An assignment to determine the value of several vacant properties in Mohave County, Arizona was tendered by Winchester Carlisle on behalf of Rhodes Homes Arizona, LLCRhodes Arizona Properties, LLC, and Elkhorn Investments, Inc in March 2010. There were fifteen individual parcels considered. Fourteen of these properties were either in or near the Pravada Development, in the southern portion of Golden Valley, between Kingman, Arizona and Bullhead City, Arizona. According to Mohave County records, all parcels are held by Rhodes Homes Arizona LLC which is presently in bankruptcy proceedings. With one exception, the parcels located within the Pravada Development are not legal entities with no assessor's parcel number. The one exception is Area A, which was acquired from the City of Kingman as a well site and is a legal parcel.

The objective of the assignment is to determine the value of each individual parcel to aid in the equitable distribution of the above. A proposed division of the properties from the client is as follows:

## TO GO INTO DEBTORS ESTATE

| Pravada | | Opinion of Value |
|---|---|---|
| Area 1 | 60.64 Acres | $70,500 |
| Area 2 | 13.39 Acres | 14,000 |
| Area 3 | 33.25 Acres | 38,000 |
| Area 4 | 23.29 Acres | 24,000 |
| Total Area | 130.57 Acres | Total Value $146,500 |

## TO GO OUT OF DEBTOR'S ESTATE

| Pravada | | |
|---|---|---|
| Area A | 1.17 Acres | $5,100 |
| Area B | 44.13 Acres | 51,900 |
| Area C | 10.42 Acres | 23,600 |
| Area D | 9.36 Acres | 22,000 |

| Adjacent Parcels | | |
|---|---|---|
| 306-63-009 | 8.00 Acres | 17,500 |
| 306-63-010 | 8.00 Acres | 13,000 |
| 306-63-011 | 8.00 Acres | 13,000 |
| 306-63-012 | 8.00 Acres | 13,000 |
| 306-63-013 | 8.00 Acres | 13,000 |
| 306-24-091 | 20.57 Acres | 30,000 |

| Outlying Parcel - | | |
|---|---|---|
| 354-34-045A | 30.01 Acres | 33,000 |
| Total Area | 155.66 Acres | Total Value $235,000 |

The difference in value between the properties going out of the estate and those to be included is **$88,500 (Eighty-Eight Thousand, Five Hundred U.S. Dollars).**

None of the sites located in Pravada have available water or power service. All of the outlying properties do have power available but none have water service.

The subject properties at the present time are not marketable. The property located in Pravada is further compromised, with the exception of Area A, because they are not legal independent parcels. For the Pravada properties which have not been split from their parent parcels, The opinion of value is <u>not</u> Market Value but rather Investment Value. This distinction is made because implicit in the definition of investment value is the statement "The value of an investment to a particular investor ..... as distinguished from market value which is impersonal and detached.". These properties have no appeal to the typical buyer because they are not legal entities.

The value derived for both the adjacent and outlying parcels as well as Area A, is Market Value because they are legal entities. However the Hypothetical Assumption is made that those parcels are marketable. Since the parcels are presently in bankruptcy proceedings, sales would not be possible until those proceedings have been completed.

The marketability of the Pravada properties, Area A excepted, is different because they are not legal entities. Since the value estimate for those properties is investment value, the Extraordinary Assumption is made that they too are marketable.

Respectfully Submitted,

*[signature]*

J.A. Woods
Certified Appraiser – AZ 20588