James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
scho@pszjlaw.com
wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702/382.1170
Facsimile: 702/382.1169
Email: zlarson@lslawnv.com
Attorneys for Reorganized Debtors

E-File: May 12, 2010

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br><br>Debtors. | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11 |
| Affects:<br>☐ All Debtors<br>☒ Affects the following Debtor(s)<br>Rhodes Homes Arizona, LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc. | |

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf and Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

**LARSON & STEPHENS**
**810 S. Casino Center Blvd., Suite 104**
**Las Vegas, Nevada 89101**
Tel: (702) 382-1170 Fax: (702) 382-1169

**NOTICE OF FILING OF AFFIDAVITS OF PUBLICATION RE ORDER APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN OF THE DEBTORS' ARIZONA ASSETS; (B) APPROVING FORM OF PUBLICATION NOTICE; AND (C) SCHEDULING SALE HEARING DATE [RE DOCKET NO. 1075]**

PLEASE TAKE NOTICE that the above-captioned Reorganized Debtors file the attached **Affidavits of Publication** re *The Kingman Daily Miner*, *The Las Vegas Review Journal* and *The Las Vegas Sun*.

**DATED** this 12th day of May 2010.

**LARSON & STEPHENS**

/s/ Zachariah Larson, Esq.
Zachariah Larson, Bar No. 7787
Kyle O. Stephens, Bar No. 7928
810 S. Casino Center Blvd., Suite 104
Las Vegas, NV 89101
702/382-1170
Attorneys for Debtors and
Debtors in Possession

# AFFIDAVIT OF PUBLICATION

Kingman Daily Miner
3015 Stockton Hill Road, Kingman, AZ 86401
web: www.kingmandailyminer.com · e-mail: legals@kingmandailyminer.com
Phone (928) 753-6397, ext. 242 · Fax (928) 753-5661
*"Serving Kingman since 1882"*

STATE OF ARIZONA )
County of Mohave ) ss.

I, **Melinda Mauser,** being first duly sworn on her oath says:
That she is the Legals Clerk of THE KINGMAN DAILY MINER
An Arizona corporation, which owns and publishes the Miner,
a Daily Newspaper published in the City of Kingman, County of Mohave,
Arizona, that the notice attached hereto, namely,

**United States Bankruptcy Court District of Nevada**
**(BIDDING PROCEDURES)**
**Ad. No. 184385**

Has, to the personal knowledge of affiant, **11th** day of **May, 2010** to the **11th** day of **May, 2010** inclusive without change, interruption or omission, amounting in **1** insertions, made on the following dates:
**5/11/2010**

By: ______________________
Legal Clerk, **11th** Day of **May, 2010**

State of Arizona
County of Mohave

On this 12 day of May, 2010
Legal Clerk, whom I know personally to be the person who signed the above document and she proved she signed it.

Rebecca Munger
Notary Public
My Commission Expires November 30, 2013

OFFICIAL SEAL
REBECCA MUNGER
NOTARY PUBLIC - State of Arizona
MOHAVE COUNTY
My Comm. Expires Nov. 30, 2013


**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEVADA**

In re:
THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,
Debtors.

Case No.: BK-S-09-14814-LBR
(Jointly Administered)

Chapter 11

### BIDDING PROCEDURES

Rhodes Homes Arizona, LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc. (the "Arizona Debtors") each filed a chapter 11 case, which cases are pending in the Bankruptcy Court² and administered under Case No. 09-14814 (LBR). In each instance, the reference to "Arizona Debtors" herein means the Debtors or the Arizona Debtors, as reorganized, pursuant to the plan of reorganization confirmed in their bankruptcy cases. By motion dated February 19, 2010 (the "Motion"), the Arizona Debtors sought, among other things, approval of the process and procedures set forth below (the "Bidding Procedures") through which they will determine the highest and best offer for certain of their assets, which consists primarily of raw land in Arizona, four model homes, four partially-completed homes, miscellaneous office equipment, and other items of personal property including certain intellectual property (the "Arizona Assets"). On March 30, 2010, the Bankruptcy Court entered its order (the "Bidding Procedures Order"), which, among other things, approved these Bidding Procedures. [Docket No. 1075]

Pending a higher and better offer received through these Bidding Procedures, the Arizona Debtors have agreed to sell to certain of their non-Debtor affiliates, the "Rhodes Entities," the Arizona Assets for $1,222,999 (the "Stalking Horse Bid"). The Rhodes Entities will not be receiving a break-up fee or expense reimbursement on account of their efforts as the Stalking Horse Bidder.

There are certain parcels of land owned by the Arizona Debtors that are not duly reflected as owned by the Arizona Debtors based on the County of Mohave Recorder's Office records, but rather as being owned by the Rhodes Entities, and vice versa. The parties have agreed to enter into a stipulation to resolve these title issues, which will be duly noticed for hearing before the Bankruptcy Court as soon as possible.

In connection with the Arizona Assets, the Arizona Debtors have not yet determined whether or not they will sell or seek to transfer the work product or intellectual property in which Stanley Consultants, Inc. ("Stanley") has asserted a property interest as set forth in the exhibits to Creditor Stanley Consultants, Inc.'s Objection to Sufficiency of Disclosure Statement for the Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code for the Rhodes Companies, LLC, et. al. [Docket No. 617] (the "Stanley Materials"). Prior to marketing the Arizona Assets with the Stanley Materials included as part of the Arizona Assets or the transfer of any Stanley Materials, the Debtors or Reorganized Debtors, as applicable, shall (i) obtain an order from the Bankruptcy Court determining the extent of the Debtors' interests or Reorganized Debtors' interests, as applicable, in such Stanley Materials that the Debtors can transfer under applicable law or (ii) shall file a notice of intention to not sell the Stanley Materials and Stanley shall retain the right to dispute the transfer of the Stanley Materials (the earlier of (i) or (ii) shall be the "Determination Date").

On September 13, 2010 at 9:30 a.m., as further described below, in the Motion and in the Bidding Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Arizona Debtors shall seek entry of the Sale Order authorizing and approving the sale of the Arizona Assets (the "Transaction") to the Qualified Bidder (defined below) that the Arizona Debtors, with the consent of the First Lien Steering Committee, determine to have made the highest and/or best offer, subject to Bankruptcy Court approval.

### PURCHASE PRICE

The minimum purchase price for the Arizona Assets shall be $1,222,999 (the "Purchase Price"). The Transaction is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code §§ 363 and 365. The Successful Bidder shall also be responsible for all cure costs associated with assuming any contracts associated with any of the Arizona Assets, which the Arizona Debtors estimate to be $0.00.

### PARTICIPATION REQUIREMENTS

In addition to the Bid requirements set forth below, in order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in the Arizona Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Arizona Debtors and the Notice Parties (defined below) an executed confidentiality agreement in form and substance acceptable to the Arizona Debtors and the First Lien Steering Committee (a "Confidentiality Agreement").

### ACCESS TO DUE DILIGENCE MATERIALS

Only Potential Bidders that execute and deliver a Confidentiality Agreement are eligible to receive due diligence access or additional non-public information. The Arizona Debtors will prepare a due diligence package that discloses, among other things, issues related to current zoning, set-back requirements, water, gas, telephone and other utility availability (the "Due Diligence Package"). The Arizona Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. The Arizona Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Arizona Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Bidders in connection with the sale of the Arizona Assets, whether provided as part of the due diligence by the Debtors or otherwise. Furthermore, in accepting the Due Diligence Package, Bidder shall be deemed to acknowledge that the Arizona Debtors make no representations or warranties regarding the nature or quality of the Arizona Assets and the Arizona Debtors will not be liable for any inaccurate or incomplete information provided to the Bidder and the Bidder retains the sole and exclusive responsibility to independently confirm any and all information provided by the Arizona Debtors. The Due Diligence Package shall not include Stanley Materials until after the Determination Date.

### DUE DILIGENCE FROM BIDDERS

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Arizona Debtors or its advisors or the First Lien Steering Committee or its advisors regarding such Bidder and its contemplated transaction. Failure by a Bidder to comply with requests for additional information and due diligence access will be a basis for the Arizona Debtors to determine, with the consent of the First Lien Steering Committee, that the Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Arizona Debtors, with the consent of the First Lien Steering Committee, to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

### BIDDING PROCESS

The Arizona Debtors shall, prior to the Bid Deadline: (i) with the consent of the First Lien Steering Committee, determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Potential Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; (iv) together with the First Lien Steering Committee, negotiate any offers made to purchase the Arizona Assets (collectively, the "Bidding Process"). The Arizona Debtors, with the consent of the First Lien Steering Committee, shall have the right to adopt such other rules for the Bidding Process that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

### BID DEADLINE

The deadline for submitting bids by a Qualified Bidder shall be August 30, 2010, at 4:00 p.m. (Pacific Time) (the "Bid Deadline").

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its Bid by electronic mail to the following Notice Parties by the Bid Deadline: (i) the Arizona Debtors, 4730 S. Fort Apache Rd., Ste. 300, Las Vegas, NV 89147, Attn: Bruce Jorgensen, General Counsel, bjorgensen@rhodeshomes.com and Paul Huygens, phuygens@provinceadvisors.com; (ii) counsel for the First Lien Steering Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Philip C. Dublin, Esq., pdublin@akingump.com; (iii) counsel for the Rhodes Entities, Greenberg Traurig, LLP, 3773 Howard Hughes Parkway, Suite 400 North, Las Vegas, NV 89169, Attn: Brett Axelrod, axelrodb@gtlaw.com; (iv) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th Fl., Los Angeles, CA 90067, Attn: Shirley S. Cho, scho@pszjlaw.com; and (v) counsel for the Committee of Unsecured Creditors, Parsons Behle & Latimer, One Utah Center, 201 S. Main St., Ste. 1800, PO Box 45898, Salt Lake City, UT 84145-0898, Attn: J. Thomas Beckett, jbeckett@parsonsbehle.com; (v) counsel to Agent for First Lien Lenders, Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Ste. 3400, Los Angeles, CA 90071, Attn: Ramon M. Naguiat, ramon.naguiat@skadden.com; and (vi) counsel to Agent for Second Lien Lenders, Ropes & Gray, 1211 Avenue of the Americas, New York, New York 10036-8704, Attn: Mark R. Somerstein, mark.somerstein@ropesgray.com.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

### BID REQUIREMENTS

To be eligible to participate in the Auction, each Bid and each Bidder submitting such a Bid must be determined by the Arizona Debtors, with the consent of the First Lien Steering Committee, to satisfy each of the following conditions:

Executed Asset Purchase Agreement. Each bid must be accompanied by an executed asset purchase agreement (and which must be acceptable to the First Lien Steering Committee), which will be provided by the Debtors no later than 30 days prior to the Sale Hearing, without any changes to the form of the agreement.

Executory Contracts. Each bid must identify any executory contracts that the Potential Bidder wishes to be assigned to it, with a commitment to pay any and all cure costs. The Arizona Debtors reserve the right not to assign the executory contract to the Potential Bidder in their sole and absolute discretion.

Minimum Bid. The consideration proposed by the Bid may include only cash. The aggregate consideration must equal or exceed the sum of the Purchase Price ($1,222,999) plus $200,000 ("Initial Minimum Overbid Increment").

Good Faith Deposit. Each Bid must be accompanied by (i) 50% of the Purchase Price and Initial Minimum Overbid Increment, or $811,499.50 (except for the Stalking Horse Bid which need only be accompanied by 50% of the Purchase Price, or $611,499.50) in the form of a certified check or cash payable to the order of Nevada Title Company or by wire transfer (which account information will be made available upon request) or irrevocable letter of credit; and (ii) a letter from a financial institution showing proof of funds for the remaining 50% of the Purchase Price, or $611,499.50, which letter shall be reasonably acceptable to the Arizona Debtors (with the consent of the First Lien Steering Committee).

Indemnification for Bond. Each Bid must be accompanied by an agreement that the Bidder will either (i) post a replacement bond or post cash in lieu of the Debtors' current bond issued by Bond Safeguard (Bond No. 5022081) dated May 9, 2006 (the "Grading Bond") in the form acceptable to the Arizona Debtors; or (ii) indemnify the Arizona Debtors for any negative consequences from the Grading Bond, which indemnification shall be supported by a first priority deed of trust to be recorded against the Arizona Assets in

AFFP DISTRICT COURT
Clark County, Nevada

AFFIDAVIT OF PUBLICATION

STATE OF NEVADA)
COUNTY OF CLARK) SS:

STACEY M. LEWIS, being 1st duly sworn, deposes and says: That she is the Legal Clerk for the Las Vegas Review-Journal and the Las Vegas Sun, daily newspapers regularly issued, published and circulated in the City of Las Vegas, County of Clark, State of Nevada, and that the advertisement, a true copy attached for,

SITRICK ADVERTISING 6773511SIT 6319543

was continuously published in said Las Vegas Review-Journal and / or Las Vegas Sun in 1 edition(s) of said newspaper issued from 05/11/2010 to 05/11/2010, on the following days:

05/11/2010

EMILY GONZALEZ
Notary Public State of Nevada
No. 09-8940-1
My appt. exp. Nov. 13, 2012

Signed Stacey M. Lewis

SUBSCRIBED AND SWORN BEFORE ME THIS, THE

12th day of May, 2010.

Emily Gonzalez
Notary Public

## Legal Notices

### Storage Lien Sale
### MINI-MASTERS STORAGE

6900 W. CRAIG RD.
LAS VEGAS NV 89108
(702) 658-0102

A claim has been placed on the goods stored in MINI-MASTERS STORAGE, 6900 West Craig Rd. Las Vegas, Nevada 89108 to recover past due charges owed to MINI-MASTERS STORAGE. All units will be sold to the highest bidders on TUESDAY, MAY 25, 2010 at 10:30 A.M. All owners of units must pay charges owed in full on or before Time of Auction. Cash or Money Orders Only. The property to be sold consists of furniture, household items, books, clothing, stereos, T.V.'s., toys, luggage, bedding, and many other items that are stored by or for the following parties:

■D-78 JAMES GILGALLON 10X15
■4-54 ELI PRINCE 10X15
■C-58 RALPH & TINA BENAVILEZ 5X5
■F-11 LOREN BROADBENT 10X20
■4-16 CLARK ELECTRIC 10X10
■2-178 KATRINA GILLYARD 10X15
■3-155 CAROLL GRUBER 5X10
■A-15 TY JAMES 10X20
■4-3 JAMES JANKOWSKI 10X10
■4-51 CARL MITCHELL 10X15

MINI-MASTERS STORAGE reserves the right to bid on any or all units and accept or reject any or all bids if deemed in the best interest of MINI-MASTERS. Bidders must register at the office before auction. Units will be sold in their entirety. All sales are final and for cash only. A cash deposit may be collected on each unit purchased, the amount to be determined at time of auction. All property must be removed during our office hours within 24 hrs., after which time deposit will be returned. No exceptions.

PUB: May 11, 18, 2010
LV Review-Journal

### NOTICE OF INTENT TO ACT ON A RESOLUTION TO AUGMENT THE CLARK COUNTY REDEVELOPMENT AGENCY FUND (2350) BUDGET

NOTICE IS HEREBY GIVEN that the Board of County Commissioners of Clark County, State of Nevada, will act on a Resolution to Augment the Clark County Redevelopment Agency Fund (2350) Budget for the Fiscal Year 2009-10 in the amount of $3,300,760 in order to appropriate previously unbudgeted resources for distribution of the Agency's remaining funds.

The public hearing on the augmentation will be held at a meeting at the Clark County Commission Chambers, 1st Floor, of the Clark County Government Center, 500 S. Grand Central Parkway, Las Vegas, Nevada 89155, on the 18th day of May, 2010, at 10:00 a.m., at which time all persons may attend and be heard. Prior to the hearing, written comments may be filed with the County Clerk and the County Manager at their offices on the sixth floor of the Clark County Government Center, 500 S. Grand Central Parkway, Las Vegas, Nevada 89155. These comments will be considered.

BOARD OF COUNTY COMMISSIONERS CLARK COUNTY, NEVADA
/s/ RORY REID, Chairman
ATTEST: /s/ DIANA ALBA
COUNTY CLERK
PUB: May 11, 2010
LV Review-Journal

### NOTICE OF PUBLIC SALE OF ABANDONED PROPERTY

Notice is hereby given that pursuant to Sections 21701-21715 of the Business and Professions Code, Section 2328 of the Commercial Code, Section 535 of the Penal Code.

**MALIBU MINI STORAGE**
**4866 E. RUSSELL ROAD**
**LAS VEGAS, NV 89120**

will sell by competitive bidding on **MAY 24, 2010 at 11:00 a.m.** Auction to be held at the previous address. Property to sold as follows: misc. items and boxes, contents unknown belonging to the following:

**UNIT# / NAME**
■J151 Brett Morgan
■K230 Pedro Gomez
■F122 Diesta Krahn
■G249 Jesse Cisneros
■F249 Andre Thomas
■F106 Carmen Garcia
■I111 Trina Jester
■J118 Juan Sanchez
■H133 Michael Petty
■G239 Kimberly Bowman

**Auctioneer:**
Patrick Sievwright,
West Coast Auctions,
State License #WL1-1109970
Phone: 480-226-1057
PUB: May 7, 11, 2010
LV Review-Journal

### NOTICE OF SALE

Notice is hereby given to the last Registered and Legal Owner of:
2001 Sport Boat Boat Trailer
VIN 4FBBC202711008122
R/O Phillip Sandlin
L/O Phillip Sandlin
This vehicle described above will be sold at a public auction to the highest bidder to satisfy the lien incurred by BOULDER BOATS. The sale will be held at 9:00 a.m. on June 3, 2010 at 1495 Nevada Hwy, Boulder City, NV 89005
PUB: May 11, 18, 25, 2010
LV Review-Journal

### LIEN SALE

Public Auction will be held to recover charges owed with all contents in Storage Unit B4 on May 30, 2010 @ 10:00am
VANQUISH MINI STORAGE
4623 North Lamb Blvd.
Las Vegas, Nevada 89030
Year: 1929 Make: Chevy
VIN: 3LQ 6530 Vehcl Type: Truck
Name: Hector Ramirez.
Advertiser has right to bid.
PUB: May 4, 11, 18, 2010
LV Review-Journal

## Legal Notices

### Storage Lien Sale
### ALL STORAGE

PERSONAL PROPERTY & HOUSEHOLD ITEMS WILL BE SOLD AT PUBLIC AUCTION TO RECOVER CHARGES OWED FOR THE FOLLOWING ALL STORAGE PROPERTIES ON MAY 25, 2010:

CANYON GATE MINI STORAGE/ ALL STORAGE AT CANYON GATE,
8055 W. SAHARA,
LAS VEGAS, NV 89117
AUCTION TIME 9:30 AM
UNIT#/NAME
■B142 ROBERT STITZER
■B154 FRANK CIRO
■L023 LOGAN MCDANIEL
■L062 ROBERT LAWSON
■L189 HICHAM ALLAM
■L196 DELIA THOMAS
■U101 VINCENT J. LORI
■U142 LAWRENCE BUTCHER
■U244 LEANNE GARNHAM
■U270 CARLOS GOMES
■U466 DARYL KIMBLE
■L38 CANYON GATE AUCTION UNIT

ALL STORAGE AT SOUTH SUMMERLIN, 9440 PEACE WAY,
LAS VEGAS, NV 89147
AUCTION TIME 10:00 AM
UNIT#/NAME
■32 TASHA COMMODORE
■37 LISA INGRAM
■64 TYGHE WILLIAMS
■115 RALPH BLANKENSHIP
■217 JESSICA MOTTA
■314 DEBRA BANDY

ALL STORAGE HORIZON RIDGE
2620 W. HORIZON PKWY.
HENDERSON, NV 89052
AUCTION TIME 10:00 AM
UNIT#/NAME
■366 GEOFFREY SCHAFLER
■434 KENT PETERSEN
■335 MICHAEL PARKER
■369 MACKENZIE PACHTINGER
■359 TRAVIS CHAMBERLIN
■489 HERLENE CLAYTON
■B267 JASON JORJORIAN
■B230 CARA HAYNES
■B297 DAVE BACUS
■B414 LUIS ACEVES
■B487 IRA CALLENS

ALL STORAGE AT THE LAKES
2949 LAKE EAST DRIVE
LAS VEGAS, NV 89117
AUCTION TIME 10:00 AM
■4 JEFF HOLT
■71 TONY TIMMONS
■322 SHEILA PRIMAKY
■191 ANASTASIA QUEZADA

SEVEN HILLS SELF STORAGE/ ALL STORAGE IN SEVEN HILLS
999 BEASLEY STREET,
HENDERSON, NV 89052
AUCTION TIME 10:00 AM
UNIT#/NAME
■D55, D57 JAY BLOCK
■C921 IDA M. COOPER
■X243 ERIC DITTMAR
■D59 DONALD E. GLASS
■X319 SAMSON JAMES
■C883 TED HUGHES

PUB: May 11, 18, 2010
LV Review-Journal

Las Vegas-Clark County
**LIBRARY DISTRICT**

### PUBLIC NOTICE

NOTICE IS HEREBY given that the Board of Trustees of the Las Vegas-Clark County Library District will hold a public hearing on THURSDAY, MAY 20, 2010, at 6:00 p.m. in the Multi-purpose Room of the Las Vegas Library, 833 Las Vegas Boulevard North, Las Vegas, Nevada, on the tentative Las Vegas-Clark County Library District budget for the fiscal year beginning July 1, 2010.

Copies of the tentative budget prepared on forms and in such detail as is prescribed by the Nevada Department of Taxation, is on file for public inspection with the Office of the Secretary to the Board of Trustees of the Las Vegas-Clark County Library District at his office at the Las Vegas Library, 833 Las Vegas Boulevard North, Las Vegas, Nevada and with the County Clerk at her office in the Government Center, 500 S. Grand Central Parkway, Las Vegas, Nevada.

PUB: May 11, 2010
LV Review-Journal

### State Of Nevada, Office Of The Labor Commissioner

### NOTICE TO CONTRACTORS 2010 PREVAILING WAGE SURVEY

Nevada law (NRS 338.030) requires a survey of wages paid by contractors for the purpose of determining the prevailing wage rates to be used when bidding on and performing public works construction projects. To obtain and complete the survey form, contractors can visit our website at **www.LaborCommissioner.com.** Completed surveys are due on or before **July 15, 2010.** Late, illegible, incomplete, faxed, or emailed surveys that cannot be verified will be rejected.

PUB: April 27, May 11, 2010
LV Review-Journal

### PUBLIC AUCTION

LA FERIA INVESTMENT LLC
3851 Pennwood Ave
Suite #152, Las Vegas, NV 89102
SALE DATE: MAY 17, 2010
10:00 A.M.
Household goods, furniture, used clothing, toys in following units will be sold for unpaid storages.
UNIT/NAME
■E-01 DOUGH HOLMAN
■E-12 COCHISE PORTER
■F-17, F-18 CRAIG MOORE
Advertiser reserves the right to bid.
PUB: May 11, 16, 2010
LV Review-Journal

SUMM CASE NO. A-09-605437-C
DEPT. NO. XX
DISTRICT COURT
CLARK COUNTY, NEVADA
ANN PASHAK, an individual; Plaintiff v. ADRIAN PETITA, an Individual; DOES I-X; and ROE CORPORATIONS I-X, Defendants
SUMMONS
NOTICE: YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD

## Legal Notices

UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.
TO THE DEFENDANT(S): A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.
*ADRIAN PETITA*
*Complaint for Negligence*
1. If you intend to defend this lawsuit, within 20 days after this Summons is served on you exclusive of the day of service, you must do the following: (a) File with the Clerk of this lawsuit, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with appropriate filing fee. (b) Serve a copy of your response upon the attorney whose name and address is shown below. 2. Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint. 3. If you intend to seek the advise of an attorney in this matter, you should do so promptly so that your response may be filed on time. 4. The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators, each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.
Submitted by: Sean K. Claggett, Esq. Nevada Bar No. 008407. William T. Sykes, Esq. Nevada Bar No. 009916
CLAGGETT & ASSOCIATES
9910 W. Cheyenne Ave 110,
Las Vegas, NV 89129
Attorney for the Plaintiffs
STEVEN D. GRIERSON, CLERK OF COURT. By: ALYSE HAMILTON
Deputy Clerk Date DEC 9 2009
Clark County Courthouse
200 Lewis Avenue
Las Vegas, NV 89155
PUB: May 11, 18, 25, June 1, 8, 2010
LV Review-Journal

2:08-CR-269-JCM (RJJ)
DANIEL G. BOGDEN
United States Attorney
DANIEL D. HOLLINGSWORTH
Assistant United States Attorney
Lloyd D. George United States Courthouse
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336 (702) 388-6787 (fax)
UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
UNITED STATES OF AMERICA, Plaintiff, v. MARCO ANTONIO-SANCHEZ, aka Marco Sanchez-Urquidez, AND MARIO PEREZ-AGUILAR, aka German Ruiz-Gutierrez, Defendants.
NOTICE
NOTICE IS HEREBY GIVEN that on February 10, 2010, the United States District Court for the District of Nevada entered a Preliminary Order of Forfeiture forfeiting the following property of MARCO ANTONIO-SANCHEZ, aka Marco Sanchez-Urquidez to the United States of America:
NOTICE IS HEREBY FURTHER GIVEN that on March 16, 2010, the United States District Court for the District of Nevada entered a Preliminary Order of Forfeiture forfeiting the following property of MARIO PEREZ-AGUILAR, aka German Ruiz-Gutierrez to the United States of America:
a. a Springfield Chamber, .45 caliber pistol, serial number N508436;
b. a Springfield Chamber magazine loaded with eight (8) rounds of ammunition; and
c. a Springfield Chamber magazine loaded with seven (7) rounds of ammunition.
Pursuant to Title 21, United States Code, Section 853(n)(2), if you have a legal interest in the aforementioned property you must petition the United States District Court for the District of Nevada for a hearing to adjudicate the validity of your alleged legal interest in this property within thirty days of receipt of this Notice or the final publication of this Notice, whichever occurs first. If a hearing is requested, it shall be held before the court alone, without a jury.
The Petition must be signed by the petitioner under penalty of perjury, pursuant to Title 21, United States Code, Section 853(n)(3) and Title 28, United States Code, Section 1746 and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the acquisition of the right, title, or interest in the property and any additional facts supporting the claim and the relief sought.
The petition shall be filed with the United States District Court Clerk, District of Nevada, at the following location: 333 Las Vegas Boulevard South, Las Vegas, Nevada. A copy of the petition shall also be served upon the United States as follows:
Daniel D. Hollingsworth
Assistant United States Attorney
District of Nevada
Lloyd D. George United States Courthouse
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
Pursuant to Title 21, United States Code, Section 853(n)(2) NEITHER A DEFENDANT IN THIS CASE, NOR HIS AGENT, IS ENTITLED TO FILE A PETITION.
Any hearing on the petition shall, to the extent practical and consistent with the interest of justice, be held within thirty days of the filing of the petition. The Court may consolidate the hearing on the petition with any other hearings requested on any other petitions filed by any other person other than the defendant named above.
The petitioner has the right at the hearing to testify and present evidence and witnesses on its own behalf and cross examine witnesses who appear at the hearing.
If the petitioner fails to file a petition to assert its right, title, or interest in the above-described property within thirty days of this notice or the final publication, whichever occurs first, the right, title, and interest in the property shall be lost and forfeited to the United States of America. The United States of America shall have clear title to the property herein described.
DANIEL G. BOGDEN
United States Attorney
/s/DANIEL D. HOLLINGSWORTH
PUB: May 11, 18, 25, 2010
LV Review-Journal

## • PUBLIC HEARING •

### NOTICE OF PUBLIC HEARING ON THE REGIONAL TRANSPORTATION COMMISSION FISCAL YEAR 2011 TENTATIVE BUDGET THURSDAY, MAY 20, 2010 8:45 A.M.

Regional Transportation Commission
600 S. Grand Central Parkway, Room 108
Las Vegas, NV 89106

In accordance with Nevada Revised Statutes (NRS 354.596) notice is hereby given that a public hearing will be held to present the Fiscal Year 2011 Tentative Budget for the Regional Transportation Commission of Southern Nevada. Said Tentative Budget has been prepared in such detail and on appropriate forms as prescribed by the Nevada Department of Taxation.

Copies of the Fiscal Year Tentative Budget can be viewed at the Regional Transportation Commission, 600 S. Grand Central Parkway, Las Vegas, NV, or at the Office of the County Clerk, 500 S. Grand Central Parkway, Las Vegas, NV.

Questions: Contact Marc Traasdahl
Regional Transportation Commission
600 S. Grand Central Parkway
Las Vegas, NV 89106
Phone: (702) 676-1500
TDD: (702) 676-1834
www.rtcsnv.com

PUB: May 11, 2010 LV Review-Journal

RTC

### UNITED STATES BANKRUPTCY COURT DISTRICT OF NEVADA

| | |
|---|---|
| In re: THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al., Debtors. | Case No.: BK-S-09-14814-LBR (Jointly Administered) Chapter 11 |

**BIDDING PROCEDURES**

Rhodes Homes Arizona, LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc. (the "Arizona Debtors") each filed a chapter 11 case, which cases are pending in the Bankruptcy Court[2] and administered under Case No. 09-14814 (LBR). In each instance, the reference to "Arizona Debtors" herein means the Debtors or the Arizona Debtors, as reorganized, pursuant to the plan of reorganization confirmed in their bankruptcy cases. By motion dated February 19, 2010 (the "Motion"), the Arizona Debtors sought, among other things, approval of the process and procedures set forth below (the "Bidding Procedures") through which they will determine the highest and best offer for certain of their assets, which consists primarily of raw land in Arizona, four model homes, four partially-completed homes, miscellaneous office equipment, and other items of personal property including certain intellectual property (the "Arizona Assets"). On March 30, 2010, the Bankruptcy Court entered its order (the "Bidding Procedures Order"), which, among other things, approved these Bidding Procedures. [Docket No. 1075]

Pending a higher and better offer received through these Bidding Procedures, the Arizona Debtors have agreed to sell to certain of their non-Debtor affiliates, the "Rhodes Entities," the Arizona Assets for $1,222,999 (the "Stalking Horse Bid"). The Rhodes Entities will not be receiving a break-up fee or expense reimbursement on account of their efforts as the Stalking Horse Bidder.

There are certain parcels of land owned by the Arizona Debtors that are not duly reflected as owned by the Arizona Debtors based on the County of Mohave Recorder's Office records, but rather as being owned by the Rhodes Entities, and vice versa. The parties have agreed to enter into a stipulation to resolve these title issues, which will be duly noticed for hearing before the Bankruptcy Court as soon as possible.

In connection with the Arizona Assets, the Arizona Debtors have not yet determined whether or not they will sell or seek to transfer the work product or intellectual property in which Stanley Consultants, Inc. ("Stanley") has asserted a property interest as set forth in the exhibits to Creditor Stanley Consultants, Inc.'s Objection to Sufficiency of Disclosure Statement for the Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code for the Rhodes Companies, LLC, et. al. [Docket No. 617] (the "Stanley Materials"). Prior to marketing the Arizona Assets with the Stanley Materials included as part of the Arizona Assets or the transfer of any Stanley Materials, the Debtors or Reorganized Debtors, as applicable, shall (i) obtain an order from the Bankruptcy Court determining the extent of the Debtors' interests or Reorganized Debtors' interests, as applicable, in such Stanley Materials that the Debtors can transfer under applicable law or (ii) shall file a notice of intention to not sell the Stanley Materials and Stanley shall retain the right to dispute the transfer of the Stanley Materials (the earlier of (i) or (ii) shall be the "Determination Date").

On September 13, 2010 at 9:30 a.m., as further described below, in the Motion and in the Bidding Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Arizona Debtors shall seek entry of the Sale Order authorizing and approving the sale of the Arizona Assets (the "Transaction") to the Qualified Bidder (defined below) that the Arizona Debtors, with the consent of the First Lien Steering Committee, determine to have made the highest and/or best offer, subject to Bankruptcy Court approval.

**PURCHASE PRICE**

The minimum purchase price for the Arizona Assets shall be $1,222,999 (the "Purchase Price"). The Transaction is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code §§ 363 and 365. The Successful Bidder shall also be responsible for all cure costs associated with assuming any contracts associated with any of the Arizona Assets, which the Arizona Debtors estimate to be $0.00.

**PARTICIPATION REQUIREMENTS**

In addition to the Bid requirements set forth below, in order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in the Arizona Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Arizona Debtors and the Notice Parties (defined below) an executed confidentiality agreement in form and substance acceptable to the Arizona Debtors and the First Lien Steering Committee (a "Confidentiality Agreement").

**ACCESS TO DUE DILIGENCE MATERIALS**

Only Potential Bidders that execute and deliver a Confidentiality Agreement are eligible to receive due diligence access or additional non-public information. The Arizona Debtors will prepare a due diligence package that discloses, among other things, issues related to current zoning, set-back requirements, water, gas, telephone and other utility availability (the "Due Diligence Package"). The Arizona Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. The Arizona Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Arizona Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Bidders in connection with the sale of the Arizona Assets, whether provided as part of the due diligence by the Debtors or otherwise. Furthermore, in accepting the Due Diligence Package, Bidder shall be deemed to acknowledge that the Arizona Debtors make no representations or warranties regarding the nature or quality of the Arizona Assets and the Arizona Debtors will not be liable for any inaccurate or incomplete information provided to the Bidder and the Bidder retains the sole and exclusive responsibility to independently confirm any and all information provided by the Arizona Debtors. The Due Diligence Package shall not include Stanley Materials until after the Determination Date.

**DUE DILIGENCE FROM BIDDERS**

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Arizona Debtors or its advisors or the First Lien Steering Committee or its advisors regarding such Bidder and its contemplated transaction. Failure by a Bidder to comply with requests for additional information and due diligence access will be a basis for the Arizona Debtors to determine, with the consent of the First Lien Steering Committee, that the Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Arizona Debtors, with the consent of the First Lien Steering Committee, to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

**BIDDING PROCESS**

The Arizona Debtors shall, prior to the Bid Deadline: (i) with the consent of the First Lien Steering Committee, determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Potential Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; (iv) together with the First Lien Steering Committee, negotiate any offers made to purchase the Arizona Assets (collectively, the "Bidding Process"). The Arizona Debtors, with the consent of the First Lien Steering Committee, shall have the right to adopt such other rules for the Bidding Process that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

**BID DEADLINE**

**The deadline for submitting bids by a Qualified Bidder shall be August 30, 2010, at 4:00 p.m. (Pacific Time) (the "Bid Deadline").**

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its Bid by electronic mail to the following Notice Parties by the Bid Deadline: (i) the Arizona Debtors, 4730 S. Fort Apache Rd., Ste. 300, Las Vegas, NV 89147, Attn: Bruce Jorgensen, General Counsel, bjorgensen@rhodeshomes.com and Paul Huygens, phuygens@provinceadvisors.com; (ii) counsel for the First Lien Steering Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Philip C. Dublin, Esq., pdublin@akingump.com; (iii) counsel for the Rhodes Entities, Greenberg Traurig, LLP, 3773 Howard Hughes Parkway, Suite 400 North, Las Vegas, NV 89169, Attn: Brett Axelrod, axelrodb@gtlaw.com; (iv) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th Fl., Los Angeles, CA 90067, Attn: Shirley S. Cho, scho@pszjlaw.com; and (v) counsel for the Committee of Unsecured Creditors, Parsons Behle & Latimer, One Utah Center, 201 S. Main St., Ste. 1800, PO Box 45898, Salt Lake City, UT 84145-0898, Attn: J. Thomas Beckett, jbeckett@parsonsbehle.com; (v) counsel to Agent for First Lien Lenders, Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Ste. 3400, Los Angeles, CA 90071, Attn: Ramon M. Naguiat, ramon.naguiat@skadden.com; and (vi) counsel to Agent for Second Lien Lenders, Ropes & Gray, 1211 Avenue of the Americas, New York, New York 10036-8704, Attn: Mark R. Somerstein, mark.somerstein@ropesgray.com.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

**BID REQUIREMENTS**

To be eligible to participate in the Auction, each Bid and each Bidder submitting such a Bid must be determined by the Arizona Debtors, with the consent of the First Lien Steering Committee, to satisfy each of the following conditions:

Executed Asset Purchase Agreement. Each bid must be accompanied by an executed asset purchase agreement (and which must be acceptable to the First Lien Steering Committee), which will be provided by the Debtors no later than 30 days prior to the Sale Hearing, without any changes to the form of the agreement.

Executory Contracts. Each bid must identify any executory contracts that the Potential Bidder wishes to be assigned to it, with a commitment to pay any and all cure costs. The Arizona Debtors reserve the right not to assign the executory contract to the Potential Bidder in their sole and absolute discretion.

Minimum Bid. The consideration proposed by the Bid may include only cash. The aggregate consideration must equal or exceed the sum of the Purchase Price ($1,222,999) plus $200,000 ("Initial Minimum Overbid Increment").

Good Faith Deposit. Each Bid must be accompanied by (i) 50% of the Purchase Price and Initial Minimum Overbid Increment, or $811,499.50 (except for the Stalking Horse Bid which need only be accompanied by 50% of the Purchase Price, or $611,499.50), whether in the form of a certified check or cash payable to the order of Nevada Title Company or by wire transfer (which account information will be made available upon request) or irrevocable letter of credit; and (ii) a letter from a financial institution showing proof of funds for the remaining 50% of the Purchase Price, or $611,499.50, which letter shall be reasonably acceptable to the Arizona Debtors (with the consent of the First Lien Steering Committee).

Indemnification for Bond. Each Bid must be accompanied by an agreement that the Bidder will either (i) post a replacement bond or post cash in lieu of the bond for the Debtors' current bond issued by Bond Safeguard (Bond No. 5022081) dated May 9, 2006 (the "Grading Bond") in the form acceptable to the Arizona Debtors; or (ii) indemnify the Arizona Debtors for any negative consequences from the Grading Bond, which indemnification shall be supported by a first priority deed of trust to be recorded against the Arizona Assets in favor of the Arizona Debtors.

Irrevocable. A Bid must be irrevocable until the closing of the transaction with the Successful Bidder (the "Termination Date").

Contingencies. A Bid may not be conditioned on obtaining financing or any internal approval or otherwise be subject to contingencies.

Due Diligence Package. A Bid must be accompanied by an acknowledgement that the Bidder has received the Due Diligence Package.

Proof of Funds. A Bid must contain written evidence of proof of funds in a financial institution for any amount in the Bid that is in excess of the Minimum Bid.

No Fees Payable to Qualified Bidder or Broker. A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bidding Procedures. The Arizona Debtors shall not be responsible for the cost of any fees, commissions, referral fees, etc. for advice, consultation, brokerage, due diligence or other services commissioned or used by a Bidder.

Identification of Potential Bidder. Concurrently with its Bid, identification of the Potential Bidder and any principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

Corporate Authority. Concurrently with its bid, written evidence satisfactory to the Arizona Debtors and the First Lien Steering Committee of the Potential Bidder's board of directors or other similar approval, as applicable, of the contemplated Transaction.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified Bid" and the bidder a "Qualified Bidder" if the Arizona Debtors, with the consent of the First Lien Steering Committee, believe that such Bid would be consummated if selected as the Successful Bid.

In the event that any Potential Bidder is determined by the Arizona Debtors and the First Lien Steering Committee not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit with interest thereon, if any has accrued, on or before the date that is five (5) days after Closing of the Sale.

The Arizona Debtors, with the consent of the First Lien Steering Committee, shall have the right to reject any and all bids that they believe do not comply with the Bidding Procedures.

The Stalking Horse Bid shall be a Qualified Bid, provided that 50% of the Purchase Price is received by the Bid Deadline in cash or by irrevocable letter of credit.

**AUCTION**

If a Qualified Bid (other than the Stalking Horse Bid) is received prior to the Bid Deadline, the Arizona Debtors shall conduct an auction (the "Auction") to determine the highest and best bid with respect to the Arizona Assets. The Auction shall commence at 9:00 a.m. (Pacific Time) on **September 7, 2010 at 1:00 p.m.**, at 4730 S. Fort Apache Road, Suite 300, Las Vegas, NV 89147.

No later than September 3, 2010, the Arizona Debtors will notify all Qualified Bidders of (i) the highest and best Qualified Bid, as determined by the Arizona Debtors and the First Lien Steering Committee (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders.

If no higher and better offer is obtained at the Auction, then the Stalking Horse Bid will be deemed the Successful Bid, and, at the Sale Hearing, the Arizona Debtors will seek approval of and authority to consummate the Transaction with the Rhodes Entities.

The Auction shall be conducted according to the following procedures:

**PARTICIPATION AT THE AUCTION**

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. Only the authorized representatives of each of the Qualified Bidders, the Arizona Debtors, and the First Lien Steering Committee shall be permitted to attend.

**THE ARIZONA DEBTORS SHALL CONDUCT THE AUCTION**

The Arizona Debtors and its professionals shall direct and preside over the Auction. At the start of the Auction, the Arizona Debtors shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Arizona Debtors, with the consent of the First Lien Steering Committee, reasonably deem relevant to the value of the Qualified Bid to the estate (the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Arizona Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. The Arizona Debtors reserve the right to conduct the auction in the manner acceptable to the First Lien Steering Committee and designed to maximize value based upon the nature and extent of the Qualified Bids received.

**TERMS OF OVERBIDS**

An "Overbid" is any bid made at the Auction subsequent to the Arizona Debtors' announcement of the Baseline Bid. Any Overbid after the Baseline Bid shall be made in increments of at least $10,000.

Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Arizona Debtors, with the consent of the First Lien Steering Committee, accept a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).

(a) Announcing Overbids

The Arizona Debtors shall announce at the Auction each Overbid. The Arizona Debtors shall thereafter provide the Buyer and each Qualified Bidder an opportunity to make subsequent Overbids.

The Arizona Debtors, with the consent of the First Lien Steering Committee in each instance, may (a) determine which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interest of the Arizona Debtors, its estate and creditors.

**CONSENT TO JURISDICTION AS CONDITION TO BIDDING**

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

**CLOSING THE AUCTION**

Upon conclusion of the bidding, the Auction shall be closed, and the Arizona Debtors and the First Lien Steering Committee shall immediately identify the highest and best offer for the Arizona Assets (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest and best offer will provide the greatest amount of net value to the Arizona Debtors, and the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid") and the entity submitting the Back-up Bid (the "Back-up Bidder"), and advise the Qualified Bidders of such determination. Upon five (5) business days' prior notice by the Arizona Debtors, the Back-up Bidder selected by the Arizona Debtors and the First Lien Steering Committee must immediately proceed with the closing of the transaction contemplated by the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason.

**ACCEPTANCE OF SUCCESSFUL BID**

The Arizona Debtors shall sell the Arizona Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Arizona Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Arizona Debtors' or First Lien Steering Committee's acceptance of such Qualified Bid. The Arizona Debtors will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Arizona Debtors' and First Lien Steering Committee's selection of the Successful Bidder.

**"AS IS, WHERE IS"**

The sale of the Arizona Assets shall be on an "as is, where is", "with all faults" basis and without representations or warranties of any kind, nature, or description by the Arizona Debtors, its agents or its estate or the First Lien Steering Committee, including without limitation representations and warranties as to physical condition, title, ownership, authorization to sell, acreage, leases, rents, revenues, income, expenses, operation, zoning or other regulation, compliance with state or federal law, compliance with environmental or hazardous materials law, suitability for particular purposes or any other matter whatsoever, except to the extent set forth in the Agreement or the purchase agreement of another Successful Bidder. The Buyer and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Arizona Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Arizona Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Arizona Assets, or the completeness or accuracy of any information provided in connection therewith, or the Auction.

**FREE OF ANY AND ALL INTERESTS**

Except as otherwise set forth above, all of the Arizona Debtors' right, title and interest in and to the Arizona Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with Bankruptcy Code § 363(f), with such Interests to attach to the net proceeds of the sale of the Arizona Assets, except as to permitted encumbrances that are identified by the Bidder prior to the closing with the consent of the Arizona Debtors.

**SALE HEARING**

The Sale Hearing shall be conducted by the Bankruptcy Court on **September 13, 2010 at 9:30 a.m.**, or on such other date as may be established by the Bankruptcy Court.

If the Successful Bidder fails to consummate an approved sale by the date that is five business (5) days after the Sale Order has been entered (the "Termination Date"), the Arizona Debtors shall be authorized (with the consent of the First Lien Steering Committee), but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Arizona Debtors shall be authorized (with the consent of the First Lien Steering Committee), but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

**RETURN OF GOOD FAITH DEPOSIT**

Any Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at Closing. Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until five (5) days after Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders with all accumulated interest thereon. If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Arizona Debtors shall be entitled to retain the Successful Bidder's Good Faith Deposit as part of its damages resulting from such Successful Bidder's breach or failure to perform, in addition to all other remedies at law or in equity which may be available to the Arizona Debtors.

For any questions on these assets, please contact Michael Stuart, Colliers International, at (702) 836-3739.

UNITED STATES BANKRUPTCY COURT DISTRICT OF NEVADA

In re: THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al., Debtors.

Case No.: BK-S-09-14814-LBR (Jointly Administered)

Chapter 11

**BIDDING PROCEDURES**

Rhodes Homes Arizona, LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc. (the "Arizona Debtors") each filed a chapter 11 case, which cases are pending in the Bankruptcy Court[2] and administered under Case No. 09-14814 (LBR). In each instance, the reference to "Arizona Debtors" herein means the Debtors or the Arizona Debtors, as reorganized, pursuant to the plan of reorganization confirmed in their bankruptcy cases. By motion dated February 19, 2010 (the "Motion"), the Arizona Debtors sought, among other things, approval of the process and procedures set forth below (the "Bidding Procedures") through which they will determine the highest and best offer for certain of their assets, which consists primarily of raw land in Arizona, four model homes, four partially-completed homes, miscellaneous office equipment, and other items of personal property including certain intellectual property (the "Arizona Assets"). On March 30, 2010, the Bankruptcy Court entered its order (the "Bidding Procedures Order"), which, among other things, approved these Bidding Procedures. [Docket No. 1075]

Pending a higher and better offer received through these Bidding Procedures, the Arizona Debtors have agreed to sell to certain of their non-Debtor affiliates, the "Rhodes Entities," the Arizona Assets for $1,222,999 (the "Stalking Horse Bid"). The Rhodes Entities will not be receiving a break-up fee or expense reimbursement on account of their efforts as the Stalking Horse Bidder.

There are certain parcels of land owned by the Arizona Debtors that are not duly reflected as owned by the Arizona Debtors based on the County of Mohave Recorder's Office records, but rather as being owned by the Rhodes Entities, and vice versa. The parties have agreed to enter into a stipulation to resolve these title issues, which will be duly noticed for hearing before the Bankruptcy Court as soon as possible.

In connection with the Arizona Assets, the Arizona Debtors have not yet determined whether or not they will sell or seek to transfer the work product or intellectual property in which Stanley Consultants, Inc. ("Stanley") has asserted a property interest as set forth in the exhibits to Creditor Stanley Consultants, Inc.'s Objection to Sufficiency of Disclosure Statement for the Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code for the Rhodes Companies, LLC, et. al. [Docket No. 617] (the "Stanley Materials"). Prior to marketing the Arizona Assets with the Stanley Materials included as part of the Arizona Assets or the transfer of any Stanley Materials, the Debtors or Reorganized Debtors, as applicable, shall (i) obtain an order from the Bankruptcy Court determining the extent of the Debtors' interests or Reorganized Debtors' interests, as applicable, in such Stanley Materials that the Debtors can transfer under applicable law or (ii) shall file a notice of intention to not sell the Stanley Materials and Stanley shall retain the right to dispute the transfer of the Stanley Materials (the earlier of (i) or (ii) shall be the "Determination Date").

On September 13, 2010 at 9:30 a.m., as further described below, in the Motion and in the Bidding Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Arizona Debtors shall seek entry of the Sale Order authorizing and approving the sale of the Arizona Assets (the "Transaction") to the Qualified Bidder (defined below) that the Arizona Debtors, with the consent of the First Lien Steering Committee, determine to have made the highest and/or best offer, subject to Bankruptcy Court approval.

**PURCHASE PRICE**

The minimum purchase price for the Arizona Assets shall be $1,222,999 (the "Purchase Price"). The Transaction is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code §§ 363 and 365. The Successful Bidder shall also be responsible for all cure costs associated with assuming any contracts associated with any of the Arizona Assets, which the Arizona Debtors estimate to be $0.00.

**PARTICIPATION REQUIREMENTS**

In addition to the Bid requirements set forth below, in order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in the Arizona Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Arizona Debtors and the Notice Parties (defined below) an executed confidentiality agreement in form and substance acceptable to the Arizona Debtors and the First Lien Steering Committee (a "Confidentiality Agreement").

**ACCESS TO DUE DILIGENCE MATERIALS**

Only Potential Bidders that execute and deliver a Confidentiality Agreement are eligible to receive due diligence access or additional non-public information. The Arizona Debtors will prepare a due diligence package that discloses, among other things, issues related to current zoning, set-back requirements, water, gas, telephone and other utility availability (the "Due Diligence Package"). The Arizona Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. The Arizona Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Arizona Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Bidders in connection with the sale of the Arizona Assets, whether provided as part of the due diligence by the Debtors or otherwise. Furthermore, in accepting the Due Diligence Package, Bidder shall be deemed to acknowledge that the Arizona Debtors make no representations or warranties regarding the nature or quality of the Arizona Assets and the Arizona Debtors will not be liable for any inaccurate or incomplete information provided to the Bidder and the Bidder retains the sole and exclusive responsibility to independently confirm any and all information provided by the Arizona Debtors. The Due Diligence Package shall not include Stanley Materials until after the Determination Date.

**DUE DILIGENCE FROM BIDDERS**

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Arizona Debtors or its advisors or the First Lien Steering Committee or its advisors regarding such Bidder and its contemplated transaction. Failure by a Bidder to comply with requests for additional information and due diligence access will be a basis for the Arizona Debtors to determine, with the consent of the First Lien Steering Committee, that the Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Arizona Debtors, with the consent of the First Lien Steering Committee, to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

**BIDDING PROCESS**

The Arizona Debtors shall, prior to the Bid Deadline: (i) with the consent of the First Lien Steering Committee, determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Potential Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; (iv) together with the First Lien Steering Committee, negotiate any offers made to purchase the Arizona Assets (collectively, the "Bidding Process"). The Arizona Debtors, with the consent of the First Lien Steering Committee, shall have the right to adopt such other rules for the Bidding Process that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

**BID DEADLINE**

**The deadline for submitting bids by a Qualified Bidder shall be August 30, 2010, at 4:00 p.m. (Pacific Time) (the "Bid Deadline").**

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its Bid by electronic mail to the following Notice Parties by the Bid Deadline: (i) the Arizona Debtors, 4730 S. Fort Apache Rd., Ste. 300, Las Vegas, NV 89147, Attn: Bruce Jorgensen, General Counsel, bjorgensen@rhodeshomes.com and Paul Huygens, phuygens@provinceadvisors.com; (ii) counsel for the First Lien Steering Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Philip C. Dublin, Esq., pdublin@akingump.com; (iii) counsel for the Rhodes Entities, Greenberg Traurig, LLP, 3773 Howard Hughes Parkway, Suite 400 North, Las Vegas, NV 89169, Attn: Brett Axelrod, axelrodb@gtlaw.com; (iv) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th Fl., Los Angeles, CA 90067, Attn: Shirley S. Cho, scho@pszjlaw.com; and (v) counsel for the Committee of Unsecured Creditors, Parsons Behle & Latimer, One Utah Center, 201 S. Main St., Ste. 1800, PO Box 45898, Salt Lake City, UT 84145-0898, Attn: J. Thomas Beckett, jbeckett@parsonsbehle.com; (v) counsel to Agent for First Lien Lenders, Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Ste. 3400, Los Angeles, CA 90071, Attn: Ramon M. Naguiat, ramon.naguiat@skadden.com; and (vi) counsel to Agent for Second Lien Lenders, Ropes & Gray, 1211 Avenue of the Americas, New York, New York 10036-8704, Attn: Mark R. Somerstein, mark.somerstein@ropesgray.com.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

**BID REQUIREMENTS**

To be eligible to participate in the Auction, each Bid and each Bidder submitting such a Bid must be determined by the Arizona Debtors, with the consent of the First Lien Steering Committee, to satisfy each of the following conditions:

Executed Asset Purchase Agreement. Each bid must be accompanied by an executed asset purchase agreement (and which must be acceptable to the First Lien Steering Committee), which will be provided by the Debtors no later than 30 days prior to the Sale Hearing, without any changes to the form of the agreement.

Executory Contracts. Each bid must identify any executory contracts that the Potential Bidder wishes to be assigned to it, with a commitment to pay any and all cure costs. The Arizona Debtors reserve the right not to assign the executory contract to the Potential Bidder in their sole and absolute discretion.

Minimum Bid. The consideration proposed by the Bid may include only cash. The aggregate consideration must equal or exceed the sum of the Purchase Price ($1,222,999) plus $200,000 ("Initial Minimum Overbid Increment").

Good Faith Deposit. Each Bid must be accompanied by (i) 50% of the Purchase Price and Initial Minimum Overbid Increment, or $811,499.50 (except for the Stalking Horse Bid which need only be accompanied by 50% of the Purchase Price, or $611,499.50), whether in the form of a certified check or cash payable to the order of Nevada Title Company or by wire transfer (which account information will be made available upon request) or irrevocable letter of credit; and (ii) a letter from a financial institution showing proof of funds for the remaining 50% of the Purchase Price, or $611,499.50, which letter shall be reasonably acceptable to the Arizona Debtors (with the consent of the First Lien Steering Committee).

Indemnification for Bond. Each Bid must be accompanied by an agreement that the Bidder will either (i) post a replacement bond or post cash in lieu of the bond for the Debtors' current bond issued by Bond Safeguard (Bond No. 5022081) dated May 9, 2006 (the "Grading Bond") in the form acceptable to the Arizona Debtors or (ii) indemnify the Arizona Debtors for any negative consequences from the Grading

Nevada Title Company or by wire transfer (which account information will be made available upon request) or irrevocable letter of credit, and (ii) a letter from a financial institution showing proof of funds for the remaining 50% of the Purchase Price, or $611,499.50, which letter shall be reasonably acceptable to the Arizona Debtors (with the consent of the First Lien Steering Committee).

<u>Indemnification for Bond</u>. Each Bid must be accompanied by an agreement that the Bidder will either (i) post a replacement bond or post cash in lieu of the bond for the Debtors' current bond issued by Bond Safeguard (Bond No. 5022081) dated May 9, 2006 (the "Grading Bond") in the form acceptable to the Arizona Debtors; or (ii) indemnify the Arizona Debtors for any negative consequences from the Grading Bond, which indemnification shall be supported by a first priority deed of trust to be recorded against the Arizona Assets in favor of the Arizona Debtors.

<u>Irrevocable</u>. A Bid must be irrevocable until the closing of the transaction with the Successful Bidder (the "<u>Termination Date</u>").

<u>Contingencies</u>. A Bid may not be conditioned on obtaining financing or any internal approval or otherwise be subject to contingencies.

<u>Due Diligence Package</u>. A Bid must be accompanied by an acknowledgement that the Bidder has received the Due Diligence Package.

<u>Proof of Funds</u>. A Bid must contain written evidence of proof of funds in a financial institution for any amount in the Bid that is in excess of the Minimum Bid.

<u>No Fees Payable to Qualified Bidder or Broker</u>. A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bidding Procedures. The Arizona Debtors shall not be responsible for the cost of any fees, commissions, referral fees, etc. for advice, consultation, brokerage, due diligence or other services commissioned or used by a Bidder.

<u>Identification of Potential Bidder</u>. Concurrently with its Bid, identification of the Potential Bidder and any principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

<u>Corporate Authority</u>. Concurrently with its bid, written evidence satisfactory to the Arizona Debtors and the First Lien Steering Committee of the Potential Bidder's board of directors or other similar approval, as applicable, of the contemplated Transaction.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "<u>Qualified Bid</u>" and the bidder a "<u>Qualified Bidder</u>" if the Arizona Debtors, with the consent of the First Lien Steering Committee, believe that such Bid would be consummated if selected as the Successful Bid.

In the event that any Potential Bidder is determined by the Arizona Debtors and the First Lien Steering Committee not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit with interest thereon, if any has accrued, on or before the date that is five (5) days after Closing of the Sale.

The Arizona Debtors, with the consent of the First Lien Steering Committee, shall have the right to reject any and all bids that they believe do not comply with the Bidding Procedures.

The Stalking Horse Bid shall be a Qualified Bid, provided that 50% of the Purchase Price is received by the Bid Deadline in cash or by irrevocable letter of credit.

**AUCTION**

If a Qualified Bid (other than the Stalking Horse Bid) is received prior to the Bid Deadline, the Arizona Debtors shall conduct an auction (the "<u>Auction</u>") to determine the highest and best bid with respect to the Arizona Assets. The Auction shall commence at 9:00 a.m. (Pacific Time) on **September 7, 2010 at 1:00 p.m.**, at 4730 S. Fort Apache Road, Suite 300, Las Vegas, NV 89147.

No later than September 3, 2010, the Arizona Debtors will notify all Qualified Bidders of (i) the highest and best Qualified Bid, as determined by the Arizona Debtors and the First Lien Steering Committee (the "<u>Baseline Bid</u>") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders.

If no higher and better offer is obtained at the Auction, then the Stalking Horse Bid will be deemed the Successful Bid, and, at the Sale Hearing, the Arizona Debtors will seek approval of and authority to consummate the Transaction with the Rhodes Entities.

The Auction shall be conducted according to the following procedures:

**PARTICIPATION AT THE AUCTION**

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. Only the authorized representatives of each of the Qualified Bidders, the Arizona Debtors, and the First Lien Steering Committee shall be permitted to attend.

**THE ARIZONA DEBTORS SHALL CONDUCT THE AUCTION**

The Arizona Debtors and its professionals shall direct and preside over the Auction. At the start of the Auction, the Arizona Debtors shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Arizona Debtors, with the consent of the First Lien Steering Committee, reasonably deem relevant to the value of the Qualified Bid to the estate (the "<u>Bid Assessment Criteria</u>"). All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Arizona Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. The Arizona Debtors reserve the right to conduct the auction in the manner acceptable to the First Lien Steering Committee and designed to maximize value based upon the nature and extent of the Qualified Bids received.

**TERMS OF OVERBIDS**

An "<u>Overbid</u>" is any bid made at the Auction subsequent to the Arizona Debtors' announcement of the Baseline Bid. Any Overbid after the Baseline Bid shall be made in increments of at least $10,000.

Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Arizona Debtors, with the consent of the First Lien Steering Committee, accept a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).

(a) Announcing Overbids

The Arizona Debtors shall announce at the Auction each Overbid. The Arizona Debtors shall thereafter provide the Buyer and each Qualified Bidder an opportunity to make subsequent Overbids.

The Arizona Debtors, with the consent of the First Lien Steering Committee in each instance, may (a) determine which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interest of the Arizona Debtors, its estate and creditors.

**CONSENT TO JURISDICTION AS CONDITION TO BIDDING**

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

**CLOSING THE AUCTION**

Upon conclusion of the bidding, the Auction shall be closed, and the Arizona Debtors and the First Lien Steering Committee shall immediately identify the highest and best offer for the Arizona Assets (the "<u>Successful Bid</u>") and the entity submitting such Successful Bid (the "<u>Successful Bidder</u>"), which highest and best offer will provide the greatest amount of net value to the Arizona Debtors, and the next highest or otherwise best offer after the Successful Bid (the "<u>Back-up Bid</u>") and the entity submitting the Back-up Bid (the "<u>Back-up Bidder</u>"), and advise the Qualified Bidders of such determination. Upon five (5) business days' prior notice by the Arizona Debtors, the Back-up Bidder selected by the Arizona Debtors and the First Lien Steering Committee must immediately proceed with the closing of the transaction contemplated by the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason.

**ACCEPTANCE OF SUCCESSFUL BID**

The Arizona Debtors shall sell the Arizona Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Arizona Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Arizona Debtors' or First Lien Steering Committee's acceptance of such Qualified Bid. The Arizona Debtors will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Arizona Debtors' and First Lien Steering Committee's selection of the Successful Bidder.

**"AS IS, WHERE IS"**

The sale of the Arizona Assets shall be on an "as is, where is", "with all faults" basis and without representations or warranties of any kind, nature, or description by the

Due Diligence Package. A Bid must be accompanied by an acknowledgement that the Bidder has received the Due Diligence Package.

Proof of Funds. A Bid must contain written evidence of proof of funds in a financial institution for any amount in the Bid that is in excess of the Minimum Bid.

No Fees Payable to Qualified Bidder or Broker. A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bidding Procedures. The Arizona Debtors shall not be responsible for the cost of any fees, commissions, referral fees, etc. for advice, consultation, brokerage, due diligence or other services commissioned or used by a Bidder.

Identification of Potential Bidder. Concurrently with its Bid, identification of the Potential Bidder and any principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

Corporate Authority. Concurrently with its bid, written evidence satisfactory to the Arizona Debtors and the First Lien Steering Committee of the Potential Bidder's board of directors or other similar approval, as applicable, of the contemplated Transaction.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified Bid" and the bidder a "Qualified Bidder" if the Arizona Debtors, with the consent of the First Lien Steering Committee, believe that such Bid would be consummated if selected as the Successful Bid.

In the event that any Potential Bidder is determined by the Arizona Debtors and the First Lien Steering Committee not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit with interest thereon, if any has accrued, on or before the date that is five (5) days after Closing of the Sale.

The Arizona Debtors, with the consent of the First Lien Steering Committee, shall have the right to reject any and all bids that they believe do not comply with the Bidding Procedures.

The Stalking Horse Bid shall be a Qualified Bid, provided that 50% of the Purchase Price is received by the Bid Deadline in cash or by irrevocable letter of credit.

## AUCTION

If a Qualified Bid (other than the Stalking Horse Bid) is received prior to the Bid Deadline, the Arizona Debtors shall conduct an auction (the "Auction") to determine the highest and best bid with respect to the Arizona Assets. The Auction shall commence at 9:00 a.m. (Pacific Time) on September 7, 2010 at 1:00 p.m., at 4730 S. Fort Apache Road, Suite 300, Las Vegas, NV 89147.

No later than September 3, 2010, the Arizona Debtors will notify all Qualified Bidders of (i) the highest and best Qualified Bid, as determined by the Arizona Debtors and the First Lien Steering Committee (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders.

If no higher and better offer is obtained at the Auction, then the Stalking Horse Bid will be deemed the Successful Bid, and, at the Sale Hearing, the Arizona Debtors will seek approval of and authority to consummate the Transaction with the Rhodes Entities.

The Auction shall be conducted according to the following procedures:

### PARTICIPATION AT THE AUCTION

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. Only the authorized representatives of each of the Qualified Bidders, the Arizona Debtors, and the First Lien Steering Committee shall be permitted to attend.

### THE ARIZONA DEBTORS SHALL CONDUCT THE AUCTION

The Arizona Debtors and its professionals shall direct and preside over the Auction. At the start of the Auction, the Arizona Debtors shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Arizona Debtors, with the consent of the First Lien Steering Committee, reasonably deem relevant to the value of the Qualified Bid to the estate (the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Arizona Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. The Arizona Debtors reserve the right to conduct the auction in the manner acceptable to the First Lien Steering Committee and designed to maximize value based upon the nature and extent of the Qualified Bids received.

### TERMS OF OVERBIDS

An "Overbid" is any bid made at the Auction subsequent to the Arizona Debtors' announcement of the Baseline Bid. Any Overbid after the Baseline Bid shall be made in increments of at least $10,000.

Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Arizona Debtors, with the consent of the First Lien Steering Committee, accept a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).

(a) Announcing Overbids

The Arizona Debtors shall announce at the Auction each Overbid. The Arizona Debtors shall thereafter provide the Buyer and each Qualified Bidder an opportunity to make subsequent Overbids.

The Arizona Debtors, with the consent of the First Lien Steering Committee in each instance, may (a) determine which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interest of the Arizona Debtors, its estate and creditors.

### CONSENT TO JURISDICTION AS CONDITION TO BIDDING

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

### CLOSING THE AUCTION

Upon conclusion of the bidding, the Auction shall be closed, and the Arizona Debtors and the First Lien Steering Committee shall immediately identify the highest and best offer for the Arizona Assets (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest and best offer will provide the greatest amount of net value to the Arizona Debtors, and the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid") and the entity submitting the Back-up Bid (the "Back-up Bidder"), and advise the Qualified Bidders of such determination. Upon five (5) business days' prior notice by the Arizona Debtors, the Back-up Bidder selected by the Arizona Debtors and the First Lien Steering Committee must immediately proceed with the closing of the transaction contemplated by the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason.

### ACCEPTANCE OF SUCCESSFUL BID

The Arizona Debtors shall sell the Arizona Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Arizona Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Arizona Debtors' or First Lien Steering Committee's acceptance of such Qualified Bid. The Arizona Debtors will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Arizona Debtors' and First Lien Steering Committee's selection of the Successful Bidder.

### "AS IS, WHERE IS"

The sale of the Arizona Assets shall be on an "as is, where is", "with all faults" basis and without representations or warranties of any kind, nature, or description by the Arizona Debtors, its agents or its estate or the First Lien Steering Committee, including without limitation representations and warranties as to physical condition, title, ownership, authorization to sell, acreage, leases, rents, revenues, income, expenses, operation, zoning or other regulation, compliance with state or federal law, compliance with environmental or hazardous materials law, suitability for particular purposes or any other matter whatsoever, except to the extent set forth in the Agreement or the purchase agreement of another Successful Bidder. The Buyer and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Arizona Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Arizona Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Arizona Assets, or the completeness or accuracy of any information provided in connection therewith, or the Auction.

### FREE OF ANY AND ALL INTERESTS

Except as otherwise set forth above, all of the Arizona Debtors' right, title and interest in and to the Arizona Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with Bankruptcy Code § 363(f), with such Interests to attach to the net proceeds of the sale of the Arizona Assets, except as to permitted encumbrances that are identified by the Bidder prior to the closing with the consent of the Arizona Debtors.

### SALE HEARING

The Sale Hearing shall be conducted by the Bankruptcy Court on September 13, 2010 at 9:30 a.m., or on such other date as may be established by the Bankruptcy Court.

If the Successful Bidder fails to consummate an approved sale by the date that is five business (5) days after the Sale Order has been entered (the "Termination Date"), the Arizona Debtors shall be authorized (with the consent of the First Lien Steering Committee), but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Arizona Debtors shall be authorized (with the consent of the First Lien Steering Committee), but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

### RETURN OF GOOD FAITH DEPOSIT

Any Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at Closing. Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until five (5) days after Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders with all accumulated interest thereon. If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Arizona Debtors shall be entitled to retain the Successful Bidder's Good Faith Deposit as part of its damages resulting from such Successful Bidder's breach or failure to perform, in addition to all other remedies at law or in equity which may be available to the Arizona Debtors.

For any questions on these assets, please contact Michael Stuart, Colliers International, at (702) 836-3739.