**AMENDMENT NO. 1**
**(First Lien)**

dated as of
May 11, 2007

among

**HERITAGE LAND COMPANY, LLC,**
**THE RHODES COMPANIES, LLC**
**and**
**RHODES RANCH GENERAL PARTNERSHIP,**
**as the Borrowers,**

**THE SUBSIDIARY GUARANTORS PARTY HERETO,**

**THE LENDERS PARTY HERETO,**

**AND**

**CREDIT SUISSE, CAYMAN ISLANDS BRANCH,**
**as Administrative Agent and as Collateral Agent**

474731

## AMENDMENT NO. 1

### dated as of May 11, 2007

Reference is made to (a) the Credit Agreement, dated as of November 21, 2005 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"; capitalized terms used but not defined herein having the meanings set forth therein), among HERITAGE LAND COMPANY, LLC, a Nevada limited liability company ("**Heritage Land**"), THE RHODES COMPANIES, LLC, a Nevada limited liability company ("**Rhodes Companies**"), RHODES RANCH GENERAL PARTNERSHIP, a Nevada general partnership ("**Rhodes GP**" and, collectively with Heritage Land and Rhodes Companies, the "**Borrowers**"), the banks and other financial institutions or entities from time to time party thereto as lenders (the "**Lenders**"), and CREDIT SUISSE, CAYMAN ISLANDS BRANCH, as administrative agent for the Lenders (together with its successors in such capacity, the "**Administrative Agent**"), as collateral agent for the Secured Parties (together with its successors in such capacity, the "**Collateral Agent**") and as syndication agent for the Lenders and (b) the Pledge and Security Agreement, dated as of November 21, 2005 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Pledge and Security Agreement**"), made by the Borrower and each of the Subsidiary Guarantors in favor of the Collateral Agent.

### PRELIMINARY STATEMENTS:

WHEREAS, the Borrowers, the Requisite Lenders, the Administrative Agent and the Collateral Agent desire to amend the Credit Agreement and the Pledge and Security Agreement as set forth below on and subject to the terms of this Amendment No. 1.

NOW, THEREFORE, in consideration of the premises and the agreements, provisions and covenants herein contained, the parties hereto agree as follows:

SECTION 1.  Limited Waiver and Release.  Notwithstanding any other provisions of any of the Loan Documents to the contrary (including, without limitation, the provisions of Sections 6.9 and 6.10 of the Credit Agreement), the Requisite Lenders, the Administrative Agent and the Collateral Agent hereby permit the transfer of the approximately 70 acres of real property described on Annex 1 hereto (the "**Released Real Property**") to one or more affiliates of the Borrowers that are not Loan Parties in exchange (the "**Permitted Land Exchange**") for the approximately 130 acres of real property described on Annex 2 hereto (the "**Exchanged Real Property**"), and the Collateral Agent is hereby authorized to release the Released Real Property from the Lien of the Mortgages and the other Loan Documents in connection with the Permitted Land Exchange.

SECTION 2.  Amendments to Credit Agreement.

SUBSECTION 2.1.  Amendments to Section 1.1.  Section 1.1 of the Credit Agreement is hereby amended in the following respects:

(a) The definition of "Applicable Base Rate Margin" set forth in Section 1.1 of the Credit Agreement is hereby amended by deleting the phrase "2.25%" in such definition and inserting in lieu thereof:

"2.50%".

(b) The definition of "Applicable Eurodollar Rate Margin" set forth in Section 1.1 of the Credit Agreement is hereby amended by deleting the phrase "3.25%" in such definition and inserting in lieu thereof:

"3.50%".

(c) The definition of "Golden Valley" set forth in Section 1.1 of the Credit Agreement is hereby amended by adding at the end thereof, immediately before the period:

"and any additions to such developments in Mohave County, Arizona, and including, without limitation, the masterplan in Mohave County, Arizona tentatively named "Pravada"".

(d) Section 1.1 of the Credit Agreement is hereby amended by inserting the following new definitions therein in the appropriate alphabetical order:

"**Qualified Arizona Appraisal**" means a real estate appraisal conducted in accordance with the Uniform Standards of Professional Appraisal Practice (as promulgated by the Appraisal Standards Board of the Appraisal Foundation) and all requirements of Applicable Law applicable to the Administrative Agent undertaken by an Appraiser, and providing an assessment on a stand alone basis of "Total Net Value" (as defined in the Initial Appraisal) of the Golden Valley developments included in the Real Property Collateral (exclusive of any other Real Property Collateral), the form and substance of such appraisal to be reviewed and approved by the Administrative Agent in its reasonable judgment; provided that a Qualified Appraisal Update that includes such appraisal in a segregated portion thereof shall constitute a "Qualified Arizona Appraisal" for purposes hereof.

"**Qualified Arizona Appraisal Update**" means a quarterly update of the Qualified Arizona Appraisal prepared by an Appraiser, the form and substance of such update to be reviewed and approved by the Administrative Agent in its reasonable judgment; provided that a Qualified Appraisal Update that includes such update in a segregated portion thereof shall constitute a "Qualified Arizona Appraisal Update" for purposes hereof.

SUBSECTION 2.2.  Amendments to Section 2.4B.  Section 2.4B of the Credit Agreement is hereby amended in the following respects:

(a) Clause (i)(b) of Section 2.4B of the Credit Agreement is hereby amended by deleting the phrase "After the first anniversary of the Effective Date and on or prior to the second anniversary of the Effective Date" and inserting in lieu thereof, the phrase:

"After the first anniversary of the Effective Date and on or prior to May 21, 2008" and

(b) Clause (ii)(f) of Section 2.4B of the Credit Agreement is hereby amended by deleting the phrase "After the first anniversary of the Effective Date and on or prior to the second anniversary of the Effective Date" and inserting in lieu thereof, the phrase:

"After the first anniversary of the Effective Date and on or prior to May 21, 2008".

SUBSECTION 2.3.  Amendments to Section 5.3.  Section 5.3 of the Credit Agreement is hereby amended in the following respects:

(a) Clause (ix) of Section 5.3 of the Credit Agreement is hereby amended by adding, immediately after the phrase "Appraisal Updates:", the phrase:

"(a)".

2

(b) Clause (ix) of <u>Section 5.3</u> of the Credit Agreement is hereby further amended by deleting the semicolon at the end thereof and inserting in lieu thereof, the phrase:

"and (b) (x) together with delivery of financial statements of Sagebrush and its Subsidiaries and Affiliates pursuant to subdivision (i) of this subsection 5.3 for the Fiscal Quarter ending June 30, 2007, a Qualified Arizona Appraisal, effective as of June 30, 2007 and (y) thereafter, together with each delivery of financial statements of Sagebrush and its Subsidiaries and Affiliates pursuant to subdivision (i) of this subsection 5.3, a Qualified Arizona Appraisal Update that provides an Appraised Value of the Golden Valley developments included in the Real Property Collateral, effective as of the last day of the preceding Fiscal Quarter; and together with each delivery of financial statements of Sagebrush, the Borrowers and their Subsidiaries pursuant to subdivision (ii) of this subsection 5.3, a Qualified Arizona Appraisal Update that provides an Appraised Value of the Golden Valley developments included in the Real Property Collateral, effective as of the last day of the preceding Fiscal Year; <u>provided</u> that no Qualified Arizona Appraisal Update shall include any Real Property Collateral that (a) was not included in the most recent prior Qualified Arizona Appraisal or Qualified Arizona Appraisal Update, as applicable, and (b) with respect to which the Appraiser, as determined in its sole discretion, has not had adequate time and/or has not received documentation and other information sufficient to allow the Appraiser to determine the "Total Net Value" (in a manner consistent with the determination thereof and methodology used in the Initial Appraisal) of such Real Property Collateral for purposes of such Qualified Arizona Appraisal Update;"

SUBSECTION 2.4. <u>Amendments to Section 6.1</u>. <u>Section 6.1</u> of the Credit Agreement is hereby amended in the following respects:

(a) Clause (iv) of <u>Section 6.1</u> of the Credit Agreement is hereby amended by (i) adding at the end of subclause (a) thereof, immediately before the phrase ", (b)":

"(to the extent required to be pledged thereby)" and

(ii) by deleting the phrase "to any of its respective Subsidiaries" in subclause (b) thereof and inserting in lieu thereof, the phrase:

"or any Subsidiary Guarantor to any of the Borrowers or any of their respective Subsidiaries".

SUBSECTION 2.5. <u>Amendment to Section 6.2</u>. <u>Section 6.2</u> of the Credit Agreement is hereby amended by adding at the end thereof:

"**D. Prohibition on Pledges of Intercompany Notes**. Notwithstanding any other provisions hereof or of any other Loan Document, the Borrowers shall not, and shall not permit any of their Subsidiaries to, directly or indirectly, pledge or assign any intercompany notes held by any Borrower or any of its Subsidiaries, whether now owned or hereafter acquired, except (i) in favor of the Collateral Agent pursuant to the Collateral Documents or in favor of any Agent or Secured Party pursuant to the terms of this Agreement and (ii) subject to the terms of the Intercreditor Agreement, to secure obligations under the Second Lien Credit Agreement and the other Second Lien Loan Documents."

SUBSECTION 2.6. <u>Amendment to Section 6.5</u>. Clause (vii) of <u>Section 6.5</u> of the Credit Agreement is hereby amended by adding at the end thereof, immediately before the period:

"; and <u>provided</u>, <u>further</u>, that no such Restricted Payments may be made during the period beginning on May 8, 2007 and ending December 31, 2008, it being expressly understood and agreed that any such Restricted Payments that would, in the absence of this proviso, have been permitted to be

made during such period shall accrue and shall be permitted to be made on or following January 1, 2009 (any such accrued Restricted Payments to be excluded in determining the amount of Restricted Payments permitted to be made pursuant to this clause (vii) in the 2009 Fiscal Year)"

SUBSECTION 2.7.  Amendments to Section 6.6.  Sections 6.6A, 6.6B and 6.6C of the Credit Agreement are hereby amended and restated in their entirety to read as follows:

**A.  Total Debt LTV Ratio.**  The Borrowers shall not permit the ratio (the "**Total Debt LTV Ratio**") of (i) Total Consolidated Indebtedness as of the last day of each Fiscal Quarter (any such day being a "**Calculation Date**"), to (ii) the Appraised Value of the then remaining Real Property Collateral as of the Calculation Date (giving effect to Assets Sales and dispositions of Real Property Collateral prior to such Calculation Date) to exceed the following ratios:

| Fiscal Quarter Ending | Total Debt LTV Ratio |
| --- | --- |
| After the Effective Date and on or prior to December 31, 2008 | 42.5% |
| After December 31, 2008 and on or prior to December 31, 2009 | 40.0% |
| Thereafter | 35.0% |

**B.  First Lien Debt LTV Ratio.**  The Borrowers shall not permit the ratio (the "**First Lien Debt LTV Ratio**") of (i) the aggregate outstanding principal amount of the Loans as of any Calculation Date, to (ii) the Appraised Value of the then remaining Real Property Collateral as of such Calculation Date (giving effect to Assets Sales and dispositions of Real Property Collateral prior to such Calculation Date) to exceed the following ratios:

| Fiscal Quarter Ending | First Lien Debt LTV Ratio |
| --- | --- |
| After the Effective Date and on or prior to December 31, 2008 | 32.5% |
| After December 31, 2008 and on or prior to March 31, 2009 | 31.0% |
| After March 31, 2009 and on or prior to December 31, 2009 | 30.0% |
| Thereafter | 25.0% |

**C.  Interest Coverage Ratio.**  The Borrowers shall not permit the ratio (the "**Interest Coverage Ratio**") of (i) Consolidated EBITDA for any Test Period to (ii) Consolidated Interest Expense for such Test Period to be less than the following ratios:

| Fiscal Quarter Ending | Interest Coverage Ratio |
| --- | --- |
| After the Effective Date and on or prior to March 31, 2006 | 2.25 to 1.00 |
| After March 31, 2006 and on or prior to June 30, 2006 | 2.50 to 1.00 |
| After June 30, 2006 and on or prior to December 31, 2006 | 2.75 to 1.00 |
| After December 31, 2006 and on or prior to March 31, 2007 | 3.50 to 1.00 |
| After March 31, 2007 and on or prior to June 30, 2007 | 1.90 to 1.00 |
| After June 30, 2007 and on or prior to December 31, 2007 | 1.75 to 1.00 |
| After December 31, 2007 and on or prior to March 31, 2008 | 1.80 to 1.00 |
| After March 31, 2008 and on or prior to June 30, 2008 | 1.90 to 1.00 |
| After June 30, 2008 and on or prior to December 31, 2008 | 2.00 to 1.00 |
| After December 31, 2008 and on or prior to March 31, 2009 | 2.25 to 1.00 |
| After March 31, 2009 and on or prior to September 30, 2009 | 2.75 to 1.00 |
| After September 30, 2009 and on or prior to December 31, 2009 | 3.25 to 1.00 |
| Thereafter | 4.00 to 1.00 |

474731

SUBSECTION 2.8.  <u>Amendment to Section 6.18</u>.  <u>Section 6.18</u> of the Credit Agreement is hereby amended by adding at the end thereof:

"Notwithstanding any other provision hereof, neither any of the Borrowers nor any Subsidiary shall directly or indirectly (including, without limitation, through an Investment made pursuant to subsection 6.3) purchase any Real Property Asset (other than purchases of Real Property Assets pursuant to the Tuscany Option Agreement in accordance with the terms thereof as of the date hereof) unless the Interest Coverage Ratio for the Test Period most recently ended prior to such purchase for which financial statements have been delivered (or, if later, the Test Period most recently ended prior to such purchase for which financial statements were required to be delivered (taking into account the applicable delivery periods set forth therein)) pursuant to subsection 5.3(i) or (ii), as applicable, and, in each case, as determined on a pro forma basis to give effect to any Indebtedness incurred in connection with such purchase (and any other purchases of Real Property Assets consummated following such Test Period) as if such Indebtedness was incurred on the first day of such Test Period, is not less than 3.00 to 1.00."

SUBSECTION 2.9.  <u>Amendment to Section 6</u>.  <u>Section 6</u> of the Credit Agreement is hereby amended by adding at the end thereof, immediately following <u>Section 6.19</u>:

**"6.20    <u>Limitation on Golden Valley Developments</u>.**

The Borrowers and their Subsidiaries shall not have inventory relating to the Golden Valley developments exceeding an aggregate book value of $80,000,000 (on a combined basis for the Borrowers and their Subsidiaries collectively) at any time outstanding."

SECTION 3.  <u>Amendment to Pledge and Security Agreement</u>.  <u>Section 2</u> of the Pledge and Security Agreement is hereby amended by adding immediately following the second proviso to <u>Section 2</u> of the Pledge and Security Agreement, immediately before the phrase "and <u>provided</u>, <u>further</u>,":

"<u>provided</u>, <u>further</u>, that the term "Collateral" shall not include, and the security interest granted hereunder shall not attach to, any intercompany installment note issued by any Loan Party in favor of any other Loan Party if the recipient of the intercompany installment note has used the installment method under Section 453 of the Internal Revenue Code to report any gain resulting from the receipt of the installment note and has not subsequently taken a contrary reporting position, <u>provided</u> that (x) such security interest shall attach immediately at such time as Section 453A(d) of the Internal Revenue Code is not effective (including to the extent  that Section 453 or Section 453A(d) of the Internal Revenue Code is deemed not  applicable  as a result of (A) a "determination" within the meaning of Section 1313 of the Internal Revenue Code or (B) a change in facts or circumstances such that the granting of such a security interest hereunder would not result in the recognition of income pursuant to Section 453A(d) of the Internal Revenue Code by the Loan Party that is the holder of the intercompany installment note prior to the time that such Loan Party has received payment on such intercompany installment note) or is amended in a manner so as it would not result in the recognition of income pursuant to Section 453A(d) of the Internal Revenue Code by the Loan Party that is the holder of the intercompany installment note prior to the time that such Loan Party has received payment on such intercompany installment note, and to the extent severable, shall attach immediately to any portion of the Collateral that does not result in such consequence, at which point the term "Collateral" shall include such intercompany installment note and (y) for the avoidance of doubt, it is expressly understood and agreed that all Proceeds of any such intercompany installment notes shall be included in the term "Collateral" and such security interest shall attach immediately to any such Proceeds".

SECTION 4. Change in Pricing. The amendment to the definitions of "Applicable Base Rate Margin" and "Applicable Eurodollar Rate Margin" shall be effective for the period commencing on the Amendment No. 1 Effective Date (as defined below), and accrued and unpaid interest in respect of any period prior thereto, whether due or paid prior thereto or thereafter, shall be computed based on the Credit Agreement as in effect prior to the effectiveness of this Amendment No. 1.

SECTION 5. Conditions to Effectiveness of Amendment No. 1. This Amendment No. 1 (other than the provisions of Section 1 hereof) shall become effective as of the date hereof (the "**Amendment No. 1 Effective Date**") when all the conditions set forth in this Section 5 shall have been satisfied.

SUBSECTION 5.1. Execution of Counterparts. The Administrative Agent shall have received counterparts of this Amendment No. 1 executed by (i) the Borrowers, (ii) the Subsidiary Guarantors, (iii) the Administrative Agent, (iv) the Collateral Agent and (v) the Requisite Lenders.

SUBSECTION 5.2. Resolutions. The Administrative Agent shall have received certified copies of (i) Organizational Authorizations of the Borrowers and each of the Subsidiary Guarantors evidencing approval of this Amendment No. 1 and all matters and transactions contemplated hereby and (ii) all documents evidencing other necessary corporate action and governmental and other material third party approvals and consents, if any, (or a certification that none are required) with respect to this Amendment No. 1 and the matters and transactions contemplated hereby.

SUBSECTION 5.3. Amendment Fee. In consideration of the Requisite Lenders entering into this Amendment No. 1, the Borrowers shall have paid to each Lender that executes this Amendment No. 1 on or before 12:00 Noon New York City time on May 11, 2007 (each, a "**Consenting Lender**"), an amendment fee in an aggregate amount equal to 0.25% times the Loan Exposure of such Consenting Lender as of the Amendment No. 1 Effective Date.

SUBSECTION 5.4. Payment of Fees and Expenses. The Borrowers shall have paid all fees agreed to between any of the Agents or their affiliates and the Borrowers and, to the extent invoiced, all out-of-pocket expenses incurred by the Agents in connection with the Loan Documents and this Amendment No. 1, including the reasonable fees, charges and disbursements of Skadden, Arps, Slate, Meagher & Flom LLP as counsel for the Agents, in connection with this Amendment No. 1 and for all services related to any of the Loan Documents from and after the Closing Date.

SECTION 6. Conditions to Limited Waiver and Release. The provisions of Section 1 hereof shall become effective when all the conditions set forth in Sections 5 and 6 of this Amendment No. 1 shall have been satisfied.

SUBSECTION 6.1. Delivery of Officer's Certificate. The Administrative Agent shall have received an Officer's Certificate, substantially in the form of Exhibit 1 attached hereto.

SUBSECTION 6.2. Real Property Exchange.

(a) The Borrowers shall have delivered evidence reasonably satisfactory to the Administrative Agent (in its sole discretion) that the aggregate acreage of the Exchanged Real Property is approximately 130 acres and the aggregate acreage of the Released Real Property is approximately 70 acres.

(b) The terms and conditions of the Real Property Exchange shall be reasonably satisfactory to the Administrative Agent in all respects.

474731

(c) The Real Property Exchange (including the real property comprising the Exchanged Real Property and the Released Real Property) shall be consistent with the maps and other information previously provided to the Administrative Agent by the Borrowers.

SUBSECTION 6.3. <u>Delivery of Mortgages</u>. The Borrowers shall have delivered Mortgages in favor of the Collateral Agent, for the benefit of the Secured Parties, with respect to the Exchanged Real Property and shall have taken all such further action and executed all such further documents and instruments as the Collateral Agent may deem reasonably necessary or advisable to grant and perfect in favor of the Collateral Agent, for the benefit of the Secured Parties, a First Priority security interest in the Exchanged Real Property.

SUBSECTION 6.4. <u>Additional Real Property Requirements</u>. With respect to the Exchanged Real Property, the Borrowers shall have provided (or in the case of the following clause (v) shall have used commercially reasonable efforts to provide) the Collateral Agent with (i) Mortgagee Policies of the type described in subsection 3.1G(iii) of the Credit Agreement covering the Exchanged Real Property in an amount as shall be reasonably specified by the Collateral Agent (which amount shall be not less than the fair market value of the Exchanged Real Property as determined by the Collateral Agent in its sole discretion), (ii) an ALTA/ACSM survey with respect to the Exchanged Real Property dated a date, and prepared by a Person and in form and substance, reasonably satisfactory to the Collateral Agent, (iii) environmental reports of the type described in subsection 3.1N of the Credit Agreement with respect to the Exchanged Real Property dated a date, and in form and substance reasonably satisfactory to the Collateral Agent, (iv) title reports issued by the Title Company with respect to the Exchanged Real Property, dated a date, and in form and substance, satisfactory to the Collateral Agent (and which may include Permitted Encumbrances), and (v) any consents or estoppels reasonably deemed necessary or advisable by the Collateral Agent in connection with the Mortgages relating to such Real Property Collateral, in form and substance reasonably satisfactory to the Collateral Agent.

SUBSECTION 6.5. <u>No Default</u>. Both immediately prior to and after giving effect to the Permitted Land Exchange, no Default or Event of Default shall have occurred and be continuing.

SECTION 7. <u>Representations and Warranties</u>. Each of the Borrowers and the Subsidiary Guarantors represents and warrants as follows:

(a)       The representations and warranties of each Loan Party set forth in the Loan Documents are true and correct in all material respects on and as of the date hereof, and after giving effect to the Permitted Land Exchange (except to the extent that such representations and warranties specifically refer to an earlier date, in which case they shall be true and correct in all material respects as of such earlier date).

(b)       As of the date hereof, and after giving effect to this Amendment No. 1, no Default or Event of Default shall have occurred and be continuing. After giving effect to the Permitted Land Exchange, no Default or Event of Default shall have occurred and be continuing.

SECTION 8. <u>Validity of Obligations and Liens</u>.

(a)       <u>Validity of Obligations</u>. The Borrowers and the Subsidiary Guarantors acknowledge and agree that (i) each Loan Party is indebted to the Lenders and the Agents for the Obligations, without defense, counterclaim or offset of any kind, each of the Loan Parties hereby ratifies and reaffirms the validity, enforceability and binding nature of such Obligations and (ii) no Loan Party has as of the date hereof any claim, right or cause of action of any kind against any Lender or any Agent or any of such Lender's or Agent's respective present or former subsidiaries, affiliates, officers, directors,

employees, attorneys or other representatives or agents in connection with the Obligations, the Credit Agreement and the other Loan Documents, or the transactions contemplated hereby or thereby.

       (b)    <u>Validity of Guarantees</u>.  Each of the Subsidiary Guarantors, as a Guarantor (as defined in the Subsidiary Guaranty) under the Subsidiary Guaranty hereby confirms and agrees that notwithstanding the effectiveness of this Amendment No. 1, the Subsidiary Guaranty is, and shall continue to be, in full force and effect and each is hereby ratified and confirmed in all respects, except that, on and after the effectiveness of this Amendment No. 1, each reference in the Subsidiary Guaranty to the "Credit Agreement", "thereunder", "thereof" or words of like import shall mean and be a reference to the Credit Agreement, as amended by this Amendment No. 1.

       (c)    <u>Validity of Liens and Loan Documents</u>.  The Borrowers and the Subsidiary Guarantors ratify and reaffirm the validity and enforceability (without defense, counterclaim or offset of any kind) of the Liens and security interests granted to secure any of the Obligations by any Loan Party to the Collateral Agent, for the benefit of the Secured Parties, pursuant to the Loan Documents to which any Loan Party is a party and hereby confirms and agrees that notwithstanding the effectiveness of this Amendment No. 1, and except as expressly amended by this Amendment No. 1, each Loan Document is, and shall continue to be, in full force and effect and each is hereby ratified and confirmed in all respects, except that, on and after the effectiveness of this Amendment No. 1, each reference in the Loan Documents to the "Credit Agreement", the "Pledge and Security Agreement", "thereunder", "thereof" or words of like import shall mean and be a reference to the Credit Agreement or the Pledge and Security Agreement, as applicable, as amended by this Amendment No. 1.

       SECTION 9.  <u>Governing Law</u>.  This Amendment No. 1 shall be governed by, and construed in accordance with, the laws of the State of New York.

       SECTION 10.  <u>Execution in Counterparts</u>.  This Amendment No. 1 may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of this Amendment No. 1 by telecopier or in PDF format via electronic mail shall be effective as delivery of an original executed counterpart of this Amendment No. 1.

       SECTION 11.  <u>Continuing Effectiveness</u>.  Except as modified by this Amendment No. 1, each of the Credit Agreement and the Pledge and Security Agreement shall remain in full force and effect and is hereby ratified and confirmed in all respects and this Amendment No. 1 shall be a Loan Document for all purposes, and references in the Credit Agreement and the Pledge and Security Agreement to "the date hereof" and "the date of this Agreement" and phrases of similar import, shall in all instances be references to, and continue to refer to, November 21, 2005, and not the date of this Amendment No. 1.  This Amendment No. 1 shall not constitute an amendment or waiver of any provision of the Credit Agreement or the Pledge and Security Agreement not expressly referred to herein and shall not be construed as an amendment, waiver or consent to any action on the part of any of the Borrowers or any of their respective Subsidiaries that would require an amendment, waiver or consent of any of the Lenders or any of the Agents except as expressly stated herein.

       SECTION 12.  <u>WAIVER OF JURY TRIAL</u>.  **EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AMENDMENT NO. 1, ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).  EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY**

**OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AMENDMENT NO. 1 BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.**

SECTION 13.  Headings.  Section and subsection headings in this Amendment No. 1 are included herein for convenience of reference only and shall not constitute a part of this Amendment No. 1 for any other purpose or be given any substantive effect.

SECTION 14.  Successors and Assigns.  This Amendment No. 1 shall be binding upon and inure to the benefit of the Borrowers and the Subsidiary Guarantors and each of their respective successors and assigns, and upon the Agents and the Lenders and their successors and assigns.  Neither any of the Borrowers' nor any of the Subsidiary Guarantors' rights or obligations hereunder nor any interest therein may be assigned or delegated by any of the Borrowers or any of the Subsidiary Guarantors without the prior written consent of all Lenders.

*[Signature pages follow]*

474731

IN WITNESS WHEREOF, the parties hereto have caused this Amendment No. 1 to be executed by their officers thereunto duly authorized as of the date first above written.

BORROWERS:

**HERITAGE LAND COMPANY, LLC**

By:  Sedora Holdings, LLC, its managing member

By: _____
    Name:
    Title:

**THE RHODES COMPANIES, LLC**

By:  Sagebrush Enterprises, Inc., its managing member

By: _____
    Name:
    Title:

**RHODES RANCH GENERAL PARTNERSHIP**

By:  The Rhodes Companies, LLC,
its managing partner

By:  Sagebrush Enterprises, Inc.,
its sole member

By: _____
    Name:
    Title:

SUBSIDIARY GUARANTORS:

**RHODES DESIGN AND DEVELOPMENT
CORPORATION
BRAVO, INC.
RHODES REALTY, INC.
ELKHORN INVESTMENTS, INC.
C & J HOLDINGS, INC.
PALM GARDENS CORPORATION**

By: _____
    Name:
    Title:

[Amendment No. 1 (First Lien)]

474731

**ELKHORN PARTNERS, A NEVADA LIMITED PARTNERSHIP**

By:  Elkhorn Investments, Inc.,
its general partner

By: _____
    Name:
    Title:

**GUNG-HO CONCRETE LLC**
**GERONIMO PLUMBING LLC**
**ARAPAHOE CLEANING LLC**
**APACHE FRAMING, LLC**

By: Tribes Holdings, LLC,
their sole member

By: The Rhodes Companies, LLC,
its sole member

By: Sagebrush Enterprises, Inc.,
its sole member

By: _____
    Name:
    Title:

**RHODES RANCH GOLF COUNTRY CLUB, LLC**

By: Rhodes Ranch General Partnership,
its sole member

By: The Rhodes Companies, LLC,
its managing partner

By: Sagebrush Enterprises, Inc.,
its sole member

By: _____
    Name:
    Title:

[Amendment No. 1 (First Lien)]

**TUSCANY GOLF COUNTRY CLUB, LLC**
**RHODES HOMES ARIZONA, L.L.C.**
**TRIBES HOLDINGS, LLC**
**PINNACLE GRADING, LLC**
**JARUPA, LLC**
**RHODES ARIZONA PROPERTIES LLC**
**SIX FEATHERS HOLDINGS, LLC**
**PARCEL 20, LLC**
**TUSCANY ACQUISITIONS, LLC**
**TUSCANY ACQUISITIONS II, LLC**
**TUSCANY ACQUISITIONS III, LLC**
**TUSCANY ACQUISITIONS IV, LLC**

By:  The Rhodes Companies, LLC,
their sole member

By:  Sagebrush Enterprises, Inc.,
its sole member

By: _____
   Name:
   Title:

**TICK, LP**
**GLYNDA, LP**
**CHALKLINE, LP**
**BATCAVE, LP**
**JACKKNIFE, LP**
**WALLBOARD, LP**
**OVERFLOW, LP**

By: The Rhodes Companies, LLC,
their general partner

By: Sagebrush Enterprises, Inc.,
its sole member

By: _____
   Name:
   Title:

[Amendment No. 1 (First Lien)]

474731

**ADMINISTRATIVE AGENT,**
**COLLATERAL AGENT**
**AND REQUISITE LENDERS:**

**CREDIT SUISSE, CAYMAN ISLANDS BRANCH,**
as Administrative Agent and as Collateral Agent

By: _____
Name:
Title:        **BILL O'DALY**
              **DIRECTOR**          MIKHAIL FAYBUSOVICH
                                    ASSOCIATE

[Amendment No. 1 (First Lien)]

474731

**AIM FLOATING RATE FUND**
By:  INVESCO Senior Secured Management, Inc.
     As Sub-Adviser


**Thomas Ewald**
**Authorized Signatory**

[Amendment No. 1 (First Lien)]

474731

**ALZETTE EUROPEAN CLO S.A.**
By:  INVESCO Senior Secured Management, Inc.
     As Collateral Manager


**Thomas Ewald**
**Authorized Signatory**

[Amendment No. 1 (First Lien)]

474731

Antares Capital Corporation,
as a Lender

By: _____

    Name:  Brent J. Chase
    Title:  Duly Authorized Signatory

[Amendment No. 1 (First Lien)]

474731

**ARCHIMEDES FUNDING IV (CAYMAN), LTD.**

BY:  West Gate Horizons Advisors LLC,
     as Collateral Manager

BY: _____

Name:  Steve Gorski

Title:    Senior Credit Analyst

[Amendment No. 1 (First Lien)]

474731

Atlas Loan Funding (CENT I) LLC
By: RiverSource Investments, LLC
Attorney in Fact

_____
as a Lender

Robin C. Stancil
Director of Operations

[Amendment No. 1 (First Lien)]

474731

Atlas Loan Funding (Navigator), LLC
By: Atlas Capital Funding, Ltd.
By: Structured Asset Investors, LLC
Its Investment Manager

as a Lender

*Diana M Himes*

Diana M. Himes
Vice President

[Amendment No. 1 (First Lien)]

474731



**Atrium III**
as a Lender

By: _____
    Name:
    Title:    **David H. Lerner**
              **Authorized Signatory**

[Amendment No. 1 (First Lien)]

474731

**Atrium IV**
as a Lender

By: _____
Name:
Title:    **David H. Lerner**
          **Authorized Signatory**

[Amendment No. 1 (First Lien)]

**Atrium V**
as a Lender

By: _____



Name:
Title:    **David H. Lerner**
          **Authorized Signatory**



**Atrium VI**
as a Lender

By: _____
Name:
Title:      **David H. Lerner**
            **Authorized Signatory**

[Amendment No. 1 (First Lien)]

174731

AVALON CAPITAL LTD. 3
By:  INVESCO Senior Secured Management, Inc.
     As Asset Manager

Thomas Ewald
Authorized Signatory

[Amendment No. 1 (First Lien)]

474731

Avenue CLO Fund, Limited
Avenue CLO II, Limited
Avenue CLO III, Limited

as a Lender

RICHARD D'ADDARIO
SENIOR PORTFOLIO MANAGER

[Amendment No. 1 (First Lien)]

474731

BEAR STEARNS INVESTMENT PRODUCTS, INC.
as a Lender

**JONATHAN WEISS**
**AUTHORIZED SIGNATORY**

[Amendment No. 1 (First Lien)]

TOTAL P.01

**BELHURST CLO LTD.**
By: INVESCO Senior Secured Management, Inc.
    As Collateral Manager

Thomas Ewald
Authorized Signatory

[Amendment No. 1 (First Lien)]

474731

BlackRock Global Floating Rate Income Trust

BlackRock Limited Duration Income Trust

BlackRock Senior Income Series II

BlackRock Senior Income Series III

BlackRock Senior Income Series IV

Magnetite V CLO, Limited

Senior Loan Portfolio

as a Lender

By:

AnnMarie Smith
Authorized Signatory

[Amendment No. 1 (First Lien)]

474731

By: Callidus Debt Partners CDO Fund I, Ltd.
By: Its Collateral Manager,
Callidus Capital Management, LLC

as a Lender

PETER R. BENNTT
PRINCIPAL

[Amendment No. 1 (First Lien)]

474731

By: Callidus Debt Partners CLO Fund II, Ltd.
By: Its Collateral Manager,
Callidus Capital Management, LLC

as a Lender

PETER R. BENNITT
PRINCIPAL

[Amendment No. 1 (First Lien)]

474731

By: Callidus Debt Partners CLO Fund III Ltd.
By: Its Collateral Manager,
Callidus Capital Management, LLC
as a Lender

PETER R. BENNITT
PRINCIPAL

[Amendment No. 1 (First Lien)]

474731

**Canadian Imperial Bank of Commerce**

as a Lender

John O'Dowd
**Authorized Signatory**

[Amendment No. 1 (First Lien)]

Carlyle Capital Investment Limited

as a Lender

Linda Pace
Managing Director

[Amendment No. 1 (First Lien)]

Carlyle High Yield Partners IV, Ltd.

_____
as a Lender

**Linda Pace**
**Managing Director**

[Amendment No. 1 (First Lien)]

474731

Carlyle High Yield Partners VI, Ltd.

_____

as a Lender

**Linda Pace**
**Managing Director**

[Amendment No. 1 (First Lien)]

474731

**Carlyle High Yield Partners VII, Ltd**

as a Lender

Linda Pace
Managing Director

474731

Carlyle High Yield Partners VIII, Ltd

as a Lender

Linda Pace
Managing Director

[Amendment No. 1 (First Lien)]

474731

Carlyle High Yield Partners IX, Ltd.

as a Lender

Linda Pace
Managing Director

[Amendment No. 1 (First Lien)]

**Carlyle Loan Investment, Ltd.**

_____

as a Lender

**Linda Pace**
**Managing Director**

[Amendment No. 1 (First Lien)]

474731

**Carlyle Loan Opportunity Fund**

as a Lender

Linda Pace
Managing Director

[Amendment No. 1 (First Lien)]

474731

**Castle Garden**
as a Lender

By: _____

    Name:

    Title:

**David H. Lerner**
**Authorized Signatory**

Cent CDO XI, Limited
By: RiverSource Investments,
LLC as Collateral Manager

as a Lender

Robin C. Stancil
Director of Operations

[Amendment No. 1 (First Lien)]

474731

Centurion CDO 8, Limited
By: RiverSource Investments,
LLC as Collateral Manager

_____
as a Lender

Robin C. Stancil
Director of Operations

[Amendment No. 1 (First Lien)]

474731

Centurion CDO 9, Ltd.

By: RiverSource Investments,
LLC as Collateral Manager

_____
as a Lender        Robin C. Stancil
                   Director of Operations

Cent CDO 10, Ltd.

By: RiverSource Investments,
LLC as Collateral Manager

as a Lender          Robin C. Stancil
                     Director of Operations

[Amendment No. 1 (First Lien)]

474731

Centurion CDO II, Ltd.
By: RiverSource Investments,
LLC as Collateral Manager

_____

as a Lender

Robin C. Stancil
Director of Operations

[Amendment No. 1 (First Lien)]

474731

Centurion CDO VI, Ltd.

By: RiverSource Investments,
LLC as Collateral Manager

as a Lender

Robin C. Stancil
Director of Operations

[Amendment No. 1 (First Lien)]

474731

Centurion CDO VII, Ltd.
By: RiverSource Investments,
LLC as Collateral Manager

as a Lender

Robin C. Stancil
Director of Operations

[Amendment No. 1 (First Lien)]

474731

CHAMPLAIN CLO, LTD.
By: INVESCO Senior Secured Management, Inc.
    As Collateral Manager

Thomas Ewald
Authorized Signatory

[Amendment No. 1 (First Lien)]

CHARTER VIEW PORTFOLIO
By: INVESCO Senior Secured Management, Inc.
    As Investment Advisor

**Thomas Ewald**
**Authorized Signatory**

[Amendment No. 1 (First Lien)]

474731

**CLEAR LAKE CLO LTD.,**
as a Lender

By: _____

Name: WADE T. WINTER
Title: S.V.P.

[Amendment No. 1 (First Lien)]

474731

**Confluent 3 Limited**
By: Morgan Stanley Investment Management Inc.
as Investment Manager

as a Lender

HOWARD TIFFEN
MANAGING DIRECTOR

[Amendment No. 1 (First Lien)]

474731

CREDIT SUISSE CAYMAN ISLANDS BRANCH
as a Lender

By: _____
    Name: _____
    Title:

**BARRY ZAMORE
MANAGING DIRECTOR**

By: _____
    Name: _____
    Title:

**ROBERT FRANZ
DIRECTOR**

[Amendment No. 1 (First Lien)]

CREDIT SUISSE LOAN FUNDING LLC
as a Lender

By: _____
Name:
Title:

**BARRY ZAMORE
MANAGING DIRECTOR**


By: _____
Name:
Title:

**ROBERT FRANZ
DIRECTOR**

[Amendment No. 1 (First Lien)]

474731

**Credit Suisse Syndicated Loan Fund**
as a Lender

By: _____
    Name:
    Title:    David H. Lerner
           Authorized Signatory

474731



**CSAM Funding IV**
as a Lender

By: _____
    Name:
    Title:    **David H. Lerner**
          **Authorized Signatory**

**DEUTSCHE BANK AG NEW YORK BRANCH**
By: DB Services New Jersey, Inc.,
as a Lender

By: _Claudia Roda_

Name: ~~Claudia Roda~~
        Authorized Signatory

Title:


By: _[signature]_

Name: Angeline Quintana
      Assistant Vice President

Title:

[Amendment No. 1 (First Lien)]

474731

**DIAMOND LAKE CLO LTD.,**
as a Lender

By: _____
    Name: WADE T. WINTER
    Title: S.V.P.

[Amendment No. 1 (First Lien)]

DIVERSIFIED CREDIT PORTFOLIO LTD.
By:  INVESCO Senior Secured Management, Inc.
     as Investment Adviser


**Thomas Ewald**
**Authorized Signatory**

474731

**EAGLE LOAN TRUST**
By:    Stanfield Capital Partners, LLC
as its Collateral Manager

as a Lender    Christopher E. Jansen
Managing Partner

474731

**ENDURANCE CLO I, LTD.**

c/o:  West Gate Horizons Advisors LLC,
      as Collateral Manager

BY: _____

Name  Steve Gorski
Title:  Senior Credit Analyst

**FIRST TRUST/FOUR CORNERS SENIOR FLOATING RATE INCOME FUND II**, as a Lender
By: Four Corners Capital Management LLC,
    As Sub-Adviser

DREW SWEENEY
Senior Vice President

**FORTRESS PORTFOLIO TRUST**, as a Lender
By: Four Corners Capital Management LLC,
    As Investment Manager

DREW SWEENEY
Senior Vice President

**FOUR CORNERS CLO 2005-I, LTD.**, as a Lender
By: Four Corners Capital Management LLC,
    As Collateral Manager

DREW SWEENEY
Senior Vice President

[Amendment No. 1 (First Lien)]

474731

Four Corners CLO II, LTD.,

as a Lender

Erich VanRavenswaay
Assistant Vice President

[Amendment No. 1 (First Lien)]

474731

FOUR CORNERS CLO III
as a Lender

AVP

[Amendment No. 1 (First Lien)]

Galaxy CLO 2003-1, Ltd.

By: AIG Global Investment Corp.

Its Investment Adviser

LENDER:

By:

W. Jeffrey Baxter
Managing Director

[Amendment No. 1 (First Lien)]

Galaxy III CLO, Ltd.

By: AIG Global Investment Corp.,

Its Investment Adviser

LENDER:

By: _____

W. Jeffrey Baxter
Managing Director

474731                                    [Amendment No. 1 (First Lien)]

Galaxy IV CLO LTD

By: AIG Global Investment Corp.

Its Investment Adviser

LENDER:

By:    W. Jeffrey Baxter
       Managing Director

Galaxy V CLO, Ltd

By: AIG Global Investment Corp.,

Its Investment Adviser

LENDER:

By:    W. Jeffrey Baxter
       Managing Director

[Amendment No. 1 (First Lien)]

,



**GE ASSET MANAGEMENT**

GE Asset Management Incorporated
500 W. Monroe, 18th Floor
Chicago, Illinois 60661

**TRUSTEE INSTRUCTIONS**

**TO:**  **The Bank of New York Trust Company, N.A., not in its individual capacity, but solely as Trustee of Antares Funding Trust under the Trust Agreement dated as of November 30, 1999 (the "Trust Agreement") between Antares Funding, L.P. (the "Depositor") and Chase Manhattan, as trustee (the "Trustee").**

Capitalized terms used herein and not defined herein shall have the meaning set forth in the Trust Agreement.

1.        Instructions.  Pursuant to the Trust Agreement the undersigned hereby instructs you to execute and deliver the attached Consent to Amendment No. 1 to the Rhodes Home First Lien Credit Agreement, (collectively, the "Documents") and each other document, instrument and agreement necessary or desirable to carry out the intent of such Documents.

2.        Indemnity.  In connection with the foregoing, the undersigned agrees to indemnify the Trustee, and any affiliate, director, officer, employee or agent of the Trustee for and against any loss, liability, or expense arising out of, or incurred without negligence, willful misconduct or bad faith on their part arising out of or in connection with this Instruction and the actions of the Trustee to be taken hereunder, including the costs and expenses of defending themselves against any claim or liability in connection with the execution and delivery of any of the Documents.

3.        Compliance with Trust Agreement.  By its execution hereof, the undersigned hereby certifies to the Trustee that this Instruction complies with the terms and provisions of the Trust Agreement.

4. Dated: May 8, 2007

Antares Capital Corporation, as Collateral Manager

By:  _Kathleen S. Brooks_
Name: Kathleen Brooks
Title: Authorized Signatory

General Electric Capital Corporation,
as a Lender

By: _____

     Name:  Brent J. Chase
     Title:   Duly Authorized Signatory

[Amendment No. 1 (First Lien)]

Grand Central Asset Trust, SOLA Series

as a Lender

**Richard Newcomb**
**Attorney-in-fact**

GULF STREAM-COMPASS CLO 2003-1 LTD.
By: Gulf Stream Asset Management LLC
As Collateral Manager

as a Lender                                Chief Credit Officer

GULF STREAM-COMPASS CLO 2004-1 LTD
By: Gulf Stream Asset Management LLC
As Collateral Manager

                                Chief Credit Officer

GULF STREAM-COMPASS CLO 2005-1 LTD
By: Gulf Stream Asset Management, LLC
As Collateral Manager

                                Chief Credit Officer

[Amendment No. 1 (First Lien)]

**Hewett's Island CDO, Ltd.**

By: CypressTree Investment Management Company, Inc.,

as Portfolio Manager.

By: _____

Name: Preston I. Carnes

Title: Managing Director

**Hewett's Island CLO II, Ltd.**

By:  CypressTree Investment Management Company, Inc.,

    as Portfolio Manager

By: _____
    Name: Preston I. Carnes

    Title:  Managing Director

[Amendment No. 1 (First Lien)]

474731

**Hewett's Island CLO III, Ltd.**

By:  CypressTree Investment Management Company, Inc.,

      as Portfolio Manager

By: _____

Name: Preston I. Carnes

Title:  Managing Director

474731

**Hewett's Island CLO IV, Ltd.**

By:  CypressTree Investment Management Company, Inc.,

     as Portfolio Manager

By:  _____

Name: Robert Weeden

Title:  Managing Director

[Amendment No. 1 (First Lien)]

474731

**Hewett's Island CLO V, Ltd.**

By:  CypressTree Investment Management Company, Inc.,

     as Portfolio Manager

By: _____

    Name: Robert Weeden

    Title:  Managing Director

[Amendment No. 1 (First Lien)]

474731

**INVESCO EUROPEAN CDO I S.A.**
By:  INVESCO Senior Secured Management, Inc.
   As Collateral Manager

Thomas Ewald
Authorized Signatory

474731

**KATONAH V, LTD.**
By: INVESCO Senior Secured Management, Inc.
As Investment Manager

Thomas Ewald
Authorized Signatory

474731

KATONAH VII CLO LTD.,
as a Lender

DANIEL GILLIGAN
Authorized Officer
Katonah Debt Advisors, L.L.C.
As Manager

**KATONAH VIII CLO LTD.,**
as a Lender

DANIEL GILLIGAN
Authorized Officer
Katonah Debt Advisors, L.L.C.
As Manager

[Amendment No. 1 (First Lien)]

474731

**KATONAH IX CLO LTD.,**
as a Lender

DANIEL GILLIGAN
Authorized Officer
Katonah Debt Advisors, L.L.C.
As Manager

KBC Financial Products (Cayman Islands) Ltd.

as a Lender

ARTHUR W. STRASSLE
EXECUTIVE VICE PRESIDENT

_____ __ Bro ___
____no. ____ Signatory

[Amendment No. 1 (First Lien)]

474731

**KC CLO II PLC,**
as a Lender

Melanie Harries
Assistant Vice President
Operations

[Amendment No. 1 (First Lien)]

474731

__KINGSLAND I, LTD.,__
as a Lender
By: Kingsland Capital Management, LLC, as Manager


By: _____

Name:          VINCENT GIINO
Title:          AUTHORIZED OFFICER
          KINGSLAND CAPITAL MANAGEMENT, LLC
          AS MANAGER

[Amendment No. 1 (First Lien)]

474731

<u>KINGSLAND II, LTD.,</u>
as a Lender
By: Kingsland Capital Management, LLC, as Manager

By: _____
Name:
Title:
         **VINCENT STINO**
     **AUTHORIZED OFFICER**
**KINGSLAND CAPITAL MANAGEMENT, LLC**
       **AS MANAGER**

[Amendment No. 1 (First Lien)]

**KINGSLAND V, LTD.,**
as a Lender
By: Kingsland Capital Management, LLC, as Manager


By: _____
Name:
Title:
        VINCENT SIINO
      AUTHORIZED OFFICER
   KINGSLAND CAPITAL MANAGEMENT, LLC
        AS MANAGER

[Amendment No. 1 (First Lien)]

KNIGHT CBNA LOAN FUNDING-

KNIGHT CFPI LOAN FUNDING LLC

Knight CBNA Loan Funding LLC, for itself or

as Agent for Knight CFPI Loan Funding LLC,

as a Lender

Erich VanRavenswaay
Assistant Vice President

[Amendment No. 1 (First Lien)]

474731

Latitude CLO I LTD.

as a Lender
Name: Kirk Wallace
Title:   Senior Vice President

[Amendment No. 1 (First Lien)]

474731

LightPoint CLO 2004-1, Ltd.
Premium Loan Trust I, Ltd.
LightPoint CLO III, Ltd.
LightPoint CLO VII, Ltd.

as a Lender

COLIN DONLAN
DIRECTOR

[Amendment No. 1 (First Lien)]

474731

**LOAN FUNDING IX LLC,** for itself or as agent for Corporate Loan Funding IX LLC
By: INVESCO Senior Secured Management, Inc. As Portfolio Manager

**Thomas Ewald**
**Authorized Signatory**

[Amendment No. 1 (First Lien)]

**Madison Park Funding**
as a Lender



By: _____
   Name:
   Title:   **David H. Lerner**
        **Authorized Signatory**

[Amendment No. 1 (First Lien)]

Madison Park Funding II
as a Lender

By: _____
   Name:
   Title:      **David H. Lerner**
              **Authorized Signatory**



[Amendment No. 1 (First Lien)]

Madison Park Funding V
as a Lender

By: _____
     Name:
     Title:     **David H. Lerner**
                **Authorized Signatory**

**Morgan Stanley Investment
Management Croton, Ltd.**
By: Morgan Stanley Investment Management Inc. as
Collateral Manager

_____

as a Lender

HOWARD TIFFEN
MANAGING DIRECTOR

[Amendment No. 1 (First Lien)]

**MORGAN STANLEY PRIME
INCOME TRUST**

as a Lender

HOWARD TIFFEN
MANAGING DIRECTOR

[Amendment No. 1 (First Lien)]

474731

**MOSELLE CLO S.A.**
By:  INVESCO Senior Secured Management, Inc.
        As Collateral Manager


**Thomas Ewald**
**Authorized Signatory**

[Amendment No. 1 (First Lien)]

474731

**MSIM Peconic Bay, Ltd.**
By: Morgan Stanley Investment Management Inc. as
Interim Collateral Manager

as a Lender

# HOWARD TIFFEN
## MANAGING DIRECTOR

[Amendment No. 1 (First Lien)]

474731

**Nationwide Life Insurance Company,**
as a Lender

By: _____
    JOSEPH P. YOUNG
    AUTHORIZED SIGNATORY

[Amendment No. 1 (First Lien)]

NAUTIQUE FUNDING LTD.
By:  INVESCO Senior Secured Management, Inc.
     As Collateral Manager


Thomas Ewald
Authorized Signatory

[Amendment No. 1 (First Lien)]

474731

NAVIGATOR CDO 2003, LTD., as a Lender

By:     Antares Asset Management Inc., as Collateral Manager

By: _____
Name:  Kathleen Brooks
Title:  Authorized Signatory

NAVIGATOR CDO 2004, LTD., as a Lender

By:     Antares Asset Management Inc., as Collateral Manager

By: _____
Name: Kathleen Brooks
Title:  Authorized Signatory

NAVIGATOR CDO 2005, LTD., as a Lender

By:     Antares Asset Management Inc., as Collateral Manager

By: _____
Name: Kathleen Brooks
Title:  Authorized Signatory

NAVIGATOR CDO 2006, LTD., as a Lender

By:     GE Asset Management Inc., as Collateral Manager

By: _____
Name: Kathleen Brooks
Title:  Authorized Signatory

ANTARES FUNDING, L.P., as a Lender

By:     The Bank of New York Trust Company, N.A., as Trustee of
        the Antares Funding Trust created under the Trust
        Agreement dated as of November 30, 1999

By: _____
Name: _____
Title: _____

[Amendment No. 1 (First Lien)]

474731

NAVIGATOR CDO 2003, LTD., as a Lender

By:    Antares Asset Management Inc., as Collateral Manager

By: _____
Name:  Kathleen Brooks
Title:  Authorized Signatory

NAVIGATOR CDO 2004, LTD., as a Lender

By:    Antares Asset Management Inc., as Collateral Manager

By: _____
Name: Kathleen Brooks
Title:  Authorized Signatory

NAVIGATOR CDO 2005, LTD., as a Lender

By:    Antares Asset Management Inc., as Collateral Manager

By: _____
Name: Kathleen Brooks
Title:  Authorized Signatory

NAVIGATOR CDO 2006, LTD., as a Lender

By:    GE Asset Management Inc., as Collateral Manager

By: _____
Name: Kathleen Brooks
Title:  Authorized Signatory

ANTARES FUNDING, L.P., as a Lender

By:    The Bank of New York Trust Company, N.A., as Trustee of
       the Antares Funding Trust created under the Trust
       Agreement dated as of November 30, 1999

By: _____
Name: _Leslie Hundley_____
Title: _AVP_____

[Amendment No. 1 (First Lien)]

474731

OSPREY CDO 2006-1 LTD
BRIGHTWATER CAPITAL MANAGEMENT AS
COLLATERAL MANAGER

_____

as a Lender

By: _____
Name: Thomas Irwin
Title: Executive Director


By: _____
Name: GEORGE SUSPANIC
Title: MANAGING DIRECTOR

[Amendment No. 1 (First Lien)]

**OWS CLO I LTD,**
as a Lender

By:   William Lemberg
Title:  Managing Director

[Amendment No. 1 (First Lien)]

Pacifica CDO II, Ltd.

By Alcentra Inc. as its Investment

——————————————————,

Name: Peanie Wang
Title:  Senior Vice President


Pacifica CDO IV, Ltd.

By Alcentra Inc. as its Investment

——————————————————,

Name: Peanie Wang
Title:  Senior Vice President


Westwood CDO II, Ltd.

By Alcentra Inc. as its Investment

——————————————————,

Name: Peanie Wang
Title:  Senior Vice President


Cambria Institutional Fund, Ltd.

By Alcentra Inc. as its Investment

——————————————————,

Name: Peanie Wang
Title:  Senior Vice President


[Amendment No. 1 (First Lien)]

PETRUSSE EUROPEAN CLO S.A.
By: INVESCO Senior Secured Management, Inc.
    As Collateral Manager

Thomas Ewald
Authorized Signatory

**QUALCOMM Global Trading, Inc.**
By: Morgan Stanley Investment Management Inc.
as Investment Manager

as a Lender

HOWARD TIFFEN
MANAGING DIRECTOR

[Amendment No. 1 (First Lien)]

474731

Rivendell CBNA Loan Funding LLC, for itself or as agent
for Rivendell CFPI Loan Funding LLC

as a Lender

**Janet Haack**
**As Attorney In Fact**

[Amendment No. 1 (First Lien)]

RiverSource Bond Series, Inc. -
RiverSource Floating Rate Fund

as a Lender

Robin C. Stancil
Assistant Vice President

[Amendment No. 1 (First Lien)]

474731

ROSEDALE CLO, LTD.
By: Princeton Advisory Group, Inc. the Collateral Manager
acting as attorney-in-fact

By:

_____,
as a Lender

Name: Jennifer Wright
Title: Vice President

474731

Rosedale CLO II LTD.
By: Princeton Advisory Group, Inc.
    as Collateral Manager

_____,
as a Lender

Name: Jennifer Wright
Title: Vice President

**SAGAMORE CLO LTD.**
By:  INVESCO Senior Secured Management, Inc.
       As Collateral Manager

Thomas Ewald
Authorized Signatory

[Amendment No. 1 (First Lien)]

474731

**SARATOGA CLO I, LIMITED**
By:  INVESCO Senior Secured Management, Inc.
      As the Asset Manager

Thomas Ewald
Authorized Signatory

[Amendment No. 1 (First Lien)]

474731

Saturn CLO, Ltd.

By: AIG Global Investment Corp.,

as Collateral Manager

LENDER:

By: _____

W. Jeffrey Baxter
Managing Director

474731                    [Amendment No. 1 (First Lien)]

**SCOTIA BANK (IRELAND) LTD,**
as a Lender

NEAM AHMED
AUTHORIZED SIGNATORY

[Amendment No. 1 (First Lien)]

474731

Sequils-Centurion V, Ltd.

By: RiverSource Investments,
LLC as Collateral Manager

_____
as a Lender          Robin C. Stancil
                     Director of Operations

474731

SOL Loan Funding LLC

as a Lender

**Richard Newcomb**
**Attorney-in-fact**

**SORIN REAL ESTATE CDO I LTD.**
as a Lender

By:  Wells Fargo Bank, National Association, as Trustee

By: _____
Name:  Brian Smith
Title:  AVP

[Amendment No. 1 (First Lien)]

474731

**SORIN REAL ESTATE CDO IV LTD.**
as a Lender

By:  Wells Fargo Bank, National Association, as Trustee

By: _____

    Name: *Brian Smith*
    Title: *AVP*

[Amendment No. 1 (First Lien)]

474731

**ST. JAMES RIVER CLO LTD.,**
as a Lender

By:

Name:  WADE T. WINTER
Title:  S.V.P.

[Amendment No. 1 (First Lien)]

474731

Stanfield Arbitrage CDO, Ltd.
By: Stanfield Capital Partners LLC
as its Collateral Manager

as a Lender

Christopher E. Jansen
Managing Partner

[Amendment No. 1 (First Lien)]

474731

Stanfield AZURE CLO, Ltd.
By: Stanfield Capital Partners, LLC
as its Collateral Manager

as a Lender

Christopher E. Jansen
Managing Partner

**Stanfield Bristol CLO, Ltd.**
**By: Stanfield Capital Partners LLC**
**as it Collateral Manager**

as a Lender

Christopher E. Jansen
Managing Partner

[Amendment No. 1 (First Lien)]

474731

Stanfield Carrera CLO, Ltd.
By:  Stanfield Capital Partners LLC
as its Asset Manager

as a Lender

Christopher E. Jansen
Managing Partner

[Amendment No. 1 (First Lien)]

474731

Stanfield Daytona CLO, Ltd
By: Stanfield Capital Partners, LLC
as its Collateral Manager

_____
as a Lender

Christopher E. Jansen
Managing Partner

Stanfield Modena CLO, Ltd
By: Stanfield Capital Partners, LLC
as its Asset Manager

_____
as a Lender

Christopher E. Jansen
Managing Partner

474731

Stanfield Vantage CLO, Ltd
By: Stanfield Capital Partners, LLC
as its Asset Manager

_____
as a Lender

Christopher E. Jansen
Managing Partner

[Amendment No. 1 (First Lien)]

474731

Stanfield Veyron CLO, Ltd
By: Stanfield Capital Partners, LLC
as its Collateral Manager

_____
as a Lender

Christopher E. Jansen
Managing Partner

474731

**SUMMIT LAKE CLO LTD.,**
as a Lender

By: _____
Name: WADE T. WINTER
Title: S.V.P.

474731

SunAmerica Senior Floating Rate Fund, Inc.

By:  AIG Global Investment Corp.

Investment Sub-Adviser

LENDER:

By:        _____

W. Jeffrey Baxter
Managing Director

474731                              [Amendment No. 1 (First Lien)]

**TRS CALLISTO LLC**, as a Lender
By: Deutsche Bank AG New York Bank, its Sole Member
By: DB Services New Jersey, Inc.

By: _____    Alice L. Wagner
                                     Vice President

By: _____

Angeline Quintana
Assistant Vice President

[Amendment No. 1 (First Lien)]

474731

**UBS AG, Stamford Branch**

as a Lender

By: *[signature]*

Toba Lumbantobing
Associate Director
Banking Products
Services, US

By *[signature]*

Janice L. Randolph
Associate Director
Banking Products Services, US

[Amendment No. 1 (First Lien)]

47473

**UBS AG, Stamford Branch**

as a Lender

By: *[signature]*

Toba Lumbantobing
Associate Director
Banking Products
Services, US

By *[signature]*

Janice L. Randolph
Associate Director
Banking Products Services, US

[Amendment No. 1 (First Lien)]

**ULT CBNA Loan Funding LLC**

as a Lender

**Richard Newcomb**
**Attorney-in-fact**

**Venture CDO 2002, Limited**
**By its investment advisor,**
**MJX Asset Management LLC**

as a Lender

Venture II CDO 2002, Limited
By its investment advisor,
MJX Asset Management LLC


as a Lender

[Amendment No. 1 (First Lien)]

**Venture III CDO Limited**
**By its investment advisor,**
**MJX Asset Management LLC**

as a Lender

[Amendment No. 1 (First Lien)]

474731

**Venture IV CDO Limited**
**By its investment advisor,**
**MJX Asset Management LLC**

as a Lender

[Amendment No. 1 (First Lien)]

474731

Venture V CDO Limited
By its investment advisor,
MJX Asset Management LLC

as a Lender

[Amendment No. 1 (First Lien)]

Venture VI CDO Limited
By its investment advisor,
MJX Asset Management LLC

as a Lender

[Amendment No. 1 (First Lien)]

474731

Venture VII CDO Limited
By its investment advisor,
MJX Asset Management LLC

as a Lender

[Amendment No. 1 (First Lien)]

474731

Venture VIII CDO, Limited
By its investment advisor,
MJX Asset Management LLC

as a Lender

[Amendment No. 1 (First Lien)]

474731

VICTORIA FALLS CLO LTD.,
as a Lender

By: _____
Name: WADE T. WINTER
Title: S.V.P.

[Amendment No. 1 (First Lien)]

Vista Leveraged Income Fund
By its investment advisor,
MJX Asset Management LLC

as a Lender

[Amendment No. 1 (First Lien)]

474731

**WASATCH CLO LTD**
By:  INVESCO Senior Secured Management, Inc.
    As Portfolio Manager

Thomas Ewald
Authorized Signatory

474731

**WG HORIZONS CLO I**

BY:  West Gate Horizons Advisors LLC,
     as Manager

By: _____
Name:  Steve Gorski
Title:    Senior Credit Analyst

WhiteHorse I, Ltd.
By:    WhiteHorse Capital Partners, L.P.
       As Collateral Manager

as a Lender

Ethan Underwood, Portfolio Manager

WhiteHorse II, Ltd.
     By:    WhiteHorse Capital Partners, L.P.
            As Collateral Manager

as a Lender

Ethan Underwood, Portfolio Manager

WhiteHorse III, Ltd.
By:     WhiteHorse Capital Partners, L.P.
         As Collateral Manager

as a Lender

Ethan Underwood, Portfolio Manager

[Amendment No. 1 (First Lien)]

474731

XL Re Ltd.
By: Stanfield Capital Partners LLC
as its Collateral Manager

as a Lender

Christopher E. Jansen
Managing Partner

[Amendment No. 1 (First Lien)]

474731

**Annex 1**

**Released Real Property**

# AREA A LEGAL DESCRIPTION

THAT PART OF SECTION 10, TOWNSHIP 20 NORTH, RANGE 18 WEST OF THE GILA AND
SALT RIVER BASE AND MERIDIAN, MOHAVE COUNTY, ARIZONA, DESCRIBED AS
FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF SAID SECTION 10; THENCE NORTH
00°13'56" EAST ALONG THE WESTERLY LINE OF SAID SECTION 10, A DISTANCE OF 1137.52
FEET;  THENCE SOUTH 89°46'04" EAST, A DISTANCE OF 195.39 FEET TO THE **POINT OF
BEGINNING:**

THENCE TO A POINT ON A NON-TANGENT CURVE TO THE LEFT HAVING A RADIUS OF
100.00 FEET, A CENTRAL ANGLE OF 39°13'29", A TANGENT LENGTH OF 35.63 FEET, THE
LONG CHORD OF WHICH BEARS SOUTH 21°33'29" EAST, A DISTANCE OF 67.13 FEET WITH
A RADIAL LINE IN OF NORTH 88°03'16" EAST, AND A RADIAL LINE OUT OF SOUTH
48°49'47" WEST;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 68.46 FEET TO A POINT ON A
REVERSE CURVE TO THE RIGHT HAVE A RADIUS OF 187.00 FEET, A TANGENT LENGTH OF
653.12 FEET, A CENTRAL ANGLE OF 148°02'42", THE RADIUS OF WHICH BEARS SOUTH
48°49'47" WEST, THE CHORD AT WHICH BEARS SOUTH 32°51'08" WEST, A DISTANCE OF
359.55 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 483.18 TO A POINT ON A NON-
TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 1000.00 FEET, A CENTRAL ANGLE
OF 23°12'39", A TANGENT LENGTH OF 205.37 FEET; THE LONG CHORD OF WHICH BEARS
NORTH 25°03'15" EAST, A DISTANCE OF 402.34 FEET WITH A RADIAL LINE IN OF SOUTH
76°33'05" EAST AND A RADIAL LINE OUT OF NORTH 53°20'26" WEST AN ARC LENGTH OF
405.11 FEET TO THE **POINT OF BEGINNING.**

**EXCEPT** ALL MINERAL DEPOSITS AND RIGHTS AS RESERVED BY STATE OF ARIZONA IN
DEED RECORDED IN BOOK 54 OF DEEDS, PAGE 519, RECORDS OF MOHAVE COUNTY,
ARIZONA; AND

**EXCEPT** ALL OIL, GAS, AND MINERALS AS RESERVED IN DEED RECORDED IN BOOK OF
OFFICIAL RECORDS 189, PAGE 103 AND BOOK OF OFFICIAL RECORDS 283, PAGE 931,
RECORDS OF MOHAVE COUNTY, ARIZONA.

474731

# AREA B LEGAL DESCRIPTION

THAT PART OF SECTION 10, TOWNSHIP 20 NORTH, RANGE 18 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MOHAVE COUNTY, ARIZONA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SAID SECTION 10; THENCE SOUTH 89°42'33" EAST ALONG THE NORTHERLY LINE OF SAID SECTION 10, A DISTANCE OF 2576.94 FEET; THENCE SOUTH 00°17'27" WEST, A DISTANCE OF 497.04 FEET TO THE **POINT OF BEGINNING:**

THENCE SOUTH 70°41'28" EAST, A DISTANCE OF 551.12 FEET;

THENCE SOUTH 19°42'34" WEST, A DISTANCE OF 2182.01 FEET;

THENCE NORTH 69°53'25" WEST, A DISTANCE OF 980.44 FEET;

THENCE NORTH 22°00'59" EAST, A DISTANCE OF 1331.19 FEET TO THE POINT ON A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 749.00 FEET, A TANGENT LENGTH OF 178.12 FEET, A CENTRAL ANGLE OF 26°45'17", THE RADIUS OF WHICH BEARS SOUTH 67°59'01" EAST, THE CHORD OF WHICH BEARS NORTH 35°23'37" EAST, A DISTANCE OF 346.58 FEET AN ARC LENGTH OF 349.75 FEET;

THENCE NORTH 48°46'16" EAST, A DISTANCE OF 580.62 FEET TO THE **POINT OF BEGINNING.**

**EXCEPT** ALL MINERAL DEPOSITS AND RIGHTS AS RESERVED BY STATE OF ARIZONA IN DEED RECORDED IN BOOK 54 OF DEEDS, PAGE 519, RECORDS OF MOHAVE COUNTY, ARIZONA; AND

**EXCEPT** ALL OIL, GAS, AND MINERALS AS RESERVED IN DEED RECORDED IN BOOK OF OFFICIAL RECORDS 189, PAGE 103 AND BOOK OF OFFICIAL RECORDS 283, PAGE 931, RECORDS OF MOHAVE COUNTY, ARIZONA.

# AREA C LEGAL DESCRIPTION

THAT PART OF SECTION 3 AND 10, TOWNSHIP 20 NORTH, RANGE 18 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MOHAVE COUNTY, ARIZONA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER (SE 1/4) OF SAID SECTION 3; THENCE NORTH 00°12'51" EAST ALONG THE WESTERLY LINE OF THE SOUTHEAST QUARTER (SE 1/4) OF SAID SECTION 3, A DISTANCE OF 760.16 FEET; THENCE SOUTH 89°47'09" EAST, A DISTANCE OF 687.04 FEET TO THE **POINT OF BEGINNING:**

THENCE SOUTH 79°16'06" EAST, A DISTANCE OF 208.46 FEET TO THE POINT ON A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 1492.50 FEET, A TANGENT LENGTH OF 264.41 FEET, A CENTRAL ANGLE OF 20°05'32", THE RADIUS OF WHICH BEARS SOUTH 10°43'54" WEST, THE CHORD OF WHICH BEARS SOUTH 69°13'20" EAST, A DISTANCE OF 520.71 FEET AN ARC LENGTH OF 523.39 FEET;

THENCE SOUTH 19°01'02" WEST, A DISTANCE OF 620.81 FEET;

THENCE NORTH 70°45'43" WEST, A DISTANCE OF 727.83 FEET TO A POINT ON A NON-TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 2121.00 FEET, A CENTRAL ANGLE OF 16°22'15", A TANGENT LENGTH OF 305.09 FEET, THE LONG CHORD OF WHICH BEARS NORTH 19°07'11" EAST, A DISTANCE OF 603.97 FEET, WITH A RADIAL LINE IN OF NORTH 62°41'42" WEST AND A RADIAL LINE OUT OF SOUTH 79°03'57" EAST AN ARC LENGTH OF 606.03 FEET TO THE **POINT OF BEGINNING.**

**EXCEPT** ALL MINERAL DEPOSITS AND RIGHTS AS RESERVED BY STATE OF ARIZONA IN DEED RECORDED IN BOOK 54 OF DEEDS, PAGE 519, RECORDS OF MOHAVE COUNTY, ARIZONA; AND

**EXCEPT** ALL OIL, GAS, AND MINERALS AS RESERVED IN DEED RECORDED IN BOOK OF OFFICIAL RECORDS 189, PAGE 103 AND BOOK OF OFFICIAL RECORDS 283, PAGE 931, RECORDS OF MOHAVE COUNTY, ARIZONA.

# AREA D LEGAL DESCRIPTION

THAT PART OF SECTION 2, TOWNSHIP 20 NORTH, RANGE 18 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MOHAVE COUNTY, ARIZONA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF SAID SECTION 2; THENCE NORTH 00°14'11" EAST ALONG THE WESTERLY LINE OF SAID SECTION 2, A DISTANCE OF 651.05 FEET; THENCE SOUTH 89°45'49" EAST, A DISTANCE OF 658.43 FEET TO THE **POINT OF BEGINNING:**

THENCE SOUTH 90°00'00" EAST, A DISTANCE OF 1086.44 FEET;

THENCE SOUTH 24°58'34" EAST, A DISTANCE OF 186.73 FEET;

THENCE SOUTH 65°16'21" WEST, A DISTANCE OF 984.76 FEET;

THENCE NORTH 24°59'02" WEST, A DISTANCE OF 641.19 FEET TO THE **POINT OF BEGINNING.**

**EXCEPT** ALL MINERAL DEPOSITS AND RIGHTS AS RESERVED BY STATE OF ARIZONA IN DEED RECORDED IN BOOK 54 OF DEEDS, PAGE 519, RECORDS OF MOHAVE COUNTY, ARIZONA; AND

**EXCEPT** ALL OIL, GAS, AND MINERALS AS RESERVED IN DEED RECORDED IN BOOK OF OFFICIAL RECORDS 189, PAGE 103 AND BOOK OF OFFICIAL RECORDS 283, PAGE 931, RECORDS OF MOHAVE COUNTY, ARIZONA.

474731

# AREA E LEGAL DESCRIPTION

THAT PART OF SECTION 4, TOWNSHIP 20 NORTH, RANGE 18 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MOHAVE COUNTY, ARIZONA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHEAST CORNER OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 4; THENCE NORTH 00°17'21" EAST, ALONG THE EASTERLY LINE OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 4, A DISTANCE OF 42.03 FEET; THENCE NORTH 89°42'39" WEST, A DISTANCE OF 30.00 FEET TO THE **POINT OF BEGINNING:**

THENCE NORTH 00°17'21" EAST, A DISTANCE OF 233.35 FEET;

THENCE NORTH 89°39'46" WEST, A DISTANCE OF 233.35 FEET;

THENCE SOUTH 00°17'21" WEST, A DISTANCE OF 233.35 FEET;

THENCE SOUTH 89°39'46" EAST, A DISTANCE OF 233.35 FEET TO THE **POINT OF BEGINNING.**

474731

## Annex 2

## Exchanged Real Property

474731

# AREA 1 LEGAL DESCRIPTION

THAT PART OF SECTION 9 AND 10, TOWNSHIP 20 NORTH, RANGE 18 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MOHAVE COUNTY, ARIZONA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 9;  THENCE SOUTH 89°39'30" EAST ALONG THE SOUTHERLY LINE OF THE NORTHWEST QUARTER (NW 1/4) OF SAID SECTION 9, A DISTANCE OF 1889.27 FEET; THENCE SOUTH 00°20'30" WEST, A DISTANCE OF 791.68 FEET TO THE **POINT OF BEGINNING:**

THENCE SOUTH 66°12'30" EAST, A DISTANCE OF 1199.31 FEET TO A POINT ON A TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 1877.00 FEET, A TANGENT LENGTH OF 301.24 FEET, A CENTRAL ANGLE OF 18°14'08", THE RADIUS OF WHICH BEARS NORTH 23°47'30" EAST, THE CHORD WHICH BEARS SOUTH 75°19'34" EAST, A DISTANCE OF 594.87 FEET AN ARC LENGTH OF 597.39 FEET;

THENCE SOUTH 84°26'38" EAST, A DISTANCE OF 778.74 FEET TO A POINT ON A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 1923.00 FEET, A TANGENT LENGTH OF 145.81 FEET, A CENTRAL ANGLE OF 08°40'19", THE RADIUS OF WHICH BEARS SOUTH 05°33'22" WEST, THE CHORD OF WHICH BEARS SOUTH 80°06'28" EAST, A DISTANCE OF 290.77 FEET AN ARC LENGTH OF 291.05 FEET;

THENCE SOUTH 75°46'19" EAST, A DISTANCE OF 500.54 FEET TO A POINT ON A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 100.00 FEET, A TANGENT LENGTH OF 62.17 FEET, A CENTRAL ANGLE OF 63°44'09", THE RADIUS OF WHICH BEARS SOUTH 14°13'41" WEST, THE CHORD OF WHICH BEARS SOUTH 43°54'14" EAST, A DISTANCE OF 105.59 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 111.24 FEET TO A POINT ON A REVERSE CURVE TO THE LEFT HAVING A RADIUS OF 187.00 FEET, A TANGENT LENGTH OF 110.35 FEET, A CENTRAL ANGLE OF 61°05'21", THE RADIUS OF WHICH BEARS NORTH 77°57'50" EAST, THE CHORD IN WHICH BEARS SOUTH 42°34'50" EAST, A DISTANCE OF 190.07 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 199.38 FEET TO THE POINT ON A NON-TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 1000.00 FEET, A CENTRAL ANGLE OF 13°12'59", A TANGENT LENGTH OF 115.85 FEET, THE LONG CHORD OF WHICH

BEARS SOUTH 06°50'25" WEST, A DISTANCE OF 230.16 FEET WITH A RADIAL LINE IN OF SOUTH 76°33'05" EAST, AND A RADIAL LINE OUT OF NORTH 89°46'04" WEST, AN ARC DISTANCE OF 230.67 FEET;

THENCE SOUTH 00°13'56" WEST, A DISTANCE OF 545.72 FEET;

THENCE NORTH 89°37'05" WEST, A DISTANCE OF 829.69 FEET TO A POINT ON A TANGENT CURVE TO THE RIGHT WITH A RADIUS OF 2002.00 FEET, A TANGENT LENGTH OF 1238.94 FEET, A CENTRAL ANGLE OF 63°30'09", THE RADIUS WHICH BEARS NORTH 00°22'55" EAST, THE CHORD WHICH BEARS NORTH 57°52'01" WEST, A DISTANCE OF 2107.04 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 2218.87 FEET TO A POINT ON A REVERSE CURVE TO THE LEFT HAVING A RADIUS OF 1573.00 FEET, A TANGENT LENGTH OF 573.97 FEET, A CENTRAL ANGLE OF 40°05'34", THE RADIUS OF WHICH BEARS SOUTH 63°53'04" WEST, THE CHORD OF WHICH BEARS NORTH 46°09'43" WEST, A DISTANCE OF 1078.39 FEET AN ARC LENGTH OF 1100.71 FEET TO THE **POINT OF BEGINNING.**

**EXCEPT** ALL MINERAL DEPOSITS AND RIGHTS AS RESERVED BY STATE OF ARIZONA IN DEED RECORDED IN BOOK 54 OF DEEDS, PAGE 519, RECORDS OF MOHAVE COUNTY, ARIZONA; AND

**EXCEPT** ALL OIL, GAS, AND MINERALS AS RESERVED IN DEED RECORDED IN BOOK OF OFFICIAL RECORDS 189, PAGE 103 AND BOOK OF OFFICIAL RECORDS 283, PAGE 931, RECORDS OF MOHAVE COUNTY, ARIZONA.

474731

# AREA 2 LEGAL DESCRIPTION

THAT PART OF SECTION 10, TOWNSHIP 20 NORTH, RANGE 18 WEST OF THE GILA AND
SALT RIVER BASE AND MERIDIAN, MOHAVE COUNTY, ARIZONA, DESCRIBED AS
FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF THE NORTHWEST QUARTER (NW 1/4) OF
SAID SECTION 10;  THENCE NORTH 00°14'30" EAST ALONG THE WESTERLY LINE OF SAID
SECTION 10, A DISTANCE OF 298.09 FEET;  THENCE SOUTH 89°45'30" EAST, A DISTANCE OF
1277.78 FEET TO THE **POINT OF BEGINNING:**

THENCE SOUTH 69°53'25" EAST, A DISTANCE OF 130.07 FEET;

THENCE SOUTH 22°00'59" WEST, A DISTANCE OF 831.74 FEET TO A POINT ON A TANGENT
CURVE TO THE RIGHT HAVING A RADIUS OF 1500.00 FEET, A TANGENT LENGTH OF 467.43
FEET, A CENTRAL ANGLE OF 34°36'58", THE RADIUS OF WHICH BEARS NORTH 67°59'01"
WEST, THE CHORD OF WHICH BEARS SOUTH 39°19'28" WEST, A DISTANCE OF 892.53 FEET
AN ARC LENGTH OF 906.25 FEET;

THENCE SOUTH 56°37'57" WEST, A DISTANCE OF 98.53 FEET TO A POINT ON A TANGENT
CURVE TO THE LEFT HAVING A RADIUS OF 1000.00 FEET, A TANGENT LENGTH OF 176.09
FEET, A CENTRAL ANGLE OF 19°58'23", THE RADIUS OF WHICH BEARS SOUTH 33°22'03"
EAST, THE CHORD OF WHICH BEARS SOUTH 46°38'46" WEST, A DISTANCE OF 346.83 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 348.60 FEET TO THE POINT ON
A NON-TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 100.00 FEET, A CENTRAL
ANGLE OF 19°01'51", A TANGENT LENGTH OF 16.76 FEET, THE LONG CHORD OF WHICH
BEARS NORTH 07°34'11" EAST, A DISTANCE OF 33.06 FEET WITH A RADIAL LINE IN OF
NORTH 88°03'16" EAST, AND A RADIAL LINE OUT OF NORTH 72°54'53" WEST, AN ARC
DISTANCE OF 33.22 FEET;

THENCE NORTH 17°05'07" EAST, A DISTANCE OF 343.14 FEET TO A POINT ON A TANGENT
CURVE TO THE RIGHT WITH A RADIUS OF 1879.00 FEET, A TANGENT LENGTH OF 360.13
FEET, A CENTRAL ANGLE OF 21°41'57", THE RADIUS WHICH BEARS SOUTH 72°54'53" EAST,
THE CHORD WHICH BEARS NORTH 27°56'05" EAST, A DISTANCE OF 707.38 FEET AN ARC
LENGTH OF 711.62 FEET;

THENCE NORTH 38°47'04" EAST, A DISTANCE OF 985.74 FEET TO A POINT ON A TANGENT CURVE TO THE LEFT WITH A RADIUS OF 2121.00 FEET, A TANGENT LENGTH OF 28.50 FEET, A CENTRAL ANGLE OF 01°32'24", THE RADIUS WHICH BEARS NORTH 50°25'10" WEST, THE CHORD WHICH BEARS NORTH 38°48'38" EAST, A DISTANCE OF 57.00 FEET AN ARC LENGTH OF 57.01 FEET TO THE **POINT OF BEGINNING.**


**EXCEPT** ALL MINERAL DEPOSITS AND RIGHTS AS RESERVED BY STATE OF ARIZONA IN DEED RECORDED IN BOOK 54 OF DEEDS, PAGE 519, RECORDS OF MOHAVE COUNTY, ARIZONA; AND


**EXCEPT** ALL OIL, GAS, AND MINERALS AS RESERVED IN DEED RECORDED IN BOOK OF OFFICIAL RECORDS 189, PAGE 103 AND BOOK OF OFFICIAL RECORDS 283, PAGE 931, RECORDS OF MOHAVE COUNTY, ARIZONA.

474731

# AREA 3 LEGAL DESCRIPTION

THAT PART OF SECTION 2 AND 3, TOWNSHIP 20 NORTH, RANGE 18 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MOHAVE COUNTY, ARIZONA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF THE NORTHWEST QUARTER (NW 1/4) OF SAID SECTION 2;  THENCE SOUTH 00°14'11" WEST ALONG THE WESTERLY LINE OF SAID SECTION 2, A DISTANCE OF 1262.25 FEET;  THENCE SOUTH 89°45'49" EAST, A DISTANCE OF 315.77 FEET TO THE **POINT OF BEGINNING:**

THENCE SOUTH 24°59'02" EAST, A DISTANCE OF 804.19 FEET;

THENCE NORTH 90°00'00" WEST, A DISTANCE OF 27.94 FEET;

THENCE SOUTH 56°55'53" WEST, A DISTANCE OF 1464.79 FEET;

THENCE SOUTH 67°46'05" WEST, A DISTANCE OF 44.50 FEET TO A POINT ON A NON-TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 1492.50 FEET, A CENTRAL ANGLE OF 36°56'39", A TANGENT LENGTH OF 498.58 FEET, THE LONG CHORD OF WHICH BEARS NORTH 40°42'14" WEST, A DISTANCE OF 945.78 FEET WITH A RADIAL LINE IN OF SOUTH 67°46'05" WEST, AND A RADIAL LINE OUT OF NORTH 30°49'26" EAST, AN ARC LENGTH OF 962.36 FEET;

THENCE NORTH 19°01'02" EAST, A DISTANCE OF 117.76 FEET;

THENCE NORTH 64°58'39" EAST, A DISTANCE OF 1694.45 FEET TO THE **POINT OF BEGINNING.**

**EXCEPT** ALL MINERAL DEPOSITS AND RIGHTS AS RESERVED BY STATE OF ARIZONA IN DEED RECORDED IN BOOK 54 OF DEEDS, PAGE 519, RECORDS OF MOHAVE COUNTY, ARIZONA; AND

474731

**EXCEPT** ALL OIL, GAS, AND MINERALS AS RESERVED IN DEED RECORDED IN BOOK OF OFFICIAL RECORDS 189, PAGE 103 AND BOOK OF OFFICIAL RECORDS 283, PAGE 931, RECORDS OF MOHAVE COUNTY, ARIZONA.

474731

# AREA 4 LEGAL DESCRIPTION

THAT PART OF SECTION 2, TOWNSHIP 20 NORTH, RANGE 18 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MOHAVE COUNTY, ARIZONA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF THE NORTHWEST QUARTER (NW 1/4) OF SAID SECTION 2;  THENCE SOUTH 89°47'07" EAST ALONG THE SOUTHERLY LINE OF THE NORTHWEST QUARTER (NW 1/4) OF SAID SECTION 2, A DISTANCE OF 2396.32 FEET; THENCE SOUTH 00°12'53" WEST, A DISTANCE OF 670.08 FEET TO THE **POINT OF BEGINNING:**

THENCE TO A POINT ON A NON-TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 1527.00 FEET, A CENTRAL ANGLE OF 12°30'20", A TANGENT LENGTH OF 167.31 FEET, THE LONG CHORD OF WHICH BEARS SOUTH 07°13'35" EAST, A DISTANCE OF 332.63 FEET WITH A RADIAL LINE IN OF SOUTH 73°31'15" WEST, AND A RADIAL LINE OUT OF NORTH 89°01'35" EAST, AN ARC LENGTH OF 333.29 FEET;

THENCE SOUTH 00°58'25" EAST, A DISTANCE OF 982.03 FEET;

THENCE SOUTH 89°01'35" WEST, A DISTANCE OF 91.00 FEET;

THENCE NORTH 90°00'00" WEST, A DISTANCE OF 624.69 FEET;

THENCE NORTH 24°58'34" WEST, A DISTANCE OF 912.22 FEET;

THENCE NORTH 64°58'44" EAST, A DISTANCE OF 1150.28 FEET TO THE **POINT OF BEGINNING.**

**EXCEPT** ALL MINERAL DEPOSITS AND RIGHTS AS RESERVED BY STATE OF ARIZONA IN DEED RECORDED IN BOOK 54 OF DEEDS, PAGE 519, RECORDS OF MOHAVE COUNTY, ARIZONA; AND

**EXCEPT** ALL OIL, GAS, AND MINERALS AS RESERVED IN DEED RECORDED IN BOOK OF OFFICIAL RECORDS 189, PAGE 103 AND BOOK OF OFFICIAL RECORDS 283, PAGE 931, RECORDS OF MOHAVE COUNTY, ARIZONA.

474731

**Exhibit 1**

**Form of Officer's Certificate**

I, Paul Huygens, DO HEREBY CERTIFY that I am the duly elected and qualified Chief Financial Officer and Treasurer of (1) Sagebrush Enterprises, Inc. ("**Sagebrush**"), which is the sole member of The Rhodes Companies, LLC, which is the managing partner of RHODES RANCH GENERAL PARTNERSHIP, a Nevada general partnership ("**Rhodes Ranch**"), (2) Sedora Holdings, LLC ("**Sedora**"), which is the managing member of HERITAGE LAND COMPANY, LLC, a Nevada limited liability company ("**Heritage**"), and (3) Sagebrush, which is the sole member of THE RHODES COMPANIES, LLC, a Nevada limited liability company ("**The Rhodes Companies**" and together with Rhodes Ranch and Heritage, the "**Companies**"), and that, in such capacity, I am authorized to execute this Officer's Certificate for and on behalf of each of the Companies.

I further certify, solely in my capacity as the Chief Financial Officer and Treasurer of Sagebrush and Sedora, and on behalf of each of the Companies, as follows:

1.      This Officer's Certificate is being delivered pursuant to that certain proposed Amendment No. 1 ("**Amendment No. 1**"; capitalized terms used but not defined herein having the meanings set forth therein) to be entered into among the Companies and the Subsidiary Guarantors party thereto, the Lenders who elect to execute such Amendment No. 1, and Credit Suisse, Cayman Islands Branch, as administrative agent for the Lenders and as collateral agent for the Lenders.

2.      To the best knowledge of the Companies and their respective officers, directors, members and affiliates, the value of the Exchanged Real Property is not less than the value of the Released Real Property and prior to the Permitted Land Exchange, no Loan Party owns any interest in the Exchanged Real Property.

3.      Except as could not reasonably be expected to result in a Material Adverse Effect (as defined in the Credit Agreement), there are no underground storage tanks, asbestos, polychlorinated biphenyls, underground injection wells, radioactive materials, septic tanks or waste disposal pits in which process wastewater or any Hazardous Materials have been discharged or disposed, or any other environmental contamination or other potential environmental liabilities associated with or arising out of the Exchanged Real Property.

I represent the foregoing information to be, to the best of my knowledge and belief, true and correct and execute this Officer's Certificate this ____ day of _____ 2007.

_____

Paul Huygens, Chief Financial Officer and Treasurer

474731