1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Electronically Filed*
*May 27, 2010*

Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
Telephone:  702.979.2357
Facsimile:  702.362.9472
E-Mail:    nleatham@klnevada.com

Philip C. Dublin (NY Bar No. 2959344)
Meredith A. Lahaie (NY Bar No. 4518023)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone:  212.872.1000
Facsimile:  212.872.1002

E-Mail:    pdublin@akingump.com
           mlahaie@akingump.com

*Counsel for the Reorganized Debtors*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | § | **Case No. 09-14814-LBR** |
| | § | **(Jointly Administered)** |
| **THE RHODES COMPANIES, LLC,** | § | |
| aka "Rhodes Homes," *et al.*, | § | **Chapter 11** |
| | § | |
| Reorganized Debtors.[1] | § | **Hearing Date:    June 21, 2010** |
| | § | **Hearing Time:    9:30 A.M.** |
| | § | **(Being Requested on OST)** |
| | § | |

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

| Affects: | § | REORGANIZED DEBTORS' OBJECTION |
| ☒ **All Debtors** | § | **TO JAMES RHODES' PROOF OF CLAIM** |
| ☐ **Affects the following** | § | **NO. 814-33 AND NOTICE OF AMENDMENT** |
| **Debtor(s)** | § | **OF SCHEDULES OF ASSETS AND** |
| | § | **LIABILITIES** |

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors"), by and through their undersigned counsel, hereby object (the "Objection") pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") to the proof of claim (the "Proof of Claim") filed by James Rhodes ("Rhodes") in the amount of $10,598,000, a copy of which is attached hereto as Exhibit A.  In support of this Objection, the Reorganized Debtors respectfully represent as follows:

## **PRELIMINARY STATEMENT**

1.     On July 17, 2009, Rhodes filed the Proof of Claim in the Chapter 11 Cases (as defined below) seeking $10,598,000 for (i) the reimbursement of taxes in the amount of $9,729,151[2] (the "Taxes") paid by Rhodes for the 2006 tax year (the "Tax Claim") on account of taxable income allocated to Rhodes from the Debtor Entities (as defined below) through the Rhodes Entities (as defined below) and (ii) $868,849[3] allegedly advanced to Greenway Partners, LLC ("Greenway Partners") for a purpose not disclosed in the Proof of Claim (the "Greenway Partners Claim" and, together with the Tax Claim, the "Claims").  Neither the Tax Claim nor the Greenway Partners Claim should be allowed.

2.     With respect to the Tax Claim, Rhodes does not cite to any provision of the

---

[2] This amount includes $2,754,992 in penalties and interest paid by Rhodes.

[3] This amount represents the difference between the face amount of the Proof of Claim and the amount of the Tax Claim.  Nevertheless, the accuracy of this amount is unknown as a result of Rhodes' failure to provide any information regarding the nature, extent or validity of the Greenway Partners Claim, and the Reorganized Debtors remain entirely uncertain as to the actual amount of the Greenway Partners Claim.

**AKIN GUMP STRAUSS HAUER & FELD LLP**
**One Bryant Park**
**New York, New York 10036**
**Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com**

operative documents that governed the Debtor Entities that would entitle him to be

reimbursed for the Taxes he paid on account of the taxable income allocated to him from the

Debtors Entities through the Rhodes Entities.  In addition, Rhodes has failed to identify any

provision of state or federal law that would require the Debtor Entities to reimburse him for

the Taxes.  Rhodes instead relies on a provision of the First Lien Credit Agreement that

would permit – but does not require – the Debtor Entities to make a distribution to Rhodes to

reimburse him for taxes paid on account of taxable income allocated to him from the Debtor

Entities.  Thus, the Tax Claim should be expunged and disallowed in its entirety because

none of the First Lien Credit Agreement, any other agreement or applicable law obligates

the Debtor Entities to reimburse Rhodes for the Taxes.

3.      The Greenway Partners Claim should also be disallowed because Rhodes has

not alleged facts sufficient to establish a claim.  As filed, the Proof of Claim provides no

insight into the identity of Greenway Partners or the reasons for Rhodes' alleged

advancement of monies to Greenway Partners.  In addition, the Proof of Claim fails to

provide any details regarding the source of the monies that were allegedly advanced to

Greenway Partners or the basis for Rhodes' belief that the Debtors (as defined below) are

obligated to him on account of the monies that he allegedly advanced.  Moreover, the

amount of money allegedly advanced to Greenway Partners is unspecified, and Rhodes has

provided no details regarding the timing of the alleged transfers to Greenway Partners.  As a

result of Rhodes' failure to provide such information, there is simply no basis on which to

conclude that the Greenway Partners Claim is valid.

4.      In addition to the foregoing, the Schedules (as defined below) reflect that

Rhodes and certain of his affiliated entities are incorrectly scheduled as having a limited

number of Scheduled Claims (as defined below). After a careful review of the Scheduled Claims, the Reorganized Debtors have determined that the Scheduled Claims are invalid. As set forth below and in the Declaration of Dominic Longi in Support of the Objection (the "Longi Declaration") (attached hereto as Exhibit B), the Scheduled Claims are unsupported by documentation demonstrating the applicable Debtor's obligation to pay or inconsistent with the manner in which the applicable Debtor was operated. Specifically, the Scheduled Claim against Rhodes Homes Arizona, LLC ("Rhodes Homes Arizona") is invalid based on, among other things, the fact that Rhodes Homes Arizona has not historically been responsible for paying compensation to Rhodes. In addition, the Scheduled Claim against Pinnacle Grading, LLC ("Pinnacle Grading") is unsupported by any agreement requiring Pinnacle Grading to make payments to non-Debtor Pinnacle Equipment Rental, LLC ("Pinnacle Equipment") and, in fact, Pinnacle Grading may have a claim against Pinnacle Equipment based on payments already made to a third party. Finally, no agreement exists that would validate the Scheduled Claim of Sedora (as defined below) against Heritage (as defined below) for legal defense costs related to certain prepetition litigation. Accordingly, the Reorganized Debtors have filed amended Schedules contemporaneously herewith removing the Scheduled Claims from the Schedules.

## JURISDICTION

5.      This Court has jurisdiction over the Objection under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.      Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

7.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 502 and Bankruptcy Rule 3007.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

## BACKGROUND

**A.    General Background**

8.    On either March 31, 2009 or April 1, 2009 (collectively, the "Petition Date"), each of the debtors (collectively, the "Debtors") commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

9.    On April 13, 2009, the Court issued a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines establishing August 5, 2009 as the deadline for all creditors other than governmental units to file proofs of claim asserting claims in the Chapter 11 Cases.

10.    On April 30, 2009, each of the Debtors filed its schedules of assets and liabilities (the "Schedules").  The Schedules were subsequently amended on July 2, 2009 and again on January 20, 2010.  *See* Rhodes Homes Arizona Docket Nos. 12, 18 and 33; Pinnacle Grading Docket Nos. 12, 17 and 36; Heritage Docket Nos. 136 and 142.

11.    On March 12, 2010, the Court entered an order confirming the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.* (the "Plan").  Pursuant to the Plan, the deadline for the Reorganized Debtors to object to clams asserted by Rhodes and/or certain affiliated entities or individuals is 60 days from effective date (the "Effective Date") of the Plan.[4]  On April 1, 2010, the Effective Date of the Plan occurred.  Accordingly, the deadline to object to the Proof of Claim is May 31, 2010.

**B.    The Claims**

12.    On July 17, 2009, Rhodes filed the Proof of Claim seeking $10,598,000

---

[4] The 60-day deadline applies to objections to "Rhodes Entities Claims" as that term is defined in the Plan.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

comprised of the Tax Claim and the Greenway Partners Claim.

**1.      The Tax Claim**

13.      By the Tax Claim, Rhodes seeks reimbursement for the Taxes he paid on account of taxable income allocated, directly and indirectly, to him from Heritage Land Company, LLC, The Rhodes Companies, LLC, Rhodes Ranch General Partnership (collectively, the "Debtor Entities"), including income originating in pass-through or disregarded entities owned by the Debtor Entities.  The taxable income from the Debtor Entities was passed through to Rhodes through Sedora Holdings, LLC, Rhodes Ranch, LLC and Sagebrush Enterprises, Inc. (collectively, the "Rhodes Entities").

14.      The Rhodes Entities are non-debtor entities ultimately owned by Rhodes that previously controlled the Debtor Entities.  The relationship between the Rhodes Entities and the Debtor Entities during the period prior to confirmation of the Plan is set forth below:



---

[5] Sedora is owned by two dynasty trusts established and owned by Rhodes for the benefit of his family, with tax liability flowing through to Rhodes.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

As depicted above, Rhodes Companies was a single member limited liability company with Sagebrush, an S corporation, as its single member.  RRGP was a general partnership with Rhodes Companies and Rhodes Ranch as its two partners.  Heritage was a limited liability company with two members, Sedora and Rhodes Ranch.  Sedora was a limited liability company, and like Rhodes Companies, Rhodes Ranch was a single member limited liability company with Sagebrush as its single member.[6]

15.     Taxable income generated by the Debtor Entities was passed through to Rhodes through the Rhodes Entities in the following manner: (i) taxable income generated by Rhodes Companies was allocated to Rhodes as a result of his equity interest in Sagebrush; (ii) taxable income generated by RRGP was also allocated to Rhodes as a result of his equity interest in Sagebrush; and (iii) taxable income generated by Heritage was allocated to Rhodes as a result of (a) his indirect membership interest in Sedora and (b) his equity interest in Sagebrush, with taxable income flowing to Sagebrush as a result of its membership interest in Rhodes Ranch.  The attachments to the Proof of Claim indicate that the total amount of the taxable income that flowed through to Rhodes was $21,014,159, resulting in taxes of $6,974,159.  Rhodes also paid penalties and interest in the amount of $2,754,992, bringing the total amount paid by Rhodes to $9,729,151.

16.     Rhodes asserts that he is owed payment for the Taxes pursuant to the terms of that certain Credit Agreement dated as of November 21, 2005 among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein as the Lenders and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner

---

[6] With the exception of Sagebrush, each of the Debtor Entities and the Rhodes Entities was organized in Nevada.  Sagebrush was initially organized in Nevada, but it was reincorporated in Delaware in 2008.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

and Sole Lead Arranger (the "First Lien Credit Agreement").  Rhodes does not rely on any provision in the operative documents of the Debtor Entities or any state or federal statute requiring the Debtor Entities to reimburse him for taxes paid on account of income allocable to such Debtor Entities.

**2.    The Greenway Partners Claim**

17.    Pursuant to the Greenway Partners Claim, Rhodes asserts a claim for monies advanced to Greenway Partners.  Rhodes does not, however, provide any support for the Greenway Partners Claim through factual allegations regarding the nature, extent or validity of the Greenway Partners Claim.  In addition, Rhodes provides no information regarding the identity of Greenway Partners or the relationship between Greenway Partners and the Debtor Entities, Rhodes or any entities affiliated with Rhodes.

**C.    The Scheduled Claims**

18.    In addition to the Claims, the Schedules reflect that Rhodes and certain of his affiliated entities are incorrectly scheduled as having a limited number of claims against the Debtors (the "Scheduled Claims") for which no proofs of claim were filed.  The Scheduled Claims include the following:

| Party Holding Claim | Entity Liable on Claim | Amount of Claim | Basis for Claim |
|---|---|---|---|
| Rhodes (*See* Rhodes Homes Arizona Docket No. 33, pg. 3) (attached hereto as Exhibit C) | Rhodes Homes Arizona | $151,999.01 | Compensation |
| Pinnacle Equipment (*See* Pinnacle Grading Docket No. 17, pg. 19) (attached hereto as Exhibit C) | Pinnacle Grading | $557,302.09 | Equipment Rental Payments |
| Sedora (*See* Heritage Land Company Docket No. 142, pg. 9) (attached hereto as Exhibit C) | Heritage Land Company | $167,901.86 | Litigation Expenses Arising out of Litigation with Deutsche Bank Securities, Inc. |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

## OBJECTION

19.     By the Objection, the Reorganized Debtors seek entry of an order, pursuant to Bankruptcy Code section 502(b) and Bankruptcy Rule 3007, disallowing and expunging the Claims in full.  The Claims should be disallowed because (i) Rhodes is not a creditor and does not hold a claim for reimbursement of the Taxes and (ii) Rhodes has not alleged sufficient facts to establish a valid claim with respect to the Greenway Partners Claim. Contemporaneously with the filing of this Objection, the Reorganized Debtors have also amended the Schedules to remove the Scheduled Claims for the reasons set forth below and request such Scheduled Claims be disallowed in their entirety, if, for any reason, the Court were to determine that the Reorganized Debtors are not authorized to amend the Schedules to remove the Scheduled Claims.

**I.      The Tax Claim Should be Disallowed Because Rhodes is Not a Creditor and Does Not Hold a Claim for the Reimbursement of Taxes**

**A.      "Creditor" as Defined in the Bankruptcy Code**

20.     Pursuant to Bankruptcy Code section 501(a), only creditors and indenture trustees may file proofs of claim in a debtor's chapter 11 proceeding.  11 U.S.C. § 501(a). Bankruptcy Code section 101(10) defines the term "creditor" as –

(A)     [an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B)     [an] entity that has a claim against the estate of a kind specified in section 348(d), 502 (f), 502(g), 502(h), or 502(i) of this title; or

(C)     [an] entity that has a community claim.

11 U.S.C. §101(10).  Under subsection (A) of Bankruptcy Code section 101(10), an entity is

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

a creditor only if such entity holds a prepetition claim against the debtor.[7]

**B.    "Claim" as Defined in the Bankruptcy Code**

21.    The Bankruptcy Code defines "claim" broadly as a right to payment or a right to an equitable remedy for a breach of performance if such breach gives rise to a right to payment. *See* 11 U.S.C. § 101(5).  Courts have recognized that the Bankruptcy Code's definition of "claim" has the broadest meaning possible. *See F.C.C. v. NextWave Personal Commc'ns Inc.*, 537 U.S. 293, 302 (2003) ("We have said that 'claim' has the 'broadest available definition.'") (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)); *Sherman v. Securities and Exch. Comm'n (In re Sherman)*, 491 F.3d 948, 958 (9th Cir. 2007) (recognizing that Congress intended to adopt the broadest available definition of "claim").  Thus, the Bankruptcy Code's definition of "claim" permits that the right to payment or the right to an equitable remedy forming the basis of a claim may be liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured and need not be reduced to judgment. *See* 11 U.S.C. § 101(5).

22.    Notwithstanding the foregoing, legal precedent establishes certain limits as to what constitutes a claim under the Bankruptcy Code.  Specifically, an entity holds a claim and, thus, a right to payment only where there is an obligation running from the debtor to the party asserting the claim that is enforceable under either state or federal law. *See NextWave Personal Commc'ns Inc.*, 537 U.S. at 294 ("The plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation . . . ."); *Travelers Cas. & Sur. Co. of*

---

[7] Pursuant to Bankruptcy Code section 303(b), the commencement of a voluntary chapter 11 case constitutes an order for relief under chapter 11 of the Bankruptcy Code. *See* 11 U.S.C. § 303(b).  Accordingly, to satisfy the requirements of Bankruptcy Code section 101(10)(A), the entity must hold a claim that arose prior to the date on which the debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The requirements of Bankruptcy Code sections 101(10)(B) and (C) are not discussed in further detail herein because such provisions are not relevant to the analysis of the claim filed by Rhodes.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1  *Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007) ("[C]reditors' entitlements in

2  bankruptcy arise in the first instance from the underlying substantive law creating the

3  debtor's obligation . . . ."); *Pany v. First Alliance Mortgage Co. (In re First Alliance*

4  *Mortgage Co.)*, 269 B.R. 428, 435 (Bankr. C.D. Cal. 2001) ("Whether a right to payment

5  exists in a bankruptcy case is generally determined by reference to state law.").

6

7  **C.    Tax Obligations With Respect to Pass-Through or Disregarded Entities**

8     **1.    Pass-Through Entities**

9     23.    Partnerships and limited liability companies[8] such as RRGP and Heritage are

10 generally characterized as "pass-through" entities for tax purposes, meaning tax obligations

11 flow through them to their partners or members.  Partnerships and limited liability

12 companies are therefore not obligated to pay taxes on account of the taxable income

13 generated by their business activity.  *See* 26 U.S.C. § 701; *United States v. Basye*, 410 U.S.

14 441, 448 (1973) (recognizing that partnerships are not required to pay taxes).  Instead, while

15 such entities are required to file returns stating, among other things, their taxable income,

16 partnerships and limited liability companies are treated as mere conduits through which tax

17 obligations pass to their partners or members.  *See Basye*, 410 U.S. at 448 (describing

18 partnerships as conduit entities); *Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324,

19 326-27 (2006) (discussing filing requirements and describing partnerships as conduit

20 entities).  The partners in the partnership or members in the limited liability company are

21

22

23

24     [8] Limited liability companies are generally treated the same as partnerships for tax purposes.  *See,*
25 *e.g.*, *Gilliam v. Speier (In re KRSM Props., LLC)*, 318 B.R. 712, 718 (B.A.P. 9th Cir. 2004) ("A tax advantage
   in the LLC form of business is the ability . . . [to] elect to be treated as a partnership for federal tax purposes . .
26 . ."); *Five Star Concrete, L.L.C. v. Klink, Inc.*, 693 N.E.2d 583, 586 (Ind. Ct. App. 1998) (noting that limited
   liability companies "are treated by federal and state taxing bodies in the same way as partnerships, that is,
27 income 'passes through' the entity and is taxed to the member, an owner of an interest in the company").  A
   limited liability company may also elect to be treated as an association (i.e., a corporation) for tax purposes.
28 *See* 26 C.F.R. § 301-7701-3(a).  Upon information and belief, however, none of the Debtor Entities or the
   Rhodes Entities elected to be treated as an association.  Accordingly, the consequences of such an election are
   not discussed herein.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

ultimately responsible for paying taxes on the taxable income generated by the entity in accordance with their distributive share under the operative documents for the partnership or limited liability company. *See Basye*, 410 U.S. at 448 (recognizing that partners are required to pay taxes based on their distributive share of a partnership's income); *Chef's Choice Produce, Ltd. v. Comm'r*, 95 T.C. 388, 392 (1990) (same). Moreover, partners or members are required to pay taxes regardless of whether they actually received a distribution from the partnership or limited liability company. *See* 26 C.F.R. § 1.702-1(a); *Vecchio v. Comm'r*, 103 T.C. 170, 185 (1994) ("Each partner is taxed on his distributive share of the partnership income without regard to whether the amount is actually distributed to him.").

24. Consistent with the foregoing, it has been held that that pass-through entities such as partnerships and limited liability companies do not have an obligation to make distributions to reimburse their partners or members for the taxes they paid in the absence of either (i) a statutory requirement, (ii) a provision in their operative documents requiring that such distributions be made or (iii) a decision by partners or member to make a distribution consistent with applicable law. *See Five Star Concrete*, 693 N.E.2d at 586. In *Five Star Concrete*, the court considered whether a former member had a right to a distribution in an amount equal to the income allocated to the former member for tax purposes. *Id.* In considering the issue, the court first noted that applicable Indiana statutes did not provide that the allocation of income for tax purposes created an automatic legal right to receive a distribution in the amount of such income. *Id.* The court then noted that the operative documents for the limited liability company were also silent regarding the timing and amount of distributions. *Id.* Under Indiana law, decisions regarding the making of distributions were therefore left to the decision of the majority of the limited liability

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

company's members, and the members had not ordered the limited liability company to make a distribution. *Id.* Accordingly, the court found that the former member had no right to a distribution under either Indiana law or the operative documents of the limited liability company. *Id.*

25.    Although *Five Star Concrete* concerns an Indiana limited liability company, the reasoning employed by the court is equally applicable to partnerships and limited liability companies organized under Nevada law. No applicable Nevada statute provides that an allocation of income to a member in a limited liability company or partner in a partnership creates an automatic legal right to receive a distribution. Instead, applicable Nevada statutes provide that the rights of a partner in a partnership or a member in a limited liability company to receive distributions are governed by the operative documents for the entity, or a decision by the members of a limited liability company or partners in a partnership to make distributions. *See* NEV. REV. STAT. § 87.4316 (2010) ("[R]elations among the partners and between the partners and the partnership are governed by the partnership agreement."); NEV. REV. STAT. § 86.341 (2010) ("A limited-liability company may, from time to time, divide the profits of its business and distribute them to its members . . . upon the basis stipulated in the operating agreement.").

### 2.    Disregarded Entities

26.    Although limited liability companies are generally characterized as pass-through entities, limited liability companies that have only a single member, such as Rhodes Companies, are often treated as a "disregarded entities" for tax purposes.[9] A limited liability

---

[9] A single-member limited liability company may also elect to be treated as an association (i.e., corporation) for tax purposes. *See* 26 C.F.R. § 301.7701-3(a); *In re KSRM Props., LLC*, 318 B.R. at 718-19. As already noted, however, none of the Debtor Entities or the Rhodes Entities are believed to have made the election.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

company that is a disregarded entity is treated as a sole proprietorship for tax purposes and is not required to pay taxes or file separate tax returns. *In re KSRM Props., LLC*, 318 B.R. at 719; *Kandi v. United States*, No. C05-0840C, 2006 WL 83463, at *2 (W.D. Wash. Jan. 11, 2006). Instead, the single member is required to report all of the limited liability company's profits or losses on its personal tax return and pay the resulting taxes. *In re KSRM Props., LLC*, 318 B.R. at 719.

**D.      Rhodes is Not a Creditor And Does Not Hold a Claim for the Reimbursement of Taxes**

27.      The Tax Claim should be disallowed and expunged in full because Rhodes is not a creditor and does not hold a claim for reimbursement of the Taxes. As previously discussed, Rhodes is a creditor in the Chapter 11 Cases only if he has asserted an allowed prepetition claim, and he has a prepetition claim only if the Tax Claim is based on a right of payment or, in other words, an enforceable obligation of the Debtor Entities to Rhodes. Rhodes has not satisfied these requirements with respect to the Tax Claim.

28.      First, under federal law, the tax obligations on the taxable income generated by the Debtor Entities automatically flowed to the Rhodes Entities and, ultimately, to Rhodes. As discussed above, RRGP was a partnership, and Heritage was a limited liability company. In addition, Rhodes Companies was a single member limited liability company. Accordingly, for tax purposes, the Debtor Entities consisted of (i) two pass-through entities (RRGP and Heritage) and (ii) one disregarded entity (Rhodes Companies). Thus, the tax obligations associated with the taxable income generated by the Debtor Entities flowed to the Rhodes Entities and then to Rhodes as a result of the fact that the Rhodes Entities also

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

were either pass-through entities (Sedora and Sagebrush) [10] or disregarded entities (Rhodes Ranch).

29.     Second, Rhodes has not identified any statute or any provision contained in the Debtor Entities' operative documents requiring that the Debtor Entities reimburse Rhodes for the Taxes.  Without expressly contracting for the Debtor Entities to reimburse him if and when he pays taxes on account of taxable income attributable to the Debtor Entities, Rhodes has no legal entitlement to reimbursement for such tax payments.  Moreover, the members and partners in the Debtor Entities failed to direct the Debtor Entities to make a distribution prior to the Petition Date.  Thus, like the former member in *Five Star Concrete*, Rhodes has not demonstrated a legal right to a distribution to reimburse him for taxes paid on account of the taxable income allocated to him from the Debtor Entities through the Rhodes Entities.

30.     Finally, the First Lien Credit Agreement does not obligate the Debtor Entities to reimburse Rhodes for the Taxes.  The First Lien Credit Agreement provides only that the Debtor Entities were permitted – but not required – to make distributions to the Rhodes Entities for the purpose of reimbursing Rhodes for tax payments.  In relevant part, the First Lien Credit Agreement provides:

> The Borrowers[11] . . . ***may make*** Restricted Payments to the Parents for the purposes of permitting the direct or indirect holders of Capital Stock of the Parents to pay their respective United States federal, state or local tax obligations with respect to net income allocated to them from the Borrowers

---

[10] As previously discussed, Sagebrush was organized as an S corporation.  S corporations are small business corporations with fewer than 75 shareholders. *See* 26 U.S.C. § 1361(b)(1)(A); *Info. Sys. & Networks Corp. v. United States*, 437 F.3d 1173, 1175 (Fed. Cir. 2006).  Although not discussed in section I.C.1 above, S corporations are also pass-through entities for tax purposes. *See, e.g.*, *Info. Sys. & Networks Corp.*, 437 F.3d at 1175 ("The [S corporation] does not pay income tax on the income it generates.  Rather only the shareholders of the S corporation pay income tax on their corporate dividends.").

[11] All capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the First Lien Credit Agreement.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

and their Subsidiaries (including, without limitation, with respect to tax obligations relating to the Fiscal Years ending December 31, 2004 and December 31, 2005).

First Lien Credit Agreement, Section 6.5(iii) (emphasis added) (attached hereto as Exhibit D). Thus, by its terms, the provision of the First Lien Credit Agreement relied upon by Rhodes merely permitted the Debtor Entities to make distribution to the Rhodes Entities for purposes of reimbursing Rhodes for the Taxes, but did not give rise to a binding obligation that is enforceable against the Debtor Entities.

31.    As a result of the foregoing, Rhodes does not hold a valid claim for reimbursement of taxes paid and is not a creditor for purposes of Bankruptcy Code section 501(a). Accordingly, the Tax Claim must be disallowed and expunged in full. In the event that the Court does not disallow the Tax Claim in full, however, the Reorganized Debtors maintain that they should not be found liable to Rhodes under any circumstances for the $2,754,992 in penalties and interest that he paid as a result of either his failure to timely file taxes or his reliance on erroneous tax advice.

**II.    The Greenway Partners Claim should be Disallowed Because Rhodes has Failed to Allege Sufficient Facts to Establish a Valid Claim**

**A.    The Burden of Proof With Respect to Proofs of Claim**

32.    Pursuant to Bankruptcy Code section 502(a), a proof of claim is deemed allowed unless a party objects. *See* 11 U.S.C. § 502(a); *Lundell v. Anchor Constr. Specialists*, 223 F.3d 1035, 1039 (9th Cir. 2000). Nevertheless, the claimant has the initial burden of alleging facts sufficient to establish its claim. *See Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (noting that a claim is valid if the claimant sets forth all the necessary facts to establish a claim); *Bendon v. Andrade & Assocs. (In re Colt Eng'g, Inc.)*, 288 B.R. 861, 878 (Bankr. C.D. Cal. 2003) ("The claimant must first allege facts

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

sufficient to support its claim.").  If the claimant carries its initial burden, the claimant's proof of claim is *prima facie* valid, and if a party objects to the proof of claim, the burden shifts to the objecting party to show facts tending to defeat the claim by probative force equal to that of the allegations of the proof of claim.  *Lundell v. Anchor Constr. Specialists*, 223 F.3d at 1039; *In re Holm*, 931 F.2d at 623.

33.     If, however, the claimant does not carry its initial burden of alleging facts sufficient to establish its claim, the claimant's proof of claim is not *prima facie* valid. *Ashford v. Consol. Pioneer Mortgage (In re Consol. Pioneer Mortgage)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995); *Hilton v. Hongisto (In re Hongisto)*, 293 B.R. 45, 50 (N.D. Cal. 2003).  Where a proof of claim is not *prima facie* valid, the claimant retains the burden of demonstrating that its claim is valid if an objection is filed.  *See In re Hongisto*, 293 B.R. at 50-51 (holding that the bankruptcy court did not err in placing the burden to overcome an objection on the claimant where the claimant failed to allege facts sufficient to establish its claim).  In the event that the claimant fails to carry its burden of establishing the validity of its claim after an objection is filed, the claim may be disallowed.  *See id.* at 51 (affirming the bankruptcy court's order disallowing the claim where claimant failed to allege sufficient facts to establish a valid claim); *Heath v. American Express Travel Related Servs. Co., Inc. (In re Heath)*, 331 B.R. 424, 437 (B.A.P. 9th Cir. 2005) (recognizing that a claimant's inability to provide documentation to support its claim after an objection has been filed may result in the disallowance of its claim).

**B.     Rhodes has not Alleged Sufficient Facts to Establish the Greenway Partners Claim**

34.     Rhodes has failed to allege facts sufficient to establish the Greenway Partners Claim.  The proof of claim form filed by Rhodes merely notes that the basis for the claim

17

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

includes "monies advanced to Greenway Partners, LLC." With the exception of this bare statement, the proof of claim form is devoid of any information regarding the nature, extent or validity of the Greenway Partners Claim. The proof of claim form filed by Rhodes provides no insight into, among other things, (i) the identity of Greenway Partners, (ii) the reasons for Rhodes' alleged advancement of monies to Greenway Partners, (iii) the source of the monies that were allegedly advanced, (iv) the basis for Rhodes' belief that the Debtors are obligated to him on account of the monies that he allegedly advanced, (v) the amount of money allegedly advanced to Greenway Partners by Rhodes and (vi) the timing of the transaction. In short, Rhodes has not provided *any* information that would allow a party-in-interest to evaluate the validity of the Greenway Partners Claim and, thus, cannot satisfy his burden of proof that the Greenway Partners Claim is assertable against these estates. Accordingly, the Greenway Partners Claim should be disallowed and expunged in full.

### III.    The Scheduled Claims are Invalid and the Schedules will be Amended Contemporaneously Herewith

35.    Following a review of the Scheduled Claims, the Reorganized Debtors have concluded that the Scheduled Claims should be expunged. The bases for the Reorganized Debtors' determination are set forth below:

| Party Holding Claim | Entity Liable on Claim | Amount of Claim/Basis for Claim | Reason Invalid |
|---|---|---|---|
| Rhodes (*See* Rhodes Homes Arizona Docket No. 33, pg. 3) (attached hereto as <u>Exhibit C</u>) | Rhodes Homes Arizona | $151,999.01/ Compensation | Rhodes Homes Arizona does not owe Rhodes any compensation. Based on the Reorganized Debtors' review of available information and information received from the Debtors' third party payroll services provider, Rhodes was never paid compensation from the accounts payable for Rhodes Homes Arizona, and Rhodes was not paid from the payroll of Rhodes Homes Arizona at any point after |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

| Party Holding Claim | Entity Liable on Claim | Amount of Claim/Basis for Claim | Reason Invalid |
|---|---|---|---|
| | | | January 2005.  Moreover, no documentation has been located to support Rhodes' Scheduled Claim for compensation from Rhodes Homes Arizona. |
| Pinnacle Equipment (*See* Pinnacle Grading Docket No. 17, pg. 19) (attached hereto as <u>Exhibit C</u>) | Pinnacle Grading | $557,302.09/ Equipment Rental Payments | Pinnacle Equipment obtained construction equipment and provided the equipment to Pinnacle Grading for use in connection with work being performed on the Pravada Project in Arizona.  In connection with obtaining the equipment, Pinnacle Equipment entered into a security agreement and promissory note with Caterpillar Financial Services Corporation ("<u>Caterpillar</u>").  Based on the Debtors' books and records, Pinnacle Grading paid Caterpillar directly on the promissory note between Pinnacle Equipment and Caterpillar, potentially giving rise to a claim for overpayment by Pinnacle Grading against Pinnacle Equipment.  Despite efforts to locate a rental agreement between Pinnacle Equipment and Pinnacle Grading, no such agreement has been located that requires Pinnacle Grading to make payments to Pinnacle Equipment, and relevant personnel of the Reorganized Debtors do not recall having viewed such an agreement in the past.  In addition, Main Amundson and Associates, an outside accounting firm, was unable to locate a rental agreement between Pinnacle Equipment and Pinnacle Grading during its audit of the Debtors during the fourth quarter of 2008. |
| Sedora (*See* Heritage Land Company Docket No. 142, pg. 9) (attached hereto as <u>Exhibit C</u>) | Heritage | $167,901.86/ Litigation Expenses Arising Out of Litigation with Deutsche Bank Securities, Inc. | This claim is for defense costs related to litigation initiated by Deutsche Bank Securities, Inc. against Rhodes, Sagebrush, Rhodes Companies, Heritage, Rhodes Design and Development Corporation and RRGP (collectively, the "<u>Rhodes Defendants</u>") related to a potential credit facility.  Stewart |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

| Party Holding Claim | Entity Liable on Claim | Amount of Claim/Basis for Claim | Reason Invalid |
|---|---|---|---|
|  |  |  | Occhipinti LLP ("Stewart Occhipinti") served as defense counsel for the Rhodes Defendants.  Invoices from Stewart Occhipinti were made out to "Rhodes Homes," and such invoices were paid by either Sedora or Sagebrush.  Based on the Reorganized Debtors' review of the available information, Heritage paid approximately $800,000 to settle the litigation, potentially giving rise, subject to further investigation, to a claim by Heritage against Rhodes or Sedora.  Heritage is not, however, required to reimburse Sedora for defense costs related to the litigation by any applicable agreement. |

36.     The Reorganized Debtors maintain that they are entitled to amend the Schedules at any time prior to the time at which the Chapter 11 Cases are closed.  *See* FED. R. BANKR. P. 1009(a); *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 255 (B.A.P. 9th Cir. 1988) (noting that Rule 1009(a) is liberally construed to freely allow amendments to a debtor's schedules).  Moreover, the Reorganized Debtors do not believe that court approval is required in order to amend the Schedules.  *See Martinson v. Michael (In re Michael)*, 163 F.3d 526, 529 (9th Cir. 1998) (noting that a debtor may amend its schedules without court approval).  Accordingly, the Reorganized Debtors provide this information regarding the amendment of their Schedules solely for the benefit of the Court and do not seek authorization to effectuate the amendments described herein.  Nevertheless, to the extent the Court determines that the Schedules cannot be amended, this Objection shall be deemed an objection to the Scheduled Claims for the reasons set forth in the chart above and stated in the Longi Declaration, attached hereto as Exhibit B.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Reorganized Debtors respectfully request that the Claims be disallowed in their entirety, and that this Court (i) enter an order, substantially in the form attached hereto as Exhibit E, (ii) disallow the Scheduled Claims in the event the Court determines that the Schedules cannot be amended and (iii) grant the Reorganized Debtors such other and further relief as is just, proper and equitable.

Dated this 27th day of May, 2010.

By:    /s/  Philip C. Dublin
Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
(702) 979-2357 (Telephone)
(702) 362-9472 (Facsimile)
Nleatham@klnevada.com

AKIN GUMP STRAUSS HAUER & FELD LLP
Philip C. Dublin (NY Bar No. 2959344)
Meredith A. Lahaie (NY Bar No. 4518023)
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
pdublin@akingump.com
mlahaie@akingump.com

*Counsel for the Reorganized Debtors*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York  10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com