# EXHIBIT A

# EXHIBIT A

**CREDIT AGREEMENT**

**DATED AS OF NOVEMBER 21, 2005**

among

**HERITAGE LAND COMPANY, LLC,**
**THE RHODES COMPANIES, LLC**
and
**RHODES RANCH GENERAL PARTNERSHIP,**
as the Borrowers,

**THE LENDERS LISTED HEREIN,**
as the Lenders,

and

**CREDIT SUISSE, CAYMAN ISLANDS BRANCH,**
as Administrative Agent, Collateral Agent, Syndication Agent,
Sole Bookrunner and Sole Lead Arranger

**$430,000,000 SENIOR SECURED CREDIT FACILITY**
**(FIRST LIEN)**

413775.11-Los Angeles Server 2A - MSW

# TABLE OF CONTENTS

**Page**

SECTION 1. DEFINITIONS ..................................................................................................1

    1.1    Certain Defined Terms.............................................................................1
    1.2    Defined Terms; Accounting Terms; Utilization of GAAP for Purposes of Calculations Under Agreement..........................................................31

SECTION 2. AMOUNTS AND TERMS OF COMMITMENTS AND LOANS ....................31

    2.1    Commitments; Loans...............................................................................31
    2.2    Interest on the Loans................................................................................33
    2.3    Fees..........................................................................................................36
    2.4    Repayments and Prepayments; General Provisions Regarding Payments....................36
    2.5    Use of Proceeds......................................................................................43
    2.6    Special Provisions Governing Eurodollar Rate Loans.............................43
    2.7    Increased Costs; Taxes............................................................................45
    2.8    Mitigation Obligations; Replacement of Lenders...................................48
    2.9    Releases; Subordinations.........................................................................48
    2.10    Subordinations in connection with Map Approvals.................................49
    2.11    Subordinations in connection with Qualified Sales Agreements..............50

SECTION 3. CONDITIONS TO EFFECTIVENESS .........................................................50

    3.1    Conditions to Effectiveness. ...................................................................50

SECTION 4. REPRESENTATIONS AND WARRANTIES ................................................58

    4.1    Organization and Qualification...............................................................58
    4.2    Power and Authority................................................................................58
    4.3    Legally Enforceable Agreement..............................................................58
    4.4    No Conflict..............................................................................................58
    4.5    Capital Structure.....................................................................................59
    4.6    Licenses. .................................................................................................59
    4.7    Corporate Names. ...................................................................................59
    4.8    Business Locations; Agent for Process....................................................60
    4.9    Title to Properties....................................................................................60
    4.10    Priority of Liens; UCC-1 Financing Statements. ....................................61
    4.11    No Subordination.....................................................................................61
    4.12    Permits; Licenses; Franchises.................................................................61
    4.13    Indebtedness............................................................................................62
    4.14    Financial Condition; Pro Forma Balance Sheet; Projections....................62
    4.15    Disclosure. ..............................................................................................62
    4.16    Solvent Financial Condition. ..................................................................63
    4.17    Surety Obligations. .................................................................................63
    4.18    Taxes.......................................................................................................63
    4.19    Brokers....................................................................................................63

i

4.20     Intellectual Property..................................................................................64
4.21     Governmental Authorization.......................................................................64
4.22     Compliance with Laws. ...............................................................................64
4.23     Burdensome Contracts.................................................................................64
4.24     Litigation.....................................................................................................64
4.25     No Defaults..................................................................................................65
4.26     Leases. .........................................................................................................65
4.27     Employee Benefit Plans...............................................................................65
4.28     Trade Relations............................................................................................66
4.29     Labor Relations............................................................................................66
4.30     Not a Regulated Entity.................................................................................66
4.31     Margin Stock................................................................................................66
4.32     No Material Adverse Change........................................................................67
4.33     Environmental Matters.................................................................................67
4.34     Material Contracts........................................................................................68
4.35     Utilities. .......................................................................................................69
4.36     Entitlements. ................................................................................................69

SECTION 5. AFFIRMATIVE COVENANTS ...............................................................69

5.1      Visits and Inspections. .................................................................................69
5.2      Notices. ........................................................................................................70
5.3      Financial Statements and Other Reports......................................................71
5.4      Corporate Existence.....................................................................................77
5.5      Payment of Taxes and Claims; Tax Consolidation......................................77
5.6      Maintenance of Properties; Insurance..........................................................78
5.7      Lender Meeting.............................................................................................78
5.8      Compliance with Laws, etc..........................................................................78
5.9      Environmental Disclosure and Inspection. ..................................................78
5.10     Remedial Action Regarding Hazardous Materials........................................79
5.11     Additional Collateral; Execution of Subsidiary Guaranty and Collateral Documents
         by Future Subsidiaries..................................................................................80
5.12     Interest Rate Protection................................................................................82
5.13     Further Assurances.......................................................................................82
5.14     Title..............................................................................................................82
5.15     Maintenance of Entitlements; Development Agreements. ............................82
5.16     Interest Reserve Account..............................................................................83
5.17     Golf Course Equity Payments......................................................................83
5.18     Credit Rating.................................................................................................83
5.19     Post-Closing Covenants................................................................................83

SECTION 6. NEGATIVE COVENANTS .....................................................................84

6.1      Indebtedness.................................................................................................84
6.2      Liens and Related Matters. ..........................................................................85
6.3      Investments. .................................................................................................87
6.4      Contingent Obligations.................................................................................88
6.5      Restricted Payments.....................................................................................89
6.6      Financial Covenants.....................................................................................90
6.7      Restriction on Fundamental Changes. ..........................................................91
6.8      Sale or Discount of Receivables. .................................................................91

ii

6.9      Asset Sales. .................................................................................................91
6.10     Transactions with Shareholders and Affiliates. .......................................93
6.11     Conduct of Business. ................................................................................94
6.12     Tuscany Option Agreement. .....................................................................94
6.13     Amendments or Waivers of Certain Agreements. ....................................95
6.14     Fiscal Year. ...............................................................................................95
6.15     Hedge Agreements. ..................................................................................95
6.16     Limitation on Standing Inventory. ...........................................................95
6.17     Limitation on Unentitled Properties. ........................................................95
6.18     Limitation on Purchase of Real Property Assets. ....................................95
6.19     Permitted SPE Subsidiary Activities. .......................................................96

SECTION 7. EVENTS OF DEFAULT .............................................................................96

7.1      Payment of Obligations. ...........................................................................96
7.2      Misrepresentations. ...................................................................................96
7.3      Breach of Certain Covenants. ...................................................................96
7.4      Breach of Other Covenants. ......................................................................96
7.5      Default Under Loan Documents. ...............................................................96
7.6      Other Defaults. ..........................................................................................97
7.7      Insolvency Proceedings. ...........................................................................97
7.8      Business Disruption; Condemnation. ........................................................97
7.9      ERISA. .......................................................................................................98
7.10     Challenge to Loan Documents; Invalidity. ...............................................98
7.11     Judgment. ..................................................................................................98
7.12     Repudiation of or Default Under Subsidiary Guaranty. ...........................98
7.13     Criminal Forfeiture. ..................................................................................98
7.14     Change of Control. ....................................................................................99

SECTION 8. AGENTS .....................................................................................................99

8.1      Appointment. ............................................................................................99
8.2      Rights as a Lender. ..................................................................................100
8.3      Exculpatory Provisions. ..........................................................................100
8.4      Reliance by the Agents. ..........................................................................101
8.5      Delegation of Duties. ..............................................................................101
8.6      Resignation of Administrative Agent and/or Collateral Agent...............101
8.7      Collateral Documents; Successor Collateral Agent. ...............................102
8.8      Non-Reliance on Agents and Other Lenders. ..........................................103

SECTION 9. MISCELLANEOUS ...................................................................................103

9.1      Assignments and Participations in Loans. ..............................................103
9.2      Expenses; Indemnity; Damage Waiver. ..................................................106
9.3      Right of Set-Off. ......................................................................................108
9.4      Sharing of Payments by Lenders. ...........................................................108
9.5      Amendments and Waivers. ......................................................................109
9.6      Independence of Covenants. ....................................................................110
9.7      Notices. ....................................................................................................110
9.8      Survival of Representations, Warranties and Agreements.......................111
9.9      Failure or Indulgence Not Waiver; Remedies Cumulative......................112

iii

9.10    Marshalling; Payments Set Aside. .................................................................112
9.11    Severability. ................................................................................................112
9.12    Obligations Several; Independent Nature of the Lenders' Rights. ................112
9.13    Maximum Amount. ......................................................................................112
9.14    Headings. ....................................................................................................113
9.15    Applicable Law. ..........................................................................................113
9.16    Successors and Assigns. ..............................................................................113
9.17    Consent to Jurisdiction and Service of Process. .........................................113
9.18    Waiver of Jury Trial. ...................................................................................115
9.19    Confidentiality. ...........................................................................................115
9.20    Borrowers' Responsibility For Compliance With Environmental Laws .......116
9.21    Joint and Several Liability. ..........................................................................116
9.22    Counterparts; Integration; Effectiveness; Electronic Execution. .................118
9.23    USA Patriot Act Notification .......................................................................118

iv

## EXHIBITS

Exhibit I ...........Form of Administrative Questionnaire
Exhibit II ..........Form of Assignment Agreement
Exhibit III .........Form of Assignment of Declarant's Rights
Exhibit IV ........Form of Compliance Certificate
Exhibit V ..........Form of Disbursement Authorization
Exhibit VI ........Financial Plan
Exhibit VII .......Form of Intercreditor Agreement
Exhibit VIII ......Form of Note
Exhibit IX ........Form of Notice of Conversion/Continuation
Exhibit X ..........Form of Pledge and Security Agreement
Exhibit XI ........Description of Projects
Exhibit XII .......Form of Subsidiary Guaranty
Exhibit XIII ......Form of Copyright Security Agreement
Exhibit XIV ......Form of Solvency Certificate

413775.11-Los Angeles Server 2A - MSW

**HERITAGE LAND COMPANY, LLC,**
**THE RHODES COMPANIES, LLC**
**and**
**RHODES RANCH GENERAL PARTNERSHIP**

**CREDIT AGREEMENT**

This **CREDIT AGREEMENT** (this "**Agreement**") is dated as of November 21, 2005 and entered into by and among **HERITAGE LAND COMPANY, LLC**, a Nevada limited liability company ("**Heritage Land**"), **THE RHODES COMPANIES, LLC**, a Nevada limited liability company ("**Rhodes Companies**"), and **RHODES RANCH GENERAL PARTNERSHIP**, a Nevada general partnership ("**Rhodes GP**" and, collectively with Heritage Land and Rhodes Companies, the "**Borrowers**" and each, individually, a "**Borrower**"), **THE BANKS, FINANCIAL INSTITUTIONS AND OTHER ENTITIES LISTED ON THE SIGNATURE PAGES HEREOF** (together with their respective successors and permitted assigns, each individually referred to herein as a "**Lender**" and collectively as the "**Lenders**"), and **CREDIT SUISSE**, Cayman Islands Branch ("**Credit Suisse**"), as administrative agent for the Lenders (together with its successors in such capacity, the "**Administrative Agent**"), as collateral agent for the Secured Parties (as defined below) (together with its successors in such capacity, the "**Collateral Agent**"), and as syndication agent (together with its successors in such capacity, the "**Syndication Agent**"; together with the Administrative Agent and the Collateral Agent, the "**Agents**") for the Lenders.

R E C I T A L S

**A.  WHEREAS**, the Borrowers desire that the Lenders extend certain term loans to the Borrowers hereunder, the proceeds of which will be used, along with the proceeds of the Second Lien Loans (as defined below): (i) to repay all amounts owing under the Existing Indebtedness (as defined below) (other than Permitted Existing Indebtedness (as defined below)), (ii) for working capital and general corporate purposes of the Borrowers and their Subsidiaries, (iii) to finance Permitted Real Property Acquisitions (as defined below), (iv) to pay the Transaction Costs (as defined below), (v) to fund the Interest Reserve Account (as defined below) and (vi) to make a one-time distribution to Sedora Holdings, LLC, a Delaware limited liability company ("**Sedora**"), in an aggregate amount equal to $70,000,000 (such one-time distribution, the "**Permitted Distribution**").

**B.  WHEREAS**, the Agents and the Lenders party hereto desire to enter into this Agreement to provide for such loans to the Borrowers subject to the terms and conditions contained herein.

**NOW, THEREFORE**, in consideration of the premises and the agreements, provisions and covenants herein contained, the parties hereto agree to enter into this Agreement as follows:

**SECTION 1.**
**DEFINITIONS**

**1.1**     **Certain Defined Terms.**

The following terms used in this Agreement shall have the following meanings:

assignment to secure obligations to a Federal Reserve Bank; provided that no such pledge or assignment shall release such Lender from any of its obligations hereunder or substitute any such pledgee or assignee for such Lender as a party hereto. Notwithstanding anything to the contrary contained herein, any Lender that is a Fund may, without the consent of the Borrowers or the Administrative Agent, create a security interest in all or any portion of the Loans owing to it and the Notes, if any, held by it to the trustee for holders of obligations owed, or Securities issued, by such Fund as security for such obligations or Securities; provided that unless and until such trustee actually becomes a Lender in compliance with the other provisions of this subsection 9.1, (i) no such pledge shall release the pledging Lender from any of its obligations under this Agreement and (ii) such trustee shall not be entitled to exercise any of the rights of a Lender under this Agreement and the Notes even though such trustee may have acquired ownership rights with respect to the pledged interest through foreclosure or otherwise.

**G. SPV Lender.** Notwithstanding anything to the contrary contained herein, any Lender (a "**Granting Lender**") may grant to a special purpose funding vehicle (a "**SPV**"), identified as such in writing from time to time by the Granting Lender to the Administrative Agent and the Borrowers, the option to provide to the Borrowers all or any part of any Loan that such Granting Lender would otherwise be obligated to make the Borrowers pursuant to this Agreement; provided that (i) nothing herein shall constitute a commitment by any SPV to make any Loan, (ii) if an SPV elects not to exercise such option or otherwise fails to provide all or any part of such Loan, the Granting Lender shall be obligated to make such Loan pursuant to the terms hereof. The making of a Loan by an SPV hereunder shall utilize the Commitment of the Granting Lender to the same extent, and as if, such Loan were made by such Granting Lender. Each party hereto hereby agrees that no SPV shall be liable for any indemnity or similar payment obligation under this Agreement (all liability for which shall remain with the Granting Lender). An SPV shall not be entitled to receive any greater payment under subsection 2.7 that the Granting Lender would have been entitled to receive with respect to the Loan or portion of the Loan granted to such SPV, unless the grant to such SPV is made with the Borrowers' prior written consent. In furtherance of the foregoing, each party hereto hereby agrees (which agreement shall survive the termination of this Agreement) that, prior to the date that is one year and one day after the payment in full of all outstanding commercial paper or other senior indebtedness of any SPV, it will not institute against, or join any other Person in instituting against, such SPV any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings under the laws of the United States or any State thereof. In addition, notwithstanding anything to the contrary contained in this subsection 9.1, any SPV may (i) with notice to, but without the prior written consent of, the Borrowers and the Administrative Agent and without paying any processing fee therefore, assign all or a portion of its interests in any Loans to the Granting Lender or to any financial institutions (consented to by the Borrowers and Administrative Agent) providing liquidity and/or credit support to or for the account of such SPV to support the funding or maintenance of Loans and (ii) disclose on a confidential basis any non-public information relating to its Loans to any rating agency, commercial paper dealer or provider of any surety, guarantee or credit or liquidity enhancement to such SPV. This subsection 9.1 may not be amended without the written consent of the SPV.

**9.2    Expenses; Indemnity; Damage Waiver.**

**A. Costs and Expenses.** Each of the Borrowers shall pay all actual and documented out-of-pocket expenses incurred by each Agent and its Affiliates, including the reasonable and documented fees, charges and disbursements of its appraiser, counsel (including, without limitation, special and local counsel) for each Agent and its Affiliates (and fees and time charges for attorneys who may be employees of such Agent or Affiliates) and filing and recording fees and expenses, in connection with the syndication of the credit facilities provided for herein, the development, preparation, negotiation, execution, delivery, closing, funding, and administration of this Agreement and the other Loan Documents, any Modifications or waivers of the provisions hereof or thereof (whether or not the

106

transactions contemplated hereby or thereby shall be consummated), or in connection with the enforcement or protection of its rights in connection with this Agreement and the other Loan Documents, including its rights under this subsection 9.2A, or in connection with the Loans made hereunder, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Loans.

**B. Indemnification by the Borrowers.** Each of the Borrowers shall indemnify each Agent (and any sub-Agent thereof), each Lender, their respective successors and assigns and each Related Party of any of the foregoing Persons (each such Person being called an "**Indemnitee**") against, and hold each Indemnitee harmless from, any and all costs, losses, claims, damages, liabilities and expenses (including, without limitation, the reasonable fees, charges and disbursements of any counsel and consultants for any Indemnitee (and fees and time charges for attorneys who may be employees of any Indemnitee)) of any kind or nature whatsoever, incurred by or asserted against any Indemnitee arising out of, in connection with, or as a result of (i) the execution, delivery, enforcement or administration of this Agreement, any other Loan Document or any agreement or instrument contemplated hereby or thereby, the performance by the parties hereto of their respective obligations hereunder or the consummation of the transactions contemplated hereby or thereby, (ii) any Loan or the use of the proceeds therefrom, (iii) any actual or alleged presence or Release of Hazardous Materials on or from any property, any Environmental Claim or any Environmental Liabilities related in any way to any Borrower or any of its Subsidiaries, (iv) any claim, demand or liability for any brokerage commissions, or broker's or finder's fees or investment banking or similar fees incurred or alleged to have been incurred in connection with any of the Transactions, and any claim, demand or liability relating thereto or (v) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory and regardless of whether any Indemnitee is a party thereto (and regardless of whether such matter is initiated by a third party or by the Borrowers or any of their respective Affiliates); provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such costs, losses, claims, damages, liabilities and expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted primarily from the gross negligence or willful misconduct of such Indemnitee.

**C. Reimbursement by the Lenders.** To the extent that a Borrower fails to pay any amount required under subsection 9.2A or 9.2B to be paid by it to any Agent (or any sub-Agent thereof) or any Related Party of any of the foregoing, each Lender severally agrees to pay to the Agent (or any such sub-Agent) or such Related Party, as the case may be, such Lender's Pro Rata Share (determined as of the time that the applicable unreimbursed expense or indemnity payment is sought) of such unpaid amount, provided that the unreimbursed expense or indemnified loss, claim, damage, liability or related expense, as the case may be, was incurred by or asserted against such Agent (or any such sub-Agent) in its capacity as such, or against any Related Party of any of the foregoing acting for such Agent (or any such sub-Agent) in connection with such capacity. The obligations of the Lenders under this subsection 9.2C are subject to the provisions of subsection 9.12.

**D. Waiver of Consequential Damages, Etc.** To the fullest extent permitted by Applicable Law, each of the Borrowers shall not assert, and hereby waives, any claim against any Indemnitee, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, any other Loan Document or any agreement or instrument contemplated hereby, the transactions contemplated hereby or thereby, any Loan or the use of the proceeds thereof. No Indemnitee referred to in subsection 9.2B above shall be liable for any damages arising from the use by unintended recipients of any information or other materials distributed by it through telecommunications, electronic or other information transmission systems in connection with this Agreement or the other Loan Documents or the transactions contemplated hereby or

107

thereby, unless such damages are directly caused solely by the gross negligence or willful misconduct of such Indemnitee as determined by a court of competent jurisdiction by final and nonappealable judgment.

**E. Payments.** All amounts due under this subsection 9.2 shall be payable promptly after demand therefor.

### 9.3    Right of Set-Off.

Without limitation of any other rights of the Agents or Lenders, and subject to the terms of the Intercreditor Agreement, if an Event of Default shall have occurred and be continuing, each Agent, Lender and each of their respective Affiliates is hereby authorized at any time and from time to time, to the fullest extent permitted by Applicable Law, to set off and apply any and all deposits (general or special, time or demand, provisional or final, in whatever currency) at any time held and other obligations (in whatever currency) at any time owing by such Agent, Lender, or any such Affiliate to or for the credit or the account of a Borrower against any and all of the Obligations of the Borrowers now or hereafter existing under this Agreement or any other Loan Document to such Agent or Lender, irrespective of whether or not such Lender shall have made any demand under this Agreement or any other Loan Document and although such Obligations of the Borrowers may be contingent or unmatured or are owed to a branch or office of such Lender different from the branch or office holding such deposit or obligated on such indebtedness.  The rights of each Agent, Lender and their respective Affiliates under this subsection 9.3 are in addition to other rights and remedies (including other rights of setoff) which such Agent, Lender or their respective Affiliates may have and are subject to the terms of the Intercreditor Agreement.  Each Agent and Lender agrees promptly to notify the Borrowers and the Administrative Agent after any such setoff and application; provided that the failure to give such notice shall not affect the validity of such setoff and application.

### 9.4    Sharing of Payments by Lenders.

If any Lender shall, by exercising any right of setoff or counterclaim or otherwise, obtain payment in respect of any principal of or interest on any of its Loans or other obligations hereunder resulting in such Lender's receiving payment of a proportion of the aggregate amount of its Loans and accrued interest thereon or other such obligations greater than its Pro Rata Share thereof as provided herein, then the Lender receiving such greater proportion shall (a) notify the Administrative Agent of such fact and (b) purchase (for Cash at face value) participations in the Loans and such other obligations of the other Lenders, or make such other adjustments as shall be equitable, to the end that the benefit of all such payments shall be shared by the Lenders ratably in accordance with the aggregate amount of principal of and accrued interest on their respective Loans and other amounts owing them; provided that (i) if any such participations are purchased and all or any portion of the payment giving rise thereto is recovered, such participations shall be rescinded and the purchase price restored to the extent of such recovery, without interest and (ii) the provisions of this paragraph shall not be construed to apply to (x) any payment made by the Borrowers pursuant to and in accordance with the express terms of this Agreement or (y) any payment obtained by a Lender as consideration for the assignment of or sale of a participation in any of its Loans to any assignee or participant, other than to a Borrower or any Subsidiary thereof (as to which the provisions of this paragraph shall apply).  Each of the Borrowers consents to the foregoing and agrees, to the extent it may effectively do so under applicable law, that any Lender acquiring a participation pursuant to the foregoing arrangements may exercise against any Borrower rights of setoff and counterclaim with respect to such participation as fully as if such Lender were a direct creditor of such Borrower in the amount of such participation.

108