James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: jstang@pszjlaw.com
       scho@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com
Attorneys for Reorganized Debtors

E-File:  June 8, 2010

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br><br>Debtors. | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11 |
| Affects:<br>☐   All Debtors<br>☒   Affects the following Debtor(s)<br>Rhodes Homes Arizona, LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc. | Hearing Date:   June 21, 2010<br>Hearing Time:   9:30 a.m.<br>Courtroom 1 |

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf and Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

DOCS_LA:221037.1

**NOTICE OF LODGING OF APPRAISAL RE MOTION OF REORGANIZED DEBTORS FOR ORDER APPROVING STIPULATION RE QUITCLAIMING CERTAIN ARIZONA ASSETS TO CLARIFY TITLE [DOCKET NO. 1124]**

PLEASE TAKE NOTICE that in connection with the Motion of Reorganized Debtors for Order Approving Stipulation re Quitclaiming Certain Arizona Assets to Clarify Title [Docket No. 1124] (the "Motion"), the Debtors lodge for the Court's reference, a complete copy of the appraisal referenced in the Motion, which is attached hereto as <u>Exhibit A</u>.  Previously, a summary of the appraisal was attached as Exhibit 2 to the Motion.

**DATED** this 8th day of June 2010.

**LARSON & STEPHENS**

 /s/ Zachariah Larson, Esq.
Zachariah Larson, Bar No. 7787
Kyle O. Stephens, Bar No. 7928
810 S. Casino Center Blvd., Suite 104
Las Vegas, NV  89101
702/382-1170
Attorneys for Debtors and
Debtors in Possession

# EXHIBIT A

**Woods Appraisal Services**
Real Estate Appraising
Molly Woods, SRA

1880 Lucille Ave., Ste 1
Kingman, AZ 86401
Phone: (928) 753-2282  Fax: (928) 753-2420
Email: woods2@citlink.net

Date: April 7, 2010
To: Dominic Longi
Winchester Carlisle
4730 Fort Apache Rd., Suite 300
Las Vega, NV 81947

RE: Executive Summary

An assignment to determine the value of several vacant properties in Mohave County, Arizona was tendered by Carlisle-Winchester in November, 2009. There were fifteen individual parcels considered. Fourteen of these properties were either in or near the Pravada Development, in the southern portion of Golden Valley, between Kingman, Arizona and Bullhead City, Arizona. According to Mohave County records, all parcels are held by Rhodes Homes Arizona LLC which is presently in bankruptcy proceedings. With one exception, the parcels located within the Pravada Development are not legal entities with no assessor's parcel number. The one exception is Area A, which was acquired from the City of Kingman as a well site and is a legal parcel.

The objective of the assignment is to determine the value of each individual parcel to aid in the equitable distribution of the above. A proposed division of the properties from the client is as follows:

### TO GO INTO DEBTORS ESTATE

| Pravada | | | Opinion of Value |
|---|---|---|---|
| Area 1 | 60.64 Acres | - | $70,500 |
| Area 2 | 13.39 Acres | - | 14,000 |
| Area 3 | 33.25 Acres | - | 38,000 |
| Area 4 | 23.29 Acres | - | 24,000 |
| Total Area | 130.57 Acres | Total Value | $146,500 |

### TO GO OUT OF DEBTOR'S ESTATE

| Pravada | | | |
|---|---|---|---|
| Area A | 1.17 Acres | - | $5,100 |
| Area B | 44.13 Acres | - | 51,900 |
| Area C | 10.42 Acres | - | 23,600 |
| Area D | 9.36 Acres | - | 22,000 |
| **Adjacent Parcels** | | | |
| 306-63-009 | 8.00 Acres | - | 17,500 |
| 306-63-010 | 8.00 Acres | - | 13,000 |
| 306-63-011 | 8.00 Acres | - | 13,000 |
| 306-63-012 | 8.00 Acres | - | 13,000 |
| 306-63-013 | 8.00 Acres | - | 13,000 |
| 306-24-091 | 20.57 Acres | - | 30,000 |
| **Outlying Parcel -** | | | |
| 354-34-045A | 30.01 Acres | - | 33,000 |
| Total Area | 155.66 Acres | Total Value | $235,000 |

The difference in value between the properties going out of the estate and those to be included is **$88,500 (Eighty-Eight Thousand, Five Hundred U.S. Dollars).**

None of the sites located in Pravada have available water or power service. All of the outlying properties do have power available but none have water service.

The subject properties at the present time are not marketable. The property located in Pravada is further compromised, with the exception of Area A, because they are not legal independent parcels. For the Pravada properties which have not been split from their parent parcels, The opinion of value is **not** Market Value but rather Investment Value. This distinction is made because implicit in the definition of investment value is the statement "The value of an investment to a particular investor ….. as distinguished from market value which is impersonal and detached.". These properties have no appeal to the typical buyer because they are not legal entities.

The value derived for both the adjacent and outlying parcels as well as Area A, is Market Value because they are legal entities. However the Hypothetical Assumption is made that those parcels are marketable. Since the parcels are presently in bankruptcy proceedings, sales would not be possible until those proceedings have been completed.

The marketability of the Pravada properties, Area A excepted, is different because they are not legal entities. Since the value estimate for those properties is investment value, the Extraordinary Assumption is made that they too are marketable.

Respectfully Submitted,

*[signature]*

J.A. Woods
Certified Appraiser – AZ 20588

# LAND APPRAISAL SUMMARY REPORT

File No.: L100292R

## SUBJECT

- Property Address: Dora Drive
- City: Golden Valley
- State: AZ
- Zip Code: 86413
- County: Mohave
- Legal Description: See Additional Comments
- Assessor's Parcel #: 306-63-009
- Tax Year: 2009
- R.E. Taxes: $ 1,891.20
- Special Assessments: $ N/A
- Market Area Name: Golden Valley - Metes & Bounds
- Map Reference: 306-63-009
- Census Tract: 9506.00
- Current Owner of Record: Rhodes Homes Arizona LLC
- Borrower (if applicable): N/A
- Project Type (if applicable): ☐ PUD  ☐ De Minimis PUD  ☐ Other (describe) N/A    HOA: $ N/A   ☐ per year  ☐ per month
- Are there any existing improvements to the property? ☒ No  ☐ Yes   If Yes, indicate current occupancy: ☐ Owner  ☐ Tenant  ☒ Vacant  ☐ Not habitable
- If Yes, give a brief description:

## ASSIGNMENT

- The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or  ☐ other type of value (describe)
- This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date)  ☐ Retrospective  ☐ Prospective
- Property Rights Appraised: ☒ Fee Simple  ☐ Leasehold  ☐ Leased Fee  ☐ Other (describe)
- Intended Use: Estimate Market Value for property disposition.
- Intended User(s) (by name or type): Winchester Carlisle/Dino Longi
- Client: Winchester Carlisle   Address: 4730 Ft Apache Road, Suite 300, Las Vegas, NV 81947
- Appraiser: J.A. Woods   Address: 1880 Lucille Avenue, Suite #1, Kingman, AZ 86401

## MARKET AREA DESCRIPTION

**Characteristics**
- Location: ☐ Urban  ☒ Suburban  ☐ Rural
- Built up: ☐ Over 75%  ☐ 25-75%  ☒ Under 25%
- Growth rate: ☐ Rapid  ☐ Stable  ☒ Slow
- Property values: ☐ Increasing  ☐ Stable  ☒ Declining
- Demand/supply: ☐ Shortage  ☐ In Balance  ☒ Over Supply
- Marketing time: ☐ Under 3 Mos.  ☐ 3-6 Mos.  ☒ Over 6 Mos.

**Predominant Occupancy**
- ☒ Owner 95
- ☐ Tenant 5
- ☒ Vacant (0-5%)
- ☐ Vacant (>5%)

**One-Unit Housing** PRICE $(000) / AGE (yrs)
- 50 Low / New
- 300+ High / 45
- 80 Pred / 5-10

**Present Land Use**
- One-Unit 98%
- 2-4 Unit %
- Multi-Unit %
- Comm'l 2%
- %
- %

**Change in Land Use**
- ☒ Not Likely
- ☐ Likely *   ☐ In Process *
- * To:

**Factors Affecting Marketability**

| Item | Good | Average | Fair | Poor | N/A | Item | Good | Average | Fair | Poor | N/A |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Employment Stability | | ☒ | | | | Adequacy of Utilities | | | ☒ | | |
| Convenience to Employment | | | ☒ | | | Property Compatibility | | ☒ | | | |
| Convenience to Shopping | | | ☒ | | | Protection from Detrimental Conditions | | ☒ | | | |
| Convenience to Schools | | | ☒ | | | Police and Fire Protection | | ☒ | | | |
| Adequacy of Public Transportation | | ☒ | | | | General Appearance of Properties | | ☒ | | | |
| Recreational Facilities | | ☒ | | | | Appeal to Market | | ☒ | | | |

Market Area Comments: The subject is located in the southern portion of Golden Valley, which is located between Kingman, AZ and Bullhead City, AZ. Nearly all of Golden Valley is composed of acre plus sites with manufactured housing the predominant improvement. There is some commercial enterprise bordering Highway 68 as well as an elementary school. Most residents are employed in either Kingman or Bullhead City/Laughlin, NV. Electric service is available except to the most outlying areas. Commercial water service is available to the core area but outlying areas must either haul domestic water or drill a private well. Waste disposal is by septic system. There is a wide range of values as noted above which appears to be well tolerated in this market area, with minimal external obsolescence incurred. The main access roads are paved but many/most other roads are improved dirt/gravel which may become impassable after heavy rains in the outlying areas.

## SITE DESCRIPTION

- Dimensions: See attached plat map   Site Area: 8.00 Acres
- Zoning Classification: AR-6A   Description: Agricultural Residential/6 Acre Minimum Size
- Do present improvements comply with existing zoning requirements? ☒ Yes  ☐ No  ☐ No Improvements
- Uses allowed under current zoning: AR zoning permits the keeping of large animals such as cattle and horses for personal use - no commercial agricultural enterprise is allowed under that zoning. The zoning also limits the number of dwellings on each parcel to one.
- Are CC&Rs applicable? ☐ Yes ☒ No ☐ Unknown  Have the documents been reviewed? ☐ Yes ☐ No  Ground Rent (if applicable) $ N/A
- Comments: N/A
- Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain)
- Actual Use as of Effective Date: Land Holding   Use as appraised in this report: Land Holding
- Summary of Highest & Best Use: The highest and best use of the subject property as of the effective date is as a land holding; future highest and best use will be as developed residential when the area real estate market recovers and demand returns for home sites. This statement is a hypothetical condition which would require rezoning and subdividing the subject into multiple parcels to maximize value.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | | |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | In Street | Street | Dora Drive | ☒ | ☐ | Frontage | 663 feet |
| Gas | ☐ | ☐ | None | Width | 20 feet | | | Topography | Level/Typical |
| Water | ☐ | ☒ | Water Haul or Well | Surface | Dirt | | | Size | Typical to Plat |
| Sanitary Sewer | ☐ | ☒ | Septic Required | Curb/Gutter | None | ☐ | ☐ | Shape | Rectangular |
| Storm Sewer | ☐ | ☐ | None | Sidewalk | None | ☐ | ☐ | Drainage | Appears Adequate |
| Telephone | ☐ | ☐ | None | Street Lights | None | ☐ | ☐ | View | Neighborhood/Desert |
| Multimedia | ☐ | ☐ | None | Alley | None | ☐ | ☐ | | |

Other site elements: ☒ Inside Lot  ☐ Corner Lot  ☐ Cul de Sac  ☐ Underground Utilities  ☐ Other (describe)
FEMA Spec'l Flood Hazard Area  ☐ Yes  ☒ No  FEMA Flood Zone X   FEMA Map # 04015C4537G   FEMA Map Date 11/18/2009

Site Comments: The immediate subject area is in near proximity to the Rhodes Pravada Development. The area was positively influenced when Pravada was announced resulting in a significant upsurge in site values, fueled in part by speculation that Pravada would have a strong influence on property values when completed. When the real estate boom reversed and Pravada was abandoned, demand and prices for these adjacent properties fell to a fraction of what was seen at the peak of the market. Prices continue to fall, although at a much slower pace. It is probable that the value of these outlying parcels will lag somewhat behind a general recovery; although if Pravada were resuscitated, there could be good appreciation in the subject market area. Per the client, the subject property is in bankruptcy proceedings; this status incurs a stigma which has a depressing effect on the probable sales price. It is probable that the subject is not saleable; for this reason the hypothetical condition is assumed that the subject is marketable.



Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPLND — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE                                              3/2007

# LAND APPRAISAL SUMMARY REPORT

File No.: L100292R

## TRANSFER HISTORY

My research [X] did  [ ] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s): Win2Data/County Records

**1st Prior Subject Sale/Transfer**
- Date: 03/09/2006
- Price: None Disclosed
- Source(s): Doc #6147-863

**2nd Prior Subject Sale/Transfer**
- Date: 02/26/2005
- Price: $160,000 - Multiple Sale
- Source(s): Doc #5616-160

Analysis of sale/transfer history and/or any current agreement of sale/listing: According to official records, there was a transfer of the subject March 2006 - no price was disclosed. Prior to that transaction, the subject sold as part of a multiple sale for $160,000 in February 2005. There was a sale, Huffman to Rhodes Homes, on the same day for the same sales price.

## SALES COMPARISON APPROACH

| FEATURE | SUBJECT PROPERTY | COMPARABLE NO. 1 | +(-) $ Adjust | COMPARABLE NO. 2 | +(-) $ Adjust | COMPARABLE NO. 3 | +(-) $ Adjust |
|---|---|---|---|---|---|---|---|
| Address | Dora Drive, Golden Valley, AZ 86413 | Verde Road, Golden Valley, AZ 86413 | | Unkar Drive, Golden Valley, AZ 86413 | | Amado Road, Golden Valley, AZ 86413 | |
| Proximity to Subject | | 2.20 miles NW | | 0.62 miles NE | | 0.68 miles NE | |
| Sale Price | $ N/A | $ 73,000 | | $ 24,000 | | $ 18,000 | |
| Price/ Acre | $ N/A | $ 7,066.80 | | $ 2,371.54 | | $ 889.33 | |
| Data Source(s) / Verification Source(s) | Inspection / County Records | MLS #826833 DOM: 780 / Doc #7509-971 | | MLS #836847 DOM: 42 / Mohave County Records | | MLS #836022 DOM: 396 / Doc #7639-355 | |
| VALUE ADJUSTMENT | DESCRIPTION | DESCRIPTION | | DESCRIPTION | | DESCRIPTION | |
| Sales or Financing Concessions | N/A / N/A | Seller Financing / $17,000 Down | | Cash / None Known | | Cash / None Known | |
| Date of Sale/Time | N/A | 05/29/2009 -10% | -7,300 | 12/17/2009 -3% | -700 | 11/11/2009 -4% | -700 |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Metes & Bounds | Metes & Bounds | | Sun West Acres | | Sun West Acres | |
| Site Area (in Acres) | 8.00 | 10.33 | -10,000 | 10.12 | -4,000 | 20.24 | -6,000 |
| Access | Fair | Superior | -5,000 | Similar | | Similar | |
| Utilities | Electric Available | Water/Power | -5,000 | Electric Available | | Electric Available | |
| Improvements | None | None | | None | | None | |
| Parcel Number | 306-63-009 | 306-24-090B | | 306-24-099B | | 306-24-099 | |
| Net Adjustment (Total, in $) | | [ ]+ [X]- $ | -27,300 | [ ]+ [X]- $ | -4,700 | [ ]+ [X]- $ | -6,700 |
| Adjusted Sale Price (in $) | | Net 37.4 % / Gross 37.4 % $ | 45,700 | Net 19.6 % / Gross 19.6 % $ | 19,300 | Net 37.2 % / Gross 37.2 % $ | 11,300 |

Summary of Sales Comparison Approach: All sales have similar amenities except as noted (and adjusted for). Sales #2 & #3, which are most proximate and similar are given most weight in the value consideration - estimate is rounded. No more proximate and similar sales of larger parcels were located in search of county records, Wardex Regional MLS and Appraiser's files. Sale #1 is less than ideal but is considered to be among the best available. A primary criteria in the search for comparable sales is that sales proximity to Pravada (and the subject) which has a strong influence on value.

Per the Wardex Regional MLS there are 4 active, >5 acre listings in near proximity to the subject. The asking prices range from $3,202/acre (10.15 A, DOM: 216) to $17,236/acre (20.30 A, DOM: 387). From this data, it appears that the listings are significantly overpriced. Per MLS records, the number of sales of area vacant land is relatively stable but the price paid has declined approximately 9% in that time. The sales price is hovering around 70% of the asking price. Since it is probable that the subject would not be involved in an arms length transaction, the hypothetical condition is invoked that the subject is marketable.

## PUD

**PROJECT INFORMATION FOR PUDs (if applicable)**  [ ] The Subject is part of a Planned Unit Development.
Legal Name of Project: N/A
Describe common elements and recreational facilities: N/A

## RECONCILIATION

Indicated Value by: Sales Comparison Approach $ 17,500
Final Reconciliation: Sales comparison is the only applicable approach to value; cost and income approaches are not applicable.

This appraisal is made [X] "as is", or [ ] subject to the following conditions: The purpose of this report is to estimate market value. The intended user is Winchester Carlisle for property disposition. The sales comparison approach is the only applicable approach to value. This is a complete report transmitted in summary form.

[ ] This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based upon an inspection of the subject property, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is:
$ 17,500 , as of: March 22, 2010 , which is the effective date of this appraisal.
If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

## ATTACH.

A true and complete copy of this report contains 16 pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report, which contains the following attached exhibits: [X] Scope of Work  [X] Limiting cond./Certifications  [ ] Narrative Addendum  [X] Location Map(s)  [X] Flood Addendum  [ ] Additional Sales  [X] Photo Addenda  [X] Parcel Map  [X] Hypothetical Conditions  [ ] Extraordinary Assumptions  [ ]

Client Contact: Dino Longi       Client Name: Winchester Carlisle
E-Mail:                          Address: 4730 Ft Apache Road, Suite 300, Las Vegas, NV 81947

## SIGNATURES

**APPRAISER**
Appraiser Name: J.A. Woods
Company: Woods Appraisal Services, Inc.
Phone: (928) 753-2282    Fax: (928) 753-2420
E-Mail: woods2@citlink.net
Date of Report (Signature): 04/09/2010
License or Certification #: 20588    State: AZ
Designation:
Expiration Date of License or Certification: 2/28/2012
Inspection of Subject: [X] Did Inspect  [ ] Did Not Inspect (Desktop)
Date of Inspection: March 22, 2010

**SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable)**
Supervisory or Co-Appraiser Name:
Company:
Phone:    Fax:
E-Mail:
Date of Report (Signature):
License or Certification #:    State:
Designation:
Expiration Date of License or Certification:
Inspection of Subject: [ ] Did Inspect  [ ] Did Not Inspect
Date of Inspection:

GP LAND

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPLND — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    3/2007

## Supplemental Addendum

File No. L100292R

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | Dora Drive | | | | | |
| City | Golden Valley | County | Mohave | State | AZ | Zip Code 86413 |
| Lender | Rhodes Homes | | | | | |

**Additional Comments:**

**Drainage:** Elevation of the site above road grade promotes surface drainage which appeared acceptable at the time of inspection. However, seasonal variations may occur and subsurface drainage conditions are unknown.

The subject site does not appear to be in a flood zone; flood maps often lack sufficient detail to enable accurate determination on the part of the appraiser. Please note item 3 of the attached Statement of Limiting Conditions.

**Site:** The appraiser has not made a detailed comparison of every property characteristic relative to local zoning and building ordinances.

**Legal Description:** A POR OF THE NW4 SE4 SHOWN AS PARCEL 1 PER PP 10/82 10/16/95 FN 95-53741 CONT 8.00 AC ML 306-63-003(306-63-009,010,011, 012 & 013)

**Hypothetical Condition:** The subject is presently in bankruptcy proceedings, as such it is unlikely that an "arms length" transaction could take place. For purposes of this assignment, it is assumed that the subject is marketable.

The appraiser preparing this report has not completed an appraisal for this property in the preceding three years.

| Signature | | Signature | |
|---|---|---|---|
| Name | J.A. Woods | Name | |
| Date Signed | 04/09/2010 | Date Signed | |
| State Certification # | 20588 | State AZ | State Certification # | State |
| Or State License # | | State | Or State License # | State |

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**APPRAISER'S CERTIFICATION:** The appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:** Dora Drive, Golden Valley, AZ 86413

| **APPRAISER:** | **SUPERVISORY APPRAISER (only if required):** |
|---|---|
| Signature: | Signature: |
| Name: J.A. Woods | Name: |
| Date Signed: 04/09/2010 | Date Signed: |
| State Certification #: 20538 | State Certification #: |
| or State License #: | or State License #: |
| State: AZ | State: |
| Expiration Date of Certification or License: 2/28/2012 | Expiration Date of Certification or License: |
| | ☐ Did    ☐ Did Not Inspect Property |

## Subject Photo Page

| Borrower | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | Dora Drive | | | | |
| City | Golden Valley | County | Mohave | State AZ | Zip Code 86413 |
| Lender | Rhodes Homes | | | | |



### Looking North

Dora Drive
Sales Price         N/A
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location            Metes & Bounds
View
Site                8.00
Quality
Age



### Looking South



### Subject Street

Form PICPIX.SR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Plat Map**

| Borrower | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | Dora Drive | | | | |
| City | Golden Valley | County | Mohave | State AZ | Zip Code 86413 |
| Lender | Rhodes Homes | | | | |



## Flood Map

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | Dora Drive | | | | | |
| City | Golden Valley | County | Mohave | State | AZ | Zip Code 86413 |
| Lender | Rhodes Homes | | | | | |



## Location Map

| | | | | |
|---|---|---|---|---|
| Borrower | N/A | | | |
| Property Address | Dora Drive | | | |
| City | Golden Valley | County Mohave | State AZ | Zip Code 86413 |
| Lender | Rhodes Homes | | | |



Form MAP.LOC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE