# EXHIBIT A

part 3

# LAND APPRAISAL SUMMARY REPORT

File No.: **L100328R**

## SUBJECT

Property Address: No Name Road - Area 1    City: Golden Valley    State: AZ    Zip Code: 86413
County: Mohave    Legal Description: See Addendum

Assessor's Parcel #: Portion of 215-01-116    Tax Year: See Below    R.E. Taxes: $ See Below    Special Assessments: $ None Known
Market Area Name: Pravada    Map Reference: Portion of 215-01-116    Census Tract: 9508.00
Current Owner of Record: Rhodes Homes    Borrower (if applicable): N/A
Project Type (if applicable): ☐ PUD  ☐ De Minimis PUD  ☐ Other (describe) N/A    HOA: $ N/A  ☐ per year  ☐ per month
Are there any existing improvements to the property? ☒ No  ☐ Yes  If Yes, indicate current occupancy: ☐ Owner  ☐ Tenant  ☒ Vacant  ☐ Not habitable
If Yes, give a brief description: The subject has not been split from the parent parcel which contains a total of 1134.01 acres. Because the subject is not a legal entity has never been assessed or taxed as such.

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☐ Market Value (as defined), or ☒ other type of value (describe) Investment Value - See Addendum
This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date)  ☐ Retrospective  ☐ Prospective
Property Rights Appraised: ☒ Fee Simple  ☐ Leasehold  ☐ Leased Fee  ☐ Other (describe)
Intended Use: Estimate Investment Value for Property Distribution.

Intended User(s) (by name or type): Winchester Carlisle/Dino Longi

Client: Winchester Carlisle    Address: 4730 Ft Apache Road, Suite 300, Las Vegas, NV 81947
Appraiser: J.A. Woods    Address: 1880 Lucille Avenue, Suite #1, Kingman, AZ 86401

## MARKET AREA DESCRIPTION

### Characteristics

| Location: | ☐ Urban | ☐ Suburban | ☒ Rural |
| Built up: | ☐ Over 75% | ☐ 25-75% | ☒ Under 25% |
| Growth rate: | ☐ Rapid | ☐ Stable | ☒ Slow |
| Property values: | ☐ Increasing | ☒ Stable | ☐ Declining |
| Demand/supply: | ☐ Shortage | ☐ In Balance | ☒ Over Supply |
| Marketing time: | ☐ Under 3 Mos. | ☐ 3-6 Mos. | ☒ Over 6 Mos. |

### Predominant Occupancy

☒ Owner 90
☐ Tenant
☐ Vacant (0-5%)
☒ Vacant (>5%)

### One-Unit Housing

| PRICE $(000) | AGE (yrs) |
| --- | --- |
| 50  Low | New |
| 300+  High | 45 |
| 80  Pred | 5-10 |

### Present Land Use

| One-Unit | 98 % |
| 2-4 Unit | % |
| Multi-Unit | % |
| Comm'l | 2 % |
| | % |
| | % |

### Change in Land Use

☒ Not Likely
☐ Likely *  ☐ In Process *
* To:

### Factors Affecting Marketability

| Item | Good | Average | Fair | Poor | N/A | Item | Good | Average | Fair | Poor | N/A |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Employment Stability | ☐ | ☐ | ☒ | ☐ | ☐ | Adequacy of Utilities | ☐ | ☐ | ☒ | ☐ | ☐ |
| Convenience to Employment | ☐ | ☐ | ☒ | ☐ | ☐ | Property Compatibility | ☐ | ☐ | ☒ | ☐ | ☐ |
| Convenience to Shopping | ☐ | ☐ | ☒ | ☐ | ☐ | Protection from Detrimental Conditions | ☐ | ☐ | ☒ | ☐ | ☐ |
| Convenience to Schools | ☐ | ☐ | ☒ | ☐ | ☐ | Police and Fire Protection | ☐ | ☐ | ☒ | ☐ | ☐ |
| Adequacy of Public Transportation | ☐ | ☒ | ☐ | ☐ | ☐ | General Appearance of Properties | ☐ | ☐ | ☐ | ☐ | ☒ |
| Recreational Facilities | ☐ | ☒ | ☐ | ☐ | ☐ | Appeal to Market | ☐ | ☐ | ☐ | ☒ | ☐ |

Market Area Comments: The subject neighborhood is located in the southern portion of Golden Valley which lies between Kingman, AZ and Bullhead City, AZ. Golden Valley occupies several square miles and is bisected by Highway 68. It is characterized by low density housing, with most parcels an acre or greater in size and a mix of site-built and manufactured housing with manufactured housing predominant. There is some commercial enterprise bordering Highway 68 as well as an elementary school. Most residents find employment in either Kingman or Bullhead City/Laughlin NV. Electric service is generally available throughout the area but water service is confined to a strip either side of Highway 68. Water in the outlying areas is either hauled or supplied by private wells; waste disposal is by septic system. There is a wide range of improved property values as noted above, with good acceptance in this market - minimal external obsolescence for higher end properties. Most access roads are improved dirt/gravel although some of the main arterials are paved. The more outlying the area, typically, the worse the road condition.

## SITE DESCRIPTION

Dimensions: See Additional Comments    Site Area: 60.64 Acres
Zoning Classification: AR-36A    Description: Agricultural/Residential - 36 Acre Minimum Size. This is what the zoning was prior to a requested rezone requested by Pravada. A rezone was begun as part of the Pravada Development, which has since been killed and the zoning is in limbo.    Do present improvements comply with existing zoning requirements? ☐ Yes  ☐ No  ☒ No Improvements
Uses allowed under current zoning: AR zoning permits the keeping of large animals such as cattle and horses for personal use only - no commercial agricultural enterprise is allowed under that zoning. The zoning also limits the number of dwellings to one per parcel.

Are CC&Rs applicable? ☐ Yes ☒ No ☐ Unknown    Have the documents been reviewed? ☐ Yes ☐ No    Ground Rent (if applicable) $ N/A/
Comments:
Highest & Best Use as improved: ☐ Present use, or ☒ Other use (explain) Developed as Residential

Actual Use as of Effective Date: Land Holding    Use as appraised in this report: Land Holding
Summary of Highest & Best Use: The highest and best use of the subject property as of the effective date is as a land holding; future highest and best use will be as developed residential when the area real estate market recovers and demand returns for home sites. This statement is a hypothetical condition which would require a rezone.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Electricity | ☐ | ☐ | None | Street | No Name | ☒ | ☐ | Frontage | |
| Gas | ☐ | ☒ | Propane Available | Width | | | | Topography | Countoured for Development |
| Water | ☐ | ☒ | Water Haul or Well | Surface | Dirt | | | Size | See Legal Description |
| Sanitary Sewer | ☐ | ☒ | Septic Required | Curb/Gutter | None | ☐ | ☐ | Shape | Irregular |
| Storm Sewer | ☐ | ☐ | None | Sidewalk | None | ☐ | ☐ | Drainage | Appears Adequate |
| Telephone | ☐ | ☐ | None | Street Lights | None | ☐ | ☐ | View | Neighborhood/Desert |
| Multimedia | ☐ | ☐ | None | Alley | None | ☐ | ☐ | | |

Other site elements: ☐ Inside Lot  ☐ Corner Lot  ☐ Cul de Sac  ☐ Underground Utilities  ☒ Other (describe)
FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X    FEMA Map # 04015C4545G    FEMA Map Date 11/18/2009
Site Comments: 165The subject is located in what was the Pravada Development. It has not been subdivided from the parent parcel, 215-01-115. In the addendum, there is a complete legal description of the property considered in the assignment, the subject. There is rudimentary access to the subject via an unnamed road and there are no available utilities. The legal status of the described parcel is clouded by the fact that the parent parcel is currently in the midst of bankruptcy proceedings. As of the effective date of the appraisal, the subject is illegal due to the parcel size being smaller than required by the zoning which is now in force. The zoning was being revised as part of the Pravada Development but the revised zoning was never finalized. Following the failure of Pravada, the zoning reverted to the AR-36A, the previous zoning. It is probable that the subject is not saleable at the present time due to the on-going bankruptcy. The extraordinary assumption is made that the subject is marketable.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPLND — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    3/2007


GP LAND

# LAND APPRAISAL SUMMARY REPORT

File No.: **L100328R**

Main File No. L100328R  Page #2

## TRANSFER HISTORY

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): Mohave County Records and Wardex Regional MLS.

**1st Prior Subject Sale/Transfer**

| | |
|---|---|
| Date: | 08/01/2006 |
| Price: | None Disclosed |
| Source(s): | Doc #6389-312 |

Analysis of sale/transfer history and/or any current agreement of sale/listing:   According to official records, the subject has not sold or transferred in the preceding 3 years.  A transaction did take place August 2006.  None of the comparables has sold in the year prior to the date presented in the sales comparison grid.  None of the comparables has sold in the year prior to the dates presented in the sales comparison grid.

**2nd Prior Subject Sale/Transfer**

| | |
|---|---|
| Date: | |
| Price: | |
| Source(s): | |

## SALES COMPARISON APPROACH

| FEATURE | SUBJECT PROPERTY | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | No Name Road - Area 1 | Bolsa Drive | | Moenkopi Drive | | Amado Road | |
| | Golden Valley, AZ 86413 | Golden Valley, AZ 86413 | | Golden Valley, AZ 86413 | | Golden Valley, AZ 86413 | |
| Proximity to Subject | | 4.23 miles NW | | 3.47 miles NW | | 2.91 miles N | |
| Sale Price | $ N/A | $ 47,250 | | $ 12,000 | | $ 18,000 | |
| Price/ Acre | $ N/A | $ 2,356.61 | | $ 1,200.00 | | $ 889.33 | |
| Data Source(s) | Inspection | MLS #829664 DOM: 34 | | Mohave County Records | | MLS #836022 DOM: 396 | |
| Verification Source(s) | County Records | Doc #7524-1 | | Doc #7618-584 | | Doc #7639-355 | |
| **VALUE ADJUSTMENT** | DESCRIPTION | DESCRIPTION | +(-) $ Adjust | DESCRIPTION | +(-) $ Adjust | DESCRIPTION | +(-) $ Adjust |
| Sales or Financing | N/A | Cash | | Cash | | Cash | |
| Concessions | N/A | None Known | | None Known | | None Known | |
| Date of Sale/Time | N/A | 07/06/2009 -8% | -3,800 | 10/2009 -5% | -600 | 11/25/2009 -4% | -700 |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Pravada | Golden Valley Rchos | | Goldroad Station | | Golden Valley Rchos | |
| Site Area (in Acres) | 60.64 | 20.05 | +80,000 | 10.00 | +50,000 | 20.24 | +30,000 |
| Access | Poor | Similar | | Similar | | Similar | |
| Utilities | None | Electric Available | -5,000 | None | | Electric Available | -5,000 |
| Improvements | None | None | | None | | None | |
| Parcel Number | See Add'n Comnts | 306-34-002B | | 215-17-008B | | 306-24-099 | |
| Stigma | Bankruptcy/Pravada | None | -4,700 | None | -1,200 | None | -4,300 |
| Net Adjustment (Total, in $) | | ☒ +  ☐ − $ | 66,500 | ☒ +  ☐ − $ | 48,200 | ☒ +  ☐ − $ | 20,000 |
| Adjusted Sale Price (in $) | | Net 140.7 % | | Net 401.7 % | | Net 111.1 % | |
| | | Gross 197.9 % $ | 113,750 | Gross 431.7 % $ | 60,200 | Gross 222.2 % $ | 38,000 |

Summary of Sales Comparison Approach   The sales selected are judged to be the most comparable available; there have not been any sales within the Pravada Development.  No recent sales of well sites or more proximate sales with lesser acreage were found.  Time adjustments made to compensate for the declining market - according to Wardex Regional MLS data, vacant land sales in the southern portion of Golden Valley declined 11.5% in the preceding year.  It is conceivable that those properties in near proximity to Pravada have experienced a more precipitous decline, insufficient data is available to establish a statistically valid rate of decline for that specific area.  The location in Pravada results in an adjustment due to the status of Pravada - i.e. no improvements can be made on that property until it emerges from bankruptcy and then a rezone will be required for parcel smaller than 36 acres.  Additionally, there is the perception associated with a "failed" development.  The only potential buyers are likely to be speculators who may invest in the area with hope that the development may be revived.  Site adjustments made for size differences only.  The "Stigma" adjustment recognizes the lost value due to the subject property's bankruptcy status and location in Pravada.  The opinion of value is the founded mid-range of three indicators.  Since it is probable that the subject would not be involved in an arms length transaction due it present status, the extraordinary assumption is made that it is marketable.

## PUD

**PROJECT INFORMATION FOR PUDs (if applicable)** ☐ The Subject is part of a Planned Unit Development.

Legal Name of Project:   N/A

Describe common elements and recreational facilities:   N/A

## RECONCILIATION

Indicated Value by: Sales Comparison Approach $   70,500

Final Reconciliation   Sales comparison is the only applicable approach to value; cost and income approaches are not applicable.

This appraisal is made ☒ "as is", or  ☐ subject to the following conditions:   The purpose of this report is to estimate market value.  The intended user is Winchester Carlisle for property disposition.  The sales comparison approach is the only applicable approach to value.  This is a complete report transmitted in summary form.  The extraordinary assumption is that the subject clears bankruptcy and can be sold on the open market.

☒ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

**Based upon an inspection of the subject property, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is:**
**$  70,500  , as of:  March 24, 2009  , which is the effective date of this appraisal.**
**If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report.  See attached addenda.**

## ATTACH.

A true and complete copy of this report contains   8   pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report, which contains the following attached exhibits:   ☒ Scope of Work
☒ Limiting cond./Certifications   ☐ Narrative Addendum   ☒ Location Map(s)   ☐ Flood Addendum   ☐ Additional Sales
☒ Photo Addenda   ☒ Parcel Map   ☐ Hypothetical Conditions   ☐ Extraordinary Assumptions

Client Contact:   _____   Client Name:   Winchester Carlisle
E-Mail:   _____   Address:   4730 Ft Apache Road, Suite 300, Las Vegas, NV 81947

## SIGNATURES

**APPRAISER**

**SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable)**

| | |
|---|---|
| Appraiser Name:  J. L. Woods | Supervisory or Co-Appraiser Name: _____ |
| Company:  Woods Appraisal Services, Inc. | Company: _____ |
| Phone: (928) 753-2282   Fax: (928) 753-2420 | Phone: _____   Fax: _____ |
| E-Mail: woods2@citlink.net | E-Mail: _____ |
| Date of Report (Signature):  04/09/2010 | Date of Report (Signature): _____ |
| License or Certification #:  20588   State:  AZ | License or Certification #: _____   State: _____ |
| Designation: _____ | Designation: _____ |
| Expiration Date of License or Certification:  2/28/2012 | Expiration Date of License or Certification: _____ |
| Inspection of Subject:  ☒ Did Inspect   ☐ Did Not Inspect (Desktop) | Inspection of Subject:  ☐ Did Inspect   ☐ Did Not Inspect |
| Date of Inspection:  March 24, 2009 | Date of Inspection: _____ |

GPLND

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPLND — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

3/2007

## Supplemental Addendum

File No. L100328R

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | No Name Road - Area 1 | | | | | | |
| City | Golden Valley | County | Mohave | State | AZ | Zip Code | 86413 |
| Lender | Rhodes Homes | | | | | | |

**Additional Comments:**

**Drainage:** Elevation of the site above road grade promotes surface drainage which appeared acceptable at the time of inspection.  However, seasonal variations may occur and subsurface drainage conditions are unknown.

The subject site does not appear to be in a flood zone; flood maps often lack sufficient detail to enable accurate determination on the part of the appraiser.  Please note item 3 of the attached Statement of Limiting Conditions.

**Site:**  The appraiser has not made a detailed comparison of every property characteristic relative to local zoning and building ordinances.

The appraiser preparing this report has not completed an appraisal for this property in the preceding three years.

**Marketing of Subject Property:**  Because the subject property is in hiatus, i.e. still involved in bankruptcy proceedings, it would be difficult to sell on the open market.  For that reason, the value derived is not "Market Value", but may be more properly identified as investment value.  Investment Value is defined by The Dictionary of Real Estate Appraisal as:

 "The value of an investment to a particular investor, based on his or her investment requirements; as distinguished from market value, which is impersonal and detached."

The typical buyer would have the expectation that interest in a property would offer the prospect of having a wide variety of options relating to development as soon as said property ownership was transferred to their ownership.  The subject does not satisfy this requirement.  The reason for this is the murky ownership of the property as of the effective date of the appraisal and, if the property were to be acquired, the inability to develop it due to the present zoning.  The only probable buyer interest will be from speculators who would typically only pay a portion of what the property may be worth if not encumbered by the above impediments.  Their interest would typically be driven by any anticipated future development which would influence the value of the subject property, such as a revitalization of the Pravada Development.

| Signature | | Signature | |
|---|---|---|---|
| Name  J.A. Woods | | Name | |
| Date Signed    04/09/2010 | | Date Signed | |
| State Certification #  20538 | State AZ | State Certification # | State |
| Or State License # | State | Or State License # | State |

Form TADD2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

   *Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

# STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

---

Woods Appraisal Services
Form ACR_DEFD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**APPRAISER'S CERTIFICATION:** The appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**   No Name Road - Area 1, Golden Valley, AZ 86413

**APPRAISER:**

Signature: _____
Name:  J.A. Woods
Date Signed:  04/09/2010
State Certification #:  20598
or State License #: _____
State:  AZ
Expiration Date of Certification or License: 2/28/2012

**SUPERVISORY APPRAISER (only if required):**

Signature: _____
Name: _____
Date Signed: _____
State Certification #: _____
or State License #: _____
State: _____
Expiration Date of Certification or License: _____

☐ Did      ☐ Did Not Inspect Property

Form ACR_DEFD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Main File No. L100328R   Page #6

## Subject Photo Page

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | No Name Road - Area 1 | | | | | |
| City | Golden Valley | County | Mohave | State AZ | Zip Code | 86413 |
| Lender | Rhodes Homes | | | | | |



### Looking East

| | |
|---|---|
| No Name Road - Area 1 | |
| Sales Price | N/A |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | Pravada |
| View | |
| Site | 60.64 |
| Quality | |
| Age | |



### Looking West



### Subject Street

## Legal Description

# LEGAL DESCRIPTIONS PARCELS TO BE ADDED (PRAVADA)

## AREA 1 LEGAL DESCRIPTION

THAT PART OF SECTION 9, TOWNSHIP 20 NORTH, RANGE 18 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MOHAVE COUNTY, ARIZONA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST QUARTER (NW 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 9;  THENCE SOUTH 89°39'30" EAST ALONG THE SOUTHERLY LINE OF THE NORTHWEST QUARTER (NW 1/4) OF SAID SECTION 9, A DISTANCE OF 1889.27 FEET;  THENCE SOUTH 00°20'30" WEST, A DISTANCE OF 791.68 FEET TO THE **POINT OF BEGINNING:**

THENCE SOUTH 66°12'30" EAST, A DISTANCE OF 1199.31 FEET TO A POINT ON A TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 1877.00 FEET, A TANGENT LENGTH OF 301.24 FEET, A CENTRAL ANGLE OF 18°14'08", THE RADIUS OF WHICH BEARS NORTH 23°47'30" EAST, THE CHORD WHICH BEARS SOUTH 75°19'34" EAST, A DISTANCE OF 594.87 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 597.39 FEET;

THENCE SOUTH 84°26'38" EAST, A DISTANCE OF 778.74 FEET TO A POINT ON A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 1923.00 FEET, A TANGENT LENGTH OF 145.80 FEET, A CENTRAL ANGLE OF 08°40'19", THE RADIUS OF WHICH BEARS SOUTH 05°33'22" WEST, THE CHORD OF WHICH BEARS SOUTH 80°06'28" EAST, A DISTANCE OF 290.77 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 291.05 FEET;

THENCE SOUTH 75°46'19" EAST, A DISTANCE OF 500.54 FEET TO A POINT ON A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 100.00 FEET, A TANGENT LENGTH OF 62.17 FEET, A CENTRAL ANGLE OF 63°44'09", THE RADIUS OF WHICH BEARS SOUTH 14°13'41" WEST, THE CHORD WHICH BEARS SOUTH 43°54'14" EAST, A DISTANCE OF 105.59 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 111.24 FEET TO A POINT ON A REVERSE CURVE TO THE LEFT HAVING A RADIUS OF 187.00 FEET, A TANGENT LENGTH OF 110.35 FEET, A CENTRAL ANGLE OF 61°05'21", THE RADIUS OF WHICH BEARS NORTH 77°57'50" EAST, THE CHORD IN WHICH BEARS SOUTH 42°34'50" EAST, A DISTANCE OF 190.07 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 199.38 FEET TO THE POINT ON A NON-TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 1000.00 FEET, A CENTRAL ANGLE OF 13°12'59", A TANGENT LENGTH OF 115.85 FEET, THE LONG CHORD OF WHICH BEARS SOUTH 06°50'25" WEST, A DISTANCE OF 230.16 FEET WITH A RADIAL LINE IN OF SOUTH 76°33'05" EAST, AND A RADIAL LINE OUT OF NORTH 89°46'04" WEST, AN ARC DISTANCE OF 230.67 FEET;

THENCE SOUTH 00°13'56" WEST, A DISTANCE OF 545.72 FEET;

THENCE NORTH 89°37'05" WEST, A DISTANCE OF 829.69 FEET TO A POINT ON A TANGENT CURVE TO THE RIGHT WITH A RADIUS OF 2002.00 FEET, A TANGENT LENGTH OF 1238.94 FEET, A CENTRAL ANGLE OF 63°30'09", THE RADIUS WHICH BEARS NORTH 00°22'55" EAST, THE CHORD WHICH BEARS NORTH 57°52'01" WEST, A DISTANCE OF 2107.04 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 2218.87 FEET TO A POINT ON A REVERSE CURVE TO THE LEFT HAVING A RADIUS OF 1573.00 FEET, A TANGENT LENGTH OF 573.94 FEET, A CENTRAL ANGLE OF 40°05'34", THE RADIUS OF WHICH BEARS SOUTH 63°53'04" WEST, THE CHORD OF WHICH BEARS NORTH 46°09'43" WEST, A DISTANCE OF 1078.39 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 1100.71 FEET TO THE **POINT OF BEGINNING.**

**EXCEPT** ALL MINERAL DEPOSITS AND RIGHTS AS RESERVED BY STATE OF ARIZONA IN DEED RECORDED IN BOOK 54 OF DEEDS, PAGE 519, RECORDS OF MOHAVE COUNTY, ARIZONA; AND

**EXCEPT** ALL OIL, GAS, AND MINERALS AS RESERVED IN DEED RECORDED IN BOOK OF OFFICIAL RECORDS 189, PAGE 103 AND BOOK OF OFFICIAL RECORDS 283, PAGE 931, RECORDS OF MOHAVE COUNTY, ARIZONA.

Page | 16

# Location Map

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | No Name Road - Area 1 | | | | | | |
| City | Golden Valley | County | Mohave | State | AZ | Zip Code | 86413 |
| Lender | Rhodes Homes | | | | | | |



**Area Map**

EXHIBIT OF INSIDE PRAVADA CLEAN-UP



Page | 14

# LAND APPRAISAL SUMMARY REPORT

File No.: **L100329R**

## SUBJECT

| | | | |
|---|---|---|---|
| Property Address: No Name Road - Area 2 | City: Golden Valley | State: AZ | Zip Code: 86413 |

County: Mohave | Legal Description: See Addendum

Assessor's Parcel #: A Portion of 215-01-116 | Tax Year: See Below | R.E. Taxes: $ See Below | Special Assessments: $ N/A

Market Area Name: Pravada | Map Reference: Portion of 215-01-116 | Census Tract: 9508.00

Current Owner of Record: Rhodes Homes | Borrower (if applicable): N/A

Project Type (if applicable): ☐ PUD  ☐ De Minimis PUD  ☐ Other (describe) N/A | HOA: $ N/A  ☐ per year  ☐ per month

Are there any existing improvements to the property? ☒ No  ☐ Yes  If Yes, indicate current occupancy: ☐ Owner  ☐ Tenant  ☒ Vacant  ☐ Not habitable

If Yes, give a brief description: The subject has not been split from the parent parcel which contains a total of 1134.01 acres.  Because it is not a legal entity it has never been assessed or taxed as such.

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☐ Market Value (as defined), or ☒ other type of value (describe)  Investment Value - See Addendum

This report reflects the following value (if not current, see comments): ☒ Current (the Inspection Date is the Effective Date)  ☐ Retrospective  ☐ Prospective

Property Rights Appraised: ☒ Fee Simple  ☐ Leasehold  ☐ Leased Fee  ☐ Other (describe)

Intended Use: Estimate Value for Property Distribution.

Intended User(s) (by name or type): Winchester Carlisle/Dino Longi

Client: Rhodes Homes | Address: 4730 Ft Apache Road, Suite 300, Las Vegas, NV 81947

Appraiser: J.A. Woods | Address: 1880 Lucille Avenue, Suite #1, Kingman, AZ 86401

## MARKET AREA DESCRIPTION

| Characteristics | | | Predominant Occupancy | One-Unit Housing | | Present Land Use | | Change in Land Use | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location: | ☐ Urban | ☐ Suburban ☒ Rural | ☒ Owner   90 | PRICE $(000) | AGE (yrs) | One-Unit | 98 % | ☒ Not Likely | | |
| Built up: | ☐ Over 75% | ☐ 25-75% ☒ Under 25% | ☐ Tenant | Low | New | 2-4 Unit | % | ☐ Likely *  ☐ In Process * | | |
| Growth rate: | ☐ Rapid | ☐ Stable ☒ Slow | ☐ Vacant (0-5%) | 50 | | Multi-Unit | % | * To: | | |
| Property values: | ☐ Increasing | ☐ Stable ☒ Declining | ☒ Vacant (>5%) | 300+ High  45 | | Comm'l | 2 % | | | |
| Demand/supply: | ☐ Shortage | ☐ In Balance ☒ Over Supply | | 80 Pred  5-10 | | | % | | | |
| Marketing time: | ☐ Under 3 Mos. | ☐ 3-6 Mos. ☒ Over 6 Mos. | | | | | % | | | |

### Factors Affecting Marketability

| Item | Good | Average | Fair | Poor | N/A | Item | Good | Average | Fair | Poor | N/A |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Employment Stability | ☐ | ☐ | ☒ | ☐ | ☐ | Adequacy of Utilities | ☐ | ☐ | ☒ | ☐ | ☐ |
| Convenience to Employment | ☐ | ☐ | ☒ | ☐ | ☐ | Property Compatibility | ☐ | ☐ | ☒ | ☐ | ☐ |
| Convenience to Shopping | ☐ | ☐ | ☒ | ☐ | ☐ | Protection from Detrimental Conditions | ☐ | ☐ | ☒ | ☐ | ☐ |
| Convenience to Schools | ☐ | ☐ | ☒ | ☐ | ☐ | Police and Fire Protection | ☐ | ☐ | ☒ | ☐ | ☐ |
| Adequacy of Public Transportation | ☐ | ☒ | ☐ | ☐ | ☐ | General Appearance of Properties | ☐ | ☐ | ☒ | ☐ | ☐ |
| Recreational Facilities | ☐ | ☒ | ☐ | ☐ | ☐ | Appeal to Market | ☐ | ☐ | ☐ | ☒ | ☐ |

Market Area Comments: The subject neighborhood is located in the southern portion of Golden Valley which lies between Kingman, AZ and Bullhead City, AZ.  Golden Valley occupies several square miles and is bisected by Highway 68.  It is characterized by low density housing, with most parcels an acre or greater in size and a mix of site-built and manufactured housing with manufactured housing predominant.  There is some commercial enterprise bordering Highway 68 as well as an elementary school.  Most residents find employment in either Kingman or Bullhead City/Laughlin NV.  Electric service is generally available throughout the area but water service is confined to a strip either side of Highway 68.  Water in the outlying areas is either hauled or supplied by private wells; waste disposal is by septic system.  There is a wide range of improved property values as noted above, with good acceptance in this market - minimal external obsolescence for higher end properties.  Most access roads are improved dirt/gravel although some of the main arterials are paved.  The more outlying the area, typically, the worse the road condition.

## SITE DESCRIPTION

Dimensions: See Additional Comments | Site Area: 13.39 Acres

Zoning Classification: AR-36A | Description: Agricultural/Residential - 36 Acre Minimum Size.  This is what the zoning was prior to a requested rezone requested by Pravada.  A rezone was begun as part of the Pravada Development, which has since been killed and the zoning is in limbo. | Do present improvements comply with existing zoning requirements? ☐ Yes  ☐ No  ☒ No Improvements

Uses allowed under current zoning: AR zoning permits the keeping of large animals such as cattle and horses for personal use only - no commercial agricultural enterprise is allowed under that zoning.  The zoning also limits the number of dwellings to one per parcel.  If the present zoning remains in force, the subject is an illegal usage due to its small size under the existing zoning requirement.

Are CC&Rs applicable? ☐ Yes  ☒ No  ☐ Unknown  Have the documents been reviewed? ☐ Yes  ☐ No  Ground Rent (if applicable) $ N/A /

Comments:

Highest & Best Use as improved: ☐ Present use, or ☒ Other use (explain)  Developed as Residential

Actual Use as of Effective Date: Land Holding | Use as appraised in this report: Land Holding

Summary of Highest & Best Use: The highest and best use of the subject property as of the effective date is as a land holding; future highest and best use will be as developed residential when the area real estate market recovers and demand returns for home sites.  This statement is a hypothetical condition which would require a rezone.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | | |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☐ | ☐ | None | Street | No Name | ☒ | ☐ | Frontage | 349 feet |
| Gas | ☐ | ☒ | Propane Available | Width | 30 feet | | | Topography | Contoured for Development |
| Water | ☐ | ☒ | Water Haul or Well | Surface | Dirt | | | Size | See Legal Description |
| Sanitary Sewer | ☐ | ☒ | Septic Required | Curb/Gutter | None | ☐ | ☐ | Shape | Irregular |
| Storm Sewer | ☐ | ☐ | None | Sidewalk | None | ☐ | ☐ | Drainage | Appears Adequate |
| Telephone | ☐ | ☐ | None | Street Lights | None | ☐ | ☐ | View | Neighborhood/Desert |
| Multimedia | ☐ | ☐ | None | Alley | None | | | | |

Other site elements: ☐ Inside Lot  ☐ Corner Lot  ☐ Cul de Sac  ☐ Underground Utilities  ☒ Other (describe)

FEMA Spec'l Flood Hazard Area ☐ Yes  ☒ No  FEMA Flood Zone  X | FEMA Map # 04015C4539G | FEMA Map Date  11/18/2009

Site Comments: The subject is located in what was the Pravada Development.  It has not been separated from the parent parcel, 215-01-116.  In the addendum, there is a complete legal description of the portion of the property considered in the assignment, the subject.  There is rudimentary access to the subject via an unnamed road and there are no available utilities.  The legal status of the described parcel is clouded by the fact that the parent parcel is currently in the midst of bankruptcy proceedings.  As of the effective date of the appraisal, the subject is illegal due to the parcel size being smaller than required by the zoning which is now in force.  The zoning was being revised as part of the Pravada Development but the revised zoning was never finalized.  Following the failure of Pravada, the zoning reverted to the AR-36A, the previous zoning.  It is probable that the subject is not saleable at the present time due to the on-going bankruptcy.  Since it is unlikely that an arms length transaction could occur under these conditions, the extraordinary assumption is made that the subject is marketable.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

# LAND APPRAISAL SUMMARY REPORT

File No.: **L100329R**

## TRANSFER HISTORY

My research ☐ did ☑ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): Mohave County Records and Wardex Regional MLS.

| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: According to official records, the subject has |
|---|---|
| Date: 08/01/2006 | not sold or transferred in the preceding 3 years. A transaction did take place August 2006. None of the comparables |
| Price: None Disclosed | has sold in the year prior to the date presented in the sales comparison grid. None of the comparables has sold in the |
| Source(s): Doc #6389-312 | year prior to the dates presented in the sales comparison grid. |
| 2nd Prior Subject Sale/Transfer | |
| Date: | |
| Price: | |
| Source(s): | |

| FEATURE | SUBJECT PROPERTY | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Address | No Name Road - Area 2 | Bolsa Drive | Moenkopi Drive | Amado Road |
| | Golden Valley, AZ 86413 | Golden Valley, AZ 86413 | Golden Valley, AZ 86413 | Golden Valley, AZ 86413 |
| Proximity to Subject | | 4.07 miles NW | 2.43 miles NW | 2.44 miles N |
| Sale Price | $ N/A | $ 47,250 | $ 12,000 | $ 18,000 |
| Price/ Acre | $ | $ 2,356.61 | $ 1,200.00 | $ 889.33 |
| Data Source(s) | Inspection | MLS #829664 DOM: 34 | Mohave County Records | MLS #836022 DOM: 396 |
| Verification Source(s) | County Records | Doc #7524-1 | Doc #7618-584 | Doc #7639-355 |

### SALES COMPARISON APPROACH

| VALUE ADJUSTMENT | DESCRIPTION | DESCRIPTION | +(-) $ Adjust | DESCRIPTION | +(-) $ Adjust | DESCRIPTION | +(-) $ Adjust |
|---|---|---|---|---|---|---|---|
| Sales or Financing | N/A | Cash | | Cash | | Cash | |
| Concessions | N/A | None Known | | None Known | | None Known | |
| Date of Sale/Time | N/A | 07/06/2009 -8% | -3,800 | 10/2009 -5% | -600 | 11/25/2009 -4% | -700 |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Pravada | Golden Valley Rchos | | Goldroad Station | | Golden Valley Rchos | |
| Site Area (in Acres) | 13.39 | 20.05 | -14,000 | 10.00 | +2,300 | 20.24 | -5,300 |
| Access | Poor | Similar | | Similar | | Similar | |
| Utilities | None | Electric Available | -5,000 | None | | Electric Available | |
| Improvements | None | None | | None | | None | |
| Parcel Number | See Add'n Comnts | 306-34-002B | | 215-17-008B | | 215-05-003/170/198 | |
| Stigma | Bankruptcy/Pravada | None | -4,700 | None | -1,200 | None | -1,800 |
| Net Adjustment (Total, in $) | | ☐ + ☑ – $ | -27,500 | ☑ + ☐ – $ | 500 | ☐ + ☑ – $ | -7,800 |
| Adjusted Sale Price (in $) | | Net 58.2 % Gross 58.2 % $ | 19,750 | Net 4.2 % Gross 34.2 % $ | 12,500 | Net 43.3 % Gross 43.3 % $ | 10,200 |

Summary of Sales Comparison Approach   The sales selected are judged to be the most comparable available; there have not been any sales within the Pravada Development. No recent sales of well sites or more proximate sales with lesser acreage were found. Time adjustments made to compensate for the declining market - according to Wardex Regional MLS data, vacant land sales in the southern portion of Golden Valley declined 11.5% in the preceding year. It is conceivable that those properties in near proximity to Pravada have experienced a more precipitous decline, insufficient data is available to establish a statistically valid rate of decline for that specific area. The location in Pravada results in an adjustment due to the status of Pravada - i.e. no improvements can be made on that property until it emerges from bankruptcy and then a rezone will be required for parcel smaller than 36 acres. Additionally, there is the perception associated with a "failed" development. The only potential buyers are likely to be speculators who may invest in the area with hope that the development may be revived. Site adjustments made for size differences only. The "Stigma" adjustment recognizes the lost value due to the subject property's bankruptcy status and inclusion in Pravada. The opinion of value is the rounded mid-range of three indicators. Since it is probable that the subject would not be involved in an arms length transaction due to its present status, the extraordinary assumption is made that the subject is marketable.

### PUD

PROJECT INFORMATION FOR PUDs (if applicable)   ☐ The Subject is part of a Planned Unit Development.

Legal Name of Project: N/A

Describe common elements and recreational facilities: N/A

### RECONCILIATION

Indicated Value by: Sales Comparison Approach $ 14,000

Final Reconciliation   Sales comparison is the only applicable approach to value; cost and income approaches are not applicable.

This appraisal is made ☑ "as is", or ☐ subject to the following conditions: The purpose of this report is to estimate market value. The intended user is Winchester Carlisle for property disposition. The sales comparison approach is the only applicable approach to value. This is a complete report transmitted in summary form. The extraordinary assumption is that the subject clears bankruptcy and can be sold on the open market.
☑ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based upon an inspection of the subject property, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is:
$ 14,000 , as of: March 24, 2009 , which is the effective date of this appraisal.
If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

### ATTACH.

A true and complete copy of this report consists of 8 pages, including exhibits which are considered an integral part of the report. This appraisal report has been properly understood without reference to the information contained in the complete report, which contains the following attached exhibits: ☑ Scope of Work
☑ Limiting cond./Certifications   ☐ Narrative Addendum   ☑ Location Map(s)   ☐ Flood Addendum   ☐ Additional Sales
☑ Photo Addenda   ☐ Parcel Map   ☐ Hypothetical Conditions   ☐ Extraordinary Assumptions

Client Contact: Dino Longi   Client Name: Rhodes Homes
E-Mail:   Address: 4730 Ft Apache Road, Suite 300, Las Vegas, NV 81947

### SIGNATURES

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| Appraiser Name: J. L. Woods | Supervisory or Co-Appraiser Name: |
| Company: Woods Appraisal Services, Inc. | Company: |
| Phone: (928) 753-2282   Fax: (928) 753-2420 | Phone:   Fax: |
| E-Mail: woods2@citlink.net | E-Mail: |
| Date of Report (Signature): 04/09/2010 | Date of Report (Signature): |
| License or Certification #: 20588   State: AZ | License or Certification #:   State: |
| Designation: | Designation: |
| Expiration Date of License or Certification: 2/28/2012 | Expiration Date of License or Certification: |
| Inspection of Subject: ☐ Did Inspect ☐ Did Not Inspect (Desktop) | Inspection of Subject: ☐ Did Inspect ☐ Did Not Inspect |
| March 24, 2009 | |

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GPLAND

Form GPLND — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE   3/2007

Main File No. L100329R   Page #3

## Supplemental Addendum

File No. L100329R

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | No Name Road - Area 2 | | | | | |
| City | Golden Valley | County | Mohave | State | AZ | Zip Code 86413 |
| Lender | Rhodes Homes | | | | | |

**Additional Comments:**

**Drainage:** Elevation of the site above road grade promotes surface drainage which appeared acceptable at the time of inspection. However, seasonal variations may occur and subsurface drainage conditions are unknown.

The subject site does not appear to be in a flood zone; flood maps often lack sufficient detail to enable accurate determination on the part of the appraiser. Please note item 3 of the attached Statement of Limiting Conditions.

**Site:** The appraiser has not made a detailed comparison of every property characteristic relative to local zoning and building ordinances.

The appraiser preparing this report has not completed an appraisal for this property in the preceding three years.

**Marketing of Subject Property:** Because the subject property is in hiatus, i.e. still involved in bankruptcy proceedings, it would be difficult to sell on the open market. For that reason, the value derived is not "Market Value", but may be more properly identified as investment value. Investment Value is defined by The Dictionary of Real Estate Appraisal as:

"The value of an investment to a particular investor, based on his or her investment requirements; as distinguished from market value, which is impersonal and detached."

The typical buyer would have the expectation that interest in a property would offer the prospect of having a wide variety of options relating to development as soon as said property ownership was transferred to their ownership. The subject does not satisfy this requirement. The reason for this is the murky ownership of the property as of the effective date of the appraisal and, if the property were to be acquired, the inability to develop it due to the present zoning. The only probable buyer interest will be from speculators who would typically only pay a portion of what the property may be worth if not encumbered by the above impediments. Their interest would typically be driven by any anticipated future development which would influence the value of the subject property, such as a revitalization of the Pravada Development.

| Signature | | Signature | |
|---|---|---|---|
| Name J.A. Woods | | Name | |
| Date Signed 04/09/2010 | | Date Signed | |
| State Certification # 20538 | State AZ | State Certification # | State |
| Or State License # | State | Or State License # | State |

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

# STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

---

Woods Appraisal Services
Form ACR_DEFD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**APPRAISER'S CERTIFICATION:** The appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**   No Name Road - Area 2, Golden Valley, AZ 86413

**APPRAISER:**

Signature: _____
Name: _J.A. Woods_
Date Signed: _04/09/2010_
State Certification #: _20508_
or State License #: _____
State: _AZ_
Expiration Date of Certification or License: _2/28/2012_

**SUPERVISORY APPRAISER (only if required):**

Signature: _____
Name: _____
Date Signed: _____
State Certification #: _____
or State License #: _____
State: _____
Expiration Date of Certification or License: _____

☐ Did   ☐ Did Not Inspect Property

## Subject Photo Page

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | No Name Road - Area 2 | | | | | |
| City | Golden Valley | County | Mohave | State | AZ | Zip Code  86413 |
| Lender | Rhodes Homes | | | | | |

### Looking North



| | |
|---|---|
| No Name Road - Area 2 | |
| Sales Price | N/A |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | Pravada |
| View | |
| Site | 13.39 |
| Quality | |
| Age | |

### Looking South



### Subject Street



**Legal Description Pg 1**

## AREA 2 LEGAL DESCRIPTION

THAT PART OF SECTION 10, TOWNSHIP 20 NORTH, RANGE 18 WEST OF THE GILA AND SALT RIVER EASE AND MERIDIAN, MOHAVE COUNTY, ARIZONA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST QUARTER (SW 1/4) OF THE NORTHWEST QUARTER (NW 1/4) CF SAID SECTION 10; THENCE NORTH 00°14'30" EAST ALONG THE WESTERLY LINE OF SAID SECTION 10, A DISTANCE OF 298.09 FEET; THENCE SOUTH 89°45'30" EAST, A DISTANCE OF 1277.78 FEET TO THE **POINT OF BEGINNING:**

THENCE SOUTH 69°53'25" EAST, A DISTANCE OF 130.07 FEET;

THENCE SOUTH 22°00'59" WEST, A DISTANCE OF 831.74 FEET TO A POINT ON A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 1500.00 FEET, A TANGENT LENGTH OF 467.43 FEET, A CENTRAL ANGLE OF 34°36'58", THE RADIUS OF WHICH BEARS NORTH 67°59'01" WEST, THE CHORD OF WHICH BEARS SOUTH 39°19'28" WEST, A DISTANCE OF 892.53 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 906.25 FEET;

THENCE SOUTH 56°37'57" WEST, A DISTANCE OF 98.53 FEET TO A POINT ON A TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 1000.00 FEET, A TANGENT LENGTH OF 176.09 FEET, A CENTRAL ANGLE OF 19°58'23", THE RADIUS OF WHICH BEARS SOUTH 33°22'03" EAST, THE CHORD OF WHICH BEARS SOUTH 46°38'46" WEST, A DISTANCE OF 346.83 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 348.60 FEET TO THE POINT ON A NON-TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 100.00 FEET, A CENTRAL ANGLE OF 19°01'51", A TANGENT LENGTH OF 16.76 FEET, THE LONG CHORD OF WHICH BEARS NORTH 07°34'11" EAST, A DISTANCE OF 33.06 FEET WITH A RADIAL LINE IN OF NORTH 88°03'16" EAST, AND A RADIAL LINE OUT OF NORTH 72°54'53" WEST, AN ARC DISTANCE OF 33.22 FEET;

THENCE NORTH 17°05'07" EAST, A DISTANCE OF 343.14 FEET TO A POINT ON A TANGENT CURVE TO THE RIGHT WITH A RADIUS OF 1879.00 FEET, A TANGENT LENGTH OF 360.13 FEET, A CENTRAL ANGLE OF 21°41'57", THE RADIUS WHICH BEARS SOUTH 72°54'53" EAST, THE CHORD WHICH BEARS NORTH 27°56'05" EAST, A DISTANCE OF 707.38 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 711.62 FEET;

THENCE NORTH 38°47'04" EAST, A DISTANCE OF 985.74 FEET TO A POINT ON A TANGENT CURVE TO THE LEFT WITH A RADIUS OF 2121.00 FEET, A TANGENT LENGTH OF 28.50 FEET, A CENTRAL ANGLE OF 01°32'24", THE RADIUS WHICH BEARS NORTH 50°25'10" WEST, THE CHORD WHICH BEARS NORTH 38°48'38" EAST, A DISTANCE OF 57.00 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 57.01 FEET TO THE **POINT OF BEGINNING.**

EXCEPT ALL MINERAL DEPOSITS AND RIGHTS AS RESERVED BY STATE OF ARIZONA IN DEED RECORDED IN BOOK 54 OF DEEDS, PAGE 519, RECORDS OF MOHAVE COUNTY, ARIZONA; AND

EXCEPT ALL OIL, GAS, AND MINERALS AS RESERVED IN DEED RECORDED IN BOOK OF OFFICIAL RECORDS 189, PAGE 103 AND BOOK OF OFFICIAL RECORDS 283, PAGE 931, RECORDS OF MOHAVE COUNTY, ARIZONA.

EXCEPT A PORTION OF PARCEL 6, PER RESOLUTION NUMBER 515 AND SPECIAL WARANTY DEED RECORDED IN BOOK 283, PAGES 931 - 941, OFFICIAL RECORDS, MOHAVE COUNTY, ARIZONA IN SECTION 10, TOWNSHIP 20 NORTH, RANGE 18 W OF THE GILA AND SALT RIVER BASE AND MERIDIAN AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF SAID SECTION 10;
THENCE NORTH 00°13'56" ALONG THE EAST LINE THEREOF, A DISTANCE OF 1156.01 FEET;
THENCE SOUTH 89°37'39" EAST ALONG THE SOUTH LINE OF SAID PARCEL 6A DISTANCE OF 196.36 FEET TO THE **POINT OF BEGINNING;**

Page | 17

**Legal Description Pg 2**

THENCE CONTINUING SOUTH 89°37'39" EAST ALONG THE SOUTH LINE OF SAID PARCEL 6 AND THE EAST LINE OF AFORSAID AREA 2, A DISTANCE OF 12.69 FEET TO A POINT ON A NON-TANGENT CURVE, CONCAVE SOUTHEASTERLY AND HAVING A RADIUS OF 1000.00 FEET, TANGENT LENGTH OF 88.81 FEET, THE RADIUS WHICH BEARS SOUTH 82°02'30" EAST, THE CHORD WHICH BEARS NORTH 43°01'58" EAST, A DISTANCE OF 176.90 FEET;
THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 117.13 FEET TO A POINT ON THE WEST LINE OF SAID PARCEL 6;
THENCE NORTH 00°14'33" EAST, A DISTANCE OF 35.08 FEET TO THE NORTHEAST CORNER OF SAID PARCEL 6;
THENCE NORTH 89°37'44" WEST ALONG THE NORTH LINE OF SAID PARCEL 6, A DISTANCE OF 84.08 FEET TO A POINT ON THE WESTERLY LINE OF AFORESAID AREA 2;
THENCE SOUTH 17°04'52" WEST ALONG SAID WEST LINE, A DISTANCE OF 157.14 FEET TO A TANGENT CURVE TO THE LEFT, CONCAVE SOUTHEASTERLY, HAVING A RADIUS OF 100.00 FEET, TANGENT LENGTH OF 7.53 FEET, THE RADIUS WHICH BEARS SOUTH 72°54'53" EAST, WHICH THE CHORD BEARS SOUTH 12°46'49" WEST, A DISTANCE OF 15.01 FEET;
THENCE ALONG THE ARC OF SAID CURVE A DISTANCE OF 15.03 FEET TO THE POINT OF BEGINNING.
CONTAINING 0.22 ACRES MORE OR LESS.

Page | 18

# Location Map

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | No Name Road - Area 2 | | | | | | |
| City | Golden Valley | County | Mohave | State | AZ | Zip Code | 86413 |
| Lender | Rhodes Homes | | | | | | |



**Area Map**

EXHIBIT OF INSIDE PRAVADA CLEAN-UP



Page | 14