# EXHIBIT A

part 6

# LAND APPRAISAL SUMMARY REPORT

File No.: L100326R

## SUBJECT

**Property Address:** No Name Road - Area C  **City:** Golden Valley  **State:** AZ  **Zip Code:** 86413
**County:** Mohave  **Legal Description:** See Addendum
**Assessor's Parcel #:** Portion of 215-01-116  **Tax Year:** See Below  **R.E. Taxes:** $ See Below  **Special Assessments:** $ N/A
**Market Area Name:** Pravada  **Map Reference:** Portion of 215-01-116  **Census Tract:** 9508.00
**Current Owner of Record:** Rhodes Homes  **Borrower (if applicable):** N/A
**Project Type (if applicable):** ☐ PUD  ☐ De Minimis PUD  ☐ Other (describe) N/A  **HOA:** $ N/A  ☐ per year  ☐ per month
**Are there any existing improvements to the property?** ☒ No  ☐ Yes  **If Yes, indicate current occupancy:** ☐ Owner  ☐ Tenant  ☒ Vacant  ☐ Not habitable
**If Yes, give a brief description:** The subject has not been split from the parent parcel which contains a total of 1134.01 acres. Because it is not a legal entity is has never been assessed or taxed as such.

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☐ Market Value (as defined), or ☒ other type of value (describe) Investment Value - See Addendum
This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date)  ☐ Retrospective  ☐ Prospective
**Property Rights Appraised:** ☒ Fee Simple  ☐ Leasehold  ☐ Leased Fee  ☐ Other (describe)
**Intended Use:** Estimate Investment Value for Property Distribution.
**Intended User(s) (by name or type):** Winchester Carlisle/Dino Longi
**Client:** Rhodes Homes  **Address:** 4730 Ft Apache Road, Suite 300, Las Vegas, NV 81947
**Appraiser:** J.A. Woods  **Address:** 1880 Lucille Avenue, Suite #1, Kingman, AZ 86401

## MARKET AREA DESCRIPTION

### Characteristics

| | | | |
|---|---|---|---|
| Location: | ☐ Urban | ☐ Suburban | ☒ Rural |
| Built up: | ☐ Over 75% | ☐ 25-75% | ☒ Under 25% |
| Growth rate: | ☐ Rapid | ☐ Stable | ☒ Slow |
| Property values: | ☐ Increasing | ☐ Stable | ☒ Declining |
| Demand/supply: | ☐ Shortage | ☐ In Balance | ☒ Over Supply |
| Marketing time: | ☐ Under 3 Mos. | ☐ 3-6 Mos. | ☒ Over 6 Mos. |

### Predominant Occupancy
☒ Owner  90
☐ Tenant
☐ Vacant (0-5%)
☒ Vacant (>5%)  80

### One-Unit Housing
| PRICE $(000) | AGE (yrs) |
|---|---|
| 50 Low | New |
| 300+ High | 45 |
| Pred | 5-10 |

### Present Land Use
| | |
|---|---|
| One-Unit | 98 % |
| 2-4 Unit | % |
| Multi-Unit | % |
| Comm'l | 2 % |
| | % |
| | % |

### Change in Land Use
☒ Not Likely
☐ Likely *
☐ In Process *
* To:

### Factors Affecting Marketability

| Item | Good | Average | Fair | Poor | N/A | Item | Good | Average | Fair | Poor | N/A |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Employment Stability | | ☒ | | | | Adequacy of Utilities | | | | ☒ | |
| Convenience to Employment | | | ☒ | | | Property Compatibility | | | ☒ | | |
| Convenience to Shopping | | | ☒ | | | Protection from Detrimental Conditions | | ☒ | | | |
| Convenience to Schools | | | ☒ | | | Police and Fire Protection | | ☒ | | | |
| Adequacy of Public Transportation | | ☒ | | | | General Appearance of Properties | | | ☒ | | |
| Recreational Facilities | | ☒ | | | | Appeal to Market | | | | ☒ | |

**Market Area Comments:** The subject neighborhood is located in the southern portion of Golden Valley which lies between Kingman, AZ and Bullhead City, AZ. Golden Valley occupies several square miles and is bisected by Highway 68. It is characterized by low density housing, with most parcels an acre or greater in size and a mix of site-built and manufactured housing with manufactured housing predominant. There is some commercial enterprise bordering Highway 68 as well as an elementary school. Most residents find employment in either Kingman or Bullhead City/Laughlin NV. Electric service is generally available throughout the area but water service is confined to a strip either side of Highway 68. Water in the outlying areas is either hauled or supplied by private wells; waste disposal is by septic system. There is a wide range of improved property values as noted above, with good acceptance in this market - minimal external obsolescence for higher end properties. Most area roads are improved dirt/gravel although some of the main arterials are paved. The more outlying the area, typically, the worse the road condition.

## SITE DESCRIPTION

**Dimensions:** See Additional Comments  **Site Area:** 9.36 Acres
**Zoning Classification:** AR-36A  **Description:** Agricultural/Residential - 36 Acre Minimum Size. This is what the zoning was prior to a requested rezone requested by Pravada. A rezone was begun as part of the Pravada Development, which has since been idled and the zoning is in limbo.  **Do present improvements comply with existing zoning requirements?** ☐ Yes  ☐ No  ☒ No Improvements
**Uses allowed under current zoning:** AR zoning permits the keeping of large animals such as cattle and horses for personal use only - no commercial agricultural enterprise is allowed under that zoning. The zoning also limits the number of dwellings to one per parcel. If the present zoning remains in force, the subject is an illegal usage due to it being undersized under the existing zoning requirement.
**Are CC&Rs applicable?** ☐ Yes  ☒ No  ☐ Unknown  **Have the documents been reviewed?** ☐ Yes  ☐ No  **Ground Rent (if applicable)** $ N/A /
**Comments:**
**Highest & Best Use as improved:** ☐ Present use, or  ☒ Other use (explain) Developed as Residential
**Actual Use as of Effective Date:** Land Holding  **Use as appraised in this report:** Land Holding
**Summary of Highest & Best Use:** The highest and best use of the subject property as of the effective date is as a land holding; future highest and best use will be as developed residential when the area real estate market recovers and demand returns for home sites. This statement is a hypothetical condition which would require a rezone.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☐ | ☐ | None | Street | No Name | ☒ | ☐ | Frontage | 208 feet | |
| Gas | ☐ | ☒ | Propane Available | Width | 20 feet | | | Topography | Countoured for Development | |
| Water | ☐ | ☒ | Water Haul or Well | Surface | Dirt | | | Size | See Legal Description | |
| Sanitary Sewer | ☐ | ☒ | Septic Required | Curb/Gutter | None | ☐ | ☐ | Shape | Irregular | |
| Storm Sewer | ☐ | ☐ | None | Sidewalk | None | ☐ | ☐ | Drainage | Appears Adequate | |
| Telephone | ☐ | ☐ | None | Street Lights | None | ☐ | ☐ | View | Neighborhood/Desert | |
| Multimedia | ☐ | ☐ | None | Alley | None | ☐ | ☐ | | | |

**Other site elements:** ☐ Inside Lot  ☐ Corner Lot  ☐ Cul de Sac  ☐ Underground Utilities  ☒ Other (describe)
**FEMA Spec'l Flood Hazard Area** ☐ Yes  ☒ No  **FEMA Flood Zone** X  **FEMA Map #** 04015C4545G  **FEMA Map Date** 11/18/2009
**Site Comments:** The subject is located in what was the Pravada Development. It has not been subdivided from the parent parcel, 215-01-116. In the addendum, there is a complete legal description of the property considered in the assignment, the subject. There is rudimentary access to the subject via an unnamed road and there are no available utilities. The legal status of the described parcel is clouded by the fact that the parent parcel is currently in the midst of bankruptcy proceedings. As of the effective date of the appraisal, the subject is illegal due to the parcel size being smaller than required by the zoning which is now in force. The zoning was being revised as part of the Pravada Development but the revised zoning was never finalized. Following the failure of Pravada, the zoning reverted to the AR-36A, the previous zoning. It is probable that the subject is not saleable at the present time due to the on-going bankruptcy. Since it is unlikely that an arms length transaction could occur under these conditions, the extraordinary assumption is made that the subject is marketable.



Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPLND — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE                    3/2007

# LAND APPRAISAL SUMMARY REPORT

File No.: L100326R

## TRANSFER HISTORY

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s): Mohave County Records and Wardex Regional MLS.

**1st Prior Subject Sale/Transfer**
- Date: 08/01/2006
- Price: None Disclosed
- Source(s): Doc #6389-312

**2nd Prior Subject Sale/Transfer**
- Date:
- Price:
- Source(s):

Analysis of sale/transfer history and/or any current agreement of sale/listing: According to official records, the subject has not sold or transferred in the preceding 3 years. A transaction did take place August 2006. None of the comparables has sold in the year prior to the date presented in the sales comparison grid. None of the comparables has sold in the year prior to the dates presented in the sales comparison grid. None of the comparables sold in the year prior to the date presented in the sales comparison grid.

## SALES COMPARISON APPROACH

| FEATURE | SUBJECT PROPERTY | COMPARABLE NO. 1 | +(-) $ Adjust | COMPARABLE NO. 2 | +(-) $ Adjust | COMPARABLE NO. 3 | +(-) $ Adjust |
|---|---|---|---|---|---|---|---|
| Address | No Name Road - Area C, Golden Valley, AZ 86413 | Bolsa Drive, Golden Valley, AZ 86413 | | Moenkopi Drive, Golden Valley, AZ 86413 | | Centenial Road, Golden Valley, AZ 86413 | |
| Proximity to Subject | | 1.51 miles NE | | 2.92 miles W | | 1.54 miles S | |
| Sale Price | $ N/A | $ 47,250 | | $ 12,000 | | $ 42,984 | |
| Price/ Acre | $ | $ 2,356.61 | | $ 1,200.00 | | $ 6,097.02 | |
| Data Source(s) Verification Source(s) | Inspection County Records | MLS #829664 DOM: 34 Doc #7524-1 | | Mohave County Records Doc #7618-584 | | Mohave County Records Doc #7548-595 | |
| VALUE ADJUSTMENT | DESCRIPTION | DESCRIPTION | | DESCRIPTION | | DESCRIPTION | |
| Sales or Financing | N/A | Cash | | Cash | | Cash | |
| Concessions | N/A | None Known | | None Known | | None Known | |
| Date of Sale/Time | N/A | 07/06/2009 -8% | -3,800 | 10/2009 -5% | -600 | 06/2009 -9% | -3,900 |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Pravada | Golden Valley Rchos | | Goldroad Station | | Golden Valley Rchos | |
| Site Area (in Acres) | 10.42 | 20.05 | -20,000 | 10.00 | | 7.05 | +10,000 |
| Access | Poor | Similar | | Similar | | Similar | |
| Utilities | None | Electric Available | -5,000 | None | | None | |
| Improvements | None | None | | None | | None | |
| Parcel Number | N/A | 215-02-110/111A | | 215-17-008B | | 215-05-003/170/198 | |
| Stigma | Bankruptcy/Pravada | None | -2,500 | None | -1,200 | None | -4,300 |
| Net Adjustment (Total, in $) | | ☐ + ☒ − $ | -31,300 | ☐ + ☒ − $ | -1,800 | ☒ + ☐ − $ | 1,800 |
| Adjusted Sale Price (in $) | | Net 66.2 % Gross 66.2 % $ | 15,950 | Net 15.0 % Gross 15.0 % $ | 10,200 | Net 4.2 % Gross 42.3 % $ | 44,784 |

Summary of Sales Comparison Approach: The sales selected are judged to be the most comparable available; there have not been any sales within the Pravada Development. No recent sales of well sites or more proximate sales with lesser acreage were found. Time adjustments made to compensate for the declining market - according to Wardex Regional MLS data, vacant land sales in the southern portion of Golden Valley declined 11.5% in the preceding year. It is conceivable that those properties in near proximity to Pravada have experienced a more precipitous decline, insufficient data is available to establish a statistically valid rate of decline for that specific area. The location in Pravada results in an adjustment due to the status of Pravada - i.e. no improvements can be made on that property untill it emerges from bankruptcy and then a rezone will be required for parcel smaller than 36 acres. Additionally, there is the perception associated with a "failed" development. The only potential buyers are likely to be speculators who may invest in the area with hope that the development may be revived. Site adjustments made for size differences only. The "Stigma" adjustment recognizes the lost value due to the subject property's bankruptcy status. The opinion of value is the rounded mid-range of three indicators. It is probable that the subject is not saleable at the present time due to the on-going bankruptcy. The extraordinary assumption is made that the subject is marketable.

## PUD

**PROJECT INFORMATION FOR PUDs (if applicable)**  ☐ The Subject is part of a Planned Unit Development.
Legal Name of Project: N/A
Describe common elements and recreational facilities: N/A

## RECONCILIATION

Indicated Value by: Sales Comparison Approach $ 23,600
Final Reconciliation: Sales comparison is the only applicable approach to value; cost and income approaches are not applicable.

This appraisal is made ☐ "as is", or ☒ subject to the following conditions: The purpose of this report is to estimate market value. The intended user is Winchester Carlisle for property disposition. The sales comparison approach is the only applicable approach to value. This is a complete report transmitted in summary form. The extraordinary assumption is made that the subject clears bankruptcy and can be sold on the open market.

☒ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based upon an inspection of the subject property, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is:
$ 23,600 , as of: March 24, 2009 , which is the effective date of this appraisal.
If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

## ATTACH.

A true and complete copy of this report contains   8   pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report, which contains the following attached exhibits:
☒ Scope of Work   ☒ Limiting cond./Certifications   ☐ Narrative Addendum   ☒ Location Map(s)   ☐ Flood Addendum   ☐ Additional Sales
☒ Photo Addenda   ☒ Parcel Map   ☐ Hypothetical Conditions   ☒ Extraordinary Assumptions   ☐

Client Contact: Dino Longi
Client Name: Rhodes Homes
E-Mail:
Address: 4730 Ft Apache Road, Suite 300, Las Vegas, NV 81947

## SIGNATURES

**APPRAISER**
- Appraiser Name: J.A. Woods
- Company: Woods Appraisal Services, Inc.
- Phone: (928) 753-2282    Fax: (928) 753-2420
- E-Mail: woods2@citlink.net
- Date of Report (Signature): 04/09/2010
- License or Certification #: 20588    State: AZ
- Designation:
- Expiration Date of License or Certification: 2/28/2012
- Inspection of Subject: ☐ Did Inspect ☒ Did Not Inspect (Desktop)
- Date of Inspection: March 24, 2009

**SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable)**
- Supervisory or Co-Appraiser Name:
- Company:
- Phone:    Fax:
- E-Mail:
- Date of Report (Signature):
- License or Certification #:    State:
- Designation:
- Expiration Date of License or Certification:
- Inspection of Subject: ☐ Did Inspect ☐ Did Not Inspect
- Date of Inspection:

## Supplemental Addendum

File No. L100326R

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | No Name Road - Area C | | | | | |
| City | Golden Valley | County | Mohave | State | AZ | Zip Code 86413 |
| Lender | Rhodes Homes | | | | | |

**Additional Comments:**

**Drainage:** Elevation of the site above road grade promotes surface drainage which appeared acceptable at the time of inspection. However, seasonal variations may occur and subsurface drainage conditions are unknown.

The subject site does not appear to be in a flood zone; flood maps often lack sufficient detail to enable accurate determination on the part of the appraiser. Please note item 3 of the attached Statement of Limiting Conditions.

**Site:** The appraiser has not made a detailed comparison of every property characteristic relative to local zoning and building ordinances.

The appraiser preparing this report has not completed an appraisal for this property in the preceding three years.

**Marketing of Subject Property:** Because the subject property is in hiatus, i.e. still involved in bankruptcy proceedings, it would be difficult to sell on the open market. For that reason, the value derived is not "Market Value", but may be more properly identified as investment value. Investment Value is defined by The Dictionary of Real Estate Appraisal as:

"The value of an investment to a particular investor, based on his or her investment requirements; as distinguished from market value, which is impersonal and detached."

The typical buyer would have the expectation that interest in a property would offer the prospect of having a wide variety of options relating to development as soon as said property ownership was transferred to their ownership. The subject does not satisfy this requirement. The reason for this is the murky ownership of the property as of the effective date of the appraisal and, if the property were to be acquired, the inability to develop it due to the present zoning. The only probable buyer interest will be from speculators who would typically only pay a portion of what the property may be worth if not encumbered by the above impediments. Their interest would typically be driven by any anticipated future development which would influence the value of the subject property, such as a revitalization of the Pravada Development.

| Signature | | Signature | |
|---|---|---|---|
| Name | J.A. Woods | Name | |
| Date Signed | 04/09/2010 | Date Signed | |
| State Certification # | 20588 | State AZ | State Certification # | State |
| Or State License # | | State | Or State License # | State |

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**APPRAISER'S CERTIFICATION:** The appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:** No Name Road - Area C, Golden Valley, AZ 86413

| **APPRAISER:** | **SUPERVISORY APPRAISER (only if required):** |
|---|---|
| Signature: _[signed]_ | Signature: _____ |
| Name: J.A. Woods | Name: _____ |
| Date Signed: 04/09/2010 | Date Signed: _____ |
| State Certification #: 20538 | State Certification #: _____ |
| or State License #: _____ | or State License #: _____ |
| State: AZ | State: _____ |
| Expiration Date of Certification or License: 2/28/2012 | Expiration Date of Certification or License: _____ |
| | ☐ Did   ☐ Did Not Inspect Property |

## Subject Photo Page

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | No Name Road - Area C | | | | | |
| City | Golden Valley | County | Mohave | State | AZ | Zip Code 86413 |
| Lender | Rhodes Homes | | | | | |



### Looking North

No Name Road - Area C
Sales Price          N/A
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location             Pravada
View
Site                 10.42
Quality
Age



### Looking South



### Subject Street

## AREA "C" LEGAL DESCRIPTION

THAT PART OF SECTION 3 AND 10, TOWNSHIP 20 NORTH, RANGE 18 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MOHAVE COUNTY, ARIZONA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST QUARTER (SW 1/4) OF THE SOUTHEAST QUARTER (SE 1/4) OF SAID SECTION 3; THENCE NORTH 00°12'51" EAST ALONG THE WESTERLY LINE OF THE SOUTHEAST QUARTER (SE 1/4) OF SAID SECTION 3, A DISTANCE OF 760.16 FEET; THENCE SOUTH 89°47'09" EAST, A DISTANCE OF 687.04 FEET TO THE **POINT OF BEGINNING:**

THENCE SOUTH 79°16'06" EAST, A DISTANCE OF 208.46 FEET TO THE POINT ON A TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 1492.50 FEET, A TANGENT LENGTH OF 264.41 FEET, A CENTRAL ANGLE OF 20°05'32", THE RADIUS OF WHICH BEARS SOUTH 10°43'54" WEST, THE CHORD OF WHICH BEARS SOUTH 69°13'20" EAST, A DISTANCE OF 520.71 FEET;

THENCE ALONG THE ARC OF SAID CURVE, A DISTANCE OF 523.38 FEET;

THENCE SOUTH 19°01'02" WEST, A DISTANCE OF 620.81 FEET;

THENCE NORTH 70°45'43" WEST, A DISTANCE OF 727.83 FEET TO A POINT ON A NON-TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 2121.00 FEET, A CENTRAL ANGLE OF 16°22'15", A TANGENT LENGTH OF 305.09 FEET, THE LONG CHORD OF WHICH BEARS NORTH 19°07'11" EAST, A DISTANCE OF 603.97 FEET, WITH A RADIAL LINE IN OF NORTH 62°41'42" WEST AND A RADIAL LINE OUT OF SOUTH 79°03'57" EAST;

AN ARC LENGTH OF 606.02 FEET TO THE **POINT OF BEGINNING.**

**EXCEPT** ALL MINERAL DEPOSITS AND RIGHTS AS RESERVED BY STATE OF ARIZONA IN DEED RECORDED IN BOOK 54 OF DEEDS, PAGE 519, RECORDS OF MOHAVE COUNTY, ARIZONA; AND

**EXCEPT** ALL OIL, GAS, AND MINERALS AS RESERVED IN DEED RECORDED IN BOOK OF OFFICIAL RECORDS 189, PAGE 103 AND BOOK OF OFFICIAL RECORDS 283, PAGE 931, RECORDS OF MOHAVE COUNTY, ARIZONA.

## Location Map

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | No Name Road - Area C | | | | | | |
| City | Golden Valley | County | Mohave | State | AZ | Zip Code | 86413 |
| Lender | Rhodes Homes | | | | | | |



**Area Map**



Page | 14

# LAND APPRAISAL SUMMARY REPORT

File No.: L100327R

## SUBJECT

| Field | Value |
|---|---|
| Property Address | No Name Road - Area D |
| City | Golden Valley |
| State | AZ |
| Zip Code | 86413 |
| County | Mohave |
| Legal Description | See Addendum |
| Assessor's Parcel # | A Portion of 215-01-115 |
| Tax Year | N/A |
| R.E. Taxes $ | N/A |
| Special Assessments $ | None Known |
| Market Area Name | Pravada |
| Map Reference | Portion of 215-01-115 |
| Census Tract | 9508.00 |
| Current Owner of Record | Rhodes Homes |
| Borrower (if applicable) | N/A |
| Project Type | ☐ PUD  ☐ De Minimis PUD  ☐ Other (describe) N/A |
| HOA $ | N/A  ☐ per year  ☐ per month |
| Are there any existing improvements to the property? | ☒ No  ☐ Yes |
| If Yes, indicate current occupancy | ☐ Owner  ☐ Tenant  ☒ Vacant  ☐ Not habitable |

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☐ Market Value (as defined), or ☒ other type of value (describe) Investment Value - See Addendum

This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date)  ☐ Retrospective  ☐ Prospective

Property Rights Appraised: ☒ Fee Simple  ☐ Leasehold  ☐ Leased Fee  ☐ Other (describe)

Intended Use: Estimate Value for Property Distribution.

Intended User(s) (by name or type): Winchester Carlisle/Dino Longi

Client: Rhodes Homes    Address: 4730 Ft Apache Road, Suite 300, Las Vegas, NV 81947

Appraiser: J.A. Woods    Address: 1880 Lucille Avenue, Suite #1, Kingman, AZ 86401

## MARKET AREA DESCRIPTION

### Characteristics

| | Urban | Suburban | Rural |
|---|---|---|---|
| Location | ☐ | ☐ | ☒ |
| Built up | Over 75% ☐ | 25-75% ☐ | Under 25% ☒ |
| Growth rate | Rapid ☐ | Stable ☐ | Slow ☒ |
| Property values | Increasing ☐ | Stable ☐ | Declining ☒ |
| Demand/supply | Shortage ☐ | In Balance ☐ | Over Supply ☒ |
| Marketing time | Under 3 Mos. ☐ | 3-6 Mos. ☐ | Over 6 Mos. ☒ |

### Predominant Occupancy
☒ Owner 90  ☐ Tenant 50  ☐ Vacant (0-5%) 300+  ☒ Vacant (>5%) 80

### One-Unit Housing
PRICE $(000) / AGE (yrs): Low New / High 45 / Pred 5-10

### Present Land Use
| | % |
|---|---|
| One-Unit | 98 |
| 2-4 Unit | |
| Multi-Unit | |
| Comm'l | 2 |

### Change in Land Use
☒ Not Likely  ☐ Likely *  ☐ In Process *   * To:

### Factors Affecting Marketability

| Item | Good | Average | Fair | Poor | N/A |
|---|---|---|---|---|---|
| Employment Stability | ☐ | ☒ | ☐ | ☐ | ☐ |
| Convenience to Employment | ☐ | ☐ | ☒ | ☐ | ☐ |
| Convenience to Shopping | ☐ | ☐ | ☒ | ☐ | ☐ |
| Convenience to Schools | ☐ | ☐ | ☒ | ☐ | ☐ |
| Adequacy of Public Transportation | ☐ | ☒ | ☐ | ☐ | ☐ |
| Recreational Facilities | ☐ | ☒ | ☐ | ☐ | ☐ |
| Adequacy of Utilities | ☐ | ☐ | ☐ | ☒ | ☐ |
| Property Compatibility | ☐ | ☐ | ☒ | ☐ | ☐ |
| Protection from Detrimental Conditions | ☐ | ☒ | ☐ | ☐ | ☐ |
| Police and Fire Protection | ☐ | ☒ | ☐ | ☐ | ☐ |
| General Appearance of Properties | ☐ | ☐ | ☒ | ☐ | ☐ |
| Appeal to Market | ☐ | ☐ | ☐ | ☒ | ☐ |

Market Area Comments: The subject neighborhood is located in the southern portion of Golden Valley which lies between Kingman, AZ and Bullhead City, AZ. Golden Valley occupies several square miles and is bisected by Highway 68. It is characterized by low density housing, with most parcels an acre or greater in size and a mix of site-built and manufactured housing with manufactured housing predominant. There is some commercial enterprise bordering Highway 68 as well as an elementary school. Most residents find employment in either Kingman or Bullhead City/Laughlin NV. Electric service is generally available throughout the area but water service is confined to a strip either side of Highway 68. Water in the outlying areas is either hauled or supplied by private wells; waste disposal is by septic system. There is a wide range of improved property values as noted above, with good acceptance in this market - minimal external obsolescence for higher end properties. Most area roads are improved dirt/gravel although some of the main arterials are paved. The more outlying the area, typically, the worse the road condition.

## SITE DESCRIPTION

Dimensions: See Additional Comments    Site Area: 9.36 Acres

Zoning Classification: AR-36A    Description: Agricultural/Residential - 36 Acre Minimum Size. This is what the zoning was prior to a requested rezone requested by Pravada. A rezone was begun as part of the Pravada Development, which has since been idled and the zoning is in limbo.

Do present improvements comply with existing zoning requirements? ☐ Yes  ☐ No  ☒ No Improvements

Uses allowed under current zoning: AR zoning permits the keeping of large animals such as cattle and horses for personal use only - no commercial agricultural enterprise is allowed under that zoning. The zoning also limits the number of dwellings to one per parcel. If the present zoning remains in force, the subject is an illegal usage due to it being undersized under the existing zoning requirement.

Are CC&Rs applicable?  ☐ Yes  ☒ No  ☐ Unknown    Have the documents been reviewed? ☐ Yes  ☐ No    Ground Rent (if applicable) $ N/A

Comments:

Highest & Best Use as improved: ☐ Present use, or  ☒ Other use (explain) Developed as Residential

Actual Use as of Effective Date: Land Holding    Use as appraised in this report: Land Holding

Summary of Highest & Best Use: The highest and best use of the subject property as of the effective date is as a land holding; future highest and best use will be as developed residential when the area real estate market recovers and demand returns for home sites. This statement is a hypothetical condition which would require a rezone.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | ☐ | ☐ | None | Street | No Name | ☒ | ☐ |
| Gas | ☐ | ☒ | Propane Available | Width | 30 feet | | |
| Water | ☐ | ☒ | Water Haul or Well | Surface | Dirt | | |
| Sanitary Sewer | ☐ | ☒ | Septic Required | Curb/Gutter | None | ☐ | ☐ |
| Storm Sewer | ☐ | ☐ | None | Sidewalk | None | ☐ | ☐ |
| Telephone | ☐ | ☐ | None | Street Lights | None | ☐ | ☐ |
| Multimedia | ☐ | ☐ | None | Alley | None | ☐ | ☐ |

| | |
|---|---|
| Frontage | 157 feet |
| Topography | Countoured for Development |
| Size | See Legal Description |
| Shape | Irregular |
| Drainage | Appears Adequate |
| View | Neighborhood/Desert |

Other site elements: ☐ Inside Lot  ☐ Corner Lot  ☐ Cul de Sac  ☐ Underground Utilities  ☒ Other (describe)

FEMA Spec'l Flood Hazard Area  ☐ Yes  ☒ No    FEMA Flood Zone X    FEMA Map # 04015C4545G    FEMA Map Date 11/18/2009

Site Comments: The subject is located in what was the Pravada Development. It has not been subdivided from the parent parcel, 215-01-115. In the addendum, there is a complete legal description of the property considered in the assignment, the subject. There is rudimentary access to the subject via an unnamed road and there are no available utilities. The legal status of the described parcel is clouded by the fact that the parent parcel is currently in the midst of bankruptcy proceedings. As of the effective date of the appraisal, the subject is illegal due to the parcel size being smaller than required by the zoning which is now in force. The zoning was being revised as part of the Pravada Development but the revised zoning was never finalized. Following the failure of Pravada, the zoning reverted to the AR-36A, the previous zoning. It is probable that the subject is not saleable at the present time due to the on-going bankruptcy. The extraordinary assumption is made that the subject can be legally sold.

GP LAND    Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPLND — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    3/2007

# LAND APPRAISAL SUMMARY REPORT

File No.: L100327R

## TRANSFER HISTORY

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s): Mohave County Records and Wardex Regional MLS.

**1st Prior Subject Sale/Transfer**
Date: 09/28/2006
Price: None Recorded
Source(s): Doc #6470-556

Analysis of sale/transfer history and/or any current agreement of sale/listing: The last transfer of the subject parent parcel occurred September 2006. None of the comparable sales has sold in the year prior to the dates presented in the sales comparison grid.

**2nd Prior Subject Sale/Transfer**
Date:
Price:
Source(s):

## SALES COMPARISON APPROACH

| FEATURE | SUBJECT PROPERTY | COMPARABLE NO. 1 | +(-) $ Adjust | COMPARABLE NO. 2 | +(-) $ Adjust | COMPARABLE NO. 3 | +(-) $ Adjust |
|---|---|---|---|---|---|---|---|
| Address | No Name Road - Area D, Golden Valley, AZ 86413 | Bolsa Drive, Golden Valley, AZ 86413 | | Moenkopi Drive, Golden Valley, AZ 86413 | | Centenial Road, Golden Valley, AZ 86413 | |
| Proximity to Subject | | 4.37 miles NW | | 3.34 miles W | | 1.45 miles S | |
| Sale Price | $ N/A | $ 47,250 | | $ 12,000 | | $ 42,984 | |
| Price/ Acre | $ | $ 2,356.61 | | $ 1,200.00 | | $ 6,097.02 | |
| Data Source(s) / Verification Source(s) | Inspection / County Records | MLS #829664 DOM: 34 / Doc #7524-1 | | Mohave County Records / Doc #7618-584 | | Mohave County Records / Doc #7548-595 | |
| VALUE ADJUSTMENT | DESCRIPTION | DESCRIPTION | +(-) $ Adjust | DESCRIPTION | +(-) $ Adjust | DESCRIPTION | +(-) $ Adjust |
| Sales or Financing Concessions | N/A / N/A | Cash / None Known | | Cash / None Known | | Cash / None Known | |
| Date of Sale/Time | N/A | 07/06/2009 -8% | -3,800 | 10/2009 -5% | -600 | 06/2009 -9% | -3,900 |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Pravada | Golden Valley Rchos | | Goldroad Station | | Golden Valley Rchos | |
| Site Area (in Acres) | 9.36 | 20.05 | -22,000 | 10.00 | | 7.05 | +10,000 |
| Access | Poor | Similar | | Similar | | Similar | |
| Utilities | None | Electric Available | -5,000 | None | | None | |
| Improvements | None | None | | None | | None | |
| Parcel Number | See Addn'l Comnts | 215-02-110/111A | | 215-17-008B | | 215-05-003/170/198 | |
| Stigma | Bankruptcy/Pravada | None | -4,700 | None | -1,200 | None | -4,300 |
| Net Adjustment (Total, in $) | | ☐ + ☒ − | $ -35,500 | ☐ + ☒ − | $ -1,800 | ☒ + ☐ − | $ 1,800 |
| Adjusted Sale Price (in $) | | Net 75.1 % / Gross 75.1 % | $ 11,750 | Net 15.0 % / Gross 15.0 % | $ 10,200 | Net 4.2 % / Gross 42.3 % | $ 44,784 |

Summary of Sales Comparison Approach: The sales selected are judged to be the most comparable available; there have not been any sales within the Pravada Development. No recent sales of well sites or more proximate sales with lesser acreage were found. Time adjustments made to compensate for the declining market - according to Wardex Regional MLS data, vacant land sales in the southern portion of Golden Valley declined 11.5% in the preceding year. It is conceivable that those properties in near proximity to Pravada have experienced a more precipitous decline, insufficient data is available to establish a statistically valid rate of decline for that specific area. The location in Pravada results in an adjustment due to the status of Pravada - i.e. no improvements can be made on that property untill it emerges from bankruptcy and then a rezone will be required for parcel smaller than 36 acres. Additionally, there is the perception associated with a "failed" development. The only potential buyers are likely to be speculators who may invest in the area with hope that the development may be revived. Site adjustments made for size differences only. The "Stigma" adjustment recognizes the lost value due to the subject property's bankruptcy status. The opinion of value is the rounded mid-range of three indicators. It is probable that the subject is not saleable at the present time due to the on-going bankruptcy. The extraordinary assumption is made that the subject is marketable.

## PUD

**PROJECT INFORMATION FOR PUDs (if applicable)**    ☐ The Subject is part of a Planned Unit Development.
Legal Name of Project: N/A
Describe common elements and recreational facilities: N/A

## RECONCILIATION

Indicated Value by: Sales Comparison Approach $ 22,000
Final Reconciliation: Sales comparison is the only applicable approach to value; cost and income approaches are not applicable.

This appraisal is made ☐ "as is", or ☒ subject to the following conditions: The purpose of this report is to estimate market value. The intended user is Winchester Carlisle for property disposition. The sales comparison approach is the only applicable approach to value. This is a complete report transmitted in summary form. The extraordinary assumption is made that the subject clears bankruptcy and can be sold on the open market.
☒ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based upon an inspection of the subject property, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is:
$ 22,000 , as of: March 24, 2009 , which is the effective date of this appraisal.
If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

## ATTACH.

A true and complete copy of this report contains 8 pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report, which contains the following attached exhibits: ☒ Scope of Work  ☒ Limiting cond./Certifications  ☐ Narrative Addendum  ☒ Location Map(s)  ☐ Flood Addendum  ☐ Additional Sales  ☒ Photo Addenda  ☐ Parcel Map  ☐ Hypothetical Conditions  ☒ Extraordinary Assumptions  ☐

Client Contact: Dino Longi                Client Name: Rhodes Homes
E-Mail:                                    Address: 4730 Ft Apache Road, Suite 300, Las Vegas, NV 81947

## SIGNATURES

**APPRAISER**
Appraiser Name: J.A. Woods
Company: Woods Appraisal Services, Inc.
Phone: (928) 753-2282    Fax: (928) 753-2420
E-Mail: woods2@citlink.net
Date of Report (Signature): 04/09/2010
License or Certification #: 20588    State: AZ
Designation:
Expiration Date of License or Certification: 2/28/2012
Inspection of Subject: ☒ Did Inspect  ☐ Did Not Inspect (Desktop)
Date of Inspection: March 24, 2009

**SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable)**
Supervisory or Co-Appraiser Name:
Company:
Phone:    Fax:
E-Mail:
Date of Report (Signature):
License or Certification #:    State:
Designation:
Expiration Date of License or Certification:
Inspection of Subject: ☐ Did Inspect  ☐ Did Not Inspect
Date of Inspection:

GP LAND

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPLND — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    3/2007

## Supplemental Addendum

File No. L100327R

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | No Name Road - Area D | | | | | | |
| City | Golden Valley | County | Mohave | State | AZ | Zip Code | 86413 |
| Lender | Rhodes Homes | | | | | | |

**Additional Comments:**

**Drainage:** Elevation of the site above road grade promotes surface drainage which appeared acceptable at the time of inspection. However, seasonal variations may occur and subsurface drainage conditions are unknown.

The subject site does not appear to be in a flood zone; flood maps often lack sufficient detail to enable accurate determination on the part of the appraiser. Please note item 3 of the attached Statement of Limiting Conditions.

**Site:** The appraiser has not made a detailed comparison of every property characteristic relative to local zoning and building ordinances.

The appraiser preparing this report has not completed an appraisal for this property in the preceding three years.

**Marketing of Subject Property:** Because the subject property is in hiatus, i.e. still involved in bankruptcy proceedings, it would be difficult to sell on the open market. For that reason, the value derived is not "Market Value", but may be more properly identified as investment value. Investment Value is defined by The Dictionary of Real Estate Appraisal as:

"The value of an investment to a particular investor, based on his or her investment requirements; as distinguished from market value, which is impersonal and detached."

The typical buyer would have the expectation that interest in a property would offer the prospect of having a wide variety of options relating to development as soon as said property ownership was transferred to their ownership. The subject does not satisfy this requirement. The reason for this is the murky ownership of the property as of the effective date of the appraisal and, if the property were to be acquired, the inability to develop it due to the present zoning. The only probable buyer interest will be from speculators who would typically only pay a portion of what the property may be worth if not encumbered by the above impediments. Their interest would typically be driven by any anticipated future development which would influence the value of the subject property, such as a revitalization of the Pravada Development.

| Signature | | Signature | |
|---|---|---|---|
| Name J.A. Woods | | Name | |
| Date Signed 04/09/2010 | | Date Signed | |
| State Certification # 20588 | State AZ | State Certification # | State |
| Or State License # | State | Or State License # | State |

Form TADD2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**APPRAISER'S CERTIFICATION:** The appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation.  If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report.  I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report.  I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them.  I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report.  I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that:  I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:** No Name Road - Area D, Golden Valley, AZ 86413

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name: J.A. Woods | Name: |
| Date Signed: 04/09/2010 | Date Signed: |
| State Certification #: 20538 | State Certification #: |
| or State License #: | or State License #: |
| State: AZ | State: |
| Expiration Date of Certification or License: 2/28/2012 | Expiration Date of Certification or License: |
| | ☐ Did    ☐ Did Not Inspect Property |

## Subject Photo Page

| Borrower | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | No Name Road - Area D | | | | |
| City | Golden Valley | County | Mohave | State AZ | Zip Code 86413 |
| Lender | Rhodes Homes | | | | |



**Looking West**

No Name Road - Area D
Sales Price          N/A
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location             Pravada
View
Site                 9.36
Quality
Age



**Looking East**



**Subject Street**

**Legal Description**

## AREA "D" LEGAL DESCRIPTION

THAT PART OF SECTION 2, TOWNSHIP 20 NORTH, RANGE 18 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MOHAVE COUNTY, ARIZONA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF SAID SECTION 2; THENCE NORTH 00°14'11" EAST ALONG THE WESTERLY LINE OF SAID SECTION 3, A DISTANCE OF 651.05 FEET; THENCE SOUTH 89°45'49" EAST, A DISTANCE OF 658.43 FEET TO THE **POINT OF BEGINNING:**

THENCE SOUTH 90°00'00" EAST, A DISTANCE OF 1086.44 FEET;

THENCE SOUTH 24°58'34" EAST, A DISTANCE OF 186.73 FEET;

THENCE SOUTH 65°16'21" WEST, A DISTANCE OF 984.76 FEET;

THENCE NORTH 24°59'02" WEST, A DISTANCE OF 641.19 FEET TO THE **POINT OF BEGINNING.**

**EXCEPT** ALL MINERAL DEPOSITS AND RIGHTS AS RESERVED BY STATE OF ARIZONA IN DEED RECORDED IN BOOK 54 OF DEEDS, PAGE 519, RECORDS OF MOHAVE COUNTY, ARIZONA; AND

**EXCEPT** ALL OIL, GAS, AND MINERALS AS RESERVED IN DEED RECORDED IN BOOK OF OFFICIAL RECORDS 189, PAGE 103 AND BOOK OF OFFICIAL RECORDS 283, PAGE 931, RECORDS OF MOHAVE COUNTY, ARIZONA.

Page | 23

## Location Map

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | No Name Road - Area D | | | | | | |
| City | Golden Valley | County | Mohave | State | AZ | Zip Code | 86413 |
| Lender | Rhodes Homes | | | | | | |



