1    Jeffrey R. Sylvester, Esq. (Nevada Bar No. 4396)        **E-Filed June 14, 2010**
      James B. Macrobbie, Esq. (Nevada Bar No. 7430)
2    SYLVESTER & POLEDNAK, LTD.
      7371 Prairie Falcon Road, Suite 120
3    Las Vegas, Nevada 89128
      Telephone: (702) 952-5200
4    Facsimile: (702) 952-5205
      jeff@sylvesterpolednak.com
5

6    Van C. Durrer II
      Ramon M. Naguiat
7    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
      300 South Grand Avenue, #3400
8    Los Angeles, California 90071-3144
      Telephone: (213) 687-5000
9    Facsimile: (213) 687-5600
      van.durrer@skadden.com
10   ramon.naguiat@skadden.com
      *Attorneys for Credit Suisse AG, Cayman Islands Branch*
11   *(formerly known as "Credit Suisse, Cayman Islands Branch")*

12                  **UNITED STATES BANKRUPTCY COURT**

13                      **DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. 09-14814-LBR (Jointly Administered) |
| | Chapter 11 |
| THE RHODES COMPANIES, LLC, | |
| aka "Rhodes Homes," et al., | **REPLY OF CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH IN SUPPORT OF MOTION TO COMPEL REIMBURSEMENT OF FEES AND EXPENSES PURSUANT TO CONFIRMATION ORDER AND CASH COLLATERAL ORDER** |
| Debtors.[1] | |

| | | |
|---|---|---|
| Affects: | Date: | June 21, 2010 |
| ■   All Debtors | Time: | 9:30 a.m. |
| ☐   The following Debtor(s) | Judge: | Honorable Linda B. Riegle |

[1] The debtors in these cases (the "Debtors"), along with their case numbers were Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, a Nevada limited partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C&J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, LLC (Case No. 09-14882); Tuscany Golf Country Club (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

SYLVESTER & POLEDNAK, LTD.
7371 Prairie Falcon, Suite 120
Las Vegas, Nevada 89128
Phone (702) 952-5200

1

SYLVESTER & POLEDNAK, LTD.
7371 Prairie Falcon, Suite 120
Las Vegas, Nevada 89128
Phone (702) 952-5200

## REPLY OF CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH IN SUPPORT OF MOTION TO COMPEL REIMBURSEMENT OF FEES AND EXPENSES PURSUANT TO CONFIRMATION ORDER AND CASH COLLATERAL ORDER

Credit Suisse AG, Cayman Islands Branch ("Credit Suisse" or the "First Lien Agent"), formerly known as "Credit Suisse, Cayman Islands Branch," as agent under the first lien Credit Agreement Dated as of November 21, 2005, among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed [Th]erein, as the Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "First Lien Credit Agreement," and the holders of claims thereunder, the "First Lien Lenders"), hereby submits this reply (the "Reply") (1) in support of its Motion to Compel Reimbursement of Fees and Expenses Pursuant to Confirmation Order and Cash Collateral Order (the "Motion"),[2] [Doc. No. 1143] and (2) in response to the objection to the Objection (the "Objection") [Doc. No. 1164] filed by the reorganized debtors in the above-captioned cases (the "Reorganized Debtors") on June 7, 2010. Concurrently herewith and in support hereof, Credit Suisse has filed the declaration of Kyle Elliot (the "Declaration") in reply to specific issues raised in the Objection.[3]

## PRELIMINARY STATEMENT

In the Objection, the Reorganized Debtors, now controlled by the group that formerly consisted of the First Lien Lenders, concede that they have no objection to approximately $36,500 of the fees and expenses demanded to be reimbursed in the Motion, yet fail to provide any excuse or explanation as to why the Reorganized Debtors forced Credit Suisse to file the Motion to seek reimbursement of such undisputed

---

[2] Capitalized terms not defined herein have the meanings ascribed to them in the Motion or, if not defined in the Motion, the meanings set forth in the Objection.

[3] In reviewing this Motion, Credit Suisse requests that this court take judicial notice of its entire file herein. It is well-established that this Court can take judicial notice of matters contained within its own files. Fed. R. Bankr. P. 9017 incorporating Fed. R. Evid. 201; U.S. v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); In re Blumer, 95 B.R. 143, 146 (Bankr. B.A.P. 1988); In re Rogers, 278 B.R. 201, 204 (Bankr. D. Nev. 2002).

amounts.  As of the date of this Reply, the Reorganized Debtors have finally paid such undisputed amounts, but only as a result of the filing of the Motion.

More significantly, in the Objection, the Reorganized Debtors attempt to insert themselves between Credit Suisse and its counsel to challenge the reasonableness of the fees and expenses (collectively, the "Fees," and, the services underlying the Fees, the "Services") performed by Credit Suisse's counsel.  Contrary to the Reorganized Debtors' assertions, however, not only does the First Lien Credit Agreement not accommodate such second-guessing by the Reorganized Debtors, but such Fees and Services were indeed reasonable and appropriate, and consistent with Credit Suisse's fulfillment of its agent role under the First Lien Credit Agreement.

Specifically, as noted in the Declaration, Credit Suisse as agent under the First Lien Credit Agreement has made its determination that the Fees and Services were reasonable and consistent with its agent role.  Once the agent makes that determination, the Reorganized Debtors should not be allowed to go behind it.

Second, as the Court is well aware, the First Lien Steering Committee did not represent the entirety of the First Lien Lenders.[4]  As agent under the First Lien Credit Agreement, Credit Suisse incurred the Fees consistent with fulfilling its duties to all First Lien Lenders, including those that were not members of the First Lien Steering Committee.  In such situations, it is important that the agent ensure that it is acting appropriately in terms of information sharing and acting upon appropriate instructions under the First Lien Credit Agreement at relevant times.

Finally, the Fees are reasonable in the context of the approximately $326 million of first lien debt, which included a swap obligation held by an affiliate of Credit Suisse of approximately $20.2 million.  The amount of fees paid to the Second Lien Agent is clearly not an appropriate benchmark against which to compare the Fees in light of the fractional amount of the approximately $72.8 million in second lien debt relative to the

[4] Although the exact percentage varied from time to time during these cases, the First Lien Steering Committee represented the holders of approximately 75% of the first lien debt during most of the duration of the cases.

3

SYLVESTER & POLEDNAK, LTD.
7371 Prairie Falcon, Suite 120
Las Vegas, Nevada 89128
Phone (702) 952-5200

approximately $326 million of first lien debt and given that the second lien debt was "out of the money."

Accordingly, the Objection should be overruled and the Court should direct the Reorganized Debtors to pay the Fees.

## ARGUMENT

### A.    The First Lien Agent's Involvement Was Appropriate

As noted above, the First Lien Steering Committee did not represent the entirety of the First Lien Lenders. Each of the First Lien Lenders appointed Credit Suisse to act as agent on its behalf and to exercise powers in accordance with the First Lien Credit Agreement. See First Lien Credit Agreement § 8.1(A). Consistent with the First Lien Credit Agreement, Credit Suisse fulfilled its obligations and duties to all First Lien Lenders. The involvement of the First Lien Steering Committee in these cases did not absolve the First Lien Agent from its duties as agent under the First Lien Credit Agreement, including duties to the First Lien Lenders that were not members of the First Lien Steering Committee. Thus, notwithstanding the Reorganized Debtors' attempts to minimize the First Lien Agent's role in these cases, it was important under the circumstances for the First Lien Agent to (and the First Lien Agent did) participate, both substantively and procedurally, in the resolution of these bankruptcy cases.

### B.    The Entries Contain Reasonably Sufficient Detail Under the Circumstances

In the Objection, the Reorganized Debtors assert that certain entries are vague and are insufficient to enable review of the applicable Fees. The applicable time entries were kept consistently with the manner in which time records are kept in similar representations and provided reasonably sufficient detail about the underlying Services in light of confidentiality and other applicable considerations. In fact, the applicable entries are consistent with the level of detail provided in certain entries in the invoices of Akin Gump Strauss Hauer & Feld LLP ("Akin"), which was counsel to the First Lien Steering Committee and is now counsel to the Reorganized Debtors. For example, the Akin invoice attached hereto as Exhibit A includes the following entries:

/ / /

SYLVESTER & POLEDNAK, LTD.
7371 Prairie Falcon, Suite 120
Las Vegas, Nevada 89128
Phone (702) 952-5200

| Date | Akin Professional | Description |
|------|-------------------|-------------|
| 12/1/09 | Philip C. Dublin | Emails re mgt, calls re same, calls re ds, review revised TS, attend to solicitation issues, confer with ML re same |
| 12/1/09 | Meredith A. Lahaie | Confer with P. Dublin re: plan issues; review solicitation materials, plan, ds, and related documents; coordinate with/omni re: same; review cc letter in support of plan; coordinate w/chambers re: entry of order |
| 12/15/09 | Meredith A. Lahaie | Various calls w/bondholders re: plan issues, golf course status, future management. |
| 12/16/09 | Meredith A. Lahaie | Call with bondholders re: plan issues; follow up with H. Jacobson re: same. |
| 12/17/09 | Meredith A. Lahaie | Prepare for hearing; participate in telephonic hearing; various calls with bondholders re: plan issues. |

As reflected by Akin's time entries noted above, the level of detail provided for the Skadden Fees is consistent with the manner in which time records are kept in these types of representations. Accordingly, the Court should ignore the vagueness claims asserted in the Objection and should direct payment of the Fees for the reasons set forth in this Reply.

**C.    Considerations in Evaluating Reasonableness**

Importantly, as reflected in the Declaration, Credit Suisse has determined that the Fees are reasonable, and it is not the province of the Reorganized Debtors to second-guess such determination. Moreover, as discussed in this Reply, the Services were performed consistent with Credit Suisse's role as agent and, in certain instances, at the request and/or invitation of the First Lien Steering Committee. In any case, the Fees were nonetheless reasonable.

In the Objection, the Reorganized Debtors highlight, among others, the following factors that courts have considered in evaluating reasonableness: the time spent on services; the necessity and benefit of such services to the administration of the estates, and whether such services were performed within a reasonable amount of time relative to the complexity, importance, and nature of the applicable problem. See Obj. ¶ 19. Apart from those factors, however, courts have also considered other factors in evaluating the reasonableness of fees and expenses that are more germane to the instant matter.

In the context of requests under 11 U.S.C. § 506(b), courts have considered whether the creditor incurred expenses that fell within the scope of the applicable agreement, whether the creditor took actions that a similar creditor would take, and

5

1  whether the creditor reasonably believed the applicable services were necessary under the

2  circumstances to protect its interests." See, e.g., In re Circle K Corp., 141 B.R. 688, 692

3  (Bankr. D. Ariz. 1992). As discussed below, under any standard, the Fees and Services

4  were both reasonable and appropriate under the circumstances and were consistent with

5  Credit Suisse's role as agent under the First Lien Credit Agreement.

6  **D.    The Fees Were Reasonable and Appropriate**

7        As the Court is aware from the Motion, the Fees were broken down into the

8  following categories: Plan/Disclosure Statement, Mediation, Loan Administration, Loan

9  Litigation, and Fee Matters. Skadden does not keep time records by category in these

10  types of representations, and performed the breakdown of Fees in response to the First

11  Lien Steering Committee's request. Accordingly, the entries may not fall easily into one

12  of the categories, and may fall within multiple categories but were put into one category

13  for purposes of the breakdown.

14        1.    Plan/Disclosure Statement

15        With respect to the Plan/Disclosure Statement category, the First Lien Agent

16  incurred Fees in connection with activities relating to the consensual Plan. The

17  Reorganized Debtors object to certain Fees relating to the First Lien's activities relating

18  to release and indemnification matters, including time spent on preparation of the First

19  Lien Agent's limited response to the Plan (the "Limited Plan Response") which was

20  ultimately withdrawn. See Obj. ¶21. They further assert that the purported vagueness of

21  the applicable entries left them with no basis to evaluate the reasonable of the Fees in this

22  category. See id.

23        Contrary to the Reorganized Debtors' assertions (See id. ¶10.), the First Lien

24  Agent expressly supported confirmation of the Plan (See, e.g., Limited Plan Response, at

25  2.), though it engaged in discussions (as did many parties) with the First Lien Steering

26  Committee regarding certain aspects of the Plan. By the Limited Plan Response, the First

27  Lien Agent sought only a reserve for claims arising from the Debtors' indemnification

28  obligations under the First Lien Credit Agreement. See id. 3. The First Lien Agent did

    not seek to block confirmation of the Plan. See id. The First Lien Agent's activities and

SYLVESTER & POLEDNAK, LTD.
7371 Prairie Falcon, Suite 120
Las Vegas, Nevada 89128
Phone (702) 952-5200

SYLVESTER & POLEDNAK, LTD.
7371 Prairie Falcon, Suite 120
Las Vegas, Nevada 89128
Phone (702) 952-5200

1    the incurrence of related Fees, in connection with release and indemnification matters

2    were consistent with the First Lien Credit Agreement.

3         Under section 9.2(B) of the First Lien Credit Agreement, the Debtors were

4    obligated to indemnify, among others, "each Agent," their respective successors and

5    assigns, and "each Related Party" of the foregoing for costs, losses, claims, damages,

6    liabilities and expenses in connection with certain matters, including the execution,

7    delivery, enforcement or administration of the First Lien Credit Agreement and other

8    loan documents and the consummation of the transactions contemplated thereby, matters

9    relating to the underlying loans, and any actual or prospective claim, litigation,

10   investigation, or proceeding relating to any of the foregoing (collectively, all

11   indemnification obligations owed to the First Lien Agent and related parties, the

12   "Indemnification Obligations").  See First Lien Credit Agreement § 9.2(B).[5]  Section

13   9.2(C) of the First Lien Credit Agreement imposes reimbursement obligations on the

14   First Lien Lenders for amounts not paid by the Debtors on the Indemnification

15   Obligations.  See First Lien Credit Agreement § 9.2(B).  The Indemnification Obligations

16   were therefore importance to both the Debtors and the First Lien Lenders, and the First

17   Lien Agent was forced to incur Fees in attempting to address the Indemnification

18   Obligations and related matters throughout the plan process.

19        All of the Fees in the Plan/Disclosure Statement category, including those relating

20   to the Indemnification Obligations, were reasonable and were incurred in connection with

21   the First Lien Agent's efforts to ensure that the Plan appropriately addressed all of the

22   First Lien Lenders' interests (not just those of the members of the First Lien Steering

23   Committee).  Furthermore, certain of the Fees were incurred in response to requests by

24   the First Lien Steering Committee in the context of negotiations regarding certain aspects

25   of the Plan, including addressing the Indemnification Obligations.

26        In addition, Skadden submits that the entries in this category provide reasonably

27   sufficient detail in light of confidentiality and other applicable considerations, and are

28

---

[5] A copy of the First Lien Credit Agreement is attached as Exhibit F to the declaration filed in support of the Motion.

consistent with the manner in which entries are made in representations of this type.  The First Lien Agent therefore respectfully requests that the Court direct the Reorganized Debtors to pay such Fees.

      2.    <u>Mediation</u>

      With respect to the Mediation category, the First Lien Agent incurred Fees in connection with the Court-ordered mediation, as well as Plan and related matters arising therefrom.  The Reorganized Debtors assert that such Fees were excessive.  <u>See id.</u> ¶ 27.  They claim that the First Lien Agent was not actively involved in negotiating the mediation settlement, noting that the First Lien Agent was not a party thereto, and they express their belief that a significant portion of the Fees in this category may have related to the Indemnification Obligations and related matters.  <u>See id.</u>

      As the Court is aware, the mediation was one component of the process that ultimately resulted in confirmation of the Plan in these cases, and the First Lien Agent was specifically invited to participate in the mediation.  Although the First Lien Agent did not sign the mediation settlement agreement, it participated in the mediation and took actions for the benefit of collective body of First Lien Lenders in its negotiations relating to the mediation itself, as well as the overall plan process).  At the mediation stage and later in the process, the First Lien Agent supported the basic structure of the Plan but continued to negotiate with the First Lien Steering Committee on certain Plan aspects relevant to the Debtors and all First Lien Lenders, including matters relating to the Indemnification Obligations.

      For the same reasons outlined above in the Plan/Disclosure Statement discussion, all of the Fees relating to the mediation, including those relating to the Indemnification Obligations (whether categorized under the Plan/Disclosure Statement category or the Mediation category), were reasonable, appropriate, and consistent with the First Lien Agent's role under the First Lien Credit Agreement.  The First Lien Agent therefore respectfully requests that the Court direct the Reorganized Debtors to pay all of the Fees in the Mediation category.

/ / /

SYLVESTER & POLEDNAK, LTD.
7371 Prairie Falcon, Suite 120
Las Vegas, Nevada 89128
Phone (702) 952-5200

SYLVESTER & POLEDNAK, LTD.
7371 Prairie Falcon, Suite 120
Las Vegas, Nevada 89128
Phone (702) 952-5200

3.    Loan Administration

With respect to the Loan Administration category, the First Lien Agent incurred Fees relating to the agent's duties under the First Lien Credit Agreement, including monitoring and addressing matters that are not covered by the other categories. The Reorganized Debtors assert that these Fees were unreasonable, citing specifically the Fees relating to the proof of claim filed on behalf of the First Lien Lenders and certain activities relating to reviewing and monitoring various filings in these cases. See id. ¶¶ 23-24.

The Fees relating to the proof of claim and related matters were appropriate in light of the analysis and review of the issues and voluminous documents applicable to the 32 Debtors in these cases and, for the reasons discussed below, any comparisons of the First Lien Agent's Fees to the fees of the Second Lien Agent are improper. In addition, the Fees incurred in reviewing and monitoring the filings and matters in these cases were consistent with the First Lien Agent's role under the First Lien Credit Agreement and reflect a reasonable expenditure of time and expense fulfilling such role. Thus, the First Lien agent requests that the Court direct payment of these Fees.

4.    Loan Litigation

With respect to the Loan Litigation category, the First Lien Agent incurred Fees relating to certain litigation and contested matters, as well as prospective litigation matters that could reasonably be expected to potentially arise in these cases. The Reorganized Debtors note that certain of the entries in this category were for services performed after the indefinite adjournment of the Trustee Motion and after entry of the Cash Collateral Order, and that no litigation on the validity of the First Lien Credit Agreement or the obligations incurred thereunder arose during these bankruptcy cases. See id. ¶¶ 25-26. They further assert that the purported vagueness of the applicable entries left them with no basis to evaluate the reasonable of the Fees in this category. See id. ¶ 26.

As the Court is aware, certain matters in these bankruptcy cases have been extremely contentious, including, for example, litigation relating to the Trustee Motion,

9

in which the First Lien Agent was specifically asked to participate. Apart from those disputes that appeared before the Court, there were certain potential disputes lingering and being analyzed behind the scenes. Consistent with the First Lien Credit Agreement, the First Lien Agent analyzed various issues relating to such potential disputes. Although not every potential dispute manifested itself in front of the Court, the Fees relating to such potential disputes were reasonable and appropriate to the First Lien Agent's efforts to protect the interests of the entire First Lien Lender constituency consistent with the First Lien Credit Agreement. Skadden submits that the entries in this category provide reasonably sufficient detail in light of confidentiality and other applicable considerations, and the First Lien Agent requests that the Court direct the Reorganized Debtors to pay these Fees.

     5.    Fee Matters

Fees in the Fee Matters category relate to efforts to collect the Fees from the Debtors/Reorganized Debtors. The Objection does not directly address the Fees in the Fee Matters category. The Fees in this category were reasonably incurred by the First Lien Agent in enforcing its reimbursement rights under the First Lien Credit Agreement, which reimbursement rights the Reorganized Debtors do not dispute. Accordingly, the First Lien Agent requests that the Court direct the Reorganized Debtors to pay all of the Fees in the Fee Matters category.

**E.**    **The Amount of Fees of the Second Lien Agent and Its Professionals Is Irrelevant**

The Reorganized Debtors suggest that the $412,000 in fees and expenses incurred by the Second Lien Agent is somehow an appropriate benchmark against which to consider the Fees requested under the Motion, asserting, among other things, that the Second Lien Agent was more involved in these cases and "did not have the advantage of a steering committee to take a leading role. See id. ¶ 28. This suggested approach is clearly flawed.

Importantly, the second lien debt was approximately only $72.8 million, and the value of the collateral was insufficient to satisfy the higher-priority first lien debt, leaving

SYLVESTER & POLEDNAK, LTD.
7371 Prairie Falcon, Suite 120
Las Vegas, Nevada 89128
Phone (702) 952-5200

no value available for distribution to that junior second lien debt from the available real estate collateral (i.e., the second lien debt was "out of the money"). Given that the Second Lien Lenders would not be entitled to any distributions in a strict application of the priority scheme, the $412,000 paid to the Second Lien Agent is clearly not an appropriate benchmark for reasonableness.

A more appropriate context in which to consider the Fees is relative to the size of the underlying loan deal. Although the First Lien Lender Steering Committee took the lead in these cases, the First Lien Steering Committee did not represent the entirety of the First Lien Lenders. Credit Suisse's actions in these cases, and the attendant fees and expenses of its professionals, were appropriate to Credit Suisse's fulfillment of its role as agent and consistent with its obligations to all of the First Lien Lenders, including those not on the First Lien Steering Committee. Here, the Fees, even when added to the fees and expenses of the First Lien Steering Committee (which on information and belief were over $2.2 million), were reasonable in light of the over $320 million of first lien debt, which is more than four times the amount of the second lien debt. Accordingly, the amount paid to the Second Lien Agent is irrelevant to any consideration of the reasonableness of the Fees.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## CONCLUSION

For the foregoing reasons, Credit Suisse respectfully requests that the Court enter an order (1) granting the Motion, (2) directing the Reorganized Debtors to reimburse the First Lien Agent for all of the Fees covered by the Motion, and (3) granting such other and further relief as the Court deems appropriate.

DATED:  June 14, 2010

By:  _James B. Macrobbie_____

SYLVESTER & POLEDNAK, LTD.
Jeffrey R. Sylvester, Esq. (NV Bar No.  4396)
James B. Macrobbie, Esq. (NV Bar No.  7430)
7371 Prairie Falcon Road, Suite 120
Las Vegas, Nevada 89128
Telephone:  (702) 952-5200
Facsimile:  (702) 952-5205
jeff@sylvesterpolednak.com
james@sylvesterpolednak.com

and

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Van C. Durrer II
Ramon M. Naguiat
300 South Grand Avenue, #3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600
van.durrer@skadden.com
ramon.naguiat@skadden.com