BRETT A. AXELROD (SBN 5859)
ANNE LORADITCH (SBN 8164)
MICAELA RUSTIA (SBN 9676)
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway
Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       aloraditch@foxrothschild.com
       mrustia@foxrothschild.com
*Counsel for James M. Rhodes*

| | Electronically Filed June 17, 2010 |

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Chapter 11 |
| **THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,** | Case No. BK-S-09-14814-LBR (Jointly Administered) |
| **Reorganized Debtors.**[1] | **OPPOSITION TO REORGANIZED DEBTORS' OBJECTION TO JAMES RHODES' PROOF OF CLAIM NO. 814-33 AND NOTICE OF AMENDMENT OF SCHEDULES OF ASSETS AMD LIABILITIES** |
| ☒ Affects all Debtors ☐ Affects the following Debtors | Hearing Date:    June 21, 2010 Hearing Time:   9:30 a.m. Place:             Courtroom 1 |

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20, LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribe Holdings, LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo, Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Gold Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

James M. Rhodes ("Rhodes"), by and through his undersigned counsel, hereby submits this Opposition (the "Opposition") to the Reorganized Debtors' Objection to James Rhodes' Proof of Claim No. 814-33 and Notice of Amendment of Schedule of Assets and Liabilities, which is made and based upon the following points and authorities, the Declaration of James Rhodes (the "Rhodes Declaration"), filed concurrently herewith and in support hereof, and the papers and pleadings on file in the above-captioned chapter 11 bankruptcy cases (the "Chapter 11 Cases").   In support of the Opposition, Rhodes respectfully represents as follows:

## I.  PRELIMINARY STATEMENT

1.      By way of this Opposition, Rhodes is not seeking payment of his Tax Claim (defined below) from the bankruptcy estates of The Rhodes Companies, LLC, and its affiliated companies (collectively, the "Debtors" or "Reorganized Debtors"), the reorganized debtors in the Chapter 11 Cases, but merely the right to setoff such Tax Claim against any claims that may be asserted against him by the Reorganized Debtors, as was contemplated at the court-ordered mediation held in August 2009, which resulted in a settlement agreement that was ultimately incorporated into the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.* [Docket No. 1013] (the "Plan") that was confirmed by order of the Court on or around March 12, 2010.  Rhodes Declaration, ¶ 3.

2.      In or around late 2008 prior to the filing of the Chapter 11 Cases, accusations by Gary Fuchs asserting irregularities in the Debtors' books and records ("Books and Records") led to the commission of an independent review of the Debtors' record-keeping by Main Amundson and Associates, CPAs ("Main Amundson").  Main Amundson's report dated December 31, 2008 (the "Main Amundson Report"), found no material irregularities in the Debtors' record-keeping.  See Rhodes Declaration, ¶ 4, Exhibit 1.  A true and correct copy of the Main Amundson Report is attached to the Rhodes Declaration as Exhibit 1 and is incorporated for all purposes herein by this reference.

3.      Also prior to the Petition Date (defined below), the Books and Records were audited by the independent firm, Deloitte & Touche, pursuant to the terms of the Credit Agreement dated November 12, 2005 (as amended from time to time, the "Credit Facility") among Debtors Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

borrowers (collectively, the "<u>Borrower Entities</u>"), the lenders listed therein (the "<u>First Lien Lenders</u>") and Credit Suisse, Cayman Islands Branch, as administrative agent, collateral agent, and syndication agent (the "<u>First Lien Agent</u>") for the First Lien Lenders. Upon information and belief, discovery will show Deloitte & Touche was aware of, and will confirm that, Debtor's books and records did not contain any material irregularities, including those amounts asserted by Rhodes' Claim (defined below). Rhodes Declaration, ¶ 5.

4.    On April 30, 2009, the Debtors filed bankruptcy schedules and statements [Docket No. 131] (the "<u>Original Schedules</u>"), based upon their respective books and records and signed under penalty of perjury. The Original Schedules show Rhodes having a general unsecured claim in the amount of $9,729,151.00, and such claim is scheduled as undisputed, uncontingent and liquidated. Original Schedules, at page 10 of 29.

5.    On July 2, 2009, the Debtors filed amended bankruptcy schedules and statements [Docket No. 301] (the "<u>Amended Schedules</u>"), based upon their respective books and records and signed under penalty of perjury. The Amended Schedules amended Rhodes' claim to the amount of $9,718,652.41, a difference of $10,498.59, and such amended claim is scheduled as undisputed, uncontingent and liquidated. Amended Schedules, at page 7 of 11.

6.    On July 17, 2009, Rhodes filed a claim (the "<u>Claim</u>") in the Chapter 11 Cases in the aggregate amount of $10,598,000, which was comprised of (i) $9,729,151 (the "<u>Tax Claim</u>"), for the amount Rhodes paid in income taxes for the 2006 tax year (including associated penalties and interest) arising from taxable income attributable to his direct and indirect interests in the Reorganized Debtors, and (ii) $868,849 that Rhodes advanced to Greenway Partners, LLC (the "<u>Greenway Partners Claim</u>"). Rhodes Declaration, ¶ 6.

***Tax Claim***

7.    Prior to the Petition Date, Rhodes declared a dividend from each of the Borrower Entities to Sagebrush Enterprises, Inc. ("<u>Sagebrush</u>"), and ultimately himself, through his ownership and control of the Borrower Entities and Sagebrush, for the 2006 tax year, among others. Such dividends were booked as liabilities for the respective Borrower Entities and, as of the Petition Date, remained accrued but unpaid. Rhodes Declaration, ¶ 7.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

8. Upon information and belief, discovery will show that the Borrower Entities informed the First Lien Agent prior to making any distributions to Rhodes, as permitted for income tax liability by section 6.5(iii)[2] of the Credit Facility, and the Borrower Entities' corporate governing documents.

9. Rhodes, as the former direct and indirect owner of the Borrower Entities and the current owner of the Rhodes Entities (as defined below), is entitled to reimbursement of the Tax Claim, pursuant to the combined operational effect of (i) the Rhodes Entities' and Borrower Entities' governing documents, (ii) the "enabling provision" contained in the Credit Facility to which the Borrower Entities are parties, and (iii) the closely-held nature of the Rhodes corporate structure and the documented course of conduct whereby the corporate entities regularly paid on an annual basis Rhodes' income tax liability attributable to the Borrower Entities and the Rhodes Entities (together with the Borrower Entities and other Debtors, the "Rhodes Corporate Structure"). As such, the Tax Claim should be allowed in its entirety.

**_Greenway Partners Claim_**

10. Upon information and belief, Greenway Partners, LLC, is a Nevada limited liability company that is owned by Mr. Frederick Chin and Mr. James Coyne. See Rhodes Declaration, ¶ 8; Exhibit 2. Entity Details from the Nevada Secretary of State website are attached to the Rhodes Declaration as Exhibit 2 and are incorporated for all purposes herein by this reference. Mr. Chin was employed as Chief Operating Officer by the Debtors pre-petition from Spring 2004 through Spring 2007. Rhodes Declaration, ¶ 8; Exhibit 1 (Main Amundson Report), page 4. Mr. Coyne was employed by the Debtors pre-petition from Spring 2004 through late Fall 2007. Id. As confirmed by the Main Amundson Report, Rhodes personally paid a portion of the salaries owed to Mr. Chin and Mr. Coyne,

---

[2] Section 6.5(iii) of the Credit Facility provides:

The Borrowers and their Subsidiaries may make Restricted Payments to the Parents for the purposes of permitting the direct or indirect holders of Capital Stock of the Parents to pay their respective United States federal, state or local income tax obligations with respect to net income allocated to them from the Borrowers and their Subsidiaries (including, without limitation, with respect to tax obligations relating to Fiscal Years ending December 31, 2004 and December 31, 2005); provided that the amount of such Restricted Payments with respect to any Fiscal Year shall not exceed the Consolidated Net Income of the Borrowers and their Subsidiaries for such Fiscal Year (calculated in accordance with GAAP) multiplied by the Applicable Tax Rate. For purposes of this provision, the net income allocated to the direct or indirect holders of Capital Stock of the Parents from the Borrowers and their Subsidiaries for any Fiscal Year shall be calculated by applying any prior year allocations of losses and credits of the Borrowers and their Subsidiaries not previously used to offset taxes in respect of allocations of net income of the Borrowers and their Subsidiaries.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

as well as to Mr. Chris Stephens who was employed from mid-2006 through mid-2008, in order to avoid conflict in the offices related to the amount of compensation negotiated. Id.[3]  According to the Main Amundson Report, "[t]he 'outside' compensation was comprised of direct payments to Chin, Coyne and Stephens from, and in the amounts of, (a) a personal UBS investment account ($1,825,000); (b) a credit line with First National Bank established specifically for this purpose ($850,000); and (c) a mortgage granted on the 'Spirit Underground' building ($500,000)." Id., Main Amundson Report, pages 4-5.  Rhodes was directed by Mr. Chin and Mr. Coyne to make their respective compensation payments to their company, Greenway Partners.  Rhodes Declaration, ¶ 8.  Additionally, upon information and belief, multiple parcels of land in the Golden Valley, Arizona area were conveyed to Greenway Partners as and for such compensation payments. Id.  Main Amundson concluded that Rhodes is owed $606,589.22 in the aggregate for outside compensation payments made on behalf of the Debtor Entities consisting of $292,910.19 in payments made by Rhodes to Mr. Chin, $305,172.41 in payments made by Rhodes to Mr. Coyne, and $8,506.62 in payments made by Rhodes to Mr. Stephens. Id., Main Amundson Report, at Exhibit F.

### Scheduled Claims

11.    Rhodes objects to the amendment of the Scheduled Claims because such claims are valid and were appropriately scheduled by the respective Debtor entities and to allow for these Amendments at this point in time would unjustly enrich the Debtors.  Rhodes Declaration, ¶ 9.

12.    The amount of $557,302.09 scheduled by Pinnacle Grading, LLC ("Pinnacle Grading") is a valid, existing claim owed to Pinnacle Equipment Rental, LLC ("Pinnacle Equipment") for equipment rental by Pinnacle Grading in connection with construction at the Arizona development. Such equipment rental was reviewed by Main Amundson.  .  Rhodes Declaration, ¶ 10.  As summarized from the Main Amundson Report, Pinnacle Grading was established to perform grading and "dirt work" for developments inside the Credit Facility, outside the Credit Facility, and non-affiliated, non-debtor customers while Pinnacle Equipment was established outside the Credit Facility to acquire and

---

[3]  Additionally, upon information and belief, the First Lien Agent and its consultant, Mr. Richard Dix of Winchester Carlisle Partners, were aware of these payments as of at least July 16, 2009. See Deposition Transcript of Mr. Dix, page 52, lines 17-42, attached to the Rhodes Declaration as Exhibit 3 and incorporated for all purposes herein by this reference.

provide equipment for use at the Pravada development in Arizona due to the high demand for home sites and the pace of construction during 2007. Id., Main Amundson Report, pages 6-7. An operating lease was established at below-market rates between Pinnacle Grading and Pinnacle Equipment essentially to pay for the equipment and its use during construction at Pravada. Id., Main Amundson Report, at page 7 and Exhibit H. The equipment maintenance summary log noted equipment usage of over 50% in excess of normal usage for a standard operating lease with no corresponding increase in lease payments for the extra hours the equipment was used due to the "circumstances surrounding the relationship." Id., Main Amundson Report, page 7. Main Amundson concluded that such arrangement was beneficial to the Credit Facility. Id.

13.    The amount of $167,901.86 scheduled by Heritage Land Company, LLC ("Heritage Land") as owed to Sedora Holdings is a valid, existing claim for litigation expenses related to the defense of Heritage Land, *et. al.* in the case styled *Deutsche Bank Securities, Inc. v. James M. Rhodes, Sagebrush Enterprises, Inc., The Rhodes Companies, LLC, Heritage Land Company, LLC, Rhodes Design and Development Corporation and Rhodes Ranch General Partnership*, case no. 1:06-cv-00413-DC (the "New York Litigation") filed on or around January 2006 in the United States District Court for the Southern District of New York. Rhodes retained the law firm of Stewart Occhipini LLP to defend all of the defendants in the New York Litigation, which ultimately settled.[4]    Rhodes Declaration, ¶ 11. The Scheduled Claim for litigation expenses reflects the allocation owed pursuant to the defense and settlement of the New York Litigation, which upon information and belief was recorded into the Debtors' pre-petition Books and Records. Id. Also, upon information and belief, the Credit Facility acknowledged the existence of the New York Litigation against the collateral assets. Id.

## II.  FACTUAL BACKGROUND

**A.    General Background.**

14.    On March 31, 2009 or April 1, 2009 (the "Petition Date"), the Debtors initiated the Chapter 11 Cases.

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

---

[4] During the pendency of the case, Rhodes was dismissed as a defendant from the New York Litigation.

15.    On April 14, 2009, the court entered a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines [Docket No. 43] setting August 5, 2009, as the deadline for filing non-governmental proofs of claim.

16.    On March 12, 2010, the Court entered its Findings of Fact, Conclusions of Law, and Order Confirming the First Lien Steering Committee's Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, et al. [Docket No. 1053] thereby confirming the Plan, which went effective on April 1, 2010, and has been substantially consummated.  The Plan established a deadline of May 31, 2010, to object to Rhodes' Claim.

17.    The Plan also preserved Rhodes' right to setoff, as previously agreed to in the settlement agreement resulting from the court-ordered mediation held in August 2009.  Plan, at Article VIII, §§ H, J.

18.    On May 27, 2010, the Reorganized Debtors filed their Objection to James Rhodes' Proof of Claim No. 814-33 and Notice of Amendment of Schedules of Assets and Liabilities [Docket No. 1149] (the "Objection"), wherein the Reorganized Debtors – who, under the terms of the substantially consummated Plan, are in reality the First Lien Agent and the First Lien Lenders – requested the (i) disallowance of the Tax Claim, (ii) disallowance the Greenway Partners Claim, and (iii) permission to amend the Scheduled Claims (as defined in the Objection).

**B.    The Tax Claim.**

19.    The Tax Claim seeks payment of an amount equal to the 2006 income tax liability that Rhodes paid as a result of his direct and indirect interests in the Borrower Entities—Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership.  Rhodes Declaration, ¶ 12.  Rhodes controlled and owned interests in the Borrower Entities through three parent companies—Sagebrush (an S-corporation), Rhodes Ranch, LLC (a disregarded entity for federal tax purposes), and Sedora Holdings, LLC (a partnership for federal tax purposes) (collectively, the "Rhodes Entities").  Id.  The Rhodes Entities, including Sagebrush, which has historically been Rhodes' primary operating entity, served as the conduits through which Rhodes received income from the Borrower Entities.  Id.  The Rhodes Entities are non-debtor entities.  Id.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

20.     In 2006, the Borrower Entities were owned as follows: (1) Heritage Land Company, LLC, was taxed as a partnership and was owned by Rhodes Ranch, LLC (5.694%) and Sedora Holdings, LLC (94.306%); (2) Rhodes Ranch General Partnership was taxed as a partnership and was owned by The Rhodes Companies, LLC (94.363%) and Rhodes Ranch, LLC (5.673%); and (3) The Rhodes Companies, LLC, was wholly owned by Sagebrush and, as a single-member limited liability company, was a disregarded entity for tax purposes. Rhodes Declaration, ¶ 13. The Rhodes Entities were wholly owned directly and indirectly by Rhodes. Id.

21.     Because the Borrower Entities and the Rhodes Entities were all pass-through entities for federal tax purposes, all of the taxable income for the 2006 tax year generated by the Borrower Entities and the Rhodes Entities was allocated to Rhodes and was properly reported on Rhodes' personal income tax return. Rhodes Declaration, ¶ 14.

22.     In the 2006 tax year, Heritage Land Company, LLC, produced approximately $24.7 million in net losses, Rhodes Ranch General Partnership generated approximately $59.3 million in net profits, and The Rhodes Companies, LLC generated approximately $25.9 million in net profits. Rhodes Declaration, ¶ 15. The total tax liability generated by the Borrower Entities that flowed through and was allocated to Rhodes during the 2006 tax year was $21,014,159. Id. Sagebrush made estimated tax payments on the income attributable to the Borrower Entities for the 2006 tax year in the amount of $14,040,000. Id. Rhodes' cash resources were used to pay the remaining 2006 tax year liability in the amount $9,729,151. Id. Such payment was booked as a liability owed to Rhodes in the pre-petition Books and Records, as evidenced by the scheduling of the Tax Claim in the Original Schedules as only slightly modified by the Amended Schedules and, in any event, scheduled as undisputed, liquidated and non-contingent. Id.

23.     Rhodes seeks allowance of the Tax Claim as a means to preserve his setoff rights contemplated by and provided for in the confirmed Plan based upon (i) the Rhodes Entities and Borrower Entities governing documents, (ii) the "enabling provision" contained in the Credit Facility to which the Borrower Entities are parties, and (iii) the closely-held nature of the Rhodes Corporate Structure and the documented course of conduct whereby the corporate entities annually paid Rhodes' income tax liability attributable to the Rhodes Corporate Structure, whether by distribution or

1    reimbursement, with the full knowledge and ratification of the First Lien Agent. Rhodes Declaration, ¶

2    16.

3    **C.    Objection to the Proposed Amendment to the Scheduled Claims.**

4    24.    Throughout the proceedings in these Chapter 11 Cases, the First Lien Agent and the

5    First Lien Lenders, now operating as the Reorganized Debtors, had numerous opportunities to review

6    the Books and Records for any wrongdoing and impropriety. Rhodes Declaration, ¶ 17. The First Lien

7    Agent and certain of the First Lien Lenders (together, the "Steering Committee") retained an

8    independent consultant firm, Winchester Carlisle Partners, to pore over the Books and Records in an

9    attempt to shore up their Motion on Shortened Notice of the First Lien Steering Committee for an

10    Order Directing the Appointment of a Trustee Pursuant to 11 U.S.C. § 1104(a) or, in the Alternative,

11    Dismissing the Debtors' Chapter 11 Cases Pursuant to 11 U.S.C. § 1112(b) [Docket No. 68] (the

12    "Trustee Motion"). Id.

13    25.    Upon information and belief, subsequent to Winchester Carlisle Partners' protracted

14    review of the Books and Records, during which time the Steering Committee's consultant had

15    unrestricted access to the Books and Records as wells as the Rhodes Corporate Structure's personnel,

16    on July 6, 2009, counsel for the Debtors deposed a principal of Winchester Carlisle Partners, Richard

17    Dix, who testified at his deposition under oath that the consulting firm could find no fraudulent activity

18    by Rhodes. Rhodes Declaration, ¶ 18; see Dix Deposition Transcript, pages 66-67; lines 24-12; pages

19    80-81; lines 15-16; pages 82-83; lines 22-7; pages 95-97; lines 8-3. True and correct copies of the

20    pertinent pages of the Dix Deposition Transcript are attached to the Rhodes Declaration as **Exhibit 3**

21    and are incorporated for all purposes herein by this reference. Subsequently, the Steering Committee

22    withdrew the Trustee Motion. Id.; see Notice To Vacate Hearing on Motion on Shortened Notice of the

23    First Lien Steering Committee for an Order Directing the Appointment of a Trustee Pursuant to 11

24    U.S.C. §1104(a), or in the Alternative, Dismissing the Debtors' Chapter 11 Cases Pursuant to 11 U.S.C.

25    §1112(b) [Docket No. 136].

26    26.    The Original Schedules and Amended Schedules, signed under penalty of perjury,

27    scheduled the Tax Claim, the Scheduled Pinnacle Claim, the Scheduled Sedora Claim and the

28    Compensation Claim in the same material amount as that asserted by Rhodes, as an undisputed, non-

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1    contingent and liquidated general unsecured claim, which was based upon the Books and Records that

2    were reviewed and verified by the independent non-debtor firms, Main Amundson, Deloitte & Touche

3    and Winchester Carlisle Partners.

4         27.    Only now – post-confirmation, post-effective date, and post-substantial consummation

5    of the Plan – the very parties who attempted to waterboard the Debtors at the outset of these Chapter 11

6    Cases with the Trustee Motion, which was ultimately withdrawn because of a lack of evidentiary

7    support, now seek to further amend the schedules and statements and effectively challenge the validity

8    of the Books and Records claiming to have "reviewed" them further when their own consultant could

9    find no impropriety after a thorough, laborious review during the pendency of the Chapter 11 Cases.

10        28.    Accordingly, Rhodes objects to the Reorganized Debtors' amendment of the Scheduled

11   Claims.  Rhodes Declaration, ¶ 19.

12                          **III.  LEGAL ARGUMENT**

13   **A.    Rhodes Has a Right to Setoff His Tax Claim.**

14        Rhodes had a claim against the Borrower Entities for the Tax Claim prior to the Petition Date

15   and he is should be allowed to setoff such claim against any potential claim the Reorganized Debtors

16   may have against him.  Setoffs in bankruptcy have been "generally favored," and a presumption in

17   favor of their enforcement exists.  <u>Carolco Television Inc. v. National Broadcasting Co. (In re De</u>

18   <u>Laurentiis Entertainment Group)</u>, 963 F.2d 1269, 1277 (9th Cir. 1992) (citing <u>In re Buckenmaier</u>, 127

19   B.R. 233, 237 (B.A.P. 9th Cir. 1991)).  The Ninth Circuit in <u>De Laurentiis</u> explained as part of the

20   reason for enforcement of setoffs in bankruptcy:

21            Moreover, the primacy of setoffs is essential to the equitable treatment of
             creditors.  A setoff is allowed as a defense to a claim brought by the
22           debtor against a creditor.  The creditor can claim only an amount large
             enough to offset its debt; it cannot collect any-thing from the debtor.
23           Absent a setoff, a creditor in NBC's position is in the worst of both
             worlds: it must pay its debt to the debtor in full, but is only entitled to
24           receive a tiny fraction of the money the debtor owes it.  It was to avoid
             this unfairness to creditors that setoffs were allowed in bankruptcy in the
25           first place.

26

27   <u>Id</u>. at 1277.

28   ///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

Although the Plan of the Borrower Entities has been confirmed, the Ninth Circuit has held that the right of setoff cannot be taken away by a reorganization plan. <u>Carolco Television Inc. v. National Broadcasting Co. (In re De Laurentiis Entertainment Group)</u>, 963 F.2d 1269, 1278 (9th Cir. 1992). Indeed, the Ninth Circuit stated:

> An equally venerable part of the bankruptcy laws allows a creditor to "set off" a claim that the debtor owes it against a claim that it owes the debtor, as long as both debts arose before the bankruptcy. Thus, if the debtor and the creditor each owed the other $20, they could set those debts off against each other, rather than attempting to collect from each other. 11 U.S.C. § 553 protects the right to a setoff from the operation of the remainder of the bankruptcy code. 11 U.S.C. § 553 provides that: (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ...

<u>Id.</u>, at 1274. The language in section 553 of the Bankruptcy Code establishes a right to setoffs in bankruptcy that takes precedence over any other provision of the Bankruptcy Code, including a discharge. <u>Id.</u> at 1277-78; <u>see also</u> <u>Buckenmaier</u>, 127 B.R. at 236-37 (also noting that "[m]ost cases hold that a valid setoff claim cannot be defeated by a discharge in bankruptcy."). The Ninth Circuit also explained that "a contrary conclusion essentially would nullify section 553:"

> Section 553 does not by itself create a right of setoff. Instead, it merely allows set-offs offs in bankruptcy to the same extent they are allowed under state law. <u>Buckenmaier</u>, 127 B.R. at 237. If section 1141 were to take precedence over section 553, setoffs would be allowed under Chapter 11 only where they were written into a plan of reorganization. Section 553 would then be largely superfluous, since a setoff could be written into the reorganization plan even without section 553. A reading of section 553 which renders it meaningless should be highly suspect.

<u>Id.</u>, at 1276-77. Where, as here, Rhodes does not seek to collect his claim for the Tax Claim from the Borrower Entities but merely seeks a setoff against any claims the Reorganized Debtors may have against it, the strong policies favoring setoffs entitle Rhodes to assert its setoff against the Reorganized Debtors.

///

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

**B.    Rhodes' Tax Claim Should be Allowed Because Rhodes is a Creditor With a Claim.**

    **1.    Bankruptcy Code "Creditor" and "Claim."**

Bankruptcy Code section 501(a) restricts proof of claim filings in chapter 11 proceedings to creditors and indenture trustees. 11 U.S.C. § 501(a). Bankruptcy Code section 101(10)(A) provides, in pertinent part, that a "creditor" entitled to file a proof of claim pursuant to section 501(a) is an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor. 11 U.S.C. § 101(10)(A).

Bankruptcy Code Section 101(5) defines a "claim" as a:

      (A)    right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, or unsecured; or

      (B)    right to an equitable remedy for breach of performance if such breach gives rise to right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, secured, or unsecured.

11 U.S.C. §101(5). Courts have consistently reiterated that Congress intended the term "claim" to have the broadest possible meaning under the Bankruptcy Code. See F.C.C. v. Nextwave Personal Commc'ns Inc., 537 U.S. 293, 302 (2003) (citing Johnson v. Home State Bank, 501 U.S. 78, 83 (1991); See Sherman v. Securities and Exch. Comm'n (In re Sherman), 491 F.3d 948, 958 (9th Cir. 2007). However, courts have refined "claim" under the Bankruptcy Code to mean a right to payment arising from an obligation owed by the debtor, which the claimant may enforce under state or federal law. See Nextwave Personal Commc'ns Inc., 537 U.S. 294. Creditor entitlements in bankruptcy are generally determined by rights to payment pursuant to the underlying state law. See Travelers Cas. & Sur. Co. of Am. V. Pac. Gas $ Elec. Co., 549 U.S. 443, 450-51 (2007); Pany v. First Alliance Mortgage Co. (In re First Alliance Mortgage Co.), 269 B.R. 428,435 (Bankr. C.D. 2001) ("Whether a right to payment exists in a bankruptcy case is generally determined by reference to state law.").

    **2.    Rhodes' Income Attributable to Pass-Through Entities and Disregarded Entity.**

The defining characteristic of "pass-though" entities—partnerships, limited liability companies and s-corporations[5]—such as the Borrower Entities, Sagebrush and Sedora Holdings, LLC, is that

---

[5] Corporations and limited liability companies may elect S-Corporation status pursuant to Subchapter S of the Internal Revenue Code. Entities that make a Subchapter S election receive "pass-through" treatment for federal tax purposes, but are (footnote continued)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

income and loss generated by the pass-through entities flows to the partners, members or shareholders. See 26 U.S.C § 701.  While pass-through entities must satisfy filing obligations, the pass-through entity's constituents are ultimately responsible for the tax obligation. Id.  Importantly, partners, members and s-corporation shareholders must pay taxes when the entity allocates income without regard to whether income has been distributed.  See 26 C.F.R. § 1.702-1(a); Vecchio v. Comm'r, 103 T.C. 170, 185 (1994) ("Each partner is taxed on his distributive share of the partnership income without regard to whether the amount is actually distributed to him.").   The Internal Revenue Code treats single-member limited liability companies as disregarded entities, which means that the LLC is ignored for tax purposes and the single member must report and pay the income taxes attributable to the LLC.[6]

Nevertheless, while federal law governs the tax systems of partnerships, limited liability companies, and s-corporations, state laws govern the rights and responsibilities of the partners and members regarding their respective entities.  Partnerships and limited liability companies are creatures of state law, and as such, the rights and obligations of partners and members are determined by reference to state statutes or the provisions of the partnership or limited liability companies governing documents.  The Nevada Revised Statutes ("NRS") governing partnerships and limited liability companies neither explicitly permit nor prohibit partners or members from demanding distributions. See Nev. Rev. Stat. Chapters 86 and 87 (2010).  As such, Nevada limited liability companies and partnerships are free to make distributions to reimburse their partners and members for income taxes attributable to their interests in the entities and are also free to provide for such distributions in their governing documents.  Nev. Rev. Stat. § 86.341 (2010) ("A limited-liability company may, from time to time, divide the profits of its business and distribute them to its members … upon the basis stipulated in the operating agreement."); See Nev. Rev. Stat. § 87.4316 (2010) ("[R]elations among the partners and between the partners and the partnership are governed by the partnership agreement.").

The Reorganized Debtors cite Five Star Concrete, L.L. C. v. Klink, Inc., 693 N.E. 583, 586 (Ind. Ct. App. 1998), an Indiana case, to support the premise that members do not have an inherent

---

subject to different requirements than those entities taxed as partnerships.  Sagebrush Enterprises, Inc, is a pass-though entity.

[6] See 26 C.F.R. § 301.7702-3(a).

right to demand distributions from the limited liability companies of which they are members unless state statutes or the governing documents provide for such rights. The member in <u>Five Star Concrete</u> was a withdrawing member seeking reimbursement for taxes paid on income allocated to him by the LLC in the year of the members withdrawal. The LLC in <u>Five Star Concrete</u> (i) was not a closely-held LLC, (ii) did not historically make distributions to its members to account for income taxes attributable to their interests in the LLC, and (iii) the former member was demanding distributions after he withdrew from the Company and surrendered control over the operations of the company. Conversely, Rhodes owned, directly or indirectly, 100% of the Borrower Entities and the Rhodes Entities and, as discussed below, historically was reimbursed by the Borrower Entities and Rhodes Entities for income taxes attributable to his interests in the Borrower Entities and Rhodes Entities.

> **3.      Rhodes is Entitled to the Tax Claim Because the Course of Conduct Between the Rhodes Entities and Borrower Entities Establishes Rhodes' Equitable Right to Payment Constituting a Claim.**
>
> > **a.      Demonstrated History of Reimbursement of Income Taxes by Borrower Entities and Rhodes Entities.**

As discussed above, the income and losses generated by the Rhodes Corporate Structure passed-through to Rhodes directly through his 100% ownership interest in Sagebrush and also through his 100% indirect interest in Sedora Holdings, LLC. Rhodes Declaration, ¶ 20. Over several tax years prior to the Petition Date, Rhodes and the Rhodes Corporate Structure established a course of conduct whereby Sagebrush calculated the income and losses allocated to Rhodes, pursuant to his direct and indirect ownership interests in the Rhodes Corporate Structure, and subsequently made payments to the IRS on behalf of Rhodes in satisfaction of Rhodes' federal income tax liability attributable to his ownership of the Rhodes Corporate Structure. <u>Id</u>. Such payments made on behalf of Rhodes were appropriately accounted for in the Books and Records, which practice has been reviewed and verified by numerous independent audits. <u>Id</u>. This course of conduct is not peculiar to the Rhodes Corporate Structure. Such practice of distributions is common and virtually standard practice among closely held corporations as a means of preserving cash reserves for other uses and, moreover, does not violate Nevada law. <u>See</u> Nev. Rev. Stat. §§ 86.341, 86.343, 87.4316, 87.4333.

///

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1    In the 2006 tax year, estimated income tax payments on income attributable to the Rhodes

2    Corporate Structure, which amounted to approximately $14,040,000, were paid by Sagebrush to the

3    IRS on behalf of Rhodes.  Rhodes Declaration, ¶ 21.  In or around late 2007, upon completion of tax

4    returns for the Rhodes Corporate Structure for that tax year, it became clear that the total tax liability

5    for the 2006 tax year was in excess of the estimated tax payments previously made by Sagebrush.  Id.

6    Thereafter, approximately $9.7 million of Rhodes' cash resources were used to satisfy the remaining

7    tax liability for the 2006 tax year, and such payment was accounted for in the Books and Records as a

8    "dividend payable" to Rhodes.  Id.  Such liability to Rhodes remained accrued and unpaid as of the

9    Petition Date.  Id.  Accordingly, Rhodes is informed and believes that the Books and Records

10   demonstrate this course of conduct among Rhodes and the Rhodes Corporate Structure[7] and that the

11   existence of Rhodes' Tax Claim has previously been verified by independent auditors, including Main

12   Amundson, Deloitte & Touche, and Winchester Carlisle Partners.

13   **b.    Operating Documents Permit and Mandate Distributions to Rhodes for
14         Income Tax Liability.**

15   The governing documents for the entities included in the Rhodes Corporate Structure permit or

16   even mandate distributions to the partners or members to account for income tax distributions.  Rhodes

17   Declaration, ¶ 22.  Section 2.4.2, entitled "Distributions with Respect to Taxes," of the Sedora

18   Holdings, LLC Operating Agreement, effective during the 2006 tax year, mandates that Sedora

19   Holdings make priority distributions to the partners[8] in amounts sufficient for the partners to pay their

20   annual tax liabilities attributable to their interest in the Company.[9]  Id.  The governing documents for

21   _____

[7] As of the date of filing this Opposition, Rhodes could not immediately locate the information from the books and
22   records of the Borrower Entities to provide the Court with copies of such information.  However, Rhodes anticipates having
such information available, via the Document Access Agreement, prior to any evidentiary hearing held on the Reorganized
Debtors' Objection.

23   [8] During the 2006 tax year, the "Partners" of Sedora Holdings, LLC, included the Michael J. Rhodes Investment Trust,
the Ryan Rocky Rhodes Investment Trust and Sagebrush Enterprises, Inc.  See Sedora Holdings, LLC Operating Agreement,
24   Ex. 2.1.

25   [9] Section 2.4.2 of the Sedora Holdings, LLC Operating Agreement provides, in pertinent part, as follows:
"Notwithstanding any other provision of this Agreement, and *before the Company has any obligations make any of the*
26   *other distributions provided for in this Section 2.4* or to pay Debt except as provided in Section 2.4.1, the Company shall
have made distributions to each of the Partners for each prior Company year preceding the year in which any such payment
or other Distributions are contemplated, in an amount equal to [*tax formula*] […], the Distributions provided for by this
27   Section 2.4.2 shall be mandatory and shall be made at a time and in a manner intended to permit the respective Partners (or
their ultimate beneficial owners) to apply such Distributions to the Payment of the annual tax liabilities of the Partners
28   resulting from the Partner holding an interest in the Company."

VG1 42230v5 06/17/10                                  15

the Borrower Entities generally allow for distributions to partners.[10] Id.

        **c.**      **The "Enabling Provision" Contained in the Credit Facility Between the Borrower Entities and Lenders Acknowledges and Ratifies the Course of Conduct for Reimbursement of Income Taxes Among Rhodes and the Rhodes Corporate Structure.**

The Credit Facility provides, in pertinent part:

> The Borrowers and their Subsidiaries may make Restricted Payments to the Parents for the purposes of permitting the direct or indirect holders of Capital Stock of the Parents[11] to pay their respective United States federal, state or local income tax obligations with respect to net income allocated to them from the Borrowers and their Subsidiaries (including, without limitation, with respect to tax obligations relating to the Fiscal Year ending December 31, 2004 and December 31, 2005).

This "enabling provision" acknowledges the practical realities of managing a large closely-held business enterprise whereby operating entities pay the income tax liabilities on behalf of their ultimate owners, as attributable to the entities. The enabling provision of the Credit Agreement implicitly ratifies the course of conduct among Rhodes and the Rhodes Corporate Structure whereby the Borrower Entities regularly made payments on behalf of, or distributed income to, their corporate parents for the purpose of satisfying the taxes on income allocated to the parents and Rhodes. Further, the Credit Agreement's enabling provision acknowledges the Borrower Entities' right to reimburse the Parents for tax liabilities arising from periods both prior to *and following* the date of the Credit Agreement, which demonstrates the Lenders were aware of and ratified the Rhodes Corporate Structure policy and course of conduct regarding payment and/or reimbursement of income taxes.

The tax payment history between Rhodes and the Rhodes Corporate Structure, the permissive and mandatory language regarding distributions to owners of the Rhodes Corporate Structure and the language in the enabling provision of the Credit Agreement acknowledge and ratify the course of

---

[10] Section 5.1 of the Heritage Land Company Operating Agreement provides '…the Manager may, in its sole discretion, distribute from time to time the Net Cash Flow to the members pro rata in accordance with their respective Partnership Interests" and Section 5.3 provides "All amounts withheld pursuant to the Code or any provisions or state or local tax law with respect to any payment or distribution to the Members from the Company shall be treated as amounts distributed to the relevant Member for all purposes of this Agreement." Paragraph 5 of the Rhodes Ranch General Partnership provides "…each partner may make withdrawals from time to time to the extent permitted by the partnership." Section 5.1 of the Rhodes Ranch, LLC Operating Agreement provides "Distributions of available cash flow shall be made, subject to Section 86.343 of the Act, in such amounts and at such times as the Member shall determine in its sole discretion."

[11] The First Lien Credit Agreement defines "Parents" as follows: "(a) Sagebrush, the sole member of Rhodes Companies, (b) Sedora, the Managing Member of Heritage Land, and (c) Rhodes Ranch, LLC, a member of Heritage Land and a partner of Rhodes GP."

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

conduct between Rhodes and the Rhodes Corporate Structure whereby the ultimate owner of the Rhodes Corporate Structure (Rhodes) was reimbursed for the income tax liability arising from his interests in the Borrower Entities and the Rhodes Entities.  Rhodes relied upon this well-documented course of conduct between himself and the Rhodes Corporate Structure and anticipated being reimbursed from the Rhodes Corporate Structure when Rhodes satisfied the remaining 2006 tax year federal income tax liabilities with his personal cash resources.  Rhodes Declaration, ¶ 23.  Accordingly, Rhodes has an equitable right to payment, which is within the scope of a claim as defined by Bankruptcy Code Section 101(10), and the Court should overrule the Reorganized Debtors' objection to Rhodes' Tax Claim.  As noted above, Rhodes is not seeking payment of his Tax Claim from the Reorganized Debtors' estate but merely the right to setoff such Tax Claim against any claims that may be asserted against him by the Reorganized Debtors.

**C.      The Reorganized Debtors Should Not be Permitted to Amend the Schedule of Claims.**

Despite numerous opportunities during these Chapter 11 Cases and unrestricted access afforded their consultant, the First Lien Agent and the First Lien Lenders, now operating as the Reorganized Debtors, have been unable to find any material irregularities in the Books and Records to date.  Only now that they are in full control of the Chapter 11 Cases, after creditors have voted on the Plan in reliance on the Amended Schedules, do these same parties seek to invalidate the basis upon which the Original Schedules and Amended Schedules scheduled an undisputed, non-contingent and liquidated general unsecured claim owed to Rhodes in the material amount of the Tax Claim asserted by him and the other Scheduled Claims that are the subject of the Objection.

Statements made in bankruptcy schedules are executed under penalty of perjury and, when offered against the debtor, "are eligible for treatment as [evidentiary] admissions." <u>Suter v. Goedert</u>, 396 B.R. 535, 541 -542 (D. Nev. 2008) citing <u>In re Bohrer</u>, 266 B.R. 200, 201 (Bankr. C.D. Cal. 2001); Fed. R. Evid. 801(d).  Judicial admissions are conclusively binding on the party who made them.  <u>Am. Title Ins. Co. v. Lacelaw Corp.</u>, 861 F.2d 224, 226 (9th Cir. 1988) (quoting <u>In re Fordson Eng'g Corp.</u>, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982)).  Even when schedules are amended, the old schedules are subject to consideration by the court as evidentiary admissions.  <u>In re Kaskel</u>, 269 B.R. 709, 715 (Bankr. D. Idaho 2001); <u>Bohrer</u>, 266 B.R. at 201.  To permit the disallowance of the Tax Claim or an

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

amendment of the Scheduled Claims at this point in the Chapter 11 Cases – post-confirmation, post-effective date and post-substantial consummation of the Plan, which provides for the preservation of Rhodes' setoff rights – would be to work an injustice upon the very bankruptcy process.  The Court should also consider the Original Schedules and Amended Schedules as evidentiary admissions of the Reorganized Debtors in support of the validity of the Tax Claim and Scheduled Claims and, consequently, should allow the Tax Claim in accordance with the Plan provisions that preserve Rhodes' setoff rights as well as disallow the amendment of the Scheduled Claims.

Moreover, to allow the Reorganized Debtors to amend their schedules would unjustly enrich them at the expense of scheduled creditors.  Under Nevada law, "[u]njust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." Unionamerica Mortgage and Equity Trust v. McDonald, 97 Nev. 210, 626 P.2d 1272, 1273 (1981). "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." Nev. Indus. Dev., Inc. v. Benedetti, 103 Nev. 360, 741 P.2d 802, 804 n 2 (1987); see Coury v. Robison, 115 Nev. 84, 976 P.2d 518, 521 (1999).  In Nevada, "the terms 'restitution' and 'unjust enrichment' are the modern counterparts of the doctrine of quasi-contract." Unionamerica Mortgage, 626 P.2d at 1273. When a defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, a contract is implied under Nevada law once the plaintiff establishes three essential elements: " '[A] benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.'" Leasepartners Corp. v. Robert L. Brooks Trust, 113 Nev. 747, 942 P.2d 182, 187 (1997) (quoting Unionamerica Mortgage, 626 P.2d at 1273).  Unjust enrichment generally is unavailable when a valid, express contract exists that governs the subject matter of the dispute. Id.

The Reorganized Debtors have directly received benefit from the Greenway Partners Claim, the Pinnacle Equipment Claim and the Sedora Claim to allow them to maintain these benefits and not "pay for them" falls squarely within the case law cited above.

///

1

2

3

4

5

6

7

8

9

10

11

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.  CONCLUSION

WHEREFORE, based on the aforementioned reasons, Rhodes respectfully requests that the Court overrule the Objection and enter an order (i) allowing Rhodes' Tax Claim in the amount of $9,729,151,  and (ii) disallowing the Reorganized Debtors' amendments to the Scheduled Claims. Alternatively, Rhodes respectfully requests that the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") governing adversary proceedings be made applicable to this contested matter, pursuant to Bankruptcy Rule 9014(c), and that the Court set the matter over for an evidentiary hearing no earlier than 90 days from the hearing date on the Objection to allow the parties an appropriate opportunity to conduct discovery prior to such evidentiary hearing.

DATED this 17th day of June 2010.

**FOX ROTHSCHILD LLP**

By    *s/ Brett A. Axelrod*
    BRETT A. AXELROD (SBN 5859)
    ANNE M. LORADITCH (SBN 8164)
    MICAELA RUSTIA (SBN 9676)
    3800 Howard Hughes Parkway, Suite 500
    Las Vegas, Nevada 89169
    Telephone: (702) 262-6899

*Counsel for James M. Rhodes*