BRETT A. AXELROD (SBN 5859)
ANNE LORADITCH (SBN 8164)
MICAELA RUSTIA (SBN 9676)
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
         aloraditch@foxrothschild.com
         mrustia@foxrothschild.com
*Counsel for James M. Rhodes*

Electronically Filed June 17, 2010

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Chapter 11 |
| **THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,** | Case No. BK-S-09-14814-LBR (Jointly Administered) |
| **Reorganized Debtors.**[1] | **DECLARATION OF JAMES M. RHODES IN SUPPORT OF OPPOSITION TO REORGANIZED DEBTORS' OBJECTION TO JAMES RHODES' PROOF OF CLAIM NO. 814-33 AND NOTICE OF AMENDMENT OF SCHEDULES OF ASSETS AMD LIABILITIES** |
| ☒ Affects all Debtors<br>☐ Affects the following Debtors | Hearing Date: June 21, 2010<br>Hearing Time: 9:30 a.m.<br>Place:         Courtroom 1 |

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20, LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribe Holdings, LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo, Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Gold Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

1

VG1 42699v1 06/17/10

I, JAMES M. RHODES, being duly sworn, hereby deposes and declares under penalty of perjury:

1. I am over the age of 18, am mentally competent, and if called upon to testify as to the statements made herein, could and would do so.

2. I make this Declaration in support of the Opposition (the "Opposition") to the Reorganized Debtors' Objection to James Rhodes' Proof of Claim No. 814-33 and Notice of Amendment of Schedule of Assets and Liabilities from my personal knowledge and my prior review of the Debtors' books and records, except where such statements are noted as being made upon information and belief.

3. Rhodes is not seeking payment of his Tax Claim (defined below) from the bankruptcy estates of The Rhodes Companies, LLC, and its affiliated companies (collectively, the "Debtors" or "Reorganized Debtors"), the reorganized debtors in the Chapter 11 Cases, but merely the right to setoff such Tax Claim against any claims that may be asserted against him by the Reorganized Debtors, as was contemplated at the court-ordered mediation held in August 2009, which resulted in a settlement agreement that was ultimately incorporated into the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.* [Docket No. 1013] (the "Plan") that was confirmed by order of the Court on or around March 12, 2010.

4. In or around late 2008 prior to the filing of the Chapter 11 Cases, accusations by Gary Fuchs asserting irregularities in the Debtors' pre-petition books and records ("Books and Records") led to the commission of an independent review of the Debtors' record-keeping by Main Amundson and Associates, CPAs ("Main Amundson"). Main Amundson's report dated December 31, 2008 (the "Main Amundson Report"), found no material irregularities in the Debtors' record-keeping. A true and correct copy of the Main Amundson Report is attached hereto as **Exhibit 1** and is incorporated for all purposes herein by this reference.

5. Also prior to the Petition Date (defined below), the Books and Records were audited by the independent firm, Deloitte & Touche, pursuant to the terms of the Credit Agreement dated November 12, 2005 (as amended from time to time, the "Credit Facility") among Debtors Heritage

1  Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as
2  borrowers (collectively, the "Borrower Entities"), the lenders listed therein (the "First Lien Lenders")
3  and Credit Suisse, Cayman Islands Branch, as administrative agent, collateral agent, and syndication
4  agent (the "First Lien Agent") for the First Lien Lenders.  I am informed and believe that discovery
5  will show Deloitte & Touche was aware of, and will confirm that, Debtor's books and records did not
6  contain any material irregularities, including those amounts asserted by Rhodes' Claim (defined
7  below).

8        6.      On July 17, 2009, I filed a claim (the "Claim") in the Chapter 11 Cases in the aggregate
9  amount of $10,598,000, which was comprised of (i) $9,729,151 (the "Tax Claim"), for the amount I
10 paid in income taxes for the 2006 tax year (including associated penalties and interest) arising from
11 taxable income attributable to my direct and indirect interests in the Reorganized Debtors, and (ii)
12 $868,849 that I advanced to Greenway Partners, LLC (the "Greenway Partners Claim").

13       7.      Prior to the Petition Date, I declared a dividend from each of the Borrower Entities to
14 Sagebrush Enterprises, Inc. ("Sagebrush"), and ultimately, through my ownership and control of the
15 Borrower Entities and Sagebrush, for the 2006 tax year, among others.  Such dividends were booked as
16 liabilities for the respective Borrower Entities and, as of the Petition Date, remained accrued but
17 unpaid.

18       8.      Upon information and belief, Greenway Partners, LLC, is a Nevada limited liability
19 company that is owned by Mr. Frederick Chin and Mr. James Coyne.  See Entity Details from Nevada
20 Secretary of State website attached hereto as **Exhibit 2** and incorporated for all purposes herein by this
21 reference.  Mr. Chin was employed as Chief Operating Officer by the Debtors pre-petition from Spring
22 2004 through Spring 2007.  Main Amundson Report, page 4.  Mr. Coyne was employed by the Debtors
23 pre-petition from Spring 2004 through late Fall 2007.  Id.  As confirmed by the Main Amundson
24 Report, I personally paid a portion of the salaries owed to Mr. Chin and Mr. Coyne, as well as to Mr.
25 Chris Stephens who was employed from mid-2006 through mid-2008, in order to avoid conflict in the

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

offices related to the amount of compensation negotiated. Id.[2] According to the Main Amundson Report, "[t]he 'outside' compensation was comprised of direct payments to Chin, Coyne and Stephens from, and in the amounts of, (a) a personal UBS investment account ($1,825,000); (b) a credit line with First National Bank established specifically for this purpose ($850,000); and (c) a mortgage granted on the 'Spirit Underground' building ($500,000)." Id., pages 4-5. I was directed by Mr. Chin and Mr. Coyne to make their respective compensation payments to their company, Greenway Partners. Additionally, upon information and belief, multiple parcels of land in the Golden Valley, Arizona area were conveyed to Greenway Partners as and for such compensation payments. Id. Main Amundson concluded that I am owed $606,589.22 in the aggregate for outside compensation payments made on behalf of the Debtor Entities consisting of $292,910.19 in payments made by me to Mr. Chin, $305,172.41 in payments made by me to Mr. Coyne, and $8,506.62 in payments made by me to Mr. Stephens. Id., at Exhibit F.

9.  I object to the amendment of the Scheduled Claims because such claims are valid and were appropriately scheduled by the respective Debtor entities and to allow the Amendments at this point in time would unjustly enrich the Debtors.

10.  The amount of $557,302.09 scheduled by Pinnacle Grading, LLC ("Pinnacle Grading") is a valid, existing claim owed to Pinnacle Equipment Rental, LLC ("Pinnacle Equipment") for equipment rental by Pinnacle Grading in connection with construction at the Arizona development. Such equipment rental was reviewed by Main Amundson. As summarized from the Main Amundson Report, Pinnacle Grading was established to perform grading and "dirt work" for developments inside the Credit Facility, outside the Credit Facility, and non-affiliated, non-debtor customers while Pinnacle Equipment was established outside the Credit Facility to acquire and provide equipment for use at the Pravada development in Arizona due to the high demand for home sites and the pace of construction during 2007. Main Amundson Report, pages 6-7. An operating lease was established at below-market

---

[2] Additionally, I am informed and believe that the First Lien Agent and its consultant, Mr. Richard Dix of Winchester Carlisle Partners, were aware of these payments as of at least July 16, 2009. See Deposition Transcript of Mr. Dix, page 52, lines 17-42, attached hereto as **Exhibit 3** and incorporated for all purposes herein by this reference.

rates between Pinnacle Grading and Pinnacle Equipment essentially to pay for the equipment and its use during construction at Pravada. Id., at page 7 and Exhibit H. The equipment maintenance summary log noted equipment usage of over 50% in excess of normal usage for a standard operating lease with no corresponding increase in lease payments for the extra hours the equipment was used due to the "circumstances surrounding the relationship." Id., page 7. Main Amundson concluded that such arrangement was beneficial to the Credit Facility. Id.

11. The amount of $167,901.86 scheduled by Heritage Land Company, LLC ("Heritage Land") as owed to Sedora Holdings is a valid, existing claim for litigation expenses related to the defense of Heritage Land, *et. al*. in the case styled *Deutsche Bank Securities, Inc. v. James M. Rhodes, Sagebrush Enterprises, Inc., The Rhodes Companies, LLC, Heritage Land Company, LLC, Rhodes Design and Development Corporation and Rhodes Ranch General Partnership*, case no. 1:06-cv-00413-DC (the "New York Litigation") filed on or around January 2006 in the United States District Court for the Southern District of New York. I retained the law firm of Stewart Occhipini LLP to defend all of the defendants in the New York Litigation, which ultimately settled.[3] The Scheduled Claim for litigation expenses reflects the allocation owed pursuant to the defense and settlement of the New York Litigation, which upon information and belief was recorded into the Debtors' pre-petition Books and Records. Also, upon information and belief, the Credit Facility acknowledged the existence of the New York Litigation against the collateral assets.

12. The Tax Claim seeks payment of an amount equal to the 2006 income tax liability that I paid as a result of my direct and indirect interests in the Borrower Entities—Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership. I controlled and owned interests in the Borrower Entities through three parent companies—Sagebrush (an S-corporation), Rhodes Ranch, LLC (a disregarded entity for federal tax purposes), and Sedora Holdings, LLC (a partnership for federal tax purposes) (collectively, the "Rhodes Entities"). The Rhodes Entities, including Sagebrush, which has historically been my primary operating entity, served as the conduits

---

[3] During the pendency of the case, Rhodes was dismissed as a defendant from the New York Litigation.

VG1 42699v1 06/17/10

5

through which I received income from the Borrower Entities. The Rhodes Entities are non-debtor entities.

13. In 2006, the Borrower Entities were owned as follows: (1) Heritage Land Company, LLC, was taxed as a partnership and was owned by Rhodes Ranch, LLC (5.694%) and Sedora Holdings, LLC (94.306%); (2) Rhodes Ranch General Partnership was taxed as a partnership and was owned by The Rhodes Companies, LLC (94.363%) and Rhodes Ranch, LLC (5.673%); and (3) The Rhodes Companies, LLC, was wholly owned by Sagebrush and, as a single-member limited liability company, was a disregarded entity for tax purposes. The Rhodes Entities were wholly owned directly and indirectly by me.

14. Because the Borrower Entities and the Rhodes Entities were all pass-through entities for federal tax purposes, all of the taxable income for the 2006 tax year generated by the Borrower Entities and the Rhodes Entities was allocated to me and was properly reported on my personal income tax return.

15. In the 2006 tax year, Heritage Land Company, LLC, produced approximately $24.7 million in net losses, Rhodes Ranch General Partnership generated approximately $59.3 million in net profits, and The Rhodes Companies, LLC generated approximately $25.9 million in net profits. The total tax liability generated by the Borrower Entities that flowed through and was allocated to me during the 2006 tax year was $21,014,159. Sagebrush made estimated tax payments on the income attributable to the Borrower Entities for the 2006 tax year in the amount of $14,040,000. My cash resources were used to pay the remaining 2006 tax year liability in the amount $9,729,151. Such payment was booked as a liability owed to me in the pre-petition Books and Records, as evidenced by the scheduling of the Tax Claim in the Original Schedules as only slightly modified by the Amended Schedules and, in any event, scheduled as undisputed, liquidated and non-contingent.

16. I seek allowance of the Tax Claim as a means to preserve my setoff rights contemplated by and provided for in the confirmed Plan based upon (i) the Rhodes Entities and Borrower Entities governing documents, (ii) the "enabling provision" contained in the Credit Facility to which the Borrower Entities are parties, and (iii) the closely-held nature of the Rhodes Corporate Structure and

VG1 42699v1 06/17/10

the documented course of conduct whereby the corporate entities annually paid Rhodes' income tax liability attributable to the Rhodes Corporate Structure, whether by distribution or reimbursement, with the full knowledge and ratification of the First Lien Agent.

17.   Throughout the proceedings in the Chapter 11 Cases, the First Lien Agent and the First Lien Lenders, now operating as the Reorganized Debtors, had numerous opportunities to review the Books and Records for any wrongdoing and impropriety. The First Lien Agent and certain of the First Lien Lenders (together, the "<u>Steering Committee</u>") retained an independent consultant firm, Winchester Carlisle Partners, to pore over the Books and Records in an attempt to shore up their Motion on Shortened Notice of the First Lien Steering Committee for an Order Directing the Appointment of a Trustee Pursuant to 11 U.S.C. § 1104(a) or, in the Alternative, Dismissing the Debtors' Chapter 11 Cases Pursuant to 11 U.S.C. § 1112(b) [Docket No. 68] (the "<u>Trustee Motion</u>").

18.   I am informed and believe that, subsequent to Winchester Carlisle Partners' protracted review of the Books and Records, during which time the Steering Committee's consultant had unrestricted access to the Books and Records as wells as the Rhodes Corporate Structure's personnel, on July 6, 2009, counsel for the Debtors deposed a principal of Winchester Carlisle Partners, Richard Dix, who testified at his deposition under oath that the consulting firm could find no fraudulent activity by me. <u>See</u> Dix Deposition Transcript, pages 66-67; lines 24-12; pages 80-81; lines 15-16; pages 82-83; lines 22-7; pages 95-97; lines 8-3. True and correct copies of the pertinent pages of the Dix Deposition Transcript are attached hereto as **Exhibit 3** and are incorporated for all purposes herein by this reference. Subsequently, the Steering Committee withdrew the Trustee Motion. <u>See</u> Notice To Vacate Hearing on Motion on Shortened Notice of the First Lien Steering Committee for an Order Directing the Appointment of a Trustee Pursuant to 11 U.S.C. §1104(a), or in the Alternative, Dismissing the Debtors' Chapter 11 Cases Pursuant to 11 U.S.C. §1112(b) [Docket No. 136].

19.   Accordingly, I object to the Reorganized Debtors' amendment of the Scheduled Claims.

20.   As discussed above, the income and losses generated by the Rhodes Corporate Structure passed-through to me directly through his 100% ownership interest in Sagebrush and also through my 100% indirect interest in Sedora Holdings, LLC. Over several tax years prior to the Petition Date, I

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

and the Rhodes Corporate Structure established a course of conduct whereby Sagebrush calculated the income and losses allocated to me, pursuant to my direct and indirect ownership interests in the Rhodes Corporate Structure, and subsequently made payments to the IRS on behalf of me in satisfaction of my federal income tax liability attributable to his ownership of the Rhodes Corporate Structure. Such payments made on behalf of me were appropriately accounted for in the Books and Records, which practice has been reviewed and verified by numerous independent audits.

21. In the 2006 tax year, estimated income tax payments on income attributable to the Rhodes Corporate Structure, which amounted to approximately $14,040,000, were paid by Sagebrush to the IRS on my behalf. In or around late 2007, upon completion of tax returns for the Rhodes Corporate Structure for that tax year, it became clear that the total tax liability for the 2006 tax year was in excess of the estimated tax payments previously made by Sagebrush. Thereafter, approximately $9.7 million of my cash resources were used to satisfy the remaining tax liability for the 2006 tax year, and such payment was accounted for in the Books and Records as a "dividend payable" to me. Such liability to me remained accrued and unpaid as of the Petition Date. Accordingly, I am informed and believe that the Books and Records demonstrate this course of conduct among me and the Rhodes Corporate Structure[4] and that the existence of Rhodes' Tax Claim has previously been verified by independent auditors, including Main Amundson, Deloitte & Touche, and Winchester Carlisle Partners.

22. The governing documents for the entities included in the Rhodes Corporate Structure permit or even mandate distributions to the partners or members to account for income tax distributions. Section 2.4.2, entitled "Distributions with Respect to Taxes," of the Sedora Holdings, LLC Operating Agreement, effective during the 2006 tax year, mandates that Sedora Holdings make

---

[4] As of the date of filing this Opposition, I could not immediately locate the information from the books and records of the Borrower Entities to provide the Court with copies of such information. However, I anticipate having such information available, via the Document Access Agreement, prior to any evidentiary hearing held on the Reorganized Debtors' Objection.

VG1 42699v1 06/17/10

8

1  priority distributions to the partners[5] in amounts sufficient for the partners to pay their annual tax
2  liabilities attributable to their interest in the Company.[6] The governing documents for the Borrower
3  Entities generally allow for distributions to partners.[7]

4      23.    I relied upon the well-documented course of conduct between myself and the Rhodes
5  Corporate Structure and anticipated being reimbursed from the Rhodes Corporate Structure when I
6  satisfied the remaining 2006 tax year federal income tax liabilities with my personal cash resources.

7      I declare, under penalty of perjury of the laws of the United States of America, that the
8  foregoing statements are true and correct to the best of information, knowledge and belief.

9      Executed this 17th day of June 2010, in Las Vegas, Nevada.

                                                *s/ James M. Rhodes*

---

[5] During the 2006 tax year, the "Partners" of Sedora Holdings, LLC, included the Michael J. Rhodes Investment Trust, the Ryan Rocky Rhodes Investment Trust and Sagebrush Enterprises, Inc. <u>See</u> Sedora Holdings, LLC Operating Agreement, Ex. 2.1.

[6] Section 2.4.2 of the Sedora Holdings, LLC Operating Agreement provides, in pertinent part, as follows: "Notwithstanding any other provision of this Agreement, and **before the Company has any obligations make any of the other distributions provided for in this Section 2.4** or to pay Debt except as provided in Section 2.4.1, the Company shall have made distributions to each of the Partners for each prior Company year preceding the year in which any such payment or other Distributions are contemplated, in an amount equal to [*tax formula*] […], the Distributions provided for by this Section 2.4.2 shall be mandatory and shall be made at a time and in a manner intended to permit the respective Partners (or their ultimate beneficial owners) to apply such Distributions to the Payment of the annual tax liabilities of the Partners resulting from the Partner holding an interest in the Company."

[7] Section 5.1 of the Heritage Land Company Operating Agreement provides '…the Manager may, in its sole discretion, distribute from time to time the Net Cash Flow to the members pro rata in accordance with their respective Partnership Interests" and Section 5.3 provides "All amounts withheld pursuant to the Code or any provisions or state or local tax law with respect to any payment or distribution to the Members from the Company shall be treated as amounts distributed to the relevant Member for all purposes of this Agreement." Paragraph 5 of the Rhodes Ranch General Partnership provides "…each partner may make withdrawals from time to time to the extent permitted by the partnership." Section 5.1 of the Rhodes Ranch, LLC Operating Agreement provides "Distributions of available cash flow shall be made, subject to Section 86.343 of the Act, in such amounts and at such times as the Member shall determine in its sole discretion."

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

VG1 42699v1 06/17/10

9