1

2    KEN WILES                                          E-File:  April 13, 2010
     ACCELERON GROUP
3    2791 SOFT HORIZON WAY
     LAS VEGAS, NEVADA 89135
4
     Market Research Consultants for Debtors and
5    Debtors in Possession

6

7                    **UNITED STATES BANKRUPTCY COURT**

                         **DISTRICT OF NEVADA**
8

9    In re:                              Case No.: BK-S-09-14814-LBR
                                         (Jointly Administered)
     THE RHODES COMPANIES, LLC, aka
10   "Rhodes Homes," et al.,[1]           Chapter 11

11              Debtors.

     Affects:                            Hearing Date: June 21, 2010
12   ☒    All Debtors                    Hearing Time: 9:30 a.m.
     ☐    Affects the following Debtor(s) Courtroom 1
13

14

15   **FINAL APPLICATION OF ACCELERON GROUP ADVISORS FOR ALLOWANCE**
     **AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS**
16   **MARKET RESEARCH CONSULTANTS TO THE DEBTORS AND DEBTORS IN**
     **POSSESSION FOR THE PERIOD MARCH 31, 2009 THROUGH MARCH 31, 2010**

17

18

19

20

21   [1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-
     14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache
22   Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case
     No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-
23   14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa,
     LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843);
24   Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No.
     09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany
25   Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany
     Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow,
26   LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP
     (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No.
     09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-
     14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

**TO THE HONORABLE LINDA B. RIEGLE, UNITED STATES BANKRUPTCY JUDGE:**

By this Application, Acceleron Group, LLC ("AG", "Applicant" or "Firm"), as financial consultants for the debtors and debtors in possession in the above-captioned cases (the "Debtors"), respectfully applies for an order of this Court:   (1) allowing first and final compensation to AG for services rendered and expenses incurred in its representation of the Debtors during the period from March 31, 2009 through March 31, 2010 (the "Fee Period"), in the total amount of $42,565.00, comprising services rendered in the amount of $42,565.00 and expenses incurred in the amount of $0; and (ii) granting any other relief that this Court deems necessary and appropriate (the "Application").

AG submits this Application in accordance with the "Order Granting Debtors' Motion for Administrative Order Pursuant to Sections 105(A) and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016 Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals", entered May 18, 2009 (the "Administrative Order"), 11 U.S.C. §331, Rules 2002(a)(6) and 2016 of the Federal Rules of Bankruptcy Procedure, LR 2016, and the Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses Filed Under 11 U.S.C. §330 (the "Fee Guidelines").  In support of this Application, AG respectfully represents and shows as follows:

**I.**

**<u>SUMMARY OF AG ENGAGEMENT.</u>**

AG is a specialist financial firm that provides debt restructuring, investment banking, and financial advisory services to distressed borrowers and middle market companies. We are the first firm of its kind that maintains its headquarters in Las Vegas, Nevada.

Pursuant to the "Order Granting Application of Debtors and Debtors in Possession to Employ Acceleron Group, LLC as Market Research Consultants *Nunc Pro Tunc* to the Petition Date, entered on May 11, 2009, this Court authorized the Debtors to employ AG as consultants in these proceedings.

As set forth herein, the AG consultants who have been principally responsible for rendering services to the Debtors during the Fee Period have been Ken Wiles, Mandy Townsend and David Housey. Other AG consultants and staff rendered services as needed.  In general, tasks have been allocated among AG's consultants based upon the comparative expertise of a particular consultant in various aspects of these cases.  Whenever feasible, work was allocated to consultants with lower hourly rates.  AG believes that it provided services in an efficient and economic manner.

The following exhibits covering the Fee Period are annexed to this Application:

Exhibit A is a summary of the background and qualifications of the senior AG consultant who rendered services to the Debtors.

Exhibit B lists the billing rates for all AG professionals who rendered services to the Debtors, a summary of the hours billed and fees incurred on behalf of the Debtors by each of those persons and all time sheets.

Exhibit C includes the Interim Fee Application that was filed with the Court.

**II**.

**SUMMARY OF COMPENSATION REQUEST**

As set forth in Exhibit B, during the Fee Period, AG incurred $42,565.00 in fees, representing 123.20 hours of service, and $0 in expenses.  AG provided a Monthly Statement for the month of April 2009.  No party objected to the Monthly Statement and the Debtors processed payment to AG for the eighty-five percent (85%) or $36,180.25, in accordance with the Administrative Order.  The Debtors had the opportunity to review our interim billing summary and provided approval of the interim period payment of $6,384.75, which was received by the AG after entry of the First Interim Fee Order (defined below).

On October 20, 2009, the Court entered an order approving AG's interim fee application for $42,565.00 [Docket No. 611] (the "First Interim Fee Order"), the same amount as for this final Application.  AG did not perform any work for the Debtors after the April, 2009 period covered by AG's first interim fee application.  Consequently, after entry of the First Interim Fee Order, AG returned to the Debtors the $20,000 retainer AG received at the outset of the case.

The following table summarizes the monthly fees and expenses incurred and payments made to AG during the Fee Period:

| Period | Fees and Expenses Incurred | Invoice Payments Received | Amount Owed |
|--------|----------------------------|---------------------------|-------------|
| April | Fees: $42,565.00<br>Exp:    $0 | $42,565.00 | $0 |
| Totals: | $42,565.00 | $42,565.00 | $0 |

Thus, AG has been paid in full for its services.

Except as otherwise set forth in this Application, no payments have been made or promised to AG for services rendered or to be rendered in any capacity whatsoever in connection with these cases other than as may be authorized upon application to and order of this Court. Neither AG nor any shareholders or associates of the Firm has any agreement or any understanding of any kind or nature to divide, pay over, or share any portion of the fees to be awarded with any other person or firm.

**III.**

**GENERAL BACKGROUND AND NARRATIVE HISTORY OF CASE**

**A.    General Background.**

AG was engaged by Debtors on March 31, 2009  to serve as a financial advisor working in collaboration with a real esate market research expert.  Because of its financial expertise, AG was engaged to develop a real estate valuation model for the debtor. AG developed a summary analysis of each debtor in the case to assist in determining where value for the Debtors was generated and could be maximized.  AG's services for the Debtors were essential for the valuation process, which is crucial to providing the financial information and evidence necessary for plan confirmation.  As a result, AG's retention by the estates was necessary to enable the Debtors to execute their duties as debtors in possession, including maximizing value to their creditors.

## V.

### SUMMARY OF SERVICES RENDERED

**A.    Project Billing and Narrative Statement of Services**

In accordance with the Fee Guidelines, AG classified all services performed for which compensation is being sought into categories. AG attempted to place the services performed for which compensation is being sought into the category that best relates to the service provided. However, because certain services may relate to one or more categories, services pertaining to one category may, in fact, be included in another category. AG has established the following billing categories and used such categories in these cases:

| Categories | Hours | Fees |
|------------|-------|------|
| Data Analysis | 71.70 | $24,572.50 |
| Valuation | 37.00 | $12,990.00 |
| Projections and Modeling | 8.60 | $2,937.50 |
| Case Administration | 5.90 | $2,065.00 |
| Total Fees: | 123.20 | $42,565.00 |

**B.    Data Analysis**

This category related to issues regarding entity analysis. During the Fee Period, AG, performed among other things: (1) reviewed each entity to determine their status for valuation purposes; (2) developed summaries by entity, which were submitted to the Court for review; and (3) researched all potential assets owned by the estate. For the Fee Period, AG is requesting:

Fees: $24,572.50        Hours: 71.70

**C.    Valuation**

This category related to issues important to valuing the entities. During the Interim Period, AG, among other things: (1) developed the critical components of the valuation model; and (2) researched the key assets to ensure all were captured in order to maximize the value for the estate. For the Fee Period AG is requesting:

Fees: $12,990.00        Hours: 37

**D.      Projections and Modeling**

This category related to the development of the valuation model. During the Fee Period, AG, among other things:  (1) reviewed the Debtor's financial model to determine the accuracy of the model and evaluate the key assumptions and underlying assumptions incorporated into the model; (2) developed the framework for the revised valuation model; and (3) performed general economic and entity specific research.

For the Fee Period AG is requesting:

Fees:  $2,937.50                    Hours: 8.60

**E.      Case Administration**

This category related to the development of the monthly fee statements and acquisition and management of Debtor and entity information.

For the Fee Period AG is requesting:

Fees:  $2,065.00                    Hours: 5.90

**V.**

**SUMMARY OF COSTS AND EXPENSES**

No cost or expenses were incurred during the Fee Period.

**VI.**

**THE FEES AND EXPENSES REQUESTED SHOULD BE AWARDED**

**BASED UPON APPLICABLE LAW**

The fees and expenses requested by this Application are an appropriate award for AG's services in acting as a consultant to the Debtors.

**A.      Factors in Evaluating Requests for Compensation**

Pursuant to section 330 of the Bankruptcy Code, the Court may award to a professional person, reasonable compensation for actual, necessary services rendered, and reimbursement for actual, necessary expenses incurred 11 U.S.C. § 330.  As set forth above, the fees for which the Firm requests compensation are for actual and necessary services rendered.

The professional services rendered by the Firm have required an expenditure of substantial time and effort.  During the Fee Period, in excess of 123.20 hours were recorded by members of the Firm, and additional hours of work were incurred and were written off.  The

Firm's blended hourly rate in this case for the Fee Period, excluding write-offs but including administrative support, is $297.00.

Moreover, time and labor devoted is only one of many pertinent factors in determining an award of fees and costs. Based on the skills brought to bear in this case by the Firm and the results obtained and in light of the accepted lodestar approach, the Firm submits that the compensation requested herein is reasonable and appropriate.

**B.    The Lodestar Award Should Be Calculated by Multiplying a Reasonable Hourly Rate by the Hours Expended**

In determining the amount of allowable fees under section 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *Burgess v. Klenske (In re Manoa Finance Co.)*, 853 F.2d 687, 691 (9th Cir. 1988); *see also* In re Schaeffer, 71 B.R. 559, 563 (Bankr. S.D. Ohio 1987).

Twelve factors relevant to determining such fees were identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974) (a Title VII class action case under the Civil Rights Act of 1964), and Kerr v. Screen Extras Guild, Inc., 526 F. 2d 67, 70 (9th Cir. 1975):  (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the service properly, (4) the preclusion of other employment by the professional due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  *See American Benefit Life v. Baddock (In re First Colonial Corp.)*, 544 F.2d 1291 (5th Cir. 1977) (Johnson criteria applicable in bankruptcy cases).

While the Johnson and Kerr courts only offered guidelines as to relevant factors, in 1984, the Supreme Court, in enunciating guidelines to determine reasonable fees under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, held:

1

2
> The initial estimate of a reasonable attorney's fee is properly
> calculated by multiplying the number of hours reasonably
> expended on the litigation times a reasonable hourly rate.
> Adjustments to that fee then may be made as necessary in the
> particular case.

3

4

5
*Blum vs. Stenson*, 465 U.S. 886 (1984) (citation omitted).  This is the so-called "lodestar"

6
calculation.  We believe similar methodology can be justified in calculating professional fees tied

7
to market research and valuation consultation.

8
      In 1986, the Supreme Court more explicitly indicated that the factors relevant to

9
determining fees should be applied using the lodestar approach, rather than an ad hoc approach.

10
While holding that the attorneys' fee provision of the Clean Air Act, 42 U.S.C. § 7401 et seq.,

11
should be interpreted like that of the Civil Rights Act, the Court expressly rejected the ad hoc

12
application of the factors set forth in *Johnson* and thus *Kerr*, stating that, "the lodestar figure

13
includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee  . . ."

14
*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-66 (1986).

15
      While the lodestar approach is the primary basis for determining fee awards under the

16
federal fee-shifting statutes and under the Bankruptcy Code, the other factors, previously applied

17
in an ad hoc fashion, still apply in calculating the appropriate hourly rate to use under the

18
lodestar approach.  For example, when, in *Boddy v. Bankruptcy Court (In re Boddy)*, 950 F.2d

19
334, 337 (6th Cir. 1991), the Sixth Circuit Court of Appeals rejected an approach to fees (in

20
chapter 13 cases) that dictated only a "normal and customary" fee should be awarded absent

21
exceptional results, the Sixth Circuit nonetheless acknowledged that:

22

23
> The court can legitimately take into account the typical
> compensation that is adequate for attorney's fees in Chapter 13
> cases, as long as it expressly discusses these factors in light of the
> reasonable hours worked and a reasonable hourly rate.  The
> bankruptcy court also may exercise its discretion to consider other
> factors such as the novelty and difficulty of the issues, the special
> skills of counsel, the results obtained, and whether the fee awarded
> is commensurate with fees for similar professional services in non-
> bankruptcy cases in the local area.

24

25

26

27

28
950 F.2d at 338.  Thus, the twelve oft-cited <u>Johnson</u> and <u>Kerr</u> factors remain relevant for

determination of professional fees in a bankruptcy.

**C.      The Time and Labor Required**

The time for which compensation is sought is set forth, in detail, in the Firm's professional fee statements contained in the exhibits hereto.  In light of the scope of services rendered and the results achieved during the Fee Period, the Firm's services and time expenditures are reasonable.

**D.      The Novelty and Difficulty of the Questions Involved**

The case included a number of matters and issues requiring a high degree of knowledge and skill.

**E.      The Skill Requisite to Perform the Legal Services Properly**

The Firm believes its professionals have exhibited a high level of skill in representing the Debtors and dealing with issues and disputes regarding investigation of assets.

**F.      The Preclusion of Other Employment by the
        Professional Due to the Acceptance of the Case**

The case involved a number of matters and issues that required substantial amounts of time clearly precluding the acceptance of alternative employment as to the many hours worked.

**G.      The Customary Fee**

The compensation the Firm seeks by way of this Application is the customary compensation sought by the Firm and other professionals representing trustees, committees, and debtors in similar circumstances.

**H.      Whether the Fee Is Fixed or Contingent**

The Firm seeks fixed compensation based on the lodestar formula, which it believes is appropriate in this case.

**I.      Time Limitations Imposed by the Circumstances**

The time demands on the Firm have varied during the Fee Period, and have included some periods of time where the Firm's consultants had to work very extensive hours for a number of the matters that arose during the Fee Period.

**J.      The Amount Involved and the Results Obtained**

The Firm obtained excellent results for its work and the amounts incurred were reasonable and appropriate.

**K.      The Experience, Reputation and Abilities of the Firm**

The experience, reputation, and abilities of the Firm's professionals are well known and respected in this community.

**L.      The Undesirability of This Case**

This case was not undesirable.

**M.      The Nature and Length of the Professional Relationship with the Client**

Applicant performed services for the Debtors from March 31, 2009 through April 30, 2009.

**N.      Awards in Similar Cases**

The award Applicant seeks in this case is similar to awards that professionals have received in similar cases.    The Applicant's time reports are initially handwritten, entered electronically into a database, or recorded on tape by the consultant performing the described services.  The time reports are organized on a daily basis.

The Firm's charges for its professional services are based upon the time, nature, extent and value of such services, and the cost of comparable services in the Las Vegas area other than in a case under the Bankruptcy Code.  The Firm will submit a declaration prior to the hearing on this Application setting forth that the clients have reviewed the Firm's Fee Application and setting forth their support thereof.

The requested fees and expenses shall be paid from the estate only as and when available.

## VII

## <u>CONCLUSION</u>

AG believes that the services rendered for which compensation is sought by this Application have been beneficial to the estate, that the costs incurred have been necessary and proper, and that the sums requested for the services rendered and costs incurred are fair and reasonable.

1

2          The compensation sought in this Application is final and represents the totality of the

3   services rendered by AG in this case.  The interim fees approved by the Court and received by

4   AG will be credited against such final fees and costs as this Court may allow.

5          WHEREFORE, AG respectfully requests that this Court, issues an order:  (i) allowing

6   AG final compensation for services rendered and expenses incurred during the Fee Period in the

7   amount of $42,565.00, representing services rendered in the amount of $42,565.00 and expenses

8   incurred in the amount of $0; and (ii) granting such other relief as the Court deems necessary and

9   appropriate.

10  **DATED** this _12th_ day of April 2010.                    **Acceleron Group Advisors**

11                                                              Acceleron Group

12                                                              Ken Wiles
                                                                2791 Soft Horizon Way
13                                                              Las Vegas, Nevada 89135
                                                                Telephone:  702-506-1825
14                                                              Facsimile:  425-799-9659
                                                                Email:  ken.wiles@accelerongroup.com
15                                                              Consultants for Debtors and Debtors in
                                                                Possession
16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF KENNETH W. WILES

I, Kenneth W. Wiles, declare:

a)      I am a managing director of Acceleron Group, LLC.

b)      I am familiar with the services rendered by Acceleron Group, LLC as Financial Advisors for the Debtors and Debtors in Possession.

c)      I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of April, 2010 at Las Vegas, Nevada.

Exhibit A



**Ken Wiles**
**Managing Director**
**Acceleron Group**

<u>Work History</u>

Ken joined Acceleron in March of 2007 and serves as a Managing Director. Acceleron, founded by a former Salomon Brothers analyst in New York, specializes in providing companies with investment banking and strategic financial advisory services, with an emphasis on restructuring and turnaround activities. Since January 2008, the firm has advised real estate and developer clients with more than $2.5 billion in liabilities. He is a member of the senior management team responsible for establishing the Company's strategic direction, leading business development activities, and directing client engagements. Acceleron's clients range from early stage companies to multi-national financial institutions.

Prior to Acceleron, Ken served as the CFO and Senior Vice President of Business Development of AppForge, Inc. The Company's premier product, Crossfire, enabled Microsoft Visual Studio developers to create mobile applications one time that could run on more than 600 mobile devices. Crossfire was sold to Oracle Corporation (NASDAQ: ORCL) in April 2007. As senior Vice President of Business Development, led the company's strategic business relationships with companies including Nokia, Microsoft, Oracle, Palm, RIM, AT&T, and Symbian, among others. In addition, Ken was responsible for the finance, accounting, investor relations, human resources and MIS departments.

Before joining AppForge, Ken served as Vice President at Lloyd & Company, an investment banking firm that specialized in providing investment banking and strategic financial advisory services to middle-market companies. Ken led many of the firm's deal teams, which he helped plan, structure, negotiate and execute transactions.

Prior to his tenure at Lloyd & Company, Ken served as Chief Financial Officer for SOMAR, Inc., where he negotiated the asset purchase agreement of the company into a six-company roll-up and IPO that lead to the formation of TeleSpectrum Worldwide, Inc.

At TeleSpectrum he served initially as the company's Treasurer and then at the Vice President of Business Development.

Ken was also a Finance Professor at The University of North Carolina at Chapel Hill, and then served as an Adjunct Finance Professor in the Executive MBA Program for a total of 17 years. Ken is a published author with articles appearing in *The Journal of Financial Economics, The Journal of Empirical Finance, Financial Management,* and *Financial Analyst Journal,* among others.

He has also held positions in Liquidation Accounting at the Federal Deposit Insurance Corporation ("FDIC"); in the accounting department at Miller and Long, Inc., one of the nation's largest concrete subcontractors; and at Golembe Associates, a financial institutions investment banking firm. He also founded The Fulcrum Financial Group, a financial advisory and money management firm with more than $50 million under management.

Ken holds a PhD in finance from the University of Texas at Austin and a BA/BS in economics and finance, with honors from The American University, where he was a scholarship soccer player and member of Mortar Board. He is also a Chartered Financial Analyst ("CFA").

Acceleron Bankruptcy Cases since January 2008

Vantage Lofts, LLC, 2008 – Served as strategic financial advisor to the debtor. Developed comprehensive valuation and restructuring model.

Namwest, LLC, and related entities, 2008 - Served as strategic financial advisor to the debtor. Developed restructuring plan.

Millennium Properties, LLC and related entities – Served as strategic financial advisor to the debtors and developed restructuring plan.

ItalDiRoma, LLC (dba Roberto Cavalli) – Prepared and reviewed financial data for the Chapter 7 Filing ensuring the schedules and statements were accurate and all assets and liabilities were identified.

Inter-Shopping, LLC (dba Just Cavalli) – Prepared and reviewed financial data for the Chapter 7 Filing ensuring the schedules and statements were accurate and all assets and liabilities were identified.

Representative Real Estate and Homebuilder Clients since January 2008

Large regional homebuilder in Las Vegas – Served as strategic financial advisor, developed comprehensive valuation and restructuring plans for more than 10 properties and 7 lenders.

Large regional homebuilder and commercial developer in Las Vegas – Serve as strategic financial advisor for builder with more than 6 properties in Nevada and Utah and 5 lenders. Provided comprehensive valuation and restructuring plans for each property.

Large regional homebuilder in Las Vegas – Serve as strategic financial advisor for builder with more than 6 properties in Nevada and Utah and 5 lenders. Provided detailed valuation and restructuring plans for each property.

Large commercial develop in Las Vegas – Serve as strategic financial advisor for commercial developer with more than 9 projects in Nevada, Florida and Arizona, 6 lenders and 50 investors. Provided detailed valuation and restructuring plans for each property.

Large commercial developer in Las Vegas – Serve as strategic financial advisor for commercial developer with more than 20 projects in Nevada, Florida and Arizona, 8 lenders and 50 equity investors.

Publications

Journal of Empirical Finance
Volume 1, Issues 3-4, July 1994, Pages 313-341
Alternative constructions of Tobin's q: An empirical comparison
Steven B. Perfect (Department of Finance, College of Business, The Florida State University, Tallahassee, FL 32306-1042, USA) and Kenneth W. Wiles(The Kenan-Flagler Business School, The University of North Carolina at Chapel Hill, Campus Box 3490, Carroll Hall, Chapel Hill, NC 27599-3490, USA)

Financial Management, 1995, vol. 24, issue 3
Who Opts Out of State Antitakeover Protection?: The Case of Pennsylvania's SB 1310
Sunil Wahal, Kenneth W. Wiles and Marc Zenner (all The Kenan-Flagler Business School, University of North Carolina at Chapel Hill, Chapel Hill, NC 27599, USA)

Financial Analysts Journal
May/June 1995, Vol. 51, No. 3: 47-57
The Effects of Rebalancing on Size and Book-to-Market Ratio Portfolio Returns
Patrick Dennis (The Kenan-Flagler Business School, University of North Carolina at Chapel Hill, Chapel Hill, NC 27599, USA), Steven B. Perfect (Department of Finance, College of Business, The Florida State University, Tallahassee, FL 32306-1042, USA), Karl N. Snow (Brigham Young University), and Kenneth W. Wiles (The Development Group, Inc., Salisbury, NC 28144, USA)

Journal of Financial Economics
Volume 40, Issue 2, February 1996, Pages 319-338
A requiem for the USA Is small shareholder monitoring effective?*1
Deon Strickland (The Kenan-Flagler Business School, University of North Carolina at Chapel Hill, Chapel Hill, NC 27599, USA), Kenneth W. Wiles (The Development Group,

Inc., Salisbury, NC 28144, USA) and Marc Zenner (The Kenan-Flagler Business School, University of North Carolina at Chapel Hill, Chapel Hill, NC 27599, USA)

Education

University of Texas at Austin, PhD in Finance, 1991
    Received the University of Texas Continuing Fellowship and numerous teaching awards

American University, BA/BS in Economics and Finance, 1985
    Magna Cum Laude, Mortar Board, scholarship soccer player

CFA Institute, Chartered Financial Analyst Certification, 1993

Exhibit B

The Rhodes Companies, LLC., et al          Acceleron                        Group
Attn: Mr. Joe Schramm                                    Attn:          Mandy W. Townsend
4730 S. Fort Apache Rd.          2791                            Soft Horizon Way
Suite 300          Las                                        Vegas, Nevada 89135
Las Vegas, NV. 89147

| Acceleron Group Summary by Employee | | | |
|---|---|---|---|
| Name | Rate | Hours | Total |
| David Housey | $ 250.00 | 27.30 | $  6,825.00 |
| Mandy Townsend | $ 350.00 | 78.50 | $ 27,475.00 |
| Ken Wiles | $ 475.00 | 17.40 | $  8,265.00 |
| | | 123.20 | $ 42,565.00 |

| Acceleron Group Summary of Hours Billed by Category | | | |
|---|---|---|---|
| Description | Code | Hours | Amount |
| Case Administration | B110 | 5.90 | $  2,065.00 |
| Projections and Modeling | B271 | 8.60 | $  2,937.50 |
| Data Analysis | B280 | 71.70 | $ 24,572.50 |
| Valuation | B295 | 37.00 | $ 12,990.00 |
| | | 123.20 | $ 42,565.00 |

Exhibit B

| The Rhodes Companies, LLC., et al | Acceleron | Group |
|---|---|---|
| Attn: Mr. Joe Schramm | Attn: | Mandy W. Townsend |
| 4730 S. Fort Apache Rd.        2791 | | Soft Horizon Way |
| Suite 300              Las | | Vegas, Nevada 89135 |
| Las Vegas, NV. 89147 | | |

<table>
<tr><td colspan="8" align="center"><strong>Summary by Employee<br>Ken Wiles</strong></td></tr>
<tr><td>B280</td><td>Ken Wiles</td><td>Organized work plan with Mandy Townsend and David Housey.  Worked with Joe on organizational chart, year-end financial data and entity descriptions.</td><td>4/1/2009</td><td>2.20</td><td>$</td><td>1,045.00</td></tr>
<tr><td>B271</td><td>Ken Wiles</td><td>Meeting with debtors to discuss valuation model prepared by RH and review strategic objectives for engagement.</td><td>4/2/2009</td><td>3.00</td><td>$</td><td>1,425.00</td></tr>
<tr><td>B280</td><td>Ken Wiles</td><td>Met with attorney, reviewed filing documents, corporate organization, and filing strategy.</td><td>4/2/2009</td><td>2.20</td><td>$</td><td>1,045.00</td></tr>
<tr><td>B280</td><td>Ken Wiles</td><td>Conference call with debtors to discuss financial models provided by RH to creditors and discuss valuation.</td><td>4/2/2009</td><td>0.50</td><td>$</td><td>237.50</td></tr>
<tr><td>B271</td><td>Ken Wiles</td><td>Conference call with Sullivan group and debtors to establish information requirements from Sullivan Group and integration with Acceleron Group.</td><td>4/3/2009</td><td>0.50</td><td>$</td><td>237.50</td></tr>
<tr><td>B295</td><td>Ken Wiles</td><td>Developed valuation plan with Ken Perlman from Sullivan Group and with debtors.  Identified needed input data for Sullivan Group</td><td>4/9/2009</td><td>2.00</td><td>$</td><td>950.00</td></tr>
<tr><td>B280</td><td>Ken Wiles</td><td>Constructed valuation organizational chart.</td><td>4/12/2009</td><td>2.00</td><td>$</td><td>950.00</td></tr>
<tr><td>B295</td><td>Ken Wiles</td><td>Revised corporate organizational chart.</td><td>4/13/2009</td><td>2.00</td><td>$</td><td>950.00</td></tr>
<tr><td>B280</td><td>Ken Wiles</td><td>Organized work plan during conference call with Mandy Townsend and David Housey.  Reviewed asset chart, planned valuation process.</td><td>4/16/2009</td><td>2.00</td><td>$</td><td>950.00</td></tr>
<tr><td>B280</td><td>Ken Wiles</td><td>Organized work plan with Mandy Townsend and David Housey</td><td>4/18/2009</td><td>1.00</td><td>$</td><td>475.00</td></tr>
<tr><td colspan="4" align="right">Total</td><td></td><td>$</td><td>8,265.00</td></tr>
</table>

Exhibit B

The Rhodes Companies, LLC., et al        Acceleron                      Group
Attn: Mr. Joe Schramm                                   Attn:           Mandy W. Townsend
4730 S. Fort Apache Rd.        2791                                     Soft Horizon Way
Suite 300              Las                                              Vegas, Nevada 89135
Las Vegas, NV. 89147               Summary by Employee

| | | Mandy Townsend | | | |
|---|---|---|---|---|---|
| B280 | Mandy Townsend | Reviewed first day motions | 4/2/2009 | 2.30 | $ 805.00 |
| B280 | Mandy Townsend | Meeting at debtor's office with Edward Kim to discuss the current model that had been developed | 4/2/2009 | 1.20 | $ 420.00 |
| B295 | Mandy Townsend | Meeting with Joe Schramm, Edward Kim, Jeff Barcy, and Noel Bejarano from debtor's office to discuss the Acceleron approach to the valuation of debtor entities. | 4/2/2009 | 1.10 | $ 385.00 |
| B295 | Mandy Townsend | Meeting with Ken Wiles and David Housey to discuss the AG approach and the scenarios that will be evaluated as part of the valuation process for debtor's entities | 4/2/2009 | 1.40 | $ 490.00 |
| B280 | Mandy Townsend | Developing information request for the entities | 4/3/2009 | 0.70 | $ 245.00 |
| B280 | Mandy Townsend | Conference call with Sullivan Group and debtor | 4/3/2009 | 0.60 | $ 210.00 |
| B280 | Mandy Townsend | Meeting with the debtor team and counsel to discuss information requests and cash collateral hearing | 4/3/2009 | 1.90 | $ 665.00 |
| B295 | Mandy Townsend | Evaluating and reviewing information received | 4/3/2009 | 1.20 | $ 420.00 |
| B110 | Mandy Townsend | Client administration, setting up time tracker and preparing data for fee application | 4/6/2009 | 1.30 | $ 455.00 |
| B280 | Mandy Townsend | Meeting with debtor to discuss inventory tracking models for the debtor entities | 4/6/2009 | 1.60 | $ 560.00 |
| B280 | Mandy Townsend | Meeting with debtor to discuss request for information and the outstanding items | 4/6/2009 | 0.90 | $ 315.00 |
| B280 | Mandy Townsend | Reviewing 13 week cash flow model | 4/6/2009 | 1.70 | $ 595.00 |
| B280 | Mandy Townsend | Reviewing forecast projection of the on-going entities | 4/6/2009 | 1.50 | $ 525.00 |
| B280 | Mandy Townsend | Meeting to discuss deliverables and information requests | 4/8/2009 | 1.70 | $ 595.00 |
| B280 | Mandy Townsend | Compiling information for the entity valuation summary | 4/8/2009 | 1.40 | $ 490.00 |
| B280 | Mandy Townsend | Inputting the entity information into the summary format | 4/8/2009 | 1.80 | $ 630.00 |
| B295 | Mandy Townsend | Developing summary of entities for understanding the valuation of the company and where the assets are held | 4/8/2009 | 3.20 | $ 1,120.00 |
| B295 | Mandy Townsend | Discussing the status of the financials for each entity and where they stand in order to incorporate into the valuation summary | 4/8/2009 | 1.80 | $ 630.00 |
| B280 | Mandy Townsend | Inputting the entity information into the summary format | 4/9/2009 | 1.30 | $ 455.00 |
| B280 | Mandy Townsend | Discussions with debtor regarding the entity organizational chart and the request for me to complete | 4/9/2009 | 0.60 | $ 210.00 |
| B280 | Mandy Townsend | Meeting with Ken Wiles to discuss layout of the entity org chart | 4/10/2009 | 1.20 | $ 420.00 |

Exhibit B

The Rhodes Companies, LLC., et al       Acceleron                    Group
Attn: Mr. Joe Schramm                                      Attn:        Mandy W. Townsend
4730 S. Fort Apache Rd.        2791                                     Soft Horizon Way
Suite 300             Las                                               Vegas, Nevada 89135
Las Vegas, NV. 89147

| | | Summary by Employee Mandy Townsend | | | | |
|---|---|---|---|---|---|---|
| B280 | Mandy Townsend | Meeting with David Housey and Ken Wiles to discuss one page summaries for each entity and the layout | 4/10/2009 | 1.60 | $ | 560.00 |
| B280 | Mandy Townsend | Gathering information from the company regarding the financial data for each entity | 4/10/2009 | 0.80 | $ | 280.00 |
| B280 | Mandy Townsend | Providing information to counsel regarding the retention of Acceleron Group | 4/13/2009 | 0.50 | $ | 175.00 |
| B280 | Mandy Townsend | Reviewing the entity summary for court submission | 4/13/2009 | 1.50 | $ | 525.00 |
| B280 | Mandy Townsend | Requesting updates necessary to the summary chart and the entity org chart | 4/13/2009 | 0.30 | $ | 105.00 |
| B280 | Mandy Townsend | Making changes to org entity chart as requested by the company to ensure the valuation entity charge is consistent with the company chart being submitted to the court | 4/13/2009 | 1.80 | $ | 630.00 |
| B295 | Mandy Townsend | Meeting with Ken Wiles in regards to the entity org chart | 4/13/2009 | 1.20 | $ | 420.00 |
| B295 | Mandy Townsend | Reviewing year end financial data to understand asset make-up of each entity and making copies of files for development of the valuation model | 4/13/2009 | 2.30 | $ | 805.00 |
| B280 | Mandy Townsend | Meeting with debtor to discuss the business operations of the filing entities | 4/14/2009 | 2.20 | $ | 770.00 |
| B280 | Mandy Townsend | Compiling the data gathered for the filing entities into the summary document | 4/14/2009 | 3.40 | $ | 1,190.00 |
| B280 | Mandy Townsend | Formatting entity summary for court submission | 4/14/2009 | 2.50 | $ | 875.00 |
| B280 | Mandy Townsend | Making requested format changes for counsel on entity summary to be submitted to the court | 4/16/2009 | 2.80 | $ | 980.00 |
| B280 | Mandy Townsend | Updating financial data in entity summary given new data provided by the debtor | 4/16/2009 | 2.20 | $ | 770.00 |
| B280 | Mandy Townsend | Meeting with the accounting department to discuss classification of certain liabilities | 4/16/2009 | 1.30 | $ | 455.00 |
| B280 | Mandy Townsend | Discussions with counsel regarding request for changes to the summary document | 4/16/2009 | 0.30 | $ | 105.00 |
| B295 | Mandy Townsend | Meeting with debtor to discuss the companies current valuation model | 4/16/2009 | 1.00 | $ | 350.00 |
| B295 | Mandy Townsend | Internal meeting to discuss valuation development and how to incorporate the company's current model | 4/16/2009 | 0.50 | $ | 175.00 |
| B110 | Mandy Townsend | Review of retention application and answer additional questions from counsel | 4/20/2009 | 1.40 | $ | 490.00 |
| B110 | Mandy Townsend | Meeting with debtor to discuss the need for a strategy discussion regarding the valuation with counsel | 4/20/2009 | 0.50 | $ | 175.00 |

Exhibit B

The Rhodes Companies, LLC., et al        Acceleron              Group
Attn: Mr. Joe Schramm                     Attn:                  Mandy W. Townsend
4730 S. Fort Apache Rd.        2791                              Soft Horizon Way
Suite 300            Las                                         Vegas, Nevada 89135
Las Vegas, NV. 89147

| | | Summary by Employee<br>Mandy Townsend | | | | |
|---|---|---|---|---|---|---|
| B280 | Mandy Townsend | Researching data request of counsel regarding compensation structure for executives in home building | 4/20/2009 | 1.40 | $ | 490.00 |
| B295 | Mandy Townsend | Internal meeting with David H. and Ken W. to discuss strategy items for the valuation model development | 4/20/2009 | 0.90 | $ | 315.00 |
| B280 | Mandy Townsend | Researching data request of counsel regarding compensation structure for executives in home building and downloading proxy statements as backup for court approval | 4/21/2009 | 1.20 | $ | 420.00 |
| B295 | Mandy Townsend | Researching assets for the following entities Tick, Batcave, Wallboard, Overflow, Chalkline, Jackknife and pulling APN's from assessor's office to understand location | 4/21/2009 | 2.10 | $ | 735.00 |
| B295 | Mandy Townsend | Locating financial statements for Rhodes Homes AZ, Rhodes AZ Properties, Pinnacle Grading | 4/21/2009 | 0.60 | $ | 210.00 |
| B295 | Mandy Townsend | Organizing an asset org chart to lay out assets by entity, by development and by project | 4/21/2009 | 2.50 | $ | 875.00 |
| B110 | Mandy Townsend | Providing information requested by counsel regarding the accelerant engagement | 4/22/2009 | 0.60 | $ | 210.00 |
| B295 | Mandy Townsend | Completing Asset mapping of assets by project, entity and development | 4/22/2009 | 2.20 | $ | 770.00 |
| B295 | Mandy Townsend | Discussion with debtor regarding the mapping of certain assets and location | 4/22/2009 | 0.80 | $ | 280.00 |
| B295 | Mandy Townsend | Reviewing data provided and maps for properties in Rhodes Homes AZ and Rhodes AZ Properties to determine securitization by the credit facility | 4/22/2009 | 0.80 | $ | 280.00 |
| B295 | Mandy Townsend | Reviewing mapping of properties in AZ and ownership structure for valuation purposes | 4/22/2009 | 1.20 | $ | 420.00 |
| B295 | Mandy Townsend | Conference call with Ken W and David H to discuss current status of open projects | 4/23/2009 | 0.40 | $ | 140.00 |
| B295 | Mandy Townsend | Cross-referencing the company's current model with the asset map to identify missing assets | 4/23/2009 | 3.20 | $ | 1,120.00 |
| B110 | Mandy Townsend | Preparing final bill as requested by debtor and fee application for court submission | 4/25/2009 | 2.10 | $ | 735.00 |
| | | | | Total | | $ 27,475.00 |

Exhibit B

The Rhodes Companies, LLC., et al          Acceleron                              Group
Attn: Mr. Joe Schramm                                    Attn:          Mandy W. Townsend
4730 S. Fort Apache Rd.          2791                                  Soft Horizon Way
Suite 300          Las                                                  Vegas, Nevada 89135
Las Vegas, NV. 89147

Summary by Employee

| | | David Housey | | | | |
|---|---|---|---|---|---|---|
| B280 | David Housey | Meeting at debtor with Edward Kim to discuss the current model that has been developed | 4/1/2009 | 1.20 | $ | 300.00 |
| B280 | David Housey | Evaluating and reviewing information received | 4/1/2009 | 1.00 | $ | 250.00 |
| B295 | David Housey | Meeting with debtor to discuss the Acceleron approach to the valuation of debtor entities | 4/1/2009 | 1.10 | $ | 275.00 |
| B295 | David Housey | Meeting with Ken Wiles and Mandy Townsend to discuss the AG approach and the scenarios that will be evaluated as part of the debtor entities valuation process | 4/1/2009 | 1.40 | $ | 350.00 |
| B280 | David Housey | Meeting at debtor with internal team to structure organizational information and financial data | 4/10/2009 | 5.10 | $ | 1,275.00 |
| B280 | David Housey | Preparation of financial data (balance sheet and profit and loss statements) for the 15 entities | 4/10/2009 | 2.40 | $ | 600.00 |
| B280 | David Housey | Preparation of financial data (balance sheet and profit and loss statements) for the 17 entities | 4/11/2009 | 3.10 | $ | 775.00 |
| B280 | David Housey | Structure and format information summaries for 32 entities | 4/11/2009 | 2.50 | $ | 625.00 |
| B280 | David Housey | Edits and finalization of April 15th package | 4/14/2009 | 2.30 | $ | 575.00 |
| B295 | David Housey | Meeting at Rhodes Homes with Edward Kim to discuss structure and assumptions of internal cash flow model | 4/16/2009 | 2.10 | $ | 525.00 |
| B271 | David Housey | Financial model audit and organization | 4/18/2009 | 3.60 | $ | 900.00 |
| B271 | David Housey | Development, discussion and preparation of entity/development/project in relation to financial modeling needs | 4/20/2009 | 1.20 | $ | 300.00 |
| B271 | David Housey | Follow up conference call regarding available data and required model outputs | 4/23/2009 | 0.30 | $ | 75.00 |
| | | | Total | | $ | 6,825.00 |

Exhibit C

E-File:  August 17, 2009

KEN WILES
ACCELERON GROUP
2791 SOFT HORIZON WAY
LAS VEGAS, NEVADA 89135

Market Research Consultants for Debtors and
Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br><br>Debtors. | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11 |
| Affects:<br>☒    All Debtors<br>☐    Affects the following Debtor(s) | Hearing Date:  October 2, 2009<br>Hearing Time:  1:30 p.m.<br>Courtroom 1 |

**FIRST INTERIM APPLICATION OF ACCELERON GROUP ADVISORS FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS MARKET RESEARCH CONSULTANTS TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD MARCH 31, 2009 THROUGH JUNE 30, 2009**

---

[1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

**TO THE HONORABLE LINDA B. RIEGLE, UNITED STATES BANKRUPTCY JUDGE:**

By this Application, Acceleron Group, LLC ("AG", "Applicant" or "Firm"), as financial consultants for the debtors and debtors in possession in the above-captioned cases (the "Debtors"), respectfully applies for an order of this Court: (1) allowing interim compensation to AG for services rendered and expenses incurred in its representation of the Debtors during the period from March 31, 2009 through June 30, 2009 (the "Interim Period"), in the total amount of $42,565.00, comprising services rendered in the amount of $42,565.00 and expenses incurred in the amount of $0; (ii) authorizing the Debtors to pay AG the unpaid balance of that amount, $6,384.75; and (iii) granting any other relief that this Court deems necessary and appropriate (the "Application").

AG submits this Application in accordance with the "Order Granting Debtors' Motion for Administrative Order Pursuant to Sections 105(A) and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016 Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals", entered May 18, 2009 (the "Administrative Order"), 11 U.S.C. §331, Rules 2002(a)(6) and 2016 of the Federal Rules of Bankruptcy Procedure, LR 2016, and the Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses Filed Under 11 U.S.C. §330 (the "Fee Guidelines"). In support of this Application, AG respectfully represents and shows as follows:

**I.**

**SUMMARY OF AG ENGAGEMENT.**

AG is a specialist financial firm that provides debt restructuring, investment banking, and financial advisory services to distressed borrowers and middle market companies. We are the first firm of its kind that maintains its headquarters in Las Vegas, Nevada.

Pursuant to the "Order Granting Application of Debtors and Debtors in Possession to Employ Acceleron Group, LLC as Market Research Consultants *Nunc Pro Tunc* to the Petition Date, entered on May 11, 2009, this Court authorized the Debtors to employ AG as consultants in these proceedings.

1

2       As set forth herein, the AG consultants who have been principally responsible for

3  rendering services to the Debtors during the Interim Period have been Ken Wiles, Mandy

4  Townsend and David Housey. Other AG consultants and staff rendered services as needed. In

5  general, tasks have been allocated among AG's consultants based upon the comparative

6  expertise of a particular consultant in various aspects of these cases. Whenever feasible, work

7  was allocated to consultants with lower hourly rates. AG believes that it provided services in an

8  efficient and economic manner.

9       The following exhibits covering the Interim Period are annexed to this Application:

10      Exhibit A is a summary of the background and qualifications of the senior AG

11  consultant who rendered services to the Debtors.

12      Exhibit B lists the billing rates for all AG professionals who rendered services to the

13  Debtors, and a summary of the hours billed and fees incurred on behalf of the Debtors by each

14  of those persons.

15                                  **II.**

16                  **SUMMARY OF COMPENSATION REQUEST**

17      As set forth in Exhibit 5, during the Interim Period, AG incurred $42,565.00 in fees,

18  representing 123.20 hours of service, and $0 in expenses. AG provided a Monthly Statement

19  for the month of April 2009. No party objected to the Monthly Statement and the Debtors

20  processed payment to AG for the eighty-five percent (85%) or $36,180.25, in accordance with

21  the Administrative Order. Debtor has had an opportunity to review our interim billing summary

22  and has provided approval. As of the date hereof, the accumulative balance owed to AG for

23  services rendered during the Interim Period is $6,384.75. A retainer of $20,000.00 was provided

24  to AG and will be returned upon receipt of the Interim Period payment.

25      The following table summarizes the monthly fees and expenses incurred and payments

26  made to AG during the Interim Period:

27

28

| Period | Fees and Expenses Incurred | Invoice Payment Received | Amount Owed |
|---|---|---|---|
| April | Fees: $42,565.00 Exp: $0 | $36,180.25 | $6,384.75 |
| Totals: | $42,565.00 | $36,180.25 | $6,384.75 |

Except as otherwise set forth in this Application, no payments have been made or promised to AG for services rendered or to be rendered in any capacity whatsoever in connection with these cases other than as may be authorized upon application to and order of this Court. Neither AG nor any shareholders or associates of the Firm has any agreement or any understanding of any kind or nature to divide, pay over, or share any portion of the fees to be awarded with any other person or firm.

## III.

## GENERAL BACKGROUND AND NARRATIVE HISTORY OF CASE

A.    **General Background.**

Acceleron Group, LLC was engaged by Debtor on March 31, 2009 to serve as a financial advisor working in collaboration with a real esate market research expert. Because of its financial expertise, AG was engaged to develop a real estate valuation model for the debtor. AG's primary role was in the the developed of a summary analysis of each debtor in the case to assist in determining where value for the Debtors was generated and could be maximized. AG's services for the Debtors were essential for the valuation process, which is crucial to providing the financial information and evidence necessary for plan confirmation. As a result, AG's retention by the estates was necessary to enable the Debtors to execute their duties as debtors in possession, including maximizing value to their creditors.

## V.

## SUMMARY OF SERVICES RENDERED

A.    **Project Billing and Narrative Statement of Services**

In accordance with the Fee Guidelines, AG classified all services performed for which compensation is being sought into categories. AG attempted to place the services performed for which compensation is being sought into the category that best relates to the service provided. However, because certain services may relate to one or more categories, services pertaining to one category may, in fact, be included in another category. AG has established the following billing categories and used such categories in these cases:

| Categories | Hours | Fees |
|---|---|---|
| Data Analysis | 71.70 | $24,572.50 |
| Valuation | 37.00 | $12,990.00 |
| Projections and Modeling | 8.60 | $2,937.50 |
| Case Administration | 5.90 | $2,065.00 |
| Total Fees: | 123.20 | $42,565.00 |

**B.    Data Analysis**

This category related to issues regarding entity analysis. During the Interim Period, AG, performed among other things: (1) reviewed each entity to determine their status for valuation purposes; (2) developed summaries by entity, which were submitted to the Court for review; and (3) researched all potential assets owned by the estate. For the Interim Period, AG is requesting:

Fees: $24,572.50          Hours: 71.70

**C.    Valuation**

This category related to issues important to valuing the entities. During the Interim Period, AG, among other things: (1) developed the critical components of the valuation model; and (2) researched the key assets to ensure all were captured in order to maximize the value for the estate. For the Interim Period AG is requesting:

Fees: $12,990.00          Hours: 37

**D.    Projections and Modeling**

This category related to the development of the valuation model. During the Interim Period, AG, among other things: (1) reviewed the Debtor's financial model to determine the accuracy of the model and evaluate the key assumptions and underlying assumptions incorporated into the model; (2) developed the framework for the revised valuation model; and (3) performed general economic and entity specific research.

For the Interim Period AG is requesting:

Fees: $2,937.50              Hours: 8.60

### E.      Case Administration

This category related to the development of the monthly fee statements and acquisition and management of Debtor and entity information.

For the Interim Period AG is requesting:

Fees: $2,065.00              Hours: 5.90

### V.

### SUMMARY OF COSTS AND EXPENSES

No cost or expenses were incurred during the Interim Period.

### VI.

### THE FEES AND EXPENSES REQUESTED SHOULD BE AWARDED BASED UPON APPLICABLE LAW

The fees and expenses requested by this Application are an appropriate award for AG's services in acting as a consultant to the Debtors.

### A.      Factors in Evaluating Requests for Compensation

Pursuant to section 330 of the Bankruptcy Code, the Court may award to a professional person, reasonable compensation for actual, necessary services rendered, and reimbursement for actual, necessary expenses incurred 11 U.S.C. § 330. As set forth above, the fees for which the Firm requests compensation are for actual and necessary services rendered.

1

2       The professional services rendered by the Firm have required an expenditure of

3 substantial time and effort. During the Fee Period, in excess of 123.20 hours were recorded by

4 members of the Firm, and additional hours of work were incurred and were written off. The

5 Firm's blended hourly rate in this case for the Fee Period, excluding write-offs but including

6 administrative support, is $297.00.

7       Moreover, time and labor devoted is only one of many pertinent factors in determining an

8 award of fees and costs. Based on the skills brought to bear in this case by the Firm and the

9 results obtained and in light of the accepted lodestar approach, the Firm submits that the

10 compensation requested herein is reasonable and appropriate.

11 **B.**     **The Lodestar Award Should Be Calculated by**
           **Multiplying a Reasonable Hourly Rate by the Hours Expended**

12

13       In determining the amount of allowable fees under section 330(a), courts are to be guided

14 by the same "general principles" as are to be applied in determining awards under the federal

15 fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters."

16 *Burgess v. Klenske (In re Manoa Finance Co.)*, 853 F.2d 687, 691 (9th Cir. 1988); *see also* In re

17 Schaeffer, 71 B.R. 559, 563 (Bankr. S.D. Ohio 1987).

18       Twelve factors relevant to determining such fees were identified in Johnson v. Georgia

19 Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974) (a Title VII class action case

20 under the Civil Rights Act of 1964), and Kerr v. Screen Extras Guild, Inc., 526 F. 2d 67, 70 (9th

21 Cir. 1975): (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the

22 skill requisite to perform the service properly, (4) the preclusion of other employment by the

23 professional due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or

24 contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount

25 involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10)

26 the undesirability of the case, (11) the nature and length of the professional relationship with the

27 client, and (12) awards in similar cases. *See American Benefit Life v. Baddock (In re First*

28 *Colonial Corp.),* 544 F.2d 1291 (5th Cir. 1977) (Johnson criteria applicable in bankruptcy cases).

1

2      While the <u>Johnson</u> and <u>Kerr</u> courts only offered guidelines as to relevant factors, in 1984,

3  the Supreme Court, in enunciating guidelines to determine reasonable fees under the Civil Rights

4  Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, held:

5              The initial estimate of a reasonable attorney's fee is properly
               calculated by multiplying the number of hours reasonably
6              expended on the litigation times a reasonable hourly rate.
               Adjustments to that fee then may be made as necessary in the
7              particular case.

8

9  *Blum vs. Stenson*, 465 U.S. 886 (1984) (citation omitted).  This is the so-called "lodestar"

10  calculation.  We believe similar methodology can be justified in calculating professional fees tied

11  to market research and valuation consultation.

12      In 1986, the Supreme Court more explicitly indicated that the factors relevant to

13  determining fees should be applied using the lodestar approach, rather than an ad hoc approach.

14  While holding that the attorneys' fee provision of the Clean Air Act, 42 U.S.C. § 7401 et seq.,

15  should be interpreted like that of the Civil Rights Act, the Court expressly rejected the ad hoc

16  application of the factors set forth in *Johnson* and thus *Kerr*, stating that, "the lodestar figure

17  includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee . . ."

18  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-66 (1986).

19      While the lodestar approach is the primary basis for determining fee awards under the

20  federal fee-shifting statutes and under the Bankruptcy Code, the other factors, previously applied

21  in an ad hoc fashion, still apply in calculating the appropriate hourly rate to use under the

22  lodestar approach.  For example, when, in *Boddy v. Bankruptcy Court (In re Boddy)*, 950 F.2d

23  334, 337 (6th Cir. 1991), the Sixth Circuit Court of Appeals rejected an approach to fees (in

24  chapter 13 cases) that dictated only a "normal and customary" fee should be awarded absent

25  exceptional results, the Sixth Circuit nonetheless acknowledged that:

26              The court can legitimately take into account the typical
               compensation that is adequate for attorney's fees in Chapter 13
27              cases, as long as it expressly discusses these factors in light of the
               reasonable hours worked and a reasonable hourly rate.  The
28              bankruptcy court also may exercise its discretion to consider other
               factors such as the novelty and difficulty of the issues, the special
               skills of counsel, the results obtained, and whether the fee awarded

1
2
            is commensurate with fees for similar professional services in non-
            bankruptcy cases in the local area.

3
4   950 F.2d at 338.  Thus, the twelve oft-cited Johnson and Kerr factors remain relevant for
5   determination of professional fees in a bankruptcy.

6   **C.      The Time and Labor Required**

7           The time for which compensation is sought is set forth, in detail, in the Firm's
8   professional fee statements contained in the exhibits hereto.  In light of the scope of services
9   rendered and the results achieved during the Fee Period, the Firm's services and time
10  expenditures are reasonable.

    **D.      The Novelty and Difficulty of the Questions Involved**

11          The case included a number of matters and issues requiring a high degree of knowledge
12  and skill.

13  **E.      The Skill Requisite to Perform the Legal Services Properly**

14          The Firm believes its professionals have exhibited a high level of skill in representing the
15  Debtors and dealing with issues and disputes regarding investigation of assets.

16  **F.      The Preclusion of Other Employment by the**
            **Professional Due to the Acceptance of the Case**
17

18          The case involved a number of matters and issues that required substantial amounts of
19  time clearly precluding the acceptance of alternative employment as to the many hours worked.

20  **G.      The Customary Fee**

21          The compensation the Firm seeks by way of this Application is the customary
22  compensation sought by the Firm and other professionals representing trustees, committees, and
23  debtors in similar circumstances.

24  **H.      Whether the Fee Is Fixed or Contingent**

25          The Firm seeks fixed compensation based on the lodestar formula, which it believes is
26  appropriate in this case.

27
28

1

2  **I.    Time Limitations Imposed by the Circumstances**

3          The time demands on the Firm have varied during the Fee Period, and have included

4  some periods of time where the Firm's consultants had to work very extensive hours for a

5  number of the matters that arose during the Fee Period.

6  **J.    The Amount Involved and the Results Obtained**

7          The Firm obtained excellent results for its work and the amounts incurred were

8  reasonable and appropriate.

9  **K.    The Experience, Reputation and Abilities of the Firm**

10         The experience, reputation, and abilities of the Firm's professionals are well known and

11  respected in this community.

12  **L.    The Undesirability of This Case**

13         This case was not undesirable.

14  **M.    The Nature and Length of the Professional Relationship with the Client**

15         Applicant has represented the Debtors since March 2009.

16  **N.    Awards in Similar Cases**

17         The award Applicant seeks in this case is similar to awards that professionals have

18  received in similar cases.   The Applicant's time reports are initially handwritten, entered

19  electronically into a data base, or recorded on tape by the consultant performing the described

20  services.  The time reports are organized on a daily basis.

21         The Firm's charges for its professional services are based upon the time, nature, extent

22  and value of such services, and the cost of comparable services in the Las Vegas area other than

23  in a case under the Bankruptcy Code.  The Firm will submit a declaration prior to the hearing on

24  this Application setting forth that the clients have reviewed the Firm's Fee Application and

25  setting forth their support thereof.

26         The requested fees and expenses shall be paid from the estate only as and when available.

27

28

# VII

## CONCLUSION

AG believes that the services rendered for which compensation is sought by this Application have been beneficial to the estate, that the costs incurred have been necessary and proper, and that the sums requested for the services rendered and costs incurred are fair and reasonable.

The interim compensation sought in this Application is not final. Upon the conclusion of this case, AG will seek final approval of fees and costs for the totality of the services rendered in this case. Any interim fees approved by the Court and received by AG will be credited against such final fees and costs as this Court may allow.

WHEREFORE, AG respectfully requests that this Court, issues an order: (i) allowing AG interim compensation for services rendered and expenses incurred during the Interim Period in the amount of $42,565.00, representing services rendered in the amount of $42,565.00 and expenses incurred in the amount of $0; (ii) authorizing and directing the Debtors to pay the unpaid balance of that amount, $6,384.75 to AG; and (iii) granting such other relief as the Court deems necessary and appropriate.

**DATED** this 14th day of August, 2009.

**Acceleron Group Advisors**

Acceleron Group
Ken Wiles
2791 Soft Horizon Way
Las Vegas, Nevada 89135
Telephone: 702-506-1825
Facsimile: 425-799-9659
Email: ken.wiles@accelerongroup.com

Consultants for Debtors and Debtors in Possession

## DECLARATION OF KENNETH W. WILES

I, Kenneth W. Wiles, declare:

a)      I am a managing director of Acceleron Group, LLC.

b)      I am familiar with the services rendered by Acceleron Group, LLC as Financial Advisors for the Debtors and Debtors in Possession.

c)      I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of August, 2009 at Las Vegas, Nevada.

Exhibit A



**Ken Wiles**
**Managing Director**
**Acceleron Group**

<u>Work History</u>

Ken joined Acceleron in March of 2007 and serves as a Managing Director. Acceleron, founded by a former Salomon Brothers analyst in New York, specializes in providing companies with investment banking and strategic financial advisory services, with an emphasis on restructuring and turnaround activities. Since January 2008, the firm has advised real estate and developer clients with more than $1.5 billion in liabilities. He is a member of the senior management team responsible for establishing the Company's strategic direction, leading business development activities, and directing client engagements. Acceleron's clients range from early stage companies to multi-national financial institutions.

Prior to Acceleron, Ken served as the CFO and Senior Vice President of Business Development of AppForge, Inc. The Company's premier product, Crossfire, enabled Microsoft Visual Studio developers to create mobile applications one time that could run on more than 600 mobile device. Crossfire was sold to Oracle Corporation (NASDAQ: ORCL) in April 2007. As senior Vice President of Business Development, led the company's strategic business relationships with companies including Nokia, Microsoft, Oracle, Palm, RIM, AT&T, and Symbian, among others. In addition, Ken was responsible for the finance, accounting, investor relations, human resources and MIS departments.

Before joining AppForge, Ken served as Vice President at Lloyd & Company, an investment banking firm that specialized in providing investment banking and strategic financial advisory services to middle-market companies. Ken led many of the firm's deal teams, which he helped plan, structure, negotiate and execute transactions.

Prior to his tenure at Lloyd & Company, Ken served as Chief Financial Officer for SOMAR, Inc., where he negotiated the asset purchase agreement of the company into a six-company roll-up and IPO that lead to the formation of TeleSpectrum Worldwide, Inc.

At TeleSpectrum he served initially as the company's Treasurer and then at the Vice President of Business Development.

Ken was also a Finance Professor at The University of North Carolina at Chapel Hill, and then served as an Adjunct Finance Professor in the Executive MBA Program for a total of 17 years. Ken is a published author with articles appearing in *The Journal of Financial Economics, The Journal of Empirical Finance, Financial Management,* and *Financial Analyst Journal*, among others.

He has also held positions in Liquidation Accounting at the Federal Deposit Insurance Corporation ("FDIC"); in the accounting department at Miller and Long, Inc., one of the nation's largest concrete subcontractors; and at Golembe Associates, a financial institutions investment banking firm. He also founded The Fulcrum Financial Group, a financial advisory and money management firm with more than $50 million under management.

Ken holds a PhD in finance from the University of Texas at Austin and a BA/BS in economics and finance, with honors from The American University, where he was a scholarship soccer player and member of Mortar Board. He is also a Chartered Financial Analyst ("CFA").

<u>Acceleron Bankruptcy Cases since January 2008</u>

Vantage Lofts, LLC, 2008 – Served as strategic financial advisor to the debtor. Developed comprehensive valuation and restructuring model.

Namwest, LLC, and related entities, 2008 - Served as strategic financial advisor to the debtor. Developed restructuring plan.

Millennium Properties, LLC and related entities – Served as strategic financial advisor to the debtors and developed restructuring plan.

ItalDiRoma, LLC (dba Roberto Cavalli) – Prepared and reviewed financial data for the Chapter 7 Filing ensuring the schedules and statements were accurate and all assets and liabilities were identified.

Inter-Shopping, LLC (dba Just Cavalli) – Prepared and reviewed financial data for the Chapter 7 Filing ensuring the schedules and statements were accurate and all assets and liabilities were identified.

<u>Representative Real Estate and Homebuilder Clients since January 2008</u>

Large regional homebuilder in Las Vegas – Served as strategic financial advisor, developed comprehensive valuation and restructuring plans for more than 10 properties and 7 lenders.

Large regional homebuilder and commercial developer in Las Vegas – Serve as strategic financial advisor for builder with more than 6 properties in Nevada and Utah and 5 lenders. Provided comprehensive valuation and restructuring plans for each property.

Large regional homebuilder in Las Vegas – Serve as strategic financial advisor for builder with more than 6 properties in Nevada and Utah and 5 lenders. Provided detailed valuation and restructuring plans for each property.

Large commercial develop in Las Vegas – Serve as strategic financial advisor for commercial developer with more than 9 projects in Nevada, Florida and Arizona, 6 lenders and 50 investors. Provided detailed valuation and restructuring plans for each property.

Large commercial developer in Las Vegas – Serve as strategic financial advisor for commercial developer with more than 20 projects in Nevada, Florida and Arizona, 8 lenders and 50 equity investors.

<u>Publications</u>

Journal of Empirical Finance
Volume 1, Issues 3-4, July 1994, Pages 313-341
Alternative constructions of Tobin's q: An empirical comparison
Steven B. Perfect (Department of Finance, College of Business, The Florida State University, Tallahassee, FL 32306-1042, USA) and Kenneth W. Wiles (Department of Finance, College of Business, The Florida State University, Tallahassee, FL 32306-1042, USA)

Journal of Empirical Finance
Volume 1, Issues 3-4, July 1994, Pages 313-341
Alternative constructions of Tobin's q: An empirical comparison
Steven B. Perfect (Department of Finance, College of Business, The Florida State University, Tallahassee, FL 32306-1042, USA) and Kenneth W. Wiles(The Kenan-Flagler Business School, The University of North Carolina at Chapel Hill, Campus Box 3490, Carroll Hall, Chapel Hill, NC 27599-3490, USA)

Financial Management, 1995, vol. 24, issue 3
Who Opts Out of State Antitakeover Protection?: The Case of Pennsylvania's SB 1310
Sunil Wahal, Kenneth W. Wiles and Marc Zenner (all The Kenan-Flagler Business School, University of North Carolina at Chapel Hill, Chapel Hill, NC 27599, USA)

Financial Analysts Journal
May/June 1995, Vol. 51, No. 3: 47-57
The Effects of Rebalancing on Size and Book-to-Market Ratio Portfolio Returns
Patrick Dennis (The Kenan-Flagler Business School, University of North Carolina at Chapel Hill, Chapel Hill, NC 27599, USA), Steven B. Perfect (Department of Finance, College of Business, The Florida State University, Tallahassee, FL 32306-1042, USA),

Karl N. Snow (Brigham Young University), and Kenneth W. Wiles (The Development Group, Inc., Salisbury, NC 28144, USA)

Journal of Financial Economics
Volume 40, Issue 2, February 1996, Pages 319-338
A requiem for the USA Is small shareholder monitoring effective?*1
Deon Strickland (The Kenan-Flagler Business School, University of North Carolina at Chapel Hill, Chapel Hill, NC 27599, USA), Kenneth W. Wiles (The Development Group, Inc., Salisbury, NC 28144, USA) and Marc Zenner (The Kenan-Flagler Business School, University of North Carolina at Chapel Hill, Chapel Hill, NC 27599, USA)

Education

University of Texas at Austin, PhD in Finance, 1991
    Received the University of Texas Continuing Fellowship and numerous teaching awards

American University, BA/BS in Economics and Finance, 1985
    Magna Cum Laude, Mortar Board, scholarship soccer player

CFA Institute, Chartered Financial Analyst Certification, 1993

Exhibit B

The Rhodes Companies, LLC., et al            Acceleron                         Group
Attn: Mr. Joe Schramm                                      Attn:          Mandy W. Townsend
4730 S. Fort Apache Rd.          2791                                     Soft Horizon Way
Suite 300          Las                                                    Vegas, Nevada 89135
Las Vegas, NV. 89147

| Acceleron Group | | | |
| Summary by Employee | | | |
| Name | Rate | Hours | Total |
|---|---|---|---|
| David Housey | $ 250.00 | 27.30 | $ 6,825.00 |
| Mandy Townsend | $ 350.00 | 78.50 | $ 27,475.00 |
| Ken Wiles | $ 475.00 | 17.40 | $ 8,265.00 |
| | | 123.20 | $ 42,565.00 |

| Acceleron Group | | | |
| Summary of Hours Billed by Category | | | |
| Description | Code | Hours | Amount |
|---|---|---|---|
| Case Administration | B110 | 5.90 | $ 2,065.00 |
| Projections and Modeling | B271 | 8.60 | $ 2,937.50 |
| Data Analysis | B280 | 71.70 | $ 24,572.50 |
| Valuation | B295 | 37.00 | $ 12,990.00 |
| | | 123.20 | $ 42,565.00 |

Exhibit B

| The Rhodes Companies, LLC., et al | Acceleron | Group |
|---|---|---|
| Attn: Mr. Joe Schramm | Attn: | Mandy W. Townsend |
| 4730 S. Fort Apache Rd.        2791 | | Soft Horizon Way |
| Suite 300        Las | | Vegas, Nevada 89135 |
| Las Vegas, NV. 89147 | | |

| | | Summary by Employee | | | | |
|---|---|---|---|---|---|---|
| | | **Ken Wiles** | | | | |
| B280 | Ken Wiles | Organized work plan with Mandy Townsend and David Housey.  Worked with Joe on organizational chart, year-end financial data and entity descriptions. | 4/1/2009 | 2.20 | $ | 1,045.00 |
| B271 | Ken Wiles | Meeting with debtors to discuss valuation model prepared by RH and review strategic objectives for engagement. | 4/2/2009 | 3.00 | $ | 1,425.00 |
| B280 | Ken Wiles | Met with attorney, reviewed filing documents, corporate organization, and filing strategy. | 4/2/2009 | 2.20 | $ | 1,045.00 |
| B280 | Ken Wiles | Conference call with debtors to discuss financial models provided by RH to creditors and discuss valuation. | 4/2/2009 | 0.50 | $ | 237.50 |
| B271 | Ken Wiles | Conference call with Sullivan group and debtors to establish information requirements from Sullivan Group and integration with Acceleron Group. | 4/3/2009 | 0.50 | $ | 237.50 |
| B295 | Ken Wiles | Developed valuation plan with Ken Perlman from Sullivan Group and with debtors.  Identified needed input data for Sullivan Group | 4/9/2009 | 2.00 | $ | 950.00 |
| B280 | Ken Wiles | Constructed valuation organizational chart. | 4/12/2009 | 2.00 | $ | 950.00 |
| B295 | Ken Wiles | Revised corporate organizational chart. | 4/13/2009 | 2.00 | $ | 950.00 |
| B280 | Ken Wiles | Organized work plan during conference call with Mandy Townsend and David Housey.  Reviewed asset chart, planned valuation process. | 4/16/2009 | 2.00 | $ | 950.00 |
| B280 | Ken Wiles | Organized work plan with Mandy Townsend and David Housey | 4/18/2009 | 1.00 | $ | 475.00 |
| | | | Total | | $ | 8,265.00 |

Exhibit B

The Rhodes Companies, LLC., et al    Acceleron    Group
Attn: Mr. Joe Schramm    Attn:    Mandy W. Townsend
4730 S. Fort Apache Rd.    2791    Soft Horizon Way
Suite 300    Las    Vegas, Nevada 89135
Las Vegas, NV. 89147    Vegas, Nevada 89135

**Summary by Employee**

| | | Mandy Townsend | | | |
|---|---|---|---|---|---|
| B280 | Mandy Townsend | Reviewed first day motions | 4/2/2009 | 2.30 | $ 805.00 |
| B280 | Mandy Townsend | Meeting at debtor's office with Edward Kim to discuss the current model that had been developed | 4/2/2009 | 1.20 | $ 420.00 |
| B295 | Mandy Townsend | Meeting with Joe Schramm, Edward Kim, Jeff Barcy, and Noel Bejarano from debtort's office to discuss the Acceleron approach to the valuation of debtor entities. | 4/2/2009 | 1.10 | $ 385.00 |
| B295 | Mandy Townsend | Meeting with Ken Wiles and David Housey to discuss the AG approach and the scenarios that will be evaluated as part of the valuation process for debtor's entities | 4/2/2009 | 1.40 | $ 490.00 |
| B280 | Mandy Townsend | Developing information request for the entities | 4/3/2009 | 0.70 | $ 245.00 |
| B280 | Mandy Townsend | Conference call with Sullivan Group and debtor | 4/3/2009 | 0.60 | $ 210.00 |
| B280 | Mandy Townsend | Meeting with the debtor team and counsel to discuss information requests and cash collateral hearing | 4/3/2009 | 1.90 | $ 665.00 |
| B295 | Mandy Townsend | Evaluating and reviewing information received | 4/3/2009 | 1.20 | $ 420.00 |
| B110 | Mandy Townsend | Client administration, setting up time tracker and preparing data for fee application | 4/6/2009 | 1.30 | $ 455.00 |
| B280 | Mandy Townsend | Meeting with debtor to discuss inventory tracking models for the debtor entities | 4/6/2009 | 1.60 | $ 560.00 |
| B280 | Mandy Townsend | Meeting with debtor to discuss request for information and the outstanding items | 4/6/2009 | 0.90 | $ 315.00 |
| B280 | Mandy Townsend | Reviewing 13 week cash flow model | 4/6/2009 | 1.70 | $ 595.00 |
| B280 | Mandy Townsend | Reviewing forecast projection of the on-going entities | 4/6/2009 | 1.50 | $ 525.00 |
| B280 | Mandy Townsend | Meeting to discuss deliverables and information requests | 4/8/2009 | 1.70 | $ 595.00 |
| B280 | Mandy Townsend | Compiling information for the entity valuation summary | 4/8/2009 | 1.40 | $ 490.00 |
| B280 | Mandy Townsend | Inputting the entity information into the summary format | 4/8/2009 | 1.80 | $ 630.00 |
| B295 | Mandy Townsend | Developing summary of entities for understanding the valuation of the company and where the assets are held | 4/8/2009 | 3.20 | $ 1,120.00 |
| B295 | Mandy Townsend | Discussing the status of the financials for each entity and where they stand in order to incorporate into the valuation summary | 4/8/2009 | 1.80 | $ 630.00 |
| B280 | Mandy Townsend | Inputting the entity information into the summary format | 4/9/2009 | 1.30 | $ 455.00 |
| B280 | Mandy Townsend | Discussions with debtor regarding the entity organizational chart and the request for me to complete | 4/9/2009 | 0.60 | $ 210.00 |
| B280 | Mandy Townsend | Meeting with Ken Wiles to discuss layout of the entity org chart | 4/10/2009 | 1.20 | $ 420.00 |

Exhibit B

The Rhodes Companies, LLC., et al        Acceleron                    Group
Attn: Mr. Joe Schramm                     Attn:              Mandy W. Townsend
4730 S. Fort Apache Rd.        2791                          Soft Horizon Way
Suite 300            Las                             Vegas, Nevada 89135
Las Vegas, NV. 89147

| | | Summary by Employee | | | | |
| | | Mandy Townsend | | | | |
|---|---|---|---|---|---|---|
| B280 | Mandy Townsend | Meeting with David Housey and Ken Wiles to discuss one page summaries for each entity and the layout | 4/10/2009 | 1.60 | $ | 560.00 |
| B280 | Mandy Townsend | Gathering information from the company regarding the financial data for each entity | 4/10/2009 | 0.80 | $ | 280.00 |
| B280 | Mandy Townsend | Providing information to counsel regarding the retention of Acceleron Group | 4/13/2009 | 0.50 | $ | 175.00 |
| B280 | Mandy Townsend | Reviewing the entity summary for court submission | 4/13/2009 | 1.50 | $ | 525.00 |
| B280 | Mandy Townsend | Requesting updates necessary to the summary chart and the entity org chart | 4/13/2009 | 0.30 | $ | 105.00 |
| B280 | Mandy Townsend | Making changes to org entity chart as requested by the company to ensure the valuation entity charge is consistent with the company chart being submitted to the court | 4/13/2009 | 1.80 | $ | 630.00 |
| B295 | Mandy Townsend | Meeting with Ken Wiles in regards to the entity org chart | 4/13/2009 | 1.20 | $ | 420.00 |
| B295 | Mandy Townsend | Reviewing year end financial data to understand asset make-up of each entity and making copies of files for development of the valuation model | 4/13/2009 | 2.30 | $ | 805.00 |
| B280 | Mandy Townsend | Meeting with debtor to discuss the business operations of the filing entities | 4/14/2009 | 2.20 | $ | 770.00 |
| B280 | Mandy Townsend | Compiling the data gathered for the filing entities into the summary document | 4/14/2009 | 3.40 | $ | 1,190.00 |
| B280 | Mandy Townsend | Formatting entity summary for court submission | 4/14/2009 | 2.50 | $ | 875.00 |
| B280 | Mandy Townsend | Making requested format changes for counsel on entity summary to be submitted to the court | 4/16/2009 | 2.80 | $ | 980.00 |
| B280 | Mandy Townsend | Updating financial data in entity summary given new data provided by the debtor | 4/16/2009 | 2.20 | $ | 770.00 |
| B280 | Mandy Townsend | Meeting with the accounting department to discuss classification of certain liabilities | 4/16/2009 | 1.30 | $ | 455.00 |
| B280 | Mandy Townsend | Discussions with counsel regarding request for changes to the summary document | 4/16/2009 | 0.30 | $ | 105.00 |
| B295 | Mandy Townsend | Meeting with debtor to discuss the companies current valuation model | 4/16/2009 | 1.00 | $ | 350.00 |
| B295 | Mandy Townsend | Internal meeting to discuss valuation development and how to incorporate the company's current model | 4/16/2009 | 0.50 | $ | 175.00 |
| B110 | Mandy Townsend | Review of retention application and answer additional questions from counsel | 4/20/2009 | 1.40 | $ | 490.00 |
| B110 | Mandy Townsend | Meeting with debtor to discuss the need for a strategy discussion regarding the valuation with counsel | 4/20/2009 | 0.50 | $ | 175.00 |

Exhibit B

The Rhodes Companies, LLC., et al     Acceleron             Group
Attn: Mr. Joe Schramm                         Attn:      Mandy W. Townsend
4730 S. Fort Apache Rd.      2791                Soft Horizon Way
Suite 300         Las                  Vegas, Nevada 89135
Las Vegas, NV. 89147

| | | Summary by Employee Mandy Townsend | | | |
|---|---|---|---|---|---|
| B280 | Mandy Townsend | Researching data request of counsel regarding compensation structure for executives in home building | 4/20/2009 | 1.40 | $ 490.00 |
| B295 | Mandy Townsend | Internal meeting with David H. and Ken W. to discuss strategy items for the valuation model development | 4/20/2009 | 0.90 | $ 315.00 |
| B280 | Mandy Townsend | Researching data request of counsel regarding compensation structure for executives in home building and downloading proxy statements as backup for court approval | 4/21/2009 | 1.20 | $ 420.00 |
| B295 | Mandy Townsend | Researching assets for the following entities Tick, Batcave, Wallboard, Overflow, Chalkline, Jackknife and pulling APN's from assessor's office to understand location | 4/21/2009 | 2.10 | $ 735.00 |
| B295 | Mandy Townsend | Locating financial statements for Rhodes Homes AZ, Rhodes AZ Properties, Pinnacle Grading | 4/21/2009 | 0.60 | $ 210.00 |
| B295 | Mandy Townsend | Organizing an asset org chart to lay out assets by entity, by development and by project | 4/21/2009 | 2.50 | $ 875.00 |
| B110 | Mandy Townsend | Providing information requested by counsel regarding the accelerant engagement | 4/22/2009 | 0.60 | $ 210.00 |
| B295 | Mandy Townsend | Completing Asset mapping of assets by project, entity and development | 4/22/2009 | 2.20 | $ 770.00 |
| B295 | Mandy Townsend | Discussion with debtor regarding the mapping of certain assets and location | 4/22/2009 | 0.80 | $ 280.00 |
| B295 | Mandy Townsend | Reviewing data provided and maps for properties in Rhodes Homes AZ and Rhodes AZ Properties to determine securitization by the credit facility | 4/22/2009 | 0.80 | $ 280.00 |
| B295 | Mandy Townsend | Reviewing mapping of properties in AZ and ownership structure for valuation purposes | 4/22/2009 | 1.20 | $ 420.00 |
| B295 | Mandy Townsend | Conference call with Ken W and David H to discuss current status of open projects | 4/23/2009 | 0.40 | $ 140.00 |
| B295 | Mandy Townsend | Cross-referencing the company's current model with the asset map to identify missing assets | 4/23/2009 | 3.20 | $ 1,120.00 |
| B110 | Mandy Townsend | Preparing final bill as requested by debtor and fee application for court submission | 4/25/2009 | 2.10 | $ 735.00 |
| | | | Total | | $ 27,475.00 |

Exhibit B

The Rhodes Companies, LLC., et al          Acceleron                    Group
Attn: Mr. Joe Schramm                              Attn:            Mandy W. Townsend
4730 S. Fort Apache Rd.         2791                               Soft Horizon Way
Suite 300              Las                                  Vegas, Nevada 89135
Las Vegas, NV. 89147

**Summary by Employee**

**David Housey**

| | | | | | | |
|---|---|---|---|---|---|---|
| B280 | David Housey | Meeting at debtor with Edward Kim to discuss the current model that has been developed | 4/1/2009 | 1.20 | $ | 300.00 |
| B280 | David Housey | Evaluating and reviewing information received | 4/1/2009 | 1.00 | $ | 250.00 |
| B295 | David Housey | Meeting with debtor to discuss the Acceleron approach to the valuation of debtor entities | 4/1/2009 | 1.10 | $ | 275.00 |
| B295 | David Housey | Meeting with Ken Wiles and Mandy Townsend to discuss the AG approach and the scenarios that will be evaluated as part of the debtor entities valuation process | 4/1/2009 | 1.40 | $ | 350.00 |
| B280 | David Housey | Meeting at debtor with internal team to structure organizational information and financial data | 4/10/2009 | 5.10 | $ | 1,275.00 |
| B280 | David Housey | Preparation of financial data (balance sheet and profit and loss statements) for the 15 entities | 4/10/2009 | 2.40 | $ | 600.00 |
| B280 | David Housey | Preparation of financial data (balance sheet and profit and loss statements) for the 17 entities | 4/11/2009 | 3.10 | $ | 775.00 |
| B280 | David Housey | Structure and format information summaries for 32 entities | 4/11/2009 | 2.50 | $ | 625.00 |
| B280 | David Housey | Edits and finalization of April 15th package | 4/14/2009 | 2.30 | $ | 575.00 |
| B295 | David Housey | Meeting at Rhodes Homes with Edward Kim to discuss structure and assumptions of internal cash flow model | 4/16/2009 | 2.10 | $ | 525.00 |
| B271 | David Housey | Financial model audit and organization | 4/18/2009 | 3.60 | $ | 900.00 |
| B271 | David Housey | Development, discussion and preparation of entity/development/project in relation to financial modeling needs | 4/20/2009 | 1.20 | $ | 300.00 |
| B271 | David Housey | Follow up conference call regarding available data and required model outputs | 4/23/2009 | 0.30 | $ | 75.00 |
| | | | Total | | $ | 6,825.00 |