James I. Stang, Esq. (CA Bar No. 94435)          E-File:  July 27, 2010
Shirley S. Cho, Esq. (CA Bar No. 192616)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: jstang@pszjlaw.com
           scho@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com

Attorneys for Reorganized Debtors

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br><br>Debtors. | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11 |
| Affects:<br>☐     All Debtors<br>☒     Affects the following Debtor(s)<br>Rhodes Homes Arizona, LLC; Rhodes Arizona Properties, LLC; and Elkhorn Investments, Inc. | Hearing Date:   September 13, 2010<br>Hearing Time:  9:30 a.m.<br>Courtroom 1 |

_(sidebar)_ LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

---

[1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

**MOTION FOR ORDER (A) APPROVING THE SALE OF CERTAIN OF THEIR ARIZONA ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363(F) FO THE BANKRUPTCY CODE; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS THERETO; AND (C) GRANTING RELATED RELIEF; <u>DECLARATIONS IN SUPPORT THEREOF</u>**

Rhodes Homes Arizona, LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc. (collectively, the "<u>Arizona Debtors</u>") hereby submit this motion ("the "<u>Motion</u>") pursuant to sections 105, 363 and 365 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (each a "<u>Bankruptcy Rule</u>," and collectively, the "<u>Bankruptcy Rules</u>") for an order (i) approving the sale (the "<u>Transaction</u>") of certain of the assets (the "<u>Arizona Assets</u>") of the Arizona Debtors to Sagebrush Enterprises, Inc. ("<u>Sagebrush</u>") pursuant to the Asset Transfer Agreement dated March 31, 2010 (the "<u>Agreement</u>"), or the successful bidder (the "<u>Successful Bidder</u>") as determined pursuant to the bidding procedures (the "<u>Bidding Procedures</u>") approved by this Court in the *Order Approving Stipulation and Bidding Procedures for the Sale of Certain of the Debtors' Arizona Assets; (B) Approving Form of Publication Notice; and (C) Scheduling Sale Hearing Date* [Docket No. 1075] (the "<u>Bid Procedures Order</u>") free and clear of all liens, claims, interests, and encumbrances (collectively, the "<u>Liens</u>"), with any such Liens to attached to the net proceeds of the sale with the same validity and priority as existed prior to the sale; (b) approving the assumption and assignment of unexpired leases and executory contracts (the "<u>Assumed Contracts</u>") listed on Schedule 1.1(b)(i) to the Asset Transfer Agreement attached hereto as **Exhibit A**; (c) authorizing the disbursement of proceeds of the sale; and (d) granting related relief.

In support of the Motion, the Arizona Debtors respectfully represent as follows:

## I.

## <u>JURISDICTION AND VENUE</u>

1.      On March 31, 2009, the above-captioned Debtors (the "<u>Primary Filers</u>") except Tuscany Golf Country Club, LLC, Pinnacle Grading, LLC, and Rhodes Homes Arizona, LLC (the "<u>Secondary Filers</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On April 1, 2009, the Secondary Filers filed

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  All references to Petition Date herein shall mean March 31, 2009 for the Primary Filers or April 1, 2009 for the Secondary Filers, as applicable.

2.      On February 12, 2010, the Bankruptcy Court approved the plan of reorganization (the "Plan") of the First Lien Steering Committee.  The Order confirming the Plan was entered on March 12, 2010.  [Docket No. 1053]  The Effective Date under the Plan occurred on April 1, 2010.  [Docket No. 1079]

3.      Under the terms of the Plan, the Bankruptcy Court's jurisdiction to enter this requested order was expressly reserved as follows:  "Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction to . . . Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code including, without limitation, the Arizona Assets Sale Order."  *See* Plan, Article XII.9 [Docket No. 1053].

## II.

## BACKGROUND

### A.      The Stalking Horse Bid and Arizona Assets

4.      Under the Plan, the Debtors have agreed to sell the Arizona Assets to Sagebrush Enterprises, Inc., which was a former affiliate of the Debtors (the "Stalking Horse Bidder" or "Sagebrush"), for $1,222,999 pursuant to the terms of the Asset Transfer Agreement dated April 16, 2010 (the  "Asset Transfer Agreement" or "Stalking Horse Bid").  A true and correct copy of the Asset Transfer Agreement is attached hereto as **Exhibit A**.  The Arizona Assets consist primarily of raw land in Arizona and miscellaneous personal property.  The Arizona Assets are set forth in more detail on the schedules to the Asset Transfer Agreement.  *See* Ex. A.

5.      There are certain parcels of land owned by the Arizona Debtors that are not duly reflected as owned by the Arizona Debtors based on the County of Mohave Recorder's, but rather as being owned by the Rhodes Entities, and vice versa.  The parties entered into a stipulation to resolve these title issues, which stipulation was approved by Order of this Court on June 23, 2010 [Docket No. 1188].

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

6.      It should be noted that one of the schedules listed in the Asset Transfer Agreement on Exhibit A hereto indicates that the schedule is "TBD" or to be determined.  At the time of entry of the Bidding Procedures Order, the Arizona Debtors had not yet finalized the Asset Purchase Agreement with the Stalking Horse Bidder.  Stanley Consultants, Inc. ("Stanley") has asserted a property interest in certain of the Arizona Assets as set forth in the exhibits to Stanley's *Objection to Sufficiency of Disclosure Statement for the Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code for the Rhodes Companies, LLC, et. al.* [Docket No. 617] (the "Stanley Materials").  Therefore, the Arizona Debtors agreed with Stanley that prior to marketing or transferring the Arizona Assets with the Stanley Materials included as part of the Arizona Assets, the Debtors or Reorganized Debtors, as applicable, would (i) obtain an order from the Bankruptcy Court determining the extent of the Debtors' interests or Reorganized Debtors' interests, as applicable, in such Stanley Materials that the Debtors can transfer under applicable law or (ii) file a notice of intention to not sell the Stanley Materials and Stanley shall retain the right to dispute the transfer of the Stanley Materials.  [Docket No. 1075]

7.      The Stalking Horse Bidder has subsequently determined that it desires to purchase certain of the Stanley Materials.  Therefore, in accordance with the Bidding Procedures Order, the Arizona Debtors will file a separate motion to transfer certain of the Stanley Materials for hearing before this Court.

8.      The Arizona Debtors are informed by the Stalking Horse Bidder that it will seek a purchase price adjustment if certain personal property items, including the certain Stanley Materials, are not included in the final Asset Transfer Agreement.  The Arizona Debtors disagree that the Stalking Horse Bidder is entitled to a purchase price adjustment and reserve all of their rights and arguments on the issue.

9.      The Arizona Assets are being sold on an "as is, where is" basis without any representations or warranties.

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

**B.    The Bidding Procedures**

10.    At a hearing on March 11, 2010, the Court approved the Bidding Procedures to sell the Arizona Assets, which Order was entered on March 31, 2010 [Docket No. 1075].   The final Bidding Procedures were filed with this Court on May 4, 2010 [Docket No. 1114]. Pursuant to the Bidding Procedures, all bids for the Arizona Assets are due by August 30, 2010. If any Qualified Bids are received (as defined in the Bidding Procedures), the Arizona Debtors shall hold an auction on September 7, 2010.

11.    The Stalking Horse Bid will be subject to overbid pursuant to the Bidding Procedures Order.  Sagebrush will not be receiving a break-up fee or expense reimbursement on account of its efforts as the Stalking Horse Bidder.  At the closing, pursuant to section 363(f) of the Bankruptcy Code, each Arizona Debtor shall transfer and deliver by way of quit claim deed and bill of sale, to the Stalking Horse Bidder or the Successful Bidder under the Bidding Procedures (the "Purchaser") all of their title and interest in the Arizona Assets.

12.    Consistent with the Bidding Procedures, the Stalking Horse Bidder has already deposited $611,500, which is 50% of the Purchase Price into escrow with a third-party title company.

**C.    Marketing Efforts**

13.    On April 15, 2010, the Reorganized Debtors hired Colliers International, a pre-eminent real estate brokerage firm for the marketing of the Arizona Assets.  Attached hereto is the declaration of Michael Stuart, Colliers International, along with his resume, which is attached at **Exhibit B**.  Colliers International conducted an extensive marketing campaign of the Arizona assets that reached out to several thousand strategic parties including land banking companies, homebuilders, real estate investment professionals, and other potential strategic interested parties.  All told, Colliers International marketed the Arizona Assets to over 8,500 strategic parties beginning in April 2010 and continuing through the Bid Deadline through various email announcements, direct contact, or targeted mailings.

14.    In addition to the 8,500 strategic parties mentioned above, Colliers International also reached out to over 3,500 strategic brokers in Las Vegas and the West Coast and their own

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

internal network of over 4,400 brokers within the Colliers International network.  In addition to contacting the 7,900 brokers, Colliers also posted the Arizona Assets for sale on established two real estate broker websites beginning in May 2010 – Costar and Property Line.

15.    Colliers International established a dedicated website for the Arizona Assets at www.rhodesarizonaassets.com to which interested parties were directed, which had over 758 hits as of the time of July 20, 2010.  Colliers fielded dozens of calls from interested parties.

16.    The Debtors also served the Bidding Procedures on all known potential bidders on March 31, 2010.  [Docket Nos. 1078, 1119].  The Debtors posted signage on the land itself indicating that the land was for sale in March 2010.  The Debtors also published the Bidding Procedures, which contains the Bid Deadline and Auction information, as well as the contact information of their broker, on May 11, 2010 in the Las Vegas Review Journal and the Kingman Daily Miner [Docket No. 1126].

17.    As a result of the above efforts, as of the date and time of the filing of this Motion, 18 parties had executed confidentiality agreements with the Arizona Debtors to access the confidential due diligence data room.  The bid deadline has not yet passed as of the date of the filing of this Motion.  The Arizona Debtors will file a supplemental declaration detailing the results of the Bid Deadline and the Auction, if any.

### III.

### RELIEF REQUESTED

18.    The Arizona Debtors hereby request that this Court authorize and approve the proposed order, which is attached as Exhibit D to the Asset Transfer Agreement, (a) for the sale of the Arizona Assets to the Stalking Horse Bidder pursuant to the Asset Purchase Agreement, or, alternatively, to the Successful Bidder pursuant to the Bidding Procedures, free and clear of all Liens, with any such Liens to attached to the net proceeds of the sale with the same validity and priority as existed prior to the sale; (b) the assumption and assignment of the Assumed Contracts to the Stalking Horse Bidder or the Successful Bidder; and (c) and for such further relief as is just and proper under the circumstances.

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

# IV.

## ARGUMENT

**A.**   **Cause Exists to Approve the Sale of the Arizona Assets Under Section 363(b) of the Bankruptcy Code**

Section 363(b)(1) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

A debtor's application of its sound business judgment in the use, sale, or lease of property is subject to great judicial deference.  *See, e.g.*, *In re Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990).  A sale of a debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business reason exists for doing so.  *See Stephens Indus. V. McClung*, 789 F. Ed 386, 390 (6th Cir. 1986) ("bankruptcy court can authorize a sale of all a chapter 11 debtor's assets under [Section] 363(b)(1) when a sound business purpose dictates such action."); *In re Continental Airlines, Inc.,* 780 F.2d 1223, 1226 (5th Cir. 1986); *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business . . . whether the proffered business justification is sufficient depends on the facts of the case.)  As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike."); *In re Canyon P'ship*, 55 B.R. 520 (Bankr. S.D. Cal. 1985).

In determining if a sound business justification exists for the sale of a debtor's property, the Court, among other factors, should consider (a) the consideration to be paid, (b) the financial condition and needs of the debtor, (c) the qualifications of the buyer, and (d) whether a risk exists that the assets proposed to be sold would decline in value if left in the debtor's possession. *See Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp.)*, 492 F.2d 793,

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

794 (9th Cir. 1974) (affirming trial court's finding that the proposed sale of the debtor's assets would be in the best interest of the estate in light of impending deterioration of market value of debtor's assets), *cert. denied sub nom*, *Herman Inv. Co. v. Loeffler*, 419 U.S. 964 (1974).

The Arizona Debtors and the First Lien Steering Committee have concluded that the sale of the Arizona Assets to the Stalking Horse Bidder or the Successful Bidder will maximize value for the estates.  Here, the proposed sale of the Arizona Assets will be tested through an auction to the highest and best bid available under the circumstances.  Consequently, the fairness and reasonableness of the consideration to be received by the Arizona Debtors ultimately will be demonstrated by adequate "market exposure" via the extensive marketing of the Arizona Assets and the auction process, which, taken together, afford the best available mechanism for establishing the fairness and reasonableness of a purchase price.  The Arizona Debtors have therefore determined, in the exercise of their business judgment, that the sale of the Arizona Assets to the Stalking Horse Bidder or the Successful Bidder is in the best interests of their estates.

**B.**      **The Sale of the Arizona Assets Should be Free and Clear of Liens Pursuant to Section 363(f)**

Section 363(f) of the Bankruptcy Code expressly authorizes a debtor to sell property outside the ordinary course of business "free and clear of any interest in such property of an entity" if any one of the five following conditions is met:

(a)      applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(b)      such entity consents;

(c)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d)      such interest is in bona fide dispute; or

(e)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

11 U.S.C. § 363(f).  Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale of homes.  *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) (stating that court may approve sale "free and clear" provided at least one of the subsections of 363(f) is met); *In re Gulf States,* 285 B.R. 497 (Bankr. N.D. Ala. 2002); *In re 18th Ave. Dev. Corp. v. Modular Paving, Inc. (In re 18th Ave. Dev. Corp.),* 14 B.R. 862, 863-4 (Bankr. S.D. Fla. 1981) (stating that section 363(f) indicates that before sale of property may be authorized "free and clear" only one of five conditions must be met).

Under section 363(f)(2) of the Bankruptcy Code, a trustee may sell estate property free and clear of liens, claims, interests, and encumbrances (the "Liens") if the entity asserting the interest consents.  To the extent that any other party asserting a Lien receives notice of this Motion and does not file a written objection hereto, such party should be deemed to have consented to the sale of the assets free and clear of its asserted Lien.  *See In re Channel One Commc'ns, Inc.,* 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990).  To the extent that any objection is received on the basis that the sale of the Arizona Assets cannot be sold free and clear of Liens pursuant to section 363(f), the Arizona Debtors reserve their right to argue that any of the other basis under 363(f) apply.

**C.    Assumption and Assignment of the Assumed Contracts is Appropriate**

The Bankruptcy Code provides, in pertinent part, that a trustee or debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Section 365(b)(1) sets forth the requirements for assuming an unexpired lease or executory contract, providing in pertinent part that:

> (b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default….;

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

> (B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)    provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

Section 365(f)(2) of the Bankruptcy Code, provides the authority for the Arizona Debtors to assign executory contracts and leases as follows:

> (1)  [N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.
>
> (2)  The trustee may assign an executory contract or executory lease of the debtor only if —
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(1) and (2).

Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor's decision to assume an executory contract, courts have consistently applied a "business judgment" test when reviewing such a decision. *See, e.g., Group of Institutional Investors v. Chicago, Milwaukee St. Paul & Pacific Rail Road Co.*, 318 U.S. 523, 550 (1943); *In re Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007); *Matter of Telco, Inc.*, 558 F.2d 1369, 1173 (10th Cir. 1977); *Matter of Minges*,

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

602 F.2d 38, 43 (2nd Cir. 1979); *In re Chi-Feng Huang*, 23 B.R. 798, 800 (B.A.P. 9th Cir. 1982).

A debtor satisfies the "business judgment" test when it determines, in good faith, that assumption of an executory contract will benefit the estate and the unsecured creditors. *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D.N.C. 1986); *In re Chipwich Inc.*, 54 B.R. 427, 430-31 (Bankr. S.D.N.Y. 1985). The Debtors have determined in the exercise of their business judgment that the proposed assumptions and assignments are in the best interest of creditors because the Assumed Contracts are required to be transferred in connection with the Asset Transfer Agreement.

The Arizona Debtors do not believe that any cure amounts are owing on account of the Assumed Contracts. A list of the cure amounts for each Assumed Contract was previously served upon each counter party to the Assumed Contract on April 16, 2010 (the "Cure Notice"). [Docket Nos. 1098, 1109]. The Cure Notice provided that if any counterparty to the Assumed Contract contested the cure amount reflected in the Cure Notice, that any objection was due by May 3, 2010. *See* Docket No. 1098. As of the date and filing of this Motion, the Arizona Debtors have not received any objections from the counterparties to the Assumed Contracts on account of the proposed cure amounts.

Information regarding the financial wherewithal of Sagebrush will be provided to the parties to the Assumed Contracts upon request. Under these circumstances, the Debtors submit that they have established the requisite adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code with respect to the assumption and assignment of the Assumed Contracts.

### D.    The Court Should Find The Transaction Is In Good Faith

"[W]hen a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 149-50 (3rd Cir. 1986). The purpose of such a finding is to facilitate the operation of section 363(m) of the Bankruptcy Code, which provides a safe harbor for purchasers of a debtor's property when the purchase is made in "good faith." Specifically, section 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m); *see also Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 280 (9th Cir. 1992); *Irvin v. Lincoln Heritage Life Ins. Co. (In re Irvin)*, 950 F.2d 1318, 1323 (7th Cir. 1991). This provision serves the important purposes both of encouraging good faith transactions and of preserving the finality of the bankruptcy court's orders unless stayed pending appeal. *Abbotts Dairies*, 788 F.2d at 147; *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983). As recognized by the Seventh Circuit, "[i]f purchasers at judicially approved sales of property of a bankrupt estate, and their lenders, cannot rely on the deed that they receive at the sale, it will be difficult to liquidate bankrupt estates at positive prices." *In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992). The Seventh Circuit has also noted that, although the law balances the competing interests between lien holders and purchasers of assets of the estate, it weighs such interests "heavily in favor of the bona fide purchaser." *Id.* at 643.

Here, the Transaction is the result of extensive and arms-length negotiation between two independent parties. Although previously the Stalking Horse Bidder was an affiliate of the Arizona Debtors, at the time that the parties entered into the Asset Purchase Agreement, which was after the Effective Date, the Stalking Horse Bidder was no longer an affiliated entity of the Arizona Debtors. Both the Arizona Debtors and the Stalking Horse Bidder were represented by separate bankruptcy and corporate counsel. Moreover, the Transaction has been extensively marketed and is subject to overbids. Accordingly, the Debtors submit that the Transaction is in good faith and the Stalking Horse Bidder or the Successful Bidder should be entitled to the protection afforded to good faith purchasers under section 363(m) of the Bankruptcy Code.

## VI.

## <u>NOTICE</u>

The Arizona Debtors will serve the notice of hearing of this Motion by first-class mail, postage prepaid, upon the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) counsel for the Official Committee of Unsecured Creditors; (iii) counsel to the Stalking Horse Bidder; (iv) counterparties to the Assumed

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

1    Contracts; (v) any party who has executed a confidentiality agreement with the Arizona Debtors

2    for the purchase of the Arizona Assets as of the date of filing of this Motion; (vi) all entities

3    known to have asserted any Lien against the Arizona Assets; (vii) all federal, state, and local

4    regulatory or taxing authorities or recording offices which have a reasonably known interest in

5    the relief requested by the Motion; (viii) the Internal Revenue Service; and (ix) all parties who

6    have requested notice in these cases.  The Arizona Debtors submit that, in light of the nature of

7    the relief requested, no other or further notice need be given.

8          The Arizona Debtors submit that the above notice is reasonable and appropriate and

9    should be approved by this Court as adequate and sufficient notice.

10

11                                   **V.**

12                             **<u>CONCLUSION</u>**

13          For the foregoing reasons, the Debtors respectfully request that the Court grant the

14    Motion.

15    **DATED** this 27th day of July, 2010.

16                                              LARSON & STEPHENS

17

                                               _/s/ Zachariah Larson, Esq._
18                                             Zachariah Larson, Bar No. 7787
                                               Kyle O. Stephens, Bar No. 7928
19                                             810 S. Casino Center Blvd., Suite 104
                                               Las Vegas, NV  89101
20                                             702/382-1170
                                               Attorneys for Reorganized Debtors
21

22

23

24

25

26

27

28

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

## **DECLARATION OF JUSTIN BONO**

I, Justin Bono, declare as follows:

1.      I am over the age of eighteen years and have personal knowledge of the facts set forth herein and, if called upon as a witness, I could and would competently testify based on my personal knowledge, and on information and belief where indicated, as to all of the matters stated herein.

2.      I am the Vice President and Treasurer of DHNV, LLC, which is the manager for Las Vegas Land Holdings, LLC.  Las Vegas Land Holdings, LLC is the parent company for the Reorganized Debtors.  I submit this declaration in support of the Motion.

3.      Attached hereto as Exhibit A is a true and correct copy of the Asset Transfer Agreement.

4.      The Arizona Debtors are selling the Arizona Assets pursuant to the Plan and the Asset Transfer Agreement.  The sale of the Arizona Assets will generate $1,222,999 million or more for the Arizona Debtors.  The Arizona Debtors have concluded that the sale of the Arizona Assets to the Stalking Horse Bidder or the Successful Bidder will maximize value for the estates. Here, the proposed sale of the Arizona Assets will be tested through an auction to the highest and best bid available under the circumstances.  Consequently, the fairness and reasonableness of the consideration to be received by the Arizona Debtors ultimately will be demonstrated by adequate "market exposure" via the extensive marketing of the Arizona Assets and the auction process, which, taken together, afford the best available mechanism for establishing the fairness and reasonableness of a purchase price.  The Arizona Debtors have therefore determined, in the exercise of their business judgment, that the sale of the Arizona Assets, including the assumption and assignment of the Assumed Contracts, to Sagebrush or the Successful Bidder is in their best interests.

5.      The Transaction is the result of extensive and arms-length negotiation between two independent parties.  Although previously the Stalking Horse Bidder was an affiliate of the Arizona Debtors, at the time that the parties entered into the Asset Purchase Agreement, which

was after the Effective Date, the Stalking Horse Bidder was no longer an affiliated entity of the Arizona Debtors. Both the Arizona Debtors and the Stalking Horse Bidder were represented by separate bankruptcy and corporate counsel. Moreover, the Transaction has been extensively marketed and is subject to overbids.

6.    The Arizona Assets have been extensively marketed, as set forth in the Declaration of Michael Stuart in support of the Motion. In addition, the Debtors posted signage on the property indicating that the land was for sale beginning in March 2010.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 27th day of July, 2010, at Dallas, Texas.

Justin Bono

## DECLARATION OF MICHAEL STUART

I, Michael Stuart, declare as follows:

1.      I am over the age of eighteen years and have personal knowledge of the facts set forth herein and, if called upon as a witness, I could and would competently testify based on my personal knowledge, and on information and belief where indicated, as to all of the matters stated herein.

2.      I am a Senior Vice President of Land Division at Colliers International – Las Vegas Division.  I have over 18 years of experience as a real estate broker.  Colliers International is an international real estate brokerage firm with offices in over 60 countries worldwide across 480 offices.  A copy of my biography is attached hereto as Exhibit B.  The Debtors engaged Colliers International on April 15, 2010 for the marketing of the Arizona Assets.  I have principal responsibility on this engagement on behalf of Colliers International.

3.      Colliers International conducted an extensive marketing campaign of the Arizona Assets that reached out to several thousand strategic parties including land banking companies, homebuilders, real estate investment professionals, and other potential strategic interested parties.  All told, Colliers International marketed the Arizona Assets to over 8,500 strategic parties beginning in April 2010 and continuing through the Bid Deadline through various email announcements, direct contact, or targeted mailings.

4.      In addition to the 8,500 strategic parties mentioned above, Colliers International also reached out to over 3,500 strategic brokers in Las Vegas and the West Coast and their own internal network of over 4,400 brokers within the Colliers International Network.  In addition to contacting the 7,900 brokers, Colliers also posted the Arizona Assets for sale on two established real estate broker websites beginning in May 2010 – Costar and Property Line.

5.      Colliers International established a dedicated website for the Arizona Assets at www.rhodesarizonaassets.com to which interested parties were directed, which had over 758 hits as of the time of the filing of this Motion.  I fielded dozens of calls from interested parties.

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

6.      As of the date and time of the filing of this Motion, 18 parties had executed confidentiality agreements with the Arizona Debtors to access the confidential due diligence data room.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 26th day of July, 2010, at Las Vegas, Nevada.

_____
Michael Stuart

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

# EXHIBIT A

EXECUTION COPY

## ASSET TRANSFER AGREEMENT

**THIS ASSET TRANSFER AGREEMENT** (this "*Agreement*"), dated April 16, 2010, is by and among each of (i) Rhodes Arizona Properties, LLC, a Nevada limited liability company ("*RAP*"), (ii) Elkhorn Investments, Inc., a Nevada corporation ("*EII*"), and (iii) Rhodes Homes Arizona LLC, an Arizona limited liability company (together with RAP and EII, the "*Arizona Entities*")), and Sagebrush Enterprises, Inc., a Delaware corporation ("*Purchaser*" and collectively with the Arizona Entities, the "*Parties*").

## RECITALS

A.      **WHEREAS**, on either March 31, 2009 or April 1, 2009, the Arizona Entities, as well as certain other affiliated entities, each filed voluntary petitions for relief (the "*Voluntary Petitions*") under chapter 11 of the United States Code, 11 U.S.C. § § 101-1532 (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Nevada (the "*Bankruptcy Court*").

B.      **WHEREAS**, the Arizona Entities desire to transfer certain of their respective assets listed on Schedule I and Schedule II to Purchaser (the "*Arizona Assets*") at the Closing, in the manner and subject to the terms and conditions set forth herein and as authorized under sections 105, 363 and 365 of the Bankruptcy Code.  All other assets of the Arizona Entities shall be retained by the Arizona Entities and excluded from the transfer, including, without limitation, any rights and obligations associated with the Stanley litigation that is currently pending in the County of Maricopa Superior Court for the State of Arizona entitled *Rhodes Homes Arizona, LLC v. Stanley Consultants, Inc.*, Case No. CV 2006-011358.

C.      **WHEREAS**, although owned by the Arizona Entities, the title of the Arizona Assets listed on Schedule II is currently not titled in the name of the Arizona Entities and is the subject of a request by the Parties pending in the Bankruptcy Court to quitclaim title back to the Arizona Entities.

**NOW, THEREFORE**, in consideration of the promises, the respective representations, warranties, covenants and agreements contained in this Agreement, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties agree as set forth below.

## ARTICLE 1
## TRANSFER OF ARIZONA ASSETS

1.1      <u>Transfer of Arizona Assets</u>.

(a)      <u>Transfer</u>.  At the Closing, all of the Arizona Entities' right, title and interest in and to the Arizona Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "*Interests*") in accordance with Bankruptcy Code § 363(f), with such Interests to attach to the net proceeds of the sale of the Arizona

Assets, except as to permitted encumbrances that are identified by the Bidder prior to the Closing with the consent of the Arizona Entities.

(b)     <u>Assumed Liabilities</u>.  At the Closing, Purchaser shall assume and become responsible for only the following liabilities and obligations of the Arizona Entities: (i) all liabilities under the contracts listed on <u>Schedule 1.1(b)(i)</u> (the "***Assumed Contracts***") whether arising before or after the Closing, and (ii) any amounts required by section 365(b)(1) of the Bankruptcy Code to cure any defaults by the Arizona Entities under an Assumed Contract and to pay any actual pecuniary losses that have resulted from such defaults under such Assumed Contract.  If the Purchaser is not the Successful Bidder under the Bidding Procedures and the Successful Bidder does not want to assume any or all of the Assumed Contracts, then the Purchaser shall accept assignment of any such Assumed Contract upon written notice by the Debtors to the Purchaser.

(c)     <u>Bond</u>.  At the Closing, the Purchaser shall, at its sole election, either (i) assume, replace, or post cash in lieu of that certain early grading/street alignment bond in the amount of $250,000 issued by Bond Safeguard in favor of the County of Mohave dated May 9, 2006 (further identified as Bond Safeguard Bond No. 5022081) (the "***Original Bond***"), with a grading bond of equal amount in form and substance acceptable to the Arizona Entities, or (ii) if the Purchaser does not assume or replace the Original Bond, then by this Agreement the Purchaser agrees that it shall indemnify and hold harmless the Arizona Entities for all loss, cost, damages, claims, demands or payments, including but not limited to consequential damages, that arise in connection with or relating to the Original Bond, which indemnification shall be supported by a first priority deed of trust to be recorded against the Arizona Assets in favor of the Arizona Entities.

**1.2     Closing**.  The closing (the "***Closing***") of the transactions contemplated hereby (the "***Transactions***") will take place on the date (the "***Closing Date***") that is five business days following the date that the Sale Order (as hereinafter defined) has been entered by the Bankruptcy Court (or such other date mutually acceptable to the Arizona Entities and Purchaser) at the offices of Greenberg Traurig, LLP, 3773 Howard Hughes Parkway, Suite 400 North, Las Vegas, NV 89169.

**1.3     Purchase Price.**  At the Closing, Purchaser shall pay to the Arizona Entities, by wire transfer of immediately available funds, an amount in cash equal to $1,222,999, plus any Overbid (as such term is defined in the Bidding Procedures Order (as hereinafter defined)) (the "***Purchase Price***"), by wire transfer to the account designated by the Arizona Entities to Purchaser.

**1.4     Deposit**.  Concurrent with Purchaser's execution of this Agreement, Purchaser shall open an escrow (the "***Escrow***") with Nevada Title Company ("***Escrow Holder***"), and shall deposit an amount equal to the fifty percent (50%) of the Purchase Price into Escrow, which shall be invested in an interest-bearing account or shall post an irrevocable letter of credit in favor of the Arizona Entities (the "***Cash Deposit***").  In addition, concurrent with Purchaser's execution of this Agreement, Purchaser shall provide a letter from a financial institution showing proof of funds for the remaining 50% of the Purchase Price, or $611,499.50, which letter shall be

reasonably acceptable to the Arizona Entities.  The Cash Deposit and any interest earned thereon, together with the Letter of Credit and any proceeds from draws therefrom by the Arizona Entities or Escrow Holder are hereinafter collectively referred to as the "***Deposit***".  The Deposit shall be applied toward the payment of the Purchase Price upon the Closing, and shall be non-refundable (except if the Closing fails to occur because of the failure of one of Purchaser's Conditions Precedent set forth in Section 4.1(a), and terminated pursuant to Section 4.3 hereof).  Any other amounts due from Purchaser in connection with the Closing, including but not limited to closing costs, escrow fees and pro-rated real property taxes, shall be payable in cash by wire of funds into the account of Escrow Holder upon the Closing.

As a covenant which shall survive the Closing:  (i) all income and expenses relating to the Arizona Assets (including property taxes and assessments) shall be prorated as of and including the Closing Date, (ii) all supplemental taxes, front foot benefit charges, and similar expenses billed after the Closing Date for periods prior to the Closing Date will be paid promptly by the Arizona Entities, and (iii) any refunds for same received by Purchaser which are allocable to the period prior to the Closing Date will be paid promptly by Purchaser to the Arizona Entities.  Purchaser shall be responsible for paying (i) its due diligence costs, (ii) title insurance premiums for the any title policy obtained by Purchase in connection with the Arizona Assets, (iii) one-half of the fee of Escrow Holder, and (iv) in the event Purchaser obtains an ALTA survey, the cost of such survey.  Arizona Entities shall be responsible for paying for one-half of the fee of Escrow Holder.  All other normal closing costs shall be paid in accordance with the custom of the county in which the Arizona Assets are located.  The parties shall execute such additional instructions reasonably required by Escrow Holder, provided that if there is a conflict between such instructions and this Agreement, the terms of this Agreement will govern.

      1.5    <u>**Deliveries.**</u>  On the Closing Date,

      (a)    The Arizona Entities shall deliver or cause to be delivered to Purchaser:

      (i)  a bill of sale and a quit claim deed, each duly executed by the Arizona Entities in the forms of <u>Exhibits A</u> and <u>B</u> hereto;

      (ii)  such other bills of sale, certificates of title or origin, deeds, assignments and other instruments of transfer or conveyance or as may be otherwise necessary to evidence and effect the assignment and delivery of the Arizona Assets to Purchaser; and

      (b)    the Purchaser shall deliver or caused to be delivered the Purchase Price to the Arizona Entities and the replacement to the Original Bond, if applicable.

      (c)    The documents listed in (a) above shall be referred to as the "***Transaction Documents***".

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants that the statements contained in this <u>ARTICLE 2</u> are true, correct and complete on the date hereof.

**2.1** **Power and Authority; Enforceability.**  Purchaser has the corporate power and authority necessary to execute and deliver each Transaction Document and this Agreement to which it is a party and to perform and consummate the Transactions.  Purchaser has taken all action necessary to authorize the execution and delivery by it of each Transaction Document to which it is a party, the performance of its obligations thereunder, and the consummation by it of the Transactions.  Each Transaction Document to which Purchaser is a party has been duly authorized, executed and delivered by such person or entity and is enforceable against it in accordance with its terms.

**2.2** **No Violation.**  The execution and the delivery by Purchaser of this Agreement and the other Transaction Documents to which it is a party, the performance by them of its obligations hereunder and thereunder, and the consummation of the Transactions by them will not (a) with or without notice or lapse of time, constitute or create a breach or violation of, or default under, any (i) law, rule, regulation or Order ("*Law*") enacted, adopted, promulgated or applied by any legislature, agency, bureau, branch, department, division, commission, court, tribunal or other similar recognized organization or body of any federal, state, county, municipal, local or foreign government or other similar recognized organization or body exercising similar powers or authority (a "*Governmental Body*"), (ii) order, ruling, decision, award, judgment, injunction or other similar determination or finding by, before or under the supervision of any Governmental Body or arbitrator (an "*Order*"), (iii) contract or (iv) permit, license, authorization, registration, franchise, approval, certificate, exemption, variance and similar right obtained, or required to be obtained from a Governmental Body (a "*Permit*") to which, in the case of (i), (ii), (iii) or (iv), Purchaser is a party or by which it or its assets are bound, (b) require any consent, approval, notification, waiver or other similar action under any contract or organizational document to which Purchaser is a party or by which it or its assets are bound or (c) require any Permit under any Law or Order.

**2.3** **Due Diligence.**  The Purchaser acknowledges and represents that it has received the due diligence package provided by the Arizona Entities in connection with the sale of the Arizona Assets and has had an opportunity to conduct any and all due diligence regarding the Arizona Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Arizona Assets in making its bid, and that has nor relied upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Arizona Assets, or the completeness or accuracy of any information provided in connection therewith.  **PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT DELIVERY OF ANY INFORMATION REGARDING THE ARIZONA ASSETS TO PURCHASER BY ARIZONA ENTITIES DOES NOT AND SHALL NOT CONSTITUTE A REPRESENTATION OR WARRANTY BY ARIZONA ENTITIES.  FURTHERMORE, PURCHASER HEREBY ACKNOWLEDGES THAT THE ARIZONA ENTITIES MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING THE NATURE OR QUALITY OF THE ARIZONA ASSETS AND THE ARIZONA ENTITIES WILL NOT BE LIABLE FOR ANY INACCURATE OR INCOMPLETE INFORMATION PROVIDED TO THE PURCHASER AND THE PURCHASER RETAINS THE SOLE AND EXCLUSIVE RESPONSIBILITY TO INDEPENDENTLY CONFIRM ANY AND ALL INFORMATION PROVIDED BY THE ARIZONA ENTITIES.**

    **2.4**    <u>**Commissions**</u>.  Purchaser hereby represents and warrants that it is not now, nor has ever been represented by any broker with respect to the transactions contemplated herein.  In the event of any claims for broker's or finder's fees in connection with the execution and consummation of this Agreement, Purchaser shall protect, indemnify and defend the Arizona Entities from and against such claims if they shall be based upon any statement or representation or agreement by Purchaser.  The Arizona Entities shall be responsible for paying all of the fees of Colliers International.

<div align="center">

**ARTICLE 3**
**AS IS, WHERE IS**

</div>

    The sale of the Arizona Assets shall be on an "as is, where is", "with all faults" basis and without representations or warranties of any kind, nature, or description by the Arizona Entities, its agents or its estates, including without limitation representations and warranties as to physical condition, title, ownership, authorization to sell, acreage, leases, rents, revenues, income, expenses, operation, zoning or other regulation, compliance with state or federal law, compliance with environmental or hazardous materials law, suitability for particular purposes or any other matter whatsoever.

<div align="center">

**ARTICLE 4**
**CLOSING CONDITIONS AND TERMINATION**

</div>

    **4.1**    <u>**Conditions Precedent to Closing**</u>.

    (a)    <u>Purchaser's Conditions Precedent</u>.  Purchaser's obligation to complete Closing shall be conditioned upon the satisfaction (or Purchaser's written waiver) of each of the conditions precedent set forth in this Section 4.1(a).

    (i)    <u>Bidding Procedures Order</u>:  The Bankruptcy Court shall have entered an order approving the sale of the Arizona Assets pursuant to a competitive bidding process (the "<u>***Bidding Procedures***</u>"), substantially in the form attached hereto as <u>Exhibit C</u> (the "***Bidding Procedures Order***") or otherwise in form and substance reasonably satisfactory to the Arizona Entities.

    (ii)    <u>Sale Order</u>: The Bankruptcy Court shall have entered an order pursuant to sections 105, 363, or 365 of the Bankruptcy Code authorizing and approving the sale of the Arizona Assets on the terms set forth herein, substantially in the form attached hereto as <u>Exhibit D</u> (the "***Sale Order***") to Purchaser or otherwise in form and substance reasonably satisfactory to the Arizona Entities.

    (b)    <u>The Arizona Entities' Conditions Precedent</u>.  Each of the Arizona Entities' obligation to complete Closing shall be conditioned upon the satisfaction (or the Arizona Entities' written waiver) of each of the conditions precedent set forth in this Section 4.1(b).

    (i)    <u>Representations</u>:  Each of the representations and warranties as set

forth in Article 2 shall be true, correct and complete in all material respects as of the date of Closing.

(ii) <u>Bidding Procedures Order</u>:  The Bankruptcy Court shall have entered the Bidding Procedures Order substantially in the form annexed hereto as <u>Exhibit C</u>  or otherwise in form and substance reasonably satisfactory to the Arizona Entities.

(iii) <u>Sale Order</u>: The Bankruptcy Court shall have entered the Sale Order substantially in the form annexed hereto as <u>Exhibit D</u>  or otherwise in form and substance reasonably satisfactory to the Arizona Entities.

**4.2**   **Conditions Precedent to Closing.**  At any time prior to Closing, this Agreement may be terminated as follows:

(a)    by the Arizona Entities, if any of the conditions in Section 4.1(b) shall become incapable of being satisfied (unless such circumstance is the result of any action or failure to act on the part of the Arizona Entities) and Purchaser shall not have waived such failure;

(b)    by the Arizona Entities, if the Bankruptcy Court or any other Governmental Body shall have issued an Order (which Order the Parties shall use their commercially reasonable efforts to lift), which permanently restrains, enjoins or otherwise prohibits the consummation of the proposed transactions contemplated by this Agreement and such Order shall have become final and non-appealable.

**4.3**   **Automatic Termination**:  In the event the Arizona Entities enter into an agreement to sell all or substantially all of the Arizona Assets to a third party as a result of the Bidding Procedures approved pursuant to the Bidding Procedures Order and the sale to said third party closes, this Agreement shall automatically terminate.  For the avoidance of doubt, no break-up fee or any other payment will be due and owing to Purchaser if this Agreement is terminated for any reason other than the return of the Deposit to Purchaser pursuant to the terms hereunder in accordance with Section 4.4.

**4.4**   **Remedies**.

(a)    If the Closing fails to occur by reason of failure, refusal or inability by the Arizona Entities to satisfy the Purchaser's Condition Precedent set forth in Section 4(a) hereof, then Purchaser, as its sole remedy for such inability of the Arizona Entities, may terminate this Agreement by notice to the Arizona Entities.  If Purchaser elects to so terminate this Agreement due to failure, refusal or inability of the Arizona Entities to satisfy the Purchaser's Condition Precedent set forth in Section 4(a), then this Agreement shall be terminated and neither party shall have any further rights, obligations or liabilities hereunder, except for any and all obligations which are expressly stated herein to survive the Closing or any termination of this Agreement (the "***Surviving Obligations***"), and except that Purchaser shall be entitled to a return of the Deposit.  Except as set forth in this Section, Purchaser hereby expressly waives, relinquishes and releases any other

**right or remedy available to it at law, in equity or otherwise (including the remedy of specific performance) by reason of the failure, refusal or inability of the Arizona Entities to perform their respective obligations hereunder.**

(b)      In the event of a default hereunder by Purchaser or if the Closing fails to occur by reason of Purchaser's failure, refusal or inability to perform its obligations hereunder, then the Arizona Entities may terminate this Agreement by notice to Purchaser.  If the Arizona Entities elect to terminate this Agreement due to Purchaser's failure, refusal or inability to perform its obligations hereunder, then this Agreement shall be terminated and the Arizona Entities shall retain the Deposit as partial damages for losses, damages and expenses suffered by Arizona Entities.  The Arizona Entities hereby expressly waive, relinquish and release any other remedies or damages they may have against Purchaser with respect to the Purchaser's default hereunder or the failure of the Closing to occur by reason of Purchaser's failure, refusal or inability to perform its obligation hereunder, including, but not limited to, the remedy of specific performance.

## ARTICLE 5
## MISCELLANEOUS

**5.1     Survival.**  Each representation and warranty of the Parties contained herein will expire on the Closing and be of no further force or effect.  Each covenant and obligation of the Parties contained herein will survive the Closing in accordance with its terms.

**5.2     Entire Agreement.**   This Agreement, together with the other Transaction Documents and all schedules, exhibits, annexes or other attachments hereto or thereto, and the certificates, documents, instruments and writings that are delivered pursuant hereto or thereto, constitutes the entire agreement and understanding of the Parties in respect of the subject matter hereof and supersedes all prior understandings, agreements or representations by or among the Parties, written or oral, to the extent they relate in any way to the subject matter hereof.

**5.3     Assignment; Binding Effect.**  No Party may assign either this Agreement or any of its rights, interests or obligations hereunder without the prior written approval of the other Parties, and any such assignment by a Party without prior written approval of the other Parties will be deemed invalid and not binding on such other Parties.  All of the terms, agreements, covenants, representations, warranties and conditions of this Agreement are binding upon, inure to the benefit of and are enforceable by, the Parties and their respective successors and permitted assigns.

**5.4     Notices.**   All notices, requests and other communications provided for or permitted to be given under this Agreement must be in writing and must be given by personal delivery, by certified or registered United States mail (postage prepaid, return receipt requested), by a nationally recognized overnight delivery service for next day delivery, or by facsimile transmission, to the intended recipient at the address set forth for the recipient on the signature page (or to such other address as any Party may give in a notice given in accordance with the provisions hereof).  All notices, requests or other communications will be effective and deemed given only as follows:  (i) if given by personal delivery, upon such personal delivery, (ii) if sent

by certified or registered mail, on the fifth business day after being deposited in the United States mail, (iii) if sent for next day delivery by overnight delivery service, on the date of delivery as confirmed by written confirmation of delivery or (iv) if sent by facsimile, upon the transmitter's confirmation of receipt of such facsimile transmission, except that if such confirmation is received after 5:00 p.m. (in the recipient's time zone) on a business day, or is received on a day that is not a business day, then such notice, request or communication will not be deemed effective or given until the next succeeding business day.  Notices, requests and other communications sent in any other manner, including by electronic mail, will not be effective.

      5.5    **Headings.**  The article and section headings contained in this Agreement are inserted for convenience only and will not affect in any way the meaning or interpretation of this Agreement.

      5.6    **Governing Law.**  This Agreement will be governed by and construed in accordance with the laws of the State of Nevada, without giving effect to any choice of law principles.

      5.7    **Schedules and Exhibits.**  The Schedules and Exhibits are incorporated herein by reference and made a part of this Agreement.

      5.8    **Amendment; Extensions; Waivers.**  No amendment, modification, waiver, replacement, termination or cancellation of any provision of this Agreement will be valid, unless the same is in writing and signed by all of the Parties hereto.  Each waiver of a right hereunder does not extend beyond the specific event or circumstance giving rise to the right.  No waiver by any Party of any default, misrepresentation or breach of warranty or covenant hereunder, whether intentional or not, may be deemed to extend to any prior or subsequent default, misrepresentation or breach of warranty or covenant hereunder or affect in any way any rights arising because of any prior or subsequent such occurrence.  Neither the failure nor any delay on the part of any Party to exercise any right or remedy under this Agreement will operate as a waiver thereof, nor does any single or partial exercise of any right or remedy preclude any other or further exercise of the same or of any other right or remedy.

      5.9    **Severability.**  The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision will not affect the validity or enforceability of the other provisions hereof; provided, however, that if any provision of this Agreement, as applied to any Party or to any circumstance, is judicially determined not to be enforceable in accordance with its terms, the Parties agree that the court judicially making such determination may modify the provision in a manner consistent with its objectives such that it is enforceable, and/or to delete specific words or phrases, and in its modified form, such provision will then be enforceable and will be enforced.

      5.10    **Expenses; Transfer Taxes.**  Except as otherwise expressly provided in this Agreement, each Party will bear its own costs and expenses incurred in connection with the preparation, execution and performance of this Agreement and the Transactions, including all fees and expenses of agents, representatives, financial advisors, legal counsel and accountants.  Any and all transfer taxes, stamp taxes or similar taxes payable in connection with the Transactions are waived pursuant to section 1146(a) of the Bankruptcy Code.

**5.11    Counterparts; Effectiveness.**  This Agreement may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

**5.12    Construction.**  This Agreement has been freely and fairly negotiated among the Parties.  If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties and no presumption or burden of proof will arise favoring or disfavoring any Party because of the authorship of any provision of this Agreement. Any reference to any law will be deemed to refer to such law as in effect on the date hereof and all rules and regulations promulgated thereunder, unless the context requires otherwise.  The words "include," "includes," and "including" will be deemed to be followed by "without limitation." The word "person" includes individuals, entities and Governmental Bodies. Pronouns in masculine, feminine and neuter genders will be construed to include any other gender, and words in the singular form will be construed to include the plural and vice versa, unless the context otherwise requires. The words "this Agreement," "herein," "hereof," "hereby," "hereunder," and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.

**5.13    Time of Essence**.  Time is strictly of the essence with respect to this Agreement and each and every term and provision hereof and the transaction contemplated hereby.

**5.14    Possession of Arizona Assets.**  Purchaser shall be entitled to possession of the Arizona Assets upon the Closing, provided, however, nothing herein shall constitute a representation by Arizona Entities regarding the vacant condition of the Arizona Assets.

**5.15    Attorneys' Fees**.  In the event of any litigation or arbitration between the parties hereto with respect to the subject matter hereof, the unsuccessful party to such litigation or arbitration shall pay to the successful party all costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, incurred therein by the successful party, all of which shall be included in and as a part of the judgment or decision rendered in such litigation or arbitration.

**5.16    Further Assurances**.  Each of the parties hereto agrees to execute, acknowledge, deliver and/or file such further certificates, instruments, or documents, and to do all such further acts and things, as may be required by law, or as may reasonably be necessary or advisable to carry out the intents and purposes of and transactions contemplated by this Agreement.

**5.17    THE ARIZONA ENTITIES AND PURCHASER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY RIGHT EACH MAY HAVE TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER ARISING IN TORT OR CONTRACT) BROUGHT BY EITHER AGAINST THE OTHER ON ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OR ANY OTHER DOCUMENT EXECUTED AND DELIVERED BY EITHER PARTY IN CONNECTION HEREWITH.**

**[SIGNATURE PAGES FOLLOW]**

**IN WITNESS WHEREOF**, the Parties have caused this Asset Transfer Agreement to be executed as of the date stated in the introductory paragraph of this Agreement.

**THE ARIZONA ENTITIES**

**RHODES ARIZONA PROPERTIES, LLC**

By: _____
Name: _____ *Don Boettcher*
Title: _____ *Authorized Agent*
Address: _*4730 S. Fort Apache Rd, Suite 300*
_*Las Vegas, NV 89147*

**RHODES HOMES ARIZONA, LLC**

By: _____
Name: _____ *Don Boettcher*
Title: _____ *Authorized Agent*
Address: _*4730 S. Fort Apache Rd, Suite 300*
_*Las Vegas NV 89147*

**ELKHORN INVESTMENTS, INC.**

By: _____
Name: _____ *Don Boettcher*
Title: _____ *Authorized Agent*
Address: _*4730 S. Fort Apache Rd, Suite 300*
_*Las Vegas NV 89147*

**PURCHASER**

**SAGEBRUSH ENTERPRISES, INC.**

By: _____

Name: James M. Rhodes
Title: President
Address: 7220 South Cimarron, Suite 100,
Las Vegas, Nevada 89113

SCHEDULE I

**Schedule I -**  Assets not disputed

The Arizona assets to be sold as part of the 363 sale include both personal property and real property.  The personal property can be categorized into two groupings:

      1) Office related equipment (i.e. computers waste baskets)

      2) Due diligence materials (i.e. maps, engineering plans) to the extent the same apply to the real property transferred and to the extent the same may be transferred by the Arizona Entities.

The real property to be sold consists of the following:

- A portion of Pravada  - a large Master Plan Community
  - The boundaries of Pravada need to be "cleaned-up" and are documented in Schedule II
- Four (4) model homes (without certificates of occupancy and which may need to be removed)
- Five (5) Ranchero homes in unfinished condition
- Nine (9) miscellaneous parcels within 5 miles of Pravada

| Office Equipment | | |
|---|---|---|
| # | Type | Description |
| 1 | Office Furniture | 1 - Drafting Table |
| 2 | Office Furniture | Filing Cabinet - 2- 5 Drawer 63" x 18" Cabinets |
| 3 | Office Furniture | Filing Cabinet -1- 3 Drawer 36" x 20" Cabinets |
| 4 | Office Furniture | Filing Cabinet -7 - 4 Drawer 48" x 18" Cabinets |
| 5 | Office Furniture | Filing Cabinet -2 - 4 Drawer 48" x 20" Cabinets |
| 6 | Office Furniture | 2 - 3 Shelf Bookcases |
| 7 | Office Furniture | 2 - Metal 4 Shelves |
| 8 | Office Furniture | 2 - Wood Shelves |
| 9 | Office Furniture | 1 - Hanging File for Plans |
| 10 | Office Furniture | 1 - Wooden 2 Door Cabinet |
| 11 | Office Furniture | 11 - Assorted Desks (2) Metal and (9) Wood |
| 12 | Office Furniture | 12 - Desk Chairs |
| 13 | Office Furniture | 12 - Guest Chairs |
| 14 | Office Furniture | 5 Stacking Chairs |
| 15 | Office Furniture | 1 - 4 x 6 Rotating White Board |
| 16 | Office Furniture | 1 - Garbage Can |
| 17 | Office Furniture | 10 - Wastebaskets |
| 18 | Office Furniture | 3 - 6' Tables |
| 19 | Office Furniture | 2 - Metal Storage Shelves - Dimensions 5' h x 3' w x 18.5" d |
| 20 | Office Furniture | 2 - Plastic Storage Shelves - Dimensions 6' h x 3' w x 18" d |
| 21 | Computers | 1 - HP 5150 Desktop Computer Number 2UA6030J57 |
| 22 | Computers | 1 - HP WX4400 Desktop Computer Number 2UA70608F7 |
| 23 | Computers | 1 - Dell Desktop Computer Number GZOGR61 |
| 24 | Computers | 1 - HP NX9600 Laptop Computer Number CNF6071GBR |
| 25 | Printers | 1 - HP Laserjet 4101 Number USLGY26030 |
| 26 | Printers | 1 - Color Laserjet 5550 Number JPDC4D2072 |
| 27 | Printers | 1 - Super G3 Printer Scanner Number J8141101150 |
| 28 | Fax Machines | 2 - HP Office Jets 7310 |
| 29 | Miscellaneous | 1 - Dell Power Edge Server 2850 Number 85172579422 |
| 30 | Miscellaneous | 1 - HP Design jet 1055 CM Plus Plotter |
| 31 | Miscellaneous | 8 - Battery Surge Boxes and Power Strips |
| 32 | Miscellaneous | 2 - 20" Flat Screen Computer Monitors |
| 33 | Miscellaneous | 4 - Calculators |
| 34 | Miscellaneous | 14 - Telephones |

**Due Diligence Materials**
**TBD**

## GOLDEN VALLEY
## PROPERTY FOR SALE



| OWNER | APN_NO | AREA |
|---|---|---|
| RHODES HOMES ARIZONA LLC | 215-01-093 | 1.06 |
| RHODES HOMES ARIZONA LLC | 215-01-097 | 1.06 |
| RHODES HOMES ARIZONA LLC | 306-30-011 | 40.2 |
| RHODES HOMES ARIZONA LLC | 306-30-006 | 39.87 |
| RHODES HOMES ARIZONA LLC | 215-17-005 | 38.34 |
| RHODES HOMES ARIZONA LLC | 215-17-006 | 39.39 |
| RHODES HOMES ARIZONA LLC | 215-17-009 | 39.32 |
| ELKHORN INVESTMENTS INC | 217-11-147 | 2.5 |
| ELKHORN INVESTMENTS INC | 217-11-148 | 2.5 |
| ELKHORN INVESTMENTS INC | 217-11-156 | 2.5 |
| ELKHORN INVESTMENTS INC | 217-11-222 | 2.35 |
| ELKHORN INVESTMENTS | 217-11-212 | 2.35 |
| RHODES ARIZONA PROPERTIES LLC | 306-24-116 | 20.24 |
| RHODES ARIZONA PROPERTIES LLC | 306-24-115 | 20.25 |
| RHODES ARIZONA PROPERTIES LLC | 306-63-017 | 7.61 |
| RHODES ARIZONA PROPERTIES LLC | 306-63-018 | 6.83 |
| RHODES ARIZONA PROPERTIES LLC | 306-42-001 | 39.9 |
| RHODES ARIZONA PROPERTIES LLC | 306-42-008A | 19.92 |
| RHODES ARIZONA PROPERTIES LLC | FUTURE | 1310.5 |
| | TOTAL: | 1636.7 |



<u>SCHEDULE I.1(b)(i)</u>

<u>Assumed Contracts</u>

**Schedule 1.1(b)(i)**

## RHODES ARIZONA CONTRACTS TO BE ASSUMED AND ASSIGNED TO THE RHODES ENTITIES

| CONTRACT COUNTER-PARTY NAME & SERVICE ADDRESS | DEBTOR | TYPE OF CONTRACT | PROJECT/DEVELOPMENT | CURE AMOUNT (LESS RETAINER OR DEPOSIT |
|---|---|---|---|---|
| Utilities Inc.<br>2335 Sanders Rd<br>Northbrook, IL 60062-6108 | Rhodes Homes Arizona, LLC | Provision of water service | Golden Valley Ranch, Mohave County, AZ | $0.00 |
| County of Mohave Development Services<br>3675 E. Andy Devine Ave.<br>Kingman, AZ 86401 | Rhodes Arizona Properties, LLC; Rhodes Homes Arizona, LLC | Development Agreement/Specific Zoning Plan | Golden Valley Ranch/Pravada | $0.00 |
| Lexon Insurance Company<br>Bond Safeguard Insurance Company<br>1919 S Highland Dr. Bldg. A Suite 300<br>Lombard, IL 60148 | Rhodes Homes Arizona, LLC | Bond | Bond # 5022081 (Mohave AZ—golden Valley Ranch Phase 1 Grading) | $0.00 |

SCHEDULE II

**Schedule II -**   Land Swap

Prior to the commencement of the 363 sale, some administrative actions need to take place to "clean up" the ownership records.  This clean-up is required because there are discrepancies between the debtor's accounting records and the state/county records.

The following actions are required to perform this clean up:

- Pravada Land Swap – as the master plan community of Pravada was being mapped, the boundaries of the project changed.  Not all of these changes were captured by the municipalities
  - Parcels A, B, C, D – land to be added to the estate from Rhodes Related Entities (Non-Debtor)
  - Parcels 1, 2, 3, 4 – land to be removed from the estate and given to Rhodes Related Entities (Non-Debtor)
- Miscellaneous parcels  - land to be removed from the estate and given to Rhodes Related Entities (Non-Debtor

This document contacts an itemized list of the real assets that need to be cleaned up.

## LIST OF ALL PARCELS INTO ESTATE FROM RHODES ENTITIES (NON-DEBTOR)

| APN | Acres |
|---|---|
| 306-63-009 | -8.0 |
| 306-63-010 | -8.0 |
| 306-63-011 | -8.0 |
| 306-63-012 | -8.0 |
| 306-63-013 | -8.0 |
| 306-24-091 | -20.57 |
| 354-34-045a | -30.01 |
| AREA "A" | -1.17 |
| AREA "B" | -44.13 |
| AREA "C" | -10.42 |
| AREA "D" | -9.36 |
| TOTAL: | -155.7 |

## LIST OF ALL PARCELS INTO ESTATE FROM RHODES ENTITIES (NON-DEBTOR)

| | | |
|---|---|---|
| PRAVADA | AREA 1 | 60.64 |
| PRAVADA | AREA 2 | 13.39 |
| PRAVADA | AREA 3 | 33.25 |
| PRAVADA | AREA 4 | 23.29 |
| | TOTAL: | 130.57 |





T 022 N
R 018 W
022N018W
T 022 N
R 017 W
022N017W
T 022 N
R 016 W
022N016W
022N015W
T 022 N
R 015 W
354-34-045A
MORROW AVE
KINGMAN
LOUISE AVE
PINTO RD
T 021 N
R 018 W
021N018W
021N017W
T 021 N
R 017 W
BEALE ST
021N016W
T 021 N
R 016 W
021N015W
T 021 N
R 015 W
PRAVADA
T 020 N
R 018 W
020N018W
020N017W
T 020 N
R 017 W
020N016W
T 020 N
R 016 W
020N015W
T 020 N
R 015 W
019N018W
019N017W
019N016W
019N015W

## EXHIBIT A

## Bill of Sale

## BILL OF SALE

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and pursuant to the Asset Transfer Agreement (the "***Transfer Agreement***"), dated March [__], 2010, by and among Rhodes Arizona Properties, LLC, a Nevada limited liability company, Elkhorn Investments, Inc., a Nevada corporation, and Rhodes Homes Arizona, LLC, an Arizona limited liability company (collectively, "***Seller***") hereby unconditionally and irrevocably grant, bargain, transfer, sell, assign, convey, and deliver to Sagebrush Enterprises, Inc., a Delaware corporation ("***Buyer***"), its successors, and assigns forever, all right, title, and interest, legal or equitable, in and to the Arizona Assets (as defined in the Transfer Agreement) to have and to hold the Arizona Assets unto Buyer and its successors and assigns forever.

The scope, nature, and extent of the Arizona Assets are expressly set forth in the Transfer Agreement. Nothing herein contained will itself change, amend, extend, or alter (nor should it be deemed or construed as changing, amending, extending, or altering) the terms or conditions of the Transfer Agreement in any manner whatsoever. This instrument does not create or establish rights, liabilities, or obligations not otherwise created or existing under or pursuant to the Transfer Agreement. Seller acknowledges and agrees that the representations, warranties, covenants, agreements, and indemnities contained in the Transfer Agreement will not be superseded hereby but will remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Transfer Agreement and the terms of this instrument, the terms of the Transfer Agreement will govern.

Nothing in this instrument, express or implied, is intended or shall be construed to confer upon or give to, any person, firm or corporation other than Buyer and its successors and assigns any remedy or claim under or by reason of this instrument or any term, covenant, or condition hereof, and all of the terms, covenants, conditions, promises, and agreements in this instrument shall be for the sole and exclusive benefit of Buyer and its successors and assigns.

This instrument will be binding upon Seller and its successors and assigns, and inure to the benefit of and be enforceable by Buyer and its successors and assigns.

**[SIGNATURE PAGE FOLLOWS]**

1

IN WITNESS WHEREOF, this Bill of Sale is being executed and delivered by Seller on the date first written above.

RHODES ARIZONA PROPERTIES, LLC

By: _____
    Name:
    Title:

ELKHORN INVESTMENTS, INC.

By: _____
    Name:
    Title:

RHODES HOMES ARIZONA, LLC

By: _____
    Name:
    Title:

<u>EXHIBIT B</u>

<u>Quit Claim Deed</u>

Recording Requested by:

When recorded mail to:

_____
(The area above is reserved for recorder's use)

## QUITCLAIM DEED

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, RHODES ARIZONA PROPERTIES, LLC, a Nevada limited liability company, ELKHORN INVESTMENTS, INC., a Nevada corporation, and RHODES HOMES ARIZONA LLC, an Arizona limited liability company (together, "*Grantor*"), each hereby quitclaims to SAGEBRUSH ENTERPRISES, INC., a Delaware corporation ("*Grantee*"), the following interests:

> All right, title and interest of Grantor, if any, in and to the property described on Exhibit A attached hereto and made a part hereof.

> [*Remainder of page intentionally blank*]

IN WITNESS WHEREOF, the undersigned has caused this Quitclaim Deed to be duly made as of _____.

RHODES ARIZONA PROPERTIES, LLC, a Nevada limited liability company

By: _____
Name: _____
Its: _____

ELKHORN INVESTMENTS, INC., a Nevada corporation

By: _____
Name: _____
Its: _____

RHODES HOMES ARIZONA LLC, an Arizona limited liability company

By: _____
Name: _____
Its: _____

<u>ACKNOWLEDGMENT</u>
RHODES ARIZONA PROPERTIES, LLC

STATE OF _____)
                                                                    )   ss.
COUNTY OF_____)


          On _____ before me, _____, Notary Public, personally appeared _____, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

          WITNESS my hand and official seal.


_____
Notary Public

<u>ACKNOWLEDGMENT</u>
ELKHORN INVESTMENTS, INC.


STATE OF _____)
                                                                    )   ss.
COUNTY OF_____)


          On _____ before me, _____, Notary
Public, personally appeared _____,
personally known to me to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

          WITNESS my hand and official seal.


_____
Notary Public

<u>ACKNOWLEDGMENT</u>
RHODES HOMES ARIZONA LLC

STATE OF _____)
                                                                   )   ss.
COUNTY OF_____)


              On _____ before me, _____, Notary
Public, personally appeared _____,
personally known to me to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

              WITNESS my hand and official seal.


_____
Notary Public

<u>Exhibit A</u>
<u>Legal Description</u>

EXHIBIT C

Bidding Procedures Order

**Entered on Docket**
**March 30, 2010**

_____
**Hon. Linda B. Riegle**
**United States Bankruptcy Judge**

James I. Stang, Esq. (SBN 94435)
Shirley S. Cho, Esq. (SBN 192616)
Werner Disse, Esq. (SBN 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
        scho@pszjlaw.com
        wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702/382.1170
Facsimile: 702/382.1169
Email: zlarson@lslawnv.com

Attorneys for Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br><br>        Debtors.<br>_____<br>Affects:<br>☐        All Debtors<br>☒        Affects the following Debtor(s)<br>Rhodes Homes Arizona, LLC; Rhodes Arizona Properties, LLC; and Elkhorn Investments, Inc. | Case No.: 09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br><br>Hearing Date: March 11, 2010<br>Time: 9:30 a.m.<br>Courtroom: 1 |

_____

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes

DOCS_LA:216913.2

1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### ORDER APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN OF THE DEBTORS' ARIZONA ASSETS; (B) APPROVING FORM OF PUBLICATION NOTICE; AND (C) SCHEDULING SALE HEARING DATE [RE DOCKET NO. 1031]

Upon consideration of the *Debtors' Motion for Entry of an Order (A) Approving Bidding Procedures for the Sale of Certain of the Debtors' Arizona Assets; (B) Approving Form of Publication Notice; and (C) Scheduling Sale Hearing Date* [Docket No. 1031] (the "Motion"), and the parties having resolved the objection of Stanley Consultants, Inc. [Docket No. 1041] as set forth herein, and good cause appearing, it is hereby

ORDERED that the Motion is approved as modified herein; and it is further

ORDERED that the sale of the Arizona Assets shall be conducted pursuant to the modified Bidding Procedures attached hereto as **Exhibit A** and the Debtors or the Reorganized Debtors, as applicable, shall immediately begin marketing the Arizona Assets for sale, provided however that no disclosure of the Stanley Materials shall occur until after the Determination Date; and it is further

ORDERED that to the extent the Debtors or Reorganized Debtors, in connection with the Arizona Assets sale seek to transfer the work product or intellectual property in which Stanley Consultants, Inc. ("Stanley") has asserted a property interest as set forth in the exhibits to Creditor Stanley Consultants, Inc.'s Objection to Sufficiency of Disclosure Statement for the Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code for the Rhodes Companies, LLC, et. al. [Docket No. 617] (the "Stanley Materials"), prior to marketing the Arizona Assets that include the Stanley Materials or the transfer of any Stanley Materials, the Debtors or Reorganized Debtors, as applicable, shall (i) obtain an order from this Court determining the extent of the Debtors' interests or Reorganized Debtors' interests, as applicable, in such Stanley Materials that the Debtors can transfer under applicable law or (ii) shall file a notice of intention to not sell the

Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09- 14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20 LLC (Case No. 09-14848); Tuscany Acquisitions IV LLC (Case No. 09-14849); Tuscany Acquisitions III LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, LLC (Case No. 09- 14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

DOCS_LA:216913.2

1  Stanley Materials and Stanley shall retain the right to dispute the transfer of the Stanley Materials

2  (the earlier of (i) or (ii) shall be the Determination Date); and it is further

3  ORDERED that the sale timeline shall be modified as follows:

4  A.    The sale approval hearing date shall be no earlier than August 11, 2010 but

5  no later than September 11, 2010;

6  B.    Any auction shall be held one week prior to the sale approval hearing date;

7  C.    The Bid Deadline, including the deadline for bidders to submit their

8  deposits, shall be two weeks prior to the sale approval hearing date;

9  D.    And upon the fixing of the above dates, the Debtors or Reorganized

10  Debtors, as applicable, shall file with the Court the final Bidding

11  Procedures setting forth such dates; and it is further

12  ORDERED that upon the filing of the final Bidding Procedures, the Debtors or Reorganized

13  Debtors, as applicable, shall publish the Publication Notice as set forth in the Motion no later than 5

14  business days after the filing of the final Bidding Procedures; and it is further

15  ORDERED that nothing in this Order shall be construed as transferring the Stanley

16  Materials.

17

18  Submitted by:

19  DATED this 25ᵗʰ day of March 2010.

20  By: ___/s/Zachariah Larson_____        By: ___/s/Janiece Marshall_____
       LARSON & STEPHENS                              ANDERSON, MCPHARLIN &
21     Zachariah Larson, Esq. (NV Bar No. 7787)       CONNERS LLP
       Kyle O. Stephens, Esq. (NV Bar No. 7928)       Janiece S. Marshall (NV Bar No.  )
22     810 S. Casino Center Blvd., Ste. 104           777 North Rainbow Boulevard, Suite 145
       Las Vegas, NV  89101                           Las Vegas, NV  89107
23     (702) 382-1170 (Telephone)                     (702) 479-1014 (Telephone)
       (702) 382-1169                                 (702) 479-1025
24     zlarson@lslawnv.com                            jm@amclaw.com
       Attorneys for Debtors and Debtors in Possession   Attorneys for Stanley Consultants, Inc.
25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:

THE RHODES COMPANIES, LLC, aka
"Rhodes Homes," et al.,

Debtors.

Case No.: BK-S-09-14814-LBR
(Jointly Administered)

Chapter 11

## BIDDING PROCEDURES

Rhodes Homes Arizona, LLC, Rhodes Arizona Properties, LLC, and Elkhorn Investments, Inc. (the "Arizona Debtors") each filed a chapter 11 case, which cases are pending in the Bankruptcy Court[1] and administered under Case No. 09-14814 (LBR). In each instance, the reference to "Arizona Debtors" herein means the Debtors or the Arizona Debtors, as reorganized, pursuant to the plan of reorganization confirmed in their bankruptcy cases. By motion dated February 19, 2010 (the "Motion"), the Arizona Debtors sought, among other things, approval of the process and procedures set forth below (the "Bidding Procedures") through which they will determine the highest and best offer for certain of their assets, which consists primarily of raw land in Arizona, four model homes, four partially-completed homes, miscellaneous office equipment, and other items of personal property including certain intellectual property (the "Arizona Assets"). On March [__], 2010, the Bankruptcy Court entered its order (the "Bidding Procedures Order"), which, among other things, approved these Bidding Procedures.

Pending a higher and better offer received through these Bidding Procedures, the Arizona Debtors have agreed to sell to certain of their non-Debtor affiliates, the "Rhodes Entities," the Arizona Assets for $1,222,999 (the "Stalking Horse Bid"). The Rhodes Entities will not be receiving a break-up fee or expense reimbursement on account of their efforts as the Stalking Horse Bidder.

There are certain parcels of land owned by the Arizona Debtors that are not duly reflected as owned by the Arizona Debtors based on the County of Mohave Recorder's Office records, but rather as being owned by the Rhodes Entities, and vice versa. The parties have agreed to enter into a stipulation to resolve these title issues, which will be duly noticed for hearing before the Bankruptcy Court as soon as possible.

In connection with the Arizona Assets, the Arizona Debtors have not yet determined whether or not they will sell or seek to transfer the work product or intellectual property in which Stanley Consultants, Inc. ("Stanley") has asserted a property interest as set forth in the exhibits to Creditor Stanley Consultants, Inc.'s Objection to Sufficiency of Disclosure Statement for the Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code for the Rhodes Companies, LLC, et. al. [Docket No. 617] (the "Stanley Materials"). Prior to marketing

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the Arizona Assets with the Stanley Materials included as part of the Arizona Assets or the transfer of any Stanley Materials, the Debtors or Reorganized Debtors, as applicable, shall (i) obtain an order from the Bankruptcy Court determining the extent of the Debtors' interests or Reorganized Debtors' interests, as applicable, in such Stanley Materials that the Debtors can transfer under applicable law or (ii) shall file a notice of intention to not sell the Stanley Materials and Stanley shall retain the right to dispute the transfer of the Stanley Materials (the earlier of (i) or (ii) shall be the "Determination Date").

On [_____, 2010], as further described below, in the Motion and in the Bidding Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Arizona Debtors shall seek entry of the Sale Order authorizing and approving the sale of the Arizona Assets (the "Transaction") to the Qualified Bidder (defined below) that the Arizona Debtors, with the consent of the First Lien Steering Committee, determine to have made the highest and/or best offer, subject to Bankruptcy Court approval.

## PURCHASE PRICE

The minimum purchase price for the Arizona Assets shall be $1,222,999 (the "Purchase Price"). The Transaction is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code §§ 363 and 365. The Successful Bidder shall also be responsible for all cure costs associated with assuming any contracts associated with any of the Arizona Assets, which the Arizona Debtors estimate to be $0.00.

## PARTICIPATION REQUIREMENTS

In addition to the Bid requirements set forth below, in order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in the Arizona Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Arizona Debtors and the Notice Parties (defined below) an executed confidentiality agreement in form and substance acceptable to the Arizona Debtors and the First Lien Steering Committee (a "Confidentiality Agreement").

## ACCESS TO DUE DILIGENCE MATERIALS

Only Potential Bidders that execute and deliver a Confidentiality Agreement are eligible to receive due diligence access or additional non-public information. The Arizona Debtors will prepare a due diligence package that discloses, among other things, issues related to current zoning, set-back requirements, water, gas, telephone and other utility availability (the "Due Diligence Package"). The Arizona Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. The Arizona Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Arizona Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Bidders in connection with the sale of the Arizona Assets, whether provided as part of the due diligence by the Debtors or otherwise. Furthermore, in accepting the Due Diligence Package, Bidder shall be deemed to acknowledge that the Arizona Debtors make no representations or warranties regarding the nature or quality of the Arizona Assets and the Arizona Debtors will not be liable

2

for any inaccurate or incomplete information provided to the Bidder and the Bidder retains the sole and exclusive responsibility to independently confirm any and all information provided by the Arizona Debtors. The Due Diligence Package shall not include Stanley Materials until after the Determination Date.

## DUE DILIGENCE FROM BIDDERS

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Arizona Debtors or its advisors or the First Lien Steering Committee or its advisors regarding such Bidder and its contemplated transaction. Failure by a Bidder to comply with requests for additional information and due diligence access will be a basis for the Arizona Debtors to determine, with the consent of the First Lien Steering Committee, that the Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Arizona Debtors, with the consent of the First Lien Steering Committee, to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

## BIDDING PROCESS

The Arizona Debtors shall, prior to the Bid Deadline: (i) with the consent of the First Lien Steering Committee, determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Potential Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; (iv) together with the First Lien Steering Committee, negotiate any offers made to purchase the Arizona Assets (collectively, the "Bidding Process"). The Arizona Debtors, with the consent of the First Lien Steering Committee, shall have the right to adopt such other rules for the Bidding Process that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

## BID DEADLINE

**The deadline for submitting bids by a Qualified Bidder shall be [_____, 2010], at 4:00 p.m. (Pacific Time) (the "Bid Deadline").**

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its Bid by electronic mail to the following Notice Parties by the Bid Deadline: (i) the Arizona Debtors, 4730 S. Fort Apache Rd., Ste. 300, Las Vegas, NV 89147, Attn: Bruce Jorgensen, General Counsel, bjorgensen@rhodeshomes.com and Paul Huygens, phuygens@provinceadvisors.com; (ii) counsel for the First Lien Steering Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Philip C. Dublin, Esq., pdublin@akingump.com; (iii) counsel for the Rhodes Entities, Greenberg Traurig, LLP, 3773 Howard Hughes Parkway, Suite 400 North, Las Vegas, NV 89169, Attn: Brett Axelrod, axelrodb@gtlaw.com; (iv) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th Fl., Los Angeles, CA 90067, Attn: Shirley S. Cho, scho@pszjlaw.com; and (v) counsel for the Committee of Unsecured Creditors, Parsons Behle & Latimer, One Utah Center, 201 S. Main St., Ste. 1800, PO Box 45898, Salt Lake City, UT 84145-0898, Attn: J. Thomas Beckett, jbeckett@parsonsbehle.com; (v) counsel to Agent for

3

First Lien Lenders, Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Ste. 3400, Los Angeles, CA 90071, Attn: Ramon M. Naguiat, ramon.naguiat@skadden.com; and (vi) counsel to Agent for Second Lien Lenders, Ropes & Gray, 1211 Avenue of the Americas, New York, New York 10036-8704, Attn: Mark R. Somerstein, mark.somerstein@ropesgray.com.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

## BID REQUIREMENTS

To be eligible to participate in the Auction, each Bid and each Bidder submitting such a Bid must be determined by the Arizona Debtors, with the consent of the First Lien Steering Committee, to satisfy each of the following conditions:

Executed Asset Purchase Agreement. Each bid must be accompanied by an executed asset purchase agreement (and which must be acceptable to the First Lien Steering Committee), which will be provided by the Debtors no later than 30 days prior to the Sale Hearing, without any changes to the form of the agreement.

Executory Contracts. Each bid must identify any executory contracts that the Potential Bidder wishes to be assigned to it, with a commitment to pay any and all cure costs. The Arizona Debtors reserve the right not to assign the executory contract to the Potential Bidder in their sole and absolute discretion.

Minimum Bid. The consideration proposed by the Bid may include only cash. The aggregate consideration must equal or exceed the sum of the Purchase Price ($1,222,999) plus $200,000 ("Initial Minimum Overbid Increment").

Good Faith Deposit. Each Bid must be accompanied by (i) 50% of the Purchase Price and Initial Minimum Overbid Increment, or $811,499.50 (except for the Stalking Horse Bid which need only be accompanied by 50% of the Purchase Price, or $611,499.50), whether in the form of a certified check or cash payable to the order of Nevada Title Company or by wire transfer (which account information will be made available upon request) or irrevocable letter of credit; and (ii) a letter from a financial institution showing proof of funds for the remaining 50% of the Purchase Price, or $611,499.50, which letter shall be reasonably acceptable to the Arizona Debtors (with the consent of the First Lien Steering Committee).

Indemnification for Bond. Each Bid must be accompanied by an agreement that the Bidder will either (i) post a replacement

4

bond or post cash in lieu of the bond for the Debtors' current bond issued by Bond Safeguard (Bond No. 5022081) dated May 9, 2006 (the "Grading Bond") in the form acceptable to the Arizona Debtors; or (ii) indemnify the Arizona Debtors for any negative consequences from the Grading Bond, which indemnification shall be supported by a first priority deed of trust to be recorded against the Arizona Assets in favor of the Arizona Debtors.

Irrevocable.  A Bid must be irrevocable until the closing of the transaction with the Successful Bidder (the "Termination Date").

Contingencies.  A Bid may not be conditioned on obtaining financing or any internal approval or otherwise be subject to contingencies.

Due Diligence Package.  A Bid must be accompanied by an acknowledgement that the Bidder has received the Due Diligence Package.

Proof of Funds.  A Bid must contain written evidence of proof of funds in a financial institution for any amount in the Bid that is in excess of the Minimum Bid.

No Fees Payable to Qualified Bidder or Broker.  A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bidding Procedures.  The Arizona Debtors shall not be responsible for the cost of any fees, commissions, referral fees, etc. for advice, consultation, brokerage, due diligence or other services commissioned or used by a Bidder.

Identification of Potential Bidder.  Concurrently with its Bid, identification of the Potential Bidder and any principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

Corporate Authority.  Concurrently with its bid, written evidence satisfactory to the Arizona Debtors and the First Lien Steering Committee of the Potential Bidder's board of

5

directors or other similar approval, as applicable, of the
contemplated Transaction.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above
requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified
Bid" and the bidder a "Qualified Bidder" if the Arizona Debtors, with the consent of the First
Lien Steering Committee, believe that such Bid would be consummated if selected as the
Successful Bid.

In the event that any Potential Bidder is determined by the Arizona Debtors and the First
Lien Steering Committee not to be a Qualified Bidder, the Potential Bidder shall be refunded its
Good Faith Deposit with interest thereon, if any has accrued, on or before the date that is five (5)
days after Closing of the Sale.

The Arizona Debtors, with the consent of the First Lien Steering Committee, shall have
the right to reject any and all bids that they believe do not comply with the Bidding Procedures.

The Stalking Horse Bid shall be a Qualified Bid, provided that 50% of the Purchase Price
is received by the Bid Deadline in cash or by irrevocable letter of credit.

## AUCTION

If a Qualified Bid (other than the Stalking Horse Bid) is received prior to the Bid
Deadline, the Arizona Debtors shall conduct an auction (the "Auction") to determine the highest
and best bid with respect to the Arizona Assets. The Auction shall commence at 9:00 a.m.
(Pacific Time) on [_____, 2010], at a location to be determined by the Arizona Debtors.

No later than [_____, 2010], the Arizona Debtors will notify all Qualified Bidders of (i)
the highest and best Qualified Bid, as determined by the Arizona Debtors and the First Lien
Steering Committee (the "Baseline Bid") and (ii) the time and place of the Auction, and provide
copies of all submitted bids to all Qualified Bidders.

If no higher and better offer is obtained at the Auction, then the Stalking Horse Bid will
be deemed the Successful Bid, and, at the Sale Hearing, the Arizona Debtors will seek approval
of and authority to consummate the Transaction with the Rhodes Entities.

The Auction shall be conducted according to the following procedures:

## PARTICIPATION AT THE AUCTION

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the
Auction. Only the authorized representatives of each of the Qualified Bidders, the Arizona
Debtors, and the First Lien Steering Committee shall be permitted to attend.

## THE ARIZONA DEBTORS SHALL CONDUCT THE AUCTION

The Arizona Debtors and its professionals shall direct and preside over the Auction. At
the start of the Auction, the Arizona Debtors shall describe the terms of the Baseline Bid. The

6

determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Arizona Debtors, with the consent of the First Lien Steering Committee, reasonably deem relevant to the value of the Qualified Bid to the estate (the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Arizona Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. The Arizona Debtors reserve the right to conduct the auction in the manner acceptable to the First Lien Steering Committee and designed to maximize value based upon the nature and extent of the Qualified Bids received.

## TERMS OF OVERBIDS

An "Overbid" is any bid made at the Auction subsequent to the Arizona Debtors' announcement of the Baseline Bid. Any Overbid after the Baseline Bid shall be made in increments of at least $10,000.

Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Arizona Debtors, with the consent of the First Lien Steering Committee, accept a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).

(a)    Announcing Overbids

The Arizona Debtors shall announce at the Auction each Overbid. The Arizona Debtors shall thereafter provide the Buyer and each Qualified Bidder an opportunity to make subsequent Overbids.

The Arizona Debtors, with the consent of the First Lien Steering Committee in each instance, may (a) determine which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interest of the Arizona Debtors, its estate and creditors.

## CONSENT TO JURISDICTION AS CONDITION TO BIDDING

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

## CLOSING THE AUCTION

Upon conclusion of the bidding, the Auction shall be closed, and the Arizona Debtors and the First Lien Steering Committee shall immediately identify the highest and best offer for the Arizona Assets (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest and best offer will provide the greatest amount of net value to the Arizona Debtors, and the next highest or otherwise best offer after the Successful Bid (the

7

"Back-up Bid") and the entity submitting the Back-up Bid (the "Back-up Bidder"), and advise the Qualified Bidders of such determination. Upon five (5) business days' prior notice by the Arizona Debtors, the Back-up Bidder selected by the Arizona Debtors and the First Lien Steering Committee must immediately proceed with the closing of the transaction contemplated by the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason.

## ACCEPTANCE OF SUCCESSFUL BID

The Arizona Debtors shall sell the Arizona Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Arizona Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Arizona Debtors' or First Lien Steering Committee's acceptance of such Qualified Bid. The Arizona Debtors will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Arizona Debtors' and First Lien Steering Committee's selection of the Successful Bidder.

## "AS IS, WHERE IS"

The sale of the Arizona Assets shall be on an "as is, where is", "with all faults" basis and without representations or warranties of any kind, nature, or description by the Arizona Debtors, its agents or its estate or the First Lien Steering Committee, including without limitation representations and warranties as to physical condition, title, ownership, authorization to sell, acreage, leases, rents, revenues, income, expenses, operation, zoning or other regulation, compliance with state or federal law, compliance with environmental or hazardous materials law, suitability for particular purposes or any other matter whatsoever, except to the extent set forth in the Agreement or the purchase agreement of another Successful Bidder. The Buyer and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Arizona Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Arizona Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Arizona Assets, or the completeness or accuracy of any information provided in connection therewith, or the Auction.

## FREE OF ANY AND ALL INTERESTS

Except as otherwise set forth above, all of the Arizona Debtors' right, title and interest in and to the Arizona Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with Bankruptcy Code § 363(f), with such Interests to attach to the net proceeds of the sale of the Arizona Assets, except as to permitted encumbrances that are identified by the Bidder prior to the closing with the consent of the Arizona Debtors.

8

## SALE HEARING

The Sale Hearing shall be conducted by the Bankruptcy Court on [_____, 2010 at 1:30 **p.m.**], or on such other date as may be established by the Bankruptcy Court.

If the Successful Bidder fails to consummate an approved sale by the date that is five business (5) days after the Sale Order has been entered (the "Termination Date"), the Arizona Debtors shall be authorized (with the consent of the First Lien Steering Committee), but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Arizona Debtors shall be authorized (with the consent of the First Lien Steering Committee), but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

## RETURN OF GOOD FAITH DEPOSIT

Any Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at Closing. Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until five (5) days after Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders with all accumulated interest thereon. If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Arizona Debtors shall be entitled to retain the Successful Bidder's Good Faith Deposit as part of its damages resulting from such Successful Bidder's breach or failure to perform, in addition to all other remedies at law or in equity which may be available to the Arizona Debtors.

9

# LR 9021 Certification

In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

___ The court has waived the requirement of approval under LR 9021.

___ This is a chapter 7 or 13 case, and either with the motion, or at the hearing, I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

_X_ This is a chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

First Lien Steering Committee (Phil Dublin): APPROVED

Stanley Consultants, Inc. (Janiece Marshall): APPROVED

Rhodes Entities (Anne Loraditch): APPROVED

Agent for First Lien Lenders (Ramon Naguiat): APPROVED

Official Committee of Unsecured Creditors (Thomas Beckett): APPROVED

___ I certify that I have served a copy of this order with the motion, and no parties appeared or filed written objections.

Submitted by:

DATED this 25th day of March, 2010.

By: /s/ Zachariah Larson
    LARSON & STEPHENS
    Zachariah Larson, Esq. (NV Bar No 7787)
    Kyle O. Stephens, Esq. (NV Bar No. 7928)
    810 S. Casino Center Blvd., Ste. 104
    Las Vegas, NV 89101
    (702) 382-1170 (Telephone)
    (702) 382-1169
    zlarson@lslawnv.com
    Attorneys for Debtors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT D


Sale Order

James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
        scho@pszjlaw.com
        wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com

Attorneys for Reorganized Debtors and
Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

Case No.: BK-S-09-14814-LBR
(Jointly Administered)

---

[1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany

| | | |
|---|---|---|
| 1 | THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1] | Chapter 11 |
| 2 | Debtors. | |
| 3 | Affects: | Hearing Date:   TBD |
| | ☐        All Debtors | Hearing Time:  TBD |
| 4 | ☒        Affects the following Debtor(s) | Courtroom 1 |
| | Rhodes Homes Arizona, LLC; Rhodes Arizona | |
| 5 | Properties, LLC; and Elkhorn Investments, Inc. | |

6

7

8

9

**ORDER (A) APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ARIZONA ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363(F) FO THE BANKRUPTCY CODE; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS THERETO; AND (C) GRANTING RELATED RELIEF**

10

11

12

13

14

15

16

17

18

19

20

21

22

This matter coming before the Court on the *Reorganized Debtors' Motion for an Order (A) Approving the Sale of Certain of the Debtors' Arizona Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Pursuant to Section 363(f) of the Bankruptcy Code, (B) Approving the Assumption and Assignment of Executory Contracts Thereto; and (c) Granting Related Relief* [Docket No. __] (the "Motion"); the Court having previously entered the *Order Approving the Bidding Procedures for the Sale of Certain of the Debtors' Arizona Assets; (B) Approving Form of Publication Notice; and (C) Schedule Sale Hearing Date* [Docket No. __]; all interested parties having been duly served with appropriate notice and having been afforded an opportunity to be heard with respect to the Motion; the Court having considered the pleadings relating to the Motion, including the supporting declarations, arguments at the hearing; and after due deliberation, and good cause appearing therefore,

23

24

**IT IS HEREBY ORDERED:**

25

26

27

28

---

Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

1      1.     The Motion is approved.  Any objections received to the Motion are overruled.

2.     The highest and best offer received by the Arizona Debtors for the Arizona Assets is the Asset Transfer Agreement attached hereto as **Exhibit A** from _____ (the "Successful Bidder"), whose highest bid was $_____.  The Asset Transfer Agreement is hereby approved.

3.     If the sale to the Successful Bidder does not close within the time frame contemplated by the Asset Transfer Agreement, then at the sole discretion of the Arizona Debtors, the second highest bid received by _____ in the amount of $_____ shall be deemed the Successful Bidder for purposes of this Order.

4.     Pursuant to sections 105(a), 363(b) and (f) of the Bankruptcy Code, the Arizona Debtors are authorized to execute the Asset Transfer Agreement and take any and all actions necessary to effectuate the transfer the Arizona Assets to the Successful Bidder in accordance with the terms of the Bidding Procedures Order, this Order, and the Asset Transfer Agreement.

5.     Pursuant to section 363(f) of the Bankruptcy Code, the sale of the Arizona Assets shall be free and clear of all claims, liens, interest or encumbrances other than Permitted Encumbrances (as defined in the Asset Transfer Agreement), with all such claims, interests, or encumbrances attaching to the proceeds of the sale in the same order, priority, and extent as previously existed, subject to any claims and defenses the Arizona Debtors may possess thereto. Any holder of a claim, lien, interest or encumbrance who did not timely file an objection to the Motion is deemed to have consented to the sale of the Arizona Assets to the Successful Bidder pursuant to section 365(f)(2) of the Bankruptcy Code.

6.     Pursuant to sections 365(b), (c) and (f) of the Bankruptcy Code, the Arizona Debtors are authorized to assume and assign to the Successful Bidder the executory contracts that are identified in Schedule 1.1(b)(i) to the Asset Transfer Agreement (the "Assumed Contracts").  Upon payment of the cure amount, if any, as indicated on the Exhibit __ to the Motion, all defaults under the Assumed Contracts, if any, shall be deemed satisfied and the Assumed Contracts shall be deemed assumed and assigned to the Successful Bidder as of the Closing Date and the Successful Bidder shall be deemed to have provided adequate assurance of

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

its future performance under the Assumed Contracts within the meaning of sections 365(b) and (f) of the Bankruptcy Code.

7.      The sale transaction contemplated by the Asset Transfer Agreement is undertaken in good faith by the Successful Bidder and the Successful Bidder is entitled to all the protections of under section 363(m) of the Bankruptcy Code.  The reversal or modification on appeal of the authorization provided herein to consummate the sale transaction shall not affect the validity of the sale to the Successful Bidder, except to the extent such authorization is duly stayed pending such appeal prior to such consummation.

8.      Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Arizona Debtors and the Successful Bidder are authorized to immediately consummate the sale of the Arizona Assets to the Successful Bidder.

9.      The Bankruptcy Court shall retain jurisdiction to resolve any matters arising from or relating to the implementation of this Order.

Submitted by:

DATED this 26th day of March 2010.

By:  ___/s/Zachariah Larson_____
LARSON & STEPHENS
Zachariah Larson, Esq. (NV Bar No. 7787)
Kyle O. Stephens, Esq. (NV Bar No. 7928)
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
(702) 382-1170 (Telephone)
(702) 382-1169
zlarson@lslawnv.com
*Attorneys for Debtors and Debtors in Possession*

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

**LR 9021 Certification**

In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

____ The court has waived the requirement of approval under LR 9021.

____ This is a chapter 7 or 13 case, and either with the motion, or at the hearing, I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

___ This is a chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

___ I certify that I have served a copy of this order with the motion, and no parties appeared or filed written objections.

Submitted by:

DATED this 26th day of March, 2010.

By: /s/ Zachariah Larson
    LARSON & STEPHENS
    Zachariah Larson, Esq. (NV Bar No 7787)
    Kyle O. Stephens, Esq. (NV Bar No. 7928)
    810 S. Casino Center Blvd., Ste. 104
    Las Vegas, NV  89101
    (702) 382-1170 (Telephone)
    (702) 382-1169
    zlarson@lslawnv.com
    Attorneys for Debtors

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

# EXHIBIT B



# Michael Stuart

SENIOR VICE PRESIDENT
LAS VEGAS, NEVADA



michael.stuart@colliers.com

## EDUCATION AND QUALIFICATIONS

Bachelor of Science, Industrial Technology

San Jose State University
Spring 1991

## CONTACT DETAILS

MOB  702.743.5700
DIR   702.836.3739
FAX  702.940-4108

Colliers International
3960 Howard Hughes Pkwy.
#150
Las Vegas, NV 89169

www.colliers.com

## AREA OF EXPERTISE

Michael was a founding broker with Stuart Mixer Commercial, which became Colliers International in 1997. With more than 18 years of experience in all aspects of land assemblage and sales, Michael has been a top producer with over $1 billion dollars in sales and was the Colliers Broker of the Year in 2009.

Michael's focus is on residential, commercial and multi-family land. Clients include: KB Homes, Hillwood Residential, Bank of America, Key Bank, City National Bank, Kimball Hill Homes, Vested Housing Group, Centra Properties, Las Vegas Development Associates, Stable Development, and Montecito Companies.

## PROFESSIONAL ACCOMPLISHMENTS

Colliers Broker of the Year 2009

Co Star's Power Broker of the Year 2009

Colliers Top Producer from 1997 – 2009

Over $1 Billion Dollars in Sales

Largest Transaction 2009

Largest Transaction 2010

Over 20,000 lots sold in the Las Vegas Area

## BUSINESS AND EDUCATIONAL BACKGROUND

Michael Stuart graduated in 1991 from San Jose State University, in San Jose, California. Mr. Stuart received his Bachelor of Science degree in Industrial Technology. Since his graduation, Michael has been involved in commercial real estate in Southern Nevada.

## COMMUNITY INVOLVEMENT

Co-Founder of the Colliers International Links for Life Charity Golf Tournament which has risen over $2,000,000 for local children's charities in Las Vegas.

Accelerating success.



# Michael Stuart

SENIOR VICE PRESIDENT
LAS VEGAS LAND DIVISION

michael.stuart@colliers.com

"Michael was instrumental in the disposition of our Southern Nevada real estate portfolio of over 2,000 lots. Michael was able to market our property to a national audience, maximize our portfolio's value, and make personal introductions to qualified pools of buyers. Michael's 20 years of experience in the Las Vegas land market benefited our transaction greatly."

Fred Balda
President
Hillwood Residential

## Client List

Angelo, Gordon & Co. - Louis Friedel, Vice President, Beverly Hills, CA

Atlantic Companies - Jonathan Grebow, President, Florham Park, NJ

Bank of America - Chris Willis, Asset Manager, Irvine, CA

Carwin Advisors - Dino Longi, Senior Director, Las Vegas, NV

Centra Properties - Jim Stuart, President, Las Vegas, NV

City National Bank - Lynne Sullivan, Special Assets, Los Angeles, CA

CN Mortgage - Mark Taylor, Asset Manager, Las Vegas, NV

Dunhill Homes - Don Boettcher, President, Las Vegas, NV

First American Title Company - Greg Corlyn, Las Vegas, NV

Hillwood Residential - Fred Balda, President, Dallas, TX

KB HOME - Bruce Tripp, Land Acquisitions, Las Vegas, NV

Key Bank - Fred Dockweiler, Asset Manager, Vancouver, WA

Kimball Hill Homes - Keith Mitchell, National Director, Rolling Meadows, IL

Montecito Companies - Frank Nielsen, President, Las Vegas, NV

Nevada Title Company - Terry Wright, President, Las Vegas, NV

New West Development - Terry Manley, President, Las Vegas, NV

Standard Pacific Homes - Carol Grumley, Vice President, Scottsdale, AZ

Sun Cal Communities - Brad Shuckhart, Land Acquisitions, Irvine, CA

Thomas & Mack Development - Rick Myers, President, Las Vegas, NV