Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
Telephone:  702.362.7800
Facsimile:  702.362.9472
E-Mail:    nleatham@klnevada.com

Philip C. Dublin (NY Bar No. 2959344)
Meredith A. Lahaie (NY Bar No. 4518023)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone:  212.872.1000
Facsimile:  212.872.1002
E-Mail:    pdublin@akingump.com
           mlahaie@akingump.com

*Counsel for the Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: § | **Case No. 09-14814-LBR** |
| § | **(JointlyAdministered)** |
| **THE RHODES COMPANIES, LLC,** § | |
| aka "Rhodes Homes," *et al.*, § | **Chapter 11** |
| § | |
| **Reorganized Debtors.**[1] § | |
| § | |
| § | |
| § | |
| § | |

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); and Pinnacle Grading, LLC (4838).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

| Affects:<br>☒ All Debtors<br>☐ Affects the following Debtor(s) | § § § § § | REORGANIZED DEBTORS' MOTION FOR (A) DETERMINATION OF OWNERSHIP OF STANLEY MATERIALS AND (B) AUTHORIZATION TO SELL STANLEY MATERIALS |
|---|---|---|

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors"), by and through their undersigned counsel, hereby file this motion (the "Motion") for (i) determination of ownership of the Stanley Materials (as defined below) in which Stanley Consultants, Inc. ("Stanley") has asserted intellectual property rights and (ii) authorization to sell the Stanley Materials pursuant to the Arizona Assets Sale (as defined below). In support of this Motion, the Reorganized Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.   By the Motion, the Reorganized Debtors seek entry of an order declaring that the Reorganized Debtors are entitled to the possession and use of Stanley Materials (as defined below) and, thus are entitled to sell such materials in connection with the sale of the Arizona Assets (as defined below). Pursuant to the plain language of the agreements governing the Reorganized Debtors' relationship with Stanley, Stanley is obligated to deliver all finished or unfinished work product to the Reorganized Debtors upon the termination of the underlying agreements. *See, e.g.*, Consultant Agreement for Kingman 7600 Project, dated July 22, 2004, at Paragraph 19(d) (the "Kingman 7600 Agreement") (attached to the Corbett Declaration as Exhibit 1). Because Stanley terminated the agreements in August 2006, and has been compensated for its work product (or if successful in claim-related litigation will be entitled to recovery under the Plan on account of its unsecured claims), the Stanley Materials are property of the Reorganized Debtors' estates and can therefore be transferred in connection with the sale of the Arizona Assets.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue of this proceeding and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

**A.    General Background**

5. On either March 31, 2009 or April 1, 2009 (collectively, the "Petition Date"), each of the debtors (collectively, the "Debtors") commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

6. On March 12, 2010, the Court entered an order confirming the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.* (the "Plan"). On April 1, 2010, the effective date (the "Effective Date") of the Plan occurred.

**B.    The Stanley Materials**

7. Prior to the Petition Date, Rhodes Homes Arizona, LLC, Rhodes Design & Development Corporation and Rhodes Ranch General Partnership (collectively, the "Arizona Debtors") entered into certain agreements (collectively, the "Stanley Agreements") (copies of which are attached as Exhibit 1 to the Corbett Declaration) with Stanley pursuant to which Stanley agreed to provide planning, engineering and surveying services (the

3

"Engineering Services") related to the development of the Arizona Debtors' real estate assets located in Arizona.

8. As part of its performance of the Engineering Services under the Stanley Agreements, Stanley provided the Arizona Debtors with certain work product, including maps, plats, engineering plans and other materials (collectively, the "Stanley Materials").

9. As set forth in more detail in Stanley's objection (the "Stanley Disclosure Statement Objection") to the disclosure statement for the Plan (Docket No. 617), Stanley asserts intellectual property rights in the Stanley Materials. Stanley makes this assertion notwithstanding the absence of any language in the Stanley Agreements permitting Stanley to assert intellectual property or ownership rights over the Stanley Materials. In addition, Stanley alleges that the Arizona Debtors failed to pay Stanley for the Engineering Services, and that the Reorganized Debtors are therefore not entitled to the use of the Stanley Materials. Finally, Stanley also asserts that the Reorganized Debtors are not permitted to transfer the Stanley Materials without Stanley's written consent.

**C.    The Arizona Assets Sale**

10. Pursuant to Article IV.U of the Plan, the Reorganized Debtors are required to market certain of their assets located in Arizona (the "Arizona Assets") for sale (the "Arizona Assets Sale"). The Arizona Assets consist primarily of raw land in Arizona, miscellaneous office equipment, and other items of personal property. The Arizona Assets are set forth in more detail on schedules to the Asset Transfer Agreement (as defined below), a copy of which is attached as Exhibit 2 to the Corbett Declaration.

11. On March 30, 2010, the Court entered an order (the "Bid Procedures Order") approving (i) certain bidding procedures (the "Bid Procedures") for the Arizona Assets Sale

4

and (ii) the Reorganized Debtors' agreement to sell the Arizona Assets to James Rhodes and his non-Debtor affiliates (collectively, the "Rhodes Entities") for $1,222,999 plus the assumption or posting of a $250,000 grading/street realignment bond (the "Stalking Horse Bid"). Pursuant to the terms of the Bid Procedures Order, the sale of the Arizona Assets to the Rhodes Entities is subject to the Reorganized Debtors receiving a higher and better offer in connection with the auction contemplated by the Bid Procedures.

12. At the time of the entry of the Bid Procedures Order, the Reorganized Debtors and the Rhodes Entities were uncertain as to the assets that would be included the Arizona Assets Sale. In particular, the Reorganized Debtors and the Rhodes Entities had not yet determined whether Stanley Materials would be among the assets transferred pursuant to the Arizona Assets Sale. Accordingly, to accommodate concerns raised by Stanley regarding the potential transfer of Stanley Materials, the Bid Procedures Order was modified to provide that the Reorganized Debtors must (i) obtain an order from the Court determining the extent of the Reorganized Debtors' ownership interest in any Stanley Materials in the event that the Reorganized Debtors determine to sell Stanley Materials pursuant to the Arizona Assets Sale or (ii) file a notice of intention not to sell Stanley Materials. *See* Bid Procedures Order at 2.

**D.     The Asset Transfer Agreement**

13. On April 16, 2010, the Reorganized Debtors entered into an Asset Transfer Agreement (the "Asset Transfer Agreement") with Sagebrush Enterprises, Inc. (the "Stalking Horse Bidder"), one of the Rhodes Entities, in accordance with the terms of the Bid Procedures Order and the Stalking Horse Bid.

5

14. The Asset Transfer Agreement contemplates that certain of the Stanley Materials (collectively, the "Transferring Stanley Materials") (as identified in Exhibit 3 to the Corbett Declaration) will be transferred to the Stalking Horse Bidder in connection with the Arizona Assets Sale. In addition, the Asset Transfer Agreement contemplates the transfer of certain other property (as identified in Exhibit 4 to the Corbett Declaration) to the Stalking Horse Bidder that the Reorganized Debtors do not believe are included in the Stanley Materials, but that the Reorganized Debtors believe Stanley may assert is "derivative" of the Stanley Materials.

**RELIEF REQUESTED**

15. The Reorganized Debtors bring this Motion pursuant to the Bid Procedures Order and seek entry of an order determining that the Reorganized Debtors are (i) entitled to the use and possession of all of the Stanley Materials (including the Transferring Stanley Materials) pursuant to the terms of the Stanley Agreements and applicable law and (ii) authorized to sell Stanley Materials in connection with the Arizona Assets Sale.

**ARGUMENT**

16. Pursuant to the terms of the Stanley Agreements, the Reorganized Debtors are entitled to the use and possession of the Stanley Materials. Moreover, the Stanley Agreements expressly provide for the transfer of the Stanley Materials to the Reorganized Debtors upon termination of such agreements, subject to Stanley's receipt of just and equitable compensation. As set forth below, the Stanley Agreements have been terminated, and Stanley has received just and equitable compensation for the goods and services provided prior to the termination of the Stanley Agreements. Thus, the Reorganized Debtors are entitled to ownership and use of the Stanley Materials for any purpose, including selling

6

the Stanley Materials in connection with the Arizona Assets Sale. *See* Kingman 7600 Agreement at Paragraph 19(d).

**A.    The Stanley Agreements Provide that the Reorganized Debtors are Entitled to the Possession and Use of the Stanley Materials**

16.    The plain terms of the Stanley Agreements demonstrate that the Reorganized Debtors are entitled to the possession and use of the Stanley Materials. Each of the Stanley Agreements includes provisions authorizing the use of the Stanley Materials for any purpose related to the development of the real estate assets that were the subject of the agreements. Paragraph 14(a) of each of the Stanley Agreements provides:

> Consultant's[2] work product shall be delivered to Client per a schedule as mutually agreed by Consultant and Client . . . and may be used by Client for any purpose connected with the project . . . .

*See, e.g.*, Kingman 7600 Agreement at Paragraph 19(a).[3]

17.    The Stanley Agreements further contemplate the transfer of the Stanley Materials to the Arizona Debtors upon termination of such agreements. Each of the Stanley Agreements contains an identical provision regarding the termination of the applicable agreement that requires the transfer of the Stanley Materials to the relevant Arizona Debtor upon termination. Specifically, Paragraph 19(a) of each of the Stanley Agreements provides:

> Upon . . . termination, Consultant shall deliver to the Client, plans, drawings, computer disks, and the like, prepared by the Consultant in connection with this Agreement of said Project . . . .

---

[2] All terms not otherwise defined herein shall have the meaning ascribed to such terms in the Stanley Agreements.

[3] As set forth below, the Stanley Agreements were terminated by Stanley on August 9, 2006. Accordingly, the Reorganized Debtors do not believe that Paragraph 14 continues to confer any rights or obligations on either Stanley or the Reorganized Debtors. Paragraph 14 is discussed herein solely to demonstrate that the Stanley Agreements contemplated that the Arizona Debtors would be broadly authorized to use the Stanley Materials.

7

*See, e.g.*, Kingman 7600 Agreement at Paragraph 19(a). Accordingly, Stanley was required to transfer all of the Stanley Materials to the Arizona Debtors upon termination of the Stanley Agreements.

18. In addition, each of the Stanley Agreements also plainly contemplates that the Arizona Debtors would be able to continue to use the Stanley Materials after termination of the applicable agreement. Paragraph 19(a) of each of the Stanley Agreements further states that, upon termination:

> Consultant's plans, drawings and the like may be directly or indirectly used by the Client to the extent permitted by law; provided however, Client hereby agrees to indemnify and hold Consultant, its officers, directors, employees, consultants, and subcontractors, harmless from and against any and all claims, liabilities, demands, losses, actions, causes of action, damages, costs expenses, fines, and penalties of every nature, including but not limited to those resulting from injury to persons or property.

*See, e.g.*, Kingman 7600 Agreement at Paragraph 19(a). Further support for the Arizona Debtors' authorization to use the Stanley Materials following termination is contained in Paragraph 19(d) of each of the Stanley Agreements. Paragraph 19(d) provides:

> In the event this Agreement is terminated, all finished or unfinished documents, data, drawings, models, photographs, reports or other material prepared by the Consultant shall be entitled to receive just and equitable compensation for work completed on such documents and other materials. All plans, documents, comments, comments from agencies, and notes become eligible for any use by Client in return for the compensation received . . . .

*See, e.g.*, Kingman 7600 Agreement at Paragraph 19(d). Thus, subject to Stanley's receipt of just and equitable compensation for work completed on the Stanley Materials, the Reorganized Debtors are entitled to use the Stanley Materials for any intended purpose following termination of the Stanley Agreements.

8

**B.    The Stanley Agreements have been Terminated**

19.    The Stanley Agreements were terminated prior to the Petition Date by Stanley.  On August 9, 2006, Stanley sent notice of termination of all of the Stanley Agreements to the Arizona Debtors after disputes arose between the parties regarding the work performed by Stanley and the fees and expenses allegedly owed to Stanley.[4]  Accordingly, the Stanley Agreements have been terminated for purposes of Paragraph 19 of the Stanley Agreements, and the Reorganized Debtors are entitled to the use and possession of the Stanley Materials, subject to payment of Stanley's fees and expenses.

**C.    Stanley has Received Compensation for the Engineering Services Provided Pursuant to the Stanley Agreements**

20.    Notwithstanding Stanley's contention to the contrary, Stanley has been justly and equitably compensated for services performed and goods delivered pursuant to the Stanley Agreements.  As set forth in the Declaration of Kevin Corbett in support of the Motion (the "Corbett Declaration") filed contemporaneously herewith, Stanley was paid at least $5,226,818 on account of the Engineering Services performed under the Stanley Agreements and the Stanley Materials.

21.    Despite being invoiced for additional amounts, the Arizona Debtors did not pay invoices that related to, among other things, services that Stanley (i) was requested not to perform, (ii) was not qualified to perform or (iii) performed in a dilatory or ineffective manner, and dispute the validity of such invoices.  As the Court is aware, these disputed amounts are the subject of pending litigation, and the Reorganized Debtors' obligation to pay such amounts has not been established.  Thus, Stanley's assertion that it has not been paid for the amounts it is owed on account of the Engineering Services provided pursuant to

---

[4] A copy of such notice is attached as Exhibit 5 to the Corbett Declaration.

9

the Stanley Agreements is without merit, and Stanley has received payment of all amounts to which it is currently entitled under the Stanley Agreements. Moreover, to the extent Stanley is successful in connection with litigation regarding its entitlement to additional sums on account of the Engineering Services provided to the Arizona Debtors or the Stanley Materials, Stanley will be granted an allowed unsecured claim in the chapter 11 cases and be entitled to receive a distribution in complete satisfaction and discharge of such claims pursuant to the terms of the Plan. *See Marin Foods, Inc. v. Hempy (In re William Rakestraw Co.)*, 450 F.2d 5, 8 (9th Cir. 1971) (holding that court did not err in allowing unsecured claim for goods and services delivered to debtor prior to petition date); Plan at Art. III.B.5 (describing the treatment of general unsecured claims under the Plan); Art. VIII.A. ("Pursuant to section 1141(d) of the Bankruptcy Code . . . the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release . . . of Claims, Interests and Causes of Action of any nature whatsoever . . . .").

22. Based on the foregoing, the Reorganized Debtors are entitled to the use and possession of all of the Stanley Materials (including the Transferring Stanley Materials) and should be authorized to sell Stanley Materials pursuant to the Arizona Assets Sale. The plain terms of the Stanley Agreements dictate such result because (i) Stanley terminated the Stanley Agreements and (ii) Stanley has been paid the amounts it was owed on account of work performed under the Stanley Agreements or will receive consideration therefor in accordance with the terms of the Plan.

## RESERVATION OF RIGHTS

23. The Reorganized Debtors reserve their rights to file a reply supplementing the arguments set forth in the Motion to the extent that an objection is filed to the Motion.

**NOTICE**

24. The Reorganized Debtors will serve the notice of hearing of this Motion by first-class mail, postage prepaid, upon the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) counsel for the Official Committee of Unsecured Creditors; (iii) counsel for Stanley; (iv) counsel for the Stalking Horse Bidder; (v) any party who has executed a confidentiality agreement with the Arizona Debtors for the purchase of the Arizona Assets as of the date of filing this Motion; and (vi) all parties who have requested notice in these cases. The Reorganized Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

25. The Reorganized Debtors submit that the above notice is reasonable and appropriate and should be approved by this Court as adequate and sufficient notice.

**CONCLUSION**

WHEREFORE, for the reasons set forth above, the Reorganized Debtors respectfully request that the Court (i) grant the Motion as it relates to the Reorganized Debtors' interests in the Stanley Materials, (ii) authorize the Reorganized Debtors to sell the Stanley Materials as contemplated by the Bid Procedures Order and (iii) grant the Reorganized Debtors such other relief as is just, proper and equitable.

Dated this 27th day of July, 2010.

By:   /s/  Philip C. Dublin
      Nile Leatham (NV Bar No. 002838)
      KOLESAR & LEATHAM
      Wells Fargo Financial Center
      3320 W. Sahara Ave.
      Las Vegas, NV 89102
      (702) 362-7800 (Telephone)
      (702) 362-9472 (Facsimile)
      Nleatham@klnevada.com

      AKIN GUMP STRAUSS HAUER & FELD LLP
      Philip C. Dublin (NY Bar No. 2959344)
      Meredith A. Lahaie (NY Bar No. 4518023)
      One Bryant Park
      New York, New York 10036
      (212) 872-1000 (Telephone)
      (212) 872-1002 (Facsimile)
      pdublin@akingump.com
      mlahaie@akingump.com

      *Counsel for the Reorganized Debtors*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com