1          UNITED STATES BANKRUPTCY COURT

2              DISTRICT OF NEVADA

3               LAS VEGAS, NEVADA

4   In re:  THE RHODES COMPANIES,    )  AUGUST 24, 2010
    LLC,                             )  E-Filed:  08/27/10
5                                    )
           Debtor.                   )  Case No.
6                                    )  BK-S-09-14814-LBR
    _____)  Chapter 11
7

8

9

10

11              TRANSCRIPT OF PROCEEDINGS
                         OF
12     MOTION TO COMPEL REIMBURSEMENT OF FEES AND EXPENSES
                PURSUANT TO CONFIRMATION ORDER
13          AND CASH-COLLATERAL ORDER, NO. 1182
                         AND
14              CONTINUED STATUS HEARING
     RE: OBJECTION TO JAMES RHODES' PROOF OF CLAIM NO. 814-33
15  AND AMENDMENT OF SCHEDULES AND ASSETS AND LIABILITIES, NO. 1183
                         AND
16         SECOND APPLICATION FOR COMPENSATION
    OF ORDINARY-COURSE PROFESSIONAL BAIRD, WILLIAMS & GREER, LLP,
17             FOR ALLOWANCE AND PAYMENT
        OF COMPENSATION AND REIMBURSEMENT OF EXPENSES
18             IN EXCESS OF CAP PERMITTED
     BY THE ORDINARY-COURSE PROFESSIONAL COMPENSATION ORDER;
19       DECLARATION OF DARYL M. WILLIAMS IN SUPPORT THEREOF
              THE RHODES COMPANIES, LLC, NO. 1204
20                       AND
    MOTION FOR DETERMINATION OF OWNERSHIP OF STANLEY MATERIALS
21        AND MOTION TO SELL STANLEY MATERIALS, NO. 1219
                         AND
22             ORDER SHORTENING TIME
     RE: APPLICATION (MOTION) TO APPROVE STIPULATION
23         RESOLVING REORGANIZED DEBTOR'S OBJECTION
             TO CREDIT SUISSE'S MOTION TO COMPEL
24          REIMBURSEMENT OF FEES AND EXPENSES
             PURSUANT TO CONFIRMATION ORDER
25          AND CASH-COLLATERAL ORDER, NO. 1262

2

                              VOLUME 1
                  BEFORE THE HONORABLE LINDA B. RIEGLE
                     UNITED STATES BANKRUPTCY JUDGE

                        Tuesday, August 24, 2010

                            1:30 p.m.

    Court Recorder:         Patricia Lilly


    Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

3

```
 1     APPEARANCES:

 2     For the Reorganized      PHILIP C. DUBLIN, ESQ.
       Debtor:                  MEREDITH A. LAHAIE, ESQ.
 3                              Akin, Gump, Strauss, Hauer & Feld, LLP
                                One Bryant Park
 4                              New York, New York 10036

 5     For the Debtor:          ZACHARIAH LARSON, ESQ.
                                Larson & Stephens, LLC
 6                              810 South Casino Center Boulevard
                                Suite 104
 7                              Las Vegas, Nevada 89101

 8     For Stanley             JANIECE S. MARSHALL, ESQ.
       Consultants, Inc.:      Anderson, McPharlin & Conners, LLP
 9                              777 North Rainbow Boulevard
                                Suite 145
10                              Las Vegas, Nevada 89107

11     For James Rhodes:        BRETT A. AXELROD, ESQ.
                                Greenberg Traurig, LLP
12                              3773 Howard Hughes Parkway
                                Suite 400-N
13                              Las Vegas, Nevada 89169

14                              KEVIN N. ANDERSON, ESQ.
                                Fabian & Clendenin
15                              215 South State Street
                                Suite 1200
16                              Salt Lake City, Utah 84111

17     For Credit Suisse:       VAN C. DURRER, II, ESQ.
                                Skadden, Arps, Slate, Meagher
18                               & Flom, LLP
                                300 South Grand Avenue
19                              Suite 3400
                                Los Angeles, California
20
                                JEFFREY SYLVESTER, ESQ.
21                              Sylvester & Polednak, Ltd.
                                7371 Prairie Falcon Road
22                              Suite 120
                                Las Vegas, Nevada 89128
23

24

25
```

4

1          (Court convened at 01:44:40 p.m.)

2               THE CLERK:  All rise.

3          (Colloquy not on the record.)

4               THE CLERK:  Bankruptcy court is now in session.

5               THE COURT:  Be seated.

6          (Colloquy not on the record.)

7               THE COURT:  All right.  Rhodes Companies.

8          Appearances, please.

9               MR. DUBLIN:  Good afternoon, your Honor.  Phil Dublin

10    and Meredith Lahaie from Akin, Gump, Strauss, Hauer & Feld on

11    behalf of the reorganized debtors.

12               MR. LARSON:  Good afternoon, your Honor.

13    Zach Larson, local counsel for the Rhodes Companies.

14               MS. MARSHALL:  Janiece Marshall on behalf of

15    Stanley Consultants, Inc.

16               MR. AXELROD:  Good afternoon, your Honor.

17    Brett Axelrod for Jim Rhodes.

18               MR. DURRER:  Good afternoon, your Honor.

19    Van Durrer, Skadden, Arps, Slate, Meagher & Flom on behalf of

20    Credit Suisse, the agent for the first-lien secured lenders,

21    and with me is Jeffrey Sylvester from Sylvester & Polednak.

22               THE COURT:  Okay.

23               MR. ANDERSON:  Kevin Anderson on behalf of

24    Mr. Rhodes.

25               THE COURT:  Okay.  All right.  Thank you.  All right.

1          The first I have is the motion to compel reimbursement and

2    with that goes the stipulation concerning those matters.

3          MR. DURRER:  Good afternoon, your Honor.  Again,

4    Van Durrer, Skadden, Arps, for Credit Suisse as the agent for

5    the first-lien bank group.

6          Yes, your Honor.  We are happy to report that we were able

7    to resolve the motion to compel.  The stipulation sets forth

8    the terms.

9          Your Honor may recall that the amount originally sought

10   was approximately $915,000 as a reimbursement for the

11   first-lien agent's counsel's fees for Skadden, and we've agreed

12   with the reorganized debtors that the amount would be reduced

13   to $700,000.

14          THE COURT:  Okay.  And I assume the former

15   Unsecured Creditors Committee has been consulted?

16          MR. DURRER:  They were noticed with the motion, and

17   there were no objections filed, your Honor.

18          THE COURT:  Okay.  And this does not -- there will be

19   sufficient funds that these can be paid.  I know it's been

20   reduced.

21          But, I mean, the impact is such that this still won't

22   adversely affect the plan.  That was part of the concern

23   before, obviously --

24          MR. DURRER:  My --

25          THE COURT:  -- the concerns --

```
 1              MR. DURRER:  -- understanding is --
 2              THE COURT:  -- I raised.
 3              MR. DURRER:  -- that is correct, but I'll let
 4    Mr. Dublin address that.
 5              MR. DUBLIN:  And, again, for the record, Phil Dublin,
 6    Akin, Gump, on behalf of the reorganized debtors.  That's
 7    correct, your Honor.
 8         In connection with when the plan went effective, the full
 9    amount requested by Skadden was put in reserve, so the full
10    $915,000 is currently sitting in a separate segregated account
11    awaiting the outcome of the motion and now the stipulation.
12         So there will be no adverse impact on the estate.  In
13    actuality, we'll get the $215,000 that's sitting outside
14    brought back in for operations.
15              THE COURT:  Okay.  All right.  So that's approved, so
16    that takes care of No. 1, and No. 5 is off calendar.
17              MR. DUBLIN:  Thank you.
18              MR. DURRER:  And with that, your Honor, may we be
19    excused --
20              THE COURT:  Yes.
21              MR. DURRER:  -- from the balance --
22              THE COURT:  Thank you.
23              MR. DURRER:  -- of the hearing?
24         Thank you, your Honor.
25              THE COURT:  Next, we have --
```

1          (Colloquy not on the record.)

2          THE COURT:  Let's go to No. 3, the professional

3    application of Baird, Williams & Greer.

4          (Colloquy not on the record.)

5          MR. DUBLIN:  Your Honor, this application is the

6    second application of Baird, Williams & Greer.  They're an

7    ordinary-course professional during the pendency of the

8    Chapter 11 cases for the debtors.

9          Pursuant to the ordinary-course professional order, the

10   cap that any professional could -- the amount that any

11   professional could incur was subject to a cap of $25,000 a

12   month.

13         Back in March, the Baird firm went over that cap by

14   approximately $17,000 -- excuse me -- the exact amount being

15   $42,696.69.  There have been no objections filed to the

16   application, and we request that it be approved.

17         THE COURT:  All right.  And that's approved.

18         MR. DUBLIN:  Thank you.

19         THE COURT:  Okay.  And then let's go next to the

20   objection to claim of Jim Rhodes.

21         MR. DUBLIN:  Yes, your Honor.  The reorganized

22   debtors and Mr. Rhodes have been working on trying to determine

23   what's the most efficient way to proceed with this matter.

24         And in that regard, the parties have agreed subject to

25   approval of the Court to bifurcate the process, so that we can

1    go ahead and litigate the legal issue of whether Mr. Rhodes is

2    entitled to a claim on account of the taxes that were paid.

3        In that regard, we filed a proposed stipulation and order

4    setting forth certain stipulated facts which we understand from

5    chambers the request was made that we modify that and change it

6    to just a stipulation, remove the order.

7        We have not submitted the modified stipulation as of yet,

8    just awaiting the outcome of the status conference today, and

9    we were hoping to get some dates from your Honor, so that we

10    could have a hearing on that bifurcated process, the first, the

11    legal entitlement, and then to the extent --

12            THE COURT:  Okay.

13            MR. DUBLIN:  -- there is a legal entitlement an

14    evidentiary hearing in the future.

15            THE COURT:  Well, one thing I want you to do is to

16    brief slash rebrief the issues now that you have the stipulated

17    facts.  I'm not going to go back and look at your briefs and

18    plug in those facts.  That's your job.

19            MR. DUBLIN:  Okay.

20            THE COURT:  So now that you have the stipulated

21    facts, and you've bifurcated the issues, I want new briefs.  I

22    understand full well that much of the legal argument may be

23    same.  That's the beauty of the cut, you know, and the

24    copy-and-paste function.

25            MR. DUBLIN:  Yeah.

9

```
1              THE COURT:  But I want it in one place at one time.

2              MR. DUBLIN:  Understood.

3              THE COURT:  So with that, you tell me, first of all,

4     how long you need to complete that briefing between you, then

5     I'll want at least 30 days after that.

6              MR. DUBLIN:  Well, I would think the reorganized

7     debtors can get that completed within a week to ten days,

8     your Honor.

9              THE COURT:  Okay.  And how long do you want,

10    Ms. Axelrod?

11             MR. AXELROD:  Your Honor, we would request an

12    additional ten days after we've received the brief from the

13    reorganized debtors.

14             THE COURT:  Okay.  And then a reply.

15             MR. DUBLIN:  A week.

16             THE COURT:  Okay.  So that's just about 10, 20 --

17    that's just about -- that would take us just about to

18    September 17th, so let's set it for October 25th.

19             MR. AXELROD:  Your Honor, unfortunately, October 25th

20    I'm going to be out of state.

21             THE COURT:  Okay.

22             MR. AXELROD:  If we could have November, anytime the

23    first week is fine with me.

24             THE COURT:  The whole week of October 25th you're

25    out?
```

10

```
 1              MR. AXELROD:  Yes, I am --
 2              THE COURT:  Okay.
 3              MR. AXELROD:  -- your Honor.
 4              THE COURT:  So then let's go to the first week in
 5    November, then.  How about November 4th at 9:30?
 6              MR. AXELROD:  That's fine by me, your Honor.
 7              THE COURT:  And as long as I have the last brief by
 8    October 4th, you can adjust your schedules accordingly.
 9              MR. DUBLIN:  We will.  Thank you, your Honor.  We
10    will consult with Ms. Axelrod and set up a schedule.
11              THE COURT:  Okay.  I just want the -- I mean, by the
12    last brief, I mean the reply brief --
13              MR. DUBLIN:  Understood.
14              THE COURT:  -- as well.
15              MR. DUBLIN:  Understood.
16              THE COURT:  Okay.  Good.  And then I'm not even going
17    to give you a trial date if we have to go to trial until after
18    we complete that process.
19              MR. DUBLIN:  Agreed, your Honor.
20              THE COURT:  Okay.  All right.  Good.  All right.
21        Now, next, we have the motion for determination.
22              MR. DUBLIN:  Your Honor, my colleague, Ms. Lahaie, is
23    going to handle that.
24              THE COURT:  Okay.
25              THE CLERK:  Your Honor, I just thought I'd
```

1   (indiscernible) a little.  (Indiscernible) a stipulation set up

2   for a hearing itself?

3           THE COURT:  Okay.  Let me ask when you -- you file

4   your stipulated facts separately, and then if you could do the

5   order which sets forth your briefing schedule and the hearing

6   date that would save us having to do that order.

7           MR. DUBLIN:  Sure.

8           THE COURT:  Okay?

9           MR. DUBLIN:  Not a problem.

10           THE COURT:  Great.

11           MR. DUBLIN:  Thank you.

12           THE COURT:  All right.  Before we start, the question

13   I have is why shouldn't this be brought as an adversary.

14   You're really seeking declaratory relief.

15       I mean, I can understand.  The bidding procedures talks

16   about the Court having decided the determination issue, but it

17   doesn't say it's to be done by a motion nor does it say it's by

18   an adversary.  Why isn't this an adversary?

19           MS. LAHAIE:  Your Honor, it was my understanding that

20   it was something that could be dealt with based on a motion.

21   But if it's something you feel needs to be addressed by an

22   adversary proceeding, we're certainly willing to commence one.

23           THE COURT:  Okay.  And the next question which

24   Mr. Dublin may know more than you just because he's been

25   involved in the process along the way --

1           MS. LAHAIE:  Um-h'm.

2           THE COURT:  -- is where are we -- have you not

3    started the marketing?

4           MS. LAHAIE:  We have, your Honor.

5           THE COURT:  You have started --

6           MS. LAHAIE:  We have --

7           THE COURT:  -- marketing.

8           MS. LAHAIE:  -- been marketing.

9           THE COURT:  But the bidding procedures basically

10   suggests you're not going to market until you have a

11   determination.

12           MR. DUBLIN:  And if I may, your Honor?  We have

13   commenced marketing of the assets, and the current bid deadline

14   as we would get to in connection with the next matter on the

15   agenda is August 30.

16       We have not been marketing the assets, including the

17   disputed Stanley materials.  We have included it in the data

18   room, however, the pleadings related to the Stanley materials,

19   so that the parties that are reviewing the data room understand

20   what the issue is.

21       And, right now, those parties are analyzing whether

22   to make a bid or not, not including the Stanley

23   materials.

24           THE COURT:  So do we have -- of course, we have no

25   sense 'til August 30th if anybody's going to bid, right?

1          MR. DUBLIN:  Right now, based on conversations with

2     our consultant as well as with the company, the company expects

3     that the only bidders are going to be Mr. Rhodes who is the

4     stalking-horse bidder as well as Stanley, and the reason for

5     Stanley is just based on the representations they've made

6     before the Court.

7          The other parties that have been in to review the data

8     room, have had conversations with the company, have not

9     expressed a keen interest in acquiring assets.

10          THE COURT:  Okay.  Well, let me tell you my practical

11     view which may result into a legal view, but let me tell you my

12     practical view.

13          It seems to me that if Mr. Rhodes is the only bidder this

14     estate shouldn't spend the money to get those plans back for

15     him, and, secondly, we have that Arizona litigation pending.

16          So I am just a little perplexed why, quite frankly, I

17     shouldn't just determine that the materials will be decided by

18     the Arizona court, and why does it matter to this estate?  It's

19     not going to make any difference to this estate if nobody else

20     bids.

21          MR. DUBLIN:  Your Honor, we don't disagree with that

22     position at all.  The reorganized debtors brought on the motion

23     based on concerns that if we did not Mr. Rhodes would argue in

24     front of this Court that we have breached our obligations to

25     try to get him the assets for which he has put in his -- I

1    don't remember the dollar amount -- 1,000,000-plus-dollar bid.

2          THE COURT:  Well, but that bid -- there was no

3    guarantee those assets were included.

4          MR. DUBLIN:  That's correct.  We only had to transfer

5    what we own, so we are seeking a determination as to what it is

6    that the reorganized debtors own.

7        To the extent the reorganized debtors own these assets, we

8    believe we can transfer them.  If we don't, we can't.

9    Mr. Rhodes is bound to acquire the assets at that set price,

10   the question being what are the assets that he's acquiring.

11         THE COURT:  Okay.

12         MR. DUBLIN:  And if I may just supplement one comment

13   from Ms. Lahaie?  To the extent that the Court were to believe

14   that an adversary proceeding was required, we believe that both

15   the motion that was filed as well as the responsive pleadings

16   that have been filed by Stanley are substantially similar to

17   what would be contained in an adversary proceeding.

18       And we would request that the Court consider this

19   contested matter as it would do under Bankruptcy Rule 9014,

20   apply the 7000 rules, and treat it as an adversary proceeding

21   to the extent the Court wishes to do so.

22         THE COURT:  Okay.  So let me hear from the other

23   parties as to why this shouldn't just be decided by the Arizona

24   court.

25         MR. AXELROD:  Brett Axelrod again for Mr. Rhodes.

1    Part of the issue is, you know, how can this Court conduct a

2    sale, your Honor, until there's a determination of what the

3    reorganized debtors actually, in fact --

4             THE COURT:  Well, the debtor's transferring what the

5    debtor has, and the point is is just like in any quitclaim

6    deed.

7        There's no warranties.  They've got it.  If you want to go

8    fight about it later, you go fight about it.  That happens all

9    the time.

10            MR. AXELROD:  I understand, your Honor, but part of

11   it was bargained for as part of the, you know, setting for the

12   stalking-horse bid.

13       And the asset purchase agreement was the debtor's duties

14   to go ahead and, you know, pursue on this determination, and

15   that's --

16            THE COURT:  Well, it was your client.  Why didn't

17   your client --

18            MR. AXELROD:  My client was --

19            THE COURT:  It was Mr. Rhodes.  Why --

20            MR. AXELROD:  -- Mr. --

21            THE COURT:  And he ran the company.

22            MR. AXELROD:  And the --

23            THE COURT:  He never once brought a turnover motion.

24   He never once thought that this should be litigated in this

25   court before he then slips through and wants to buy this

1    property, so why should the reorganized debtor pay for him to

2    do this?

3           MR. AXELROD:  Because, your Honor, that was part of

4    what was bargained for as part of the global settlement and

5    part of the mediation process.

6           And to, you know, pick and choose of what was bargained

7    for at that point in time now later on is, you know, asking,

8    you know, us to then, you know, revisit the whole settlement

9    which was part of the fundamental part of the plan of

10   reorganization.

11          And I don't think that we can now go back and bifurcate

12   what has already been, you know, set in stone through the

13   confirmation process and through the mediation, and that is,

14   you know, my client made a good bargain.

15          THE COURT:  Okay.  Well, then this makes it easy for

16   me.  I determine that this is integrally wrapped up with the

17   Arizona litigation, and that the Arizona court should determine

18   who has the rights to the property.

19          So the estate conveys its rights to the litigation --

20   well, its rights to -- the creditors have the rights against

21   Stanley.

22          But the rights of whoever is the bidder will be to assert

23   that it has the rights to the property in the Arizona

24   litigation.

25          MR. AXELROD:  And, your Honor, just so we can

1    clarify, you know, for standing purposes in the, you know,

2    Arizona litigation because if my client decides to go forward

3    that to have the, you know, intervention rights, can that be

4    incorporated --

5              THE COURT:  Right.  The estate --

6         MR. AXELROD:  -- in the order?

7              THE COURT:  I determine that the estate's -- the

8    right to determine is something which I should abstain

9    from.

10        So, therefore, the matter should be determined by the

11   Arizona court, and the successful purchaser shall have the

12   right in that litigation to urge that it has the rights to the

13   product, to the matter.

14        And, of course, I am not determining whether or not there

15   may be bankruptcy rights which were or were not cut off, but

16   the state courts are perfectly capable of determining the

17   effect, the impact, of a bankruptcy.

18             MR. AXELROD:  And, your Honor, we would just request,

19   too, that pending the ultimate, you know, sale of the Arizona,

20   you know, assets and, you know, during that, you know, gap

21   period for lack of a better description that Mr. Rhodes would

22   have the ability to participate if there's any settlement

23   negotiations that are occurring that would affect what the

24   estate's rights are.

25             THE COURT:  I think that was the mistake before.  You

1    guys didn't include Stanley in your initial discussions, so

2    that was part of the problem, but that makes sense to bring all

3    the participants together.

4            MR. AXELROD:  Thank you, your Honor.

5            THE COURT:  Okay.

6            MR. DUBLIN:  Your Honor, with that ruling, the main

7    concern for the reorganized debtors is that the sale process

8    move forward because we have no idea how long the state court

9    litigation may take, and we want to make sure that we can move

10   forward --

11           THE COURT:  I agree.

12           MR. DUBLIN:  -- with the sale process.

13           THE COURT:  So your bidding deadline's already

14   August 30th.

15           MR. DUBLIN:  That's correct, and we have a --

16           THE COURT:  I have made my determination under the

17   rules --

18           MR. DUBLIN:  Right.

19           THE COURT:  -- that it's when the determination is

20   made that's my determination, so we're still on schedule.

21           MR. DUBLIN:  Great.  And so we previously had

22   September 13 scheduled for our sale hearing, and I --

23           THE COURT:  And we needed to move that, didn't we?

24   Wasn't that right because the times weren't working right?

25           MR. DUBLIN:  No.  I think that --

```
 1              THE COURT:  Oh, does that time --

 2              MR. DUBLIN:  That still worked.

 3              THE COURT:  -- still work?

 4              MR. DUBLIN:  Yes.  Yeah.

 5              THE COURT:  Okay.  September 13th is still fine.

 6              MR. DUBLIN:  Okay.  Great.

 7              THE COURT:  Okay?  So the sale will be

 8   September 13th.

 9              MR. DUBLIN:  And I think that handles the next agenda

10   item as well, your Honor --

11              THE COURT:  Right.

12              MR. DUBLIN:  -- which was the status conference on

13   the sale.

14              THE COURT:  Okay.  So, again, you'll know whether or

15   not there's any other bidders, and we'll have the bidding on

16   September 13th.

17        And for purposes of the sale just again to make it clear,

18   it's, in essence, the debtor's quitclaim.  We're conveying to

19   you what rights we have or don't have which may or may not

20   include that.  You're free to determine that in the state court

21   proceedings.

22              MR. DUBLIN:  Thank you, your Honor.

23              THE COURT:  Okay?  Thank you.

24        (Colloquy not on the record.)

25              THE CLERK:  All rise.
```

1          (Court concluded at 02:01:18 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      I certify that the foregoing is a correct transcript

2    from the electronic sound recording of the proceedings in

3    the above-entitled matter.

4

5

6    /s/ Lisa L. Cline                        08/27/10

7    _____        _____
     Lisa L. Cline, Transcriptionist          Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25