James I. Stang, Esq. (CA Bar No. 94435)
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
        scho@pszjlaw.com
        wdisse@pszjlaw.com

E-File:  September 15, 2010

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com

Attorneys for Reorganized Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re:

THE RHODES COMPANIES, LLC, aka
"Rhodes Homes, et al.,[1]

        Debtors.

Case No.: BK-S-09-14814-LBR
(Jointly Administered)

Chapter 11

---

[1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Affects:
☐    All Debtors
☒    Affects the following Debtor(s)
Rhodes Homes Arizona, LLC; Rhodes Arizona
Properties, LLC; and Elkhorn Investments, Inc.

1

2

3

4

## NOTICE OF ENTRY OF ORDER

5

**TO: ALL INTERESTED PARTIES:**

6

7        YOU ARE HEREBY NOTICED that an **ORDER (A) APPROVING THE SALE OF**

**CERTAIN OF THE DEBTORS' ARIZONA ASSETS FREE AND CLEAR OF ALL**

8

**LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION**

9

**363(F) OF THE BANKRUPTCY CODE; (B) APPROVING THE ASSUMPTION AND**

10

**ASSIGNMENT OF EXECUTORY CONTRACTS THERETO; AND (C) GRANTING**

11

**RELATED RELIEF [RE: DOCKET NO. 1212]** was entered on September 15, 2010.  A copy

12

of the Order is attached hereto.

13        **DATED** this 15th day of September, 2010.

14                                **LARSON & STEPHENS**

15

16                                 /s/ Zachariah Larson, Esq.
                                Zachariah Larson, Bar No. 7787
17                                Kyle O. Stephens, Bar No. 7928
                                810 S. Casino Center Blvd., Suite 104
18                                Las Vegas, NV 89101
                                Attorneys for Reorganized Debtor
19

20

21

22

23

24

25

26

27

28

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

73203-002\DOCS_LA:201044.1

**Entered on Docket
September 15, 2010**

Hon. Linda B. Riegle
United States Bankruptcy Judge

8  James I. Stang, Esq. (CA Bar No. 94435)
9  Shirley S. Cho, Esq. (CA Bar No. 192616)
   PACHULSKI STANG ZIEHL & JONES LLP
10 10100 Santa Monica Blvd., 11th Floor
   Los Angeles, California 90067-4100
11 Telephone: 310/277-6910
   Facsimile: 310/201-0760
12 Email: jstang@pszjlaw.com
13        scho@pszjlaw.com
          wdisse@pszjlaw.com

14 Zachariah Larson, Esq. (NV Bar No. 7787)
15 LARSON & STEPHENS
   810 S. Casino Center Blvd., Ste. 104
16 Las Vegas, NV 89101
   Telephone: 702/382.1170
17 Facsimile: 702/382.1169
   Email: zlarson@lslawnv.com
18
19 Attorneys for Reorganized Debtors and
   Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:                                  Case No.: BK-S-09-14814-LBR
                                        (Jointly Administered)

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow,

73203-002\DOCS_LA:217565.3

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

| THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1] | Chapter 11 |
|---|---|
| Debtors. | |
| Affects:<br>☐   All Debtors<br>☒   Affects the following Debtor(s)<br>Rhodes Homes Arizona, LLC; Rhodes Arizona Properties, LLC; and Elkhorn Investments, Inc. | Hearing Date: September 13, 2010<br>Hearing Time: 9:30 a.m.<br>Courtroom 1 |

**ORDER (A) APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ARIZONA ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363(F) FO THE BANKRUPTCY CODE; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS THERETO; AND (C) GRANTING RELATED RELIEF [RE: DOCKET NO. 1212]**

This matter coming before the Court on the *Reorganized Debtors' Motion for an Order (A) Approving the Sale of Certain of the Debtors' Arizona Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Pursuant to Section 363(f) of the Bankruptcy Code, (B) Approving the Assumption and Assignment of Executory Contracts Thereto; and (c) Granting Related Relief* [Docket No. 1212] (the "Motion"); the Court having previously entered the *Order Approving the Bidding Procedures for the Sale of Certain of the Debtors' Arizona Assets; (B) Approving Form of Publication Notice; and (C) Schedule Sale Hearing Date* [Docket No. 1075]; all interested parties having been duly served with appropriate notice and having been afforded an opportunity to be heard with respect to the Motion; the Court having considered the pleadings relating to the Motion, including the supporting declarations, arguments at the hearing; and after due deliberation, and good cause appearing therefore,

IT IS HEREBY ORDERED:

    1.    The Motion is approved. Any objections received to the Motion are overruled.

    2.    The highest and best offer received by the Arizona Debtors for the Arizona Assets is the asset transfer agreement attached hereto as Exhibit A (the "Asset Transfer

[1] LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14863); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

LARSON & STEPHENS
810 S. Casino Center Blvd, Suite 104
Las Vegas, Nevada 89101

1 Agreement") from the Rhodes Entities (the "Successful Bidder"), whose highest bid was

2 $1,222,999. The Asset Transfer Agreement is hereby approved.

3      3.     Certain unencumbered construction materials and personal property furnishings

4 inside the model home as more fully described in that *Notice of Intent to Transfer*

5 *Miscellaneous Personal Property in Connection with Reorganized Debtors' Motion for an*

6 *Order (A) Approving the Sale of Certain of the Debtors' Arizona Assets Free and Clear of All*

7 *Liens, Claims, Interests and Encumbrances Pursuant to Section 363(f) of the Bankruptcy Code,*

8 *Etc.* may also be transferred to the Successful Bidder pursuant to the Asset Transfer Agreement

9 as though fully set forth therein upon negative notice of 15 days from the date of service of that

10 notice provided that no objections are received thereto.

11      4.     In connection with the home located on 5384 S. Alexandrite, Golden Valley

12 Arizona, 86413, which home is being sold under the Asset Transfer Agreement to the

13 Purchaser, the Arizona Debtors shall, upon the Closing, waive any and all rights to the

14 proceeds of such sale and return the deposit amount of $2,000 received by Elkhorn Investments,

15 Inc. to the counterparty to the rejected home.

16      5.     With respect to allegedly missing or stolen pipe on the property to be transferred

17 to the Arizona Debtors, the Arizona Debtors will render reasonable assistance and cooperation

18 to the Purchaser in pursuing such claim, provided however, that the Arizona Debtors shall not

19 be required to pay out of pocket for any such assistance or cooperation. The parties reserve

20 their rights with respect to allocation of any insurance proceeds that may be recovered thereon.

21      6.     Pursuant to sections 105(a), 363(b) and (f) of the Bankruptcy Code and as

22 contemplated under the Plan of Reorganization in these cases, the Arizona Debtors are

23 authorized to execute the Asset Transfer Agreement and take any and all actions necessary to

24 effectuate the transfer the Arizona Assets to the Successful Bidder in accordance with the terms

25 of the Bidding Procedures Order, this Order, and the Asset Transfer Agreement by a quitclaim

26 bill of sale.

27      7.     Pursuant to section 363(f) of the Bankruptcy Code, the sale of the Arizona Assets

28 shall be free and clear of all claims, liens, interest or encumbrances other than Permitted

LARSON & STEPHENS
810 S. Casino Center Blvd, Suite 104
Las Vegas, Nevada 89101

1   Encumbrances (as defined in the Asset Transfer Agreement), with all such claims, interests, or

2   encumbrances attaching to the proceeds of the sale in the same order, priority, and extent as

3   previously existed, subject to any claims and defenses the Arizona Debtors may possess thereto.

4   Any holder of a claim, lien, interest or encumbrance who did not timely file an objection to the

5   Motion is deemed to have consented to the sale of the Arizona Assets to the Successful Bidder

6   pursuant to section 365(f)(2) of the Bankruptcy Code.

7       8.      Pursuant to sections 365(b), (c) and (f) of the Bankruptcy Code, the Arizona

8   Debtors are authorized to assume and assign to the Successful Bidder the executory contracts

9   that are identified in Schedule 1.1(b)(i) to the Asset Transfer Agreement (the "Assumed

10  Contracts"). Upon payment of the cure amount, if any, as indicated on Schedule 1.1(b)(i) to the

11  Motion, all defaults under the Assumed Contracts, if any, shall be deemed satisfied and the

12  Assumed Contracts shall be deemed assumed and assigned to the Successful Bidder as of the

13  Closing Date and the Successful Bidder shall be deemed to have provided adequate assurance of

14  its future performance under the Assumed Contracts within the meaning of sections 365(b) and

15  (f) of the Bankruptcy Code.

16      9.      The sale transaction contemplated by the Asset Transfer Agreement is

17  undertaken in good faith by the Successful Bidder and the Successful Bidder is entitled to all the

18  protections of under section 363(m) of the Bankruptcy Code. The reversal or modification on

19  appeal of the authorization provided herein to consummate the sale transaction shall not affect

20  the validity of the sale to the Successful Bidder, except to the extent such authorization is duly

21  stayed pending such appeal prior to such consummation.

22      10.     The terms of this Order shall govern in the event of any inconsistency between

23  this Order and the Asset Transfer Agreement.

24      11.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Arizona Debtors

25  and the Successful Bidder are authorized to immediately consummate the sale of the Arizona

26  Assets to the Successful Bidder.

27      12.     The Bankruptcy Court shall retain jurisdiction to resolve any matters arising

28  from or relating to the implementation of this Order.

LARSON & STEPHENS
810 S. Casino Center Blvd, Suite 104
Las Vegas, Nevada 89101

1    Submitted by:

2    DATED this 13th day of September, 2010.

3
     By:    /s/Zachariah Larson
4    LARSON & STEPHENS
     Zachariah Larson, Esq. (NV Bar No. 7787)
5    Kyle O. Stephens, Esq. (NV Bar No. 7928)
     810 S. Casino Center Blvd., Ste. 104
6    Las Vegas, NV 89101
     (702) 382-1170 (Telephone)
7    (702) 382-1169
     zlarson@lslawnv.com
8    Attorneys for Debtors and Debtors in Possession
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

EXECUTION COPY

ı

## ASSET TRANSFER AGREEMENT

**THIS ASSET TRANSFER AGREEMENT** (this "*Agreement*"), dated April 16, 2010, is by and among each of (i) Rhodes Arizona Properties, LLC, a Nevada limited liability company ("*RAP*"), (ii) Elkhorn Investments, Inc., a Nevada corporation ("*EII*"), and (iii) Rhodes Homes Arizona LLC, an Arizona limited liability company (together with RAP and EII, the "*Arizona Entities*")), and Sagebrush Enterprises, Inc., a Delaware corporation ("*Purchaser*" and collectively with the Arizona Entities, the "*Parties*").

## RECITALS

A.      **WHEREAS**, on either March 31, 2009 or April 1, 2009, the Arizona Entities, as well as certain other affiliated entities, each filed voluntary petitions for relief (the "*Voluntary Petitions*") under chapter 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Nevada (the "*Bankruptcy Court*").

B.      **WHEREAS**, the Arizona Entities desire to transfer certain of their respective assets listed on Schedule I and Schedule II to Purchaser (the "*Arizona Assets*") at the Closing, in the manner and subject to the terms and conditions set forth herein and as authorized under sections 105, 363 and 365 of the Bankruptcy Code. All other assets of the Arizona Entities shall be retained by the Arizona Entities and excluded from the transfer, including, without limitation, any rights and obligations associated with the Stanley litigation that is currently pending in the County of Maricopa Superior Court for the State of Arizona entitled *Rhodes Homes Arizona, LLC v. Stanley Consultants, Inc.*, Case No. CV 2006-011358.

C.      **WHEREAS**, although owned by the Arizona Entities, the title of the Arizona Assets listed on Schedule II is currently not titled in the name of the Arizona Entities and is the subject of a request by the Parties pending in the Bankruptcy Court to quitclaim title back to the Arizona Entities.

**NOW, THEREFORE**, in consideration of the promises, the respective representations, warranties, covenants and agreements contained in this Agreement, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties agree as set forth below.

## ARTICLE 1
## TRANSFER OF ARIZONA ASSETS

### 1.1     Transfer of Arizona Assets.

(a)     Transfer. At the Closing, all of the Arizona Entities' right, title and interest in and to the Arizona Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "*Interests*") in accordance with Bankruptcy Code § 363(f), with such Interests to attach to the net proceeds of the sale of the Arizona

Assets, except as to permitted encumbrances that are identified by the Bidder prior to the Closing with the consent of the Arizona Entities.

(b)     Assumed Liabilities.     At the Closing, Purchaser shall assume and become responsible for only the following liabilities and obligations of the Arizona Entities: (i) all liabilities under the contracts listed on Schedule 1.1(b)(i) (the "*Assumed Contracts*") whether arising before or after the Closing, and (ii) any amounts required by section 365(b)(1) of the Bankruptcy Code to cure any defaults by the Arizona Entities under an Assumed Contract and to pay any actual pecuniary losses that have resulted from such defaults under such Assumed Contract. If the Purchaser is not the Successful Bidder under the Bidding Procedures and the Successful Bidder does not want to assume any or all of the Assumed Contracts, then the Purchaser shall accept assignment of any such Assumed Contract upon written notice by the Debtors to the Purchaser.

(c)     Bond.     At the Closing, the Purchaser shall, at its sole election, either (i) assume, replace, or post cash in lieu of that certain early grading/street alignment bond in the amount of $250,000 issued by Bond Safeguard in favor of the County of Mohave dated May 9, 2006 (further identified as Bond Safeguard Bond No. 5022081) (the "*Original Bond*"), with a grading bond of equal amount in form and substance acceptable to the Arizona Entities, or (ii) if the Purchaser does not assume or replace the Original Bond, then by this Agreement the Purchaser agrees that it shall indemnify and hold harmless the Arizona Entities for all loss, cost, damages, claims, demands or payments, including but not limited to consequential damages, that arise in connection with or relating to the Original Bond, which indemnification shall be supported by a first priority deed of trust to be recorded against the Arizona Assets in favor of the Arizona Entities.

1.2     Closing.     The closing (the "*Closing*") of the transactions contemplated hereby (the "*Transactions*") will take place on the date (the "*Closing Date*") that is five business days following the date that the Sale Order (as hereinafter defined) has been entered by the Bankruptcy Court (or such other date mutually acceptable to the Arizona Entities and Purchaser) at the offices of Greenberg Traurig, LLP, 3773 Howard Hughes Parkway, Suite 400 North, Las Vegas, NV 89169.

1.3     Purchase Price.     At the Closing, Purchaser shall pay to the Arizona Entities, by wire transfer of immediately available funds, an amount in cash equal to $1,222,999, plus any Overbid (as such term is defined in the Bidding Procedures Order (as hereinafter defined)) (the "*Purchase Price*"), by wire transfer to the account designated by the Arizona Entities to Purchaser.

1.4     Deposit.     Concurrent with Purchaser's execution of this Agreement, Purchaser shall open an escrow (the "*Escrow*") with Nevada Title Company ("*Escrow Holder*"), and shall deposit an amount equal to the fifty percent (50%) of the Purchase Price into Escrow, which shall be invested in an interest-bearing account or shall post an irrevocable letter of credit in favor of the Arizona Entities (the "*Cash Deposit*"). In addition, concurrent with Purchaser's execution of this Agreement, Purchaser shall provide a letter from a financial institution showing proof of funds for the remaining 50% of the Purchase Price, or $611,499.50, which letter shall be

reasonably acceptable to the Arizona Entities. The Cash Deposit and any interest earned thereon, together with the Letter of Credit and any proceeds from draws therefrom by the Arizona Entities or Escrow Holder are hereinafter collectively referred to as the "*Deposit*". The Deposit shall be applied toward the payment of the Purchase Price upon the Closing, and shall be non-refundable (except if the Closing fails to occur because of the failure of one of Purchaser's Conditions Precedent set forth in Section 4.1(a), and terminated pursuant to Section 4.3 hereof). Any other amounts due from Purchaser in connection with the Closing, including but not limited to closing costs, escrow fees and pro-rated real property taxes, shall be payable in cash by wire of funds into the account of Escrow Holder upon the Closing.

As a covenant which shall survive the Closing: (i) all income and expenses relating to the Arizona Assets (including property taxes and assessments) shall be prorated as of and including the Closing Date, (ii) all supplemental taxes, front foot benefit charges, and similar expenses billed after the Closing Date for periods prior to the Closing Date will be paid promptly by the Arizona Entities, and (iii) any refunds for same received by Purchaser which are allocable to the period prior to the Closing Date will be paid promptly by Purchaser to the Arizona Entities. Purchaser shall be responsible for paying (i) its due diligence costs, (ii) title insurance premiums for the any title policy obtained by Purchase in connection with the Arizona Assets, (iii) one-half of the fee of Escrow Holder, and (iv) in the event Purchaser obtains an ALTA survey, the cost of such survey. Arizona Entities shall be responsible for paying for one-half of the fee of Escrow Holder. All other normal closing costs shall be paid in accordance with the custom of the county in which the Arizona Assets are located. The parties shall execute such additional instructions reasonably required by Escrow Holder, provided that if there is a conflict between such instructions and this Agreement, the terms of this Agreement will govern.

**1.5    Deliveries.** On the Closing Date,

    (a)    The Arizona Entities shall deliver or cause to be delivered to Purchaser:

        (i)    a bill of sale and a quit claim deed, each duly executed by the Arizona Entities in the forms of Exhibits A and B hereto;

        (ii)    such other bills of sale, certificates of title or origin, deeds, assignments and other instruments of transfer or conveyance or as may be otherwise necessary to evidence and effect the assignment and delivery of the Arizona Assets to Purchaser; and

    (b)    the Purchaser shall deliver or caused to be delivered the Purchase Price to the Arizona Entities and the replacement to the Original Bond, if applicable.

    (c)    The documents listed in (a) above shall be referred to as the "*Transaction Documents*".

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants that the statements contained in this ARTICLE 2 are true, correct and complete on the date hereof.

**2.1 Power and Authority: Enforceability.** Purchaser has the corporate power and authority necessary to execute and deliver each Transaction Document and this Agreement to which it is a party and to perform and consummate the Transactions. Purchaser has taken all action necessary to authorize the execution and delivery by it of each Transaction Document to which it is a party, the performance of its obligations thereunder, and the consummation by it of the Transactions. Each Transaction Document to which Purchaser is a party has been duly authorized, executed and delivered by such person or entity and is enforceable against it in accordance with its terms.

**2.2 No Violation.** The execution and the delivery by Purchaser of this Agreement and the other Transaction Documents to which it is a party, the performance by them of its obligations hereunder and thereunder, and the consummation of the Transactions by them will not (a) with or without notice or lapse of time, constitute or create a breach or violation of, or default under, any (i) law, rule, regulation or Order ("*Law*") enacted, adopted, promulgated or applied by any legislature, agency, bureau, branch, department, division, commission, court, tribunal or other similar recognized organization or body of any federal, state, county, municipal, local or foreign government or other similar recognized organization or body exercising similar powers or authority (a "*Governmental Body*"), (ii) order, ruling, decision, award, judgment, injunction or other similar determination or finding by, before or under the supervision of any Governmental Body or arbitrator (an "*Order*"), (iii) contract or (iv) permit, license, authorization, registration, franchise, approval, certificate, exemption, variance and similar right obtained, or required to be obtained from a Governmental Body (a "*Permit*") to which, in the case of (i), (ii), (iii) or (iv), Purchaser is a party or by which it or its assets are bound, (b) require any consent, approval, notification, waiver or other similar action under any contract or organizational document to which Purchaser is a party or by which it or its assets are bound or (c) require any Permit under any Law or Order.

**2.3 Due Diligence.** The Purchaser acknowledges and represents that it has received the due diligence package provided by the Arizona Entities in connection with the sale of the Arizona Assets and has had an opportunity to conduct any and all due diligence regarding the Arizona Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Arizona Assets in making its bid, and that has nor relied upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Arizona Assets, or the completeness or accuracy of any information provided in connection therewith. PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT DELIVERY OF ANY INFORMATION REGARDING THE ARIZONA ASSETS TO PURCHASER BY ARIZONA ENTITIES DOES NOT AND SHALL NOT CONSTITUTE A REPRESENTATION OR WARRANTY BY ARIZONA ENTITIES. FURTHERMORE, PURCHASER HEREBY ACKNOWLEDGES THAT THE ARIZONA ENTITIES MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING THE NATURE OR QUALITY OF THE ARIZONA ASSETS AND THE ARIZONA ENTITIES WILL NOT BE LIABLE FOR ANY INACCURATE OR INCOMPLETE INFORMATION PROVIDED TO THE PURCHASER AND THE PURCHASER RETAINS THE SOLE AND EXCLUSIVE RESPONSIBILITY TO INDEPENDENTLY CONFIRM ANY AND ALL INFORMATION PROVIDED BY THE ARIZONA ENTITIES.

2.4     Commissions. Purchaser hereby represents and warrants that it is not now, nor has ever been represented by any broker with respect to the transactions contemplated herein. In the event of any claims for broker's or finder's fees in connection with the execution and consummation of this Agreement, Purchaser shall protect, indemnify and defend the Arizona Entities from and against such claims if they shall be based upon any statement or representation or agreement by Purchaser. The Arizona Entities shall be responsible for paying all of the fees of Colliers International.

### ARTICLE 3
### AS IS, WHERE IS

The sale of the Arizona Assets shall be on an "as is, where is", "with all faults" basis and without representations or warranties of any kind, nature, or description by the Arizona Entities, its agents or its estates, including without limitation representations and warranties as to physical condition, title, ownership, authorization to sell, acreage, leases, rents, revenues, income, expenses, operation, zoning or other regulation, compliance with state or federal law, compliance with environmental or hazardous materials law, suitability for particular purposes or any other matter whatsoever.

### ARTICLE 4
### CLOSING CONDITIONS AND TERMINATION

#### 4.1     Conditions Precedent to Closing.

(a)     Purchaser's Conditions Precedent. Purchaser's obligation to complete Closing shall be conditioned upon the satisfaction (or Purchaser's written waiver) of each of the conditions precedent set forth in this Section 4.1(a).

(i)  Bidding Procedures Order. The Bankruptcy Court shall have entered an order approving the sale of the Arizona Assets pursuant to a competitive bidding process (the "*Bidding Procedures*"), substantially in the form attached hereto as Exhibit C (the "*Bidding Procedures Order*") or otherwise in form and substance reasonably satisfactory to the Arizona Entities.

(ii)  Sale Order. The Bankruptcy Court shall have entered an order pursuant to sections 105, 363, or 365 of the Bankruptcy Code authorizing and approving the sale of the Arizona Assets on the terms set forth herein, substantially in the form attached hereto as Exhibit D (the "*Sale Order*") to Purchaser or otherwise in form and substance reasonably satisfactory to the Arizona Entities.

(b)     The Arizona Entities' Conditions Precedent. Each of the Arizona Entities' obligation to complete Closing shall be conditioned upon the satisfaction (or the Arizona Entities' written waiver) of each of the conditions precedent set forth in this Section 4.1(b).

(i)  Representations: Each of the representations and warranties as set

DOCS_LA:217206.5                                     5

forth in Article 2 shall be true, correct and complete in all material respects as of the date of Closing.

(ii) <u>Bidding Procedures Order:</u>   The Bankruptcy Court shall have entered the Bidding Procedures Order substantially in the form annexed hereto as <u>Exhibit C</u> or otherwise in form and substance reasonably satisfactory to the Arizona Entities.

(iii) <u>Sale Order:</u> The Bankruptcy Court shall have entered the Sale Order substantially in the form annexed hereto as <u>Exhibit D</u> or otherwise in form and substance reasonably satisfactory to the Arizona Entities.

4.2     **Conditions Precedent to Closing.**  At any time prior to Closing, this Agreement may be terminated as follows:

(a)     by the Arizona Entities, if any of the conditions in Section 4.1(b) shall become incapable of being satisfied (unless such circumstance is the result of any action or failure to act on the part of the Arizona Entities) and Purchaser shall not have waived such failure;

(b)     by the Arizona Entities, if the Bankruptcy Court or any other Governmental Body shall have issued an Order (which Order the Parties shall use their commercially reasonable efforts to lift), which permanently restrains, enjoins or otherwise prohibits the consummation of the proposed transactions contemplated by this Agreement and such Order shall have become final and non-appealable.

4.3     **Automatic Termination:**  In the event the Arizona Entities enter into an agreement to sell all or substantially all of the Arizona Assets to a third party as a result of the Bidding Procedures approved pursuant to the Bidding Procedures Order and the sale to said third party closes, this Agreement shall automatically terminate.  For the avoidance of doubt, no break-up fee or any other payment will be due and owing to Purchaser if this Agreement is terminated for any reason other than the return of the Deposit to Purchaser pursuant to the terms hereunder in accordance with Section 4.4.

4.4     **Remedies.**

(a)     If the Closing fails to occur by reason of failure, refusal or inability by the Arizona Entities to satisfy the Purchaser's Condition Precedent set forth in Section 4(a) hereof, then Purchaser, as its sole remedy for such inability of the Arizona Entities, may terminate this Agreement by notice to the Arizona Entities.  If Purchaser elects to so terminate this Agreement due to failure, refusal or inability of the Arizona Entities to satisfy the Purchaser's Condition Precedent set forth in Section 4(a), then this Agreement shall be terminated and neither party shall have any further rights, obligations or liabilities hereunder, except for any and all obligations which are expressly stated herein to survive the Closing or any termination of this Agreement (the "*Surviving Obligations*"), and except that Purchaser shall be entitled to a return of the Deposit.  Except as set forth in this Section, Purchaser hereby expressly waives, relinquishes and releases any other

right or remedy available to it at law, in equity or otherwise (including the remedy of specific performance) by reason of the failure, refusal or inability of the Arizona Entities to perform their respective obligations hereunder.

(b)    In the event of a default hereunder by Purchaser or if the Closing fails to occur by reason of Purchaser's failure, refusal or inability to perform its obligations hereunder, then the Arizona Entities may terminate this Agreement by notice to Purchaser. If the Arizona Entities elect to terminate this Agreement due to Purchaser's failure, refusal or inability to perform its obligations hereunder, then this Agreement shall be terminated and the Arizona Entities shall retain the Deposit as partial damages for losses, damages and expenses suffered by Arizona Entities. The Arizona Entities hereby expressly waive, relinquish and release any other remedies or damages they may have against Purchaser with respect to the Purchaser's default hereunder or the failure of the Closing to occur by reason of Purchaser's failure, refusal or inability to perform its obligation hereunder, including, but not limited to, the remedy of specific performance.

## ARTICLE 5
## MISCELLANEOUS

**5.1    Survival.** Each representation and warranty of the Parties contained herein will expire on the Closing and be of no further force or effect. Each covenant and obligation of the Parties contained herein will survive the Closing in accordance with its terms.

**5.2    Entire Agreement.** This Agreement, together with the other Transaction Documents and all schedules, exhibits, annexes or other attachments hereto or thereto, and the certificates, documents, instruments and writings that are delivered pursuant hereto or thereto, constitutes the entire agreement and understanding of the Parties in respect of the subject matter hereof and supersedes all prior understandings, agreements or representations by or among the Parties, written or oral, to the extent they relate in any way to the subject matter hereof.

**5.3    Assignment; Binding Effect.** No Party may assign either this Agreement or any of its rights, interests or obligations hereunder without the prior written approval of the other Parties, and any such assignment by a Party without prior written approval of the other Parties will be deemed invalid and not binding on such other Parties. All of the terms, agreements, covenants, representations, warranties and conditions of this Agreement are binding upon, inure to the benefit of and are enforceable by, the Parties and their respective successors and permitted assigns.

**5.4    Notices.** All notices, requests and other communications provided for or permitted to be given under this Agreement must be in writing and must be given by personal delivery, by certified or registered United States mail (postage prepaid, return receipt requested), by a nationally recognized overnight delivery service for next day delivery, or by facsimile transmission, to the intended recipient at the address set forth for the recipient on the signature page (or to such other address as any Party may give in a notice given in accordance with the provisions hereof). All notices, requests or other communications will be effective and deemed given only as follows: (i) if given by personal delivery, upon such personal delivery, (ii) if sent

by certified or registered mail, on the fifth business day after being deposited in the United States mail, (iii) if sent for next day delivery by overnight delivery service, on the date of delivery as confirmed by written confirmation of delivery or (iv) if sent by facsimile, upon the transmitter's confirmation of receipt of such facsimile transmission, except that if such confirmation is received after 5:00 p.m. (in the recipient's time zone) on a business day, or is received on a day that is not a business day, then such notice, request or communication will not be deemed effective or given until the next succeeding business day. Notices, requests and other communications sent in any other manner, including by electronic mail, will not be effective.

5.5    **Headings.** The article and section headings contained in this Agreement are inserted for convenience only and will not affect in any way the meaning or interpretation of this Agreement.

5.6    **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the State of Nevada, without giving effect to any choice of law principles.

5.7    **Schedules and Exhibits.** The Schedules and Exhibits are incorporated herein by reference and made a part of this Agreement.

5.8    **Amendment; Extensions; Waivers.** No amendment, modification, waiver, replacement, termination or cancellation of any provision of this Agreement will be valid, unless the same is in writing and signed by all of the Parties hereto. Each waiver of a right hereunder does not extend beyond the specific event or circumstance giving rise to the right. No waiver by any Party of any default, misrepresentation or breach of warranty or covenant hereunder, whether intentional or not, may be deemed to extend to any prior or subsequent default, misrepresentation or breach of warranty or covenant hereunder or affect in any way any rights arising because of any prior or subsequent such occurrence. Neither the failure nor any delay on the part of any Party to exercise any right or remedy under this Agreement will operate as a waiver thereof, nor does any single or partial exercise of any right or remedy preclude any other or further exercise of the same or of any other right or remedy.

5.9    **Severability.** The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision will not affect the validity or enforceability of the other provisions hereof; provided, however, that if any provision of this Agreement, as applied to any Party or to any circumstance, is judicially determined not to be enforceable in accordance with its terms, the Parties agree that the court judicially making such determination may modify the provision in a manner consistent with its objectives such that it is enforceable, and/or to delete specific words or phrases, and in its modified form, such provision will then be enforceable and will be enforced.

5.10    **Expenses; Transfer Taxes.** Except as otherwise expressly provided in this Agreement, each Party will bear its own costs and expenses incurred in connection with the preparation, execution and performance of this Agreement and the Transactions, including all fees and expenses of agents, representatives, financial advisors, legal counsel and accountants. Any and all transfer taxes, stamp taxes or similar taxes payable in connection with the Transactions are waived pursuant to section 1146(a) of the Bankruptcy Code.

**5.11    Counterparts; Effectiveness.** This Agreement may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

**5.12    Construction.** This Agreement has been freely and fairly negotiated among the Parties. If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties and no presumption or burden of proof will arise favoring or disfavoring any Party because of the authorship of any provision of this Agreement. Any reference to any law will be deemed to refer to such law as in effect on the date hereof and all rules and regulations promulgated thereunder, unless the context requires otherwise. The words "include," "includes," and "including" will be deemed to be followed by "without limitation." The word "person" includes individuals, entities and Governmental Bodies. Pronouns in masculine, feminine and neuter genders will be construed to include any other gender, and words in the singular form will be construed to include the plural and vice versa, unless the context otherwise requires. The words "this Agreement," "herein," "hereof," "hereby," "hereunder," and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.

**5.13    Time of Essence.** Time is strictly of the essence with respect to this Agreement and each and every term and provision hereof and the transaction contemplated hereby.

**5.14    Possession of Arizona Assets.** Purchaser shall be entitled to possession of the Arizona Assets upon the Closing, provided, however, nothing herein shall constitute a representation by Arizona Entities regarding the vacant condition of the Arizona Assets.

**5.15    Attorneys' Fees.** In the event of any litigation or arbitration between the parties hereto with respect to the subject matter hereof, the unsuccessful party to such litigation or arbitration shall pay to the successful party all costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, incurred therein by the successful party, all of which shall be included in and as a part of the judgment or decision rendered in such litigation or arbitration.

**5.16    Further Assurances.** Each of the parties hereto agrees to execute, acknowledge, deliver and/or file such further certificates, instruments, or documents, and to do all such further acts and things, as may be required by law, or as may reasonably be necessary or advisable to carry out the intents and purposes of and transactions contemplated by this Agreement.

**5.17    THE ARIZONA ENTITIES AND PURCHASER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY RIGHT EACH MAY HAVE TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER ARISING IN TORT OR CONTRACT) BROUGHT BY EITHER AGAINST THE OTHER ON ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OR ANY OTHER DOCUMENT EXECUTED AND DELIVERED BY EITHER PARTY IN CONNECTION HEREWITH.**

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the Parties have caused this Asset Transfer Agreement to be executed as of the date stated in the introductory paragraph of this Agreement.

### THE ARIZONA ENTITIES

**RHODES ARIZONA PROPERTIES, LLC**

By: _____

Name: _____ Dan Boettcher

Title: _____ Authorized Agent

Address: _4730 S. Fort Apache Rd, Suite 300_
_Las Vegas, NV 89147_

**RHODES HOMES ARIZONA, LLC**

By: _____

Name: _____ Dan Boettcher

Title: _____ Authorized Agent

Address: _4730 S. Fort Apache Rd, Suite 300_
_Las Vegas NV 89147_

**ELKHORN INVESTMENTS, INC.**

By: _____

Name: _____ Dan Boettcher

Title: _____ Authorized Agent

Address: _4730 S. Fort Apache Rd, Suite 300_
_Las Vegas NV 89147_

**PURCHASER**

**SAGEBRUSH ENTERPRISES, INC.**

By: _____

Name: James M. Rhodes
Title: President
Address: 7220 South Cimarron, Suite 100,
Las Vegas, Nevada 89113

Error! Unknown document property name.

## SCHEDULE I

Schedule I - Assets not disputed

The Arizona assets to be sold as part of the 363 sale include both personal property and real property. The personal property can be categorized into two groupings:

    1) Office related equipment (i.e. computers waste baskets)

    2) Due diligence materials (i.e. maps, engineering plans) to the extent the same apply to the real
        property transferred and to the extent the same may be transferred by the Arizona Entities.


The real property to be sold consists of the following:

* A portion of Pravada - a large Master Plan Community
  o The boundaries of Pravada need to be "cleaned-up" and are documented in Schedule II
* Four (4) model homes (without certificates of occupancy and which may need to be removed)
* Five (5) Ranchero homes in unfinished condition
* Nine (9) miscellaneous parcels within 5 miles of Pravada

| Office Equipment | | |
|---|---|---|
| # | Type | Description |
| 1 | Office Furniture | 1 – Drafting Table |
| 2 | Office Furniture | Filing Cabinet – 2- 5 Drawer 63" x 18" Cabinets |
| 3 | Office Furniture | Filing Cabinet –1- 3 Drawer 36" x 20" Cabinets |
| 4 | Office Furniture | Filing Cabinet -7 – 4 Drawer 48" x 18" Cabinets |
| 5 | Office Furniture | Filing Cabinet -2 – 4 Drawer 48" x 20" Cabinets |
| 6 | Office Furniture | 2 – 3 Shelf Bookcases |
| 7 | Office Furniture | 2 – Metal 4 Shelves |
| 8 | Office Furniture | 2 – Wood Shelves |
| 9 | Office Furniture | 1 – Hanging File for Plans |
| 10 | Office Furniture | 1 – Wooden 2 Door Cabinet |
| 11 | Office Furniture | 11 – Assorted Desks (2) Metal and (9) Wood |
| 12 | Office Furniture | 12 – Desk Chairs |
| 13 | Office Furniture | 12 – Guest Chairs |
| 14 | Office Furniture | 5 Stacking Chairs |
| 15 | Office Furniture | 1 – 4 x 6 Rotating White Board |
| 16 | Office Furniture | 1 – Garbage Can |
| 17 | Office Furniture | 10 – Wastebaskets |
| 18 | Office Furniture | 3 – 6' Tables |
| 19 | Office Furniture | 2 – Metal Storage Shelves – Dimensions 5' h x 3' w x 18.5" d |
| 20 | Office Furniture | 2 – Plastic Storage Shelves – Dimensions 6' h x 3' w x 18" d |
| 21 | Computers | 1 – HP 5150 Desktop Computer Number 2UA6030J57 |
| 22 | Computers | 1 – HP WX4400 Desktop Computer Number 2UA70608F7 |
| 23 | Computers | 1 – Dell Desktop Computer Number GZOGR61 |
| 24 | Computers | 1 – HP NX9600 Laptop Computer Number CNF6071GBR |
| 25 | Printers | 1 – HP Laserjet 4101 Number USLGY26030 |
| 26 | Printers | 1 – Color Laserjet 5550 Number JPDC4D2072 |
| 27 | Printers | 1 – Super G3 Printer Scanner Number J8141101150 |
| 28 | Fax Machines | 2 – HP Office Jets 7310 |
| 29 | Miscellaneous | 1 – Dell Power Edge Server 2850 Number 85172579422 |
| 30 | Miscellaneous | 1 – HP Design jet 1055 CM Plus Plotter |
| 31 | Miscellaneous | 8 – Battery Surge Boxes and Power Strips |
| 32 | Miscellaneous | 2 – 20" Flat Screen Computer Monitors |
| 33 | Miscellaneous | 4 – Calculators |
| 34 | Miscellaneous | 14 – Telephones |

Sellers will quitclaim to Buyer upon the Closing all of Sellers' interests in the following

Major Pravada Documents:

1. Pravada Specific Zoning Plan, including Development Agreement and all accompanying documents.
2. Pravada CFD Application (including schematic designs, calculations, exhibits, etc.)
3. Draft Aquifer Protection Permit Application.
4. Pravada Master Off-Site Drainage Study.
5. Pravada Conceptual Drainage Study for Area 3.
6. Pravada Technical Drainage Study for Area 3.
7. Area 3 draft Preliminary Plat applications, exhibits, drawings, etc.
8. Area 3 grading plans, earthwork comparisons, design analysis concepts, drawings etc.
9. Area 3 draft Final Improvement Plans.
10. WAPA applications, designs and exhibits relating to overhead power lines.
11. Pravada Conceptual Drainage Study for Area 5.
12. Area 5 draft Preliminary Plat applications, exhibits, drawings, etc.
13. Area 5 grading plans, earthwork comparisons, design analysis concepts, drawings etc.
14. Lane geometries, alignments, underground storm drain and utility designs, calculations and survey data relating to Bacobi Road.
15. Lane geometries, alignments, underground storm drain and utility designs, calculations and survey data relating to Shinarump Road and channel.
16. Technical Drainage Study relating to Shinarump Road.
17. All alignments, design concepts, earthwork calculations, cost estimates and drawings relating to the proposed East Diversion Dam.
18. Technical Drainage Study relating to East Diversion Dam.
19. Topographic Survey with 1988 datum.
20. Boundary Survey by SHG.

Sellers will quitclaim to Buyer upon the Closing all of Sellers' interests in the following

Contested Stanley Materials:

1. Golden Valley Ranch Offsite Water Transmission Line Improvement Plans
2. 11 Acre Aztec Park Plans
3. Aztec Park Improvement Plans
4. Golden Valley Ranch 208 Plan Amendment
5. Golden Valley Ranch Design Standard Drawings that accompanied the Development Agreement.
6. East Loop Road Improvements
7. West Loop Road Improvements
8. Golden Valley Ranch Area 1, Area 2, Area 3, Area 5 and Area 6 Mass Grading Plans
9. Golden Valley Ranch Preliminary Plat for Pod 1
10. Golden Valley Ranch Preliminary Plat for Pod 2
11. Maps and Exhibits that accompanied CC&N application
12. Land Use Plan Revised Golden Valley Ranch, misc exhibits.





GOLDEN VALLEY
PROPERTY FOR SALE

| OWNER | APN NO | AREA |
|---|---|---|
| RHODES HOMES ARIZONA LLC | 215-01-093 | 1.00 |
| RHODES HOMES ARIZONA LLC | 215-01-097 | 1.00 |
| RHODES HOMES ARIZONA LLC | 306-30-011 | 40.7 |
| RHODES HOMES ARIZONA LLC | 306-30-006 | 39.87 |
| RHODES HOMES ARIZONA LLC | 215-17-005 | 38.3 |
| RHODES HOMES ARIZONA LLC | 215-17-006 | 39.32 |
| RHODES HOMES ARIZONA LLC | 215-17-009 | 39.32 |
| ELKHORN INVESTMENTS INC | 217-11-147 | 2.5 |
| ELKHORN INVESTMENTS INC | 217-11-148 | 2.5 |
| ELKHORN INVESTMENTS INC | 217-11-156 | 2.4 |
| ELKHORN INVESTMENTS INC | 117-11-222 | 3.13 |
| ELKHORN INVESTMENTS | 217-11-212 | 2.35 |
| RHODES ARIZONA PROPERTIES LLC | 306-24-116 | 20.24 |
| RHODES ARIZONA PROPERTIES LLC | 306-24-115 | 20.2 |
| RHODES ARIZONA PROPERTIES LLC | 306-63-017 | 7.61 |
| RHODES ARIZONA PROPERTIES LLC | 306-63-018 | 6.8 |
| RHODES ARIZONA PROPERTIES LLC | 306-42-001 | 39.9 |
| RHODES ARIZONA PROPERTIES LLC | 306-42-008A | 19.92 |
| RHODES ARIZONA PROPERTIES LLC | FUTURE | 1310.5 |
| | TOTAL | 1636.7 |

SCHEDULE I 1(b)(i)

Assumed Contracts

Schedule 1.1(b)(i)

## RHODES ARIZONA CONTRACTS TO BE ASSUMED AND ASSIGNED TO THE RHODES ENTITIES

| CONTRACT COUNTER-PARTY NAME & SERVICE ADDRESS | DEBTOR | TYPE OF CONTRACT | PROJECT/DEVELOPMENT | CURE AMOUNT (LESS RETAINER OR DEPOSIT |
|---|---|---|---|---|
| Utilities Inc.<br>2335 Sanders Rd<br>Northbrook, IL 60062-6108 | Rhodes Homes Arizona, LLC | Provision of water service | Golden Valley Ranch, Mohave County, AZ | $0.00 |
| County of Mohave Development Services 3675 E. Andy Devine Ave. Kingman, AZ 86401 | Rhodes Arizona Properties, LLC; Rhodes Homes Arizona, LLC | Development Agreement/Specific Zoning Plan | Golden Valley Ranch/Pravada | $0.00 |
| Lexon Insurance Company Bond Safeguard Insurance Company 1919 S Highland Dr. Bldg. A Suite 300 Lombard, IL 60148 | Rhodes Homes Arizona, LLC | Bond | Bond # 5022081 (Mohave AZ— golden Valley Ranch Phase 1 Grading) | $0.00 |

## SCHEDULE II

## Schedule II – Land Swap

Prior to the commencement of the 363 sale, some administrative actions need to take place to "clean up" the ownership records. This clean-up is required because there are discrepancies between the debtor's accounting records and the state/county records.

The following actions are required to perform this clean up:

- Pravada Land Swap – as the master plan community of Pravada was being mapped, the boundaries of the project changed. Not all of these changes were captured by the municipalities
  - Parcels A, B, C, D – land to be added to the estate from Rhodes Related Entities (Non-Debtor)
  - Parcels 1, 2, 3, 4 – land to be removed from the estate and given to Rhodes Related Entities (Non-Debtor)
- Miscellaneous parcels – land to be removed from the estate and given to Rhodes Related Entities (Non-Debtor

This document contacts an itemized list of the real assets that need to be cleaned up.

LIST OF ALL PARCELS INTO ESTATE FROM RHODES ENTITIES [NON-DEBTOR]

| APN | Acres |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL:** | **-155.7** |

LIST OF ALL PARCELS INTO ESTATE FROM RHODES ENTITIES [NON-DEBTOR]

| PRAVADA | AREA 1 | 60.64 |
|---|---|---|
| PRAVADA | AREA 2 | 13.39 |
| PRAVADA | AREA 3 | 33.25 |
| PRAVADA | AREA 4 | 23.29 |
| | **TOTAL** | **130.57** |





EXHIBIT A

Bill of Sale

## BILL OF SALE

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and pursuant to the Asset Transfer Agreement (the *"Transfer Agreement"*), dated March [__], 2010, by and among Rhodes Arizona Properties, LLC, a Nevada limited liability company, Elkhorn Investments, Inc., a Nevada corporation, and Rhodes Homes Arizona, LLC, an Arizona limited liability company (collectively, *"Seller"*) hereby unconditionally and irrevocably grant, bargain, transfer, sell, assign, convey, and deliver to Sagebrush Enterprises, Inc., a Delaware corporation (*"Buyer"*), its successors, and assigns forever, all right, title, and interest, legal or equitable, in and to the Arizona Assets (as defined in the Transfer Agreement) to have and to hold the Arizona Assets unto Buyer and its successors and assigns forever.

The scope, nature, and extent of the Arizona Assets are expressly set forth in the Transfer Agreement. Nothing herein contained will itself change, amend, extend, or alter (nor should it be deemed or construed as changing, amending, extending, or altering) the terms or conditions of the Transfer Agreement in any manner whatsoever. This instrument does not create or establish rights, liabilities, or obligations not otherwise created or existing under or pursuant to the Transfer Agreement. Seller acknowledges and agrees that the representations, warranties, covenants, agreements, and indemnities contained in the Transfer Agreement will not be superseded hereby but will remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Transfer Agreement and the terms of this instrument, the terms of the Transfer Agreement will govern.

Nothing in this instrument, express or implied, is intended or shall be construed to confer upon or give to, any person, firm or corporation other than Buyer and its successors and assigns any remedy or claim under or by reason of this instrument or any term, covenant, or condition hereof, and all of the terms, covenants, conditions, promises, and agreements in this instrument shall be for the sole and exclusive benefit of Buyer and its successors and assigns.

This instrument will be binding upon Seller and its successors and assigns, and inure to the benefit of and be enforceable by Buyer and its successors and assigns.

### [SIGNATURE PAGE FOLLOWS]

**1**

IN WITNESS WHEREOF, this Bill of Sale is being executed and delivered by Seller on the date first written above.

RHODES ARIZONA PROPERTIES, LLC

By: _____

    Name:

    Title:

ELKHORN INVESTMENTS, INC.

By: _____

    Name:

    Title:

RHODES HOMES ARIZONA, LLC

By: _____

    Name:

    Title:

## EXHIBIT B

### Quit Claim Deed

Recording Requested by:

When recorded mail to:

(The area above is reserved for recorder's use)

## QUITCLAIM DEED

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, RHODES ARIZONA PROPERTIES, LLC, a Nevada limited liability company, ELKHORN INVESTMENTS, INC., a Nevada corporation, and RHODES HOMES ARIZONA LLC, an Arizona limited liability company (together, "*Grantor*"), each hereby quitclaims to SAGEBRUSH ENTERPRISES, INC., a Delaware corporation ("*Grantee*"), the following interests:

> All right, title and interest of Grantor, if any, in and to the property described on Exhibit A attached hereto and made a part hereof.

*[Remainder of page intentionally blank]*

IN WITNESS WHEREOF, the undersigned has caused this Quitclaim Deed to be duly made as of _____.

RHODES ARIZONA PROPERTIES, LLC, a Nevada limited liability company

By:     _____
Name:   _____
Its:    _____

ELKHORN INVESTMENTS, INC., a Nevada corporation

By:     _____
Name:   _____
Its:    _____

RHODES HOMES ARIZONA LLC, an Arizona limited liability company

By:     _____
Name:   _____
Its:    _____

## ACKNOWLEDGMENT
### RHODES ARIZONA PROPERTIES, LLC

STATE OF _____ )

                                  )   ss.

COUNTY OF_____ )


On _____ before me, _____ , Notary
Public, personally appeared _____,
personally known to me to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.


_____
Notary Public

ꞏ

### ACKNOWLEDGMENT
### ELKHORN INVESTMENTS, INC.

STATE OF _____ )
                                       )  ss.
COUNTY OF_____ )


On _____ before me, _____, Notary
Public, personally appeared _____
personally known to me to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.


_____
Notary Public

ꞏ

ꞏ

## ACKNOWLEDGMENT
## RHODES HOMES ARIZONA LLC

STATE OF _____ )
                          ) ss.
COUNTY OF_____ )


On _____ before me,_____, Notary
Public, personally appeared _____,
personally known to me to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.


_____
Notary Public

Exhibit A
Legal Description

## EXHIBIT C

### Bidding Procedures Order

Entered on Docket
March 30, 2010

Hon. Linda B. Riegle
United States Bankruptcy Judge

James I. Stang, Esq. (SBN 94435)
Shirley S. Cho, Esq. (SBN 192616)
Werner Disse, Esq. (SBN 143458)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
      scho@pszjlaw.com
      wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702/382.1170
Facsimile: 702/382.1169
Email: zlarson@lslawnv.com

Attorneys for Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re:

THE RHODES COMPANIES, LLC, aka
"Rhodes Homes," et al.,[1]

Debtors.

Affects:
☐   All Debtors
☒   Affects the following Debtor(s)
Rhodes Homes Arizona, LLC; Rhodes Arizona
Properties, LLC; and Elkhorn Investments, Inc.

Case No.: 09-14814-LBR
(Jointly Administered)

Chapter 11

Hearing Date: March 11, 2010
Time: 9:30 a.m.
Courtroom: 1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes

DOCS_LA:216913.2

1

## ORDER APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN OF THE DEBTORS' ARIZONA ASSETS; (B) APPROVING FORM OF PUBLICATION NOTICE; AND (C) SCHEDULING SALE HEARING DATE [RE DOCKET NO. 1031]

Upon consideration of the *Debtors' Motion for Entry of an Order (A) Approving Bidding Procedures for the Sale of Certain of the Debtors' Arizona Assets; (B) Approving Form of Publication Notice; and (C) Scheduling Sale Hearing Date* [Docket No. 1031] (the "Motion"), and the parties having resolved the objection of Stanley Consultants, Inc. [Docket No. 1041] as set forth herein, and good cause appearing, it is hereby.

ORDERED that the Motion is approved as modified herein; and it is further

ORDERED that the sale of the Arizona Assets shall be conducted pursuant to the modified Bidding Procedures attached hereto as **Exhibit A** and the Debtors or the Reorganized Debtors, as applicable, shall immediately begin marketing the Arizona Assets for sale, provided however that no disclosure of the Stanley Materials shall occur until after the Determination Date; and it is further

ORDERED that to the extent the Debtors or Reorganized Debtors, in connection with the Arizona Assets sale seek to transfer the work product or intellectual property in which Stanley Consultants, Inc. ("Stanley") has asserted a property interest as set forth in the exhibits to Creditor Stanley Consultants, Inc.'s Objection to Sufficiency of Disclosure Statement for the Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code for the Rhodes Companies, LLC, et. al. [Docket No. 617] (the "Stanley Materials"), prior to marketing the Arizona Assets that include the Stanley Materials or the transfer of any Stanley Materials, the Debtors or Reorganized Debtors, as applicable, shall (i) obtain an order from this Court determining the extent of the Debtors' interests or Reorganized Debtors' interests, as applicable, in such Stanley Materials that the Debtors can transfer under applicable law or (ii) shall file a notice of intention to not sell the

Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09- 14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20 LLC (Case No. 09-14848); Tuscany Acquisitions IV LLC (Case No. 09-14849); Tuscany Acquisitions III LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, LLC (Case No. 09- 14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

DOCS_LA:216913.2

2

1    Stanley Materials and Stanley shall retain the right to dispute the transfer of the Stanley Materials

2    (the earlier of (i) or (ii) shall be the <u>Determination Date</u>); and it is further

3         ORDERED that the sale timeline shall be modified as follows:

4         A.    The sale approval hearing date shall be no earlier than August 11, 2010 but

5                no later than September 11, 2010;

6         B.    Any auction shall be held one week prior to the sale approval hearing date;

7         C.    The Bid Deadline, including the deadline for bidders to submit their

8                deposits, shall be two weeks prior to the sale approval hearing date;

9         D.    And upon the fixing of the above dates, the Debtors or Reorganized

10               Debtors, as applicable, shall file with the Court the final Bidding

11               Procedures setting forth such dates; and it is further

12         ORDERED that upon the filing of the final Bidding Procedures, the Debtors or Reorganized

13    Debtors, as applicable, shall publish the Publication Notice as set forth in the Motion no later than 5

14    business days after the filing of the final Bidding Procedures; and it is further

15         ORDERED that nothing in this Order shall be construed as transferring the Stanley

16    Materials.

17

18    Submitted by:
      DATED this 25ᵗʰ day of March 2010.
19

20    By: __/s/Zachariah Larson__                       By: __/s/Janiece Marshall__
      LARSON & STEPHENS                                      ANDERSON, MCPHARLIN &
21    Zachariah Larson, Esq. (NV Bar No. 7787)               CONNERS LLP
      Kyle O. Stephens, Esq. (NV Bar No. 7928)              Janiece S. Marshall (NV Bar No.  )
22    810 S. Casino Center Blvd., Ste. 104                   777 North Rainbow Boulevard, Suite 145
      Las Vegas, NV 89101                                    Las Vegas, NV 89107
23    (702) 382-1170 (Telephone)                             (702) 479-1014 (Telephone)
      (702) 382-1169                                         (702) 479-1025
24    zlarson@lslawnv.com                                    jm@amclaw.com
25    *Attorneys for Debtors and Debtors in Possession*     *Attorneys for Stanley Consultants, Inc.*

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:

THE RHODES COMPANIES, LLC, aka
"Rhodes Homes," et al.,

Debtors.

Case No.: BK-S-09-14814-LBR
(Jointly Administered)

Chapter 11

## BIDDING PROCEDURES

Rhodes Homes Arizona, LLC, Rhodes Arizona Properties, LLC, and Elkhorn
Investments, Inc. (the "Arizona Debtors") each filed a chapter 11 case, which cases are pending
in the Bankruptcy Court[1] and administered under Case No. 09-14814 (LBR). In each instance,
the reference to "Arizona Debtors" herein means the Debtors or the Arizona Debtors, as
reorganized, pursuant to the plan of reorganization confirmed in their bankruptcy cases. By
motion dated February 19, 2010 (the "Motion"), the Arizona Debtors sought, among other
things, approval of the process and procedures set forth below (the "Bidding Procedures")
through which they will determine the highest and best offer for certain of their assets, which
consists primarily of raw land in Arizona, four model homes, four partially-completed homes,
miscellaneous office equipment, and other items of personal property including certain
intellectual property (the "Arizona Assets"). On March [___], 2010, the Bankruptcy Court
entered its order (the "Bidding Procedures Order"), which, among other things, approved these
Bidding Procedures.

Pending a higher and better offer received through these Bidding Procedures, the Arizona
Debtors have agreed to sell to certain of their non-Debtor affiliates, the "Rhodes Entities," the
Arizona Assets for $1,222,999 (the "Stalking Horse Bid"). The Rhodes Entities will not be
receiving a break-up fee or expense reimbursement on account of their efforts as the Stalking
Horse Bidder.

There are certain parcels of land owned by the Arizona Debtors that are not duly reflected
as owned by the Arizona Debtors based on the County of Mohave Recorder's Office records, but
rather as being owned by the Rhodes Entities, and vice versa. The parties have agreed to enter
into a stipulation to resolve these title issues, which will be duly noticed for hearing before the
Bankruptcy Court as soon as possible.

In connection with the Arizona Assets, the Arizona Debtors have not yet determined
whether or not they will sell or seek to transfer the work product or intellectual property in which
Stanley Consultants, Inc. ("Stanley") has asserted a property interest as set forth in the exhibits to
Creditor Stanley Consultants, Inc.'s Objection to Sufficiency of Disclosure Statement for the
Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code for the
Rhodes Companies, LLC, et. al. [Docket No. 617] (the "Stanley Materials"). Prior to marketing

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the Arizona Assets with the Stanley Materials included as part of the Arizona Assets or the transfer of any Stanley Materials, the Debtors or Reorganized Debtors, as applicable, shall (i) obtain an order from the Bankruptcy Court determining the extent of the Debtors' interests or Reorganized Debtors' interests, as applicable, in such Stanley Materials that the Debtors can transfer under applicable law or (ii) shall file a notice of intention to not sell the Stanley Materials and Stanley shall retain the right to dispute the transfer of the Stanley Materials (the earlier of (i) or (ii) shall be the "Determination Date").

On [_____, 2010], as further described below, in the Motion and in the Bidding Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Arizona Debtors shall seek entry of the Sale Order authorizing and approving the sale of the Arizona Assets (the "Transaction") to the Qualified Bidder (defined below) that the Arizona Debtors, with the consent of the First Lien Steering Committee, determine to have made the highest and/or best offer, subject to Bankruptcy Court approval.

## ⚬ PURCHASE PRICE

The minimum purchase price for the Arizona Assets shall be $1,222,999 (the "Purchase Price"). The Transaction is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code §§ 363 and 365. The Successful Bidder shall also be responsible for all cure costs associated with assuming any contracts associated with any of the Arizona Assets, which the Arizona Debtors estimate to be $0.00.

## PARTICIPATION REQUIREMENTS

In addition to the Bid requirements set forth below, in order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in the Arizona Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Arizona Debtors and the Notice Parties (defined below) an executed confidentiality agreement in form and substance acceptable to the Arizona Debtors and the First Lien Steering Committee (a "Confidentiality Agreement").

## ACCESS TO DUE DILIGENCE MATERIALS

Only Potential Bidders that execute and deliver a Confidentiality Agreement are eligible to receive due diligence access or additional non-public information. The Arizona Debtors will prepare a due diligence package that discloses, among other things, issues related to current zoning, set-back requirements, water, gas, telephone and other utility availability (the "Due Diligence Package"). The Arizona Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. The Arizona Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Arizona Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Bidders in connection with the sale of the Arizona Assets, whether provided as part of the due diligence by the Debtors or otherwise. Furthermore, in accepting the Due Diligence Package, Bidder shall be deemed to acknowledge that the Arizona Debtors make no representations or warranties regarding the nature or quality of the Arizona Assets and the Arizona Debtors will not be liable

2

for any inaccurate or incomplete information provided to the Bidder and the Bidder retains the sole and exclusive responsibility to independently confirm any and all information provided by the Arizona Debtors. The Due Diligence Package shall not include Stanley Materials until after the Determination Date.

## DUE DILIGENCE FROM BIDDERS

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Arizona Debtors or its advisors or the First Lien Steering Committee or its advisors regarding such Bidder and its contemplated transaction. Failure by a Bidder to comply with requests for additional information and due diligence access will be a basis for the Arizona Debtors to determine, with the consent of the First Lien Steering Committee, that the Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Arizona Debtors, with the consent of the First Lien Steering Committee, to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

## BIDDING PROCESS

The Arizona Debtors shall, prior to the Bid Deadline: (i) with the consent of the First Lien Steering Committee, determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Potential Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; (iv) together with the First Lien Steering Committee, negotiate any offers made to purchase the Arizona Assets (collectively, the "Bidding Process"). The Arizona Debtors, with the consent of the First Lien Steering Committee, shall have the right to adopt such other rules for the Bidding Process that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

## BID DEADLINE

The deadline for submitting bids by a Qualified Bidder shall be [_____, 2010], at 4:00 p.m. (Pacific Time) (the "Bid Deadline").

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its Bid by electronic mail to the following Notice Parties by the Bid Deadline: (i) the Arizona Debtors, 4730 S. Fort Apache Rd., Ste. 300, Las Vegas, NV 89147, Attn: Bruce Jorgensen, General Counsel, bjorgensen@rhodeshomes.com and Paul Huygens, phuygens@provinceadvisors.com; (ii) counsel for the First Lien Steering Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Philip C. Dublin, Esq., pdublin@akingump.com; (iii) counsel for the Rhodes Entities, Greenberg Traurig, LLP, 3773 Howard Hughes Parkway, Suite 400 North, Las Vegas, NV 89169, Attn: Brett Axelrod, axelrodb@gtlaw.com; (iv) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th FL, Los Angeles, CA 90067, Attn: Shirley S. Cho, scho@pszjlaw.com; and (v) counsel for the Committee of Unsecured Creditors, Parsons Behle & Latimer, One Utah Center, 201 S. Main St., Ste. 1800, PO Box 45898, Salt Lake City, UT 84145-0898, Attn: J. Thomas Beckett, jbeckett@parsonsbehle.com; (v) counsel to Agent for

73203-002\DOCS_LA:215734.8

First Lien Lenders, Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Ste. 3400, Los Angeles, CA 90071, Attn: Ramon M. Naguiat, ramon.naguiat@skadden.com; and (vi) counsel to Agent for Second Lien Lenders, Ropes & Gray, 1211 Avenue of the Americas, New York, New York 10036-8704, Attn: Mark R. Somerstein, mark.somerstein@ropesgray.com.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

## BID REQUIREMENTS

To be eligible to participate in the Auction, each Bid and each Bidder submitting such a Bid must be determined by the Arizona Debtors, with the consent of the First Lien Steering Committee, to satisfy each of the following conditions:

> Executed Asset Purchase Agreement. Each bid must be accompanied by an executed asset purchase agreement (and which must be acceptable to the First Lien Steering Committee), which will be provided by the Debtors no later than 30 days prior to the Sale Hearing, without any changes to the form of the agreement.

> Executory Contracts. Each bid must identify any executory contracts that the Potential Bidder wishes to be assigned to it, with a commitment to pay any and all cure costs. The Arizona Debtors reserve the right not to assign the executory contract to the Potential Bidder in their sole and absolute discretion.

> Minimum Bid. The consideration proposed by the Bid may include only cash. The aggregate consideration must equal or exceed the sum of the Purchase Price ($1,222,999) plus $200,000 ("Initial Minimum Overbid Increment").

> Good Faith Deposit. Each Bid must be accompanied by (i) 50% of the Purchase Price and Initial Minimum Overbid Increment, or $811,499.50 (except for the Stalking Horse Bid which need only be accompanied by 50% of the Purchase Price, or $611,499.50), whether in the form of a certified check or cash payable to the order of Nevada Title Company or by wire transfer (which account information will be made available upon request) or irrevocable letter of credit; and (ii) a letter from a financial institution showing proof of funds for the remaining 50% of the Purchase Price, or $611,499.50, which letter shall be reasonably acceptable to the Arizona Debtors (with the consent of the First Lien Steering Committee).

> Indemnification for Bond. Each Bid must be accompanied by an agreement that the Bidder will either (i) post a replacement

4

bond or post cash in lieu of the bond for the Debtors'
current bond issued by Bond Safeguard (Bond No.
·5022081) dated May 9, 2006 (the "Grading Bond") in the
form acceptable to the Arizona Debtors; or (ii) indemnify
the Arizona Debtors for any negative consequences from
the Grading Bond, which indemnification shall be
supported by a first priority deed of trust to be recorded
against the Arizona Assets in favor of the Arizona Debtors.

Irrevocable. A Bid must be irrevocable until the closing of the
transaction with the Successful Bidder (the "Termination
Date").

Contingencies. A Bid may not be conditioned on obtaining
financing or any internal approval or otherwise be subject
to contingencies.

Due Diligence Package. A Bid must be accompanied by an
acknowledgement that the Bidder has received the Due
Diligence Package.

Proof of Funds. A Bid must contain written evidence of proof of
funds in a financial institution for any amount in the Bid
that is in excess of the Minimum Bid.

No Fees Payable to Qualified Bidder or Broker. A Bid may not
request or entitle the Qualified Bidder to any break-up fee,
termination fee, expense reimbursement or similar type of
payment. Moreover, by submitting a Bid, a Bidder shall be
deemed to waive the right to pursue a substantial
·contribution claim under Bankruptcy Code § 503 related in
any way to the submission of its Bid or the Bidding
Procedures. The Arizona Debtors shall not be responsible
for the cost of any fees, commissions, referral fees, etc. for
advice, consultation, brokerage, due diligence or other
services commissioned or used by a Bidder.

Identification of Potential Bidder. Concurrently with its Bid,
identification of the Potential Bidder and any principals,
and the representatives thereof who are authorized to
appear and act on their behalf for all purposes regarding the
contemplated transaction.

Corporate Authority. Concurrently with its bid, written evidence
satisfactory to the Arizona Debtors and the First Lien
Steering Committee of the Potential Bidder's board of

5

directors or other similar approval, as applicable, of the
,contemplated Transaction.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above
requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified
Bid" and the bidder a "Qualified Bidder" if the Arizona Debtors, with the consent of the First
Lien Steering Committee, believe that such Bid would be consummated if selected as the
Successful Bid.

In the event that any Potential Bidder is determined by the Arizona Debtors and the First
Lien Steering Committee not to be a Qualified Bidder, the Potential Bidder shall be refunded its
Good Faith Deposit with interest thereon, if any has accrued, on or before the date that is five (5)
days after Closing of the Sale.

The Arizona Debtors, with the consent of the First Lien Steering Committee, shall have
the right to reject any and all bids that they believe do not comply with the Bidding Procedures.

The Stalking Horse Bid shall be a Qualified Bid, provided that 50% of the Purchase Price
is received by the Bid Deadline in cash or by irrevocable letter of credit.

## AUCTION

If a Qualified Bid (other than the Stalking Horse Bid) is received prior to the Bid
Deadline, the Arizona Debtors shall conduct an auction (the "Auction") to determine the highest
and best bid with respect to the Arizona Assets. The Auction shall commence at 9:00 a.m.
(Pacific Time) on [_____, 2010], at a location to be determined by the Arizona Debtors.

No later than [_____, 2010], the Arizona Debtors will notify all Qualified Bidders of (i)
the highest and best Qualified Bid, as determined by the Arizona Debtors and the First Lien
Steering Committee (the "Baseline Bid") and (ii) the time and place of the Auction, and provide
copies of all submitted bids to all Qualified Bidders.

If no higher and better offer is obtained at the Auction, then the Stalking Horse Bid will
be deemed the Successful Bid, and, at the Sale Hearing, the Arizona Debtors will seek approval
of and authority to consummate the Transaction with the Rhodes Entities.

The Auction shall be conducted according to the following procedures:

## PARTICIPATION AT THE AUCTION

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the
Auction. Only the authorized representatives of each of the Qualified Bidders, the Arizona
Debtors, and the First Lien Steering Committee shall be permitted to attend.

## THE ARIZONA DEBTORS SHALL CONDUCT THE AUCTION

The Arizona Debtors and its professionals shall direct and preside over the Auction. At
the start of the Auction, the Arizona Debtors shall describe the terms of the Baseline Bid. The

6

determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Arizona Debtors, with the consent of the First Lien Steering Committee, reasonably deem relevant to the value of the Qualified Bid to the estate (the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Arizona Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. The Arizona Debtors reserve the right to conduct the auction in the manner acceptable to the First Lien Steering Committee and designed to maximize value based upon the nature and extent of the Qualified Bids received.

## TERMS OF OVERBIDS

An "Overbid" is any bid made at the Auction subsequent to the Arizona Debtors' announcement of the Baseline Bid. Any Overbid after the Baseline Bid shall be made in increments of at least $10,000.

Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Arizona Debtors, with the consent of the First Lien Steering Committee, accept a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).

(a)    Announcing Overbids

The Arizona Debtors shall announce at the Auction each Overbid. The Arizona Debtors shall thereafter provide the Buyer and each Qualified Bidder an opportunity to make subsequent Overbids.

The Arizona Debtors, with the consent of the First Lien Steering Committee in each instance, may (a) determine which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interest of the Arizona Debtors, its estate and creditors.

## CONSENT TO JURISDICTION AS CONDITION TO BIDDING

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

## CLOSING THE AUCTION

Upon conclusion of the bidding, the Auction shall be closed, and the Arizona Debtors and the First Lien Steering Committee shall immediately identify the highest and best offer for the Arizona Assets (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest and best offer will provide the greatest amount of net value to the Arizona Debtors, and the next highest or otherwise best offer after the Successful Bid (the

7

"Back-up Bid") and the entity submitting the Back-up Bid (the "Back-up Bidder"), and advise the Qualified Bidders of such determination. Upon five (5) business days' prior notice by the Arizona Debtors, the Back-up Bidder selected by the Arizona Debtors and the First Lien Steering Committee must immediately proceed with the closing of the transaction contemplated by the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason.

## ACCEPTANCE OF SUCCESSFUL BID

The Arizona Debtors shall sell the Arizona Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Arizona Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Arizona Debtors' or First Lien Steering Committee's acceptance of such Qualified Bid. The Arizona Debtors will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Arizona Debtors' and First Lien Steering Committee's selection of the Successful Bidder.

## "AS IS, WHERE IS"

The sale of the Arizona Assets shall be on an "as is, where is", "with all faults" basis and without representations or warranties of any kind, nature, or description by the Arizona Debtors, its agents or its estate or the First Lien Steering Committee, including without limitation representations and warranties as to physical condition, title, ownership, authorization to sell, acreage, leases, rents, revenues, income, expenses, operation, zoning or other regulation, compliance with state or federal law, compliance with environmental or hazardous materials law, suitability for particular purposes or any other matter whatsoever, except to the extent set forth in the Agreement or the purchase agreement of another Successful Bidder. The Buyer and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Arizona Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Arizona Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Arizona Assets, or the completeness or accuracy of any information provided in connection therewith, or the Auction.

## FREE OF ANY AND ALL INTERESTS

Except as otherwise set forth above, all of the Arizona Debtors' right, title and interest in and to the Arizona Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with Bankruptcy Code § 363(f), with such Interests to attach to the net proceeds of the sale of the Arizona Assets, except as to permitted encumbrances that are identified by the Bidder prior to the closing with the consent of the Arizona Debtors.

8

## SALE HEARING

The Sale Hearing shall be conducted by the Bankruptcy Court on [_____, 2010 at 1:30 p.m.], or on such other date as may be established by the Bankruptcy Court.

If the Successful Bidder fails to consummate an approved sale by the date that is five business (5) days after the Sale Order has been entered (the "Termination Date"), the Arizona Debtors shall be authorized (with the consent of the First Lien Steering Committee), but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Arizona Debtors shall be authorized (with the consent of the First Lien Steering Committee), but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

## RETURN OF GOOD FAITH DEPOSIT

Any Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at Closing. Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until five (5) days after Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders with all accumulated interest thereon. If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Arizona Debtors shall be entitled to retain the Successful Bidder's Good Faith Deposit as part of its damages resulting from such Successful Bidder's breach or failure to perform, in addition to all other remedies at law or in equity which may be available to the Arizona Debtors.

9

1

## LR 9021 Certification

2

3      In accordance with LR 9021, counsel submitting this document certifies as follows (check

4    one):

5          ___ The court has waived the requirement of approval under LR 9021.

6          ___ This is a chapter 7 or 13 case, and either with the motion, or at the hearing, I have

7    delivered a copy of this proposed order to all counsel who appeared at the hearing, any

8    unrepresented parties who appeared at the hearing, and each has approved or disapproved the order,

9    or failed to respond, as indicated below [list each party and whether the party has approved,

10   disapproved, or failed to respond to the document]:

11          _X_ This is a chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to

12   all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and

13   each has approved or disapproved the order, or failed to respond, as indicated below:

14          First Lien Steering Committee (Phil Dublin): APPROVED

15          Stanley Consultants, Inc. (Janiece Marshall): APPROVED

16          Rhodes Entities (Anne Loraditch): APPROVED

17          Agent for First Lien Lenders (Ramon Naguiat): APPROVED

18          Official Committee of Unsecured Creditors (Thomas Beckett): APPROVED

19          ___ I certify that I have served a copy of this order with the motion, and no parties appeared

20   or filed written objections.

21   Submitted by:

22   DATED this 25th day of March, 2010.

23   By: /s/ Zachariah Larson

24        LARSON & STEPHENS
          Zachariah Larson, Esq. (NV Bar No 7787)
25        Kyle O. Stephens, Esq. (NV Bar No. 7928)
          810 S. Casino Center Blvd., Ste. 104
26        Las Vegas, NV 89101
          (702) 382-1170 (Telephone)
27        (702) 382-1169
          zlarson@lslawnv.com
28        Attorneys for Debtors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## EXHIBIT D

### Sale Order

1

2

3

4

5

6

7

8  James I. Stang, Esq. (CA Bar No. 94435)
   Shirley S. Cho, Esq. (CA Bar No. 192616)
9  Werner Disse, Esq. (CA Bar No. 143458)
   PACHULSKI STANG ZIEHL & JONES LLP
10 10100 Santa Monica Blvd., 11th Floor
   Los Angeles, California 90067-4100
11 Telephone: 310/277-6910
   Facsimile: 310/201-0760
12
   Email: jstang@pszjlaw.com
13     scho@pszjlaw.com
       wdisse@pszjlaw.com
14
15 Zachariah Larson, Esq. (NV Bar No. 7787)
   LARSON & STEPHENS
16 810 S. Casino Center Blvd., Ste. 104
   Las Vegas, NV 89101
17 Telephone: 702/382.1170
   Facsimile: 702/382.1169
18 Email: zlarson@lslawnv.com

19
   Attorneys for Reorganized Debtors and
20 Debtors in Possession

21              UNITED STATES BANKRUPTCY COURT

22                    DISTRICT OF NEVADA

23 In re:                              Case No.: BK-S-09-14814-LBR
                                       (Jointly Administered)
24

25 ¹ The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-
26 14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache
   Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case
27 No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-
   14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa,
28 LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843);
   Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No.
   09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany
   Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany

73203-002\DOCS_LA:217565.1

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

| | THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1] | Chapter 11 |
|---|---|---|
| 1 | | |
| 2 | Debtors. | |
| 3 | Affects:<br>☐    All Debtors<br>☒    Affects the following Debtor(s)<br>Rhodes Homes Arizona, LLC; Rhodes Arizona Properties, LLC; and Elkhorn Investments, Inc. | Hearing Date:  TBD<br>Hearing Time:  TBD<br>Courtroom 1 |
| 4 | | |
| 5 | | |

6    **ORDER (A) APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ARIZONA**
7    **ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND**
     **ENCUMBRANCES PURSUANT TO SECTION 363(F) FO THE BANKRUPTCY CODE;**
     **(B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY**
8    **CONTRACTS THERETO;**
     **AND (C) GRANTING RELATED RELIEF**
9

10

11    This matter coming before the Court on the *Reorganized Debtors' Motion for an Order*

12    *(A) Approving the Sale of Certain of the Debtors' Arizona Assets Free and Clear of All Liens,*

13    *Claims, Interests and Encumbrances Pursuant to Section 363(f) of the Bankruptcy Code, (B)*

14    *Approving the Assumption and Assignment of Executory Contracts Thereto; and (c) Granting*

15    *Related Relief* [Docket No. ___] (the "Motion"); the Court having previously entered the *Order*

16    *Approving the Bidding Procedures for the Sale of Certain of the Debtors' Arizona Assets; (B)*

17    *Approving Form of Publication Notice; and (C) Schedule Sale Hearing Date* [Docket No. ___];

18    all interested parties having been duly served with appropriate notice and having been afforded

19
      an opportunity to be heard with respect to the Motion; the Court having considered the pleadings
20

21    relating to the Motion, including the supporting declarations, arguments at the hearing; and after

22    due deliberation, and good cause appearing therefore,

23    **IT IS HEREBY ORDERED:**

24

25

26

27

28

Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

1     1.     The Motion is approved. Any objections received to the Motion are overruled.

2     2.     The highest and best offer received by the Arizona Debtors for the Arizona

3     Assets is the Asset Transfer Agreement attached hereto as **Exhibit A** from _____ (the

4     "Successful Bidder"), whose highest bid was $_____. The Asset Transfer Agreement is

5     hereby approved.

6     3.     If the sale to the Successful Bidder does not close within the time frame

7     contemplated by the Asset Transfer Agreement, then at the sole discretion of the Arizona

8     Debtors, the second highest bid received by _____ in the amount of $_____ shall be

9     deemed the Successful Bidder for purposes of this Order.

10    4.     Pursuant to sections 105(a), 363(b) and (f) of the Bankruptcy Code, the Arizona

11    Debtors are authorized to execute the Asset Transfer Agreement and take any and all actions

12    necessary to effectuate the transfer the Arizona Assets to the Successful Bidder in accordance

13    with the terms of the Bidding Procedures Order, this Order, and the Asset Transfer Agreement.

14    5.     Pursuant to section 363(f) of the Bankruptcy Code, the sale of the Arizona Assets

15    shall be free and clear of all claims, liens, interest or encumbrances other than Permitted

16    Encumbrances (as defined in the Asset Transfer Agreement), with all such claims, interests, or

17    encumbrances attaching to the proceeds of the sale in the same order, priority, and extent as

18    previously existed, subject to any claims and defenses the Arizona Debtors may possess thereto.

19    Any holder of a claim, lien, interest or encumbrance who did not timely file an objection to the

20    Motion is deemed to have consented to the sale of the Arizona Assets to the Successful Bidder

21    pursuant to section 365(f)(2) of the Bankruptcy Code.

22    6.     Pursuant to sections 365(b), (c) and (f) of the Bankruptcy Code, the Arizona

23    Debtors are authorized to assume and assign to the Successful Bidder the executory contracts

24    that are identified in Schedule 1.1(b)(i) to the Asset Transfer Agreement (the "Assumed

25    Contracts"). Upon payment of the cure amount, if any, as indicated on the Exhibit __ to the

26    Motion, all defaults under the Assumed Contracts, if any, shall be deemed satisfied and the

27    Assumed Contracts shall be deemed assumed and assigned to the Successful Bidder as of the

28    Closing Date and the Successful Bidder shall be deemed to have provided adequate assurance of

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101

1    its future performance under the Assumed Contracts within the meaning of sections 365(b) and

2    (f) of the Bankruptcy Code.

3        7.    The sale transaction contemplated by the Asset Transfer Agreement is

4    undertaken in good faith by the Successful Bidder and the Successful Bidder is entitled to all the

5    protections of under section 363(m) of the Bankruptcy Code. The reversal or modification on

6    appeal of the authorization provided herein to consummate the sale transaction shall not affect

7    the validity of the sale to the Successful Bidder, except to the extent such authorization is duly

8    stayed pending such appeal prior to such consummation.

9        8.    Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Arizona Debtors

10    and the Successful Bidder are authorized to immediately consummate the sale of the Arizona

11    Assets to the Successful Bidder.

12        9.    The Bankruptcy Court shall retain jurisdiction to resolve any matters arising

13    from or relating to the implementation of this Order.

14

15    Submitted by:

16    DATED this 26th day of March 2010.

17    By: ___/s/Zachariah Larson___
      LARSON & STEPHENS
18    Zachariah Larson, Esq. (NV Bar No. 7787)
      Kyle O. Stephens, Esq. (NV Bar No. 7928)
19    810 S. Casino Center Blvd., Ste. 104
      Las Vegas, NV 89101
20    (702) 382-1170 (Telephone)
      (702) 382-1169
21    zlarson@lslawnv.com
      *Attorneys for Debtors and Debtors in Possession*
22

23

24

25

26

27

28

## LR 9021 Certification

In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

___ The court has waived the requirement of approval under LR 9021.

___ This is a chapter 7 or 13 case, and either with the motion, or at the hearing, I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

__X__ This is a chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

Brett Axelrod, Counsel for the Purchaser:  APPROVED

___ I certify that I have served a copy of this order with the motion, and no parties appeared or filed written objections.

Submitted by:

DATED this 13th day of September, 2010.

By: /s/ Zachariah Larson
    LARSON & STEPHENS
    Zachariah Larson, Esq. (NV Bar No 7787)
    Kyle O. Stephens, Esq. (NV Bar No. 7928)
    810 S. Casino Center Blvd., Ste. 104 .
    Las Vegas, NV 89101
    (702) 382-1170 (Telephone)
    (702) 382-1169
    zlarson@lslawnv.com
    Attorneys for Debtors

LARSON & STEPHENS
810 S. Casino Center Blvd, Suite 104
Las Vegas, Nevada 89101