Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM, CHTD.
3320 W. Sahara Avenue, Suite 380
Las Vegas, NV 89102
Telephone: 702.979.8358
Facsimile: 702.362.9472
E-Mail:    nleatham@klnevada.com

Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
Meredith A. Lahaie (NY Bar No. 4518023)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: 212.872.1000
Facsimile: 212.872.1002
E-Mail:    pdublin@akingump.com
           aqureshi@akingump.com
           mlahaie@akingump.com

*Counsel for the Reorganized Debtors*

*Electronically Filed*
*September 17, 2010*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE: § | Case No. 09-14814-LBR |
| § | (JointlyAdministered) |
| THE RHODES COMPANIES, LLC, § | |
| aka "Rhodes Homes," *et al.*, § | Chapter 11 |
| § | |
| Reorganized Debtors.[1] § | |
| § | |
| § | |
| § | |

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

| Affects: | § § |
|---|---|
| ☒ All Debtors | § § § § § § |
| ☐ Affects the following Debtor(s) | |

REORGANIZED DEBTORS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO TAX CLAIM INCLUDED IN JAMES RHODES' PROOF OF CLAIM NO. 814-33

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors"), by and through their undersigned counsel, hereby submit this supplemental memorandum of law (the "Supplemental Memorandum of Law") in support of their Objection to James Rhodes' Proof of Claim No. 814-33 and Notice of Amendment of Schedules of Assets and Liabilities (the "Objection") (Docket No. 1149).  Specifically, the Supplemental Memorandum of Law is in objection to the claim for tax reimbursement found in proof of claim number 814-33 (the "Proof of Claim") filed by James Rhodes ("Rhodes") pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").  The Reorganized Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.  Pursuant to a schedule agreed to between the Reorganized Debtors and Rhodes and approved by this Court at the status hearing on August 24, 2010, the Objection has been bifurcated into two phases.  This Supplemental Memorandum of Law addresses only the issue regarding Rhodes' entitlement to the Tax Claim (as defined below) ("Phase

2

I")._[2]_ As part of his Proof of Claim[3] filed in the Chapter 11 Cases (as defined below), Rhodes seeks, among other things, the reimbursement of taxes in the amount of $9,729,151[4] (the "Taxes") paid by Rhodes for the 2006 tax year (the "Tax Claim") on account of taxable income allocated to Rhodes from the Debtor Entities (as defined below) through the Rhodes Entities (as defined below).  Rhodes seeks the Tax Claim despite the fact that there is no provision in Debtor Entities' operative documents that would entitle him to reimbursement for the Taxes he paid based on the Debtor Entities' taxable income allocated to him through the Rhodes Entities.  Further, no provision of state or federal law requires the Debtor Entities to reimburse him for the Taxes either.  As a result, Rhodes is not a creditor under the Bankruptcy Code, and the Tax Claim should not be allowed.

2. Unable to find support in the operative documents or state or federal law, Rhodes instead relies on three wholly unpersuasive arguments to establish that he is entitled to reimbursement for the Taxes.  First, Rhodes cites to a provision in the First Lien Credit Agreement (as defined below) that, according to Rhodes, requires the Debtor Entities to reimburse Rhodes for any tax payments.  However, even a cursory reading of the provision relied on by Rhodes reveals that it merely *permits*—but does not require—the Debtor Entities to reimburse Rhodes for taxes paid on account of taxable income allocated to him from the Debtor Entities.  Second, Rhodes alleges that the books and records of The Rhodes Companies, LLC indicate that $9,729,151 is due to Rhodes.  This ledger entry dated, March

---

[2] The second phase will involve (1) the discovery necessary to support (a) the amount of the Tax Claim (if Rhodes is found by the Court to have an entitlement to the Tax Claim), (b) allowance of the amounts allegedly advanced to Greenway Partners, LLC (the "Greenway Partners Claim"), and (c) all issues regarding the Scheduling of Claims, including the Reorganized Debtors' ability to amend the Statements after confirmation of the Plan (as defined below) ("Phase II").

[3] A copy of which is attached hereto as Exhibit A.

[4] This amount includes $2,754,992 in penalties and interest paid by Rhodes.

3

31, 2009—the eve of the Petition Date (as defined below)—in no way obligates the Debtor Entities to reimburse Rhodes. Finally, Rhodes argues that the Debtor Entities' previous course of conduct establishes their obligation to reimburse him for the Taxes. This argument must also fail. The fact that the Debtor Entities may have made similar payments in the past does not impose any obligation on the Debtor Entities to continue to do so. Thus, the Tax Claim should be expunged and disallowed in its entirety because none of Rhodes' alleged sources of authority change the fact that he is not a creditor and is not entitled to the Tax Claim.

## JURISDICTION

3.  This Court has jurisdiction over the Objection under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

5.  The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 502 and Bankruptcy Rule 3007.

## BACKGROUND

**A.  General Background**

6.  On either March 31, 2009 or April 1, 2009 (collectively, the "Petition Date"), each of the debtors (collectively, the "Debtors") commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

7.  On April 13, 2009, the Court issued a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines establishing August 5, 2009 as the deadline for all creditors other than governmental units to file proofs of claim asserting claims in the Chapter 11 Cases.

8.  On July 17, 2009, Rhodes filed the Proof of Claim seeking in part the reimbursement of the Taxes.

9.  On March 12, 2010, the Court entered an order confirming the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.* (the "Plan").  Pursuant to the Plan, the deadline for the Reorganized Debtors to object to claims asserted by Rhodes and/or certain affiliated entities or individuals was 60 days from the effective date (the "Effective Date") of the Plan.[5]  On April 1, 2010, the Effective Date of the Plan occurred.  Accordingly, the deadline to object to the Proof of Claim was May 31, 2010.

10.  On May 27, 2010, the Reorganized Debtors filed the Objection through which the Reorganized Debtors sought entry of an order, pursuant to Bankruptcy Code section 502(b) and Bankruptcy Rule 3007, disallowing and expunging the Tax Claims in full and noticing that the Reorganized Debtors had amended their schedules and liabilities to remove certain claims (the "Scheduled Claims") that the Reorganized Debtors believe were incorrectly scheduled.

11.  On June 17, 2010, Rhodes filed an Opposition to the Objection (the "Opposition").

12.  At a status conference with the Court, held on August 24, 2010, the parties agreed to bifurcate the issues presented in the Objection into two phases.  Phase I, which is the subject of this Supplemental Memorandum of Law, addresses only the issue regarding Rhodes' entitlement to the Tax Claim.  Phase II will address the discovery necessary to support (a) the amount of the Tax Claim (if Rhodes is found by the Court to have an

---

[5] The 60-day deadline applies to objections to "Rhodes Entities Claims" as that term is defined in the Plan.

5

entitlement to the Tax Claim), (b) allowance of the Greenway Claim, and (c) all issues regarding the Scheduling of Claims, including the Reorganized Debtors' ability to amend the Statements after confirmation of the Plan.

13.     Both the Reorganized Debtors and Rhodes have agreed to certain stipulated facts (the "Stipulated Facts") (Docket No. 1290) in order to assist the Court in determining the issue in Phase I.

**B.     The Stipulated Facts**

14.     By the Tax Claim, Rhodes seeks reimbursement for the Taxes he paid on account of taxable income allocated to him from Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership (collectively, the "Debtor Entities").

15.     The taxable income from the Debtor Entities was passed through to Rhodes through the following non-Debtors: (a) Sedora Holdings, LLC; (b) Rhodes Ranch, LLC; and (c) Sagebrush Enterprises, Inc. (collectively, the "Rhodes Entities").

16.     The books and records of The Rhodes Companies, LLC contain a ledger entry dated March 31, 2009 in the amount of $9,729,151 due to Rhodes.

17.     On either March 31, 2009 or April 1, 2009, each of the Debtors, including the Debtor Entities, filed for chapter 11 under title 11 of the United States Code in United States Bankruptcy Court for the District of Nevada.

18.     Since 2005 and prior to the Petition Date, the Debtor Entities have made distributions to the Rhodes Entities that were not prohibited by section 6.5(iii) of the Credit Agreement dated November 21, 2005 among Heritage Land Company, LLC, The Rhodes Companies, LLC, Rhodes Ranch General Partnership, the lenders listed therein, and Credit

Suisse, Cayman Islands Branch, as administrative agent, collateral agent, and syndication agent for the first lien lenders (the "First Lien Credit Agreement").

19. None of the Debtors paid Rhodes any portion of the $9,729,151 referred to in paragraph 16 above prior to the Petition Date.

20. Paragraph 5 of the Amended and Restated General Partnership Agreement of Rhodes Ranch General Partnership is captioned "**DISTRIBUTIONS**" and states:

> Partnership cash accounts (the "cash accounts") shall be set up on the Partnership's books for each Partner. No Partner shall receive a salary for his services to the Partnership. Each Partner's cash account shall be credited with his proportionate share (in accordance with his Partnership percentages) of all cash revenues of the Partnership from operations during any period, and shall be charged with his proportionate share of (1) all principal and interest payments on any indebtedness of the Partnership, and (2) all cash expenses incurred incident to the operation of the Partnership's business. Each Partner may make withdrawals from his cash account from time to time, to the extent permitted by the Partnership.

21. Paragraph 9.03 of the Amended and Restated General Partnership Agreement of Rhodes Ranch General Partnership is captioned "**Capital Accounts**" and states:

> Each Partner's capital account shall be initially equal to the cash it contributes and its share of liabilities which it has assumed, and during the term of the Partnership shall be:
>
> (a) Increased by:
>
> (1) the amount of taxable income allocated to the Partner,
>
> (2) the Partner's proportionate share of liabilities he has assumed, and
>
> (3) the amount of any additional cash contributed by the Partner or paid to his cash account, and shall be
>
> (b) Decreased by:
>
> (1) the amount of tax losses allocated to the Partner, and

7

> (2) the amount of cash distributed to the Partner, whether from his cash account or otherwise.

22. Article V of the Heritage Land Company Operating Agreement, which is captioned "**DISTRIBUTIONS TO MEMBERS**," contains the following provisions:

> 5.1 <u>Distributions of Net Cash Flow</u>. Prior to the dissolution of the Company and the commencement of the liquidation of its assets and winding up of its affairs, the Manager may in its sole discretion, distribute from time to time the Net Cash Flow to the Members pro rata in accordance with their respective Percentage Interests.
>
> …
>
> 5.3 <u>Amounts Withheld</u>. All amounts withheld pursuant to the Code or any provisions of state or local tax law with respect to any payment or distribution to the Members from the Company shall be treated as amounts distributed to the relevant Member for all purposes of this Agreement.

**C.  Facts and Structure Relevant to the Tax Claim**

23. Rhodes seeks reimbursement for the Taxes he paid on account of taxable income allocated, directly and indirectly, to him from the Debtor Entities, including income originating in pass-through or disregarded entities owned by the Debtor Entities. The taxable income from the Debtor Entities was passed through to Rhodes through the Rhodes Entities.

24. The Rhodes Entities are non-debtor entities ultimately owned by Rhodes that previously controlled the Debtor Entities. The relationship between the Rhodes Entities and the Debtor Entities during the period prior to confirmation of the Plan is set forth below:

```
                                                    Rhodes[6]
    Rhodes
       │                                               │
       ▼                                               ▼
 ┌──────────────┐      100%    ┌──────────────┐    ┌──────────────┐
 │ Sagebrush    │─────────────▶│ Rhodes Ranch,│    │ Sedora       │
 │ Enterprises, │              │ LLC          │    │ Holdings, LLC│
 │ Inc.         │              │ ("Rhodes     │    │ ("Sedora")   │
 │ ("Sagebrush")│              │  Ranch")     │    │ (Non-debtor) │
 │ (Non-debtor) │              │ (Non-debtor) │    └──────────────┘
 └──────────────┘              └──────────────┘
       │ 100%                         │ 5.637%
       ▼                              │
 ┌──────────────┐                     │
 │ The Rhodes   │         5.694%          94.306%
 │ Companies,   │
 │ LLC ("Rhodes │
 │ Companies")  │
 │ (Debtor)     │
 └──────────────┘
       │ 94.363%                      │            │
       ▼                              ▼            ▼
 ┌──────────────┐              ┌──────────────────────┐
 │ Rhodes Ranch,│              │ Heritage Land        │
 │ GP ("RRGP")  │              │ Company, LLC         │
 │ (Debtor)     │              │ ("Heritage")         │
 └──────────────┘              │ (Debtor)             │
                               └──────────────────────┘
```

As depicted above, Rhodes Companies was a single member limited liability company with Sagebrush, an S corporation, as its single member. RRGP was a general partnership with Rhodes Companies and Rhodes Ranch as its two partners. Heritage was a limited liability company with two members, Sedora and Rhodes Ranch. Sedora was a limited liability company, and like Rhodes Companies, Rhodes Ranch was a single member limited liability company with Sagebrush as its single member.[7]

25.     Taxable income generated by the Debtor Entities was passed through to Rhodes through the Rhodes Entities in the following manner: (i) taxable income generated by Rhodes Companies was allocated to Rhodes as a result of his equity interest in

---

[6] Sedora is owned by two dynasty trusts established and owned by Rhodes for the benefit of his family, with tax liability flowing through to Rhodes.

[7] With the exception of Sagebrush, each of the Debtor Entities and the Rhodes Entities was organized in Nevada. Sagebrush was initially organized in Nevada, but it was reincorporated in Delaware in 2008.

9

Sagebrush; (ii) taxable income generated by RRGP was also allocated to Rhodes as a result of his equity interest in Sagebrush; and (iii) taxable income generated by Heritage was allocated to Rhodes as a result of (a) his indirect membership interest in Sedora and (b) his equity interest in Sagebrush, with taxable income flowing to Sagebrush as a result of its membership interest in Rhodes Ranch. The attachments to the Proof of Claim indicate that the total amount of the taxable income that flowed through to Rhodes was $21,014,159, resulting in taxes of $6,974,159. Rhodes also paid penalties and interest in the amount of $2,754,992, bringing the total amount paid by Rhodes to $9,729,151.[8]

26. Rhodes asserts that he is owed payment for the Taxes pursuant to the terms of the First Lien Credit Agreement. Additionally, Rhodes claims that he is owed payment pursuant to (i) a March 31, 2009 ledger entry which states that he is owed $9,729,151 and (ii) the Debtor Entities' past reimbursement practices. Rhodes, however, does not rely on any provision in the operative documents of the Debtor Entities or any state or federal statute requiring the Debtor Entities to reimburse him for taxes paid on account of income allocable to such Debtor Entities. In fact, none of the operative documents, attached hereto as Exhibits B – D, contain any provision that would require, much less entitle, Rhodes to receive reimbursement from the Debtor Entities for the Taxes.

---

[8] Since none of the Debtor Entities' operative documents provide for reimbursement of the Taxes they certainly do not provide for reimbursement of interest and penalties derived therefrom. Should the Court find that Rhodes is entitled to reimbursement, the Reorganized Debtors intend to seek discovery regarding, and to challenge, the payment of interest and penalties in Phase II.

10

**ARGUMENT**

**I.     The Tax Claim Should be Disallowed Because Rhodes is Not a Creditor and Does Not Hold a Claim for the Reimbursement of Taxes**

    **A.     "Creditor" as Defined in the Bankruptcy Code**

27.    Pursuant to Bankruptcy Code section 501(a), only creditors and indenture trustees may file proofs of claim in a debtor's chapter 11 proceeding.  11 U.S.C. § 501(a).  Bankruptcy Code section 101(10) defines the term "creditor" as –

    (A)    [an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

    (B)    [an] entity that has a claim against the estate of a kind specified in section 348(d), 502 (f), 502(g), 502(h), or 502(i) of this title; or

    (C)    [an] entity that has a community claim.

11 U.S.C. §101(10).  Under subsection (A) of Bankruptcy Code section 101(10), an entity is a creditor only if such entity holds a prepetition claim against the debtor.[9]

    **B.     "Claim" as Defined in the Bankruptcy Code**

28.    The Bankruptcy Code defines "claim" broadly as a right to payment or a right to an equitable remedy for a breach of performance if such breach gives rise to a right to payment.  *See* 11 U.S.C. § 101(5).  Courts have recognized that the Bankruptcy Code's definition of "claim" has the broadest meaning possible.  *See F.C.C. v. NextWave Personal Commc'ns Inc.*, 537 U.S. 293, 302 (2003) ("We have said that 'claim' has the 'broadest available definition.'") (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)); *Sherman v. Securities and Exch. Comm'n (In re Sherman)*, 491 F.3d 948, 958 (9th Cir.

---

[9] Pursuant to Bankruptcy Code section 303(b), the commencement of a voluntary chapter 11 case constitutes an order for relief under chapter 11 of the Bankruptcy Code.  *See* 11 U.S.C. § 303(b).  Accordingly, to satisfy the requirements of Bankruptcy Code section 101(10)(A), the entity must hold a claim that arose prior to the date on which the debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The requirements of Bankruptcy Code sections 101(10)(B) and (C) are not discussed in further detail herein because such provisions are not relevant to the analysis of the claim filed by Rhodes.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

2007) (recognizing that Congress intended to adopt the broadest available definition of "claim"). Thus, the Bankruptcy Code's definition of "claim" provides that the right to payment or the right to an equitable remedy forming the basis of a claim may be liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured and need not be reduced to judgment. *See* 11 U.S.C. § 101(5).

29. Notwithstanding the foregoing, legal precedent establishes certain limits as to what constitutes a claim under the Bankruptcy Code. Specifically, an entity holds a claim and, thus, a right to payment only where there is an obligation running from the debtor to the party asserting the claim that is enforceable under either state or federal law. *See NextWave Personal Commc'ns Inc.*, 537 U.S. at 294 ("The plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation . . . ."); *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007) ("[C]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation . . . ."); *Pany v. First Alliance Mortgage Co. (In re First Alliance Mortgage Co.)*, 269 B.R. 428, 435 (Bankr. C.D. Cal. 2001) ("Whether a right to payment exists in a bankruptcy case is generally determined by reference to state law.").

**C.     Tax Obligations With Respect to Pass-Through or Disregarded Entities**

   **1.     Pass-Through Entities**

30. Partnerships and limited liability companies[10] such as RRGP and Heritage are

---

[10] Limited liability companies are generally treated the same as partnerships for tax purposes. *See, e.g.*, *Gilliam v. Speier (In re KRSM Props., LLC)*, 318 B.R. 712, 718 (B.A.P. 9th Cir. 2004) ("A tax advantage in the LLC form of business is the ability . . . [to] elect to be treated as a partnership for federal tax purposes . . . ."); *Five Star Concrete, L.L.C. v. Klink, Inc.*, 693 N.E.2d 583, 586 (Ind. Ct. App. 1998) (noting that limited liability companies "are treated by federal and state taxing bodies in the same way as partnerships, that is, income 'passes through' the entity and is taxed to the member, an owner of an interest in the company"). A limited liability company may also elect to be treated as an association (i.e., a corporation) for tax purposes. *See* 26 C.F.R. § 301.7701-3(a). Upon information and belief none of the Debtor Entities or the Rhodes Entities elected this association treatment. Accordingly, the consequences of such an election are not discussed herein.

generally characterized as "pass-through" entities for tax purposes, meaning tax obligations flow through them to their partners or members. Partnerships and limited liability companies are therefore not obligated to pay taxes on account of the taxable income generated by their business activity. *See* 26 U.S.C. § 701; *United States v. Basye*, 410 U.S. 441, 448 (1973) (recognizing that partnerships are not required to pay taxes). Instead, while such entities are required to file returns stating, among other things, their taxable income, partnerships and limited liability companies are treated as mere conduits through which tax obligations pass to their partners or members. *See Basye*, 410 U.S. at 448 (describing partnerships as conduit entities); *Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324, 326-27 (2006) (discussing filing requirements and describing partnerships as conduit entities). The partners in the partnership or members in the limited liability company are therefore ultimately responsible for paying taxes on the taxable income generated by the entity in accordance with their distributive share under the operative documents for the partnership or limited liability company. *See Basye*, 410 U.S. at 448 (recognizing that partners are required to pay taxes based on their distributive share of a partnership's income); *Chef's Choice Produce, Ltd. v. Comm'r*, 95 T.C. 388, 392 (1990) (same). Moreover, partners or members are required to pay taxes regardless of whether they actually received a distribution from the partnership or limited liability company. *See* 26 C.F.R. § 1.702-1(a); *Vecchio v. Comm'r*, 103 T.C. 170, 185 (1994) ("Each partner is taxed on his distributive share of the partnership income without regard to whether the amount is actually distributed to him.").

31. Consistent with the foregoing, it has been held that that pass-through entities such as partnerships and limited liability companies do not have an obligation to make

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

distributions to reimburse their partners or members for the taxes they paid in the absence of either (i) a statutory requirement, (ii) a provision in their operative documents requiring that such distributions be made or (iii) a decision by partners or members to make a distribution consistent with applicable law. *See Five Star Concrete*, 693 N.E.2d at 586. In *Five Star Concrete*, the court considered whether a former member had a right to a distribution in an amount equal to the income allocated to the former member for tax purposes. *Id.* In considering the issue, the court first noted that applicable Indiana statutes did not provide that the allocation of income for tax purposes created an automatic legal right to receive a distribution in the amount of such income. *Id.* The court then noted that the operative documents for the limited liability company were also silent regarding the timing and amount of distributions. *Id.* Under Indiana law, decisions regarding the making of distributions were therefore left to be determined by the majority of the limited liability company's members, and the members had not ordered the limited liability company to make a distribution. *Id.* Accordingly, the court found that the former member had no right to a distribution under either Indiana law or the operative documents of the limited liability company. *Id.*

32.     Although *Five Star Concrete* concerns an Indiana limited liability company, the reasoning employed by the court is equally applicable to partnerships and limited liability companies organized under Nevada law. No applicable Nevada statute provides that an allocation of income to a member in a limited liability company or partner in a partnership creates an automatic legal right to receive a distribution. Instead, applicable Nevada statutes provide that the rights of a partner in a partnership or a member in a limited liability company to receive distributions are governed by the operative documents for the

14

entity, or a decision by the members of a limited liability company or partners in a partnership to make distributions. *See* NEV. REV. STAT. § 87.4316 (2010) ("[R]elations among the partners and between the partners and the partnership are governed by the partnership agreement."); NEV. REV. STAT. § 86.341 (2010) ("A limited-liability company may, from time to time, divide the profits of its business and distribute them to its members . . . upon the basis stipulated in the operating agreement.").

### 2. Disregarded Entities

33. Although limited liability companies are generally characterized as pass-through entities, limited liability companies that have a single member, such as Rhodes Companies, are often treated as "disregarded entities" for tax purposes.[11] A limited liability company that is a disregarded entity is treated as a sole proprietorship for tax purposes and is not required to pay taxes or file separate tax returns. *In re KSRM Props., LLC*, 318 B.R. at 719; *Kandi v. United States*, No. C05-0840C, 2006 WL 83463, at *2 (W.D. Wash. Jan. 11, 2006). Instead, the single member is required to report all of the limited liability company's profits or losses on its personal tax return and pay the resulting taxes. *In re KSRM Props., LLC*, 318 B.R. at 719.

### D. Rhodes is Not a Creditor And Does Not Hold a Claim for the Reimbursement of Taxes

34. The Tax Claim should be disallowed and expunged in full because Rhodes is not a creditor and does not hold a claim for reimbursement of the Taxes. As previously discussed, Rhodes is a creditor in the Chapter 11 Cases only if he has asserted an allowed prepetition claim, and he has a prepetition claim only if the Tax Claim is based on a right of

---

[11] A single-member limited liability company may also elect to be treated as an association (i.e., corporation) for tax purposes. *See* 26 C.F.R. § 301.7701-3(a); *In re KSRM Props., LLC*, 318 B.R. at 718-19. As already noted, however, neither the Debtor Entities nor the Rhodes Entities are believed to have elected to be treated as such.

15

payment or, in other words, an enforceable obligation of the Debtor Entities to Rhodes. Rhodes has not satisfied these requirements with respect to the Tax Claim.

35.    First, under federal law, the tax obligations on the taxable income generated by the Debtor Entities automatically flowed to the Rhodes Entities and, ultimately, to Rhodes because RRGP was a partnership, and Heritage was a limited liability company (as discussed above). In addition, Rhodes Companies was a single member limited liability company. Therefore, for tax purposes, the Debtor Entities consisted of (i) two pass-through entities (RRGP and Heritage) and (ii) one disregarded entity (Rhodes Companies). Thus, the tax obligations associated with the taxable income generated by the Debtor Entities flowed to the Rhodes Entities and then directly to Rhodes since the Rhodes Entities also were either pass-through entities (Sedora and Sagebrush) [12] or disregarded entities (Rhodes Ranch).

36.    Second, Rhodes has not—and indeed cannot—identify any statute or provision contained in the Debtor Entities' operative documents obligating the Debtor Entities to reimburse Rhodes for the Taxes. Instead, Rhodes attempts to establish the Debtor Entities' reimbursement obligations by pointing to the books and records of The Rhodes Companies, LLC which contain a March 31, 2009 ledger entry in the amount of $9,729,151 due to Rhodes. However, at most, this ledger entry merely indicates that certain payments may have been made by Rhodes, but fall far short of requiring the Debtor Entities to reimburse Rhodes. Indeed, without express language requiring the Debtor Entities to

---

[12] As previously discussed, Sagebrush was organized as an S corporation. S corporations are small business corporations with fewer than 75 shareholders. *See* 26 U.S.C. § 1361(b)(1)(A); *Info. Sys. & Networks Corp. v. United States*, 437 F.3d 1173, 1175 (Fed. Cir. 2006). Although not discussed in section I.C.1 above, S corporations are also pass-through entities for tax purposes. *See, e.g.*, *Info. Sys. & Networks Corp.*, 437 F.3d at 1175 ("The [S corporation] does not pay income tax on the income it generates. Rather only the shareholders of the S corporation pay income tax on their corporate dividends.").

16

reimburse him—if and when he paid taxes on account of taxable income attributable to the Debtor Entities—Rhodes has no legal entitlement to reimbursement for such tax payments.

37.     Moreover, the members and partners in the Debtor Entities also failed to cause the Debtor Entities to make a distribution prior to the Petition Date.  The fact that distributions might have been made to reimburse Rhodes for tax payments in the past does nothing to change the fact that Rhodes has no entitlement to a similar distribution now.  Thus, like the former member in *Five Star Concrete*, Rhodes has not demonstrated a legal right to a distribution to reimburse him for taxes paid on account of the taxable income allocated to him from the Debtor Entities through the Rhodes Entities.

38.     Finally, the First Lien Credit Agreement does not obligate the Debtor Entities to reimburse Rhodes for the Taxes.  A review of the First Lien Credit Agreement illustrates that its language merely provides that the Debtor Entities were ***permitted***—but not required—to make distributions to the Rhodes Entities for the purpose of reimbursing Rhodes for tax payments.  In relevant part, the First Lien Credit Agreement provides:

> The Borrowers[13] . . . ***may make*** Restricted Payments to the Parents for the purposes of permitting the direct or indirect holders of Capital Stock of the Parents to pay their respective United States federal, state or local tax obligations with respect to net income allocated to them from the Borrowers and their Subsidiaries (including, without limitation, with respect to tax obligations relating to the Fiscal Years ending December 31, 2004 and December 31, 2005).

First Lien Credit Agreement, Section 6.5(iii) (emphasis added) (attached hereto as Exhibit E).  Thus, by its very terms, the provision of the First Lien Credit Agreement relied upon by Rhodes did nothing more than permit the Debtor Entities to make distributions to the Rhodes Entities for purposes of reimbursing Rhodes for the Taxes, but did not give rise to a

---

[13] All capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the First Lien Credit Agreement.

17

binding obligation enforceable against the Debtor Entities.

39.   As a result of the foregoing, Rhodes does not hold a valid claim for reimbursement of taxes paid and is not a creditor for purposes of Bankruptcy Code section 501(a).  Accordingly, the Tax Claim must be disallowed and expunged in full.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, the Reorganized Debtors respectfully request that the Tax Claims be disallowed in its entirety, and that this Court (i) enter an order, substantially in the form attached hereto as Exhibit F, and (ii) grant the Reorganized Debtors such other and further relief as is just, proper and equitable.

Dated this 17th day of September, 2010.

By:   /s/ *Philip C. Dublin*
Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM, CHTD.
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
(702) 979-2357 (Telephone)
(702) 362-9472 (Facsimile)
Nleatham@klnevada.com

AKIN GUMP STRAUSS HAUER & FELD LLP
Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
Meredith A. Lahaie (NY Bar No. 4518023)
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
pdublin@akingump.com
aqureshi@akingump.com
mlahaie@akingump.com

*Counsel for the Reorganized Debtors*