# EXHIBIT B

# EXHIBIT B

**GENERAL PARTNERSHIP AGREEMENT**

**OF**

**RHODES RANCH GENERAL PARTNERSHIP**

THIS GENERAL PARTNERSHIP AGREEMENT is made and entered into this *1ST* day of *JANUARY*, 1999, by and between RHODES RANCH LIMITED PARTNERSHIP, SOUTHWESTERN OPPORTUNITIES LIMITED PARTNERSHIP and DURANGO/SPRINGS PROPERTIES LIMITED PARTNERSHIP (the "partners"), all of Clark County, Nevada.

## 1. FORMATION OF PARTNERSHIP

**1.01  Formation**.  The partners hereby form a Nevada general partnership (the "partnership") pursuant to the Nevada Uniform Partnership Act, Nevada Revised Statutes, Chapter 87.  The rights and duties of the partners shall be as provided in that act except as modified by this agreement.

**1.02  Name**.  The business of the partnership shall be conducted under the name RHODES RANCH GENERAL PARTNERSHIP or such other name as the partners shall hereafter designate by majority vote.

**1.03  Principal Place of Business**.  The principal place of business of the partnership shall be at 4360 South Arville, Suite B, Las Vegas, Nevada, 89103,with such other places of business as may be agreed upon by the partners from time to time.

## 2. BUSINESS OF THE PARTNERSHIP

The business of the partnership shall be real estate sale and development.

## 3. TERM

The term of the partnership shall begin on January 1, 1999 and shall continue until dissolved by an act or event specified in this agreement or by law as one effecting dissolution.

1

## 4. CAPITAL AND CONTRIBUTIONS

**4.01    Initial Capital**. The initial contributions of the partners shall be made in cash or the assumption of liabilities, as reflected on Schedule A.

**4.02    Additional Capital**. Future contributions to capital, made by the partners in accordance with their partnership percentages, shall be made upon determination by a vote of partners having at least two-thirds (2/3) of the aggregate partnership percentages, and shall be reflected on Schedule A when made.

**4.03    Interest on Capital Contributions**. No partner shall be paid interest on any capital contribution.

## 5. DISTRIBUTIONS

Partnership cash accounts (the "cash accounts") shall be set up on the partnership's books for each partner.  No partner shall receive a salary for his services to the partnership. Each partner's cash account shall be credited with his proportionate share (in accordance with his partnership percentages) of all cash revenues of the partnership from operations during any period, and shall be charged with his proportionate share of (1) all principal and interest payments on any indebtedness of the partnership, and (2) all cash expenses incurred incident to the operation of the partnership's business.  Each partner may make withdrawals from his cash account from time to time, to the extent permitted by the partnership.

## 6. ALLOCATION OF PROFITS AND LOSSES FOR TAX PURPOSES

All taxable income and tax losses of the partnership as determined for federal income tax purposes shall be allocated among the partners in proportion to their respective partnership percentages.

## 7. INITIAL PARTNERSHIP PERCENTAGES

The initial partnership percentages of each partner shall be as follows:

| Name | Initial Partnership Percentages |
|---|---|
| RHODES RANCH LIMITED PARTNERSHIP | 55% |
| SOUTHWESTERN OPPORTUNITIES LIMITED PARTNERSHIP | 22 ½% |
| DURANGO/SPRINGS PROPERTIES LIMITED PARTNERSHIP | 22 ½% |

2

## 8. MANAGEMENT

It is understood that each of the partners is involved in its own business, and that no partner is expected to curtail its activities spent in pursuing its business. Each partner shall devote only as much time as is necessary to perform the business of the partnership.

The partners, by majority vote, may appoint any single partner as a managing partner, or any number of partners as a management committee, to supervise the day to day business of the partnership. A managing partner or management committee shall serve in that capacity until they resign or are replaced by the partnership. The managing partner or management committee may act on behalf of the partnership for all purposes except for those actions requiring a two-thirds (2/3) vote as set forth below. The partners appoint RHODES RANCH LIMITED PARTNERSHIP as the initial managing partner.

In matters relating to the management of the partnership's business, a decision of the partners owning a majority of the partnership percentages shall be binding upon the partnership, except where a higher majority is otherwise required by this agreement. The following specific actions may not be taken without the consent of partners having at least two-thirds (2/3) of the aggregate partnership percentages:

(1)    Except with respect to agreements and instruments in the usual and ordinary course of business of the partnership, execute any agreement or instrument in writing to bind the partnership or contract any debt on account of the partnership.

(2)    Pledge any property of the partnership for the purpose of securing a loan.

(3)    Lend any money of the partnership.

(4)    Assign any part of his interest in the partnership or enter into an agreement as a result of which any person may become interested with him in the partnership.

(5)    Sell any capital assets of the partnership.

## 9. BANKING AND BOOKS OF ACCOUNT

**9.01    Books and Records.**  All funds of the partnership shall be deposited in its name in such accounts as shall be designated by the partners.  All

3

withdrawals from these accounts shall be made by checks signed by at least two (2) partners who have signature authority on the partnership accounts. Complete records and books of account shall be kept in which shall be entered fully and accurately all transactions and other matters about the partnership's business as are usually entered into records and books of account maintained by persons engaged in businesses of a like character, including a capital account for each partner. The books shall be kept on a cash basis. The books and records shall at all times be maintained at the principal place of business of the partnership and each partner shall at all times have access thereto.

      **9.02    Fiscal Year.** The fiscal year of the partnership shall end on December 31 of each year.

      **9.03    Capital Accounts.** Each partner's capital account shall be initially equal to the cash he contributes and his share of liabilities which he has assumed, and during the term of the partnership shall be:

        (a)    Increased by:

            (1)    the amount of taxable income allocated to the partner,

            (2)    the partner's proportionate share of liabilities he has assumed, and

            (3)    the amount of any additional cash contributed by the partner or paid to his cash account, and shall be

        (b)    Decreased by:

            (1)    the amount of tax losses allocated to the partner, and

            (2)    the amount of cash distributed to the partner, whether from his cash account or otherwise.

## 10. NEGLIGENCE AND INDEMNIFICATION

      Except to the extent that the partnership is insured against liability, a partner guilty of negligence or wrongdoing shall reimburse the partnership for damages sustained by it as a result of negligence or wrongdoing. The partnership shall indemnify and hold harmless all partners from and against any loss, expense, damage, or injury suffered or sustained by him by reason of any act, omissions, or alleged acts or omissions arising out of his activities on behalf of the partnership or in furtherance of the interest of the partnership, including but not limited to any judgment, award,

settlement, reasonable attorneys' fees, and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding, or claim, if the acts, omissions, or alleged acts or omissions upon which the actual or threatened action, proceeding, or claims are based, or for a purpose reasonably believed to be in the best interests of the partnership, and were not performed or admitted fraudulently or in bad faith or as a result of negligence by the partner. Any of this indemnification shall be first from the assets of the partnership and then from all partners and borne among them in accordance with their partnership percentages.

## 11. DISSOLUTION

The withdrawal, bankruptcy, expulsion, or death of any partner (except where only one partner remains) shall not require a winding up of the partnership (unless the remaining partners vote to dissolve) and shall have no effect upon the continuance of the partnership's business. He or his estate shall have no rights in or against the partnership or the remaining partners except for those payments as may be due under the provisions of this agreement. The partnership may be dissolved at any time by vote of partners having at least two-thirds (2/3) of the partnership percentages, in which event the partners shall proceed with reasonable promptness to liquidate the business and assets of the partnership. Upon dissolution and winding up, the assets of the partnership shall be used and distributed in the following order:

(1)    To creditors in the order of priority provided by law except liabilities to the partners in their capacity as partners.

(2)    To the partners for loans, if any, made by them to the partnership and to the partners for any expenses of the partnership paid by them, to the extent they are entitled to reimbursement.

(3)    To the partners in proportion to their respective capital accounts (which accounts have been determined after allocation of all taxable income and tax losses incident to the dissolution) until they have received an amount equal to their capital accounts immediately prior to the distribution.

(4)    To the partners in accordance with their partnership percentages.

## 12. MISCELLANEOUS

**12.01 Additional Partners**. Additional partners shall be admitted by the vote of partners having not less than two-thirds (2/3) of the partnership percentages. Each additional partner, before being admitted as a partner, shall first agree in writing to be bound by the terms of this partnership agreement.

**12.02  Assignment**.  No partner shall have the right to assign his partnership interest to another person to become a partner in his place without first obtaining the approval of the other partners as set forth in Section 13.01 above.  Any partner may at any time assign his right to receive his distribution of profits to another person or entity.

**12.03  Bankruptcy Defined**.  For purposes of this agreement, the "bankruptcy" of a partner shall be deemed to have occurred immediately upon the happening of any of the following:  (1) the filing of an application by a partner for, or a consent to, the appointment of a trustee of the partner's assets,  (2) the filing by a partner of a voluntary petition in bankruptcy or the filing of a pleading in any court of record admitting in writing the partner's inability to pay the partner's debts as they become due,  (3) the making by a partner of a general assignment for the benefit of creditors,  (4) the filing by a partner of an answer admitting the material allegation of or consenting to, or defaulting in answering a bankruptcy petition filed against the partner in any bankruptcy proceeding, or  (5) the entry of an order, judgment, or decree by any court of competent jurisdiction adjudicating a partner as bankrupt, or appointing a trustee of the partner's assets, and that order, judgment, or decree continuing unstayed and in effect for the period of thirty (30) days.

**12.04  Amendment**.  This partnership agreement may be amended at any time and from time to time by a vote of partners having at least two-thirds (2/3) of the aggregate partnership percentages.

**12.05  Entire Agreement**.  This agreement constitutes the entire agreement among the parties.  It supersedes any prior agreement or understanding among them, and it may not be modified or amended in any manner other than as set forth herein.

**12.06  Governing Law**.  This agreement and the rights of the parties hereunder shall be governed by and interpreted in accordance with the laws of Nevada.

**12.07  Effect**.  Except as otherwise specifically provided herein, the agreement shall be binding upon and inure to the benefit of the parties and their legal representatives, heirs, administrators, executors, successors, and assigns.

**12.08  Pronouns and Number**.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in either the masculine, feminine or neuter shall include the masculine, feminine, or neuter.

**12.09  Captions**.  Captions and section headings contained in this agreement are inserted only as a matter of convenience and in no way define, limit, or extend the scope or intent of this agreement or any provision hereof.

**12.10  Partial Enforceability.**  If any provision of this agreement of the application of any provision to any person or circumstance shall be held invalid, the remainder of this agreement, or the application of that provision to persons or circumstances other than those to which it is held invalid, shall not be affected thereby.

**12.11  Enforcement Costs.**  If any partner brings an action against another partner or the partnership, or if the partnership brings an action against any partner, which relates to this partnership agreement, the prevailing party shall be entitled to all costs of pursuing or defending this action, including court costs and reasonable attorneys' fees.

**12.12  Counterparts.**  This agreement may be executed in several counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

**IN WITNESS WHEREOF,** the undersigned partners have executed this agreement on the date written above.

RHODES RANCH LIMITED PARTNERSHIP

By _____
    JAMES M. RHODES, President of Rhodes
    Design and Development Corporation,
    General Partner

SOUTHWESTERN OPPORTUNITIES
LIMITED PARTNERSHIP

By _____
    JAMES M. RHODES, President of
    Coronado Properties, Inc., General Partner

DURANGO/SPRINGS PROPERTIES LIMITED
PARTNERSHIP

By _____
    JAMES M. RHODES, President of Mustang
    Properties, Inc., General Partner

7

## RHODES RANCH GENERAL PARTNERSHIP

### SCHEDULE A

| Partner | Cash Contributed or Liabilities Assumed | Partnership Percentages |
|---|---|---|
| RHODES RANCH LIMITED PARTNERSHIP | See attached Schedule A-1 | 55% |
| SOUTHWESTERN OPPORTUNITIES LIMITED PARTNERSHIP | See attached Schedule A-1 | 22 ½% |
| DURANGO/SPRINGS PROPERTIES LIMITED PARTNERSHIP | See attached Schedule A-1 | 22 ½% |

f:\files\rhodes\genpart.agr.doc

8

STATE OF NEVADA        )
                               ) SS.

COUNTY OF CLARK     )

      On this _18th_ day of _August_, 2003, personally appeared before me, the undersigned Notary Public, _Ronald E. Gillette_, proved to me to be the person whose name is subscribed to the above instrument, who acknowledged to me that (s)he executed the instrument freely and voluntarily and for the purposes stated therein on behalf of Sagebrush Enterprises, Inc.

**BARBARA A. TAYLOR**
Notary Public State of Nevada
No. 02-77843-1
My appt. exp. July 1, 2006

_Barbara A. Taylor_
Notary Public in and for Clark County, Nevada

STATE OF NEVADA        )
                               ) SS.

COUNTY OF CLARK     )

      On this _18th_ day of _August_, 2003, personally appeared before me, the undersigned Notary Public, _James A. Bevan_, proved to me to be the person whose name is subscribed to the above instrument, who acknowledged to me that (s)he executed the instrument freely and voluntarily and for the purposes stated therein on behalf of Rhodes Homes.

**BARBARA A. TAYLOR**
Notary Public State of Nevada
No. 02-77843-1
My appt. exp. July 1, 2006

_Barbara A. Taylor_
Notary Public in and for Clark County, Nevada

STATE OF NEVADA        )
                               ) SS.

COUNTY OF CLARK     )

      On this _18th_ day of _August_, 2003, personally appeared before me, the undersigned Notary Public, _James A. Bevan_, proved to me to be the person whose name is subscribed to the above instrument, who acknowledged to me that (s)he executed the instrument freely and voluntarily and for the purposes stated therein on behalf of James A. Bevan.

**BARBARA A. TAYLOR**
Notary Public State of Nevada
No. 02-77843-1
My appt. exp. July 1, 2006

_Barbara A. Taylor_
Notary Public in and for Clark County, Nevada

Tolling Agreement-2.wpd            **Page 8 of 8**

**AMENDMENT TO**
**GENERAL PARTNERSHIP AGREEMENT**
**OF RHODES RANCH GENERAL PARTNERSHIP**


This Amendment to General Partnership Agreement of Rhodes Ranch General Partnership ("Amendment") is made and entered into this _14th_ day of March, 2003, by and between Sagebrush Enterprises, Inc. and Rhodes Ranch, LLC.


WHEREAS, on March 13, 2003, Sagebrush Enterprises, Inc. as the General Partner and Rhodes Ranch, LLC as the Limited Partner executed those certain Agreements of Dissolution of Rhodes Ranch Limited Partnership, Southwestern Opportunities Limited Partnership and Durango/Springs Properties Limited Partnership, thereby assuming their proportionate interests in Rhodes Ranch General Partnership; and


WHEREAS, Sagebrush Enterprises, Inc., as the General Partner, and Rhodes Ranch, LLC, as the Limited Partner, desire to acknowledge the appointment and designation of Sagebrush Enterprises, Inc. as the Managing General Partner of Rhodes Ranch General Partnership,


NOW THEREFORE, Sagebrush Enterprises, Inc. and Rhodes Ranch, LLC , for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agree as follows:


1.     **Acknowledgement of Interests.** In accordance with the Agreements of Dissolution of Rhodes Ranch Limited Partnership, Southwestern Opportunities Limited Partnership and Durango/Springs Properties Limited Partnership, Sagebrush Enterprises, Inc. and Rhodes Ranch, LLC hereby assume the proportionate shares in Rhodes Ranch General Partnership as held by each under the partnership agreements of Rhodes Ranch Limited Partnership, Southwestern Opportunities Limited Partnership and Durango/Springs Properties Limited Partnership as the time of dissolution of each entity therein.


2.     **Designation of General Partner.** Sagebrush Enterprises, Inc. and Rhodes Ranch, LLC hereby appoint and designate Sagebrush Enterprises, Inc. as the Managing General Partner of Rhodes Ranch General Partnership. Sagebrush Enterprises, Inc. hereby accepts such appointment and designation of Managing General Partner of Rhodes Ranch General Partnership.

3.    **Survival.**  All other terms and conditions of the General Partnership Agreement of Rhodes Ranch General Partnership not inconsistent with the terms stated herein, shall survive and remain in full force and effect.

IN WITNESS WHEREOF,  the undersigned partners have executed this agreement on the date first written above.

SAGEBRUSH ENTERPRISES, INC.,                    RHODES RANCH, LLC,
a Nevada corporation,                                        a Nevada limited liability company,
                                                                    by and through its Manager,
                                                                    Sagebrush Enterprises, Inc.

By: Ronald E. Gillette, President                        By: Ronald E. Gillette, President

# EXHIBIT "A"
## RHODES RANCH GENERAL PARTNERSHIP
## PARTNERSHIP INTEREST

SAGEBRUSH ENTERPRISES, INC., Managing General Partner
Partnership Interest                                       94.363%


RHODES RANCH, LLC, General Partner
Partnership Interest                                        5.637%

**AMENDED AND RESTATED**
**GENERAL PARTNERSHIP AGREEMENT**
**OF**
**RHODES RANCH GENERAL PARTNERSHIP**
**a Nevada general partnership**

This **AMENDED AND RESTATED GENERAL PARTNERSHIP AGREEMENT** (the "Agreement") of Rhodes Ranch General Partnership (the "Partnership") is made and entered into this 16th day of November, 2005, by and between Rhodes Ranch, LLC and The Rhodes Companies, LLC (the "Partners"), all of Clark County, Nevada and reflects the admission of The Rhodes Companies, LLC as managing Partner of the Partnership and the withdrawal of Sagebrush Enterprises, Inc. as the managing Partner of the Partnership.

## 1. FORMATION OF PARTNERSHIP

**1.01    Formation.** The Partnership was formed as a Nevada general partnership pursuant to the Nevada Uniform Partnership Act, Nevada Revised Statutes, Chapter 87 (the "Act"), pursuant to that certain General Partners Agreement, dated as of January 1, 1998 (the "Original Agreement"), as amended by that certain Amendment to General Partnership Agreement, dated as of March 14, 2003 (the "Amendment"), as amended, restated, amended and restated, supplemented or otherwise modified from time to time. The rights and duties of the Partners shall be as provided in that act except as modified by this Agreement. This Agreement amends and restates the Original Agreement, as amended, amended and restated, supplemented or otherwise modified from time to time, and is intended to govern the affairs of the Partnership and the conduct of its business.

**1.02    Name.** The business of the Partnership shall be conducted under the name "Rhodes Ranch General Partnership" or such other name as the Partners shall hereafter designate by majority vote.

**1.03    Principal Place of Business.** The principal place of business of the Partnership shall be at 4730 S. Fort Apache Road, Suite 300, Las Vegas, Nevada 89147 with such other places of business as may be agreed upon by the Partners from time to time.

## 2. BUSINESS OF THE PARTNERSHIP

The business of the Partnership shall be real estate sales and development and to do any and all other acts or things that the Partners may determine to be necessary, appropriate, proper, advisable, incidental to or convenient for the accomplishment of the purpose of the Partnership.

## 3. TERM

The term of the Partnership began on January 1, 1998 and shall continue until dissolved by an act or event specified in this Agreement or by law as one effecting dissolution.

### 4. CAPITAL AND CONTRIBUTIONS

**4.01    Initial Capital.** The initial contributions of Rhodes Ranch Limited Partnership, Southwestern Opportunities Limited Partnership and Durango/Spring Properties Limited Partnership, the original partners of the Partnership were made in cash or the assumption of liabilities, in accordance with the Original Agreement as reflected on Schedule A. Pursuant to the Amendment, Sagebrush Enterprises, Inc. and Rhodes Ranch, LLC assumed their proportionate shares in the Partnership as set forth in Section 7 herein. The Rhodes Companies, LLC hereby assumes the proportionate shares in the Partnership previously held by Sagebrush Enterprises, Inc.

**4.02    Additional Capital.** Future contributions to capital, made by the Partners in accordance with their Partnership percentages, shall be made upon determination by a vote of Partners having at least two-thirds (2/3) of the aggregate Partnership percentages, and shall be reflected on Schedule A when made.

**4.03    Interest on Capital Contributions.** No Partner shall be paid interest on any capital contribution.

### 5. DISTRIBUTIONS

Partnership cash accounts (the "cash accounts") shall be set up on the Partnership's books for each Partner. No Partner shall receive a salary for his services to the Partnership. Each Partner's cash account shall be credited with his proportionate share (in accordance with his Partnership percentages) of all cash revenues of the Partnership from operations during any period, and shall be charged with his proportionate share of (1) all principal and interest payments on any indebtedness of the Partnership, and (2) all cash expenses incurred incident to the operation of the Partnership's business. Each Partner may make withdrawals from his cash account from time to time, to the extent permitted by the Partnership.

### 6. ALLOCATION OF PROFITS AND LOSSES FOR TAX PURPOSES

All taxable income and tax losses of the Partnership as determined for federal income tax purposes shall be allocated among the Partners in proportion to their respective Partnership percentages.

### 7. PARTNERSHIP PERCENTAGES

The Partnership percentages of each Partner shall be as follows:

| Name | Partnership Percentages |
|---|---|
| The Rhodes Companies, LLC (previously held by Sagebrush Enterprises, Inc.) | 94.363% |
| Rhodes Ranch, LLC | 5.637% |

## 8. MANAGEMENT

It is understood that each of the Partners is involved in its own business, and that no Partner is expected to curtail its activities spent in pursuing its business. Each Partner shall devote only as much time as is necessary to perform the business of the Partnership.

The Partners, by majority vote, may appoint any single Partner as a managing Partner, or any number of Partners as a management committee, to supervise the day to day business of the Partnership. A managing Partner or management committee shall serve in that capacity until they resign or are replaced by the Partnership. The managing Partner or management committee may act on behalf of the Partnership for all purposes except for those actions requiring a two-thirds (2/3) vote as set forth below. The Partners hereby confirm the appointment of The Rhodes Companies, LLC as the managing Partner.

In the event, at any time, a managing Partner or management committee is not supervising the day to day business of the Partnership, in matters relating to the management of the Partnership's business, a decision of the Partners owning a majority of the Partnership percentages shall be binding upon the Partnership, except where a higher majority is otherwise required by this Agreement. The following specific actions may not be taken without the consent of Partners having at least two-thirds (2/3) of the aggregate Partnership percentages:

(1)    Except with respect to agreements and instruments in the usual and ordinary course of business of the Partnership, execute any agreement or instrument in writing to bind the Partnership or contract any debt on account of the Partnership.

(2)    Pledge any property of the Partnership for the purpose of securing a loan.

(3)    Lend any money of the Partnership.

(4)    Assign any part of its interest in the Partnership or enter into an agreement in violation of Section 87.210 of the Act.

(5)    Sell any capital assets of the Partnership.

## 9. BANKING AND BOOKS OF ACCOUNT

**9.01    Books and Records.** All funds of the Partnership shall be deposited in its name in such accounts as shall be designated by the Partners. All withdrawals from these accounts shall be made by checks signed by at least two (2) Partners who have signature authority on the Partnership accounts. Complete records and books of account shall be kept in which shall be entered fully and accurately all transactions and other matters about the Partnership's business as are usually entered into records and books of account maintained by persons engaged in businesses of a like character, including a capital account for each Partner. The books shall be kept on a cash basis. The books and records shall at all times be maintained at the principal place of business of the Partnership and each Partner shall at all times have access thereto.

**9.02    Fiscal Year.** The fiscal year of the Partnership shall end on December 31 of each year.

**9.03    Capital Accounts.**  Each Partner's capital account shall be initially equal to the cash it contributes and its share of liabilities which it has assumed, and during the term of the Partnership shall be:

    (a)   Increased by:

        (1)   the amount of taxable income allocated to the Partner,

        (2)   the Partner's proportionate share of liabilities he has assumed, and

        (3)   the amount of any additional cash contributed by the Partner or paid to his cash account, and shall be

    (b)   Decreased by:

        (1)   the amount of tax losses allocated to the Partner, and

        (2)   the amount of cash distributed to the Partner, whether from his cash account or otherwise.

## 10.  NEGLIGENCE AND INDEMNIFICATION

Except to the extent that the Partnership is insured against liability, a Partner guilty of negligence or wrongdoing shall reimburse the Partnership for damages sustained by it as a result of negligence or wrongdoing.  The Partnership shall indemnify and hold harmless all Partners from and against any loss, expense, damage, or injury suffered or sustained by it by reason of any act, omissions, or alleged acts or omissions arising out of its activities on behalf of the Partnership or in furtherance of the interest of the Partnership, including, but not limited to, any judgment, award, settlement, reasonable attorneys' fees, and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding, or claim, if the acts, omissions, or alleged acts or omissions upon which the actual or threatened action, proceeding, or claims are based, or for a purpose reasonably believed to be in the best interests of the Partnership, and were not performed or admitted fraudulently or in bad faith or as a result of negligence by the Partner.  Any of this indemnification shall be first from the assets of the Partnership and then from all Partners and borne among them in accordance with their Partnership percentages.

## 11.  DISSOLUTION

The withdrawal, bankruptcy, expulsion, or death of any Partner (except where only one Partner remains) shall not require a winding up of the Partnership (unless the remaining Partners vote to dissolve) and shall have no effect upon the continuance of the Partnership's business.  A Partner or its estate shall have no rights in or against the Partnership or the remaining Partners except for those payments as may be due under the provisions of this Agreement.  In addition to those circumstances requiring dissolution pursuant to Section 87.310 of the Act, the Partnership may be dissolved at any time by vote of Partners having at least two-thirds (2/3) of the Partnership percentages, in which event the Partners shall proceed with reasonable promptness to

liquidate the business and assets of the Partnership. Upon dissolution and winding up, the assets of the Partnership shall be used and distributed in the following order:

       (1)     To creditors in the order of priority provided by law except liabilities to the Partners in their capacity as Partners.

       (2)     To the Partners for loans, if any, made by them to the Partnership and to the Partners for any expenses of the Partnership paid by them, to the extent they are entitled to reimbursement.

       (3)     To the Partners in proportion to their respective capital accounts (which accounts have been determined after allocation of all taxable income and tax losses incident to the dissolution) until they have received an amount equal to their capital accounts immediately prior to the distribution.

       (4)     To the Partners in accordance with their Partnership percentages.

## 12.  MISCELLANEOUS

**12.01  Additional Partners.**  Additional Partners shall be admitted by the vote of Partners having not less than two-thirds (2/3) of the Partnership percentages. Each additional Partner, before being admitted as a Partner, shall first agree in writing to be bound by the terms of this Agreement.

**12.02  Assignment.**  No Partner shall have the right to assign his Partnership interest to another person to become a Partner in his place without first obtaining the approval of the other Partners as set forth in Section 13.01 above. Any Partner may at any time assign his right to receive his distribution of profits to another person or entity.

**12.03  Bankruptcy Defined.**  For purposes of this agreement, the "bankruptcy" of a Partner shall be deemed to have occurred immediately upon the happening of any of the following:  (1) the filing of an application by a Partner for, or a consent to, the appointment of a trustee of the Partner's assets, (2) the filing by a Partner of a voluntary petition in bankruptcy or the filing of a pleading in any court of record admitting in writing the Partner's inability to pay the Partner's debts as they become due, (3) the making by a Partner of a general assignment for the benefit of creditors, (4) the filing by a Partner of an answer admitting the material allegation of or consenting to, or defaulting in answering a bankruptcy petition filed against the Partner in any bankruptcy proceeding, or (5) the entry of an order, judgment, or decree by any court of competent jurisdiction adjudicating a Partner as bankrupt, or appointing a trustee of the Partner's assets, and that order, judgment, or decree continuing unstayed and in effect for the period of thirty (30) days.

**12.04  Amendment.**  This Agreement may be amended at any time and from time to time by a vote of Partners having at least two-thirds (2/3) of the aggregate Partnership percentages.

**12.05   Entire Agreement.**  This Agreement constitutes the entire agreement among the parties.  It supersedes any prior agreement or understanding among them, and it may not be modified or amended in any manner other than as set forth herein.

**12.06   Governing Law.**  This Agreement and the rights of the parties hereunder shall be governed by and interpreted in accordance with the laws of Nevada.

**12.07   Effect.**  Except as otherwise specifically provided herein, this Agreement shall be binding upon and inure to the benefit of the Partners and their respective legal representatives, heirs, administrators, executors, successors, and assigns.

**12.08   Pronouns and Number.**  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in either the masculine, feminine or neuter shall include the masculine, feminine, or neuter.

**12.09   Captions.**  Captions and section headings contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, or extend the scope or intent of this agreement or any provision hereof.

**12.10   Partial Enforceability.**  If any provision of this Agreement or the application of any provision to any person or circumstance shall be held invalid, the remainder of this Agreement, or the application of that provision to persons or circumstances other than those to which it is held invalid, shall not be affected thereby.

**12.11   Enforcement Costs.**  If any Partner brings an action against another Partner or the Partnership, or if the Partnership brings an action against any Partner, which relates to this Agreement, the prevailing party shall be entitled to all costs of pursuing or defending this action, including court costs and reasonable attorneys' fees.

**12.12   Counterparts.**  This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

**12.13   Ratification.**  The Partners hereby confirm that all activities and transactions of the Partnership and the actions taken by the prior partners and managing partners of the Partnership to date are deemed to have been taken in the best interests of the Partnership and the same are hereby ratified, affirmed and approved as if such activities and transactions were approved and ratified in the first instance.

*[Signature Page Follows]*

**IN WITNESS WHEREOF**, the undersigned Partners have executed this agreement on the date written above.

THE RHODES COMPANIES, LLC

By: SAGEBRUSH ENTERPRISES, INC.,
    its sole member

By _____

Name: Paul D. Huygens
Title: Chief Financial Officer and Treasurer

RHODES RANCH, LLC

By: SAGEBRUSH ENTERPRISES, INC.,
    its manager

By _____

Name: Paul D. Huygens
Title: Chief Financial Officer and Treasurer

*[Signature Page to Partnership Agreement of Rhodes Ranch General Partnership]*

# RHODES RANCH GENERAL PARTNERSHIP

## SCHEDULE A

## CAPITAL CONTRIBUTIONS OF ORIGINAL PARTNERS

| Partner | Cash Contributed or Liabilities Assumed | Partnership Percentages |
|---|---|---|
| RHODES RANCH LIMITED PARTNERSHIP | See attached Schedule A-1 | 55% |
| SOUTHWESTERN OPPORTUNITIES LIMITED PARTNERSHIP | See attached Schedule A-1 | 22½% |
| DURANGO/SPRINGS PROPERTIES LIMITED PARTNERSHIP | See attached Schedule A-1 | 22½% |

LA_10906486_6.DOC