# **EXHIBIT B**

# **(Claim No. 71)**

1  PHILIP S. GERSON, ESQ.
   Nevada Bar No.: 5964
2  OLSON, CANNON,
   GORMLEY & DESRUISSEAUX
3  9950 West Cheyenne Avenue
   Las Vegas, Nevada 89129
4  Phone: (702) 384-4012
   Fax: (702) 383-0701
5  Email: banknv@rocgd.com
   Counsel for Clark County

6

7                    UNITED STATES BANKRUPTCY COURT

8                          DISTRICT OF NEVADA

9

10 In Re:                              )   CASE NO.: BK-S-09-14814-LBR
                                       )   (Jointly Administered)
11 THE RHODES COMPANIES, LLC aka       )   Chapter 11
   "Rhodes Homes, et. al.".            )
12                                     )
                    Debtor(s).         )
13                                     )
                                       )
   _____

14

15       NOTICE OF SECOND AMENDED PROOF OF CLAIM NO. 71-1

16        Creditor CLARK COUNTY in the above-entitled proceeding, hereby revises and amends

17 its Proof of Claim against Debtor RHODES RANCH GENERAL PARTNERSHIP, designated as

18 Claim No. 71-1, filed on September 25, 2009 in the amount of $7,793,663.56 in the above-

19 entitled jointly administrated case and previously Amended from said filed amount to the

20 corrected amount of $3,495,179.16 on November 6, 2009 hereby further corrects and amends its

21 Proof of Claim No. 71-1 to the corrected amount of $389,455.31.

22        DATED this 11th day of February, 2010.

23                                      Respectfully Submitted By:

24

25                                      PHILIP S. GERSON, ESQ.
                                        Nevada Bar No. 5964
26                                      OLSON, CANNON,
                                        GORMLEY & DESRUISSEAUX
27                                      9950 W. Cheyenne
                                        Las Vegas, Nevada 89129
28                                      Email: banknv@rocgd.com
                                        Attorneys for CLARK COUNTY

1  PHILIP S. GERSON, ESQ.
   Nevada Bar No.: 5964
2  OLSON, CANNON,
   GORMLEY & DESRUISSEAUX
3  9950 West Cheyenne Avenue
   Las Vegas, Nevada 89129
4  Phone: (702) 384-4012
   Fax: (702) 383-0701
5  Email: banknv@rocgd.com
   Counsel for Clark County
6

7                  UNITED STATES BANKRUPTCY COURT

8                         DISTRICT OF NEVADA

9
   In Re:                        )  CASE NO.: BK-S-09-14814-LBR
10                                )  (Jointly Administered)
   THE RHODES COMPANIES, LLC aka )  Chapter 11
11 "Rhodes Homes, et. al.".       )
                                  )
12            Debtor(s).          )
                                  )
13 _____   )

14          **NOTICE OF AMENDED PROOF OF CLAIM NO. 71-1**

15         Creditor CLARK COUNTY in the above-entitled proceeding, hereby revises and amends

16 its Proof of Claim against Debtor RHODES RANCH GENERAL PARTNERSHIP, designated as

17 Claim No. 71-1, filed on September 25, 2009 in the amount of $7,793,663.56 in the above-

18 entitled jointly administrated case from said filed amount to the corrected amount of

19 $3,495,179.16.

20         DATED this 6th day of November, 2009.

21                                    Respectfully Submitted By:

22

23

24                                    PHILIP S. GERSON, ESQ.
                                      Nevada Bar No. 5964
25                                    OLSON, CANNON,
                                      GORMLEY & DESRUISSEAUX
26                                    9950 W. Cheyenne
                                      Las Vegas, Nevada 89129
27                                    Email: banknv@rocgd.com
                                      Attorneys for CLARK COUNTY
28

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT | District of Nevada | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor:**
Rhodes Ranch General Partnership

**Case Number:**
09-14814

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Clark County

**Name and address where notices should be sent:**

Philip S. Gerson, Esq.
9550 West Cheyenne Avenue
Las Vegas, NV 89129

**Telephone number:**
(702) 384-4012

□ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**_____
*(If known)*

**Filed on:**_____

**Name and address where payment should be sent** (if different from above):

500 S. Grand Central Pky
PO Box 552215
Las Vegas, NV 89155-2215

**Telephone number:**
(702) 455-4761

□ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

□ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 7,793,663.56

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

□ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Contract
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** □ Real Estate  □ Motor Vehicle  ☑ Other
**Describe:**

**Value of Property:** $ 793,663.56  **Annual Interest Rate**___%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**If any:** $_____  **Basis for perfection:** Record Bond

**Amount of Secured Claim:** $ 7,793,663.56  **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

□ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

□ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

□ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

□ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

□ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

□ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**FOR COURT USE ONLY**

**Date:**
09/25/2009

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

20090209-0003558

APN: 176 - 17 - 201 - 001

HTE #: 08 - 32370 CL

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division

Fee: $0.00
N/C Fee: $0.00

02/09/2009                16:09:15
T20090044756
Requestor:
DEVELOPMENT SERVICES CLARK COUNTY
Debbie Conway                ANI
Clark County Recorder  Pgs: 14

## CLARK COUNTY DEVELOPMENT SERVICES

## CASH IN LIEU OF BOND AGREEMENT

**THIS AGREEMENT**, made and entered into this __5TH__ day of __February__, 20 __09__, by and between:

Rhodes Ranch General Partnership

whose mailing address is:
4730 S. Fort Apache Road
Las Vegas, NV   89147    702 - 873 - 5338

hereinafter referred to as DEVELOPER, and the COUNTY OF CLARK, a political subdivision of the State of Nevada, hereinafter referred to as the COUNTY, and

Mutual of Omaha Bank

hereinafter referred to as FINANCIAL INSTITUTION; whose mailing address is:

8337 W. Sunset Rd, Suite 300, Las Vegas, NV 89113

**WITNESSETH:**

**WHEREAS**, DEVELOPER has agreed to do and perform certain work, consisting of the construction of off-site improvements for:

Residential Subdivision
(type of development)

Fort Apache / Wigwam
(generally located)

1

Printed by dkazio at 4/21/2009 11:46:55 AM

_____

(name of project)

in accordance with that certain Off-Site Improvements Agreement between the DEVELOPER and the COUNTY dated the _____ day of_____, 20___, a copy of which is attached hereto, marked Exhibit "A" and by reference made a part hereof; and,

      **WHEREAS**, in said Off-Site Improvements Agreement, the DEVELOPER agreed to execute a surety and performance bond in favor of the COUNTY, securing to the COUNTY the faithful performance of all of the terms and conditions thereof on the DEVELOPER'S part to be performed; and,

      **WHEREAS**, The DEVELOPER may make a cash deposit, equal in amount to the surety and performance bond which would otherwise be required, in a local financial institution, provided that a proper agreement is entered into by and between the DEVELOPER, the COUNTY, and the FINANCIAL INSTITUTION; and,

      **WHEREAS**, the DEVELOPER desires to make such cash deposit in lieu of the aforesaid surety and performance bond, and the COUNTY desires to accept such cash deposit in satisfaction of the DEVELOPER's obligation to provide such bond;

      **NOW, THEREFORE**, for and in consideration of the premises and of the mutual covenants and agreements hereinafter contained, the parties do hereby agree as follows:

1.     The DEVELOPER hereby represents that it has heretofore established with the FINANCIAL INSTITUTION a separate account, designated Account #   32501397     and has deposited therein the sum of Thirty-nine thousand nine hundred eighty-two and 25/100 Dollars ($ 39,982.25 ) as surety for the faithful performance of all of the terms and conditions of the aforesaid Off-Site Improvements Agreement on the DEVELOPER's part to be performed, said sum to be received, held, and disbursed by the FINANCIAL INSTITUTION in accordance with the terms of the Agreement. By its execution hereof, the FINANCIAL INSTITUTION hereby verifies that said account has been established and that the aforesaid sum has been deposited therein and agrees that said sum will be held and disbursed by it in accordance with the terms hereof and for no other purpose than herein stated.

2.     Funds deposited in said account may be withdrawn only upon approval for release by the Director of Development Services or his designated deputy.

3.     It is contemplated that monthly payments may be made to the DEVELOPER from time to time out of said account as the work on said improvements

2

progresses according to the percentage of the work completed and the amount to be paid as solely determined by the COUNTY; provided, however, that there shall at all times be a ten percent (10%) retention of the funds in said account, until all of the off-site improvements called for in said Off-Site Improvements Agreement have been completed and accepted by the COUNTY.

4.   In the event said off-site improvements are not completed to the satisfaction of the COUNTY within the time prescribed in said Off-Site Improvements Agreement and the COUNTY desires to exercise its option to complete said improvements, the COUNTY shall serve upon the DEVELOPER and upon the FINANCIAL INSTITUTION written notice of such default to their respective mailing address as hereinabove set forth and exercise of such option, and thereafter drafts on said account or requests for the withdrawal of funds therefrom shall be valid and binding and shall be honored by the FINANCIAL INSTITUTION upon the sole signature of the Director of Development Services of COUNTY or his designated deputy.

5.   It is acknowledged by the DEVELOPER that the sum provided for in paragraph 1 above is based upon the estimated cost of the improvements called for in the Off-Site Improvements Agreement. It is understood and agreed that, in the event the actual cost of said improvements shall exceed such sum, the DEVELOPER is in no way relieved by the Agreement from the obligation of paying the amount of such excess.

6.   It is understood and agreed that neither FINANCIAL INSTITUTION by executing this Agreement nor any of its affiliates, make any representation or commitment whatsoever to be guarantor, surety, principal or to be otherwise directly or indirectly responsible for the construction or the financing of the construction of the above described off-site improvements except as expressly provided by this Agreement.

7.   It is understood and agreed that the money deposited, as herein provided, is a security interest and that the COUNTY's claim to said funds shall be prior to that of any creditor, referee, receiver or trustee in the event of insolvency of bankruptcy; and that in such event, said funds shall not be administered by any receiver, referee or trustee, but shall be paid and distributed according to the terms of this Agreement. This Agreement with attachment shall be placed on public record to perfect said security interest.

8.   Upon final acceptance by the Director of Development Services of all of the off-site improvements called for in said Off-Site Improvements Agreement, this Agreement shall become null and void and of no further force or effect, and all funds remaining in said account shall belong to the DEVELOPER.

3

9.  This Agreement and all of the provisions hereof shall be binding upon and shall inure to the benefit of the parties hereto, their respective heirs, legal representatives, successors, and assigns.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and official seals.

STATE OF NEVADA ) 
                 ) SS
COUNTY OF CLARK )

This instrument was acknowledged before me this
28th day of _January_, 2009 by
_Rhodes Ranch General Partnership_
(developer name)

_Lucienne Ransom_
**NOTARY PUBLIC** in and for said County and State.

STATE OF NEVADA ) 
                 ) SS
COUNTY OF CLARK )

Signed or attested before me on this 2nd day
of _February_, 20 09 by
_William R. Oakley_
(president's name)

_Karen M. Loeffler-Severin_
**NOTARY PUBLIC** in and for said County and State.

DEVELOPER:

_Rhodes Ranch General Partnership_

_By Rhodes Companies, LLC_

_By J Rho it's Pres._

_JOHN RHODES_

Notary Stamp:

> LUCIENNE RANSOM
> Notary Public State of Nevada
> No. 08-6692-1
> My appt. exp. Apr. 4, 2012

FINANCIAL INSTITUTION

BY _R. Cahl_
PRESIDENT

Notary Stamp:

> KAREN M. LOEFFLER
> Notary Public, State of Nevada
> Appointment No. 08-6554-1
> My Appt. Expires Nov. 7, 2012

-- FOR COUNTY USE ONLY --

STATE OF NEVADA ) 
                 ) SS
COUNTY OF CLARK )

Signed or attested before me on this 5th day
of _February_, 20 09 by
ROBERT B. THOMPSON.

_Dolores E. Valenzuela_
**NOTARY PUBLIC** in and for said County and State

> DOLORES E. VALENZUELA
> NOTARY PUBLIC - STATE OF NEVADA
> COUNTY OF CLARK
> APPT. No. 08-8158-1
> MY APPT. EXPIRES OCTOBER 01, 2012

**COUNTY OF CLARK**, a political subdivision of the State of Nevada

BY _Robert Thompson_
**ROBERT B. THOMPSON, DEPARTMENT OF DEVELOPMENT SERVICES**

BCC standard form approved 7/16/02

4

APN: 176-17-201-001

HTE #: 08-32370

NFM # or MSM # (if applicable) N/A  NFM
07-500309

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division



# CLARK COUNTY
# DEPARTMENT OF DEVELOPMENT SERVICES

## OFF-SITE IMPROVEMENTS AGREEMENT

**THIS AGREEMENT,** made and entered into this 5th day of February
_____, 20 09 , by and between:

RHODES RANCH GENERAL PARTNERSHIP

whose mailing address is:
4730 S. FORT APACHE ROAD
SUITE 300
LAS VEGAS, NEVADA
89147          702-873-5338

hereinafter referred to as DEVELOPER and CLARK COUNTY, NEVADA, hereinafter
referred to as COUNTY, for construction of off-site improvements at the following location:

Cross Streets:    Fort Apache / Wigwam

Assessor's Parcel Number:    176-17-201-001

**WHEREAS,** DEVELOPER has submitted a plan to the COUNTY for a

Residential Subdivision
(type of development); and

**WHEREAS,** the COUNTY requires construction of certain off-site
improvements as part of said development.

**NOW, THEREFORE,** the parties to this agreement for and in consideration of

1 of 8

the mutual promises herein contained and for other good and valuable considerations, do hereby agree as follows:

1.   OFF-SITE IMPROVEMENTS

The DEVELOPER, at his own cost, shall perform and complete all off-site work and improvements which may consist of, but not limited to, streets, street name signs, traffic signs, sewers, water systems, fire hydrants, curbs, gutters, sidewalks, street lighting, driveways, drainage facilities, accesses, survey monuments,
__Per HTE # 08-32370__
etc., hereinafter referred to as off-site improvements, said off-site improvements shall be constructed in accordance with applicable ordinances, regulations, standards and specifications, and other requirements of CLARK COUNTY, NEVADA.

2.   PLANS APPROVED BY THE DIRECTOR OF DEVELOPMENT SERVICES

No off-site improvements shall commence until:

(a)   off-site improvement plans have been approved by the Director of DEVELOPMENT SERVICES or his authorized representative;

(b)   one-hundred percent (100%) of the plan-check and inspection fees have been paid;

(c)   performance security executed as required by CLARK COUNTY ordinances; and

(d)   an off-site permit has been issued by the Director of DEVELOPMENT SERVICES, or his authorized representative.

3.   NOTICE OF COMMENCEMENT OF CERTAIN WORK

The DEVELOPER shall notify the Director of Development Services no less than 24 hours in advance of the date and hour work on any of the following items is expected to begin, and thereafter if conditions develop to delay the start of work, the DEVELOPER agrees to notify the Director of Development Services of the delay not less than two hours before work is scheduled to begin:

--   Placing sewer, water, gas, power, telephone lines and fire hydrants.

--   Back-filling of sewer, water, gas, power and telephone lines.

--   Placing concrete for curb, gutter, sidewalk, valley gutters, storm drain structures, manholes, street lighting foundations and alley gutters.

2 of 8

— Placing Type I and Type II gravel base course.

— Priming base course.

— Placing street lighting and burn testing.

— Placing street name signs and traffic control signs.

4. **APPROVAL OF WORK AFTER INSPECTION**

(a) Whenever the Director of Development Services or his duly authorized representative inspects portion of work as mentioned hereinbefore, and finds the work performed to be in a satisfactory condition for inclusion in the completed project, the Director of Development Services or his duly authorized representative shall issue a statement of inspection which shall permit the DEVELOPER to perform the next phase of the construction. Ordinarily, not less than one continuous block of any one of the items of work mentioned will be approved.

(b) Inspection and approval of any item of work shall not forfeit the right of the COUNTY to require the corrections of quality, workmanship or materials at any time prior to the final acceptance of the project by the Director of Development Services, although previously approved by an oversight.

(c) Nothing herein shall relieve the DEVELOPER of the responsibility for proper construction of the off-site improvements and DEVELOPER shall maintain said improvements until the work has been accepted by the Director of Development Services.

5. **ADJUSTMENT TO EXISTING UTILITIES AND COST THEREOF**

The DEVELOPER shall, at its sole expense, provide for adjustments necessary to all existing utilities because of the work required by this agreement.

6. **FULL COMPLIANCE WITH COUNTY REQUIREMENTS**

The DEVELOPER shall perform and complete all off-site improvements in accordance with the regulations, specifications, and ordinances of the said County of Clark, and the construction plans approved by Clark County Development Services Department.

The DEVELOPER shall obtain all required permits from other County, State, and Federal agencies, including but not limited to Clark County Health District, Nevada Department of Environmental Protection, and United States Army Corps of Engineers.

3 of 8

The COUNTY shall have the right to require corrections to the construction plans by the DEVELOPER at any time before release of the bond (performance bond, cash deposit, or agreement in lieu of bond) required herein, of any item or items contained in this agreement which do not conform to COUNTY standard specifications, laws, regulations or ordinances, even though the plans for the item in question may have been approved by the Director of Development Services.

The DEVELOPER shall start said off-site improvements upon receipt of a COUNTY-approved off-site permit and said off-site improvements shall be completed prior to expiration of said permit in accordance with the required ordinances.

In the event the DEVELOPER fails to complete said improvements within said period or in the event the DEVELOPER in the COUNTY's opinion has created a safety hazard, the COUNTY, at its option, may proceed to complete said improvements at the expense of the DEVELOPER. The COUNTY may use the required performance bond as provided for hereinafter.

7.    OTHER CONDITIONS AND REQUIREMENTS

The DEVELOPER further agrees that, in addition to the above requirements, any and/or all such conditions, stipulations and agreements made by the DEVELOPER and the Board of County Commissioners and/or County Planning Commission of Clark County shall be fully performed.

The DEVELOPER further agrees that all work is to be performed by a qualified contractor licensed to do business in the State of Nevada and the County of Clark.

The DEVELOPER shall maintain, protect and take care of all work areas for the project, including any adjacent existing improvements, until its completion and acceptance by Clark County. Maintenance of any inhabited area of the development, and the adjacent streets and/or neighborhoods, shall include, but not be limited to, sweeping of the streets and keeping the gutters free of dirt and debris.

During move-in, construction and move-off, the DEVELOPER shall keep the site free and clear from dangerous accumulation of rubbish and debris and shall maintain sufficient and proper barricades, lights, etc., in accordance with the latest manual on the placement of traffic control devices accepted by the Department of Development Services for the protection of the public. Also, after excavation or placement of gravel, if the sub-grade and/or gravel base material is left exposed and in the opinion of the Director of Development Services is not properly maintained, thus causing either a rough riding surface or a dust problem, the Director of Development Services may require the DEVELOPER to do whatever is necessary to provide an adequate travel-way. If a detour is needed, the Director of Development Services shall determine to what extent it shall be maintained, which

Printed by dkazio at 4/21/2009 11:46:55 AM

shall include the placing of temporary paving, if it is to be used for an extended period of time.

Final acceptance of the work will not be made by the COUNTY until the area (falling under this agreement) and adjacent property has been cleared of all rubbish, surplus materials and equipment resulting from the contractor's operations, to the satisfaction of the Director of Development Services.

8.   **LIABILITY**

The DEVELOPER shall indemnify, defend, and hold harmless the COUNTY, its officers, agents, volunteers, and employees, against and from any and all liability, loss, damage, claims, fines, demands, causes of action, costs, expenses, and judgments of whatsoever nature, including but not limited to reasonable costs of investigation, reasonable attorney's fees and expenses, all reasonable expert witness fees and expenses, and all court or arbitration or other alternative dispute resolution costs which result from injury to or death of any persons whomsoever, and/or against and from damage to or loss or destruction of property whatsoever when such injury death, loss, destruction or damage is due to or arises in connection with or as a result of any work done by the DEVELOPER in connection with the construction of the off-site improvements and/or arises of or in connection with DEVELOPER's performance or failure to perform the terms and conditions of this agreement.   This Section 8 survives termination or completion of this agreement.

9.   **PLAN REQUIREMENTS ON COMPLETION OF IMPROVEMENTS**

Upon completion of all the off-site improvements within the COUNTY right-of-way required hereby and prior to release of any performance security, the DEVELOPER shall furnish the Director of Development Services with an as-built plan which shall accurately indicate, by lettered dimensions, the location of all manholes, the location size and depth of all sewer mains, underground water, power, gas, and other lines, with street plans and profiles for the same, including laterals and "Y's" for connection of house service lines.

10.   **WARRANTY**

The DEVELOPER is responsible should any original or developed defects or failures appear within a period of one year from the date of acceptance of the work by the COUNTY. The DEVELOPER shall, at his own expense, make good such defects and failures and make all replacements and adjustments required, within thirty (30) days after being notified by the COUNTY to do so. All repairs shall be subject to the approval of the Director of Development Services and/or the Director of Public Works.

This agreement does not limit or relieve DEVELOPER from any other obligation or responsibility which the DEVELOPER may otherwise have as a result of the street improvements, including any damages or latent defects which may occur beyond the warranty period specified above. Furthermore, DEVELOPER, at all times, is not relieved of any obligation or responsibility it may have by law including but not limited to damages for latent deficiencies, injury to real or personal property or injury to or wrongful death of a person, (N.R.S. 11.204).

11.    REQUIREMENTS OF PERFORMANCE BOND OR OTHER SECURITY

DEVELOPER shall furnish without cost to the COUNTY a surety and performance bond, cash deposit or agreement in lieu of bond for the full cost of said off-site improvements in favor of the COUNTY conditioned upon the DEVELOPER completing said off-site improvements within the time period prescribed by this agreement. Also, in the event the COUNTY exercises its option to complete said off-site improvements, that said bond, cash deposit or agreement in lieu of bond shall be used for the payment of the costs of completion of said off site improvements by the COUNTY in case the DEVELOPER fails to do so within said time period.

If the construction or installation of any off-site improvements or facilities for which a bond, cash deposit or agreement in lieu of bond is posted are not completed within the time frame of the off-site permit issued for the development; or if the DEVELOPER has suspended work and has failed to provide continued construction during the past 60 days; or if in the event the DEVELOPER, in the COUNTY's opinion, has created a safety hazard; or if such construction is not in accordance with applicable standards and specifications as prescribed by law, then, in either or any such event, the COUNTY may, at its option, proceed to complete said off site improvements at the expense of the DEVELOPER under this bond as provided for hereinafter.

That DEVELOPER acknowledges that the bond provided for in this agreement to construct the off-site improvements is only based upon an estimate of their cost by the Engineer of the County and in the event that actual cost of said off-site improvements shall exceed such sum, DEVELOPER is in no way relieved by this agreement from paying the entire amount of such excess.

Any application for release of said bond or cash deposit upon the completion of the off-site improvements by the DEVELOPER shall not be granted unless accompanied by a written certificate from the Director of Development Services stating that all requirements hereof have been satisfactorily completed in accordance with the terms of this agreement.

6 of 8

12.   **CERTIFICATE OF OCCUPANCY**

No certificates of occupancy shall be granted until such time as the off-site improvements have been completed to the satisfaction of the Director of Development Services, and in accordance with this agreement. The granting of a certificate of occupancy does not relieve DEVELOPER of its obligations in this agreement.

The granting of a certificate of occupancy does not imply that the off-site improvements have been properly completed nor authorize the release of the performance bond or other security.

13.   **CERTIFICATE OF RELEASE**

Upon final acceptance, by the Director of Development Services, of all of the off-site improvements required to be constructed by DEVELOPER as herein provided, DEVELOPER shall be issued a certificate of release of said performance bond or cash deposit, which shall be issued by the Director of Development Services.

14.   **NO THIRD PARTY BENEFICIARY**

Any inspections or subsequent approvals undertaken by the COUNTY pursuant to express or implied terms of this agreement are undertaken solely to insure compliance with the terms of this agreement and are not undertaken for the benefit of any individual or group of individuals as members of the public. It is not intended by any of the provisions of any part of this agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this agreement to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this agreement. Provisions in this agreement dealing with inspections, approvals or changes requested or made do not expand the COUNTY's general law duties.

15.   **ASSIGNMENTS**

DEVELOPER cannot assign this agreement, in whole or in part, or any rights herein granted, without the written consent of the COUNTY and it is agreed that any attempted transfer or assignment of this agreement or any of the rights herein granted, whether voluntary, by operation of law, or otherwise, without such consent in writing, shall be absolutely void at the option of the COUNTY.

16.   **AGREEMENT TO BE RECORDED**

The DEVELOPER agrees that this agreement will be recorded upon the land described in Exhibit "A" and this agreement shall also be binding upon and inure to

Printed by dkazio at 4/21/2009 11:46:55 AM

the benefit of the parties hereto, their heirs, executors, administrators, successors, and assigns. DEVELOPER and any heirs, executors, administrators, successors and assigns, if any, shall be jointly and severally liable for DEVELOPER's obligations herein.

17.    **WAIVER**

None of the conditions of this agreement shall be considered waived by either party unless such waiver is in writing and signed by both parties. No such waiver shall be a waiver of any past or future default, breach, or modification of any of the conditions of the agreement expressly stipulated in such waiver.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and official seals.

DEVELOPER:

Signature: _J. _____

Print Name: _James Rhodes_____

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before me this 28th

day of _January_____, 2009___, by

_Rhodes Ranch General Partnership_
                (Developer)

_Lucienne Ranson_____
**NOTARY PUBLIC** in and for said County and State

NOTARY STAMP:

> LUCIENNE RANSON
> Notary Public State of Nevada
> No. 08-6692-1
> My appt. exp. Apr. 4, 2012

**CORPORATE CERTIFICATE**

I,

certify that I am the Secretary of the Corporation named as Developer in the foregoing document; that

was then President/Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its government body and is within the scope of its corporate powers.

_____
                SECRETARY

— FOR COUNTY USE ONLY —

COUNTY OF CLARK, a political subdivision of the State of Nevada

BY _____
ROBERT B. THOMPSON, Assistant Director
DEPARTMENT OF DEVELOPMENT SERVICES

STATE OF NEVADA
COUNTY OF CLARK

Signed or attested before me on this _5th_ day of

_February_____, 20 _09_

by ROBERT B. THOMPSON.

_Dolores E. Valenzuela_
**NOTARY PUBLIC** in and for said County and State

NOTARY STAMP:

> DOLORES E. VALENZUELA
> NOTARY PUBLIC - STATE OF NEVADA
> COUNTY OF CLARK
> APPT. No.08-8158-1
> MY APPT. EXPIRES OCTOBER 01, 2012

8 of 8

**DESCRIPTION**
**176-17-201-001**

**BEING** A MERGER AND RESUBDIVISION OF THE WEST HALF (W1/2) OF THE SOUTHEAST QUARTER (SE1/4) OF THE NORTHWEST QUARTER (NW1/4) OF THE SOUTHWEST QUARTER (SW1/4) OF THE SOUTHWEST QUARTER (SW1/4) OF SAID SECTION 17. TOGETHER WITH PARCELS 2 AND 4 AS SHOWN BY MAP THEREOF ON FILE 103, PAGE 97 OF PARCEL MAPS IN THE CLARK COUNTY RECORDERS OFFICE, CLARK COUNTY, NEVADA. TOGETHER WITH THOSE PORTIONS OF FORD AVENUE, SEELIGER STREET AND WIGWAM AVENUE VACATED BY "ORDER OF VACATION" RECORDED JUNE 19, 2006 IN BOOK 20060619 OF OFFICIAL RECORDS AS INSTRUMENT No. 05371, EXCEPTING THEREFROM THAT PORTION DEDICATED AS PUBLIC STREET PER OR:20060517:04887, LYING WITHIN SECTION 17, TOWNSHIP 22 SOUTH, RANGE 60 EAST, M.D.M., CLARK COUNTY , NEVADA.

Page 1 of 1

20090209-0003558

APN: 176 - 17 - 201 - 001

HTE #: 08 - 32370 CL

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division

Fee: $0.00
N/C Fee: $0.00

02/09/2009         16:09:15
T20090044756
Requestor:
DEVELOPMENT SERVICES CLARK COUNTY

Debbie Conway              ANI
Clark County Recorder  Pgs: 14

## CLARK COUNTY DEVELOPMENT SERVICES

## CASH IN LIEU OF BOND AGREEMENT

THIS AGREEMENT, made and entered into this __5TH__ day of __February__, 20 __09__, by and between:

__Rhodes Ranch General Partnership__

whose mailing address is: __4730 S. Fort Apache Road__

__Las Vegas, NV     89147     702 - 873 - 5338__

hereinafter referred to as DEVELOPER, and the COUNTY OF CLARK, a political subdivision of the State of Nevada, hereinafter referred to as the COUNTY, and

__Mutual of Omaha Bank__

hereinafter referred to as FINANCIAL INSTITUTION, whose mailing address is:

__8337 W. Sunset Rd, Suite 300, Las Vegas, NV 89113__

### WITNESSETH:

WHEREAS, DEVELOPER has agreed to do and perform certain work, consisting of the construction of off-site improvements for:

__Residential Subdivision__
(type of development)

__Fort Apache / Wigwam__
(generally located)

1

_____

(name of project)

in accordance with that certain Off-Site Improvements Agreement between the DEVELOPER and the COUNTY dated the _____ day of_____, 20___, a copy of which is attached hereto, marked Exhibit "A" and by reference made a part hereof; and,

**WHEREAS**, in said Off-Site Improvements Agreement, the DEVELOPER agreed to execute a surety and performance bond in favor of the COUNTY, securing to the COUNTY the faithful performance of all of the terms and conditions thereof on the DEVELOPER'S part to be performed; and,

**WHEREAS**, The DEVELOPER may make a cash deposit, equal in amount to the surety and performance bond which would otherwise be required, in a local financial institution, provided that a proper agreement is entered into by and between the DEVELOPER, the COUNTY, and the FINANCIAL INSTITUTION; and,

**WHEREAS**, the DEVELOPER desires to make such cash deposit in lieu of the aforesaid surety and performance bond, and the COUNTY desires to accept such cash deposit in satisfaction of the DEVELOPER's obligation to provide such bond;

**NOW, THEREFORE**, for and in consideration of the premises and of the mutual covenants and agreements hereinafter contained, the parties do hereby agree as follows:

1. The DEVELOPER hereby represents that it has heretofore established with the FINANCIAL INSTITUTION a separate account, designated Account # 32501397 and has deposited therein the sum of Thirty-nine thousand nine hundred eighty-two and 25/100 Dollars ($ 39,982.25 ) as surety for the faithful performance of all of the terms and conditions of the aforesaid Off-Site Improvements Agreement on the DEVELOPER's part to be performed, said sum to be received, held, and disbursed by the FINANCIAL INSTITUTION in accordance with the terms of the Agreement. By its execution hereof, the FINANCIAL INSTITUTION hereby verifies that said account has been established and that the aforesaid sum has been deposited therein and agrees that said sum will be held and disbursed by it in accordance with the terms hereof and for no other purpose than herein stated.

2. Funds deposited in said account may be withdrawn only upon approval for release by the Director of Development Services or his designated deputy.

3. It is contemplated that monthly payments may be made to the DEVELOPER from time to time out of said account as the work on said improvements

2

progresses according to the percentage of the work completed and the amount to be paid as solely determined by the COUNTY; provided, however, that there shall at all times be a ten percent (10%) retention of the funds in said account, until all of the off-site improvements called for in said Off-Site Improvements Agreement have been completed and accepted by the COUNTY.

4.      In the event said off-site improvements are not completed to the satisfaction of the COUNTY within the time prescribed in said Off-Site Improvements Agreement and the COUNTY desires to exercise its option to complete said improvements, the COUNTY shall serve upon the DEVELOPER and upon the FINANCIAL INSTITUTION written notice of such default to their respective mailing address as hereinabove set forth and exercise of such option, and thereafter drafts on said account or requests for the withdrawal of funds therefrom shall be valid and binding and shall be honored by the FINANCIAL INSTITUTION upon the sole signature of the Director of Development Services of COUNTY or his designated deputy.

5.      It is acknowledged by the DEVELOPER that the sum provided for in paragraph 1 above is based upon the estimated cost of the improvements called for in the Off-Site Improvements Agreement. It is understood and agreed that, in the event the actual cost of said improvements shall exceed such sum, the DEVELOPER is in no way relieved by the Agreement from the obligation of paying the amount of such excess.

6.      It is understood and agreed that neither FINANCIAL INSTITUTION by executing this Agreement nor any of its affiliates, make any representation or commitment whatsoever to be guarantor, surety, principal or to be otherwise directly or indirectly responsible for the construction or the financing of the construction of the above described off-site improvements except as expressly provided by this Agreement.

7.      It is understood and agreed that the money deposited, as herein provided, is a security interest and that the COUNTY's claim to said funds shall be prior to that of any creditor, referee, receiver or trustee in the event of insolvency of bankruptcy; and that in such event, said funds shall not be administered by any receiver, referee or trustee, but shall be paid and distributed according to the terms of this Agreement. This Agreement with attachment shall be placed on public record to perfect said security interest.

8.      Upon final acceptance by the Director of Development Services of all of the off-site improvements called for in said Off-Site Improvements Agreement, this Agreement shall become null and void and of no further force or effect, and all funds remaining in said account shall belong to the DEVELOPER.

3

9.    This Agreement and all of the provisions hereof shall be binding upon and shall inure to the benefit of the parties hereto, their respective heirs, legal representatives, successors, and assigns.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and official seals.

STATE OF NEVADA      )
                     )  SS
COUNTY OF CLARK      )

This instrument was acknowledged before me this _28th_ day of _January_____ , _2009_ by

_Rhodes Ranch General Partnership_
              (developer name)

_Lucienne Ransom_
**NOTARY PUBLIC** in and for said County and State.

STATE OF NEVADA      )
                     )  SS
COUNTY OF CLARK      )

Signed or attested before me on this _2nd_ day

of _February_____ , 20 _09_ by

_William R. Oakley_
(president's name)

_Karen M. Loeffler-Severin_
**NOTARY PUBLIC** in and for said County and State.

DEVELOPER:

_Rhodes Ranch General Partnership_

By _Rhodes Companies, LLC_

By _J. Rhodes_ it's Pres.

_JOHN RHODES_

Notary Stamp:

LUCIENNE RANSOM
Notary Public State of Nevada
No. 08-6692-1
My appt. exp. Apr. 4, 2012

FINANCIAL INSTITUTION

By _K. Cahill_
**PRESIDENT**

Notary Stamp:

KAREN M. LOEFFLER
Notary Public, State of Nevada
Appointment No. 08-9554-1
My Appt. Expires Nov. 7, 2012

— FOR COUNTY USE ONLY —

STATE OF NEVADA      )
                     )  SS
COUNTY OF CLARK      )

Signed or attested before me on this _5th_ day of _February_____ 20 _09_ by
**ROBERT B. THOMPSON.**

_Dolores E. Valenzuela_
**NOTARY PUBLIC** in and for said County and State

DOLORES E. VALENZUELA
NOTARY PUBLIC · STATE OF NEVADA
COUNTY OF CLARK
APPT. No. 08-8158-1
MY APPT. EXPIRES OCTOBER 01, 2012

**COUNTY OF CLARK**, a political subdivision of the State of Nevada

BY _Robert B. Thompson_
**ROBERT B. THOMPSON, DEPARTMENT OF DEVELOPMENT SERVICES**

BCC standard form approved 7/16/02

4

## CASH IN LIEU OF BOND AGREEMENTS

1.   Name & complete address with phone number of Developer.

2.   Name & complete address with phone number of LOCAL Financial Institution.

3.   Account number for the Off-Site Improvements.

4.   An Off-Site Improvements Agreement AND legal description MUST accompany a Cash In Lieu of Bond Agreement.

5.   The Principal/Developer is the same on both the "CIL" and the Off-Site Agreement.

6.   Name & title typed or printed under signature of Developer & LOCAL Financial Institution.

**SIGNATURES MUST BE NOTARIZED** in proper place. Do Not Stamp Over Names Or Signatures or obstruct the stamp in any way.

Partial releases may be requested once every 30 days.

Requests take 10 to 15 working days to process.

If you have any questions, please call Bonding at 455-4630.

5

APN: 176-17-201-001

HTE #: 08-32370

NFM # or MSM # (If applicable) N/A NFM
07-500309

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division



# CLARK COUNTY
## DEPARTMENT OF DEVELOPMENT SERVICES

### OFF-SITE IMPROVEMENTS AGREEMENT

**THIS AGREEMENT**, made and entered into this 5TH day of February, 20 09 , by and between:

RHODES RANCH GENERAL PARTNERSHIP

whose mailing address is:
4730 S. FORT APACHE ROAD
SUITE 300
LAS VEGAS, NEVADA
89147        702-873-5338

hereinafter referred to as DEVELOPER and CLARK COUNTY, NEVADA, hereinafter referred to as COUNTY, for construction of off-site improvements at the following location:

**Cross Streets:**    Fort Apache / Wigwam

**Assessor's Parcel Number:**    176-17-201-001

WHEREAS, DEVELOPER has submitted a plan to the COUNTY for a

Residential Subdivision

(type of development); and

WHEREAS, the COUNTY requires construction of certain off-site improvements as part of said development.

NOW, THEREFORE, the parties to this agreement for and in consideration of

1 of 8

the mutual promises herein contained and for other good and valuable considerations, do hereby agree as follows:

1.    OFF-SITE IMPROVEMENTS

The DEVELOPER, at his own cost, shall perform and complete all off-site work and improvements which may consist of, but not limited to, streets, street name signs, traffic signs, sewers, water systems, fire hydrants, curbs, gutters, sidewalks, street lighting, driveways, drainage facilities, accesses, survey monuments,

    Per HTE # 08-32370

etc., hereinafter referred to as off-site improvements, said off-site improvements shall be constructed in accordance with applicable ordinances, regulations, standards and specifications, and other requirements of CLARK COUNTY, NEVADA.

2.    PLANS APPROVED BY THE DIRECTOR OF DEVELOPMENT SERVICES

No off-site improvements shall commence until:

(a)    off-site improvement plans have been approved by the Director of DEVELOPMENT SERVICES or his authorized representative;

(b)    one-hundred percent (100%) of the plan-check and inspection fees have been paid;

(c)    performance security executed as required by CLARK COUNTY ordinances; and

(d)    an off-site permit has been issued by the Director of DEVELOPMENT SERVICES, or his authorized representative.

3.    NOTICE OF COMMENCEMENT OF CERTAIN WORK

The DEVELOPER shall notify the Director of Development Services no less than 24 hours in advance of the date and hour work on any of the following items is expected to begin, and thereafter if conditions develop to delay the start of work, the DEVELOPER agrees to notify the Director of Development Services of the delay not less than two hours before work is scheduled to begin:

--    Placing sewer, water, gas, power, telephone lines and fire hydrants.

--    Back-filling of sewer, water, gas, power and telephone lines.

--    Placing concrete for curb, gutter, sidewalk, valley gutters, storm drain structures, manholes, street lighting foundations and alley gutters.

2 of 8

--   Placing Type I and Type II gravel base course.

--   Priming base course.

--   Placing street lighting and burn testing.

--   Placing street name signs and traffic control signs.

4.   APPROVAL OF WORK AFTER INSPECTION

(a)   Whenever the Director of Development Services or his duly authorized representative inspects portion of work as mentioned hereinbefore, and finds the work performed to be in a satisfactory condition for inclusion in the completed project, the Director of Development Services or his duly authorized representative shall issue a statement of inspection which shall permit the DEVELOPER to perform the next phase of the construction. Ordinarily, not less than one continuous block of any one of the items of work mentioned will be approved.

(b)   Inspection and approval of any item of work shall not forfeit the right of the COUNTY to require the corrections of quality, workmanship or materials at any time prior to the final acceptance of the project by the Director of Development Services, although previously approved by an oversight.

(c)   Nothing herein shall relieve the DEVELOPER of the responsibility for proper construction of the off-site improvements and DEVELOPER shall maintain said improvements until the work has been accepted by the Director of Development Services.

5.   ADJUSTMENT TO EXISTING UTILITIES AND COST THEREOF

The DEVELOPER shall, at its sole expense, provide for adjustments necessary to all existing utilities because of the work required by this agreement.

6.   FULL COMPLIANCE WITH COUNTY REQUIREMENTS

The DEVELOPER shall perform and complete all off-site improvements in accordance with the regulations, specifications, and ordinances of the said County of Clark, and the construction plans approved by Clark County Development Services Department.

The DEVELOPER shall obtain all required permits from other County, State, and Federal agencies, including but not limited to Clark County Health District, Nevada Department of Environmental Protection, and United States Army Corps of Engineers.

3 of 8

The COUNTY shall have the right to require corrections to the construction plans by the DEVELOPER at any time before release of the bond (performance bond, cash deposit, or agreement in lieu of bond) required herein, of any item or items contained in this agreement which do not conform to COUNTY standard specifications, laws, regulations or ordinances, even though the plans for the item in question may have been approved by the Director of Development Services.

The DEVELOPER shall start said off-site improvements upon receipt of a COUNTY-approved off-site permit and said off-site improvements shall be completed prior to expiration of said permit in accordance with the required ordinances.

In the event the DEVELOPER fails to complete said improvements within said period or in the event the DEVELOPER in the COUNTY's opinion has created a safety hazard, the COUNTY, at its option, may proceed to complete said improvements at the expense of the DEVELOPER. The COUNTY may use the required performance bond as provided for hereinafter.

7.    OTHER CONDITIONS AND REQUIREMENTS.

The DEVELOPER further agrees that, in addition to the above requirements, any and/or all such conditions, stipulations and agreements made by the DEVELOPER and the Board of County Commissioners and/or County Planning Commission of Clark County shall be fully performed.

The DEVELOPER further agrees that all work is to be performed by a qualified contractor licensed to do business in the State of Nevada and the County of Clark.

The DEVELOPER shall maintain, protect and take care of all work areas for the project, including any adjacent existing improvements, until its completion and acceptance by Clark County. Maintenance of any inhabited area of the development, and the adjacent streets and/or neighborhoods, shall include, but not be limited to, sweeping of the streets and keeping the gutters free of dirt and debris.

During move-in, construction and move-off, the DEVELOPER shall keep the site free and clear from dangerous accumulation of rubbish and debris and shall maintain sufficient and proper barricades, lights, etc., in accordance with the latest manual on the placement of traffic control devices accepted by the Department of Development Services for the protection of the public. Also, after excavation or placement of gravel, if the sub-grade and/or gravel base material is left exposed and in the opinion of the Director of Development Services is not properly maintained, thus causing either a rough riding surface or a dust problem, the Director of Development Services may require the DEVELOPER to do whatever is necessary to provide an adequate travel-way. If a detour is needed, the Director of Development Services shall determine to what extent it shall be maintained, which

4 of 8

shall include the placing of temporary paving, if it is to be used for an extended period of time.

Final acceptance of the work will not be made by the COUNTY until the area (falling under this agreement) and adjacent property has been cleared of all rubbish, surplus materials and equipment resulting from the contractor's operations, to the satisfaction of the Director of Development Services.

8.    **LIABILITY**

The DEVELOPER shall indemnify, defend, and hold harmless the COUNTY, its officers, agents, volunteers, and employees, against and from any and all liability, loss, damage, claims, fines, demands, causes of action, costs, expenses, and judgments of whatsoever nature, including but not limited to reasonable costs of investigation, reasonable attorney's fees and expenses, all reasonable expert witness fees and expenses, and all court or arbitration or other alternative dispute resolution costs which result from injury to or death of any persons whomsoever, and/or against and from damage to or loss or destruction of property whatsoever when such injury death, loss, destruction or damage is due to or arises in connection with or as a result of any work done by the DEVELOPER in connection with the construction of the off-site improvements and/or arises of or in connection with DEVELOPER's performance or failure to perform the terms and conditions of this agreement.    This Section 8 survives termination or completion of this agreement.

9.    **PLAN REQUIREMENTS ON COMPLETION OF IMPROVEMENTS**

Upon completion of all the off-site improvements within the COUNTY right-of-way required hereby and prior to release of any performance security, the DEVELOPER shall furnish the Director of Development Services with an as-built plan which shall accurately indicate, by lettered dimensions, the location of all manholes, the location size and depth of all sewer mains, underground water, power, gas, and other lines, with street plans and profiles for the same, including laterals and "Y's" for connection of house service lines.

10.    **WARRANTY**

The DEVELOPER is responsible should any original or developed defects or failures appear within a period of one year from the date of acceptance of the work by the COUNTY. The DEVELOPER shall, at his own expense, make good such defects and failures and make all replacements and adjustments required, within thirty (30) days after being notified by the COUNTY to do so. All repairs shall be subject to the approval of the Director of Development Services and/or the Director of Public Works.

5 of 8

This agreement does not limit or relieve DEVELOPER from any other obligation or responsibility which the DEVELOPER may otherwise have as a result of the street improvements, including any damages or latent defects which may occur beyond the warranty period specified above. Furthermore, DEVELOPER, at all times, is not relieved of any obligation or responsibility it may have by law including but not limited to damages for latent deficiencies, injury to real or personal property or injury to or wrongful death of a person, (N.R.S. 11.204).

11.    REQUIREMENTS OF PERFORMANCE BOND OR OTHER SECURITY

DEVELOPER shall furnish without cost to the COUNTY a surety and performance bond, cash deposit or agreement in lieu of bond for the full cost of said off-site improvements in favor of the COUNTY conditioned upon the DEVELOPER completing said off-site improvements within the time period prescribed by this agreement. Also, in the event the COUNTY exercises its option to complete said off-site improvements, that said bond, cash deposit or agreement in lieu of bond shall be used for the payment of the costs of completion of said off site improvements by the COUNTY in case the DEVELOPER fails to do so within said time period.

If the construction or installation of any off-site improvements or facilities for which a bond, cash deposit or agreement in lieu of bond is posted are not completed within the time frame of the off-site permit issued for the development; or if the DEVELOPER has suspended work and has failed to provide continued construction during the past 60 days; or if in the event the DEVELOPER, in the COUNTY's opinion, has created a safety hazard; or if such construction is not in accordance with applicable standards and specifications as prescribed by law, then, in either or any such event, the COUNTY may, at its option, proceed to complete said off site improvements at the expense of the DEVELOPER under this bond as provided for hereinafter.

That DEVELOPER acknowledges that the bond provided for in this agreement to construct the off-site improvements is only based upon an estimate of their cost by the Engineer of the County and in the event that actual cost of said off-site improvements shall exceed such sum, DEVELOPER is in no way relieved by this agreement from paying the entire amount of such excess.

Any application for release of said bond or cash deposit upon the completion of the off-site improvements by the DEVELOPER shall not be granted unless accompanied by a written certificate from the Director of Development Services stating that all requirements hereof have been satisfactorily completed in accordance with the terms of this agreement.

6 of 8

12. CERTIFICATE OF OCCUPANCY

No certificates of occupancy shall be granted until such time as the off-site improvements have been completed to the satisfaction of the Director of Development Services, and in accordance with this agreement. The granting of a certificate of occupancy does not relieve DEVELOPER of its obligations in this agreement.

The granting of a certificate of occupancy does not imply that the off-site improvements have been properly completed nor authorize the release of the performance bond or other security.

13. CERTIFICATE OF RELEASE

Upon final acceptance, by the Director of Development Services, of all of the off-site improvements required to be constructed by DEVELOPER as herein provided, DEVELOPER shall be issued a certificate of release of said performance bond or cash deposit, which shall be issued by the Director of Development Services.

14. NO THIRD PARTY BENEFICIARY

Any inspections or subsequent approvals undertaken by the COUNTY pursuant to express or implied terms of this agreement are undertaken solely to insure compliance with the terms of this agreement and are not undertaken for the benefit of any individual or group of individuals as members of the public. It is not intended by any of the provisions of any part of this agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this agreement to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this agreement. Provisions in this agreement dealing with inspections, approvals or changes requested or made do not expand the COUNTY's general law duties.

15. ASSIGNMENTS

DEVELOPER cannot assign this agreement, in whole or in part, or any rights herein granted, without the written consent of the COUNTY and it is agreed that any attempted transfer or assignment of this agreement or any of the rights herein granted, whether voluntary, by operation of law, or otherwise, without such consent in writing, shall be absolutely void at the option of the COUNTY.

16. AGREEMENT TO BE RECORDED

The DEVELOPER agrees that this agreement will be recorded upon the land described in Exhibit "A" and this agreement shall also be binding upon and inure to

7 of 8

the benefit of the parties hereto, their heirs, executors, administrators, successors, and assigns.  DEVELOPER and any heirs, executors, administrators, successors and assigns, if any, shall be jointly and severally liable for DEVELOPER's obligations herein.

17.    <u>WAIVER</u>

None of the conditions of this agreement shall be considered waived by either party unless such waiver is in writing and signed by both parties.  No such waiver shall be a waiver of any past or future default, breach, or modification of any of the conditions of the agreement expressly stipulated in such waiver.

**IN WITNESS WHEREOF,** the parties hereto have set their hands and official seals.

**DEVELOPER:**

Signature: _____

Print Name: _James Rhodes_

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before me this 22th

day of _January_          2009 by

_Rhodes Ranch General Partnership_
(Developer)

_Lucienne Ransom_
**NOTARY PUBLIC** in and for said County and State

NOTARY STAMP:

> LUCIENNE RANSOM
> Notary Public State of Nevada
> No. 09-6692-1
> My appt. exp. Apr. 4, 2012

**CORPORATE CERTIFICATE**

I, _____
certify that I am the Secretary of the Corporation named as Developer in the foregoing document; that _____
was then President/Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its government body and is within the scope of its corporate powers.

_____
**SECRETARY**

– FOR COUNTY USE ONLY –

**COUNTY OF CLARK,** a political subdivision of the State of Nevada

BY _____
   **ROBERT B. THOMPSON,** Assistant Director
   **DEPARTMENT OF DEVELOPMENT SERVICES**

**STATE OF NEVADA**
**COUNTY OF CLARK**

Signed or attested before me on this _5th_ day of

_February_          , 20 _09_

by ROBERT B. THOMPSON.

_Dolores E. Valenzuela_
**NOTARY PUBLIC** in and for said County and State

NOTARY STAMP:

> DOLORES E. VALENZUELA
> NOTARY PUBLIC · STATE OF NEVADA
> COUNTY OF CLARK
> APPT. No. 08-8158-1
> MY APPT. EXPIRES OCTOBER 01, 2012

8 of 8

**DESCRIPTION**
**176-17-201-001**

**BEING** A MERGER AND RESUBDIVISION OF THE WEST HALF (W1/2) OF THE SOUTHEAST QUARTER (SE1/4) OF THE NORTHWEST QUARTER (NW1/4) OF THE SOUTHWEST QUARTER (SW1/4) OF THE SOUTHWEST QUARTER (SW1/4) OF SAID SECTION 17.  TOGETHER WITH PARCELS 2 AND 4 AS SHOWN BY MAP THEREOF ON FILE 103, PAGE 97 OF PARCEL MAPS IN THE CLARK COUNTY RECORDERS OFFICE, CLARK COUNTY, NEVADA. TOGETHER WITH THOSE PORTIONS OF FORD AVENUE, SEELIGER STREET AND WIGWAM AVENUE VACATED BY "ORDER OF VACATION" RECORDED JUNE 19, 2006 IN BOOK 20060619 OF OFFICIAL RECORDS AS INSTRUMENT No. 05371, EXCEPTING THEREFROM THAT PORTION DEDICATED AS PUBLIC STREET PER OR:20060517:04887, LYING WITHIN SECTION 17, TOWNSHIP 22 SOUTH, RANGE 60 EAST, M.D.M., CLARK COUNTY , NEVADA.

Page 1 of 1



06 - 51550
BOND



### CLARK COUNTY DEPARTMENT OF PUBLIC WORKS
### DEVELOPMENT OF OFF-SITE IMPROVEMENTS
### PERFORMANCE BOND
Bond No. 08842781

That Rhodes Ranch General Partnership _____ as

Principal, of 4730 S. Ft. Apache Rd., Ste. 300 _____ ,

City of Las Vegas, NV _____ ,

County of Clark _____ ,

and Fidelity and Deposit Company of Maryland as Surety, a corporation incorporated and doing

business under the laws of the State of _____ Maryland _____ and licensed to

conduct, transact and issue Surety business in the State of Nevada, are held and firmly bound

to Clark County, Nevada, as Obligee, in the sum of Ninety Seven Thousand Three Hundred

Four and 92/100 _____ ,($ 97,304.92 _____ ) Dollars, for the payment of the sum

well and truly to be made, and jointly and severally bind themselves, their heirs, successors,

assigns, executors, administrators and legal representatives firmly by these presents.

### CONDITIONS

1. Principal, as a condition of the development of the Rhodes Ranch Seeliger Street Phase II _____ project,
entered into a written agreement or agreements ("improvement agreement(s)") with said
Obligee to complete the required improvements specified in said improvement agreement(s)
identified as HTE No.06-51550    off site improvements, dated _____ , and _____
_____ ,dated _____ , and are attached hereto and by this
reference incorporated herein.

2. If Principal fully and completely performs all of its obligations required by the said improvement
agreement(s) during the original term thereof, or any extension of said term that may be
granted by the Obligee with or without notice to the Surety, this obligation shall be voided;
otherwise this obligation shall remain in full force and effect.

3. This obligation will continuously remain in full force and effect until and unless all of the
conditions in the said improvement agreement(s) are fulfilled and completed to the satisfaction
of the Obligee.

4. The provisions of this obligation shall be interpreted in manner consistent with the
requirements of the Clark County Code, including, but not limited to, Chapter 30.32, which by
this reference is incorporated herein.

5. Surety hereby waives notice of any changes, modifications, or additions to the obligations
specified in said improvement agreement(s).

Page 1 of 2

Printed by dkazio at 4/21/2009 12:09:42 PM

6. Any deviations, additions, or modifications to the obligations of the improvement agreement(s) may be made without the consent or knowledge of Surety and without in any way releasing Surety from liability under this bond.

7. In case of default by Principal, Surety may assure and complete or procure completion of the obligations of Principal, and Surety will be subrogated and entitled to all the rights and properties of Principal arising out of the improvement agreement(s).

IN WITNESS WHEREOF, the seal and signature of said Principal is hereto affixed and the corporate seal and the name of the said Surety is hereto affixed and attested by its duly authorized Attorney-in-Fact at _____ Westmont, Illinois _____, Nevada, this February 1 _____, 2007 _____.

PRINCIPAL: Rhodes Ranch General Partnership

BY: _____ for ENTITY Ranch G.P.

State of Nevada
County of Clark

This instrument was acknowledged before me on _____ 2/8 _____, 20 07, by _Kevin Karo_ as _____ of _____ (Principal).

NOTARY PUBLIC in and for said County and State

CRYSTAL LYNN HAWKINS
Notary Public State of Nevada
No. 03-85327-1
My appt. exp. Nov. 17, 2007

BY: _Sally Eisenberg_ 164222
Nevada Resident Agent
Brown & Brown Ins. of Nevada Inc.
2340 Corporate Circle - 24 Fl.
Henderson NV 89074
NV Lic. #102444

SURETY: Fidelity and Deposit Company of Maryland

BY: _Melissa Schmidt_ , Attorney-in-Fact
      Melissa Schmidt

State of Nevada Illinois
County of Clark DuPage

This instrument was acknowledged before me on _____ February 1 _____, 2007, by Melissa Schmidt as Attorney-in-Fact for Fidelity and Deposit Company of Maryland (Surety).

_Heather A Beck_

NOTARY PUBLIC in and for said County and State.    Heather A. Beck

OFFICIAL SEAL
HEATHER A BECK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/05/08

Page 2 of 2

## Power of Attorney
### FIDELITY AND DEPOSIT COMPANY OF MARYLAND
### COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

KNOW ALL MEN BY THESE PRESENTS: That the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, corporations of the State of Maryland, by THEODORE G. MARTINEZ, Vice President, and GERALD F. HALEY, Assistant Secretary, in pursuance of authority granted by Article VI, Section 2, of the By-Laws of said Companies, which are set forth on the reverse side hereof and are hereby certified to be in full force and effect on the date hereof, do hereby nominate, constitute and appoint Peggy FAUST, Kelly A. JACOBS, Stephen T. KAZMER, Bonnie KRUSE, Jennifer J. MCCOMB, Elaine MARCUS, James I. MOORE, Dawn MORGAN, Melissa SCHMIDT and Irene DIAZ, all of Westmont, Illinois, EACH its true and lawful agent and Attorney-in-Fact, to make, execute, seal and deliver, for, and on its behalf as surety, and as its act and deed: any and all bonds and undertakings, and the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its office in Baltimore, Md., in their own proper persons. This power of attorney revokes that issued on behalf of Peggy FAUST, Kelly A. JACOBS, Stephen T. KAZMER, Bonnie KRUSE, Jennifer J. MCCOMB, Elaine MARCUS, James I. MOORE, Dawn MORGAN, Mary Beth PETERSON, dated March 6, 2003.

The said Assistant Secretary does hereby certify that the extract set forth on the reverse side hereof is a true copy of Article VI, Section 2, of the By-Laws of said Companies, and is now in force.

IN WITNESS WHEREOF, the said Vice-President and Assistant Secretary have hereunto subscribed their names and affixed the Corporate Seals of the said FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, this 24th day of April, A.D. 2006.

ATTEST:



FIDELITY AND DEPOSIT COMPANY OF MARYLAND
COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

*Gerald F. Haley*    *Assistant Secretary*

By: *Theodore G. Martinez*

State of Maryland } ss:
City of Baltimore }

On this 24th day of April, A.D. 2006, before the subscriber, a Notary Public of the State of Maryland, duly commissioned and qualified, came THEODORE G. MARTINEZ, Vice President, and GERALD F. HALEY, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, to me personally known to be the individuals and officers described in and who executed the preceding instrument, and they each acknowledged the execution of the same, and being by me duly sworn, severally and each for himself deposeth and saith, that they are the said officers of the Companies aforesaid, and that the seals affixed to the preceding instrument is the Corporate Seals of said Companies, and that the said Corporate Seals and their signatures as such officers were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

*Constance A. Dunn*

Constance A. Dunn          Notary Public
My Commission Expires: July 14, 2007

POA-F 036-0013A

### EXTRACT FROM BY-LAWS OF FIDELITY AND DEPOSIT COMPANY OF MARYLAND

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

### EXTRACT FROM BY-LAWS OF COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

### CERTIFICATE

I, the undersigned, Assistant Secretary of the  FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that the Vice-President who executed the said Power of Attorney was one of the additional Vice-Presidents specially authorized by the Board of Directors to appoint any Attorney-in-Fact as provided in Article VI, Section 2, of the respective By-Laws of the  FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the  FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990 and of the Board of Directors of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at a meeting duly called and held on the 5th day of May, 1994.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed."

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seals of the said Companies,

this ___1st_____ day of ___February_____, ___2007___ .

George E. Murny

*Assistant Secretary*

APN: _176-17-310-002_

HTE #: _06-51550_

NFM # or MSM # (if applicable) _N/A_

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division

20070313-0005010

Fee: $0.00
N/C Fee:  $0.00

03/13/2007                16:09:49
T20070044310
Requestor:
DEVELOPMENT SERVICES CLARK COUNTY

Debbie Conway          DGI
Clark County Recorder    Pgs: 11



# CLARK COUNTY
# DEPARTMENT OF DEVELOPMENT SERVICES

## OFF-SITE IMPROVEMENTS AGREEMENT

THIS AGREEMENT, made and entered into this _____ 21 ˢᵗ _____ day of
_Febreary_ _____, 20 _07_ , by and between:

_____ RHODES RANCH GENERAL PARTNERSHIP _____,
whose mailing address is:

_____ 4730 SOUTH FORT APACHE RD; SUITE #300 _____

_____ LAS VEGAS, NV 89147 _____

_____ (702) 873-5338 _____

hereinafter referred to as DEVELOPER and CLARK COUNTY, NEVADA, hereinafter
referred to as COUNTY, for construction of off-site improvements at the following location:

Cross Streets: __WIGWAM AVENUE AND FORT APACHE ROAD__

Assessor's Parcel Number: __176-17-310-002__

        WHEREAS, DEVELOPER has submitted a plan to the COUNTY for a

_____ ROADWAY IMPROVEMENTS _____
(type of development); and

        WHEREAS, the COUNTY requires construction of certain off-site
improvements as part of said development.

        NOW, THEREFORE, the parties to this agreement for and in consideration of

1 of 8

the mutual promises herein contained and for other good and valuable considerations, do hereby agree as follows:

1.   <u>OFF-SITE IMPROVEMENTS</u>

The DEVELOPER, at his own cost, shall perform and complete all off-site work and improvements which may consist of, but not limited to, streets, street name signs, traffic signs, sewers, water systems, fire hydrants, curbs, gutters, sidewalks, street lighting, driveways, drainage facilities, accesses, survey monuments,

*PER PLAN HTE # 06-51550*

etc., hereinafter referred to as off-site improvements, said off-site improvements shall be constructed in accordance with applicable ordinances, regulations, standards and specifications, and other requirements of CLARK COUNTY, NEVADA.

2.   <u>PLANS APPROVED BY THE DIRECTOR OF DEVELOPMENT SERVICES</u>

No off-site improvements shall commence until:

(a)   off-site improvement plans have been approved by the Director of DEVELOPMENT SERVICES or his authorized representative;

(b)   one-hundred percent (100%) of the plan-check and inspection fees have been paid;

(c)   performance security executed as required by CLARK COUNTY ordinances; and

(d)   an off-site permit has been issued by the Director of DEVELOPMENT SERVICES, or his authorized representative.

3.   <u>NOTICE OF COMMENCEMENT OF CERTAIN WORK</u>

The DEVELOPER shall notify the Director of Development Services no less than 24 hours in advance of the date and hour work on any of the following items is expected to begin, and thereafter if conditions develop to delay the start of work, the DEVELOPER agrees to notify the Director of Development Services of the delay not less than two hours before work is scheduled to begin:

--   Placing sewer, water, gas, power, telephone lines and fire hydrants.

--   Back-filling of sewer, water, gas, power and telephone lines.

--   Placing concrete for curb, gutter, sidewalk, valley gutters, storm drain structures, manholes, street lighting foundations and alley gutters.

2 of 8

— Placing Type I and Type II gravel base course.

— Priming base course.

— Placing street lighting and burn testing.

— Placing street name signs and traffic control signs.

4.  APPROVAL OF WORK AFTER INSPECTION

(a)  Whenever the Director of Development Services or his duly authorized representative inspects portion of work as mentioned hereinbefore, and finds the work performed to be in a satisfactory condition for inclusion in the completed project, the Director of Development Services or his duly authorized representative shall issue a statement of inspection which shall permit the DEVELOPER to perform the next phase of the construction. Ordinarily, not less than one continuous block of any one of the items of work mentioned will be approved.

(b)  Inspection and approval of any item of work shall not forfeit the right of the COUNTY to require the corrections of quality, workmanship or materials at any time prior to the final acceptance of the project by the Director of Development Services, although previously approved by an oversight.

(c)  Nothing herein shall relieve the DEVELOPER of the responsibility for proper construction of the off-site improvements and DEVELOPER shall maintain said improvements until the work has been accepted by the Director of Development Services.

5.  ADJUSTMENT TO EXISTING UTILITIES AND COST THEREOF

The DEVELOPER shall, at its sole expense, provide for adjustments necessary to all existing utilities because of the work required by this agreement.

6.  FULL COMPLIANCE WITH COUNTY REQUIREMENTS

The DEVELOPER shall perform and complete all off-site improvements in accordance with the regulations, specifications, and ordinances of the said County of Clark, and the construction plans approved by Clark County Development Services Department.

The DEVELOPER shall obtain all required permits from other County, State, and Federal agencies, including but not limited to Clark County Health District, Nevada Department of Environmental Protection, and United States Army Corps of Engineers.

The COUNTY shall have the right to require corrections to the construction plans by the DEVELOPER at any time before release of the bond (performance bond, cash deposit, or agreement in lieu of bond) required herein, of any item or items contained in this agreement which do not conform to COUNTY standard specifications, laws, regulations or ordinances, even though the plans for the item in question may have been approved by the Director of Development Services.

The DEVELOPER shall start said off-site improvements upon receipt of a COUNTY-approved off-site permit and said off-site improvements shall be completed prior to expiration of said permit in accordance with the required ordinances.

In the event the DEVELOPER fails to complete said improvements within said period or in the event the DEVELOPER in the COUNTY's opinion has created a safety hazard, the COUNTY, at its option, may proceed to complete said improvements at the expense of the DEVELOPER. The COUNTY may use the required performance bond as provided for hereinafter.

7.    OTHER CONDITIONS AND REQUIREMENTS

The DEVELOPER further agrees that, in addition to the above requirements, any and/or all such conditions, stipulations and agreements made by the DEVELOPER and the Board of County Commissioners and/or County Planning Commission of Clark County shall be fully performed.

The DEVELOPER further agrees that all work is to be performed by a qualified contractor licensed to do business in the State of Nevada and the County of Clark.

The DEVELOPER shall maintain, protect and take care of all work areas for the project, including any adjacent existing improvements, until its completion and acceptance by Clark County. Maintenance of any inhabited area of the development, and the adjacent streets and/or neighborhoods, shall include, but not be limited to, sweeping of the streets and keeping the gutters free of dirt and debris.

During move-in, construction and move-off, the DEVELOPER shall keep the site free and clear from dangerous accumulation of rubbish and debris and shall maintain sufficient and proper barricades, lights, etc., in accordance with the latest manual on the placement of traffic control devices accepted by the Department of Development Services for the protection of the public. Also, after excavation or placement of gravel, if the sub-grade and/or gravel base material is left exposed and in the opinion of the Director of Development Services is not properly maintained, thus causing either a rough riding surface or a dust problem, the Director of Development Services may require the DEVELOPER to do whatever is necessary to provide an adequate travel-way. If a detour is needed, the Director of Development Services shall determine to what extent it shall be maintained, which

Printed by dkazio at 4/21/2009 12:09:28 PM

shall include the placing of temporary paving, if it is to be used for an extended period of time.

Final acceptance of the work will not be made by the COUNTY until the area (falling under this agreement) and adjacent property has been cleared of all rubbish, surplus materials and equipment resulting from the contractor's operations, to the satisfaction of the Director of Development Services.

8. **LIABILITY**

The DEVELOPER shall indemnify, defend, and hold harmless the COUNTY, its officers, agents, volunteers, and employees, against and from any and all liability, loss, damage, claims, fines, demands, causes of action, costs, expenses, and judgments of whatsoever nature, including but not limited to reasonable costs of investigation, reasonable attorney's fees and expenses, all reasonable expert witness fees and expenses, and all court or arbitration or other alternative dispute resolution costs which result from injury to or death of any persons whomsoever, and/or against and from damage to or loss or destruction of property whatsoever when such injury death, loss, destruction or damage is due to or arises in connection with or as a result of any work done by the DEVELOPER in connection with the construction of the off-site improvements, and/or arises of or in connection with DEVELOPER's performance or failure to perform the terms and conditions of this agreement. This Section 8 survives termination or completion of this agreement.

9. **PLAN REQUIREMENTS ON COMPLETION OF IMPROVEMENTS**

Upon completion of all the off-site improvements within the COUNTY right-of-way required hereby and prior to release of any performance security, the DEVELOPER shall furnish the Director of Development Services with an as-built plan which shall accurately indicate, by lettered dimensions, the location of all manholes, the location size and depth of all sewer mains, underground water, power, gas, and other lines, with street plans and profiles for the same, including laterals and "Y's" for connection of house service lines.

10. **WARRANTY**

The DEVELOPER is responsible should any original or developed defects or failures appear within a period of one year from the date of acceptance of the work by the COUNTY. The DEVELOPER shall, at his own expense, make good such defects and failures and make all replacements and adjustments required, within thirty (30) days after being notified by the COUNTY to do so. All repairs shall be subject to the approval of the Director of Development Services and/or the Director of Public Works.

This agreement does not limit or relieve DEVELOPER from any other obligation or responsibility which the DEVELOPER may otherwise have as a result of the street improvements, including any damages or latent defects which may occur beyond the warranty period specified above. Furthermore, DEVELOPER, at all times, is not relieved of any obligation or responsibility it may have by law including but not limited to damages for latent deficiencies, injury to real or personal property or injury to or wrongful death of a person, (N.R.S. 11.204).

11.    REQUIREMENTS OF PERFORMANCE BOND OR OTHER SECURITY

DEVELOPER shall furnish without cost to the COUNTY a surety and performance bond, cash deposit or agreement in lieu of bond for the full cost of said off-site improvements in favor of the COUNTY conditioned upon the DEVELOPER completing said off-site improvements within the time period prescribed by this agreement. Also, in the event the COUNTY exercises its option to complete said off-site improvements, that said bond, cash deposit or agreement in lieu of bond shall be used for the payment of the costs of completion of said off site improvements by the COUNTY in case the DEVELOPER fails to do so within said time period.

If the construction or installation of any off-site improvements or facilities for which a bond, cash deposit or agreement in lieu of bond is posted are not completed within the time frame of the off-site permit issued for the development; or if the DEVELOPER has suspended work and has failed to provide continued construction during the past 60 days; or if in the event the DEVELOPER, in the COUNTY's opinion, has created a safety hazard; or if such construction is not in accordance with applicable standards and specifications as prescribed by law, then, in either or any such event, the COUNTY may, at its option, proceed to complete said off site improvements at the expense of the DEVELOPER under this bond as provided for hereinafter.

That DEVELOPER acknowledges that the bond provided for in this agreement to construct the off-site improvements is only based upon an estimate of their cost by the Engineer of the County and in the event that actual cost of said off-site improvements shall exceed such sum, DEVELOPER is in no way relieved by this agreement from paying the entire amount of such excess.

Any application for release of said bond or cash deposit upon the completion of the off-site improvements by the DEVELOPER shall not be granted unless accompanied by a written certificate from the Director of Development Services stating that all requirements hereof have been satisfactorily completed in accordance with the terms of this agreement.

6 of 8

12.    CERTIFICATE OF OCCUPANCY

No certificates of occupancy shall be granted until such time as the off-site improvements have been completed to the satisfaction of the Director of Development Services, and in accordance with this agreement. The granting of a certificate of occupancy does not relieve DEVELOPER of its obligations in this agreement.

The granting of a certificate of occupancy does not imply that the off-site improvements have been properly completed nor authorize the release of the performance bond or other security.

13.    CERTIFICATE OF RELEASE

Upon final acceptance, by the Director of Development Services, of all of the off-site improvements required to be constructed by DEVELOPER as herein provided, DEVELOPER shall be issued a certificate of release of said performance bond or cash deposit, which shall be issued by the Director of Development Services.

14.    NO THIRD PARTY BENEFICIARY

Any inspections or subsequent approvals undertaken by the COUNTY pursuant to express or implied terms of this agreement are undertaken solely to insure compliance with the terms of this agreement and are not undertaken for the benefit of any individual or group of individuals as members of the public. It is not intended by any of the provisions of any part of this agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this agreement to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this agreement. Provisions in this agreement dealing with inspections, approvals or changes requested or made do not expand the COUNTY's general law duties.

15.    ASSIGNMENTS

DEVELOPER cannot assign this agreement, in whole or in part, or any rights herein granted, without the written consent of the COUNTY and it is agreed that any attempted transfer or assignment of this agreement or any of the rights herein granted, whether voluntary, by operation of law, or otherwise, without such consent in writing, shall be absolutely void at the option of the COUNTY.

16.    AGREEMENT TO BE RECORDED

The DEVELOPER agrees that this agreement will be recorded upon the land described in Exhibit "A" and this agreement shall also be binding upon and inure to

7 of 8

the benefit of the parties hereto, their heirs, executors, administrators, successors, and assigns. DEVELOPER and any heirs, executors, administrators, successors and assigns, if any, shall be jointly and severally liable for DEVELOPER's obligations herein.

17.    **WAIVER**

None of the conditions of this agreement shall be considered waived by either party unless such waiver is in writing and signed by both parties. No such waiver shall be a waiver of any past or future default, breach, or modification of any of the conditions of the agreement expressly stipulated in such waiver.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and official seals.

DEVELOPER:

Sign
Kevin Karo    For Rhodes Ranch G.P.
Print Name

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before me this 21st

day of February, 2007, by
Kevin Karo
Rhodes Ranch G.P.
(Developer)

NOTARY PUBLIC in and for said County and State

NOTARY STAMP:

CRYSTAL LYNN HAWKINS
Notary Public State of Nevada
No. 03-85327-1
My appt. exp. Nov. 17, 2007

**CORPORATE CERTIFICATE**

I, _____
certify that I am the Secretary of the Corporation named as Developer in the foregoing document; that _____ was then President/Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its government body and is within the scope of its corporate powers.

_____
SECRETARY

---

– FOR COUNTY USE ONLY –

COUNTY OF CLARK, a political subdivision of the State of Nevada

BY _____
ROBERT B. THOMPSON, Assistant Director
DEPARTMENT OF DEVELOPMENT SERVICES

STATE OF NEVADA
COUNTY OF CLARK

Signed or attested before me on this 7th day of
March, 20 07
by ROBERT B. THOMPSON.

_____
NOTARY PUBLIC in and for said County and State

NOTARY STAMP:

MARK MIKOLAITIS
Notary Public State of Nevada
No. 06-103285-1
My appt. exp. Feb. 1, 2010

8 of 8



G. C. WALLACE COMPANIES
ENGINEERS | PLANNERS | SURVEYORS

**APN 176-17-399-001, 002 & 005, AND APN 176-17-801-019**

### EXHIBIT "A"

**EXPLANATION:**    THIS DESCRIPTION REPRESENTS THE LIMITS OF THE DEVELOPER
IMPROVED AREA FOR BOND ESTIMATE IN SUPPORT OF THE
"RHODES RANCH PARCEL 20" PROJECT.

### DESCRIPTION

A PORTION OF SEELIGER STREET AS SHOWN BY MAP THEREOF IN BOOK 132, PAGE
41 OF PLATS IN THE CLARK COUNTY, NEVADA, RECORDER'S OFFICE, LYING WITHIN
THE SOUTHWEST QUARTER (SW 1/4) OF SECTION 17, TOWNSHIP 22 SOUTH, RANGE 60
EAST, M.D.M., CLARK COUNTY, NEVADA, DESCRIBED AS FOLLOWS:

**COMMENCING** AT THE NORTHEAST CORNER OF THE NORTHEAST QUARTER (NE 1/4)
OF THE SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF
SAID SECTION 17;

THENCE ALONG THE NORTH LINE THEREOF, NORTH 89°26'20" WEST, 660.67 FEET TO
THE **POINT OF BEGINNING** ON A LINE 30.00 FEET EAST OF AND PERPENDICULAR TO
THE WEST LINE OF THE EAST HALF (E 1/2) OF THE NORTHEAST QUARTER (NE 1/4) OF
THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 17;

THENCE PARALLEL WITH THE WEST LINE OF THE EAST HALF (E 1/2) OF THE
NORTHEAST QUARTER (NE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID
SECTION 17, SOUTH 00°53'01" WEST, 0.17 FEET TO A POINT ON A LINE 30.00 FEET
EAST OF AND PERPENDICULAR TO THE WEST LINE OF THE EAST HALF (E 1/2) OF THE
SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID
SECTION 17;

THENCE PARALLEL WITH THE WEST LINE OF THE EAST HALF (E 1/2) OF THE
SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID
SECTION 17, SOUTH 00°53'14" WEST, 655.92 FEET TO A POINT ON THE SOUTH LINE OF
THE NORTH HALF (N 1/2) OF THE SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHWEST
QUARTER (SW 1/4) OF SAID SECTION 17;

THENCE ALONG SAID SOUTH LINE, NORTH 89°16'10" WEST, 60.00 FEET TO A POINT ON
A LINE 30.00 FEET WEST OF AND PERPENDICULAR TO THE WEST LINE OF THE EAST
HALF (E 1/2) OF THE SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHWEST QUARTER
(SW 1/4) OF SAID SECTION 17;

PAGE 1 OF 3

THENCE PARALLEL WITH THE WEST LINE OF THE EAST HALF (E 1/2) OF THE
SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID
SECTION 17, NORTH 00°53'14" EAST, 656.09 FEET TO A POINT ON A LINE 30.00 FEET
WEST OF AND PERPENDICULAR TO THE EAST HALF (E 1/2) OF THE NORTHEAST
QUARTER (NE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 17;

THENCE PARALLEL WITH THE WEST LINE OF THE EAST HALF (E 1/2) OF THE
NORTHEAST QUARTER (NE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID
SECTION 17, NORTH 00°53'01" EAST, 1091.15 FEET;

THENCE CURVING TO THE LEFT ALONG AN ARC HAVING A RADIUS OF 14.50 FEET,
CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 61°05'48", AN ARC
LENGTH OF 15.46 FEET TO POINT OF REVERSE CURVATURE THROUGH WHICH A
RADIAL LINE BEARS NORTH 29°47'13" EAST;

THENCE CURVING TO THE RIGHT ALONG AN ARC HAVING A RADIUS OF 45.50 FEET,
CONCAVE SOUTHEASTERLY, THROUGH A CENTRAL ANGLE OF 241°05'48", AN ARC
LENGTH OF 191.46 FEET TO A POINT ON A LINE 30 FEET EAST OF AND
PERPENDICULAR TO THE EAST HALF (E 1/2) OF THE NORTHEAST QUARTER
(NE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 17;

THENCE PARALLEL WITH THE EAST LINE OF THE EAST HALF (E 1/2) OF THE
NORTHEAST QUARTER (NE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID
SECTION 17, SOUTH 00°53'01" WEST, 1143.51 FEET TO THE **POINT OF BEGINNING.**

CONTAINING 2.58 ACRES.

**BASIS OF BEARINGS**
SOUTH 00°29'33" WEST, BEING THE BEARING OF THE EAST LINE OF THE NORTHEAST
QUARTER (NE1/4) OF THE SOUTHWEST QUARTER (SW1/4) OF SECTION 17, TOWNSHIP
22 SOUTH, RANGE 60 EAST, M.D.M., CLARK COUNTY, NEVADA AS SHOWN BY MAP
THEREOF IN BOOK 132, PAGE 41 OF PLATS IN THE CLARK COUNTY, NEVADA
RECORDER'S OFFICE.

R:\050 (Office)\Projects\754\016F2\legalrow-ex.doc    PAGE 2 OF 3
3/6/2007  By: OMS Ckd. By: ss

6655 SOUTH CIMARRON ROAD. / LAS VEGAS, NEVADA 89113 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-4379
SUMMERLIN OFFICE FAX: (702) 804-2295 ● RAINBOW OFFICE FAX: (702) 804-2299

Printed by dkazio at 4/21/2009 12:09:28 PM



APN 176-17-399-001, 002 & 005, AND APN 176-17-801-019

## SEELIGER STREET

LYING WITHIN THE SOUTHWEST QUARTER (SW 1/4) OF SECTION 17, TOWNSHIP 22 SOUTH, RANGE 60 EAST, M.D.M., CLARK COUNTY, NEVADA

| RADIAL | BEARING |
|---|---|
| 1 | N29°47'13"E |

| CURVE | DELTA | RADIUS | LENGTH | TANGENT |
|---|---|---|---|---|
| 1 | 61°05'48" | 14.50' | 15.46' | 8.56' |
| 2 | 241°05'48" | 45.50' | 191.46' | -- |

EXHIBIT "A"
PAGE 3 OF 3

G.C. WALLACE COMPANIES
ENGINEERS | PLANNERS | SURVEYORS
1555 S. RAINBOW BOULEVARD · LAS VEGAS, NV 89146
T: 702.804.2000 · F: 702.804.2299 · GCWALLACE.COM

R:\050 (Office)\Projects\754\016F2\exhibits\row-ex.dwg

Case 09-14814-lbr   Claim 71-1 Part 2   Filed 09/25/09   Page 43 of 57



06 - 51550

BOND



## CLARK COUNTY DEPARTMENT OF PUBLIC WORKS
## DEVELOPMENT OF OFF-SITE IMPROVEMENTS
## PERFORMANCE BOND
Bond No. 08842781

That <u>Rhodes Ranch General Partnership</u> as

Principal, of <u>4730 S. Ft. Apache Rd., Ste. 300</u> ,

City of <u>Las Vegas, NV</u> ,

County of <u>Clark</u> ,

and <u>Fidelity and Deposit Company of Maryland</u> as Surety, a corporation incorporated and doing

business under the laws of the State of <u>Maryland</u> and licensed to

conduct, transact and issue Surety business in the State of Nevada, are held and firmly bound

to Clark County, Nevada, as Obligee, in the sum of <u>Ninety Seven Thousand Three Hundred</u>

<u>Four and 92/100</u> ($ <u>97,304.92</u> ) Dollars, for the payment of the sum

well and truly to be made, and jointly and severally bind themselves, their heirs, successors,

assigns, executors, administrators and legal representatives firmly by these presents.

## CONDITIONS

1. Principal, as a condition of the development of the <u>Rhodes Ranch Seeliger Street Phase II</u> project,
entered into a written agreement or agreements ("improvement agreement(s)") with said
Obligee to complete the required improvements specified in said improvement agreement(s)
identified as <u>HTE No.06-51550   off site improvements</u>, dated_____, and _____
_____,dated _____, and are attached hereto and by this
reference incorporated herein.

2. If Principal fully and completely performs all of its obligations required by the said improvement
agreement(s) during the original term thereof, or any extension of said term that may be
granted by the Obligee with or without notice to the Surety, this obligation shall be voided;
otherwise this obligation shall remain in full force and effect.

3. This obligation will continuously remain in full force and effect until and unless all of the
conditions in the said improvement agreement(s) are fulfilled and completed to the satisfaction
of the Obligee.

4. The provisions of this obligation shall be interpreted in manner consistent with the
requirements of the Clark County Code, including, but not limited to, Chapter 30.32, which by
this reference is incorporated herein.

5. Surety hereby waives notice of any changes, modifications, or additions to the obligations
specified in said improvement agreement(s).

Page 1 of 2

6. Any deviations, additions, or modifications to the obligations of the improvement agreement(s) may be made without the consent or knowledge of Surety and without in any way releasing Surety from liability under this bond.

7. In case of default by Principal, Surety may assure and complete or procure completion of the obligations of Principal, and Surety will be subrogated and entitled to all the rights and properties of Principal arising out of the improvement agreement(s).

IN WITNESS WHEREOF, the seal and signature of said Principal is hereto affixed and the corporate seal and the name of the said Surety is hereto affixed and attested by its duly authorized Attorney-in-Fact at _____ Westmont, Illinois _____, Nevada, this February 1 _____, 2007 _____.

PRINCIPAL: Rhodes Ranch General Partnership

BY: _____ for RHODES Ranch GP

State of Nevada
County of Clark

This instrument was acknowledged before me on ___2/8___, 20 07, by _Kevin Karo_ as _____ of _____ (Principal).

_____
NOTARY PUBLIC in and for said County and State

CRYSTAL LYNN HAWKINS
Notary Public State of Nevada
No. 03-85327-1
My appt. exp. Nov. 17, 2007

BY: _Sally Esenberg_ 164222
Brown & Brown Ins. of Nevada Inc.
Nevada Resident Agent
2340 Corporate Circle 2nd Fl.
Henderson NV 89074
NV Lic. # 102444

SURETY: Fidelity and Deposit Company of Maryland

BY: _Melissa Schmidt_ , Attorney-in-Fact
Melissa Schmidt

State of Nevada Illinois
County of Clark DuPage

This instrument was acknowledged before me on ___February 1___, 2007, by Melissa Schmidt as Attorney-in-Fact for Fidelity and Deposit Company of Maryland (Surety).

_Heather D Beck_
NOTARY PUBLIC in and for said County and State. Heather A. Beck

OFFICIAL SEAL
HEATHER A BECK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/05/08

Page 2 of 2

## Power of Attorney
## FIDELITY AND DEPOSIT COMPANY OF MARYLAND
## COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

KNOW ALL MEN BY THESE PRESENTS: That the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, corporations of the State of Maryland, by THEODORE G. MARTINEZ, Vice President, and GERALD F. HALEY, Assistant Secretary, in pursuance of authority granted by Article VI, Section 2, of the By-Laws of said Companies, which are set forth on the reverse side hereof and are hereby certified to be in full force and effect on the date hereof, does hereby nominate, constitute and appoint Peggy FAUST, Kelly A. JACOBS, Stephen T. KAZMER, Bonnie KRUSE, Jennifer J. MCCOMB, Elaine MARCUS, James I. MOORE, Dawn MORGAN, Melissa SCHMIDT, and Irene DRAZ, all of Westmont, Illinois, EACH its true and lawful agent and Attorney-in-Fact, to make, execute, seal and deliver, for, and on its behalf as surety, and as its act and deed: any and all bonds and undertakings, and the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its office in Baltimore, Md., in their own proper persons. This power of attorney revokes that issued on behalf of Peggy FAUST, Kelly A. JACOBS, Stephen T. KAZMER, Bonnie KRUSE, Jennifer J. MCCOMB, Elaine MARCUS, James I. MOORE, Dawn MORGAN, Mary Beth PETERSON, dated March 6, 2003.

The said Assistant Secretary does hereby certify that the extract set forth on the reverse side hereof is a true copy of Article VI, Section 2, of the By-Laws of said Companies, and is now in force.

IN WITNESS WHEREOF, the said Vice-President and Assistant Secretary have hereunto subscribed their names and affixed the Corporate Seals of the said FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, this 24th day of April, A.D. 2006.

ATTEST:                                                    **FIDELITY AND DEPOSIT COMPANY OF MARYLAND**
                                                          **COLONIAL AMERICAN CASUALTY AND SURETY COMPANY**



*Gerald F. Haley*      *Assistant Secretary*      By:  *Theodore G. Martinez*

State of Maryland  } ss:
City of Baltimore  }

On this 24th day of April, A.D. 2006, before the subscriber, a Notary Public of the State of Maryland, duly commissioned and qualified, came THEODORE G. MARTINEZ, Vice President, and GERALD F. HALEY, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, to me personally known to be the individuals and officers described in and who executed the preceding instrument, and they each acknowledged the execution of the same, and being by me duly sworn, severally and each for himself deposeth and saith, that they are the said officers of the Companies aforesaid, and that the seals affixed to the preceding instrument is the Corporate Seals of said Companies, and that the said Corporate Seals and their signatures as such officers were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

*Constance A. Dunn*

Constance A. Dunn                    Notary Public
My Commission Expires:  July 14, 2007

POA-F 036-0013A

### EXTRACT FROM BY-LAWS OF FIDELITY AND DEPOSIT COMPANY OF MARYLAND

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

### EXTRACT FROM BY-LAWS OF COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

### CERTIFICATE

I, the undersigned, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that the Vice-President who executed the said Power of Attorney was one of the additional Vice-Presidents specially authorized by the Board of Directors to appoint any Attorney-in-Fact as provided in Article VI, Section 2, of the respective By-Laws of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990 and of the Board of Directors of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at a meeting duly called and held on the 5th day of May, 1994.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed."

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seals of the said Companies,

this ___1st___ day of ___February___ , ___2007___ .

_George E. Murray_

*Assistant Secretary*

APN: __176-17-310-002__    𝒟 ⑪

HTE #:_06-51550_____

NFM # or MSM # (if applicable) _N/A____

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division

20070313-0005010

Fee: $0.00
N/C Fee: $0.00

03/13/2007        16:09:49
T20070044310
Requestor:
    DEVELOPMENT SERVICES CLARK COUNTY

Debbie Conway          DGI
Clark County Recorder    Pgs: 11

# CLARK COUNTY
## DEPARTMENT OF DEVELOPMENT SERVICES

### OFF-SITE IMPROVEMENTS AGREEMENT

THIS AGREEMENT, made and entered into this ____21ˢᵗ____ day of
_February_____, 20 _07_ , by and between:

_____RHODES RANCH GENERAL PARTNERSHIP_____
whose mailing address is:

_____4730 SOUTH FORT APACHE RD; SUITE #300_____

_____LAS VEGAS, NV 89147_____

_____(702) 873-5338_____

hereinafter referred to as DEVELOPER and CLARK COUNTY, NEVADA, hereinafter
referred to as COUNTY, for construction of off-site improvements at the following location:

Cross Streets:    __WIGWAM AVENUE AND FORT APACHE ROAD__

Assessor's Parcel Number:    __176-17-310-002__

**WHEREAS,** DEVELOPER has submitted a plan to the COUNTY for a

_____ROADWAY IMPROVEMENTS_____
(type of development); and

        **WHEREAS,** the COUNTY requires construction of certain off-site
improvements as part of said development.

        **NOW, THEREFORE,** the parties to this agreement for and in consideration of

1 of 8

the mutual promises herein contained and for other good and valuable considerations, do hereby agree as follows:

1.    OFF-SITE IMPROVEMENTS

The DEVELOPER, at his own cost, shall perform and complete all off-site work and improvements which may consist of, but not limited to, streets, street name signs, traffic signs, sewers, water systems, fire hydrants, curbs, gutters, sidewalks, street lighting, driveways, drainage facilities, accesses, survey monuments,

PER PLAN HTE # 06-$1550

etc., hereinafter referred to as off-site improvements, said off-site improvements shall be constructed in accordance with applicable ordinances, regulations, standards and specifications, and other requirements of CLARK COUNTY, NEVADA.

2.    PLANS APPROVED BY THE DIRECTOR OF DEVELOPMENT SERVICES

No off-site improvements shall commence until:

(a)    off-site improvement plans have been approved by the Director of DEVELOPMENT SERVICES or his authorized representative;

(b)    one-hundred percent (100%) of the plan-check and inspection fees have been paid;

(c)    performance security executed as required by CLARK COUNTY ordinances; and

(d)    an off-site permit has been issued by the Director of DEVELOPMENT SERVICES, or his authorized representative.

3.    NOTICE OF COMMENCEMENT OF CERTAIN WORK

The DEVELOPER shall notify the Director of Development Services no less than 24 hours in advance of the date and hour work on any of the following items is expected to begin, and thereafter if conditions develop to delay the start of work, the DEVELOPER agrees to notify the Director of Development Services of the delay not less than two hours before work is scheduled to begin:

—    Placing sewer, water, gas, power, telephone lines and fire hydrants.

—    Back-filling of sewer, water, gas, power and telephone lines.

—    Placing concrete for curb, gutter, sidewalk, valley gutters, storm drain structures, manholes, street lighting foundations and alley gutters.

2 of 8

    &mdash;    Placing Type I and Type II gravel base course.

    &mdash;    Priming base course.

    &mdash;    Placing street lighting and burn testing.

    &mdash;    Placing street name signs and traffic control signs.

4.    <u>APPROVAL OF WORK AFTER INSPECTION</u>

    (a)    Whenever the Director of Development Services or his duly authorized representative inspects portion of work as mentioned hereinbefore, and finds the work performed to be in a satisfactory condition for inclusion in the completed project, the Director of Development Services or his duly authorized representative shall issue a statement of inspection which shall permit the DEVELOPER to perform the next phase of the construction. Ordinarily, not less than one continuous block of any one of the items of work mentioned will be approved.

    (b)    Inspection and approval of any item of work shall not forfeit the right of the COUNTY to require the corrections of quality, workmanship or materials at any time prior to the final acceptance of the project by the Director of Development Services, although previously approved by an oversight.

    (c)    Nothing herein shall relieve the DEVELOPER of the responsibility for proper construction of the off-site improvements and DEVELOPER shall maintain said improvements until the work has been accepted by the Director of Development Services.

5.    <u>ADJUSTMENT TO EXISTING UTILITIES AND COST THEREOF</u>

The DEVELOPER shall, at its sole expense, provide for adjustments necessary to all existing utilities because of the work required by this agreement.

6.    <u>FULL COMPLIANCE WITH COUNTY REQUIREMENTS</u>

The DEVELOPER shall perform and complete all off-site improvements in accordance with the regulations, specifications, and ordinances of the said County of Clark, and the construction plans approved by Clark County Development Services Department.

The DEVELOPER shall obtain all required permits from other County, State, and Federal agencies, including but not limited to Clark County Health District, Nevada Department of Environmental Protection, and United States Army Corps of Engineers.

<div align="center">3 of 8</div>

The COUNTY shall have the right to require corrections to the construction plans by the DEVELOPER at any time before release of the bond (performance bond, cash deposit, or agreement in lieu of bond) required herein, of any item or items contained in this agreement which do not conform to COUNTY standard specifications, laws, regulations or ordinances, even though the plans for the item in question may have been approved by the Director of Development Services.

The DEVELOPER shall start said off-site improvements upon receipt of a COUNTY-approved off-site permit and said off-site improvements shall be completed prior to expiration of said permit in accordance with the required ordinances.

In the event the DEVELOPER fails to complete said improvements within said period or in the event the DEVELOPER in the COUNTY's opinion has created a safety hazard, the COUNTY, at its option, may proceed to complete said improvements at the expense of the DEVELOPER. The COUNTY may use the required performance bond as provided for hereinafter.

7.   OTHER CONDITIONS AND REQUIREMENTS

The DEVELOPER further agrees that, in addition to the above requirements, any and/or all such conditions, stipulations and agreements made by the DEVELOPER and the Board of County Commissioners and/or County Planning Commission of Clark County shall be fully performed.

The DEVELOPER further agrees that all work is to be performed by a qualified contractor licensed to do business in the State of Nevada and the County of Clark.

The DEVELOPER shall maintain, protect and take care of all work areas for the project, including any adjacent existing improvements, until its completion and acceptance by Clark County. Maintenance of any inhabited area of the development, and the adjacent streets and/or neighborhoods, shall include, but not be limited to, sweeping of the streets and keeping the gutters free of dirt and debris.

During move-in, construction and move-off, the DEVELOPER shall keep the site free and clear from dangerous accumulation of rubbish and debris and shall maintain sufficient and proper barricades, lights, etc., in accordance with the latest manual on the placement of traffic control devices accepted by the Department of Development Services for the protection of the public. Also, after excavation or placement of gravel, if the sub-grade and/or gravel base material is left exposed and in the opinion of the Director of Development Services is not properly maintained, thus causing either a rough riding surface or a dust problem, the Director of Development Services may require the DEVELOPER to do whatever is necessary to provide an adequate travel-way. If a detour is needed, the Director of Development Services shall determine to what extent it shall be maintained, which

4 of 8

shall include the placing of temporary paving, if it is to be used for an extended period of time.

Final acceptance of the work will not be made by the COUNTY until the area (falling under this agreement) and adjacent property has been cleared of all rubbish, surplus materials and equipment resulting from the contractor's operations, to the satisfaction of the Director of Development Services.

8.    <u>LIABILITY</u>

The DEVELOPER shall indemnify, defend, and hold harmless the COUNTY, its officers, agents, volunteers, and employees, against and from any and all liability, loss, damage, claims, fines, demands, causes of action, costs, expenses, and judgments of whatsoever nature, including but not limited to reasonable costs of investigation, reasonable attorney's fees and expenses, all reasonable expert witness fees and expenses, and all court or arbitration or other alternative dispute resolution costs which result from injury to or death of any persons whomsoever, and/or against and from damage to or loss or destruction of property whatsoever when such injury death, loss, destruction or damage is' due to or arises in connection with or as a result of any work done by the DEVELOPER in connection with the construction of the off-site improvements; and/or arises of or in connection with DEVELOPER's performance or failure to perform the terms and conditions of this agreement. This Section 8 survives termination or completion of this agreement.

9.    <u>PLAN REQUIREMENTS ON COMPLETION OF IMPROVEMENTS</u>

Upon completion of all the off-site improvements within the COUNTY right-of-way required hereby and prior to release of any performance security, the DEVELOPER shall furnish the Director of Development Services with an as-built plan which shall accurately indicate, by lettered dimensions, the location of all manholes, the location size and depth of all sewer mains, underground water, power, gas, and other lines, with street plans and profiles for the same, including laterals and "Y's" for connection of house service lines.

10.    <u>WARRANTY</u>

The DEVELOPER is responsible should any original or developed defects or failures appear within a period of one year from the date of acceptance of the work by the COUNTY. The DEVELOPER shall, at his own expense, make good such defects and failures and make all replacements and adjustments required, within thirty (30) days after being notified by the COUNTY to do so. All repairs shall be subject to the approval of the Director of Development Services and/or the Director of Public Works.

This agreement does not limit or relieve DEVELOPER from any other obligation or responsibility which the DEVELOPER may otherwise have as a result of the street improvements, including any damages or latent defects which may occur beyond the warranty period specified above. Furthermore, DEVELOPER, at all times, is not relieved of any obligation or responsibility it may have by law including but not limited to damages for latent deficiencies, injury to real or personal property or injury to or wrongful death of a person, (N.R.S. 11.204).

11.    REQUIREMENTS OF PERFORMANCE BOND OR OTHER SECURITY

DEVELOPER shall furnish without cost to the COUNTY a surety and performance bond, cash deposit or agreement in lieu of bond for the full cost of said off-site improvements in favor of the COUNTY conditioned upon the DEVELOPER completing said off-site improvements within the time period prescribed by this agreement. Also, in the event the COUNTY exercises its option to complete said off-site improvements; that said bond, cash deposit or agreement in lieu of bond shall be used for the payment of the costs of completion of said off site improvements by the COUNTY in case the DEVELOPER fails to do so within said time period.

If the construction or installation of any off-site improvements or facilities for which a bond, cash deposit or agreement in lieu of bond is posted are not completed within the time frame of the off-site permit issued for the development; or if the DEVELOPER has suspended work and has failed to provide continued construction during the past 60 days; or if in the event the DEVELOPER, in the COUNTY's opinion, has created a safety hazard; or if such construction is not in accordance with applicable standards and specifications as prescribed by law, then, in either or any such event, the COUNTY may, at its option, proceed to complete said off site improvements at the expense of the DEVELOPER under this bond as provided for hereinafter.

That DEVELOPER acknowledges that the bond provided for in this agreement to construct the off-site improvements is only based upon an estimate of their cost by the Engineer of the County and in the event that actual cost of said off-site improvements shall exceed such sum, DEVELOPER is in no way relieved by this agreement from paying the entire amount of such excess.

Any application for release of said bond or cash deposit upon the completion of the off-site improvements by the DEVELOPER shall not be granted unless accompanied by a written certificate from the Director of Development Services stating that all requirements hereof have been satisfactorily completed in accordance with the terms of this agreement.

6 of 8