12.    CERTIFICATE OF OCCUPANCY

No certificates of occupancy shall be granted until such time as the off-site improvements have been completed to the satisfaction of the Director of Development Services, and in accordance with this agreement. The granting of a certificate of occupancy does not relieve DEVELOPER of its obligations in this agreement.

The granting of a certificate of occupancy does not imply that the off-site improvements have been properly completed nor authorize the release of the performance bond or other security.

13.    CERTIFICATE OF RELEASE

Upon final acceptance, by the Director of Development Services, of all of the off-site improvements required to be constructed by DEVELOPER as herein provided, DEVELOPER shall be issued a certificate of release of said performance bond or cash deposit, which shall be issued by the Director of Development Services.

14.    NO THIRD PARTY BENEFICIARY

Any inspections or subsequent approvals undertaken by the COUNTY pursuant to express or implied terms of this agreement are undertaken solely to insure compliance with the terms of this agreement and are not undertaken for the benefit of any individual or group of individuals as members of the public. It is not intended by any of the provisions of any part of this agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this agreement to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this agreement. Provisions in this agreement dealing with inspections, approvals or changes requested or made do not expand the COUNTY's general law duties.

15.    ASSIGNMENTS

DEVELOPER cannot assign this agreement, in whole or in part, or any rights herein granted, without the written consent of the COUNTY and it is agreed that any attempted transfer or assignment of this agreement or any of the rights herein granted, whether voluntary, by operation of law, or otherwise, without such consent in writing, shall be absolutely void at the option of the COUNTY.

16.    AGREEMENT TO BE RECORDED

The DEVELOPER agrees that this agreement will be recorded upon the land described in Exhibit "A" and this agreement shall also be binding upon and inure to

7 of 8

the benefit of the parties hereto, their heirs, executors, administrators, successors, and assigns. DEVELOPER and any heirs, executors, administrators, successors and assigns, if any, shall be jointly and severally liable for DEVELOPER's obligations herein.

17.    WAIVER

None of the conditions of this agreement shall be considered waived by either party unless such waiver is in writing and signed by both parties. No such waiver shall be a waiver of any past or future default, breach, or modification of any of the conditions of the agreement expressly stipulated in such waiver.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and official seals.

DEVELOPER:

_____
Sign

KEVIN KARO    FOR RHODES RANCH G.P.
Print Name

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before me this 21st

day of _February_, 20 0 7 by

KEVIN KARO

RHODES RANCH G.P.
(Developer)

_____
NOTARY PUBLIC in and for said County and State

NOTARY STAMP:

> CRYSTAL LYNN HAWKINS
> Notary Public State of Nevada
> No. 03-85327-1
> My appt. exp. Nov. 17, 2007

**CORPORATE CERTIFICATE**

I, _____,
certify that I am the Secretary of the Corporation named as Developer in the foregoing document; that

_____ was then President/Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its government body and is within the scope of its corporate powers.

_____
SECRETARY

– FOR COUNTY USE ONLY –

COUNTY OF CLARK, a political subdivision of the State of Nevada

BY _____
ROBERT B. THOMPSON, Assistant Director
DEPARTMENT OF DEVELOPMENT SERVICES

STATE OF NEVADA
COUNTY OF CLARK

Signed or attested before me on this 7th day of

_March_, 20 07,

by ROBERT B. THOMPSON.

_____
NOTARY PUBLIC in and for said County and State

NOTARY STAMP:

> MARK MIKOLAITIS
> Notary Public State of Nevada
> No. 06-103285-1
> My appt. exp. Feb. 1, 2010

8 of 8

 **G. C. WALLACE COMPANIES**
ENGINEERS | PLANNERS | SURVEYORS

**APN 176-17-399-001, 002 & 005, AND APN 176-17-801-019**

## EXHIBIT "A"

**EXPLANATION:**   THIS DESCRIPTION REPRESENTS THE LIMITS OF THE DEVELOPER IMPROVED AREA FOR BOND ESTIMATE IN SUPPORT OF THE "RHODES RANCH PARCEL 20" PROJECT.

### DESCRIPTION

A PORTION OF SEELIGER STREET AS SHOWN BY MAP THEREOF IN BOOK 132, PAGE 41 OF PLATS IN THE CLARK COUNTY, NEVADA, RECORDER'S OFFICE, LYING WITHIN THE SOUTHWEST QUARTER (SW 1/4) OF SECTION 17, TOWNSHIP 22 SOUTH, RANGE 60 EAST, M.D.M., CLARK COUNTY, NEVADA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF THE NORTHEAST QUARTER (NE 1/4) OF THE SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 17;

THENCE ALONG THE NORTH LINE THEREOF, NORTH 89°26'20" WEST, 660.67 FEET TO THE POINT OF BEGINNING ON A LINE 30.00 FEET EAST OF AND PERPENDICULAR TO THE WEST LINE OF THE EAST HALF (E 1/2) OF THE NORTHEAST QUARTER (NE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 17;

THENCE PARALLEL WITH THE WEST LINE OF THE EAST HALF (E 1/2) OF THE NORTHEAST QUARTER (NE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 17, SOUTH 00°53'01" WEST, 0.17 FEET TO A POINT ON A LINE 30.00 FEET EAST OF AND PERPENDICULAR TO THE WEST LINE OF THE EAST HALF (E 1/2) OF THE SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 17;

THENCE PARALLEL WITH THE WEST LINE OF THE EAST HALF (E 1/2) OF THE SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 17, SOUTH 00°53'14" WEST, 655.92 FEET TO A POINT ON THE SOUTH LINE OF THE NORTH HALF (N 1/2) OF THE SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 17;

THENCE ALONG SAID SOUTH LINE, NORTH 89°16'10" WEST, 60.00 FEET TO A POINT ON A LINE 30.00 FEET WEST OF AND PERPENDICULAR TO THE WEST LINE OF THE EAST HALF (E 1/2) OF THE SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 17;

PAGE 1 OF 3

Printed by dkazio at 4/21/2009 11:46:03 AM

THENCE PARALLEL WITH THE WEST LINE OF THE EAST HALF (E 1/2) OF THE
SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID
SECTION 17, NORTH 00°53'14" EAST, 656.09 FEET TO A POINT ON A LINE 30.00 FEET
WEST OF AND PERPENDICULAR TO THE EAST HALF (E 1/2) OF THE NORTHEAST
QUARTER (NE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 17;

THENCE PARALLEL WITH THE WEST LINE OF THE EAST HALF (E 1/2) OF THE
NORTHEAST QUARTER (NE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID
SECTION 17, NORTH 00°53'01" EAST, 1091.15 FEET;

THENCE CURVING TO THE LEFT ALONG AN ARC HAVING A RADIUS OF 14.50 FEET,
CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 61°05'48", AN ARC
LENGTH OF 15.46 FEET TO POINT OF REVERSE CURVATURE THROUGH WHICH A
RADIAL LINE BEARS NORTH 29°47'13" EAST;

THENCE CURVING TO THE RIGHT ALONG AN ARC HAVING A RADIUS OF 45.50 FEET,
CONCAVE SOUTHEASTERLY, THROUGH A CENTRAL ANGLE OF 241°05'48", AN ARC
LENGTH OF 191.46 FEET TO A POINT ON A LINE 30 FEET EAST OF AND
PERPENDICULAR TO THE EAST HALF (E 1/2) OF THE NORTHEAST QUARTER
(NE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 17;

THENCE PARALLEL WITH THE EAST LINE OF THE EAST HALF (E 1/2) OF THE
NORTHEAST QUARTER (NE 1/4) OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID
SECTION 17, SOUTH 00°53'01" WEST, 1143.51 FEET TO THE **POINT OF BEGINNING**.

CONTAINING 2.58 ACRES.

### BASIS OF BEARINGS
SOUTH 00°29'33" WEST, BEING THE BEARING OF THE EAST LINE OF THE NORTHEAST
QUARTER (NE1/4) OF THE SOUTHWEST QUARTER (SW1/4) OF SECTION 17, TOWNSHIP
22 SOUTH, RANGE 60 EAST, M.D.M., CLARK COUNTY, NEVADA AS SHOWN BY MAP
THEREOF IN BOOK 132, PAGE 41 OF PLATS IN THE CLARK COUNTY, NEVADA
RECORDER'S OFFICE.

R:\050 (Office)\Projects\754\016F2\legal\row-ex.doc      PAGE 2 OF 3
3/6/2007  By: OMS Ckd. By: ss

6655 SOUTH CIMARRON ROAD. / LAS VEGAS, NEVADA 89113 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-4379
SUMMERLIN OFFICE FAX: (702) 804-2295 • RAINBOW OFFICE FAX: (702) 804-2299

Printed by dkazio at 4/21/2009 11:46:03 AM



APN 176-17-399-001, 002 & 005, AND APN 176-17-801-019

**SEELIGER STREET**

LYING WITHIN THE SOUTHWEST QUARTER (SW 1/4) OF SECTION 17,
TOWNSHIP 22 SOUTH, RANGE 60 EAST, M.D.M., CLARK COUNTY, NEVADA

| RADIAL | BEARING |
|--------|---------|
| 1 | N29°47'13"E |

| CURVE | DELTA | RADIUS | LENGTH | TANGENT |
|-------|-------|--------|--------|---------|
| 1 | 61°05'48" | 14.50' | 15.46' | 8.56' |
| 2 | 241°05'48" | 45.50' | 191.46' | |

EXHIBIT "A"
PAGE 3 OF 3

G.C. WALLACE COMPANIES
ENGINEERS | PLANNERS | SURVEYORS
1555 S. RAINBOW BOULEVARD · LAS VEGAS NV 89146
T: 702.804.2000 · F: 702.804.2299 · GCWALLACE.COM

R:\050 (Office)\Projects\754\016F2\exhibits\row-ex.dwg

·Case 09-14814-lbr    Claim 71-1 Part 3    Filed 09/25/09    Page 1 of 52
06-37497
BOND





**CLARK COUNTY DEPARTMENT OF PUBLIC WORKS**
**DEVELOPMENT OF OFF-SITE IMPROVEMENTS**
**PERFORMANCE BOND**
08840999

That <u>Rhodes Ranch General Partnership</u> _____ as

Principal, of <u>4730 S. Ft. Apache – #300</u> _____ ,

City of <u>Las Vegas, NV  89147</u> _____ ,

County of <u>Clark</u> _____ , _____

and <u>~~Fidelity and Deposit Company~~</u>

<u>~~of Maryland~~</u> _____ as Surety, a corporation incorporated and doing

business under the laws of the State of _____<u>Maryland</u>_____ and licensed to

conduct, transact and issue Surety business in the State of Nevada, are held and firmly bound

to Clark County, Nevada, as Obligee, in the sum of <u>three hundred eighty nine thousand four</u>

<u>hundred fifty five and 31/100</u> ($ <u>389,455.31</u> ) Dollars, for the payment of the sum

well and truly to be made, and jointly and severally bind themselves, their heirs, successors,

assigns, executors, administrators and legal representatives firmly by these presents.

**CONDITIONS**

Unit 11

1. Principal, as a condition of the development of the <u>Rhodes Ranch Parcel 10 –</u> project,
   entered into a written agreement or agreements ("improvement agreement(s)") with said
   Obligee to complete the required improvements specified in said improvement agreement(s)
   identified as <u>Offsite Improvements HTE # 06-37497</u> , dated_____ , and _____
   _____ ,dated _____ , and are attached hereto and by this
   reference incorporated herein.

2. If Principal fully and completely performs all of its obligations required by the said improvement
   agreement(s) during the original term thereof, or any extension of said term that may be
   granted by the Obligee with or without notice to the Surety, this obligation shall be voided;
   otherwise this obligation shall remain in full force and effect.

3. This obligation will continuously remain in full force and effect until and unless all of the
   conditions in the said improvement agreement(s) are fulfilled and completed to the satisfaction
   of the Obligee.

4. The provisions of this obligation shall be interpreted in manner consistent with the
   requirements of the Clark County Code, including, but not limited to, Chapter 30.32, which by
   this reference is incorporated herein.

5. Surety hereby waives notice of any changes, modifications, or additions to the obligations
   specified in said improvement agreement(s).

Page 1 of 2

6. Any deviations, additions, or modifications to the obligations of the improvement agreement(s) may be made without the consent or knowledge of Surety and without in any way releasing Surety from liability under this bond.

7. In case of default by Principal, Surety may assure and complete or procure completion of the obligations of Principal, and Surety will be subrogated and entitled to all the rights and properties of Principal arising out of the improvement agreement(s).

IN WITNESS WHEREOF, the seal and signature of said Principal is hereto affixed and the corporate seal and the name of the said Surety is hereto affixed and attested by its duly authorized Attorney-in-Fact at ___Westmont, IL_____, ~~November~~ this ___September 18_____, ___2006_____.

Rhodes Ranch
PRINCIPAL: General Partnership

BY: _____

State of Nevada
County of Clark

This instrument was acknowledged before
me on ___October 2nd___, 20 06,
by ___Kevin Lavo___ as
___V.P. of Finance___ of
___Rhodes Ranch G.P.___ (Principal).

NOTARY PUBLIC in and for said County and
State

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
AUGUSTA S. YAMAMOTO
Appt. No. 03-82552-1
My Appt. Expires June 24, 2007

BY: _____
Constance B Cantin , Nevada Resident Agent

Fidelity and Deposit
SURETY: Company of Maryland

BY: _____
Peggy Faust           , Attorney-in-Fact

State of ~~Nevada~~ ILLINOIS
County of ~~Clark~~ DUPAGE

This instrument was acknowledged before
me on ___September 18___, 20 06,
by ___Peggy Faust___ as Attorney-
in-Fact for Fidelity and Deposit (Surety).
Company of Maryland

NOTARY PUBLIC in and for said County and
State.

OFFICIAL SEAL
IRENE DIAZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/14/07

Brown & Brown Insurance of NV
2340 Corporate Circle
Henderson, NV   89074

Page 2 of 2

Printed by dkazio at 4/21/2009 11:45:38 AM

## Power of Attorney
### FIDELITY AND DEPOSIT COMPANY OF MARYLAND
### COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

KNOW ALL MEN BY THESE PRESENTS: That the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, corporations of the State of Maryland, by THEODORE G. MARTINEZ, Vice President, and GERALD F. HALEY, Assistant Secretary, in pursuance of authority granted by Article VI, Section 2, of the By-Laws of said Companies, which are set forth on the reverse side hereof and are hereby certified to be in full force and effect on the date hereof, does hereby nominate, constitute and appoint Peggy FAUST, Kelly A. JACOBS, Stephen T. KAZMER, Bonnie KRUSE, Jennifer J. MCCOMB, Elaine MARCUS, James I. MOORE, Dawn MORGAN, Melissa SCHMIDT and Irene DIAZ, all of Westmont, Illinois, EACH its true and lawful agent and Attorney-in-Fact, to make, execute, seal and deliver, for, and on its behalf as surety, and as its act and deed: any and all bonds and undertakings, and the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its office in Baltimore, Md., in their own proper persons. This power of attorney revokes that issued on behalf of Peggy FAUST, Kelly A. JACOBS, Stephen T. KAZMER, Bonnie KRUSE, Jennifer J. MCCOMB, Elaine MARCUS, James I. MOORE, Dawn MORGAN, Mary Beth PETERSON, dated March 6, 2003.

The said Assistant Secretary does hereby certify that the extract set forth on the reverse side hereof is a true copy of Article VI, Section 2, of the By-Laws of said Companies, and is now in force.

IN WITNESS WHEREOF, the said Vice-President and Assistant Secretary have hereunto subscribed their names and affixed the Corporate Seals of the said FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, this 24th day of April, A.D. 2006.

ATTEST:                                    **FIDELITY AND DEPOSIT COMPANY OF MARYLAND**
                                           **COLONIAL AMERICAN CASUALTY AND SURETY COMPANY**



*Gerald F. Haley    Assistant Secretary*        By: *Theodore G. Martinez*

State of Maryland } ss:
City of Baltimore }

On this 24th day of April, A.D. 2006, before the subscriber, a Notary Public of the State of Maryland, duly commissioned and qualified, came THEODORE G. MARTINEZ, Vice President, and GERALD F. HALEY, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, to me personally known to be the individuals and officers described in and who executed the preceding instrument, and they each acknowledged the execution of the same, and being by me duly sworn, severally and each for himself deposeth and saith, that they are the said officers of the Companies aforesaid, and that the seals affixed to the preceding instrument is the Corporate Seals of said Companies, and that the said Corporate Seals and their signatures as such officers were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

*Constance A. Dunn*

Constance A. Dunn                          Notary Public
My Commission Expires: July 14, 2007

POA-F 036-0013A

### EXTRACT FROM BY-LAWS OF FIDELITY AND DEPOSIT COMPANY OF MARYLAND

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

### EXTRACT FROM BY-LAWS OF COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

### CERTIFICATE

I, the undersigned, Assistant Secretary of the  FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that the Vice-President who executed the said Power of Attorney was one of the additional Vice-Presidents specially authorized by the Board of Directors to appoint any Attorney-in-Fact as provided in Article VI, Section 2, of the respective By-Laws of the  FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the  FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990 and of the Board of Directors of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at a meeting duly called and held on the 5th day of May, 1994.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed."

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seals of the said Companies,

this ___18th_____ day of ___September_____, ___2006____ .

_Assistant Secretary_

06-37497
OSIA

APN: _176-08-201-011_

HTE #: _06-37497_

(D9)

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division

20061121-0002436

Fee: $0.00
H/C Fee: $0.00

11/21/2006                    11:58:27
T20060205814
Requestor:
  DEVELOPMENT SERVICES CLARK COUNTY

Charles Harvey               ARO
Clark County Recorder    Pgs: 9

# CLARK COUNTY
## DEPARTMENT OF DEVELOPMENT SERVICES

### OFF-SITE IMPROVEMENTS AGREEMENT

THIS AGREEMENT, made and entered into this _13th_ day of _NOVEMBER_,
20 _06_, by and between: _Rhodes Ranch GP_
whose mailing address is: _4730 S Fort Apache_
_Suite 300_
_Las Vegas, NV 89147_

hereinafter referred to as DEVELOPER and CLARK COUNTY, NEVADA, hereinafter
referred to as COUNTY, for construction of off-site improvements at the following location:

Cross Streets: _Quarter Horse and Pine Shores_

Assessor's Parcel Number: _176-08-201-011_

WHEREAS, DEVELOPER has submitted a plan to the COUNTY for a
_offsite Improvements_
(type of development); and

WHEREAS, the COUNTY requires construction of certain off-site
improvements as part of said development.

NOW, THEREFORE, the parties to this agreement for and in consideration of
the mutual promises herein contained and for other good and valuable considerations, do

1 of 8

hereby agreed as follows:

1.    OFF-SITE IMPROVEMENTS

The DEVELOPER, at his own cost, shall perform and complete all off-site work and improvements which may consist of, but not limited to, streets, street name signs, traffic signs, sewers, water systems, fire hydrants, curbs, gutters, sidewalks, street lighting, driveways, drainage facilities, accesses, survey monuments,

_Per    HTF 06. 37497_

etc., hereinafter referred to as off-site improvements, said off-site improvements shall be constructed in accordance with applicable ordinances, regulations, standards and specifications, and other requirements of CLARK COUNTY, NEVADA.

2.    PLANS APPROVED BY THE DIRECTOR OF DEVELOPMENT SERVICES

No off-site improvements shall commence until:

(a)    off-site improvement plans have been approved by the Director of DEVELOPMENT SERVICES or his authorized representative;

(b)    one-hundred percent (100%) of the plan-check and inspection fees have been paid;

(c)    performance security executed as required by CLARK COUNTY ordinances; and

(d)    an off-site permit has been issued by the Director of DEVELOPMENT SERVICES, or his authorized representative.

3.    NOTICE OF COMMENCEMENT OF CERTAIN WORK

The DEVELOPER shall notify the Director of Development Services no less than 24 hours in advance of the date and hour work on any of the following items is expected to begin, and thereafter if conditions develop to delay the start of work, the DEVELOPER agrees to notify the Director of Development Services of the delay not less than two hours before work is scheduled to begin:

--    Placing sewer, water, gas, power, telephone lines and fire hydrants.

--    Back-filling of sewer, water, gas, power and telephone lines.

--    Placing concrete for curb, gutter, sidewalk, valley gutters, storm drain structures, manholes, street lighting foundations and alley gutters.

2 of 8

    --    Placing Type I and Type II gravel base course.

    --    Priming base course.

    -- .    Placing street lighting and burn testing.

    --    Placing street name signs and traffic control signs.

4.    **APPROVAL OF WORK AFTER INSPECTION**

    (a)    Whenever the Director of Development Services or his duly authorized representative inspects portion of work as mentioned hereinbefore, and finds the work performed to be in a satisfactory condition for inclusion in the completed project, the Director of Development Services or his duly authorized representative shall issue a statement of inspection which shall permit the DEVELOPER to perform the next phase of the construction. Ordinarily, not less than one continuous block of any one of the items of work mentioned will be approved.

    (b)    Inspection and approval of any item of work shall not forfeit the right of the COUNTY to require the corrections of quality, workmanship or materials at any time prior to the final acceptance of the project by the Director of Development Services, although previously approved by an oversight.

    (c)    Nothing herein shall relieve the DEVELOPER of the responsibility for proper construction of the off-site improvements and DEVELOPER shall maintain said improvements until the work has been accepted by the Director of Development Services.

5.    **ADJUSTMENT TO EXISTING UTILITIES AND COST THEREOF**

    The DEVELOPER shall, at its sole expense, provide for adjustments necessary to all existing utilities because of the work required by this agreement.

6.    **FULL COMPLIANCE WITH COUNTY REQUIREMENTS**

    The DEVELOPER shall perform and complete all off-site improvements in accordance with the regulations, specifications, and ordinances of the said County of Clark, and the construction plans approved by Clark County Development Services Department.

    The DEVELOPER shall obtain all required permits from other County, State, and Federal agencies, including but not limited to Clark County Health District, Nevada Department of Environmental Protection, and United States Army Corps of Engineers.

The COUNTY shall have the right to require corrections to the construction plans by
the DEVELOPER at any time before release of the bond (performance bond, cash
deposit, or agreement in lieu of bond) required herein, of any item or items
contained in this agreement which do not conform to COUNTY standard
specifications, laws, regulations or ordinances, even though the plans for the item in
question may have been approved by the Director of Development Services.

The DEVELOPER shall start said off-site improvements upon receipt of a COUNTY-
approved off-site permit and said off-site improvements shall be completed prior to
expiration of said permit in accordance with the required ordinances.

In the event the DEVELOPER fails to complete said improvements within said
period or in the event the DEVELOPER in the COUNTY's opinion has created a
safety hazard, the COUNTY, at its option, may proceed to complete said
improvements at the expense of the DEVELOPER. The COUNTY may use the
required performance bond as provided for hereinafter.

## 7.   OTHER CONDITIONS AND REQUIREMENTS

The DEVELOPER further agrees that, in addition to the above requirements, any
and/or all such conditions, stipulations and agreements made by the DEVELOPER
and the Board of County Commissioners and/or County Planning Commission of
Clark County shall be fully performed.

The DEVELOPER further agrees that all work is to be performed by a qualified
contractor licensed to do business in the State of Nevada and the County of Clark.

The DEVELOPER shall maintain, protect and take care of all work areas for the
project, including any adjacent existing improvements, until its completion and
acceptance by Clark County.   Maintenance of any inhabited area of the
development, and the adjacent streets and/or neighborhoods, shall include, but not
be limited to, sweeping of the streets and keeping the gutters free of dirt and debris.

During move-in, construction and move-off, the DEVELOPER shall keep the site
free and clear from dangerous accumulation of rubbish and debris and shall
maintain sufficient and proper barricades, lights, etc., in accordance with the latest
manual on the placement of traffic control devices accepted by the Department of
Development Services for the protection of the public. Also, after excavation or
placement of gravel, if the sub-grade and/or gravel base material is left exposed and
in the opinion of the Director of Development Services is not properly maintained,
thus causing either a rough riding surface or a dust problem, the Director of
Development Services may require the DEVELOPER to do whatever is necessary
to provide an adequate travel-way. If a detour is needed, the Director of
Development Services shall determine to what extent it shall be maintained, which

4 of 8

shall include the placing of temporary paving, if it is to be used for an extended period of time.

Final acceptance of the work will not be made by the COUNTY until the area (falling under this agreement) and adjacent property has been cleared of all rubbish, surplus materials and equipment resulting from the contractor's operations, to the satisfaction of the Director of Development Services.

8.   **LIABILITY**

The DEVELOPER shall indemnify, defend, and hold harmless the COUNTY, its officers, agents, volunteers, and employees, against and from any and all liability, loss, damage, claims, fines, demands, causes of action, costs, expenses, and judgments of whatsoever nature, including but not limited to reasonable costs of investigation, reasonable attorney's fees and expenses, all reasonable expert witness fees and expenses, and all court or arbitration or other alternative dispute resolution costs which result from injury to or death of any persons whomsoever, and/or against and from damage to or loss or destruction of property whatsoever when such injury death, loss, destruction or damage is due to or arises in connection with or as a result of any work done by the DEVELOPER in connection with the construction of the off-site improvements, and/or arises of or in connection with DEVELOPER's performance or failure to perform the terms and conditions of this agreement.   This Section 8 survives termination or completion of this agreement.

9.   **PLAN REQUIREMENTS ON COMPLETION OF IMPROVEMENTS**

Upon completion of all the off-site improvements within the COUNTY right-of-way required hereby and prior to release of any performance security, the DEVELOPER shall furnish the Director of Development Services with an as-built plan which shall accurately indicate, by lettered dimensions, the location of all manholes, the location size and depth of all sewer mains, underground water, power, gas, and other lines, with street plans and profiles for the same, including laterals and "Y's" for connection of house service lines.

10.   **WARRANTY**

The DEVELOPER is responsible should any original or developed defects or failures appear within a period of one year from the date of acceptance of the work by the COUNTY. The DEVELOPER shall, at his own expense, make good such defects and failures and make all replacements and adjustments required, within thirty (30) days after being notified by the COUNTY to do so. All repairs shall be subject to the approval of the Director of Development Services and/or the Director of Public Works.

Printed by dkazio at 4/21/2009 11:45:12 AM

This agreement does not limit or relieve DEVELOPER from any other obligation or responsibility which the DEVELOPER may otherwise have as a result of the street improvements, including any damages or latent defects which may occur beyond the warranty period specified above. Furthermore, DEVELOPER, at all times, is not relieved of any obligation or responsibility it may have by law including but not limited to damages for latent deficiencies, injury to real or personal property or injury to or wrongful death of a person, (N.R.S. 11.204).

11.    REQUIREMENTS OF PERFORMANCE BOND OR OTHER SECURITY

DEVELOPER shall furnish without cost to the COUNTY a surety and performance bond, cash deposit or agreement in lieu of bond for the full cost of said off-site improvements in favor of the COUNTY conditioned upon the DEVELOPER. completing said off-site improvements within the time period prescribed by this agreement. Also, in the event the COUNTY exercises its option to complete said off-site improvements, that said bond, cash deposit or agreement in lieu of bond shall be used for the payment of the costs of completion of said off site improvements by the COUNTY in case the DEVELOPER fails to do so within said time period.

If the construction or installation of any off-site improvements or facilities for which a bond, cash deposit or agreement in lieu of bond is posted are not completed within the time frame of the off-site permit issued for the development; or if the DEVELOPER has suspended work and has failed to provide continued construction during the past 60 days; or if in the event the DEVELOPER, in the COUNTY's opinion, has created a safety hazard; or if such construction is not in accordance with applicable standards and specifications as prescribed by law, then, in either or any such event, the COUNTY may, at its option, proceed to complete said off site improvements at the expense of the DEVELOPER under this bond as provided for hereinafter.

That DEVELOPER acknowledges that the bond provided for in this agreement to construct the off-site improvements is only based upon an estimate of their cost by the Engineer of the County and in the event that actual cost of said off-site improvements shall exceed such sum, DEVELOPER is in no way relieved by this agreement from paying the entire amount of such excess.

Any application for release of said bond or cash deposit upon the completion of the off-site improvements by the DEVELOPER shall not be granted unless accompanied by a written certificate from the Director of Development Services stating that all requirements hereof have been satisfactorily completed in accordance with the terms of this agreement.

6 of 8

## 12.   CERTIFICATE OF OCCUPANCY

No certificates of occupancy shall be granted until such time as the off-site improvements have been completed to the satisfaction of the Director of Development Services, and in accordance with this agreement. The granting of a certificate of occupancy does not relieve DEVELOPER of its obligations in this agreement.

The granting of a certificate of occupancy does not imply that the off-site improvements have been properly completed nor authorize the release of the performance bond or other security.

## 13.   CERTIFICATE OF RELEASE

Upon final acceptance, by the Director of Development Services, of all of the off-site improvements required to be constructed by DEVELOPER as herein provided, DEVELOPER shall be issued a certificate of release of said performance bond or cash deposit, which shall be issued by the Director of Development Services.

## 14.   NO THIRD PARTY BENEFICIARY

Any inspections or subsequent approvals undertaken by the COUNTY pursuant to express or implied terms of this agreement are undertaken solely to insure compliance with the terms of this agreement and are not undertaken for the benefit of any individual or group of individuals as members of the public. It is not intended by any of the provisions of any part of this agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this agreement to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this agreement. Provisions in this agreement dealing with inspections, approvals or changes requested or made do not expand the COUNTY's general law duties.

## 15.   ASSIGNMENTS

DEVELOPER cannot assign this agreement, in whole or in part, or any rights herein granted, without the written consent of the COUNTY and it is agreed that any attempted transfer or assignment of this agreement or any of the rights herein granted, whether voluntary, by operation of law, or otherwise, without such consent in writing, shall be absolutely void at the option of the COUNTY.

## 16.   AGREEMENT TO BE RECORDED

The DEVELOPER agrees that this agreement will be recorded upon the land described in Exhibit "A" and this agreement shall also be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors,

7 of 8

and assigns. DEVELOPER and any heirs, executors, administrators, successors and assigns, if any, shall be jointly and severally liable for DEVELOPER's obligations herein.

17.    WAIVER

None of the conditions of this agreement shall be considered waived by either party unless such waiver is in writing and signed by both parties. No such waiver shall be a waiver of any past or future default, breach, or modification of any of the conditions of the agreement expressly stipulated in such waiver.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and official seals.

STATE OF NEVADA          )
                         )    SS
COUNTY OF CLARK          )

This instrument was acknowledged before me this
2nd day of October

20 06 by Kevin Karo, VP of Finance
Rhodes Ranch General Partnership

NOTARY PUBLIC in and for said County and State.

CORPORATION CERTIFICATE

I, _____ , certify that I am the Secretary of the Corporation named as Developer in the foregoing document; that _____ was then President/Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

_____
SECRETARY

DEVELOPER: _____
V.P. of Finance
Rhodes Ranch General Partnership

NOTARY STAMP:

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
AUGUSTA S. YAMAMOTO
Appt. No. 03-82552-1
My Appt. Expires June 24, 2007

MARK MIKOLAITIS
Notary Public State of Nevada
No. 06-103285-1
My appt. exp. Feb. 1, 2010

-- FOR COUNTY USE ONLY --

STATE OF NEVADA          )
                         )    SS
COUNTY OF CLARK          )

Signed or attested before me on this  15th  day of    NOVEMBER      20  06  by
ROBERT B. THOMPSON.

NOTARY PUBLIC in and for said County and State

COUNTY OF CLARK, a political subdivision of the State of Nevada

BY _____
ROBERT B. THOMPSON
DEPARTMENT OF DEVELOPMENT SERVICES

BCC standard form approved July 18, 2002

8 of 8

**Legal Description:**
**APN 176-08-201-011**

The West Half (W ½) of the Southwest Quarter (SW ¼) of the Southeast Quarter (SE ¼) of the Northwest Quarter (NW ¼) of Section 8, Township 22 South, Range 60 East, Mount Diablo Meridian, Nevada.

Case 09-14814-lbr    Claim 71-1 Part 3    Filed 09/25/09    Page 14 of 52

06-37497
BOND



**CLARK COUNTY DEPARTMENT OF PUBLIC WORKS**
**DEVELOPMENT OF OFF-SITE IMPROVEMENTS**
**PERFORMANCE BOND**

08840999

That __Rhodes Ranch General Partnership_____ as

Principal, of _4730 S. Ft. Apache - #300_____ .

City of ___Las Vegas, NV  89147_____ .

County of ___Clark_____
__Fidelity and Deposit Company___

and __of Maryland_____as Surety, a corporation incorporated and doing

business under the laws of the State of _____Maryland_____and licensed to

conduct, transact and issue Surety business in the State of Nevada, are held and firmly bound

to Clark County, Nevada, as Obligee, in the sum of __three hundred eighty nine thousand four__
__hundred fifty five and 31/100__ ($ __389,455.31_____ ) Dollars, for the payment of the sum

well and truly to be made, and jointly and severally bind themselves, their heirs, successors,

assigns, executors, administrators and legal representatives firmly by these presents.

**CONDITIONS**

Unit 11

1. Principal, as a condition of the development of the __Rhodes Ranch Parcel 10 -____ project,
   entered into a written agreement or agreements ("improvement agreement(s)") with said
   Obligee to complete the required improvements specified in said improvement agreement(s)
   identified as __Offsite Improvements HTE # 06-37497__, dated_____, and _____
   _____,dated _____, and are attached hereto and by this
   reference incorporated herein.

2. If Principal fully and completely performs all of its obligations required by the said improvement
   agreement(s) during the original term thereof, or any extension of said term that may be
   granted by the Obligee with or without notice to the Surety, this obligation shall be voided;
   otherwise this obligation shall remain in full force and effect.

3. This obligation will continuously remain in full force and effect until and unless all of the
   conditions in the said improvement agreement(s) are fulfilled and completed to the satisfaction
   of the Obligee.

4. The provisions of this obligation shall be interpreted in manner consistent with the
   requirements of the Clark County Code, including, but not limited to, Chapter 30.32, which by
   this reference is incorporated herein.

5. Surety hereby waives notice of any changes, modifications, or additions to the obligations
   specified in said improvement agreement(s).

Page 1 of 2

. Case 09-14814-lbr    Claim 71-1 Part 3    Filed 09/25/09    Page 15 of 52

6. Any deviations, additions, or modifications to the obligations of the improvement agreement(s) may be made without the consent or knowledge of Surety and without in any way releasing Surety from liability under this bond.

7. In case of default by Principal, Surety may assure and complete or procure completion of the obligations of Principal, and Surety will be subrogated and entitled to all the rights and properties of Principal arising out of the improvement agreement(s).

IN WITNESS WHEREOF, the seal and signature of said Principal is hereto affixed and the corporate seal and the name of the said Surety is hereto affixed and attested by its duly authorized Attorney-in-Fact at ____Westmont, IL_____, Nevada, this ____September 18_____, ____2006_____.

|  |  |
|---|---|
| Rhodes Ranch<br>PRINCIPAL: General Partnership | Fidelity and Deposit<br>SURETY: Company of Maryland |
| BY: _____ | BY: _____<br>Peggy Faust , Attorney-in-Fact |
| State of Nevada<br>County of Clark | State of Nevada ILLINOIS<br>County of Clark DUPAGE |
| This instrument was acknowledged before me on ___October 2nd___, 20 06, by ___Kevin Kavo___ as ___V.P. of Finance___ of ___Rhodes Ranch G.P.___ (Principal). | This instrument was acknowledged before me on ___September 18___, 20 06, by ___Peggy Faust___ as Attorney-in-Fact for Fidelity and Deposit Company of Maryland (Surety). |
| _____<br>NOTARY PUBLIC in and for said County and State | _____<br>NOTARY PUBLIC in and for said County and State. |
| NOTARY PUBLIC<br>STATE OF NEVADA<br>County of Clark<br>AUGUSTA S YAMAMOTO<br>Appt. No. 03-82552-1<br>My Appt. Expires June 24, 2007 | OFFICIAL SEAL<br>IRENE DIAZ<br>NOTARY PUBLIC - STATE OF ILLINOIS<br>MY COMMISSION EXPIRES:03/14/07 |
| BY: _____ 221573 ___<br>Constance B Cantin , Nevada Resident Agent | Brown & Brown Insurance of NV<br><br>2340 Corporate Circle<br><br>Henderson, NV  89074 |

Page 2 of 2

## Power of Attorney
### FIDELITY AND DEPOSIT COMPANY OF MARYLAND
### COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

KNOW ALL MEN BY THESE PRESENTS: That the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, corporations of the State of Maryland, by THEODORE G. MARTINEZ, Vice President, and GERALD F. HALEY, Assistant Secretary, in pursuance of authority granted by Article VI, Section 2, of the By-Laws of said Companies, which are set forth on the reverse side hereof and are hereby certified to be in full force and effect on the date hereof, does hereby nominate, constitute and appoint Peggy FAUST, Kelly A. JACOBS, Stephen T. KAZMER, Bonnie KRUSE, Jennifer J. MCCOMB, Elaine MARCUS, James I. MOORE, Dawn MORGAN, Melissa SCHMIDT and Irene DIAZ, all of Westmont, Illinois, EACH its true and lawful agent and Attorney-in-Fact, to make, execute, seal and deliver, for, and on its behalf as surety, and as its act and deed: any and all bonds and undertakings, and the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its office in Baltimore, Md., in their own proper persons. This power of attorney revokes that issued on behalf of Peggy FAUST, Kelly A. JACOBS, Stephen T. KAZMER, Bonnie KRUSE, Jennifer J. MCCOMB, Elaine MARCUS, James I. MOORE, Dawn MORGAN, Mary Beth PETERSON, dated March 6, 2003.

The said Assistant Secretary does hereby certify that the extract set forth on the reverse hereof is a true copy of Article VI, Section 2, of the By-Laws of said Companies, and is now in force.

IN WITNESS WHEREOF, the said Vice-President and Assistant Secretary have hereunto subscribed their names and affixed the Corporate Seals of the said FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, this 24th day of April, A.D. 2006.

ATTEST:

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND**
**COLONIAL AMERICAN CASUALTY AND SURETY COMPANY**

*Gerald F. Haley*    *Assistant Secretary*

By:

*Theodore G. Martinez*

State of Maryland } ss:
City of Baltimore }

On this 24th day of April, A.D. 2006, before the subscriber, a Notary Public of the State of Maryland, duly commissioned and qualified, came THEODORE G. MARTINEZ, Vice President, and GERALD F. HALEY, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, to me personally known to be the individuals and officers described in and who executed the preceding instrument, and they each acknowledged the execution of the same, and being by me duly sworn, severally and each for himself deposeth and saith, that they are the said officers of the Companies aforesaid, and that the seals affixed to the preceding instrument is the Corporate Seals of said Companies, and that the said Corporate Seals and their signatures as such officers were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

*Constance A. Dunn*

Constance A. Dunn                    *Notary Public*
My Commission Expires:  July 14, 2007

POA-F 036-0013A

**EXTRACT FROM BY-LAWS OF FIDELITY AND DEPOSIT COMPANY OF MARYLAND**

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

**EXTRACT FROM BY-LAWS OF COLONIAL AMERICAN CASUALTY AND SURETY COMPANY**

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

**CERTIFICATE**

I, the undersigned, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that the Vice-President who executed the said Power of Attorney was one of the additional Vice-Presidents specially authorized by the Board of Directors to appoint any Attorney-in-Fact as provided in Article VI, Section 2, of the respective By-Laws of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990 and of the Board of Directors of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at a meeting duly called and held on the 5th day of May, 1994.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed."

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seals of the said Companies,

this _18th_    day of _September_            , _2006_ .

George E. Mﬦﬦﬦ

*Assistant Secretary*

06-37497

OSIA

|||||||||||||||||||||||||||||||||||||||||||||
20061121-0002436

APN: _176-08-201-011_

HTE #: _06-37497_

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division

Fee: $0.00
H/C Fee: $0.00

11/21/2006          11:58:27
T20060205814
Requestor:
    DEVELOPMENT SERVICES CLARK COUNTY

Charles Harvey          ARO
Clark County Recorder    Pgs: 9

## CLARK COUNTY
## DEPARTMENT OF DEVELOPMENT SERVICES

### OFF-SITE IMPROVEMENTS AGREEMENT

**THIS AGREEMENT**, made and entered into this _13th_ day of _NOVEMBER_,
20 _06_, by and between:
_____Rhodes Ranch GP_____.
whose mailing address is:
_____4730 S Fort Apache_____
_____Suite 300_____
_____LAS Vegas, NV 89147_____

hereinafter referred to as DEVELOPER and CLARK COUNTY, NEVADA, hereinafter
referred to as COUNTY, for construction of off-site improvements at the following location:

Cross Streets: _Quarter Horse and Pine Shores._

Assessor's Parcel Number: _176-08-201-011_

**WHEREAS**, DEVELOPER has submitted a plan to the COUNTY for a

_____offsite improvements_____
(type of development); and

        **WHEREAS**, the COUNTY requires construction of certain off-site
improvements as part of said development.

        **NOW, THEREFORE**, the parties to this agreement for and in consideration of
the mutual promises herein contained and for other good and valuable considerations, do

1 of 8

hereby agreed as follows:

1.   OFF-SITE IMPROVEMENTS

The DEVELOPER, at his own cost, shall perform and complete all off-site work and improvements which may consist of, but not limited to, streets, street name signs, traffic signs, sewers, water systems, fire hydrants, curbs, gutters, sidewalks, street lighting, driveways, drainage facilities, accesses, survey monuments,
             *Per   HTE  06. 37497*
etc., hereinafter referred to as off-site improvements, said off-site improvements shall be constructed in accordance with applicable ordinances, regulations, standards and specifications, and other requirements of CLARK COUNTY, NEVADA.

2.   PLANS APPROVED BY THE DIRECTOR OF DEVELOPMENT SERVICES

No off-site improvements shall commence until:

(a)   off-site improvement plans have been approved by the Director of DEVELOPMENT SERVICES or his authorized representative;

(b)   one-hundred percent (100%) of the plan-check and inspection fees have been paid;

(c)   performance security executed as required by CLARK COUNTY ordinances; and

(d)   an off-site permit has been issued by the Director of DEVELOPMENT SERVICES, or his authorized representative.

3.   NOTICE OF COMMENCEMENT OF CERTAIN WORK

The DEVELOPER shall notify the Director of Development Services no less than 24 hours in advance of the date and hour work on any of the following items is expected to begin, and thereafter if conditions develop to delay the start of work, the DEVELOPER agrees to notify the Director of Development Services of the delay not less than two hours before work is scheduled to begin:

--   Placing sewer, water, gas, power, telephone lines and fire hydrants.

--   Back-filling of sewer, water, gas, power and telephone lines.

--   Placing concrete for curb, gutter, sidewalk, valley gutters, storm drain structures, manholes, street lighting foundations and alley gutters.

2 of 8

-- Placing Type I and Type II gravel base course.

-- Priming base course.

-- Placing street lighting and burn testing.

-- Placing street name signs and traffic control signs.

4.    APPROVAL OF WORK AFTER INSPECTION

(a)    Whenever the Director of Development Services or his duly authorized representative inspects portion of work as mentioned hereinbefore, and finds the work performed to be in a satisfactory condition for inclusion in the completed project, the Director of Development Services or his duly authorized representative shall issue a statement of inspection which shall permit the DEVELOPER to perform the next phase of the construction. Ordinarily, not less than one continuous block of any one of the items of work mentioned will be approved.

(b)    Inspection and approval of any item of work shall not forfeit the right of the COUNTY to require the corrections of quality, workmanship or materials at any time prior to the final acceptance of the project by the Director of Development Services, although previously approved by an oversight.

(c)    Nothing herein shall relieve the DEVELOPER of the responsibility for proper construction of the off-site improvements and DEVELOPER shall maintain said improvements until the work has been accepted by the Director of Development Services.

5.    ADJUSTMENT TO EXISTING UTILITIES AND COST THEREOF

The DEVELOPER shall, at its sole expense, provide for adjustments necessary to all existing utilities because of the work required by this agreement.

6.    FULL COMPLIANCE WITH COUNTY REQUIREMENTS

The DEVELOPER shall perform and complete all off-site improvements in accordance with the regulations, specifications, and ordinances of the said County of Clark, and the construction plans approved by Clark County Development Services Department.

The DEVELOPER shall obtain all required permits from other County, State, and Federal agencies, including but not limited to Clark County Health District, Nevada Department of Environmental Protection, and United States Army Corps of Engineers.

3 of 8

The COUNTY shall have the right to require corrections to the construction plans by the DEVELOPER at any time before release of the bond (performance bond, cash deposit, or agreement in lieu of bond) required herein, of any item or items contained in this agreement which do not conform to COUNTY standard specifications, laws, regulations or ordinances, even though the plans for the item in question may have been approved by the Director of Development Services.

The DEVELOPER shall start said off-site improvements upon receipt of a COUNTY-approved off-site permit and said off-site improvements shall be completed prior to expiration of said permit in accordance with the required ordinances.

In the event the DEVELOPER fails to complete said improvements within said period or in the event the DEVELOPER in the COUNTY's opinion has created a safety hazard, the COUNTY, at its option, may proceed to complete said improvements at the expense of the DEVELOPER. The COUNTY may use the required performance bond as provided for hereinafter.

7.    OTHER CONDITIONS AND REQUIREMENTS

The DEVELOPER further agrees that, in addition to the above requirements, any and/or all such conditions, stipulations and agreements made by the DEVELOPER and the Board of County Commissioners and/or County Planning Commission of Clark County shall be fully performed.

The DEVELOPER further agrees that all work is to be performed by a qualified contractor licensed to do business in the State of Nevada and the County of Clark.

The DEVELOPER shall maintain, protect and take care of all work areas for the project, including any adjacent existing improvements, until its completion and acceptance by Clark County.    Maintenance of any inhabited area of the development, and the adjacent streets and/or neighborhoods, shall include, but not be limited to, sweeping of the streets and keeping the gutters free of dirt and debris.

During move-in, construction and move-off, the DEVELOPER shall keep the site free and clear from dangerous accumulation of rubbish and debris and shall maintain sufficient and proper barricades, lights, etc., in accordance with the latest manual on the placement of traffic control devices accepted by the Department of Development Services for the protection of the public. Also, after excavation or placement of gravel, if the sub-grade and/or gravel base material is left exposed and in the opinion of the Director of Development Services is not properly maintained, thus causing either a rough riding surface or a dust problem, the Director of Development Services may require the DEVELOPER to do whatever is necessary to provide an adequate travel-way.  If a detour is needed, the Director of Development Services shall determine to what extent it shall be maintained, which

4 of 8

shall include the placing of temporary paving, if it is to be used for an extended period of time.

Final acceptance of the work will not be made by the COUNTY until the area (falling under this agreement) and adjacent property has been cleared of all rubbish, surplus materials and equipment resulting from the contractor's operations, to the satisfaction of the Director of Development Services.

8.    **LIABILITY**

The DEVELOPER shall indemnify, defend, and hold harmless the COUNTY, its officers, agents, volunteers, and employees, against and from any and all liability, loss, damage, claims, fines, demands, causes of action, costs, expenses, and judgments of whatsoever nature, including but not limited to reasonable costs of investigation, reasonable attorney's fees and expenses, all reasonable expert witness fees and expenses, and all court or arbitration or other alternative dispute resolution costs which result from injury to or death of any persons whomsoever, and/or against and from damage to or loss or destruction of property whatsoever when such injury death, loss, destruction or damage is due to or arises in connection with or as a result of any work done by the DEVELOPER in connection with the construction of the off-site improvements, and/or arises of or in connection with DEVELOPER's performance or failure to perform the terms and conditions of this agreement.    This Section 8 survives termination or completion of this agreement.

9.    **PLAN REQUIREMENTS ON COMPLETION OF IMPROVEMENTS**

Upon completion of all the off-site improvements within the COUNTY right-of-way required hereby and prior to release of any performance security, the DEVELOPER shall furnish the Director of Development Services with an as-built plan which shall accurately indicate, by lettered dimensions, the location of all manholes, the location size and depth of all sewer mains, underground water, power, gas, and other lines, with street plans and profiles for the same, including laterals and "Y's" for connection of house service lines.

10.    **WARRANTY**

The DEVELOPER is responsible should any original or developed defects or failures appear within a period of one year from the date of acceptance of the work by the COUNTY.  The DEVELOPER shall, at his own expense, make good such defects and failures and make all replacements and adjustments required, within thirty (30) days after being notified by the COUNTY to do so.  All repairs shall be subject to the approval of the Director of Development Services and/or the Director of Public Works.

5 of 8

This agreement does not limit or relieve DEVELOPER from any other obligation or responsibility which the DEVELOPER may otherwise have as a result of the street improvements, including any damages or latent defects which may occur beyond the warranty period specified above. Furthermore, DEVELOPER, at all times, is not relieved of any obligation or responsibility it may have by law including but not limited to damages for latent deficiencies, injury to real or personal property or injury to or wrongful death of a person, (N.R.S. 11.204).

## 11.    REQUIREMENTS OF PERFORMANCE BOND OR OTHER SECURITY

DEVELOPER shall furnish without cost to the COUNTY a surety and performance bond, cash deposit or agreement in lieu of bond for the full cost of said off-site improvements in favor of the COUNTY conditioned upon the DEVELOPER completing said off-site improvements within the time period prescribed by this agreement. Also, in the event the COUNTY exercises its option to complete said off-site improvements, that said bond, cash deposit or agreement in lieu of bond shall be used for the payment of the costs of completion of said off site improvements by the COUNTY in case the DEVELOPER fails to do so within said time period.

If the construction or installation of any off-site improvements or facilities for which a bond, cash deposit or agreement in lieu of bond is posted are not completed within the time frame of the off-site permit issued for the development; or if the DEVELOPER has suspended work and has failed to provide continued construction during the past 60 days; or if in the event the DEVELOPER, in the COUNTY's opinion, has created a safety hazard; or if such construction is not in accordance with applicable standards and specifications as prescribed by law, then, in either or any such event, the COUNTY may, at its option, proceed to complete said off site improvements at the expense of the DEVELOPER under this bond as provided for hereinafter.

That DEVELOPER acknowledges that the bond provided for in this agreement to construct the off-site improvements is only based upon an estimate of their cost by the Engineer of the County and in the event that actual cost of said off-site improvements shall exceed such sum, DEVELOPER is in no way relieved by this agreement from paying the entire amount of such excess.

Any application for release of said bond or cash deposit upon the completion of the off-site improvements by the DEVELOPER shall not be granted unless accompanied by a written certificate from the Director of Development Services stating that all requirements hereof have been satisfactorily completed in accordance with the terms of this agreement.

6 of 8

12. **CERTIFICATE OF OCCUPANCY**

No certificates of occupancy shall be granted until such time as the off-site improvements have been completed to the satisfaction of the Director of Development Services, and in accordance with this agreement. The granting of a certificate of occupancy does not relieve DEVELOPER of its obligations in this agreement.

The granting of a certificate of occupancy does not imply that the off-site improvements have been properly completed nor authorize the release of the performance bond or other security.

13. **CERTIFICATE OF RELEASE**

Upon final acceptance, by the Director of Development Services, of all of the off-site improvements required to be constructed by DEVELOPER as herein provided, DEVELOPER shall be issued a certificate of release of said performance bond or cash deposit, which shall be issued by the Director of Development Services.

14. **NO THIRD PARTY BENEFICIARY**

Any inspections or subsequent approvals undertaken by the COUNTY pursuant to express or implied terms of this agreement are undertaken solely to insure compliance with the terms of this agreement and are not undertaken for the benefit of any individual or group of individuals as members of the public. It is not intended by any of the provisions of any part of this agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this agreement to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this agreement. Provisions in this agreement dealing with inspections, approvals or changes requested or made do not expand the COUNTY's general law duties.

15. **ASSIGNMENTS**

DEVELOPER cannot assign this agreement, in whole or in part, or any rights herein granted, without the written consent of the COUNTY and it is agreed that any attempted transfer or assignment of this agreement or any of the rights herein granted, whether voluntary, by operation of law, or otherwise, without such consent in writing, shall be absolutely void at the option of the COUNTY.

16. **AGREEMENT TO BE RECORDED**

The DEVELOPER agrees that this agreement will be recorded upon the land described in Exhibit "A" and this agreement shall also be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors,

7 of 8

and assigns. DEVELOPER and any heirs, executors, administrators, successors and assigns, if any, shall be jointly and severally liable for DEVELOPER's obligations herein.

17.    WAIVER

None of the conditions of this agreement shall be considered waived by either party unless such waiver is in writing and signed by both parties. No such waiver shall be a waiver of any past or future default, breach, or modification of any of the conditions of the agreement expressly stipulated in such waiver.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and official seals.

| | |
|---|---|
| STATE OF NEVADA )<br>                         ) SS<br>COUNTY OF CLARK )<br><br>This instrument was acknowledged before me this<br>2nd day of October<br>20 06, by Kevin Yaro, VP of Finance<br>Rhodes Ranch General Partnership<br><br>NOTARY PUBLIC in and for said County and State.<br><br>**CORPORATION CERTIFICATE**<br><br>I, _____ , certify that I am the Secretary of the Corporation named as Developer in the foregoing document; that<br>_____ was then President/Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.<br><br>_____<br>        SECRETARY | DEVELOPER:<br>_____ VP of Finance<br>Rhodes Ranch General Partnership<br><br>_____<br><br>**NOTARY STAMP:**<br><br>NOTARY PUBLIC<br>STATE OF NEVADA<br>County of Clark<br>AUGUSTA S. YAMAMOTO<br>Appt. No. 03-82552-1<br>My Appt. Expires June 24, 2007<br><br>MARK MIKOLAITIS<br>Notary Public State of Nevada<br>No. 06-103285-1<br>My appt. exp. Feb. 1, 2010 |

-- FOR COUNTY USE ONLY --

| | |
|---|---|
| STATE OF NEVADA )<br>                         ) SS<br>COUNTY OF CLARK )<br><br>Signed or attested before me on this 15th day of NOVEMBER 20 06 by ROBERT B. THOMPSON.<br><br>NOTARY PUBLIC in and for said County and State | COUNTY OF CLARK, a political subdivision of the State of Nevada<br><br>BY _____<br>ROBERT B. THOMPSON<br>DEPARTMENT OF DEVELOPMENT SERVICES<br><br>BCC standard form approved July 16, 2002 |

8 of 8

**Legal Description:**
**APN 176-08-201-011**

The West Half (W ½) of the Southwest Quarter (SW ¼) of the Southeast Quarter (SE ¼) of the Northwest Quarter (NW ¼) of Section 8, Township 22 South, Range 60 East, Mount Diablo Meridian, Nevada.

OSIA



20060327-0000426

APN: 176-17-301-006

HTE #: 06-8770

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division

Fee: $0.00
H/C Fee: $0.00

03/27/2006          9B:40:39
T20060053164
Requestor:
   DEVELOPMENT SERVICES CLARK COUNTY

Frances Deane          ARO
Clark County Recorder    Pgs: 12



# CLARK COUNTY
## DEPARTMENT OF DEVELOPMENT SERVICES

### OFF-SITE IMPROVEMENTS AGREEMENT

**THIS AGREEMENT**, made and entered into this __10th__ day of __March__ ,
20 __06__ , by and between:
        Rhodes RAnch General Partnership                          ,
whose mailing address is:
                4730 South Fort Apache Read, Suite #300

                Las Vegas, NV 89147

                (702) 873-5338


hereinafter referred to as DEVELOPER and CLARK COUNTY, NEVADA, hereinafter
referred to as COUNTY, for construction of off-site improvements at the following location:

Cross Streets:    Seeliger Street / WIGWAM AVE

Assessor's Parcel Number:    176-17-301-006

        **WHEREAS**, DEVELOPER has submitted a plan to the COUNTY for a

                Roadway
(type of development); and

        **WHEREAS,** the COUNTY · requires construction of certain off-site
improvements as part of said development.

        **NOW, THEREFORE**, the parties to this agreement for and in consideration of
the mutual promises herein contained and for other good and valuable considerations, do

1 of 8

hereby agreed as follows:

1.   OFF-SITE IMPROVEMENTS

The DEVELOPER, at his own cost, shall perform and complete all off-site work and improvements which may consist of, but not limited to, streets, street name signs, traffic signs, sewers, water systems, fire hydrants, curbs, gutters, sidewalks, street lighting, driveways, drainage facilities, accesses, survey monuments,
               $PER \cdot HTE \# 06-8770$

etc., hereinafter referred to as off-site improvements, said off-site improvements shall be constructed in accordance with applicable ordinances, regulations, standards and specifications, and other requirements of CLARK COUNTY, NEVADA.

2.   PLANS APPROVED BY THE DIRECTOR OF DEVELOPMENT SERVICES

No off-site improvements shall commence until:

(a)   off-site improvement plans have been approved by the Director of DEVELOPMENT SERVICES or his authorized representative;

(b)   one-hundred percent (100%) of the plan-check and inspection fees have been paid;

(c)   performance security executed as required by CLARK COUNTY ordinances; and

(d)   an off-site permit has been issued by the Director of DEVELOPMENT SERVICES, or his authorized representative.

3.   NOTICE OF COMMENCEMENT OF CERTAIN WORK

The DEVELOPER shall notify the Director of Development Services no less than 24 hours in advance of the date and hour work on any of the following items is expected to begin, and thereafter if conditions develop to delay the start of work, the DEVELOPER agrees to notify the Director of Development Services of the delay not less than two hours before work is scheduled to begin:

--   Placing sewer, water, gas, power, telephone lines and fire hydrants.

--   Back-filling of sewer, water, gas, power and telephone lines.

--   Placing concrete for curb, gutter, sidewalk, valley gutters, storm drain structures, manholes, street lighting foundations and alley gutters.

2 of 8

-- Placing Type I and Type II gravel base course.

-- Priming base course.

-- Placing street lighting and burn testing.

-- Placing street name signs and traffic control signs.

### 4.  APPROVAL OF WORK AFTER INSPECTION

(a)  Whenever the Director of Development Services or his duly authorized representative inspects portion of work as mentioned hereinbefore, and finds the work performed to be in a satisfactory condition for inclusion in the completed project, the Director of Development Services or his duly authorized representative shall issue a statement of inspection which shall permit the DEVELOPER to perform the next phase of the construction. Ordinarily, not less than one continuous block of any one of the items of work mentioned will be approved.

(b)  Inspection and approval of any item of work shall not forfeit the right of the COUNTY to require the corrections of quality, workmanship or materials at any time prior to the final acceptance of the project by the Director of Development Services, although previously approved by an oversight.

(c)  Nothing herein shall relieve the DEVELOPER of the responsibility for proper construction of the off-site improvements and DEVELOPER shall maintain said improvements until the work has been accepted by the Director of Development Services.

### 5.  ADJUSTMENT TO EXISTING UTILITIES AND COST THEREOF

The DEVELOPER shall, at its sole expense, provide for adjustments necessary to all existing utilities because of the work required by this agreement.

### 6.  FULL COMPLIANCE WITH COUNTY REQUIREMENTS

The DEVELOPER shall perform and complete all off-site improvements in accordance with the regulations, specifications, and ordinances of the said County of Clark, and the construction plans approved by Clark County Development Services Department.

The DEVELOPER shall obtain all required permits from other County, State, and Federal agencies, including but not limited to Clark County Health District, Nevada Department of Environmental Protection, and United States Army Corps of Engineers.

3 of 8

The COUNTY shall have the right to require corrections to the construction plans by
the DEVELOPER at any time before release of the bond (performance bond, cash
deposit, or agreement in lieu of bond) required herein, of any item or items
contained in this agreement which do not conform to COUNTY standard
specifications, laws, regulations or ordinances, even though the plans for the item in
question may have been approved by the Director of Development Services.

The DEVELOPER shall start said off-site improvements upon receipt of a COUNTY-
approved off-site permit and said off-site improvements shall be completed prior to
expiration of said permit in accordance with the required ordinances.

In the event the DEVELOPER fails to complete said improvements within said
period or in the event the DEVELOPER in the COUNTY's opinion has created a
safety hazard, the COUNTY, at its option, may proceed to complete said
improvements at the expense of the DEVELOPER. The COUNTY may use the
required performance bond as provided for hereinafter.

7.    OTHER CONDITIONS AND REQUIREMENTS

The DEVELOPER further agrees that, in addition to the above requirements, any
and/or all such conditions, stipulations and agreements made by the DEVELOPER
and the Board of County Commissioners and/or County Planning Commission of
Clark County shall be fully performed.

The DEVELOPER further agrees that all work is to be performed by a qualified
contractor licensed to do business in the State of Nevada and the County of Clark.

The DEVELOPER shall maintain, protect and take care of all work areas for the
project, including any adjacent existing improvements, until its completion and
acceptance by Clark County.    Maintenance of any inhabited area of the
development, and the adjacent streets and/or neighborhoods, shall include, but not
be limited to, sweeping of the streets and keeping the gutters free of dirt and debris.

During move-in, construction and move-off, the DEVELOPER shall keep the site
free and clear from dangerous accumulation of rubbish and debris and shall
maintain sufficient and proper barricades, lights, etc., in accordance with the latest
manual on the placement of traffic control devices accepted by the Department of
Development Services for the protection of the public. Also, after excavation or
placement of gravel, if the sub-grade and/or gravel base material is left exposed and
in the opinion of the Director of Development Services is not properly maintained,
thus causing either a rough riding surface or a dust problem, the Director of
Development Services may require the DEVELOPER to do whatever is necessary
to provide an adequate travel-way.  If a detour is needed, the Director of
Development Services shall determine to what extent it shall be maintained, which

4 of 8

shall include the placing of temporary paving, if it is to be used for an extended period of time.

Final acceptance of the work will not be made by the COUNTY until the area (falling under this agreement) and adjacent property has been cleared of all rubbish, surplus materials and equipment resulting from the contractor's operations, to the satisfaction of the Director of Development Services.

8.    LIABILITY

The DEVELOPER shall indemnify, defend, and hold harmless the COUNTY, its officers, agents, volunteers, and employees, against and from any and all liability, loss, damage, claims, fines, demands, causes of action, costs, expenses, and judgments of whatsoever nature, including but not limited to reasonable costs of investigation, reasonable attorney's fees and expenses, all reasonable expert witness fees and expenses, and all court or arbitration or other alternative dispute resolution costs which result from injury to or death of any persons whomsoever, and/or against and from damage to or loss or destruction of property whatsoever when such injury death, loss, destruction or damage is due to or arises in connection with or as a result of any work done by the DEVELOPER in connection with the construction of the off-site improvements, and/or arises of or in connection with DEVELOPER's performance or failure to perform the terms and conditions of this agreement.    This Section 8 survives termination or completion of this agreement.

9.    PLAN REQUIREMENTS ON COMPLETION OF IMPROVEMENTS

Upon completion of all the off-site improvements within the COUNTY right-of-way required hereby and prior to release of any performance security, the DEVELOPER shall furnish the Director of Development Services with an as-built plan which shall accurately indicate, by lettered dimensions, the location of all manholes, the location size and depth of all sewer mains, underground water, power, gas, and other lines, with street plans and profiles for the same, including laterals and "Y's" for connection of house service lines.

10.    WARRANTY

The DEVELOPER is responsible should any original or developed defects or failures appear within a period of one year from the date of acceptance of the work by the COUNTY. The DEVELOPER shall, at his own expense, make good such defects and failures and make all replacements and adjustments required, within thirty (30) days after being notified by the COUNTY to do so. All repairs shall be subject to the approval of the Director of Development Services and/or the Director of Public Works.

5 of 8

This agreement does not limit or relieve DEVELOPER from any other obligation or responsibility which the DEVELOPER may otherwise have as a result of the street improvements, including any damages or latent defects which may occur beyond the warranty period specified above. Furthermore, DEVELOPER, at all times, is not relieved of any obligation or responsibility it may have by law including but not limited to damages for latent deficiencies, injury to real or personal property or injury to or wrongful death of a person, (N.R.S. 11.204).

11.    REQUIREMENTS OF PERFORMANCE BOND OR OTHER SECURITY

DEVELOPER shall furnish without cost to the COUNTY a surety and performance bond, cash deposit or agreement in lieu of bond for the full cost of said off-site improvements in favor of the COUNTY conditioned upon the DEVELOPER completing said off-site improvements within the time period prescribed by this agreement. Also, in the event the COUNTY exercises its option to complete said off-site improvements, that said bond, cash deposit or agreement in lieu of bond shall be used for the payment of the costs of completion of said off site improvements by the COUNTY in case the DEVELOPER fails to do so within said time period.

If the construction or installation of any off-site improvements or facilities for which a bond, cash deposit or agreement in lieu of bond is posted are not completed within the time frame of the off-site permit issued for the development; or if the DEVELOPER has suspended work and has failed to provide continued construction during the past 60 days; or if in the event the DEVELOPER, in the COUNTY's opinion, has created a safety hazard; or if such construction is not in accordance with applicable standards and specifications as prescribed by law, then, in either or any such event, the COUNTY may, at its option, proceed to complete said off site improvements at the expense of the DEVELOPER under this bond as provided for hereinafter.

That DEVELOPER acknowledges that the bond provided for in this agreement to construct the off-site improvements is only based upon an estimate of their cost by the Engineer of the County and in the event that actual cost of said off-site improvements shall exceed such sum, DEVELOPER is in no way relieved by this agreement from paying the entire amount of such excess.

Any application for release of said bond or cash deposit upon the completion of the off-site improvements by the DEVELOPER shall not be granted unless accompanied by a written certificate from the Director of Development Services stating that all requirements hereof have been satisfactorily completed in accordance with the terms of this agreement.

6 of 8

12.    CERTIFICATE OF OCCUPANCY

No certificates of occupancy shall be granted until such time as the off-site improvements have been completed to the satisfaction of the Director of Development Services, and in accordance with this agreement. The granting of a certificate of occupancy does not relieve DEVELOPER of its obligations in this agreement.

The granting of a certificate of occupancy does not imply that the off-site improvements have been properly completed nor authorize the release of the performance bond or other security.

13.    CERTIFICATE OF RELEASE

Upon final acceptance, by the Director of Development Services, of all of the off-site improvements required to be constructed by DEVELOPER as herein provided, DEVELOPER shall be issued a certificate of release of said performance bond or cash deposit, which shall be issued by the Director of Development Services.

14.    NO THIRD PARTY BENEFICIARY

Any inspections or subsequent approvals undertaken by the COUNTY pursuant to express or implied terms of this agreement are undertaken solely to insure compliance with the terms of this agreement and are not undertaken for the benefit of any individual or group of individuals as members of the public. It is not intended by any of the provisions of any part of this agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this agreement to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this agreement. Provisions in this agreement dealing with inspections, approvals or changes requested or made do not expand the COUNTY's general law duties.

15.    ASSIGNMENTS

DEVELOPER cannot assign this agreement, in whole or in part, or any rights herein granted, without the written consent of the COUNTY and it is agreed that any attempted transfer or assignment of this agreement or any of the rights herein granted, whether voluntary, by operation of law, or otherwise, without such consent in writing, shall be absolutely void at the option of the COUNTY.

16.    AGREEMENT TO BE RECORDED

The DEVELOPER agrees that this agreement will be recorded upon the land described in Exhibit "A" and this agreement shall also be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors,

7 of 8

and assigns. DEVELOPER and any heirs, executors, administrators, successors and assigns, if any, shall be jointly and severally liable for DEVELOPER's obligations herein.

17.   WAIVER

None of the conditions of this agreement shall be considered waived by either party unless such waiver is in writing and signed by both parties. No such waiver shall be a waiver of any past or future default, breach, or modification of any of the conditions of the agreement expressly stipulated in such waiver.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and official seals.

| STATE OF NEVADA | ) | | DEVELOPER: |
| | ) SS | | Rhodes Ranch General Partnership |
| COUNTY OF CLARK | ) | | 4730 S. Fort Apache Rd., Suite #300 |

This instrument was acknowledged before me this 16th day of March 20 06, by Paul Huneens

_____
NOTARY PUBLIC in and for said County and State.

Las Vegas, NV 89147

Paul Huneens
**NOTARY STAMP:**

CORPORATION CERTIFICATE

I, _____ , certify that I am the Secretary of the Corporation named as Developer in the foregoing document; that _____ was then President/Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

_____
SECRETARY

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
AUGUSTA S. YAMAMOTO
Appt. No. 03-R2552-1
My Appt. Expires June 24, 2007

MARK MIKOLAITIS
Notary Public State of Nevada
No. 06-103285-1
My appl. exp. Feb. 1, 2010

-- FOR COUNTY USE ONLY --

| STATE OF NEVADA | ) | | **COUNTY OF CLARK**, a political subdivision of the State of Nevada |
| | ) SS | | |
| COUNTY OF CLARK | ) | | BY _____ |

Signed or attested before me on this 22nd day of March 20 06 by ROBERT B. THOMPSON

_____
NOTARY PUBLIC in and for said County and State

ROBERT B. THOMPSON
DEPARTMENT OF DEVELOPMENT SERVICES

BCC standard form approved July 16, 2002

8 of 8



**G. C. WALLACE, INC.**
Engineers / Planners / Surveyors

APN# PT 176-17-301-006

**EXPLANATION:**       THIS LEGAL DESCRIBES A PARCEL OF LAND BEING LINKED TO
                       THE BOND ISSUED FOR THE IMPROVEMENTS ALONG SEELIGER
                       STREET.

## LEGAL DESCRIPTION

THAT PORTION OF "LOT 2" OF "RHODES RANCH PARCEL MAP" AS SHOWN BY MAP
THEREOF ON FILE IN BOOK 103, PAGE 97 OF PLATS IN THE CLARK COUNTY
RECORDERS OFFICE, CLARK COUNTY NEVADA, LYING WITHIN THE NORTH HALF (N1/2)
OF SECTION 17, TOWNSHIP 22 SOUTH, RANGE 60 EAST, M.D.M., CLARK COUNTY,
NEVADA, DESCRIBED AS FOLLOWS:

**BEGINNING** AT THE MOST NORTHERLY CORNER OF SAID "LOT 2"; THENCE ALONG THE
NORTHERLY LINE THEREOF, THE FOLLOWING ELEVEN (11) COURSES: SOUTH
26°40'18" EAST, 57.15 FEET; THENCE SOUTH 41°33'25" EAST, 100.75 FEET; THENCE
SOUTH 65°13'51" EAST, 221.42 FEET, THENCE SOUTH 34°41'01" EAST, 158.80 FEET;
THENCE SOUTH 55°00'00" EAST, 302.43 FEET; THENCE NORTH 89°50'36" EAST, 202.40
FEET; THENCE NORTH 78°12'19" EAST, 245.48 FEET; THENCE NORTH 85°46'23" EAST,
238.78 FEET, THENCE SOUTH 89°53'02" EAST, 238.78 FEET; THENCE SOUTH 85°32'34"
EAST, 238.81 FEET; THENCE SOUTH 83°30'00" EAST, 403.05 FEET; THENCE SOUTH
19°07'17" EAST, 6.31 FEET; THENCE DEPARTING SAID NORTHERLY LINE, SOUTH
32°41'47" WEST, 116.21 FEET; THENCE FROM A TANGENT BEARING SOUTH 32°05'44"
EAST, CURVING TO THE RIGHT ALONG THE ARC OF A 50.00 FOOT RADIUS CURVE,
CONCAVE SOUTHWESTERLY (THE RADIUS POINT OF WHICH BEARS SOUTH 57°54'16"
WEST), THROUGH A CENTRAL ANGLE OF 34°00'49", AN ARC LENGTH OF 29.68 FEET TO
A POINT OF REVERSE CURVATURE THROUGH WHICH A RADIAL LINE BEARS SOUTH
88°04'55" EAST; THENCE CURVING TO THE LEFT ALONG THE ARC OF A 100.00 FOOT
RADIUS CURVE, CONCAVE NORTHEASTERLY, THROUGH A CENTRAL ANGLE OF
21°02'22", AN ARC LENGTH OF 36.72 FEET; THENCE SOUTH 19°07'17" EAST, 28.80 FEET;
THENCE SOUTH 70°52'43" WEST, 101.84 FEET; THENCE NORTH 84°13'50" WEST, 388.59
FEET; THENCE CURVING TO THE LEFT ALONG THE ARC OF A 2380.50 FOOT RADIUS
CURVE, CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 16°42'24", AN
ARC LENGTH OF 694.12 FEET; THENCE SOUTH 79°10'31" WEST, 216.63 FEET; THENCE
SOUTH 79°03'46" WEST, 156.06 FEET; THENCE CURVING TO THE RIGHT ALONG THE
ARC OF A 1321.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY, THROUGH A
CENTRAL ANGLE OF 06°55'24", AN ARC LENGTH OF 159.62 FEET; THENCE SOUTH
85°59'10" WEST, 295.81 FEET; THENCE CURVING TO THE RIGHT ALONG THE ARC OF A

R:\050 (Office)\Projects\754\018A\Legals\BondSlgr.doc
3/21/2008 By: ALC Ckd. By: BAM

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296



# G. C. WALLACE, INC.
Engineers / Planners / Surveyors

1321.00 FOOT RADIUS CURVE, CONCAVE NORTHERLY, THROUGH A CENTRAL ANGLE
OF 05°54'05", AN ARC LENGTH OF 136.06 FEET; THENCE NORTH 88°06'45" WEST, 109.27
FEET; THENCE NORTH 01°53'15" EAST, 77.50 FEET; THENCE CURVING TO THE LEFT
ALONG THE ARC OF A 16.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY,
THROUGH A CENTRAL ANGLE OF 22°01'28", AN ARC LENGTH OF 6.15 FEET TO A POINT
TO WHICH A RADIAL LINE BEARS NORTH 69°51'47" EAST; THENCE NORTH 88°06'45"
WEST, 105.53 FEET; THENCE FROM A TANGENT BEARING SOUTH 35°15'16" WEST,
CURVING TO THE LEFT ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE, CONCAVE
SOUTHEASTERLY (THE RADIUS POINT TO WHICH BEARS SOUTH 54°44'44" EAST),
THROUGH A CENTRAL ANGLE OF 33°22'01", AN ARC LENGTH OF 11.65 FEET TO A
POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF HIDDEN MOUNTAIN AVENUE;
THENCE ALONG SAID RIGHT-OF-WAY LINE THE FOLLOWING THIRTY-SIX (36)
COURSES: SOUTH 01°53'15" WEST, 382.00 FEET; THENCE CURVING TO THE LEFT
ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY,
THROUGH A CENTRAL ANGLE OF 90°00'00", AN ARC LENGTH OF 31.42 FEET TO WHICH
A RADIAL LINE BEARS SOUTH 01°53'15" WEST; THENCE SOUTH 01°53'15" WEST, 60.00
FEET; THENCE FROM A TANGENT BEARING NORTH 88°06'45" WEST, CURVING TO THE
LEFT ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY
(THE RADIUS POINT OF WHICH BEARS SOUTH 01°53'15" WEST), THROUGH A CENTRAL
ANGLE OF 90°00'00", AND ARC LENGTH OF 31.42 FEET; THENCE SOUTH 01°53'15",
144.44 FEET; THENCE CURVING TO THE RIGHT ALONG THE ARC OF A 600.00 FOOT
RADIUS CURVE, CONCAVE NORTHWESTERLY, TROUGH A CENTRAL ANGLE OF
35°27'51", AN ARC LENGTH OF 371.38 FEET TO A POINT OF REVERSE CURVATURE TO
WHICH A RADIAL LINE BEARS SOUTH 52°38'54" EAST; THENCE CURVING TO THE LEFT
ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY,
THROUGH A CENTRAL ANGLE OF 85°22'28", AN ARC LENGTH OF 29.80 FEET TO A
POINT WHICH A RADIAL LINE BEARS SOUTH 41°58'39" WEST; THENCE SOUTH 41°58'39"
WEST, 60.00 FEET; THENCE FROM A TANGENT BEARING NORTH 48°01'21" WEST,
CURVING TO THE LEFT ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE, CONCAVE
NORTHWESTERLY (THE RADIUS POINT OF WHICH BEARS SOUTH 41°58'39" WEST),
THROUGH A CENTRAL ANGLE OF 85°2'28", AN ARC LENGTH OF 29.80 FEET TO A POINT
OF REVERSE CURVATURE THROUGH WHICH A RADIAL LINE BEARS NORTH 43°23'49"
WEST; THENCE CURVING TO THE RIGHT ALONG THE ARC OF A 600.00 FOOT RADIUS
CURVE, CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 19°07'17", AN
ARC LENGTH OF 200.24 TO A POINT OF REVERSE CURVATURE THROUGH WHICH A
RADIAL LINE BEARS SOUTH 24°16'32" EAST; THENCE CURVING TO THE LEFT ALONG
THE ARC OF 269.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY, THROUGH A
CENTRAL ANGLE OF 09°06'02", AN ARC LENGTH OF 42.73 FEET TO A POINT OF
REVERSE CURVATURE THROUGH WHICH A RADIAL LINE BEARS NORTH 33°22'34"
WEST; THENCE CURVING TO THE RIGHT ALONG THE ARC OF A 105.00 FOOT RADIUS

R:\050 (Office)\Projects\754\016A\Legals\BondSlgr.doc
3/21/2006 By: ALC Ckd. By: BAM

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296



**G. C. WALLACE, INC.**
Engineers / Planners / Surveyors

CURVE, CONCAVE NORTHWESTERLY, THROUGH A CENTRAL ANGLE OF 31°42'13", AN
ARC LENGTH OF 58.10 FEET TO A POINT OF REVERSE CURVATURE THROUGH WHICH
A RADIAL LINE BEARS SOUTH 01°40'21" EAST; THENCE CURVING TO THE LEFT ALONG
A 269.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY, THROUGH A CENTRAL
ANGLE OF 09°06'02", AN ARC LENGTH OF 42.73 FEET TO A POINT OF REVERSE
CURVATURE THOUGH WHICH A RADIAL LINE BEARS NORTH 10°46'23" WEST; THENCE
CURVING TO THE RIGHT ALONG A 600.00 FOOT RADIUS CURVE, CONCAVE
NORTHWESTERLY, THROUGH A CENTRAL ANGLE OF 2°52'59", AN ARC LENGTH OF
134.91 FEET; THENCE NORTH 87°53'24" WEST, 61.37 FEET; THENCE CURVING TO THE
LEFT ALONG A 54.00 FOOT RADIUS CURVE; CONCAVE SOUTHWESTERLY, THROUGH A
CENTRAL ANGLE OF 90°00'07", AN ARC LENGTH OF 84.82 FEET TO A POINT OF CUSP
TO WHICH A RADIAL LINE BEARS NORTH 87°53'31"; THENCE NORTH 02°06'29" EAST,
178.00 FEET TO A POINT OF CUSP; THENCE FROM A TANGENT BEARING SOUTH
02°06'29" WEST, CURVING TO THE LEFT, CONCAVE NORTHWESTERLY (THE RADIUS
POINT OF WHICH BEARS SOUTH 87°53'31" EAST), THROUGH A CENTRAL ANGLE OF
89°59'53", AN ARC LENGTH OF 84.82 FEET; THENCE SOUTH 87°53'24" EAST, 61.38 FEET;
THENCE CURVING TO THE LEFT ALONG A 530.00 FOOT RADIUS CURVE, CONCAVE
NORTHWESTERLY, THROUGH A CENTRAL ANGLE OF 20°05'03", AN ARC LENGTH OF
120.40 FEET TO A POINT OF COMPOUND CURVATURE THROUGH WHICH A RADIAL
LINE BEARS SOUTH 10°54'20" EAST; THENCE CURVING TO THE LEFT ALONG THE ARC
OF A 105.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY, THROUGH A
CENTRAL ANGLE OF 25°32'58", AN ARC LENGTH OF 46.82 TO A POINT OF REVERSE
CURVATURE THROUGH WHICH A RADIAL LINE BEARS SOUTH 36°27'18" EAST; THENCE
CURVING TO THE RIGHT ALONG A 46.00 FOOT RADIUS CURVE, CONCAVE
SOUTHEASTERLY, THROUGH A CENTRAL ANGLE OF 37°51'40", AN ARC LENGTH OF
46.00 FEET TO A POINT OF REVERSE CURVATURE THROUGH WHICH A RADIAL LINE
BEARS SOUTH 24°08'36" EAST; THENCE CURVING TO THE LEFT ALONG A 105.00 FOOT
RADIUS CURVE, CONCAVE NORTHEASTERLY, THROUGH A CENTRAL ANGLE OF
25°32'58", AN ARC LENGTH OF 46.82 FEET TO A POINT OF COMPOUND CURVATURE TO
WHICH A RADIAL LINE BEARS SOUTH 24°08'36" EAST; THENCE CURVING TO THE LEFT
ALONG THE ARC OF A 530.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY,
THROUGH A CENTRAL ANGLE OF 18°15'11", AN ARC LENGTH OF 168.85 FEET TO A
POINT OF COMPOUND CURVATURE THROUGH WHICH A RADIAL LINE BEARS SOUTH
42°23'47" EAST; THENCE CURVING TO THE LEFT ALONG A 20.00 FOOT RADIUS CURVE,
CONCAVE NORTHWESTERLY, THROUGH A CENTRAL ANGLE OF 95°37'35", AN ARC
LENGTH OF 33.38 FEET TO A POINT TO WHICH A RADIAL LINE BEARS NORTH 41°58'39"
EAST; THENCE NORTH 41°58'39" EAST, 60.00 FEET; THENCE FROM A TANGENT
BEARING SOUTH 48°01'21" EAST, CURVING TO THE LEFT ALONG A 20.00 FOOT RADIUS
CURVE, CONCAVE NORTHEASTERLY (THE RADIUS POINT OF WHICH BEARS NORTH
41°58'39" EAST), THROUGH A CENTRAL ANGLE OF 95°37'35", AN ARC LENGTH OF 33.38

R:\050 (Office)\Projects\7541016A\Legals\BondSlgr.doc
3/21/2008 By: ALC Ckd. By: BAM

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296



**G. C. WALLACE, INC.**
Engineers / Planners / Surveyors

FEET TO A POINT OF COMPOUND CURVATURE THROUGH WHICH A RADIAL LINE
BEARS SOUTH 53°38'56" EAST; THENCE CURVING TO THE LEFT ALONG A 530.00 FOOT
RADIUS CURVE, THROUGH A CENTRAL ANGLE OF 34°27'49", AN ARC LENGTH OF
318.80 FEET; THENCE NORTH 01°53'15" EAST, 626.44 FEET; THENCE CURVING TO THE
LEFT ALONG A 20.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A
CENTRAL ANGLE OF 90°00'00", AN ARC LENGTH OF 31.42 FEET TO A POINT TO WHICH
A RADIAL LINE BEARS NORTH 01°53'15" EAST; THENCE NORTH 01°53'15" EAST, 60.00
FEET; THENCE FROM A TANGENT BEARING SOUTH 88°06'45" EAST, CURVING TO THE
LEFT ALONG A 20.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY (THE RADIUS
POINT OF WHICH BEARS NORTH 01°53'15" EAST), THROUGH A CENTRAL ANGLE OF
90°0'00", AN ARC LENGTH OF 31.42 FEET; THENCE NORTH 01°53'15" EAST, 224.05 FEET;
THENCE CURVING TO THE LEFT ALONG A 965.00 FOOT RADIUS CURVE, CONCAVE
NORTHWESTERLY, THROUGH A CENTRAL ANGLE OF 11°04'39", AN ARC LENGTH OF
186.57 FEET; THENCE NORTH 09°11'24" WEST, 128.25 FEET; THENCE CURVING TO THE
LEFT ALONG A 25.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A
CENTRAL ANGLE OF 88°31'36", AN ARC LENGTH OF 38.63 FEET TO A POINT ON THE
SOUTHWESTERLY RIGHT-OF-WAY LINE OF SHERWOOD GREENS DRIVE THROUGH
WHICH A RADIAL LINE BEARS NORTH 07°43'00" WEST; THENCE ALONG SAID RIGHT-OF-
WAY LINE; THENCE NORTH 07°43'00" WEST, 35.50 FEET; THENCE FROM A TANGENT
BEARING NORTH 82°17'00" EAST, CURVING TO THE RIGHT ALONG A 525.50 FOOT
RADIUS CURVE, CONCAVE NORTHWESTERLY (THE RADIUS POINT OF WHICH BEARS
NORTH 07°43'00" WEST), THROUGH A CENTRAL ANGLE OF 18°57'18", AN ARC LENGTH
OF 173.85 FEET TO THE **POINT OF BEGINNING** TO WHICH A RADIAL LINE BEARS
SOUTH 26°40'18" EAST.

CONTAINING 20.95ACRES±.

R:\050 (Office)\Projects\754\016A\Legals\BondSlgr.doc
3/21/2006 By: ALC Ckd. By: BAM

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296

*Bond*
*06-8770*



## CLARK COUNTY DEPARTMENT OF DEVELOPMENT SERVICES
## DEVELOPMENT OF OFF-SITE IMPROVEMENTS
## PERFORMANCE BOND

Bond # 08825616

That   Rhodes Ranch General Partnership                                        as

Principal, of 4730 S. Ft. Apache Rd, Ste. 300 ,

City of   Las Vegas, NV ,

County of  Clark ,

and Fidelity and Deposit Company of Maryland   as Surety, a corporation incorporated and doing

business under the laws of the State of ____Maryland____ and licensed to

conduct, transact and issue Surety business in the State of Nevada, are held and firmly bound to

Clark County, Nevada, as Obligee, in the sum of One Million Five Hundred Twenty Thousand

One Hundred Thirty Seven and 75/100 ($  1,520,137.75  ) Dollars, for the payment of the sum

well and truly to be made, and jointly and severally bind themselves, their heirs, successors,

assigns, executors, administrators and legal representatives firmly by these presents.

### CONDITIONS

1. Principal, as a condition of the development of the Rhodes Ranch Parcel 20-Seeliger Street project, entered into a written agreement or agreements ("improvement agreement(s)") with said Obligee to complete the required improvements specified in said improvement agreement(s) identified as Off-site improvements *HTE # 06-8770* , dated_____, and _____ ,dated _____ , and are attached hereto and by this reference incorporated herein.

2. If Principal fully and completely performs all of its obligations required by the said improvement agreement(s) during the original term thereof, or any extension of said term that may be granted by the Obligee with or without notice to the Surety, this obligation shall be voided; otherwise this obligation shall remain in full force and effect.

3. This obligation will continuously remain in full force and effect until and unless all of the conditions in he said improvement agreement(s) are fulfilled and completed to the satisfaction of the Obligee.

4. The provisions of this obligation shall be interpreted in manner consistent with the terms and conditions of the improvement agreement(s) and the requirements of the Clark County Code, including, but not limited to, Chapter 30.32, which by this reference is incorporated herein.

5. Surety hereby waives notice of any changes, modifications, or additions to the obligations specified in said improvement agreement(s).

Page 1 of 2

6. Any deviations, additions, or modifications to the obligations of the improvement agreement(s) may be made without the consent or knowledge of Surety and without in any way releasing Surety from liability under this bond.

7. In case of default by Principal, Surety may assure and complete or procure completion of the obligations of Principal, and Surety will be subrogated and entitled to all the rights and properties of Principal arising out of the improvement agreement(s).

IN WITNESS WHEREOF, the seal and signature of said Principal is hereto affixed and the corporate seal and the name of the said Surety is hereto affixed and attested by its duly authorized Attorney-in-Fact at _____ Westmont, Illinois _____ , ~~Nevada~~, this ___March 9th_____ , ___2006___ .

PRINCIPAL: Rhodes Ranch General Partnership

BY: _____

State of Nevada
County of Clark

This instrument was acknowledged before me on ___14ᵗʰ March_____ , 20 06 , by ___Paul Huggins_____ as ___CFO___ of ___Rhodes Ranch General Partnership___ (Principal).

NOTARY PUBLIC in and for said County and State.

BY: _____ , Nevada Resident Agent

#38440

BCC standard form approved 7/16/02.

SURETY: Fidelity and Deposit Company of Maryland

BY: ___Kelly A. Jacobs_____ , Attorney-in-Fact
Kelly A. Jacobs

State of ~~Nevada~~ Illinois
County of ~~Clark~~ DuPage

This instrument was acknowledged before me on ___March 9th_____ , 20 06 , by Kelly A. Jacobs as Attorney-in-Fact for Fidelity and Deposit Company of Maryland (Surety).

NOTARY PUBLIC in and for said County and State.  Melissa Schmidt

OFFICIAL SEAL
MELISSA SCHMIDT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/23/08

Brown & Brown Insurance of Nevada, Inc.
2340 Corporate Circle Drive, 2nd Floor
Henderson, NV 89074

Page 2 of 2

### Power of Attorney
## FIDELITY AND DEPOSIT COMPANY OF MARYLAND
## COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

KNOW ALL MEN BY THESE PRESENTS: That the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, corporations of the State of Maryland, by PAUL C. ROGERS, Vice President, and T. E. SMITH, Assistant Secretary, in pursuance of authority granted by Article VI, Section 2, of the By-Laws of said Companies, which are set forth on the reverse side hereof and are hereby certified to be in full force and effect on the date hereof, does hereby nominate, constitute and appoint Peggy FAUST, Kelly A. JACOBS, Stephen T. KAZMER, Bonnie KRUSE, Jennifer J. MCCOMB, Ebone MARCUS, James MOORE, Dawn MORGAN and Mary Beth PETERSON, all of Countryside, Illinois, EACH its true and lawful agent and Attorney-in-Fact, to make, execute, seal and deliver, for, and on its behalf as surety, and as its act and deed: **any and all bonds and undertakings**, and the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its office in Baltimore, Md., in their own proper persons.

The said Assistant Secretary does hereby certify that the extract set forth on the reverse side hereof is a true copy of Article VI, Section 2, of the By-Laws of said Companies, and is now in force.

IN WITNESS WHEREOF, the said Vice-President and Assistant Secretary have hereunto subscribed their names and affixed the Corporate Seals of the said FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, this 6th day of March, A.D. 2003.

ATTEST:

FIDELITY AND DEPOSIT COMPANY OF MARYLAND
COLONIAL AMERICAN CASUALTY AND SURETY COMPANY



*T. E. Smith*          *Assistant Secretary*      By:      *Paul C. Rogers*          *Vice President*

State of Maryland } ss:
City of Baltimore }

On this 6th day of March, A.D. 2003, before the subscriber, a Notary Public of the State of Maryland, duly commissioned and qualified, came PAUL C. ROGERS, Vice President, and T. E. SMITH, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, to me personally known to be the individuals and officers described in and who executed the preceding instrument, and they each acknowledged the execution of the same, and being by me duly sworn, severally and each for himself deposeth and saith, that they are the said officers of the Companies aforesaid, and that the seals affixed to the preceding instrument is the Corporate Seals of said Companies, and that the said Corporate Seals and their signatures as such officers were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

*Sandra Lynn Mooney*

Sandra Lynn Mooney          Notary Public
My Commission Expires: January 1, 2004

POA-F 036-0013A

## EXTRACT FROM BY-LAWS OF FIDELITY AND DEPOSIT COMPANY OF MARYLAND

"Article VI. Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages....and to affix the seal of the Company thereto."

## EXTRACT FROM BY-LAWS OF COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

"Article VI. Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

## CERTIFICATE

I, the undersigned, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that the Vice-President who executed the said Power of Attorney was one of the additional Vice-Presidents specially authorized by the Board of Directors to appoint any Attorney-in-Fact as provided in Article VI. Section 2, of the respective By-Laws of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990 and of the Board of Directors of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at a meeting duly called and held on the 5th day of May, 1994.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed."

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seals of the said Companies,

this _____ 9th _____ day of _____ March _____, 2006 ____.

_Assistant Secretary_



20060327-0000425

APN: 163-31-401-006

HTE #: 05-50386

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division

Fee: $0.00
H/C Fee: $0.00

03/27/2006          08:40:39
T20060053164
Requestor:
    DEVELOPMENT SERVICES CLARK COUNTY

Frances Deane          ARO
Clark County Recorder    Pgs: 9



# CLARK COUNTY
# DEPARTMENT OF DEVELOPMENT SERVICES

## OFF-SITE IMPROVEMENTS AGREEMENT

**THIS AGREEMENT**, made and entered into this 10th day of March, 20 06, by and between:

Rhodes Ranch General Partnership,

whose mailing address is:

4730 South Fort Apache Road, Suite #300

Las Vegas, NV 89147

(702) 873-5338

hereinafter referred to as DEVELOPER and CLARK COUNTY, NEVADA, hereinafter referred to as COUNTY, for construction of off-site improvements at the following location:

Cross Streets:     Sunset Road and Hualapai Way

Assessor's Parcel Number:   163-31-401-006

**WHEREAS**, DEVELOPER has submitted a plan to the COUNTY for a

Single Family Residential HOmes

(type of development); and

**WHEREAS**, the COUNTY requires construction of certain off-site improvements as part of said development.

**NOW, THEREFORE**, the parties to this agreement for and in consideration of the mutual promises herein contained and for other good and valuable considerations, do

1 of 8

hereby agreed as follows:

1.    OFF-SITE IMPROVEMENTS

The DEVELOPER, at his own cost, shall perform and complete all off-site work and improvements which may consist of, but not limited to, streets, street name signs, traffic signs, sewers, water systems, fire hydrants, curbs, gutters, sidewalks, street lighting, driveways, drainage facilities, accesses, survey monuments,

_PER HTE # 05-50386_

etc., hereinafter referred to as off-site improvements, said off-site improvements shall be constructed in accordance with applicable ordinances, regulations, standards and specifications, and other requirements of CLARK COUNTY, NEVADA.

2.    PLANS APPROVED BY THE DIRECTOR OF DEVELOPMENT SERVICES

No off-site improvements shall commence until:

(a)    off-site improvement plans have been approved by the Director of DEVELOPMENT SERVICES or his authorized representative;

(b)    one-hundred percent (100%) of the plan-check and inspection fees have been paid;

(c)    performance security executed as required by CLARK COUNTY ordinances; and

(d)    an off-site permit has been issued by the Director of DEVELOPMENT SERVICES, or his authorized representative.

3.    NOTICE OF COMMENCEMENT OF CERTAIN WORK

The DEVELOPER shall notify the Director of Development Services no less than 24 hours in advance of the date and hour work on any of the following items is expected to begin, and thereafter if conditions develop to delay the start of work, the DEVELOPER agrees to notify the Director of Development Services of the delay not less than two hours before work is scheduled to begin:

--    Placing sewer, water, gas, power, telephone lines and fire hydrants.

--    Back-filling of sewer, water, gas, power and telephone lines.

--    Placing concrete for curb, gutter, sidewalk, valley gutters, storm drain structures, manholes, street lighting foundations and alley gutters.

2 of 8

--     Placing Type I and Type II gravel base course.

--     Priming base course.

--     Placing street lighting and burn testing.

--     Placing street name signs and traffic control signs.

4.    APPROVAL OF WORK AFTER INSPECTION

(a)    Whenever the Director of Development Services or his duly authorized representative inspects portion of work as mentioned hereinbefore, and finds the work performed to be in a satisfactory condition for inclusion in the completed project, the Director of Development Services or his duly authorized representative shall issue a statement of inspection which shall permit the DEVELOPER to perform the next phase of the construction. Ordinarily, not less than one continuous block of any one of the items of work mentioned will be approved.

(b)    Inspection and approval of any item of work shall not forfeit the right of the COUNTY to require the corrections of quality, workmanship or materials at any time prior to the final acceptance of the project by the Director of Development Services, although previously approved by an oversight.

(c)    Nothing herein shall relieve the DEVELOPER of the responsibility for proper construction of the off-site improvements and DEVELOPER shall maintain said improvements until the work has been accepted by the Director of Development Services.

5.    ADJUSTMENT TO EXISTING UTILITIES AND COST THEREOF

The DEVELOPER shall, at its sole expense, provide for adjustments necessary to all existing utilities because of the work required by this agreement.

6.    FULL COMPLIANCE WITH COUNTY REQUIREMENTS

The DEVELOPER shall perform and complete all off-site improvements in accordance with the regulations, specifications, and ordinances of the said County of Clark, and the construction plans approved by Clark County Development Services Department.

The DEVELOPER shall obtain all required permits from other County, State, and Federal agencies, including but not limited to Clark County Health District, Nevada Department of Environmental Protection, and United States Army Corps of Engineers.

Case 09-14814-lbr    Claim 71-1 Part 3    Filed 09/25/09    Page 46 of 52

The COUNTY shall have the right to require corrections to the construction plans by the DEVELOPER at any time before release of the bond (performance bond, cash deposit, or agreement in lieu of bond) required herein, of any item or items contained in this agreement which do not conform to COUNTY standard specifications, laws, regulations or ordinances; even though the plans for the item in question may have been approved by the Director of Development Services.

The DEVELOPER shall start said off-site improvements upon receipt of a COUNTY-approved off-site permit and said off-site improvements shall be completed prior to expiration of said permit in accordance with the required ordinances.

In the event the DEVELOPER fails to complete said improvements within said period or in the event the DEVELOPER in the COUNTY's opinion has created a safety hazard, the COUNTY, at its option, may proceed to complete said improvements at the expense of the DEVELOPER. The COUNTY may use the required performance bond as provided for hereinafter.

7.    OTHER CONDITIONS AND REQUIREMENTS

The DEVELOPER further agrees that, in addition to the above requirements, any and/or all such conditions, stipulations and agreements made by the DEVELOPER and the Board of County Commissioners and/or County Planning Commission of Clark County shall be fully performed.

The DEVELOPER further agrees that all work is to be performed by a qualified contractor licensed to do business in the State of Nevada and the County of Clark.

The DEVELOPER shall maintain, protect and take care of all work areas for the project, including any adjacent existing improvements, until its completion and acceptance by Clark County.    Maintenance of any inhabited area of the development, and the adjacent streets and/or neighborhoods, shall include, but not be limited to, sweeping of the streets and keeping the gutters free of dirt and debris.

During move-in, construction and move-off, the DEVELOPER shall keep the site free and clear from dangerous accumulation of rubbish and debris and shall maintain sufficient and proper barricades, lights, etc., in accordance with the latest manual on the placement of traffic control devices accepted by the Department of Development Services for the protection of the public. Also, after excavation or placement of gravel, if the sub-grade and/or gravel base material is left exposed and in the opinion of the Director of Development Services is not properly maintained, thus causing either a rough riding surface or a dust problem, the Director of Development Services may require the DEVELOPER to do whatever is necessary to provide an adequate travel-way. If a detour is needed, the Director of Development Services shall determine to what extent it shall be maintained, which

4 of 8

shall include the placing of temporary paving, if it is to be used for an extended period of time.

Final acceptance of the work will not be made by the COUNTY until the area (falling under this agreement) and adjacent property has been cleared of all rubbish, surplus materials and equipment resulting from the contractor's operations, to the satisfaction of the Director of Development Services.

8.    **LIABILITY**

The DEVELOPER shall indemnify, defend, and hold harmless the COUNTY, its officers, agents, volunteers, and employees, against and from any and all liability, loss, damage, claims, fines, demands, causes of action, costs, expenses, and judgments of whatsoever nature, including but not limited to reasonable costs of investigation, reasonable attorney's fees and expenses, all reasonable expert witness fees and expenses, and all court or arbitration or other alternative dispute resolution costs which result from injury to or death of any persons whomsoever, and/or against and from damage to or loss or destruction of property whatsoever when such injury death, loss, destruction or damage is due to or arises in connection with or as a result of any work done by the DEVELOPER in connection with the construction of the off-site improvements, and/or arises of or in connection with DEVELOPER's performance or failure to perform the terms and conditions of this agreement.    This Section 8 survives termination or completion of this agreement.

9.    **PLAN REQUIREMENTS ON COMPLETION OF IMPROVEMENTS**

Upon completion of all the off-site improvements within the COUNTY right-of-way required hereby and prior to release of any performance security, the DEVELOPER shall furnish the Director of Development Services with an as-built plan which shall accurately indicate, by lettered dimensions, the location of all manholes, the location size and depth of all sewer mains, underground water, power, gas, and other lines, with street plans and profiles for the same, including laterals and "Y's" for connection of house service lines.

10.    **WARRANTY**

The DEVELOPER is responsible should any original or developed defects or failures appear within a period of one year from the date of acceptance of the work by the COUNTY. The DEVELOPER shall, at his own expense, make good such defects and failures and make all replacements and adjustments required, within thirty (30) days after being notified by the COUNTY to do so. All repairs shall be subject to the approval of the Director of Development Services and/or the Director of Public Works.

5 of 8

This agreement does not limit or relieve DEVELOPER from any other obligation or responsibility which the DEVELOPER may otherwise have as a result of the street improvements, including any damages or latent defects which may occur beyond the warranty period specified above. Furthermore, DEVELOPER, at all times, is not relieved of any obligation or responsibility it may have by law including but not limited to damages for latent deficiencies, injury to real or personal property or injury to or wrongful death of a person, (N.R.S. 11.204).

11.    REQUIREMENTS OF PERFORMANCE BOND OR OTHER SECURITY

DEVELOPER shall furnish without cost to the COUNTY a surety and performance bond, cash deposit or agreement in lieu of bond for the full cost of said off-site improvements in favor of the COUNTY conditioned upon the DEVELOPER completing said off-site improvements within the time period prescribed by this agreement. Also, in the event the COUNTY exercises its option to complete said off-site improvements, that said bond, cash deposit or agreement in lieu of bond shall be used for the payment of the costs of completion of said off site improvements by the COUNTY in case the DEVELOPER fails to do so within said time period.

If the construction or installation of any off-site improvements or facilities for which a bond, cash deposit or agreement in lieu of bond is posted are not completed within the time frame of the off-site permit issued for the development; or if the DEVELOPER has suspended work and has failed to provide continued construction during the past 60 days; or if in the event the DEVELOPER, in the COUNTY's opinion, has created a safety hazard; or if such construction is not in accordance with applicable standards and specifications as prescribed by law, then, in either or any such event, the COUNTY may, at its option, proceed to complete said off site improvements at the expense of the DEVELOPER under this bond as provided for hereinafter.

That DEVELOPER acknowledges that the bond provided for in this agreement to construct the off-site improvements is only based upon an estimate of their cost by the Engineer of the County and in the event that actual cost of said off-site improvements shall exceed such sum, DEVELOPER is in no way relieved by this agreement from paying the entire amount of such excess.

Any application for release of said bond or cash deposit upon the completion of the off-site improvements by the DEVELOPER shall not be granted unless accompanied by a written certificate from the Director of Development Services stating that all requirements hereof have been satisfactorily completed in accordance with the terms of this agreement.

6 of 8

12. **CERTIFICATE OF OCCUPANCY**

No certificates of occupancy shall be granted until such time as the off-site improvements have been completed to the satisfaction of the Director of Development Services, and in accordance with this agreement. The granting of a certificate of occupancy does not relieve DEVELOPER of its obligations in this agreement.

The granting of a certificate of occupancy does not imply that the off-site improvements have been properly completed nor authorize the release of the performance bond or other security.

13. **CERTIFICATE OF RELEASE**

Upon final acceptance, by the Director of Development Services, of all of the off-site improvements required to be constructed by DEVELOPER as herein provided, DEVELOPER shall be issued a certificate of release of said performance bond or cash deposit, which shall be issued by the Director of Development Services.

14. **NO THIRD PARTY BENEFICIARY**

Any inspections or subsequent approvals undertaken by the COUNTY pursuant to express or implied terms of this agreement are undertaken solely to insure compliance with the terms of this agreement and are not undertaken for the benefit of any individual or group of individuals as members of the public. It is not intended by any of the provisions of any part of this agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this agreement to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this agreement. Provisions in this agreement dealing with inspections, approvals or changes requested or made do not expand the COUNTY's general law duties.

15. **ASSIGNMENTS**

DEVELOPER cannot assign this agreement, in whole or in part, or any rights herein granted, without the written consent of the COUNTY and it is agreed that any attempted transfer or assignment of this agreement or any of the rights herein granted, whether voluntary, by operation of law, or otherwise, without such consent in writing, shall be absolutely void at the option of the COUNTY.

16. **AGREEMENT TO BE RECORDED**

The DEVELOPER agrees that this agreement will be recorded upon the land described in Exhibit "A" and this agreement shall also be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors,

7 of 8

and assigns. DEVELOPER and any heirs, executors, administrators, successors and assigns, if any, shall be jointly and severally liable for DEVELOPER's obligations herein.

17.  **WAIVER**

None of the conditions of this agreement shall be considered waived by either party unless such waiver is in writing and signed by both parties. No such waiver shall be a waiver of any past or future default, breach, or modification of any of the conditions of the agreement expressly stipulated in such waiver.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and official seals.

STATE OF NEVADA    )
                   )  SS
COUNTY OF CLARK    )

This instrument was acknowledged before me this 10ᵗʰ day of March, 20__, by Paul Huygens

_____
NOTARY PUBLIC in and for said County and State.

**CORPORATION CERTIFICATE**

I, _____, certify that I am the Secretary of the Corporation named as Developer in the foregoing document; that _____ was then President/Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

_____
SECRETARY

DEVELOPER:

Rhodes Ranch General Partnership

4730 S. Fort Apache Road, Suite #300

Las Vegas, NV 89147

Paul Huygens

NOTARY STAMP:

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
AUGUSTA S. YAMAMOTO
Appt. No. 03-82552-1
My Appt. Expires June 24, 2007

MARK MIKOLAITIS
Notary Public State of Nevada
No. 06-103285-1
My appt. exp. Feb. 1, 2010

-- FOR COUNTY USE ONLY --

STATE OF NEVADA    )
                   )  SS
COUNTY OF CLARK    )

Signed or attested before me on this 22ⁿᵈ day of MARCH 20 06 by ROBERT B. THOMPSON,

_____
NOTARY PUBLIC in and for said County and State

COUNTY OF CLARK, a political subdivision of the State of Nevada

BY _____
ROBERT B. THOMPSON
DEPARTMENT OF DEVELOPMENT SERVICES

BCC standard form approved July 16, 2002

8 of 8



## G. C. WALLACE, INC.
Engineers / Planners / Surveyors

APN# 163-31-401-006

**EXPLANATION:**    THIS LEGAL DESCRIBES THE OVERALL BOUNDARY OF
"SOUTHWEST RANCH PARCEL 11".

### LEGAL DESCRIPTION

ALL OF GOVERNMENT LOT 34 OF SECTION 31, TOWNSHIP 21 SOUTH, RANGE 60 EAST,
M.D.M., CLARK COUNTY, NEVADA, AND BEING MORE PARTICULARLY DESCRIBED AS
FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF SAID SECTION 31; THENCE ALONG
THE SOUTHERLY LINE THEREOF, NORTH 89°16'12" EAST, 223.31 FEET TO THE **POINT
OF BEGINNING**; THENCE DEPARTING SAID SOUTHERLY LINE, NORTH 00°51'53" EAST,
685.77 FEET; THENCE NORTH 89°20'16" EAST, 339.03 FEET; THENCE SOUTH 00°50'45"
WEST, 685.37 FEET TO A POINT ON THE SOUTHERLY LINE OF SAID SECTION 31;
THENCE ALONG SAID SOUTHERLY LINE, SOUTH 89°16'12" WEST, 339.27 FEET TO THE
**POINT OF BEGINNING**.

CONTAINING 5.33 ACRES±.

GERALD L. HOLTON, PLS
NEVADA LICENSE NO. 13290
EXPIRES: JUNE 30, 2005

C:\Documents and Settings\bross\Local Settings\Temporary Internet Files\OLK3A\SWRP11.doc
3/21/2006  By: FAP  Ckd. By: JGK

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296

Bond
05-50386



## CLARK COUNTY DEPARTMENT OF DEVELOPMENT SERVICES
## DEVELOPMENT OF OFF-SITE IMPROVEMENTS
## PERFORMANCE BOND

Bond No. 08825615

That  Rhodes Ranch General Partnership                                         as

Principal, of  4730 S. Fort Apache, Ste. 300                                   ,

City of  Las Vegas, NV                                                         ,

County of  Clark                                                              ,

and Fidelity and Deposit Company of Maryland Surety, a corporation incorporated and doing

business under the laws of the State of  Maryland                and licensed to

conduct, transact and issue Surety business in the State of Nevada, are held and firmly bound to

Clark County, Nevada, as Obligee, in the sum of  Eight Hundred Thirteen Thousand Seven Hundred

Thirty Seven and 39/100         ($  813,737.39              ) Dollars, for the payment of the sum

well and truly to be made, and jointly and severally bind themselves, their heirs, successors,

assigns, executors, administrators and legal representatives firmly by these presents.

### CONDITIONS

1. Principal, as a condition of the development of the Southwest Ranch Parcel II   project,
   entered into a written agreement or agreements ("improvement agreement(s)") with said
   Obligee to complete the required improvements specified in said improvement agreement(s)
   identified as      off-site improvements HTE # 05-50386   , dated_____, and
   _____ ,dated _____, and are attached hereto and by
   this reference incorporated herein.

2. If Principal fully and completely performs all of its obligations required by the said improvement
   agreement(s) during the original term thereof, or any extension of said term that may be
   granted by the Obligee with or without notice to the Surety, this obligation shall be voided;
   otherwise this obligation shall remain in full force and effect.

3. This obligation will continuously remain in full force and effect until, and unless all of the
   conditions in  he said improvement agreement(s) are fulfilled and completed to the satisfaction
   of the Obligee.

4. The provisions of this obligation shall be interpreted in manner consistent with the terms and
   conditions of the improvement agreement(s) and the requirements of the Clark County Code,
   including, but not limited to, Chapter 30.32, which by this reference is incorporated herein.

5. Surety hereby waives notice of any changes, modifications, or additions to the obligations
   specified in said improvement agreement(s).

Page 1 of 2

6. Any deviations, additions, or modifications to the obligations of the improvement agreement(s) may be made without the consent or knowledge of Surety and without in any way releasing Surety from liability under this bond.

7. In case of default by Principal, Surety may assure and complete or procure completion of the obligations of Principal, and Surety will be subrogated and entitled to all the rights and properties of Principal arising out of the improvement agreement(s).

IN WITNESS WHEREOF, the seal and signature of said Principal is hereto affixed and the corporate seal and the name of the said Surety is hereto affixed and attested by its duly authorized Attorney-in-Fact at _____ Westmont, Illinois _____, Nevada, this March 6 _____, 2006 _____.

|  |  |
|---|---|
| Rhodes Ranch General<br>**PRINCIPAL:** Partnership | Fidelity and Deposit Company<br>**SURETY:** of Maryland |
| BY: | BY: Kelly A. Jacobs , Attorney-in-Fact |
| State of Nevada<br>County of Clark | State of Nevada Illinois<br>County of Clark DuPage |

This instrument was acknowledged before me on 14th March , 20 06, by Paul Hungenes as CFO of Rhodes Ranch General (Principal). Partnership

**NOTARY PUBLIC** in and for said County and State.

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
AUGUSTA S. YAMAMOTO
Appl. No. 03-82552-1
My Appt. Expires June 24, 2007

BY: _____
Rose M. Creighton Nevada Resident Agent

BCC standard form approved 7/16/02.

This instrument was acknowledged before me on March 6 , 20 06, by Kelly A. Jacobs as Attorney-in-Fact for Fidelity and Deposit (Surety). Company of Maryland

**NOTARY PUBLIC** in and for said County and State. Melissa Schmidt

OFFICIAL SEAL
MELISSA SCHMIDT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/23/08

Brown and Brown Insurance of Nevada

2340 Corporate Circle

Henderson, NV 89074-7732

Page 2 of 2

## Power of Attorney
### FIDELITY AND DEPOSIT COMPANY OF MARYLAND
### COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

KNOW ALL MEN BY THESE PRESENTS: That the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, corporations of the State of Maryland, by PAUL C. ROGERS, Vice President, and T. E. SMITH, Assistant Secretary, in pursuance of authority granted by Article VI, Section 2, of the By-Laws of said Companies, which are set forth on the reverse side hereof, and are hereby certified to be in full force and effect on the date hereof, does hereby nominate, constitute and appoint **Peggy FAUST, Kelly A. JACOBS, Stephen T. KAZMER, Bonnie KRUSE, Jennifer J. MCCOMB, Elaine MARCUS, James MOORE, Dawn MORGAN and Mary Beth PETERSON, all of Countryside, Illinois,** EACH its true and lawful agent and Attorney-in-Fact, to make, execute, seal and deliver, for, and on its behalf as surety, and as its act and deed: any and all bonds and undertakings, and the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its office in Baltimore, Md., in their own proper persons.

The said Assistant Secretary does hereby certify that the extract set forth on the reverse side hereof is a true copy of Article VI, Section 2, of the By-Laws of said Companies, and is now in force.

IN WITNESS WHEREOF, the said Vice-President and Assistant Secretary have hereunto subscribed their names and affixed the Corporate Seals of the said FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, this 6th day of March, A.D. 2003.

ATTEST:                                       **FIDELITY AND DEPOSIT COMPANY OF MARYLAND**
                                              **COLONIAL AMERICAN CASUALTY AND SURETY COMPANY**



*T. E. Smith*        *Assistant Secretary*    By:    *Paul C. Rogers*        *Vice President*

State of Maryland }
City of Baltimore } ss:

On this 6th day of March, A.D. 2003, before the subscriber, a Notary Public of the State of Maryland, duly commissioned and qualified, came PAUL C. ROGERS, Vice President, and T. E. SMITH, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, to me personally known to be the individuals and officers described in and who executed the preceding instrument, and they each acknowledged the execution of the same, and being by me duly sworn, severally and each for himself deposeth and saith, that they are the said officers of the Companies aforesaid, and that the seals affixed to the preceding instrument is the Corporate Seals of said Companies, and that the said Corporate Seals and their signatures as such officers were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

*Sandra Lynn Mooney*

Sandra Lynn Mooney                          *Notary Public*
My Commission Expires: January 1, 2004

POA-F 036-0013A

Case 09-14814-gwz    Doc 1375-3    Entered 03/31/11 16:14:14    Page 60 of 60

Case 09-14814-lbr    Claim 71-1 Part 4    Filed 09/25/09    Page 3 of 51.

## EXTRACT FROM BY-LAWS OF FIDELITY AND DEPOSIT COMPANY OF MARYLAND

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

## EXTRACT FROM BY-LAWS OF COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

## CERTIFICATE

I, the undersigned, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that the Vice-President who executed the said Power of Attorney was one of the additional Vice-Presidents specially authorized by the Board of Directors to appoint any Attorney-in-Fact as provided in Article VI, Section 2, of the respective By-Laws of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990 and of the Board of Directors of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at a meeting duly called and held on the 5th day of May, 1994.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed."

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seals of the said Companies,

this ____6th____ day of ____March____        2006

*Assistant Secretary*