State of    Illinois}
                   } ss.
County of DuPage  }

On <u>March 6, 2006,</u> before me, a Notary Public in and for said County and State, residing therein, duly commissioned and sworn,  personally appeared <u>Kelly A. Jacobs</u> known to me to be Attorney-in-Fact of <u>Fidelity and Deposit Company of Maryland</u> the corporation described in and that executed the within and foregoing instrument, and known to me to be the person who executed the said instrument in behalf of the said corporation, and he duly acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF,  I have hereunto set my hand and affixed my official seal, the day and year stated in this certificate above.

My Commission Expires <u>06/23/2008</u>

Melissa Schmidt, Notary Public

```
OFFICIAL SEAL
MELISSA SCHMIDT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/23/08
```

05-46722
BND



**CLARK COUNTY DEPARTMENT OF DEVELOPMENT SERVICES
DEVELOPMENT OF OFF-SITE IMPROVEMENTS
PERFORMANCE BOND**    Bond No. 5020298

That Rhodes Ranch, GP _____ as

Principal, of 4730 S. Fort Apache, Ste. 300 _____,

City of Las Vegas, NV _____,

County of Clark _____,

and Bond Safeguard Insurance Company _____ as Surety, a corporation incorporated and doing

business under the laws of the State of _____ Illinois _____ and licensed to

conduct, transact and issue Surety business in the State of Nevada, are held and firmly bound to

Clark County, Nevada, as Obligee, in the sum of One Million Four Hundred Eighty Eight Thousand

Two Hundred Eighty One and 18/100 $ 1,488,281.18 _____) Dollars, for the payment of the sum

well and truly to be made, and jointly and severally bind themselves, their heirs, successors,

assigns, executors, administrators and legal representatives firmly by these presents.

### CONDITIONS

Rhodes Ranch Parcel 20

1. Principal, as a condition of the development of the Unit 2 _____ project,
   entered into a written agreement or agreements ("improvement agreement(s)") with said
   Obligee to complete the required improvements specified in said improvement agreement(s)
   identified as Roadway, Traffic, Drainage, Water, and Sewer _____ , dated_____ , and
   _____ ,dated _____, and are attached hereto and by
   this reference incorporated herein.

2. If Principal fully and completely performs all of its obligations required by the said improvement
   agreement(s) during the original term thereof, or any extension of said term that may be
   granted by the Obligee with or without notice to the Surety, this obligation shall be voided;
   otherwise this obligation shall remain in full force and effect.

3. This obligation will continuously remain in full force and effect until and unless all of the
   conditions in he said improvement agreement(s) are fulfilled and completed to the satisfaction
   of the Obligee.

4. The provisions of this obligation shall be interpreted in manner consistent with the terms and
   conditions of the improvement agreement(s) and the requirements of the Clark County Code,
   including, but not limited to, Chapter 30.32, which by this reference is incorporated herein.

5. Surety hereby waives notice of any changes, modifications, or additions to the obligations
   specified in said improvement agreement(s).

Page 1 of 2

6. Any deviations, additions, or modifications to the obligations of the improvement agreement(s) may be made without the consent or knowledge of Surety and without in any way releasing Surety from liability under this bond.

7. In case of default by Principal, Surety may assure and complete or procure completion of the obligations of Principal, and Surety will be subrogated and entitled to all the rights and properties of Principal arising out of the improvement agreement(s).

IN WITNESS WHEREOF, the seal and signature of said Principal is hereto affixed and the corporate seal and the name of the said Surety is hereto affixed and attested by its duly authorized Attorney-in-Fact at _____Westmont, Illinois_____, Nevada, this _____December 12_____, _____2005_____.

**PRINCIPAL:** Rhodes Ranch, GP

BY: _____
Paul Huygens

State of Nevada
County of Clark

This instrument was acknowledged before me on _December 16_, 20_05_, by _Paul Huygens_ as _CFO_ of _Rhodes Design + Development_ (Principal).

_C. Hart_

**NOTARY PUBLIC** in and for said County and State.

> NOTARY PUBLIC
> STATE OF NEVADA
> County of Clark
> C. HART
> Appt. No. 05-95969-1
> My Appt. Expires April 8, 2009

BY: _____
Caroline L. Brown, **Nevada Resident Agent**

BCC standard form approved 7/16/02.

**SURETY:** Bond Safeguard Insurance Company

BY: _Melissa Schmidt_, **Attorney-in-Fact**
Melissa Schmidt

State of Nevada Illinois
County of Clark DuPage

This instrument was acknowledged before me on _December 12_, 20_05_, by _Melissa Schmidt_ as Attorney-in-Fact for _Bond Safeguard_ (Surety).
Insurance Company

_Heather A Beck_

**NOTARY PUBLIC** in and for said County and State. Heather A. Beck

> OFFICIAL SEAL
> HEATHER A BECK
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:02/05/08

2213 N. Green Valley Parkway #101

Henderson, NV 89014

_Gulf Insurance Company_

· Page 2 of 2

**POWER OF ATTORNEY**                    AO  10538

# Bond Safeguard INSURANCE COMPANY

KNOW ALL MEN BY THESE PRESENTS, that BOND SAFEGUARD INSURANCE COMPANY, an Illinois Corporation with its principal office in Lombard, Illinois, does hereby constitute and appoint:    Michael J. Scheer, James I. Moore, Christine Woods, Irene Diaz, Bonnie Kruse, Stephen T. Kazmer, Dawn L. Morgan, Peggy Faust, Kelly A. Jacobs, Elaine Marcus, Jennifer J. McComb, Melissa Schmidt its true and lawful Attorney(s)-In-Fact to make, execute, seal and deliver for, and on its behalf as surety, any and all bonds, undertakings or other writings obligatory in nature of a bond.

This authority is made under and  by  the  authority  of a resolution which was passed by the Board of Directors of BOND SAFEGUARD INSURANCE COMPANY on the 7th day of November, 2001 as follows:

Resolved, that the President of the Company is hereby authorized to appoint and empower any representative of the Company or other person or persons as Attorney-In-Fact to execute on behalf of the Company any bonds, undertakings, policies, contracts of indemnity or other writings obligatory in nature of a bond not to exceed $2,000,000.00, Two Million Dollars, which the Company might execute through its duly elected officers, and affix the seal of the Company thereto. Any said execution of such documents by an Attorney-In-Fact shall be as binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company. Any Attorney-In-Fact, so appointed, may be removed for good cause and the authority so granted may be revoked as specified in the Power of Attorney.

Resolved, that the signature of the President and the seal of the Company may be affixed by facsimile on any power of attorney granted, and the signature of the Vice President, and the seal of the Company may be affixed by facsimile to any certificate of any such power and any such power or certificate bearing such facsimile signature and seal shall be valid and binding on the Company. Any such power so executed and sealed and certificate so executed and sealed shall, with respect to any bond or undertaking to which it is attached, continue to be valid and binding on the Company.

IN WITNESS THEREOF, BOND SAFEGUARD INSURANCE COMPANY has caused this instrument to be signed by its President, and its Corporate Seal to be affixed this 7th day of November, 2001.



**BOND SAFEGUARD INSURANCE COMPANY**

BY _____
David E. Campbell
President

**ACKNOWLEDGEMENT**

On this 7th day of November, 2001, before me, personally came David E. Campbell to me known, who being duly sworn, did depose and say that he is the President of BOND SAFEGUARD INSURANCE COMPANY, the corporation described in and which executed the above instrument; that he executed said instrument on behalf of the corporation by authority of his office under the By-laws of said corporation.

| "OFFICIAL SEAL"
| LYDIA J. DE JONG
| Notary Public, State of Illinois
| My Commission Expires 1/12/07 |

_____
Lydia J. DeJong
Notary Public

**CERTIFICATE**

I, the undersigned, Vice President of BOND SAFEGUARD INSURANCE COMPANY, An Illinois Insurance Company, DO HEREBY CERTIFY that the original Power of Attorney of which the foregoing is a true and correct copy, is in full force and effect and has not been revoked and the resolutions as set forth are now in force.

Signed and Sealed at Lombard, Illinois this ___12th'___ day of __December__ , 20 05 .

_____
Donald D. Buchanan
Secretary

20060104-0002793

APN: 176-17-301-006

HTE #: 05-46722

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division



Fee: $0.00
N/C Fee: $0.00

01/04/2006          11:19:39
T20060001478
Requestor:
DEVELOPMENT SERVICES CLARK COUNTY

Frances Deane                    CAE
Clark County Recorder        Pgs: 11



# CLARK COUNTY
## DEPARTMENT OF DEVELOPMENT SERVICES

### OFF-SITE IMPROVEMENTS AGREEMENT

**THIS AGREEMENT**, made and entered into this __8ᵗʰ__ day of __DECEMBER__,
20 __05__ , by and between:

Rhodes Ranch G.P.

whose mailing address is:

4730 S. Fort Apache Road, Suite #300

Las Vegas, NV 89147

(702) 873-5338

hereinafter referred to as DEVELOPER and CLARK COUNTY, NEVADA, hereinafter
referred to as COUNTY, for construction of off-site improvements at the following location:

**Cross Streets:** __Wigwam and Fort Apache__

**Assessor's Parcel Number:** __176-17-301-006__

**WHEREAS,** DEVELOPER has submitted a plan to the COUNTY for a

Single Family Residential

(type of development); and

**WHEREAS,** the COUNTY requires construction of certain off-site
improvements as part of said development.

**NOW, THEREFORE,** the parties to this agreement for and in consideration of
the mutual promises herein contained and for other good and valuable considerations, do

1 of 8

hereby agreed as follows:

1.    OFF-SITE IMPROVEMENTS

The DEVELOPER, at his own cost, shall perform and complete all off-site work and improvements which may consist of, but not limited to, streets, street name signs, traffic signs, sewers, water systems, fire hydrants, curbs, gutters, sidewalks, street lighting, driveways, drainage facilities, accesses, survey monuments,
         PER    HTE # 05-46722
etc., hereinafter referred to as off-site improvements, said off-site improvements shall be constructed in accordance with applicable ordinances, regulations, standards and specifications, and other requirements of CLARK COUNTY, NEVADA.

2.    PLANS APPROVED BY THE DIRECTOR OF DEVELOPMENT SERVICES

No off-site improvements shall commence until:

(a)    off-site improvement plans have been approved by the Director of DEVELOPMENT SERVICES or his authorized representative;

(b)    one-hundred percent (100%) of the plan-check and inspection fees have been paid;

(c)    performance security executed as required by CLARK COUNTY ordinances; and

(d)    an off-site permit has been issued by the Director of DEVELOPMENT SERVICES, or his authorized representative.

3.    NOTICE OF COMMENCEMENT OF CERTAIN WORK

The DEVELOPER shall notify the Director of Development Services no less than 24 hours in advance of the date. and hour work on any of the following items is expected to begin, and thereafter if conditions develop to delay the start of work, the DEVELOPER agrees to notify the Director of Development Services of the delay not less than two hours before work is scheduled to begin:

--    Placing sewer, water, gas, power, telephone lines and fire hydrants.

--    Back-filling of sewer, water, gas, power and telephone lines.

--    Placing concrete for curb, gutter, sidewalk, valley gutters, storm drain structures, manholes, street lighting foundations and alley gutters.

2 of 8

--    Placing Type I and Type II gravel base course.

--    Priming base course.

--    Placing street lighting and bum testing.

--    Placing street name signs and traffic control signs.

4.    APPROVAL OF WORK AFTER INSPECTION

(a)    Whenever the Director of Development Services or his duly authorized representative inspects portion of work as mentioned hereinbefore, and finds the work performed to be in a satisfactory condition for inclusion in the completed project, the Director of Development Services or his duly authorized representative shall issue a statement of inspection which shall permit the DEVELOPER to perform the next phase of the construction. Ordinarily, not less than one continuous block of any one of the items of work mentioned will be approved.

(b)    Inspection and approval of any item of work shall not forfeit the right of the COUNTY to require the corrections of quality, workmanship or materials at any time prior to the final acceptance of the project by the Director of Development Services, although previously approved by an oversight.

(c)    Nothing herein shall relieve the DEVELOPER of the responsibility for proper construction of the off-site improvements and DEVELOPER shall maintain said improvements until the work has been accepted by the Director of Development Services.

5.    ADJUSTMENT TO EXISTING UTILITIES AND COST THEREOF

The DEVELOPER shall, at its sole expense, provide for adjustments necessary to all existing utilities because of the work required by this agreement.

6.    FULL COMPLIANCE WITH COUNTY REQUIREMENTS

The DEVELOPER shall perform and complete all off-site improvements in accordance with the regulations, specifications, and ordinances of the said County of Clark, and the construction plans approved by Clark County Development Services Department.

The DEVELOPER shall obtain all required permits from other County, State, and Federal agencies, including but not limited to Clark County Health District, Nevada Department of Environmental Protection, and United States Army Corps of Engineers.

3 of 8

The COUNTY shall have the right to require corrections to the construction plans by the DEVELOPER at any time before release of the bond (performance bond, cash deposit, or agreement in lieu of bond) required herein, of any item or items contained in this agreement which do not conform to COUNTY standard specifications, laws, regulations or ordinances; even though the plans for the item in question may have been approved by the Director of Development Services.

The DEVELOPER shall start said off-site improvements upon receipt of a COUNTY-approved off-site permit and said off-site improvements shall be completed prior to expiration of said permit in accordance with the required ordinances.

In the event the DEVELOPER fails to complete said improvements within said period or in the event the DEVELOPER in the COUNTY's opinion has created a safety hazard, the COUNTY, at its option, may proceed to complete said improvements at the expense of the DEVELOPER. The COUNTY may use the required performance bond as provided for hereinafter.

### 7.   OTHER CONDITIONS AND REQUIREMENTS

The DEVELOPER further agrees that, in addition to the above requirements, any and/or all such conditions, stipulations and agreements made by the DEVELOPER and the Board of County Commissioners and/or County Planning Commission of Clark County shall be fully performed.

The DEVELOPER further agrees that all work is to be performed by a qualified contractor licensed to do business in the State of Nevada and the County of Clark.

The DEVELOPER shall maintain, protect and take care of all work areas for the project, including any adjacent existing improvements, until its completion and acceptance by Clark County.   Maintenance of any inhabited area of the development, and the adjacent streets and/or neighborhoods, shall include, but not be limited to, sweeping of the streets and keeping the gutters free of dirt and debris.

During move-in, construction and move-off, the DEVELOPER shall keep the site free and clear from dangerous accumulation of rubbish and debris and shall maintain sufficient and proper barricades, lights, etc., in accordance with the latest manual on the placement of traffic control devices accepted by the Department of Development Services for the protection of the public. Also, after excavation or placement of gravel, if the sub-grade and/or gravel base material is left exposed and in the opinion of the Director of Development Services is not properly maintained, thus causing either a rough riding surface or a dust problem, the Director of Development Services may require the DEVELOPER to do whatever is necessary to provide an adequate travel-way. If a detour is needed, the Director of Development Services shall determine to what extent it shall be maintained, which

4 of 8

shall include the placing of temporary paving, if it is to be used for an extended period of time.

Final acceptance of the work will not be made by the COUNTY until the area (falling under this agreement) and adjacent property has been cleared of all rubbish, surplus materials and equipment resulting from the contractor's operations, to the satisfaction of the Director of Development Services.

8.    **LIABILITY** .

The DEVELOPER shall indemnify, defend, and hold harmless the COUNTY, its officers, agents, volunteers, and employees, against and from any and all liability, loss, damage, claims, fines, demands, causes of action, costs, expenses, and judgments of whatsoever nature, including but not limited to reasonable costs of investigation, reasonable attorney's fees and expenses, all reasonable expert witness fees and expenses, and all court or arbitration or other alternative dispute resolution costs which result from injury to or death of any persons whomsoever, and/or against and from damage to or loss or destruction of property whatsoever when such injury death, loss, destruction or damage is due to or arises in connection with or as a result of any work done by the DEVELOPER in connection with the construction of the off-site improvements, and/or arises of or in connection with DEVELOPER's performance or failure to perform the terms and conditions of this agreement.    This Section 8 survives termination or completion of this agreement.

9.    **PLAN REQUIREMENTS ON COMPLETION OF IMPROVEMENTS**

Upon completion of all the off-site improvements within the COUNTY right-of-way required hereby and prior to release of any performance security, the DEVELOPER shall furnish the Director of Development Services with an as-built plan which shall accurately indicate, by lettered dimensions, the location of all manholes, the location size and depth of all sewer mains, underground water, power, gas, and other lines, with street plans and profiles for the same, including laterals and "Y's" for connection of house service lines.

10.    **WARRANTY**

The DEVELOPER is responsible should any original or developed defects or failures appear within a period of one year from the date of acceptance of the work by the COUNTY.  The DEVELOPER shall, at his own expense, make good such defects and failures and make all replacements and adjustments required, within thirty (30) days after being notified by the COUNTY to do so.  All repairs shall be subject to the approval of the Director of Development Services and/or the Director of Public Works.

5 of 8

This agreement does not limit or relieve DEVELOPER from any other obligation or responsibility which the DEVELOPER may otherwise have as a result of the street improvements, including any damages or latent defects which may occur beyond the warranty period specified above. Furthermore, DEVELOPER, at all times, is not relieved of any obligation or responsibility it may have by law including but not limited to damages for latent deficiencies, injury to real or personal property or injury to or wrongful death of a person, (N.R.S. 11.204).

11.    REQUIREMENTS OF PERFORMANCE BOND OR OTHER SECURITY

DEVELOPER shall furnish without cost to the COUNTY a surety and performance bond, cash deposit or agreement in lieu of bond for the full cost of said off-site improvements in favor of the COUNTY conditioned upon the DEVELOPER completing said off-site improvements within the time period prescribed by this agreement. Also, in the event the COUNTY exercises its option to complete said off-site improvements, that said bond, cash deposit or agreement in lieu of bond shall be used for the payment of the costs of completion of said off site improvements by the COUNTY in case the DEVELOPER fails to do so within said time period.

If the construction or installation of any off-site improvements or facilities for which a bond, cash deposit or agreement in lieu of bond is posted are not completed within the time frame of the off-site permit issued for the development; or if the DEVELOPER has suspended work and has failed to provide continued construction during the past 60 days; or if in the event the DEVELOPER, in the COUNTY's opinion, has created a safety hazard; or if such construction is not in accordance with applicable standards and specifications as prescribed by law, then, in either or any such event, the COUNTY may, at its option, proceed to complete said off site improvements at the expense of the DEVELOPER under this bond as provided for hereinafter.

That DEVELOPER acknowledges that the bond provided for in this agreement to construct the off-site improvements is only based upon an estimate of their cost by the Engineer of the County and in the event that actual cost of said off-site improvements shall exceed such sum, DEVELOPER is in no way relieved by this agreement from paying the entire amount of such excess.

Any application for release of said bond or cash deposit upon the completion of the off-site improvements by the DEVELOPER shall not be granted unless accompanied by a written certificate from the Director of Development Services stating that all requirements hereof have been satisfactorily completed in accordance with the terms of this agreement.

6 of 8

## 12.    CERTIFICATE OF OCCUPANCY

No certificates of occupancy shall be granted until such time as the off-site improvements have been completed to the satisfaction of the Director of Development Services, and in accordance with this agreement. The granting of a certificate of occupancy does not relieve DEVELOPER of its obligations in this agreement.

The granting of a certificate of occupancy does not imply that the off-site improvements have been properly completed nor authorize the release of the performance bond or other security.

## 13.    CERTIFICATE OF RELEASE

Upon final acceptance, by the Director of Development Services, of all of the off-site improvements required to be constructed by DEVELOPER as herein provided, DEVELOPER shall be issued a certificate of release of said performance bond or cash deposit, which shall be issued by the Director of Development Services.

## 14.    NO THIRD PARTY BENEFICIARY

Any inspections or subsequent approvals undertaken by the COUNTY pursuant to express or implied terms of this agreement are undertaken solely to insure compliance with the terms of this agreement and are not undertaken for the benefit of any individual or group of individuals as members of the public. It is not intended by any of the provisions of any part of this agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this agreement to maintain a suit for personal injuries or property damage . pursuant to the terms or provisions of this agreement. Provisions in this agreement dealing with inspections, approvals or changes requested or made do not expand the COUNTY's general law duties.

## 15.    ASSIGNMENTS

DEVELOPER cannot assign this agreement, in whole or in part, or any rights herein granted, without the written consent of the COUNTY and it is agreed that any attempted transfer or assignment of this agreement or any of the rights herein granted, whether voluntary, by operation of law, or otherwise, without such consent in writing, shall be absolutely void at the option of the COUNTY.

## 16.    AGREEMENT TO BE RECORDED

The DEVELOPER agrees that this agreement will be recorded upon the land described in Exhibit "A" and this agreement shall also be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors,

7 of 8

and assigns. DEVELOPER and any heirs, executors, administrators, successors and assigns, if any, shall be jointly and severally liable for DEVELOPER's obligations herein.

17.   **WAIVER**

. None of the conditions of this agreement shall be considered waived by either party unless such waiver is in writing and signed by both parties. No such waiver shall be a waiver of any past or future default, breach, or modification of any of the conditions of the agreement expressly stipulated in such waiver.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and official seals.

STATE OF NEVADA                )
                               ) SS
COUNTY OF CLARK                )

This instrument was acknowledged before me this
_9th_ day of _December_
20 _05_ by _Paul Huygens_

_Crystal Lynn Hawkins_
NOTARY PUBLIC in and for said County and State.

CORPORATION CERTIFICATE

I, _____, certify that I am the Secretary of the Corporation named as Developer in the foregoing document; that _____ was then President/Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

_____
SECRETARY

DEVELOPER:   _Paul Huygens_
_Rhodes Ranch G.P._

4730 S. Fort Apache Road, Suite #300

Las Vegas, NV 89147

NOTARY STAMP:

CRYSTAL LYNN HAWKINS
Notary Public State of Nevada
No. 03-85327-1
My appt. exp. Nov. 17, 2007

LORENA SHERMAN
Notary Public State of Nevada
No. 05-100515-1
My appt. exp. Oct. 7, 2009

– FOR COUNTY USE ONLY –

STATE OF NEVADA                )
                               ) SS
COUNTY OF CLARK                )

Signed or attested before me on this _27th_ day of _December_ 20 _05_ by ROBERT B. THOMPSON.
_Lorena Sherman_
NOTARY PUBLIC in and for said County and State

COUNTY OF CLARK, a political subdivision of the State of Nevada

BY _____
ROBERT B. THOMPSON
DEPARTMENT OF DEVELOPMENT
SERVICES

BCC standard form approved July 16, 2002

6 of 8



# G. C. WALLACE, INC.
Engineers / Planners / Surveyors

APN# PT 176-17-301-006

**EXPLANATION:**     THIS LEGAL DESCRIBES THE OVERALL BOUNDARY OF "RHODES
RANCH PARCEL 20 – UNIT 2".

## LEGAL DESCRIPTION

THAT PORTION OF "LOT U-1" OF "RHODES RANCH PARCEL 20-UNIT 5" AS SHOWN BY
MAP THEREOF ON FILE IN BOOK    , PAGE    OF PLATS IN THE CLARK COUNTY
RECORDER'S OFFICE, CLARK COUNTY NEVADA, LYING WITHIN THE NORTH HALF
(N1/2)  OF SECTION 17, TOWNSHIP 22 SOUTH, RANGE 60 EAST, M.D.M., CLARK
COUNTY, NEVADA, AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF THE NORTHWEST QUARTER (NW1/4) OF
SAID SECTION 17; THENCE ALONG THE SOUTHERLY LINE THEREOF, NORTH 89°51'52"
WEST, 63.66 FEET; THENCE DEPARTING SAID SOUTHERLY LINE, NORTH 09°40'46"
EAST, 144.91 FEET; THENCE NORTH 80°17'24" WEST, 98.70 FEET; THENCE CURVING TO
THE LEFT ALONG THE ARC OF A 1998.50 FOOT RADIUS CURVE, CONCAVE
SOUTHERLY, THROUGH A CENTRAL ANGLE OF 20°37'07", AN ARC LENGTH OF 719.19
FEET TO A POINT OF COMPOUND CURVATURE TO WHICH A RADIAL LINE BEARS
NORTH 10°54'31" WEST; THENCE CURVING TO THE LEFT ALONG THE ARC OF A 16.00
FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY, THROUGH A CENTRAL ANGLE OF
90°01'43", AN ARC LENGTH OF 25.14 FEET TO A POINT TO WHICH A RADIAL LINE BEARS
SOUTH 79°03'46" WEST; THENCE SOUTH 79°03'46" WEST, 6.50 FEET; THENCE SOUTH
79°03'48" WEST, 32.00 FEET; THENCE SOUTH 79°03'46" WEST, 6.50 FEET; THENCE
FROM A TANGENT BEARING NORTH 10°56'14" WEST, CURVING TO THE LEFT ALONG
THE ARC OF A 16.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY (THE RADIUS
POINT OF WHICH BEARS SOUTH 79°03'46" WEST), THROUGH A CENTRAL ANGLE OF
90°00'00", AN ARC LENGTH OF 25.13 FEET; THENCE SOUTH 79°03'46" WEST, 140.06
FEET; THENCE CURVING TO THE RIGHT ALONG THE ARC OF A 1703.00 FOOT RADIUS
CURVE, CONCAVE NORTHERLY, THROUGH A CENTRAL ANGLE OF 06°55'24", AN ARC
LENGTH OF 205.78 FEET; THENCE SOUTH 85°59'10" WEST, 295.81 FEET; THENCE
CURVING TO THE RIGHT ALONG THE ARC OF A 1703.00 FOOT RADIUS CURVE,
CONCAVE NORTHERLY, THROUGH A CENTRAL ANGLE OF 05°54'05", AN ARC LENGTH
OF 175.41 FEET; THENCE NORTH 88°06'45" WEST, 48.27 FEET; THENCE CURVING TO
THE LEFT ALONG THE ARC OF A 16.00 FOOT RADIUS CURVE, CONCAVE
SOUTHEASTERLY, THROUGH A CENTRAL ANGLE OF 90°00'00", AN ARC LENGTH OF
25.13 FEET TO A POINT TO WHICH A RADIAL LINE BEARS NORTH 88°06'45" WEST;
THENCE NORTH 88°06'45" WEST, 4.00 FEET; THENCE SOUTH 01°53'15" WEST, 6.50

C:\Documents and Settings\bross\Local Settings\Temporary Internet Files\OLK3A\RRP20U2.doc
12/22/2005  By: AO Ckd. By: JGK

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296



## G. C. WALLACE, INC.
Engineers / Planners / Surveyors

FEET; THENCE NORTH 88°06'45" WEST, 41.00 FEET; THENCE FROM A TANGENT
BEARING NORTH 01°53'15" EAST, CURVING TO THE LEFT ALONG THE ARC OF A 16.00
FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY (THE RADIUS POINT OF WHICH
BEARS NORTH 88°06'45" WEST), THROUGH A CENTRAL ANGLE OF 90°00'00", AN ARC
LENGTH OF 25.13 FEET; THENCE NORTH 88°06'45" WEST, 74.00 FEET; THENCE SOUTH
01°53'15" WEST, 1.00 FOOT; THENCE FROM A TANGENT BEARING NORTH 88°06'45"
WEST, CURVING TO THE LEFT ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE,
CONCAVE SOUTHEASTERLY (THE RADIUS POINT OF WHICH BEARS SOUTH 01°53'15"
WEST), THROUGH A CENTRAL ANGLE OF 90°00'00", AN ARC LENGTH OF 31.42 FEET TO
A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF TRUMP NATIONAL WAY TO WHICH
A RADIAL LINE BEARS NORTH 88°06'45" WEST; THENCE ALONG SAID EASTERLY
RIGHT-OF-WAY LINE, NORTH 01°53'15" EAST, 482.00 FEET TO A POINT ON THE
SOUTHERLY LINE OF "RHODES RANCH PARCEL 20-UNIT 1" AS SHOWN BY MAP
THEREOF ON FILE IN BOOK   , PAGE   OF PLATS IN THE CLARK COUNTY RECORDER'S
OFFICE, CLARK COUNTY, NEVADA; THENCE ALONG SAID SOUTHEASTERLY LINE THE
FOLLOWING NINETEEN (19) COURSES: CURVING TO THE RIGHT ALONG THE ARC OF A
20.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY, THROUGH A CENTRAL
ANGLE OF 90°00'00", AN ARC LENGTH OF 31.42 FEET TO A POINT TO WHICH A RADIAL
LINE BEARS NORTH 01°53'15" EAST; THENCE NORTH 01°53'15" EAST, 1.00 FOOT;
THENCE SOUTH 88°06'45" EAST, 74.00 FEET; THENCE CURVING TO THE RIGHT ALONG
THE ARC OF A 16.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A
CENTRAL ANGLE OF 90°00'00", AN ARC LENGTH OF 25.13 FEET; THENCE SOUTH
01°53'15 WEST, 77.50 FEET; THENCE SOUTH 88°06'45" EAST, 109.27 FEET; THENCE
CURVING TO THE LEFT ALONG THE ARC OF A 1321.00 FOOT RADIUS CURVE,
CONCAVE NORTHERLY, THROUGH A CENTRAL ANGLE OF 05°54'05", AN ARC LENGTH
OF 136.06 FEET; THENCE NORTH 85°59'10" EAST, 295.81 FEET; THENCE CURVING TO
THE LEFT ALONG THE ARC OF A 1321.00 FOOT RADIUS CURVE, CONCAVE
NORTHWESTERLY, THROUGH A CENTRAL ANGLE OF 06°55'24", AN ARC LENGTH OF
159.62 FEET; THENCE NORTH 79°03'46" EAST, 156.06 FEET; THENCE NORTH 79°10'31"
EAST, 41.00 FEET; THENCE FROM A TANGENT BEARING NORTH 78°35'31" EAST,
CURVING TO THE RIGHT ALONG THE ARC OF A 2380.50 FOOT RADIUS CURVE,
CONCAVE SOUTHERLY (THE RADIUS POINT OF WHICH BEARS SOUTH 11°24'29" EAST),
THROUGH A CENTRAL ANGLE OF 15°34'37", AN ARC LENGTH OF 647.18 FEET TO A
POINT TO WHICH A RADIAL LINE BEARS NORTH 04°10'08" EAST; THENCE SOUTH
85°31'43" EAST, 41.00 FEET; THENCE SOUTH 84°13'50" EAST, 414.09 FEET; THENCE
NORTH 70°52'43" EAST, 101.84 FEET; THENCE NORTH 19°07'17" WEST, 28.80 FEET;
THENCE CURVING TO THE RIGHT ALONG THE ARC OF A 100.00 FOOT RADIUS CURVE,
CONCAVE NORTHEASTERLY, THROUGH A CENTRAL ANGLE OF 21°02'22", AN ARC
LENGTH OF 36.72 FEET TO A POINT OF REVERSE CURVATURE THROUGH WHICH A

C:\Documents and Settings\cross\Local Settings\Temporary Internet Files\OLK3A\RRP20U2.doc
12/22/2005 By: AO Ckd. By: JGK

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296



## G. C. WALLACE, INC.
Engineers / Planners / Surveyors

RADIAL LINE BEARS NORTH 88°04'55" WEST; THENCE CURVING TO THE LEFT ALONG
THE ARC OF A 50.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A
CENTRAL ANGLE OF 69°14'52", AN ARC LENGTH OF 60.43 FEET TO A POINT TO WHICH
A RADIAL LINE BEARS NORTH 22°40'13" EAST; THENCE NORTH 32°41'47" EAST, 103.79
FEET; THENCE SOUTH 83°30'00" EAST, 27.91 FEET; THENCE SOUTH 19°07'17" EAST,
409.99 FEET; THENCE NORTH 70°52'43" EAST, 262.47 FEET; THENCE SOUTH 00°11'32"
WEST, 118.03 FEET; THENCE SOUTH 89°57'51" EAST, 9.35 FEET; THENCE SOUTH
00°11'32" WEST, 329.94 FEET TO A POINT ON THE SOUTHERLY LINE OF THE NORTH
HALF (N1/2) OF SAID SECTION 17; THENCE ALONG SAID SOUTHERLY LINE, NORTH
89°52'42" WEST, 677.37 FEET TO THE **POINT OF BEGINNING.**

CONTAINING 25.55 ACRES±.


GERALD L. HOLTON, PLS
NEVADA LICENSE NO. 13290
EXPIRES: JUNE 30, 2007

C:\Documents and Settings\bross\Local Settings\Temporary Internet Files\OLK3A\RRP20U2.doc
12/22/2005  By: AO Ckd. By: JGK

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296

Printed by dkazio at 4/21/2009 11:41:43 AM

Case 09-14814-gwz    Doc 1375-4    Entered 03/31/11 16:14:14    Page 16 of 58
Case 09-14814-lbr    Claim 7.1-1 Part 4    Filed 09/25/09    Page 19 of 51

05 - 44967

Bond



## CLARK COUNTY DEPARTMENT OF PUBLIC WORKS
## DEVELOPMENT OF OFF-SITE IMPROVEMENTS
### PERFORMANCE BOND        Bond No. 08825634

That Rhodes Ranch General Partnership _____ as

Principal, of 4730 S. Fort Apache, Ste. 300 _____

City of Las Vegas, NV 89147 _____,

County of Clark _____,

and Fidelity and Deposit Company of Maryland Surety, a corporation incorporated and doing

business under the laws of the State of _____ Maryland _____ and licensed to

conduct, transact and issue Surety business in the State of Nevada, are held and firmly bound

to Clark County, Nevada, as Obligee, in the sum of Two Million Four Hundred Thirteen Thousand
Seven Hundred Sixty Seven and 13/($ 2,413,767.13 ) Dollars, for the payment of the sum
well and truly to be made, and jointly and severally bind themselves, their heirs, successors,
assigns, executors, administrators and legal representatives firmly by these presents.


### CONDITIONS

Rhodes Ranch Parcel 20
1.  Principal, as a condition of the development of the Unit 1 _____ project,
    entered into a written agreement or agreements ("improvement agreement(s)") with said
    Obligee to complete the required improvements specified in said improvement agreement(s)
    identified as Offsite and Onsite  HTE # 05-44967, dated _____, and _____
    _____, dated _____, and are attached hereto and by this
    reference incorporated herein.

2.  If Principal fully and completely performs all of its obligations required by the said improvement
    agreement(s) during the original term thereof, or any extension of said term that may be
    granted by the Obligee with or without notice to the Surety, this obligation shall be voided;
    otherwise this obligation shall remain in full force and effect.

3.  This obligation will continuously remain in full force and effect until and unless all of the
    conditions in the said improvement agreement(s) are fulfilled and completed to the satisfaction
    of the Obligee.

4.  The provisions of this obligation shall be interpreted in manner consistent with the
    requirements of the Clark County Code, including, but not limited to, Chapter 30.32, which by
    this reference is incorporated herein.

5.  Surety hereby waives notice of any changes, modifications, or additions to the obligations
    specified in said improvement agreement(s).

Page 1 of 2

6. Any deviations, additions, or modifications to the obligations of the improvement agreement(s) may be made without the consent or knowledge of Surety and without in any way releasing Surety from liability under this bond.

7. In case of default by Principal, Surety may assure and complete or procure completion of the obligations of Principal, and Surety will be subrogated and entitled to all the rights and properties of Principal arising out of the improvement agreement(s).

IN WITNESS WHEREOF, the seal and signature of said Principal is hereto affixed and the corporate seal and the name of the said Surety is hereto affixed and attested by its duly authorized Attorney-in-Fact at _____ Westmont, Illinois _____ , Nevada this _March 28_____ , ____2006_____ .

PRINCIPAL: Rhodes Ranch General Partnership

BY: _____ CFO

State of Nevada
County of Clark

This instrument was acknowledged before me on ____March 30____ , 20 06, by __Paul Hungoms__ as __CFO__ of __Rhodes Ranch General Partnership__ (Principal).

NOTARY RUBLIC in and for said County and State

[Notary seal: NOTARY PUBLIC STATE OF NEVADA County of Clark AUGUSTA B. YAMAMOTO Appt. No. 03-82552-1 My Appt. Expires June 24, 2007]

BY: _____
# 21/6B25 , Nevada Resident Agent

SURETY: Fidelity and Deposit Company of Maryland

BY: _____
Kelly A. Jacobs , Attorney-in-Fact

State of Nevada Illinois
County of Clark DuPage

This instrument was acknowledged before me on _March 28_____ , 20 06, by Kelly A. Jacobs as Attorney-in-Fact for Fidelity and Deposit Company of Maryland (Surety).

_____
NOTARY PUBLIC in and for said County and State.    Melissa Schmidt

[Notary seal: OFFICIAL SEAL MELISSA SCHMIDT NOTARY PUBLIC - STATE OF ILLINOIS MY COMMISSION EXPIRES:06/23/08]

Brown & Brown Insurance of Nevada, Inc.

2340 Corporate Circle Drive, 2nd Floor

Henderson, NV 89074

Page 2 of 2

## Power of Attorney
## FIDELITY AND DEPOSIT COMPANY OF MARYLAND
## COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

KNOW ALL MEN BY THESE PRESENTS: That the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, corporations of the State of Maryland, by PAUL C. ROGERS, Vice President, and T. E. SMITH, Assistant Secretary, in pursuance of authority granted by Article VI, Section 2, of the By-Laws of said Companies, which are set forth on the reverse side hereof, and are hereby certified to be in full force and effect on the date hereof, does hereby nominate, constitute and appoint Peggy FAUST, Kelly A. JACOBS, Stephen T. KAZMER, Bonnie KRUSE, Jennifer J. MCCOMB, Diane MARCUS, James L. MOORE, Dawn MORGAN and Mary Beth PETERSON, all of Countryside, Illinois, EACH its true and lawful agent and Attorney-in-Fact, to make, execute, seal and deliver, for, and on its behalf as surety, and as its act and deed:  any and all bonds and undertakings and the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its office in Baltimore, Md., in their own proper persons.

The said Assistant Secretary does hereby certify that the extract set forth on the reverse side hereof is a true copy of Article VI, Section 2, of the By-Laws of said Companies, and is now in force.

IN WITNESS WHEREOF, the said Vice-President and Assistant Secretary have hereunto subscribed their names and affixed the Corporate Seals of the said FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, this 6th day of March, A.D. 2003.

ATTEST:                                              **FIDELITY AND DEPOSIT COMPANY OF MARYLAND**
                                                     **COLONIAL AMERICAN CASUALTY AND SURETY COMPANY**



*T. E. Smith*          *Assistant Secretary*    By: _____    *Paul C. Rogers*          *Vice President*

State of Maryland  } ss:
City of Baltimore  }

On this 6th day of March, A.D. 2003, before the subscriber, a Notary Public of the State of Maryland, duly commissioned and qualified, came PAUL C. ROGERS, Vice President, and T. E. SMITH, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, to me personally known to be the individuals and officers described in and who executed the preceding instrument, and they each acknowledged the execution of the same, and being by me duly sworn, severally and each for himself deposeth and saith, that they are the said officers of the Companies aforesaid, and that the seals affixed to the preceding instrument is the Corporate Seals of said Companies, and that the said Corporate Seals and their signatures as such officers were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above written.

*Sandra Lynn Mooney*

*Sandra Lynn Mooney*                    *Notary Public*
My Commission Expires: January 1, 2004

POA-F 036-0013A

## EXTRACT FROM BY-LAWS OF FIDELITY AND DEPOSIT COMPANY OF MARYLAND

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

## EXTRACT FROM BY-LAWS OF COLONIAL AMERICAN CASUALTY AND SURETY COMPANY

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

## CERTIFICATE

I, the undersigned, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that the Vice-President who executed the said Power of Attorney was one of the additional Vice-Presidents specially authorized by the Board of Directors to appoint any Attorney-in-Fact as provided in Article VI, Section 2, of the respective By-Laws of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990 and of the Board of Directors of the COLONIAL AMERICAN CASUALTY AND SURETY COMPANY at a meeting duly called and held on the 5th day of May, 1994.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed."

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seals of the said Companies,

this _____28th_____ day of _____March_____, _____2006_____.

*Assistant Secretary*

20060413-0002618

APN:  176-17-301-006

HTE #: 05-44967

OSIA

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division

Fee: $0.00
N/C Fee: $0.00

04/13/2006          11:04:33
T20060065549
Requestor:
    DEVELOPMENT SERVICES CLARK COUNTY

Frances Deane          JJF
Clark County Recorder    Pgs: 12



# CLARK COUNTY
## DEPARTMENT OF DEVELOPMENT SERVICES

### OFF-SITE IMPROVEMENTS AGREEMENT

THIS AGREEMENT, made and entered into this **30th** day of **March**,
20 **06** , by and between:
_____Rhodes Ranch General Partnership_____,
whose mailing address is:
_____4630South Fort Apache Road, Suite #300_____

_____Las Vegas, NV 89147_____

_____(702) 873-5338_____

hereinafter referred to as DEVELOPER and CLARK COUNTY, NEVADA, hereinafter
referred to as COUNTY, for construction of off-site improvements at the following location:

Cross Streets:    Sherwood Greens and Fort Apache_____

Assessor's Parcel Number:    176-17-301-006_____

WHEREAS, DEVELOPER has submitted a plan to the COUNTY for a

_____Single Family Residential Homes_____
(type of development); and

WHEREAS, the COUNTY requires construction of certain off-site
improvements as part of said development.

NOW, THEREFORE, the parties to this agreement for and in consideration of
the mutual promises herein contained and for other good and valuable considerations, do

1 of 8

hereby agreed as follows:

1.    OFF-SITE IMPROVEMENTS

The DEVELOPER, at his own cost, shall perform and complete all off-site work and
improvements which may consist of, but not limited to, streets, street name signs,
traffic signs, sewers, water systems, fire hydrants, curbs, gutters, sidewalks, street
lighting, driveways, drainage facilities, accesses, survey monuments,
PER HTE-# 05-44967

etc., hereinafter referred to as off-site improvements, said off-site improvements
shall be constructed in accordance with applicable ordinances, regulations,
standards and specifications, and other requirements of CLARK COUNTY,
NEVADA.

2.    PLANS APPROVED BY THE DIRECTOR OF DEVELOPMENT SERVICES

No off-site improvements shall commence until:

(a)    off-site improvement plans have been approved by the Director of
DEVELOPMENT SERVICES or his authorized representative;

(b)    one-hundred percent (100%) of the plan-check and inspection fees have
been paid;

(c)    performance security executed as required by CLARK COUNTY ordinances;
and

(d)    an off-site permit has been issued by the Director of DEVELOPMENT
SERVICES, or his authorized representative.

3.    NOTICE OF COMMENCEMENT OF CERTAIN WORK

The DEVELOPER shall notify the Director of Development Services no less than 24
hours in advance of the date and hour work on any of the following items is
expected to begin, and thereafter if conditions develop to delay the start of work, the
DEVELOPER agrees to notify the Director of Development Services of the delay not
less than two hours before work is scheduled to begin:

--    Placing sewer, water, gas, power, telephone lines and fire hydrants.

--    Back-filling of sewer, water, gas, power and telephone lines.

--    Placing concrete for curb, gutter, sidewalk, valley gutters, storm drain
structures, manholes, street lighting foundations and alley gutters.

2 of 8

-- Placing Type I and Type II gravel base course.

-- Priming base course.

-- Placing street lighting and bum testing.

-- Placing street name signs and traffic control signs.

4.    APPROVAL OF WORK AFTER INSPECTION

   (a)    Whenever the Director of Development Services or his duly authorized representative inspects portion of work as mentioned hereinbefore, and finds the work performed to be in a satisfactory condition for inclusion in the completed project, the Director of Development Services or his duly authorized representative shall issue a statement of inspection which shall permit the DEVELOPER to perform the next phase of the construction. Ordinarily, not less than one continuous block of any one of the items of work mentioned will be approved.

   (b)    Inspection and approval of any item of work shall not forfeit the right of the COUNTY to require the corrections of quality, workmanship or materials at any time prior to the final acceptance of the project by the Director of Development Services, although previously approved by an oversight.

   (c)    Nothing herein shall relieve the DEVELOPER of the responsibility for proper construction of the off-site improvements and DEVELOPER shall maintain said improvements until the work has been accepted by the Director of Development Services.

5.    ADJUSTMENT TO EXISTING UTILITIES AND COST THEREOF

The DEVELOPER shall, at its sole expense, provide for adjustments necessary to all existing utilities because of the work required by this agreement.

6.    FULL COMPLIANCE WITH COUNTY REQUIREMENTS

The DEVELOPER shall perform and complete all off-site improvements in accordance with the regulations, specifications, and ordinances of the said County of Clark, and the construction plans approved by Clark County Development Services Department.

The DEVELOPER shall obtain all required permits from other County, State, and Federal agencies, including but not limited to Clark County Health District, Nevada Department of Environmental Protection, and United States Army Corps of Engineers.

3 of 8

The COUNTY shall have the right to require corrections to the construction plans by the DEVELOPER at any time before release of the bond (performance bond, cash deposit, or agreement in lieu of bond) required herein, of any item or items contained in this agreement which do not conform to COUNTY standard specifications, laws, regulations or ordinances, even though the plans for the item in question may have been approved by the Director of Development Services.

The DEVELOPER shall start said off-site improvements upon receipt of a COUNTY-approved off-site permit and said off-site improvements shall be completed prior to expiration of said permit in accordance with the required ordinances.

In the event the DEVELOPER fails to complete said improvements within said period or in the event the DEVELOPER in the COUNTY's opinion has created a safety hazard, the COUNTY, at its option, may proceed to complete said improvements at the expense of the DEVELOPER. The COUNTY may use the required performance bond as provided for hereinafter.

7.    OTHER CONDITIONS AND REQUIREMENTS

The DEVELOPER further agrees that, in addition to the above requirements, any and/or all such conditions, stipulations and agreements made by the DEVELOPER and the Board of County Commissioners and/or County Planning Commission of Clark County shall be fully performed.

The DEVELOPER further agrees that all work is to be performed by a qualified contractor licensed to do business in the State of Nevada and the County of Clark.

The DEVELOPER shall maintain, protect and take care of all work areas for the project, including any adjacent existing improvements, until its completion and acceptance by Clark County.   Maintenance of any inhabited area of the development, and the adjacent streets and/or neighborhoods, shall include, but not be limited to, sweeping of the streets and keeping the gutters free of dirt and debris.

During move-in, construction and move-off, the DEVELOPER shall keep the site free and clear from dangerous accumulation of rubbish and debris and shall maintain sufficient and proper barricades, lights, etc., in accordance with the latest manual on the placement of traffic control devices accepted by the Department of Development Services for the protection of the public.  Also, after excavation or placement of gravel, if the sub-grade and/or gravel base material is left exposed and in the opinion of the Director of Development Services is not properly maintained, thus causing either a rough riding surface or a dust problem, the Director of Development Services may require the DEVELOPER to do whatever is necessary to provide an adequate travel-way.   If a detour is needed, the Director of Development Services shall determine to what extent it shall be maintained, which

4 of 8

shall include the placing of temporary paving, if it is to be used for an extended period of time.

Final acceptance of the work will not be made by the COUNTY until the area (falling under this agreement) and adjacent property has been cleared of all rubbish, surplus materials and equipment resulting from the contractor's operations, to the satisfaction of the Director of Development Services.

8.    LIABILITY

The DEVELOPER shall indemnify, defend, and hold harmless the COUNTY, its officers, agents, volunteers, and employees, against and from any and all liability, loss, damage, claims, fines, demands, causes of action, costs, expenses, and judgments of whatsoever nature, including but not limited to reasonable costs of investigation, reasonable attorney's fees and expenses, all reasonable expert witness fees and expenses, and all court or arbitration or other alternative dispute resolution costs which result from injury to or death of any persons whomsoever, and/or against and from damage to or loss or destruction of property whatsoever when such injury death, loss, destruction or damage is due to or arises in connection with or as a result of any work done by the DEVELOPER in connection with the construction of the off-site improvements, and/or arises of or in connection with DEVELOPER's performance or failure to perform the terms and conditions of this agreement.    This Section 8 survives termination or completion of this agreement.

9.    PLAN REQUIREMENTS ON COMPLETION OF IMPROVEMENTS

Upon completion of all the off-site improvements within the COUNTY right-of-way required hereby and prior to release of any performance security, the DEVELOPER shall furnish the Director of Development Services with an as-built plan which shall accurately indicate, by lettered dimensions, the location of all manholes, the location size and depth of all sewer mains, underground water, power, gas, and other lines, with street plans and profiles for the same, including laterals and "Y's" for connection of house service lines.

10.    WARRANTY

The DEVELOPER is responsible should any original or developed defects or failures appear within a period of one year from the date of acceptance of the work by the COUNTY. The DEVELOPER shall, at his own expense, make good such defects and failures and make all replacements and adjustments required, within thirty (30) days after being notified by the COUNTY to do so. All repairs shall be subject to the approval of the Director of Development Services and/or the Director of Public Works.

5 of 8

This agreement does not limit or relieve DEVELOPER from any other obligation or responsibility which the DEVELOPER may otherwise have as a result of the street improvements, including any damages or latent defects which may occur beyond the warranty period specified above. Furthermore, DEVELOPER, at all times, is not relieved of any obligation or responsibility it may have by law including but not limited to damages for latent deficiencies, injury to real or personal property or injury to or wrongful death of a person, (N.R.S. 11.204).

11.   REQUIREMENTS OF PERFORMANCE BOND OR OTHER SECURITY

DEVELOPER shall furnish without cost to the COUNTY a surety and performance bond, cash deposit or agreement in lieu of bond for the full cost of said off-site improvements in favor of the COUNTY conditioned upon the DEVELOPER completing said off-site improvements within the time period prescribed by this agreement. Also, in the event the COUNTY exercises its option to complete said off-site improvements, that said bond, cash deposit or agreement in lieu of bond shall be used for the payment of the costs of completion of said off site improvements by the COUNTY in case the DEVELOPER fails to do so within said time period.

If the construction or installation of any off-site improvements or facilities for which a bond, cash deposit or agreement in lieu of bond is posted are not completed within the time frame of the off-site permit issued for the development; or if the DEVELOPER has suspended work and has failed to provide continued construction during the past 60 days; or if in the event the DEVELOPER, in the COUNTY's opinion, has created a safety hazard; or if such construction is not in accordance with applicable standards and specifications as prescribed by law, then, in either or any such event, the COUNTY may, at its option, proceed to complete said off site improvements at the expense of the DEVELOPER under this bond as provided for hereinafter.

That DEVELOPER acknowledges that the bond provided for in this agreement to construct the off-site improvements is only based upon an estimate of their cost by the Engineer of the County and in the event that actual cost of said off-site improvements shall exceed such sum, DEVELOPER is in no way relieved by this agreement from paying the entire amount of such excess.

Any application for release of said bond or cash deposit upon the completion of the off-site improvements by the DEVELOPER shall not be granted unless accompanied by a written certificate from the Director of Development Services stating that all requirements hereof have been satisfactorily completed in accordance with the terms of this agreement.

6 of 8

12. **CERTIFICATE OF OCCUPANCY**

No certificates of occupancy shall be granted until such time as the off-site improvements have been completed to the satisfaction of the Director of Development Services, and in accordance with this agreement. The granting of a certificate of occupancy does not relieve DEVELOPER of its obligations in this agreement.

The granting of a certificate of occupancy does not imply that the off-site improvements have been properly completed nor authorize the release of the performance bond or other security.

13. **CERTIFICATE OF RELEASE**

Upon final acceptance, by the Director of Development Services, of all of the off-site improvements required to be constructed by DEVELOPER as herein provided, DEVELOPER shall be issued a certificate of release of said performance bond or cash deposit, which shall be issued by the Director of Development Services.

14. **NO THIRD PARTY BENEFICIARY**

Any inspections or subsequent approvals undertaken by the COUNTY pursuant to express or implied terms of this agreement are undertaken solely to insure compliance with the terms of this agreement and are not undertaken for the benefit of any individual or group of individuals as members of the public. It is not intended by any of the provisions of any part of this agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this agreement to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this agreement. Provisions in this agreement dealing with inspections, approvals or changes requested or made do not expand the COUNTY's general law duties.

15. **ASSIGNMENTS**

DEVELOPER cannot assign this agreement, in whole or in part, or any rights herein granted, without the written consent of the COUNTY and it is agreed that any attempted transfer or assignment of this agreement or any of the rights herein granted, whether voluntary, by operation of law, or otherwise, without such consent in writing, shall be absolutely void at the option of the COUNTY.

16. **AGREEMENT TO BE RECORDED**

The DEVELOPER agrees that this agreement will be recorded upon the land described in Exhibit "A" and this agreement shall also be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors,

7 of 8

Printed by dkazio at 4/21/2009 11:40:56 AM

and assigns. DEVELOPER and any heirs, executors, administrators, successors and assigns, if any, shall be jointly and severally liable for DEVELOPER's obligations herein.

17.    WAIVER

. None of the conditions of this agreement shall be considered waived by either party unless such waiver is in writing and signed by both parties. No such waiver shall be a waiver of any past or future default, breach, or modification of any of the conditions of the agreement expressly stipulated in such waiver.

IN WITNESS WHEREOF, the parties hereto have set their hands and official seals.

| | |
|---|---|
| STATE OF NEVADA )<br>) SS<br>COUNTY OF CLARK ) | DEVELOPER:<br>Rhodes Ranch General Partnership |

This instrument was acknowledged before me this 30th day of March 20 06, by Paul Huygens, CFO

NOTARY PUBLIC in and for said County and State.

CORPORATION CERTIFICATE

I, _____ , certify that I am the Secretary of the Corporation named as Developer in the foregoing document; that _____ was then President/Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

_____
SECRETARY

DEVELOPER:

Rhodes Ranch General Partnership

4730 South Foot Apache Road, Suite #300

Las Vegas, NV 89147

Paul Huygens    CFO
NOTARY STAMP:

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
AUGUSTA S. YAMAMOTO
Appt. No. 03-82552-1
My Appt. Expires June 24, 2007

MARK MIKOLAITIS
Notary Public State of Nevada
No. 06-103285-1
My appt. exp. Feb. 1, 2010

— FOR COUNTY USE ONLY —

| | |
|---|---|
| STATE OF NEVADA )<br>) SS<br>COUNTY OF CLARK ) | COUNTY OF CLARK, a political subdivision of the State of Nevada |

Signed or attested before me on this 5th day of APRIL 20 06 by ROBERT B. THOMPSON.

NOTARY PUBLIC in and for said County and State

BY _____
ROBERT B. THOMPSON
DEPARTMENT OF DEVELOPMENT
SERVICES

BCC standard form approved July 16, 2002

8 of 8



**G. C. WALLACE, INC.**
Engineers / Planners / Surveyors

APN# PT 176-17-301-006

**EXPLANATION:**     THIS LEGAL DESCRIBES THE OVERALL BOUNDARY OF "RHODES RANCH
PARCEL 20 – UNIT 1".

### LEGAL DESCRIPTION

THAT PORTION OF "LOT 2" OF "RHODES RANCH PARCEL MAP" AS SHOWN BY MAP THEREOF
ON FILE IN BOOK 103, PAGE 97 OF PLATS IN THE CLARK COUNTY RECORDERS OFFICE, CLARK
COUNTY NEVADA, LYING WITHIN THE NORTH HALF (N1/2) OF SECTION 17, TOWNSHIP 22
SOUTH, RANGE 60 EAST, M.D.M., CLARK COUNTY, NEVADA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF SAID "LOT 2"; THENCE ALONG THE
NORTHERLY LINE THEREOF, THE FOLLOWING ELEVEN (11) COURSES: SOUTH 26°40'18" EAST,
57.15 FEET; THENCE SOUTH 41°33'25" EAST, 100.75 FEET; THENCE SOUTH 65°13'51" EAST,
221.42 FEET, THENCE SOUTH 34°41'01" EAST, 158.80 FEET; THENCE SOUTH 55°00'00" EAST,
302.43 FEET; THENCE NORTH 89°50'36" EAST, 202.40 FEET; THENCE NORTH 78°12'19" EAST,
245.48 FEET; THENCE NORTH 85°46'23" EAST, 238.78 FEET, THENCE SOUTH 89°53'02" EAST,
238.78 FEET; THENCE SOUTH 85°32'34" EAST, 238.81 FEET; THENCE SOUTH 83°30'00" EAST,
403.05 FEET; THENCE SOUTH 19°07'17" EAST, 6.31 FEET; THENCE DEPARTING SAID
NORTHERLY LINE, SOUTH 32°41'47" WEST, 116.21 FEET; THENCE FROM A TANGENT BEARING
SOUTH 32°05'44" EAST, CURVING TO THE RIGHT ALONG THE ARC OF A 50.00 FOOT RADIUS
CURVE, CONCAVE SOUTHWESTERLY (THE RADIUS POINT OF WHICH BEARS SOUTH 57°54'16"
WEST), THROUGH A CENTRAL ANGLE OF 34°00'49", AN ARC LENGTH OF 29.68 FEET TO A POINT
OF REVERSE CURVATURE THROUGH WHICH A RADIAL LINE BEARS SOUTH 88°04'55" EAST;
THENCE CURVING TO THE LEFT ALONG THE ARC OF A 100.00 FOOT RADIUS CURVE, CONCAVE
NORTHEASTERLY, THROUGH A CENTRAL ANGLE OF 21°02'22", AN ARC LENGTH OF 36.72 FEET;
THENCE SOUTH 19°07'17" EAST, 28.80 FEET; THENCE SOUTH 70°52'43" WEST, 101.84 FEET;
THENCE NORTH 84°13'50" WEST, 386.59 FEET; THENCE CURVING TO THE LEFT ALONG THE ARC
OF A 2380.50 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL
ANGLE OF 16°42'24", AN ARC LENGTH OF 694.12 FEET; THENCE SOUTH 79°10'31" WEST, 216.63
FEET; THENCE SOUTH 79°03'46" WEST, 156.06 FEET; THENCE CURVING TO THE RIGHT ALONG
THE ARC OF A 1321.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY, THROUGH A
CENTRAL ANGLE OF 06°55'24", AN ARC LENGTH OF 159.62 FEET; THENCE SOUTH 85°59'10"
WEST, 295.81 FEET; THENCE CURVING TO THE RIGHT ALONG THE ARC OF A 1321.00 FOOT
RADIUS CURVE, CONCAVE NORTHERLY, THROUGH A CENTRAL ANGLE OF 05°54'05", AN ARC
LENGTH OF 136.06 FEET; THENCE NORTH 88°06'45" WEST, 109.27 FEET; THENCE NORTH
01°53'15" EAST, 77.50 FEET; THENCE CURVING TO THE LEFT ALONG THE ARC OF A 16.00 FOOT
RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 22°01'28", AN
ARC LENGTH OF 6.15 FEET TO A POINT TO WHICH A RADIAL LINE BEARS NORTH 69°51'47"
EAST; THENCE NORTH 88°06'45" WEST, 105.53 FEET; THENCE FROM A TANGENT BEARING
SOUTH 35°15'16" WEST, CURVING TO THE LEFT ALONG THE ARC OF A 20.00 FOOT RADIUS
CURVE, CONCAVE SOUTHEASTERLY (THE RADIUS POINT TO WHICH BEARS SOUTH 54°44'44"

C:\Documents and Settings\bross\Local Settings\Temporary Internet Files\OLK3A\RRP20U1.doc
4/3/2006  By: ALC  Ckd. By: BAM

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296



### G. C. WALLACE, INC.
Engineers / Planners / Surveyors

EAST), THROUGH A CENTRAL ANGLE OF 33°22'01", AN ARC LENGTH OF 11.65 FEET TO A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF HIDDEN MOUNTAIN AVENUE; THENCE ALONG SAID RIGHT-OF-WAY LINE THE FOLLOWING THIRTY-SIX (36) COURSES: SOUTH 01°53'15" WEST, 382.00 FEET; THENCE CURVING TO THE LEFT ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY, THROUGH A CENTRAL ANGLE OF 90°00'00", AN ARC LENGTH OF 31.42 FEET TO WHICH A RADIAL LINE BEARS SOUTH 01°53'15" WEST; THENCE SOUTH 01°53'15" WEST, 60.00 FEET; THENCE FROM A TANGENT BEARING NORTH 88°06'45" WEST, CURVING TO THE LEFT ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY (THE RADIUS POINT OF WHICH BEARS SOUTH 01°53'15" WEST), THROUGH A CENTRAL ANGLE OF 90°00'00", AND ARC LENGTH OF 31.42 FEET; THENCE SOUTH 01°53'15", 144.44 FEET; THENCE CURVING TO THE RIGHT ALONG THE ARC OF A 600.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY, TROUGH A CENTRAL ANGLE OF 35°27'51", AN ARC LENGTH OF 371.38 FEET TO A POINT OF REVERSE CURVATURE TO WHICH A RADIAL LINE BEARS SOUTH 52°38'54" EAST; THENCE CURVING TO THE LEFT ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 85°22'28", AN ARC LENGTH OF 29.80 FEET TO A POINT WHICH A RADIAL LINE BEARS SOUTH. 41°58'39" WEST; THENCE SOUTH 41°58'39" WEST, 60.00 FEET; THENCE FROM A TANGENT BEARING NORTH 48°01'21" WEST, CURVING TO THE LEFT ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY (THE RADIUS POINT OF WHICH BEARS SOUTH 41°58'39" WEST), THROUGH A CENTRAL ANGLE OF 85°2'28", AN ARC LENGTH OF 29.80 FEET TO A POINT OF REVERSE CURVATURE THROUGH WHICH A RADIAL LINE BEARS NORTH 43°23'49" WEST; THENCE CURVING TO THE RIGHT ALONG THE ARC OF A 600.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 19°07'17", AN ARC LENGTH OF 200.24 TO A POINT OF REVERSE CURVATURE THROUGH WHICH A RADIAL LINE BEARS SOUTH 24°16'32" EAST; THENCE CURVING TO THE LEFT ALONG THE ARC OF 269.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY, THROUGH A CENTRAL ANGLE OF 09°06'02", AN ARC LENGTH OF 42.73 FEET TO A POINT OF REVERSE CURVATURE THROUGH WHICH A RADIAL LINE BEARS NORTH 33°22'34" WEST; THENCE CURVING TO THE RIGHT ALONG THE ARC OF A 105.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY, THROUGH A CENTRAL ANGLE OF 31°42'13", AN ARC LENGTH OF 58.10 FEET TO A POINT OF REVERSE CURVATURE THROUGH WHICH A RADIAL LINE BEARS SOUTH 01°40'21" EAST; THENCE CURVING TO THE LEFT ALONG A 269.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY, THROUGH A CENTRAL ANGLE OF 09°06'02", AN ARC LENGTH OF 42.73 FEET TO A POINT OF REVERSE CURVATURE THOUGH WHICH A RADIAL LINE BEARS NORTH 10°46'23" WEST; THENCE CURVING TO THE RIGHT ALONG A 600.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY, THROUGH A CENTRAL ANGLE OF 2°52'59", AN ARC LENGTH OF 134.91 FEET; THENCE NORTH 87°53'24" WEST, 61.37 FEET; THENCE CURVING TO THE LEFT ALONG A 54.00 FOOT RADIUS CURVE; CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 90°00'07", AN ARC LENGTH OF 84.82 FEET TO A POINT OF CUSP TO WHICH A RADIAL LINE BEARS NORTH 87°53'31"; THENCE NORTH 02°06'29" EAST, 178.00 FEET TO A POINT OF CUSP; THENCE FROM A TANGENT BEARING SOUTH 02°06'29" WEST, CURVING TO THE LEFT, CONCAVE NORTHWESTERLY (THE RADIUS POINT OF WHICH BEARS SOUTH 87°53'31" EAST), THROUGH A CENTRAL ANGLE OF 89°59'53", AN ARC LENGTH OF 84.82 FEET; THENCE SOUTH 87°53'24" EAST, 61.38 FEET; THENCE CURVING TO THE LEFT ALONG A 530.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY, THROUGH A

C:\Documents and Settings\bross\Local Settings\Temporary Internet Files\OLK3A\RRP20U1.doc
4/3/2006 By: ALC Ckd. By: BAM

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296

Case 09-14814-gwz   Doc 1375-4   Entered 03/31/11 16:14:14   Page 30 of 58
Case 09-14814-lbr   Claim 71-1 Part 4   Filed 09/25/09   Page 33 of 51



## G. C. WALLACE, INC.
Engineers / Planners / Surveyors

CENTRAL ANGLE OF 20°05'03", AN ARC LENGTH OF 120.40 FEET TO A POINT OF COMPOUND CURVATURE THROUGH WHICH A RADIAL LINE BEARS SOUTH 10°54'20" EAST; THENCE CURVING TO THE LEFT ALONG THE ARC OF A 105.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY, THROUGH A CENTRAL ANGLE OF 25°32'58", AN ARC LENGTH OF 46.82 TO A POINT OF REVERSE CURVATURE THROUGH WHICH A RADIAL LINE BEARS SOUTH 36°27'18" EAST; THENCE CURVING TO THE RIGHT ALONG A 46.00 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY, THROUGH A CENTRAL ANGLE OF 37°51'40", AN ARC LENGTH OF 46.00 FEET TO A POINT OF REVERSE CURVATURE THROUGH WHICH A RADIAL LINE BEARS SOUTH 24°08'36" EAST; THENCE CURVING TO THE LEFT ALONG A 105.00 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY, THROUGH A CENTRAL ANGLE OF 25°32'58", AN ARC LENGTH OF 46.82 FEET TO A POINT OF COMPOUND CURVATURE TO WHICH A RADIAL LINE BEARS SOUTH 24°08'36" EAST; THENCE CURVING TO THE LEFT ALONG THE ARC OF A 530.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY, THROUGH A CENTRAL ANGLE OF 18°15'11", AN ARC LENGTH OF 168.85 FEET TO A POINT OF COMPOUND CURVATURE THROUGH WHICH A RADIAL LINE BEARS SOUTH 42°23'47" EAST; THENCE CURVING TO THE LEFT ALONG A 20.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY, THROUGH A CENTRAL ANGLE OF 95°37'35", AN ARC LENGTH OF 33.38 FEET TO A POINT TO WHICH A RADIAL LINE BEARS NORTH 41°58'39" EAST; THENCE NORTH 41°58'39" EAST, 60.00 FEET; THENCE FROM A TANGENT BEARING SOUTH 48°01'21" EAST, CURVING TO THE LEFT ALONG A 20.00 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY (THE RADIUS POINT OF WHICH BEARS NORTH 41°58'39" EAST), THROUGH A CENTRAL ANGLE OF 95°37'35", AN ARC LENGTH OF 33.38 FEET TO A POINT OF COMPOUND CURVATURE THROUGH WHICH A RADIAL LINE BEARS SOUTH 53°38'56" EAST; THENCE CURVING TO THE LEFT ALONG A 530.00 FOOT RADIUS CURVE, THROUGH A CENTRAL ANGLE OF 34°27'49", AN ARC LENGTH OF 318.80 FEET; THENCE NORTH 01°53'15" EAST, 626.44 FEET; THENCE CURVING TO THE LEFT ALONG A 20.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 90°00'00", AN ARC LENGTH OF 31.42 FEET TO A POINT TO WHICH A RADIAL LINE BEARS NORTH 01°53'15" EAST; THENCE NORTH 01°53'15" EAST, 60.00 FEET; THENCE FROM A TANGENT BEARING SOUTH 88°06'45" EAST, CURVING TO THE LEFT ALONG A 20.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY (THE RADIUS POINT OF WHICH BEARS NORTH 01°53'15" EAST), THROUGH A CENTRAL ANGLE OF 90°0'00", AN ARC LENGTH OF 31.42 FEET; THENCE NORTH 01°53'15" EAST, 224.05 FEET; THENCE CURVING TO THE LEFT ALONG A 965.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY, THROUGH A CENTRAL ANGLE OF 11°04'39", AN ARC LENGTH OF 186.57 FEET; THENCE NORTH 09°11'24" WEST, 128.25 FEET; THENCE CURVING TO THE LEFT ALONG A 25.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 88°31'36", AN ARC LENGTH OF 38.63 FEET TO A POINT ON THE SOUTHWESTERLY RIGHT-OF-WAY LINE OF SHERWOOD GREENS DRIVE THROUGH WHICH A RADIAL LINE BEARS NORTH 07°43'00" WEST; THENCE ALONG SAID RIGHT-OF-WAY LINE; THENCE NORTH 07°43'00" WEST, 35.50 FEET; THENCE FROM A TANGENT BEARING NORTH 82°17'00" EAST, CURVING TO THE RIGHT ALONG A 525.50 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY (THE RADIUS POINT OF WHICH BEARS NORTH 07°43'00" WEST), THROUGH A CENTRAL ANGLE OF 18°57'18", AN ARC LENGTH OF 173.85 FEET TO THE **POINT OF BEGINNING** TO WHICH A RADIAL LINE BEARS SOUTH 26°40'18" EAST.

CONTAINING 20.95ACRES±.

C:\Documents and Settings\bross\Local Settings\Temporary Internet Files\OLK3A\RRP20U1.doc
4/3/2006 By: ALC Ckd. By: BAM

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296



**G. C. WALLACE, INC.**
Engineers / Planners / Surveyors

GERALD L. HOLTON, PLS
NEVADA LICENSE NO. 13290
EXPIRES: JUNE 30, 2005

C:\Documents and Settings\bross\Local Settings\Temporary Internet Files\OLK3A\RRP20U1.doc
4/3/2006 By: ALC Ckd. By: BAM

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296

Bon X

05 — 40/00

## CLARK COUNTY DEPARTMENT OF DEVELOPMENT SERVICES
## DEVELOPMENT OF OFF-SITE IMPROVEMENTS
### PERFORMANCE BOND

Bond No. 5021320

That Rhodes Ranch General Partnership                                                          as

Principal, of 4730 S. Fort Apache Rd., Ste. 300                                              ,

City of Las Vegas, NV                                                                          ,

County of Clark                                                                               ,

and Bond Safeguard Insurance Company         as Surety, a corporation incorporated and doing

business under the laws of the State of _____Illinois_____and licensed to

conduct, transact and issue Surety business in the State of Nevada, are held and firmly bound to

Clark County, Nevada, as Obligee, in the sum of Two Hundred Ten Thousand Four Hundred Thirty

Seven and 44/100                 ($ 210,437.44              ) Dollars, for the payment of the sum

well and truly to be made, and jointly and severally bind themselves, their heirs, successors,

assigns, executors, administrators and legal representatives firmly by these presents.

### CONDITIONS

1. Principal, as a condition of the development of the Ford Avenue Improvement project,
   Plans
   entered into a written agreement or agreements ("improvement agreement(s)") with said
   Obligee to complete the required improvements specified in said improvement agreement(s)
   identified as____roadway improvements_____ , dated_____ , and
   _____ ,dated _____ , and are attached hereto and by
   this reference incorporated herein.

2. If Principal fully and completely performs all of its obligations required by the said improvement
   agreement(s) during the original term thereof, or any extension of said term that may be
   granted by the Obligee with or without notice to the Surety, this obligation shall be voided;
   otherwise this obligation shall remain in full force and effect.

3. This obligation will continuously remain in full force and effect until and unless all of the
   conditions in he said improvement agreement(s) are fulfilled and completed to the satisfaction
   of the Obligee.

4. The provisions of this obligation shall be interpreted in manner consistent with the terms and
   conditions of the improvement agreement(s) and the requirements of the Clark County Code,
   including, but not limited to, Chapter 30.32, which by this reference is incorporated herein.

5. Surety hereby waives notice of any changes, modifications, or additions to the obligations
   specified in said improvement agreement(s).

Page 1 of 2

6. Any deviations, additions, or modifications to the obligations of the improvement agreement(s) may be made without the consent or knowledge of Surety and without in any way releasing Surety from liability under this bond.

7. In case of default by Principal, Surety may assure and complete or procure completion of the obligations of Principal, and Surety will be subrogated and entitled to all the rights and properties of Principal arising out of the improvement agreement(s).

IN WITNESS WHEREOF, the seal and signature of said Principal is hereto affixed and the corporate seal and the name of the said Surety is hereto affixed and attested by its duly authorized Attorney-in-Fact at _____Westmont, Illinois_____ , Nevada, this _February 22_ _____ 2006_____ .

Rhodes Ranch
**PRINCIPAL:** General Partnership

BY:

**SURETY:** Bond Safeguard Insurance Company

BY: _Melissa Schmidt_
  Melissa Schmidt    , Attorney-in-Fact

State of Nevada
County of Clark

This instrument was acknowledged before me on _February 23rd_ , 2006, by _Paul Hungens_ as _Chief Financial Officer_ of _Rhodes Ranch General Partnership_ (Principal).

**NOTARY PUBLIC** in and for said County and State.

BY: _Caroline L. Brown_
Caroline L. Brown Nevada Resident Agent

State of Nevada Illinois
County of Clark DuPage

This instrument was acknowledged before me on _February 22_ , 2006 , by _Melissa Schmidt_ as Attorney-in-Fact for Bond Safeguard Insurance Company (Surety).

**NOTARY PUBLIC** in and for said County and State. Heather A. Beck

OFFICIAL SEAL
HEATHER A BECK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/05/08

BROWN & BROWN INSURANCE CO
2213 N. Green Valley Parkway #101

Henderson, NV 89014

BCC standard form approved 7/16/02.

Page 2 of 2

**POWER OF ATTORNEY**   AO 40876

# Bond Safeguard INSURANCE COMPANY

KNOW ALL MEN BY THESE PRESENTS, that **BOND SAFEGUARD INSURANCE COMPANY**, an Illinois Corporation with its principal office in Lombard, Illinois, does hereby constitute and appoint: ___Michael J. Scheer, James I. Moore, Irene Diaz, Bonnie Kruse, Stephen T. Kazmer___

_____Dawn L. Morgan, Peggy Faust, Kelly A. Jacobs, Elaine Marcus, Jennifer L. McComb, Melissa Schmidt, Joel E. Spackman••••••••••••••••••••••••••••••••••••••••••••••
its true and lawful Attorney(s)-in-Fact to make, execute, seal and deliver for, and on its behalf as surety, any and all bonds, undertakings or other writings obligatory in nature of a bond.

This authority is made under and by the authority of a resolution which was passed by the Board of Directors of **BOND SAFEGUARD INSURANCE COMPANY** on the 7th day of November, 2001 as follows:

Resolved, that the President of the Company is hereby authorized to appoint and empower any representative of the Company or other person or persons as Attorney-In-Fact to execute on behalf of the Company any bonds, undertakings, policies, contracts of indemnity or other writings obligatory in nature of a bond not to exceed $1,000,000.00, One Million Dollars, which the Company might execute through its duly elected officers, and affix the seal of the Company thereto. Any said execution of such documents by an Attorney-In-Fact shall be as binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company. Any Attorney-in-Fact, so appointed, may be removed for good cause and the authority so granted may be revoked as specified in the Power of Attorney.

Resolved, that the signature of the President and the seal of the Company may be affixed by facsimile on any power of attorney granted, and the signature of the Vice President, and the seal of the Company may be affixed by facsimile to any certificate of any such power and any such power or certificate bearing such facsimile signature and seal shall be valid and binding on the Company. Any such power so executed and sealed and certificate so executed and sealed shall, with respect to any bond or undertaking to which it is attached, continue to be valid and binding on the Company.

IN WITNESS THEREOF, **BOND SAFEGUARD INSURANCE COMPANY** has caused this instrument to be signed by its President, and its Corporate seal to be affixed this 7th day of November, 2001.



**BOND SAFEGUARD INSURANCE COMPANY**

BY _____
David E. Campbell
President

### ACKNOWLEDGEMENT

On this 7th day of November, 2001, before me, personally came David E. Campbell to me known, who being duly sworn, did depose and say that he is the President of **BOND SAFEGUARD INSURANCE COMPANY**, the corporation described in and which executed the above instrument; that he executed said instrument on behalf of the corporation by authority of his office under the By-laws of said corporation.

"OFFICIAL SEAL"
MICHELE KOLLER
Notary Public, State of Illinois
My Commission Expires 08/28/07

_____
Michele Koller
Notary Public

### CERTIFICATE

I, the undersigned, Secretary of **BOND SAFEGUARD INSURANCE COMPANY**, An Illinois Insurance Company, DO HEREBY CERTIFY that the original Power of Attorney of which the foregoing is a true and correct copy, is in full force and effect and has not been revoked and the resolutions as set forth are now in force.

Signed and Sealed at Lombard, Illinois this ___22nd___ Day of ___February___ , 20 _06_

_____
Donald D. Buchanan
Secretary

20060321-0005396

APN: 176-18-801-003

HTE #: 05-40100

OS-40/00

OSIA

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division

Fee: $0.00
H/C Fee: $0.00

03/21/2006          19:39:44
T20060050237
Requestor:
DEVELOPMENT SERVICES CLARK COUNTY
Frances Deane          JJF
Clark County Recorder    Pgs: 11

# CLARK COUNTY
# DEPARTMENT OF DEVELOPMENT SERVICES



## OFF-SITE IMPROVEMENTS AGREEMENT

**THIS AGREEMENT,** made and entered into this 14th day of February ,
20 06 , by and between:
Rhodes Ranch General Partnership ,
whose mailing address is:

4730 South Fort Apache Road, Suite #300

Las Vegas, NV 89147

(702) 873-5338

hereinafter referred to as DEVELOPER and CLARK COUNTY, NEVADA, hereinafter
referred to as COUNTY, for construction of off-site improvements at the following location:

Cross Streets:  Ford Avenue and Grand Canyon Drive

Assessor's Parcel Number:  176-18-801-003

**WHEREAS**, DEVELOPER has submitted a plan to the COUNTY for a

Roadway

(type of development); and

**WHEREAS**, the COUNTY requires construction of certain off-site
improvements as part of said development.

**NOW, THEREFORE,** the parties to this agreement for and in consideration of
the mutual promises herein contained and for other good and valuable considerations, do

1 of 8

hereby agreed as follows:

1.    OFF-SITE IMPROVEMENTS

The DEVELOPER, at his own cost, shall perform and complete all off-site work and improvements which may consist of, but not limited to, streets, street name signs, traffic signs, sewers, water systems, fire hydrants, curbs, gutters, sidewalks, street lighting, driveways, drainage facilities, accesses, survey monuments,

PER HTE # 05-40100

etc., hereinafter referred to as off-site improvements, said off-site improvements shall be constructed in accordance with applicable ordinances, regulations, standards and specifications, and other requirements of CLARK COUNTY, NEVADA.

2.    PLANS APPROVED BY THE DIRECTOR OF DEVELOPMENT SERVICES

No off-site improvements shall commence until:

(a)    off-site improvement plans have been approved by the Director of DEVELOPMENT SERVICES or his authorized representative;

(b)    one-hundred percent (100%) of the plan-check and inspection fees have been paid;

(c)    performance security executed as required by CLARK COUNTY ordinances; and

(d)    an off-site permit has been issued by the Director of DEVELOPMENT SERVICES, or his authorized representative.

3.    NOTICE OF COMMENCEMENT OF CERTAIN WORK

The DEVELOPER shall notify the Director of Development Services no less than 24 hours in advance of the date and hour work on any of the following items is expected to begin, and thereafter if conditions develop to delay the start of work, the DEVELOPER agrees to notify the Director of Development Services of the delay not less than two hours before work is scheduled to begin:

--    Placing sewer, water, gas, power, telephone lines and fire hydrants.

--    Back-filling of sewer, water, gas, power and telephone lines.

--    Placing concrete for curb, gutter, sidewalk, valley gutters, storm drain structures, manholes, street lighting foundations and alley gutters.

2 of 8

--   Placing Type I and Type II gravel base course.

--   Priming base course.

--   Placing street lighting and bum testing.

--   Placing street name signs and traffic control signs.

### 4.   APPROVAL OF WORK AFTER INSPECTION

(a)   Whenever the Director of Development Services or his duly authorized representative inspects portion of work as mentioned hereinbefore, and finds the work performed to be in a satisfactory condition for inclusion in the completed project, the Director of Development Services or his duly authorized representative shall issue a statement of inspection which shall permit the DEVELOPER to perform the next phase of the construction. Ordinarily, not less than one continuous block of any one of the items of work mentioned will be approved.

(b)   Inspection and approval of any item of work shall not forfeit the right of the COUNTY to require the corrections of quality, workmanship or materials at any time prior to the final acceptance of the project by the Director of Development Services, although previously approved by an oversight.

(c)   Nothing herein shall relieve the DEVELOPER of the responsibility for proper construction of the off-site improvements and DEVELOPER shall maintain said improvements until the work has been accepted by the Director of Development Services.

### 5.   ADJUSTMENT TO EXISTING UTILITIES AND COST THEREOF

The DEVELOPER shall, at its sole expense, provide for adjustments necessary to all existing utilities because of the work required by this agreement.

### 6.   FULL COMPLIANCE WITH COUNTY REQUIREMENTS

The DEVELOPER shall perform and complete all off-site improvements in accordance with the regulations, specifications, and ordinances of the said County of Clark, and the construction plans approved by Clark County Development Services Department.

The DEVELOPER shall obtain all required permits from other County, State, and Federal agencies, including but not limited to Clark County Health District, Nevada Department of Environmental Protection, and United States Army Corps of Engineers.

3 of 8

The COUNTY shall have the right to require corrections to the construction plans by the DEVELOPER at any time before release of the bond (performance bond, cash deposit, or agreement in lieu of bond) required herein, of any item or items contained in this agreement which do not conform to COUNTY standard specifications, laws, regulations or ordinances, even though the plans for the item in question may have been approved by the Director of Development Services.

The DEVELOPER shall start said off-site improvements upon receipt of a COUNTY-approved off-site permit and said off-site improvements shall be completed prior to expiration of said permit in accordance with the required ordinances.

In the event the DEVELOPER fails to complete said improvements within said period or in the event the DEVELOPER in the COUNTY's opinion has created a safety hazard, the COUNTY, at its option, may proceed to complete said improvements at the expense of the DEVELOPER. The COUNTY may use the required performance bond as provided for hereinafter.

7.   OTHER CONDITIONS AND REQUIREMENTS

The DEVELOPER further agrees that, in addition to the above requirements, any and/or all such conditions, stipulations and agreements made by the DEVELOPER and the Board of County Commissioners and/or County Planning Commission of Clark County shall be fully performed.

The DEVELOPER further agrees that all work is to be performed by a qualified contractor licensed to do business in the State of Nevada and the County of Clark.

The DEVELOPER shall maintain, protect and take care of all work areas for the project, including any adjacent existing improvements, until its completion and acceptance by Clark County.   Maintenance of any inhabited area of the development, and the adjacent streets and/or neighborhoods, shall include, but not be limited to, sweeping of the streets and keeping the gutters free of dirt and debris.

During move-in, construction and move-off, the DEVELOPER shall keep the site free and clear from dangerous accumulation of rubbish and debris and shall maintain sufficient and proper barricades, lights, etc., in accordance with the latest manual on the placement of traffic control devices accepted by the Department of Development Services for the protection of the public. Also, after excavation or placement of gravel, if the sub-grade and/or gravel base material is left exposed and in the opinion of the Director of Development Services is not properly maintained, thus causing either a rough riding surface or a dust problem, the Director of Development Services may require the DEVELOPER to do whatever is necessary to provide an adequate travel-way.   If a detour is needed, the Director of Development Services shall determine to what extent it shall be maintained, which

4 of 8

shall include the placing of temporary paving, if it is to be used for an extended
period of time.

Final acceptance of the work will not be made by the COUNTY until the area (falling
under this agreement) and adjacent property has been cleared of all rubbish,
surplus materials and equipment resulting from the contractor's operations, to the
satisfaction of the Director of Development Services.

8.    LIABILITY

The DEVELOPER shall indemnify, defend, and hold harmless the COUNTY, its
officers, agents, volunteers, and employees, against and from any and all liability,
loss, damage, claims, fines, demands, causes of action, costs, expenses, and
judgments of whatsoever nature, including but not limited to reasonable costs of
investigation, reasonable attorney's fees and expenses, all reasonable expert
witness fees and expenses, and all court or arbitration or other alternative dispute
resolution costs which result from injury to or death of any persons whomsoever,
and/or against and from damage to or loss or destruction of property whatsoever
when such injury death, loss, destruction or damage is due to or arises in
connection with or as a result of any work done by the DEVELOPER in connection
with the construction of the off-site improvements, and/or arises of or in connection
with DEVELOPER's performance or failure to perform the terms and conditions of
this agreement.    This Section 8 survives termination or completion of this
agreement.

9.    PLAN REQUIREMENTS ON COMPLETION OF IMPROVEMENTS

Upon completion of all the off-site improvements within the COUNTY right-of-way
required hereby and prior to release of any performance security, the DEVELOPER
shall furnish the Director of Development Services with an as-built plan which shall
accurately indicate, by lettered dimensions, the location of all manholes, the location
size and depth of all sewer mains, underground water, power, gas, and other lines,
with street plans and profiles for the same, including laterals and "Y's" for
connection of house service lines.

10.    WARRANTY

The DEVELOPER is responsible should any original or developed defects or
failures appear within a period of one year from the date of acceptance of the work
by the COUNTY.  The DEVELOPER shall, at his own expense, make good such
defects and failures and make all replacements and adjustments required, within
thirty (30) days after being notified by the COUNTY to do so.  All repairs shall be
subject to the approval of the Director of Development Services and/or the Director
of Public Works.

5 of 8

This agreement does not limit or relieve DEVELOPER from any other obligation or responsibility which the DEVELOPER may otherwise have as a result of the street improvements, including any damages or latent defects which may occur beyond the warranty period specified above. Furthermore, DEVELOPER, at all times, is not relieved of any obligation or responsibility it may have by law including but not limited to damages for latent deficiencies, injury to real or personal property or injury to or wrongful death of a person, (N.R.S. 11.204).

11.   REQUIREMENTS OF PERFORMANCE BOND OR OTHER SECURITY

DEVELOPER shall furnish without cost to the COUNTY a surety and performance bond, cash deposit or agreement in lieu of bond for the full cost of said off-site improvements in favor of the COUNTY conditioned upon the DEVELOPER completing said off-site improvements within the time period prescribed by this agreement. Also, in the event the COUNTY exercises its option to complete said off-site improvements, that said bond, cash deposit or agreement in lieu of bond shall be used for the payment of the costs of completion of said off site improvements by the COUNTY in case the DEVELOPER fails to do so within said time period.

If the construction or installation of any off-site improvements or facilities for which a bond, cash deposit or agreement in lieu of bond is posted are not completed within the time frame of the off-site permit issued for the development; or if the DEVELOPER has suspended work and has failed to provide continued construction during the past 60 days; or if in the event the DEVELOPER, in the COUNTY's opinion, has created a safety hazard; or if such construction is not in accordance with applicable standards and specifications as prescribed by law, then, in either or any such event, the COUNTY may, at its option, proceed to complete said off site improvements at the expense of the DEVELOPER under this bond as provided for hereinafter.

That DEVELOPER acknowledges that the bond provided for in this agreement to construct the off-site improvements is only based upon an estimate of their cost by the Engineer of the County and in the event that actual cost of said off-site improvements shall exceed such sum, DEVELOPER is in no way relieved by this agreement from paying the entire amount of such excess.

Any application for release of said bond or cash deposit upon the completion of the off-site improvements by the DEVELOPER shall not be granted unless accompanied by a written certificate from the Director of Development Services stating that all requirements hereof have been satisfactorily completed in accordance with the terms of this agreement.

6 of 8

12.    CERTIFICATE OF OCCUPANCY

No certificates of occupancy shall be granted until such time as the off-site improvements have been completed to the satisfaction of the Director of Development Services, and in accordance with this agreement. The granting of a certificate of occupancy does not relieve DEVELOPER of its obligations in this agreement.

The granting of a certificate of occupancy does not imply that the off-site improvements have been properly completed nor authorize the release of the performance bond or other security.

13.    CERTIFICATE OF RELEASE

Upon final acceptance, by the Director of Development Services, of all of the off-site improvements required to be constructed by DEVELOPER as herein provided, DEVELOPER shall be issued a certificate of release of said performance bond or cash deposit, which shall be issued by the Director of Development Services.

14.    NO THIRD PARTY BENEFICIARY

Any inspections or subsequent approvals undertaken by the COUNTY pursuant to express or implied terms of this agreement are undertaken solely to insure compliance with the terms of this agreement and are not undertaken for the benefit of any individual or group of individuals as members of the public. It is not intended by any of the provisions of any part of this agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this agreement to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this agreement. Provisions in this agreement dealing with inspections, approvals or changes requested or made do not expand the COUNTY's general law duties.

15.    ASSIGNMENTS

DEVELOPER cannot assign this agreement, in whole or in part, or any rights herein granted, without the written consent of the COUNTY and it is agreed that any attempted transfer or assignment of this agreement or any of the rights herein granted, whether voluntary, by operation of law, or otherwise, without such consent in writing, shall be absolutely void at the option of the COUNTY.

16.    AGREEMENT TO BE RECORDED

The DEVELOPER agrees that this agreement will be recorded upon the land described in Exhibit "A" and this agreement shall also be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors,

7 of 8

and assigns. DEVELOPER and any heirs, executors, administrators, successors and assigns, if any, shall be jointly and severally liable for DEVELOPER's obligations herein.

17.    **WAIVER**

. None of the conditions of this agreement shall be considered waived by either party unless such waiver is in writing and signed by both parties. No such waiver shall be a waiver of any past or future default, breach, or modification of any of the conditions of the agreement expressly stipulated in such waiver.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and official seals.

| | |
|---|---|
| STATE OF NEVADA ) <br> ) SS <br> COUNTY OF CLARK ) | **DEVELOPER:** <br> Rhodes RAnch General Partnership |

This instrument was acknowledged before me this 14ᵗʰ day of Febnuary 2006, by Paul Huygens, CFO

NOTARY PUBLIC in and for said County and State.

CORPORATION CERTIFICATE

I, _____ , certify that I am the Secretary of the Corporation named as Developer in the foregoing document; that _____ was then President/Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

_____
SECRETARY

4730 South Fort Apacha Road, Suite #300

Las Vegas, NV 89147

Paul Huygens
NOTARY STAMP:

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
AUGUSTA S. YAMAMOTO
Appt. No. 03-82582-1
My Appt. Expires June 24, 2007

-- FOR COUNTY USE ONLY --

| | |
|---|---|
| STATE OF NEVADA ) <br> ) SS <br> COUNTY OF CLARK ) | **COUNTY OF CLARK**, a political subdivision of the State of Nevada |

Signed or attested before me on this 15ᵗʰ day of MARCH 20 06 by ROBERT B. THOMPSON

NOTARY PUBLIC in and for said County and State

BY _____
ROBERT B. THOMPSON
DEPARTMENT OF DEVELOPMENT
SERVICES

BCC standard form approved July 16, 2002

8 of 8



# G. C. WALLACE, INC.
Engineers / Planners / Surveyors

APN#176-18-801-003

### EXHIBIT "A"

**EXPLANATION:**   THIS LEGAL DESCRIBES A PARCEL OF LAND BEING LINKED TO
THE BOND ISSUED FOR THE IMPROVEMENTS ALONG FORD
AVENUE.

### LEGAL DESCRIPTION

THAT PORTION OF THE NORTHEAST QUARTER (NE1/4) OF THE SOUTHWEST QUARTER
(SW1/4) OF THE SOUTHEAST QUARTER (SE1/4) OF SECTION 18, TOWNSHIP 22 SOUTH,
RANGE 60 EAST, M.D.M., CLARK COUNTY, NEVADA DESCRIBED AS FOLLOWS:

**BEGINNING AT THE SOUTHWEST CORNER OF THE CENTERLINE OF FORD AVENUE**
OR:961122:01723; THENCE ALONG THE CENTERLINE OF SAID RIGHT-OF-WAY, NORTH
87°54'34" EAST, 350.91 FEET TO A POINT ON THE SOUTHEAST CORNER OF SAID
RIGHT-OF-WAY; THENCE DEPARTING SAID RIGHT-OF-WAY, SOUTH 01°37'11" WEST,
653.84 FEET; THENCE SOUTH 87°39'44" WEST, 351.01 FEET; THENCE NORTH 01°37'11"
EAST, 655.36 FEET TO THE POINT OF BEGINNING.

CONTAINING 5.26 ACRES±.

GERALD L. HOLTON, PLS
NEVADA LICENSE NO. 13290
EXPIRES: JUNE 30, 2007



01-10-06

Q:\050 (Office)\Projects\754\015\LEGALS\bond-pcl2.doc
1/8/2006  By: ALC  Ckd. By: GLH

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296



APN 176-18-801-003
RHODES RANCH GENERAL PARTNERSHIP
PARCEL OF LAND BEING LINKED TO THE BOND
ISSUED FOR IMPROVEMENTS ALONG FORD AVENUE
LYING WITHIN SECTION 18, T. 22 S.,
R. 60 E., M.D.M., CITY OF LAS VEGAS,
CLARK COUNTY, NEVADA

G.C. WALLACE, INC.
Engineers/Planners/Surveyors
1555 SOUTH RAINBOW BLVD, LAS VEGAS, NEVADA 83146

PROJECT NO.: 754.015
FILE: BOND-PCL2.DWG
DATE: 12.19.05

CALC. BY: ALC
DRAWN BY: ALC
CHECKED BY: CLM

EXHIBIT "B"

FORD AVENUE
PUBLIC STREET PER OR:961122:01723

N87'54'34"E    350.91'

POINT OF BEGINNING

WAGNER, JAMES DRUE ANNE
AND WAGNER LINELLE
APN 176-18-801-002

655.36'

653.84'

RHODES RANCH G.P.
APN 176-18-801-004

N01'37'11"E

S01'37'11"W

NORTH
SCALE: 1" = 100'

FLOOD CHANNEL
APN 176-18-896-002

TORINO AVENUE
S87'39'44"W    351.01'

BPCL2OAB.TXT

BPCL2.OAB                                                    Page  1

                                                    12/23/05 @ 09:18:05


                                            Northing        Easting

                                            --------        -------

Begin at                                    0.0000          0.0000

Course #1                        .

    N 87-54-34  E        350.91'            12.8008         350.6764


Course #2

    S 01-37-11  W        653.84'          -640.7779         332.1952


Course #3

    S 87-39-44  W        351.01'          -655.0958         -18.5227


Course #4

    N 01-37-11  E        655.36'            0.0023           0.0015



Closure: S 33ø36'28" W,  0.0028'

Area: 229222.9 Sq.Ft. or 5.2622 Acresロ
                          Page 1

BOND

05-33/63



## CLARK COUNTY DEPARTMENT OF PUBLIC WORKS
## DEVELOPMENT OF OFF-SITE IMPROVEMENTS
## PERFORMANCE BOND

Bond No: 5019711

That <u>Rhodes Ranch GP</u> _____ as

Principal, of <u>4730 S. Fort Apache, Ste. 300</u> _____ ,

City of <u>Las Vegas, NV</u> _____ ,

County of <u>Clark</u> _____ , _____

and <u>Bond Safeguard Insurance Company</u> _____as Surety, a corporation incorporated and doing

business under the laws of the State of _____ <u>Illinois</u> _____ and licensed to

conduct, transact and issue Surety business in the State of Nevada, are held and firmly bound

to Clark County, Nevada, as Obligee, in the sum of <u>Two Hundred Ninety Eight Thousand Three</u>

<u>Hundred Seventy One and 58/100</u> (\$ <u>298,371.58</u> _____ ) Dollars, for the payment of the sum

well and truly to be made, and jointly and severally bind themselves, their heirs, successors,

assigns, executors, administrators and legal representatives firmly by these presents.


### CONDITIONS

1. Principal, as a condition of the development of the <u>Grand Canyon</u> _____project,
   entered into a written agreement or agreements ("improvement agreement(s)") with said
   Obligee to complete the required improvements specified in said improvement agreement(s)
   identified as <u>roadway, sewer, traffic, drainage</u> <sup>MTE# 05-33163</sup> , dated_____ , and _____
   _____ ,dated _____ , and are attached hereto and by this
   reference incorporated herein.

2. If Principal fully and completely performs all of its obligations required by the said improvement
   agreement(s) during the original term thereof, or any extension of said term that may be
   granted by the Obligee with or without notice to the Surety, this obligation shall be voided;
   otherwise this obligation shall remain in full force and effect.

3. This obligation will continuously remain in full force and effect until and unless all of the
   conditions in the said improvement agreement(s) are fulfilled and completed to the satisfaction
   of the Obligee.

4. The provisions of this obligation shall be interpreted in manner consistent with the
   requirements of the Clark County Code, including, but not limited to, Chapter 30.32, which by
   this reference is incorporated herein.

5. Surety hereby waives notice of any changes, modifications, or additions to the obligations
   specified in said improvement agreement(s).

Page 1 of 2

6. Any deviations, additions, or modifications to the obligations of the improvement agreement(s) may be made without the consent or knowledge of Surety and without in any way releasing Surety from liability under this bond.

7. In case of default by Principal, Surety may assure and complete or procure completion of the obligations of Principal, and Surety will be subrogated and entitled to all the rights and properties of Principal arising out of the improvement agreement(s).

IN WITNESS WHEREOF, the seal and signature of said Principal is hereto affixed and the corporate seal and the name of the said Surety is hereto affixed and attested by its duly authorized Attorney-in-Fact at ____Westmont, Illinois____, ~~Nevada~~ this ____October 25____, ____2005____.

PRINCIPAL: Rhodes Ranch GP

BY: _____
Paul Huyyens Secretary Sagebrush

State of Nevada
County of Clark

This instrument was acknowledged before me on __October 27__, 20 05, by __Paul Huyyens__ as __Secretary__ of _____ (Principal).

NOTARY PUBLIC in and for said County and State _____

[Notary seal: NOTARY PUBLIC STATE OF NEVADA County of Clark AUGUSTA S. YAMAMOTO Appl. No. 03-82552-1 My Appl. Expires June 24, 2007]

BY: __Carolyn L. Brown__
Caroline L. Brown, Nevada Resident Agent

SURETY: Bond Safeguard Insurance Company

BY: _Melissa Schmidt_
Melissa Schmidt, Attorney-in-Fact

State of ~~Nevada~~ Illinois
County of ~~Clark~~ DuPage

This instrument was acknowledged before me on __October 25__, 20 05, by __Melissa Schmidt__ as Attorney-in-Fact for Bond Safeguard (Surety). Insurance Company

NOTARY PUBLIC in and for said County and State.    Heather A. Beck

[Notary seal: OFFICIAL SEAL HEATHER A BECK NOTARY PUBLIC - STATE OF ILLINOIS MY COMMISSION EXPIRES:02/05/08]

2213 N. Green Valley Parkway #101

Henderson, NV 89014

Gulf Insurance Company

Page 2 of 2

**POWER OF ATTORNEY**  AO 39084

# Bond Safeguard INSURANCE COMPANY

KNOW ALL MEN BY THESE PRESENTS, that **BOND SAFEGUARD INSURANCE COMPANY**, an Illinois Corporation with its principal office in Lombard, Illinois, does hereby constitute and appoint: Michael J. Scheer, James I. Moore Christine Woods, Irene Diaz, Bonnie Kruse, Stephen T. Kazmer, Dawn L. Morgan, Peggy Faust, Kelly A. Jacobs, Elaine Marcus, Jennifer J. McComb, Melissa Schmidt

its true and lawful Attorney(s)-In-Fact to make, execute, seal and deliver for, and on its behalf as surely, any and all bonds, undertakings or other writings obligatory in nature of a bond.

This authority is made under and by the authority of a resolution which was passed by the Board of Directors of **BOND SAFEGUARD INSURANCE COMPANY** on the 7th day of November, 2001 as follows:

Resolved, that the President of the Company is hereby authorized to appoint and empower any representative of the Company or other person or persons as Attorney-In-Fact to execute on behalf of the Company any bonds, undertakings, policies, contracts of indemnity or other writings obligatory in nature of a bond not to exceed $1,000,000.00, One Million Dollars, which the Company might execute through its duly elected officers, and affix the seal of the Company thereto. Any said execution of such documents by an Attorney-In-Fact shall be as binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company. Any Attorney-In-Fact, so appointed, may be removed for good cause and the authority so granted may be revoked as specified in the Power of Attorney.

Resolved, that the signature of the President and the seal of the Company may be affixed by facsimile on any power of attorney granted, and the signature of the Vice President, and the seal of the Company may be affixed by facsimile to any certificate of any such power and any such power or certificate bearing such facsimile signature and seal shall be valid and binding on the Company. Any such power so executed and sealed and certificate so executed and sealed shall, with respect to any bond or undertaking to which it is attached, continue to be valid and binding on the Company.

IN WITNESS THEREOF, **BOND SAFEGUARD INSURANCE COMPANY** has caused this instrument to be signed by its President, and its Corporate seal to be affixed this 7th day of November, 2001.



**BOND SAFEGUARD INSURANCE COMPANY**

BY _____
David E. Campbell
President

## ACKNOWLEDGEMENT

On this 7th day of November, 2001, before me, personally came David E. Campbell to me known, who being duly sworn, did depose and say that he is the President of **BOND SAFEGUARD INSURANCE COMPANY**, the corporation described in and which executed the above instrument; that he executed said instrument on behalf of the corporation by authority of his office under the By-laws of said corporation.

_____
Michele Koller
Notary Public

"OFFICIAL SEAL"
**MICHELE KOLLER**
Notary Public, State of Illinois
My Commission Expires 08/28/07

## CERTIFICATE

I, the undersigned, Secretary of **BOND SAFEGUARD INSURANCE COMPANY**, An Illinois Insurance Company, DO HEREBY CERTIFY that the original Power of Attorney of which the foregoing is a true and correct copy, is in full force and effect and has not been revoked and the resolutions as set forth are now in force.

Signed and Sealed at Lombard, Illinois this __24th__ Day of __October__, 20 05.

_____
Donald D. Buchanan
Secretary

RECORDER'S MEMO
POSSIBLE POOR RECORD DUE TO
QUALITY OF ORIGINAL DOCUMENT

05 - 33163

OSTA

APN: _176-18-801-001_

HTE #: _05-33163_

When recorded return to:
Bonding
Clark County Development Services
Civil Engineering Division

20060109-0004347

Fee: $0.00
N/C Fee: $0.00

01/09/2006          14:06:11
T20060004809

Requestor:
  DEVELOPMENT SERVICES CLARK COUNTY

Frances Deane                    JYB
  Clark County Recorder    Pgs: 10

# CLARK COUNTY
## DEPARTMENT OF DEVELOPMENT SERVICES

### OFF-SITE IMPROVEMENTS AGREEMENT

THIS AGREEMENT, made and entered into this _3rd_ day of _November_,
20 _05_ , by and between:

Rhodes Ranch G.P.

whose mailing address is:

4730 S. Fort Apache, Suite #300

Las Vegas, NV 89147

(702) 873-5338

hereinafter referred to as DEVELOPER and CLARK COUNTY, NEVADA, hereinafter
referred to as COUNTY, for construction of off-site improvements at the following location:

Cross Streets:    Wigwam and Grand Canyon

Assessor's Parcel Number:    176-18-801-001

WHEREAS, DEVELOPER has submitted a plan to the COUNTY for a

Roadway Improvements
(type of development); and

WHEREAS, the COUNTY requires construction of certain off-site
improvements as part of said development.

NOW, THEREFORE, the parties to this agreement for and in consideration of
the mutual promises herein contained and for other good and valuable considerations, do

1 of 8

hereby agreed as follows:

1.    OFF-SITE IMPROVEMENTS

The DEVELOPER, at his own cost, shall perform and complete all off-site work and improvements which may consist of, but not limited to, streets, street name signs, traffic signs, sewers, water systems, fire hydrants, curbs, gutters, sidewalks, street lighting, driveways, drainage facilities, accesses, survey monuments,
            PER   HTE #. 0 S-33163
etc., hereinafter referred to as off-site improvements, said off-site improvements shall be constructed in accordance with applicable ordinances, regulations, standards and specifications, and other requirements of CLARK COUNTY, NEVADA.

2.    PLANS APPROVED BY THE DIRECTOR OF DEVELOPMENT SERVICES

No off-site improvements shall commence until:

(a)    off-site improvement plans have been approved by the Director of DEVELOPMENT SERVICES or his authorized representative;

(b)    one-hundred percent (100%) of the plan-check and inspection fees have been paid; ·

(c)    performance security executed as required by CLARK COUNTY ordinances; and

(d)    an off-site permit has been issued by the Director of DEVELOPMENT SERVICES, or his authorized representative.

3.    NOTICE OF COMMENCEMENT OF CERTAIN WORK

The DEVELOPER shall notify the Director of Development Services no less than 24 hours in advance of the date and hour work on any of the following items is expected to begin, and thereafter if conditions develop to delay the start of work, the DEVELOPER agrees to notify the Director of Development Services of the delay not less than two hours before work is scheduled to begin:

--    Placing sewer, water, gas, power, telephone lines and fire hydrants.

--    Back-filling of sewer, water, gas, power and telephone lines.

--    Placing concrete for curb, gutter, sidewalk, valley gutters, storm drain structures, manholes, street lighting foundations and alley gutters.

2 of 8

--   Placing Type I and Type II gravel base course.

--   Priming base course.

-- .   Placing street lighting and burn testing.

--   Placing street name signs and traffic control signs.

4.   APPROVAL OF WORK AFTER INSPECTION

(a)   Whenever the Director of Development Services or his duly authorized
     representative inspects portion of work as mentioned hereinbefore, and finds
     the work performed to be in a satisfactory condition for inclusion in the
     completed project, the Director of Development Services or his duly
     authorized representative shall issue a statement of inspection which shall
     permit the DEVELOPER to perform the next phase of the construction.
     Ordinarily, not less than one continuous block of any one of the items of work
     mentioned will be approved.

(b)   Inspection and approval of any item of work shall not forfeit the right of the
     COUNTY to require the corrections of quality, workmanship or materials at
     any time prior to the final acceptance of the project by the Director of
     Development Services, although previously approved by an oversight.

(c)   Nothing herein shall relieve the DEVELOPER of the responsibility for proper
     construction of the off-site improvements and DEVELOPER shall maintain
     said improvements until the work has been accepted by the Director of
     Development Services.

5.   ADJUSTMENT TO EXISTING UTILITIES AND COST THEREOF

The DEVELOPER shall, at its sole expense, provide for adjustments necessary to
all existing utilities because of the work required by this agreement.

6.   FULL COMPLIANCE WITH COUNTY REQUIREMENTS

The DEVELOPER shall perform and complete all off-site improvements in
accordance with the regulations, specifications, and ordinances of the said County
of Clark, and the construction plans approved by Clark County Development
Services Department.

The DEVELOPER shall obtain all required permits from other County, State, and
Federal agencies, including but not limited to Clark County Health District, Nevada
Department of Environmental Protection, and United States Army Corps of
Engineers.

3 of 8

The COUNTY shall have the right to require corrections to the construction plans by
the DEVELOPER at any time before release of the bond (performance bond, cash
deposit, or agreement in lieu of bond) required herein, of any item or items
contained in this agreement which do not conform to COUNTY standard
specifications, laws, regulations or ordinances, even though the plans for the item in
question may have been approved by the Director of Development Services.

The DEVELOPER shall start said off-site improvements upon receipt of a COUNTY-
approved off-site permit and said off-site improvements shall be completed prior to
expiration of said permit in accordance with the required ordinances.

In the event the DEVELOPER fails to complete said improvements within said
period or in the event the DEVELOPER in the COUNTY's opinion has created a
safety hazard, the COUNTY, at its option, may proceed to complete said
improvements at the expense of the DEVELOPER. The COUNTY may use the
required performance bond as provided for hereinafter.

7.   OTHER CONDITIONS AND REQUIREMENTS

The DEVELOPER further agrees that, in addition to the above requirements, any
and/or all such conditions, stipulations and agreements made by the DEVELOPER
and the Board of County Commissioners and/or County Planning Commission of
Clark County shall be fully performed.

The DEVELOPER further agrees that all work is to be performed by a qualified
contractor licensed to do business in the State of Nevada and the County of Clark.

The DEVELOPER shall maintain, protect and take care of all work areas for the
project, including any adjacent existing improvements, until its completion and
acceptance by Clark County.   Maintenance of any inhabited area of the
development, and the adjacent streets and/or neighborhoods, shall include, but not
be limited to, sweeping of the streets and keeping the gutters free of dirt and debris.

During move-in, construction and move-off, the DEVELOPER shall keep the site
free and clear from dangerous accumulation of rubbish and debris and shall
maintain sufficient and proper barricades, lights, etc., in accordance with the latest
manual on the placement of traffic control devices accepted by the Department of
Development Services for the protection of the public. Also, after excavation or
placement of gravel, if the sub-grade and/or gravel base material is left exposed and
in the opinion of the Director of Development Services is not properly maintained,
thus causing either a rough riding surface or a dust problem, the Director of
Development Services may require the DEVELOPER to do whatever is necessary
to provide an adequate travel-way.  If a detour is needed, the Director of
Development Services shall determine to what extent it shall be maintained, which

4 of 8

shall include the placing of temporary paving, if it is to be used for an extended period of time.

Final acceptance of the work will not be made by the COUNTY until the area (falling under this agreement) and adjacent property has been cleared of all rubbish, surplus materials and equipment resulting from the contractor's operations, to the satisfaction of the Director of Development Services.

8. **LIABILITY**

The DEVELOPER shall indemnify, defend, and hold harmless the COUNTY, its officers, agents, volunteers, and employees, against and from any and all liability, loss, damage, claims, fines, demands, causes of action, costs, expenses, and judgments of whatsoever nature, including but not limited to reasonable costs of investigation, reasonable attorney's fees and expenses, all reasonable expert witness fees and expenses, and all court or arbitration or other alternative dispute resolution costs which result from injury to or death of any persons whomsoever, and/or against and from damage to or loss or destruction of property whatsoever when such injury death, loss, destruction or damage is due to or arises in connection with or as a result of any work done by the DEVELOPER in connection with the construction of the off-site improvements, and/or arises of or in connection with DEVELOPER's performance or failure to perform the terms and conditions of this agreement. This Section 8 survives termination or completion of this agreement.

9. **PLAN REQUIREMENTS ON COMPLETION OF IMPROVEMENTS**

Upon completion of all the off-site improvements within the COUNTY right-of-way required hereby and prior to release of any performance security, the DEVELOPER shall furnish the Director of Development Services with an as-built plan which shall accurately indicate, by lettered dimensions, the location of all manholes, the location size and depth of all sewer mains, underground water, power, gas, and other lines, with street plans and profiles for the same, including laterals and "Y's" for connection of house service lines.

10. **WARRANTY**

The DEVELOPER is responsible should any original or developed defects or failures appear within a period of one year from the date of acceptance of the work by the COUNTY. The DEVELOPER shall, at his own expense, make good such defects and failures and make all replacements and adjustments required, within thirty (30) days after being notified by the COUNTY to do so. All repairs shall be subject to the approval of the Director of Development Services and/or the Director of Public Works.

5 of 8

This agreement does not limit or relieve DEVELOPER from any other obligation or responsibility which the DEVELOPER may otherwise have as a result of the street improvements, including any damages or latent defects which may occur beyond the warranty period specified above. Furthermore, DEVELOPER, at all times, is not relieved of any obligation or responsibility it may have by law including but not limited to damages for latent deficiencies, injury to real or personal property or injury to or wrongful death of a person, (N.R.S. 11.204).

## 11.    REQUIREMENTS OF PERFORMANCE BOND OR OTHER SECURITY

DEVELOPER shall furnish without cost to the COUNTY a surety and performance bond, cash deposit or agreement in lieu of bond for the full cost of said off-site improvements in favor of the COUNTY conditioned upon the DEVELOPER completing said off-site improvements within the time period prescribed by this agreement. Also, in the event the COUNTY exercises its option to complete said off-site improvements, that said bond, cash deposit or agreement in lieu of bond shall be used for the payment of the costs of completion of said off site improvements by the COUNTY in case the DEVELOPER fails to do so within said time period.

If the construction or installation of any off-site improvements or facilities for which a bond, cash deposit or agreement in lieu of bond is posted are not completed within the time frame of the off-site permit issued for the development; or if the DEVELOPER has suspended work and has failed to provide continued construction during the past 60 days; or if in the event the DEVELOPER, in the COUNTY's opinion, has created a safety hazard; or if such construction is not in accordance with applicable standards and specifications as prescribed by law, then, in either or any such event, the COUNTY may, at its option, proceed to complete said off site improvements at the expense of the DEVELOPER under this bond as provided for hereinafter.

That DEVELOPER acknowledges that the bond provided for in this agreement to construct the off-site improvements is only based upon an estimate of their cost by the Engineer of the County and in the event that actual cost of said off-site improvements shall exceed such sum, DEVELOPER is in no way relieved by this agreement from paying the entire amount of such excess.

Any application for release of said bond or cash deposit upon the completion of the off-site improvements by the DEVELOPER shall not be granted unless accompanied by a written certificate from the Director of Development Services stating that all requirements hereof have been satisfactorily completed in accordance with the terms of this agreement.

6 of 8

12.    CERTIFICATE OF OCCUPANCY

No certificates of occupancy shall be granted until such time as the off-site improvements have been completed to the satisfaction of the Director of Development Services, and in accordance with this agreement. The granting of a certificate of occupancy does not relieve DEVELOPER of its obligations in this agreement.

The granting of a certificate of occupancy does not imply that the off-site improvements have been properly completed nor authorize the release of the performance bond or other security.

13.    CERTIFICATE OF RELEASE

Upon final acceptance, by the Director of Development Services, of all of the off-site improvements required to be constructed by DEVELOPER as herein provided, DEVELOPER shall be issued a certificate of release of said performance bond or cash deposit, which shall be issued by the Director of Development Services.

14.    NO THIRD PARTY BENEFICIARY

Any inspections or subsequent approvals undertaken by the COUNTY pursuant to express or implied terms of this agreement are undertaken solely to insure compliance with the terms of this agreement and are not undertaken for the benefit of any individual or group of individuals as members of the public. It is not intended by any of the provisions of any part of this agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this agreement to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this agreement. Provisions in this agreement dealing with inspections, approvals or changes requested or made do not expand the COUNTY's general law duties.

15.    ASSIGNMENTS

DEVELOPER cannot assign this agreement, in whole or in part, or any rights herein granted, without the written consent of the COUNTY and it is agreed that any attempted transfer or assignment of this agreement or any of the rights herein granted, whether voluntary, by operation of law, or otherwise, without such consent in writing, shall be absolutely void at the option of the COUNTY.

16.    AGREEMENT TO BE RECORDED

The DEVELOPER agrees that this agreement will be recorded upon the land described in Exhibit "A" and this agreement shall also be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors,

7 of 8

and assigns. DEVELOPER and any heirs, executors, administrators, successors and assigns, if any, shall be jointly and severally liable for DEVELOPER's obligations herein.

17.  WAIVER

None of the conditions of this agreement shall be considered waived by either party unless such waiver is in writing and signed by both parties. No such waiver shall be a waiver of any past or future default, breach, or modification of any of the conditions of the agreement expressly stipulated in such waiver.

IN WITNESS WHEREOF, the parties hereto have set their hands and official seals.

STATE OF NEVADA        )
                       )  SS
COUNTY OF CLARK        )

This instrument was acknowledged before me this
3rd day of November
2005 by Paul Huygens

_____
NOTARY PUBLIC in and for said County and State.

CORPORATION CERTIFICATE

I, Paul Huygens _____, certify that I am the Secretary of the Corporation named as Developer in the foregoing document; that James M. Rhodes was then President/Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

_____
SECRETARY

DEVELOPER:

Rhodes Ranch, G.P.

4730 S. Fort Apache, Suite #300

Las Vegas, NV 89147

NOTARY STAMP: Paul Huygens

CRYSTAL LYNN HAWKINS
Notary Public State of Nevada
No. 03-85327-1
My appt. exp. Nov. 17, 2007

LORENA SHERMAN
Notary Public State of Nevada
No. 05-100515-1
My appt. exp. Oct. 7, 2009

— FOR COUNTY USE ONLY —

STATE OF NEVADA        )
                       )  SS
COUNTY OF CLARK        )

Signed or attested before me on this 3RD day of JANUARY 20 06 by ROBERT B. THOMPSON.

Lorena Sherman
NOTARY PUBLIC in and for said County and State

COUNTY OF CLARK, a political subdivision of the State of Nevada

BY _____
ROBERT B. THOMPSON
DEPARTMENT OF DEVELOPMENT SERVICES

BCC standard form approved July 16, 2002

8 of 8



# G. C. WALLACE, INC.
Engineers / Planners / Surveyors

APN#176-18-801-001

### EXHIBIT "A"

**EXPLANATION:**    THIS LEGAL DESCRIBES A PARCEL OF LAND BEING LINKED TO
THE BOND ISSUED FOR THE IMPROVEMENTS ALONG GRAND
CANYON DRIVE.

### LEGAL DESCRIPTION

THAT PORTION OF THE NORTHWEST QUARTER (NW1/4) OF THE SOUTHWEST
QUARTER (SW1/4) OF THE SOUTHEAST QUARTER (SE1/4) OF SECTION 18, TOWNSHIP
22 SOUTH, RANGE 60 EAST, M.D.M., CLARK COUNTY, NEVADA DESCRIBED AS
FOLLOWS:

COMMENCING AT THE INTERSECTION OF FORD AVENUE AND GRAND CANYON DRIVE;
THENCE ALONG THE CENTERLINE OF GRAND CANYON DRIVE, SOUTH 01°19'07" WEST,
46.51 FEET; THENCE DEPARTING SAID CENTERLINE SOUTH 88°40'53" EAST, 40.00 FEET
TO A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF GRAND CANYON DRIVE ALSO
BEING THE **POINT OF BEGINNING**; THENCE FROM A TANGENT BEARING NORTH
01°19'07" EAST, CURVING TO THE RIGHT ALONG THE ARC OF A 20.00 FOOT RADIUS
CURVE, CONCAVE SOUTHEASTERLY (THE RADIUS POINT OF WHICH BEARS SOUTH
88°40'53" EAST) THROUGH A CENTRAL ANGLE OF 86°35'27", AN ARC LENGTH OF 30.23
FEET TO A POINT ON THE SOUTHERLY RIGHT-OF-WAY LINE OF FORD AVENUE;
THENCE ALONG SAID RIGHT-OF-WAY LINE, NORTH 87°54'34" EAST, 291.94 FEET;
THENCE DEPARTING SAID RIGHT-OF-WAY LINE, SOUTH 01°25'07" WEST, 598.12 FEET
TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF TORINO AVENUE; THENCE
ALONG SAID RIGHT-OF-WAY LINE, SOUTH 87°39'44" WEST, 288.51 FEET; THENCE
CURVING TO THE RIGHT ALONG THE ARC OF A 20.00 FOOT RADIUS CURVE, CONCAVE
NORTHEASTERLY, THROUGH A CENTRAL ANGLE 93°39'23", AN ARC LENGTH OF 32.69
FEET TO A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF GRAND CANYON DRIVE;
THENCE NORTH 01°19'07" EAST, 559.24 FEET TO THE **POINT OF BEGINNING**.

CONTAINING 4.25 ACRES±.

GERALD L. HOLTON, PLS
NEVADA LICENSE NO. 13290
EXPIRES: JUNE 30, 2007

Q:\050 (Office)\Projects\754\015\LEGALS\bond-pcl.doc
12/22/2005 By: FAP Ckd. By: BAM

12-22-05

1555 SOUTH RAINBOW BLVD. / LAS VEGAS, NEVADA 89146 / TELEPHONE: (702) 804-2000 / FAX: (702) 804-2299
SUMMERLIN OFFICE FAX: (702) 804-2295 • HENDERSON OFFICE FAX: (702) 804-2296



APN 176-18-801-001
RHODES RANCH GENERAL PARTNERSHIP
PARCEL OF LAND BEING LINKED TO THE BOND
ISSUED FOR IMPROVEMENTS ALONG GRAND
CANYON DRIVE
LYING WITHIN SECTION 18, T. 22 S.,
R. 60 E., M.D.M., CITY OF LAS VEGAS,
CLARK COUNTY, NEVADA

G.C. WALLACE, INC.
Engineers/Planners/Surveyors
1555 SOUTH RAINBOW BLVD, LAS VEGAS, NEVADA 89146

PROJECT NO.: 754.015     CALC. BY: FAP
FILE: BOND-PCL.DWG       DRAWN BY: FAP
DATE: 12.19.05           CHECKED BY: BAM

EXHIBIT "B"

FORD AVENUE
PUBLIC STREET PER OR:961202:00884

N87°54'34"E    291.94'

POINT OF COMMENCEMENT

POINT OF BEGINNING

30.06'

POINT OF BEGINNING

Δ=86°35'27"
R=20.00'
L=30.23'
T=18.84'

GRAND CANYON DRIVE
PUBLIC STREET DEDICATED PER OR:961202:00884

559.24'

N01°19'07"E

598.12'

S01°25'07"W

USA
APN 176-18-801-015

NORTH
SCALE: 1" = 100'

Δ=93°35'23"
R=20.00'
L=32.69'
T=21.32'

40'

TORINO AVENUE
PUBLIC STREET PER
OR:961202:00884

30

S87°39'44"W    288.51'    30

| LINE | BEARING | DISTANCE |
|------|---------|----------|
| 1 | S01°19'07"W | 46.51' |
| 2 | S88°40'53"E | 40.00' |