# EXHIBIT D



20051207-0003916

Fee: $37.00
N/C Fee: $0.00

12/07/2005          13:57:40
T20050221311
Requestor:
    CHICAGO TITLE

Frances Deane                    SOL
Clark County Recorder    Pgs: 24

**APN#** 160-32-712-001 

**Recording Requested by and Return to:**

RE-RECORDED

**Name** Chicago Title

**Address** 3980 Howard Hughes Parkway Suite 100

**City/State/Zip** Las Vegas, Nevada 89109

<u>SUBORDINATION AGREEMENT</u>
**(Title on Document)**

THIS IS BEING RE-RECORDED TO CORRECT LEGAL DESCRIPTION

This page added to provide additional information required by NRS 111.312 Sections 1-2.
(Additional recording fee applies).

This cover page must be typed or printed clearly in black ink only.

APN(s) 160-32-712-001

WHEN RECORDED RETURN TO:
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Attention: Rand S. April, Esq.

**20051121-0005683**

Fee: $34.00
N/C Fee: $0.00

11/21/2005              15:22:48
T20050211962
Requestor:
  CHICAGO TITLE

Frances Deane          GWC
Clark County Recorder  Pgs: 22

## SUBORDINATION AGREEMENT

THIS SUBORDINATION AGREEMENT (this "**Agreement**") made as of this 21st day of November, 2005 by and among (A) COMMERCE ASSOCIATES, LLC, a Nevada limited liability company, having an office at c/o TG Investments, LLC, 4511 W. Cheyenne Ave., Suite 801, N. Las Vegas, NV 89032 (hereinafter referred to as the "**Subordinate Lienholder**"); (B) CREDIT SUISSE, Cayman Islands Branch, as collateral agent (together with its successors in such capacity, the "**First Lien Collateral Agent**") for the First Lien Lenders (as hereinafter defined), having an office at Eleven Madison Avenue, New York, New York 10010 (hereinafter referred to as the "**Senior First Lienholder**"); and (C) CREDIT SUISSE, Cayman Islands Branch, as collateral agent (together with its successors in such capacity, the "**Second Lien Collateral Agent**") for the Second Lien Lenders (as hereinafter defined), having an office at Eleven Madison Avenue, New York, New York 10010 (hereinafter referred to as the "**Senior Second Lienholder**", and together with the Senior First Lienholder, the "**Senior Lienholders**").

## W I T N E S S E T H:

WHEREAS, pursuant to that Purchase Agreement and Grant of Options, dated November 13, 2003 (as amended, restated, supplemented or otherwise modified from time to time, including by that certain Third Amendment to Purchase Agreement and Grant of Options, dated as of November 21, 2005, the "**Tuscany Option Agreement**"), by and between Subordinate Lienholder and Rhodes Design and Development Corporation, a Nevada corporation ("**Rhodes Design**"), the entities listed on Schedule A attached hereto (each such entity is individually referred to herein as a "**Subsidiary**", and such entities are collectively referred to herein as the "**Subsidiaries**"), have acquired fee interests in certain real property located in the County of Clark, State of Nevada, as more particularly described on Exhibit A attached hereto and made a part hereof (together with all improvements located thereon, collectively, the "**Mortgaged Property**");

415386.01-Los Angeles Server 2A                    MSW - Draft November 18, 2005 - 9:25 PM

WHEREAS, the Subordinate Lienholder is the owner and holder of certain recorded instruments described on Exhibit B attached hereto (collectively, the "**Subordinate Lien Documents**") (the liens and security interests created thereby, together with any other liens and security interests securing the Secured Option Obligations (as defined below), and any replacement liens and security interests, are referred to herein as the "**Subordinate Lien**"), encumbering the Mortgaged Property, securing certain obligations of the Subsidiaries to the Subordinate Lienholder on account of the "Map Costs", "Profit Participation" and/or "Lot Premium" (as each such term is defined in the Tuscany Option Agreement) with respect to the Mortgaged Property (together with any refinancings or replacements of any thereof, the "**Secured Option Obligations**");

WHEREAS, pursuant to that certain Credit Agreement, dated as of November __, 2005 (as amended, restated, supplemented or otherwise modified, refinanced or replaced from time to time, the "**First Lien Credit Agreement**"), by and among Heritage Land Company, LLC, a Nevada limited liability company ("**Heritage Land**"), The Rhodes Companies, LLC, a Nevada limited liability company ("**Rhodes Companies**"), and Rhodes Ranch General Partnership, a Nevada general partnership ("**Rhodes GP**" and, collectively with Heritage Land and Rhodes Companies, the "**Borrowers**" and each, individually, a "**Borrower**"), the lenders from time to time party thereto (the "**First Lien Lenders**"), and Senior First Lienholder, as administrative agent, syndication agent and collateral agent for the First Lien Lenders, the First Lien Lenders have agreed to provide a term loan facility to Borrowers in the original principal amount of $430,000,000 (as such amount may be increased or decreased from time to time pursuant to the First Lien Credit Agreement, the "**Senior First Lien Loan**");

WHEREAS, pursuant to that certain Credit Agreement, dated as of November __, 2005 (as amended, restated, supplemented or otherwise modified, refinanced or replaced from time to time, the "**Second Lien Credit Agreement**", and collectively with the First Lien Credit Agreement, the "**Credit Agreements**"), by and among the Borrowers, the lenders from time to time party thereto (the "**Second Lien Lenders**"), and Senior Second Lienholder, as administrative agent, syndication agent and collateral agent for the Second Lien Lenders, the Second Lien Lenders have agreed to provide a term loan facility to Borrowers in the original principal amount of $70,000,000 (as such amount may be increased or decreased from time to time pursuant to the Second Lien Credit Agreement, the "**Senior Second Lien Loan**" and together with the Senior First Lien Loan, the "**Senior Loans**");

WHEREAS, pursuant to the First Lien Credit Agreement, the Borrowers have agreed to cause certain subsidiaries (including the Subsidiaries) to guaranty the obligations of the Borrowers under the First Lien Credit Agreement, and accordingly, within three business days of the execution of this Agreement, the Subsidiaries will execute and deliver to the Senior First Lienholder (i) a Subsidiary Guaranty (as defined in the First Lien Credit Agreement) (as amended, restated, supplemented or otherwise modified, refinanced or replaced from time to time, the "**Senior First Lien Guaranty**") and (ii) a Mortgage (as defined in the First Lien Credit Agreement) on the Mortgaged Property (the liens and security interests created by any such Mortgage, and any extensions, modifications, consolidations, refinancings and replacements

2

thereof, being hereinafter referred to as the "**Senior First Lien**") securing such Subsidiary Guaranty, evidencing and securing the obligations of the Subsidiary under such Subsidiary Guaranty (the "**Senior First Lien Obligations**");

WHEREAS, pursuant to the Second Lien Credit Agreement, the Borrowers have agreed to cause certain subsidiaries (including the Subsidiaries) to guaranty the obligations of the Borrowers under the Second Lien Credit Agreement, and accordingly, within three business days of the execution of this Agreement, the Subsidiaries will execute and deliver to the Senior Second Lienholder (i) a Subsidiary Guaranty (as defined in the Second Lien Credit Agreement) (as amended, restated, supplemented or otherwise modified, refinanced or replaced from time to time, the "**Senior Second Lien Guaranty**" and collectively with the Senior First Lien Guaranty, the "**Senior Guaranties**") and (ii) a Mortgage (as defined in the Second Lien Credit Agreement) on the Mortgaged Property (the liens and security interests created by any such Mortgage, and any extensions, modifications, consolidations, refinancings and replacements thereof, being hereinafter referred to as the "**Senior Second Lien**", and together with the Senior First Lien, the "**Senior Liens**") securing such Subsidiary Guaranty, evidencing and securing the obligations of the Subsidiary under such Subsidiary Guaranty (the "**Senior Second Lien Obligations**", and together with the Senior First Lien Obligations, the "**Senior Obligations**"); and

WHEREAS, the Subordinate Lien has been, and the Senior Liens will be, recorded in the Office of the County Recorder of Clark County, Nevada.

NOW, THEREFORE, in consideration of the mutual premises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the Subordinate Lienholder and the Senior Lienholders hereby agree as follows:

1.      The Subordinate Lien (whether now existing or hereafter created or arising) is and shall continue to be expressly subordinate and junior in priority, operation and effect to the Senior Liens (whether now existing or hereafter created or arising). The foregoing shall apply, notwithstanding the availability of other collateral to the Senior Lienholders or the actual date and time of execution, delivery, recordation, filing or perfection of the Senior Liens or the Subordinate Lien, or the priority thereof, and notwithstanding the fact that Senior Loans or any claim for the Senior Loans or the Senior Obligations or any claim for the Senior Obligations is subordinated, avoided or disallowed, in whole or in part, under Title 11 of the United States Code (the "**Bankruptcy Code**") or other applicable federal or state law.

2.      The Subordinate Lienholder hereby represents and warrants that (a) it is now the owner and holder of the Subordinate Lien; (b) the Subordinate Lien is now in full force and effect; (c) to the actual knowledge of the Subordinate Lienholder, neither of the Subsidiaries nor Rhodes Design is in default in the observance and/or performance of any of the obligations required to be observed and performed by any Subsidiary or Rhodes Design under the Tuscany Option Agreement or the Subordinate Lien Documents (the "**Tuscany Documents**"); (d) to the actual knowledge of the Subordinate Lienholder, no event has occurred, which, with the passing

3

of time or the giving of notice or both would constitute a default under the Tuscany Documents by any Subsidiary or Rhodes Design; and (e) the Tuscany Option Agreement is now in full force and effect and has not been modified or amended.

       3.    The Subordinate Lienholder hereby agrees that so long as any Senior Obligations shall remain outstanding:

       (a)    The Subordinate Lienholder shall send to the Senior Lienholders copies of any written notice of default under the Subordinate Lien Documents and the Tuscany Documents and any notices of termination or default under the Subordinate Lien Documents or Tuscany Documents. Each Senior Lienholder shall have the right, but shall not have any obligation whatsoever, to cure any such default within ten (10) days after the expiration of the applicable grace period permitted to Rhodes Design or any Subsidiary under the Tuscany Documents or the Subordinate Lien Documents, as applicable;

       (b)    The Subordinate Lienholder shall not, without the prior written consent of the Senior Lienholders, take (or cause to be taken) any Enforcement Action. For the purposes of this Agreement, the term **"Enforcement Action"** shall mean with respect to the Subordinate Lien Documents as they apply to the Mortgaged Property, any foreclosure proceedings, the exercise of any power of sale, the acceptance by the holder of the Subordinate Lien of a deed or assignment in lieu of foreclosure, the obtaining of a receiver or the taking of possession or control of the Mortgaged Property;

       (c)    (i) If, after the consent required under paragraph 3(b) above has been obtained, any action or proceeding shall be brought to foreclose the Subordinate Lien or any other Enforcement Action shall be commenced, no portion of the rents, issues and profits of the Mortgaged Property shall be collected except through a receiver appointed by the court in connection with such Enforcement Action, after due notice of the application for the appointment of such receiver shall have been given to the Senior Lienholders and the rents, issues and profits so collected by such receiver shall be applied first to the payment of maintenance of taxes and insurance on the Mortgaged Property, and then to the payment of the Senior Obligations prior to the payment, if any, of any principal or interest due and owing on the Subordinate Lien; (ii) if during the pendency of any such foreclosure action or proceeding, an action or proceeding shall be brought by any Senior Lienholder for the foreclosure of the Senior Lien held by such Senior Lender and an application is made by such Senior Lienholder for an extension of such receivership for the benefit of such Senior Lienholder, all such rents, issues and profits held by such receiver as of the date of such application shall be applied by the receiver solely for the benefit of such Senior Lienholder, and the Subordinate Lienholder shall not be entitled to any portion thereof until all Senior Obligations have been paid in full and applied as aforesaid; and (iii) notice of the commencement of any foreclosure of the Subordinate Lien shall be given to the Senior Lienholders and true copies of all notices

4

thereof and papers served or entered in such action shall be delivered to the Senior Lienholders;

(d)    In the event the Senior Lienholders shall release, for the purposes of restoration of all or any part of the improvements on or within the Mortgaged Property, its right, title and interest in and to the proceeds under policies of insurance thereon, and/or its right, title and interest in and to any awards, or its right, title and interest in and to other compensation made for any damages, losses or compensation for other rights by reason of a taking in eminent domain, the Subordinate Lienholder shall release for such purpose all of its right, title and interest, if any, in and to all such insurance proceeds, awards or compensation and the Subordinate Lienholder agrees that the balance of such proceeds remaining shall be applied to the reduction of principal under the Senior Obligations, and if a Senior Lienholder holds such proceeds, awards or compensation and/or monitors the disbursement thereof, the Subordinate Lienholder agrees that such Senior Lienholder shall also hold and monitor the disbursement of such proceeds, awards and compensation to which the Subordinate Lienholder is entitled.  Nothing contained in this Agreement shall be deemed to require a Senior Lienholder, in any way whatsoever, to act for or on behalf of the Subordinate Lienholder or to hold or monitor any proceeds, awards or compensation in trust for or on behalf of the Subordinate Lienholder, and all or any of such sums so held or monitored may be commingled with any funds of such Senior Lienholder;

(e)    The Subordinate Lienholder hereby expressly consents to and authorizes, at the option of any Senior Lienholder, the release of all or any portion of the Mortgaged Property from the lien of the applicable Senior Lien, and hereby waives any equitable right in respect of marshalling it might have, in connection with any release of all or any portion of the Mortgaged Property by such Senior Lienholder under such Senior Lien, to require the separate sales of any portion of the Mortgaged Property or to require such Senior Lienholder to exhaust its remedies against any portion of the Mortgaged Property or any other collateral for the Senior Obligations, or any combination of the portions of the Mortgaged Property or any other collateral for the Senior Obligations, or to require such Senior Lienholder to proceed against any portion of the Mortgaged Property or any other collateral for the Senior Obligations or combination of the portions of the Mortgaged Property or any other collateral for the Senior Obligations, before proceeding against any other portion of the Mortgaged Property or combination of the portions of the Mortgaged Property;

(f)    In any case commenced by or against any Subsidiary under Chapter 11 of the Bankruptcy Code or any similar provision thereof or any similar federal or state statute, the Senior Lienholders shall have the exclusive right to exercise any voting rights in respect of the Senior Liens and the other Senior Obligations, and the Subordinate Lienholder shall have the exclusive right to exercise any voting rights in respect of its claims against any such Subsidiary; and

5

(g)     To the extent any payment of the Senior Obligations (whether by or on behalf of any Subsidiary or any other obligor, as proceeds of security or enforcement of any right of set-off or otherwise) is for any reason repaid or returned to any such Subsidiary or any such other obligor or the insolvent estate of any of them, or avoided, set aside or required to be paid to any such Subsidiary or any such obligor, a trustee, receiver or other similar party under the Bankruptcy Code or any other bankruptcy, insolvency, receivership or similar law, then the Senior Liens, or any part thereof originally intended to be satisfied shall be deemed to be reinstated and outstanding to the extent of any repayment, return, or other action as if such payment had not occurred, and this Agreement shall remain in effect with respect to any such reinstatement.

4.      Nothing herein is intended, or shall be construed, to affect the legal ranking of the Secured Option Obligations as senior obligations of Rhodes Design and the Subsidiaries, which are pari passu in right of payment with all other unsubordinated obligations of Rhodes Design and the Subsidiaries, or to effect any subordination in right of payment of the Secured Option Obligations to the Senior First Lien Obligations or the Senior Second Lien Obligations.

5.      The Senior Lienholders and the Subordinate Lienholder shall reasonably cooperate with each other in order to promptly and fully carry out the terms and provisions of this Agreement. Each party hereto shall from time to time execute and deliver such other agreements, documents or instruments and take such other actions as may be reasonably necessary or desirable to effectuate the terms of this Agreement.

6.      No failure or delay on the part of any party hereto in exercising any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy hereunder.

7.      Each party hereto acknowledges that to the extent that no adequate remedy at law exists for breach of its obligations under this Agreement, in the event any party fails to comply with its obligations hereunder, the other parties shall have the right to obtain specific performance of the obligations of such defaulting party, injunctive relief or such other equitable relief as may be available.

8.      Any notice to be given under this Agreement shall be in writing and shall be deemed to be given, in the case of delivery by registered mail, two (2) business days after mailing; in the case of delivery by hand delivery, when received by the party to whom it is addressed; or in the case of delivery by overnight courier, one (1) business day after transmittal. Notices shall be in writing and sent by registered mail, hand delivery or by reputable overnight courier (in each case, return receipt requested). Notices to the other party hereto shall be sent to the address first set forth herein or such other address or addressees as shall be designated by such party in a written notice to the other parties.

6

9.     In the event of any conflict between the provisions of this Agreement and the provisions of the Subordinate Lien or the other Subordinate Lien Documents, the provisions of this Agreement shall prevail.

10.     No person, including, without limitation, Rhodes Design or any Subsidiary, other than the parties hereto and their successors and assigns as holders of the Senior Liens and the Subordinate Lien shall have any rights under this Agreement.

11.     This Agreement may be executed in two or more counterparts each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

12.     No amendment, supplement, modification, waiver or termination of this Agreement shall be effective against a party against whom the enforcement of such amendment, supplement, modification, waiver or termination would be asserted, unless such amendment, supplement, modification, waiver or termination was made in a writing signed by such party.

13.     In case any one or more of the provisions contained in this Agreement, or any application thereof, shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein, and any other application thereof, shall not in any way be affected or impaired thereby.

14.     This Agreement shall be construed in accordance with and governed by the laws of the state where the Mortgaged Property is located.

15.     This Agreement shall bind and inure to the benefit of the Senior Lienholders and the Subordinate Lienholder and their respective successors, permitted transferees and assigns.

7

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the day and year first above written.

**SENIOR FIRST LIENHOLDER**

CREDIT SUISSE, Cayman Islands Branch,
as Senior First Lienholder

By:  _____
Name:
Title:

**SENIOR SECOND LIENHOLDER**

CREDIT SUISSE, Cayman Islands Branch,
as Senior Second Lienholder

By:  _____
Name:
Title:

**SUBORDINATE LIENHOLDER**

COMMERCE ASSOCIATES, LLC,
a Nevada limited liability company

By:  _____
Name:  GEORGE REINHARDT
Title:  MANAGER

Signed in Counterpart

[SUBORDINATION AGREEMENT]

**ACKNOWLEDGMENTS**

STATE OF _____ )
                      ) ss.
COUNTY OF _____ )

This instrument was acknowledged before me on _____, by
_____, as _____ of _____.

_____
(Signature of Notarial Officer)


STATE OF _____ )
                      ) ss.
COUNTY OF _____ )

This instrument was acknowledged before me on _____, by
_____, as _____ of _____.

_____
(Signature of Notarial Officer)


STATE OF _California_ )
                      ) ss.
COUNTY OF _Marin_ )

This instrument was acknowledged before me on _11/18/2005_, by
_George Reinhardt_, as _Manager_ of _Commuol Associates llc_

_____
(Signature of Notarial Officer)

BENJAMIN CHARLES COLTEAUX
COMM. #1383786
Notary Public-California
MARIN COUNTY
My Comm. Exp. Jan 14, 2007

[SUBORDINATION AGREEMENT]

ACKNOWLEDGED AND AGREED TO
AS OF THE DAY AND YEAR FIRST ABOVE WRITTEN:

RHODES DESIGN AND DEVELOPMENT CORPORATION

By: _____
Name: Paul Huygens
Title: Chief Financial Officer and Treasurer


**TUSCANY ACQUISITIONS, LLC**
**TUSCANY ACQUISITIONS II, LLC**
By: Rhodes Design and Development Corporation,
their sole member

By: _____
Name: Paul Huygens
Title: Chief Financial Officer and Treasurer

**[SUBORDINATION AGREEMENT]**

**ACKNOWLEDGMENTS**

STATE OF  Nevada  )
                          ) ss.
COUNTY OF  Clark  )

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
C. HART
Appt. No. 05-95969-1
My Appt. Expires April 8, 2009

This instrument was acknowledged before me on  11/17/05  , by
Paul Huygens  , as _____ of  Rhodes Design & Dev.

C. Hart
(Signature of Notarial Officer)

STATE OF  Nevada  )
                          ) ss.
COUNTY OF  Clark  )

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
C. HART
Appt. No. 05-95969-1
My Appt. Expires April 8, 2009

This instrument was acknowledged before me on  11/17/05  , by
Paul Huygens  , as _____ of  Rhodes Design & Dev.

C. Hart
(Signature of Notarial Officer)

STATE OF _____ )
                          ) ss.
COUNTY OF _____ )

This instrument was acknowledged before me on _____ , by
_____ , as _____ of _____ .

_____
(Signature of Notarial Officer)

**[SUBORDINATION AGREEMENT]**

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the day and year first above written.

**SENIOR FIRST LIENHOLDER**

CREDIT SUISSE, Cayman Islands Branch,
as Senior First Lienholder

By: _____

     Name: **BILL O'DALY**
     Title: **DIRECTOR**

RIANKA MOHAN
ASSOCIATE

**SENIOR SECOND LIENHOLDER**

CREDIT SUISSE, Cayman Islands Branch,
as Senior Second Lienholder

By: _____

     Name: **BILL O'DALY**
     Title: **DIRECTOR**

RIANKA MOHAN
ASSOCIATE

**SUBORDINATE LIENHOLDER**

COMMERCE ASSOCIATES, LLC,
a Nevada limited liability company

By: _____

     Name:
     Title:

[SUBORDINATION AGREEMENT]

STATE OF _New York_ ⎫
                        ⎬ ss.
COUNTY OF _New York_ ⎭

This instrument was acknowledged before me on _November 18, 2005_ by
_William O'Daly_, as _Director_ of _CS, Cayman Islands Branch_

_Francesca M. Sena_
(Signature of Notarial Officer)

FRANCESCA M. SENA
**Notary** Public, State of New York
No. 01SE5032954
**Qualified** in Bronx County
**Commission** Expires September 6, 2006

STATE OF _New York_ ⎫
                        ⎬ ss.
COUNTY OF _New York_ ⎭

This instrument was acknowledged before me on _November 18, 2005_ by
_Rianka Mohan_, as _Associate_ of _CS, Cayman Islands Branch_

_Francesca M. Sena_
Signature of Notarial Officer)

FRANCESCA M. SENA
Notary Public, State of New York
No. 01SE5032954
Qualified In Bronx County
Commission Expires September 6, 2006

**[SUBORDINATION AGREEMENT]**

## Schedule A

1) Tuscany Acquisitions, LLC, a Nevada limited-liability company

2) Tuscany Acquisitions II, LLC, a Nevada limited-liability company

3) Rhodes Design and Development Corporation, a Nevada corporation

Doc2.doc

**Legal Descriptions**

**Order No. 05902948**
APN: 160-32-211-001 through 160-32-211-027, 160-32-211-029 through 160-32-211-062; 160-32-311-001 through 160-32-311-034

Parcel I:

Lots One (1) through Forty Eight (48) and Fifty (50) through Fifty Two (52) in Block One (1) and Lots Fifty Three (53) through Ninety Six (96) in Block Two (2) of Final Map of Tuscany Parcel 24 formerly known as (Palm City – Phase 1 Lot 24), a Common Interest Community as shown by map thereof on file in Book 118 of Plats, Page 73, in the Office of the County Recorder of Clark County, Nevada.

Parcel II:

Non exclusive right and easements as set forth and established by that certain "Declaration of Covenants, Conditions and Restrictions and Reservation of Easements" recorded July 28, 2005 in Book 20050728 as Document No. 0004296, Official Records, Clark County, Nevada.

**Order No. 05902300**
APN: 160-32-411-001, 160-32-411-010 and 011; 160-32-411-018; 160-32-411-020; 160-32-411-025 through 031; 160-32-811-001 through 047; 160-32-811-049 through 057; 160-32-811-064 and 160-32-811-068 through 076

PARCEL I:

Lots One (1) through Five (5) in Block One (1); Lots Six (6) through Eighteen (18); Lots Twenty (20) through Forty Eight (48) in Block Two (2); Lots Forty Nine (49) and Fifty Three (53) in Block Three (3) Lots Fifty Four (54) through Fifty Seven (57) in Block Four (4); Lots Fifty Eight (58) through Sixty Three (63); Lots Sixty Nine (69) and Seventy (70) in Block Five (5); Lots Eighty Eight (88) through Ninety Four (94) in Block Seven (7); Lot Ninety Five (95) and Lots Ninety Seven (97) through One Hundred Seven (107) in Block Eight (8) of Final Map of TUSCANY PARCEL 19 formerly known as (Palm City – Phase 2 Lot 19), a Common Interest Community as shown by map thereof on file in Book 118 of Plats, Page 92, in the Office of the County Recorder of Clark County, Nevada.

Parcel II:

A non-exclusive right and easement of use and access in and to the Common Elements and Private Streets subject to and as set forth in the Master Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Tuscany Residential Community recorded July 28, 2005 in Book 20050728 as Document No. 04296, Official Records.

**Order No. 05902949**
APN: 160-32-510-001 through 160-32-510-035; 160-32-611-001 through 160-32-611-020; 160-32-611-022 through 160-32-611-024; 160-32-611-027 through 160-32-611-028; 160-32-611-

030; 160-32-611-034; 160-32-611-040 through 160-32-611-042; 160-32-611-044 through 160-32-611-052

Parcel I:

Lots One (1) through Eight (8), Forty Three (43) through Sixty Nine (69), Seventy Five (75) through Seventy Seven (77) and Seventy Nine (79) through Eighty Seven (87) in Block One (1) and Lots Nine (9) through Thirty Three (33), Thirty Five (35), Thirty Six (36), Thirty Eight (38) and Forty Two (42) in Block Two (2) of Final Map of Tuscany Parcel 6C formerly known as (Palm City – Phase 2 Lot 6C) as shown by map thereof on file in Book 119 of Plats, Page 12, in the Office of the County Recorder of Clark County, Nevada.

Parcel II:
Non exclusive right and easements as set forth and established by that certain "Declaration of Covenants, Conditions and Restrictions and Reservation of Easements" recorded July 28, 2005 in Book 20050728 as Document No. 0004296, Official Records, Clark County, Nevada.

**Order No. 05902276**
APN: 160-32-410-001

Lot Twenty One (21) of TUSCANY PHASE 2, as shown by map thereof on file in Book 121 of Plats, Page 59, in the Office of the County Recorder of Clark County, Nevada.

PARCEL IA:

Non-exclusive easement and other rights as set forth and established by that certain "Declaration of Easements, Covenants and Restrictions" recorded February 23, 2004 in Book 20040223 as Document No. 01927 and re-recorded July 14, 2004 in Book 20040714 as Document No. 01407, Official Records, Clark County, Nevada.

**Order No. 05902363**
APN: 160-32-313-013 through 018; 160-32-313-087 through 089; 160-32-313-127 through 135; 160-32-313-147 through 158; 160-32-313-162 through 185; 160-32-313-193 through 201

PARCEL 1:

Lots Thirteen (13) through Eighteen (18) in Block One (1);

Lots One Hundred Twenty-four (124) through One Hundred Twenty-six (126) in Block Two (2);

Lots One Hundred Sixty-four (164) through One Hundred Seventy-two (172) in Block Three (3);

Lots One Hundred Eighty-four (184) through One Hundred Ninety-five (195) and Lots One Hundred Ninety-nine (199) through Two Hundred Sixteen (216) in Block Four (4); and

Lots Two Hundred Seventeen (217) through Two Hundred Twenty-two (222) and Lots Two Hundred Thirty (230) through Two Hundred Thirty-eight (238) in Block Five (5) of TUSCANY

2

PARCEL 25 (formerly known as PALM CITY – PHASE 1), as shown by map thereof on file in Book 125 of Plats, Page 35, in the Office of the County Recorder of Clark County, Nevada.

PARCEL 2:
Non-exclusive easement and other rights as set forth and established by that certain "Declaration of Easements, Covenants, and Restrictions" recorded February 23, 2004 in Book 20040223 as Document No. 01927 and re-recorded July 14, 2004 in Book 20040714 as Document No. 01407, Official Records, Clark County, Nevada.

**Order No. 05902252**
APN: 160-32-613-001 through 011; 160-32-613-013 through 020

PARCEL ONE (1):

Lots One (1) through Seven (7), Seventeen (17) through Twenty (20), Twenty Two (22) through Twenty Nine (29) in Block One (1) of TUSCANY PARCEL 12, formerly known as (Palm City – Phase 1 Lot 12), a common interest community, as shown by map thereof on file in Book 123 of Plats, Page 30 in the Office of the County Recorder of Clark County, Nevada.

PARCEL TWO (2):
Non-exclusive easement and other rights as set forth and established by that certain "Declaration of Easements, Covenants and Restrictions" recorded February 23, 2004 in Book 20040223 as Document No. 01927 and re-recorded July 14, 2004 in Book 20040714 as Document No. 01407, Official Records, Clark County, Nevada.

**Order No. 05902253**
APN: 160-32-712-001 through 039

PARCEL ONE (1):

Lots Eight (8) through Sixteen (16) in Block One (1) and Lots Thirty (30) through Fifty Nine (59) in Block Two (2) of TUSCANY PARCEL 12, formerly known as (Palm City – Phase 1 Lot 12), a common interest community, as shown by map thereof on file in Book 123 of Plats, Page 30 in the Office of the County Recorder of Clark County, Nevada.

PARCEL TWO (2):
Non-exclusive easement and other rights as set forth and established by that certain "Declaration of Easements, Covenants and Restrictions" recorded February 23, 2004 in Book 20040223 as Document No. 01927 and re-recorded July 14, 2004 in Book 20040714 as Document No. 01407, Official Records, Clark County, Nevada.

3

**Order No. 05903159**
APN: 160-32-812-001 through 217

Parcel I:

Lots One (1) through Three (3) in Block One (1), Lots Four (4) through Ten (10), Eighty Two (82) through Ninety Four (94) in Block Two (2), Lots Eleven (11) through Eighty One (81) in Block Three (3), Lots Ninety Six (96) through One Hundred Thirty Four (134) in Block Four (4), Lots One Hundred Thirty Five (135) through One Hundred Sixty Nine (169) in Block Five (5), Lots One Hundred Seventy (170) through One Hundred Ninety Seven (197) in Block Six (6) and Lots One Hundred Ninety Eight (198) through Two Hundred Seventeen (217) in Block Seven (7) of TUSCANY – PARCEL 18 formerly known as (Palm City – Phase 2 Lot 18) as shown by map thereof on file in Book 126 of Plats, Page 7, in the Office of the County Recorder of Clark County, Nevada.

Parcel II:
Non-exclusive easement and other rights as set forth and established by that certain "Declaration of Easements, Covenants and Restrictions" recorded February 23, 2004 in Book 20040223 as Document No. 01927 and re-recorded July 14, 2004 in Book 20040714 as Document No. 01407, Official Records, Clark County, Nevada.

**Order No. 05902954**
APN: 160-32-512-001 through 160-32-512-062; 160-32-112-001 through 160-32-112-012

Lots One (1) through Seventy Four (74) in Block One (1) of TUSCANY PARCEL 6B, formerly known as (Palm City – Phase 2 Lot 6B), a common interest community, as shown by map thereof on file in Book 123 of Plats, Page 31 in the Office of the County Recorder of Clark County, Nevada.

**Order No. 05902960**
APN: 160-32-613-012

Lot Twenty One (21) in Block One (1) of TUSCANY PARCEL 12, formerly known as (Palm City – Phase 1 Lot 12), a common interest community, as shown by map thereof on file in Book 123 of Plats, Page 30 in the Office of the County Recorder of Clark County, Nevada.

Parcel IIIB:

Non-exclusive easement and other rights as set forth and established by that certain "Declaration of Easements, Covenants and Restrictions" recorded February 23, 2004 in Book 20040223 as Document No. 01927 and re-recorded July 14, 2004 in Book 20040714 as Document No. 01407, Official Records, Clark County, Nevada.

4

# EXHIBIT B

(Description of Subordinate Lien)

| Title | Parties | Date | Doc. # | Book # |
|---|---|---|---|---|
| Memorandum of Agreement | Commerce Associates, LLC and Rhodes Design and Development Corporation | 11/18/03 | 02497 | 20031118 |
| Amendment to Memorandum | Commerce Associates, LLC and Rhodes Design and Development Corporation | 9/17/04 | 00680 | 20040917 |
| Memorandum of Additional Consideration | Commerce Associates, LLC and Rhodes Design and Development Corporation | 9/17/04 | 00679 | 20040917 |
| Memorandum of Additional Consideration | Tuscany Acquisitions, LLC and Commerce Associates, LLC | 3/31/2005 | 06925 | 20050331 |
| Memorandum of Additional Consideration | Tuscany Acquisitions, LLC and Commerce Associates, LLC | 6/14/2005 | 0001522 | 20050614 |
| Memorandum of Additional Consideration | Commerce Associates, LLC and Tuscany Acquisitions, LLC | 7/13/2005 | 01102 | 20050713 |

| | | | | |
|---|---|---|---|---|
| Declaration of Development Covenants and Restrictions | Commerce Associates, LLC, Rhodes Design and Development Corporation and Tuscany Acquisitions II, LLC | 6/14/2005 | 01523 | 20050614 |
| Declaration of Development Covenants and Restrictions | Commerce Associates, LLC, Rhodes Design and Development Corporation and Tuscany Acquisitions, LLC | 7/13/2005 | 01103 | 20050713 |
| Declaration of Development Covenants and Restrictions | Commerce Associates, LLC, Rhodes Design and Development Corporation and Tuscany Acquisitions, LLC | 3/31/2005 | 06926 | 20050331 |
| Declaration of Development Covenants and Restrictions (Lot 2) | Commerce Associates, LLC, Rhodes Design and Development Corporation and Tuscany Acquisitions, LLC | 3/31/2005 | 06960 | 20050331 |

2

FRANCES DEANE OF
CLARK COUNTY, NEVADA
T...A
...SSED

2005 NOV 23  A 9: 24

3

Exhibit "A"

Parcel II:

Lot 18 as shown by map thereof on file in Book 121 of Plats, page 59, as recorded in the Office of the County Recorder, Clark County, Nevada.

Parcel IIA:

Non-exclusive easement and other rights as set forth and established by that certain "Declaration of Easements, Covenants and Restrictions" recorded February 23, 2004 in Book 20040223 as Document No. 01927 and re-recorded July 14, 2004 in Book 20040714 as Document No. 01407, Official Records, Clark County, Nevada.