Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Telephone: 702.362.7800
Facsimile: 702.362.9472
E-Mail:   nleatham@klnevada.com

Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
Meredith A. Lahaie (NY Bar No. 4518023)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone:  212.872.1000
Facsimile:  212.872.1002
E-Mail:    pdublin@akingump.com
           aqureshi@akingump.com
           mlahaie@akingump.com

*Counsel for the Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: § | Case No. 09-14814-LBR |
| § | (JointlyAdministered) |
| THE RHODES COMPANIES, LLC, § | |
| aka "Rhodes Homes," *et al.*, § | Chapter 11 |
| § | |
| Reorganized Debtors.[1] § | |
| § | |
| § | |
| § | |

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

| Affects: | § | MOTION OF THE REORGANIZED |
|---|---|---|
| ☒ All Debtors | § | DEBTORS FOR ENTRY OF AN ORDER |
| ☐ Affects the following | § | APPROVING THE SETTLEMENT |
| Debtor(s) | § | AGREEMENT BETWEEN RHODES |
| | § | HOMES ARIZONA, LLC AND STANLEY |
| | § | CONSULTANTS, INC. |

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors"), by and through their undersigned counsel, hereby file this motion (the "Motion") for entry of an order approving a settlement agreement (the "Settlement Agreement") between Reorganized Debtor Rhodes Homes Arizona, LLC ("RHA") and Stanley Consultants, Inc. ("Stanley") pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of the Motion, the Reorganized Debtors respectfully state as follows:

**JURISDICTION**

1.  This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

3.  The statutory predicates for the relief requested herein are Bankruptcy Code section 105(a) and Bankruptcy Rule 9019.

**BACKGROUND**

A.  **General Background**

4.  On either March 31, 2009 or April 1, 2009 (collectively, the "Petition Date"), each of the debtors (collectively, the "Debtors") commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

5.  On March 12, 2010, the Court entered an order confirming the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code

2

for The Rhodes Companies, LLC, *et al.* (the "Plan"). The effective date of the Plan occurred on April 1, 2010. Pursuant to section IV.Y of the Plan, to the extent there were proceeds arising out of the Litigation (as defined below), 50% of the net proceeds would revert to the Reorganized Debtors and 50% of the net proceeds would be distributed to the Second Lien Agent (as defined in the Plan) for the benefit of the Second Lien Lenders (as defined in the Plan).

**B.     The Stanley Agreements**

6.     Prior to the Petition Date, RHA entered into certain agreements (collectively, the "Agreements") with Stanley pursuant to which Stanley agreed to provide various engineering services (the "Engineering Services") related to the development of certain of RHA's real estate assets located in Mohave County, Arizona (the "Projects").

7.     In addition, during the course of the relationship between RHA and Stanley, certain affiliates of RHA executed various contracts, agreements, purchase orders and other work orders (together with the Agreements, the "Stanley Agreements") directing Stanley to perform Engineering Services for the benefit of RHA and the Projects.

8.     The Engineering Services provided by Stanley pursuant to the Stanley Agreements were performed by several of Stanley's employees, including, but not limited to, Denis Atwood, Dennis Brown, David Frohnen, Steven Hagel and Kenneth Yamada (collectively, the "Stanley Employees") in the course and scope of their employment with Stanley.

9.     During the course of the relationship between RHA and Stanley, certain disputes arose between RHA and Stanley relating to their respective rights and obligations under the Stanley Agreements and the performance of the Engineering Services.

3

Specifically, Stanley claimed that RHA failed to pay Stanley for a portion of the Engineering Services provided by Stanley. In addition, RHA claimed that (i) some or all of the Engineering Services were ineffective or defective, (ii) RHA overpaid Stanley as a result of, among other things, excessive, unnecessary, and improper billing practices and (iii) the Stanley Employees negligently performed the Engineering Services.

**C.     The Stanley Litigation**

10.     On August 7, 2006, RHA commenced litigation against Stanley (the "Litigation") in Arizona in the Maricopa County Superior Court (the "Arizona State Court"). In connection with the Litigation, RHA asserted claims against Stanley for (i) breach of contract, (ii) bad faith, (iii) declaratory relief and replevin seeking title to certain materials prepared in connection with the provision of the Engineering Services, (iv) fraud and (v) punitive damages. In addition, RHA subsequently expanded the Litigation to assert (x) negligence claims against the Stanley Employees and (y) various punitive damage tort claims against Stanley, the Stanley Employees and other officers and directors of Stanley (the "RHA Claims").[2]

11.     Following the commencement of the Litigation, Stanley filed a counterclaim (the "Stanley Counterclaim") against RHA and certain of RHA's officers, directors and employees seeking payment for the Engineering Services provided by Stanley pursuant to the Stanley Agreements (collectively, the "Stanley Claims" and, together with the RHA Claims, the "Litigation Claims").

12.     In the course of the Litigation, certain claims and counterclaims were dismissed by stipulation of the parties, including (i) the Stanley Counterclaim against RHA's

---

[2] Prior to the Petition Date, counsel to RHA itemized damages to counsel for Stanley in the amount of approximately $25,140,595, which amount did not include punitive damages.

4

officers, directors and employees and (ii) certain of the punitive damage tort claims asserted by RHA.

13.  In addition, in the course of the Litigation, the Arizona State Court entered an order granting a motion for summary judgment and dismissing RHA's negligence claims against the Stanley Employees (the "Summary Judgment Order").  RHA has appealed (the "Appeal") the Summary Judgment Order, and the Appeal is currently pending before the Arizona Court of Appeals, Division One.

14.  Following the Petition Date, Stanley filed proofs of claim (the "Proofs of Claim") in the Debtors' Chapter 11 Cases asserting unsecured claims for the payment of fees and costs relating to the Engineering Services provided pursuant to the Stanley Agreements.[3]

**D.    The Settlement Agreement**

15.  After extensive, arm's-length negotiations between the Reorganized Debtors (on behalf of themselves and the Second Lien Agent) and Stanley, the parties have determined to enter into the Settlement Agreement, a copy of which is attached as Exhibit 1 to the proposed order attached hereto as Exhibit A, in order to fully and finally resolve the Litigation and all related claims, disputes and causes of action.  The basic terms of the Settlement Agreement are summarized below:[4]

- Purpose: The Settlement Agreement is made as a compromise between the Parties[5] for the complete and final resolution of those known and unknown

---

[3] The Stanley Proofs of Claim assert claims in the total aggregate amount of approximately $4,609,249 on account of amounts owed for the Engineering Services provided pursuant to the Stanley Agreements.

[4] This summary is qualified in its entirety by the Settlement Agreement.  In the event of any inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall govern.

[5] All defined terms used in this summary of the Settlement Agreement but not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

5

claims, disputes, and actual or potential causes of action between RHA, the Second Lien Agent (on behalf of itself and the Second Lien Lenders), Stanley and Stanley's employees, officers and directors arising from or relating to the Litigation Claims, as such claims have, or could have been made in the Litigation, the Appeal and the Chapter 11 Cases. It is the intent of the Parties that the Settlement Agreement shall forever resolve, settle, satisfy and release all disputes relating to the Litigation Claims between the Parties.

- <u>Release of Claims Against Stanley</u>: In consideration of the mutual promises contained in the Settlement Agreement, any monies paid pursuant thereto, and other good and valuable consideration, the sufficiency of which is acknowledged by the Parties, each of RHA, on behalf of itself, its officers, directors, members, predecessors, successors, and assigns and the Second Lien Agent, on behalf of itself and the Second Lien Lenders, releases and forever discharges Stanley, its past, present and future constituent officers, directors, stockholders, employees, attorneys, agents, servants, representatives, subsidiaries, affiliates, insurers, partners, predecessors, successors in interest, assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including the respective spouses of all these entities or persons, of and from any and all known and unknown past or present claims, demands, obligations, actions and causes of action, suits, debts, dues, accounts, contracts, agreements, judgments, rights, damages, costs, interest, attorneys' fees, expenses and compensation of any nature whatsoever whether based on tort, contract (express, implied or otherwise) or any other theory of recovery, and whether for compensatory or, direct, indirect, special, general or punitive damages, which RHA or the Second Lien Agent (on behalf of itself or the Second Lien Lenders) may now have or claim against Stanley, in any way arising out of or relating to the Litigation Claims.

- <u>Release of Claims Against Stanley Employees</u>: In consideration of the mutual promises therein contained, any monies paid pursuant thereto, and other good and valuable consideration, the sufficiency of which is acknowledged by the Parties, each of RHA, on its behalf and on behalf of its officers, directors, members, predecessors, successors, and assigns, and the Second Lien Agent, on behalf of itself and the Second Lien Lenders, releases and forever discharges the Stanley Employees, their respective spouses and marital communities, attorneys, insurers, and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, of and from any and all known and unknown past or present claims, demands, obligations, actions and causes of action, suits, debts, dues, accounts, contracts, agreements, judgments, rights, damages, costs, interest, attorneys' fees, expenses and compensation of any nature whatsoever whether based on tort, contract (express, implied or otherwise) or any other theory of recovery, and whether for compensatory or, direct, indirect, special, general or punitive damages, which RHA may now have or claim against the Stanley Employees and their respective spouses or marital communities, in any way arising out of or relating to the Litigation Claims.

6

- <u>Release of Claims Against RHA by Stanley</u>: In consideration of the mutual promises contained in the Settlement Agreement, any money paid pursuant the Settlement Agreement, and other good and valuable consideration, the sufficiency of which is acknowledged, Stanley, on its behalf and on behalf of its shareholders, officers and directors, and its successors and assigns, releases and forever discharges RHA as well as its predecessors, successors and assigns, past, present and future constituent officers, directors, stockholders, members, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, insurers, partners, predecessors, successors in interest, assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including the respective spouses of all these entities or persons, of and from any and all known and unknown past or present claims, demands, obligations, actions and causes of action, debts, dues, accounts, contracts, agreements, judgments, rights, damages, costs, attorneys' fees, expenses and compensation of any nature whatsoever whether based on tort, contract (express, implied or otherwise) or any other theory of recovery, and whether for compensatory or direct, indirect, special, general or punitive damages, which Stanley may now have or claim against RHA, in any way arising out of or relating to the Litigation Claims.

- <u>Release of Claims Against RHA by Stanley Employees</u>: In consideration of the mutual promises contained in the Settlement Agreement, any money paid pursuant thereto, and other good and valuable consideration, the sufficiency of which is acknowledged by the Parties, each of the Stanley Employees, on their own behalf and on behalf of their respective spouses and marital communities, and their successors and assigns, release and forever discharge RHA as well as its predecessors, successors and assigns, past, present and future constituent officers, directors, stockholders, members, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, insurers, partners, predecessors, successors in interest, assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including the respective spouses of all these entities or persons, of and from any and all known and unknown past or present claims, demands, obligations, actions and causes of action, debts, dues, accounts, contracts, agreements, judgments, rights, damages, costs, attorneys' fees, expenses and compensation of any nature whatsoever whether based on tort, contract (express, implied or otherwise) or any other theory of recovery, and whether for compensatory or direct, indirect, special, general or punitive damages, which each of the Stanley Employees and their respective spouses or marital communities may now have or claim against RHA, in any way arising out of or relating to the Litigation Claims. The release granted by the Stanley Employees is not intended to, and does not, release any Proof of Claim filed in the Chapter 11 Cases by any of the Stanley Employees, nor is the release granted by the Stanley Employees intended to admit the validity of any such Proof of Claim in any manner or for any purpose.

- **Settlement Payment**: In further consideration of the releases given, Stanley shall pay the sum of $1,875,000 (the "Settlement Payment"), on or before the date that is five (5) days after the entry of the order approving the Settlement Agreement, without regard to any stay of the effectiveness of such order and which stay Stanley agrees to waive, to Las Vegas Land Holdings, L.L.C. ("LVL"), for and on behalf of LVL, RHA and all other persons or entities who may be third-party beneficiaries under the Settlement Agreement, to the extent of their respective interests, as described in subsection 7(b) of the Settlement Agreement. Upon receipt of the Settlement Payment, LVL shall remit 50% of the net proceeds of the Settlement Payment, estimated to be approximately $127,099.01 to the Second Lien Agent pursuant to the terms of the Plan, which the Second Lien Agent shall then timely distribute pro rata to the Second Lien Lenders.

- **Dismissal of the Litigation**: RHA agrees, upon execution of the Settlement Agreement, to dismiss the Litigation and the Appeal, with prejudice, as to all defendants, with the parties to bear their respective costs and attorney's fees incurred in the Litigation and Appeal.

- **Dismissal of Stanley Counterclaim**: Stanley agrees, upon execution of the Settlement Agreement, to dismiss the Stanley Counterclaim filed in the Litigation, with prejudice, as to all counter-defendants, with the parties to bear their respective costs and attorney's fees incurred in connection with the Stanley Counterclaim.

- **Withdrawal of Stanley Proofs of Claim**: Stanley agrees to withdraw any and all of the Proofs of Claim filed in the Bankruptcy Proceedings, with prejudice, with the parties to bear their respective costs and attorneys' fees incurred in the Chapter 11 Cases.

- **Ownership of Copyright Materials**: By execution of the Settlement Agreement, RHA has also withdrawn and fully released any claim of right, title, ownership and interest of and in any of the Copyright Materials, created or published by Stanley, its agents and employees in connection with any Project that was the subject of the Litigation or owned by RHA. This release applies to any right or claim on the Copyright Materials asserted by RHA, including those made or arising in the Litigation or Chapter 11 Cases, and RHA acknowledges that it shall have no claim of right, title, ownership and interest of and in the Copyright Materials, hereafter.

- **Bankruptcy Court Approval**: The Parties agree that the Settlement Agreement shall be submitted for approval by the Bankruptcy Court, and shall only become effective upon entry of an order (i) approving the Settlement Agreement and (ii) barring all claims or causes of action relating to the Litigation Claims in accordance with the releases and discharges contained in subsections 2(a), 2(b), 2(c) and 2(d) of the Settlement Agreement.

8

**RELIEF REQUESTED**

16. By the Motion, the Reorganized Debtors request that the Court enter an order pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019 approving the Settlement Agreement between RHA and Stanley.

**ARGUMENT**

17. As discussed in detail below, the Settlement Agreement provides for a compromise of the Litigation and all related claims, disputes and causes of action that is fair and equitable. Accordingly, the Settlement Agreement should be approved pursuant to Bankruptcy Rule 9019.

**A.  Approval of Settlements under Bankruptcy Rule 9019**

18. Pursuant to Bankruptcy Rule 9019, courts may approve compromises or settlements "after notice and a hearing." Fed R. Bankr. P. 9019. As a general rule, courts favor compromises, which are a normal part of the reorganization process. *See Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation for its own sake."). Courts have considerable discretion in deciding whether to approve or reject compromises or settlements. *See Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988) ("The bankruptcy court has great latitude in approving compromise agreements."); *CAM/RPC Elecs. v. Robertson (In re MGS Mktg.)*, 111 B.R. 264, 267 (B.A.P. 9th Cir. 1990) (recognizing that bankruptcy courts have great latitude in approving or rejecting compromises or settlements).

19. In exercising such discretion, a court must inform itself of sufficient facts to determine whether a proposed compromise or settlement is "fair and equitable." *In re A&C*

*Props.*, 784 F.2d at 1381 ("The court must . . . find that the compromise is fair and equitable"); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (explaining that courts must inform themselves of sufficient facts to form an intelligent and objective opinion regarding the proposed settlement). Nevertheless, the court is not required to conduct an "exhaustive investigation or a mini-trial on the merits." *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004); *see also Port O'Call Inv. Co. v. Blair (In re Blair)*, 538 F.2d 849, 852 (9th Cir. 1976) (rejecting the argument that courts are required to conduct a mini-trial on the merits in deciding whether to approve a compromise or settlement). Instead, the court should canvas the issues to determine whether the proposed compromise or settlement "falls below the threshhold of reasonableness." *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (C.D. Cal. 1991).

20. In order to determine whether the fair and equitable standard has been satisfied, courts in the Ninth Circuit consider the following factors: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expenses, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premises (collectively, the "<u>A&C Properties</u> Factors"). *See In re A&C Props.*, 784 F.2d at 1381; *In re Woodson*, 839 F.2d at 620; *In re MGS Mktg.*, 111 B.R. at 264. A compromise or settlement may be approved even if each of the foregoing factors is not satisfied so long as a consideration of the factors as a whole weighs in favor of a finding that such compromise or settlement is fair and equitable. *See In re Pac. Gas & Elec. Co.*, 304 B.R. at 417 ("It is not necessary to satisfy each of these

factors provided that the factors as a whole favor approving the settlement."); *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002) (approving settlement despite the fact that debtor was likely to succeed on certain causes of action where remaining factors weighed in favor of approval of settlement).

**B.     Application of the Fair and Equitable Standard to the Settlement Agreement**

21.     Based on a consideration of the *A&C Properties* Factors, the Reorganized Debtors submit that the Settlement Agreement is fair and equitable and should be approved by the Court.

*1.     Probability of Success in the Litigation*

22.     While the Reorganized Debtors believe that they would ultimately prevail in the Litigation, the outcome of the Litigation cannot be predicted with any certainty. As described above, by the Litigation, RHA has asserted claims for, among other things, (i) breach of contract, (ii) bad faith, (iii) declaratory relief and replevin seeking title to certain materials prepared in connection with the provision of the Engineering Services, (iv) fraud, (v), punitive damages and (vi) negligence. In addition, Stanley has asserted the Stanley Counterclaims against RHA for the amounts allegedly owed to Stanley on account of the Engineering Services provided to RHA under the Stanley Agreements.

23.     The ability of the parties to successfully establish the facts necessary to support their respective claims and counterclaims at trial, however, remains uncertain, and accordingly, the Reorganized Debtors' probability of success in the Litigation is unclear. Thus, the first *A&C Properties* Factor weighs in favor of approval of the Settlement Agreement.

*2.    Difficulty of Collection*

24.    The Reorganized Debtors do not anticipate that they would encounter any difficulty in collection if they were to prevail in the Litigation.  The second *A&C Properties* Factor is therefore inapplicable.

*3.    The Complexity, Expense and Burden of the Litigation*

25.    As discussed above in connection with the first *A&C Properties* Factor, the Litigation involves a number of claims and counterclaims, and in the absence of the Settlement Agreement, RHA would be required to develop and present complex factual information in order to litigate its claims and defend against the Stanley Counterclaim.  In order to develop and present such factual information, RHA would be forced to incur substantial costs and expenses.  In addition, the continuation of the Litigation would distract the attention of the Reorganized Debtors from the operation of their businesses and materially delay the resolution of prepetition claims against the Debtors' estates.  Accordingly, the third *A&C Properties* Factor weighs in favor of approval of the Settlement Agreement.

*4.    Paramount Interests of Creditors*

26.    The final *A&C Properties* Factor also weighs in favor of approval of the Settlement Agreement.  Pursuant to Section III.B.2 of the Plan, each Second Lien Lender is entitled to receive its *pro rata* share of 50% of the net proceeds of the Litigation.  Following RHA's entry into the Settlement Agreement, Stanley will pay $1,875,000 to LVL, and 50% of the settlement amount, less the costs associated with trying to mediate the resolution of the Litigation, preparation of the Settlement Agreement and preparation of this Motion, will become available for distribution to the Second Lien Lenders without further delay.  In the absence of the Settlement Agreement, it is uncertain when, if ever, the Second Lien Lenders

12

would receive any distribution from the proceeds of the Litigation.

27. In addition to the foregoing, by resolving the Litigation and all related claims, disputes and causes of action, the Settlement Agreement will enable the Reorganized Debtors to more fully focus on the operation of their businesses for the benefit of their existing stakeholders.

**NOTICE**

28. The Reorganized Debtors will serve notice of this Motion by first-class mail, postage prepaid, upon the following parties, or in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) counsel to Stanley Consultants, Inc. and the Stanley Employees; (iii) counsel to the Second Lien Agent; and (iv) all parties who have requested notice in these cases. The Reorganized Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

29. The Reorganized Debtors submit that the above notice is reasonable and appropriate and should be approved by this Court as adequate and sufficient notice.

**CONCLUSION**

WHEREFORE, for the reasons set forth above, the Reorganized Debtors respectfully request that the Court (i) enter an order, substantially in the form attached hereto as Exhibit A, approving the Settlement Agreement, and (ii) grant the Reorganized Debtors such other and further relief as is just, proper and equitable.

Dated this 20th day of June, 2011.

By: */s/ Philip C. Dublin*
Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
(702) 362-7800 (Telephone)
(702) 362-9472 (Facsimile)
Nleatham@klnevada.com

AKIN GUMP STRAUSS HAUER & FELD LLP
Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
Meredith A. Lahaie (NY Bar No. 4518023)
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
pdublin@akingump.com
aqureshi@akingump.com
mlahaie@akingump.com

*Counsel for the Reorganized Debtors*