**<u>Exhibit A</u>**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 09-14814-LBR** |
| | § | **(Jointly Administered)** |
| **THE RHODES** | § | |
| **COMPANIES, LLC,** | § | |
| **aka "Rhodes Homes," *et al.*,** | § | **Chapter 11** |
| | § | |
| **Reorganized Debtors.**[1] | § | **Hearing Date:  OST** |
| | § | **Hearing Time:  OST** |
| | § | **Courtroom 1** |
| **Affects:** | § | |
| ☒ **All Debtors** | § | |
| ☐ **Affects the following** | § | |
| **Debtor(s)** | § | |
| | § | |

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

**ORDER APPROVING MOTION OF THE
REORGANIZED DEBTORS FOR ENTRY OF AN
ORDER APPROVING THE SETTLEMENT AGREEMENT BETWEEN
RHODES HOMES ARIZONA, LLC AND STANLEY CONSULTANTS, INC.**

Upon consideration of the *Motion of the Reorganized Debtors for Entry of an Order Approving the Settlement Agreement Between Rhodes Homes Arizona, LLC and Stanley Consultants, Inc.* (the "Motion") [Docket No. ____], and good cause appearing,

IT IS HEREBY ORDERED THAT

1.      The Motion is GRANTED.

2.      The Settlement Agreement,[2] attached hereto as Exhibit 1, is approved in its entirety.

3.      The Reorganized Debtors are authorized to take such actions that may be reasonably necessary to consummate the terms of the Settlement Agreement.

APPROVED AS TO FORM AND CONTENT:

DATED this ___ day of _____ 2011.

By: _____
Edward M. McDonald
Office of the United States Trustee
300 Las Vegas Blvd. S., Ste. 4300
Las Vegas, NV  89101

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

_____

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Submitted by:

DATED this 20th day of June 2011

Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada  89145
(702) 362-7800 (Telephone)
(702) 362-9472 (Facsimile)
Nleatham@klnevada.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**
**One Bryant Park**
**New York, New York  10036**
**Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com**

## <u>Exhibit 1</u>

**Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made as of this _3J_ day of May, 2011, by and between Rhodes Homes Arizona, L.L.C. ("RHA") and Stanley Consultants, Inc. ("Stanley"). For purposes of this Agreement, the above-referenced entities shall be referred to collectively as the "Parties".

### RECITALS

1.      Stanley was retained by RHA to perform various professional engineering services, including but not limited to studies, reports, design, planning, maps, exhibits, record and/or construction documents, consultation, entitlement and regulatory assistance, surveying and construction staking ("Instruments of Professional Service") on various parcels of real property owned, to be acquired, and/or to be developed by RHA in Mohave County, Arizona (the "Projects").

2.      During the course of the relationship between Stanley and RHA, other companies or entities which are, or were, related to or affiliated with RHA may have, from time to time, executed or signed contracts, agreements, purchase orders or other work authorizations directing Stanley to perform professional services on the Projects. RHA acknowledges that in any instance where another related or affiliated entity contracted with Stanley, or directed Stanley to provide professional service, any such contract or direction was for the benefit of RHA and the Projects. RHA further acknowledges that in any such instance where a related or affiliated entity contracted with or provided direction to Stanley, RHA accepts, confirm and ratify any such contract or direction as if it had been authorized by RHA in the first instance.

3.      Stanley's employees, including, but not limited to, Denis Atwood, Dennis Brown, David Frohnen, Steven Hagel and Kenneth Yamada, provided professional services for RHA on the Projects in the course and scope of their employment, pursuant to the various contracts between Stanley and RHA, or upon directions from RHA, and placed their professional seals on various Instruments of Professional Service for the Projects.

4.      Stanley has copyrighted various Instruments of Professional Service prepared for the Projects. A description of those copyrighted materials is attached to this Agreement as Exhibit A ("Copyright Materials").

5.      Stanley alleges that RHA failed to pay for some of the professional services on the project, and that this failure resulted in actual and consequential damages to Stanley, including, but not limited to, loss, expense, cost, delay, interest, litigation costs and attorney's fees. RHA denies any liability to Stanley.

6.      RHA alleges that some or all of the Instruments of Professional Service provided by Stanley for the Projects breached express or implied contractual duties, were ineffective and defective, and resulted in actual and consequential damages to the Projects, including, but not limited to, loss, expense, cost, delay, lost profits, future corrective work, interest, litigation costs and attorney's fees. Stanley denies any liability to RHA.

7. RHA alleges that it has overpaid Stanley as a result of, without limitation, excessive, unnecessary and improper billing practices, which also caused actual and consequential damages to the Projects, including, but not limited to, loss, expense, cost, delay, interest, litigation costs and attorney's fees. Stanley denies any liability to RHA.

8. RHA alleges that Stanley's employees Denis Atwood, Dennis Brown, David Frohnen, Steven Hagel and Kenneth Yamada (collectively, the "Stanley Employees") negligently performed professional service, including preparation of Instruments of Professional Service, which caused or contributed to actual and consequential damages to the Projects, including, but not limited to, loss, expense, cost, delay, interest, litigation costs and attorney's fees. Stanley and the Stanley Employees deny any liability to RHA.

9. RHA filed a civil lawsuit against Stanley on or about August 7, 2006, Maricopa County Superior Court Case Number CV2006-011358 (the "Litigation"), alleging breach of contract, bad faith, declaratory relief and replevin seeking title to and ownership of the Copyright Materials, fraud and punitive damages. The Litigation was later enlarged by RHA to assert claims of negligence against the Stanley Employees, along with various punitive damage tort claims against Stanley, those individual employees named herein, and other officers and directors of Stanley (collectively, the "RHA Claims"). Stanley and its individual employees, officers and directors have denied the RHA Claims.

10. Stanley filed a counterclaim (the "Stanley Counterclaim") in the Litigation against RHA and certain of RHA's officers, directors or employees, seeking payment for professional services (collectively, the "Stanley Claims" and, together with the RHA Claims, the "Litigation Claims"). In the course of the Litigation, the Stanley Claims made against RHA's officers, directors or employees were dismissed by stipulation of the parties. RHA has denied the Stanley Claims

11. In the course of the Litigation, certain punitive damage tort claims asserted by RHA were dismissed by stipulation of the parties.

12. In the course of the Litigation, negligence claims against the Stanley Employees were dismissed pursuant to the granting of a motion for summary judgment. RHA has appealed that dismissal before the Arizona Court of Appeals, Division One, Cause No. 1CA-CV 11-003 (the "Appeal").

13. On or about April 1, 2009, RHA filed for bankruptcy protection in Case No. 09-14882, U.S. Bankruptcy Court, District of Nevada (the "Bankruptcy Court"), jointly administered under Case No. BK-S-09-14814-LBR (the "Bankruptcy Proceedings"). A chapter 11 plan of reorganization (the "Chapter 11 Plan") for the entities that were debtors in the Bankruptcy Proceedings was confirmed by the Bankruptcy Court on March 12, 2010. The effective date of the Plan occurred on April 1, 2010.

14. Stanley has filed proofs of claim (the "Stanley Proofs of Claim") in the Bankruptcy Proceedings seeking payment for the professional fees and costs

due for its professional instruments of service. RHA has denied any liability to Stanley for the amounts requested by the Stanley Proofs of Claim.

15.    RHA has claimed right, title, ownership and interest of and in the Copyright Materials in the Bankruptcy Proceedings. Stanley has denied that RHA has any right, title, ownership and interest of and in the Copyright Materials.

16.    In order to avoid the uncertainty and expense of continuing the Litigation, the Appeal and the Bankruptcy Proceedings, and without admitting fault, liability or the validity of any claim or defense raised in the Litigation, the Appeal and the Bankruptcy Proceedings, the Parties agree to compromise and settle all issues and claims arising from or relating to the Litigation Claims, subject to those terms of agreement set forth below.

## **AGREEMENT**

The foregoing recitals are incorporated in this Agreement by reference as though fully stated. In consideration of these premises, the releases and promises set forth below and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. Purpose

This Agreement is made as a compromise between the Parties for the complete and final resolution of those known and unknown claims, disputes, and actual or potential causes of action between RHA, the Second Lien Agent (as defined in the Chapter 11 Plan) (on behalf of itself and the Second Lien Lenders (as defined in the Chapter 11 Plan)), Stanley and Stanley's employees, officers and directors arising from or relating to the Litigation Claims, as such claims have, or could have been made in the Litigation, the Appeal and the Bankruptcy Proceedings. It is the intent of the Parties that this Agreement shall forever resolve, settle, satisfy and release all disputes relating to the Litigation Claims between the Parties.

2. Settlement of the Litigation Claims

a.    In consideration of the mutual promises herein contained, any monies paid pursuant hereto, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, each of RHA, on behalf of itself, its officers, directors, members, predecessors, successors, and assigns and the Second Lien Agent, on behalf of itself and the Second Lien Lenders, releases and forever discharges Stanley, its past, present and future constituent officers, directors, stockholders, employees, attorneys, agents, servants, representatives, subsidiaries, affiliates, insurers, partners, predecessors, successors in interest, assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including the respective spouses of all these entities or persons, of and from any and all known and unknown past or present claims, demands, obligations, actions and causes of action, suits, debts, dues, accounts, contracts, agreements, judgments, rights, damages, costs, interest, attorneys' fees, expenses and compensation of any nature whatsoever whether based on tort, contract (express, implied or otherwise) or any other theory of recovery, and whether for compensatory or,

3

direct, indirect, special, general or punitive damages, which RHA or the Second Lien Agent (on behalf of itself or the Second Lien Lenders) may now have or claim against Stanley, in any way arising out of or relating to the Litigation Claims.

      b.     In consideration of the mutual promises herein contained, any monies paid pursuant hereto, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, each of RHA, on its behalf and on behalf of itself, its officers, directors, members, predecessors, successors, and assigns, and the Second Lien Agent, on behalf of itself and the Second Lien Lenders, releases and forever discharges the Stanley Employees, their respective spouses and marital communities, attorneys, insurers, and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, of and from any and all known and unknown past or present claims, demands, obligations, actions and causes of action, suits, debts, dues, accounts, contracts, agreements, judgments, rights, damages, costs, interest, attorneys' fees, expenses and compensation of any nature whatsoever whether based on tort, contract (express, implied or otherwise) or any other theory of recovery, and whether for compensatory or, direct, indirect, special, general or punitive damages, which RHA may now have or claim against the Stanley Employees and their respective spouses or marital communities, in any way arising out of or relating to the Litigation Claims.

      c.     In consideration of the mutual promises herein contained, any money paid pursuant hereto, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, Stanley, on its behalf and on behalf of its shareholders, officers and directors, and its successors and assigns, releases and forever discharges RHA as well as its predecessors, successors and assigns, past, present and future constituent officers, directors, stockholders, members, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, insurers, partners, predecessors, successors in interest, assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including the respective spouses of all these entities or persons, of and from any and all known and unknown past or present claims, demands, obligations, actions and causes of action, debts, dues, accounts, contracts, agreements, judgments, rights, damages, costs, attorneys' fees, expenses and compensation of any nature whatsoever whether based on tort, contract (express, implied or otherwise) or any other theory of recovery, and whether for compensatory or, direct, indirect, special, general or punitive damages, which Stanley may now have or claim against RHA, in any way arising out of or relating to the Litigation Claims.

      d.     In consideration of the mutual promises herein contained, any money paid pursuant hereto, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, each of the Stanley Employees, on their own behalf and on behalf of their respective spouses and marital communities, and their successors and assigns, release and forever discharge RHA as well as its predecessors, successors and assigns, past, present and future constituent officers, directors, stockholders, members, attorneys, agents,

*Settlement Agreement*
*And Release*

servants, representatives, employees, subsidiaries, affiliates, insurers, partners, predecessors, successors in interest, assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including the respective spouses of all these entities or persons, of and from any and all known and unknown past or present claims, demands, obligations, actions and causes of action, debts, dues, accounts, contracts, agreements, judgments, rights, damages, costs, attorneys' fees, expenses and compensation of any nature whatsoever whether based on tort, contract (express, implied or otherwise) or any other theory of recovery, and whether for compensatory or, direct, indirect, special, general or punitive damages, which each of the Stanley Employees and their respective spouses or marital communities may now have or claim against RHA, in any way arising out of or relating to the Litigation Claims. The release described in this subparagraph is not intended to, and does not, release any Proof of Claim filed in the Bankruptcy Proceedings by any of the Stanley Employees, nor is the release described in this subparagraph intended to admit the validity of any such Proof of Claim in any manner or for any purpose.

3. Payment

In further consideration of the releases given, Stanley shall pay the sum of $1,875,000 (the "Settlement Payment"), on or before the date that is five (5) days after the entry of the order approving this Agreement, without regard to any stay of the effectiveness of such order and which stay Stanley agrees to waive, to Las Vegas Land Holdings, L.L.C. ("LVL"), for and on behalf of LVL, RHA and all other persons or entities who may be third-party beneficiaries under the Agreement, to the extent of their respective interests, as described in subsection 7(b) of the Agreement. Upon receipt of the Settlement Payment, LVL shall remit 50% of the ~~$127,099.01~~ net proceeds of the Settlement Payment, estimated to be approximately [$_____] to the Second Lien Agent pursuant to the terms of the Plan, which the Second Lien Agent shall then timely distribute pro rata to the Second Lien Lenders.

4. Additional Consideration

a.    RHA agrees, upon execution of this Agreement, to dismiss the Litigation and the Appeal, with prejudice, as to all defendants, with the parties to bear their respective costs and attorney's fees incurred in the Litigation and Appeal.

b.    Stanley agrees, upon execution of this Agreement, to dismiss the Stanley Counterclaim filed in the Litigation, with prejudice, as to all counter-defendants, with the parties to bear their respective costs and attorney's fees incurred in connection with the Stanley Counterclaim.

c.    Stanley agrees to withdraw any and all of the Stanley Proofs of Claim filed in the Bankruptcy Proceedings, with prejudice, with the parties to bear their respective costs and attorneys' fees incurred in the Bankruptcy Proceedings. Stanley further agrees that it will withdraw the Stanley Proofs of Claim by filing with the Bankruptcy Court a notice of withdrawal substantially in the form attached hereto as Exhibit B.

JUN-17-2011 09:37A FROM:WINCHESTER CARLISLE  214 303 0060          TO:15413478161          P.2

*Settlement Agreement*
*And Release*

servants, representatives, employees, subsidiaries, affiliates, insurers, partners, predecessors, successors in interest, assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including the respective spouses of all these entities or persons, of and from any and all known and unknown past or present claims, demands, obligations, actions and causes of action, debts, dues, accounts, contracts, agreements, judgments, rights, damages, costs, attorneys' fees, expenses and compensation of any nature whatsoever whether based on tort, contract (express, implied or otherwise) or any other theory of recovery, and whether for compensatory or, direct, indirect, special, general or punitive damages, which each of the Stanley Employees and their respective spouses or marital communities may now have or claim against RHA, in any way arising out of or relating to the Litigation Claims. The release described in this subparagraph is not intended to, and does not, release any Proof of Claim filed in the Bankruptcy Proceedings by any of the Stanley Employees, nor is the release described in this subparagraph intended to admit the validity of any such Proof of Claim in any manner or for any purpose.

### 3. Payment

In further consideration of the releases given, Stanley shall pay the sum of $1,875,000 (the "Settlement Payment"), on or before the date that is five (5) days after the entry of the order approving this Agreement, without regard to any stay of the effectiveness of such order and which stay Stanley agrees to waive, to Las Vegas Land Holdings, L.L.C. ("LVL"), for and on behalf of LVL, RHA and all other persons or entities who may be third-party beneficiaries under the Agreement, to the extent of their respective interests, as described in subsection 7(b) of the Agreement. Upon receipt of the Settlement Payment, LVL shall remit 50% of the ~~$127,099.01~~ net proceeds of the Settlement Payment, estimated to be approximately [$_____] to the Second Lien Agent pursuant to the terms of the Plan, which the Second Lien Agent shall then timely distribute pro rata to the Second Lien Lenders.

### 4. Additional Consideration

a.      RHA agrees, upon execution of this Agreement, to dismiss the Litigation and the Appeal, with prejudice, as to all defendants, with the parties to bear their respective costs and attorney's fees incurred in the Litigation and Appeal.

b.      Stanley agrees, upon execution of this Agreement, to dismiss the Stanley Counterclaim filed in the Litigation, with prejudice, as to all counter-defendants, with the parties to bear their respective costs and attorney's fees incurred in connection with the Stanley Counterclaim.

c.      Stanley agrees to withdraw any and all of the Stanley Proofs of Claim filed in the Bankruptcy Proceedings, with prejudice, with the parties to bear their respective costs and attorneys' fees incurred in the Bankruptcy Proceedings. Stanley further agrees that it will withdraw the Stanley Proofs of Claim by filing with the Bankruptcy Court a notice of withdrawal substantially in the form attached hereto as Exhibit B.

Z00 ⅋          BANDON DUNEGAN          ᴌSᴌSᴌᔭ£ᴌᔭS XⱯℲ 0Z:ᴌ0 ᴌᴌ0Z/ᴌᴌ/90

d.    By execution of this Agreement, RHA has also withdrawn and fully released any claim of right, title, ownership and interest of and in any of the Copyright Materials, created or published by Stanley, its agents and employees in connection with any Project that was the subject of the Litigation or owned by RHA.    This release applies to any right or claim on the Copyright Materials asserted by RHA, including those made or arising in the Litigation or Bankruptcy Proceedings, and RHA acknowledges that it shall have no claim of right, title, ownership and interest of and in the Copyright Materials, hereafter.

e.    The Parties agree that this Agreement shall be submitted for approval by the Bankruptcy Court, and shall only become effective upon entry of an order (i) approving this Agreement and (ii) barring all claims or causes of action relating to the Litigation Claims in accordance with the releases and discharges contained in subsections 2(a), 2(b), 2(c) and 2(d) of this Agreement. RHA agrees that it shall initiate such action as may be required to seek approval of this Agreement in the Bankruptcy Proceedings and shall bear its costs and attorney's fees incurred therefor.

5. Notices

Any demand or notice made under this Agreement will be in writing and will be deemed (a) given and received upon personal delivery to the party, (b) given upon deposit with a reputable national overnight commercial courier services, addressed to the party to be notified, and received on the first business day after such deposit, or (c) given upon deposit of such notice in the United States mail by first class mail, certified or registered, postage prepaid, addressed to the party, at the address designated in this note, and received on the second business day after such deposit.

6. Representation of Understanding of Agreement.

The Parties acknowledge that this Agreement constitutes the entire and integrated agreement between the Parties with respect to the Litigation Claims; and that they have each had the opportunity to have counsel of their own choosing review this Agreement; and that they are entering into this Agreement voluntarily, with a full understanding of the terms hereof.

7. Warranty of Capacity to Execute Agreement

a.    The Parties hereto represent and warrant that, except as provided in the Chapter 11 Plan and in connection with the sale of assets of the debtor entities with Bankruptcy Court approval, no other person or entity (other than the Parties' respective insurers) has, or had, any interest in the claims, demands, obligations, or causes of action referred to in this Agreement; that they have the sole right and exclusive authority to execute this Agreement and receive the sums specified in it; and that they have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations or causes of action referred to in this Agreement; and further, that any attempted or purported assignment shall be deemed void *ab initio*, and of no legal effect.

b.    RHA further represents, warrants and agrees that it has the power and authority to compromise, resolve, settle, and grant complete and

6

unconditional releases for the Litigation Claims pursuant to the terms of this Agreement, for and on behalf of any committee or combination of one or more creditors, any person or entity for whom RHA is a fiduciary, and/or beneficiaries of any litigation trust created by the Chapter 11 Plan confirmed in the Bankruptcy Proceedings. RHA further represents, warrants and agrees that in executing this Agreement, it has fully and faithfully considered its obligations to, and the interests of, any committee or combination of one or more creditors, any person or entity for whom RHA is a fiduciary, and/or beneficiaries of any litigation trust created by the Chapter 11 Plan, and that RHA agrees that the consideration provided pursuant to this Agreement is sufficient and adequate to fully meet and comply with all such obligations and interests. RHA further represents, warrants and agrees that it will indemnify Stanley and its predecessors, successors and assigns, past, present and future constituent officers, directors, stockholders, members, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, insurers, partners, predecessors, successors in interest, assigns or any other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including the respective spouses of all these entities or persons for any and all costs, expenses, attorney fees, liabilities or any other losses incurred by Stanley in the event that any of the committee or combination of one or more creditors, any person or entity for whom RHA is a fiduciary, and/or beneficiaries of any litigation trust created by the Chapter 11 Plan confirmed in the Bankruptcy Proceedings, their predecessors, successors and assigns, past, present and future constituent officers, directors, stockholders, members, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, insurers, partners, predecessors, successors in interest, or assigns (but specifically excluding James Rhodes and any entity owned by, controlled by, or affiliated with James Rhodes) initiate or continue to pursue any demands, obligations, actions and causes of action, debts, dues, accounts, contracts, agreements, judgments, rights, damages, costs, attorneys' fees, expenses and compensation of any nature whatsoever whether based on tort, contract (express, implied or otherwise) or any other theory of recovery in any way arising out of or relating to the Litigation Claims against Stanley or its predecessors, successors and assigns, past, present and future constituent officers, directors, stockholders, members, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, insurers, partners, predecessors, successors in interest, assigns or any other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including the respective spouses of all these entities or persons, notwithstanding the release and discharge contained in subsection 2(d) of this Agreement.  This obligation to indemnify shall be mandatory and shall extend to both liability and expense, including advances for expenses.

c.      Stanley further represents, warrants and agrees that it has the power and authority to compromise, resolve, settle, and grant complete and unconditional releases for the Litigation Claims pursuant to the terms of this Agreement, for and on behalf of the Stanley Employees, their respective spouses, and their respective marital communities.  Stanley further represents, warrants and agrees that in executing this Agreement, it has fully and faithfully

7

considered its obligations to, and the interests of the Stanley Employees, their respective spouses, and their respective marital communities, and that Stanley agrees that the consideration provided pursuant to this Agreement is sufficient and adequate to fully meet and comply with all such obligations and interests. Stanley further represents, warrants and agrees that it will indemnify RHA and its predecessors, successors and assigns, past, present and future constituent officers, directors, stockholders, members, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, insurers, partners, predecessors, successors in interest, assigns or any other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including the respective spouses of all these entities or persons for any and all costs, expenses, attorney fees, liabilities or any other losses incurred by RHA in the event that any of the Stanley Employees, their respective spouses or their respective marital communities initiate or continue to pursue any demands, obligations, actions and causes of action, debts, dues, accounts, contracts, agreements, judgments, rights, damages, costs, attorneys' fees, expenses and compensation of any nature whatsoever whether based on tort, contract (express, implied or otherwise) or any other theory of recovery in any way arising out of or relating to the Litigation Claims against RHA or its predecessors, successors and assigns, past, present and future constituent officers, directors, stockholders, members, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, insurers, partners, predecessors, successors in interest, assigns or any other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including the respective spouses of all these entities or persons, notwithstanding the release and discharge contained in subsection 2(d) of this Agreement. This obligation to indemnify shall be mandatory and shall extend to both liability and expense, including advances for expenses.

8. <u>Disclaimer of Liability</u>

The Parties hereto agree and acknowledge that except as set forth herein, the payment and acceptance of the sums or other concessions and releases specified in this Agreement is a full and complete compromise of matters relating to the Litigation Claims; that neither payment of the sums nor the concessions and releases granted by the Parties nor the negotiations for the settlement (including all statements or communications) by the Parties and/or representatives shall be considered admissions by any of the Parties; and that no past or present wrongdoing on the part of the Parties hereto shall be implied by such payment, concessions, releases or negotiations.

9. <u>Agreement Supersedes All Other Agreements</u>

This Agreement supersedes all prior agreements or understandings, whether written or oral, of the Parties hereto relating to the subject disputed issues of fact and law hereof and incorporates the entire understanding of the Parties with respect thereto. In the event of uncertainty in the terms of this Agreement, such uncertainty shall be resolved fairly and in accordance with the intent of the Parties set forth herein, and without regard as to which party may have drafted this Agreement or otherwise caused the uncertainty to exist.

10. Effectiveness

This Agreement shall become effective immediately upon execution of all the Parties hereto, and the entry of an order by the Bankruptcy Court (i) approving this agreement and (ii) barring all claims or causes of action relating to the Litigation Claims in accordance with the releases and discharges contained in subsections 2(a), 2(b), 2(c) and 2(d) of this Agreement. All Parties hereto agree to waive the stay period with respect to the effectiveness of the order entered by the Bankruptcy Court approving this Agreement.

11. Survivorship

All warranties, covenants, representations and guarantees contained herein shall survive the closing and execution of the documents contemplated by this Agreement.

12. Severability

All provisions of this Agreement shall be severable and no such provision shall be affected by the invalidity of any other such provision to the extent that such invalidity does not also render such other provisions invalid. In the event of the invalidity of any provision of this Agreement, the Agreement shall be interpreted and enforced as if all provisions thereby rendered invalid or unenforceable were not contained herein.

13. Miscellaneous Provisions

a.    Should any action arise over the interpretation, enforcement, performance or rescission of this Agreement, the prevailing party in such litigation shall recover from the losing party all costs and expenses, including reasonable attorney's fees. In any event, neither party shall be entitled to reinstate or revive the Litigation Claims or Litigation herein settled, or any other claim, cause of action or disputed matter.

b.    This Agreement shall inure to the benefit of the Parties and their respective members, shareholders, officers, directors or employees (past, present or future) and be binding upon the Parties and their successors, assigns, heirs, personal representatives and insurers.

14. Counterparts

It is further agreed that this Agreement may be signed in counterpart and circulated by facsimile or electronic mail transmission. It shall be effective on the date that all Parties have signed a copy of this Agreement.

15. Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of Arizona. Each Party to this Agreement hereby irrevocably and unconditionally submits, for itself and its property, to the jurisdiction of the Maricopa County Superior Court sitting in Maricopa County, Arizona, and any appellate court thereof, in any action or proceeding arising out of or relating to this Agreement, or for recognition or enforcement of any judgment, and each of the Parties hereto irrevocably and unconditionally agrees

*Settlement Agreement*
*And Release*

that all claims in respect of such action or proceeding shall be heard and determined by the Maricopa County Superior Court.

This Agreement is executed by the Parties, by and through their duly authorized representative or agent, on the date shown below.

**RHODES HOMES ARIZONA, L.L.C**

By: _____

Its: _____Authorized Agent_____

Date: ___5/31/2611___

**STANLEY CONSULTANTS, INC.**

By: _____

Its: ___Corporate Cornsel___

Date: ___6/7/2011___

10

**<u>Exhibit A</u>**

**EXHIBIT A**

| Registration # | Date | Description |
|---|---|---|
| VAu734-120 | 06/??/05 | Golden Valley South and The Villages at White Hills CC&N Water and Sewer Boundaries - Maps and Text |
| VAu734-121 | 3/6/2005 | Mohave County Plan Areas and Parcels - Maps |
| VAu734-122 | 5/2/2005 | ALTA Survey - Aztec 40 |
| VAu734-122 | 9/16/2005 | ALTA Survey - Golden Valley Ranch |
| VAu734-122 | 6/16/2005 | ALTA Survey - Temple Bar |
| VAu734-122 | 6/15/2006 | ALTA Survey - Yandell 1500 |
| VAu734-122 | 8/2/2005 | ALTA Survey - White Hills |
| VAu734-122 | 5/2/2005 | Aztec 40 ALTA |
| VAu734-123 | | Golden Valley Ranch Phasing Exhibits and Budget - Maps and Text |
| VAu734-124 | 02/??/06 | Draft Technical Specifications for Golden Valley Ranch Well #1 |
| VAu734-124 | 2/1/2006 | Golden Valley Ranch Well 1 Plans and Specs - Technical Drawings and Text |
| VAu734-125 | 12/20/2005 | Golden Valley Ranch Design Standard Drawings |
| VAu734-126 | 11/22/2005 | Golden Valley Ranch Offsite Water Transmission Line Improvement Plans |
| VAu734-126 | 3/3/2005 | Aztec 60 Final engineering plans, Corridor Area WWTP |
| VAu734-126 | 11/29/2006 | Site Plan for Aztec 40 |
| VAu734-126 | 2/4/2005 | Site Plan for Aztec 60 |
| VAu734-126 | 2/8/2005 | Aztec 60 Layout |
| VAu734-126 | 3/17/2005 | Lot Layout for Aztec 60 |
| VAu734-126 | 4/5/2005 | Site Plan for Aztec at Redwall |
| VAu734-126 | 3/25/2005 | Aztec 60 Site Plan |
| VAu734-126 | 12/30/2004 | Site Plan for Aztec at Redwall |
| VAu734-126 | 5/31/2005 | Improvement Plans - Aztec 80 |
| VAu734-126 | 2/2/2005 | Aztec 80 Lot Layout |
| VAu734-126 | 4/15/2005 | Aztec at Chuar Improvement Plans |
| VAu734-126 | 11/15/2005 | Aztec Park Improvement Plans |
| VAu734-126 | 11/15/2005 | 11 Acre Aztec Park Plans |
| VAu734-126 | 3/29/2006 | Effluent Supply Line. |
| VAu734-126 | | Golden Valley Ranch Dry Utility Plans - Utilities. |
| VAu734-126 | | Golden Valley Ranch Dry Utility Plans - Electrical. |
| VAu734-126 | 4/11/2005 | Aztec Road improvement plans,  Shinarump to the Roundabout |
| VAu734-126 | 3/15/2006 | Aztec Road Section 1 Improvements |
| VAu734-126 | 8/31/2005 | Golden Valley Ranch East Loop Road Phase 1 Improvement Plans |
| VAu734-126 | 8/31/2005 | Golden Valley Ranch West Loop Road Improvement Plans |
| VAu734-126 | 8/31/2005 | East Loop Road Improvements Water and Sewer |
| VAu734-126 | 10/18/2005 | Golden Valley Ranch Area 1, Area 2, Area 3, Area 5 and Area 6 Mass Grading Plans |
| VAu734-126 | 3/10/2006 | Improvement Plans Area 1 Phase A |
| VAu734-126 | 4/12/2006 | Area 1 Phase B subdivision improvement plans |
| VAu734-126 | 3/10/2006 | Area2 Phase A Improvement Plans sealed |
| VAu734-126 | 4/12/2006 | Area 2 Phase B subdivision improvement plans |

1

## EXHIBIT A

| Registration # | Date | Description |
|---|---|---|
| VAu734-126 | 3/10/2006 | Improvement plans Area 3 |
| VAu734-126 | 2/8/2006 | Golden Valley Ranch Preliminary Plat for Pod 1 |
| VAu734-126 | 2/8/2006 | Golden Valley Ranch Preliminary Plat for Pod 2 |
| VAu734-126 | 2/8/2006 | Golden Valley Ranch Preliminary Plat for Area 3 |
| VAu734-126 | 03/??/06 | Land Use Plan Revised Golden Valley Ranch, misc exhibits |
| VAu734-126 | 2/25/2005 | Aztec 60 Corridor Area WWTP |
| VAu734-126 | 4/12/2006 | Construction Trailer Site Plan |
| VAu734-127 | 8/31/2005 | West Loop Road Section 2 Improvements at Golden Valley Ranch - Technical Drawings and Text |
| TXu1-349-942 | 06/??/06 | Technical Drainage Study for East Loop Road Section 3, Golden Valley Ranch |
| TXu1-352-143 | 06/??/05 | Villages at White Hills Phase 1 Engineering Report |
| TXu1-352-144 | 03/??/06 | Golden Valley Ranch Water and Sewer Master Plan |
| TXu1-352-145 | 7/6/2006 | Golden Valley Ranch 208 Plan Amendment |
| TXu1-352-146 | 05/??/06 | Golden Valley Ranch Master Traffic Study |
| TXu1-352-147 | 3/29/2006 | Technical Drainage Study for Area 3, Golden Valley Ranch |
| TXu1-352-148 | 3/22/2006 | Technical Drainage Study for Area 1, Phases A&B, Golden Valley Ranch |
| TXu1-352-149 | 6/2/2006 | Technical Drainage Study for Golden Valley Ranch |
| TXu1-353-477 | 3/29/2006 | Technical Drainage Study for Area 2, Phases A&B, Golden Valley Ranch |
| TXu1-353-478 | 05/??/05 | Golden Valley South Engineering Report |
| TXu1-353-479 | 08/??/04 | Phase 1 Environmental Site Assessment, Rhodes Kingman 7600 Site |
| TXu1-370-356 | 4/12/2006 | Technical Specifications for Golden Valley Ranch Reservoir 2750 N-1 |
| TXu1-370-357 | 2/1/2006 | Golden Valley Ranch Aquifer Protection Permit Application and Design Report |
| TXu1-370-358 | 03/??/06 | Red Lake Area Plan - Site Characteristics, Water Resources, Infrastructure, and Rhodes Red Lake Constraints Map |
| TXu1-370-359 | 06/??/05 | Peacock Vistas Area Plan Phase 1 (X-One Ranch Phase I Survey) |
| TXu1-370-360 | 06/??/05 | Peacock Highlands (Kingman 7600) Area Plan - Site Characteristics, Water Resources, Infrastructure, Exhibit 2 and Exhibit 3 |

**<u>Exhibit B</u>**

1
2
3
4
5
6
7
8

**UNITED STATES BANKRUPTCY COURT**

9

**DISTRICT OF NEVADA**

10
11
12

In re:

Case No.: BK-S-09-14819-LBR

13

THE RHODES COMPANIES, INC.,

Chapter 11

14

Debtor.

15
16

**NOTICE OF WITHDRAWAL OF**
**STANLEY CONSULTANTS, INC.'S PROOFS OF CLAIM NOS. 48 AND 52**

17
18
19

STANLEY CONSULTANTS, INC. hereby withdraws its proofs of claim, designated as

20

Claim No. 48 in the general unsecured amount of $570,758.00 and Claim No. 52 in the general

21

unsecured amount of $3,467,733.00 ( the "Claims") filed in the above-captioned case.

22
23

Dated: June 7 , 2011

24

Name: HENRY F MARQUARD

25

Title: CORPORATE Counsel

26
27
28