1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

LAS VEGAS, NEVADA

| | | |
|---|---|---|
| In re:  THE RHODES COMPANIES, LLC, | ) ) ) | E-Filed:  07/13/11 |
| Debtor. | ) ) ) | Case No. BK-S-09-14814-LBR Chapter 11 |
| _____ | ) | |

TRANSCRIPT OF PROCEEDINGS
OF
MOTION TO EXTEND TIME OF CLAIMS OBJECTION DEADLINE
TO STANLEY CONSULTANTS, INC.,
WITH PROPOSED ORDER, NO. 1374
AND
OBJECTION TO CLAIM 18-1 OF SLAUGHTER
IN THE AMOUNT OF UNLIQUIDATED, NO. 1366
AND
OBJECTION TO CLAIM 22 OF MIRAJOY RAYO AND ARTURO CASIMIRO
IN THE AMOUNT OF UNLIQUIDATED, NO. 1366
AND
OBJECTION TO CLAIM 61 OF COMMERCE ASSOCIATES, LLC,
IN THE AMOUNT OF UNKNOWN REORGANIZED DEBTOR'S OBJECTION
TO COMMERCE ASSOCIATES' PROOF OF CLAIM NO. 61-1
PURSUANT TO BANKRUPTCY RULE 3007
AND BANKRUPTCY CODE SECTION 502(B), NO. 1390
VOLUME 1
BEFORE THE HONORABLE LINDA B. RIEGLE
UNITED STATES BANKRUPTCY JUDGE

Monday, May 9, 2011

2:30 p.m.

Court Recorder:        Deborah Hemstreet

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

```
 1    APPEARANCES:

 2    For the Rhodes          ZACHARIAH LARSON, ESQ.
      Entities:               Larson & Stephens, LLC
 3                            810 South Casino Center Boulevard
                              Suite 104
 4                            Las Vegas, Nevada 89101

 5                            SHLOMO S. SHERMAN, ESQ.
                              Kolesar & Leatham, Chtd.
 6                            3320 West Sahara Avenue
                              Suite 380
 7                            Las Vegas, Nevada 89102

 8    For Stanley             SUE TRAZIG CAVACO, ESQ.
      Consultants, Inc.:      Anderson, McPharlin & Conners, LLP
 9                            777 North Rainbow Boulevard
                              Suite 145
10                            Las Vegas, Nevada 89107

11    For Commerce            TRACY A. DiFILLIPPO, ESQ.
      Associates, LLC:        Jones Vargas
12                            3773 Howard Hughes Parkway
                              Third Floor South
13                            Las Vegas, Nevada 89169

14    For the Reorganized     SHIRLEY S. CHO, ESQ.
      Debtor:                 JEFFREY P. NOLAN, ESQ.
15                            Pachulski, Stang, Ziehl & Jones, LLP
                              10100 Santa Monica Boulevard
16                            Eleventh Floor
                              Los Angeles, California 90067
17                            (Telephonic)

18                            PHILIP C. DUBLIN, ESQ.
                              MEREDITH A. LAHAIE, ESQ.
19                            Akin, Gump, Strauss, Hauer & Feld, LLP
                              One Bryant Park
20                            New York, New York 10036
                              (Telephonic)

21

22

23

24

25
```

3

1          (Court convened at 02:36:26 p.m.)

2              THE COURT:  Be seated.

3          (Colloquy not on the record.)

4              THE COURT:  All right.  Rhodes.

5          Appearances, please.

6              MR. LARSON:  Good afternoon, your Honor.  Zach Larson

7     on behalf of the Rhodes entities on matters No. 1 through 3 for

8     today.

9              MS. CAVACO:  Good afternoon, your Honor.  Sue Cavaco

10    on behalf of Stanley Consultants, Inc.

11             MR. SHERMAN:  Good afternoon, your Honor.

12    Shlomo Sherman of Kolesar & Leatham on behalf of the Rhodes

13    entities for matter No. 4.

14             MS. DiFILLIPPO:  Good afternoon, your Honor.

15    Tracy DiFillippo on behalf Commerce Associates, LLC, of

16    Jones Vargas.

17             THE COURT:  Okay.  All right.

18             THE CLERK:  And, your Honor --

19             THE COURT:  And --

20             THE CLERK:  -- we have more parties by phone.

21             THE COURT:  Okay.  On the telephone.

22             MS. CHO:  Good afternoon, your Honor.  Shirley Cho

23    and Jeff Nolan of Pachulski, Stang for the reorganized debtors

24    on matters 1 through 3.

25             THE COURT:  Okay.

1          MR. DUBLIN:  Good afternoon, your Honor.  Phil Dublin

2     and Meredith Lahaie for the reorganized debtors for item 4.

3          THE COURT:  All right.  All right.  So the first is

4     the motion to extend time.

5        Mr. Larson.

6          MR. LARSON:  Matter No. 1, your Honor.

7          THE COURT:  Yeah.

8          MR. LARSON:  Yes.

9          THE COURT:  Right.

10          MR. LARSON:  We have come to an agreement to extend

11     the time on that, your Honor.  And, indeed, I believe the

12     matter's been settled.  We're just looking --

13          THE COURT:  Oh, good.

14          MR. LARSON:  We're looking for time to settle it --

15          MS. CAVACO:  I --

16          MR. LARSON:  -- (indiscernible).

17          MS. CAVACO:  That is accurate, your Honor.

18          THE COURT:  Okay.  So I just realized this pen was

19     also a highlighter.  It was like -- all right.  So that's

20     granted, and what date did you want to continue the objection

21     to, I mean, not a continued hearing date.

22        (Colloquy not on the record.)

23          THE COURT:  I mean what date --

24          MR. LARSON:  If we can get --

25          THE COURT:  -- in the order.

5

```
 1              MR. LARSON:  -- a date in July, your Honor.

 2              THE COURT:  Okay.  You don't want a continued hearing

 3   date, though, just --

 4              MR. LARSON:  I believe we should probably continue

 5   the hearing date --

 6              MS. CAVACO:  Just --

 7              MR. LARSON:  -- just in case, but I --

 8              MS. CAVACO:  No.  I --

 9              MR. LARSON:  I --

10              MR. CAVACO:  I --

11              MR. LARSON:  I --

12              THE COURT:  Okay.

13              MS. CAVACO:  I'm in agreement with that, your Honor.

14              THE COURT:  All right.

15              MS. CAVACO:  That way we can keep the fire burning --

16              THE COURT:  So do we have --

17              MS. CAVACO:  -- so to speak.

18              THE COURT:  -- a Rhodes date in July?

19              THE CLERK:  Your Honor, just a moment.  Let me look

20   here.  I believe we do.

21              THE COURT:  Probably not.

22              THE CLERK:  I don't see it.  I'm sorry.

23              THE COURT:  Okay.  So how about July 19th --

24              THE CLERK:  What time, your Honor?

25              THE COURT:  -- at 9:30?
```

```
 1        And you can use that for your omnibus day.

 2             MR. LARSON:  If I can just confirm, your Honor, that

 3    I'm not --

 4             THE COURT:  Oh, sure.

 5             MR. LARSON:  I know I have a family vacation that's

 6    scheduled.  That's Tuesday?

 7             THE COURT:  Um-h'm.  Is that --

 8             MR. LARSON:  We're good.

 9             THE COURT:  Is that a bad week?

10             MR. LARSON:  Nope.

11             THE COURT:  Nope.

12             MR. LARSON:  We're good.

13             THE COURT:  Okay.  Good.  All right.

14             MS. CAVACO:  Thank you --

15             THE COURT:  So --

16             MS. CAVACO:  -- your Honor.

17             THE COURT:  So I'll grant -- now, and if I'm granting

18    the motion -- well, I'm granting the motion.  The point is if

19    you have to file an additional time, then you'll file your

20    motion and put it on for that day.  Will that work?

21             MR. LARSON:  That will work, your Honor.

22             THE COURT:  So I'll extend the claims-objection

23    deadline to July 22nd.  If you need to bring it to have it

24    heard, you could set it for the 19th.

25             MR. LARSON:  Thanks, your Honor.
```

```
1              THE COURT:  Okay?

2              MS. CAVACO:  Thank you.

3              THE COURT:  All right.  Next, we have the objection

4    to claim 18-1 of Slaughter.

5              MR. LARSON:  Yeah.  Good afternoon, your Honor.

6    Zach Larson.  They did file a response to this.  I believe it

7    was late Friday.  They asked for written permission.

8        I would still ask your Honor strike that and grant our

9    objection.  It was very untimely.  It was filed by an attorney.

10   He had over 40-days' worth of notice on it, and he's not here

11   today.

12             THE COURT:  And they're not, and Wirsbo doesn't

13   represent Mr. Slaughter, correct?

14             MR. LARSON:  I don't --

15             THE COURT:  I mean --

16             MR. LARSON:  I believe he represents Mr. Slaughter,

17   but not on matter No. 3.  We've been advised he doesn't

18   represent that particular client, anymore, and I believe you

19   pronounce it Casimiro.

20             THE COURT:  Okay.  So --

21             MR. LARSON:  And the basis of the Slaughter claim

22   objection, basically, he sought to have a class-action claim

23   certified.  That was denied.

24       We have no allegation whatsoever to give any credibility

25   to his claim, and he filed the last-minute response, and he's
```

 1   not here today.

 2          THE COURT:  Okay.  But Mr. Slaughter himself, he --

 3   who filed the -- Mr. Slaughter filed the claim?

 4        (Colloquy not on the record.)

 5          MR. LARSON:  Let me --

 6        (Colloquy not on the record.)

 7          MS. CHO:  Your Honor, it's Shirley Cho of

 8   Pachulski, Stang.  The claim was filed by counsel on behalf of

 9   Slaughter.

10          THE COURT:  On Mr. Slaughter.  And Mr. Slaughter

11   doesn't own one of the debtor homes?

12          MS. CHO:  That's --

13          THE COURT:  Put --

14          MS. CHO:  That's correct, your Honor.

15          THE COURT:  Okay.  Let's put the class-action issue

16   aside for a moment.  The issue of why Mr. Slaughter's claim

17   should be denied is because he doesn't own a home, anymore, as

18   I understand if from your motion or your objection?

19          MR. LARSON:  That's correct --

20          MS. CHO:  He --

21          MR. LARSON:  -- your Honor.

22          MS. CHO:  He never owned a home.  We never sold a

23   home to him, your Honor, as far as our records can tell.

24          THE COURT:  Okay.  All right.  So I'll sustain the

25   objection, then, as to Mr. Slaughter.

9

1          MR. LARSON:  Thank you --

2          THE COURT:  And then --

3          MR. LARSON:  -- your Honor.

4          THE COURT:  -- as to Casimiro --

5          MR. LARSON:  It's similar, your Honor.  There was no

6    response filed.  As it turns out, they both filed for relief

7    under either Chapter 7 or Chapter 13.

8        We've negotiated or tried to negotiate since early 2010

9    this matter.  The trustee basically said, hey, it doesn't

10   apply, they've lost the house, it's dismissed, so we'd ask for

11   our objection to carry.

12         THE COURT:  Okay.  And --

13         MR. LARSON:  And this claim, it was originally

14   represented by the attorney in the Slaughter matter, but I do

15   believe Mr. Nolan's declaration claims that during the process

16   of negotiation he did say he longer represents the Casimiros.

17         THE COURT:  Okay.  All right.  I'll sustain that

18   objection.

19         MR. LARSON:  Thank you, your Honor.

20         THE COURT:  And, again, just for a clarification, it

21   seems to me the issue is since there is no class action each of

22   these claims must be viewed as a claim brought by that

23   individual against the debtor.

24       And so you have to look at whether or not the individual,

25   Mr. Slaughter or Mr. Casimiro, Ms. Casimiro, has a cognizable

1   claim.

2       And since they don't -- do the rights to construction

3   defect cease once you own the property, once you cease to own

4   the property?  Do you have a separate action for damages?

5           MR. LARSON:  You know, I --

6           MS. CHO:  Your Honor --

7           MR. LARSON:  I --

8           MS. CHO:  -- it's Shirley Cho again for

9   Pachulski, Stang.  I guess whether or not I -- I'm not sure

10  what the answer is to your Honor's question.

11      But I think the point is that we've never received

12  information that the claimants themselves have incurred any

13  out-of-pocket costs on account of their alleged claim.

14          MR. LARSON:  And --

15          THE COURT:  Okay.

16          MR. LARSON:  And I apologize for not knowing

17  Chapter 40 better, your Honor.

18          THE COURT:  All right.  I'll sustain the objection.

19          MR. LARSON:  Thank you, your Honor.

20          THE COURT:  All right.  Next, we have the objection

21  to Claim 61 of Commerce Associates.

22          MR. SHERMAN:  Good afternoon, your Honor.

23  Shlomo Sherman on behalf of the reorganized debtors.  I don't

24  have much to add beyond that which is already stated in our

25  pleadings.

1    But I would like to summarize some of the main points.

2 And if your Honor has questions afterwards, I'll be happy to

3 address them.

4    First and foremost, we're requesting that the Commerce

5 claim be deemed unsecured.  Every single document giving rise

6 to the Commerce claim which includes some declarations that

7 were recorded were all subordinated to Credit Suisse.

8    At every point of the relationship between Credit Suisse

9 and the reorganized debtors and Commerce whenever property was

10 acquired by the reorganized debtors or a subsidiary, documents

11 were recorded that made that property subject to the first and

12 second lien of Credit Suisse.

13    And subordination agreements were recorded and executed by

14 Commerce that subordinated whatever lien Commerce may otherwise

15 have had to Credit Suisse's liens.

16    Once we have that subordination, your Honor, under the

17 plan, the property was deemed insufficient to satisfy

18 Credit Suisse's claims alone, and so the balance of all other

19 claims are unsecured and need to be treated as unsecured claims

20 under the plan.

21    In their opposition, Commerce argued that some of the

22 property that was taken down subsequent to the subordination

23 agreement that we attached to our claim objection were not

24 subject to that objection -- or sorry -- were not subject to

25 the original credit facility.

1     We have since provided in our reply subordination

2 agreements that relate to each and every one of the takedowns

3 that Commerce referred to.

4     That Commerce I believe attached four grant, sale, bargain

5 deeds and relating to various properties.  We have attached

6 three subordination agreements.

7     The first subordination agreement relates to the

8 property under the first deed that Commerce

9 attaches.

10     The second subordination agreement that we attached to our

11 reply relates to the second and third deed attached by

12 Commerce.

13     And the third subordination agreement that we have

14 attached relates to the fourth deed that Commerce has attached

15 reflecting that each and every one of the properties that may

16 have been subject to Commerce's lien were subordinated to

17 Credit Suisse's superior lien.

18          THE COURT:  Okay.

19          MR. SHERMAN:  Next, your Honor, we have addressed the

20 amount of Commerce's claim.  We've pointed out that the lot

21 premiums that Commerce would have been entitled to was

22 approximately $3,011,322.

23     We have also pointed out that the profit-participation

24 payments that Commerce would have been entitled to the

25 reorganized debtors actually overpaid the amount of $270,226.

1    Netting those out against each other, Commerce would be

2    entitled to an unsecured claim of $2,741,096.

3        Your Honor, these figures are supported by the declaration

4    of Justin Bono, and we've attached spreadsheets to the original

5    claim objection demonstrating how we arrived at these figures.

6        Ironically, your Honor, it turns out that the reorganized

7    debtors have been the best advocate for Commerce's claim.  The

8    claim was not filed on the official form.  It was filed a day

9    late.

10        It didn't provide any kind of an amount in the nearly two

11    years that have lapsed since the claim was filed.  There's been

12    no attempt to liquidate that amount.

13        The attachments to that claim that purportedly supported

14    the claim were unexecuted, unrecorded documents.  We have

15    provided the recorded and executed copies of those documents.

16        We have the declaration of Justin Bono saying, hey, we

17    agree that this is the amount that is owed, but that amount has

18    to be unsecured, and that amount has to be liquidated at this

19    time.

20        Your Honor will note that in the opposition there was no

21    counter to the amount that we have claimed to be owed.  There

22    was just further reservations of rights to challenge the

23    debtor's books and records.

24        The opposition also ignores the additional subordination

25    agreements that have been executed by Commerce and had to have

1    been recorded.

2        And then there's a little bit of the opposition,

3    your Honor, that attempts to improperly shift the burden of

4    proof to the reorganized debtors to demonstrate that there were

5    no material amendments to the credit facility or the burden to

6    the reorganized debtors to demonstrate that we didn't get

7    profits when we sold the homes.

8        Your Honor, I think that all of those issues are

9    appropriately addressed in the declaration of Justin Bono.

10   It's supported by the only evidence that has been presented by

11   any of the parties.

12       And on that basis, your Honor, I would request that

13   your Honor deem the Commerce claim unsecured and liquidate it

14   in the amount that I indicated earlier.

15           THE COURT:  All right.

16           MR. SHERMAN:  Thank you.

17           THE COURT:  Opposition.

18           MS. DiFILLIPPO:  Thank you, your Honor.  After

19   reviewing the objection and the reply with the attached

20   subordination agreements, each of the subordination agreements

21   apply to different parcels.

22       And Michael Buckley at my office who handled most of the

23   -- well, handled most of the -- all the subordination

24   agreements and purchase agreement, all those various documents,

25   went through.

1      And we could not confirm that a subordination agreement

2   applied to lot 15 which would be takedown No. 7 and takedown

3   No. 11 which applied to lots 1 through 4, 16 through 83,

4   91 through 171, 176 through 205, and parcel 6-A.

5      I think that alone creates some issues of fact here that

6   we need to --

7          THE COURT:  So how many --

8          MS. DiFILLIPPO:  -- fully --

9          THE COURT:  So are there some you concede you

10   subordinated?

11          MS. DiFILLIPPO:  Yes.  We did after we went through

12   and looked at the reply and looked through.  Mr. Buckley looked

13   through the various documents that we had, and we did see some

14   subordination agreements, all of them --

15          THE COURT:  Well, all these --

16          MS. DiFILLIPPO:  -- except for the ones --

17          THE COURT:  -- are recorded.

18          MS. DiFILLIPPO:  -- that I mentioned.

19          THE COURT:  Why didn't you do that before you filed

20   your original response?

21          MS. DiFILLIPPO:  Well, first of all, when Mr. Buckley

22   looked at the response, footnote No. -- I mean, sorry -- looked

23   at the objection, footnote No. 5 of the reorganized debtor said

24   that they would provide us their documentation, and he

25   contacted them to get this documentation to verify information.

1    They did not return his call.

2        And so at that time, Janet Chubb was in our office and

3    went over to a different office, and she's the one that filed

4    the proof of claim.

5        And Mr. Buckley went through the documentation, and he

6    entered the time and did not see that all of the subordination

7    agreements.  He went through as much as he could to see which

8    ones, and it was his understanding --

9            THE COURT:  So --

10           MS. DiFILLIPPO:  -- at the time that --

11           THE COURT:  Okay.  Sorry.

12           MS. DiFILLIPPO:  -- sorry.

13           THE COURT:  Go ahead.

14           MS. DiFILLIPPO:  -- go ahead --

15           THE COURT:  No.  My fault.

16           MS. DiFILLIPPO:  -- Tuscany III and Tuscany IV

17   weren't applicable, and that does apply to the takedown No. 7

18   and takedown No. 11, the various lots that I mentioned.

19           THE COURT:  So you concede those do apply or don't?

20   I'm sorry.  Do apply or don't apply?  You are subordinated to

21   -- you agree you're subordinated to which ones again?  I

22   apologize.

23           MS. DiFILLIPPO:  I think it would be better to say we

24   don't agree to --

25           THE COURT:  Okay.

```
1            MS. DiFILLIPPO:  -- the takedown No. 7 and takedown
2    No. 11 --
3            THE COURT:  Okay.
4            MS. DiFILLIPPO:  -- because there's a lot of other
5    ones.  It would be a lot longer for me to go through,
6    your Honor.
7            THE COURT:  Okay.  So just 7 and 11.
8            MS. DiFILLIPPO:  Yes.
9            THE COURT:  And how have you joined -- it seems to me
10   you're going to have to join in Credit Suisse if you're going
11   to contend that you're ahead of them.
12           MS. DiFILLIPPO:  I think that's something we need to
13   under -- what I would request, your Honor, under
14   Local Rule 3007 since there are factual issues here that we
15   need to address this and continue this hearing to go through
16   those factual issues.  We --
17           THE COURT:  Well, it's not factual.  I mean, the
18   point is they either do match or they don't match, and I think
19   what you're telling me is you just haven't had time to
20   double-check to see if they match.  I'm not going to waste my
21   time with a trial if you just haven't had time to match them
22   up.
23           MS. DiFILLIPPO:  That's one issue, your Honor.  And
24   the other issue with respect to their numbers, we were not able
25   to verify their books and records.
```

1    They said that in their footnote that they would provide

2    those us to verify.  They did not, your Honor, do that, so we

3    have not -- the numbers before November of 2005, they owed us

4    the lot premiums and the profit participation at the time of

5    closing with third parties, so we would not have that

6    information.

7    After November 2005, we did receive the lot premiums from

8    them at the time of our closing, but the profit participation

9    was not provided until the closing of the third parties.

10    Again, we would not receive that information.  That

11    would be with the debtor, and so we did not have the

12    information.

13    Mr. Buckley tried to contact them pursuant to their

14    footnote saying they would make that available to us, and they

15    did not provide that --

16              THE COURT:  Well, you could have done --

17              MS. DiFILLIPPO:  -- to us.

18              THE COURT:  -- a discovery request.  It's a contested

19    proceeding.  You could have done a discovery request.  Well,

20    I'm going to continue this.  Obviously, you're not ready for

21    this today, so I'll continue it.

22    You're going to have to supplement your reply to indicate

23    exactly why you say 7 and 11 isn't subject to the subordination

24    agreement.  And if you think you're not, then you're going to

25    have to join Credit Suisse, then --

```
 1          MS. DiFILLIPPO:  We will do that, your Honor.

 2          THE COURT:  -- because then it's a title issue.

 3          MR. SHERMAN:  Yeah.  Your Honor, I have just one

 4   other comment.  I know that I personally was not contacted by

 5   Mr. Buckley.

 6       I know that once I got the opposition, and I didn't feel

 7   that it was appropriate for a hearing given the fact that these

 8   are executed, recorded documents.  We can work it out.

 9       I had asked that we have some kind of a meeting to decide

10   whether or not it's appropriate to go forward, and I never had

11   that opportunity.

12       I would say, however, that the burden of proof is not on

13   the reorganized debtors to prove Commerce's claim.  Commerce

14   filed the claim almost two years ago, and the --

15          THE COURT:  I agree.  I mean --

16          MR. SHERMAN:  The effective date was a year ago,

17   your Honor.

18          THE COURT:  Right.  I agree.  So what's happened is

19   the prior counsel apparently lost track of the case.  You've

20   got it now.  Finish it.  You've got 60 days to finish it up.

21          MR. SHERMAN:  I have one final point, your Honor, and

22   that is that with respect to all the properties that are at

23   least listed in the opposition this morning I went over them

24   and matched the legal description to the subordination

25   agreements.
```

```
1          And I'm fairly certain that each and every one of the

2    legal descriptions in the subordination agreements covers a

3    corresponding legal description --

4               THE COURT:  Well, and --

5               MR. SHERMAN:  -- as to those properties.

6               THE COURT:  And you're going to have to get serious

7    this time.  I mean, you can't just do a cursory review.  I

8    mean, you've got to -- if you file an affidavit saying they

9    don't match, it's under Rule 11.

10              MS. DiFILLIPPO:  I understand that, your Honor.

11              THE COURT:  So make sure.

12              MS. DiFILLIPPO:  I --

13              THE COURT:  You know, I know --

14              MS. DiFILLIPPO:  And --

15              THE COURT:  -- that's --

16              MS. DiFILLIPPO:  And if we verify they are, then we

17   know that, but Mr. Buckley told me he went through these

18   personally himself, and that's what he came up with, and he

19   gave me a chart of which ones.

20              THE COURT:  Well, then he'll have to supply the

21   affidavit --

22              MS. DiFILLIPPO:  Right.

23              THE COURT:  -- next time.

24              MS. DiFILLIPPO:  And I have instructed him --

25              THE COURT:  So let's continue --
```

```
1            MS. DiFILLIPPO:  -- on that.

2            THE COURT:  -- this out 60 days to give you plenty of

3    time to do your due-diligence discovery.  And, again, if you

4    think that you're in first position, you're going to have to

5    join Credit Suisse.

6            MS. DiFILLIPPO:  Understand, your Honor.

7            THE COURT:  Do you want to go to July 19th, then?

8            MS. DiFILLIPPO:  Thank you, your Honor.

9            THE COURT:  Okay.

10            MR. SHERMAN:  Thank you, your Honor.

11            THE CLERK:  Did you want this at 9:30, also,

12    your Honor?

13            THE COURT:  Sure.  We'll make another Rhodes day.

14        And if you want a settlement conference in the meantime --

15    I don't think you need that.  That takes more effort than just

16    meeting.

17        Now that you know who the parties are that are dealing

18    with this case, call each other now that you know who's

19    responsible for the case --

20            MR. SHERMAN:  Agreed, your Honor.

21            THE COURT:  -- I mean, because you just got involved,

22    too, didn't you, in this one, Mr. Sherman?  You weren't

23    involved in this before, were you?

24            MR. SHERMAN:  That's correct.  I've recently

25    joined --
```

```
1              THE COURT:  That's what I thought.

2              MR. SHERMAN:  -- Kolesar & Leatham.

3              THE COURT:  So we got new people all the way around,

4    so all right.

5         Thank you.

6              MR. SHERMAN:  Thank you --

7              MS. DiFILLIPPO:  Thank you --

8              MR. SHERMAN:  -- your Honor.

9              MS. DiFILLIPPO:  -- your Honor.

10             THE COURT:  Um-h'm.  Okay.

11             THE CLERK:  All rise.

12        (Court concluded at 02:55:02 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      I certify that the foregoing is a correct transcript

2    from the electronic sound recording of the proceedings in

3    the above-entitled matter.

4

5

6    /s/ Lisa L. Cline                    07/13/11

7    _____          _____
     Lisa L. Cline, Transcriptionist         Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25