Kevin N. Anderson
Nevada Bar No. 4512
**FABIAN & CLENDENIN**
215 South State Street, Suite 1200
Salt Lake City, Utah 84111-2323
Telephone:   801-531-8900
Facsimile:    801-596-2814
Email: kanderson@fabianlaw.com

*Counsel for James M. Rhodes*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,<br><br>                Reorganized Debtors<br><br>☒ Affects all Debtors<br><br>☐ Affects the following Debtors | Case No.: 09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>**JAMES M. RHODES' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO REORGANIZED DEBTORS' OBJECTION TO THE GREENWAY PARTNERS CLAIM FOUND IN PROOF OF CLAIM NO. 814-33 AND NOTICE OF AMENDMENT OF SCHEDULES OF ASSETS AND LIABILITIES**<br><br>Hearing Date:   August 2, 2011<br>Hearing Time:  9:30 a.m.<br>Place:              Courtroom 1 |

James M. Rhodes ("**Rhodes**"), through counsel, respectfully submits this *Supplemental Memorandum of Law in Support of His Opposition to Reorganized Debtors' Objection to the Greenway Partners Claim Found in Proof of Claim No. 814-33 and Notice of Amendment of Schedules of Assets and Liabilities*. In support hereof, Rhodes states as follows:

**PROCEDURAL BACKGROUND**

1. On either March 31, 2009 or April 1, 2009 (collectively, the "**Petition Date**"), each of the debtors (collectively, the "**Debtors**") commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.

2. On April 30, 2009, each of the Debtors filed its schedules of assets and liabilities (the "**Schedules**"). The Schedules were subsequently amended on July 2, 2009 and again on January 20, 2010 (the "**Amended Schedules**").

3. The Schedules and Amended Schedules reflect that Rhodes and certain of his affiliated entities are scheduled as having the following claims against the Debtors: (1) Rhodes Home Arizona Claim ($151,999.01); (2) Pinnacle Grading Claim ($557,302.09); and (3) Heritage Land Company Claim ($167,901.86) (collectively, the "**Scheduled Claims**").

4. The Scheduled Claims were scheduled under both the Schedules and Amended Schedules as undisputed, non-contingent and liquidated general unsecured claims and, therefore, no proofs of claim were filed.[1]

5. On July 17, 2009, Rhodes filed proof of claim No. 814-33 (the "**Proof of Claim**") seeking $10,598,000 for: (i) the reimbursement of taxes (the "**Taxes**") paid by Rhodes for the 2006 tax year in the amount of $9,729,151 (the "**Tax Claim**"); and (ii) $868,849 advanced to Greenway Partners, LLC (the "**Greenway Partners Claim**").

6. On May 27, 2010, the above-captioned reorganized debtors (collectively, the "**Reorganized Debtors**") filed an objection (the "**Objection**") in the Bankruptcy Case to the Proof of Claim. Additionally, the Reorganized Debtors indicated that contemporaneously with

---

[1] Pursuant to Rule 3003(b)(1) of the Federal Rules of Bankruptcy Procedure, "[t]he schedule of liabilities filed pursuant to § 521(1) of the Code shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated." (Emphasis added). This carries out the provisions of section 1111(a) of the Code. A claim deemed filed by section 1111(a) pursuant to Rule 3003 is accorded the same evidentiary effect as is one that is actually filed by the creditor. *See* Rule 3001(f). Rule 3003(b)(1) further provides that, except as provided by subdivision (c)(2) of the rule, creditors and equity holders need not file claims.

1   the filing of their Objection they were amending their schedules and statements to remove the
2   Scheduled Claims, post-confirmation and post-effective date.

3       7.    On June 17, 2010, Rhodes filed an opposition (the "**Opposition**") to the Objection
4   in the Bankruptcy Case.

5       8.    On or about August 24, 2010, the Court held a status conference during which the
6   Parties agreed that this matter should be bifurcated with respect to: (1) Rhodes' entitlement to the
7   Tax Claim; and (2) discovery, if necessary, to support the amount of the Tax Claim, allowance of
8   the Greenway Partners Claim, and all issues regarding the Scheduled Claims.

9       9.    On November 4, 2010, the Court held a hearing on the Objection to the Tax Claim.

10       10.    On November 16, 2010, the Court entered its *Order Sustaining Reorganized*
11   *Debtors' Objection to James Rhodes' Entitlement to the Tax Claim Found in Proof of Claim No.*
12   *814-33* (the "**Order**").

13       11.    On November 30, 2010, Rhodes filed: (1) *James Rhodes' Notice of Appeal* from
14   the Order; and (2) *James Rhodes' Statement of Election to Appeal to the United States District*
15   *Court for the District of Nevada* (collectively, the "**Appeal**").

16       12.    On April 14, 2011, Rhodes and the Reorganized Debtors filed a *Stipulation and*
17   *Order Dismissing Appeal Without Prejudice*, wherein the parties stipulated and agreed that the
18   Order from which Rhodes appealed is not a final, appealable order.

19       13.    Thereafter, on April 18, 2011, the United States District Court for the District of
20   Nevada entered an order dismissing the Appeal without prejudice. By dismissal of the Appeal,
21   Rhodes shall not be deemed to have waived the right to timely file a new notice of appeal with
22   respect to the Tax Claim upon the issuance by this Court of a final, appealable order, and
23   consistent with applicable law.

24       14.    On April 19, 2011, this Court held a status hearing regarding the status of the
25   Parties' settlement discussions related to the Greenway Partners Claim and the Scheduled Claims
26   (the "**Remaining Claims**").

15. On July 11, 2011, the parties filed an *Amended Stipulation and Order Regarding Briefing Schedule*, wherein the parties agreed to file their opening briefs regarding the Remaining Claims on or before July 19, 2011 and reply briefs on or before July 26, 2011.

16. This Court reserved August 2, 2011, at 9:30 a.m. (PDT) as the date for a hearing on the Remaining Claims.[2]

## FACTS RELEVANT TO THE REMAINING CLAIMS

17. In or around late 2008 prior to the filing of the Chapter 11 Cases, accusations by Gary Fuchs asserting irregularities in the Debtors' books and records (the "**Books and Records**") led to the commission of an independent review of the Debtors' record-keeping by Main Amundson and Associates, CPAs ("**Main Amundson**"). Main Amundson's report dated December 31, 2008 (the "**Main Amundson Report**") found no material irregularities in the Debtors' record keeping. *See Declaration of James M. Rhodes in Support of Opposition to Reorganized Debtors' Objection to James Rhodes' Proof of Claim No. 814-33 and Notice of Amendment of Schedules of Assets and Liabilities*, ¶ 4, dated June 17, 2010 [Doc. No. 1177] (the "**Rhodes Declaration**") (attached hereto as "**Exhibit A**"). A true and correct copy of the Main Amundson Report is attached to the Rhodes Declaration as Exhibit 1 and is incorporated for all purposes herein by this reference.

**The Greenway Partners Claim**

18. Greenway Partners is a Nevada limited liability company that is owned by Frederick Chin and James Coyne. (Rhodes Declaration, ¶ 8; *see also* relevant pages of the Main Amundson Report relating to the Greenway Partners Claim attached hereto as "**Exhibit B**").

19. As set forth in the Main Amundson Report, Rhodes personally paid a portion of the salaries owed to Chin, Coyne and another employee named Chris Stephens at the direction of

---

[2] On June 2, 2011, Rhodes filed a *Motion to Reconsider Order Sustaining Reorganized Debtors' Objection to James Rhodes' Entitlement to the Tax Claim Found in Proof of Claim No. 814-33* seeking to establish that Rhodes had an enforceable right to reimbursement of the taxes that he paid. A hearing on the Motion to Reconsider is also scheduled for August 2, 2011, at 10:30 a.m. (PDT).

the Debtors in order to avoid a disruptive conflict in the offices related to the amount of compensation.  (*Id.*; Main Amundson Report at page 4).

20. Chin was employed as Chief Operating Officer by the Debtors pre-petition from Spring 2004 through Spring 2007.  Coyne was employed by the Debtors pre-petition from Spring 2004 through late Fall 2007.  Stephens was employed by the Debtors pre-petition from mid-2006 through mid-2008.  (Main Amundson Report at page 4).

21. Rhodes was directed by the Debtors to make some of these payments to Chin's and Coyne's company, Greenway Partners.  According to the Main Amundson Report, "[t]he 'outside' compensation was comprised of direct payments to Chin, Coyne and Stephens from, and in the amounts of, (a) a personal UBS investment account ($1,825,000); (b) a credit line with First National Bank established specifically for this purpose ($850,000); and (c) a mortgage granted on the 'Spirit Underground' building ($500,000)."  (*Id.*)

**The Scheduled Claims**

22. The amount of $151,999.01 scheduled by Rhodes Homes Arizona is a valid, existing claim owed to Rhodes as reimbursement for additional compensation to Chris Stephens and Jacob Hanson and is set forth in the pre-petition books and records of Rhodes Home Arizona. *See Declaration of Paul D. Huygens in Support of James M. Rhodes Supplemental Memorandum of Law in Support of His Opposition to Reorganized Debtors' Objection to the Greenway Partners Claim Found in Proof of Claim No. 814-33 and Notice of Amendment of Schedules of Assets and Liabilities*, ¶ 5 ("**Huygens Declaration**").  True and correct copies of the Debtors' pre-petition books and records are attached to the Huygens Declaration and attached hereto as "**Exhibit C**."

23. The amount of $557,302.09 scheduled by Pinnacle Grading is also a valid, existing claim owed to Pinnacle Equipment for equipment rented by Pinnacle Grading. (Rhodes Declaration, ¶ 10).  As summarized in the Main Amundson Report, an operating lease was established at below-market rates between Pinnacle Grading and Pinnacle Equipment for

1  equipment used during construction on the Pravada Arizona Project. The equipment maintenance summary log noted equipment usage of over 50% in excess of the normal usage for a standard operating lease with no corresponding increase in lease payments for the extra-long hours the equipment was used. Main Amundson, through surveying the equipment leasing market, concluded this arrangement was unduly beneficial to the Debtors. (Relevant pages of the Main Amundson Report relating to the Pinnacle Grading Claim are attached hereto as "**Exhibit D**").

24. The amount of $167,901.86 scheduled by Heritage Land Company, LLC as owed to Sedora Holdings, is a valid, existing claim for litigation expenses related to the defense of the Debtors in the case styled *Deutsche Bank Securities, Inc. v. James M. Rhodes, Sagebrush Enterprises, Inc., The Rhodes Companies, LLC, Heritage Land Company, LLC, Rhodes Design and Development Corp. and Rhodes Ranch General Partnership*, case no. 1:06-cv-00413-DC (the "**New York Litigation**"). Rhodes retained the law firm of Stewart Occhipinti, LLP to defend all the defendants in the New York Litigation, which ultimately settled. (Rhodes Declaration, ¶ 11).

25. The scheduled claim for litigation expenses reflects payments made by Sedora Holdings, a Rhodes entity outside the credit facility and a non-party to the New York Litigation, which was recorded in the Debtors' pre-petition Books and Records. (Huygens Declaration, ¶ 7). True and correct copies of the Debtors' pre-petition books and records are attached to the Huygens Declaration and attached hereto as "**Exhibit E**." On Page 2 of Exhibit E, the first eight payments beginning with $100,000 and ending with $6,375.12 were made by the guarantors of the Credit Agreement (*i.e.,* the first $195,208.26). The remaining payments were made by Rhodes and his entities (*i.e.,* $206,927.16). Of the $206,927.16, Rhodes was reimbursed for $39,025.30, leaving a remaining balance owing to Rhodes of $167,901.86.

26. Furthermore, the Debtors acknowledged the existence of the New York Litigation as set forth in the Credit Agreement at 4.19. (Huygens Declaration, ¶ 8). Relevant pages of the Credit Agreement are attached to the Huygens Declaration and attached hereto as "**Exhibit F**."

# ARGUMENT

## I. THE GREENWAY PARTNERS CLAIM SHOULD BE ALLOWED AND THE REORGANIZED DEBTORS SHOULD NOT BE PERMITTED TO AMEND THE SCHEDULED CLAIMS.

The remaining issues in this case essentially involve whether the Greenway Partners Claim and the Scheduled Claims constitute "claims" within the meaning section 101(5) of title 11 of the U. S. Code. Bankruptcy Code section 101(5) defines the term "claim" as any "right to payment," regardless of whether the right is reduced to judgment, and regardless of whether the right is legal, equitable, liquidated, unliquidated, matured, unmatured, contingent, fixed, disputed, undisputed, secured or unsecured. As noted by *Collier on Bankruptcy,* "[t]he concept of a 'claim' is thus decidedly broad, and the definition is intended to encompass virtually <u>any type of obligation reducible to some monetary equivalence</u>." COLLIER ON BANKRUPTCY ¶ 553.02[1][a] at 553-12 (Alan N. Resnick & Henry J. Somme eds., 16th ed.) (emphasis added). Indeed, courts have consistently reiterated that Congress intended the term "claim" to have the broadest possible meaning under the Bankruptcy Code. *See, e.g., F.C.C. v. Nextwave Personal Commc'ns Inc.,* 537 U.S. 293, 302 (2003) (citing *Johnson v. Home State Bank,* 501 U.S. 78, 83 (1991)); *In re Sherman*, 491 F.3d 948, 958 (9th Cir. 2007).

The facts are not in dispute. Regarding the Greenway Partners Claim, Rhodes personally paid a portion of the salaries owed to Frederick Chin, James Coyne, and Chris Stephens, all of whom were employees of the Debtors pre-petition, in order to avoid a disruptive conflict in the offices related to the amount of compensation negotiated. Rhodes was directed to make some of these payments to Mr. Chin's and Mr. Coyne's company, Greenway Partners. Concerning the $151,999.01 scheduled by Rhodes Homes Arizona, Rhodes was further directed to make additional compensation payments to Chris Stephens, as set forth in the pre-petition books and records of Rhodes Home Arizona, attached hereto. Rhodes made these payments at the direction

1  of the Debtors with the full understanding that he would be reimbursed by the Debtors.
2  Accordingly, Rhodes has established a right to payment within the meaning of Section 101(5).[3]

3  Similarly, the amount of $557,302.09 scheduled by Pinnacle Grading is also an
4  independently verified, valid, existing claim owed to Pinnacle Equipment for equipment rented
5  by Pinnacle Grading. As summarized in the Main Amundson Report, an operating lease was
6  established at below-market rates between Pinnacle Grading and Pinnacle Equipment for
7  equipment used during construction on the Pravada Project in Arizona. The equipment
8  maintenance summary log noted equipment usage of over 50% in excess of normal usage for a
9  standard operating lease with no corresponding increase in lease payments for the extra hours the
10 equipment was used. Main Amundson, through surveying the equipment leasing market,
11 concluded this arrangement was unduly beneficial to the Debtors.

12  Finally, the amount of $167,901.86 scheduled by Heritage Land Company, LLC as owed
13 to Sedora Holdings, is a valid, existing claim for litigation expenses related to the New York

---

[3] At the very least, Rhodes has an equitable right to payment under Section 101(5). Rhodes' right to payment is enforceable under the doctrine of promissory estoppel, which embraces the concept of detrimental reliance. *See Vancheri v. GNLV Corp.*, 777 P.2d 366, 369 (Nev. 1989); *Am. Sav. & Loan Ass'n v. Stanton-Cudahy Lumber Co.*, 455 P.2d 39, 41 (Nev. 1969) (promissory estoppel provides that "reliance which is foreseeable, reasonable, and serious will require enforcement if injustice cannot otherwise be avoided."). The Restatement (Second) of Contracts § 90, which has been adopted by the Supreme Court of Nevada, provides:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Id.* It is well settled that the requisite "promise" can be shown by a party's course of conduct if it creates a sufficient expectation in the promissee. *See, e.g., Vancheri*, 777 P.2d at 369; *In re Golconda Farms*, 12 B.R. 897, 900 (Bankr. D. Nev. 1981) (noting that reliance on course of conduct can support claim for promissory estoppel.); *Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg, Inc.*, 882 F. Supp. 713, 725 (N.D. Ill. 1995) (Finding that a party's course of conduct can establish the requisite promise and specifically noting that the promise need not be express, but "may be inferred from conduct and words.") (citation omitted).

Similarly, Rhodes has a right to payment under the closely related doctrine of equitable estoppel. The Supreme Court of Nevada has adopted the following as the elements for a claim under equitable estoppel: (1) the party to the estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppels must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped. *Harrison v. Living Trust v. Nevada State Bank,* 112 P.3d 1058, 1062 (Nev. 2005).

8

1 Litigation. Rhodes retained the law firm of Stewart Occhipinti, LLP to defend all the defendants in the New York Litigation, which ultimately settled. The Scheduled Claim for litigation expenses reflects payments made by Sedora Holdings, a Rhodes entity outside the credit facility and a non-party to the New York Litigation. Furthermore, the Debtors acknowledged the existence of the New York Litigation as set forth in the Credit Agreement at 4.19. Indeed, the New York Litigation related solely to a lawsuit stemming from the Debtors exclusivity agreement with Deutsche Bank and the Debtors' need for refinancing. Other than the payments made by Sedora Holdings, all payments were made by the Debtors or, if paid by a non-debtor entity, were immediately reimbursed as set forth in the Debtors' pre-petition books and records, attached hereto.

In short, it is undisputed that the Reorganized Debtors have directly received benefit from the Pinnacle Grading Claim and the Heritage Land Company Claim. Allowing the Debtors to retain the benefit of these claims would unjustly enrich Debtors at the expense of Rhodes.[4]

**WHEREFORE**, for the reasons stated above, Rhodes respectfully requests that this Court enter an order (i) denying the Reorganized Debtors' objection to the Greenway Partners Claim, and (ii) disallowing the Reorganized Debtors' amendments to the Scheduled Claims.

---

[4] Section 101(5) clearly defines a "claim" as any "equitable" right to payment. Under Nevada law, unjust enrichment is an equitable remedy and is "used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." *Leasepartners Corp. v. Robert L. Brooks Trust,* 942 P.2d 182, 187 (Nev. 1997).

Under Nevada Law, "[u]njust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." *Unionamerica Mortgage and Equity Trust v. McDonald,* 97 Nev. 210, 626 P.2d 1272, 1273 (1981). "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nev. Indus. Dev., Inc. v. Benedetti,* 103 Nev. 360, 741 P.2d 802, 804 n 2 (1987); *see Coury v. Robison,* 115 Nev. 84, 976 P.2d 518, 521 (1999). In Nevada, "the terms 'restitution' and 'unjust enrichment' are the modern counterparts of the doctrine of quasi-contract." *Unionamerica Mortgage,* 626 P.2d at 1273. When a defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, a contract is implied under Nevada law once the plaintiff establishes three essential elements: "'[A] benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Leasepartners Corp. v. Robert L. Brooks Trust*, 113 Nev. 747, 942 P.2d 182, 187 (1997) (quoting *Unionamerica Mortgage,* 626 P.2d at 1273).

1  DATED this 19th day of July, 2011.

/s/ Kevin N. Anderson
Kevin N. Anderson
FABIAN & CLENDENIN
Attorneys for James M. Rhodes