Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, NV 89145
Telephone:  702.362.7800
Facsimile:  702.362.9472
E-Mail:     nleatham@klnevada.com

Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
Meredith A. Lahaie (NY Bar No. 4518023)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone:  212.872.1000
Facsimile:  212.872.1002

E-Mail:     pdublin@akingump.com
            aqureshi@akingump.com
            mlahaie@akingump.com

*Counsel for the Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: | Case No. 09-14814-LBR |
| | (JointlyAdministered) |
| **THE RHODES COMPANIES, LLC,** | |
| aka "Rhodes Homes," *et al.*, | Chapter 11 |
| Reorganized Debtors.[1] | |

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

| | |
|---|---|
| Affects:<br>☒ **All Debtors**<br>☐ **Affects the following Debtor(s)** | **REORGANIZED DEBTORS' OBJECTION TO RHODES' GREENWAY PARTNERS CLAIM AND NOTICE OF AMENDMENT OF SCHEDULES OF ASSETS AND LIABILITIES** |

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors")[2], by and through their undersigned counsel, hereby object (the "Objection") pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to the Greenway Partners Claim (as defined below) sought by James Rhodes ("Rhodes" and, together with the Reorganized Debtors, the "Parties") in connection with the proof of claim filed by Rhodes on July 17, 2009. In addition, by this Objection, the Reorganized Debtors seek authority to amend their schedules of assets and liabilities (the "Schedules") to remove certain invalid claims included in the Schedules by Rhodes (the "Scheduled Claims" and, together with the Greenway Partners Claim, the "Remaining Claims") or, in the alternative, to object to the Scheduled Claims. In support of this Objection, the Reorganized Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. After months of negotiations and several rounds of briefing, this Court must now consider whether Rhodes is entitled to be reimbursed for amounts advanced to satisfy undocumented employment obligations allegedly owed to former Debtor employees. To

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Reorganized Debtors' Objection to James Rhodes' Proof of Claim No. 814-33 and Notice of Amendment of Schedules of Assets and Liabilities* (Docket No. 1149) and/or the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, *et al.* (the "Plan") or the Original Objection (as defined below), as applicable.

2

date, however, Rhodes has not produced any documents or other evidence in support of the Greenway Partners Claim that would substantiate an obligation owing from the Debtor Entities to the former employees or, more importantly, any obligation owing from the Debtor Entities to Rhodes himself that would entitle him to payment for any such amounts. Indeed, Rhodes' own submissions are inconsistent as to how much money Rhodes now seeks—a fact likely attributable to Rhodes' inability to produce documents in support of the amount allegedly due. Notwithstanding two mediation sessions and numerous discussions between the Parties, the Parties are no closer to resolving the allowability of the Greenway Partners Claim for the simple reason that Rhodes has not and cannot demonstrate a legal entitlement to be reimbursed for any amount of money advanced to the former employees. The Greenway Partners Claim should therefore be expunged in its entirety.

2. Similarly, the Reorganized Debtors seek to amend their Schedules to expunge three Scheduled Claims—each of which was recorded in the Debtors' books and records at a time when the Debtors were controlled by Rhodes—because Rhodes has not alleged any legal basis that would entitle him to be reimbursed for the amounts at issue. Moreover, as described below, Rhodes has not produced any evidence that would support an obligation on behalf of the Reorganized Debtors to pay Rhodes any amounts on account of the Scheduled Claims. Accordingly, the Reorganized Debtors intend to amend their Schedules to remove the Scheduled Claims or, in the alternative, by this Objection the Reorganized Debtors object to the Scheduled Claims and request that they be disallowed in full.

## **JURISDICTION**

3. This Court has jurisdiction over the Objection under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 502 and Bankruptcy Rule 3007.

## BACKGROUND AND PROCEDURAL HISTORY

**A.    General Background**

6. On either March 31, 2009 or April 1, 2009 (collectively, the "Petition Date"), each of the debtors (collectively, the "Debtors") commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

7. On April 13, 2009, the Court issued a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines establishing August 5, 2009 as the deadline for all creditors other than governmental units to file proofs of claim asserting claims in the Chapter 11 Cases.

8. On April 30, 2009, each of the Debtors filed the Schedules, which were subsequently amended on July 2, 2009 and again on January 20, 2010 to include the Scheduled Claims.  *See* Rhodes Homes Arizona Docket Nos. 12, 18 and 33; Pinnacle Grading Docket Nos. 12, 17 and 36; Heritage Docket Nos. 136 and 142.

9. On July 17, 2009, Rhodes filed a proof of claim (the "Proof of Claim") seeking, among other things, $868,849 allegedly advanced to Greenway Partners, LLC (the "Greenway Partners Claim").[3]

10. On March 12, 2010, the Court entered an order confirming the Plan. Pursuant to the Plan, the deadline for the Reorganized Debtors to object to claims asserted by Rhodes and/or certain affiliated entities or individuals was 60 days from the effective

---

[3] The Proof of Claim is attached hereto as Exhibit A.

4

date (the "Effective Date") of the Plan.[4] On April 1, 2010, the Effective Date of the Plan occurred. Accordingly, the deadline to object to the Proof of Claim was May 31, 2010.

11. On May 27, 2010, the Reorganized Debtors filed an objection to the Proof of Claim (the "Original Objection"). By the Original Objection, the Reorganized Debtors also indicated that they intended to amend the Schedules to remove the Scheduled Claims.

12. On June 17, 2010, Rhodes filed an opposition to the Original Objection (the "Original Opposition"). Shortly thereafter, on August 24, 2010, this Court held a status conference during which the Parties agreed that the matter should be bifurcated with respect to: (1) Rhodes' entitlement to the Tax Claim (as defined in the Original Objection); and (2) all issues regarding the Remaining Claims.

13. On November 4, 2010, this Court held a hearing on the Reorganized Debtors' objection to the Tax Claim and subsequently entered its *Order Sustaining Reorganized Debtors' Objection to James Rhodes' Entitlement to the Tax Claim Found in Proof of Claim No. 814-33* on November 16, 2010.

14. On April 19, 2011, this Court held a status hearing regarding the status of settlement discussions between the Parties as to the Remaining Claims. At that time, the Parties informed the Court that they had attended a settlement conference with the Honorable Judge Zive on April 7, 2011 in an effort to resolve the Parties' outstanding disputes as to both the Tax Claim as well as the Remaining Claims, but that the Parties were unable to reach a resolution. The Parties also informed the Court that an additional settlement conference with the Honorable Judge Zive had been scheduled for July 7, 2011. The Parties were unable to reach a resolution with respect to the Tax Claim and the

---

[4] The 60-day deadline applies to objections to "Rhodes Entities Claims" as that term is defined in the Plan.

5

Remaining Claims at the July 7, 2011 settlement conference.

15.     Pursuant to a stipulation agreed to by the Parties and filed on July 11, 2011 (the "Stipulation"), the Parties agreed to file opening briefs regarding the Remaining Claims on or before July 19, 2011 and to file reply briefs on or before July 26, 2011 for a hearing on the Remaining Claims scheduled to take place on August 2, 2011.

16.     Consistent with the foregoing, the Reorganized Debtors are filing the Objection with respect to the Remaining Claims.

**B.     The Greenway Partners Claims**

17.     Pursuant to the Greenway Partners Claim, Rhodes asserts a claim for monies he advanced to Greenway Partners, LLC ("Greenway") on behalf of three individuals—Frederick Chin ("Chin"), James Coyne ("Coyne"), and Christopher Stephens ("Stephens" and, collectively with Chin and Coyne, the "Greenway Employees")—all of whom had briefly been employed by the Debtors prior to the Petition Date. According to Rhodes, these advances represented a portion of the salaries owed to the Greenway Employees during their employment with the Debtors. To date, however, Rhodes has not provided any evidence that would establish (i) any obligation owing by the Debtors to reimburse Rhodes for payments made to Greenway on the Greenway Employees' behalf or (ii) that the Debtors benefitted from services provided by Greenway.

**C.     The Scheduled Claims**

18.     In addition to the Greenway Partners Claim, the Schedules reflect that Rhodes and certain of his affiliated entities are incorrectly scheduled as having a limited number of claims against the Debtors for which no proofs of claim were filed. These Scheduled Claims include the following:

| Party Holding Claim | Entity Liable on Claim | Amount of Claim | Basis for Claim |
|---|---|---|---|
| Rhodes (*See* Rhodes Homes Arizona Docket No. 33, pg. 3) | Rhodes Homes Arizona | $151,999.01 | Compensation |
| Pinnacle Equipment (*See* Pinnacle Grading Docket No. 17, pg. 19) | Pinnacle Grading | $557,302.09 | Equipment Rental Payments |
| Sedora (*See* Heritage Land Company Docket No. 142, pg. 9) | Heritage Land Company | $167,901.86 | Litigation Expenses Arising out of Litigation with Deutsche Bank Securities, Inc. |

19. As discussed in greater detail below, Rhodes has not provided any documentation establishing the validity of these claims. As a result, the Reorganized Debtors are seeking to amend the Schedules to exclude the Scheduled Claims.

## **OBJECTION**

20. By the Objection, the Reorganized Debtors seek entry of an order, pursuant to Bankruptcy Code section 502(b) and Bankruptcy Rule 3007, disallowing and expunging the Greenway Partners Claim in full. The Greenway Partners Claim should be disallowed because Rhodes has not alleged sufficient facts to establish that he has a valid claim. In addition, the Reorganized Debtors intend to amend the Schedules in order to remove the Scheduled Claims for the reasons set forth below and request that such Scheduled Claims be disallowed in their entirety, if, for any reason, the Court were to determine that the Reorganized Debtors are not authorized to amend their Schedules to remove the Scheduled Claims.

**I.    The Greenway Partners Claim should be Disallowed Because Rhodes has Failed to Allege Sufficient Facts to Establish a Valid Claim**

21. In their Original Objection, the Reorganized Debtors objected to the

Greenway Partners Claim on the basis that the Proof of Claim was devoid of "any information regarding the nature, extent or validity of the Greenway Partners Claim." Original Obj. at 18, ¶ 34. Specifically, the Reorganized Debtors stated that the Proof of Claim provided no insight as to: "(i) the identity of Greenway Partners, (ii) the reasons for Rhodes' alleged advancement of monies to Greenway Partners, (iii) the source of the monies that were allegedly advanced, (iv) *the basis for Rhodes' belief that the Debtors are obligated to him on account of the monies that he allegedly advanced*, (v) the amount of money allegedly advanced to Greenway Partners by Rhodes and (vi) the timing of the transaction." *Id*. (emphasis added).

22.     In his Original Opposition—which devoted only a single paragraph to the Greenway Partners Claim—Rhodes provided several pieces of additional information. First, Rhodes stated that he personally transferred money to Greenway Partners in order to pay a portion of the salaries owed to Greenway Employees, all of whom had briefly been employed by the Debtors prior to the Petition Date. Original Opp'n at 4, ¶ 10. Second, Rhodes explained that the transfers were structured to avoid conflict in the Debtors' offices over the amounts paid to these individuals. *Id*. Third, Rhodes provided the source of the monies allegedly advanced, and the amounts that were paid to each individual. *Id*. Absent from Rhodes' response, however, was any additional information or evidence that would have established the most critical factor in determining whether or not Rhodes is entitled to the Greenway Partners Claim: whether the Reorganized Debtors are obligated to reimburse Rhodes for the payments made to Greenway. *See F.C.C. v. NextWave Personal Commc'ns, Inc.*, 537 U.S. 293, 294 (2003) (noting that "[t]he plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation").

8

23. Indeed, Rhodes does not provide any documentation—including employment agreements between any one of the Greenway Employees and Rhodes—that would indicate that the Parties not only contemplated that Rhodes would personally make payments to the Greenway Employees as part of their compensation for services provided to the Debtors, but that Rhodes would be reimbursed for such payments. There is also no documentation indicating that Rhodes was even obligated to make the payments in the first place, either on behalf of the Debtors or otherwise. Rhodes has established nothing more than the fact that he made a voluntary and independent decision to pay a portion of the Greenway Employees' salaries at his own expense—a fact that does not entitle him to an allowed claim against these estates.

24. Finally, in the Original Opposition, Rhodes argued that the December 31, 2008 report conducted by Main Amundson (the "Main Amundson Report") "concluded that Rhodes is owed $606,589.22 in the aggregate for . . . payments made on behalf of the Debtor Entities . . . [to the Greenway Employees]." Original Opp'n at 5, ¶ 10. Setting aside the discrepancy between the amount of the Greenway Partners Claim as reflected in the Proof of Claim and the amount cited in the Main Amundson Report, the Main Amundson Report merely states that the Greenway Employees received payments from Rhodes. The Main Amundson Report does not, however, support Rhodes' allegation that he is *owed* money for those payments, in large part because, upon information and belief, no documentation had been produced to Main Amundson at the time they prepared their report or to the Reorganized Debtors that would substantiate any such obligation. Accordingly, the Greenway Partners Claim should be disallowed in full.

9

## II. The Reorganized Debtors Should be Permitted to Expunge the Scheduled Claims from the Schedules

25. In addition to the Greenway Partners Claim, the Original Objection provided the Court and Rhodes with notice that the Reorganized Debtors intended to amend their Schedules. Specifically, upon review of the Scheduled Claims, the Reorganized Debtors concluded that the Scheduled Claims should be expunged for the reasons summarized in the chart below:

| Party Holding Claim | Entity Liable on Claim | Amount of Claim/Basis for Claim | Reason Invalid |
|---|---|---|---|
| Rhodes (*See* Rhodes Homes Arizona Docket No. 33, pg. 3) | Rhodes Homes Arizona | $151,999.01/ Compensation | Rhodes Homes Arizona does not owe Rhodes any compensation. Based on the Reorganized Debtors' review of available information and information received from the Debtors' third party payroll services provider, Rhodes was never paid compensation from the accounts payable for Rhodes Homes Arizona, and Rhodes was not paid from the payroll of Rhodes Homes Arizona at any point after January 2005. Moreover, no documentation has been located to support Rhodes' Scheduled Claim for compensation from Rhodes Homes Arizona. |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

| Party Holding Claim | Entity Liable on Claim | Amount of Claim/Basis for Claim | Reason Invalid |
|---|---|---|---|
| Pinnacle Equipment (*See* Pinnacle Grading Docket No. 17, pg. 19) | Pinnacle Grading | $557,302.09/ Equipment Rental Payments | Pinnacle Equipment obtained construction equipment and provided the equipment to Pinnacle Grading for use in connection with work being performed on the Pravada Project in Arizona.  In connection with obtaining the equipment, Pinnacle Equipment entered into a security agreement and promissory note with Caterpillar Financial Services Corporation ("Caterpillar").  Based on the Debtors' books and records, Pinnacle Grading paid Caterpillar directly on the promissory note between Pinnacle Equipment and Caterpillar, potentially giving rise to a claim for overpayment by Pinnacle Grading against Pinnacle Equipment.  Despite efforts to locate a rental agreement between Pinnacle Equipment and Pinnacle Grading, no such agreement has been located that requires Pinnacle Grading to make payments to Pinnacle Equipment, and relevant personnel of the Reorganized Debtors do not recall having viewed such an agreement in the past.  In addition, Main Amundson and Associates, an outside accounting firm, was unable to locate a rental agreement between Pinnacle Equipment and Pinnacle Grading during its audit of the Debtors during the fourth quarter of 2008. |
| Sedora (*See* Heritage Land Company Docket No. 142, pg. 9) | Heritage | $167,901.86/ Litigation Expenses Arising Out of Litigation with Deutsche Bank Securities, Inc. | This claim is for defense costs related to litigation initiated by Deutsche Bank Securities, Inc. against Rhodes, Sagebrush, Rhodes Companies, Heritage, Rhodes Design and Development Corporation and RRGP (collectively, the "Rhodes Defendants") related to a potential credit facility.  Stewart Occhipinti LLP ("Stewart Occhipinti") served as defense counsel for the Rhodes Defendants.  Invoices from Stewart Occhipinti were made out |

11

| Party Holding Claim | Entity Liable on Claim | Amount of Claim/Basis for Claim | Reason Invalid |
|---|---|---|---|
| | | | to "Rhodes Homes," and such invoices were paid by either Sedora or Sagebrush. Based on the Reorganized Debtors' review of the available information, Heritage paid approximately $800,000 to settle the litigation, potentially giving rise, subject to further investigation, to a claim by Heritage against Rhodes or Sedora. Heritage is not, however, required to reimburse Sedora for defense costs related to the litigation by any applicable agreement. |

26.     The Reorganized Debtors argued that they were entitled to amend the Schedules without court approval at any time prior to the closing of the Chapter 11 Cases but noted that, to the extent the Court determined that the Schedules could not be amended, the Original Objection should be deemed an objection to the Scheduled Claims for the reasons set forth in the chart above. Original Obj. at 20, ¶ 36.

27.     In his Original Opposition, Rhodes made three general arguments that he claimed established the validity of the Scheduled Claims. First, Rhodes asserted that since the statements made in the Schedules were executed under penalty of perjury, they are eligible for treatment as evidentiary admissions in support of the validity of the Scheduled Claims. Original Opp'n at 17. Second, Rhodes argued that the Reorganized Debtors had ample opportunity to examine the Debtors' books and records, and that the legitimacy of the Scheduled Claims was evidenced by the fact that such a review uncovered no fraudulent activity by Rhodes with respect to the Scheduled Claims. Original Opp'n at 9, ¶ 25; *see also id.* at 17. Finally, Rhodes asserted that allowing the Reorganized Debtors to amend the Schedules would unjustly enrich them at the expense of the scheduled creditors. Original

1  Opp'n at 18.  None of these arguments, however, is sufficient to establish the validity of the

2  Scheduled Claims.

3         28.     First, contrary to Rhodes' baseless assertions, the Reorganized Debtors have

4  not admitted to the validity of the Scheduled Claims simply because such claims appear on

5  the Schedules.  Indeed, the amended Schedules for the Pinnacle Equipment and Sedora

6  claims (the relevant portions of which are attached hereto as Exhibits B and C, respectively)

7  expressly state that the Schedules incorporate the previously-filed *Notes and Statement of

8  Limitations and Methodology Regarding the Debtors' Schedules of Assets and Liabilities

9  and Statement of Financial Affairs* contained in the Debtors' original Schedules filed on

10 April 30, 2009 (the relevant portion of which is attached hereto as Exhibit D).  The original

11 Schedules provide in relevant part that the Debtors "reserve[d] the right to dispute, or to

12 assert offsets or defenses to any claim reflected on its Schedules as to amount, liability, or

13 classification, or to otherwise subsequently designate any claim as 'contingent,'

14 'unliquidated,' or 'disputed.'"  Thus, the simple fact that the Scheduled Claims appear on

15 the Schedules does not prove the validity of the Scheduled Claims, and the Reorganized

16 Debtors retain the ability to amend the Schedules to remove such claims.

17        29.     While the Scheduled Claim pertaining to monies owed to Rhodes personally

18 by Rhodes Homes Arizona does not contain a similar reservation of rights, it too is *not* an

19 acknowledgment by the Reorganized Debtors that Rhodes is entitled to payment.  Because

20 the Schedules were filed pursuant to Bankruptcy Code section 521 and not in connection

21 with a specific contested matter in these chapter 11 proceedings, the Schedules are not

22 pleadings and may not be treated as judicial admissions by this Court.  *In re Cobb,* 56 B.R.

23 440, 442, n.3 (Bankr. N.D. Ill. 1985) (holding that because the schedules at issue were filed

13

"in general, not in this particular contested matter, the Court does not view them as a 'pleading'. . . and thus the statements in the schedules are evidential rather than judicial admissions" and, therefore, are not conclusive). Thus, the statements contained in the Schedules are not binding on the Debtors and may be refuted. *Id*.

30. Second, Rhodes' contention that the Debtors' investigation revealed no fraudulent conduct by Rhodes is disingenuous at best. In support of his allegation, Rhodes cites various portions of Winchester Carlisle Partners' Richard Dix's ("Dix") testimony at deposition and states that Dix testified that his firm "could find no fraudulent activity by Rhodes." Original Opp'n at 9, ¶ 25. Rhodes grossly mischaracterizes Dix's testimony. To the contrary, Dix testified that while he may not have personally encountered evidence of Rhodes' fraudulent conduct, he was *not* in a position to determine that fraudulent conduct had not transpired. *See* Dix Dep. 67:10-12, July 16, 2009 ("I am not sure that I'm qualified to interpret fraudulent or non-fraudulent . . . behavior by Mr. Rhodes.") (copies of the relevant portions of Dix's deposition testimony are attached hereto as Exhibit E). Similarly, Rhodes ascribes meaning to Dix's statement that he could not recall a "single person who used the word 'thief' with reference to Mr. Rhodes," but even Rhodes cannot connect this alleged admission to his overall assertion that the Debtors' investigation revealed no fraudulent conduct. Dix Dep. 80:15-20.

31. Moreover, in his Original Opposition, Rhodes claimed that the alleged undisputed, non-contingent and liquidated nature of the Scheduled Claims had been verified by two independent non-debtor firms: Main Amundson and Deloitte & Touche. Original Opp'n at 10, ¶ 26. Again, Rhodes is wrong. The Scheduled Claims listed in the chart above were included in the Schedules in either July 2009 (the Pinnacle Equipment and Sedora

14

claims) or January 2010 (Rhodes' personal claim against Rhodes Homes Arizona). Deloitte & Touche and Main Amundson, however, *concluded* their investigations in 2007 and 2008 respectively. These allegedly independent investigations clearly could not have verified claims that had not yet been included in the Schedules.

32. Finally, Rhodes' contention that allowing the Reorganized Debtors to amend the Schedules will unjustly enrich them at the expense of the scheduled creditors is meritless. There is only one scheduled creditor Rhodes has an interest in protecting—himself. But Rhodes' own self-interest cannot give credence to otherwise baseless claims and cannot render him something he is not – a creditor with a legal entitlement to payment.

33. In addition to these general arguments, Rhodes also raises a number of arguments specific to certain of the Scheduled Claims. For the reasons stated below, however, none of these additional arguments entitle Rhodes to payment on account of any of the Scheduled Claims.

34. First, Rhodes argues that, with respect to the Pinnacle Grading Claim, usage rates contained in a lease governing the rental of the Pinnacle Grading equipment were based on an estimated usage that was significantly lower than the actual usage of the equipment. Therefore, according to Rhodes, the rates were below market and Rhodes is entitled to payment for the differential between what the Debtors were obligated to pay under the lease, and what the Debtors *should* pay assuming normal usage and market rates. Rhodes has not, however, produced the lease that purports to govern the rental of the Pinnacle Equipment, nor has he demonstrated that any such lease would entitle him to payment. Even if, as Rhodes appears to allege, the lease contemplated below-market rates, he has no claim against the Debtors for voluntarily entering into a lease that he now finds

15

disadvantageous.  Rhodes' reliance on the Main Amundson Report also does not establish his entitlement to a claim; even if the Main Amundson Report was correct that the actual equipment usage was "over 50% in excess of normal usage for a standard operating lease with no corresponding increase in lease payments" for the extra hours of usage, Rhodes does not cite to a single provision in the lease that would entitle him to the type of true-up payment he now seeks.  Simply stated, Rhodes is seeking to enforce a non-existent contractual provision in a contract that has not been produced either to the Reorganized Debtors or to this Court.  Rhodes again has no legal basis to the funds he believes he is owed, and the Pinnacle Grading claim should be stricken from the Schedules.

35.  Similarly, no agreement exists that would validate the Scheduled Claim of Sedora Holdings, LLC ("Sedora") against Heritage Land Company, LLC ("Heritage") for legal defense costs related to certain prepetition litigation.  According to Rhodes, Sedora has a claim against Heritage for litigation expenses related to the defense of Heritage in the case captioned *Deutsche Bank Securities, Inc. v. James M. Rhodes, Sagebrush Enterprises, Inc., The Rhodes Companies, LLC, Heritage Land Company, LLC, Rhodes Design and Development Corporation and Rhodes Ranch General Partnership*, case number 1:06-cv-00413-DC (the "Litigation") filed on or about January 2006 in the United States District Court for the Southern District of New York.  In his Original Opposition, Rhodes argued that the validity of this claim had been established because—*upon information and belief*—the related expenses were recorded on the Debtors' pre-petition books and records and because the Credit Facility "acknowledged" the existence of the Litigation against the collateral assets.  Original Opp'n at 6, ¶ 13.

36. Again, Rhodes has not provided the Court or the Reorganized Debtors with any information establishing the Debtors' obligation to reimburse Rhodes for the costs incurred in connection with the Litigation. The fact that the Litigation expenses *may* appear in the Debtors' books and records does not give rise to an obligation on the Debtors' behalf to reimburse Rhodes. .

37. Finally, Rhodes failed to address his personal claim for monies owed to him by Rhodes Homes Arizona in the Original Opposition, nor has he produced any agreements that further describe or substantiate his alleged entitlement to the funds. Rhodes' inability to produce supporting documentation is likely due to the fact that Rhodes Homes Arizona has not historically been responsible for paying compensation to Rhodes. Thus, with no information establishing even the existence of this particular Scheduled Claim—let alone its validity—Rhodes has no basis upon which to assert a valid claim.

38. Consistent with the foregoing and as set forth in the Original Objection, the Reorganized Debtors do not believe that they require this Court's authorization to effectuate the amendments described herein. Nevertheless, in the event that the Court determines that the Schedules may not be amended, the Reorganized Debtors request that this Objection be deemed an objection to the Scheduled Claims for the reasons set forth herein and stated in the Justin Bono declaration, attached hereto as Exhibit F.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Reorganized Debtors respectfully request that the Court (i) enter an order, substantially in the form attached hereto as Exhibit G, (a) disallowing the Greenway Partners Claim in its entirety and (b) disallowing the Scheduled Claims in their entirety if the Court determines that the Schedules cannot be amended, and (ii) grant the Reorganized Debtors such other and further relief as is just, proper and equitable.

Dated this 19th day of July, 2011.

By:  /s/ Abid Qureshi
Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, NV 89145
(702) 362-7800 (Telephone)
(702) 362-9472 (Facsimile)
Nleatham@klnevada.com

AKIN GUMP STRAUSS HAUER & FELD LLP
Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
Meredith A. Lahaie (NY Bar No. 4518023)
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
pdublin@akingump.com
aqureshi@akingump.com
mlahaie@akingump.com

*Counsel for the Reorganized Debtors*