1  Kevin N. Anderson
   Nevada Bar No. 4512
2  **FABIAN & CLENDENIN**
   215 South State Street, Suite 1200
3  Salt Lake City, Utah 84111-2323
   Telephone:    801-531-8900
4  Facsimile:    801-596-2814
   Email:    kanderson@fabianlaw.com
5
6  *Counsel for James M. Rhodes*

7

8                **UNITED STATES BANKRUPTCY COURT**

9                        **DISTRICT OF NEVADA**

10 | In re: | Case No.: 09-14814-LBR |
|        | (Jointly Administered) |
11 | THE RHODES COMPANIES, LLC, aka |  |
|   "Rhodes Homes," et al., | Chapter 11 |
12 |  |  |
13 |                Reorganized Debtors | **JAMES RHODES' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO RECONSIDER ORDER SUSTAINING REORGANIZED DEBTORS' OBJECTION TO JAMES RHODES' ENTITLEMENT TO THE TAX CLAIM FOUND IN PROOF OF CLAIM NO. 814-33** |
14 |  |  |
15 |  |  |
16 | ☒ Affects all Debtors |  |
17 | ☐ Affects the following Debtors |  |
18 |  | Hearing Date:    August 2, 2011 |
|   | Hearing Time:    10:30 AM |
|   | Place:    Courtroom 1 |
19 |  |  |
20

21

22        James M. Rhodes ("**Rhodes**") respectfully submits this reply memorandum of law in

23 support of his *Motion to Reconsider Order Sustaining Reorganized Debtors' Objection to James*

24 *Rhodes' Entitlement to the Tax Claim Found in Proof of Claim No. 814-33* (the "**Motion**").

25

26

**INTRODUCTION**

The Reorganized Debtors' assertion that this Court lacks jurisdiction to reconsider a non-final order is incorrect.  There is no question that Rule 54(b) is applicable to these proceedings and that this Court has jurisdiction to reconsider the Order.

Rhodes disagrees with the Reorganized Debtors' assertion that the Court has considered the arguments set forth in the Motion before.  It has not.  The best confirmation of this is that the only substantive argument raised in the opposition by the Reorganized Debtors is something Rhodes and this Court have never heard before.  Nowhere in the prior briefing or the oral argument will the Court find references to the Reorganized Debtors' new theory that a member of a limited liability company is not entitled to a distribution if declared while the limited liability company is insolvent.

In making this new argument, the Reorganized Debtors invent a fact—that the Debtor Entities were insolvent when Rhodes' distribution ***was declared***.  The only basis for this assertion derives from the stipulated fact that the ***ledger entry*** indicating that payment was due to Rhodes was made on the date on which the Debtor Entities filed for bankruptcy.  (Stipulated Facts [Doc. No. 1290] at ¶ 3.)  But, it is undisputed that the declaration of the distribution was made "[p]rior to the Petition Date."  (Rhodes Declaration [Doc. No. 1177], at ¶ 7.)  It is also undisputed that the amount payable to Rhodes as a distribution arose from a tax liability that was incurred in 2006, *several years* before the Petition was filed.  The Reorganized Debtors have not shown or even alleged that the Debtor Entities were insolvent at that time.[1]  It is also undisputed that, as the managing member of the Debtor Entities, Rhodes had full authority under Nevada law to

---

[1]	As the Claim Detail provided with Proof of Claim No. 814-33 sets forth, the total tax liability for the Debtor Entities for 2006 was $21,014,159.  Of this, $14,040,000 was "paid" – reimbursed to Rhodes as a distribution.  The unpaid balance of $6,974,159 and $2,754,992 in penalties and interest total the $9,729,151 included in the Tax Claim.  (The summary chart included with the Proof of Claim is attached for the Court's convenience.)

1  authorize the distributions as repayment for that tax liability when the Debtor Entities were

2  solvent.

3        Thus, Rhodes has established his *entitlement* to the Tax Claim.  At best, in challenging

4  the solvency of the Debtor Entities at the time when the tax distributions were authorized, the

5  Reorganized Debtors have raised a question of fact to be addressed in the next phase of this case.

6        Finally, the Reorganized Debtors' Preliminary Statement also incorrectly asserts that the

7  Motion was filed notwithstanding the existence of a "standstill agreement."  The only agreement

8  to suspend filings in this matter expired on February 15, 2011.[2]  In an Order Regarding Status

9  Hearing, this Court acknowledged the full scope of the parties' understanding after the February

10  15, 2011 Status Hearing:  That "Rhodes would not pursue his appeal of the Tax Claim until the

11  issues regarding the Remaining Claims are resolved."  (March 9, 2011 Order Regarding Status

12  Hearing [Doc. No. 1360].)  Thereafter, the Stipulation and Order Dismissing Appeal Without

13  Prejudice was negotiated.  There were no "discussions" about "the terms of a stand still

14  stipulation."  The stipulation dismissing the Appeal contains no "standstill agreement." [Doc.

15  No. 1394]

16                                     **ARGUMENT**

17  **I.    THIS MOTION IS PROPER UNDER RULE 54(b) AND THE COURT HAS

18        JURISDICTION TO RECONSIDER ITS ORDER.**

19        The Reorganized Debtors spend nearly half of their brief arguing that Rule 54(b) of the

20  Federal Rules of Civil Procedure does not apply here because "the Reorganized Debtors'

21  objection to the Tax Claim is a contested matter—not an adversary proceeding."  (Emphasis

22  added).  The Reorganized Debtors are correct that this is a contested matter, but are wrong that

23  Rule 54(b) does not apply.  Rule 9014 of the Federal Rules of Bankruptcy Procedure governs

24  ─────────────
[2]      On December 23, 2010 the parties stipulated that all proceedings, including the Appeal, would be
25  "stayed and suspended until February 15, 2011."  (Stipulation and Order to Stay Proceedings [Doc.
No. 1346] at ¶ 1.)  The Court adopted this Stipulation in an order entered January 3, 2011 (Stipulation and
26  Order to Stay Proceedings [Doc. No. 1350] at ¶ 1.)

contested matters and provides as follows:  "(c) Application of Part VII Rules.  Except as provided in this rule, and unless the court directs otherwise, the following rules shall apply:  . . . 7054–7056 . . . ."  (Emphasis added).  As the Reorganized Debtors have already acknowledged in their opposing memorandum, "[t]he filing of an objection to a proof of claim 'creates a dispute which is a contested matter' within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon motion for relief."  *Lundell v. Anchor Const. Specialists, Inc.,* 223 F.3d 1035, 1039 (9th Cir. 2000).  Thus, because the Reorganized Debtors' objection to the Tax Claim is a contested matter governed by Rule 9014, there can be no dispute that Rule 54(b) is applicable and that this Court has jurisdiction to reconsider the Order.

The Reorganized Debtors do not dispute that "Rhodes is correct that Federal Rule 54(b) does allow a court to revise a decision that adjudicates fewer than all of the claims or rights at issue in an action."  Accordingly, the Court has jurisdiction under Rule 54(b) to reconsider its disallowance of James Rhodes' entitlement to the Tax Claim found in the Proof of Claim.[3]

## II.    THERE IS NO PROOF THAT THE DEBTOR ENTITIES WERE INSOLVENT WHEN THE TAX DISTRIBUTIONS WERE AUTHORIZED.

The Court's consideration of this matter is significantly different than when it was last considered—and ruled upon.  The Reorganized Debtors concede that a binding, enforceable debt obligation arises when a Nevada limited liability company authorizes a distribution to its members.  *See* Resp. Br. p. 8.  Therefore, the parties to this Motion agree that if the tax

---

[3]      Bankruptcy Rule 3008 does not govern this Motion, as argued by the Reorganized Debtors.  This Court has entered no final order.  Indeed, as acknowledged by the Reorganized Debtors, a motion brought pursuant to Rule 3008 is subject to the constraints of Federal Rule 60(b).  Federal Rule 60(b) only applies to final judgments:  "On motion and just terms, the court may relieve a party or its legal representative from a final judgment . . . ." *see also Advisory Comm. Notes* ("The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."); 11 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 2852, p. 233 (2d ed. 2002) ("Rule 60(b), however, as amended in 1948, applies only to a 'final judgment, order or proceeding.'  Thus, the power of a court to modify an interlocutory judgment or order at any time prior to a final judgment remains unchanged and is not limited by the provisions of Rule 60(b)."  (Emphasis added)).

distributions to Rhodes were proper when authorized, they created a debtor-creditor relationship that is legally enforceable by Rhodes against the Debtor Entities.  *Id.*, *see also* Nev. Rev. Stat. § 86.346.  Furthermore, the Reorganized Debtors do not dispute that under both Nevada law and the terms of the governing corporate documents, the Debtor Entities were permitted to authorize such tax distributions.  *See* N.R.S. § 86.341.

Accordingly, the Reorganized Debtors are left to raise an entirely new argument—that a company may not authorize a distribution at a time when the company is insolvent.  Rhodes acknowledges this settled legal doctrine.  But the Reorganized Debtors provide no analysis of the solvency of the Debtor Entities prior to the Petition date.  Their objection is left to rest upon the unsubstantiated allegation that "there is no question that the Debtors' were insolvent when Rhodes' distribution was declared."  Resp. Br. p. 9.  This allegation is, however, faulty.  It incorrectly equates the declaration of the tax distributions with the ledger entry on March 31, 2009 (the Petition date), which merely reflected the balance of the tax distribution obligation then remaining.  Rhodes authorized the tax distributions years earlier in response to tax liabilities, which arose in 2006. Rhodes paid the majority of the tax obligation – $14,040,000 of the total $21,014,159 2006 – and was reimbursed through the authorized distribution.  (*See* summary chart included with the Proof of Claim, attached.)

Here, Rhodes was the sole beneficial owner and manager of the Debtor Entities.  He held the authority to resolve independently to authorize the tax distributions.[4]  In so doing, he followed the same course of conduct he had used in prior years, and authorized the distribution for the

---

[4]    As the then sole manager of closely-held limited liability companies, Rhodes' declaration authorizing the distributions required no formality, either by statute or common law.  "[S]tockholders may agree informally, among themselves, to distribute a certain sum as dividends without going through the form of corporate action, and they may be estopped thereby from attacking the validity of the distribution."  Am.Jur.2d *Corporations* § 1036; *see also Murray v. City of Philadelphia*, 71 A.2d 280, 286 n.7 (Pa. 1950).  It is recognized that distributions may be authorized "without the formalities of a declaration," and that this "is especially so in the case of close corporations…."  *Id.*, *see also Philco Finance Corp. v. Pearson*, 335 F. Supp. 33, 42 (D.C. Miss. 1971), *Hartley v. Pioneer Ironworks*, 73 N.E. 576, 577 (N.Y. 1905).

1   2006 tax year.  A "presumption of legality attaches to a dividend's declaration … and it is

2   incumbent on the party claiming the contrary to show it."  Am.Jur.2d *Corporations* § 1041

3   (2011).  The Reorganized Debtors have offered no evidence – in fact they have not even alleged –

4   that the Debtor Entities were insolvent at the time that the tax distributions at issue were

5   authorized in response to the 2006 tax liability.

6          Even if they do, this dispute would then revolve entirely around matters of fact and not of

7   law.  Whether or not a distribution was lawfully declared is a question of fact, not law.  *See In re*

8   *Sheffield Steel Corp.*, 320 B.R. 423, 452 (Bkrtcy. N.D. Okla. 2004) (declining to enter summary

9   judgment because factual issues precluded the court from determining as a matter of law whether

10  dividends were unlawful); *Hannigan v. Italo Petroleum Corp. of America*, 77 A.2d 209, 216

11  (1949) (declining to rule that declaration of dividends was unlawful where factual issues

12  remained).  Based upon the stipulation of the parties, this issue would then be dealt with in the

13  next phase of these proceedings.

14                                  **CONCLUSION**

15         The Reorganized Debtors have not met their burden of showing that the distribution

16  admittedly declared by Rhodes was not authorized or, as their latest filing tries to suggest, was

17  made at a time when the Debtor Entities were actually insolvent.  They should not be permitted to

18  block the Tax Claim at this early stage in the proceedings.  Rhodes respectfully requests that the

19  Order Sustaining Reorganized Debtors' Objection to James Rhodes' Entitlement to the Tax Claim

20  Found in Proof of Claim No. 814-33 be vacated, and for any such further relief which the Court

21  may deem just and appropriate under the circumstances.

22         DATED this 26th day of July, 2011.

23                                          /s/ Kevin N. Anderson
                                            _____
24                                          Kevin N. Anderson
                                            FABIAN & CLENDENIN
25                                          Attorneys for James M. Rhodes

26  4845-8951-0154, v. 1

                                    6