1  Nile Leatham (NV Bar No. 002838)
2  KOLESAR & LEATHAM
   400 South Rampart Boulevard, Suite 400
3  Las Vegas, NV 89145
   Telephone:  702.362.7800
4  Facsimile:  702.362.9472
   E-Mail:      nleatham@klnevada.com
5
6  Philip C. Dublin (NY Bar No. 2959344)
   Abid Qureshi (NY Bar No. 2684637)
7  Meredith A. Lahaie (NY Bar No. 4518023)
   AKIN GUMP STRAUSS HAUER & FELD LLP
8  One Bryant Park
   New York, NY 10036
9  Telephone:  212.872.1000
   Facsimile:  212.872.1002
10 E-Mail:      pdublin@akingump.com
11               aqureshi@akingump.com
                 mlahaie@akingump.com
12

*AKIN GUMP STRAUSS HAUER & FELD LLP*
*One Bryant Park*
*New York, New York 10036*
*Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com*

13 *Counsel for the Reorganized Debtors*

14         **UNITED STATES BANKRUPTCY COURT**
15                  **DISTRICT OF NEVADA**
                    **SOUTHERN DIVISION**
16

17 **IN RE:**                    §    **Case No. 09-14814-LBR**
                                 §    **(Jointly Administered)**
18 **THE RHODES COMPANIES, LLC,** §
       **aka "Rhodes Homes,"** *et al.*, §    **Chapter 11**
19                               §
                                 §
20         **Reorganized Debtors.**[1] §
                                 §
21                               §
                                 §
22

23         [1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax
24 identification number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC
   (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281);
25 Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf
   and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany
26 Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design
   and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090);
27 Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC
   (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited
28 Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897);
   Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

1

2

3  **Affects:**

  ☒ **All Debtors**

4    ☐ **Affects the following**

    **Debtor(s)**

5

§
§
§
§
§
§
§
§

**REPLY MEMORANDUM IN SUPPORT OF**
**REORGANIZED DEBTORS' OBJECTION**
**TO RHODES' GREENWAY PARTNERS**
**CLAIM AND NOTICE OF AMENDMENT OF**
**SCHEDULES OF ASSETS AND**
**LIABILITIES**

6

7       The above-captioned reorganized debtors (collectively, the "<u>Reorganized Debtors</u>"),[2]

8  by and through their undersigned counsel, hereby submit this reply memorandum of law (the

9  "<u>Reply</u>") in further support of their Objection to Rhodes' Greenway Partners Claim and

10  Notice of Amendment of Schedules of Assets and Liabilities (the "<u>Opening Objection</u>"), and

11  in response to James Rhodes' ("<u>Rhodes</u>") Supplemental Memorandum of Law in Support of

12  His Opposition to Reorganized Debtors' Objection to the Greenway Partners Claim Found

13  in Proof of Claim No. 814-33 and Notice of Amendment of Schedules of Assets and

14  Liabilities (the "<u>Supplemental Brief</u>").  In support of this Reply, the Reorganized Debtors

15

16  respectfully represent as follows:

17                  **PRELIMINARY STATEMENT**

18

19      1.     Even after three bites at the apple, Rhodes still has not produced any

20  admissible evidence or advanced a single valid legal theory in support of his entitlement to

21  the Greenway Partners Claim or the Scheduled Claims.  By his Supplemental Brief, Rhodes

22  continues to rely almost exclusively on information contained in the Main Amundson

23

24  Report—information that fundamentally conflicts with the information alleged in his Proof

25

26       [2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such
terms in the *Reorganized Debtors' Objection to Rhodes' Greenway Partners Claim and Notice of Amendment*

27  *of Schedules of Assets and Liabilities* (Docket No. 1466) and/or the Third Amended Modified Plan of
Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, *et al.* (the

28  "<u>Plan</u>") or the Opening Objection, as applicable.

**AKIN GUMP STRAUSS HAUER & FELD LLP**
**One Bryant Park**
**New York, New York 10036**
**Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

of Claim—in support of his alleged entitlement to reimbursement of payments made to

Greenway Partners.  The Main Amundson Report, however, is *not* a proxy for a legal

obligation owed by the Debtors to Rhodes, whether documented in the form of an

employment agreement, contract, or otherwise.[3]  Indeed, Rhodes has not produced

documentation of any kind that would evidence a right to payment on account of the

Greenway Partners Claim.

2.     Similarly, the arguments contained in Rhodes' Supplemental Brief with

respect to both the Greenway Partners Claim and the Scheduled Claims contain no new facts

or evidence, but instead advance wholly inapplicable legal theories that are predicated on an

unsupportable asserted equitable entitlement to payment.  For example, Rhodes continually

refers to acting "at the direction" of the Debtors and to the mutual understanding that he

believes to have existed at the time the relevant transactions were made.  Rhodes, however,

overlooks the fact that these allegations must carry little weight when one considers that it

was Rhodes himself who controlled the Debtors at all relevant times and, thus, Rhodes who

directed *himself* to take certain actions.  For the reasons set forth in the Opening Objection

and in this Reply, the Greenway Partners Claim should be disallowed in full, and the

Scheduled Claims expunged from the Reorganized Debtors' Schedules.

## ARGUMENT

### I.     Rhodes Has Not Established an Entitlement to the Greenway Partners Claim

3.     By the Supplemental Brief, Rhodes argues that he has established a right to

payment on account of the Greenway Partners Claim for three reasons:  (i) Rhodes was

directed by the Debtors to make payments to Greenway Partners; (ii) the payments to

---

[3] In addition, the Main Amundson Report is inadmissible hearsay.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1  Greenway Partners were recorded in the Debtors' pre-petition books and records and set

2  forth in the Main Amundson Report; and (iii) the payments were made with the "full

3  understanding that [Rhodes] would be reimbursed by the Debtors," thus giving rise to a

4  claim based on theories of promissory and equitable estoppel. *See* Rhodes Supp. Memo at

5  7-8. Each of these arguments is flawed.

6          4.      First, Rhodes argues that the Debtors directed him to make payments to

7  Greenway Partners, and that the Debtors' alleged "direction" evidences a legal obligation for

8  repayment to Rhodes. *Id*. at 4-5, 7. Notwithstanding Rhodes' failure to explain how the

9  Debtors became legally obligated to reimburse Rhodes by allegedly directing Rhodes to pay

10  a portion of the Greenway Partner Employees' salaries, noticeably absent from the

11  Supplemental Brief is the crucial fact that, while the Debtors may have directed Rhodes to

12  take certain actions, Rhodes himself controlled the Debtors. Indeed, when the Debtors filed

13  for bankruptcy, Rhodes was the Debtors' CEO, president and sole director. If anything, this

14  fact cuts against Rhodes' entitlement to be reimbursed for payments made "at the Debtors'

15  direction," and should cause this Court to closely scrutinize the nature and propriety of such

16  payments.

17          5.      Second, Rhodes makes a related argument that the Greenway Partners

18  payments were both recorded in the Debtors' books and records and documented in the

19  Main Amundson Report, and that this somehow lends legitimacy to his claim for repayment.

20  Again, at the time Rhodes made the Greenway Partners payments, he was the Debtors'

21  CEO, President, and sole director. The mere fact that Rhodes caused the Debtors to record

22  in their books and records amounts he paid to the Greenway Partners Employees does not

23  create a claim owed to Rhodes by the Reorganized Debtors. Similarly, the fact that Main

4

1  Amundson references an amount paid to the Greenway Partners Employees that is

2  inconsistent with the amount claimed by Rhodes in his Proof of Claim does not substantiate

3  his entitlement to reimbursement but, instead, casts doubt on the actual amount of the

4  payments made by Rhodes.  Moreover, the Main Amundson Report is inadmissible hearsay

5  which, even if considered by the Court for the truth of the matter, does not acknowledge the

6  existence of (or itself constitute) a binding legal contract between Rhodes and the Debtors

7  that might entitle Rhodes to the remedy he now seeks.

8

9      6.    Third, Rhodes' theories of promissory and equitable estoppel are both

10  inapplicable here.  In order to prevail on his claim for promissory estoppel, Rhodes must

11  prove (i) the existence of a promise that is "clear and unambiguous in its terms," (ii) reliance

12  by the party to whom the promise was made, (iii) that the reliance was both "reasonable and

13  foreseeable," and (iv) the party to whom the promise was made was injured by his reliance.

14  *Consortium Info. Serv.'s, Inc. v. Credit Data Serv.'s, Inc.*, 149 Fed.Appx. 575, 583-84 (9th

15  Cir. 2005); *see also* Black's Law Dictionary 629 (9th ed. 2009) (defining promissory

16  estoppels as "[a]n affirmative defense alleging *good-faith* reliance on a misleading

17  representation and an injury or detrimental change in position resulting from that reliance.")

18  (emphasis added).  Rhodes, however, has not even alleged facts sufficient to meet the

19  requirements outlined above, let alone provided evidence to substantiate each element.

20  First, Rhodes has not established that the Debtors made a "clear and unambiguous" promise

21  to repay Rhodes for the Greenway Partners payments—indeed, the Reorganized Debtors

22  believe that no such promise was ever made.

23

24      7.    Equitable estoppel, on the other hand, "precludes a party from asserting rights

25  'he otherwise would have had against another' when his own conduct renders assertion of

26

27

28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

5

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

those rights contrary to equity." *Ahlers v. Ryland Homes Nevada, LLC*, No. 52511, 2010 WL 3276221, at *1 (Nev. Apr. 15, 2010); *see also* Black's Law Dictionary 629 (defining equitable estoppels as "[a] bar that prevents one from asserting a claim or right that contradicts what one has said or done before or what has been legally established as true."). Rhodes appears to be arguing that the Reorganized Debtors should be estopped from challenging Rhodes' entitlement to the Greenway Partners Claim because the Reorganized Debtors engaged in inequitable conduct.  As a threshold matter, however, Rhodes has not alleged *any* conduct, inequitable or otherwise, that would prevent the Reorganized Debtors from seeking to disallow a wholly unsubstantiated claim.

8.      Rhodes' efforts to invoke the equitable remedies of promissory and equitable estoppel border on frivolous—indeed, for Rhodes to succeed, he would have to demonstrate that he acted in "reasonable" reliance on a "clear and unambiguous" promise that *he made to himself*.  Accordingly, the Greenway Partners Claim should be disallowed in full.

## II.    The Scheduled Claims Should Be Expunged In Full

9.      Rhodes raises a number of arguments specific to the Scheduled Claims, virtually all of which had already been raised in prior pleadings.  As described below and as further set forth in the Opening Objection, none of these arguments results in Rhodes having a right to payment and, accordingly, the Reorganized Debtors should be authorized to amend their Schedules.

### A.    *The Rhodes Homes Arizona Claim*

10.      First, Rhodes alleges that the monies owed to him by Rhodes Homes Arizona are documented "in the pre-petition books and records" and that the existence of such book entries is sufficient to establish the validity of his claim.  Rhodes Supp. Mem. at 5.  As

1  previously stated, recording an obligation in a debtor's books and records (particularly when

2  the debtor records such entry at the CEO and president's direction) does not create a right to

3  repayment.  *See, e.g., In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2006 WL

4  346418, at *1-2 (Bankr. S.D.N.Y. Feb. 6, 2006) ("[T]o say that the Business Records may

5  be used [to evidence a right to payment] is not to say that the Business Records conclusively

6  establish such claims, or that they presumptively do.  To the contrary, no presumptions that

7  would alter usual burdens of proof would attach to the Business Records."); *In re Adelphia*

8  *Commc'ns Corp.*, 368 B.R. 140, 163 (Bankr. S.D.N.Y. 2007) ("The Business Records, once

9  in evidence, would be 'as persuasive in establishing the obligations they reflect as the

10 circumstances warrant.").

11
       **B.**      ***The Pinnacle Grading Claim***

12       11.      Second, Rhodes again argues that the validity of the Pinnacle Grading claim

13 is established by its inclusion in the Main Amundson Report.  Specifically, Rhodes argues

14 that the Main Amundson Report concluded that the underlying lease (which to date has not

15 been produced) was "unduly beneficial to the Debtors" and that he was paid at a below-

16 market rate.  *Id.* at 6.  The Reorganized Debtors previously responded to this argument at

17 pages 15 and 16 of their Opening Objection, and do not restate the entirety of their response

18 here.  In substance, the Main Amundson Report does not, without more, establish that

19 Rhodes has a right to payment.  Without producing the lease that governs the relationship

20 between the parties and demonstrating through admissible evidence that the Reorganized

21 Debtors failed to comply with their obligations under the lease, Rhodes has no claim for

22 monies allegedly owed in connection therewith.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

12.     In addition, Rhodes claims that it is "undisputed" that the Reorganized Debtors received a benefit from the Pinnacle Grading claim, and that "[a]llowing the Debtors to retain the benefit of [this claim] would unjustly enrich Debtors at the expense of Rhodes." *Id*. at 9.  Rhodes' claim for unjust enrichment, however, is inapposite.  An action based on a theory of unjust enrichment is not available when there is an express, written contract, "because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust*, 113 Nev. 747, 755-56 (Nev. 1997).  Rhodes has repeatedly conceded that a written lease agreement exists that governed the Debtors' usage of the Pinnacle Grading property (notwithstanding his failure to produce the lease) and, therefore, the claim for unjust enrichment must fail.  Rhodes Supp. Memo at 8 ("an operating lease was established at below-market rates[.]"); Opp'n to Reorganized Debtors' Objection at 5-6 (Docket No. 1176) (same).

## C.     *The Sedora Holdings Claim*

13.     Third, and finally, there is no agreement documenting Sedora Holdings, LLC's ("Sedora") claim against Heritage Land Company, LLC ("Heritage") for payment of litigation expenses.  Rhodes argues that this claim is valid based upon a review of the Debtors' books and records and because the debt is allegedly "acknowledged" in the Credit Agreement at paragraph 4.19.  Rhodes Supp. Mem. at 6.  Again, the existence of this claim on the books and records cannot create a valid claim for repayment.  Paragraph 4.19 of the Credit Agreement, on the other hand, is entitled "Brokers" and does have a corresponding schedule 4.19 that states in full "[t]he Borrowers have received oral correspondence in respect of a claim for an alternate transaction fee from Deutsche Bank.  As of the date hereof, the Borrowers believe that this claim is without merit."  First Lien Credit Agreement

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

at 63 (attached to Rhodes' Supplemental Brief as Exhibit F).  Presumably, the Deutsche Bank litigation from which the attorneys' fees at issue arose is the alternate transaction fee referenced in schedule 4.19.  The schedule, however, states nothing other than the simple fact that a dispute existed between the Debtors and Deutsche Bank.  The schedule is completely silent as to the incurrence and/or treatment of attorneys' fees in connection with any such dispute and, accordingly, is of no assistance to this Court in assessing the validity of Rhodes's entitlement to a claim for litigation-related expenses.

14.    Rhodes also argues that litigation expenses incurred by other non-Debtors "were immediately reimbursed as set forth in the Debtors' pre-petition books and records." *Id*. at 9.  But past, undocumented—and by all accounts, purely discretionary—payments are insufficient to create an obligation owing by the Reorganized Debtors to make a similar reimbursement now.  Once again, Rhodes has not produced any admissible evidence that demonstrates he has a claim against the Reorganized Debtors for payment of litigation costs.

15.    Additionally, Rhodes argues that he would have a claim for unjust enrichment if the Reorganized Debtors were authorized to remove the Heritage Claim from their schedules.  A claim for unjust enrichment may be asserted "whenever a person has and retains a benefit which in equity and good conscience belongs to another."  *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011).  The elements of an unjust enrichment claim include "a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof."  *U-Haul Co. of Nevada, Inc. v. Gregory J. Kamer, Ltd.*, No. 2:06-cv-618-RCJ-PAL, 2011 WL 2632667, at *6 (D. Nev. July 5, 2011).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

16.	The litigation expenses Rhodes now seeks to recover were paid by Sedora, an entity controlled by Rhodes that served as Heritage's managing partner.  Because Heritage is a pass-through entity, Sedora had an obvious interest in minimizing the expenses incurred by Heritage.  Thus, even if Rhodes could demonstrate that Heritage received a concrete, quantifiable benefit from the payment of litigation expenses incurred defending multiple Debtor and non-Debtor entities, that benefit would also inure to Sedora as Heritage's managing partner.  Accordingly, Rhodes has not successfully shown that Heritage retained a benefit that "in equity and good conscience belongs to another," and therefore cannot assert a claim for unjust enrichment.

17.	Based on the foregoing, Rhodes has not established that he has a viable claim against any of the Reorganized Debtors and, therefore, the Reorganized Debtors should be authorized to remove the Scheduled Claims from their Schedules.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

## CONCLUSION

WHEREFORE, for the reasons set forth in this Reply and the Opening Objection, the Reorganized Debtors respectfully request that this Court (i) enter an order, substantially in the form attached as Exhibit G to the Opening Objection, disallowing the Greenway Partners Claim in its entirety and authorizing the Reorganized Debtors to amend their Schedules to remove the Scheduled Claims and (ii) grant the Reorganized Debtors such other and further relief as is just, proper and equitable.

Dated this 26th day of July 2011.

By:    /s/ Abid Qureshi
Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, NV 89145
(702) 362-7800 (Telephone)
(702) 362-9472 (Facsimile)
Nleatham@klnevada.com

AKIN GUMP STRAUSS HAUER & FELD LLP
Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
Meredith A. Lahaie (NY Bar No. 4518023)
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
pdublin@akingump.com
aqureshi@akingump.com
mlahaie@akingump.com

*Counsel for the Reorganized Debtors*