1   Kevin N. Anderson
    Nevada Bar No. 4512
2   David R. Hague (Admitted Pro Hac Vice)
    **FABIAN & CLENDENIN**
3   215 South State Street, Suite 1200
    Salt Lake City, Utah 84111-2323
4   Telephone:     801-531-8900
    Facsimile:     801-596-2814
5   Email:     kanderson@fabianlaw.com
               dhague@fabianlaw.com
6
    *Counsel for James M. Rhodes*
7
8                    **UNITED STATES BANKRUPTCY COURT**

9                           **DISTRICT OF NEVADA**

10  In re:                                Case No.: 09-14814-LBR
                                          (Jointly Administered)
    THE RHODES COMPANIES, LLC, aka
11  "Rhodes Homes," et al.,               Chapter 11

12                                        **MEMORANDUM OF LAW IN
                 Reorganized Debtors      SUPPORT OF MOTION TO QUASH
13                                        ORDERS OF RULE 2004
                                          EXAMINATION AND
14                                        CORRESPONDING SUBPOENAS
                                          AND/OR FOR PROTECTIVE ORDERS**
15
    ☒ Affects all Debtors                 Hearing Date:    _____
16                                        Hearing Time:    _____
    ☐ Affects the following Debtors       Place:           Courtroom 1
17
18
19
20
21          James M. Rhodes ("**Rhodes**"), pursuant to Rule 45(c) of the Federal Rules of Civil

22  Procedure, made applicable herein pursuant to Rules 2004 and 9016 of the Federal Rules of

23  Bankruptcy Procedure, respectfully submits this memorandum of law in support of his *Motion to*

24  *Quash Orders of Rule 2004 Examination and Corresponding Subpoenas and/or For Protective*

25  *Orders* (the "**Motion**").  In support hereof, Rhodes states as follows:

26

## INTRODUCTION

Rhodes moves this court to quash several Rule 2004 orders and corresponding subpoenas sent out by the Litigation Trust in connection with the above-entitled bankruptcy case. Alternatively, Rhodes moves for a protective order limiting the scope of the Litigation Trust's discovery efforts and otherwise protecting the confidential and otherwise privileged information sought.

The recent orders and subpoenas call for the Rule 2004 examinations of 28 separate entities, including financial institutions, law firms, title companies and "other professionals." While the orders themselves were innocuous, the scope of the subpoenas sent out by the Litigation Trust go well beyond the permissible bounds of Rule 2004 and call for vast amounts of information—largely irrelevant, privileged, confidential, and personally identifiable information—for a time period well outside the scope of reasonableness.  The subpoenas amount to nothing more than a witch hunt under an impossible time deadline—the minimum allowed in most cases—designed to annoy and harass.  This is an improper use of Rule 2004.

The scope of the subpoenas far exceed the permissible scope of Rule 2004.  The Litigation Trust's discovery is largely unrelated to the administration of the underlying bankruptcy case. The Litigation Trust will be unable to provide sufficient good cause for their discovery requests. Accordingly, this Court should quash the various Rule 2004 orders and corresponding subpoenas. Alternatively, this Court should limit the expansive scope of the subpoenas by restricting any requests to relevant and non-privileged information.

## FACTUAL BACKGROUND

1.     On either March 31, 2009 or April 1, 2009 (collectively, the "**Petition Date**"), each of the debtors (collectively, the "**Debtors**") commenced with this Court a voluntary case under Chapter 11 of title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**").

2.     On July 17, 2009, Rhodes filed proof of claim No. 814-33 (the "**Proof of Claim**") seeking $10,598,000 for:  (i) the reimbursement of taxes paid by Rhodes for the 2006 tax year in

the amount of $9,729,151; and (ii) $868,849 advanced to Greenway Partners, LLC. Rhodes repeatedly has informed the Court that he does not seek to collect his claim for the taxes paid from the Debtors, but merely seeks a setoff against any claims the Reorganized Debtors (through the Litigation Trust) may have against him.

3. On February 18, 2010, the proposed *Third Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, et al*. (the "**Plan of Reorganization**") was filed with the Court. (Docket No. 1013.)

4. On March 12, 2010, this Court confirmed the Plan of Reorganization and entered its *Proposed Findings of Fact, Conclusions of Law, and Order Confirming the First Lien Steering Committee's Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al*. (Docket No. 1053.)

5. On May 27, 2010, the above-captioned Reorganized Debtors filed an objection to the Proof of Claim. Additionally, the Reorganized Debtors indicated that contemporaneously with the filing of their objection they were amending their schedules and statements to remove certain scheduled claims.

6. On June 17, 2010, Rhodes filed an opposition to the objection in the bankruptcy case.

7. The objection to the Proof of Claim and the dispute regarding the scheduled claims has not been fully resolved and both issues are the subject of a contested matter still pending before this Court.

8. On August 25, 2011, the Litigation Trust of The Rhodes Companies, LLC, *et al.* (the "**Litigation Trust**") filed a motion seeking an order granting examinations of various financial institutions pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. (Docket No. 1503). In the motion and corresponding proposed order, the Litigation Trust included a general document request. (*Id.*)

9.      On August 26, 2011, the Court denied the Litigation Trust's motion noting that "[d]ocuments must be requested in accordance with Rule 9016."  (Docket No. 1508.)

10.     In its next attempt, on August 29, 2011 and August 30, 2011, the Litigation Trust filed four separate motions seeking orders granting examinations pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.  (Docket Nos.1511, 1514, 1515 & 1516).  This time, however, the motions did not include a document request.  (*Id.*)

11.     The motions sought to examine representatives from various entities, including (1) financial institutions (Docket No. 1511), (2) law firms (Docket No. 1514), (3) title companies (Docket No. 1515) and (4) other professionals (Docket No. 1516).

12.     The financial institutions include:

      a.      American Express Company,

      b.      UBS Financial Services, Inc,

      c.      Town & Country Bank, Inc,

      d.      Consolidated Mortgage Company,

      e.      American Commonwealth Mortgage Company,

      f.      Bank of Oklahoma,

      g.      Alliance Mortgage, LLC,

      h.      BofA ML Asset Holding f/k/a Merrill Lynch,

      i.      The Bank of New York,

      j.      Mutual of Omaha Bank,

      k.      Nevada State Bank, and

      l.      Wells Fargo Bank, N.A.

(Collectively, the "**Financial Institutions**") (Docket No. 1511).

13.     The law firms include:

      a.      Santoro, Driggs, Walch, Kearney, Holley & Thompson, Ltd.,

      b.      Gibson Dunn & Crutcher, LLP,

1           c.       Snell & Wilmer, LLP,

2           d.       Stewart Occhipinti, LLP,

3           e.       Fabian & Clendinin [sic], and

4           f.       Bancroft Susa & Galloway P.C.

5  (Collectively, the "**Law Firms**") (Docket No. 1514).

6       14.     The title companies include:

7           a.       Chicago Title of Nevada, Inc.,

8           b.       First American Title Company,

9           c.       Fidelity National Financial, Inc.,

10           d.       Commerce Title Company,

11           e.       Transnation Title Agency,

12           f.       Security Title of Nevada, LLC,

13           g.       Stewart Title Company, and

14           h.       Yuma Title.

15  (Collectively, the "**Title Companies**") (Docket No. 1515).

16       15.     The other professionals include:

17           a.       Alvarez & Marsal North America, LLC, and

18           b.       SMS Financial LLC.

19  (Collectively, the "**Other Professionals**") (Docket No. 1516).

20       16.     In their motions, the Litigation Trust claimed that the scope of their proposed

21  examination was limited by the constraints of Rule 2004 and explained that:

22          The Litigation Trust seeks information concerning the Reorganized Debtors and
their pre-bankruptcy acts, conduct, property, liabilities and financial condition.
23          Specifically, the Litigation Trust seeks information concerning [legal services
performed by each of the Law Firms of behalf of / services provided by each of the
24          Title Companies to / each Professional's relationship to, interactions with, and
services provided to / banking and financial services provided by each of the
25          Financial Institutions to] to the Reorganized Debtors.  The Litigation Trust seeks
this information from the [Law Firms / Title Companies / Professionals / Financial

26

Institutions] to assist in the collection of the assets and the investigation of the liabilities of the Reorganized Debtors.

(Docket Nos. 1511, 1514, 1515 & 1516) (quotation compiled).

17.    On August 30, 2011 and August 31, 2011, within hours of the motions being logged, and with no opportunity for Rhodes to object, the Court entered orders granting Rule 2004 examinations of (1) the Financial Institutions (Docket No. 1512—less than 20 hours after Docket No. 1511 filed), (2) the Law Firms (Docket No. 1518—less than 1½ hours after Docket No. 1514 filed), (3) the Title Companies (Docket No. 1517—less than 1½ hours after Docket No. 1515 filed) and (4) the Other Professionals (Docket No. 1519—less than 24 hours after Docket No. 1516 filed) (collectively, the "**Rule 2004 Orders**").

18.    In spite of Fed. R. Civ. P. 45(b)(1), which mandates that if a "subpoena commands the production of documents . . ., then before it is served, a notice must be served on each party, on August 31, 2011, without notice to anyone, the Litigation Trust sent out a subpoena to American Commonwealth Mortgage Company ("**America Commonwealth**").    (A true and correct copy of the American Commonwealth Subpoena is attached hereto as "**Exhibit A**").    The subpoena directs American Commonwealth to produce a representative for examination on September 22, 2011.    (Ex. A.)    The subpoena further directs American Commonwealth to produce vast amounts of documents that are irrelevant, confidential, and contain personally identifiable information.  (*Id.*)

19.    Upon information and belief, each of the Financial Institutions received a subpoena largely identical to the subpoena received by American Commonwealth.

20.    On September 7, 2011, the Litigation Trust sent out a subpoena to the law firm of Fabian & Clendenin ("**Fabian**").    (A true and correct copy of the Fabian Subpoena is attached hereto as "**Exhibit B**").    The subpoena directs Fabian to produce a representative for examination on September 29, 2011.  (Ex. B.)  The subpoena further directs Fabian to produce vast amounts of

1  documents that are irrelevant, privileged, confidential, and contain personally identifiable

2  information. (*Id*.)

3       21.    Upon information and belief, each of the Law Firms received a subpoena largely

4  identical to the subpoena received by Fabian.

5       22.    Upon information and belief, each of the Title Companies and Other Professionals

6  received subpoenas similar to those received by American Commonwealth and Fabian.

7  Collectively, the subpoenas received by the Financial Institutions, Law Firms, Title Companies

8  and Other Professionals are referred to as the "**Rule 2004 Subpoenas**."

9       23.    Despite recognizing the limited scope of Rule 2004 examinations in their motions,

10  the Rule 2004 Subpoenas sent out by the Litigation Trust concern an overly broad period from as

11  early as January 1, 2004 to present and are directed toward the production of vast amounts of

12  documents containing confidential, privileged, and personally identifiable information having

13  nothing to do with the "Reorganized Debtors and their pre-bankruptcy acts, conduct, property,

14  liabilities and financial condition." (*See* Ex. A & B.)

15       24.    Furthermore, the confirmed Plan of Reorganization contains the following release:

16       The Rhodes Entities shall be deemed released from any and all Claims,
       obligations, rights, suits, damages, Causes of Action, remedies, and liabilities
17       whatsoever arising under chapter 5 of the Bankruptcy Code with respect to
       transfers made by the Debtors to the Rhodes Entities during the 2 years prior to the
18       Petition Date; provided, however, that such release shall only apply to transfers
       expressly set forth in the Schedules as Filed with the Bankruptcy Court as of
19       August 1, 2009 or as disclosed in Attachment B to the Mediation Term Sheet.

20  (Docket No. 1013 at Art. VIII ¶ E.)

21       25.    The Plan of Reorganization defines the "Rhodes Entities" as:

22       [James M.] Rhodes; Glynda Rhodes; John Rhodes; James M. Rhodes Dynasty
       Trust I; James M. Rhodes Dynasty Trust II; JMR Children's Irrevocable
23       Educational Trust; Truckee Springs Holdings, Inc.; Sedora Holdings LLC;
       Gypsum Resources, LLC; Tulare Springs Holdings, Inc.; Escalante-Zion
24       Investments, LLC; HH Trust; Harmony Homes, LLC; Tock, LP; Tapemeasure,
       LP; Joshua Choya, LLC; American Land Management, LLC; South Dakota
25       Conservancy, LLC; Meridian Land Company, LLC; Yucca Land Company, LLC;
       Sagebrush Enterprises, Inc.; Rhodes Ranch, LLC; Westward Crossing, LLC;
26       Pinnacle Equipment Rental, LLC; Desert Communities, Inc.; Spirit Underground,

LLC; Tropicana Durango Investments, Inc.; Tropicana Durango, Ltd. I; Dirt Investments, LLC; Underground Technologies, LLC; South Dakota Aggregate and Engineering, LLC; Freedom Underground, LLC; Jerico Trust; Canberra Holdings, LLC; Custom Quality Homes, LLC; and Rhodes Ranch Golf, Inc.; and ID Interior Design, LLC.

(Docket No. 1013 at Art. I ¶ A. 123.)

26.     The Plan of Reorganization also released Paul Huygens "from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtors . . . ." (Docket No. 1013 at Art. I ¶ A. 120 & Art. VIII ¶ D.)

27.     Despite the releases contained in the Plan of Reorganization, the Rule 2004 Subpoenas seek information relating entirely to James M. Rhodes, Glynda Rhodes, John Rhodes, Paul Huygens and nearly every one of the "Rhodes Entities." (*See* Ex. A at p. 2 ¶ 4 & p. 5 ¶ 10; Ex. B at p. 2 ¶ 4 & p. 5 ¶ 10.)

**<u>ARGUMENT</u>**

After an order issues for a Rule 2004 examination, an objection may be treated as a motion to quash pursuant to Fed. R. Civ. P. 45(c), made applicable through Rules 9016 and 2004 of the Federal Rules of Bankruptcy Procedure. *See Matter of Sutera*, 141 B.R. 539, 540–542 (Bankr. D. Conn. 1992). Alternatively, an objection to an order for a Rule 2004 examination may be treated as a motion to limit the scope of the examination or for a protective order under Fed. R. Civ. P. 26, made applicable through Rules 9014 and 7026 of the Federal Rules of Bankruptcy Procedure. *Id*. As discussed below, this Court should quash the Rule 2004 Subpoenas and Orders because they lack good cause and are overly expansive. At a minimum, however, the Court should issue a protective order limiting the scope of the Rule 2004 Subpoenas and protecting the confidential information sought.

I.     **THE RULE 2004 SUBPOENAS AND ORDERS SHOULD BE QUASHED.**

While the purpose of Rule 2004 is broad, it is not without limits. Initially, the examining party bears the burden of proving that good cause exists for taking the requested Rule 2004

examination.  *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992) (citing *Freeman v. Seligson*, 405 F.2d 1326, 1336 (D.C. Cir. 1968)).  To establish good cause, a party must demonstrate that "the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice. . . ."  *Id.* at 434–35.  "[T]he burden of showing good cause is an affirmative one and is not satisfied merely by a showing that justice would not be impeded by production of the requested documents."  *Id*. at 435.  If the examining party meets this burden of going forward, the burden shifts back to the objecting party who is said to bear the ultimate burden of proving that the examination would be improper.  *See, e.g.*, *In re Buick*, 174 B.R. 299, 304 (Bankr. D. Colo. 1994); *In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *Matter of Wilcher*, 56 B.R. 428, 435 (Bankr. N.D. Ill. 1985).

Furthermore, even if the Court finds good cause exists and the examination is proper, the examination may not delve into privileged or other protected matters.  *See* Fed. R. Civ. P. 45(c)(3).  Indeed, the scope of a 2004 examination is limited to "the acts, conduct, or property or to the liabilities and financial condition of the debtor or to any matter which may affect the administration of the debtor's estate, or to debtor's right to a discharge."  Fed. R. Bankr. P. 2004.  Thus, while Rule 2004 permits examinations of "third parties," the language of the rule makes it "evident that an examination may be had only of those persons possessing knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy."  *In re GHR Energy Corp*., 35 B.R. 534, 537 (Bankr.D.Mass.1983).  And, Rule 2004 "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs."  *Matter of Wilcher*, 56 B.R. at 434.  The examination of a witness about matters having no relationship or no effect on the administration of an estate is improper.  *See In re Johns–Manville, Inc*., 42 B.R. 362, 364 (S.D.N.Y.1984).  Furthermore, like other methods of discovery, Rule 2004 examinations may not be used to annoy, embarrass or oppress the party being examined.  *See In re Drexel Burnham Lambert Group, Inc*., 123 B.R. 702, 712 (Bankr.S.D.N.Y.1991).

**A.    The Litigation Trust Cannot Make the Requisite Showing of Good Cause.**

The Litigation Trust is seeking vast amounts of irrelevant, privileged and otherwise confidential information.  (*See* Ex. A & B.)  In *Wilcher*—a case dealing with the scope of Rule 2004 and production of documents—the court quashed the subpoena and accompanying order because the examiner could not show good cause for the examination.  *See Wilcher*, 56 B.R. at 435.  The court noted that the "[t]he wide scope of the intended discovery [had] not been supported by any facts . . . and appear[ed] on its face to delve into matters which have no probable relevance . . . ."  *Id.*  The court further noted that "the examiner [had] not alleged that the broad discovery sought [was] necessary to establish a claim or that denial of the discovery would result in undue hardship upon the examiner."  *Id.*

The information sought by the Litigation Trust has absolutely nothing to do with "the administration of the debtor's estate, or the debtor's right to a discharge" as required by Fed. R. Bankr. P. 2004(b).  The Litigation Trust has not alleged a single fact that would support such a vast witch-hunt.  Ultimately, the Litigation Trust has not shown, and cannot show, that the intended discovery is "necessary to establish a claim or that denial of the discovery would result in undue hardship."  Accordingly, the Rule 2004 Subpoenas and corresponding Rule 2004 Orders should be quashed.

**B.    The Rule 2004 Subpoenas and Orders Are Outside the Scope of Permissible Discovery.**

Even if the Litigation Trust can make an initial showing of good cause, the Rule 2004 Subpoenas and Orders are outside the permissible scope of discovery.  Any relevance or necessity of the information sought by the Rule 2004 Subpoenas is severely outweighed by the intrusion into the various individuals and entities personal and confidential affairs as well as the immense burden placed upon the subpoenaed entities.  Indeed, the wide scope of the Rule 2004 Subpoenas would impose a severe burden on the individuals and entities whose privileged and otherwise confidential information would be disclosed.  The subpoena served upon the Financial Institutions

calls for extensive personal financial records dating back to January 1, 2004.  (Ex. A at p. 8 ¶ 11).  For example, the subpoena requests "[a]ny and all documents evidencing the transactions and/or activity in accounts at the Bank held in the name of or for the benefit of any of the Individuals."  (*Id*. at p. 9 ¶ 9).   The subpoena then defines the term "Individuals" to include (1) James M. Rhodes, (2) Glynda Rhodes, (3) John Rhodes and (4) Paul Huygens.   (*Id*. at p. 5 ¶ 10).   Such disclosure will require the production of irrelevant and entirely confidential information, which will have nothing to do with the administration of the Debtors' bankruptcy estate.   By requesting similar information from the Title Companies and Other Professionals, the Litigation Trust would likely receive documents relating to every property ever purchased by the four "Individuals" or over 35 "Entities."   This would include, among other things, loan documents and loan applications for these individuals, which contain highly sensitive and personally identifiable information, on properties having absolutely no connection to the Debtors and no relation to the administration of the bankruptcy estate, which is clearly outside the bounds of a proper 2004 Examination and document request.

Furthermore, most of the documents requested in the subpoenas served upon the Law Firms constitute documents protected by the attorney-client privilege and/or work-product doctrine.   For example, the subpoena explicitly requests "[a]ll documents and communications referring or relating to any services or work performed by [the Law Firms] for any of the Entities [or] . . . Individuals."   (Ex. B at p. 9 ¶¶ 5–6).   The subpoenas also request "[a]ny and all documents or communications referring to or relating to any legal opinion or analysis on or regarding the legality of [any transaction entered into by any of the Individuals or Entities]."  (Ex. B. at p.11 ¶¶ 14(j) & 15(j).)  The subpoenas even go so far as to request "[a]ll calendars, diaries, notes, and desk files of [the Law Firms'] attorneys who performed any service or work for any of the Entities, Debtors, and/or Individuals."   (Ex. B. at p. 12 ¶ 19 (emphasis added).)  Such requests go far beyond the protections afforded by the Federal Rules of Civil Procedure.

1    Federal Rule of Civil Procedure 45(c)(3)(A) provides that "the issuing court must quash or

2    modify a subpoena that . . . (iii) requires disclosure of privileged or otherwise protected matter."

3    Fed. R. Civ. P. 45(c)(3)(A).   The Ninth Circuit has articulated the attorney-client privilege as

4    follows:

5        (1) Where legal advice of any kind is sought (2) from a professional legal adviser
         in his capacity as such, (3) the communications relating to that purpose, (4) made
6        in confidence (5) by the client, (6) are at his instance permanently protected
         (7) from disclosure by himself or by the legal adviser, (8) unless the protection be
7        waived.

8    *Ruehle*, 583 F.3d at 607 (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n. 2 (9th

9    Cir.1992) (citation omitted)).     Similarly, the work-product doctrine—codified in Fed. R.

10    Civ. P. 26(b)—protects all documents and information prepared by another party in anticipation

11    of litigation.  The work product doctrine articulated in Fed. R. Civ. P. 26(b)(3) applies to motions

12    under Fed. R. Bankr. P. 2004 through Fed. R. Bankr. P. 9014 and applies to all discovery,

13    whether or not litigation has been commenced.  *See In re Fin. Corp. of Am.*, 119 B. R. 728, 738

14    (Bankr. C.D. Cal. 1990).  Moreover, "those seeking to examine witnesses or records pursuant to

15    Rule 2004 are subject to applicable evidentiary privileges." *Id*. at 733.

16    The information requested in the Rule 2004 Subpoenas sent to the Law Firms is clearly

17    protected by the attorney-client privilege and the work-product doctrine.  The Litigation Trust has

18    done nothing to show that it can overcome these well-established rules of law.  The attorney-

19    client privilege is the cornerstone of the legal profession and this Court should preserve its

20    integrity by quashing the Rule 2004 Subpoenas.

21    **C.    The Rule 2004 Subpoenas Impose an Undue Burden on the Subpoenaed
            Entities.**
22

23    In addition to the blatant invasion to the various "Individuals" and "Entities" privacy, the

24    Rule 2004 Subpoenas impose an undue burden upon the subpoenaed entities.  For several of the

25    subpoenaed entities, complying with the Rule 2004 Subpoenas would take months and would cost

26    thousands, if not hundreds of thousands, of dollars.  The subpoenaed entities would be required to

1    pour through over seven years' worth of records for four "Individuals" and 37 "Entities" to

2    determine which documents fell within the discovery request.  Pursuant to the Rule 2004

3    Subpoenas, the subpoenaed entities are required to produce "the original, as well as all non-

4    identical duplicates or copies and/or drafts."  (Ex. A at p. 7 ¶ 4).  The subpoenaed entities are

5    even requested to account for every document that no longer exists or is no longer in the

6    subpoenaed entities possession, custody or control by identifying the documents (1) title,

7    (2) nature, (3) date, (4) author, (5) signatories, (6) recipients, (7) last known location and

8    (8) circumstances under which possession, custody or control was lost.  (Ex. A at p. 6 ¶ 3.)

9    Despite the extreme request, the Litigation Trust expects the Financial Institutions to produce the

10   requested documents by September 22, 2011.  For Fabian (and perhaps the other Law Firms), the

11   Litigation Trust has requested full compliance by September 29, 2011.  Complying with such

12   requests is certainly impossible.  Indeed, for the Law Firms, preparing a privilege log alone would

13   take months.

14          **D.**     **The Rule 2004 Subpoenas Inquire Into Matters Barred by the Releases**

15                 **Contained in the Plan of Reorganization.**

16        In addition, the Rule 2004 Subpoenas should be quashed because they seek information

17   related to claims which are barred by the releases contained in the Plan of Reorganization.  The

18   Litigation Trust is seeking discovery on claims that have been foreclosed by the releases

19   contained in the Plan of Reorganization.  The Litigation Trust is seeking vast amounts of

20   information related to the business, personal and financial activities of Jim M. Rhodes, Glynda

21   Rhodes, John Rhodes, Paul Huygens and 37 different entities.  However, nearly every one of

22   these individuals and entities received a release from the bankruptcy estate in the Plan of

23   Reorganization.  Indeed, Paul Huygens received a full release "from any and all Claims,

24   obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever,

25   including any derivative Claims asserted on behalf of the Debtors . . . ."  (Docket No. 1013 at

26

Art. I, ¶ A. 120 & Art. VIII, ¶ D.)  Likewise, Jim M. Rhodes, Glynda Rhodes, John Rhodes and nearly every one of the 37 entities received a release "from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever arising under chapter 5 of the Bankruptcy Code with respect to transfers made by the Debtors . . . during the 2 years prior to the Petition Date [March 31, 2009] . . . ."  (Docket No. 1013 at Art. VIII, ¶ E.)  Considering the broad releases, it is difficult to conceive of a single claim the Litigation Trust would not be foreclosed from pursuing.  *See, e.g., Matter of Wilcher*, 56 B.R. at 440 ("res judicata and collateral estoppel operate as a bar not only to actual relitigation but also to discovery which can only lead to relitigation of closed matters."); *In re Silverman*, 36 B.R. 254, 259 (Bankr. S. D. N. Y. 1984) ("To permit discovery as to these matters will only lead to the inevitable roadblock of res judicata which will bar the underlying claims on the merits.").

      **E.**      **The Rule 2004 Subpoenas Should be Quashed Because No Prior Notice was Given as Required by Fed. R. Civ P. 45(b)(1).**

Federal Rule of Civil Procedure 45(b)(1), provides that "[i]f [a] subpoena commands the production of documents . . ., then before it is served, a notice must be served on each party. Fed. R. Civ. P. 45(b)(1).  If a party fails to provide the requisite prior notice, the court may quash the underlying subpoena.  *See Firefighter's Ins. for Racial Equal. ex rel. Anderson v. St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000).  Here, the Litigation Trust has failed to provide prior notice of the Rule 2004 Subpoenas as required by Fed. R. Civ. P. 45(b)(1).  Fortunately, a third party contacted Rhodes' counsel regarding one of the Rule 2004 Subpoenas.  However, it is still not entirely clear what individuals or entities have been subpoenaed, when they were subpoenaed, or what information has been requested.  But what is clear is that the Rule 2004 Subpoenas delve deeply into Rhodes personal, financial and business affairs.  Based upon the clear mandate of Rule 45, Rhodes is entitled to notice of such an intrusive inquisition.  The Litigation Trust should not be allowed to conduct such an exhaustive and unwarranted investigation without giving

Rhodes (and all other parties in interest) notice.  Thus, this Court should quash the Rule 2004 Subpoenas because the Litigation Trust has failed to comply with the requirements of Fed. R. Civ. P. 45(b)(1).

**II.       AT A MINIMUM, THIS COURT SHOULD ISSUE A PROTECTIVE ORDER LIMITING THE SCOPE OF THE RULE 2004 SUBPOENAS.**

In the event this Court does not grant the motion to quash, it should issue a protective order limiting the scope of discovery and protecting the confidential information sought. Pursuant to Fed. R. Civ. P. 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *see also In re Mittco, Inc.*, 44 B.R. 35, 38 (E. D. Wis. 1984).  "A court has broad discretion to manage the discovery process in a fashion that will implement the philosophy of full disclosure of relevant information and at the same time afford the participants <u>maximum protection against harmful side effects</u>."  *In re Mittco, Inc*., 44 B.R. 35, 38 (E. D. Wis. 1984) (citing Moore's Manual, Federal Practice and Procedure, § 15.02[1] (1983) (emphasis added)). As set forth above, Rule 2004 "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs."  *Matter of Wilcher*, 56 B.R. at 434. Furthermore, Rule 2004 may not be used as a substitute for discovery. *See J&R Trucking, Inc.,* 431 B.R. 818, 821 (Bankr. N.D. Ind. 2010).  And examinations and document requests under Rule 2004 are limited to issues concerning the debtor's business or assets. *In re Fin. Corp. of Am.,* 119 B.R. 728 (Bankr. C.D. Ca. 1990).

As discussed in greater detail above, the expansive scope of the Rule 2004 Subpoenas calls for vast amounts of irrelevant, privileged and confidential information, including, among other things, personal bank accounts, real property records, legal services, domestic and marital matters, to name a few.  As such, the Litigation Trust's discovery requests go well beyond the permissible bounds of Rule 2004 and, in fact, violate the due process clause of the United States

1  Constitution.  Accordingly, in the event the Court does not grant the motion to quash, it should

2  issue a protective order (1) limiting the discovery requests to non-privileged information relating

3  only to the Debtors' business or assets; (2) restricting the Litigation Trust from inquiring into any

4  matter encompassed within the releases contained in the Plan of Reorganization; (3) requiring the

5  Litigation Trust to identify the documents it seeks and to provide a legitimate basis for its request

6  that is related to the administration of the Debtors' estate; and (4) providing that any documents

7  delivered to the Litigation Trust be marked as confidential and not disclosed to other persons.

8  **CONCLUSION**

9      For the reasons stated above, Rhodes respectfully requests that the Court enter an order

10  quashing the Rule 2004 Subpoenas and vacating the Rule 2004 Orders.  Alternatively, Rhodes

11  respectfully requests that the Court enter a protective order limiting the scope of the Rule 2004

12  Subpoenas and Rule 2004 Orders, as set forth above.

13      DATED this 14th day of September, 2011.

14

15

16             /s/ Kevin N. Anderson

17             Kevin N. Anderson
           David R. Hague

18             FABIAN & CLENDENIN
           *Attorneys for James M. Rhodes*

19

20

21

22  4821-2926-2858, v.  1

23

24

25

26