# EXHIBIT 3

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

THE HON. DAVID A. EZRA, U.S. DISTRICT JUDGE,

PRESIDING

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>) Case No:<br>) 2:05-cr-121-DAE-RJJ<br>vs. )<br>)<br>ROBERT DAVID KAHRE, et al., )<br>)<br>Defendants. )<br>) | |

REPORTER'S PARTIAL TRANSCRIPT OF JURY TRIAL

(TESTIMONY OF HEIDI MOLESWORTH)

TUESDAY, JULY 7, 2009

APPEARANCES:   (See Page 2)

Court Reporter:   Andrea N. Picard, CRR, CCR NO. 887

APPEARANCES:

For Plaintiff:

    J. GREGORY DAMM, ESQ.
    ASSISTANT UNITED STATES ATTORNEY
    333 Las Vegas Boulevard South
    Suite 5000
    Las Vegas, Nevada 89101
    TEL: (702) 388-6336

For Defendant Robert A. Kahre:

    WILLIAM A. COHAN, ESQ.
    WILLIAM A. COHAN, P.C.
    PO BOX 3448
    Rancho Santa Fe, California 92067
    TEL: (858) 832-1632

For Defendant Robert A. Kahre:
(Local counsel)

    LISA RASMUSSEN, ESQ.
    LAW OFFICE OF LISA RASMUSSEN
    616 South 8th Street
    Las Vegas, Nevada 89101
    TEL: (702) 461-1436

For Defendant Alexander C. Loglia:

    JOEL F. HANSEN
    ATTORNEY AT LAW
    415 South 6th Street
    Las Vegas, Nevada 89101
    TEL: (702) 385-5533

**Page 3**

APPEARANCES:
(Continued)

For Defendant Lori Kahre:
   MICHAEL J. KENNEDY, ESQ.
   FIRST ASSISTANT FEDERAL DEFENDER
   411 East Bonneville Street
   Suite 250
   Las Vegas, Nevada 89101
   TEL: (702) 388-6577

For Defendant Danille Cline:

   LYNN E. PENAGAKOS
   ATTORNEY AT LAW
   345 Queen Street
   Honolulu, Hawaii 96813
   TEL: (808) 521-3336

**Page 4**

LAS VEGAS, NEVADA; WEDNESDAY, JULY 7, 2009, 8:42 AM
-oOo-
PROCEEDINGS

THE COURT: All right. Any reason why we can't bring the jury in?

MR. DAMM: No, Your Honor.

THE COURT: Bring the jury in.

(Jurors entered proceedings.)

THE COURT: All right. Good morning, ladies and gentlemen. Nice to see you back. The court would note the presence of all counsel, ladies and gentlemen of the jury. And I would remind you you remain under oath. Okay.

MR. COHAN: I can barely hear you, judge.

THE COURT: Is that better?

MR. COHAN: Now that's much better.

THE COURT: Is that better?

MR. COHAN: Much better. Thank you.

THE COURT: I was going to say, "Is that a bad thing?"

MR. COHAN: Fifth Amendment.

MR. DAMM: Good morning, Your Honor, ladies and gentlemen of the jury.

///
///

**Page 5**

1  DIRECT EXAMINATION (Continued)
2  BY MR. DAMM:
3  Q  Good morning, Ms. Molesworth.
4  A  Good morning.
5  Q  How are you this morning?
6  A  Fine. Thank you.
7  Q  Yesterday we were talking about some exhibits
8  in the 9N series, 9N.1 through -126 -- or -125
9  regarding ABC Roofing. Do you recall those exhibits?
10  A  Yes, I do.
11  Q  Can you tell us again what the relationship
12  ABC Roofing had to Robert Kahre's businesses?
13  A  ABC Roofing was one of the payroll companies
14  that Bobby's businesses did. Bobby was contracted out
15  to do the payroll for the company.
16  Q  And how did that payroll service --
17  THE COURT: You have to speak -- the easiest
18  way to do it -- see, what's happening is the mic is
19  there, and you're speaking this way; so why don't you
20  move this over a little bit, the mic this way, and then
21  you'll speak right into it.
22  THE WITNESS: Okay. What was the question
23  again?
24  BY MR. DAMM:
25  Q  We were talking about ABC Roofing. And what

**Page 6**

1  relationship did ABC Roofing have with Robert Kahre's
2  businesses?
3  A  Bobby did the payroll for the company.
4  Q  And how did that process work?
5  A  They turned in time and hours on time sheets
6  to -- usually, it was Lori. She processed it, sent
7  them out an invoice, and then they cut a check for the
8  amount of the payroll, plus a fee.
9  Q  And what would happen to the check?
10  A  It would be picked up by one of the runners
11  or Bobby and cashed on payday, and then the check would
12  be -- the cash from the check would be brought to the
13  payroll office.
14  Q  And what would happen to the cash?
15  A  It would be divided up into different
16  envelopes according to the list that was given to us.
17  Q  And were there names on the envelopes?
18  A  Yes, there was.
19  Q  Whose names were on the envelopes?
20  A  The workers from that company.
21  Q  And would those envelopes be distributed at
22  some point in time?
23  A  Yes, usually.
24  Q  And from where would they be distributed?
25  A  From the payroll office.

### Page 7

1  Q  And would sometimes one representative from
2  the company come in and pick up all of the envelopes?
3  A  Yes.
4  Q  What I'd like to do now is to ask you to take
5  a look at another set of exhibits. This would be
6  910.174 through -181 regarding American Bar & Cabinet.
7  Do you have those exhibits in front of you?
8  A  Yes, I do.
9  Q  And do you recognize them?
10  A  Yes, I do.
11  Q  And how do you recognize them?
12  A  It was the invoice sent out to this
13  particular company for payroll that week.
14  Q  And are these records similar to the ones for
15  ABC Roofing and Action Concrete?
16  A  Yes.
17  Q  And was this done on a regular -- on a
18  regular weekly basis with Mr. Robert Kahre's companies?
19  A  Yes.
20  Q  And you actually worked in this process?
21  A  Yes.
22  Q  And the portion you worked in was what?
23  A  I usually handed out payroll -- put the cash
24  in the envelopes and handed out the payroll.
25  Q  And, on occasion, if Lori Kahre was absent,

### Page 8

1  did you fill in for her?
2  A  Yes.
3  Q  And would you receive the pay sheets from the
4  companies?
5  A  Yes.
6  Q  And would you create the invoices?
7  A  Yes.
8  MR. DAMM: Your Honor, at this time I'd move
9  for the admission of Government's Exhibit 9.10.174
10  through -181.
11  MR. KENNEDY: No objection, Your Honor.
12  MS. PANAGAKOS: No objection.
13  BY MR. DAMM:
14  Q  Ms. Molesworth, we have --
15  THE COURT: Ms. Rasmussen is not present,
16  Mr. Cohan. I assume there's no objection.
17  MS. RASMUSSEN: Your Honor, it's --
18  MR. COHAN: She's --
19  MS. RASMUSSEN: I said --
20  THE COURT: Oh --
21  MS. RASMUSSEN: -- I believe I stated --
22  THE COURT: I beg your pardon.
23  MS. RASMUSSEN: And I apologize.
24  THE COURT: My fault.
25  MR. KENNEDY: No problem, Your Honor.

### Page 9

1  Mr. Barry is out sick, as you know, so Ms. Rasmussen
2  moved over to his chair.
3  THE COURT: That's what kind of threw me off.
4  MR. KENNEDY: Right.
5  THE COURT: She's in a different chair than
6  she normally sits. All right. The document will be
7  received.
8  (Plaintiff's Exhibit 9.10.174 through
9  -181 was admitted into evidence.)
10  MR. DAMM: Thank you, Your Honor.
11  BY MR. DAMM:
12  Q  Ms. Molesworth, we -- we have a number of
13  these to go through, and what I'd like to do is I'd
14  like to just go through the documents, seek their
15  admittance, and then we can come back and talk about
16  them, if -- if that's okay with you.
17  A  Of course.
18  Q  Referring now to 9.10.182 through -191, do
19  you recognize those documents?
20  A  Yes, I do.
21  Q  And to which company do they pertain?
22  A  American Graffiti.
23  Q  And is American Graffiti another company that
24  participated in Mr. Kahre's payroll system?
25  A  Yes.

### Page 10

1  Q  And processed work as previously described
2  with ABC Roofing, Action Concrete, and American Bar &
3  Cabinet?
4  A  Yes.
5  MR. DAMM: Your Honor, at this time I'd move
6  for 9.10.182 through -191.
7  MS. RASMUSSEN: No objection.
8  MR. KENNEDY: No objection, Your Honor.
9  THE COURT: All right. Be received.
10  (Plaintiff's Exhibits 9.10.182 through
11  9.10.191 were admitted into evidence.)
12  BY MR. DAMM:
13  Q  Let's take a look at 9.10.192 through -207.
14  Do you recognize these documents?
15  A  Yes, I do.
16  Q  And how do you recognize them?
17  A  They're invoices that were sent out to the --
18  the companies for the payroll system.
19  Q  And which company do they pertain to?
20  A  This one is Aspen Homes.
21  Q  And were they created in the similar fashion
22  that you've discussed?
23  A  Yes.
24  MR. DAMM: Your Honor, at this time I'd move
25  for the admission of 9.10.192 through -207.

Page 11

1   MR. KENNEDY: No objection, Your Honor.
2   MS. RASMUSSEN: No objection.
3   THE COURT: All right. It will be received.
4   (Plaintiff's Exhibits 9.10.192 through
5   9.10.207 were admitted into evidence.)
6   BY MR. DAMM:
7   Q   And if we could move now to 9.10.208 through
8   -237. Do you recognize these documents?
9   A   Yes, I do.
10  Q   And what company do they pertain to?
11  A   BHB.
12  Q   And, again, these were payroll documents
13  processed through Robert Kahre's companies?
14  A   Yes.
15  MR. DAMM: Your Honor, at this time I'd move
16  for the admission of 9.10.208 through -237.
17  MR. KENNEDY: No objection, Your Honor.
18  MS. RASMUSSEN: No objection.
19  THE COURT: All right. Be received.
20  (Plaintiff's Exhibits 9.10.208 through
21  9.10.237 were admitted into evidence.)
22  BY MR. DAMM:
23  Q   And, Ms. Molesworth, 9.10.238 through -305 --
24  do you recognize these documents?
25  A   Yes, I do.

Page 12

1   Q   And they're payroll documents again?
2   A   Yes, they are.
3   Q   For what company?
4   A   Big Bear Concrete.
5   Q   And kept and maintained and processed in the
6   same manner was previously discussed?
7   A   Yes, sir.
8   MR. DAMM: Your Honor, at this time I'd move
9   for the admission of 9.10.238 through -305.
10  MR. KENNEDY: I don't think I have an
11  objection, Your Honor, but if you'd just give me a
12  moment to look through them.
13  THE COURT: Sure.
14  MR. KENNEDY: No objection, Your Honor.
15  MS. RASMUSSEN: None here either.
16  THE COURT: All right. It will be received.
17  (Plaintiff's Exhibits 9.10.238 through
18  9.10.305 were admitted into evidence.)
19  BY MR. DAMM:
20  Q   And, Ms. Molesworth, 9.10.306 through -333.
21  A   They're not here.
22  MR. DAMM: May I have the court's indulgence
23  to obtain another binder?
24  THE COURT: Yes.
25  MR. DAMM: Thank you, Your Honor.

Page 13

1   BY MR. DAMM:
2   Q   Have you found -306 through -333?
3   A   Yes, I have.
4   Q   And can you tell me what these documents
5   represent?
6   A   Invoices to Bingham Construction for payroll.
7   Q   And were these created in the same fashion as
8   previously discussed?
9   A   Yes.
10  MR. DAMM: Your Honor, at this time I'd move
11  for the admission of 9.10.306 through -333.
12  MR. KENNEDY: No objection, Your Honor.
13  MS. RASMUSSEN: No objection, Your Honor.
14  THE COURT: All right. It will be received.
15  (Plaintiff's Exhibits 9.10.306 through
16  9.10.333 were admitted into evidence.)
17  BY MR. DAMM:
18  Q   And, Ms. Molesworth, 9.10.334 through -342.
19  A   Okay.
20  Q   Do you recognize these documents?
21  A   Yes, I do.
22  Q   And what do they represent?
23  A   Invoicing to Bowles Plumbing for payroll.
24  Q   And processed in the same manner as
25  previously discussed?

Page 14

1   A   Yes.
2   MR. DAMM: Your Honor, at this time I'd move
3   for the admission of 9.10.334 through -342.
4   MR. KENNEDY: No objection.
5   MS. RASMUSSEN: Okay. No objection.
6   THE COURT: All right.
7   (Plaintiff's Exhibits 9.10.334 through
8   9.10.342 were admitted into evidence.)
9   BY MR. DAMM:
10  Q   And, Ms. Molesworth, could you take a look at
11  9.10.343 through -394.
12  A   Okay.
13  Q   Do you recognize these documents?
14  A   Yes, I do.
15  Q   And what do they represent?
16  A   Billing to Bravo for payroll.
17  Q   And processed in the same manner?
18  A   Yes.
19  MR. DAMM: I'd move for the admission, Your
20  Honor, of 9.10.343 through -394.
21  MR. KENNEDY: Your Honor, if I could just
22  have a moment to go through them?
23  THE COURT: Sure.
24  MR. KENNEDY: Thank you.
25  A JUROR: Your Honor, we're still having

Page 83

1  Q  How did he handle the --
2  A  He paid them cash and took care of their
3  medical bills.
4  Q  And let's take a look at one more of these
5  invoices, if we could.
6     MR. DAMM: Ms. King, if we could take a look
7  at 9.10.290.
8  BY MR. DAMM:
9  Q  Do you recognize this invoice?
10 A  I recognize the format, like we've talked
11 about before.
12 Q  And do you recognize the company Big Bear
13 Concrete?
14 A  Yes, I do.
15 Q  Is that a company for which Mr. Robert Kahre
16 provided payroll services?
17 A  Yes.
18    MR. DAMM: And if we could take a look at
19 9.10.291.
20 BY MR. DAMM:
21 Q  Ms. Molesworth, would this be a list of the
22 names that were to be paid by Mr. Robert Kahre?
23 A  It looks like it.
24 Q  And these were individuals that worked for
25 Big Bear Concrete?

Page 84

1  A  Yes.
2     MR. DAMM: And if we could go back to
3  9.10.290.
4  BY MR. DAMM:
5  Q  There's a figure at the bottom of this
6  invoice for $4,664. Do you see that, Ms. Molesworth?
7  A  Yes, I do.
8  Q  Do you know what that represents?
9  A  It doesn't have a label on it, but I'm
10 assuming that it means the extra materials.
11 Q  Were there invoices created sometimes that
12 didn't say "extra materials"?
13 A  Obviously, there was. I didn't create those,
14 but yes.
15 Q  And that would have, again, been Mr. Robert
16 Kahre's fee?
17 A  Yes.
18 Q  And I think we may have taken a look at a
19 list of jobs rather than a list of employees.
20    MR. DAMM: If we could go to 9.10.292.
21    MS. RASMUSSEN: Your Honor, objection to the
22 use of the word "employees": Lacks foundation.
23    MR. DAMM: I'll call them "workers," Your
24 Honor.
25 ///

Page 85

1  BY MR. DAMM:
2  Q  Would this be the list of the Big Bear
3  workers?
4     MR. DAMM: Maybe we can just enlarge a
5  portion of that, Ms. King.
6     THE WITNESS: It looks like it, yeah.
7     MR. DAMM: And if we could enlarge the
8  section at the very bottom.
9  BY MR. DAMM:
10 Q  And can you tell us what those last three
11 figures represent at the far right-hand column?
12 A  You want the three figures on the right? It
13 looks like $27,400, which is the payroll amount, times
14 1.17. That would equal the fee for Bobby, and then the
15 total for both of them.
16 Q  All right. Thank you, Ms. Molesworth.
17    I'd like to ask you to take a look now at an
18 exhibit that has not yet been admitted into evidence,
19 and that's 6.97.1.
20    MR. DAMM: And if I might approach the
21 witness --
22    THE COURT: Yes.
23    MR. DAMM: -- Your Honor?
24 BY MR. DAMM:
25 Q  Do you recognize that exhibit,

Page 86

1  Ms. Molesworth?
2  A  Yes. It's a list of the payroll companies
3  and their addresses, the companies that used Bobby's
4  payroll service.
5  Q  Can you speak up just a little -- little bit?
6  A  It's a name and address listing of the
7  contractors who use Bobby's payroll service.
8  Q  And do you recognize the handwritten note on
9  this form?
10 A  Yes. That's my writing.
11 Q  And to whom is this note addressed?
12 A  Alex.
13 Q  And by "Alex," who do you mean?
14 A  Alex Loglia.
15 Q  And do you recall the purpose for providing
16 this information to Mr. Loglia?
17 A  No.
18 Q  But it -- it does relate to the payroll
19 companies?
20 A  Yes, it does. That's who's on -- those are
21 the only people that are on here.
22 Q  To your knowledge, was Mr. Loglia involved
23 with the payroll system?
24 A  I never had any direct contact with him with
25 the payroll system. It's possible.

Page 87

1  Q  Do you know what would have prompted your
2  sending this particular document to him?
3  A  He would have asked for me it.
4      MR. DAMM: Your Honor, at this time I move
5  for the admission of Government's Exhibit 6.97.1.
6      MR. HANSEN: No objection.
7      MR. KENNEDY: No objection, Your Honor.
8      MS. RASMUSSEN: No objection.
9      THE COURT: Be received.
10     (Plaintiff's Exhibit 6.97.1 was admitted
11     into evidence.)
12     MR. DAMM: And if we could publish that to
13 the jury?
14     THE COURT: Yes.
15 BY MR. DAMM:
16 Q  And, Ms. Molesworth, just to help the jury
17 understand this document, the printed names on this
18 document refer to what?
19 A  The general contractor's name.
20 Q  And these are general contractors that
21 participated in the payroll system?
22 A  Yes, yes.
23 Q  And then the note --
24     MR. DAMM: If we could enlarge that,
25 Ms. King.

Page 88

1      MR. HANSEN: Your Honor, beyond the fact that
2  it's on there, she's already indicated she has no
3  knowledge what it's about and so on, so I would object
4  to any further questions with regard to the note. She
5  doesn't know anything about it.
6      MR. DAMM: I don't have any further questions
7  that I was going to ask her anyway, Your Honor.
8      THE COURT: Okay.
9      MR. HANSEN: I withdraw the objection then.
10 BY MR. DAMM:
11 Q  Now, Ms. Molesworth, let me ask you about the
12 payroll system now just for the other contractors.
13 Were they required to go through the same exchange
14 system at the two windows as all of Mr. Robert Kahre's
15 workers?
16 A  Yes.
17 Q  At the end of the year, did any of the
18 workers for the other contractors receive a W-2 form
19 for Mr. Kahre?
20 A  No.
21 Q  Did they receive a 1099 form for Mr. Robert
22 Kahre?
23 A  No.
24 Q  Did you have any discussions with Lori Kahre
25 regarding why this information was not provided to the

Page 89

1  Internal Revenue Service?
2  A  Because we were independent subcontractors,
3  that Bobby wasn't going to keep the Government's books.
4  Q  Bobby wasn't going to keep the Government's
5  books?
6  A  Yeah.
7  Q  And who told you that?
8  A  Lori.
9  Q  Did you ask her what she meant by that?
10 A  I knew what she meant.
11 Q  And what did she mean?
12 A  It means we weren't going to do their
13 accounting work for them.
14 Q  Did she indicate why?
15 A  No. We kind of just dropped it after that.
16 Q  And is that the reason, to your knowledge,
17 that Mr. Robert Kahre never provided a W-2 form to
18 anyone?
19     MS. RASMUSSEN: Objection: Lack of
20 foundation; calls for speculation.
21     MR. DAMM: I'm just asking her her knowledge.
22 This is just --
23     THE COURT: Objection is overruled.
24     THE WITNESS: Would you repeat the question,
25 please.

Page 90

1  BY MR. DAMM:
2  Q  To your knowledge, is this the reason that
3  Mr. Robert Kahre never provided a W-2 income form to
4  any workers or to the IRS?
5  A  I don't know. We were expected to keep our
6  own -- keep track of our own payroll, our own -- what
7  we took in every week, so I guess the answer to that is
8  yes.
9  Q  And is that the same for a 1099 form?
10 A  I didn't know that much about the 1099s back
11 then, so -- I was only familiar with the personal tax
12 forms.
13 Q  And that would have been the W-2?
14 A  Yeah.
15 Q  Now, all of the -- the other contractors that
16 used Mr. Robert Kahre's payroll system were charged a
17 fee for their participation in the system?
18 A  Yeah. I don't know if "participation" is the
19 right word. It was the service that Bobby provided.
20 Q  The payroll service that Bobby provided to
21 the other contractors was the -- the payment that
22 you've just described of putting the cash in the
23 envelopes?
24     MS. RASMUSSEN: Objection: Leading.
25     THE COURT: It's leading.

## Page 91

1   MR. DAMM: I'll rephrase the question.
2   BY MR. DAMM:
3   Q   What was the payroll service that Mr. Robert
4   Kahre provided to the other contractors?
5   A   We would take care of doing the payroll.
6   They would give us one lump sum, and we would
7   distribute it accordingly.
8   Q   And you did that in cash?
9   A   Yes.
10  Q   And for that Mr. Robert Kahre charged each of
11  the other contractors a fee every week?
12  A   Yes.
13  MS. RASMUSSEN: Objection: Asked and
14  answered.
15  THE COURT: Overruled.
16  BY MR. DAMM:
17  Q   And that's the fee that we saw reflected on
18  the invoices that we just took a look at?
19  A   Yes.
20  Q   What I'd like to do now, Ms. Molesworth, is
21  to ask you to take a look at some exhibits in the 95
22  series.
23  MR. DAMM: And if I might have the Court's
24  indulgence to obtain a binder?
25  ///

## Page 92

1   BY MR. DAMM:
2   Q   Ms. Molesworth, do you recognize what's been
3   previously marked as Government's Exhibit 95.1.1?
4   A   Yes, I do.
5   Q   How do you recognize it?
6   A   They're the payroll vouchers we had to sign
7   before we were paid.
8   Q   And can you tell me who generated these
9   documents? Who prepared them?
10  A   Usually it was Lori.
11  Q   By "Lori," you mean Lori Kahre?
12  A   Yes.
13  Q   And what did this type of document represent?
14  A   The gold and/or silver amounts that we were
15  to receive when we were paid.
16  Q   And is that the same for 95.1 through 95.16,
17  if you could take -- take a look at all of these
18  documents, 1 through 16.
19  A   Part of this document I can't even read.
20  Q   And which one are you referring to?
21  A   95.0022.
22  Q   All right. Thank you. And can you continue
23  through the documents, please.
24  A   I recognize them.
25  Q   You recognize them all?

## Page 93

1   A   Yes, I do.
2   Q   And can you tell me what they all represent?
3   A   They're the vouchers we were given to sign
4   for the gold or silver we were to receive before we
5   were paid.
6   Q   And who gave those to you?
7   A   Who gave them to us?
8   Q   Yes.
9   A   Usually, it was Lori Kahre, whoever was
10  working behind the window.
11  MR. DAMM: Your Honor, at this time I'd move
12  for the admission of Government's Exhibit 95.1 through
13  95.16.
14  MR. KENNEDY: Just a couple brief questions,
15  Your Honor. I don't believe I have any objections to
16  them.
17  THE COURT: All right.
18  VOIR DIRE EXAMINATION
19  BY MR. KENNEDY:
20  Q   Ms. Molesworth, these are obviously
21  photocopies; right?
22  A   Yes.
23  Q   All right. The actual -- and they're called
24  "intercompany warrants"?
25  A   Vouchers, yeah.

## Page 94

1   Q   Or vouchers, okay.
2   Originally, they were -- we're looking at the
3   top portion, and there was a bottom portion that one
4   could tear off, and then it was handed to the person as
5   the voucher. Is that how it worked?
6   A   Yeah.
7   Q   Okay. So just so the jury has this in mind,
8   it's sort of like you get a bill, and the portion you
9   send back with the bill -- you rip that portion along
10  the perforated line? Is that how these were set up?
11  A   All we ever got was the actual voucher, just
12  that one piece.
13  Q   Okay. So at the -- at the window, when you
14  received the gold and silver coin, they sign the
15  portion that you kept, and then you provided them with
16  the other portion of the voucher; right?
17  A   No.
18  Q   Isn't that the part that ripped, the bottom
19  portion?
20  A   We didn't never keep the bottom portion.
21  They were always torn off prior to coming down to the
22  warehouse.
23  Q   Okay. So do you have any idea why they
24  weren't made part of this or --
25  A   I don't know.