E-Filed on 9/23/2011

**DIAMOND MCCARTHY LLP**
1201 Elm Street, 34th Floor
Dallas, Texas 75270
(214) 389-5300 (telephone)
(214) 389-5399 (facsimile)

Eric D. Madden, TX Bar No. 24013079
Email: emadden@diamondmccarthy.com
Michael J. Yoder, TX Bar No. 24056572
Email: myoder@diamondmccarthy.com
Jacob J. Roberts, TX Bar No. 24065982
Email: jroberts@diamondmccarthy.com

*Counsel for the Litigation Trust*
*of The Rhodes Companies, LLC, et al.*

**LAW OFFICE OF BRIAN D. SHAPIRO, A NEVADA LLC**
411 E. Bonneville Ave., Suite 300
Las Vegas, Nevada 89101
(702) 386-8600 (telephone)
(702) 383-0994 (facsimile)

Brian D. Shapiro, NV Bar No. 5772
Email: bshapiro@brianshapirolaw.com

*Local Counsel for the Litigation Trust of*
*The Rhodes Companies, LLC, et al.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE:<br><br>THE RHODES COMPANIES, LLC,<br>   Aka "Rhodes Homes", *et al.*,<br><br>            Reorganized Debtors.[1]<br><br>Affects:<br>☒ All Debtors<br>☐ The following Debtor(s) | Case No. BK-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>**LITIGATION TRUST'S RESPONSE TO MOTION TO QUASH SUBPOENAS**<br><br>Status Hearing Date:  September 27, 2011<br>Status Hearing Time:  10:30 a.m. |

      The Litigation Trust of The Rhodes Companies, LLC, et al. (the "Litigation Trust") respectfully submits this response to the motion to quash filed by James M. Rhodes ("Rhodes") and states as follows:

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC 90206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Ralty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Clubb, LLC (7132); Pinnacle Grading, LLC (4838).

PAGE 1

## I.    INTRODUCTION

Having first caused the dissipation of the Debtors assets, Rhodes now seeks to thwart the Litigation Trust's investigation of claims against him and the other Rhodes Entities by filing the instant motion to quash every single third party subpoena served by the Litigation Trust pursuant to Rule 2004 and Rule 9016. Notwithstanding the inconsistent (and seemingly disingenuous) positions taken by Rhodes in the brief in support of his motion, Rhodes is undoubtedly well aware of the significant potential liability he could face to the Litigation Trust as a result of his misdeeds if the Litigation Trust were able to obtain necessary discovery from the third parties that have been subpoenaed.

Through its preliminary investigation, the Litigation Trust has identified what appear to be numerous wrongful transfers of Debtor funds to or for the benefit of the Rhodes Entities. In several such instances, it appears that funds originating from the Debtors were wrongfully transferred to various third parties for the benefit of the Rhodes Entities. In turn, the Litigation Trust has sought discovery from these entities to investigate: (1) the purposes for which such suspect transfers were made; and (2) whether the Debtor may have received any economic benefit in exchange for the transfers, information which is not readily available from the Debtors' records. The Litigation Trust has only sought Rule 2004 discovery from entities that received funds originating from the Debtors; in other words, *every single entity* that has been subpoenaed received Debtor assets pre-petition.

Rhodes first challenges this necessary discovery on the basis that the Litigation Trust does not have any claims against him or any of the Rhodes Entities, both on the facts and as a result of a release contained with the Third Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al. (the "Plan"). This argument ignores the plain language of the release, which *only* apples to: (a) Chapter 5 claims relating to (b) transfers made within two years of the petition date that (c) have been specifically identified in certain filings in this Court. All other claims against Rhodes and the other Rhodes Entities— including claims arising out of transfers made two years before the petition date, common law

claims such as breach of fiduciary duty, and claims related to undisclosed transfers made within two years of the petition date—have <u>not</u> been released.

Indeed, the tenuous nature of Rhodes' arguments pertaining to the Litigation Trust's purported lack of any claims against the Rhodes Entities is perhaps best illustrated by his own actions in litigating his proof of claim. As Rhodes states in the brief filed in support of his motion to quash, "Rhodes repeatedly has informed the Court that he does not seek to collect his claim for the taxes paid from the Debtors, but *merely seeks a setoff against any claims the Reorganized Debtors (through the Litigation Trust) may have against him*."[2] Why would Rhodes vigorously litigate a claim for setoff—filing both an appeal to the District Court and a subsequent motion for reconsideration—if the underlying claims had been released?

After launching this meritless attack on the Litigation Trust's underlying basis for seeking discovery, Rhodes then argues that the subpoenas should be quashed because they seek privileged and/or confidential information, and are otherwise unduly burdensome. In doing so, Rhodes attempts to assert objections that he does not hold. First, Rhodes attempts to assert the attorney-client privilege as a basis for quashing the subpoenas even though Rhodes has not asserted—or established by affidavit or otherwise—that he personally holds any attorney-client privilege with respect to documents maintained by the subpoenaed law firms. Second, Rhodes argues that the subpoenas would impose an "undue burden" on the subpoenaed third parties, even though the third parties themselves have almost universally agreed to produce responsive documents after conferring with the Litigation Trust. This Court should not permit Rhodes to thwart the Litigation Trust's investigation on such hypothetical objections.

## II.    FACTUAL BACKGROUND

Through its preliminary investigation, the Litigation Trust has uncovered what appear to be several instances of wrongful dissipation of Debtor assets to or for the benefit of Jim Rhodes

---

[2] Memorandum of Law in Support of Motion to Quash Orders of Rule 2004 Examination and Corresponding Subpoenas and/or for Protective Orders (hereinafter, the "Motion") at 3 (emphasis added).

and/or other Rhodes Entities.[3]  These suspect transactions date at least as far back as November 2005 and continued up to the point of the Debtors' petition date, and generally fall into one or more of several categories, including the following:

- <u>Transfers made to pay Rhodes' personal income taxes</u>.  It appears that tens of millions of dollars of Debtor funds were used to pay Rhodes' personal income tax obligations in late 2005 and 2006;

- <u>Transfers made to financial institutions, evidently for Rhodes' personal benefit</u>.  It appears that hundreds of thousands, if not millions, of dollars of Debtor funds were used to pay Rhodes' personal credit card bills or otherwise advance to accounts held at various financial institutions;

- <u>Transfers made to law firms for the benefit of the Rhodes Entities</u>.  It appears that Debtor funds were used to pay fees for legal services that did not benefit the Debtors.  For example, it appears that Debtor Heritage Land Company, LLC transferred $100,000 and $56,114.00 to Fabian & Clendenin on December 8, 2008 and December 18, 2008, respectively.  Presumably, these payments were for legal services rendered to Rhodes and/or the Rhodes Entities.[4]

In addition, it appears that millions of dollars of Debtor funds may have been transferred to title companies and financial institutions to: (1) obtain real property for the Rhodes Entities; and/or (2) remove encumbrances on real property previously held by Rhodes Entities.

To further its investigation into these and other suspected misuses of Debtor funds, the Litigation Trust sought to obtain discovery from several third parties pursuant to Federal Rule of Bankruptcy Procedure Rule 2004.  Each of the entities from whom discovery was sought is an entity that is believed to have received funds originating from the Debtors.[5]  To the extent that any subpoenaed entities have raised any issues with the scope of any document requests or the dates for compliance, the Litigation Trust and the subpoenaed entities have been able to amicably resolve such issues through the meet and confer process.[6]

---

[3] Declaration of Jacob J. Roberts (hereinafter, the "Roberts Decl.") at ¶5.

[4] Fabian & Clendenin presumably did not represent the Debtors, as otherwise there would appear to be a conflict of interest in its instant representation Rhodes.

[5] Roberts Decl. at ¶6.

[6] Roberts Decl. at ¶8.

## III. LEGAL STANDARDS

### A. FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004

Under Rule 2004, on motion of any party in interest, the court may order the examination of any person or entity with respect to:

> [t]he acts, conduct, or property or . . . the liabilities and financial condition of the debtor, or … any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a . . . reorganization case under chapter 11 of the Code, . . . the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefore, and any other matter relevant to the case or to the formulation of a plan.[7]

Rule 2004 examinations are "broad and unfettered and in the nature of fishing expeditions."[8] The primary purpose of allowing such broad discovery under Rule 2004 is to "expedite the locating of assets of the estate."[9] Rule 2004 examinations are appropriate for "discovering assets, examining transactions, and determining whether wrongdoing has occurred."[10] Further, Rule 2004 allows a "trustee to do the necessary investigatory work without the need for initiating formal litigation which would trigger the traditional discovery tools. Indeed, one purpose for such an examination is to give the trustee the information needed to determine whether litigation should be filed."[11]

The permissive discovery mechanism provided by Rule 2004 is appropriate unless the discovery sought is related to a pending adversary proceeding.[12] Even if litigation is "sure to be filed," Rule 2004 discovery is still appropriate because discovery pre-suit can "be critical to ensure that no viable cause of action is lost, for while it may be certain suit will be filed against

---

[7] FED.R. BANKR. P. 2004(b).

[8] *E.g. In re Enron*, 281 B.R. 836, 840 (S.D.N.Y. 2002); *In re J&R Trucking*, 431 B.R. 818, 821 (Bankr. N.D. Ind. 2010); *In re Bennett*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996).

[9] *In re Parikh*, 397 B.R. 518, 526 (Bankr. E.D.N.Y. 2008).

[10] *In re Enron*, 281 B.R. 836, 840 (S.D.N.Y. 2002).

[11] *In re J&R Trucking*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010).

[12] *In re Bennett*, 203 B.R. 24, 29 (Bankr. N.D.N.Y. 1996).

[a potential defendant], that does not mean all possible claims, some of which might soon be lost [to limitations], have been identified."[13]

Generally, good cause exists if the party seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests.[14] Moreover, in determining that there was good cause for a Rule 2004 examination, it is appropriate for a court to rely on representations of counsel.[15]

### IV.    ARGUMENT

**A.    THE DISCOVERY SOUGHT BY THE LITIGATION TRUST IS NECESSARY FOR ITS INVESTIGATION OF CLAIMS AGAINST THE RHODES ENTITIES.**

**1.    The Discovery Sought is Relevant to the Litigation Trust's Potential Claims against the Rhodes Entities.**

To date, the Litigation Trust has identified what appear to be numerous wrongful transfers of Debtor funds to or for the benefit of the Rhodes Entities.  For example, Debtor funds were evidently used to: (1) pay Jim Rhodes' personal income tax obligations; (2) to fund Jim Rhodes' divorce settlement; (3) to pay legal fees and other professional fees rendered solely for the benefit of the Rhodes Entities; and (4) to acquire real property for the benefit of Rhodes Entities.  These various wrongful dissipations of Debtor assets, along with other abuses of the Debtors for the benefit of the Rhodes Entities, will likely give rise to claims against Jim Rhodes and/or other Rhodes Entities for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, and/or avoidance and recovery of fraudulent transfers under Chapter 5 of the Bankruptcy Code and the UFTA.

---

[13] *In re Mirant,* 326 B.R. 354, 356-57 (Bankr. N.D. Tex. 2005).

[14] *Bank One, Columbus, N.A. v. Hammond,* 140 B.R. 197, 201 (S.D. Ohio 1992).

[15] *In re Metiom, Inc.,* 318 B.R. 263, 269 (S.D.N.Y. 2004) ("Given the absence of any authority suggesting that oral or written statements must be made under oath in order to support a finding of good cause for a Rule 2004 examination, and the existence of case law to the contrary, this Court finds no reason to doubt the soundness of the Bankruptcy Court's decision to rely on the representations of Metiom's counsel and the Metiom email in determining that there was good cause for the Rule 2004 examination.").

In several such instances, it appears that funds originating from the Debtors were wrongfully transferred to various third parties for the benefit of the Rhodes Entities. In turn, the Litigation Trust has sought discovery from these entities to investigate: (1) the purposes for which such suspect transfers were made; and (2) whether the Debtor may have received any economic benefit in exchange for the transfers. *Every single entity* that was subpoenaed received funds that originated from the Debtors. Indeed, each entity's receipt of funds originating from the Debtors is what led to the Litigation Trust's identification of that entity as a source for Rule 2004 discovery in the first place.

Although the Litigation Trust can trace Debtor assets into the subpoenaed entities, additional discovery from these entities is still necessary because, in many instances, it is not clear: (1) why the subpoenaed entities received Debtor assets, directly or indirectly via Rhodes Entities; and (2) whether the Debtors received any economic benefit in exchange. For example:

- <u>Financial Institutions</u>. Each of the various financial institutions subpoenaed received funds originating from the Debtors. In several instances, it appears that funds were transferred to pay Rhodes' personal credit card bills, and/or were transferred to personal financial accounts held by Rhodes. It is unknown, however, whether these payments benefitted the Debtors in some way (e.g. if Rhodes had previously put company expenses on his personal credit card, if Rhodes subsequently transferred funds received in personal accounts to a third party for the benefit of the Debtors, etc.).

- <u>Law Firms</u>. Each of the law firms subpoenaed received funds originating from the Debtors. It appears that Debtor funds may have been used to pay Rhodes' personal legal fees related to his divorce. In addition, it appears that Debtor funds may have been used to pay legal fees incurred solely to benefit Rhodes Entities, in some cases to the detriment of the Debtors (especially in regards to the creation of Harmony Homes, LLC, a direct competitor to the

Debtors). The extent to which the law firms rendered services solely to Rhodes personally or to the other Rhodes Entities is unknown.

- <u>Title Companies</u>. Each of the title companies subpoenaed received funds originating from the Debtors. It appears that in many instances, Debtor funds were used to either obtain new real property for Rhodes Entities, or to eliminate liens on real property already owned by Rhodes Entities. Given the extensive commingling of assets between the Debtors and the Rhodes Entities and the vague and incomplete nature of the Debtors' financial records, however, it is unclear in many instances whether the Debtors ultimately received the real property in question from Rhodes Entities or received some other benefit in exchange.

- <u>Other Professionals</u>. Each of the other professionals subpoenaed received funds originating from the Debtors. It appears that these professional firms rendered services solely to the Rhodes Entities. The extent to which these professional firms rendered any services that benefitted the Debtors in some way is unknown.

Given these factual gaps and the inherent limitations in what information can be derived solely from the Debtors' financial records, the additional discovery that the Litigation Trust seeks from these entities through Rule 2004 is necessary in order to enable the Litigation Trust to fully investigate its potential claims. Without such discovery, the potential litigation instituted by the Litigation Trust could very well be both under-inclusive (not bringing all tenable claims) and over-inclusive (bringing claims that appear strong now, but additional discovery would render weak). In turn, permitting the Litigation Trust to seek necessary third party discovery now will prevent the cost and delay associated with various pleadings amendments later.

## 2. The Releases Contained in the Plan do Not Bar the Litigation Trust From Bringing Claims against the Rhodes Entities.

In tacit recognition of the fact that the Litigation Trust's discovery is clearly geared towards investigation of claims against the Rhodes Entities, Rhodes argues that: "the Rule 2004 Subpoenas should be quashed because they seek information to claims which are barred by the release contained in the Plan."[16] This argument is disingenuous, as Rhodes has admitted that he "repeatedly has informed the Court that he does not seek to collect his claim for the taxes paid from the Debtors, but *merely seeks a setoff against any claims the Reorganized Debtors (through the Litigation Trust) may have against him.*"[17] It is difficult to fathom why Rhodes would vigorously litigate his "set-off" claim—both appealing this Court's initial ruling and filing a motion for reconsideration[18]—if he truly believed that the claims against him had been released under the Plan in the first place.

In any event, the plain language of the release provision contained in the Plan makes clear that only a small subset of the potential universe of claims against the Rhodes Entities has been released. The pertinent release, contained in Article VIII, section E of the plan, provides as follows:

> The Rhodes Entities shall be deemed released from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever arising under chapter 5 of the Bankruptcy Code with respect to transfers made by the Debtors to the Rhodes Entities during the 2 years prior to the Petition Date; provided, however, that such release shall only apply to transfers expressly set forth in the Schedules as Filed with the Bankruptcy Court as of August 1, 2009 or as disclosed in Attachment B to the Mediation Term Sheet.

This release is very narrow and is expressly limited to only Chapter 5 claims with respect to transfers made within in two years of the petition date. And even then, by its own terms, the

---

[16] Motion at 13.

[17] Motion at 3 (emphasis added).

[18] *See* Docket Nos. 1323, 1428, and 1429.

"*release shall only apply to transfers expressly set forth*" in the Mediation Term Sheet or filings with the Bankruptcy Court.

In other words, the Rhodes Entities are <u>not</u> released from: (1) claims arising out of any transfers of Debtor funds that were not specifically listed in the Mediation Term Sheet; (2) any Chapter 5 claims related to transfers made more than 2 years before the petition date; and/or (3) claims for breach of fiduciary duty and other common law causes of action. The Litigation Trust should not be precluded from investigating such claims solely because an extremely narrow subset of the universe of potential claims against the Rhodes Entities has been released.

B.   **THE DISCOVERY SOUGHT WILL NOT IMPERMISSIBLY INVADE THE ATTORNEY-CLIENT PRIVILEGE, IMPLICATE ANY MEANINGFUL CONFIDENTIALITY CONCERNS, OR IMPOSE ANY UNDUE BURDEN.**

   1.   **The Discovery Sought Will Not Impermissibly Invade any Attorney-Client Privilege.**

As discussed above, the Litigation Trust subpoenaed each of the law firms because each law firm received funds originating from the Debtors. The Litigation Trust is seeking information regarding the nature of the underlying legal services provided; namely, whether the legal services were provided to the Debtors (as opposed to any of the Rhodes Entities) and/or otherwise benefitted the Debtors.[19] Rhodes' assertion of privilege underscores the importance of this information; to the extent the law firms were representing Rhodes, Debtor funds may have been used to pay for legal services that did not benefit the Debtors. In any event, Rhodes' assertion of privilege is unfounded.

First, Rhodes has failed to establish that any of the subpoenaed law firms ever represented him in a solely personal capacity and/or that he holds any personal attorney-client privilege with respect to the subpoenaed documents. Rhodes has the burden of making a *prima facie* showing that the attorney-client privilege protects the information that is sought.[20] To meet

---

[19] The Litigation Trust is not intentionally seeking to invade any attorney-client privilege held by any of the Rhodes Entities. Specifically, the Litigation Trust is not seeking discovery from every law firm that possibly may have represented the Rhodes Entities, but solely those law firms that received funds originating from the Debtors.

[20] *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).

this burden Rhodes must demonstrate that the documents in possession of the subpoenaed law firms adhere to the essential elements of the attorney-client privilege.[21] Rhodes has failed to do so through privilege log, appropriate affidavit, or otherwise. Because Rhodes has failed to establish that he has a personal right or privilege with regard to the documents sought, Rhodes—a non-party to the subpoenas to the law firms—lacks standing to move to quash the subpoenas.[22]

Second, much of the information sought would not be privileged in any event. For example, billing invoices (when redacted appropriately) would not be privileged and would shed light on the nature of the legal services paid for with Debtor funds. Similarly, purely transactional documents and pleading files—both of which could reveal that Debtor funds were used to pay for legal services solely benefitting the Rhodes Entities—would not be privileged.

Finally, to the extent that the Law Firms represented the Debtors (either individually or jointly with any Rhodes Entities), then any otherwise privileged documents would not be privileged with respect to the Litigation Trust.[23]

2. **The Discovery Sought Does Not Impermissibly Seek Confidential or Personally Identifiable Information.**

Rhodes' assertion that the subpoenas should be quashed because they seek "confidential and personally identifiable information" is not legally supported in his Motion. Confidential commercial information—the only type of confidential information mentioned in Rule 45(c)—includes only information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained.[24] A claim of confidential commercial information must be expressly made and supported by a sufficient description of the nature of the documents, communications, or things not produced so as to

---

[21] *Id.*

[22] *Smith v. Midland Brake, Inc.,* 162 F.R.D. 683, 685 (D. Kan. 1995).

[23] *See, e.g., Gottlieb v. Wiles,* 143 F.R.D. 241, 247 (D. Colo.1992) ("When parties with a common interest retain a single attorney to represent them [and] ... later become adverse, neither is permitted to assert the attorney-client privilege as to communications occurring during the period of common interest.").

[24] *Diamond State Insurance Co. v. Rebel Oil Co.,* Inc., 157 F.R.D. 691, 697 (D. Nev. 1994).

enable the demanding party to contest the claim.[25] Rhodes' has failed to make such a showing, and thus his ambiguous claim of confidentiality does not provide grounds for quashing the Litigation Trust's Rule 2004 subpoenas under Rule 45(c).

Further, in conferring with various financial institutions and title companies, the Litigation Trust has made clear that the scope of its requests with respect to the Individuals was not intended to extend beyond those Individuals' dealings with the Debtors.[26] Nevertheless, to the extent that the Court has any concerns regarding privacy or confidentiality issues with respect to any of the Individuals, a protective order—and not quashing the subpoena—would be the appropriate remedy.

### 3. Rhodes Lacks Standing to Move to Quash the Subpoenas on the Basis of Undue Burden.

Rhodes does not have standing to move to quash the subpoenas as unduly burdensome to the subpoenaed entities. Only the subpoenaed entities can raise such an objection. But tellingly, those entities have not done so (aside from one placeholder objection filed by Mutual Bank of Omaha and resolved after a brief phone conversation with the Litigation Trust's counsel). Put simply, Rhodes' perception of the burden that the subpoenas place on the subpoenaed entities is irrelevant and not a proper basis to quash the subpoenas.

## C. RHODES RECEIVED SUFFICIENT NOTICE.

Rhodes makes the novel argument that the subpoenas should be quashed because the Litigation Trust purportedly failed to comply with Rule 45(b)(1)'s requirement that before a subpoena requesting documents is served, "a notice must be served on each party." In the context of a subpoena authorized by Rule 2004 and issued under Bankruptcy Rule 9016, it is unclear what this notice requirement entails. None of the Rule 45 cases cited by Rhodes involve a failure to serve notice of a subpoena authorized by Rule 2004 prior to the initiation of litigation

---

[25] *Id.*

[26] The Litigation Trust has been in contact with Mr. Huygens and has resolved any objections he had to the subpoenas.

or an adversary proceeding,[27] and the Litigation Trust was unable to locate any authority addressing the issue.

This dearth of case law is probably a result of the fact that, on its face, Rule 45(b)(1) only requires service of notice on a "party." In turn, the Rule 45(b)(1) notice requirement likely does not apply to creditors and other entities in the pre-suit, Rule 2004 context. Indeed, requiring any sort of special notice to be served to all creditors—such as Rhodes—every time a Rule 2004 subpoena is issued would be incredibly burdensome and wasteful in complex bankruptcies, as well as create massive creditor confusion.

In any event, Rhodes has in fact received adequate notice of the subpoenas through his counsel. Specifically, the Litigation Trust's motions requesting Rule 2004 examinations and the orders authorizing the examinations were filed on the docket and notice was automatically sent out to everyone on the bankruptcy case service list. This included Mr. Anderson, Rhodes's counsel and signatory on the Motion.[28] Mr. Anderson's receipt of notice of the 2004 motions and order is evidenced by the fact that on September 2, 2011, three days after the 2004 orders were entered, Mr. Anderson file a *pro hac vice* application and a designation of local counsel on Rhodes' behalf.

Further, even if Rhodes could establish that he fit within the Rule 45 meaning of "party," and even if he could establish that he did not receive adequate notice, the subpoenas should still not be quashed because Rhodes was not prejudiced by any lack of notice.[29] On September 15, 2011—the day after the Motion was filed—the Litigation Trust sent Rhodes' counsel copies of

---

[27] *Firefighter's Institute for Racial Equality v. City of St. Louis,* 220 F.3d 898, 903 (8th Cir. 2000) (Rule 45 subpoena served by plaintiff on a third party in non-bankruptcy lawsuit quashed based plaintiff's failure to served defendant with prior notice of the subpoena).

[28] Mr. Anderson filed a notice of appearance in the bankruptcy case on August 20, 2010—over a year before the Litigation Trust's motions requesting the Rule 2004 examinations and the orders authorizing those examinations were filed—and currently receives electronic notice of all filings (and presumably has since he filed his notice of appearance). [DE# 1268]

[29] *See In re Asbestos,* 256 F.R.D. 151, 158 (E.D. Pa. 2009) (holding that plaintiffs were not prejudiced by defendants failure to given notice of a third party subpoena because the delay did not interfere with the plaintiffs' ability to file an objection before the production of the documents by the third party).

all the Rule 2004 subpoenas it had served. Additionally, on September 21, 2011 the Litigation Trust sent letters to all of the subpoenaed entities requesting that, in light of the Motion and the hearing set for September 27, 2001, they should not produce any documents before September 29, 2011.[30]

Dated: September 23, 2011.

| | |
|---|---|
| **DIAMOND MCCARTHY LLP** | **LAW OFFICE OF BRIAN SHAPIRO** |
| By: ___/s/ Michael J. Yoder___<br>Eric D. Madden, (*pro hac vice*)<br>Michael J. Yoder, (*pro hac vice*)<br>Jacob J. Roberts, (*pro hac vice*)<br>1201 Elm Street, 34th Floor<br>Dallas, Texas 75270<br>(214) 389-5300 (telephone)<br>(214) 389-5399 (facsimile)<br><br>*Counsel for the Litigation Trust of*<br>*The Rhodes Companies, LLC, et al.* | By: ___/s/ Brian D. Shapiro___<br>Brian D. Shapiro,<br>411 E. Bonneville, Suite 300<br>Las Vegas, Nevada 89101<br>(702) 386-8600 (telephone)<br>(702) 383-0994 (facsimile)<br><br>*Local Counsel for the Litigation Trust of*<br>*The Rhodes Companies, LLC, et al.* |

---

[30] Roberts Decl. ¶9.

## CERTIFICATE OF SERVICE

I hereby certify that I am employee of the law firm of DIAMOND MCCARTHY LLP, and that on the 23rd day of September 2011, a true and correct copy of the foregoing Litigation Trust's Response to Motion to Quash Subpoenas was served by the Court's CM/ECF system to:

KEVIN N. ANDERSON on behalf of Creditor JAMES RHODES
kanderson@fabianlaw.com, sburdash@fabianlaw.com

BRETT A. AXELROD on behalf of Creditor SAGEBRUSH ENTERPRISES, INC.
baxelrod@foxrothschild.com, pkois@foxrothschild.com; rdittrich@foxrothschild.com; msheffield@foxrothschild.com; ldupree@foxrothschild.com

J. THOMAS BECKETT on behalf of Creditor CREDITORS COMMITTEE
ECF@parsonsbehle.com

SHIRLEY S. CHO on behalf of Debtor THE RHODES COMPANIES, LLC
scho@pszjlaw.com

JANET L. CHUBB on behalf of Creditor COMMERCE ASSOCIATES, LLC
bsalinas@armstrongteasdale.com

DAVID A. COLVIN on behalf of Creditor DANA KEPNER COMPANIES, LLC
dcolvin@maclaw.com, mwalters@maclaw.com; kgallegos@maclaw.com; tszostek@maclaw.com

NATALIE M. COX on behalf of Plaintiff EUGENE DAVIS
ncox@klnevada.com, bankruptcy@klnevada.com; ckishi@klnevada.com

THOMAS E. CROWE on behalf of Creditor SHANE SMITH
tcrowelaw@yahoo.com

DAMON K. DIAS on behalf of Creditor X-It at 215, LLC
ddias@diaslawgroup.com,bankruptcy@diaslawgroup.com

TRACY A. DIFILLIPPO on behalf of Creditor COMMERCE ASSOCIATES, LLC
tdifillippo@jonesvargas.com, enunez@jonesvargas.com; ehardy@jonesvargas.com

CONOR P. FLYNN on behalf of Creditor COMMERCE ASSOCIATES, LLC
cflynn@jonesvargas.com

PHILIP S. GERSON on behalf of Creditor CLARK COUNTY
banknv@rocgd.com, mburgener@rocgd.com

REW R. GOODENOW on behalf of Creditor CREDITORS COMMITTEE
ecf@parsonsbehle.com

JAMES D. GREENE on behalf of Plaintiff EUGENE DAVIS
jgreene@greeneinfusolaw.com, fritchie@greeneinfusolaw.com; kfarney@greeneinfusolaw.com; bschmidt@greeneinfusolaw.com

KIRBY C. GRUCHOW on behalf of Creditor NEVADA POWER COMPANY
hkelley@leachjohnson.com

CAROL L. HARRIS on behalf of Creditor IN RE KITEC FITTING LITIGATION CLASS PLAINTIFFS
c.harris@kempjones.com, jlm@kempjones.com

RODNEY M. JEAN on behalf of Creditor CREDIT SUISSE, CAYMAN ISLANDS BRANCH
RJEAN@LIONELSAWYER.COM, gbagley@lionelsawyer.com; bklsclv@lionelsawyer.com; mstow@lionelsawyer.com

ROBERT R. KINAS on behalf of Creditor CATERPILLAR FINANCIAL SERVICES CORPORATION
rkinas@swlaw.com, jmath@swlaw.com; mfull@swlaw.com; cdossier@swlaw.com; nbaig@swlaw.com; nunzueta@swlaw.com; docket_las@swlaw.com

KEITH S. KNOCHEL on behalf of Creditor VALERIE SILVAS
law@lawyersinarizona.com, bank@lawyersinarizona.com

BART K. LARSEN on behalf of Creditor Reef Colonial, LLC
blarsen@klnevada.com, jierien@klnevada.com; bankruptcy@klnevada.com

ZACHARIAH LARSON on behalf of Debtor APACHE FRAMING, LLC
cshurtliff@larsonlawnv.com, sstanton@larsonlawnv.com; akosina@larsonlawnv.com

NILE LEATHAM on behalf of Creditor STEERING COMMITTEE OF SENIOR SECURED LENDERS
nleatham@klnevada.com, ckishi@klnevada.com; bankruptcy@klnevada.com

ANNE M. LORADITCH on behalf of Creditor JAMES RHODES
aloraditch@foxrothschild.com, pkois@foxrothschild.com; rdittrich@foxrothschild.com

VIRGINIA CRONAN LOWE on behalf of Creditor UNITED STATES OF AMERICA - INTERNAL REVENUE SERVICE
virginiacronan.lowe@usdoj.gov, Western.Taxcivil@usdoj.gov

JANIECE S MARSHALL on behalf of Creditor STANLEY CONSULTANTS, INC.
car@amclaw.com; lom@amclaw.com; crb@amclaw.com; csh@amclaw.com

EDWARD M. MCDONALD on behalf of U.S. Trustee U.S. TRUSTEE - LV - 11
edward.m.mcdonald@usdoj.gov

SUSAN L. MYERS on behalf of Creditor CREDIT SUISSE, CAYMAN ISLANDS BRANCH
smyers@lionelsawyer.com, gbagley@lionelsawyer.com; bklsclv@lionelsawyer.com

JEFFREY D. OLSTER on behalf of Creditor HARSCH INVESTMENT PROPERTIES - NEVADA, LLC
olster@lbbslaw.com, sallade@lbbslaw.com

ERIC RANSAVAGE on behalf of Creditor LESLIE BLASCO, ET AL.
eransavage@ssllplaw.com, agutierrez@ssllplaw.com

SHLOMO S. SHERMAN on behalf of Interested Party REORGANIZED DEBTORS
ssherman@klnevada.com, bankruptcy@klnevada.com; ckishi@klnevada.com; bbroussard@klnevada.com

MARK R. SOMERSTEIN on behalf of Creditor WELLS FARGO BANK, N.A.
mark.somerstein@ropesgray.com

JEFFREY R. SYLVESTER on behalf of Creditor CREDIT SUISSE, CAYMAN ISLANDS BRANCH
jeff@sylvesterpolednak.com

TIMOTHY P. THOMAS on behalf of Creditor STEERING COMMITTEE OF SENIOR SECURED LENDERS
veralynn@tthomaslaw.com

U.S. TRUSTEE - LV - 11
USTPRegion17.lv.ecf@usdoj.gov

DONALD H. WILLIAMS on behalf of Creditor WESTAR KITCHEN & BATH, LLC
DonaldHWilliamsLaw@gmail.com, taylorsellers@gmail.com.

　　/s/ Catherine A. Burrow
Catherine A. Burrow
Legal Assistant
Diamond McCarthy LLP