Kevin N. Anderson
Nevada Bar No. 4512
David R. Hague (Admitted Pro Hac Vice)
**FABIAN & CLENDENIN**
215 South State Street, Suite 1200
Salt Lake City, Utah 84111-2323
Telephone:    801-531-8900
Facsimile:     801-596-2814
Email:    kanderson@fabianlaw.com
             dhague@fabianlaw.com

*Counsel for James M. Rhodes*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,<br><br>Reorganized Debtors<br><br>☒ Affects all Debtors<br>☐ Affects the following Debtors | Case No.: 09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH ORDERS OF RULE 2004 EXAMINATION AND CORRESPONDING SUBPOENAS AND/OR FOR PROTECTIVE ORDERS**<br><br>Hearing Date: October 5, 2011<br>Hearing Time: 9:30 a.m.<br>Place:              Courtroom 1 |

James M. Rhodes ("**Rhodes**") submits this reply memorandum in support of his *Motion to Quash Orders of Rule 2004 Examination and Corresponding Subpoenas and/or For Protective Orders* (the "**Motion**").

## ARGUMENT

On September 23, 2011, the Litigation Trust of The Rhodes Companies, LLC, et al. (the "**Litigation Trust**") filed its *Response to Motion to Quash Subpoenas* (the "**Response**") and the *Declaration of Jacob J. Roberts in Support of Litigation Trust's Response to Motion to Quash* (the "**Roberts Declaration**").  The Response and unsubstantiated Roberts Declaration do nothing to meet the Litigation Trust's initial burden of proving that good cause exists for taking the Rule 2004 examinations and requesting the vast amounts of irrelevant, privileged and otherwise confidential information.

As set forth in Rhodes' supporting memorandum, this Court has the power to quash the 2004 Subpoenas: (1) if they are unreasonable and oppressive or if they seek production of materials that are not both material and within the possession of the person to be examined; (2) if they do not relate to the Debtors' bankruptcy proceedings; (3) if they are used as a device to launch into a wholesale investigation of a non-debtor's private business affairs; (4) if they are not sufficiently particularized so that the documents sought may be readily identified; (5) if on their face they are too broad and sweeping; and (6) if they are proposed in bad faith so as to annoy, embarrass or oppress the party who is the subject of the inquiry.

The Litigation Trust has done nothing to cure these blatant defects in the 2004 Subpoenas. The wide scope of the Litigation Trust's intended discovery is not supported by <u>any</u> facts.  Even the Response itself and the Roberts Declaration are devoid of any substantiated facts that would support the Litigation Trust's vast fishing expedition.  Indeed, the Litigation Trust's lack of specificity, clarity and evidence to support its requests is astonishing.  As set forth in the Response, the Litigation Trust states:

- "Through its preliminary investigation, the Litigation Trust has uncovered what <u>appear</u> to be several instances of wrongful transfers of Debtor funds to or for the benefit of the Rhodes Entities." (Response, at 2.) (Emphasis added.)

- "It <u>appears</u> that funds originating from the Debtors were wrongfully transferred to various third parties for the benefit of the Rhodes Entities." (Response, at 2.) (Emphasis added.)

- "Through its preliminary investigation, the Litigation Trust has uncovered what <u>appear</u> to be several instances of wrongful dissipation of Debtor assets to or for the benefit of Jim Rhodes and/or other Rhodes Entities." (Response, at 3.) (Emphasis added.)

- "In addition, it <u>appears</u> that millions of dollars of Debtor funds <u>may</u> have been transferred to tile companies and financial institutions . . . ." (Response, at 4.) (Emphasis added.)

- "Each of the entities from whom discovery was sought is an entity that is <u>believed</u> to have received funds originating from the Debtors." (Response, at 4) (Emphasis added.)

Despite the Litigation Trust's opportunity to set out with reasonable particularity the transfers, documents and matters for examination in its Response, it has failed to do so. Indeed, the Litigation Trust has not identified with specificity even one transaction that relates to the Debtors' bankruptcy proceeding. Instead, it uses words such as "appears," "may," and "believe" as evidence and support for its request for "any and all" documents from several non-party entities, stretching back nearly seven years. The Litigation Trust's generic and boilerplate requests are wholly improper and far exceed the permissible scope of Rule 2004. Rule 2004 is not a discovery device to allow the Litigation Trust to blindly comb through non-party records in a futile effort to find some evidence to support its potential claims.

Furthermore, the Litigation Trust has done nothing to cure its overly burdensome request. Among other things, the Litigation Trust seeks documents in 40 categories (plus 30 subcategories), regarding 31 so-called Debtors, plus affiliates, employees, and representatives, 37 "Entities" (plus each of their affiliates, employees and representatives), and 4 "Individuals."

Moreover, the 2004 Subpoenas fail to include reasonable and relevant temporal and subject matter limitations. Indeed, the 2004 Subpoenas request:

- "<u>Any and all documents</u> evidencing the transactions and/or activity in accounts at the Bank held in the name of or for the benefit of <u>any of the Individuals</u>."
- "<u>All documents and communications</u> referring or relating to <u>any services</u> or work performed by [the Law Firms] <u>for any of the Entities [or] . . . Individuals</u>."
- "<u>Any and all documents or communications</u> referring to or relating to <u>any legal opinion</u> or analysis on or regarding the legality of [any transaction entered into by any of the Individuals or Entities]."
- "All <u>calendars, diaries, notes, and desk files</u> of [the Law Firms'] attorneys who performed <u>any service</u> or work for <u>any of the Entities, Debtors, and/or Individuals</u>."

(Emphasis added.) Such requests go far beyond the scope of Rule 2004 and the protections afforded by the Federal Rules of Civil Procedure.

Additionally, the Litigation Trust has not been forthcoming with the Court. In its Response, the Litigation Trust asserts as follows: "[t]o the extent that any subpoenaed entities have raised any issues with the scope of any document request or the dates for compliance, the Litigation Trust and the subpoenaed entities have been able to amicably resolve such issues through the meet and confer process." This is not true. Other entities, in addition to Rhodes, either have filed objections with this Court or the issuing courts outside of this Court's jurisdiction, or have sent objections directly to the Litigation Trust. Furthermore, even if the Litigation Trust has been able to resolve all the issues surrounding the 2004 Subpoenas, which it has not, it has not provided any information to any of the parties regarding these so-called

agreements. This Court, along with the parties affected by the 2004 Subpoenas, should be privy to any types of arrangements the Litigation Trust is making with the subpoenaed parties.

Also, the Litigation Trust has done nothing to overcome the fact that most of the documents requested in the subpoenas served upon the Law Firms constitute documents protected by the attorney-client privilege and/or work-product doctrine. While the Litigation Trust asserts that it "is not intentionally seeking to invade any attorney-client privilege held by any of the Rhodes Entities," that is fundamentally not true. As set forth above, the Litigation Trust wants (1) "[a]ll documents and communications referring or relating to any services or work performed by [the Law Firms] for any of the Entities [or] . . . Individuals;" (2) "[a]ny and all documents or communications referring to or relating to any legal opinion or analysis on or regarding the legality of [any transaction entered into by any of the Individuals or Entities];" and (3) "[a]ll calendars, diaries, notes, and desk files of [the Law Firms'] attorneys who performed any service or work for any of the Entities, Debtors, and/or Individuals."

The Litigation Trust also asserts that Rhodes lacks standing to quash the 2004 Subpoenas. This is simply not true. If a party has privilege over any information requested pursuant to a subpoena issued to a third party, that party has standing to challenge the subpoena. *See, e.g.,* Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 1995) (stating that a party has standing to challenge a subpoena issued to a non-party if "the objecting party claims some personal right or privilege with regard to the documents sought."). As set forth herein, and more specifically in Rhodes' opening memorandum, the information sought by the Litigation Trust delves deeply into Rhodes' personal life and seeks highly sensitive and personally identifiable information. Rhodes clearly has standing to challenge such actions and the denial of such would be a violation of his due process rights.

Finally, while the Litigation Trust suggests that perhaps a protective order—and not quashing the 2004 Subpoenas—would be the "appropriate remedy," the Litigation Trust has not set forth any facts, or given any indication to the subpoenaed parties, that it intends on (1) limiting

the discovery requests to non-privileged information relating only to the Debtors' business or assets; (2) restricting its inquiries into any matter encompassed within the releases contained in the Plan of Reorganization; and (3) identifying with particularity the documents it seeks and providing a legitimate basis for its request that is related to the administration of the Debtors' estate.

In short, the Litigation Trust has done nothing to carry its burden of proving that good cause exists for taking the Rule 2004 examinations and requesting the vast amounts of irrelevant, privileged and otherwise confidential information. Accordingly, the Court should enter an order quashing the Rule 2004 Subpoenas and vacating the Rule 2004 Orders or, at the very least, limiting the scope of the Rule 2004 Subpoenas and Rule 2004 Orders.

DATED this 30th day of September, 2011.

/s/ Kevin N. Anderson

Kevin N. Anderson
David R. Hague
FABIAN & CLENDENIN
*Attorneys for James M. Rhodes*

4844-1499-0859, v. 1