Kevin N. Anderson (SBN 4512)
David R. Hague (SBN 12389)
FABIAN & CLENDENIN
 a Professional Corporation
215 South State Street, Suite 1200
Salt Lake City, Utah 84111-2323
Telephone:    801-531-8900
Facsimile:    801-596-2814
Email:    kanderson@fabianlaw.com
         dhague@fabianlaw.com

*Attorneys for James M. Rhodes*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,<br><br>Reorganized Debtors<br><br>☒ Affects all Debtors<br><br>☐ Affects the following Debtors | Case No.: 09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>**MOTION TO STAY THE ORDER DENYING MOTION TO QUASH RULE 2004 EXAMINATION AND CORRESPONDING SUBPOENAS**<br><br>Hearing Date: _____<br>Hearing Time: _____<br>Place:         Courtroom 1 |

James M. Rhodes ("**Rhodes**"), pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure, hereby moves the Court to stay the October 12, 2011 *Order Denying Motion to Quash Rule 2004 Examination and Corresponding Subpoenas* (the "**Order**") pending the adjudication of Rhodes' appeal of the Order. In support hereof, Rhodes states as follows:

**FACTUAL BACKGROUND**

1. On either March 31, 2009 or April 1, 2009 (collectively, the "**Petition Date**"), each of the debtors (collectively, the "**Debtors**") commenced with this Court a voluntary case under Chapter 11 of title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**").

2. On July 17, 2009, Rhodes filed proof of claim No. 814-33 (the "**Proof of Claim**") seeking $10,598,000 for: (i) the reimbursement of taxes paid by Rhodes for the 2006 tax year in the amount of $9,729,151; and (ii) $868,849 advanced to Greenway Partners, LLC. Rhodes repeatedly has informed the Court that he does not seek to collect his claim for the taxes paid from the Debtors, but merely seeks a setoff against any claims the Reorganized Debtors (through the Litigation Trust) may have against him.

3. On February 18, 2010, the proposed *Third Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, et al.* (the "**Plan of Reorganization**") was filed with the Court. (Docket No. 1013.)

4. On March 12, 2010, this Court confirmed the Plan of Reorganization and entered its *Proposed Findings of Fact, Conclusions of Law, and Order Confirming the First Lien Steering Committee's Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al.* (Docket No. 1053.)

5. On May 27, 2010, the above-captioned Reorganized Debtors filed an objection to the Proof of Claim. Additionally, the Reorganized Debtors indicated that contemporaneously with the filing of their objection they were amending their schedules and statements to remove certain scheduled claims.

6. On June 17, 2010, Rhodes filed an opposition to the objection in the bankruptcy case.

7. The objection to the Proof of Claim and the dispute regarding the scheduled claims has not been fully resolved and both issues are the subject of a contested matter still pending before this Court.

8. On August 25, 2011, the Litigation Trust of The Rhodes Companies, LLC, *et al.* (the "**Litigation Trust**") filed a motion seeking an order granting examinations of various financial institutions pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. (Docket No. 1503). In the motion and corresponding proposed order, the Litigation Trust included a general document request. (*Id.*)

9. On August 26, 2011, the Court denied the Litigation Trust's motion noting that "[d]ocuments must be requested in accordance with Rule 9016." (Docket No. 1508.)

10. In its next attempt, on August 29, 2011 and August 30, 2011, the Litigation Trust filed four separate motions seeking orders granting examinations pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. (Docket Nos.1511, 1514, 1515 & 1516). This time, however, the motions did not include a document request. (*Id.*)

11. The motions sought to examine representatives from various entities, including (1) financial institutions (Docket No. 1511), (2) law firms (Docket No. 1514), (3) title companies (Docket No. 1515) and (4) other professionals (Docket No. 1516).

12. The financial institutions include:
    a. American Express Company,
    b. UBS Financial Services, Inc,
    c. Town & Country Bank, Inc,
    d. Consolidated Mortgage Company,
    e. American Commonwealth Mortgage Company,
    f. Bank of Oklahoma,
    g. Alliance Mortgage, LLC,
    h. BofA ML Asset Holding f/k/a Merrill Lynch,
    i. The Bank of New York,
    j. Mutual of Omaha Bank,
    k. Nevada State Bank, and

1            l.      Wells Fargo Bank, N.A.

2 (Collectively, the "**Financial Institutions**") (Docket No. 1511).

3      13.      The law firms include:

4            a.      Santoro, Driggs, Walch, Kearney, Holley & Thompson, Ltd.,

5            b.      Gibson Dunn & Crutcher, LLP,

6            c.      Snell & Wilmer, LLP,

7            d.      Stewart Occhipinti, LLP,

8            e.      Fabian & Clendinin [sic], and

9            f.      Bancroft Susa & Galloway P.C.

10 (Collectively, the "**Law Firms**") (Docket No. 1514).

11      14.      The title companies include:

12            a.      Chicago Title of Nevada, Inc.,

13            b.      First American Title Company,

14            c.      Fidelity National Financial, Inc.,

15            d.      Commerce Title Company,

16            e.      Transnation Title Agency,

17            f.      Security Title of Nevada, LLC,

18            g.      Stewart Title Company, and

19            h.      Yuma Title.

20 (Collectively, the "**Title Companies**") (Docket No. 1515).

21      15.      The other professionals include:

22            a.      Alvarez & Marsal North America, LLC, and

23            b.      SMS Financial LLC.

24 (Collectively, the "**Other Professionals**") (Docket No. 1516).

25      16.      On August 30, 2011 and August 31, 2011, within hours of the motions being

26 logged, and with no opportunity for Rhodes to object, the Court entered orders granting Rule

2004 examinations of (1) the Financial Institutions (Docket No. 1512—less than 20 hours after Docket No. 1511 filed), (2) the Law Firms (Docket No. 1518—less than 1½ hours after Docket No. 1514 filed), (3) the Title Companies (Docket No. 1517—less than 1½ hours after Docket No. 1515 filed) and (4) the Other Professionals (Docket No. 1519—less than 24 hours after Docket No. 1516 filed) (collectively, the "**Rule 2004 Orders**").

17.  The Financial Institutions, the Law Firms, the Title Companies, and the Other Professionals have all been directed to produce representatives for examinations and have further received subpoenas directing them to produce vast amounts of documents that are irrelevant, confidential, and contain personally identifiable information.

18.  Despite recognizing the limited scope of Rule 2004 examinations in their motions, the Rule 2004 Subpoenas sent out by the Litigation Trust concern an overly broad period from as early as January 1, 2004 to present and are directed toward the production of vast amounts of documents containing confidential, privileged, and personally identifiable information having nothing to do with the "Reorganized Debtors and their pre-bankruptcy acts, conduct, property, liabilities and financial condition."

19.  On September 14, 2011, Rhodes filed a *Motion to Quash Orders of Rule 2004 Examination and Corresponding Subpoenas and/or for Protective Order* (the "**Motion to Quash**").

20.  On September 23, 2011, the Litigation Trust filed a *Response to Motion to Quash Subpoenas*.

21.  On September 30, 2011, Rhodes filed a reply memorandum in support of the Motion to Quash.

22.  A hearing on the Motion to Quash was held before the Honorable Linda B. Reigle on October 5, 2011, at 9:30 A.M.

23.  At the hearing, the Court denied the Motion to Quash an determined that (1) Rhodes did not have standing to challenge the orders of Rule 2004 examination and

corresponding subpoenas, and (2) that Rhodes was required to confer with other affected parties in an effort to resolve the dispute without court action and did not make a good faith attempt to resolve the matters concerning the orders of Rule 2004 examination and corresponding subpoenas.

24. On October 12, 2011, the *Order Denying the Motion to Quash Rule 2004 Examination and Corresponding Subpoenas* was entered by the Bankruptcy Court.

25. On October 18, 2011, Rhodes timely filed a Notice of Appeal from the Order.

## ARGUMENT

Pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure, a bankruptcy court has discretion to grant a stay of a judgment, order or decree. When deciding when to grant such a stay, courts consider four factors: (1) whether the appellant is likely to succeed on the merits of the appeal; (2) whether the appellant will suffer irreparable injury absent a stay; (3) whether the stay will impose substantial harm on the appellee; and (4) whether the stay will harm the public interest. *See In re Wymer,* 5 B.R. 802, 806 (9th Cir. 1980).

### I. RHODES IS LIKELY TO SUCCEED ON APPEAL.

The first factor requires Rhodes to show a reasonable likelihood of success on the merits of the appeal. The Transcript of the October 5, 2011 hearing on the Motion to Quash reveals that the Court's reasons for denying the Motion to Quash are (1) Rhodes does not deserve to have it quashed because he "led a slipshod way of doing business," "he didn't care much about his books and records from the way he did business" and, therefore, "these kinds of transactions deserve investigation . . . ." (Transcript at 21); (2) Rhodes does not have standing; and (3) Rhodes was required to confer with other affected parties in an effort to resolve the dispute without court action and did not make a "good-faith" attempt to resolve the matters concerning the orders of Rule 2004 examination and corresponding subpoenas.

Rhodes is likely to succeed on appeal. There is no dispute that the examining party (*i.e.,* the Litigation Trust) bears the burden of proving that good cause exists for taking the Rule 2004 examinations and requesting the vast amounts of irrelevant, privileged and otherwise confidential information. *See In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992) (citing *Freeman v. Seligson*, 405 F.2d 1326, 1336 (D.C. Cir. 1968)). This burden still exists regardless of the Court's opinion of Rhodes—uninformed by any evidence presented to the Court—and the "way he did business." To establish good cause, a party must demonstrate that "the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice . . . ." *Matter of Wilcher*, 56 B.R. 428, 434–35 (Bankr. N.D. Ill. 1985). "[T]he burden of showing good cause is an affirmative one and is not satisfied merely by a showing that justice would not be impeded by production of the requested documents." *Id*. at 435.

The Court did not require the Litigation Trust to carry its burden with respect to the 2004 examinations and document requests. Rather, the Court simply made a finding that Rhodes is a bad guy and, therefore, the Litigation Trust can have at it with respect to discovery. The Court did not make a single inquiry into whether any of the Litigation Trust's requests relate to the Debtors' bankruptcy proceedings, nor did the Court require the Litigation Trust to set out with reasonable particularity the transfers, documents and matters for examination. Instead, in support of its ruling, the Court relied on the following statements made by the Litigation Trust:

- "Through its preliminary investigation, the Litigation Trust has uncovered what <u>appear</u> to be several instances of wrongful transfers of Debtor funds to or for the benefit of the Rhodes Entities." (Response, at 2.) (Emphasis added.)

- "It <u>appears</u> that funds originating from the Debtors were wrongfully transferred to various third parties for the benefit of the Rhodes Entities." (Response, at 2.) (Emphasis added.)

- "Through its preliminary investigation, the Litigation Trust has uncovered what <u>appear</u> to be several instances of wrongful dissipation of Debtor assets to or for the benefit of Jim Rhodes and/or other Rhodes Entities." (Response, at 3.) (Emphasis added.)

- "In addition, it <u>appears</u> that millions of dollars of Debtor funds <u>may</u> have been transferred to title companies and financial institutions . . . ." (Response, at 4.) (Emphasis added.)

- "Each of the entities from whom discovery was sought is an entity that is <u>believed</u> to have received funds originating from the Debtors." (Response, at 4) (Emphasis added.)

Good cause for requesting irrelevant, privileged and otherwise confidential information cannot be satisfied with words such "appears," "may" and "believe." To request "any and all" documents from several non-party entities, stretching back nearly seven years, clearly requires some particularity, substantiated facts, and evidence. It was an abuse of discretion to deny the Motion to Quash and not to require the Litigation Trust to set out with particularity the transfers, documents and matters for examination.

The Court also erred when it failed to even consider the Litigation Trust's burdensome requests. Among other things, the Litigation Trust seeks documents in 40 categories (plus 30 subcategories), regarding 31 so-called Debtors, plus affiliates, employees, and representatives, 37 "Entities" (plus each of their affiliates, employees and representatives), and 4 "Individuals." Moreover, the 2004 Subpoenas fail to include reasonable and relevant temporal and subject matter limitations. Indeed, the 2004 Subpoenas request:

- "<u>Any and all documents</u> evidencing the transactions and/or activity in accounts at the Bank held in the name of or for the benefit of <u>any of the Individuals</u>."

- "<u>All documents and communications</u> referring or relating to <u>any services</u> or work performed by [the Law Firms] <u>for any of the Entities [or] . . . Individuals</u>."
- "<u>Any and all documents or communications</u> referring to or relating to <u>any legal opinion</u> or analysis on or regarding the legality of [any transaction entered into by any of the Individuals or Entities]."
- "All <u>calendars, diaries, notes, and desk files</u> of [the Law Firms'] attorneys who performed <u>any service</u> or work for <u>any of the Entities, Debtors, and/or Individuals</u>."

(Emphasis added.) Such requests go far beyond the scope of Rule 2004 and the protections afforded by the Federal Rules of Civil Procedure.

The Court also erred when it failed to consider the fact that most of the documents requested in the subpoenas served upon the Law Firms constitute documents protected by the attorney-client privilege and/or work-product doctrine. While the Litigation Trust asserts that it "is not intentionally seeking to invade any attorney-client privilege held by any of the Rhodes Entities," that is fundamentally not true. As set forth above, the Litigation Trust wants (1) "[a]ll documents and communications referring or relating to any services or work performed by [the Law Firms] for any of the Entities [or] . . . Individuals;" (2) "[a]ny and all documents or communications referring to or relating to any legal opinion or analysis on or regarding the legality of [any transaction entered into by any of the Individuals or Entities];" and (3) "[a]ll calendars, diaries, notes, and desk files of [the Law Firms'] attorneys who performed any service or work for any of the Entities, Debtors, and/or Individuals." Federal Rule of Civil Procedure 45(c)(3)(A) provides that "the issuing court <u>must quash or modify a subpoena</u> that . . . (iii) requires disclosure of privileged or otherwise protected matter." Fed. R. Civ. P. 45(c)(3)(A). The Court did not even consider this rule or the implications of the attorney-client privilege and work-product doctrine when it ruled against Rhodes.

The Court further erred when it made a finding that Rhodes lacked standing to quash the 2004 Subpoenas. If a party has privilege over any information requested pursuant to a subpoena issued to a third party, that party has standing to challenge the subpoena. *See, e.g.,* Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 1995) (stating that a party has standing to challenge a subpoena issued to a non-party if "the objecting party claims some personal right or privilege with regard to the documents sought."). The Court blatantly ignored the fact that the information sought by the Litigation Trust delves deeply into Rhodes' personal life and seeks highly sensitive and personally identifiable information. Indeed, the Court did not even allow Rhodes to articulate what personal right or privilege he might have with regard to the documents sought.

The Court erred when it failed to even address or consider issuing a protective order. In its pleadings, the Litigation Trust suggests that a protective order—and not quashing the 2004 Subpoenas—would have been the "appropriate remedy." The Court disregarded this possibility and failed to issue an order requiring the Litigation Trust to (1) limit the discovery requests to non-privileged information relating only to the Debtors' business or assets; (2) restrict its inquiries into any matter encompassed within the releases contained in the Plan of Reorganization; and (3) identify with particularity the documents it seeks and provide a legitimate basis for its request that is related to the administration of the Debtors' estate.

Finally, the Court erred when it determined that Rhodes was required to confer with other affected parties in an effort to resolve the dispute without court action and did not make a "good-faith" attempt to resolve the matters concerning the orders of Rule 2004 examination and corresponding subpoenas. There are no certification requirements in the Federal Rules of Civil Procedure with respect to motions to quash. Furthermore, Rule 37 of the Rules of Civil Procedure provides that "a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it

without court action." Because Rhodes did not file a motion to compel, Rule 37 is not applicable. Additionally, because Rhodes was not a party from whom discovery was sought in this matter and no adversary proceedings had been commenced, Rule 26 of the Federal Rules of Civil Procedure is not applicable. *See* Fed. R. Civ. Pro. 26 ("a party or any person from whom discovery is sought may move for a protective order" and "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."). Rhodes acknowledges that Local Rule 7037 provides that "[d]iscovery motions will not be considered unless a statement of moving counsel is attached certifying that, after consultation or effort to do so, the parties have been unable to resolve the matters without court action." However, Local Rule 7037 accords with Rule 37 of the Federal Rules of Civil Procedure, which deals only with motions to compel and Rhodes did not file a motion to compel. Accordingly, Rhodes was not required to confer with other affected parties in good faith.

**II.      RHODES WILL BE IRREPARABLY HARMED ABSENT A STAY.**

Rhodes (and several other non-parties to the Bankruptcy Case) will suffer significant harm absent a stay. Indeed, there is no dispute that the Rule 2004 Subpoenas intrude into the various individuals and entities personal and confidential affairs. The subpoena served upon the Financial Institutions calls for extensive personal financial records dating back to January 1, 2004. For example, the subpoena requests "[a]ny and all documents evidencing the transactions and/or activity in accounts at the Bank held in the name of or for the benefit of any of the Individuals." The subpoena then defines the term "Individuals" to include (1) James M. Rhodes, (2) Glynda Rhodes, (3) John Rhodes and (4) Paul Huygens. Such disclosure will require the production of entirely confidential information. By requesting similar information from the Title Companies and Other Professionals, the Litigation Trust would likely receive documents relating to every property ever purchased by the four "Individuals" or over 35 "Entities." This would

include, among other things, documents and records containing highly sensitive and personally identifiable information.

Furthermore, as set forth above, most of the documents requested in the subpoenas served upon the Law Firms constitute documents protected by the attorney-client privilege and/or work-product doctrine. The information requested in the Rule 2004 Subpoenas sent to the Law Firms is clearly protected by the attorney-client privilege and the work-product doctrines.

Accordingly, if the Court does not issue a stay of the Order, hundreds of thousands of documents containing highly sensitive, personally identifiable information, and privileged information will be disseminated to the Litigation Trust. Absent a stay pending appeal, a decision in favor of Rhodes by the appellate court will be a hollow victory. Unless the stay is granted, even should Rhodes ultimately prevail on appeal, he would have no remedy if privileged and highly sensitive documents are produced. In other words, denial of Rhodes' stay motion will effectively deny his right to seek appellate review.

### III. THE LITIGATION TRUST WILL NOT BE HARMED.

There will be no harm to the Litigation Trust if the Court grants a stay. Indeed, the result of a stay simply ends the Litigation Trust's fishing trip and it will have to pack up its poles and go home for a short period of time while it does some homework about which hole it wants to fish in and why. Such a delay does not compare to the harm that Rhodes and other non-parties will experience if a stay is not granted. Accordingly, the minimal injury to be suffered by the Litigation Trust if the stay is granted is clearly outweighed by the irreparable injury to be suffered by Rhodes and several other parties if the stay is denied.

### IV. THE PUBLIC INTEREST FAVORS RHODES.

As discussed above, a denial of the stay would effectively deprive Rhodes of his right to appellate review. A denial would also open the door for the production of hundreds of thousands of documents containing highly sensitive, personally identifiable information, and privileged information. In contrast, granting the stay will not impair the Litigation Trust's efforts under the

1  Plan, nor will it cause any harm other than delay. Accordingly, it is in the public interest to grant
2  Rhodes' a stay pending the adjudication of his appeal.

### **CONCLUSION**

For the reasons stated above, Rhodes respectfully requests that the Court stay the Order pending Rhodes' appeal of the Order.

DATED this 9th day of November, 2011.

/s/ Kevin N. Anderson
─────────────────────────────
Kevin N. Anderson
David R. Hague
FABIAN & CLENDENIN
*Attorneys for James M. Rhodes*

4842-9386-2925, v. 1