E-Filed on 11/30/2011

**DIAMOND MCCARTHY LLP**
1201 Elm Street, Suite 3400
Dallas, Texas 75270
(214) 389-5300 (telephone)
(214) 389-5399 (facsimile)

Eric D. Madden, TX Bar No. 24013079
Email:  emadden@diamondmccarthy.com
Michael J. Yoder, TX Bar No. 24056572
Email:  myoder@diamondmccarthy.com
Jacob J. Roberts, TX Bar No. 24065982
Email:  jroberts@diamondmccarthy.com

*Counsel for the Litigation Trust of
The Rhodes Companies, LLC, et al.*

**LAW OFFICE OF BRIAN D. SHAPIRO, A NEVADA LLC**
228 S. 4th Street, Suite 300
Las Vegas, Nevada  89101
 (702) 386-8600 (telephone)
 (702) 383-0994 (facsimile)

Brian D. Shapiro, NV Bar No. 5772
Email:  bshapiro@brianshapirolaw.com

*Local Counsel for the Litigation Trust of
The Rhodes Companies, LLC, et al.*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC,<br>  aka "Rhodes Homes," *et al.,*<br><br>Reorganized Debtors[1]<br><br>Affects:<br>☒  All Debtors<br>☐  The following Debtor(s) | Case No. BK-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>**LITIGATION TRUST'S RESPONSE TO MOTION TO STAY THE ORDER DENYING MOTION TO QUASH RULE 2004 EXAMINATION AND CORRESPONDING SUBPOENAS** |

The Litigation Trust of The Rhodes Companies, LLC, *et al.* (the "Litigation Trust") respectfully responds as follows to the Motion to Stay the Order Denying Motion to Quash Rule 2004 Examinations and Corresponding Subpoenas ("Stay Motion") filed by James M. Rhodes ("Rhodes"):

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC 90206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Ralty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

**FACTUAL BACKGROUND**

1. On March 31 and April 1, 2009, the debtors (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court.

2. On March 12, 2010, the Court entered an order confirming the Third Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, et al. (the "Plan").[2] Pursuant to the Plan, the Litigation Trust is required to investigate and pursue, as appropriate, all causes of action belonging to the Debtors, including certain claims against Rhodes and his affiliated entities (collectively, the "Rhodes Entities").[3]

3. The Litigation Trust subsequently identified what appear to be numerous wrongful transfers of Debtor funds to or for the benefit of the Rhodes Entities. For example, Debtor funds were evidently used: (a) to pay personal income tax obligations for Rhodes; (b) to fund the divorce settlement for Rhodes; (c) to pay legal fees and other professional fees for the sole benefit of the Rhodes Entities; and (d) to acquire real property for the sole benefit of the Rhodes Entities. Many of these transfers were made, either directly or indirectly, to certain financial institutions, law firms, title companies, and other professionals. The Litigation Trust, therefore, decided to seek discovery from those entities to determine, *inter alia*, why they received the transfers and whether the Debtors received reasonably equivalent value in exchange.

4. On August 29 and 30, 2011, the Litigation Trust filed four motions seeking to conduct Rule 2004 examinations of the financial institutions, law firms, title companies, and other professionals that had received funds originating from the Debtors.[4] The Court entered orders granting the motions on August 30 and 31, 2011.[5]

5. The Litigation Trust subsequently issued Rule 2004 subpoenas directing the financial institutions, law firms, title companies, and other professionals to produce

---

[2] Docket No. 1053.

[3] *See* Plan at 30.

[4] Docket Nos. 1511, 1514, 1515 & 1516.

[5] Docket Nos. 1512, 1517, 1518 & 1519.

representatives for examination along with certain documents. As noted above, each of these entities received funds originating from the Debtors. Several of these entities raised concerns with the Litigation Trust regarding the scope of certain document requests and/or the deadlines for compliance.[6] The Litigation Trust, however, was able to resolve all of those concerns through the meet-and-confer process.[7]

6. On September 14, 2011, Rhodes—without making any effort whatsoever to confer with the Litigation Trust—filed his Motion to Quash Orders of Rule 2004 Examination and Corresponding Subpoenas and/or for Protective Order (the "Quash Motion").[8]

7. On September 23, 2011, the Litigation Trust filed its Response to Motion to Quash Subpoenas (the "Quash Response") and a supporting declaration by its counsel.[9]

8. On September 27, 2011, the Court held a status conference on the Quash Motion. During that status conference, counsel for Rhodes misrepresented to the Court that he had conferred with the Litigation Trust before filing the Quash Motion:

> THE COURT: But under the Federal Rules of Discovery, you're supposed to attempt to confer in good faith.
> MR. HAGUE: We did, your Honor, and we put that in the attorney acknowledgement. We said that we called counsel and asked if they would be willing to have this hearing today.
> THE COURT: That's a separate issue.
> MR. HAGUE: Then what issue are you --
> THE COURT: Under the discovery rules, you're supposed to confer in good faith before you bring motions to quash. Did you do that?
> MR. HAGUE: Yes, we did. We did it on a call. We had a conference call with them.
> THE COURT: And did you attempt to resolve anything?
> MR. HAGUE: Yes, we did. It was with the Litigation Trust, the firm out of Texas.[10]

---

[6] Declaration of Jacob J. Roberts in Support of Litigation Trust's Response to Motion to Quash Subpoenas ¶¶ 7-8.

[7] *Id.*

[8] Docket No. 1538; *see also* Declaration of Jacob J. Roberts in Support of Response to Motion to Stay the Order Denying Motion to Quash Rule 2004 Examinations and Corresponding Subpoenas ("Roberts Decl.") ¶ 7 (stating that counsel for Rhodes did not confer with the Litigation Trust before filing the Quash Motion).

[9] Docket Nos. 1555 & 1556.

[10] *See* Roberts Decl. ¶ 5 & Ex. A at 63:10-24 (Transcript of Hearing on September 27, 2011).

9. Counsel for Rhodes repeated these misrepresentations to the Court at the hearing on the Quash Motion on October 5, 2011:

> THE COURT: Now, at the last hearing, I specifically asked you if you had complied with the local and federal rules which require a meet-and-confer before the motion's filed, and you told me you had done that.
> MR. ANDERSON: Mr. Hague was here that day. I was not present. But that said, I did make calls to Mr. Roberts before we filed the motion.
>                                              . . .
> THE COURT: So what was the context of your conversation before the motion was filed?
> MR. ANDERSON: It was a very brief conversation that we objected and were going to file the motion to quash.
> THE COURT: And I resent being lied to. Your counsel last time implied to me that you had met the requirements of the local rule which requires -- and the federal rule. Rule 7037 says, "Discovery motions will not be considered unless a statement of moving counsel is attached certifying that after consultation or effort to do so the parties have been unable to resolve the matter without Court action."
> MR. ANDERSON: Well --
> THE COURT: And that implies -- and then the federal rule requires a good-faith attempt. None of this we're filing the motion or else. Where is your good-faith effort to consult before you filed the motion?
> MR. ANDERSON: Well, Mr. Roberts' response was that they weren't going to modify or change any of their subpoenas, you know. I mean, there were going forward no matter what. We had no alternative but to file the motion to quash.
> THE COURT: But where's the certification about your consultation?
> MR. ANDERSON: That we failed to include, your Honor. I apologize.[11]

10. Contrary to these misrepresentations to the Court, counsel for Rhodes did not confer with the Litigation Trust before filing the Quash Motion. Rather, counsel for Rhodes first contacted the Litigation Trust on the day after filing the Quash Motion and only for the purpose of conferring on a proposed order shortening time.[12] Indeed, the Attorney Information Sheet filed by counsel for Rhodes shows that he contacted Jacob Roberts, the Litigation Trust's counsel, on September 15, 2011—the day after filing the Quash Motion.[13]

---

[11] *See id.* ¶ 6 & Ex. B at 3:20 to 5:7 (Transcript of Hearing on October 5, 2011).

[12] *See id.* ¶ 6.

[13] Docket No. 1546. Counsel for Rhodes did attempt to confer with the Litigation Trust's counsel on September 30, 2011—more than two weeks after filing the Quash Motion. During that conference, the Litigation Trust's counsel offered to limit the subpoenas if there were any specific requests that were objectionable to Rhodes, but counsel for Rhodes never responded to that offer. *See* Roberts Decl. ¶ 6 & Ex. B at 6:21 to 7:7.

4

11. On October 5, 2011, after hearing the arguments of counsel, the Court denied the Quash Motion for three reasons. First, the Court found that the Rule 2004 discovery was appropriate in order to investigate potential fraudulent transfer claims against the Rhodes Entities.[14] Second, the Court found that Rhodes lacked standing to object to the Rule 2004 subpoenas (which had been served on third parties, not Rhodes) as being unduly burdensome.[15] Third, the Court found that Rhodes had failed to engage in a good-faith attempt to resolve the Quash Motion.[16]

12. On October 12, 2011, the Court entered an order denying the Quash Motion.[17] Rhodes filed a Notice of Appeal from that order on October 18, 2011.[18]

## ARGUMENT

13. A stay pending appeal is an "extraordinary remedy."[19] Courts consider four elements in deciding whether to grant a stay under Federal Rule of Bankruptcy Procedure 8005: (a) whether the movant is likely to succeed on the merits of the appeal; (b) whether the movant will suffer irreparable harm absent a stay; (c) whether the stay will impose substantial harm on the non-movant; and (d) whether the stay will serve the public interest.[20] The movant has the burden to establish each of these elements. Rhodes fails to carry this burden.

**A.   RHODES HAS NOT SHOWN A LIKELIHOOD OF SUCCESS ON APPEAL.**

14. Rhodes has not shown—and cannot show—that he is likely to succeed on appeal. As an initial matter, Rhodes faces a difficult standard of appellate review.[21] A bankruptcy

---

[14] *See id.* ¶ 6 & Ex. B at 20:23 to 21:19.

[15] *See id.* ¶ 6 & Ex. B at 21:20-22.

[16] *See id.* ¶ 6 & Ex. B at 21:23 to 22:1.

[17] Docket No. 1570.

[18] Docket No. 1577.

[19] *Adelson v. Smith (In re Smith)*, 397 B.R. 134, 136 (Bankr. D. Nev. 2008) (quoting *Acton v. Fullmer (In re Fullmer)*, 323 B.R. 287, 293 (Bankr. D. Nev. 2005)).

[20] *See id.*

[21] *See id.* (noting that the Court should consider the relevant standard of review in determining the likelihood of success on appeal in connection with a request for stay pending appeal).

court's decision to allow Rule 2004 discovery is reviewed for abuse of discretion.[22] A bankruptcy court abuses its discretion only if it: (a) bases its decision on an incorrect legal standard; (b) bases its decision on a clearly erroneous view of the facts; or (c) leaves the reviewing court with a definite and firm conviction that there has been a clear error of judgment.[23] Thus, to show a likelihood of success on appeal, Rhodes must demonstrate that this Court's decision not to quash the Rule 2004 subpoenas was based on incorrect legal standards, clearly erroneous factual findings, or a clear error in judgment.

15.  Rhodes makes little effort to demonstrate that this Court abused its discretion. Rather, Rhodes merely regurgitates many of the same arguments from his Quash Motion. That is because this Court clearly did not abuse its discretion in denying that motion.

16.  First, the Court did not err by allegedly failing to apply the correct legal standard. The Court explicitly cited the "good cause" standard in its orders granting the Rule 2004 discovery.[24] Both the Quash Motion and the Quash Response employed the "good cause" standard in making their competing arguments to the Court.[25] And the Litigation Trust satisfied that standard by showing that the requested discovery was reasonably necessary to protect its legitimate interests, including its obligation under the Plan to investigate potential claims.[26] Specifically, the Litigation Trust explained—in its Quash Response, its counsel's declaration, and its counsel's statements at the October 5th hearing—that: (a) the Litigation Trust had identified what appeared to be wrongful transfers of Debtor funds to or for the benefit of the Rhodes Entities; (b) many of these transfers were made, either directly or indirectly, to certain financial institutions, law firms, title companies, and other professionals; and (c) the Litigation Trust, therefore, decided to seek discovery from those entities in order to determine, *inter alia*,

---

[22] *See ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 267 (S.D.N.Y. 2004); *Bank One, Columbus, N.A. v. Hammond (In re Hammond)*, 140 B.R. 197, 201 (S.D. Ohio 1992).

[23] *See Khachikyan v. Hahn (In re Khachikyan)*, 335 B.R. 121, 125 (B.A.P. 9th Cir. 2005).

[24] Docket Nos. 1512, 1517, 1518 & 1519.

[25] Quash Motion at 10; Quash Response at 6.

[26] *See Hammond*, 140 B.R. at 201; *see also Matter of Wilcher*, 56 B.R. 428, 434-35 (Bankr. N.D. Ill. 1985) (stating that good cause exists if "the requested documents are necessary to establish the movant's claim").

why they received the transfers and whether the Debtors received any reasonably equivalent value in exchange for such transfers.[27]

17.     Rhodes does not controvert these points. Instead, Rhodes simply argues that a good cause showing requires "particularity, substantiated facts, and evidence."[28] Yet Rhodes cites no authority in support of this argument. In fact, several courts have found that representations of the movant's counsel are sufficient to establish good cause.[29] Other courts, moreover, have held that the movant need not provide detailed facts about the specific claims being investigated in order to pursue Rule 2004 discovery.[30] After all, Rule 2004 discovery is often used to identify potential claims and to determine whether to file litigation.[31]

18.     Second, the Court did not err by allegedly failing to consider that documents held by the law firms might be subject to attorney-client privilege and/or work-product doctrine. Rhodes notes that Federal Rule of Civil Procedure 45(c)(3)(A) states that the Court "must quash or modify a subpoena that . . . requires disclosure of privileged or otherwise protected matter."[32] Rhodes, however, fails to mention that he has the burden to establish that the existence of any attorney-client privilege or work-product protection.[33] Indeed, Rule 45(d)(2)(A) states that a

---

[27] Quash Response at 6-8; Declaration of Jacob J. Roberts in Support of Litigation Trust's Response to Motion to Quash Subpoenas ¶¶ 5-6; Roberts Decl. ¶ 6 & Ex. B at 15:21 to 18:14.

[28] Stay Motion at 8.

[29] *See Metiom*, 318 B.R. at 269 ("Given the absence of any authority suggesting that oral or written statements must be made under oath in order to support a finding of good cause for a Rule 2004 examination, and the existence of case law to the contrary, this Court finds no reason to doubt the soundness of the Bankruptcy Court's decision to rely on the representations of Metiom's counsel and the Metiom email in determining that there was good cause for the Rule 2004 examination."); *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993) (rejecting argument that representations by the trustee's counsel were insufficient to show good cause for Rule 2004 examination), *called into doubt on other grounds by In re Symington*, 209 B.R. 678 (Bankr. D. Md. 1997).

[30] *See, e.g.*, *In re Sheetz*, 452 B.R. 746, 750 (Bankr. N.D. Ind. 2011) ("Movant's argument that the trustee has failed to provide enough specific information concerning the discrepancies she wants to investigate seems to ask too much. It would, in effect, require the trustee to specifically identify the particular problems before she has had the chance to sufficiently investigate the situation. Remember, Rule 2004 can properly be a fishing expedition and upon setting out for such an expedition one does not usually limit the fish one sets out to catch. It is perfectly permissible to troll for whatever might bite.").

[31] *See, e.g.*, *In re J&R Trucking*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010).

[32] Stay Motion at 9 (citing FED. R. CIV. P. 45(c)(3)(A)).

[33] *See In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).

person claiming attorney-client privilege or work-product protection must "expressly make the claim" and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."[34] Yet Rhodes made no effort—either in his briefing or arguments at the hearing—to satisfy these requirements.[35] Rhodes not only failed to provide a privilege log, but also failed to identify even a single law firm as to which he claimed to have a personal attorney-client privilege.

19. Third, the Court did <u>not</u> err by finding that Rhodes lacked standing to file the Quash Motion. A party does not have standing to challenge a subpoena issued to a non-party, unless the party demonstrates a personal right or privilege with respect to the requested documents.[36] Rhodes, however, failed to demonstrate that he had any personal right or privilege regarding those documents. Even Rhodes concedes that he did not "articulate what personal right or privilege he might have with regard to the documents sought."[37]

20. Fourth, the Court did <u>not</u> err by allegedly failing to consider whether the Rule 2004 subpoenas are unduly burdensome. A party does not have standing to quash a subpoena as being unduly burdensome for the non-party to whom the subpoena was issued.[38] Only the subpoenaed non-party can seek that relief. And tellingly, the non-parties have not done so here. Thus, the Court properly disregarded any undue burden objections raised by Rhodes.[39]

---

[34] FED. R. CIV. P. 45(d)(2)(A). Rule 26 contains the same requirement. *See* FED. R. CIV. P. 26(b)(5)(A); Quash Motion at 8 (arguing that Rule 26 applies here).

[35] In its Quash Response, the Litigation Trust pointed out this deficiency. *See* Quash Response at 10-11. Nonetheless, Rhodes still made no effort to explain his alleged privilege claims.

[36] *See* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2459 (3d ed. 2008) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.").

[37] Stay Motion at 10. Remarkably, Rhodes asserts that the Court "did not even allow" him to articulate his alleged personal rights and privileges. *Id.* But nothing in the hearing transcript or the record supports this assertion.

[38] *See, e.g.*, *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, No. *:06CV458, 2009 WL 1562851, at *3 (D. Neb. June 1, 2009) (holding that party lacked standing to quash third-party subpoena on grounds of undue burden or inconvenience).

[39] *See* Roberts Decl. ¶ 6 & Ex. B (stating that Rhodes had no standing "to say this subpoena is burdensome" and "[t]he persons who are subpoenaed are perfectly able to do that").

8

21. Fifth, the Court did not err by allegedly failing to consider whether to issue a protective order under Federal Rule of Civil Procedure 26(c). Rhodes had the burden of showing specific prejudice or harm would result if no protective order was granted.[40] Moreover, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."[41] Rather, Rhodes had to make a "particularized showing of good cause with respect to [each] individual document."[42] Rhodes made no such showing in this case.

22. Sixth, the Court did not err in finding that Rhodes was required to confer with the Litigation Trust regarding the Rule 2004 discovery. Rule 26(c)—which Rhodes expressly invoked in seeking a protective order[43]—requires "a certification that the movant has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action."[44] Local Rule 7037—which applies to all discovery-related motions[45]—states that "[d]iscovery motions will not be considered unless a statement of moving counsel is attached certifying that, after consultation or effort to do so, the parties have been unable to resolve the matters without court action."[46] It is remarkable that Rhodes—having already misled the Court regarding his meet-and-confer efforts—would suggest that these rules somehow do not apply to him.

---

[40] *See Phillips v. G.M. Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002) ("[T]he party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted.").

[41] *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

[42] *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999); *see also Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (holding that district court abused its discretion under Rule 26(c) by entering a blanket protective order without requiring the party seeking protection "to show that *specific* discovery documents . . . contained [confidential] information").

[43] *See* Quash Motion at 8 & 15 (arguing that Rule 26 applies to this contested matter through Rules 7026 and 9014).

[44] FED. R. CIV. P. 26(c)(1).

[45] Local Rule 7037—unlike Federal Rule of Civil Procedure 37—applies to more than merely motions to compel. First, Local Rule 7037 is entitled "Discovery Motions." Second, Local Rule 7037(a) explicitly refers to motions for protective orders. Third, Local Rule 7037(b) and its certification requirement apply to "[d]iscovery motions" without any limitations.

[46] L.R. 7037(b).

**B.     RHODES HAS NOT SHOWN IRREPARABLE HARM ABSENT THE STAY.**

23.     Rhodes argues that he will suffer irreparable harm absent a stay because: (a) privileged documents will be produced to the Litigation Trust; and (b) such production will essentially moot the appeal. These arguments have no merit for at least three reasons.

24.     First, Rhodes has done nothing to establish the existence of any attorney-client privilege or other protections regarding the requested documents. Rhodes not only failed to provide a privilege log, but also failed to identify even a single law firm as to which he claimed to have a personal attorney-client privilege. Even Rhodes concedes that he did not "articulate what personal right or privilege he might have with regard to the documents sought."[47]

25.     Second, even if Rhodes were to have some personal attorney-client privilege, nothing requires that documents subject to his privilege be produced to the Litigation Trust. Instead, the law firms should simply withhold those documents and provide a privilege log to the Litigation Trust under Federal Rule of Civil Procedure 45(d)(2)(A).

26.     Third, even if some allegedly privileged documents were somehow produced thereby mooting the appeal, that risk does not represent irreparable harm. Indeed, as this Court has stated, "the risk that an appeal may become moot does not by itself constitute irreparable injury" for purposes of a Rule 8005 stay.[48]

**C.     RHODES HAS NOT SHOWN ABSENCE OF HARM TO OTHER PARTIES.**

27.     Rhodes asserts that the Litigation Trust (and presumably other parties) will suffer little, if any, harm by a stay pending appeal. Rhodes, however, ignores the fact that creditors, who have been waiting to be paid for more than two years, are the beneficiaries of the Litigation Trust and its efforts to recover funds from the Rhodes Entities and others. Any unnecessary delay in the Litigation Trust's efforts will impose further harm on those creditors.

---

[47] Stay Motion at 10.

[48] *Acton v. Fullmer (In re Fullmer)*, 323 B.R. 287, 304 (Bankr. D. Nev. 2005) (citing numerous cases).

**D.    RHODES HAS NOT SHOWN THAT A STAY SERVES PUBLIC INTEREST.**

28.    Rhodes fails to show that the public interest favors a stay. Rhodes focuses only on his own personal interest regarding the stay.[49] This Court has explained that "considerations of the public interest involve testing whether the relief requested would affect the public at large, as opposed to the immediate parties to the appeal."[50] There is a significant public interest in the expeditious and efficient administration of bankruptcy cases, which will be impaired by obstructing the Litigation Trust's efforts to identify, liquidate, and distribute assets to creditors.[51] The unnecessary "prolongation of this discovery dispute . . . really is inimical to the functioning of this bankruptcy case and the expectation of the creditors to finally get paid."[52]

## CONCLUSION

For the reasons stated above, the Litigation Trust respectfully requests that the Court deny the Stay Motion.

Dated:  November 30, 2011.

**DIAMOND MCCARTHY LLP**

 */s/ Eric D. Madden*
Eric D. Madden, (*pro hac vice*)
Michael J. Yoder, (*pro hac vice*)
Jacob J. Roberts, (*pro hac vice*)
1201 Elm Street, Suite 3400
Dallas, Texas 75270
(214) 389-5300 (telephone)
(214) 389-5399 (facsimile)

*Counsel for the Litigation Trust of
The Rhodes Companies, LLC, et al.*

**LAW OFFICE OF BRIAN SHAPIRO**

 */s/ Brian D. Shapiro*
Brian D. Shapiro,
228 S. 4th Street, Suite 300
Las Vegas, Nevada 89101
(702) 386-8600 (telephone)
(702) 383-0994 (facsimile)

*Local Counsel for the Litigation Trust of
The Rhodes Companies, LLC, et al.*

---

[49] Stay Motion at 12 (arguing that a denial of the stay would "effectively deprive Rhodes of his right to appellate review" and "open the door for the production" of personal and privileged documents).

[50] *Fullmer*, 323 B.R. at 305.

[51] *See, e.g.*, *ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 272 (S.D.N.Y. 2004) (finding that this public interest favored denial of motion to stay Rule 2004 discovery pending appeal).

[52] *Id.*

# CERTIFICATE OF SERVICE

I hereby certify that I am employee of the law firm of DIAMOND MCCARTHY LLP, and that on the 30th day of November, 2011, a true and correct copy of the foregoing Litigation Trust's Response to Motion to Quash Subpoenas was served by the Court's CM/ECF system to:

KEVIN N. ANDERSON on behalf of Creditor JAMES RHODES
kanderson@fabianlaw.com, sburdash@fabianlaw.com

BRETT A. AXELROD on behalf of Creditor SAGEBRUSH ENTERPRISES, INC.
baxelrod@foxrothschild.com, pkois@foxrothschild.com; rdittrich@foxrothschild.com; msheffield@foxrothschild.com; ldupree@foxrothschild.com

J. THOMAS BECKETT on behalf of Creditor CREDITORS COMMITTEE
ECF@parsonsbehle.com

SHIRLEY S. CHO on behalf of Debtor THE RHODES COMPANIES, LLC
scho@pszjlaw.com

JANET L. CHUBB on behalf of Creditor COMMERCE ASSOCIATES, LLC
bsalinas@armstrongteasdale.com

DAVID A. COLVIN on behalf of Creditor DANA KEPNER COMPANIES, LLC
dcolvin@maclaw.com, mwalters@maclaw.com; kgallegos@maclaw.com; tszostek@maclaw.com

NATALIE M. COX on behalf of Plaintiff EUGENE DAVIS
ncox@klnevada.com, bankruptcy@klnevada.com; ckishi@klnevada.com

THOMAS E. CROWE on behalf of Creditor SHANE SMITH
tcrowelaw@yahoo.com

DAMON K. DIAS on behalf of Creditor X-It at 215, LLC
ddias@diaslawgroup.com,bankruptcy@diaslawgroup.com

TRACY A. DIFILLIPPO on behalf of Creditor COMMERCE ASSOCIATES, LLC
tdifillippo@jonesvargas.com, enunez@jonesvargas.com; ehardy@jonesvargas.com

CONOR P. FLYNN on behalf of Creditor COMMERCE ASSOCIATES, LLC
cflynn@jonesvargas.com

PHILIP S. GERSON on behalf of Creditor CLARK COUNTY
banknv@rocgd.com, mburgener@rocgd.com

1  REW R. GOODENOW on behalf of Creditor CREDITORS COMMITTEE
   ecf@parsonsbehle.com

2

3  JAMES D. GREENE on behalf of Plaintiff EUGENE DAVIS
   jgreene@greeneinfusolaw.com, fritchie@greeneinfusolaw.com; kfarney@greeneinfusolaw.com;
4  bschmidt@greeneinfusolaw.com

5  KIRBY C. GRUCHOW on behalf of Creditor NEVADA POWER COMPANY
   hkelley@leachjohnson.com

6
   CAROL L. HARRIS on behalf of Creditor IN RE KITEC FITTING LITIGATION CLASS
7  PLAINTIFFS
   c.harris@kempjones.com, jlm@kempjones.com
8
   RODNEY M. JEAN on behalf of Creditor CREDIT SUISSE, CAYMAN ISLANDS BRANCH
9  RJEAN@LIONELSAWYER.COM, gbagley@lionelsawyer.com; bklsclv@lionelsawyer.com;
10 mstow@lionelsawyer.com

11 ROBERT R. KINAS on behalf of Creditor CATERPILLAR FINANCIAL SERVICES
   CORPORATION
12 rkinas@swlaw.com, jmath@swlaw.com; mfull@swlaw.com; cdossier@swlaw.com;
   nbaig@swlaw.com; nunzueta@swlaw.com; docket_las@swlaw.com
13

14 KEITH S. KNOCHEL on behalf of Creditor VALERIE SILVAS
   law@lawyersinarizona.com, bank@lawyersinarizona.com
15
   BART K. LARSEN on behalf of Creditor Reef Colonial, LLC
16 blarsen@klnevada.com, jierien@klnevada.com; bankruptcy@klnevada.com

17
   ZACHARIAH LARSON on behalf of Debtor APACHE FRAMING, LLC
18 cshurtliff@larsonlawnv.com, sstanton@larsonlawnv.com; akosina@larsonlawnv.com

19 NILE LEATHAM on behalf of Creditor STEERING COMMITTEE OF SENIOR SECURED
   LENDERS
20 nleatham@klnevada.com, ckishi@klnevada.com; bankruptcy@klnevada.com

21
   ANNE M. LORADITCH on behalf of Creditor JAMES RHODES
22 aloraditch@foxrothschild.com, pkois@foxrothschild.com; rdittrich@foxrothschild.com

23 VIRGINIA CRONAN LOWE on behalf of Creditor UNITED STATES OF AMERICA -
   INTERNAL REVENUE SERVICE
24 virginiacronan.lowe@usdoj.gov, Western.Taxcivil@usdoj.gov

25
   JANIECE S MARSHALL on behalf of Creditor STANLEY CONSULTANTS, INC.
26 car@amclaw.com; lom@amclaw.com; crb@amclaw.com; csh@amclaw.com

EDWARD M. MCDONALD on behalf of U.S. Trustee U.S. TRUSTEE - LV - 11
edward.m.mcdonald@usdoj.gov

SUSAN L. MYERS on behalf of Creditor CREDIT SUISSE, CAYMAN ISLANDS BRANCH
smyers@lionelsawyer.com, gbagley@lionelsawyer.com; bklsclv@lionelsawyer.com

JEFFREY D. OLSTER on behalf of Creditor HARSCH INVESTMENT PROPERTIES - NEVADA, LLC
olster@lbbslaw.com, sallade@lbbslaw.com

ERIC RANSAVAGE on behalf of Creditor LESLIE BLASCO, ET AL.
eransavage@ssllplaw.com, agutierrez@ssllplaw.com

SHLOMO S. SHERMAN on behalf of Interested Party REORGANIZED DEBTORS
ssherman@klnevada.com, bankruptcy@klnevada.com; ckishi@klnevada.com; bbroussard@klnevada.com

MARK R. SOMERSTEIN on behalf of Creditor WELLS FARGO BANK, N.A.
mark.somerstein@ropesgray.com

JEFFREY R. SYLVESTER on behalf of Creditor CREDIT SUISSE, CAYMAN ISLANDS BRANCH
jeff@sylvesterpolednak.com

TIMOTHY P. THOMAS on behalf of Creditor STEERING COMMITTEE OF SENIOR SECURED LENDERS
veralynn@tthomaslaw.com

U.S. TRUSTEE - LV - 11
USTPRegion17.lv.ecf@usdoj.gov

DONALD H. WILLIAMS on behalf of Creditor WESTAR KITCHEN & BATH, LLC
DonaldHWilliamsLaw@gmail.com, taylorsellers@gmail.com.

   */s/ Catherine A. Burrow*
Catherine A. Burrow
Legal Assistant
Diamond McCarthy LLP