Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM, CHTD.
400 South Rampart Boulevard, Suite 400
Las Vegas, NV 89145
Telephone: 702.362.7800
Facsimile: 702.362.9472
E-Mail: nleatham@klnevada.com

Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
Meredith A. Lahaie (NY Bar No. 4518023)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: 212.872.1000
Facsimile: 212.872.1002
E-Mail: pdublin@akingump.com
aqureshi@akingump.com
mlahaie@akingump.com

Counsel for the Reorganized Debtors

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: | Case No. 09-14814-LBR |
| | (Jointly Administered) |
| THE RHODES COMPANIES, LLC, | |
| aka "Rhodes Homes," *et al.*, | Chapter 11 |
| Reorganized Debtors.[1] | |

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

| | |
|---|---|
| Affects:<br>☒ All Debtors<br>☐ Affects the following Debtor(s) | DECLARATION OF JUSTIN BONO IN SUPPORT OF MOTION OF THE REORGANIZED DEBTORS FOR ENTRY OF AN ORDER APPROVING SETTLEMENT BETWEEN JAMES RHODES AND THE REORGANIZED DEBTORS |

I, Justin Bono, hereby declare:

1. I am the Vice President and Manager of the above-captioned reorganized debtors (collectively, the "Reorganized Debtors").

2. I make this declaration in support of the Motion (the "Motion") of the Reorganized Debtors for Entry of an Order Approving Settlement Between James Rhodes ("Rhodes" and, together with the Reorganized Debtors, the "Parties") and the Reorganized Debtors. Unless otherwise stated, I make this declaration based upon my personal knowledge and/or my review of the Reorganized Debtors' books and records.

## Background

A. **General Background**

3. I am advised that on April 30, 2009, each of the Debtors[2] filed their schedules of assets and liabilities (the "Schedules"), which were subsequently amended on July 2, 2009 and again on January 20, 2010, to include the Scheduled Claims (as defined below).

4. I am further advised that on July 17, 2009, Rhodes timely filed a proof of claim (the "Proof of Claim") seeking $10,598,000 for (i) reimbursement of taxes in the

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

amount of $9,729,151 paid by Rhodes for the 2006 tax year (the "Tax Claim")[3] on account of taxable income allocated to Rhodes from the Debtors through certain non-debtor entities ultimately owned by Rhodes that previously controlled certain of the Debtors (the "Rhodes Entities"), and (ii) $868,849 allegedly advanced to Greenway Partners, LLC (the "Greenway Partners Claim").

### B.  Claims Covered by the Proposed Settlement

#### a.  *The Greenway Partners Claim*

5.  By the Proof of Claim, Rhodes asserted a claim for monies he allegedly personally advanced to Greenway Partners, LLC on behalf of three individuals—Frederick Chin, James Coyne, and Christopher Stephens (collectively, the "Greenway Employees")—all of whom had briefly been employed by the Debtors prior to the Petition Date. According to Rhodes, these advances represented a portion of the salaries owed to the Greenway Employees for services rendered during their employment with the Debtors. Rhodes further asserted that he made these personal advances to avoid a disruptive conflict in the Debtors' offices related to the amount of compensation owed to the Greenway Employees.

#### b.  *The Scheduled Claims*

6.  The Schedules reflect that Rhodes and certain of his affiliated entities were scheduled as having a limited number of claims against the Debtors for which no proofs of claim were filed. Specifically, the Schedules include the following claims: (i) Rhodes Homes Arizona's alleged obligation to compensate Rhodes for certain services in the amount of $151,999.01 (the "Compensation Claim"); (ii) Pinnacle Grading, LLC's alleged

---

[3] The proposed Settlement does not resolve the Parties' dispute as to the Tax Claim, which was disallowed by order of this Court dated November 16, 2010. I understand that Rhodes may appeal from the Court's prior ruling on the Tax Claim.

obligation to make certain equipment rental payments to Pinnacle Equipment Rental, LLC in the amount of $557,302.09 (the "Pinnacle Equipment Claim"); and (iii) Heritage Land Company's alleged obligation to repay Sedora Holdings, LLC $167,901.86 for its payment of certain litigation expenses (the "Sedora Claim" and, together with the Compensation Claim and the Pinnacle Equipment Claim, the "Scheduled Claims").

7. The claims proposed to be resolved by the Settlement are the Scheduled Claims and the Greenway Partners Claim (collectively, the "Settled Claims").

C. **Procedural History**

8. On May 27, 2010, the Reorganized Debtors filed an objection to the Proof of Claim (the "Original Objection"). By the Original Objection, the Reorganized Debtors also indicated that they intended to amend the Schedules to remove the Scheduled Claims.

9. On June 17, 2010, Rhodes filed an opposition to the Original Objection. Shortly thereafter, on August 24, 2010, this Court held a status conference during which the Parties agreed that the proceedings should be bifurcated with respect to: (1) Rhodes's entitlement to the Tax Claim; and (2) all issues regarding the Greenway Partners Claim and the Scheduled Claims.

10. On November 4, 2010, this Court held a hearing on the Reorganized Debtors' objection to the Tax Claim and subsequently entered its Order Sustaining Reorganized Debtors' Objection to James Rhodes' Entitlement to the Tax Claim Found in Proof of Claim No. 814-33 on November 16, 2010 (the "Tax Order").

11. On November 30, 2010, Rhodes filed: (1) *James Rhodes' Notice of Appeal* from the Tax order; and (2) *James Rhodes' Statement of Election to Appeal to the United States District Court for the District of Nevada* (collectively, the "Tax Appeal").

4

12. On April 14, 2011, Rhodes and the Reorganized Debtors filed a *Stipulation and Order Dismissing Appeal Without Prejudice,* wherein the parties stipulated and agreed that the Tax Order from which Rhodes appealed is not a final, appealable order.

13. Thereafter, on April 18, 2011, the United States District Court for the District of Nevada entered an order dismissing the Tax Appeal, without prejudice. I understand that, by dismissal of the Tax Appeal, Rhodes shall not be deemed to have waived the right to timely file a new notice of appeal with respect to the Tax Claim upon the issuance by this Court of a final, appealable order, and consistent with applicable law.

14. On April 19, 2011, this Court held a status hearing regarding the status of settlement discussions between the Parties as to the Tax Claim, the Greenway Partners Claim and the Scheduled Claims. At that time, the Parties informed the Court that they had attended a settlement conference with the Honorable Judge Zive on April 7, 2011 in an effort to resolve the Parties' outstanding disputes, but were unable to reach a settlement. The Parties held an additional settlement conference with the Honorable Judge Zive on July 7, 2011, but again were unable to reach a settlement.

15. Accordingly, on August 2, 2011 and September 27, 2011, this Court heard arguments with respect to the Greenway Partners Claim and the Scheduled Claims. At the September 27, 2011 hearing, the Court sustained the Reorganized Debtors' objection to the Pinnacle Equipment Claim.[4] The Court further held that material issues of fact remained outstanding with respect to the Greenway Partners Claim, the Compensation Claim and the Sedora Claim. Consequently, an evidentiary hearing with respect to the Greenway Partners Claim, the Compensation Claim and the Sedora Claim was scheduled for December 5, 2011.

---

[4] By the Settlement, Rhodes has agreed not to appeal the order entered sustaining the Reorganized Debtors' objection to the Pinnacle Equipment Claim.

D. **The Settlement**

16. After extensive, arm's-length negotiations between the Reorganized Debtors and Rhodes, the Parties have determined to enter into the Settlement in order to fully and finally resolve the Parties' disputes as to the Settled Claims. Pursuant to the Settlement, the Reorganized Debtors have agreed to an allowance of the Settled Claims in the amount of $500,000 for all purposes under the Plan, including the Rhodes Entities'[5] right of setoff pursuant to 11 U.S.C. § 553 against any claims or causes of action that the Reorganized Debtors or the Litigation Trust may assert against the Rhodes Entities.

17. Pursuant to the Settlement, if no Final Order (as defined in the Motion) is entered approving the Settlement (but not in the event of any proceeding brought to enforce or interpret the Settlement), the Parties acknowledge and agree that the Settlement, and all negotiations and proceedings connected with the Settlement, shall be without prejudice to the rights or remedies of the Parties, and no part of the Settlement, or any statement by any party, any finding of fact or any conclusions of law related thereto may be used in any manner by either Party in any action, suit, or proceeding as evidence of the respective rights, liabilities, duties, or obligations of the Parties.

18. The Parties further agree that, upon entry of a Final Order approving the Settlement, Rhodes shall be entitled to file his notice of appeal with respect to the Tax Claim and consistent with applicable law.

---

[5] The Rhodes Entities, as defined by the Plan, includes James M. Rhodes.

## The Proposed Settlement Is Fair and Equitable

19. Based on my understanding of the disputes between the Reorganized Debtors and Rhodes and my involvement in the negotiation of the Settlement, I believe that the Settlement is fair and equitable and should be approved.

20. Among other things, I am advised that the ability of the Reorganized Debtors to successfully establish the facts necessary to prevail on the objections at the evidentiary hearing remains uncertain. Accordingly, the Reorganized Debtors' probability of success is unclear.

21. In addition, I am advised that, in the absence of the Settlement and to the extent the evidentiary hearing were to go forward, the Reorganized Debtors would be forced to conduct discovery and take depositions of numerous facts witnesses. In addition, both Parties had also contemplated the preparation of pre-trial submissions to assist the Court in reaching its determination. This process would force the Reorganized Debtors to incur substantial costs and expenses. Upon information and belief, even if the Reorganized Debtors were to successfully prosecute their objection to the Settled Claims, Rhodes would likely appeal from the Court's determination, resulting in additional costs that would be borne by the reorganized estates. Moreover, I believe that continued litigation over the Settled Claims would divert the Reorganized Debtors' attention from the operation of their businesses.

22. I also believe that entry into the Settlement is in the interests of the Reorganized Debtors' creditors. I am advised that, if the Settled Claims were allowed in the amounts initially asserted by Rhodes or scheduled by the Debtors, as applicable, such claims would total in excess of $1.7 million. In this case, the allowed amount of the Settled Claims

has a dollar-for-dollar impact on the amount of money the Litigation Trust will be entitled to recover on account of claims and causes of action against the Rhodes Entities and, thus, will have a direct impact on the amounts eventually distributed to holders of interests in the Litigation Trust. It is my belief that the Settlement minimizes the size of the claim the Rhodes Entities will be able to offset against any judgment, thereby increasing the chances that the Reorganized Debtors' creditors (who are now beneficiaries of the Litigation Trust) will receive a meaningful recovery on account of their trust interests.

23. Finally, by resolving the Parties' dispute as to the Settled Claims, I believe that the Settlement will enable the Reorganized Debtors to focus their attention on the operation of their businesses for the benefit of their existing stakeholders.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of December, 2011.

By: _____
    Justin Bono