1

1          UNITED STATES BANKRUPTCY COURT

2              DISTRICT OF NEVADA

3              LAS VEGAS, NEVADA

4    In re:  THE RHODES COMPANIES,    )  E-Filed:  12/23/12
     LLC,                             )
5                                     )
              Debtor.                 )  Case No.
6                                     )  BK-S-09-14814-LBR
     _____)  Chapter 11
7

8

9

10

11             TRANSCRIPT OF PROCEEDINGS
                        OF
12           MOTION TO RECUSE JUDGE
        TERMINATION JUDGE LINDA B. RIEGLE,
13                  ADDING JUDGE,
        WITH CERTIFICATE OF SERVICE, NO. 1598
14                      AND
     MOTION TO APPROVE COMPROMISE UNDER RULE 9019
15          WITH PROPOSED ORDER, NO. 1615
                    VOLUME 1
16       BEFORE THE HONORABLE LINDA B. RIEGLE
             UNITED STATES BANKRUPTCY JUDGE
17
              Friday, January 6, 2012
18
                    9:30 a.m.
19

20

21

22

23   Court Recorder:      Deborah Hemstreet

24

     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

2

```
 1   APPEARANCES:

 2   For James Rhodes:        KEVIN N. ANDERSON, ESQ.
                              Fabian & Clendenin
 3                            601 South Tenth Street
                              Suite 102
 4                            Las Vegas, Nevada 89101

 5   For the Reorganized     ABID R. QURESHI, ESQ.
     Debtors:                MEREDITH A. LAHAIE, ESQ.
 6                           Akin, Gump, Strauss, Hauer & Feld, LLP
                             One Bryant Park
 7                           New York, New York 10036

 8   For the Rhodes          JACOB J. ROBERTS, ESQ.
     Companies Litigation    Diamond McCarthy, LLP
 9   Trust:                  Two Houston Center
                             909 Fannin Street
10                           Fifteenth Floor
                             Houston, Texas 77010
11                           (Telephonic)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1              (Court convened at 09:33:50 a.m.)

 2              THE COURT:  Be seated.

 3          (Colloquy not on the record.)

 4              THE COURT:  All right.  Rhodes Companies.

 5          Appearances, please.

 6              MR. ANDERSON:  Kevin Anderson on behalf of

 7   Mr. Rhodes.

 8              MR. QURESHI:  Good morning, your Honor.  Abid Qureshi

 9   and Meredith Lahaie, Akin, Gump, Strauss, Hauer & Feld, on

10   behalf of the reorganized debtors.

11              THE COURT:  Okay.  All right.  On the first motion,

12   the motion to recuse, did you want to make any additional

13   arguments or --

14              MR. ANDERSON:  I assume your Honor's had a chance to

15   review it.  I think what I'd like to say is our concern is not

16   so much about what's happened in the past, but what's going

17   forward because we now have the Litigation Trust that is

18   seeking to investigate claims and bring claims.

19          And one of the most troubling statements that I read in

20   the transcript -- I wasn't at the hearing -- was from the

21   September 27th hearing where the Court actually suggested that

22   they consider bringing a fraudulent-conveyance transaction and,

23   you know, the Court's comment that the Court didn't see why it

24   wouldn't have been a fraudulent conveyance in that

25   circumstance.
```

4

1          That's exactly the type of claim that the Litigation Trust

2    is looking to bring, and my understanding is they're going to

3    be bringing it before the Court, and that's really what

4    prompted the motion to recuse.  If your Honor has any questions

5    about any of the other aspects of the motion?

6          THE COURT:  No.

7          MR. ANDERSON:  Thank you.

8          MR. QURESHI:  Good morning, your Honor.

9    Abid Qureshi, Akin, Gump, on behalf of the reorganized debtor.

10   We obviously have filed an opposition to the recusal motion.

11         Your Honor, I won't repeat for the Court what is in our

12   papers, essentially, a very high standard.  We don't think it's

13   even close.  I would like to respond, though, briefly to

14   Mr. Anderson's point.

15         With respect to a potential fraudulent-conveyance claim

16   here against Mr. Rhodes, respectfully, your Honor, that's

17   nothing new.

18         That certainly was nothing new at the time that your Honor

19   mentioned it.  That's been something that's been, you know,

20   frankly, very obvious to the secured lenders here.

21         Earlier in the case, your Honor will recall that the way

22   this case commenced was with the filing of a Chapter 11 Trustee

23   motion by the secured lenders.

24         And there had been an investigation done prior to the

25   petition date of conduct that Mr. Rhodes had engaged in

1    prepetition.

2          And so the secured lenders, now the reorganized debtors,

3    were very aware as of day one of the case of possible causes of

4    action.

5          And it was very clear since the outset that ultimately

6    where this case would end up is where we are now on the verge

7    of which is the reorganized debtors actually commencing those

8    various causes of action against Mr. Rhodes.

9          So the suggestion if it is one that somehow the Trust is

10   now commencing these causes of action and a

11   fraudulent-conveyance claim, in particular, because your Honor

12   mentioned it or asked about it at a prior hearing, your Honor,

13   that just has no basis.

14         Again, those were, frankly, obvious causes of action that

15   were within our knowledge at the outset.  So beyond that --

16             THE COURT:  Okay.

17             MR. QURESHI:  -- we'll rest on our papers.

18   Thank you.

19             THE COURT:  All right.  Thank you.

20   Any response to those comments?

21             MR. ANDERSON:  I don't think that it matters that it

22   was obvious.  I think that Mr. Qureshi actually helps make my

23   point.

24         Because the fraudulent conveyance was something that was

25   obvious and under consideration, what I have never heard from a

1  judge -- and I've been doing this over 30 years -- is a judge

2  to suggest to a party that they file a cause of action.  That

3  they amend their lawsuit for a fraudulent conveyance.

4      I mean, maybe what he paid already is a fraudulent

5  conveyance.  I don't see why it wouldn't be.  That's what

6  troubles me because these claims -- everybody knows they were

7  coming.

8      Everybody knows that they're going to be filed before

9  your Honor, and we now have a statement where the Court has

10  predetermined it.  That's what we find objectionable.

11      THE COURT:  Okay.

12      MR. QURESHI:  And I'm sorry, your Honor.  If I may

13  just very briefly on that specific point just to direct

14  your Honor to the case law we've cited in our opposition?  It's

15  at paragraph 6.

16      There is simply nothing wrong with the Court sua sponte or

17  in response to comments from counsel expressing a view on the

18  likelihood of a particular cause of action having merit or not

19  having merit.

20      Certainly, I don't think anything your Honor said here

21  comes even close to predetermining the outcome given that the

22  lawsuit hasn't even been commenced.

23      But the mere discussion of a potential cause of action

24  under the Ninth Circuit cases governing recusal, that just

25  doesn't come close to comments that would justify recusal.

1    And here given the length of time that we have been before

2    your Honor in one capacity or another -- I think we're at

3    something like three years -- there are I think in addition

4    some real judicial-efficiency concerns in terms of, you know,

5    having another judge get up to speed, et cetera.

6    Thank you.

7    THE COURT:  All right.  Thank you.

8    Well, I'm going to deny the motion.  The things that I

9    said certainly don't meet the standard for judicial

10    recusal.

11    Kind of preliminary, you may not like me.  You may not

12    respect me, but I've been doing this for 24 years, and I've

13    always, always, always applied the law under the facts.  And

14    every time when people attempt to recuse, it's usually for

15    litigation strategy.

16    And as much as I would prefer passing this case on to

17    someone else for my own workload and my own sanity, that's not

18    fair to my colleagues.  It's not fair to the judicial system.

19    It is appropriate -- I mean, there's nothing wrong with

20    the comments that were made in the sense that a Court can

21    always make a comment such as isn't this a such-and-such cause

22    of action.

23    It's my duty to make sure that all interests are

24    represented.  It's my duty to make sure that everyone has

25    thought about all the facts and circumstances.

1        And, for example, the comment that Mr. Rhodes -- you know,

2   it's true.  Everybody admits he was dishonest, for example, in

3   the Greenway claim about what he truly intended to do.

4        But just because somebody's dishonest in the white-lie

5   sense, it doesn't mean they're necessarily dishonest in the

6   legal sense, and that's the fine distinction to be made, I

7   mean, and the point is I set those matters for trial, so,

8   obviously, I hadn't prejudged those issues.

9        If and when a fraudulent-conveyance action comes, it will

10  be judged on the merits in accordance with the law, in

11  accordance with the facts, so I'm going to deny the motion.

12  All right.  Let's take a recess.

13            THE CLERK:  Thank you, your Honor.

14       (Colloquy not on the record.)

15            THE CLERK:  All rise.

16       (Recess at 09:41:56 a.m.)

17       (Court reconvened at 09:48:26 a.m.)

18            THE CLERK:  All rise.  Bankruptcy court is back in

19  session.

20            THE COURT:  Be seated.

21            MS. LAHAIE:  Good morning, your Honor.

22  Meredith Lahaie, Akin, Gump, Strauss, Hauer & Feld, for the

23  reorganized debtors.

24       On an entirely different note, your Honor, the reorganized

25  debtors are happy to say that at long last we have reached a

9

1  settlement of at least some of the issues that the reorganized

2  debtors have been before this Court on in connection with

3  Mr. Rhodes.

4          THE COURT:  Let me tell you about a number of my

5  concerns here that may require a continuance because I want

6  some more information and some more input, and let me tell you

7  my thoughts in general, and then if you have --

8          MS. LAHAIE:  Okay.

9          THE COURT:  -- answers now you can respond.

10      While I know this is an objection to claim, it's my

11  understanding that if and when an action is brought by the

12  liquidating trustee this would have a direct impact on the

13  liquidating trustee's rights because I understand that there's

14  a right of setoff, but two questions.

15      First is is the liquidating trustee agreeable to that

16  amount.  Secondly, in a context of an adversary whomever may

17  hear that adversary, this question of setoff is an equitable

18  issue, so, question, what impact has the liquidating trustee

19  had in this compromise?

20          MS. LAHAIE:  Your Honor, there are two impacts I

21  think that the overall settlement has --

22          THE COURT:  What --

23          MS. LAHAIE:  -- on --

24          THE COURT:  What --

25          MS. LAHAIE:  -- Litigation Trust.

```
 1              THE COURT:  I'm sorry.  I just said impact.  I didn't
 2    mean impact.  Two questions, impact and input has the
 3    liquidating trustee had.
 4              MS. LAHAIE:  Your Honor, the first impact I was going
 5    to address was the one that you were asking about which was the
 6    amount of the setoff that we're seeking to give Rhodes an
 7    allowed claim for which is the $500,000 amount.
 8         Your Honor, I'm not sure if counsel to the
 9    Liquidating Trust is on the phone, but we have had
10    conversations with the counsel of the Liquidating Trust, and
11    they are acceptable and amenable to the amount.
12              THE COURT:  Okay.  Is anyone on the phone?
13              THE CLERK:  Yes, your Honor, but they're all on
14    listen-only mode.
15              THE COURT:  Court Call, you can change that.
16              THE CLERK:  Who are you wanting to --
17              MS. LAHAIE:  Is there anyone from Diamond on the
18    phone?  If not, your Honor, I'm sure that we could have them --
19    if it was a concern to your Honor, I'm sure we could have
20    them --
21              THE COURT:  That is a --
22              MS. LAHAIE:  -- submit --
23              THE COURT:  That is a concern, so you could --
24              MS. LAHAIE:  We --
25              THE COURT:  That could be satisfied with an
```

1    affidavit.

2            MS. LAHAIE:  Okay.  And, your Honor, the second

3    impact that I was going to address is the other relationship

4    between the settlement here and the actions that will be

5    commenced by Litigation Trust.

6        Just to refresh your recollection, that the timing within

7    which those actions will be brought is keyed off of the day

8    that these claims are going to be resolved whether it be today

9    or now at some point in the future, whenever that order is

10   entered resolving these claims.

11       And the one thing that the settlement does not address is

12   the tax claim which we can discuss in a minute if your Honor

13   would like to.

14       But once this settlement is resolved one way or the other,

15   then there will be a 60-day clock during which the reorganized

16   trustee will have the ability to commence the causes of action

17   against Mr. Rhodes.

18           THE COURT:  Okay.  So, again, the liquidating trustee

19   is content -- "content" is the wrong word -- has had input and

20   reviewed the pros and the cons, et cetera, all right, and

21   because the thing --

22           MS. LAHAIE:  That's correct, your Honor.

23           THE COURT:  -- that concerned me was the liquidating

24   trustee has dismissed the suit against Greenway.

25       So, obviously, he had some investigation into whether or

1    not there was a cause of action or there wasn't a cause of

2    action, and the answer is yes.

3              MS. LAHAIE:  That's correct, your Honor.

4              THE COURT:  Okay.

5              MS. LAHAIE:  I believe that Diamond who is counsel to

6    the liquidating trustee has done a fairly intensive --

7              THE COURT:  Okay.

8              MS. LAHAIE:  -- investigation up to this point.

9              THE COURT:  Okay.  And the other reason that

10   concerned me was, you know, your affidavit in support was

11   good.

12        But as so often happens, it was -- you said the right

13   words and the right things, but it was almost rote and without

14   really telling me.

15        You said, for example, the cost of litigation.  Well, you

16   were at trial, so what more discovery would you have needed and

17   what would the additional cost be and what were your -- you

18   know, we didn't have a stipulated set of facts.

19        If I had had a stipulated set of facts, I could say, oh,

20   wait, well, here's these stipulated set of facts, and that

21   shows there is a big issue here.

22              MS. LAHAIE:  Your Honor, I'm happy to address it to

23   the extent -- and if your Honor would like a further submission

24   on that as well.

25        As your Honor does know, this was scheduled for an

1   evidentiary hearing on December 5th.  Over the course of the

2   weeks leading up to that hearing, the parties obviously were

3   engaged in dual-track process.

4        On the one hand, the parties obviously were having very

5   intense, very frequent conversations over the terms of the

6   settlement that's set forth in these documents.

7        The other track, your Honor, the parties were gearing up

8   for litigation.  The parties had agreed.  As your Honor may

9   recall, we had submitted a scheduling order that had a number

10  of dates that addressed both discovery dates and depositions

11  and pretrial submissions.

12       And, fortunately, your Honor, for the reorganized debtors

13  those expenses were not incurred because a settlement was

14  struck before, for example, the pretrial submissions were

15  drafted.

16            THE COURT:  Okay.

17            MS. LAHAIE:  The parties had gotten to the point

18  where they exchanged preliminary witness lists.  And just based

19  on the number of witnesses on each parties' list and the

20  various geographic regions that those parties were located in,

21  the costs that would have been incurred just to physically

22  travel, depose them, and then make a determination as to

23  whether those witnesses would need to be called to give live

24  testimony to your Honor obviously would require the submission

25  of written affidavits, presumably, that the Court would treat

1   as directs, and then, presumably, your Honor, there would have

2   been posttrial submissions as well.

3       That whole process was a concern that the reorganized

4   debtors were very focused on.  Mr. Qureshi reminds me that

5   there would have been eight depositions scheduled by the

6   parties --

7               THE COURT:  Okay.

8               MS. LAHAIE:  -- in connection with that trial.

9               THE COURT:  So all of that stopped before -- in other

10  words, I didn't realize it 'til like right before, but that was

11  because you were working.  You had a done a standstill.

12              MS. LAHAIE:  That's right, your Honor.

13              THE COURT:  Okay.  And on the tax claims since it's

14  not being released, aren't you incurring expense -- and maybe

15  it doesn't make a difference because there's two separate

16  components, but it's huge component, $10,000,000.  Aren't you

17  incurring expenses on that appeal?

18              MS. LAHAIE:  Your Honor, we will be incurring

19  expenses in connection with the appeal of the tax claim.

20  That's correct.  Obviously, none of that is covered by the

21  settlement papers that are before you.

22              THE COURT:  Okay.  And so, in essence, you guys have

23  split the difference on the other claims.

24              MS. LAHAIE:  We have, your Honor.

25              THE COURT:  Okay.  And was that splitting the

1  difference based upon an analysis that let's just split the

2  baby or was it based upon --

3        MS. LAHAIE:  Your Honor, I can tell you in general

4  terms how it was reached.  If you look at the --

5        THE COURT:  And this is --

6        MS. LAHAIE:  There were four --

7        THE COURT:  -- always difficult because if it's not

8  approved, then you're giving away your secrets.

9        MS. LAHAIE:  I know, your Honor.

10        THE COURT:  On the other hand, I -- as we all know,

11  under A&C Properties, I can't just approve it just because the

12  trustee wants to.  I must do --

13        MS. LAHAIE:  I understand, your Honor.

14        THE COURT:  -- an independent analysis.

15        MS. LAHAIE:  Based on the claims that were settled,

16  you'll note there were four claims.  The first as you mentioned

17  is Greenway.

18     And based on our analysis -- you know, and I can tell you

19  that the reorganized debtors did believe they had some

20  exposure.  I don't know that I can quantify for you the extent

21  to which we believe we had exposure.

22     And with the scheduled claims, one thing that probably I

23  should mention, your Honor, is that the judge did sustain the

24  objections to one of our claims.

25     And the settlement before your Honor would address any

1    appeal that we understand Rhodes would have taken of that as

2    well, so the $500,000 also includes the amounts that would have

3    been incurred to appeal that particular claim.

4        And with respect to the remaining compensation claims,

5    obviously, those would have been the subject -- and,

6    your Honor, we hadn't gotten far enough along.

7        We had enough of an understanding to know what some of the

8    books and records and materials have shown.  But without having

9    gone through all of the discovery, we just --

10            THE COURT:  Um-h'm.

11            MS. LAHAIE:  We just didn't know what exactly the

12    ordinary-course-of-business defense would have shown.

13        Obviously, it's a very fact-intensive analysis that would

14    have required as I'm sure you understand, you know, the eight

15    depositions, the fact discovery, the pre- and the posttrial

16    depositions and briefing, and all of those things that the

17    reorganized debtors are seeking to prevent, and the last claim

18    related to litigation expenses that Rhodes allegedly paid.

19        And, quite frankly, your Honor, the reorganized debtors

20    believed they had exposure, some exposure.  Again, I'm not sure

21    exactly how to quantify it, but we believed there might have

22    been some exposure on that claim as well.

23            THE COURT:  Okay.  Well, then the only thing that

24    concerns me is the liquidating trustee's -- I don't want to use

25    the word "consent", but concurrence if you will, and no one is

1   on the phone.

2       Court Call, can you let them on if they're on?

3           THE CLERK:  Operator?

4           COURT CALL OPERATOR:  On-line (indiscernible).

5           THE CLERK:  Yes.  Can we please have --

6           MS. LAHAIE:  Diamond is the visiting one from the

7   firm, Diamond McCarthy.

8           THE CLERK:  Diamond McCarthy, is someone there?

9       Is Michael Yoder?

10          MR. ROBERTS:  This is Jake Roberts with

11  Diamond McCarthy.

12          THE COURT:  Oh, good.  Thank you.  Have you been able

13  to hear --

14          MR. ROBERTS:  None of my colleagues were on, but

15  there was some issues, and I think they thought it was over

16  because sound was cutting in and out.  I was the only one --

17          THE COURT:  Okay.

18          MR. ROBERTS:  -- who's still on I believe.

19      To answer your Honor's question, yes, we have been

20  consulted and have consulted with Akin regarding this

21  settlement.

22          THE COURT:  And in your opinion, it's a fair -- oh, I

23  don't want to put you in a bind.  It's a reasonable settlement

24  based upon the information that your client has and based upon

25  what investigations and/or actions they may need to take in the

1    future.

2                MR. ROBERTS:  Yes.

3                THE COURT:  Okay.  All right.  And because one other

4    thing that concerned me and why I wanted the Liquidating Trust

5    was in the reorganized debtor's pleadings you said it's

6    important for the existing stakeholders to move on.

7        That troubled me because you have a duty not just to the

8    existing stakeholders which I took to mean --

9                MS. LAHAIE:  The beneficiaries --

10               THE COURT:  -- the new equity owners --

11               MS. LAHAIE:  -- of the Trust.

12               THE COURT:  -- but to the beneficiaries of the Trust

13   as well, and that's what concerned me, but that's the trustee's

14   job, and the trustee's satisfied.  All right.  So with that,

15   I'll approve the compromise.

16               MS. LAHAIE:  Thank you, your Honor.

17               THE COURT:  All right.  Thank you.

18               MS. LAHAIE:  We'll submit a form of order.

19               THE COURT:  All right.  And just one final comment.

20   I'm sorry I got emotional.  I've been sick this week, not

21   enough sick that I lost my mental capacity, but it was just

22   kind of like one last straw, so I apologize.  All right.

23       Thank you.

24               MS. LAHAIE:  Thank you, your Honor.

25               THE COURT:  Um-h'm.

1          THE CLERK:  Thank you --

2          MR. QURESHI:  Thank you --

3          THE CLERK:  -- your Honor.

4          MR. QURESHI:  -- your Honor.

5          THE CLERK:  All rise.

6      (Court concluded at 09:58:13 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        I certify that the foregoing is a correct transcript

2    from the electronic sound recording of the proceedings in

3    the above-entitled matter.

4

5

6    /s/ Lisa L. Cline                    12/23/12

7    Lisa L. Cline, Transcriptionist          Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25