E-File:  February 13, 2011

**KOLESAR & LEATHAM**
NILE LEATHAM, ESQ.
Nevada Bar No. 002838
SHLOMO S. SHERMAN, ESQ.
Nevada Bar No. 009688
400 South Rampart Boulevard, Suite 400
Las Vegas, NV  89145
Telephone: 702.362.7800
Facsimile: 702.362.9472
E-Mail: nleatham@klnevada.com
          ssherman@klnevada.com

*Attorneys for Reorganized Debtors*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
PHILIP C. DUBLIN, ESQ.
New York Bar No. 2959344
ABID QURESHI, ESQ.
New York Bar No. 2684637
One Bryant Park
New York, NY 10036
Telephone: 212.872.1000
Facsimile: 212.872.1002
E-Mail:  pdublin@akingump.com
          aqureshi@akingump.com

*Attorneys for Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes, et al.,[1]<br><br>             Debtors.<br><br>Affects:<br><br>☐  All Debtors<br>☒  Affects the following Debtor(s):<br>  Bravo, Inc. 09-14825 | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>**DECLARATION OF JUSTIN H. BELL**<br><br>Trial Date:  March 5, 2012<br>Trial Time:  9:30 a.m.<br>Courtroom 1 |

---

[1]  The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

1

**DECLARATION OF JUSTIN H. BELL**

2

I, Justin H. Bell, declare as follows:

3      1.      I am an attorney at law admitted to practice in the State of New York and in the

4    United States District Court for the Southern District of New York. I have filed an application to

5    appear *pro hac vice* in this matter. I am a member of the firm of Akin Gump Strauss Hauer &

6    Feld, LLC ("Akin Gump"), which firm maintains offices at One Bryant Park, New York, New

7    York 10036.

8      2.      I make this declaration support of the *Pre-Trial Brief of the Reorganized Debtors*,

9    submitted herewith (the "Pre-trial Brief"). Capitalized terms used but not defined herein shall

10   have the meanings and definitions ascribed to them in the Pre-trial Brief.

11     3.      Attached hereto as Exhibit A is a true and correct copy of the IRS Claim, which

12   was designated as Claim 7-2 in the claims register maintained by the Bankruptcy Court in

13   Bravo's case.

14     4.      Attached hereto as Exhibit B is a true and correct copy of the Internal Revenue

15   Service's Examination Report and related forms.

16     5.      Attached hereto as Exhibit C is a true and correct copy of excerpts of the

17   Deposition of Dean Griffith, dated Feb. 9, 2012.

18     6.      Attached hereto as Exhibit D is a true and correct copy of the Declaration of Dean

19   Griffiths in Support of Debtors' Objection to Claim No. 7 Filed by the Internal Revenue Service

20   Against Debtor Bravo, Inc. [Re: Docket No. 1377].

21     7.      Attached hereto as Exhibit E is a true and correct copy of excerpts of the

22   Deposition of James Garner, dated Jan. 18, 2012.

23     8.      Attached hereto as Exhibit F is a true and correct copy of excerpts of the

24   Deposition of Pamela Garner, dated Jan. 18, 2012.

25     9.      Attached hereto as Exhibit G is a true and correct copy of excerpts of the

26   Deposition of Marlene Marcus, dated Jan. 18, 2012.

27     10.     Attached hereto as Exhibit H is a true and correct copy of excerpts of the

28   Deposition of Sergio Juarez, dated Jan. 17, 2012.

2

11.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed this 13th day of February, 2011 at New York, New York.


/s/ Justin H. Bell
Justin H. Bell

# Exhibit A

B10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT _____ DISTRICT OF NEVADA | PROOF OF CLAIM |
|---|---|

| Name of Debtor: BRAVO LLC | Case Number: 09-14825-LBR |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request of payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor** (The person or other entity to whom the debtor owes money or property):
Department of the Treasury - Internal Revenue Service

**Name and address where notices should be sent:**
Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Telephone number: 1-800-913-9358          Creditor Number: 4352630

■ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** 7
*(If known)*

Filed on:          09/24/2009

**Name and address where payments should be sent (if different from above):**
Internal Revenue Service
110 CITY PARKWAY
M/S 5028 LVG
LAS VEGAS, NV 89106

Telephone Number: (702) 868-5348

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**          $ 3,886,456.75

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

■ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:**          Taxes
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:**          See Attachment

3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:     ☐ Real Estate     ☐ Motor Vehicle     ☐ Other
Describe:

Value of Property:$_____ Annual Interest Rate ____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____     Basis for perfection: _____

Amount of Secured Claim: $_____     Amount Unsecured: $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan -11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

■ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$ 1,326,068.11

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 04/12/2010 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY |
|---|---|---|

/s/ SANDRA MCKENZIE,
Bankruptcy Specialist
(702) 868-5348

Internal Revenue Service
110 CITY PARKWAY
M/S 5028 LVG
LAS VEGAS, NV 89106

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C §§ 152 and 3571.

# Proof of Claim for Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service

**In the Matter of:** BRAVO LLC
4730 S FORT APACHE  300
LAS VEGAS, NV 89147

Form **10**
Attachment

| | |
|---|---|
| Case Number | 09-14825-LBR |
| Type of Bankruptcy Case | CHAPTER 11 |
| Date of Petition | 03/31/2009 |

Amendment No. 1 to Proof of Claim dated 09/24/2009.

The United States has not identified a right of setoff or counterclaim.  However, this determination is based on available data and is not intended to waive any right to setoff against this claim debts owed to this debtor by this or any other federal agency.  All rights of setoff are preserved and will be asserted to the extent lawful.

## Unsecured Priority Claims   under section 507(a)(8) of the Bankruptcy Code

| Taxpayer ID Number | Kind of Tax | Tax Period | | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|---|---|
| XX-XXX2642 | WT-FICA | 09/30/2000 | 1 | EXAM | $2,445.76 | $1,718.71 |
| XX-XXX2642 | WT-FICA | 12/31/2000 | 1 | EXAM | $43,350.52 | $28,812.70 |
| XX-XXX2642 | WT-FICA | 03/31/2001 | 1 | EXAM | $60,687.05 | $38,224.06 |
| XX-XXX2642 | WT-FICA | 06/30/2001 | 1 | EXAM | $72,792.48 | $43,579.39 |
| XX-XXX2642 | WT-FICA | 09/30/2001 | 1 | EXAM | $46,081.15 | $26,299.57 |
| XX-XXX2642 | WT-FICA | 12/31/2001 | 1 | EXAM | $79,711.11 | $43,408.00 |
| XX-XXX2642 | WT-FICA | 03/31/2002 | 1 | EXAM | $58,704.96 | $30,651.94 |
| XX-XXX2642 | WT-FICA | 06/30/2002 | 1 | EXAM | $46,411.91 | $23,173.03 |
| XX-XXX2642 | WT-FICA | 09/30/2002 | 1 | EXAM | $89,247.40 | $42,552.19 |
| XX-XXX2642 | WT-FICA | 12/31/2002 | 1 | EXAM | $167,758.48 | $76,474.48 |
| XX-XXX2642 | WT-FICA | 03/31/2003 | 1 | EXAM | $140,313.26 | $61,488.07 |
| XX-XXX2642 | WT-FICA | 06/30/2003 | 1 | EXAM | $71,948.46 | $30,233.43 |
| | | | | | $879,452.54 | $446,615.57 |

### Total Amount of Unsecured Priority Claims:   $1,326,068.11

## Unsecured General Claims

| Taxpayer ID Number | Kind of Tax | Tax Period | | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|---|---|
| XX-XXX2642 | WT-FICA | 09/30/2000 | 1 | EXAM | $1,060.00 | $3,283.24 |
| XX-XXX2642 | WT-FICA | 12/31/2000 | 1 | EXAM | $18,789.33 | $55,037.97 |
| XX-XXX2642 | FUTA | 12/31/2000 | 1 | EXAM | $10,000.00 | $0.00 |
| XX-XXX2642 | WT-FICA | 03/31/2001 | 1 | EXAM | $26,303.46 | $73,015.56 |
| XX-XXX2642 | WT-FICA | 06/30/2001 | 1 | EXAM | $31,550.29 | $83,245.31 |
| XX-XXX2642 | WT-FICA | 09/30/2001 | 1 | EXAM | $19,972.85 | $50,237.38 |
| XX-XXX2642 | WT-FICA | 12/31/2001 | 1 | EXAM | $34,549.01 | $82,917.82 |
| XX-XXX2642 | FUTA | 12/31/2001 | 1 | EXAM | $10,000.00 | $0.00 |
| XX-XXX2642 | WT-FICA | 03/31/2002 | 1 | EXAM | $25,444.36 | $58,551.30 |
| XX-XXX2642 | WT-FICA | 06/30/2002 | 1 | EXAM | $20,116.21 | $44,265.11 |
| XX-XXX2642 | WT-FICA | 09/30/2002 | 1 | EXAM | $38,682.30 | $81,283.11 |
| XX-XXX2642 | WT-FICA | 12/31/2002 | 1 | EXAM | $72,711.18 | $146,081.43 |
| XX-XXX2642 | FUTA | 12/31/2002 | 1 | EXAM | $10,000.00 | $0.00 |
| XX-XXX2642 | WT-FICA | 03/31/2003 | 1 | EXAM | $60,815.66 | $117,454.42 |
| XX-XXX2642 | WT-FICA | 06/30/2003 | 1 | EXAM | $31,184.46 | $53,757.86 |

1 UNASSESSED TAX LIABILITY ESTIMATED BY EXAMINATION

# Proof of Claim for Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service

**Form 10**
Attachment

**In the Matter of:** BRAVO LLC
4730 S FORT APACHE  300
LAS VEGAS, NV 89147

| | |
|---|---|
| Case Number | 09-14825-LBR |
| Type of Bankruptcy Case | CHAPTER 11 |
| Date of Petition | 03/31/2009 |

Amendment No. 1 to Proof of Claim dated 09/24/2009.

---

**Unsecured General Claims** (Continued from Page 1)

| Taxpayer ID Number | Kind of Tax | Tax Period | | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|---|---|
| XX-XXX2642 | FUTA | 12/31/2003 | 1 | EXAM | $10,000.00 | $0.00 |
| XX-XXX2642 | FUTA | 12/31/2004 | 1 | EXAM | $10,000.00 | $0.00 |
| | | | | | $431,179.11 | $849,130.51 |

Penalty to date of petition on unsecured general claims (including interest thereon) . . . . . . $1,280,079.02

**Total Amount of Unsecured General Claims:**    **$2,560,388.64**

1 UNASSESSED TAX LIABILITY ESTIMATED BY EXAMINATION

# Exhibit B

| Form **4666** | | | | Department of the Treasury - Internal Revenue Service | | | | Page 1 of 1 |
|---|---|---|---|---|---|---|---|---|
| (Rev. February 1994) | | | | **Summary of Employment Tax Examination** | | | | |

| Name and Address of Employer | Employer Identification Number | | Date of Report |
|---|---|---|---|
| BRAVO LLC<br>4730 S FORT APACHE #300<br>LAS VEGAS, NV 89147 | 88-0282642 | | 03/23/10 |

Type of Report

☐ Delinquent tax *(Return not filed)*    ☐ Increase (Decrease) In Tax *(Return filed)*

☒ **Agreed** (This report is subject to Review and you will be notified by the Area Director when it is accepted)

☐ **Unagreed**

Following is a summary of the results of my examination of your returns as shown on the attached pages of this report.

| a | b | c | | Tax and Penalties | e | f |
|---|---|---|---|---|---|---|
| Calendar Year | Return Form Number | Delinquent Tax, Increase (Decrease) In Tax | **Penalty** | | Total | Page number of Report |
| | | | Code Section | Amount | | |
| 2001 | 941 | $371,647.39 | 6651 6656 6663(a) | 382,884.96 | 754,532.35 | 1 |
| 2002 | 941 | $519,076.81 | 6651 6656 6663(a) | 534,772.23 | 1,053,849.04 | 2 |
| 2003 | 941 | $304,261.85 | 6651 6656 6663(a) | 313,461.87 | 617,723.72 | 3 |
| 2000 | 941 | $65,645.66 | 6651 6656 6663(a) | 67,630.61 | 133,276.27 | 4 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | **Total** ▶ | $1,260,631.71 | | 1,298,749.67 | $2,559,381.38 | |

Other Information

This does not constitute an Income Tax Examination

| Examining Officer's Signature | District |
|---|---|
| CHERYL HANNA | MESA, AZ  SBSE:SP:ET:WT:8 |

Cat. No. 41874S

Form **4666** (Rev. 02-1994)

Pg.    4    of    4

| Form **4668** (Rev. April 1994) | Department of the Treasury - Internal Revenue Service **Employment Tax Examination Changes Report** | Return Form number **941** |

Name and Address of Employer

BRAVO LLC
4730 S FORT APACHE #300
LAS VEGAS, NV 89147

Employer Identification number **88-0282642**

Total tax plus penalty, or (decrease) in tax $133,276.27

Calendar year **2000**

Last quarter of this examination 06/30/03

Examination discussed with (Name and title)

☐ Agreed (Subject to acceptance of the Area Director)

☐ Unagreed

| | IRS Ref. | (a) Applicable Rate | (b) 1st Quarter | (c) 2nd Quarter | (d) 3rd Quarter | (e) 4th Quarter |
|---|---|---|---|---|---|---|
| 1. Social security and Medicare wage adjustment subject to tax under IRC 3101 and 3111 | 004 | 12.40% | | | 13,857.00 | $245,612.00 |
| | 073 | 2.90% | | | 13,857.00 | 245,612.00 |
| 2. Social security and Medicare wage adjustment subject to tax under IRC 3509(a) | 079 | 7.44% | | | | |
| | 079 | 1.74% | | | | |
| 3. Social security and Medicare wage adjustment subject to tax under IRC 3509(b) | 079 | 8.68% | | | | |
| | 079 | 2.03% | | | | |
| 4. Social security and Medicare tip adjustment subject to tax under IRC 3101 and 3111 | 005 | 6.20% | | | | |
| | 073 | 1.45% | | | | |
| 5. Income withholding wage adjustment subject to tax under section 3402 | | 10.00% | | | 13,857.00 | 245,612.00 |
| 6. Income withholding wage adjustment subject to tax under section 3509 | 079 | 1.50% | | | | |
| | 079 | 3.00% | | | | |
| 7. Payments subject to backup withholding under IRC 3406 | | 28.00% | | | | |
| 8. Adjustment to social security tax and Medicare tax | | | | | | |
| 9. Adjustment to income tax withholding | | | | | | |
| 10. Total social security and Medicare tax (lines 1, 2, 3, 4 x rates) plus/minus Line 8 | 112 | | | | 2,120.12 | 37,578.64 |
| 11. Total Income tax withholding (line 5, 6 x rate) plus/minus Line 9 | 111 | | | | 1,385.70 | 24,561.20 |
| 12. Total backup withholding (line 7 x rate) - applies to Form 945 only | 008 | | | | | |
| 13. Delinquent tax increase (decrease) in tax (Lines 10 and 11) or backup withholding (Line 12) | | | | | 3,505.82 | 62,139.84 |
| 14. Penalty code section 6651 (a)(2) | | | | | 876.46 | 15,534.96 |
| 15. Penalty code section 6656 | | | | | 106.01 | 1,878.93 |
| 16. Penalty code section 6663 (a)    Rate - 75.00%    ☑ Check Box to Assess | | | | | 2,629.37 | 46,604.88 |
| 17. Maximum tax available for abatement under IRC 3402(d) | | | | | 1,385.70 | 24,561.20 |

Under IRC sections 6051 and 6071 and the regulations under those sections, you are required to furnish W-2c (Statement of Corrected Income Tax Amounts) on or before the last day of January _____ 2011 _____ to each of the _____ framing _____ employees whose wages are adjusted by this report. Also, you are required to file the original of these statements with Form W-3c (Transmittal of Corrected Income and Tax Statements) by the last day of February _____ 2011 _____ IRC 6721 and 6722 provide penalties for failure to file and failure to furnish these statements by the required dates. Please file these statements with:

Internal Revenue Service
Centralized Case Processing
Mail Stop 8416-G
201 W. Rivercenter Blvd.
Covington, KY 41011

| Examiner's signature CHERYL HANNA | Group Number 1318 | District MESA, AZ SBSE:SP:ET:WT:8 | Date 3/23/2010 |

Form 4668 (Rev. 04-1994)    Cat. No. 23275Z    Department of the Treasury - Internal Revenue Service

| Return Form number | Penalties Computations | | | Schedule Number |
|---|---|---|---|---|
| **941** | (Internal Revenue Code Sections 6651(a)1 and 6651(a)2 and 6656) | | | |

BRAVO LLC
4730 S FORT APACHE #300
LAS VEGAS, NV 89147

Taxpayer's Identifying Number
88-0282642
Date of Report
3/23/2010

| Computation of Penalties (see Penalty Chart) | Tax Periods | | | 2000 |
|---|---|---|---|---|
| | 1st Quarter | 2nd Quarter | 3rd Quarter | 4th Quarter |
| A. Tax shown on tax return | | | | |
| B. Plus: Additional tax due to examination - Before Abatements under IRC 3402(d) | - | - | 3,505.82 | 62,139.84 |
| C. Less: Timely tax payments and credits | | | | |
| D. Tax subject to penalties | - | - | 3,505.82 | 62,139.84 |
| E. Number of months of failure to file tax return (if 5 or more, write 5) | 0 | 0 | 0 | 0 |
| F. Number of months of failure to pay tax (if 50 or more, write 50) | 0 | 0 | 50 | 50 |
| G. Percentage rate for failure to file tax return (line E x 4.5%, [5% if return filed]) | 0.0% | 0.0% | 0.0% | 0.0% |
| H. Percentage rate for failure to pay tax (line F x 0.5%) | 0.0% | 0.0% | 25.0% | 25.0% |
| I. Penalty for failure to file tax return (line G x line D) | - | - | - | - |
| J. Less payments and Credits | | | | |
| K. Total penalty for failure to file tax return | - | - | - | - |
| L. Penalty for failure to pay tax (line H x line D) | - | - | 876.46 | 15,534.96 |
| M. Less payments and Credits | | | | |
| N. Total penalty for failure to pay tax | - | - | 876.46 | 15,534.96 |
| O. Total IRC 6651 Penalty | | | 876.46 | 15,534.96 |
| P. | | | | |
| Q. Gross Corrected Tax Subject to Deposit Penalty | - | - | 3,505.82 | 62,139.84 |
| R. Less Taxes not actually withheld (Deposit Penalty only subject to actual amounts withheld and employer's share of FICA) | 0.00 | 0.00 | 2,445.76 | 43,350.52 |
| S. Net Taxes subject to Deposit Penalty under IRC Section 6656 | 0.00 | 0.00 | 1,060.06 | 18,789.32 |
| T. Deposit Penalty Rate | 0.00% | 0.00% | 10.00% | 10.00% |
| U. Deposit Penalty under IRC Section 6656 (Line S x Line T) | | | 106.01 | 1,878.93 |
| REMARKS: | | | | |
| **Taxes Not Actually Withheld from Employee:** | | | | |
| Employee's share of FICA based on full rates | 0.00 | 0.00 | 1,060.06 | 18,789.32 |
| Employee's share of FICA based on 3509(a) | 0.00 | 0.00 | 0.00 | 0.00 |
| Employee's share of FICA based on 3509(b) | 0.00 | 0.00 | 0.00 | 0.00 |
| Employee's Withholding under Full Rates | 0.00 | 0.00 | 1,385.70 | 24,561.20 |
| Employee's Withholding under 3509(a) | 0.00 | 0.00 | 0.00 | 0.00 |
| Employee's Withholding under 3509(b) | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Taxes not actually withheld | 0.00 | 0.00 | 2,445.76 | 43,350.52 |

Penalties Computations                                          Department of the Treasury - Internal Revenue Service

*IRC Section 6651(a)(2), Failure to Pay Penalty, is applicable as allowed by law.*
*Failure to Pay Penalty shown above on Line N has been computed through        3/31/2010*
*The final Failure to Pay Penalty will be computed by the Service Center and billed to you at a later date.*

| Prepared By | | Group Number | District | Date |
|---|---|---|---|---|
| CHERYL HANNA | *signature* | 1318 | MESA, AZ  SBSE:SP:E | 3/23/2010 |

03/31/2010 14:16 FAX  2025149439      DOJ TAX DIV                          ☒007/020

Pg.    1    of    4

| Form **4668**<br>(Rev. April 1994) | Department of the Treasury - Internal Revenue Service<br>**Employment Tax Examination Changes Report** | | | Return Form number<br>**941** | |
|---|---|---|---|---|---|

| Name and Address of Employer<br>BRAVO LLC<br>4730 S FORT APACHE #300<br>LAS VEGAS, NV 89147 | Employer Identification number<br>**88-0282642** | Calendar year<br>**2001** |
|---|---|---|
| | Total tax plus penalty, or (decrease) in tax<br>**$754,532.35** | Last quarter of this<br>examination<br>**06/30/03** |

Examination discussed with (Name and title)

☐ Agreed (Subject to acceptance of the Area Director)

☐ Unagreed

| | IRS Ref. | (a)<br>Applicable<br>Rate | (b)<br>1st<br>Quarter | (c)<br>2nd<br>Quarter | (d)<br>3rd<br>Quarter | (e)<br>4th<br>Quarter |
|---|---|---|---|---|---|---|
| 1. Social security and Medicare wage adjustment subject to tax under IRC 3101 and 3111 | 004 | 12.40% | 343,836.00 | 412,422.00 | 261,083.00 | 451,621.00 |
| | 073 | 2.90% | 343,836.00 | 412,422.00 | 261,083.00 | 451,621.00 |
| 2. Social security and Medicare wage adjustment subject to tax under IRC 3509(a) | 079 | 7.44% | | | | |
| | 079 | 1.74% | | | | |
| 3. Social security and Medicare wage adjustment subject to tax under IRC 3509(b) | 079 | 8.68% | | | | |
| | 079 | 2.03% | | | | |
| 4. Social security and Medicare tip adjustment subject to tax under IRC 3101 and 3111 | 005 | 6.20% | | | | |
| | 073 | 1.45% | | | | |
| 5. Income withholding wage adjustment subject to tax under section 3402 | | 10.00% | 343,836.00 | 412,422.00 | 261,083.00 | 451,621.00 |
| 6. Income withholding wage adjustment subject to tax under section 3509 | 079 | 1.50% | | | | |
| | 079 | 3.00% | | | | |
| 7. Payments subject to backup withholding under IRC 3406 | | 31.00% | | | | |
| | | 30.50% | | | | |
| 8. Adjustment to social security tax and Medicare tax | | | | | | |
| 9. Adjustment to income tax withholding | | | | | | |
| 10. Total social security and Medicare tax (lines 1, 2, 3, 4 rates) plus/minus Line 8 | 112 | | 52,606.91 | 63,100.57 | 39,945.70 | 69,098.01 |
| 11. Total Income tax withholding (line 5, 6 rate) plus/minus Line 9 | 111 | | 34,383.60 | 41,242.20 | 26,108.30 | 45,162.10 |
| 12. Total backup withholding (line 7 x rate) - applies to Form 945 only | 008 | | | | | |
| 13. Delinquent tax increase (decrease) in tax (Lines 10 and 11) or backup withholding (Line 12) | | | 86,990.51 | 104,342.77 | 66,054.00 | 114,260.11 |
| 14. Penalty code section 6651(a)(2) | | | 21,747.63 | 26,085.69 | 16,513.50 | 28,565.03 |
| 15. Penalty code section 6656 | | | 2,630.35 | 3,155.03 | 1,997.29 | 3,454.90 |
| 16. Penalty code section  6663 (a)   Rate - 75.00%   ☑ Check Box to Assess | | | 65,242.88 | 78,257.08 | 49,540.50 | 85,695.08 |
| 17. Maximum tax available for abatement under IRC 3402(d) | | | 34,383.60 | 41,242.20 | 34,383.60 | 41,242.20 |

Under IRC sections 6051 and 6071 and the regulations under those sections, you are required to furnish W-2c (Statement of Corrected Income Tax Amounts) on or before the last day of January ___2011___ to each of the ___framing___ employees whose wages are adjusted by this report. Also, you are required to file the original of these statements with Form W-3c (Transmittal of Corrected Income and Tax Statements) by the last day of February ___2011___ IRC 6721 and 6722 provide penalties for failure to file and failure to furnish these statements by the required dates.

Please file these statements with:     Internal Revenue Service
                                        Centralized Case Processing
                                        Mail Stop 8416-G
                                        201 W. Rivercenter Blvd.
                                        Covington, KY 41011

| Examiner's signature<br>CHERYL HANNA | Group Number<br>1318 | District<br>MESA, AZ  SBSE:SP:ET:WT:8 | Date<br>3/23/2010 |
|---|---|---|---|

Form 4668 (Rev. 04-1994)        Cat. No. 23275Z                    Department of the Treasury - Internal Revenue Service

| Return Form number **941** | Penalties Computations<br>(Internal Revenue Code Sections 6651(a)1 and 6651(a)2 and 6656) | | | Schedule Number |

BRAVO LLC
4730 S FORT APACHE #300
LAS VEGAS, NV 89147

Taxpayer's Identifying Number: 88-0282642
Date of Report: 3/23/2010

| Computation of Penalties *(see Penalty Chart)* | Tax Periods | | | 2001 |
|---|---|---|---|---|
| | 1st Quarter | 2nd Quarter | 3rd Quarter | 4th Quarter |
| A. Tax shown on tax return | | | | |
| B. Plus: Additional tax due to examination - Before Abatements under IRC 3402(d) | 86,990.51 | 104,342.77 | 66,054.00 | 114,260.11 |
| C. Less: Timely tax payments and credits | | | | |
| D. Tax subject to penalties | 86,990.51 | 104,342.77 | 66,054.00 | 114,260.11 |
| E. Number of months of failure to file tax return *(if 5 or more, write 5)* | 0 | 0 | 0 | 0 |
| F. Number of months of failure to pay tax *(if 50 or more, write 50)* | 50 | 50 | 50 | 50 |
| G. Percentage rate for failure to file tax return *(line E x 4.5%, [5% if return filed])* | 0.0% | 0.0% | 0.0% | 0.0% |
| H. Percentage rate for failure to pay tax *(line F x 0.5%)* | 25.0% | 25.0% | 25.0% | 25.0% |
| I. Penalty for failure to file tax return *(line G x line D)* | - | - | - | - |
| J. Less payments and Credits | | | | |
| K. Total penalty for failure to file tax return | - | - | - | - |
| L. Penalty for failure to pay tax *(line H x line D)* | 21,747.63 | 26,085.69 | 16,513.50 | 28,565.03 |
| M. Less payments and Credits | | | | |
| N. Total penalty for failure to pay tax | 21,747.63 | 26,085.69 | 16,513.50 | 28,565.03 |
| O. Total IRC 6651 Penalty | 21,747.63 | 26,085.69 | 16,513.50 | 28,565.03 |
| P. | | | | |
| Q. Gross Corrected Tax Subject to Deposit Penalty | 86,990.51 | 104,342.77 | 66,054.00 | 114,260.11 |
| R. Less Taxes not actually withheld (Deposit Penalty only subject to actual amounts withheld and employer's share of FICA) | 60,687.05 | 72,792.48 | 46,081.15 | 79,711.11 |
| S. Net Taxes subject to Deposit Penalty under IRC Section 6656 | 26,303.46 | 31,550.29 | 19,972.85 | 34,549.00 |
| T. Deposit Penalty Rate | 10.00% | 10.00% | 10.00% | 10.00% |
| U. Deposit Penalty under IRC Section 6656 *(Line S x Line T)* | 2,630.35 | 3,155.03 | 1,997.29 | 3,454.90 |
| REMARKS: | | | | |
| Taxes Not Actually Withheld from Employee: | | | | |
| Employee's share of FICA based on full rates | 26,303.45 | 31,550.28 | 19,972.85 | 34,549.01 |
| Employee's share of FICA based on 3509(a) | 0.00 | 0.00 | 0.00 | 0.00 |
| Employee's share of FICA based on 3509(b) | 0.00 | 0.00 | 0.00 | 0.00 |
| Employee's Withholding under Full Rates | 34,383.60 | 41,242.20 | 26,108.30 | 45,162.10 |
| Employee's Withholding under 3509(a) | 0.00 | 0.00 | 0.00 | 0.00 |
| Employee's Withholding under 3509(b) | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Taxes not actually withheld | 60,687.05 | 72,792.48 | 46,081.15 | 79,711.11 |

Penalties Computations

Department of the Treasury - Internal Revenue Service

*IRC Section 6651(a)(2), Failure to Pay Penalty, is applicable as allowed by law.*
*Failure to Pay Penalty shown above on Line N has been computed through    3/31/2010*
*The final Failure to Pay Penalty will be computed by the Service Center and billed to you at a later date.*

| Prepared By | | Group Number | District | Date |
|---|---|---|---|---|
| CHERYL HANNA | *[signature]* | 1318 | MESA, AZ SBSE:SP:E | 3/23/2010 |

Pg. 2 of 4

| Form 4668 (Rev. April 1994) | Department of the Treasury - Internal Revenue Service **Employment Tax Examination Changes Report** | | Return Form number 941 |
|---|---|---|---|

| Name and Address of Employer | Employer Identification number | Calendar year |
|---|---|---|
| BRAVO LLC 4730 S FORT APACHE #300 LAS VEGAS, NV 89147 | 88-0282642 | 2002 |
| | Total tax plus penalty, or (decrease) in tax $1,053,849.04 | Last quarter of this examination 06/30/03 |

Examination discussed with (Name and title)

☐ Agreed (Subject to acceptance of the Area Director)

☐ Unagreed

| | | IRS Ref. | (a) Applicable Rate | (b) 1st Quarter | (c) 2nd Quarter | (d) 3rd Quarter | (e) 4th Quarter |
|---|---|---|---|---|---|---|---|
| 1. | Social security and Medicare wage adjustment subject to tax under IRC 3101 and 3111 | 004 | 12.40% | 332,606.00 | 262,957.00 | 505,651.00 | $950,473.00 |
| | | 073 | 2.90% | 332,606.00 | 262,957.00 | 505,651.00 | $950,473.00 |
| 2. | Social security and Medicare wage adjustment subject to tax under IRC 3509(a) | 079 | 7.44% | | | | |
| | | 079 | 1.74% | | | | |
| 3. | Social security and Medicare wage adjustment subject to tax under IRC 3509(b) | 079 | 8.68% | | | | |
| | | 079 | 2.03% | | | | |
| 4. | Social security and Medicare tip adjustment subject to tax under IRC 3101 and 3111 | 005 | 6.20% | | | | |
| | | 073 | 1.45% | | | | |
| 5. | Income withholding wage adjustment subject to tax under section 3402 | | 10.00% | 332,606.00 | 262,957.00 | 505,651.00 | 950,473.00 |
| 6. | Income withholding wage adjustment subject to tax under section 3509 | 079 | 1.50% | | | | |
| | | 079 | 3.00% | | | | |
| 7. | Payments subject to backup withholding under IRC 3406 | | 30.00% | | | | |
| 8. | Adjustment to social security tax and Medicare tax | | | | | | |
| 9. | Adjustment to income tax withholding | | | | | | |
| 10. | Total social security and Medicare tax (lines 1, 2, 3, 4 x rates) plus/minus Line 8 | 112 | | 50,888.72 | 40,232.42 | 77,364.60 | 145,422.37 |
| 11. | Total income tax withholding (line 5, 6 x rate) plus/minus Line 9 | 111 | | 33,260.60 | 26,295.70 | 50,565.10 | 95,047.30 |
| 12. | Total backup withholding (line 7 x rate) - applies to Form 945 only | 008 | | | | | |
| 13. | Delinquent tax increase (decrease) in tax (Lines 10 and 11) or backup withholding (Line 12) | | 25.3% | 84,149.32 | 66,528.12 | 127,929.70 | 240,469.67 |
| 14. | Penalty code section 6651(a)(2) | | | 21,037.33 | 16,632.03 | 31,982.43 | 60,117.42 |
| 15. | Penalty code section 6656 | | | 2,544.44 | 2,011.62 | 3,868.23 | 7,271.12 |
| 16. | Penalty code section 6663(a)   Rate - 75.00%   ☑ Check Box to Assess | | | 63,111.99 | 49,896.09 | 95,947.28 | 180,352.25 |
| 17. | Maximum tax available for abatement under IRC 3402(d) | | | 33,260.60 | 26,295.70 | 50,565.10 | 95,047.30 |

Under IRC sections 6051 and 6071 and the regulations under those sections, you are required to furnish W-2c (Statement of Corrected Income Tax Amounts) on or before the last day of January ___2011___ to each of the ___framing___ employees whose wages are adjusted by this report. Also, you are required to file the original of these statements with Form W-3c (Transmittal of Corrected Income and Tax Statements) by the last day of February ___2011___ IRC 6721 and 6722 provide penalties for failure to file and failure to furnish these statements by the required dates. Please file these statements with:

Internal Revenue Service
Centralized Case Processing
Mail Stop 8416-G
201 W. Rivercenter Blvd.
Covington, KY 41011

| Examiner's signature | Group Number | District | Date |
|---|---|---|---|
| CHERYL HANNA | 1318 | MESA, AZ  SBSE:SP:ET:WT:6 | 3/23/2010 |

Form 4668 (Rev. 04-1994)    Cat. No. 23275Z    Department of the Treasury - Internal Revenue Service

| Return Form number **941** | Penalties Computations | | | Schedule Number |
|---|---|---|---|---|
| | (Internal Revenue Code Sections 6651(a)1 and 6651(a)2 and 6656) | | | |

BRAVO LLC
4730 S FORT APACHE #300
LAS VEGAS, NV 89147

Taxpayer's Identifying Number: 88-0282642
Date of Report: 3/23/2010

| Computation of Penalties (see Penalty Chart) | Tax Periods | | | 2002 |
|---|---|---|---|---|
| | 1st Quarter | 2nd Quarter | 3rd Quarter | 4th Quarter |
| A. Tax shown on tax return | | | | |
| B. Plus: Additional tax due to examination   - Before Abatements under IRC 3402(d) | 84,149.32 | 66,528.12 | 127,929.70 | 240,469.67 |
| C. Less: Timely tax payments and credits | - | - | - | - |
| D. Tax subject to penalties | 84,149.32 | 66,528.12 | 127,929.70 | 240,469.67 |
| E. Number of months of failure to file tax return  (if 5 or more, write 5) | 0 | 0 | 0 | 0 |
| F. Number of months of failure to pay tax  (if 50 or more, write 50) | 50 | 50 | 50 | 50 |
| G. Percentage rate for failure to file tax return (line E x 4.5%, [5% if return filed]) | 0.0% | 0.0% | 0.0% | 0.0% |
| H. Percentage rate for failure to pay tax  (line F x 0.5%) | 25.0% | 25.0% | 25.0% | 25.0% |
| I. Penalty for failure to file tax return  (line G x line D) | - | - | - | - |
| J. Less payments and Credits | | | | |
| K. Total penalty for failure to file tax return | - | - | - | - |
| L. Penalty for failure to pay tax  (line H x line D) | 21,037.33 | 16,632.03 | 31,982.43 | 60,117.42 |
| M. Less payments and Credits | | | | |
| N. Total penalty for failure to pay tax | 21,037.33 | 16,632.03 | 31,982.43 | 60,117.42 |
| O. Total IRC 6651 Penalty | | | | |
| P. | | | | |
| Q. Gross Corrected Tax Subject to Deposit Penalty | 84,149.32 | 66,528.12 | 127,929.70 | 240,469.67 |
| R. Less Taxes not actually withheld (Deposit Penalty only subject to actual amounts withheld and employer's share of FICA) | 58,704.96 | 46,411.91 | 89,247.40 | 167,758.48 |
| S. Net Taxes subject to Deposit Penalty under IRC Section 6656 | 25,444.36 | 20,116.21 | 38,682.30 | 72,711.19 |
| T. Deposit Penalty Rate | 10.00% | 10.00% | 10.00% | 10.00% |
| U. Deposit Penalty under IRC Section 6656   (Line S x Line T) | | | | |
| REMARKS: | | | | |
| Taxes Not Actually Withheld from Employee: | | | | |
| Employee's share of FICA based on full rates | 25,444.36 | 20,116.21 | 38,682.30 | 72,711.18 |
| Employee's share of FICA based on 3509(a) | 0.00 | 0.00 | 0.00 | 0.00 |
| Employee's share of FICA based on 3509(b) | 0.00 | 0.00 | 0.00 | 0.00 |
| Employee's Withholding under Full Rates | 33,260.60 | 26,295.70 | 50,565.10 | 95,047.30 |
| Employee's Withholding under 3509(a) | 0.00 | 0.00 | 0.00 | 0.00 |
| Employee's Withholding under 3509(b) | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Taxes not actually withheld | 58,704.96 | 46,411.91 | 89,247.40 | 167,758.48 |
| | | | | |

Penalties Computations                                        Department of the Treasury - Internal Revenue Service

*IRC Section 6651(a)(2), Failure to Pay Penalty, is applicable as allowed by law.*
*Failure to Pay Penalty shown above on Line N has been computed through* **3/31/2010**
*The final Failure to Pay Penalty will be computed by the Service Center and billed to you at a later date.*

| Prepared By | | Group Number | District | Date |
|---|---|---|---|---|
| CHERYL HANNA | *[signature]* | 1318 | MESA, AZ SBSE:SP:E | 3/23/2010 |

| Form **4668**<br>(Rev. April 1994) | | Department of the Treasury - Internal Revenue Service<br>**Employment Tax Examination Changes Report** | | | Pg. | 3 | of | 4 |
|---|---|---|---|---|---|---|---|---|

| | | | Return Form number<br>**941** |
|---|---|---|---|

**Name and Address of Employer**

BRAVO LLC

4730 S FORT APACHE #300

LAS VEGAS, NV 89147

| Employer identification number<br>**88-0282642** | Calendar year<br>**2003** |
|---|---|
| Total tax plus penalty, or (decrease) in tax<br>**$617,723.72** | Last quarter of this examination<br>**06/30/03** |

Examination discussed with (Name and title)

☐ Agreed (Subject to acceptance of the Area Director)

☐ Unagreed

| | | IRS Ref. | (a)<br>Applicable<br>Rate | (b)<br>1st<br>Quarter | (c)<br>2nd<br>Quarter | (d)<br>3rd<br>Quarter | (e)<br>4th<br>Quarter |
|---|---|---|---|---|---|---|---|
| 1 . | Social security and Medicare wage adjustment subject to tax under IRC 3101 and 3111 | 004 | 12.40% | 794,976.00 | 407,640.00 | | |
| | | 073 | 2.90% | 794,976.00 | 407,640.00 | | |
| 2 . | Social security and Medicare wage adjustment subject to tax under IRC 3509(a) | 079 | 7.44% | | | | |
| | | 079 | 1.74% | | | | |
| 3 . | Social security and Medicare wage adjustment subject to tax under IRC 3509(b) | 079 | 8.68% | | | | |
| | | 079 | 2.03% | | | | |
| 4 . | Social security and Medicare tip adjustment subject to tax under IRC 3101 and 3111 | 005 | 6.20% | | | | |
| | | 073 | 1.45% | | | | |
| 5 . | Income withholding wage adjustment subject to tax under section 3402 | | 10.00% | 794,976.00 | 407,640.00 | | |
| 6 . | Income withholding wage adjustment subject to tax under section 3509 | 079 | 1.50% | | | | |
| | | 079 | 3.00% | | | | |
| 7 . | Payments subject to backup withholding under IRC 3406 | | 28.00% | | | | |
| 8 . | Adjustment to social security tax and Medicare tax | | | | | | |
| 9 . | Adjustment to income tax withholding | | | | | | |
| 0 . | Total social security and Medicare tax (lines 1, 2, 3, 4 x rates) plus/minus Line 8 | 112 | | 121,631.33 | 62,368.92 | | |
| 11 . | Total income tax withholding (line 5, 6 x rate) plus/minus Line 9 | 111 | | 79,497.60 | 40,764.00 | | |
| 12 . | Total backup withholding (line 7 x rate) - applies to Form 945 only | 008 | | | | | |
| 13 . | Delinquent tax increase (decrease) in tax (Lines 10 and 11) or backup withholding (Line 12) | | | 201,128.93 | 103,132.92 | | |
| 14 . | Penalty code section 6651(a)(2) | | | 50,282.23 | 25,783.23 | | |
| 15 . | Penalty code section 6656 | | | 6,081.57 | 3,118.45 | | |
| 16 . | Penalty code section  6663(a)        Rate - 75.00% | ☑ | Check Box to Assess | 150,846.70 | 77,349.69 | | |
| 17 . | Maximum tax available for abatement under IRC 3402(d) | | | 79,497.60 | 40,764.00 | | |

Under IRC sections 6051 and 6071 and the regulations under those sections, you are required to furnish W-2c (Statement of Corrected Income Tax Amounts) on or before the last day of January    2011    to each of the    Framing    employees whose wages are adjusted by this report. Also, you are required to file the original of these statements with Form W-3c (Transmittal of Corrected Income and Tax Statements) by the last day of February    2011    IRC 6721 and 6722 provide penalties for failure to file and failure to furnish these statements by the required dates. Please file these statements with:

Internal Revenue Service
Centralized Case Processing
Mail Stop 8416-G
201 W. Rivercenter Blvd.
Covington, KY 41011

| Examiner's signature<br>CHERYL HANNA | | Group Number<br>1318 | District<br>MESA, AZ  SBSE:SP:ET:WT:8 | Date<br>3/23/2010 |
|---|---|---|---|---|
| Form 4668 (Rev. 04-1994) | Cat. No. 23275Z | | Department of the Treasury - Internal Revenue Service | |

| Return Form number | Penalties Computations | | | | Schedule Number |
|---|---|---|---|---|---|
| **941** | (Internal Revenue Code Sections 6651(a)1 and 6651(a)2 and 6656) | | | | |

BRAVO LLC
4730 S FORT APACHE #300
LAS VEGAS, NV 89147

Taxpayer's Identifying Number

88-0282642

Date of Report
3/23/2010

| Computation of Penalties (see Penalty Chart) | Tax Periods | | | 2003 |
|---|---|---|---|---|
| | 1st Quarter | 2nd Quarter | 3rd Quarter | 4th Quarter |
| A. Tax shown on tax return | | | | |
| B. Plus: Additional tax due to examination    - Before Abatements under IRC 3402(d) | 201,128.93 | 103,132.92 | - | - |
| C. Less: Timely tax payments and credits | | | | |
| D. Tax subject to penalties | 201,128.93 | 103,132.92 | | |
| E. Number of months of failure to file tax return    (if 5 or more, write 5) | 0 | 0 | 0 | 0 |
| F. Number of months of failure to pay tax    (if 50 or more, write 50) | 50 | 50 | | |
| G. Percentage rate for failure to file tax return (line E x 4.5%, (5% if return filed)) | 0.0% | 0.0% | 0.0% | 0.0% |
| H. Percentage rate for failure to pay tax    (line G x  line D) | 25.0% | 25.0% | 0.0% | 0.0% |
| I. Penalty for failure to file tax return    (line F  x 0.5%) | - | - | - | - |
| J. Less payments and Credits | | | | |
| K. Total penalty for failure to file tax return | - | - | - | - |
| L. Penalty for failure to pay tax    (line H  x  line D) | 50,282.23 | 25,783.23 | - | - |
| M. Less payments and Credits | | | - | - |
| N. Total penalty for failure to pay tax | 50,282.23 | 25,783.23 | - | - |
| O. Total IRC 6651 Penalty | | | | |
| P. | | | | |
| Q. Gross Corrected Tax Subject to Deposit Penalty | 201,128.93 | 103,132.92 | - | - |
| R. Less Taxes not actually withheld (Deposit Penalty only subject to actual amounts withheld and employer's share of FICA | 140,313.26 | 71,948.46 | 0.00 | 0.00 |
| S. Net Taxes subject to Deposit Penalty under IRC Section 6656 | 60,815.67 | 31,184.46 | 0.00 | 0.00 |
| T. Deposit Penalty Rate | 10.00% | 10.00% | 10.00% | 10.00% |
| U.  Deposit Penalty under IRC Section 6656    (Line S x Line T) | | | | |
| REMARKS: | | | | |
| Taxes Not Actually Withheld from Employee: | | | | |
| Employee's share of FICA based on full rates | 60,815.66 | 31,184.46 | 0.00 | 0.00 |
| Employee's share of FICA based on 3509(a) | 0.00 | 0.00 | 0.00 | 0.00 |
| Employee's share of FICA based on 3509(b) | 0.00 | 0.00 | 0.00 | 0.00 |
| Employee's Withholding under Full Rates | 79,497.60 | 40,764.00 | 0.00 | 0.00 |
| Employee's Withholding under 3509(a) | 0.00 | 0.00 | 0.00 | 0.00 |
| Employee's Withholding under 3509(b) | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Taxes not actually withheld | 140,313.26 | 71,948.46 | 0.00 | 0.00 |
| | | | | |

Penalties Computations                                                                   Department of the Treasury - Internal Revenue Service

*IRC Section 6651(a)(2), Failure to Pay Penalty, is applicable as allowed by law.*
*Failure to Pay Penalty shown above on Line N has been computed through*    *3/31/2010*
*The final Failure to Pay Penalty will be computed by the Service Center and billed to you at a later date.*

| Prepared By | | Group Number | District | Date |
|---|---|---|---|---|
| CHERYL HANNA | *[signature]* | 1318 | MESA, AZ  SBSE:SP:E | 3/23/2010 |

Exhibit C

1            IN THE UNITED STATES BANKRUPTCY COURT

2                FOR THE DISTRICT OF NEVADA

3

4    In re:

5    THE RHODES COMPANIES, LLC, aka

     Rhodes Homes, et al.,

6                                    BK-S-09-14814 LBR

7                Debtors.

8

9

10

11

12            DEPOSITION OF DEAN GRIFFITH

13                Las Vegas, Nevada

14            Thursday, February 9, 2012

15                Volume I

16

17

18

19

20    Reported by:

21    ALLYSON W. HARRIS

22    NV CCR No. 740

23

24    Job No. 13473

25    PAGES 1 - 83

                                        Page 1

```
 1              Las Vegas, Nevada; Thursday, February 9, 2012
 2                        9:00 a.m.
 3              (Counsel stipulated to waive the reporter
 4              requirements under FRCP Rule 30(b)(5)(A).)
 5
 6                        DEAN GRIFFITH,
 7     having been administered an oath, was examined and
 8     testified as follows:
 9
10                        EXAMINATION
11     BY MR. WATSON:
12         Q    Could you state for the name -- for the
13     record, please, your full name.
14         A    Dean Lee Griffith.
15         Q    And home address or business address?
16         A    Home address is 7540 Red Cinder Street,
17     Las Vegas, Nevada 89131.
18         Q    Okay.  Mr. Griffith, have you had your
19     deposition taken before?
20         A    Yes.
21         Q    About how many times?
22         A    Three.
23         Q    Okay.  I'm sure you're familiar with all the
24     ground rules, so I'll just go over them quickly, if
25     that's okay with you.
```

                                                        Page 5

```
 1   company to provide labor?
 2        A    Well, we didn't actually -- one of the lead
 3   foremans of the pieceworkers came to us because we
 4   were having prob- -- you know, because we had to send
 5   away so many people that weren't legal, and so he made
 6   a suggestion for us to hire Robert and Robert could
 7   take care of all of our labor that we needed.  You
 8   know, he would take care of the hiring and the firing.
 9   He'd take care of all the payroll, all the Workman's
10   Comp so we didn't have to worry about that anymore.
11        Q    All right.
12        A    We didn't have to worry about them --
13   because one of the big things, too, was they were
14   working for other people and you can't keep track of
15   all those people.  You know, it was just too hard
16   to -- you know, say if he might have got hurt over at
17   this job, well -- and then he tried to claim it on our
18   job, so we had a lot of that.  Because we always
19   carried our Workman's Comp and that was one of the
20   problems that we were having was we couldn't keep
21   track of all the manpower.
22        Q    So who was the foreman that suggested using
23   Robert --
24        A    His name was Ismael Curiel.
25        Q    And how long had you known him?
```

Page 33

1       Q     All right.  So and that was just pure square

2   foot -- that was just a pure piecework calculation.

3       A     Right.

4       Q     And who were they supervised by?

5       A     They were supervised by -- we call them

6   pimps, but they're -- Hispanics pimps, but they were

7   like -- they would control -- like Ismael Curiel did

8   certain things.  Maximino Mato did certain things,

9   Andres Nunez did certain things, you know.  They

10  had -- there was a foreman for almost every phase.

11  Like layout was Maximino Mato.  Framing was Andres,

12  and then the majority of the joist stack and sheeting

13  was Ismael Curiel, and then they had Joaquin that was

14  the sheeter and nailer --

15      Q     So are these --

16      A     -- and they would run -- those were the

17  contacts to get manpower from -- and they all were --

18  at that time they were all on Robert Kahre's payroll.

19      Q     Okay.  Before they went on Mr. Kahre's

20  payroll, were they on Bravo's payroll?

21      A     Correct.

22      Q     And the foremen that you just mentioned

23  let's take, for example, the layout person.

24      A     Maximino Mato.

25      Q     Okay.  Was his sole responsibility to

Page 37

1    group leaders?

2         A    Joaquin, Smiley and Andres, correct.

3         Q    All right.  And if I look at the bottom

4    left-hand corner of the page there's a subtotal, and

5    on this particular document it's $10,217.

6         A    Correct.

7         Q    Correct?  And then there's another amount

8    that -- is it BRD, an abbreviation?

9         A    It's an abbreviation for burden.

10        Q    Burden?  And what's a burden?

11        A    That's for the payroll taxes, the Workman's

12   Comp, the office personnel to, you know, create this,

13   the checks or whatever they're doing to pay the

14   employees.

15        Q    And who calculated the amount of the burden?

16        A    I want to say there was a percentage that --

17   per the dollar amount, for the total dollar amount of

18   the labor there was a percentage that the burden is.

19   Then on some of these, I don't know if I saw them.

20   Let me see.

21             And Mona would check the burden amount to

22   make sure it was correct and then I'd sign off on it.

23             So it's not saying what the burden

24   percentage is.

25        Q    Was that percentage spelled out in the

1   contract between Bravo and Union Pacific?

2       A    Yes.  Yeah, like see this one down here is

3   where Mona corrected it.

4       Q    All right.  Which page are you on if you

5   just -- lower right-hand corner?

6       A    Twenty-five.

7       Q    Twenty-five.  Thank you.

8       A    Yeah, so when she brought it to me, she

9   would say what she did and then I would double-check

10  it and --

11      Q    And on page 2- -- Bates No. 00025 there is

12  some typed numbers.  32,290 is listed as the subtotal

13  and then all those numbers are stricken out and

14  there's handwritten numbers underneath.  And you

15  recognize that as Mona's handwriting?

16      A    Correct.

17      Q    Okay.  So the amount that you would check

18  when the document was given to you was, if we go back

19  to page 3, would be that subtotal amount, that

20  $10,217?

21      A    Correct.

22      Q    And you would make sure that that was the

23  same amount that your team leaders -- or that the team

24  leaders had turned in to you as the amount worked on

25  framing or joisting that particular week.

1    A    Correct.

2    Q    And the burden was calculated -- when you

3   got the document, somebody had put the burden on

4   there.  You didn't do that calculation; is that

5   correct?

6    A    No, it was just like this and then, like I

7   said, Mona would check it and I'd sign it.

8    Q    And then you would sign it.

9         And then this particular document has

10  handwritten on it "Attention:  Laurie."  Do you know

11  who Laurie is?

12   A    I want to say she was a lady who worked for

13  Union Pacific.

14   Q    And then "Please call me at," then there's a

15  phone number, "and let me know if this is okay.

16  Thanks, Mona."

17   A    Yeah.

18   Q    And that's the Mona that you --

19   A    Yeah, Mona Wilcox wrote that.

20   Q    And you recognize her handwriting?

21   A    Yes, correct.

22   Q    So then you would see this document and you

23  would sign it, and what would happen to the document

24  after that?

25   A    I'd give it back to Mona and then she would

Sarnoff, A VERITEXT COMPANY
877-955-3855

1   takes you to do it.

2        A    Correct.

3        Q    Okay.  Now, if we can go over to page 1,

4   then, of the document, have you ever seen this

5   document before?  Did you see this document?

6        A    I can't say that I have.  It might have been

7   part of the package, but I wouldn't really look at

8   this so much as to where I signed off.

9        Q    All right.  So --

10       A    But I might look at it to see if the total

11  amount added the same, you know, the bottom line

12  12107, and 12107, that's all.

13       Q    Now, when this -- after the payroll -- or

14  after the contract with Union Pacific was signed, did

15  that whatever percentage burden impact the estimates

16  or the bid prices you were having to make on projects?

17       A    No, because we had it in -- we have that in

18  our estimate, the burden, which is the same as any

19  business has a burden and that's, you know, the office

20  personnel, the payroll, the payroll taxes, you know,

21  the Medicaid and Social Security or the FICA, you know

22  what I mean?

23       Q    Uh-hmm, sure.

24       A    All those percentages is the burden with the

25  office personnel having to, you know, create it all,

1    you know, create the time to put in to input all this

2    into the system and get the checks printed out.

3         Q    Was the burden that was -- or the percentage

4    of the burden, if you recall, that was used with the

5    Union Pacific calculations similar to the burden that

6    Bravo had used when these functions were performed

7    internally?

8         A    Correct.

9         Q    Was it exactly the same or you don't know?

10        A    Well, I mean the burden fluctuated depending

11   on what your mod factor was for your Workman's Comp,

12   how much you were paying.  So it could go anywhere

13   from 15 percent up to 20 percent.

14        Q    Okay.  But that was something that you were

15   used to factoring into bids or estimates for jobs.

16        A    Correct.

17        Q    And so the Union Pacific contract didn't

18   change the way you calculated or made those estimates

19   for the jobs.

20        A    No.

21        Q    After the Union Pacific contract was formed,

22   were there any office employees at the Bravo main

23   office that you let go?

24        A    No.

25        Q    All right.  So the fact that some of those

Exhibit D

1  James I. Stang, Esq. (CA Bar No. 94435)                    E-File:  September 7, 2011
2  Shirley S. Cho, Esq. (CA Bar No. 192616)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, California 90067-4100
4  Telephone: 310/277-6910
   Facsimile:  310/201-0760
5  Email: jstang@pszjlaw.com
          scho@pszjlaw.com
6
7  Zachariah Larson, Esq. (NV Bar No. 7787)
   LARSON & STEPHENS
8  810 S. Casino Center Blvd., Ste. 104
   Las Vegas, NV  89101
9  Telephone:  702/382.1170
   Facsimile:  702/382.1169
10 Email: zlarson@lslawnv.com

11 Attorneys Reorganized Debtors

12                    **UNITED STATES BANKRUPTCY COURT**

13                         **DISTRICT OF NEVADA**

14 In re:                                    Case No.: BK-S-09-14814-LBR
                                             (Jointly Administered)
15
   THE RHODES COMPANIES, LLC, aka
16 "Rhodes Homes," et al.,[1]                 Chapter 11

17                         Debtors.

18 Affects:                                   Hearing Date:   September 27, 2011
   ☐      All Debtors                         Hearing Time:  10:30 a.m.
19 ☒      Affects the following Debtor(s)     Courtroom 1

20 Bravo, Inc. 09-14825

21

22 ─────────────────────────

23 [1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No.  09-14850); Tuscany Acquisitions II, LLC (Case No.  09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf and Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

DOCS_LA:243340.5 73203-035

*(left margin, vertical text)* LARSON & STEPHENS  810 S. Casino Center Blvd., Suite 104  Las Vegas, Nevada 89101  Tel: (702) 382-1170  Fax.: (702) 382-1169

**DECLARATION OF DEAN GRIFFITHS IN SUPPORT OF DEBTORS' OBJECTION TO CLAIM NO. 7 FILED BY THE INTERNAL REVENUE SERVICE AGAINST DEBTOR BRAVO, INC. [RE: DOCKET NO. 1377]**

I, Dean Griffiths, declare as follows:

1.      I am an individual over the age of 18 years of age.  Unless stated otherwise, the facts set forth in this declaration are within my personal knowledge.  If called upon to testify, I could and would competently testify to the facts set forth herein.

2.      I was employed by Bravo, Inc., dba Rhodes Framing ("Bravo") from 1996 to 2004 in various positions including General Manager and General Superintendent.  Bravo was the division of Rhodes Homes that was responsible for framing homes for various building projects in the Las Vegas area.

3.      In the early 2000's, there was a housing market boom.  Consequently, during that time Bravo was very busy on a number of building projects and the number of manual laborers employed by Bravo grew at a high rate.  Bravo became concerned with its ability to handle the administrative and recordkeeping requirements for the employment of the growing number of new laborers that it needed to sustain production on the increasing number of building projects.

4.      I was introduced to Robert Kahre through one of Bravo's employees.  I met Kahre on one occasion.  Kahre represented to me that his company, Union Pacific Construction ("Pacific"), could provide manual laborers for Bravo's projects as a subcontractor, thereby eliminating Bravo's administrative burden and payment obligations with respect to these laborers.  On this basis, Bravo engaged Pacific beginning in the early 2000's as a subcontractor to provide laborers to work on Bravo's building projects.

5.      After Bravo engaged Pacific, Pacific (with Bravo's consent) hired certain of Bravo's  employees as its own employees.  The former Bravo employees retained by Pacific were no longer Bravo's employees and Bravo had no responsibility for these employees.  Pacific provided both former Bravo employees and other of Pacific's employees as laborers to work on building projects of Bravo's.  Pacific had the sole responsibility of paying the former Bravo employees hired by Pacific, as well as any other employees of Pacific, who worked on Bravo's

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

2

building projects. Pacific was also responsible for all other matters that an employer would have with respect to its own employees, including payroll, workmans' compensation insurance, labor disputes, and withholding and payment of taxes to the proper taxing authorities.

      6.     After Bravo hired Pacific as a subcontractor, Bravo continued to maintain its own employees, who were long-time hourly or salaried employees, such as supervisors and foremen such as myself.

      7.     During the time that Pacific served as subcontractor to Bravo, I did not know that Kahre or Pacific may not have paid or withheld taxes owed by Pacific or Pacific's employees. Nor am I aware that any other employee or officer of Bravo or Rhodes Homes was aware at that time that Kahre or Pacific may not have paid taxes owed by Pacific or Pacific's employees. After Pacific had been engaged by Bravo for a period of time, I heard that Pacific or Kahre may have been involved in a gold coin payment arrangement and, immediately after I discovered this, Bravo terminated its relationship with Pacific and Kahre.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

     Executed this 7 day of September, 2011 at Las Vegas, Nevada.

                               Dean Griffith

LARSON & STEPHENS
810 S. Casino Center Blvd, Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

DOCS_LA:243340.5 73203-035

3

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

## CERTIFICATE OF SERVICE

1. On the 7th day of September 2011, I served the following document(s):

**DECLARATION OF DEAN GRIFFITHS IN SUPPORT OF DEBTORS' OBJECTION TO CLAIM NO. 7 FILED BY THE INTERNAL REVENUE SERVICE AGAINST DEBTOR BRAVO, INC. [RE: DOCKET NO. 1377]**

2. I served the above-named document(s) by the following means to the persons as listed below:
   *(check all that apply)*

   ☐ a. **United States mail, postage fully prepaid**
   *(List persons and addresses.  Attach additional paper if necessary)*

   *PLEASE SEE ATTACHED.*

3. On **September 7, 2011** I served the above-named document(s) by the following means to the persons as listed below:
   *(check all that apply)*

   ■ a. **ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed on (date): September 7, 2011

Sophia L. Lee                                    /s/Sophia L. Lee
(Name of Declarant)                            (Signature of Declarant)

**ECF SERVICE LIST**

**09-14814-lbr Notice will be electronically mailed to:**

KEVIN N. ANDERSON on behalf of Creditor JAMES RHODES
kanderson@fabianlaw.com, sburdash@fabianlaw.com

BRETT A. AXELROD on behalf of Creditor SAGEBRUSH ENTERPRISES, INC.
baxelrod@foxrothschild.com,
pkois@foxrothschild.com;rdittrich@foxrothschild.com;msheffield@foxrothschild.com;ldupree
@foxrothschild.com

J. THOMAS BECKETT on behalf of Creditor CREDITORS COMMITTEE
ECF@parsonsbehle.com

SHIRLEY S. CHO on behalf of Debtor THE RHODES COMPANIES, LLC
scho@pszjlaw.com

JANET L. CHUBB on behalf of Creditor COMMERCE ASSOCIATES, LLC
bsalinas@armstrongteasdale.com

DAVID A. COLVIN on behalf of Creditor DANA KEPNER COMPANIES, LLC
dcolvin@maclaw.com,
mwalters@maclaw.com;kgallegos@maclaw.com;tszostek@maclaw.com;bfrauenfeld@maclaw.c
om

NATALIE M. COX on behalf of Plaintiff EUGENE DAVIS
ncox@klnevada.com, bankruptcy@klnevada.com;bbroussard@klnevada.com

THOMAS E. CROWE on behalf of Creditor SHANE SMITH
tcrowelaw@yahoo.com

DAMON K. DIAS on behalf of Creditor X-It at 215, LLC
ddias@diaslawgroup.com, bankruptcy@diaslawgroup.com

TRACY A. DIFILLIPPO on behalf of Creditor COMMERCE ASSOCIATES, LLC
tdifillippo@jonesvargas.com, enunez@jonesvargas.com;ehardy@jonesvargas.com

CONOR P. FLYNN on behalf of Creditor COMMERCE ASSOCIATES, LLC
cflynn@jonesvargas.com

PHILIP S. GERSON on behalf of Creditor CLARK COUNTY
banknv@rocgd.com, mburgener@rocgd.com

REW R. GOODENOW on behalf of Creditor CREDITORS COMMITTEE
ecf@parsonsbehle.com

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JAMES D. GREENE on behalf of Plaintiff EUGENE DAVIS
jgreene@greeneinfusolaw.com,
fritchie@greeneinfusolaw.com;kfarney@greeneinfusolaw.com;bschmidt@greeneinfusolaw.com;
cwalton@greeneinfusolaw.com

KIRBY C. GRUCHOW on behalf of Creditor NEVADA POWER COMPANY
hkelley@leachjohnson.com

DAVID R HAGUE on behalf of Creditor JAMES RHODES
dhague@fabianlaw.com, dromero@fabianlaw.com

CAROL L. HARRIS on behalf of Creditor In re Kitec Fitting Litigation Class Plaintiffs
c.harris@kempjones.com, jlm@kempjones.com

RODNEY M. JEAN on behalf of Creditor Credit Suisse, Cayman Islands Branch
RJEAN@LIONELSAWYER.COM,
gbagley@lionelsawyer.com;bklsclv@lionelsawyer.com;mstow@lionelsawyer.com

ROBERT R. KINAS on behalf of Creditor CATERPILLAR FINANCIAL SERVICES
CORPORATION
rkinas@swlaw.com,
jmath@swlaw.com;mfull@swlaw.com;cdossier@swlaw.com;nbaig@swlaw.com;nunzueta@swl
aw.com;docket_las@swlaw.com

KEITH S. KNOCHEL on behalf of Creditor VALERIE SILVAS
law@lawyersinarizona.com, bank@lawyersinarizona.com

BART K. LARSEN on behalf of Creditor Reef Colonial, LLC
blarsen@klnevada.com, jierien@klnevada.com;bankruptcy@klnevada.com

ZACHARIAH LARSON on behalf of Debtor APACHE FRAMING, LLC
cshurtliff@larsonlawnv.com, sstanton@larsonlawnv.com;akosina@larsonlawnv.com

NILE LEATHAM on behalf of Creditor STEERING COMMITTEE OF SENIOR SECURED
LENDERS
nleatham@klnevada.com, ckishi@klnevada.com;bankruptcy@klnevada.com

ANNE M. LORADITCH on behalf of Creditor JAMES RHODES
aloraditch@foxrothschild.com,
pkois@foxrothschild.com;rdittrich@foxrothschild.com;msheffield@foxrothschild.com

VIRGINIA CRONAN LOWE on behalf of Creditor UNITED STATES OF AMERICA -
INTERNAL REVENUE SERVICE
virginiacronan.lowe@usdoj.gov, Western.Taxcivil@usdoj.gov

ERIC D. MADDEN on behalf of Other Prof. THE LITIGATION TRUST OF THE RHODES
COMPANIES, LLC
emadden@diamondmccarthy.com, cburrow@diamondmccarthy.com

JANIECE S MARSHALL on behalf of Creditor STANLEY CONSULTANTS, INC.
, car@amclaw.com;lom@amclaw.com;crb@amclaw.com;csh@amclaw.com

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EDWARD M. MCDONALD on behalf of U.S. Trustee U.S. TRUSTEE - LV - 11
edward.m.mcdonald@usdoj.gov

SUSAN L. MYERS on behalf of Creditor Credit Suisse, Cayman Islands Branch
smyers@lacsn.org, emontes@lacsn.org;bklsclv@lionelsawyer.com

JEFFREY D. OLSTER on behalf of Creditor HARSCH INVESTMENT PROPERTIES - NEVADA, LLC
sallade@lbbslaw.com

OMNI MANAGEMENT GROUP, LLC (bo)
bosborne@omnimgt.com, sewing@omnimgt.com

ERIC RANSAVAGE on behalf of Creditor Leslie Blasco, et al.
eransavage@ssllplaw.com, agutierrez@ssllplaw.com

JACOB J ROBERTS on behalf of Other Prof. THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC
jroberts@diamondmccarthy.com, cburrow@diamondmccarthy.com

BRIAN D. SHAPIRO on behalf of Other Prof. THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC
bshapiro@brianshapirolaw.com,
ecf@brianshapirolaw.com;brianshapiroesq@yahoo.com;bshapiro@brianshapirolaw.com;candice @brianshapirolaw.com

SHLOMO S. SHERMAN on behalf of Interested Party REORGANIZED DEBTORS
ssherman@klnevada.com, bankruptcy@klnevada.com;bbroussard@klnevada.com

MARK R. SOMERSTEIN on behalf of Creditor WELLS FARGO BANK, N.A.
mark.somerstein@ropesgray.com

ELIZABETH E. STEPHENS on behalf of Attorney SULLIVAN HILL LEWIN REZ & ENGEL
stephens@sullivanhill.com,
calderone@sullivanhill.com;vidovich@sullivanhill.com;roberts@sullivanhill.com;hill@sullivan hill.com;Manning@sullivanhill.com;stein@sullivanhill.com

JEFFREY R. SYLVESTER on behalf of Creditor CREDIT SUISSE, CAYMAN ISLANDS BRANCH
jeff@sylvesterpolednak.com

TIMOTHY P. THOMAS on behalf of Creditor STEERING COMMITTEE OF SENIOR SECURED LENDERS
, veralynn@tthomaslaw.com

U.S. TRUSTEE - LV - 11
USTPRegion17.lv.ecf@usdoj.gov

DONALD H. WILLIAMS on behalf of Creditor Westar Kitchen & Bath, LLC
DonaldHWilliamsLaw@gmail.com, taylorsellers@gmail.com

1 │ MICHAEL YODER on behalf of Other Prof. THE LITIGATION TRUST OF THE RHODES
2 │ COMPANIES, LLC
   │ myoder@diamondmccarthy.com, cburrow@diamondmccarthy.com

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Exhibit E

```
 1              IN THE UNITED STATES BANKRUPTCY COURT
 2                   FOR THE DISTRICT OF NEVADA
 3
 4      In re:
 5      THE RHODES COMPANIES, LLC, aka
        Rhodes Homes, et al.,
 6                                      BK-S-09-14814 LBR
 7                   Debtors.
 8
 9
10
11      _____
12                   DEPOSITION OF JAMES GARNER
13                      Las Vegas, Nevada
14                  Wednesday, January 18, 2012
15                         Volume I
16
17
18
19      Reported by:
        ALLYSON W. HARRIS
20      NV CCR No. 740
21      Job No. 130614B
22
23      PAGES 1 - 42
24
25
```

Page 1

```
 1            Las Vegas, Nevada, Wednesday, January 18, 2012
 2                          10:50 a.m.
 3
 4                      JAMES GARNER,
 5     having been administered an oath, was examined and
 6     testified as follows:
 7
 8                       EXAMINATION
 9     BY MS. LOWE:
10         Q    Okay.  This is -- my name is Virginia Lowe
11     and this is the deposition of James Garner in the
12     Rhodes Companies bankruptcy action.
13              And, Mr. Garner, could you spell your name
14     for the record, please?
15         A    J-a-m-e-s, G-a-r-n-e-r.
16         Q    Okay.  And can you tell us your address?
17         A    4670 Hoeker Way, Las Vegas, Nevada 89147.
18         Q    Okay.  And have you ever had your deposition
19     taken before?
20         A    Yes.
21         Q    Okay.  And when was that?
22         A    A couple times years ago for construction
23     defect stuff.
24         Q    Okay.  And so you know that everything you
25     say is -- you're testifying under oath and that you
```

                                                      Page 5

```
 1        Q    Okay.  So when you were a job foreman for
 2    Bravo, did you receive a paycheck from Bravo?
 3        A    Yeah.
 4        Q    Okay.
 5        A    Yes.
 6        Q    And did your -- the people under you, do you
 7    know if they received paychecks?
 8        A    Yes.
 9        Q    And how did you know that they received
10    paychecks?
11        A    Because I would hand them out to them.
12        Q    Okay.  So as part of -- how would you come
13    to have their paychecks?  Where would you get them
14    from?
15        A    From the office.
16        Q    Okay.  So you would go to the office and the
17    paychecks were already there?
18        A    Or they would be delivered to us --
19        Q    Okay.
20        A    -- at the site.
21        Q    Okay.  And then you would hand them out to
22    the people that were on your crew?
23        A    Right.
24        Q    Okay.  Now, how did their -- how did the
25    crew hours get reported to -- in order for that --
```

Page 13

1      A    -- they would send somebody else to fix it,

2  yeah.

3      Q    Okay.  And these people were all at the time

4  working for Bravo?

5      A    Yes.

6      Q    Okay, okay.

7      So you said there was a meeting in the

8  office involving all these individuals.  Do you -- and

9  you were at this meeting, and do you recall what was

10  discussed at the meeting?

11      A    Basically they just -- we were told that it

12  was going to be like a payroll service to where those

13  crew leaders would just be paid through the payroll

14  service.

15      Q    Whose payroll service?

16      A    Robert Kahre and George, Big George.

17      Q    Okay.

18      A    And the meeting was basically that as far as

19  if somebody got hurt, because the crew leaders weren't

20  always on the job site, so if somebody got hurt from

21  their crews, you know, you'd have to call the crew

22  leader and let them know and just what to do about

23  that.

24      Q    Okay, okay.

25      And do you know how long the meeting lasted?

Page 27

1       A    Union Pacific, yeah.

2       Q    Okay.  And so the payroll was going to be

3  run through Union Pacific?

4       A    I believe that's what the name of it was,

5  yes.

6       Q    Okay.  And was there any -- after this --

7  did there -- was there a reason given for the --

8  having Mr. Kahre's company take over a portion of the

9  payroll?

10      A    I would say the reason that I remember it

11 being was a lot to do with the insurance, and as far

12 as -- yeah, I guess just the insurance.

13      Q    Okay.

14      A    And the -- for the crew leader, the crews.

15      Q    Okay.  So I take it these were the crew

16 leaders -- you've named Ismael Curiel, Andres Nunez

17 and Joaquin Barrajas as the crew leaders.

18      A    Right.

19      Q    And so was it just their crews that were

20 going to be serviced by the Kahre payroll service

21 company or the Kahre payroll?

22      A    Yes.

23      Q    Okay.

24      A    I believe so.

25      Q    And there was other crews, though, leaders

Page 29

```
 1        A    Well, the manager of the framing company was
 2   the only one that was allowed to set the hourly
 3   wage.
 4        Q    Okay.  And who would that have been during
 5   your tenure there?
 6        A    There was in all the time I was there Dirk,
 7   Steve Fisher was briefly, Gary Causey, Dean.  Dean was
 8   the one that was there when I left, Dean.
 9        Q    It was up to that person -- those
10   individuals to set the hourly wage for the workers?
11        A    Correct.
12        Q    Okay.  And then did -- and what about in
13   general, what about the tools that the workers, the
14   employees used on the job site?
15        A    The tools?
16        Q    Yes.
17        A    We never supplied tools, maybe a Hilti gun
18   now and then, because when you order a lot of Hilti
19   pins they would give you a free Hilti gun, so maybe
20   the framers would get a Hilti gun once in a while, but
21   as far as tools, we never provided tools.
22        Q    Okay.
23        A    It was all personal --
24        Q    Okay, okay.
25        A    -- for the most part.
```

Sarnoff, A VERITEXT COMPANY
877-955-3855

Exhibit F

1              IN THE UNITED STATES BANKRUPTCY COURT

2                  FOR THE DISTRICT OF NEVADA

3

4    In re:

5    THE RHODES COMPANIES, LLC, aka

     Rhodes Homes, et al.,

6                                      BK-S-09-14814 LBR

7              Debtors.

8

9

10

11   _____

12              DEPOSITION OF PAMELA GARNER

13                  Las Vegas, Nevada

14              Wednesday, January 18, 2012

15                     Volume I

16

17

18

19   Reported by:

     ALLYSON W. HARRIS

20   NV CCR No. 740

21   Job No. 130614A

22

23   PAGES 1 - 54

24

25

                                          Page 1

```
 1          Las Vegas, Nevada, Wednesday, January 18, 2012
 2                         8:57 a.m.
 3
 4                      PAMELA GARNER,
 5     having been administered an oath, was examined and
 6     testified as follows:
 7
 8                      EXAMINATION
 9     BY MS. LOWE:
10          Q    Okay.  We're here for the deposition of
11     Pamela Garner.
12               And can you spell your name for the record,
13     please?
14          A    First and last?
15          Q    Yes, please.
16          A    P-a-m-e-l-a, last name G-a-r-n-e-r.
17          Q    Okay.  And can you tell me your address,
18     please?
19          A    4670 Hoeker Way, Las Vegas, Nevada 89147.
20          Q    Okay.  And what's your telephone number?
21          A    629-2289.  That's my home number.  If you
22     want my . . .
23          Q    No, that's fine.  And that's 702 area code?
24          A    Yes.
25          Q    And have you ever had your deposition taken
```

Page 5

```
 1        Q    Okay.  And who did you -- who was your

 2   supervisor?

 3        A    Mona Wilcox.

 4        Q    Okay.  And then how long did you remain a

 5   receptionist?

 6        A    Maybe a year.  Around a year give or take a

 7   couple months.

 8        Q    And what were your duties as a receptionist?

 9        A    Answering phones, having guys come in from

10   the field fill out applications, manage --

11        Q    When you said guys coming in from the

12   field --

13        A    Potential applicants coming in to fill out

14   applications to go to work for us.

15        Q    Okay.

16        A    And making sure that was organized.  Taking

17   care of the mail, answer phones.  Just making sure

18   everything was quiet and running smoothly up front.

19        Q    Okay.  And when you said they filled out

20   applications, what type of jobs were they filling out

21   applications for?

22        A    Just laborers, hourly workers.  Just guys

23   that were going to go and build houses, basically.

24        Q    Okay.  And who would review those

25   applications usually?
```

Page 8

1       A    The foreman.  Usually the foreman would know

2   the person before they sent them in.  So it was up to

3   the foreman or the construction manager, whoever

4   construction manager it was at the time.

5       Q    Okay.  And do you remember who the

6   construction manager was when you were the

7   receptionist?

8       A    Dirk Griffith.

9       Q    Okay.  And then when you -- what did you

10  do -- oh, and where were -- where was the office

11  located when you were a receptionist?

12      A    On Hacienda.

13      Q    Okay.

14      A    I can't remember the exact number, but it

15  was off of Valley View on Hacienda a little bit up

16  from Tropicana.

17      Q    Okay.  And how many -- what was -- how was

18  the office set up?  Like how many offices -- were

19  there offices within the office?

20      A    Yes.

21      Q    Okay.

22      A    Because there was one, two, three, four in

23  the shop when I first started, because they added on

24  like four or five offices, and then my area up front

25  and then the kitchen in the back.

                                          Page 9

1  sheets?

2       A    Yes.

3       Q    Okay, okay.

4       A    And they'd have to sign them.

5       Q    And they would sign them, and then they

6  would bring them in, and then what would you do with

7  them?

8       A    I would go through them, kind of make sure

9  everything looked okay, it was coded properly, it

10  looked like it added up to the correct number of hours

11  at the bottom, whether they had overtime or not.  If

12  there's a problem, I'd send it -- have to have

13  approval somewhere to change something.

14       Q    Okay.

15       A    And then I would just take it and enter it

16  into the program on the computer.  American Contractor

17  I think it was.

18       Q    Okay.  And what did this program do, then,

19  on the computer?

20       A    It was like a construction accounting

21  program, so it would basically allow me to job cost

22  the payroll and -- for each person, and really that --

23  and that's all I really did.  So I didn't have -- it

24  was more like I was just taking the information,

25  putting it in and then it was being approved and

Exhibit G

```
1              IN THE UNITED STATES BANKRUPTCY COURT
2                   FOR THE DISTRICT OF NEVADA
3
4     In re:
5     THE RHODES COMPANIES, LLC, aka
      Rhodes Homes, et al.,
6                                    BK-S-09-14814 LBR
7                   Debtors.
8
9
10
11    _____
12              DEPOSITION OF MARLENE MARCUS
13                   Las Vegas, Nevada
14               Wednesday, January 18, 2012
15                      Volume I
16
17
18
19    Reported by:
      ALLYSON W. HARRIS
20    NV CCR No. 740
21    Job No. 130614
22
23    PAGES 1 - 30
24
25
```

Page 1

```
 1              Las Vegas, Nevada, Wednesday, January 18, 2012
 2                           1:50 p.m.
 3
 4                       MARLENE MARCUS,
 5       having been administered an oath, was examined and
 6       testified as follows:
 7
 8                        EXAMINATION
 9       BY MS. LOWE:
10          Q    Okay.  This is the deposition of
11       Marlene Marcus, and my name is Virginia Lowe and I
12       represent the United States in this litigation, and
13       Justin Bell is appearing by telephone, representing
14       the reorganized debtors.
15              And, Ms. Marcus, could you spell your full
16       name for the record, please?
17          A    My first name is M-a-r-l-e-n-e.  My last
18       name is M-a-r-c-u-s.
19          Q    Okay.  And can you give us your address,
20       please?
21          A    1109 Sulphur Springs Lane, Unit 101,
22       Las Vegas, Nevada 89128.
23          Q    And can you give us your telephone number,
24       please?
25          A    Area code (702) 804-1490.
```

Sarnoff, A VERITEXT COMPANY
877-955-3855

1           MR. BELL:  Right as you asked me if I had

2     any questions.

3           MS. LOWE:  Oh, good, good.  We were hoping

4     that was the case.  We thought oh, no, I hope he was

5     there the whole time.  Okay.

6           MR. BELL:  I was, thank you.

7           MS. LOWE:  Okay.  Good.

8           MR. BELL:  Yeah, I just have a couple of

9     questions.

10          MS. LOWE:  Okay.

11                        EXAMINATION

12    BY MR. BELL:

13        Q    Marlene, when you testified that when Rhodes

14    needed workers, he would call Union Pacific to get

15    some, is it -- do you have any understanding about --

16          MS. LOWE:  You know what I -- objection to

17    the characterization of her testimony.

18    BY MR. BELL:

19        Q    Okay.  Marlene, did you testify that when

20    Rhodes needed workers, he would call Union Pacific?

21        A    That was my knowledge.

22        Q    Okay.  Do you have any understanding as to

23    what happened to those UPC workers or what happened to

24    those workers when they were finished with their

25    Rhodes projects?

                                        Page 25

1        A     No.

2        Q     So is it safe to assume that they went back

3   to working on other Union Pacific projects?

4        A     I would assume so.

5        Q     Okay.

6              MR. BELL:   Those are my only questions.

7   Thank you.

8                    FURTHER EXAMINATION

9   BY MS. LOWE:

10       Q     When Mr. Bell just asked that last question

11  that you were making an assumption that they were

12  working on Union Pacific construction projects --

13       A     Uh-huh.

14       Q     -- did any of those other workers work for

15  Bravo after you --

16       A     I believe Bravo hired some of them.

17       Q     Okay.  So they would do work for Bravo after

18  this was -- after --

19       A     I believe so, yes.

20       Q     Okay.  So the attorneys shut it down and

21  then they actually went on the Bravo payroll?

22       A     Well, I wouldn't put it that way.  I believe

23  that some of them applied for employment at Bravo and

24  some were accepted, yes.

25       Q     Okay.  When you said someone would call UPC,

                                          Page 26

Exhibit H

```
 1              IN THE UNITED STATES BANKRUPTCY COURT

 2                  FOR THE DISTRICT OF NEVADA

 3

 4    In re:

 5    THE RHODES COMPANIES, LLC, aka

      Rhodes Homes, et al.,

 6                                    BK-S-09-14814 LBR

 7              Debtors.

 8

 9

10    _____

11

12              DEPOSITION OF SERGIO JUAREZ

13                  Las Vegas, Nevada

14              Tuesday, January 17, 2012

15                  Volume I

16

17

18

19

20

21    Reported by:

      ALLYSON W. HARRIS

22    NV CCR No. 740

23    Job No. 130606

24

25    PAGES 1 - 51

                                           Page 1
```

```
 1            Las Vegas, Nevada, Tuesday, January 17, 2012
 2                          1:53 p.m.
 3                         SERGIO JUAREZ,
 4     having been administered an oath, was examined and
 5     testified as follows:
 6
 7                         EXAMINATION
 8     BY MS. LOWE:
 9         Q    And this is the deposition of Sergio Juarez.
10     And could you spell your name for the court reporter,
11     please?
12         A    Sergio is S-e-r-g-i-o, Juarez,
13     J-u-a-r-e-z.
14         Q    Okay.  And I'm Virginia Lowe representing
15     the United States, and also present here is Abid
16     Qureshi.
17             MR. QURESHI:  Yes, and I represent the
18     reorganized debtor.  So, Mr. Juarez, for your benefit,
19     what that means is Rhodes, the Rhodes company went
20     through Chapter 11.  When the government proceedings
21     came to an end, a new entity was formed and we refer
22     to that as the reorganized debtor, and I represent
23     that company, the successor to Rhodes, basically, to
24     Rhodes Homes.
25             THE WITNESS:  Okay.
```

Page 5

1    meeting in the office.

2        Q    Okay, okay.

3             And do you know who he would have had a

4    meeting with?

5        A    Just I believe it was Dean Griffith in

6    there.

7        Q    Okay.  And did you know anything about what

8    their meeting was about?

9        A    Something about -- about -- how did it go?

10   Something about paying them, paying guys or

11   something.

12       Q    Paying the workers?

13       A    Uh-hmm, yeah.

14       Q    Okay.  Paying them differently than

15   currently being paid?

16       A    That I don't know.

17       Q    Okay, okay.

18       A    I didn't understand, like I said, how they

19   were -- you know, I got paid a paycheck and --

20       Q    Right.

21       A    You know, that's about it.

22       Q    Did any of your crew ever -- was any of your

23   crew ever paid in cash, do you know?

24       A    That I don't know.  All my crew I took

25   paychecks to.

1      Q     Okay.

2      A     I delivered paychecks.

3      Q     Okay.  Was the paycheck in an envelope?

4      A     Uh-hmm.

5      Q     Okay.  So did you know what was in the

6   envelope or --

7      A     Yes.

8      Q     Okay.  And it was a check?

9      A     Uh-hmm.

10      Q     Okay.  And then did you ever see, though,

11   envelopes with cash --

12      A     No, ma'am.

13      Q     -- at Bravo?

14      A     Everything I took to my guys were all

15   checks.

16      Q     Okay.  Did you remember -- ever remember an

17   incident involving the Hell's Angels that occurred at

18   the Bravo office?

19      A     Uh-hmm.

20      Q     Can you explain what that was?

21      A     Something about holding somebody's check

22   that was good friends with them, and they came in to

23   collect it and that was it.

24      Q     Okay.

25      A     Nothing ever happened.

Sarnoff, A VERITEXT COMPANY
877-955-3855

```
1    from his crew.
2         A    There were guys that worked trusses
3    throughout the valley.
4         Q    Okay.  And then Andres you said did?
5         A    Framed walls.
6         Q    Framed walls?
7         A    Uh-hmm.
8         Q    And do you recognize any of the names in his
9    crew?
10        A    I remember first names.
11        Q    Okay.  And then how about "Haykin"?
12        A    "Wah keen?"
13        Q    "Wah keen", sorry.
14        A    That's okay.  I don't remember ever using --
15   calling any of those guys' names out.
16        Q    Okay.
17        A    I wouldn't see them all that often because,
18   like I said, everything was what they called stage
19   framing.
20        Q    Right, right.
21        A    Sometimes I wouldn't come until all these
22   guys were gone because, like I said, they would build
23   the house.
24        Q    Right.
25        A    I would come in and put all the decorations
```

Page 39