# U.S. EXHIBIT 1

STEVEN W. MYHRE
United States Attorney
District of Nevada
L. ERIC JOHNSON
Chief, Organized Crime Strike Force
J. Gregory Damm
Assistant United States Attorney
Organized Crime Strike Force
Jared E. Dwyer
Trial Attorney, U.S. Dept. of Justice
333 Las Vegas Blvd. South, Suite 5037
Las Vegas, Nevada 89101
Telephone: (702) 388-6336
Facsimile: (702) 388-6418



FILED ___ RECEIVED
ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

NOV 2 0 2007

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　　vs.<br><br>ROBERT D. KAHRE,<br>THOMAS R. BROWNE,<br>DANILLE D. CLINE,<br>LORI A. KAHRE,<br>a.k.a. DONNA HALL,<br>ALEXANDER C. LOGLIA,<br><br>　　　Defendants. | CRIMINAL INDICTMENT<br>THIRD SUPERSEDING<br><br>CR-S-05-0121-RCJ-(RJJ)<br><br>VIOLATIONS:<br><br>18 U.S.C. § 371 - Conspiracy to Defraud<br><br>18 U.S.C. § 1014 - False Statement to a Bank<br><br>18 U.S.C. § 1343 - Wire Fraud<br><br>26 U.S.C. § 7201 - Attempt to Evade or Defeat Tax<br><br>26 U.S.C. § 7202 - Willful Failure to Collect or Pay Over Tax<br><br>26 U.S.C. § 7206(1) - Filing a False U.S. Individual Income Tax Return<br><br>26 U.S.C. § 7212(a) - Attempts to Interfere with Administration of Internal Revenue Laws |

## Summary of Charges

| Defendant | Count(s) | Charge |
|---|---|---|
| ROBERT D. KAHRE | 1 | 18 U.S.C. § 371 - Conspiracy to Defraud |
| | 2 - 50 | 26 U.S.C. § 7202 - Willful Failure to Collect and Pay Over Tax |
| | 51 | 26 U.S.C. § 7212(a) - Attempts to Interfere With The Administration of the Internal Revenue Law |
| | 52 - 55 | 26 U.S.C. § 7201 - Attempt to Evade or Defeat Tax |
| | 56 | 26 U.S.C. § 7212(a) - Attempts to Interfere With The Administration of the Internal Revenue Law |
| | 59 | 18 U.S.C. § 1343 - Wire Fraud |
| THOMAS R. BROWNE | 56 | 26 U.S.C. § 7212(a) - Attempts to Interfere With The Administration of the Internal Revenue Law |
| | 58 - 59 | 18 U.S.C. § 1343 - Wire Fraud |
| DANILLE D. CLINE | 56 | 26 U.S.C. § 7212(a) - Attempts to Interfere With The Administration of the Internal Revenue Law |
| | 58 - 60 | 18 U.S.C. § 1343 - Wire Fraud |
| LORI A. KAHRE a.k.a. DONNNA HALL | 1 | 18 U.S.C. § 371 - Conspiracy to Defraud |
| | 51 | 26 U.S.C. § 7212(a) - Attempts to Interfere With The Administration of the Internal Revenue Law |
| | 56 | 26 U.S.C. § 7212(a) - Attempts to Interfere With The Administration of the Internal Revenue Law |
| | 57 | 18 U.S.C. § 1014 - False Statement to a Bank |
| | 61 - 68 | 26 U.S.C. § 7201 - Attempt to Evade or Defeat Tax |
| ALEXANDER C. LOGLIA | 1 | 18 U.S.C. § 371 - Conspiracy to Defraud |
| | 51 | 26 U.S.C. § 7212(a) - Attempts to Interfere With The Administration of the Internal Revenue Law |
| | 69 - 72 | 26 U.S.C. § 7201 - Attempt to Evade or Defeat Tax |
| | 73 | 26 U.S.C. § 7206(1) - Filing A False Income Tax Return |
| | 74 - 79 | 26 U.S.C. § 7201 - Attempt to Evade or Defeat Tax |

THE GRAND JURY CHARGES THAT:

INTRODUCTORY ALLEGATIONS:

The Parties

(1)     At all times relevant to this indictment, defendant ROBERT D. KAHRE was a United States citizen who resided in Las Vegas, Nevada and Saint George, Utah. Defendant ROBERT D. KAHRE owned, operated and controlled various businesses engaged in the construction trades in the Las Vegas, Nevada area.

(2)     At all times relevant to this indictment, defendant THOMAS R. BROWNE was a United States citizen who resided in Las Vegas, Nevada. Defendant THOMAS R. BROWNE worked in the Las Vegas, Nevada area as a commissioned loan officer and real estate agent. Defendant THOMAS R. BROWNE is the ex-husband of J.B., the sister of defendant DANILLE D. CLINE.

(3)     At all times relevant to this indictment, defendant DANILLE D. CLINE was a United States citizen who resided in Las Vegas, Nevada and Saint George, Utah. Defendant DANILLE D. CLINE is the girlfriend of defendant ROBERT D. KAHRE. Defendant DANILLE D. CLINE is also the sister of J.B., the former wife of defendant THOMAS R. BROWNE.

(4)     At all times relevant to this indictment, defendant LORI A. KAHRE a.k.a. DONNA HALL was a United States citizen who resided in Las Vegas, Nevada. LORI A. KAHRE a.k.a. DONNA HALL is the sister of defendant ROBERT D. KAHRE. Defendant LORI A. KAHRE a.k.a. DONNA HALL worked for defendant ROBERT D. KAHRE as the office manager, accounting manager, and payroll manager for his various businesses.

(5)     At all times relevant to this indictment, defendant ALEXANDER C. LOGLIA was a United States citizen who resided in New York, New York and Las Vegas, Nevada. Defendant ALEXANDER C. LOGLIA served as defendant ROBERT D. KAHRE's legal advisor and general business consultant.

## Defendant ROBERT D. KAHRE'S Businesses

(6)     From at least in or about January 1993 and continuing at least through May 2007, defendant ROBERT D. KAHRE owned, operated, controlled and directed a sole proprietorship known as Wright Painting and Drywall ("WPD"). WPD provided painting and drywall services in the construction industry in Las Vegas, Nevada. Defendant ROBERT D. KAHRE hired numerous employees who worked for WPD.

(7)     From at least in or about January 1999 and continuing at least through May 2007, defendant ROBERT D. KAHRE owned, operated, controlled and directed a sole proprietorship known as Production Air Conditioning ("PAC"). PAC provided heating, ventilation and air conditioning services in the construction industry in Las Vegas, Nevada. Defendant ROBERT D. KAHRE hired numerous employees who worked for PAC.

(8)     From at least in or about April 2000 and continuing at least through May 2007, defendant ROBERT D. KAHRE owned, operated, controlled and directed a sole proprietorship known as Production Electric ("PE"). PE provided electrical services in the construction industry in Las Vegas, Nevada. Defendant ROBERT D. KAHRE hired numerous employees who worked for PE.

(9)     From at least on or about January 11, 1999 and continuing at least through May 2007, defendant ROBERT D. KAHRE owned, operated, controlled and directed a sole proprietorship known as Production Plumbing ("PP"). PP provided plumbing services in the construction industry in Las Vegas, Nevada. Defendant ROBERT D. KAHRE hired numerous employees who worked for PP.

(10)    From at least on or about January 12, 1999 and continuing at least through December 29, 2005, defendant ROBERT D. KAHRE owned, operated, controlled and directed a sole proprietorship known as Sherman Tile & Marble ("STM"). STM provided tile and granite installation services in the construction industry in Las Vegas, Nevada. Defendant ROBERT D. KAHRE hired numerous employees who worked for

4

1  STM.

2      (11)   From at least on or about July 5, 2002 and continuing at least through May

3  2003, defendant ROBERT D. KAHRE owned, operated, controlled and directed a sole

4  proprietorship known as Union Pacific Construction ("UPC"). UPC was a general

5  contractor operating in the construction industry in Las Vegas, Nevada. Defendant

6  ROBERT D. KAHRE hired numerous employees who worked for UPC.

7                              The Payroll Service

8      (12)   From at least January 1997 through and including at least May 2007,

9  defendant ROBERT D. KAHRE and others known and unknown to the Grand Jury

10  promoted, sold, marketed, directed and controlled and caused to be promoted, sold,

11  marketed, directed and controlled a payroll service ("the Payroll Service").

12      (13)   The Payroll Service was marketed and caused to be marketed by

13  defendant ROBERT D. KAHRE and others known and unknown to the Grand Jury to

14  other construction industry contractors in the Las Vegas, Nevada area.

15      (14)   Defendant ROBERT D. KAHRE told the contractors, and caused the

16  contractors to be told, that if defendant ROBERT D. KAHRE processed their payroll,

17  the costs associated with the employment of their workers would be substantially

18  reduced by using the Payroll Service.

19      (15)   Over the period of time from at least January 1997 through and including

20  at least May 2007, approximately thirty-five (35) contractors ("the Other Contractors")

21  in the Las Vegas, Nevada area used defendant ROBERT D. KAHRE's Payroll Service.

22      (16)   Defendant ROBERT D. KAHRE charged these contractors an

23  administrative fee for use of the Payroll Service.

24  . . .

25  . . .

26  . . .

## COUNT ONE
Conspiracy
(18 U.S.C. § 371)

(17)   Paragraphs one through sixteen are re-alleged and incorporated herein.

(18)   From on or about February 1, 1997, the exact date being unknown to the Grand Jury, and continuing thereafter up to and including the date of this indictment, in the District of Nevada and elsewhere,

ROBERT D. KAHRE,
LORI A. KAHRE a.k.a. DONNA HALL, and
ALEXANDER C. LOGLIA,

defendants herein, did unlawfully, voluntarily, intentionally and knowingly conspire, combine, confederate, and agree together and with each other and with other individuals both known and unknown to the Grand Jury to defraud the United States by deceit, craft, trickery and dishonest means for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of revenue, to wit: income taxes and employment taxes.

### Manner and Means of the Conspiracy

(19)   Among the manner and means by which defendants ROBERT D. KAHRE, ALEXANDER C. LOGLIA, and, LORI A. KAHRE a.k.a. DONNA HALL, and their co-conspirators carried out the conspiracy were the following:

(a)   The defendants devised, marketed, promoted, directed, controlled, implemented, and used a payroll scheme that concealed and disguised the true amount of income received by the individuals who were paid through the payroll scheme, which included defendants ROBERT D. KAHRE, LORI A. KAHRE a.k.a DONNA HALL, ALEXANDER C. LOGLIA, the employees of defendant ROBERT D. KAHRE's companies, and the employees of the Other Contractors who used the Payroll Service. The payroll scheme worked as follows:

6

(I)    Each week prior to payday, the employees would inform defendant LORI A. KAHRE a.k.a DONNA HALL and others who worked in the Kahre payroll department of the amount of pay due to them;

(II)    The payroll department would then get the necessary amount of cash to fulfill that week's payroll requirements from a bank;

(III)   On payday, after the payroll department had received the cash from a bank, the Kahre payroll department would put the amount of cash due to each employee in an envelope;

(IV)   The employee would then go to the Kahre payroll offices;

(V)    At the payroll offices, two windows were installed from which the employees picked up their weekly pay;

(VI)   At the Kahre payroll offices, the employees would receive their pay: first, the employees were required to receive their income in the form of gold or silver coins, and then immediately exchange the coins for their envelope of cash at the second window;

(VII)  The coins that the employees received had face values expressed in dollars;

(VIII) The face values of the coins received and exchanged by the employees, however, were not the same as the amount of pay that the employee actually earned and received in the envelope of cash;

(IX)   Rather, the face amount of the coins was one-eighth of the amount of pay that the employee actually earned and received in the envelope of cash;

7

(X)    For example, if a worker earned $400.00 for his week's work and he received an envelope containing $400.00 in cash for his week's work, the face value of the gold and silver coins that he received and exchanged would only be $50.00;

(XI)    The defendants nevertheless counseled, advised and instructed the employees that the income received through the payroll scheme was not taxable or that they should falsely report to the Internal Revenue Service that they only earned income in the face amount of the gold and silver coins when and if they reported their income to the Internal Revenue Service.

(b)    The defendants paid each of the individuals participating in the payroll scheme in cash. Total cash wage payments of at least $25 Million were paid to employees of defendant ROBERT D. KAHRE's businesses. Total cash wage payments of at least $95 Million were paid to the employees of Other Contractors who used the Payroll Service;

(c)    The defendants did not report to the Internal Revenue Service any payments made to individuals they paid through the payroll scheme, either at the true amount or at the bogus amount, the bogus amount being the face value of the coin or coins exchanged for cash;

(d)    The defendants did not withhold, account for or pay over any federal income tax withholding, social security tax, or medicaid tax from the income of any individuals paid through the payroll scheme;

(e)    The defendants did not give the individuals who were paid through the payroll scheme any Forms W-2, Forms 1099, or any other annual accounting that reflected the amount of income that the individuals

8

received through the payroll scheme;

(f)    The defendants required the individuals paid through the payroll scheme to agree not to discuss the method of payment with any outside agencies;

(g)    The defendants created false and fraudulent invoices that concealed and misrepresented the Payroll Service expenses paid by the Other Contractors;

(h)    The defendants took steps to prevent the creation, retention, and dissemination of documents that might reveal the true and correct amount of income paid to defendant ROBERT D. KAHRE's employees and to the employees of the Other Contractors, by among other things, keeping a double set of books. The first set of books recorded the amount of cash payments made to individuals paid through the payroll scheme;

(i)    The defendants also created a second set of books in the form of internal payroll records that purportedly reflected the weekly amount of income received by the employees; these records falsely reported only one eighth the amount of income actually received by the individuals;

(j)    The defendants either did not file individual federal income tax returns with the Internal Revenue Service, although required to do so by law, or filed false and fraudulent individual income tax returns with the Internal Revenue Service, that failed to report any of the income received by the defendants from defendant ROBERT D. KAHRE's businesses;

(k)    The defendants used false names on payroll records to hide the fact that they were receiving income;

(l)    The defendants used nominees to hold legal title to assets owned by defendant ROBERT D. KAHRE in order to conceal these assets from the Internal Revenue Service.

9

## Overt Acts

(20)     In furtherance of the conspiracy and to effect the objects thereof, ROBERT D. KAHRE, ALEXANDER C. LOGLIA, and, LORI A. KAHRE a.k.a. DONNA HALL, and their co-conspirators, committed the following overt acts, among others, in the District of Nevada and elsewhere:

(a)     On or about February 16, 1997, LORI A. KAHRE a.k.a. DONNA HALL, using her legal name, intentionally filed or caused to be filed a false and fraudulent federal individual income tax return for the year of 1996 that omitted the income she received working for defendant ROBERT D. KAHRE;

(b)     From at least on or about January 1998 and continuing through May 2003, defendant LORI A. KAHRE a.k.a. DONNA HALL used the false name of DONNA HALL on the payroll records of defendant ROBERT D. KAHRE's businesses, instead of her legal name.

(c)     On or about February 22, 1998, LORI A. KAHRE a.k.a. DONNA HALL, using her legal name, intentionally filed or caused to be filed a false and fraudulent federal individual income tax return for the year of 1997 that omitted the income she received working for defendant ROBERT D. KAHRE;

(d)     On or about August 11, 1998, defendant ROBERT D. KAHRE caused legal title to a ranch located at 62436 Mink Lane, Summerville, Oregon, which defendant ROBERT D. KAHRE did in fact own, control and otherwise benefit from, to be placed in the name of a nominee;

(e)     On or about September 24, 1998, defendant ROBERT D. KAHRE and defendant LORI A. KAHRE a.k.a. DONNA HALL caused the

1   creation of a payroll record that reported that H.R. had been paid

2   $60.00, when in fact H.R. had been paid $480.00;

3   (f)   On or about January 5, 1999, defendant ROBERT D. KAHRE and

4        defendant LORI A. KAHRE a.k.a. DONNA HALL caused the

5        creation of a payroll record that reported that defendant

6        ALEXANDER C. LOGLIA had been paid $100.00, when in fact

7        defendant ALEXANDER C. LOGLIA had been paid $800.00;

8   (g)   On or about February 22, 1999, defendant ROBERT D. KAHRE

9        paid total cash wages of approximately $8,621.00 to the employees

10       of PAC and himself;

11  (h)   In or about April 1999, defendant ROBERT D. KAHRE caused the

12       filing of a false quarterly wage report with the Nevada

13       Employment Security Division that under-reported the true amount

14       of income paid to his employees and that failed to list the names

15       and social security numbers of his employees;

16  (I)   On or about April 15, 1999, defendant LORI A. KAHRE a.k.a.

17       DONNA HALL, using her legal name, intentionally filed or caused

18       to be filed a false and fraudulent federal individual income tax

19       return for the year of 1998 that omitted the income she received

20       working for defendant ROBERT D. KAHRE;

21  (j)   On or about May 19, 1999, defendant ROBERT D. KAHRE and

22       defendant LORI A. KAHRE a.k.a. DONNA HALL caused the

23       creation of a payroll record that reported that M.C. had been paid

24       $50.00, when in fact M.C. had been paid $400.00;

25  (k)   On or about August 30, 1999, defendant ROBERT D. KAHRE

26       paid total cash wages of approximately $4,723.00 to the employees

         of PP;

11

(l)     On or about September 2, 1999, defendant LORI A. KAHRE a.k.a. DONNA HALL created, or caused to be created, a false invoice for a contractor that used the Payroll Service, that listed the billed services as "LANDSCAPING" and "EXTRA MATERIALS", when in fact the invoice was for the Payroll Service not "LANDSCAPING" and the "EXTRA MATERIALS" was the fee charged by defendant ROBERT D. KAHRE;

(m)     In or about October 1999, defendant ROBERT D. KAHRE caused the filing of a false quarterly wage report with the Nevada Employment Security Division that under-reported the true amount of income paid to his employees and that failed to list the names and social security numbers of his employees;

(n)     In or about January 2000, defendant ROBERT D. KAHRE caused the filing of a false quarterly wage report with the Nevada Employment Security Division that under-reported the true amount of income paid to his employees and that failed to list the names and social security numbers of his employees;

(o)     On or about April 5, 2000, defendant ROBERT D. KAHRE paid total cash wages of $88,091.00 to the employees of WPD and himself;

(p)     On or about April 15, 2000, defendant LORI A. KAHRE a.k.a. DONNA HALL, using her legal name, intentionally filed or caused to be filed a false and fraudulent federal individual income tax return for the year of 1999 that omitted the income she received working for defendant ROBERT D. KAHRE;

(q)     On or about May 16, 2000, defendant ROBERT D. KAHRE and defendant LORI A. KAHRE a.k.a. DONNA HALL caused the

12

creation of a payroll record that reported the combined wages of R.P. and other PE employees for one week as $213.00, when in fact the combined wages of R.P. and the other PE employees for one week was $1,704.00;

(r)     On or about June 30, 2000, defendant ROBERT D. KAHRE put real property, which he in fact owned, controlled and otherwise benefitted from, located at 6385 North Grand Canyon Drive, Las Vegas, Nevada, in the name of a nominee, specifically defendant Lori A. Kahre a.k.a. DONNA HALL;

(s)     In or about July 2000, defendant ROBERT D. KAHRE caused the filing of a false quarterly wage report with the Nevada Employment Security Division that falsely under-reported the true amount of income paid to his employees and that failed to list the names and social security numbers of his employees;

(t)     On or about November 28, 2000, defendant ROBERT D. KAHRE paid total cash wages of $63,683.00 to the employees of WPD and himself;

(u)     On or about February 1, 2001, defendant ROBERT D. KAHRE paid total cash wages of $167,555.00 to the employees of WPD and himself;

(v)     On or about May 29, 2001, defendant LORI A. KAHRE a.k.a. DONNA HALL created, or caused to be created, a false invoice for a contractor that used the Payroll Service, that listed the billed services as "FRAMING," when in fact the invoice was for the Payroll Service not "FRAMING;"

13

(w)     On or about May 31, 2001, defendant ROBERT D. KAHRE cashed a check for $103,482.00 to obtain cash for use in the payroll scheme;

(x)     In or about July 2001, defendant ROBERT D. KAHRE caused the filing of a false quarterly wage report with the Nevada Employment Security Division that falsely under-reported the true amount of income paid to his employees and that failed to list the names and social security numbers of his employees;

(y)     On or about September 18, 2001, defendant ROBERT D. KAHRE put real property, which he in fact owned, controlled and otherwise benefitted from, located at 6295 North Grand Canyon Drive, Las Vegas, Nevada, in the name of a nominee, specifically defendant DANILLE D. CLINE;

(z)     On or about September 26, 2001, defendant ROBERT D. KAHRE paid total cash wages of $15,842.00 to the employees of PAC and himself;

(aa)    On or about December 21, 2001, defendant ROBERT D. KAHRE paid total cash wages of $14,034.00 to the employees of STM and himself;

(bb)    On or about January 30, 2002, defendant ROBERT D. KAHRE paid total cash wages of $5,815.00 to the employees of PE and himself;

(cc)    On or about April 9, 2002, defendant LORI A. KAHRE a.k.a. DONNA HALL ordered, or caused to be ordered, $161,447.00 in cash from a bank for purposes of the payroll scheme;

(dd)    On or about April 10, 2002, defendant ROBERT D. KAHRE cashed a check for $161,447.00 to obtain cash for use in the payroll

scheme;

(ee) On or about May 1, 2002, defendant ROBERT D. KAHRE required B.W., an employee of PAC, to sign a so-called "Private and Independent Contractor Agreement." That agreement, which purported to be, in part, an employment contract, provided no meaningful terms of employment and required that both defendant ROBERT D. KAHRE and B.W. not disclose the accounting and operation procedures of defendant ROBERT D. KAHRE's businesses;

(ff) On or about May 21, 2002, defendant ROBERT D. KAHRE paid total cash wages of $1,896.00 to the employees of PE and himself;

(gg) On or about June 4, 2002, defendant LORI A. KAHRE a.k.a. DONNA HALL ordered, or caused to be ordered, $12,166.00 in cash from a bank for purposes of the payroll scheme;

(hh) On or about June 6, 2002, defendant ROBERT D. KAHRE cashed a check for $12,166.00 to obtain cash for use in the payroll scheme;

(ii) In or about July 2002, defendant ROBERT D. KAHRE caused the filing of a false quarterly wage report with the Nevada Employment Security Division that falsely under-reported the true amount of income paid to his employees and that failed to list the names and social security numbers of his employees;

(jj) On or about November 25, 2002, defendant ROBERT D. KAHRE put real property, which he in fact owned, controlled and otherwise benefitted from, located at 5680 Ruffian Road, Las Vegas, Nevada, in the name of a nominee, specifically defendant DANILLE D. CLINE;

(kk)   On or about December 5, 2002, defendant ROBERT D. KAHRE paid total cash wages of $16,377.00 to the employees of PP and himself;

(ll)   On or about December 16, 2002, defendant ROBERT D. KAHRE did enter into a contract with Loomis Fargo for the weekly delivery of cash to his payroll offices; the cash was used in the payroll scheme;

(mm)  On or about January 16, 2003, defendant LORI A. KAHRE a.k.a. DONNA HALL ordered, or caused to be ordered, $146,000.00 in cash from a bank for purposes of the payroll scheme;

(nn)   On or about January 25, 2003, defendant ROBERT D. KAHRE paid total cash wages of $16,422.00 to the employees of UPC;

(oo)   On or about February 5, 2003, defendant LORI A. KAHRE a.k.a. DONNA HALL ordered, or caused to be ordered, $214,903.00 in cash from a bank for purposes of the payroll scheme;

(pp)   On or about February 6, 2003, defendant ROBERT D. KAHRE cashed a check for $214,903.00 to obtain cash for use in the payroll scheme;

(qq)   On or about April 9, 2003, defendant LORI A. KAHRE a.k.a. DONNA HALL ordered, or caused to be ordered, $211,391.00 in cash from a bank for purposes of the payroll scheme;

(rr)   On or about April 10, 2003, defendant ROBERT D. KAHRE cashed checks totaling $211,391.00 to obtain cash for use in the payroll scheme;

(ss)   On or about May 13, 2003, defendant ROBERT D. KAHRE paid total cash wages of $14,491.00 to the employees of PP and himself;

(tt)   On or about May 14, 2003, defendant LORI A. KAHRE a.k.a.

16

DONNA HALL ordered, or caused to be ordered, $244,939.00 in cash from a bank for purposes of the payroll scheme;

(uu) On or about May 15, 2003, defendant ROBERT D. KAHRE cashed checks totaling $244,939.00 to obtain cash for use in the payroll scheme;

(vv) In or about July 2003, defendant ROBERT D. KAHRE caused the filing of a false quarterly wage report with the Nevada Employment Security Division that falsely under-reported the true amount of income paid to his employees and that failed to list the names and social security numbers of his employees;

(ww) In or about July 2004, defendant ROBERT D. KAHRE caused the filing of a false quarterly wage report with the Nevada Employment Security Division that falsely under-reported the true amount of income paid to his employees and that failed to list the names and social security numbers of his employees;

(xx) On or about August 16, 2004, defendant ALEXANDER C. LOGLIA filed or caused to be filed a false and fraudulent federal individual income tax return for the year of 1997 that omitted the income he received working for defendant ROBERT D. KAHRE;

(yy) On or about August 27, 2004, defendant LORI A. KAHRE a.k.a. DONNA HALL caused a check in the amount of $9,500.00 to be issued to B.B. Defendant LORI A. KAHRE a.k.a. DONNA HALL caused the check's memo line to read "Petty Cash." At the direction of defendant LORI A. KAHRE a.k.a. DONNA HALL, B.B. cashed the check and brought the money back to defendant ROBERT D. KAHRE's business where it was used to pay the employees of the Other Contractors who used the Payroll Service;

17

(zz)   On or about October 22, 2004, defendant LORI A. KAHRE a.k.a. DONNA HALL caused a check in the amount of $9,000.00 to be issued to H.R. Defendant LORI A. KAHRE a.k.a. DONNA HALL caused the check's memo line to read "Petty Cash." At the direction of defendant LORI A. KAHRE a.k.a. DONNA HALL, H.R. cashed the check and brought the money back to defendant ROBERT D. KAHRE's business where it was used to pay the employees of the Other Contractors who used the Payroll Service;

(aaa)   On or about May 12, 2004, defendant ROBERT D. KAHRE put real property, which he in fact owned, controlled and otherwise benefitted from, located at 590 Sugar Leo Circle, St. George, Utah, in the name of a nominee, specifically defendant DANILLE D. CLINE;

(bbb)   In or about October 2005, defendant ROBERT D. KAHRE caused the filing of a false quarterly wage report with the Nevada Employment Security Division that falsely under-reported the true amount of income paid to his employees and that failed to list the names and social security numbers of his employees;

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FIFTY

Employment Tax Charges
(26 U.S.C. § 7202)

(21)   Paragraphs one, and six through eleven, are re-alleged and incorporated herein.

(22)   On or about the dates listed in the table below, in the Federal District of Nevada, defendant ROBERT D. KAHRE conducted and was the sole proprietor of the following businesses, among others: (1) PAC; (2) PE; and (3) WPD, all with their

principal place of business in Las Vegas, Nevada. Defendant ROBERT D. KAHRE, who had a duty to collect, truthfully account for, and pay over Federal Income Tax Withholdings (FITW) and Federal Insurance Contributions Act (FICA) taxes, willfully failed to collect and truthfully account for and pay over Federal Income Tax Withholdings (FITW) and Federal Insurance Contributions Act (FICA) taxes to the Internal Revenue Service, from taxable income paid to the employees of his sole proprietorships, as detailed in the table below. Each failure constitutes a separate violation (count) against ROBERT D. KAHRE.

| Count | Company | Offense Date | Approximate Total Taxable Wages | Approximate FICA not Withheld or Paid Over | Approximate FITW not Withheld or Paid Over | Approximate Total Unpaid Employment Taxes (FICA plus FITW) |
|---|---|---|---|---|---|---|
| 2 | PAC | 4-30-1999 | $100,049.50 | $15,307.57 | $28,013.86 | $43,321.43 |
| 3 | WPD | 4/30/1999 | $318,097.00 | $48,668.84 | $89,067.16 | $137,736.00 |
| 4 | PAC | 7-31-1999 | $123,633.50 | $18,915.93 | $34,617.38 | $53,533.31 |
| 5 | WPD | 7-31-1999 | $260,731.00 | $39,891.84 | $73,004.68 | $112,896.52 |
| 6 | PAC | 10-31-1999 | $122,176.75 | $18,693.04 | $34,209.49 | $52,902.53 |
| 7 | WPD | 10-31-1999 | $270,451.00 | $41,379.00 | $75,726.28 | $117,105.28 |
| 8 | PAC | 1-31-2000 | $154,749.00 | $23,676.60 | $43,329.72 | $67,006.32 |
| 9 | WPD | 1-31-2000 | $436,732.00 | $66,820.00 | $122,284.96 | $189,104.96 |
| 10 | PAC | 4-30-2000 | $136,230.00 | $20,843.19 | $38,144.40 | $58,987.59 |
| 11 | WPD | 4-30-2000 | $502,401.00 | $76,867.35 | $140,672.28 | $217,539.63 |
| 12 | PAC | 7-31-2000 | $152,376.50 | $23,313.60 | $42,665.42 | $65,979.02 |
| 13 | PE | 7-31-2000 | $10,909.00 | $1,669.08 | $3,054.52 | $4,723.60 |
| 14 | WPD | 7-31-2000 | $759,827.00 | $116,253.53 | $212,751.56 | $329,005.09 |
| 15 | PAC | 10-31-2000 | $166,103.50 | $25,413.84 | $46,508.98 | $71,922.82 |
| 16 | PE | 10-31-2000 | $30,948.00 | $4,735.04 | $8,665.44 | $13,400.48 |

| Count | Company | Offense Date | Approximate Total Taxable Wages | Approximate FICA not Withheld or Paid Over | Approximate FITW not Withheld or Paid Over | Approximate Total Unpaid Employment Taxes (FICA plus FITW) |
|---|---|---|---|---|---|---|
| 17 | WPD | 10/31/2000 | $747,241.00 | $114,327.87 | $209,227.48 | $323,555.35 |
| 18 | PAC | 1/31/2001 | $178,141.50 | $27,255.65 | $49,879.62 | $77,135.27 |
| 19 | PE | 1/31/2001 | $30,154.00 | $4,613.56 | $8,443.12 | $13,056.68 |
| 20 | WPD | 1/31/2001 | $789,944.00 | $120,861.43 | $221,184.32 | $342,045.75 |
| 21 | PAC | 4/30/2001 | $164,276.50 | $25,134.30 | $45,997.42 | $71,131.72 |
| 22 | PE | 4/30/2001 | $35,646.00 | $5,453.84 | $9,980.88 | $15,434.72 |
| 23 | WPD | 4/30/2001 | $1,632,031.00 | $249,700.74 | $456,968.68 | $706,669.42 |
| 24 | PAC | 7/31/2001 | $129,099.00 | $19,752.15 | $36,147.72 | $55,899.87 |
| 25 | PE | 7/31/2001 | $38,156.00 | $5,837.87 | $10,683.68 | $16,521.55 |
| 26 | WPD | 7/31/2001 | $1,160,187.00 | $177,508.61 | $324,852.36 | $502,360.97 |
| 27 | PAC | 10/31/2001 | $167,370.00 | $25,607.61 | $46,026.75 | $71,634.36 |
| 28 | PE | 10/31/2001 | $34,643.00 | $5,300.38 | $9,526.83 | $14,827.20 |
| 29 | WPD | 10/31/2001 | $1,060,015.00 | $162,182.30 | $291,504.13 | $453,686.42 |
| 30 | PAC | 1/31/2002 | $186,558.00 | $28,543.37 | $51,303.45 | $79,846.82 |
| 31 | PE | 1/31/2002 | $34,735.00 | $5,314.46 | $9,552.13 | $14,866.58 |
| 32 | WPD | 1/31/2002 | $1,426,440.00 | $218,245.32 | $392,271.00 | $610,516.32 |
| 33 | PAC | 4/30/2002 | $127,604.00 | $19,523.41 | $34,453.08 | $53,976.49 |
| 34 | PE | 4/30/2002 | $42,322.00 | $6,475.27 | $11,426.94 | $17,902.21 |
| 35 | WPD | 4/30/2002 | $1,166,266.00 | $178,438.70 | $314,891.82 | $493,330.52 |
| 36 | PAC | 7/31/2002 | $155,418.00 | $23,778.95 | $41,962.86 | $65,741.81 |
| 37 | PE | 7/31/2002 | $29,267.00 | $4,477.85 | $7,902.09 | $12,379.94 |
| 38 | WPD | 7/31/2002 | $1,184,124.00 | $181,170.97 | $319,713.48 | $500,884.45 |
| 39 | PAC | 10/31/2002 | $225,111.00 | $34,441.98 | $60,779.97 | $95,221.95 |
| 40 | PE | 10/31/2002 | $77,177.00 | $11,808.08 | $20,837.79 | $32,645.87 |
| 41 | WPD | 10/31/2002 | $1,389,588.00 | $212,606.96 | $375,188.76 | $587,795.72 |

| Count | Company | Offense Date | Approximate Total Taxable Wages | Approximate FICA not Withheld or Paid Over | Approximate FITW not Withheld or Paid Over | Approximate Total Unpaid Employment Taxes (FICA plus FITW) |
|---|---|---|---|---|---|---|
| 42 | PAC | 1/31/2003 | $254,486.00 | $38,936.36 | $68,711.22 | $107,647.58 |
| 43 | PE | 1/31/2003 | $98,416.00 | $15,057.65 | $26,572.32 | $41,629.97 |
| 44 | WPD | 1/31/2003 | $1,576,231.00 | $241,163.34 | $425,582.37 | $666,745.71 |
| 45 | PAC | 4/30/2003 | $177,316.00 | $27,129.35 | $47,875.32 | $75,004.67 |
| 46 | PE | 4/30/2003 | $78,815.00 | $12,058.70 | $21,280.05 | $33,338.75 |
| 47 | WPD | 4/30/2003 | $971,234.00 | $148,598.80 | $262,233.18 | $410,831.98 |
| 48 | PAC | 7/31/2003 | $123,937.00 | $18,962.36 | $33,462.99 | $52,425.35 |
| 49 | PE | 7/31/2003 | $42,807.00 | $6,549.47 | $11,557.89 | $18,107.36 |
| 50 | WPD | 7/31/2003 | $383,985.00 | $58,749.71 | $103,675.95 | $162,425.66 |

All in violation of Title 26, United States Code, Section 7202.

## COUNT FIFTY-ONE

Attempts to Interfere with Administration of Internal Revenue Law
(26 U.S.C. § 7212(a))

(23)   Paragraphs one, and four through sixteen, are re-alleged and incorporated herein.

(24)   On or about February 1, 1997, and continuing thereafter up to and including at least May 2007, in the Federal District of Nevada, defendant ROBERT D. KAHRE, defendant LORI A. KAHRE a.k.a. DONNA HALL, and defendant ALEXANDER C. LOGLIA, did corruptly endeavor to obstruct or impede the due administration of the internal revenue laws by designing, promoting and utilizing a payroll scheme, intended to impair and impede the Internal Revenue Service's ability

21

---

to assess and collect income and employment taxes, to wit: by paying workers in cash, attempting to conceal said payments, by intentionally recording understated payments made to workers, and by failing to file the required information returns with the Internal Revenue Service.

All in violation of Title 26, United States Code, Section 7212(a) and Title 18, United States Code, Section 2.

**COUNTS FIFTY-TWO THROUGH FIFTY-FIVE**
Attempt to Evade or Defeat Tax
(26 U.S.C. § 7201)

(25)   Paragraphs one, and six through sixteen are re-alleged and incorporated herein.

(26)   That during the calendar years 1999, 2000, 2001 and 2002, defendant ROBERT D. KAHRE, had and received taxable income in the amounts identified in the table below; that upon said taxable income there was owing to the United States of America an income tax in the amounts identified in the table below; that well-knowing and believing the foregoing facts, defendant ROBERT D. KAHRE on or about the dates listed in the table below and continuing through at least the date of the indictment, in the District of Nevada, did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for said calendar years by failing to make an income tax return on or before the applicable

statutory due date, as required by law, to any proper officer of the Internal Revenue

Service, by failing to pay to the Internal Revenue Service said income tax, and by

committing the following affirmative acts of evasion, among others: being paid in cash,

attempting to conceal his true and correct income, placing funds and property in the

names of nominees, and concealing and attempting to conceal from all proper officers

of the United States of America his true and correct income.

| Count | Year | Offense Date | Approximate Taxable Income | Approximate Tax Due and Owing |
|-------|------|-------------|----------------------------|-------------------------------|
| 52 | 1999 | April 15, 2000 | $246,763.00 | $90,616.00 |
| 53 | 2000 | April 15, 2001 | $589,174.00 | $234,089.00 |
| 54 | 2001 | April 15, 2002 | $639,084.00 | $251,714.00 |
| 55 | 2002 | April 15, 2003 | $478,151.00 | $182,169.00 |

All in violation of Title 26, United States Code, Section 7201.

## COUNT FIFTY-SIX
Attempts to Interfere with Administration of Internal Revenue Law
(26 U.S.C. § 7212(a))

(27)   On or about April 15, 1993, and continuing thereafter up to and including

the date of this indictment, in the Federal District of Nevada and elsewhere, defendants

ROBERT D. KAHRE, THOMAS R. BROWNE, DANILLE D. CLINE, and LORI A.

KAHRE a.k.a. DONNA HALL, did corruptly endeavor to obstruct or impede the due

administration of the internal revenue laws by concealing and attempting to conceal

23

from the Internal Revenue Service, the nature and extent of defendant ROBERT D.

KAHRE's assets, and the location thereof by placing funds and property in the names

of nominees.

(28)   The means by which the defendants did corruptly endeavor to obstruct the

administration of the internal revenue laws include, but are not limited to:

(a)   On or about August 11, 1998, and continuing through the date of

this indictment, defendant ROBERT D. KAHRE caused legal title to a

ranch located at 62436 Mink Lane, Summerville, Oregon, which

defendant ROBERT D. KAHRE did in fact own, control and otherwise

benefit from, to be held in the name of a nominee.

(b)   On or about June 30, 2000, defendant ROBERT D. KAHRE,

defendant LORI A. KAHRE a.k.a. DONNA HALL, and defendant

THOMAS R. BROWNE caused legal title to real property located at 6385

North Grand Canyon Drive, Las Vegas, Nevada, which defendant

ROBERT D. KAHRE did in fact own, control and otherwise benefit from,

to be placed in the name of a nominee, specifically defendant LORI A.

KAHRE a.k.a. DONNA HALL.   From thereafter until on or about

October 17, 2002, defendant ROBERT D. KAHRE and defendant LORI

A. KAHRE a.k.a. DONNA HALL maintained legal title to said property

24

in the name of nominee and defendant LORI A. KAHRE a.k.a. DONNA

HALL.

(c)     On or about September 18, 2001, defendant ROBERT D. KAHRE,

defendant DANILLE D. CLINE, and defendant THOMAS R. BROWNE

caused legal title to real property located at 6295 North Grand Canyon

Drive, Las Vegas, Nevada, which defendant ROBERT D. KAHRE did in

fact own, control and otherwise benefit from, to be placed in the name of

a nominee, specifically defendant DANILLE D. CLINE.

(d)     On or about November 25, 2002, defendant ROBERT D. KAHRE,

defendant DANILLE D. CLINE, and defendant THOMAS R. BROWNE,

caused legal title to real property located at 5680 Ruffian Road, Las

Vegas, Nevada, which defendant ROBERT D. KAHRE did in fact own,

control and otherwise benefit from, to be placed in the name of a

nominee, specifically defendant DANILLE D. CLINE.

(e)     On or about May 12, 2004, defendant ROBERT D. KAHRE and

defendant DANILLE D. CLINE, caused legal title to real property located

at 590 Sugar Leo Circle, St. George, Utah, which defendant ROBERT D.

KAHRE did in fact own, control and otherwise benefit from, to be placed

in the name of a nominee, specifically defendant DANILLE D. CLINE.

All in violation of Title 26, United States Code, Section 7212(a) and Title 18

United States Code, Section 2.

### COUNT FIFTY-SEVEN
False Statements to a Bank
(18 U.S.C. § 1014)

(29)   Paragraph four is re-alleged and incorporated herein.

(30)   From on or about May 18, 2000, through on or about June 26, 2000, in the

Federal District of Nevada, defendant LORI A. KAHRE a.k.a. DONNA HALL

knowingly made a material false statement and report, and willfully overvalued

property and security for the purpose of influencing the action of Bank of America,

N.A., an institution the accounts of which were insured by the Federal Deposit

Insurance Corporation, in connection with an application and loan for the purchase of

real property located at 6385 North Grand Canyon Drive, in that the defendant

represented that she was the owner/operator of Wright Painting; that her gross monthly

income was $13,500.00; that her net worth of businesses owned was $700,000.00; and,

that her husband signed a quitclaim deed releasing any interest he may have had in the

property located at 6385 North Grand Canyon Drive, when in truth and in fact, as the

defendant well knew, she was not the owner/operator of Wright Painting; that her true

gross monthly income was approximately $2,650.00; that she had no ownership

interest in Wright Painting; and, that her husband did not sign a quitclaim deed

releasing any interest he may have had in the property located at 6385 North Grand

Canyon Drive.

All in violation of Title 18, United States Code, Section 1014.

## COUNT FIFTY-EIGHT
Wire Fraud
(18 U.S.C. § 1343)

### Introduction

(31)   At all times relevant to this indictment, First Source Financial USA was

a mortgage brokerage business located in Henderson, Nevada.

(32)   At all times relevant to this indictment, Chase Manhattan Mortgage

Corporation was a mortgage lender located in Diamond Bar, California.

(33)   At all times relevant to this indictment, defendant THOMAS R.

BROWNE was a commissioned loan officer working for First Source Financial USA.

(34)   At all times relevant to this indictment, defendant DANILLE D. CLINE

was a resident of Las Vegas, Nevada, and the loan applicant and nominee purchaser

of real estate located at 6295 North Grand Canyon Drive, Las Vegas, Nevada.

(35)   During the period from on or about August 23, 2001, to September 24,

2001, in the State and Federal District of Nevada, defendants THOMAS R. BROWNE

and DANILLE D. CLINE did knowingly and intentionally devise and attempt to devise

a scheme and artifice to defraud Chase Manhattan Mortgage Corporation, and to obtain

moneys, funds, and credits owned by and under the custody and control of Chase

Manhattan Mortgage Corporation by means of materially false and fraudulent

pretenses, representations and promises, to wit: the defendants concealed the true

creditworthiness of the loan applicant when they caused materially false information

to be included in loan application papers submitted for the financing of residential

property located at 6295 North Grand Canyon Drive, Las Vegas, Nevada.

<u>The Scheme and Artifice To Defraud</u>

(36)   It was part of the scheme and artifice to defraud that defendants THOMAS

R. BROWNE and DANILLE D. CLINE needed to conceal the true employment history

and creditworthiness of defendant DANILLE D. CLINE, the prospective nominee

buyer of the above-referenced residential property, in order to increase the probability

of defendant DANILLE D. CLINE obtaining financing with Chase Manhattan

Mortgage Corporation.

(37)   It was a further part of the scheme and artifice to defraud that defendants

THOMAS R. BROWNE and DANILLE D. CLINE artificially and fraudulently

inflated the creditworthiness of defendant DANILLE D. CLINE by fraudulently listing

her as a three year employee of Browne, Inc., a company owned by defendant

THOMAS R. BROWNE.

28

(38)  It was a further part of the scheme and artifice to defraud that defendants THOMAS R. BROWNE and DANILLE D. CLINE fraudulently represented to the lender, Chase Manhattan Mortgage Corporation, that defendant DANILLE D. CLINE was employed by Browne, Inc., as an Asset Management Consultant earning gross monthly income of $8,400.00.

(39)  It was a further part of the scheme and artifice to defraud that defendants THOMAS R. BROWNE and DANILLE D. CLINE concealed material information from Chase Manhattan Mortgage Corporation in order to fraudulently inflate the true creditworthiness of defendant DANILLE D. CLINE in an effort to maximize the probability that she would receive loan approval.  Defendant THOMAS R. BROWNE additionally received a commission following the closing of the residential loan in question.

<u>The Wire Communication</u>

(40)  On or about September 18, 2001, in the State and Federal District of Nevada, the defendants THOMAS R. BROWNE and DANILLE D. CLINE, for the purpose of executing the herein-described scheme to defraud, did knowingly cause to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals and sounds, that is: a wire transfer of $279,523.48 from Chase

Manhattan Mortgage Corporation in Diamond Bar, California, to Bank West of Nevada, in Las Vegas, Nevada.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FIFTY-NINE
Wire Fraud
(18 U.S.C. § 1343)

### Introduction

(41)   At all times relevant to this indictment, Desert Funding was a mortgage brokerage business located in Las Vegas, Nevada.

(42)   At all times relevant to this indictment, Greenpoint Mortgage Funding, Inc., was a mortgage lender located in Phoenix, Arizona.

(43)   At all times relevant to this indictment, defendant THOMAS R. BROWNE was a commissioned loan officer working for Desert Funding.

(44)   At all times relevant, defendant DANILLE D. CLINE was a resident of Las Vegas, Nevada, and the loan applicant and nominee purchaser of real estate located at 5680 Ruffian Road, Las Vegas, Nevada.

(45)   At all times relevant to this indictment, defendant ROBERT D. KAHRE was a resident of Las Vegas, Nevada, and the boyfriend of defendant DANILLE D. CLINE.

30

(46)   At all times relevant to this indictment, The Coin Shop, Inc., was a dealer in gold and silver coins located in Farmington, New Mexico.

(47)   During the period from on or about October 15, 2002 through November 22, 2002, in the Federal District of Nevada, defendants THOMAS R. BROWNE, DANILLE D. CLINE and ROBERT D. KAHRE did knowingly and intentionally devise and attempt to devise a scheme and artifice to defraud Greenpoint Mortgage Funding, Inc., and to obtain moneys, funds, and credits owned by and under the custody and control of Greenpoint Mortgage Funding, Inc., by means of materially false and fraudulent pretenses, representations and promises, to wit: the defendants concealed the true creditworthiness of the loan applicant when they caused materially false information to be included in loan application papers submitted for the financing of residential property located at 5680 Ruffian Road, Las Vegas, Nevada.

### The Scheme and Artifice to Defraud

(48)   It was part of the scheme and artifice to defraud that defendants THOMAS R. BROWNE and DANILLE D. CLINE needed to conceal the true employment history and creditworthiness of defendant DANILLE D. CLINE, the prospective nominee buyer of the above-referenced residential property, in order to increase the probability of defendant DANILLE D. CLINE obtaining financing with Greenpoint Mortgage Funding, Inc.

31

(49)   It was a further part of the scheme and artifice to defraud that defendants THOMAS R. BROWNE and DANILLE D. CLINE artificially and fraudulently inflated the creditworthiness of defendant DANILLE D. CLINE by fraudulently listing her as a four-year employee of Browne, Inc., a company owned by defendant THOMAS R. BROWNE.

(50)   It was a further part of the scheme and artifice to defraud that defendants THOMAS R. BROWNE and DANILLE D. CLINE fraudulently represented to the lender, Greenpoint Mortgage Funding, Inc., that defendant DANILLE D. CLINE was employed by Browne, Inc., as an "Account Rep" earning gross monthly income of $25,000.00.

(51)   It was a further part of the scheme and artifice to defraud that defendants THOMAS R. BROWNE and DANILLE D. CLINE concealed material information from Greenpoint Mortgage Funding, Inc., in order to fraudulently inflate the true creditworthiness of defendant DANILLE D. CLINE in an effort to maximize the probability that she would receive loan approval.  Defendant THOMAS R. BROWNE additionally received a commission following the closing of the residential loan in question.

(52)   It was a further part of the scheme and artifice to defraud that defendants DANILLE D. CLINE and ROBERT D. KAHRE fraudulently represented to the lender,

32

Greenpoint Mortgage Funding, Inc., that defendant DANILLE D. CLINE had purchased $300,500.00 worth of gold coins from The Coin Shop, Inc., located in Farmington, New Mexico, when in fact no such transaction occurred.

(53) It was a further part of the scheme and artifice to defraud that defendants DANILLE D. CLINE and ROBERT D. KAHRE fraudulently represented to the lender, Greenpoint Mortgage Funding, Inc., that defendant DANILLE D. CLINE sold $104,280 worth of gold coins to The Coin Shop, Inc., located in Farmington, New Mexico, when in fact no such transaction occurred.

The Wire Communication

(54) On or about November 22, 2002, in the State and Federal District of Nevada, the defendants THOMAS R. BROWNE, DANILLE D. CLINE and ROBERT D. KAHRE, for the purpose of executing the herein-described scheme to defraud, did knowingly cause to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals and sounds, that is: a wire transfer of $737,627.76 from Bank of New York, New York, New York, to Fidelity National Title Agency, in Las Vegas, Nevada.

All in violation of Title 18, United States Code, Sections 1343 and 2.

33

## COUNT SIXTY
Wire Fraud
(18 U.S.C. § 1343)

### Introduction

(55)   At all times relevant to this indictment, Desert Valley Mortgage was a mortgage brokerage business located in Saint George, Utah, with branch offices located in Nevada.

(56)   At all times relevant to this indictment, Countrywide Home Loans, Inc., America's Wholesale Lender, was a mortgage lender located in Calabasas, California, with branch offices located in Nevada.

(57)   At all times relevant to this indictment, defendant DANILLE D. CLINE was a resident of Las Vegas, Nevada, and the loan applicant and nominee purchaser of real estate located at 590 Sugar Leo Cir., St. George, Utah.

(58)   During the period from on or about March 15, 2004, to May 14, 2004, in the Federal District of Nevada, defendant DANILLE D. CLINE did knowingly and intentionally devise and attempt to devise a scheme and artifice to defraud Countrywide Home Loans, and to obtain moneys, funds, and credits owned by and under the custody and control of Countrywide Home Loans by means of materially false and fraudulent pretenses, representations and promises, to wit: the defendant concealed the true creditworthiness of herself when she caused materially false

34

information to be included in her loan application papers submitted for the financing of residential property located at 590 Sugar Leo Cir., St. George, Utah.

<u>The Scheme and Artifice to Defraud</u>

(59) It was part of the scheme and artifice to defraud that defendant DANILLE D. CLINE needed to conceal the true employment history and creditworthiness of herself, the prospective nominee buyer of the above-referenced residential property, in order to increase the probability of defendant DANILLE D. CLINE obtaining financing with Countrywide Home Loans.

(60) It was a further part of the scheme and artifice to defraud that defendant DANILLE D. CLINE artificially and fraudulently inflated her creditworthiness by fraudulently listing herself as a two year employee of defendant ROBERT D. KAHRE, d.b.a. Sherman Granite and Tile.

(61) It was a further part of the scheme and artifice to defraud that defendant DANILLE D. CLINE fraudulently represented to the lender, Countrywide Home Loans, that she was employed by defendant ROBERT D. KAHRE, d.b.a. Sherman Granite and Tile, as an Executive Assistant earning gross monthly income of $10,000.

(62) It was a further part of the scheme and artifice to defraud that defendant DANILLE D. CLINE concealed material information from Countrywide Home Loans

in order to fraudulently inflate her true creditworthiness in an effort to maximize the probability that she would receive loan approval.

<u>The Wire Communication</u>

(63)   On or about May 14, 2004, in the State and Federal District of Nevada, the defendant DANILLE D. CLINE, for the purpose of executing the herein-described scheme to defraud, did knowingly cause to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals and sounds, that is a wire transfer of $622,595.46 from The Bank of New York, New York, New York, to Zions Bank, in St. George, Utah.

All in violation of Title 18, United States Code, Sections 1343 and 2.

**COUNT SIXTY-ONE**
Attempt to Evade or Defeat Tax
(26 U.S.C. § 7201)

(64)   Paragraph four is re-alleged and incorporated herein.

(65)   That on or about April 15, 1999, and continuing at least through May 29, 2003, in the District of Nevada, defendant LORI A. KAHRE a.k.a DONNA HALL, who during the calendar year 1998 was married, did willfully attempt to evade and defeat a large part of the income tax due and owing by her and her spouse to the United States of America for the calendar year 1998, by, among other things, agreeing with her employer to hide from the Internal Revenue Service the fact that she was receiving

income and being paid in cash, engaging in a series of payroll transactions that concealed the true and correct amount of income earned by her, using a false name on payroll records, and preparing and causing to be prepared and filed a false and fraudulent 1998 joint U.S. Individual Income Tax Return, Form 1040, on behalf of herself and her spouse, which was filed with the Internal Revenue Service, wherein their joint taxable income for said calendar year was understated, whereas, as she then and there well knew and believed, their joint taxable income for the said calendar year was in excess of what was reported, upon which said joint taxable income there was owing to the United States of America additional income tax.

All in violation of Title 26, United States Code, Section 7201.

## COUNT SIXTY-TWO
Attempt to Evade or Defeat Tax
(26 U.S.C. § 7201)

(66)   Paragraph four is re-alleged and incorporated herein.

(67)   That on or about April 15, 2000 and continuing at least through May 29, 2003, in the District of Nevada, defendant LORI A. KAHRE a.k.a DONNA HALL, who during the calendar year 1999 was married, did willfully attempt to evade and defeat a large part of the income tax due and owing by her and her spouse to the United States of America for the calendar year 1999, by, among other things, agreeing with

37

her employer to hide from the Internal Revenue Service the fact that she was receiving

and being paid in cash, engaging in a series of payroll transactions that concealed the

true and correct amount of income earned by her, using a false name on payroll

records, and preparing and causing to be prepared and filed a false and fraudulent 1999

joint U.S. Individual Income Tax Return, Form 1040, on behalf of herself and her

spouse, which was filed with the Internal Revenue Service, wherein their joint taxable

income for said calendar year was understated, whereas, as she then and there well

knew and believed, their joint taxable income for the said calendar year was in excess

of what was reported, upon which said joint taxable income there was owing to the

United States of America additional income tax.

All in violation of Title 26, United States Code, Section 7201.

## COUNTS SIXTY-THREE THROUGH SIXTY-EIGHT
Attempt to Evade or Defeat Tax
(26 U.S.C. § 7201)

(68)   Paragraph four is re-alleged and incorporated herein.

(69)   That during the calendar years 2000, 2001, 2002, 2003, 2004 and 2005,

defendant LORI A. KAHRE a.k.a. DONNA HALL, had and received taxable income;

that upon said taxable income there was owing to the United States of America an

income tax; that well-knowing and believing the foregoing facts, defendant LORI A.

KAHRE a.k.a. DONNA HALL, on or about the dates listed below and continuing

through at least May 2007, in the District of Nevada, did willfully attempt to evade and defeat the said income tax due and owing by her to the United States of America for said calendar years by failing to make an income tax return on or before the applicable statutory due date, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal Revenue Service said income tax, and by committing the following affirmative acts of evasion, among others: agreeing with her employer to hide her income from the Internal Revenue Service, being paid in cash, engaging in a series of payroll transactions that concealed the true and correct amount of income earned by her, filing false federal income tax returns, using a false name on payroll records, and concealing and attempting to conceal from all proper officers of the United States of America her true and correct income.

| Count | Year | Offense Date | Approximate Taxable Income |
|-------|------|--------------|----------------------------|
| 63 | 2000 | April 15, 2001 | $24,600.00 |
| 64 | 2001 | April 15, 2002 | $23,750.00 |
| 65 | 2002 | April 15, 2003 | $23,500.00 |
| 66 | 2003 | April 15, 2004 | $25,780.00 |
| 67 | 2004 | April 15, 2005 | $36,100.00 |
| 68 | 2005 | April 15, 2006 | $37,100.00 |

All in violation of Title 26, United States Code, Section 7201.

## COUNT SIXTY-NINE
Attempt to Evade or Defeat Tax
(26 U.S.C. § 7201)

(70)  Paragraph five is re-alleged and incorporated herein.

(71)  From on or about October 10, 1997, to on or about May 20, 2003, in the Federal District of Nevada, defendant ALEXANDER C. LOGLIA, knowing that he owed federal income tax, did willfully attempt to evade and defeat the payment of the income tax due and owing by him to the United States of America for the calendar year 1993, in the amount of $4,383, by concealing and attempting to conceal from the Internal Revenue Service his income earned for the years 1997 through 2003, by among other things, conducting employment payroll transactions in cash, agreeing with his employer to hide his income from the Internal Revenue Service, and filing a frivolous U.S. Individual Income Tax Return for the calendar year 1993 that reported zero income.

All in violation of Title 26, United States Code, Section 7201.

## COUNT SEVENTY
Attempt to Evade or Defeat Tax
(26 U.S.C. § 7201)

(72)  Paragraph five is re-alleged and incorporated herein.

(73)  From on or about October 10, 1997, to on or about May 20, 2003, in the Federal District of Nevada, defendant ALEXANDER C. LOGLIA, knowing that he

40

owed federal income tax, did willfully attempt to evade and defeat the payment of the

income tax due and owing by him to the United States of America for the calendar year

1994, in the amount of $6,796, by concealing and attempting to conceal from the

Internal Revenue Service his income earned for the years 1997 through 2003, by

among other things, conducting employment payroll transactions in cash, agreeing with

his employer to hide his income from the Internal Revenue Service, and filing a

frivolous U.S. Individual Income Tax Return for the calendar year 1994 that reported

zero income.

All in violation of Title 26, United States Code, Section 7201.

### COUNT SEVENTY-ONE
Attempt to Evade or Defeat Tax
(26 U.S.C. § 7201)

(74)   Paragraph five is re-alleged and incorporated herein.

(75)   From on or about October 10, 1997, to on or about May 20, 2003, in the

Federal District of Nevada, defendant ALEXANDER C. LOGLIA, knowing that he

owed federal income tax, did willfully attempt to evade and defeat the payment of the

income tax due and owing by him to the United States of America for the calendar year

1995, in the amount of $8,640, by concealing and attempting to conceal from the

Internal Revenue Service his income earned for the years 1997 through 2003, by

among other things, conducting employment payroll transactions in cash, agreeing with

41

his employer to hide his income from the Internal Revenue Service, and filing a frivolous U.S. Individual Income Tax Return for the calendar year 1995 that reported zero income.

All in violation of Title 26, United States Code, Section 7201.

## COUNT SEVENTY-TWO
Attempt to Evade or Defeat Tax
(26 U.S.C. § 7201)

(76)  Paragraph five is re-alleged and incorporated herein.

(77)  From on or about October 10, 1997, to on or about May 20, 2003, in the Federal District of Nevada, defendant ALEXANDER C. LOGLIA, knowing that he owed federal income tax, did willfully attempt to evade and defeat the payment of the income tax due and owing by him to the United States of America for the calendar year 1996, in the amount of $8,699, by concealing and attempting to conceal from the Internal Revenue Service his income earned for the years 1997 through 2003, by among other things, conducting employment payroll transactions in cash, agreeing with his employer to hide his income from the Internal Revenue Service, and filing a frivolous U.S. Individual Income Tax Return for the calendar year 1996 that reported zero income.

All in violation of Title 26, United States Code, Section 7201.

## COUNT SEVENTY-THREE
Filing A False Income Tax Return
(26 U.S.C. § 7206(1))

(78)    Paragraph five is re-alleged and incorporated herein.

(79)    On or about August 11, 2004, in the Federal District of Nevada, defendant ALEXANDER C. LOGLIA, did willfully make and subscribe a 1997 U.S. Individual Income Tax Return, Form 1040, which was verified by a written declaration that it was made under the penalties of perjury and was received by the Internal Revenue Service, at Fresno, California, which said 1997 U.S. Individual Income Tax Return, Form 1040, defendant ALEXANDER C. LOGLIA did not believe to be true and correct as to every material matter in that the said 1997 U.S. Individual Income Tax Return, Form 1040, reported income on line 7, of $43,267.00, whereas, as he then and there well knew and believed, his income on Form 1040, line 7, should have been in truth and in fact at least $50,923.00.

All in violation of Title 26, United States Code, Section 7206(1).

## COUNTS SEVENTY-FOUR THROUGH SEVENTY-NINE
Attempt to Evade or Defeat Tax
(26 U.S.C. § 7201)

(80)    Paragraph five is re-alleged and incorporated herein.

(81)    That during the calendar years 1998, 1999, 2000, 2001, 2002 and 2003, defendant ALEXANDER C. LOGLIA, had and received taxable income; that upon

43

said taxable income there was owing to the United States of America an income tax; that well-knowing and believing the foregoing facts, defendant ALEXANDER C. LOGLIA, on or about the dates listed in the table below and continuing through at least May 29, 2003, in the District of Nevada, did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for said calendar years by failing to make an income tax return on or before the applicable statutory due date, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal Revenue Service said income tax, and by committing the following affirmative acts of evasion, among others: agreeing with his employer to hide his income from the Internal Revenue Service, being paid in cash, engaging in a series of payroll transactions that concealed the true and correct amount of income earned by him, and concealing and attempting to conceal from all proper officers of the United States of America his true and correct income.

. . .

. . .

. . .

| Count | Year | Offense Date | Approximate Taxable Income |
|-------|------|--------------|----------------------------|
| 74 | 1998 | April 15, 1999 | $31,946.00 |
| 75 | 1999 | April 15, 2000 | $47,694.00 |
| 76 | 2000 | April 15, 2001 | $53,073.00 |
| 77 | 2001 | April 15, 2002 | $55,042.00 |
| 78 | 2002 | April 15, 2003 | $64,724.00 |
| 79 | 2003 | April 15, 2004 | $22,003.00 |

All in violation of Title 26, United States Code, Section 7201.

**DATED:** this $20\frac{th}{}$ day of November, 2007.

**A TRUE BILL:**

_____
/S/
FOREPERSON OF THE GRAND JURY

STEVEN W. MYHRE
United States Attorney

J. GREGORY DAMM
Assistant United States Attorney

JARED E. DWYER
Trial Attorney
United States Department of Justice