RECEIVED & FILED

APR 30  11 46 AM 12

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Home," *et al.*,<br><br>        Reorganized Debtors.<br><br>JAMES M. RHODES,<br><br>        Appellant,<br><br>v.<br><br>THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC, *et al.*,<br><br>        Appellee. | 2:11-CV-01705-PMP-GWF<br><br>Chapter 11<br><br>Jointly Administered Under<br>Case No. 09-14814 LBR<br><br>OPINION |

Presently before the Court is Appellant James M. Rhodes' appeal of the United States Bankruptcy Court's Order Denying Appellant's Motion to Quash Rule 2004 Examination and Corresponding Subpoenas.

**I. BACKGROUND**

Appellant James M. Rhodes ("Rhodes") is founder and president of The Rhodes Companies, LLC and its affiliated companies. (Case No. 09-BK-14814-LBR, Bankr. Doc. #95.) On March 31 and April 1, 2009, The Rhodes Companies LLC and its affiliated companies (collectively "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada. (Appellant's App. ("App.") at 2; Appellee's App. ("Suppl. App.") at 265.) On March 12,

2010, the Bankruptcy Court entered an order confirming the Third Amended Modified Plan of Reorganization. (App. at 2.) The Debtors' Reorganization Plan created the Litigation Trust (the "Trust") and tasked the Trust with investigating claims belonging to the Debtors, including claims against Rhodes and several related entities (the "Rhodes Entities"). (Suppl. App. at 284-85.) The Trust suspected numerous wrongful transfers of Debtors' funds to the Rhodes Entities or to third parties for the benefit of Rhodes and/or the Rhodes Entities. (App. at 70-71.) The Trust believed that the transfers were made to (1) pay Rhodes' personal taxes, (2) pay Rhodes' personal credit card bills, (3) pay legal and professional services that did not benefit the Debtors, (4) obtain real property for the Rhodes Entities, and (5) remove encumbrances on real property for the Rhodes Entities. (Id. at 86.)

On August 29 and 30, 2011, the Trust filed four motions seeking orders granting examinations of representatives of several third parties pursuant to Federal Rule of Bankruptcy Procedure 2004. (Id. at 102-07, 110-15, 118-23, 126-31.) On August 30 and 31, 2011, the Bankruptcy Court granted the motions. (Id. at 108-09, 116-17, 124-25, 132-33.) The subpoenas were directed at third parties that the Trust believed received funds from the Debtors, namely law firms, financial institutions, title companies, and other professionals. (Id. at 86.) Although some of the subpoenaed parties expressed concerns regarding the subpoenas, the Trust resolved such concerns with the subpoenaed parties through the meet and confer process. (Id. at 86-87.)

On September 14, 2011, Rhodes filed a Motion to Quash Orders of Rule 2004 Examination and Corresponding Subpoenas and/or for Protective Orders ("Motion to Quash"). (Id. at 7-65.) Rhodes requested that the Bankruptcy Court quash all the subpoenas under Federal Rule of Civil Procedure ("FRCP") 45(c)(3)(A)(iii)-(iv), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9016, because the subpoenas required disclosure of privileged information and subjected the

subpoenaed parties to an undue burden. (Id. at 19-22.) Alternatively, Rhodes requested that the Bankruptcy Court limit the subpoenas by issuing protective orders under FRCP 26(c), which allows the court to issue an order protecting a party or person from undue burden. (Id. at 7-8.) Rhodes argued that "[t]he scope of the Litigation Trust's discovery goes well beyond the permissible bounds of Rule 2004 and calls for vast amounts of information—largely irrelevant, privileged, confidential, and personally identifiable information—for a time period well outside the scope of reasonableness." (Id. at 8.)

On September 23, 2011, the Trust filed a Response to the Motion to Quash. (Id. at 68-90.) At a status conference held on September 27, 2011, the Bankruptcy Court asked counsel for Rhodes, "Under the discovery rules, you're supposed to confer in good faith before you bring motions to quash. Did you do that?" (Id. at 222.) Counsel responded, "Yes, we did. We did it on a call." (Id.) After the status conference, Rhodes filed a Reply in support of the Motion to Quash on September 30, 2011. (Id. at 91-98.) At the hearing on the Motion to Quash on October 5, 2011, the Bankruptcy Court asked counsel for Rhodes, "So what was the context of your conversation before the motion was filed?" (Id. at 229.) Counsel responded, "It was a very brief conversation that we objected and were going to file the motion to quash." (Id.) The Court replied, "Rule 7037 says, 'Discovery motions will not be considered unless a statement of moving counsel is attached certifying that after consultation or effort to do so the parties have been unable to resolve the matter without Court action.'. . . [W]here's the certificate about your consultation?" (Id. at 229-30.) Counsel explained, "That we failed to include." (Id. at 230.)

The Bankruptcy Court denied the motion because (1) the subpoenas were an appropriate method of investigating potential fraudulent transfer claims, (2) Rhodes lacked standing to challenge the subpoenas as unduly burdensome because he was not a party to the subpoenas, and (3) Rhodes did not confer with the Trust as required by the federal and local discovery rules and thus did not make a good faith attempt to resolve the issue before

filing the Motion to Quash. (Id. at 245-46.) The Court entered its Order Denying the Motion to Quash on October 12, 2011. (Id. at 99-100.)

On October 18, 2011, Rhodes filed a timely Notice of Appeal (Doc. #1) of the Bankruptcy Court's Order. Rhodes filed his Opening Brief (Doc. #10) on December 2, 2011. The Trust filed its Answering Brief (Doc. #12) on December 19, 2011. Rhodes filed his Reply Brief (Doc. #14) on January 5, 2011.

## II. DISCUSSION

### A. Standard of Review

The Court reviews a bankruptcy court's denial of a motion to quash filed pursuant to FRCP 45(c)(3) and a motion for protective orders filed pursuant to FRCP 26(c) for abuse of discretion. Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 813-14 (9th Cir. 2003) (motion to quash); Travers v. Shalala, 20 F.3d 993, 999 (9th Cir. 1994) (motion for protective order). The Bankruptcy Court's conclusions of law are reviewed de novo and its findings of fact are reviewed for clear error. In re Rains, 428 F.3d 893, 900 (9th Cir. 2005); see also Fed. R. Bankr. P. 8013. Whether a party has standing is a question of law the Court reviews de novo. San Luis & Delta-Mendota Water Auth. v. United States, 672 F.3d 676, 699 (9th Cir. 2012). The Court may affirm the Bankruptcy Court's decision "on any ground fairly supported by the record." In re Warren, 568 F.3d 1113, 1116 (9th Cir. 2009).

### B. Motion to Quash

Rhodes appeals the Bankruptcy Court's denial of his Motion to Quash for lack of standing. Rhodes argues he has standing to challenge the subpoenas because he claims a personal right and privilege in the documents sought. More specifically, Rhodes contends that the subpoenas seek personal information as well as information protected by the attorney-client privilege and/or the work-product privilege, but the Bankruptcy Court did not permit Rhodes to articulate his personal right and privilege in the documents.

1  The Trust responds that the Bankruptcy Court did not prevent Rhodes from articulating a personal right or privilege; rather, Rhodes failed to do so. The Trust asserts that Rules 45(d)(2)(A) and 26(b)(5)(A) require that the person claiming a privilege describe the nature of the documents, without revealing privileged information, so the parties can assess the claim. Rhodes failed to provide such a privilege log and failed to identify a law firm that represented him in his individual capacity until after the Bankruptcy Court denied the Motion to Quash. The Trust also argues that Rhodes lacks standing to challenge the subpoenas as unduly burdensome because only the subpoenaed parties can raise such an objection.

Rhodes replies that the attorney-client privilege applies because the subpoenas seek communications between Rhodes as an individual and his legal counsel. Rhodes points out that the subpoenas define "Individual" and "Individuals" to include Rhodes solely in his personal capacity. Rhodes also argues that a privilege log would place an undue burden on Rhodes, and a cursory overview of the subpoenas reveal the intrusiveness of the subpoenas.

On appeal, Rhodes offers two rules for standing. First, Rhodes suggests, "A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." (Appellant's Opening Br. at 14 (citing United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982).) However, the "legitimate interest" rule applies to criminal subpoenas, and does not apply to a motion to quash brought under Rule 45. See Raineri, 670 F.2d at 712; In re Yassai, 225 B.R. 478, 481 (Bankr. C.D. Cal. 1998). Second, Rhodes suggests, "[A] party has standing to challenge a subpoena issued to a nonparty if 'the objecting party claims some personal right or privilege with regard to the documents sought.'" (Appellant's Opening Br. at 14 (citing 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2459 (3d ed. 2008).) Although this rule has not been applied by the United States Court of Appeals for the Ninth

Circuit, other courts have applied it. See, e.g., Brown v. Braddick, 595 F.2d 961, 967 (5th Cir. 1979); Crispin v. Christian Audigier, Inc., 717 F. Supp. 2d 965, 973-74 (C.D. Cal. 2010); Platinum Air Charters, L.L.C. v. Aviation Ventures, Inc., No. 2:05-CV-1451-RCJ-LRL, 2007 WL 121674, at *2 (D. Nev. Jan. 10, 2007).

To determine the meaning of a Federal Rule of Civil Procedure, courts apply rules of statutory interpretation. See Delta Air Lines, Inc. v. August, 450 U.S. 346, 347-62 (1981). First, courts look to the plain language of the rule. United States v. Fort, 472 F.3d 1106, 1110 (7th Cir. 2007) (citing United States v. John Doe, Inc. I, 481 U.S. 102, 108-09 (1987)). But the language in question cannot be read in isolation, courts also must consider context. In re Rufener Constr., Inc., 53 F.3d 1064, 1067 (9th Cir. 1995). "When we look to the plain language of a statute in order to interpret its meaning, we do more than view words or sub-sections in isolation. We derive meaning from context, and this requires reading the relevant statutory provisions as a whole." Id. The context of a rule includes the title of the section where the language in question appears. Hanford Downwinders Coal., Inc. v. Dowdle, 71 F.3d 1469, 1475 (9th Cir. 1995) (cited in In re Yassai, 225 B.R. at 481). Another fundamental rule of statutory interpretation provides, "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (quotation omitted) (cited in In re Yassai, 225 B.R. at 481). Courts also consider the drafter's intent, and for Federal Rules of Civil Procedure, the Advisory Committee Notes are illustrative of the Committee's intent. Fort, 472 F.3d at 1112-16.

In determining the meaning of Rule 45(c)(3)(A) the Court first considers the subsection's plain language:

> **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
> **(I)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person--except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.

Because the plain language of subsection (c)(3)(A) does not address who can bring a motion to quash under (c)(3)(A), the Court considers the broader context of section (c).[1]

---

[1]   Rule 45(c) provides:

**(c) Protecting a Person Subject to a Subpoena.**
   **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.
   **(2)** *Command to Produce Materials or Permit Inspection.*
      **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
      **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises--or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
         **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
         **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
   **(3) Quashing or Modifying a Subpoena.**
      **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
         **(i)** fails to allow a reasonable time to comply;
         **(ii)** requires a person who is neither a party nor a party's

Rule 45(c) is titled "Protecting a Person Subject to a Subpoena." Subsection (c)(1) is directed at the party issuing and serving the subpoena, subsection (c)(2) is directed at the person commanded to produce items, subsection (c)(3)(A) is the subsection in question, subsection (c)(3)(B) is directed at the person who is subject to or affected by the subpoena, and subsection (c)(3)(C) is directed at the party issuing and serving the subpoena. In short, all subsections are consistent with section (c)'s title "Protecting a Person Subject to a Subpoena," except subsection (c)(3)(B), which explicitly extends protection to persons "affected by" a subpoena. Thus, Rule 45(c)'s title is evidence that the primary purpose of Rule 45(c) is to protect the person subject to the subpoena, and unless explicitly stated, as in subsection (c)(3)(B), the Rule should be interpreted as applying to the person subject to the subpoena only.

Additionally, the inclusion of protections for persons "affected by" a subpoena in

> officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person--except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
> **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> **(iv)** subjects a person to undue burden.
> **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
> **(i)** disclosing a trade secret or other confidential research, development, or commercial information;
> **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
> **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
> **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
> **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
> **(ii)** ensures that the subpoenaed person will be reasonably compensated.

subsection (c)(3)(B) and the exclusion of such protections in subsection (c)(3)(A) is evidence of the Advisory Committee's intent to distinguish between persons subject to and persons affected by a subpoena. If the Advisory Committee had intended subsection (c)(3)(A) to apply to persons affected by a subpoena, then the Advisory Committee would have included the same language it included in subsection (c)(3)(B).

Lastly, the Advisory Committee Notes suggest that the Committee intended for subsection (c)(3)(A) to apply only to persons subject to the subpoena. More specifically, the Committee added section (c) to Rule 45 in 1991. Fed. R. Civ. P. 45 advisory committee's note to 1991 Amendment. The 1991 Amendment was intended to "clarify and enlarge the protections afforded persons who are required to assist the court by giving information or evidence." Id. According to the Advisory Committee Notes, section (c) "states the rights of witnesses" (i.e., persons subject to the subpoena) and subsection (c)(3) "authorizes the quashing of a subpoena as a means of protecting a witness from misuse of the subpoena power." Id.[2]

Here, Rhodes requested that the Bankruptcy Court quash the subpoenas under Rule 45(c)(3)(A)(iii)-(iv) because the subpoenas required disclosure of privileged

---

[2] The Advisory Committee Note to subsection (c)(3)(A)(iv) explains that the subsection "requires the court to protect all persons from undue burden imposed by the use of the subpoena power." "[A]ll persons" could be interpreted to include persons affected by, but not subject to, the subpoena. See Broadcort Capital Corp. v. Flagler Sec., Inc., 149 F.R.D. 626, 628 (D. Col. 1993) (questioned in In re Yassai, 225 B.R. at 482). However, the Committee explains what it means by "all persons" by giving an example of a type of witness (i.e., person subject to the subpoena): "[I]t might be unduly burdensome to compel an adversary to attend trial as a witness . . . ." Additionally, this Note, read in context with the other Notes emphasizing that Rule 45(c) "states the rights of witnesses," confirms that only the person subject to the subpoena can bring a motion to quash under Rule 45(c)(3)(A). Furthermore, courts have held that only the person who bears the burden of responding (i.e., the person subject to the subpoena) has standing to challenge the subpoena as unduly burdensome. CineTel Films, Inc. v. Does 1-1,052, --- F. Supp. 2d ----, 2012 WL 1142272, at *9 (D. Md. Apr. 4, 2012).

1  information and subjected the subpoenaed parties to an undue burden. Rhodes has not
2  offered any controlling authority applying the "personal right or privilege" standing rule to
3  Rule 45(c)(3)(A). Based on the above interpretation of Rule 45(c)(3)(A), the Court declines
4  to adopt the "personal right or privilege" standing rule for motions to quash filed pursuant
5  to Rule 45(c)(3)(A). The Court concludes that only the party subject to the subpoena may
6  bring a motion to quash under Rule 45(c)(3)(A). In re Yassai, 225 B.R. at 480-82. Because
7  Rhodes is not subject to the subpoenas, the Bankruptcy Court did not err in ruling that
8  Rhodes lacked standing to challenge the subpoenas under Rule 45(c)(3)(A).[3]

9    Even if a party "affected by" but not "subject to" a subpoena could file a motion
10 to quash a subpoena under Rule 45(a)(3)(A) and the "personal right or privilege" standing
11 rule applied, Rhodes has not established that the subpoenas sought personal or privileged
12 information about Rhodes in particular. Rhodes attached two subpoenas as exhibits to his
13 Motion to Quash and cited to the definition for "Individuals," which included Rhodes.
14 (App. at 20, 26-65.) Next, Rhodes offered the following document requests to illustrate the
15 overreaching scope of the subpoenas: (1) the subpoenas directed at the financial institutions
16 sought documents evidencing transactions and activity on accounts held by or for the
17 benefit of the "Individuals," (2) the subpoenas directed at the title companies and other
18 professionals sought highly sensitive and personally identifiable information about
19 properties purchased by the "Individuals," and (3) the subpoenas directed at the law firms
20 sought documents relating to legal services performed for the "Individuals." (Id. at 20.)

---

[3] The Court's jurisdiction is also in question because it is unclear whether the Bankruptcy Court's Order Denying Appellant's Motion to Quash is an appealable order under 28 U.S.C. § 158(a). See United States v. Ryan, 402 U.S. 530, 532-33 (1971); Perlman v. United States, 247 U.S. 7, 12-13 (1918); In re Grand Jury Proceedings, 616 F.3d 1172, 1180 (10th Cir. 2010); SEC v. CMKM Diamonds, Inc., 656 F.3d 829, 830-31 (9th Cir. 2011); In re Grand Jury Subpoena Issued to Bailin, 51 F.3d 203, 205-06 (9th Cir. 1995); In re Grand Jury Subpoena Served Upon Niren, 784 F.2d 939, 940-42 (9th Cir. 1986).

The Trust responded that Rhodes lacked standing, and Rhodes replied, "the information sought by the Litigation Trust delves deeply into Rhodes' personal life and seeks highly sensitive and personally identifiable information." (Id. at 95.) At the hearing, the Bankruptcy Court asked how Rhodes had standing to challenge the subpoenas. (Id. at 235.) Counsel responded, "he's a subject of a lot of these subpoenas. They are seeking his personal information." (Id.)

The Bankruptcy Court did not err when it found that Rhodes lacked standing to challenge the subpoenas because Rhodes did not carry his burden of establishing a personal right or privilege in the documents sought. Rhodes never identified which, if any, of the subpoenaed financial institutions maintained an account held by him or for his benefit. Nor did Rhodes identify which, if any, of the subpoenaed title companies or other professionals possessed personal information about Rhodes. Rhodes provided the Bankruptcy Court with evidence that one of the subpoenaed law firms, Fabian & Clendenin, performed legal services for him. (Id. at 97-98). However, Rhodes failed to provide the Bankruptcy Court with any information regarding the nature of the subpoenaed documents in Fabian & Clendenin's possession. Thus, the Bankruptcy Court had no evidence upon which to make a determination that the subpoena to Fabian & Clendenin sought information that was personal or privileged as to Rhodes. Therefore, the Bankruptcy Court did not err in denying Rhodes' Motion to Quash.

### C. Motion for Protective Orders

Rhodes also appeals the Bankruptcy Court's denial of his Motion for Protective Orders. Rhodes sought protective orders pursuant to Rule 26(c) as an alternative to his request to quash the subpoenas. Rule 26(c) states that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without

court action." Moreover, Local Rule 7037(b) states, "[d]iscovery motions will not be considered unless a statement of moving counsel is attached certifying that, after consultation or effort to do so, the parties have been unable to resolve the matter without court action." The Bankruptcy Court, in its discretion, may waive strict compliance with the meet and confer requirement. Pulsecard, Inc. v. Discover Card Servs., Inc., 168 F.R.D. 295, 302 (D. Kan. 1996). But "[c]ourts are not required to exercise their inherent equitable powers where there are applicable procedural rules." Cipollone v. Liggett Grp., Inc., 822 F.2d 335, 344 (3d Cir. 1987). An Advisory Committee Note to Rule 26(c) indicates that if the moving party in unable to get the opposing party to discuss the matter, such efforts should be indicated in the certificate. Fed. R. Civ. P. 26(c) advisory committee's note to 1993 Amendments.

Rhodes failed to satisfy the meet and confer requirement in Rule 26(c) and Local Rule 7037(b). Specifically, at the hearing on the Motion to Quash, the Bankruptcy Court asked counsel for Rhodes, "[W]here's the certificate about your consultation?" (App. at 230.) Counsel explained, "That we failed to include." (Id.) Although counsel for Rhodes argues that any efforts to meet in confer would have been futile, this argument could have been made in the certificate as indicated by the Advisory Committee Note to Rule 26(c). Rhodes failed to file a certificate and thus did not comply with Rule 26(c). The Bankruptcy Court could have, in its discretion, waived strict compliance, but the Bankruptcy Court did not abuse its discretion in denying Rhodes' Motion for Protective Orders for failure to comply with the meet and confer requirement.

///
///
///
///
///

### III. CONCLUSION

       IT IS THEREFORE ORDERED that the Bankruptcy Court's Order Denying Appellant's Motion to Quash Rule 2004 Examination and Corresponding Subpoenas is hereby AFFIRMED.

DATED: April 30, 2012

                                                                                    PHILIP M. PRO
                                                                                   United States District Judge