United States Bankruptcy Court
District of Nevada

In re:                                                                      Case No. 09-14814-lbr
THE RHODES COMPANIES, LLC                                                   Chapter 11
JOHN C RHODES
        Debtors

## CERTIFICATE OF NOTICE

District/off: 0978-2          User: garrettme          Page 1 of 3          Date Rcvd: Jul 17, 2012
                             Form ID: pdf970           Total Noticed: 2

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jul 19, 2012.
          +JAMES JIMMERSON, ESQ.,    415 S. 6TH STREET, STE. 100,    LAS VEGAS, NV 89101-6937
          +WILLIAM H. HEATON, ESQ.,    601 S. TENTH ST., STE. 201,    LAS VEGAS, NV 89101-7027

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                        TOTAL: 0

          ***** BYPASSED RECIPIENTS *****
NONE.                                                                                        TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jul 19, 2012**                    **Signature:**        *Joseph Speetjens*

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on July 17, 2012 at the address(es) listed below:
          ANNE M. LORADITCH   on behalf of Creditor JAMES RHODES aloraditch@foxrothschild.com,
          pkois@foxrothschild.com;ldupree@foxrothschild.com;rdittrich@foxrothschild.com
          BART K. LARSEN   on behalf of Creditor  Reef Colonial, LLC blarsen@klnevada.com,
          jierien@klnevada.com;bankruptcy@klnevada.com;mbarnes@klnevada.com
          BRETT A. AXELROD   on behalf of Creditor  SAGEBRUSH ENTERPRISES, INC. baxelrod@foxrothschild.com,
          pkois@foxrothschild.com;rdittrich@foxrothschild.com;ldupree@foxrothschild.com
          BRIAN D. SHAPIRO   on behalf of Other Prof.  THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC
          bshapiro@brianshapirolaw.com,
          ecf@brianshapirolaw.com;brianshapiroesq@yahoo.com;bshapiro@brianshapirolaw.com;candice@brianshapi
          rolaw.com;jessie@brianshapirolaw.com
          CAROL L. HARRIS   on behalf of Creditor  In re Kitec Fitting Litigation Class Plaintiffs
          c.harris@kempjones.com,  ade@kempjones.com
          CONOR P. FLYNN   on behalf of Creditor  COMMERCE ASSOCIATES, LLC cflynn@armstrongteasdale.com
          DAMON K. DIAS   on behalf of Creditor  X-It at 215, LLC ddias@diaslawgroup.com,
          bankruptcy@diaslawgroup.com;jisselas@diaslawgroup.com;elizabethd@diaslawgroup.com
          DAVID A. COLVIN   on behalf of Creditor  DANA KEPNER COMPANIES, LLC dcolvin@maclaw.com,
          mwalters@maclaw.com;kgallegos@maclaw.com;tszostek@maclaw.com
          DAVID R HAGUE   on behalf of Creditor JAMES RHODES dhague@fabianlaw.com,  dromero@fabianlaw.com
          DONALD H. WILLIAMS   on behalf of Creditor  Westar Kitchen & Bath, LLC
          DonaldHWilliamsLaw@gmail.com,  taylorsellers@gmail.com
          EDWARD M. MCDONALD   on behalf of U.S. Trustee  U.S. TRUSTEE - LV - 11 edward.m.mcdonald@usdoj.gov
          ELIZABETH E. STEPHENS   on behalf of Attorney  SULLIVAN HILL LEWIN REZ & ENGEL
          stephens@sullivanhill.com,
          calderone@sullivanhill.com;vidovich@sullivanhill.com;roberts@sullivanhill.com;hill@sullivanhill.c
          om;Manning@sullivanhill.com;stein@sullivanhill.com;iriarte@sullivanhill.com;benoit@sullivanhill.c
          om;ggarcia@sullivanhill.com;murdock@sullivanhill.com
          ERIC  RANSAVAGE   on behalf of Creditor Leslie Blasco, et al. eransavage@ssllplaw.com,
          agutierrez@ssllplaw.com
          ERIC D. MADDEN   on behalf of Other Prof.  THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC
          emadden@diamondmccarthy.com,  cburrow@diamondmccarthy.com
          GREGORY F WILSON   on behalf of Witness  SANTORO, DRIGGS, WALCH, KEARNEY, HOLLEY & THOMPSON
          gfwilson@wilsonquint.com,  pwilson@wilsonquint.com
          J. THOMAS BECKETT   on behalf of Creditor  CREDITORS COMMITTEE ECF@parsonsbehle.com
          JACOB J ROBERTS   on behalf of Other Prof.  THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC
          jroberts@diamondmccarthy.com,  cburrow@diamondmccarthy.com
          JAMES D. GREENE   on behalf of Plaintiff EUGENE DAVIS jgreene@greeneinfusolaw.com,
          fritchie@greeneinfusolaw.com;kfarney@greeneinfusolaw.com;cwalton@greeneinfusolaw.com
          JAMES J. JIMMERSON   on behalf of Defendant  FARM HUALAPAI, LLC jjj@jimmersonhansen.com,
          mg@jimmersonhansen.com;ks@jimmersonhansen.com;lh@jimmersonhansen.com
          JANET L. CHUBB   on behalf of Creditor  COMMERCE ASSOCIATES, LLC bsalinas@armstrongteasdale.com
          JEANETTE E. MCPHERSON   on behalf of Defendant  KB HOME NEVADA, INC. bkfilings@s-mlaw.com
          JEFFREY D. OLSTER   on behalf of Creditor  HARSCH INVESTMENT PROPERTIES - NEVADA, LLC
          sallade@lbbslaw.com
          JEFFREY R. SYLVESTER   on behalf of Creditor  CREDIT SUISSE, CAYMAN ISLANDS BRANCH
          jeff@sylvesterpolednak.com,  tina@sylvesterpolednak.com
          KEITH S. KNOCHEL   on behalf of Creditor VALERIE SILVAS law@lawyersinarizona.com,
          bank@lawyersinarizona.com
          KEVIN N. ANDERSON   on behalf of Creditor JAMES RHODES kanderson@fabianlaw.com,
          sburdash@fabianlaw.com
          KIRBY C. GRUCHOW   on behalf of Creditor  NEVADA POWER COMPANY hkelley@leachjohnson.com
          LORI  BROWN   on behalf of Creditor  Las Vegas Supply, Inc. minute@legalcounselors.com
          MARK R. SOMERSTEIN   on behalf of Creditor  WELLS FARGO BANK, N.A. mark.somerstein@ropesgray.com
          MARVIN C. RUTH   on behalf of Creditor  CEMEX CONSTRUCTION MATERIALS SOUTH, LLC MRuth@LRLaw.com
          MICHAEL  YODER   on behalf of Other Prof.  THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC
          myoder@diamondmccarthy.com,  cburrow@diamondmccarthy.com
          MICHAEL B WIXOM   on behalf of Interested Party  MUTUAL OF OMAHA BANK mbw@slwlaw.com,
          ef@slwlaw.com
          NATALIE M. COX   on behalf of Interested Party  REORGANIZED DEBTORS ncox@klnevada.com,
          bankruptcy@klnevada.com;kdunn@klnevada.com
          NILE  LEATHAM   on behalf of Creditor  STEERING COMMITTEE OF SENIOR SECURED LENDERS
          nleatham@klnevada.com,  ckishi@klnevada.com;bankruptcy@klnevada.com
          OMNI MANAGEMENT GROUP, LLC (bo)  bosborne@omnimgt.com,  sewing@omnimgt.com
          PHILIP R. BYRNES   on behalf of Creditor  CITY OF LAS VEGAS PBYRNES@LASVEGASNEVADA.GOV,
          CKELLY@LASVEGASNEVADA.GOV;KHANSEN@LASVEGASNEVADA.GOV;BCOMELLA@LASVEGASNEVADA.GOV;JANDREWS@LASVEGA
          SNEVADA.GOV
          PHILIP S. GERSON   on behalf of Creditor  CLARK COUNTY mburgener@rocgd.com
          REW R. GOODENOW   on behalf of Creditor  CREDITORS COMMITTEE ecf@parsonsbehle.com
          ROBERT R. KINAS   on behalf of Creditor  CATERPILLAR FINANCIAL SERVICES CORPORATION
          rkinas@swlaw.com,
          jmath@swlaw.com;mfull@swlaw.com;cdossier@swlaw.com;bgriffith@swlaw.com;nunzueta@swlaw.com;docket_
          las@swlaw.com;jbucceri@swlaw.com
          RODNEY M. JEAN   on behalf of Creditor  Credit Suisse, Cayman Islands Branch
          RJEAN@LIONELSAWYER.COM,  bklsclv@lionelsawyer.com;mstow@lionelsawyer.com
          ROSA  SOLIS-RAINEY   on behalf of Defendant  DELOITTE & TOUCHE LLP rsr@morrislawgroup.com,
          bkv@morrislawgroup.com
          SHIRLEY S. CHO   on behalf of Debtor  THE RHODES COMPANIES, LLC scho@pszjlaw.com
          SHLOMO S. SHERMAN   on behalf of Interested Party  REORGANIZED DEBTORS ssherman@klnevada.com,
          bankruptcy@klnevada.com;bbroussard@klnevada.com

District/off: 0978-2          User: garrettme          Page 3 of 3          Date Rcvd: Jul 17, 2012
                              Form ID: pdf970          Total Noticed: 2

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system (continued)
          SUSAN L. MYERS    on behalf of Creditor  Credit Suisse, Cayman Islands Branch smyers@lacsn.org,
           emontes@lacsn.org;bklsclv@lionelsawyer.com
          THOMAS E. CROWE    on behalf of Creditor SHANE SMITH tcrowelaw@yahoo.com
          TIMOTHY P. THOMAS    on behalf of Creditor  STEERING COMMITTEE OF SENIOR SECURED LENDERS ,
           veralynn@tthomaslaw.com
          TRACY A. DIFILLIPPO    on behalf of Creditor  COMMERCE ASSOCIATES, LLC
           tdifillippo@armstrongteasdale.com,  jelia@armstrongteasdale.com
          U.S. TRUSTEE - LV - 11    USTPRegion17.lv.ecf@usdoj.gov
          VIRGINIA CRONAN LOWE    on behalf of Creditor  UNITED STATES OF AMERICA - INTERNAL REVENUE SERVICE
           virginiacronan.lowe@usdoj.gov,  Western.Taxcivil@usdoj.gov
          WILLIAM H HEATON    on behalf of Defendant JOHN RHODES will@nwhltd.com,  Solana@nwhltd.com
          ZACHARIAH  LARSON    on behalf of Debtor  APACHE FRAMING, LLC cshurtliff@maclaw.com,
           sstanton@maclaw.com;akosina@maclaw.com;mwalters@maclaw.com;kgallegos@maclaw.com
                                                                                        TOTAL: 50

JAMES JIMMERSON, ESQ.
Nevada Bar No. 264
LYNN HANSEN, ESQ.
Nevada Bar No. 244
JIMMERSON HANSEN, P.C.
415 South 6th Street, Suite 100
Las Vegas, NV 90101
Telephone: (702) 388-7171
Facsimile: (702) 380-6408
Email: jjj@jimmersonhansen.com
          lmh@jimmersonhansen.com
*Counsel for Sagebrush Enterprises, Inc.,
Harmony Homes, Inc. North 5th, LLC, Farm
Hualapai, LLC, Harmony2, LLC, Hayden
Springs Partners, LLC, Tropical Sands, LLC
and Rhodes Ranch, LLC*

NITZ, WALTON & HEATON, LTD.
W. OWEN NITZ, ESQ.
Nevada Bar No. 115
JAMES H. WALTON, ESQ.
Nevada Bar No. 449
WILLIAM H. HEATON, ESQ.
Nevada Bar No. 1097
601 South Tenth Street, Suite 201
Las Vegas, NV 89101
Telephone: (702) 474-4004
Facsimile: (702) 384-3011
Email: owen@nwhltd.com
          jim@nwhltd.com
          will@nwhltd.com
*Counsel for John C. Rhodes, John C. Rhodes,
Trustee of the Dynasty Trust I, John C.
Rhodes, Trustee of the Dynasty Trust II,
Gypsum Resources, LLC, and Truckee
Springs Holdings, Inc.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," *et al.*,<br><br>Reorganized Debtors. | Case No. 09-14814-LBR<br>(Jointly Administered) |

1

| | | |
|---|---|---|
| 1 | THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC, ET AL., | Adversary Proceeding No. 12-01099-LBR |
| 2 | | |
| 3 | Plaintiff, | **DEFENDANTS' MOTION FOR WITHDRAWAL OF REFERENCE** |
| 4 | v. | |
| 5 | James M. Rhodes, Sedora Holdings, LLC, | **RELIEF IS SOUGHT FROM A UNITED STATES DISTRICT JUDGE IN COMPLIANCE WITH LOCAL BANKRUPTCY RULE 5011** |
| 6 | Sagebrush Enterprises, Inc., Gypsum Resources, LLC, Truckee Springs Holdings, Inc., John C. | |
| 7 | Rhodes, John C. Rhodes, Trustee of the James M. Rhodes Dynasty Trust I, John C. Rhodes, | |
| 8 | Trustee of the James M. Rhodes Dynasty Trust II, Harmony Homes, Inc., North 5, LLC, Farm | |
| 9 | Hualapai, LLC, Harmony 2, LLC, Hayden Springs Partners, LLC, Tropical Sands, LLC, | |
| 10 | and Rhodes Ranch, LLC, | |
| 11 | Defendants. | |

Sagebrush Enterprises, Inc. ("Sagebrush"), Harmony Homes, Inc. ("Harmony"), North 5th, LLC ("North 5th"), Farm Hualapai, LLC ("Farm Hualapai"),  Harmony2, LLC ("Harmony2"), Hayden Springs Partners, LLC ("Hayden Springs"), Tropical Sands, LLC ("Tropical") and Rhodes Ranch, LLC ("Rhodes Ranch", together with Sagebrush, Harmony, North 5th, Farm Hualapai, Harmony2, Hayden Springs, and Tropical  collectively, the "Jimmerson Defendants"), by and through their counsel, the law firm of Jimmerson Hansen, P.C., and John C. Rhodes ("JCRhodes"), John C. Rhodes, Trustee of the Dynasty Trust I ("Dynasty I"), John C. Rhodes, Trustee of the Dynasty Trust II ("Dynasty II"), , Gypsum Resources, LLC ("Gypsum") and Truckee Springs Holdings, Inc. ("Truckee Springs", together with JCRhodes, Dynasty I, Dynasty II and Gypsum, collectively,  the "Nitz Defendants") (together the Jimmerson Defendants and Nitz Defendants are the "Defendants"), appearing by special appearance of counsel and by and through their counsel, the law firm of Nitz, Walton & Heaton, Ltd., hereby submit their Motion to Withdraw the Reference pursuant to 28 U.S.C. §157(d) and Federal Rule of Bankruptcy Procedure 5011 and LR 5011(the "Motion") and do hereby move the Court for an order withdrawing the reference to the Bankruptcy Court of this adversary proceeding commenced by the Litigation Trust of the Rhodes Companies, LLC, Et. Al.

1    **I.    FACTUAL BACKGROUND**[1]

2        1.    On March 31, 2009 and April 1, 2009 (collectively, the "Petition Date"), each of the

3    debtors in the above-captioned bankruptcy case (collectively, the "Debtors") commenced with the

4    Bankruptcy Court a voluntary case under Chapter 11 of title 11 of the United States Bankruptcy Code

5    (the "Bankruptcy Code")[2].

6        2.    On February 18, 2010, the First Lien Steering Committee filed the Third Amended Plan

7    of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et

8    al. (the "Third Amended Plan"), which Third Amended Plan established the Litigation Trust of The

9    Rhodes Companies, LLC, *et al*. (the "Litigation Trust" or "Plaintiff") to "enforce all rights to

10    commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the

11    Petition Date".  (Complaint ¶11; See Art. IV(O) of the Third Amended Plan).

12        3.    On March 12, 2010, the Bankruptcy Court entered an order confirming the Third

13    Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the

14    Rhodes Companies, LLC, *et al.* (the "Confirmation Order").  Pursuant to the Confirmation Order, the

15    Third Amended Plan was substantially consummated on the "Effective Date." (*See* Confirmation Order

16    paragraph 31).

17        4.    On or about May 11, 2012, the Litigation Trust commenced the above-captioned

18    adversary proceeding by filing its "Original Complaint" against the Jimmerson Defendants and Nitz

19    Defendants (the "Complaint").

20        5.    The Complaint asserts claims for the following:

21            Count 1:  Breach of Fiduciary Duty Against Sedora Holdings, LLC ("Sedora"),
22            Sagebrush, and Rhodes;

23    _____

24        [1] With respect to documents cited herein that appear on the Court's official docket in the Bankruptcy Case or this action, Defendants request the Court take judicial notice of such documents and the contents thereof pursuant to Federal Rule of Evidence 201.  *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (court may take judicial notice of matters of public record outside the pleadings on motion to dismiss).  Furthermore, "courts may also consider materials outside of the pleadings to resolve any jurisdictional disputes . . . ." *In re General Media, Inc.*, 335 B.R. 66, 72 (Bankr. S.D.N.Y. 2005).

25    
26    
27        [2] References herein to the Bankruptcy Code refer to title 11 of the United States Code (11 U.S.C. §§ *et seq*.) as applicable.  References herein to the Bankruptcy Rules refer to the Federal Rules of Bankruptcy Procedure, as applicable. References herein to the Federal Rules refer to the Federal Rules of Civil Procedure.

28

<u>Count 2</u>:  Aiding and Abetting Breaches of Fiduciary Duty Against Rhodes;

<u>Count 3</u>:  Alter Ego/Piercing the Corporate Veil Against Rhodes and Sagebrush;

<u>Count 4</u>:  Unjust Enrichment Against Sedora, Sagebrush, Rhodes, Harmony Homes, and the Harmony Homes Start-Up Projects;

<u>Count 5</u>:  Avoidance of Constructively Fraudulent Transfers (11 U.S.C. §544(b) and N.R.S §§112.180(1)(b) and 12.190);

<u>Count 6</u>:  Avoidance Transfers Made with the Actual Intent to Hinder, Delay, or Defraud (11 U.S.C. §544(b) and N.R.S. 112.180(1)(a));

<u>Count 7</u>:  Avoidance of Constructively Fraudulent Transfers (11 U.S.C. §548(a)(1)(B));

<u>Count 8</u>:  Avoidance of Transfers Made with the Actual Intent to Hinder, Delay, or Defraud Under 11 U.S.C. §548(a)(1)(A));

<u>Count 9</u>:  Recovery of Avoidable Transfers (11 U.S.C. §550) Against Sagebrush;

<u>Count 10</u>:  Recovery of Avoidable Transfers (11 U.S.C. §550) Against Sedora;

<u>Count 11</u>:  Recovery of Avoidable Transfers (11 U.S.C. §550) Against Rhodes;

<u>Count 12</u>:  Recovery of Avoidable Transfers (11 U.S.C. §550) Against Harmony Homes;

<u>Count 13</u>:  Recovery of Avoidable Transfers (11 U.S.C. §550) Against John Rhodes;

<u>Count 14</u>:  Declaratory Judgment Regarding Rhodes Ranch GP'S 99% Membership Interest in Gypsum Resources (N.R.S. §§30.030 and 30.040);

<u>Count 15</u>:  Turnover of a 99% Membership Interest in Gypsum Resources (11 U.S.C. §542) Against Sedora, Sagebrush, Rhodes Ranch, LLC, Rhodes Dynasty Trust I, Rhodes Dynasty Trust II, Truckee Springs Holdings; and

<u>Count 16</u>:  Avoidance of any Transfer of Rhodes Ranch GP'S 99% Membership Interest in Gypsum Resources as a Transfer Made with Actual Intent to Hinder, Delay, or Defraud Creditors of Rhodes Ranch GP Under 11 U.S.C. §544(b) and N.R.S. 112.180.

(Collectively, the "<u>Claims</u>").

**II.      WITHDRAWAL OF THE REFERENCE PROCEDURE**

On June 12, 2012, the Defendants and the Litigation Trust entered into a Stipulated Order Extending Time for the Defendants, among others, to Respond to the Complaint Under Federal Rule of Bankruptcy Procedure 7012 and Withdraw Reference Under Local Rule 5011.  The Stipulated Order was granted on June 13, 2012 and extended the time for the Defendants to respond to the Complaint and file a Motion to Withdraw Reference Under Local Rule 5011 up to and including June 29, 2012.

This Adversary Proceeding is a legal proceeding demanding relief in the form of monetary damages.  The resolution of this Adversary Proceeding necessarily implicates consideration of state law regarding, among other things, breaches of fiduciary duties, alter ego/piercing the corporate veil, and state law questions regarding allegedly fraudulent transfers.  Defendants are entitled to a jury trial based on the foregoing factors.  Defendants have not waived their jury demand and do not waive such at this time. Defendants do not consent, nor have they consented, to entry of final orders or judgments by the bankruptcy court and the bankruptcy judge.  The legal causes of action asserted against Defendants, including for breach of fiduciary duty, alter ego/piercing the corporate veil and fraudulent conveyance entitle Defendants to a trial by jury.  *In re Cinematronics*, 916 F.2d 1444, 1451 (9th Cir. 1990) ("bankruptcy courts cannot conduct jury trials on noncore matters, where the parties have not consented."); *see also Depinto v. Provident Sec. Life Ins. Co.*, 323 F.2d 826, 837 (9th Cir 1963) ("where a claim of breach of fiduciary duty is predicated upon underlying conduct such as negligence, which is actionable in a direct suit at common law, the issue of whether there has been a breach is, subject to appropriate instructions, a jury question").

This Motion is the Defendants' first pleading related to the Adversary Proceeding and is filed to seek withdrawal of the reference and to assert Defendants' rights to a jury trial and not as any general submission to the jurisdiction of the Bankruptcy Court.  The Defendants have also simultaneously filed with this motion a Demand for a Jury Trial, in which Defendants demand a jury trial in this Adversary Proceeding.

Defendants submit that it would be the most efficient use of judicial resources to have the District Court hear all matters in connection with the complaint.  Additionally, the non-core nature of the underlying cause of action and the private rights involved further favor having the District Court hear all matters in connection with the complaint.

III.    **LEGAL ARGUMENT**

    A.    **Withdrawal of Reference Standard.**

Under 28 U.S.C. §1334(a), the United States District Court has original and exclusive juris-diction of all cases under Title 11.  This jurisdictional grant may be shared with the bankruptcy court for "all civil proceedings arising under title 11, or arising[3] in or related to cases under title 11."[4]  28 U.S.C. §1334(b).  The only basis for jurisdiction of the Complaint is the Bankruptcy Court's "related to" jurisdiction.  The courts in this Circuit and others have consistently held that "related to" jurisdiction in the post-confirmation context is significantly limited.  *See, e.g.*, *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193–94 (9th Cir. 2005).  The claims in this action lack the close nexus to the Debtors' confirmed plan of reorganization that is necessary to invoke the "related to" jurisdiction of the Bankruptcy Court, because adjudication of the Litigation Trust's state-law claims will not affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan.

If constitutionally allowed, the bankruptcy judges have the authority to "hear and determine" all "core" proceedings "arising under title 11" and  "may enter appropriate orders and judgments" subject only to deferential review.  See 28 U.S.C. §157(c)(1) and (2), and 28 U.S.C. §158.  In contrast, with respect to non-core claims, the bankruptcy court can only make recommended findings of fact and conclusions of law which are subject to de novo review in the District Court. 28 U.S.C. §§157(c)(1) and (2).  The United States District Court may withdraw "in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. §157(d).  In the District of Nevada, the Honorable Judge Robert C. Jones has indicated that courts evaluate whether "cause" is shown by looking to:  "the efficient use of judicial resources (which is enhanced when non-core issues predominate), delay and costs to the parties, uniformity of bankruptcy

---

[3] Cases under title 11 refers merely to the bankruptcy petition itself.  *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3rd Cir. 1991).

[4] Proceeding arising in a case under title 11 refers to proceeding that are not based on any right expressly created by title 11, but nevertheless would have no existence outside the bankruptcy case.  *Torkelsen v. Maggie (In re Guild and Gallery Plus Inc.)*, 72 F.3d 117, 1178 (3rd Cir. 1996).  In contrast proceedings that are merely related to a case under title 11 are those that pre-confirmation "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Excide Techs*, 544 F.3d 196, 205–06 (3rd Cir. 2008) (citing *Pacor v. Higgins*, 743 F.2d, 984, 994 (3rd Cir. 1984).

administration, the prevention of forum shopping, and other related factors." *Herbst Gaming, Inc. v. Insurcorp et al. (In re Zante, Inc.)*, 2010 WL 5477768 (D. Nev. 2010) quoting *Sec. Farms v. Int'l Bhd of Teamsters*, 124 F.3d 999, 1008 (9th Cir 1997). Additionally, in evaluating whether or not to withdraw the reference, the Court should consider whether, under *Stern v Marshall*,[5] whether the bankruptcy court is constitutionally empowered to adjudicate the causes of action alleged in the underlying complaint.

   **B.    Efficient Use of Judicial Resources Favor Withdrawal of the Reference.**

   The primary factor in deciding a motion to withdraw the reference is whether the bankruptcy court has authority to finally determine claims underlying the Motion to Withdraw the Reference. *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 469 (S.D.N.Y. 2011). Historically, this was determined by examining the core versus non-core distinction of the claims and whether there was a timely demand for a jury trial.[6] *Id.* Judicial efficiency is promoted by withdrawing the reference for those matters that are non-core since non-core claims are subject to de novo review. *In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986). "Efficiency is enhanced by withdrawing the reference when non-core issues predominate." *Security Farms*, 124 F.3d at 1008. "Inasmuch as a bankruptcy court's determination on non-core matters are subject to de novo review by the district court, unnecessary costs could be avoided by a single proceeding in the district court." *Castlerock*, 781 F.2d at 162. The Ninth Circuit has held that it was an abuse of discretion not to withdraw the reference when there is a non-core matter and a timely jury demand. *In re Cinematronics*, 916 F.2d 1444, 1451 (9th Cir. 1990).

---

[5] 131 S.Ct 2594, 180 L.Ed 2d 475 (2011). In *Stern*, the Supreme Court held that the bankruptcy court's power to enter final judgments on matters is not co-extensive with what 28 U.S.C. §157(b)(2) considers "core," and some matters considered core cannot be finally adjudicated in the Bankruptcy Court where they involve only private rights that will not necessarily be determined in ruling on a proof of claim filed against the estate, unless all parties consent. *Id.* at 2594.

[6] All the Defendants have concurrently herewith filed their demand for a jury trial and nonconsent to adjudication by the Bankruptcy Court.

After *Stern v. Marshall*, the following additional analysis is required to determine the advantages and disadvantages of leaving the underlying Complaint before the Article I court or moving it to an Article III court:  whether (1) the rights being adjudicated are public rights or (2) the rights being adjudicated will necessarily be resolved in ruling on a creditor's proof of claim, or (3) the parties unanimously consent to the bankruptcy court adjudicating their claims. *Development Specialists, Inc.* at 467.

**C.     The Non-Core Claims Predominate.**

 Congress enumerated what constitutes "core" proceedings in 28 U.S.C. §157(b)(2).  But section 157 does not enumerate examples of, or define what, constitutes "non-core" proceedings. *Dunmore v. United States,* 358 F.3d 1107, 1114 (9th Cir. 2004).  The Ninth Circuit has addressed this issue, however, and has held proceedings to be "non-core" "if they do not depend on the Bankruptcy Code for their existence and they could proceed in another court." *Id*.  In other words, a core proceeding is one that "invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of the bankruptcy case" while a "non-core" proceeding is one that is merely "related" to a case under title 11.  *In re Gruntz,* 202 F.3d 1074, 1081 (9th Cir. 2000). Furthermore, the word "proceeding" as used in §157 refers to specific claims, causes of actions, or grounds for relief, and not the entire action.  *See Ralls v. Docktor Pet Ctrs., Inc.*, 177 B.R. 420, 425 (D. Mass. 1995).  Thus, an independent determination of core vs. non-core is to be made as to <u>each</u> cause of action asserted by the Litigation Trust in the Complaint.  When hearing "non-core" matters, bankruptcy courts are not authorized to enter final orders (absent consent of the parties)—but rather must submit proposed findings of fact and conclusions of law to the district court which requires a *de novo* review. *See* 28 U.S.C. §157(c).

The Litigation Trust asserts claims for breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, alter ego/piercing the corporate veil, unjust enrichment, and declaratory relief all of which are undeniably non-core.  None of the controversies related to these claims implicate the peculiar

8

rights and powers of bankruptcy, nor do any of these claims depend on the bankruptcy laws for their

existence—they are claims that could proceed in another court even in the absence of bankruptcy.  Each

of the claims is based on a state-created right.  *See, e.g., In re BNI Telecommunications, Inc.*, 246 B.R.

845, 849 (B.A.P. 6th Cir. 2000) (holding that an alter-ego claim "is a purely state-law cause of action

that does not fall within the core of federal bankruptcy power" and "is not a proceeding merely affected

by state; it is dictated by that law."); *In re Systems Eng'g & Energy Mgmt. Assocs., Inc.*, 252 B.R. 635,

649 (Bankr. E.D. Va. 2000) ("[T]he claim of a corporation or its creditors for breach of fiduciary duty

against the corporation's officers and directors is solely a creature of state law, and it can in no manner

implicate the public rights found in *Marathon* to permit this Court's assertion of core jurisdiction.").  In

*In re Delaware & Hudson Railway Co.*, which involved an action by the bankruptcy trustee against the

debtor's shareholders/directors for declaration of unlawful dividends pursuant state law, and breach of

fiduciary duty, the court found:

> The state law claims at issue in the D & O lawsuit existed prior to and independent of
> the filing of the instant bankruptcy, and the Court concludes that under these cir-
> cumstances the D & O lawsuit is a non-core proceeding, and thus subject to permissive
> withdrawal under 28 U.S.C. §157(d).  If admittedly state law claims such as those
> underlying the D & O lawsuit were classified as "core" proceedings based upon the
> connection, as argued by the Trustee, that the proceeds of the action will become part of
> the sum to be distributed to creditors of the bankrupt debtor, the teachings of the U.S.
> Supreme Court in *Marathon* would be effectively eradicated.  *Every* proceeding could
> be characterized as a core proceeding, because every recovery has some effect on the
> size of the bankrupt's estate.  This is obviously contrary to what Congress intended
> when it statutorily distinguished between core and non-core proceedings.

122 B.R. 887, 894–95 (D. Del. 1991).

The Litigation Trust cleverly attempts to invoke the jurisdiction of the Bankruptcy Court by

designating the remaining claims as "fraudulent transfers", "turnover" and "counterclaims to a claim

filed against the bankruptcy estate," but the true substance of the Complaint does not support a finding

of core status because the essential issue in this adversary proceeding is whether the Defendants are

liable under state-law claims.  *See In re Integrated Health Services Inc.*, 291 B.R. 615, 618 (D.Del.

2003) ("an action is not core simply because it can fit within the broad language of Section 157(b)(1).").

9

Furthermore, the Litigation Trust's reliance on alleged "counterclaims to a claim filed against the bankruptcy estate" to establish jurisdiction lacks merit.  Prior to the filing of the "Original Complaint," the Bankruptcy Court made <u>final</u> rulings on the allowance of the Rhodes Entities Claims as set forth in the Proof of Claim and the parties also entered into a court-approved settlement agreement to resolve the Scheduled Claims.  In fact, the final resolution of those claims ended the tolling of the statutes of limitation.  (Art. IV(P) of the Third Amended Plan).  No other proofs of claim have been filed.  Without pending claims against the bankruptcy estate, there can be no "counterclaims."

Furthermore, Count 15 of the Complaint, by which the Litigation Trust seeks turnover of a disputed interest in Gypsum Resources, relies on an ownership dispute being resolved before any relief may be granted and as such is a non-core replevin action and does not support the Litigation Trust's attempt to support jurisdiction in the Bankruptcy Court.  The Litigation Trust's invocation of section 542 does not magically transform the nature of the claims.  *See*, *e.g.*, *In re CIS Corp.*, 172 B.R. 748, 756 (S.D.N.Y. 1994) ("In making my [core/non-core] determination, I will look beyond the labels to the substance of the action in order to discover whether it can be fairly said to arise under the bankruptcy code and falls within the bankruptcy court's core jurisdiction.").  Debtors routinely and improperly assert turnover claims under section 542 as an end-around to invoking bankruptcy court jurisdiction over a state law contract claim:

> Often a proceeding, cast in the language of a core proceeding, merely shrouds state law action under the guise of a bankruptcy issue.  A typical example is an adversary proceeding commenced as an action for turnover of property under 11 U.S.C. §542 . . . .  If 11 U.S.C. §542 were to be interpreted as expansively as often times urged, every action brought by a debtor in possession with the end to recover a money judgment could be construed as an action for turnover, which could well be at odds with *Marathon*.

*In re Republic Reader's Service, Inc.*, 81 B.R. 422, 427–28 (Bankr. S.D. Tex. 1987).

Additionally, section 542 does not apply if title is disputed.  In fact, "[i]t is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute." *In re Seatrain Lines, Inc.*, 198 B.R. 45 50 n. 7 (S.D.N.Y. 1996); *see also CIS*

*Corp.*, 172 B.R. at 760 (stating that the language of section 542 creates "a strong textual inference that an action should be regarded as turnover only when there is no legitimate dispute over what is owed to the debtor."). Thus, "[i]f an ownership dispute must be resolved before any relief can be ordered, the proceeding is a non-core replevin action under state law rather than a §542(a) turnover proceeding." *General Media*, 335 B.R. at 76.

Here, the Litigation Trust makes one claim for turnover pursuant to section 542 of the Bankruptcy Code. Count 15 of the Complaint requests "turnover" of the 99% membership interest in Gypsum Resources, which the Litigation Trust alleges is personal property of one of the Debtors. As is obvious from the Complaint, ownership in Gypsum Resources is undeniably in dispute. Such a dispute must be resolved—under state law—before the Litigation Trust can attempt to invoke a section 542 turnover claim. The questionable nature of one of the Debtor's ownership interest, and clear dispute as to the true ownership in Gypsum Resources forecloses the use of section 542.

Alternatively, it is not even clear the Litigation Trust may bring a claim for turnover as there is no longer a trustee or debtor in possession. Section 542(a) states:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that <u>the trustee</u> may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to <u>the trustee</u>, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit <u>to the estate</u>.

11 U.S.C. §542(a) (emphasis added). Section 363 in turn provides that "[t]he <u>trustee</u>, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, <u>property of the estate</u> . . . ." 11 U.S.C. §363(b)(1) (emphasis added). The specific language of these provisions make section 542 inapplicable on its face. A turnover claim can only be brought by an estate representative (i.e., a trustee or debtor in possession), and only with respect to "property of the estate" —i.e., <u>before</u> confirmation of the plan. "Once confirmation occurs, there is no longer a trustee (i.e., a debtor in possession) to whom property can be delivered, or an estate that can benefit." *In re General Media, Inc.*, 335 B.R. 66, 75

11

(Bankr. S.D.N.Y. 2005); *see also In re Western Integrated Networks, LLC*, 322 B.R. 156, 163 –64 (Bankr. D. Colo. 2004). Furthermore, courts have held that section 363 does not apply to a reorganized debtor. *Id.*

In this case, the Bankruptcy Court entered the Confirmation Order, confirming the Third Amended Plan. Pursuant to the Confirmation Order, the Third Amended Plan was substantially consummated on the "Effective Date." Notice of the Effective Date was filed by the First Lien Steering Committee on April 1, 2010. Accordingly, the Litigation Trust's claim for turnover cannot lie as a matter of law.

Although the fraudulent conveyance claims brought under section 544 may be classified as "core" in 28 U.S.C. § 157(b)(2),[7] they have non-core characteristics, such as being predicated entirely on state law and, therefore, raise constitutional concerns if they were to be submitted to the adjudicatory jurisdiction of the bankruptcy court over the objection of the Defendants.

The Bankruptcy Court also is constitutionally prohibited from hearing the Litigation Trust's claims under section 548 of the Bankruptcy Code—which involve only three transfers constituting less than 1% of the total Claims.[8]  *See Stern v. Marshall*, 131 S. Ct. 2594 (2011). As the U.S. Supreme Court made clear in *Stern*, bankruptcy courts have limited authority under Article III of the Constitution. *See id.* at 2603–04. "When a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' and is brought within the bounds of federal

---

[7] Counts 5 and 6 of the Complaint.

[8] Counts 7 and 8 of the Complaint. The majority of the "Section 548 Transfers" have been asserted in contravention of the Third Amended Plan. The Rhodes Entities were expressly "released from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever arising under chapter 5 of the Bankruptcy Code with respect to transfers made by the Debtors to the Rhodes Entities during the 2 years prior to the Petition Date" for transfers expressly set forth in the Schedules filed with the Bankruptcy Court or disclosed in Attachment B to the Mediation Term Sheet. (Art. VIII(E) of the Third Amended Plan). Most of the "John Rhodes Harmony Transfers" are listed in the Rhodes Design and Development Corporation Statement of Financial Affairs [Doc. No. 13]. The entire amount of the "March 2009 Transfer" is included in the schedules of Heritage Land Company, LLC [Doc. No. 137]. Any effort to further pursue claims for these transfers would be bad faith. Inclusion of these transfers in the Litigation Trust's Complaint evidences that the Litigation Trust has not met its heavy burden of "proving" that this Court actually has jurisdiction over these fraudulent transfer and avoidance claims.

jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III Courts." *Id*. at 2609 (citations omitted) (quoting *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in judgment)).  This is so even if Congress seems to have indicated otherwise.  Indeed, bankruptcy courts may not hear claims reserved to Article III courts because they are not Article III courts nor adjuncts of Article III courts when hearing non-core proceedings.

In order for Congress to allow a non-Article III court to adjudicate claims that must normally be heard by an Article III court, the claim must fall within one of the recognized exceptions to Article III.  Such exceptions arise where "the grant of power to the Legislative and Executive Branches was historically and constitutionally so exceptional that the congressional assertion of a power to create legislative courts was consistent with, rather than threatening to, the constitutional mandate of separation of powers."  *Northern Pipeline*, 458 U.S. at 64.  Previously recognized exceptions include territorial courts, courts martial, and the "public rights" exception.  *Id*. at 64–67.  The cases within the public rights exception historically involved disputes "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive and legislative departments," but has more recently evolved to include cases involving rights "integrally related to particular federal government action."  *Stern*, 131 S.Ct. at 2612–13.

Fraudulent conveyance claims in bankruptcy do not fall within the public rights exception because they are "quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankruptcy corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res."  *Granfinanciera v. Nordberg*, 492 U.S. 33, 56 (1989).  Such reasoning was reaffirmed by *Stern* as the Court rejected the contention that the debtor's compulsory counterclaim fell under the public rights exception:

> *Granfinanciera's* distinction between actions seek "to augment the bankruptcy estate"
> and those that seek "a pro rata share of the bankruptcy res," reaffirms that Congress may
> not bypass Article III simply because a proceeding may have *some* bearing on a

13

bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.

*Stern*, 131 S.Ct. at 2618 (emphasis in original).

Here, the Litigation Trust's claims for fraudulent transfers are essentially common law claims attempting to augment the Litigation Trust Assets. They do not stem from the bankruptcy itself and would not be resolved in the claims allowance process. They are private rights that must be adjudicated by an Article III or state court. The Bankruptcy Court's jurisdiction over such claims, even if they are "core" proceedings, is therefore unconstitutional.

Furthermore, and as indicated previously, courts in this Circuit and others have consistently found that "related to" jurisdiction is significantly limited in the post-confirmation context. The claims against the Defendants lack the close nexus to the Debtor's confirmed plan of reorganization, which nexus is required to invoke "related to" jurisdiction. Adjudicating the claims of the Litigation Trust against the Defendants will not affect the interpretation, implementation, consummation, execution, or administration of the Third Amended Plan. The lack of such characteristics indicate the Litigation Trusts claims against Defendants are matters that do not have a 'close nexus' to the bankruptcy plan or proceeding and therefore lack the "close nexus" required to establish "related to" jurisdiction. *See, Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l. Inc.)*, 372 F.3d 154 (3d Cir. 2004) and *In re Pegasus Gold Corp.*, 393 F.3d 1189 (9th Cir. 2005).

### D.    The Majority of the Claims Are Legal and Defendants are Entitled to a Jury Trial on Those Claims.

There is no real question that the Defendants have a constitutional right to a jury trial. The Seventh Amendment provides: "In Suits at common law, where the value in controversies shall exceed twenty dollars, the right of a jury trial shall be preserved . . ." U.S. CONST. amend. VII. Furthermore, the 9th Circuit has observed:

The Seventh Amendment does not allow another court's review of facts found by the jury with no standard of deference and with the authority to redecide those matters in the first instance. Accordingly we find that grave Seventh Amendment problems would

14

1

arise if a jury trial is conducted by the bankruptcy court because section 157(c)(1) requires de novo review by the district court of non-core matters.

2

3

*Cinematronics*, 916 F.2d at 1451 (citations omitted).  The Supreme Court explained that "suits at

4

common law" referred to those controversies in which legal rights were to be determined, as

5

distinguished from those cases in which "equitable rights alone were recognized, and equitable

6

remedies were administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 2790

7

(1989).

8

There is a two step analysis for determining whether a claim is legal and therefore a claim for

9

which the Defendants are entitled to a jury trial. "First, we compare the statutory action to 18th-century

10

actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we

11

examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United*

12

*States,* 481 U.S. 412, 417-418, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (citations omitted).  Of this

13

two stage analysis the remedy sought is on balance more important.  *Granfinanciera* 492 U.S. at 42.

14

("The second stage of this analysis is more important than the first.").  "If, on balance, these two factors

15

indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether

16

Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative

17

body that does not use a jury as fact finder." *Id*.

18

If the legal claims predominate, then the right to jury trial is not lost just because the legal claim

19

is combined with equitable relief.  "It is well established that a party does not lose its right to a jury trial

20

with respect to a legal claim because the legal claim is combined with an equitable claim in the same

21

action."  *In re Bonds Distributing Co., Inc.*, 2000 WL 33682815, *4 (Bankr. M.D.N.C. 2000) (citing

22

*Dairy Queen, inc. v. Wood*, 369 U.S. 469, 472–73 (1962)).  Monetary relief is generally characterized as

23

legal relief, but is not exclusively recognized as legal in nature.  For instance, monetary relief sought

24

which is restitutionary in nature is considered equitable.  *Chauffeurs, Teamsters and Helpers Local No.*

25

*391 v. Terry*, 494 U.S. 558, 570 (1990).  Additionally, monetary relief can be equitable in nature if it is

26

"incidental to or intertwined with injunctive relief." *Id*. at 571.

27

Turning to the sixteen counts alleged in the Complaint, Counts 1 through 13 are all legal in

28

nature as the relief sought is monetary damages of ascertained and definite amounts.  Where the relief

15

1    sought is "recovery of money payments of ascertained and definite amounts" such "conclusively

2    demonstrates that this cause of action should be characterized as legal rather than equitable, such that

3    petitioners are prima facie entitled to a jury trial." *Granfinanciera*, 492 U.S.at 34.  Here, the relief

4    sought is return of ascertained and definite sums of money.  *See* Complaint ¶ 131, 134, 140, 144, 145,

5    150, 156, 160, 165, 169, 175, 187, 191, 201, 205, 209.  Count 14 for declaratory relief is neither legal

6    nor equitable and "therefore courts have had to look to the kind of action that would have been brought

7    had Congress not provided the declaratory judgment remedy." *In re Kollel Mateh Efraim, LLC*, 406

8    B.R. 24, 28 (Bkrtcy S.D.N.Y. 2009) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485

9    U.S. 271, 284, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988)).  Counts 15 and 16 (Avoidance of Actual/Intent

10    Transfer of Gypsum) are equitable in nature.  Additionally, simply filing a declaratory action does not

11    affect the right to trial by jury.  Even if "Plaintiffs initiated this lawsuit as a declaratory judgment action.

12    The fact that Plaintiffs have filed for a declaratory judgment does not affect Defendants' right to a jury

13    trial.  A declaratory judgment in itself is neither legal nor equitable in nature." *In re G-I Holdings, Inc.*,

14    380 F.Supp.2d 469, 472–73 (D.N.J. 2005) (citing *Gulfstream Aerospace Corp. v. Mayacamas Corp.*,

15    485 U.S. 271, 284, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988)).

16         **E.        Primarily Private Rights Are Involved and Defendants Are Entitled to a Jury.**

17              Pursuant to 28 U.S.C. §157(e), absent the express consent of the parties and a special des-

18    ignation of jurisdiction by the district court, the bankruptcy court may not hold a jury trial in a non-core

19    proceeding.  Here, the Defendants have requested a trial by jury.  *See In re Orion Pictures Corp.*, 4 F.3d

20    1095, 1101 (2d Cir. 1993) (bankruptcy court cannot conduct jury trial on a non-core matter is sufficient

21    cause for permissive withdrawal); *see also In re Daewoo Motor America Inc.*, 302 B.R. 308, 315 (C.D.

22    Cal. 2003) ("Thus, where there is a right to jury trial in a non-core matter, that factor may weigh heavily

23    in favor of withdrawing the reference so as to give the parties an opportunity for a jury trial in the

24    district court.").  The Seventh Amendment requires a jury trial "only if a cause of action is legal in

25    nature and it involves a matter of private right."  Id. at 42 n. 4, 109 S. Ct at 2790 n. 4.

26              Here, the causes of action alleged against the Defendants are matters of private right and

27    Defendants are entitled to a jury trial.  "An alter ego claim is a private action under state law.  *In re

28    Freeway Foods Greensboro, Inc.*, 449 B.R. 860, 885 (Bkrtcy. M.D.N.C. 2011).  "In this case, the

1   Trustee's claims for . . . unjust enrichment, which are neither created under the Bankruptcy Code nor

2   core proceedings, are all private state-law causes of action as to which Congress lacks the power to

3   eliminate the right to trial by jury." *In re Automotive Professionals, Inc.*, 389 B.R. 621, 628 (Bkrtcy.

4   N.D.Ill. 2008)(citing *Granfinanciera v. Nordberg*, 492 U.S. 33, 56 (1989)). "Although the issue admits

5   of some debate, a bankruptcy trustee's right to recover a fraudulent conveyance under 11 U.S.C. §

6   548(a)(2) seems to us more accurately characterized as a private rather than a public right as we have

7   used those terms in our Article III decisions." *Granfinanciera*, 492 U.S.at 55.  Where, as under the

8   Complaint, non-core private rights of action are raised, the Defendants have  a clear right to trial by

9   jury.

10          **F.      Conservation of Estate and Non-Debtor Resources Favors Withdrawal of
                      Reference**.

11          As set forth above, because the Bankruptcy Court is not able to finally determine these

12   proceedings without the consent of the Defendants, any recommendation it makes will need to be

13   reviewed de novo by the Federal District Court.  It would be more efficient to allow these proceedings

14   to go forward in the Federal District Court.  Furthermore, the Litigation Trust has the ability pursuant

15   to the Trust Agreement to bring this litigation in any court, so it cannot argue that it will be prejudiced

16   in any manner.

17          **G.      Uniformity of Bankruptcy Administration**.

18          Withdrawal of this adversary proceeding will not interfere with the uniform administration of

19   the bankruptcy law.  The Litigation Trust's claims are creatures of state law, not federal bankruptcy

20   law.   Their resolution may at most have the effect of augmenting the recoveries of the trust

21   beneficiaries (as a result of confirmation there is no estate to augment).  Nor does the Bankruptcy Court

22   have   any   special   expertise   in   resolving   the   Nevada   law   claims   at   issue.

23

24

25

26

27

28

## IV.    CONCLUSION

WHEREFORE, for the reasons set forth herein, Defendants respectfully request that the Court (i) enter an order granting Defendants Motion; and (ii) grant such other and further relief as may be just and proper.

Dated this 29th day of June 2012.

JIMMERSON HANSEN, P.C.

By:    /s/ James Jimmerson, Esq.
JAMES JIMMERSON, ESQ.
Nevada Bar No. 264
415 South 6th Street, Suite 100
Las Vegas, NV  89101
*Counsel for Sagebrush Enterprises, Inc., Harmony Homes, Inc., North 5th, LLC, Farm Hualapai, LLC, Harmony2, LLC, Hayden Springs Partners, LLC, Tropical Sands, LLC and Rhodes Ranch, LLC*

NITZ, WALTON & HEATON, LTD.

By:    William H. Heaton, Esq.
W. OWEN NITZ, ESQ.
Nevada Bar No. 115
JAMES H. WALTON, ESQ.
Nevada Bar No. 449
WILLIAM H. HEATON, ESQ.
Nevada Bar No. 1097
601 South Tenth Street, Suite 201
Las Vegas, NV  89101
*Counsel for John C. Rhodes, John C. Rhodes, Trustee of the Dynasty Trust I, John C. Rhodes, Trustee of the Dynasty Trust II, Gypsum Resources, LLC, Truckee Springs Holdings, Inc.*

18

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that on the 29th day of June, 2012, I caused the foregoing document to be filed

3

electronically via the electronic filing system of the United States Bankruptcy Court for the District of

4

Nevada, which caused a true and correct copy of the foregoing to thereafter be served electronically via

5

the Bankruptcy Court's ECF noticing system upon those parties registered to receive electronic service

6

in this case.

7

8

                  /s/ Maureen E. Marella
                  Maureen E. Marella - Employee of

9

                  NITZ, WALTON & HEATON, LTD
                  601 S. 10th Street, Suite 201

10

                  Las Vegas, Nevada 89101
                  (702) 474-4004

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28