RECEIVED & FILED

NOV  I   4 17 PM '12

U.S. BAN... ...CY COU...
MARY A. SCHOTT, CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| *In re:*<br><br>The RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,<br><br>Reorganized Debtors.<br><br>THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC. ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES M. RHODES, et al.,<br><br>Defendants. | Case No. 2:12-cv-01272-MMD-VCF<br>Bankruptcy Case No. BK-09-14814-LBR<br>(Jointly Administered)<br>Chapter 11<br>Adversary No. 12-01099-LBR<br><br>ORDER<br><br>(Defs.' Motion for Withdrawal of the Reference with Regard to Adversary – dkt. no. 1)<br><br>(Plfs.' Motion for Leave to File Limited Sur-reply in Further Opposition to Motion for Withdrawal of Reference – dkt. no. 7). |

Before the Court is Defendants' Motion to Withdraw Reference (dkt. No. 1) and Debtor Plaintiffs' Motion for Leave to File a Sur-Reply (dkt. No. 7). For the reasons described below, both Motions are denied.

I.    **BACKGROUND**

The Litigation Trust of the Rhodes Companies, LLC, et al. (the "Litigation Trust" or "Debtors") operated a home-building business known as "Rhodes Homes." In late 2005, James Rhodes and his affiliated entities ("Defendants") allegedly caused Plaintiffs to enter into an "ill-advised" $500 million loan, and then misappropriated approximately $110 million of the loan proceeds. Debtors assert that $38.5 million of the misappropriated funds went towards paying Mr. Rhodes' personal income tax

1   obligations.  Plaintiffs allege that Defendants proceeded to delay their bankruptcy filings

2   in order to launch a new home-building company in direct competition with Debtors.

3   Debtors assert that this resulted in their becoming over-leveraged, under-capitalized,

4   and insolvent.

5       On March 31, 2009, and April 1, 2009 (collectively, "Petition Date"), each of the

6   debtors in this case commenced a voluntary case with the Bankruptcy Court under

7   Chapter 11 of Title 11 of the United States Bankruptcy Code.

8       On February 18, 2010, the First Lien Steering Committed filed the Third Amended

9   Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Debtors

10  (the "Third Amended Plan" or "TAP").  The TAP established the Litigation Trust to

11  enforce all rights to commence and pursue, as appropriate, any and all causes of action,

12  whether arising before or after the Petition Date.

13      On March 12, 2010, the Bankruptcy Court entered an order confirming the TAP.

14  Under the Confirmation Order, the TAP was substantially consummated on the "Effective

15  Date," and Notice of the Effective Date was filed by the First Lien Steering Committee on

16  April 1, 2010.

17      On or about May 11, 2012, the Litigation Trust filed this Complaint in *In re the*

18  *Rhodes Companies, LLC.*, et al., against Defendants.  (Dkt. no. 3.)  The Complaint lists

19  sixteen causes of action, involving alleged breach of fiduciary duty, alter ego, and

20  allegedly fraudulent conveyances.

21      Defendants assert that this Court, rather than the Bankruptcy Court, should hear

22  all matters in this case.  Defendants have filed a Demand for a Jury Trial (dkt. no. 1-4),

23  and assert that in light of this demand, it would be improper for the Bankruptcy Court to

24  have jurisdiction over this case.  Further, Defendants argue that it is in the interest of

25  judicial efficiency to grant their Motion to Withdraw Reference, and that the nature of the

26  underlying claims and the private rights involved in the Complaint favor granting

27  Defendants' Motion.

28  ///

2

**II.    MOTION FOR LEAVE TO FILE SUR-REPLY**

Debtors request leave to file a sur-reply (dkt. no. 7) to respond to certain assertions raised by Defendants in their Reply Brief.  Sur-replies are not authorized by either the Federal Rules of Civil Procedure or this Court's Local Rules, though the Court may grant permission for a party to file a sur-reply if requested and if justified. *Padilla v. Nevada*, No. 2:09-CV-01636, 2012 WL 380003, at *1 (D. Nev. Feb. 6, 2012).

The Court has reviewed Debtors' Request and holds that they do not state sufficient grounds for filing a sur-reply.  Rather, Debtors merely desire another attempt to counter Defendants' arguments, which is an insufficient reason for filing a sur-reply. The Motion is accordingly denied.

**III.    MOTION FOR WITHDRAWAL OF REFERENCE**

**A.    Legal Standard**

District courts have jurisdiction over matters that arise under title 11.  28 U.S.C. § 1334.  However, district courts "may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  28 U.S.C. § 157(a).  After referral, the district court retains discretion to withdraw the reference, in whole or in part, for cause shown.  28 U.S.C. § 157(d).  In determining whether to withdraw reference, "a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1999).  Such other relevant factors include whether the issues are core or non-core proceedings, and the right to a jury trial. *See, e.g., In re Coe-Truman Technologies, Inc.*, 214 B.R. 183, 187 (N.D. Ill. 1997) ("As a non-core proceeding, the bankruptcy court's decision will be subject to de novo review in this Court . . . .  We find, therefore, that it is a more efficient use of judicial resources for this Court to decide this case in the first instance.") (citation omitted); ///

3

1   *Ellenberg v. Bouldin*, 125 B.R. 851, 856 (N.D. Ga. 1991) (withdrawing reference in

2   fraudulent transfer action because defendant had right to jury trial).

3          A bankruptcy court's statutory authority to enter judgment in a particular

4   proceeding depends on whether that proceeding is a "core proceeding[ ]" under 28

5   U.S.C. § 157(b)(1).  A bankruptcy court is authorized by statute to "hear and determine

6   all cases under title 11 and all core proceedings arising under title 11, or arising in a

7   case under title 11 . . . and may enter appropriate orders and judgments" subject to

8   appellate review by the district court.  28 U.S.C. § 157(b)(1).  A bankruptcy court is

9   authorized to hear a non-core proceeding "that is otherwise related to a case under title

10  11" but may not enter final judgment on such a matter absent consent of all the parties.

11  *Id.* at § 157(c).  Instead, in a non-core proceeding, the "bankruptcy judge shall submit

12  proposed findings of fact and conclusions of law to the district court, and any final order

13  or judgment shall be entered by the district judge after considering the bankruptcy

14  judge's proposed findings and conclusions and after reviewing de novo those matters to

15  which any party has timely and specifically objected."  *Id.* at § 157(c)(1).

16         In *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011), the Supreme Court held that

17  bankruptcy courts cannot make a final judgment on a cause of action traditionally within

18  the judicial power of an Article III Court.  The Court reasoned that if a bankruptcy court

19  were to be assigned a matter traditionally within the judicial power of an Article III court,

20  this delegation would circumvent the protections provided by Article III which ensure that

21  parties have access to an independent judiciary.  *Id.*

22         B.     Discussion

23         The parties agree that Defendants' case involves numerous non-core claims,[1]

24  and that this Court is the proper venue for an eventual trial over those claims.  What the

25  ///

26  _____

27  [1]For example, the claims for breach of fiduciary duty, aiding and abetting
    breaches of fiduciary duty, alter ego/piercing the corporate veil, unjust enrichment, and
28  declaratory relief.

4

1  parties disagree about is whether the Bankruptcy Court or this Court has jurisdiction over

2  pre-trial motions.  They disagree on two primary issues.

3  First, the parties disagree about whether a Bankruptcy Court can issue a final

4  order on the fraudulent conveyance and related claims.  These claims constitute eleven

5  out of the sixteen causes of action: five counts seeking to avoid fraudulent transfer under

6  11 U.S.C. § 544 and/or § 548, five counts seeking to avoid fraudulent transfers under 11

7  U.S.C. § 550, and one count seeking turnover under 11 U.S.C. § 542.

8  Second, even should the Court determine that these fraudulent conveyance

9  claims must be adjudicated by this Court, the parties disagree about whether it would be

10  in the interests of judicial economy for the Bankruptcy Court to handle all pre-trial

11  motions on a recommendation basis under § 157(c)(1).

### 1.    Fraudulent Conveyance Claims

13  This Court recently addressed whether fraudulent conveyance claims constitute

14  core or non-core claims in *Rosenberg v. Harvey A. Bookstein*, 479 B.R. 584 (D. Nev.

15  2012).  It held that though statutorily-designated as "core" claims under 28 U.S.C. §

16  157(b)(2)(H), they are akin to non-core claims and therefore a bankruptcy court cannot

17  enter final judgment on such claims.  The Court reasoned that:

> 18  [t]here has been some debate in the trial courts as to whether bankruptcy
> courts lack the constitutional authority to hear fraudulent conveyance
> 19  claims, with some concluding that their authority to do so remains even
> after *Stern*.  *See, e.g., Kelley v. JPMorgan Chase & Co.*, 464 B.R. 854,
> 20  862-63 (D. Minn. 2011) (suggesting *Stern* did not deprive bankruptcy court
> of the ability to enter a final judgment on a fraudulent transfer claim); *In re*
> 21  *Appalachian Fuels, LLC*, 472 B.R. 731, 739-41 (E.D. Ky. 2012) (holding
> that bankruptcy court has the authority to enter final orders and judgments
> 22  on fraudulent transfer claims); *In re Madoff*, 848 F. Supp. 2d 469, 483 n. 5
> (S.D.N.Y.2012) (same); In re Am. Bus. Fin. Servs., 457 B.R. 314, 319–20
> 23  (Bankr. D. Del. 2011) (same). These decisions understand *Stern* as having
> a very narrow effect, and use language from earlier precedent describing
> 24  fraudulent conveyance claims as a hallmark feature of bankruptcy cases.
>
> 25  But reaching such a conclusion requires that the Court ignore the logic of
> *Stern* as well as the Supreme Court's decision in *Granfinanciera, S.A. v.*
> 26  *Nordberg*, 492 U.S. 33 (1989). *Granfinanciera* held that defendants who
> had not submitted a claim against a bankruptcy estate had a Seventh
> 27  Amendment right to a jury trial when sued by the trustee in bankruptcy to
> recover an allegedly fraudulent monetary transfer, notwithstanding
> 28  Congress' designation of fraudulent conveyance actions as "core

proceedings" in 28 U.S.C. § 157(b)(2)(H).  *Id.* at 36, 109 S.Ct. 2782. The *Granfinanciera* Court characterized such actions as involving "private rights" under the framework outlined in *N. Pipeline Constr. Co.*, and held that the defendants' Seventh Amendment rights were violated because the actions were not "integral to the restructuring of debtor-creditor relations" and do not "arise as part of the process of allowance and disallowance of claims." *Id.* at 60.  The Court stated that:

> matters from their nature subject to a suit at common law or in equity or admiralty lie at the protected core of Article III judicial power. . . . There can be little doubt that fraudulent conveyance actions by bankruptcy trustees – suits which . . . constitute no part of the proceedings in bankruptcy but concern controversies arising out of it – are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.

*Id.* at 56.  For that reason, a court deciding a fraudulent conveyance action exercises its Article III judicial power, and the Seventh Amendment entitles a litigant to a jury trial on such claims. This is so because Congress lacks the power to strip parties of their constitutional right to a jury trial if private rights are at issue. Id. at 54–55, 109 S.Ct. 2782. . . .

This Court's holding is consistent with [several] other district courts who have heard this issue. *See In re Heller Ehrman LLP*, 464 B.R. at 354; *In re Canopy Financial, Inc.*, 464 B.R. 770, 772-773 (N.D. Ill. 2011); *Adelphia Recovery Trust v. FLP Group, Inc.*, No. 11 Civ. 6847, 2012 WL 264180, at *3-4 (S.D.N.Y. Jan. 30, 2012); *In re Teleservices Group, Inc.*, 456 B.R. 318, 338 (Bankr. W.D. Mich. 2011).

*Rosenberg*, 479 B.R. at 588-89.

In light of this reasoning, the Court agrees with Defendants that the Bankruptcy Court lacks constitutional authority to enter judgment on the eleven causes of action relating to fraudulent conveyance.[2]

### 2.    Permissive Withdrawal

In *Rosenberg*, this Court determined that "while a bankruptcy court may not enter a final judgment on a fraudulent conveyance claim, district courts have the authority to

---

[2]The Court notes that this question – whether *Stern* should be read to hold that bankruptcy judges do not have constitutional authority to enter final judgments in fraudulent conveyance actions – is currently pending before the Ninth Circuit, *see In re Bellingham Ins. Agency, Inc.*, No. 11-35162, (9th Cir. filed Feb. 18, 2011).

1  delegate to the bankruptcy court the responsibility for issuing proposed findings of fact

2  and conclusions of law." 479 B.R. at 591.

3  A district court may permissively withdraw a reference "for cause shown." *Sec.*

4  *Farms*, 124 F.3d 999, 1008 (9th Cir. 1997); *see also* 28 U.S.C. § 157. "In determining

5  whether cause exists, a district court should consider the efficient use of judicial

6  resources, delay and costs to the parties, uniformity of bankruptcy administration, the

7  prevention of forum shopping, and other related factors." *Sec. Farms*, 124 F.3d at 1008.

8  Defendants point to five primary reasons that judicial economy would be best

9  served by this Court hearing all pending motions in this case. First, the Complaint, when

10  viewed as a whole, seeks to hold Defendants liable under Nevada state law. Second,

11  Defendants cite to *In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986) for the

12  proposition that "[i]nasmuch as a bankruptcy court's determination on non-core matters

13  is subject to *de novo* review by the district court, unnecessary costs could be avoided by

14  a single proceeding in a district court." (Dkt. no. 5 at 11.) Third, Defendants note that

15  the tax claims in this case are already before this Court. Fourth, Defendants state that

16  this Court will ultimately determine the disposition of the majority Debtors' causes of

17  action, as the Bankruptcy Judge can only make a recommendation on the non-core and

18  fraudulent conveyance claims. Finally, Defendants argue that the Bankruptcy Judge has

19  already "pre-judged" this case. (Dkt. no. 5 at 12.)

20  Defendants' fifth argument weighs against granting their Motion. Prevention of

21  forum shopping is one of the *Sec. Farms* factors a court should consider in determining

22  whether to grant a motion to withdraw reference. 124 F.3d at 1008. Here, Defendants'

23  argument that the Bankruptcy Judge is predisposed to rule in Debtors' favor is a brazen

24  attempt to shop for a more sympathetic forum.

25  Defendants' other four reasons for granting their Motion are unpersuasive. Given

26  that the fraudulent conveyance and related claims comprise eleven of the sixteen

27  causes of actions in Debtors' Complaint, the Court holds that judicial economy is best

28  served by the Bankruptcy Judge issuing reports and recommendations on all pre-trial

1  matters in this case.  While a jury trial must be conducted by this Court on the fraudulent

2  transfer claims, all pre-trial proceedings up to and through summary judgment motions

3  may be delegated to the bankruptcy court. *See In re Healthcentral.com*, 504 F.3d 775,

4  787 (9th Cir. 2007) (holding that a jury demand does not instantly require a bankruptcy

5  court to withdraw jurisdiction, since "allowing the bankruptcy court to retain jurisdiction

6  over the action until trial is actually ready . . . ensure[s] that our bankruptcy system is

7  carried out."); *In re Petters Co.*, 440 B.R. 805, 808-10 (Bankr. D. Minn. 2010) (denying

8  motion to transfer to district court as premature, because demand for jury trial does not

9  require transfer until after completion of summary judgment proceedings).

10  Judicial economy militates in favor of allowing the bankruptcy court to proceed

11  with pre-trial matters in cases involving fraudulent conveyance claims.  As explained by

12  *Adelphia Recovery Trust v. FLP Group, Inc.*, 2012 WL 264180, at *6-7:

13  Since Congress delegated broader authority to bankruptcy courts in core
    matters than non-core matters, 28 U.S.C. § 157(b)(1), (c) (1), and the
14  delegation included the authority to hear and determine all cases and enter
    appropriate orders, 28 U.S.C. § 157(b)(1), there appears to be no reason
15  why bankruptcy courts cannot continue to hear all pre-trial proceedings and
    enter as an appropriate order proposed findings of fact and conclusions of
16  law in the manner authorized by Section 157(c)(1)." *In re Heller Ehrman
    LLP*, 464 B.R. at 355; *see also In re Refco Inc.*, 461 B.R. 181, 193
17  (S.D.N.Y. 2011) ("it would be absurd to conclude that the bankruptcy courts
    are deprived of jurisdiction over matters designated by Congress as core
18  when, for Article III reasons, Congress gave jurisdiction to bankruptcy
    courts to issue proposed findings of fact and conclusions of law in non-core
19  matters.")

20  Allowing a bankruptcy judge to issue findings of facts and conclusions of
    law in core matters is described favorably in Stern:
21
    [T]he current bankruptcy system . . . requires the district court
22  to review de novo and enter final judgment on any matters
    that are "related to" the bankruptcy proceedings, and permits
23  the district court to withdraw from the bankruptcy court any
    referred case, proceeding or part thereof. [Respondent] has
24  not argued that the bankruptcy courts are barred from
    hearing all counterclaims or proposing findings of fact and
25  conclusions of law on these matters, but rather that it must be
    the district court that finally decides them. We do not think the
26  removal of counterclaims such as [Petitioner's] from core
    bankruptcy jurisdiction meaningfully changes the division of
27  labor in the current statute. . . .

28

131 U.S. S.Ct. 2620. Removing fraudulent transfer actions from bankruptcy court jurisdiction would meaningfully change the division of labor between bankruptcy and district courts. *In re Heller Ehrman LLP*, 464 B.R. at 355; *In re Coudert Bros. LLP*, No. 11-2785, 2011 WL 5593147, at *13 (S.D.N.Y. Sept. 23, 2011) ("treating the findings below as mere recommendations subject to de novo review here . . . preserves as far as possible the division of labor intended by the 1984 Act."); *accord In re Extended Stay, Inc.*, 2011 WL 5532258, at *5 ("In the event that the bankruptcy court does not have constitutional authority to enter a final judgment on certain claims, it may submit proposed findings of fact and conclusions of law to this Court. Withdrawing the reference simply due to the uncertainty caused by Stern is a drastic remedy that would hamper judicial efficiency on the basis of a narrow defect in the current statutory regime . . . .").

Thus, "the logical conclusion" (and the most realistic one too) is that bankruptcy courts may issue proposed findings of facts and conclusions of law in such fraudulent transfer actions. *In re Heller Ehrman LLP*, 464 B.R. at 356; *In re Refco Inc.*, 461 B.R. 181,193; *In re Coudert Bros. LLP*, 2011 WL 5593147, at *13.

Therefore, the nature of the fraudulent conveyance claims and their status as "core" matters makes the bankruptcy court a more competent venue for pretrial matters. This factor strongly disfavors permissive withdrawal. Moreover, as Debtors note, the Bankruptcy Court is familiar with the facts of this case, has already presided over a Rule 2004 Discovery in the case, and is handling approximately six adversary proceedings in the Rhodes bankruptcy. The fact that the Bankruptcy Judge is well-versed in the facts in this case weighs against Defendants because withdrawal is inappropriate where it would disrupt the uniformity of bankruptcy proceedings or result in costs or delay to the parties. *See Sec. Farms*, 124 F.3d at 1008. As the Bankruptcy Judge is already familiar with this case, judicial economy is best served by the Bankruptcy Judge adjudicating pre-trial motions.

## IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Withdrawal of the Reference with Regard to Adversary Proceeding (dkt. no.1) is DENIED.

IT IS FURTHER ORDERED that Debtor Plaintiffs' Motion for Leave to File a Sur-Reply (dkt. No. 7) is DENIED.

///

1    The bankruptcy court may present reports and recommendations to the district

2 court on dispositive issues.

3

4    ENTERED THIS  7th day of November 2012.

5

6    _____
     MIRANDA M. DU

7    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10