Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Telephone: 702.362.7800
Facsimile: 702.362.9472
E-Mail:    nleatham@klnevada.com

Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone:  212.872.1000
Facsimile:  212.872.1002
E-Mail:    pdublin@akingump.com
           aqureshi@akingump.com

*Counsel for the Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 09-14814-LBR** |
| | § | **(JointlyAdministered)** |
| **THE RHODES COMPANIES, LLC,** | § | |
| aka "Rhodes Homes," *et al.*, | § | **Chapter 11** |
| | § | |
| **Reorganized Debtors.**[1] | § | |
| | § | |
| | § | |
| | § | |

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

103814486 v3

| Affects:<br>☒ All Debtors<br>☐ Affects the following Debtor(s) | § § § § § § § § § | MOTION OF THE REORGANIZED DEBTORS FOR ENTRY OF AN ORDER ENFORCING THE TERMS OF THE THIRD AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE RHODES COMPANIES, LLC, ET AL. AND THE RELATED CONFIRMATION ORDER |
|---|---|---|

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors"), by and through their undersigned counsel, hereby file this motion (the "Motion") for entry of an order, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), (i) enforcing the terms of the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, et al. (the "Plan") and the related Findings of Fact, Conclusions of Law, and Order Confirming the First Lien Steering Committee's Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC et al. (the "Confirmation Order") and (ii) clarifying that Commerce Associates, LLC ("Commerce") has no rights under the Tuscany Purchase Agreement (as defined below) and the Conditional Assignment (as defined below).[2] In support of the Motion, the Reorganized Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

The Reorganized Debtors file this Motion in order to prevent Commerce from violating the terms of the Plan and the Confirmation Order by seeking to enforce alleged rights under executory contracts that were rejected pursuant to the Plan: the Tuscany Purchase Agreement and the Conditional Assignment.  Reorganized Debtor Rhodes Design

---

[2] This Motion is without prejudice to any rights that the Reorganized Debtors may have under applicable state law.

2

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

and Development Corporation ("RDDC") and its affiliates are the developers of certain residential property and a related golf course in the Tuscany Project (as defined below), a residential development in Henderson, Nevada.  Pursuant to the Master CC&Rs (as defined below), RDDC is the "Declarant" for the development within the Tuscany Project and, thus, holds the "Declarant Rights."  The Declarant Rights are critical to the ability of RDDC and its affiliates to continue to manage and develop the Tuscany Project, and any interference with the Declarant Rights would be harmful to the Reorganized Debtors' business.  Nevertheless, relying on the Conditional Assignment (which the parties entered into along with the Tuscany Purchase Agreement), Commerce has taken the position that it holds the Declarant Rights and has the right to exercise and assign such rights with respect to the Tuscany Project.  Commerce has advanced this position notwithstanding the fact that the Conditional Assignment (and the Tuscany Purchase Agreement) was rejected pursuant to the Plan and the Confirmation Order, and thus, Commerce is without any remaining rights under such agreements.

Commerce cannot be permitted to continue to violate the terms of the Plan and the Confirmation Order by seeking to enforce the terms of a rejected contract.  Accordingly, the Court should exercise the jurisdiction it retained under the Plan to enforce the terms of the Plan and the Confirmation Order and clarify that Commerce has no rights under the Tuscany Purchase Agreement or the Conditional Assignment.

## JURISDICTION

1. This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334 and Article XII of the Plan.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3

2. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Bankruptcy Code section 105(a).

**BACKGROUND**

**A. The Chapter 11 Cases and the Plan**

4. On either March 31, 2009 or April 1, 2009 (collectively, the "Petition Date"), each of the debtors (collectively, the "Debtors") commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

5. On March 12, 2010, the Court entered the Confirmation Order confirming the Plan. The effective date of the Plan (the "Effective Date") occurred on April 1, 2010.

6. Pursuant to Article V.A of the Plan, the Debtors' executory contracts or unexpired leases that were not assumed or rejected prior to the Effective Date were deemed rejected pursuant to Bankruptcy Code sections 365 and 1123, except for those executory contracts or unexpired leases: (i) listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" attached to the disclosure statement for the Plan as Exhibit N (the "Assumption Schedule"); (ii) that were Intercompany Contracts (as defined in the Plan), in which case such Intercompany Contracts were deemed automatically assumed by the applicable Debtor as of the Effective Date, unless such Intercompany Contract previously was rejected by the Debtors pursuant to an order of the Court or was the subject of a motion to reject pending on the Effective Date; (iii) that were the subject of a motion to assume or reject pending on the Effective Date; (iv) that were subject to a motion to reject with a requested effective date of rejection after the Effective Date; or (v) that were otherwise expressly assumed or rejected pursuant to the Plan. *See* Plan, Art. V.A.

4

7.    Pursuant to Article XII.3 of the Plan, the Court retained exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to resolve matters related to the rejection of any executory contract or unexpired lease to which a Debtor was party. *See* Plan, Art. XII.3.  In addition, pursuant to Article XII.21 of the Plan, the Court has retained exclusive jurisdiction to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order.  *See* Plan, Art. XII.21.

**B.    The Tuscany Purchase Agreement[3]**

8.    Prior to the commencement of the Chapter 11 Cases, RDDC, a Debtor in the Chapter 11 Cases and now a Reorganized Debtor, and Commerce, entered into that certain Purchase Agreement and Grant of Options dated November 14, 2003 (as amended from time to time, the "Tuscany Purchase Agreement").  A copy of the Tuscany Purchase Agreement is attached to the Boettcher Declaration as Exhibit A.

9.    Pursuant to the Tuscany Purchase Agreement, Commerce granted to RDDC the right and option to purchase all of the Property (as defined in the Tuscany Purchase Agreement), which consisted of certain residential lots and parcels contained within the Tuscany Project.[4]

10.    Prior to the commencement of the Chapter 11 Cases and in accordance with the terms and provisions of the Tuscany Purchase Agreement, RDDC and/or its affiliated

---

[3] A copy of the Declaration of Don A. Boettcher in Support of the Motion of the Reorganized Debtors for Entry of an Order Enforcing the Terms of the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, et al. and the Related Confirmation Order (the "Boettcher Declaration") is attached hereto as Exhibit 2.  The Boettcher Declaration sets forth the relevant facts with respect to the Tuscany Purchase Agreement, the Master CC&Rs, the Conditional Assignment and certain correspondence relating thereto.

[4] "Tuscany Project" means that certain master planned community located in the City of Henderson, Nevada, which is known as "Tuscany Village."

5

entities acquired certain portions of the Property. In addition, pursuant to a separate agreement between Tuscany Golf Country Club, LLC (an affiliate of RDDC), as the buyer, and Commerce, as the seller, Tuscany Golf Country Club, LLC ("TGCC") acquired title to, and currently owns and operates, an 18-hole golf course and related improvements within the Tuscany Project (the "Tuscany Golf Course" and, together with all of the lots and other property located in the Tuscany Project acquired by RDDC and/or any of its affiliated entities, the "RDDC Property").

11. As of the Petition Date, the Debtors had the option to purchase (and Commerce had the obligation to sell to the Debtors) certain additional Property pursuant to the terms of the Tuscany Purchase Agreement. The additional Property included (i) approximately 25 lots located within Parcel 6A of the Tuscany Project, (ii) approximately 18 finished lots contained within Parcel 17 of the Tuscany Project, and (iii) all of Parcels 5 and 22 of the Tuscany Project.

**C.     The Master CC&Rs**

12. In connection with RDDC's development and operation of the RDDC Property, RDDC prepared, executed and recorded that certain Master Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Tuscany Residential Community dated July 26, 2005 in Clark County, Nevada (the "Master CC&Rs"). Pursuant to the Master CC&Rs, Tuscany Master Association, a Nevada non-profit corporation (the "Master Association"), was formed by RDDC to, among other things, (i) own, operate and maintain the common elements within the Tuscany Project for and on behalf of the homeowners and other property owners, (ii) enforce the Master CC&Rs and other Governing Documents (as defined in the Master CC&Rs) and (iii) perform the other

duties and responsibilities of the Master Association under the Master CC&Rs and other governing documents.

14. 13. RDDC is the "Declarant" under the Master CC&Rs and holds all of the rights, privileges and benefits of the Declarant under the Master CC&Rs (collectively, the "Declarant Rights"), which rights include, but are not limited to, the right to (i) appoint members of the board of directors and officers of the Master Association, (ii) enforce the Master CC&Rs and the covenants and restrictions contained therein, (iii) review certain plans and specifications of homeowners and other developers and builders, (iv) construct and sell homes and other improvements within the Tuscany Project, (v) annex and add property to the Master CC&Rs and Master Association, and (vi) exercise various other "Developmental Rights" and "Special Declarant Rights" (as those terms are defined in N.R.S. Chapter 116).

14. Since the Master CC&Rs were originally recorded in 2005, RDDC has exercised and performed (and continues to exercise and perform) all of the rights, duties, obligations and responsibilities of the Declarant under the Master CC&Rs, including exercising and performing the Declarant Rights.

15. RDDC continues to own numerous residential lots within the Tuscany Project and is actively developing, marketing and selling homes and other related improvements thereon. In addition, RDDC's affiliate, TGCC, still owns and operates the Tuscany Golf Course. The Declarant Rights held by RDDC are an integral part of (i) RDDC's ability to protect its assets and to develop, market and sell homes on its lots, and (ii) TGCC's maintenance and operation of the Tuscany Golf Course. These Declarant Rights are also critical to RDDC's ability to protect and maintain the aesthetic, recreational and other

7

qualities of the Tuscany Project as a whole.

**D.    The Conditional Assignment**

16.    As required under Section 10.2 of the Tuscany Purchase Agreement, the Conditional Assignment and Grant of Rights by RDDC in favor of Commerce was recorded on December 19, 2005 in Clark County, Nevada (the "<u>Conditional Assignment</u>") at the closing of the Phase I Lots (as defined in the Tuscany Purchase Agreement) under the Tuscany Purchase Agreement. The Conditional Assignment was integrally related to the transactions contemplated by the Tuscany Purchase Agreement. In fact, as an ancillary agreement, the form of the Conditional Assignment was attached as an exhibit to Tuscany Purchase Agreement. A copy of the Conditional Assignment is attached to the Boettcher Declaration as <u>Exhibit B</u>.

17.    Pursuant to the Conditional Assignment, RDDC purportedly assigned and granted a security interest to Commerce in and to the Declarant Rights under the Master CC&Rs, as additional security for RDDC's performance of its obligations to purchase all of the Property under the Tuscany Purchase Agreement. The Conditional Assignment expressly provided that "subject to Commerce's rights to accept, reject, or limit the transfer of same, [RDDC] hereby grants, assigns, and sets over to Commerce, and grants a security interest in, all of [RDDC's] right and interest in and to [RDDC's] rights as Declarant in and under the Master Declaration . . . ." The Conditional Assignment was also expressly conditioned upon and effective only upon the occurrence of a Termination Event (as defined in the Conditional Assignment).

18.    In addition, the Conditional Assignment was not a self-effectuating document. Both the Conditional Assignment and the Tuscany Purchase Agreement

8

expressly provided that in the event of the occurrence of a Termination Event, Commerce shall have the right, but not the obligation, to become the Declarant under the Master CC&Rs. *See* Tuscany Purchase Agreement, § 10.2; Conditional Assignment, ¶¶ 3, 6, 8 and 9. Therefore, in order for the assignment of rights set forth in the Conditional Assignment to be effective, Commerce had to agree to exercise and accept the assignment of Declarant Rights and to become the Declarant under the Master CC&Rs.

19. Upon information and belief, Commerce has never (whether before or after the filing of the Chapter 11 Cases) exercised any right or otherwise assumed any obligation to become the Declarant under the Master CC&Rs.

20. Since the Master CC&Rs were originally recorded in 2005, RDDC has been the sole Declarant under the Master CC&Rs and has continuously exercised and performed all of the rights and obligations of the Declarant thereunder.

**E.    Treatment of the Master CC&Rs, the Tuscany Purchase Agreement and the Conditional Assignment Under the Plan**

21. As noted above, Article V.A of the Plan sets forth the treatment of executory contracts and unexpired leases under the Plan. Consistent with their intent to assume the Master CC&Rs, the Debtors included the Master CC&Rs on the Assumption Schedule. *See* Assumption Schedule, pg. 22. In contrast to the Master CC&Rs, neither the Tuscany Purchase Agreement nor the Conditional Assignment was included on the Assumption Schedule. In addition, neither the Tuscany Purchase Agreement nor the Conditional Assignment was otherwise assumed by the Debtors in connection with the Chapter 11 Cases. Therefore, pursuant to Article V.A of the Plan, both the Tuscany Purchase Agreement and the Conditional Assignment were deemed rejected on the Effective Date of the Plan.

9

**F.  Attempts by Commerce to Enforce the Tuscany Purchase Agreement and the Conditional Assignment**

22.     Notwithstanding the fact that the Tuscany Purchase Agreement and the Conditional Assignment were not assumed by the Reorganized Debtors, on or about November 21, 2012, RDDC's affiliate, Las Vegas Land Holdings, LLC ("LVLH"), received a letter from Commerce's attorney, Stephen M. Rice at Rice Silbey Reuther & Sullivan, LLP (the "Commerce Letter"), which asserts, among other things, that "Commerce has retained the right to exercise and assign declarant rights under the existing [Master CC&Rs] now of record with respect to the Tuscany master planned community pursuant to [the Conditional Assignment] . . . ." A copy of the Commerce Letter is attached to the Boettcher Declaration as Exhibit C.[5]

**RELIEF REQUESTED**

23.     By this Motion, the Reorganized Debtors request that the Court enter an order, pursuant to Bankruptcy Code section 105(a), (i) enforcing the terms of the Plan and the Confirmation Order, and (ii) clarifying that Commerce has no rights under the Tuscany Purchase Agreement or the Conditional Assignment, including any right to exercise and assign Declarant Rights under the Master CC&Rs pursuant to the Conditional Assignment. Commerce has no rights under the Tuscany Purchase Agreement and the Conditional Assignment due to the fact that such agreements were rejected pursuant to the Plan and the Confirmation Order.

**ARGUMENT**

24.     As evidenced by the Commerce Letter and the Lennar Letter, Commerce is

---

[5] The Boettcher Declaration attaches another letter that appears to show that Commerce intends to assign the Declarant Rights to a third party.

10

seeking to enforce alleged rights under the Conditional Assignment in violation of the terms of the Plan and the Confirmation Order.  Under the Plan and the Confirmation Order, the Tuscany Purchase Agreement and the Conditional Assignment were rejected, and Commerce does not possess the alleged authority to exercise and assign declarant rights under the Master CC&Rs pursuant to the Conditional Assignment.  In order to prevent any further violations of the Confirmation Order and the Plan by Commerce, the Court should enter an order enforcing the Plan and the Confirmation Order and clarifying that Commerce is without any further rights under either the Tuscany Purchase Agreement or the Conditional Assignment, including any alleged right to exercise and assign declarant rights under the Master CC&Rs.

**A.  The Tuscany Purchase Agreement and the Conditional Assignment were Rejected Pursuant to the Plan**

**1.  The Tuscany Purchase Agreement and the Conditional Assignment Constitute A Single Agreement**

25.     Under Nevada law, courts have held that two instruments constitute a single contract if (i) they were contemporaneously executed, (ii) they concern the same subject matter, and (iii) at least one of the instruments refers to the other.  *See Whitemaine v. Aniskovich*, 183 P.2d 137, 141 (Nev. 2008) ("[T]wo instruments are presumed to be a single contract if (1) they are contemporaneously executed, (2) they concern the same subject matter, and (3) one of the instruments refers to the other.") (citing *Collins v. Union Fed. Savs. & Loan*, 662 P.2d 610, 615 (Nev. 1983)).[6]  Under this standard, the Tuscany Purchase Agreement and the Conditional Assignment comprise one single agreement.  First, the Conditional Assignment was prepared at the same time as, and attached as an exhibit to, the

---

[6] Both the Tuscany Purchase Agreement and the Conditional Assignment contain choice of law provisions specifying that they are governed by Nevada law.

11

Tuscany Purchase Agreement. In addition, as set forth in Section 10.2 of the Tuscany Purchase Agreement, RDDC was required to execute and deliver the Conditional Assignment to Commerce upon close of escrow for the Phase I Lots. Second, both the Tuscany Purchase Agreement and the Conditional Assignment relate to RDDC's purchase of certain Property in the Tuscany Project. Third, the Tuscany Purchase Agreement refers to the Conditional Assignment, and the Conditional Assignment refers to the Tuscany Purchase Agreement. *See, e.g.*, Tuscany Purchase Agreement, § 10.2; Conditional Assignment, Preamble. In fact, the Conditional Assignment expressly provides that it would automatically terminate upon the satisfaction of RDDC's obligations under the Tuscany Purchase Agreement. *See* Conditional Assignment, ¶ 19. Therefore, the Conditional Assignment and the Tuscany Purchase Agreement constitute a single agreement under Nevada law.

### 2. The Purchase Agreement and the Conditional Assignment Were Executory Contracts

26. Courts in this jurisdiction have held that an executory contract is "one on which performance is due to some extent on both sides.... [I]n executory contracts the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." *Commercial Ins. Co. v. Texscan Corp. (In re Texscan Corp.)*, 976 F.2d 1269, 1272 (9th Cir. 1992). In order to determine whether a contract is executory, courts consider whether both sides are still required to perform outstanding obligations at the time of the commencement of the debtor's bankruptcy proceedings. *See In re Robert L. Helms Constr. & Dev. Co., Inc.*, 139 F.3d 702, 706 (9th Cir. 1998). Under this standard, the Tuscany Purchase Agreement (and the Conditional Assignment) was an executory contract. As noted

above, at the time of the commencement of the Chapter 11 Cases, the Debtors had the option to purchase additional Property under the Tuscany Purchase Agreement, and Commerce had the obligation to sell such Property to the Debtors in the event that the Debtors' exercised their option. Thus, the Debtors and Commerce each had material outstanding obligations under the Tuscany Purchase Agreement, and the Tuscany Purchase Agreement (and the Conditional Assignment) was executory.

### 3. The Tuscany Purchase Agreement and the Conditional Assignment were Rejected

27. As a general rule, when a debtor assumes or rejects and executory contract, the debtor must assume or reject the contract in its entirety. *See, e.g.*, *In re Buffets Holdings*, 387 B.R. 115, 119 (Bankr. D. Del. 2008) (explaining that debtor must assume or reject entire agreement); *In re David Orgell, Inc.*, 117 B.R. 574, 575-76 (Bankr. C.D. Cal. 1990) ("It is well settled that if a debtor elects to assume an executory contract or unexpired lease, it must assume the entire contract or lease *cum onere* . . . ."). In addition, where two or more agreements are part of a single, integrated agreement, all of the agreements must be either assumed or rejected as a whole. *See, e.g.*, *Philip Servs. Corp. v. Luntz (In re Philip Servs., Inc.)*, 284 B.R. 541, 547-48 (Bankr. D. Del. 2002) (finding that integrated agreements were must assumed or rejected as a whole); *In re Karfakis*, 162 B.R. 719, 725 (Bankr. E.D. Pa. 1993) (same). Finally, as indicated above, pursuant to Article V.A of the Plan, unless the assumed or rejected prior to the Effective Date, the Debtors' executory contracts and unexpired leases were deemed rejected unless they were listed on the Assumption Schedule or certain other conditions were met.

28. Here, while the Debtors assumed the Master CC&Rs, neither the Tuscany Purchase Agreement nor the Conditional Assignment was included on the Assumption

13

Schedule or otherwise assumed by the Debtors. Thus, the Tuscany Purchase Agreement and the Conditional Assignment (which were part of a single agreement) were rejected pursuant to the Plan and the Confirmation Order. Accordingly, Commerce has no further rights under either the Tuscany Purchase Agreement or the Conditional Assignment.

**B.    The Court has Jurisdiction to Resolve Matters Related to Executory Contracts and Enforce the Plan and the Confirmation Order**

29.    As set forth above, the Court has retained jurisdiction to resolve matters relating to the rejection of executory contracts and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order. The Reorganized Debtors have filed this Motion as a result of Commerce's attempt to enforce rights under an executory contract that was rejected pursuant to the Plan and the Confirmation Order. Moreover, the Motion is based on a dispute that requires the interpretation and enforcement of the Plan and the Confirmation Order. Thus, the Court has jurisdiction to consider the Motion, enter an order enforcing the terms of the Plan and the Confirmation Order and clarify that Commerce is without any right to exercise and assign declarant rights under the Master CC&Rs pursuant to the Conditional Assignment.

## NOTICE

30.    The Reorganized Debtors will serve notice of this Motion by first-class mail, postage prepaid, upon the following parties, or in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) counsel to Commerce Associates, LLC; and (iii) all parties who have requested notice in these cases. The Reorganized Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given. The

14

Reorganized Debtors further submit that the above notice is reasonable and appropriate and should be approved by this Court as adequate and sufficient notice.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, the Reorganized Debtors respectfully request that the Court (i) enter an order, substantially in the form attached hereto as <u>Exhibit 1</u>, (i) enforcing the terms of the Plan and the Confirmation Order, (ii) clarifying that Commerce has no rights under the Tuscany Purchase Agreement or the Conditional Assignment, including any right to exercise and assign declarant rights under the Master CC&Rs pursuant to the Conditional Assignment, and (iii) grant the Reorganized Debtors such other and further relief as is just, proper and equitable.

Dated this 30th day of November, 2012.

By: */s/ Abid Qureshi*
Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
(702) 362-7800 (Telephone)
(702) 362-9472 (Facsimile)
Nleatham@klnevada.com

AKIN GUMP STRAUSS HAUER & FELD LLP
Philip C. Dublin (NY Bar No. 2959344)
Abid Qureshi (NY Bar No. 2684637)
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
pdublin@akingump.com
aqureshi@akingump.com

*Counsel for the Reorganized Debtors*

# EXHIBIT 1

# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: § § | Case No. 09-14814-LBR |
| | (Jointly Administered) |
| **THE RHODES** § § | |
| **COMPANIES, LLC,** § | |
| aka "Rhodes Homes," *et al.*, § | Chapter 11 |
| § | |
| **Reorganized Debtors.**[1] § | Hearing Date: January 10, 2013 |
| § | Hearing Time: 10:00 a.m. |
| § | Courtroom 1 |
| **Affects:** § | |
| ☒ **All Debtors** § | |
| ☐ **Affects the following** § | |
| **Debtor(s)** § | |
| § | |

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

100867622 v2

# ORDER APPROVING MOTION OF THE REORGANIZED DEBTORS FOR ENTRY OF AN ORDER ENFORCING THE TERMS OF THE THIRD AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE RHODES COMPANIES, LLC ET AL. AND THE RELATED CONFIRMATION ORDER

Upon consideration of the *Motion of the Reorganized Debtors for Entry of an Order Enforcing the Terms of the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, et al. and the Related Confirmation Order* (the "Motion")[2] [Docket No. __], and good cause appearing,

IT IS HEREBY ORDERED THAT

1. The Motion is GRANTED.

2. The Tuscany Purchase Agreement and the Conditional Assignment were rejected pursuant to the terms of the Plan and the Confirmation Order, and Commerce has no rights under either the Tuscany Purchase Agreement or the Conditional Assignment, including any right to exercise or assign Declarant Rights under the Master CC&Rs pursuant to the Conditional Assignment.

3. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

100867622 v2

Submitted by:

   */s/ Nile Leatham*
Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
(702) 362-7800 (Telephone)
(702) 362-9472 (Facsimile)
Nleatham@klnevada.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**
**One Bryant Park**
**New York, New York 10036**
**Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com**

In re: The Rhodes Companies, LLC/Case No. 09-14814-LBR
Order Approving Motion of the Reorganized Debtors for Entry of an Order Enforcing the Terms of the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, et al. and the Related Confirmation Order

3

100867622 v2