

PARCEL 6C

C-1 CHANNEL

VIA ALATORE

SUNSET ROAD

SCHOOL AND PARK SITE

**PBS&J**

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

2270 Corporate Circle
Suite 100
Henderson, Nevada 89074
Telephone: 702/263-7275
Fax: 702/263-7200

P10-DWALLS.DWG

NOTE:
WALLS SHOWN ARE RETAINING WALLS ONLY.
DEVELOPER IS RESPONSIBLE FOR CONSTRUCTION
OF ALL PERIMETER SCREEN WALLS PER TM
APPROVED 11/21/01 EXCEPT THOSE SHOWN
ON COMMERCE WALL EXHIBIT.

**LEGEND**

━━━━━  RETAINING WALL

* GARAGE PAD TO BE 6"
BELOW FINISH FLOOR

N

**PARCEL 10
DEVELOPER WALLS
AT TUSCANY**

| PARCEL 10 DEVELOPER WALLS AT TUSCANY | JOB NO. | 511197 | DRAWN | RMM | DATE | 04/07/03 |
|---|---|---|---|---|---|---|
| | SHEET NO. | | CHECKED | LCF | SCALE | 1"=200' |



PARCEL 6C

C-1 CHANNEL

VIA ALATOIRE

RETAINING WALL WITH
9 COURSE DECO WALL

SCHOOL AND
PARK SITE

SUNSET ROAD

RETAINING WALL WITH
12 COURSE DECO WALL

PARCEL 10
COMMERCE WALLS
AT TUSCANY

RETAINING WALL
WITH 9-12 COURSE DECORATIVE
CMU PERIMETER WALL

9 COURSE STD
CMU PERIMETER WALL

12 COURSE DECORATIVE
CMU PERIMETER WALL

**PBS&J**
ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

2270 Corporate Circle
Suite 100
Henderson, Nevada  89074
Telephone: 702/263-7111
Fax: 702/263-7200

P10-CWALLS.DWG

| PARCEL 10 COMMERCE WALLS AT TUSCANY | JOB NO. | 511197 | DRAWN | RMM | DATE | 04/07/03 |
|---|---|---|---|---|---|---|
| | SHEET NO. | | CHECKED | LCF | SCALE | 1"=200' |



RETAINING WALL

NOTE:
WALLS SHOWN ARE RETAINING WALLS ONLY.
DEVELOPER IS RESPONSIBLE FOR CONSTRUCTION
OF ALL PROPERTY SCREEN WALLS, PER TM
APPROVED 11/21/01. EXCEPT THOSE SHOWN
ON COMMERCE WALL EXHIBIT.

PARCEL 10

VIA ALATOIRE

PARCEL 12

C-1 CHANNEL

PARCEL 11

SUNSET ROAD

**PBS&J**
ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

2270 Corporate Circle
Suite 100
Henderson, Nevada 89074
Telephone: 702/263-7275
Fax: 702/263-7200

P11-DWALLS.DWG

N

PARCEL 11
DEVELOPER WALLS
AT TUSCANY

| PARCEL 11 DEVELOPER WALLS AT TUSCANY | JOB NO. | 511197 | DRAWN | RMM | DATE | 04/07/03 |
|---|---|---|---|---|---|---|
| | SHEET NO. | | CHECKED | LCF | SCALE | 1"=200' |



RETAINING WALL WITH
12 COURSE DECO WALL

RETAINING WALL WITH
9 COURSE DECO WALL

RETAINING WALL WITH
9-12 COURSE DECORATIVE
CMU PERIMETER WALL

9 COURSE STD
CMU PERIMETER WALL

12 COURSE DECORATIVE
CMU PERIMETER WALL

PARCEL 10

VIA ALATOIRE

C-1 CHANNEL

PARCEL 12

PARCEL 11

SUNSET ROAD

RETAINING WALL WITH
9 COURSE DECO WALL

**PBS&J**
ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

2270 Corporate Circle
Suite 100
Henderson, Nevada 89074
Telephone: 702/263-7275
Fax: 702/263-7200

P11-CWALLS.DWG

PARCEL 11
COMMERCE WALLS
AT TUSCANY

N

| PARCEL 11 COMMERCE WALLS AT TUSCANY | JOB NO. | 511197 | DRAWN | RMM | DATE | 04/07/03 |
|---|---|---|---|---|---|---|
| | SHEET NO. | | CHECKED | LCF | SCALE | 1"=200' |



OLIVIA PARKWAY

VIA ALATOIRE

PARCEL 10

C-1 CHANNEL

PARCEL 11

PBS&J

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

2270 Corporate Circle
Suite 100
Henderson, Nevada 89074
Telephone: 702/263-7275
Fax: 702/263-7200

P12-DWALLS.DWG

**LEGEND**

—— RETAINING WALL

* GARAGE PAD TO BE 6"
BELOW FINISH FLOOR

NOTE:
WALLS SHOWN ARE RETAINING WALLS ONLY.
DEVELOPER IS RESPONSIBLE FOR CONSTRUCTION
OF ALL PROPERTY SCREEN WALLS, PER TM
APPROVED 11/21/01, EXCEPT THOSE SHOWN
ON COMMERCE WALL EXHIBIT.

PARCEL 12
DEVELOPER WALLS
AT TUSCANY

| PARCEL 12 DEVELOPER WALLS AT TUSCANY | JOB NO. | 511197 | DRAWN | RMM | DATE | 04/07/03 |
|---|---|---|---|---|---|---|
| | SHEET NO. | | CHECKED | LCF | SCALE | 1"=200' |



OLIVIA PARKWAY

PARCEL 10

VIA ALATOIRE

C-1 CHANNEL

PARCEL 11

PBS&J

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

2270 Corporate Circle
Suite 100
Henderson, Nevada 89074
Telephone: 702/263-7275
Fax: 702/263-7200

P12-CWALLS.DWG

RETAINING WALL

FULL VIEWRAIL WALL

6 COURSE STD
CMU PERIMETER WALL

12 COURSE DECORATIVE
CMU PERIMETER WALL

PARCEL 12
COMMERCE WALLS
AT TUSCANY

| PARCEL 12 COMMERCE WALLS AT TUSCANY | JOB NO. | 511197 | DRAWN | RMM | DATE | 04/07/03 |
|---|---|---|---|---|---|---|
| | SHEET NO. | | CHECKED | LCF | SCALE | 1"=200' |



NOTE:
WALLS SHOWN ARE RETAINING WALLS ONLY.
DEVELOPER IS RESPONSIBLE FOR CONSTRUCTION
OF ALL PROPERTY SCREEN WALLS, PER TM
APPROVED 11/21/01, EXCEPT THOSE SHOWN
ON COMMERCE WALL EXHIBIT.

———————— RETAINING WALL

TUSCANY GOLF COURSE

TUSCANY GOLF COURSE

PARCEL 14

OLIVIA PARKWAY

PARCEL 5B

PBS&J

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

2270 Corporate Circle
Suite 100
Henderson, Nevada 89074
Telephone: 702/263-7275
Fax: 702/263-7200

P14-Devalls.dwg

PARCEL 14
DEVELOPER WALLS
AT TUSCANY

| PARCEL 14 DEVELOPER WALLS AT TUSCANY | JOB NO. | 511197 | DRAWN | RMM | DATE | 04/08/03 |
| | SHEET NO. | | CHECKED | LCF | SCALE | 1"=200' |





TUSCANY
GOLF COURSE

PARCEL 16,
DEVELOPER WALLS
AT TUSCANY

OLIVIA PARKWAY

PARCEL 17

## LEGEND

━ ━ ━ ━ ━  RETAINING WALL

\* GARAGE PAD TO BE 6"
BELOW FINISH FLOOR

NOTE:
WALLS SHOWN ARE RETAINING WALLS ONLY.
DEVELOPER IS RESPONSIBLE FOR CONSTRUCTION
OF ALL PROPERTY SCREEN WALLS, PER TM
APPROVED 11/21/01, EXCEPT THOSE SHOWN
ON COMMERCE WALL EXHIBIT.

P16-Dwalls.dwg

# PBS&J

2270 Corporate Circle
Suite 100
Henderson, Nevada  89074
Telephone: 702/263-7275
Fax: 702/263-7200

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

DRAWN  RMM  DATE  04/08/03
CHECKED  LCF  SCALE  1"=200'

JOB NO.  511197

SHEET NO.

PARCEL 16
DEVELOPER WALLS
AT TUSCANY



TUSCANY
GOLF COURSE

PARCEL 16
COMMERCE WALLS
AT TUSCANY

N

OLIVIA PARKWAY

PARCEL 17

RETAINING WALL WITH
9 COURSE DECORATIVE
CMU PERIMETER WALL

FULL VIEWRAIL WALL

P16-Cwalls.dwg

| JOB NO. | 511197 | DRAWN | RMM | DATE | 11/26/02 | |
| SHEET NO. | | CHECKED | LCF | SCALE | | |

PARCEL 16
COMMERCE WALLS
AT TUSCANY

PBS&J

2270 Corporate Circle
Suite 100
Henderson, Nevada 89074
Telephone: 702/263-7275
Fax: 702/263-7200

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES



PARCEL 17
DEVELOPER WALLS
AT TUSCANY

PARCEL 16

OLIVIA PARKWAY

TUSCANY
GOLF COURSE

RETAINING WALL

NOTE:
DEVELOPER IS RESPONSIBLE FOR CONSTRUCTION
OF ALL PROPERTY SCREEN WALLS, PER TM
APPROVED 11-21-01, EXCEPT THOSE SHOWN
ON COMMERCE WALL EXHIBIT.

P17-Dwalls.dwg

**PBS&J**

2270 Corporate Circle
Suite 100
Henderson, Nevada  89074
Telephone: 702/263-7275
Fax: 702/263-7200

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

| DATE | 04/08/03 |
| SCALE | 1"=200' |
| DRAWN | RMM |
| CHECKED | LGF |
| JOB NO. | 511197 |
| SHEET NO. | 1 OF |

PARCEL 17
DEVELOPER WALLS
AT TUSCANY





PARCEL 18
DEVELOPER WALLS
AT TUSCANY

LEGEND

▬▬▬▬▬  RETAINING WALL
*  GARAGE PAD TO BE 6"
   BELOW FINISH FLOOR

NOTE:
WALLS SHOWN ARE RETAINNG WALLS ONLY.
DEVELOPER IS RESPONSIBLE FOR CONSTRUCTION
OF ALL PROPERTY SCREEN WALLS, PER TM
APPROVED 11-21-01, EXCEPT THOSE SHOWN
ON COMMERCE WALL EXHIBIT.

**PBSJ**

2270 Corporate Circle
Suite 100
Henderson, Nevada  89074
Telephone: 702/263-7275
Fax: 702/263-7200

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

| JOB NO. | DRAWN | RWM | DATE | 04/07/03 |
|---|---|---|---|---|
| 511197 | CHECKED | LCF | SCALE | 1"=250' |
| SHEET NO. | | | | |

PARCEL 18
DEVELOPER WALLS
AT TUSCANY

P18-Dwalls.dwg

EX. C-1. CHANNEL

SUNSET ROAD



PARCEL 18
COMMERCE WALLS
AT TUSCANY

RETAINING WALL WITH
12 COURSE DECORATIVE
CMU PERIMETER WALL

FULL VIEWRAIL WALL

9 COURSE STD
CMU PERIMETER WALL

**PBS&J**

2270 Corporate Circle
Suite 100
Henderson, Nevada  89074
Telephone: 702/263-7275
Fax: 702/263-7200

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

DRAWN   RMM   DATE   04/07/03
CHECKED   LCF   SCALE   1"=250'
JOB NO.   511197
SHEET NO.
PARCEL 18
COMMERCE WALLS
AT TUSCANY

P18-Cwalls.dwg



PARCEL 19
DEVELOPER WALLS
AT TUSCANY

| DATE 04/08/03 | SCALE 1"=200' |
|---|---|
| DRAWN RMW | CHECKED LCF |
| JOB NO. 511197 | SHEET NO. |

PARCEL 19
DEVELOPER WALLS
AT TUSCANY

P19-Dwalls.dwg

## LEGEND

▬▬▬▬  RETAINING WALL

*  GARAGE PAD TO BE 6"
   BELOW FINISH FLOOR

NOTE:
WALLS SHOWN ARE RETAINNG WALLS ONLY.
DEVELOPER IS RESPONSIBLE FOR CONSTRUCTION
OF ALL PROPERTY SCREEN WALLS, PER TM
APPROVED 11-21-01, EXCEPT THOSE SHOWN
ON COMMERCE WALL EXHIBIT.

# PBS&J

2270 Corporate Circle
Suite 100
Henderson, Nevada   89074
Telephone: 702/263-7275
Fax: 702/263-7200

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES



PARCEL 19
COMMERCE WALLS
AT TUSCANY

| PARCEL 19 COMMERCE WALLS AT TUSCANY | JOB NO. | 511197 | DRAWN | RMM | DATE | 04/07/03 |
|---|---|---|---|---|---|---|
| | SHEET NO. | | CHECKED | LCF | SCALE | 1"=200' |



NOTE:
WALLS SHOWN ARE RETAINING WALLS ONLY.
DEVELOPER IS RESPONSIBLE FOR CONSTRUCTION
OF ALL PROPERTY SCREEN WALLS PER T.M.
APPROVED EXCEPT THOSE SHOWN
ON COMMERCE WALL EXHIBIT.

RETAINING WALL

PARCEL 22
DEVELOPER WALLS
AT TUSCANY

SUNSET ROAD

PARCEL 23

GALM PARKWAY

PARCEL 19

PBS&J
ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

2270 Corporate Circle
Suite 100
Henderson, Nevada  89074
Telephone: 702/263-7275
Fax: 702/263-7200

| PARCEL 22 DEVELOPER WALLS AT TUSCANY | JOB NO. | 511197 | DRAWN | RMM | DATE | 04/08/03 |
|---|---|---|---|---|---|---|
| | SHEET NO. | | CHECKED | LCF | SCALE | 1"=300' |



ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

**PBS&J**

2270 Corporate Circle
Suite 100
Henderson, Nevada 89074
Telephone: 702/263-7275
Fax 702/263-7200

P22-CRWALLS.DWG

------ FULL VIEWWALL WALL

------ 9 COURSE STD
CMU PERIMETER WALL

------ 12 COURSE DECORATIVE
CMU PERIMETER WALL

SUNSET ROAD

PARCEL 22
COMMERCE WALLS
AT TUSCANY

PARCEL 22

PARCEL 22
COMMERCE WALLS
AT TUSCANY

| | | | | |
|---|---|---|---|---|
| SHEET NO. | JOB NO. | DRAWN | CHECKED | DATE | SCALE |

SHEET NO. | JOB NO. 511197 | DRAWN RMM | CHECKED LCF | DATE 04/08/03 | SCALE 1"=300'



PARCEL 23
DEVELOPER WALLS
AT TUSCANY



TUSCANY
GOLF COURSE

OLIVA PARKWAY

▬▬▬▬▬▬▬ **RETAINING WALL**

NOTE:
WALLS SHOWN ARE RETAINING WALLS ONLY.
DEVELOPER IS RESPONSIBLE FOR CONSTRUCTION
OF ALL PROPERTY SCREEN WALLS, PER TM
APPROVED 11-21-01, EXCEPT THOSE SHOWN
ON COMMERCE WALL EXHIBIT.

P23-Dwalls.dwg



2270 Corporate Circle
Suite 100
Henderson, Nevada 89074
Telephone: 702/263-7275
Fax: 702/263-7200

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

| DRAWN | RWM | DATE | 04/08/03 |
| CHECKED | LCF | SCALE | 1"=200' |
| JOB NO. | 511197 | | |
| SHEET NO. | | | |

PARCEL 23
DEVELOPER WALLS
AT TUSCANY



PARCEL 23
COMMERCE WALLS
AT TUSCANY

TUSCANY
GOLF COURSE

OLIVIA PARKWAY

FULL VIEWRAIL WALL

9 COURSE 8TD
CMU PERIMETER WALL

| | SHEET NO. | JOB NO. 511197 | DRAWN RMM | CHECKED LCF | SCALE 1"=200' |
| | | | | | DATE 04/08/03 |

PARCEL 23
COMMERCE WALLS
AT TUSCANY

P23-Cwalls.dwg

2270 Corporate Circle
Suite 100
Henderson, Nevada  89074
Telephone: 702/263-7275
Fax: 702/263-7200

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES



TUSCANY
GOLF COURSE

OLIVA PARKWAY

TUSCANY
GOLF COURSE

PARCEL 24
DEVELOPER WALLS
AT TUSCANY

RETAINING WALL

NOTE:
WALLS SHOWN ARE RETAINING WALLS ONLY.
DEVELOPER IS RESPONSIBLE FOR CONSTRUCTION
OF ALL PROPERTY SCREEN WALLS, PER TM
APPROVED 11-21-01, EXCEPT THOSE SHOWN
ON COMMERCE WALL EXHIBIT.

| DATE | 04/08/03 |
| SCALE | 1"=200' |
| DRAWN | RMM |
| CHECKED | LCF |
| JOB NO. | 511197 |
| SHEET NO. | |

PARCEL 24
DEVELOPER WALLS
AT TUSCANY

P24-Dwalls.dwg

PBS&J
2270 Corporate Circle
Suite 100
Henderson, Nevada  89074
Telephone: 702/263-7275
Fax: 702/263-7200

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES



FULL VIEWRAIL WALL

OLIVIA PARKWAY

TUSCANY GOLF COURSE

TUSCANY GOLF COURSE

PARCEL 24
COMMERCE WALLS
AT TUSCANY

N

P24-Cwalls.dwg

**PBS&J**

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

2270 Corporate Circle
Suite 100
Henderson, Nevada 89074
Telephone: 702/263-7275
Fax: 702/263-7200

| PARCEL 24 COMMERCE WALLS AT TUSCANY | JOB NO. | 511197 | DRAWN | RMM | DATE | 04/08/03 |
|---|---|---|---|---|---|---|
| | SHEET NO. | | CHECKED | LCF | SCALE | 1"=200' |



RETAINING WALL

NOTE:
WALLS SHOWN ARE RETAINING WALLS ONLY.
DEVELOPER IS RESPONSIBLE FOR CONSTRUCTION
OF ALL PROPERTY SCREEN WALLS PER TM
APPROVED 11-21-01, EXCEPT THOSE SHOWN
ON COMMERCE WALL EXHIBIT.

TUSCANY
GOLF COURSE

PARCEL 21

OLIVIA PARKWAY

**PBS&J**

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

2270 Corporate Circle
Suite 100
Henderson, Nevada  89074
Telephone: 702/263-7200
Fax: 702/263-7275

PARCEL 25
DEVELOPER WALLS
AT TUSCANY

| PARCEL 25 DEVELOPER WALLS AT TUSCANY | JOB NO. | 511197 | DRAWN | RMM | DATE | 04/08/03 |
|---|---|---|---|---|---|---|
| | SHEET NO. | | CHECKED | LCF | SCALE | 1"=300' |



RETAINING WALL

FULL VIEWRAIL WALL

9 COURSE STD
CMU PERIMETER WALL

TUSCANY
GOLF COURSE

PARCEL 22

OLIVIA PARKWAY

N

PARCEL 25
COMMERCE WALLS
AT TUSCANY

PBS&J

ENGINEERING · PLANNING · SURVEYING · CONSTRUCTION SERVICES

2270 Corporate Circle
Suite 100
Henderson, Nevada  89074
Telephone: 702/263-7275
Fax: 702/263-7200

P25-Comm.dgn

| PARCEL 25 COMMERCE WALLS AT TUSCANY | JOB NO. | 511197 | DRAWN | RMM | DATE | 04/08/03 |
|---|---|---|---|---|---|---|
| | SHEET NO. | | CHECKED | LCF | SCALE | 1"=300' |

# EXHIBIT Q

## CONSTRUCTION LICENSE

### (Section 11.6)

[Attach Form.]

## CONSTRUCTION LICENSE AND INDEMNITY AGREEMENT

This Construction License and Indemnity Agreement (the **"Agreement"**) is made and entered into as of the _____ day of _____, 2003 by and between **COMMERCE ASSOCIATES, LLC** , a Nevada limited liability company (**"Seller"**) and _____, a Nevada _____ (**"Buyer"**).

### RECITALS

A.      Seller holds title to certain real property (the **"Property"**) located in the City of Henderson, Clark County, Nevada, more particularly described on <u>Exhibit A</u> attached hereto, and located within the master planned community known as **"Tuscany."**

B.      Seller and Buyer have entered into that certain Purchase Agreement and Grant of Options dated May __, 2003, (the **"Purchase Agreement"**) pursuant to which Seller has agreed to sell a portion of the Property, identified in the Purchase Agreement as "Parcel 6B", to Buyer on the terms and conditions set forth therein and to grant to Buyer options to purchase the remaining portions of the Property.

C.      Pending Buyer's purchase of Parcel 6B and exercise and purchase of the Option Parcels, Buyer desires the right to enter upon those portions of the Property which have not yet been purchased by Buyer (the **"License Area"**) for the purposes of grading, site preparation, site development, posting advertising signage, marketing and sales and other related activities incidental thereto.

D.      Seller desires to grant a license to Buyer for such purpose.

E.      Capitalized terms used herein that are not defined in this Agreement have the meanings given those terms in the Purchase Agreement.

### AGREEMENT

NOW THEREFORE, for and in consideration of the mutual covenants and agreements contained in this Agreement and the Purchase Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      <u>Grant of License.</u>  From and after the date hereof, Buyer (and Buyer's agents, employees, contractors and subcontractors) shall have the non-exclusive right and license (the **"License"**) to enter upon the License Area for the purpose of grading, site preparation, site development, model and residential home construction, posting advertising signage, marketing and sales and other related activities incidental thereto, provided that in conducting all such activities: (a) Buyer complies with all applicable laws, ordinances, health and safety codes and other governmental rules and regulations; (b) obtains and maintains the insurance described in Section 4 below; and (c) Buyer otherwise complies with the provisions of this Agreement.  Buyer must coordinate the timing of all onsite activities with Seller's construction supervisor _____, and no such activities shall be permitted to interfere with Seller's work on the License Area or in other areas of Tuscany.  Upon no less than 24 hours notice, Buyer shall cease all activities on any or all parts of the License Area requested by Seller and, if necessary, vacate such parts of the License Area, if Seller's construction supervisor requests such cessation and vacation in order for Seller to perform any Seller's Work or other work related to

the development of Tuscany.  All costs of Buyer's work and activity shall be borne solely by Buyer.  Any work of permanent improvement shall be in accordance with plans and specifications therefore approved by Seller in accordance with the Development Declaration.

The License shall automatically terminate with respect to any portion of the Property, upon Seller's conveyance of such portion of the Property to Buyer in accordance with the Purchase Agreement.  In addition, this License shall terminate: (i) automatically, without the need for notice of any kind, upon a termination of the Purchase Agreement; (ii) ten (10) days after Buyer's written notice to Seller that Buyer elects to terminate the License; and (iii) thirty (30) days after Seller's written notice to Buyer electing to terminate the License following Buyer's failure to perform any material covenant or satisfy any material condition herein to be performed or satisfied by Buyer, unless Buyer has cured any curable failure within such 30-day period.

2.    Effect of Termination of Purchase Agreement Not Due to Seller's Default.  If the Purchase Agreement is terminated prior to Buyer's acquisition of all of the Property for any reason other than a default by Seller under the Purchase Agreement, then, except as expressly limited herein:

A.    Buyer shall assign to Seller all of the work and improvements Buyer has performed on such unpurchased portion of the Property (whether one or more, the "Unpurchased Property");

B.    Buyer shall execute any documentation reasonably necessary to convey such work and improvements to Seller;

C.    Buyer shall waive any right to recover from Seller Buyer's costs in performance of such work or improvements.

Upon such a termination of the Purchase Agreement (for any reason other than a default by Seller, including without limitation, Buyer's failure to exercise an Option), Buyer's rights to perform work on or otherwise use the Unpurchased Property shall immediately and without further notice terminate, except that Buyer shall continue to remain on the Unpurchased Property for so long as is necessary to leave the Unpurchased Property in a safe condition.  In no event shall Buyer discontinue its work on or vacate the Unpurchased Property leaving an unsafe condition remaining.  If such should occur, Buyer shall pay to Seller the cost Seller incurs to make such conditions safe.  If the Purchase Agreement is terminated for any reason other than a default by Seller, Buyer shall cause the release of any liens against the Unpurchased Property that arise as a result of Buyer's activities thereon, whether recorded before or after Buyer's vacation of the Unpurchased Property.  On such a termination of the Purchase Agreement (for any reason other than a default by Seller), Buyer shall immediately deliver to Seller all plans, specifications, permits and documents related to the work performed or improvements constructed by Buyer on the Unpurchased Property (provided that nothing herein shall be construed so as to obligate Buyer to deliver any drawings, plans, specifications, or schematics for the attached and/or detached homes that Buyer intends to construct on the Property).  Any work, plans, specifications, permits or documents assigned to Seller under this paragraph shall be without cost, expense or other liability to Seller with respect to any work performed or any improvements constructed prior to such assignment.  Furthermore, no such assignment shall result in the assumption of any liability by Seller in the absence of an express written assumption by Seller, which Seller shall have the right, but not the obligation to do, exercisable in its sole and absolute discretion.  Furthermore, the assignments described in this paragraph shall be without prejudice to Seller's right to require the removal by Buyer of any

work or improvements which are not in conformity with the requirements of this Agreement. Buyer hereby waives any claim against Seller for unjust enrichment or quantum meruit based on any alleged benefit to the Unpurchased Property arising in connection with any work or improvements that must be assigned to Seller under this Agreement.  The provisions of this Section 2 shall survive a termination of this Agreement.

3.      Effect of Termination of Purchase Agreement Due to Seller's Default.  If the Purchase Agreement is terminated prior to Buyer's acquisition of all of the Property due to a default by Seller, then:

A.      Buyer shall have none of the obligations set forth in Section 2 above, other than to leave the Unpurchased Property in a safe condition and to cause the removal of any liens against the Unpurchased Property which arise as a result of Buyer's activities thereon.

B.      Buyer shall have no obligation to remove any work or improvements completed in conformity with the requirements of this Agreement (but Buyer may at its option remove any such work or improvements), provided that in all events Buyer shall leave the Unpurchased Property and the work and improvements in a safe condition, and such removal shall not result in any injury to any improvements located on the License Area which were not constructed by Buyer; and

C.      Seller shall reimburse Buyer for all actual costs and expenses incurred by Buyer in performing the work and improvements in conformity with the requirements of this Agreement, removing such work or improvements (to the extent removed), and making the Unpurchased Property safe, less, if applicable, actual costs and expenses of removing any work or improvements not in conformity with the requirements of this Agreement or any liens arising from Buyer's work, with such reimbursement (the **"Reimbursement Payment"**) to be made within thirty (30) days following Buyer's request (following a termination of this Agreement due to a default by Seller).

If the final agreed upon Reimbursement Payment is not paid within thirty (30) days after written request by Buyer, Buyer shall have no obligation to remove any liens imposed against the Property in connection with Buyer's activities thereon (to the extent such lien includes work or improvements for which Buyer seeks reimbursement from Seller).  Buyer shall have all rights and remedies available to it under law or equity, including without limitation, the right but not the obligation to record a notice of lien against any portion of the License Area on which Buyer has performed work that is subject to reimbursement and for which Buyer has not received the required Reimbursement Payment, and to enforce that lien to the fullest extent provided by law.

4.      Construction Activities; Insurance.      Notwithstanding that a Development Declaration is intended to be effective upon Buyer's acquisition of title to a Development Parcel, Buyer shall comply with (and cause its agents, employees, contractors and subcontractors to comply with) all provisions of the Development Declaration applicable to the type of work or activities permitted under the License.  Without limiting the foregoing, all work and activities shall be subject to the rules and regulations set forth in Section 3.4 of the Development Declaration.  In addition, at any time while Buyer is performing work on the License Area, Buyer shall obtain and maintain in full force and effect, at its own expense: the Required Insurance detailed in Sections 2.5, 2.6 and 2.7 of the Development Declaration. Before commencing any work on the License Area, Buyer shall furnish Seller with certificates of insurance issued by the appropriate insurance carrier(s) demonstrating compliance with the terms of this paragraph.

5.      Indemnity Regarding Buyer's Activities.  Buyer shall indemnify and hold harmless

Seller from and against all claims, causes of action, damages, costs, and expenses (including reasonable attorneys' fees and costs), arising from any work or conduct engaged in by Buyer and Buyer's agents, employees, contractors, and subcontractors during the term of this Agreement pursuant to the License or related to the commission or omission of any act in connection with such conduct. The provisions of this paragraph shall survive the termination of this Agreement.

6.    Condition of License Area Not Warranted.    Seller in no way warrants or represents that the License Area is safe, healthful or suitable for the purposes for which it is permitted to be used under the terms of the License, and Buyer expressly assumes such risk.

7.    Rights of Seller.  It is agreed and understood that Buyer shall, at all times during the term of the License, have access to the License Area only as necessary for the purposes of the License.  Buyer shall use the rights granted herein with due regard to the rights of Seller in performing the Seller's Work and other work in Tuscany, and Buyer shall not use the License Area in any way that will impair the rights of others to use it, and shall not obstruct passage thereon.

8.    Personal License Only.  The License granted herein is personal to the Buyer (and its agents, employees, contractors and subcontractors) and shall not inure to the successors or assigns of Buyer, without the prior written consent of Seller, which Seller agrees not to unreasonably withhold.  Any purported assignment or transfer of any right, title or interest under this Agreement in violation of this provision shall be void.

9.    Buyer Has No Interest or Estate.  Buyer expressly agrees that Buyer does not and shall not claim at any time any interest or estate of any kind or extent whatsoever in the License Area by virtue of the rights granted under this Agreement or by Buyer's occupancy or use of the License Area under this Agreement.

10.    Notices.  All notices required hereunder shall be in writing, and shall be delivered in the manner specified in the Purchase Agreement.

11.    Attorneys' Fees.  In the event of any action by Seller or Buyer concerning the subject matter of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party its costs and expenses of enforcing its rights hereunder, including actual attorneys' fees.

12.    Binding on Successors.  Subject to Section 8, the terms and conditions herein contained shall be binding upon and inure to the benefit of the successors and assignees of the parties hereto.

13.    Applicable Law.  This Agreement shall be construed in accordance with the laws of the State of Nevada.

14.    Partial Invalidity.  If any provision of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of the Agreement shall continue in full force and effect and shall in no way be impaired or invalidated, and the parties agree to substitute for the invalid or unenforceable provision a valid and enforceable provision that most closely approximates the intent and economic effect of the invalid or unenforceable provision.

15.    Entire Agreement; Purchase Agreement Not Amended  All exhibits referred to

herein are attached hereto and incorporated herein by this reference. This Agreement contains the entire agreement and understanding of the parties with respect to the subject matter hereof and cannot be amended or modified except by a written agreement, executed by each of the parties hereto.

16.    <u>Effect on Purchase Agreement</u>.   This Agreement does not constitute an amendment to the Purchase Agreement.

17.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall, for all purposes, be deemed an original and all such counterparts, taken together, shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

BUYER:                                          SELLER:

_____,    COMMERCE ASSOCIATES, LLC, a Nevada
a Nevada _____      limited liability company

By: _____    By: _____

Name: _____     Name: _____

Its: _____    Its: _____

EXHIBIT "A" TO THE CONSTRUCTION LICENSE AND INDEMNITY AGREEMENT

Legal Description of the Property

**EXHIBIT R**

**LOT DEED**

**(Section 13.5(a)(i))**

A.P.N. # _____

RECORDING REQUESTED BY, AND
WHEN RECORDED, RETURN TO:

United Title of Nevada
3980 Howard Hughes Parkway
Las Vegas, NV 89109
Attn: _____
(Escrow # _____)

R.P.T.T.: $_____

_____

(Space above line for Recorder's use only)

**GRANT BARGAIN AND SALE DEED**

COMMERCE ASSOCIATES, LLC, a Nevada limited liability company, as "Grantor,"
does hereby Grant, Bargain, Sell and Convey to _____, a _____
as "Grantee," the real property in the County of Clark, State of Nevada (hereinafter referred to as
the "Land") described on Attachment "A" attached hereto and incorporated herein by this
reference.

RESERVING UNTO GRANTOR, its successors and assigns, together with the right to
grant and transfer all or a portion of the same, as follows:

A.      Non-exclusive easements in gross on, over, under or across the Land for the
purposes of installation, emplacement and maintenance of electric, telephone, cable television,
water, gas, sanitary sewer lines, drainage facilities or any other utilities, together with the right to
enter upon the Land (without unreasonably interfering with Grantee's reasonable use and
enjoyment thereof) in order to service, maintain, repair, reconstruct, relocate or replace any of
such lines or facilities, provided, Grantor shall repair any damage caused by its activities upon
the Land pursuant to such easement. Grantee's use of the Land subject to the easement reserved
by Grantor under this Section A shall be limited to the reasonable vicinity of the applicable lines
or facilities and shall terminate as to each residential lot shown upon a recorded final subdivision

Draft of November 13, 2003                                                                                  1

map, upon the recordation of such final subdivision map without any necessity that any additional document be executed or recorded.

B.     Non-exclusive easements in gross on, over, under or across the Land for the purposes of installation, emplacement and maintenance of those improvements described as "Seller's Work" in that certain Declaration of Development Covenants and Restrictions executed by Grantee and recorded of even date herewith (the "Development Declaration"). Grantee's use of the Land subject to the easement reserved by Grantor under this Section B shall be limited to reasonable vicinity of the applicable Seller's Work of Improvement and shall automatically terminate upon completion by Grantor of all such improvements and dedication thereof to appropriate governmental authorities or public utilities.

SUBJECT TO:

1.     General and special taxes and assessments for the current fiscal tax year and any and all unpaid bonds and/or assessments.

2.     The exceptions set forth on Attachment B attached hereto.

IN WITNESS WHEREOF, Grantor has caused its name to be affixed hereto and this instrument to be executed by its general partner thereunto duly authorized.

Dated as of _____, 200__

> COMMERCE ASSOCIATES, LLC, a Nevada
> limited liability company
>
> By:_____
> Name:_____
> Title:_____

STATE OF NEVADA

COUNTY OF CLARK

This instrument was acknowledged before me on this _____ day of _____, 200__ by _____, as _____ of COMMERCE ASSOCIATES, LLC.

*(Signature of notarial officer)*

(My commission expires: _____)

Mail Tax Bills To:

## ATTACHMENT A
## TO DEED

## LEGAL DESCRIPTION OF LAND

Draft of November 13, 2003

**ATTACHMENT B**
**TO DEED**

**PERMITTED EXCEPTIONS**

## EXHIBIT S

## NEIGHBORHOOD FACILITIES DEED

### (Section 13.5(a)(i))

APN # _____

R.P.T.T.: $_____

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Mail Tax Bills To:

## GRANT, BARGAIN, SALE DEED

**THIS INDENTURE WITNESSETH THAT:**

WHEREAS, COMMERCE ASSOCIATES, LLC, a Nevada limited liability company ("Grantor"), having an office at 2920 N. Green Valley Parkway, Suite 114, Henderson, Nevada, 89014, as seller, and RHODES DESIGN AND DEVELOPMENT CORPORATION, a Nevada corporation, as purchaser ("Grantee"), are parties to that certain PURCHASE AGREEMENT AND GRANT OF OPTIONS dated as of November 7, 2003 (as now or hereafter amended, collectively, the "Purchase Agreement"); and

WHEREAS, pursuant to the Purchase Agreement, Grantor is conveying to Grantee of even date herewith certain residential lots within _____, as set forth in the map thereof, recorded _____, 200__, in Book ___, Page ___ of Plats (the "Subdivision"), Official Records, Clark County, Nevada Recorder; and

WHEREAS, pursuant to the Purchase Agreement and the Declaration of Development Covenants and Restrictions dated _____, 2003 executed by Grantee and Recorded in Book _____ of Official Records, Document No. _____ (as now or hereafter amended,

collectively, the "Development Declaration"), Grantee has agreed to construct certain private streets, underground utilities, curbs, gutters, sidewalks, street lights, common areas and other improvements located within the Subdivision for the benefit of the owners of lots in the Subdivision (collectively, the "Lot Owners"); and

WHEREAS, Grantor does by this presents desire to convey to Grantee, and Grantee desires to accept from Grantor, certain common areas, subject to certain undertakings on behalf of Grantee to complete certain common area improvements;

NOW THEREFORE, in consideration of the sum of TEN DOLLARS ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, GRANTOR DOES HEREBY GRANT, BARGAIN, SELL AND CONVEY TO GRANTEE, its successors and assigns, all right, title and interest in, to and under those certain tracts, pieces or parcels of real property situated in the County of Clark, State of Nevada, more particularly described as:

[All private streets, easements, rights of way and common areas, including, without limitation, all private utility easements (collectively, the "Neighborhood Common Elements"), as set forth in the map of _____, recorded _____, 200__, in Book ___, Page ___ of Plats, Official Records, Clark County, Nevada Recorder.]

APN: _____

TOGETHER WITH all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining;

RESERVING UNTO Grantor for itself, individually, and Grantor's successors and assigns, including the Tuscany Master Association, a Nevada non-profit corporation ("Master Association") rights of ingress, egress, temporary construction access and the right to complete all improvements required to be completed by Grantor and its successors and assigns pursuant to the terms of the Purchase Agreement, the Master Declaration (as hereinafter defined) , the Development Declaration or otherwise deemed reasonably appropriate by Grantor in connection with the overall development of Tuscany; and

RESERVING for the benefit of all Lot Owners, non-exclusive easements for ingress and egress, public and private utilities, recreation and enjoyment and over the Neighborhood Common Elements.

GRANTEE IN ACCEPTING THIS DEED AND THE CONVEYANCE HEREUNDER DOES HEREBY COVENANT AND AGREE, FOR THE BENEFIT OF GRANTOR, ITS SUCCESSORS AND ASSIGNS, AND FOR THE BENEFIT OF THE LOT OWNERS, AS FOLLOWS:

1.    Grantee shall, at its sole expense, construct the private streets, underground utilities, curbs, gutters, sidewalks, street lights, open spaces, common areas and other improvements located within the Neighborhood Common Elements (collectively, the "Neighborhood Facilities") required by the Purchase Agreement and the Development Declaration: (a) in the

manner required for the construction of Improvements, as set forth in the Development Declaration and (b) in accordance with the Architectural Guidelines and the Project Plan submitted to and approved by Grantor pursuant to the Development Declaration. The Neighborhood Facilities shall constitute an "Improvement" within the meaning of the Development Declaration and failure by Grantee to construct and complete the Neighborhood Facilities as required herein (and by reference the Development Declaration) shall be deemed a default under the terms and provisions of the Purchase Agreement and the Development Declaration.

2.      Upon completion of each of the Neighborhood Facilities, Grantee shall submit to Grantor a copy of the certificate of compliance executed by Grantee's state licensed consultant (engineer, architect and/or landscape architect) and, if required by law, the Purchase Agreement or the Development Declaration, the acceptance or approval thereof by the City of Henderson or other governmental agency or authority.

3.      Upon completion of the Neighborhood Facilities as required by this Deed, Grantee shall maintain such facilities in good condition and repair until such time as Grantee shall have conveyed the Neighborhood Common Elements, together with the Neighborhood Facilities thereon (collectively, the "Project Common Elements"), to the Master Association or, if applicable, an association formed in accordance with the requirements of NRS Chapter 116 (the "Sub-Association") for the benefit of all Lot Owners and pursuant to a declaration (as defined in NRS Chapter 116) governing the rights, duties and obligations of all Lot Owners (the "Supplemental Declaration").. The conveyance of the Project Common Elements to the Master Association or Sub-Association by Grantee shall be free and clear of all monetary encumbrances (other than taxes and assessments not then delinquent) and, unless otherwise agreed by Grantor, shall occur prior to or concurrently with the conveyance of the first Residence within the Subdivision. Such conveyance shall be made on a grant, bargain and sale deed form approved by Grantor. Failure to convey the Project Common Elements as herein provided shall constitute a default under the terms and provisions of the Purchase Agreement and the Development Declaration.

4.      Notwithstanding the conveyance of the Project Common Elements to the Master Association or Sub-Association, Grantee shall continue to maintain the Project Common Elements until such time as Grantor and/or the declarant under the Master Declaration has approved in writing (i) the Supplemental Declaration and (ii) the conveyance of the Project Common Elements to the Master Association or Sub-Association.

The obligations of Grantee herein set forth shall be covenants running with the Covered Property for the benefit of the Benefited Property and the Subdivision lots, it being understood that the obligations hereunder will automatically pass to Grantee's successors in title to such property, including any such successor acquiring title by foreclosure or otherwise, and shall be binding upon the Grantee, its heirs, devisees, executors, administrators, successors and assigns, provided that any of such successors (other than a [Participating Builder], as defined in the Master Declaration) constituting a Lot Owner shall be bound by the foregoing covenants only as long as such Lot Owner owns title to a Residence.

Upon the occurrence of a breach of any covenant hereunder by Grantee, Grantor shall be entitled to exercise any right or remedy provided for in the Purchase Agreement or the Development Declaration or otherwise available to Grantor at law or in equity, and including, without limitation, the right on the part of Grantor, but not the obligation to: (a) complete any Neighborhood Facilities; and (b) specifically enforce the provisions of this Deed, Grantee, by these presents acknowledging that, should Grantee fail to comply with the terms and provisions of this Deed, the legal remedies available to Grantor and/or the Lot Owners will likely be inadequate.

SUBJECT TO current taxes and assessments and all covenants, conditions, restrictions, easements, encumbrances, liens and other matters of record, including that certain Master Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Tuscany, recorded in the office of the Clark County, Nevada Recorder on _____, 2004, in Book _____ as Instrument No. _____ as now or hereafter amended (the "Master Declaration").

Dated as of the _____ day of _____, 200__.

COMMERCE ASSOCIATES, LLC, a Nevada limited liability company

By: _____

Print Name: _____

Title:_____

STATE OF NEVADA

COUNTY OF CLARK

This instrument was acknowledged before me on this ____ day of _____, 200___, by _____ as _____ of Commerce Associates, LLC.

_____
(Signature of notarial officer)

     My commission expires:

ACKNOWLEDGED AND ACCEPTED this ___ day of _____, 200__.

RHODES DESIGN AND DEVELOPMENT CORPORATION, a Nevada corporation

By: _____

Print Name: _____

Title:_____

STATE OF NEVADA

COUNTY OF CLARK

This instrument was acknowledged before me on this ___ day of _____, 200__, by _____ as _____ of Rhodes Design and Development Corporation.

_____
(Signature of notarial officer)

My commission expires:

## EXHIBIT T

## FORM OF NON-FOREIGN TRANSFEROR

### (Section 13.5(a)(ii))

### CERTIFICATION OF NON-FOREIGN STATUS

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. To inform the transferee that withholding of tax is not required upon the disposition of a U.S. real property interest by COMMERCE ASSOCIATES, LLC, a Nevada limited liability company ("Transferor"), the undersigned hereby certifies the following on behalf of Transferor:

       1.     Transferor is not a foreign corporation, foreign partnership, foreign trust and foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

       2.     Transferor's U.S. employer identification number is 88-0446942; and

       3.     Transferor's office address is 2920 North Green Valley Parkway, Suite 114, Henderson, Nevada 89014.

       Transferor understands that this certification may be disclosed to the Internal Revenue Service by transferee and that any false statement contained herein could be punished by fine, imprisonment or both.

       Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct and complete; and I further declare that I have authority to sign the document on behalf of the Transferor.

       COMMERCE ASSOCIATES, LLC a Nevada
       limited liability company

       By:_____

       Title:_____

## EXHIBIT U

## AMENDMENT TO MEMORANDUM

### (Section 13.5(a)(vi))

APN #_____

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:
Jones Vargas
3773 Howard Hughes Parkway, 300 South
Las Vegas, Nevada 89109
Attention: Michael E. Buckley

Escrow # _____

## AMENDMENT TO MEMORANDUM

This Amendment to Memorandum ("Amendment") is executed as of _____, 200__, by COMMERCE ASSOCIATES, LLC,  a Nevada limited liability company ("Seller") and _____, a Nevada _____ ("Purchaser") and amends that certain Memorandum of Agreement dated _____, 200__ and recorded on _____, 200__ in Book 200_____ as Instrument No. _____ ("Memorandum"), by and between Seller AND Rhodes design and development Corporation, a Nevada corporation ("Rhodes") in the following respects:

Purchaser, Rhodes and Seller acknowledge that (a) Purchaser has purchased from Seller, pursuant to the terms of that certain Purchase Agreement and Grant of Options, dated as of November __, 2003 (the "Purchase Agreement") that portion of the property described in the Memorandum as the "Land" and more particularly described on Attachment A attached hereto; and (b) subject to the express provisions of the Purchase Agreement, Seller has given Purchaser an option, described in the Purchase Agreement, with respect to the real property more particularly described on Attachment B attached hereto.  Pursuant to the Purchase Agreement, said options shall expire no later than 90 days after the recording of this Amendment.

This Amendment is prepared for the purposes of recordation and it in no way modifies the provisions of the Purchase Agreement.

This Amendment may be executed in counterparts each of which shall be an original and all of which, taken together shall constitute but one and the same instrument.

IN WITNESS WHEREOF, the Seller and Purchaser have executed this Amendment as of the date first set forth above.

"Rhodes"                                    "Seller"

RHODES DESIGN AND DEVELOPMENT      COMMERCE ASSOCIATES, LLC, a Nevada
CORPORATION, a Nevada corporation        limited liability company

By:_____            By:_____
———————————————            ———————————————
    Printed Name and Title                          Printed Name and Title

"Purchaser"

_____, a _____

By:_____
———————————————
    Printed Name and Title

## ACKNOWLEDGMENTS

STATE OF NEVADA

COUNTY OF CLARK

The foregoing instrument was acknowledged before me this _____ day of _____, 200__, by _____, the _____ of COMMERCE ASSOCIATES, LLC, a Nevada limited liability company.

———————————————
                Notary Public

My commission expires: _____

STATE OF NEVADA

COUNTY OF CLARK

The foregoing instrument was acknowledged before me this _____ day of _____, 200__, by _____, the _____ of RHODES DESIGN AND DEVELOPMENT CORPORATION, a Nevada corporation.

———————————————

Notary Public

My commission expires: _____

STATE OF NEVADA

COUNTY OF CLARK

      The foregoing instrument was acknowledged before me this _____ day of _____, 200__, by _____, the _____ of _____, a _____.

_____
                        Notary Public

My commission expires: _____

3

## ATTACHMENT A

### Legal Description

THAT CERTAIN REAL PROPERTY LOCATED IN THE COUNTY OF CLARK, STATE OF NEVADA, DESCRIBED AS FOLLOWS:

[Insert legal description of Phase I Lots.]

Draft of November 13, 2003

4

## ATTACHMENT B

### Legal Description

THAT CERTAIN REAL PROPERTY LOCATED IN THE COUNTY OF CLARK, STATE OF NEVADA, DESCRIBED AS FOLLOWS:

[Insert legal descriptions of Option Parcels.]

5

# EXHIBIT V

## MASTER DECLARATION ASSIGNMENT

### (Section 10.2)

Draft of November 13, 2003

APN:

RECORDING REQUESTED BY

(Escrow No._____)

AND WHEN RECORDED MAIL TO:

3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89109
Attention: Michael E. Buckley, Esq.

## CONDITIONAL ASSIGNMENT AND GRANT OF RIGHTS

 THIS CONDITIONAL ASSIGNMENT AND GRANT OF RIGHTS ("Assignment") is made as of the ____ day of _____, 2004 by RHODES DESIGN AND DEVELOPMENT CORPORATION, a Nevada corporation ("Rhodes") to COMMERCE ASSOCIATES, LLC, a Nevada limited liability company ("Commerce"), with reference to the following facts and purposes:

 A. Commerce, as seller, and Rhodes, as purchaser, are parties to a Purchase Agreement and Grant of Options, dated as of November 14, 2003 (as now or hereafter in effect, the "Purchase Agreement"), pursuant to which Commerce is of even date herewith conveying the Phase I Lots to _____, and Commerce has agreed to grant certain options to purchase the real property described on Exhibit A attached hereto and incorporated herein by this reference (the "Property"), which is located within the master planned community known as Tuscany. All capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Purchase Agreement.

 B. Pursuant to the Purchase Agreement the Phase I Lots are subject to the provisions of that certain Master Declaration of Covenants, Conditions and Restrictions and Grant of Easements for Tuscany, recorded _____, in Book _____, as Instrument No. _____, Official records, Clark County, Nevada (the "Master Declaration").

 C. In accordance with the Purchase Agreement, Rhodes is designated as the "Declarant" under the Master Declaration.

November 13, 2003                     1

D.      Commerce requires, in accordance with the Purchase Agreement, that, contemporaneously with the recording of the Master Declaration, Rhodes execute and deliver this Conditional Assignment and Grant of Rights, pursuant to which Commerce is given the right to become the Declarant under the Master Declaration upon the occurrence of a Purchaser Default under the Purchase Agreement or in the event all of the Property is not acquired under the Purchase Agreement.

NOW THEREFORE, FOR VALUE RECEIVED, Rhodes, subject to Commerce's rights to accept, reject, or limit the transfer of same, hereby grants, transfers, assigns, and sets over to Commerce, and grants Commerce a security interest in, all of Rhodes's right and interest in and to Rhodes's rights as Declarant in and under the Master Declaration, including but not limited to, special declarant's rights (NRS 116.110385), developmental rights (NRS 116.11034), the right to maintain models, offices for sales and signs (NRS 116.2115), and the ability to exercise any of the rights reserved to a declarant under the Master Declaration (collectively, the "Declarant's Rights").  Without limiting the generality of the foregoing, this Assignment is given for the purposes of securing:

(a)      The performance, whether by Rhodes or any other person acquiring title to all or any part of the Property pursuant to the Purchase Agreement, of the Purchaser's obligations under (i) the Purchase Agreement, and any amendment or modification thereof and (ii) of every term, provision, condition, duty, obligation, covenant and agreement of the Purchaser contained in any Development Declaration and any amendment, modification, extension, renewal or replacement thereof (collectively, the "Purchase Documents").

(b)      The performance and discharge by Rhodes of every term, provision, condition, duty, obligation, covenant and agreement of Rhodes contained herein and any amendment, modification, extension, renewal or replacement hereof.

This Assignment is intended as a present assignment of the Declarant's Rights and shall be effective immediately, provided, however, that, until the occurrence of a Termination Event (as hereinafter defined), permission is given to Rhodes to exercise the Declarant's Rights solely in accordance with the provisions of this Assignment.

As used herein, the term "Termination Event" means the occurrence of any of the following: (a) the occurrence of a Purchaser Default under the Purchase Agreement, (b) any of the Options is not exercised in accordance with the Purchase Agreement, (c) an Option Closing Date fails to occur by reason of the failure of an Option to be exercised or Commerce's permitted termination of an Option.

Following a Termination Event, Rhodes's exercise of any Declarant's Rights shall be of no force or effect.

**RHODES FURTHER COVENANTS AND AGREES AS FOLLOWS:**

November 13, 2003                                                                                              2

1.      Rhodes shall from time to time execute any and all instruments reasonably requested by Commerce in order to evidence or enforce this Assignment.

2.      Rhodes will fully comply at all times with each of the following covenants:

(a)     Rhodes will promptly pay when due all fees, charges and other sums or amounts required to be paid by the Declarant and will further keep and perform all of the covenants, terms and provisions of the Master Declaration that impose any obligation on the Declarant, and will do all other things necessary to preserve and keep unimpaired the Declarant's Rights.

(b)     Rhodes will promptly (not later than five (5) business days following receipt thereof) notify Commerce in writing of any default on the part of Rhodes as the Declarant, and of the occurrence of any event which, with or without any notice or lapse of time or both, would constitute a default on the part of Rhodes as the Declarant.

(c)     Rhodes will promptly send to Commerce a true copy of any notice served on Rhodes as Declarant.

(d)     Rhodes will not surrender, terminate or cancel any Declarant's Rights, in whole or in part, without first obtaining the prior written consent of Commerce. Rhodes will not make or consent to any modification, change, supplement, amendment or alteration of any terms of the Master Declaration in whole or in part, without first obtaining the prior written consent of Commerce, provided that Commerce shall not unreasonably withhold its consent to any such modification, change, supplement, amendment or alteration which does not in any way adversely affect the Declarant's Rights or the value of any real property owned by Commerce within Tuscany or Commerce's ability to develop its real property within Tuscany.

3.      If at any time Rhodes fails to comply fully with any of the Declarant's obligations under the Master Declaration and that failure in any manner threatens to impair Commerce's rights or security under this Assignment, then Commerce may, but is not obligated to, perform any of those obligations on behalf of Rhodes or cure any of Rhodes's defaults. Commerce may take such action without notice to or demand upon Rhodes and without releasing Rhodes from any obligations under this Assignment or any of the Purchase Documents.

4.      Commerce will have the right to appear in and participate in all proceedings, which could affect Commerce's rights or security hereunder or the value of any Declarant's Rights. Rhodes agrees to pay upon demand all reasonable costs and expenses of Commerce (including but not limited to reasonable legal fees and disbursements) incurred in any such proceedings. Any and all such costs and expenses (and any other costs and expenses which Rhodes is obligated to pay hereunder) shall be additional secured obligations hereunder, and shall bear interest at the Agreed

November 13, 2003                                                                                          3

Rate from the time of advancement by Commerce until paid, and if not paid within 30 days, at the Default Rate thereafter.

5.      Rhodes hereby agrees to indemnify, protect, defend and hold Commerce harmless of and from any and all liability, loss, damage, or expense which it may or might incur under or by reason of this Assignment or for any action taken by Commerce hereunder or by reason or in defense of any and all claims and demands whatsoever which may be asserted against Commerce arising out of the Master Declaration (excepting only those obligations of Commerce as an Owner or Member [as those terms are defined in the Master Declaration] should any real property owned by Commerce become subject to the Master Declaration).  Should Commerce incur any such liability, loss, damage, or expenses, or any expenses in the defense of any claims or demands, the amount thereof (including reasonable attorneys' fees whether or not suit is commenced), shall be payable by Rhodes immediately and without demand, and the payment thereof shall be obligations secured hereby, provided, however, that unless Rhodes at any time shall fail to adequately defend such indemnified person as required hereby, Rhodes shall defend Commerce using legal counsel reasonably satisfactory to such indemnified person, at the sole reasonable cost and expense of Rhodes.

6.      The exercise by Commerce of any of the rights, remedies, powers or privileges provided for herein or the taking of any action by Commerce, whether completed or incomplete with respect thereto, is permissive and not obligatory, and the exercise or non-exercise of the same shall not preclude, delay or prejudice any other rights, remedies, powers or privileges provided for herein or under any of the Purchase Documents, or otherwise provided at law or in equity, and the failure to take action at any time shall not constitute a waiver of such right, remedy, power or privilege.

7.      So long as no Termination Event has occurred, Rhodes may continue to receive and exercise all of the rights, benefits and privileges of the Declarant under the Master Declaration, provided the same are received and exercised in accordance with this Assignment.

8.      Neither this Assignment nor any action or actions on the part of Commerce other than an express agreement in writing executed by Commerce specifically assuming such obligation shall constitute an assumption of all or any of the Declarant's Rights or the obligations of the Declarant under the Master Declaration, and Rhodes shall continue to be liable for all obligations thereunder.

9.      Upon the occurrence of any Termination Event, Commerce shall have the right, but not the obligation, to take in its name or in the name of Rhodes or otherwise, such actions which Commerce may at any time or from time to time after the occurrence of a Termination Event determine is necessary to protect the rights of Rhodes or Commerce hereunder.  Commerce shall incur no liability if any action taken by it or in its behalf in good faith, pursuant to the foregoing sentence, shall prove to be in whole or in part inadequate or invalid, and Rhodes agrees to indemnify and hold Commerce harmless from and against any and all loss, cost, liability, or

expense (including, but not limited to, reasonable attorneys' fees and expenses) in connection with any such action or actions. Provided, however, without limiting the foregoing, unless Rhodes at any time shall fail to adequately defend such indemnified person as required hereby, Rhodes shall defend Commerce using legal counsel reasonably satisfactory to such indemnified person, at the sole reasonable cost and expense of Rhodes.

10.    Rhodes hereby irrevocably constitutes and appoints Commerce its true and lawful attorney-in-fact, in the name of Rhodes or any successor or assign or in Commerce's name or otherwise, to enforce all rights of Rhodes as the Declarant under the Master Declaration, such power of attorney being coupled with an interest, being irrevocable.

11.    There shall be no merger of the interests of the parties to the Master Declaration, or any interest created thereby; without limiting the foregoing, there shall be no merger by reason of any interests thereunder coming into common ownership, unless Commerce consents to such merger of interests in writing.

12.    Any notice, request, demand, statement, authorization, approval or consent made hereunder shall be in writing and shall be sent by United Parcel Service, or other reputable nationally recognized overnight courier service, or by postage pre-paid registered or certified mail, return receipt requested, and shall be deemed given when received or refused (as indicated on the receipt, unless receipt or refusal is not during normal business hours on a business day, in which case, notice shall be deemed given on the next following business day) and addressed as follows:

If to Commerce:

> COMMERCE ASSOCIATES, LLC
> 2920 North Green Valley Parkway,
> Suite 114
> Henderson, Nevada 89014
> Attention: Bob Unger
> Telephone: (702) 456-5210
> Telecopy: (702) 456-8744

and:

> Jones Vargas
> 3773 Howard Hughes Parkway
> Third Floor South
> Las Vegas, Nevada 89109
> Attention: Michael E. Buckley, Esq.
> Telephone: (702) 862-3300
> Telecopy: (702) 734-2722

November 13, 2003

If to Rhodes:

Rhodes Homes
4730 S. Fort Apache Road
Suite 300
Las Vegas, Nevada 89147
Attention: James M. Rhodes, President
Telephone: (702) 873-5338
Telecopy: (702) 873-5129

and:

Rhodes Homes
4730 S. Fort Apache Road
Suite 300
Las Vegas, Nevada 89147
Attention: General Counsel
Telephone: (702) 873-5338
Telecopy: (702) 873-5129

Each party may designate a change of address by notice given, as herein provided, to the other party, at least fifteen (15) days prior to the date such change of address is to become effective.

13.    Subject to the restrictions set forth in the Purchase Documents, this Assignment is binding on and shall inure to the benefit of the parties hereto, their successors, nominees and assigns.

14.    This Assignment may be executed in two or more counterparts, all of which shall be deemed a duplicate original.

15.    If any one or more of the provisions of this Assignment, or the applicability of any such provision to a specific situation, shall be held invalid or unenforceable, such provision shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of this Assignment and all other applications of any such provisions shall not be affected thereby.

16.    This Assignment shall be governed by and construed in accordance with the laws of the State of Nevada without giving effect to any contrary conflict-of-law rules and principles of such State.

17.    The rights and remedies of Commerce under this Assignment are cumulative and are not in lieu of, but are in addition to, any other rights or remedies which Commerce may have under the Purchase Documents, at law, or otherwise.

18.    This Assignment may not be amended, modified or changed, nor shall any waiver of any provision hereof be effective, except by an instrument in writing and signed by the

party against whom enforcement of the waiver, amendment, change, modification or discharge is sought.

19.     Upon the satisfaction of all obligations of Rhodes to Commerce under the Purchase Agreement and the acquisition of all of the Property pursuant to the Purchase Agreement, this Assignment shall automatically terminate. Commerce hereby agrees, upon termination of this Assignment, to execute a release and reconveyance of this Assignment and all further documents, if any, necessary or reasonably requested by Rhodes in order to evidence the termination of this Assignment.

IN WITNESS WHEREOF, Rhodes has executed this Assignment as of the date first above written.

Rhodes:                  **RHODES    DESIGN    AND    DEVLOPMENT CORPORATION**, a Nevada corporation

By: _____
                James Rhodes, its President

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before me on this ____ day of _____, 2004 by James Rhodes, as president of Rhodes Design and Development Corporation, a Nevada corporation.

Notary _____

November 13, 2003                                                    7

# EXHIBIT A

## Legal Description of the Property

## EXHIBIT W

### RESTATED PRIOR NOTE

### (Section 2.1)

### AMENDED AND RESTATED
### PROMISSORY NOTE

$1,300,000                                                    Las Vegas, Nevada

November 14, 2003

FOR VALUE RECEIVED, the undersigned, Commerce Associates, LLC, a Nevada limited liability company ("Maker") promises to pay to the order of Lakeside, LLC, a Nevada limited liability company ("Payee") at 2271 Arrowhead Drive, Carson City, Nevada 89706, or at such other place as the holder hereof may from time to time designate in writing, the principal sum of ONE MILLION THREE HUNDRED THOUSAND DOLLARS (1,300,000) payable hereunder to be paid in lawful money of the United States of America as follows:

A.    No interest shall accrue except as otherwise set forth herein.

B.    Except as otherwise set forth herein, Payments under this Note shall be payable only out of the proceeds (the "Proceeds") from the sale or lease of the Property, as that term is defined in the Purchase Agreement between Maker and Payee dated January 28, 2000 (the "Agreement"), as follows: (i) at such times as the gross Proceeds are less than or equal to $35,000,000, no payment shall be required under this Note; (ii) thereafter, payments equal to 5% of gross Proceeds shall be made upon receipt of such payments until the Note is paid in full. Notwithstanding the foregoing, in the event 50% or more of the Property is sold, leased or otherwise conveyed (except as security for a loan), other than as finished lots, or any part of the Property is sold, leased or otherwise conveyed other than in a bona fide arms-length third party transaction, the entire amount of the outstanding balance of the Note shall be due and payable in full without regard to the amount of Proceeds. The granting of options to purchase the Property shall not be deemed a sale, lease or other conveyance until the conveyance of fee title pursuant to such option.

All payments on this Note shall be applied first to the payment of any costs, fees or other charges incurred in connection with the indebtedness evidenced hereby, next to the payment of accrued interest and then to the reduction of the principal balance.

Maker shall have the option to prepay this Note, in full or in part, at any time without penalty.

Any one of the following occurrences shall constitute an event of default under this Note: (a) the failure to make any payment when due on this Note, and should such default continue for a period of ten (10) days; and (b) the occurrence of any other default under this Note not cured within thirty (30) days written notice of such default from Payee to Maker. If an event of default occurs, this Note, together with all other of Maker's liabilities owing hereunder by Maker to Payee shall immediately become due and payable, without notice at the election of Payee and interest shall accrue on the amount due at the rate of twelve percent (12%).

Maker agrees to pay all collection expenses, including reasonable attorneys' fees and court costs, incurred in the collection or enforcement of all or any part of this Note. Such court costs and attorneys' fees shall be set by the court and not by jury, shall be included in any judgment obtained by the holder hereof.

Failure of the holder to exercise any option hereunder shall not constitute a waiver of the right to exercise the same in the event of any subsequent default, or in the event of continuance of any existing default after demand for strict performance hereof.

This Note shall be construed according to the laws of the State of Nevada.

This Note amends, restates and completely supercedes that certain Promissory Note dated January 28, 2000 ("Original Note") and is given in full substitution therefor. Maker shall have no further liability under the Original Note.

IN WITNESS HEREOF, this Amended and Restated Promissory Note has been executed as of the date first written above.

COMMERCE ASSOCIATES, LLC,
a Nevada limited liability company


By: _____
       Tom Gonzales