# EXHIBIT B

# EXHIBIT B

TUSCANY

Sub Paragraph
Exception No. 28    (A)

|||||| ||| ||||| ||| ||||||| |||| |||| || |||| ||| ||||
20051219-0004171

Fee: $22.00
N/C Fee: $0.00

APN: 160-32-313-001 thru4012, 019 7New086
C910 7thru 126,136 7thru 144, 159 7thru 161, 186 7thru190
RECORDING REQUESTED BY:    202, 160-32-2/3 001
Chicago Title Agency of Nevada, Inc.    Thru038
2300 W. Sahara Avenue, #140
Las Vegas, NV 89102
Attention: Clarice Ronzone

12/19/2005
T20050229273
Requestor:
CHICAGO TITLE

13:30:27

Frances Deane    DGI
Clark County Recorder    Pgs: 9

(Escrow No.05050487)

AND WHEN RECORDED MAIL TO:    ◯

3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89109
Attention: Michael E. Buckley, Esq.

---

## CONDITIONAL ASSIGNMENT AND GRANT OF RIGHTS

THIS CONDITIONAL ASSIGNMENT AND GRANT OF RIGHTS ("Assignment") is made as of the 19 day of December, 2005 by RHODES DESIGN AND DEVELOPMENT CORPORATION, a Nevada corporation ("Rhodes") to COMMERCE ASSOCIATES, LLC, a Nevada limited liability company ("Commerce"), with reference to the following facts and purposes:

A.    Commerce, as seller, and Rhodes, as purchaser, are parties to a Purchase Agreement and Grant of Options, dated as of November 14, 2003 (as now or hereafter in effect, the "Purchase Agreement"), pursuant to which Commerce has conveyed the real property described on Exhibit A attached hereto and incorporated herein by this reference (the "Initial Phases") to Rhodes and certain affiliates of Rhodes. All capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Purchase Agreement.

B.    Commerce has also agreed to grant certain Options to purchase the Option Parcels.

C.    The Initial Phases and the Option Parcels are located within the master planned community known as Tuscany.

D.    Pursuant to the Purchase Agreement, Rhodes has subjected the Initial Phases to the provisions of that certain Master Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Tuscany Residential Community, recorded July 28, 2005, in Book 20050728, as Instrument No. 04296, Official records, Clark County, Nevada (the "Master Declaration").

E.    In accordance with the Purchase Agreement, Rhodes is designated as the "Declarant" under the Master Declaration.

1

F.    Commerce requires, in accordance with the Purchase Agreement, that, contemporaneously with the recording of the Master Declaration, Rhodes execute and deliver this Conditional Assignment and Grant of Rights, pursuant to which Commerce is given the right to become the Declarant under the Master Declaration upon the occurrence of a Purchaser Default under the Purchase Agreement or in the event all of the Option Parcels are not acquired under the Purchase Agreement.

NOW THEREFORE, FOR VALUE RECEIVED, Rhodes, subject to Commerce's rights to accept, reject, or limit the transfer of same, hereby grants, transfers, assigns, and sets over to Commerce, and grants Commerce a security interest in, all of Rhodes's right and interest in and to Rhodes's rights as Declarant in and under the Master Declaration, including but not limited to, special declarant's rights (NRS 116.110385), developmental rights (NRS 116.11034), the right to maintain models, offices for sales and signs (NRS 116.2115), and the ability to exercise any of the rights reserved to a declarant under the Master Declaration (collectively, the "Declarant's Rights"). Without limiting the generality of the foregoing, this Assignment is given for the purposes of securing:

(a)    The performance, whether by Rhodes or any other person acquiring title to all or any part of the Option Property pursuant to the Purchase Agreement, of the Purchaser's obligations under (i) the Purchase Agreement, and any amendment or modification thereof and (ii) of every term, provision, condition, duty, obligation, covenant and agreement of the Purchaser contained in any Development Declaration and any amendment, modification, extension, renewal or replacement thereof (collectively, the "Purchase Documents").

(b)    The performance and discharge by Rhodes of every term, provision, condition, duty, obligation, covenant and agreement of Rhodes contained herein and any amendment, modification, extension, renewal or replacement hereof.

This Assignment is intended as a present assignment of the Declarant's Rights and shall be effective immediately, provided, however, that, until the occurrence of a Termination Event (as hereinafter defined), permission is given to Rhodes to exercise the Declarant's Rights solely in accordance with the provisions of this Assignment.

As used herein, the term "Termination Event" means the occurrence of any of the following: (a) the occurrence of a Purchaser Default under the Purchase Agreement, (b) any of the Options is not exercised in accordance with the Purchase Agreement, (c) an Option Closing Date fails to occur by reason of the failure of an Option to be exercised or Commerce's permitted termination of an Option.

Following a Termination Event, Rhodes's exercise of any Declarant's Rights shall be of no force or effect.

**RHODES FURTHER COVENANTS AND AGREES AS FOLLOWS:**

2

1.      Rhodes shall from time to time execute any and all instruments reasonably requested by Commerce in order to evidence or enforce this Assignment.

2.      Rhodes will fully comply at all times with each of the following covenants:

(a)      Rhodes will promptly pay when due all fees, charges and other sums or amounts required to be paid by the Declarant and will further keep and perform all of the covenants, terms and provisions of the Master Declaration that impose any obligation on the Declarant, and will do all other things necessary to preserve and keep unimpaired the Declarant's Rights.

(b)      Rhodes will promptly (not later than five (5) business days following receipt thereof) notify Commerce in writing of any default on the part of Rhodes as the Declarant, and of the occurrence of any event which, with or without any notice or lapse of time or both, would constitute a default on the part of Rhodes as the Declarant.

(c)      Rhodes will promptly send to Commerce a true copy of any notice served on Rhodes as Declarant.

(d)      Rhodes will not surrender, terminate or cancel any Declarant's Rights, in whole or in part, without first obtaining the prior written consent of Commerce. Rhodes will not make or consent to any modification, change, supplement, amendment or alteration of any terms of the Master Declaration in whole or in part, without first obtaining the prior written consent of Commerce, provided that Commerce shall not unreasonably withhold its consent to any such modification, change, supplement, amendment or alteration which does not in any way adversely affect the Declarant's Rights or the value of any real property owned by Commerce within Tuscany or Commerce's ability to develop its real property within Tuscany.

3.      If at any time Rhodes fails to comply fully with any of the Declarant's obligations under the Master Declaration and that failure in any manner threatens to impair Commerce's rights or security under this Assignment, then Commerce may, but is not obligated to, perform any of those obligations on behalf of Rhodes or cure any of Rhodes's defaults. Commerce may take such action without notice to or demand upon Rhodes and without releasing Rhodes from any obligations under this Assignment or any of the Purchase Documents.

4.      Commerce will have the right to appear in and participate in all proceedings, which could affect Commerce's rights or security hereunder or the value of any Declarant's Rights. Rhodes agrees to pay upon demand all reasonable costs and expenses of Commerce (including but not limited to reasonable legal fees and disbursements) incurred in any such proceedings. Any and all such costs and expenses (and any other costs and expenses which Rhodes is obligated to pay hereunder) shall be additional secured obligations hereunder, and shall bear interest at the Agreed Rate from the time of advancement by Commerce until paid, and if not paid within 30 days, at the Default Rate thereafter.

5.      Rhodes hereby agrees to indemnify, protect, defend and hold Commerce harmless of and from any and all liability, loss, damage, or expense which it may or might incur under or by

reason of this Assignment or for any action taken by Commerce hereunder or by reason or in defense of any and all claims and demands whatsoever which may be asserted against Commerce arising out of the Master Declaration (excepting only those obligations of Commerce as an Owner or Member [as those terms are defined in the Master Declaration] should any real property owned by Commerce become subject to the Master Declaration). Should Commerce incur any such liability, loss, damage, or expenses, or any expenses in the defense of any claims or demands, the amount thereof (including reasonable attorneys' fees whether or not suit is commenced), shall be payable by Rhodes immediately and without demand, and the payment thereof shall be obligations secured hereby, provided, however, that unless Rhodes at any time shall fail to adequately defend such indemnified person as required hereby, Rhodes shall defend Commerce using legal counsel reasonably satisfactory to such indemnified person, at the sole reasonable cost and expense of Rhodes.

6.     The exercise by Commerce of any of the rights, remedies, powers or privileges provided for herein or the taking of any action by Commerce, whether completed or incomplete with respect thereto, is permissive and not obligatory, and the exercise or non-exercise of the same shall not preclude, delay or prejudice any other rights, remedies, powers or privileges provided for herein or under any of the Purchase Documents, or otherwise provided at law or in equity, and the failure to take action at any time shall not constitute a waiver of such right, remedy, power or privilege.

7.     So long as no Termination Event has occurred, Rhodes may continue to receive and exercise all of the rights, benefits and privileges of the Declarant under the Master Declaration, provided the same are received and exercised in accordance with this Assignment.

8.     Neither this Assignment nor any action or actions on the part of Commerce other than an express agreement in writing executed by Commerce specifically assuming such obligation shall constitute an assumption of all or any of the Declarant's Rights or the obligations of the Declarant under the Master Declaration, and Rhodes shall continue to be liable for all obligations thereunder.

9.     Upon the occurrence of any Termination Event, Commerce shall have the right, but not the obligation, to take in its name or in the name of Rhodes or otherwise, such actions which Commerce may at any time or from time to time after the occurrence of a Termination Event determine is necessary to protect the rights of Rhodes or Commerce hereunder. Commerce shall incur no liability if any action taken by it or in its behalf in good faith, pursuant to the foregoing sentence, shall prove to be in whole or in part inadequate or invalid, and Rhodes agrees to indemnify and hold Commerce harmless from and against any and all loss, cost, liability, or expense (including, but not limited to, reasonable attorneys' fees and expenses) in connection with any such action or actions. Provided, however, without limiting the foregoing, unless Rhodes at any time shall fail to adequately defend such indemnified person as required hereby, Rhodes shall defend Commerce using legal counsel reasonably satisfactory to such indemnified person, at the sole reasonable cost and expense of Rhodes.

10.     Rhodes hereby irrevocably constitutes and appoints Commerce its true and lawful attorney-in-fact, in the name of Rhodes or any successor or assign or in Commerce's name or otherwise, to enforce all rights of Rhodes as the Declarant under the Master Declaration, such power of attorney being coupled with an interest, being irrevocable.

4

11. There shall be no merger of the interests of the parties to the Master Declaration, or any interest created thereby; without limiting the foregoing, there shall be no merger by reason of any interests thereunder coming into common ownership, unless Commerce consents to such merger of interests in writing.

12. Any notice, request, demand, statement, authorization, approval or consent made hereunder shall be in writing and shall be sent by United Parcel Service, or other reputable nationally recognized overnight courier service, or by postage pre-paid registered or certified mail, return receipt requested, and shall be deemed given when received or refused (as indicated on the receipt, unless receipt or refusal is not during normal business hours on a business day, in which case, notice shall be deemed given on the next following business day) and addressed as follows:

If to Commerce:   COMMERCE ASSOCIATES, LLC
c/o TG Investments, LLC
4511 W. Cheyenne Ave.
Suite 801
N. Las Vegas, NV 89032
Telephone: (702) 413-9111
Telecopy: (702) 413-9107

and:   Jones Vargas
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89109
Attention: Michael E. Buckley, Esq.
Telephone: (702) 862-3300
Telecopy: (702) 734-2722

If to Rhodes:   Rhodes Homes
4730 S. Fort Apache Road
Suite 300
Las Vegas, Nevada 89147
Attention: James M. Rhodes, President
Telephone: (702) 873-5338
Telecopy: (702) 873-5129

and:   Rhodes Homes
4730 S. Fort Apache Road
Suite 300
Las Vegas, Nevada 89147
Attention: General Counsel
Telephone: (702) 873-5338
Telecopy: (702) 873-5129

5

Each party may designate a change of address by notice given, as herein provided, to the other party, at least fifteen (15) days prior to the date such change of address is to become effective.

13.     Subject to the restrictions set forth in the Purchase Documents, this Assignment is binding on and shall inure to the benefit of the parties hereto, their successors, nominees and assigns.

14.     This Assignment may be executed in two or more counterparts, all of which shall be deemed a duplicate original.

15.     If any one or more of the provisions of this Assignment, or the applicability of any such provision to a specific situation, shall be held invalid or unenforceable, such provision shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of this Assignment and all other applications of any such provisions shall not be affected thereby.

16.     This Assignment shall be governed by and construed in accordance with the laws of the State of Nevada without giving effect to any contrary conflict-of-law rules and principles of such State.

17.     The rights and remedies of Commerce under this Assignment are cumulative and are not in lieu of, but are in addition to, any other rights or remedies which Commerce may have under the Purchase Documents, at law, or otherwise.

18.     This Assignment may not be amended, modified or changed, nor shall any waiver of any provision hereof be effective, except by an instrument in writing and signed by the party against whom enforcement of the waiver, amendment, change, modification or discharge is sought.

19.     Upon the satisfaction of all obligations of Rhodes to Commerce under the Purchase Agreement and the acquisition of all of the Property pursuant to the Purchase Agreement, this Assignment shall automatically terminate. Commerce hereby agrees, upon termination of this Assignment, to execute a release and reconveyance of this Assignment and all further documents, if any, necessary or reasonably requested by Rhodes in order to evidence the termination of this Assignment.

[*The remainder of this page is left blank. The signature pages follow.*]

IN WITNESS WHEREOF, Rhodes has executed this Assignment as of the date first above written.

Rhodes:

**RHODES DESIGN AND DEVELOPMENT CORPORATION**, a Nevada corporation

By: _____

~~James Rhodes, its President~~

Paul Huygens ,Treasurer

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before me on this _16_ day of _December_, 2005 by ~~James Rhodes, as president~~ of Rhodes Design and Development Corporation, a Nevada corporation.

Paul Huygens, TREASURER

Notary _____

SARALYN ROSENLU...
Notary Public - Nevada
No. 02-76733-1
My Appt. Exp. July 11, 2006

7

IN WITNESS WHEREOF, Rhodes has executed this Assignment as of the date first above written.

Rhodes:

**RHODES  DESIGN  AND  DEVELOPMENT CORPORATION**, a Nevada corporation

By: _____

~~James Rhodes, its President~~

Paul Huygens, Treasurer

STATE OF NEVADA

COUNTY OF CLARK

This instrument was acknowledged before me on this _16_ day of _December_, 2005 by ~~James Rhodes, as president~~ of Rhodes Design and Development Corporation, a Nevada corporation.

Paul Huygens, TREASURER

Notary _____

SARALYN ROSENLUND
Notary Public - Nevada
No. 02-76733-1
My Appt. Exp. July 11, 2006

7

## EXHIBIT A

Legal Description of the Initial Phases

The real property as described in Exhibit "A"

as attached        to the Master Declaration of Covenants, Conditions and
Restrictions and Reservation of Easements for Tuscany Residential Community]
as defined in this document

1

# EXHIBIT C

# EXHIBIT C



RICE SILBEY
REUTHER & SULLIVAN

November 21, 2012

**Via Email: richard.dix@wincarco.com and Federal Express**
Las Vegas Land Holdings, LLC
6345 South Jones Boulevard, Suite 400
Las Vegas, NV  89118
Attn:  Richard Dix

**Re:    Tuscany Master Planned Community located in Henderson, Nevada**

Dear Mr. Dix:

As counsel for Commerce Associates, LLC ("Commerce"), your November 19, 2012 letter has been forwarded to me for response.

The conclusions stated in your letter appear at best to be based on erroneous or incomplete facts:

- There is not and there has never been any agreement or commitment to sell the subject property to Las Vegas Land Holdings or its affiliates ("Dunhill").  To the contrary, as you know, Commerce has entered into an agreement to sell the subject property to Greystone Nevada, LLC or its affiliates ("Lennar").

- Commerce has retained the right to exercise and assign declarant rights under the existing Master Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Tuscany Residential Community now of record with respect to the Tuscany master planned community pursuant to a Conditional Assignment and Grant of Rights ("Conditional Assignment") that is now also of record with respect to the Tuscany master planned community.  As a result, your statements concerning Dunhill's ability to control, limit and/or obstruct the ability of Commerce or Lennar to develop the subject property are incorrect.

- Finally, the issues referenced in your letter as those related to the "Outstanding Common Elements" are unrelated to the pending sale of property to Lennar.  Commerce has been working in good faith to resolve those issues with Dunhill and the Tuscany Master Association, and Commerce will continue to do so.

All actions taken by you or Dunhill which interferes with valid and existing contracts or business relationships between Commerce and Lennar give rise to various causes of action, including, but not limited to, intentional interference with contractual relations and intentional interference with prospective business advantage.  Commerce reserves any all rights afforded to it under the laws

3960 HOWARD HUGHES PKWY., SUITE 700
LAS VEGAS, NEVADA 89169
702.732.9099 PH | 702.732.7110 FX

*WILLIAM J. SILBEY HAS RETIRED FROM THE PRACTICE OF LAW IN THE STATE OF NEVADA.

Las Vegas Land Holdings, LLC
November 21, 2012
Page 2

of the state of Nevada, inclusive of the ability to assert such claims.  Rest assured that Commerce is prepared to vigorously exercise those rights.  Please conduct yourself accordingly.

Very truly yours,

RICE SILBEY REUTHER & SULLIVAN, LLP

*Stephen Rice* /yg
Stephen M. Rice, Esq.

Enclosure

cc:    Commerce Associates, LLC, via email
       Renee R. Reuther, via email





20051219-0004171

Fee: $22.00
N/C Fee: $0.00

APN: 160-32-313-001 thru 012, 019 thru 086
   690 thru 126, 136 thru 144, 159 thru 161, 186 thru 192
RECORDING REQUESTED BY:    202, 160-32-2/3 001
Chicago Title Agency of Nevada, Inc.    Thru 028
2300 W. Sahara Avenue, #140
Las Vegas, NV 89102
Attention: Clarice Ronzone

12/19/2005         13:30:27
T20050229273
Requestor:
   CHICAGO TITLE

Frances Deane          DGI
Clark County Recorder    Pgs: 9

(Escrow No.05050487)

AND WHEN RECORDED MAIL TO:

3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89109
Attention: Michael E. Buckley, Esq.

---

## CONDITIONAL ASSIGNMENT AND GRANT OF RIGHTS

THIS CONDITIONAL ASSIGNMENT AND GRANT OF RIGHTS ("Assignment") is made as of the 19 day of December, 2005 by RHODES DESIGN AND DEVELOPMENT CORPORATION, a Nevada corporation ("Rhodes") to COMMERCE ASSOCIATES, LLC, a Nevada limited liability company ("Commerce"), with reference to the following facts and purposes:

A.    Commerce, as seller, and Rhodes, as purchaser, are parties to a Purchase Agreement and Grant of Options, dated as of November 14, 2003 (as now or hereafter in effect, the "Purchase Agreement"), pursuant to which Commerce has conveyed the real property described on Exhibit A attached hereto and incorporated herein by this reference (the "Initial Phases") to Rhodes and certain affiliates of Rhodes. All capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Purchase Agreement.

B.    Commerce has also agreed to grant certain Options to purchase the Option Parcels.

C.    The Initial Phases and the Option Parcels are located within the master planned community known as Tuscany.

D.    Pursuant to the Purchase Agreement, Rhodes has subjected the Initial Phases to the provisions of that certain Master Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Tuscany Residential Community, recorded July 28, 2005, in Book 20050728, as Instrument No. 04296, Official records, Clark County, Nevada (the "Master Declaration").

E.    In accordance with the Purchase Agreement, Rhodes is designated as the "Declarant" under the Master Declaration.

1

F. Commerce requires, in accordance with the Purchase Agreement, that, contemporaneously with the recording of the Master Declaration, Rhodes execute and deliver this Conditional Assignment and Grant of Rights, pursuant to which Commerce is given the right to become the Declarant under the Master Declaration upon the occurrence of a Purchaser Default under the Purchase Agreement or in the event all of the Option Parcels are not acquired under the Purchase Agreement.

NOW THEREFORE, FOR VALUE RECEIVED, Rhodes, subject to Commerce's rights to accept, reject, or limit the transfer of same, hereby grants, transfers, assigns, and sets over to Commerce, and grants Commerce a security interest in, all of Rhodes's right and interest in and to Rhodes's rights as Declarant in and under the Master Declaration, including but not limited to, special declarant's rights (NRS 116.110385), developmental rights (NRS 116.11034), the right to maintain models, offices for sales and signs (NRS 116.2115), and the ability to exercise any of the rights reserved to a declarant under the Master Declaration (collectively, the "Declarant's Rights"). Without limiting the generality of the foregoing, this Assignment is given for the purposes of securing:

(a) The performance, whether by Rhodes or any other person acquiring title to all or any part of the Option Property pursuant to the Purchase Agreement, of the Purchaser's obligations under (i) the Purchase Agreement, and any amendment or modification thereof and (ii) of every term, provision, condition, duty, obligation, covenant and agreement of the Purchaser contained in any Development Declaration and any amendment, modification, extension, renewal or replacement thereof (collectively, the "Purchase Documents").

(b) The performance and discharge by Rhodes of every term, provision, condition, duty, obligation, covenant and agreement of Rhodes contained herein and any amendment, modification, extension, renewal or replacement hereof.

This Assignment is intended as a present assignment of the Declarant's Rights and shall be effective immediately, provided, however, that, until the occurrence of a Termination Event (as hereinafter defined), permission is given to Rhodes to exercise the Declarant's Rights solely in accordance with the provisions of this Assignment.

As used herein, the term "Termination Event" means the occurrence of any of the following: (a) the occurrence of a Purchaser Default under the Purchase Agreement, (b) any of the Options is not exercised in accordance with the Purchase Agreement, (c) an Option Closing Date fails to occur by reason of the failure of an Option to be exercised or Commerce's permitted termination of an Option.

Following a Termination Event, Rhodes's exercise of any Declarant's Rights shall be of no force or effect.

**RHODES FURTHER COVENANTS AND AGREES AS FOLLOWS:**

2

1.     Rhodes shall from time to time execute any and all instruments reasonably requested by Commerce in order to evidence or enforce this Assignment.

2.     Rhodes will fully comply at all times with each of the following covenants:

(a)     Rhodes will promptly pay when due all fees, charges and other sums or amounts required to be paid by the Declarant and will further keep and perform all of the covenants, terms and provisions of the Master Declaration that impose any obligation on the Declarant, and will do all other things necessary to preserve and keep unimpaired the Declarant's Rights.

(b)     Rhodes will promptly (not later than five (5) business days following receipt thereof) notify Commerce in writing of any default on the part of Rhodes as the Declarant, and of the occurrence of any event which, with or without any notice or lapse of time or both, would constitute a default on the part of Rhodes as the Declarant.

(c)     Rhodes will promptly send to Commerce a true copy of any notice served on Rhodes as Declarant.

(d)     Rhodes will not surrender, terminate or cancel any Declarant's Rights, in whole or in part, without first obtaining the prior written consent of Commerce. Rhodes will not make or consent to any modification, change, supplement, amendment or alteration of any terms of the Master Declaration in whole or in part, without first obtaining the prior written consent of Commerce, provided that Commerce shall not unreasonably withhold its consent to any such modification, change, supplement, amendment or alteration which does not in any way adversely affect the Declarant's Rights or the value of any real property owned by Commerce within Tuscany or Commerce's ability to develop its real property within Tuscany.

3.     If at any time Rhodes fails to comply fully with any of the Declarant's obligations under the Master Declaration and that failure in any manner threatens to impair Commerce's rights or security under this Assignment, then Commerce may, but is not obligated to, perform any of those obligations on behalf of Rhodes or cure any of Rhodes's defaults. Commerce may take such action without notice to or demand upon Rhodes and without releasing Rhodes from any obligations under this Assignment or any of the Purchase Documents.

4.     Commerce will have the right to appear in and participate in all proceedings, which could affect Commerce's rights or security hereunder or the value of any Declarant's Rights. Rhodes agrees to pay upon demand all reasonable costs and expenses of Commerce (including but not limited to reasonable legal fees and disbursements) incurred in any such proceedings. Any and all such costs and expenses (and any other costs and expenses which Rhodes is obligated to pay hereunder) shall be additional secured obligations hereunder, and shall bear interest at the Agreed Rate from the time of advancement by Commerce until paid, and if not paid within 30 days, at the Default Rate thereafter.

5.     Rhodes hereby agrees to indemnify, protect, defend and hold Commerce harmless of and from any and all liability, loss, damage, or expense which it may or might incur under or by

3

reason of this Assignment or for any action taken by Commerce hereunder or by reason or in defense of any and all claims and demands whatsoever which may be asserted against Commerce arising out of the Master Declaration (excepting only those obligations of Commerce as an Owner or Member [as those terms are defined in the Master Declaration] should any real property owned by Commerce become subject to the Master Declaration).  Should Commerce incur any such liability, loss, damage, or expenses, or any expenses in the defense of any claims or demands, the amount thereof (including reasonable attorneys' fees whether or not suit is commenced), shall be payable by Rhodes immediately and without demand, and the payment thereof shall be obligations secured hereby, provided, however, that unless Rhodes at any time shall fail to adequately defend such indemnified person as required hereby, Rhodes shall defend Commerce using legal counsel reasonably satisfactory to such indemnified person, at the sole reasonable cost and expense of Rhodes.

6.      The exercise by Commerce of any of the rights, remedies, powers or privileges provided for herein or the taking of any action by Commerce, whether completed or incomplete with respect thereto, is permissive and not obligatory, and the exercise or non-exercise of the same shall not preclude, delay or prejudice any other rights, remedies, powers or privileges provided for herein or under any of the Purchase Documents, or otherwise provided at law or in equity, and the failure to take action at any time shall not constitute a waiver of such right, remedy, power or privilege.

7.      So long as no Termination Event has occurred, Rhodes may continue to receive and exercise all of the rights, benefits and privileges of the Declarant under the Master Declaration, provided the same are received and exercised in accordance with this Assignment.

8.      Neither this Assignment nor any action or actions on the part of Commerce other than an express agreement in writing executed by Commerce specifically assuming such obligation shall constitute an assumption of all or any of the Declarant's Rights or the obligations of the Declarant under the Master Declaration, and Rhodes shall continue to be liable for all obligations thereunder.

9.      Upon the occurrence of any Termination Event, Commerce shall have the right, but not the obligation, to take in its name or in the name of Rhodes or otherwise, such actions which Commerce may at any time or from time to time after the occurrence of a Termination Event determine is necessary to protect the rights of Rhodes or Commerce hereunder.  Commerce shall incur no liability if any action taken by it or in its behalf in good faith, pursuant to the foregoing sentence, shall prove to be in whole or in part inadequate or invalid, and Rhodes agrees to indemnify and hold Commerce harmless from and against any and all loss, cost, liability, or expense (including, but not limited to, reasonable attorneys' fees and expenses) in connection with any such action or actions.  Provided, however, without limiting the foregoing, unless Rhodes at any time shall fail to adequately defend such indemnified person as required hereby, Rhodes shall defend Commerce using legal counsel reasonably satisfactory to such indemnified person, at the sole reasonable cost and expense of Rhodes.

10.     Rhodes hereby irrevocably constitutes and appoints Commerce its true and lawful attorney-in-fact, in the name of Rhodes or any successor or assign or in Commerce's name or otherwise, to enforce all rights of Rhodes as the Declarant under the Master Declaration, such power of attorney being coupled with an interest, being irrevocable.

4

11.     There shall be no merger of the interests of the parties to the Master Declaration, or any interest created thereby; without limiting the foregoing, there shall be no merger by reason of any interests thereunder coming into common ownership, unless Commerce consents to such merger of interests in writing.

12.     Any notice, request, demand, statement, authorization, approval or consent made hereunder shall be in writing and shall be sent by United Parcel Service, or other reputable nationally recognized overnight courier service, or by postage pre-paid registered or certified mail, return receipt requested, and shall be deemed given when received or refused (as indicated on the receipt, unless receipt or refusal is not during normal business hours on a business day, in which case, notice shall be deemed given on the next following business day) and addressed as follows:

If to Commerce:     COMMERCE ASSOCIATES, LLC
                    c/o TG Investments, LLC
                    4511 W. Cheyenne Ave.
                    Suite 801
                    N. Las Vegas, NV  89032
                    Telephone:  (702) 413-9111
                    Telecopy:  (702) 413-9107

        and:        Jones Vargas
                    3773 Howard Hughes Parkway
                    Third Floor South
                    Las Vegas, Nevada 89109
                    Attention:  Michael E. Buckley, Esq.
                    Telephone: (702) 862-3300
                    Telecopy:  (702) 734-2722

If to Rhodes:   Rhodes Homes
                4730 S. Fort Apache Road
                Suite 300
                Las Vegas, Nevada 89147
                Attention: James M. Rhodes, President
                Telephone: (702) 873-5338
                Telecopy: (702) 873-5129

        and:    Rhodes Homes
                4730 S. Fort Apache Road
                Suite 300
                Las Vegas, Nevada 89147
                Attention: General Counsel
                Telephone: (702) 873-5338
                Telecopy: (702) 873-5129

5

Each party may designate a change of address by notice given, as herein provided, to the other party, at least fifteen (15) days prior to the date such change of address is to become effective.

13.      Subject to the restrictions set forth in the Purchase Documents, this Assignment is binding on and shall inure to the benefit of the parties hereto, their successors, nominees and assigns.

14.      This Assignment may be executed in two or more counterparts, all of which shall be deemed a duplicate original.

15.      If any one or more of the provisions of this Assignment, or the applicability of any such provision to a specific situation, shall be held invalid or unenforceable, such provision shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of this Assignment and all other applications of any such provisions shall not be affected thereby.

16.      This Assignment shall be governed by and construed in accordance with the laws of the State of Nevada without giving effect to any contrary conflict-of-law rules and principles of such State.

17.      The rights and remedies of Commerce under this Assignment are cumulative and are not in lieu of, but are in addition to, any other rights or remedies which Commerce may have under the Purchase Documents, at law, or otherwise.

18.      This Assignment may not be amended, modified or changed, nor shall any waiver of any provision hereof be effective, except by an instrument in writing and signed by the party against whom enforcement of the waiver, amendment, change, modification or discharge is sought.

19.      Upon the satisfaction of all obligations of Rhodes to Commerce under the Purchase Agreement and the acquisition of all of the Property pursuant to the Purchase Agreement, this Assignment shall automatically terminate. Commerce hereby agrees, upon termination of this Assignment, to execute a release and reconveyance of this Assignment and all further documents, if any, necessary or reasonably requested by Rhodes in order to evidence the termination of this Assignment.

*[The remainder of this page is left blank. The signature pages follow.]*

6

IN WITNESS WHEREOF, Rhodes has executed this Assignment as of the date first above written.

Rhodes:

**RHODES  DESIGN  AND  DEVELOPMENT CORPORATION**, a Nevada corporation

By: _____

~~James Rhodes, its President~~

Paul Huygens ,Treasurer

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before me on this _16_ day of _December_, 2005 by ~~James Rhodes,~~ as ~~president~~ of Rhodes Design and Development Corporation, a Nevada corporation.

Paul Huygens, TREASURER
SR

Notary _____

SARALYN ROSENLU..
Notary Public - Nevada
No. 02-76733-1
My Appt. Exp. July 11, 2006

7

IN WITNESS WHEREOF, Rhodes has executed this Assignment as of the date first above written.

Rhodes:

**RHODES DESIGN AND DEVELOPMENT CORPORATION**, a Nevada corporation

By: _____

~~James Rhodes, its President~~

Paul Huygens ,Treasurer

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before me on this _16_ day of _December_, 2005 by ~~James Rhodes, as president~~ of Rhodes Design and Development Corporation, a Nevada corporation.

PAUL HUYGENS, TREASURER
BR

Notary _____

SARALYN ROSENLUND
Notary Public - Nevada
No. 02-76733-1
My Appt. Exp. July 11, 2006

7

## EXHIBIT A

Legal Description of the Initial Phases

The real property as described in Exhibit "A"

as attached        to the Master Declaration of Covenants, Conditions and
Restrictions and Reservation of Easements for Tuscany Residential Community]

as defined in this document

1

# EXHIBIT D

# EXHIBIT D

COTTON·DRIGGS·WALCH
HOLLEY·WOLOSON·THOMPSON

DENNIS R. HANEY           JEFFREY R. ALBREGTS        STACY D. HARROP           WILLIAM N. MILLER
JOHN H. COTTON            DEAN S. BENNETT            KIMBERLY J. COOPER        BRIANNA SMITH
KENNETH A. WOLOSON        DONNA M. ATAMOH            SHEMILLY A. BRISCOE       SARAH T. BASSETT
GREGORY J. WALCH          BRIAN W. BOSCHEE           DONNA M. WITTIG
J. DOUGLAS DRIGGS, JR.    BRYCE K. EARL              ADAM A. SCHNEIDER         Of COUNSEL:
RICHARD F. HOLLEY         JAMES D. BOYLE             CHRISTOPHER G. RIGLER     JAMES W. PUZEY
RONALD J. THOMPSON        F. THOMAS EDWARDS          JOHN J. SAVAGE            MICHAEL D. NAVRATIL
VICTORIA L. NELSON        CODY T. WINTERTON                                    KATHERINE L. TURPEN
                                                                              CHARLES L. TITUS (1948-2009)

WRITER'S EMAIL: DBENNETT@NEVADAFIRM.COM

November 29, 2012

*Via email (Richard.dix@wincarco.com) and fax (469)621-0099 and US Mail*

Mr. Richard Dix
Las Vegas Land Holdings, LLC
6345 South Jones Blvd., Suite 400
Las Vegas, Nevada 89118

        RE:    Your letter dated November 21, 2012

Dear Mr. Dix:

        This firm represents Greystone Nevada, LLC ("Greystone"), which is an affiliate of
Lennar Corporation ("Lennar"). We are in receipt of your letter to Jeremy Parness dated
November 21, 2012 (the "11/21 Letter"). We have also seen a copy of your letter addressed to
Commerce Associates, LLC ("Commerce") dated as of November 19, 2012 (the "11/19 Letter").
We have also seen a copy of the response letter from Rice, Silbey, Reuther & Sullivan dated
November 21, 2012, on Commerce's behalf, and in response to the 11/19 Letter (the "11/19
Response Letter").

        As you allude to in both the 11/19 Letter and the 11/21 Letter, Greystone is a party to a
certain agreement with Commerce, with respect to the purchase and sale of certain real property
(the "Subject Property") located in the Tuscany Village, in Henderson Nevada ("Tuscany").

        As an initial and most important point, please be assured that Greystone's sole and
primary intention with regard to the proposed purchase of the Subject Property is to be a
responsible and high-quality homebuilder and to thus add significant value to Tuscany.
Moreover, Lennar wishes to develop and enjoy a good and long working relationship with you
and with Las Vegas Land Holdings ("Dunhill").

        We understand from, among other things, your communications with Jeremy Parness and
the 11/19 Letter, that Dunhill has or at one time had a desire to purchase the Subject Property.
However, we understand that Dunhill does not now have and never had an agreement with
Commerce for the purchase of the Property, and has no legal interest or right in the Property.

07198-39/988220.doc

400 SOUTH FOURTH STREET, THIRD FLOOR · LAS VEGAS, NEVADA 89101
T. 702.791.0308 F. 702.791.1912 WWW.COTTONDRIGGS.COM · LAS VEGAS / RENO

Mr. Richard Dix
Las Vegas Land Holdings, LLC
November 29, 2012
Page 2


You assert in both of your letters that Rhodes Design and Development Corporation ("Rhodes") is the sole "Declarant" under the Master Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Tuscany Residential Community, recorded on July 28, 2005, as Instrument/Page No. 20050728-0004296 ("Master Declaration"). Furthermore, you assert that Rhodes, which is controlled by Dunhill, is exclusively entitled to exercise various rights as "Declarant" under the Master Declaration.

We are in receipt of an instrument entitled "Conditional Assignment and Grant of Rights" recorded on December 19, 2005, as Instrument 20051219 and Document 0004171, in the Official Records, Clark County, Nevada (the "Assignment"). As you do not reference it in either letter, I bring this instrument to your attention.

The Assignment provides, in pertinent part, as follows: "Rhodes ... transfers, assigns, and sets over to Commerce, and grants Commerce a security interest in, all of Rhodes' rights and interest in and to Rhodes rights as Declarant in and under the Master Declaration, including but not limited to, special declarant's rights (NRS 116.110385), developmental rights (NRS 116.11034), the right to maintain models, offices for sales and signs (NRS 116.2115), and the ability to exercise any of the rights reserved to a declarant under the Master Association...."

By its terms, the Assignment is a present assignment in favor of Commerce. However, Commerce granted Rhodes the right to exercise those rights, revocable upon the occurrence of a "Termination Event." As defined, this includes the failure by Rhodes to exercise certain Option rights. Those rights, we are informed, have terminated and Rhodes did not timely exercise them.

Based on my reading of the Assignment, it would appear that Commerce has the present right and ability to take exclusive control of the declarant rights and development rights, or any of them, and to further assign them, or any of them, to Greystone.

You also appear to assert in both letters that Rhodes has the right to insist on the recordation of additional covenants, conditions and restrictions in connection with any future annexation. While it is true that the Declarant under the Master Declaration has the right to annex property pursuant to Section 9.1 of the Master Declaration, that section appears to be fairly detailed and specific as to what should be properly included in a declaration of annexation. I do not read this section as providing carte blanche for a Declarant to insist on recordation of additional terms not specified in this Section. Moreover, Section 10.13 mandates "equal treatment" of various owners. Requiring specialized and additional restrictions of record against one owner and one portion of the property would seem to violate this mandate.

While not specifically noted in either letter, I further understand that you have stated to Mr. Parness that Rhodes and/or Dunhill have or may claim the ability to exclude Greystone and others from enjoying rights of access, were Greystone to purchase the Subject Property. Please note that Greystone would be beneficiary of rights of various access and easement rights arising

07198-39/988220.doc

Mr. Richard Dix
Las Vegas Land Holdings, LLC
November 29, 2012
Page 3

under the Master Declaration, and rights received from Commerce in its status as "Master Developer."

In the 11/21 Letter you have emphasized your intention to cooperate with Greystone. However what is most required, and what Greystone has not received, is key information pertaining to the operation of the Tuscany Master Association (the "Association"). Lennar has been requesting this information for a number of weeks. Please be advised that your immediate attention to these matters is essential as critical dates in the Greystone/Commerce agreement are imminent. Obviously, it is essential that Greystone know the details as to what is going on with the Association.

I wish to emphasize that Greystone desires, first and foremost, to work cooperatively with you towards ends that will benefit both parties. Greystone wishes to secure your cooperation in immediately providing the requested information and in agreeing to consent to annexation by Greystone (without condition), and in agreeing that Greystone has or will have necessary rights to engage in its development activities and that Dunhill/Rhodes will not attempt to interfere. Greystone desires, in other words, that Dunhill/Rhodes be a "partner" in this process, and not (as the facts may reasonably be interpreted) attempt to raise roadblocks.

With these issues firmly in mind we wish to engage in a meaningful dialogue and exchange of information as soon as possible so as to resolve these issues.

While I wish to emphasize again Lennar's desire to be cooperative and to develop a good working relationship, it is necessary also to mention that continued attempts by Dunhill or Rhodes to assert rights it does not have or that go beyond the scope of the Master Declaration, or continued delays in providing requested information and documentation regarding the Association, are potentially actionable as they are of a nature to interfere with the Greystone/Commerce contract. Please understand therefore that while Lennar seeks a peaceful and satisfactory resolution with your cooperation, Lennar reserves all rights and remedies.

Very truly yours,

COTTON, DRIGGS, WALCH,
HOLLEY, WOLOSON & THOMPSON

Dean S. Bennett

DSB:dsb

cc:   Steven Rice, Esq.
      Renee Reuther, Esq.
      Jeremy Parness

07198-39/988220.doc