| | |
|---|---|
| Janet L. Chubb, Esq. (NV Bar No. 176)<br>Email: jchubb@armstrongteasdale.com<br>Gordon R. Goolsby, Esq. (NV Bar No. 11578)<br>Email: ggoolsby@armstrongteasdale.com<br>ARMSTRONG TEASDALE LLP<br>50 W. Liberty Street Suite 950<br>Reno, Nevada 89501<br>Telephone: 775/322-7400<br>Facsimile: 775/322-9049 | <u>E-Filed On</u>: December 27, 2012 |

*Attorneys for Commerce Associates, LLC*

Richard F. Holley, Esq. (NV Bar No. 3077)
Email: rholley@nevadafirm.com
Dean S. Bennett, Esq. (NV Bar No. 6221)
Email: dbennett@nevadafirm.com
COTTON, DRIGGS, WALCH,
HOLLEY, WOLOSON & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: 702/791-0308
Facsimile: 702/791-1912

*Attorneys for Greystone Nevada, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, a.k.a. "Rhodes Homes," et al.,<br><br>Reorganized Debtors.<br><br>Affects:<br>☒ All Debtors<br>☐ Affects the following Debtor(s) | Case No. BK-S-09-14814-LBR<br><br>Chapter 11<br><br>**COMMERCE ASSOCIATES, LLC'S AND GREYSTONE NEVAD, LLC'S JOINT RESPONSE TO THE MOTION OF THE REORGANIZED DEBTORS FOR ENTRY OF ORDER ENFORCING THE TERMS OF THE THIRD AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE RHODES COMPANIES, LLC, ET AL. AND THE RELATED CONFIRMATION ORDER**<br><br>Date of Hearing:  January 10, 2013<br>Time of Hearing: 10:00 a.m.<br>Place:  Courtroom No. 1<br>  Third Floor<br>  Foley Federal Building<br>  300 Las Vegas Blvd., S.<br>  Las Vegas, NV 89101<br>Judge:  Hon. Linda B. Riegle |

Commerce Associates, LLC ("Commerce"), by and through its counsel, the law firm of Armstrong Teasdale LLP, and Greystone Nevada, LLC ("Greystone"), by and through its counsel, the law firm of Cotton, Driggs, Walch, Holley, Woloson & Thompson, (Commerce and Greystone shall be collectively referred to as "Respondents"), hereby file this Joint Response to Motion of the Reorganized Debtors for Entry of an Order Enforcing the Terms of the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, *et al.* and the Related Confirmation Order (the "Response").The Response is based on the following grounds and the following reasons: (1) the Purchase Agreement and Grant of Options (the "Commerce/Rhodes Agreement") and the Conditional Assignment and Grant of Rights ("Conditional Assignment"), each entered into between Rhodes Design and Development Corporation ("Rhodes") and Commerce, could not be rejected pursuant to 11 U.S.C. § 365 because it was not an executory contract; (2) even if the Commerce/Rhodes Agreement and Conditional Assignment constituted an executory contract, which it clearly does not, Reorganized Debtors are not permitted to do what they are now attempting to do, which is effectively "cherry pick" those portions it wishes to remain in effect, and reject the rest; (3) even if the Commerce/Rhodes Agreement and Conditional Assignment constituted an executory contract, which it clearly does not, it was not rejected as a matter of law in the Rhodes Bankruptcy because it was not specifically identified in the Third Amended Plan of Reorganization pursuant to Federal Rules of Bankruptcy Procedure 6004(a), 9013, and 9014; and (4) in any event, even if their arguments had any merit, which they do not, the Reorganized Debtors do not have standing to file the Motion for Entry of An Order Enforcing the Terms of the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, *et al.* and the Related Confirmation Order (the "Motion to Enforce") if the Commerce/Rhodes Agreement and the Conditional Assignment were rejected in the Third Amended Plan of Reorganization because they would no longer be property of the bankruptcy estate pursuant to 11 U.S.C. § 365.

…

The Response is based upon the Declaration of Tom Gonzales (the "Gonzales Declaration") filed separately and concurrently with the Court pursuant to Rule 9014(c)(2) of the Local Rules of Bankruptcy Practice, the following memorandum of points and authorities, all the papers and pleadings on file herein, together with such other and further evidence and argument as may be presented and considered by this Court at the hearing of the Motion to Enforce.

Dated this 27th day of December, 2012.

**ARMSTRONG TEASDALE, LLP**

/s/ Gordon R. Goolsby
Janet L. Chubb, Esq. (NV Bar No. 176)
Gordon R. Goolsby, Esq. (NV Bar No. 11578)
50 W. Liberty Street Suite 950
Reno, Nevada 89501
Telephone:  775/322-7400
Facsimile:   775/322-9049

*Attorneys for Commerce Associates, LLC*

**COTTON, DRIGGS, WALCH,
HOLLEY, WOLOSON & THOMPSON**

/s/ Dean S. Bennett
Richard F. Holley, Esq. (NV Bar No. 3077)
Dean S. Bennett, Esq. (NV Bar No. 6221)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: 702/791-0308
Facsimile:  702/791-1912

*Attorneys for Greystone Nevada, LLC*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

At best, the Motion to Enforce is an improper attempt to rewrite the history of this case and of the approved plan. That is, Reorganized Debtors are now attempting to characterize the Commerce/Rhodes Agreement and the Conditional Assignment as somehow constituting an executory contract within the meaning of 11 U.S.C. § 365, which was properly rejected in the Chapter 11 Bankruptcy. To be clear, the Reorganized Debtors of the Rhodes Companies, LLC is

Dunhill Homes ("Dunhill"). The simpler, and historically and legally accurate, explanation is that the Commerce/Rhodes Agreement and Conditional Assignment were never executory contracts in the first place, and thus could not be rejected in any bankruptcy proceeding. Indeed, this notion was so plain and obvious that Rhodes never attempted to identify the Commerce/Rhodes Agreement or Conditional Assignment as executory contracts in either its Schedule G [Dkt. No. 131] or its Third Amended Plan of Reorganization.

In a nutshell, Dunhill, in its capacity as Reorganized Debtors, is asking this Court to state that it has the exclusive right to hold and exercise developmental rights as to neighboring real property that Rhodes does not own, and that Greystone has now purchased from Commerce (the "Former Option Property").

Rhodes has never owned the Former Option Property. As such, Dunhill does not own the Former Option Property. Commerce gave Rhodes an option to purchase the Former Option Property in the Commerce/Rhodes Agreement, but Rhodes failed to timely exercise these rights. These options rights were rolling, that is to say, before Rhodes could exercise its option to purchase the property pursuant to the "second option grant," it must have *first* exercised the "first option grant." Rhodes failed to exercise the first option grant, and, correspondingly, was unable to exercise any of the subsequent options. Thus, not only had the time for Rhodes to exercise the options already passed by the time Rhodes filed its bankruptcy petition, its ability to exercise those options had terminated pursuant to the Commerce/Rhodes Agreement. There were no further mutual obligations owing under the Commerce/Rhodes Agreement or the Conditional Assignment at the time Rhodes filed for bankruptcy. That is why Rhodes at the time never identified either as executory contracts.

Expressly anticipating the eventuality that Rhodes would not exercise its option rights, Commerce and Rhodes executed the Conditional Assignment whereby Commerce could retake the developmental rights and develop the Former Option Property. This is exactly what has occurred.

Reorganized Debtors are arguing, contrary to fact and law, and contrary to actions and filings made by Rhodes in conjunction with the filing of the petition or the Third Amended Plan

of Reorganization, that the Conditional Assignment instrument, together with the fully performed Commerce/Rhodes Agreement, which gave Rhodes the option rights in the first place, constitute an executory contract that Rhodes properly rejected in the bankruptcy. The Reorganized Debtors' position must be rejected for a number of reasons, not the least of which being that the instruments in question did not constitute executory contracts within the meaning of 11 USC § 365, and they were never rejected.

## II.     STATEMENT OF FACTS

**THE COMMERCE/RHODES AGREEMENT**

1.     On November 14, 2003, Commerce and Rhodes entered into the Commerce/Rhodes Agreement, pursuant to which Commerce conveyed to Rhodes certain real property in the Tuscany Development, prepetition (the "Initial Phases"), and pursuant to which Commerce granted an option to purchase what is now identified as the Former Option Property. A true and correct copy of the Commerce/Rhodes Agreement is attached to the Gonzales Declaration as **Exhibit "A"**.

2.     Pursuant to the Commerce/Rhodes Agreement, Rhodes subjected the Initial Phases to the provisions of that certain Master Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Tuscany Residential Community, recorded July 28, 2005, in Book 20050728, as Instrument No. 04296, Official Records, Clark County, Nevada (the "Master Declaration"). The Master Declaration designated Rhodes as the "Declarant." A true and correct copy of the Master Declaration is attached to the Gonzales Declaration as **Exhibit "B"**.

3.     Section 1.1(b) of the Commerce/Rhodes Agreement defined the closing date as to the purchase of the Initial Phases as the date that is the later of either January 15, 2004 or three business days after the recordation of the Project Final Maps (the "Closing Date"). Again, this was done prepetition. See Gonzales Declaration.

4.     On September 14, 2004, Rhodes recorded a Grant Bargain and Sale Deed for the Initial Phases. As a result, the latest that the Closing Date could have occurred was September 14, 2004. A true and correct copy of the Grant Bargain and Sale Deed for the Initial Phases is

attached to the Gonzalez Declaration as **Exhibit "C"**.

5.  Pursuant to Section 1.2 of the Commerce/Rhodes Agreement, Commerce granted Rhodes a total of eight different options, on a rolling basis, to purchase certain additional parcels of real property in the Tuscany Project (the "Option Property").  The eight options expired at different times from the Closing Date of the Commerce/Rhodes Agreement.  Specifically, the first option expired one hundred and eighty (180) days from the Closing Date and each subsequent option expired one hundred and eighty days (180) days from the closing date of the previous option.  Because these were rolling options, Rhodes must have exercised the first option grant in order to exercise the next.  Not having exercised the first option grant, all eight options expired.  Had Rhodes exercised each option by their terms, the eighth option would have expired no later than September 2008, some four years after latest possible date for the Closing Date.  The option grants described under section 1.2 of the Commerce/Rhodes Agreement expired due to Rhodes inaction; collectively, the Option Property which Rhodes did not purchase is referred to herein as the Former Option Property.  See Gonzales Declaration.

**THE CONDITIONAL ASSIGNMENT**

6.  On December 19, 2005, and as contemplated under the Commerce/Rhodes Agreement, Rhodes and Commerce entered into the Conditional Assignment.  The Conditional Assignment expressly provided, inter alia, that "subject to Commerce's rights to accept, reject, or limit the transfer of same, [Rhodes] hereby grants, assigns, and sets over to Commerce, and grants a security interest in, all of [Rhodes'] right and interest in and to [Rhodes'] rights as Declarant in and under the Master Declaration."  A true and correct copy of the Conditional Assignment is attached to the Gonzales Declaration as **Exhibit "D"**.

7.  Pursuant to the Conditional Assignment, Commerce was given the right to become the Declarant under the Master Declaration, and Commerce could terminate Rhodes' temporary permission to act as such, in the event that (1) Rhodes defaulted under the Commerce/Rhodes Agreement, or notably, (2) Rhodes did not acquire the Option Parcels under the Commerce/Rhodes Agreement.  The intent, then, was to allow Commerce a remedy and the ability to develop its own property in the event Rhodes did not exercise its option rights to

purchase it.  See Gonzales Declaration.

**THE RHODES BANKRUPTCY**

8.     On March 31, 2009, Rhodes filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "Petition Date") in the United States Bankruptcy Court for the District of Nevada (Case No. BK-S-09-14814-LBR) (the "Rhodes Bankruptcy") [Dkt. No. 1].

9.     As of the Petition Date, Commerce had fulfilled its obligations under the Commerce/Rhodes Agreement by conveying title to the Initial Phases to Rhodes, and Rhodes had failed to timely exercise any of its option rights as to the Former Option Property. Accordingly, there were no further mutual obligations under either instrument.

10.    On April 30, 2009, Rhodes filed its Schedules of Assets and Liabilities [Dkt. No. 131].  Rhodes did not identify either the Commerce/Rhodes Agreement or the Conditional Assignment in its Schedule G, which requires a debtor to identify all executory contracts and unexpired leases.  A true and correct copy of Rhodes' Schedule G is attached to the Gonzales Declaration as **Exhibit "E"**.

11.    Moreover, Rhodes did not identify Commerce as a creditor or otherwise in its bankruptcy petition or schedules.  This is because the terms of any contracts between Rhodes and Commerce were complete by the time Rhodes filed its petition.

12.    On February 18, 2010, the Steering Committee of Senior Secured Lenders in the Rhodes Bankruptcy filed a Third Amended Plan of Reorganization (the "Third Amended Plan") [Dkt. No. 1013].

13.    Article V of the Third Amended Plan provides that Rhodes' *executory contracts or unexpired leases* that were not assumed or rejected prior to the Effective Date were deemed rejected pursuant to Bankruptcy Code sections 365 and 1123, except for those executory contracts or unexpired leases that are listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" attached to the disclosure statement for the Plan as Exhibit N.  Exhibit N attached to the disclosure statement listed several pages of contracts that were going to be assumed by Rhodes pursuant to the Plan.  Since Exhibit N does not list the Conditional Assignment, Rhodes contends that the Conditional Assignment was "deemed" rejected pursuant

to Article V of the Plan. [Dkt. No. 1013].

14. However, Article V of the Third Amended Plan clearly refers only to "executory contracts and unexpired leases." As noted above, Rhodes failed to identify either the Commerce/Rhodes Agreement or the Conditional Assignment as executory contracts.

15. Neither the Commerce/Rhodes Agreement, nor the Conditional Assignment, nor the Master Declaration, was specifically identified in the Plan, and none of these were ever identified as executory contracts, nor were they the subject of any motion to either assume or reject an executory contract pursuant to 11 U.S.C. § 365.

16. On March 12, 2010, the Court entered an Order Confirming the Plan [Dkt. No. 1053].

**THE GREYSTONE PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS**

17. Since Rhodes did not timely exercise its option to purchase the Former Option Property under the Commerce/Rhodes Agreement, a termination event has occurred pursuant to the terms of the Conditional Assignment and Commerce has the right to become the declarant under the Master Declaration for the Former Option Property. See Gonzales Declaration.

18. On November 1, 2012, Commerce and Greystone entered into a certain Purchase Agreement and Escrow Instructions (the "Agreement") for the purchase and sale of certain real property in Henderson, Nevada that includes the Former Option Property. A true and correct copy of the Agreement (redacted as to certain economic terms) is attached to the Gonzales Declaration as **Exhibit "F"**.

19. On November 30, 2012, Reorganized Debtors filed their Motion to Enforce [Dkt. No. 1737]. The seeming purpose of the Motion to Enforce is to prevent Greystone from asserting declarant rights as to the Former Option Property and from being able to develop the Former Option Property that it purchased under the Agreement. See Gonzales Declaration.

20. Such an action would be consistent with threats made by the Reorganized Debtors while the Agreement was pending. Specifically, on November 19, 2012, the Reorganized Debtors sent a letter to Commerce where it indicated its desire to purchase the Former Option Property and that any sale of the Former Option Property will be subject to its approval as

1  Declarant under the Master Declaration. A true and correct copy of the November 19, 2012
2  letter is attached to the Gonzales Declaration as **Exhibit "G"**.

3      21.    On November 21, 2012, Commerce sent a letter to the Reorganized Debtors that
4  stated Commerce has retained the right to exercise and assign declarant rights under the Master
5  Declaration and that the Reorganized Debtors' assertion that it has the power to limit the
6  development of the Former Option Parcels was incorrect. A true and correct copy of the
7  November 21, 2012 letter is attached to the Gonzales Declaration as **Exhibit "H"**.

8      22.    On November 30, 2012, the Reorganized Debtors sent a letter in response to
9  Commerce's letter dated November 21, 2012, where it stated that the Conditional Assignment is
10 not valid because it was rejected in the Third Amended Plan. A true and correct copy of the
11 November 30, 2012 letter is attached to the Gonzales Declaration as **Exhibit "I"**.

12     23.    On December 3, 2012, Commerce and Greystone entered into a First Amendment
13 to Purchase Agreement and Escrow Instructions (the "<u>First Amendment</u>"). A true and correct
14 copy of the First Amended (redacted as to certain terms) is attached to the Gonzales Declaration
15 as **Exhibit "J"**. Section two of the First Amendment provides that Commerce agrees to assist
16 Greystone in opposing the Motion to Enforce. <u>See</u> Gonzales Declaration.

17     24.    Section three of the First Amendment further provides that Commerce agrees to
18 assign its interest in the Conditional Assignment to Greystone in order to allow Greystone to
19 develop the Former Option Property. <u>See</u> Gonzales Declaration.

20     25.    The closing of the purchase agreement contemplated under the Agreement,
21 including as to the Former Option Property, occurred on December 21, 2012.

22     26.    Commerce and Greystone now seek an order denying the Motion to Enforce on
23 the grounds that (1) under both the law and under Rhodes' own bankruptcy petition, the
24 Commerce/Rhodes Agreement and the Conditional Assignment were not executory contracts
25 that could be rejected pursuant to 11 U.S.C. § 365; (2) Reorganized Debtors are improperly
26 attempting to "cherry-pick" by accepting benefits under the Conditional Assignment and the
27 Master Declaration, while rejecting only portions it disfavors; obviously these must be accepted
28 or rejected in their entirety; (3) even if the Commerce/Rhodes Agreement and Conditional

1  Assignment were executory contracts, which they are not, they were never properly rejected in
2  the Rhodes Bankruptcy because they were not specifically identified in the Third Amended Plan;
3  and (4) even if the Commerce/Rhodes Agreement and Conditional Assignment were rejected in
4  the Third Amended Plan, which they were not, the Reorganized Debtors do not have standing to
5  file the Motion to Enforce because the Commerce/Rhodes Agreement and Conditional
6  Assignment are no longer property of the bankruptcy estate pursuant to 11 U.S.C. § 365.

### III.  LEGAL ARGUMENT

**A.  The Motion to Enforce Should Be Denied Because Neither the Commerce/Rhodes Agreement Nor the Conditional Assignment Are Executory Contracts.**

The crux of Reorganized Debtors' argument is that the Commerce/Rhodes Agreement and the Conditional Assignment are part of a single executory contract that was rejected in the Plan. However, Reorganized Debtors' argument fails because as of the Petition Date there were no unfulfilled mutual obligations under either the Commerce/Rhodes Agreement or the Conditional Assignment. Specifically, the purchase and sale of the Initial Phases had already occurred. Moreover, Rhodes' option rights to purchase the Option Parcels had already expired due to the passage of time and Rhodes' inaction. That certainly does not create an executory contract that can be rejected pursuant to 11 U.S.C. § 365. Moreover, the obvious fact that these are not executory contracts is the likely reason that Rhodes never identified the Commerce/Rhodes Agreement or the Conditional Assignment as executory contracts in its bankruptcy petition or in the Third Amended Plan, and why the Rhodes never scheduled the Commerce/Rhodes Agreement or the Conditional Assignment as executory contracts in Schedule G [Dkt. No. 131]. Moreover, even if the option rights to purchase the Option Parcels had not expired prior to the commencement of the Rhodes Bankruptcy, it is well-established in the Ninth Circuit that the right to exercise an option does not create an executory contract that can be rejected pursuant to 11 U.S.C. § 365. Accordingly, the Commerce/Rhodes Agreement and Conditional Assignment could not be rejected in the Rhodes Bankruptcy because they were not executory contracts within the meaning of 11 U.S.C. § 365.

Reorganized Debtors expend a great deal of energy attempting to tie the Conditional Assignment and the Commerce/Rhodes Agreement together, and to characterize both jointly as an executory contract, implicitly conceding that, standing alone, the Conditional Assignment is not an executory contract.[1] Indeed, there can be little question that the Conditional Assignment standing alone is not an executory contract. Nothing in the Conditional Assignment shows or suggests that Commerce had any unfulfilled obligations under that instrument. Indeed, all that Commerce had was remedial rights in the event of a default by Rhodes, such as a failure to purchase the Option Property. In that sense, the Conditional Assignment was similar to a promissory note, which is universally held not to be an executory contract, although a lender retains remedies in the event of non-performance. A promissory note in which one party has no postpetition obligation or no obligation other than the payment of money is not executory. See Horton v. Rehbein (In re Rehbein), 60 B.R. 436, 440-41 (B.A.P. 9th Cir. 1986) (Contract for deed is not an executory contract).

### 1. A Party's Obligation To Pay A Contract's Purchase Price Does Not Give Rise To An Executory Contract Pursuant to 11 U.S.C. § 365

Whether a contract is executory is a question of federal law and is determined as of the date of the bankruptcy filing. In re Alexander, 670 F.2d 885, 888 (9th Cir. 1982); In re Cochise College Park, Inc., 703 F.2d 1339, 1348 fn. 4 (9th Cir. 1983); see also In re Penn Traffic Co., 524 F.3d 373, 381 (2nd Cir. 2008). Congress did not define the term "executory contract" when it drafted the bankruptcy code. The Supreme Court, citing legislative history, has characterized an executory contract as one "on which performance is due to some extent on both sides." NLRB v. Bildisco & Bildisco, 465 U.S. 513, 522 (1984).

The Ninth Circuit Court of Appeals has adopted the so-called "Countryman" definition of executory contracts, which involves the following two-step analysis: (1) first, a court will determine whether *each party* to the alleged executory contract has any unperformed obligations

---

[1] Reorganized Debtors conveniently ignore the fact that under the exact same reasoning as that employed by Reorganized Debtors, the Master Declaration would also form part of the same "executory contract." Moreover Reorganized Debtors implicitly would "accept" the Master Declaration while arbitrarily rejecting the Conditional Assignment, or at least the portions thereof that it disfavors, being Commerce's remedies upon Rhodes failure to perform.

at the time the bankruptcy case is filed; and (2) second, a court will determine whether the failure of either party to complete performance would constitute a material breach excusing performance by the other party under the contract. See In re Alexander, 670 F.2d 885, 887 (9th Cir. 1982); See also In re Pacific Exp., Inc., 780 F.2d 1482 (9th Cir. 1986).  Applying this definition of executory contracts, it is well-established that if, as is the case with an option contract to purchase real property, the only unperformed contractual obligation is a debtor's obligation to pay money (e.g. a promissory note), the contract is not considered executory. See In re Pacific Exp., Inc., 780 F.2d 1482, 1487-88 (9th Cir. 1986).

It is clear that various types of agreements or instruments in which mutual performance is not required, such as option contracts for the purchase of real property, are not executory contracts.  In Pacific Exp., the Court of Appeals for the Ninth Circuit held that an installment sales contract does not involve an executory contract when the seller has already delivered the thing sold. Id. at 1487-88.  The court reasoned that physical delivery is the key aspect of the seller's performance in an installment sales contract, and that a future failure to perform by the seller would not have excused the buyer from its obligation to pay for the item sold. Id. at 1488. As a result, the Ninth Circuit found that an installment sales contract was not an executory contract even though payment was still due by the buyer. Id.

Similarly, the legislative history of the bankruptcy code states that promissory notes are not executory contracts: "[a] note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory." H.R. Rep. No., 95-595, p. 347 (1977); S. Rep. No. 95-989, p. 58 (1978); U.S.Code Cong. & Admin. News 1978, pp. 5787, 5844, 6303.

In the present case, Commerce had fully performed its obligation under the Commerce/Rhodes Agreement by delivering possession and title of the Initial Phases to Rhodes. Moreover, Rhodes had certain option rights, which had expired of their terms prepetition.  Even before the expiration of the option rights, the only remaining performance due under the Commerce/Rhodes Agreement was Rhodes' obligation to pay for the purchase price as to the Option Property. Finally, and tellingly, Rhodes never identified the Commerce/Rhodes

Agreement as an executory contract. Accordingly, the Commerce/Rhodes Agreement was not an executory contract because, even before the option rights had expired, Rhodes was the only party that had unfulfilled obligations, i.e., the right to purchase the Option Property by making the necessary payments. Moreover, as of the petition dates, the option rights had expired.

2.  An Unexercised Option Does Not Create An Executory Contract Pursuant to 11 U.S.C. § 365

Following the Countryman definition of executory contracts explained above, the Ninth Circuit in In re Robert L. Helms Construction, 139 F.3d 702, 705 (9th Cir. 1998) held that option contracts are not executory contracts within the meaning of 11 U.S.C. § 365 if one of the parties to the contract is only obligated to perform if the option has been exercised. The Ninth Circuit found that an option is only an executory contract if the optionee has announce that it is exercising the option, but has not yet followed through with the purchase at the option price, prior to the bankruptcy filing. Id. at 706. The Ninth Circuit further reasoned:

> A better approach […] is to ask whether the option requires further performance from each party at the time the petition is filed. Typically the answer is no, and the option is therefore not executory. The optionee need not exercise the option—if he does nothing, the option lapses without breach. The contingency which triggers potential obligations—exercising the option—is completely within the optionee's control.

Id. at 705-706.

As explained above, the eight different options to purchase portions of the Option Property expired in January 2008, over one year prior to the commencement of the Rhodes Bankruptcy. However, the Commerce/Rhodes Agreement and Conditional Assignment would not have constituted an executory contract even if the option to purchase the Option Parcels had not expired prior to the Rhodes Bankruptcy, because that would fall squarely within the Ninth Circuit's holding in Helms. In such a situation, the only unperformed obligation in the Commerce/Rhodes Agreement would have been Rhodes' option to purchase the Option Property. Since Rhodes did not exercise its option before the Petition Date, there were no unperformed obligations by both Rhodes and Commerce on the Petition Date. Accordingly, the Commerce/Rhodes Agreement and the Conditional Assignment could not be rejected in the Rhodes Bankruptcy because it was not an executory contract pursuant to 11 U.S.C. § 365. For

this reason, Rhodes never identified the Commerce/Rhodes Agreement or the Conditional Assignment as executory contracts on Schedule G of its petition.

**B.  In the Alternative, Even if the Commerce/Rhodes Agreement and Conditional Assignment Constituted an Executory Contract, Rhodes is Not permitted to "Cherry Pick" those Portions it Wishes to Remain in Effect, and Reject the Rest**

Rhodes is improperly attempting to "cherry-pick" by accepting benefits under the Conditional Assignment and the Master Declaration, while rejecting only portions it disfavors; obviously, even if these somehow formed an executory contract, which they do not, these must be accepted or rejected in their entirety.  See In re Ionosphere Clubs, Inc. & Easter Air Lines, Inc., 100 B.R. 670 (Bankr. S.D.N.Y. 1989) (An executory contract must be assumed or rejected in its entirety, not piecemeal; all the contract's provisions are assumed or all are rejected.).

Reorganized Debtors cannot carve out a portion of one contract to accept, while rejecting another portion of that contract. Recital F of the Conditional Assignment, which ties the Master Declaration and the Commerce/Rhodes Agreement together with the Conditional Assignment, highlights the close relationship among the Conditional Assignment, the Commerce/Rhodes Agreement, and the Master Declaration.  This close relationship highlights the "cherry picking" aspect of Rhodes' position:

> F.   Commerce requires, in accordance with the Purchase Agreement, that contemporaneously with the recording of the Master Declaration, Rhodes execute and deliver this Conditional Assignment and Grant of Rights, pursuant to which Commerce is given the right to become the Declarant under the Master Declaration upon the occurrence of a Purchaser Default under the Purchase Agreement or in the event all of the Option Parcels are not acquired under the Purchase Agreement.

Conditional Assignment, Paragraph "F".  See also In re Atlantic Computer Sys., Inc., 173 B.R. 844, 849-55 (S.D.N.Y. 1994) (six agreements properly constituted one contract for § 365 purposes).  Reorganized Debtors cannot accept or reject portions of the Commerce/Rhodes Agreement, Conditional Assignment or Master Agreement piecemeal as each forms part of a single uniform agreement for assumption-rejection purposes.  Assuming these contracts were executory, which they are not, Reorganized Debtors must assume or reject their provisions entirely.  However, much to the contrary, Reorganized Debtors are claiming that they have

exclusive right as Declarant under the Master Declaration, while claiming to reject the closely tied Conditional Assignment.

### C. In the Alternative, Even If the Conditional Assignment Is An Executory Contract, It Was Not Rejected In the Bankruptcy Case Because It Was Not Specifically Identified In the Third Amended Plan

In the alternative, in the event that the Court determines that the Conditional Assignment is an executory contract, it was not rejected in the Rhodes Bankruptcy because it was not specifically identified in the Plan.

11 U.S.C. § 365(a) provides that a "trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." In a chapter 11 case, the debtor in possession is entitled to exercise the right of the trustee to assume or reject. See 11 U.S.C. § 1107(a). Federal Rules of Bankruptcy Procedure ("FRBP") 6004(a) and 9014(a) implement the requirement that assumption or rejection be with court approval by requiring that such action be initiated by motion. Executory contracts may also be assumed or rejected as part of a plan of reorganization that has been confirmed. The overwhelming majority of jurisdictions, including the Ninth Circuit, has held that, except for assumption or rejection as part of a plan, the debtor in possession can manifest the intention to assume or reject an executory contract or unexpired lease only by formal motion filed in accordance with the requirements of FRBP 6006(a), 9014 and 9013. See Sea Harvest Corp. v. Riviera Land Co., 868 F.2d 1077, 1079 (9th Cir. 1989) (holding that the "rules plainly specify that a debtor in possession must file a formal motion" to assume or reject an executory contract; documents filed entitled "Affirmation and Assumption of Executory Contracts" were not sufficient). When a debtor seeks approval for the assumption or rejection of a contract or lease, whether by motion, stipulation, or plan provision, the contracts or leases for which such approval is sought should be specified. See FRBP 9013.

The bankruptcy court in the case In re Parkwood Realty Corp., 157 B.R. 687 (Bankr. W.D. Wash. 1993) held that a plan of reorganization that provided for the assumption of identified contracts and stated that all other "executory contracts or unexpired leases of [the debtor] which have not been previously rejected shall be deemed rejected on the Effective Date"

was not sufficient to reject the executory contract at issue. The court based its holding on the following two grounds: (1) the boilerplate language rejecting any executory contract that was not identified as being assumed was insufficient to satisfy the requirements of section 365, and (2) the party who was injured as a result of the rejection was not listed as a creditor and did not receive notice of the plan. See also In re Continental Country Club, Inc., 114 B.R. 763 (Bankr. M.D. 1990) (holding that even if third party plan proponent had standing to reject executory contracts of the debtor, boilerplate language in the plan of reorganization that did not specifically identify the contract at issue did not satisfy the requirements of 11 U.S.C. § 365).

In the present case, just as in Parkwood Realty and Continental Country Club, the Conditional Assignment was not identified in the Plan, and was never identified as an executory contract on Schedule G of Rhodes' petition. The Reorganized Debtors contend in its Motion to Enforce that the Conditional Assignment was properly rejected in its bankruptcy case through its plan confirmation proceeding. See Motion to Enforce, p. 4, ll. 13-28. Article V of the Plan provides that Rhodes' *executory contracts or unexpired leases* that were not assumed or rejected prior to the Effective Date were deemed rejected pursuant to Bankruptcy Code sections 365 and 1123, except for those *executory contracts or unexpired leases* that are listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" attached to the disclosure statement for the Plan as Exhibit N. Exhibit N attached to the disclosure statement listed several pages of contracts that were going to be assumed by Rhodes pursuant to the Plan. Since Exhibit N does not list the Conditional Assignment, Rhodes contends that the Conditional Assignment was "deemed" rejected pursuant to Article V of the Plan. However, such boilerplate language does not satisfy the requirements of section 365 or FRBP 6006(a), 9014 and 9013 and was insufficient to reject the Conditional Assignment.[2] By Rhodes own Schedule G, the Conditional Assignment was never treated or identified as an executory contract to begin with, and thus was never rejected.

---

[2] There is a simple and common sense reason why Rhodes never identified the Conditional Assignment as an executory contract in the Plan. That is to say, it was evident at the time that the Conditional Assignment was not an executory contract. Now Reorganized Debtors are attempting to recreate history with their Motion to Enforce.

Accordingly, even if the Conditional Assignment were an executory contract, which it is not, it was not rejected by the Plan.

### D. In the Alternative, the Reorganized Debtors Do Not Have Standing to File the Motion to Enforce If the Conditional Assignment Was Rejected in the Plan

11 U.S.C. § 365(g) provides that "the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease. . . ." As a result, the rejection of an unexpired lease or executory contract relieves a debtor in possession of its contractual obligations, gives rise to a breach of contract claim for the other party to the contract, and the executory contract ceases to be property of the bankruptcy estate. See 11 U.S.C. §§ 365(g), 502(b)(6).

As a result, even if the Reorganized Debtors rejected the Conditional Assignment they do not have standing to file the Motion to Enforce. This is because the Conditional Assignment would cease to become property of the bankruptcy estate if it was rejected pursuant to the Plan and section 365. Accordingly, the Motion to Enforce should be denied because if the Conditional Assignment was rejected as part of the Plan, then the Reorganized Debtors do not have standing to bring the Motion to Enforce.

### IV. CONCLUSION

It would be wrong now for Reorganized Debtors to try to include Commerce as a party its bankruptcy when Commerce was never a party in the first place. Reorganized Debtors attempt to rewrite history by creating an executory contract where none existed prior must fail. For the foregoing reasons, Commerce and Greystone respectfully request that the Court enter an Order

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Denying the Motion of the Reorganized Debtors for Entry of An Order Enforcing the Terms of the Third Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, et al., and the Related Confirmation Order.

Dated this 27th day of December 2012.

**ARMSTRONG TEASDALE, LLP**

/s/ Gordon R. Goolsby
Janet L. Chubb, Esq. (NV Bar No. 176)
Gordon R. Goolsby, Esq. (NV Bar No. 11578)
50 W. Liberty Street Suite 950
Reno, Nevada 89501
Telephone:  775/322-7400
Facsimile:   775/322-9049

*Attorneys for Commerce Associates, LLC*

**COTTON, DRIGGS, WALCH,
HOLLEY, WOLOSON & THOMPSON**

/s/ Dean S. Bennett
Richard F. Holley, Esq. (NV Bar No. 3077)
Dean S. Bennett, Esq. (NV Bar No. 6221)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:702/791-0308
Facsimile:  702/791-1912

*Attorneys for Greystone Nevada, LLC*