| | |
|---|---|
| 1  Janet L. Chubb, Esq. (NV Bar No. 176) | E-Filed On: December 27, 2012 |

Janet L. Chubb, Esq. (NV Bar No. 176)
Email: jchubb@armstrongteasdale.com
Gordon R. Goolsby, Esq. (NV Bar No. 11578)
Email: ggoolsby@armstrongteasdale.com
ARMSTRONG TEASDALE LLP
50 W. Liberty Street Suite 950
Reno, Nevada 89501
Telephone:    775/322-7400
Facsimile:    775/322-9049
*Attorneys for Commerce Associates, LLC*

Richard F. Holley, Esq. (NV Bar No. 3077)
Email: rholley@nevadafirm.com
Dean S. Bennett, Esq. (NV Bar No. 6221)
Email: dbennett@nevadafirm.com
COTTON, DRIGGS, WALCH,
HOLLEY, WOLOSON & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:    702/791-0308
Facsimile:    702/791-1912
*Attorneys for Greystone Nevada, LLC*

E-Filed On: December 27, 2012

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, a.k.a. "Rhodes Homes," et al.,<br><br>    Reorganized Debtors.<br><br>Affects:<br>☒ All Debtors<br>☐ Affects the following Debtor(s) | Case No. BK-S-09-14814-LBR<br><br>Chapter 11<br><br>**DECLARATION OF TOM GONZALES IN SUPPORT OF COMMERCE ASSOCIATES, LLC'S AND GREYSTONE NEVADA, LLC'S JOINT RESPONSE TO THE MOTION OF THE REORGANIZED DEBTORS FOR ENTRY OF ORDER ENFORCING THE TERMS OF THE THIRD AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE RHODES COMPANIES, LLC, ET AL. AND THE RELATED CONFIRMATION ORDER**<br><br>Date of Hearing:    January 10, 2013<br>Time of Hearing:    10:00 a.m.<br>Place:    Courtroom No. 1<br>    Third Floor<br>    Foley Federal Building<br>    300 Las Vegas Blvd., S.<br>    Las Vegas, NV 89101<br><br>Judge:    Hon. Linda B. Riegle |

-1-

I, Tom Gonzales, under oath and under penalty of perjury say:

1. I am Member of Commerce Associates, LLC.

2. I am over the age of 18 and am mentally competent. I have personal knowledge of the facts in this matter and if called upon to testify, could and would do so.

3. I make this declaration in support of Commerce Associates, LLC's and Greystone Nevada, LLC's Joint Response to the Motion of the Reorganized Debtors for Entry of Order Enforcing the Terms of the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, Et Al. and the Related Confirmation Order (the "<u>Response</u>").

**THE COMMERCE/RHODES AGREEMENT**

4. On November 14, 2003, Commerce and Rhodes entered into the Commerce/Rhodes Agreement, pursuant to which Commerce conveyed to Rhodes certain real property in the Tuscany Development, prepetition (the "Initial Phases"), and pursuant to which Commerce granted an option to purchase what is now identified as the Former Option Property. A true and correct copy of the Commerce/Rhodes Agreement is attached hereto as **Exhibit "A"**.

5. Pursuant to the Commerce/Rhodes Agreement, Rhodes subjected the Initial Phases to the provisions of that certain Master Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Tuscany Residential Community, recorded July 28, 2005, in Book 20050728, as Instrument No. 04296, Official Records, Clark County, Nevada (the "<u>Master Declaration</u>"). The Master Declaration designated Rhodes as the "Declarant." A true and correct copy of the Master Declaration is attached hereto as **Exhibit "B"**.

6. Section 1.1(b) of the Commerce/Rhodes Agreement defined the closing date as to the purchase of the Initial Phases as the date that is the later of either January 15, 2004 or three business days after the recordation of the Project Final Maps (the "<u>Closing Date</u>"). Again, this was done prepetition.

7. On September 14, 2004, Rhodes recorded a Grant Bargain and Sale Deed for the Initial Phases. As a result, the latest that the Closing Date could have occurred was September 14, 2004. A true and correct copy of the Grant Bargain and Sale Deed for the Initial Phases is

attached hereto as **Exhibit "C"**.

8. Pursuant to Section 1.2 of the Commerce/Rhodes Agreement, Commerce granted Rhodes a total of eight different options, on a rolling basis, to purchase certain additional parcels of real property in the Tuscany Project (the "Option Property"). The eight options expired at different times from the Closing Date of the Commerce/Rhodes Agreement. Specifically, the first option expired one hundred and eighty (180) days from the Closing Date and each subsequent option expired one hundred and eighty days (180) days from the closing date of the previous option. Because these were rolling options, Rhodes must have exercised the first option grant in order to exercise the next. Not having exercised the first option grant, all eight options expired. Had Rhodes exercised each option by their terms, the eighth option would have expired no later than September 2008, some four years after lastest possible date for the Closing Date. The option grants described under section 1.2 of the Commerce/Rhodes Agreement expired due to Rhodes inaction; collectively, the Option Property which Rhodes did not purchase is referred to herein as the Former Option Property.

**THE CONDITIONAL ASSIGNMENT**

9. On December 19, 2005, and as contemplated under the Commerce/Rhodes Agreement, Rhodes and Commerce entered into the Conditional Assignment. The Conditional Assignment expressly provided, inter alia, that "subject to Commerce's rights to accept, reject, or limit the transfer of same, [Rhodes] hereby grants, assigns, and sets over to Commerce, and grants a security interest in, all of [Rhodes'] right and interest in and to [Rhodes'] rights as Declarant in and under the Master Declaration." A true and correct copy of the Conditional Assignment is attached hereto as **Exhibit "D"**.

10. Pursuant to the Conditional Assignment, Commerce was given the right to become the Declarant under the Master Declaration, and Commerce could terminate Rhodes' temporary permission to act as such, in the event that (1) Rhodes defaulted under the Commerce/Rhodes Agreement, or notably, (2) Rhodes did not acquire the Option Parcels under the Commerce/Rhodes Agreement. The intent, then, was to allow Commerce a remedy and the ability to develop its own property in the event Rhodes did not exercise its option rights to

purchase it.

**THE RHODES BANKRUPTCY**

11.     On March 31, 2009, Rhodes filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "Petition Date") in the United States Bankruptcy Court for the District of Nevada (Case No. BK-S-09-14814-LBR) (the "Rhodes Bankruptcy") [Dkt. No. 1].

12.     As of the Petition Date, Commerce had fulfilled its obligations under the Commerce/Rhodes Agreement by conveying title to the Initial Phases to Rhodes, and Rhodes had failed to timely exercise any of its option rights as to the Former Option Property. Accordingly, there were no further mutual obligations under either instrument.

13.     On April 30, 2009, Rhodes filed its Schedules of Assets and Liabilities [Dkt. No. 131]. Rhodes did not identify either the Commerce/Rhodes Agreement or the Conditional Assignment in its Schedule G, which requires a debtor to identify all executory contracts and unexpired leases. A true and correct copy of Rhodes' Schedule G is attached hereto as **Exhibit "E"**.

14.     Moreover, Rhodes did not identify Commerce as a creditor or otherwise in its bankruptcy petition or schedules. This is because the terms of any contracts between Rhodes and Commerce were complete by the time Rhodes filed its petition.

15.     On February 18, 2010, the Steering Committee of Senior Secured Lenders in the Rhodes Bankruptcy filed a Third Amended Plan of Reorganization (the "Third Amended Plan") [Dkt. No. 1013].

16.     Article V of the Third Amended Plan provides that Rhodes' *executory contracts or unexpired leases* that were not assumed or rejected prior to the Effective Date were deemed rejected pursuant to Bankruptcy Code sections 365 and 1123, except for those executory contracts or unexpired leases that are listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" attached to the disclosure statement for the Plan as Exhibit N. Exhibit N attached to the disclosure statement listed several pages of contracts that were going to be assumed by Rhodes pursuant to the Plan. Since Exhibit N does not list the Conditional Assignment, Rhodes contends that the Conditional Assignment was "deemed" rejected pursuant

to Article V of the Plan. [Dkt. No. 1013].

17. However, Article V of the Third Amended Plan clearly refers only to "executory contracts and unexpired leases." As noted above, Rhodes failed to identify either the Commerce/Rhodes Agreement or the Conditional Assignment as executory contracts.

18. Neither the Commerce/Rhodes Agreement, nor the Conditional Assignment, nor the Master Declaration, was specifically identified in the Plan, and none of these were ever identified as executory contracts, nor were they the subject of any motion to either assume or reject an executory contract pursuant to 11 U.S.C. § 365.

19. On March 12, 2010, the Court entered an Order Confirming the Plan [Dkt. No. 1053].

**THE GREYSTONE PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS**

20. Since Rhodes did not timely exercise its option to purchase the Former Option Property under the Commerce/Rhodes Agreement, a termination event has occurred pursuant to the terms of the Conditional Assignment and Commerce has the right to become the declarant under the Master Declaration for the Former Option Property.

21. On November 1, 2012, Commerce and Greystone entered into a certain Purchase Agreement and Escrow Instructions (the "Agreement") for the purchase and sale of certain real property in Henderson, Nevada that includes the Former Option Property. A true and correct copy of the Agreement (redacted as to certain economic terms) is attached hereto as **Exhibit "F"**.

22. On November 30, 2012, Reorganized Debtors filed their Motion to Enforce [Dkt. No. 1737]. The seeming purpose of the Motion to Enforce is to prevent Greystone from asserting declarant rights as to the Former Option Property and from being able to develop the Former Option Property that it purchased under the Agreement.

23. Such an action would be consistent with threats made by the Reorganized Debtors while the Agreement was pending. Specifically, on November 19, 2012, the Reorganized Debtors sent a letter to Commerce where it indicated its desire to purchase the Former Option Property and that any sale of the Former Option Property will be subject to its approval as

1  Declarant under the Master Declaration. A true and correct copy of the November 19, 2012
2  letter is attached hereto as **Exhibit "G"**.

3  24. On November 21, 2012, Commerce sent a letter to the Reorganized Debtors that
4  stated Commerce has retained the right to exercise and assign declarant rights under the Master
5  Declaration and that the Reorganized Debtors' assertion that it has the power to limit the
6  development of the Former Option Parcels was incorrect. A true and correct copy of the
7  November 21, 2012 letter is attached hereto as **Exhibit "H"**.

8  25. On November 30, 2012, the Reorganized Debtors sent a letter in response to
9  Commerce's letter dated November 21, 2012, where it stated that the Conditional Assignment is
10 not valid because it was rejected in the Third Amended Plan. A true and correct copy of the
11 November 30, 2012 letter is attached hereto as **Exhibit "I"**.

12 26. On December 3, 2012, Commerce and Greystone entered into a First Amendment
13 to Purchase Agreement and Escrow Instructions (the "First Amendment"). A true and correct
14 copy of the First Amended (redacted as to certain terms) is attached hereto as **Exhibit "J"**.
15 Section two of the First Amendment provides that Commerce agrees to assist Greystone in
16 opposing the Motion to Enforce.

17 27. Section three of the First Amendment further provides that Commerce agrees to
18 assign its interest in the Conditional Assignment to Greystone in order to allow Greystone to
19 develop the Former Option Property.

20 28. The closing of the purchase agreement contemplated under the Agreement,
21 including as to the Former Option Property, occurred on December 21, 2012.

22 29. Commerce and Greystone now seek an order denying the Motion to Enforce on
23 the grounds that (1) under both the law and under Rhodes' own bankruptcy petition, the
24 Commerce/Rhodes Agreement and the Conditional Assignment were not executory contracts
25 that could be rejected pursuant to 11 U.S.C. § 365; (2) Reorganized Debtors are improperly
26 attempting to "cherry-pick" by accepting benefits under the Conditional Assignment and the
27 Master Declaration, while rejecting only portions it disfavors; obviously these must be accepted
28 or rejected in their entirety; (3) even if the Commerce/Rhodes Agreement and Conditional

Assignment were executory contracts, which they are not, they were never properly rejected in the Rhodes Bankruptcy because they were not specifically identified in the Third Amended Plan; and (4) even if the Commerce/Rhodes Agreement and Conditional Assignment were rejected in the Third Amended Plan, which they were not, the Reorganized Debtors do not have standing to file the Motion to Enforce because the Commerce/Rhodes Agreement and Conditional Assignment are no longer property of the bankruptcy estate pursuant to 11 U.S.C. § 365.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated this 27th day of December, 2012.

_____
TOM GONZALES