under circumstances different from those adjudicated by the court, or the validity or enforceability of the Agreement as a whole; provided that the invalidity or unenforceability of such provision does not materially and adversely affect the benefits accruing to, or the obligations imposed upon, any Party hereunder.

16.13   Amendments.  No addition to or modification of any provision contained in this Agreement shall be effective unless fully set forth in writing executed by both Buyer and Seller.

16.14   Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.

16.15   Exhibits.  All exhibits attached to this Agreement are incorporated herein by this reference as though fully set forth in the body hereof.

16.16   Time References.  Any references in this Agreement to time for performance of obligations or elapsed time shall mean consecutive calendar days, months, or years, as applicable, unless otherwise explicitly indicated herein.  In the event that the day on which Buyer or Seller is required to take any action under the terms of this Agreement is not a business day, such action shall be taken on the next succeeding business day.  Any notices received by a Party after 5:00 p.m. on the day in question shall be deemed received on the next business day. Whenever notice, approval or disapproval must be given to Escrow Holder and Escrow Holder is closed on the last day for taking such action, then the parties shall have until 5:00 p.m. on the first following day Escrow Holder is open to take such action.  As used in this Agreement, the term "Business Days" means a Monday, Tuesday, Wednesday, Thursday, or Friday, other than a federal or Nevada state holiday.

16.17   Construction of Agreement.   The agreements contained herein shall not be construed in favor of or against either Party, but shall be construed as if both parties prepared this Agreement.


/ / /

/ / /

944117.doc

16.18  <u>Binding Effect</u>.  This Agreement shall be binding only upon its execution and delivery by both Seller and Buyer.

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement as of the day and year first above written.

"Seller"

COMMERCE ASSOCIATES, LLC,
A Nevada limited liability company

By: _____
Name: Tom McMahon S
Title: Manager


"Buyer"

GREYSTONE NEVADA, LLC
a Delaware limited liability company

By: _____
Name: Jeremy Parness
Its: Authorized Agent

21

## CONSENT

First American Title Insurance Company, the Escrow Holder under this Agreement, hereby agrees to (i) accept the foregoing Agreement, (ii) be Escrow Holder under the Agreement, and (iii) be bound by the Agreement in the performance of its duties as Escrow Holder.

**"Escrow Holder"**

FIRST AMERICAN TITLE INSURANCE COMPANY


Dated:_____, 2012


By:_____
Name: _____
Its: _____

944117.doc

22

EXHIBIT "A"

TO

PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

Legal Description of Property

The land referred to is situated in the County of Clark, State of Nevada, and is described as follows:

Parcel 1:

Lot 5 of Palm City Phase 1, as shown by map thereof on file in Book 94 of Plats, Page 19, in the Office of the County Recorder of Clark County, Nevada as amended by that certain Certificate of Amendment recorded October 3, 2001 in Book 20011003 of Official Records, Clark County, Nevada, as Instrument No. 00932.

That portion of the South Half (S 1/2) of the Southwest Quarter (SW 1/4) of Section 32, Township 21 South, Range 63 East, M.D.M., described as follows:

Lot 3-2 as shown by map thereof in File 102 of Parcel Maps, Page 60, in the Office of the County Recorder, Clark County, Nevada.

Excepting therefrom all that real property as conveyed to the City of Henderson by deed recorded July 19, 2006 in Book 20060719 as Instrument No. 001752.

PARCEL 2A:

LOTS FIVE (5) THROUGH FIFTEEN (15), EIGHTY-FOUR (84) THROUGH NINETY (90), INCLUSIVE IN BLOCK ONE (1), LOTS ONE HUNDRED SEVENTY-TWO (172) THROUGH ONE HUNDRED SEVENTY-FIVE (175), INCLUSIVE IN BLOCK THREE (3), LOTS TWO HUNDRED SIX (206) THROUGH TWO HUNDRED EIGHT (208), INCLUSIVE IN BLOCK FOUR (4) OF FINAL MAP OF TUSCANY PARCEL 6A (FORMERLY KNOWN AS PALM CITY-PHASE 2 LOT 6A) AS SHOWN BY MAP THEREOF ON FILE IN BOOK 138 OF PLATS, PAGE 20, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL 2B:

LOTS ONE-A (1A) AND TWO-A (2A), INCLUSIVE IN BLOCK ONE (1) OF THE AMENDED FINAL MAP OF TUSCANY PARCEL 17 (FORMERLY KNOWN AS PALM CITY-PHASE 1 LOT 17) AS SHOWN BY MAP THEREOF ON FILE IN BOOK 139 OF PLATS, PAGE 54, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL 2C:

LOTS THREE (3) THROUGH SEVENTEEN (17) AND TWENTY-ONE (21), INCLUSIVE IN BLOCK ONE (1) OF FINAL MAP OF TUSCANY PARCEL 17 (FORMERLY KNOWN AS PALM CITY-PHASE 1 LOT 17) AS SHOWN BY MAP THEREOF ON FILE IN BOOK 129 OF PLATS, PAGE 1, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

LV419.785,203 V3

944117.doc

# EXHIBIT "B"

## ASSESSOR PARCEL NUMBERS

APNs:    160-32-110-001, 160-32-401-005
160-32-717-001 and 002,
160-32-714-003 thru 017 and 021
160-32-113-086 thru 090, 172 thru 175
and 206 thru 208

24

944117.doc

EXHIBIT "C"

TO

PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

Grant, Bargain and Sale Deed

APN:

Affix R.P.T.T.

MAIL TAX STATEMENT TO:

WHEN RECORDED MAIL TO:

ESCROW NO:

GRANT, BARGAIN AND SALE DEED

THIS INDENTURE WITNESSETH: That

COMMERCE ASSOCATES, LLC, a _____ limited liability company, in consideration of $10.00 and other valuable consideration, the receipt of which is hereby acknowledged, does hereby Grant, Bargain, Sell and Convey to Greystone Nevada, LLC, a Delaware limited liability company, all that real property situated in the County of Clark, State of Nevada, bounded and described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF AS IF FULLY SET FORTH.

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

Subject to current taxes and all covenants, conditions, restrictions, reservations, easements and declarations or other matters of record or apparent as of the date hereof.

Witness my/our hand(s) on _____ ___, 2012.

944117.doc

[SIGNATURE BLOCK, NOTARY VERIFICATION AND LEGAL
DESCRIPTION TO BE INSERTED ON EXECUTION VERSION - FORM ONLY, DO
NOT SIGN]

944117.doc

EXHIBIT "D"

TO

**PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS**

ASSIGNMENT AND BILL OF SALE

THIS ASSIGNMENT AND BILL OF SALE ("Bill of Sale") is executed this __ day of _____, 2012, by and between Commerce Associates, LLC, a _____ limited liability company ("Assignor"), and Greystone Nevada, LLC, a Delaware limited liability company ("Assignee"), in connection with the sale of certain real property (the "Property") more particularly described in that certain Purchase Agreement and Escrow Instructions, dated as of _____, 2012 (the "Purchase Agreement"), entered into by Assignor as "Seller," and Assignee, as "Buyer".

NOW, THEREFORE, pursuant to the Purchase Agreement and in consideration of the mutual covenants and conditions set forth herein, the parties hereby agree as follows:

1.    Assignment.  For good and valuable consideration, Assignor hereby grants, conveys, assigns and transfers to Assignee all of Assignor's right, title and interest, if any, in and to any of the following items owned, used or held in connection with the ownership, development, use, and management of the Property (collectively, the "Personal Property"):

1.1.    all personal property located on and affiliated with the Property;

1.2.    all governmental, quasi-governmental and utility company permits, licenses, authorizations and approvals pertaining to the Property, if any;

1.3.    all plans, specifications, reports, studies, maps, surveys and other development materials pertaining to the Property, including, but not limited to, all architectural plans, engineering plans, house plans, and development plans, if any;

1.4.    all zoning, entitlement and other development rights with respect to the Property; and

1.5.    all warranties, claims, contracts, assurances, indemnities or other rights, including without limitation any rights to plans or designs of any nature, Assignor may hold, if any, from any consultants, contractors or professionals who performed any work on the Property.

2.    As-is.  All of the Personal Property is conveyed and accepted in "As-Is" condition with no representation or warranty of any kind being made with respect thereto.

3.    No Undertaking of Duties.  Nothing contained in this Bill of Sale shall relieve Assignor of any duties or obligations with respect to the Personal Property, nor obligate Assignee with respect thereto, except as may be agreed in writing between Assignor and Assignee.

944117.doc

27

4.      Additional Acts.  Assignor agrees at its expense to undertake such additional actions, and execute such additional instruments and documents as may be required or as may be reasonably to effectuate, evidence, perfect, or further the assignment of the Personal Property, including without limitation, the obtaining of any third party consents with respect to such assignments.

5.      Miscellaneous.  This Bill of Sale shall be binding upon the parties and their respective successors and assigns.  This Bill of Sale shall be governed by and interpreted in accordance with the laws of the State of Nevada.

IN WITNESS WHEREOF, Assignor has executed this Assignment as of the date first set forth above.

**[SIGNATURE BLOCK AND LEGAL DESCRIPTION TO BE INSERTED ON EXECUTION VERSION -- FORM ONLY, DO NOT SIGN]**

944117.doc

# EXHIBIT "G"

**Las Vegas Land Holdings, LLC**
**6345 South Jones Blvd., Suite 400**
**Las Vegas, NV 89118**

November 19, 2012

**FEDERAL EXPRESS**

Commerce Associates, LLC
1200 Cypress Creek Road
Fort Lauderdale, Florida 33009
Attention: Mr. Tom McManus
               Mr. Tom Gonzales

Re: Tuscany Village – Commerce owned property (the "Property")

Dear Sirs:

As you know, Las Vegas Land Holdings, its affiliates or assignees ("Dunhill") were engaged in discussions with Commerce regarding our proposed purchase of the Property owned by Commerce within the Tuscany Village Community located in Henderson, Nevada. In fact, we original submitted a Letter of Intent on September 27, 2012 and subsequently increased our offer per your request several times. Our last offer, 2 weeks ago, was $9,500,000 with $1,000,000 hard with a close date of November 30, 2012. In reliance on your representation in early October and at your request, we proceeded in good faith and drafted a proposed Purchase and Sale Agreement incorporating the general terms and conditions that were discussed during our various conversations waiting only on the final numbers to be inserted into the agreement. However, based on information we recently received from both Commerce and Lennar Homes ("Lennar"), it appears that Commerce has changed its position with regards to selling the Property to Dunhill and is now preparing to sell the property to Lennar.

Obviously, we are disappointed with Commerce's failure to honor what had been communicated to us. Nevertheless, we plan to reasonably cooperate with Commerce in connection with the proposed sale transaction to Lennar, provided that there are a number of issues (many of which are identified below) that must be resolved to Dunhill's satisfaction before we can provide the requested cooperation and assistance to Commerce and Lennar. These issues must be adequately addressed and resolved in order to protect all parties' interests, including those of Dunhill.

In the event Commerce proceeds with any sale of the Property to Lennar or any other builder, developer or other third party (collectively, a "Builder"), any such sale will be subject to certain approval and other rights of Rhodes Design and Development Corporation (the "Declarant") under the existing Master Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Tuscany Residential Community recorded on July 28, 2005, as Instrument/Page

Mr. Tom McManus
Mr. Tom Gonzales
Re: Tuscany Village
November 19, 2012
Page 2

No. 20050728-0004296 of the Official Records of Clark County, Nevada (as amended, modified and supplemented from time to time, the "CC&Rs"), including, but not limited to, the following:

(1)    In order to protect the Master Association and the Tuscany Village Community (the "Community") under the CC&Rs and to ensure that all of the Property gets properly annexed into the Community and CC&Rs, Declarant will require that a Supplemental Declaration (in form and content prepared and approved by Declarant) be fully executed and recorded against the Property at the closing of the purchase and sale transaction between Commerce and the Builder, annexing the Property into the Community and CC&Rs and imposing such additional covenants, easements and restrictions on the Property as Declarant deems necessary or appropriate in order to protect and enhance the Community. Rhodes Design and Development, as Declarant, would be a party to this document and thus be one of the signatories. In addition, until the Property gets properly annexed into the CC&Rs and Community, neither the Property nor any owner thereof will have any right to use any of the Common Elements within the Community (including, the private gated entry and streets).

(2)    All proposed plans, drawings and specifications for any proposed homes, buildings or other improvements of any Builder are subject to Declarant's prior review and approval in its sole discretion and as otherwise provided in the CC&Rs.

(3)    Certain proposed marketing and sales facilities of a Builder (including, but not limited to, business offices, sales offices, signs, flags, banners, displays and model units) are subject to the prior authorization and approval by Declarant in its sole opinion and discretion.

(4)    No additional declarations of covenants, conditions and restrictions or similar instruments affecting the Community may be recorded without Declarant's prior review and written consent.

(5)    During the Declarant Control Period, Declarant has the sole right to appoint and remove all officers and directors of the Master Association, except for any officers and directors required to be appointed by the homeowners.

The foregoing list of Declarant's rights under the CC&Rs and other Governing Documents is not exhaustive, and Dunhill, as the current acting agent for Declarant, hereby expressly reserves all other rights, benefits and privileges of Declarant under the CC&Rs and Governing Documents.

We trust that you will advise Lennar and/or any other Builder (as applicable) of the foregoing rights of Declarant in the event that you elect to proceed with the proposed sale of the Property to Lennar or any other Builder (as applicable).

Mr. Tom McManus
Mr. Tom Gonzales
Re: Tuscany Village
November 19, 2012
Page 3

In addition, as you know, there are several common elements that still need to be conveyed to the Master Association (the "Outstanding Common Elements"), and there is also a parcel of land that still needs to be conveyed to the Tuscany Golf Club (the "Golf Club Parcel"). Dunhill and Commerce have previously identified each of the foregoing Outstanding Common Elements and the Golf Club Parcel. In addition, the improvements to some of the forgoing Outstanding Common Elements still need to be inspected and formally accepted by the Master Association so that the Master Association can take over the maintenance and repair of such improvements.

As noted above, we need to formally and adequately resolve each of the foregoing issues (together with any additional issues that may arise as part of the proposed sale transaction to Lennar) before Dunhill can provide the information and other assistance previously requested by Commerce and/or Lennar.

We look forward to hearing from you regarding the foregoing and stand ready to complete a transaction.

Very truly yours,

Richard Dix
Las Vegas Land Holdings, LLC

bjp

# EXHIBIT "H"



# RICE SILBEY
# REUTHER & SULLIVAN

**November 21, 2012**

*Via Email: richard.dix@wincarco.com and Federal Express*
Las Vegas Land Holdings, LLC
6345 South Jones Boulevard, Suite 400
Las Vegas, NV 89118
Attn: Richard Dix

Re:    **Tuscany Master Planned Community located in Henderson, Nevada**

Dear Mr. Dix:

As counsel for Commerce Associates, LLC ("Commerce"), your November 19, 2012 letter has been forwarded to me for response.

The conclusions stated in your letter appear at best to be based on erroneous or incomplete facts:

- There is not and there has never been any agreement or commitment to sell the subject property to Las Vegas Land Holdings or its affiliates ("Dunhill"). To the contrary, as you know, Commerce has entered into an agreement to sell the subject property to Greystone Nevada, LLC or its affiliates ("Lennar").

- Commerce has retained the right to exercise and assign declarant rights under the existing Master Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Tuscany Residential Community now of record with respect to the Tuscany master planned community pursuant to a Conditional Assignment and Grant of Rights ("Conditional Assignment") that is now also of record with respect to the Tuscany master planned community. As a result, your statements concerning Dunhill's ability to control, limit and/or obstruct the ability of Commerce or Lennar to develop the subject property are incorrect.

- Finally, the issues referenced in your letter as those related to the "Outstanding Common Elements" are unrelated to the pending sale of property to Lennar. Commerce has been working in good faith to resolve those issues with Dunhill and the Tuscany Master Association, and Commerce will continue to do so.

All actions taken by you or Dunhill which interferes with valid and existing contracts or business relationships between Commerce and Lennar give rise to various causes of action, including, but not limited to, intentional interference with contractual relations and intentional interference with prospective business advantage. Commerce reserves any all rights afforded to it under the laws

3960 HOWARD HUGHES PKWY., SUITE 700
LAS VEGAS, NEVADA 89169
702.732.9099 PH | 702.732.7110 FX

*WILLIAM J. SILBEY HAS RETIRED FROM THE PRACTICE OF LAW IN THE STATE OF NEVADA.

Las Vegas Land Holdings, LLC
November 21, 2012
Page 2

of the state of Nevada, inclusive of the ability to assert such claims.  Rest assured that Commerce
is prepared to vigorously exercise those rights.  Please conduct yourself accordingly.


Very truly yours,

RICE SILBEY REUTHER & SULLIVAN, LLP

*Stephen Rice /yg*

Stephen M. Rice, Esq.

Enclosure

cc:    Commerce Associates, LLC, via email
       Renee R. Reuther, via email



```
20051219-0004171
```

Fee: $22.00
N/C Fee: $0.00

APN: 160-32-313-001 thru 012, 019 thru 086
090 thru 126, 136 thru 144, 159 thru 161, 186 thru 192
~~RECORDING REQUESTED BY:~~ 202, 160-32-213-001
Chicago Title Agency of Nevada, Inc.              thru 088
2300 W. Sahara Avenue, #140
Las Vegas, NV 89102
Attention: Clarice Ronzone

(Escrow No.05050487)

AND WHEN RECORDED MAIL TO:

3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89109
Attention: Michael E. Buckley, Esq.

12/19/2005          13:30:27
T20050229273
Requestor:
    CHICAGO TITLE

Frances Deane                  DGI
Clark County Recorder     Pgs: 9

---

## CONDITIONAL ASSIGNMENT AND GRANT OF RIGHTS

THIS CONDITIONAL ASSIGNMENT AND GRANT OF RIGHTS ("<u>Assignment</u>") is made as of the 19 day of December, 2005 by RHODES DESIGN AND DEVELOPMENT CORPORATION, a Nevada corporation ("<u>Rhodes</u>") to COMMERCE ASSOCIATES, LLC, a Nevada limited liability company ("<u>Commerce</u>"), with reference to the following facts and purposes:

A.    Commerce, as seller, and Rhodes, as purchaser, are parties to a Purchase Agreement and Grant of Options, dated as of November 14, 2003 (as now or hereafter in effect, the "<u>Purchase Agreement</u>"), pursuant to which Commerce has conveyed the real property described on <u>Exhibit A</u> attached hereto and incorporated herein by this reference (the "<u>Initial Phases</u>") to Rhodes and certain affiliates of Rhodes. All capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Purchase Agreement.

B.    Commerce has also agreed to grant certain Options to purchase the Option Parcels.

C.    The Initial Phases and the Option Parcels are located within the master planned community known as Tuscany.

D.    Pursuant to the Purchase Agreement, Rhodes has subjected the Initial Phases to the provisions of that certain Master Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Tuscany Residential Community, recorded July 28, 2005, in Book 20050728, as Instrument No. 04296, Official records, Clark County, Nevada (the "<u>Master Declaration</u>").

E.    In accordance with the Purchase Agreement, Rhodes is designated as the "Declarant" under the Master Declaration.

1

F.    Commerce requires, in accordance with the Purchase Agreement, that, contemporaneously with the recording of the Master Declaration, Rhodes execute and deliver this Conditional Assignment and Grant of Rights, pursuant to which Commerce is given the right to become the Declarant under the Master Declaration upon the occurrence of a Purchaser Default under the Purchase Agreement or in the event all of the Option Parcels are not acquired under the Purchase Agreement.

NOW THEREFORE, FOR VALUE RECEIVED, Rhodes, subject to Commerce's rights to accept, reject, or limit the transfer of same, hereby grants, transfers, assigns, and sets over to Commerce, and grants Commerce a security interest in, all of Rhodes's right and interest in and to Rhodes's rights as Declarant in and under the Master Declaration, including but not limited to, special declarant's rights (NRS 116.110385), developmental rights (NRS 116.11034), the right to maintain models, offices for sales and signs (NRS 116.2115), and the ability to exercise any of the rights reserved to a declarant under the Master Declaration (collectively, the "Declarant's Rights"). Without limiting the generality of the foregoing, this Assignment is given for the purposes of securing:

(a)    The performance, whether by Rhodes or any other person acquiring title to all or any part of the Option Property pursuant to the Purchase Agreement, of the Purchaser's obligations under (i) the Purchase Agreement, and any amendment or modification thereof and (ii) of every term, provision, condition, duty, obligation, covenant and agreement of the Purchaser contained in any Development Declaration and any amendment, modification, extension, renewal or replacement thereof (collectively, the "Purchase Documents").

(b)    The performance and discharge by Rhodes of every term, provision, condition, duty, obligation, covenant and agreement of Rhodes contained herein and any amendment, modification, extension, renewal or replacement hereof.

This Assignment is intended as a present assignment of the Declarant's Rights and shall be effective immediately, provided, however, that, until the occurrence of a Termination Event (as hereinafter defined), permission is given to Rhodes to exercise the Declarant's Rights solely in accordance with the provisions of this Assignment.

As used herein, the term "Termination Event" means the occurrence of any of the following: (a) the occurrence of a Purchaser Default under the Purchase Agreement, (b) any of the Options is not exercised in accordance with the Purchase Agreement, (c) an Option Closing Date fails to occur by reason of the failure of an Option to be exercised or Commerce's permitted termination of an Option.

Following a Termination Event, Rhodes's exercise of any Declarant's Rights shall be of no force or effect.

**RHODES FURTHER COVENANTS AND AGREES AS FOLLOWS:**

2

1.    Rhodes shall from time to time execute any and all instruments reasonably requested by Commerce in order to evidence or enforce this Assignment.

2.    Rhodes will fully comply at all times with each of the following covenants:

(a)    Rhodes will promptly pay when due all fees, charges and other sums or amounts required to be paid by the Declarant and will further keep and perform all of the covenants, terms and provisions of the Master Declaration that impose any obligation on the Declarant, and will do all other things necessary to preserve and keep unimpaired the Declarant's Rights.

(b)    Rhodes will promptly (not later than five (5) business days following receipt thereof) notify Commerce in writing of any default on the part of Rhodes as the Declarant, and of the occurrence of any event which, with or without any notice or lapse of time or both, would constitute a default on the part of Rhodes as the Declarant.

(c)    Rhodes will promptly send to Commerce a true copy of any notice served on Rhodes as Declarant.

(d)    Rhodes will not surrender, terminate or cancel any Declarant's Rights, in whole or in part, without first obtaining the prior written consent of Commerce. Rhodes will not make or consent to any modification, change, supplement, amendment or alteration of any terms of the Master Declaration in whole or in part, without first obtaining the prior written consent of Commerce, provided that Commerce shall not unreasonably withhold its consent to any such modification, change, supplement, amendment or alteration which does not in any way adversely affect the Declarant's Rights or the value of any real property owned by Commerce within Tuscany or Commerce's ability to develop its real property within Tuscany.

3.    If at any time Rhodes fails to comply fully with any of the Declarant's obligations under the Master Declaration and that failure in any manner threatens to impair Commerce's rights or security under this Assignment, then Commerce may, but is not obligated to, perform any of those obligations on behalf of Rhodes or cure any of Rhodes's defaults. Commerce may take such action without notice to or demand upon Rhodes and without releasing Rhodes from any obligations under this Assignment or any of the Purchase Documents.

4.    Commerce will have the right to appear in and participate in all proceedings, which could affect Commerce's rights or security hereunder or the value of any Declarant's Rights. Rhodes agrees to pay upon demand all reasonable costs and expenses of Commerce (including but not limited to reasonable legal fees and disbursements) incurred in any such proceedings. Any and all such costs and expenses (and any other costs and expenses which Rhodes is obligated to pay hereunder) shall be additional secured obligations hereunder, and shall bear interest at the Agreed Rate from the time of advancement by Commerce until paid, and if not paid within 30 days, at the Default Rate thereafter.

5.    Rhodes hereby agrees to indemnify, protect, defend and hold Commerce harmless of and from any and all liability, loss, damage, or expense which it may or might incur under or by

3

reason of this Assignment or for any action taken by Commerce hereunder or by reason or in defense of any and all claims and demands whatsoever which may be asserted against Commerce arising out of the Master Declaration (excepting only those obligations of Commerce as an Owner or Member [as those terms are defined in the Master Declaration] should any real property owned by Commerce become subject to the Master Declaration).  Should Commerce incur any such liability, loss, damage, or expenses, or any expenses in the defense of any claims or demands, the amount thereof (including reasonable attorneys' fees whether or not suit is commenced), shall be payable by Rhodes immediately and without demand, and the payment thereof shall be obligations secured hereby, provided, however, that unless Rhodes at any time shall fail to adequately defend such indemnified person as required hereby, Rhodes shall defend Commerce using legal counsel reasonably satisfactory to such indemnified person, at the sole reasonable cost and expense of Rhodes.

6.    The exercise by Commerce of any of the rights, remedies, powers or privileges provided for herein or the taking of any action by Commerce, whether completed or incomplete with respect thereto, is permissive and not obligatory, and the exercise or non-exercise of the same shall not preclude, delay or prejudice any other rights, remedies, powers or privileges provided for herein or under any of the Purchase Documents, or otherwise provided at law or in equity, and the failure to take action at any time shall not constitute a waiver of such right, remedy, power or privilege.

7.    So long as no Termination Event has occurred, Rhodes may continue to receive and exercise all of the rights, benefits and privileges of the Declarant under the Master Declaration, provided the same are received and exercised in accordance with this Assignment.

8.    Neither this Assignment nor any action or actions on the part of Commerce other than an express agreement in writing executed by Commerce specifically assuming such obligation shall constitute an assumption of all or any of the Declarant's Rights or the obligations of the Declarant under the Master Declaration, and Rhodes shall continue to be liable for all obligations thereunder.

9.    Upon the occurrence of any Termination Event, Commerce shall have the right, but not the obligation, to take in its name or in the name of Rhodes or otherwise, such actions which Commerce may at any time or from time to time after the occurrence of a Termination Event determine is necessary to protect the rights of Rhodes or Commerce hereunder.  Commerce shall incur no liability if any action taken by it or in its behalf in good faith, pursuant to the foregoing sentence, shall prove to be in whole or in part inadequate or invalid, and Rhodes agrees to indemnify and hold Commerce harmless from and against any and all loss, cost, liability, or expense (including, but not limited to, reasonable attorneys' fees and expenses) in connection with any such action or actions. Provided, however, without limiting the foregoing, unless Rhodes at any time shall fail to adequately defend such indemnified person as required hereby, Rhodes shall defend Commerce using legal counsel reasonably satisfactory to such indemnified person, at the sole reasonable cost and expense of Rhodes.

10.    Rhodes hereby irrevocably constitutes and appoints Commerce its true and lawful attorney-in-fact, in the name of Rhodes or any successor or assign or in Commerce's name or otherwise, to enforce all rights of Rhodes as the Declarant under the Master Declaration, such power of attorney being coupled with an interest, being irrevocable.

4

11.    There shall be no merger of the interests of the parties to the Master Declaration, or any interest created thereby; without limiting the foregoing, there shall be no merger by reason of any interests thereunder coming into common ownership, unless Commerce consents to such merger of interests in writing.

12.    Any notice, request, demand, statement, authorization, approval or consent made hereunder shall be in writing and shall be sent by United Parcel Service, or other reputable nationally recognized overnight courier service, or by postage pre-paid registered or certified mail, return receipt requested, and shall be deemed given when received or refused (as indicated on the receipt, unless receipt or refusal is not during normal business hours on a business day, in which case, notice shall be deemed given on the next following business day) and addressed as follows:

| | |
|---|---|
| If to Commerce: | COMMERCE ASSOCIATES, LLC<br>c/o TG Investments, LLC<br>4511 W. Cheyenne Ave.<br>Suite 801<br>N. Las Vegas, NV  89032<br>Telephone:  (702) 413-9111<br>Telecopy:  (702) 413-9107 |
| and: | Jones Vargas<br>3773 Howard Hughes Parkway<br>Third Floor South<br>Las Vegas, Nevada 89109<br>Attention:  Michael E. Buckley, Esq.<br>Telephone: (702) 862-3300<br>Telecopy: (702) 734-2722 |
| If to Rhodes: | Rhodes Homes<br>4730 S. Fort Apache Road<br>Suite 300<br>Las Vegas, Nevada 89147<br>Attention: James M. Rhodes, President<br>Telephone: (702) 873-5338<br>Telecopy: (702) 873-5129 |
| and: | Rhodes Homes<br>4730 S. Fort Apache Road<br>Suite 300<br>Las Vegas, Nevada 89147<br>Attention: General Counsel<br>Telephone: (702) 873-5338<br>Telecopy: (702) 873-5129 |

5

Each party may designate a change of address by notice given, as herein provided, to the other party, at least fifteen (15) days prior to the date such change of address is to become effective.

13.    Subject to the restrictions set forth in the Purchase Documents, this Assignment is binding on and shall inure to the benefit of the parties hereto, their successors, nominees and assigns.

14.    This Assignment may be executed in two or more counterparts, all of which shall be deemed a duplicate original.

15.    If any one or more of the provisions of this Assignment, or the applicability of any such provision to a specific situation, shall be held invalid or unenforceable, such provision shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of this Assignment and all other applications of any such provisions shall not be affected thereby.

16.    This Assignment shall be governed by and construed in accordance with the laws of the State of Nevada without giving effect to any contrary conflict-of-law rules and principles of such State.

17.    The rights and remedies of Commerce under this Assignment are cumulative and are not in lieu of, but are in addition to, any other rights or remedies which Commerce may have under the Purchase Documents, at law, or otherwise.

18.    This Assignment may not be amended, modified or changed, nor shall any waiver of any provision hereof be effective, except by an instrument in writing and signed by the party against whom enforcement of the waiver, amendment, change, modification or discharge is sought.

19.    Upon the satisfaction of all obligations of Rhodes to Commerce under the Purchase Agreement and the acquisition of all of the Property pursuant to the Purchase Agreement, this Assignment shall automatically terminate.  Commerce hereby agrees, upon termination of this Assignment, to execute a release and reconveyance of this Assignment and all further documents, if any, necessary or reasonably requested by Rhodes in order to evidence the termination of this Assignment.

*[The remainder of this page is left blank.  The signature pages follow.]*

6

IN WITNESS WHEREOF, Rhodes has executed this Assignment as of the date first above written.

Rhodes:

**RHODES DESIGN AND DEVELOPMENT CORPORATION**, a Nevada corporation

By: _____

~~James Rhodes, its President~~

*Paul Huygens, Treasurer*

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before me on this *16* day of *December*, 2005 by ~~James Rhodes, as president~~ of Rhodes Design and Development Corporation, a Nevada corporation.

*Paul Huygens, TREASURER*

Notary _____

SARALYN ROSENLUND
Notary Public - Nevada
No. 02-76733-1
My Appt. Exp. July 11, 2006

7

IN WITNESS WHEREOF, Rhodes has executed this Assignment as of the date first above written.

Rhodes:                                    **RHODES DESIGN AND DEVELOPMENT CORPORATION**, a Nevada corporation

                                           By: _____

                                           ~~James Rhodes, its President~~

                                           *Paul Huygens, Treasurer*

STATE OF NEVADA
COUNTY OF CLARK

    This instrument was acknowledged before me on this *16* day of *December*, 2005 by ~~James Rhodes, as president~~ of Rhodes Design and Development Corporation, a Nevada corporation.

*Paul Huygens, TREASURER*

Notary _____

SARALYN ROSENLUND
Notary Public - Nevada
No. 02-76733-1
My Appt. Exp. July 11, 2006

7

**EXHIBIT A**

Legal Description of the Initial Phases

The real property as described in Exhibit "A"

as attached       to the Master Declaration of Covenants, Conditions and
Restrictions and Reservation of Easements for Tuscany Residential Community]

as defined in this document

1

# EXHIBIT "I"

# SQUIRE ◇
# SANDERS

Squire Sanders (US) LLP
1 E. Washington St., Suite 2700
Phoenix, Arizona 85004

O +1 602 528 4000
F +1 602 253 8129
squiresanders.com


Bart J. Page
T +1 602 528 4045
bart.page@squiresanders.com

November 30, 2012

**VIA E-MAIL AND FEDERAL EXPRESS**

Rice Sibley Reuther & Sullivan, LLP
3960 Howard Hughes Parkway
Suite 700
Las Vegas, Nevada 89169
Attention: Stephen M. Rice, Esq.

Re: Tuscany Master Planned Community located in Henderson, Nevada (the "Community")

Dear Stephen:

We represent Las Vegas Land Holdings, LLC and its affiliates (collectively, "Dunhill") in connection with the above-referenced matter. This letter is in response to your letter dated November 21, 2012 to Richard Dix:

    1.    Although there have been previous discussions between our clients regarding the remaining property at Tuscany, Dunhill is not claiming that the parties had a binding agreement in that regard. Dunhill is aware that Commerce has entered into an agreement to sell the property to Lennar, and as set forth in Richard Dix's November 19, 2012 letter to Commerce, Dunhill intends to reasonably cooperate with Commerce and Lennar in connection with that transaction, subject, however, to Dunhill's protection of its existing rights, assets and interests in the Community (including, but not limited to, the rights of Rhodes Development and Design Corporation ("Rhodes") as the Declarant under the Master CC&Rs).

    2.    Contrary to the assertions and claims set forth in the second bullet-point of your letter, Rhodes is the sole Declarant under the Master CC&Rs. Since the Master CC&Rs were recorded in 2005, Rhodes has held and exercised all of the Declarant rights under the Master CC&Rs and has performed all of the related obligations under the Master CC&Rs. In addition, the Conditional Assignment referred to by you in your letter is not valid or effective for several reasons, including, but not limited to, the fact that it was rejected by Rhodes in its

Stephen M. Rice, Esq.                                          Squire Sanders (US) LLP
Re: Tuscany
November 30, 2012
Page 2

bankruptcy. Your assertions and claims regarding the Declarant rights under the Master CC&Rs also demonstrate why Dunhill must be cautious in connection with its cooperation with Commerce and Lennar to make sure that its rights and interests are preserved and protected. Dunhill will not jeopardize its rights and interests in the Community and under the Master CC&Rs and is fully prepared to take all action necessary or appropriate to enforce, protect, preserve and adjudicate those rights.

3.   As for the "Outstanding Common Elements" that still need to be conveyed by Commerce to the Master Association, we disagree with you that those issues are unrelated to the pending sale to Lennar. These issues affect the entire Community (including the property being acquired by Lennar) and should have been resolved long ago. Now is the time to resolve these issues, and Dunhill is not willing to postpone this any further. Dunhill looks forward to promptly resolving these issues with Commerce.

4.   Finally, we reject your insinuation that Dunhill is interfering with Commerce's contractual relations with Lennar. As you are well aware, Dunhill's exercise, protection and preservation of its legitimate rights and interests in the Community and under the Master CC&Rs do not constitute or give rise to a claim for intentional interference with contractual or business relations. In addition, all contact that Dunhill has had with Lennar regarding the Community has either been initiated by Lennar or made as the specific request of Commerce. Dunhill has also confirmed to both Commerce and Lennar that Dunhill intends to reasonably cooperate with Commerce and Lennar in their transaction, provided, however, that Dunhill's rights and interests in the Community and under the Master CC&Rs are adequately protected and preserved. The wild accusations and threats set forth in your letter will not deter Dunhill from exercising and protecting its legitimate rights and is likely to bring about litigation among the parties and delay to the Commerce/Lennar transaction.

On another matter, I understand that the on-site manager at the Tuscany Master Association (the "Master Association") received an e-mail yesterday from Steve Weddell at Commerce, requesting certain information relating to the Master Association. We assume that this request is being made in connection with the proposed sale transaction between Commerce and Lennar. Upon final resolution of the Declarant rights issues and written confirmation from Commerce and Lennar that the property being acquired by Lennar will be annexed to the Master CC&Rs and made a part of the "Property" governed by the Master Association at the closing of the Commerce/Lennar transaction, the Master Association will provide Lennar with access to the information required to be made available to "Unit Owners" under NRS Chapter 116.

Stephen M. Rice, Esq.
Re: Tuscany
November 30, 2012
Page 3

Squire Sanders (US) LLP

On its own behalf and on behalf of each of its affiliates. Dunhill hereby reserves all rights and remedies available at law or in equity in connection with the issues and claims raised in your letter.

Very truly yours,

SQUIRE SANDERS (US) LLP

Bart J. Page

bjp

# EXHIBIT "J"

## FIRST AMENDMENT TO PURCHASE AGREEMENT
## AND ESCROW INSTRUCTIONS

This First Amendment to Purchase Agreement and Escrow Instructions ("**First Amendment**"), is made as of _____, 2012 by and between Commerce Associates, LLC, a Nevada Limited liability company ("**Seller**"), and Greystone Nevada, LLC, a Delaware limited liability company ("**Buyer**").

## RECITALS

A.      Buyer and Seller have previously entered into a certain Purchase Agreement and Escrow Instructions, dated as of November 1, 2012 (the "**Agreement**"), concerning certain Property described therein located in the City of Henderson, Nevada.

B.      By letter dated November 19, 2012, Las Vegas Land Holdings, LLC and its affiliates (collectively, "**Dunhill**") made certain claims with regard to the common elements of the Tuscany Master Planned Community as follows (the "**Dunhill Common Element Claims**"):

> [T]here are several common elements that still need to be conveyed [by Seller] to the Master Association (the "Outstanding Common Elements"), and there is also a parcel of Land that still needs to be conveyed [by Seller] to the Tuscany Golf Club (the "Golf Club Parcel"). Dunhill and Commerce have previously identified each of the foregoing Outstanding Common Elements and the Golf Club Parcel. In addition, the improvements to some of the forgoing Outstanding Common Elements still need to be inspected and formally accepted by the Master Association so that the Master Association can take over the maintenance and repair of such improvements.

C.      On November 30, 2012, attorneys for The Rhodes Companies, LLC, which is now an affiliate of Dunhill, filed a "Motion of the Reorganized Debtors for Entry of an Order Enforcing the Terms of the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, Et Al, and the Related Confirmation Order" (Bankruptcy Case No. 09-14814-LBR) (the "Bankruptcy Motion"), seeking to invalidate the Conditional Assignment and Grant of Rights which is the basis for the proposed transfer of declarant rights to Buyer pursuant to the Agreement.

D.      Pursuant to the Agreement, the Feasibility Period expires on December 3, 2012, and Buyer has requested assurance from Seller and from Tom Gonzales, being a principal of Seller, that Buyer will have no responsibility for the Dunhill Common Element Claims, and Buyer has further requested assurance from Seller that Seller will oppose the Bankruptcy Motion.

E.      Buyer and Seller desire to amend the Agreement as set forth herein.

1

NOW THEREFORE, in consideration of the foregoing recitals and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller agree as follows:

1.    **Indemnity**.  From and after the Closing, Seller shall indemnify, defend, and hold Buyer, together with its principals, employees, agents, and affiliates, as the case may be, harmless from and against all liability, loss, damage, costs and expenses, including, without limitation, court costs and reasonable attorneys' fees, which may be suffered or incurred by Buyer arising from or in connection with the Dunhill Common Element Claims.  From and after the Closing, Commerce further agrees to continue to work diligently and in good faith with Dunhill to resolve the Dunhill Common Element Claims.  Buyer shall give Seller prompt written notice of any correspondence, inquiry, action, suit, proceeding, claim, demand or assessment received by Buyer which might give rise to a claim by Buyer pursuant to this Paragraph 1, and Buyer shall cooperate in good faith, but at no cost or obligation to Buyer, with Seller's efforts to resolve all such matters.   The obligations of Seller hereunder (and the obligations of Tom Gonzales pursuant to his joinder in this First Amendment below) shall terminate and be of no further force or effect upon the third year anniversary of the date of the Closing.

2.    **Bankruptcy Motion**.  Seller agrees to diligently and in good faith oppose, at Seller's cost, the Bankruptcy Motion by filing an opposition thereto, by appearing at the hearing on the Bankruptcy Motion which is now scheduled for January 10, 2013 and by taking such other actions as a commercially reasonable property owner would take with respect thereto.  Buyer shall cooperate with Seller efforts hereunder, at Buyer's cost, and shall cause Buyer's attorneys to consult with Seller's attorneys with the goal of presenting and arguing the best opposition to the Bankruptcy Motion. Buyer's cooperation may include becoming a party to such opposition if Seller is found no longer to be a real party in interest after the Closing. The obligations of Buyer and Seller hereunder shall continue after the Closing until such time as the Bankruptcy Court issues its order with respect to the Bankruptcy Motion. If an order is entered and is then appealed, Seller shall, at the request of Buyer, cooperate in such appeal but shall not be obligated to incur any cost, expense or any additional obligation with respect thereto.

3.    **Assignment of Declarant Right**.  Seller and Buyer agree that the Assignment of Declarant Right shall be substantially in the form of the Notice of Assignment of Rights Under Conditional Assignment and Grant of Rights, and Assignment of Rights as Master Developer which is attached hereto as Exhibit 1.

4.    **Miscellaneous**.  This First Amendment may be executed in any number of counterparts, each of which when executed and delivered shall be an original, but all such counterparts shall constitute one and the same agreement.  Any signature page of this First Amendment may be detached from any counterpart without impairing the legal effect of any signatures thereon, and may be attached to another counterpart, identical in form thereto, but having attached to it one or more additional signature pages. Capitalized terms used in this First Amendment and not defined in this First Amendment have the meanings ascribed to them in the Agreement. Except as amended by this First Amendment, the Agreement remains unchanged and in full force and effect.  The terms of this First Amendment are confidential and, except as otherwise required by court order, shall not be disclosed by Buyer to any party without the prior written approval of Seller.

IN WITNESS WHEREOF, the Buyer and Seller have executed this First Amendment as of the date first above stated.

Buyer:                                          Seller:

GREYSTONE NEVADA, LLC               COMMERCE ASSOCIATES, LLC,
A Delaware limited liability company      a Nevada limited liability company

By:_____         By: _____
Name:_____         Name: _Tom McManus_____
Title:_____          Title: _Manager_____

The undersigned, being a principal of Seller, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby agrees to be jointly and severally responsible for the performance of the obligations of Seller, and for the payment of any and all sums owing by Seller, with respect to the obligations set forth in Paragraph 1 above of this First Amendment.

_Tom Gonzales_
Tom Gonzales

By Stephen M. Rice
Authorized Representative

IN WITNESS WHEREOF, the Buyer and Seller have executed this First Amendment as of the date first above stated.

Buyer:                                          Seller:

GREYSTONE NEVADA, LLC                           COMMERCE ASSOCIATES, LLC,
A Delaware limited liability company            a Nevada limited liability company

By: _____                  By: _____
Name: **Jeremy Parness**                        Name:_____
Title: **Authorized Agent**                     Title:_____

The undersigned, being a principal of Seller, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby agrees to be jointly and severally responsible for the performance of the obligations of Seller, and for the payment of any and all sums owing by Seller, with respect to the obligations set forth in Paragraph 1 above of this First Amendment.


_____

Tom Gonzales

<u>**Exhibit 1**</u>

Form of Assignment of Declarant Right

APNs: 160-32-110-001, et al.

WHEN RECORDED MAIL TO:

Rice Silbey Reuther & Sullivan, LLP
3960 Howard Hughes Parkway, Ste. 700
Las Vegas, NV 89169
Attn: Renee R. Reuther, Esq.

**NOTICE OF ASSIGNMENT OF RIGHTS UNDER CONDITIONAL ASSIGNMENT AND
GRANT OF RIGHTS, AND ASSIGNMENT OF RIGHTS AS MASTER DEVELOPER**

This Notice of Assignment of Rights Under Conditional Assignment and Grant of Rights and Assignment of Rights as Master Developer (this "<u>Instrument</u>") is made and delivered by COMMERCE ASSOCIATES, LLC, a Nevada limited liability company ("<u>Assignor</u>"), in favor of GREYSTONE NEVADA, LLC, a Delaware limited liability company ("<u>Assignee</u>"), to be effective as of the date this Instrument is recorded in the Official Records of the Clark County, Nevada Recorder ("<u>Effective Date</u>").

**RECTIALS**

A.      On or about November 14, 2003, Assignor and Rhodes Design and Development Corporation, a Nevada corporation ("<u>Rhodes</u>") entered into that certain Purchase Agreement and Grant of Options, as amended (the "<u>Purchase Agreement</u>").

B.      As set forth in the Purchase Agreement, Assignor also agreed to grant Rhodes one or more options to purchase certain additional real property located in the master planned community known as Tuscany (collectively, "<u>Option Parcels</u>").

C.      Pursuant to the Purchase Agreement, on or about July 28, 2005, Rhodes with the consent of Assignor, recorded that certain Master Declaration of Covenants, Conditions, and Restrictions and Reservation of Easements for Tuscany Residential Community, recorded in Book 20050728 as Instrument 0004296 in the Official Records of the Clark County, Nevada Recorder (the "<u>Master Declaration</u>"). The Master Declaration identifies Rhodes as the "declarant" thereunder and identifies Assignor as the "master developer" thereunder.

D.      The real property described on Exhibit A to the Master Declaration as the "Initial Phases" includes real property conveyed to Rhodes by Commerce pursuant to the Purchase Agreement; and the real property described on Exhibit C to the Master Declaration as the "Land Subject to Annexation" includes all or a portion of the Option Parcels.

4

E.      Pursuant to the Purchase Agreement, on or about December 19, 2005, Rhodes executed and delivered that certain Conditional Assignment and Grant of Rights, for the benefit of Assignor, as recorded on December 19, 2005, in Book 20051219 as Instrument 0004171 in the Official Records of the Clark County, Nevada Recorder (the "Conditional Assignment"), whereunder, among other things, Assignor was granted the right to become the "Declarant" under the Master Declaration, and the right to accept or reject all or any of the Declarant's Rights (as defined in the Conditional Assignment), in the event that Rhodes did not acquire all of the Option Parcels, subject to Assignor's right to accept, reject, or limit the transfer of such right(s).

F.      As of the Effective Date, Rhodes has not acquired the portion of the Option Parcels described on Exhibit A attached hereto (the "Subject Property"). The Subject Property is owned by Assignor and Rhodes no longer has any option rights to acquire the Subject Property.

G.      Pursuant to the terms of the Conditional Assignment, Assignor has the present right to exercise its right to exclusively assume the Declarant's Rights under the Declaration, but Assignor has not yet exercised such rights.

H.      Assignor's right to transfer or assign its rights under the Conditional Assignment is not restricted or prohibited by the terms of the Conditional Assignment.

I.      In anticipation of the conveyance of the Subject Property to Assignee, Assignor now desires to assign to Assignee its rights under the Conditional Assignment and conditionally assign its rights as "master developer" under the Master Declaration (the "Master Developer Rights").

NOW, THEREFORE, Assignor hereby makes the following elections and agreements:

1.      Notice of Termination Event. Notice is hereby given that a "Termination Event" has occurred under the Conditional Assignment because Rhodes has not timely acquired all of the Option Parcels, specifically, the Subject Property, and has no right to do so.

2.      Assignment. Effective as of the Effective Date, Assignor hereby assigns and transfers to Assignee, all rights that Commerce may have under the Conditional Assignment, including but not limited to (a) the right to terminate Rhodes's rights as Declarant under the Master Declaration; and (b) the right to accept and assume any or all of Rhodes's rights as Declarant in and under the Master Declaration, including but not limited to, special declarant's rights (NRS 116.089, formerly NRS 116.110385), developmental rights (NRS 116.039, formerly NRS 116.11034), the right to maintain models, offices for sales and signs (NRS 116.2115), and (c) the right and ability to thereafter exercise any of such assumed rights.

3.      Limitations. The assignment made under Section 2 is expressly made subject to the following limitations: (a) by this Instrument, Assignor does not assume and shall not be deemed to have assumed all or any of the Declarant's Rights and does not become Declarant, and (b) by this Instrument, Assignee does not assume and shall not be deemed to have assumed any of the Declarant's Rights, and does not become Declarant, but rather Assignee shall have the right, but not the obligation, to assume or reject any of the Declarant's Rights and to designate itself as Declarant in the future by recording an instrument signifying its desire to assume or reject such Declarant's Rights or to designate itself as Declarant, and (c) in connection with any future assumption of Declarant's Rights, Assignee may declare its intention to hold such Declarant's Rights solely for transfer to another person to the fullest extent permitted under NRS 116.31043(4).

5

4.    Liability.  This Instrument shall not operate to relieve Rhodes of any obligation, liability or warranty arising under the Master Declaration, NRS Chapter 116 or under the Conditional Assignment.

5.    Agreement Regarding Rights as Master Developer.  Assignor is identified as the "Master Developer" under the Master Declaration.  Acting in such capacity Assignor does hereby grant to Assignee all rights, approvals and permissions that Master Developer is authorized to provide to any homebuilder or owner of real property under the Master Declaration, in connection with Assignee's anticipated acquisition, development and sale of, inter alia, the Subject Property.  Moreover, Assignor agrees to execute and deliver to Assignee any documents or instruments that may be necessary or appropriate to evidence such approvals, rights and permissions.

6.    No Prior Transfer.  Assignor represents and warrants to Assignee as of the Effective Date:  (a) that the Assignor has not previously assigned, pledged or transferred any of the Declarant Rights, or any rights as Master Developer, or any of its rights or interests with respect to the Conditional Assignment, to any person or entity; (b) to the best of Assignor's knowledge, that the Conditional Assignment remains in full force and effect, Assignor possesses the Declarant Rights and rights with respect to the Conditional Assignment, and Assignor has full and exclusive right and power to assign its rights under the Conditional Assignment, and (c) that Assignor possesses the Master Developer rights and has full and exclusive right and power to transfer and assign to Assignee the Master Developer rights.

7.    Not Affiliates.  Assignor represents and warrants that Rhodes and Assignor are not affiliates within the meaning of NRS 116.31034.  Assignee further represents and warrants that to its knowledge Assignee and Assignor are not affiliates within the meaning of NRS 116.31034.

8.    Governing Law; Assigns.  This Instrument shall be governed by the laws of the State of Nevada and shall be binding upon, and shall inure to the benefit of Assignee, Assignor, and their respective successors and assigns.

9.    Severability.  If any provision of this Instrument shall be held to be invalid or unenforceable, the rest of the Instrument shall be enforced without the invalid or the unenforceable provision.

6

IN WITNESS WHEREOF, Assignor has executed and delivered this Instrument to be effective as of the Effective Date.

ASSIGNOR:

COMMERCE ASSOCIATES, LLC,
a Nevada limited liability company

By:_____
Name:_____
Title:_____

STATE OF NEVADA

COUNTY OF CLARK

This    instrument    was    acknowledged    before    me    on    _____,    2012    by _____ as _____ of Commerce Associates, LLC, a Nevada limited liability company.

_____
Notary Public

My commission expires: _____

7

EXHIBIT "A"

LEGAL DESCRIPTION OF THE SUBJECT PROPERTY

The land referred to is situated in the County of Clark, State of Nevada, and is described as follows:

Parcel 1:

Lot 5 of Palm City Phase 1, as shown by map thereof on file in Book 94 of Plats, Page 19, in the Office of the County Recorder of Clark County, Nevada as amended by that certain Certificate of Amendment recorded October 3, 2001 in Book 20011003 of Official Records, Clark County, Nevada, as Instrument No. 00932.

That portion of the South Half (S 1/2) of the Southwest Quarter (SW 1/4) of Section 32, Township 21 South, Range 63 East, M.D.M., described as follows:

Lot 3-2 as shown by map thereof in File 102 of Parcel Maps, Page 60, in the Office of the County Recorder, Clark County, Nevada.

Excepting therefrom all that real property as conveyed to the City of Henderson by deed recorded July 19, 2006 in Book 20060719 as Instrument No. 001752.

PARCEL 2A:

LOTS FIVE (5) THROUGH FIFTEEN (15), EIGHTY-FOUR (84) THROUGH NINETY (90), INCLUSIVE IN BLOCK ONE (1), LOTS ONE HUNDRED SEVENTY-TWO (172) THROUGH ONE HUNDRED SEVENTY-FIVE (175), INCLUSIVE IN BLOCK THREE (3), LOTS TWO HUNDRED SIX (206) THROUGH TWO HUNDRED EIGHT (208), INCLUSIVE IN BLOCK FOUR (4) OF FINAL MAP OF TUSCANY PARCEL 6A (FORMERLY KNOWN AS PALM CITY-PHASE 2 LOT 6A) AS SHOWN BY MAP THEREOF ON FILE IN BOOK 138 OF PLATS, PAGE 20, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL 2B:

LOTS ONE-A (1A) AND TWO-A (2A), INCLUSIVE IN BLOCK ONE (1) OF THE AMENDED FINAL MAP OF TUSCANY PARCEL 17 (FORMERLY KNOWN AS PALM CITY-PHASE 1 LOT 17) AS SHOWN BY MAP THEREOF ON FILE IN BOOK 139 OF PLATS, PAGE 34, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL 2C:

LOTS THREE (3) THROUGH SEVENTEEN (17) AND TWENTY-ONE (21), INCLUSIVE IN BLOCK ONE (1) OF FINAL MAP OF TUSCANY PARCEL 17 (FORMERLY KNOWN AS PALM CITY-PHASE 1 LOT 17) AS SHOWN BY MAP THEREOF ON FILE IN BOOK 129 OF PLATS, PAGE 1, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

LV419,785,203 V3

U:\Commerce Associates\Notice of Acceptance of Dec Rights (Commerce Assoc) v2.doc

8