James I. Stang, Esq. (CA Bar No. 94435)                E-File:  November 14, 2013
Shirley S. Cho, Esq. (CA Bar No. 192616)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: jstang@pszjlaw.com
        scho@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & ZIRZOW LLC
810 S. Casino Center Blvd. Ste 101
Las Vegas, NV 89101
Telephone:  702/382-1170
Facsimile:   702/382-1169
Email: zlarson@lzlawnv.com

Attorneys for Reorganized Debtors

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1]<br><br>                    Debtors.<br><br>Affects:<br>☒       All Debtors<br>☐       Affects the following Debtor(s) | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>Hearing Date:  December 18, 2013<br>Hearing Time: 2:00 p.m.<br>Response Deadline:  December 4, 2013<br>Courtroom 1 |

[1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf and Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

**MOTION OF REORGANIZED DEBTORS FOR ENFORCEMENT OF PLAN INJUNCTION UNDER THE FIRST LIEN STEERING COMMITTEE'S THIRD AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE RHODES COMPANIES LLC, ET AL. AGAINST CITY OF HENDERSON; DECLARATIONS IN SUPPORT THEREOF**

The Reorganized Debtors hereby move (the "Motion") for entry of an order enforcing the injunction and discharge provided for in the confirmed *First Lien Steering Committee's Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies LLC, et al.* (the "Plan"), against creditor The City of Henderson.  In support of the Motion, the Reorganized Debtors respectfully represent as follows:

**Preliminary Statement**

1.      The Debtors have been successfully operating as Reorganized Debtors under the Plan of reorganization confirmed by this Court over 3.5 years ago.  The principal business of the Reorganized Debtors is the construction and sale of new homes through its affiliate, Las Vegas Land Contracting, LLC, a Delaware limited liability company dba Dunhill Homes ("Dunhill Homes"), which entity was formed in accordance with the Plan.

2.      The City of Henderson ("Henderson") and Commerce Associates, LLC ("Commerce") entered into that C-1 Channel Phase 3 Agreement on December 14, 2004 (the "Commerce Agreement") whereby Commerce agreed to pay to Henderson certain sums of money in connection with Commerce's development of the master planned community named Tuscany, portions of which have been acquired over a period of time by certain of the Debtors.  Henderson recorded the Commerce Agreement against certain plots of land in Tuscany in 2006.  Commerce has apparently never paid Henderson what it was obligated to pay via two installments due in 2005 under the Commerce Agreement.

3.      Prior to and after the confirmation of the Plan in 2010, Henderson approved subdivision maps and other entitlements for land owned by the Debtors within Tuscany, and the Reorganized Debtors, through Dunhill Homes, have been constructing and selling homes in Tuscany since the confirmation of the Plan.

4.      Recently, Henderson stated that it would not approve a reversionary map for a parcel within Tuscany owned by one of the Debtors until amounts due under the Commerce Agreement are paid.  Additionally, the Reorganized Debtors intend to continue constructing homes within Tuscany on parcels owned by the Reorganized Debtors, which will require Henderson to process and approve additional subdivision maps.

5.      Henderson's requirement that the Reorganized Debtors pay claims that were discharged by the Plan prior to granting approvals to the Reorganized Debtors impedes the development of the Reorganized Debtors' land in Tuscany.  Despite at least two requests from the Reorganized Debtors, Henderson has refused to cease and desist its conduct, which is in violation of the Plan.

6.      If any of the Debtors ever had any obligation under the Commerce Agreement to pay amounts due to Henderson on behalf of Commerce, such obligation was discharged by the Plan, and all of the Debtor's assets (including without limitation the real property within Tuscany) were transferred to the Reorganized Debtors free and clear of any liens or encumbrances benefitting Henderson.  Henderson received notice of the commencement of the Debtors' bankruptcy cases, the bar date, the Plan confirmation hearing, and the notice of the effective date.  Yet, Henderson chose to sit on its rights for eight years and is now acting in violation of this Court's federal injunction, discharge, and release approved under the Plan.

7.      Accordingly, the Reorganized Debtors respectfully request that the Court enter an order in the form attached hereto directing that Henderson comply with this Court's Plan and federal injunction and discharge enjoining third parties from interfering with the Reorganized Debtors' assets on account of Henderson's pre-petition claim.  The Reorganized Debtors reserve the right to seek damages against Henderson at a future date and time and such relief is not requested by the instant Motion.

### Background and Jurisdiction

8.      On March 31, 2009 and April 1, 2009, The Rhodes Companies, LLC, aka "Rhodes Homes," et al. (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of

title 11 of the Bankruptcy Code in the United States Bankruptcy Court, District of Nevada, and their cases are being jointly administered under Case No. BK-S-09-14814-LBR.

9.    The *First Lien Steering Committee's Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies LLC, et al.* (the "Plan") was confirmed by Order of this Court on March 12, 2010.  [Docket No. 1053]  The Effective Date of the Plan occurred on April 1, 2010.  [Docket No. 1079]

10.    Pursuant to Article IX of the Plan, this Court retained the jurisdiction to implement the releases, injunctions, and other provisions of the Plan and to implement any order as may be necessary in aid of the Plan.  *Id.* (Plan at Art. IX).

**Henderson Received Notice of All Relevant Bankruptcy Events**

11.    Henderson was scheduled as a contingent, unliquidated general unsecured claim in three of the Debtors' cases.  *See* Case No. 09-14846, Rhodes Design and Development Corporation, Docket No. 12, Schedule F at page 20 of 154; Case No. 09-14844, Rhodes Ranch General Partnership, Docket No. 11, Schedule F at page 16 of 121; Case No. 09-14850, Tuscany Acquisitions III, LLC, Docket No. 11, Schedule F at page 14 of 37.

12.    Henderson was served with a copy of the *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines*, which also set the bar date in these cases as August 5, 2009 (the "Notice of Commencement").  *See* Certificate of Service, at pages 47 and 315 of 390, and page 361 of 374 [Docket No. 1790].

13.    Henderson failed to file a proof of claim in any of the Debtors' bankruptcy cases.  *See* attached Declaration of Shirley S. Cho at ¶ 3.

14.    Henderson also received notice of the Plan confirmation hearing and Plan.  *See* Certificate of Service, at page 85 of 471 [Docket No. 519].

15.    Finally, Henderson received Notice of the Effective Date.  *See* Certificate of Service, at pages 3, 15 and 25 of 37 [Docket No. 1082].

**Present Dispute with City of Henderson**

16.     Henderson and Commerce entered into the Commerce Agreement on December 14, 2004.  A copy of the Commerce Agreement is attached as **Exhibit 1** to the Declaration of Donald Boettcher (the "Boettcher Decl.") attached hereto.

17.     The Commerce Agreement provides for Commerce to pay an impact fee to Henderson attributable to water drainage at Tuscany in the total amount of $934,000, payable in two installments on May 31, 2005 and November 30, 2005.  *See* Ex. 1 (Agrmt. at ¶¶ 3.1, 3.3).  Upon information and belief, Commerce failed to pay Henderson such amounts.  On March 22, 2006, Henderson recorded the Commerce Agreement with the Clark County Recorder's Office.  *Id.*

18.     The Reorganized Debtors are not a party to the Commerce Agreement, but the Commerce Agreement is recorded against land owned by the Debtors in the Tuscany development.

19.     The Reorganized Debtors must obtain approvals for subdivision maps and other matters in order to continue development of their land within Tuscany for the construction and sale of new homes.  Boettcher Decl. at ¶ 5.  Henderson has taken the position that it will withhold approvals on subdivision maps until amounts due under the Commerce Agreement are paid.  *Id.*; *see* Ex. 2 (Letter of Transmittal from Henderson).

20.     Prior to the filing of this Motion, the Reorganized Debtors provided Henderson with notice of the Reorganized Debtors' position that Henderson's conduct is in violation of this Court's Confirmation Order and Plan and that Henderson is bound by the federal Plan injunction now in effect.  *Id.* at ¶ 10; Exs. 3 and 4.

21.     As of the Date of filing of this Motion, the City of Henderson has not agreed to cease and desist its conduct.  *Id.* at ¶ 8.

**Summary of Relevant Plan Provisions**

22.     Upon the Effective Date of the Plan, all of the Debtors' assets were vested in the Reorganized Debtors "free and clear of all Liens, Claims, charges, or other encumbrances."  Specifically, the Plan provides:

> D.     **Vesting of Assets in the Reorganized Debtors**:  Except for
> any Claims or Causes of Action transferred to the Litigation Trust and
> unless otherwise provided in the Plan or any agreement, instrument, or

other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan <u>shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances</u>.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Plan at Article IV.D. (emphasis added).

23.    The Plan also provides the Debtors with a statutory discharge of any claim that could have been asserted prior to April 1, 2010 against the Debtors pursuant to the Bankruptcy Code section 1141(d), whether or not a proof of claim was filed on behalf of the creditor.  Specifically, the Plan states:

A.    **<u>Discharge of Claims and Termination of Interests</u>**: Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of any employee, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed Cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

Plan at Article VIII.A.

24. The Plan also imposes a permanent injunction on the prosecution of any claims or obligations against the Debtors that arose prior to April 1, 2010, regardless of whether or not the claimant asserted a claim against the Debtors or not. Specifically, the Plan provides:

> H. **Injunction**. Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims against the Debtors, and all Entities holding Interests, are permanently enjoined, from and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors or the property or estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors or against the property or Estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests . . . and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Plan at Article VIII.H.

## ARGUMENT

25. The Court should enforce the order confirming the Plan and direct Henderson to cease its pursuit against the Reorganized Debtors for its claim against Commerce and expunge Henderson's encumbrance against the Reorganized Debtors' property. "If an order is to have any true meaning, if a party is to be able to place any justifiable reliance on an order, if a court is to have any credibility and command any respect, then it must enforce its own orders." *In re Malagren*, 277 B.R. 755, 759 (Bankr. E.D. Wis. 2003); *see also In re Continental Airlines, Inc.*, 236 B.R. 318, 325-26 (Bankr. D. Del. 1999), aff'd, 279 F.3d 226 (3d Cir. 2002) (citations omitted) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders."); Fed. R. Bankr. P. 3020(d) ("[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate.").

26.     Section 105(a) of the Bankruptcy Code provides that this Court is authorized to issue any order, process or judgment necessary to carry out the provisions of the Bankruptcy Code, and "gives the bankruptcy court 'the power and the jurisdiction to enforce its valid order.'" *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 266 (3d Cir. 1991) (quoting *In re Rodeo Merch Servs., Inc.*, 111 B.R. 684, 688-89 (N.D. Ill. 1990)).  In the exercise of this authority, courts have inherent powers to enforce compliance with and execution of their lawful orders.  *See, e.g., Alderwood Group Inc. v. Garcia*, 682 F.3d 958 (11th Cir. 2012) (citing, inter alia, *Travelers Indemnity, supra, and Cont'l Ill. Nat'l Bank v. Chicago*, 294 U.S. 648, 675, 55 S. Ct. 595, 606, 79 L. Ed. 1110 (1935) ("The power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is inherent in a court of bankruptcy, as it is in a duly established court of equity.")); *In re Chateaugay Corp.*, 301 B.R. 48, 71 (S.D.N.Y. 1966) (enjoining a state court action that contravened bankruptcy court's sale order); *see also Hardy v. United States*, 97 F.3d 1384, 1389 (11th Cir. 1996) ("[A] bankruptcy court may issue orders to obviate conduct that stands to frustrate administration of the Bankruptcy Code.").

27.     In the context of enforcing a confirmed plan, section 1142(b) of the Bankruptcy Code permits the Court to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Plan and the Bankruptcy Code.  11 U.S.C. § 1142(b); *Pioneer Liquidating Corp. v. U.S. Trustee (In re Consol. Pioneer Mortgage Entities)*, 248 B.R. 368, 384 (B.A.P. 9th Cir. 2000).  Indeed, this Court has "broad power" under section 1142(b) to enforce the terms of a confirmed plan and to ensure that the plan is being implemented consistent with the terms of the plan.  *See Gordon Sel-Way, Inc. v. United States (In re Gordon Sel-Way, Inc.)*, 370 F. 3d 280, 289 (6th Cir. 2001) ("11 U.S.C. § 1142 provides bankruptcy courts with broad power to enforce the terms of a confirmed plan"); *see also Hillis Motors, Inc. v. Haw Auto. Dealers' Ass'n*, 997 F.2d 581, 587 n. 11 (9th Cir. 1993) ("Regardless of any plan provision, a bankruptcy court has statutory jurisdiction under 11 U.S.C. § 1142(b) to ensure that any act necessary for the consummation of the plan is carried out and it has continuing responsibilities to satisfy itself that the plan is being properly implemented.") (citations omitted).

28.     Apparently, after having sat on its rights to pursue a breach of contract against Commerce for over 8 years, Henderson has now determined that it will look to the Reorganized Debtors to pay Commerce's debt.  But, the Plan expressly provides that upon the Effective Date, (i) all pre-Effective Date obligations that could have been asserted against the Debtors were discharged under section 1141 of the Bankruptcy Code; (ii) all assets of the Debtors were vested in the Reorganized Debtors "free and clear of all Liens, Claims, charges or other encumbrances; and (iii) all third parties are enjoined pursuant to the Plan injunction from interfering with the Reorganized Debtors' assets and from taking any actions to collect on such discharged claims, regardless of whether or not a claim was filed by such claimant.

29.     The Plan is unequivocal and Henderson's actions to interfere with the Reorganized Debtors' assets should not be countenanced by this Court.

**CONCLUSION**

WHEREFORE, the Reorganized Debtors respectfully request that the Court enter an Order enforcing the Plan provisions against the City of Henderson substantially in the form attached hereto.

DATED this 14th day of November, 2013.

**LARSON & ZIRZOW LLC**


 _/s/ Zachariah Larson, Esq._
Zachariah Larson, Bar No. 7787
810 S. Casino Center Blvd. Ste 101
Las Vegas, NV 89101
Telephone:  702/382-1170
Facsimile:  702/382-1169
Email:      zlarson@lzlawnv.com

-and-

Shirley S. Cho
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone:  310/277-6910
Facsimile:  310/201-0760
Email:  scho@pszjlaw.com

Attorneys for Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: BK-S-09-14814-LBR |
| | (Jointly Administered) |
| THE RHODES COMPANIES, LLC, aka | |
| "Rhodes Homes," et al.,[1] | Chapter 11 |
| Debtors. | |
| Affects: | Hearing Date: December 18, 2013 |
| ☒  All Debtors | Hearing Time: 2:00 p.m. |
| ☐  Affects the following Debtor(s): | Courtroom 1 |

**ORDER GRANTING MOTION OF REORGANIZED DEBTORS FOR
ENFORCEMENT OF PLAN INJUNCTION UNDER THE FIRST LIEN STEERING
COMMITTEE'S THIRD AMENDED MODIFIED PLAN OF REORGANIZATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE RHODES
COMPANIES LLC, ET AL. AGAINST CITY OF HENDERSON**

Upon consideration of the Motion of Reorganized Debtors for Enforcement of Plan

Injunction Under the First Lien Steering Committee's Third Amended Modified Plan of

Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies LLC,

---

[1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

et al. against City of Henderson (the "Motion")[2] filed by the above-captioned reorganized debtors (collectively, the "Debtors"); due and proper notice having been provided to all interested parties and good cause appearing,

IT IS HEREBY ORDERED THAT:

1.      The Motion is Granted.

2.      City of Henderson ("Henderson") is enjoined from interfering with the Debtors' assets on account of any pre-petition claim arising from that certain C-1 Channel Phase 3 Agreement, dated as of December 14, 2004, between Henderson and Commerce Associates, LLC (the "Commerce Agreement"), which was recorded in the records of the Clark County Nevada Recorder as Instrument No. 0002271 in Book 20060322.

3.      Any obligation or liability of the Debtors under the Commerce Agreement was discharged by the *First Lien Steering Committee's Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies LLC, et al*, which confirmed by Order of the Court on March 12, 2010 and became effective on April 1, 2010.

4.      The Commerce Agreement is hereby expunged from any real property owned by the Debtors.

5.      This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

**DECLARATION OF SHIRLEY S. CHO**

2      I, Shirley S. Cho, declare as follows:

3      1.      I am an attorney admitted to practice law in the State of California and before this

4  Court and am of counsel to the firm of Pachulski Stang Ziehl & Jones LLP ("PSZJ" or the "Firm"),

5  attorneys for the Reorganized Debtors. I submit this Declaration in support of the *Motion of*

6  *Reorganized Debtors for Enforcement of Plan Injunction Under the First Lien Steering Committee's*

7  *Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for*

8  *the Rhodes Companies LLC, et al. Against City of Henderson* (the "Motion")[1].

9      2.      I, or someone at the Firm at my direction, has reviewed the Court's docket to

10  ascertain the manner in which Henderson was scheduled in the Debtors' cases and the service

11  received by Henderson. Paragraphs 11 through 15 of the Motion accurately set forth the manner in

12  which Henderson was scheduled in the Debtors' cases and the service received by Henderson. The

13  relevant excerpts cited in the Motion are set forth at **Exhibit 5** hereto for the Court's convenience.

14      3.      I, or someone at the Firm at my direction, has reviewed the Court's claims register in

15  the Debtors' bankruptcy cases. Henderson failed to file a proof of claim in any of the Debtors'

16  bankruptcy cases.

17      I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and

18  correct to the best of my knowledge, information, and belief.

19      Executed this 14th day of November, 2013, at Los Angeles, California.

20

21                                          _____

22                                          Shirley S. Cho

23

24

25

26

27

28  _____

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

## DECLARATION OF DON BOETTCHER

I, Don Boettcher, declare as follows:

1.      I am the President of Dunhill Homes, the entity by which the Reorganized Debtors are conducting their business after the Efffective Date.  I am over the age of 18 years and if called upon, I can and will competently testify to the facts stated herein from my own personal knowledge, or based on a review of the files regularly maintained by the Reorganized Debtors, and the documents produced in these cases thus far.  I submit this Declaration in support of the *Motion of Reorganized Debtors for Enforcement of Plan Injunction Under the First Lien Steering Committee's Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies LLC, et al. Against City of Henderson* (the "Motion")[1].

2.      Henderson and Commerce entered into that C-1 Channel Phase 3 Agreement on December 14, 2004 (the "Commerce Agreement").  Payment of $934,000 was due from Commerce to Henderson in two installments of $467,000 each in 2005.  On March 22, 2006, Henderson recorded the Commerce Agreement with the Clark County Recorder's Office.  A copy of the Commerce Agreement is attached hereto as **Exhibit 1**.

3.      The Reorganized Debtors are not a party to the Commerce Agreement, but the Commerce Agreement is recorded against land owned by the Debtors in the Tuscany development.

4.      Upon information and belief, Commerce has failed to pay Henderson amounts owing under the Commerce Agreement.

5.      The Reorganized Debtors must obtain approvals for subdivision maps and other matters in order to continue development of their land within Tuscany.  Henderson has taken the position that it will withhold approvals on subdivision maps until amounts due under the Commerce Agreement are paid.  A true and correct copy of the notice I received from Henderson is attached hereto as **Exhibit 2**.

6.      I sent the email attached as **Exhibit 3** hereto to Henderson requesting that Henderson cease and desist its actions on October 17, 2013 or else the instant Motion would be filed.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

7.      I sent the email attached as **Exhibit 4** hereto to Henderson on November 4, 2013 informing Henderson that the Rerorganized Debtors would be filing the instant Motion due to Henderson's non-response.

8.      After sending my second email to Henderson, an Assistant City Attorney from the City of Henderson called me and we spoke on November 13, 2013 by telephone.  The Assistant City Attorney indicated that the City of Henderson was in the process of retaining bankruptcy counsel and therefore could not respond to the Reorganized Debtors' request to cease and desist.  I indicated that due to the timing constraints, the Reorganized Debtors would be filing the instant Motion, but that the Reorganized Debtors would be amenable to continuing any dialogue.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this _13_ day of November, 2013, at Las Vegas, Nevada.

Don Boettcher, President
Dunhill Homes

**EXHIBIT 1 TO BOETTCHER DECLARATION**



APN: 160-29-401-001

⑱

20060322-0002271

Fee: $31.00
N/C Fee: $0.00

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:
City of Henderson
City Clerk's Office
240 Water Street, No. 102
Henderson, Nevada 89015

03/22/2006            12:33:21
T20060050774
Requestor:
    HENDERSON CITY

Frances Deane              DGI
Clark County Recorder     Pgs: 18

## C-1 CHANNEL PHASE 3 AGREEMENT

THIS **C-1 CHANNEL PHASE 3 AGREEMENT** (the "Agreement") is made and entered as of this 14th day of December, 2004, by and between the **CITY OF HENDERSON**, a municipal corporation of the State of Nevada (the "City"), and **COMMERCE ASSOCIATES, LLC**, a Nevada limited liability company ("Commerce"), with reference to the following facts and purposes:

### RECITALS

A.    Commerce is the master developer of a mixed use planned community in Henderson, Nevada, commonly known as "Tuscany", which property is more particularly described on Exhibit A attached hereto and incorporated herein by reference ("Tuscany").

B.    In connection with the development of Tuscany, the City has required and Commerce has caused to be completed Phases 1 and 2 of a water drainage facility, commonly known as the C-1 Channel, which carries storm water runoff from Tuscany and other properties not owned by Commerce or part of Tuscany. The C-1 Channel is depicted on Exhibit B attached hereto and incorporated herein by reference (the "C-1 Channel").

C.    As part of the continued development of Tuscany, the City will require construction of the final segment of the C-1 Channel, Phase 3 ("Phase 3"). Said Phase 3 construction will occur on property not owned by Commerce or the City. The Phase 3 improvements will connect the completed C-1 Channel, Phases 1 and 2, to the Las Vegas Wash. Phase 3 is depicted on Exhibit C attached hereto and incorporated herein by this reference.

D.    The Las Vegas Wash Coordination Committee (LVWCC) was formed in October 1998 to bring together all interested parties to address the many issues related to the Las Vegas Wash. A Cooperative Agreement pertaining to the long term management and enhancement of the Las Vegas Wash has been developed by the Southern Nevada Water Authority ("SNWA"), the City, Clark County, City of Las Vegas, City of North Las Vegas, Clark County Sanitation District, and Clark County Regional Flood Control District. The Agreement established roles and responsibilities for the above agencies in managing the Las Vegas Wash.

E.    Pursuant to the Las Vegas Wash Comprehensive Adaptive Management

Plan, executed in 1999 ("LVWCAMP"), SNWA is the lead agency responsible for entering into interlocal or other agreements with various agencies as necessary to implement the LVWCAMP.

F.    Pursuant to, among other provisions, NRS 278.320 *et seq.*, and Title 19 of the Henderson Municipal Code, the City is authorized to consider approval of subdivisions of land within the boundaries of the City and construction of improvements such as are contemplated by the Tuscany project, including necessary offsite improvements.

G.    Pursuant to NRS Chapter 277, the City is authorized to enter into interlocal agreements with other governmental authorities, including SNWA.

H.    The City and Commerce desire to enter into a written agreement that specifies, among other things, (1) the obligations of Commerce with respect to the construction of Phase 3, including any and all obligations of Commerce (and Tuscany) with respect to the impact of the C-1 Channel on the Las Vegas Wash, including the cost of design and construction of erosion control improvements to the Las Vegas Wash at the C-1 Channel "Confluence" or "Convergence" (the "Commerce Phase 3 Obligations") and (2) the obligation of the City to enter into an interlocal agreement with SNWA pursuant to which the Commerce Phase 3 Obligations, as established by this Agreement, are approved by any and all necessary governmental authorities.

I.    Commerce and the City further desire to establish the effect of the Commerce Phase 3 Obligations on the continued development of residences within Tuscany.

J.    The City has determined, in view of the circumstances that are recited herein, that all of the substantive and procedural requirements applicable to its approval of construction of Phase 3 have been satisfied, and that the construction of Phase 3 and completion of the C-1 Channel will benefit the City, as well as the residents of Tuscany and other property owners within the City by providing for comprehensive drainage facilities in accordance with the City's master drainage plan.

## AGREEMENT

NOW, THEREFORE, for and in consideration of the premises of this Agreement and of the mutual promises, agreements and understandings that are hereinafter contained, the City and Commerce enter into this Agreement.

## ARTICLE 1
## DEFINITIONS

For purposes of this Agreement, in addition to terms defined elsewhere in this Agreement, the following words and terms shall have the meanings that are ascribed to them in this Article 1 unless the context in which an individual word or term is used otherwise clearly requires:

1.1    "Agreement" means this Agreement together with all of the exhibits and other attachments that are appended thereto, each of which is, by this reference, made a part hereof, and all of the exhibits, documents and other materials that are not appended hereto but are

2

incorporated herein by reference

    1.2   "City Code" means the municipal code of the City of Henderson, as the provisions thereof are in effect on the Effective Date of this Agreement.

    1.3   "City Council" means the governing body of the City of Henderson

    1.4   "Commerce Phase 3 Obligations" means any and all obligations of Commerce or any other owner of Tuscany with respect to (a) the construction of Phase 3, as set forth in Article 2 below, and (b) the impact of the C-1 Channel on the Las Vegas Wash, the cost of design and construction of erosion control improvements to the Las Vegas Wash at the C-1 Channel "Confluence" or "Convergence" as set forth in Article 3 below. The term is intended to include (i) both construction obligations and obligations to pay money or otherwise make financial contributions or assurances, and (ii) all obligations regarding the C-1 Channel Phase 3 arising under or pursuant to any City approved general plan, zone change, use permit, subdivision map or other City approvals relating to Tuscany, including the Tuscany Land Use Approval

    1.5   "Effective Date" means the date on which this Agreement is fully executed by the authorized representatives of the parties.

    1.6   "Interlocal Agreement" means the agreement to be entered into between the City and SNWA pursuant to which the Commerce Phase 3 Obligations are approved by SNWA for itself and on behalf of all governmental authorities having jurisdiction over the Las Vegas Wash.

    1.7   "Las Vegas Wash" means the channel identified as facility LVMD on the 2002 Clark County Regional Flood Control District Master Plan Update.

    1.8   "NRS" means the Nevada Revised Statutes in effect and amended from time to time.

    1.9   "Parties" means the City and Commerce collectively.

    1.10   "Party" means the City or Commerce individually.

    1.12   "SNWA" means the Southern Nevada Water Authority and any successor governmental or other agency or authority having jurisdiction over the Las Vegas Wash.

    1.13   "Tuscany" means the development described on Exhibit A. The term refers to the master planned community as well as to any and all interests in real property within that community.

    1.14   "Tuscany Land Use Approval" means the CPA-34-00, approved by the City on February 6, 2001, together with any and all amendments thereto.

## ARTICLE II
## CONSTRUCTION OF PHASE 3

3

2.1    Phase 3 Plans.  Concurrently with the approval of this Agreement Commerce will cause plans for Phase 3 to be prepared and submitted to the City of Henderson for review (the "Phase 3 Plans").  The City of Henderson agrees to not unduly delay review and approval of the Plans for Phase 3.

2.2    Construction of Phase 3.  Following the approval of the Phase 3 Plans by the City of Henderson and payment by Commerce of fees and placement of bonds, as described in Paragraph 2.3 below for Phase 3, Commerce shall cause Phase 3 to be constructed in a good and workmanlike condition, lien free and in accordance with the approved Phase 3 Plans.  Commerce shall use commercially reasonable efforts to construct Phase 3 in a prompt time period.  For purposes of clarification, the construction obligations of Commerce with respect to Phase 3 do not proceed beyond the "sheet piling" at the end of the cut off wall, as set forth on the Phase 3 Plans, it being the intention of the Parties that the Commerce Phase 3 Obligations with respect to construction not include any work or improvements to or within the Las Vegas Wash itself.

2.3    Bonds.  Commerce shall provide performance and payment bonds for construction of Phase 3 in accordance with the City of Henderson public works requirements.

2.4    Rights of Way.  The Parties acknowledge that Phase 3 is located offsite from Tuscany and that Tuscany's construction obligations for Phase 3 are subject to obtaining the necessary rights of way for Phase 3.  The City agrees to cooperate with Commerce and support Commerce in its efforts to obtain such rights of way, together with necessary or desirable temporary construction and access easements.

### ARTICLE III
### OBLIGATIONS WITH RESPECT TO LAS VEGAS WASH

3.1    Commerce Phase 3 Monetary Obligations.  The Parties acknowledge that they have discussed the impact, attributable to Tuscany, that water drainage from the C-1 Channel will have on the Las Vegas Wash.  Based on those discussions and having due regard for the impact of Tuscany drainage on the Las Vegas Wash as well as for the overall health, safety and management of the Las Vegas Wash, the Parties have agreed that the sum of $934,000 (the "C-1 Impact Fee") is an appropriate contribution to be made by Commerce, on behalf of Tuscany, to the City for Las Vegas Wash improvements related to the effect, at the C-1 Channel "Confluence" or "Convergence", of Tuscany's use of the C-1 Channel and its impact on the Las Vegas Wash.

3.2    Interlocal Agreement.  The City represents that it has discussed, with SNWA, the impact of the C-1 Channel on the Las Vegas Wash and the amounts to be contributed by Commerce on behalf of Tuscany, and that SNWA and the City have approved the amount of the C-1 Impact Fee.  Promptly following the approval of this Agreement, the City agrees to enter into an Interlocal Agreement with SNWA for the purpose of approving the provisions of this Agreement insofar as they affect the Las Vegas Wash in order to establish any and all construction, financial or other obligations of Commerce and any other owners within Tuscany with respect to the Las Vegas Wash, including improvements or costs related thereto at the C-1 Channel "Confluence" or "Convergence".

3.3    Payment of C-1 Impact Fee.  Commerce shall pay the C-1 Impact Fee to the City, or as the City may direct in accordance with the Interlocal Agreement, in two installments of

4

$467,000. The first installment shall be due and payable on May 31, 2005 and the final installment shall be due and payable on November 30, 2005.

3.4    Limitation.    The Commerce Phase 3 Obligations shall be limited to the obligations set forth in Section 2.2 and 3.3. Without limiting the foregoing, other than the payment of the C-1 Impact Fee, neither Commerce nor any other property owner within Tuscany shall be obligated to make or pay for any improvement to the Las Vegas Wash or to make or pay any amount on account of the development of Tuscany in accordance with the Tuscany Land Use Approval.

## ARTICLE IV
## BUILDING PERMITS

4.1    Building Permits.    The City agrees that building permits for residences within Tuscany may be issued, notwithstanding that Phase 3 has not been constructed.

## ARTICLE V
## BREACH, DEFAULT, AND REMEDIES

5.1    Failure of Timely Performance.    A failure to perform any of the obligations that are set forth in this Agreement in a timely fashion shall be considered to be a breach of this Agreement, except if such failure is excused by (i) the terms of this Agreement, including without limitation the force majeure provisions that are set forth below, or (ii) the written consent of both Parties, which consent may be obtained either before or after the failure to perform occurs.

5.2    "Force Majeure".    A failure to perform any of the obligations that are set forth in this Agreement shall not be considered to be a breach of this Agreement if such failure is due to any factor that is beyond the control, and without the fault, of the Party that fails to perform, including by way of illustration but not in limitation the following: war, insurrection, flood, earthquake, fire, act of God, unusually severe weather, an act or a failure to act on the part of any utility or governmental agent or entity (other than an act or a failure to act on the part of the City, or any officer, employee or agent thereof which shall not excuse the City from any obligation), litigation that relates to the development of any of the various types of land uses that are approved for Tuscany that is initiated by any third party other than Commerce or the City. If the non-performance of one Party due to force majeure precludes the other Party from the timely performance of its obligations, the failure of such other Party to perform its obligations shall also be excused.

5.3    Effect of "Force Majeure".    In the event that either Party is excused from the timely performance of its obligations under this Agreement due to force majeure, the Parties shall meet and negotiate in good faith to establish new deadlines for the performance of each Party's obligations.

5.4    Default.

5.4.1    Any Party shall be considered to be in default if (i) absent any force majeure or excused delay, including without limitation an economic impracticability, such

5

Party breaches any obligation on its part to be performed under this Agreement, (ii) any non-breaching Party properly gives notice of the breach to the breaching Party; and (iii) subject to the provisions of Section 5.4.2, the breach continues for a period of thirty (30) days after such notice has been given without the breaching Party having corrected such breach.

5.4.2    If any breach hereunder is of such a nature that it cannot, with due diligence on the part of the breaching Party, be corrected within such thirty (30) day period, the breaching Party shall not be in default if, within such thirty (30) day period, it commences appropriate remedial action and thereafter prosecutes such action with all due diligence.

5.5    <u>Arbitration</u>    If any controversy develops between the Parties that relates to the interpretation or effect of this Agreement or to the performance or non-performance hereunder by any of the Parties of any of the terms and conditions hereof, that would not result in irreparable harm and cannot be resolved after consultation and discussion between the Parties, the same shall be submitted to arbitration in the State of Nevada in accordance with the rules of the American Arbitration Association that are then in effect. Notwithstanding the requirement that such disputes shall be subject to arbitration, as a precondition to the filing of arbitration, all such claims, disputes and other matters in question between the Parties to this Agreement, arising out of or relating to this Agreement or any breach thereof, shall first be submitted to non-binding mediation prior to initiation of any arbitration unless the Parties mutually agree otherwise. The cost of such mediation shall be split equally between the Parties. This agreement to mediate shall be specifically enforceable under the prevailing laws of the State of Nevada. In instances wherein a complete resolution of the controversy necessarily requires the participation of a third party as a party to the arbitration, the failure of the affected third party to agree to participate in an arbitration as a party pursuant to the provisions of this paragraph shall be deemed to excuse any Party from being bound by the provisions of this section and, in such latter instance or instances, such a controversy would be finally resolved in a court of competent jurisdiction, sitting without a jury, in Clark County, Nevada.

5.6    <u>Remedies</u>.    A judgment on any award that is rendered in arbitration may be entered in any court that has jurisdiction over the Parties. In the event that a default has occurred that the non-breaching Party reasonably believes will result in irreparable harm, such non-breaching Party shall have the right to seek and obtain, in any court of competent jurisdiction, any equitable remedies that may be available.

5.7    <u>Attorney's Fees and Costs</u>.    In any arbitration or legal action, or both, that is instituted between the Parties in connection with this Agreement, the Party that prevails in such arbitration or action shall be entitled to recover from the Party that does not prevail in such arbitration or action all of its reasonable attorney's fees and other legal costs.

## ARTICLE VI
## IMPLEMENTATION

6.1    <u>Appointment of Representatives</u>.    To further the commitment of the parties to cooperate in the implementation of this Agreement, the City and Commerce each shall designate and appoint a representative to act as a liaison between the City and its various departments and Commerce. The initial representative for the City (the "<u>City Representative</u>") shall be the Public

6

Works Director, or his designee, and the initial representative for Commerce shall be Doug Saunders of Commerce Associates or a representative of the general contractor constructing Phase 3. The representatives shall be available at all reasonable times to discuss and review the performance of the parties to this Agreement and the construction of Phase 3.

## ARTICLE VII
## MISCELLANEOUS

7.1    Duration; Recording. Except as is otherwise provided herein, this Agreement shall terminate twenty-five (25) years after the Effective Date. Following the Effective Date, either Party shall have the right to record this Agreement in the Official Records of the Clark County, Nevada Recorder.

7.2    Further Assurances. Each of the Parties agrees to do such other further acts and things and shall execute and deliver, to such other Party as requested, such additional certificates, documents and instruments as the other Party may reasonably require or deem to be advisable in order to carry into effect the purposes of this Agreement or to better assure and confirm unto such other Party its rights, powers and remedies hereunder.

7.3    No Waiver. No failure or delay on the part of either of the Parties in enforcing any provision hereof shall operate as a waiver thereof, nor shall any single or partial enforcement of any of such provisions preclude any other or further enforcement of the same or any other right, or remedy that either of the Parties may have.

7.4    Exclusion of Third Party Beneficiaries. None of the provisions of this Agreement is intended to constitute the general public, or any member thereof, as third party beneficiary hereunder or to authorize anyone who is not a Party or a successor in interest to a Party to maintain any suit for the specific performance of, for damages that arise from the breach of or for personal injuries or property damages pursuant to, the terms and conditions of this Agreement. Notwithstanding the foregoing, the Parties acknowledge and agree that the Commerce Phase 3 Obligations are intended to burden and benefit the real property located within Tuscany.

7.5    Severability. In the event that any provision of this Agreement shall be held to be invalid, illegal or unenforceable, such provision shall be severable from the rest of this Agreement and the validity, legality and enforceability of the remaining provisions hereof that can be given effect without such invalid, illegal or unenforceable provision or provisions, shall not in any way be affected or impaired thereby, and the Parties hereby agree to replace such invalid, illegal or unenforceable provision or provisions with a valid, legal and enforceable provision that has or provisions that have, as nearly as practicable, the same effect.

7.6    Applicable Law/Venue/Service of Process. The Parties acknowledge that this Agreement has been entered into in the State of Nevada and agree that their respective rights, duties and obligations hereunder shall be governed by, and construed and enforced in accordance with, the laws of said State. Venue may be established in the District Court in the County of Clark in said State, and personal service either within or without said State shall be sufficient to confer jurisdiction over such cause and the parties thereto upon that Court.

7.7    Termination upon Sale to Public. In order to alleviate any concern as to the effect of this Agreement on the status of title as to end users of residential or commercial lots within

7

Tuscany, this Agreement shall terminate without the execution or recordation of any further document or instrument as to any lot which has been finally subdivided and individually (and not in "bulk") leased (for a period of longer than one year) or sold to the purchaser or user thereof and thereupon such lot shall be released from and no longer be subject to or burdened by the provisions of this Agreement. The purpose is to eliminate compliance with this Agreement for individual home buyers and commercial lot developers.

    7.8    <u>Entire Agreement</u>.  This Agreement, including each of the provisions hereof, each of the exhibits, documents and other materials that are attached hereto (i) constitutes the entire agreement between the Parties, (ii) supersedes all prior and contemporaneous negotiations, representations, understandings and agreements, whether written or oral, by and between or among the Parties, or any of them, and (iii), except as is otherwise provided herein, may be modified only by a written instrument that is signed by authorized representatives of the respective Parties.

    7.9    <u>Service of Notices</u>.  Any notice, demand, request, instruction, statement, report or other document or communication that is required or appropriate to be given to any of the Parties hereunder shall be in writing and shall be personally served upon, or deposited, with postage prepaid, as certified or registered first class mail, return receipt requested, with the United States Postal Service and addressed to the following persons at the addresses that are set forth below their respective names:

        If to the City:

            Robert Mimane, Public Works Director
            City of Henderson
            P.O. Box 95050
            Henderson, Nevada  89009-5050

        with a copy to:

            Shauna M. Hughes, Esq., City Attorney
            City of Henderson
            P.O. Box 95050
            Henderson, Nevada  89009-5050

        If to Commerce:

            Commerce Associates, LLC
            Attn:  George Reinhardt
            c/o TG Investments, LLC
            4511 W. Cheyenne Ave., Suite 801
            N. Las Vegas, NV  89032

        with a copy to:

            Isaac Building & Design Co., Inc.
            3068 East Sunset Road, #4

8

Las Vegas, NV  89120
Attn:  Ze'ev Yacobovsky

Provided, however, that any of such persons or addresses, or both, may be changed by a notice to each of the Parties that is given in the same manner as is above provided. Any such notice shall be deemed to have been received and shall be effective, if it is personally served, immediately upon such service or, if it is deposited as aforesaid with the United States Postal Service, three (3) days after such deposit.

7.10    Incorporation of Preamble.  Except to the extent that any of the same is expressly referred to, or the substance thereof is substantially repeated or repeated with modifications herein, each of the Recitals in the Preamble of this Agreement is, by this reference, incorporated herein and made a part of this Agreement.

7.11    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one and the same instrument.

7.12    Article and Paragraph Headings/Pronouns.  The headings to the various Articles and Sections of this Agreement have been inserted herein solely for the convenience of the Parties, shall not be deemed to constitute a part of this Agreement or to explain, modify or simplify any provision hereof and should not be resorted to or aid in the interpretation of any provision of this Agreement.  Masculine or feminine pronouns shall be substituted for the neuter form and vice versa, and the plural shall be substituted for the singular form and vice versa, in any place or places herein in which the context requires such substitution(s).

7.13    Binding Effect/Assignability.  This Agreement, and each of the terms and conditions hereof, shall be binding upon, and shall inure to the benefit of, each of the Parties and their respective successors and assigns.

**[SIGNATURES APPEAR ON NEXT PAGE]**

9

IN WITNESS WHEREOF, the Parties have caused this Agreement, consisting of 18 pages, to be executed by their duly authorized representatives as of the day and year that is written below.

ATTEST:

Monica M. Simmons, CMC, City Clerk

CITY OF HENDERSON

James B. Gibson, Mayor

Approved as to form:

COUNCIL ACTION
DEC 1 4 2004

Shauna M. Hughes, City Attorney

COMMERCE ASSOCIATES, LLC
a Nevada limited liability company

Name) GEORGE REINHARDT
Its MANAGER

Attachments:

| Exhibit A: | Legal Description and Depiction of Tuscany |
| Exhibit B: | Depiction of C-1 Channel |
| Exhibit C: | Depiction of Phase 3 |

10

Description: Clark,NV Document-Year.Date.DocID 2006.322.2271 Page: 10 of 18
Order: 3 Comment:

**EXHIBIT A**

# BOUNDARY DESCRIPTION
# TUSCANY PROJECT

A PORTION OF SECTION 32, TOWNSHIP 21 SOUTH, RANGE 63 EAST, M.D.M., CITY FO HENDERSON, CLARK COUNTY, NEVADA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

ALL OF PALM CITY – PHASE 1 AS SHOWN IN BOOK 94 OF PLATS, PAGE 19, OFFICIAL RECORDS, CLARK COUNTY, NEVADA.

TOGETHER WITH ALL OF TUSCANY PARCEL 6C AS SHOWN IN BOOK 119 OF PLATS, PAGE 12, OFFICIAL RECORDS, CLARK COUNTY, NEVADA.

TOGETHER WITH ALL OF TUSCANY PARCEL 19 AS SHOWN IN BOOK 118 OF PLATS, PAGE 92, OFFICIAL RECORDS, CLARK COUNTY, NEVADA.

TOGETHER WITH A PORTION OF LOT 1 AS SHOWN IN FILE 102 OF PARCEL MAPS, PAGE 63, OFFICIAL RECORDS, CLARK COUNTY, NEVADA.

TOGETHER WITH A PORTION OF LOT 3-1 AS SHOWN IN FILE 102 OF PARCEL MAPS, PAGE 60, OFFICIAL RECORDS, CLARK COUNTY, NEVADA.

**Tuscany Project Site Plan**

Site plan on file in City of Henderson Clerk's Office.

**EXHIBIT B**

## BOUNDARY DESCRIPTION
## DRAINAGE CHANNEL
## SECTIONS 29 & 32

LOCATED IN A PORTION OF THE SOUTHWEST QUARTER (SW 1/4) OF SECTION 29 AND A PORTION OF SECTION 32, TOWNSHIP 21 SOUTH, RANGE 63 EAST, M.D.M., CITY OF HENDERSON, CLARK COUNTY, NEVADA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SAID SECTION 32; THENCE ALONG THE NORTH LINE THEREOF, NORTH 89°31'28" EAST, 2160.24 FEET TO THE POINT OF BEGINNING, SAID POINT BEING THE BEGINNING OF A NON-TANGENT CURVE; THENCE DEPARTING SAID NORTH LINE, ALONG SAID CURVE, WHOSE RADIUS POINT BEARS SOUTH 65°40'21"WEST, CONCAVE SOUTHWESTERLY HAVING A RADIUS OF 307.00 FEET, ALONG SAID CURVE TO THE LEFT THROUGH A CENTRAL ANGLE OF 60°13'33", AN ARC LENGTH OF 322.70 FEET; THENCE NORTH 84°33'12" WEST, 232.25 FEET; THENCE SOUTH 81°24'37" WEST, 164.93 FEET; THENCE SOUTH 05°26'48" WEST, 37.00 FEET; THENCE NORTH 84°33'12" WEST, 779.54 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE ALONG SAID CURVE, CONCAVE NORTHEASTERLY HAVING A RADIUS OF 480.00 FEET, ALONG SAID CURVE TO THE RIGHT THROUGH A CENTRAL ANGLE OF 118°50'57", AN ARC LENGTH OF 995.67 FEET; THENCE NORTH 34°17'44" EAST, 174.25 FEET; THENCE NORTH 72°22'00" EAST, 276.48 FEET; THENCE SOUTH 55°42'16" EAST, 49.51 FEET; THENCE SOUTH 34°17'44" WEST, 391.91 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE ALONG SAID CURVE, CONCAVE NORTHEASTERLY HAVING A RADIUS OF 260.00 FEET, ALONG SAID CURVE TO THE LEFT THROUGH A CENTRAL ANGLE OF 118°50'57", AN ARC LENGTH OF 539.32 FEET; THENCE SOUTH 84°33'12" EAST, 713.94 FEET; THENCE NORTH 05°26'48" WEST, 44.00 FEET; THENCE SOUTH 84°33'12" EAST, 64.74 FEET; THENCE SOUTH 70°31'02" EAST, 164.92 FEET; THENCE SOUTH 84°33'12" EAST, 233.11 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE ALONG SAID CURVE, CONCAVE SOUTHWESTERLY HAVING A RADIUS OF 366.00 FEET, ALONG SAID CURVE TO THE RIGHT THROUGH A CENTRAL ANGLE OF 72°33'12", AN ARC LENGTH OF 463.46 FEET; THENCE SOUTH 12°00'00" EAST, 678.40 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE ALONG SAID CURVE, CONCAVE NORTHEASTERLY HAVING A RADIUS OF 314.00 FEET, ALONG SAID CURVE TO THE LEFT THROUGH A CENTRAL ANGLE OF 78°30'05", AN ARC LENGTH OF 430.21 FEET; THENCE NORTH 89°29'55" EAST, 1503.08 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE ALONG SAID CURVE, CONCAVE SOUTHWESTERLY HAVING A RADIUS OF 376.00 FEET, ALONG SAID CURVE TO THE RIGHT THROUGH A CENTRAL ANGLE OF 34°27'55", AN ARC LENGTH OF 226.17 FEET; THENCE NORTH 89°29'55" EAST, 1.50 FEET TO THE BEGINNING OF A NON-TANGENT CURVE; THENCE ALONG SAID CURVE, WHOSE RADIUS POINT BEARS SOUTH 34°04'01"WEST, CONCAVE SOUTHWESTERLY HAVING A RADIUS OF 377.00 FEET, ALONG SAID CURVE TO THE RIGHT THROUGH A CENTRAL ANGLE OF 15°06'05", AN ARC LENGTH OF 99.37 FEET TO A POINT OF COMPOUND CURVATURE; THENCE ALONG A CURVE, WHOSE RADIUS POINT BEARS SOUTH 49°10'06" WEST, CONCAVE SOUTHWESTERLY HAVING A RADIUS OF 1510.00 FEET, ALONG SAID CURVE TO THE RIGHT THROUGH A CENTRAL ANGLE OF 42°49'54", AN ARC LENGTH OF 1128.81 FEET;

THENCE SOUTH 02°00'00" WEST, 666.99 FEET TO THE BEGINNING OF A TANGENT CURVE;
THENCE ALONG SAID CURVE, CONCAVE WESTERLY HAVING A RADIUS OF 976.25 FEET,
ALONG SAID CURVE TO THE RIGHT THROUGH A CENTRAL ANGLE OF 10°48'04", AN ARC
LENGTH OF 184.04 FEET TO A POINT OF REVERSE CURVATURE; THENCE ALONG A
CURVE, WHOSE RADIUS POINT BEARS SOUTH 77°11'56" EAST, CONCAVE EASTERLY
HAVING A RADIUS OF 1220.00 FEET, ALONG SAID CURVE TO THE LEFT THROUGH A
CENTRAL ANGLE OF 18°47'00", AN ARC LENGTH OF 399.96 FEET; THENCE SOUTH 11°33'22"
EAST, 223.74 FEET; THENCE SOUTH 05°58'59" EAST, 53.32 FEET; THENCE SOUTH 04°50'23"
EAST, 44.49 FEET; THENCE SOUTH 84°01'04" WEST, 101.69 FEET; THENCE NORTH 04°37'16"
WEST, 93.46 FEET; THENCE NORTH 01°17'34" WEST, 227.81 FEET TO THE BEGINNING OF A
NON-TANGENT CURVE; THENCE ALONG SAID CURVE, WHOSE RADIUS POINT BEARS
NORTH 84°01'04" EAST, CONCAVE EASTERLY HAVING A RADIUS OF 1280.00 FEET, ALONG
SAID CURVE TO THE RIGHT THROUGH A CENTRAL ANGLE OF 18°47'00", AN ARC LENGTH
OF 419.63 FEET TO A POINT OF REVERSE CURVATURE; THENCE ALONG A CURVE, WHOSE
RADIUS POINT BEARS NORTH 77°11'56" WEST, CONCAVE WESTERLY HAVING A RADIUS
OF 916.25 FEET, ALONG SAID CURVE TO THE LEFT THROUGH A CENTRAL ANGLE OF
10°48'04", AN ARC LENGTH OF 172.73 FEET; THENCE NORTH 02°00'00" EAST, 666.99 FEET TO
THE BEGINNING OF A TANGENT CURVE; THENCE ALONG SAID CURVE, CONCAVE
SOUTHWESTERLY HAVING A RADIUS OF 1450.00 FEET, ALONG SAID CURVE TO THE LEFT
THROUGH A CENTRAL ANGLE OF 42°51'39", AN ARC LENGTH OF 1084.69 FEET TO A POINT
OF COMPOUND CURVATURE; THENCE ALONG A CURVE, WHOSE RADIUS POINT BEARS
SOUTH 49°08'21" WEST, CONCAVE SOUTHWESTERLY HAVING A RADIUS OF 317.00 FEET,
ALONG SAID CURVE TO THE LEFT THROUGH A CENTRAL ANGLE OF 37°34'38", AN ARC
LENGTH OF 207.90 FEET; THENCE NORTH 89°29'55" EAST, 14.61 FEET TO THE BEGINNING
OF A NON-TANGENT CURVE; THENCE ALONG SAID CURVE, WHOSE RADIUS POINT BEARS
SOUTH 14°05'29" WEST, CONCAVE SOUTHWESTERLY HAVING A RADIUS OF 310.00 FEET,
ALONG SAID CURVE TO THE LEFT THROUGH A CENTRAL ANGLE OF 14°35'33", AN ARC
LENGTH OF 78.95 FEET; THENCE SOUTH 89°29'55" WEST, 1505.83 FEET TO THE BEGINNING
OF A TANGENT CURVE; THENCE ALONG SAID CURVE, CONCAVE NORTHEASTERLY
HAVING A RADIUS OF 370.00 FEET, ALONG SAID CURVE TO THE RIGHT THROUGH A
CENTRAL ANGLE OF 78°30'05", AN ARC LENGTH OF 506.94 FEET; THENCE SOUTH 78°00'00"
WEST, 12.83 FEET; THENCE NORTH 12°00'00" WEST, 171.23 FEET; THENCE NORTH 02°02'10"
EAST, 52.90 FEET; THENCE NORTH 12°00'00" WEST, 455.85 FEET TO THE BEGINNING OF A
TANGENT CURVE; THENCE ALONG SAID CURVE, CONCAVE SOUTHWESTERLY HAVING A
RADIUS OF 310.00 FEET, ALONG SAID CURVE TO THE LEFT THROUGH A CENTRAL ANGLE
OF 12°04'57", AN ARC LENGTH OF 65.37 FEET; THENCE SOUTH 89°31'28" WEST, 3.28 FEET TO
THE POINT OF BEGINNING;

CONTAINS APPROXIMATELY 18.31 ACRES.

**Tuscany C-1 Channel Extension Phase 1, 2 and 3**

Exhibit on file in City of Henderson Clerk's Office.

EXHIBIT C

**BOUNDARY DESCRIPTION**
**DRAINAGE CHANNEL**
**SECTION 29**

LOCATED IN A PORTION OF THE SOUTHWEST QUARTER (SW 1/4) OF SECTION 29, TOWNSHIP 21 SOUTH, RANGE 63 EAST, M.D.M., CITY OF HENDERSON, CLARK COUNTY, NEVADA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF SAID SECTION 29; THENCE ALONG THE SOUTH LINE THEREOF, NORTH 89°31'28" EAST, 1392.08 FEET; THENCE DEPARTING SAID SOUTH LINE, NORTH 00°28'32" WEST, 157.65 TO THE POINT OF BEGINNING; THENCE NORTH 84°33'12" WEST, 657.94 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE ALONG SAID CURVE, CONCAVE NORTHEASTERLY HAVING A RADIUS OF 480.00 FEET, ALONG SAID CURVE TO THE RIGHT THROUGH A CENTRAL ANGLE OF 118°50'57", AN ARC LENGTH OF 995.67 FEET; THENCE NORTH 34°17'44" EAST, 174.25 FEET; THENCE NORTH 72°22'00" EAST, 276.48 FEET; THENCE SOUTH 55°42'16" EAST, 49.51 FEET; THENCE SOUTH 34°17'44" WEST, 391.91 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE ALONG SAID CURVE, CONCAVE NORTHEASTERLY HAVING A RADIUS OF 260.00 FEET, ALONG SAID CURVE TO THE LEFT THROUGH A CENTRAL ANGLE OF 118°50'57", AN ARC LENGTH OF 539.32 FEET; THENCE SOUTH 84°33'12" EAST, 657.94 FEET; THENCE SOUTH 05°26'48" WEST, 220.00 FEET TO THE POINT OF BEGINNING.

CONTAINS APPROXIMATELY 8.75 ACRES.

**Tuscany C-1 Channel Extension Phase 3**

Exhibit on file in City of Henderson Clerk's Office.

C-1 Channel Phase 3 Agreement                                    Page 18 of 18
December 14, 2004

**CERTIFIED COPY**

The document(s) to which this certificate is attached is/are
a full, true and correct copy of the original(s) on file and of
record in my office.

DATE _____ *March 14, 2006* _____

Deputy City Clerk _____
For Monica M. Simmons
City Clerk City of Henderson
240 Water Street
Henderson, Nevada **89015**

**EXHIBIT 2 TO BOETTCHER DECLARATION**



**CITY OF HENDERSON**
DEPARTMENT OF PUBLIC WORKS
New Development Division

240 Water Street
Henderson, NV  89015
(702) 267-3680
(702) 267-3603 FAX

# LETTER OF TRANSMITTAL

Date:  October 4, 2013

To:    Slater Hanifan Group
       Chelsea Peltier
       702-284-5300 Cpeltier@Shg-Inc.Com

From: Albert Jankowiak
       Flood Control

Project Name: Tuscany Parcel 15-Revert &  Merge Lots

  Permit No.: 2013700426

       Owner: Dunhill Homes

<u>Description of Items Transmitted</u>

Second review comments

REMARKS:  Address the following comments and submit mylars:

UPDATE THE FLOOD ZONE NOTE ON ALL PERTINENT REVISED SHEETS TO REFLECT
THE FIRM'S ISSUED 11/16/11.

THE FINAL APPROVAL OF THE MYLARS FOR THIS PROJECT WILL BE HELD UNTIL THE
ENVIRONMENTAL FEES ASSOCIATED WITH THE CONSTRUCTION OF THE C-1
CHANNEL PHASE III ARE PAID.

**EXHIBIT 3 TO BOETTCHER DECLARATION**

**Subject:**              FW: C-1 Channel - Tuscany  -  Follow up to Meeting on Monday
**Attachments:**       Letter - To COH - C1 Channel - with Exhbits - 101513.pdf

**From:** Don Boettcher
**Sent:** Thursday, October 17, 2013 5:57 PM
**To:** 'Robert Herr'
**Subject:** C-1 Channel - Tuscany - Follow up to Meeting on Monday

Robert, as discussed, I am sending this e-mail as a follow up to our meeting on Monday of this week.    I am hopeful that this e-mail helps the City put closure on the C-1 Channel issue as it relates to Dunhill that you discussed with us at the meeting.

Attached please find information about the bankruptcy of Rhodes Homes and its affiliated entities (the "Reorganized Debtors") including those Reorganized Debtors that own land at the Tuscany master planned community.  Also included is a copy of the plan of reorganization (the "Bankruptcy Plan").

We respectfully request that the City of Henderson discontinue any attempt to collect from the Reorganized Debtors any amounts due under the C-1 Channel Phase 3 Agreement dated December 14, 2004 between the City and Commerce Associates, or to refuse to process and approve in the normal course subdivision maps or other matters required for the development of the Reorganized Debtors' property at Tuscany, which actions are a violation of the Bankruptcy Plan.

As you know, the Reorganized Debtors will require the processing of its subdivision maps and other matters by the City in order to continue development at Tuscany.  Please be advised that any action by the City which is in violation of the Bankruptcy Plan and which delays or hinders the development of Tuscany will cause substantial damages to the Reorganized Debtors.

Please confirm the City's agreement to abide by the Bankruptcy Plan by November 1, 2013.  If we fail to receive such confirmation by November 1, 2013, the Reorganized Debtors will file a motion with the bankruptcy court for relief from the City's actions in violation of the Bankruptcy Plan.

I appreciate your assistance with this matter.    If you have any questions please feel free to contact me.

Once again, thanks.



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
NEW YORK, NY

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067

TELEPHONE: 310/277 6910

FACSIMILE: 310/201 0760

SAN FRANCISCO
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

TELEPHONE: 415/263 7000

FACSIMILE: 415/263 7010

DELAWARE
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

TELEPHONE: 302/652 4100

FACSIMILE: 302/652 4400

NEW YORK
788 THIRD AVENUE
36th FLOOR
NEW YORK
NEW YORK 10017-2024

TELEPHONE: 212/561 7700

FACSIMILE: 212/561 7777

WEB: www.pszjlaw.com

Shirley S. Cho

October 14, 2013

310.772.2364
scho@pszjlaw.com

**Via Email**
Donald Boettcher
Dunhill Homes
6345 S. Jones Blvd., Ste. 400
Las Vegas, NV  89118

Re:  *In re The Rhodes Companies, et al.*
Case No. 09-14814-LBR (Bankr. D. Nev.)

Dear Don:

As you know, this Firm is bankruptcy counsel to Rhodes Design and Development Corporation, Tuscany Acquisitions, LLC, Tuscany Acquisitions II, LLC, Tuscany Acquisitions III, LLC, Tuscany Acquisitions IV, LLC and certain of their affiliates (collectively, the "Debtors") in their bankruptcy cases currently pending in the United States Bankruptcy Court, District of Nevada (the "Bankruptcy Court").

### Bankruptcy Case Background

On March 31, 2009 and April 1, 2009, the Debtors each filed chapter 11 petitions in the Bankruptcy Court.  On March 12, 2010, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the plan of reorganization in the Debtors' bankruptcy cases (the "Plan").  A copy of the Confirmation Order and Plan are attached for your reference as **Exhibit 1** hereto.

The Effective Date of the Plan occurred on April 1, 2010, at which time the Plan became effective and binding on all parties in interest.  A copy of the Notice of Effective Date is attached for your reference as **Exhibit 2** hereto.

After the Effective Date, the Debtors emerged from bankruptcy as Reorganized Debtors, who are doing business as Dunhill Homes.

DOCS_LA:272288.1 73203/035



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

October 14, 2013
Page 2

## Plan Summary

Upon the Effective Date of the Plan, all of the Debtors' assets were vested in the Reorganized Debtors "free and clear of all Liens, Claims, charges, or other encumbrances." Specifically, the Plan at Article IV.D provides:

"D.    <u>Vesting of Assets in the Reorganized Debtors</u>:  Except for any Claims or Causes of Action transferred to the Litigation Trust and unless otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules."

The Plan also provides the Debtors with a statutory discharge of any claim that could have been asserted prior to April 1, 2010 against the Debtors pursuant to the Bankruptcy Code section 1141(d), whether or not a proof of claim was filed on behalf of the creditor.  Specifically, the Plan at Article VIII.A states:

"A.    <u>Discharge of Claims and Termination of Interests</u>: Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

October 14, 2013
Page 3

liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of any employee, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Any default by the Debtors with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed Cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring."

The Plan also imposes a permanent injunction on the prosecution of any claims or obligations against the Debtors that arose prior to April 1, 2010. Specifically, the Plan at Article VIII.H provides:

"**H.     Injunction.  Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims against the Debtors, and all Entities holding Interests, are permanently enjoined, from and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors or the property or estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests;**



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

October 14, 2013
Page 4

**(4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors or against the property or Estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests . . . and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan."**

<u>**Conclusion**</u>

As noted, the Plan was approved by the Bankruptcy Court through the Confirmation Order and bears the full force and effect of a final Federal Court Order.  As of the Effective Date, all liens, claims, and encumbrances on the Debtors' assets were removed by the Plan and Confirmation Order.  Any attempt by a third party creditor to interfere with the Reorganized Debtors' properties on account of an encumbrance against the Debtors' properties that arose pre-Effective Date is discharged by virtue of the federal statutory discharge provided to the Reorganized Debtors under section 1141(d) of the Bankruptcy Code.  Further, all third parties are prohibited under the Plan's federal injunction to pursue such obligations in any manner against the Reorganized Debtors.

Please feel free to contact me with any questions.

Very truly yours,

*/s/ Shirley S. Cho*
Shirley S. Cho

Enclosures
cc: Bruce Jorgensen, Esq.

# EXHIBIT 1



Entered on Docket
March 12, 2010

_____
Hon. Linda B. Riegle
United States Bankruptcy Judge

Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
(702) 979-2357 (Telephone)
(702) 362-9472 (Facsimile)
nleatham@klnevada.com

Philip C. Dublin (NY Bar No. 2565687)
AKIN GUMP STRAUSS HAUER &
FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
pdublin@akingump.com

Counsel for First Lien Steering Committee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 09-14814-LBR** |
| | § | **(Jointly Administered)** |
| **THE RHODES COMPANIES,** | § | |
| **LLC,  aka "Rhodes Homes,"** *et al.*, | § | |
| | § | **Chapter 11** |
| | § | |
| **Debtors.**[1] | § | **Hearing Date:  March 11, 2010** |
| | § | **Hearing Time:  9:30 a.m. (PST)** |
| | § | **Courtroom 1** |

_____

_____

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060); Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave, LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090); Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC (8738); Tribes Holdings LLC (4347); Six Feathers Holdings, LLC (8451); Elkhorn Partners, A Nevada Limited Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897); Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1

| | |
|---|---|
| **Affects:** | § |
| ☒ **All Debtors** | § |
| ☐ **Affects the following Debtor(s)** | § |
| | § |

2

3

4

**PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE FIRST LIEN STEERING COMMITTEE'S THIRD AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE RHODES COMPANIES, LLC, ET AL.**

5

6

7

## RECITALS[2]

8       A.       On either March 31, 2009 or April 1, 2009 (collectively, the "Petition Date"),

9   each of the Debtors commenced with the Court a voluntary case under chapter 11 of title 11

10   of the United States Code (the "Bankruptcy Code").

11       B.       On May 26, 2009, pursuant to Bankruptcy Code section 1102, the United

12   States Trustee for the District of Nevada appointed an Official Committee of Unsecured

13   Creditors (the "Creditors' Committee").  The Creditors' Committee currently consists of four

14   members: G.C. Wallace, Inc.; Interstate Plumbing & Air Conditioning; M & M Electric, Inc.;

15   and Southwest Iron Works, LLC.

16       C.       On November 23, 2009, the First Lien Steering Committee filed (i) the

17   Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the

18   Bankruptcy Code for The Rhodes Companies, LLC, *et al*. (the "Second Amended Plan")

19   and (ii) the accompanying Second Amended Modified Disclosure Statement for the Plan of

20   Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies,

21   LLC, *et al*. (the "Disclosure Statement").

22       D.       On December 1, 2009, the Court entered the Order (A) Approving the

23   Adequacy of the First Lien Steering Committee's Disclosure Statement; (B) Approving

24   Solicitation and Notice Procedures with Respect to Confirmation of the First Lien Steering

25   Committee's Proposed Plan of Reorganization; (C) Approving the Form of Various Ballots

26

27

28   _____

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan (as defined herein) or the Disclosure Statement (as defined herein), as applicable.

2

**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

and Notices in Connection Therewith; and (D) Scheduling Certain Dates with Respect Thereto (Docket No. 809) (the "Solicitation Procedures Order").  The Solicitation Procedures Order (i) approved the Disclosure Statement as containing adequate information within the meaning of Bankruptcy Code section 1125(a), (ii) fixed December 1, 2009, as the record date for purposes of determining eligibility to vote to accept or reject the Second Amended Plan, (iii) fixed January 4, 2010, at 4:00 p.m. (Pacific Time) as the deadline for submitting ballots accepting or rejecting the Second Amended Plan, (iv) fixed January 4, 2010 at 4:00 p.m. (Pacific Time) as the deadline for filing objections to the Second Amended Plan, (v) fixed January 11, 2010, as the deadline for filing the Memorandum (as defined below), (vi) fixed January 11, 2010 as the deadline by which Omni Management Group, LLC (the "Claims and Solicitation Agent") must file its report summarizing the results of voting on the Second Amended Plan (the "Voting Report"), and (vii) fixed January 14, 2010, at 9:00 a.m. as the date and time for the commencement of the hearing of the confirmation hearing (the "Confirmation Hearing") on the Second Amended Plan.  The Solicitation Procedures Order also approved certain procedures for soliciting votes to accept or reject the Second Amended Plan (the "Solicitation Procedures").

E.      In accordance with the Solicitation Procedures Order, the solicitation materials described in the Solicitation Procedures were transmitted to and served on all Holders of Claims that were entitled to vote to accept or reject the Second Amended Plan, as well as certain other parties in interest in the Debtors' Chapter 11 Cases.

F.      Adequate and sufficient notice of the Confirmation Hearing and other requirements and deadlines, hearings and matters described in the Solicitation Procedures Order was provided in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order.  As evidenced by the Osborne Declarations (as defined below) and various certificates of service filed by Nova George (*see* Docket Nos. 819, 822, 823, 824, 825, 826, 931 and 932), the Confirmation Hearing Notice, the Second Amended Plan, the Disclosure Statement and all exhibits thereto were mailed on or about December 4,

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

2009 to Holders of Claims against and Interests in the Debtors and other parties in interest. A notice of continuation on the Confirmation Hearing was served on appropriate parties on January 22, 2010 (*See* Docket No. 954).

G.      On January 11, 2010, the First Lien Steering Committee filed the Declaration of Brian Osborne Certifying the Tabulation of Ballots Regarding Vote on Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.*, dated and sworn to on January 11, 2010, attesting to and certifying the methods and results of the ballot tabulation for the Classes of Claims entitled to vote to accept or reject the Second Amended Plan (the "Osborne Declaration").  The Voting Report was attached as Exhibit A to the Osborne Declaration.

H.      On January 15, 2010, the First Lien Steering Committee filed the Amended Declaration of Brian Osborne Certifying the Tabulation of Ballots Regarding Vote on Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.*, dated and sworn to on January 15, 2010, attesting to and certifying the methods and results of the ballot tabulation for the Classes of Claims entitled to vote to accept or reject the Second Amended Plan (the "Amended Osborne Declaration").  An amended Voting Report (the "Amended Voting Report") reflecting a retabulation of certain ballots pursuant to the Solicitation Procedures was attached to the Amended Osborne Declaration as Exhibit A.

I.      On January 27, 2010, the First Lien Steering Committee filed the Second Amended Declaration of Brian Osborne Certifying the Tabulation of Ballots Regarding Vote on Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.*, dated and sworn to on January 26, 2010, attesting to and certifying the methods and results of the ballot tabulation for the Classes of Claims entitled to vote to accept or reject the Second Amended Plan (the "Second Amended Osborne Declaration" and, together with the Osborne Declaration and the Amended Osborne Declaration, the "Osborne Declarations").  An amended Voting Report

DOCS_LA:216918.1

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

(the "Second Amended Voting Report" and, together with the Voting Report and the Amended Voting Report, the "Voting Reports") reflecting the further retabulation of certain ballots pursuant to the Solicitation Procedures and the direction of the Court was attached to the Second Amended Osborne Declaration as Exhibit A.  As evidenced by the Osborne Declarations, the ballots were tabulated in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Procedures Order.

J.      The following pleadings were filed prior to the deadline for filing objections to the Second Amended Plan: (i) the Conditional Objection to Chapter 11 Plan filed by Caterpillar Financial Services Corporation on January 4, 2010 (Docket No. 895); and (ii) the Limited Response to Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al*. filed by Credit Suisse AG, Cayman Islands Branch on January 5, 2010 (Docket No. 899).  No other objections to confirmation of the Second Amended Plan were filed.  The filed conditional objection and limited response to confirmation of the Second Amended Plan are collectively referred to herein as the "Objections."  The Objections were either withdrawn or resolved on a consensual basis.

K.      On January 11, 2010, the First Lien Steering Committee filed (a) the First Lien Steering Committee's Memorandum of Law (I) in Support of Confirmation of the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.* and (II) in Response to Objections Thereto, (b) the Declaration of Richard Dix in Support of Confirmation of the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.*, and (c) the Osborne Declaration (collectively, and including the Amended Osborne Declaration, the "Initial Confirmation Papers").

L.      On January 27, 2010, the First Lien Steering Committee filed (a) the First Lien Steering Committee's Supplemental Memorandum of Law in Support of Confirmation of the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the

DOCS_LA:216918.1

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

Bankruptcy Code for The Rhodes Companies, LLC, *et al.*, (b) the Declaration of Justin Bono in Support of Confirmation of the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, *et al.*, (c) the Declaration of Charles Hewlett in Support of Confirmation of the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies, LLC, *et al.*, and (d) the Second Amended Osborne Declaration (collectively, the "Supplemental Confirmation Papers").

M.     On February 1, 2010, the Debtors filed their Statement in Support of Confirmation of the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.* (the "Debtors' Statement") (Docket No. 973).

N.     On February 2, 2010, (i) the Creditors' Committee filed its Statement in Support of Confirmation (the "Creditors' Committee's Statement") (Docket No. 976), and (ii) Stanley Consultants, Inc. ("Stanley") filed its Opposition to First Lien Steering Committee's Supplemental Memorandum of Law in Support of Confirmation of Second Amended Modified Plan (the "Stanley Opposition") (Docket No. 975).

O.     On February 8, 2010, the First Lien Steering Committee filed (a) its Reply to Stanley's Opposition to First Lien Steering Committee's Supplemental Memorandum of Law in Support of Confirmation of Second Amended Modified Plan, (b) the Supplemental Declaration of Justin Bono in Support of Confirmation of Confirmation of Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.*, (c) the Supplemental Declaration of Charles Hewlett in Support of Confirmation of Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.*, and (d) the Declaration of Gregory Wallace in Support of Confirmation of the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.* (collectively, the "Reply Papers").  In addition, the Debtors

DOCS_LA:216918.1

filed the Declaration of Paul D. Huygens in Response to Stanley's Opposition to First Lien Steering Committee's Supplemental Memorandum of Law in Support of Confirmation of Second Amended Modified Plan (the "Huygens Declaration").

P.      The Confirmation Hearing was held before the Court on January 14, 2010, January 21, 2010, February 11, 2010, and February 12, 2010.

Q.      On February 18, 2010, the First Lien Steering Committee filed the Third Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.*, (the "Third Amended Plan"), which contained certain non-material modifications to the Second Amended Plan and the Mediation Settlement (as defined below) as stated on the record at the Confirmation Hearing.  Also on February 18, 2010, Stanley filed its Objection to Proposed Third Amended Plan (the "Stanley Objection") (Docket No. 1015).

R.      On February 19, 2010, the First Lien Steering Committee filed its Reply (the "Supplemental Reply") to the Stanley Objection.  Also on February 19, 2010, the First Lien Steering Committee filed the Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al. (the "Plan") as Exhibit A to the Proposed Findings of Fact, Conclusions of Law, and Order Confirming the First Lien Steering Committee's Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, *et al.* (Docket No. 1026).  The Plan contained certain further non-material modifications to the Second Amended Plan and Mediation Settlement.  A copy of the Plan is also attached hereto as Exhibit A.

S.      On February 23, 2010, Stanley filed its Objection to the First Lien Steering Committee's Proposed Findings of Fact, Conclusions of Law, and Order Confirming the First Lien Steering Committee's Third Amended Modified Plan (the "Stanley Confirmation Order Objection" and, together with the Stanley Opposition and the Stanley Objection, the "Stanley Objections") (Docket No. 1035).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

7

NOW, THEREFORE, the Court having reviewed and considered the Disclosure Statement, the Plan and all documents contained therein, the Voting Reports, the Objections, the Initial Confirmation Papers, the Supplemental Confirmation Papers, the Debtors' Statement, the Creditors' Committee's Statement, the Stanley Objections, the Reply Papers, the Huygens Declaration, and the Supplemental Reply (collectively, the "Confirmation Papers"); the Court having heard statements of counsel in support of and in opposition to confirmation of the Plan at the Confirmation Hearing; the Court having considered all testimony presented and evidence admitted at the Confirmation Hearing; the Court having taken judicial notice of the papers and pleadings on file in the Chapter 11 Cases; it appearing to the Court that (i) notice of the Confirmation Hearing was adequate and appropriate as to all parties to be affected by the Plan and the transactions contemplated thereby and (ii) the legal and factual bases set forth in the Confirmation Papers and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon, good cause appearing therefor, and for the reasons stated herein, it is hereby DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1.      Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157, 1334(a), 1408, and 1409).  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Venue in the District of Nevada was proper as of the Petition Date and continues to be proper.

2.      Commencement and Joint Administration of the Chapter 11 Cases.  Beginning on the Petition Date, each of the above-captioned Debtors commenced a case under chapter 11 of the Bankruptcy Code.  By prior order of the Court, the Chapter 11 Cases

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

DOCS_LA:216918.1

have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.

3.    <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at, the hearings held before the Court during the pendency of the Chapter 11 Cases.

4.    <u>Transmittal and Mailing of Materials; Notice; Solicitation</u>.  The Solicitation Packages were transmitted and served in compliance with the Bankruptcy Code, the Bankruptcy Rules, applicable nonbankruptcy law, and the Solicitation Procedures Order. Such transmittal and service of the Solicitation Packages were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing was given in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Procedures Order, and no further notice is or shall be required.  Votes for acceptance and rejection of the Plan were solicited in good faith and such solicitation complied with Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, the Solicitation Procedures Order, and all other applicable rules, laws and regulations.

5.    <u>Burden of Proof</u>.  The First Lien Steering Committee, as the proponent of the Plan, has met its burden of proving the elements of Bankruptcy Code sections 1129(a) and (b) by a preponderance of evidence.

6.    <u>Voting</u>.  Votes on the Plan were solicited after the disclosure of  "adequate information" as defined in Bankruptcy Code section 1125.  As evidenced by the Osborne Declarations, votes to accept the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Solicitation Procedures Order, the Bankruptcy Code and the Bankruptcy Rules.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

9

Case 09-14814-lbr    Doc 1053    Entered 03/24/13 14:13:36    Page 10 of 116

7.      Plan Modifications.  The modifications to the Second Amended Plan as reflected in the Plan are non-material modifications that provide additional benefits to the Debtors' Estates and do not have a negative impact on any Creditor entitled to vote on the Plan.  Accordingly, resolicitation of votes to accept or reject the Plan is not required.

8.      The Plan Satisfies the Confirmation Standards Enumerated in Bankruptcy Code Sections 1129(a)(1) - (a)(7) and 1129(a)(9) - (a)(16).  The Plan satisfies the confirmation standards enumerated in Bankruptcy Code sections 1129(a)(1) - (a)(7) and 1129(a)(9) - (a)(16).  The Plan does not, however, satisfy Bankruptcy Code section 1129(a)(8) and, therefore, must be confirmed under Bankruptcy Code section 1129(b).

9.      Confirmation of Plan Over Nonacceptance of Impaired Classes (11 U.S.C. § 1129(b)).  Notwithstanding the fact that the certain Classes either voted not to accept or are deemed to reject the Plan (the "Rejecting Classes"), the Plan may be confirmed pursuant to Bankruptcy Code section 1129(b)(1) because (i) at least one Impaired Class has voted to accept the Plan, and (ii) the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes.  Thus, the Plan may be confirmed notwithstanding the First Lien Steering Committee's failure to satisfy Bankruptcy Code section 1129(a)(8).  After entry of the Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of the Rejecting Classes.

10.     Under the Plan, the Rhodes Entities will receive or retain property on account of their claims or interests.  Namely, the Court finds that the property to be obtained by the Rhodes Entities under the Plan is not merely because of a settlement of claims, but because they hold Equity Interests in the various Debtors and/or have claims against the Debtors.  Notwithstanding the retention or the receipt of property under a plan, a plan may nonetheless meet the requirements of Bankruptcy Code section 1129(b) if such holder offers value to the debtor that is (i) new, (ii) substantial, (iii) money or money's worth, (iv) necessary for a successful reorganization, and (v) reasonably equivalent to the value received.  The Rhodes Entities meet this test with respect to the reconveyance of the equity in the entity that owns

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

DOCS_LA:216918.1

Case 09-14814-lbr   Doc 1053   Entered 03/12/10 14:12:30   Page 53 of 208

the Rhodes Ranch Golf Course (as more fully set forth in the Plan), however under the Second Amended Plan, the Court found that the transfer of the Arizona Assets without the right of another party to bid on such assets coupled with the relatively small amount to be paid could not satisfy the test of 1129(b).

11.     At the Confirmation Hearing, the First Lien Steering Committee, with the consent of the Rhodes Entities modified the Plan to provide for the marketing of the Arizona Assets under bid procedures to be approved by the Court.  Such modification provides for the Rhodes Entities to be deemed the Stalking Horse Bidder in the amount of $1,222,999 in cash, which stalking horse bid shall be irrevocable.  Such modification meets the requirements of 1129(b).  As the modification does not adversely change the treatment of the claims of any creditor or the interest of any equity holder that has not accepted in writing the modification, it is deemed accepted by all creditors and equity security holders who have previously accepted the Plan.

12.     Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan of reorganization filed in the Chapter 11 Cases.  Accordingly, Bankruptcy Code section 1129(c) is inapplicable.

13.     Principal Purpose of Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act, and no governmental unit has objected to the confirmation of the Plan on such grounds. The Plan, therefore, satisfies the requirements of Bankruptcy Code section 1129(d).

14.     Good Faith Solicitation (11 U.S.C. § 1129(e)).  Based on the record before the Court in the Chapter 11 Cases, the First Lien Steering Committee is deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 1125(a) and (e), and any applicable nonbankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

DOCS_LA:216918.1

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

15.     Satisfaction of Confirmation Requirements.  For all of the foregoing reasons, the Plan satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129.

16.     Good Faith.  The First Lien Steering Committee, the Debtors, the Creditors' Committee, the Rhodes Entities, the Second Lien Agent and all other parties (and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates and representatives) will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby and (ii) take the actions authorized and directed by this Confirmation Order.

17.     Substantive Consolidation.  A preponderance of the evidence presented to the Court demonstrates that (i) no Creditor will be harmed by the proposed substantive consolidation of the Debtors' Estates into a single consolidated Estate for purposes of confirmation and distributions to be made under the Plan and (ii) the proposed substantive consolidation of the Debtors' Estates is appropriate.

18.     Mediation Settlement.  As described in Article I.A of the Disclosure Statement and as modified by the Plan, the Plan embodies the terms of the Mediation Settlement (as modified by the Plan).  In order to determine whether a compromise may be approved under Bankruptcy Rule 9019, the Bankruptcy Court must consider four factors: (i) the probability of success of the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views.  Based on the foregoing standard, the Court hereby finds that the Mediation Settlement (as modified by the Plan) is fair, equitable and reasonable and is hereby approved.

19.     Assumption of Executory Contracts and Unexpired Leases.  The Plan satisfies all requirements for the assumption of executory contracts and unexpired leases

12

contained in the Bankruptcy Code, including, without limitation, the requirement to cure all outstanding defaults, if any, and to provide adequate assurance of performance under such contracts and leases.

20.     Releases, Exculpations and Injunctions.  Pursuant to Bankruptcy Code section 1123(b) and Bankruptcy Rule 9019, the settlements, compromises, releases, discharges, exculpations and injunctions set forth in Article VIII of the Plan are fair, equitable, reasonable, in good faith, and are in the best interests of the Debtors, the Reorganized Debtors, the Estates and the Holders of Claims and Interests.  In addition, the releases, injunctions and exculpations set forth in Article VIII of the Plan are integral components of the Mediation Settlement (as modified by the Plan) that is embodied in the Plan.  The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the releases, exculpations and injunctions provided for in Article VIII of the Plan.

21.     Conditions to Confirmation.  Entry of this Confirmation Order shall satisfy the conditions to Confirmation set forth in Article X.A of the Plan.

/ / /

/ / /

/ / /

/ / /

**DECREES**

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

22.     Confirmation.  For the reasons set forth herein, all requirements for confirmation of the Plan have been satisfied.  Accordingly, the Plan is confirmed under Bankruptcy Code section 1129.

23.     Objections.  All Objections (including the Stanley Objections) that have not been withdrawn, waived or settled, and all reservations of rights pertaining to the confirmation of the Plan, are overruled on the merits.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

DOCS_LA:216918.1

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

24.     <u>Plan and Plan Documents</u>.  The Plan, the documents attached as exhibits to the Disclosure Statement (collectively, the "<u>Plan Documents</u>"), and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the First Lien Steering Committee at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery and performance thereof by the Reorganized Debtors, are authorized and approved. Without further order or authorization of the Court, the First Lien Steering Committee or the Reorganized Debtors, as applicable, and their respective successors are authorized and empowered to make all modifications to all documents included as part of the Plan Documents that are consistent with the Plan.  Execution versions of the documents comprising the Plan Documents shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all liens and other security interests purported to be created thereby.

25.     <u>Claims Based on Rejection or Repudiation of Executory Contracts and Unexpired Leases</u>.  Unless otherwise provided by an order of the Court, any Proofs of Claim asserting Claims arising from the rejection or repudiation of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be filed with the Claims and Solicitation Agent no later than the Rejection Damages Claim Deadline.  Any Proofs of Claim arising from the rejection or repudiation of the Debtors' executory contracts or unexpired leases that are not timely filed by the Rejection Damages Claim Deadline shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Reorganized Debtor without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Court, and any Claim arising out of the rejection or repudiation of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection or

DOCS_LA:216918.1

repudiation of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims.

26.    <u>Arizona Assets</u>.  Notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, to the extent the Debtors or Reorganized Debtors, in connection with the Arizona Assets Sale, seek to transfer the work product or intellectual property that Stanley has asserted a property interest in as set forth in the exhibits to Creditor Stanley Consultants, Inc.'s Objection to Sufficiency of Disclosure Statement for the Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code for the Rhodes Companies, LLC, Et Al. [Docket No. 617] (the "Stanley Materials"), prior to marketing the Arizona Assets or the transfer of any Stanley Materials, the Debtors or Reorganized Debtors, as applicable, shall (i) obtain an order from this Court determining the extent of the Debtors' interests or Reorganized Debtors' interests, as applicable, in such Stanley Materials that the Debtors or Reorganized Debtors, as applicable, can transfer under applicable law or (ii) shall file a notice of intention to not sell the Stanley Materials and Stanley shall retain the right to dispute the transfer of the Stanley Materials (the earlier of (i) or (ii) shall be the Determination Date).  Nothing in this Confirmation Order shall be construed as transferring the title to the Stanley Materials.

27.    <u>Immediate Binding Effect</u>.  Subject to Article X.B of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

28.    <u>References to Plan Provisions</u>.  Captions and headings to Articles of the Plan are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan.  The failure specifically to include or to refer to any particular provision of the Plan in the Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

29.    <u>Conflicts Between Confirmation Order and Plan</u>.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is determined to be any inconsistency between any Plan provision and any provisions of this Confirmation Order that cannot so be reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall control.

30.    <u>Findings of Fact</u>.  The determinations, findings, judgments, decrees and orders set forth and incorporated herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated herein, to the extent that it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

31.    <u>Substantial Consummation</u>.  Substantial consummation of the Plan shall be deemed to occur on the Effective Date.

32.    <u>Final Order</u>.  The Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon entry hereof.

33.    <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to Bankruptcy Code sections 105(a) and 1142 and Article XII of the Plan including, but not

DOCS_LA:216918.1

limited to, enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code including, without limitation, the Arizona Asset Sale Order.

Submitted by:

_/s/ Nile Leatham_____
Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
(702) 979-2357 (Telephone)
(702) 362-9472 (Facsimile)
Nleatham@klnevada.com

Dated:  March 11, 2010

**AKIN GUMP STRAUSS HAUER & FELD LLP**
**One Bryant Park**
**New York, New York 10036**
**Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com**

**LR 9021 Certification**

In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

____ The court has waived the requirement of approval under LR 9021.

____ This is a chapter 7 or 13 case, and either with the motion, or at the hearing, I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

__X__ This is a chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

| Party | Approved | Disapproved | Failed to Respond |
|-------|----------|-------------|-------------------|
| J. Thomas Beckett, Esq. | X | | |
| Shirley S. Cho, Esq. | X | | |
| Zachariah Larson Esq. | X | | |
| Ann M. Loraditch, Esq. | X | | |
| Janiece S. Marshall, Esq. | X | | |

____ I certify that I have served a copy of this order with the motion, and no parties appeared or filed written objections.

Submitted by:

_s/ Nile Leatham_____
Nile Leatham (NV Bar No. 002838)
KOLESAR & LEATHAM
Wells Fargo Financial Center
3320 W. Sahara Ave.
Las Vegas, NV 89102
(702) 979-2357 (Telephone)
(702) 362-9472 (Facsimile)
Nleatham@klnevada.com

Dated:  March 11, 2010

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

DOCS_LA:216918.1

EXHIBIT A

EXHIBIT A

Case 09-14814-lbr    Doc 1053    Entered 03/12/13 14:35:50    Page 2 of 147

1   Nile Leatham (NV Bar No. 002838)
2   KOLESAR & LEATHAM
    Wells Fargo Financial Center
3   3320 W. Sahara Ave.
    Las Vegas, NV 89102
4   Telephone:  702.979.2357
    Facsimile:  702.362.9472
5   E-Mail:         nleatham@klnevada.com

6
    Philip C. Dublin (NY Bar No. 2959344)
7   Abid Qureshi (NY Bar No. 2684637)
    AKIN GUMP STRAUSS HAUER & FELD LLP
8   One Bryant Park
9   New York, NY 10036
    Telephone:  212.872.1000
10  Facsimile: 212.872.1002

11  E-Mail:     pdublin@akingump.com
                aqureshi@akingump.com
12

13  *Counsel for the First Lien Steering Committee*

14
15              UNITED STATES BANKRUPTCY COURT
                     DISTRICT OF NEVADA
16                     SOUTHERN DIVISION

17  IN RE:                              §
                                        §
18                                      §
    THE RHODES COMPANIES, LLC,          §      Case No. 09-14814-LBR
19      aka "Rhodes Homes," *et al.*,   §      Jointly Administered
                                        §
20          Debtors.[1]                 §
                                        §
21                                      §
                                        §
22                                      §

23          [1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
    number, if applicable, are:  Heritage Land Company, LLC (2918); The Rhodes Companies, LLC (3060);
24  Rhodes Ranch General Partnership (1760); Tick, LP (0707); Glynda, LP (5569); Chalkline, LP (0281); Batcave,
    LP (6837); Jackknife, LP (6189); Wallboard, LP (1467); Overflow, LP (9349); Rhodes Ranch Golf and Country
25  Club (9730); Tuscany Acquisitions, LLC (0206); Tuscany Acquisitions II, LLC (8693); Tuscany Acquisitions
    III, LLC (9777); Tuscany Acquisitions IV, LLC (0509); Parcel 20 LLC (5534); Rhodes Design and
26  Development Corp. (1963); C&J Holdings, Inc. (1315); Rhodes Realty, Inc. (0716); Jarupa LLC (4090);
    Elkhorn Investments, Inc. (6673); Rhodes Homes Arizona, LLC (7248); Rhodes Arizona Properties, LLC
27  (8738); Tribes Holdings LLC (4347); Six Feathers Holdings LLC (8451); Elkhorn Partners, A Nevada Limited
    Partnership (9654); Bravo Inc. (2642); Gung-Ho Concrete, LLC (6966); Geronimo Plumbing, LLC (6897);
28  Apache Framing, LLC (6352); Tuscany Golf Country Club, LLC (7132); Pinnacle Grading, LLC (4838).

*(vertical left margin)* AKIN GUMP STRAUSS HAUER & FELD LLP  One Bryant Park  New York, New York 10036  Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

Affects:

☒ All Debtors

☐ Affects the following
Debtor(s)

§
§
§
§
§
§

THIRD AMENDED MODIFIED PLAN OF
REORGANIZATION PURSUANT
TO CHAPTER 11 OF THE
BANKRUPTCY CODE FOR THE RHODES
COMPANIES, LLC, ET AL.

TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,
          COMPUTATION OF TIME, AND GOVERNING LAW .......................... 1
      A.    Defined Terms ................................................................. 1
      B.    Rules of Interpretation .................................................. 15
      C.    Reference to Monetary Figures ........................................ 16

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS .......................... 16
      A.    Administrative Claims .................................................. 16
      B.    Priority Tax Claims ...................................................... 17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND
          INTERESTS ..................................................................... 17
      A.    Classification of Claims and Interests .......................... 17
      B.    Treatment of Classes of Claims and Interests ............... 18
      C.    Class Voting Rights ...................................................... 22
      D.    Bankruptcy Code Section 1111(b) Election ................. 22
      E.    Acceptance or Rejection of the Plan .............................. 23

ARTICLE IV. PROVISIONS FOR IMPLEMENTATION OF THE PLAN ........ 23
      A.    Substantive Consolidation ............................................ 23
      B.    Sources of Consideration for Plan Distributions ........... 24
      C.    Corporate Existence ..................................................... 25
      D.    Vesting of Assets in the Reorganized Debtors .............. 26
      E.    Cancellation of Equity Securities and Related Obligations .......... 26
      F.    Restructuring Steps and Transfer of Certain Interests to Newco ...... 26
      G.    Restructuring Transactions ........................................... 27
      H.    Corporate Action .......................................................... 28
      I.    Post-Confirmation Property Sales ................................. 28
      J.    Organizational Documents ............................................ 28
      K.    Effectuating Documents, Further Transactions ............. 28
      L.    Exemption from Certain Transfer Taxes and Recording Fees ........ 29
      M.    Directors and Officers of the Reorganized Debtors ....... 29
      N.    Management and Director Equity Incentive Plan ........... 29
      O.    The Litigation Trust ..................................................... 29
      P.    Preservation of Causes of Action .................................. 30
      Q.    HOA Board Seats .......................................................... 31
      R.    Licensing ...................................................................... 31
      S.    Transfer of Rhodes Ranch Golf Course ......................... 31
      T.    Cash Payment ............................................................... 33

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

iii

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

U.   Transfer of Arizona Assets ............................................................... 33
V.   Trademarks and Trade Names ......................................................... 34
W.   Self Insured Retention Obligations................................................. 34
X.   Bond Replacement or Indemnification ........................................... 34
Y.   Stanley Engineering Litigation ....................................................... 35

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES............................................................................................ 35
A.   Assumption and Rejection of Executory Contracts and Unexpired
        Leases............................................................................................. 35
B.   Cure of Defaults for Assumed Executory Contracts and Unexpired
        Leases............................................................................................. 36
C.   Preexisting Obligations to the Debtors Under Executory Contracts and
        Unexpired Leases........................................................................... 37
D.   Claims Based on Rejection or Repudiation of Executory Contracts and
        Unexpired Leases........................................................................... 37
E.   Intercompany Contracts, Contracts, and Leases Entered Into After the
        Petition Date: ................................................................................. 38
F.   Home Sales ...................................................................................... 38
G.   Warranties ....................................................................................... 38
H.   Modification of Executory Contracts and Unexpired Leases Containing
        Equity Ownership Restrictions ..................................................... 38
I.   Modifications, Amendments, Supplements, Restatements, or Other
        Agreements ..................................................................................... 38
J.   Reservation of Rights...................................................................... 39
K.   Nonoccurrence of Effective Date .................................................. 39

ARTICLE VI. PROCEDURES FOR RESOLVING DISPUTED CLAIMS.................... 39
A.   Allowance of Claims....................................................................... 39
B.   Claims Administration Responsibilities ........................................ 39
C.   Estimation of Claims....................................................................... 39
D.   Adjustment to Claims Without Objection ...................................... 40
E.   Time to File Objections to Claims ................................................. 40
F.   Disallowance of Claims .................................................................. 40
G.   Offer of Judgment ........................................................................... 41
H.   Amendments to Claims ................................................................... 41

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS.................................. 41
A.   Total Enterprise Value for Purposes of Distributions Under the Plan........... 41
B.   Distributions on Account of Claims Allowed as of the Effective Date.......... 41
C.   Distributions on Account of Claims Allowed After the Effective Date:....... 41
D.   Delivery of Distributions ............................................................... 43
E.   Claims Paid or Payable by Third Parties........................................ 45
F.   Payment of $1.5 Million to First Lien Lenders.............................. 46
G.   General Unsecured Claims Purchase ............................................. 47

ARTICLE VIII. EFFECT OF CONFIRMATION OF THE PLAN ..................................... 48

| | A. | Discharge of Claims and Termination of Interests | 48 |
| | B. | Subordinated Claims | 49 |
| | C. | Compromise and Settlement of Claims and Controversies | 49 |
| | D. | Releases by the Debtors of the Released Parties | 49 |
| | E. | Releases by the Debtors of the Rhodes Entities | 50 |
| | F. | Releases by First Lien Lenders of First Lien Lenders | 50 |
| | G. | Exculpation | 51 |
| | H. | Injunction | 51 |
| | I. | Protection Against Discriminatory Treatment | 52 |
| | J. | Setoffs | 52 |
| | K. | Recoupment | 52 |
| | L. | Release of Liens | 53 |
| | M. | Document Retention | 53 |
| | N. | Reimbursement or Contribution | 53 |

ARTICLE IX. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS ... 53
| | A. | Professional Claims: | 53 |
| | B. | Other Administrative Claims | 54 |

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN ... 55
| | A. | Conditions to Confirmation | 55 |
| | B. | Conditions Precedent to the Effective Date | 55 |
| | C. | Waiver of Conditions Precedent | 56 |
| | D. | Effect of Non-Occurrence of Conditions to Consummation | 57 |
| | E. | Satisfaction of Conditions Precedent to Confirmation | 57 |

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ... 57
| | A. | Modification and Amendments | 57 |
| | B. | Effect of Confirmation on Modifications | 58 |
| | C. | Revocation or Withdrawal of Plan | 58 |

ARTICLE XII. RETENTION OF JURISDICTION ... 59

ARTICLE XIII. MISCELLANEOUS PROVISIONS ... 61
| | A. | Immediate Binding Effect | 61 |
| | B. | Additional Documents | 61 |
| | C. | Payment of Statutory Fees | 61 |
| | D. | Dissolution of Creditors' Committee | 61 |
| | E. | Reservation of Rights | 62 |
| | F. | Successors and Assigns | 62 |
| | G. | Service of Documents: | 62 |
| | H. | Term of Injunctions or Stays | 64 |
| | I. | Entire Agreement | 64 |
| | J. | Governing Law | 64 |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

K.    Exhibits .............................................................. 64
L.    Nonseverability of Plan Provisions............................. 64
M.    Closing of the Chapter 11 Cases ................................ 65
N.    Waiver or Estoppel .............................................. 65
O.    Conflicts ........................................................... 65

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

**INTRODUCTION**

The First Lien Steering Committee proposes the following third amended modified plan of reorganization for the resolution of outstanding Claims against, and Interests in, The Rhodes Companies, LLC and the other debtors in the above-referenced chapter 11 cases pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101–1532. Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A. of the Plan. Reference is made to the Disclosure Statement, Filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, assets, results of operations, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The First Lien Steering Committee is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN PROVIDES FOR THE SUBSTANTIVE CONSOLIDATION OF ALL OF THE ESTATES FOR ALL PURPOSES ASSOCIATED WITH CONFIRMATION AND DISTRIBUTIONS UNDER THE PLAN.

**ARTICLE I.**
DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW

A.   Defined Terms: As used in the Plan, the capitalized terms below have the following meanings, except as expressly provided or unless the context otherwise requires. Any term used but not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.   Accrued Professional Compensation: At any given moment, all accrued fees and expenses for services rendered by all Professionals through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been Filed for such fees and expenses. To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

2.   Administrative Claim: A Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (c) all fees and charges assessed against the

Estates pursuant to chapter 123 of the Judicial Code and 28 U.S.C. § 1930; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

3.    Administrative Claim Bar Date:  The deadline for filing requests for payment of Administrative Claims, which shall be thirty days after the Effective Date for all other Administrative Claims incurred after the Petition Date through the Effective Date, except with respect to Professional Claims, which shall be subject to the provisions of Article IX.

4.    Affidavit of Publication:   An affidavit of a representative or agent of a publisher of a periodical certifying that notice has been served through publication in the publisher's periodical.

5.    Affiliate:  (a) An Entity that directly or indirectly owns, controls, or holds with power to vote, twenty percent or more of the outstanding voting securities of any of the Debtors, other than an Entity that holds such securities (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities or (ii) solely to secure a debt, if such Entity has not in fact exercised such power to vote; (b) a corporation twenty percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by any of the Debtors, or by an Entity that directly or indirectly owns, controls, or holds with power to vote, twenty percent or more of the outstanding voting securities of any of the Debtors, other than an Entity that holds such securities (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities or (ii) solely to secure a debt, if such Entity has not in fact exercised such power to vote; (c) an Entity whose business is operated under a lease or operating agreement by any of the Debtors, or an Entity substantially all of whose property is operated under an operating agreement with any of the Debtors; (d) an Entity that operates the business or substantially all of the property of any of the Debtors under a lease or operating agreement; or (e) the Debtors' domestic, wholly-owned, direct and indirect subsidiaries that have not commenced cases under chapter 11 of the Bankruptcy Code.

6.    Allowed:  With respect to Claims and Interests:  (a) any Claim or Interest, proof of which is timely Filed by the applicable Bar Date (or that by the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim or Interest that is listed in the Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated, and for which no Proof of Claim or Interest has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; provided, however, that with respect to any Claim or Interest described in clauses (a) or (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that (x) no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (y) such an objection is so interposed and the Claim or Interest shall have been Allowed for distribution purposes only by a Final Order, or (z) the Debtors allow such Claim prior to the Effective Date with the consent of the First Lien Steering Committee and the Creditors' Committee or the Reorganized Debtors allow such Claim after the Effective Date in their sole and absolute discretion.   Except as otherwise specified in the Plan or a Bankruptcy Court order, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.   For

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  Any Claim or Interest that has been or is hereafter listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely Filed, is not considered Allowed and shall be expunged without further action by the Reorganized Debtors and without any further notice to or action, order, or approval of the Bankruptcy Court.

7.  Arizona Assets:  Approximately 1,400 acres of land in Arizona, including four model homes, four partially-completed homes, and miscellaneous office equipment and other items of personal property including certain intellectual property.

8.  Ballot or Ballots:  The ballots upon which Holders of Impaired Claims entitled to vote shall cast their vote to accept or reject the Plan.

9.  Bankruptcy Code:  Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Cases.

10.  Bankruptcy Court:  The United States Bankruptcy Court for the District of Nevada or any other court having jurisdiction over the Chapter 11 Cases.

11.  Bankruptcy Rules:  The Federal Rules of Bankruptcy Procedure as applicable to the Chapter 11 Cases, promulgated pursuant to section 2075 of the Judicial Code and the general, local, and chambers rules and orders of the Bankruptcy Court.

12.  Bar Date:  August 5, 2009, except as otherwise provided in the Plan or by Bankruptcy Court order.

13.  Beneficial Holder:  The Entity holding the beneficial interest in a Claim or Interest.

14.  Business Day:  Any day, other than a Saturday, Sunday, or Legal Holiday.

15.  Cash:  Cash and cash equivalents.

16.  Cash Collateral Order:  The Bankruptcy Court order entitled, "Final Stipulated Order (I) Authorizing Use of Cash Collateral Pursuant to Sections 105, 361, 362, and 363 of the Bankruptcy Code and (II) Granting Adequate Protection and Super Priority Administrative Expense Priority to Prepetition Secured Lenders Re Debtors' Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, and 364 of Debtors' Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to the Debtors' Prepetition Secured Parties and (C) Scheduling a Final Hearing; Memorandum of Points and Authorities Filed by Zachariah Larson on Behalf of Heritage Land Company, LLC [Relates to Heritage Docket No. 35]," entered in the Chapter 11 Cases on April 30, 2009 [Rhodes Docket No. 126], as amended or extended with the consent of the First Lien Steering Committee, from time to time and in accordance with the terms thereof.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

17. Cause of Action: Any claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; (f) any claim or cause of action of any kind against any Released Party or Exculpated Party based in whole or in part upon acts or omissions occurring prior to or after the Petition Date; and (g) any claim listed in Exhibit L to the Disclosure Statement.

18. Certificate: Any instrument evidencing a Claim or an Interest.

19. Chapter 11 Cases: The chapter 11 bankruptcy cases filed by the Debtors on the Petition Date in the Bankruptcy Court, with case numbers 09-14778-LBR, 09-14861-LBR, 09-14825-LBR, 09-14843-LBR, 09-14862-LBR, 09-14837-LBR, 09-14828-LBR, 09-14820-LBR, 09-14865-LBR, 09-14822-LBR, 09-14818-LBR, 09-14860-LBR, 09-14839-LBR, 09-14856-LBR, 09-14848-LBR, 09-14868-LBR, 09-14882-LBR, 09-14846-LBR, 09-14844-LBR, 09-14854-LBR, 09-14841-LBR, 09-14814-LBR, 09-14833-LBR, 09-14866-LBR, 09-14817-LBR, 09-14853-LBR, 09-14852-LBR, 09-14850-LBR, 09-14849-LBR, 09-14858-LBR, 09-14884-LBR, 09-14887-LBR.

20. Claim: As defined in section 101(5) of the Bankruptcy Code.

21. Claims and Solicitation Agent: Omni Management Group, LLC.

22. Claims Objection Deadline: (i) One year from the Effective Date for all Claims other than the Rhodes Entities Claims; and (ii) sixty days from the Effective Date for the Rhodes Entities Claims.

23. Claims Register: The official register of Claims and Interests maintained by the Claims and Solicitation Agent.

24. Class: A class of Holders of Claims or Interests as set forth in the Plan.

25. CM/ECF: The Bankruptcy Court's Case Management and Electronic Case Filing system, which can be accessed at https://ecf.nvb.uscourts.gov/.

26. Confirmation: The entry of the Confirmation Order, subject to all conditions specified in Article X.A having been satisfied or waived pursuant to Article X.C.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

27.     Confirmation Date:  The date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

28.     Confirmation Hearing:  The hearing at which the Confirmation Order is first considered by the Bankruptcy Court.

29.     Confirmation Hearing Notice:  The notice approved in the Solicitation Procedures Order that sets forth in detail the voting and objection deadlines with respect to the Plan.

30.     Confirmation Order:  The order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

31.     Contingent Bond Indemnity Claim:  Any Claim asserted by a bonding company due to a bond being called.

32.     Consummation:  The occurrence of the Effective Date.

33.     Creditor:  A Holder of a Claim.

34.     Creditors' Committee:  The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

35.     Cure:  The distribution in the ordinary course of business as soon as reasonably practicable following the Effective Date of Cash, or such other property as may be ordered by the Bankruptcy Court or agreed upon by the contracting party and (i) the Debtors and the First Lien Steering Committee, or (ii) the Reorganized Debtors in an amount equal to all unpaid monetary obligations under applicable law or such lesser amount as may be agreed upon by the parties, under an executory contract or unexpired lease assumed pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

36.     Cure Bar Date:  The deadline for filing requests for payment of Cure, which shall be the later of: (a) thirty days after the Effective Date or (b) thirty days after the assumption of the applicable executory contract or unexpired lease, unless otherwise ordered by the Bankruptcy Court or agreed to by the First Lien Steering Committee and the counterparty to the applicable executory contract or unexpired lease.

37.     Debtors:  The following Entities:  Heritage Land Company, LLC; The Rhodes Companies, LLC; Rhodes Ranch General Partnership; Tick, LP; Glynda, LP; Chalkline, LP; Batcave, LP; Jackknife, LP; Wallboard, LP; Overflow, LP; Rhodes Ranch Golf and Country Club, LLC; Tuscany Acquisitions, LLC; Tuscany Acquisitions II, LLC; Tuscany Acquisitions III, LLC; Tuscany Acquisitions IV, LLC; Parcel 20 LLC; Rhodes Design and Development Corp.; C&J Holdings Inc.; Rhodes Realty, Inc.; Jarupa LLC; Elkhorn Investments, Inc.; Rhodes Homes Arizona, LLC; Rhodes Arizona Properties, LLC; Tribes Holdings LLC; Six Feathers Holdings, LLC; Elkhorn Partners, A Nevada Limited

Partnership; Bravo Inc.; Gung-Ho Concrete, LLC; Geronimo Plumbing, LLC; Apache Framing, LLC; Tuscany Golf Country Club, LLC; and Pinnacle Grading, LLC.

38. **Debtors in Possession**:  The Debtors, as debtors in possession in the Chapter 11 Cases, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

39. **Disclosure Statement**:  The disclosure statement for the Plan describing the Plan, including all exhibits and schedules thereto, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law, as may be amended from time to time.

40. **Disputed**:  With respect to any Claim or Interest, (i) any Claim or Interest on the Claims Register that is not yet Allowed, (ii) any Claim or Interest that is not yet Allowed pursuant to the terms of the Plan; (iii) any Claim that is not set forth on the Debtors' Schedules or (iv) any Claim objected to by the applicable Claims Objection Deadline.

41. **Disputed Claims Reserve**:  The Litigation Trust Interests and distributions in respect thereof held in reserve pursuant to Article VII.

42. **Distribution Agent**:  The Reorganized Debtors, or the Entity or Entities chosen by the First Lien Steering Committee, to make or facilitate distributions pursuant to the Plan.

43. **Distribution Date**:  The date occurring as soon as reasonably practicable after the Effective Date when distributions under the Plan shall commence, but not later than thirty days after the Effective Date, without further Bankruptcy Court order.

44. **Distribution Record Date**:  The date for determining which Holders of Allowed Claims are eligible to receive distributions pursuant to the Plan, which shall be the Confirmation Date or such other date as designated in the Plan or a Bankruptcy Court order.

45. **Effective Date**:  The date in a notice Filed by the First Lien Steering Committee on or after the eleventh day following entry of an order, in form and substance acceptable to the First Lien Steering Committee, by the Bankruptcy Court confirming the Plan and satisfaction of all conditions set forth in Article X.B. of the Plan having been satisfied or waived in accordance with the terms of the Plan; provided, however, that the Effective Date shall occur no earlier than January 1, 2010.

46. **Entity**:  As defined in section 101(15) of the Bankruptcy Code.

47. **Equity Security**:  Any equity security as defined in section 101(16) of the Bankruptcy Code in a Debtor.

48. **Equity Security Holder**:  A Holder of an Interest.

49. **Estate**:  The bankruptcy estate of any Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

50.     Exculpated Claim:  Any claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan, in each case other than claims for gross negligence, willful misconduct or fraud.

51.     Exculpated Party:  Each of: (i) the Creditors' Committee, the First Lien Steering Committee, the First Lien Lenders and the Second Lien Lenders, and all of their respective current and former officers, directors, members, employees, advisors, attorneys, professionals, consultants, agents, or other representatives, and (ii) the Debtors' current officers, employees, advisors, attorneys, professionals, consultants, agents, or other representatives.

52.     Federal Judgment Rate:  The federal judgment rate of .59%, which was in effect as of the Petition Date.

53.     File:  To file with the Bankruptcy Court in the Chapter 11 Cases, or in the case of Proofs of Claim or Interest, to file with the Claims and Solicitation Agent.

54.     Final Decree:  The decree contemplated under Bankruptcy Rule 3022.

55.     Final Order:  As applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the First Lien Steering Committee or Reorganized Debtors, as appropriate, reserve the right to waive any such appeal or similar conditions of a Final Order.

56.     First Lien Agent:  The current and former agents, arranger, and bookrunner with respect to, or under, the First Lien Credit Agreement.

57.     First Lien Credit Agreement:  The first lien Credit Agreement dated as of November 21, 2005 (as may have been amended from time to time) among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein as Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, and the other Loan Documents (as defined in the First Lien Credit Agreement).

58.     First Lien Lender Claims:  All First Lien Lender Secured Claims and First Lien Lender Deficiency Claims.

59.     First Lien Lender Secured Claim:  Any Secured Claim for principal or interest under the First Lien Credit Agreement or the SWAP Transaction.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

7

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

60.    <u>First Lien Lender Deficiency Claim</u>:  Any deficiency Claim arising under the First Lien Credit Agreement.

61.    <u>First Lien Lenders</u>:  (i) The First Lien Agent, (ii) the entities that hold debt under the First Lien Credit Agreement and (iii) the holders of Claims relating to under the SWAP Transaction.

62.    <u>First Lien Steering Committee</u>:  Credit Suisse Asset Management, Candlewood Special Situations Master Fund, Credit Suisse Loan Funding LLC, CypressTree Investment Management, LLP, General Electric Capital Corporation, Highland Capital Management, L.P., and Sorin Capital Management.

63.    <u>General Unsecured Claims</u>:  Any Claim (including any Allowed Rhodes Entities Claims) against any of the Debtors that is not a/n (a) Administrative Claim, (b) Priority Tax Claim, (c) Priority Non-Tax Claim, (d) First Lien Lender Secured Claim, (e) Second Lien Lender Secured Claim, (f) Other Secured Claim, (g) First Lien Lender Deficiency Claim, (h) Second Lien Lender Deficiency Claim, (i) Subordinated Claim, or (j) Intercompany Claim.

64.    <u>Government Bar Date</u>:  September 28, 2009 or, with respect to Rhodes Homes Arizona, LLC, Tuscany Golf Country Club, LLC and Pinnacle Grading, LLC, September 29, 2009.

65.    <u>Heritage Equity Securities</u>:  Members' interests and/or the interests as a noneconomic member in Heritage Land Company, LLC, a Nevada limited liability company.

66.    <u>Holder</u>:  An Entity holding a Claim or Interest, as applicable.

67.    <u>HOA</u>:  A homeowners' association.

68.    <u>Impaired</u>:  With respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

69.    <u>Indemnification Obligation</u>:    A Debtor's obligation under an executory contract or otherwise to indemnify directors, officers, or employees of the Debtors who served in such capacity at any time, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by the Debtors' respective articles of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date, which shall be deemed rejected under the Plan.

70.    <u>Insider</u>:  As defined in section 101(31) of the Bankruptcy Code.

71.    <u>Insured Claim</u>:  A Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy applicable to the Debtors or their businesses.

8

72.    Intercompany Claim:  A Claim held by a Debtor against another Debtor.

73.    Intercompany Contract:  A contract between two or more Debtors.

74.    Intercompany Interest:  An Interest held by a Debtor.

75.    Interest:  Any: (a) Equity Security, including all issued, unissued, authorized, or outstanding shares of stock together with any warrants, options, or contractual rights to purchase or acquire such Equity Securities at any time and all rights arising with respect thereto and (b) partnership, limited liability company or similar interest.

76.    Interim Compensation Order:  The Bankruptcy Court order entitled, "Order Granting Debtors' Motion for Administrative Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016 Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Re: Docket No. 62]," entered in the Chapter 11 Cases on May 18, 2009 [Rhodes Docket No. 180], as may have been modified by a Bankruptcy Court order approving the retention of the Professionals.

77.    Internal Revenue Code:  Title 26 of the United States Code, 26 U.S.C. §§ 1–9833.

78.    Judicial Code:  Title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

79.    Lien:  As defined in section 101(37) of the Bankruptcy Code.

80.    Litigation Trust:  That certain litigation trust to be created on the Effective Date in accordance with the provisions of Article IV of the Plan and the Litigation Trust Agreement.

81.    Litigation Trust Advisory Board:  The advisory board formed pursuant to the Litigation Trust Agreement.

82.    Litigation Trustee:  The Person designated by the First Lien Steering Committee in consultation with the First Lien Agent, the Second Lien Agent and the Creditors' Committee on or before the Confirmation Date and retained as of the Effective Date to administer the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement, and any successor appointed in accordance with the Litigation Trust Agreement. The identity of the Litigation Trustee shall be disclosed by the First Lien Steering Committee at or prior to the Confirmation Hearing.

83.    Litigation Trust Agreement:  That certain trust agreement, substantially on the terms set forth on Exhibit I to the Disclosure Statement and in form and substance acceptable to the First Lien Steering Committee, in consultation with the First Lien Agent, Second Lien Agent, Creditors' Committee and the Debtors, that, among other among other things: (a) establishes and governs the Litigation Trust (including any Litigation Trust Advisory Board or similar oversight committee); and (b) describes the powers, duties, and

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

9

responsibilities of the Litigation Trustee, the Liquidation Trust Assets, and the distribution of the proceeds thereof.

84.  Litigation Trust Assets:  All Claims and Causes of Action on which the First Lien Lenders do not have a lien and that have not been released pursuant to the Plan or order of the Bankruptcy Court.  The Litigation Trust Assets shall include those set forth on Exhibit G to the Disclosure Statement.

85.  Litigation Trust Beneficiaries:  The Holders of Claims that are to be satisfied, in whole or in part, by post-Effective Date distributions that are to be made by the Litigation Trust.

86.  Litigation Trust Funding Amount:  The amount of $100,000 to be used to initially fund the Litigation Trust, which shall be repaid to the Reorganized Debtors from the first proceeds received by the Litigation Trust.

87.  Litigation Trust Interests:  The beneficial interests in the Litigation Trust to be distributed to certain Holders of Claims in accordance with the terms of the Plan.

88.  Management and Director Equity Incentive Plan:  A post-Effective Date management and director compensation incentive plan intended for certain management, employees, consultants and directors of certain of the Reorganized Debtors.

89.  Master Ballots:  The master ballots upon which the applicable Nominee or other holder of record shall submit on behalf of the Beneficial Holders it represents the votes cast by such Beneficial Holders to accept or reject the Plan.

90.  Mediation Settlement:  The agreement in principle on a comprehensive settlement reached among the Debtors, the First Lien Steering Committee, the Creditors' Committee and the Second Lien Agent during a mediation held in Los Angeles, California on August 17, 24 and 25 of 2009 before the Honorable Richard Neiter.

91.  Mediation Term Sheet:  The document attached as Exhibit 1 to the Plan, which sets forth the terms of the Mediation Settlement.

93.  Newco:  An entity to be newly formed which will be the ultimate holding company of the Reorganized Debtors.

94.  Newco Equity Interests:  The shares of common stock in Newco or limited liability company interests in Newco initially issued and outstanding pursuant to the Plan as of the Effective Date. The Newco Equity Interests may consist of a class of full-voting equity interests (the "Class A-1 Equity Interests") and a separate class of limited-voting equity interests (the "Class A-2 Equity Interests").  To the extent applicable, each First Lien Lender shall have the option to choose to take its New Equity Interests in the form of Class A-1 Equity Interests or Class A-2 Equity Interests.

95.  Newco LLC Operating Agreement:  That certain limited liability company operating agreement which will govern Newco and shall be in form and substance

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

10

acceptable to the First Lien Steering Committee.  A draft of the Newco LLC Operating Agreement is attached as Exhibit J to the Disclosure Statement.

96.    Newco Total Enterprise Value:  $99.6 million, which is the midpoint range of the total enterprise value of the Reorganized Debtors set forth in the Disclosure Statement or such amount provided in the Confirmation Order as the total enterprise value of the Reorganized Debtors.

97.    New First Lien Notes:  The term notes issued pursuant to Article IV.B hereof in partial satisfaction of the First Lien Lender Secured Claims, which shall have the terms and conditions described on Exhibit 2 to the Plan.

98.    New First Lien Notes Maturity Date:  The sixth anniversary of the Effective Date.

99.    Nominee:  Any broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other party in whose name securities are registered or held of record on behalf of a Beneficial Holder.

100.    Notice of Confirmation:  That certain notice pursuant to Bankruptcy Rule 3020(c)(2) notifying Holders of Claims and Interests and parties in interest that the Bankruptcy Court has confirmed the Plan.

101.    Old Equity Interests:  All of the Interests in any of the Debtors and any rights, options, warrants, calls, subscriptions or other similar rights or agreements, commitments or outstanding securities obligating the Debtors to issue, transfer or sell any Interests.

102.    Other Secured Claim:  Any Secured Claim, other than a: (i) First Lien Lender Secured Claim; or (ii) Second Lien Lender Secured Claim.

103.    Periodic Distribution Date:  The first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the immediately preceding Periodic Distribution Date.

104.    Permitted Nominee:  Any nominee of a First Lien Lender or Second Lien Lender that such lender has confirmed in writing to the Debtors and the First Lien Agent or Second Lien Agent (as applicable) that it is such lender's nominee for the purpose of distribution of some or all of such lender's distribution hereunder, provided that such nominee shall be an affiliate of such lender.

105.    Person:  As defined in section 101(41) of the Bankruptcy Code.

106.    Petition Date:  March 31, 2009 or, for Tuscany Golf Club, LLC, Pinnacle Grading, LLC and Rhodes Homes Arizona, LLC, April 1, 2009.

107.    Plan:  This Third Amended Modified Plan of Reorganization for each of the Debtors pursuant to chapter 11 of the Bankruptcy Code either in its present form or as it may

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

be altered, amended, modified, or supplemented from time to time in accordance with the terms of the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

108.    Plan Proponent:  The First Lien Steering Committee.

109.    Pravada:  A Rhodes Homes development located in Mohave County (vicinity of Kingman, Arizona) on approximately 1,312 acres.

110.    Priority Non-Tax Claim:  Any Claim accorded priority in right of payment pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

111.    Priority Tax Claim:  Any Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

112.    Professional:  An Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

113.    Proof of Claim:  A proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

114.    Proof of Interest:  A proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

115.    Qualified Employee:  An employee that satisfies the requirements of Chapter 624.260 of the Nevada Revised Statutes.

116.    Record Date:  November 24, 2009

117.    Reinstated:  (a) Leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Interest so as to leave such Claim Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Interest (other than the Debtor or an insider) for any actual pecuniary loss incurred

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

12

by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder.

118.    Rejection Damages Claim:  Any Claim on account of the rejection of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

119.    Rejection Damages Claim Deadline:  The deadline to file a Rejection Damages Claim which shall be thirty days after the later of the Effective Date or the effective date of rejection or repudiation of an executory contract or unexpired lease.

120.    Released Party:  Each of: (a) the First Lien Lenders in their capacity as such; (b) the First Lien Steering Committee; (c) the Second Lien Lenders in their capacity as such; (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entities' predecessors, successors and assigns; (e) the Creditors' Committee and the members thereof in their capacity as such; (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' subsidiaries, affiliates, officers, members, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals; (g) the Debtors' officers, employees (including Thomas Robinson and Joseph Schramm) and Professionals, as of the Petition Date; and (h) Paul Huygens; provided, however, that clause (g) shall not include (i) the Rhodes Entities or their affiliates; (ii) insiders of any of the Rhodes Entities (except as to Thomas Robinson and Joseph Schramm); or (iii) relatives of Rhodes.

121.    Reorganized Debtors:  The Debtors, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

122.    Rhodes:  James M. Rhodes, in his individual capacity and any capacity related to any of the Debtors including, without limitation, as shareholder, general partner, limited partner, agent, officer or principal.

123.    Rhodes Entities:  The following Entities:  Rhodes; Glynda Rhodes; John Rhodes; James M. Rhodes Dynasty Trust I; James M. Rhodes Dynasty Trust II; JMR Children's Irrevocable Educational Trust; Truckee Springs Holdings, Inc.; Sedora Holdings LLC; Gypsum Resources, LLC; Tulare Springs Holdings, Inc.; Escalante-Zion Investments, LLC; HH Trust; Harmony Homes, LLC; Tock, LP; Tapemeasure, LP; Joshua Choya, LLC; American Land Management, LLC; South Dakota Conservancy, LLC; Meridian Land Company, LLC; Yucca Land Company, LLC; Sagebrush Enterprises, Inc.; Rhodes Ranch, LLC; Westward Crossing, LLC; Pinnacle Equipment Rental, LLC; Desert Communities, Inc.; Spirit Underground, LLC; Tropicana Durango Investments, Inc.; Tropicana Durango, Ltd. I; Dirt Investments, LLC; Underground Technologies, LLC; South Dakota Aggregate and Engineering, LLC; Freedom Underground, LLC; Jerico Trust; Canberra Holdings, LLC; Custom Quality Homes, LLC; and Rhodes Ranch Golf, Inc.; and ID Interior Design, LLC.

124.    Rhodes Entities Claims:  Claims asserted by the Rhodes Entities.

125.    Rhodes Entities Release:  As set forth in Article VIII.E hereof.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

126. **Rhodes Ranch Golf Course**:  The golf course situated within the Rhodes Ranch master-planned community located in the southwestern Las Vegas valley.

127. **Roll-Up Transaction**:  A dissolution or winding up of the corporate existence of a Debtor or Reorganized Debtor under applicable state law or the consolidation, merger, contribution of assets, or other transaction in which a Debtor or Reorganized Debtor merges with or transfers substantially all of its assets and liabilities to another Debtor or Reorganized Debtor, on or after the Effective Date.

128. **Schedules**:  The schedules of assets and liabilities, schedules of executory contracts, and statement of financial affairs, as amended from time to time, Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

129. **Second Lien Agent**:  The current and former agents, arranger, and bookrunner with respect to, or under, the Second Lien Credit Agreement.

130. **Second Lien Credit Agreement**:  The Credit Agreement (as may have been amended from time to time) dated as of November 21, 2005 among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein, as the Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, and the other Loan Documents (as defined in the Second Lien Credit Agreement).

131. **Second Lien Lender Claims**:  All Second Lien Lender Secured Claims and Second Lien Lender Deficiency Claims.

132. **Second Lien Lender Secured Claim**:  Any Secured Claim on account of the Second Lien Credit Agreement.

133. **Second Lien Lender Deficiency Claim**:  Any deficiency Claim arising under the Second Lien Credit Agreement.

134. **Second Lien Lenders**:  The Second Lien Agent and the entities that hold debt under the Second Lien Credit Agreement.

135. **Secured**:  When referring to a Claim: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan as a Secured Claim.

136. **Securities Act**:  The Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law.

14

137.  Security:  As defined in section 2(a)(1) of the Securities Act.

138.  Servicer:  An agent, servicer, or other authorized representative of Holders of Claims or Interests recognized by the Plan Proponent.

139.  Solicitation Procedures Order:  That certain order entered by the Bankruptcy Court on  approving certain solicitation procedures for solicitation of votes on the Plan.

140.  Stanley Engineering Litigation:  The litigation styled Rhodes Homes Arizona, LLC v. Stanley Consultants, Inc., No. CV2006-011358, currently pending in the Superior Court of Arizona, Maricopa County.

141.  Subordinated Claim:  Any Claim that is subordinated pursuant to section 510 of the Bankruptcy Code.

142.  Supremacy Clause: Paragraph 2 of Article VI of the U.S. Constitution.

144.  SWAP Transaction:  That certain transaction between Credit Suisse International and Heritage Land Company, LLC with Trade Date of December 9, 2005 and CSIN External ID 53095828.

145.  Unclaimed Distribution:  Any distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, presented such check for payment within 120 days of the date of the check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

146.  Uniform Commercial Code:  The Uniform Commercial Code as in effect on the Effective Date, as enacted in the applicable state.

147.  Unimpaired:  With respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

148.  Unsecured Claim:  Any Claim that is not secured by a Lien on property in which the Debtor's Estate has an interest.

149.  U.S. Constitution:  The Constitution of the United States of America.

151.  Voting Deadline:  January 4, 2010.

B.  Rules of Interpretation:

1.  For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference in

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references in the Plan to Articles are references to Articles of the Plan or to the Plan; (f) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) unless otherwise set forth in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (k) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (l) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (m) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

**2.**    Computation of Time:   In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

C.    Reference to Monetary Figures:  All references in the Plan to monetary figures shall refer to currency of the United States of America.

**ARTICLE II.**
ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.

A.    Administrative Claims:  Each Allowed Administrative Claim shall be paid in full, in Cash, (i) on the later of (a) the Effective Date, (b) the date on which the Bankruptcy Court enters an order allowing such Allowed Administrative Claim or (c) the date on which the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

(and in consultation with the First Lien Agent and Second Lien Agent) and the Holder of such Allowed Administrative Claim otherwise agree, and (ii) in such amounts as (a) are incurred in the ordinary course of business by the Debtors, (b) are Allowed by the Bankruptcy Court, (c) may be agreed upon between the Holder of such Allowed Administrative Claim and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), or (d) may otherwise be required under applicable law.  Such Allowed Administrative Claims shall include costs incurred in the operation of the Debtors' businesses after the Petition Date, the allowed fees and expenses of Professionals retained by the Debtors and the Creditors' Committee and the fees due to the United States Trustee pursuant to 28 U.S.C. § 1930.

B.    Priority Tax Claims:  Allowed Priority Tax Claims shall be paid in full, in Cash, upon the later of (a) the Effective Date, (b) the date upon which there is a Final Order allowing such Claim as an Allowed Priority Tax Claim, (c) the date that such Allowed Priority Tax Claim would have been due if the Chapter 11 Cases had not been commenced, or (d) upon such other terms as may be agreed to between the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), and any Holder of an Allowed Priority Tax Claim; provided, however, that the Reorganized Debtors or Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), in lieu of payment in full of Allowed Priority Tax Claims on the Effective Date, may make Cash payments respecting Allowed Priority Tax Claims deferred to the extent permitted by Section 1129(a)(9) of the Bankruptcy Code and, in such event, unless otherwise provided herein, interest shall be paid on the unpaid portion of such Allowed Priority Tax Claim at the Federal statutory rate; provided, further, that deferred Cash payments on account of an Allowed Priority Tax Claim shall be paid quarterly over a period of six years commencing with the quarter after which such Priority Tax Claim has been Allowed.

**ARTICLE III.**
CLASSIFICATION AND TREATMENT
OF CLAIMS AND INTERESTS

A.    Classification of Claims and Interests:    All Claims and Interests, except Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

1.     Class Identification:   Below is a chart assigning each Class a letter and, in some cases, a number for purposes of identifying each separate Class.

| Class | Claim or Interest Type |
|---|---|
| A-1 | First Lien Lender Secured Claims |
| A-2 | Second Lien Lender Secured Claims |
| A-3 | Other Secured Claims |
| B | Priority Non-Tax Claim |
| C-1 | General Unsecured Claims |
| C-2 | First Lien Lender Deficiency Claims |
| C-3 | Second Lien Lender Deficiency Claims |
| C-4 | Subordinated Claims |
| D | Old Equity Interests |
| E | Intercompany Claims |

B.     Treatment of Classes of Claims and Interests:   To the extent a Class contains Allowed Claims or Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below.

1.     Class A-1—First Lien Lender Secured Claims

a.     Classification:   Class A-1 consists of all First Lien Lender Secured Claims.

b.     Impairment and Voting:   Class A-1 is Impaired by the Plan.   Each Holder of an Allowed Claim in Class A-1 is entitled to vote to accept or reject the Plan.

c.     Treatment:   On the Effective Date or such other date as set forth herein, each of the First Lien Lenders (or its Permitted Nominee) shall receive on account of its Secured Claims, (w) its pro rata share of $1.5 million in Cash from the proceeds of the First Lien Lenders' Collateral, (x) its pro rata share of 100% of the New First Lien Notes, and (y) its pro rata share of 100% of the Newco Equity Interests (subject to dilution for any Newco Equity Interests issued pursuant to a Management and Director Equity Incentive Plan).   The $1.5 million payment to the First Lien Lenders shall be allocated and deemed paid to the First Lien Lenders in accordance with Article VII.F. of the Plan.

2.     Class A-2—Second Lien Lender Secured Claims

a.     Classification:   Class A-2 consists of all Second Lien Lender Secured Claims.

18

b.    Impairment and Voting:  Class A-2 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class A-2 is entitled to vote to accept or reject the Plan.

c.    Treatment:  On the Effective Date, only if the Class of Second Lien Lender Secured Claims votes in favor of the Plan, each of the Second Lien Lenders (or its Permitted Nominee) shall receive its pro rata share of a 50% interest in the Stanley Engineering Litigation, without a reduction on account of the reasonable fees and expenses of Ropes & Gray LLP and local counsel for the Second Lien Agent, subject to an aggregate cap of $500,000, each of which such fees shall be paid in Cash to the Second Lien Agent on the Effective Date.  If the Class of Second Lien Lender Secured Claims votes in favor of the Plan, upon final resolution of the Stanley Engineering Litigation, each holder of an Allowed Second Lien Lender Claim will receive its pro rata share of the net proceeds of the Stanley Engineering Litigation.  If the Class of Second Lien Lender Secured Claims votes against the Plan, each of the Second Lien Lenders shall receive no recovery on account of such Secured Claims.

3.    Class A-3—Other Secured Claims

a.    Classification:  Class A-3 consists of all Other Secured Claims.

b.    Impairment and Voting:  Class A-3 is Unimpaired by the Plan.  Each Holder of an Allowed Claim in Class A-3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c.    Treatment:  To the extent not satisfied by the Debtors, pursuant to Bankruptcy Court order, in the ordinary course of business prior to the Effective Date, at the option of the Reorganized Debtors on or after the Effective Date (i) an Allowed Other Secured Claim shall be Reinstated and rendered Unimpaired in accordance with section 1124(2) of the Bankruptcy Code, (ii) a Holder of an Allowed Other Secured Claim shall receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable, (iii) a Holder of an Allowed Other Secured Claim shall receive the Collateral securing both its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (iv) a Holder of an Allowed Other Secured Claim shall receive such treatment as to which such holder and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), otherwise agree.

4.    Class B—Priority Non-Tax Claims

a.    Classification:  Class B consists of all Priority Non-Tax Claims.

b.    <u>Impairment and Voting</u>:  Class B is Unimpaired by the Plan.  Each Holder of an Allowed Claim in Class B is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c.    <u>Treatment</u>:  Each Holder of an Allowed Priority Non-Tax Claim shall receive Cash in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, unless the Holder of an Allowed Priority Non-Tax Claim and the Reorganized Debtors or the Debtors, with the consent of the First Lien Steering Committee (and in consultation with the First Lien Agent and Second Lien Agent), otherwise agree.

5.    <u>Class C-1—General Unsecured Claims (including any Allowed Rhodes Entities Claims)</u>

a.    <u>Classification</u>:  Class C-1 consists of all General Unsecured Claims including any Allowed Rhodes Entities Claims.

b.    <u>Impairment and Voting</u>:  Class C-1 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-1 is entitled to vote to accept or reject the Plan.

c.    <u>Treatment</u>:   On the Effective Date, each Holder of an Allowed General Unsecured Claim (including any Allowed Rhodes Entities Claims) shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of General Unsecured Claims on account of its Allowed Claim.

6.    <u>Class C-2—First Lien Lender Deficiency Claims</u>

a.    <u>Classification</u>:  Class C-2 consists of all First Lien Lender Deficiency Claims.

b.    <u>Impairment and Voting</u>:  Class C-2 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-2 is entitled to vote to accept or reject the Plan.

c.    <u>Treatment</u>:  On the Effective Date, each Holder of a First Lien Lender Deficiency Claim shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of First Lien Lender Deficiency Claims on account of its Allowed Claim.

7.    <u>Class C-3—Second Lien Lender Deficiency Claims</u>

a.    <u>Classification</u>:   Class C-3 consists of all Second Lien Lender Deficiency Claims.

20

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

b.    Impairment and Voting:  Class C-3 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-3 is entitled to vote to accept or reject the Plan.

c.    Treatment:  On the Effective Date, each Holder of an Allowed Second Lien Lender Deficiency Claim shall receive its pro rata share of the Litigation Trust Interests allocable to the Holders of Second Lien Lender Deficiency Claims on account of its Allowed Claim.  If the Class of Second Lien Lender Secured Claims votes against the Plan, the distribution of Litigation Trust Interests allocable to the Holders of Second Lien Lender Deficiency Claims shall be subject to the reasonable fees and expenses of Ropes & Gray LLP and local counsel for the Second Lien Agent.

8.    Class C-4—Subordinated Claims

a.    Classification:  Class C-4 consists of all Subordinated Claims.  The First Lien Steering Committee does not believe there are any Subordinated Claims but has created Class C-4 out of an abundance of caution.

b.    Impairment and Voting:  Class C-4 is Impaired by the Plan.  Each Holder of an Interest in Class C-4 is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.    Treatment:  Claims subordinated under applicable law shall not receive any recovery on account of their Claims.

9.    Class D—Old Equity Interests

a.    Classification:  Class D consists of all Old Equity Interests.

b.    Impairment and Voting:  Class D is Impaired by the Plan.  Each Holder of an Interest in Class D is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.    Treatment:  Each holder of an Old Equity Interest shall not be entitled to, and shall not receive or retain any property or interest in property on account of such Old Equity Interest.

10.    Class E—Intercompany Claims

a.    Classification:  Class E consists of all Intercompany Claims.

b.    Impairment and Voting:  Class E is Impaired by the Plan.  Each Holder of a Claim in Class E is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

c.    Treatment:  At the election of the Reorganized Debtors, Intercompany Claims will be (i) reinstated, in full or in part, (ii) resolved through set-off,

distribution, or contribution, in full or in part, or (iii) cancelled and discharged, in full or in part, in which case such discharged and satisfied portion shall be eliminated and the Holders thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such portion under the Plan.

C.    <u>Class Voting Rights</u>:  The voting rights of each Class are as follows.

1.    <u>Classes Entitled to Vote</u>:    The following Classes are Impaired and thus entitled to vote to accept or reject the Plan.

| Classes |
| --- |
| A-1 |
| A-2 |
| C-1 |
| C-2 |
| C-3 |

2.    <u>Presumed Acceptance of Plan</u>:  The following Classes are Unimpaired and deemed to accept the Plan.  Therefore, such Classes are not entitled to vote to accept or reject the Plan and the vote of such Holders of Claims and Interests shall not be solicited.

| Classes |
| --- |
| A-3 |
| B |

3.    <u>Presumed Rejection of Plan</u>:    The following Classes are Impaired and conclusively presumed to reject the Plan.  Therefore, such Classes are not entitled to vote to accept or reject the Plan and the vote of such Holders of Claims or Interests shall not be solicited.

| Class |
| --- |
| C-4 |
| D |
| E |

D.    <u>Bankruptcy Code Section 1111(b) Election</u>:    Bankruptcy Code section 1111(b)(1)(A) authorizes a class of secured claims to elect, by at least two-thirds in amount and more than half in number, to waive any deficiency claim otherwise assertable against the debtor and instead require the debtor to make payments equal to the total amount of the claims, with such payment obligation having a present value equal to the current value of the creditors' collateral.    A section 1111(b) election must be made by a class of secured creditors at or prior to the conclusion of the hearing on the Disclosure Statement.  No class

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

22

of Secured Claims made a section 1111(b) election at or prior to the conclusion of the hearing on the Disclosure Statement.  Accordingly, Bankruptcy Code section 1111(b) is not applicable to the Plan.

E.    Acceptance or Rejection of the Plan

1.    Acceptance by Impaired Classes of Claims:  Pursuant to Bankruptcy Code section 1126(c) and except as otherwise provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

2.    Tabulation of Votes on a Consolidated Basis:  The Claims and Solicitation Agent will tabulate all votes on the Plan on a consolidated basis for the purpose of determining whether the Plan satisfies Bankruptcy Code section 1129(a)(8) and (10).

3.    Cramdown:  The First Lien Steering Committee requests Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The First Lien Steering Committee reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

4.    Controversy Concerning Impairment:  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE IV.**
PROVISIONS FOR IMPLEMENTATION OF THE PLAN

A.    Substantive Consolidation:  The Plan shall serve as a motion by the First Lien Steering Committee seeking entry of a Bankruptcy Court order substantively consolidating all of the Estates into a single consolidated Estate for all purposes associated with Confirmation and distributions to be made under the Plan.

If substantive consolidation of all of the Estates is ordered, then on and after the Effective Date, all assets and liabilities of the Debtors shall be treated as though they were merged into the Estate of The Rhodes Companies, LLC for all purposes associated with Confirmation and Consummation, and all guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor shall be treated as one collective obligation of the Debtors. Substantive consolidation shall not affect the legal and organizational structure of the Reorganized Debtors or their separate corporate existences or any prepetition or postpetition guarantees, Liens, or security interests that are required to be maintained under the Bankruptcy Code, under the Plan, or in connection with contracts or leases that were assumed or entered into during the Chapter 11 Cases.  All duplicative Claims (identical in both amount and subject matter) Filed against more than one of the Debtors shall be

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

automatically expunged so that only one Claim survives against the consolidated Debtors (but in no way shall such surviving Claim be deemed Allowed by reason of this Section). Any alleged defaults under any applicable agreement with the Debtors or the Reorganized Debtors arising from substantive consolidation shall be deemed Cured as of the Effective Date.

B.      Sources of Consideration for Plan Distributions:  The Reorganized Debtors shall fund distributions under the Plan with Cash on hand, proceeds from the Mediation Settlement, existing assets, and the issuance of the New First Lien Notes and Newco Equity Interests.

1.      Newco Equity Interests:  On the Effective Date, but not more than thirty days after the Effective Date for initial distributions on account of Allowed Claims, Newco shall issue Newco Equity Interests (based upon the Newco Total Enterprise Value) to the Holders of First Lien Lender Secured Claims.  Each share of Class A-2 Equity Interest will be convertible at the option of the holder, exercisable at any time, into one Class A-1 Equity Interest.

The economic rights of the Class A-1 Equity Interests and Class A-2 Equity Interests shall be identical.  The Class A-2 Equity Interests will not be entitled to general voting rights, but will be entitled to vote on an "as converted" basis (together with the holders of the Class A-1 Equity Interests, as a single class) on certain non-ordinary course transactions, including (i) any authorization of, or increase in the number of authorized shares of, any class of capital stock ranking equal or senior to the Newco Equity Interests as to dividends or liquidation preference, including additional Newco Equity Interests, (ii) any amendment to the Newco's certificate of incorporation or by-laws, (iii) any amendment to any shareholders agreement, (iv) any sale, lease or other disposition of all or substantially all of the assets of the Reorganized Debtors through one or more transactions, (v) any recapitalization, reorganization, consolidation or merger of the Reorganized Debtors, (vi) to the extent that holders of Class A-1 Equity Interests have the right to vote thereon, any issuance or entry into an agreement for the issuance of capital stock (or any options or other securities convertible into capital stock) of the Reorganized Debtors, except as may be provided for under any management incentive plan, and (vii) to the extent that holders of Class A-1 Equity Interests have the right to vote thereon, any redemption, purchase or other acquisition by the Newco of any of its capital stock (except for purchases from employees upon termination of employment).

The Class A-2 Equity Interests will be entitled to a separate class vote on any amendment or modification of any rights or privileges of the Class A-2 Equity Interests that does not equally affect the Class A-1 Equity Interests.  In any liquidation, dissolution or winding up of the Reorganized Debtors, all assets will be distributed to holders of the Newco Equity Interests on a pro rata basis.

a.      Section 1145 Exemption:  Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any Securities contemplated by the Plan and any and all settlement agreements incorporated therein, including the

Newco Equity Interests, shall, to the fullest extent permitted by applicable law, be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities.  In addition, under section 1145 of the Bankruptcy Code any Securities contemplated by the Plan, including the Newco Equity Interests and New First Lien Notes, will be freely tradable and transferable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (ii) the restrictions, if any, on the transferability of such Securities and instruments set forth in the Newco LLC Operating Agreement, a draft of which is attached to the Disclosure Statement as Exhibit J; and (iii) applicable regulatory approval.

      b.   <u>Issuance and Distribution of the Newco Equity Interests</u>:  The Newco Equity Interests, when issued or distributed as provided in the Plan, will be duly authorized, validly issued, and, if applicable, fully paid and nonassessable.  Each distribution and issuance shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

    <u>2.</u>   <u>New First Lien Notes</u>:  On the Effective Date or as soon as reasonably practicable thereafter, Newco shall issue the New First Lien Notes.  The Reorganized Debtors shall be co-borrowers and guarantors under the New First Lien Notes.  The New First Lien Notes shall have the terms set forth on Exhibit 2 to the Plan and as otherwise provided in the terms of the documents governing the New First Lien Notes.  A draft of the New First Lien Notes credit agreement is attached to the Disclosure Statement as Exhibit K.

    <u>3.</u>   <u>Exit Financing:</u>  To the extent the board of directors of Newco (or such other governing body) determines that additional financing is necessary for the operation of the Reorganized Debtors' businesses, Newco and/or the Reorganized Debtors may obtain additional financing.  The First Lien Steering Committee does not anticipate that additional sources of funding in addition to Cash on hand, the Newco Equity Interests and the New First Lien Notes will be necessary to fund distributions under the Plan on the Effective Date.

C.   <u>Corporate Existence</u>:  Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

D. _Vesting of Assets in the Reorganized Debtors_:  Except for any Claims or Causes of Action transferred to the Litigation Trust and unless otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E. _Cancellation of Equity Securities and Related Obligations_:  On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the Old Equity Interests and any other Certificate, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such Certificates, notes, other instruments or documents evidencing indebtedness or obligations of the Debtors that are Reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Old Equity Interests and any other Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements or Certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; _provided_, _however_, that notwithstanding Confirmation, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of: (w) allowing Holders to receive distributions under the Plan; (x) allowing a Servicer to make distributions on account of such Claims as provided in the applicable governing agreement; (y) permitting such Servicer to maintain any rights and Liens it may have against property other than the Reorganized Debtors' property for fees, costs, and expenses pursuant to such indenture or other agreement; and (z) governing the rights and obligations of non-Debtor parties to such agreements vis-à-vis each other (including, without limitation, the rights and obligations of non-Debtor parties under the First Lien Credit Agreement and the Second Lien Credit Agreement, which, for the avoidance of doubt, shall not be affected by the Plan except as otherwise expressly provided in the Plan); _provided_, _further_, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors.  The Reorganized Debtors shall not have any obligations to any Servicer for any fees, costs, or expenses, except as expressly otherwise provided in the Plan.

F. _Restructuring Steps and Transfer of Certain Interests to Newco_:  In the event the Rhodes Entities comply with all of their obligations pursuant to the Mediation Settlement and the Plan, on the Effective Date or, in the case of step (4) below, effective the next day, the following transactions shall be deemed to have occurred in the order set forth below.

26

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

1.    Newco shall be formed as a new limited liability company.  The First Lien Lender Secured Claims shall be deemed to have been exchanged for the membership interests in Newco.  Newco shall be deemed to hold all of the First Lien Lender Secured Claims.  At the option of a holder, membership interests in Newco may be transferred to a corporation prior to Step 2.

2.    Newco shall purchase all of the Heritage Equity Securities for $10.00.

3.    Contemporaneous with or subsequent to Newco's purchase of the Heritage Equity Securities, The Rhodes Companies, LLC - the general partner of each of Tick, LP; Glynda, LP; Jackknife, LP; LP; Batcave, LP; Overflow, LP; Wallboard, LP; and Chalkline, LP, --shall sell its general partnership interests in such entities to Newco for $1.00.  Alternatively, the membership interest in The Rhodes Companies, LLC may be acquired from its sole member – Sagebrush Enterprises, Inc. – in consideration for release of its obligations under the First Lien Lender Secured Claims.

4.    Newco's members may agree to continue Newco as an LLC,  file a check the box election effective the day after the Effective Date to treat Newco as a corporation for tax purposes, or convert into a corporation as of the day after the Effective Date.

In any event, to the extent any cancellation of indebtedness is derived from the foregoing transactions under the Internal Revenue Code, it shall be allocable to the holders of the Old Equity Interests as required by the Internal Revenue Code.  To be clear, Newco's purchase of the Heritage Equity Securities shall occur (a) contemporaneously with or immediately before the membership interests of those entities described in Article IV.F.3, immediately above, are acquired; (b) before any debt or obligations of the Debtors are canceled or forgiven; (d) before any new notes are issued or existing debt is modified by the Reorganized Debtors; and (e) before any of the other acts or events contemplated in Article III.B, et seq., of the Plan.  The holders of the Heritage Equity Securities and Newco will report the sale and purchase of the Heritage Equity Securities in accordance with revenue ruling 99-6, 1991-1 CB 432.

G.    Restructuring Transactions:   On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; (4) the Roll-Up Transactions; (5) the establishment of a liquidation trust or other appropriate vehicle to hold assets for sale that will not be utilized in the business of the Reorganized Debtors; and (6) all other actions that the Reorganized Debtors determine are necessary or appropriate, including the making of filings or recordings in connection with the relevant Roll-Up Transactions.  The form of each Roll-Up

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Transaction shall be determined by the Reorganized Debtor that is party to such Roll-Up Transaction.  Implementation of the Roll-Up Transactions shall not affect any distributions, discharges, exculpations, releases, or injunctions set forth in the Plan.

H.    Corporate Action:  Each of the matters provided for by the Plan involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of the Reorganized Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Holders of Claims or Interests, directors of the Debtors, or any other Entity.  Without limiting the foregoing, such actions may include:  the adoption and filing of the Newco LLC Operating Agreement; the adoption and filing of organization documents of the other Reorganized Debtors; the appointment of directors and officers for the Reorganized Debtors; and the adoption, implementation, and amendment of the Management and Director Equity Incentive Plan.

I.    Post-Confirmation Property Sales:  To the extent the Reorganized Debtors sell any of their property prior to or including the date that is one year after Confirmation, including, without limitation, the Arizona Assets, the Reorganized Debtors may elect to sell such property pursuant to sections 363, 1123, and 1146(a) of the Bankruptcy Code.

J.    Organizational Documents:  The certificates of incorporation and bylaws (or other formation documents relating to limited liability companies, limited partnerships or other forms of Entity) of the Debtors shall be in form and substance acceptable to the First Lien Steering Committee and shall be consistent with the provisions of the Plan and the Bankruptcy Code.  The Newco LLC Operating Agreement shall be in form and substance acceptable to the First Lien Steering Committee.  The organizational documents for Newco shall, among other things:  (1) authorize issuance of the Newco Equity Interests; and (2) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting Equity Securities.  On or as soon as reasonably practicable after the Effective Date, to the extent required, each of the Reorganized Debtors shall file new certificates of incorporation (or other formation documents relating to limited liability companies limited partnerships, or other forms of Entity) in form and substance acceptable to First Lien Steering Committee, with the secretary (or equivalent state officer or Entity) of the state under which each such Reorganized Debtor is or is to be incorporated or organized.  On or as soon as reasonably practicable after the Effective Date, to the extent required, Newco shall file the applicable organizational documents with the secretary (or equivalent state officer or Entity) of the state under which Newco is to be incorporated or organized.  After the Effective Date, each Reorganized Debtor may amend and restate its new certificate of incorporation and other constituent documents as permitted by the relevant state corporate law.

K.    Effectuating Documents, Further Transactions:  On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors (or other governing bodies) thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further

evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

L.   Exemption from Certain Transfer Taxes and Recording Fees:  Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

M.   Directors and Officers of the Reorganized Debtors:  On the Effective Date, the board of directors of the Reorganized Debtors or similar governing entities shall be composed of one or more members appointed by the First Lien Steering Committee.  On the Effective Date, a chief executive officer or similar officer selected by the board of directors of the Reorganized Debtors shall be appointed.  The identity of such officers and directors shall be disclosed at or prior to the Confirmation Hearing.

N.   Management and Director Equity Incentive Plan:  The Reorganized Debtors reserve the right to implement a Management and Director Equity Incentive Plan.  The terms and conditions of any Management and Director Equity Incentive Plan shall be determined by the Board of Directors of Newco.

O.   The Litigation Trust:  On the Effective Date, the Litigation Trust will be implemented pursuant to the terms of the Litigation Trust Agreement.  A draft of the Litigation Trust Agreement is attached to the Disclosure Statement as Exhibit I.  On the Effective Date, pursuant to the terms of the Litigation Trust Agreement, the Debtors will transfer the Litigation Trust Assets for and on behalf of the Litigation Trust Beneficiaries, which will be the Holders of Allowed Claims in Classes C-1, C-2 and C-3.  For all federal income tax purposes, the beneficiaries of the Litigation Trust shall be treated as grantors and owners thereof and it is intended that the Litigation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations and that such trust is owned by its beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Litigation Trust Beneficiaries be treated as if they had received a distribution of an undivided interest

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

29

in the Litigation Trust Assets and then contributed such interests to the Litigation Trust. The Litigation Trust will initially be funded with $100,000, which amount will be transferred to the Litigation Trust on the Effective Date and which will be repaid to the Reorganized Debtors from the first proceeds received by the Litigation Trust.

The Litigation Trust shall issue non-transferable interests to Holders of Allowed First Lien Lender Deficiency Claims, Allowed Second Lien Lender Deficiency Claims, and Allowed General Unsecured Claims (including any Allowed Rhodes Entities Claims) with each Holder of an Allowed Claim in each of the foregoing Classes of Claims receiving its pro rata share of the Litigation Trust Interests allocable to each such Class of Claims.

A list of Litigation Trust Assets is attached to the Disclosure Statement as Exhibit G. The Litigation Trust Assets shall include all Claims existing against the Rhodes Entities that are not expressly released under the Plan.

P.    Preservation of Causes of Action:  In accordance with section 1123(b) of the Bankruptcy Code, except as otherwise provided in the Plan, the Reorganized Debtors and the Litigation Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated on Exhibit L to the Disclosure Statement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors and the Litigation Trust, as applicable, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors and the Litigation Trust, as applicable. **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, Reorganized Debtors or the Litigation Trust, as applicable, will not pursue any and all available Causes of Action against them. The Reorganized Debtors and the Litigation Trust, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors and the Litigation Trust, as applicable, expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

The Reorganized Debtors and the Litigation Trust, as applicable, reserve and shall retain the foregoing Causes of Action notwithstanding the rejection or repudiation of any executory contract or unexpired lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors and the Litigation Trust, as the case may be, on the Effective Date. The applicable Reorganized Debtor and the Litigation Trust, as applicable, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action belonging to it. The

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

30

Reorganized Debtors and the Litigation Trust, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  Neither the Litigation Trust nor the Reorganized Debtors shall commence any litigation against the Rhodes Entities until the Bankruptcy Court rules on the allowance of the Rhodes Entities Claims set forth in Proofs of Claim, included in the Debtors' Schedules or otherwise set forth in the Mediation Term Sheet.  To the extent any statute of limitations to pursue any claims belonging to the Debtors against the Rhodes Entities would lapse from the execution date of the Mediation Term Sheet through the Bankruptcy Court's resolution of the allowance of the Rhodes Entities Claims, the Rhodes Entities shall be deemed to have consented to an extension of the applicable statute of limitations until sixty days following the Bankruptcy Court's ruling on the allowance of the Rhodes Entities Claims.  The Litigation Trust shall have no liability to any entity for any Claims or Causes of Action it determines not to pursue.

Q.     HOA Board Seats:  The Rhodes Entities shall ensure that designees identified by the Reorganized Debtors shall replace the Rhodes Entities on any HOA boards that in any way are related to the Debtors, Reorganized Debtors or their businesses and Declarant rights or the like shall be transferred to the Reorganized Debtors or their designee(s).

R.     Licensing:  The Rhodes Entities shall take commercially reasonable steps and/or enter into any agreements or similar documentation reasonably necessary to ensure the Reorganized Debtors' continued use of all of the Debtors' applicable professional licenses at no cost to the Rhodes Entities for a period of up to twelve months following the Effective Date.   To the extent, Sagebrush Enterprises, Inc. shall have rescinded by September 25, 2009 its revocation of its indemnity of the Nevada contractors' license held by Rhodes Design & Development Corporation and such rescission did not negatively affect the general contractor's license held by Rhodes Design & Development Corporation, Sagebrush shall be entitled to file an Administrative Claim on behalf of any and all claims asserted against Sagebrush as a result of Sagebrush being the indemnitor that arose from and after the effectiveness of Sagebrush's recission of its indemnity through the Effective Date, provided that the allowance of such Administrative Claim shall be subject to resolution by the Bankruptcy Court and/or such other court(s) of competent jurisdiction.  The Reorganized Debtors shall indemnify Sagebrush for any and all claims asserted against Sagebrush as a result of Sagebrush being the indemnitor that arise from and after the Effective Date. Professional licenses include, but are not limited to the Nevada State Contractor's Board license, and any other general business or similar licenses in any county, state, municipality or other jurisdiction in which the Reorganized Debtors conduct business or own assets as of the Effective Date.   The Rhodes Entities shall use commercially reasonable efforts to maintain third party agreements with their real estate brokers and sales agents.

S.     Transfer of Rhodes Ranch Golf Course:  On the Effective Date, the applicable Rhodes Entities shall transfer their equity interests in the entity that owns the Rhodes Ranch Golf Course to the Reorganized Debtors (together with any equipment, golf carts, contracts or other assets determined by the First Lien Steering Committee to be necessary for the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York  10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

operation of the Rhodes Ranch Golf Course) pursuant to the terms of a stock transfer agreement (the "Stock Transfer Agreement") in form and substance acceptable to the First Lien Steering Committee and Rhodes, subject to any outstanding third party debt on the Rhodes Ranch Golf Course.  The Stock Transfer Agreement shall contain representations by the Rhodes Entities that the entity that owns the Rhodes Ranch Golf Course does not have any liabilities other than ordinary course liabilities related to the Rhodes Ranch Golf Course and indemnification provisions in favor of the Reorganized Debtors by the Rhodes Entities for any non-ordinary course liabilities.  In addition, prior to the deadline for filing objections to the Disclosure Statement, the Rhodes Entities shall provide the First Lien Steering Committee with a list of all liabilities of the entity that owns the Rhodes Ranch Golf Course, a lien analysis and copies of all contracts related to the Rhodes Ranch Golf Course and to which the entity that owns the Rhodes Ranch Golf Course is a party, each of which must be acceptable to the First Lien Steering Committee.  Pursuant to the Stock Transfer Agreement governing the transfer of the equity in the entity that owns the Rhodes Ranch Golf Course to the Reorganized Debtors, the entity that owns the Rhodes Ranch Golf Course post-Effective Date shall agree to indemnify James Rhodes for any ordinary course liability first incurred post-Effective Date by such entity under any contract related to the operation of the Rhodes Ranch Golf Course for which James Rhodes has provided a personal guaranty.

The existing $5.9 million third party debt outstanding on the Rhodes Ranch Golf Course shall be refinanced on or before the Effective Date, for a period of no less than twelve (12) months from the Effective Date, on terms and conditions acceptable to Rhodes and the First Lien Steering Committee.  The parties will work together in good faith to refinance the existing third party debt.  Upon obtaining a final commitment for refinancing for the Rhodes Ranch Golf Course, the First Lien Steering Committee will disclose such terms in a filing with the Bankruptcy Court.  The $2.4 million loan by James Rhodes to the entity that owns the Rhodes Ranch Golf Course will be contributed by James Rhodes to the entity that owns the Rhodes Ranch Golf Course and he will indemnify the Debtors, the Reorganized Debtors, Newco and the entity that owns the Rhodes Ranch Golf Course from any liability arising from the contribution of such loan.

The Reorganized Debtors shall pay the reasonable costs and expenses associated with the refinancing; provided, that the terms of such refinancing are acceptable to the First Lien Steering Committee.  The First Lien Steering Committee acknowledges that the loan documentation may provide that, upon the transfer of the Rhodes Ranch Golf Course to the Reorganized Debtors on the Effective Date, additional collateral from the Reorganized Debtors may be required.  The Rhodes Entities shall transfer to the Reorganized Debtors on the Effective Debt any contracts related to the operation of and revenue generated by any cell towers located on the property of the Rhodes Ranch Golf Course.  Any funds received after July 31, 2009 from the Las Vegas Valley Water District or other similar entity as an incentive for converting the golf course from a green course to a desert course shall be used for operating expenses associated with the Rhodes Ranch Golf Course, with any excess to become property of the Reorganized Debtors on the Effective Date.

Rhodes and/or his designee shall have the absolute right to repurchase the Rhodes Ranch Golf Course from the Reorganized Debtors at eight (8) years from the Effective Date for $5.9 million in cash.  The Reorganized Debtors may require Rhodes to purchase the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Rhodes Ranch Golf Course any time between four (4) and eight (8) years from the Effective Date for $5.9 million in cash provided that the Reorganized Debtors shall provide Rhodes with at least one year advance notice of its intent to sell the Rhodes Ranch Golf Course back to Rhodes.  Such transfer shall occur on the applicable anniversary date of the Effective Date.  For the avoidance of doubt, if the Reorganized Debtors put the Rhodes Ranch Golf Course to Rhodes in accordance with the terms hereof and Rhodes fails to comply with his obligation to purchase the Rhodes Ranch Golf Course, Rhodes shall be deemed to have forfeited his option to purchase the Rhodes Ranch Golf Course.

Notwithstanding anything to the contrary contained herein, if the Rhodes Ranch Golf Course is not maintained with substantially the same performance and rating criteria at the time of the repurchase request as verified by an independent third party rating agency as it was on the Effective Date ("Standard Condition"), James Rhodes can (i) require the Reorganized Debtors to cure any conditions to return the Rhodes Ranch Golf Course to its Standard Condition (provided, that the cost of such cure does not exceed $500,000), or (ii) choose not to purchase the Rhodes Ranch Golf Course.

On the Effective Date, the Reorganized Debtors shall record a memorandum of agreement against the Rhodes Ranch Golf Course to evidence the above.

T.    Cash Payment:  The Rhodes Entities shall make a cash payment to the Reorganized Debtors of $2.3 million in Cash on the Effective Date.  The $2.3 million cash payment shall be placed into an escrow account with a financial institution mutually acceptable to the First Lien Steering Committee and the Rhodes Entities within two business days after entry of the Confirmation Order and on terms mutually acceptable to the First Lien Steering Committee and the Rhodes Entities.  The $2.3 million cash payment shall be used to fund distributions under the Plan and provide working capital to the extent of any excess.

U.    Transfer of Arizona Assets:  Prior to the Effective Date, the Debtors shall obtain entry of an order of the Bankruptcy Court pursuant to which an entity selected by the Rhodes Entities shall be approved as the stalking horse bidder to acquire Pravada and the other Arizona Assets (the "Arizona Assets Bid Procedures Order"), plus the Golden Valley Ranch tradename free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code for $1,222,999 in cash (the "Arizona Assets Sale"); provided, that the non-First Lien Lender/Second Lien Lender liens do not exceed $60,000; provided, further, that such assets shall not include assets owned by Pinnacle Grading located in Arizona and related contracts associated with the assets.  The bid procedures pursuant to which the Arizona Assets will be sold shall be submitted to the Bankruptcy Court for approval pursuant to the Arizona Assets Bid Procedures Order and shall provide procedures for (i) competing bids to be submitted by qualified buyers for the Arizona Assets and (ii) the conducting of an auction, if necessary, to select the winning bidder for the Arizona Assets.  **All Claims asserted against the Arizona Assets shall be deemed asserted against the Estates and shall be classified in accordance with Article III hereof for distribution purposes.**  The Arizona Assets shall be transferred to the winning bidder for such assets pursuant to an order of the Bankruptcy Court (the "Arizona Assets Sale Order").  The terms of the Arizona Assets Sale Order shall be acceptable to the First Lien Steering Committee, the Reorganized Debtors and the winning bidder for the Arizona

Assets. The Arizona Assets will be transferred to the winning bidder in a manner to be agreed upon by the Reorganized Debtors, the First Lien Steering Committee and the winning bidder. Any non-real property assets or assets not included in the Arizona Assets that are titled in Rhodes Arizona Properties LLC or Elkhorn Investments, Inc. shall be transferred to Newco or one of the other Reorganized Debtors on the Effective Date. To the extent any real property assets located in Arizona are titled in any Debtor other than Rhodes Arizona Properties LLC, Elkhorn Investments, Inc. or Rhodes Homes Arizona, such real property assets shall be transferred to the winning bidder in connection with the Arizona Assets Sale. All intercompany claims assertable by Rhodes Arizona Properties LLC or Elkhorn Investments, Inc. against any other Debtor shall be deemed cancelled.

The Debtors shall provide James Rhodes notice of any proposed sale of the Pinnacle assets, and James Rhodes shall be granted a right to bid on the sale of such assets within 10 days of such notice. The winning bidder of the Arizona Assets Sale shall permit storage of Pinnacle Grading equipment at current locations at no cost to the Reorganized Debtors for a period through six months following the Effective Date.

All executory contracts and unexpired leases associated solely with Arizona shall be assumed and assigned to the winning bidder of the Arizona Assets Sale, at no cost to the Debtors or the Reorganized Debtors and all cure costs associated therewith shall be borne by the winning bidder.

The Arizona Assets include certain intellectual property in which Stanley Consultants, Inc. has alleged a property interest. Notwithstanding the fact that the Arizona Assets include such intellectual property, the Debtors shall not be permitted to transfer or sell any intellectual property in which they do not have an ownership interest.

V.      Trademarks and Trade Names:  Within the earlier of thirty (30) days following:  (i) upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E to the Mediation Term Sheet.

W.      Self Insured Retention Obligations:  The Reorganized Debtors shall indemnify subcontractors that are obligated under any of the Reorganized Debtors' existing insurance policies for any post-Effective Date self insured retention obligations paid and/or to be paid by such subcontractors pursuant to such existing insurance policies.

X.      Bond Replacement or Indemnification:  Those performance bonds guaranteed by the Rhodes Entities in favor of the Debtors shall be replaced on a renewal date by new performance bonds. In the alternative, subject to the Rhodes Entities being reasonably satisfied with the creditworthiness of the Reorganized Debtors, which shall be satisfied solely as of the Effective Date by the Court finding that the Plan is feasible, the existing performance bonds guaranteed by the Rhodes Entities and such guarantees shall remain in place. The applicable Rhodes Entity's agreement to remain a guarantor under the existing performance bonds as such performance bonds may be renewed shall be at no cost to the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

34

Rhodes Entities (including, but not limited to, the payment of bond premiums). In the event the Reorganized Debtors fail to perform their obligations underlying such renewed performance bonds after the Effective Date, the Reorganized Debtors will indemnify the Rhodes Entities under such outstanding performance bonds for damages incurred by the Rhodes Entities on account of their guarantee of such performance bonds solely as a result of the Reorganized Debtors' failure to perform such obligations subsequent to the Effective Date. The Reorganized Debtors shall use commercially reasonable efforts to replace all outstanding performance bonds backstopped by Rhodes Entities within 42 months of the Effective Date. The Bankruptcy Court shall retain jurisdiction to resolve any disputes arising out of this paragraph.

Contingent Bond Indemnity Claims will be released in the ordinary course of business as time passes or as work on the underlying project is completed. To the extent that a Contingent Bond Indemnity Claim becomes an Allowed or estimated Claim, such Contingent Bond Indemnity Claim shall be treated as a General Unsecured Claim.

Y.      Stanley Engineering Litigation  In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent, assuming the Class of Second Lien Lender Secured Claims votes in favor of the Plan, shall engage in good faith negotiations to ensure that the Second Lien Lenders receive consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration. In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation).

**ARTICLE V.**
TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      Assumption and Rejection of Executory Contracts and Unexpired Leases:  Except as otherwise provided in the Plan, the Debtors' executory contracts or unexpired leases not assumed or rejected pursuant to a Bankruptcy Court order prior to the Effective Date shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, except for those executory contracts or unexpired leases: (1) listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" attached to the Disclosure Statement as Exhibit N; (2) that are Intercompany Contracts, in which case such Intercompany Contracts are deemed automatically assumed by the applicable Debtor as of the Effective Date, unless such Intercompany Contract previously was rejected by the Debtors pursuant to a Bankruptcy Court order, is the subject of a motion to reject pending on the Effective Date; (3) that are the subject of a motion to assume or reject pending on the Effective Date (in which case such assumption or rejection and the effective date thereof shall remain subject to a Bankruptcy Court order); (4) that are subject to a motion to reject with a requested effective date of rejection after the Effective Date; or (5) that are otherwise expressly

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

assumed or rejected pursuant to the Plan. Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such executory contracts or unexpired leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, all assumptions or rejections of such executory contracts and unexpired leases in the Plan are effective as of the Effective Date. Each such executory contract and unexpired lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party prior to the Effective Date shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order. Notwithstanding anything to the contrary in the Plan, the Plan Proponent and the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the schedules of executory contracts or unexpired leases identified in Exhibit N to the Disclosure Statement at any time through and including fifteen days after the Effective Date. All executory contracts and unexpired leases associated solely with the Arizona Assets shall be assumed and assigned to the winning bidder (or its designee) to the extent set forth on the schedule of Assumed Executory Contracts and Unexpired Leases attached to the Disclosure Statement as Exhibit N, at no cost to the Debtors or the Reorganized Debtors and all Cure costs associated with such scheduled Arizona contracts or leases shall be borne by the winning bidder.

B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases:  With respect to each of the Debtors' executory contracts or unexpired leases listed on the schedule of "Assumed Executory Contracts and Unexpired Leases," the Plan Proponent shall have designated a proposed Cure, and the assumption of such executory contract or unexpired lease may be conditioned upon the disposition of all issues with respect to Cure. Any provisions or terms of the Debtors' executory contracts or unexpired leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by Cure, or by an agreed-upon waiver of Cure. Except with respect to executory contracts and unexpired leases in which the Plan Proponent or the Debtors, with the consent of the First Lien Steering Committee, and the applicable counterparties have stipulated in writing to payment of Cure, all requests for payment of Cure that differ from the amounts proposed by the Debtors must be Filed with the Court on or before the Cure Bar Date. Any request for payment of Cure that is not timely Filed shall be disallowed automatically and forever barred from assertion and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim for Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors of the amounts listed on the proposed Cure schedule, notwithstanding anything included in the Schedules or in any Proof of Claim to the contrary; provided, however, that nothing shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to File such request for payment of such Cure. The Reorganized Debtors also may settle any Cure without further notice to or action, order, or approval of the Bankruptcy Court.

If the Debtors or Reorganized Debtors, as applicable, or First Lien Steering Committee object to any Cure or any other matter related to assumption, the Bankruptcy Court shall determine the Allowed amount of such Cure and any related issues. If there is a dispute regarding such Cure, the ability of the Reorganized Debtors or any assignee to

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors with the consent of the First Lien Steering Committee, or the Reorganized Debtors and the counterparty to the executory contract or unexpired lease.  Any counterparty to an executory contract and unexpired lease that fails to object timely to the proposed assumption of any executory contract or unexpired lease will be deemed to have consented to such assumption.  The Debtors, with the consent of the First Lien Steering Committee, or the Reorganized Debtors, as applicable, reserve the right either to reject or nullify the assumption of any executory contract or unexpired lease no later than thirty days after a Final Order determining the Cure or any request for adequate assurance of future performance required to assume such executory contract or unexpired lease.

Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption.  Any Proofs of Claim Filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

All Cure costs associated with Executory Contracts related to the Arizona Assets shall be borne by the winning bidder of the Arizona Assets Sale.

C.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases:  Rejection or repudiation of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases.    In particular, notwithstanding any nonbankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, insurance coverage, utilitiy services, warranties, indemnity, guarantee of workmanship, or continued maintenance obligations on goods or services previously purchased by the contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected or repudiated executory contracts.  The Reorganized Debtors expressly reserve and do not waive the right to receive coverage under any past insurance policy to extent that coverage has not expired under the terms of the insurance policy, regardless of whether such insurance policy is listed as an assumed contract.  Similarly, the Reorganized Debtors expressly reserve and do not waive the right to receive services under any contract with a utility provider, regardless of whether such agreement with a utility provider is listed as an assumed contract.

D.    Claims Based on Rejection or Repudiation of Executory Contracts and Unexpired Leases:  Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection or repudiation of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be Filed with the

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

Claims and Solicitation Agent no later than the Rejection Damages Claim Deadline.  Any Proofs of Claim arising from the rejection or repudiation of the Debtors' executory contracts or unexpired leases that are not timely Filed by the Rejection Damages Claim Deadline shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Reorganized Debtor without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection or repudiation of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection or repudiation of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims.

E.    Intercompany Contracts, Contracts, and Leases Entered Into After the Petition Date:  Intercompany Contracts, contracts, and leases entered into after the Petition Date by any Debtor, and any executory contracts and unexpired leases assumed by any Debtor, may be performed by the applicable Reorganized Debtor in the ordinary course of business.

F.    Home Sales:  All pending home sale contracts shall be assumed by the applicable Reorganized Debtor.

G.    Warranties:  All eligible prepetition home sale contracts with one-year warranty obligations shall be performed in the ordinary course of business of the Reorganized Debtors.  Upon the Effective Date, any remaining warranty obligations that are to be assumed by the Reorganized Debtors, which shall only be assumed with the consent of the First Lien Steering Committee, shall be transferred to the Reorganized Debtors.  Warranty obligations that are not expressly assumed shall be rejected and treated as General Unsecured Claims.

H.    Modification of Executory Contracts and Unexpired Leases Containing Equity Ownership Restrictions:  All executory contracts and unexpired leases to be assumed, or conditionally assumed, under the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code shall be deemed so assumed, or so conditionally assumed, without giving effect to any provisions contained in such executory contracts or unexpired leases restricting the change in control or ownership interest composition of any or all of the Debtors, and upon the Effective Date (1) any such restrictions shall be deemed of no further force and effect and (2) any breaches that may arise thereunder as a result of Confirmation or Consummation shall be deemed waived by the applicable non-Debtor counterparty.

I.    Modifications, Amendments, Supplements, Restatements, or Other Agreements:  Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts and unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

Modifications, amendments, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

J.    Reservation of Rights:  Neither the exclusion nor inclusion of any contract or lease on Exhibit N to the Disclosure Statement, nor anything contained in the Plan, shall constitute an admission by the Debtors or the First Lien Steering Committee that any such contract or lease is in fact an executory contract or unexpired lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, with the consent of the First Lien Steering Committee, or Reorganized Debtors shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

K.    Nonoccurrence of Effective Date:  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
### PROCEDURES FOR RESOLVING DISPUTED CLAIMS

A.    Allowance of Claims:  After the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had with respect to any Claim immediately prior to the Effective Date, including the Causes of Action referenced in Article IV.

B.    Claims Administration Responsibilities:  Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.    Estimation of Claims:  Before or after the Effective Date, the First Lien Steering Committee or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero

dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty days after the date on which such Claim is estimated.

D.    Adjustment to Claims Without Objection:   Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. Beginning on the end of the first full calendar quarter that is at least ninety days after the Effective Date, the Reorganized Debtors shall publish and File every calendar quarter a list of all Claims that have been paid, satisfied, amended, or superseded during such prior calendar quarter.

E.    Time to File Objections to Claims:   Any objections to Claims shall be Filed on or before the later of (1) the applicable Claims Objection Deadline and (2) such date as may be fixed by the Bankruptcy Court, after notice and a hearing, whether fixed before or after the date that is one year after the Effective Date. Notwithstanding the foregoing, the First Lien Steering Committee, any First Lien Lender and/or the Reorganized Debtors shall have until sixty days following the Effective Date to object to the Proofs of Claim filed by the Rhodes Entities in the Debtors' chapter 11 cases (provided, that, such objections shall not seek to subordinate the Rhodes Entities Claims, if Allowed).

F.    Disallowance of Claims:   Except as set forth herein, any Claims held by an Entity from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors or the Litigation Trust, as applicable.

EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

G.    Offer of Judgment:  The Reorganized Debtors shall be authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the Holder of a Claim must pay the costs incurred by the Reorganized Debtors after the making of such offer, the Reorganized Debtors shall be entitled to setoff such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

H.    Amendments to Claims:  On or after the Effective Date, except as expressly authorized in the Plan, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

**ARTICLE VII.**
PROVISIONS GOVERNING DISTRIBUTIONS

A.    Total Enterprise Value for Purposes of Distributions Under the Plan:  Distributions of Newco Equity Interests to Holders of Allowed First Lien Lender Secured Claims shall be based upon, among other things, the Newco Total Enterprise Value of $99.6 million.  For purposes of distribution, the Newco Equity Interests shall be deemed to have the value assigned to them based upon, among other things, the Newco Total Enterprise Value, regardless of the date of distribution.

B.    Distributions on Account of Claims Allowed as of the Effective Date:  Except as otherwise provided in the Plan, a Final Order, or as agreed to by the First Lien Steering Committee, initial distributions under the Plan on account of Claims Allowed on or before the Effective Date shall be made on the Distribution Date; provided, however, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (2) Allowed Priority Tax Claims, unless otherwise agreed, shall be paid in full in Cash on the Distribution Date or over a five-year period as provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by applicable non-bankruptcy law.

C.    Distributions on Account of Claims Allowed After the Effective Date:

1.    Payments and Distributions on Disputed Claims:  Except as otherwise provided in the Plan, a Final Order, or as agreed to by the First Lien Steering Committee prior to the Effective Date or the Reorganized Debtors after the Effective Date, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the Periodic Distribution Date that is at least thirty days after the Disputed Claim becomes an Allowed Claim; provided, however, that (a) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that

become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date, unless otherwise agreed, shall be paid in full in Cash on the Periodic Distribution Date that is at least thirty days after the Disputed Claim becomes an Allowed Claim or over a five-year period as provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by applicable non-bankruptcy law.

2.    Special Rules for Distributions to Holders of Disputed Claims: Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Claim has been Allowed.  In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtors shall establish appropriate reserves for potential payment of such Claims or Interests pursuant to Article VII.C.3. Subject to Article IX.A.5, all distributions made pursuant to the Plan on account of an Allowed Claim shall be made together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to Holders of Allowed Claims included in the applicable Class.

3.    Reserve of Litigation Trust Interests: On the Effective Date, the Reorganized Debtors shall maintain in reserve Litigation Trust Interests for distribution to Holders of Disputed Claims that become Allowed after the Effective Date.  As Disputed Claims are Allowed, the Distribution Agent shall distribute, in accordance with the terms of the Plan, Litigation Trust Interests to Holders of Allowed Claims, and the Disputed Claims Reserve shall be adjusted.  The Distribution Agent shall withhold in the Disputed Claims Reserve any payments or other distributions made on account of, as well as any obligations arising from, the Litigation Trust Interests initially withheld in the Disputed Claims Reserve, to the extent that such Litigation Trust Interests continue to be withheld in the Disputed Claims Reserve at the time such distributions are made or such obligations arise, and such payments or other distributions shall be held for the benefit of Holders of Disputed Claims whose Claims, if Allowed, are entitled to distributions under the Plan.  The Reorganized Debtors may (but are not required to) request estimation for any Disputed Claim that is contingent or unliquidated.

Notwithstanding anything in the applicable Holder's Proof of Claim or otherwise to the contrary, the Holder of a Claim shall not be entitled to receive or recover a distribution under the Plan on account of a Claim in excess of the lesser of the amount: (a) stated in the Holder's Proof of Claim, if any, as of the Distribution Record Date, plus interest thereon to the extent provided for by the Plan; (b) if the Claim is denominated as contingent or unliquidated as of the Distribution Record Date, the amount that the Reorganized Debtors elect to withhold on account of such Claim in the Disputed Claims Reserve, or such other

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

amount as may be estimated by the Bankruptcy Court prior to the Confirmation Hearing; or (c) if a Claim has been estimated, the amount deposited in the Disputed Claim Reserve to satisfy such Claim after such estimation.

D.    Delivery of Distributions

1.    Record Date for Distributions:  On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, if a Claim is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    Distribution Agent:  The Distribution Agent shall make all distributions required under the Plan, except that distributions to Holders of Allowed Claims governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement.

3.    Delivery of Distributions in General:  Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Distribution Agent or a Servicer, as appropriate: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related Proof of Claim; (d) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Distribution Agent has not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf.  Except as otherwise provided in the Plan, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors, the First Lien Steering Committee, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

4.    Accrual of Distributions and Other Rights:  For purposes of determining the accrual of distributions or other rights after the Effective Date, the Newco Equity Interests and the Litigation Trust Interests, as applicable, shall be deemed distributed as of the Effective Date regardless of the date on which they are actually issued, dated, authenticated, or distributed even though the Reorganized Debtors shall not make any such distributions or

43

distribute such other rights until distributions of the Newco Equity Interests and the Litigation Trust Interests, as applicable, actually take place.

     5.    Allocation Between Principal and Accrued Interest: Except as otherwise provided in the Plan, distributions on account of Allowed Claims shall be treated as allocated first to principal and thereafter to any interest.

     6.    Compliance Matters: In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

     7.    Fractional, De Minimis, Undeliverable, and Unclaimed Distributions:

     a.    Fractional Distributions: Notwithstanding any other provision of the Plan to the contrary, payments of fractions of shares of Newco Equity Interests or fractions of Litigation Trust Interests shall not be made. The Distribution Agent shall not be required to make distributions or payments of fractions of Newco Equity Interests, Litigation Trust Interests or dollars. Whenever any payment of Cash of a fraction of a dollar or payment of a fraction of Newco Equity Interests or fraction of Litigation Trust Interests pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars, half Newco Equity Interests or half Litigation Trust Interests or less being rounded down.

     b.    Undeliverable Distributions: If any distribution to a Holder of an Allowed Claim is returned to a Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until such Distribution Agent is notified in writing of such Holder's then-current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors pursuant to Article VII.D.7.c, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

     c.    Reversion: Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

Distribution shall revest in the Reorganized Debtors and, to the extent such Unclaimed Distribution is a distribution of Newco Equity Interests, such Newco Equity Interests shall be deemed cancelled. Upon such revesting, the Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary. The provisions of the Plan regarding undeliverable distributions and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Debtors, made pursuant to any indenture or Certificate (but only with respect to the initial distribution by the Servicer to Holders that are entitled to be recognized under the relevant indenture or Certificate and not with respect to Entities to whom those recognized Holders distribute), notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property law.

       8.    Manner of Payment Pursuant to the Plan: Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Reorganized Debtors by check or by wire transfer. Checks issued by the Distribution Agent or applicable Servicer on account of Allowed Claims shall be null and void if not presented within 120 days after issuance, but may be requested to be reissued until the distribution revests in the Reorganized Debtors pursuant to Article VII.D.7.c.

       9.    Surrender of Cancelled Instruments or Securities: On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a Certificate shall surrender such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer). Such Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate. No distribution of property pursuant to the Plan shall be made to or on behalf of any such Holder that is a Holder of a Claim unless and until such Certificate is received by the Distribution Agent or the Servicer or the unavailability of such Certificate is reasonably established to the satisfaction of the Distribution Agent or the Servicer. Any Holder of a Claim who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity acceptable to the Distribution Agent or the Servicer prior to the first anniversary of the Effective Date, shall have its Claim discharged with no further action, be forever barred from asserting any such Claim against the relevant Reorganized Debtor or its property, be deemed to have forfeited all rights and Claims with respect to such Certificate, and not participate in any distribution under the Plan; furthermore, all property with respect to such forfeited distributions, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors, notwithstanding any federal or state escheat, abandoned, or unclaimed property law to the contrary.

E.    Claims Paid or Payable by Third Parties.

       1.    Claims Paid by Third Parties: The Claims and Solicitation Agent shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

45

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  Further, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.    Claims Payable by Insurance:  Holders of Insured Claims that are covered by the Debtors' insurance policies shall seek payment of such Claims from applicable insurance policies, provided that the Reorganized Debtors shall have no obligation to pay any amounts in respect of pre-petition deductibles or self insured retention amounts.  Allowed Insured Claim amounts in excess of available insurance shall be treated as General Unsecured Claims.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Claims and Solicitation Agent without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies:  Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Except for Claims and Causes of Action released under the Plan to the Released Parties and Exculpated Parties, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

F.    Payment of $1.5 Million to First Lien Lenders:  The $1,500,000 in Cash payable to the Holders of First Lien Lender Secured Claims from the proceeds of their Collateral pursuant to Article III.B.1. shall be paid as follows:  (i) $400,000 on the Effective Date and (ii) the remaining up to $1,100,000 in five quarterly installments of $220,000 beginning on the first day of the fourth month following the Effective Date; provided, that the Reorganized Debtors shall have the right to defer up to two quarterly payments, with such deferred amount(s) to be paid on the next quarterly payment date (and the amount scheduled to be paid on such quarterly payment date deferred for another quarter; provided that the full $1.5 million payment shall be made to the Holders of First Lien Lender Secured Claims

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

within eighteen months of the Effective Date). Notwithstanding the foregoing, in the event that, as of the Effective Date, the third party debt on the Rhodes Ranch Golf Course has been refinanced on terms and conditions acceptable to the First Lien Steering Committee and the Reorganized Debtors have unrestricted cash of at least $3.5 million (after taking into account any amounts required to be paid to reduce the amount of third party debt on the Rhodes Ranch Golf Course below $5.9 million and without taking into consideration amounts that may have been borrowed under any exit facility unless such amounts were used to pay-down debt on the Rhodes Ranch Golf Course, in which case any amounts used to pay-down debt on the Rhodes Ranch Golf Course will be deemed to reduce unrestricted cash on a dollar for dollar basis), then the initial $400,000 payment to the First Lien Lenders will be increased as follows: (i) if unrestricted cash (as calculated above) is equal to or greater than $3.5 million but less than $4.5 million, the $400,000 payment shall be increased to $700,000; (ii) if unrestricted cash (as calculated above) is equal to or greater than $4.5 million but less than $5.5 million, the $400,000 payment shall be increased to $1,000,000; and (iii) if unrestricted cash (as calculated above) is equal to or greater than $5.5 million, the $400,000 payment shall be increased to $1.5 million, in each case with the subsequent quarterly installments reduced by a corresponding amount to provide for equal payments over the payout periods discussed above. In no event shall the aggregate Cash payments to the First Lien Lenders exceed $1.5 million. Notwithstanding the foregoing, upon the receipt of the proceeds of the Arizona Assets Sale, the amount received will be deemed to have been received on the Effective Date for purposes of determining the amount to be paid to the Holders of First Lien Lender Secured Claims on the next quarterly installment payment date.

G. <u>General Unsecured Claims Purchase</u>: The First Lien Lenders have agreed to use the aggregate $1.5 million Cash payment provided to them under the Plan to acquire those General Unsecured Claims of the Creditors listed on the schedule attached to the Disclosure Statement as Exhibit H (the "Claim Purchase Schedule") to the extent such Claims remain outstanding as of the Effective Date; provided that (i) each Holder of a Claim so listed is the original Holder of such Claim and (ii) such Claim(s) is ultimately Allowed.

The Claim Purchase Schedule shall delineate whether such Claims are Allowed or Disputed and Claims may be purchased only to the extent ultimately Allowed. **Claims included on the Claim Purchase Schedule shall be purchased (subject to the conditions contained in Article VII.G of the Plan) for the amounts listed for such Claims under the heading "Allowed Amount (Claim Purchase Amount)" on the Claim Purchase Schedule. Payments on account of the purchased Allowed Claims listed on the Claim Purchase Schedule shall be made on the same time frame as the First Lien Lenders receive their allocable Cash payments under Article VII.F of the Plan, with the First Lien Steering Committee determining the order in which Claims are purchased (which, in the first instance, shall be the order in which they are listed on the Claim Purchase Schedule)**. For the avoidance of doubt, any claim listed on the Claim Purchase Schedule that is disputed, will not be purchased until allowed and only to the extent the aggregate purchase price for all claims purchased inclusive of such newly allowed claims are equal to or less than $1.5 million. Claims subsequently allowed will be purchased in the order in which they are allowed. The First Lien Lenders reserve the right to modify the Claim Purchase Schedule prior to or subsequent to the Effective Date without further Court order; provided, that a Creditor may be removed from the Claim Purchase Schedule only to

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

the extent that (i) its Claims are not ultimately Allowed, (ii) its Claims are subject to setoff (other than under section 547 of the Bankruptcy Code); (iii) such Creditor sells its Claim to a party other than the First Lien Lenders pursuant to Article VII.G of the Plan or (iv) the full $1.5 million has been used to purchase other Allowed Claims on the Claim Purchase Schedule before such Creditor's Claim is Allowed.

The First Lien Lenders shall be subrogated to the rights of Creditors whose Claims are purchased hereunder and any distributions otherwise allocable to the Holders of Claims purchased by the First Lien Lenders shall be distributed pro rata to the Holders of First Lien Lender Secured Claims.  The Reorganized Debtors shall be authorized to make the foregoing payments to the Creditors on the Claim Purchase Schedule on behalf of the First Lien Lenders with a corresponding reduction in the $1.5 million payable to the First Lien Lenders.  Under no circumstances shall the First Lien Lenders (either directly or through the Reorganized Debtors) pay in excess of $1.5 million in the aggregate for the Claims on the Claim Purchase Schedule.  The First Lien Steering Committee may, in its sole discretion (but after consultation with the Debtors and the Creditors' Committee), add Claims to the Claim Purchase Schedule at any time; provided that the amount to be paid for all such Claims listed on the Claim Purchase Schedule does not exceed $1.5 million in the aggregate regardless of the total amount of Allowed Claims reflected on the Claim Purchase Schedule.  In the event that Allowed Claims in excess of $1.5 million are listed on the Claim Purchase Schedule, Holders of Claims listed on the Claim Purchase Schedule shall have the right to accept or decline payment of less than 100 cents on account of their Claims from the First Lien Lenders.  No Creditor listed on the Claim Purchase Schedule shall receive in excess of 100 cents on the dollar for its Claim, and the Reorganized Debtors shall not pursue Claims under Bankruptcy Code section 547 against any Creditor whose Claim is purchased in accordance with this Article VII.G.  The Plan shall serve as the notice of transfer of Claim required under Bankruptcy Rule 3001(e).   If no objections are received by the Voting Deadline, the First Lien Lenders shall be authorized upon the Effective Date to effectuate the foregoing Claim purchase transactions.

## ARTICLE VIII.
EFFECT OF CONFIRMATION OF THE PLAN

A.    Discharge of Claims and Termination of Interests:  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of any employee, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Any default by the Debtors with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed Cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

B. <u>Subordinated Claims</u>: The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Plan Proponent or Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

C. <u>Compromise and Settlement of Claims and Controversies</u>: Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such an Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities.

D. **<u>Releases by the Debtors of the Released Parties</u>:**

**Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, and as part of the global settlement described in Article I.B. of the Disclosure Statement, on and after the Effective Date, the Released Parties are deemed released by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

derivative Claims asserted on behalf of the Debtors, taking place on or before the Effective Date, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any of the Released Parties, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

E.      **Releases by the Debtors of the Rhodes Entities**:  The Rhodes Entities shall be deemed released from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever arising under chapter 5 of the Bankruptcy Code with respect to transfers made by the Debtors to the Rhodes Entities during the 2 years prior to the Petition Date; provided, however, that such release shall only apply to transfers expressly set forth in the Schedules as Filed with the Bankruptcy Court as of August 1, 2009 or as disclosed in Attachment B to the Mediation Term Sheet.

F.      **Releases by First Lien Lenders of First Lien Lenders**:  Pursuant to Bankruptcy Rule 9019, and except as otherwise specifically provided in the Plan, to the extent a First Lien Lender elects on its Ballot to release the First Lien Lenders in accordance with this Section VIII.F., for good and valuable consideration, on and after the Effective Date, each of the First Lien Lenders electing to grant this release, shall be deemed to release each of the other First Lien Lenders that has elected to grant this release and each of their affiliates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such First Lien Lender would have been legally entitled to assert against any other First Lien Lender that elected to grant this release, based on or relating to, or in any manner arising from, in whole or in part, the First Lien Credit Agreement, the First Lien Lender Claims, any other claims arising under or related to the First Lien Credit Agreement, the Debtors, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to any First Lien Lender Claim, the restructuring of the First Lien Lender Claims prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; with such releases constituting an express waiver and relinquishment by each First Lien Lender electing to grant this release of any claims, whether known or unknown that such First Lien Lender may have under Section 1542 of the California Civil code or other analogous state or federal law related to the matters

50

being released; **provided, however,** that Claims or liabilities arising out of or relating to any act or omission of any First Lien Lender or any of its affiliates that constitutes gross negligence or willful misconduct shall not be released.

G.    <u>Exculpation</u>:    Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Claim, obligation, Cause of Action, or liability to one another or to any Exculpating Party for any Exculpated Claim, except for gross negligence, willful misconduct or fraud, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Debtors, the First Lien Steering Committee and the Reorganized Debtors (and each of their respective agents, members, directors, officers, employees, advisors, and attorneys) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of the Securities pursuant to the Plan, and therefore are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

H.    <u>Injunction</u>    Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims against the Debtors, and all Entities holding Interests, are permanently enjoined, from and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors or the property or estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors or against the property or Estates of the Debtors or Reorganized Debtors on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding an indication in a Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise (provided, that, to the extent the Rhodes Entities Claims are Allowed, the Rhodes Entities, without the need to file any such motion, shall retain the right to assert a setoff against any Claims or Causes of Action that the Reorganized Debtors or Litigation Trust may assert against the Rhodes Entities, with the Reorganized Debtors and Litigation Trust, as applicable, reserving the right to challenge the propriety of any such attempted setoff, with any such challenge to be resolved by the Bankruptcy Court); and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

51

in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

I.    Protection Against Discriminatory Treatment:  Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom such Reorganized Debtors have been associated, solely because one of the Debtors has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.    **Setoffs:    Except as otherwise expressly provided for in the Plan, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor, Reorganized Debtor or the Litigation Trust, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor or the Litigation Trust of any such Claims, rights, and Causes of Action that such Reorganized Debtor or the Litigation Trust may possess against such Holder.  In no event shall any Holder of Claims be entitled to setoff any Claim against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise; provided, however, that, to the extent the Rhodes Entities Claims are Allowed, the Rhodes Entities, without the need to file any such motion, shall retain the right to assert a setoff against any Claims or Causes of Action that the Reorganized Debtors or Litigation Trust may assert against the Rhodes Entities, with the Reorganized Debtors and Litigation Trust, as applicable, reserving the right to challenge the propriety of any such attempted setoff, with any such challenge to be resolved by the Bankruptcy Court.**

K.    **Recoupment:  In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors and the First Lien Steering Committee on or before the Confirmation Date,**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

L.    Release of Liens:  Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.   Upon the Effective Date, the Confirmation Order shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to  release any  mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates; and each of the foregoing persons and entities is hereby directed to accept for filing the Confirmation Order any and all of the documents and instruments necessary and appropriate to  effectuate the discharge.

M.    Document Retention:  On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their current document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors in the ordinary course of business.  On the Effective Date, the Reorganized Debtors and the Rhodes Entities shall enter into an access agreement on terms mutually acceptable to such parties that shall provide for the Rhodes Entities to have reasonable access to all of the Debtors' books and records in existence as of the Effective Date.

N.    Reimbursement or Contribution:  If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date:  (1) such Claim has been adjudicated as noncontingent or (2) the relevant Holder of a Claim has Filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent

## ARTICLE IX.
ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

A.    Professional Claims:

1.    Final Fee Applications:  All final requests for payment of Claims of a Professional shall be Filed no later than forty-five days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

2.    Payment of Interim Amounts:  Except as otherwise provided in the Plan, Professionals shall be paid pursuant to the Interim Compensation Order.

3.    Reimbursable Expenses:  The reasonable fees and expenses incurred by (i) the First Lien Agent, including its professionals, to the extent provided by the First Lien Credit Agreement, (ii) the Second Lien Agent, including its professionals, to the extent provided by the Second Lien Credit Agreement (only to the extent the Class of Second Lien Lender Secured Claims votes in favor of the Plan), and (iii) the First Lien Steering Committee, including its professionals, in connection with the Chapter 11 Cases shall be paid by the Debtors or Reorganized Debtors, as applicable, within 15 days of receipt of an invoice from such parties or their advisors.

4.    Post-Effective Date Fees and Expenses:  Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation incurred by the Reorganized Debtors and the First Lien Steering Committee.  The Reorganized Debtors shall also pay in Cash the reasonable legal, professional, or other fees and expenses of the Creditors' Committee incurred in connection with (i) the resolution of applications for Professional Claims and (ii) all matters related to the auction and sale of the Arizona Assets.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

5.    Substantial Contribution Compensation and Expenses:  Except as otherwise specifically provided in the Plan, any Entity who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, and the First Lien Steering Committee and the Creditors' Committee, and as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the Administrative Claim Bar Date or be forever barred from seeking such compensation or expense reimbursement.

B.    Other Administrative Claims:  All requests for payment of an Administrative Claim must be Filed with the Claims and Solicitation Agent and served upon counsel to the Debtors or Reorganized Debtors, as applicable, and the First Lien Steering Committee on or before the Administrative Claim Bar Date.  Any request for payment of an Administrative Claim that is not timely Filed and served shall be disallowed automatically without the need for any objection by the Debtors, Reorganized Debtors, or the First Lien Steering Committee.  The Reorganized Debtors may settle and pay any Administrative Claim in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.  In the event that any party with standing objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative

Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

**ARTICLE X.**
CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN

A.    Conditions to Confirmation:    The following are conditions precedent to Confirmation that must be satisfied or waived in accordance with Article X.C:

1.    The Bankruptcy Court shall have approved the Disclosure Statement, in a manner acceptable to the Plan Proponent, as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.    The Confirmation Order shall be in form and substance acceptable to the Plan Proponent.

3.    The terms and conditions of employment or retention of any Persons proposed to serve as officers or directors of Newco, including, without limitation, as to compensation, shall be acceptable to the Plan Proponent and shall be disclosed at or prior to the Confirmation Hearing.

4.    Any disclosures made pursuant to 11 U.S.C. § 1129(a)(5) shall be acceptable to the Plan Proponent.

5.    All of the schedules, documents, and exhibits ancillary to the Plan and Disclosure Statement including, but not limited to, (i) the Claim Purchase Schedule, (ii) the Litigation Trust Agreement, (iii) the Newco LLC Operating Agreement, (iv) the New First Lien Notes credit agreement, (v) the Schedule of Causes of Action, (vi) the Stock Transfer Agreement, and (vii) the Schedule of Assumed Executory Contracts and Unexpired Leases shall be in form and substance acceptable to the Plan Proponent.

B.    Conditions Precedent to the Effective Date:  The following are conditions precedent to Consummation that must be satisfied or waived in accordance with Article X.C:

1.    The Bankruptcy Court shall have authorized the assumption and rejection of executory contracts and unexpired leases by the Debtors as contemplated by Article V.

2.    The Confirmation Order shall have become a Final Order in form and substance acceptable to the Plan Proponent.

3.    All of the schedules, documents, and exhibits ancillary to the Plan and Disclosure Statement including, but not limited to, (i) the Claim Purchase Schedule, (ii) the Litigation Trust Agreement, (iii) the Newco LLC Operating Agreement, (iv) the New First Lien Notes credit agreement, (v) the Schedule of Causes of Action, (vi) the Stock Transfer Agreement, and (vii) the Schedule of Assumed Executory Contracts and Unexpired Leases shall be in form and substance acceptable to the Plan Proponent.

4.     The documents governing the New First Lien Notes and the Newco LLC Operating Agreement shall be in form and substance acceptable to the Plan Proponent.

5.     The Confirmation Date shall have occurred.

6.     The First Lien Steering Committee shall have designated and replaced each existing Qualified Employee of the Debtors with a new Qualified Employee for the Reorganized Debtors.

7.     The third party debt outstanding on the Rhodes Ranch Golf Course shall be refinanced on terms and conditions acceptable to Rhodes and the First Lien Steering Committee and the personal loan of James Rhodes to the entity that owns the Rhodes Ranch Golf Course shall have been contributed as equity without any new equity being issued to James Rhodes and James Rhodes shall have provided the Debtors, the Reorganized Debtors, Newco and the entity that owns the Rhodes Ranch Golf Course an indemnity for any liability arising from the contribution of such loan.

8.     The Arizona Assets Bid Procedures Order shall have been entered by the Bankruptcy Court and not been stayed, reversed or appealed.

9.     The tax structure set forth in Article IV.F shall be implemented.

10.     The Rhodes Entities shall have performed all of their obligations under the Plan including, without limitation, depositing $2.3 million in Cash in an account designated by the Debtors, with the consent of the First Lien Steering Committee, and transferred the equity in the entity that owns the Rhodes Ranch Golf Course and related contracts and assets as required by Article IV.S. to the Reorganized Debtors.

C.     Waiver of Conditions Precedent:   The First Lien Steering Committee may waive any of the conditions to the Effective Date at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan; provided, that the First Lien Steering Committee will not waive the conditions precedent in items X.B.6 through 12 above if the Rhodes Entities shall have complied with all of their obligations hereunder by the Effective Date (or such earlier date specifically set forth herein).   In the event the Rhodes Entities fail to comply with any of their obligations under the Mediation Term Sheet (as modified by the Plan) or under the Plan by the Effective Date (or such earlier date specifically set forth herein) and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, then the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder), and the Rhodes Entities reserve their right to object to such motion; (ii) modify the Plan to remove any provisions hereof that were included for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as modified. Upon entry of an order of the Bankruptcy Court finding a breach by the Rhodes Entities and

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York  10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

authorizing the modifications to the Plan to remove any provisions that were included for the benefit of the Rhodes Entities, the First Lien Steering shall be authorized to make such modifications and consummate the Plan.

D.  Effect of Non-Occurrence of Conditions to Consummation:  Each of the conditions to Consummation must be satisfied or duly waived pursuant to Article X.C, and Consummation must occur within 180 days of Confirmation, or by such later date established by Bankruptcy Court order.  If Consummation has not occurred within 180 days of Confirmation, then upon motion by a party in interest made before Consummation and a hearing, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the Filing of such motion to vacate, the Confirmation Order may not be vacated if Consummation occurs before the Bankruptcy Court enters an order granting such motion.  If the Confirmation Order is vacated pursuant to Article X.D. or otherwise, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, including the discharge of Claims and termination of Interests pursuant to the Plan and section 1141 of the Bankruptcy Code and the assumptions, assignments, or rejections of executory contracts or unexpired leases pursuant to Article V, and nothing contained in the Plan or Disclosure Statement shall: (1) constitute a waiver or release of any Claims, Interests, or Causes of Action; (2) prejudice in any manner the rights of the Debtors, the First Lien Steering Committee or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors, the First Lien Steering Committee or any other Entity.

E.  Satisfaction of Conditions Precedent to Confirmation:  Upon entry of a Confirmation Order acceptable to the Plan Proponent, each of the conditions precedent to Confirmation, as set forth in Article X.A, shall be deemed to have been satisfied or waived in accordance with the Plan.

## ARTICLE XI.
### MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.  Modification and Amendments:  The First Lien Steering Committee shall not modify materially the terms of the Plan without the prior consent of the parties to the Mediation Term Sheet; provided, that in the event the Rhodes Entities fail to comply with any of their obligations under the Mediation Term Sheet (as modified by the Plan) or the Plan by the Effective Date (or such other date set forth herein) and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, then the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder), and the Rhodes Entities reserve their right to object to such motion; (ii) modify the Plan to remove any provisions hereof that were included for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as modified.  Upon entry of an order of the Bankruptcy Court finding a breach by the Rhodes Entities and authorizing the modifications to the Plan to remove any provisions that were included for the benefit of the Rhodes Entities, the First Lien Steering shall be authorized to

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

make such modifications and consummate the Plan.   Except as otherwise specifically provided in the Plan, the Plan Proponent reserves the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code.   Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponent expressly reserves its rights to revoke, withdraw, alter, amend, or modify materially the Plan with respect to any Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI.A.  The Plan, Disclosure Statement and all ancillary documents may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours, at the Bankruptcy Court's website at http://www.nvb.uscourts.gov.   All documents to be entered into in connection with the consummation of the Plan as described in the Plan and/or Disclosure Statement are integral to the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

B.     Effect of Confirmation on Modifications:  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.     Revocation or Withdrawal of Plan:  The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization; provided, that, any subsequently filed plan shall be consistent with the Mediation Settlement unless the Rhodes Entities fail to comply with any of their obligations under the Mediation Term Sheet (as modified by the Plan) or the Plan by the Effective Date (or such other date set forth herein) and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, in which case the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their right to object to such motion; (ii) revoke or withdraw the Plan as a result of such breach; and (iii) file a subsequent plan that removes the benefits provided to the Rhodes Entities pursuant to the Mediation Settlement.  If the Plan Proponent revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Plan Proponent or any other Entity; or

(c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Plan Proponent or any other Entity.

### ARTICLE XII.
RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.       Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.       Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.       Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including Cure or Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any executory contract or unexpired lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.       Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.       Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.       Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.       Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.       Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments,

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile 212.872.1002 / akingump.com

releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code including, without limitation, the Arizona Assets Sale Order;

10.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.      Resolve any disputes with respect to the Debtors or Reorganized Debtors performance bonds guaranteed by the Rhodes Entities or other matters contemplated by Article IV.X.

12.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

13.      Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.      Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VII.E;

15.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.      Determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.      Enter an order or Final Decree concluding or closing the Chapter 11 Cases;

18.      Adjudicate any and all disputes arising from or relating to distributions under the Plan;

19.      Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20.      Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000 Facsimile: 212.872.1002 / akingump.com

21.    Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

22.    Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.    Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment of any employee, regardless of whether such termination occurred prior to or after the Effective Date;

24.    Enforce all orders previously entered by the Bankruptcy Court; and

25.    Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII.
MISCELLANEOUS PROVISIONS

A.    <u>Immediate Binding Effect</u>:  Subject to Article X.B. and notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

B.    <u>Additional Documents</u>:  On or before the Effective Date, the Plan Proponent may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, the First Lien Steering Committee and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    <u>Payment of Statutory Fees</u>:  All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.    <u>Dissolution of Creditors' Committee</u>:  Upon the Effective Date, the Creditors' Committee shall dissolve automatically (except with respect to (i) the resolution of applications for Professional Claims and (ii) all matters related to the auction and sale of the Arizona Assets), and members thereof shall be released and discharged from all rights,

duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code.

E.    <u>Reservation of Rights</u>:  Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or any documents ancillary to either the Plan or the Disclosure Statement, shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.    <u>Successors and Assigns</u>:  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.    <u>Service of Documents</u>:

1.    After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| Debtors | Counsel to the Debtors |
|---|---|
| The Rhodes Companies, LLC<br>4730 South Fort Apache Road<br>Suite 300<br>Las Vegas, NV  89147 | Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Boulevard #1100<br>Los Angeles, CA 90067<br>Attn:    James I. Stang<br>            Shirley S. Cho<br>            Werner S. Disse<br><br>Larson & Stephens<br>810 S. Casino Center Boulevard<br>Suite 104<br>Las Vegas, NV 89101<br>Attn:    Zachariah Larson |
| **United States Trustee** | **Counsel to the First Lien Steering Committee** |

| United States Trustee – LV-11<br>300 Las Vegas Boulevard S.<br>Suite 4300<br>Las Vegas, NV 89101<br>Attn:   Edward M. McDonald | Akin Gump Strauss Hauer & Feld<br>One Bryant Park<br>New York, NY 10036<br>Attn:   Philip C. Dublin<br>       Abid Qureshi<br><br>Kolesar & Leatham, Chtd.<br>3320 West Sahara Avenue<br>Suite 380<br>Las Vegas, NV 89102<br>Attn:   Nile Leatham |
|---|---|
| **Counsel to the Creditors' Committee** | **Counsel to First Lien Agent** |
| Parsons Behle & Latimer<br>201 S. Main St., Suite 1800<br>Salt Lake City, Utah 84111<br>Attn:   J. Thomas Beckett<br><br>Parsons Behle & Latimer<br>50 West Liberty Street, Suite 750<br>Reno, Nevada 89501<br>Attn: Rew Goodenow | Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue, Suite 3500<br>Los Angeles, CA 90071<br>Attn:   Van C. Durrer II<br>      Ramon M. Naguiat |

2.      After the Effective Date, the Reorganized Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

3.      In accordance with Bankruptcy Rules 2002 and 3020(c), within ten business days of the date of entry of the Confirmation Order, the Plan Proponent shall serve  the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with the Confirmation Hearing Notice; provided, however, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Plan Proponent mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Plan Proponent has been informed in writing by such Entity, or is otherwise aware, of that Entity's new address. To supplement the notice described in the preceding sentence, within twenty days of the date of the Confirmation Order, the First Lien Steering Committee shall publish the Notice of Confirmation once in the Vegas Sun.  Mailing and publication of the Notice of Confirmation in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

**H.**    <u>Term of Injunctions or Stays</u>:  Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**I.**    <u>Entire Agreement</u>:  Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**J.**    <u>Governing Law</u>:  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Nevada, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; <u>provided</u>, <u>however</u>, that corporate governance matters relating to the Debtors or Reorganized Debtors, as applicable, not incorporated or organized in Nevada shall be governed by the laws of the state of incorporation or organization of the applicable Debtor or Reorganized Debtor, as applicable.

**K.**    <u>Exhibits</u>:  All exhibits and documents ancillary to the Plan and/or the Disclosure Statement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents are available upon written request to the First Lien Steering Committee's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.nvb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

**L.**    <u>Nonseverability of Plan Provisions</u>:  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Plan Proponent's consent; and (3) nonseverable and mutually dependent.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York  10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

M.   <u>Closing of the Chapter 11 Cases</u>:  The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.   <u>Waiver or Estoppel</u>:  Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, the First Lien Steering Committee or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.   <u>Conflicts</u>:  Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Mediation Term Sheet or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

Las Vegas, Nevada
Dated:  February 18, 2010


FIRST LIEN STEERING COMMITTEE

By:    /s/  Philip C. Dublin
　　　 Nile Leatham (NV Bar No. 002838)
　　　 KOLESAR & LEATHAM
　　　 Wells Fargo Financial Center
　　　 3320 W. Sahara Ave.
　　　 Las Vegas, NV 89102
　　　 (702) 979-2357 (Telephone)
　　　 (702) 362-9472 (Facsimile)
　　　 Nleatham@klnevada.com

　　　 AKIN GUMP STRAUSS HAUER & FELD LLP
　　　 Philip C. Dublin (NY Bar No, 2959344)
　　　 Abid Qureshi (NY Bar No. 2684637)
　　　 One Bryant Park
　　　 New York, New York 10036
　　　 (212) 872-1000 (Telephone)
　　　 (212) 872-1002 (Facsimile)
　　　 pdublin@akingump.com
　　　 aqureshi@akingump.com

　　　 *Counsel for the First Lien Steering Committee*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

LIST OF EXHIBITS

Exhibit                                                    Description

1           ........................................      Mediation Term Sheet

2           ........................................      Term Sheet for New First Lien Notes

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: 212.872.1000  Facsimile: 212.872.1002 / akingump.com

Case 09-14814-lbr    Doc 1013-1    Entered 02/18/10 16:31:19    Page 134 of 207

### Exhibit 1

**Mediation Term Sheet**

**EXECUTION COPY**

RHODES ENTITIES' MEDIATION SETTLEMENT PROPOSAL

| | |
|---|---|
| **Releases for Rhodes Entities:** | The Rhodes Entities (as set forth on Attachment A) shall receive a full release for chapter 5 causes of action with respect to transfers made by the Debtors to the Rhodes Entities during the 2 years prior to the Petition Date provided, that, such release shall only apply to transfers expressly set forth in the Debtors' statements of financial affairs as filed with the Bankruptcy Court as of August 1, 2009 or as disclosed in Attachment B. |
| **Releases for Debtors' officers, employees and professionals** | To the extent permitted by applicable law, the Plan shall provide that, but for (i) the Rhodes Entities and their affiliates; (ii) insiders of any of the Rhodes Entities (except as to Thomas Robinson and Joseph Schramm who were also employees of the Debtors); (iii) relatives of James Rhodes,  the Debtors' officers, employees (including Thomas Robinson and Joseph Schramm), and professionals, as of the Petition Date, and Paul Huygens shall receive a general release from the Debtors' estates. |
| **Exculpation:** | The Plan shall contain standard exculpation provisions. |
| **Bond Replacement or Indemnification:** | The Plan shall provide for one of the following: (i) those performance bonds guaranteed by the Rhodes Entities in favor of the Debtors to be replaced on a renewal date by new performance bonds or, in the alternative, (ii) subject to the Rhodes Entities being reasonably satisfied with the creditworthiness of the Reorganized Debtors, which shall be satisfied solely as of the Effective Date by the Court finding that the Plan is feasible, the existing performance bonds guaranteed by the Rhodes Entities and such guarantees to remain in place. The applicable Rhodes Entity's agreement to remain a guarantor under the existing performance bonds as such performance bonds may be renewed shall be at  no cost to the Rhodes Entities (including, but not limited to, the payment of bond premiums).  In the event the Reorganized Debtors fail to perform their obligations underlying such renewed performance bonds after the Effective Date, the Reorganized Debtors will indemnify the Rhodes Entities under such outstanding performance bonds for damages incurred by the Rhodes Entities on account of their guarantee of such performance bonds solely as a result of the Reorganized Debtors' failure to perform such obligations subsequent to the Effective Date. The Reorganized Debtors shall use commercially reasonable efforts to replace all outstanding performance bonds backstopped by Rhodes Entities within 30 months of the Effective Date. The Bankruptcy Court shall retain jurisdiction to resolve any disputes arising out of this paragraph. |
| **HOA Board Seats:** | The Rhodes Entities shall ensure that designees identified by the Reorganized Debtors shall replace the Rhodes Entities on any HOA Boards that in any way are related to the Debtors, Reorganized Debtors or their businesses and Declarant rights or the like shall be transferred to the Reorganized Debtors or their designee(s). |
| **Licensing:** | The Rhodes Entities shall take commercially reasonable steps and/or enter into any agreements or similar documentation reasonably necessary to ensure the Reorganized Debtors' continued use of all of the Debtors' applicable professional licenses at no cost to the Rhodes Entities for a period of up to twelve months following the Effective Date. Additionally, provided that the parties have executed this Mediation Settlement Term Sheet, Sagebrush Enterprises, Inc. shall rescind by September 25, 2009 its revocation of its indemnity of the Nevada Contractors' license held by Rhodes Design & Development Corporation to the extent such rescission does not negatively |

1

**EXECUTION COPY**

| | |
|---|---|
| | affect the general contractor's license held by Rhodes Design & Development Corporation provided that Sagebrush shall be entitled to file an administrative claim on behalf of any and all claims asserted against Sagebrush as a result of Sagebrush being the indemnitor that arose from and after the effectiveness of Sagebrush's recission of its indemnity through the Effective Date, provided that the allowance of such administrative claim shall be subject to resolution by the Bankruptcy Court and/or such other court(s) of competent jurisdiction. The Reorganized Debtors shall indemnify Sagebrush for any and all claims asserted against Sagebrush as a result of Sagebrush being the indemnitor that arise from and after the Effective Date. Professional licenses include, but are not limited to the Nevada State Contractor's Board license, and any other general business or similar licenses in any county, state, municipality or other jurisdiction in which the Reorganized Debtors conduct business or own assets as of the Effective Date. The Rhodes Entities shall use commercially reasonable efforts to maintain third party agreements with their real estate brokers and sales agents. |
| **Rhodes Entities' Claim Treatment:** | To the extent allowed, the Rhodes Entities' Claims shall be treated in the same class as and treated *pari passu* with General Unsecured Claims, excluding Trade Claims. The First Lien Steering Committee, any First Lien Lender and/or the Reorganized Debtors shall have until sixty days following the Effective Date to object to the proofs of claim filed by the Rhodes Entities in the Debtors' chapter 11 cases (provided, that, such objection shall not seek to subordinate the Rhodes Entities Claims, if allowed). Neither the Litigation Trust nor the Reorganized Debtors shall commence any litigation against the Rhodes Entities until the Bankruptcy Court rules on the allowance of the Rhodes Entities Claims set forth in such proofs of claim (for the avoidance of doubt, the First Lien Lenders are not bound by this provision). To the extent any statute of limitations to pursue any claims belonging to the Debtors against the Rhodes Entities would lapse, from execution of this term sheet and prior to the Bankruptcy Court's resolution of the allowance of the Rhodes Entities Claims, as set forth in filed proofs of claim, the Rhodes Entities shall be deemed to have consented to a tolling of the applicable statute of limitations until sixty days following the Bankruptcy Court's ruling on the allowance of the Rhodes Entities Claims. |
| **Tax Treatment:** | The Plan shall be structured in a tax efficient manner to the Rhodes Entities to effectuate the benefits set forth in item 4 on Attachment C; provided, that there shall be no adverse impact on the Reorganized Debtors or the First Lien Lenders. The Rhodes Entities and the First Lien Steering Committee shall agree on the structure necessary to implement the tax treatment on or before September 25, 2009. |
| **Effective Date:** | The Plan Effective Date shall occur no earlier than January 4, 2010. |
| **Rhodes Ranch Golf Course:** | The term Rhodes Ranch Golf Course, as referred to herein, shall mean the golf course situated within the Rhodes Ranch master-planned community located in the southwestern Las Vegas valley. |
| **Conditions Precedent to Effective Date:** | 1.  The Bankruptcy Court shall have authorized the assumption and rejection of executory contracts and unexpired leases by the Debtors.<br><br>2.  The Confirmation Order shall have become a Final Order in form and substance acceptable to the First Lien Steering Committee.<br><br>3.  The most current version of the Plan Supplement and all of the schedules, |

**EXECUTION COPY**

|  | documents, and exhibits contained therein shall have been Filed in form and substance acceptable to the First Lien Steering Committee. |
|---|---|
|  | 4. The documents governing the New First Lien Notes, the Newco Charter, the Newco Bylaws and the Stockholders Agreement shall be in form and substance acceptable to the First Lien Steering Committee. |
|  | 5. The Confirmation Date shall have occurred. |
|  | 6. The First Lien Steering Committee shall have designated and replaced each existing Qualified Employee with a new Qualified Employee. |
|  | 7. The current debt outstanding on the Rhodes Ranch Golf Course shall be refinanced on terms and conditions acceptable to Rhodes and the First Lien Steering Committee. |
|  | 8. Copies of all Debtors' books and records shall have been delivered to the Rhodes Entities at no cost to the Rhodes Entities. |
|  | 9. The Arizona Assets shall have been transferred to the Rhodes Entities (or their designee) free and clear of all liens and claims pursuant to section 363(f) of the Bankruptcy Code on the Effective Date provided, that the non-First Lien Lender/Second Lien Lender liens do not exceed $60,000. |
|  | 10. The Debtors shall have assumed and assigned all executory contracts and unexpired leases related solely to the Arizona Assets to the Rhodes Entities (or their designee), at no cost to the Debtors or the Reorganized Debtors, with all Cure costs associated therewith to be borne by the Rhodes Entities |
|  | 11. The Rhodes Entities and the First Lien Steering Committee shall have agreed on the structure necessary to implement the tax structure benefits set forth in Exhibit C. |
|  | 12. The Rhodes Entities and First Lien Steering Committee shall have agreed on the Golf Course Security Property. |
|  | 13. The Rhodes Entities shall have ensured that designees identified by the Reorganized Debtors shall have replaced the Rhodes Entities on any HOA Boards that in any way are related to the Debtors, Reorganized Debtors or their businesses and Declarant rights or the like shall be transferred to the Reorganized Debtors or their designee(s) |
|  | 14. The Rhodes Entities shall have performed all of their obligations under the Plan including, without limitation, depositing $3.5 million in Cash in an account designated by the Debtors, with the consent of the First Lien Steering Committee and transferring the equity in the entity that owns the Rhodes Ranch Golf Course and related contracts and assets to the Reorganized Debtors pursuant to the terms of a stock transfer agreement in form and substance acceptable to the Rhodes Entities and the First Lien Steering Committee. |
|  | 15. All other customary Conditions Precedent to the Effective Date as determined by and acceptable to the First Lien Steering Committee, in its sole discretion. |
| **Waiver of Conditions Precedent** | The First Lien Steering Committee may waive any of the conditions to the |

| | |
|---|---|
| to the Effective Date | Effective Date at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan; provided, that the First Lien Steering Committee will not waive the conditions precedent in items 6 through 12 above if the Rhodes Entities shall have complied with all of their obligations hereunder and in the Plan by the Effective Date (or such earlier date specifically set forth herein). In the event the Rhodes Entities fail to comply with any of their obligations hereunder or under the Plan by the Effective Date and fail to cure such alleged breach within ten (10) days' written notice to the Rhodes Entities, then the First Lien Steering Committee shall be entitled to file a motion on at least seven (7) days notice to (i) determine that a breach has occurred (except that the failure of the parties to agree on the refinancing of the Rhodes Ranch Golf Course solely as a result of the First Lien Steering Committee acting unreasonably or in bad faith shall not be deemed a failure of the Rhodes Entities to comply with their obligations hereunder or under the Plan), and the Rhodes Entities reserve their right to object to such motion; (ii) modify the Plan to remove any provisions hereof that were included for the benefit of the Rhodes Entities; and (iii) consummate the Plan, as modified.   Upon entry of an order of the Bankruptcy Court finding a breach by the Rhodes Entities and authorizing the modifications to the Plan to remove any provisions that were included for the benefit of the Rhodes Entities, the First Lien Steering shall be authorized to make such modifications and consummate the Plan. |
| Modification of the Plan | The First Lien Steering Committee shall not modify materially the terms of the Plan without the prior consent of the parties to this term sheet so long as such parties have complied with all of their obligations hereunder and under the Plan by January 4, 2010 (or such other date specifically set forth herein). |
| Plan Support: | The Debtors and Rhodes Entities shall only support a plan of reorganization filed by the First Lien Steering Committee containing all of the provisions of this Mediation Settlement Term Sheet and consistent with the Plan to which this term sheet is an exhibit and will not file a competing plan of reorganization or support any other plan of reorganization filed in the Debtors' chapter 11 cases. |
| Golf Course Transfer: | On the Effective Date, the applicable Rhodes Entities shall transfer their equity interests in the entity that owns the Rhodes Ranch Golf Course to the Reorganized Debtors (together with any equipment, golf carts, contracts or other assets determined by the First Lien Steering Committee to be necessary for the operation of the Rhodes Ranch Golf Course) pursuant to the terms of a stock transfer agreement in form and substance acceptable to the First Lien Steering Committee and Rhodes, subject to any outstanding debt on the Rhodes Ranch Golf Course.  The stock transfer agreement shall contain representations by the Rhodes Entities that the entity that owns the Rhodes Ranch Golf Course does not have any liabilities other than ordinary course liabilities related to the Rhodes Ranch Golf Course and indemnification provisions in favor of the Reorganized Debtors by the Rhodes Entities for any non-ordinary course liabilities.  In addition, prior to the deadline for filing objections to the Disclosure Statement, the Rhodes Entities shall provide the First Lien Steering Committee with a list of all liabilities of the entity that owns the Rhodes Ranch Golf Course, a lien analysis and copies of all contracts related to the Rhodes Ranch Golf Course and to which the entity that owns the Rhodes Ranch Golf Course is a party, each of which must be acceptable to the First Lien Steering Committee.

The existing debt outstanding on the Rhodes Ranch Golf Course shall be |

**EXECUTION COPY**

refinanced on or before the Effective Date, for a period of no less than twelve (12) months from the Effective Date, on terms and conditions acceptable to Rhodes and the First Lien Steering Committee. The parties will work together in good faith to refinance the existing debt. The Reorganized Debtors shall pay the reasonable costs and expenses associated with the refinancing; provided, that the terms of such refinancing are acceptable to the First Lien Steering Committee. The First Lien Steering Committee acknowledges that the loan documentation may provide that, upon the transfer of the Rhodes Ranch Golf Course to the Reorganized Debtors on the Effective Date, additional collateral from the Reorganized Debtors may be required. The Rhodes Entities shall transfer to the Reorganized Debtors on the Effective Date any contracts related to the operation of and revenue generated by any cell towers located on the property of the Rhodes Ranch Golf Course. Any funds received after July 31, 2009 from the Las Vegas Valley Water District or other similar entity as an incentive for converting the golf course from a green course to a desert course shall be used for operating expenses associated with the Rhodes Ranch Golf Course, with any excess to become property of the Reorganized Debtors on the Effective Date.

Rhodes and/or his designee shall have the absolute right to repurchase the Rhodes Ranch Golf Course from the Reorganized Debtors at eight (8) years from the Effective Date for $5.9 million in cash. The Reorganized Debtors may require Rhodes to purchase the Rhodes Ranch Golf Course any time between four (4) and eight (8) years from the Effective Date for $5.9 million in cash provided that the Reorganized Debtors shall provide Rhodes with at least one year advance notice of its intent to sell the Rhodes Ranch Golf Course back to Rhodes. Such transfer shall occur on the applicable anniversary date of the Effective Date. For the avoidance of doubt, if the Reorganized Debtors put the Rhodes Ranch Golf Course to Rhodes in accordance with the terms hereof and Rhodes fails to comply with his obligation to purchase the Rhodes Ranch Golf Course, Rhodes shall be deemed to have forfeited his option to purchase the Rhodes Ranch Golf Course.

On the Effective Date, Rhodes's obligations to comply with the repurchase shall be secured by either (i) $500,000 in cash in an escrow account or (ii) property worth at least $2 million (the "Golf Course Security Property"), with the value of such property to be agreed to by Rhodes and the First Lien Steering Committee or otherwise valued by an independent third party appraisal firm acceptable to both Rhodes and the First Lien Steering Committee (except Cushman Wakefield). In the event that Rhodes does not meet the repurchase request, provided that the Rhodes Ranch Golf Course is in the standard condition (defined below), then the Reorganized Debtors shall be entitled to liquidated damages in the form of security pledged (i.e., the $500,000 or the Golf Course Security Property).

So long as Rhodes has not defaulted on his obligation to repurchase the Rhodes Ranch Golf Course, Rhodes shall have the absolute and sole discretion to replace the Golf Course Security Property with $500,000 in cash on 30 days written notice to the Reorganized Debtors. Upon deposit of the $500,000 in cash, the Golf Course Security Property shall be released to Rhodes or his designee. Notwithstanding anything to the contrary contained herein, if the Rhodes Ranch Golf Course is not maintained with substantially the same performance and rating criteria at the time of the repurchase request as verified by an independent third party rating agency as it was on the Effective Date ("Standard Condition"), James Rhodes can (i) require the

Case 09-14814-lbr    Doc 1013-1    Entered 02/18/10 16:31:19    Page 140 of 207

**EXECUTION COPY**

| | |
|---|---|
| | Reorganized Debtors to cure any conditions to return the Rhodes Ranch Golf Course to its Standard Condition (provided, that the cost of such cure does not exceed $500,000), or (ii) choose not to purchase the Rhodes Ranch Golf Course. Upon either the repurchase of the Rhodes Ranch Golf Course or the written decision to not repurchase the Rhodes Ranch Golf Course (in accordance with the preceding sentence), the Golf Course Security Property or the $500,000 Cash (if not applied to the repurchase of the Rhodes Ranch Golf Course) shall be returned to Rhodes within 30 days. <br><br> On the Effective Date, the Reorganized Debtors shall record a memorandum of agreement against the Rhodes Ranch Golf Course to evidence the above. |
| **Golf Course Audit:** | During the period from September 1, 2009 through September 23, 2009, the Rhodes Entities shall provide access to the First Lien Steering Committee or its designee to undertake a financial and operational audit of the Rhodes Ranch Golf Course. The results of such audit must be acceptable to the First Lien Steering Committee in its sole discretion and evidence, among other things, that the financial performance of the Rhodes Ranch Golf Course is sufficient to pay operating expenses and service the debt on the Rhodes Ranch Golf Course without the need for additional liquidity. |
| **Cash Payment:** | The Rhodes Entities shall make a cash payment to the Reorganized Debtors of $3.5 million in cash on the Effective Date. |
| **Arizona:** | On the Effective Date, pursuant to an asset transfer agreement in form and substance acceptable to the First Lien Steering Committee and the Rhodes Entities, the Debtors shall transfer Pravada and the other Arizona assets set forth on Attachment D hereto, plus the Golden Valley Ranch tradename to the Rhodes Entities free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code; provided, that the non-First Lien Lender/Second Lien Lender liens do not exceed $60,000; provided that such assets shall not include assets owned by Pinnacle Grading located in Arizona and related contracts associated with the assets,. Debtors shall provide James Rhodes notice of any proposed sale of the Pinnacle assets, and James Rhodes shall be granted a right to bid on the sale of such assets within 10 days of such notice. Rhodes Entities shall permit storage of Pinnacle Grading equipment at current locations at no cost to the Reorganized Debtors for a period through six months following the Effective Date. <br><br> All executory contracts and unexpired leases associated solely with Arizona shall be assumed and assigned to the Rhodes Entities (or their designee), at no cost to the Debtors or the Reorganized Debtors and all cure costs associated therewith shall be borne by the Rhodes Entities. |
| **Plan Filing:** | The Debtors, the Rhodes Entities, the First Lien Steering Committee, the First Lien Agent, the Second Lien Agent and the Creditors Committee shall agree not to file a plan of reorganization until the earlier of (i) the date the parties agree on the terms of a plan of reorganization (and accompanying disclosure statement) or (ii) September 25, 2009. |
| **Cash Collateral:** | The First Lien Steering Committee, First Lien Agent and Second Lien Agent will agree to the continued use of cash collateral on existing terms and subject to an agreed upon budget, through January 11, 2010. |

**EXECUTION COPY**

| Trademarks and Trade Names | Within the earlier of thirty (30) days following: (i) upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E. |
|---|---|
| Trade Claims Analysis | The First Lien Steering Committee, the Debtors and the Creditors Committee will agree, prior to the hearing on the Disclosure Statement, (i) which filed or scheduled claims shall be classified as Trade Claims and (ii) on a procedure for the reconciliation of Trade Claims. If the parties are unable to agree on (i) or (ii) above in advance of the Disclosure Statement hearing, the Bankruptcy Court shall resolve any disputes at the Disclosure Statement hearing. |
| Preference Claims Against Holders of Allowed Trade Claims | The Reorganized Debtors shall not seek to avoid prepetition transfers to holders of allowed Trade Claims under Bankruptcy Code section 547 to the extent the resulting claim from the avoidance of such a preferential transfer would likewise be an allowed Trade Claim. |
| Stanley Engineering | In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent shall engage in good faith negotiations to ensure that the Second Lien Lenders receive consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration. In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation) |

Dated: September 25, 2009

APPROVED

By: _____
Name: _____
Title: _____
Counsel to the First Lien Steering Committee, with
authority from each of the members thereof

APPROVED

By: _____
Name:
Title:
Counsel to Wells Fargo, N.A., as Agent for the Second
Lien Lenders

APPROVED

By: _____
Name: James M. Rhodes
Title: President
The Rhodes Entities

APPROVED

By: _____
Name:
Title:
Counsel to the Official Committee of
Unsecured Creditors

APPROVED

By: _____
Name: James M. Rhodes
Title: President
Debtors and Debtors-in-Possession

8200277 v.13

7

EXECUTION COPY

| | |
|---|---|
| **Trademarks and Trade Names** | Within the earlier of thirty (30) days following: (i) upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E. |
| **Trade Claims Analysis** | The First Lien Steering Committee, the Debtors and the Creditors Committee will agree, prior to the hearing on the Disclosure Statement, (i) which filed or scheduled claims shall be classified as Trade Claims and (ii) on a procedure for the reconciliation of Trade Claims. If the parties are unable to agree on (i) or (ii) above in advance of the Disclosure Statement hearing, the Bankruptcy Court shall resolve any disputes at the Disclosure Statement hearing. |
| **Preference Claims Against Holders of Allowed Trade Claims** | The Reorganized Debtors shall not seek to avoid prepetition transfers to holders of allowed Trade Claims under Bankruptcy Code section 547 to the extent the resulting claim from the avoidance of such a preferential transfer would likewise be an allowed Trade Claim. |
| **Stanley Engineering** | In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent shall engage in good faith negotiations to ensure that the Second Lien Lenders receive consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration. In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation) |

Dated:  September 25, 2009

APPROVED

By: _____
Name:
Title:
*Counsel to the First Lien Steering Committee, with authority from each of the members thereof*

APPROVED

By: _____
Name:
Title:  Counsel
*Counsel to Wells Fargo, N.A., as Agent for the Second Lien Lenders*

APPROVED

By: _____
Name:  James M. Rhodes
Title:  President
*The Rhodes Entities*

APPROVED

By: _____
Name:
Title:
*Counsel to the Official Committee of Unsecured Creditors*

APPROVED

By: _____
Name:  James M. Rhodes
Title:  President
*Debtors and Debtors-in-Possession*

8200277 v.13

7

**EXECUTION COPY**

| | |
|---|---|
| Trademarks and Trade Names | Within the earlier of thirty (30) days following: (i) upon completion of the buildout of all of the Reorganized Debtors' homebuilding assets and inventory (regardless of when such assets and inventory were acquired), or (ii) bulk sale of the remaining inventory of the Reorganized Debtors, the Reorganized Debtors shall transfer to James Rhodes (or his designee) the trademarks and tradenames set forth on Attachment E. |
| Trade Claims Analysis | The First Lien Steering Committee, the Debtors and the Creditors Committee will agree, prior to the hearing on the Disclosure Statement, (i) which filed or scheduled claims shall be classified as Trade Claims and (ii) on a procedure for the reconciliation of Trade Claims. If the parties are unable to agree on (i) or (ii) above in advance of the Disclosure Statement hearing, the Bankruptcy Court shall resolve any disputes at the Disclosure Statement hearing. |
| Preference Claims Against Holders of Allowed Trade Claims | The Reorganized Debtors shall not seek to avoid prepetition transfers to holders of allowed Trade Claims under Bankruptcy Code section 547 to the extent the resulting claim from the avoidance of such a preferential transfer would likewise be an allowed Trade Claim. |
| Stanley Engineering | In the event the Stanley Engineering Litigation is resolved either by judgment or settlement in a manner favorable to the Reorganized Debtors and such resolution does not provide for Cash consideration to be received by the Reorganized Debtors and Second Lien Lenders, the Reorganized Debtors and the Second Lien Agent shall engage in good faith negotiations to ensure that the Second Lien Lenders receive consideration equivalent to 50% of the net value of such resolution and to determine the timing of payment of any such consideration. In the event the Reorganized Debtors and the Second Lien Agent are unable to agree on the amount or form of such consideration, the parties will submit the matter to binding arbitration with the costs thereof to be split evenly among the Reorganized Debtors and the Second Lien Agent (with the costs of the Second Lien Agent to be reimbursed from the consideration to be distributed to the Second Lien Lenders on account of the Stanley Engineering Litigation) |

Dated: September 25, 2009

APPROVED

By: _____
Name: Phi, p Vidi,
Title: Partner, BKruptcyStrus Hom & FdL UP
Counsel to the First Lien Steering Committee, with
authority from each of the members thereof

APPROVED

By: _____
Name:
Title:
Counsel to Wells Fargo, N.A., as Agent for the Second
Lien Lenders

APPROVED

By: _____
Name: James M. Rhodes
Title: President
The Rhodes Entities

APPROVED

By: _____
Name: J. Thomas Beckett
Title: Shareholder, Parsons Behle & Latimer
Counsel to the Official Committee of
Unsecured Creditors

APPROVED

By: _____
Name: James M. Rhodes
Title: President
Debtors and Debtors-in-Possession

8200277 v.13

7

EXECUTION COPY

## ATTACHMENT A - RHODES ENTITIES

James M. Rhodes

Glynda Rhodes

John Rhodes

James M. Rhodes Dynasty Trust I

James M. Rhodes Dynasty Trust II

JMR Children's Irrevocable Educational Trust

Truckee Springs Holdings, Inc.

Sedora Holdings LLC

Gypsum Resources, LLC

Tulare Springs Holdings, Inc.

Escalante-Zion Investments, LLC

HH Trust

Harmony Homes, LLC

Tock, LP

Tapemeasure, LP

Joshua Choya, LLC

American Land Management, LLC

South Dakota Conservancy, LLC

Meridian Land Company, LLC

Yucca Land Company, LLC

Sagebrush Enterprises, Inc.

Rhodes Ranch, LLC

Westward Crossing, LLC

Pinnacle Equipment Rental, LLC

Desert Communities, Inc.

Spirit Underground, LLC

*8200277 v.13*

EXECUTION COPY

Tropicana Durango Investments, Inc.

Tropicana Durango, Ltd. I

Dirt Investments, LLC

Underground Technologies, LLC

South Dakota Aggregate and Engineering, LLC

Freedom Underground, LLC

Jerico Trust

Canberra Holdings, LLC

Custom Quality Homes, LLC

Rhodes Ranch Golf, Inc.

ID Interior Design, LLC

**EXECUTION COPY**

**ATTACHMENT B**

1.  The following distributions were made and permitted pursuant to terms of Credit Agreement:

| Date | Amount | Distribution Comments |
|------|--------|------------------------|
| 4/17/2007 | $42,705 | Heritage → Sedora |
| 4/17/2007 | $707,295 | Heritage → Sagebrush |
| 5/4/2007 | $56,939 | Heritage → Sedora |
| 5/4/2007 | $943,061 | Heritage → Sagebrush |
| TOTAL | $1,750,000 | |

2.  Transactions with Spirit Underground and Freedom Underground (as set forth below):

[ATTACHED]

10

Case 09-14814-gwz    Doc 1058    Entered 03/12/13 14:15:59    Page 157 of 207

The page content is rotated 90 degrees and consists of a large financial data table that is too small and densely printed to reliably transcribe.

**EXECUTION COPY**

### ATTACHMENT C

1.    The lenders would form a new entity ("Newco"). Newco would be either a corporation or a limited liability company. The First Lien loans would be deemed contributed to Newco.

2.    Newco would purchase all of the interests in Heritage from its members for $10.00.

3.    Revenue Ruling 99-6 provides that on a sale of all of the interests of a partnership for tax purposes (which would include a limited liability company), the sellers are treated as selling "partnership interests". On the other hand, the buyer is deemed to be buying the assets of the partnership. As a result, from the Heritage members' perspective they would be treated as selling all of the interests in Heritage. Newco would be treated for federal income tax purposes as purchasing the 99% partnership interests in each of the limited partnerships held by Heritage and the 1% partnership interest held by Truckee Springs. Further, assuming that the general partner of each of the limited partnerships in turn sells its general partnership interests to Newco, Newco would be deemed to have owned the real estate owned by the limited partnerships (since each of the partnerships would have terminated for federal income tax purposes). At that point Newco would own all of the real estate.

4.    For federal income tax purposes, each Heritage member would have a gain equal to the excess of the liabilities of Heritage allocable to such member (which the transaction relieves the member of) minus the member's tax basis in its Heritage interest. This gain would be treated as long-term capital gain (except to the extent Heritage holds, directly or indirectly, assets subject to Section 751 of the Code, generally inventory or receivables arising from the sale of inventory).

5.    Therefore, contemporaneous with or subsequent to Newco's purchase of the Heritage membership interests, The Rhodes Companies, LLC - the general partner of each of Tick, LP; Glynda, LP; Jackknife, LP; LP; Batcave, LP; Overflow, LP; Wallboard, LP; and Chalkline, LP, -- shall sell its general partnership interests in such entities to Newco for $1.00. Alternatively, the membership interest in The Rhodes Companies, LLC may be acquired from its sole member -- Sagebrush Enterprises, Inc. -- in consideration for release of its obligations under the First Lien Lender Claims.

6.    Newco's members may agree to continue Newco as an LLC, file a check the box election effective the day after the Effective Date to treat Newco as a corporation for tax purposes, or convert into a corporation as of the day after the Effective Date.

7.    The holders of the Heritage membership interests and Newco will report the sale and purchase of the Heritage membership interests in accordance with Revenue Ruling 99-6, 1999-1 CB 432.

**EXECUTION COPY**

ATTACHMENT D – ARIZONA

## RHODES ARIZONA PROPERTIES

| OWNER | NUMBER | | | | |
|-------|--------|--|--|--|--|
| RHODES ARIZONA PROPERTIES LLC | 306-24-115 | 20.25 | 1825 S AZTEC RD | | Model Home |
| RHODES ARIZONA PROPERTIES LLC | 306-24-116 | 20.24 | 1807 AZTEC RD | | Model Home |
| RHODES ARIZONA PROPERTIES LLC | 306-63-017 | 7.35 | 4536 W DORA DR | | Model Home |
| RHODES ARIZONA PROPERTIES LLC | 306-63-018 | 6.83 | 4528 W DORA DR | | Model Home |
| RHODES ARIZONA PROPERTIES LLC | 306-42-008A | 19.92 | 1156 S AZTEC RD | | Dirt |
| RHODES ARIZONA PROPERTIES LLC | 306-42-001 | 40 | 1094 S AZTEC RD | | Dirt |
| | Total Acreage | 114.59 | | | |

| Inside Pravada |
|---|
| Pravada and all parts of Pravada lying within Sections 2, 3, 4, 9 and 10, all in Township 20 North, Range 18 West of the Gila and Salt River Base and Meridian, Mohave County, Arizona and within the following APN numbers: |

| OWNER | NUMBER | | | | |
|-------|--------|--|--|--|--|
| Rhodes Arizona Properties | 215-01-116 | | | | Partially Graded |
| Rhodes Arizona Properties | 215-01-113 | | | | Partially Graded |
| Rhodes Arizona Properties | 215-01-114 | | | | Partially Graded |
| Rhodes Arizona Properties | 215-01-111 | | | | Partially Graded |
| | Total Acreage | 1,306± | | | |

## Arizona Personal Property

| Computers | Serial Number |
|-----------|---------------|
| HP 5150 | 2UA6030J6N |
| HP 5150 | MXL615027R |
| HP 5150 | 2UA6030J57 |
| HP WX4400 | 2UA70608F7 |
| HP WX4400 | 2UA70608HV |
| HP XW4200 | 2UA54215GL |
| Dell | GZOGR61 |

**Laptops**

EXECUTION COPY

HPNX6125                                        CND54803LY
HPNX9600                                        CNF6071GBR

**Printers**
HPLaser Jet 4250                                CNBXD06564
HPLaser Jet 4101                                USLGY26030
HPLaser Jet 4100                                USLGY42771
HPLaser Jet 1320                                CNHC620168
HP color Laser Jet 2600                         CNGC64C1KC
HP color Laser Jet 2804                         JPBG532058
HP color Laser Jet 5550                         JPDC4D2072
HP office jet 6310                              CN639BGOYK
HP Photosmart D5160                             MY67G110DC
Lexmark 7001-001                               890CSTB
Lexmark 7001-001                               890CD3N
Super G3 Printer-Scanner                        J8141101150

**Fax Machines**

2 - HP office jets 7310

6 of the printers and the fax machines have copier capabilities

**Miscellaneous Equipment**
Dell Power Edge Server 2850                     85172579422
HP Design Jet 1055CM Plus Plotter
10 Battery Surge boxes and 10 power strips
11 -computer monitors 20" flat screen
4 calculators
14 telephone owned by Rhodes

**Office Furniture**
2 - drafting tables
3 - work tables with open shelves for plans
12 - file cabinets
    2 - 5 drawer 63 x 18
    1 - 3 drawer 36 x 20
    7 - 4 drawer 18 x 48
    2 - 4 drawer 20 x 48
2 - 3 shelf wood bookcases
4 - 4 shelf bookcases: (2) metal (2) wood
1 - hanging file for plans
1 - metal storage cabinet, 2-door, 4 shelves
2- wooden storage cabinets 2-door, 1 shelf
11 - desks: (1) metal (10) wood
12 - desk chairs
12 - guest chairs
5 - stacking chairs
1 - 4 x 6 rotating white board
1 - garbage can

8200277 v.13                          13

**EXECUTION COPY**

10 - waste baskets
3 - 6 foot tables
2 - metal storage shelves- dimensions 5'h x 3'w x 18.5"d
2 - plastic storage shelves- dimensions 6'h x 3'W x 18" d

**Executory Contracts and Unexpired Leases**
To be provided by Plan Supplement Date but shall include, but not be
limited to all development agreements and subcontractor agreements

**Trademarks and Tradenames**
Rhodes Arizona Properties
Rhodes Arizona
Golden Valley Ranch
Pravada

**Intangibles**
All architectural and engineering drawings, plus work product associated with Pravada and Golden Valley Ranch.
All agreements with municipalities and utilities with respect to Pravada and Golden Valley Ranch.
Arizona general contractor's license.

*8200277 v.13*

14

EXECUTION COPY

**ATTACHMENT E – TRADENAMES/TRADEMARKS**

All Rhodes Lead Home!
Rhodes Homes
R (logo)
R (logo) Rhodes Homes (owned by Rhodes Homes, Inc.)
RhodeMaster

*8200277 v.13*

Case 09-14814-gwz    Doc 1291    Entered 08/13/10 16:48:59    Page 157 of 207
Case 09-14814-lbr    Doc 1053    Entered 08/12/10 17:12:30    Page 146 of 148
Case 09-14814-lbr    Doc 1013-2    Entered 02/18/10 16:31:19    Page 1 of 4

## Exhibit 2

### New First Lien Notes Term Sheet

**EXHIBIT 2**

Summary of Terms and Conditions ("Term Sheet") for
$50 Million New First Lien Notes ("New First Lien Notes")

## TERMS

| | |
|---|---|
| **Borrowers:** | Newco, Heritage Land Company, LLC; The Rhodes Companies, LLC; Rhodes Ranch General Partnership; Tick, LP; Glynda, LP; Chalkline, LP; Batcave, LP; Jackknife, LP; Wallboard, LP; Overflow, LP; Rhodes Ranch Golf and Country Club; Tuscany Acquisitions, LLC; Tuscany Acquisitions II, LLC; Tuscany Acquisitions III, LLC; Tuscany Acquisitions IV, LLC; Parcel 20 LLC; Rhodes Design and Development Corp.; C&J Holdings, Inc.; Rhodes Realty, Inc.; Jarupa LLC; Elkhorn Investments, Inc.; Rhodes Homes Arizona, LLC; Rhodes Arizona Properties, LLC; Tribes Holdings LLC; Six Feathers Holdings, LLC; Elkhorn Partners, A Nevada Limited Partnership; Bravo Inc.; Gung-Ho Concrete, LLC; Geronimo Plumbing, LLC; Apache Framing, LLC; Tuscany Golf Country Club, LLC; and Pinnacle Grading, LLC, each as may be reorganized pursuant to a joint plan of reorganization to be proposed by the First Lien Steering Committee. |
| **New First Lien Notes:** | $50 million in first lien secured notes. Once repaid, the New First Lien Notes may not be reborrowed. |
| **Guarantors:** | All of the Borrowers. |
| **Agent:** | To be determined ("Agent"). |
| **Lenders:** | The lenders ("Lenders") under the first lien Credit Agreement dated as of November 21, 2005 (as may have been amended from time to time) among Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership, as the Borrowers, the Lenders Listed Therein as Lenders, and Credit Suisse, Cayman Islands Branch, as Administrative Agent, Collateral Agent, Syndication Agent, Sole Bookrunner and Sole Lead Arranger, and the other loan documents (as defined in the First Lien Credit Agreement) (as may have been amended from time to time, the "Existing Credit Facility"). |
| **Maturity Date:** | The date that is the sixth anniversary of the Effective Date ("Maturity Date"). |
| **Purpose:** | To refinance a portion of the Existing Credit Facility and satisfy a portion of the Lenders' claims under the Existing Credit Facility. |
| **Security:** | The New First Lien Notes and all guarantees thereof will be secured by first priority perfected liens on substantially all existing and after acquired property of the Borrowers. |
| **Interest Rate:** | "Cash Pay Rate": LIBOR plus 2.00% per annum; or |

"PIK Rate": LIBOR plus 5.00% per annum.

**Interest Payments:**      Interest on the New First Lien Notes shall be payable in Cash quarterly in arrears at the Cash pay rate of LIBOR +2%; provided that if the average of the Reorganized Debtors' unrestricted consolidated Cash as of the last day of each of the two immediately preceding consecutive quarters is less than $15 million or if the unrestricted consolidated Cash as of the last day of the immediately preceding quarter is less than $15 million (collectively, the "Cash Interest Threshold"), then the Reorganized Debtors shall have the option to capitalize the amount of interest due in excess of LIBOR for the immediately preceding quarter, with such capitalized interest to be capitalized on such interest payment date, and all such capitalized interest shall be due on the next interest payment date to the extent the Cash Interest Threshold is met after giving effect to the payment of interest and capitalized interest or as the Reorganized Debtors otherwise elect. All capitalized interest not previously paid shall be paid on the Maturity Date. LIBOR shall be subject to a cap of 2%.

**Mandatory Prepayments:**      Mandatory prepayments of principal shall be made by the Reorganized Debtors if the average of the Reorganized Debtors' unrestricted consolidated Cash as of the last day of each of the two immediately preceding consecutive quarters is greater than $15 million or if the unrestricted consolidated Cash as of the last day of the immediately preceding quarter is greater than $15 million, in each case, after the payment of interest due on the New First Lien Notes.

**Covenants:**      Customary affirmative and negative covenants for facilities of this type, including but not limited to financial covenants and covenants limiting other indebtedness, off-balance sheet financing, liens, investments, guaranties, restricted junior payments (dividends, redemptions, and payments on subordinated debt), mergers and acquisitions, sales of assets, capital expenditures, transactions with affiliates and conduct of business, subject to exceptions and baskets to be mutually agreed by the parties.

**Senior Revolving Loan and Letter of Credit Facility:**      The New First Lien Notes shall contain provisions permitting the Borrowers to incur up to $10 million in secured indebtedness senior to the New First Lien Notes in the form of a working capital revolving loan and letter of credit facility, subject to the satisfaction of the terms and conditions set forth in the New First Lien Notes Documentation.

**Events of Default:**      Customary for facilities of this type, including but not limited to failure to make payments when due, defaults under other agreements or instruments of indebtedness, noncompliance with covenants, breaches of representations and warranties, bankruptcy, judgments, invalidity of guaranties, impairment of security interests, and change of ownership.

2

**Other Terms:**   The New First lien Notes shall include without limitation a default rate of interest, optional, increased costs or reduced returns, conditions precedent to closing, representations and warranties, assignments participations, amendment, waiver, and required lender provisions, in each case, customary for facilities of this type.

**Documentation:**   The New First Lien Notes Documentation shall be in form and substance acceptable to the First Lien Steering Committee.

3

# EXHIBIT 2

James I. Stang, Esq. (CA Bar No. 94435)                    E-File: April 1, 2010
Shirley S. Cho, Esq. (CA Bar No. 192616)
Werner Disse, Esq. (CA Bar No. 143458)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
        scho@pszjlaw.com
        wdisse@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV  89101
Telephone:  702/382.1170
Facsimile:  702/382.1169
Email: zlarson@lslawnv.com
Attorneys for Debtors and
Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

In re:                                              Case No. 09-14814 LBR

THE RHODES COMPANIES, LLC, aka "Rhodes
Homes," et al.,[1]

        Debtors.

☒  Affects All Debtors
☐  Affects the following Debtors:

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09- 14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20 LLC (Case No. 09-14848); Tuscany Acquisitions IV LLC (Case No. 09-14849); Tuscany Acquisitions III LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf and Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Proper-ties, LLC (Case No. 09-14868); Rhodes Homes Arizona, LLC (Case No. 09- 14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

DOCS_LA:217747.1

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

## NOTICE OF EFFECTIVE DATE OF THIRD AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE RHODES COMPANIES, LLC , ET AL.

**PLEASE TAKE NOTICE** that on March 31, 2009 or April 1, 2009, the above-captioned companies each filed chapter 11 petitions in the United States Bankruptcy Court for the District of Nevada (the "Petition Date").

**PLEASE TAKE NOTICE** that, on March 12, 2010, the Court entered its *Proposed Findings of Fact, Conclusions of Law, and Order* (the "Confirmation Order") *Confirming the First Lien Steering Committee's Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes Companies, LLC, et al.* (the "Plan"). All capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on **April 1, 2010**, at which time the Plan became effective and binding on all parties in interest. All injunctions provided for under the Plan and Confirmation Order are now in full force and effect. Copies of the Plan and Confirmation Order are available for review for free online at www.omnimgt.com/rhodes or by contacting the Debtors' counsel in writing, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., Suite 1100, Los Angeles, CA 90067, or by email at pjeffries@pszjlaw.com.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Plan, all requests for payment of a Claim for costs and expenses of administration of the bankruptcy cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

DOCS_LA:217747.1

2

Case 09-14814-lbr Doc 707-9 Entered 11/13/10 04:25:49 Page 3 of 3

1  Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the

2  Effective Date; (c) all fees and charges assessed against the Estate pursuant to chapter 123 of the

3  Judicial Code and 28 U.S.C. § 1930; and (d) all requests for compensation or expense

4  reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections

5  503(b)(3), (4), and (5) of the Bankruptcy Code ("Administrative Claim") must be Filed with the

6  Claims and Solicitation Agent and served upon counsel to the Debtors or Reorganized Debtors,

7  as applicable, and the First Lien Steering Committee, on or before **May 3, 2010 (the**

8  **"Administrative Claims Bar Date").** Notwithstanding the foregoing, no request for payment of

9  an Administrative Claim need be Filed with respect to an Administrative Claim previously

10  Allowed by Final Order.

11

12      **PLEASE TAKE FURTHER NOTICE** that all final requests for payment of Claims of a

13  Professional shall be Filed no later than **May 17, 2010 (the "Professional Fee Bar Date").**

14      **PLEASE TAKE FURTHER NOTICE THAT ANY ADMINISTRATIVE CLAIMS**

15  **OR PROFESSIONALS CLAIMS THAT ARE NOT TIMELY FILED BY THE**

16  **ADMINISTRATIVE CLAIMS BAR DATE OR THE PROFESSIONAL FEE BAR DATE**

17  **BE DISALLOWED AUTOMATICALLY, FOREVER BARRED FROM ASSERTION,**

18  **AND SHALL NOT BE ENFORCEABLE AGAINST ANY REORGANIZED DEBTOR**

19  **WITHOUT THE NEED FOR ANY OBJECTION BY THE REORGANIZED DEBTORS**

20  **OR FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE**

21  **BANKRUPTCY COURT.**

22

23  **DATED** this 2nd day of April, 2010.        **LARSON & STEPHENS**

24

25                               */s/ Zachariah Larson, Esq.*

26                               Zachariah Larson, Bar No. 7787

27                               Kyle O. Stephens, Bar No. 7928
                             810 S. Casino Center Blvd., Suite 104

28                               Las Vegas, NV 89101
                             702/382.1170
                             Attorneys for Reorganized Debtors

**LARSON & STEPHENS**
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

**EXHIBIT 4 TO BOETTCHER DECLARATION**

**From:** Don Boettcher
**Sent:** Monday, November 04, 2013 1:51 PM
**To:** Robert Herr
**Cc:** Don Boettcher
**Subject:** Follow Up - C1 Channel - Tuscany

Robert:

I have not received from the City of Henderson any response to the below email that I had sent on October 17.  As noted below in my email, Dunhill simply desires the City to confirm that the City will abide by the Bankruptcy Plan.

I am sure you can appreciate that Dunhill Homes must continue to move forward with its development of Tuscany master planned community, which includes ensuring that Dunhill Homes will receive appropriate and timely approvals from the City.  The City's claims against Dunhill Homes in connection with the agreement between the City and Commerce Associates have forced Dunhill Homes reluctantly into a position where Dunhill Homes must defend itself by filing a motion with the bankruptcy court for relief from the City's actions in violation of the Bankruptcy Plan.  I will forward a copy of the motion to your attention once filed.

As always, if you have any questions please feel free to give me a call.

Thanks.

---

**From:** Don Boettcher
**Sent:** Thursday, October 17, 2013 5:57 PM
**To:** 'Robert Herr'
**Subject:** C-1 Channel - Tuscany - Follow up to Meeting on Monday

Robert, as discussed, I am sending this e-mail as a follow up to our meeting on Monday of this week.    I am hopeful that this e-mail helps the City put closure on the C-1 Channel issue as it relates to Dunhill that you discussed with us at the meeting.

Attached please find information about the bankruptcy of Rhodes Homes and its affiliated entities (the "Reorganized Debtors") including those Reorganized Debtors that own land at the Tuscany master planned community.  Also included is a copy of the plan of reorganization (the "Bankruptcy Plan").

We respectfully request that the City of Henderson discontinue any attempt to collect from the Reorganized Debtors any amounts due under the C-1 Channel Phase 3 Agreement dated December 14, 2004 between the City and Commerce Associates, or to refuse to process and approve in the normal course subdivision maps or other matters required for the development of the Reorganized Debtors' property at Tuscany, which actions are a violation of the Bankruptcy Plan.

As you know, the Reorganized Debtors will require the processing of its subdivision maps and other matters by the City in order to continue development at Tuscany.  Please be advised that any action by the City which is in violation of the Bankruptcy Plan and which delays or hinders the development of Tuscany will cause substantial damages to the Reorganized Debtors.

Please confirm the City's agreement to abide by the Bankruptcy Plan by November 1, 2013.  If we fail to receive such confirmation by November 1, 2013, the Reorganized Debtors will file a motion with the bankruptcy court for relief from the City's actions in violation of the Bankruptcy Plan.

I appreciate your assistance with this matter.    If you have any questions please feel free to contact me.

Once again, thanks.

# EXHIBIT 5 TO CHO DECLARATION

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
## District of Nevada

In re    **Rhodes Design and Development Corporation**    ,    Case No.    **09-14846**

Debtor

Chapter    **11**

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 4 | 5,535,814.20 | | |
| B - Personal Property | Yes | 10 | 693,150.91 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 2 | | 392,895,340.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 2 | | 6,511.70 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 116 | | 106,964,323.86 | |
| G - Executory Contracts and Unexpired Leases | Yes | 4 | | | |
| H - Codebtors | Yes | 16 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 154 | | | |
| Total Assets | | | 6,228,965.11 | | |
| Total Liabilities | | | | 499,866,175.56 | |

B6F (Official Form 6F) (12/07)

In re __Rhodes Design and Development Corporation_____, Case No. ___09-14846_____
　　　　　　　　　　　　　　　　　　　　Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐　Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. | | - | | | Bond Beneficiary | | | | |
| City of Henderson 240 Water Street Henderson, NV 89009 | | | | | | | X | X | Unknown |
| Account No. | | - | | | Bond Beneficiary | | | | |
| Clark County Development Services 500 S. Grand Central Parkway Las Vegas, NV 89155 | | | | | | | X | X | Unknown |
| Account No. | X | - | | | Bond No. 112882 | | | | |
| Frontier Insurance Company Scheer's West 2213 N. Green Valley Pkwy Suite 101 Henderson, NV 89014 | | | | | | | X | X | Unknown |
| Account No. | X | - | | | Bond Nos. 5018785, 5018764, 5026672, 5019816, 5017092, 5017134 | | | | |
| Lexon Insurance Company Bond Safeguard Insurance Company 1919 S. Highland Dr. Bldg. A Suite 300 Lombard, IL 60148 | | | | | | | X | X | Unknown |

___1____ continuation sheets attached

Subtotal
(Total of this page)　　　　　　　　0.00

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037　　　　　　　S/N:40561-090406　　Best Case Bankruptcy

B6 Declaration (Official Form 6 - Declaration). (12/07)

# United States Bankruptcy Court
## District of Nevada

In re __Rhodes Design and Development Corporation__      Case No. __09-14846__

Debtor(s)      Chapter __11__

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

       I, the Authorized Agent of the corporation named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of __156__ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date __April 30, 2009__        Signature _____

Joseph Schramm
Authorized Agent

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
## District of Nevada

In re    **Rhodes Ranch General Partnership**                              ,         Case No.   **09-14844**

                                          Debtor

                                                                                    Chapter                    **11**

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets.  Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 5 | 8,044,836.67 | | |
| B - Personal Property | Yes | 5 | 310,786.72 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 393,104,835.65 | |
| E - Creditors Holding Unsecured Priority Claims  (Total of Claims on Schedule E) | Yes | 2 | | 24,926.09 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 86 | | 1,464,316.86 | |
| G - Executory Contracts and Unexpired Leases | Yes | 2 | | | |
| H - Codebtors | Yes | 16 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 117 | | | |
| Total Assets | | | 8,355,623.39 | | |
| Total Liabilities | | | | 394,594,078.60 | |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                                                    Best Case Bankruptcy

B6F (Official Form 6F) (12/07)

In re __Rhodes Ranch General Partnership__ , Case No. __09-14844__
_____
Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | |
| Account No. | | | | **Bond Beneficiary** | | | | |
| **City of Henderson**<br>**240 Water Street**<br>**Henderson, NV 89009** | | - | | | X | X | | Unknown |
| Account No. | | | | **Bond Beneficiary** | | | | |
| **Clark County Development Services**<br>**500 S. Grand Central Parkway**<br>**Las Vegas, NV 89155** | | - | | | X | X | | Unknown |
| Account No. | | | | **Bond Nos. 5019711, 5021320, 5022209, 5020298, 5014307, 5014306,** | | | | |
| **Lexon Insurance Company**<br>**Bond Safeguard Insurance Company**<br>**1919 S. Highland Dr. Bldg. A**<br>**Suite 300**<br>**Lombard, IL 60148** | X | - | | | X | X | | Unknown |
| Account No. | | | | **Litigation Claims** | | | | |
| **Schedule F01**<br>**See Attachment F1** | | - | | | X | X | X | Unknown |

| | | |
|---|---|---|
| __1__ continuation sheets attached | Subtotal<br>(Total of this page) | 0.00 |

B6 Declaration (Official Form 6 - Declaration). (12/07)

# United States Bankruptcy Court
### District of Nevada

In re    **Rhodes Ranch General Partnership**            Case No.    **09-14844**
                        Debtor(s)                Chapter    **11**

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

      I, the Authorized Agent of the partnership named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of __ **119** __ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date   **April 30, 2009**               Signature                                                
                                                Joseph Schramm
                                                Authorized Agent

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Software Copyright (c) 1996-2009 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                 Best Case Bankruptcy

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
### District of Nevada

In re **Tuscany Acquisitions III, LLC** ,

Debtor

Case No. **09-14850**

Chapter **11**

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 6 | 2,719,966.89 | | |
| B - Personal Property | Yes | 4 | 0.00 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 392,895,340.00 | |
| E - Creditors Holding Unsecured Priority Claims  (Total of Claims on Schedule E) | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 6 | | 50,823.56 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 16 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 35 | | | |
| Total Assets | | | 2,719,966.89 | | |
| Total Liabilities | | | | 392,946,163.56 | |

Case 09-14850 Doc 71 Entered 04/30/13 19:54:11 Page 176 of 207

B6F (Official Form 6F) (12/07)

In re **Tuscany Acquisitions III, LLC**        Case No. __**09-14850**__
_____,
Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. <br><br>**City of Henderson**<br>**240 Water Street**<br>**Henderson, NV 89009** | | - | | | **Bond Beneficiary** | X | X | | **Unknown** |
| Account No. <br><br>**Lexon Insurance Company**<br>**Bond Safeguard Insurance Company**<br>**1919 S. Highland Dr. Bldg. A**<br>**Suite 300**<br>**Lombard, IL 60148** | X | - | | | **Bond Nos. 5021428, 5021504** | X | X | | **Unknown** |
| Account No. <br><br>**Nevada Power Company**<br>**PO Box 30086**<br>**Reno, NV 89520-3086** | | - | | | **Bond Beneficiary** | X | X | | **Unknown** |
| Account No. <br><br>**Schedule F01**<br>**See Attachment F1** | | - | | | **Litigation Claims** | X | X | X | **Unknown** |
| __1__ continuation sheets attached | | | | | Subtotal<br>(Total of this page) | | | | **0.00** |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037            S/N:40561-090406    Best Case Bankruptcy

B6 Declaration (Official Form 6 - Declaration). (12/07)

# United States Bankruptcy Court
## District of Nevada

In re __Tuscany Acquisitions III, LLC__  

Debtor(s)

Case No. __09-14850__

Chapter __11__

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the Authorized Agent of the corporation named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of __37__ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date __April 30, 2009__

Signature _____
Joseph Schramm
Authorized Agent

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

1   James I. Stang, Esq. (CA Bar No. 94435)                    E-File:  November 6, 2013
    Shirley S. Cho, Esq. (CA Bar No. 192616)
2   Pachulski Stang Ziehl & Jones LLP
    10100 Santa Monica Blvd., 13th Floor
3   Los Angeles, California 90067-4100
    Telephone: 310/277-6910
4   Facsimile:  310/201-0760
    Email: jstang@pszjlaw.com
5           scho@pszjlaw.com

6   Zachariah Larson, Esq. (NV Bar No. 7787)
    LARSON & ZIRZOW
7   810 S. Casino Center Blvd. Ste 101
    Las Vegas, NV 89101
8   Telephone:  702/382-1170
    Facsimile:   702/382-1169
9   Email: zach@lawnv.com

10  Attorneys for Reorganized Debtors

11              **UNITED STATES BANKRUPTCY COURT**

12                    **DISTRICT OF NEVADA**

13  In re:                                  Case No.: BK-S-09-14814-LBR
                                            (Jointly Administered)
14  THE RHODES COMPANIES, LLC, aka
    "Rhodes Homes," et al.,[1]              Chapter 11
15

16                Debtors.
17  ┌─────────────────────────────────────┐
    │ Affects:                            │
18  │ ☒      All Debtors                  │
    │ ☐      Affects the following Debtor(s) │
19  └─────────────────────────────────────┘

20

21  [1] The Debtors in these cases, along with their case numbers are:  Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache
22  Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-
23  14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843);
24  Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany
25  Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf and Country Club, LLC (Case No. 09-14854);
26  Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP
27  (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-
28  14887).

    DOCS_LA:272881.1 73203/035

**NOTICE OF FILING CERTIFICATES OF SERVICE RE NOTICE OF CHAPTER 11 BANKRUPTCY CASE, MEETING OF CREDITORS, AND DEADLINES AND PROOF OF CLAIM FORM**

**TO THE HONORABLE LINDA B. RIEGLE AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that attached hereto as Exhibit A are certificates of service of the *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines and Proof of Claim Form* in each of the Debtors' cases.

DATED this 5th day of November, 2013.

**LARSON & ZIRZOW**

/s/ Zachariah Larson, Esq.
Zachariah Larson, Bar No. 7787
810 S. Casino Center Blvd. Ste 101
Las Vegas, NV 89101
Telephone:  702/382-1170
Facsimile:   702/382-1169
Email:        zach@lawnv.com

Attorneys for Reorganized Debtors

DOCS_LA:272881.1 73203/035

2

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Chapter 11 |
| **RHODES RANCH GENERAL PARTERSHIP** | Case No.: BK-S-09-14844-LBR |
| | Chapter 11 |
| Debtor. | |

## CERTIFICATE OF SERVICE

I, Brian Osborne, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 16501 Ventura Boulevard, Suite 440, Encino, California 91436.

On April 17, 2009, I served the within document attached hereto as <u>Exhibit A</u>:

**NOTICE OF CHAPTER 11 BANKRUPTCY CASE, MEETING OF CREDITORS, AND DEADLINES**

**PROOF OF CLAIM FORM**

By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Encino, California. The parties served with the document(s) are attached hereto as <u>Exhibit B</u>.

Executed on April 20, 2009, at Encino, California.

Brian Osborne

Rhodes Ranch General Partnership 09-14844 - U.S. Mail | Served 4/17/2009

Christopher Thweny
Attn: Bankruptcy Desk/Managing Agent
7119 S Durango Dr Unit 305
Las Vegas, NV 89113

Christopher Trott
Attn: Bankruptcy Desk/Managing Agent
9050 W Warm Springs Rd Unit 2066
Las Vegas, NV 89148

Christopher Yepes
Attn: Bankruptcy Desk/Managing Agent
9311 Perennial Ave
Las Vegas, NV 89148

Christy Andersen
Attn: Bankruptcy Desk/Managing Agent
276 Scramble Dr
Las Vegas, NV 89148

Chul-soo Jo
Attn: Bankruptcy Desk/Managing Agent
1113 Doyle Pl
Mountain View, CA 94040

Chul-soo Jo
Attn: Bankruptcy Desk/Managing Agent
273 Fairway Woods Dr
Las Vegas, NV 89148

Chungu Lu
Attn: Bankruptcy Desk/Managing Agent
7167 S Durango Dr Unit 309
Las Vegas, NV 89113

Church Stephen
Attn: Bankruptcy Desk/Managing Agent
405-912 Selkirk Ave
Victoria BC V9A2V1
Canada

Church Stephen
Attn: Bankruptcy Desk/Managing Agent
7119 S Durango Dr Unit 204
Las Vegas, NV 89113

Churie Grose
Attn: Bankruptcy Desk/Managing Agent
7163 S Durango Dr Unit 311
Las Vegas, NV 89113

Chwen & Lai Guo
Attn: Bankruptcy Desk/Managing Agent
189 Short Ruff Way
Las Vegas, NV 89148

Chwen & Lai Guo
Attn: Bankruptcy Desk/Managing Agent
3906 S Pinehurst Cir
Denver, CO 80235

Chwen & Lee Guo
Attn: Bankruptcy Desk/Managing Agent
131 Short Ruff Way
Las Vegas, NV 89148

Chwen & Lee Guo
Attn: Bankruptcy Desk/Managing Agent
3906 S Pinehurst Cir
Denver, CO 80235

Cirlo & Rosanna Valdez
Attn: Bankruptcy Desk/Managing Agent
218 Crooked Putter Dr
Las Vegas, NV 89148

Citimortgage Inc
Attn: Bankruptcy Desk/Managing Agent
%Cr Title Serv
Ofallon, MO 63368

Citimortgage Inc
Attn: Bankruptcy Desk/Managing Agent
1000 Technology Dr # Ms-314
O Fallon, MO 63368

Citimortgage Inc
Attn: Bankruptcy Desk/Managing Agent
9671 Kampsville Ave
Las Vegas, NV 89148

Citimortgage Inc
Attn: Bankruptcy Desk/Managing Agent
9714 Valmeyer Ave
Las Vegas, NV 89148

City of Henderson
Attn: Bankruptcy Desk/Managing Agent
PO Box 95011
Henderson, NV 89005-5011

City of Henderson Utility Serv
Attn: Bankruptcy Desk/Managing Agent
P.O. Box 95011
Henderson NV 89009-5011

Claire Abreu
Attn: Bankruptcy Desk/Managing Agent
168 Duck Hollow Ave
Las Vegas, NV 89148

Clara Sbarra
Attn: Bankruptcy Desk/Managing Agent
7189 S Durango Dr Unit 102
Las Vegas, NV 89113

Clarence Richwalski
Attn: Bankruptcy Desk/Managing Agent
309 Lakewood Garden Dr
Las Vegas, NV 89148

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Chapter 11 |
| **RHODES DESIGN AND DEVELOPMENT CORP.** | Case No.: BK-S-09-14846-LBR |
| | Chapter 11 |
| Debtor. | |

## CERTIFICATE OF SERVICE

I, Brian Osborne, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 16501 Ventura Boulevard, Suite 440, Encino, California 91436.

On April 17, 2009, I served the within document attached hereto as <u>Exhibit A</u>:

> **NOTICE OF CHAPTER 11 BANKRUPTCY CASE, MEETING OF CREDITORS, AND DEADLINES**
>
> **PROOF OF CLAIM FORM**

By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Encino, California. The parties served with the document(s) are attached hereto as <u>Exhibit B</u>.

Executed on April 20, 2009, at Encino, California

Brian Osborne

Rhodes Design and Development Corp. 09-14846 - U.S. Mail                                    Served 4/17/2009

Citizens Utilities Rural Co.
Attn: Bankruptcy Desk/Managing Agent
3 High Ridge Park
Stamford CT 06905-1390

Citrix Systems, Inc.
Attn: Bankruptcy Desk/Managing Agent
6400 N.W. 6th Way
Ft. Lauderdale 33309

City Demolition Disposal
Attn: Bankruptcy Desk/Managing Agent
1020 Schritter Way
Kingman AZ 86401

City National Bank
Attn: Bankruptcy Desk/Managing Agent
PO BOX 60938
Los Angeles CA 90060-0938

City of Boulder City
Attn: Bankruptcy Desk/Managing Agent
PO Box 61350
Boulder City NV 89005

City of Henderson
Attn: Bankruptcy Desk/Managing Agent
PO Box 95011
Henderson, NV 89005-5011

City of Henderson Utility Serv
Attn: Bankruptcy Desk/Managing Agent
P.O. Box 95011
Henderson NV 89009-5011

City of Henderson-Finance Dept
Attn: Bankruptcy Desk/Managing Agent
Business License Division
P.O. Box 95007
Henderson NV 89009-5007

City of Kingman
Attn: Bankruptcy Desk/Managing Agent
412 Oak St.
Kingman AZ 86401

City of Kingman, AZ
Attn: Bankruptcy Desk/Managing Agent
310 North 4th Street
Kingman AZ 86401-5817

City of Las Vegas
Attn: Bankruptcy Desk/Managing Agent
Department of Finance & Business
400 Stewart Avenue
Las Vegas NV 89193

City of Las Vegas
Attn: Bankruptcy Desk/Managing Agent
Elkhorn Springs Imp Dist #505
P.O. Box 52782
Phoenix AZ 85072-2782

City of Las Vegas
Attn: Bankruptcy Desk/Managing Agent
PO Box 1900
Las Vegas NV 89125

City of Las Vegas (parking)
Attn: Bankruptcy Desk/Managing Agent
Parking Citations & Hearing Offic
P.O. Box 52731
Phoenix AZ 85072-2731

City of Las Vegas NV - Sewer
Attn: Bankruptcy Desk/Managing Agent
Department of Finance & Business
P.O. Box 52794
Phoenix AZ 85072-2794

City of North Las Vegas
Attn: Bankruptcy Desk/Managing Agent
2200 Civic Center Drive
North Las Vegas NV 89030

CKN-Partners, Inc.
Attn: Bankruptcy Desk/Managing Agent
9960 West Cheyenne Ave, Suite 280
Las Vegas NV 89129

Claire Abreu
Attn: Bankruptcy Desk/Managing Agent
168 Duck Hollow Ave
Las Vegas, NV 89148

Claire Damon
Attn: Bankruptcy Desk/Managing Agent
9050 W. Warm Springs # 2170
Las Vegas NV 89148

Clara Sbarra
Attn: Bankruptcy Desk/Managing Agent
7189 S Durango Dr Unit 102
Las Vegas, NV 89113

Clarence & Linda Santos
Attn: Bankruptcy Desk/Managing Agent
775 Wigan Pier Dr
Henderson, NV 89002

Clarence Richwalski
Attn: Bankruptcy Desk/Managing Agent
309 Lakewood Garden Dr
Las Vegas, NV 89148

Claritas, Inc.
Attn: Bankruptcy Desk/Managing Agent
PO Box 533028
Atlanta GA 30353-2028

Clark Co Air Quality & Environ
Attn: Bankruptcy Desk/Managing Agent
Management
500 S. Grand Central Pkwy
Las Vegas NV 89155

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

**TUSCANY ACQUISITIONS III, LLC**

Debtor.

Chapter 11

Case No.: BK-S-09-14850-LBR

Chapter 11

## CERTIFICATE OF SERVICE

I, Brian Osborne, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 16501 Ventura Boulevard, Suite 440, Encino, California 91436.

On April 17, 2009, I served the within document attached hereto as <u>Exhibit A</u>:

> **NOTICE OF CHAPTER 11 BANKRUPTCY CASE, MEETING OF CREDITORS, AND DEADLINES**
>
> **PROOF OF CLAIM FORM**

By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Encino, California. The parties served with the document(s) are attached hereto as <u>Exhibit B</u>.

Executed on April 20, 2009, at Encino, California

Brian Osborne

The Rhodes Companies, LLC 09-14814 - U.S. Mail                                          Served 4/17/2009

Chubb Group of Ins. Co.
Attn: Bankruptcy Desk/Managing Agent
PO Box 7247-0180
Philadelphia PA 19170-0180

Chuck's Masonry
Attn: Bankruptcy Desk/Managing Agent
7385 Prairie Falcon Road #110
Las Vegas NV 89128

CID Reserve Studies, LLC
Attn: Bankruptcy Desk/Managing Agent
3838 N. Central Avenue
Suite 1100
Phoenix AZ 85012

Cingular Wireless
Attn: Bankruptcy Desk/Managing Agent
P.O. Box 54360
Los Angeles CA 90054-0360

Cingular Wireless
Attn: Bankruptcy Desk/Managing Agent
P.O. Box 79075
Phoenix AZ 85062-9075

Cingular Wireless CA
Attn: Bankruptcy Desk/Managing Agent
P.O. Box 60017
Los Angeles CA 90060-0017

Cintas LOC #F35
Attn: Bankruptcy Desk/Managing Agent
1825 W. Parkside Lane
Phoenix AZ 85027

Cintas LOC #F35
Attn: Bankruptcy Desk/Managing Agent
5432 W. Missouri Ave
Glendale AZ  85301

Circle Software
Attn: Bankruptcy Desk/Managing Agent
2773 Barnet Highway Suite 205
BC V3B 1C2
Coquitlam Canada

CIT Financial Services
Attn: Bankruptcy Desk/Managing Agent
111 Old Eagle School Rd
Wayne, PA  19087

CIT Financial USA, Inc
Attn: Bankruptcy Desk/Managing Agent
PO Box 91448
Chicago IL 60693

CIT Group/Sales Financing, Inc
Attn: Bankruptcy Desk/Managing Agent
Mrs. Valeris
715 S. Metropolitan Avenue
P.O. Box 24330
Oklahoma City OK 73124

CIT Technology Fin Serv Inc.
Attn: Bankruptcy Desk/Managing Agent
23896 Network Place
Chicago IL 60673-1238

CIT Technology Financing Services, Inc
Attn: Bankruptcy Desk/Managing Agent
10201 Centurion Pkwy N
Ste 100
Jacksonville, FL 32256-4114

Citibank Texas, N.A.
Attn: Bankruptcy Desk/Managing Agent
Cust/Commercial Loan Operations
P.O. Box 8680
Bryan TX 77805-8680

Citicapital Commercial Corp
Attn: Bankruptcy Desk/Managing Agent
PO Box 168647
Irving, TX 75016-8647

Citicorp Vendor Finance
Attn: Bankruptcy Desk/Managing Agent
P.O. Box 41647
Philadelphia PA 19101-1647

Citizens Utilities Rural Co.
Attn: Bankruptcy Desk/Managing Agent
3 High Ridge Park
Stamford CT 06905-1390

Citrix Systems, Inc.
Attn: Bankruptcy Desk/Managing Agent
6400 N.W. 6th Way
Ft. Lauderdale 33309

City Demolition Disposal
Attn: Bankruptcy Desk/Managing Agent
1020 Schritter Way
Kingman AZ 86401

City National Bank
Attn: Bankruptcy Desk/Managing Agent
PO BOX 60938
Los Angeles CA 90060-0938

City of Boulder City
Attn: Bankruptcy Desk/Managing Agent
PO Box 61350
Boulder City NV 89005

City of Henderson Utility Serv
Attn: Bankruptcy Desk/Managing Agent
P.O. Box 95011
Henderson NV 89009-5011

City of Henderson-Finance Dept
Attn: Bankruptcy Desk/Managing Agent
Business License Division
P.O. Box 95007
Henderson NV 89009-5007

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>**THE RHODES COMPANIES, LLC,** aka<br>"Rhodes Homes, et al.."[1]<br><br><br>Debtor. | Chapter 11<br><br>Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11 |

[X] Affects All Debtors

[ ] Affects the following Debtors

## CERTIFICATE OF SERVICE

I, Nova George, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 16501 Ventura Boulevard, Suite 440, Encino, California 91436.

On September 28, 2009, I served the following document:

- **Notice of Hearing on Disclosure Statement for the Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code for the Rhodes Companies, LLC, ET AL.**

By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Encino, California. The parties served with the document(s) are attached hereto as Exhibit A.

Executed on September 29, 2009, at Encino, California

_Nova George_

Nova George

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Rhodes Ranch General Partnership (Case No.09-14844); Tick, LP (Case No. 09-14866); Glynda, LP (Case No. 09-14865); Chalkline, LP (Case No. 09-14862); Batcave, LP (Case No.09-14861); Jackknife, LP (Case No. 09-14860); Wallboard, LP (Case No. 09-14858); Overflow, LP (Case No. 09-14856); Rhodes Ranch Golf and Country Club (Case No. 09-14854); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Parcel 20 LLC(Case No. 09-14848); Rhodes Design and Development Corp. (Case No. 09-14846); C&J Holdings, Inc. (Case No. 09-14843); Rhodes Realty, Inc. (Case No. 09-14841); Jarupa LLC (Case No. 09-1439); Elkhorn Investments, Inc. (Case No. 09-14837); Rhodes Homes Arizona, LLC (Case No. 09-14882); Rhodes Arizona Properties, LLC (Case No. 09-14868); Tribes Holdings LLC (Case No.09-14817); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Partners, a Nevada Limited Partnership (Case No. 09-14828); Bravo, Inc. (Case No. 09-14825) Gung-Ho Concrete LLC (Case No. 09-14822); Geronimo Plumbing, LLC (Case No. 09-14820); Apache Framing, LLC (Case No. 09-14818); Tuscany Golf Country Club, LLC (Case No. 09-14884); Pinnacle Grading, LLC (Case No. 09-14887); Tuscany Acquisitions III, LLC (Case No. 09-09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); and Tuscany Acquisitions, LLC(Case No. 09-14853).

**EXHIBIT A**

**The Rhodes Companies, LLC - U.S. Mail**

CITY OF FLAGSTAFF TPT
P.O. BOX 22518
FLAGSTAFF, AZ 86002-2518

CITY OF HEND BUS LIC
BUSINESS LICENSE DIVISION
PO BOX 95007
HENDERSON, NV 89009-5007

CITY OF HEND-1486
PO BOX 95011
HENDERSON, NV 89009-5011

CITY OF HEND-2894
PO BOX 95011
HENDERSON, NV 89009-5011

CITY OF HEND-8180
PO BOX 95011
HENDERSON, NV 89009-5011

CITY OF HEND-9052
PO BOX 95011
HENDERSON, NV 89009-5011

CITY OF HENDERSON
ATTN: BANKRUPTCY DESK/ MANAGING AGENT
240 WATER ST.
HENDERSON, NV 89015

CITY OF HENDERSON
ATTN: BANKRUPTCY DESK/ MANAGING AGENT
240 WATER STREET
HENDERSON, NV 89009

CITY OF HENDERSON
BUSINESS LICENSE DIVISION
P.O. BOX 95007
HENDERSON, NV 890095007

CITY OF HENDERSON
PO BOX 95011
HENDERSON, NV 89009

CITY OF HENDERSON
PO BOX 95011
HENDERSON, NV 89005-5011

CITY OF HENDERSON DEV. SERVICE
ATTN: BANKRUPTCY DESK/ MANAGING AGENT
240 S. WATER ST
PO. BOX 95050
HENDERSON, NV 89009-5050

CITY OF HENDERSON UTILITY SERV
P.O. BOX 95011
HENDERSON NV 89009-5011

CITY OF HENDERSON-FINANCE DEPT
BUSINESS LICENSE DIVISION
P.O. BOX 95007
HENDERSON NV 89009-5007

CITY OF HENDERSON-FINANCE DEPT
P.O. BOX 95007
HENDERSON, NV 89009-5007

CITY OF KINGMAN
ATTN: BANKRUPTCY DESK/ MANAGING AGENT
310 NORTH 4TH STREET
KINGMAN, AZ 86401-5817

CITY OF KINGMAN
ATTN: BANKRUPTCY DESK/ MANAGING AGENT
412 OAK ST.
KINGMAN AZ 86401

CITY OF LAS VEAGS
PO BOX 52781
PHOENIX, AZ 85072-2781

CITY OF LAS VEGAS
ATTN: BANKRUPTCY DESK/ MANAGING AGENT
400 STEWART AVE
LAS VEGAS NV 89101

CITY OF LAS VEGAS
C/O PHILIP R. BYRNES
LAS VEGAS CITY ATTORNEY
400 STEWART AVENUE, NINTH FLOOR
LAS VEGAS, NV 89101

CITY OF LAS VEGAS
DEPARTMENT OF FINANCE & BUSINESS
400 STEWART AVENUE
LAS VEGAS, NV 89193

CITY OF LAS VEGAS
PO BOX 52781
PHOENIX, AZ 85072-2781

CITY OF LAS VEGAS - LICENSE
DEPT. OF FINANCE & BUSINESS SERV
P.O. BOX 52799
PHOENIX, AZ 850722799

CITY OF LAS VEGAS - SEWER
DEPARTMENT OF FINANCE & BUSINESS
P.O. BOX 52794
PHOENIX, AZ 85072-2794

CITY OF LAS VEGAS (PARKING)
PARKING CITATIONS & HEARING OFFIC
P.O. BOX 52731
PHOENIX AZ 85072-2731

CITY OF MESQUITE
ATTN: BANKRUPTCY DESK/ MANAGING AGENT
10 E. MESQUITE BLVD
MESQUITE, NV 89027

CITY OF NORTH LAS VEGAS
ATTN: BANKRUPTCY DESK/ MANAGING AGENT
2200 CIVIC CENTER DRIVE
NORTH LAS VEGAS, NV 89036

CITY OF NORTH LAS VEGAS
ATTN: BANKRUPTCY DESK/ MANAGING AGENT
2829 FORT SUMTER
NORTH LAS VEGAS, NV 89030

CITY OF PAHRUMP
ATTN: BANKRUPTCY DESK/ MANAGING AGENT
400 N. HIGHWAY 160
PAHRUMP, NV 89060

CIUBOTARU., MARIANA
ATTN: BANKRUPTCY DESK/ MANAGING AGENT
1191 CASA PALERMO CIR
HENDERSON, NV 89011-3143

CJM FINANCIAL, INC.
P.O. BOX 724
ANKENY, IA 50021

CKN-PARTNERS, INC.
ATTN: BANKRUPTCY DESK/ MANAGING AGENT
9960 WEST CHEYENNE AVE, SUITE 280
LAS VEGAS NV 89129

CLAIRE ABREU
ATTN: BANKRUPTCY DESK/ MANAGING AGENT
168 DUCK HOLLOW AVE
LAS VEGAS, NV 89148

1   James I. Stang, Esq. (CA Bar No. 94435)      E-File: <u>April 5, 2010</u>

Shirley S. Cho, Esq. (CA Bar No. 192616)

2   Werner Disse, Esq. (CA Bar No. 143458)

Pachulski Stang Ziehl & Jones LLP

3   10100 Santa Monica Blvd., 11th Floor

Los Angeles, California 90067-4100

4   Telephone: 310/277-6910

Facsimile: 310/201-0760

5   Email: jstang@pszjlaw.com

        scho@pszjlaw.com

6         wdisse@pszjlaw.com

7

8   Zachariah Larson, Esq. (NV Bar No. 7787)

LARSON & STEPHENS

9   810 S. Casino Center Blvd., Ste. 104

Las Vegas, NV 89101

10   Telephone: 702.382.1170

Facsimile: 702.382.1169

11   Email: zlarson@lslawnv.com

12   Attorneys for Reorganized Debtors and

Debtors in Possession

13

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | Case No.: BK-S-09-14814-LBR |
|---|---|
| | (Jointly Administered) |
| THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al.,[1] | Chapter 11 |
| Debtors. | |
| Affects: ☒ All Debtors ☐ Affects the following Debtor(s) | |

---

[1]  The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf and Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

73203-002\DOCS_LA:217976.1

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## CERTIFICATE OF SERVICE

1. On the 2nd day of April 2010, I served the following document(s):

   a. **NOTICE OF EFFECTIVE DATE OF THIRD AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE RHODES COMPANIES, LLC, ET AL. [DOCKET NO. 1079]**

2. I served the above-named document(s) by the following means to the persons as listed below:
   *(check all that apply)*

   ☐ a. **ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

SEE ATTACHED ECF EMAIL LIST

   ■ b. **United States mail, postage fully prepaid**
   *(List persons and addresses. Attach additional paper if necessary)*

SEE ATTACHED MAIL SERVICE LISTS

   ☐ c. **Personal Service** *(List persons and addresses. Attach additional paper if necessary)*

   I personally delivered the document(s) to the persons at these addresses:

   ☐ For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

   ☐ For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

   ☐ d. **By direct email (as opposed to through the ECF System)**
   *(List persons and email addresses. Attach additional paper if necessary)*

   ☐ e. **By fax transmission**
   *(List persons and fax numbers. Attach additional paper if necessary)*

   Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

## I declare under penalty of perjury that the foregoing is true and correct.

Signed on (date): April 2, 2010

Sophia L. Lee
(Name of Declarant)

(Signature of Declarant)

LARSON & STEPHENS
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

In re Rhodes Companies, LLC - Service List

| | | | | |
|---|---|---|---|---|
| CREDIT SUISSE LOAN FUNDING LLC | Attn: Tom Lynch | Eleven Madison Avenue, 9th Floor | New York NY 10010 | 2002 1st Lender Agent |
| Jeffrey R. Sylvester, Esq. | James B. MacRobie, Esq. | Sylvester & Polednak, Ltd. | 7371 Prairie Falcon Rd Las Vegas, NV 89128 | 2002 1st Lien Agent Counsel |
| Van C. Durrer II | Ramon M. Naguiat | Skadden, Arps, Slate, Meagher & 300 South Grand Aven Los Angeles, CA 90071-3144 | | 2002 1st Lien Agent Counsel |
| Ira Dizengoff and Phillip Dublin | AKIN GUMP STRAUSS HAUER One Bryant Park | | New York, NY 10036 | 2002 1st Lien Lenders |
| Nile Leatham & Timothy P. Thomas | KOLESAR & LEATHAM | Wells Fargo Financial Center | 3320 W. Sahara Ave. Las Vegas, NV 89102 | 2002 1st Lien Lenders |
| Wells Fargo Bank, National Association | Attn: David Bergstrom | 625 Marquette Ave. | Mac N9311-110 Minneapolis, MN 55479 | 2002 2nd Lien Agent |
| Mark Somerstein, Don Demakis, Ben Schne Ropes & Gray LLP | | 1211 Avenue of the Americas | New York, NY 10036 | 2002 2nd Lien Lenders |
| J. Thomas Beckett & David P. Billings | Parsons Behle & Latimer | One Utah Center | 201 South Main Street, Salt Lake City, UT 84111 | 2002 Committee |
| Rew R. Goodenow | Karl Y. Olseon | Parsons Behle & Latimer | 50 West Liberty St., St Reno, NV 89501 | 2002 Committee |
| Virginia Cronan Lowe, Esq. | Trial Attorney, Tax Division | U.S. Department of Justice | 950 Pennsylvania Ave. Washington, D.C. 20530-0001 | 2002 IRS |
| Bart K. Larsen, Esq. | 6725 Via Austi Parkway, Ste. 200 | | Las Vegas, NV 89119 | 2002 RSN |
| Donald H. Williams, Esq. | Williams & Wiese | 612 South Tenth Street | Las Vegas, NV 89101 | 2002 RSN |
| Janet L. Chubb, Esq. | Michael E. Buckley, Esq. | JONES VARGAS | P.O. Box 281 Reno, NV 89504-0281 | 2002 RSN |
| Janiece S. Marshall, Esq. | Anderson, McPharlin & Conners L 777 North Rainbow Blvd., Ste. 145 | | Las Vegas, NV 89107 | 2002 RSN |
| Ms. Janine Guthrie | 1225 Monterey Street | | Redlands, CA 92373 | 2002 RSN |
| Philip S. Gerson, Esq. | Olson, Cannon, Gormley & Desrui 9950 West Cheyenne Avenue | | Las Vegas, NV 89129 | 2002 RSN |
| Randall D. Patterson | LEXINGTON INSURANCE | 100 Summer Street | Boston, MA 02110-2135 | 2002 RSN |
| Richard I. Dreitzer, Esq. | Bullivant Houser Bailey PC | 3980 Howard Hughes Pkwy., Ste. 550 | Las Vegas, NV 89169 | 2002 RSN |
| Robert R. Kinas, Esq. | Claire Y. Dossier & Nishat Baig | Snell & Wilmer, LLP | 3883 Howard Hughes I Las Vegas, NV 89169 | 2002 RSN |
| Brett A. Axelrod | Greenberg Traurig, LLP | 3773 Howard Hughes Parkway Suite 400 North | Las Vegas, NV 89169 | 2002 Sagebrush |
| Office of the United States Trustee | Attn: August B. Landis | 300 Las Vegas Blvd. South, Suite 4300 | Las Vegas, Nevada 89101 | 2002 UST |
| Advantage Financial Services, LLC | 108 Foxcroft Road | | West Hartford, CT 06119 | Assumed Contract |
| Alarmco | 2007 Las Vegas Bl So | Attn: Patti Beck | Las Vegas, NV 89104 | Assumed Contract |
| Allison S. Brodish | 304 Ladies Tee Court | | Las Vegas, NV 89148 | Assumed Contract |
| Alyssa L. & Roger Frank | 3609 Bison Street | | Scottsbluff, NE 69361 | Assumed Contract |
| Alyssa L. and Roger L. Frank | 1011 West 27th Street | | Scottsbluff, NE 69361 | Assumed Contract |
| American Family Life Assurance Company | 2990 Sunridge Heights Pkwy | Suite 140 | Henderson, NV 89052 | Assumed Contract |
| Arizona Corporation Commission | Utilities Division | 1200 West Washington | Phoenix, AZ 85007-2996 | Assumed Contract |
| Arizona Department of Environmental Quali Phoenix Main Office | | 1110 W. Washington St. | Phoenix, AZ 85007 | Assumed Contract |
| Arizona Department of Water Resources | 3550 N. Central Ave. | | Phoenix, AZ 85012 | Assumed Contract |
| BNA | P.O. Box 17009 | | Baltimore, MD 21297-1009 | Assumed Contract |
| Brink's U.S., a division of Brink's Incorpora 3200 E. Charleston Blvd. | | | Las Vegas, NV 89104 | Assumed Contract |
| Bruno Van Dierendonck | 580 Via Colmo | | Henderson, NV 89011 | Assumed Contract |
| Builder 1440, Inc. | 2000 W. 41st Street | | Baltimore, MD 21211 | Assumed Contract |
| Builder MT | Attn: Jennie Powers, Controller 200 Union Boulevard | Suite 500 | Lakewood, CO 80228 | Assumed Contract |
| Ceridian | 3201 34th Street South | | St. Petersburg, FL 33711 | Assumed Contract |
| Christopher & Li Yun Zhang | 126 Cooks Creek Court | | Las Vegas, NV 89148 | Assumed Contract |
| Christopher S. Rogers | 94 Myrtle Springs Court | | Las Vegas, NV 89148 | Assumed Contract |
| Chun Hong Wang | 385 Dog Leg Drive | | Las Vegas, NV 89148 | Assumed Contract |
| Chun Hong Wang | 381 Dog Leg Drive | | Las Vegas, NV 89148 | Assumed Contract |
| Chun Hong Wang | 377 Dog Leg Drive | | Las Vegas, NV 89148 | Assumed Contract |
| City of Henderson | 240 Water Street | P.O. Box 95050 | Henderson, NV 89009-5050 | Assumed Contract |
| City of Henderson Dept of Utility Services | 240 Water Street | P.O. Box 95050 | Henderson, NV 89009-5050 | Assumed Contract |
| Clark County Nevada Development Services 500 S. Grand Central Pkwy 1st Flc Box 551799 | | | Las Vegas, NV 89155-1799 | Assumed Contract |
| County of Clark | 500 S. Grand Central Pkwy | | Las Vegas, NV 89155 | Assumed Contract |
| County of Mohave Development Services | Attn: Nicholas S. Hont, PE | 3675 E. Andy Devine Ave | Kingman, AZ 86401 | Assumed Contract |
| Cybergolf | 110 W. Dayton, Suite 103 | | Edmonds, WA 98020 | Assumed Contract |

| | | | | | |
|---|---|---|---|---|---|
| Villas Community Association | c/o KGDO Holding Company dba Terr | 2655 S Rainbow Blvd Suite 200 | | Las Vegas, NV 89146 | litigation |
| Violeta Cortez | 254 Sea Rim Ave | | | Las Vegas, NV 89148 | litigation |
| Virgilio Berto | 269 Lakewood Garden Dr | | | Las Vegas, NV 89148 | litigation |
| Walid Yousif | 312 Turtle Peak Ave | | | Las Vegas, NV 89148 | litigation |
| West 57th Homeowners Association | c/o John Rhodes | 133 Rhodes Ranch Parkway | | Las Vegas, NV 89148 | litigation |
| X IT Homeowners Association | c/o Tom Robinson | 133 Rhodes Ranch Parkway | | Las Vegas, NV 89148 | litigation |
| Xanadu SJ&C Family Trust | Rice Silbey Reuther Sullivan LLP | 3960 Howard Hughes Parkway Suite 700 | | Las Vegas, NV 89169 | litigation |
| Yvette Dang | 351 Turtle Peak Ave | | | Las Vegas, NV 89148 | litigation |
| Yvonne Skrzeczyna | 303 Sea Rim Ave | | | Las Vegas, NV 89148 | litigation |
| Cooksey, Toolen, Gage, Duffy & Woog | 3930 Howard Hughes Parkway Suite 200 | | | Las Vegas, NV 89169 | OCP |
| Craig D. Guenther, P.C. | 215 East Warm Springs Road | | | Las Vegas, NV 89119 | OCP |
| La Jolla Pacific of Nevada, Ltd. | 9571 Irvine Center Drive | | | Irvine, CA 92618 | OCP |
| Lipson, Neilson, Cole, Seltzer, Garin P.C. | 9580 West Sahara Avenue, Suite 120 | | | Las Vegas, NV 89117 | OCP |
| Reeves, Evans, McBride & Zhang, LLP | 2285 Renaissance Dr | | | Las Vegas, NV 89119 | OCP |
| Shimon & Smith, P.C. | 4175 South Riley Street | Suite 102 | | Las Vegas, NV 89147 | OCP |
| AA Equipment | 1830 W. Mission Road | | | Escondido, CA 92029 | scheduled |
| ABC Locksmith Corp. | 3981 E. Sunset Road | #E | | Las Vegas,  NV  89120 | scheduled |
| Accountants, Inc. | P.O. Box 60000 | | | San Francisco,  CA  94160 | scheduled |
| AFLAC | 1932 Wynnton Road | | | Columbus, GA  31999 | scheduled |
| Alan Rensberger Trucking | 1369 Bacobi | | | Golden Valley, AZ  86413 | scheduled |
| All American Carpet Care | 2756 North Green Valley Pkwy | | | Henderson,  NV  89014 | scheduled |
| Allied Forces | PO Box 1205 | | | Chandler, AZ  85244-1205 | scheduled |
| American Asphalt & Grading Co. | 3624 Goldfield St. | | | N. Las Vegas,  NV  89032 | scheduled |
| Andrade's Cleaning Co. | 798 A Street | | | Las Vegas, NV  89106 | scheduled |
| APCO EQUIPMENT | 3432 North 5th St | | | N. Las Vegas, NV  89032 | scheduled |
| Arizona Corporation Commission | 1300 W. Washington | | | Phoenix, AZ  85007-2929 | scheduled |
| Arizona Department of Transportation | 1651 W. Jackson, RM 121F | | | Phoenix, AZ  85007 | scheduled |
| Ashworth | FILE 51141 | | | Los Angeles, CA 90074-1141 | scheduled |
| Aspen Concrete Inc. | 4177  E. Huntington Dr. | | | Flagstaff, AZ  86004 | scheduled |
| B & F Construction Inc. | 2735 Simmons St.  #100 | | | N Las Vegas,  NV  89032 | scheduled |
| B.D. Trim | 6270 Kimberly Ave. Suite B | | | Las Vegas,  NV  89122-7655 | scheduled |
| Bair's Carpet Valley - C | 7465 West Sunset Road | Suite 1200 | | Las Vegas,  NV  89113 | scheduled |
| Bob' Barricades | P.O. Box 863611 | | | Orlando, FL  32886-3611 | scheduled |
| Bonanza Beverage | File No. 6333 S. Ensworth St. | | | Las Vegas, NV 89119 | scheduled |
| Bowman & Brook, LLP | 2901 N Central Ave #1600 | | | Phoenix, AZ  85012 | scheduled |
| Bravo Underground, Inc. | 1183 Center Point Drive | | | Henderson,  NV  89074 | scheduled |
| Brinks Incorporated | File No. 52005 | | | Los Angeles, CA  90074-2005 | scheduled |
| Caterpillar Financial Service | P.O. Box 100647 | | | Pasadena, CA  91189-0647 | scheduled |
| Caterpillar Financial Services Corp. | 2120 W End Ave. | | | Nashville, TN 37203 | scheduled |
| Chance McGuire | 701 Capri Drive #9C | | | Boulder City NV 89005-0000 | scheduled |
| Charles N. Shapiro | 2301 Redwood Street #1802 | | | Las Vegas NV 89146-0000 | scheduled |
| Citicapital (SM) | P.O Box 6229 | | | Carol Stream, IL  60197-6229 | scheduled |
| City of Flagstaff | P.O. Box 22487 | | | Flagstaff, AZ  86002-2487 | scheduled |
| City of Henderson Utilities | P.O. Box 95011 | | | Henderson, NV  89009-5011 | scheduled |
| City of Kingman | 310 North 4th Street | | | Kingman, AZ  86401-5817 | scheduled |
| Clark Co Bldg Dept | PO Box 553530 | | | Las Vegas, NV  89115-3530 | scheduled |
| Clark County Recorders | PO Box 551510  2nd Floor | | | Las Vegas,  Nv  89155-1510 | scheduled |
| Club Forms | 100-C Bishop Street | | | Winston-Salem, NC  27104 | scheduled |
| Color Gamut Digital Imaging | 1889 E. Maule Ave Unit J | | | Las Vegas,  NV  89119 | scheduled |
| Comstock So. Wine & Spirits | P.O. Box 19299 | | | Las Vegas, NV  89132-1227 | scheduled |

In re Rhodes Companies, LLC - Service List

| | | | | | | |
|---|---|---|---|---|---|---|
| Frontier Insurance Company | Scheer's West | 2213 N. Green Valley Pkwy | Suite 101 | Henderson, NV 89014 | C | Guarantor on Bond |
| City of Henderson | 240 Water Street | Henderson, NV 89009 | | | CU | Bond |
| Frontier Insurance Company | Scheer's West | 2213 N. Green Valley Pkwy | Suite 101 | Henderson, NV 89014 | CU | Bond |
| Lexon Insurance Company | Bond Safeguard Insurance Company | 1919 S. Highland Dr. Bldg. A | Suite 300 | Lombard, IL 60148 | CU | Bond |
| Lexon Insurance Company | Bond Safeguard Insurance Company | 1919 S. Highland Dr. Bldg. A | Suite 300 | Lombard, IL 60148 | CU | bond |
| Lexon Insurance Company | Bond Safeguard Insurance Company | 1919 S. Highland Dr. Bldg. A | Suite 300 | Lombard, IL 60148 | CU | Bond |
| Lexon Insurance Company | Bond Safeguard Insurance Company | 1919 S. Highland Dr. Bldg. A | Suite 300 | Lombard, IL 60148 | CU | Bond |
| Lexon Insurance Company | Bond Safeguard Insurance Company | 1919 S. Highland Dr. Bldg. A | Suite 300 | Lombard, IL 60148 | CU | Bond |
| Lexon Insurance Company | Bond Safeguard Insurance Company | 1919 S. Highland Dr. Bldg. A | Suite 300 | Lombard, IL 60148 | CU | Bond |
| Zurich American Insurance Company | 1400 American Lane | Tower 2, Floor 3 | | Schaumburg, IL 60196 | CU | bond |
| Zurich American Insurance Company | 1400 American Lane | Tower 2, Floor 3 | | Schaumburg, IL 60196 | CU | Bond |
| Zurich American Insurance Company | 1400 American Lane | Tower 2, Floor 3 | | Schaumburg, IL 60196 | CU | Bond |
| Arizona State Registrar of Contractors | 3838 North Central Ave. | Suite 400 | | Phoenix, AZ 85012 | CU | bond beneficiary |
| City of Flagstaff | 3838 North Central Ave. | Suite 400 | | Phoenix, AZ 85012 | CU | bond beneficiary |
| City of Henderson | 240 Water Street | Henderson, NV 89009 | | | CU | Bond Beneficiary |
| City of Henderson | 240 Water Street | Henderson, NV 89009 | | | CU | Bond Beneficiary |
| Clark County Development Services | 500 S. Grand Central Parkway | Las Vegas, NV 89155 | | | CU | Bond Beneficiary |
| Clark County Development Services | 500 S. Grand Central Parkway | Las Vegas, NV 89155 | | | CU | Bond Beneficiary |
| Mohave County | 700 W. Beale Street | Kingman, AZ 86402 | | | CU | bond beneficiary |
| Nevada Power Company | PO Box 30086 | Reno, NV 89520-3086 | | | CU | Bond Beneficiary |
| State of Nevada | 555 E. Washington Ave. | Suite 4900 | Las Vegas, NV 89101 | | CU | Bond Beneficiary |
| State of Nevada | 555 E. Washington Ave. | Suite 4900 | Las Vegas, NV 89101 | | CU | Bond Beneficiary |
| Mohave County | 700 W. Beale Street | Kingman AZ 86402-0000 | | | CU | Bond Benficiary |
| Lexon Insurance Company | Bond Safeguard Insurance Company | 1919 S. Highland Dr. Bldg. A | Suite 300 | Lombard, IL 60148 | CU | Guarantor on Bond |
| Frontier Insurance Company | Scheer's West | 2213 N. Green Valley Pkwy | Suite 101 | Henderson, NV 89014 | CU | Guarantor on Bond |
| NEC Financial Services, Inc. | 300 W Frank Burr Blvd. | Teaneck, NJ 07666 | | | CU | Phone lease |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |
| The Credit Suisse International | One Cabot Square | London E14 4QJ | | | CU | |

**CERTIFICATE OF SERVICE**

1.  On November 14, 2013, I served the following document(s):

   **MOTION OF REORGANIZED DEBTORS FOR ENFORCEMENT OF PLAN INJUNCTION UNDER THE FIRST LIEN STEERING COMMITTEE'S THIRD AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE RHODES COMPANIES LLC, ET AL. AGAINST CITY OF HENDERSON; DECLARATIONS IN SUPPORT THEREOF**

2.  I served the above-named document(s) by the following means to the persons as listed below:
   *(check all that apply)*

   ■    a.    **United States mail, postage fully prepaid**
             *(List persons and addresses.  Attach additional paper if necessary)*

             Robert Herr
             Assistant Director
             City of Henderson Public Works
             240 S. Water Street
             Henderson, NV 89015

             Brandon Kembel
             Assistant City Attorney
             City of Henderson
             240 S. Water Street
             Henderson, NV 89015

3.  On **November 14, 2013** I served the above-named document(s) by the following means to the persons as listed below:
   *(check all that apply)*

   ■    a.    **ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed on (date): November 14, 2013

Sophia L. Lee                                      /s/Sophia L. Lee
(Name of Declarant)                              (Signature of Declarant)

09-14814-lbr Notice will be electronically mailed to:

KEVIN N. ANDERSON on behalf of Creditor JAMES RHODES
kanderson@fabianlaw.com, sburdash@fabianlaw.com

BRETT A. AXELROD on behalf of Creditor SAGEBRUSH ENTERPRISES, INC.
baxelrod@foxrothschild.com, pchlum@foxrothschild.com;ldupree@foxrothschild.com

BRETT A. AXELROD on behalf of Creditor JAMES RHODES
baxelrod@foxrothschild.com, pchlum@foxrothschild.com;ldupree@foxrothschild.com

LORI BROWN on behalf of Creditor Las Vegas Supply, Inc.
minute@legalcounselors.com

PHILIP R. BYRNES on behalf of Creditor CITY OF LAS VEGAS
PBYRNES@LASVEGASNEVADA.GOV,
CKELLY@LASVEGASNEVADA.GOV;KHANSEN@LASVEGASNEVADA.GOV;BCOMELLA@LASVEGASNEVADA.GOV;JANDREWS@LASVEGASNEVADA.GOV

SHIRLEY S. CHO on behalf of Debtor THE RHODES COMPANIES, LLC
scho@pszjlaw.com

JANET L. CHUBB on behalf of Creditor COMMERCE ASSOCIATES, LLC
bsalinas@armstrongteasdale.com

DAVID A. COLVIN on behalf of Creditor DANA KEPNER COMPANIES, LLC
dcolvin@maclaw.com, mwalters@maclaw.com;tszostek@maclaw.com

NATALIE M. COX on behalf of Interested Party REORGANIZED DEBTORS
ncox@klnevada.com, bankruptcy@klnevada.com;kdunn@klnevada.com

NATALIE M. COX on behalf of Plaintiff EUGENE I. DAVIS
ncox@klnevada.com, bankruptcy@klnevada.com;kdunn@klnevada.com

THOMAS E. CROWE on behalf of Creditor SHANE SMITH
tcrowe@thomascrowelaw.com

THOMAS E. CROWE on behalf of Creditor VIRGINIA SPRINGALL-SMITH
tcrowe@thomascrowelaw.com

DAMON K. DIAS on behalf of Creditor X-It at 215, LLC
ddias@diaslawgroup.com,
bankruptcy@diaslawgroup.com;jisselas@diaslawgroup.com;elizabethd@diaslawgroup.com

TRACY A. DIFILLIPPO on behalf of Creditor COMMERCE ASSOCIATES, LLC
tdifillippo@armstrongteasdale.com, jelia@armstrongteasdale.com

CONOR P. FLYNN on behalf of Creditor COMMERCE ASSOCIATES, LLC
cflynn@armstrongteasdale.com

GORDON R. GOOLSBY on behalf of Creditor COMMERCE ASSOCIATES, LLC
ggoolsby@armstrongteasdale.com, bsalinas@armstrongteasdale.com

JAMES D. GREENE on behalf of Plaintiff EUGENE I. DAVIS
jgreene@greeneinfusolaw.com,
fritchie@greeneinfusolaw.com;kfarney@greeneinfusolaw.com;swalkenshaw@greeneinfusolaw.com;cwalton@greeneinfusolaw.com

KIRBY C. GRUCHOW, JR. on behalf of Creditor NEVADA POWER COMPANY
hkelley@leachjohnson.com

DAVID R HAGUE on behalf of Creditor JAMES RHODES
dhague@fabianlaw.com, dromero@fabianlaw.com

CAROL L. HARRIS on behalf of 3rd Party Plaintiff JOHN C RHODES, TRUSTEE OF THE
JAMES M. RHODES DYNASTY TRUST I
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of 3rd Party Plaintiff JOHN C. RHODES, TRUSTEE OF THE
JAMES M RHODES DYNASTY TRUST II
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of 3rd Party Plaintiff RHODES RANCH LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of 3rd Party Plaintiff SAGEBRUSH ENTERPRISES, INC.
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of 3rd Party Plaintiff JAMES M RHODES
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Creditor In re Kitec Fitting Litigation Class Plaintiffs
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant FARM HUALAPAI LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant GYPSUM RESOURCES, LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant HARMONY 2 LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant HARMONY HOMES INC.
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant HAYDEN SPRINGS PARTNERS LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant JOHN C RHODES, TRUSTEE OF THE JAMES M. RHODES DYNASTY TRUST I
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant JOHN C. RHODES, TRUSTEE OF THE JAMES M RHODES DYNASTY TRUST II
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant John C. Rhodes, John C. Rhodes, Trustee of the Dynasty Trust 1, John C. Rhodes, Trustee of the Dynasty Trust II, Gypsum Resources, LLC and Truckee Springs Holdings, Inc.
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant NORTH 5TH LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant RHODES RANCH LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant SAGEBRUSH ENTERPRISES, INC.
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant TROPICAL SANDS LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant TRUCKEE SPRINGS HOLDINGS, INC.
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant JAMES M RHODES
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant JOHN C RHODES
c.harris@kempjones.com, ade@kempjones.com

WILLIAM H HEATON on behalf of Defendant John C. Rhodes, John C. Rhodes, Trustee of the Dynasty Trust 1, John C. Rhodes, Trustee of the Dynasty Trust II, Gypsum Resources, LLC and Truckee Springs Holdings, Inc.
will@nwhltd.com, Solana@nwhltd.com

WILLIAM H HEATON on behalf of Defendant JOHN C RHODES
will@nwhltd.com, Solana@nwhltd.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CREDIT SUISSE GROUP AG
rholley@nevadafirm.com,
sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD OF

NEVADA, INC.
rholley@nevadafirm.com,
sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD OF TEXAS, INC
rholley@nevadafirm.com,
sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD OF TEXAS, INC.
rholley@nevadafirm.com,
sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD, INC
rholley@nevadafirm.com,
sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD, INC.
rholley@nevadafirm.com,
sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CUSHMAN & WAKEFILED OF NEVADA, INC
rholley@nevadafirm.com,
sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RODNEY M. JEAN on behalf of Creditor Credit Suisse, Cayman Islands Branch
RJEAN@LIONELSAWYER.COM, bklsclv@lionelsawyer.com

ROBERT R. KINAS on behalf of Creditor CATERPILLAR FINANCIAL SERVICES CORPORATION
rkinas@swlaw.com,
jmath@swlaw.com;mfull@swlaw.com;bgriffith@swlaw.com;nunzueta@swlaw.com;docket_las@swlaw.com;cgianelloni@swlaw.com;nkanute@swlaw.com;kmiltimore@swlaw.com

KEITH S. KNOCHEL on behalf of Creditor VALERIE A. SILVAS
law@lawyersinarizona.com, bank@lawyersinarizona.com

BART K. LARSEN on behalf of Creditor Reef Colonial, LLC
blarsen@klnevada.com,
jierien@klnevada.com;bankruptcy@klnevada.com;mbarnes@klnevada.com

ZACHARIAH LARSON on behalf of Debtor APACHE FRAMING, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor BATCAVE, LP
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor BRAVO, INC.
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor C & J HOLDINGS, INC.
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor CHALKLINE, LP
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor ELKHORN INVESTMENTS, INC.
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor ELKHORN PARTNERS
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor GERONIMO PLUMBING, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor GLYNDA, LP
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor GUNG-HO CONCRETE, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor HERITAGE LAND COMPANY, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor JACKKNIFE, LP
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor JARUPA, LLC

1  carey@lzlawnv.com,
   susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

2
3  ZACHARIAH LARSON on behalf of Debtor OVERFLOW, LP
   carey@lzlawnv.com,
   susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

4
5  ZACHARIAH LARSON on behalf of Debtor PARCEL 20, LLC
   carey@lzlawnv.com,
6  susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

7  ZACHARIAH LARSON on behalf of Debtor PINNACLE GRADING, LLC
   carey@lzlawnv.com,
8  susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

9  ZACHARIAH LARSON on behalf of Debtor RHODES ARIZONA PROPERTIES, LLC
   carey@lzlawnv.com,
10 susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

11
   ZACHARIAH LARSON on behalf of Debtor RHODES DESIGN AND DEVELOPMENT
12 CORPORATION
   carey@lzlawnv.com,
13 susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

14
   ZACHARIAH LARSON on behalf of Debtor RHODES HOMES ARIZONA, LLC
15 carey@lzlawnv.com,
   susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com
16
   ZACHARIAH LARSON on behalf of Debtor RHODES RANCH GENERAL PARTNERSHIP
17 carey@lzlawnv.com,
18 susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

19 ZACHARIAH LARSON on behalf of Debtor RHODES RANCH GOLF AND COUNTRY
   CLUB
20 carey@lzlawnv.com,
21 susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

22 ZACHARIAH LARSON on behalf of Debtor RHODES REALTY, INC.
   carey@lzlawnv.com,
23 susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

24 ZACHARIAH LARSON on behalf of Debtor SIX FEATHERS HOLDINGS, LLC
   carey@lzlawnv.com,
25 susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

26
   ZACHARIAH LARSON on behalf of Debtor THE RHODES COMPANIES, LLC
27 carey@lzlawnv.com,
   susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com
28

ZACHARIAH LARSON on behalf of Debtor TICK, LP
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor TRIBES HOLDINGS, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor TUSCANY ACQUISITIONS II, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor TUSCANY ACQUISITIONS III, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor TUSCANY ACQUISITIONS IV, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor TUSCANY ACQUISITIONS, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor TUSCANY GOLF COUNTRY CLUB, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor WALLBOARD, LP
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Interested Party REORGANIZED DEBTORS
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

NILE LEATHAM on behalf of Creditor STEERING COMMITTEE OF SENIOR SECURED LENDERS
nleatham@klnevada.com, ckishi@klnevada.com;bankruptcy@klnevada.com

NILE LEATHAM on behalf of Interested Party REORGANIZED DEBTOR
nleatham@klnevada.com, ckishi@klnevada.com;bankruptcy@klnevada.com

NILE LEATHAM on behalf of Interested Party REORGANIZED DEBTORS
nleatham@klnevada.com, ckishi@klnevada.com;bankruptcy@klnevada.com

NILE LEATHAM on behalf of Plaintiff EUGENE I. DAVIS
nleatham@klnevada.com, ckishi@klnevada.com;bankruptcy@klnevada.com

ANNE M. LORADITCH on behalf of Creditor JAMES RHODES
aloraditch@bachlawfirm.com,
jbach@bachlawfirm.com,mmascarello@bachlawfirm.com,sandra.herbstreit@bachlawfirm.com,
awatkins@bachlawfirm.com

VIRGINIA CRONAN LOWE on behalf of Creditor UNITED STATES OF AMERICA -
INTERNAL REVENUE SERVICE
virginiacronan.lowe@usdoj.gov, Western.Taxcivil@usdoj.gov

ERIC D. MADDEN on behalf of Other Prof. THE LITIGATION TRUST OF THE RHODES
COMPANIES, LLC
emadden@diamondmccarthy.com, cburrow@diamondmccarthy.com

ERIC D. MADDEN on behalf of Plaintiff THE LITIGATION TRUST OF THE RHODES
COMPANIES LLC, ET AL.
emadden@diamondmccarthy.com, cburrow@diamondmccarthy.com

EDWARD M. MCDONALD on behalf of U.S. Trustee U.S. TRUSTEE - LV - 11, 11
edward.m.mcdonald@usdoj.gov

JEANETTE E. MCPHERSON on behalf of Defendant KB HOME NEVADA, INC.
bkfilings@s-mlaw.com

SUSAN L. MYERS on behalf of Creditor Credit Suisse, Cayman Islands Branch
smyers@lacsn.org, emontes@lacsn.org;bklsclv@lionelsawyer.com

W. OWEN NITZ on behalf of Defendant John C. Rhodes, John C. Rhodes, Trustee of the
Dynasty Trust 1, John C. Rhodes, Trustee of the Dynasty Trust II, Gypsum Resources, LLC and
Truckee Springs Holdings, Inc.
owen@nwhltd.com, jim@nwhltd.com

JEFFREY D. OLSTER on behalf of Creditor HARSCH INVESTMENT PROPERTIES -
NEVADA, LLC
sallade@lbbslaw.com

OMNI MANAGEMENT GROUP, LLC (bo)
bosborne@omnimgt.com, sewing@omnimgt.com

ERIC RANSAVAGE on behalf of Creditor LESLIE BLASCO
eransavage@ssllplaw.com, agutierrez@ssllplaw.com

JACOB J ROBERTS on behalf of Other Prof. THE LITIGATION TRUST OF THE RHODES
COMPANIES, LLC
jroberts@diamondmccarthy.com, cburrow@diamondmccarthy.com

JACOB J ROBERTS on behalf of Plaintiff THE LITIGATION TRUST OF THE RHODES
COMPANIES LLC, ET AL.
jroberts@diamondmccarthy.com, cburrow@diamondmccarthy.com

1

2

NATHANAEL R. RULIS on behalf of 3rd Party Plaintiff JOHN C RHODES, TRUSTEE OF THE JAMES M. RHODES DYNASTY TRUST I
n.rulis@kempjones.com, p.montgomery@kempjones.com

3

4

NATHANAEL R. RULIS on behalf of 3rd Party Plaintiff JOHN C. RHODES, TRUSTEE OF THE JAMES M RHODES DYNASTY TRUST II
n.rulis@kempjones.com, p.montgomery@kempjones.com

5

6

NATHANAEL R. RULIS on behalf of 3rd Party Plaintiff RHODES RANCH LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

7

8

NATHANAEL R. RULIS on behalf of 3rd Party Plaintiff SAGEBRUSH ENTERPRISES, INC.
n.rulis@kempjones.com, p.montgomery@kempjones.com

9

NATHANAEL R. RULIS on behalf of 3rd Party Plaintiff JAMES M RHODES
n.rulis@kempjones.com, p.montgomery@kempjones.com

10

11

NATHANAEL R. RULIS on behalf of Defendant FARM HUALAPAI LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

12

13

NATHANAEL R. RULIS on behalf of Defendant GYPSUM RESOURCES, LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

14

15

NATHANAEL R. RULIS on behalf of Defendant HARMONY 2 LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

16

NATHANAEL R. RULIS on behalf of Defendant HARMONY HOMES INC.
n.rulis@kempjones.com, p.montgomery@kempjones.com

17

18

NATHANAEL R. RULIS on behalf of Defendant HAYDEN SPRINGS PARTNERS LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

19

20

NATHANAEL R. RULIS on behalf of Defendant JOHN C RHODES, TRUSTEE OF THE JAMES M. RHODES DYNASTY TRUST I
n.rulis@kempjones.com, p.montgomery@kempjones.com

21

22

NATHANAEL R. RULIS on behalf of Defendant JOHN C. RHODES, TRUSTEE OF THE JAMES M RHODES DYNASTY TRUST II
n.rulis@kempjones.com, p.montgomery@kempjones.com

23

24

25

NATHANAEL R. RULIS on behalf of Defendant John C. Rhodes, John C. Rhodes, Trustee of the Dynasty Trust 1, John C. Rhodes, Trustee of the Dynasty Trust II, Gypsum Resources, LLC and Truckee Springs Holdings, Inc.
n.rulis@kempjones.com, p.montgomery@kempjones.com

26

27

NATHANAEL R. RULIS on behalf of Defendant NORTH 5TH LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

28

NATHANAEL R. RULIS on behalf of Defendant RHODES RANCH LLC

n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant SAGEBRUSH ENTERPRISES, INC.
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant TROPICAL SANDS LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant TRUCKEE SPRINGS HOLDINGS, INC.
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant JAMES M RHODES
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant JOHN C RHODES
n.rulis@kempjones.com, p.montgomery@kempjones.com

MARVIN C. RUTH on behalf of Creditor CEMEX CONSTRUCTION MATERIALS SOUTH, LLC
MRuth@LRLaw.com

BRIAN D. SHAPIRO on behalf of Other Prof. THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC
bshapiro@brianshapirolaw.com,
ecf@brianshapirolaw.com;brianshapiroesq@yahoo.com;bshapiro@brianshapirolaw.com;candice@brianshapirolaw.com;carolyn@brianshapirolaw.com

BRIAN D. SHAPIRO on behalf of Plaintiff THE LITIGATION TRUST OF THE RHODES COMPANIES LLC, ET AL.
bshapiro@brianshapirolaw.com,
ecf@brianshapirolaw.com;brianshapiroesq@yahoo.com;bshapiro@brianshapirolaw.com;candice@brianshapirolaw.com;carolyn@brianshapirolaw.com

SHLOMO S. SHERMAN on behalf of Interested Party REORGANIZED DEBTORS
ssherman@klnevada.com, bankruptcy@klnevada.com;bbroussard@klnevada.com

ROSA SOLIS-RAINEY on behalf of Defendant DELOITTE & TOUCHE LLP
rsr@morrislawgroup.com, fmi@morrislawgroup.com

ROSA SOLIS-RAINEY on behalf of Defendant DELOITTE TAX LLP
rsr@morrislawgroup.com, fmi@morrislawgroup.com

MARK R. SOMERSTEIN on behalf of Creditor WELLS FARGO BANK, N.A.
mark.somerstein@ropesgray.com

ELIZABETH E. STEPHENS on behalf of Attorney SULLIVAN HILL LEWIN REZ & ENGEL
stephens@sullivanhill.com,
roberts@sullivanhill.com;hill@sullivanhill.com;millerick@sullivanhill.com;dabbieri@sullivanh

ill.com;bkstaff@sullivanhill.com;manning@sullivanhill.com

ELIZABETH E. STEPHENS on behalf of Defendant WP South Builders Nevada, LLC
stephens@sullivanhill.com,
roberts@sullivanhill.com;hill@sullivanhill.com;millerick@sullivanhill.com;dabbieri@sullivanh
ill.com;bkstaff@sullivanhill.com;manning@sullivanhill.com

JEFFREY R. SYLVESTER on behalf of 3rd Pty Defendant CREDIT SUISSE (USA), INC
jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com

JEFFREY R. SYLVESTER on behalf of 3rd Pty Defendant CREDIT SUISSE AG, CAYMAN
BRANCH
jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com

JEFFREY R. SYLVESTER on behalf of 3rd Pty Defendant CREDIT SUISSE AG, NEW
YORK BRANCH
jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com

JEFFREY R. SYLVESTER on behalf of 3rd Pty Defendant CREDIT SUISSE HOLDINGS
(USA), INC
jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com

JEFFREY R. SYLVESTER on behalf of 3rd Pty Defendant CREDIT SUISSE SECURITIES
(USA), LLC
jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com

JEFFREY R. SYLVESTER on behalf of Creditor CREDIT SUISSE, CAYMAN ISLANDS
BRANCH
jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com

TIMOTHY P. THOMAS on behalf of Creditor STEERING COMMITTEE OF SENIOR
SECURED LENDERS
, veralynn@tthomaslaw.com

U.S. TRUSTEE - LV - 11, 11
USTPRegion17.lv.ecf@usdoj.gov

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE (USA), INC
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE AG, A SWISS
BANK
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE AG, CAYMAN
BRANCH
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE AG, NEW

YORK BRANCH
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

1

2

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE GROUP AG
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

3

4

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE HOLDINGS
(USA), INC
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

5

6

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE SECURITIES
(USA), LLC
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

7

8

DAVID ALAN WALTON on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD OF
NEVADA, INC.
dwalton@bmpllp.com, gromero@bmpllp.com

9

10

DAVID ALAN WALTON on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD OF
TEXAS, INC
dwalton@bmpllp.com, gromero@bmpllp.com

11

12

DAVID ALAN WALTON on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD, INC
dwalton@bmpllp.com, gromero@bmpllp.com

13

14

DAVID ALAN WALTON on behalf of 3rd Pty Defendant CUSHMAN & WAKEFILED OF
NEVADA, INC
dwalton@bmpllp.com, gromero@bmpllp.com

15

16

DONALD H. WILLIAMS on behalf of Creditor Westar Kitchen & Bath, LLC
DonaldHWilliamsLaw@gmail.com, taylorsellers@gmail.com

17

18

GREGORY F WILSON on behalf of Witness SANTORO, DRIGGS, WALCH, KEARNEY,
HOLLEY & THOMPSON
gfw@gfwilsonlaw.com

19

20

MICHAEL B WIXOM on behalf of Interested Party MUTUAL OF OMAHA BANK
mbw@slwlaw.com, ef@slwlaw.com

21

22

MICHAEL YODER on behalf of Other Prof. THE LITIGATION TRUST OF THE RHODES
COMPANIES, LLC
myoder@diamondmccarthy.com, cburrow@diamondmccarthy.com

23

24

MICHAEL YODER on behalf of Plaintiff THE LITIGATION TRUST OF THE RHODES
COMPANIES LLC, ET AL.
myoder@diamondmccarthy.com, cburrow@diamondmccarthy.com

25

26

27

28