James I. Stang, Esq. (CA Bar No. 94435)                    E-File: December 31, 2013
Shirley S. Cho, Esq. (CA Bar No. 192616)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jstang@pszjlaw.com
         scho@pszjlaw.com

Zachariah Larson, Esq. (NV Bar No. 7787)
LARSON & ZIRZOW LLC
810 S. Casino Center Blvd. Ste 101
Las Vegas, NV 89101
Telephone: 702/382-1170
Facsimile: 702/382-1169
Email: zlarson@lzlawnv.com

Attorneys for Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>THE RHODES COMPANIES, LLC, aka<br>"Rhodes Homes," et al.,[1]<br><br>Debtors.<br><br>Affects:<br>☒   All Debtors<br>☐   Affects the following Debtor(s) | Case No.: BK-S-09-14814-LBR<br>(Jointly Administered)<br><br>Chapter 11<br><br>Hearing Date: January 8, 2014<br>Hearing Time: 2:30 p.m.<br>Courtroom 1 |

---

[1] The Debtors in these cases, along with their case numbers are: Heritage Land Company, LLC (Case No. 09-14778); The Rhodes Companies, LLC (Case No. 09-14814); Tribes Holdings, LLC (Case No. 09-14817); Apache Framing, LLC (Case No. 09-14818); Geronimo Plumbing LLC (Case No. 09-14820); Gung-Ho Concrete LLC (Case No. 09-14822); Bravo, Inc. (Case No. 09-14825); Elkhorn Partners, A Nevada Limited Partnership (Case No. 09-14828); Six Feathers Holdings, LLC (Case No. 09-14833); Elkhorn Investments, Inc. (Case No. 09-14837); Jarupa, LLC (Case No. 09-14839); Rhodes Realty, Inc. (Case No. 09-14841); C & J Holdings, Inc. (Case No. 09-14843); Rhodes Ranch General Partnership (Case No. 09-14844); Rhodes Design and Development Corporation (Case No. 09-14846); Parcel 20, LLC (Case No. 09-14848); Tuscany Acquisitions IV, LLC (Case No. 09-14849); Tuscany Acquisitions III, LLC (Case No. 09-14850); Tuscany Acquisitions II, LLC (Case No. 09-14852); Tuscany Acquisitions, LLC (Case No. 09-14853); Rhodes Ranch Golf and Country Club, LLC (Case No. 09-14854); Overflow, LP (Case No. 09-14856); Wallboard, LP (Case No. 09-14858); Jackknife, LP (Case No. 09-14860); Batcave, LP (Case No. 09-14861); Chalkline, LP (Case No. 09-14862); Glynda, LP (Case No. 09-14865); Tick, LP (Case No. 09-14866); Rhodes Arizona Properties, LLC (Case No. 09-14868); Rhodes Homes Arizona, L.L.C. (Case No. 09-14882); Tuscany Golf Country Club, LLC (Case No. 09-14884); and Pinnacle Grading, LLC (Case No. 09-14887).

**REPLY TO OPPOSITION TO MOTION OF REORGANIZED DEBTORS FOR ENFORCEMENT OF PLAN INJUNCTION UNDER THE FIRST LIEN STEERING COMMITTEE'S THIRD AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE RHODES COMPANIES LLC, ET AL. AGAINST CITY OF HENDERSON**

The Reorganized Debtors hereby file this reply (the "Reply") to City of Henderson's ("Henderson") *Opposition to Motion of Reorganized Debtors for Enforcement of Plan Injunction Under the First Lien Steering Committee's Third Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for the Rhodes Companies LLC, et al.* [Docket No. 1800] (the "Opposition").  In support of the Reply, the Reorganized Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.      The facts at issue are not in dispute.  Under the 2004 Commerce Agreement between Commerce and Henderson, Commerce had two obligations:  (i) to construct Phase 3 of the C-1 Channel; and (ii) to pay Henderson $934,000.00 (the "Impact Fee"), which would support Phase 3 of the C-1 Channel.  Commerce completed construction of Phase 3 of the C-1 Channel, but failed to pay the Impact Fee to Henderson when it became due in November 2005.

2.      The Debtors acquired various parcels of land in the Tuscany development from Commerce beginning in 2006.  The Debtors and now Reorganized Debtors have been receiving approvals for subdivisions from Henderson, building homes, and selling homes in Tuscany since November 30, 2005 until they recently received notice from Henderson that their requested maps associated with Tuscany Parcel 15 would be held until payment of the Impact Fee (the "Henderson Payment Notice").  In the words of Henderson, "On October 4, 2013, [Henderson] advised Reorganized Debtors that final approval of the maps will be held until payment, or payment arrangement of the Fee associated with the Phase 3 construction of the drainage facilities has been made pursuant to the Commerce Agreement."  Opposition at p. 4.

3.      Despite the fact that the Debtors were not a party to the Commerce Agreement, filed an intervening chapter 11, and received a discharge and release of all pre-effective date claims, liens, and encumbrances under a confirmed plan of reorganization, Henderson seeks to hold the Reorganized Debtors accountable for the Impact Fee by arguing that such fee is an *in*

DOCS_LA:274040

*rem* interest that was not discharged by the bankruptcy or "rode through" bankruptcy. Henderson also argues that its actions are justified under the police powers exception to the *automatic stay* in the interests of public safety.

4.    Henderson's arguments fail because (i) the Impact Fee is not an in rem property interest that runs with the land; (ii) even if it is, the Debtors' Plan released and discharged not only in personam, but also in rem interests, including liens and encumbrances, against the Debtors' property; (iii) Henderson's attempt to extract payment of the Impact Fee through holding up approval of the Reorganized Debtors' amended subdivision maps is pecuniary in nature and precisely the conduct that the Bankruptcy Code and Plan injunction enjoins; and (iv) even if the Reorganized Debtors are incorrect on (i) through (iii), Henderson's only remedies under the Commerce Agreement upon a breach of the contract for failure to pay the Impact Fee is to sue for breach of contract and institute an arbitration action, not withhold approval of the Reorganized Debtors' maps.

5.    First, under well established Nevada law, the Impact Fee does not run with the land because at least three of the necessary elements fail:  (i) with respect to certain of the parcels, at the times of their purchase, Henderson had not recorded the Commerce Agreement, so the Debtors had no notice of it and it is ineffective against the Debtors; (ii) the Impact Fee does not touch and concern the land; and (ii) there was no privity of estate between the contract parties. *Wheeler v. Schad*, 7 Nev. 204, 208-09 (Nev. 1871).

6.    Second, even if the Commerce Agreement can be viewed as an *in rem* liability notwithstanding Nevada state law, the Debtors confirmed a reorganization plan and received the benefit of the discharge under section 1141 of the Bankruptcy Code.  The Plan contained express language releasing *in rem* liens and encumbrances against the Debtors' estate as well as an *in personam* discharge of liabilities.  Section 524(a)(2) of the Bankruptcy Code works in conjunction with section 1141 of the Bankruptcy Code and does not detract or take away from the expansive provision of a discharge under section 1141(d).

7.    Henderson's argument that the Commerce Agreement "rode through" the Debtors' bankruptcy is incorrect.  The Debtors scheduled Henderson as a contingent unsecured

creditor on Schedule F.  If Henderson did not agree with this classification, then Henderson was required to file a proof of claim pursuant to Rule 3003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 501 of the Bankruptcy Code.  Moreover, the Debtors did not have an obligation to schedule the Commerce Agreement on Schedule G as an executory contract because the Debtors were not a party to such contract.   The Debtors did have an obligation to notice potential creditors of the bar date and proposed confirmation of the Plan, and Henderson duly received notice of both, as well as the Effective Date of the Plan. Furthermore, the fact that the Debtors did not reject a contract to which they were not a party is of no import given that the Debtors could not have rejected such a contract under the law in any case and even if they were somehow deemed to stand in the shoes of Commerce, the Plan contained a "catchall" rejection provision of all contracts not expressly assumed.

8.    Third, the only obligation outstanding under the Commerce Agreement is the *payment* of the Impact Fee.  Unlike the automatic stay provision, there is no police powers exception to the federal bankruptcy discharge provisions under the Bankruptcy Code.  Even if there was, Henderson's stated objective of withholding approval of the Reorganized Debtors' amended subdivision maps until payment of the Impact Fee, defeats Henderson's police powers or public safety argument.  In addition, Henderson's actions of consistently approving the Debtors' development maps even after the Impact Fee became due and owing during the boom years of 2005 through 2008, but before the housing market downturn, undercuts Henderson's public safety argument.  Henderson cannot have it both ways.  It cannot claim public safety but look the other way during times of economic prosperity.  Upon the payment of the Impact Fee, presumably Henderson will cease and desist its conduct and approve the Reorganized Debtors' amended subdivision maps.  Thus, Henderson's actions are clearly an attempt to enforce an *in personam* liability of the Debtors.

9.    Finally, even if the Court finds that the Commerce Agreement runs with the land despite the fact that Nevada state law is to the contrary, that the Bankruptcy Code, Confirmation Order, and Plan were insufficient to discharge the Impact Fee, and that the withholding of amended subdivision maps to extract payment from the Reorganized Debtors is not pecuniary in

nature, Henderson provides no basis by which it may unilaterally withhold approval of the Reorganized Debtors' amended subdivision maps. On its face, the terms of the Commerce Agreement do not allow Henderson's actions against the Reorganized Debtors.

10.    For the foregoing reasons, the Reorganized Debtors respectfully request that the Court overrule the Opposition and enter an Order requiring that Henderson cease and desist its conduct of withholding approval of the Reorganized Debtors' amended subdivision maps and pursuing the Impact Fee against the Reorganized Debtors.

## REPLY

**A.    The Payment of the Impact Fee is Not an *In Rem* Interest That Runs With the Land.**

11.    Contrary to Henderson's argument, the Debtors were not "successors or assigns" of Commerce. Rather, the Debtors were asset purchasers of land from Commerce. In several instances, the Debtors purchased land from Commerce *prior* to Henderson recording the Commerce Agreement against such land on March 22, 2006. Such is the case with Tuscany Parcel 15 as is evidenced by the exhibit attached to the Murnane Affidavit in support of the Opposition. *See* Docket No. 1801 at pp. 14-17 (reflecting a purchase date of January 26, 2006 for Parcel 15). At the time the Debtors acquired Parcel 15 from Commerce, they had no knowledge that Commerce and Henderson had entered into the Commerce Agreement or that Commerce would encumber Tuscany some two months later. Parcel 15 is the subject of the Henderson Payment Notice. *See* Motion, Ex. 2 to Boettcher Decl. [Docket No. 1791 at p. 34]

12.    Under Nevada state law, in order for a covenant to run with the land, the following must apply: (i) the original parties to the agreement intended for the covenant to run; (ii) a subsequent owner must have had notice of the covenant at the time of purchase; (iii) the covenant must touch and concern the land; and (iv) there must be privity of estate. *See ECM, Inc. v. Placer Dome U.S., Inc.*, 147 F.App'x 668, 669 (9th Cir. 2005) (citing *Wheeler v. Schad*, 7 Nev. 204, 208-09 (Nev. 1871)).

13.    First, the Commerce Agreement fails to run with the land because the Debtors did not have notice of the covenant at the time they purchased Parcel 15. Henderson recorded the Commerce Agreement against Parcel 15 two months after the Debtors purchased Parcel 15.

5

*Schad*, 7 Nev. at 211 (burden may only be enforced against the "assignee of the covenantor *who takes the land with notice of the covenant*.") (emphasis in original).  For other parcels, it appears as though the Commerce Agreement was recorded prior to the date that the Debtors purchased such parcels, but nonetheless, the Commerce Agreement fails to run with the land for the reasons set forth below.

14.    Second, the Commerce Agreement fails to run with the remaining land because the Commerce Agreement does not touch or concern such land.  Pursuant to the Commerce Agreement, Commerce agreed to (i) make certain erosion control improvements to land *not owned by Commerce or Henderson* and (ii) pay a water drainage impact fee in the total amount of $934,000 to Henderson.  Section 2.4 of the Commerce Agreement states "[t]he Parties acknowledge that Phase 3 is located offsite from Tuscany and that Tuscany's construction obligations for Phase 3 are subject to obtaining the necessary rights of way for Phase 3. . . ."  In addition, Recital C of the Commerce Agreement states "Phase 3 construction will occur on property not owned by Commerce or the City."  Accordingly, by its express terms, the Commerce Agreement does not touch and concern the Purchased Land.  Rather, the Commerce Agreement is a mere contract for the improvement of certain land, which is not owned by Commerce or Henderson, and the payment of a related impact fee.

15.    Finally, the Commerce Agreement fails to run with the land because there is no privity of estate between the covenanting parties, Commerce and Henderson.  *Schad*, 7 Nev. at 209 (citing *Webb v. Russell*, 3 Term, 393, "it is not sufficient that a covenant is concerning the land, but in order to make it run with the land there must be a privity of estate between the covenanting parties.").  There is privity of estate between the covenanting parties if both parties have an interest in the land sought to be charged by the covenant.  For example, in *Schad*, in determining that the covenant to pay for a dam did not run with the land, the court recognized that covenanting parties' relation must be such "as would formerly have given rise to the relation of tenure."  *Id.*  ("the person in whose favor a covenant is made must have an interest in the land charged with it; for he can only get the covenant through, and as an incident to, the land to which it is attached.").  At the time Commerce and Henderson entered the Commerce Agreement, they

did not share any interest in the subject land and their relation was not one of tenure.   *Cf. City of Reno v. Matley*, 378 P.2d 256 (Nev. 1969) (city's covenant to construct and maintain an 80-foot street on *easement granted by property owners* was covenant running with land).  Furthermore, the Commerce Agreement expressly states that "Phase 3 construction will occur on property not owned by Commerce or the City."  Commerce Agrmt. at Recital C.  Like the "mere contract for the erection of a dam" in *Schad*, the Commerce Agreement was a mere contract for the construction of erosion controls and does not run with the land.  *Id.* 7 Nev. at 210.

**B.     The Debtors' Obligations under the Commerce Agreement – if any – were Discharged Under the Bankruptcy Code, the Confirmation Order, and the Plan.**

16.     Even if the Commerce Agreement was a covenant running with the land for argument's sake, such interest was discharged under the Bankruptcy Code, the Confirmation Order, and the Plan.  Under the terms of the Plan, which were approved by the Confirmation Order, upon the Effective Date of the Plan, all of the Debtors' assets were vested in the Reorganized Debtors "free and clear of all Liens, Claims, charges, or other encumbrances."  Plan at Article IV.D.

17.     The Plan also expressly provides for the release of all liens and pledges against any property of the Debtors on the Effective Date:

> L.     **Release of Liens**.  Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Upon the Effective Date, the Confirmation Order shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to release any mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates; and each of the foregoing persons and entities is hereby directed to accept for filing the Confirmation Order any and all of the documents and instruments necessary and appropriate to effectuate the discharge.

DOCS_LA:274040

Plan at Article VIII.L. (emphasis added).

18.    The Plan also provides the Debtors with a statutory discharge of any claim that could have been asserted prior to April 1, 2010 against the Debtors pursuant to section 1141(d) of the Bankruptcy Code, whether or not a proof of claim was filed on behalf of the creditor.  *See* Plan at Article VIII.A.  The Plan further imposes a permanent injunction on the prosecution of any claims or obligations against the Debtors that arose prior to April 1, 2010, regardless of whether or not the claimant asserted a claim against the Debtors.  *See* Plan at Article VIII.H.

19.    A chapter 11 discharge of a corporate debtor discharges the debtor from any debt that arose before the date of confirmation of the plan.  11 U.S.C. § 1141(d)(1)(A).  The discharge is thus pervasive and effective regardless of whether a proof of claim is filed, the claim is allowed, or the holder of the claim has accepted the plan.  8-1141 COLLIER ON BANKRUPTCY P. 1141.05.  In addition, the section 1141(d)(1) discharge invalidates any lien securing a creditor's claim unless the lien is preserved under the terms of the plan.  *Id.* at 1141.06.  This is because upon confirmation, the property vests in the debtor free of claims and interests not provided for in the plan and in the absence of an obligation, there can be no enforceable lien.  11 U.S.C. §§ 1141(b)-(c).

20.    Further, section 1141(c) of the Bankruptcy Code provides that "except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors. . . ."  Section 1141(c) may also be read as effecting an *in rem* discharge of property of the estate.  *In re Regional Building Systems, Inc.*, 251 B.R. 274, 281 (Bankr. D. Md. 2000) ("Congress elected § 1141(c) to speak in terms of property dealt with by the plan as effecting lien extinguishment unless the plan expressly provides otherwise."); 8-1141 COLLIER ON BANKRUPTCY P. 1141.04 ("Section 1141(c) may also be read as effecting an *in rem* discharge of property of the estate that parallels the debtor's *in personam* discharge under section 1141(d).").   Section 1141(c) does not refer to "claims against or interests *in property*" as does, for example, section 363(f).  Rather, it refers to "free and clear of all claims and interests *of creditors* . . . ."  11 U.S.C. § 1141(c) (emphasis added).  A reference to "claims" *of creditors* and to "interests" of *equity holders* is

suggestive of a discharge concept, that the claims and interests may not be asserted against the property after confirmation, and creditors and equity holders may not pursue the property, whether or not they had liens on the property.  8-1141 COLLIER ON BANKRUPTCY P. 1141.04. The Plan provisions implementing the Debtors' discharge bolster this default *in rem* and *in personam* discharge rule.

21.     Henderson argues that section 524(a)(2) of the Bankruptcy Code does not prohibit a creditor from enforcing an *in rem* claim against the Reorganized Debtors' property.  As support, Henderson cites to the Supreme Court's holding in *Johnson v. Home State Bank* wherein the Supreme Court held that an individual *chapter 7* discharge extinguished a creditor's *in personam* remedy against a debtor (*i.e.*, a deficiency claim), but left intact the creditor's *in rem* remedy (*i.e.*, the right to foreclose on the property).  However, the *Johnson* court permitted a chapter 13 debtor to address this remaining *in rem* interest in the chapter 13 debtor's plan.  *See Johnson*, 501 U.S. 78, 80 (1991).  This is precisely what the Debtors did in the instant case.

22.     The terms of section 1141 and the Plan provided the Debtors an *in rem* and *in personam* discharge.  *Board of County Comm'rs v. Coleman Am. Properties, Inc. (In re Am. Properties, Inc.)*, 30 B.R. 239, 246 (Bankr. D. Kan. 1983) ("First, all creditors are bound by the provisions of a plan . . . whether or not the creditor files a claim. 11 U.S.C. § 1141(a).  Second, all property vests in the debtor, 11 U.S.C. § 1141(b), 'free and clear of all claims and interests of creditors . . . except as otherwise provided in the plan or in the order confirming the plan.' 11 U.S.C. § 1141(c).  Third, a non-liquidating corporate debtor is discharged of all debts arising before confirmation, whether or not a proof of claim is filed. 11 U.S.C. § 1141(d).  The effect of these provisions are far-reaching. After confirmation of a chapter 11 plan, a creditor's lien rights are only those granted in the confirmed plan.  A creditor no longer can enforce its pre-confirmation lien rights; a creditor must seek to enforce its lien rights granted in the plan, rather than its pre-chapter 11 lien rights.") (citations omitted).

## C.     Henderson's Attempt to Enforce Payment of the Impact Fee is an *In Personam* Act.

23.     Henderson summarily concludes that the payment of the Impact Fee is an *in rem* act because it is "directed toward the parcel against which the Commerce Agreement is

9

recorded" and not personally against the Reorganized Debtors.  Opposition at p. 5.  But Henderson cannot veil its enforcement of the Impact Fee as an *in rem* act.  In an attempt to force payment of the discharged Impact Fee against the Reorganized Debtors, Henderson sent the Reorganized Debtors the following notice:

> THE FINAL APPROVAL OF THE MYLARS FOR THIS
> PROJECT WILL BE HELD UNTIL THE ENVIRONMENTAL
> FEES ASSOCIATED WITH THE CONSTRUCTION OF THE C-
> 1 CHANNEL PHASE III ARE PAID.

Henderson Payment Notice, Ex. 2 to Boettcher Decl. attached to Mot. [Docket No. 1791 at p. 34]

24.     Section 524(a)(2) provides for a broad injunction against not only legal proceedings, but also any other acts to collect a discharged debt as a personal liability of the debtor, and extends to all forms of collection activity, including other adverse actions intended to bring about repayment.   4-524 COLLIER ON BANKRUPTCY P. 524.04.  Similarly, the Plan contains the standard injunctive provisions under section 1141 consistent with a discharge that would prohibit Henderson's conduct against the Reorganized Debtor for payment of the Impact Fee.  Plan at Art. VIII.H.  As well, bankruptcy courts will also look at the creditor's primary motivation in determining whether there has been a violation of the discharge injunction.  *See, e.g., In re Evans*, 289 B.R. 813 (Bankr. E.D. Va. 2002) (lessor that claimed it was seeking possession of vehicle found to have been, in reality, seeking money judgment); *Martin v. Avco Fin. Servs. (In re Martin)*, 157 B.R. 268 (Bankr. W.D. Va. 1993) (creditor violated discharge injunction by filing suit seeking money damages for value of collateral instead of return of collateral).

25.     Henderson's actions of withholding final approval is plainly tied to payment of the Impact Fee against the Reorganized Debtors, and accordingly, under the plain terms of the discharge provisions, a prohibited *in personam* attempt to collect upon a discharged debt.

**D.      The Commerce Agreement Did Not Ride Through the Debtors' Bankruptcy.**

26.     Henderson stresses, in the alternative, that its rights under the Commerce Agreement "rode through" the bankruptcy because it was not listed on the Debtors' schedules or because the Debtors did not assume or reject the Commerce Agreement.  These arguments, however, are to no avail.  First, the Debtors did schedule Henderson as an unsecured contingent

creditor on Schedule F.  If Henderson disagreed with such classification, it was under an

obligation to file a proof of claim pursuant to Bankruptcy Rule 3003(c)(2).  Fed. R. Bankr. P.

3003(c)(2) ("Any creditor or equity security holder whose claim or interest is not scheduled or

scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the

time prescribed . . .; any creditor who fails to do so shall not be treated as a creditor with respect

to such claim for the purposes of voting and distribution.").  There is no dispute that Henderson

received notice of the bar date.

27.     Moreover, with respect to scheduling the Commerce Agreement itself, the

Debtors were not a party to that agreement, so it would have been improper to list contracts on a

debtor's schedules that to which the Debtors are not a party.  A contract may only be assumed or

rejected if the debtor is a counterparty to the contract.  11 U.S.C. § 365(a) (trustee may "assume

or reject any executory contract . . . of the debtor.").[2]

28.     Second, to the extent the Commerce Agreement was an executory contract

capable of being assumed or rejected by the Debtors, even though the Debtors were not a party to

it, the Commerce Agreement was rejected pursuant to the Plan's catchall provision that contracts

not expressly assumed were rejected:  "Assumption and Rejection of Executory Contracts and

Unexpired Leases:  Except as otherwise provided in the Plan, the Debtors' executory contracts or

unexpired leases not assumed or rejected pursuant to a Bankruptcy Court order prior to the

Effective Date *shall be deemed rejected* pursuant to sections 365 and 1123 of the Bankruptcy

Code. . . ."  Plan at Article V.A. (emphasis added).  This is not a bankruptcy case where the

debtors did not elect to address treatment of executory contracts under the plan.  Thus, the "ride

through" concept that Henderson espouses is inapplicable.  *Cf.*, *In re JZ, LLC*, 347 B.R. 816

(Bankr. D. Idaho 2006) (debtor was licensee under licensing agreement, but its chapter 11 plan

did not provide for treatment of executory contracts); *In re Hernandez*, 287 B.R. 795 (Bankr. D.

Ariz. 2002) (debtor to contract was not required to reject contract, but could instead elect not to

---

[2] Professor Countryman's definition of an executory contract contemplates that, at a minimum, the bankrupt debtor
is a counterparty.  "A contract under which the obligations of both the bankrupt and the other party to the contract
are so far unperformed that the failure of either to complete performance would constitute a material breach
excusing performance of the other." Countryman, *Executory Contracts in Bankruptcy*: Part I, 57 Minn. L. Rev. 439,
460 (1973) (emphasis added).

DOCS_LA:274040

address contract in which case the contract would "ride through" the bankruptcy).  Accordingly, assuming, *arguendo*, that the Commerce Agreement is an executory contract capable of being assumed or rejected by the Debtors, which is questionable given that the Debtors were not a party to it and the payment of the Impact Fee appears to be the only material outstanding obligation, it was rejected under the plain terms of the Plan.

**E.      There is no Police Powers Exception to the Federal Bankruptcy Discharge and, in Any Event, Enforcement of the Impact Fee is Pecuniary in Nature.**

29.      As a means of last resort, Henderson argues because there is a police powers exception to the automatic stay, that the Court should extrapolate such exception to the federal discharge provisions of the Bankruptcy Code.  Opposition at pp. 7-9.  However, whereas the automatic stay provision of the Bankruptcy Code contains an express carveout for the enforcement of regulatory or police powers as set forth in section 362(b)(4), neither section 524(a)(2) nor section 1141 of the Bankruptcy Code contain a similar carveout.  Nor do the cases Henderson cites support such an exception.  *See In re Pincome*, 256 B.R. 774, 783 (Bankr. N.D. Ill. 2000) (adopting willfulness standard for violation of automatic stay to determine if governmental agency had willfully violated the federal discharge injunction); *In re Hardy*, 97 F.3rd 1384, 1390 (11th Cir. 1996) (same).  These cases do not stand for the proposition that governmental agencies may continue actions in violation of the federal bankruptcy discharge in the name of the police powers exception to the automatic stay.  If anything, *Hardy* makes clear that the federal government can be sued for a violation of the federal discharge injunction notwithstanding arguments of sovereign immunity.  *Hardy*, 97 F.3d at 1390 ("Therefore, Hardy may seek any 'necessary or appropriate' monetary relief under the statutory contempt powers of § 105 for violation of the discharge injunction.").

30.      Even assuming, *arguendo*, that there was a police powers exception to the federal discharge provisions of the Bankruptcy Code, the police powers exception would not apply to the instant case where Henderson's actions are to bring about payment of the Impact Fee under the Commerce Agreement.  As the First Circuit has held: "Congress intended the section 362(b)(4) exception to apply exclusively to action enforcing *generally applicable regulatory laws* governing the behavior of debtors . . . Nowhere is it mentioned that section 362(b)(4)

permits government agencies to enforce *contractual* rights against debtors. . . ." *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, 805 F.2d 440 (1st Cir. 1986) (emphasis in original).  The cases cited by Henderson to support its position that the Impact Fee is a proper exercise of government police and regulatory powers are readily distinguishable because each case involves enforcement of general regulatory laws, which is not present here where Henderson's stated purpose is the payment of the Impact Fee.  *See, e.g.*, *In re Phillips*, 368 B.R. 733 (Bankr. N.D. Ind. 2007) (building ordinances); *In re Pincombe*, 256 B.R. 774 (Bankr. N.D. Ill. 2000) (labor laws); *California ex rel. Brown v. Villalobos*, 453 B.R. 404 (D. Nev. 2011) (securities laws).

31.    Henderson argues that because it has not sued the Reorganized Debtors, that it passes the pecuniary purpose test.  However, a lawsuit for contractual damages is not required to fail the pecuniary purpose test.  Rather, a government suing a party to a governmental contract for contractual damages is only *one example of a suit* that would fail to satisfy the pecuniary purpose test.  Opposition at p. 8 (citing *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, 805 F.2d at 445).  The Court must look beyond the form of the act and determine whether the government act would allow the government "to obtain an advantage over creditors or potential creditors."  *California ex rel. Brown v. Villalobos*, 453 B.R. 404, 414 (D. Nev. 2011) (*citing City & County of San Francisco v. PG & E Corp.*, 433 F.3d 1115 at 1124 (9th Cir. 2006).  Although conditioning the approval of amended subdivision maps on the payment of a discharged Impact Fee is not a lawsuit for contractual damages, Henderson does not dispute that its actions are designed to achieve payment of the Impact Fee.  And the fact that it is a governmental entity does not elevate its payment rights.  *See In re Adana Mortgage Bankers, Inc.*, 12 B.R. 989, 1000 (Bankr. N.D. Ga. 1980), *vacated as moot by stipulation*, 687 F.2d 344 (11th Cir. 1982) (holding that a government corporation, "[w]ith respect to actually implementing its contractual remedies after the [debtor] has filed for relief under Chapter 11 of the Bankruptcy Code, . . . is in the same position as any other party in interest.").

32.    Henderson also alleges it passes the public purpose test because the Impact Fee is a necessary health and safety issue for drainage facilities that will benefit its residents.  However,

as discussed above, Commerce completed Phase 3 of the C-1 Channel and the sole remaining obligation under the Commerce Agreement is the payment of the Impact Fee.  Henderson's enforcement of the Impact Fee does not fall within the category of "police or regulatory" actions envisioned by Congress, and this Court, like the Court in *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, should not reach the question of whether Henderson's actions to enforce its contractual rights are directed at protecting public health or protecting a pecuniary interest.

33.    Moreover, if public health and safety were paramount, Henderson would have enforced the Impact Fee when it was due instead of allowing the Debtors to continue to develop and build homes.  The Impact Fee came due on November 30, 2005, which was a full two to three years before the "economic downturn" that Henderson cites in its Opposition as the reason why it did not attempt to enforce the Impact Fee previously.  During the two years after the Impact Fee became due, Henderson approved subdivision maps for various parcels within Tuscany in favor of the Debtors on at least five occasions from December 2005 through 2007. *See* Declaration of Don Boettcher at ¶ 4 (attached hereto).  Henderson also approved a subdivision request by the Reorganized Debtors on August 4, 2012 or no less than six times since the Impact Fee become due.  *Id.*  Henderson's history of approval of the Reorganized Debtors' subdivision maps for various parcels within Tuscany contradicts Henderson's assertion that the Impact Fee is being imposed with "due regard for the health, safety, and management of the Las Vegas Wash."  Opposition at p. 3.  Moreover, the Debtors and the Reorganized Debtors have sold approximately 929 homes in Tuscany since the Impact Fee became due in November 2005, including building and selling homes during the "economic downturn."  Boettcher Decl. at ¶ 5 attached hereto.

**F.    Disputes Regarding the Impact Fee Must be Submitted to Arbitration and Withholding Approval of Amended Subdivision Maps is a Prohibited Form of Self Help.**

34.    Finally, assuming, *arguendo*, that the Commerce Agreement could be enforced against the Reorganized Debtors, nowhere does the Commerce Agreement allow Henderson to withhold approval of maps or interfere with the Reorganized Debtors' operations in the manner

14

in which Henderson is now doing. Rather, pursuant to the express terms of the Commerce

Agreement, "[i]f any controversy develops between the Parties . . . and cannot be resolved after

consultation and discussion between the Parties, the same shall be submitted to arbitration. . . ."

Commerce Agrmt. § 5.5. Nowhere does the Commerce Agreement provide Henderson the right

to exercise self-help remedies by withholding approval of subdivision maps.

35. In fact, as a governmental entity, Henderson is expressly prohibited from

discriminating against the Reorganized Debtors for their failure to pay the discharged Impact

Fee. As set forth in the Plan:

> Protection Against Discriminatory Treatment: Consistent with
> section 525 of the Bankruptcy Code and the Supremacy Clause of
> the U.S. Constitution, all Entities, including Governmental Units,
> shall not discriminate against the Reorganized Debtors or deny,
> revoke, suspend, or refuse to renew a license, permit, charter,
> franchise, or other similar grant to, condition such a grant to,
> discriminate with respect to such a grant against, the Reorganized
> Debtors, or another Entity with whom such Reorganized Debtors
> have been associated, solely because one of the Debtors has been a
> debtor under chapter 11, has been insolvent before the
> commencement of the Chapter 11 Cases (or during the Chapter 11
> Cases but before the Debtor is granted or denied a discharge) or
> has not paid a debt that is dischargeable in the Chapter 11 Cases.

Plan at Art. VIII.I.

36. Thus, Henderson's refusal to issue the Reorganized Debtors' requested maps until

the Impact Fee is paid is not only pecuniary in nature, but also violates the anti-discrimination

provisions of the Plan and Bankruptcy Code.

WHEREFORE, for the foregoing reasons, the Reorganized Debtors respectfully request

that the Court overrule the Opposition and enter an Order requiring Henderson to cease and

desist its actions against the Reorganized Debtors for payment of the Impact Fee and release

approval of the Reorganized Debtors' requested maps.

DATED this 31st day of December 2013.

**LARSON & ZIRZOW LLC**


 /s/ Zachariah Larson, Esq.
Zachariah Larson, Bar No. 7787
810 S. Casino Center Blvd. Ste 101
Las Vegas, NV 89101
Telephone: 702/382-1170
Facsimile: 702/382-1169

DOCS_LA:274040

Email:      zlarson@lzlawnv.com

-and-

James I. Stang
Shirley S. Cho
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone:  310/277-6910
Facsimile:  310/201-0760
Email:  jstang@pszjlaw.com
scho@pszjlaw.com

Attorneys for Reorganized Debtors

## DECLARATION OF DON BOETTCHER

I, Don Boettcher, declare as follows:

1.      I am the President of Las Vegas Land Contracting, LLC d/b/a Dunhill Homes, the Reorganized Debtors' legal entity responsible for constructing residential homes in Nevada after the Efffective Date.  I am over the age of 18 years and if called upon, I can and will competently testify to the facts stated herein from my own personal knowledge, or based on a review of the files regularly maintained by the Reorganized Debtors, and public records.  I submit this Declaration in support of the above-captioned *Reply to Opposition to Motion of Reorganized Debtors for Enforcement of Plan Injunction*.

2.      Upon information and belief, Commerce completed construction of Phase 3 of the C-1 Channel pursuant to the terms of the Commerce Agreement.

3.      Subsequent to the Impact Fee becoming due in November 2005, Henderson has approved Tuscany subdivision maps on six separate occasions in favor of the Debtors or Reorganized Debtors as follows:

| Tuscany Parcel No. | Date Final Map Approved |
|---|---|
| TS16 | 12/28/2005 |
| TS15 | 05/16/2006 |
| TS10 | 10/20/2006 |
| TS14 | 04/26/2007 |
| TS6A | 09/25/2007 |
| TS11 | 08/24/2012 (original approval: 04/26/2007) |

4.      The Debtors and the Reorganized Debtors have sold approximately 929 homes in Tuscany since the Impact Fee became due in November 2005.

5.      The first time Henderson raised the payment of the Impact Fee was on October 4, 2013 when it sent the Letter of Transmittal attached as Exhibit 2 to my initial declaration.

////

////

DOCS_LA:274040

1       I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true

2   and correct to the best of my knowledge, information, and belief.

3       Executed this 31st day of December 2013, at Las Vegas, Nevada.

4

5

6   Don Boettcher, President
    Dunhill Homes

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

On the 31st day of December 2013, I served the following document(s):

3

4

5

6

**REPLY TO OPPOSITION TO MOTION OF REORGANIZED DEBTORS FOR ENFORCEMENT OF PLAN INJUNCTION UNDER THE FIRST LIEN STEERING COMMITTEE'S THIRD AMENDED MODIFIED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FOR THE RHODES COMPANIES LLC, ET AL. AGAINST CITY OF HENDERSON**

7

8

1.  I served the above-named document(s) by the following means to the persons as listed below:
    ***(check all that apply)***

9

10

■    **United States mail, postage fully prepaid**
        *(List persons and addresses.  Attach additional paper if necessary)*

11

12

Rew R. Goodenow
Parsons Behle & Latimer
50 West Liberty St., Ste. 750
Reno, NV  89501

13

14

2.  On **December 31, 2013** I served the above-named document(s) by the following means to the persons as listed below:

15

16

■    **ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

17

## **I declare under penalty of perjury that the foregoing is true and correct.**

18

Signed on (date): December 31, 2013

19

20

Sophia L. Lee_____                    _____/s/Sophia L. Lee_____
(Name of Declarant)                              (Signature of Declarant)

21

22

23

24

25

26

27

28

DOCS_LA:235356.6 73203/035

**ECF SERVICE LIST**

09-14814-lbr Notice will be electronically mailed to:

KEVIN N. ANDERSON on behalf of Creditor JAMES RHODES
kanderson@fabianlaw.com, sharkins@fabianlaw.com

BRETT A. AXELROD on behalf of Creditor SAGEBRUSH ENTERPRISES, INC.
baxelrod@foxrothschild.com, pchlum@foxrothschild.com;ldupree@foxrothschild.com

BRETT A. AXELROD on behalf of Creditor JAMES RHODES
baxelrod@foxrothschild.com, pchlum@foxrothschild.com;ldupree@foxrothschild.com

LORI BROWN on behalf of Creditor Las Vegas Supply, Inc.
minute@legalcounselors.com

PHILIP R. BYRNES on behalf of Creditor CITY OF LAS VEGAS
PBYRNES@LASVEGASNEVADA.GOV,
CKELLY@LASVEGASNEVADA.GOV;KHANSEN@LASVEGASNEVADA.GOV;BCOME
LLA@LASVEGASNEVADA.GOV;JANDREWS@LASVEGASNEVADA.GOV

SHIRLEY S. CHO on behalf of Debtor THE RHODES COMPANIES, LLC
scho@pszjlaw.com

JANET L. CHUBB on behalf of Creditor COMMERCE ASSOCIATES, LLC
bsalinas@armstrongteasdale.com

DAVID A. COLVIN on behalf of Creditor DANA KEPNER COMPANIES, LLC
dcolvin@maclaw.com, mwalters@maclaw.com;tszostek@maclaw.com

NATALIE M. COX on behalf of Interested Party REORGANIZED DEBTORS
ncox@klnevada.com, bankruptcy@klnevada.com;kdunn@klnevada.com

NATALIE M. COX on behalf of Plaintiff EUGENE I. DAVIS
ncox@klnevada.com, bankruptcy@klnevada.com;kdunn@klnevada.com

THOMAS E. CROWE on behalf of Creditor SHANE SMITH
tcrowe@thomascrowelaw.com

THOMAS E. CROWE on behalf of Creditor VIRGINIA SPRINGALL-SMITH
tcrowe@thomascrowelaw.com

DAMON K. DIAS on behalf of Creditor X-It at 215, LLC
ddias@diaslawgroup.com,
bankruptcy@diaslawgroup.com;jisselas@diaslawgroup.com;elizabethd@diaslawgroup.com

TRACY A. DIFILLIPPO on behalf of Creditor COMMERCE ASSOCIATES, LLC
tdifillippo@armstrongteasdale.com, jelia@armstrongteasdale.com

CONOR P. FLYNN on behalf of Creditor COMMERCE ASSOCIATES, LLC
cflynn@armstrongteasdale.com

REW R. GOODENOW on behalf of Creditor CITY OF HENDERSON
ecf@parsonsbehle.com

GORDON R. GOOLSBY on behalf of Creditor COMMERCE ASSOCIATES, LLC
ggoolsby@armstrongteasdale.com, bsalinas@armstrongteasdale.com

JAMES D. GREENE on behalf of Plaintiff EUGENE I. DAVIS
jgreene@greeneinfusolaw.com,
fritchie@greeneinfusolaw.com;kfarney@greeneinfusolaw.com;swalkenshaw@greeneinfusolaw.com;cwalton@greeneinfusolaw.com

KIRBY C. GRUCHOW, JR. on behalf of Creditor NEVADA POWER COMPANY
hkelley@leachjohnson.com

DAVID R HAGUE on behalf of Creditor JAMES RHODES
dhague@fabianlaw.com, dromero@fabianlaw.com

CAROL L. HARRIS on behalf of 3rd Party Plaintiff JOHN C RHODES, TRUSTEE OF THE JAMES M. RHODES DYNASTY TRUST I
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of 3rd Party Plaintiff JOHN C. RHODES, TRUSTEE OF THE JAMES M RHODES DYNASTY TRUST II
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of 3rd Party Plaintiff RHODES RANCH LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of 3rd Party Plaintiff SAGEBRUSH ENTERPRISES, INC.
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of 3rd Party Plaintiff JAMES M RHODES
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Creditor In re Kitec Fitting Litigation Class Plaintiffs
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant FARM HUALAPAI LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant GYPSUM RESOURCES, LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant HARMONY 2 LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant HARMONY HOMES INC.
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant HAYDEN SPRINGS PARTNERS LLC

c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant JOHN C RHODES, TRUSTEE OF THE JAMES M. RHODES DYNASTY TRUST I
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant JOHN C. RHODES, TRUSTEE OF THE JAMES M RHODES DYNASTY TRUST II
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant John C. Rhodes, John C. Rhodes, Trustee of the Dynasty Trust 1, John C. Rhodes, Trustee of the Dynasty Trust II, Gypsum Resources, LLC and Truckee Springs Holdings, Inc.
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant NORTH 5TH LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant RHODES RANCH LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant SAGEBRUSH ENTERPRISES, INC.
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant TROPICAL SANDS LLC
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant TRUCKEE SPRINGS HOLDINGS, INC.
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant JAMES M RHODES
c.harris@kempjones.com, ade@kempjones.com

CAROL L. HARRIS on behalf of Defendant JOHN C RHODES
c.harris@kempjones.com, ade@kempjones.com

WILLIAM H HEATON on behalf of Defendant John C. Rhodes, John C. Rhodes, Trustee of the Dynasty Trust 1, John C. Rhodes, Trustee of the Dynasty Trust II, Gypsum Resources, LLC and Truckee Springs Holdings, Inc.
will@nwhltd.com, Solana@nwhltd.com

WILLIAM H HEATON on behalf of Defendant JOHN C RHODES
will@nwhltd.com, Solana@nwhltd.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CREDIT SUISSE GROUP AG
rholley@nevadafirm.com, sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD OF NEVADA, INC.

DOCS_LA:235356.6 73203/035                 4

rholley@nevadafirm.com,
sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD OF TEXAS, INC
rholley@nevadafirm.com,
sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD OF TEXAS, INC.
rholley@nevadafirm.com,
sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD, INC
rholley@nevadafirm.com,
sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD, INC.
rholley@nevadafirm.com,
sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RICHARD F. HOLLEY on behalf of 3rd Pty Defendant CUSHMAN & WAKEFILED OF NEVADA, INC
rholley@nevadafirm.com,
sdwkhtecf@gmail.com;oswibies@nevadafirm.com;oatamoh@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

RODNEY M. JEAN on behalf of Creditor Credit Suisse, Cayman Islands Branch
RJEAN@LIONELSAWYER.COM, bklsclv@lionelsawyer.com

ROBERT R. KINAS on behalf of Creditor CATERPILLAR FINANCIAL SERVICES CORPORATION
rkinas@swlaw.com,
jmath@swlaw.com;mfull@swlaw.com;bgriffith@swlaw.com;nunzueta@swlaw.com;docket_las@swlaw.com;cgianelloni@swlaw.com;nkanute@swlaw.com;kmiltimore@swlaw.com

KEITH S. KNOCHEL on behalf of Creditor VALERIE A. SILVAS
law@lawyersinarizona.com, bank@lawyersinarizona.com

BART K. LARSEN on behalf of Creditor Reef Colonial, LLC
blarsen@klnevada.com,
jierien@klnevada.com;bankruptcy@klnevada.com;mbarnes@klnevada.com

ZACHARIAH LARSON on behalf of Debtor APACHE FRAMING, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor BATCAVE, LP
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor BRAVO, INC.
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor C & J HOLDINGS, INC.
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor CHALKLINE, LP
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor ELKHORN INVESTMENTS, INC.
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor ELKHORN PARTNERS
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor GERONIMO PLUMBING, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor GLYNDA, LP
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor GUNG-HO CONCRETE, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor HERITAGE LAND COMPANY, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor JACKKNIFE, LP
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor JARUPA, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor OVERFLOW, LP
carey@lzlawnv.com,

susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor PARCEL 20, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor PINNACLE GRADING, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor RHODES ARIZONA PROPERTIES, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor RHODES DESIGN AND DEVELOPMENT
CORPORATION
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor RHODES HOMES ARIZONA, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor RHODES RANCH GENERAL PARTNERSHIP
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor RHODES RANCH GOLF AND COUNTRY
CLUB
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor RHODES REALTY, INC.
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor SIX FEATHERS HOLDINGS, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor THE RHODES COMPANIES, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor TICK, LP
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor TRIBES HOLDINGS, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor TUSCANY ACQUISITIONS II, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor TUSCANY ACQUISITIONS III, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor TUSCANY ACQUISITIONS IV, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor TUSCANY ACQUISITIONS, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor TUSCANY GOLF COUNTRY CLUB, LLC
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Debtor WALLBOARD, LP
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

ZACHARIAH LARSON on behalf of Interested Party REORGANIZED DEBTORS
carey@lzlawnv.com,
susan@lzlawnv.com;tiffany@lzlawnv.com;mzirzow@lzlawnv.com;mary@lzlawnv.com

NILE LEATHAM on behalf of Creditor STEERING COMMITTEE OF SENIOR SECURED LENDERS
nleatham@klnevada.com,
ckishi@klnevada.com;bankruptcy@klnevada.com;nleatham@ecf.inforuptcy.com

NILE LEATHAM on behalf of Interested Party REORGANIZED DEBTOR
nleatham@klnevada.com,
ckishi@klnevada.com;bankruptcy@klnevada.com;nleatham@ecf.inforuptcy.com

NILE LEATHAM on behalf of Interested Party REORGANIZED DEBTORS
nleatham@klnevada.com,
ckishi@klnevada.com;bankruptcy@klnevada.com;nleatham@ecf.inforuptcy.com

NILE LEATHAM on behalf of Plaintiff EUGENE I. DAVIS
nleatham@klnevada.com,
ckishi@klnevada.com;bankruptcy@klnevada.com;nleatham@ecf.inforuptcy.com

ANNE M. LORADITCH on behalf of Creditor JAMES RHODES
aloraditch@bachlawfirm.com,
jbach@bachlawfirm.com,mmascarello@bachlawfirm.com,sandra.herbstreit@bachlawfirm.com,awatkins@bachlawfirm.com

VIRGINIA CRONAN LOWE on behalf of Creditor UNITED STATES OF AMERICA - INTERNAL REVENUE SERVICE
virginiacronan.lowe@usdoj.gov, Western.Taxcivil@usdoj.gov

ERIC D. MADDEN on behalf of Other Prof. THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC
emadden@diamondmccarthy.com, cburrow@diamondmccarthy.com

ERIC D. MADDEN on behalf of Plaintiff THE LITIGATION TRUST OF THE RHODES COMPANIES LLC, ET AL.
emadden@diamondmccarthy.com, cburrow@diamondmccarthy.com

EDWARD M. MCDONALD on behalf of U.S. Trustee U.S. TRUSTEE - LV - 11, 11
edward.m.mcdonald@usdoj.gov

JEANETTE E. MCPHERSON on behalf of Defendant KB HOME NEVADA, INC.
bkfilings@s-mlaw.com

SUSAN L. MYERS on behalf of Creditor Credit Suisse, Cayman Islands Branch
smyers@lacsn.org, emontes@lacsn.org;bklsclv@lionelsawyer.com

W. OWEN NITZ on behalf of Defendant John C. Rhodes, John C. Rhodes, Trustee of the Dynasty Trust 1, John C. Rhodes, Trustee of the Dynasty Trust II, Gypsum Resources, LLC and Truckee Springs Holdings, Inc.
owen@nwhltd.com, jim@nwhltd.com

JEFFREY D. OLSTER on behalf of Creditor HARSCH INVESTMENT PROPERTIES - NEVADA, LLC
sallade@lbbslaw.com

OMNI MANAGEMENT GROUP, LLC (bo)
bosborne@omnimgt.com, sewing@omnimgt.com

ERIC RANSAVAGE on behalf of Creditor LESLIE BLASCO
eransavage@ssllplaw.com, agutierrez@ssllplaw.com

JACOB J ROBERTS on behalf of Other Prof. THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC
jroberts@diamondmccarthy.com, cburrow@diamondmccarthy.com

JACOB J ROBERTS on behalf of Plaintiff THE LITIGATION TRUST OF THE RHODES COMPANIES LLC, ET AL.
jroberts@diamondmccarthy.com, cburrow@diamondmccarthy.com

NATHANAEL R. RULIS on behalf of 3rd Party Plaintiff JOHN C RHODES, TRUSTEE OF THE JAMES M. RHODES DYNASTY TRUST I
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of 3rd Party Plaintiff JOHN C RHODES, TRUSTEE OF THE JAMES M RHODES DYNASTY TRUST II
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of 3rd Party Plaintiff RHODES RANCH LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of 3rd Party Plaintiff SAGEBRUSH ENTERPRISES, INC.
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of 3rd Party Plaintiff JAMES M RHODES
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant FARM HUALAPAI LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant GYPSUM RESOURCES, LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant HARMONY 2 LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant HARMONY HOMES INC.
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant HAYDEN SPRINGS PARTNERS LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant JOHN C RHODES, TRUSTEE OF THE
JAMES M. RHODES DYNASTY TRUST I
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant JOHN C. RHODES, TRUSTEE OF THE
JAMES M RHODES DYNASTY TRUST II
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant John C. Rhodes, John C. Rhodes, Trustee of
the Dynasty Trust 1, John C. Rhodes, Trustee of the Dynasty Trust II, Gypsum Resources, LLC
and Truckee Springs Holdings, Inc.
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant NORTH 5TH LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant RHODES RANCH LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant SAGEBRUSH ENTERPRISES, INC.
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant TROPICAL SANDS LLC
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant TRUCKEE SPRINGS HOLDINGS, INC.

n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant JAMES M RHODES
n.rulis@kempjones.com, p.montgomery@kempjones.com

NATHANAEL R. RULIS on behalf of Defendant JOHN C RHODES
n.rulis@kempjones.com, p.montgomery@kempjones.com

MARVIN C. RUTH on behalf of Creditor CEMEX CONSTRUCTION MATERIALS SOUTH, LLC
MRuth@LRLaw.com

BRIAN D. SHAPIRO on behalf of Other Prof. THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC
bshapiro@brianshapirolaw.com,
ecf@brianshapirolaw.com;brianshapiroesq@yahoo.com;bshapiro@brianshapirolaw.com;candice@brianshapirolaw.com;carolyn@brianshapirolaw.com

BRIAN D. SHAPIRO on behalf of Plaintiff THE LITIGATION TRUST OF THE RHODES COMPANIES LLC, ET AL.
bshapiro@brianshapirolaw.com,
ecf@brianshapirolaw.com;brianshapiroesq@yahoo.com;bshapiro@brianshapirolaw.com;candice@brianshapirolaw.com;carolyn@brianshapirolaw.com

SHLOMO S. SHERMAN on behalf of Interested Party REORGANIZED DEBTORS
ssherman@klnevada.com, bankruptcy@klnevada.com;bbroussard@klnevada.com

ROSA SOLIS-RAINEY on behalf of Defendant DELOITTE & TOUCHE LLP
rsr@morrislawgroup.com, fmi@morrislawgroup.com

ROSA SOLIS-RAINEY on behalf of Defendant DELOITTE TAX LLP
rsr@morrislawgroup.com, fmi@morrislawgroup.com

MARK R. SOMERSTEIN on behalf of Creditor WELLS FARGO BANK, N.A.
mark.somerstein@ropesgray.com

ELIZABETH E. STEPHENS on behalf of Attorney SULLIVAN HILL LEWIN REZ & ENGEL
stephens@sullivanhill.com,
roberts@sullivanhill.com;hill@sullivanhill.com;millerick@sullivanhill.com;dabbieri@sullivanhill.com;bkstaff@sullivanhill.com;manning@sullivanhill.com

ELIZABETH E. STEPHENS on behalf of Defendant WP South Builders Nevada, LLC
stephens@sullivanhill.com,
roberts@sullivanhill.com;hill@sullivanhill.com;millerick@sullivanhill.com;dabbieri@sullivanhill.com;bkstaff@sullivanhill.com;manning@sullivanhill.com

JEFFREY R. SYLVESTER on behalf of 3rd Pty Defendant CREDIT SUISSE (USA), INC
jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com

JEFFREY R. SYLVESTER on behalf of 3rd Pty Defendant CREDIT SUISSE AG, CAYMAN BRANCH

jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com

JEFFREY R. SYLVESTER on behalf of 3rd Pty Defendant CREDIT SUISSE AG, NEW YORK BRANCH
jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com

JEFFREY R. SYLVESTER on behalf of 3rd Pty Defendant CREDIT SUISSE HOLDINGS (USA), INC
jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com

JEFFREY R. SYLVESTER on behalf of 3rd Pty Defendant CREDIT SUISSE SECURITIES (USA), LLC
jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com

JEFFREY R. SYLVESTER on behalf of Creditor CREDIT SUISSE, CAYMAN ISLANDS BRANCH
jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com

TIMOTHY P. THOMAS on behalf of Creditor STEERING COMMITTEE OF SENIOR SECURED LENDERS
, veralynn@tthomaslaw.com

U.S. TRUSTEE - LV - 11, 11
USTPRegion17.lv.ecf@usdoj.gov

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE (USA), INC
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE AG, A SWISS BANK
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE AG, CAYMAN BRANCH
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE AG, NEW YORK BRANCH
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE GROUP AG
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE HOLDINGS (USA), INC
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

ELIZABETH W. WALKER on behalf of 3rd Pty Defendant CREDIT SUISSE SECURITIES (USA), LLC
ewalker@sidley.com, hnugget@sidley.com;twebber@sidley.com

DAVID ALAN WALTON on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD OF NEVADA, INC.
dwalton@bmpllp.com, gromero@bmpllp.com

DAVID ALAN WALTON on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD OF TEXAS, INC
dwalton@bmpllp.com, gromero@bmpllp.com

DAVID ALAN WALTON on behalf of 3rd Pty Defendant CUSHMAN & WAKEFIELD, INC
dwalton@bmpllp.com, gromero@bmpllp.com

DAVID ALAN WALTON on behalf of 3rd Pty Defendant CUSHMAN & WAKEFILED OF NEVADA, INC
dwalton@bmpllp.com, gromero@bmpllp.com

DONALD H. WILLIAMS on behalf of Creditor Westar Kitchen & Bath, LLC
DonaldHWilliamsLaw@gmail.com, taylorsellers@gmail.com

GREGORY F WILSON on behalf of Witness SANTORO, DRIGGS, WALCH, KEARNEY, HOLLEY & THOMPSON
gfw@gfwilsonlaw.com

MICHAEL B WIXOM on behalf of Interested Party MUTUAL OF OMAHA BANK
mbw@slwlaw.com, ef@slwlaw.com

MICHAEL YODER on behalf of Other Prof. THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC
myoder@diamondmccarthy.com, cburrow@diamondmccarthy.com

MICHAEL YODER on behalf of Plaintiff THE LITIGATION TRUST OF THE RHODES COMPANIES LLC, ET AL.
myoder@diamondmccarthy.com, cburrow@diamondmccarthy.com